1   CHAD A. READLER
2       Acting Assistant Attorney General
        Civil Division
3   WILLIAM C. PEACHEY
        Director
4   GISELA A. WESTWATER
5       Assistant Director
    GENEVIEVE M. KELLY, VA Bar No. 86183
6       Trial Attorney, District Court Section
7       Office of Immigration Litigation
        United States Department of Justice
8       P.O. Box 868, Ben Franklin Station
9       Washington, D.C. 20044
        Tel: (202) 532-4705
10      Fax: (202) 305-7000
11      genevieve.m.kelly@usdoj.gov

12  Attorneys for Named Defendants

13

14              UNITED STATES DISTRICT COURT
        FOR THE CENTRAL DISTRICT OF CALIFORNIA
15               (Western Division – Los Angeles)

16  AL OTRO LADO, INC., a California       Case No. CV 2:17-CV-05111-JFW-
17  corporation; ABIGAIL DOE;             JPR
    BEATRICE DOE; CAROLINA
18  DOE; DINORA DOE; INGRID               DEFENDANTS' NOTICE OF
19  DOE; and JOSE DOE, individually       MOTION AND MOTION TO
    and on behalf of all others similarly  DISMISS UNDER FEDERAL
20  situated;                             RULES OF CIVIL PROCEDURE
21                                        12(b)(1) AND 12(b)(6)
           Plaintiffs,
22                                        HON. JOHN F. WALTER
23              v.
24
    ELAINE C. DUKE, Acting
25  Secretary, U.S. Department of
26  Homeland Security, in her official
27
28

1  capacity;[1] KEVIN K.
2  MCALEENAN, Acting
   Commissioner, U.S. Customs and
3  Border Patrol, in his official capacity;
   TODD C. OWEN, Executive
4  Assistant Commissioner, U.S.
   Customs and Border Patrol, in his
5  official capacity; and DOES 1–10,
   inclusive;
6
7          Defendants.
8
9
10
11
12
13
14
15
16
17
18
19
20
21  _____
22  [1] Pursuant to Federal Rule of Civil Procedure 25(d), Elaine C. Duke, Acting
23  Secretary, U.S. Department of Homeland Security, is automatically substituted
    for former Secretary John F. Kelly.
24                                    ii

# NOTICE OF MOTION

PLEASE TAKE NOTICE that on Monday, November 13, 2017, at 1:30 PM, or as soon thereafter as the matter may be heard before the Honorable John F. Walter, at the United States Courthouse, 350 W. 1st Street, Los Angeles, California 90012, Courtroom 7A, Defendants will and hereby do move the Court for an order dismissing this case. This motion is based on the memorandum of points and authorities and such other evidence and argument that may be presented before or at the hearing of this motion. During the meet-and-confer with Plaintiffs' counsel that began on Tuesday, October 3, 2017, Plaintiffs indicated that they oppose this motion.


Dated: Thursday, October 12, 2017

iii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director

GISELA A. WESTWATER
Assistant Director

By:   */s/ Genevieve M. Kelly*
GENEVIEVE M. KELLY
Trial Attorney, District Court Section
Office of Immigration Litigation
United States Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4705
Fax: (202) 305-7000
genevieve.m.kelly@usdoj.gov

iv

1  CHAD A. READLER
       Acting Assistant Attorney General
2      Civil Division
3  WILLIAM C. PEACHEY
       Director
4  GISELA A. WESTWATER
       Assistant Director
5  GENEVIEVE M. KELLY, VA Bar No. 86183
       Trial Attorney, District Court Section
6      Office of Immigration Litigation
7      United States Department of Justice
       P.O. Box 868, Ben Franklin Station
8      Washington, D.C. 20044
       Tel: (202) 532-4705
9      Fax: (202) 305-7000
       genevieve.m.kelly@usdoj.gov
10
11  Attorneys for Named Defendants

12  **UNITED STATES DISTRICT COURT**
    **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
13  **(Western Division – Los Angeles)**

14  AL OTRO LADO, INC., a California      **Case No. CV 2:17-CV-05111-JFW-**
    corporation; ABIGAIL DOE;            **JPR**
15  BEATRICE DOE; CAROLINA
16  DOE; DINORA DOE; INGRID              **MEMORANDUM OF POINTS**
    DOE; and JOSE DOE, individually      **AND AUTHORITIES IN**
17  and on behalf of all others similarly **SUPPORT OF DEFENDANTS'**
    situated;                            **MOTION TO DISMISS UNDER**
18                                       **FEDERAL RULES OF CIVIL**
                                         **PROCEDURE 12(b)(1) AND**
19          Plaintiffs,                  **12(b)(6)**

20                v.

21  ELAINE C. DUKE, Acting               **HON. JOHN F. WALTER**
    Secretary, U.S. Department of
22  Homeland Security, in her official
    capacity; KEVIN K. MCALEENAN,
23  Acting Commissioner, U.S. Customs
24                                   v

1   and Border Patrol, in his official
     capacity; TODD C. OWEN,
2    Executive Assistant Commissioner,
3    U.S. Customs and Border Patrol, in
     his official capacity; and DOES 1–10,
4    inclusive;

5         Defendants.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

vi

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. viii

MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6) ........................................................................ 1

FACTS RELEVANT TO THIS MOTION .......................................... 1

ARGUMENT ...................................................................................... 5

I.  The Doe Plaintiffs' Claims Should Be Dismissed as Moot Because Each Doe Has Received All of the Relief That the Court Can Provide. ........................... 5

    A. Mootness Standard ..................................................................... 6

    B. Each Doe Plaintiff has Received an Opportunity to Be Properly Processed as an Applicant for Admission. ...................................... 7

    C. No Exceptions to the Mootness Doctrine Apply ......................... 8

II. Plaintiffs' Remaining Claims Should Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim Upon Which Relief May Be Granted and Under Rule 12(b)(1) for Failure to Present a Live Case or Controversy. ............................ 9

    A. Plaintiffs Fail to Allege Sufficient Facts to State a Claim that CBP Has Adopted an "Officially Sanctioned Policy" of Denying Access to the Asylum Process ........................................................ 10

