# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AL OTRO LADO, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KIRSTJEN NIELSEN, Acting Secretary, U.S. Department of Homeland Security, in her official capacity, *et al.*,<br><br>Defendants. | Case No. 17-cv-02366-BAS-KSC<br><br>**ORDER GRANTING INDIVIDUAL PLAINTIFFS' MOTION TO PROCEED PSEUDONYMOUSLY**<br><br>**[ECF No. 128]** |

This case concerns whether the Defendants—Kierstjen Nielsen[1], Secretary of the U.S. Department of Homeland Security; Kevin K. McAleenan, Acting Commissioner of U.S. Customs and Border Protection ("CBP"); and Todd C. Owen, Executive Assistant Commissioner of the Office of Field Operations for CBP— denied the six Individual Plaintiffs[2], as well as similarly situated individuals, access

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Secretary Nielsen has been substituted in this case for former Acting Secretary Elaine C. Duke.

[2] The Individual Plaintiffs' motion uses the term "Class Representatives" although no class has been certified in this action. (ECF No. 128.) Accordingly, the Court uses the term "Individual Plaintiffs."

– 1 –

to the U.S. asylum system through unlawful policies and practices. The Individual Plaintiffs seek asylum in the United States due to their fears of physical injury and death in their home countries, Mexico and Honduras, which they attribute to drug cartels, gang violence, and, for some, severe domestic violence. They filed the Complaint using pseudonyms (ECF No. 1) and now move the Court for an order expressly permitting them to proceed pseudonymously (ECF No. 128). They contend that their fears of harm and the risks to their safety will be heightened if they are not allowed to proceed pseudonymously because their present locations will be exposed during the course of this public judicial proceeding. (*Id.* at 1.) Each Individual Plaintiff has filed a declaration in support of the motion, which describes the harm he or she faced in his or her home country. While the Defendants do not oppose the motion, neither have they agreed to stipulate to its requested relief. (ECF No. 88.) For the reasons stated herein, the Court grants the Individual Plaintiffs' motion.

## I. BACKGROUND

### A. Factual Background

The Individual Plaintiffs are non-U.S. citizens who allege that they attempted to seek asylum in the United States on multiple occasions, but were denied access by Defendants' policies, practices, and procedures concerning asylum seekers who present themselves at ports of entry ("POE") along the U.S.–Mexico border. (ECF No. 1 [hereinafter "Compl."] ¶¶1–3.) Whereas organizational Plaintiff Al Otro Lado, Inc. filed the Complaint using its name, the Individual Plaintiffs used pseudonyms. (*See generally id.*) The Complaint describes the harms the Individual Plaintiffs faced in their home countries, which caused them to seek asylum and to use pseudonyms.

Individual Plaintiffs Abigail Doe ("A.D."), Beatrice Doe ("B.D."), and Carolina Doe ("C.D.") are natives and citizens of Mexico, each of whom fled with their families to Tijuana, Mexico, where they attempted to seek asylum in the United States. (Compl. ¶¶19–21.) Plaintiff A.D. alleges that in May 2017 her husband

disappeared after he refused to allow a drug cartel to use his tractor-trailer to transport drugs. (*Id.* ¶¶1, 39.) A.D. reported her husband's disappearance to governmental authorities; she was subsequently abducted by members of the drug cartel at gunpoint who threatened to kill her and her family if she continued to investigate her husband's disappearance. (*Id.* ¶¶19, 40.) One cartel member told her she had to flee if she wanted to live. (*Id.* ¶40.) A.D. fled with her two children to Tijuana. (*Id.*) Plaintiff B.D. alleges that her nephew was targeted by the Zetas, a Mexican drug cartel in southern Mexico, for failure to pay fees and to join the cartel, and was threatened with death. (*Id.* ¶¶20, 46.) B.D. also alleges that she suffered severe domestic violence at the hands of her husband, which she reported to two Mexican government agencies. (*Id.* ¶47.) Her husband told the authorities he would continue treating his wife as he wanted. (*Id.*) She fled with her three children and nephew to Tijuana. (*Id.* ¶20, 48.) Plaintiff C.D. alleges that her brother-in-law, a high-ranking police official, was kidnapped, tortured, and dismembered by a drug cartel in Mexico. (*Id.* ¶¶21, 55.) C.D.'s husband witnessed the kidnapping and was threatened by the cartel after the murder, with the same van used in the kidnapping driving by C.D.'s house twice. (*Id.* ¶55.) C.D. alleges that two men followed her and her daughters on the way home from work one day, and several men came to her house at night, causing the family to hide in their bathroom. (*Id.*) C.D. fled with her three children to Tijuana. (*Id.* ¶¶21, 56.)

