MAYER BROWN LLP
Matthew H. Marmolejo (CA Bar No. 242964)
*mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
Ori Lev (DC Bar No. 452565)
(*pro hac vice*)
*olev@mayerbrown.com*
Stephen M. Medlock (VA Bar No. 78819)
(*pro hac vice*)
*smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: +1.202.263.3000
Facsimile: +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
Melissa Crow (DC Bar No. 453487)
(*pro hac vice*)
*melissa.crow@splcenter.org*
1666 Connecticut Ave. NW, Suite 100
Washington, DC 20009
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiff Al Otro Lado, Inc.*

**UNITED STATED DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

Al Otro Lado, Inc., *et al.*,

Plaintiffs,

v.

Kirstjen M. Nielsen, *et al.*,

Defendants.

Case No.: 17-cv-02366-BAS-KSC
Hon. Karen S. Crawford

**EXHIBIT 1 TO DECLARATION OF ORI LEV IN SUPPORT OF JOINT MOTION REGARDING PLAINTIFF AL OTRO LADO INC.'S REQUEST FOR EXPEDITED DISCOVERY**

Judge: Hon. Cynthia Bashant
Courtroom: 4B

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy  (NY Bar No. 2860740)
  (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz  (NY Bar No. 3030087)
  (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688)
  (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Mary Bauer (VA Bar No. 31388)
  (*pro hac vice*)
  *mary.bauer@splcenter.org*
1000 Preston Ave.
Charlottesville, VA
  Sarah Rich (GA Bar No. 281985)
  (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309)
  (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113)
  (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, DC 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

MAYER BROWN LLP
Matthew H. Marmolejo (CA Bar No. 242964)
*mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
Ori Lev (DC Bar No. 452565)
(*pro hac vice*)
*olev@mayerbrown.com*
Stephen M. Medlock (VA Bar No. 78819)
(*pro hac vice*)
*smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: +1.202.263.3000
Facsimile: +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
Melissa Crow (DC Bar No. 453487)
(*pro hac vice*)
*melissa.crow@splcenter.org*
1666 Connecticut Ave. NW, Suite 100
Washington, DC 20009
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiff Al Otro Lado, Inc.*

**UNITED STATED DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

Al Otro Lado, Inc., *et al.*,

Plaintiffs,

v.

Kirstjen M. Nielsen, *et al.*,

Defendants.

Case No.: 17-cv-02366-BAS-KSC
Hon. Karen S. Crawford

**DECLARATION OF NORA PHILLIPS IN SUPPORT OF PLAINTIFF AL OTRO LADO INC.'S MOTION FOR EXPEDITED DISCOVERY**

Judge: Hon. Cynthia Bashant
Courtroom: 4B

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy  (NY Bar No. 2860740)
  (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz  (NY Bar No. 3030087)
  (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688)
  (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Mary Bauer (VA Bar No. 31388)
  (*pro hac vice*)
  *mary.bauer@splcenter.org*
1000 Preston Ave.
Charlottesville, VA
  Sarah Rich (GA Bar No. 281985)
  (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309)
  (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113)
  (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, DC 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

I, Nora Phillips, state the following under penalty of perjury:

1. I am an attorney and the Legal Director and Co-Founder of Al Otro Lado, a non-profit organization incorporated in California.

2. On January 31, 2019, I flew with my husband, 7 year-old daughter, and close friend from Los Angeles International Airport (LAX) to Guadalajara International Airport (GDL) on Viva flight 2909 (VN2909), which arrived at GDL at midnight local time.

3. I had previously held a 180-day multiple-entry business visa that allowed me to travel throughout Mexico. I was advised by the Mexican Consulate in Los Angeles to travel using that multi-entry business visa until Al Otro Lado completed its Asociacion Civil (non-profit) registration in Mexico, at which point I would be eligible for a TN visa.

4. I live in Los Angeles, California where I supervise hundreds of cases and a staff of 6. I travel to Tijuana around 6 to 9 times per year for work, each time for 2 to 4 days. This year I have gone less frequently, due to serious health issues discussed below.

