1  MAYER BROWN LLP
2    Matthew H. Marmolejo (CA Bar No. 242964)
     *mmarmolejo@mayerbrown.com*
   350 S. Grand Avenue
3  25th Floor
   Los Angeles, CA 90071-1503
4    Ori Lev (DC Bar No. 452565)
     (*pro hac vice*)
5    *olev@mayerbrown.com*
     Stephen M. Medlock (VA Bar No. 78819)
6    (*pro hac vice*)
     *smedlock@mayerbrown.com*
7  1999 K Street, N.W.
   Washington, D.C. 20006
8  Telephone:  +1.202.263.3000
   Facsimile:   +1.202.263.3300
9
   SOUTHERN POVERTY LAW CENTER
10   Melissa Crow (DC Bar No. 453487)
     (*pro hac vice*)
11   *melissa.crow@splcenter.org*
   1666 Connecticut Ave. NW, Suite 100
12 Washington, DC 20009
   Telephone: +1.202.355.4471
13 Facsimile: +1.404.221.5857

14 *Additional counsel listed on next page*
   *Attorneys for Plaintiff Al Otro Lado, Inc.*
15
                **UNITED STATES DISTRICT COURT**
16
               **SOUTHERN DISTRICT OF CALIFORNIA**
17

18 Al Otro Lado, Inc., *et al.*,          Case No.:  17-cv-02366-BAS-KSC
                                          Hon. Karen S. Crawford
19            Plaintiffs,
                                          [DISCOVERY MATTER]
20    v.
                                          **JOINT MOTION REGARDING**
21 Kirstjen M. Nielsen, *et al.*,         **PLAINTIFF AL OTRO LADO INC.'S**
                                          **REQUEST FOR EXPEDITED**
22            Defendants.                 **DISCOVERY**

23                                        **NO ORAL ARGUMENT UNLESS**
24                                        **REQUESTED BY THE COURT**

25                                        [***Declaration of Ori Lev Filed***
26                                        ***Concurrently***]

27

28

CENTER FOR CONSTITUTIONAL RIGHTS
    Baher Azmy  (NY Bar No. 2860740)
    (*pro hac vice*)
    *bazmy@ccrjustice.org*
    Ghita Schwarz  (NY Bar No. 3030087)
    (*pro hac vice*)
    *gschwarz@ccrjustice.org*
    Angelo Guisado (NY Bar No. 5182688)
    (*pro hac vice*)
    *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
    Mary Bauer (VA Bar No. 31388)
    (*pro hac vice*)
    *mary.bauer@splcenter.org*
1000 Preston Ave.
Charlottesville, VA
    Sarah Rich (GA Bar No. 281985)
    (*pro hac vice*)
    *sarah.rich@splcenter.org*
    Rebecca Cassler (MN Bar No. 0398309)
    (*pro hac vice*)
    *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030

AMERICAN IMMIGRATION COUNCIL
    Karolina Walters (DC Bar No. 1049113)
    (*pro hac vice*)
    *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, DC 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

Case 3:17-cv-02366-BAS-KSC   Document 228-2   Filed 02/25/19   PageID.4930   Page 3 of 21
Case 3:17-cv-02366-BAS-KSC   Document 227-1   Filed 02/22/19   PageID.4819   Page 3 of 21
3 of 21

1

# TABLE OF CONTENTS

2                                                                                          Page

3   I.      Introduction ................................................................................... 2

4   II.     Argument ........................................................................................ 8

5   III.    Conclusion ................................................................................... 13

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. United States,*
    317 U.S. 269 (1942) ......................................................................... 8

*Al-Anazi v. Bush,*
    370 F. Supp. 2d 188 (D.D.C. 2005) .................................................. 8

*Am. LegalNet, Inc. v. Davis,*
    673 F. Supp. 2d 1063 (C.D. Cal. 2009)....................................... 10, 12

*Apple Inc. v. Samsung Elecs. Co.,*
    768 F. Supp. 2d 1040 (N.D. Cal. 2011) ........................................... 10

*Bona Fide Conglomerate, Inc. v. SourceAmerica,*
    2014 WL 12515242 (S.D. Cal. 2014) .............................................. 11

*Chambers v. NASCO, Inc.,*
    501 U.S. 32 (1991) ............................................................................ 9

*Citizens for Quality Educ. San Diego v. San Diego Unified Sch. Dist.,*
    2018 WL 1150836 (S.D. Cal. 2018) ........................................*passim*

