# EXHIBIT A

MAYER BROWN LLP
Matthew H. Marmolejo (CA Bar No. 242964)
mmarmolejo@mayerbrown.com
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
Ori Lev (DC Bar No. 452565)
(*pro hac vice*)
olev@mayerbrown.com
Stephen M. Medlock (VA Bar No. 78819)
(*pro hac vice*)
smedlock@mayerbrown.com
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: +1.202.263.3000
Facsimile: +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
Melissa Crow (DC Bar No. 453487)
(*pro hac vice*)
melissa.crow@splcenter.org
1666 Connecticut Ave. NW, Suite 100
Washington, DC 20009
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiff Al Otro Lado, Inc.*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Kirstjen M. Neilsen, *et al.*, <br><br> Defendants. | Case No.: 17-cv-02366-BAS-KSC <br><br> **DECLARATION OF ERIKA PINHEIRO IN SUPPORT OF PLAINTIFF AL OTRO LADO'S REPLY IN SUPPORT OF THE JOINT MOTION REGARDING ITS REQUEST FOR EXPEDITED DISCOVERY** |

CENTER FOR CONSTITUTIONAL RIGHTS
 Baher Azmy (NY Bar No. 2860740)
 (*pro hac vice*)
 bazmy@ccrjustice.org
 Ghita Schwarz (NY Bar No. 3030087)
 (*pro hac vice*)
 gschwarz@ccrjustice.org
 Angelo Guisado (NY Bar No. 5182688)
 (*pro hac vice*)
 aguisado@ccrjustice.org
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
 Mary Bauer (VA Bar No. 31388)
 (*pro hac vice*)
 mary.bauer@splcenter.org
1000 Preston Ave.
Charlottesville, VA
 Sarah Rich (GA Bar No. 281985)
 (*pro hac vice*)
 sarah.rich@splcenter.org
 Rebecca Cassler (MN Bar No. 0398309)
 (*pro hac vice*)
 rebecca.cassler@splcenter.org
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030

AMERICAN IMMIGRATION COUNCIL
 Karolina Walters (DC Bar No. 1049113)
 (*pro hac vice*)
 kwalters@immcouncil.org
1331 G St. NW, Suite 200
Washington, DC 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

1. My name is Erika Pinheiro. I am the Director of Litigation and Policy at Al Otro Lado ("AOL"), a named plaintiff in this litigation. I have been employed in that position since April 2017.

2. I have personal knowledge of the facts stated in this declaration and know them to be true.

3. When I was denied admission to Mexico on January 29, 2019, I was told that I had an alert on my passport. I visited the Mexican Consulates in Los Angeles and San Diego, California, on several occasions in attempts to obtain legal status in Mexico. On February 21, 2019, I traveled to the Mexican Consulate in San Diego, California to submit my application for temporary residence status. When the Mexican consular officers attempted to issue the visa, they informed me that an alert in their system prevented them from issuing the visa and that they needed to seek approval from their central national office before any permit could be issued.

4. On Monday, February 25, 2019, the Mexican Consulate of San Diego contacted me and told me that the alert had been lifted and that they could issue me a temporary residence visa, which would allow me to enter Mexico and regularize my status to that of Temporary Resident.

5. The consular officers instructed me to present at the Mexican immigration office located adjacent to the vehicular crossing at the San Ysidro-Tijuana Port of Entry to obtain the documentation necessary to continue with my application for temporary residence. On February 25, 2019, I presented at the Mexican immigration office as instructed. After filling out requisite paperwork, a Mexican immigration official asked me if I had ever been deported or rejected from Mexico. Citing to my previous detention and denial of admission addressed in my February 12, 2019 declaration, I answered affirmatively. The individual informed me that before he could proceed further he would have to speak to a supervisor.

6. The official brought me to a room and indicated that I should sit and wait for the supervisor. I was seated directly outside of the supervisor's office. The

1  official went in and explained the situation to the supervisor. I heard the supervisor
2  make a call and explain that he had an applicant for admission with an alert in the
3  system.

4      7.    I waited for about thirty minutes before the supervisor brought me into
5  his office. He explained that there was an alert on my passport and that I would need
6  to answer a few questions. He presented me with a written series of questions that
7  were identical to those I completed when detained on January 29, 2019. I told the
8  supervisor that I had completed the same form previously, and he asked me to
9  complete it again. I completed the form and the supervisor scanned it and sent it to
10 Mexico City. I asked the supervisor whether he could tell where the alert had come
11 from, and he told me, "This is not from the Mexican government. This is a matter
12 at the international level and I do not have access to that information. Not even the
13 consulate has access to that information."

14     8.    The supervisor explained that these types of alerts were normally
15 reserved for individuals with a pending criminal matter in another country, or for
16 people who pose a threat to national security. At that point, several other
17 immigration officials entered the supervisor's office and began discussing my case
18 with us. The officials pressed me as to why a foreign government would issue an
19 alert for me. I explained that I am an attorney who helps file class action lawsuits
20 against the U.S. government and that I had been removed from Mexico on the same
21 day that the U.S. government implemented their Remain in Mexico plan. The
22 Mexican immigration officials indicated that they understood the situation and the
23 supervisor said that they should be able to issue me the visa, referencing the
24 "political" nature of the situation. When I stated that I had been detained pursuant
25 to this type of alert previously and expressed my frustration at this process, the
26 supervisor informed me that they did not have the power to remove the alert due to
27 its international nature.
28

9. At this point, I had been detained for approximately one hour. The supervisor then informed me that Mexico's central national office would allow me to enter Mexico with my visa notwithstanding the "alerta" on my passport. The supervisor asked me to sign a declaration that said that I still had an alert on my passport, but that Mexico was allowing me to enter with my visa. I signed and asked for a copy of the declaration, but the supervisor said he could not give me a copy. I saw him put the declaration and a copy of all email correspondence he had with his Mexico City counterparts into my file. I was then able to enter Mexico without further incident.

10. Almost immediately after entering Mexico, I met with my Mexican attorney. She had been in contact with the commissioner in charge of the alert system in Mexico City, who had informed her that while the "alerta migratoria" had been lifted, the Mexican government still had an "alerta informativa" on my passport. This meant that I would be detained and questioned each time I crossed the border into Mexico.

11. In my capacity as AOL Director of Litigation and Policy, I frequently need to travel between the United States and Mexico. My job—and the lives of many of my clients—depends on it. I fear that the U.S. government is responsible for issuing the alerta informativa in retaliation for my participation in this case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 26, 2019.

*Erika Pinheiro*
Erika Pinheiro