1  JOSEPH H. HUNT
2  Assistant Attorney General, Civil Division
   WILLIAM C. PEACHEY
3  Director, Office of Immigration Litigation –
4  District Court Section
   GISELA A. WESTWATER (NE 21801)
5  Assistant Director
6  YAMILETH G. DAVILA (FL 47329)
   Assistant Director
7  SAIRAH G. SAEED (IL 6290644)
8  Trial Attorney
9  United States Department of Justice        BRIAN C. WARD (IL 6304236)
   Civil Division                              Senior Litigation Counsel
10 Office of Immigration Litigation – District DANIELLE LINDERMUTH (MD Bar)
   Court Section                               Trial Attorney
11 P.O. Box 868, Ben Franklin Station          ALEXANDER J. HALASKA (IL 6327002)
12 Washington, D.C. 20044                      Trial Attorney
13 Tel: (202) 532-4067 | Fax: (202) 305-7000   KATHERINE SHINNERS
   sairah.g.saeed@usdoj.gov                    Senior Litigation Counsel
14
15                                             *Counsel for Defendants*
16
              UNITED STATES DISTRICT COURT
17        FOR THE SOUTHERN DISTRICT OF CALIFORNIA
18                       (San Diego)

19 AL OTRO LADO, Inc., *et al.*,          Case No. 3:17-cv-02366-BAS-KSC
20              *Plaintiffs*,             Hon. Karen S. Crawford
21
22         v.                             **DEFENDANTS' OPPOSITION TO**
23                                        **PLAINTIFF AL OTRO LADO, INC.'S**
                                          **EX PARTE MOTION FOR**
24                                        **EXPEDITED DISCOVERY**[1]
25
26  ────────────────────
27  [1] Plaintiffs characterized their *ex parte* motion for expedited discovery as their
    portion of a "Joint Motion Regarding Plaintiff Al Otro Lado Inc.'s Request for
28  Expedited Discovery."  ECF No. 227.  However, as explained in Defendants'

1 | Kirstjen NIELSEN, Secretary, U.S.
2 | Department of Homeland Security, in her
official capacity, *et al.*,

Hearing Date: None.

3 |
4 |                                    *Defendants*.

**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**

5 |
6 |

**[*Declarations of Sairah G. Saeed, Pete R. Acosta, and Randy Howe Filed Concurrently*]**

7 |
8 |
9 |
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |

---

25 | opposition to Plaintiff's *ex parte* motion, this attempt to circumvent the proper
26 | procedure for bringing discovery disputes before this Court is due to Plaintiff's
27 | counsel's refusal to wait for Defendants' portion, which would have been provided
to them eight business days from the time they served their portion on Defendants.
28 | *See* ECF No. 228.

1
2

# **TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................1

ARGUMENT ..................................................................................................2

    I.     Legal Standard...............................................................................2

    II.    Plaintiff Cannot Show Good Cause to Expedite Its Proposed
          Discovery Because It Is Not Relevant to This Case ............................3

    III.   Plaintiff Has Otherwise Failed to Show Good Cause for Expedited
           Discovery.......................................................................................5

         A.   No Preliminary Injunction Motion is Pending.............................6

         B.   The Stated Purpose for the Requested Expedited Discovery, to
              Uncover Alleged Misconduct by the U.S. Government Based
              on Speculative Allegations, Does Not Establish Good Cause for
              Expedited Discovery ...................................................................9

              1.    Plaintiff's Allegations of Misconduct are Speculative
                   and Unsupported..........................................................10

              2.    Plaintiff Does Not Identify or Substantiate Any Claimed
                   Irreparable Harm it Seeks to Prevent Through Expedited
                   Discovery ..................................................................... 17

         C.   Plaintiff's Proposed Discovery is Overbroad and
              Burdensome ..............................................................................18

         D.   The Fact that Discovery Has Already Begun Weighs Against
              Expedited Discovery .................................................................21

CONCLUSION ..............................................................................................21

DEFENDANTS' OPPOSITION TO
PLAINTIFF AL OTRO LADO,
INC.'S EX PARTE MOTION FOR
EXPEDITED DISCOVERY
Case No. 3:17-cv-02366-BAS-KSC

1

## Cases

2

*Adams v. United States ex rel. McCann*,

3

    317 U.S. 269 (1942).........................................................................................8

4

*Al-Anazi v. Bush*,

5

    370 F. Supp. 2d 188 (D.D.C. 2005)...............................................................8

6

*Am. LegalNet, Inc., v. Davis*,

7

    673 F. Supp. 2d 1063 (C.D. Cal. 2009) ................................................. 2, 3, 19

8

*Apple Inc v. Samsung Elecs. Co.*,

9

    768 F. Supp. 2d 1040 (N.D. Cal. 2011)........................................................6

10

*Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*,

11

    950 F.2d 1401 (9th Cir. 1991) ....................................................................17

12

*Bona Fide Conglomerate v. SourceAmerica*,

13

    No. 14-cv-0751-GPC (DHB), 2014 WL 12515242 (S.D. Cal. Nov. 7, 2014)......6

14

*Brown v. Gilmore*, 533, U.S.,

15

    1301, 122 S.Ct. 1 (2001)..............................................................................7

16

*Chambers v. NASCO, Inc.*,

17

    501 U.S. 32 (1991).......................................................................................8

18

*Citizens for Quality Educ. San Diego v. San Diego Unified School Dist.*,

19

    No. 17-cv-1054-BAS-JMA, 2018 WL 1150836 (S.D. Cal. Mar. 5, 2018) .. 2, 3, 6

20

*Crossfit, Inc., v. National Strength and Conditioning Association*,

21

    No. 14-cv-1191-JLS-KSC, 2017 WL 4700070 (S.D. Cal. Oct. 19, 2017)............9

22

*Deocampo v. City of Vallejo*,

23

    2007 WL 1589541 (E.D. Cal. June 1, 2007) .............................................20

24

*Goodyear Tire & Rubber Co. v. Haeger*,

25

    137 S. Ct. 1178 (2017)..............................................................................8, 9

26

*Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418 (1911)……………………..9

27

28

DEFENDANTS' OPPOSITION TO
PLAINTIFF AL OTRO LADO,
INC.'S EX PARTE MOTION FOR
EXPEDITED DISCOVERY
Case No. 3:17-cv-02366-BAS-KSC

*Hampton v. City of San Diego*,

  147 F.R.D. 227 (S.D. Cal. 1993) ..................................................................3, 20

*Harbor Freight Tools USA Inc. v. Lumber Liquidators Holdings, Inc.*,

  No. CV 1210789, 2013 WL 12142995 (C.D. Cal. Jan. 10, 2013) ......................19

*Hayslett v. City of San Diego*,

  2014 WL 1154314 (S.D. Cal. Mar. 21, 2014) ....................................................20

*In re Am. Online Spin-Off Accounts Litig.*,

  No. 03-cv-697, 2005 WL 5747463 (C.D. Cal. May 9, 2005)..............................7

