# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, *et al.*, <br> *Plaintiffs,* <br><br> v. <br><br> Kirstjen Nielsen, *et al.*, <br> *Defendants.* | No. 3:17-cv-02366-BAS-KSC |

## DECLARATION OF PETE R. ACOSTA

I, Pete R. Acosta, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows, relating to the above-captioned matter:

1. I am currently the Director of Trusted Traveler Programs, Admissibility and Passenger Programs, Office of Field Operations (OFO), U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS). I began my career with the U.S. Immigration and Naturalization Service in 1996, specifically assigned at that time to Los Angeles International Airport. In 2007, I transferred to a position in CBP Headquarters in Washington, D.C. I was then the Director of the Immigration Advisory, Joint Security, and OFO Police Liaison Officer Programs from the period spanning 2014 through 2017. Since October 2017, I have been employed in my current role as the Director of CBP Trusted Traveler Programs, which includes the SENTRI and Global Entry programs.

2. In my role as Director of CBP Trusted Traveler Programs, I am responsible for establishing policy to ensure that individuals who apply for participation in CBP's Trusted Traveler Programs meet all appropriate qualifications for the program and do not pose a risk to the

1

United States. I am therefore responsible for executing the missions of CBP and, in particular, OFO. The CBP mission includes the enforcement of the customs, immigration, and agriculture laws of the United States and hundreds of other U.S. laws on behalf of numerous federal agencies. CBP is the primary law enforcement agency responsible for securing the U.S. border at ports of entry (POEs) and preclearance locations outside the United States, while facilitating lawful international trade and travel. Among other things, OFO is responsible for coordinating the enforcement activities of CBP at POEs to deter and prevent terrorists and criminals from entering the United States. The CBP Trusted Traveler Programs are a key part of CBP's law enforcement mission, and are designed specifically to facilitate lawful travel by low-risk individuals.

3. I understand that Ms. Nicole Ramos, who was granted Global Entry membership in 2014 and added SENTRI privileges in 2016, has recently had her Global Entry membership and SENTRI privileges revoked. Following standard practice, I understand that she has received a letter notifying her that her membership was revoked for her failure to meet the program eligibility requirements (attached). I also understand that she has inquired as to the reasons behind that revocation. I make this declaration to explain CBP's Trusted Traveler Programs (of which SENTRI and Global Entry are two), and to assert the law enforcement privilege over disclosing any additional information related to the revocation of Ms. Ramos' Trusted Traveler privileges. I have personally reviewed the information underlying the revocation decision, as well as the revocation decision itself. Under standard practice, and for the reasons set forth below, I have determined that the disclosure of specific information related to the revocation of Ms. Ramos' Trusted Traveler privileges

2

is law enforcement privileged as it would reveal CBP's law enforcement techniques, methods, and procedures, and thus harm CBP's law enforcement mission.

4. As further discussed below, the effectiveness of CBP's mission is dependent to a large degree on the use of sensitive investigative techniques that are not known to the general public. The disclosure of these techniques and methods would seriously compromise CBP's ability to perform its law enforcement mission to safeguard the borders of the United States. Following CBP Trusted Traveler Program guidelines, if Ms. Ramos believes that the revocation of her Global Entry membership and SENTRI privileges have been revoked due to incorrect or incomplete information, she may seek redress through the CBP Ombudsman via the process outlined below.

## *Trusted Traveler Programs*

5. CBP's Trusted Traveler Programs, which include Global Entry, SENTRI, NEXUS, and FAST, are mechanisms by which low-risk travelers and commercial truck drivers, after being pre-approved, receive a modified, more efficient screening at CBP ports of entry (POEs) when returning from a foreign country. All Trusted Traveler Programs are voluntary, traveler-initiated programs that allow expedited clearance for pre-approved, low-risk travelers upon their arrival in the United States. Global Entry is designed specifically for U.S. citizens, lawful permanent residents and certain foreign nationals returning or traveling to the United States by air. SENTRI applies to travelers entering the United States as pedestrians or by vehicle at the U.S.-Mexico border. NEXUS applies to members entering the United States and Canada. FAST is a commercial clearance program for known low-risk shipments entering the United States by truck from Mexico or Canada.

3

6. CBP's Trusted Traveler Programs do not alter any admissibility requirements for any alien, nor do they eliminate the requirement that all travelers entering the United States, including U.S. citizens, must be inspected. Participation in a CBP Trusted Traveler Program is intended only to make the inspection process more efficient. However, participation in a CBP Trusted Traveler Program is not required in order to enter the United States.

7. All applicants for CBP Trusted Traveler Programs are thoroughly vetted to ensure that they meet the program qualifications. CBP must determine that the applicant meets all of the criteria for membership the program. Following established criteria, CBP Trusted Traveler applicants may be denied initial membership, and current participants may have their membership revoked at any time if they fail to meet the program requirements. A non-exhaustive list of potential reasons for disqualification include evidence that the applicant/participant has: a) provided false or incomplete information on the application, b) been convicted of any criminal offense or has pending criminal allegation (to include outstanding warrants), c) been found in violation of any customs, immigration, or agriculture regulations or laws in any country, d) become the subject of an investigation by any Federal, state, or local law enforcement agency, e) become inadmissible to the United States under the immigration laws, e) been unable to satisfactorily prove to CBP that they may be considered a "low-risk status" traveler, or otherwise fails to meet other program requirements.

8. CBP Trusted Traveler applicants may contest a denial, and current CBP Trusted Traveler participants may contest a revocation, by going through an internal appeal process. Any applicant or participant may initiate that process by contacting the CBP Ombudsman via email at cbpvc@cbp.dhs.gov.

9. Applicants or participants who are precluded from participation in CBP Trusted Traveler Programs are not prohibited from traveling to the United States.

*__Law Enforcement Privileged Information in CBP's Databases__*

10. Following standard practice, CBP decisions to approve, deny, or revoke a CBP Trusted Traveler application are made by CBP officials who, taking into account all available information in CBP databases, assess whether the individual meets the requirements of the program. Information in CBP databases contains law enforcement sensitive information, including records relating to targeting and operations (such as records that describe, in detail, certain actions that CBP personnel should take under specific circumstances, records detailing law enforcement priorities, and records containing investigative information acquired from other government agencies). I am personally aware of such information in CBP databases. Following standard practice, disclosure of such information could undermine the effectiveness of law enforcement techniques and procedures by revealing the information that CBP considers in conducting law enforcement activities, as well as CBP's priorities when conducting these activities.

11. Such information, if unprotected, could enable individuals to thwart CBP's efforts to secure the border and enforce various laws, including customs and immigration laws. Disclosure of this information could allow terrorists and criminals to deduce law enforcement priorities – and conversely, areas where investigative resources may not be focused – and exploit that information to develop and employ more effective counter-measures to diminish the effectiveness of CBP's law enforcement mission. Accordingly, such information is protected by the law enforcement privilege.

12. Following standard practice, the disclosure of additional information regarding the revocation of Ms. Ramos' Global Entry membership and SENTRI privileges has the potential to divulge details about CBP's investigative methods, techniques, and procedures, which could thereby undermine CBP's critical law enforcement mission. Accordingly, additional clarification regarding the reasons behind the revocation of Ms. Ramos' SENTRI privileges and Global Entry membership is properly protected by the law enforcement privilege.

13. I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 14 day of February, 2019.

_____
Pete R. Acosta
Director, Trusted Traveler Programs
Office of Field Operations
U.S. Customs and Border Protection