JOSEPH H. HUNT
Assistant Attorney General, Civil Division
AUGUST E. FLENTJE
Special Counsel
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
GISELA A. WESTWATER (NE 21801)
Assistant Director
YAMILETH G. DAVILA (FL 47329)
Assistant Director
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation – District
Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
BRIAN C. WARD (IL 6304236)
Senior Litigation Counsel
DANIELLE LINDERMUTH (MD Bar)
Trial Attorney
SAIRAH G. SAEED (IL 6290644)
Trial Attorney

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

AL OTRO LADO, Inc., *et al.*,

　　　　　　　　　*Plaintiffs*,

　　　　v.

Kirstjen NIELSEN, Secretary, U.S.
Department of Homeland Security, in her
official capacity, *et al.*,

　　　　　　　　　*Defendants*.

Case No. 3:17-cv-02366-BAS-KSC

Hon. Cynthia A. Bashant

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO PARTIALLY DISMISS THE SECOND AMENDED COMPLAINT**

Special Briefing Schedule Ordered

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... ii

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO
DISMISS THE SECOND AMENDED COMPLAINT .............................................1

I.   The Extraterritorial Plaintiffs' Claims Fail as a Matter of Law. ...................1

   A.   The Extraterritorial Plaintiffs Do Not Allege They Were
Physically Present in the United States. ...................................................1

   B.   The Asylum and Expedited Removal Provisions of the INA
Do Not Apply to Individuals Outside the United States. ........................2

   C.   Neither CBP's Alleged Metering Nor Plaintiffs' "Pattern or
Practice" Allegations Constitute Final Agency Action.........................7

   D.   The Extraterritorial Plaintiffs' Section 706(2) Claims Fail
Because Metering is Lawful.................................................................9

   E.   The Extraterritorial Plaintiffs Fail to State Due Process
Claims.................................................................................................12

II.  All Plaintiffs' Freestanding INA Claims Fail as a Matter of Law. .............15

III. All Plaintiffs' Non-*Refoulement* and ATS Claims Fail as a Matter
of Law. ...............................................................................................16

IV. The Political Question Doctrine Precludes Consideration of
Defendants' Coordination with a Foreign Government to Oversee
the Border. ...........................................................................................18

V.  Al Otro Lado's Allegations Do Not Afford It Any Possibility of
Relief...................................................................................................20

VI. The Territorial Plaintiffs' Re-Pleaded Claims Fail as a Matter of
Law. ....................................................................................................20

CONCLUSION..................................................................................21

CERTIFICATE OF SERVICE ..............................................................23

# TABLE OF AUTHORITIES

## Federal Cases

*Ahmed v. Cissna,*
    327 F. Supp. 3d 650 (S.D.N.Y. 2018) .............................................................19

*Al-Tamimi v. Adelson,*
    — F.3d —, 2019 WL 660919 (D.C. Cir. 2019) ............................................19

*Am. Baptist Churches in the U.S.A. v. Meese,*
    712 F. Supp. 756 (N.D. Cal. 1989) ...............................................................18

*Aracely R. v. Nielsen,*
    319 F. Supp. 3d 110 (D.D.C. 2018) ..................................................... 8, 9, 11

*Arizona v. California,*
    460 U.S. 605 (1983) ........................................................................................16

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................. 2, 11

*Associated Gen. Contractors of Cal, Inc. v. Cal. State Council of Carpenters,*
    459 U.S. 519 (1983) .........................................................................................1

*Baker v. Carr,*
    369 U.S. 186 (1962) ........................................................................................19

*Bark v. U.S. Forest Serv.,*
    37 F. Supp. 3d 41 (D.D.C. 2014) .....................................................................9

*Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.,*
    502 U.S. 32 (1991) ..........................................................................................16

*Bennett v. Spear,*
    520 U.S. 154 (1997) ..........................................................................................7

*Boumediene v. Bush,*
    553 U.S. 723 (2008) ............................................................................ 13, 14, 15

*Castro v. ABM Indus. Inc.,*
    No. 14-cv-5359, 2015 WL 1520666 (N.D. Cal. Apr. 2, 2015) ....................10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Chicago & Southern Air Lines v. Waterman S.S. Corp.*,
    333 U.S. 103 (1948)..................................................................................19

*Christianson v. Colt Industries Operating Corp.*,
    486 U.S. 800 (1988)..................................................................................16

*Cobell v. Kempthorne*,
    455 F.3d 301 (D.C. Cir. 2006)....................................................................7

*Cortez-Gastelum v. Holder*,
    526 F. App'x 747 (9th Cir. 2013)..............................................................17

*E.E.O.C. v. Arabian American Oil Co.*,
    499 U.S. 244 (1991)....................................................................................3

*Galo-Garcia v. I.N.S.*,
    86 F.3d 916 (9th Cir. 1996) ................................................................ 17, 18

*Graham v. Fed. Emergency Mgmt. Agency*,
    149 F.3d 997 (9th Cir. 1998)....................................................................15

*Haitian Refugee Ctr. v. Gracey*,
    809 F.2d 794 (D.C. Cir. 1987)..................................................................18

*Heckler v. Chaney*,
    470 U.S. 821 (1985)....................................................................................7

*Hells Canyon Pres. Council v. U.S. Forest Serv.*,
    593 F.3d 923 (9th Cir. 2010) ................................................................7, 20

*Ibrahim v. Dep't of Homeland Security*,
    669 F.3d 983 (9th Cir. 2012)....................................................................14

*Jama v. U.S. Immigration and Naturalization Serv.*,
    22 F. Supp. 2d 353 (D.N.J. 1998)............................................................17

*Jennings v. Rodriguez*,
    138 S. Ct. 830 (2018)..................................................................................2

*Jifry v. FAA*,
    370 F.3d 1174 (D.C. Cir. 2004)................................................................13

iii

*Johnson v. Eisentrager*,
  339 U.S. 763 (1950).................................................................13

*Kiyemba v. Obama*,
  555 F.3d 1022 (D.C. Cir. 2009)........................................ 6, 13, 18

*Kiyemba v. Obama*,
  605 F.3d 1046 (D.C. Cir. 2010) (per curiam)................................13

*Levin v. Commerce Energy, Inc.*,
  560 U.S. 413 (2010).................................................................15

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014)................................................................20

*Mathews v. Diaz*,
  426 U.S. 67 (1976)..................................................................19

*New Jersey v. United States*,
  91 F.3d 463 (3d Cir. 1996) ......................................................19

*Ninilchik Traditional Council v. United States*,
  227 F.3d 1186 (9th Cir. 2000) ..................................................15

*Norton v. Southern Utah Wilderness Alliance*,
  542 U.S. 55 (2004)......................................................... 7, 20, 21

*R.I.L-R v. Johnson*,
  80 F. Supp. 3d 164 (D.D.C. 2015)..........................................9, 11

*Rasul v. Myers*,
  563 F.3d 527 (D.C. Cir. 2009)...................................................13

*Reid v. Covert*,
  354 U.S 1 (1957).....................................................................14

*Richardson v. Morris*,
  409 U.S. 464 (1973).................................................................17

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*,
  490 U.S. 477 (1989).................................................................14

