MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:   +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1666 Connecticut Ave. NW, Suite 100
Washington, DC 20009
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiff Al Otro Lado, Inc.*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*,<br><br>            Plaintiffs,<br><br>     v.<br><br>Kirstjen M. Nielsen, *et al.*,<br><br>            Defendants. | Case No.:  17-cv-02366-BAS-KSC<br>Hon. Karen S. Crawford<br><br>[DISCOVERY MATTER]<br><br>**JOINT MOTION FOR ENTRY OF PROTECTIVE ORDER AND ESI ORDER**<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**<br><br>[*Declarations of Ori Lev and Gisela Westwater Filed Concurrently*] |

CENTER FOR CONSTITUTIONAL
RIGHTS
    Baher Azmy  (NY Bar No. 2860740)
    (*pro hac vice*)
    *bazmy@ccrjustice.org*
    Ghita Schwarz  (NY Bar No. 3030087)
    (*pro hac vice*)
    *gschwarz@ccrjustice.org*
    Angelo Guisado (NY Bar No. 5182688)
    (*pro hac vice*)
    *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
    Mary Bauer (VA Bar No. 31388)
    (*pro hac vice*)
    *mary.bauer@splcenter.org*
1000 Preston Ave.
Charlottesville, VA
    Sarah Rich (GA Bar No. 281985)
    (*pro hac vice*)
    *sarah.rich@splcenter.org*
    Rebecca Cassler (MN Bar No. 0398309)
    (*pro hac vice*)
    *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030

AMERICAN IMMIGRATION COUNCIL
    Karolina Walters (DC Bar No. 1049113)
    (*pro hac vice*)
    *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, DC 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

Pursuant to the Court's Rules, Plaintiffs and Defendants respectfully submit this Joint Motion for Entry of Protective Order and ESI Protocol.

## I.    Plaintiffs' Argument

Over the last two weeks, the parties have engaged in significant negotiations concerning their proposed Protective Order and ESI Order.  The negotiations have included telephone conferences and the exchange of multiple revisions to the proposed orders.  The parties have come to an agreement on nearly all of the terms of the proposed Protective Order and ESI Order.  However, despite their best efforts, the parties have been unable to resolve two disputes.

*First*, with respect to the ESI Order, the Government contends that it should be able to separate email "families" and produce only the email attachments that it deems responsive to Plaintiffs' requests for production.  *See* Lev. Decl. ¶ 4; Ex. A, App. A, § II(G) (Government's proposed redline reading: "Parties need only produce and/or log email attachments that contain responsive material.").  The Government's position runs counter to a host of case law and common litigation practice.

The Government hypothesizes that it may be unduly burdensome to review and produce emails with non-responsive attachments.  But more than mere guesswork is required for an objection based on undue burden.  The Government must cite *facts* showing that it would be unduly burdensome to review and produce emails and attachments as families.  This the Government cannot do.  The Government's section of the joint motion contains no information about the number of emails that it anticipates reviewing, the percentage of those emails that contain attachments, the average length of the attachments, or the likely percentage of email attachments that will not be responsive to Plaintiffs' requests for production.

*Second*, with respect to the Protective Order,[1] the parties' disagreement centers around one basic but crucial concept—Plaintiffs wish to limit the use of any

---

[1] The most recent version of the draft stipulated protective order, circulated by Plaintiffs on March 28, 2019 (the "Protective Order"), is attached as Exhibit B to the

information they produce during the course of this litigation and designate as Protected Material under the Protective Order, while Defendants claim they cannot agree to such language and want the unilateral ability to share such information with other Government agencies that could use it without limitation. Plaintiffs seek an order from the Court limiting *both* parties' use of information designated as Protected pursuant to the Protective Order. This would be consistent with the general purpose of *any* protective order and, contrary to Defendants' position, is consistent with prior protective orders commonly entered into by the Government and ordered by courts in this circuit and in other circuits.

## A.  The Government Should Produce All Portions of a Responsive Email Family

### 1.  Producing Emails As Families Is the Default Rule

As the Government acknowledges, the default rule in electronic discovery is that emails are produced as "families" that include the email and all attachments. This is the default rule for good reason. Federal Rule of Civil Procedure 34(b) and Federal Rule of Evidence 106 require a party to produce emails and attachments where one portion of the "family" of documents is responsive to a document request. Fed. R. Civ. P. 34(b)(2)(E)(i) ("A party must produce documents as they are kept in the usual course of business . . . .");[2] Fed. R. Evid. 106 (requiring that if a part of a document is used as evidence, any other part of the document must be introduced if multiple parts of the document "in fairness ought to be considered at

---

Declaration of Ori Lev that accompanies this Joint Motion. A provision stating that the Court may modify the protective order in the interests of justice or for public policy reasons was added to that version in order to comply with the Court's rules.

[2] Oddly, the Government argues that it would be producing emails "as they are kept in the regular course of business" by removing attachments to the emails and replacing the attachments with "placeholders." This stretches the meaning of the phase "as . . . kept in the regular course of business" past the breaking point. The emails in question are kept with their attachments in the regular course of business, not with attorney-created placeholders.

JOINT MOTION FOR ENTRY OF PROTECTIVE
ORDER AND ESI ORDER

the same time"). Therefore, courts routinely require parties to produce a responsive email and its attachments together. *See, e.g.*, *Sanchez Y Martin, S.A. de C.V. v. Dos Amigos, Inc.*, 2019 WL 581715, at *11 (S.D. Cal. 2019) ("[E]mails produced in discovery should be accompanied by their attachments. To do otherwise is effectively a redaction of responsive discovery.") (internal citation omitted); *Virco Mfg. Corp. v. Hertz Furniture Sys.*, 2014 WL 12591482, at *5 (C.D. Cal. 2014) ("emails produced in discovery should be accompanied by their attachments" and concluding that "by failing to produce email attachments, [the producing party] has effectively redacted, based upon relevance, portions of documents it otherwise apparently views to be discoverable/relevant/responsive to [the requesting party's] discovery requests"); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 2011 WL 3738979, at *5 (S.D.N.Y. 2011) ("[T]he prevailing practice . . . is for parties to produce any non-privileged attachment to an e-mail if the e-mail is determined to be relevant, and to produce the e-mail if any of the attachments are determined to be relevant.").[3] In fact, several guides for e-discovery practitioners explain that email attachments should be produced as a "family" with the "parent" email.[4]

---

[3] *In re Fresh & Process Potatoes Antitrust Litig.*, 2012 U.S. Dist. LEXIS 139440, at *16 (D. Idaho 2012) ("The parties must produce all files attached to each email they produce to the extent that the attachments are reasonably accessible."); *Consol. Rail Corp. v. Grand Trunk W. R.R. Co.,* 2009 WL 5151745, at *3 (E.D. Mich. 2009) (finding that producing party's document production complied with Rule 34's "usual course of business" requirement where *inter alia* "[e]mail attachments were produced directly following the corresponding email"); *U & I Corp. v. Advanced Med. Design, Inc.*, 251 F.R.D. 667, 675 n.14 (M.D. Fla. 2008) (referring to "producing e-mails without attachments in federal discovery" as a "dubious practice"); *CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, 2006 WL 1272615, at *4 (D. Conn. 2006) (finding that "[a]ttachments should have been produced with their corresponding emails"); *Miller v. IBM*, 2006 WL 995160, at *7 (N.D. Cal. 2006) (requiring party to "produce the relevant emails with attachments"); *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 296-97 (S.D.N.Y. 2003) (a party's production of documents without their corresponding attachments was "insufficient" because the production did "not provide[] plaintiffs with an adequate means to decipher how the documents [were] kept in the usual course of business").

