# Exhibit A

MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:  +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, DC 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Kirstjen M. Nielsen, *et al.*, <br><br> Defendants. | Case No.:  17-cv-02366-BAS-KSC <br><br> **STIPULATED ESI PROTOCOL** |

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Mary Bauer (VA Bar No. 31388) (*pro hac vice*)
  *mary.bauer@splcenter.org*
1000 Preston Ave.
Charlottesville, VA
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

STIPULATED ESI PROTOCOL

After conferring on these matters, the Parties hereby propose to the Court the following stipulated order ("Stipulated Order") for production of electronic discovery.

**IT IS HEREBY ORDERED:**

**I.     DEFINITIONS**

**A.**    The "Litigation" means the case captioned above.

**B.**    "Electronically Stored Information" or "ESI" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001.

**C.**    "Hard Copy Discovery" means any document or thing discoverable under Fed. R. Civ. P. 26(b)(l) and Fed. R. Civ. P. 34 that cannot be characterized as ESI.

**D.**    "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes both ESI and Hard Copy Discovery.

**E.**    "E-mail" means an electronic means for communicating written information through non-telephone systems that will send, store, process and receive information.

**F.**    "Format" means the internal structure of a file, which defines the way it is stored and used.

**G.**    "Native File(s)" or "Native Format" means ESI that is a file or datum created by a computer-based, cloud-based, or artificial intelligence-based application (including, by way of example, Microsoft Office, Microsoft Access, video and audio files, *.eml, *.pst, and *.pdf files).

**H.**    "Non-Custodial Data Source" means a system or container that stores ESI, but over which an individual custodian does not organize, manage, or maintain the ESI in the system or container, such as an enterprise system or database.

**I.**    "Producing Party" means a Party that produces documents.

**J.**    "Receiving Party" means a Party to whom documents are produced.

**K.**     "Responsive Document" means any document that the Producing Party has agreed to produce or log, or that the Producing Party has been ordered to produce by the Court.

**L.**     "Metadata" means (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

**M.**     "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format (TIFF) image is an example of a Static Image.

**N.**     "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper documents.

**O.**     "Load/Utilization File" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Utilization File will also contain data relevant to the individual Documents, including extracted and user-created Metadata, coded data, as well as OCR or Extracted Text.

**P.**     "OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

**Q.**     "Extracted Text" means the text extracted from a Native File and includes all header, footer and document body information.

**II.     PROCEDURES REGARDING DOCUMENT COLLECTION**

STIPULATED ESI PROTOCOL

**A.** <u>Ongoing Cooperation and Consultation.</u>  The parties agree to consult and cooperate reasonably as discovery proceeds regarding the collection of Hard Copy Discovery and ESI.

**B.** <u>Custodial and Non-Custodial Sources.</u> Within 14 days of a Producing Party serving its responses and objections or an interrogatory answer stating that it will produce documents under Fed. R. Civ. P. 33(d), the Producing Party will disclose an initial list of each of its proposed document custodians and non-custodial sources reflecting those individuals and sources that are likely to possess/contain information and/or documents responsive to the Rule 34 requests. The parties will meet and confer within 14 days of this disclosure regarding the sufficiency of the custodial and non-custodial source designations.

**C.** <u>Search Terms.</u>

Within 14 days of the meet-and-confer regarding the Producing Party's disclosure of custodial and non-custodial sources, the Producing Party will disclose the search terms it intends to apply to its designated custodial and non-custodial sources (and identify to which of those sources it will apply those search terms). The parties shall meet and confer within 14 days of this disclosure regarding the sufficiency of search terms to be used to ascertain the electronic documents that will be reviewed for possible production. Should the parties fail to agree as to the search terms for their respective custodial and non-custodial files, either party may seek the intervention of the Court.

If a Producing Party intends to use search terms to identify documents and ESI that will be collected from agreed-upon or Court-ordered custodians and non-custodial sources, it shall disclose its intention to do so to the Receiving Party prior to collecting those materials.  In addition, the parties agree that certain types of ESI do not contain meaningful text and may not be amenable to a proximity-based text search.  Therefore, the parties agree that the following file extensions will be excluded from search terms applied at the collection phase: *.ai, *.aif, *.avi, *.bin,

STIPULATED ESI PROTOCOL

1    \*.bmp, \*.cab, \*.chi, \*.chm, \*.com, \*.flv, \*.gif, \*.iso, \*.jpeg, \*.mpg, \*.mov, \*.mp3,

2    \*.mp4, \*.mpe, \*.mpeg, \*.mpg, \*.obj, \*.opt, \*.png, \*.pbd, \*.psd, \*.psp, \*.qt, \*.ram,

3    \*.res, \*.rmi, \*.sys, \*.tmp, \*.tff, \*.vbx, \*.wav, \*.wmv, \*.wma, \*.wpg, \*.xls, \*.xlsx,

4    and \*.xfd.  The parties further agree to meet and confer regarding video and audio

5    file extensions that the Producing Party commonly uses in the regular course of

6    business that are not contained on the foregoing list to determine whether those file

7    extensions should be excluded from search terms applied at the collection phase.

