# Exhibit H

```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF TENNESSEE
                      NASHVILLE DIVISION

ANGEL ENRIQUE NUNEZ ESCOBAR,   )
et al.,                        )
                               )
     Plaintiffs,               )
                               )   No: 3:11-0994
          v.                   )   Judge Nixon/Bryant
                               )
LEE GAINES, et al.,            )
                               )
     Defendants.               )
```

**MEMORANDUM AND ORDER**

Plaintiffs have filed their motion for a protective order regarding immigration status (Docket Entry No. 164). The "private party defendants" have filed a response in opposition (Docket Entry No. 176), as have defendants Hardin and Kemper (Docket Entry No. 177) and the federal defendants (Docket Entry No. 180). Plaintiffs have filed a reply (Docket Entry No. 187) to which defendants Hardin and Kemper have filed a surreply (Docket Entry No. 190). Finally, plaintiffs have filed a sur-surreply (Docket Entry No. 193).

For the reasons stated below in this memorandum, plaintiffs' motion for protective order is GRANTED in part and DENIED in part.

**Statement of the Case**

Plaintiffs, all but one of whom are Latino, have filed this civil rights action alleging that defendants violated their constitutional rights when a team of Immigration and Customs Enforcement ("ICE"), officers of the Metropolitan Nashville Police

Department ("MNPD"), and certain private security guards conducted what plaintiffs characterize as a "raid" at the Clairmont Apartments in Nashville, Tennessee on October 10, 2010.  Plaintiffs claim that defendants, without warrants, probable cause, or consent of the plaintiffs, wrongfully entered apartments and interrogated and detained plaintiffs in violation of their rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and federal civil rights laws.  Plaintiffs also assert claims against the owners, managers and private security firm of the apartment complex for conspiracy and violation of the Fair Housing Act (42 U.S.C. §§ 3601, et seq.).

Defendants have denied liability and assert that they acted with consent of plaintiffs or under other circumstances that would make their actions lawful.

### Analysis of Motion

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides generally that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense, and that relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Rule 26(c), however, authorizes a court, for good cause, to issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. In ruling on a motion for protective order, courts

typically consider whether injury will result from discovery sought, whether the information is relevant or necessary to the underlying action, and whether the need of the party seeking disclosure outweighs the adverse effect that disclosure might cause to the party seeking protection. <u>Mannington Mills, Inc. v. Armstrong World Industries, Inc.</u>, 206 F.R.D. 525, 528 (D. Del. 2002).

In support of their motion, plaintiffs argue that discovery elicited from plaintiffs and their third-party witnesses[1] related to immigration status is irrelevant, and that any marginal relevance would be far outweighed by the *in terrorem* effect of such production (Docket Entry No. 165 at 9-17). In support of this argument, plaintiffs point out that following the incident giving rise to this action, ICE has instituted removal proceedings against 13 of the plaintiffs based upon alleged violations of immigration law (Docket Entry No. 165 at 4).

In response, defendants collectively argue that (1) information regarding plaintiffs' immigration status obtained by defendants – if obtained legally – may constitute a valid defense to allegations that plaintiffs were unconstitutionally detained, and (2) medical information obtained from third-party medical providers is relevant to plaintiffs' claims of emotional distress

---

[1] To the extent that the Court in this order grants or denies the requested protective order regarding discovery of plaintiffs' immigration status, such ruling shall also apply to discovery of the immigration status of nonparty witnesses.

3

resulting from defendants' actions.

The Sixth Circuit has recognized three categories of law enforcement-citizen encounters: (1) an arrest which requires probable cause pursuant to the Fourth Amendment; (2) an investigatory stop which is a limited, nonintrusive detention and requires reasonable suspicion based upon articulable facts; and (3) consensual encounters where an officer seeks voluntary cooperation of a citizen and require no suspicion at all.  United States v. Dotson, 49 F.3d 227, 230 (6${}^{th}$ Cir. 1995) (citing Florida v. Royer, 460 U.S. 491, 497 (1983).  The constitutional validity of a seizure or arrest depends upon facts that the seizing or arresting officer knew at the time of the seizure or arrest.  Devenpeck v. Alford, 543 U.S. 146, 152 (2004).  Indeed, an unconstitutional seizure or arrest cannot retroactively be made lawful by evidence discovered pursuant to it.  Terry v. Ohio, 392 U.S. 1, 21-22 (1968).