    B. Plaintiffs Fail to Allege Sufficient Facts to State a Claim that CBP Believes that the Conduct of Its Officers, as Alleged in the Complaint, is Lawful .. 18

    C. Plaintiffs' Assertion that CBP "Will Continue" to Deny Asylum Seekers Access to the Asylum Process Does Not State a Live Claim or Controversy. ........................................................................ 20

CONCLUSION ................................................................................ 23

1

## TABLE OF AUTHORITIES

2

**Federal Cases**

*Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006)..................11

3

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) ......................................................19

4

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) .............................6

5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................ passim

6

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ............................ 11, 17, 18, 19

*Branch v. Tunnell,* 14 F.3d 449 (9th Cir. 1994) ....................................................11

7

*Camreta v. Greene,* 563 U.S. 692 (2011)................................................................6

8

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ............................ 21, 22, 23, 24

9

*Galbraith v. County of Santa Clara,* 307 F.3d 1119 (9th Cir. 2002)...................12

10

*Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013).....................................6

*Johnson v. Reilly*, 349 F.3d 1149 (9th Cir. 2003) .................................................25

11

*Kohler v. In-N-Out Burgers,* No. 2013 WL 5315443 (C.D. Cal. Sept. 12, 2013) ..8

12

*Liverpool, New York & Philadelphia S.S. Co. v. Comm'rs of Emigration*, 113 U.S. 33 (1885)....................................................................................................6

13

*O'Shea v. Littleton*, 414 U.S. 488 (1974)....................................................... 9, 21

14

*Oliver v. Ralphs Grocery Co.*, 654 F.3d 903 (9th Cir. 2011) .................................8

15

*Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1998) .............................................11

16

*Perez v. United States*, 103 F. Supp. 3d 1180 (S.D. Cal. 2015).............. 12, 16, 17

17

*Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011) ................................9

*Rizzo v. Goode*, 423 U.S. 362 (1976) ............................................................ 20, 21

18

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ..............................................6

19

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) ........................................11

20

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464 (1982) ..................................................................6

21

*W. Coast Seafood Processors Ass'n v. Nat. Res. Def. Council, Inc.*, 643 F.3d 701 (9th Cir. 2011) ....................................................................................................8

22

**Constitutional Provision**

23

U.S. Const. art. III, § 2 .............................................................................. 6, 8, 20

24

viii

**Federal Statutes**

8 U.S.C. § (b)(2) ...................................................................4

8 U.S.C. § 1225(a) ...............................................................5

8 U.S.C. § 1225(a)(1) ...................................................... 1, 18

8 U.S.C. § 1225(a)(3) ...................................................... 1, 18

8 U.S.C. § 1225(b)(1) ...........................................................4

8 U.S.C. § 1225(b)(1)(A)(ii) ............................................ 7, 19

8 U.S.C. § 1225(b)(2) ...........................................................7

Administrative Procedure Act, 5 U.S.C. § 500 *et seq.* ..........................10

Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.* ....................10

**Federal Rules**

Federal Rule of Civil Procedure 12(b)(1) ................................ 10, 20, 23

Federal Rule of Civil Procedure 12(b)(6) ................................ passim

Federal Rule of Civil Procedure 25(d) ...................................... ii

**Federal Regulations**

8 C.F.R. § 235.3 ...............................................................4, 7

8 C.F.R. § 235.3(b)(4) ...................................................... 7, 19

8 C.F.R. § 235.4 ...............................................................19

**Sources Cited in Plaintiffs' Complaint**

*Hearing on the Immigration and Customs Enforcement and Customs and Border Protection F.Y. 2018 Budgets Before the Subcomm. on Homeland Sec. of the H. Appropriations Comm.*, 115th Cong. 207 *et seq.* (2017) ................. passim

Human Rights First, *Crossing the Line: U.S. Border Agents Illegally Reject Asylum Seekers*, Human Rights First (2017), https://www.humanrightsfirst.org/sites/default/files/hrf-crossing-the-line-report.pdf ....................................................... 2, 12, 13, 23

Joshua Partlow, "U.S. border officials are illegally turning away asylum seekers, critics say," *Washington Post*, Jan. 16, 2017, https://www.washingtonpost.com/world/ the_americas/us-border-officials-are-illegally-turning-away-asylum-seekers-critics-say/2017/01/16/f7f5c54a-

1    c6d0-11e6-acda-59924caa2450_story.html?utm_term=.b345e63639bb ..... 13,
2    18, 23

x

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

The Court should dismiss this Complaint in its entirety because it fails to state a live case or controversy and fails to state a claim upon which relief may be granted. The individual Doe Plaintiffs' claim—that they were denied access to the asylum process in the United States—should be dismissed because it became moot within several days of Plaintiffs' commencing this action, when the individual claimants returned to a port of entry, were processed as applicants for admission, consistent with 8 U.S.C. §§ 1225(a)(1), (3), and were either referred to U.S. Citizenship and Immigration Services ("USCIS") for a credible fear determination or were issued a Notice to Appear before an immigration judge. Plaintiffs' remaining claims—(1) that U.S. Customs and Border Protection ("CBP") has adopted an "officially sanctioned policy" of denying asylum seekers access to the asylum process; (2) that CBP believes that the conduct alleged in the Complaint is lawful; and (3) that CBP will continue to deny asylum seekers the opportunity to access the asylum process—either fail to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) or fail to state a live case or controversy. If any allegations similar to these were to arise in the future, affected individuals could bring suit for individual mandamus relief—the proper cause of action in such circumstances.