Individual Plaintiffs Dinora Doe ("D.D."), Ingrid Doe ("I.D."), and Jose Doe ("J.D.") are natives and citizens of Honduras. (Compl. ¶¶22–24.) Plaintiff D.D. alleges that MS-13 gang members repeatedly threatened to kill her and her daughter if they did not leave their house. (*Id.* ¶61.) She and her daughter were held captive by three members for three days, who repeatedly raped both of them. (*Id.* ¶¶22, 62.) D.D. and her daughter fled to a shelter in Mexico, but were threatened by MS-13 gang members there. (*Id.* ¶63.) They fled to Tijuana, where they attempted to seek asylum in the United States. (*Id.* ¶¶22, 64.) Plaintiff I.D. alleges that 18th Street

gang members murdered her mother and three siblings, and threatened to kill her. (*Id*. ¶¶23, 71.) She and her three children were subjected to severe abuse by her partner, who regularly raped her, sometimes in front of her children. (*Id*. ¶72.) Her partner burned and beat her, and, at gunpoint, threatened to kill her. (*Id*.) In June 2017, I.D. and her children fled to Tijuana, where they attempted to seek asylum in the United States. (*Id*. ¶¶22, 73.) Plaintiff J.D. alleges that he was brutally attacked by 18th Street gang members in Honduras with a machete when he fell behind on extortion payments. (*Id*. ¶¶24, 78.) In 2016, the gang kidnapped and killed his wife's cousin after she resisted the gang, and threatened to kidnap and sexually assault J.D.'s two teenage daughters. *(Id.* ¶¶24, 79.) The gang subsequently killed two of his wife's uncles. (*Id*. ¶79.) In June 2017, J.D. fled Honduras to Nuevo Laredo, Mexico, taking various buses in Honduras and Guatemala to avoid detection. (*Id.* ¶80.) In Nuevo Laredo, he was accosted by other gang members. (*Id*.) He subsequently attempted to seek asylum in Laredo, Texas. (*Id*.) After he was denied access to asylum, he was accosted once more by gang members and subsequently fled to Monterrey, Mexico. (*Id*. ¶¶24, 80, 82.)

All Individual Plaintiffs allege that they remain in fear for their lives and that of their families. (*Id*. ¶¶19–24.) They allege that they cannot remain in Mexico and that the United States is the only place where they can seek safety. (*Id*.)

### B. Procedural Background

On July 12, 2017, Plaintiff Al Otro Lado, Inc. and the Individual Plaintiffs filed a putative class action complaint claiming that Defendants' alleged policies, practices, and procedures violate statutory and regulatory rights under the Immigration and Nationality Act ("INA") and the Administrative Procedure Act ("APA"), 8 U.S.C. §§1158, 1225; 8 C.F.R. §§235.3, 235.4; constitutional due process rights under the Fifth Amendment of the U.S. Constitution; and the duty of *non-refoulement* under international law. (ECF No. 1.) Prior to the transfer of the case to this Court from the United States District Court for the Central District of

California, the Individual Plaintiffs moved for an order permitting them to proceed pseudonymously on October 16, 2017. (ECF No. 61.) Defendants filed a statement of non-opposition to the motion, stating that while they did not oppose that motion, they declined to stipulate to the relief sought. (ECF No. 88.) On November 21, 2017, the transferor court denied without prejudice the Individual Plaintiffs' unopposed motion to proceed pseudonymously. (ECF No. 113.) The Individual Plaintiffs filed the present motion on December 13, 2017. (ECF No. 128.) They represent that Defendants' position has not changed. (*Id*. at 2.) In support of their motion, each Individual Plaintiff has filed a declaration detailing his or her fears of retaliation. (ECF Nos. 128-2, 128-3, 128-4, 128-5, 128-6, 128-7.) The Court now considers the Individual Plaintiffs' motion.

## II. LEGAL STANDARD

The public has a common law right of access to judicial proceedings. *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000). Federal Rule of Civil Procedure 10(a) also requires that the title of every complaint "includes the names of all the parties." FED. R. CIV. P. 10(a). This requirement is construed as a mandate that parties use their true names in pleadings. *See John Doe 140 v. Archdiocese of Portland in Or.*, 248 F.R.D. 358, 359 (D. Or. 2008).