5. Given my infrequent travel to Mexico, I decided not to renew my business visa, which expired on January 18, 2019.

6. The purpose of my trip to Guadalajara was purely tourism. My friend was able to travel to visit his family in Mexico for the first time in 10 years. I did not bring my laptop and had an out-of-office setting on my email. This trip was 100% personal and of profound emotional significance for my friend, myself, and our families.

7. After landing at Guadalajara International Airport, we entered customs at approximately 12:15 a.m. The male Instituto Nacional de Migración (INM) who checked our passports informed me that my passport had an “alerta” paced on it.

8. I was taken by a female INM supervisor named Nancy into an office where she told me that the alerta had likely been placed on my passport because

someone else with my name had a pending criminal case or because I had lost my passport in 1998. Nancy said that this happened sometimes and she assured me that everything would be fine; we just needed to wait for the U.S. Embassy in Mexico City to respond and that the process usually took about 15 minutes.

9. An INM official confiscated my passport and made a copy of it. INM also confiscated my 7 year-old daughter's passport. INM did not return my and my daughter's passports until we boarded our return flight to LAX at approximately 10 a.m. the next day.

10. A few minutes after the INM official named Nancy took me into the office, another INM supervisor named Alejandra came into the room to assist with questioning me.

11. The INM officials did not seem to know why the alerta has been placed on my passport. One of the officials said that "usually, a government puts an alerta on you if there are criminal proceedings happening and they do not want you to leave." This made me think that the U.S. Government had placed an alerta on my passport, not wanting me to leave the U.S.

12. The INM officials printed out a list of questions that they asked me and wrote down the answers that I provided to them. These written answers were then provided to the U.S. Embassy in Mexico City. I was unable to see the questionnaire or get a copy of it.

13. The questions that INM asked me were about where I had lived, what languages I spoke, how much money I had on my person, how much money I planned to spend in Mexico, where I planned to stay in Mexico, why I was travelling to Mexico, when I planned to leave Mexico, whether I had any weapons, and extensive questioning as to whether there were pending criminal proceedings against me in Mexico or any other country. The INM officials asked me if I had ever had this happen to me before. I told them that it had not. The INM officers also asked me for my email address and Facebook profile name.

14. I have never previously been taken into secondary inspection at any port of entry. I have never been arrested or convicted of any crime. I also passed the background check necessary for SENTRI/Global Entry. I have been cleared for access to ICE detention facilities, local jails, California state prisons (including Pelican Bay prison), and Federal Bureau of Prison facilities.

15. The INM officers sent the questionnaire back to the U.S. Embassy in Mexico City and said that it would not take long to receive a response. At this point, my husband, daughter, and friend were standing at the opposite end of the large customs area.

16. I was also able to send a text message to my husband informing him that it appeared that I was going to be detained and removed from Mexico because an alerta has been placed on my passport.

17. I explained to the INM officers that I was a human rights attorney and worked with refugees and separated families and that my organization had sued the Trump Administration and the U.S. Department of Homeland Security several times. I also told them that a similar alerta has been placed on the passport of my colleague, Erika Pinheiro, and that my other colleague, Nicole Ramos, had her SENTRI card revoked with no explanation and that this had all happened within the past month. The INM officers then asked questions relating to the timing of the lawsuits and the revocation of the alertas. After learning this information, one of the INM officers said words to the effect of "oh, *that's* why this happened – when did you file the lawsuit?" The officer also asked whether I had sued the U.S. Government as an individual or in an organizational capacity. The INM officials documented these facts in my removal documents.

18. I informed the INM officers that I had Ehlers-Danlos Syndrome, Hypermobility Type, a rare degenerative disorder that causes chronic joint and connective tissue pain, organ rupture, and other medical issues. I told the INM

officials that I had to take medication, the condition was incurable, and that my symptoms were exacerbated by stress.