*East Bay Sanctuary Covenant v. Trump,*
    --- F. Supp. 3d ---, 2018 WL 6660080 (N.D. Cal. 2018) ................. 5

*Goodyear Tire & Rubber Co. v. Haeger,*
    137 S. Ct. 1178 (2017) ...................................................................... 9

*Interserve, Inc. v. Fusion Garage PTE, Ltd.,*
    2010 WL 143665 (N.D. Cal. 2010).................................................. 10

*JP Morgan Chase Bank, N.A. v. Reijtenbagh,*
    615 F. Supp. 2d 278 (S.D.N.Y. 2009) .............................................. 11

*Light Salt Investments, LP v. Fisher,*
    2013 WL 3205918 (S.D. Cal. 2013) ................................................ 11

*Monsanto Co. v. Woods*,

    250 F.R.D. 411 (E.D. Mo. 2008)........................................................................ 12

*Stern v. Cosby*,

    246 F.R.D. 453 (S.D.N.Y. 2007).............................................................. 11, 13

*Tracfone Wireless, Inc. v. Adams*,

    304 F.R.D. 672 (S.D. Fla. 2015) ........................................................................ 11

*United States v. N.Y. Tel. Co.*,

    434 U.S. 159 (1977) .............................................................................................. 9

**Statutes and Rules**

28 U.S.C. 1651...................................................................................................... 7, 8

Fed. R. Civ. P. 26..................................................................................................... 7

Fed. R. Civ. P. 30.................................................................................................. 7, 8

S.D. Civ. R. 26.1(b) ................................................................................................. 1

Chambers' Rules § 5 ................................................................................................ 1

**Other Authorities**

Nicole Lewis, *Sessions's Claim that "Dirty Immigration Lawyers"*

    *Encourage Clients to Cite "Credible Fear*," Wash. Post., Oct. 26,

    2017, https://goo.gl/YH8qrv .............................................................................. 6

Kate Linthicum et al., *Immigrant Rights Attorneys and Journalists*

    *Denied Entry into Mexico*, L.A. Times (Feb. 1, 2019),

    goo.gl/UFweyQ. ............................................................................................ 3, 13

Donald Trump, Address to the Nation on the Crisis at the Border (Jan.

    8, 2019), https://goo.gl/ASucCQ ..................................................................... 2

Donald Trump, Remarks by President Trump on the National Security

    and Humanitarian Crisis on our Southern Border (Feb. 15, 2019),

    https://goo.gl/D75BgR...................................................................................... 2

*Mission*, U.S. Dep't of Homeland Sec. (Aug. 29, 2016),
goo.gl/6CMpW1 ................................................................................. 13

Ryan Devereaux, *Journalists, Lawyers, and Activists Working on the
Border Face Coordinated Harassment from U.S. and Mexican
Authorities*, The Intercept (Feb. 8, 2019), https://goo.gl/xMqkQ7 ................... 13

White House, *Confronting the Urgent Crisis at Our Border* (Nov. 1,
2018), https://goo.gl/XrFkqV ............................................................... 2

JOINT MOTION REGARDNG PLAINTIFFS'
REQUEST FOR EXPEDITED DISCOVERY

Pursuant to the Court's Rules, Plaintiff Al Otro Lado, Inc. ("AOL" or "Plaintiff") respectfully submits this Joint Motion Regarding AOL's Request for Expedited Discovery.

Pursuant to Civil Local Rule 26.1(b) and the Chambers' Rules (*see* § 5.B), and as detailed below, the parties met and conferred regarding these issues, but were unable to resolve their dispute. Plaintiff's counsel first reached out to defense counsel on February 4, requesting the voluntary production of the information that is the sought by the discovery that is the subject of this motion and sought to meet and confer regarding this motion. *See* Lev Decl. ¶ 8. On February 11, counsel held a telephonic meet and confer and Defendants' counsel indicated that they would oppose this motion. *Id.* ¶ 9. On February 14, counsel for AOL provided opposing counsel with a draft of this Joint Motion and the accompanying declarations of AOL employees[1] and suggested a schedule by which the parties would finalize the Joint Motion by February 22 in accordance with Chambers' Rules § 5.D. *See id.* ¶ 12. Opposing counsel responded that they needed 8 business days and 13 calendar days – until close of business on February 27 – to submit their portion of the motion. *Id.* ¶ 13. Notwithstanding Plaintiff's counsels' offer to delay the filing to February 25, defense counsel persisted in their position that they could not provide Defendants' portion of the motion prior to February 27, and stated that counsel for AOL should inform the Court that Defendants intend to file on that date. *Id.* ¶ 15. Accordingly, AOL submits only its arguments herein.[2]

---

[1] The materials provided to defendants' counsel inadvertently omitted a 2-page attachment to one of the declarations, which was subsequently provided on February 20. *Id.* ¶ 12.