*Interserve, Inc. v. Fusion Garage PTE, Ltd.*,

  No. C 09-05812 JW (PVT), 2010 WL 143665 (N.D. Cal. Jan. 7, 2010) .............6

*ITT Community Dev. Corp. v. Barton*,

  569 F.2d 1351 (5th Cir. 1978) ...........................................................................7

*Jensen v. BMW of North America*,

  328 F.R.D. 557 (S.D. Cal. 2019) ........................................................................3

*JP Morgan Chase Bank, N.A. v. Reijtenbagh*,

  615 F. Supp. 2d 278 (S.D.N.Y. 2009) ................................................................17

*Kelly v. City of San Jose*,

  114 F.R.D. 653 (N.D. Cal. 1987).........................................................................20

*Kerr v. U.S. Dist. Ct. for the Northern Dist.of California*,

  511 F.2d 192 (9th Cir. 1975) ..............................................................................20

*Light Salt Investments, LP v. Fisher*,

  No. 13cv1158-MMA (DHB), 2013 WL 3205918 (S.D. Cal. Jun. 24, 2013)........6

*Link v. Wabash R. Co.*,

  370 U.S. 626 (1962)............................................................................................8

*Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*,

  194 F.R.D. 618 (N.D. Ill. 2000)...........................................................................2

*Miller v. Pancucci*,

  141 F.R.D. 292 (C.D. Cal. 1992) .......................................................................3, 20

*Monsanto Co. v. Woods,*

    250 F.R.D. 411 (E.D. Mo. 2008) ........................................................................17

*Oppenheimer Fund, Inc. v. Sanders,*

    437 U.S. 340 (1978) ............................................................................................3

*Palermo v. Underground Sols., Inc.,*

    No. 12CV1223-WQH BLM, 2012 WL 2106228 (S.D. Cal. June 11, 2012) ......19

*Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.*, No.

    CIV. A. 98-CV-2782, 1998 WL 404820 (E.D. Pa. July 15, 1998) ....................18

*Profil Institut Fur Stoffwechselforschung GbmH v. Profit Institut for Clinical*

*Research* No. 16-CV-2762-LAB (BLM), 2016 WL 7325466 (S.D. Cal. Dec. 16,

    2016) ............................................................................................... 18, 19

*Qwest Commc'ns Int'l, Inc. v. Worldquest Networks, Inc.*,

    213 F.R.D. 418 (D. Colo. 2003) ........................................................................18

*Roadway Exp.*, *Inc. v. Piper,*

    447 U.S. 752 (1980) ............................................................................................9

*Schartz v. Unified Sch. Dist. No. 512,*

    No. 95-cv-2491, 1996 WL 741384 (D. Kan. Dec. 18, 1996) .............................19

*Soto v. City of Concord*,

    162 F.R.D. 603 (N.D. Cal. 1995) ........................................................................3

*Stern v. Cosby,*

    246 F.R.D. 453 (S.D.N.Y. 2007) ......................................................................17

*Syngenta Crop Prot., Inc. v. Henson*,

    537 U.S. 28 (2002) ..............................................................................................7

*Tabba* v. *Chertoff*,

    509 F.3d 89 (2d Cir. 2007) ................................................................................13

*United States* v. *Flores-Montano*,

    541 U.S. 149 (2004) ..........................................................................................13

DEFENDANTS' OPPOSITION TO
PLAINTIFF AL OTRO LADO,
INC.'S EX PARTE MOTION FOR
EXPEDITED DISCOVERY
Case No. 3:17-cv-02366-BAS-KSC

*United States* v. *Montoya de Hernandez*,

    473 U.S. 531 (1985)......................................................................................13

*United States v. N.Y. Tel. Co.*,

    434 U.S. 159 (1977)........................................................................................8

*United States v. Ramsey*,

    431 U.S. 606 (1977)......................................................................................13


## Statutes

28 U.S.C. § 1651(a) ......................................................................................7


## Rules

Fed. R. Civ. P. 1 ............................................................................................5

Fed. R. Civ. P. 26(b)(1)................................................................................3

Fed. R. Civ. P. 26(d)(1)..........................................................................1, 21

Fed. R. Civ. P. 26(f)...............................................................................1, 21


## Other Sources and Authorities

Al Otro Lado is a 501(c)(3) non-profit organization incorporated in California, Al

Otro Lado, https://alotrolado.org/who-we-are/......................................18

CBP Search Authority, U.S. CBP (last modified Jan. 5, 2018),

https://www.cbp.gov/travel/cbp-search-authority....................................14

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2008

(2d ed. 1983 & Supp. 1990)..........................................................................3

Secure Electronic Network for Travelers Rapid Inspection, U.S. CBP (last updated

Oct. 2, 2017), https://www.cbp.gov/travel/trusted-traveler-

programs/sentri................................................................................8, 14, 15

What are the new enrollment procedures and requirements for the SENTRI

program, U.S. CBP, https://help.cbp.gov/app/answers/detail/a_id/969/~/sentri-

eligibility-requirements.............................................................................8, 15, 16

**INTRODUCTION**

Plaintiff Al Otro Lado (AOL) has not shown, and cannot show, good cause to order a departure from the normal discovery process and timelines. The parties have already conferred under Federal Rule of Civil Procedure 26(f), and thus Plaintiff is permitted to serve its discovery requests in the ordinary course. *See* Fed. R. Civ. P. 26(d)(1). Plaintiff has cited no legitimate reason to require expedited depositions and responses to proposed document requests. There is no preliminary injunction motion pending to which the proposed discovery relates, nor is the proposed discovery reasonable in light of the speculative nature of Plaintiff's allegations of retaliation against non-parties, and the lack of connection between these allegations and the claims and defenses in this case.

Plaintiff argues that the far-reaching discovery it proposes is warranted because it *may* reveal an alleged retaliatory scheme by the United States government against three non-party employees of Plaintiff AOL for their participation in this lawsuit. *See* Joint Mot. Regarding Pl. Al Otro Lado, Inc.'s Req. for Expedited Disc., ECF No. 227 at 13.[2] While these allegations are serious, they are, as detailed below, also extremely speculative and should not serve as the basis for expedited discovery. Further, the topics for the proposed discovery—which include communications concerning the passports of United States citizens and communications with foreign governments regarding United States citizens—do not overlap at all with the claims in this case, which concern U.S. Customs and Border Protection's (CBP's) purported policy of limiting aliens' access to the asylum process at Ports of Entry (POEs). *See* Proposed Expedited Reqs. for Produc., ECF No. 227-5; Proposed Expedited 30(b)(6) Dep. Not., ECF No. 227-6; Second Am. Compl., ECF No. 189, ¶ 3. Accordingly, these requests are not

---

[2] All page numbers associated with Court filings refer to the ECF pagination at the upper right hand corner of the page.