DEFS.' REPLY IN SUPPORT OF MOT. TO
PARTIALLY DISMISS SECOND AM. COMPL.
Case No. 3:17-cv-02366-BAS-KSC

*Rodriguez v. Swartz*,
    899 F.3d 719 (9th Cir. 2018) ..........................................................................14

*Sale v. Haitian Ctrs. Council, Inc.*,
    509 U.S. 155 (1993)............................................................................... passim

*Shaughnessy v. United States ex rel. Mezei*,
    345 U.S. 206 (1953)...........................................................................................4

*Sosa v. Alvarez-Machain*,
    542 U.S. 692 (2004).........................................................................................16

*Telecomms. Research & Action Ctr. v. FCC*,
    750 F.2d 70 (D.C. Cir. 1984).........................................................................12

*Tinoco v. San Diego Gas & Electric Co.*,
    327 F.R.D. 651 (S.D. Cal. 2018) .....................................................................1

*United States ex rel. Knauff v. Shaughnessy*,
    338 U.S. 537 (1950).........................................................................................15

*United States v. Aldana*,
    878 F.3d 877 (9th Cir. 2017) ...........................................................................6

*United States v. Esquivel*,
    88 F.3d 722 (9th Cir. 1996) ...........................................................................10

*United States v. Verdugo-Urquidez*,
    494 U.S. 259 (1990).........................................................................................13

*United States v. Villanueva*,
    408 F.3d 193 (5th Cir. 2005)............................................................................3

*Vartelas v. Holder*,
    566 U.S. 257 (2012)...........................................................................................4

*Wagafe v. Trump*,
    No. 17-cv-94, 2017 WL 2671254 (W.D. Wash. June 21, 2017)..............8, 12

*Webster v. Doe*,
    486 U.S. 592 (1988).........................................................................................15

DEFS.' REPLY IN SUPPORT OF MOT. TO
PARTIALLY DISMISS SECOND AM. COMPL.
Case No. 3:17-cv-02366-BAS-KSC

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) ................................................................................13

### Federal Statutes

5 U.S.C. § 706 ..............................................................................................7, 15

6 U.S.C. § 202 ......................................................................................9, 12, 20

8 U.S.C. § 1101(a)(13)(A) ...............................................................................5

8 U.S.C. § 1103(a)(3) ..................................................................................9, 12

8 U.S.C. § 1157(c) ......................................................................................3, 16

8 U.S.C. § 1158(a)(1) ......................................................................................2

8 U.S.C. § 1225(a)(1) ......................................................................................2

8 U.S.C. § 1225(b)(1)(A)(ii) ...........................................................................6

8 U.S.C. § 1226(a) ........................................................................................11

8 U.S.C. § 1252(a)(2)(A) .................................................................................5

8 U.S.C. § 1252(e) ...........................................................................................5

8 U.S.C. § 1324(a) ...........................................................................................3

28 U.S.C. § 1331 ...........................................................................................17

28 U.S.C. § 1346 ...........................................................................................17

28 U.S.C. § 1350 ...........................................................................................16

### Federal Regulations

8 C.F.R. § 1.2 ..................................................................................................6

8 C.F.R. § 1208.4(a)(2)(ii) ..............................................................................2

8 C.F.R. § 235.1(a) ......................................................................................5, 6

## **Acts of Congress**

Illegal Immigration Reform and Immigrant Responsibility Act of 1996,
　　Pub. L. No. 104-208, 110 Stat. 3009 (1996) ....................................................4

## **Treaties, Conventions, and Protocols**

Convention Between the United States of America and the United States
　　of Mexico Touching the International Boundary Line Where It
　　Follows the Bed of the Rio Grande and the Rio Colorado, U.S.-
　　Mex., Nov. 12, 1884, 24 Stat. 1011, 1886 WL 15138 .................................14

## **Administrative Decisions**

*Matter of F-P-R-*,
　　24 I. & N. Dec. 681 (BIA 2008)........................................................................2

## **Legislative Materials**

H.R. Rep. No. 104-828 (1996)..................................................................................6

## **Other Authorities**

Aliens Subject to a Bar on Entry Under Certain Presidential
　　Proclamations; Procedures for Protection Claims, 83 Fed. Reg.
　　55,934 (Nov. 9, 2018).....................................................................................12

U.S. Customs and Border Protection, "Claims of Fear: CBP Southwest
　　Border and Claims of Credible Fear Total
　　Apprehensions/Inadmissibles (FY2017–FY2018)," *available at*
　　https://www.cbp.gov/newsroom/stats/sw-border-migration/claims-
　　fear .................................................................................................................10

U.S. Customs and Border Protection, "Southwest Border Inadmissibles
　　by Field Office FY2018," *available at* https://www.cbp.gov/
　　newsroom/stats/ofo-sw-border-inadmissibles ...............................................10

U.S. Customs and Border Protection, "Southwest Border Migration FY
　　2019," *available at* https://www.cbp.gov/newsroom/stats/sw-
　　border-migration..............................................................................................12

U.S. Dep't of State, U.S. Refugee Admissions Program, https://www.
　　state.gov/j/prm/ra/admissions/ .........................................................................3

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

The Court should dismiss the Second Amended Complaint ("SAC") (ECF No. 189) as set forth in Defendants' Motion to Dismiss (ECF No. 192-1).

**I.    The Extraterritorial Plaintiffs' Claims Fail as a Matter of Law.**

The Extraterritorial Plaintiffs fail to state any claim for relief.

**A. The Extraterritorial Plaintiffs Do Not Allege They Were Physically Present in the United States.**

Plaintiffs argue that Defendants, by pointing out that the Extraterritorial Plaintiffs do not allege they crossed the U.S.-Mexico border, have asked the Court to "improperly find facts" under an improper Rule 12(b)(6) standard. ECF No. 210 at 4–5. Not so. Defendants ask the Court only to read Plaintiffs' allegations as they are presented: Abigail, Beatrice, Carolina, Dinora, and Ingrid each clearly allege that they interacted with CBP officers while they were in the United States. *E.g.*, ECF No. 189 ¶¶ 122 (CBP "took Abigail and her children *back to Mexico . . . .*"), 129 (CBP "escorted Beatrice and her family *out of the POE.*"), 134 (CBP "locked [Carolina and her daughters] *in a room overnight at the San Ysidro POE.*"), 144 (CBP "escorted [Dinora and her daughter] *out of the POE.*"), 151 (CBP "escorted Ingrid and her children *out of the port.*") (emphases added). Roberto, Maria, Úrsula, Juan, Victoria, Bianca, Emiliana, and César, in contrast, allege only that they approached the border and, in some cases, spoke to CBP officials. *See id.* ¶¶ 154–55 (Roberto) 162–168 (Maria), 174 (Úrsula and Juan), 179–81 (Victoria), 185–86, 188 (Bianca), 192–93 (Emiliana), 197–200 (César). Plaintiffs may be entitled to reasonable inferences at this stage, but "[d]espite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that 'the [plaintiff] can prove facts that [he or she] has not alleged.'" *Tinoco v. San Diego Gas & Electric Co.*, 327 F.R.D. 651, 657 (S.D. Cal. 2018) (quoting *Associated Gen. Contractors of Cal, Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983)) (alterations in original); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal punctuation omitted)). Plaintiffs' allegations, taken as true, only allow the inference that the Extraterritorial Plaintiffs were in Mexico during their encounters with CBP.[1]