[4] *See, e.g.*, Ernst Halperin *Matthew Bender Practice Guide: California E-Discovery & Evidence* § 9.63 (2018) (model ESI Order stating, "For email collections, the parent-child relationship (the association between emails and attachments) should

1    Indeed, courts have directly rejected prior attempts by U.S. Customs and
2 Border Protection ("CBP") to withhold the non-responsive portions of email
3 families. In *Families for Freedom v. U.S. Customs & Border Protection*, the court
4 held that CBP "inappropriately separated 'parent-child' pairs by withholding the
5 ostensibly nonresponsive 'parent' while producing the responsive 'child.'" 2011
6 WL 4599592, at *5 (S.D.N.Y. 2011).  The Court rejected CBP's attempt to withhold
7 allegedly non-responsive portions of email families because "[c]ontext matters.  The
8 attachments can only be fully understood and evaluated when read in the context of
9 the emails to which they are attached.  That is the way they were sent and the way
10 they were received.  It is also the way in which they should be produced." *Id.*

11    The same is true here.  Plaintiffs need to be able to review entire email families
12 as they were kept in the regular course of business in order to have the context to
13 fully understand what is being communicated in the emails.  Without this context,
14 Plaintiffs will lack the information necessary to take effective depositions, as
15 deponents are likely to claim that they cannot recall details of their email
16 communications without reviewing the attachments.  Finally, separating
17 "responsive" and "non-responsive" attachments is a decision that will be unilaterally
18 made by the Government and without the attachments themselves Plaintiffs will not
19 have the opportunity to challenge those determinations.

20    **2.    The Government's Cases Offer No Justification For**
21    **Departing From the Default Rule**

22    In response, the Government relies upon *In re Takata Airbag Products*
23 *Liability Litigation*, 2016 WL 1460143 (S.D. Fla. 2016).  However, in *Takata*, the
24 parties "agreed to allow a producing party to withhold irrelevant attachments from
25 within responsive document families, pursuant to certain conditions." *Id.* at *1 n.1;

26
27 be preserved.  Email and attachments should be consecutively produced with the
parent email record."); *Electronic Discovery* § 7.05 (Law Journal Press Oct. 2018)
28 ("A significant percentage of e-mails include attachments, which typically need to
be produced with the parent e-mail.").

1   *see also In re Takata Airbag Prods. Liab. Litig.*, 2015 WL 12641714, at *2 (S.D.
2   Fla. 2015) (preceding Special Master opinion noting that "the parties agree that
3   irrelevant attachments may be withheld from production") (emphasis omitted).
4   Therefore, *Takata* does not stand for the principle that non-responsive attachments
5   need not be produced; if anything, the fact that the parties in *Takata* agreed that such
6   attachments need not be produced suggests that the default rule is that such
7   attachments should be produced.

8       Likewise, in *In re Intuniv Antitrust Litigation*, the district court was not
9   resolving a disputed motion regarding whether emails should be produced as
10  families. 2018 WL 6492747, at *2 (D. Mass. 2018). Instead, the parties entered into
11  "a protective order that allow[ed] them to redact non-responsive, confidential
12  information in documents that elsewhere contain responsive information." *Id.*
13  Accordingly, *Intuiv* addressed the redaction of emails, not withholding entire emails
14  from production.

15      In addition, the Government mistakenly claims that Plaintiffs are seeking
16  wholesale production of irrelevant documents. That is not the case. Evidence is
17  relevant if it has "any tendency to make the existence of any fact that is of
18  consequence to the determination of the action more probable or less probable than
19  it would be without the evidence." *Old Chief v. United States*, 519 U.S. 172, 178
20  (1997) (quoting Fed. R. Evid. 401). Therefore, "[t]he question of relevancy should
21  be construed liberally and with common sense and discovery should be allowed
22  unless the information sought has no conceivable bearing on the case." *Soto v. City*
23  *of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (internal quotation marks
24  omitted); *see also Ghorbanian v. Guardian Life Ins. Co. of Am.*, 2016 U.S. Dist.
25  LEXIS 116132, at *3 (W.D. Wash. 2016) ("The court should and ordinarily does
26  interpret 'relevant' very broadly to mean matter that is relevant to anything that is or
27  may become an issue in the litigation.") (internal quotation marks omitted);

28

JOINT MOTION FOR ENTRY OF PROTECTIVE
ORDER AND ESI ORDER

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."). The email attachments that Plaintiffs seek to have produced are relevant—they provide information and context that is necessary to interpret and understand the emails to which they are attached.

### 3. The Government's Burden Argument Is Premature and Speculative

The Government also speculates that it may be unduly burdensome to review and produce emails containing non-responsive attachments. This speculation is insufficient. "The party claiming undue burden 'must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence.'" *Acosta v. Wellfleet Commc'ns, LLC*, 2018 WL 664779, at *8 (D. Nev. 2018) (quoting *Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 528-29 (D. Nev. 1997)).[5] "Conclusory or speculative statements of harm, inconvenience, or expense are plainly insufficient." *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 334 (D. Nev. 2016). "The fact that production of documents would be burdensome and expensive and would hamper a party's business operation is not a reason for refusing to order production of relevant documents. . . . The standard is whether the burden and expense is 'undue' and whether the hardship is unreasonable in light of the benefits to be secured from the

---

[5] *See also Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250, 283 (N.D. Tex. 2017) (party opposing discovery based on undue burden must "submit[] [an] affidavit[] or offer[] evidence revealing the nature of the burden"); *In re Application of Bloomfield Inv. Res. Corp.*, 315 F.R.D. 165, 168 (S.D.N.Y. 2016) (overruling burdensomeness objection where objecting party did not "present particularized evidence in their briefing that production of the . . . records would be unduly burdensome or costly, such as an affidavit of a person with knowledge of the record keeping system explaining in detail the basis of the objection"); *Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 625-26 (D. Kan. 2014) (the party asserting an unduly burdensome objection has the burden to show facts justifying the objection by demonstrating the time or expense involved is unduly burdensome).

discovery." *Acosta*, 2018 WL 664779, at *8 (quoting *Doe v. Neb.*, 788 F. Supp. 2d 975, 981 (D. Neb. 2011)).

Here, all that the Government offers is speculation and attorney rhetoric regarding its burden objections, not facts. Entirely missing from the Government's section of the joint motion is any discussion of the number of emails and attachments that are likely to be at issue, the prevalence of non-responsive attachments, or any estimate of the time and expense that will be incurred in reviewing non-responsive attachments. Accordingly, the Court should reject the Government's burden objections. *See, e.g.*, *Pom Wonderful LLC v. Coca-Cola Co.*, 2009 WL 10655335, at *4 (C.D. Cal. 2009) (concluding that a party's "generalized objection of burdensomeness [was] insufficient" where it objected that producing attachments to emails "would be very tedious" but "did not provide any evidence establishing the nature and costs of the burden.") (internal quotation marks omitted); *PSEG Power N.Y., Inc. v. Alberici Constructors, Inc.*, 2007 WL 2687670, at *7-8 (N.D.N.Y. 2007) (rejecting producing party's "blanket assertion" that it would be difficult to review email attachments because some attachments "may not be relevant" and holding that "[s]uch a panoptic plea is unpersuasive and unavailing").

Furthermore, the Government fails to acknowledge that the parties have already negotiated language in the proposed ESI Order that is designed to reduce the burden associated with including a large number of email attachments in a privilege log. First, Plaintiffs and the Government have agreed to exclude all privilege and non-responsive email attachments from its privilege log. *See* Ex. A § IV(F). Second, Plaintiffs and the Government have agreed on privilege logs that will be populated using metadata taken from the parties document productions, rather than engaging in the cumbersome process of creating privilege logs manually. *See id.* at § IV(B). Therefore, the parties have means at their disposal to address the Government's burden concerns, should they materialize.