8         The parties reserve their rights to identify responsive documents through

9    methods other than search terms, to include informed custodial self-identification.

10   "Informed custodial self-identification" means a process by which a document

11   custodian, in consultation with legal counsel, identifies folders, drives, or

12   repositories of documents and/or ESI that are likely to contain materials that are

13   responsive to the Receiving Party's discovery requests.  The foregoing reference to

14   "informed custodial self-identification" does not authorize custodians to directly

15   collect documents or ESI that may be responsive to the Receiving Party's discovery

16   requests.

17         To facilitate a meaningful meet-and-confer concerning each party's search

18   terms, no later than ten days prior to the meet-and-confer concerning search terms

19   discussed in the previous paragraph, the Producing Party will provide a Hit Report

20   (i.e., a file native to the program running the search analysis showing the total

21   number of documents and the total number of documents with families that hit on a

22   particular search string) of its terms on its designated data sources, or on a sample

23   from certain of those designated data sources.

24         If a Producing Party elects to provide its Hit Report based on a sample from

25   certain of those designated data sources, it shall disclose the data sources that were

26   included and excluded from the sample, the time period of the sample, and any

27   known facts that could skew the results shown in the sample (i.e., a custodian being

28   on leave or a non-custodial source being taken offline for maintenance).  ~~In any~~

6

1  ~~event, the time period for any such sample shall be no shorter than 3 months.  In any~~
2  ~~event, the time period for any such sample shall be no shorter than 2 months~~The
3  parties will continue to meet and confer regarding the proper timeframe for such
4  sampling.

5      The parties further agree to meet and confer regarding search terms that
6  may need to be revised because the terms result in a large number of false positive
7  hits, the terms result in zero hits, or the terms result in an error that prevents them
8  from being run.

9      Likewise, no later than seven days prior to the meet and confer concerning
10  search terms discussed in this paragraph, the Receiving Party shall provide the
11  Producing Party with a copy of its proposed additions and revisions to the Producing
12  Party's search terms.

13      Notwithstanding the other provisions of this section, the parties agree to
14  provide more time to the Producing Party to provide Hit Reports or to assess the
15  Receiving Party's proposed additions and revisions if the data in question has not
16  yet been collected and uploaded into a platform where a Hit Report functionality is
17  available.

18      If the parties are not able to agree on the search terms that will apply to
19  designated custodial and non-custodial files within 28 days of the initial disclosure
20  of search terms, the parties may submit their dispute to the Court.

21  **III.    TECHNOLOGY-ASSISTED REVIEW**

22      If either party intends to use technology-assisted review ("TAR") to identify
23  responsive information, the party that intends to use TAR shall disclose its protocol
24  to the other party.

25  **IV.    HARD COPY DISCOVERY**

26      **A.    Preservation.**  The Parties are taking reasonable steps to preserve hard
27  copy documents that contain material that is relevant to the claims and defenses in

28

STIPULATED ESI PROTOCOL

the Litigation, to the extent such documents still exist and subject to the exceptions set forth herein.

**B.    Production Format and Metadata Protocols.**  Hard copy documents shall be produced in the format provided in Appendix A – Production Format Protocol.

**V.    ELECTRONICALLY STORED INFORMATION**

The Parties agree to the following procedures regarding ESI and production formats:

**A.    ESI of Limited Accessibility.**  If a Producing Party contends that any responsive ESI is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), that Party shall timely identify such ESI with reasonable particularity and shall provide the Receiving Party with the basis for declining to produce such ESI.  The parties shall negotiate in good faith concerning the production of any such ESI.

**B.    Preservation.**  The Parties are taking reasonable steps to preserve ESI that is potentially relevant to the claims and defenses in this matter, to the extent such data still exist on an active data source and subject to the exceptions set forth herein and to the limitations on Defendants' preservation obligations with respect to video and audio data as set forth in the Court's Order dated September 17, 2018 (ECF No. 170).

**C.    Production Format and Metadata Protocols.**  ESI shall be produced in the format provided in Appendix A - Production Format Protocol.

**VI.    PRIVILEGE LOG AND TREATMENT OF PRIVILEGED MATERIALS**

**A.    Privilege Log.**  Consistent with the Federal Rules of Civil Procedure, a party withholding or redacting any responsive document on the grounds of privilege, immunity, or any similar claim shall provide to the Receiving Party a privilege log. The following privileged items need not be included in the privilege log: activities

8

undertaken in compliance with the duty to preserve information (including, but not limited to, litigation hold letters) that are protected from disclosure under Fed. R. Civ. P. 26(b)(3)(A) and (B); communications or documents relating to the actual conduct of litigation post-complaint; and communications between any party and counsel for that party, whether in-house counsel (including agency counsel) or outside counsel (including the Department of Justice), if the communications were created after the date when the original Complaint in this case was filed.