Under these and other pertinent authorities, any information that defendants knew about plaintiffs' immigration status at the time of the encounter at the Clairmont Apartments on October 10, 2010, is or may be relevant to the issues in this case.  This includes information obtained by defendants from plaintiffs or from others before and during the October 10 encounter.  To the extent that plaintiffs seek an order prohibiting discovery of this information, their motion must be DENIED.

Plaintiffs seek a protective order prohibiting discovery of information relating to plaintiffs' and their third-party

4

witnesses' immigration status derived from discovery directed to their employers. Apparently, defendants have sought, or propose to seek, discovery from plaintiffs' employers that would necessarily include information regarding their immigration status. Such information would include tax forms, social security numbers, tax identification numbers, driver's license information and similar data. The undersigned Magistrate Judge finds that, at least at this stage of the proceeding, defendants have failed to demonstrate that such discovery is relevant to the issues presented in this case or reasonably calculated to lead to the discovery of admissible evidence. Rule 26(b)(1), Federal Rules of Civil Procedure. Accordingly, with respect to discovery directed to third-party employers the undersigned that plaintiffs' motion for protective order should be GRANTED.

    Plaintiffs also seek a protective order to prohibit discovery directed to healthcare providers of plaintiffs or their witnesses. As grounds, plaintiffs insist that such medical records typically contain information revealing a patient's immigration status. In response, defendants argue that healthcare information has been made relevant by plaintiffs' claims of emotional distress resulting from defendants' actions at the Clairmont Apartments encounter. Responding to this argument, plaintiffs have stated in their motion papers that the emotional distress claims for which they seek recovery in this action are of the "garden variety." (Docket Entry No. 187 at 5-10). In support of their argument that

5

seeking merely "garden variety" emotional distress claims does not place plaintiffs' actual mental condition in issue, plaintiffs rely upon the case of Butler v. Rue 21, Inc., 2011 WL 1484151 (E.D. Tenn. Apr. 19, 2011). In the Butler case, the court observed that the term "garden variety," when applied to emotional distress injuries, "is, at best, nebulous." (Id. at *2). Nevertheless, the court in Butler found that the plaintiff had not opened the door to broad medical discovery when (1) she had disclaimed any intention of submitting medical proof or expert testimony of her mental condition; (2) she had agreed that she was suffering no ongoing mental injury from the alleged wrong; and (3) she had agreed that she would not offer testimony that she is suffering from specific mental conditions (e.g., depression) or was experiencing physical manifestations of her emotional distress. Butler, 2011 WL 1484151 at *3.

The undersigned is persuaded by the reasoning in the Butler decision. Therefore, with respect to any plaintiff who stipulates that (1) his or her emotional distress claim is limited to those injuries that would reasonably be expected to result from the occurrence in this case; (2) that he or she disclaims any intention of submitting medical proof or expert testimony regarding his or her mental condition; (3) that he or she has agreed that he or she was suffering no ongoing mental injury from the alleged wrong; and (4) he or she has agreed that he or she would not offer

testimony that he or she is suffering from a specific mental condition (e.g., depression) or was experiencing physical manifestations of emotional distress, a protective order is GRANTED, and defendants shall be prohibited from seeking discovery of these plaintiffs' healthcare providers.

To the extent that any plaintiff declines to stipulate to the matters referenced above, for that plaintiff the motion for protective order shall be DENIED and discovery of that plaintiff's healthcare provider permitted.

Summarizing, plaintiffs' motion for protective order is DENIED with respect to information about plaintiffs' immigration status obtained by defendants from plaintiffs or from others before and during the October 10 encounter at Clairmont Apartments. With respect to discovery of plaintiffs' employers, plaintiff's motion for protective order is GRANTED and such discovery is prohibited pending further orders of the Court. With respect to discovery of plaintiff's healthcare providers, plaintiffs' motion for protective order is GRANTED with respect to any plaintiff who enters into the stipulation referenced above in this order, and, for those plaintiffs, such discovery is prohibited pending further orders of the Court. With respect to any plaintiff who declines to enter into such stipulation, discovery of healthcare providers reasonably calculated to lead to the discovery of admissible evidence shall be permitted.