## FACTS RELEVANT TO THIS MOTION

Plaintiffs filed this suit on Wednesday July 12, 2017, alleging that several unknown CBP officers turned six Doe Plaintiffs away from three United States

1

ports of entry, despite those individuals expressing their intent to apply for asylum or a fear of persecution if returned to their home countries. Compl. at 18–26. Plaintiffs allege that various CBP officers turned them away from a port of entry, used intimidation to misinform them about their rights, and coerced them into withdrawing their applications for admission.[2]

In addition to describing the individual allegations of the Doe Plaintiffs, the Complaint references several non-profit organizations' reports describing unnamed sources' multiple allegations of misconduct by CBP officers in several U.S. ports of entry. Compl. at 16, 17, 29–32. One such report called "Crossing the Line," by Human Rights First, alleges without reference to any individual officers or claimants that while "recent data shows CBP agents referred some 8,000 asylum seekers" an "unknown number of asylum seekers have been unlawfully rejected." The report purports to be based on the claims of 125 individuals. Human Rights First, *Crossing the Line: U.S. Border Agents Illegally Reject Asylum Seekers*, Human Rights First 1 (2017), https://www.humanrightsfirst.org/sites/default/files/hrf-crossing-the-line-report.pdf [hereinafter *Crossing the Line*] (*cited in* Compl. at 15–16, n.22; 17, n.27; 29, n.29).

---

[2] Although Plaintiffs also allege that CBP officers locked Carolina Doe in a room overnight, dragged Dinora Doe by her arm, and roughly handled Beatrice Doe when searching her for drugs, the Complaint does not lodge any cause of action in tort (and seeks no tort damages). *See generally* Compl.; *see* Compl. at 22, 28.

The Complaint also alleges that "since 2016" CBP has had a "practice" and "policy" of "denying asylum seekers access" to the asylum process at U.S. ports of entry along the Southwest border. Compl. at 1, 17, 26. It alleges that such unlawful acts "were performed (and continue to be performed) at the instigation, under the control or authority of, or with the knowledge, consent, direction or acquiescence of, the Defendants." Compl. at 2. It alleges that CBP "has acknowledged its illegal practice [of denying asylum seekers access to asylum proceedings] in sworn testimony before Congress [in which] CBP's [Office of Field Operations] admitted that CBP officials were turning away asylum applicants at POEs along the U.S.-Mexico border." Compl. at 33 (citing _Hearing on the Immigration and Customs Enforcement and Customs and Border Protection F.Y. 2018 Budgets Before the Subcomm. on Homeland Sec. of the H. Appropriations Comm._, 115th Cong. 207 _et seq._ (2017) (Government Printing Office pagination forthcoming) [hereinafter _Subcomm. Hearing_] (statement of John Wagner, Deputy Executive Assistant Comm'r for CBP's Office of Field Operations)).[3] The Complaint also alleges that CBP believes that all of the

---

[3] In the transcript of that June 13, 2017, Congressional testimony, Congresswoman Roybal-Allard states: "The CBP southwest border apprehensions in the second quarter of this fiscal year were 56 percent lower than the first quarter. However, the number of credible fear applications dropped by only 21 percent, and the percentage of positive credible fear determinations was largely unchanged at 77 percent." _Id._ (Government Printing Office pages forthcoming). The Congresswoman then asks CBP's Deputy Executive Assistant Commissioner of Field Operations John Wagner about a "significant number of reports of CBP officers at ports of entry turning away individuals attempting to claim credible fear [that were] documented in the press [and] by Human Rights

1  misconduct alleged against its officers in the Complaint was lawful. Compl. at

2  45, 48, 50, 51.

3      Within one week that the complaint was filed, pursuant to an agreement with

4  Plaintiffs, Defendants and Plaintiffs' counsel coordinated the arrival and

5  processing of Plaintiffs as applicants for admission to the United States. *See* Ex.

6  A. All of the Plaintiffs who chose to take advantage of this opportunity for

7  coordinated processing were processed as applicants for admission in either the

8  San Ysidro or Laredo ports of entry and, accordingly, were either given a notice

9  to appear before an immigration judge or referred to a USCIS asylum officer to

10 present their asylum or credible fear claims. Ex. A. Beatrice Doe, the one

11 plaintiff who did not take advantage of this coordinated arrangement, can return

12 to a port of entry to be processed as an applicant for admission at any time,

13 should she choose to do so. Ex. A at 1; *see also* 8 U.S.C. §§ 1225(b)(1), (b)(2);

14 8 C.F.R. § 235.3.

15

16 _____

17 First based on firsthand interviews of CBP officers at ports of entry turning away
18 individuals attempting to claim credible fear." *Id.* Mr. Wagner responds that at
   one point in the past, as a result of a surge of migrants arriving at the border,
19 some ports of entry became full and could not "safely and securely hold any more
   people," such that CBP cooperated with Mexico in determining how to manage
20 the flow of migrants crossing into a U.S. port of entry at one time, so that they
   could be processed as "safely and humanely" as possible. *Id.* Mr. Wagner also
21 describes contingency plans that were established so that, should another surge of
   migrants arrive at the border, CBP could "quickly set up temporary space to
22 house people humanely and securely while they're awaiting processing." *Id.*
23 Nowhere does Mr. Wagner state that CBP denied any individual the ability to
   make a claim of fear or state that CBP would or could do so. *Id.*

24                                    4

**ARGUMENT**

**I.    The Doe Plaintiffs' Claims Should Be Dismissed as Moot Because Each Doe Has Received All of the Relief That the Court Can Provide.**

The individual Doe Plaintiffs, on behalf of themselves and as putative class representatives, claim that they were denied access to the U.S. asylum process.[4] But within several days of filing their Complaint, all of the individual Plaintiffs who still sought relief presented themselves at a U.S. port of entry and were processed as applicants for admission, consistent with 8 U.S.C. § 1225(a), and, accordingly, were either referred for credible fear interviews with asylum officers, or issued a notice to appear before an immigration judge. Ex. A. Therefore their requests for proper processing by CBP should be dismissed as moot.

---

[4] The INA does not reference "access to the asylum process" but instead requires all applicants for admission be inspected for admissibility to the United States. 8 U.S.C. § 1225(a)(1). Any alien who is not admissible is subject to removal from the United States, either by an immigration judge after a removal proceeding (in which the alien may apply for any relief from removal, including asylum), *see* 8 U.S.C. § 1229a, or, in certain situations, through the expedited removal process, *see* 8 U.S.C. § 1225(b)(1). However, consistent with the United States' international obligations and the law, if an inadmissible alien who is subject to expedited removal indicates a fear of return, CBP must refer that alien to USCIS for a credible fear hearing. 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 235.3(b)(4). In either instance, the actual claims related to asylum are adjudicated by parties other than CBP after the initial application for admission process is complete.