However, "in the unusual case", a party may proceed pseudonymously if it "is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment." *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981). The decision whether to permit a party to proceed pseudonymously is a matter of a court's discretion. *See Advanced Textile*, 214 F.3d at 1068. The fundamental question a court seeks to answer is whether "the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Id*. When a party asserts a fear of retaliation, a court must assess a party's need for anonymity by evaluating: (1) the severity of the threatened harm, (2) the reasonableness of the party's fears, and (3) the party's vulnerability to

retaliation. *Id.* In addition to these considerations, a court must always consider the precise prejudice to the opposing party of permitting a party to proceed pseudonymously at the particular stage of the proceedings, and whether the public interest is best served by requiring the litigants seeking anonymity to reveal their true identities or permitting non-disclosure. *Id.*

**III. DISCUSSION**

 **A. The Individual Plaintiffs' Need for Anonymity**

Because the Individual Plaintiffs have asserted a fear of retaliation if their true identities are revealed in this litigation, the Court first considers (1) the severity of the harm they allege they will face if they are not permitted to proceed pseudonymously, (2) the reasonableness of their fears, (3) and their particular vulnerability to retaliation. *See Advanced Textile*, 214 F.3d at 1068. Carefully reviewing these considerations, the Court concludes that the Individual Plaintiffs have sufficiently established their need to proceed with pseudonyms in this litigation.

  **1. The Severity of the Harm the Individual Plaintiffs Fear is Substantial**

First, the Individual Plaintiffs contend that the "risks to their safety" will be "unnecessarily heightened" if their identities and present whereabouts are exposed during the course of this litigation. (ECF No. 128-1 at 1, 2.) They contend that such risks are particularly pronounced because they are asylum seekers who face "significant physical threats and, in some cases, death." (*Id.* at 3.) The Individual Plaintiffs further argue that they remain at risk even if they are permitted to enter the United States because if their asylum applications are denied, they will be returned to their home countries where the individuals who harmed them remain.

Anonymity is allowed when identification "creates a risk of . . . physical or mental harm." *Advanced Textile*, 214 F.3d at 1068. In their declarations filed with the instant motion, the Individual Plaintiffs each detail physical harm they have

faced or threats of physical harm they have received, which echo the factual allegations in the Complaint and underlie their fears of future retaliation if their true names are revealed.

Plaintiff A.D. states that after she reported her husband's disappearance by a Mexican drug cartel, she was kidnapped at gunpoint by three men who threatened to kill her and her children if she continued to ask about the disappearance. (ECF No. 128-2 ¶¶4–6 ["A.D. Decl."].) The men seemed to know where she lived, her phone number, and what happened to her husband. (*Id*. ¶7.) She remains in fear that the men will find her and her family. (*Id.* ¶18.) Plaintiff B.D. states that her nephew, for whom she cares, was targeted by the Zetas' members for extortion for nearly a year, who beat him and threatened to kill him and his family if he did not make the payments. (ECF No. 128-3 ¶¶4–6 ["B.D. Decl."].) She states that her nephew has received multiple alerts that the Zetas know he fled and are looking for him in order to kill him. (*Id*. ¶¶7, 23.) Plaintiff C.D. states that her brother-in-law, a police officer, was kidnapped, tortured, and murdered by a Mexican drug cartel and that her husband, also a police officer, received multiple threats in person and by phone from a different cartel. (ECF No. 128-4 ¶¶4–6 ["C.D. Decl."].) Members of the drug cartel appeared at her brother-in-law's funeral and threatened to kill him, causing her husband to go into hiding. (*Id*. ¶7.) Plaintiff C.D. subsequently was threatened and followed, and her house was searched. (*Id.* ¶¶8–10.) She fears that the men who killed her brother-in-law may find her in Tijuana. (*Id.* ¶28.)