19. At 1:29 a.m., I emailed Carlos Garcia de Alba, the Consul General of Mexico in Los Angeles, to inform him of my detention and the alerta.

20. At 1:47 a.m., the INM officers informed me that I would be detained and returned to the U.S. I still had my daughter's luggage and asked the INM officers if she could come an collect her bag.

21. At my request, my husband and daughter were escorted into the room where I was being held. I told my daughter, "they're not letting mommy go into Mexico so I have to stay here and fly back home." At this point, my daughter burst into tears, grabbed me, and started screaming "no" and refused to let go. My husband told me that the whole time that he and my daughter were waiting in customs, she was asking "where is mommy?," "why are they talking to mommy?," and "I want to see mommy." While she was waiting for me in the customs hall, my daughter was crying. My husband explained that he did not think that my daughter would go anywhere in Mexico without me.

22. I told the INM officials that my daughter needed to stay with me. The INM officials agreed, but told my husband that he needed to leave.

23. I was very scared and upset. I was crying. The INM officers admonished me to calm down because it would upset my daughter.

24. My daughter and I were detained in a small room behind the office where I was questioned. The room was about 6 feet by 6 feet and had a small couch and loveseat, coffee table, and a row of plastic chairs with ripped fabric. It was very cold.

25. I felt such shame and judgment. It was obvious to me that the INM officers, private security guards, and housekeeping staff at GDL thought that I was a dangerous person. I told them that I was just an exhausted human rights lawyer

that was trying to help people. One of the INM officers said words to the effect of, "we understand and sometimes things on paper are not at all what they are in reality."

26. At around 2 a.m., the INM officials told me that I would be placed on a return flight on Viva Airlines at 6 a.m. and made sure that a representative from Viva remained to process boarding passes and get food and water for my daughter and me. The representative from Viva spoke only to the INM officials, but I overheard her talking to them about boarding passes and food.

27. I managed to get my daughter to sleep, using a thin scarf as a blanket. She had a cold and was exhausted from the flight and from being upset by my detention, as a result she slept most of the time that we were in detention together. Every time she woke up she was disoriented and I have to remind her that we were at the airport waiting to go home and that the officials were going to bring food soon.

28. I was not able to sleep. I tried to lay down on the couch in the detention area where my daughter was sleeping, across plastic chairs, and on the ground. The room was too cold and I was far too anxious and in far too much pain to sleep. I spent most of the time trying to calm myself down, trying everything possible to keep my daughter asleep, and quietly crying. At a few points I almost had to grab the small garbage can in the room because I was hypersalivating, dry-heaving, and on the verge of vomiting.

29. Mexican General Consul Garcia de Alba responded to my email at 2:02 a.m., copying Felipe Carrera Aguayo, the head of the Protection Department at the Mexican Consulate General in Los Angeles. He stated that my situation was unfortunate and recommended that I reach out to the U.S. consular official in Guadalajara.

30. At 2:16 a.m. I replied to Mexican General Consul Garcia de Alba's email. I explained that it was confirmed that I was going to be removed and that it was pointless to contact my consular officers since it was quite obvious to me that the U.S. Government had placed the alerta on my passport in the first place.

31. At 5:52 a.m., the INM officers told me that I was not going to be returned to the U.S. on the 6.am. flight, but a 10:10 a.m. flight. At this point, I was in the midst of a prolonged panic attack. My head, neck, and joints were in extreme pain. I was suppressing frequent urges to vomit. I was sweating, dizzy, and experiencing a constant twitching in my left eye. I was also enduring interstitial cystitis (which causes an urgency to urinate), numbness in several of my fingers, and extreme pain in my left breast due to a circulatory issue (Reynaud's Syndrome) triggered by cold temperatures. I had multiple knee and ankle subluxations (partial dislocations) caused by instances where I would stand and almost immediately fall down because of my vascular fragility. (I suffer from orthostatic hypotension. My blood pressure drops dramatically when I stand or change positions. This condition can be exacerbated by stress, hunger, and dehydration). I also had constant, searing pain in my left hip from a prior injury. All of this made the additional four hours of detention almost too much to bear.