[2] Counsel for AOL contacted Chambers on February 14 with the intention of filing an *ex parte* application addressing the discovery dispute raised herein. *See* Lev Decl. ¶ 11. The Court expressed a preference that the parties bring a joint motion instead. *Id.* As a result, AOL has sought the Government's participation in accordance with Chambers Rules and has styled this application as a joint motion even though it contains only AOL's position.

## I.   INTRODUCTION

AOL serves some of the world's most vulnerable people—individuals who have fled death threats, targeted violence, assault, and rape in their home countries, and traveled hundreds of miles with very few resources.   Second Am. Compl. ("SAC") ¶¶ 17-23 (Dkt. 189). Those displaced migrants now find themselves languishing in makeshift shelters along the U.S.-Mexico border, awaiting access to the U.S. asylum process.  *Id.* ¶¶ 24-35, 40-44. The Executive Branch has described these conditions as a "humanitarian crisis" and a "national emergency." *See, e.g.*, White House, *Confronting the Urgent Crisis at Our Border* (Nov. 1, 2018), https://goo.gl/XrFkqV (describing "aliens claiming credible fear" of return to their home countries as a "growing crisis . . . as illegal aliens stream across our border.") (capitalization and emphasis omitted); Donald Trump, Address to the Nation on the Crisis at the Border (Jan. 8, 2019), https://goo.gl/ASucCQ (referring to asylum seekers waiting at the U.S. border as a part of a "cycle of human suffering" and describing crimes committed against migrants seeking to access the asylum process in the United States); Donald Trump, Remarks by President Trump on the National Security and Humanitarian Crisis on our Southern Border (Feb. 15, 2019), https://goo.gl/D75BgR.

As the only immigration legal services provider in Tijuana, AOL is on the front lines of this crisis.  AOL provides and coordinates legal and humanitarian assistance for these asylum seekers, provides know-your-rights education, conducts human rights monitoring, and undertakes advocacy to promote the rights of the population it serves.  *See* SAC ¶¶ 19-23.

However, in the weeks since the Court lifted the stay of discovery that had previously governed this case (*see* Dkt. 196), AOL's Legal Director, Litigation and Policy Director, and Refugee Program Director, each of whom is integrally involved in prosecuting this case, have had their travel restricted by U.S. and Mexican

JOINT MOTION REGARDNG PLAINTIFFS'
REQUEST FOR EXPEDITED DISCOVERY

immigration authorities. AOL's Legal Director and Litigation and Policy Director have been deported from Mexico to the United States based on passport alerts presumably issued by the U.S. government. *See generally* Kate Linthicum et al., *Immigrant Rights Attorneys and Journalists Denied Entry into Mexico*, L.A. Times (Feb. 1, 2019), goo.gl/UFweyQ.

On January 10, 2019, as Nicole Ramos, the Director of AOL's Border Rights Project, was passing through the San Ysidro vehicle crossing from Mexico into the United States, she was sent to secondary inspection. Ex. 2 (Ramos Decl.) ¶¶ 1, 3.[3] Secondary inspection is typically used when a CBP officer at a Port of Entry ("POE") cannot verify a traveler's information or believes that the traveler may be committing a crime. While in secondary inspection at the San Ysidro POE, a CBP officer informed Ramos that he had instructions to seize her SENTRI card.[4] *Id.* ¶ 4. The officer then confiscated the card. *Id.* Following this encounter, Ramos learned through correspondence with a Congressional representative that CBP subsequently revoked her card. CBP's confiscation and revocation of Ramos' SENTRI card was improper—a SENTRI card is "valid for 5 years unless it is revoked due to [the SENTRI card holder] becoming guilty of a criminal offense, charged with a customs or immigration offense, or declared inadmissible to the U.S. under immigration law."[5] CBP had no such basis to revoke and confiscate Ramos' SENTRI card. *Id.* ¶ 6. In addition, Ramos' SENTRI card was revoked at a time when CBP's SENTRI office was closed due to a lapse in appropriations, meaning that the decision to revoke her SENTRI card was likely made by higher-level government officials that were not based in that office. *Id.* ¶ 7.