DEFENDANTS' OPPOSITION TO
PLAINTIFF AL OTRO LADO,
INC.'S EX PARTE MOTION FOR
EXPEDITED DISCOVERY
Case No. 3:17-cv-02366-BAS-KSC

appropriate discovery in this case in the normal course, let alone as subjects for expedited discovery.  And because these and others of the proposed topics for discovery implicate significant privilege concerns, it does not make sense to expedite consideration of those issues.  Finally, permitting expedited discovery into this speculative matter would undermine the administration of justice by diverting Defendants' resources from discovery relevant to class certification and the merits of the case.  *See* Order Granting Pls.' Mot. to Remove Stay on Disc. & Setting Case Management Conference, ECF No. 196 at 2 ("[T]he parties are encouraged to prioritize discovery necessary for a motion for class certification and to be diligent and efficient in their efforts to do so.").  The Court should thus deny Plaintiffs' request for expedited discovery and allow discovery to proceed in the normal course.

## ARGUMENT

### I.  Legal Standard

"'Expedited discovery is not the norm' and therefore, the moving party 'must make some *prima facie* showing of *need* for expedited discovery." *Citizens for Quality Educ. San Diego v. San Diego Unified School Dist.*, No. 17-cv-1054-BAS-JMA, 2018 WL 1150836, at *2 (S.D. Cal. Mar. 5, 2018) (Bashant, J.) (quoting *Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000)) (emphasis in original) (granting limited expedited discovery in a case where a preliminary injunction was pending, and the documents sought were relevant to the claims that the defendant was implementing a policy that it had previously publicly rescinded).  "A court should examine the requested discovery based on the entirety of the record to date and the reasonableness of the request in light of all surrounding circumstances." *Id.* (citing *Am. LegalNet*, *Inc. v. Davis*, 673 F. Supp.  2d 1063, 1067 (C.D. Cal. 2009) and *Merrill Lynch*, 194 F.R.D. at 624)).  In determining whether requests are reasonable, courts consider the following non-exhaustive list of factors:

> (1) whether a preliminary injunction is pending, (2) the breadth of the discovery requests, (3) the purpose for requesting the expedited discovery, (4) the burden on the defendant of compliance with the requested discovery, and (5) how far in advance of the typical discovery process the request was made.

*Id.* (citing *Am. LegalNet, Inc.*, 673 F. Supp. 2d at 1067). Generally, expedited discovery is only permitted when "the need for expedited discovery, in consideration with the administration of justice, outweighs the prejudice to the responding party." *Id.* (citing *Am. LegalNet, Inc.*, 673 F. Supp. 2d at 1066).

## II. Plaintiff Cannot Show Good Cause to Expedite Its Proposed Discovery Because It Is Not Relevant to This Case.

As a threshold matter, the Court should deny the request for expedited discovery because it falls outside the proper bounds of discovery and will not aid in the resolution of this case. All discovery is limited to matters that are "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also Jensen v. BMW of North America*, 328 F.R.D. 557, 559 (S.D. Cal. 2019) (a party "propounding [discovery] [must first] establish[] that the request seeks *relevant* information[.]") (emphasis added); *Hampton v. City of San Diego*, 147 F.R.D. 227, 229 (S.D. Cal. 1993) (while not limited to the pleadings, "[d]iscovery is . . . designed to define and clarify the issues.") (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)); *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992) ("Discovery of information that has no conceivable bearing on the case should not . . . be allowed.") (citing 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2008 (2d ed. 1983 & Supp. 1990); *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (same). Matters that are "wholly irrelevant" to the claims at issue in the case are thus also not appropriate for expedited discovery. *See Citizens*, 2018 WL 1150836, at *5 (limiting expedited discovery to discovery concerning the policy challenged in a pending preliminary injunction motion; "[t]he Court will not countenance a general

DEFENDANTS' OPPOSITION TO PLAINTIFF AL OTRO LADO, INC.'S EX PARTE MOTION FOR EXPEDITED DISCOVERY
Case No. 3:17-cv-02366-BAS-KSC

1  fishing expedition into Defendants' documents in the guise of discovery necessary

2  for a preliminary injunction.").

3        Defendants can and will raise their relevance objections in responding to

4  these requests in the ordinary course.  However, the irrelevance of the discovery

5  requests proposed in the instant motion demonstrates that they are not reasonable

6  subjects for expedited discovery.  The topics of discovery Plaintiff AOL seeks

7  through the instant motion do not overlap at all with the actual claims and defenses

8  in this case.  The motion seeks to expedite discovery relating to allegations made

9  by non-party employees of Al Otro Lado concerning their removal from Mexico

10 by Mexican authorities (as to Ms. Pinheiro and Ms. Phillips) and the revocation of

11 U.S. trusted traveler privileges (as to Ms. Ramos).  The claims in this case, in

12 contrast, center on allegations that CBP is limiting aliens' access to the asylum

13 process by adopting a formal policy to "restrict" the flow of aliens without travel

14 documents who can cross the border into POEs to apply for asylum in the United

15 States. *See* Second Am. Compl., ECF No. 189 ¶ 3; *see also* Feb. 5, 2019 E-mail

16 from Pls.' counsel to Defs.' counsel, ECF No. 227-7 at 10, stating:  "[o]ur

17 complaint challenges CBP's policy and practice of turning away asylum seekers at

18 POEs as a means to deny them access to the asylum process.".  While Plaintiff

19 AOL claims its request for information regarding travel restrictions imposed by

20 Mexico (in the case of Ms. Pinheiro and Ms. Phillips) or revocation of trusted

21 traveler privileges (in the case of Ms. Ramos), is related to its ability to prosecute

22 this case, the connection is tenuous at best.  *See* ECF No. 227 at 11-12.

23       Although this lawsuit has been pending since July 2017, there are no

24 allegations in the Second Amended Complaint (SAC) of any retaliation by the U.S.

25 government against any employees of AOL.  *See* ECF No. 189 ¶¶ 17-23

26

27

28

DEFENDANTS' OPPOSITION TO
PLAINTIFF AL OTRO LADO,
INC.'S EX PARTE MOTION FOR
EXPEDITED DISCOVERY
Case No. 3:17-cv-02366-BAS-KSC

(discussion of AOL's work and the changing priorities of this work).[3]  There are no allegations or requests for relief in the SAC regarding employees of AOL being denied access to their clients, that is, those aliens purportedly affected by this lawsuit.  At no point do Plaintiffs come close to alleging that Defendants have interfered or attempted to interfere with legal advocacy organizations' asylum-related work in Mexico.  Thus, the discovery being sought on an expedited basis is not part of this case, nor relevant to it.  This apparent fishing expedition is contrary to the purpose behind the Federal Rules to "secure the just, speedy, and inexpensive determination of every action and proceedings."  Fed. R. Civ. P. 1.  The expedited discovery requested here will not assist in the determination of this dispute; to the contrary, Plaintiff's effort has already diverted valuable resources of the U.S. Government from the parties' general discovery planning and briefing on the Government's motion to dismiss.  Expedited discovery on these tangential issues will continue to divert the parties' and the court's resources from the issues that are central to this case.