### B. The Asylum and Expedited Removal Provisions of the INA Do Not Apply to Individuals Outside the United States.

Plaintiffs are incorrect as a matter of law that the INA imposes a duty on CBP to process the Extraterritorial Plaintiffs for admission "even if" they were in Mexico. *See* ECF No. 210 at 5–9. **Section 1158(a)(1)**[2] provides that "[a]ny alien who *is physically present* in the United States or who *arrives in* the United States" may apply for asylum. 8 U.S.C. § 1158(a)(1) (emphasis added); *see also id.* § 1225(a)(1) (similar language); *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018) (Under section 1225(a)(1), "an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as an 'applicant for admission.'"). The use of the present simple tense creates a nexus between the alien's ability to apply for asylum and the alien's current physical presence (or arrival) "*in* the United States." *See Matter of F-P-R-*, 24 I. & N. Dec. 681, 683 (BIA 2008) (interpreting the phrase "last arrival in" at 8 C.F.R. § 1208.4(a)(2)(ii) to mean "an alien's most recent coming or crossing into the United States after having

---

[1] If Plaintiffs intended to allege that the Extraterritorial Plaintiffs crossed the border, they presumably would request leave to amend to make their allegations clear. Notably, they have not done so. *See* ECF No. 210 at 4–9. Given that this case challenges Defendants' purported "turnbacks," and that most of Plaintiffs' proposed class is comprised of individuals in Mexico, *see* ECF No. 189 ¶ 236, it is logical to understand the Extraterritorial Plaintiffs' allegations in this manner.

[2] Again, this Court has already ruled that it "likely could not compel relief" under 8 U.S.C. § 1158(a)(1), as that that provision "does not identify any specific obligations placed on an immigration officer and, therefore, may not serve as the basis for Section 706(1) relief." ECF No. 166 at 36 n.12.

DEFS.' REPLY IN SUPPORT OF MOT. TO
PARTIALLY DISMISS SECOND AM. COMPL.
Case No. 3:17-cv-02366-BAS-KSC

traveled from somewhere outside of the country").

Section 1158(a)(1) does not, as Plaintiffs claim without support, extend the right to apply for asylum to an alien who is "in the process of 'arriv[ing] in' the United States" but has not yet done so. ECF No. 210 at 7, 8 (alterations in Plaintiffs' brief); *cf. United States v. Villanueva*, 408 F.3d 193, 198 (5th Cir. 2005) ("The language of [8 U.S.C. § 1324(a)] itself indicates that Congress intended it to apply to extraterritorial conduct. First, the statute uses the phrase 'brings to . . . the United States,' rather than 'brings into . . . the United States.'"). Such an interpretation would expand the right codified at section 1158(a)(1) to persons outside the United States' borders in direct contravention of Supreme Court precedent and in violation of the presumption against extraterritoriality. *See Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 173–74 (1993) (interpreting the precursor to the current withholding of removal statute to apply only within the United States)[3]; *E.E.O.C. v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991) ("It is a longstanding principal of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." (internal quotation marks omitted)). Moreover, a process already exists for accepting applications for refugee status from persons outside the United States. *See* 8 U.S.C. § 1157(c) (permitting the Attorney General (now the Secretary) to admit refugees); U.S. Dep't of State, U.S. Refugee Admissions Program, https:// www.state.gov/j/prm/ra/admissions/ (last visited Mar. 5, 2019) (overview of refugee application process). The existence of such a separate statutory process

---

[3] The Court should ignore Plaintiffs' attempt to minimize the importance of the *Sale* decision to this case based solely on the fact that the Extraterritorial Plaintiffs were not "on the high seas." *See* ECF No. 210 at 30. *Sale* stands for the proposition that the United States' non-*refoulement* obligations do not apply extraterritorially. *E.g.*, *Sale*, 509 U.S. at 167–69 (reversing the Court of Appeals' reading of the INA's and the 1951 Convention's "prohibition against return" to "cover '*all* refugees, regardless of location"). This case squarely presents that same question.

3

reinforces the conclusion that section 1158(a)(1) is not intended to apply to persons outside the United States. To adopt Plaintiffs' interpretation of section 1158 would render section 1157 redundant.

Further, the dual reference in section 1158(a)(1) to the alien who "is physically present in the United States" and the alien who "arrives in the United States" is not surplusage, nor does it show that the phrase "arrives in" refers to "something different than geographic presence," as Plaintiffs claim. *See* ECF No. 210 at 8. Rather, the use of both phrases ensures that any alien within the United States may apply for asylum, even after the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1996), merged deportation hearings and exclusion hearings into removal proceedings. *See, e.g.*, *Vartelas v. Holder*, 566 U.S. 257, 261–63 (2012) (briefly discussing pre- and post-IIRIRA proceedings). By using both phrases in section 1158(a)(1), Congress guaranteed that all individuals in post-IIRIRA removal or expedited removal proceedings could apply for asylum, instead of risking an interpretation of the statute that allows only those who were subject to deportation proceedings (*i.e.*, the alien who is "physically present") to apply while disallowing those who were subject to exclusion proceedings (*i.e.*, the alien who "arrives"). *See Sale*, 509 U.S. at 174–76 (Refugee Act of 1980's erasure of the distinction between deportable and excludable aliens and the removal of the phrase "within the United States" from former 8 U.S.C. § 1253(h) "did nothing to change the presumption that both types of aliens would continue to be found only within United States territory"); *id.* at 174 ("By using both words, the statute implies an exclusively territorial application, in the context of both kinds of domestic immigration proceedings."); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("It is important to note at the outset that our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective

DEFS.' REPLY IN SUPPORT OF MOT. TO
PARTIALLY DISMISS SECOND AM. COMPL.
Case No. 3:17-cv-02366-BAS-KSC

of its legality."). The phrase "arrives in" thus eliminates the potential distinction between formerly "deportable" and formerly "excludable" aliens as it pertains to the ability to apply for asylum in post-IIRIRA proceedings, not the distinction between aliens who are physically present and those who are not.

Plaintiffs' interpretation of **sections 1225(a)(3)** and **1225(b)(1)(A)(ii)** as applying outside the United States is similarly incorrect. As an initial matter, these inspection and expedited removal provisions intuitively apply only to aliens who are capable of being inspected for admissibility or removed in the first place, *i.e.*, aliens physically within the United States. *See Sale*, 509 U.S. at 173 (noting "there is no provision in the [INA] for the conduct of [exclusion and deportation] proceedings outside the United States"). The opportunity to apply for asylum during expedited removal proceedings does not somehow give the expedited removal statute extraterritorial effect.[4]

Plaintiffs are also incorrect that section 1225(a)(3)'s reference to aliens who are "otherwise seeking admission" includes aliens outside the United States. *See* ECF No. 210 at 8. The term "admission" means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). An alien "seeking admission" is thus a person who is seeking entry but has not yet been admitted, such as someone "at a U.S. port-of-entry when the port is open for inspection." 8 C.F.R. § 235.1(a). A port of entry is a facility, not a general geographic area. *United States v. Aldana*, 878 F.3d 877, 880–

---

[4] Further, to the extent Plaintiffs challenge the fact that the Extraterritorial Plaintiffs were not issued expedited removal orders while they were in Mexico or otherwise seek an order that section 1225(b)(1) must be interpreted a specific way, *see* ECF No. 210 at 5–9, such challenges are expressly outside the Court's jurisdiction on both an individual and class-wide basis. 8 U.S.C. § 1252(a)(2)(A) (no jurisdiction to review any decision "to invoke the provisions" of section 1225(b)(1) or "any procedures and policies adopted by the Attorney General [now the Secretary] to implement the provisions of section 1225(b)(1)"); *id.* § 1252(e)(1), (3).