JOINT MOTION FOR ENTRY OF PROTECTIVE ORDER AND ESI ORDER

1    Finally, as the Government appears to concede, it is too early for the parties

2    to determine whether it would be unduly burdensome for the Government to review

3    and produce emails as families.  If, after beginning its document review, the

4    Government determines that it would be unduly burdensome to do so, Plaintiffs are

5    happy to meet and confer about the issue.  For example, once the Government has

6    the opportunity to determine if an email actually has a voluminous number of

7    attachments that were a part of a Freedom of Information Act document collection,

8    then the parties can meet and confer about ways to handle such documents and will

9    likely be able to come to an agreement without burdening the Court.  However, the

10   Government's burden objections are too hypothetical and premature to be ruled upon

11   at this juncture.  *See, e.g.*, *Cooper Health Sys. v. Virtua Health, Inc.*, 259 F.R.D. 208,

12   212-13 (D.N.J. 2009) (propriety of redactions of non-responsive and competitively-

13   sensitive information addressed after third-party had produced documents and made

14   disputed documents available to district court for *in camera* review); *Spano v.*

15   *Boeing Co.*, 2008 WL 1774460, at *1 (S.D. Ill. 2008) (motion to compel filed after

16   defendant "had produced 50,000 documents").[6]

17                                    * * *

18   Because the Federal Rules of Civil Procedure, Federal Rules of Evidence, and

19   extensive case law require the production of full email families as they are kept in

20   the regular course of business, the Government should produce emails and their

21   attachments in that format.

22

23   _____

24   [6] In its reply section, the Government attempts to recast its objections as a
proportionality argument.  In making this proportionality argument the Government
appears to be focusing on "whether the expense of the proposed discovery outweighs

25   the likely benefit."  Fed. R. Civ. P. 26(b)(1).  This argument is also premature.  As
the Government concedes, the parties do not yet know who the custodians and non-

26   custodial sources of documents will be, how many documents will hit on search terms,
or the prevalence of non-responsive email attachments.  Therefore, it is impossible

27   to weigh the expense of reviewing and producing email families against the benefit
of Plaintiffs having emails as they were kept in the regular course of business and

28   with all context necessary to interpret them.

JOINT MOTION FOR ENTRY OF PROTECTIVE
ORDER AND ESI ORDER

8

**B.     The Government Should Not Be Allowed To Share Protected Material or Use Protected Material In Other Proceedings.**

The Protective Order defines "Protected Material" as "any Disclosure or Discovery Material from a Producing Party that is designated as 'CONFIDENTIAL' or 'CONFIDENTIAL – ATTORNEYS EYES ONLY,' including, without limitation, documents and information produced in response to discovery requests (including third-party subpoenas) and testimony given in deposition or at a hearing (including summaries and compilations thereof)." *See* Ex. B, Proposed Order § II.O. Although there are various provisions in the Protective Order relating to the parties' ability to share and use such Protected Material, the parties' dispute centers around the language in Section VI.A (discussing "Basic Principles" for "Access to and Use of Protected Materials").[7]

Plaintiffs believe that a standard provision governing basic principles for the sharing and use of Protected Materials is appropriate.  Plaintiffs have proposed the following commonly used language:  "Unless this Order allows its disclosure, Protected Information shall not be disclosed except as agreed upon by the Parties or as allowed by another Order of this Court, and shall be disclosed solely for purposes of prosecuting or defending this Action, including any appeals.     Protected Information must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this agreement."  Ex. B, Proposed Order § VI.A.

---

[7] Defendants' position on this issue is manifested elsewhere in the Protective Order aside from Section VI.A.  *See, e.g.*, Ex. B, Proposed Order § VI.D (in section on "Disclosure of Protected Material," Defendants added "Except as provided above in paragraph VI.A . . . ."); *id.* § XI.B (Defendants removed provision stating "The Parties agree that no Protected Information shall be used in immigration enforcement proceedings against Plaintiffs, including but not limited to removal proceedings."); *id.* § XII (in "Final Disposition" section, Defendants added that "the United States may maintain, distribute, and use Protected Material in furtherance of official duties in accordance with applicable law.")  For purposes of this Joint Motion, Plaintiffs discuss these provisions in concert under the umbrella of the parties' ability to share and use Protected Material.

JOINT MOTION FOR ENTRY OF PROTECTIVE
ORDER AND ESI ORDER

1    Defendants, however, have consistently argued that the U.S. Government
2    cannot agree to such language, despite being provided with a number of examples
3    to the contrary.  *See* Lev Decl. ¶ 13.  At every stage of the negotiating process,
4    Defendants have attempted to insert variations on the following language that would
5    allow them to freely share and use Plaintiffs' Protected Information:
6    "Notwithstanding the foregoing, nothing in this Protective Order supersedes the
7    existing independent statutory, law enforcement, national security, or regulatory
8    obligations imposed on a Party, and this Protective Order does not prohibit or
9    absolve the Parties from complying with such other obligations.  Specifically, an
10   employee of the United States may disclose, or may direct another person to disclose,
11   Protected Information that is relevant to any civil, criminal, regulatory, or
12   administrative action to any appropriate federal, state, local, foreign, or tribal law
13   enforcement authority or any other appropriate agency with authority pertaining to
14   any activity relating to the Protected Information . . . ."  In other words, Defendants
15   seek to be able to share and use *any* Protected Information that is "relevant" to *any*
16   proceeding with *any* law enforcement authority or "appropriate agency."   A
17   protective order that allows such sharing and use of information provides no
18   protection at all.

19   The Court should enter an order adopting Plaintiffs' proposed language on
20   this issue.  First, such language is consistent with the general purpose of a protective
21   order.  Federal Rule of Civil Procedure 26(c)(1) provides that a court "may, for good
22   cause, issue an order to protect a party or person from annoyance, embarrassment,
23   oppression, or undue burden or expense."  Fed. R. Civ. Proc. 26(c)(1).  Here, the
24   purpose of Plaintiffs' proposed language is to protect the confidentiality of *both*
25   *parties'* Protected Material.  As the Court is aware, discovery in this matter will
26   likely involve the production of material that is sensitive for a number of reasons.
27   Defendants have previously articulated that their productions are likely to implicate
28

JOINT MOTION FOR ENTRY OF PROTECTIVE
ORDER AND ESI ORDER

confidential law enforcement- and government-policy-related information.  And
although Plaintiffs have yet to receive discovery requests, they will likely be asked
for highly sensitive personal or organizational information that could have life-
altering consequences related to their immigration status or, in Plaintiff Al Otro
Lado's case, sensitive and far-reaching implications for its business, personnel, and
operations.  If this type of information can be shared and used freely by Defendants,
then it is not really being protected under the Protective Order and Plaintiffs could
be negatively impacted simply by virtue of agreeing to be a part of this litigation.

Second, not only is Plaintiffs' proposed language necessary to protect the
parties' confidential information, but this type of language has been commonly
entered into by the Government and ordered by courts in other cases in this Circuit
and elsewhere.  *See, e.g.*, *Hernandez v. Sessions*, No. 16-cv-00620 (C.D. Cal. Dec.
22, 2017) (Ex. C); *Mendez Rojas v. Kelly*, No. C16-1024-RSM (W.D. Wash. Aug.
31, 2017) (Ex.. D); *F.L.B. ex rel. Trupin v. Lynch*, No. 14-cv-01026-TSZ (W.D.
Wash. Oct. 9, 2015) (Ex. E); *Lopez-Venegas v. Beers*, No. 13-cv-03972-JAK (C.D.
Cal. Feb. 6, 2014) (Ex. F); *Aguilar v. ICE*, No. 07-cv-8224 (S.D.N.Y. July 30, 2009)
(Ex. G); *Nunez Escobar v. Gaines*, No. 11-cv-0994 (M.D. Tenn. Dec. 4, 2012) (Ex.
H).[8]  In an effort to reach an agreement, Plaintiffs provided Defendants with this
non-exhaustive list of examples of protective orders where the Government agreed
to similar language as that proposed by Plaintiffs.  *See* Lev Decl. ¶ 13.  Contrary to
Defendants' position throughout the parties' negotiations, these examples are not
"outliers" that contain language that just "happened" to make its way into a
protective order.  These examples also demonstrate that the Government is not
prohibited from agreeing to such language.  Rather, the language contained in these
examples and that Plaintiffs propose is common because it protects the interests of

---

[8] These protective orders adopting the same or similar language as that proposed
by Plaintiffs are attached for the Court's convenience as Exhibits C to H of the Lev
Declaration.