**B.    Privilege Log Contents.** Any document withheld or redacted shall be listed on a privilege log that shall contain the following information:  (i) a unique privilege log identifier; (ii) the date of the document (to the extent that this information is available in the document's metadata); (iii) the identity of all persons who authored, signed, or otherwise prepared the document (to the extent that this information is available in the document's metadata); (iv) the identity of all persons designated as addressees or copyees (to the extent that this information is available in the document's metadata); (v) if necessary to evaluate the claim of privilege, a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity; (vi) the type or nature of the privilege asserted (e.g., attorney-client privilege, work product doctrine, etc.); and (vii) for redacted documents, the Bates numbers corresponding to the first and last page of any document redacted.  For all individuals listed on a log whose role as an attorney is the basis for a claim of privilege, the privilege log shall contain some indication that the individual is an attorney (for example, an asterisk next to each attorney's name).  Where a party or non-party determines in good faith that any of the privilege log disclosures called for by this paragraph would be privileged themselves, the party or non-party shall disclose as much non-privileged information called for by this paragraph as possible.

STIPULATED ESI PROTOCOL

**C.    Protocols for Logging "Families."**  Each member of a document family (i.e., e-mail attaching memorandum) that is withheld or redacted on the grounds of privilege, immunity or any similar claim shall be identified on the log separately.

**D.    Logging Emails.**  Nothing in this Stipulated Order shall prevent the parties from producing emails in threads which capture all prior email content in the longest inclusive thread (the most recent email), including attachments (to the extent available). The use of email threading shall not relieve a party from ensuring the review and production of all responsive and unique content, including attachments from emails prior to the longest inclusive thread, or conversations which diverge from the longest inclusive thread.  Parties shall only be required to produce or log the longest inclusive thread, as well as any responsive attachments, in accordance with Paragraph C.  If a Producing Party intends to produce threaded emails, it shall disclose its intention to do so to the Receiving Party as soon as is practicable.

**E.    Protocols for Logging Redactions**.  If a Producing Party redacts its documents or ESI based on the fact that they contain Protected Personal Information ("PPI"), law enforcement record identification numbers, or information regarding non-party individual asylum applicants that may not be disclosed by law, and the information is redacted in such a manner that the reason for the redaction is obvious on its face, then the Producing Party need not log those redactions.  For example, if the Producing Party redacts Personally Identifiable Information, such as Social Security Numbers, that are clearly identified as such ("SSN [Redacted]"), there is no need to log the reason for the redaction.  However, redactions based on attorney-client privilege, attorney work product doctrine, law enforcement privilege, and deliberative process privilege shall be included in the Producing Party's privilege log.

**F.    Protocols for Logging Non-Responsive Attachments.**  The Producing Party shall have no obligation to include non-responsive attachments to

STIPULATED ESI PROTOCOL

emails that are privileged in its privilege log. ~~However, the Producing Party shall produce the redacted attachment or a cover sheet reading "Non-Responsive Attachment Withheld For Privilege."~~

**G. 502(d) Order.** This Stipulated Order is entered pursuant to Rule 502(d) of the Federal Rules of Evidence. Subject to the provisions of this Stipulated Order, if the Producing Party discloses information in connection with the Litigation that the Producing Party thereafter claims to be protected by the attorney-client privilege, work product protection, or any other privilege or protection, to include governmental privileges ("<u>Disclosed Information</u>"), the disclosure of that Disclosed Information will not constitute or be deemed a waiver or forfeiture—in this or any other action—of any claim of privilege or work product protection that the Producing Party would otherwise be entitled to assert with respect to the Disclosed Information and its subject matter.

1. The Stipulated Order will apply to attorney-client privilege, governmental privileges, work-product protections, and all other protections from disclosure afforded by Federal Rules of Civil Procedure 26(b) or required by statute. The foregoing reference to Fed. R. Civ. P. 26(b) shall not be interpreted to allow a Producing Party to claw back a document based solely on a party's assertion that the document is not relevant to any party's claim or defense.

2. Nothing in this Stipulated Order shall constitute an admission that any document disclosed in this litigation is subject to any of the foregoing privileges or protections, or that any party is entitled to raise or assert such privileges.

3. This Stipulated Order protects *any* disclosure of Disclosed Information, whether that disclosure is inadvertent or otherwise.

**Commented [A1]:** To Government: As a compromise, Plaintiffs propose that the Government produce non-responsive email attachments, but that privileged, non-responsive attachments need not be logged.

**Commented [A2R1]:** As noted in our cover email, this doesn't really take care of our concerns. However, we are willing to produce slipsheets identifying missing attachments that are nonresponsive as well as those that are withheld on the basis of privilege.

**Commented [A3R1]:** Thanks for explaining. We are at an impasse on the issue of email families and will need to Court's guidance.