7

Finally, to the extent that information regarding plaintiffs' immigration status is produced during discovery in this action, plaintiffs may designate such information as "Confidential Material" and its use and distribution shall be limited as follows:

1. Confidential Material shall not be used or disclosed for any purpose except for the litigation of the above-captioned case (including any appeals of this case), nor shall Confidential Material ever be used in, or for the purpose of initiating, a removal proceeding against plaintiffs.

2. Confidential Material may not be disclosed to any persons other than:

    a. attorneys of record for ICE Defendants who are employed by the U.S. Attorney's Office for the Middle District of Tennessee; attorneys of record for the plaintiffs; and attorneys of record for other defendants in the above-captioned matter ("Parties' Counsel") provided that disclosure is deemed by disclosing counsel as reasonably necessary for the conduct of this litigation and not for any other purpose or proceeding;

    b. attorneys employed by District Court Litigation Division, Office of the Principal Legal Advisor of the U.S. Immigration and Customs Enforcement, who are involved in the defense of this action to whom such disclosure is deemed by the U.S. Attorney's Office for the Middle

      District of Tennessee as reasonably necessary for the conduct of this litigation, provided that such disclosure is strictly limited to counsel involved in defense of this action and that Confidential Material is not to be disclosed to any attorney or staff of the Department of Homeland Security who is involved in litigating or supervising litigation in the removal cases of named plaintiffs in this action;

c. secretarial, clerical, paralegal or student personnel employed by the Parties' Counsel involved in the defense of this action to whom such disclosure is deemed by disclosing counsel as reasonably necessary for the conduct of this litigation;

d. independent nonemployee expert witnesses or consulting experts retained by the Parties' Counsel in connection with the defense of this action to whom such disclosure is deemed reasonably necessary by counsel solely for the conduct of this litigation, provided that Confidential Material may not be disclosed to expert witnesses or consulting experts involved in the litigation of any removal cases of named plaintiffs in this action;

e. the Court and Court personnel and any court reporters, stenographers, interpreters or translators engaged to record or assist in the recording of testimony and

9

        proceedings at deposition, trial, or other judicial proceeding, or other testimony in this action (including persons operating video recording equipment), while in performance of their official duties;

  f.  each plaintiff only with respect to Confidential Material about himself; and

  g.  other persons, as agreed to by Parties' Counsel in writing or on the record by all parties, to whom counsel seeking agreement in good faith believes it is necessary to disclose such Confidential Material in order to prepare for trial.

3.  Individuals to whom Confidential Material may be disclosed pursuant to paragraph 2(b) or 2(d) shall first sign a copy of this order, which shall be deemed to acknowledge notice and consent to the terms of this order, and consent to the continuing jurisdiction of the Court for the purposes of enforcing and remedying any violations of this order. Each party's counsel shall maintain a copy of the order signed by such individuals, which shall be furnished to the opposing party upon request. Counsel shall take all steps reasonably necessary to prevent the unauthorized disclosure of such Confidential Material.

4. Material designated as Confidential Material shall be marked by designating the material as "Confidential Material" in writing to all parties. In the event that the plaintiffs or defendants inadvertently fail to designate discovery material as "Confidential Material" during production, the producing party may make such a designation subsequently by notifying the parties in writing as soon as practicable. After receipt of such notification, the opposing party will treat that discovery material as "Confidential Material," subject to its right to proceed in accordance with the terms of this order.

5. Deposition testimony shall be designated "Confidential Material," where appropriate, on the record before or immediately following the answer or series of answers that are deemed to include testimony regarding immigration status permitted by this order. All depositions of plaintiffs shall presumptively be treated as Confidential Material and subject to this order during the deposition and for a period of 10 days after a transcript of the deposition is received by counsel for each of the parties. At or before the end of such ten-day period, the deposition and/or any portion thereof including testimony regarding immigration status

11

      permitted by this order may be designated as Confidential Material.

6. When the parties exchange exhibits prior to trial, plaintiffs and defendants shall identify those exhibits that are or include Confidential Material. Confidential Material filed with the Court prior to trial, as well as pleadings which disclose Confidential Material, shall be filed under seal, to the extent permitted by the Court, and only redacted copies of such documents, pleadings, or memoranda may be placed in the public record except as required by the Court.

7. All materials designated as Confidential, including copies, will be destroyed upon final determination of this action, including any appeals.

It is so **ORDERED**.

                    s/ John S. Bryant
                    JOHN S. BRYANT
                    United States Magistrate Judge