1    **A. Mootness Standard**

2    Article III, § 2, of the Constitution restricts the jurisdiction of federal courts

3    to "cases" and "controversies," thus limiting the authority of federal courts to

4    resolving only "'the legal rights of litigants in actual controversies.'" U.S. Const.

5    art. III, § 2; *Valley Forge Christian College v. Americans United for Separation*

6    *of Church and State, Inc.*, 454 U.S. 464, 471 (1982) (quoting *Liverpool, New*

7    *York & Philadelphia S.S. Co. v. Comm'rs of Emigration*, 113 U.S. 33, 39 (1885)).

8    In order to invoke federal court jurisdiction, plaintiffs must demonstrate that they

9    possess a legally cognizable interest, or a "'personal stake,'" in the outcome of

10   the action. *Camreta v. Greene,* 563 U.S. 692, 701 (2011) (quoting *Summers v.*

11   *Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "This requirement ensures that the

12   Federal Judiciary confines itself to its constitutionally limited role of adjudicating

13   actual and concrete disputes, the resolutions of which have direct consequences

14   on the parties involved." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71

15   (2013). "A corollary to this case-or-controversy requirement is that 'an actual

16   controversy must be extant at all stages of review, not merely at the time the

17   complaint is filed.'" *Id.* at 71–72 (internal punctuation marks omitted) (quoting

18   *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)). "If an

19   intervening circumstance deprives the plaintiff of a personal stake in the outcome

20   of the lawsuit, at any point during litigation, the action can no longer proceed and

21   must be dismissed as moot." *Id.* (internal quotation marks omitted).

22

23

24

**B. Each Doe Plaintiff has Received an Opportunity to Be Properly Processed as an Applicant for Admission.**

All of the Doe Plaintiffs have received individual relief. Plaintiffs filed their Complaint on Wednesday, July 12, 2017, Compl. at 53, alleging that Defendants had denied the Does access to asylum proceedings by failing to process them at ports of entry in accordance with the law. Compl. at 6–10. Within several days, pursuant to an agreement with Plaintiffs, Defendants and Plaintiffs' counsel coordinated the arrival and processing of Plaintiffs as applicants for admission to the United States. *See* Ex. A. All of the Plaintiffs choosing to take advantage of this opportunity for coordinated processing came to the San Ysidro or Laredo ports of entry and were processed as applicants for admission. *Id.* Accordingly, they were either referred to a USCIS asylum officer to present their claims of fear or were issued a notice to appear before an immigration judge. 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 235.3(b)(4). Beatrice Doe, the one plaintiff who did not take advantage of this coordinated arrangement, can return to a port of entry to be processed as an applicant for admission if and when she chooses to do so. 8 U.S.C. §§ 1225(b)(1)(A)(ii), (b)(2); 8 C.F.R. § 235.3.

This renders the Doe Plaintiffs' claims moot. Plaintiffs alleged that they had sought access to the asylum process but were denied that opportunity when they were not properly processed as applicants for admission. *See generally* Compl. at 6–10. All Plaintiffs subsequently received the opportunity to be properly processed. *See* Ex. A. Those who availed themselves of the opportunity were properly processed and were either referred for credible fear interviews or issued

7

1    a notice to appear before an immigration judge. Thus, the Plaintiffs, including

2    Beatrice Doe have received all of the relief to which they are entitled and the

3    Court should dismiss all of the individual Plaintiffs from the case. *See* U.S.

4    Const. art. III, § 2; *Kohler v. In-N-Out Burgers,* No. 2013 WL 5315443, at *7

5    (C.D. Cal. Sept. 12, 2013) (citing *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903,

6    905 (9th Cir. 2011) (stating that in a case in which a plaintiff is only entitled to

7    injunctive relief, the plaintiff's claims usually become moot when the defendant

8    remedies the violation)).

### C. No Exceptions to the Mootness Doctrine Apply.

10    Further, no exceptions to the mootness doctrine apply in this case. Although

11    there is an exception to the mootness doctrine for injuries capable of repetition

12    yet evading review, that exception clearly does not apply in this case. "First, the

13    'capable of repetition' prong of the exception requires a 'reasonable expectation'

14    that the same party will confront the same controversy again. *W. Coast Seafood*

15    *Processors Ass'n v. Nat. Res. Def. Council, Inc.*, 643 F.3d 701, 704 (9th Cir.

16    2011). There is no reason to anticipate that the Doe Plaintiffs—all of whom

17    received the opportunity to be processed as applicants for admission within one

18    week of filing this Complaint—will return to a port of entry as applicants for

19    admission in the future or that, upon doing so, they will be denied the opportunity

20    to be properly processed.  Second, "[a] controversy evades review only if it is

21    'inherently limited in duration such that it is likely always to become moot before

22    federal court litigation is completed.'" *Id.* at 705. That is never the case where, as

23

24                                        8

here, Plaintiffs complain that they have been denied a statutory right that does not expire. *See id.*

The styling of the Complaint as a purported class action does not change this analysis. "If none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Any limitations on this general rule outlined by the Ninth Circuit in *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011), do not apply here. This is not a case in which Defendants have "bought off" individual claimants in order to dismiss the case before Plaintiffs have had the opportunity to move for class certification. *See id.* at 1091. Plaintiffs have had sufficient opportunity—over 90 days from the date they filed their Complaint—to move for class certification and have still not done so. *See generally* Dkt. Nor is it a case where Plaintiffs' claims are so "inherently transitory" that a class representative's interest will automatically expire before the Court can rule on a class certification motion. *Pitts*, 653 F.3d at 1090. These claims can only expire once the plaintiff obtains relief. Accordingly, the Court should dismiss any individual claims brought by the Doe Plaintiffs or by any purported class members.

## II.    Plaintiffs' Remaining Claims Should Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim Upon Which Relief May Be Granted and Under Rule 12(b)(1) for Failure to Present a Live Case or Controversy.