Plaintiff D.D. states that she received several notes from MS-13 gang members threatening to kill her and her daughter if they did not leave their home in Honduras, which was located in MS-13 territory. (ECF No. 128-5 ¶¶3–4 ["D.D. Decl."].) MS-13 gang members repeatedly raped her and her daughter over the span of three days. (*Id*. ¶5.) She and her daughter fled to southern Mexico, where MS-13 gang members approached them and indicated that the members knew where she and her daughter were stayed. (*Id.* ¶7.) Plaintiff D.D. states that she received a call

from woman who she believes tried to determine D.D.'s location for MS-13; she fears that MS-13 will find her and her daughter. (*Id*. ¶20.) Plaintiff I.D. states that she fled Honduras because her ex-boyfriend physically abused and raped her, and tried to kill her and her daughter.[3] (ECF No. 128-6 ¶¶6–7 ["I.D. Decl."].) She states that he tried to kill her the day before she fled and threatened her at gunpoint that he would kill her if she left. (*Id.* ¶¶8–9.) She fears that her ex-partner will find and kill her. (*Id*. ¶20.) Plaintiff J.D. states that he and his family left Honduras because they received threats from the 18th Street, which extorted money from his business. ((ECF No. 128-7 ¶4 ["J.D. Decl."].) He was physically attacked with a machete by gang members and his wife's cousin was kidnapped and found dead after resisting the gang. (*Id.* ¶¶4, 6.) The gang subsequently threatened to kidnap his daughter on multiple occasions. (*Id.* ¶¶7–8.) Plaintiff J.D. fears that the gang will seek retribution against him and his family, and he cites anecdotal accounts of the gang murdering persons who fled his neighborhood. (*Id.* ¶¶8, 16, 20.)

The harms that the Individual Plaintiffs identify, and which they fear will occur again if their true names are revealed, fall squarely within the types of harms that establish a need to proceed pseudonymously. "[P]hysical harm presents the paradigmatic case for allowing anonymity . . ." *Doe v. Amazon.com, Inc*., No. 11-1709, 2011 WL 13073281, at *3 (W.D. Wash. Dec. 23, 2011). Some courts have observed that the retaliation a party fears must have some nexus with the lawsuit in

---

[3] The Court does not believe that Plaintiff I.D.'s allegations concerning the violence she faced from the 18th Street gang some eight years before the instant litigation would warrant permitting her to use a pseudonym. (I.D. Decl. ¶¶4, 20.) She has not proffered sufficient facts that establish the requisite nexus between that harm and the risk of her name being made public, such as more recent threats. *Senior Execs. Ass'n v. U.S*., No. 8:12–cv–02297–AW, 2012 WL 6109108, at *2 (D. Md. Dec. 7, 2012). Relatedly, without additional facts, a reasonable person would not find that harm so temporally remote from the present day would actually be carried out in the future. *See Advanced Textile*, 214 F.3d at 1071 (plaintiff must show that "a reasonable person would believe that the threat might actually be carried out").

which the party seeks to proceed pseudonymously. *See, e.g., Doe v. Cty. of El Dorado*, No. 2:13-CV-1433-KJM, 2013 WL 6230342, at *2 (Dec. 2, 2013). That nexus is especially strong when the retaliation a party fears is from the opposing party. For example, in *Advanced Textile*, the Doe plaintiffs feared retaliation from their defendant employer, which they sued for violations of the Fair Labor Standards Act. 214 F.3d at 1068. In this case, the Individual Plaintiffs do not allege that they fear retaliation at the hands of the Defendants. However, while the *Advanced Textile* standard was set forth in the context of retaliation from a party to the litigation, the standard does not foreclose third-party retaliation as a valid basis for permitting a party to proceed pseudonymously. Various courts have permitted the use of pseudonyms to protect a party from third-party retaliation. *See, e.g., Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) (evidence indicated that the plaintiffs "may expect extensive harassment and perhaps even violent reprisals if their identities are disclosed to a . . . community hostile to the[ir] viewpoint."); *Doe v. Alger*, 317 F.R.D. 37 (W.D. Va. 2016) (Doe plaintiff's identification "would likely increase his risk of such harm from other persons."). The Complaint and the Individual Plaintiffs' declarations publicly reveal details about the violence they faced, where they faced it, from whom, and their current locations. Under these circumstances, the Court believes that the third-party retaliation the Individual Plaintiffs fear will occur if their true identities are made public bears a sufficient nexus with their participation in this lawsuit that they have established their need for anonymity.