32. I asked for food and water every time that the INM officials checked on my daughter and me (which occurred once every 2-3 hours). I was told that the airline would bring food and water, but it never came. I was extremely dizzy and nauseated and desperately needed water to take my medication. I forgot a prescription topical nerve anesthetic gel at home that I also needed to use nightly, so I was in a lot of pain.

33. I had to go to the bathroom twice. The first time, one of the officials stood outside the office and watched me go to the bathroom (from about 10 yards away) to make sure that my daughter and I returned. I asked to go to the bathroom again a few hours later and was escorted by a guard while being admonished for asking to go.

34. At 5:57 a.m., I wrote an email to INM officials, updating them on the lack of food and water, continued detention, and fear of issues with U.S. Customs

and Border Protection (CBP) upon my return based on the fact that I was removed from Mexico.

35. At about 8 a.m., I begged a female member of the cleaning staff for a glass of water to take my medication. She said that she would ask. At around 8:15 a.m., a male INM official dressed in a khaki uniform tersely asked me if I needed medicine and I said that I did not. I needed water to take my medicine. He yelled at me to stay in the room. Someone finally brought me water and I was able to take my medication.

36. At 8:18 a.m., I wrote an email to INM officials again, updating them on the lack of food and water, continued detention, my illness, and the fact that I had to beg for a glass of water and was then yelled at. The only response that I received from these officials was 12 hours later, saying that they did not understand what happened and that I needed to focus on taking care of my daughter.

37. At around 8:40 a.m., one of the INM officials said that they were going to get out boarding passes for the flight. We still had not eaten.

38. Two other INM officials escorted my daughter and me to our airline gate. The INM officials handed our passports and boarding passes directly to Volaris Airlines employees. We returned to LAX on Volaris Airlines flight Y4918, which departed GDL at 9:18 a.m.

39. I was absolutely terrified about my return to LAX and what would happen with CBP. I was scared they would subject me to prolonged questioning and possibly separate me from my child, as they had done to countless clients.

40. When we landed at LAX around noon on Friday, my daughter and I entered with our SENTRI cards and passports and were not subjected to any questioning and entered without incident.

Nora E. Phillips

2/3/19
Date

# Attachment A

  

**Secretaría de Gobernación**
**Instituto Nacional de Migración**
**DELEGACIÓN FEDERAL EN JALISCO**
**AEROPUERTO INTERNACIONAL DE GUADALAJARA "A"**
**ACTA NO.: AR/SL1401/100016/2019**

# ACTA DE RECHAZO AÉREA

En la Ciudad de **GUADALAJARA, JALISCO** siendo las **00:11** horas del día **01** del mes de **FEBRERO** del año **2019**, el suscrito **ROBERTO FLORES MOTA** en su carácter de **JEFE DE DEPARTAMENTO DE VERIFICACIÓN MIGRATORIA**, adscrito al Instituto Nacional de Migración en **AEROPUERTO INTERNACIONAL DE GUADALAJARA "A"** quien actúa legalmente con los testigos de asistencia que firman al margen y al final. ----------

------------------------------------------------------ **HACE CONSTAR** ------------------------------------------------------

Que habiéndose llevado a cabo la revisión de la documentación del pasajero de nombre **NORA ELIZABETH PHILLIPS** del sexo **MUJER** nacional de **ESTADOS UNIDOS DE AMÉRICA** con fecha de nacimiento **19** de **OCTUBRE** de **1980** quien exhibe **PASAPORTE** número **465079284**, documento para internación **NO APLICA** y documento migratorio **FMM** número **01145354903** mismo que arribó a este Aeropuerto, a las **00:11** del día **01** de **FEBRERO** de **2019**, procedente de **ESTADOS UNIDOS DE AMÉRICA** en el vuelo número **2909** de la Línea Aérea **AEROENLACES NACIONALES, S.A. DE C.V.**, quien durante la revisión de su documentación migratoria efectuada por **GUSTAVO RODRIGUEZ PEREZ** con el cargo de **AGENTE FEDERAL DE MIGRACION**, adscrito al Instituto Nacional de Migración en este Aeropuerto, procedió a solicitar la segunda revisión de la persona de referencia, por el siguiente motivo: **ALERTA MIGRATORIA**. ------------------------------------------------------