---

[3] All exhibits supporting Plaintiff AOL's position are attached to the Declaration of Ori Lev in Support of the Joint Motion and are cited herein as "Ex."

[4] SENTRI means Secure Electronic Network for Travelers Rapid Inspection. SENTRI cards are issued to low-risk travelers to expedite their clearance at POEs by using designated vehicle traffic lanes. *See* https://www.cbp.gov/travel/trusted-traveler-programs/sentri.

[5] *See* https://help.cbp.gov/app/answers/detail/a_id/969/~/sentri-eligibility-requirements.

On January 29, 2019, Mexican immigration officials detained Erika Pinheiro, AOL's Director of Litigation and Policy, as she attempted to enter Mexico at the pedestrian crossing at the San Ysidro East POE. Ex. 3 (Pinheiro Decl.) ¶¶ 1, 3. The Mexican immigration officials informed Pinheiro that a foreign government—*i.e.*, not Mexico—had issued a migratory alert on her passport, something that is generally done for individuals subject to pending criminal prosecutions. *Id.* ¶ 3. Mexican officials provided no additional information to Pinheiro about the nature of the alert or the government that issued it. *Id.*  While she was detained in Mexican custody, Pinheiro informed Mexican officials that her Mexican-born child and her partner were both waiting for her to return to their home in Mexico. *Id.* ¶ 4. Pinheiro even showed the Mexican immigration officials a photograph of her child's birth certificate. *Id.*  While she was detained, Pinheiro twice requested access to counsel who had arrived at the San Ysidro POE to advocate for Pinheiro, but Mexican immigration officials denied her access. *Id.* ¶¶ 5, 6. After detaining Pinheiro for two hours, the Mexican government denied her entry into Mexico and physically removed her from Mexican territory. *Id.* ¶ 7.  As part of her duties for AOL, Pinheiro travels regularly between the United States and Mexico and had never before been denied entry to Mexico. *Id.* ¶¶ 8, 9.

On January 31, 2019, the Legal Director and co-founder of AOL, Nora Phillips, attempted to fly to Guadalajara for a personal trip with her husband, her close friend, and her seven-year-old daughter.  Ex. 1 (Phillips Decl.) ¶¶ 3, 7.  Upon arriving at the Guadalajara airport after midnight, Mexican immigration officers informed Phillips that her passport had an "alert" placed on it by a non-Mexican government. *Id.* ¶¶ 8-12.  When Phillips informed the officials that she was a human rights lawyer currently suing the U.S. government, the officers responded with words to the effect of "oh *that's* why this happened." *Id.* ¶ 18.  Phillips had entered

JOINT MOTION REGARDNG PLAINTIFFS'
REQUEST FOR EXPEDITED DISCOVERY

1  Mexico on numerous prior occasions and had never been detained or harassed on

2  prior trips. *Id.* ¶¶ 4, 14.

3       The Mexican officials detained Phillips and her terrified, crying young

4  daughter for the next nine hours, largely in an extremely cold six-foot-by-six-foot

5  room. Ex. 1 ¶¶ 21, 24, 39.  Despite repeated requests for food and water for herself

6  and her child, Phillips received nothing for the first eight hours of her ordeal, and

7  was finally given water to take her medication only after begging and being berated

8  by Mexican immigration personnel. *Id.* ¶¶ 26-38. Phillips has serious medical

9  conditions, requiring medication and exacerbated by stress, that made her overnight

10 detention with her daughter physically and emotionally agonizing. *Id.* ¶¶ 19, 29, 32.

11      Prior to these events, Ms. Ramos, Ms. Pinheiro and Ms. Phillips had traveled

12 to and from Mexico routinely and repeatedly without incident.  Ex. 2 ¶¶ 5, 7; Ex. 3

13 ¶ 8; Ex. 1 ¶¶ 4, 14-15.  Their travels were necessary to carry out their organizational

14 mission to serve the asylum-seeking population on the Mexican side of the border

15 and, where logistically feasible, to represent these asylum seekers in removal

16 proceedings in U.S. immigration court. Ex. 2 ¶ 5.  In addition, their travel facilitated

17 the origination and the continued prosecution of this case by enabling them to

18 observe conditions at and near POEs, interact with asylum seekers on the Mexican

19 side of the border, and meet with counsel. Ex. 3 ¶ 9.  In addition to being a plaintiff

20 in *Al Otro Lado v. Nielsen*, AOL is a plaintiff in another high-profile case

21 challenging Defendants' unlawful policies at the border, *East Bay Sanctuary*

22 *Covenant v. Trump*, --- F. Supp. 3d ---, 2018 WL 6660080 (N.D. Cal. 2018) (issuing

23 preliminary injunction declaring unlawful a DHS regulation that would bar asylum

24 for individuals crossing the U.S.-Mexico border between POEs).