## III.    Plaintiff Has Otherwise Failed to Show Good Cause for Expedited Discovery

The expedited discovery Plaintiff AOL requests is unreasonable—and likely impermissible—because it lacks any connection to the claims and defenses in this case.  An analysis of the remaining factors that courts commonly consider in assessing whether to allow expedited discovery merely reinforces the conclusion

---

[3]  Plaintiffs cite AOL's participation as a Plaintiff in another lawsuit, *East Bay Sanctuary Covenant et al. v. Trump*, Case No. 3:18cv6810 (N.D. Cal. filed Nov. 9, 2018), as a possible basis for the U.S. Government's alleged retaliation against Ms. Ramos, Ms. Pinheiro, and Ms. Phillips.  Yet no similar request for expedited discovery appears to have been brought in *East Bay Sanctuary Covenant*.  *See generally* Docket, *East Bay Sanctuary Covenant et al. v. Trump*, Case No. 3:18cv6810 (N.D. Cal. filed Nov. 9, 2018).

that the proposed discovery is unreasonable and that there is no reason to depart from the default discovery rules and timelines.

## A.  No Preliminary Injunction Motion Is Pending.

The Plaintiffs in this case have not sought a preliminary injunction, nor is it even clear that preliminary injunctive relief related to the proposed discovery is possible or feasible.  Accordingly, this factor weighs against granting expedited discovery.  *Citizens*, 2018 WL 1150836, at *2.

Although Plaintiff AOL cites cases where expedited discovery was granted to allow a party to evaluate whether to bring a preliminary injunction motion, in those cases the expedited discovery and the proposed preliminary injunctions related to the claims and allegations that were the subject of the operative complaints.  *See* ECF No. 227, at 16-17, citing *Bona Fide Conglomerate v. SourceAmerica*, No. 14-cv-0751-GPC (DHB), 2014 WL 12515242 (S.D. Cal. Nov. 7, 2014) (granting expedited discovery into certain factual allegations in an amended complaint to evaluate whether to file a preliminary injunction motion concerning improper use of attorney-client communications); *see also Light Salt Investments, LP v. Fisher,* No. 13cv1158-MMA (DHB), 2013 WL 3205918, at *3-4 (S.D. Cal. Jun. 24, 2013) (granting expedited discovery where the information sought was from a key witness regarding the allegations and claims in the case); *Apple Inc v. Samsung Elecs. Co.*, 768 F. Supp. 2d 1040, 1044, 1049 (N.D. Cal. 2011) (order denying expedited discovery, noting that the court had previously granted plaintiff expedited discovery about defendant's forthcoming, allegedly trademark-infringing products to evaluate whether to seek a preliminary injunction in a trademark infringement case); *Interserve, Inc. v. Fusion Garage PTE, Ltd.,* No. C 09-05812 JW (PVT), 2010 WL 143665, at *1,*3 (N.D. Cal. Jan. 7, 2010) (granting in part and denying in part party's request for expedited discovery in a trademark infringement-type claim where party intended to seek preliminary constructive trust regarding revenues of alleged infringement).

Here, however, Plaintiff AOL's threatened motion for injunctive relief is not tethered to the claims in this case and is far more speculative. Plaintiff does not specify what type of injunctive relief it would seek, against whom, or with respect to whom. It vaguely argues that the Court would be "broadly empowered" to order an injunction under the All Writs Act and the Court's equitable powers "to address retaliatory conduct." ECF No. 227 at 14-15. Neither source of authority appears to support Plaintiff's argument, as Plaintiff has not meaningfully briefed the requirements for the issuance of an injunction under either authority.

"The All Writs Act, 28 U.S.C. § 1651(a), provides that '[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 31 (2002). Indeed, a "court may not rely on the Act to enjoin conduct that is 'not shown to be detrimental to the court's jurisdiction,' instead, any order under the Act must be 'directed at conduct which, left unchecked, would have had the practical effect of diminishing the court's power to bring the litigation to its natural conclusion.'" *In re Am. Online Spin-Off Accounts Litig.*, No. 03-cv-697, 2005 WL 5747463, at *4 (C.D. Cal. May 9, 2005) (quoting *ITT Community Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978)). Plaintiff fails to explain, however, how allegations of retaliatory travel restrictions would, if true, "be detrimental to [this] [C]ourt's jurisdiction," or would preclude this Court's power "to bring the litigation to its natural conclusion." The individuals alleging misconduct are not plaintiffs in the case, and the claims they make are outside the scope of this litigation. *See Supra* §§ II, III.A.1. Moreover, these non-party AOL employees have not shown exigent circumstances which would warrant the issuance of such an injunction under the All Writs Act. *See Brown v. Gilmore*, 533 U.S. 1301, 122 S.Ct. 1, at *2 (2001) ("injunctive relief under the All Writs Act is to be used 'sparingly and only in the most critical and exigent circumstances.'") (internal citations omitted). Indeed,

1    "[s]uch an injunction is appropriate only if the legal rights at issue are indisputably

2    clear." *Id.* (internal quotations omitted).  Because these individuals cannot

3    establish that they have an "indisputably clear" right to expedited travel privileges

4    with a SENTRI card[4] (in the case of Ms. Ramos) nor an "indisputably clear" right

5    to enter a foreign country (in the case of Ms. Phillips and Ms. Pinheiro), nor how

6    their desire to travel under the privilege of a SENTRI card or to a foreign country

7    aids this Court's jurisdiction, their reliance on a potential future injunction under

8    the All Writs Act is both premature and misplaced.  In none of the cases cited by

9    Plaintiff did the courts utilize the All Writs Act to authorize expedited discovery.

10   *See* ECF No. 227 at 14-15; *see also United States v. N.Y. Tel. Co.*, 434 U.S. 159

11   (1977); *Adams v. United States ex rel. McCann*, 317 U.S. 269 (1942); *Al-Anazi v.*

12   *Bush*, 370 F. Supp. 2d 188 (D.D.C. 2005).

13          Plaintiff also alleges that its theories of retaliation against Ms. Phillips, Ms.

14   Pinheiro, and Ms. Ramos are enough for this court to grant an injunction in the

15   exercise of its inherent authority to regulate "'relations between the parties.'"  ECF

16   No. 227 at 15 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)).  It is of

17   course true that "[f]ederal courts possess certain 'inherent powers,' not conferred

18   by rule or statute, 'to manage their own affairs so as to achieve the orderly and

19   expeditious disposition of cases."  *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.

20   Ct. 1178, 1186 (2017) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31

21   _____

22   [4] SENTRI stands for the Secure Electronic Network for Travelers Rapid

23   Inspection.  *See* Secure Electronic Network for Travelers Rapid Inspection

      (hereinafter "SENTRI"), U.S. CBP (last updated Oct. 2, 2017),

24   https://www.cbp.gov/travel/trusted-traveler-programs/sentri.  SENTRI "allows for

      expedited clearance for pre-approved, low-risk travelers upon arrival in the United

25   States."  SENTRI, *supra*; *see* Exhibit ("Ex.") 1, Declaration of Pete R. Acosta

26   ("Acosta Decl.") ¶ 6; *see also* What are the new enrollment procedures and

27   requirements for the SENTRI program (hereinafter, "new enrollment procedures"),

      U.S. CBP,  https://help.cbp.gov/app/answers/detail/a_id/969/~/sentri-eligibility-

28   requirements.