82 (9th Cir. 2017) ("[T]here is no indication that DHS intended to change the meaning of 'port of entry' [at 8 C.F.R. § 235.1(a)] to refer to geographical areas, as opposed to specific facilities where an alien could apply for entry."). Thus, because the Extraterritorial Plaintiffs were not *in* the United States seeking entry, they were not "seeking admission" in the manner required by law.

Plaintiffs are also incorrect that the phrase "arriving in the United States" in section 1225(b)(1)(A)(ii) includes aliens outside the United States. *See* ECF No. 210 at 6–7. For purposes of this provision, "arriving" may refer to an ongoing act, but that act must occur "*in* the United States," 8 U.S.C. § 1225(b)(1)(A)(ii) (emphasis added), and, in this instance, "*at* a port-of-entry," 8 C.F.R. § 1.2 (emphasis added); *Aldana*, 878 F.3d at 882. Plaintiffs cite no case law to the contrary, nor do they identify any limiting principle on when an alien outside the United States begins arriving "in" the United States.

Further, Plaintiffs' and *amici*'s citations to IIRIRA's legislative history are not on point, as those statements relate to an alien's ability to apply for asylum once placed into expedited removal proceedings, not to an alien's purported right to cross the border at a time and place they demand. *See* H.R. Rep. No. 104-828, 209 (1996) (Conf. Report) ("The purpose of these provisions is to expedite the removal *from the United States* of aliens who indisputably have no authorization to be admitted . . . ." (emphasis added)). That legislative history does not suggest that the expedited removal statute should be applied to aliens outside the United States. Further, any legislative history related to the Refugee Act of 1980, *e.g.*, ECF No. 219-1 at 5–6, cannot override the Supreme Court's own conclusion that the Act "did nothing to change the presumption that [covered] aliens would continue to be found only within United States territory." *Sale*, 509 U.S. at 175–76; *see also, e.g.*, *Kiyemba v. Obama*, 555 F.3d 1022, 1030–31 (D.C. Cir. 2009) (noting that "refugees apply from abroad; asylum applicants apply when already here"), *vacated and remanded on other grounds*, 559 U.S. 131 (2010).

DEFS.' REPLY IN SUPPORT OF MOT. TO
PARTIALLY DISMISS SECOND AM. COMPL.
Case No. 3:17-cv-02366-BAS-KSC

In sum, the Extraterritorial Plaintiffs do not allege that they were in the United States, and Plaintiffs otherwise fail to identify any "specific legislative command" which requires a CBP officer to take any action in relation to an alien in Mexico. *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010); *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). They consequently fail to state a claim for relief under 5 U.S.C. § 706(1).

### C. Neither CBP's Alleged Metering Nor Plaintiffs' "Pattern or Practice" Allegations Constitute Final Agency Action.

As Defendants argued in their Motion, the SAC "does not show any final agency action to 'deny' anyone access to the asylum process." ECF No. 192-1 at 15. Plaintiffs concede as much. ECF No. 210 at 11 ("here Plaintiffs allege not a policy of categorical denials of access").

Further, Plaintiffs are incorrect that CBP's alleged metering constitutes final agency action by virtue of its purported "depriv[ation]" of the "opportunity to seek asylum." *See* ECF No. 210 at 14. "Metering" is not an action by which "rights or obligations" are determined, or by which "legal consequences will flow," *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997), because the Extraterritorial Plaintiffs do not have rights under sections 1158 or 1225 while they are outside the United States. *See supra* at I.B; ECF No. 192-1 at 2–3. Thus, they are in the same legal position before their entry is purportedly delayed as after. *See Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006) ("Because 'an on-going program or policy is not, in itself, a "final agency action" under the APA,' our jurisdiction does not extend to reviewing generalized complaints about agency behavior."); *Heckler v. Chaney*, 470 U.S. 821, 842 (1985) (Marshall, J., concurring) ("A decision not to enforce that is based on valid resource-allocation decisions will generally not be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"). That they are allegedly deprived of an "opportunity" is not enough. *Aracely R.* and *Wagafe* are easily distinguishable, since the plaintiffs in those cases had specific

DEFS.' REPLY IN SUPPORT OF MOT. TO
PARTIALLY DISMISS SECOND AM. COMPL.
Case No. 3:17-cv-02366-BAS-KSC

legal rights or interests implicated by the alleged policies, whereas the Extraterritorial Plaintiffs here do not. *See Aracely R. v. Nielsen*, 319 F. Supp. 3d 110, 142 (D.D.C. 2018); *Wagafe v. Trump*, No. 17-cv-94, 2017 WL 2671254, at \*8 (W.D. Wash. June 21, 2017).

However, even if "metering" constitutes final agency action, Plaintiffs are incorrect that an alleged pattern or practice of "other unlawful, widespread" behavior satisfies the APA's finality requirement, or that such a disparate group of allegations can be tacked onto a final agency action and challenged alongside it. *See* ECF No. 189 ¶¶ 84–118, 244–303; ECF No. 210 at 9 n.9, 12–13. A final agency action must "mark the consummation of the *agency's* decisionmaking process." *Bennett*, 520 U.S. at 177–78 (emphasis added). Metering would potentially satisfy this requirement (but not the "rights" element) because, based on Plaintiffs' allegations, it is at least attributable to the named Defendants in their official capacities. *See, e.g.*, ECF No. 189 ¶¶ 50–60, 65, 68–71; ECF Nos. 192-3–192-8.[5] In contrast, the alleged misrepresentations, threats, intimidation, verbal and physical abuse, coercion, "unreasonable delays," or racially discriminatory denials of access are not plausibly attributable to a DHS or CBP policy. *Compare, e.g.*, ECF No. 189 ¶¶ 50–60, 65, 68–71 (statements of U.S. government officials) *with id.* ¶¶ 84–105 (allegations against individual officers); ECF No. 166 at 53 ("[W]hile the Complaint contains allegations about the tactics employed by various CBP officials, there are no allegations connecting any of that conduct with an unwritten policy created by the Defendants.").

Plaintiffs' citations to *R.I.L-R* and *Aracely R.* illustrate this point. In those

_____

[5] Plaintiffs again incorrectly claim that it is "inappropriate" for the Court to consider the sources cited in Defendants' Motion in evaluating whether a "Turnback Policy" exists in the form Plaintiffs allege. *See* ECF No. 210 at 13. These documents and statements are drawn from the SAC or are incorporated therein by reference (which Plaintiffs do not challenge). They "defeat[] the inference that a categorical policy of the nature Plaintiffs intimate exists." ECF No. 166 at 53; *id.* at 53 n.16.