JOINT MOTION FOR ENTRY OF PROTECTIVE
ORDER AND ESI ORDER

*both parties* equally and supports the underlying purpose of entering into a protective order in the first place.

Finally, nothing in Plaintiffs' proposed language precludes the Government from seeking Court permission to share particular information with identified third-parties for specified purposes should the Government determines that such sharing is warranted. First, the parties are to exercise restraint when designating materials as Confidential or Highly Confidential under the Protective Order. *See* Ex. B, Proposed Order § V(A). Second, the Government can challenge Plaintiffs' designation of information as Protected Material. *See id.* at § VII. Third, the standard protective order language proposed by Plaintiffs qualifies the prohibition on sharing or use of Protected Materials by providing that such information "shall not be disclosed *except . . . as allowed by another Order of this Court.*" *Id.* § VI.A (emphasis added). Those provisions provide the Government sufficient recourse should they determine that Protected Materials need to be shared with another agency. Simply put, the parade of horribles that the Government postulates below will not come to pass because the Defendants *can* share information they learn in discovery with other parts of the federal government; they just need to file a motion before doing so. Therefore, none of the Government's arguments justify the one-way-ratchet protective order that the Government advocates.

Accordingly, the Court should enter a protective order that includes Plaintiffs' proposed language and does not allow Defendants to share Protected Material or use Protected Material in other proceedings absent compliance with the other provisions of the Protective Order.

## II.    Defendants' Argument

### ESI PROTOCOL

**The Court Should Enter an ESI Protocol That Allows Both Parties to Exclude Non-Responsive Email Attachments from Their Document Productions**

JOINT MOTION FOR ENTRY OF PROTECTIVE
ORDER AND ESI ORDER

The Parties have agreed on substantially all the terms of the attached Stipulated ESI Protocol. The sole remaining dispute is whether the ESI Protocol should permit the parties to exclude non-responsive email attachments from their document productions and privilege logs, where those attachments are part of an email family that includes one or more responsive documents. Defendants anticipate that such a provision will save both sides the burden of having to review and redact irrelevant and non-responsive documents for attorney-client and governmental privileges and other protections from disclosure. Further, Defendants are law enforcement agencies that should not be required to produce irrelevant, non-responsive materials that also divulge sensitive information regarding their operations, regardless of whether such information is covered by the terms of a confidentiality protective order. Defendants propose including information about the excluded attachments—including all available, non-privileged metadata fields required by the Stipulated Order, such as the file name—to provide context. Accordingly, Plaintiffs' only possible reasons for rejecting this proposal are either because they do not trust Defendants to make proper responsiveness calls, or because they seek to use civil discovery as a means to obtain irrelevant information.

A. ARGUMENT

The "scope of discovery must not only be relevant to a claim or defense in a lawsuit, but it also must be proportional to the needs of a case." *Starline Windows, Inc. v. Quanex Building Products Corp.*, No. 15-CV-1282-L (WVG), 2016 WL 4485568, at *5 (Aug. 19, 2016) (S.D. Cal.) (citing Fed. R. Civ. P. 26(b)(1)). It is the responsibility of the parties and court "to consider the proportionality of all discovery and consider it in resolving discovery disputes." *See Starline Windows,* 2016 WL 4485568, at *5 (citing Adv. Comm. Notes to 2015 Amendment to Rule 26(b)(1)). Whether discovery is proportional to the needs of the case depends on

various factors, including "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). As parties are not even entitled to receive every piece of relevant information, "it is only logical, then, that a party is similarly not entitled to receive every piece of irrelevant information in responsive documents if the producing party has a persuasive reason for why such information should be withheld." *In re: Takata Airbag Prod. Liab. Litig.*, No. 14-24009-CV, 2016 WL 1460143, at *2 (S.D. Fla. Mar. 1, 2016).

Defendants acknowledge that often, parties produce non-responsive documents that are attached to responsive emails, or attached to a non-responsive email that contains another attachment that is responsive. "This does not mean that there is an ironclad, legal standard" mandating their production, however. *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, No. 08 CIV. 7508 SAS, 2011 WL 3738979, at *5 (S.D.N.Y. Aug. 18, 2011), *report and recommendation adopted*, No. 08-cv-7508, 2011 WL 3734236 (S.D.N.Y. Aug. 24, 2011). Defendants propose departing from this default practice so that neither side has to produce these non-responsive "sibling" attachments. This proposal would reduce the burden on the producing party and eliminate the production of certain non-responsive documents that are of no benefit to resolving the issues presented by this case.

Specifically, Defendants seek to include the following term in Appendix A, Section II of Defendants' Proposed ESI Protocol:

> **Non-responsive attachments.** Parties need only produce and/or log email attachments that contain responsive material. That is, the parties are not required to produce all attachments to a parent email simply because one attachment, or the parent email, contains responsive material. For any non-responsive attachment withheld from production, the Producing Party will provide a placeholder slipsheet and any applicable, nonprivileged

metadata fields included in Section V of this Appendix.[9]

While the parties are still at an early stage of discovery, and thus Defendants have not yet begun a detailed analysis of the emails to be reviewed, it is likely that many of Defendants' emails will contain attachments that are not themselves responsive or are not even tangentially related to the responsive document. For example, a parent email may attach a variety of disparate documents that were collected to respond to a request for information for an internal briefing that encompassed multiple topics, or to respond to a request under the Freedom of Information Act (FOIA) that encompassed multiple topics, some of which topics may be responsive to requests for production in this case and some of which are not. Producing the entire document family (that is, the email and all attachments) would likely require Defendants to spend a substantial amount of time reviewing the non-responsive and irrelevant attachments for any applicable privileges and making necessary redactions. Even if the non-responsive attachments are not privileged or only partially privileged, they may contain other material that may be law enforcement sensitive. If so, Defendants would be required to produce otherwise sensitive information for the sole reason that the document happened to be grouped with other documents that are responsive. This sensitive information would not normally be provided to the public. *See, e.g.*, 5 U.S.C. § 552(b)(7) (exempting from FOIA disclosure various types of law enforcement information

---

[9] In other words, the parties would produce or log documents as follows. If a parent email is responsive, it would be produced and/or logged. If that parent email has any responsive attachments, each responsive attachment would be produced and/or logged. If that parent email has non-responsive attachments, the non-responsive attachments need not be produced or logged, but the producing party must provide a slipsheet in place of each non-responsive attachment and provide the metadata about the non-responsive attachment in the accompanying load file. If a parent email is non-responsive but has responsive attachments, both the parent email and any responsive attachments would be produced and/or logged.

JOINT MOTION FOR ENTRY OF PROTECTIVE
ORDER AND ESI ORDER

and records).  There is no reason to require Defendants, or any producing party, to

review, redact, or produce such irrelevant information that has no conceivable

bearing on the case or any substantive connection to the responsive document(s) in

the email family.  As explained by one Court:

> Relevance is the *sine qua non* of discovery.  *See* Fed. R. Civ. P.
> 26(b)(1).  If information is not relevant, it is not discoverable
> under plain text of the Rule[.]  Thus, if an e-mail attaches three
> disparate items in one communication package, that does not
> mean that all three items relate to the same thing or would be
> equally relevant to a discovery request.

*Abu Dhabi Commercial Bank*, 2011 WL 3738979, at *5.

     For these reasons, Defendants propose instead that the producing party be

permitted to provide placeholders in lieu of any non-responsive attachments, along

with available, non-privileged metadata for the excluded attachments (including

metadata that preserves the relationship between the parent email and the

attachments).  That way, the receiving party can clearly see whether and which

attachments have not been produced.