11                    STIPULATED ESI PROTOCOL

4.     Each party is entitled to decide, in its sole discretion, the appropriate degree of care to exercise in reviewing materials for privilege. Irrespective of the care that is actually exercised in reviewing materials for privilege, the Court hereby orders that disclosure of Disclosed Information in discovery conducted in this Litigation shall not waive any claim of privilege or work product protection that the Producing Party would otherwise be entitled to assert with respect to the Disclosed Information and its subject matter.

5.     Federal Rule of Civil Procedure 26(b)(5)(B) shall govern the clawback of produced documents or information on the grounds of privilege or work product protection. Any Party may request the return of any produced material or information on the grounds of privilege or work product protection by identifying it, stating the basis for withholding such material or information from production, and providing any other information that would be listed on a supplemental privilege log ("Privilege Notice"). Upon receipt of the Privilege Notice, the Receiving Party shall, within five business days:

    a.     Destroy the produced material or information and all copies thereof, and expunge from any other document or material, information derived solely from the produced material or information. The Receiving Party will certify to the Producing Party that the document has been destroyed, subject to the caveats below. If a document must be destroyed as determined by the process above, that document, along with copies and notes about the document, that exist on back-up tapes, systems, or similar

12

STIPULATED ESI PROTOCOL

storage need not be immediately deleted or destroyed, and, instead, such materials shall be overwritten and destroyed in the normal course of business. Until they are overwritten in the normal course of business, the receiving party will take reasonable steps to limit access, if any, to the persons necessary to conduct routine IT and cybersecurity functions; or

b.    Notify the Producing Party that it wishes to challenge the claim of privilege or work product protection. The Parties agree to meet and confer regarding the claim of privilege. If, at the conclusion of the meet-and-confer process, the Parties are still not in agreement, they may bring the issue to the Court. The receiving party's motion challenging the assertion must not publicly disclose the information claimed to be privileged. Any further briefing by any party shall also not publicly disclose the information claimed to be privileged if the privilege claim remains unresolved or is resolved in the Producing Party's favor. Pending resolution of the judicial determination or resolution between the parties, the Parties shall both preserve and refrain from using the challenged information for any purpose and shall not disclose it to any person other than those required by law to be served with a copy of any motion filed under seal in accordance with applicable rules.

6.    This Stipulated Order shall be interpreted to provide the maximum protection allowed to the Producing Party by Federal Rule of Evidence 502(d). The provisions of Federal Rules of

13    STIPULATED ESI PROTOCOL

1    Evidence 502(b)(1) and (2) are inapplicable to the production of
2    Disclosed Information under this Order. However, if for any
3    reason, a Court finds that this Section is inapplicable to Disclosed
4    Information, then Rule 502(b) will apply in its absence.

5    7.    This Stipulated Order applies to information produced both
6    before and after entry of this Order.

7    **H.    Contesting Claim of Privilege or Work Product Protection.** Nothing
8    in this Order shall limit the Receiving Party's right to challenge the Producing
9    Party's claim that a document is protected from disclosure by an applicable privilege
10   or by the work product doctrine.  If, after the Receiving Party notifies the Producing
11   Party of specific documents for which it is challenging privilege and after
12   undertaking a subsequent meet-and-confer process, the Parties are unable to resolve
13   any dispute they have concerning the protection of the documents in question, the
14   Receiving Party may file the appropriate motion or application as provided by the
15   Court's procedures to compel production of such material.  Any briefing related to
16   a motion to compel, as well as any other briefing by any party, shall not publicly
17   disclose the documents claimed to be privileged if the privilege claim remains
18   unresolved or is resolved in the Producing Party's favor.

19   **VII.   MODIFICATION**

20   This Stipulated Order may be modified by a Stipulated Order of the Parties or
21   by the Court for good cause shown.

22   Nothing in this Stipulation shall be construed to prohibit the undersigned
23   Parties from agreeing to modify any provision of this Stipulation or seeking relief
24   from the Court. Nor shall anything in this Stipulation or any Party's compliance be
25   construed as a waiver of any Party's rights under the Federal Rules of Civil
26   Procedure. Nor shall anything in this Stipulation be interpreted to require disclosure
27   of information that is not relevant to the claims or defenses in this case or that is
28   protected by any applicable privilege. Nor shall anything in this Stipulation be

14                          STIPULATED ESI PROTOCOL

1  construed to waive any objections as to the production, discoverability, or
2  confidentiality of ESI.