Plaintiffs' remaining claims—(1) that CBP has adopted an "officially sanctioned policy" of denying asylum seekers access to the asylum process; (2)

1  that CBP believes that the conduct of its officers, as alleged in the Complaint, is

2  lawful; and (3) that CBP will continue to deny asylum seekers the opportunity to

3  access the asylum process—either fail to allege sufficient specific facts to state a

4  claim for relief or are too speculative to constitute a live case or controversy

5  under Article III. The Court should accordingly dismiss those claims under

6  Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

7  **A. Plaintiffs Fail to Allege Sufficient Facts to State a Claim that CBP Has Adopted an "Officially Sanctioned Policy" of Denying Access to the Asylum Process**

8

9  Plaintiffs assert that CBP's alleged actions "were performed (and continue to

10  be performed) at the instigation, under the control or authority of, or with the

11  knowledge, consent, direction or acquiescence of" Defendants, and, accordingly,

12  that Defendants have adopted "an officially sanctioned policy" of refusing entry

13  to asylum seekers in violation of the Immigration and Nationality Act ("INA"), 8

14  U.S.C. § 1101 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C.

15  § 500 *et seq.* Compl. at 2, 45–48. But Plaintiffs' complaint fails to allege

16  sufficient facts from which the Court may reasonably infer that Defendants'

17  alleged actions constitute an "officially sanctioned policy." Compl. at 2. In fact,

18  based on Plaintiffs' allegations and the assertions contained in the Complaint's

19  source material, the only reasonable inference to be drawn is that Defendants'

20  "officially sanctioned policy" is to comply with federal law. Accordingly, the

21  Court should dismiss Plaintiffs' claim under Federal Rule of Civil Procedure

22  12(b)(6).

23

24

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Here, Plaintiffs' factual allegations fail to meet this standard.

Plaintiffs generally allege "hundreds" of instances where CBP officers have failed to process asylum seekers who arrive at ports of entry along the U.S.-Mexico border as applicants for admission, broadly citing several newspaper articles and "reports" by non-profit organizations that present only generalized allegations. *See* Compl. at 16–18, n.25–28. But the assertions contained in the Complaint and its source material[5] cut against those very allegations. For

---

[5] "A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "[A] district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint

example, Plaintiffs cite a 2017 Human Rights First article alleging that there at least 125 documented occasions between December 2016 and March 2017 where an applicant for admission intending to apply for asylum was denied the opportunity to present his or her claim of fear at a port of entry. Compl. at 17, 38, n.27. However, the report also acknowledges that "CBP agents referred some 8,000 asylum seekers at ports of entry" to USCIS for credible fear interviews during the same period. *Crossing the Line* at 1. This ratio—125 alleged denials out of 8,000 appropriate referrals to USCIS, or an alleged 1.6% denial rate, by 24,000 CBP officers across 328 ports of entry, Compl. at 10—does not, as Plaintiffs imply, support a claim that CBP is engaging in an officially sanctioned policy of denying applicants for admission access to the asylum process.[6]  *See Perez v. United States*, 103 F. Supp. 3d 1180, 1204 (S.D. Cal. 2015) (holding that

---

necessarily relies." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as stated in Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681–82 (9th Cir. 2006). "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara,* 307 F.3d 1119 (9th Cir. 2002).

[6] The report assumes that other denials of entry or instances of improper processing, in addition to the 125 alleged, also took place in that same period. But without any more specific facts, this can only be characterized as the type of "[t]hreadbare recitals of the elements of a cause of action, supported by [a] mere conclusory statement[]" that is insufficient to state a claim under Rule 12(b)(6). *Iqbal*, 553 U.S. at 678.

12

plaintiffs failed to allege sufficient facts to state a claim that CBP had a "policy" where Defendants acted in concert with the alleged policy only 10% of the time).

This is not the only time that Plaintiffs' source material contradicts their allegation that an "officially sanctioned policy" of denying asylum seekers access to the asylum process exists. The Human Rights First article cited by Plaintiffs states:

> CBP officials have confirmed that the United States continues to recognize its obligation to process asylum seekers. In March 2017, a CBP spokesperson told reporters, "CBP has not changed any policies affecting asylum procedures. These procedures are based on international law and are focused on protecting some of the world's most vulnerable and persecuted people."

*Crossing the Line* at 4. In addition, the *Washington Post* article cited by Plaintiffs states:

> A spokesman for U.S. Customs and Border Protection, Michael Friel, said that there has been 'no policy change' affecting asylum procedures, which are based on international law aimed at protecting some of the world's most vulnerable and persecuted people. And 'we don't tolerate any kind of abuse' by U.S. border officials, he said.

Joshua Partlow, "U.S. border officials are illegally turning away asylum seekers, critics say," *Washington Post*, Jan. 16, 2017, https://www.washingtonpost.com/world/ the_americas/us-border-officials-are-illegally-turning-away-asylum-seekers-critics-say/2017/01/16/f7f5c54a-c6d0-11e6-acda-59924caa2450_story.html?utm_ term=.b345e63639bb [hereinafter Partlow Article] (cited in Compl. at 17, n.28).

13

1       The Complaint also cites a congressional hearing for the proposition that

2   CBP "has acknowledged its illegal practice [of denying asylum seekers access to

3   asylum proceedings] in sworn testimony before Congress [in which] CBP's

4   [Office of Field Operations] admitted that CBP officials were turning away

5   asylum applicants at POEs along the U.S.-Mexico border." Compl. at 33 (citing

6   *Subcomm. Hearing* (statement of John Wagner). This statement is extremely

7   misleading. In the portion of the transcript to which Plaintiffs allude,

8   Congresswoman Roybal-Allard asks CBP's Deputy Executive Assistant

9   Commissioner of Field Operations John Wagner about a "significant number of

10  reports of CBP officers at ports of entry turning away individuals attempting to

11  claim credible fear [that were] documented in the press [and] by Human Rights

12  First based on firsthand interviews of CBP officers at ports of entry turning away

13  individuals attempting to claim credible fear." *Id.* Mr. Wagner responds that at

14  one point in the past, as a result of a surge of migrants arriving at the border,

15  some ports of entry became full and could not "safely and securely hold any more

16  people," such that CBP had to work with Mexico on methods to limit the number

17  of migrants entering U.S. port of entry at any given time, so that individuals