In addition to the physical harm faced by all Individual Plaintiffs, the Court believes that Plaintiffs D.D. and I.D. warrant anonymity on the ground that their allegations of harm also concern sexual assault. "[F]ictitious names are allowed when necessary to protect the privacy of . . . rape victims." *Doe v. Blue Cross & Blue Shield United of Wisc.*, 112 F.3d 869, 872 (7th Cir. 1997); *Doe v. Penzato*, No. CV10-5154 MEJ, 2011 WL 1833007 at *3 (N.D. Cal. May 13, 2011); *cf. Jordan v. Gardner*, 986 F.2d 1521, 1525 n.4 (9th Cir. 1990) ("In keeping with the tradition of

not revealing names of the victims of sexual assault, we use initials here to protect the privacy."). Such allegations do not require substantiation of future harm to shield the identities of sexual assault survivors from the public because anonymity is also warranted if it "is necessary to preserve privacy in a matter of sensitive and [a] highly personal nature." *Advanced Textile*, 214 F.3d at 1068. Anonymity for sexual assault survivors is particularly appropriate given that a rule to the contrary might deter public disclosure of such conduct. *Penzato*, 2011 WL 1833007 at *3; *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y.2006). *But See Doe v. Cty. of Kern*, No. 1:16-cv-01469-JLT, 2017 WL 5291687, at *4 (E.D. Cal. Nov. 11, 2017) (determining that plaintiff's allegations of sexual assault were insufficient to warrant use of pseudonym because they were akin to allegations that would be brought in a sex discrimination case under Title VII). Accordingly, the Court finds that these particular Individual Plaintiffs have set forth factual allegations that establish another ground for their need for anonymity.

### 2. The Individual Plaintiffs' Fears Are Objectively Reasonable

Second, the Individual Plaintiffs contend that their fears of severe physical harm should their true identities and locations be revealed are reasonable in light of the prior physical harm and threats they faced. (ECF 128-1 at 5.) The Court agrees.

To proceed anonymously, a party's fear of harm must be objectively reasonable. *See Advanced Textile*, 214 F.3d at 1063; *EEOC v. ABM Indus.*, 249 F.R.D. 588, 594 (E.D. Cal. 2008). The party is "not required to prove" that the harm will in fact be carried out, but rather must show she was threatened and "a reasonable person would believe that the threat might actually be carried out." *Advanced Textile*, 214 F.3d at 1071. A court is required to "consider the surrounding context and other listeners' reactions to the threats." *Doe v. Kamehameha Sch.*, 596 F.3d 1036, 1044 (9th Cir. 2010). The Individual Plaintiffs fear that they will be subjected to the very harms they sought to flee if they are not permitted to proceed anonymously. (ECF No. 128-1 at 5.) The Complaint and the declarations filed in

support of the instant motion detail harms to which the Individual Plaintiffs or their family members were subjected, including kidnapping and murder, disappearance of family members, extortion, rape, and death threats by members of drug cartels, gangs, and, for some, their partners. (*See supra* III.A.1.) A reasonable person would believe that persons who make public allegations of the type the Individual Plaintiffs in this case have made might actually face further harm from the perpetrators the Individual Plaintiffs have identified, if their names are publicly revealed. Under these circumstances, the Court is reticent to place the Individual Plaintiffs in a position that would unreasonably jeopardize their safety by precluding them from using pseudonyms and resulting in disclosure of their current locations.

Reports from the United States State Department reinforce this Court's view that Plaintiffs' fears of harm from gang and drug cartel-related violence are objectively reasonable.[4] The country reports for Mexico and Honduras describe violence stemming from drug cartels and gangs, including the specific forms of harm the Individual Plaintiffs raise here. *See* U.S. STATE DEP'T BUREAU OF DEMOCRACY, *Honduras, Human Rights and Labor Country Reports on Human Rights Practices for 2016*, at 1, 4–5, 19 (2016), https://www.state.gov/documents/organization/265808.pdf; U.S. STATE DEP'T BUREAU OF DEMOCRACY, *Mexico, Human Rights and Labor Country Reports on Human Rights Practices for 2016*, 3, 17, 19 (2016), https://www.state.gov/documents/organization/265812.pdf [hereinafter "2016 Human Rights Report for Mexico"]. With respect to the Individual Plaintiffs from

---

[4] The Court *sua sponte* takes judicial notice of these reports, pursuant to Rule 201. *See* Fed. R. Evid. 201(c) ("The Court may take judicial notice on its own."). The Court concludes that the information contained in these United States State Department Human Rights reports are proper subjects of judicial notice pursuant to Rule 201(b) for the limited purpose of determining the objective reasonableness of the harm the Individual Plaintiffs fear. *See, e.g., Castillo-Villagra v. I.N.S.*, 972 F.2d 1017, 1030 (9th Cir. 1992) (taking judicial notice of State Department country report for the limited purpose of determining whether the petitioner's claims were sufficiently plausible).