En relación a los hechos que motivan la presente actuación, se le advierte de las penas en que incurre quien declara y falta a la verdad ante autoridad pública distinta de la judicial en ejercicio de sus funciones o con motivo de ellas, en términos del artículo 247, fracción I, del Código Penal Federal, el extranjero manifestó: **VENGO EN EL VUELO VIVA AEROBUS 2909 PROCEDENTE DE LOS ANGELES CALIFORNIA, VIAJO CON MI HIJA, MI ESPOSO Y UN AMIGO DE NOSOTROS QUE SE LLAMA IVAN, ESTAMOS VISTANDO AL HERMANO DE NUESTRO AMIGO Y RENTAMOS UN AIRBNB EN SANTA ANITA, SOLAMENTE ESTAREMOS HASTA EL DOMINGO EN ESTA CIUDAD, YO SOY ABOGADA Y TRABAJO PARA UNA ORGANIZACION NO GUBERNAMENTAL EN PRO DE LOS DERECHOS DE LOS MIGRANTES, PRINCIPALMENTE MI LUGAR DE TRABAJO ES LOS ANGELES Y ASESORO PERSONAS EN TIJUANA, HASTA EL AÑO PASADO TENIA UNA VISA MEXICANA PARA NEGOCIOS PERO SE ME VENCIO, HACE APROXIMADAMENTE UN MES DEMANDAMOS A L GOBIERNO DE MI PAIS POR LA SEPARACION DE FAMILIAS MIGRANTES Y EL CASO SIGUE ABIERTO, ES LA PRIMERA VEZ QUE ME ENCUENTRO EN UNA SITUACION DE ESTE TIPO YA QUE HACE UN AÑO VIAJE VIA AREA A CIUDAD DE MEXICO POR MOTIVOS DE MI TRABAJO Y NO ME SUCEDIO ESTA ENTREVISTA, SIENDO TODO LO QUE DESEO MANIFESTAR..** ----------

------------------------------------------------------ **CONSTE** ------------------------------------------------------

De acuerdo a los articulos 13 fracciones IV y V y 18 fracción II de la Ley Federal de Acceso a la Información Pública Gubernamental, la información contenida en el presente documento se encuentra clasificada como confidencial y parcialmente reservada, por contener información que pudiera poner en riesgo, la vida, la seguridad o la salud de cualquier persona: causar un serio perjuicio a las actividades de verificación del cumplimiento de las leyes y las operaciones de control migratorio.

SEGOB
SECRETARÍA DE GOBERNACIÓN

SECRETARÍA DE GOBERNACIÓN
INM
INSTITUTO NACIONAL DE MIGRACIÓN

**Secretaría de Gobernación**
**Instituto Nacional de Migración**
**DELEGACIÓN FEDERAL EN JALISCO**
**AEROPUERTO INTERNACIONAL DE GUADALAJARA "A"**
**ACTA NO.: AR/SL1401/100016/2019**

Visto lo actuado, y con fundamento en los artículos 20 fracción II, 34, 35, 37 fracción I y II, 43, 44, 81, 82, 86, 88 y 91 de la Ley de Migración, en concordancia con los artículos 42, 55, 57, 58, 60, 65, 76, 78, 79, 80, 81 y 95 de su Reglamento; 77, 92 fracción I, IV, V, VIII, X y XII y 132 del Reglamento Interior de la Secretaría de Gobernación; y **1, 11 Y 15 APARTADO B, FRACCIONES I, II Y III** del Acuerdo por el que se delegan facultades para autorizar trámites migratorios y ejercer diversas atribuciones previstas en la Ley de Migración y su Reglamento a los servidores públicos adscritos a las delegaciones Federales del Instituto Nacional de Migración, publicado en el Diario Oficial de la Federación del día 13 de noviembre de 2012, se: ----------------------------------------------------------------