25      These actions appear designed to impede the ability of AOL's directors to

26 travel between the United States and Mexico in support of AOL's core humanitarian

27 mission of assisting migrants on both sides of the border. *See* Ex. 1 ¶¶ 4-5.  AOL's

28

JOINT MOTION REGARDNG PLAINTIFFS'
REQUEST FOR EXPEDITED DISCOVERY

prosecution of this case, which focuses on the policies and practices implemented by the Government to deny migrants access to the asylum process, is a vital part of that mission. AOL staff must be able to cross the U.S.-Mexico border frequently, and without fear of retribution, in order to confer with their clients and other migrants and provide them with the assistance that they need. That need is particularly acute given the Government's efforts, described in the Second Amended Complaint, to preclude individuals from accessing, or limit their access to, the asylum process.

Moreover, the conduct that AOL's directors endured appears to have been a part of a larger scheme of retaliation against AOL and its representatives by Defendants and the agencies that they oversee. Indeed, during the months of February, March, and April 2017, Ramos received reports from asylum seekers that CBP officers at the San Ysidro POE had referred to AOL and its representatives as a "fraud," "fake attorneys," "troublemakers," and then accused the asylum seekers of having "been coached" by AOL to provide false accounts of persecution. Ex. 2 ¶¶ 8, 9. CBP officers also told asylum seekers that AOL "had lied to them" about their rights in the asylum process and that AOL would charge them exorbitant fees to secure their release from detention.[6] *Id.* All of these statements are false.

AOL has attempted to determine the source of this apparent campaign of harassment without the Court's intervention. On multiple occasions, plaintiffs' counsel requested that the U.S. Government provide it with basic facts concerning the reason for these incidents. Rather than cooperating with AOL, the Government has, thus far, failed to provide AOL with a single document regarding these incidents and has informed AOL that it will oppose any motion for expedited discovery into

---

[6] In line with all of this disparaging commentary specifically directed at AOL, the former Attorney General referred to lawyers providing counsel for asylum seekers as "dirty immigration lawyers" that encourage migrants to make "fake claims" of asylum. Nicole Lewis, *Sessions's Claim that "Dirty Immigration Lawyers" Encourage Clients to Cite "Credible Fear*," Wash. Post., Oct. 26, 2017, https://goo.gl/YH8qrv.

JOINT MOTION REGARDNG PLAINTIFFS'
REQUEST FOR EXPEDITED DISCOVERY

this issue.  More troublingly, the Government has failed to deny that it is responsible for this apparent retribution.

Therefore, pursuant to Federal Rule of Civil Procedure 26(d)(1), Plaintiff AOL moves this Court for leave to take expedited discovery, limited to the question whether, and to what extent, this conduct constitutes retaliation by the U.S. government for AOL's participation in this lawsuit, or an attempt by the U.S. government to deny AOL access to its immigration clients in Mexico in a manner that would severely hamper the continued prosecution of this litigation. Should discovery uncover evidence that supports Plaintiff's expectation that the conduct described above has been directed by U.S. government officials, Plaintiff intends to seek an order from this Court enjoining further retaliatory interference with the right of AOL employees to travel to Mexico to effectively prosecute this case and carry out AOL's mission.

If this limited discovery were to reveal that, in fact, Defendants took actions in retaliation for AOL's advocacy, including advocacy in this case, the Court retains authority under its inherent power to manage its docket and its authority under the All Writs Act, 28 U.S.C. 1651, to preserve its jurisdiction.  AOL therefore seeks leave to serve the following discovery on Defendants, to determine whether the Government has been retaliating against AOL personnel and, if warranted, to seek relief from this Court prohibiting further retaliation:

- On the date of the Court's order granting expedited discovery, Plaintiff will serve the attached requests for production and Rule 30(b)(6) deposition notice (*see* Exs. 4 & 5);

- 14 days from the date of the Court's order granting expedited discovery, Defendants will serve their responses and objections to Plaintiff's requests for production and Rule 30(b)(6) deposition notice; and

JOINT MOTION REGARDNG PLAINTIFFS'
REQUEST FOR EXPEDITED DISCOVERY

produce responsive, non-privileged documents in their possession, custody, and control.