(1962)) (remanding case to the district court for a reassessment of attorneys' fees sanctions).  Yet "[b]ecause inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion."  *Roadway Exp., Inc. v. Piper,* 447 U.S. 752, 764 (1980) (citing *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450-51 (1911)) (finding that in limited circumstances court had inherent power to assess attorneys' fees); *see also Crossfit, Inc. v. National Strength and Conditioning Association,* No.: 14-CV-1191 JLS (KSC), 2017 WL 4700070, at *3 (S.D. Cal. Oct. 19, 2017) (declining to extend *Goodyear* beyond attorney fee sanctions).  For the reasons just stated—namely, the absence of any right to expedited travel privileges or to entry into a foreign country, as well as the lack of connection between these non-parties' travel privileges or travel wishes and the claims in this case—Plaintiffs' reliance on the Court's inherent authority to support their potential future request for injunctive relief is also premature and misplaced.

   As Plaintiff AOL has not even identified what type of preliminary injunction it would seek, let alone a basis for the Court's authority to grant relief based on claims of individuals who are not parties to this lawsuit and that are not pleaded in this lawsuit, this factor weighs against granting expedited discovery.

## B. The Stated Purpose for the Requested Expedited Discovery, to Uncover Alleged Misconduct by the U.S. Government Based on Speculative Allegations, Does Not Establish Good Cause for Expedited Discovery.

   Plaintiff's stated purpose for the expedited discovery—to prevent "irreparable harm" and litigation-related misconduct—is not only divorced from the actual claims in this case, but it is speculative and unsupported.  ECF No. 227 at 17-18.  Non-party AOL employees Ms. Pinheiro and Ms. Phillips have provided declarations alleging that their travel to Mexico has been affected by the actions of the U.S. government as retaliation for their participation in this lawsuit as well as for participation in *East Bay Sanctuary Covenant*, and non-party AOL employee

Ms. Ramos has provided a declaration alleging that her Trusted Traveler privileges have been revoked by the U.S. government as retaliation for her participation in this lawsuit and in *East Bay Sanctuary Covenant*, yet they provide no evidence of retaliation beyond pure speculation. *See* ECF Nos. 227-2 to 227-4; *see also* ECF No. 227 at 9-12.   Nor have they or Plaintiff AOL articulated or identified any imminent, "further irreparable harm" that could be prevented by expedited discovery.

### 1.  Plaintiff's Allegations of Misconduct Are Speculative and Unsupported.

This lawsuit began in July 2017 when putative class Plaintiffs and AOL filed their first Complaint. *See* ECF No. 1.  AOL employees Ms. Pinheiro, Ms. Phillips, and Ms. Ramos have been freely traveling between the United States and Mexico since July 2017 (ECF No. 227 at 11) and have only recently encountered problems with Mexican authorities while trying to enter Mexico (Ms. Pinheiro and Ms. Phillips) or, for Ms. Ramos, encountered changes with regard to her SENTRI privileges.  *See* Declaration of Erika Pinheiro ("Pinheiro Decl.")[5], ECF No. 227-4 ¶ 8 ("I had entered Mexican territory well over 100 times on my valid visa and had never before been denied entry to Mexico); *see also* Declaration of Nora Phillips ("Phillips Decl."), ECF No. 227-2 ¶ 4 ("I travel to Tijuana around 6 to 9 times per year for work, each time for 2 to 4 days.  This year I have gone less frequently[.]").  Ms. Ramos claims that during the months of February, March, and April 2017, she received alleged reports from asylum seekers about AOL and its employees being

---

[5] All references to the Pinheiro Declaration reference the declaration filed in support of AOL's motion for expedited discovery.  *See* ECF no. 227 and 227-4. The supplemental declaration of Ms. Pinheiro filed in support of AOL's ex parte motion reply is referred to as the Supplemental Declaration of Erika Pinheiro ("Pinheiro Supp. Decl.").  *See* Pl. AOL's Reply in Supp. of the Joint Mot. Regarding Its Req. for Expedited Disc., ECF No. 231 and Pinheiro Supp. Decl., 231-1.

1  called "fake attorneys" or "troublemakers" and that at the inception of this lawsuit

2  a CBP official allegedly contacted Mexican authorities regarding her participation

3  in this lawsuit, yet she continued to freely travel between the United States and

4  Mexico for a long period of time after these alleged incidents.  *See* ECF No. 227 at

5  12; *see also* Declaration of Nicole Ramos ("Ramos Decl."), ECF No. 227-3 ¶¶ 8-

6  10.

7      Plaintiff now attempts to make a tenuous connection between the lifting of

8  the stay on discovery in this case (*see* ECF No. 227 at 8), and allegations of

9  retaliatory action by the U.S. government against non-party employees of a party

10  in this lawsuit.  It strains credulity, however, to assume bad faith on the part of

11  Defendants based on actions taken by a foreign sovereign more than one-and-a-

12  half years into the lawsuit. There could be any number of reasons why Ms.

13  Pinheiro and Ms. Phillips were deported from Mexico by Mexican authorities, of

14  which CBP and the Department of Homeland (DHS) —or other executive agencies

15  and departments—would have no knowledge.  Similarly, there are any number of

16  reasons why Ms. Ramos' SENTRI travel privileges could have been revoked other

17  than alleged retaliation by the United States government.

18      Ms. Pinheiro's and Ms. Phillips' claims that Mexican officials removed

19  them from Mexico "based on passport alerts *presumably* issued by the U.S.

20  government" (ECF No. 227 at 9) (emphasis added), and that Mexican officials

21  informed them that a *foreign* government had purportedly issued a "migratory

22  alert" on their passports resulting in their removal *from Mexico* constitute bare

23  speculation.  *See* ECF No. 227 at 10-11; *see also* Pinheiro Decl. ¶ 3; Phillips Decl.

24  ¶¶ 7, 11.

25      Even taken at face value, there are number of problems with the threadbare

26  assertions made by Ms. Pinheiro and Ms. Phillips.  First, these individuals do not

27  declare that Mexican officials said it was the United States that had purportedly

28  placed this migratory alert on their passports.  Phillips Decl. ¶ 11 ("The INM

[Mexican] officials did not seem to know why the alerta had been placed on my passport."); Pinheiro Decl. ¶ 3 ("The Mexican immigration officials informed me that a foreign government had issued a migratory alert on my passport . . . [but] provided no additional information to me about the nature of the alert or the government that issued the alert."). Second, the Mexican officials did not claim to have knowledge about why the alerts were placed on their passports. *See id.* Third, Ms. Phillips states that a Mexican official seems to have *speculated* as to why an alert was placed on Ms. Phillips' passport, based on information Ms. Phillips *herself provided* to that official about AOL's several lawsuits against the Trump Administration and DHS. *See* Phillips Decl. ¶ 17; ECF No. 227 at 10. In the case of Ms. Pinheiro, the Mexican officials did not even speculate as to the cause or source of the migratory alert. *See* Pinheiro Decl. ¶ 3.