DEFS.' REPLY IN SUPPORT OF MOT. TO
PARTIALLY DISMISS SECOND AM. COMPL.
Case No. 3:17-cv-02366-BAS-KSC

1    cases, the plaintiffs "attack[ed] *particularized* agency action"—in *R.I.L-R*, "ICE's

2    consideration of an allegedly impermissible factor in making custody

3    determinations," and in *Aracely R.*, "the rejections of [the plaintiffs'] parole

4    requests[,] purportedly upon consideration of an improper factor." *R.I.L-R v.*

5    *Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C. 2015); *Aracely R.*, 319 F. Supp. 3d at

6    139. Here, in contrast, Plaintiffs challenge the purported use of "*various methods* to

7    unlawfully deny asylum seekers access to the asylum process" based on deterrence.

8    ECF No. 189 ¶ 3 (emphasis added). But a challenge to "various methods," or to an

9    alleged improper motive, *see infra* at I.D, is much too broad. By presenting a series

10   of disparate actions as a "Turnback Policy," Plaintiffs have simply "attached a

11   'policy' label to their own amorphous description of the [Defendants'] practices.

12   But a final agency action requires more." *Bark v. U.S. Forest Serv.*, 37 F. Supp. 3d

13   41, 50 (D.D.C. 2014). Thus, even if CBP's alleged metering constitutes final

14   agency action, the pattern and practice allegations do not.

15       **D. The Extraterritorial Plaintiffs' Section 706(2) Claims Fail Because
          Metering is Lawful.**

16

17       To the extent the SAC adequately challenges CBP's alleged metering,

18   Plaintiffs are incorrect as a matter of law that it exceeds the scope of Defendants'

19   broad authority to regulate entry or occurs without observance of procedures

20   required by law. *See* ECF No. 210 at 16–23. Much of Plaintiffs' argument that

21   metering is unlawful rests on the proposition that sections 1158 and 1225 limit the

22   scope of the Secretary's authority under 8 U.S.C. § 1103(a)(3) and 6 U.S.C. § 202.

23   *See* ECF No. 210 at 17–20. But that argument has no force as to the Extraterritorial

24   Plaintiffs and the putative class members they seek to represent, because they do

25   not allege that they were ever present in the United States. Consequently, they fail

26   to establish that they come within the scope of sections 1158 or 1225. *Supra* at I.B.

27   Thus, the interpretive cannon that Plaintiffs cite (that specific statutes limit general

28   statutes), *see* ECF No. 210 at 18, does not apply here, because the processes

DEFS.' REPLY IN SUPPORT OF MOT. TO
PARTIALLY DISMISS SECOND AM. COMPL.
Case No. 3:17-cv-02366-BAS-KSC

mandated by section 1225 do not implicate the authority conferred by sections 1103(a)(3) and 202.

Plaintiffs also argue that metering is unlawful because it is allegedly "aimed at deterrence." *See* ECF No. 210 at 20–22. As an initial matter, the well-pleaded allegations in the SAC do not plausibly allow that inference. *See* ECF No. 192-1 at 15–16. Instead, the statements and publicly available statistics from the government show only that metering is based on valid capacity and safety concerns resulting from the drastic increase in the number of aliens (including an increase in the number of family units and unaccompanied alien children) arriving at ports of entry along the southern border and claiming a fear of return. *See* CBP, "Claims of Fear: CBP Southwest Border and Claims of Credible Fear Total Apprehensions/ Inadmissibles (FY2017–FY2018)," *available at* https://www.cbp.gov/newsroom/ stats/sw-border-migration/claims-fear (last modified Dec. 20, 2018)[6] (showing that, while the total number of inadmissible aliens encountered at ports of entry rose from only 111,275 to 124,511 from FY17 to FY18, the total number of credible fear claims more than doubled, from 17,284 to 38,269); CBP, "Southwest Border Inadmissibles by Field Office FY2018," *available at* https://www.cbp.gov/ newsroom/stats/ofo-sw-border-inadmissibles (last visited Mar. 5, 2019) (showing, between FY17 and FY18, a 59% increase in the number of inadmissible family units appearing at ports of entry along the U.S.-Mexico border (including a 124% increase in the San Diego field office alone) and a 14% increase in the number of inadmissible unaccompanied alien children); ECF No. 189 ¶¶ 51–53, 55–57, 59 n.44, 65, 68 n.56; ECF Nos. 192-3–192-8. This data and the DHS and CBP

---

[6] The Court may take judicial notice of this publicly available data under Federal Rule of Evidence 201(b)(2) because it is not subject to reasonable dispute. *See, e.g.*, *United States v. Esquivel*, 88 F.3d 722, 727 (9th Cir. 1996) (taking judicial notice of census data presented for the first time on appeal); *Castro v. ABM Indus. Inc.*, No. 14-cv-5359, 2015 WL 1520666, at *1 n.1 (N.D. Cal. Apr. 2, 2015). The data is also cited by *amici*. *See* ECF No. 216-1 at 14; ECF No. 219-1 at 3.

DEFS.' REPLY IN SUPPORT OF MOT. TO
PARTIALLY DISMISS SECOND AM. COMPL.
Case No. 3:17-cv-02366-BAS-KSC

statements cited by Plaintiffs show that the ports of entry are indeed experiencing capacity issues in light of drastic increases in the number, and changes in the demographics, of aliens arriving in the United States. This further undercuts the plausibility of Plaintiffs' allegations that metering is aimed at deterrence.[7]

But even assuming for argument's sake that such deterrence allegations are true, Plaintiffs cite no applicable authority supporting their assertion that OFO cannot "aim[] at" deterrence in managing the flow of travel across the border. ECF No. 210 at 20; *see Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). *R.I.L-R* and *Aracely R.* both deal with the question whether the government may permissibly consider mass immigration deterrence in making individualized custody determinations under 8 U.S.C. § 1226(a) and a specific ICE guidance document, not whether such deterrence is unlawful generally. *See R.I.L-R*, 80 F. Supp. 3d at 188–90 (ruling it likely "that DHS's current policy of applying *Matter of D-J-* to detain Central American families violates 8 U.S.C. § 1226(a), read in light of constitutional constraints."); *Aracely R.*, 319 F. Supp. 3d at 153–54 ("In considering deterrence as a factor in parole determinations, ICE officials are therefore circumventing the factors laid out in [ICE Directive No. 11002.1]."). Unlike those cases, this case does not involve custody determinations, or protected constitutional interests related to detention, or the *Accardi* doctrine. *R.I.L-R* and *Aracely R.* are thus wholly inapplicable here.[8]

---

[7] Plaintiffs' citations to the statements of the President and the former Attorney General about aliens who cross the border *between* ports of entry, *see* ECF No. 189 ¶¶ 61–64, 66, have no bearing on whether CBP's Office of Field Operations ("OFO") is "aim[ing] at" deterrence in overseeing the manner and pace of border crossings *at* ports of entry.