     Defendants' proposed approach is thus a reasonable one.  It allows

producing parties to withhold non-responsive documents that would have no

benefit to the case, while still providing sufficient information to allow the

receiving party to understand the import and context of the document family as a

whole.  Other litigants and Courts have entered into or endorsed stipulated orders

that espouse this approach or similar approaches.  *In re: Takata Airbag Prod. Liab.

Litig.*, No. 14-24009-CV, 2016 WL 1460143, at *3 (S.D. Fla. Mar. 1, 2016)

(approving ESI order that allows the producing party to withhold irrelevant

documents from email families and provide slipsheets in place of the withheld

family members along with other contextual information); *In re: Intuniv Antitrust

Litig.*, No. 16-CV-12396-ADB, 2018 WL 6492747, at *2 (D. Mass. Dec. 10, 2018)

("The protective order also allows the parties to withhold confidential documents

JOINT MOTION FOR ENTRY OF PROTECTIVE
ORDER AND ESI ORDER

that do not contain responsive information, and which would otherwise be produced only to ensure document-family completeness."); *see also Cooper Health Sys. v. Virtua Health, Inc.*, 259 F.R.D. 208, 212-13 (D.N.J. 2009) (allowing redactions of irrelevant, sensitive material because it was non-discoverable); *Spano v. Boeing Co.*, No. 3:06-cv-00743, 2008 WL 1774460, at *2-3 (S.D. Ill. Apr. 16, 2008) (approving redactions based on relevance).

Plaintiffs nonetheless argue that Defendants' proposal is improper under Federal Rule of Civil Procedure 34(b)(2)(E)(i), which requires that a party "produce documents as they are kept in the usual course of business." But Defendants' proposal still contemplates that parties produce documents in the manner they are kept in the usual course of business, by providing placeholders and metadata that identify the documents and custodians, preserve and evidence the family relationship, and preserve the order in which the documents were kept. *See Consolidated Rail Corp. v. Grand Trunk W. R.R. Co.*, No. 09-CV-10179, 2009 WL 5151745, at *3 (E.D. Mich. Dec. 18, 2009) (holding that party produced documents "as they were kept in the normal course of business," because the production "identified the document custodians and the range of Bates numbers for each custodian's set of documents, along with the date associated with the document creation," and because email attachments followed the corresponding email); *cf. Pom Wonderful LLC v. Coca-Cola Co.*, No. 08-cv-6237, 2009 WL 10655335, at *2 (C.D. Cal. Nov. 30, 2009) (in compelling production of indisputably *relevant* email attachments, holding that "plaintiff must have the ability to identify which attachments belong to which emails").

Although some authority states that attachments should be produced along with emails under Rule 34(b)(2)(E), that authority often focuses on the form of production without addressing or analyzing whether the attachments are independently responsive, or whether identifying metadata about non-responsive

JOINT MOTION FOR ENTRY OF PROTECTIVE
ORDER AND ESI ORDER

attachments would satisfy the Rule's requirement.  *See, e.g.*, *CP Solutions, PTE, Ltd. v. General Electric Co.,* No. 3:04-cv-2150, 2006 WL 1272615, at *4 (D. Conn. Feb. 6, 2006) (holding that "attachments should have been produced with their corresponding emails" where the party produced emails and attachments in a "jumbled, disorganized fashion").  Indeed, at least one such case suggests that metadata would be sufficient so long as the identifying information was present: "While the specific information a producing party must provide when organizing a production 'in the usual course of business' may vary in its details according to the type of document or file produced, it is clear that parties are entitled under the Federal Rules to rationally organized productions so that they may readily identify documents, including ESI, that are responsive to their production requests." *City of Colton v. Am. Promotional Events, Inc.*, 277 F.R.D. 578, 585 (C.D. Cal. 2011).

Because Defendants' proposal would still require the producing party to provide the receiving party with an organized production as kept in the ordinary course of business, there is no reason to deny entry of the proposed term based on Rule 34(b)(2)(E)(i).  For the foregoing reasons, Defendants respectfully request that the Court include its requested provision in any ESI Protocol entered in this case.

B. REPLY

Defendants' proposal to allow parties to withhold non-responsive email attachments is a proactive attempt to reduce the inevitable costs of expending attorney hours reviewing and redacting such attachments for privilege, and of the inherent burden of having to produce non-responsive documents that have no connection to this case. Plaintiffs' arguments against Defendants' proposal are based on several false premises: (1) that just because something is "prevailing practice" means that it must be followed, or that it should be followed, in every case; (2) that Defendants should be required to produce specific evidence of

JOINT MOTION FOR ENTRY OF PROTECTIVE
ORDER AND ESI ORDER

burden to seek the Court's endorsement of a practice that attempts to eliminate or minimize clearly disproportionate discovery; and (3) that Plaintiffs will somehow be deprived of the "context" to enable them to understand and use the emails and attachments produced by Defendants.  As already explained, it makes sense to depart from the default practice here based on the governing principle that discovery must be both relevant and proportional to the needs of the case.

As the 2015 amendments to the Federal Rules of Civil Procedure made clear, the cost and potential for abuse of discovery, and in particular e-discovery, had significantly increased:

> The 1993 Committee Note … observed that "[t]he information explosion of recent decades has greatly increased both the potential cost of wide-ranging discovery and the potential for discovery to be used as an instrument for delay or oppression."  What seemed an explosion in 1993 has been exacerbated by the advent of e-discovery.

Adv. Comm. Notes to 2015 Amendment to Fed. R. Civ. P. 26(b)(1).  The 2015 amendments reflect "efforts made by the Supreme Court and the Advisory Committee on Civil Rules to encourage trial courts to exercise their broad discretion to limit and tailor discovery to avoid abuse and overuse.'" *McSwain v. United States*, No. 2:15-cv-01321, 2016 WL 4530461, at *3 (D. Nev. Aug. 30, 2016).

The clear message of the 2015 amendments to the Federal Rules of Civil Procedure was that civil discovery was not working as intended, and that the parties and the Court should attempt to fix it by reducing unnecessary cost.  Thus, just because there was or is a "prevailing practice" does not mean that the parties and the Court must follow it blindly without accounting for the discovery's irrelevance and consequent lack of importance to the case, and the relative burden of conducting that discovery.  Instead, the Court and the parties should "eliminate

1  unnecessary and wasteful discovery." *Roberts v. Clark County School Dist.*, 312

2  F.R.D. 594, 603 (D. Nev. 2016) (citing Chief Justice Roberts, 2015 Year-End

3  Report on the Federal Judiciary (Dec. 31, 2015)).

4      Nor should the Court require specific evidence of burden to approve

5  Defendants' proposal.  Proportionality defines the *scope* of discovery, and is not

6  just a factor that Courts may use to limit otherwise proper discovery.  *See* Adv.

7  Comm. Notes to 2015 Amendment to Fed. R. Civ. P. 26(b)(1) ("The present

8  amendment restores the proportionality factors to their original place in defining

9  the scope of discovery.  This change reinforces the Rule 26(g) obligation of the

10  parties to consider these factors in making discovery requests, responses, or

11  objections.").   Defendants thus should not need specific evidence of burden to

12  support for the common-sense notion that non-responsive email attachments with

13  no connection to the lawsuit need not be produced to the other side.  Defendants'

14  proposal is an effort to ensure that the scope of discovery in this case remains

15  proportional for both parties.  Further, having to produce non-responsive material

16  is a burden in and of itself.  *E.g.*, *Scanlon v. Life Ins. Co. of N. Am.*, No. 08-cv-

17  0256, 2008 WL 11343466, at *4 (W.D. Wash. Dec. 12, 2008) (finding "good cause

18  to protect Plaintiff from the undue burden and annoyance of producing such

19  irrelevant information"); *C&R Forestry, Inc. v. Consol. Human Res. AZ, Inc.*, No.