3

4  Dated: April ___, 2019                    MAYER BROWN LLP
5                                                 Ori Lev
                                               Matthew H. Marmolejo
6                                              Stephen M. Medlock
                                               Matthew E. Fenn
7                                              Micah D. Stein

8                                          AMERICAN IMMIGRATION
9                                          COUNCIL
                                               Karolina Walters
10

11                                         SOUTHERN POVERTY LAW
12                                         CENTER
                                               Melissa Crow
13                                             Mary Bauer
                                               Sarah Rich
14                                             Rebecca Cassler

15                                         CENTER FOR CONSTITUTIONAL
16                                         RIGHTS
                                               Baher Azmy
17                                             Ghita Schwarz
                                               Angelo Guisado
18

19                                         By _____
20                                             Matthew H. Marmolejo

21                                         *Attorneys for Plaintiffs*

22

23

24

25

26

27

28

                              15              STIPULATED ESI PROTOCOL

1  Dated:  April ___, 2019              U.S. DEPARTMENT OF JUSTICE
2                                           Gisela A. Westwater
3                                           Katherine Shinners
                                            Sairah Saeed
4                                           Alex Halaska

5                                       By _____
6                                            Gisela A. Westwater

7                                       *Attorneys for Defendants*

8  **IT IS SO ORDERED:**
9
10 DATED:  _____, 2019         _____
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                            16          STIPULATED ESI PROTOCOL

**APPENDIX A**

**PRODUCTION FORMAT PROTOCOL**

**I.    GENERAL FORMAT OF PRODUCTION**

Whether originally stored in paper or electronic form, documents shall be produced in electronic image form in the manner as described below. Notwithstanding the foregoing provisions of this paragraph, the Parties reserve the right to request that an alternative format or method of production be used for certain documents, if such document is not susceptible to production in the format or methods of production addressed herein. In that event, the Receiving Party and the Producing Party will meet and confer to discuss alternative production requirements, concerns, formats, or methods.

**II.    PRODUCTION OF ELECTRONICALLY STORED INFORMATION (ESI)**

**A.    Electronic Production.** Except as set forth below, each party will produce ESI in single TIFF format with appropriate load files and corresponding multipage OCR text files. TIFF files shall be created directly from the original electronic documents; a party may not create a TIFF file of ESI by printing out paper copies of that electronic document and then scanning the paper copy of the ESI. All TIFF files shall be single-page Group IV standard TIFF (300 DPI resolution). Each image shall have a unique file name, which is the Bates/control number of the document. Original document orientation shall be maintained (*i.e.,* portrait to portrait and landscape to landscape). TIFFs will show any and all text and images which would be visible to the reader using the native software that created the document such as tracked changes and comments. Documents containing color which require color to understand the meaning, substance, or content of the document should be produced initially in color.

STIPULATED ESI PROTOCOL

**B.    Metadata.** Each of the metadata and coding fields set forth in Paragraph IV that can be extracted from a document shall be produced for that document. The Parties are not obligated to populate manually any of the fields in Paragraph V if such fields cannot be extracted from a document, with the exception of the CUSTODIAN, PRODVOLID, and TIMEZONE, which shall be populated by the Producing party. Where Native Files are produced, each load file shall contain a link to natively produced documents via data values named "Native File." The Native File values should contain the full directory path and file name (i.e., complete file path information) of the documents are contained in the produced media, and must be named per the Bates number on the first page of each document.

**C.    System Files.** Common system and program files need not be processed, reviewed or produced. The Producing party shall keep an inventory of the system files not being produced and the criteria *(e.g.*, non-human readable file, etc.) for not processing the files.

**D.    Email.** Email shall be collected in a manner that maintains reliable email metadata and structure. Whenever possible, email shall be collected from the Producing Party's email store or server. Metadata and "header fields" shall be extracted from email messages.

**E.    Document Unitization.** For electronic documents, the relationship of documents in a document collection (e.g., cover letter and enclosures, email and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process from native format to TIFF. Document images generated from "child" attachments to emails stored in Native Format shall be produced contemporaneously and sequentially immediately after the "parent" email.

**F.    Parent-Child Relationships.** Parent-child relationships (the association

18                    STIPULATED ESI PROTOCOL

1  between an attachment and its "parent" document) that have been maintained
2  in the ordinary course of business should be preserved to the extent reasonably
3  practicable. For example, if a Party is producing a hard copy printout of an
4  email with its attachments, the attachments should be processed in order
5  behind the email to the extent reasonable practicable.

6  **G.**  **Non-responsive** ~~family members~~ **attachments.**  ~~Non-responsive materials~~
7  ~~located within responsive documents and non responsive attachments to~~
8  ~~responsive parents will be produced unless otherwise privileged.~~ Parties need
9  only produce and/or log email attachments that contain responsive material.
10  That is, the parties are not required to produce all attachments to a parent email
11  simply because one attachment contains responsive material.  For any
12  nonresponsive attachment withheld from production, the Producing Party will
13  provide a placeholder slipsheet and any applicable, nonprivileged metadata
14  fields included in Section V of this Appendix.

> **Commented [A4]:** To Plaintiffs – As noted, we are still in disagreement on this; but we have proposed providing more contextual information to address Plaintiffs arguments.

> **Commented [A5R4]:** Thanks for explaining.  We are at an impasse on the issue of email families and will need to Court's guidance.