18  could be processed as "safely and humanely" as possible. *Id.* Mr. Wagner also

19  describes contingency plans that were established to enable CBP—should

20  another surge of migrants arrive at the border—to "quickly set up temporary

21  space to house people humanely and securely while they're awaiting

22  processing. . . ." *Id.* Far from supporting Plaintiffs' contentions that Mr. Wagner

23  "acknowledged [CBP's] illegal practice . . . [of] turning away asylum

24                                          14

1  applicants," Mr. Wagner's testimony actually demonstrates CBP's determination

2  to safely process *all* individuals arriving at a port of entry, including those

3  claiming fear or intending to apply for asylum.[7]

4      Plaintiffs next allege that CBP officials engaged in an "officially sanctioned

5  policy" of denying asylum seekers access to the asylum process "at the

6  instigation [of], under the control or authority of, or with the knowledge, consent,

7  direction or acquiescence of" the named Defendants. Compl. at 2. But here too,

8  Plaintiffs fail to allege sufficient specific facts to permit a reasonable inference

9  that Defendants DHS, CBP, or CBP's Office of Field Operations created, knew

10  of, or participated in such a policy.

11      Plaintiffs acknowledge that the Acting Secretary of Homeland Security

12  "oversees all component agencies within DHS;" that Defendant Kevin K.

13  McAleenan, the Acting Commissioner of CBP, "oversees a staff of more than

14  60,000 employees;" and that Defendant Todd C. Owen, the Executive Assistant

15  Commissioner of CBP's Office of Field Operations, "exercises authority over 20

16  _____

17  [7] The Congresswoman also states in the transcript that, "The CBP southwest

18  border apprehensions in the second quarter of this fiscal year were 56 percent lower than the first quarter. However, the number of credible fear applications

19  dropped by only 21 percent, and the percentage of positive credible fear determinations was largely unchanged at 77 percent." *Id.* While these statistics

20  might partially be explained by the country conditions described by Plaintiffs in Central America's Northern Triangle, *see* Compl. at 11-16, the statistics also may

21  demonstrate that, proportional to the number of individuals attempting to enter the United States without inspection, CBP made significantly more credible fear

22  referrals in the second quarter of 2017 than in the first. Such statistics hardly help Plaintiffs state a claim that CBP has a policy of denying asylum seekers access to

23  credible fear interviews.

24                          15

major field offices and 328 POEs" and "manages a staff of more than 29,000 employees, including more than 24,000 CBP officials and specialists." Compl. at 10. Plaintiffs do not, however, allege any facts anywhere in the Complaint showing that Defendants either created or had notice of a policy or practice of denying asylum seekers access to asylum proceedings. *See generally* Compl. Without those specific factual allegations, it defies common sense to infer that Defendants adopted or acquiesced to a policy or practice of prohibiting asylum seekers from getting processed.

Plaintiffs' allegations of an official policy are analogous to the plaintiffs' allegations in *Perez*, 103 F. Supp. 3d at 1205. There, the plaintiffs alleged that CBP maintained a so-called "Rocking Policy," whereby Border Patrol agents on the U.S.-Mexico border "deem[ed] the throwing of rocks at them by persons of Hispanic descent and presumed Mexican nationality to be per se lethal force to which the agents can legitimately respond with fatal gunfire." *Id.* at 1191. The plaintiffs also alleged that the Secretary of DHS knew of and condoned this policy because she had "received an email each time deadly force was used by the CBP," had stated in a congressional hearing that "we examine each and every case in which there is a death, to evaluate what happened," and had "sign[ed] off on the CBP Use of Force Policy Handbook." *Id.* at 1204.

The Court dismissed the plaintiffs' claims against the Acting Secretary and the Commissioner under Rule 12(b)(6). It explained that "[a]t this level of the supervisory chain of command, the Court cannot draw the 'reasonable inference' that Defendants . . . were aware of a pattern or practice of excessive force in

16

response to rock throwing, absent factual allegations demonstrating [their] specific notice of a such a pattern or practice." *Id.* at 1205 (citing *Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.")). So too here, Plaintiffs have failed to allege specific factual allegations showing that any CBP officers, to the extent that they engaged in any misconduct, acted "at the instigation [of], under the control or authority of, or with the knowledge, consent, direction or acquiescence of" any other Defendants. Compl. at 2. If anything, where the plaintiffs in *Perez* at least attempted to make factual allegations showing how the supervisory defendants would have known about the alleged policy, Plaintiffs fail to allege such facts here. *Compare Perez*, 103 F. Supp. 3d at 1204–05 *with* Compl. *generally*. In other words, Plaintiffs have not pleaded sufficient facts to "nudge their [claim of an unlawful policy] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In sum, Plaintiffs have wholly failed to allege sufficient facts that would allow the Court to reasonably infer that any alleged misconduct by CBP officers in this case were part of an "officially sanctioned policy," rather than, at most, several uncoordinated and unauthorized actions of a handful of individual officers. Compl. at 2. They have not, for example, offered facts which showing that CBP officers were acting pursuant to orders from their superiors. They have not alleged facts showing that CBP officers colluded with one another to deny applicants for admission access to the asylum process. They have not alleged

17

facts showing that a majority, or even a large minority, of applicants for admission at the U.S.-Mexico border were processed in any way other than consistent with the law. Instead, they simply state that, "[b]y refusing to follow the law, Defendants are engaged in an officially sanctioned policy." Compl. at 2. This is the type of "threadbare recital" of a claim, "supported by mere conclusory statements," that is insufficient to show that Defendants have adopted an "officially sanctioned policy" of turning away asylum seekers at the border. *Iqbal*, 556 U.S. at 678. The Federal Rules "do[] not require 'detailed factual allegations,' but [they] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). The Court should dismiss their claim under Rule 12(b)(6).