Honduras who fled due to the gang violence they allege to have suffered, the 2016 Human Rights Report for Mexico indicates that "Central American gang presence spread farther into [Mexico] and threatened migrants who fled the same gangs in their home countries." *See 2016 Human Rights Report for Mexico*, at 17. For the limited purposes of the instant motion, the Court finds that these reports confirm the objective reasonableness of the Individual Plaintiffs' fear of further harm if their names are publicly revealed in this litigation. Accordingly, the Court finds that the Individual Plaintiffs' fears are objectively reasonable in light of the circumstances.

### 3. The Individual Plaintiffs Are Vulnerable to Retaliation

Third, the Individual Plaintiffs contend that they fall within a vulnerable class of persons for whom confidentiality is particularly important because they fled or are attempting to flee their home countries to seek asylum in the United States. (ECF No. 128-1 at 3.) They point to United Nations guidance and federal regulations, both of which seek to protect the confidentiality of information pertaining to asylum seekers, as confirming the particular vulnerability of asylum seekers. (*Id.* at 34.) The Court agrees.

"Vulnerability is established by the party's dependence on anonymity to avoid retaliatory harm." *A.B.T.*, 2012 WL 2995064 at *4 (citing *Advanced Textile*, 214 F.3d at 1071–72.). Certain parties are particularly vulnerable. For example, "child-plaintiffs" are deemed to be especially vulnerable, warranting their anonymity. *See Kamehameha*, 596 F.3d at 1042–43; *Stegall*, 653 F.2d at 186 ("[W]e view the youth of these plaintiffs as a significant factor in the matrix of considerations arguing for anonymity here."). But none of the Individual Plaintiffs here is a child plaintiff.[5]

---

[5] The Individual Plaintiffs suggest that because five of them are parents of minor children, the vulnerability of their children warrants permitting the Individual Plaintiffs to proceed pseudonymously. (ECF No. 128-1 at 6.) The Court rejects this suggestion. Although a party may point to harm faced by others in identifying the potential retaliatory harm faced by disclosure of her true name, *see James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993) (harm includes "whether identification poses

However, a plaintiff may nevertheless be vulnerable to retaliation, even if she does not belong to a class of persons deemed as categorically vulnerable. For example, in *Advanced Textile*, the Ninth Circuit recognized the vulnerability of "nonresident foreign workers" over whom the defendant employer exercised significant control in their working conditions. 214 F.3d at 1072. These specific attributes showed the particular vulnerability of the plaintiffs. The inquiry thus focuses on whether the circumstances demonstrate that the party is vulnerable in a way that other litigants generally are not.

This Court is persuaded that the Individual Plaintiffs are particularly vulnerable, as asylum seekers, to the retaliation they fear if their true names are revealed. The authorities provided by the Individual Plaintiffs inform this determination. "[P]rivacy and its confidentiality requirements are especially important for an asylum-seeker, whose claim inherently supposes a fear of persecution by the authorities of the country of origin and whose situation can be jeopardized if protection of information is not ensured." UNITED NATIONS HIGH COMMISSIONER FOR REFUGEES (UNHCR), *UNHCR Advisory Opinion on the Rules of Confidentiality Regarding Asylum Information*, at 2 (Mar. 31, 2005), http://www.refworld.org/docid/42b9190e4.html. As the Individual Plaintiffs observe, federal asylum regulations in the United States in turn protect the confidentiality of asylum applicants. *See* 8 C.F.R. §§208.6, 1208.6. The regulations establish a "right" of asylum seekers "to keep confidential any information contained in or pertaining to an asylum application that allows a third party to link the identity of the applicant to: (1) the fact that the applicant has applied for asylum; (2) specific facts or allegations pertaining to the individual asylum claim contained in an asylum application; or (3) facts or allegations that are sufficient to give rise to a reasonable

---

a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties"), the vulnerability consideration concerns the particular party before the court, *see Advanced Textile*, 214 F.3d at 1072.

inference that the applicant has applied for asylum." *A.B.T. v. U.S. Citizenship & Immigration Servs.*, No. 2:11-cv-02108 RAJ, 2012 WL 2995064, at *5 (W.D. Wash. July 20, 2012). These regulations "safeguard[] information that, if disclosed publicly, could subject the claimant to retaliatory measures by government authorities or non-state actors in the event that the claimant is repatriated, or endanger the security of the claimant's family members who may still be residing in the country of origin." *See* U.S. DEP'T OF HOMELAND SECURITY, U.S. Citizenship & Immigration Servs. Asylum Div., *Fact Sheet: Federal Regulations Protecting the Confidentiality of Asylum Applications* (Oct. 12, 2011). Although the Individual Plaintiffs have disclosed certain details about their personal histories, they have never publicly disclosed their true identities in filings accessible to the public.[6] The federal asylum regulations counsel that the Individual Plaintiffs have a right to maintain the confidentiality of that information to prevent retaliation they face by virtue of being asylum seekers. Accordingly, the Court concludes that the Individual Plaintiffs are vulnerable because they are particularly dependent on anonymity to avoid retaliatory harm.