------------------------------------------------------------- **RESUELVE** -------------------------------------------------------------

Que en virtud que **NORA ELIZABETH PHILLIPS**, nacional de **ESTADOS UNIDOS DE AMÉRICA** , se encuentra en la hipótesis prevista por el artículo 43 **FRACCIÓN IV - SE ENCUENTRA SUJETO A PROHIBICIÓN EXPRESA DE AUTORIDAD COMPETENTE (ALERTA MIGRATORIA)** de la Ley de Migración, en concordancia con los artículos 86 y 88 del mismo ordenamiento y 65 de su Reglamento, es procedente **ORDENAR SU RECHAZO**, toda vez que **AL MOMENTO DE VERIFICAR LA INFORMACION CON EL CENTRO NACIONAL DE ALERTAS Y ENVIAR EL CUESTIONARIO CORRESPONDIENTE, LA RESPUESTA POR ESTA AUTORIDAD ES QUE HAY INCONSISTENCIAS Y QUE LA EXTRANJERA NO CUMPLE CON EL PERFIL DE VISITANTE ASÍ COMO CON LOS REQUISITOS NECESARIOS PARA INGRESAR AL PAIS, MOTIVO POR EL CUAL ESTA AUTORIDAD DETERMINA EL RECHAZO**, mismo que tendrá verificativo el día **01** de **FEBRERO** de **2019** a las **10:10** en el vuelo **918** por conducto de la Línea Aérea **CONCESIONARIA VUELA COMPAÑÍA DE AVIACIÓN S A P I DE CV**, corriendo a cargo de la aerolínea todos los gastos que se originen como consecuencia de dicho rechazo por haber propiciado el mismo, en términos del artículo 78 del Reglamento de la Ley de Migración, debiendo permanecer el extranjero en el interior de las oficinas de esta autoridad migratoria durante su estancia provisional hasta en tanto se de cumplimiento a la ejecución de la presente resolución. ----------------------------------------------------------------

Sirve de sustento a lo anterior, el Anexo 9 de la Convención de Aviación Civil Internacional que establece que el último Estado en el cual el pasajero haya permanecido y del cual haya recientemente viajado es invitado a aceptarlo para investigarlo cuando su ingreso haya sido rechazado a otro Estado. ----------------------------------------------------------------

Así lo acordó y firma el suscrito **ROBERTO FLORES MOTA** en su carácter de **JEFE DE DEPARTAMENTO DE VERIFICACIÓN MIGRATORIA** adscrito al Instituto Nacional de Migración en **AEROPUERTO INTERNACIONAL DE GUADALAJARA "A"**, en presencia de dos testigos que firman al margen y al final para debida constancia legal, enterándole a la persona en segunda revisión del contenido del presente acuerdo firmando el mismo de conformidad, quienes reciben copia de la presente en cumplimiento al artículo 78 del

De acuerdo a los articulos 13 fracciones IV y V y 18 fracción II de la Ley Federal de Acceso a la Información Pública Gubernamental, la información contenida en el presente documento se encuentra clasificada como confidencial y parcialmente reservada, por contener información que pudiera poner en riesgo, la vida, la seguridad o la salud de cualquier persona; causar un serio perjuicio a las actividades de verificación del cumplimiento de las leyes y las operaciones de control migratorio.



Morningside
Translations

450 Seventh Ave.
Tenth Floor
New York, NY 10123
(212) 643-8800

# TRANSLATION CERTIFICATION

Date: February 22, 2019

To whom it may concern:

This is to certify that the attached translation from Spanish into English is an accurate representation of the documents received by this office.