- 28 days from the date of the Court's order granting expedited discovery, Defendants will make one or more Rule 30(b)(6) representatives available to testify on the topics identified in Plaintiff's Rule 30(b)(6) deposition notice.[7]

## II.  ARGUMENT

Expedited discovery is warranted to ascertain (a) whether these seemingly coordinated actions by U.S. and Mexican immigration officials constitute retaliation for AOL's prosecution of this lawsuit; (b) whether they are an attempt to deny AOL access to asylum seekers in Mexico; and (c) the scope of any retaliatory scheme.

If discovery were to reveal that, in fact, Defendants were partly responsible for the AOL directors' denial of access to Mexico or the hindrance of their travel in retaliation for AOL's advocacy on behalf of asylum seekers generally or for its role in the prosecution of this case specifically, the court would be empowered to issue an injunction to address their retaliatory conduct.  Under the All Writs Act, courts are empowered to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. 1651.  A court is broadly empowered to issue an injunction under the All Writs Act if it is "calculated in [the court's] sound judgment to achieve the ends of justice entrusted to it." *Adams v. United States*, 317 U.S. 269, 273 (1942)); *see also Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 195 (D.D.C. 2005) (court may "enjoin almost any conduct which, left unchecked, would have . . . the practical effect of diminishing the court's

---

[7] Plaintiffs met and conferred with Defendants on February 11, 2019 regarding this motion. *See* Lev. Decl. ¶ 9.  To the extent that the Defendants have concerns regarding the scope, relevance, burden, or confidentiality of the information requested, Plaintiffs are willing to meet and confer with Defendants regarding those concerns in order to attempt to resolve those matters without further intervention by the Court.  Defendants have also been provided with Privacy Act waivers signed by Ms. Phillips, Ms. Pinheiro and Ms. Ramos to facilitate Defendants' document production.

JOINT MOTION REGARDNG PLAINTIFFS' REQUEST FOR EXPEDITED DISCOVERY

power to bring the litigation to a natural conclusion.") (quoting *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1102 (11th Cir. 2004)).  In addition, an All Writs Act injunction may be issued not only to parties to the suit, but also to third parties who "are in a position to frustrate the implementation of a court order or the proper administration of justice."  *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977).  Should discovery confirm Plaintiff's suspicions, it would reveal that Defendants are using their considerable authority to interfere with a party's ability to meaningfully prosecute a case against them.  Remediating that abuse of process would plainly be "in aid of" the court's jurisdiction and to "achieve the ends of justice" entrusted to this Court.

Further, this Court has inherent "equitable power concerning relations between the parties."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).  This power flows from all federal courts' "'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"  *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)).  Such inherent authority includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial process," *id.* (quoting *Chambers*, 501 U.S. at 45), and "the power to punish for contempts" of court.  *Chambers*, 501 U.S. at 44 (quoting *Ex parte Robinson*, 19 Wall. 505, 510 (1874)) (alteration omitted).  A scheme by Defendants to harass Plaintiff AOL and interfere with its staff members' ability to travel—and hence to observe conditions on the border and gather evidence relevant to this case—would clearly be an attempt to manipulate this litigation for their own benefit.  This Court has inherent authority to restore the correct balance of power between the parties before it, and to sanction Defendants for any abuses of the judicial process that this expedited discovery may uncover.

JOINT MOTION REGARDNG PLAINTIFFS'
REQUEST FOR EXPEDITED DISCOVERY

"Courts may permit expedited discovery before the Rule 26(f) conference upon a showing of good cause," which exists "when the need for expedited discovery, in consideration with the administration of justice, outweighs the prejudice to the responding party." *Citizens for Quality Educ. San Diego v. San Diego Unified Sch. Dist.*, 2018 WL 1150836, at *2 (S.D. Cal. 2018) (Bashant, J.). In assessing good cause, courts consider the following "non-exhaustive" factors:

> (1) whether a preliminary injunction is pending, (2) the breadth of the discovery requests, (3) the purpose for requesting the expedited discovery, (4) the burden on the defendant of compliance with the requested discovery, and (5) how far in advance of the typical discovery process the request was made.