Moreover, Ms. Phillips also states: "I have never been arrested or convicted of any crime. I also passed the background check necessary for SENTRI/Global Entry. I have been cleared for access to ICE [Immigration and Customs Enforcement] detention facilities, local jails, California state prisons (including Pelican Bay), and Federal Bureau of Prison Facilities." Phillips Decl. ¶ 14. In fact, Ms. Phillips re-entered the United States using her SENTRI privileges without any problems, and neither Ms. Pinheiro nor Ms. Phillips allege that their SENTRI privileges have been revoked. *See* Phillips Decl. ¶ 40 ("When we landed at LAX around noon on Friday, my daughter and I entered with our SENTRI cards and passports and were not subjected to any questioning and entered without incident."). Despite the fact that U.S. and state and local government entities have cleared her for trusted access to secure facilities and accorded her specific travel privileges, Ms. Phillips chooses to rely on speculation to claim that the U.S. government has provided information about her to the Mexican government.

DEFENDANTS' OPPOSITION TO
PLAINTIFF AL OTRO LADO,
INC.'S EX PARTE MOTION FOR
EXPEDITED DISCOVERY
Case No. 3:17-cv-02366-BAS-KSC

Phillips Decl. ¶¶ 11, 17 & Exhibit, ECF No. 227-2 at 13-18 (Entry Rejection Minutes provided to Ms. Phillips when she was removed from Mexico).[6]

Ms. Ramos's claim of retaliation is likewise speculative. Ms. Ramos asserts that, after being sent to secondary inspection when crossing from Mexico into the United States on January 10, 2019,[7] her SENTRI card was seized, that her SENTRI

---

[6] Although Ms. Phillips' removal document states that Ms. Phillips shared with Mexican officials that her organization, AOL, filed a lawsuit against the U.S. Government, that is not the stated the basis of her removal. The removal document appears to state that Ms. Phillips was removed because of "Discrepancies" and because she "does not meet the visitor's profile or the necessary requirements to enter the country, that is why this authority determined to issue her rejection." ECF No. 227-2 at 18. The removal document also states that Ms. Phillips also declared to Mexican officials that "until last year" she had a Mexican business visa, but that it "has expired." *Id.* at 17.

[7] The allegation that "secondary inspection is typically used when a CBP officer at a Port of Entry ('POE') cannot verify a traveler's information or believes that the traveler may be committing a crime[]" (ECF No. 227 at 9) is inaccurate. Indeed, the Supreme Court has long held that border searches are reasonable. *See United States* v. *Flores-Montano*, 541 U.S. 149, 152 (2004); *see also United States* v. *Montoya de Hernandez*, 473 U.S. 531, 537, 540 (1985). As the Court has explained, criminality is not required for an individual to be inspected, and "[s]ince the founding of our Republic, Congress has granted the Executive plenary authority to conduct routine searches and seizures at the border, without probable cause or a warrant, in order to regulate the collection of duties and to prevent the introduction of contraband into this country." *Montoya de Hernandez*, 473 U.S. at 537. Thus, border inspections, as alleged here, are made "pursuant to the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border[.]" *United States v. Ramsey*, 431 U.S. 606, 616 (1977); *see Tabba* v. *Chertoff* 509 F.3d 89 (2d Cir. 2007) (declining to find any cognizable harm from a secondary inspection lasting six hours). Moreover, CBP's own website indicates publicly that 'All persons, baggage and merchandise arriving in the Customs territory of the United States from places outside thereof are liable to inspection by a CBP officer.'" CBP Search Authority, U.S. CBP (last modified Jan. 5, 2018), https://www.cbp.gov/travel/cbp-search-authority.

privileges were revoked, and that there was no valid basis for revoking her SENTRI privileges. ECF No. 227 at 9; *see* Ramos Decl. ¶¶ 3-4. Yet the revocation of Ms. Ramos's SENTRI privileges does not suggest a retaliatory scheme.

Background on the SENTRI program is helpful to an understanding of Ms. Ramos's claims. SENTRI is a privilege; it is a "voluntary, traveler-initiated program[]" that "allows expedited clearance for pre-approved, low-risk travelers upon their arrival in the United States." Acosta Decl. ¶ 5; *see* Secure Electronic Network for Travelers Rapid Inspection (hereinafter "SENTRI"), U.S. CBP (last updated Oct. 2, 2017), https://www.cbp.gov/travel/trusted-traveler-programs/sentri; What are the new enrollment procedures and requirements for the SENTRI program (hereinafter, "New enrollment procedures"), U.S. CBP, https://help.cbp.gov/app/answers/detail/a_id/969/~/sentri-eligibility-requirements. SENTRI privileges allow participants "to enter the United States by using dedicated primary lanes into the United States at Southern land border ports." SENTRI, *supra*; Acosta Decl. ¶ 5.

CBP's "mission includes the enforcement of the customs, immigration, and agriculture laws of the United States[.]" Acosta Decl. ¶ 2. CBP's law enforcement mission, specifically, includes carrying out functions such as "securing the U.S. border at ports of entry (POEs) and preclearance locations outside the United States, while facilitating lawful international trade and travel . . . [and] to deter and prevent terrorists and criminals from entering the United States." *Id.* SENTRI is "a key part of CBP's law enforcement mission [because it is] designed specifically to facilitate lawful travel by low-risk individuals." Acosta Decl. ¶ 2.

In order to be eligible for SENTRI, participants must meet the program's qualifications and "undergo a thorough biographical background check against

---

Moreover, CBP is clear that "CBP officers may, unfortunately, inconvenience law-abiding citizens in order to deter those involved in illicit activities." *Id.* (emphasis added).

criminal, law enforcement, customs, immigration, and terrorist indices; a 10-fingerprint law enforcement check; and a personal interview with a CBP officer." *See* New enrollment procedures, *supra*; *see* Acosta Decl. ¶ 7 ("All applicants for Trusted Traveler Programs [including SENTRI] are thoroughly vetted to ensure that they meet program qualifications.  CBP must determine that the applicant meets all criteria for membership [in] the program.").  While "[t]here is no citizenship or residency requirement to apply for SENTRI[]," applicants will not be considered for SENTRI if they:

- Provide false or incomplete information on the application
- Have been convicted of any criminal offense or have pending criminal charges to include outstanding warrants
- Have been found in violation of any customs, immigration, or agriculture regulations or laws in any country
- Are subjects of an ongoing investigation by any federal, state or local law enforcement agency
- Are inadmissible to the United States under immigration regulation, including applicants with approved waivers of inadmissibility or parole documentation
- Cannot satisfy CBP of their low risk status or meet other program requirements.