[8] Further, although Defendants do not admit that any alleged metering is "motivated by deterrence," such an aim would not be inappropriate. *See Sale*, 509 U.S. at 163–64 (approving determination to return Haitians apprehended on the high seas to

DEFS.' REPLY IN SUPPORT OF MOT. TO
PARTIALLY DISMISS SECOND AM. COMPL.
Case No. 3:17-cv-02366-BAS-KSC

Finally, Plaintiffs are incorrect that the *TRAC* factors apply to section 706(2) claims. *See* ECF No. 210 at 22–23 (citing *Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984)). The *TRAC* decision applies only where the Court considers "whether the agency's delay is so egregious as to warrant mandamus" relief, *i.e.*, section 706(1) relief. *TRAC*, 750 F.2d at 79–80. *Wagafe* does not counsel otherwise, as it addresses only whether agency action is final, not whether *TRAC* applies to section 706(2) claims. *Wagafe*, 2017 WL 2671254, at *10.

Thus, as Defendants explained, the Secretary has broad constitutional and statutory authority to control the flow of travel across the international border. ECF No. 192-1 at 11–15; 8 U.S.C. § 1103(a)(3); 6 U.S.C. §§ 202(2), (8). Metering does not exceed that authority, nor does it infringe on the right of an alien within the United States to apply for asylum.

### E. The Extraterritorial Plaintiffs Fail to State Due Process Claims.

The Extraterritorial Plaintiffs fail to state due process claims because the Due Process Clause does not apply to them. "Decisions of the Supreme Court . . . hold that the due process clause does not apply to aliens without property or presence in

---

address an "exodus [that had] expanded dramatically," overburdening screening facilities and "pos[ing] a . . . danger to thousands of persons embarking on long voyages in dangerous craft," and explaining that the "wisdom of the policy choices . . . is not a matter for our consideration"); Aliens Subject to a Bar on Entry Under Certain Presidential Proclamations; Procedures for Protection Claims, 83 Fed. Reg. 55,934, 55,935 (Nov. 9, 2018) ("In recent weeks, United States officials have each day encountered an average of approximately 2,000 inadmissible aliens at the southern border. At the same time, large caravans of thousands of aliens, primarily from Central America, are attempting to make their way to the United States, with the apparent intent of seeking asylum after entering the United States unlawfully or without proper documentation."); *id.* at 55,947; CBP, "Southwest Border Migration FY 2019," *available at* https://www.cbp.gov/newsroom/stats/sw-border-migration (last modified Mar. 5, 2019). In any event, CBP is certainly under no affirmative obligation to take actions that would exacerbate the strain on this country's already-overburdened immigration system or risk the safety and security of the traveling public at ports of entry.

12

the sovereign territory of the United States." *Kiyemba*, 555 F.3d at 1026–27 (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001), *United States v. Verdugo-Urquidez*, 494 U.S. 259, 269 (1990), *Johnson v. Eisentrager*, 339 U.S. 763, 783–84 (1950), *Jifry v. FAA*, 370 F.3d 1174, 1182 (D.C. Cir. 2004), and other cases), *vacated*, 559 U.S. 131, *reinstated*, 605 F.3d 1046, 1047–48 (D.C. Cir. 2010) (per curiam), *cert. denied*, 563 U.S. 954 (2011). *Boumediene* held only that the Suspension Clause "has full effect at Guantanamo Bay" in the specific context of law-of-war detainees who had been detained there for years. *Boumediene v. Bush*, 553 U.S. 723, 771 (2008). The Court repeatedly emphasized that its holding turned on the writ's unique role in the separation of powers. *E.g.*, *id.* at 739 ("In the system conceived by the Framers the writ had a centrality that must inform proper interpretation of the Suspension Clause."); *id.* at 746 ("The broad historical narrative of the writ and its function is central to our analysis."); *id.* at 743 ("[T]he Framers deemed the writ to be an essential mechanism in the separation-of-powers scheme.").

*Boumediene* is the *only* case extending a constitutional right to "noncitizens detained by our Government in territory over which another country maintains *de jure* sovereignty." *Id.* at 770. As the D.C. Circuit has recognized, "*Boumediene* disclaimed any intention to disturb existing law governing the extraterritorial reach of any constitutional provisions[] other than the Suspension Clause." *Rasul v. Myers*, 563 F.3d 527, 529 (D.C. Cir. 2009). Indeed, *Boumediene* admonished that "our opinion does not address the content of the law that governs petitioners' detention." 553 U.S. at 798. Given this express refusal to decide the extraterritorial scope of the substantive law governing detention, and given pre-*Boumediene* law holding that the Due Process Clause does not extend to aliens without property or presence in the sovereign territory of the United States, this Court must follow the latter body of case law, even assuming it is in tension with *Boumediene*'s reasoning—leaving to the Supreme Court the prerogative of overruling its own decisions. *See Rasul*, 563 F.3d at 529 (citing *Rodriguez de Quijas v. Shearson/Am.*

*Express, Inc.*, 490 U.S. 477, 484 (1989)). *Boumediene*'s "functional approach" does not apply here, and the Due Process Clause does not apply to the Extraterritorial Plaintiffs.

Alternatively, even assuming *Boumediene*'s "impracticable and anomalous" test applies, Defendants would still prevail. Under that test, the Due Process Clause does not extend to aliens who are not in the United States, are not detained by the United States, do not allege they have any connections to the United States, but nevertheless assert a right to enter the United States. *Cf. Ibrahim v. Dep't of Homeland Security*, 669 F.3d 983, 996–97 (9th Cir. 2012)[9] (applying "the 'functional approach' of *Boumediene* and the 'significant voluntary connection' test of *Verdugo-Urquidez*."); ECF No. 192-1 at 20–21. The Extraterritorial Plaintiffs do not claim that they have any significant voluntary connections to the United States. *See* ECF No. 189 ¶¶ 29–35, 153–202; ECF No. 210 at 23–26. And, despite Plaintiffs' conclusory assertion, *see id.* at 25–26, it would indeed be "impracticable and anomalous" to give constitutional protections to aliens standing in Mexican territory, even if they are close to the border. The Extraterritorial Plaintiffs are not American citizens, as the plaintiffs were in *Reid*. *See Boumediene*, 553 U.S. at 760 (citing *Reid v. Covert*, 354 U.S 1 (1957)). The United States does not have *de jure* or *de facto* sovereignty over Mexican border towns, as it did over the Landsberg Prison in Germany or Guantanamo Bay in Cuba. *See id.* at 762–64; *see also* Convention Between the United States of America and the United States of Mexico Touching the International Boundary Line Where It Follows the Bed of the Rio Grande and the Rio Colorado, U.S.-Mex., arts. I, IV, Nov. 12, 1884, 24 Stat. 1011, 1886 WL 15138 ("If any international bridge have been or shall be built across either of the rivers named, the point on such bridge exactly over the middle of the main channel as herein determined shall be marked by a suitable monument, which

---

[9] If any Ninth Circuit case applies here, it is *Ibrahim*, not *Swartz*. *See Rodriguez v. Swartz*, 899 F.3d 719, 729 n.17 (9th Cir. 2018) (identifying *Ibrahim*).

DEFS.' REPLY IN SUPPORT OF MOT. TO
PARTIALLY DISMISS SECOND AM. COMPL.
Case No. 3:17-cv-02366-BAS-KSC

shall denote the dividing line for all the purposes of such bridge, notwithstanding any change in the channel which may thereafter supervene."). And extending the Fifth Amendment to territory actively governed by another sovereign would indeed "cause friction" with that government. *See Boumediene*, 553 U.S. at 770. Thus, the Extraterritorial Plaintiffs do not satisfy either the "functional approach" or the "significant voluntary connections" test set out in *Ibrahim*.