20  CV 05-381, 2008 WL 190634, at *2 (D. Idaho Jan. 17, 2008) (holding "that it

21  would be irrelevant and burdensome to produce correspondence related to other

22  client companies that bear no relationship to [Plaintiff]").  This is particularly true

23  where the non-responsive attachment may contain law-enforcement sensitive

24  information.

25      Moreover, as Plaintiffs are well aware, the parties have not yet negotiated

26  custodians or search terms for Defendants' document review and production, and

27  Defendants are still in the process of collecting information.  It would be

28

JOINT MOTION FOR ENTRY OF PROTECTIVE
ORDER AND ESI ORDER

1   impossible for Defendants to provide the type of information Plaintiffs demand,

2   such as "the number of emails and attachments" potentially implicated.  As

3   explained, Defendants anticipate that there will be non-responsive attachments that

4   are grouped in emails along with responsive attachments, based in part on

5   counsel's experience with discovery from general government agencies experience

6   in other cases.  *See* Declaration of Gisela A. Westwater ¶¶ 6-7.  Defendants are

7   merely asking the Court to proactively limit the production of irrelevant, non-

8   responsive documents that have no bearing on or benefit to the case, as the Federal

9   Rules encourage.  *See McSwain*, 2016 WL 4530461, at *3 (D. Nev. Aug. 30,

10  2016).[10]  Of course, if the Court does not enter Defendants' proposed term,

11  Defendants reserve the right to move for protection from having to produce non-

12  responsive attachments under Federal Rule of Civil Procedure 26(c)(1).

13          Finally, and as explained above, Plaintiffs will not be deprived of the context

14  for produced emails.  To be clear, Defendants are not proposing to separate

15  "parent-child" pairs, as was the issue in the main case upon which Plaintiffs rely,

16  *Families for Freedom v. U.S. Customs and Border Protection*, 2011 WL 4599592,

17  at *5 (S.D.N.Y. Sept. 30, 2011).  Under Defendants' proposal, the parties would

18  still have to produce or log even non-responsive parent emails that have one or

19  more responsive attachments.  Further, the parties would have to provide

20  placeholders and non-privileged metadata fields, such as identifying filenames, for

21  each and every non-responsive attachment that is part of a produced document

22

23  [10] Accordingly, the authority Plaintiffs cite is inapposite.  *See, e.g.*, *Acosta v.*

24  *Wellfleet Commc'ns*, 2018 WL 664779, at *8 (D. Nev. 2018) (opposition to motion
    to compel, addressing the burden of producing *relevant* documents); *Pom*

25  *Wonderful LLC*, 2009 WL 10655335 at *1, 3 (opposition to motion to compel,

26  addressing burden of producing documents of which the relevance was not
    disputed); *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint.*

27  *Ass'n*, 316 F.R.D. 327, 334 (D. Nev. 2016) (opposition to motion to compel,

28  claiming undue burden in having to be deposed).

family.  Given that Plaintiffs will receive any non-privileged parent emails for any attachment produced, as well as substantial information about the attachments, it is difficult to see how this could frustrate their ability to understand what is being communicated in an email or to question any witness about any relevant information in that email.  Nor would Federal Rule of Evidence 106's rule of completeness have any possible applicability in these circumstances, where the nonresponsive attachment by definition is at most tangentially connected to responsive portions of the parent email, if it is connected at all.  If, however, Plaintiffs determined that they needed the non-responsive attachments to a particular email for context, the parties could meet and confer about that particular email.

For these reasons, the Court should not hesitate to endorse Defendants' proposal, which will help discovery proceed in a common-sense manner by eliminating the parties' need to conduct privilege review on non-responsive email attachments

## PROTECTIVE ORDER

### The Court Should Not Enter an Order that Preemptively Prohibits the Government from Advancing its Statutory and Regulatory Obligations.

The Court should not enter a protective order that preemptively prohibits the Government from sharing information internally for official purposes. Such an order would impede the Government's statutory and regulatory obligations, which sometimes *require* the Government to share information with federal employees who have a need for such information in the performance of their official duties; wrongly shifts the burden of persuasion from Plaintiffs to the Government; ignores that protective orders generally focus on *public* disclosure of information, which is not at issue here; and runs counter to the Federal Rules of Civil Procedure. Plaintiffs have not demonstrated good cause or made a particularized showing that their a

JOINT MOTION FOR ENTRY OF PROTECTIVE
ORDER AND ESI ORDER

prohibition on internal information-sharing is warranted, and therefore have not met their burden for such a protective order.

## A. Plaintiffs' Proposed Information-Sharing Prohibition Does Not Comport with Rule 26(c)(1).

The Court may enter a protective order, upon a showing of good cause, to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The plain language of Rule 26(c) places the burden of persuasion on the party seeking a protective order (or, as it relates to this dispute, a specific provision of a protective order). *See* Fed. R. Civ. P. 26(c)(1) (allowing the party "from whom discovery is sought" to move for a protective order); *Velasquez v. Frontier Med. Inc.*, 229 F.R.D. 197, 200 (D.N.M. 2005); *Janfeshan v. U.S. Customs and Border Protection*, No. 16-cv-6915, 2018 WL 741369, at *3 (E.D.N.Y. Feb. 7, 2018) ("The burden of persuasion falls on the party seeking the protective order."). The party "asserting good cause bears the burden, for *each particular document* it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) (emphasis added).

The Court should reject Plaintiffs' proposal because it does not comport with any aspect of Rule 26(c)(1). **First**, Plaintiffs' proposal is not made for any of the purposes provided for in the Federal Rules, and is instead made for the improper purpose of attempting to immunize Plaintiffs from any potential actions by the U.S. government. A protective order may be entered to protect against "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Plaintiffs' proffered reasons, however, are only that their proposal "is consistent with the general purpose of a protective order" and that the federal government has agreed

to similar language in other unrelated litigation.[11] *Supra* at pp. 10–11. Such justification hardly satisfies the "good cause" standard of Rule 26(c)(1).

Besides wholly failing to make any showing of good cause, Plaintiffs' proposal is instead made for an admitted, improper purpose: preventing Defendants from sharing information with other U.S. government entities in furtherance of their official duties. *See supra* at p. 10 (noting that if Plaintiffs' information can be shared internally by Defendants, "Plaintiffs could be negatively impacted simply by virtue of agreeing to be part of this litigation"). The federal Defendants are permitted by law to disclose any record maintained in a system of records "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." 5 U.S.C. § 552a(b)(1).[12] This provision of the Privacy Act "recognize[s] that agency personnel require access to records to discharge their duties." 40 Fed. Reg. 28,949, 28,954 (July 1, 1975).

---

[11] Critically, none but one of the cases cited by Plaintiffs analyze whether the internal information-sharing provisions are proper under Rule 26(c)(1). Because those cases do not contain any analyses, and because the Government is not bound to a particular provision of a protective order simply because it has *voluntarily agreed* to those provisions in the past, those cases are of little value here. The last case, *Nunez Escobar*, is not applicable here, as it centered on the plaintiffs' attempt to prohibit the government from inquiring into their immigration status. *See* Lev. Decl. Ex. H, at 3. Here, in contrast, the government knows Plaintiffs' immigration statuses, and they raise no argument in their portion of the Joint Motion based on any purported *in terrorem* effect of conducting discovery.

[12] All components of DHS, including U.S. Customs and Border Protection ("CBP"), U.S. Immigration and Customs Enforcement ("ICE") and U.S. Citizenship and Immigration Services ("USCIS"), are one agency for Privacy Act purposes. *See, e.g.*, "Notice of New Privacy Act System of Records," 82 Fed. Reg. 49,407, 49,408 ( Oct. 25, 2017) ("Consistent with DHS's information sharing mission, information stored in [the relevant system of records] may be shared with other DHS components that have a need to know the information to carry out their national security, law enforcement, immigration, intelligence, or other homeland security functions."); *see also* 81 Fed. Reg. 48,832, 48,833 (Aug. 25, 2016); 79 Fed. Reg. 64823-01 (Oct. 31, 2014). The United States Attorney's Offices and all other components of DOJ are similarly considered one "agency" for purposes of the Privacy Act. *See* "Implementation of Section 552a of Title 5 of the United States Code," 40 Fed. Reg. 28,949, 28,954 (July 1, 1975); *see also Sussman v. U.S. Marshals Serv.*, 808 F. Supp. 2d 192, 196 (D.D.C. 2011) (disclosures between the U.S. States Marshals Service and the Federal Bureau of Investigation were permitted under 5 U.S.C. § 552a(b)(l), as both entities are components of the Department of Justice).