15  **H.**  **De-Duplication.**  Removal of duplicate documents shall only be done on
16  exact duplicate documents (based on MD5 or SHA-1 hash values at the
17  document level) *across all custodians* (global) at the family level.
18  Attachments to emails or other documents shall not be disassociated from the
19  "parent" email or document even if they are exact duplicates of another
20  document in the production. The Parties shall retain any metadata that would
21  be lost following deduplication (*e.g.*, Custodian) in a field that lists each
22  distinct value separated by a semicolon. If a Party is unable to maintain such
23  information or if global deduplication could otherwise limit the ability to
24  provide that a particular document was possessed by a custodian, then
25  removal of duplicate documents shall only be done on exact duplicate
26  documents (based on MD5 or SHA-1 hash values at the document level)
27  *within a source* (Custodian).

28  **I.**  **Other Technologies.**  Nothing in this Stipulated Order shall prevent the

parties from producing emails in threads; parties shall only be required to produce or log the inclusive email. The receiving party shall not use any other procedure to cull, filter, group, separate, or deduplicate, or near-deduplicate, etc. (i.e. reduce the volume of) responsive material before discussing with and obtaining the written approval of the producing party. All objective coding (e.g., near duplicate ID or email thread ID) shall be discussed and produced to the producing party as additional metadata fields.

**J.**    **Embedded Objects.**  Non-image files embedded within documents, such as spreadsheets within a PowerPoint, will be extracted as separate documents and treated like attachments to the document in which they were embedded. Graphic objects embedded within documents or emails, such as logos, signature blocks, and backgrounds shall not be extracted as separate documents.

**K.**    **Compressed Files.**  Compression file types (*e.g.*, .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a manner that ensures a container within a container is decompressed into the lowest uncompressed element resulting in individual files.  The container file itself shall not be produced.

**L.**    **Text Files.**  For each document, a single text file shall be provided along with the image files and metadata. The text file name shall be the same as the Bates/control number of the first page of the document. Electronic text must be extracted directly from the native electronic file unless the document was redacted, an image file, or a physical file. In these instances a text file created using OCR will be produced in lieu of extracted text.

**M.**    **Redaction.**  If a file that originates in ESI needs to be redacted before production, the file will be rendered in TIFF, and the TIFF will be redacted and produced.  The Producing party will provide searchable text for those portions of the document that have not been redacted.

STIPULATED ESI PROTOCOL

**N.** **Native Files.** Various types of files, including but not limited to spreadsheets, presentation documents, and media files, lose significant information and meaning when produced as an image. Any files that are produced in native format shall be produced with a Bates-numbered TIFF image slip-sheet stating the document has been produced in native format, as well as all extracted text and applicable metadata set forth in Paragraph IV. Documents containing privileged information will not be produced in native format.

**O.** **Spreadsheets.** Non-privileged Excel spreadsheets shall be produced as a native document file along with the extracted text and relevant metadata set forth in Paragraph IV for the entire spreadsheet, plus a Bates-numbered TIFF image slip-sheet stating the document has been produced in native format. All spreadsheets shall be produced in a manner that maintains the existence of any formulae, unless the spreadsheet contains privileged information. Spreadsheets containing privileged information will not be produced in native format.

**P.** **Word Processing Files.** Any word processing files, such as Microsoft Word files, shall be produced in a manner that maintains any comments or redlined revisions, if any.

**Q.** **Presentation Files.** Any presentation files, such as Microsoft PowerPoint files, shall be produced in a manner that maintains any speaker's notes, if any.

**R.** **Non-Convertible Files.** Certain types of files such as system, program, video, and sound files may not be amenable to conversion into anything meaningful in TIFF format. Non-privileged, non-convertible files (if not system and program files excluded from production under Section II.C, *supra*) will be produced natively and with a placeholder TIFF image. Each TIFF placeholder will contain the endorsed Bates number, endorsed confidentiality designation (if any), and the name of the non-convertible file, including the file extension. Some examples of file types that may not convert include file types with the

STIPULATED ESI PROTOCOL

following extensions: *.ai, *.aif, *.bin, *.cab, *.chi, *.chm, *.com, *.iso, *.mpg, *.mov, *.mp3, *.mpe, *.obj, *.opt, *.pbd, *.psd, *.psp, *.ram, *.res, *.rmi, *.sys, *.tmp, *.tff, *.vbx, *.wav, *.wmv, *.wma, *.wpg, and *.xfd. Other files may not be able to be converted to TIFF due to password protection, corruption, or encryption. If reasonable efforts to obtain useful TIFF images of these files are unsuccessful, these non-convertible files will also be accounted for with a TIFF placeholder. Nothing in this non-convertible file section is meant to include productions of data from databases.

**S.**    **Other ESI that is Impractical to Produce in Traditional Formats (aka, Structured Data).**   The Parties understand and acknowledge that certain categories of ESI are structurally complex and do not lend themselves to production as native format or other traditional formats. To the extent a response to discovery requires production of discoverable electronic information contained in a database, the Parties agree to confer to define appropriate parameters for querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file (*e.g.*, Excel, CSV or SQL format).