## B. Plaintiffs Fail to Allege Sufficient Facts to State a Claim that CBP Believes that the Conduct of Its Officers, as Alleged in the Complaint, is Lawful

Plaintiffs allege that "Defendants contend that the conduct and practices [as alleged in the Complaint] are lawful." Compl. at 45, 48, 50, 51. That assertion is not accurate. CBP acknowledges that the law requires inspection of all applicants for admission. 8 U.S.C. §§ 1225(a)(1) ("An alien . . . who arrives in the United States shall be deemed for purposes of this chapter an applicant for admission."), (3) ("All aliens . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers."); *see*, *e.g.*, Partlow Article. CBP is aware that the law requires officers who encounter an applicant for admission at a port of entry who is subject to removal and who expresses fear of persecution to refer

1   that individual for a credible fear interview with an asylum officer. *See* 8 U.S.C.

2   § 1225(b)(1)(A)(ii) ("If an immigration officer determines that an alien . . . who

3   is arriving in the United States . . . is inadmissible [for either fraud or lack of

4   proper documents] . . . and the alien indicates either an intention to apply for

5   asylum under section 1158 of this title or a fear of persecution, the officer shall

6   refer the alien for an interview by an asylum officer. . ."); 8 C.F.R. § 235.3(b)(4)

7   ("[T]he inspecting officer shall not proceed further with removal of the alien until

8   the alien has been referred for an interview by an asylum officer . . . ."); *see also*,

9   *e.g.*, <u>*Subcomm. Hearing*</u>. And CBP acknowledges that the law requires an alien's

10  decision to withdraw his or her application for admission to be voluntary.

11  8 C.F.R. § 235.4 ("The alien's decision to withdraw his or her application for

12  admission must be made voluntarily . . .").

13      The Complaint fails to allege the existence of any facts—policy memos,

14  guidance, or any other facts—to support its assertion that CBP has adopted

15  policies or practices contrary to the requirements of the law. *See generally*

16  Compl. Without factual allegations that would allow the Court to reasonably infer

17  that such claims are plausible, the claim must be dismissed under Rule 12(b)(6).

18  *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action,

19  supported by mere conclusory statements, do not suffice." (citing *Twombly*, 550

20  U.S. at 555)). Moreover, because CBP agrees with all of the statements of law

21  provided in page 46 of the Complaint, this claim does not involve a legal case or

22  controversy. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) ("In our

23  system of government, courts have 'no business' deciding legal disputes or

24                                      19

1  expounding on law in the absence of such a case or controversy."). Therefore, the

2  claim should also be dismissed under Rule 12(b)(1).

### C. Plaintiffs' Assertion that CBP "Will Continue" to Deny Asylum Seekers Access to the Asylum Process Does Not State a Live Claim or Controversy.

5  Plaintiffs allege that Defendants' practices "will continue to result in

6  irreparable injury," Compl. at 44, 47, 50, and that Defendants will "continue to

7  act in excess of the authority granted them by Congress," Compl. at 47. In

8  support, they allege that CBP has adopted an unlawful, "officially sanctioned

9  policy" of denying asylum seekers access to asylum proceedings, *see* Compl. at

10  2; that CBP believes the alleged misconduct of its officers to be lawful, Compl. at

11  45, 48, 50, 51, and that CBP has developed a "practice" of denying asylum

12  seekers access to asylum proceedings, Compl. at 1, 2, 12, 16, 26, 27.

13  As discussed above, the claim that CBP has adopted an unlawful policy of

14  denying asylum seekers access to asylum proceedings must be dismissed for

15  failure to state a claim under Rule 12(b)(6). *See supra* § II.A. As also discussed

16  above, the claim that CBP believes its officers' conduct, as alleged in the

17  Complaint, is lawful must be dismissed both for failure to state a claim under

18  Rule 12(b)(6) and for failure to present a live case or controversy under Rule

19  12(b)(1). *See supra* § II.B.

20  The only remaining claim—that CBP "will continue" denying asylum

21  seekers access to the asylum process in the future because it has developed a

22  practice of doing so—is too speculative to create a live case or controversy under

23  Article III. *See Rizzo v. Goode*, 423 U.S. 362, 375 (1976) (stating that an

24

20

1   "unadorned finding of a statistical pattern," absent a theory about what official

2   policy or which supervisor deliberately caused it, cannot support a claim that

3   police officers' widespread misconduct constituted a live case or controversy).

4        The Supreme Court has repeatedly rejected the proposition that a claim of

5   widespread officer misconduct—even conduct that is very likely to lead to

6   additional future injuries—sufficiently establishes a present case or controversy.

7   In *Rizzo v. Goode*, the plaintiffs established at trial the existence of an "assertedly

8   pervasive pattern of illegal and unconstitutional mistreatment by police officers"

9   that was likely to continue into the future. 423 U.S. at 366, 370. But the Supreme

10  Court explained that even where "'there is a real and immediate threat of

11  repeated injury,' the attempt to anticipate under what circumstances the

12  [respondents] would be made to appear in the future before petitioners 'takes us

13  into the area of speculation and conjecture.'" *Id.* at 373 (quoting *O'Shea*, 414

14  U.S. at 495–96). The Court explained that a claim of injury cannot rest upon

15  "what one or a small, unnamed minority of policemen might do to them in the

16  future because of that unknown policeman's perception" of departmental

17  procedures. *Id.* at 372.

18       The Supreme Court reached the same conclusion in *City of Los Angeles v.*

19  *Lyons*, 461 U.S. 95 (1983), a case in which the lead plaintiff had been injured by

20  an LAPD officer putting him into a choke hold. The lawsuit alleged that LAPD

21  police officers routinely applied such dangerous choke holds at the instruction of

22  the city regardless of whether they were threatened with deadly force. *Id.* at 98.

23  The Supreme Court determined that although Lyons had stated a claim for

24

                                        21

1    damages based on the harm he had already suffered, he had no standing to seek

2    an injunction against the police department's choke hold practice. *Id.* at 109.

3    "Lyons' lack of standing," the Supreme Court explained, rests "on the

4    speculative nature of his claim that he will again experience injury as the result of

5    that practice even if continued." *Id.* The Court also noted that individual lawsuits

6    seeking redress for their actual harm suffered gave plaintiffs an adequate remedy,

7    as did the various administrative avenues available to challenge the police

8    department's practices. *Id.* The allegation that the LAPD's widespread choke

9    hold practice would continue to cause more injuries, without any evidence of an

10   official policy or instruction, did not belong in federal court. *Id.* at 113.