### B. The Use of Pseudonyms Presents No Prejudice to the Defendants

Next, the Court considers the prejudice to the Defendants if the Court permits the Individual Plaintiffs to proceed anonymously. The Court concludes that the Defendants face no risk of prejudice, and thus this consideration does not weigh against permitting the Individual Plaintiffs to proceed pseudonymously.

---

[6] These regulations create an exception for disclosures of information to any federal, state, or local court in the United States concerning any legal action. *See* 8 C.F.R. §§208.6(c)(2), 1208.6(c)(2). At least one court has found that this exception does not mean that disclosure to a federal court permits disclosure to the public. *See A.B.T.*, 2012 WL 2995064, at *5. Although it is not clear that the regulations are properly construed in such a manner given that federal court disclosure generally presupposes public access, *see Doe v. Kamehameha Sch.*, 596 F.3d 1036, 1042–43 (9th Cir. 2010), the Individual Plaintiffs' non-disclosure of their names makes unnecessary an interpretation about the proper scope of the regulations.

Anonymity must have a limited prejudicial impact on the opposing party's ability to litigate the case, investigate the claims, and mount a defense. *Advanced Textile*, 214 F.3d at 1072. A court must assess the potential for these types of prejudice to the opposing party at each stage of the judicial proceeding. *Id*. Defendants have not claimed they will suffer any prejudice by permitting the Individual Plaintiffs to proceed pseudonymously. Indeed, the Defendants previously filed a non-opposition to the request. (ECF No. 88.) An opposing party is in the best position to articulate the specific prejudices it may face if a party proceeds pseudonymously. The failure of the Defendants to articulate such prejudices would suggest little to no prejudice. Even so, the Court has a duty to independently consider the potential for prejudice.

The Court finds no prejudice here because Defendants know the true identities of the Individual Plaintiffs. "[W]hatever knowledge defendants have of plaintiffs' identities . . . lessens their claims to be prejudiced by the use of pseudonyms." *Advanced Textile*, 214 F.3d at 1069 n.11. Before the case was transferred to this Court, the parties stipulated to an order that the Individual Plaintiffs would provide Defendants with their true names and A-numbers, permitting the Defendants to match their identities with the pseudonyms in the Complaint. (ECF No. 57.) Pursuant to the stipulation, Defendants further agreed to protect the confidentiality of this information, including by utilizing the pseudonyms assigned to the named Plaintiffs in the Complaint and sealing information filed with the Court that could reasonably be used to identify or locate any Plaintiff. (*Id*.) The transferor court entered a corresponding order on the stipulation on October 16, 2017. (ECF No. 60). Plaintiffs represent that they have since provided their names and A-numbers to the Defendants. (ECF No. 128-1 at 1.) Because the Defendants know the Individual Plaintiffs' names, they have the information they need to defend against the claims of the Individual Plaintiffs. Accordingly, the Court finds that there is no prejudice to the Defendants that would countervail the need the Individual Plaintiffs

have established for proceeding pseudonymously at this stage of the proceedings.

### C. The Public Interest is Best Served by Permitting the Individual Plaintiffs to Use Pseudonyms

Finally, the Court considers whether the public's interest is best served by requiring the Plaintiffs to proceed using their true names. The Individual Plaintiffs assert that whereas the issues raised in this case are a matter of significant public concern, revealing their true identities will not add to the public's understanding of those issues. (ECF No. 128-1 at 7.) The Court concludes that the public interest is best served by permitting the Individual Plaintiffs to proceed pseudonymously.

In reaching this conclusion, the Court recognizes, on the one hand, the "public's right to open courts" by which "there is a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *See Kamehameha*, 596 F.3d at 1042–43 (quoting *Kamakana v. City of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). Indeed, generally, "the public has a right to know who is utilizing the federal courts that its tax dollars support." *Coe v. Cook Cty.*, 162 F.3d 491, 498 (7th Cir. 1998). Permitting the Individual Plaintiffs to use pseudonyms would seemingly contravene this facet of the public interest.