The documents are designated as:

- Rejection Minutes

Eugene Li, Project Manager in this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

Signature of Eugene Li

CERT-07, 4/05/2018, Ver 2

**Global Solutions. Local Expertise.**

www.morningtrans.com | info@morningtrans.com



**SECRETARIAT OF THE INTERIOR**
**NATIONAL MIGRATION INSTITUTE**
**JALISCO FEDERAL DELEGATION**
**GUADALAJARA INTERNATIONAL AIRPORT A**
**MINUTES NUMBER AR/SL1401/100016/2019**

## ENTRY REJECTION MINUTES

In the City of Guadalajara, Jalisco, at 00:11 hours on the 1st of the month of February, 2019, the undersigned ROBERTO FLORES MOTA, in his capacity as **HEAD OF THE DEPARTMENT OF MIGRATORY VERIFICATION**, ascribed to the National Migration Institute at the **GUADALAJARA INTERNATIONAL AIRPORT** "A" who is acting legally with the assistance witnesses who sign on the margins and at the end.____________________

**-------------------------------- CERTIFIES ---------------------------**

That having checked the documentation of the passenger named **NORA ELIZABETH PHILLIPS**, female, American citizen, born in OCTOBER 19, 1980, bearing PASSPORT number 465079284, internment document NOT APPLICABLE and migratory document FMM number 01145354903 who arrived at this Airport at 00:11 hours on February 1, 2019, from THE UNITED STATES OF AMERICA on Flight number 2909 on the airline AEROENLACES NACIONALES, S.A. DE C.V., who during the revision of her migratory documentation conducted by GUSTAVO RODRIGUEZ PEREZ in his capacity as FEDERAL IMMIGRATION AGENT, ascribed to the National Migration Institute in this Airport, proceeded to request a second revision of the person in question, due to the following reason: **MIGRATORY ALERT**____________________________

With regards to the events that motivate the present course of action, she is advised of the penalties incurred by those who declare and do not tell the truth before a public authority other than the judicial one while said authority is performing their duty, in compliance with the terms of Article 247, paragraph I, of the Federal Criminal Code, the foreign national stated**: I HAVE COME ON FLIGHT VIVA AEROBUS 2909 FROM LOS ANGELES CALIFORNIA, I AM TRAVELING WITH MY DAUHGTER, MY HUSBAND AND A FRIEND OF OURS NAMED IVAN, WE ARE VISITING OUR FRIEND'S BROTHER AND WE HAVE RENTED AN AIRBNB IN SANTA ANITA, WE WILL BE STAYING ONLY UNTIL SUNDAY IN THIS CITY, I AM A LAWYER AND I WORK FOR A NON-GOVERNMENT ORGANIZATION IN FAVOR OF MIGRANTS' RIGHTS, MY PLACE OF EMPLOYMENT IS MAINLY LOS ANGELES AND I GIVE COUNSEL TO PEOPLE IN TIJUANA. UNTIL LAST YEAR I HAD A MEXICAN BUSINESS VISA, BUT IT HAS EXPIRED. APPROXIMATELY ONE MONTH AGO WE SUED THE GOVERNMENT OF MY COUNTRY FOR SEPARATING MIGRANT FAMILIES AND THE CASE IS STILL OPEN, THIS IS THE FIRST TIME THAT I FIND MYSELF IN A SITUATION LIKE THIS BECAUSE A YEAR AGO I TRAVELED BY PLANE TO MEXICO CITY ON BUSINESS AND I WAS NOT SUBJECTED TO THIS INTERVIEW AND THAT IS ALL I WISH TO DECLARE.**

**----------------------------------------BE IT CERTIFIED-------------------------------------------**

[THREE ILLEGIBLE SIGNATURES]

In conformity with articles 13, paragraphs IV and V and 18, paragraph II of the Federal Access to Government Public Information Act, the information contained in the present document is classified as confidential and partially reserved because it contains information that can jeopardize the life, the security or the health of any person, cause serious damage to the activities of verification of law enforcement and the compliance with the laws and the operations of migratory control.