*Id.* (citing *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009)) (emphasis omitted). These factors weigh strongly in favor of expedited discovery here. First, while a preliminary injunction motion is not currently pending, the purpose of the discovery is to enable Plaintiff to determine whether injunctive relief is necessary to protect AOL's rights, including its ability to effectively prosecute this lawsuit, prevent irreparable harm to its directors, and stop the government from unlawfully retaliating against it for filing this lawsuit. Discovery is necessary for Plaintiff to evaluate whether to seek immediate, urgent injunctive relief, and thus counsels in favor of granting expedited discovery here. *See Apple Inc. v. Samsung Elecs. Co.*, 768 F. Supp. 2d 1040, 1044 (N.D. Cal. 2011) ("limited expedited discovery" granted where the "need for such discovery to evaluate a preliminary injunction motion outweighed the relatively minimal prejudice to [the opposing party]" after the requesting party "indicated that it may seek a preliminary injunction motion"); *accord, e.g.*, *Interserve, Inc. v. Fusion Garage PTE, Ltd.*, 2010 WL 143665, at *2 (N.D. Cal. 2010) ("Expedited discovery will allow plaintiff to

determine whether to seek an early injunction."); *Light Salt Investments, LP v. Fisher*, 2013 WL 3205918, at *2 (S.D. Cal. 2013) (granting expedited discovery where, "although a motion for preliminary injunction is not currently pending, Plaintiff indicates that it plans to file a motion for preliminary injunction in the near future"); *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2014 WL 12515242, at *2 (S.D. Cal. 2014) ("[T]here is not a motion for preliminary injunction in this case. However, SourceAmerica indicates that it may seek an injunction once it has had an opportunity to review the [requested discovery]. . . . Therefore, this factor weighs in favor of granting SourceAmerica's motion.").

The "purpose for requesting the expedited discovery" also militates in favor of accelerated discovery here. *Citizens for Quality Educ.*, 2018 WL 1150836, at *2. As explained above, the purpose of Plaintiff's request is to discover whether Defendants' actions are part of an unlawful retaliatory scheme, which will in turn allow Plaintiff to seek protection against further irreparable harm to AOL's representatives with a motion for injunctive relief. Preventing irreparable harm is undoubtedly a proper purpose for expediting discovery. *See, e.g.*, *id.* at *3–4 (allowing expedited discovery to "more fully develop the factual record" with respect to plaintiffs' claimed irreparable harms); *Tracfone Wireless, Inc. v. Adams*, 304 F.R.D. 672, 673 (S.D. Fla. 2015) ("[E]xpedited discovery is warranted so that TracFone may mitigate any additional irreparable harm caused by Defendants' ongoing alleged scheme.").

Similarly, courts have not hesitated to grant expedited discovery to uncover alleged litigation-related misconduct like the apparent retaliatory scheme here. *See Stern v. Cosby*, 246 F.R.D. 453, 458 (S.D.N.Y. 2007) (allowing expedited discovery "on the issue of whether Cosby attempted to interfere with potential witnesses and the extent and nature of those alleged efforts"); *JP Morgan Chase Bank, N.A. v. Reijtenbagh*, 615 F. Supp. 2d 278, 282–83 (S.D.N.Y. 2009) (granting expedited

JOINT MOTION REGARDNG PLAINTIFFS'
REQUEST FOR EXPEDITED DISCOVERY

discovery to determine the location of missing artwork pledged as collateral for a $50 million promissory note); *Monsanto Co. v. Woods*, 250 F.R.D. 411, 413–14 (E.D. Mo. 2008) (granting expedited discovery to address the possibility of "intentional destruction" or "spoliation of evidence").

The narrow scope of the discovery requests and the resulting minimal prejudice to Defendants further counsel in favor of expedited discovery. *See Citizens for Quality Educ.*, 2018 WL 1150836, at *2. Plaintiff's requested discovery is narrowly tailored to the questions whether and to what extent Defendants have been intentionally retaliating against AOL's directors for their role in this litigation and their advocacy efforts on behalf of asylum seekers that they allege have been harmed by the conduct challenged in this lawsuit. It is not an underhanded attempt to obtain merits discovery outside the normal discovery timeline. *See id.* at *4 (narrowing the scope of requested discovery to "what is necessary 'to preserve the status quo'") (quoting *Am. LegalNet Inc.*, 673 F. Supp. 2d at 1068–69). And because the discovery requests are narrow in scope, the burden on Defendants from responding to them is similarly minimal.