New enrollment procedures, *supra*; *see* Acosta Decl. ¶ 7.  This list is non-exhaustive (Acosta Decl. ¶ 7) and Trusted Traveler Programs such as SENTRI do not "eliminate the requirement that all travelers entering the United States must be inspected." Acosta Decl. ¶ 6.  Although participation in SENTRI is intended "to make the inspection process more efficient[,] . . . participation . . . is not required in order to enter the United States."  Acosta Decl. ¶ 6.

Once approved, SENTRI participants "receive a modified, more efficient screening at CBP ports of entry (POEs) when returning from a foreign country." Acosta Decl. ¶ 5; *see* SENTRI, *supra* ("Participants may enter the United States by using dedicated primary lanes into the United States at Southern land border ports.").

"[P]articipants may have their [SENTRI privileges] revoked at any time if they fail to meet the program requirements." Acosta Decl. ¶ 7.  That is, participants must continue to meet the requirements for enrollment in order to keep their SENTRI privileges.  Membership may also be revoked if an individual: "becom[es] guilty of a criminal offense, [is] charged with a customs or immigration offense, or [is] declared inadmissible to the U.S. under immigration law."  *See* New enrollment procedures, *supra*.   When evaluating whether to approve, deny, or revoke SENTRI privileges, "CBP officials . . . tak[e] into account all available information in CBP databases[] [and] assess whether the individual meets the requirements of the program."  Acosta Decl. ¶ 10.

There is an internal appeals process for contesting a SENTRI revocation, which "may [be] initiate[d] . . . by contacting the CBP Ombudsman via e-mail at cbpvc@cbp.dhs.gov." Acosta Decl. ¶ 8; *see also* Ex. A, attached to Acosta Decl. (Letter from CBP to Ms. Ramos informing her of her SENTRI revocation).  And even if an individual's SENTRI privileges are revoked, they may still travel to the United States.  Acosta Decl. ¶ 9; *see* New enrollment procedures, *supra* (stating that "[w]hile individuals denied or removed from the program will no longer be able to use these expedited lanes, other border crossing options still exist.")

Ms. Ramos was granted SENTRI privileges in 2016 (Acosta Decl. ¶ 3), and she continued to travel between the United States and Mexico utilizing her SENTRI privileges until well after this lawsuit was filed in July 2017, even though she asserts that she was told that asylum seekers witnessed name-calling of AOL employees in February, March, and April 2017, and that a CBP official purportedly contacted Mexico about her participation in this lawsuit.  *See* ECF No. 227 at 12; *see also* Ramos Decl. ¶¶ 8-10.  As explained, above, Ms. Ramos's travel to Mexico has not been restricted; she simply cannot utilize the expedited travel lane privileges afforded by SENTRI.  *See* Acosta Decl. ¶ 9; *see* New enrollment procedures, *supra*.  Further, as described above, Ms. Ramos may appeal the

16

decision to revoke her SENTRI privileges and has been informed of her ability to do so.  Acosta Decl. ¶ 8; *see* Ex. A.

Against this backdrop, Ms. Phillips', Ms. Pinheiro's, and Ms. Ramos's speculative claims of retaliation do not provide any reason to authorize broad, expedited discovery into the U.S. government's alleged actions.  Furthermore, Plaintiff has not cited any case that granted expedited discovery based on such attenuated allegations of "litigation-related" misconduct.  *See* ECF No. 227 at 17-18; *see also JP Morgan Chase Bank, N.A. v. Reijtenbagh,* 615 F. Supp. 2d 278, 282-283 (S.D.N.Y. 2009) (granting expedited discovery to "determine the location of any missing Art Collateral"); *Monsanto Co. v. Woods,* 250 F.R.D. 411, 414 (E.D. Mo. 2008) (granting expedited discovery to prevent "spoliation of evidence); *Stern v. Cosby,* 246 F.R.D. 453, 458 (S.D.N.Y. 2007) (granting expedited discovery to determine witness tampering).  Significantly, the cases cited by Ms. Phillips, Ms. Pinheiro, and Ms. Ramos did not involve non-pleaded retaliation claims, and have to do with alleged retaliation against individual non-parties.

### 2. Plaintiff Does Not Identify or Substantiate Any Claimed Irreparable Harm It Seeks to Prevent Through Expedited Discovery

Plaintiff AOL claims that expedited discovery will prevent harm to AOL's representatives.  But its motion does not identify any particular threatened, imminent, irreparable harm to AOL or its employees that expedited discovery would prevent.  Notably, the motion includes no information about any harm Plaintiff AOL has suffered or believes it will suffer.  To show the "irreparable harm" necessary to obtain preliminary injunctive relief, the moving party "must do more than merely allege imminent harm."  *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991). Notably absent from Plaintiff's motion are any attestations that Ms. Ramos has been unable to perform services in Mexico since revocation of her SENTRI

privileges.  Further, none of these AOL employees assert in their declarations that AOL has been in fact prevented from prosecuting this lawsuit.  Ms. Pinheiro refers to "hundreds of volunteers" who gather data as well as a "litigation team" that gathers evidence in support of this litigation.  *See* Pinheiro Decl. ¶ 9; *see also* <u>Al Otro Lado is a 501(c)(3) non-profit organization incorporated in California</u>, Al Otro Lado,  https://alotrolado.org/who-we-are/ (stating that AOL relies on "an increasing group of very dedicated volunteers, colleagues, and friends" to work on "countless cases").[8]

For all of these reasons, Plaintiffs' stated purpose for seeking discovery does not favor the granting of expedited discovery.

### C. Plaintiff's Proposed Discovery is Overbroad and Burdensome.[9]

"In applying the 'good cause' standard [in the expedited discovery context], the court should consider the scope of requested the discovery."  *Qwest Commc'ns Int'l, Inc. v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003) (citing *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.*, No. CIV. A. 98-CV-2782, 1998 WL 404820 (E.D. Pa. July 15, 1998)).  Expedited discovery is generally denied when overbroad.  *See Profil Institut Fur*

---

[8] Ms. Pinheiro's supplemental declaration showing that she was able to enter Mexico despite allegations of an alert issued by an unknown entity, further undercuts the argument that she will suffer irreparable harm in the absence of expedited discovery.  *See* Pinheiro Suppl. Decl. ¶ 9 ("I was able to enter Mexico . . . without further incident.").

[9] Defendants' arguments herein are not intended to constitute specific objections to each of the discovery requests.  Should Plaintiffs serve these discovery requests, Defendants reserve the right to file a protective order and to propound any and all appropriate specific objections, and to confer with opposing counsel regarding the timing, scope, or confidentiality of the information requested, and, if needed, bring any of these or any other disputed issues to the attention of this Court, should this Court find that discovery is warranted into the issues presented via this motion.