Finally, even assuming the Due Process Clause applies to aliens in Mexico, its protections "extend only as far as the plaintiffs' statutory rights." *Graham v. Fed. Emergency Mgmt. Agency*, 149 F.3d 997, 1001, 1001 n.2 (9th Cir. 1998), *abrogated on other grounds by Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010); *see United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned."). As discussed above, *supra* at I.B, the Extraterritorial Plaintiffs do not have any cognizable rights in sections 1158 or 1225 while they are in Mexico, meaning the Fifth Amendment would not extend to them. They accordingly fail as a matter of law to state a procedural due process claim. Even if they state such claims, they must proceed under the APA. 5 U.S.C. § 706; *Graham*, 149 F.3d at 1001 n.2.

## II. All Plaintiffs' Freestanding INA Claims Fail as a Matter of Law.

Plaintiffs are incorrect that the INA, standing alone, creates a private cause of action. *See* ECF No. 210 at 26. As Defendants and this Court have already explained, "[w]hile a right to seek judicial review of agency action may be created by a separate statutory or constitutional provision, once created it becomes subject to the judicial review provisions of the APA unless *explicitly* excluded." ECF No. 166 at 45; *Webster v. Doe*, 486 U.S. 592, 607 n.* (1988) (Scalia, J., dissenting); *Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1194 (9th Cir. 2000) (citing Justice Scalia's *Webster* dissent approvingly and stating that "§ 706 of the APA functions as the default judicial review standard"); ECF No. 192-1 at 23.

DEFS.' REPLY IN SUPPORT OF MOT. TO PARTIALLY DISMISS SECOND AM. COMPL. Case No. 3:17-cv-02366-BAS-KSC

Plaintiffs ask the Court to reconsider its earlier decision, *see* ECF No. 210 at 26, but they offer no reason to depart from the correct application of the APA to this case. *See Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988) (noting that, although a court has the power to revisit its prior decisions, "as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice'" (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)).

The Court should also reject Plaintiffs' request to adjudicate their freestanding INA claims under the concept of "nonstatutory review" instead of the APA. *See* ECF No. 210 at 26–27. Defendants' argument is not that the APA precludes judicial review of Plaintiffs' INA claims; it is that the INA does not provide the Extraterritorial Plaintiffs with any right to be inspected, admitted, or to apply for asylum (except through the refugee application process at 8 U.S.C. § 1157) before they reach the United States. *See* ECF No. 192-1 at 23. That their INA-based APA claims fail as a matter of law does not mean that the APA is not a "meaningful and adequate means" of adjudicating their claims. *Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43–44 (1991). In any event, even if the Court does review the Extraterritorial Plaintiffs' INA claims outside the APA's framework, those claims fail as a matter of law for the same reasons discussed above. *See supra* at I.B.

## III.   All Plaintiffs' Non-*Refoulement* and ATS Claims Fail as a Matter of Law.

All Plaintiffs' non-*refoulement* and ATS claims fail as a matter of law. First, as Defendants stated in their Motion, the ATS gives the Court "original jurisdiction of any civil action by an alien *for a tort only*." 28 U.S.C. § 1350 (emphasis added); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 713 (2004) (referring to the ATS as "strictly jurisdictional"); ECF No. 192-1 at 25. Plaintiffs have not brought tort claims. *See* ECF No. 189 ¶¶ 244–303. Accordingly, the ATS does not give the

Court jurisdiction over any part of the SAC.[10] Any claims predicated on the ATS should be dismissed under Rule 12(b)(1).

Second, even assuming *arguendo* that the Court has jurisdiction over Claim 5, Plaintiffs cannot enforce an independent norm of international law where, as here, "Congress has manifested an intent to provide a comprehensive and exclusive scheme of legislation in a given area."[11] *Jama v. U.S. Immigration and Naturalization Serv.*, 22 F. Supp. 2d 353, 364 (D.N.J. 1998). "While it has long been recognized that '[i]nternational law is part of our law,' and that 'where there is no treaty, and no controlling executive or legislative act or judicial decision, resort must be had to the customs and usages of civilized nations,' where a controlling executive or legislative act does exist, customary international law is inapplicable." *Galo-Garcia v. I.N.S.*, 86 F.3d 916, 918 (9th Cir. 1996) (collecting cases); *Cortez-Gastelum v. Holder*, 526 F. App'x 747, 749 (9th Cir. 2013) ("Where controlling legislation exists, customary international law does not apply.").

Congress provided such a "controlling legislative act" when it "enacted a comprehensive scheme for the admission of refugees into this country" through the

---

[10] Nor does the Court have jurisdiction over a non-*refoulement* claim under 28 U.S.C. §§ 1331 or 1346. *See* ECF No. 189 ¶ 15. Section 1331 confers jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States," and Plaintiffs expressly "do not seek to directly enforce U.S. treaty obligations in this Court." 28 U.S.C. § 1331; ECF No. 210 at 27. Section 1346 applies only to claims for money damages, and Plaintiffs do not seek money damages. 28 U.S.C. § 1346; *Richardson v. Morris*, 409 U.S. 464, 464–66 (1973).

[11] Plaintiffs cite no authority for their assertion that Defendants have waived their opportunity to respond to Plaintiffs' ATS arguments. *See* ECF No. 210 at 28. Now that Plaintiffs have clarified that they seek to enforce an independent norm of international law, and not any of the treaty obligations cited in the SAC, *compare* ECF No. 189 ¶¶ 227–32 (noting "[t]he United States is obligated by a number of treaties and protocols" and discussing treaty obligations at length) *with* ECF No. 210 at 27–30 (expressly disavowing any attempt to enforce treaty obligations), Defendants have the right to respond.

DEFS.' REPLY IN SUPPORT OF MOT. TO PARTIALLY DISMISS SECOND AM. COMPL.
Case No. 3:17-cv-02366-BAS-KSC

Refugee Act of 1980 and, subsequently, IIRIRA. *Galo-Garcia*, 86 F.3d at 918; *Am. Baptist Churches in the U.S.A. v. Meese*, 712 F. Supp. 756, 771 (N.D. Cal. 1989) ("[T]he only 'possible construction' of the Refugee Act of 1980 is that it was intended to provide the exclusive means for obtaining refugee status in this country."). The Refugee Act, in amending former section 1253(h)(1), the precursor withholding statute, "did nothing to change the presumption that [covered] aliens would continue to be found *only within United States territory*." *Sale*, 509 U.S. at 175–76 (emphasis added); *Kiyemba*, 555 F.3d at 1030–31 ("refugees apply from abroad; asylum applicants apply when already here"). The enactment and implementation of the INA's protection provisions, including the Refugee Act and IIRIRA, thus preempt the enforcement of a freestanding international law norm of non-*refoulement* in this Court.[12] *Galo-Garcia*, 86 F.3d at 918. Thus, even assuming jurisdiction lies under the ATS, the Court should dismiss Plaintiffs' non-*refoulement* claims under Rule 12(b)(6).