Plaintiffs also fail to identify any specific information they seek to prevent the Government from sharing internally. Instead, they seek to prevent the sharing of all information that they designate as "confidential." But, as each party may designate information "confidential" under the terms of the protective order, there is no real limit on what information Plaintiffs could prevent Defendants from sharing within the government. Moreover, Plaintiffs have not explained how they will be harmed by internal sharing of the information they produce. Defendants' proposed language does not allow the government to share any confidential provided by Plaintiffs with the public, and Defendants are already aware of Plaintiffs' presence in the United States. Sharing their statements in this case, as well as in immigration proceedings, cannot harm them unless their testimony in one forum is not truthful. But both as witnesses in this case or applicants in asylum proceedings, Plaintiffs' credibility is at issue. *See* 8 U.S.C. § 1229a(4).[13] Preventing the sharing of information only serves to frustrate the Government in carrying out its missions "to an unwarranted degree" and would serve only to protect Plaintiffs from their own inconsistent statements, which is clearly not a proper purpose for a protective order. *See United States v. Elsass*, No. 10-cv-336, 2011 WL 335957, at *2, 5 (S.D. Ohio Jan. 31, 2011) (proposed protective order provision prohibiting "the use of the discovery materials by IRS personnel to whom such materials are disclosed to assist the [G]overnment's counsel in the preparation for and trial of this case, except in specific instances individually approved by the Court," would "restrict to an unwarranted degree the ability of the Government to enforce the laws and would improperly shift to the Government the burden in connection with the issuance of a protective order").

Defendants also have an obvious interest in ensuring that any unlawful

---

[13] Indeed, the immigration judge is *required* to take Plaintiffs' credibility into account in their immigration proceedings. 8 U.S.C. § 1229a(4)(B). The immigration judge is expressly permitted to rely on "the consistency between the applicant's . . . written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made)." *Id.* § (4)(C).

activity that may come to light is referred to the appropriate authorities. A restraint on referral of violations of law is contrary to policies and practices of the Department of Justice. *See, e.g.*, 71 Fed. Reg. 11,446-02 (Mar. 7, 2006) ("Where a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law—criminal, civil, or regulatory in nature—the relevant records may be referred to the appropriate Federal, state, local, foreign, or tribal law enforcement authority or other appropriate agency charged with the responsibility of investigating or prosecuting such a violation or enforcing or implementing such law."). And, it is well settled that the government may use evidence obtained in civil litigation in the prosecution of criminal conduct, absent an affirmative showing of a constitutional violation. *See United States v. Kordel*, 397 U.S. 1, 12–13 (1970); *United States v. Unruh*, 855 F.2d 1363, 1374 (9th Cir. 1987) ("The prosecution may use evidence obtained in a civil proceeding in a subsequent criminal action unless the defendant shows that to do so would violate his constitutional rights." (citing *Kordel*, 397 U.S. at 12–13)); *United States v. Posada Carriles*, 541 F.3d 344, 354 (5th Cir. 2008) ("We begin with the well-settled rule that the government may conduct simultaneous civil and criminal proceedings without violating the due process clause or otherwise departing from proper standards in administering justice." (citing *Kordel*, 397 U.S. at 12–13)). Congress recognized this interest when it expressly authorized Defendants to disclose records that implicate the civil and/or criminal law enforcement interests of the United States "to another agency or to an instrumentality of any governmental jurisdiction within or under the control of the United States for a civil or criminal law enforcement activity if the activity is authorized by law." 5 U.S.C. § 552a(b)(7). Law enforcement-related disclosures to other agencies are also covered by the Privacy Act, which authorizes disclosures "for a routine use" (meaning "the use of such record for a purpose which is compatible with the purpose for which it was created") 5 U.S.C. §§ 552a(b)(3), (a)(7) The sharing of records

created for law enforcement purposes thus may clearly be shared, as a routine use, with other law enforcement entities. The Privacy Act, which generally places strict limits on federal agencies' abilities to disclose information about individuals, recognizes the importance of such information sharing by expressly exempting information related to civil or criminal law enforcement activity from the prohibition on disclosure. *See* 5 U.S.C. §§ 552a(b)(7). *See, e.g.*, TECS System of Records Notice, 73 Fed. Reg. 77,778, 77,781 (Dec. 19, 2008) (explaining that CBP stores information in its TECS database for law enforcement purposes, and such information may be disclosed "to appropriate Federal, State, local, tribal, or foreign governmental agencies . . . responsible for investigating or prosecuting the violations of, or for enforcing or implementing, a statute, rule, regulation, order, license, or treaty where DHS determines that the information would assist in the enforcement of civil or criminal laws"). Plaintiffs' proposal, however, would remove the federal government's ability to share information with other law enforcement agencies entirely, effectively immunizing any potential wrongdoing that may come to light through discovery.

Plaintiffs' proposal would also bar the government from sharing information internally even if Defendants were required to do so by law. *See, e.g.*, Intelligence Reform and Terrorism Protection Act of 2004 ("IRTPA"), Pub. L. No. 108-458, § 1016(i), 118 Stat. 3638, 3670 (2004) (codified at 6 U.S.C. § 485(i)) ("The head of each department or agency . . . *shall*," *inter alia*, "ensure full department or agency compliance with information sharing policies, procedures, guidelines, rules, and standards" (emphasis added)); Exec. Order No. 13,388, "Further Strengthening the Sharing of Terrorism Information to Protect Americans," § 2(a), 70 Fed. Reg. 62,023, 2005 WL 2777052 (Oct. 25, 2005) ("the head of each agency that possesses or acquires terrorism information shall promptly give access to the terrorism information to the head of each other agency that has counterterrorism functions,

and provide the terrorism information to each such agency"); Homeland Security Act of 2002, Pub. L. No. 107-296, § 202(d)(2), 116 Stat. 2135, 2149–50 (2002) (codified at 6 U.S.C. § 122(d)(2)) ("The Secretary . . . *shall* work to ensure that intelligence or other information relating to terrorism to which the Department has access is appropriately shared with the elements of the Federal Government" (emphasis added)). Plaintiffs' proposed language *preemptively* prohibits the Government from complying with these statutory obligations, if such obligations are triggered, without *any* affirmative, individualized demonstration of why such information should not be disclosed.

**Second**, Plaintiffs' proposed information-sharing prohibition improperly absolves them of their obligation, "for *each particular document* [they] seek[] to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz*, 331 F.3d at 1130 (emphasis added). The party requesting that information be protected has the burden of demonstrating good cause, not the party opposing it. *See id.*; *Janfeshan*, 2018 WL 741369, at *3. Nowhere in their portion of this Joint Motion do Plaintiffs explain how the information that they provide about themselves is "sensitive" or could be misused against them, especially when it bears *directly* on their eligibility for immigration relief. "[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). By arguing that Defendants' ability to petition the Court "provides sufficient recourse" to Plaintiffs' proposed blanket prohibition, however, Plaintiffs improperly attempt to place their burden of showing particularized good cause onto Defendants. *Supra* at 12; *see also United States v. RaPower-3, LLC*, No. 15-cv-828, 2016 WL 5121754, at *3 (D. Utah Sept. 20, 2016) ("There is no evidence that the Government is on a fishing expedition and requiring the Government to bring request [*sic*] every time it seeks to share information with another Governmental

JOINT MOTION FOR ENTRY OF PROTECTIVE
ORDER AND ESI ORDER

agency is burdensome to both the court and the parties."). Plaintiffs' speculations as to "retaliat[ion]," "intimidat[ion]," or "discriminat[ion]" are just that—speculative—and cannot serve as the basis for such a preemptive restraint on government authority. *See* Lev. Decl., Ex. B, Proposed Order § VI.A. Thus, Plaintiffs' proposal should be rejected for its blatant failure to hew to the requirements of Rule 26(c)(1).