**T.**    **Endorsements.** The Producing Party will brand all TIFF images in the lower right-hand corner with the corresponding Bates/control numbers, using a consistent font type and size.  The Bates number must not obscure any part of the underlying data. The Producing Party will brand all TIFF images in the lower left-hand corner with all confidentiality designations, as needed, in accordance with confidentiality definitions as agreed to by the Parties.

**U.**    **Exception Report.**   The Producing Party shall compile and retain an exception report enumerating any unprocessed or unprocessable documents, their file type and the file location.

**V.**    **Passwords and Encryption.**   The parties will make reasonable efforts to locate passwords or encryption keys for ESI containing potentially responsive

STIPULATED ESI PROTOCOL

Extracted Text. If the Producing Party is unable to locate such passwords or encryption keys, the Producing Party will provide a coversheet which indicates the document could not be accessed.

**W.    Claw-Back Procedure.**  Any documents recalled due to a mutually agreed upon claw-back provision shall have a specific protocol followed to ensure all copies of each such document are appropriately removed from the active review system of the opposite party.

23                    STIPULATED ESI PROTOCOL

III.  **PRODUCTION OF PHYSICALLY STORED INFORMATION (HARD COPY DOCUMENTS)**

A.  **TIFFs.**  Hard copy paper documents shall be scanned as single page, Group IV compression TIFF images using a print setting of at least 300 dots per inch (DPI). Each image shall have a unique file name, which is the Bates/control number of the document. Original document orientation shall be maintained (*i.e.*, portrait to portrait and landscape to landscape).

B.  **Metadata Fields.**  The following information shall be produced for hard copy documents and provided in the data load file at the same time that the TIFF images and the Optical Character Recognition (OCR)-acquired text files are produced. Each metadata field shall be labeled as listed below:

| FIELD NAME | DESCRIPTION | EXAMPLE / FORMAT |
|---|---|---|
| **PRODBEGBATES** | The production Bates number associated with the first page of a document. | ABC0000001 |
| **PRODENDBATES** | The production Bates number associated with last page of a document. | ABC0000003 |
| **PRODBEGATTACH** | The production Bates number associated with the first page of the parent document. | ABC0000001 |
| **PRODENDATTACH** | The production Bates number associated with the last page of the last attachment in the document family. | ABC0000008 |
| **PGCOUNT** | Total number of pages for a document. | 00006 |
| **CUSTODIAN** | The name of the primary person the files belong to. This field should be populated as last name, first name. | Doe, John |
| **PRODVOLID** | Production volume name. | ABC_PROD001 |
| **TEXTLINK** | The path to the full extracted OR OCR text of the document. Text files should be named per control number or Bates number if the document is produced. | \TEXT\ABC000001.txt |

**C.** **OCR Acquired Text Files.** When subjecting Hard Copy documents to an OCR process, the resulting text should be provided for each document as a separate single text file. If technically possible, the OCR software used to process Hard Copy documents, shall maximize text quality over process speed. The text file name should match the first Bates number for that specific record and be accompanied by the .txt extension.

**D.** **Database Load Files/Cross-Reference Files.** Documents shall be provided with (a) a delimited metadata file (.dat or .txt) and (b) an image load file (.opt), as detailed in Paragraph IV.

**E.** **Unitizing of Documents.** In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (*i.e.*, paper documents should be logically unitized). In the case of an organized compilation of separate documents—for example, a binder containing several separate documents behind numbered tabs—the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize documents correctly.

**F.** **Parent-Child Relationships.** Parent-child relationships (i.e., the association between an attachment and its "parent" document) should be preserved.

**G.** **File Names.** To the extent possible, the Producing Party will maintain the filename of any hardcopy document in a separate metadata field.

**H.** **Detachable Notes.** Pages containing post-it notes or other detachable notes that obscure the underlying document should be scanned once with the detachable note intact, and then again without it, and made part of the same document.

**I.** **Color.** When color is necessary to interpret hard copy documents, they shall be produced in color.

25                                   STIPULATED ESI PROTOCOL

**IV.     REQUESTED LOAD FILE FORMAT FOR ESI**

1.     **Delimited Text File**:  A delimited text file (.DAT or .CSV) containing the fields listed in Paragraph III should be provided.  The delimiters for the file can be Concordance defaults, but defined delimiters are acceptable:

Comma - ASCII character 20 ( )

Quote -  ASCII character 254 (þ)

Newline - ASCII character 174 (®)

2.     **File Names.**  To the extent possible, the Producing Party will maintain the original filename of any document in a separate metadata field.