11       Like the plaintiffs in *Lyons* and *Rizzo*, Plaintiffs' claim here that future

12   injuries are likely to result from CBP's alleged practices fails to present a live

13   case or controversy.  In *Lyons*, the Supreme Court stated that:

> In order to establish an actual controversy in this case,
> Lyons would have had not only to allege that he would
> have another encounter with the police but also to make
> the incredible assertion either, (1) that *all* police officers
> in Los Angeles *always* choke any citizen with whom they
> happen to have an encounter, whether for the purpose of
> arrest, issuing a citation or for questioning or, (2) that the
> City ordered or authorized police officers to act in such
> manner.

*Lyons*, 461 U.S. at 105–06 (emphasis in original). Here, Plaintiffs make neither

such assertion. Plaintiffs have not alleged that *all* CBP officers at the ports of

entry always deny asylum seekers access to the asylum process. *Compare Lyons*,

461 U.S. at 105–06 *with* Compl. *generally*. Far from that, Plaintiffs have cited a

22

report acknowledging only 125 alleged incidents of asylum seekers being denied access to the asylum process during the same period that 8,000 asylum seekers were correctly processed by the 24,000 CBP employees working at the ports of entry. *Crossing the Line* at 1.

Nor does the Complaint plead sufficient facts that could support a claim that CBP ordered or authorized its officers to deny asylum seekers access to asylum proceedings. *Cf. Lyons*, 461 U.S. at 105–06. Far from that, the Complaint references a report stating that a CBP spokesperson had publicly stated that CBP had not changed any procedures related to asylum seekers under the new administration and that its procedures "are based on international law and are focused on protecting some of the world's most vulnerable and persecuted people." Partlow Article ("A spokesman for [CBP] said that there has been 'no policy change' affecting asylum procedures, which are based on international law aimed at protecting some of the world's most vulnerable and persecuted people. And 'we don't tolerate any kind of abuse' by U.S. border officials, he said.").

In sum, like the plaintiffs in *Lyons* and *Rizzo*, Plaintiffs' claim here that a widespread practice may lead to future unlawful activity on the part of some CBP officers does not present a live case or controversy. Therefore it must be dismissed for lack of jurisdiction under Rule 12(b)(1).

## CONCLUSION

Because Plaintiffs' individual and purported class claims are moot, and because Plaintiffs' other claims fail to state a claim and fail to present a live claim or controversy, Plaintiffs are entitled to none of the relief they seek. They

are not entitled to class certification or class counsel because the Doe Plaintiffs' and purported class's claims are moot. *See* Compl. at 52. They are not entitled to a judgment declaring that Defendants' policies, practices, acts, or omissions give rise to federal jurisdiction or are unlawful, because they have not sufficiently pleaded a claim of an unlawful policy and because they have not presented a live claim of widespread misconduct. *See* Compl. at 52. They are not entitled to injunctive relief requiring Defendants to comply with the law or prohibiting Defendants from engaging in the unlawful policies or acts because they have failed to present any live claims and because no controversy exists in this case over what the law requires.[8] *See* Compl. at 52. And they are not entitled to injunctive relief requiring Defendants to implement new oversight and accountability procedures because they have failed to present a live claim or controversy.[9]

By dismissing this putative class action in its entirety, the Court will in no way prevent future litigants with similar claims from obtaining relief. If any similar allegations were to arise in the future, affected individuals could bring

---

[8] Because Plaintiffs and CBP already agree that all applicants for admission must be properly processed in accordance with the law, a Court-issued injunction against Defendants to simply "comply with the law," such as Plaintiffs seek is an improper remedy. *See* Comp. at 52.

[9] Even if Plaintiffs had presented a live claim, *Lyons* would have precluded them from obtaining this type of injunctive relief, which too closely involves the Court in CBP's operational procedures. *Lyons*, 461 U.S. at 111.

1    claims for individual mandamus relief—the proper cause of action in such

2    circumstances.[10]

3

4    Respectfully submitted,

5                                    CHAD A. READLER
                                     Acting Assistant Attorney General
6                                    Civil Division

7                                    WILLIAM C. PEACHEY
                                     Director
8

9                                    GISELA A. WESTWATER
                                     Assistant Director
10

11                                   By: */s/ Genevieve M. Kelly*
                                     GENEVIEVE M. KELLY
12                                   Trial Attorney
                                     United States Department of Justice
13                                   Civil Division, Office of Immigration
                                     Litigation
14                                   District Court Section
                                     P.O. Box 868, Ben Franklin Station
15                                   Washington, DC 20044
                                     Telephone: (202) 532-4705
16                                   Facsimile: (202) 305-7000
17                                   E-mail: genevieve.m.kelly@usdoj.gov

18                                   *Attorneys for the Named Defendants*

19

20    _____

21    [10]  Mandamus is available when (1) the plaintiff's claim is clear and certain; (2)
22    the defendant official's duty is ministerial and so plainly prescribed as to be free
      from doubt; and (3) no other adequate remedy is available. *Johnson v. Reilly*, 349
23    F.3d 1149 (9th Cir. 2003).

24                                        25

# CERTIFICATE OF SERVICE

CASE NO. CV 2:17-cv-05111-JFW-JPR

I certify that on October 12, 2017, I served a copy of the foregoing JOINT STATEMENT by filing this document with the Clerk of Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to the following attorneys of record:

Robin A. Kelley
Email: robin.kelley@lw.com

Kathryn E. Shepherd
Email: kshepherd@immcouncil.org

Angelo Guisado
Email: aguisado@ccrjustice.org

Melissa E. Crow
Email: mcrow@immcouncil.org

Baher Azmy
Email: bazmy@ccrjustice.org

Wayne S. Flick
Email: wayne.s.flick@lw.com

Ghita Schwarz
Email: gschwarz@ccrjustice.org

Manuel A. Abascal
Email: manny.abascal@lw.com

Karolina J. Walters
Email: kwalters@immcouncil.org

James H. Moon
Email: james.moon@lw.com


/s/ Genevieve M. Kelly
GENEVIEVE M. KELLY
Trial Attorney
United States Department of Justice