However, there are other facets of the public interest that persuade this Court that the public interest overall is best served by permitting the Individual Plaintiffs to use pseudonyms. First, as the Individual Plaintiffs recognize (ECF No. 128-1 at 7), lawsuits that enforce constitutional and statutory rights benefit the public. *Advanced Textile*, 214 F.3d at 1073; *A.B.T.*, 2012 WL 2995064, at *6. Indeed, the public has an interest in such cases being decided on the merits. *Advanced Textile*, 214 F.3d at 1073; *see also Plyler v. Doe*, 457 U.S. 202 (1982) (undocumented immigrant plaintiffs proceeding anonymously in constitutional challenge to Texas law denying public school education to undocumented immigrants); *Roe v. Wade*, 410 U.S. 959 (1973) (pregnant woman proceeding anonymously in constitutional challenge to Texas statute criminalizing certain abortions). Courts should be wary

of taking actions that may chill the willingness of a party from bringing constitutional and statutory challenges. *See Advanced Textile*, 214 F.3d at 1073 (describing fear of employer reprisals that will chill an employee's willingness to challenge employer violations of employee rights). In this case, the Individual Plaintiffs bring a constitutional due process challenge under the Fifth Amendment as well as statutory challenges under various provisions of the INA arising from Defendants' alleged denial of access to the U.S. asylum system at POEs along the U.S.-Mexico border. (*See generally* ECF No. 1.) The Individual Plaintiffs allege that they presented themselves at POEs on multiple occasions and expressed a fear of returning to their home country, but were coerced by CBP officials into recanting their fears and signing forms in English falsely stating that they had no such fears. (*Id.* ¶¶19–24; A.D. Decl. ¶¶9–19; B.D. Decl. ¶¶11–22, 24–26; C.D. Decl. ¶¶14–29; D.D. Decl. ¶¶8–17; I.D. Decl. ¶¶12–18; J.D. Decl. ¶¶18–19.) The Individual Plaintiffs' challenge, and the factual allegations underlying it, undoubtedly raise important issues, the resolution of which is in the interest of the public. Requiring the Individual Plaintiffs to use their true names despite their fear of harm from the persons they have sought to flee, creates an unnecessary risk of chilling the willingness of asylum seekers from litigating important issues like the ones raised in this case.

Second, "it is difficult to see 'how disguising plaintiffs' identities will obstruct public scrutiny of the important issues in this case.'" *Kamehameha*, 596 F.3d at 1043 (quoting *Advanced Textile*, 214 F.3d at 1072). Although the public has an interest in open judicial proceedings, "[p]arty anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them." *Stegall*, 653 F.2d at 185. Here, the Individual Plaintiffs raise claims of a "systematic, illegal practice" by CPB of denying certain asylum seekers access to the U.S. asylum system (ECF No. 1 at 16.) The identity of the Individual Plaintiffs is irrelevant to the legal merits of these claims, the resolution of which will be in full view of the

public. Accordingly, the Court concludes that the public interest is best served by permitting the Individual Plaintiffs to proceed pseudonymously.

IV. **CONCLUSION & ORDER**

Based on the Court's review of the Individual Plaintiffs' need for anonymity, the potential prejudice to the Defendants, and the public interest, the Court concludes that the need for anonymity in this case outweighs countervailing considerations. Therefore, the Court **GRANTS** the Individual Plaintiffs' motion to proceed pseudonymously in this action.[7] (ECF No. 128.) However, because this Court must consider the particular prejudice to the opposing party at each stage of the proceedings, *Advanced Textile*, 214 F.3d at 1072, this grant is without prejudice to any future challenge by the Defendants at a later stage of the proceedings, and, in particular, trial. *See Doe v. Ayers*, 789 F.3d 944, 946 (9th Cir. 2015) (observing that a court should consider the "risk that the plaintiffs' use of pseudonyms might prejudice the jury in their favor or undermine [defendants'] efforts to impeach them") (citing *James v. Jacobson*, 6 F.3d 233, 240–41 (4th Cir. 1993)).

**IT IS SO ORDERED.**

DATED: December 20, 2017

Hon. Cynthia Bashant
United States District Judge

---

[7] The Court cautions that its present determination bears solely on the legal standard applicable to the issue of whether the Individual Plaintiffs may proceed under the cloak of anonymity in this federal litigation. The Court does not express, and should not be construed as expressing, any view as to the merits of the Individual Plaintiffs' claim for asylum, which are subject to a different legal standard.