SEGOB
SECRETARÍA DE GOBERNACIÓN
SECRETARÍA DE GOBERNACIÓN
INM
INSTITUTO NACIONAL DE MIGRACIÓN

**SECRETARIAT OF THE INTERIOR**
**NATIONAL MIGRATION INSTITUTE**
**JALISCO FEDERAL DELEGATION**
**GUADALAJARA INTERNATIONAL AIRPORT A**
**MINUTES NUMBER AR/SL1401/100016/2019**

Having witnessed what transpired and in conformity with articles 20 paragraph II, 34, 35, 37 paragraphs I and II. 43, 44, 81, 82, 86, 88, 91, of the Migration Act, in conformity with articles 42, 55, 57, 58, 60, 65, 76, 78, 80, 81 and 95 of its regulations, 77, 92 paragraph I, IV, V, VIII, X and XII and 132 of the Inner Regulations of the Ministry of Interior; and **1, 11 and 15 SECTION B, paragraphs I, II, and III** of the Agreement by means of which faculties are delegated to authorize migratory procedures and exert different attributions stipulated by the Migration Act and its Regulation to public servants ascribed to the Federal delegations of the National Migration Institute, published in the Federation's official gazette on November 13, 2012 ----------------------------------------------------------------------------------------------------

**------------------------------------------ IT IS RULED ------------------------------------------**

That by virtue of the fact that **NORA ELIZABETH PHILLIPS,** a national of **THE UNITED STATES OF AMERICA,** is in the hypothesis provided by article 43 **PARAGRAPH IV- SHE IS SUBJECTED TO EXPRESS PROHIBITION BY COMPETENT AUTHORITY (MIGRATORY ALERT)** of the Migration Act, in conformity with Articles 86 and 88 of this disposition and 65 of its Regulations, it is legitimate to **ORDER HER REJECTION,** because **AT THE MOMENT THE INFORMATION WAS VERIFIED WITH THE NATIONAL ALERT CENTER AND AFTER SENDING THE CORRESPONDING QUESTIONNAIRE, THE ANSWER FORWARDED BY THIS AUTHORITY IS THAT THERE ARE DISCREPANCIES AND THAT THE FOREIGN NATIONAL DOES NOT MEET THE VISITOR'S PROFILE OR THE NECESSARY REQUIREMENTS TO ENTER THE COUNTRY, THAT IS WHY THIS AUTHORITY DETERMINED TO ISSUE HER REJECTION** which will take place on **FEBRUARY 1, 2019 at 10:10** on flight **918** pertaining to Airline **CONCESIONARIA VUELA COMPAÑÍA DE AVIACIÓN S A P I DE CV,** and the airline will pay for all the expenses that are incurred as a consequence of said rejection since they propitiated it, in the terms of article 78 of the Migration Act Regulations, and the foreign national shall remain within the offices of this migratory authority during her temporary stay until the present resolution is fulfilled.

[Two illegible signatures]

As the support of all the above, Annex 9 of the International Civil Aviation Convention that establishes that the last State in which the passenger has been, from which they have traveled is invited to accept them and investigate them when they have been prevented from entering another State. ------------------------------------------------------------------

That is what the undersigned **ROBERTO FLORES MOTA** ruled and signed in his capacity as **HEAD OF THE DEPARTMENT OF MIGRATORY VERIFICATION** ascribed to the National Migration Institute at the **GUADALAJARA INTERNATIONAL AIRPORT A**, in the presence of two witnesses who signed on the margins and at the end so that it is properly and legally recorded, advising the person upon the second revision of the content of the present agreement as she signed it in conformity who receives a copy of the present document in compliance with article 78 of [text cut off]

In conformity with articles 13, paragraphs IV and V and 18, paragraph II of the Federal Access to Government Public Information Act, the information contained in the present document is classified as confidential and partially reserved because it contains information that can jeopardize the life, the security or the health of any person, cause serious damage to the activities of verification of law enforcement and the compliance with the laws and the operations of migratory control.