Expedited discovery also would not impose a great departure from the normal discovery schedule in this case. *See Citizens for Quality Educ.*, 2018 WL 1150836, at *2 (considering "how far in advance of the typical discovery process the [expedited discovery] request was made"). Normal-course discovery is set to begin on March 15, 2019, *see* Dkt. 203 at 2. Plaintiff merely seeks to expedite discovery regarding the issue of retaliation from March 2019 to February 2019.

Finally, "the administration of justice" itself weighs heavily in favor of expedited discovery here. *Citizens for Quality Educ.*, 2018 WL 1150836, at *2; *see also id.* (noting that the five factors enumerated in *American LegalNet* are "non-exhaustive"). The available facts strongly suggest that Defendants are engaging in intentional retaliation against human rights attorneys who are actively challenging

JOINT MOTION REGARDNG PLAINTIFFS'
REQUEST FOR EXPEDITED DISCOVERY

1   in court Defendants' violations of the law related to their work.  If that is true, not

2   only would it constitute reprehensible conduct by the government entity whose

3   mission is to "safeguard the American people" with "honor and integrity" (*Mission*,

4   U.S. Dep't of Homeland Sec. (Aug. 29, 2016), goo.gl/6CMpW1), but that conduct

5   "could very well [] endanger[] the integrity of the judicial process" by discouraging

6   continued zealous prosecution of this case.  *Stern*, 246 F.R.D. at 458 (granting

7   expedited discovery).  Viewed in that light, "the need for expedited discovery"—

8   including the need to protect the integrity of the judicial process—certainly

9   "outweighs the prejudice to the responding party." *Citizens for Quality Educ.*, 2018

10  WL 1150836, at *2.[8]

11  **III.  CONCLUSION**

12          For the foregoing reasons the Court should grant AOL's motion for expedited

13  discovery.

14

15  Dated:  February 22, 2019                    MAYER BROWN LLP

16                                               Ori Lev
                                                 Matthew H. Marmolejo
                                                 Stephen M. Medlock

17

18                                               SOUTHERN POVERTY LAW
                                                 CENTER
19                                               Melissa Crow

20  ────────────────────

21  [8] Defendants' anticipated response that some AOL staffers have been able to cross the U.S.-Mexico border without incident on other occasions is no defense.  AOL is not claiming that the

22  Government has sealed the border with respect to AOL representatives.  AOL is claiming that its staff have been subject to baseless and arbitrary harassment at the U.S.-Mexico border. It is the random and baseless nature of the harassment that makes it particularly pernicious. Moreover, if

23  the Government is the source of this harassment, it is unsurprising that the Government has temporarily paused its campaign of intimidation and detention.  The press and Members of

24  Congress have also begun asking questions about the Government's role in these incidents.  *See, e.g.*, Kate Linthicum, *supra*; Ryan Devereaux, *Journalists, Lawyers, and Activists Working on the*

25  *Border Face Coordinated Harassment from U.S. and Mexican Authorities*, The Intercept (Feb. 8, 2019), https://goo.gl/xMqkQ7 (detailing "a series of escalating tactics used by U.S. and Mexican

26  law enforcement to target legal service providers, humanitarian groups, and journalists on the border" and confirming that a Congressional investigation was recently opened into these tactics).

27  Absent this Court's intervention, the Government may well continue to impede the ability of AOL's directors and possibly other staffers to travel to Mexico once the attention of the press and

28  Congress is diverted.

JOINT MOTION REGARDNG PLAINTIFFS'
                                                 REQUEST FOR EXPEDITED DISCOVERY

Mary Bauer
Sarah Rich
Rebecca Cassler

CENTER FOR CONSTITUTIONAL
RIGHTS
    Baher Azmy
    Ghita Schwarz
    Angelo Guisado

AMERICAN IMMIGRATION
COUNCIL
    Karolina Walters


By  */s/ Matthew H. Marmolejo*


*Attorneys for Plaintiff Al Otro Lado,
Inc.*

JOINT MOTION REGARDNG PLAINTIFFS'
REQUEST FOR EXPEDITED DISCOVERY

**CERTIFICATE OF SERVICE**

     I certify that I caused a copy of the foregoing document to be served on all counsel via the Court's CM/ECF system.

Dated:  February 22, 2019               MAYER BROWN LLP


By  _/s/ Matthew H. Marmolejo_

*Attorney for Plaintiff Al Otro Lado, Inc.*

JOINT MOTION REGARDNG PLAINTIFFS'
REQUEST FOR EXPEDITED DISCOVERY