1   *Stoffwechselforschung GbmH v. Profil Institute for Clinical Research*, No.:

2   16cv2762-LAB (BLM), 2016 WL 7325466, at *2 (S.D. Cal. Dec. 16, 2016)

3   (denying a request for expedited discovery that was not "narrowly tailored to

4   obtain information relevant to a preliminary injunction determination[.]") (quoting

5   *Am. LegalNet*, *Inc.*, 673 F. Supp. 2d 1069); *see also Palermo v. Underground*

6   *Sols., Inc.,* No. 12CV1223-WQH BLM, 2012 WL 2106228, at *3 (S.D. Cal. June

7   11, 2012) (denying expedited discovery where discovery requests were too broad);

8   *Harbor Freight Tools USA Inc. v. Lumber Liquidators Holdings, Inc.*, No. CV

9   1210789, 2013 WL 12142995, at *3 (C.D. Cal. Jan. 10, 2013) (collecting cases

10   denying expedited discovery when overbroad).  Furthermore, broad discovery that

11   goes to the merits of the case should be subject to normal, rather than expedited

12   discovery.  *See Am. LegalNet, Inc.*, 673 F. Supp. 2d at 1071.

13       Defendants acknowledge that the discovery Plaintiff seeks through the

14   instant motion is not normal merits discovery; however, that is because the

15   discovery is completely unrelated to the claims in this case.  Accordingly, it is

16   overbroad for that reason alone.  Moreover, the proposed document requests are

17   not narrow, but seek "*all* documents and communications *relating to*" various

18   topics, including topics that are unrelated even to the claims of Ms. Phillips, Ms.

19   Pinheiro, and Ms. Ramos.  *See Schartz v. Unified Sch. Dist. No. 512*, No. 95-cv-

20   2491, 1996 WL 741384, at *1 (D. Kan. Dec. 18, 1996) (requests were overbroad

21   because they used "the omnibus phrase 'relating to' in such a manner that

22   defendants cannot respond without undertaking the arduous task of determining

23   what documents or other information may or may not relate to the subject matter of

24   the particular request for discovery").  For example, Request No. 5 seeks "all

25   documents and communications related to any alerts, notices, holds, revocations,

26   or other restrictions placed on the passport or travel documents of" Ms. Ramos,

27   although Ms. Ramos makes no claims that she has been subject to any actual travel

28   restrictions by the governments of the United States or Mexico or any other

DEFENDANTS' OPPOSITION TO
PLAINTIFF AL OTRO LADO,
INC.'S EX PARTE MOTION FOR
EXPEDITED DISCOVERY
Case No. 3:17-cv-02366-BAS-KSC

government.  Request No. 8 seeks "all documents and communications relating to actions taken against Al Otro Lado, Al Otro Lado employees, or the named plaintiffs on account of association with Al Otro Lado," and essentially requires, among other things, an extensive search and manual review for all documents related in any way to any type of unspecified "actions" taken with respect to Al Otro Lado.  Such "actions" conceivably include actions taken by CBP or U.S. Department of Homeland Security (DHS) counsel during the conduct of this litigation.

The discovery is also overbroad and an improper subject for expedited discovery because any search for responsive information is likely to implicate the law enforcement privilege.[10]  Any search for or release of information of the type sought in the proposed requests has law enforcement, foreign policy, and national security implications.  Defendants will, therefore, require the regular time provided for under the Federal Rules of Civil Procedure to investigate and respond fully to such requests and to present these objections to the Court.

---

[10] This District has recognized the official information privilege, the executive privilege, the law enforcement privilege, and the government privilege, treating them synonymously. *See Hayslett v. City of San Diego*, No. 13-CV-1605-W (BGS), 2014 WL 1154314, at *1 (S.D. Cal. Mar. 21, 2014) (citing *Deocampo v. City of Vallejo*, No. S-06-1283 WBS GGH, 2007 WL 1589541 (E.D. Cal. June 1, 2007) (civil rights suit brought against a police department).  This qualified privilege is recognized under federal common law. *Id.* (citing *Kerr v. U.S. Dist. Ct. for the Northern Dist.of California*, 511 F.2d 192, 198 (9th Cir. 1975)).  "In determining what level of protection should be afforded this privilege, courts conduct a case-by-case balancing analysis, in which the interests of the party seeking discovery are weighed against the interest of the governmental entity asserting the privilege." *Id.* (citing *Kelly v. City of San Jose*, 114 F.R.D. 653, 660 (N.D. Cal. 1987)); *Miller*, 141 F.R.D. 292, 300 and *Hampton*, 147 F.R.D. 227, 230-31)).

In light of the burdens imposed by and privilege concerns raised by Plaintiffs' proposed discovery requests, they are not a proper subject for expedited discovery.

### D. The Fact that Discovery Has Already Begun Weighs Against Expedited Discovery

Another reason that Plaintiff fails to establish good cause for expedited discovery is that the timing of its requests fall in line with the start of discovery. That is, Plaintiff filed their motion for expedited discovery on February 22, 2019, the date of the parties' Rule 26(f) conference—which is the date they can serve document requests under Federal Rule of Civil Procedure 26(d)(1). Its requests were made so close to the opening of discovery as to undermine any argument for good cause. *See* ECF No. 203. Although Defendants contend that the topics of discovery sought through this motion are irrelevant to the claims and defenses in this case, there is no reason Plaintiffs cannot serve their requests under the normal rules and timelines of federal civil procedure, for Defendants' objections to be asserted, and ruled upon as necessary, in the normal course.

### CONCLUSION

As shown, the proposed discovery requests are divorced from the claims and defenses in this litigation, they will not materially advance the litigation, and they will not aid in resolution of any preliminary injunction motion. There is no threatened, imminent harm or any other urgent reason to allow the requested discovery to proceed on an expedited basis. Accordingly, the Court should deny Plaintiffs' requests for expedited discovery related to Ms. Phillips, Ms. Pinheiro, and Ms. Ramos's claims of retaliation.

Dated: February 28, 2019                Respectfully submitted,

                                        JOSEPH H. HUNT
                                        Assistant Attorney General

DEFENDANTS' OPPOSITION TO
PLAINTIFF AL OTRO LADO,
INC.'S EX PARTE MOTION FOR
EXPEDITED DISCOVERY
Case No. 3:17-cv-02366-BAS-KSC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Civil Division

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section

GISELA A. WESTWATER
Assistant Director

*/s/ Sairah G. Saeed*
SAIRAH G. SAEED
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4067 | Fax: (202) 305-7000
sairah.g.saeed@usdoj.gov

*Counsel for Defendants*

DEFENDANTS' OPPOSITION TO
PLAINTIFF AL OTRO LADO,
INC.'S EX PARTE MOTION FOR
EXPEDITED DISCOVERY
Case No. 3:17-cv-02366-BAS-KSC

## CERTIFICATE OF SERVICE

Case No. 3:17-cv-02366-BAS-KSC

I certify that on February 28, 2019, I served a copy of the foregoing document by filing it with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all attorneys of record.

*/s/ Sairah G. Saeed*
SAIRAH G. SAEED
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4067 | Fax: (202) 305-7000
sairah.g.saeed@usdoj.gov

*Counsel for Defendants*

DEFENDANTS' OPPOSITION TO
PLAINTIFF AL OTRO LADO,
INC.'S EX PARTE MOTION FOR
EXPEDITED DISCOVERY
Case No. 3:17-cv-02366-BAS-KSC