**IV.    The Political Question Doctrine Precludes Consideration of Defendants' Coordination with a Foreign Government to Oversee the Border.**

Defendants' political question doctrine argument is not that the Court lacks jurisdiction to interpret sections 1158 or 1225 and apply them to CBP's alleged metering, as Plaintiffs imply. *See* ECF No. 210 at 30–33. (Indeed, as discussed above, metering is not prohibited by those provisions. *See supra* at I.B, I.D.) It is that those provisions are not violated by an alleged policy of coordinating with a

---

[12] This interpretation is also consistent with the Supreme Court's understanding of the 1951 Convention. *See Sale*, 509 U.S. at 180–82 ("The text of Article 33 thus fits with Judge Edwards' understanding that 'expulsion' would refer to a 'refugee already admitted into a country' and that 'return' would refer to a refugee already within the territory but not yet resident there.' Thus, the Protocol was not intended to govern parties' conduct outside of their national borders." (quoting *Haitian Refugee Ctr. v. Gracey*, 809 F.2d 794, 840 (D.C. Cir. 1987)) (quotation marks altered for clarity)); *id.* at 182 n.40 ("Even the [UNHCR] has implicitly acknowledged that the Convention has no extraterritorial application.").

DEFS.' REPLY IN SUPPORT OF MOT. TO PARTIALLY DISMISS SECOND AM. COMPL.
Case No. 3:17-cv-02366-BAS-KSC

foreign government to regulate crossings of a shared border, and that to order the relief Plaintiffs request would infringe upon decisions that are "wholly confided by our Constitution to the political departments of the government, Executive and Legislative." *See* ECF No. 192-1 at 28 (quoting *Chicago & Southern Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948)); *see also Al-Tamimi v. Adelson*, — F.3d —, 2019 WL 660919, at *7 n.6 (D.C. Cir. 2019) ("Although a statutory claim is less likely to present a political question . . . a statutory claim can present a political question if resolving the claim requires the court to make an integral policy choice."). Any ruling that requires U.S. government actors to affirmatively intercede in Mexico's enforcement of its own domestic laws would indeed implicate "particularly sensitive political or discretionary inter-governmental decision[s]," ECF No. 210 at 31, and as noted above, is likely to cause friction with the Mexican government, *see supra* at I.E. *See Mathews v. Diaz*, 426 U.S. 67, 81 (1976) (Decisions involving immigration "may implicate our relations with foreign powers" and must also account for "changing political and economic circumstances."). Because of the need for "flexibility in [immigration] policy choices," such choices are typically "more appropriate to either the Legislature or the Executive than to the Judiciary." *Id.*

Further, to the extent Plaintiffs and *amici* argue for the first time that Defendants should be required to allocate or request more resources to alleviate capacity issues at the ports, *see, e.g.*, ECF No. 210 at 21 n.21, ECF No. 219-1 at 3–4, such arguments and relief are also squarely outside the Court's jurisdiction. *See Ahmed v. Cissna*, 327 F. Supp. 3d 650, 669 (S.D.N.Y. 2018) ("Requests for injunctive relief relating to USCIS staffing decisions [at consulates for the purpose of processing visa applications] are non-justiciable, as there is a 'textually demonstrable constitutional commitment of the issue to a coordinate political department[.]" (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962)); *New Jersey v. United States*, 91 F.3d 463, 470 (3d Cir. 1996) (immigration enforcement decisions

DEFS.' REPLY IN SUPPORT OF MOT. TO
PARTIALLY DISMISS SECOND AM. COMPL.
Case No. 3:17-cv-02366-BAS-KSC

"patently involve policy judgments about resource allocation and enforcement methods [that] fall squarely within a substantive area clearly committed by the Constitution to the political branches"). Even if those allegations are properly before the Court, Plaintiffs cite no authority for the proposition that CBP must request a certain level of funding, allocate its resources in a certain way, or divert resources from other mission responsibilities to prioritize the entry of aliens without travel documents. Rather, section 202 gives that authority to the Secretary alone. 6 U.S.C. §§ 202(2), (8); *see also* ECF No. 192-1 at 14–15.

## V. Al Otro Lado's Allegations Do Not Afford It Any Possibility of Relief.

Plaintiffs improperly conflate the zone-of-interests analysis with the Rule 8 analysis. *See* ECF No. 210 at 33–34. That Al Otro Lado's claims were previously determined to fall within the INA's zone of interests is distinct from whether it has plausibly shown its entitlement to relief. The purpose of the lenient zone-of-interests is to "preserv[e] the flexibility of the APA's omnibus judicial review provision," *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014), not to lessen the Federal Rules' pleading standard.

Al Otro Lado is a corporation. As such, it cannot apply for or obtain asylum under section 1158, nor can it be placed in expedited removal proceedings under section 1225. Thus, "because the plaintiffs have not identified a '*discrete* agency action that [CBP] is *required to take*'" as to Al Otro Lado, the organization fails to state a claim under section 706(1). *Hells Canyon Preservation Council*, 593 F.3d at 932 (quoting *Norton*, 542 U.S. at 64). Al Otro Lado's other claims fail for the same reasons discussed above. *See supra* at I.C, I.D, II, III.

## VI. The Territorial Plaintiffs' Re-Pleaded Claims Fail as a Matter of Law.

As soon as Abigail, Beatrice, and Carolina withdrew their applications for admission, ECF No. 189 ¶¶ 119–37, CBP no longer had a duty to process them as applicants for admission, even if those withdrawals were allegedly coerced. *See* ECF No. 166 at 42. Plaintiffs do not explain in their Opposition how these three

Territorial Plaintiffs continue to state section 706(1) claims, which require the plaintiff to "assert[] that an agency failed to take a *discrete* agency action that it is *required* to take," in light of the Court's August 20 opinion. *Norton*, 542 U.S. at 64; *see* ECF No. 210 at 34. Accordingly, their claims must be dismissed.

## <u>CONCLUSION</u>

At bottom, Plaintiffs claim that any alien without travel documents who wishes to apply for asylum must immediately be permitted to cross the border into the United States. They also claim that the United States has no authority to control the manner and pace of border crossings to account for DHS's ability to safely and securely process the traveling public without jeopardizing its other statutory mandates. For the reasons discussed above, they are incorrect. While aliens within the United States are certainly permitted to apply for asylum, the Secretary retains broad discretion to control the manner and pace of aliens' entry. A CBP officer's act of instructing an alien without travel documents to wait temporarily in Mexico until the port is able to process her is certainly compatible with that broad authority. Therefore, the Court should dismiss the SAC as set forth in Defendants' Motion to Dismiss.

Dated: March 7, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

AUGUST E. FLENTJE
Special Counsel

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section

GISELA A. WESTWATER
Assistant Director

*/s/ Alexander J. Halaska*
ALEXANDER J. HALASKA
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

DEFS.' REPLY IN SUPPORT OF MOT. TO
PARTIALLY DISMISS SECOND AM. COMPL.
Case No. 3:17-cv-02366-BAS-KSC

## **CERTIFICATE OF SERVICE**

Case No. 3:17-cv-02366-BAS-KSC

I certify that on March 7, 2019, I served a copy of the foregoing document by filing it with the Clerk of Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all attorneys of record.

*/s/ Alexander J. Halaska*
Alexander J. Halaska
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

DEFS.' REPLY IN SUPPORT OF MOT. TO
PARTIALLY DISMISS SECOND AM. COMPL.
Case No. 3:17-cv-02366-BAS-KSC