**B. The Government's Proposal Comports with Rule 26(c)(1).**

The Government's proposal, in contrast, satisfies the requirements of Rule 26(c)(1) and should be adopted by the Court. To ensure that Defendants may share information discovered in this litigation with other U.S. government employees who have a need for it in the course of their official duties, Defendants have proposed the following language for inclusion in the protective order:

> Notwithstanding the foregoing, nothing in this Protective Order supersedes the existing independent statutory, law enforcement, national security, or regulatory obligations imposed on a Party, and this Protective Order does not prohibit or absolve the Parties from complying with such other obligations. Specifically, an employee of the United States may disclose, or may direct another person to disclose, Protected Information that is relevant to any civil, criminal, regulatory, or administrative action to any appropriate federal, state, local, foreign, or tribal law enforcement authority or any other appropriate agency with authority pertaining to any activity relating to the Protected Information . . . .

This language comports with the plain language of the Federal Rules and does nothing to prohibit Plaintiffs from petitioning the Court when they believe it is truly necessary to keep information from being shared internally.

Judge Ross of the Eastern District of New York explained the point persuasively in a recent decision affirming the use of similar language in a protective order. *See Janfeshan*, 2018 WL 741369. In *Janfeshan*, a case about CBP's search of a lawful permanent resident's cell phone at JFK International Airport, Magistrate

JOINT MOTION FOR ENTRY OF PROTECTIVE
ORDER AND ESI ORDER

Judge Bloom entered a protective order with the following provision:

> Nothing in this Protective Order shall prohibit or limit the United
> States or any of its agencies or employees from using or disclosing
> materials or information designated as "Confidential Information" or
> "Attorneys' Eyes Only" as the United States, its agencies, and its
> employees, would otherwise be authorized to do by law absent entry of
> the Protective Order. Notwithstanding the foregoing sentence, Plaintiff
> may request, in writing to counsel for Defendants, that specific
> "Confidential Information" or "Attorneys' Eyes Only" information
> designated and being disclosed by Plaintiff not be disclosed to persons
> other than those described in paragraph 7 of this Protective Order . . .
> In the event that Defendants reject Plaintiff's request, Defendants shall
> so advise Plaintiff's counsel in writing, and Plaintiff may apply within
> three (3) business days of the rejection to the Court for an order
> prohibiting Defendants, notwithstanding the first sentence of this
> paragraph, from disclosing the specified "Confidential Information"
> [or] "Attorneys' Eyes Only" information to persons other than those
> described in paragraph 7 of this Protective Order. From the time
> Defendants receive a timely written or oral request . . . , they shall not
> disclose the specified "Confidential Information" or "Attorneys' Eyes
> Only" information to persons other than those described in paragraph 7
> of this Protective Order unless and until the Court rules that they are
> permitted to do so if Plaintiff has makes [*sic*] a timely application to the
> Court after Defendants deny his request.

*Janfeshan*, 2018 WL 741369, at *2.

Both Judge Ross and Judge Bloom acknowledged that the plaintiff "raise[d] important issues concerning privacy, discrimination, and a litigant's ability to vindicate his constitutional rights." *Id.* at *3. But Judge Bloom entered the order, and Judge Ross ultimately affirmed it, because the plaintiff's concerns, "while by no means trivial, [were] purely speculative at th[at] point." *Id.* Even if those fears turn out to be "well-founded," Judge Ross explained, "the procedure that Judge Bloom implemented ensures that defendants cannot share plaintiff's confidential information before plaintiff has an opportunity to object and be heard on the matter." *Id.* at 3. Similarly, Judge Wells of the District of Utah recognized that the

government has important information-sharing interests that should not be undermined by a blanket prohibition in a protective order. The court there suspended the District of Utah's standard protective order based on its finding that "any prejudice to [the plaintiff was] minimal and outweighed by the Government's need to comply with statutory obligations," among other reasons. *RaPower-3*, 2016 WL 5121754, at *2.

These cases illustrate the importance of entering a protective order that advances the government's statutory obligations. If Plaintiffs believe that their information warrants additional protections, nothing in Defendants' proposed order prohibits them from seeking additional protections from the Court for good cause at a later date, when Plaintiffs presumably would be able to point to specific information that they seek to protect from specific harms that would result if disclosed within Government agencies. *See* § IX.A.[14]

\*        \*        \*

At best, Plaintiffs seek to improperly place the burden on Defendants for showing why certain information should not be shared within the U.S. government. At worst, they effectively ask for blanket immunity for any civil or criminal violations that may come to light during discovery. Defendants do not oppose a procedure by which Plaintiffs may request that certain information not be shared, *see, e.g.*, *Janfeshan*, 2018 WL 741369, at *2, but a preemptive, blanket prohibition on internal information-sharing is certainly not the proper path forward. Accordingly, the Court should reject Plaintiffs' suggested language and enter Defendants' proposed protective order.

Dated:  April 12, 2019                                   MAYER BROWN LLP

---

[14] Defendants are also amenable to a procedure similar to the one provided for in the *Janfeshan* order, if the Court does not enter the parties' proposal.

1      Ori Lev
        Matthew H. Marmolejo
2      Stephen M. Medlock

3      SOUTHERN POVERTY LAW
4      CENTER
            Melissa Crow
5          Mary Bauer
            Sarah Rich
6          Rebecca Cassler

7
        CENTER FOR CONSTITUTIONAL
8      RIGHTS
            Baher Azmy
9          Ghita Schwarz
            Angelo Guisado
10

11      AMERICAN IMMIGRATION
        COUNCIL
12          Karolina Walters

13

14      By  /s/ Matthew H. Marmolejo

15

16      *Attorneys for Plaintiffs*

17

18

19

20

21

22

23

24

25

26

27

28

JOINT MOTION FOR ENTRY OF PROTECTIVE
ORDER AND ESI ORDER

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, Office of Immigration
Litigation – District Court Section

GISELA A. WESTWATER
Assistant Director

 /s/  Katherine J. Shinners
KATHERINE J. SHINNERS
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259
Fax: (202) 305-7000
katherine.j.shinners@usdoj.gov

SAIRAH G. SAEED
ALEXANDER J. HALASKA
Trial Attorneys

*Attorneys for Defendants*

JOINT MOTION FOR ENTRY OF PROTECTIVE
ORDER AND ESI ORDER

## CERTIFICATE OF COMPLIANCE WITH MEET-AND-CONFER REQUIREMENT

In compliance with Federal Rules of Civil Procedure 26 and 37 and this Courts Local Rules and Chambers Rules, I certify that on March 8, 2019 and April 2, 2019, counsel for the parties met and conferred via telephone to discuss the language in the proposed Protective Order and ESI Protocol. Counsel participating in these telephone conferences included attorneys from Washington, D.C., New York, Georgia, and California. The parties were unable to resolve their disputes.

Dated:  April 12, 2019

MAYER BROWN LLP
By  */s/ Matthew H. Marmolejo*
*Attorney for Plaintiffs*

JOINT MOTION FOR ENTRY OF PROTECTIVE
ORDER AND ESI ORDER

1       **CERTIFICATE OF SERVICE**

2              I certify that I caused a copy of the foregoing document to be served on all

3       counsel via the Court's CM/ECF system.

4       Dated:  April 12, 2019                      MAYER BROWN LLP

5

6                                                    By */s/ Matthew H. Marmolejo*

7                                                    *Attorney for Plaintiffs*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT MOTION FOR ENTRY OF PROTECTIVE
ORDER AND ESI ORDER