3.     **Image Cross-Reference File (Load File)**:  The Image cross-reference file (.OPT) is a comma delimited file consisting of six fields per line.  There must be a line in the cross-reference file for every image in the database.  The format for the file is as follows:

ImageID,VolumeLabel,ImageFilePath,DocumentBreak,PageCount

- ImageID:  The unique designation used to identify an image.  This should be the Bates number of the document.
- VolumeLabel:  The name of the volume (optional).
- ImageFilePath:  The full path to the image file.
- DocumentBreak:  If this field contains the letter "Y," then this is the first page of a document.  If this field is blank, then this page is not the first page of a document.
- PageCount: Number of pages in the document (optional).

Sample Data

CNTRL00000001,VOL001,\IMAGES001\CNTRL00000001.TIF,Y,,,

CNTRL00000002,VOL001,\IMAGES001\CNTRL00000002.TIF,Y,,,

CNTRL00000003,VOL001,\IMAGES001\CNTRL00000003.TIF,,,,

STIPULATED ESI PROTOCOL

CNTRL00000004,VOL001,\IMAGES001\CNTRL00000004.TIF,Y,,,

4

CNTRL00000005,VOL001,\IMAGES001\CNTRL00000005.TIF,,,,

CNTRL00000006,VOL001,\IMAGES001\CNTRL00000006.TIF,,,,

CNTRL00000007,VOL001,\IMAGES001\CNTRL00000007.TIF,,,

**V.    REQUESTED METADATA FIELDS FOR ESI**

| FIELD NAME | DESCRIPTION | EXAMPLE / FORMAT |
|---|---|---|
| **PRODBEGBATES** | The production Bates number associated with the first page of a document. | ABC0000001 |
| **PRODENDBATES** | The production Bates number associated with last page of a document. | ABC0000003 |
| **PRODBEGATTACH** | The production Bates number associated with the first page of the parent document. | ABC0000001 |
| **PRODENDATTACH** | The production Bates number associated with the last page of the last attachment in the document family. | ABC0000008 |
| **NATIVELINK** | The full path to a native copy of a document. | \natives\001\ABC0000001.htm |
| **PGCOUNT** | Total number of pages for a document. | 00006 |
| **ATTACHCOUNT** | Number of attachments within a document family. | 0 (Numeric) |
| **FILENAME** | The file name of a document. | Document Name.xls |
| **FROM** | The name of the person in the FROM field of every email. | John Doe <jdoe@acme.com> |
| **TO** | Recipients of the email. Multiple email addresses should be separated by semicolons. | Jane Smith <jsmith@acme.com |
| **CC** | Recipients in the cc: field of the email. Multiple email addresses should be separated by semicolons. | Bob Johnson <bjohnson@acme.com>; Sally May <smay@acme.com> |
| **BCC** | Recipients in the bcc: field of the email. Multiple email addresses should be separated by semicolons. | John Doe <jdoe@acme.com> |
| **EMAILSUBJECT** | Subject of an email. | Re: resume |
| **DATE TIME SENT** | Date and time when an email was sent. | MM/DD/YYYY HH:MM:SS |
| **DOCAUTHOR** | The author of a document from entered metadata. | John Doe |

27                          STIPULATED ESI PROTOCOL

| FIELD NAME | DESCRIPTION | EXAMPLE / FORMAT |
|---|---|---|
| DOCTITLE | The extracted document title for a loose file or attachment. | Resume.docx |
| DATE TIME MOD | Date and time a document was last modified | MM/DD/YYYY HH:MM:SS |
| CUSTODIAN | The name of the primary person the files belong to. This field should be populated as last name, first name. | Doe, John |
| CUSTODIAN ALL | The names of all custodians of duplicates | Doe, John; Doe, Jane |
| FILEEXT | The file extension of a document. | Docx |
| APPLICATION | Type of document by application. | MS Word, MS Excel, etc. |
| TIMEZONE | UTC (Coordinated Universal Time). | UTC |
| DATE TIME CREATED | Date and time a document was created. | MM/DD/YYYY HH:MM:SS |
| DATE TIME RECEIVED | Date and time an email was received. | MM/DD/YYYY HH:MM:SS |
| HASH | The MD5 or SHA Hash value or "de-duplication key" assigned to a document. | 9CE469B8DFAD105 8C3B1E745001158E A |
| PRODVOLID | Production volume name. | ABC_PROD001 |
| TEXTLINK | The relative path to the full extracted OR OCR text of the document. Text files should be named per first Bates number for each record. | \TEXT\ABC000001.t xt |

**CERTFICATE OF SERVICE**

       I certify that on April  , 2019, I filed this Stipulated ESI Protocol with the Clerk of the Court for the United States District Court, Southern District of California by using the Court's CM/ECF system, and also served counsel of record via this Court's CM/ECF system.

DATED: April   , 2019        MAYER BROWN LLP
                            Matthew H. Marmolejo

                        By    _s/Matthew H. Marmolejo_
                                Matthew H. Marmolejo

                          _Attorney for Plaintiffs_
                          E-mail: _mmarmolejo@mayerbrown.com_