1  MAYER BROWN LLP
     Matthew H. Marmolejo (CA Bar No. 242964)
2     *mmarmolejo@mayerbrown.com*
   350 S. Grand Avenue
3  25th Floor
   Los Angeles, CA 90071-1503
4     Ori Lev (DC Bar No. 452565)
      (*pro hac vice*)
5     *olev@mayerbrown.com*
     Stephen M. Medlock (VA Bar No. 78819)
6     (*pro hac vice*)
      *smedlock@mayerbrown.com*
7  1999 K Street, N.W.
   Washington, D.C. 20006
8  Telephone:  +1.202.263.3000
   Facsimile:   +1.202.263.3300
9
   SOUTHERN POVERTY LAW CENTER
10    Melissa Crow (DC Bar No. 453487)
      (*pro hac vice*)
11    *melissa.crow@splcenter.org*
   1666 Connecticut Ave. NW, Suite 100
12 Washington, DC 20009
   Telephone: +1.202.355.4471
13 Facsimile: +1.404.221.5857

14 *Additional counsel listed on next page*
   *Attorneys for Plaintiff Al Otro Lado, Inc.*

15            **UNITED STATES DISTRICT COURT**

16           **SOUTHERN DISTRICT OF CALIFORNIA**

17

18 Al Otro Lado, Inc., *et al.*,            | Case No.:  17-cv-02366-BAS-KSC
                                              | Hon. Karen S. Crawford
19            Plaintiffs,
                                              | [DISCOVERY MATTER]
20    v.
                                              | **JOINT MOTION FOR**
21 Kevin K. McAleenan,<sup>1</sup> *et al.*,  | **DETERMINATION OF**
                                              | **DISCOVERY DISPUTE**
22            Defendants.
                                              | **NO ORAL ARGUMENT UNLESS**
23                                            | **REQUESTED BY THE COURT**

24                                            | [*Declaration of Ori Lev Filed*
25                                            | *Concurrently*]

26

27
   _____

28 <sup>1</sup> Acting Secretary McAleenan is automatically substituted for former Secretary
   Nielsen pursuant to Fed. R. Civ. P. 25(d).

1

2

3  CENTER FOR CONSTITUTIONAL
   RIGHTS
4      Baher Azmy  (NY Bar No. 2860740)
       (*pro hac vice*)
5      *bazmy@ccrjustice.org*
       Ghita Schwarz  (NY Bar No. 3030087)
6      (*pro hac vice*)
       *gschwarz@ccrjustice.org*
7      Angelo Guisado (NY Bar No. 5182688)
       (*pro hac vice*)
8      *aguisado@ccrjustice.org*
   666 Broadway, 7th Floor
9  New York, NY 10012
   Telephone: +1.212.614.6464
10 Facsimile: +1.212.614.6499

11
   SOUTHERN POVERTY LAW CENTER
12     Mary Bauer (VA Bar No. 31388)
       (*pro hac vice*)
13     *mary.bauer@splcenter.org*
   1000 Preston Ave.
14 Charlottesville, VA
       Sarah Rich (GA Bar No. 281985)
15     (*pro hac vice*)
       *sarah.rich@splcenter.org*
16     Rebecca Cassler (MN Bar No. 0398309)
       (*pro hac vice*)
17     *rebecca.cassler@splcenter.org*
   150 E. Ponce de Leon Ave., Suite 340
18 Decatur, GA 30030

19
   AMERICAN IMMIGRATION COUNCIL
20     Karolina Walters (DC Bar No. 1049113)
       (*pro hac vice*)
21     *kwalters@immcouncil.org*
   1331 G St. NW, Suite 200
22 Washington, DC 20005
   Telephone: +1.202.507.7523
23 Facsimile: +1.202.742.5619

24

25

26

27

28

## I.      Plaintiffs' Argument

In February, Plaintiffs delivered two sets of requests for production to the Government in advance of the parties' Fed. R. Civ. P. 26(f) conference.  Since then, the Government has repeatedly sought to delay the deadline for its responses and objections to these requests, going so far as to file a procedurally defective and unsupported ex parte motion for a protective order, which the Government withdrew hours after filing it.  *See* Dkt. Nos. 247-50.  The Government also has signaled that it is not prepared to engage in customary electronic discovery—refusing to even produce responsive emails and attachments as "families" as the law and practice require.  *See* Dkt. No. 251 at 2-8.

The Government's responses and objections to Plaintiffs' First and Second Sets of Request for Production continue this trend.  As explained in more detail below:

- Rather than providing specific and meaningful responses to Plaintiffs' requests, the Government relies on a series of improper boilerplate objections. *See infra* at 2-6.
- Although Plaintiffs have pled a class that includes all land ports of entry on the U.S.-Mexico border, the Government has refused to provide Plaintiffs' with class-wide discovery.  *See infra* at 6-13.
- The Government refuses to provide Plaintiffs with documents that directly relate to the Fed. R. Civ. P. 23(a) factors.  *See infra* at 13-14.
- The Government will not provide Plaintiffs with documents directly relevant to the "irreparable harm" prong of the permanent injunction standard such as documents showing the impact of the Government's turnback policy.  *See infra* at 14-15.
- The Government has stated that it will not produce any documents regarding the intent of government officials because, in the Government's view, this is solely an Administrative Procedures Act ("APA") case.  That is not true.

Plaintiffs have plausibly pled claims for violations of the Immigration and Nationality Act ("INA"), the Fifth Amendment right to due process, and the Alien Tort Statue. Discovery should be at least as broad as Plaintiffs' causes of action. *See infra* at 15-19.

- Relatedly, the Government has refused to produce several categories of documents will show whether the Government's asserted reasons for its turnback policy are a pretext, including (a) communications with anti-immigration lobbying groups (*see infra* at 19-20), (b) reactions to reports from non-governmental organizations ("NGOs") documenting the turnback policy (*see infra* at 20-22), (c) communications with the White House regarding the implementation of the turnback policy (*see infra* at 22-23), and (d) derogatory comments made about noncitizens seeking asylum at the U.S.-Mexico border (*see infra* at 23-25).[2]

As shown below, Plaintiffs' requests are relevant, proportional to the needs of the case, and not unduly burdensome. The Government should be compelled to produce documents in response to Plaintiffs' First and Second Set of Requests for Production.

## A.    The Government's Boilerplate Objections Should Be Struck

The Government improperly asserts multiple boilerplate objections to Plaintiffs' First and Second Sets of Requests for Production. For instance, the Government incorporates by reference 15 general objections into requests 26 through 109. *See* Appx. A at Gen. Objs. 1-15. Likewise, the Government asserts 12 "Objections Which Apply to All Requests for Production" in response to requests 1 through 25. *See* Appx. B at Gen. Objs. 1-12.

---

[2] The Government served its responses and objections to Plaintiffs' First and Second Set of Requests for Production on April 9, 2019. The parties met and conferred via telephone conference on April 30, 2019 and then exchanged correspondence in a further effort to narrow the disputes presented in this motion. In compliance with Chambers Rule V(A) this motion was filed on or within 45 days of the Government serving its responses and objections to Plaintiffs' document requests.

This is improper.  A party responding to requests for production must "state with specificity the grounds for objecting to the request."   Fed. R. Civ. P. 34(b)(2)(B).  Courts have repeatedly held that boilerplate objections are improper and cannot be used as a basis for withholding documents.  *See*, *e.g.*, *Makaeff v. Trump Univ., LLC*, 2013 WL 990918, at *6 (S.D. Cal. 2013) (where "the responding party provides a boilerplate or generalized objection [to discovery] the 'objections are inadequate and tantamount to not making any objection at all.'" (quoting *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999)); *O'Shea v. Am. Solar Solution, Inc.*, 2016 WL 701215, at *2 (S.D. Cal. 2016) (overruling boilerplate objections); *Anderson v. Hansen*, 2012 WL 4049979, at *8 (E.D. Cal. 2012) ("boilerplate objections do not suffice" and must be clarified, explained, and supported).

This Court dealt with precisely this issue in *Springer v. General Atomics Aeronautical Systems*, 2018 WL 409745 (S.D. Cal. 2018).  In *Springer* the defendant served responses to requests for production, interrogatory answers, and responses to requests for admission that were all subject to several general objections.  *Id.* at *1-2.  This Court held that stating that all responses to requests for production are "subject to" or incorporate a set of non-specific, boilerplate objections is insufficient. *Id.at *2*  The Court observed that "[t]his type of response to a discovery request is confusing and misleading and 'leaves the requesting party guessing and wondering' as to whether the responding party actually provided a complete and accurate response." *Id.*.   The Court struck the defendant's "non-specific, boilerplate objections . . . for failure to comply with the specificity requirements in the Federal Rules" and ordered the defendant to "[s]erve amended/supplemental responses to . . . written discovery . . . that fully comply with the Federal Rules and exclude 'subject to' and other non-specific, boilerplate objections that are unexplained and unsupported." *Id.* at *5.  The Court also warned that, if the defendant "continue[d]

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO COMPEL

to include general, boilerplate, unsupported and/or non-specific objections in it supplemental responses, the Court will overrule the objections and consider imposing monetary sanctions." *Id.* at \*2.

The same is true here.  In response to Plaintiffs' First and Second Sets of Requests for Production, the Government asserts 11 general objections (which the Government characterizes as "Objections Which Apply to All Requests for Production"), 10 objections to definitions, and 4 objections to instructions.  *See* Appx. A at Gen. Objs. 1-11, Objs. of Defs. at 1-10, & Objs. to Instructions 1-4; Appx. B at Gen. Objs. 1-11, Objs. of Defs. at 1-10, & Objs. to Instructions 1-4.  These objections, which are not tethered to a single specific request for production, run approximately 15 pages. *See generally* Appx. A at Gen. Objs. 1-11, Objs. of Defs. at 1-10, & Objs. to Instructions 1-4; Appx. B at Gen. Objs. 1-11, Objs. of Defs. at 1-10, & Objs. to Instructions 1-4.  Nearly all of the Government's responses to Plaintiffs' Second Set of Requests for Production begin with the phases "[s]ubject to, and without waiving, their objections Defendants' respond as follows," "[i]n light of Defendants' objections," or "[i]n accordance with Defendants' objections."  *See* Appx. A at Resps. to RFPs. 1-23, 25; Appx. B at Resps. to RFPs. 26-34, 38-47, 53, 55-57, 68, 70-72, 75-77, 79-80, 83-84, 86, 88-89, 91-92, 94-96, 107.  These statements that the Government will respond to requests for production "subject to" or "in accordance with" its general objections, objections to definitions, and objections to instructions provide Plaintiffs with no guidance as to what categories of information the Government intends to withhold from its document production.  This violates the rule that the responding party must "state with specificity the grounds for objecting to the request" and "state whether any responsive materials are being withheld on the basis of that objection."  Fed. R. Civ. P. 34(b)-(c).  This problem "run[s] deeper than . . . form or phrasing."  *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 185 (N.D. Iowa 2017).  The Government's repeated use

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO COMPEL

1   of boilerplate objections "obstructs the discovery process, violates numerous rules

2   of civil procedure, and imposes costs . . . that frustrate the timely and just resolution

3   of cases." *Id.*

4        In response to the Government's service of these boilerplate objections

5   Plaintiffs' "informally request[ed] that opposing counsel withdraw them . . . citing

6   the significant body of cases that condemn the 'boilerplate' discovery practice."

7   *Liguria Foods*, 320 F.R.D. at 190.   Although the Government served amended

8   responded to Plaintiffs' First and Second Set of Requests for Production, it has

9   refused to withdraw these boilerplate objections.  *See* Lev. Decl. ¶ 4.  Under these

10  circumstances, the Government's boilerplate objections should be struck.   *See*

11  *Liguria Foods*, 320 F.R.D. at 190-91 ("If opposing counsel fail to withdraw their

12  'boilerplate' objections, the lawyers should go to the court and seek relief in the form

13  of significant sanctions—because the offending lawyers have been warned, given

14  safe harbor to reform and conform their 'boilerplate' discovery practices to the law,

15  and failed to do so.").

16       Below, the Government insists that they have not asserted boilerplate

17  objections because some of its responses occasionally reference the Government's

18  general objections.  This is not the case.  The Government cannot escape the plain

19  language of its objections to Plaintiffs' requests for production.  The Government's

20  general objections state clearly that they "apply to all request for production."  *See*

21  Appx. A at Gen. Objs. 1-11; Appx. B at Gen. Objs. 1-11.  The Government then

22  attempts to incorporate these general objections into nearly all of its responses by

23  stating that it will produce documents "subject to" or "in accordance with" those

24  general objections.  *See* Appx. A at Resps. to RFPs. 1-23, 25; Appx. B at Resps. to

25  RFPs. 26-34, 38-47, 53, 55-57, 68, 70-72, 75-77, 79-80, 83-84, 86, 88-89, 91-92,

26  94-96, 107.  The Government cannot rewrite this language merely by pointing to

27

28

1    limited instances where it references its boilerplate objections.  Consequently, the

2    Government's boilerplate objections and they should be struck.

3         **B.     The Government Should Be Compelled to Produce Class-Wide**

4              **Discovery**

5         The Government's attempt to withhold class-wide discovery is improper.  In

6    its responses to Plaintiffs' First and Second Sets of Requests for Production, the

7    Government limits its responses to 4 of the approximately 45 ports of entry on the

8    U.S.-Mexico border.  *See* Appx. A at Gen. Obj. 6, Obj. to Def. 2, Objs. to RFPs 1-

9    11, 13-14, 16, 18-23, 25; Appx. B at Gen. Objs. 5-6, Obj. to Defs. 2-3, Objs. to RFPs

10   42, 44, 46-47, 53-54, 72, 75-77, 82-84, 91-92, 94-95, 107.  The Government attempts

11   to limit its responses to documents related to the four ports of entry where the named

12   plaintiffs attempted to cross the U.S.-Mexico border—San Ysidro, Otay Mesa,

13   Hidalgo, and Laredo.  However, Plaintiffs Second Amended Complaint is not

14   limited to these four ports of entry.  Plaintiffs plead a class that encompasses all of

15   the ports of entry that are capable of processing noncitizens seeking asylum in the

16   United States.  *See* Dkt. 189 at ¶ 236.  This class includes "[a]ll noncitizens who

17   seek or will seek to access the U.S. asylum process by presenting themselves at a

18   POE along the U.S.-Mexico border and are denied access to the U.S. asylum process

19   by or at the instruction of CBP officials."  *Id.*  Despite having raised various

20   pleading-stage arguments, the Government has not moved to strike these class

21   allegations or suggested that they are not plausible.  *See generally* Dkt. 192-1.  As a

22   result, Plaintiffs should be permitted to take discovery that is as broad as the class

23   pled in its Second Amended Complaint.

24        ***Class-wide Discovery Is Relevant.***    There is no doubt that class-wide

25   discovery is relevant to this class action.  The Federal Rules of Civil Procedure

26   authorize parties to obtain discovery of "any nonprivileged matter that is relevant to

27   any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  "Information within the

28

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO COMPEL

scope of discovery need not be admissible in evidence to be discoverable." *Id.* "The party resisting discovery generally bears the burden to show that the discovery requested is irrelevant to the issues in the case or is not proportional to the needs of the case. If the resisting party meets its burden, then the burden shifts to the moving party to show the information is relevant and necessary." *Kellgren v. Petco Ani. Supplies, Inc.*, 2016 WL 4097521, at *2 (S.D. Cal. 2016); *see also Henderson v. Holiday CVS, L.L.C.*, 269 F.R.D. 682, 686 (S.D. Fla. 2010) ("The party resisting discovery has a heavy burden of showing why the requested discovery should not be permitted.").

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." *Old Chief v. United States*, 519 U.S. 172, 178 (1997). Therefore, "[t]he question of relevancy should be construed liberally and with common sense and discovery should be allowed unless the information sought has no conceivable bearing on the case." *Solo v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (citation omitted); *see also Ghorbain v. Guardian Life Ins. Co. of Am.*, 2016 U.S. Dist. LEXIS 116132, at *3 (W.D. Wash. 2016) ("The court should and ordinarily does interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation.") (citation omitted).

In this case, class-wide discovery is necessary to determine several factors relevant to class certification. For example, whehter the class representatives' treatment at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry is typical of the Government's treatment of other noncitizens seeking asylum at other ports of entry. By taking the position that Plaintiffs are not entitled to discovery as broad as their class definition, the Government is attempting to deny Plaintiffs the very discovery that would support a motion for class certification. For instance, in its interrogatory answers the Government asserts that "[e]ach port of entry along the

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO COMPEL

southern border has a unique operating environment and unique resource constraints." Ex. 1 at Interrog. Resp. 1.  The Government also claims that directors of field operations at various ports of entry "have discretion to implement procedures to manage the flow of travelers at the land border." *Id.*  Plaintiffs are entitled to class-wide discovery to test these self-serving assertions regarding typicality and commonality.

In response, the Government argues that class actions are the exception, not the rule and that Plaintiffs' claims are "limited to policies issued and actions taken by the headquarters portions of [U.S. Customs and Border Protection's] Office of Field Operations and the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry, and any Requests that go beyond the scope of the specific claims and allegations at issue are legally improper and thus irrelevant." *See* Appx. A at Gen. Obj. 6.  But this argument is based on a deliberate misreading of Plaintiffs' Second Amended Complaint.  As noted above, Plaintiffs seek injunctive relief for a class of all noncitizens that were denied the ability to seek asylum at a port of entry on the U.S.-Mexico border due to the Government's turnback policy.  *See* Dkt. 189 at ¶ 236. The Government cannot simply ignore these allegations.  Accordingly, Plaintiffs requests for class-wide discovery—i.e., discovery from all ports of entry on the U.S.-Mexico border—are relevant and should be produced.

***Producing Class-Wide Discovery Would Not Be Unduly Burdensome.***  The Government claims that producing documents from more than four ports of entry on the U.S.-Mexico border would be unduly burdensome. Appx. A at Gen. Obj. 6.  The Government reasons that discovery from four ports of entry—San Ysidro, Otay Mesa, Hidalgo, and Laredo—plus discovery from CBP's Office of Field Operations should suffice to show whether the Government's turnback policy exists.  *Id.* Therefore, the Government claims that "[a]ny discovery from other ports of entry

along the U.S.-Mexico border would be either irrelevant or duplicative and unduly burdensome." *Id.*  This is wrong.

"The party claiming undue burden 'must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence.'" *Acosta v. Wellfleet Commc'ns, LLC*, 2018 WL 664779, at *8 (D. Nev. 2018) (quoting *Jackson v. Montgomery Ward & Co., Inc.*, 173 F.R.D. 524, 528-29 (D. Nev. 1997)). "Conclusory or speculative statements of harm, inconvenience, or expense are plainly insufficient." *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 2016 WL 4071988, at *4 (D. Nev. 2016).  "The fact that production of documents would be burdensome and expensive and would hamper a party's business operation is not a reason for refusing to order production of relevant documents. . . . The standard is whether the burden and expense is 'undue' and whether the hardship is unreasonable in light of the benefits to be secured from the discovery." *Acosta,* 2018 WL 664779, at *8.

Here, the Government never asserts any specific facts substantiating its undue burden argument.  Nor can it.  The parties' ESI Protocol imposes reasonable limitations on discovery.  It requires the parties to exchange information regarding proposed custodians and non-custodial sources of documents.  Then, the parties negotiate amongst themselves regarding custodians, non-custodial sources, and search terms.  These negotiations are ongoing.  The Government has not run a single set of search terms across any of its custodians or non-custodial sources.  The Government cannot say whether class-wide discovery will lead to a burdensome document review and production.  Nor can the Government cite any specific facts showing that class-wide discovery, as a rule, would be unduly burdensome or duplicative.  Therefore, the Government's undue burden objections are speculative and premature.

***Class-Wide Discovery Is Proportional in a Class Action.***  The Government

argues that producing class-wide discovery is "not proportional to the needs of the case." Appx. A at Gen. Obj. 6.  This is incorrect.  Parties are entitled to discovery that is relevant, non-privileged, and "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b).

The matters at stake in this litigation are highly important.  The INA "deals with one of the oldest and most important themes in our Nation's history: [w]elcoming homeless refugees to our shores," and it "gives statutory meaning to our national commitment to human rights and humanitarian concerns."  125 Cong. Rec. 23231-32 (1979).  For noncitizens seeking to access the U.S. asylum process, "asylum confers additional important benefits . . ., such as the ability to proceed through the process with immediate family members . . . and a path to citizenship." *E. Bay Sanctuary Covenant v. Trump*, 349 F. Supp. 3d 838, 864-65 (N.D. Cal. 2018). Plaintiffs allege that the Government has adopted an illegal turnback policy that undermines the important statutory right to access the U.S. asylum process.

The parties' relative access to information also favors class-wide discovery. In order to certify a class, Plaintiffs must show, amongst other things, that "there are questions of law or fact common to the class" and "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(2)-(3).  In order to determine whether the elements of commonality and typicality are satisfied, Plaintiffs need class-wide discovery to determine whether the treatment of the representative plaintiffs at the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry are typical of the claims or defenses of absent class members who sought to access the asylum process at other ports of entry along the

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO COMPEL

U.S.-Mexico border. Moreover, Plaintiffs need to access class-wide evidence concerning whether and how the turnback policy was implemented to determine whether there are questions of law and fact common to the class. Information regarding whether and how the turnback policy was implemented is uniquely within the control of the Government; Plaintiffs do not currently have access to internal Government communications and documents concerning the implementation of the turnback policy at ports of entry along the U.S.-Mexico border.

The parties' resources also favor class-wide discovery. The United States government certainly has more resources than a nonprofit, several refugees, and their pro bono counsel.

Lastly, there is no evidence that the burden or expense of class-wide discovery outweighs its likely benefit. As noted above, the parties are still negotiating regarding custodians, non-custodial sources, and search terms. It is premature for the Government to weigh the benefits of class-wide discovery against its supposed burden and expense.

***The Government Cannot Condition Producing Class-Wide Discovery on Class Certification.*** The Government objects to providing class-wide discovery because no class has been certified. *See* Appx. A at Gen. Obj. 6. This is flawed for two reasons.

*First*, the Government's position is essentially that discovery should be bifurcated—the Government will only provide discovery about four ports of entry now, and it may provide further discovery about other ports of entry after class certification. But the Court has already ruled that discovery should not be "bifurcated or limited" and that the parties should "prioritize discovery necessary for a motion for class certification." Dkt. 196 at 2. By refusing to provide discovery relevant to the class, as opposed to merely the named class representatives, the Government deprives Plaintiffs of the ability to prove class certification is proper.

*Second*, the Government's position that class-wide discovery can only be provided after class certification ignores the fact that "there is no clear-cut division between discovery that relates to class certification and discovery that relates to the merits." *Munoz v. PHH Corp.*, 2016 WL 10077139, at *4 (E.D. Cal. 2016); *see also Ahmed v. HSBC Bank USA, N.A.*, 2018 WL 501413, at *3 (C.D. Cal. 2018) ("[T]he distinction between class certification and merits discovery is murky at best and impossible to determine at worst."). Allowing the Government to draw arbitrary lines between class and merits discovery only invites error: "Simply stated, if district courts as neutral arbiters of the law find the distinction between merits and class issues to be murky at best, and impossible to discern at worst, the Court cannot imagine how parties with an incentive to hold back damaging evidence, can properly draw the line between these categories of evidence." *Lakeland Reg'l Med. Ctr., Inc. v. Astellas US, LLC*, 2011 WL 486123, at *2 (M.D. Fla. 2011).

In this case, discovery concerning both class certification and merits issues will naturally overlap to some extent.  For instance, discovery into merits issues also will address questions common to the class such as (1) the formulation of the turnback policy, (2) when and how the turnback policy was implemented at each port of entry along the U.S.-Mexico border, (3) whether the Government has a legal justification for that turnback policy, and (4) whether the Government's conduct at ports of entry along the U.S.-Mexico border supports or undermines that asserted legal justification.  Therefore, Plaintiffs will need some discovery that touches on merits issues in order to prepare for class certification.  As is relevant to this motion, Plaintiffs need to know the names and titles of the individuals with responsibilities for making port-of-entry-level decisions regarding the implementation and timing of the turnback policy. Accordingly, the Government should produce class-wide discovery in response to Plaintiffs' requests for production.

* * *

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO COMPEL

1    Since class-wide discovery is necessary to address commonality, typicality,
2    and other factors necessary for class certification and the merits discovery and class
3    discovery are naturally entwined, the Government should be compelled to produce
4    class-wide discovery.

5    **C.    The Government Should Be Compelled to Produce Documents**
6    **Concerning the Rule 23(a) Factors**

7    In addition to failing to provide Plaintiffs with class-wide discovery, the
8    Government will not even produce documents regarding the Rule 23 factors for class
9    certification.  In order to certify a class, Plaintiffs must show, amongst other things,
10   that "there are questions of law or fact common to the class" and "the claims or
11   defenses of the representative parties are typical of the claims or defenses of the
12   class." Fed. R. Civ. P. 23(a)(2)-(3). To address these elements are satisfied, Plaintiffs
13   requested documents directly related to these factors. *See* Appx. B at Resps. to RFPs
14   96-100. In response, the Government asserts that it has no documents responsive to
15   these requests. *See id.*

16   However, just days later the Government served interrogatory answers
17   undermining its objections.  In its interrogatory answers, the Government asserts that
18   each port of entry faces different and "unique" challenges with respect to resource
19   constraints and noncitizens seeking to access the U.S. asylum process.  *See* Ex. 1 at
20   Interrog. Resp. 1.  The Government's interrogatory answer directly touches on the
21   commonality and typicality tests for class certification.  The Government would not
22   have signed and verified these interrogatories if it did not believe that there was a
23   factual basis for those statements.  The Government should produce the documents
24   that form the factual basis for those statements and any other documents relevant to
25   the class certification factors.  *See, e.g.*, *Kimble v. Specialized Loan Servicing, LLC*,
26   2018 WL 1693197, at *3-4 (S.D. Cal. 2018) (granting Plaintiffs' motion to compel
27   documents necessary to show the elements of Rule 23); *A.A. v. County of Riverside*,

28

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO COMPEL

13

2016 WL 10576640, at *5-7 (C.D. Cal. 2016) (ordering production of documents relevant to determining commonality or, after reasonable inquiry, requiring defendant to provide a supplement response certifying that no responsive documents exist).

**D.   The Government Should Produce Documents Regarding the Impact of the Turnback Policy**

A plaintiff seeking a permanent injunction must show, amongst other things "that it has suffered an irreparable injury." *Cottonwood Envt'l Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1088 (9th Cir. 2015). To show that they have suffered irreparable injury, Plaintiffs have requested documents with information on individuals whom CBP has refused to inspect or process at ports of entry, including documents addressing any harm to individuals' health or wellbeing as a consequence of the efforts to limit the number of asylum applicants as well as statistics on the number of noncitizens CBP has refused to inspect or process. *See* Appx. B at RFPs. 73 & 78.

In response to these requests, the Government asserts argues the documents are not relevant and asserts its view that it does not refuse to inspect or process individuals at the ports of entry. *See* Appx. B at Resps. to RFPs. 73 & 78. None of these objections have any merit. *First*, the negative consequences of the turnback policy are plainly relevant to Plaintiffs' claim that they have suffered irreparable harm. *Second*, the Government's claim that it does not refuse to inspect or process individuals is not a valid objection. Because the question of whether the Government refuses to process individuals goes to the merits of Plaintiffs' claims, the Government cannot limit the production of relevant documents merely because it contests Plaintiffs' claims. *See Doherty v. Comenity Capital Bank*, 2017 WL 1885677, at *5 (S.D. Cal. 2017) (refusing to adopt defendant's construction of a definition at issue in the case for the purposes of discovery as it "is a merits issue.").

JOINT MOTION REGARDING PLAINTIFFS' MOTION TO COMPEL

1    Accordingly, the Government should be compelled to produce documents

2    responsive the Requests 73 and 78.

3            **E.    The Government's APA Objections Are Meritless**

4            The Government generally objections to Plaintiffs' requests as "facially

5    improper in this [APA] case." *See* Appx. A Gen. Obj. 1; Appx. B Gen. Obj. 1.  In

6    the Government's view, "Plaintiffs' claims should be decided on the administrative

7    record without discovery."   Appx. A Gen. Obj. 1; Appx. B Gen. Obj. 1. The

8    Government argues that it asserts this objection for purposes of preserving it pending

9    a ruling on its motion to dismiss, but goes on to describe how this objection "serves

10   as a limiting principle on the parameters of Defendants' search for documents."

11   Appx. A Gen. Obj. 1; Appx. B Gen. Obj. 1.  The Government cannot pretend this is

12   simply a preservation objection while maintaining it will not search for these types

13   of documents.

14           ***Plaintiffs have not solely pleaded APA claims.***   Plaintiffs also assert causes

15   of action for declaratory and injunctive relief for violations of the Immigration and

16   Nationality Act ("INA"), violations of Plaintiffs' federal due process rights under

17   the Fifth Amendment, and declaratory and injunctive relief under the Alien Tort

18   Statute for violation of the *non-refoulement* doctrine.  *See* Second Am. Compl. ¶¶

19   244-55, 283-93, 294-303.  Yet in its responses to Plaintiffs' First and Second Sets of

20   Requests for Production, the Government pretends that these causes of action either

21   do not exist or have been dismissed already.  This is not a proper objection.  Rule

22   26(b)(1) does not give a party "the unilateral ability to dictate the scope of discovery

23   based on their own view of the parties' respective theories of the case." *Sentis Grp.,*

24   *Inc. v. Shell Oil Co.*, 763 F.3d 919, 925 (8th Cir. 2014); *see also McDonald v. Hardy*,

25   821 F.3d 882, 890 (7th Cir. 2016) ("Litigants, however, cannot ignore legitimate

26   discovery requests based on a unilateral belief that flouting the rules of procedure

27   will not harm their opponents").  That is precisely what the Government is trying to

28

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO COMPEL

do here—impose its own narrow construction of the claims, as well as selectively predict their survival on Defendants' motion to dismiss. "[A] party cannot refuse to produce a requested document or information because it is relevant to a claim or defense on which the producing party believes it will prevail." *Heller v. City of Dallas*, 303 F.R.D. 466, 489 (N.D. Tex. 2014). Here, the Government's subjective construction of the claims at issue, which ignores several of Plaintiffs' causes of action, and its belief that it will ultimately prevail on some of Plaintiffs' claims, should have no bearing on the scope of discovery.

*Even if this case were limited to APA claims, Plaintiffs are entitled to discovery beyond the administrative record.* Courts have repeatedly allowed plaintiffs to take discovery beyond the "administrative record" when the plaintiff asserts both an APA claim and a constitutional claim, such as Plaintiffs' Fifth Amendment claim here. *See, e.g.*, *Porter v. Califano*, 592 F.2d 770, 780-81 (5th Cir. 1979); *Bolton v. Pritzker*, 2016 WL 4555467, at *4 (W.D. Wash. 2016); *Grill v. Quinn*, 2012 WL 174873, at *2 (E.D. Cal. 2012); *Jordan v. Wiley*, 2009 WL 980313, at *2 (D. Colo. 2009). Courts do so because a constitutional claim "is reviewed *independent* of the APA" and accordingly, the court is entitled to look beyond the administrative record. *See, e.g., Porter*, 592 at 780-81.

The Government's objections also ignore the substance of Plaintiffs' APA claims. Where, as is the case here, a plaintiff brings an APA action to compel agency action that has been unlawfully withheld or unreasonably delayed, *see* 5 U.S.C. § 706(1), "*review is not limited to the record* as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record." *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000) (emphasis added). Thus, "in APA failure to act cases review is not limited to the administrative record." *Yurok Tribe v. U.S. Bureau of Reclamation*, 231 F. Supp. 3d 450, 469 (N.D. Cal. 2017).

***The Government's Intent Is Relevant.*** The Government argues that because intent is not an element of Plaintiffs' APA claims, the motivation of agency decision-makers is immaterial as a matter of law and not properly discoverable.  Appx. B at Gen. Obj. 2.  (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977)).  As a result, the Government states that it "will not search for, produce, or log any documents in response to Plaintiffs' requests" that concern Defendants' intent or motivations, and that this objection "serves as a limiting principle on the parameters of Defendants' search for responsive documents." *Id.*

This argument fails for three reasons.  *First*, this is not solely an APA case. *See supra* at 15-16.  *Second*, the Government's reliance on *Arlington Heights* and similar cases is misplaced.  The Government here seems to be generally and preemptively asserting a blanket privilege objection in the guise of a relevance objection.  In *Arlington Heights*, a non-profit real estate developer and several individuals claimed that a municipal zoning law and denial by town officials of a rezoning request to permit construction of a low-cost housing project were racially discriminatory in violation of the Fourteenth Amendment, the federal Fair Housing Act, and several other federal laws. 429 U.S. at 254.  Contrary to the Government's position, when discussing the type of evidence needed by plaintiffs to prove discrimination, the Court stated that legislative and administrative history might be highly relevant, as would be the sequence of events leading up to the challenged decision, minutes of meetings and official reports, and substantive departures from established procedures.  *Id.* at 266-68.  In discussing this evidence, the Court also recognized that in "some extraordinary instances the [town officials] might be called to the stand to testify concerning the purpose of the official [zoning] action." *Id.* at 268.  In this case, the documents that Plaintiffs seek are precisely the evidence that *Arlington Heights* suggests is permissible and not extraordinary.

To the extent that Plaintiffs' Requests For Production may be interpreted as seeking legislative or executive motivation, courts are "not inclined to hold that a judicially crafted evidentiary privilege based on federal common law can, with unflinching and absolute effect, trump[s] the need for direct evidence that is highly relevant to the adjudication of public rights guaranteed by federal statutory law and the Constitution." *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 337 (E.D. Va. 2015).[3]

*Third*, the Government's argument that intent is not relevant to this case misses the mark. In its interrogatory responses, the Government attempts to justify its turnback policy as a rational reaction to increasing number of noncitizens seeking asylum and the limited resources at ports of entry to process those noncitizens. *See* Ex. 1 at Interrog. Resp. 1. The Government appears to be arguing that—despite its duty to comply with the INA, the Fifth Amendment, and the international legal principal of *non-refoulement*—the hardships that the Government would face in complying with an injunction prohibit this Court from entering a permanent injunction. *See Cottonwood Envt'l Law Ctr.*, 789 F.3d at 1088. Plaintiffs seek to test whether the Government's likely asserted hardship is a pretext—i.e., whether the Government's claims of limited capacity and limited resources are actually a cover for a Government-created "crisis" that was caused by officials seeking to limit or end the practice of noncitizens seeking asylum at the U.S.-Mexico border.

Accordingly, the Court should strike the Government's general objections based on the APA. *See* Appx. A Gen. Obj. 1; Appx. B Gen. Obj. 1.

---

[3] For that reason, *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 156 F.3d 1279, 1279 (D.C. Cir. 1998) is equally inapplicable. There, the Court clarified an earlier ruling regarding the availability of the deliberative process privilege in an APA case in which the cause of action was directed at the agency's subjective motivation. Here, the Government has not yet asserted privilege over any particular material, but is making broad and premature privilege objections (over material for which it has said it will not search) in the guise of relevance objections. This is improper under Rule 26 and, as discussed above, simply incorrect since the information Plaintiffs seek is relevant.

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO COMPEL

**F.   The Government Should Produce Communications With Lobbying Groups Regarding the Turnback Policy**

Several of the Government's refusals to produce documents flow from the same misunderstanding of the relevance of intent and pretext.  The Government refuses to produce communications between the Government's document custodians and "any labor union representing CBP or DHS employees," or the Federation for American Immigration Reform "relat[ing] to limiting, capping, or metering the number of [individuals] that are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum."  *See* Appx. B at RFPs. 58-63.  But these external communications regarding the turnback policy may reveal that the Government's asserted hardships are really just a pretext for a desire to undermine the protections that the INA affords to noncitizens seeking asylum at a port of entry.

The Government's objections to Requests 58-63 have no merit.  *First*, the Government argues that this information is not relevant because it does not "bear on the issues in this case," which it views as limited to Plaintiffs' APA claim.  *See* Appx. B at Resps. to RFPs 58-63.  As discussed above, this is a self-servingly narrow view of the claims and defenses at issue in the case.  *Supra* at 15-16.  Rule 26(b)(1) does not give a party "the unilateral ability to dictate the scope of discovery based on their own view of the parties' respective theories of the case."  *Sentis Grp., Inc.*, 763 F.3d at 925.

*Next*, the Government argues that these Requests are not proportional to the needs of the case and are overbroad and unduly burdensome because "a complete response would require Defendants to collect and search the documents of each of the named Defendants [and their] agents, representatives, employees, attorneys and investigators," which the Government contends amounts to roughly 329,000 employees.  *See* Appx. B at Resps. to RFPs 58-63.  The Government further cites case law from this Court for the proposition that a discovery request that obligates a

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO COMPEL

party to "canvas every employee who might have had a conversation" with a target would be "onerous and over burdensome." *Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. 2018). But that argument ignores the reality of the parties' discussions thus far. Plaintiffs do not expect, and have not requested that, the Government to "canvas" every one of the 329,000 employees over which the named Defendants have authority. The parties have extensively negotiated an ESI Order that governs the search for, collection, and production of documents. Consistent with that Order, the parties are currently negotiating reasonable limitations on custodians, non-custodial sources, and search terms.

Accordingly, the Government should produce communications with lobbying groups regarding the turnback policy.

## G.   The Government's Reactions to This Lawsuit and NGO Reports Should Be Produced

The Government has also refused to produce non-privileged documents or communications containing (1) reactions by relevant officials to the filing of this lawsuit (Appx. B at RFP No. 35) and (2) reactions by relevant officials of news articles and NGO reports related to the metering policies alleged in the Complaint (*id.* at RFP 37). The Government contends that the requested documents "are not relevant to any party's claims or defenses because they do not bear on" what the Government describes as "the issues in this case." Appx. B at RFP Resps. 35 & 37.

This objection is wrong in two ways. *First*, the RFPs are targeted at documents that bear directly on these key issues in the case identified by the Government. RFP No. 35 seeks Defendants' internal reactions to Plaintiffs' filing of this lawsuit, including—critically—whether the allegations about the turnback policy are true and accurate. The requested documents under RFP No. 35 will also encompass communications between Government officials expressing relief that the Complaint omitted certain key facts, deliberations about whether the Government should issue

a public response to the litigation, or internal concerns that the Government's unannounced turnback policy has been publicly exposed. There is little doubt that the Government's candid and contemporaneous reactions to this lawsuit will be highly relevant to confirming whether the claims in the suit are meritorious.

The documents sought under RFP No. 37 are similarly relevant and should be produced. RFP No. 37 requests documents and communications containing the Government's "reactions to, comments on, or criticism of any news media accounts or reports of non-governmental organizations related to any formal or informal policy, practice, or effort to meter or limit the number of noncitizens who can apply for asylum at a port of entry on the U.S.-Mexico border." This public criticism of the Government includes reporting on the number of asylum seekers that have been turned away by CBP (*see* Dkt. 189 ¶ 49 n.39),  dangerous conditions facing asylum seekers in Mexico (*see* Dkt. 189 ¶ 46 n.28), and the Government's acknowledgment that it is turning away asylum applicants (*see* Dkt. 189 ¶ 68). The Government's internal reactions to this public criticism will, amongst other things, show whether the Government believes these criticisms to be meritorious and may reveal whether the Government's asserted capacity defense is a pretext for undermining the U.S. asylum process.

*Second,* the Government's description of the relevant issues in the case is artificially narrow and ignores entirely the issue of *why* the Government implemented the turnback policy. The Government argues in its general objections that any information "relating to any DHS or CBP employee's subjective intentions or motivations . . . is facially improper" because "the actual subjective motivation of agency decisionmakers is immaterial as a matter of law" in an APA review. Appx. B at Resps. to RFPs 35 & 37 (quoting *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 156 F.3d 1279, 1279 (D.C. Cir. 1998). But the Government omitted the second half of the quotation from *In re Subpoena*:

"[T]he actual subjective motivation of agency decisionmakers is immaterial as a matter of law—*unless there is a showing of bad faith or improper behavior*." 156 F.3d at 1279 (emphasis added). There is no dispute that Plaintiffs have alleged bad faith and improper behavior by the Government. *See* Dkt. 189 ¶2 ("CBP has engaged in an unlawful, widespread pattern and practice of denying asylum seekers access to the asylum process . . . through a variety of illegal tactics . . . include[ing] lying; using threats, intimidation and coercion; employing verbal abuse and applying physical force."). Accordingly, these Requests are also relevant to uncovering internal communications and discussions about why the turnback policy was implemented and whether the Government's proffered reasons for the policy are pretextual. *See supra* at 16-18.

Finally, these requests are narrow in scope and present a minimal burden to the Government. By its nature, RFP 35 is limited in time to *immediately after* the lawsuit was filed and narrowly focused on non-privileged communications discussing or analyzing the lawsuit and the allegations in the Complaint. Similarly, RFP 37 is focused on responses to and communications related to articles concerning the turnback policy. There is nothing in the Government's objections to substantiate its argument that these requests pose an undue burden.

## H. Statements by the White House and The Government's Reactions to Them Should Be Produced

The Government has refused to produce documents (1) relating to statements released by the White House regarding noncitizens or (2) containing the reactions of relevant officials to these statements because it believes that those documents are not relevant. *See* Appx. A at RFP. 24; Appx. B at RFP 36.

Not so. The Government's description of the relevant issues in the case fails to account for the issue of the Government's reasons for implementing the turnback policy considering that Plaintiffs' have alleged bad faith and improper behavior. *See*

*supra* at 16-18.   The President and White House officials have made numerous statements about noncitizens and the asylum process that speak to the reasons for the turnback policy.[4]   The reactions of officials to these statements are also relevant as these documents would encompass, for example, internal discussions about whether these statements accurately reflect the motivations for the policy or whether the officials decided to take action in response to these statements. Such documents are highly relevant to determining whether the Government's asserted reasons for the turnback policy are pretextual or not.

## I.   Derogatory Comments Regarding Asylum Seekers Should be Produced

The Government has refused to search for and produce any derogatory comments or data regarding asylum seekers.  *See* Appx. B at Resps. to RFPs 64-65, 67, 69.  The Government argues that derogatory comments regarding asylum seekers are not relevant to the claims or defenses at issue in the case.  *Id.* at Resps. to RFPs 64-65, 69.  The Government's argument that the use of derogatory language is not relevant is rooted in its position that this is solely an APA case and that subjective motivation of lawmakers, or intent, is "immaterial as a matter of law."  *See, e.g.*, Appx. B at Resps. to RFP 69.  The problem with this argument, as discussed, is that this is not solely an APA case; even if this were an APA case, discovery is not as circumscribed as the Government contends; and intent is highly relevant to the claims and defenses at issue.  *See supra* at 16-18.

If the Government's document custodians were exchanging derogatory comments about asylum seekers in concert with rolling out asylum policies, or in concert with training CBP officials on execution of asylum policies, that is highly

---

[4] *See, e.g.*, Donald Trump (@realDonaldTrump), Twitter (Oct. 8, 2017) ("When people come into our Country illegally, we must IMMEDIATELY escort them back out without going through years of legal maneuvering."); Donald Trump (@realDonaldTrump), Twitter (July 5, 2018) ("When people, with or without children, enter our Country, they must be told to leave without our Country being forced to endure a long and costly trial. Tell the people, 'OUT,' and the must leave.").

relevant to whether "CBP officials engaged in unlawful tactics" in implementing the turnback policy "with the knowledge, consent, direction, and/or acquiescence of Defendants" in violation of the INA (Dkt. 189 ¶¶ 248-49) and whether CBP officials, under Defendants' direction or control or with their knowledge, "engaged in an unlawful widespread pattern or practice of denying and unreasonably delaying asylum seekers' access to the asylum process" in violation of the APA (*id.* ¶ 258).

Next, striking a familiar refrain, the Government argues that these Requests are not proportional to the needs of the case and are overbroad and unduly burdensome because the Government believes that Plaintiffs are seeking records from all 329,000 DHS employees. *See* Appx. B at Resps. to RFPs 58-63.  This is untrue.  *See supra* at 19-20.

The Government has further refused to search for and produce documents sufficient to show the crime rates amongst various groups of noncitizens who are seeking asylum in the United States, paroled into the United States after seeking asylum, or who are granted asylum after presenting themselves at ports of entry along the U.S.-Mexico border.  *See* Appx. B at Resps. to RFP 67.  The Government's sole objection to RFP 67 is that this information is not relevant because it does not "bear on the issues in this case:  whether the named Plaintiffs were . . . arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action" to restrict access to the asylum process; or "whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful." *See* Appx. B at Resps. to RFP 67.  That is simply not true.  Once again, the Government uses its self-serving and overly narrow definition of the claims and defenses in this case. As discussed at length, this is improper.  *See supra* at 15-18. The type of information Plaintiffs request through RFP 67 is highly relevant to the claims and defenses at issue in the case.  This type of data may bear on Defendants'

intent and motivations in crafting any turnback or metering policies, *see supra* at 16-18, as well as the logistics and enforcement of such policies.

Therefore, these comments regarding noncitizens seeking asylum at ports of entry on the U.S.-Mexico border are relevant and should be produced.

* * *

The Government's objections to Plaintiffs' request for production are based on several fundamental misunderstandings. Since the Government misunderstands the specificity requirement in Fed. R. Civ. P. 34, its boilerplate objections should be struck. Because the Government misunderstands the scope of Plaintiffs' claims, its refusal to provide class-wide discovery and attempt to limit this case to a single APA claim should be rejected. Because intent is relevant to whether the Government's asserted defenses are a pretext, the Government's objections to producing documents concerning intent should be overruled. Plaintiffs' motion to compel should be granted in full.

## II.    Defendants' Argument

In their First and Second Sets of Requests for Production (RFPs), Plaintiffs propounded 109 Requests on Defendants. Defendants responded with detailed objections and responses, including specific objections of general applicability, regarding the proper scope of discovery in this matter that are incorporated into each of their responses. Despite the fact that this case challenges agency action and thus discovery beyond an administrative record is, if available at all, extremely circumscribed, Defendants are participating in discovery in good faith and engaging in negotiations regarding search terms and custodians, while reserving the right to limit such discovery in the future after a ruling on Defendants' pending motion to dismiss. Accordingly, the Court should deny Plaintiffs' requests to strike their objections and to compel documents beyond what Defendants have generously agreed to provide.

As set forth in more detail below, Plaintiffs' Requests extend far beyond what limited discovery might be proper in this matter. Plaintiffs allege broadly that Defendant government agencies have adopted a policy of restricting access to ports of entry along the U.S.-Mexico border for those who seek to enter the United States to seek asylum [or similar protections], and that this policy is unlawful. Yet the named Plaintiffs' specific allegations relate only to claimed "policies, practices, or efforts" at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry. Defendants have thus agreed to provide discovery from the headquarters of the Office of Field Operations (OFO) of U.S. Customs and Border Protection (CBP) and from those four ports of entry that would tend to show whether there is such a policy and its contours. For example, Defendants have agreed to provide documents or communications about policies, practices, and procedures that may relate to or refute Plaintiffs' allegations. *See, e.g.*, App. A at 15–20, 26 (containing Defendants' responses to RFPs Nos. 1 and 2); App. B at 34–52 (containing Defendants' responses to RFPs No. 40–44); Defs' Ex. 1, Defendants' Second Amended and Supplemented Responses to Plaintiffs' First Set of Requests for Production, at 30–34 (containing Defendants' response to RFP No. 6). Defendants have also agreed to provide documents and communications that relate to CBP's metering guidance at these four ports of entry—that is, the capacity of the ports of entry—as well as the numbers of individuals who may be affected by CBP's actions at those ports. *See, e.g.*, Defs.' Ex. 2, Defendants' First Amended and Supplemented Objections and Responses to Plaintiffs' Second Set of Requests for Production to All Defendants, at 60–62 (containing Defendants' responses to RFP Nos. 48–52); App. B at 114–17, 127–30 (containing Defendants' responses to RFPs No. 77 and No. 83). The Court should reject Plaintiffs' attempts to seek discovery beyond these parameters—such as discovery into the sentiments of individual CBP employees and discovery from and about ports of entry for which there are no specific allegations and no putative class

representatives—as legally improper, irrelevant, and disproportional to the needs of this case.

**A.      Because Defendants' Specific Objections are Not Boilerplate, There is No Reason for Them to Be Stricken or Withdrawn.**

Defendants agree that there is no place for general objections in responses to Requests for Production. As a decision cited by Plaintiffs states:

> An objection to a discovery request is boilerplate when it merely states the legal grounds for the objection without (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond to the request. For example, a boilerplate objection might state that a discovery request is "irrelevant" or "overly broad" without taking the next step to explain why. These objections are taglines, completely "devoid of any individualized factual analysis." Often times they are used repetitively in response to multiple discovery requests.

*Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 170, n.1 (N.D. Iowa 2017) (quoting Matthew L. Jarvey, *Boilerplate Discovery Objections: How They are Used, Why They are Wrong, and What We Can Do About Them*, 61 Drake L. Rev. 913, 914–16 (2013).

Defendants, in their amended responses to both the First and Second Sets of RFPs, provide detailed, specific objections of general applicability, *see* App. A at 1–15, App. B at 1–15, and incorporate those specific objections into their responses to each and every single RFP to which they apply in accordance with Federal Rule of Civil Procedure 34(b)(2)(B). Thus, contrary to Plaintiffs' assertion that "some of [the Government's] responses occasionally reference the Government's general objections[]," *supra* at p. 5, Defendants specifically incorporated their general objections into their specific responses. For example, Defendants state in response to RFP No. 1, after explaining in detail their objections to the RFP as a whole: "Defendants also object to RFP 1 in accordance with Objections Which Apply to All

1   RFPs Nos. 1, 3-10 and Objections to Definitions Nos. 2, 5-6, 8, and 10; and,

2   Objections to Instructions No[s]. 1, 2, and 4." *See* App. A at 16.

3        As Defendants explained to Plaintiffs during the parties' meet and confer on

4   April 30, 2019, the reason that Defendants chose this means of responding was a

5   practical one. Declaration of Gisela A. Westwater ¶ 5 ("Westwater Decl."). Rather

6   than rewrite 15 pages of objections in response to each of Plaintiffs' 109 RFPs,

7   Defendants chose to list out specific objections of general applicability at the outset

8   and then cite to the objections in response to specific RFPs. *Id.* The first amended

9   responses to the First Set of RFPs totaled 61 pages and the initial responses to the

10  Second Set of RFPs totaled 176 pages. Westwater Decl. ¶ 5. If Defendants had

11  chosen to specifically repeat each objection word for word, it would simply increase

12  the cumbersomeness of two already unwieldy documents. In response to Plaintiffs'

13  concerns about what they viewed as "boilerplate objections," Defendants took a

14  significant amount of time to provide even more specific details and clarity in their

15  overall objections and throughout their RFP responses to ensure there was no

16  confusion as to how each objection would affect Defendants' production or logging

17  of documents in response to particular Requests. Westwater Decl. ¶ 6. Yet, despite

18  this, Plaintiffs bring this issue before this Court in what is a waste of this Court's

19  limited judicial resources.

20       Indeed, the language in each Overall Objection is very specific and explains

21  precisely why the discovery sought is irrelevant or overly broad. For example, in

22  their responses to the Second Set of RFPs, Defendants state in their Overall

23  Objection No. 4:

24       Defendants object to the use of the terms and phrases "seek asylum,"
         "have a fear," "expressing a desire to seek asylum," "expressing a fear
25       of returning to their countries of origin," and "present themselves," as
         these terms and phrases are vague and ambiguous, are not defined by
26       Plaintiffs, and potentially can be construed as referring to actions or
         statements other than those described in 8 U.S.C. §§ 1158 and 1225(b).
27       For purposes of responding to these RFPs, Defendants understand and

28

construe these terms and phrases as referring to actions consistent with
8 U.S.C. §§ 1158 and 1225(b). Such construction is reflected in all of
Defendants' responses and any corresponding production or privilege
log; Defendants are not, however, withholding documents on the basis
of this objection.

App. B at 3; *see* App. A at 3. This objection is not only specific, but also provides

an explanation of Defendants' understanding and construction of specific terms and

phrases and an explanation that Defendants are not withholding any documents on

the basis of this objection. It is not apparent how much clearer Defendants can be.

Similarly, Overall Objection No. 5 to the First Set of RFPs states that Defendants

object to the phrase "near a port of entry" because this could encompass events that

occurred between ports of entry, which are irrelevant to the claims in this case, and

that Defendants will not be providing documents concerning actions or events

occurring between ports of entry. *See* App. A at 3–4. In fact, all of the Overall

Objections contain similar language explaining how each objection will affect

discovery. *See* App. A at 1–7; App. B at 1–7.

Similarly, all of the "Objections to Definitions" are thorough and explain how

the parameters of discovery are affected by each. *See* App. A at 7–15; App. B at 7–

15. For example, Defendants' Objection to Definition 1 (in both sets of responses)

states:

Defendants object to the definitions of the terms "YOU" and "YOUR"
on the grounds that they are overbroad, vague, unduly burdensome,
invade the attorney/client privilege or the attorney work-product
doctrine, and violate the Privacy Act, 5 U.S.C. § 552a et seq. Unless
otherwise specified, Defendants interpret the definition of YOU or
YOUR as referring to DHS, CBP, OFO, and individual DHS employees
from whom DHS has the legal right to obtain upon demand information
relevant to the claims and defenses in this case. Defendants do not
interpret the definition of "YOU" or "YOUR" to include DHS
component agencies or CBP subcomponents that are not parties to this
case. Defendants' responses to each applicable Request, and their
corresponding production and privilege log, will be limited consistent
with this objection and the objections to the definitions of DHS and

CBP. This objection also serves as a limiting principle on the parameters of Defendants' search for responsive documents, the contours of which are being contemporaneously negotiated with Plaintiffs.

App. A at 7–8; App. B at 7–8. Finally, Defendants' "Objections to Instructions" also provide sufficient detail and are incorporated into responses to each RFP response as applicable. *See* App. A at 15; App. B at 14–15; *see also* App. A and B *generally*. Accordingly, Defendants have provided specific language regarding the information that will be produced or withheld in line with their Overall Objections, in accordance with Federal Rules of Civil Procedure 34(b)(2)(B)–(C).

Accordingly, the cases cited by Plaintiffs are inapposite, because those cases involve vague, non-specific objections. For example, the court in *Makaeff v. Trump Univ., LLC*, found fault with objections that were "devoid of substance, include[d] repeated, identical boilerplate objections, and [were] non-responsive and evasive." No. 10-cv-0940, 2013 WL 990918, at *7 (S.D. Cal. Mar. 12, 2013). As explained above, that is simply not the case here. Plaintiffs in *Makaeff* were called upon to submit "individually tailored . . . specific" responses that were "actually . . . applicable, and . . . not . . . boilerplate." *Id.* That is what Defendants have already done by providing detailed overall objections and specifically incorporating all applicable objections in response to each Request.

Similarly, the general, boilerplate objections in *O'Shea v. Am. Solar Sol., Inc.*, such as "calls for irrelevant information that is unlikely to lead to discoverable evidence," cannot be compared to the very detailed and specific objections provided by Defendants in this case. No. 14-cv-894, 2016 WL 701215, at *2 (S.D. Cal. Feb. 18, 2016). For the same reasons, there is no comparison to the objections and responses provided by Defendants here to the ones at issue in *Anderson v. Hansen*, No. 09-cv-1924, 2012 WL 4049979, at *3 (E.D. Cal. Sept. 13, 2012). For example, one of the interrogatory responses that the court in *Anderson* found as "unsupported"

and "boilerplate" was the following: "Defendant objects to this request on the grounds that it is vague, compound, and not limited in time and scope. Without waiving these objections, Defendant Hansen responds as follows: Denied." *Id.* at *8. Because Defendants here have "'clarif[ied], explain[ed], and support[ed] [their] objections,'" 2012 WL 4049979, at *3, *Anderson* does not support Plaintiffs' requests to strike.

Likewise, Defendants' objections are not at all similar to those in *Springer v. Gen. Atomics Aeronautical Sys. Inc.*, No. 16-cv-2331, 2018 WL 490745 (S.D. Cal. Jan. 18, 2018). While the Court in *Springer* took issue with language that discovery responses were given "subject to" general objections (and other similar phrasing), this seemed to be because the incorporated objections in *Springer* were themselves boilerplate, which resulted in "confusi[on]" and 'le[ft] the requesting party guessing and wondering' as to whether the responding party actually provided a complete and accurate response." *Id.* at *2 (citing *Gondola v. USMD PPM, LLC*, 223 F. Supp. 3d 575, 584 (N.D. Tex. 2016)). Similarly, the *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 187 (N.D. Iowa 2017), decision cited by Plaintiffs criticized as insufficient objections that only stated "'that the discovery sought is vague, ambiguous, overbroad, unduly burdensome, etc. . . . without specifying how each [interrogatory or] request for production is deficient and without articulating the particular harm that would accrue if [the responding party] were required to respond to [the proponent's] discovery requests." 320 F.R.D. 168, 187 (citing *St. Paul Reins. Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 512 (N.D. Iowa 2000)) (alterations in original). As explained at length above, Defendants have provided detailed, specific objections of general applicability and clearly explained how they apply in the context of Defendants' responses to particular Requests, and also explain what documents are being produced or withheld in response to those Requests. *See generally* App. A, App. B. Indeed, Plaintiffs have not pointed to a

single concrete example as to how they are "unclear" about which objections are applicable to which Request or whether or what documents are being withheld in response to particular Requests. *See generally supra* at I. For these reasons, the Court should not strike Defendants' Overall Objections, Objections to Instructions, or Objections to Definitions.

**B.    The Strictures of the APA Limit the Scope of Discovery in this Case.**

Plaintiffs are fundamentally incorrect that raising a series of freestanding challenges to an agency's actions gives them the right to propound immaterial discovery requests. *See supra* at pp. 15–18. As the Court expressly recognized in its ruling on Defendants' first motion to dismiss, and as Defendants argued in their second motion to dismiss, "'[t]he APA governs the conduct of federal administrative agencies'" and provides the "'default judicial review standard' for agency action." Order Granting in Part and Denying in Part Defs.' Motion to Dismiss the Complaint, at 45 (ECF No. 166) (quoting *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 126 (D.D.C. 2018), and *Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1194 (9th Cir. 2000)); Defs.' Mot. to Dismiss the Second Am. Compl., at 23–25 (ECF No. 192-1). "'While a right to judicial review of agency action may be created by a separate statutory or constitutional provision, once created it becomes subject to the judicial review provisions of the APA unless specifically excluded.'" ECF No. 166 at 45 (citing *Webster v. Doe*, 486 U.S. 592, 607 n* (1988) (Scalia, J., dissenting), and *Ninilchik Traditional Council*, 227 F.3d at 1194).

The APA is thus "an umbrella statute governing judicial review of all federal agency action," *Webster*, 486 U.S. at 607 n.*, and any constitutional or statutory challenge to agency action must be funneled through the APA's judicial review framework. *See* 5 U.S.C. § 706 ("[T]he reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the

meaning or applicability of the terms of an agency action."). Plaintiffs cannot unilaterally alter this statutory framework simply by raising legally impermissible causes of action, no matter what they say otherwise. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Plaintiffs' INA challenge, their Fifth Amendment challenge, and their Alien Tort Statute ("ATS")/non-*refoulement* challenge[5] must proceed under the APA or not at all.[6]

The APA's judicial review provisions, in turn, establish as a baseline principle that a reviewing court cannot review evidence that was not before the agency when it acted. Rather, the statute requires a court to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. It is a longstanding and "fundamental principle[] of judicial review of agency action [that the] 'focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'" *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)); *Bark v. Northrop*, 2 F. Supp. 3d 1147, 1150 (D. Or. 2014) ("It is well settled that judicial review of agency action under the APA is generally limited to review of the administrative record." (citing 5 U.S.C. § 706)). Thus, the APA plainly prohibits Plaintiffs from propounding overbroad and immaterial discovery requests on the federal government Defendants that go beyond what would typically be included in an administrative record.

---

[5] Plaintiffs' counsel clearly stated at the May 10, 2019 hearing that Plaintiffs' ATS/non-*refoulement* claim is statutory in nature. *See* Defs.' Ex. 3, Tr. of Hearing on Defs.' Mot. to Dismiss the Second Am. Compl. 56:22–24 (May 10, 2019) ("Hearing Tr.").

[6] To the extent Plaintiffs contend that their "causes of action for declaratory and injunctive relief" somehow constitute a separate ground for propounding discovery, *see supra* at p. 15, they are incorrect. The APA provides for only two forms of judicial relief for individuals determined to be aggrieved by agency action: an order "compel[ling] agency action unlawfully withheld or unreasonably delayed," or an order "hold[ing] unlawful and set[ting] aside" agency action that violates the law. 5 U.S.C. § 706(1), (2). That Plaintiffs (potentially) request a form of relief not provided for in the APA does not entitle them to litigate outside the APA. *Iqbal*, 556 U.S. at 678.

1        **1.     Plaintiffs' Overbroad and Immaterial Discovery Requests**

2        **are Not Justified by Their Procedural Due Process**

3        **Challenge.**

Contrary to Plaintiffs' assertion, merely pleading a procedural due process violation does not create an entitlement to discovery of extra-record evidence. *See supra* at p. 16. As an initial matter, Plaintiffs do not identify which of their 109 RFPs go specifically to their constitutional claim. *See supra* at pp. 16–17. Even in cases where courts permit extra-record discovery on constitutional claims in an APA action, the plaintiff at least offers a threshold explanation of what documents he is seeking on the constitutional issue specifically, *see Grill v. Quinn*, No. 10-cv-757, 2012 WL 174873, at *3 (E.D. Cal. Jan. 20, 2012) (noting that the plaintiff listed eight specific document categories that were allegedly missing from an administrative record) (cited *supra* at p. 16), or otherwise "articulate[s] a sound basis for his document requests," *Jordan v. Wiley*, No. 07-cv-498, 2009 WL 980313, at *2 (D. Colo. Apr. 8, 2009). Plaintiffs, in contrast, simply state that "[c]ourts have repeatedly allowed plaintiffs to take discovery beyond the 'administrative record' when the plaintiff asserts both an APA claim and a constitutional claim." *Supra* at p. 16. This conclusory assertion fails at the outset to establish Plaintiffs' entitlement to immaterial evidence.

But more fundamentally, and as many courts have recognized, to adopt Plaintiffs' theory and "'allow fresh discovery, submission of new evidence, and legal arguments' would 'incentivize every unsuccessful party to agency action to allege . . . constitutional violations' in order to 'trade in the APA's restrictive procedures'" for the more generous discovery rules governing regular civil litigation. *Chiayu Chang v. U.S. Citizenship & Immigration Services*, 254 F. Supp. 3d 160, 162 (D.D.C. 2017) (quoting *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Service*, 58 F. Supp. 3d 1191, 1238 (D.N.M. 2014)). The APA's judicial

review parameters would be rendered "meaningless if any party seeking review based on . . . [alleged] constitutional deficiencies was entitled to broad-ranging discovery." *Harvard Pilgrim Health Care of New England v. Thompson*, 318 F. Supp. 2d 1, 10 (D.R.I. 2004). This is true especially in cases like this one, where, as even Plaintiffs' counsel acknowledges, the underlying procedural due process challenges are "coterminous" with the APA challenges. Hearing Tr. 51:20–52:4; *Chiayu Chang*, 254 F. Supp. 3d at 162 (explaining that discovery for constitutional claims is not warranted where those claims "fundamentally overlap with [the] APA claims").

The cases Plaintiffs cite do not help their argument. *See supra* at p. 16. *Porter v. Califano*, a Fifth Circuit decision involving a First Amendment challenge and a procedural due process challenge to the adequacy of an agency's fact-finding procedures in the government employment context, has no precedential or persuasive authority here. 592 F.2d 770, 780–81 (5th Cir. 1979) (cited *supra* at p. 16). A First Amendment challenge is separate and distinct from a procedural due process challenge, which, in the Fifth Circuit's view, was a significant reason why extra-record discovery was merited. *Id.* Here, in contrast, the APA claims and the procedural due process claims are "coterminous," which means there is no distinct basis to allow for discovery of extra-record evidence. Hearing Tr. 51:20–52:4; *Chiayu Chang*, 254 F. Supp. 3d at 162. *Porter* is further distinguishable because the constitutional challenge there centered narrowly on the adequacy of the agency's fact-finding procedures in the government employment context, whereas this case involves neither the adequacy of Defendants' fact-finding procedures nor a government employment decision. *See, e.g.*, *United States v. Gonzales & Gonzales Bonds and Ins. Agency, Inc.*, 728 F. Supp. 2d 1077, 1087 (N.D. Cal. 2010) (explaining that *Porter* is centered narrowly on the "allegations of conflict of interest" in the agency's decision to suspend the employee). Finally, Plaintiffs quote

*Porter* for the proposition that "a constitutional claim 'is reviewed independent of the APA.'" *Supra* at p. 16 (emphasis omitted). But that quotation does not appear anywhere in the decision. *See Porter*, 592 F.2d 770–86. *Porter* therefore has no value here.

*Bolton v. Pritzker* is similarly irrelevant, if not more so. No. 15-cv-1607, 2016 WL 4555467 (W.D. Wash. Sept. 1, 2016) (cited *supra* at p. 16). *Bolton* involved a fishing boat company's unsuccessful claim that it did not receive adequate notice of the National Oceanic and Atmospheric Administration's decision to revoke a fishing permit under the Magnuson-Stevens Fishery Conservation and Management Act. *Id.* In entering summary judgment for the government, the court did not allow or even discuss whether the plaintiff could serve discovery requests on the government. *See id.* at *1–8. Nothing in *Bolton* supports (or even addresses) Plaintiffs' assertion that "[c]ourts have repeatedly allowed plaintiffs to take discovery beyond the 'administrative record' when the plaintiff asserts both an APA claim and a constitutional claim." *Supra* at p. 16. Plaintiffs' Fifth Amendment challenge does not entitle them to extra-record discovery in this case.

## 2. The Scope of Permissible Extra-Record Evidence in a Section 706(1) Claim is Extremely Circumscribed.

Plaintiffs are correct that the Court may consider a limited amount of extra-record evidence in evaluating a request to compel agency action "unlawfully withheld or unreasonably delayed" under 5 U.S.C. § 706(1). *See supra* at p. 16 (citing *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000), and *Yurok Tribe v. U.S. Bureau of Reclamation*, 231 F. Supp. 3d 450, 469 (N.D. Cal. 2017)). But even assuming Plaintiffs have sufficiently pleaded such a claim as a matter of law, that does not mean Plaintiffs are entitled to propound overbroad and immaterial discovery requests. As at least one district court has recognized, there are no "manifestations [in the Ninth Circuit] of a precedential preference for unlimited

discovery in unreasonable delay actions." *Seattle Audobon Society v. Norton*, No. 05-cv-1835, 2006 WL 1518895, at *3 (W.D. Wash. May 25, 2006). Rather, as is common in section 706(1) cases, the Court should permit Defendants to provide relevant documents and declarations and to stipulate to relevant factual matters before taking the drastic step of compelling responses to overbroad and immaterial discovery requests. *See, e.g.*, *San Francisco BayKeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir. 2002) (allowing limited supplementation by agency to explain delay); *Friends of the Clearwater*, 222 F.3d at 560–61 (allowing limited supplementation by agency for purpose of proving that action was moot).

### 3.    Defendants' Intent is Wholly Irrelevant to Plaintiffs' Claims.

Besides the extreme burden that Plaintiffs' discovery requests purport to impose, Plaintiffs have no legal basis to discover the subjective intentions of individual agency personnel in the course of implementing their official duties. *See supra* at pp. 17–18. That is because in an APA case such as this one, the subjective intent of individual actors is immaterial to the issue whether the *agency* acted lawfully or not. The Supreme Court has long recognized that "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government." *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977). In part for that reason, the Court has "made it abundantly clear" that APA review must focus solely on the "contemporaneous explanation of the agency decision" that the agency chooses to rest upon. *Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 549 (1978). "When a party challenges agency action as arbitrary and capricious the reasonableness of the agency's action is judged in accordance with its *stated* reasons." *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 156 F.3d 1279, 1279 (D.C. Cir. 1998) (emphasis added) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S 402 (1971)).

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO COMPEL

1    Unless intent is an element of a party's claims or defenses—which, in this case, it is

2    not—"the actual subjective motivation of agency decisionmakers is immaterial as a

3    matter of law" and is therefore not properly discoverable. *Id.*; *see also Florida Power*

4    *& Light Co.*, 470 U.S. at 743 (It is a longstanding and "fundamental principle[] of

5    judicial review of agency action [that the] 'focal point for judicial review . . . [is] not

6    some new record made initially in the reviewing court.'" (quoting *Pitts*, 411 U.S. at

7    142)).

8         None of Plaintiffs' causes of action require them to prove intent to make their

9    case. This stands in stark contrast to an equal protection claim, for example, where

10   "discriminatory intent or purpose is *required*" to prove an equal protection violation.

11   *Village of Arlington Heights*, 429 U.S. at 265 (emphasis added). Nor do Plaintiffs'

12   allegations of "pretext" make Defendants' intent relevant. The only evidence that is

13   relevant to whether the government is pretextually limiting its processing of aliens

14   who lack documents based on capacity constraints is whether there are, in fact, actual

15   capacity constraints. *See* 5 U.S.C. § 706(1). Put another way, if the ports of entry do

16   not have the capacity to process aliens without documents, then any "delay" in

17   processing would not be "unreasonabl[e]" under the statute, regardless of any

18   individual CBP employees' opinions on the matter. *Id.*

19        Plaintiffs' arguments to the contrary are simply wrong. First, as discussed

20   above, Plaintiffs' claims can proceed only within the APA's judicial review

21   framework. The mere fact that they have also pleaded non-APA claims does not

22   mean they are entitled to discovery beyond what would typically be within the scope

23   of review in an APA case. *Supra* at II.B. And even if Plaintiffs' claims could proceed

24   outside the APA, there is nothing in the INA or the Due Process Clause that

25   conditions the lawfulness of an agency's conduct on the intent of any given agency

26   employee.

27

28

Second, Plaintiffs significantly misrepresent the extent of Defendants' reliance on the Supreme Court's *Arlington Heights* decision. *See supra* at pp. 17–18. It is important to make clear that the government does not cite *Arlington Heights* for the purpose of "generally and preemptively asserting a blanket privilege in the guise of a relevance objection," as Plaintiffs claim. *Supra* at p. 17. Rather, as Defendants' objections make clear, Defendants cite to the case simply to show that the Supreme Court has long recognized that "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government." *Village of Arlington Heights*, 429 U.S. at 268 n. 18. Defendants' relevance objection—and it is indeed a relevance objection—is more fundamentally rooted in the D.C. Circuit's *In re Subpoena Duces Tecum* decision, in which the court clearly explained that "the actual subjective motivation of agency decisionmakers" in an APA case "is immaterial as a matter of law." 156 F.3d at 1280. Rather than grapple with the reasoning of this decision, Plaintiffs attempt to gloss over the case by claiming it pertains exclusively to privilege law. *See supra* at p. 18, n.3. But while the case certainly *arose under* a privilege dispute, the very point of the D.C. Circuit's opinion was to clarify the difference between what is privileged versus what is immaterial in an APA case: "Agency deliberations not part of the record are deemed immaterial. That is because the actual subjective motivation of agency decisionmakers is immaterial as a matter of law." *In re Subpoena Duces Tecum*, 156 F.3d at 1279–80 (citations omitted). So too here, any document request that goes directly or indirectly to the subjective intent of individual agency actors—including RFP Nos. 35–37, 44, 55–65, 67, 69–72, 102–04 (*see* App. B at 22–31, 48–52, 62–88, 90–107, 166–71)—is immaterial as a matter of law and is therefore not relevant to any party's claims or defenses.

**C.    Plaintiffs Are Not Entitled to Discovery From or Related to All Ports of Entry on the U.S.-Mexico Border.**

1. **Plaintiffs Cannot Obtain "Classwide" Discovery Relating to All Ports of Entry on the U.S.-Mexico Border Because the Putative Class Representatives Allege Specific Facts Relating to Only Four Ports of Entry.**

Plaintiffs are not entitled to discovery from all land ports of entry along the U.S.-Mexico border simply because they have offered an overbroad and unsupportable class definition. *See supra* at p. 6. Class actions are "'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.' In order to justify a departure from that rule, 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682 (1979), and *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395 (1977)). As a threshold matter, then, the putative class representatives must at least allege specific facts at the pre-certification stage that, if later proven true, demonstrate that they are "part of the class" they seek to represent and have "suffer[ed] the same injury" as all the other class members. *Id.* They must also allege with specificity facts that, if proven true, show that Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Here, however, Plaintiffs essentially admit they have not met that burden. The individual Plaintiffs allege only that they were subject to Defendants' allegedly unlawful "policies, practices, or efforts" at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry, and that these "policies, practices, or efforts" are directed through the Office of Field Operations. *See* Second Amended Complaint ("SAC") ¶¶ 24–35 (ECF No. 189). None of the individual Plaintiffs allege that they interacted with Defendants at the Andrade, Amistad Dam, Brownsville, Calexico, Columbus,

Del Rio, Douglas, El Paso, Fabens-Tornillo, Falcon Heights, Fort Hancock, Los Ebanos, Los Indios, Lukeville, Mariposa, Maverick-Eagle Pass, Morley Gate, Naco, Nogales, Presidio, Progreso, Rio Grande City, Roma, San Luis, Santa Teresa, Sasabe, or Tecate ports of entry. *Compare* SAC ¶¶ 24–35 *with* 8 C.F.R. § 100.4(a) (listing land ports of entry). By challenging with specificity the alleged actions of only the headquarters component of OFO and the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry, Plaintiffs necessarily cannot be "part of the class" of, and have "suffer[ed] the same injury as," individuals lacking appropriate travel documents who allegedly entered or attempted to enter through the other ports of entry. *Wal-Mart Stores, Inc.*, 564 U.S. at 348–49. Nor would any relief the Court might order as to the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry be "appropriate respecting" those other ports of entry. Fed. R. Civ. P. 23(b)(2).

## 2.  Producing Documents from All Ports of Entry Along the U.S.-Mexico Border Would be Unduly Burdensome.

Moreover, even if Plaintiffs were entitled to some discovery concerning whether Defendants have a "turnback" policy that applies to all ports of entry across the U.S.-Mexico border, or whether it is applied in the same way at each port of entry, Plaintiffs do not need discovery from *all* ports of entry to obtain such facts. Defendants have agreed to produce discovery from the headquarters of the applicable office of CBP (the Office of Field Operations), as well as from the four ports of entry that relate to the named Plaintiffs' allegations. Any discovery from additional custodians and about other ports of entry would be cumulative and unnecessary, and thus not proportional to the needs of the case.

Indeed, searching for, collecting, reviewing, redacting, and producing documents (and preparing and providing a corresponding privilege log) from all ports of entry along the U.S.-Mexico border would be extremely burdensome. Plaintiffs' discovery requests are staggeringly broad. The RFPs request, for example,

JOINT MOTION REGARDING PLAINTIFFS' MOTION TO COMPEL

all documents and communications relating to various policies and procedures claimed to be employed by CBP, *see, e.g.*, Defs.' Ex. 1 at 20–24, 30–38 (RFP No. 2 and Nos. 6–7), Defs.' Ex. 2 at 36, 49, 136 (RFPs No. 41, No. 44, and No. 84); all documents and communications relating to alleged collaboration with Mexico or private security organizations regarding these procedures, *see, e.g.*, Defs.' Ex. 1 at 24, 26 (RFP Nos. 3–4); documents and communications relating to complaints against, and discipline of, CBP Officers, *see, e.g.*, Defs.' Ex. 2 at 56–62 (RFP Nos. 18–20); and documents and communications relating to CBP officers' purported use of misrepresentations, threats, and the like, *see, e.g.*, Defs.' Ex. 2 at 40–49 (RFP Nos. 42–43). Even if these Requests are limited somewhat by Defendants' objections[7]

---

[7] These and other Requests, as drafted, are patently overbroad and unduly burdensome. When read with Plaintiffs' definitions of "you," "DHS," and "CBP," a complete response would require Defendants, for each RFP, to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Defs.' Ex. 2 at 8–11 (Pls.' Second RFPs, Definitions A–C). DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Numerous courts, including this Court, have ruled that everything-under-the-sun discovery requests such as Plaintiffs' that purport to require the responding party to "canvas every employee" for responsive information are "onerous and over burdensome." *E.g.*, *Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.); *Aldapa v. Fowler Packing Company Inc.*, 310 F.R.D. 583, 591 (E.D. Cal. 2015) (A request for "all documents related to any if the allegations in the complaint" is "clearly overly burdensome. Courts routinely disfavor overly broad discovery requests that ask opposing parties to produce everything under the sun that relates to the ongoing litigation. . . . In the context of document production requests, an even greater burden is placed on Defendants [compared to the burden imposed by contention interrogatories] in responding to requests to produce each and every document that relates to the claims brought by Plaintiffs.").

and the parties' ESI negotiations,[8] the amount of document collection and review needed if the scope of discovery were expanded to include all, or even some, additional ports of entry along the U.S.-Mexico border, would impose a significant burden on Defendants.

To conduct a search for documents they have agreed to produce covering the time period beginning January 1, 2016, Defendants have already worked with Plaintiffs to identify *fourteen* different custodians from OFO headquarters, CBP's Office of Professional Responsibility, the four ports of entry at issue, and their respective field offices.[9] *See* Westwater Decl. ¶ 8. To attempt to capture responsive communications from the different ports of entry—which may use different reports and terminology—Defendants have developed a list of 176 search terms and have applied them to the emails of six of those custodians. *Id.* ¶ 9; *see also* Defs.' Ex. 4, Defendants' Proposed Search Terms. Application of the current proposed search terms to the emails of just those six custodians resulted in 253,565 total items for review. Defs.' Ex. 5, Declaration of Elaine Dismuke ¶ 12 ("Dismuke Decl"). Assuming a rate of review of 25–50 documents per hour, first-line responsiveness review of these documents alone would take approximately 5,000 to 10,000 hours (plus the time it will take to review the documents from Defendants' non-custodial sources). Moreover, adding any new custodians will increase the e-discovery collection burden in terms of money, time, and server and human resources, by forcing CBP to purchase additional space storage space from its data server or additional licenses to process data in its e-discovery platform, Clearwell, as well as

_____

[8] Plaintiffs' claim that there is no burden because the "ESI Protocol imposes reasonable limitations on discovery," is, however, incorrect. *Supra* at p. 9. The ESI Protocol does not itself limit the scope of discovery; rather, it governs the process by which the parties will negotiate the scope of discovery. As shown below, Defendants would bear a significant burden if Plaintiffs were permitted to obtain discovery from additional ports of entry by having to add custodians and, potentially, search terms, and thereby increase the volume of discovery.

[9] This count does not even include the non-custodial sources that Defendants are searching and/or reviewing in order to produce documents for this matter.

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO COMPEL

by diverting staff and server resources from the 100-plus other open cases that CBP's OIT eDiscovery team is handling. Dismuke Decl. ¶¶ 2, 4–10.

The burden of expanding discovery to include all southern-border land ports of entry (POEs) extends to CBP's operations, which are already strained. CBP is currently "facing an unprecedented surge of individuals entering illegally and arriving at ports of entry without documents. CBP has encountered more than 109,000 individuals in the last month alone, which is over 5,000 more individuals than were encountered the month prior. This is the highest monthly total in well over a decade and we are not even halfway through an unprecedented year." Defs.' Ex. 6, Declaration of Randy Howe ¶ 6 ("Howe Decl"). This unprecedented surge of individuals has drastically strained the agency's operations and resources, "as officers and agents must devote significant manpower, money, and facilities, to processing and holding. Specifically, OFO has reallocated several hundred officers to the southwest border to assist the U.S. Border Patrol. OFO at many ports of entry are thus operating with additional decreased staffing, which places an additional significant strain on resources." *Id.*

Requiring document production from all ports of entry would require the agency to further divert resources from their mission responsibilities to respond to Plaintiffs' RFPs, possibly compelling OFO to pull officers from the line. Individual custodians at each port of entry "would need to search for and identify the locations of relevant files, in both hard copy and electronic form. Depending on the number of custodians at a particular POE and the number and location of such files, such a search could require an extensive search and a significant amount of time." *Id.* ¶ 7. Additionally, although CBP's eDiscovery Team will generally collect electronically stored information from custodians' email and hard drives, "individual custodians may have to provide input into the manner in which responsive documents may be saved, locations of responsive email folders, or specific terminology likely to lead

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO COMPEL

to responsive documents. Those custodians may also need to review any electronically stored information collected by the eDiscovery Team to determine whether any responsive materials were missed." *Id.* Further, after documents have been collected, "individuals with knowledge of the substance of a particular document would need to review the document to determine whether it is appropriate to produce it or whether redactions must be applied. Depending on the nature of a particular document, this may involve multiple individuals or even individuals at multiple ports of entry." *Id.* And, any RFPs relating to video footage would be "incredibly burdensome, as an individual officer must manually review footage for a particular incident, and then manually preserve the incident." *Id.* ¶ 8. In short, "conducting discovery requires a significant amount of resources, and would likely require the POEs to pull officers from their regular duties in order to ensure that the agency appropriately responded to a particular request. OFO may already have to pull officers off the line at the four ports of entry currently at issue in this case in order to respond to discovery requests. Were each port of entry along the southwest border required to do the same, it would have a significant negative impact on OFO operations along the southwest border, which would, in turn, diminish OFO's effectiveness at executing its national security mission. These risks are particularly acute given the current constraints on OFO's operations." *Id.* ¶ 9.

Further, requiring document discovery from all ports of entry is not likely to yield significant additional information beyond what can be collected from OFO headquarters. *See id.* ¶ 10. "Given the fact that each POE is in regular contact with OFO headquarters, it would be largely duplicative to collect documents from every single POE along the southwest border. Email communications from the field regarding metering or queue management procedures will be collected as part of the discovery from headquarters custodians. Therefore, discovery from all of the POEs on the southwest border would not . . . be likely to uncover significant additional

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO COMPEL

relevant information than what would be contained in documents collected from OFO headquarters. Thus, to require each port of entry along the southwest border to engage in discovery would impose a significant operational burden for what is likely to be largely duplicative documents." *Id.*

Accordingly, the Court should decline to compel Defendants to produce discovery from or relating to all land POEs along the U.S.-Mexico border. Not only is such a request improper because the putative class representatives could not represent a class representing all land POEs, but it also is unduly burdensome and not proportional to the needs of the case because it would significantly increase the burden of discovery with little to no additional benefit to resolving the claims in this case or determining whether a class should be certified in this case.[10]

### D. Plaintiffs Must Draft Appropriate Discovery Requests Related to the Elements of Rule 23.

Plaintiffs claim that Defendants "will not even produce documents regarding the Rule 23 factors." *Supra* at p. 13. This is an absurd misrepresentation of Defendants' position.

Plaintiffs propounded the following document requests seeking documents about contentions that Defendants may make in opposing class certification:

- **RFP No. 96:** To the extent that you claim that any formal or informal policy, practice, or effort to cap, limit, or meter the number of noncitizens seeking asylum in the United States who are processed at a port of entry along the U.S.-Mexico border was not implemented across the entire U.S.-Mexico border or was not implemented at every port of entry, all documents supporting the factual basis for that claim.

---

[10] Plaintiffs also accuse Defendants of "condition[ing] producing class-wide discovery on class certification." *Supra* at p. 11 (citing Defs.' Gen. Objection No. 6). This, again, misrepresents Defendants' position. Defendants' Overall Objection No. 6 is a proportionality and burden objection, not an argument to withhold class discovery until after a class has been certified.

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO COMPEL

- **RFP No. 97:** To the extent that you claim that questions of fact are not common to the class alleged in Plaintiffs' second amended complaint, all documents that support the factual basis for your contention

- **RFP No. 98:** To the extent that you claim that Plaintiffs' proposed class alleged in the second amended complaint is not sufficiently numerous to be certified, all documents that support your contention.

- **RFP No. 99:** To the extent that you claim that the named class representatives' claims are atypical of the claims of the purported class alleged in the second amended complaint, all documents that support the factual basis for your contention.

- **RFP No. 100:** To the extent that you claim that the named class representatives are inadequate representatives of the class alleged in the second amended complaint, all documents that support the factual basis for your contention.

Contrary to Plaintiffs' assertion, Defendants *did* agree to produce documents in response to to RFP No. 96. *See* App. B at 161–62. Defendants explained that they "will not be providing documents specifically in response to th[ese other] Request[s]" because, by tying the Requests to documents that Defendants might use to oppose class certification instead of to documents that reflect the factual bases of the Rule 23 elements, the RFPs are premature and improperly impinge upon Defendants' work product. *See* App. B. at 162–66. They are also unduly burdensome. *See Aldapa*, 310 F.R.D. at 591 ("In the context of document production requests, an even greater burden is placed on Defendants [compared to the burden imposed by contention interrogatories] in responding to requests to produce each and every document that relates to the claims brought by Plaintiffs."). Should Plaintiffs choose to draft discovery requests relating to the factual bases of the Rule

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO COMPEL

1   23 elements, Defendants will respond accordingly.[11] But "[i]t is Plaintiffs'

2   responsibility to draft narrowly focused requests for production that do not place

3   undue burdens on Defendants" or impinge upon Defendants' work product or legal

4   theories. *Id.*

5       **E.   Information Related to the "Health and Wellbeing" of Individuals**

6           **in Mexico is Not Relevant to the Relief Plaintiffs Might Obtain.**

7       Plaintiffs argue that they need information related to the "health and

8   wellbeing" of individuals in Mexico to establish the "irreparable harm" element of

9   a permanent injunction. *Supra* at pp. 14–15. But Plaintiffs are not entitled to the

10  permanent injunction they seek as a matter of law.

11      Plaintiffs seek an injunction requiring Defendants to comply with "laws and

12  regulations . . . prohibiting Defendants . . . from continuing to implement the

13  Turnback Policy and from engaging in unlawful practices . . . [and] to implement

14  procedures to provide effective oversight and accountability in the inspection and

15  processing of individuals who present themselves at POEs." *See* ECF No. 189

16  ¶ 304.e–g. As explained above, however, Plaintiffs' claims must proceed under the

17  APA, which does not allow for such broad and poorly defined relief. *See* 5 U.S.C.

18  § 706(1), (2) (allowing a reviewing court to "compel agency action unlawfully

19  withheld or unreasonably delayed" or to "hold unlawful and set aside" unlawful

20  agency action); *supra* at II.B; ECF No. 166 at 45; *Fla. Med. Ass'n, Inc. v. Dep't of

21  Health, Educ., & Welfare*, 947 F. Supp. 2d 1325, 1354 (M.D. Fla. 2013) ("[T]he

22  APA authorizes a court to enjoin a specific final agency decision it finds arbitrary,

23  capricious or contrary to law, [though] the APA does not afford a vehicle for

24

25  [11] Indeed, Defendants have already responded to and agreed to provide documents in response to
26  Plaintiffs' RFPs concerning topics that may be related to the Rule 23 factors, such as the requests
    for the named Plaintiffs' own immigration records, *see, e.g.*, Defs.' Ex. 1 at 51 (RFP No. 15);
27  requests for documents concerning Defendants' policies and practices, *see, e.g.*, *id.* at 52, 58–60.
    64–68 (*see, e.g.*, RFPs No. 16, No. 19, No. 22), Defs.' Ex. 2 at 35–36 (RFP No. 40); and requests
28  for documents reflecting statistics that may relate to numerosity.

1    enjoining possible future agency actions."); *Alabama v. Ctr. for Medicare and*
2    *Medicaid Serv.*, 674 F.3d 1241, 1245 (11th Cir. 2012).

3            Additionally, even assuming the health and wellbeing of the named Plaintiffs
4    and other putative class members is properly discoverable, such information is by
5    definition in the plaintiffs' and putative class members' possession. It is therefore
6    disproportionate to the needs of the case to compel Defendants to search for and
7    produce such information. *See* Fed. R. Civ. P. 26(b)(1), (b)(2)(C). Thus, because
8    Plaintiffs are not entitled to the injunction they seek, and because the information
9    they seek is necessarily in their own possession, the Court should not compel
10   Defendants to search for and produce documents relating to the number or the health
11   and wellbeing of individuals in Mexico and should decline to compel responses to
12   RFPs No. 73 and No. 78.

13       **F.    Defendants' Purported "Communications with Lobbying Groups"**
14              **are Not Within the Scope of Discovery and Not Relevant.**

15           Defendants' purported communications with various labor unions or the
16   Federation for American Immigration Reform (FAIR) are not within the scope of
17   review in this APA case. *See* RFP Nos. 58–63; App. B at 72–83. As discussed above,
18   the APA establishes as a baseline principle that a reviewing court cannot review
19   evidence that was not before the agency when it acted. Rather, the statute requires a
20   court to "review the whole record or those parts of it cited by a party." 5 U.S.C.
21   § 706; *Florida Power & Light Co.*, 470 U.S. at 743. Plaintiffs make no allegations
22   in the Second Amended Complaint, nor do they attempt to show in their portion of
23   this joint motion, that that there were communications between CBP or DHS and
24   labor unions or the Federation for American Immigration Reform (FAIR) related to
25   "limiting, capping, or metering the number of [individuals] that are allowed to
26   present themselves at a port of entry on the U.S.-Mexico border to seek asylum,"
27   such that they would be part of a typical administrative record. *See supra* at pp. 19–

28

20; *see generally* ECF No. 189. Instead, Plaintiffs make the bald assertion that such communications "*may* reveal that the Government's asserted hardships are really just a pretext." *Supra* at p. 19 (emphasis added). This statement is irrelevant, conclusory, and wholly speculative. Plaintiffs have failed to show that the information they seek is properly within the scope of review in this APA case.

But even if such information were reviewable, Plaintiffs make no attempt to show how such communications are relevant to either the reasonableness of the pace at which aliens without appropriate documents are permitted to cross the border or to whether Defendants' actions are in excess of statutory authority. *See supra* at pp. 19–20; 5 U.S.C. §§ 706(1), (2). None of the allegations in the complaint relate to labor unions or interest groups, and Plaintiffs offer no explanation why communications with the various labor unions or FAIR specifically are relevant to this case. Thus, the Court should not compel Defendants to search for such communications.

**G.    Defendants' "Reactions" and Alleged "Derogatory Comments" are Not Relevant to Any Party's Claims or Defenses, Not Within the Proper Scope of Discovery, and Not Proportional to the Needs of the Case.**

The "reactions" of "relevant officials" to this lawsuit, to "news articles and NGO reports related to the metering policies alleged in the Complaint," and to "tweets or comments by the President of the United States and/or White House" are not relevant to any parties' claims or defenses and are thus outside the scope of discovery, and requests for documents containing such reactions are not proportional to the needs of this case. *See* RFP Nos. 35–37; App. B at 22–31. Similarly, any alleged references by CBP employees referring to asylum applicants as "illegal," "exploiting a legal loophole," or using "derogatory language or ethnic slurs" are not relevant to this case and are thus not within the scope of discovery, and requests for

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO COMPEL

documents containing such references are not proportional to the needs of the case. *See* RFPs No. 64–65, No. 69; App. B. at 83–87, 90–93. Request No. 67, which has to do with crime rates among a broad set of individuals, is also not relevant to the claims and defenses in this case and is also not proportional to the needs of the case. *See* App. B at 87–88.

> ### 1.   The Information Sought Through RFP Nos. 35, 36, 37, 64, 65, 67, and 69 is Not Reviewable Under the APA.

It is well established that the "reactions" Plaintiffs seek are well outside the scope of discoverable material under the APA, under which Plaintiffs' claims must be adjudicated. *See supra* at II.B. As explained at length above, "[w]hen a party challenges agency action as arbitrary and capricious the reasonableness of the agency's action is judged in accordance with its *stated* reasons." *In re Subpoena Duces Tecum*, 156 F.3d at 1279–80 (emphasis added); *supra* at II.B.3. "[T]he actual subjective motivation of agency decisionmakers is immaterial as a matter of law." *Id.*; *Citizens to Preserve Overton Park*, 401 U.S. at 420 (stating that "inquiry into the mental processes of administrative decisionmakers is usually to be avoided" and "there must be a strong showing of bad faith or improper behavior before such inquiry may be made"); *see also McCray v. United States*, 195 U.S. 27, 56 (1904) ("[T]he judiciary may [not] restrain the exercise of lawful power on the assumption that a wrongful purpose or motive has caused the power to be exerted."); *Portland Audubon Soc'y v. Endangered Species Comm.,* 984 F.2d 1534, 1549 (9th Cir. 1993) (noting that "the mental processes of individual agency members" are not properly reviewable under the APA).

Plaintiffs believe they have sufficiently alleged that Defendants have acted in bad faith so as to be entitled to discovery into subjective motivation, but in reality, they have alleged only that Defendants' actions are unlawful. This is a far cry from the heightened standard required to establish bad faith. *See Outdoor Amusement Bus.*

*Ass'n, Inc. v. Dep't of Homeland Sec.*, No. 16-cv-1015, 2017 WL 3189446, at *20–21 (D. Md. July 27, 2017) ("Courts have imposed a high standard on plaintiffs seeking to demonstrate bad faith." (citing *Tafas v. Dudas*, 530 F. Supp. 2d 786, 797 (E.D. Va. 2008))); *see also Newton County Wildlife Ass'n v. Rogers,* 141 F.3d 803, 807–08 (8th Cir. 1998) (finding "[the] threshold showing of bad faith woefully inadequate to justify going outside the administrative record" where plaintiff identified a discrepancy between the agency's conduct and its predecisional assessments). Some courts have found that a showing of fraud or clear wrongdoing were sufficient to establish bad faith; however, Plaintiffs have not made any specific allegations here that would tend to show bad faith. *See Mullins v. U.S. Dep't of Energy*, 50 F.3d 990, 993 (Fed. Cir. 1995) (stating that the "relevant judgement had to be the agency's" and without "some showing of fraud or clear wrongdoing" bad faith was not established); *United States v. Shaffer,* 11 F.3d 450, 460–61 (4th Cir. 1993) (finding bad faith where "government's agent . . . filed fraudulent documents with the federal government and perjured himself repeatedly in connection with his federal employment[.]"). Plaintiffs' perspective on the case is also not enough to establish bad faith, as simply "disagree[ing] with an agency's ultimate decision, or with its interpretation of the factual materials before it does not constitute bad faith[]" even if a court ultimately makes a decision adverse to the agency. *Outdoor Amusement*, 2017 WL 3189446, at *20–21 (citing *Sierra Club v. U.S. Army Corps of Engineers,* 701 F.2d 1011, 1044 (2d Cir. 1983)). Thus, Plaintiffs have failed to establish bad faith on the part of Defendants necessary to render the Government decisionmakers' intent relevant to this APA case.

Plaintiffs have simply not shown why the facts they seek to obtain through these RFPs could possibly be relevant to the Court's review of agency action. "[W]hen there is a contemporaneous explanation of the agency decision, the validity of that action must 'stand or fall on the propriety of that finding, judged, of course,

by the appropriate standard of review.'" *Vermont Yankee*, 435 U.S. at 549 (quoting *Pitts*, 411 U.S. at 143). In fact, an agency explanation, even if "curt," is sufficient. *See Pitts*, 411 U.S. at 138, 143. Although Plaintiffs also try to justify their attempt to obtain extra-record evidence by proclaiming, without support, that "intent is highly relevant to the claims and defenses in this case," *supra* at p. 23, Defendants' intent (or "executive motivation," *see supra* at p. 18) is not an element of *any* of Plaintiffs' claims. *Supra* at II.B.3. For these reasons, Plaintiffs' unsupported allegation that Defendants' capacity defense is a pretext and their vague assertion that Defendants have engaged in bad faith is simply not enough to support Plaintiffs' request for the "reaction" or "derogatory comments" discovery they seek.

> **2.     Even if the Information Sought Were Reviewable, it is Not Relevant and the Document Requests Are Not Proportional to the Needs of the Case.**

Moreover, Plaintiffs wholly fail to establish that their Requests seeking "reactions" or purported derogatory comments of individual CBP employees are relevant to the claims at issue. Plaintiffs argue that RFP No. 35 might return "communications between Government officials expressing relief that the Complaint omitted certain key facts, deliberations about whether the Government should issue a public response to the litigation, or internal concerns that the Government's unannounced turnback policy has been publicly exposed." *Supra* at pp. 20–21. They also speculate that Defendants' "internal reactions to . . . public criticism will, amongst other things, show whether the Government believes these criticisms to be meritorious and may reveal whether the Government's asserted capacity defense is a pretext for undermining the U.S. asylum process." *Supra* at p. 21. But whether Defendants may have expressed "relief" that the complaint omits "certain key facts" or not, or whether Defendants may believe public criticism is meritorious or not have absolutely no bearing on whether Defendants have *actually*

done what Plaintiffs allege they did. A "reaction" to something does not "have 'any tendency' to make any of the issues in this case 'more or less probable than [they] would be without' the 'reaction,' nor is the fact of a 'reaction' 'of consequence in determining' the issues." *See* App. B at 22–23, 27, 30. Even if it did, it is plainly not proportional to the needs of the case for Defendants to search their documents for "reactions" related to the issues in this lawsuit on a fishing expedition for comments that *might* confirm the existence or non-existence of a policy or certain facts, when there are other, drastically less burdensome ways to obtain the information Plaintiffs seek. For example, Plaintiffs have sought, and Defendants have agreed to provide documents and communications concerning Defendants' actual policies and practices that relate to the allegations in the Second Amended Complaint, including training materials. *See, e.g.*, Defs.' Ex. 1 at 19–24, 28–34 (RFP Nos. 1–2 and Nos. 5–6), Defs.' Ex. 2 at 35–36, 49–53 (RFPs No. 40 and No. 44). Defendants have also agreed to provide information regarding the capacity of the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry to process travelers. *See, e.g.*, Defs.' Ex. No. 2 at 54–60, 115–19 (RFP Nos. 46–47, No. 75). Such documents and communications are more likely to provide the actual information Plaintiffs claim to seek.

Requests seeking documents containing alleged comments by CBP employees referring to those applying for asylum as "illegal," "exploiting a legal 'loophole,'" or other purportedly "derogatory language or ethnic slurs" are irrelevant for the same reason, and also because the subjective intent of individual agency employees is immaterial as a matter of law. *See* RFPs No. 64, No. 65, No. 69; App. B at 84, 86, 91–92. Information about crime rates among certain aliens sought through Request No. 67, *see* App. B at 88, is also not relevant, despite Plaintiffs' unsubstantiated declaration that "[t]his type of data *may* bear on Defendants' intent and motivations in crafting any turnback or metering policies." *Supra* at p. 25

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO COMPEL

(emphasis added). Even if Defendants had such data in their possession, it is not related to any allegations in the Second Amended Complaint.

The issues in this case are "whether the named Plaintiffs were, at the time of their alleged injury applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to 'restrict access to the asylum process at ports of entry along the U.S.-Mexico border'' and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful." App. B at 22. There is no need for discovery into "reactions" by Defendants because they are not relevant to whether Defendants have an alleged policy of turning away those who present themselves at ports of entry across the southwest border and seek asylum. Similarly, discovery into CBP employees' purported offensive remarks or into crime rates of certain aliens are not relevant to whether Defendants have an actual policy of turning away those who present themselves at ports of entry across the southwest border of the United States and apply for asylum. It is also not clear how the crime rates information sought through Request No. 67 would be relevant to "logistics and enforcement of such policies," as Plaintiffs claim. *Supra* at p. 25.

Moreover, as noted, information about the alleged policy that Plaintiffs seek to uncover can be found through the many other Requests for Production that Plaintiffs have propounded and which Defendants have agreed to respond to (subject to the limitations on discovery being negotiated by the parties). *See* App. A and App. B *generally*; *see also* Fed. R. Civ. P. 26 (b)(2)(C)(i) (stating that courts must limit discovery that "is unreasonably cumulative or duplicative, or [that] can be obtained from another sources that is more convenient, less burdensome, or less expensive). Accordingly, the Court should decline to compel responses to these overbroad Requests that are nothing more than fishing expeditions. *Doherty v. Comenity Capital Bank & Comenity Bank*, No. 16-cv-1321, 2017 WL 1885677, at *2 (S.D. Cal. May 9, 2017) ("Under the amended Rule 26, relevancy alone is no longer

1    sufficient to obtain discovery: the discovery requested must also be proportional to

2    the needs of the case."); *United States v. Baisden*, 881 F. Supp. 2d 1203, 1207 (E.D.

3    Cal. 2012) ("District courts need not condone the use of discovery to engage in

4    'fishing expeditions[s].'" (quoting *Rivera v. NIBCO,* 364 F.3d 1057, 1072 (9th Cir.

5    2004)).

6                                    *       *       *

7          Although this is an APA case, Defendants have nonetheless agreed to produce

8    documents in response to numerous Requests for Production. But Plaintiffs'

9    Requests go far beyond what could by any measure be considered necessary to the

10   adjudication of this case, let alone relevant or proportional to the needs of this case.

11   Thus, for the reasons discussed above, the Court should deny Plaintiffs' motion to

12   compel in its entirety.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

Dated:  May 24, 2019

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MAYER BROWN LLP
    Ori Lev
    Matthew H. Marmolejo
    Stephen M. Medlock

SOUTHERN POVERTY LAW
CENTER
    Melissa Crow
    Mary Bauer
    Sarah Rich
    Rebecca Cassler

CENTER FOR CONSTITUTIONAL
RIGHTS
    Baher Azmy
    Ghita Schwarz
    Angelo Guisado

AMERICAN IMMIGRATION
COUNCIL
    Karolina Walters


By _/s/ Matthew H. Marmolejo_


*Attorneys for Plaintiffs*

1

2   Dated: May 24, 2019                    Respectfully submitted,
                                           JOSEPH H. HUNT
3                                          Assistant Attorney General
                                           Civil Division
4
                                           WILLIAM C. PEACHEY
5                                          Director, Office of Immigration Litigation –
                                           District Court Section
6
                                           GISELA A. WESTWATER
7                                          Assistant Director
8
                                           KATHERINE J. SHINNERS
9                                          Senior Litigation Counsel

10                                         */s/ Alexander J. Halaska*
                                           ALEXANDER J. HALASKA
11                                         SAIRAH G. SAEED
                                           Trial Attorneys
12                                         U.S. Department of Justice
                                           Civil Division
13                                         Office of Immigration Litigation
                                           District Court Section
14                                         P.O. Box 868, Ben Franklin Station
                                           Washington, D.C. 20044
15                                         Tel: (202) 307-8704 | Fax: (202) 305-7000
                                           alexander.j.halaska@usdoj.gov
16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF COMPLIANCE WITH MEET-AND-CONFER**

**REQUIREMENT**

I certify that on April 30, 2019 the counsel for the parties meet and conferred via telephone to discuss Defendants' responses and objections to Plaintiffs' First and Second Sets of Requests for Production.  This conference occurred via telephone because counsel were located in New York, Los Angeles, the District of Columbia, and Georgia.  The parties were unable to resolve their dispute.

Dated:  May 24, 2019                                        MAYER BROWN LLP
                                                                        By  */s/ Matthew H. Marmolejo*
                                                                        *Attorney for Plaintiffs*

1

## CERTIFICATE OF SERVICE

2   I certify that I caused a copy of the foregoing document to be served on all

3 counsel via the Court's CM/ECF system.

4 Dated: May 24, 2019      MAYER BROWN LLP

5

6                By */s/ Matthew H. Marmolejo*

7                *Attorney for Plaintiffs*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## Appendix A

As discussed in the parties' accompanying Joint Motion for Determination of Discovery dispute, the following is the exact text of the disputed portions of Defendants' Second Amended and Supplemented Responses to Plaintiffs' First Set of Requests for Production of Documents, as amended and served on April 9, 2019.

\*   \*   \*

## Objections Which Apply To All Requests For Production

1.    Defendants object to these Requests (and all discovery requests) as facially improper in this Administrative Procedure Act ("APA") case. Defendants continue to maintain, as briefed in their pending Motion to Dismiss (ECF Nos. 192 & 238) and in their portion of the 26(f) report (ECF No. 239), and supplement (ECF No. 243), that Plaintiffs' claims should be decided on the administrative record without discovery. "[I]t is black-letter administrative law that in an APA case, a reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'" *Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013) (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)); *First Nat. Bank & Trust v. Dep't of Treasury*, 63 F.3d 894, 897 (9th Cir. 1995) ("Generally, judicial review of an agency decision is limited to the administrative record." (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). These Requests are proper only to the extent they seek information that is absolutely necessary "to ascertain the contours of the precise policy at issue," *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 530 F.3d 925, 928 (D.C. Cir. 2008), and only to the extent they request the information the agency had before it when it made its decision, *Hill Dermaceuticals, Inc.*, 709 F.3d at 47. Thus, Defendants continue to maintain that discovery of the type Plaintiffs seek is improper, and if this case is not dismissed in its entirety, it should be decided on the relevant administrative record. Defendants assert this objection to preserve it pending a ruling on their Motion to Dismiss. At this time, this objection serves as a limiting principle on the parameters

APPENDIX A

of Defendants' search for responsive documents, the contours of which are being contemporaneously negotiated with Plaintiffs; Defendants are not withholding any responsive documents collected as a result of that search from their production or privilege log on the basis of this objection alone.

2.     Moreover, any Request that seeks information relating to any DHS or CBP employee's subjective intentions or motivations, including the named Defendants', is facially improper. The Supreme Court has long recognized that "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government." *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 268 n. 18 (1977). In part for that reason, the Court has "made it abundantly clear" that APA review must focus only on the contemporaneous explanation of the agency decision" that the agency chooses to rest upon. *Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 549 (1978). "When a party challenges agency action as arbitrary and capricious the reasonableness of the agency's action is judged in accordance with its *stated* reasons." *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 156 F.3d 1279, 1279 (D.C. Cir. 1998) (emphasis added) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S 402 (1971)). Unless intent is an element of a party's claims or defenses—which, in this case, it is not—"the actual subjective motivation of agency decisionmakers is immaterial as a matter of law," *id.* at 1280, and therefore not properly discoverable. Accordingly, as set forth in their specific objections and responses, Defendants will not search for, produce, or log any documents in response to Plaintiffs' requests that concern solely what Plaintiffs allege to be the named Defendants' or DHS or CBP employees' subjective intentions or motivations that have no apparent connection to the existence or contours of a policy or practice claimed to be at issue. This objection also serves as a limiting principle on the parameters of Defendants' search for responsive documents,

APPENDIX A

the contours of which are being contemporaneously negotiated with Plaintiffs.

3. Defendants object to the use of the term "noncitizen," as this term is overly broad, vague and ambiguous. Specifically, the term "noncitizen" is a term proposed by Plaintiffs and not used by Defendants, and Plaintiffs do not provide a definition of what this term means. "Noncitizen" is not specific to the United States. That is, it is not limited to those individuals who are not citizens of the United States and could encompass individuals who are not citizens of other nations. Therefore, for the purpose of responding to these Requests, Defendants understand and construe the term "noncitizen," in the context of these discovery requests, to mean "alien," as defined in 8 U.S.C. § 1101(a)(3), and such construction is reflected in all of Defendants' responses and any corresponding production or privilege log.

4. Defendants object to the terms and phrases "seek asylum," "have a fear," "expressing a desire to seek asylum," "expressing a fear of returning to their countries of origin," and "present themselves," as these terms and phrases are vague and ambiguous, are not defined by Plaintiffs, and potentially can be construed as referring to actions or statements other than those described in 8 U.S.C. §§ 1158 and 1225(b). For purposes of responding to these RFPs, Defendants understand and construe these terms and phrases as referring to actions consistent with 8 U.S.C. §§ 1158 and 1225(b). Such construction is reflected in all of Defendants' responses and any corresponding production or privilege log; Defendants are not, however, withholding documents on the basis of this objection.

5. Defendants object to the phrase "near a port of entry on the U.S.-Mexico border" on the basis that this phrase is overbroad and seeks discovery beyond the scope of this lawsuit. For example, this phrase could be construed as referring to actions occurring between ports of entry, which are not relevant to any party's claims or defenses in this case. The claims in this action relate only to aliens who allegedly sought to enter the United States at one of four ports of entry (Laredo,

3

APPENDIX A

Otay Mesa, San Ysidro, and Hidalgo) but were not immediately allowed to do so. Defendants therefore object to the extent that any Request seeks information beyond the claims raised by individual Plaintiffs in this action because such discovery would also be disproportional to the needs of the case. Relatedly, such discovery would be unduly burdensome and disproportional to the needs of the case. Therefore, for purposes of their responses, Defendants will only search for and produce relevant and non-privileged documents relating to aliens arriving at "ports of entry" and Defendants' responses to each and every Request will be limited consistent with this objection.

6. Defendants object to each and every Request to the extent it requests or appears to request information related to all ports of entry along the U.S.-Mexico border as not proportional to the needs of the case, overly broad, and unduly burdensome. The Court's Order directs the parties to "prioritize discovery necessary for a motion for class certification[.]" ECF No. 196 at 2. "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.' In order to justify a departure from that rule, 'a class representative must be part of the class and possess the same interest and suffer the same injury as class members.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979), and *East Tex. Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 208, 216 (1974)). The putative class representatives allege that they applied for admission or attempted to apply for admission at only the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry. Thus, even assuming for argument's sake that the Court certifies the broadest possible class the representative parties might be legally permitted to represent, the individual plaintiffs still cannot challenge actions taken at other ports of entry, because those plaintiffs are not part of a class of individuals who applied for admission or attempted to apply for admission at such ports and do not "possess

4

APPENDIX A

the same interest and suffer the same injury as those individuals." *Wal-Mart Stores, Inc.*, 564 U.S. at 348-49. The challenges in this action are thus limited to policies issued and actions taken by the headquarters portions of the Office of Field Operations and actions that occurred at the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry, and any Requests that go beyond the scope of the specific claims and allegations at issue are legally improper and thus irrelevant.

Further, the burden of searching for, collecting, reviewing, and producing documents related to all ports of entry along the U.S.-Mexico border would be unduly burdensome and disproportional to the needs of the case. Plaintiffs allege a border-wide practice, policy, and/or procedure; discovery from the four ports of entry where the named Plaintiffs allegedly encountered such a practice, policy, and/or procedure (or a subset thereof), in addition to discovery from select higher-level officials and centralized non-custodial sources, satisfies the needs of the case, as any evidence of such a border-wide practice, policy, and/or procedure, if it exists, would necessarily be found in such locations. Any discovery from other ports of entry along the U.S.-Mexico border would thus be either irrelevant or duplicative and unduly burdensome.

In light of these issues, Defendants therefore understand and construe these Requests as seeking discovery limited to headquarters portions of the Office of Field Operations and the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry, and will search for and produce only relevant and non-privileged documents relating to aliens arriving or attempting to arrive at these four ports of entry, and documents from Office of Field Operations Headquarters. Defendants' responses to each and every Request, and their corresponding production and privilege log, will be limited consistent with this general objection. This objection also serves as a limiting principle on the parameters of Defendants' search for responsive documents, the contours of which are being contemporaneously negotiated with Plaintiffs.

APPENDIX A

7.     Defendants object to the RFPs to the extent that they seek: (a) attorney work product, trial preparation materials, or communications that are protected by the attorney-client privilege, (b) documents that are protected by the deliberative process privilege, the joint defense privilege, the common interest privilege, the law enforcement privilege (and/or as law enforcement sensitive), the official information privilege, the executive privilege, the investigatory files privilege, the self-critical analysis privilege, the *Machin* privilege; (c) documents that, if produced would violate the legitimate privacy interests and expectations of persons who are not party to this litigation; or (d) documents to which any other privilege applies.

Defendants will assert privileges specific to each request in their privilege log, on the production itself, or in their response to the request and Defendants agree to meet and confer regarding privilege objections to which Plaintiffs assert objections. Documents generated after the filing of Plaintiffs' initial Complaint in this action representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

8.     Defendants object to producing confidential, sensitive, or personally-identifying information prior to the entry of an order protecting that information from disclosure.

9.     Defendants object to each and every Request to the extent that it seeks information protected from disclosure by statutes, regulations, or directives regarding the protection of privacy, confidential information, or medical information, or under statutes and regulations prohibiting disclosure of information related to individual aliens—including, but not limited to, 8 U.S.C. §§ 1160(b)(5), (6); 1186a(c)(4); 1202(f); 1254a(c)(6), 1255a(c)(4), (5); 1304(b); 1367; 22 U.S.C. § 7105(c)(1)(C); 8 C.F.R. § 208.6; 210.2(e); 214.11(p); 214.14(e); 216.5(e)(3)(viii); 236.6; 244.16;

APPENDIX A

245a.2(t); § 245a.3(n); § 245a.21; § 1003.46; and 1208.6—many of which would subject Defendants and their employees to civil or criminal penalties or other sanctions in the event of unauthorized disclosure. Thus, Defendants will not produce responsive information that falls within this category without an express written waiver from the alien authorizing such disclosure, or a court order, as may be permitted in certain circumstances.

10.   Defendants object to the RFPs (and the definitions and instructions that accompany them) to the extent that they purport to impose obligations greater than those imposed by the Federal Rules of Civil Procedure, the Local Civil Rules of the U.S. District Court for the Southern District of California, or an order of this Court. While Defendants are not currently aware of any documents they are withholding on the basis of this objection, Defendants nonetheless assert this objection to preserve it.

11.   Defendants object to the RFPs to the extent they impose obligations beyond those agreed upon in the Stipulated ESI Protocol. Defendants will search agreed upon custodian and non-custodial sources agreed to by the parties in accordance with the terms of that protocol. If the parties cannot agree on sources and search parameters, Defendants will limit their search parameters to the sources and search terms and methods identified by Defendants. Defendants also agree to meet and confer with Plaintiffs regarding the possibility of direct collection of documents without using a forensic document collection and the application of search terms if appropriate under the circumstances.

## OBJECTIONS TO DEFINITIONS

1.   Defendants object to the definitions of the terms "YOU" and "YOUR" on the grounds that they are overbroad, vague, unduly burdensome, invade the attorney/client privilege or the attorney work-product doctrine, and violate the Privacy Act, 5 U.S.C. § 552a et seq. Unless otherwise specified, Defendants interpret

APPENDIX A

7

the definition of YOU or YOUR as referring to DHS, CBP, OFO, and individual DHS employees from whom DHS has the legal right to obtain upon demand information relevant to the claims and defenses in this case. Defendants do not interpret the definition of "YOU" or "YOUR" to include DHS component agencies or CBP subcomponents that are not parties to this case. Defendants' responses to each applicable Request, and their corresponding production and privilege log, will be limited consistent with this objection and the objections to the definitions of DHS and CBP. This objection also serves as a limiting principle on the parameters of Defendants' search for responsive documents, the contours of which are being contemporaneously negotiated with Plaintiffs.

2.     Defendants object to the definition of "CBP" as overbroad, unduly burdensome, and disproportional to the needs of the case. Plaintiffs' definition includes "any divisions, subdivisions, components or sections" of CBP and "CBP offices at ports of entry, including any divisions, subdivisions, components or sections therein[.]" Plaintiffs' definition also includes "any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP." First, Plaintiffs' definition is overly broad and disproportional to the needs of the case in that it would potentially include CBP components that are not relevant to the claims and defenses in this case, such as Air and Marine Operations and U.S. Border Patrol. Second, Plaintiffs' definition is also overly broad and disproportional to the needs of the case because this case challenges the alleged actions of CBP's Office of Field Operations at the headquarters level and at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry. Thus, requests for documents from other subcomponents of CBP that do not relate to those challenged actions reaches beyond what may be relevant to the claims and defenses in this case. Third, asking Defendants to search and produce documents from all components of CBP would be unduly burdensome and also

APPENDIX A

disproportional as CBP employs more than 60,000 people and many of these employees are not relevant to the claims or defenses in this case. See "About CBP," U.S. Customs and Border Protection (last modified April 18, 2019), https://www.cbp.gov/about.

Defendants also object to Plaintiffs' definition of "CBP" to the extent it includes all "private contractors hired by CBP" to the extent the work of those contractors is not relevant to this case and to the extent that Defendants do not have a legal right to obtain documents from them. As applicable, Defendants will construe Plaintiffs' requests as limited to documents over which Defendants exercise possession or custody or have a legal right to obtain, and from contractors whose work relates to the Office of Field Operations and San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.

Defendants do not interpret the definition of "CBP" to include all subcomponents of CBP or all employees of CBP. Defendants construe "CBP" to refer to the named Defendants in their official capacities, U.S. Customs and Border Protection and, where appropriate in the context, its headquarters and its Office of Field Operations, and the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.

Defendants' responses to each applicable Request, and their corresponding production and privilege log, will be limited consistent with this objection. This objection also serves as a limiting principle on the parameters of Defendants' search for responsive documents, the contours of which are being contemporaneously negotiated with Plaintiffs.

3.      Defendants object to the definition of "DHS" as overbroad, vague, unduly burdensome, and disproportional to the needs of the case. Specifically, Plaintiffs' definition includes "headquarters and offices" and "any divisions, subdivisions, components or sections" of DHS. The definition also includes "any

APPENDIX A

9

other DHS organizational structures." First, Plaintiffs' definition is overly broad and disproportional to the needs of the case in that it would include DHS components that are not relevant to the claims and defenses in this case. Second, Plaintiffs' definition is also overly broad and disproportional to the needs of the case because this case challenges the alleged actions of CBP's Office of Field Operations at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry. Third, asking Defendants to search for and produce documents from all components of DHS would be unduly burdensome as DHS employs more than 240,000 people and many of these employees are not relevant to the claims or defenses in this case. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs. Accordingly, Defendants do not interpret the definition of "DHS" to include all component agencies of DHS or all employees of DHS and its component agencies. Defendants construe "DHS" to refer to DHS components, offices, and personnel at issue in this case, including, as applicable, the DHS Office of Inspector General ("OIG").

Defendants' responses to each applicable Request, and their corresponding production and privilege log, will be limited consistent with this objection. This objection also serves as a limiting principle on the parameters of Defendants' search for responsive documents, the contours of which are being contemporaneously negotiated with Plaintiffs.

4.     Defendants object to the definition of "COMMUNICATION" on the grounds that it is vague, overly broad, and unduly burdensome because it is defined so broadly as to include oral and/or non-written communications, which are beyond the scope of Rule 34. *See* Fed. R. Civ. P. 34 (allowing requests to inspect or produce documents, electronically stored information, or tangible items). For the purposes of responding to these Requests, Defendants construe COMMUNICATION to refer to oral or non-written communications only to the degree that they have been

APPENDIX A

10

memorialized in tangible and reasonably accessible form, and such construction is reflected in all of Defendants' responses and in any corresponding production or privilege log.

5.     Defendants object to the definition of "DOCUMENT(S)" on the grounds that it is overly broad, unduly burdensome, and disproportional to the needs of this case because it is defined so broadly as to include oral and/or non-written communications, which are beyond the scope of Rule 34. *See* Fed. R. Civ. P. 34 (allowing requests to inspect or produce documents, electronically stored information, or tangible items). For purposes of this response, Defendants

construe DOCUMENT(S) to include only oral or non-written communications that have been memorialized in tangible form, , and such construction is reflected in all of Defendants' responses and any corresponding production or privilege log.

Defendants also object to the definition of "DOCUMENT(S)" to the extent it seeks documents "to which you otherwise have access." In the Ninth Circuit, the standard for possession, custody, or control is the legal right to obtain documents. *See 7-UP Bottling Co. v. Archer Daniels Midland Co.* (*In re Citric Acid Litig.*), 191 F.3d 1090, 1107 (9th Cir. 1999). Defendants are only under the obligation to produce relevant, non-privileged information, to the extent that it exists, if individuals, operating in their official governmental capacity, have responsive, non-privileged information that is under the possession, custody or control of the named Defendants or that the named Defendants have the legal right to obtain on demand. *Id.* Therefore, the definition is overly broad and an incorrect statement of the standard. For purposes of these Responses, Defendants construe DOCUMENT(S) to include those documents within their possession, custody, and control, and such construction is reflected in all of Defendants' responses and any corresponding production or privilege log.

6.     Defendants object to the definition of "ALL DOCUMENTS" on the

11

APPENDIX A

grounds that it is overly broad, unduly burdensome, and disproportional to the needs of this case because it is defined so broadly as to include documents in the possession, custody or control of "affiliates, partners, agents, consultants, [] advisors, attorneys, investigators and representatives." In the Ninth Circuit, the standard for possession, custody, or control is the legal right to obtain documents. *See 7-UP Bottling Co. v. Archer Daniels Midland Co. (In re Citric Acid Litig.)*, 191 F.3d 1090, 1107 (9th Cir. 1999). Defendants are only under the obligation to produce relevant, non-privileged information, to the extent that it exists, if individuals, operating in their official governmental capacity, have responsive, non-privileged information that is under the possession, custody or control of the named Defendants or that the named Defendants have the legal right to obtain on demand. *Id.* Defendants do not have the right to obtain documents from all "affiliates, partners, agents, consultants, [] advisors, attorneys, investigators and representatives."

Defendants also object to the definition of "ALL DOCUMENTS" on the grounds that it is overly broad and unduly burdensome because it is defined so broadly as to include documents not in Defendants' possession, custody or control but "to which [Defendant] otherwise ha[s] access." In the Ninth Circuit, the standard for possession, custody, or control is the legal right to obtain documents. *See 7-UP Bottling Co. v. Archer Daniels Midland Co. (In re Citric Acid Litig.)*, 191 F.3d 1090, 1107 (9th Cir. 1999). Defendants are only under the obligation to produce relevant, non-privileged information, to the extent that it exists, if individuals, operating in their official governmental capacity, have responsive, non-privileged information that is under the possession, custody or control of the named Defendants or that the named Defendants have the legal right to obtain on demand. *Id.* Defendants do not have the legal right to obtain all documents to which it otherwise has "access."

For purposes of these responses, Defendants will construe the requests as seeking only documents over which Defendants exercise possession or custody, or

APPENDIX A

12

have the legal right to obtain, and such construction is reflected in all of Defendants' responses and any corresponding production or privilege log.

7.     Defendants object to the definition of "IDENTIFY" and "IDENTIFIED" used with the respect to a document to the extent it creates an obligation that does not exist under Federal Rules of Civil Procedure 26 or 34, by requesting that Defendants reveal information that is privileged or otherwise protected from disclosure.

8.     Defendants object to the definition of "RELATING TO" insofar as it purports to define "relate," "reflect," "respect," "regard," or "refer" to include "or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed in the request," as the use of any such terms are not proportional to the needs of the case, are overly broad, oppressive, and the burden of a request using any such term would outweigh its benefit. To ask Defendants to search for and produce documents with only the most tangential connection to responsive topics would be unduly burdensome because it would encompass discovery that is not relevant to the claims and defenses in this case.

Defendants thus place a limiting construction on "relating to" such that they interpret the term to not seek only documents that are independently and directly responsive and relevant to the claims and defenses in this case, and such construction is reflected in all of Defendants' responses and any corresponding production or privilege log. While it is difficult to identify in advance every type of document that Defendants may withhold on the basis of this objection, Defendants provide the following examples of the types of documents that they maintain are improperly encompassed by Plaintiffs' overbroad definition.

First, documents that "relate[s]" in some "indirect" manner to a responsive topic are not necessarily independently responsive. Accordingly, for example, Defendants reserve the right to withhold nonresponsive attachments that are members

APPENDIX A

13

of an email family that also contains responsive attachments. Second, documents and forms that relate to a specific, individual alien's asylum application may "reflect" in some indirect manner agency procedures responsive to RFP 1, without actually discussing those agency procedures would not provide meaningful information about the application of those agency procedures. Defendants reserve the right to withhold such documents even after the entry of a confidentiality protective order, particularly in light of the sensitive nature of such documents.

9.    Defendants object to the definition of "including" and "including but not limited to," as the use of those terms is overly broad, vague and confusing. Defendants' concern with this definition is that it purports to require Defendants to produce categories of documents that are not expressly listed in the Requests, and which Defendants are not aware that Plaintiffs consider responsive. While Defendants are not currently aware of any documents they are withholding on the basis of this objection, Defendants nonetheless assert this objection to preserve it.

10.    Defendants object to the definitions of "and" and "or" insofar as they purport to define the terms as to be inclusive of each other "where dual construction will serve to bring within the scope of these requests any DOCUMENT which would otherwise not be brought within its scope," as overly broad, not proportional to the needs of the case, and burdensome. Defendants additionally object to the definitions of "any" and "all" insofar as they purport to define the terms to be inclusive of each other as overly broad, vague, and confusing.

First, the definitions of "and" "or" "any" and "all" may bring into the scope of discovery information that may not be relevant to the claims or defenses in this case. Further, searching for documents that have the broader reading of these varying words would be unduly burdensome.

Defendants thus place a limiting construction on these terms such that they do not seek documents other than those that are independently responsive and relevant to

APPENDIX A

the claims and defenses in this case, and such construction is reflected in all of Defendants' responses and any corresponding production or privilege log.

## OBJECTIONS TO INSTRUCTIONS:

1.     Defendants object to Instruction No. 1 relating to production or production format to the extent that it conflicts with provisions in the agreed-upon terms of the Stipulated ESI Protocol.

2.     Defendants object to Instruction No. 2 to the extent that the requirements listed exceed the requirements of Federal Rule of Civil Procedure 26(b)(5)(A) and/or the agreed-upon terms of the Stipulated ESI Protocol.

3.     Defendants object to Instruction Nos. 2 and 3 to the extent that they conflict in any way with the Ninth Circuit's standard for possession, custody, or control which defines control as "the legal right to obtain upon demand." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999).

4.     Defendants object to Instruction No. 3 as unduly burdensome insofar as it purports to require a document-by-document recounting, including, as completely as possible each author, preparer, and recipient of the Document; a complete description of the type, title, and subject matter of the Document; and the date on which and manner in which the Document was created, lost, discarded, destroyed, or otherwise disposed of, for every responsive Document, without regard to the date on which it was created, the date on which it was lost, discarded, destroyed, or otherwise disposed of, or whether litigation involving the substance of the Document was reasonably foreseeable at that time it was lost, discarded, destroyed or otherwise disposed of. Defendants construe such instruction as seeking such information only with regards to documents "lost, discarded, destroyed, or otherwise disposed of" only after July 12, 2017, the date that this lawsuit was filed.

## REQUEST FOR PRODUCTION NO. 1:

All documents relating to any and all criteria or standards that CBP personnel

APPENDIX A

15

use or have used to determine whether noncitizens arriving at or near a port of entry on the U.S.-Mexico border are seeking asylum or have a fear of returning to their countries of origin.

**Objections to Request for Production No. 1:**

Defendants object to RFP 1 in that it is overly broad, disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 1 purports to require Defendants to produce "all documents" "relating to" "any and all criteria or standards" that any unspecified "CBP personnel" uses or has used. As outlined in the objections to Plaintiffs' definitions above, the definition of CBP is overly broad, disproportional to the needs of the case, and unduly burdensome. Defendants construe this request as requiring a search for current, relevant, and non-privileged documents that provide guidance on the processing of arriving aliens who express a fear of return , consistent with 8 U.S.C. §§ 1158 and 1225(b). Defendants also object to this request as vague and ambiguous because it is not clear what is meant by "any and all criteria or standards."

Defendants also object to RFP 1 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-10 and Objections to Definitions Nos. 2, 5-6, 8, and 10; and, Objections to Instructions No. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response to Request for Production No. 1:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources.

APPENDIX A

Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

**REQUEST FOR PRODUCTION NO. 2:**

All documents relating to any and all policies, procedures, recommendations or guidelines on the processing of noncitizens arriving at or near a port of entry on the U.S.-Mexico border who express a desire to seek asylum or express a fear of returning to their countries of origin, including:

    (a)  Scheduling appointments for such individuals to present themselves at a port of entry;

    (b)  Use of a ticketing or metering system to process such individuals;

    (c)  Requiring documentation before initiating processing of such individuals;

    (d)  Use of shelters in Mexico to house such individuals so that they can be processed on later dates;

    (e)  Directing such individuals away from one or more ports of entry;

    (f)  Separating such individuals from any family members who have traveled with them to the port of entry;

    (g)  Requiring or conducting pre-screening of such individuals by local, state or federal Mexican agencies or private security organizations;

    (h)  When to apply Section 235(b)(2)(C) of the Immigration and Nationality Act ("INA") regarding treatment of noncitizens from

APPENDIX A

contiguous territories;

(i) When to complete Form I-275, Withdrawal of Application for Admission/Consular Notification;

(j) When to refuse to process such individuals;

(k) When to complete Form I-867, Record of Sworn Statement in Proceedings under INA §235(b)(1), where noncitizens have expressed a fear of returning to their countries of origin; or

(l) When to issue Form I-860, Notice and Order of Expedited Removal, where noncitizens have expressed a desire to seek asylum or expressed a fear of returning to their countries of origin.

**Objections to Request for Production No. 2:**

Defendants object to RFP 2 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 2 purports to require Defendants to produce "all documents" "relating to" (two already objectionably overbroad and vague terms) "policies, procedures, recommendations or guidelines" on the "processing" (an undefined term) of "noncitizens ... who express a desire to seek asylum or express a fear ...." Such an expansive request is not only disproportionate and burdensome but also overbroad in that it seeks documents irrelevant to any claim or defense in this case.

Defendants construe the terms "ticketing" or "metering system" as stated by Plaintiffs as vague and ambiguous. Defendants construe these terms as they are commonly used by Defendants in the course of business.

Defendants object to the term "processing," which Plaintiffs do not define, as vague and overly broad. Defendants object to this request on the ground that it seeks discovery of information that is beyond the scope of this lawsuit and not proportional to the needs of this case. *See e.g.*, Fed. R. Civ. P. 26(b)(1). For example, processing

18

APPENDIX A

1   may encompass actions such as a secondary inspection for agricultural or customs

2   purposes. *See* U.S. DHS PRIVACY IMPACT ASSESSMENT FOR THE TECS SYSTEM: CBP

3   PRIMARY AND SECONDARY PROCESSING at 5 (December 22, 2010),

4   https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-tecs-

5   december2010_0.pdf. Activities like these that are included in the processing of an

6   alien are outside the scope of this lawsuit. Defendants construe the term "processing"

7   here to refer only to those actions outlined in (a)-(d), (f)-(g) and (i)-(l) above.

8       Defendants object to paragraphs (c), (h), (i), (j), (k), and (l) to the extent that

9   they seek information nonspecific to those who may seek protection under 8 U.S.C.

10  § 1158 or express a fear pursuant to 8 U.S.C. § 1225(b).

11      Defendants additionally object to paragraph (h) in its entirety as not relevant

12  to any party's claims or defenses and as disproportional to the needs of this case

13  because no named Plaintiff alleges that he or she was processed for return to a

14  contiguous country pursuant to Defendants' statutory authority at 8 U.S.C. §

15  1225(b)(2)(C). This category of information has no bearing on the claims at issue in

16  this action and therefore is overbroad and seeks the discovery of information that is

17  beyond the scope of this lawsuit, is not relevant to any party's claim or defense, and

18  is not proportional to the needs of this case.

19      Defendants object to this request as a compound request which seeks

20  information through subparts which are not fairly encompassed by the general

21  request.

22      Defendants also object to RFP 2 in accordance with Objections Which Apply

23  to All RFPs Nos. 1, 3-10; Objections to Definitions Nos. 5-6, 8-10; and, Objections

24  to Instructions No. 1, 2, and 4.

25      Consistent with these objections, Defendants construe this request as limited

26  to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of

27  entry.

28

APPENDIX A

19

**Response to Request for Production No. 2:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

**REQUEST FOR PRODUCTION NO. 3:**

All documents relating to legal or other agreements, policies or procedures governing the collaboration or interaction of CBP personnel with local, state or federal Mexican government officials regarding the arrival or processing of noncitizens expressing a desire to seek asylum or expressing a fear of returning to their countries of origin at or near ports of entry on the U.S.-Mexico border.

**Objections to Request for Production No. 3:**

Defendants object to RFP 3 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 3 purports to require Defendants to produce "all documents" "relating to" "legal or other agreements, policies or procedures" governing the collaboration or interaction of unlimited and unspecified "CBP personnel" with all levels of Mexican officials. Such an expansive request is not only disproportionate and burdensome but also overbroad in that it seeks documents

APPENDIX A

1  irrelevant to any claim or defense in this case.

2      Defendants also object to this request on the basis that "legal or other

3  agreements" is vague and ambiguous. Specifically, it is not clear what is meant by

4  "legal agreements," as Plaintiffs do not provide any statute or other reference to

5  determine what is intended by this term. Moreover, it is unclear what the term "other

6  agreements" is intended to encompass.

7      Defendants further object to the terms "collaboration" and "interaction," as

8  they could cover even the most informal interactions. Defendants will read these

9  terms to cover only formal, written policies, procedures, binding Agreements or non-

10  binding arrangements within the possession, custody or control of Defendants,

11  which specifically relate to individuals who, at a port of entry, seek protection

12  consistent with 8 U.S.C. §§ 1158 and 1225(b).

13      In addition, Defendants object to this request on the ground that it seeks

14  discovery of information that is beyond the scope of this lawsuit and not proportional

15  to the needs of this case. *See e.g.*, Fed. R. Civ. P. 26(b)(1). "Processing" may

16  encompass actions such as such as a secondary inspection for agricultural or customs

17  purposes. *See* U.S. DHS PRIVACY IMPACT ASSESSMENT FOR THE TECS SYSTEM: CBP

18  PRIMARY AND SECONDARY PROCESSING at 5 (December 22, 2010),

19  https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-tecs-

20  december2010_0.pdf. Activities like these that may be included in the processing of

21  an alien are outside the scope of this lawsuit.

22      Defendants also object to RFP 3 in accordance with Objections Which Apply

23  to All RFPs Nos. 1, 3-10; Objections to Definitions Nos. 2, 5-6, 8, and 10; and,

24  Objections to Instructions No. 1-4.

25      Consistent with these objections, Defendants construe this request as limited

26  to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of

27  entry.

28

APPENDIX A

21

**Response to Request for Production No. 3:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

**REQUEST FOR PRODUCTION NO. 4:**

All documents relating to legal or other agreements, policies or procedures governing the collaboration or interaction of CBP personnel with private security organizations regarding the arrival or processing of noncitizens expressing a desire to seek asylum or expressing a fear of returning to their countries of origin at or near ports of entry on the U.S.-Mexico border.

**Objections to Request for Production No. 4:**

Defendants object to RFP 4 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 4 purports to require Defendants to produce "all documents" "relating to" "legal or other agreements, policies or procedures" governing the "collaboration or interaction" of unlimited and unspecified "CBP personnel" with all private security organizations. Such an expansive request is not only disproportionate and burdensome but also overbroad in that it seeks documents

APPENDIX A

irrelevant to any claim or defense in this case.

Defendants further object to this request on the basis that "legal or other agreements" is vague and ambiguous. Specifically, it is not clear what is meant by "legal agreements," as Plaintiffs do not provide any statute or other reference to determine what is intended by this term. Moreover, it is unclear what the term "other agreements" is intended to encompass.

Defendants further object to the terms "collaboration" and "interaction," as they could cover even the most informal interactions. Defendants will read these terms to cover only formal, written policies, procedures, binding agreements or non-binding arrangements within the possession, custody and control of Defendants, which specifically relate to arriving aliens who, at a port of entry, express an intention to apply for asylum, as defined at 8 U.S.C. § 1158 or express a fear of persecution in their home country as provided under § 1225(b).

Defendants further object to this request on the basis that "private security organizations" is vague and ambiguous.

In addition, Defendants object to this request on the ground that it seeks discovery of information that is beyond the scope of this lawsuit and not proportional to the needs of this case. *See e.g.*, Fed. R. Civ. P. 26(b)(1). For example, "processing" may encompass actions such as a secondary inspection for agricultural or customs purposes. *See* U.S. DHS PRIVACY IMPACT ASSESSMENT FOR THE TECS SYSTEM: CBP PRIMARY AND SECONDARY PROCESSING at 5 (December 22, 2010), https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-tecs-december2010_0.pdf. Activities like these that may be included in the processing of an alien are outside the scope of this lawsuit.

Defendants also object to RFP 4 in accordance with Objections Which Apply to All RFPs Nos. 1, and 3-10; Objections to Definitions Nos. 2, 5-6, 8 and 10; and, Objections to Instructions No. 1-4.

APPENDIX A

23

1    Consistent with these objections, Defendants construe this request as limited

2    to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of

3    entry.

4    **Response to Request for Production No. 4:**

5    In accordance with Defendants' objections, and in light of the discovery

6    request being disproportional to the needs of the case considering that the burden

7    and expense of the requested discovery outweighs its likely benefit, Defendants will

8    limit their searches to a limited number of custodial and non-custodial sources.

9    Defendants will continue to confer with Plaintiffs in identifying reasonable custodial

10   and non-custodial sources and document identification protocols, but in the event

11   the parties cannot agree, Defendants will limit their searches to the sources identified

12   in Defendants' portion of the supplement to the parties' joint 26(f) report from which

13   Defendants will produce all non-privileged documents responsive to this request,

14   dating from January 1, 2016, until the date of collection that can be located after a

15   reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the

16   documents on a rolling basis.

17   **REQUEST FOR PRODUCTION NO. 5:**

18   All documents relating to training materials or other records used to instruct,

19   guide or otherwise prepare CBP personnel to process noncitizens arriving at or near

20   ports of entry on the U.S.-Mexico border, who express a desire to seek asylum or

21   express a fear of returning to their countries or origin.

22   **Objections to Request for Production No. 5:**

23   Defendants object to RFP 5 in that it is disproportionate to the needs of the

24   case, and the burden and expense of the proposed discovery clearly outweighs the

25   likely benefit. For example, RFP No. 5 purports to require Defendants to produce

26   "all documents" "relating to" training materials or unspecified "other records" used

27   to "instruct, guide or otherwise prepare" unspecified CBP personnel. Such an

28

APPENDIX A

24

expansive request is not only disproportionate and burdensome but also overbroad in that it seeks documents irrelevant to any claim or defense in this case.

In addition, Defendants object to this request on the ground that it seeks discovery of information that is beyond the scope of this lawsuit and not proportional to the needs of this case. *See e.g.*, Fed. R. Civ. P. 26(b)(1). For example, "processing" may encompass actions such as a secondary inspection for agricultural or customs purposes. *See* U.S. DHS PRIVACY IMPACT ASSESSMENT FOR THE TECS SYSTEM: CBP PRIMARY AND SECONDARY PROCESSING at 5 (December 22, 2010), https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-tecs-december2010_0.pdf. Activities like these that may be included in the processing of an alien are outside the scope of this lawsuit.

Defendants also object to RFP 5 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-10; Objections to Definitions Nos. 2, 5-6, 8, and 10; and, Objections to Instructions No. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response to Request for Production No. 5:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request,

APPENDIX A

dating from January 1, 2016, until the date of collection that can be located after a reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

**REQUEST FOR PRODUCTION NO. 6:**

All documents relating to communications within or among CBP, DHS or any of their agents, agencies, subagencies or offices, relating to the processing of noncitizens arriving at or near ports of entry on the U.S.- Mexico border who express a desire to seek asylum or express a fear of returning to their countries of origin, including communications relating to:

    (a)   Scheduling appointments for such individuals to present themselves at a port of entry;

    (b)   Use of a ticketing or metering system to process such individuals;

    (c)   Requiring documentation before initiating processing of such individuals;

    (d)   Use of shelters in Mexico to house such individuals so that they can be processed on later dates;

    (e)   Directing such individuals away from one or more ports of entry;

    (f)   Separating such individuals from any family members who have traveled with them to the port of entry;

    (g)   Requiring or conducting pre-screening of such individuals by local, state or federal Mexican agencies or private security organizations;

    (h)   When to apply Section 235(b)(2)(C) of the INA regarding treatment of noncitizens from contiguous territories;

    (i)   When to complete Form I-275,Withdrawl of Application for Admission/Consular Notification;

    (j)   When to refuse to process such individuals;

    (k)   When to complete Form I-867, Record of Sworn Statement in

APPENDIX A

Proceedings under INA §235(b)(1), where noncitizens have expressed a desire to seek asylum or expressed a fear of returning to their countries of origin; or

(l)   When to issue Form I-860, Notice and Order of Expedited Removal, where noncitizens have expressed a desire to seek asylum or expressed a fear of returning to their countries or origin.

**REQUEST FOR PRODUCTION NO. 7:**

All documents relating to communications to or from CBP or DHS relating to the processing of noncitizens arriving at or near ports of entry on the U.S.-Mexico border who express a desire to seek asylum or express a fear of returning to their countries or origin, including communications relating to:

(a)   Scheduling appointments for such individuals to present themselves at a port of entry;

(b)   Use of a ticketing or metering system to process such individuals;

(c)   Requiring documentation before initiating processing of such individuals;

(d)   Use of shelters in Mexico to house such individuals so that they can be processed on later dates;

(e)   Directing such individuals away from one or more ports of entry;

(f)   Separating such individuals from any family members who have traveled with them to the port of entry;

(g)   Requiring or conducting pre-screening of such individuals by local, state or federal Mexican agencies or private security organizations;

(h)   When to apply Section 235(b)(2)(C) of the INA regarding treatment of noncitizens from contiguous territories;

(i)   When to complete Form 1-275, Withdrawal of Application for Admission/Consular Notification;

APPENDIX A

(j)     When to refuse to process such individuals;

(k)     When to complete Form 1-867, Record of Sworn Statement in Proceedings under INA §235(b)(1), where noncitizens have expressed a desire to seek asylum or expressed a fear of returning to their countries or origin; or

(l)     When to issue a Form 1-860, Notice and Order of Expedited Removal, where noncitizens have expressed a desire to seek asylum or expressed a fear of return to their countries of origin.

**Objections to Request for Production No. 7:**

Defendants object to RFP 7 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 7 purports to require Defendants to produce "all documents" "relating to" "communications" (three already objectionably overbroad and vague terms) between employees of very large agencies "relating to" the "processing" (an undefined term) of certain arriving aliens. Such an expansive request is not only disproportionate and burdensome but also overbroad in that it seeks documents irrelevant to any claim or defense in this case.

Defendants object to the extent that "communications to or from CBP or DHS" is intended to include all communications between individual CBP officers, agents, and personnel with their counterparts in other DHS components, in relation to the transfer, parole, release, or detention of a particular alien. Such information has no bearing on the claims at issue in this action and therefore is overbroad and seeks the discovery of information that is beyond the scope of this lawsuit, is not relevant to any party's claim or defense, and is not proportional to the needs of this case.

Defendants object to this Request to the extent that 101 documents relating to communications...to...CBP or DHS..." is intended to include all communications between Mexican authorities and CBP and/or DHS on the grounds that it seeks the

APPENDIX A

discovery of information that is beyond the scope of this lawsuit, not relevant to any party's claim or defense, and is not proportional to the needs of the case.

Defendants construe the terms "ticketing" or "metering system" as stated by Plaintiffs as vague and ambiguous. Defendants construe these terms as they are commonly used by Defendants in the course of business.

Defendants object to the term "processing," which Plaintiffs do not define, as vague and overly broad. Plaintiffs' definition of processing may encompass actions such as a secondary inspection for agricultural or customs purposes. *See U.S.* DHS PRIVACY IMPACT ASSESSMENT FOR THE TECS SYSTEM: CBP PRIMARY AND SECONDARY PROCESSING at 5 (December 22, 2010), https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-tecs-december2010 0.pdf. Activities like these that may be included in the processing of an alien are outside the scope of this lawsuit. Defendants construe the term "processing" here to refer only to those actions outlined in (a)-(d), (f)-(g) and (i)-(1) above.

Defendants objects to paragraphs (c), (h), (i), (j), (k), and (1) to the extent that they seek information nonspecific to those who may seek protection under 8 U.S.C. § 1158 or express a fear pursuant to 8 U.S.C. § 1225(b).

Defendants additionally object to paragraph (h) in its entirety as not relevant to any party's claims or defenses and as disproportional to the needs of this case because no named Plaintiff alleges that he or she was processed for return to a contiguous country pursuant to Defendants' statutory authority at 8 U.S.C. § 1225(b)(2)(C). This category of information has no bearing on the claims at issue in this action and therefore is overbroad and seeks the discovery of information that is beyond the scope of this lawsuit, is not relevant to any party's claim or defense, and is not proportional to the needs of this case.

Defendants object to this request as a compound request which seeks

APPENDIX A

information through subparts which are not fairly encompassed by the general request.

Defendants object to this request as a compound request which seeks information through subparts which are not fairly encompassed by the general request.

Defendants also object to RFP 7 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-10; Objections to Definitions Nos. 2-6, and 8-10; and, Objections to Instructions No. 1-4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response to Request for Production No. 7:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

**REQUEST FOR PRODUCTION NO. 8:**

All documents relating to any statistics, data or other numerical figures, whether estimates or actual values, representing the number of noncitizens who have

APPENDIX A

30

presented themselves to CBP personnel at or near a port of entry on the U.S.-Mexico border and expressed a desire to seek asylum or a fear of returning to their countries of origin.

**Objections to Request for Production No. 8:**

Defendants object to RFP 8 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 8 purports to require Defendants to produce "all documents" "relating to" "any statistics, data or other numerical figures." Such an expansive request is not only disproportionate and burdensome but also overbroad in that it seeks documents irrelevant to any claim or defense in this case.

Defendants object to the term "other numerical figures" as vague and undefined. Defendants construe this request as seeking statistics and data, as those terms are commonly used.

Defendants object to the term "actual values," particularly as opposed to "estimates," as vague and ambiguous. Defendants construe this request as seeking statistics and data, as those terms are commonly used.

Defendants object to the term "presented themselves" as vague and ambiguous, particularly for purposes of maintaining statistics. Defendants construe this request as seeking statistics and data related to aliens who were inspected by CBP at the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry and sought asylum or expressed a fear of return as those terms are commonly understood under 8 U.S.C. §§ 1158 and 1225(b).

Defendants also object to RFP 8 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-7, and 10; Objections to Definitions Nos. 2, 5-6, 8, and 10; and, Objections to Instructions No. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of

APPENDIX A

31

entry.

**Response to Request for Production No. 8:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

**REQUEST FOR PRODUCTION NO. 9:**

All documents relating to any statistics, data or other numerical figures, whether estimates or actual values, representing the number of noncitizens who have presented themselves to CBP personnel at or near a port of entry on the U.S.-Mexico border and expressed a desire to seek asylum or a fear of returning to their countries or origin, and who were then turned away at or near the port of entry by CBP personnel who refuse to process them.

**Objections to Request for Production No. 9:**

Defendants object to RFP 9 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 9 purports to require Defendants to produce "all documents" "relating to" "any statistics, data or other numerical figures." Such an expansive request is not only disproportionate and burdensome but also

APPENDIX A

32

overbroad in that it seeks documents irrelevant to any claim or defense in this case.

Defendants object to the term "other numerical figures" as vague and undefined. Defendants construe this request as seeking statistics and data, as those terms are commonly used.

Defendants object to the term "actual values," particularly as opposed to "estimates," as vague and ambiguous. Defendants construe this request as seeking statistics and data, as those terms are commonly used.

Defendants object to the term "presented themselves" as vague and ambiguous, particularly for purposes of maintaining statistics. Defendants construe this request as seeking statistics and data related to aliens who arrived at the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry and sought asylum or expressed a fear of return, as those terms are commonly understood under 8 U.S.C. §§ 1158 and 1225(b), in line with the objections herein.

Defendants also object to the terms "turned away" or "refused to process" as vague and ambiguous. For purposes of responding to this Request, Defendants will construe the Request to seek statistics and data, to the extent they exist, representing the number of individuals who sought to enter a port of entry but were not immediately allowed to do so, although the individual was an arriving alien at a U.S. port of entry. Defendants also object to RFP 9 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-7, and 10; Objections to Definitions Nos. 2, 56, 8, and 10; and, Objections to Instructions No. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response to Request for Production No. 9:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden

APPENDIX A

1   and expense of the requested discovery outweighs its likely benefit, Defendants will

2   limit their searches to a limited number of custodial and non-custodial sources.

3   Defendants will continue to confer with Plaintiffs in identifying reasonable custodial

4   and non-custodial sources and document identification protocols, but in the event

5   the parties cannot agree, Defendants will limit their searches to the sources identified

6   in Defendants' portion of the supplement to the parties' joint 26(f) report from which

7   Defendants will produce all non-privileged documents responsive to this request,

8   dating from January 1, 2016, until the date of collection that can be located after a

9   reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the

10  documents on a rolling basis.

11  **REQUEST FOR PRODUCTION NO. 10:**

12      All documents relating to any statistics, data or other numerical figures,

13  whether estimates or actual values, representing the numbers of noncitizens who

14  have presented themselves to CBP personnel at or near a port of entry on the U.S.-

15  Mexico border and expressed a desire to seek asylum or a fear of returning to their

16  countries of origin, and whose access to the asylum process was then delayed by

17  CBP personnel or subject to requirements or conditions not set forth in the INA or

18  other implementing regulations.

19      **Objections to Request for Production No. 10:**

20      Defendants object to RFP 10 in that it is disproportionate to the needs of the

21  case, and the burden and expense of the proposed discovery clearly outweighs the

22  likely benefit. For example, RFP No. 10 purports to require Defendants to produce

23  "all documents" "relating to" "any statistics, data or other numerical figures." Such

24  an expansive request is not only disproportionate and burdensome but also

25  overbroad in that it seeks documents irrelevant to any claim or defense in this case.

26      Defendants object to the term "other numerical figures" as vague and

27  undefined. Defendants construe this request as seeking statistics and data, as those

28

APPENDIX A

34

terms are commonly used. Defendants will search for statistics and data related to aliens who arrived at a port of entry.

Defendants objects to the term "actual values," particularly as opposed to "estimates," as vague and ambiguous. Defendants construe this request as seeking statistics and data, as those terms are commonly used.

Defendants objects to the term "presented themselves" as vague and ambiguous, particularly for purposes of maintaining statistics. Defendants construe this request, in line with the objections herein, as seeking statistics and data related to aliens who arrived at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry and sought asylum or expressed a fear of return as those terms are commonly understood under 8 U.S.C. §§ 1158 and 1225(b).

Defendants objects to the term "delayed" as vague and ambiguous, particularly for purposes of maintaining statistics. Defendants construe this request as seeking statistics and data related to metering and ticketing, as those terms are commonly used by Defendants in the course of business. Defendants also object to RFP 10 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-7, and 10; Objections to Definitions Nos. 2, 5-6, 8, and 10; and, Objections to Instructions No. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response to Request for Production No. 10:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial

APPENDIX A

1  and non-custodial sources and document identification protocols, but in the event
2  the parties cannot agree, Defendants will limit their searches to the sources identified
3  in Defendants' portion of the supplement to the parties' joint 26(f) report from which
4  Defendants will produce all non-privileged documents responsive to this request,
5  dating from January 1, 2016, until the date of collection that can be located after a
6  reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the
7  documents on a rolling basis.

8  **REQUEST FOR PRODUCTION NO. 11:**

9  All documents relating to any statistics, data or other numerical figures,
10  whether estimates or actual values, representing the number of noncitizens who have
11  presented themselves to CBP personnel at or near a port of entry on the U.S.-Mexico
12  border and expressed a desire to seek asylum or a fear of returning to their countries
13  of origin, and who were then put into removal proceedings pursuant to 8 U.S.C.
14  §1229a or referred for credible fear interviews pursuant to 8 U.S.C. §[1225](b).

15  **Objections to Request for Production No. 11:**

16  Defendants object to RFP 11 in that it is disproportionate to the needs of the
17  case, and the burden and expense of the proposed discovery clearly outweighs the
18  likely benefit. For example, RFP No. 11 purports to require Defendants to produce
19  "all documents" "relating to" "any statistics, data or other numerical figures." Such
20  an expansive request is not only disproportionate and burdensome but also
21  overbroad in that it seeks documents irrelevant to any claim or defense in this case.

22  Defendants object to the term "other numerical figures" as vague and
23  undefined. Defendants construe this request as seeking statistics and data, as those
24  terms are commonly used.

25  Defendants object to the term "actual values," particularly as opposed to
26  "estimates," as vague and ambiguous. Defendants construe this request as seeking
27  statistics and data, as those terms are commonly used.

28

APPENDIX A

Defendants object to the term "presented themselves" as vague and ambiguous, particularly for purposes of maintaining statistics. Defendants construe this request, in line with the objections herein, as seeking statistics and data related to aliens who arrived at the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry and sought asylum or expressed a fear of return as those terms are commonly understood under 8 U.S.C. §§ 1158 and 1225(b).

To the extent that Plaintiffs are seeking information relevant to the claims and defenses in this case, regarding the number of aliens processed for expedited removal at ports of entry on the southwest border of the United States and who express a fear of return, this information is publicly available. *See* Defs' Mot. to Dismiss, ECF No. 18 at 10-11; *See also* CBP, "Claims of Fear: Southwest Border and Claims of Credible Fear Total Apprehensions/Inadmissibles (FY2017-2018)" *available at* https://www.cbp.govinewsroom/stats/sw-border-migration/claims-fear (last visited May 8, 2019); CBP, "Southwest Border Inadmissibles by Field Office FY2018," *available at* https://www.cbp.govinewsroom/stats/sw-border-migration/claims-fear (last visited April 8, 2019). Accordingly, at least some of this discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(2)(C)(i).

Defendants also object to RFP 11 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-7, and 10; Objections to Definitions Nos. 2, 5-6, 8, and 10; and, Objections to Instructions No. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response to Request for Production No. 11:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden

1   and expense of the requested discovery outweighs its likely benefit, Defendants will

2   limit their searches to a limited number of custodial and non-custodial sources.

3   Defendants will continue to confer with Plaintiffs in identifying reasonable custodial

4   and non-custodial sources and document identification protocols, but in the event

5   the parties cannot agree, Defendants will limit their searches to the sources identified

6   in Defendants' portion of the supplement to the parties' joint 26(f) report from which

7   Defendants will produce all non-privileged documents responsive to this request,

8   dating from January 1, 2016, until the date of collection that can be located after a

9   reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the

10   documents on a rolling basis. Defendants do not intend to withhold any documents

11   from this production on the grounds that they may also be publicly available.

12   **REQUEST FOR PRODUCTION NO. 12:**

13       All documents relating to any statistics, data or other numerical figures,

14   whether estimates or actual values, representing the number of noncitizens who cross

15   the U.S.-Mexico border unauthorized but then cross back into Mexico.

16       **Objections to Request for Production No. 12:**

17       Defendants object to RFP 12 in that it is disproportionate to the needs of the

18   case, and the burden and expense of the proposed discovery clearly outweighs the

19   likely benefit. For example, RFP No. 12 purports to require Defendants to produce

20   "all documents" "relating to" "any statistics, data or other numerical figures." Such

21   an expansive request is not only disproportionate and burdensome but also

22   overbroad in that it seeks documents irrelevant to any claim or defense in this case.

23       Defendants object to the term "other numerical figures" as vague and

24   undefined. Defendants construe this request as seeking statistics and data, as those

25   terms are commonly used.

26       Defendants object to the term "actual values," particularly as opposed to

27   "estimates," as vague and ambiguous. Defendants construe this request as seeking

28

APPENDIX A

1    statistics and data, as those terms are commonly used.

2         Defendants object to the request on the basis that this request is vague and

3    overbroad. Specifically, it is unclear what is meant by "cross the U.S.-Mexico border

4    unauthorized but then cross back into Mexico." Thus, this request lacks sufficient

5    specificity for Defendants to determine its scope.

6         Defendants additionally object to the request to the extent that it seeks the

7    number of aliens who cross the border illegally, and are not apprehended by the

8         United States Border Patrol. Such a request is overbroad and seeks the

9    discovery of information that is beyond the scope of this lawsuit, is not relevant to

10   any party's claim or defense, and is not proportional to the needs to this case.

11        To the extent that Plaintiffs are seeking information relevant to the claims and

12   defenses in this case, regarding the number of aliens who illegally crossed the

13   southwest border of the United States, this information is publicly available. *See*

14   CBP, "Southwest Border Migration FY 2019" *available at*

15   https://www.cbp.gov/newsroom/stats/sw-border-migration (last visited May 8,

16   2019). Accordingly, at least some of this discovery "can be obtained from some

17   other source that is more convenient, less burdensome, or less expensive[.]" Fed. R.

18   Civ. P. 26(b)(2)(C)(i).

19        Defendants also object to RFP 12 in accordance with Objections Which Apply

20   to All RFPs Nos. 1, 3-7, and 10; Objections to Definitions Nos. 5-6, 8, and 10; and,

21   Objections to Instructions No. 1, 2, and 4.

22   **Response to Request for Production No. 12:**

23        In accordance with Defendants' objections, and in light of the discovery

24   request being disproportional to the needs of the case considering that the burden

25   and expense of the requested discovery outweighs its likely benefit, Defendants will

26   limit their searches to a limited number of custodial and non-custodial sources.

27   Defendants will continue to confer with Plaintiffs in identifying reasonable custodial

28

39

APPENDIX A

1   and non-custodial sources and document identification protocols, but in the event

2   the parties cannot agree, Defendants will limit their searches to the sources identified

3   in Defendants' portion of the supplement to the parties' joint 26(f) report from which

4   Defendants will produce all non-privileged documents responsive to this request,

5   dating from January 1, 2016, until the date of collection that can be located after a

6   reasonable search. *See* ECF No. 243 at 16-19.

7       Defendants will produce the documents on a rolling basis. Defendants do not

8   intend to withhold any documents from this production on the grounds that they may

9   also be publicly available.

10  **REQUEST FOR PRODUCTION NO. 13:**

11      All organizational charts, graphs, lists or other documents that contain

12  information relating to the organizational or operational structure and hierarchies of

13  CBP, including the staffing of individual ports of entry along the U.S.-Mexico

14  border.

15      **Objections to Request for Production No. 13:**

16      Defendants object to this request as irrelevant to claims at issue in this action,

17  overbroad, disproportional to the needs of the case and outside the scope of the

18  allegations in the complaint. Specifically, the organizational structure of CBP as a

19  whole is unrelated to the claims at issue in this action. Moreover, the organizational

20  structure of any particular port of entry is not relevant to the claims at issue, which

21  is of a border-wide policy, practice, or procedure. To the extent Plaintiffs wish to

22  seek discovery to establish the existence of such a border-wide policy, practice, or

23  procedure from ports of entry beyond the Laredo, Otay Mesa, San Ysidro, and

24  Hidalgo ports of entry, such request is not proportional to the needs of this case;

25  Defendants should not have to "search for a needle" at 24 ports of entry on the

26  southwest border of the United States to find evidence of what is allegedly a

27  pervasive turnback or deterrence policy that Plaintiffs' claim so well known that it

28

APPENDIX A

1    is implemented by hundreds of CBP officers separated by hundreds of miles.

2         Defendants also object to this request as not proportional to the needs of this

3    case, given that it seeks the organizational structure of the whole agency, which

4    includes more than 60,000 personnel and a host of operations unrelated to Plaintiffs'

5    claims. The time and resources necessary to gather such information are not

6    proportional to Plaintiff's claims, which are related to four ports of entry on the U.S.-

7    Mexico border.

8         Defendants also object to RFP 13 in accordance with Objections Which Apply

9    to All RFPs Nos. 5-8; Objections to Definitions Nos. 1, and 6-10; and, Objections to

10   Instructions No. 1, 2, and 4.

11        In line with the objections above, Defendants construe the request as seeking

12   only organizational charts or lists relevant to operations at the San Ysidro, Otay

13   Mesa, Laredo, and Hidalgo ports of entry insofar as those operations relate to aliens

14   arriving or attempting to arrive at these ports of entry.

15   **Response to Request for Production No. 13:**

16        In accordance with its objections, Defendants conducted a reasonable search

17   for organizational charts for the relevant offices in DHS; CBP; CBP Office of Field

18   Operations Headquarters; the Laredo, Otay Mesa, San Ysidro, and Hidalgo ports of

19   entry, and the field offices in which those ports of entry are located, and to the extent

20   that responsive material was identified, it was provided on March 29, 2019. *See*

21   CBPALOTR000000150-           CBPALOTR000000183;         *see         also*

22   DHSALOTR000000054-    DHSALOTR000000092.    Defendants    subsequently

23   produced    additional    organizational    charts    related    to    CBP.    *See*

24   CBPALOTR000000184-CBPALOTR000000275.

25   **REQUEST FOR PRODUCTION NO. 14:**

26        All organizational charts, graphs, lists or other documents that contain

27   information relating to the organizational or operational structure and hierarchies of

28

DHS to the extent the documents relate to the relationship or association of DHS with CBP.

**Objections to Request for Production No. 14:**

Defendants object to this request as irrelevant to claims at issue in this action, overbroad, disproportional to the needs of the case and outside the scope of the allegations in the complaint. Specifically, the organizational structure of DHS regarding the relationship between DHS and CBP as a whole is unrelated to the claims and defenses in this case. Defendants also object to this request as not proportional to the needs of this case, given that it seeks the relationship between CBP and DHS as a whole. In responding to this request, Defendants construe the request as seeking only documents regarding the relationships between DHS and/or its subagencies with CBP in relation to the latter's processing of arriving aliens at the San Ysidro, Otay Mesa, Laredo, or Hidalgo ports of entry.

Defendants object to the production of any other charts, graphs, or lists that would pertain to sections of DHS and CBP as burdensome and disproportional because they are not relevant to the claims and defenses in this case. Seeking the organizational structure of DHS as whole is not proportional to the needs of this case because it includes at least 240,000 employees and a host of operations unrelated to the claims and defenses in this case.

Defendants also object to RFP 14 in accordance with Objections Which Apply to All RFPs No. 1 and 7-10; Objections to Definitions Nos. 2-3, 5-6, 8, and 10; and, Objections to Instructions No. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response to Request for Production No. 14:**

In accordance with their objections, Defendants conducted a reasonable

APPENDIX A

42

1  search for organizational charts for the relevant offices in DHS and CBP, as set forth

2  in its response to RFP No. 13; to the extent that responsive material was identified,

3  it was provided on March 29, 2019. *See* CBPALOTR000000150-

4  CBPALOTR000000183; *see also* DHSALOTR000000054-

5  DHSALOTR000000092. Defendants subsequently produced additional

6  organizational charts related to CBP. *See* CBPALOTR000000184-

7  CBPALOTR000000275.

8  **REQUEST FOR PRODUCTION NO. 15:**

9      All documents relating to Plaintiffs, including complete copies of their A-

10  files; and Forms 1-275, Forms 1-867 or Forms 1-860 completed by or issued to any

11  Plaintiff; or any surveillance or other video footage relating to any Plaintiff.

12      **Objections to Request for Production No. 15:**

13      Defendants object to producing A-files for the named Plaintiffs absent

14  specific waivers from the Plaintiffs in line with the Objections Which Apply to All

15  RFPs No. 9. Plaintiffs' privacy is protected by numerous statutes and regulations

16  governing disclosure of information about aliens, and imposes further restrictions on

17  dissemination of information relating to aliens seeking asylum or other forms of

18  relief and protection under the Immigration and Nationality Act.

19      In light of the highly-sensitive law enforcement operations conducted at the

20  nation's ports of entry, Defendants object to providing copies to Plaintiffs of any

21  surveillance or other video footage of the named Plaintiffs.

22      Defendants also object to RFP 15 in accordance with Objections Which Apply

23  to All RFPs No. 1 and 7-10; Objections to Definitions Nos. 5-6, and 8-10; and,

24  Objections to Instructions No. 1, 2, and 4.

25      **Response to Request for Production No. 15:**

26      In accordance with its objections, Defendants will provide nonprivileged

27  portions of the A-files for the named Plaintiffs once counsel for Plaintiffs provides

28

1    the required signed waivers.

2        Defendants will arrange for viewing of surveillance and other video footage

3    of Plaintiffs' processing in its possession upon request from Plaintiffs' counsel.

4    **REQUEST FOR PRODUCTION NO. 16:**

5        All documents relating to any and all mechanisms or procedures used by DHS

6    or CBP to track CBP personnel's compliance with any policies, procedures,

7    recommendations or guidelines on the processing of noncitizens arriving at or near

8    a port of entry on the U.S.-Mexico border who express a desire to seek asylum or

9    express a fear of returning to their countries of origin.

10       **Objections to Request for Production No. 16:**

11       Defendants object to RFP 16 in that it is overly broad, disproportionate to the

12   needs of the case, and the burden and expense of the proposed discovery clearly

13   outweighs the likely benefit. For example, RFP No. 16 purports to require

14   Defendants to produce "all documents" "relating to" "any and all" "mechanisms and

15   procedures." Taken together, this request is not only disproportionate and

16   burdensome but also overbroad in that it seeks documents irrelevant to any claim or

17   defense in this case.

18       Defendants object to the terms "mechanisms," "procedures," and "track" as

19   vague and ambiguous. Defendants construe these terms to mean statistics, policies

20   or procedures which relate to monitoring CBP officers' compliance with agency

21   policy.

22       Defendants object to the term "recommendations," as it relates to the

23   processing of individuals, as vague and ambiguous, since such a term connotes an

24   optional action rather than a requirement.

25       In addition, Defendants object to this request on the ground that it seeks

26   discovery of information that is beyond the scope of this lawsuit and not proportional

27   to the needs of this case. *See e.g.,* Fed. R. Civ. P. 26(b)(1). For example, "processing"

28

APPENDIX A

44

may encompass actions such as a secondary inspection for agricultural or customs purposes. *See* U.S. DHS PRIVACY IMPACT ASSESSMENT FOR THE TECS SYSTEM: CBP PRIMARY AND SECONDARY PROCESSING at 5 (December 22, 2010), https://www.dhs.govsites/default/files/publications/privacy-pia-cbp-tecs-december2010_0.pdf. Compliance with such activities is outside the scope of this lawsuit.

Defendants also object to RFP 16 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-10; Objections to Definitions Nos. 2-3, 5-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response to Request for Production No. 16:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

To the extent that Plaintiffs seek information from DHS OIG, this part of DHS is an independent and objective unit operating within DHS whose duty it is to detect

APPENDIX A

and combat waste, fraud, and abuse in DHS programs and operations. DHS OIG has agreed to search for material potentially responsive to this request. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols relating to documents from DHS OIG. To the extent DHS OIG determines that potentially responsive materials may not be produced in whole or in part, it will provide authority for such determination in a response, privilege log, or on any documents produced.

**REQUEST FOR PRODUCTION NO. 17:**

All documents relating to any and all mechanisms or procedures used by DHS or CBP to receive, review, track or respond to complaints against or concerning CBP personnel relating to the processing of noncitizens arriving at or near a port of entry on the U.S. Mexico border who express a desire to seek asylum or express a fear of returning to their countries or origin.

**Objections to Request for Production No. 17:**

Defendants object to RFP 17 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 17 purports to require Defendants to produce "all documents" "relating to" "any and all" "mechanisms and procedures." Taking these vague and expansive terms together, this request is not only disproportionate and burdensome but also overbroad in that it seeks documents irrelevant to any claim or defense in this case.

Defendants object to the terms "mechanisms," "procedures," and "track" as vague and ambiguous. Defendants will construe these terms to mean statistics, policies or procedures which relate to monitoring complaints against CBP employees.

In addition, Defendants object to this request on the ground that it seeks discovery of information that is beyond the scope of this lawsuit and not proportional

to the needs of this case. *See e.g.,* Fed. R. Civ. P. 26(b)(1). For example, "processing" may encompass actions such as a secondary inspection for agricultural or customs purposes. *See* U.S. DHS PRIVACY IMPACT ASSESSMENT FOR THE TECS SYSTEM: CBP PRIMARY AND SECONDARY PROCESSING at 5 (December 22, 2010), https://www.dhs.govisites/default/files/publications/privacy-pia-cbp-tecs-december2010_0.pdf. Such activities are outside the scope of this lawsuit.

Defendants also object to RFP 17 in accordance with Objections Which Apply to All RFPs Nos. 1 and 3-10; Objections to Definitions Nos. 2-3, 5-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response to Request for Production No. 17:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

To the extent that Plaintiffs seek information from DHS OIG, this part of DHS is an independent and objective unit operating within DHS whose duty it is to detect

and combat waste, fraud, and abuse in DHS programs and operations. DHS OIG has agreed to search for material potentially responsive to this request. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols relating to documents from DHS OIG. To the extent DHS OIG determines that potentially responsive materials may not be produced in whole or in part, it will provide authority for such determination in a response, privilege log, or on any documents produced.

**REQUEST FOR PRODUCTION NO. 18:**

All documents relating to any and all complaints against or concerning CBP personnel received by DHS or CBP, including, but not limited to, the Office of Inspector General and the Office for Civil Rights and Civil Liberties, relating to the processing of noncitizens arriving at or near a port of entry on the U.S.-Mexico border who express a desire to seek asylum or express a fear of returning to their countries of origin.

**Objections to Request for Production No. 18:**

Defendants object to RFP 18 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 18 purports to require Defendants to produce "all documents" "relating to" "any and all" complaints" "against or concerning" CBP personnel. Taking these vague and expansive terms together, this request is not only disproportionate and burdensome but also overbroad in that it seeks documents irrelevant to any claim or defense in this case.

In addition, Defendants object to this request on the ground that it seeks discovery of information that is beyond the scope of this lawsuit and not proportional to the needs of this case. *See e.g.,* Fed. R. Civ. P. 26(b)(1). For example, "processing" may encompass actions such as a secondary inspection for agricultural or customs purposes. *See* U.S. DHS PRIVACY IMPACT ASSESSMENT FOR THE TECS

APPENDIX A

48

SYSTEM: CBP PRIMARY AND SECONDARY PROCESSING at 5 (December 22, 2010), https://www.dhs.govisites/default/files/publications/privacy-pia-cbp-tecs-december2010_0.pdf. Such activities are outside the scope of this lawsuit.

Defendants also object to RFP 18 in accordance with Objections Which Apply to All RFPs Nos. 1 and 3-10; Objections to Definitions Nos. 2-3, 5-6, and 810; and, Objections to Instructions Nos. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response to Request for Production No. 18:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

To the extent that Plaintiffs seek information from DHS OIG, this part of DHS is an independent and objective unit operating within DHS whose duty it is to detect and combat waste, fraud, and abuse in DHS programs and operations. DHS OIG has agreed to search for material potentially responsive to this request. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-

1  custodial sources and document identification protocols relating to documents from

2  DHS OIG. To the extent DHS OIG determines that potentially responsive materials

3  may not be produced in whole or in part, it will provide authority for such

4  determination in a response, privilege log, or on any documents produced.

5  **REQUEST FOR PRODUCTION NO. 19:**

6      All documents relating to any and all policies, procedures, criteria or standards

7  used by CBP or DHS to discipline CBP personnel who fail to follow proper policy

8  or procedure relating to the processing of noncitizens arriving at or near a port of

9  entry on the U.S.-Mexico border who express a desire to seek asylum or express a

10  fear of returning to their countries of origin.

11  **Objections to Request for Production No. 19:**

12      Defendants object to RFP 19 in that it is disproportionate to the needs of the

13  case, and the burden and expense of the proposed discovery clearly outweighs the

14  likely benefit. For example, RFP No. 19 purports to require Defendants to produce

15  "all documents" "relating to" "any and all" "policies, procedures, criteria, or

16  standards." Taken together, the breadth of these terms and the corresponding search

17  they demand is unreasonable. Such an expansive request is not only disproportionate

18  and burdensome but also overbroad in that it seeks documents irrelevant to any claim

19  or defense in this case.

20      In addition, Defendants object to this request on the ground that it seeks

21  discovery of information that is beyond the scope of this lawsuit and not proportional

22  to the needs of this case. *See e.g.,* Fed. R. Civ. P. 26(b)(1). For example, "processing"

23  may encompass actions such as a secondary inspection for agricultural or customs

24  purposes. *See* U.S. DHS PRIVACY IMPACT ASSESSMENT FOR THE TECS

25  SYSTEM: CBP PRIMARY AND SECONDARY PROCESSING at 5 (December

26  22, 2010), https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-

27  tecs-december2010_0.pdf. Such activities are outside the scope of this lawsuit.

28

APPENDIX A

50

1    Defendants also object to RFP 19 in accordance with Objections Which Apply

2    to All RFPs Nos. 1, 3-10; Objections to Definitions Nos. 2-3, 5-6, 8, and 10; and,

3    Objections to Instructions Nos. 1, 2, and 4.

4    Consistent with these objections, Defendants construe this request as limited

5    to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of

6    entry.

7    **Response to Request for Production No. 19:**

8    In accordance with Defendants' objections, and in light of the discovery

9    request being disproportional to the needs of the case considering that the burden

10   and expense of the requested discovery outweighs its likely benefit, Defendants will

11   limit their searches to a limited number of custodial and non-custodial sources.

12   Defendants will continue to confer with Plaintiffs in identifying reasonable custodial

13   and non-custodial sources and document identification protocols, but in the event

14   the parties cannot agree, Defendants will limit their searches to the sources identified

15   in Defendants' portion of the supplement to the parties' joint 26(f) report from which

16   Defendants will produce all non-privileged documents responsive to this request,

17   dating from January 1, 2016, until the date of collection that can be located after a

18   reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the

19   documents on a rolling basis.

20   To the extent that Plaintiffs seek information from DHS OIG, this part of DHS

21   is an independent and objective unit operating within DHS whose duty it is to detect

22   and combat waste, fraud, and abuse in DHS programs and operations. DHS OIG has

23   agreed to search for material potentially responsive to this request. Defendants will

24   continue to confer with Plaintiffs in identifying reasonable custodial and non-

25   custodial sources and document identification protocols relating to documents from

26   DHS OIG. To the extent DHS OIG determines that potentially responsive materials

27   may not be produced in whole or in part, it will provide authority for such

28

APPENDIX A

51

1    determination in a response, privilege log, or on any documents produced.

2    **REQUEST FOR PRODUCTION NO. 20:**

3        All documents relating to any and all disciplinary action taken by CBP or DHS

4    against CBP personnel who fail to follow proper policy or procedure relating to the

5    processing of noncitizens arriving at or near a port of entry on the U.S.-Mexico

6    border who express a desire to seek asylum or express a fear or returning to their

7    countries of origin. For the avoidance of doubt, at this time, Plaintiff's do not,

8    through this request, seek individual personnel information that is protected from

9    disclosure by applicable state or federal law. Defendant may redact identifying

10   information from responsive documents to ensure that employee rights of

11   confidentiality are preserved.

12       **Objections to Request for Production No. 20:**

13       Defendants object to RFP 20 in that it is disproportionate to the needs of the

14   case, and the burden and expense of the proposed discovery clearly outweighs the

15   likely benefit. For example, RFP No. 20 purports to require Defendants to produce

16   "all documents" "relating to" "any and all" "policies, procedures, criteria or

17   standards" for disciplinary action. Such an expansive request is not only

18   disproportionate and burdensome but also overbroad in that it seeks documents

19   irrelevant to any claim or defense in this case.

20       In addition, Defendants object to this request on the ground that it seeks

21   discovery of information that is beyond the scope of this lawsuit and not proportional

22   to the needs of this case. *See e.g.,* Fed. R. Civ. P. 26(b)(1). For example, "processing"

23   may encompass actions such as a secondary inspection for agricultural or customs

24   purposes. *See* U.S. DHS PRIVACY IMPACT ASSESSMENT FOR THE TECS

25   SYSTEM: CBP PRIMARY AND SECONDARY PROCESSING at 5 (December

26   22, 2010), https://www.dhs.govisites/default/files/publications/privacy-pia-cbp-

27   tecs-december2010_0.pdf. Such activities are outside the scope of this lawsuit.

28

APPENDIX A

Defendants also object to RFP 20 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-10; Objections to Definitions Nos. 2-3, 5-6, 8, and 10; and Objections to Instructions Nos. 1-4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response to Request for Production No. 20:**

DHS responds that it does not normally possess disciplinary records for CBP employees. Such records would be in the possession and under the control of CBP.

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

**REQUEST FOR PRODUCTION NO. 21:**

All documents relating to, or issued by CBP or DHS pursuant to Executive Order 13767, entitled "Border Security and Immigration Enforcement Improvements," signed by President Donald J. Trump on January 25, 2017 (the Executive Order"), including all documents relating to compliance by CBP or DHS with the Executive Order.

APPENDIX A

53

**Objections to Request for Production No. 21:**

Defendants object to RFP 21 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 21 purports to require Defendants to produce "all documents" "relating to" or "issued by" CBP or DHS related to Executive Order 13767. Such an expansive request is not only disproportionate and burdensome but also overbroad in that it seeks documents irrelevant to any claim or defense in this case.

Defendants object to this request on the basis that it seeks discovery of information not related to the claims at issue in this action. Specifically, the Executive Order addresses a wide variety of issues related to immigration enforcement, many of which are beyond the scope of this litigation, including the detention and parole of aliens, the treatment of unaccompanied alien children, and additional actions needed to strengthen immigration enforcement at the U.S.-Mexico border. These issues are unrelated to the claims at issue in this action. Therefore, for purposes of this response, Defendants construe this request to apply only to documents relating to the processing of "arriving aliens" seeking protection consistent with 8 U.S.C. § 1158 and 1225(b) at the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

Defendants also object to RFP 21 in accordance with Objections Which Apply to All RFPs Nos. 1, 6-10; Objections to Definitions Nos. 2-3, 5-6, and 8-10; and, Objections to Instructions No. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response to Request for Production No. 21:**

In accordance with Defendants' objections, and in light of the discovery

APPENDIX A

54

request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

**REQUEST FOR PRODUCTION NO. 22:**

All documents relating to, or issued by CBP or DHS pursuant to, the memorandum entitled "Implementing the President's Border Security and Immigration Enforcement Improvement Policies," issued by DHS on February 20, 2017 (the "Memorandum"), including all documents relating to compliance by CBP or DHS with the Memorandum.

**Objections to Request for Production No. 22:**

Defendants object to RFP 22 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 22 purports to require Defendants to produce "all documents" "relating to" or "issued by" CBP or DHS related to Executive Order 13767. Such an expansive request is not only disproportionate and burdensome but also overbroad in that it seeks documents irrelevant to any claim or defense in this case.

Defendants object to this request on the basis that it seeks discovery of information not related to the claims at issue in this action. Specifically, the

Memorandum addresses all of the issues identified in the Executive Order, many of which are beyond the scope of this litigation, including the detention and parole of aliens, the treatment of unaccompanied alien children, and additional actions needed to strengthen immigration enforcement at the U.S.-Mexico border. These issues are unrelated to the claims at issue in this action. Defendants further object to this request as disproportional to the needs of this case. The time and resources necessary to gather all documents related to CBP's implementation of Executive Order 13767 and the Memorandum is not proportional to the needs of this case, which is related solely to claims from arriving aliens seeking protection consistent with 8 U.S.C. §§ 1158 and 1225(b) at four ports of entry along the U.S./Mexico border.

Therefore, for purposes of these responses, Defendants will respond to the request only so far as it seeks documents specifically relating to compliance by DHS or CBP with any directives regarding the processing of arriving aliens seeking protection consistent with 8 U.S.C. §§ 1158 and 1225(b) at four ports of entry along the U.S./Mexico border (San Ysidro, Otay Mesa, Laredo, and Hidalgo).

Defendants also object to RFP 22 in accordance with Objections Which Apply to All RFPs Nos. 1 and 6-10; Objections to Definitions Nos. 2-3, 5-6, and 810; and, Objections to Instructions Nos. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response to Request for Production No. 22:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial

APPENDIX A

1  and non-custodial sources and document identification protocols, but in the event

2  the parties cannot agree, Defendants will limit their searches to the sources identified

3  in Defendants' portion of the supplement to the parties' joint 26(f) report from which

4  Defendants will produce all non-privileged documents responsive to this request,

5  dating from January 1, 2016, until the date of collection that can be located after a

6  reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the

7  documents on a rolling basis.

8  **REQUEST FOR PRODUCTION NO. 23:**

9      All documents relating to, or issued by CBP or DHS pursuant to, the statement

10  entitled "Statement from the Press Secretary on the Decline in Southwest Border

11  Apprehensions," released by the White House Office of the Press Secretary on April

12  5, 2017.

13      **Objections to Request for Production No. 23:**

14      Defendants object to RFP 23 in that it is disproportionate to the needs of the

15  case, and the burden and expense of the proposed discovery clearly outweighs the

16  likely benefit. For example, RFP No. 23 purports to require Defendants to produce

17  "all documents" "relating to" or "issued by" CBP or DHS related to the "Statement

18  from the Press Secretary on the Decline in Southwest Border Apprehensions." Such

19  an expansive request is not only disproportionate and burdensome but also

20  overbroad in that it seeks documents irrelevant to any claim or defense in this case.

21      Defendants object to this request on the basis that it seeks discovery of

22  information not related to the claims at issue in this action and is thus irrelevant.

23  Specifically, the number of apprehensions on the US.-Mexico border is not relevant

24  to the claims at issue in this action, which is related solely to claims from arriving

25  aliens seeking protection consistent with 8 U.S.C. §§ 1158 and 1225(b) at four ports

26  of entry along the Mexico/U.S. border.

27      Therefore, for purposes of these responses, Defendants will respond to the

28

APPENDIX A

57

request only so far as it seeks documents specifically relating to compliance by DHS or CBP with any directives regarding the processing of arriving aliens seeking protection consistent with 8 U.S.C. §§ 1158 and 1225(b) at four ports of entry along the U.S./Mexico border (San Ysidro, Otay Mesa, Laredo, and Hidalgo).

Defendants also object to RFP 23 in accordance with Objections Which Apply to All RFPs Nos. 1, 6-10; Objections to Definitions Nos. 2-3, 5-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

**Response to Request for Production No. 23:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

**REQUEST FOR PRODUCTION NO. 24:**

All documents relating to any statements released by the White House relating to noncitizens arriving at or near a port of entry on the U.S.-Mexico border who express a desire to seek asylum or express a fear of returning to their countries of origin.

**Objections to Request for Production No. 24:**

Defendants object to RFP 24 in that it is disproportionate to the needs of the

APPENDIX A

case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 24 purports to require Defendants to produce "any statements released by the White House relating to noncitizens" seeking asylum. Such an expansive request is not only disproportionate and burdensome but also overbroad in that it seeks documents irrelevant to any claim or defense in this case.

Defendants object to this request on the basis that it seeks discovery of information not related to the claims at issue in this action, and is therefore irrelevant.

Defendants object to the terms "any statements" and "by the White House" as vague and overly broad. Without a time frame or identification of a specific release/statement, it is unclear what sort of documents Plaintiffs seek and what documents could be interpreted as coming within the scope of this request. It would be unduly burdensome on Defendants to scour any and all sources (press releases, news articles, social media statements, etc.) for any and all statements of all members of the "White House" (the President, his staff, etc.) that might have touched on arriving aliens since January 1, 2016 and then to scour all agency records to identify whether there could be any link between them.

Defendants also object to RFP 24 in accordance with Objections Which Apply to All RFPs No. 1, 3-10 and Objections to Definitions Nos. 5-6, 8, and 10.

**Response to Request for Production No. 24:**

In accordance with their objections, Defendants will not produce any discovery responsive to this request.

**REQUEST FOR PRODUCTION NO. 25:**

All surveillance video footage relating to any investigation conducted by DHS, CBP or the Office of the Inspector General relating to noncitizens arriving at or near a port of entry on the U.S.-Mexico border who express a desire to seek asylum or express a fear or returning to their countries of origin.

APPENDIX A

**Objections to Request for Production No. 25:**

Defendants object to RFP 25 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 25 purports to require Defendants to produce "all surveillance video footage relating to any investigation conducted by" the Defendants or "the Office of Inspector General relating to" those seeking asylum. Such an expansive request is not only disproportionate and burdensome but also overbroad in that it seeks documents irrelevant to any claim or defense in this case. To the extent that Plaintiffs seek information from DHS OIG, this part of DHS is an independent and objective unit operating within DHS whose duty it is to detect and combat waste, fraud, and abuse in DHS programs and operations. DHS OIG has agreed to search for material potentially responsive to this request. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols relating to documents from DHS OIG. To the extent DHS OIG determines that potentially responsive materials may not be produced in whole or in part, it will provide authority for such determination in a response, privilege log, or on any documents produced.

Defendants further object to this request to the extent that it seeks information which would impinge upon the privacy rights or impinge the protection rights of individuals who are seeking protection under 8 U.S.C. §§ 1158, 1225(b), or any other applicable statute.

Defendants further object to producing "[a]ll video surveillance footage RELATING TO any investigation conducted by DHS" because coordination with subordinate agencies whose work is not related to immigration, such as FEMA or the U.S. Coast Guard, is not relevant or proportional to the needs of the case.

Defendants also object to this request to the extent it is irrelevant, overbroad, vague, and ambiguous. It is unclear what "investigation" entails and Plaintiffs have

APPENDIX A

not provided a definition. It is not clear whether Plaintiffs intended for "investigation" to include every encounter at the four ports of entry (consistent with Defendants' limitation as stated in the general objection) where any employee of any subcomponent of DHS and/or CBP questioned an arriving alien, or whether it refers to formal or informal inquiries conducted by DHS and/or CBP or their subcomponents in response to allegations of misconduct regarding the processing of arriving aliens at these four ports of entry. The former interpretation of "investigation" would place an undue burden on Defendants in light of the incredibly large number of hours of video footage captured every day at every port of entry, the time consuming process of reviewing video footage to identify responsive encounters, the hours required to determine what protections and/or privileges might apply to production, the excessive time and cost required to produce such footage, technical limitations, and the failure of Plaintiffs to limit this request to manageable periods of time. Thus, for purposes of this response, Defendants construe "investigation" to refer only to a formal investigation into allegations of misconduct by CPB officers at the Laredo, Otay Mesa, San Ysidro, or Hidalgo ports of entry since January 1, 2016.

Defendants also object to RFP 25 in accordance with Objections Which Apply to All RFPs Nos. 1 and 3-10; Objections to Definitions Nos. 2-3, 5-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response to Request for Production No. 25:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will

APPENDIX A

1   limit their searches to a limited number of custodial and non-custodial sources.
2   Defendants will continue to confer with Plaintiffs in identifying reasonable custodial
3   and non-custodial sources and document identification protocols, but in the event
4   the parties cannot agree, Defendants will limit their searches to the sources identified
5   in Defendants' portion of the supplement to the parties' joint 26(f) report from which
6   Defendants will produce all non-privileged documents responsive to this request,
7   dating from January 1, 2016, until the date of collection that can be located after a
8   reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the
9   documents on a rolling basis.

10   To the extent that Plaintiffs seek information from DHS OIG, this part of DHS
11   is an independent and objective unit operating within DHS whose duty it is to detect
12   and combat waste, fraud, and abuse in DHS programs and operations. DHS OIG has
13   agreed to search for material potentially responsive to this request. Defendants will
14   continue to confer with Plaintiffs in identifying reasonable custodial and non-
15   custodial sources and document identification protocols relating to documents from
16   DHS OIG. To the extent DHS OIG determines that potentially responsive materials
17   may not be produced in whole or in part, it will provide authority for such
18   determination in a response, privilege log, or on any documents produced.

19
20
21
22
23
24
25
26
27
28

APPENDIX A

**Appendix B**

As discussed in the parties' accompanying Joint Motion for Determination of Discovery dispute, the following is the exact text of the disputed portions of Defendants' First Amended and Supplemented Objections and Responses to Plaintiffs' Second Set of Requests for Production to All Defendants.

\*   \*   \*

**Objections Which Apply To All Requests For Production**

1.     Defendants object to these Requests (and all discovery requests) as facially improper in this Administrative Procedure Act ("APA") case. Defendants continue to maintain, as briefed in their pending Motion to Dismiss (ECF Nos. 192 & 238) and in their portion of the 26(f) report (ECF No. 239), and supplement (ECF No. 243), that Plaintiffs' claims should be decided on the administrative record without discovery. "[I]t is black-letter administrative law that in an APA case, a reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'" *Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013) (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)); *First Nat. Bank & Trust v. Dep't of Treasury*, 63 F.3d 894, 897 (9th Cir. 1995) ("Generally, judicial review of an agency decision is limited to the administrative record." (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). These Requests are proper only to the extent they seek information that is absolutely necessary "to ascertain the contours of the precise policy at issue," *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 530 F.3d 925, 928 (D.C. Cir. 2008), and only to the extent they request the information the agency had before it when it made its decision, *Hill Dermaceuticals, Inc.*, 709 F.3d at 47. Thus, Defendants continue to maintain that discovery of the type Plaintiffs seek is improper, and if this case is not dismissed in its entirety, it should be decided on the relevant administrative record. Defendants assert this objection to preserve it pending a ruling on their Motion to Dismiss. At this

APPENDIX B

1

1   time, this objection serves as a limiting principle on the parameters of Defendants'

2   search for responsive documents, the contours of which are being contemporaneously

3   negotiated with Plaintiffs; Defendants are not withholding any responsive documents

4   collected as a result of that search from their production or privilege log on the basis

5   of this objection alone.

6          2.      Moreover, any Request that seeks information relating to any DHS or

7   CBP employee's subjective intentions or motivations, including the named

8   Defendants', is facially improper. The Supreme Court has long recognized that "judicial

9   inquiries into legislative or executive motivation represent a substantial intrusion into

10  the workings of other branches of government." *Village of Arlington Heights v.*

11  *Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 268 n. 18 (1977). In part for that reason,

12  the Court has "made it abundantly clear" that APA review must focus only on the

13  contemporaneous explanation of the agency decision" that the agency chooses to rest

14  upon. *Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435

15  U.S. 519, 549 (1978). "When a party challenges agency action as arbitrary and

16  capricious the reasonableness of the agency's action is judged in accordance with its

17  *stated* reasons." *In re Subpoena Duces Tecum Served on the Office of the Comptroller*

18  *of the Currency*, 156 F.3d 1279, 1279 (D.C. Cir. 1998) (emphasis added) (citing

19  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S 402 (1971)). Unless intent

20  is an element of a party's claims or defenses—which, in this case, it is not—"the

21  actual subjective motivation of agency decisionmakers is immaterial as a matter of

22  law," *id.* at 1280, and therefore not properly discoverable. Accordingly, as set forth

23  in their specific objections and responses, Defendants will not search for, produce, or

24  log any documents in response to Plaintiffs' requests that concern solely what

25  Plaintiffs allege to be the named Defendants' or DHS or CBP employees' subjective

26  intentions or motivations that have no apparent connection to the existence or

27  contours of a policy or practice claimed to be at issue. This objection also serves as a

28  limiting principle on the parameters of Defendants' search for responsive documents,

APPENDIX B

2

1   the contours of which are being contemporaneously negotiated with Plaintiffs.

2      3.    Defendants object to the use of the term "noncitizen," as this term is

3   overly broad, vague and ambiguous. Specifically, the term "noncitizen" is a term

4   proposed by Plaintiffs and not used by Defendants, and Plaintiffs do not provide a

5   definition of what this term means. "Noncitizen" is not specific to the United States.

6   That is, it is not limited to those individuals who are not citizens of the United States

7   and could encompass individuals who are not citizens of other nations. Therefore,

8   for the purpose of responding to these Requests, Defendants understand and construe

9   the term "noncitizen," in the context of these discovery requests, to mean "alien," as

10   defined in 8 U.S.C. § 1101(a)(3), and such construction is reflected in all of

11   Defendants' responses and any corresponding production or privilege log.

12      4.    Defendants object to the terms and phrases "seek asylum," "have a

13   fear," "expressing a desire to seek asylum," "expressing a fear of returning to their

14   countries of origin," and "present themselves," as these terms and phrases are vague

15   and ambiguous, are not defined by Plaintiffs, and potentially can be construed as

16   referring to actions or statements other than those described in 8 U.S.C. §§ 1158 and

17   1225(b). For purposes of responding to these RFPs, Defendants understand and

18   construe these terms and phrases as referring to actions consistent with 8 U.S.C. §§

19   1158 and 1225(b). Such construction is reflected in all of Defendants' responses and

20   any corresponding production or privilege log; Defendants are not, however,

21   withholding documents on the basis of this objection.

22      5.    Defendants object to the phrase "near ports of entry" on the basis that

23   this phrase is overbroad and seeks discovery beyond the scope of this lawsuit. For

24   example, this phrase could be construed as referring to actions occurring between

25   ports of entry, which are not relevant to any party's claims or defenses in this case.

26   The claims in this action relate only to aliens who allegedly sought to enter the

27   United States at one of four ports of entry (Laredo, Otay Mesa, San Ysidro, and

28   Hidalgo) but were not immediately allowed to do so. Defendants therefore object to

APPENDIX B

1    the extent that any Request seeks information beyond the claims raised by individual

2    Plaintiffs in this action because such discovery would also be disproportional to the

3    needs of the case. Relatedly, such discovery would be unduly burdensome and

4    disproportional to the needs of the case. Therefore, for purposes of their responses,

5    Defendants will only search for and produce relevant and non-privileged documents

6    relating to aliens arriving at "ports of entry" and Defendants' responses to each and

7    every Request will be limited consistent with this objection.

8        6.    Defendants object to each and every Request to the extent it requests or

9    appears to request information related to all ports of entry along the U.S.-Mexico

10   border as not proportional to the needs of the case, overly broad, and unduly

11   burdensome. The Court's Order directs the parties to "prioritize discovery necessary

12   for a motion for class certification[.]" ECF No. 196 at 2. "The class action is 'an

13   exception to the usual rule that litigation is conducted by and on behalf of the

14   individual named parties only.' In order to justify a departure from that rule, 'a class

15   representative must be part of the class and possess the same interest and suffer the

16   same injury as class members.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-

17   49 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979), and *East*

18   *Tex. Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 208, 216 (1974)). The

19   putative class representatives allege that they applied for admission or attempted to

20   apply for admission at only the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports

21   of entry. Thus, even assuming for argument's sake that the Court certifies the

22   broadest possible class the representative parties might be legally permitted to

23   represent, the individual plaintiffs still cannot challenge actions taken at other ports

24   of entry, because those plaintiffs are not part of a class of individuals who applied

25   for admission or attempted to apply for admission at such ports and do not "possess

26   the same interest and suffer the same injury as those individuals." *Wal-Mart Stores,*

27   *Inc.*, 564 U.S. at 348-49. The challenges in this action are thus limited to policies

28   issued and actions taken by the headquarters portions of the Office of Field

APPENDIX B

4

1   Operations and actions that occurred at the San Ysidro, Otay Mesa, Laredo, and

2   Hidalgo ports of entry, and any Requests that go beyond the scope of the specific

3   claims and allegations at issue are legally improper and thus irrelevant.

4       Further, the burden of searching for, collecting, reviewing, and producing

5   documents related to all ports of entry along the U.S.-Mexico border would be unduly

6   burdensome and disproportional to the needs of the case. Plaintiffs allege a border-

7   wide practice, policy, and/or procedure; discovery from the four ports of entry where

8   the named Plaintiffs allegedly encountered such a practice, policy, and/or procedure

9   (or a subset thereof), in addition to discovery from select higher-level officials and

10  centralized non-custodial sources, satisfies the needs of the case, as any evidence of

11  such a border-wide practice, policy, and/or procedure, if it exists, would necessarily

12  be found in such locations. Any discovery from other ports of entry along the U.S.-

13  Mexico border would thus be either irrelevant or duplicative and unduly

14  burdensome.

15      In light of these issues, Defendants therefore understand and construe these

16  Requests as seeking discovery limited to headquarters portions of the Office of Field

17  Operations and the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry, and

18  will search for and produce only relevant and non-privileged documents relating to

19  aliens arriving or attempting to arrive at these four ports of entry, and documents from

20  Office of Field Operations Headquarters. Defendants' responses to each and every

21  Request, and their corresponding production and privilege log, will be limited

22  consistent with this general objection. This objection also serves as a limiting principle

23  on the parameters of Defendants' search for responsive documents, the contours of

24  which are being contemporaneously negotiated with Plaintiffs.

25      7.   Defendants object to the Requests to the extent that they seek: (a)

26  attorney work product, trial preparation materials, or communications that are

27  protected by the attorney-client privilege, (b) documents that are protected by the

28  deliberative process privilege, the joint defense privilege, the common interest

APPENDIX B

5

privilege, the law enforcement privilege (and/or as law enforcement sensitive), the official information privilege, the executive privilege, the investigatory files privilege, the self-critical analysis privilege, the *Machin* privilege; (c) documents that, if produced would violate the legitimate privacy interests and expectations of persons who are not party to this litigation; or (d) documents to which any other privilege applies.

Defendants will assert privileges specific to each request in their privilege log, on the production itself, or in their response to the request and Defendants agree to meet and confer regarding privilege objections to which Plaintiffs assert objections. Documents generated after the filing of Plaintiffs' initial Complaint in this action representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

8. Defendants object to producing confidential, sensitive, or personally-identifying information prior to the entry of an order protecting that information from disclosure.

9. Defendants object to each and every Request to the extent that it seeks information protected from disclosure by statutes, regulations, or directives regarding the protection of privacy, confidential information, or medical information, or under statutes and regulations prohibiting disclosure of information related to individual aliens—including, but not limited to, 8 U.S.C. § 1160(b)(5), (6); 8 U.S.C. § 1186a(c)(4); 8 U.S.C. § 1202(f); 8 U.S.C. § 1254a(c)(6), 8 U.S.C. § 1255a(c)(4), (5); 8 U.S.C. § 1304(b); 8 U.S.C. § 1367; 22 U.S.C. § 7105(c)(1)(C); 8 C.F.R. § 208.6; 8 C.F.R. § 210.2(e); 8 C.F.R. § 214.11(p); 8 C.F.R. § 214.14(e); 8 C.F.R. § 216.5(e)(3)(viii); 8 C.F.R. § 236.6; 8 C.F.R. § 244.16; 8 C.F.R. § 245a.2(t); 8 C.F.R. § 245a.3(n); 8 C.F.R. § 245a.21; 8 C.F.R. § 1003.46; or 8 C.F.R. § 1208.6—many of which would subject Defendants and their employees to civil or criminal penalties or

APPENDIX B

other sanctions in the event of unauthorized disclosure. Thus, Defendants will not produce responsive information that falls within this category without an express written waiver from the alien authorizing such disclosure, or a court order, as may be permitted in certain circumstances.

10.    Defendants object to these Requests (and the definitions and instructions that accompany them) to the extent that they purport to impose obligations greater than those imposed by the Federal Rules of Civil Procedure, the Local Civil Rules of the U.S. District Court for the Southern District of California, or an order of this Court. While Defendants are not currently aware of any documents they are withholding on the basis of this objection, Defendants nonetheless assert this objection to preserve it.

11.    Defendants object to the Requests to the extent they impose obligations beyond those agreed upon in the Stipulated ESI Protocol. Defendants will search agreed upon custodian and non-custodial sources agreed to by the parties in accordance with the terms of that protocol. If the parties cannot agree on sources and search parameters, Defendants will limit their search parameters to the sources and search terms and methods identified by Defendants. Defendants also agree to meet and confer with Plaintiffs regarding the possibility of direct collection of documents without using a forensic document collection and the application of search terms if appropriate under the circumstances.

## OBJECTIONS TO DEFINITIONS

1.    Defendants object to the definitions of the terms "YOU" and "YOUR" on the grounds that they are overbroad, vague, unduly burdensome, invade the attorney/client privilege or the attorney work-product doctrine, and violate the Privacy Act, 5 U.S.C. § 552a et seq. Unless otherwise specified, Defendants interpret the definition of YOU or YOUR as referring to DHS, CBP, OFO, and individual DHS employees from whom DHS has the legal right to obtain upon demand information relevant to the claims and defenses in this case. Defendants do not

APPENDIX B

interpret the definition of "YOU" or "YOUR" to include DHS component agencies or CBP subcomponents that are not parties to this case. Defendants' responses to each applicable Request, and their corresponding production and privilege log, will be limited consistent with this objection and the objections to the definitions of DHS and CBP. This objection also serves as a limiting principle on the parameters of Defendants' search for responsive documents, the contours of which are being contemporaneously negotiated with Plaintiffs.

2. Defendants object to the definition of "CBP" as overbroad, unduly burdensome, and disproportional to the needs of the case. Plaintiffs' definition includes "any divisions, subdivisions, components or sections" of CBP and "CBP offices at ports of entry, including any divisions, subdivisions, components or sections therein[.]" Plaintiffs' definition also includes "any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP." First, Plaintiffs' definition is overly broad and disproportional to the needs of the case in that it would potentially include CBP components that are not relevant to the claims and defenses in this case, such as Air and Marine Operations and U.S. Border Patrol. Second, Plaintiffs' definition is also overly broad and disproportional to the needs of the case because this case challenges the alleged actions of CBP's Office of Field Operations at the headquarters level and at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry. Thus, requests for documents from other subcomponents of CBP that do not relate to those challenged actions reaches beyond what may be relevant to the claims and defenses in this case. Third, asking Defendants to search and produce documents from all components of CBP would be unduly burdensome and also disproportional as CBP employs more than 60,000 people and many of these employees are not relevant to the claims or defenses in this case. See "About CBP," U.S. Customs and Border Protection (last modified April 18, 2019), https://www.cbp.gov/about.

APPENDIX B

Defendants also object to Plaintiffs' definition of "CBP" to the extent it includes all "private contractors hired by CBP" to the extent the work of those contractors is not relevant to this case and to the extent that Defendants do not have a legal right to obtain documents from them. As applicable, Defendants will construe Plaintiffs' requests as limited to documents over which Defendants exercise possession or custody or have a legal right to obtain, and from contractors whose work relates to the Office of Field Operations and San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.

Defendants do not interpret the definition of "CBP" to include all subcomponents of CBP or all employees of CBP. Defendants construe "CBP" to refer to the named Defendants in their official capacities, U.S. Customs and Border Protection and, where appropriate in the context, its headquarters and its Office of Field Operations, and the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.

Defendants' responses to each applicable Request, and their corresponding production and privilege log, will be limited consistent with this objection. This objection also serves as a limiting principle on the parameters of Defendants' search for responsive documents, the contours of which are being contemporaneously negotiated with Plaintiffs.

3.     Defendants object to the definition of "DHS" as overbroad, vague, unduly burdensome, and disproportional to the needs of the case. Specifically, Plaintiffs' definition includes "headquarters and offices" and "any divisions, subdivisions, components or sections" of DHS. The definition also includes "any other DHS organizational structures." First, Plaintiffs' definition is overly broad and disproportional to the needs of the case in that it would include DHS components that are not relevant to the claims and defenses in this case. Second, Plaintiffs' definition is also overly broad and disproportional to the needs of the case because this case challenges the alleged actions of CBP's Office of Field Operations at the

APPENDIX B

San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry. Third, asking Defendants to search for and produce documents from all components of DHS would be unduly burdensome as DHS employs more than 240,000 people and many of these employees are not relevant to the claims or defenses in this case. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs. Accordingly, Defendants do not interpret the definition of "DHS" to include all component agencies of DHS or all employees of DHS and its component agencies. Defendants construe "DHS" to refer to DHS components, offices, and personnel at issue in this case, including, as applicable, the DHS Office of Inspector General ("OIG").

Defendants' responses to each applicable Request, and their corresponding production and privilege log, will be limited consistent with this objection. This objection also serves as a limiting principle on the parameters of Defendants' search for responsive documents, the contours of which are being contemporaneously negotiated with Plaintiffs.

4.    Defendants object to the definition of "COMMUNICATION" on the grounds that it is vague, overly broad, and unduly burdensome because it is defined so broadly as to include oral and/or non-written communications, which are beyond the scope of Rule 34. *See* Fed. R. Civ. P. 34 (allowing requests to inspect or produce documents, electronically stored information, or tangible items). For the purposes of responding to these Requests, Defendants construe COMMUNICATION to refer to oral or non-written communications only to the degree that they have been memorialized in tangible and reasonably accessible form, and such construction is reflected in all of Defendants' responses and in any corresponding production or privilege log.

5.    Defendants object to the definition of "DOCUMENT(S)" on the grounds that it is overly broad, unduly burdensome, and disproportional to the needs of this case because it is defined so broadly as to include oral and/or non-written

APPENDIX B

communications, which are beyond the scope of Rule 34. *See* Fed. R. Civ. P. 34 (allowing requests to inspect or produce documents, electronically stored information, or tangible items). For purposes of this response, Defendants construe DOCUMENT(S) to include only oral or non-written communications that have been memorialized in tangible form, , and such construction is reflected in all of Defendants' responses and any corresponding production or privilege log.

Defendants also object to the definition of "DOCUMENT(S)" to the extent it seeks documents "to which you otherwise have access." In the Ninth Circuit, the standard for possession, custody, or control is the legal right to obtain documents. *See 7-UP Bottling Co. v. Archer Daniels Midland Co.* (*In re Citric Acid Litig.*), 191 F.3d 1090, 1107 (9th Cir. 1999). Defendants are only under the obligation to produce relevant, non-privileged information, to the extent that it exists, if individuals, operating in their official governmental capacity, have responsive, non-privileged information that is under the possession, custody or control of the named Defendants or that the named Defendants have the legal right to obtain on demand. *Id.* Therefore, the definition is overly broad and an incorrect statement of the standard. For purposes of these Responses, Defendants construe DOCUMENT(S) to include those documents within their possession, custody, and control, and such construction is reflected in all of Defendants' responses and any corresponding production or privilege log.

6.      Defendants object to the definition of "ALL DOCUMENTS" on the grounds that it is overly broad, unduly burdensome, and disproportional to the needs of this case because it is defined so broadly as to include documents in the possession, custody or control of "affiliates, partners, agents, consultants, [] advisors, attorneys, investigators and representatives." In the Ninth Circuit, the standard for possession, custody, or control is the legal right to obtain documents. *See 7-UP Bottling Co. v. Archer Daniels Midland Co.* (*In re Citric Acid Litig.*), 191 F.3d 1090, 1107 (9th Cir. 1999). Defendants are only under the obligation to produce relevant, non-privileged

APPENDIX B

1  information, to the extent that it exists, if individuals, operating in their official

2  governmental capacity, have responsive, non-privileged information that is under

3  the possession, custody or control of the named Defendants or that the named

4  Defendants have the legal right to obtain on demand. *Id.* Defendants do not have the

5  right to obtain documents from all "affiliates, partners, agents, consultants, []

6  advisors, attorneys, investigators and representatives."

7       Defendants also object to the definition of "ALL DOCUMENTS" on the

8  grounds that it is overly broad and unduly burdensome because it is defined so

9  broadly as to include documents not in Defendants' possession, custody or control

10  but "to which [Defendant] otherwise ha[s] access." In the Ninth Circuit, the standard

11  for possession, custody, or control is the legal right to obtain documents. *See 7-UP*

12  *Bottling Co. v. Archer Daniels Midland Co.* (*In re Citric Acid Litig.*), 191 F.3d 1090,

13  1107 (9th Cir. 1999). Defendants are only under the obligation to produce relevant,

14  non-privileged information, to the extent that it exists, if individuals, operating in

15  their official governmental capacity, have responsive, non-privileged information

16  that is under the possession, custody or control of the named Defendants or that the

17  named Defendants have the legal right to obtain on demand. *Id.* Defendants do not

18  have the legal right to obtain all documents to which it otherwise has "access."

19       For purposes of these responses, Defendants will construe the requests as

20  seeking only documents over which Defendants exercise possession or custody, or

21  have the legal right to obtain, and such construction is reflected in all of Defendants'

22  responses and any corresponding production or privilege log.

23       7.    Defendants object to the definition of "IDENTIFY" and

24  "IDENTIFIED" used with the respect to a document to the extent it creates an

25  obligation that does not exist under Federal Rules of Civil Procedure 26 or 34, by

26  requesting that Defendants reveal information that is privileged or otherwise

27  protected from disclosure.

28       8.    Defendants object to the definition of "RELATING TO" insofar as it

APPENDIX B

purports to define "relate," "reflect," "respect," "regard," or "refer" to include "or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed in the request," as the use of any such terms are not proportional to the needs of the case, are overly broad, oppressive, and the burden of a request using any such term would outweigh its benefit. To ask Defendants to search for and produce documents with only the most tangential connection to responsive topics would be unduly burdensome because it would encompass discovery that is not relevant to the claims and defenses in this case.

Defendants thus place a limiting construction on "relating to" such that they interpret the term to not seek only documents that are independently and directly responsive and relevant to the claims and defenses in this case, and such construction is reflected in all of Defendants' responses and any corresponding production or privilege log. While it is difficult to identify in advance every type of document that Defendants may withhold on the basis of this objection, Defendants provide the following examples of the types of documents that they maintain are improperly encompassed by Plaintiffs' overbroad definition.

First, documents that "relate[s]" in some "indirect" manner to a responsive topic are not necessarily independently responsive. Accordingly, for example, Defendants reserve the right to withhold nonresponsive attachments that are members of an email family that also contains responsive attachments. Second, documents and forms that relate to a specific, individual alien's asylum application may "reflect" in some indirect manner agency procedures responsive to RFP 1, without actually discussing those agency procedures would not provide meaningful information about the application of those agency procedures. Defendants reserve the right to withhold such documents even after the entry of a confidentiality protective order, particularly in light of the sensitive nature of such documents.

9.      Defendants object to the definition of "including" and "including but not limited to," as the use of those terms is overly broad, vague and confusing.

APPENDIX B

13

Defendants' concern with this definition is that it purports to require Defendants to produce categories of documents that are not expressly listed in the Requests, and which Defendants are not aware that Plaintiffs consider responsive. While Defendants are not currently aware of any documents they are withholding on the basis of this objection, Defendants nonetheless assert this objection to preserve it.

10. Defendants object to the definitions of "and" and "or" insofar as they purport to define the terms as to be inclusive of each other "where dual construction will serve to bring within the scope of these requests any DOCUMENT which would otherwise not be brought within its scope," as overly broad, not proportional to the needs of the case, and burdensome. Defendants additionally object to the definitions of "any" and "all" insofar as they purport to define the terms to be inclusive of each other as overly broad, vague, and confusing.

First, the definitions of "and" "or" "any" and "all" may bring into the scope of discovery information that may not be relevant to the claims or defenses in this case. Further, searching for documents that have the broader reading of these varying words would be unduly burdensome.

Defendants thus place a limiting construction on these terms such that they do not seek documents other than those that are independently responsive and relevant to the claims and defenses in this case, and such construction is reflected in all of Defendants' responses and any corresponding production or privilege log.

**OBJECTIONS TO INSTRUCTIONS:**

1. Defendants object to Instruction No. 1 relating to production or production format to the extent that it conflicts with provisions in the agreed-upon terms of the Stipulated ESI Protocol.

2. Defendants object to Instruction No. 2 to the extent that the requirements listed exceed the requirements of Federal Rule of Civil Procedure 26(b)(5)(A) and/or the agreed-upon terms of the Stipulated ESI Protocol.

3. Defendants object to Instruction Nos. 2 and 3 to the extent that they

APPENDIX B

conflict in any way with the Ninth Circuit's standard for possession, custody, or control which defines control as "the legal right to obtain upon demand." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999).

Defendants object to Instruction No. 3 as unduly burdensome insofar as it purports to require a document-by-document recounting, including, as completely as possible each author, preparer, and recipient of the Document; a complete description of the type, title, and subject matter of the Document; and the date on which and manner in which the Document was created, lost, discarded, destroyed, or otherwise disposed of, for every responsive Document, without regard to the date on which it was created, the date on which it was lost, discarded, destroyed, or otherwise disposed of, or whether litigation involving the substance of the Document was reasonably foreseeable at that time it was lost, discarded, destroyed or otherwise disposed of. Defendants construe such instruction as seeking such information only with regards to documents "lost, discarded, destroyed, or otherwise disposed of" only after July 12, 2017, the date that this lawsuit was filed.

## Request for Production No. 26

All documents that you referenced in, or relied upon when drafting, your answers and objections to Plaintiffs' interrogatories.

**Objections:** Defendants object to Request for Production No. 26 as premature to the extent it seeks information about answers to interrogatories that have not yet been served or answered. Defendants further object to the Request to the extent it seeks information protected from disclosure by any legal privileges or protections, including, but not limited to, the attorney-client privilege, the attorney work-product doctrine, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive. Defendants incorporate any objections to Plaintiffs' interrogatories into these objections to Request for Production No. 26.

Defendants also object to RFP 26 in accordance with Objections Which Apply to All RFPs Nos. 1 and 7-10; Objections to Definitions Nos. 1, 5-6, and 10; and,

APPENDIX B

1   Objections to Instructions Nos. 1, 2, and 4.

2       **Response:** Subject to, and without waiving, their objections Defendants

3   respond as follows: Defendants will produce responsive, non-privileged documents

4   relied upon to answer Plaintiffs' First Set of Interrogatories, which Defendants

5   answered on April 29, 2019, if any such documents exist and have not already been

6   produced. Documents created on or after July 12, 2017, the date of Plaintiffs'

7   original complaint (ECF No. 1), representing either communications with counsel

8   or communications or documents relating to the actual conduct of litigation post-

9   complaint—and thus clearly protected by either the attorney-client privilege or the

10   work-product doctrine—will be treated as non-responsive and therefore will not

11   appear on any privilege log. Defendants will supplement these objections and

12   responses if and as appropriate under Federal Rule of Civil Procedure 26(e).

13   **Request for Production No. 27**

14   All documents that you referenced in, or relied upon when drafting, your answer to

15   Plaintiffs' second amended complaint.

16       **Objections:** Defendants object to Request for Production No. 27 as premature

17   because it seeks information about an answer that has not yet been drafted.

18   Defendants further object to the Request to the extent it seeks information protected

19   from disclosure by any legal privileges or protections, including, but not limited to,

20   the attorney-client privilege, the attorney work-product doctrine, the deliberative

21   process privilege, and the law enforcement privilege and/or as law enforcement

22   sensitive.

23       Defendants also object to RFP 27 in accordance with Objections Which Apply

24   to All RFPs Nos. 1 and 7-10; Objections to Definitions Nos. 1, 5-6, and 10; and

25   Objections to Instructions Nos. 1, 2, and 4.

26       **Response:** In accordance with Defendants' objections, Defendants respond as

27   follows: Defendants have not answered the Second Amended Complaint as of the

28   date of these responses. Accordingly, Defendants cannot presently identify

APPENDIX B

documents that are responsive to Request for Production No. 27. Defendants will supplement these objections and responses if and as appropriate under Federal Rule of Civil Procedure 26(e).

**Request for Production No. 28**

All documents that you have received pursuant to any subpoena, letter of request, letter rogatory, mutual legal assistance treaty, or information request related to the claims and defenses in this litigation.

**Objections:** Defendants object to Request for Production No. 28 because it seeks information protected from disclosure by executive privilege, including information that would implicate the foreign affairs of the United States. Defendants also object to the extent Request No. 28 seeks information protected from disclosure by any legal privileges or protections, including, but not limited to, the attorney-client privilege, the attorney work-product doctrine, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive. Defendants preserve any and all objections to Request No. 28.

Defendants also object to RFP 28 in accordance with Objections Which Apply to All RFPs Nos. 1 and 7-10; Objections to Definitions Nos. 1, 5-6, 8, and 10; Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with their objections, Defendants respond as follows: Defendants have not issued any subpoena under Federal Rule of Civil Procedure 45 as of the date of these responses. Accordingly, to the extent Request No. 28 requests documents received pursuant to a Rule 45 subpoena, no responsive documents exist. Defendants will supplement these objections and responses if and as appropriate under Federal Rule of Civil Procedure 26(e).

To the extent Request No. 28 requests documents received pursuant to any non-Rule 45 subpoena, letter of request, letter rogatory, mutual legal assistance treaty, or information request related to the claims and defenses in this litigation, such a request seeks privileged information. Accordingly, Defendants neither

APPENDIX B

confirm nor deny whether any such documents exist, nor will they search for or produce any such documents, to the extent they exist.

**Request for Production No. 29**

All documents that you have relied upon when drafting your responses and objections to plaintiffs' requests for admission or referenced in your responses and objections to plaintiffs' requests for admission.

**Objections:** Defendants object to Request for Production No. 29 as premature because it seeks information about responses to requests for admission that have not yet been served, and to the extent it calls for documents protected from disclosure by any legal privileges or protections, including, but not limited to, the attorney-client privilege, the attorney work-product doctrine, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive.

Defendants also object to RFP 29 in accordance with Objections Which Apply to All RFPs Nos. 1 and 7-10; Objections to Definitions Nos. 1, 5-6, and 10; and Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with their objections, Defendants respond as follows: Defendants have not been served with requests for admission as of the date of these responses. Accordingly, Defendants cannot presently identify any documents that are responsive to Request for Production No. 29. Defendants will supplement these objections and responses if and as appropriate under Federal Rule of Civil Procedure 26(e).

**Request for Production No. 30**

All documents that you have referenced in, or relied upon when drafting, your Federal Rule of Civil Procedure 26(a) initial disclosures.

**Objections:** Defendants object to Request for Production No. 30 to the extent it calls for documents protected by any legal privileges, including, but not limited to, the attorney-client privilege, the attorney work-product doctrine, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement

APPENDIX B

1    sensitive. Defendants also object to RFP 30 in accordance with Objections Which
2    Apply to All RFPs Nos. 1 and 7-10; Objections to Definitions Nos. 1, 5-6, and 10;
3    and, Objections to Instructions Nos. 1, 2, and 4.

4        **Response:** Subject to, and without waiving, their objections, Defendants will
5    produce or log non-privileged responsive documents responsive to Request for
6    Production No. 30. Documents created on or after July 12, 2017, the date of
7    Plaintiffs' original complaint (ECF No. 1), representing either communications with
8    counsel or communications or documents relating to the actual conduct of litigation
9    post-complaint—and thus clearly protected by either the attorney-client privilege or
10   the work-product doctrine—will be treated as non-responsive and therefore will not
11   appear on any privilege log.

12   **Request for Production No. 31**
13   Any document referenced in, or relied upon, when drafting any declaration or
14   affidavit that you have submitted to the Court in this litigation.

15       **Objections:** Defendants object to Request for Production No. 31 as to the
16   extent it calls for documents protected by any legal privileges, including, but not
17   limited to, the attorney-client privilege, the attorney work-product doctrine, the
18   deliberative process privilege, and the law enforcement privilege and/or as law
19   enforcement sensitive. Defendants also object to RFP 31 in accordance with
20   Objections Which Apply to All RFPs Nos. 1, 7-10; Objections to Definitions Nos.
21   1, 5-6, and 10; Objections to Instructions Nos. 1, 2, and 4.

22       **Response:** Subject to, and without waiving, their objections, Defendants will
23   produce or log non-privileged responsive documents, if any, responsive to Request
24   for Production No. 31. Documents created on or after July 12, 2017, the date of
25   Plaintiffs' original complaint (ECF No. 1), representing either communications with
26   counsel or communications or documents relating to the actual conduct of litigation
27   post-complaint—and thus clearly protected by either the attorney-client privilege or
28   the work-product doctrine—will be treated as nonresponsive and therefore will not

APPENDIX B

1  appear on any privilege log.

2  **Request for Production No. 32**

3  All documents that you intend to use for purposes of impeachment at any deposition,

4  evidentiary hearing, or at trial in this litigation.

5  **Objections:** Defendants object to Request for Production No. 32 as

6  premature, speculative, and outside the proper scope of discovery. This request does

7  not purport to seek documents based on their relevance to claims and defenses to

8  this case, but instead improperly seeks pure impeachment material with no other

9  connection to the case, which is not required to be disclosed under Federal Rule of

10  Civil Procedure 26(a)(3). Defendants also object to this Request as calling for the

11  disclosure of work product, and to the extent it calls for documents protected from

12  disclosure by any legal privileges or protections, including, but not limited to, the

13  attorney-client privilege, the attorney work-product doctrine, the deliberative

14  process privilege, and the law enforcement privilege and/or as law enforcement

15  sensitive. Defendants further object to this Request as improper to the extent it seeks

16  to limit the future use of impeachment material; Defendants cannot know or predict

17  what the precise testimony of any deponent or trial witness will be.

18  Defendants also object to RFP 32 in accordance with Objections Which Apply

19  to All RFPs Nos. 1 and 7-10 and Objections to Definitions Nos. 1, 5-6, and 10.

20  **Response:** In accordance with their objections, Defendants respond as

21  follows: Defendants will not produce documents in response to this Request.

22  **Request for Production No. 33**

23  All documents cited in or relied upon in any expert reports disclosed by you in this

24  litigation.

25  **Objections:** Defendants object to Request for Production No. 33 as premature

26  and to the extent it calls for documents protected by any legal privileges or

27  protections from disclosure, including, but not limited to, the attorney-client

28  privilege, the attorney work-product doctrine, the deliberative process privilege, and

APPENDIX B

the law enforcement privilege and/or as law enforcement sensitive. Defendants also object to RFP 33 in accordance with Objections Which Apply to All RFPs Nos. 1, 7-10 and Objections to Definitions Nos. 1, 5-6, and 10; Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with their objections, Defendants respond as follows: Defendants have not disclosed any expert reports as of the date of these responses. Accordingly, no documents responsive to Request for Production No. 33 presently exist. Defendants will supplement their responses if and as appropriate under Federal Rule of Civil Procedure 26(e).

## Request for Production No. 34

Documents sufficient to show policies adopted by you, DHS, or CBP for the retention of documents and/or electronically stored information.

**Objections:** Defendants object to Request for Production No. 34 as vague and ambiguous, as it does not define the term "sufficient." Defendants object to Request for Production No. 34 to the extent it calls for documents protected by any legal privileges or protections from disclosure, including, but not limited to, the attorney-client privilege, the attorney work-product doctrine, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive. Defendants also object to RFP 34 in accordance with Objections Which Apply to All RFPs Nos. 1, 7-10; Objections to Definitions Nos. 1-3, 5-6, and 10; Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with their objections, Defendants will produce or log documents responsive to Request for Production No. 34. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

**Request for Production No. 35**

All non-privileged documents and communications containing reactions by you or officials at DHS or CBP to this lawsuit.

**Objection:** Defendants object to Request for Production No. 35 as seeking information that is outside the scope of Rule 34, not relevant to any party's claim or defense, not proportional to the needs of the case, overly broad and unduly burdensome, and vague and ambiguous. First, Defendants object to Request for Production No. 35 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communication(s)" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communication(s)" to include only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

Second, the named Defendants, DHS's, and CBP's "reactions . . . to this lawsuit" are not relevant to any party's claims or defenses because they do not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. A "reaction" to this lawsuit would not have "any tendency" to make any of the issues in this case "more or less probable than [they] would be without" the "reaction," nor is the fact of a "reaction" "of consequence in

APPENDIX B

1    determining" the issues. Fed. R. Evid. 401.

2    Third, a request to produce the "reactions" of the named Defendants, DHS,

3    and CBP "to this lawsuit" is not proportional to the needs of the case and is overly

4    broad and unduly burdensome. Based on Plaintiffs' definitions, a complete response

5    would require Defendants to collect and search the documents of each of the named

6    Defendants; each of the named Defendants' "agents, representatives, employees,

7    attorneys and investigators"; all of U.S. Customs and Border Protection, including

8    "its headquarters and offices, including any divisions, subdivisions, components or

9    sections therein; CBP offices at ports of entry, including any divisions, subdivisions

10   or sections therein; or any other CBP organizational structures, including but not

11   limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors

12   hired by CBP"; and all of the U.S. Department of Homeland Security, including "its

13   headquarters and offices, including any divisions, subdivisions, components or

14   sections therein, or any other DHS organizational structures." *See* Pls.' Second

15   RFPs, Definitions A—C. Such a search, especially given the vagueness of the term

16   "reaction," would be unduly burdensome and disproportionate to the needs of the

17   case.

18   Although Plaintiffs limit the definitions of "your," "CBP," and "DHS" based

19   on what is "appropriate in the context" of each request, there is nothing in Request

20   for Production No. 35 that indicates what the "appropriate context" of a search for

21   "reactions" to this lawsuit might be. *See id.* DHS employs more than 240,000 people,

22   and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of

23   Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP,"

24   U.S. Customs and Border Protection (last modified April 18, 2019),

25   https://www.cbp.gov/about. Collecting and searching through the documents of all

26   of these individuals, as Plaintiffs request, is plainly not proportional to the needs of

27   this case and is overly broad and unduly burdensome, especially considering that

28   any "reactions" are of no consequence to the issues. *See* Fed. R. Evid. 401; *cf. Alfaro*

APPENDIX B

23

1    *v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept.

2    21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to

3    "canvas every employee who might have had a conversation with [the plaintiff]"

4    would be "onerous and over burdensome").

5          Finally, the term "reactions" is vague and ambiguous because it does not

6    specify the information Plaintiffs seek and is susceptible to multiple definitions and

7    understandings. *See, e.g.,* "Reaction," *Oxford English Dictionary* (3d Ed. Dec.

8    2008). Thus, even if Request No. 35 were appropriately limited in scope, Defendants

9    would not know what documents and communications to search for.

10         Defendants also object to RFP 35 in accordance with Objections Which Apply

11   to All RFPs Nos. 1-6 and 10; Objections to Definitions Nos. 1-6, and 10.

12         **Response:** In light of the foregoing objections, Defendants will not search for,

13   produce, or log documents responsive to Request for Production No. 35.

14   **<u>Request for Production No. 36</u>**

15   All documents and communications containing reactions by you or employees,

16   representatives, or officials of DHS or CBP to tweets or comments by the President

17   of the United States and/or the White House concerning (a) noncitizens seeking

18   asylum in the United States, (b) migrant "caravans," (c) the United States' capacity

19   to detain and/or process noncitizens seeking to enter the United States via the U.S.-

20   Mexico border, (d) noncitizens seeking to enter the United States via the U.S.-

21   Mexico border, and/or (e) "illegal immigration," including, but not limited, to the

22   following tweets and/or statements:

23         • June 16, 2015: "When Mexico sends its people, they're not sending their

24            best. They're not sending you. They're not sending you. They're sending

25            people that have lots of problems, and they're bringing those problems

26            with [them]. They're bringing drugs. They're bringing crime. They're

27            rapists. And some, I assume, are good people."

28         • October 8, 2017: "END ASYLUM ABUSE: Tighten standards (including

APPENDIX B

24

`credible fear' standard), impose penalties for fraud, and ensure applicants are not released while their claims are verified."

- October 8, 2018: "Chronic asylum fraud and loopholes allow illegal immigrants to gain quick and easy entry."

- June 18, 2018: "We don't want what is happening with immigration in Europe to happen with us!"

- June 19, 2018: "Current law sets an easily-met credible fear standard, which allows aliens who make meritless asylum claims to remain in the United States for years while they litigate their cases."

- June 24, 2018: "When somebody comes in, we must immediately, with no Judges or Court Cases, bring them back from where they came."

- June 30, 2018: "When people come into our Country illegally, we must IMMEDIATELY escort them back out without going through years of legal maneuvering."

- July 5, 2018: "When people, with or without children, enter our Country, they must be told to leave without our Country being forced to endure a long and costly trial. Tell the people, 'OUT,' and they must leave, just as they would if they were standing on your front lawn."

- October 21, 2018: "The Caravans are a disgrace to the Democrat Party. Change the immigration laws NOW!"

- October 21, 2018: "Full efforts are being made to stop the onslaught of illegal aliens from crossing our [s]outhern [b]order. People have to apply for asylum in Mexico first, and if they fail to do that, the U.S. will turn them away. The courts are asking the U.S. to do things that are not doable!"

- November 1, 2018: "Flaws in our asylum system allow illegal aliens with meritless claims to cross our borders and remain here for years."

- November 1, 2018: "The standards that apply to the credible fear process is a major driver of our Nation's immigration crisis."

APPENDIX B

- November 16, 2018: "Isn't it ironic that large [c]aravans of people are marching to our border wanting U.S.A. asylum because they are fearful or being in their country — yet they are proudly waiving . . . their country's flag. Can this be possible? Yes, because it is all a BIG CON, and the American taxpayer is paying for it!"

- November 18, 2018: "Catch and [r]elease is an obsolete term. It is not [c]atch and [d]etain. Illegal [i]mmigrants trying to come into the U.S.A., often proudly flying the flag of their nation as they ask for U.S. [a]sylum, will be detained or turned away. Dems must approve [b]order [s]ecurity & [w]all NOW!"

- December 28, 2018: "We will be forced to close the [s]outhern [b]order entirely if the [o]bstrunctionist Democrats do not give us the money to finish the [w]all & also change the ridiculous immigration laws that our [c]ountry is saddled with. Hard to believe there was a Congress & President who would approve!"

- January 30, 2019: "Asylum loopholes are exhausting resources and diverting our law enforcement personnel from their mission—forcing agencies tasked with preventing illegal border crossing to 'act more like a makeshift Red Cross.'

**Objections:** Defendants object to Request for Production No. 36 as seeking information that is outside the scope of Rule 34, not relevant to any party's claim or defense, not proportional to the needs of the case, overly broad and unduly burdensome, and vague and ambiguous. First, Defendants object to Request for Production No. 36 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communication(s)" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other

APPENDIX B

intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communication(s)" to include only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

Second, the named Defendants, DHS's, and CBP's "reactions" to "tweets or comments by the President of the United States and/or the White House" concerning the delineated topics are not relevant to any party's claims or defenses because they do not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. A "reaction" to the President's or White House's tweets or statements does not have "any tendency" to make any of the issues in this case "more or less probable than [they] would be without" the "reaction," nor is the fact that a DHS or CBP employee may have "react[ed]" to such tweets or statements "of consequence in determining" the issues. Fed. R. Evid. 401.

Third, a request to produce the "reactions" of the named Defendants, DHS, and CBP to "tweets or comments by the President of the United States and/or the White House" concerning the delineated topics is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definitions, a complete response would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of

APPENDIX B

entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A—C. Although Plaintiffs limit the definitions of "your," "CBP," and "DHS" based on what is "appropriate in the context" of each request, there is nothing in Request for Production No. 35 that indicates what the "appropriate context" of a search for "reactions" to "tweets or comments by the President of the United States and/or the White House" might be. *See id.* DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome, especially considering that any "reactions" are of no consequence to the issues. *See* Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff'" would be "onerous and over burdensome").

Finally, the term "reactions" is vague and ambiguous because it does not specify the information Plaintiffs seek and is susceptible to multiple definitions and understandings. Thus, even if Request No. 36 were appropriately limited in scope, Defendants would not know what documents and communications to search for. Request No. 36 also improperly seeks information outside the time frame of this lawsuit.

APPENDIX B

1    Defendants also object to RFP 36 in accordance with Objections Which Apply
2    to All RFPs Nos. 1-4, 6-10 and Objections to Definitions Nos. 1-6, and 9-10.

3        **Response:** In light of the foregoing objections, Defendants will not search for,
4    produce, or log documents responsive to Request for Production No. 36.

5    **Request for Production No. 37**

6    All documents and communications containing your reactions to, comments on, or
7    criticism of any news media accounts or reports of non-governmental organizations
8    related to any formal or informal policy, practice, or effort to meter or limit the
9    number of noncitizens who can apply for asylum at a port of entry on the U.S.-
10   Mexico border, including but not limited to reports published by Amnesty
11   International, Human Rights Watch, the Washington Post, the New York Times, the
12   U.S. Commission on International Religious Freedom, Human Rights First,
13   Refugees International, and/or the Washington Office on Latin America.

14       **Objections:** Defendants object to Request for Production No. 37 as seeking
15   information that is outside the scope of Rule 34, not relevant to any party's claim or
16   defense, not proportional to the needs of the case, overly broad and unduly
17   burdensome, and vague and ambiguous. First, Defendants object to Request for
18   Production No. 37 to the extent it seeks oral or non-written communications. *See*
19   Pls.' Second RFPs, Definition E (defining "communication(s)" to include "the
20   exchange of information by or through any mode or medium including, but not
21   limited to, spoken word, written correspondence, any form of technology, face-to-
22   face meetings or conveying of information through third person(s) to some other
23   intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve
24   requests to inspect or produce "documents," "electronically stored information," or
25   "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to
26   obtain    non-tangible    things.    Defendants    accordingly    construe    the    term
27   "communication(s)" to include only those items permitted by Rule 34 as stated in
28   Objections to Definitions No. 4.

APPENDIX B

Second, the named Defendants, DHS's, and CBP's "reactions to, comments on, or criticism of any news media accounts or reports of non-governmental organizations" related to the delineated topics are not relevant to any party's claims or defenses because they do not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. A "reaction[] to, comment[] on, or criticism of a news media account or non-governmental organization report does not have "any tendency" to make any of the issues in this case "more or less probable than [they] would be without" the reaction, comment or criticism, nor is the fact that a DHS or CBP employee may have reacted to, commented on, or criticized such reports "of consequence in determining" the issues. Fed. R. Evid. 401

Third, a request to produce the named Defendants', DHS's, and CBP's reactions to, comments on, or criticisms of "any news media accounts or reports of non-governmental organizations . . . including but not limited to reports published by Amnesty International, Human Rights Watch, the Washington Post, the New York Times, the U.S. Commission on International Religious Freedom, Human Rights First, Refugees International, and/or the Washington Office on Latin America," is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definitions, a complete response would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not

30

APPENDIX B

limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A-C.

Although Plaintiffs limit the definitions of "your," "CBP," and "DHS" based on what is "appropriate in the context" of each request, there is nothing in Request for Production No. 35 that indicates what the "appropriate context" of a search for "reactions" to this lawsuit might be. *See id.* DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome, especially considering that any reactions, comments, or criticisms are of no consequence to the issues. *See* Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Finally, Request No. 37 is also vague and ambiguous. Plaintiffs do not define the following terms and phrases: "reactions," "news media account," "reports of non-governmental organizations," and "formal or informal policy, practice, or effort."

Defendants also object to RFP 37 in accordance with Objections Which Apply to All RFPs Nos. 1-3, and 6-10 and Objections to Definitions Nos. 1, 4-6, and 8-10.

**Response:** In light of the foregoing objections, Defendants will not search for, produce, or log documents responsive to Request for Production No. 37.

**Request for Production No. 38**

All documents that you have produced to any committee or subcommittee of the U.S. Congress related to any formal or informal policy, practice, or effort to meter or limit the number of noncitizens who can apply for asylum at a port of entry on the U.S.-Mexico border.

**Objections:** Defendants object to Request for Production No. 38 to the extent it seeks documents that can be obtained "from some other source that is more convenient, less burdensome, [and] less expensive" for the parties. Fed. R. Civ. P. 26(b)(2)(C)(i). Publicly available information responsive to Request No. 38 can be found at: https://www.cbp.gov/about/congressional-resources/114th-congress-toolkit.

Defendants further object to Request No. 38 to the extent it seeks information protected from disclosure by any executive privilege, as it specifically requests communications between Defendants and members of Congress, and to the extent it seeks information protected by any other legal privileges or protections, including, but not limited to, the attorney-client privilege, the attorney work-product doctrine, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive.

Defendants also object to RFP 38 in accordance with Objections Which Apply to All RFPs Nos. 1, 3,and 6-10; Objections to Definitions Nos. 1, 5-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with their objections, CBP will search for and produce non-privileged documents responsive to Request for Production No. 38 that are not already publicly available. Further, Defendants will produce non-privileged documents responsive to this request, if any, that may be located as a result of their search of a limited number of custodial and non-custodial sources (as described in Response to Request No. 40). Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications

APPENDIX B

with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

**Request for Production No. 39**

All transcripts of testimony and written statements provided to any committee or subcommittee of the U.S. Congress related to any formal or informal policy, practice, or effort to meter or limit the number of noncitizens that can apply for asylum at a port of entry on the U.S.-Mexico border.

**Objections:** Defendants object to Request for Production No. 39 to the extent it seeks documents that can be obtained "from some other source that is more convenient, less burdensome, [and] less expensive" for the parties. Fed. R. Civ. P. 26(b)(2)(C)(i). Transcripts of congressional hearings can be obtained at https://www.govinfo.gov/app/collection/CHRG. Written congressional testimony given by DHS officials can be obtained at https://www.dhs.gov/news-releases/testimony. Written congressional testimony given by CBP officials can be obtained at https://www.cbp.gov/about/congressional-resources/testimony, and https://www.cbp.gov/ about/congressional-resources/testimony-archive.

Defendants also object to RFP 39 in accordance with Objections Which Apply to All RFPs Nos. 1, 3, and 10 and Objections to Definitions Nos. 5-6, 8, and 10; Objections to Instructions Nos. 1 and 4.

**Response:** In light of Defendants' objections, and because the documents sought by Request No. 39 can be found at the foregoing URLs, Defendants will not be conducting a separate search for responsive documents. Defendants will produce non-privileged documents responsive to this request, if any, that may be located as a result of their search of a limited number of custodial and non-custodial sources (as described in Response to Request No. 40).

APPENDIX B

33

**Request for Production No. 40**

All final drafts of policies, memoranda, statements in the Federal Register, or executive orders related to any formal or informal policy, practice, or effort to meter or limit the number of noncitizens that can apply for asylum at a port of entry on the U.S.-Mexico border.

**Objections:** Defendants object to Request for Production No. 40 to the extent it seeks documents that can be obtained "from some other source that is more convenient, less burdensome, [and] less expensive" for the parties. Fed. R. Civ. P. 26(b)(2)(C)(i). Final drafts of DHS implementation memoranda can be found at: https://www.dhs.gov/ending-legal-loopholes-and-securing-our-border;            and https://www.dhs.gov/executive-orders-protecting-homeland. Final drafts of CBP guidance documents can be found at https://www.cbp.gov, including at https://www.cbp.gov/ document/guidance. Final drafts of statements published in the Federal Register can be found in the Federal Register, at: https://www.federalregister.gov/. Final drafts of executive orders can be located in the Federal Register, at: https://www.federalregister.gov/presidential-documents/executive-orders. CBP-specific publications in the Federal Register can be located at: https://www.federalregister.gov/agencies/u-s-customs-and-border-protection.

Defendants also object to RFP 40 in accordance with Objections Which Apply to All RFPs Nos. 1, 3, 6, and 10; Objections to Definitions Nos. 5-6, 8, and 10; and, Objections to Instructions Nos. 1 and 4.

**Response:** In light of Defendants' objections, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No.

APPENDIX B

243), from which Defendants will produce all non-privileged documents responsive to this Request, dating from January 1, 2016, to the present that can be located after a reasonable search. Defendants will not search for any documents that can be found at the foregoing URLs. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

**Request for Production No. 41**

All documents or communications related to your knowledge, assent, direction, acquiescence, authorization, or consent to any formal or informal policy, practice, or effort to meter or limit the number of noncitizens that can apply for asylum at a port of entry on the U.S.-Mexico border.

**Objections:** Defendants object to Request for Production No. 41 to the extent it seeks information that is outside the scope of Rule 34, as not proportional to the needs of the case, as overly broad and unduly burdensome, and as seeking information protected from disclosure by the attorney-client privilege, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive. First, Defendants object to Request No. 41 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communications" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things.

1   Defendants accordingly construe the term "communications" to include only those

2   items permitted by Rule 34 as stated in Objections to Definitions No. 4.

3       Second, a request to produce "all documents" relating to the named

4   Defendants' "knowledge, assent, direction, acquiescence, authorization, or consent

5   to any formal or informal policy, practice, or effort to meter or limit the number of

6   noncitizens that can apply for asylum at a port of entry on the U.S.-Mexico border"

7   is not proportional to the needs of the case and is overly broad and unduly

8   burdensome. Based on Plaintiffs' definition, a complete response would require

9   Defendants to collect and search the documents of each of the named Defendants

10  and each of the named Defendants' "agents, representatives, employees, attorneys

11  and investigators." *See* Pls.' Second RFPs, Definition A. Acting Secretary

12  McAleenan oversees more than 240,000 employees. *See* "About DHS," U.S. Dep't

13  of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs.

14  Commissioner McAleenan oversees more than 60,000 employees. "About CBP,"

15  U.S. Customs and Border Protection (Last modified April 18, 2019),

16  https://www.cbp.gov/about. Executive Assistant Commissioner Owen oversees

17  more than 29,000 employees. https://www.cbp.gov/about/leadership-

18  organization/executive-assistant-commissioners-offices/field-operations (Oct. 19,

19  2016); Second Am. Compl. ¶ 38. Collecting and searching through the documents

20  of all of these individuals, as Plaintiffs request, is plainly not proportional to the

21  needs of this case and is overly broad and unduly burdensome *Cf. Alfaro v. City of*

22  *San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018)

23  (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every

24  employee who might have had a conversation with [the plaintiff'" would be

25  "onerous and over burdensome").

26      Third, Defendants object to Request for Production No. 41 to the extent it

27  seeks information protected from disclosure by the attorney work-product doctrine.

28  To the extent a request for "all documents" relating to the named Defendants'

APPENDIX B

36

"knowledge, assent, direction, acquiescence, authorization, or consent to any formal or informal policy, practice, or effort to meter or limit the number of noncitizens that can apply for asylum at a port of entry on the U.S.-Mexico border" implicates, for example, "documents and tangible things prepared by a party or his representative in anticipation of litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.,* 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman v. Taylor,* 329 U.S. 495 (1947), including "documents or the compilation of materials prepared by agents of the attorney in preparation for litigation," *United States v. Richey,* 632 F.3d 559, 567 (9th Cir. 2011) (citing *United States v. Nobles,* 422 U.S. 225, 238 (1975)), such as, for example, notes and emails of Defendants' attorneys and staff, and draft and final internal documents, such documents are protected from disclosure by the attorney work-product doctrine.

Fourth, Defendants object to Request for Production No. 41 to the extent it seeks information protected by the attorney-client privilege. To the extent a request for "all documents" relating to the named Defendants' "knowledge, assent, direction, acquiescence, authorization, or consent to any formal or informal policy, practice, or effort to meter or limit the number of noncitizens that can apply for asylum at a port of entry on the U.S.-Mexico border" implicates, for example, confidential communications between attorneys and clients which are made for the purpose of giving legal advice, *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981), such documents are privileged and protected from disclosure.

Fifth, Defendants object to Request No. 41 to the extent it seeks information protected from disclosure by the deliberative process privilege. To the extent a request for "all documents" relating to the named Defendants' "knowledge, assent, direction, acquiescence, authorization, or consent to any formal or informal policy, practice, or effort to meter or limit the number of noncitizens that can apply for asylum at a port of entry on the U.S.-Mexico border" implicates, for example, documents that are predecisional and deliberative, thereby containing opinions,

APPENDIX B

recommendations, or advice, *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

Sixth, Defendants object to Request No. 41 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for "all documents" relating to the named Defendants' "knowledge, assent, direction, acquiescence, authorization, or consent to any formal or informal policy, practice, or effort to meter or limit the number of noncitizens that can apply for asylum at a port of entry on the U.S.-Mexico border" implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo,* No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Finally, Defendants object to Request No. 41 as vague and confusing, and to the extent it reflects an incorrect statement of the law. Defendants will construe this request as requesting documents related to any alleged policy of queue management or "metering" as these terms are commonly used by Defendants in the course of business.

Defendants also object to RFP 41 in accordance with Objections Which Apply to All RFPs Nos. 1, 3, and 6-10; Objections to Definitions Nos. 1, 4-6, 8, and 10; Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with Defendants' objections, and in light of Request

APPENDIX B

No. 41 being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce all non-privileged documents responsive to this Request, dating from January 1, 2016, to the present that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as nonresponsive and therefore will not appear on any privilege log.

## Request for Production No. 42

All documents or communications related to your knowledge, assent, direction, acquiescence, authorization, or consent to the use of misrepresentations, threats, intimidation, coercion, verbal or physical abuse, denying access to the asylum process, and/or physically obstructing access to a port of entry (including checking the travel or identification documents of pedestrians approaching ports of entry before they cross the U.S.-Mexico border and screening out pedestrians assumed to be seeking asylum), with respect to noncitizens seeking asylum in the United States at any port of entry on the U.S.-Mexico border.

**Objections:** Defendants object to Request No. 42, to the extent that it characterizes Defendants as knowing, assenting, directing, acquiescing, authorizing or consenting to misrepresentations, threats, intimidation, coercion, verbal or physical abuse, denying access to the asylum process, and/or physically obstructing

access to ports of entry to asylum seekers at ports of entry along the U.S.-Mexico border, as: not proportional to the needs of the case; overly broad and unduly burdensome; vague and ambiguous; and seeking information protected from disclosure by the deliberative process privilege and the law enforcement privilege and/or as law enforcement sensitive.

Defendants object to Request for Production No. 42 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communications" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communications" to include only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

A request to produce all documents related to the named Defendants' "knowledge, assent, direction, acquiescence, authorization, or consent" to the delineated topics is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definitions, a complete response would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its

APPENDIX B

1   headquarters and offices, including any divisions, subdivisions, components or
2   sections therein, or any other DHS organizational structures." *See* Pls.' Second
3   RFPs, Definitions A—C. DHS employs more than 240,000 people, and CBP
4   employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland
5   Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S.
6   Customs and Border Protection (Last modified April 18, 2019),
7   https://www.cbp.gov/about. Collecting and searching through the documents of all
8   of these individuals, as Plaintiffs request, is plainly not proportional to the needs of
9   this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego*,
10  No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford,
11  M.J.) (noting that an interrogatory that obligates a party to "canvas every employee
12  who might have had a conversation with [the plaintiff]" would be "onerous and over
13  burdensome").

14  Request No. 42 is vague and ambiguous. Plaintiffs do not define the following
15  terms and phrases: "knowledge," "assent," "direction," "acquiescence,"
16  "authorization," "consent," "misrepresentations," "threats," "intimidation,"
17  "coercion," "verbal or physical abuse," and "denying access to the asylum process."
18  Defendants also object to the terms "noncitizens" and "seeking asylum," and
19  construe those terms as outlined in Defendants' Objections Which Apply to All
20  RFPs Nos. 3 and 4.

21  Defendants object to Request No. 42 as not proportional to the needs of the
22  case and as overly broad and unduly burdensome to the extent it is not limited to the
23  San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry. The claims of the
24  individual Plaintiffs in this action arise only out of the Laredo, Otay Mesa, San
25  Ysidro, and Hidalgo ports of entry. As no class exists in this action, and as no
26  Plaintiff alleges any injury at any port of entry besides San Ysidro, Otay Mesa,
27  Hidalgo, and Laredo, Defendants therefore object to the extent that these requests
28  seek information beyond the scope of the ports of entry at which individual plaintiffs

APPENDIX B

have made specific allegations. Moreover, the burden of producing information regarding other ports of entry would be disproportional to the needs of the case. As explained during the parties' meet and confer, Plaintiffs allege a border-wide practice, policy, and/or procedure; discovery from the four ports of entry where the named Plaintiffs allegedly encountered such practice, policy, and/or procedure (or a subset thereof), in addition to discovery from select higher-level custodial and non-custodial sources, satisfies the needs of the case. Any discovery from other ports of entry along the Mexico-U.S. border would be duplicative and unduly burdensome. Defendants therefore construe this request as seeking discovery limited to the Laredo, Otay Mesa, San Ysidro, and Hidalgo ports of entry, and select records from Office of Field Operations Headquarters.

Defendants object to Request for Production No. 42 to the extent it seeks information protected from disclosure by the attorney work-product doctrine. To the extent a request for "all documents" relating to the delineated topics implicates, for example, "documents and tangible things prepared by a party or his representative in anticipation of litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.,* 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman v. Taylor,* 329 U.S. 495 (1947), including "documents or the compilation of materials prepared by agents of the attorney in preparation for litigation," *United States v. Richey,* 632 F.3d 559, 567 (9th Cir. 2011) (citing *United States v. Nobles,* 422 U.S. 225, 238 (1975)), such as, for example, notes and emails of Defendants' attorneys and staff, and draft and final internal documents, such documents are protected from disclosure by the attorney work-product doctrine.

Defendants object to Request for Production No. 42 to the extent it seeks information protected by the attorney-client privilege. To the extent a request for "all documents" relating to the delineated topics implicates, for example, confidential communications between attorneys and clients which are made for the purpose of giving legal advice, *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981), such

APPENDIX B

documents are privileged and protected from disclosure.

Defendants object to Request No. 42 to the extent it seeks information protected from disclosure by the deliberative process privilege. To the extent a request for "all documents" relating to the delineated topics implicates, for example, documents that are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

Defendants object to Request No. 42 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for "all documents" relating to the delineated topics implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo,* No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants object to Request No. 42 to the extent it seeks information implicated by the Privacy Act.

Defendants also object to RFP 42 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, 6-10; Objections to Definitions Nos. 1, 4-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with Defendants' objections, and in light of Request No. 42 being disproportional to the needs of the case considering that the burden and

APPENDIX B

1   expense of the requested discovery outweighs its likely benefit, Defendants will limit
2   their search to a limited number of custodial and non-custodial sources. Defendants
3   will continue to confer with Plaintiffs in identifying reasonable custodial and non-
4   custodial sources and document identification protocols. However, in the event the
5   parties cannot agree, Defendants will limit their search to the sources identified in
6   Defendants' portion of the Supplement to the Joint 26(f) Report (ECF No. 243), from
7   which Defendants will produce all non-privileged documents responsive to this
8   Request, dating from January 1, 2016, to the present that can be located after a
9   reasonable search. Documents created on or after July 12, 2017, the date of
10  Plaintiffs' original complaint (ECF No. 1), representing either communications with
11  counsel or communications or documents relating to the actual conduct of litigation
12  post-complaint—and thus clearly protected by either the attorney-client privilege or
13  the work-product doctrine—will be treated as non-responsive and therefore will not
14  appear on any privilege log.

15  **Request for Production No. 43**

16  All documents or communications related to CBP or DHS officials using
17  misrepresentations, threats, intimidation, coercion, verbal or physical abuse, denying
18  access to the asylum process, and/or physically obstructing access to a port of entry
19  (including checking the travel or identification documents of pedestrians
20  approaching ports of entry before they cross the U.S.-Mexico border and screening
21  out pedestrians assumed to be seeking asylum), with respect to noncitizens seeking
22  asylum in the United States at any port of entry on the U.S.-Mexico border.

23      **Objections:** Defendants object to Request No. 43 to the extent that it
24  characterizes Defendants using threats, intimidation, coercion, verbal or physical
25  abuse, denying access to the asylum process, and/or physically obstructing access to
26  ports of entry to asylum seekers at ports of entry along the U.S.-Mexico border, as
27  seeking information that is outside the scope of Rule 34, as not proportional to the
28  needs of the case, as overly broad and unduly burdensome, as vague and ambiguous,

APPENDIX B

1 and as seeking information protected from disclosure by the deliberative process

2 privilege and the law enforcement privilege and/or as law enforcement sensitive.

3   First, Defendants object to Request for Production No. 43 to the extent it seeks

4 oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining

5 "communications" to include "the exchange of information by or through any mode

6 or medium including, but not limited to, spoken word, written correspondence, any

7 form of technology, face-to-face meetings or conveying of information through third

8 person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34

9 allows a party to serve requests to inspect or produce "documents," "electronically

10 stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does

11 not allow a party to obtain non-tangible things. Defendants accordingly construe the

12 term "communications" to include only those items permitted by Rule 34 as stated

13 in Objections to Definitions No. 4.

14   Second, a request to produce all documents or communications related to the

15 delineated topics is not proportional to the needs of the case and is overly broad and

16 unduly burdensome. Based on Plaintiffs' definitions, a complete response would

17 require Defendants to collect and search the documents of each of the named

18 Defendants; each of the named Defendants' "agents, representatives, employees,

19 attorneys and investigators"; all of U.S. Customs and Border Protection, including

20 "its headquarters and offices, including any divisions, subdivisions, components or

21 sections therein; CBP offices at ports of entry, including any divisions, subdivisions

22 or sections therein; or any other CBP organizational structures, including but not

23 limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors

24 hired by CBP"; and all of the U.S. Department of Homeland Security, including "its

25 headquarters and offices, including any divisions, subdivisions, components or

26 sections therein, or any other DHS organizational structures." *See* Pls.' Second

27 RFPs, Definitions A—C. DHS employs more than 240,000 people, and CBP

28 employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland

Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Third, Request No. 43 is also vague and ambiguous. Plaintiffs do not define the following terms and phrases: "misrepresentations," "threats," "intimidation," "coercion," "verbal or physical abuse," and "denying access to the asylum process." Defendants also object to the terms noncitizens and seeking asylum and construe those terms as explained in Defendants' Objections Which Apply to All RFPs Nos. 3 and 4.

Fourth, Defendants object to Request No. 43 to the extent it seeks information protected from disclosure by the deliberative process privilege. To the extent any documents "related to CBP or DHS officials using misrepresentations, threats, intimidation, coercion, verbal or physical abuse, denying access to the asylum process, and/or physically obstructing access to a port of entry (including checking the travel or identification documents of pedestrians approaching ports of entry before they cross the U.S.-Mexico border and screening out pedestrians assumed to be seeking asylum), with respect to noncitizens seeking asylum in the United States at any port of entry on the U.S.-Mexico border" are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr.*

APPENDIX B

*for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

Fifth, Defendants object to Request No. 43 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent any documents "related to CBP or DHS officials using misrepresentations, threats, intimidation, coercion, verbal or physical abuse, denying access to the asylum process, and/or physically obstructing access to a port of entry (including checking the travel or identification documents of pedestrians approaching ports of entry before they cross the U.S.-Mexico border and screening out pedestrians assumed to be seeking asylum), with respect to noncitizens seeking asylum in the United States at any port of entry on the U.S.-Mexico border" implicate "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo,* No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Finally, Defendants object to Request No. 43 to the extent it seeks information protected by the Privacy Act.

Defendants also object to RFP 43 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, and 6-10; and Objections to Definitions Nos. 2-3, 4-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with Defendants' objections, and in light of Request No. 43 being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-

APPENDIX B

1  custodial sources and document identification protocols. However, in the event the

2  parties cannot agree, Defendants will limit their search to the sources identified in

3  Defendants' portion of the Supplement to the Joint 26(f) Report (ECF No. 243), from

4  which Defendants will produce all non-privileged documents responsive to this

5  Request, dating from January 1, 2016, to the present that can be located after a

6  reasonable search. Documents created on or after July 12, 2017, the date of

7  Plaintiffs' original complaint (ECF No. 1), representing either communications with

8  counsel or communications or documents relating to the actual conduct of litigation

9  post-complaint—and thus clearly protected by either the attorney-client privilege or

10  the work-product doctrine—will be treated as nonresponsive and therefore will not

11  appear on any privilege log.

12  **Request for Production No. 44**

13  To the extent not produced in response to another request, all documents and

14  communications related to any formal or informal policy, practice, or effort to meter

15  or limit the number of noncitizens who can apply for asylum at a port of entry on the

16  U.S.-Mexico border.

17      **Objections:** Defendants object to Request for Production No. 44 as seeking

18  information that is outside the scope of Rule 34, as overly broad and unduly

19  burdensome, as not proportional to the needs of the case, and as seeking information

20  protected from disclosure by the attorney-client privilege, the attorney work-product

21  doctrine, the deliberative process privilege, and the law enforcement privilege and/or

22  as law enforcement sensitive. First, Defendants object to Request for Production No.

23  44 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs,

24  Definition E (defining "communications" to include "the exchange of information

25  by or through any mode or medium including, but not limited to, spoken word,

26  written correspondence, any form of technology, face-to-face meetings or conveying

27  of information through third person(s) to some other intended recipient"). Federal

28  Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce

APPENDIX B

48

1    "documents," "electronically stored information," or "designated tangible things."

2    Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things.

3    Defendants accordingly construe the term "communications" to include only those

4    items permitted by Rule 34 as stated in Objections to Definitions No. 4.

5          Second, a request to produce all documents or communications related to the

6    delineated topics is not proportional to the needs of the case and is overly broad and

7    unduly burdensome. Based on Plaintiffs' definitions, a complete response would

8    require Defendants to collect and search the documents of each of the named

9    Defendants; each of the named Defendants' "agents, representatives, employees,

10   attorneys and investigators"; all of U.S. Customs and Border Protection, including

11   "its headquarters and offices, including any divisions, subdivisions, components or

12   sections therein; CBP offices at ports of entry, including any divisions, subdivisions

13   or sections therein; or any other CBP organizational structures, including but not

14   limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors

15   hired by CBP"; and all of the U.S. Department of Homeland Security, including "its

16   headquarters and offices, including any divisions, subdivisions, components or

17   sections therein, or any other DHS organizational structures." *See* Pls.' Second

18   RFPs, Definitions A—C. DHS employs more than 240,000 people, and CBP

19   employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland

20   Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S.

21   Customs and Border Protection (Last modified April 18, 2019),

22   https://www.cbp.gov/about. Collecting and searching through the documents of all

23   of these individuals, as Plaintiffs request, is plainly not proportional to the needs of

24   this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego,*

25   No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford,

26   M.J.) (noting that an interrogatory that obligates a party to "canvas every employee

27   who might have had a conversation with [the plaintiff]" would be "onerous and over

28   burdensome").

APPENDIX B

49

Third, Defendants object to Request for Production No. 44 to the extent it seeks information protected from disclosure by the attorney work-product doctrine. To the extent a request for "all documents" relating to "any formal or informal policy, practice, or effort to meter or limit the number of noncitizens who can apply for asylum at a port of entry on the U.S.-Mexico border" implicates, for example, "documents and tangible things prepared by a party or his representative in anticipation of litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.,* 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman v. Taylor,* 329 U.S. 495 (1947), including "documents or the compilation of materials prepared by agents of the attorney in preparation for litigation," *United States v. Richey,* 632 F.3d 559, 567 (9th Cir. 2011) (citing *United States v. Nobles,* 422 U.S. 225, 238 (1975)), such as, for example, notes and emails of Defendants' attorneys and staff, and draft and final internal documents, such documents are protected from disclosure by the attorney work-product doctrine.

Fourth, Defendants object to Request for Production No. 44 to the extent it seeks information protected by the attorney-client privilege. To the extent a request for "all documents" relating to "any formal or informal policy, practice, or effort to meter or limit the number of noncitizens who can apply for asylum at a port of entry on the U.S.-Mexico border" implicates, for example, confidential communications between attorneys and clients which are made for the purpose of giving legal advice, *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981), such documents are privileged and protected from disclosure.

Fifth, Defendants object to Request No. 44 to the extent it seeks information protected from disclosure by the deliberative process privilege. To the extent a request for "all documents" relating to "any formal or informal policy, practice, or effort to meter or limit the number of noncitizens who can apply for asylum at a port of entry on the U.S.-Mexico border" implicates, for example, documents that are predecisional and deliberative, thereby containing opinions, recommendations, or

advice, *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

Finally, Defendants object to Request No. 44 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for "all documents" relating to "any formal or informal policy, practice, or effort to meter or limit the number of noncitizens who can apply for asylum at a port of entry on the U.S.-Mexico border" implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo,* No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants also object to RFP 44 in accordance with Objections Which Apply to All RFPs Nos. 1, 3, and 6-10; Objections to Definitions Nos. 4-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

Accordingly, Defendants understand and construe Request for Production No. 44 as seeking non-privileged documents relating to metering at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.

**Response:** In accordance with their objections, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, and will produce or log documents responsive to this understanding and construction of Request for

Production No. 44 after the parties agree on such sources and protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present, that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

**Request for Production No. 45**

To the extent that you claim that the actions of any CBP official or DHS official that are relevant to Plaintiffs' claims were ultra vires, all documents that support your contention that those actions were ultra vires.

**Objections:** Defendants object to Request for Production No. 45 as vague and confusing. Defendants understand and construe Request No. 45 as seeking documents governing Office of Field Operations employees' inspection and processing of aliens without travel documents. Defendants also object to RFP 45 in accordance with Objections Which Apply to All RFPs Nos. 1 and 6-10; Objections to Definitions Nos. 1-3, 5-6, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with their objections, Defendants will provide documents responsive to their understanding and construction of Request for Production No. 45. Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, and will produce or log documents responsive to

APPENDIX B

1   this understanding and construction of Request for Production No. 45 after the

2   parties agree on such sources and protocols. However, in the event the parties cannot

3   agree, Defendants will limit their search to the sources identified in Defendants'

4   portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from

5   which Defendants will produce or log documents responsive to this Request, dating

6   from January 1, 2016, to the present, that can be located after a reasonable search.

7   Documents created on or after July 12, 2017, the date of Plaintiffs' original

8   complaint (ECF No. 1), representing either communications with counsel or

9   communications or documents relating to the actual conduct of litigation post-

10   complaint—and thus clearly protected by either the attorney-client privilege or the

11   work-product doctrine—will be treated as non-responsive and therefore will not

12   appear on any privilege log.

13   **Request for Production No. 46**

14   Documents sufficient to show how you, CBP, and/or DHS define the term "capacity"

15   when use with respect to (a) conducting credible fear interviews, (b) housing persons

16   awaiting credible fear interviews, (c) processing asylum seekers, and/or (d)

17   inspecting asylum seekers, including but not limited to documents showing how you,

18   CBP, and/or DHS calculate such a capacity in terms of personnel, space, time, and

19   funding.

20   **Objections:** Defendants object to Request for Production No. 46 to the extent

21   it seeks information that is protected from disclosure by the attorney work-product

22   doctrine, the attorney-client privilege, the deliberative process privilege, and the law

23   enforcement privilege and/or as law enforcement sensitive. First, consistent with

24   Defendants' General Objection No. 6, Defendants construe and understand this

25   Request as seeking information relating to the capacity of the San Ysidro, Otay

26   Mesa, Hidalgo, and Laredo ports of entry to safely inspect and process the traveling

27   public. Defendants also understand and construe the term "capacity" as it is used in

28   the regular course of business.

APPENDIX B

53

Second, Defendants object to Request for Production No. 46 to the extent it seeks information protected from disclosure by the attorney work-product doctrine. To the extent a request for documents relating to the capacity of the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry implicates, for example, "documents and tangible things prepared by a party or his representative in anticipation of litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.,* 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman v. Taylor,* 329 U.S. 495 (1947), including "documents or the compilation of materials prepared by agents of the attorney in preparation for litigation," *United States v. Richey,* 632 F.3d 559, 567 (9th Cir. 2011) (citing *United States v. Nobles,* 422 U.S. 225, 238 (1975)), such as, for example, notes and emails of Defendants' attorneys and staff, and draft and final internal documents, such documents are protected from disclosure by the attorney work-product doctrine.

Third, Defendants object to Request for Production No. 46 to the extent it seeks information protected by the attorney-client privilege. To the extent a request for documents relating to the capacity of the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry implicates, for example, confidential communications between attorneys and clients which are made for the purpose of giving legal advice, *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981), such documents are privileged and protected from disclosure.

Fourth, Defendants object to Request No. 46 to the extent it seeks information protected from disclosure by the deliberative process privilege. To the extent a request for documents relating to the capacity of the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry implicates, for example, documents that are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than

APPENDIX B

54

the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

Fifth, Defendants object to Request No. 46 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for documents relating to the capacity of the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo,* No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Sixth, Defendants object to Request No. 46 as vague and confusing, and to the extent it reflects an incorrect statement of the law.

Defendants also object to RFP 46 in accordance with Objections Which Apply to All RFPs Nos. 1, 4, 6-10; Objections to Definitions Nos. 1-3, 5, 9, and 10.

Accordingly, Defendants understand and construe Request for Production No. 46 as seeking non-privileged documents relating to the capacity of the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry to safely inspect and process the traveling public. Defendants will produce documents responsive to this understanding and construction of this Request.

**Response:** Subject to and without waiving their objections, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, and will produce or log documents responsive to this understanding and construction of Request for Production No. 46 after the parties agree on such sources and protocols. However,

APPENDIX B

1   in the event the parties cannot agree, Defendants will limit their search to the sources

2   identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report

3   (ECF No. 243), from which Defendants will produce or log documents responsive

4   to this Request, dating from January 1, 2016, to the present, that can be located after

5   a reasonable search. Documents created on or after July 12, 2017, the date of

6   Plaintiffs' original complaint (ECF No. 1), representing either communications with

7   counsel or communications or documents relating to the actual conduct of litigation

8   post-complaint—and thus clearly protected by either the attorney-client privilege or

9   the work-product doctrine—will be treated as non-responsive and therefore will not

10   appear on any privilege log.

11   **Request for Production No. 47**

12   Documents sufficient to show any contracts, bids, or agreements that you have

13   entered into with any third party, including any government contractor, related to

14   establishing, expanding or decreasing the capacity of any port of entry on the U.S.-

15   Mexico border with respect to (a) conducting credible fear interviews, (b) housing

16   persons awaiting credible fear interviews, (c) processing asylum seekers, and/or (d)

17   inspecting asylum seekers.

18       **Objections:** Defendants object to Request for Production No. 47 as not

19   proportional to the needs of the case, as overly broad and unduly burdensome, and

20   as seeking documents protected from disclosure by the deliberative process privilege

21   and the law enforcement privilege and/or as law enforcement sensitive. First, a

22   request to produce "contracts, bids, or agreements" relating to "the capacity of any

23   port of entry on the U.S.-Mexico border" is not proportional to the needs of the case

24   and is overly broad and unduly burdensome, as it is not limited to the four ports of

25   entry at issue. Consistent with Defendants' General Objection No. 6, Defendants

26   construe this Request as seeking documents relating to the capacity of the San

27   Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry to safely inspect and process

28   the traveling public.

APPENDIX B

56

Second, Defendants object to Request No. 47 to the extent it seeks internal documents that are protected from disclosure by the deliberative process privilege. To the extent any documents relating to contracts, bids, or agreements regarding to the capacity of the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure. *See, e.g., L.H. v. Schwarzenegger,* No. 06-cv-2042, 2007 WL 1531420, at *4-5 (E.D. Cal. May 25, 2007) (report & recommendation) ("budget change proposals" protected by deliberative process privilege), *affirmed in relevant part,* 2007 WL 2009807, at *3-4 (E.D. Cal. July 6, 2007).

Third, Defendants object to Request No. 47 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent any documents relating to contracts, bids, or agreements regarding the capacity of the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry implicate "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo,* No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Fourth, Defendants object to Request No. 47 as vague and confusing, and to the extent it reflects an incorrect statement of the law. Defendants construe this Request as seeking documents relating to the capacity of the San Ysidro, Otay Mesa,

APPENDIX B

57

Hidalgo, and Laredo ports of entry to safely inspect and process the traveling public.

Defendants also object to RFP 47 in accordance with Objections Which Apply to All RFPs Nos. 1, 4, 6, and 10; Objections to Definitions Nos. 1, 5, 8, and 9-10; and, Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with their objections, Defendants will produce non-privileged documents relating to contracts, bids, or agreements regarding the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports' capacities to safely inspect and process the traveling public. Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

## Request for Production No. 53

All documents related to appropriations or funding requests made by you, CBP, or DHS regarding increasing the capacity of any port of entry on the U.S.-Mexico border with respect to (a) conducting credible fear interviews, (b) housing persons awaiting credible fear interviews, (c) processing asylum seekers, and/or (d) inspecting asylum seekers.

**Objections:** Defendants object to Request for Production No. 53 as seeking

information not relevant to any party's claims or defenses, not proportional to the needs of the case, overly broad and unduly burdensome, seeking documents protected from disclosure by the deliberative process privilege, and seeking documents that can be obtained from some other source that is more convenient, less burdensome, and less expensive for the parties. First, not "all documents" related to the delineated "appropriations or funding requests" bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful.

Second, a request to produce "all documents related to appropriations or funding requests" is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definitions, a complete response would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A—C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019),

1   https://www.cbp.gov/about. Collecting and searching through the documents of all
2   of these individuals, as Plaintiffs request, is plainly not proportional to the needs of
3   this case and is overly broad and unduly burdensome. *See* Fed. R. Evid. 401; *cf.*
4   *Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal.
5   Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party
6   to "canvas every employee who might have had a conversation with [the plaintiff'"
7   would be "onerous and over burdensome").

8       Third, Defendants object to Request No. 53 to the extent it seeks internal
9   budget proposals and related information protected from disclosure by the
10  deliberative process privilege. The deliberative process privilege protects internal
11  government deliberations in order to promote the "frank and candid discussion
12  necessary for effective government." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132,
13  150-51 (1975). The privilege is designed "to allow agencies freely to explore
14  possibilities, engage in internal debates, or play devil's advocate without fear of
15  public scrutiny." *Assembly of California v. United States Dep't of Commerce,* 968
16  F.2d 916, 920 (9th Cir. 1992). Information is protected from disclosure by this
17  privilege when it is (1) predecisional and (2) deliberative, thereby containing
18  opinions, recommendations, or advice. *Id.* at 149. "Examples of documents that
19  qualify as predecisional include recommendations, draft documents, proposals,
20  suggestions, and other subjective documents which reflect the personal opinions of
21  the writer rather than the policy of the agency." *Ctr. for Medicare Advocacy, Inc. v.
22  HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation
23  omitted). Any documents reflecting the agency's budget- or appropriations-related
24  deliberations fall into this category of protected information. *See, e.g., L.H. v.
25  Schwarzenegger,* No. 06-cv-2042, 2007 WL 1531420, at *4-5 (E.D. Cal. May 25,
26  2007) (report & recommendation) ("budget change proposals" protected by
27  deliberative process privilege), *affirmed in relevant part,* 2007 WL 2009807, at *34
28  (E.D. Cal. July 6, 2007).

APPENDIX B

60

Finally, Defendants object to Request No. 53 as vague and confusing, and to the extent it reflects an incorrect statement of the law.

Defendants also object to RFP 53 in accordance with Objections Which Apply to All RFPs Nos. 1, 4, 5-6-10; Objections to Definitions Nos. 1-3, 5-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

Accordingly, Defendants understand and construe Request for Production No. 53 as seeking final appropriations- or funding-related documents created by DHS regarding the capacity of the San Ysidro, Otay Mesa, Hidalgo, or Laredo ports of entry to safely inspect and process the traveling public. Such documents can be obtained "from some other source that is more convenient, less burdensome, [and] less expensive" for the parties. Fed. R. Civ. P. 26(b)(2)(C)(i). The Department of Homeland Security's final appropriations- or funding-related documents for fiscal years 2003 through 2020, including budgets-in-brief, can be located at: https://www.dhs.gov/dhs-budget.

**Response:** In accordance with their objections, Defendants state that final appropriations- or funding-related documents created by DHS can be obtained "from some other source that is more convenient, less burdensome, [and] less expensive" for the parties. Fed. R. Civ. P. 26(b)(2)(C)(i). The Department of Homeland Security's final appropriations- or funding-related documents for fiscal years 2003 through 2020, including budgets-in-brief, can be located at: https://www.dhs.gov/dhs-budget. Because these documents are publicly available, Defendants will not conduct a separate search for documents in response to Request No. 53. However, Defendants will produce or log additional responsive documents if such responsive documents are collected as part of the parties' agreed-upon search.

**Request for Production No. 54**

All of your public statements and speeches concerning the capacity of any port of entry, or the capacity of ports of entry or of the United States generally, with respect to (a) conducting credible fear interviews, (b) housing persons awaiting credible fear

APPENDIX B

61

interviews, (c) processing asylum seekers, and/or (d) inspecting asylum seekers.

**Objections:** Defendants object to Request for Production No. 54 as overly broad and unduly burdensome and as seeking information that can be obtained "from some other source that is more convenient, less burdensome, [and] less expensive" for the parties. Fed. R. Civ. P. 26(b)(2)(C)(i). DHS's press releases can be obtained at: https://www.dhs.govinews-releases/press-releases. Public statements or speeches of DHS officials can be obtained at: https://www.dhs.gov/news-releases/speeches. CBP's media releases can be obtained at: https://www.cbp.govinewsroom/media-releases/all. Public statements or speeches of CBP officials can be obtained at: https://www.cbp.gov/newsroom/speeches.

Defendants object to Request No. 54 as vague and confusing, and to the extent it reflects an incorrect statement of the law. Defendants construe this Request as seeking documents relating to the capacity of the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry to safely inspect and process the traveling public.

Defendants also object to RFP 54 in accordance with Objections Which Apply to All RFPs Nos. 1, 4, 6, and 10; Objections to Definitions Nos. 1, 5-6, and 10; and, Objections to Instructions Nos. 1 and 4.

**Response:** Because the documents sought by Request No. 54 can be found at the foregoing URLs, Defendants will not be conducting a separate search for responsive documents. However, should Defendants locate any responsive documents during their search for documents related to the four ports of entry at issue, Defendants will produce or log such documents.

## **Request for Production No. 55**

All communications between you and any White House staff member, including but not limited to members of the White House Domestic Policy Council, related to limiting, capping, or metering the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum.

**Objections:** Defendants object to Request for Production No. 55 as seeking

APPENDIX B

information that is outside the scope of Rule 34, as not proportional to the needs of the case, as overly broad and unduly burdensome, and as seeking information protected from disclosure by the deliberative process privilege. First, Defendants object to Request for Production No. 55 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communications" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communications" to include only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

Second, a request to produce all communications between the named Defendants' and any White House staff members, if they exist, is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definition, a complete response would require Defendants to collect and search the documents of each of the named Defendants and each of the named Defendants' "agents, representatives, employees, attorneys and investigators." *See* Pls.' Second RFPs, Definition A. Acting Secretary McAleenan oversees more than 240,000 employees. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs. Commissioner McAleenan oversees more than 60,000 employees. "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Executive Assistant Commissioner Owen oversees more than 29,000 employees. https://www.cbp.gov/about/leadership-organization/executive-assistant-commissioners-offices/field-operations (Oct. 19, 2016); Second Am. Compl. ¶ 38.

APPENDIX B

1    Collecting and searching through the documents of all of these individuals, as

2    Plaintiffs request, is plainly not proportional to the needs of this case and is overly

3    broad and unduly burdensome, especially considering that any potentially relevant

4    communications between the named Defendants and White House staff members

5    relating to an agency policy are protected by the deliberative process privilege, and

6    any other communications are not relevant to the issues in this case. *See* Fed. R.

7    Evid. 401; *cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3

8    n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that

9    obligates a party to "canvas every employee who might have had a conversation with

10   [the plaintiff]" would be "onerous and over burdensome").

11           Third, any potentially relevant communications between the named

12   Defendants and any White House staff members, including members of the

13   Domestic Policy Council, are protected by the deliberative process privilege. The

14   deliberative process privilege protects internal government deliberations in order to

15   promote the "frank and candid discussion necessary for effective government."

16   *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150-51 (1975). The privilege is

17   designed "to allow agencies freely to explore possibilities, engage in internal

18   debates, or play devil's advocate without fear of public scrutiny." *Assembly of*

19   *California v. United States Dep't of Commerce,* 968 F.2d 916, 920 (9th Cir. 1992).

20   Information is protected from disclosure by this privilege when it is (1) predecisional

21   and (2) deliberative, thereby containing opinions, recommendations, or advice. *Id.*

22   at 149. "Examples of documents that qualify as predecisional include

23   recommendations, draft documents, proposals, suggestions, and other subjective

24   documents which reflect the personal opinions of the writer rather than the policy of

25   the agency." *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235

26   (D.D.C. 2008) (internal quotations and citation omitted). A request for documents

27   relating to "limiting, capping, or metering the number of noncitizens who are

28   allowed to present themselves at a port of entry on the U.S.-Mexico border to seek

APPENDIX B

asylum," to the extent such communications precede a final agency decision, are protected from disclosure under this privilege. To the extent such communications are unrelated to any final agency decision, they are not relevant to the issues in this case; discovery may be permissible in an APA case in the rare circumstances where it is necessary "to ascertain the contours of the *precise policy at issue,"* but not to ascertain the irrelevant communications of government actors. *Venetian Casino Resort, L.L.C. v. E.E.O.C.,* 530 F.3d 925, 928 (D.C. Cir. 2008) (emphasis added); *see also* Minute Order (paperless) of Feb. 21, 2019, *Hispanic Affairs Project, et al. v. Perez, et al.,* No. 15-cv-1562 (D.D.C. Feb. 21, 2019) (on remand from *Hispanic Affairs Project v. Acosta,* 901 F.3d 378 (D.C. Cir. 2018), permitting "limited discovery" to allow the plaintiffs "to discover facts needed to prove the existence and the parameters of *any policy"* (emphasis added)).

Defendants object to Request No. 55 to the extent it requests any communications protected from disclosure by executive privilege.

Defendants also object to RFP 55 in accordance with Objections Which Apply to All RFPs Nos. 1, 3, 4, and 6-10; and Objections to Definitions Nos. 1, 4, and 8-10; and, Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with Defendants' objections, and in light of Request No. 55 being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of

Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as nonresponsive and therefore will not appear on any privilege log.

**Request for Production No. 56**

All communications between CBP and any White House staff member related to limiting, capping, or metering the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum.

**Objections:** Defendants object to Request for Production No. 56 as seeking information that is outside the scope of Rule 34, as not proportional to the needs of the case, as overly broad and unduly burdensome, and as seeking information protected from disclosure by the deliberative process privilege. First, Defendants object to Request for Production No. 56 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communications" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communications" to include only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

Second, a request to produce all communications between CBP and any White House staff members, if they exist, is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definition, a complete response would require Defendants to collect and search the documents of all of U.S.

Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP." *See* Pls.' Second RFPs, Definition B. Commissioner McAleenan oversees more than 60,000 employees. "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Executive Assistant Commissioner Owen oversees more than 29,000 employees. https://www.cbp.gov/about/leadership-organization/executive-assistant-commissioners-offices/field-operations (Oct. 19, 2016); Second Am. Compl. ¶ 38. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome, especially considering that any potentially relevant communications between CBP and White House staff members relating to an agency policy are protected by the deliberative process privilege, and any other communications are not relevant to the issues in this case. *See* Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Third, any potentially relevant communications between CBP and any White House staff members are protected by the deliberative process privilege. The deliberative process privilege protects internal government deliberations in order to promote the "frank and candid discussion necessary for effective government." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150-51 (1975). The privilege is designed "to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Assembly of California v. United States Dep't of Commerce,* 968 F.2d 916, 920 (9th Cir. 1992).

APPENDIX B

67

Information is protected from disclosure by this privilege when it is (1) predecisional and (2) deliberative, thereby containing opinions, recommendations, or advice. *Id.* at 149. "Examples of documents that qualify as predecisional include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted). A request for documents relating to "limiting, capping, or metering the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum," to the extent such communications precede a final agency decision, are protected from disclosure under this privilege. To the extent such communications are unrelated to any final agency decision, they are not relevant to the issues in this case; discovery may be permissible in an APA case in the rare circumstances where it is necessary "to ascertain the contours of the *precise policy at issue,"* but not to ascertain the irrelevant communications of government actors. *Venetian Casino Resort, L.L.C. v. E.E.O.C.,* 530 F.3d 925, 928 (D.C. Cir. 2008) (emphasis added); *see also* Minute Order (paperless) of Feb. 21, 2019, *Hispanic Affairs Project, et al. v. Perez, et al.,* No. 15-cv-1562 (D.D.C. Feb. 21, 2019) (on remand from *Hispanic Affairs Project v. Acosta,* 901 F.3d 378 (D.C. Cir. 2018), permitting "limited discovery" to allow the plaintiffs "to discover facts needed to prove the existence and the parameters of *any policy"* (emphasis added)).

Defendants object to Request No. 56 to the extent it requests any communications protected from disclosure by executive privilege.

Defendants also object to RFP 56 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, 6-10; Objections to Definitions Nos. 2, 4, and 8, and10.

**Response:** In accordance with Defendants' objections, and in light of Request No. 56 being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit

APPENDIX B

their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

**Request for Production No. 57**

All communications between DHS and any White House staff member related to limiting, capping, or metering the number of individuals that are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum.

**Objections:** Defendants object to Request for Production No. 57 as seeking information that is outside the scope of Rule 34, as not proportional to the needs of the case, as overly broad and unduly burdensome, and as seeking information protected from disclosure by the deliberative process privilege. First, Defendants object to Request for Production No. 57 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communications" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically

1    stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does

2    not allow a party to obtain non-tangible things. Defendants accordingly construe the

3    term "communications" to include only those items permitted by Rule 34 as stated

4    in Objections to Definitions No. 4.

5           Second, a request to produce all communications between DHS and any

6    White House staff members, if they exist, is not proportional to the needs of the case

7    and is overly broad and unduly burdensome. Based on Plaintiffs' definition, a

8    complete response would require Defendants to collect and search the documents of

9    the entire U.S. Department of Homeland Security, including "its headquarters and

10   offices, including any divisions, subdivisions, components or sections therein, or any

11   other DHS organizational structures." *See* Pls.' Second RFPs, Definition C. Acting

12   Secretary McAleenan oversees more than 240,000 employees. *See* "About DHS,"

13   U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs.

14   Collecting and searching through the documents of all of these individuals, as

15   Plaintiffs request, is plainly not proportional to the needs of this case and is overly

16   broad and unduly burdensome, especially considering that any potentially relevant

17   communications between DHS and White House staff members relating to an

18   agency policy are protected by the deliberative process privilege, and any other

19   communications are not relevant to the issues in this case. *See* Fed. R. Evid. 401; *cf.*

20   *Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal.

21   Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party

22   to "canvas every employee who might have had a conversation with [the plaintiff'"

23   would be "onerous and over burdensome").

24          Third, any potentially relevant communications between DHS and any White

25   House staff members are protected by the deliberative process privilege. The

26   deliberative process privilege protects internal government deliberations in order to

27   promote the "frank and candid discussion necessary for effective government."

28   *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150-51 (1975). The privilege is

APPENDIX B

designed "to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Assembly of California v. United States Dep't of Commerce,* 968 F.2d 916, 920 (9th Cir. 1992). Information is protected from disclosure by this privilege when it is (1) predecisional and (2) deliberative, thereby containing opinions, recommendations, or advice. *Id.* at 149. "Examples of documents that qualify as predecisional include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted). A request for documents relating to "limiting, capping, or metering the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum," to the extent such communications precede a final agency decision, are protected from disclosure under this privilege. To the extent such communications are unrelated to any final agency decision, they are not relevant to the issues in this case; discovery may be permissible in an APA case in the rare circumstances where it is necessary "to ascertain the contours of the *precise policy at issue,"* but not to ascertain the irrelevant communications of government actors. *Venetian Casino Resort, L.L.C. v. E.E.O.C.,* 530 F.3d 925, 928 (D.C. Cir. 2008) (emphasis added); *see also* Minute Order (paperless) of Feb. 21, 2019, *Hispanic Affairs Project, et al. v. Perez, et al.,* No. 15-cv-1562 (D.D.C. Feb. 21, 2019) (on remand from *Hispanic Affairs Project v. Acosta,* 901 F.3d 378 (D.C. Cir. 2018), permitting "limited discovery" to allow the plaintiffs "to discover facts needed to prove the existence and the parameters of *any policy"* (emphasis added)).

Defendants object to Request No. 57 to the extent it requests any communications protected from disclosure by executive privilege.

Defendants also object to RFP 57 in accordance with Objections Which Apply to All RFPs Nos. 1, 4, 6-7, and 9-10; Objections to Definitions Nos. 3-4, 8, and 10;

APPENDIX B

1    and, Objections to Instructions Nos. 1, 2, and 4.

2          **Response:** In accordance with Defendants' objections, and in light of Request

3    No. 56 being disproportional to the needs of the case considering that the burden and

4    expense of the requested discovery outweighs its likely benefit, Defendants will limit

5    their search to a limited number of custodial and non-custodial sources. Defendants

6    will continue to confer with Plaintiffs in identifying reasonable custodial and non-

7    custodial sources and document identification protocols. However, in the event the

8    parties cannot agree, Defendants will limit their search to the sources identified in

9    Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No.

10   243), from which Defendants will produce or log documents responsive to this

11   Request, dating from January 1, 2016, to the present that can be located after a

12   reasonable search. Documents created on or after July 12, 2017, the date of

13   Plaintiffs' original complaint (ECF No. 1), representing either communications with

14   counsel or communications or documents relating to the actual conduct of litigation

15   post-complaint—and thus clearly protected by either the attorney-client privilege or

16   the work-product doctrine—will be treated as nonresponsive and therefore will not

17   appear on any privilege log.

18   **Request for Production No. 58**

19   All communications between you and any labor union representing CBP or DHS

20   employees, including but not limited to the National Border Patrol Council, related

21   to limiting, capping, or metering the number of noncitizens who are allowed to

22   present themselves at a port of entry on the U.S.-Mexico border to seek asylum.

23         **Objections:** Defendants object to Request for Production No. 58 as seeking

24   information not relevant to any parties' claims and defenses, not proportional to the

25   needs of the case, and as overly broad and unduly burdensome. First, any

26   communications between the named Defendants and "any labor union representing

27   CBP or DHS employees" is not relevant to any party's claims or defenses because

28   they do not bear on the issues in this case: whether the named Plaintiffs were, at the

time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. A communication with a labor union does not have "any tendency" to make any of the issues in this case "more or less probable than [they] would be without" that communication, nor is the fact that a DHS or CBP employee may communicate with a labor union "of consequence in determining" the issues, because labor unions do not set agency policy. Fed. R. Evid. 401.

Request for Production No. 58 is further not relevant to the parties' claims or defenses to the extent it seeks communications with labor unions that do not represent employees of the Office of Field Operations, the entity responsible for overseeing ports of entry. Any communications between the named Defendants and labor unions representing employees of any other DHS or CBP entities—such as the U.S. Border Patrol, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, the Transportation Security Administration, the Coast Guard, and the Federal Emergency Management Agency—are therefore not related to "limiting, capping, or metering the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum."

Second, a request to produce any of the named Defendants' communications with any labor union representing DHS or CBP employees, if they exist, is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definition, a complete response would require Defendants to collect and search the documents of each of the named Defendants and each of the named Defendants' "agents, representatives, employees, attorneys and investigators." *See* Pls.' Second RFPs, Definition A. Acting Secretary McAleenan oversees more than 240,000 employees. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs. Commissioner

APPENDIX B

McAleenan oversees more than 60,000 employees. "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Executive Assistant Commissioner Owen oversees more than 29,000 employees. haps://www.cbp.gov/about/leadership-organization/executive-assistant-commissioners-offices/field-operations (Oct. 19, 2016); Second Am. Compl. ¶ 38. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome, especially considering that any communications between the named Defendants and a labor union are of no consequence to the issues. *See* Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Defendants also object to RFP 58 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, and 6-10; and Objections to Definitions Nos. 1-4, and 8-10.

**Response:** In light of the foregoing objections, Defendants will not search for or produce documents responsive to Request for Production No. 58.

## Request for Production No. 59

All communications between DHS and any labor union representing CBP or DHS employees, including but not limited to the National Border Patrol Council, related to limiting, capping, or metering the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum.

**Objections:** Defendants object to Request for Production No. 59 as seeking information not relevant to any parties' claims and defenses, not proportional to the needs of the case, and as overly broad and unduly burdensome. First, any communications between DHS and "any labor union representing CBP or DHS employees" is not relevant to any party's claims or defenses because those communications do not bear on the issues in this case: whether the named Plaintiffs

APPENDIX B

were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. A communication with a labor union does not have "any tendency" to make any of the issues in this case "more or less probable than [they] would be without" that communication, nor is the fact that DHS may communicate with a labor union "of consequence in determining" the issues, because labor unions do not set agency policy. Fed. R. Evid. 401.

Request for Production No. 59 is further not relevant to the parties' claims or defenses to the extent it seeks communications with labor unions that do not represent employees of the Office of Field Operations, the entity responsible for overseeing ports of entry. Communications with labor unions representing employees of any other DHS or CBP entities—such as the U.S. Border Patrol, U.S. Immigration and Customs Enforcement, the Transportation Security Administration, the Coast Guard, and the Federal Emergency Management Agency—are therefore not related to "limiting, capping, or metering the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum."

Second, a request to produce any communications between DHS and any labor union representing DHS or CBP employees is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definition, a complete response would require Defendants to collect and search the documents of the entire U.S. Department of Homeland Security, "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definition C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS,"    U.S.    Dep't    of    Homeland    Security    (Sept.    27,    2017),

APPENDIX B

https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome, especially considering that any communications between DHS and a labor union are of no consequence to the issues. *See* Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff'"" would be "onerous and over burdensome").

Defendants also object to RFP 59 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, and 6-9; and Objections to Definitions Nos. 2-4, and 8-10.

**Response:** In light of the foregoing objections, Defendants will not search for or produce documents responsive to Request for Production No. 59.

**Request for Production No. 60**

All communications between CBP and any labor union representing CBP or DHS employees, including but not limited to the National Border Patrol Council, related to limiting, capping, or metering the number of individuals that are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum.

**Objections:** Defendants object to Request for Production No. 60 as seeking information not relevant to any parties' claims and defenses, not proportional to the needs of the case, and as overly broad and unduly burdensome. First, any communications between CBP and "any labor union representing CBP or DHS employees" is not relevant to any party's claims or defenses because those communications do not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the

APPENDIX B

76

U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. A communication with a labor union does not have "any tendency" to make any of the issues in this case "more or less probable than [they] would be without" that communication, nor is the fact that DHS may communicate with a labor union "of consequence in determining" the issues, because labor unions do not set agency policy. Fed. R. Evid. 401.

Request for Production No. 60 is further not relevant to the parties' claims or defenses to the extent it seeks communications with labor unions that do not represent employees of the Office of Field Operations, the entity responsible for overseeing ports of entry. Communications with labor unions representing employees of any other DHS or CBP entities—such as the U.S. Border Patrol, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, the Transportation Security Administration, the Coast Guard, and the Federal Emergency Management Agency—are therefore not related to "limiting, capping, or metering the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum."

Second, a request to produce any communications between CBP and any labor union representing DHS or CBP employees is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definition, a complete response would require Defendants to collect and search the documents of the entirety of U.S. Customs and Border Protection, "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP." Pls.' Second RFPs, Definition B. CBP employs more than 60,000 employees. *See* "About CBP," U.S. Customs and Border Protection (last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all

APPENDIX B

of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome, especially considering that any communications between CBP and a labor union are of no consequence to the issues. *See* Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Defendants also object to RFP 60 in accordance with Objections Which Apply to All RFPs Nos. 1, 4, and 6-10 and Objections to Definitions Nos. 2-4, and 8-10.

**Response:** In light of the foregoing objections, Defendants will not search for or produce documents responsive to Request for Production No. 60.

**Request for Production No. 61**

All communications between you and the Federation for American Immigration Reform related to limiting, capping, or metering the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum.

**Objections:** Defendants object to Request for Production No. 61 as seeking information not relevant to any parties' claims and defenses, not proportional to the needs of the case, and as overly broad and unduly burdensome. First, any communications between the named Defendants and the Federation for American Immigration Reform is not relevant to any party's claims or defenses because they do not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. A communication with an advocacy group not involved in this action does not have "any tendency" to make any of the issues in this case "more or

APPENDIX B

1   less probable than [they] would be without" that communication, nor is the fact that
2   a DHS or CBP employee may communicate with such an advocacy group "of
3   consequence in determining" the issues, because advocacy groups do not set agency
4   policy. Fed. R. Evid. 401.

5       Second, a request to produce any communications between the named
6   Defendants and the Federation for American Immigration Reform is not proportional
7   to the needs of the case and is overly broad and unduly burdensome. Based on
8   Plaintiffs' definition, a complete response would require Defendants to collect and
9   search the documents of each of the named Defendants and each of the named
10  Defendants' "agents, representatives, employees, attorneys and investigators." *See*
11  Pls.' Second RFPs, Definition A. Acting Secretary McAleenan oversees more than
12  240,000 employees. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27,
13  2017), https://www.dhs.gov/about-dhs. Commissioner McAleenan oversees more
14  than 60,000 employees. "About CBP," U.S. Customs and Border Protection (Last
15  modified April 18, 2019), https://www.cbp.gov/about. Executive Assistant
16  Commissioner Owen oversees more than 29,000 employees.
17  https://www.cbp.gov/about/leadership-organization/executive-assistant-
18  commissioners-offices/field-operations (Oct. 19, 2016); Second Am. Compl. ¶ 38.
19  Collecting and searching through the documents of all of these individuals, as
20  Plaintiffs request, is plainly not proportional to the needs of this case and is overly
21  broad and unduly burdensome, especially considering that communications between
22  the named Defendants and a non-party advocacy group are of no consequence to the
23  issues. *See* Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018
24  WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an
25  interrogatory that obligates a party to "canvas every employee who might have had
26  a conversation with [the plaintiff]" would be "onerous and over burdensome").

27      Defendants also object to RFP 61 in accordance with Objections Which Apply
28  to All RFPs Nos. 1, 3-4, and 6-10 and Objections to Definitions Nos. 1, 4, and 8, and

APPENDIX B

1    10.

2        **Response:** In light of the foregoing objections, Defendants will not conduct a

3    separate search for documents responsive to Request for Production No. 61.

4    **Request for Production No. 62**

5    All communications between DHS and the Federation for American Immigration

6    Reform related to limiting, capping, or metering the number of noncitizens who are

7    allowed to present themselves at a port of entry on the U.S.-Mexico border to seek

8    asylum.

9        **Response:** Defendants object to Request for Production No. 62 as seeking

10   information not relevant to any parties' claims and defenses, not proportional to the

11   needs of the case, and as overly broad and unduly burdensome. First, any

12   communications between DHS and the Federation for American Immigration

13   Reform is not relevant to any party's claims or defenses because they do not bear on

14   the issues in this case: whether the named Plaintiffs were, at the time of their alleged

15   injury, arriving aliens applying for admission to the United States; whether

16   Defendants have implemented a formal policy or taken final agency action to

17   "restrict access to the asylum process at ports of entry along the U.S.-Mexico

18   border"; and whether such a policy or final agency action, if it exists, and in the form

19   it exists, is unlawful. A communication with an advocacy group not involved in this

20   action does not have "any tendency" to make any of the issues in this case "more or

21   less probable than [they] would be without" that communication, nor is the fact that

22   a DHS or CBP employee may communicate with such an advocacy group "of

23   consequence in determining" the issues, because advocacy groups do not set agency

24   policy. Fed. R. Evid. 401.

25       Second, a request to produce any communications between DHS and the

26   Federation for American Immigration Reform is not proportional to the needs of the

27   case and is overly broad and unduly burdensome. Based on Plaintiffs' definition, a

28   complete response would require Defendants to collect and search the documents of

APPENDIX B

the entire U.S. Department of Homeland Security, "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definition C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome, especially considering that communications between DHS and a non-party advocacy group are of no consequence to the issues. *See* Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff']" would be "onerous and over burdensome").

Defendants also object to RFP 62 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, and 6-10 and Objections to Definitions Nos. 3-4, 8, and 10.

**Response:** In light of the foregoing objections, Defendants will not conduct a separate search for documents responsive to Request for Production No. 62.

## Request for Production No. 63

All communications between CBP and the Federation for American Immigration Reform related to limiting, capping, or metering the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum.

**Objections:** Defendants object to Request for Production No. 63 as seeking information not relevant to any parties' claims and defenses, not proportional to the needs of the case, and as overly broad and unduly burdensome. First, any communications between CBP and the Federation for American Immigration

Reform is not relevant to any party's claims or defenses because they do not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. A communication with an advocacy group not involved in this action does not have "any tendency" to make any of the issues in this case "more or less probable than [they] would be without" that communication, nor is the fact that a DHS or CBP employee may communicate with such an advocacy group "of consequence in determining" the issues, because advocacy groups do not set agency policy. Fed. R. Evid. 401.

Second, a request to produce any communications between CBP and the Federation for American Immigration Reform is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definition, a complete response would require Defendants to collect and search the documents of the entirety of U.S. Customs and Border Protection, "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP." *See* Pls.' Second RFPs, Definition B. CBP employs more than 60,000 people. *See* "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome, especially considering that communications between DHS and a non-party advocacy group are of no consequence to the issues. *See* Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego,*

APPENDIX B

No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Defendants also object to RFP 63 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, and 6-10 and Objections to Definitions Nos. 2, 4, 8, and 10.

**Response:** In light of the foregoing objections, Defendants will not conduct a separate search for documents responsive to Request for Production No. 63.

## Request for Production No. 64

All documents and communications by you, CBP, or DHS referring to individuals seeking asylum as "illegal" or suggesting that such noncitizens are seeking to enter the United States improperly.

**Objections:** Defendants object to Request for Production No. 64 as seeking information that is outside the scope of Rule 34, not relevant to any party's claims or defenses, not proportional to the needs of the case, as overly broad and unduly burdensome, and vague and ambiguous. First, Defendants object to Request for Production No. 64 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communication(s)" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communication(s)" to include only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

Second, any documents and communications by the named Defendants, CBP,

APPENDIX B

83

or DHS "referring to individuals seeking asylum as 'illegal' or suggesting that such noncitizens are seeking to enter the United States improperly" is not relevant to any party's claims or defenses because they do not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. A reference to an alien seeking asylum in the United States as "illegal," or a suggestion that such an alien is seeking to enter the United States improperly, does not have "any tendency" to make any of the issues in this case "more or less probable than [they] would be without" such a reference or suggestion, nor are such references or suggestions "of consequence in determining" the issues, because individual DHS or CBP employees' opinions on such matters do not represent agency policy. Fed. R. Evid. 401.

Third, a request to produce all documents and communications by the named Defendants, CBP, or DHS "referring to individuals seeking asylum as 'illegal' or suggesting that such noncitizens are seeking to enter the United States improperly" is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definitions, a complete response would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its

headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A—C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome, especially considering that any of the statements Plaintiffs refer to, if they exist, are of no consequence to the issues. *See* Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Finally, the phrase "suggesting that such noncitizens are seeking to enter the United States improperly" is vague and ambiguous. The term "suggestion" is vague because it is not defined and is susceptible to multiple interpretations and meanings. The terms "seeking" and "improperly" are vague and ambiguous in that they do not describe with reasonable particularity the actions Plaintiffs are referring to.

Defendants also object to RFP 64 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, and 6-10 and Objections to Definitions Nos. 1-6, and 10.

**Response:** In light of the foregoing objections, Defendants will not conduct a separate search for documents responsive to Request for Production No. 64.

## Request for Production No. 65

All documents or communications by you, CBP, or DHS referring to noncitizens seeking asylum in the United States as exploiting a legal "loophole."

**Objections:** Defendants object to Request for Production No. 65 as seeking information not relevant to any party's claims or defenses, not proportional to the

needs of the case, and as overly broad and unduly burdensome. First, any documents and communications by the named Defendants, CBP, or DHS "referring to noncitizens seeking asylum in the United States as exploiting a legal "loophole' is not relevant to any party's claims or defenses because they do not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. A reference to an alien seeking asylum in the United States as "exploiting a legal `loophole' does not have "any tendency" to make any of the issues in this case "more or less probable than [they] would be without" such a reference or suggestion, nor are such references or suggestions "of consequence in determining" the issues, because individual DHS or CBP employees' opinions on such matters do not represent agency policy. Fed. R. Evid. 401.

Second, a request to produce all documents and communications by the named Defendants, CBP, or DHS "referring to noncitizens seeking asylum in the United States as exploiting a legal "loophole' is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definitions, a complete response would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices,

APPENDIX B

including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A—C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome, especially considering that any reactions, comments, or criticisms are of no consequence to the issues. *See* Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Defendants also object to RFP 65 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, 6-10; Objections to Definitions Nos. 1-6, and 10; and, Objections to Instructions Nos. 1, 2, and 4..

**Response:** In light of the foregoing objections, Defendants will not conduct a separate search for documents responsive to Request for Production No. 65.

## **Request for Production No. 67**

Documents sufficient to show the crime rates amongst (a) noncitizens who are seeking asylum in the United States at ports of entry along the U.S.-Mexico border, (b) noncitizens who are paroled into the United States after seeking asylum in the United States at ports of entry along the U.S.-Mexico border, and/or (c) noncitizens who are granted asylum in the United States after presenting themselves at ports of entry along the U.S.-Mexico border.

**Objections:** Defendants object to Request for Production No. 67 as vague and ambiguous and as seeking information not relevant to any party's claims or defenses.

APPENDIX B

1  First, the term "crime rates" is vague and ambiguous and is not defined by Plaintiffs.

2  Second, any documents related to "crime rates" amongst the three delineated

3  categories of aliens is not relevant to any party's claims or defenses because they do

4  not bear on the issues in this case: whether the named Plaintiffs were, at the time of

5  their alleged injury, arriving aliens applying for admission to the United States;

6  whether Defendants have implemented a formal policy or taken final agency action

7  to "restrict access to the asylum process at ports of entry along the U.S.-Mexico

8  border"; and whether such a policy or final agency action, if it exists, and in the form

9  it exists, is unlawful. The crime rates amongst aliens seeking asylum at ports of entry

10 along the U.S.-Mexico border, aliens who are paroled after seeking asylum at ports

11 of entry along the U.S.-Mexico border, and aliens who are granted asylum after

12 applying at a port of entry along the U.S.-Mexico border are facially not relevant to

13 any of the issues in this case. *See* Fed. R. Evid. 401.

14 Defendants also object to RFP 67 in accordance with Objections Which Apply

15 to All RFPs Nos. 1, 3-4, and 6-10; Objections to Definitions Nos. 5 and 10.

16 **Response:** In light of the foregoing objection, Defendants will not search for,

17 produce, or log documents responsive to Request for Production No. 67.

18 **Request for Production No. 68**

19 All documents or communications related to the September 27, 2018 report by DHS'

20 Office of Inspector General, including but not limited to the factual basis for the

21 report's statement that CBP was "regulating the flow of asylum-seekers at ports of

22 entry."

23 **Objections:** Defendants object to Request for Production No. 68 as seeking

24 information not relevant to any party's claims or defenses, protected from disclosure

25 by the attorney-client privilege, and protected from disclosure by the deliberative

26 process privilege. First, Request No. 68 seeks all documents or communications

27 related to the September 27, 2018 OIG report, not just those related to the factual

28 basis for the report's statement that CBP was "regulating the flow of asylum-seekers

APPENDIX B

at ports of entry." The remainder of the report is related to OIG's initial observations regarding family separation issues and the zero tolerance policy, as its title suggests. Such observations do not have "any tendency" to make any of the issues in this action "more or less probable than [they] would be without" the observations, nor are they "of consequence in determining" the issues in this action. Fed. R. Evid. 401.

Second, Defendants object to Request No. 68 to the extent it seeks documents protected from disclosure by the attorney-client privilege, which protects confidential communications between attorneys and clients made for the purpose of giving legal advice. *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981). "The attorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice." *United States v. Richey,* 632 F.3d 559, 566 (9th Cir. 2011) (citing *Smith v. McCormick,* 914 F.2d 1153, 1159-60 (9th Cir. 1990)). Any and all communications conducted in the course of the attorney-client relationship that relate to the September 27, 2018 OIG report and not disclosed (or otherwise maintained in a manner consistent with the purpose of the privilege), to the extent they exist, are thus protected by the attorney-client privilege.

Third, Defendants object to Request No. 68 to the extent it seeks information protected from disclosure by the deliberative process privilege. The deliberative process privilege protects internal government deliberations in order to promote the "frank and candid discussion necessary for effective government." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150-51 (1975). Information is protected from disclosure by this privilege when it is (1) predecisional and (2) deliberative, thereby containing opinions, recommendations, or advice. *Id.* at 149. "Examples of documents that qualify as predecisional include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations

APPENDIX B

1   and citation omitted). A request for *all* documents and communications relating to

2   the OIG report would include predecisional, deliberative documents, such as

3   recommendations, drafts, proposals, and suggestions. In light of these objections,

4   Defendants accordingly understand and construe Request for Production No. 68 as

5   seeking only non-privileged documents and communications related to the report's

6   statements that CBP "was limiting the flow of asylum-seekers at ports of entry."

7   Defendants also object to RFP 68 in accordance with Objections Which Apply

8   to All RFPs Nos. 1, 4, and 6-10 and Objections to Definitions Nos. 2-, 4-6, and 810.

9   **Response:** Subject to and without waiving the foregoing objections,

10  accordance with Defendants' objections, and in light of the Request being

11  disproportional to the needs of the case, Defendants will limit their search to a

12  limited number of custodial and non-custodial sources in accordance with their

13  reasonable construction of Request No. 68. Defendants will continue to confer with

14  Plaintiffs in identifying reasonable custodial and non-custodial sources and

15  document identification protocols. However, in the event the parties cannot agree,

16  Defendants will limit their search to the sources identified in Defendants' portion of

17  the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which

18  Defendants will produce all non-privileged documents responsive to this Request,

19  dating from January 1, 2016, to the present that can be located after a reasonable

20  search. Documents created on or after July 12, 2017, the date of Plaintiffs' original

21  complaint (ECF No. 1), representing either communications with counsel or

22  communications or documents relating to the actual conduct of litigation post-

23  complaint—and thus clearly protected by either the attorney-client privilege or the

24  work-product doctrine—will be treated as non-responsive and therefore will not

25  appear on any privilege log

26  **Request for Production No. 69**

27  All documents and communications by you, CBP, or DHS using derogatory

28  language or ethnic slurs to refer to individuals seeking to present themselves at any

port of entry on the U.S.-Mexico border or to the countries those individuals are from, including but not limited to references to such individuals as "criminals," "animals," or seeking to "infest" or "invade" the United States.

**Objections:** Defendants object to Request for Production No. 69 as vague and ambiguous, as seeking information that is outside the scope of Rule 34, as not relevant to any party's claims or defenses, as not proportional to the needs of the case, and as overly broad and unduly burdensome. First, the phrase "individuals seeking to present themselves" is vague and ambiguous and is not defined by Plaintiffs, as stated in the Objections Applying to all Requests No. 4.

Second, Defendants object to Request for Production No. 69 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communication(s)" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communication(s)" to include only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

Third, the named Defendants', DHS's, and CBP's use of derogatory language or ethnic slurs in reference to the delineated persons, to the extent such statements exist, are not relevant because they do not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. The use of derogatory

language by individual employees, if such statements exist, would not have "any tendency" to make any of the issues in this case "more or less probable than [they] would be without" the "reaction," nor would such statements be "of consequence in determining" the issues. Fed. R. Evid. 401. "[T]he actual subjective motivation of agency decisionmakers is *immaterial as a matter of law . . . ." In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency,* 156 F.3d 1279, 1279 (D.C. Cir. 1998) (emphasis added) (emphasis added). When a party challenges agency action as arbitrary and capricious," as Plaintiffs have here, "the reasonableness of the agency's action is judged in accordance with its *stated* reasons." *Id.* at 1280 (emphasis added) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402 (1971)). "[I]t is clear that the ordinary APA cause of action does not directly call into question the agency's subjective intent." Id. at 1280; *McCray v. United States,* 195 U.S. 27, 56 (1905) ("The decisions of this court from the beginning lend no support whatever to the assumption that the judiciary may restrain the exercise of lawful power on the assumption that a wrongful purpose or motive has caused the power to be exerted."); *id.* at 53-55. Whether individual CBP officers have ever used derogatory language is accordingly not relevant to this case.

Fourth, Request No. 69 is vague and ambiguous because Plaintiffs do not define the terms " plan," "policy," or "practice," and it is unclear how those terms are distinct or differ from one another.

Finally, a request to search for and produce the delineated statements of the named Defendants, DHS, and CBP is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definitions, a complete response would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any

APPENDIX B

92

divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A—C.

Although Plaintiffs limit the definitions of "your," "CBP," and "DHS" based on what is "appropriate in the context" of each request, there is nothing in Request for Production No. 69 that indicates what the "appropriate context" of a search for such statements might be. *See id.* DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome, especially considering that the statements sought are of no consequence to the issues. *See* Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff'" would be "onerous and over burdensome").

Defendants also object to RFP 69 in accordance with Objections Which Apply to All RFPs Nos. 1-2, 4, and 6-10 and Objections to Definitions Nos. 1-6, 9, and 10.

**Response:** In light of the foregoing objections, Defendants will not conduct search for, produce, or log documents responsive to Request for Production No. 69.

**Request for Production No. 70**

All documents and communications related to the origination, planning, and/or adoption of any formal or informal plan, policy, or practice with respect to limiting,

APPENDIX B

93

1    metering, or capping the number of noncitizens who are allowed to present

2    themselves at a port of entry on the U.S.-Mexico border to seek asylum.

3          **Objections:** Defendants object to Request for Production No. 70 as seeking

4    information that is outside the scope of Rule 34, not proportional to the needs of the

5    case, overly broad and unduly burdensome, and protected from disclosure under the

6    attorney-client privilege, the deliberative process privilege, the attorney work-

7    product doctrine, and the law enforcement privilege and/or as law enforcement

8    sensitive. First, Defendants object to Request for Production No. 70 to the extent it

9    seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E

10   (defining "communication(s)" to include "the exchange of information by or through

11   any mode or medium including, but not limited to, spoken word, written

12   correspondence, any form of technology, face-to-face meetings or conveying of

13   information through third person(s) to some other intended recipient"). Federal Rule

14   of Civil Procedure 34 allows a party to serve requests to inspect or produce

15   "documents," "electronically stored information," or "designated tangible things."

16   Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things.

17   Defendants accordingly construe the term "communication(s)" to include only those

18   items permitted by Rule 34 as stated in Objections to Definitions No. 4.

19          Second, a request to search for and produce "all documents" related to the

20   origination, planning, and/or adoption of any formal or informal plan, policy, or

21   practice with respect to limiting, metering, or capping the number of noncitizens

22   who are allowed to present themselves at a port of entry on the U.S.-Mexico border

23   to seek asylum" is not proportional to the needs of the case and is overly broad and

24   unduly burdensome. Request No. 70 is not directed to any person and is thus facially

25   overbroad. Even assuming Request No. 70 is directed to the named Defendants,

26   DHS, and CBP (as many of Plaintiffs other Requests are), a complete response,

27   based on Plaintiffs' definitions, would require Defendants to collect and search the

28   documents of each of the named Defendants; each of the named Defendants'

APPENDIX B

94

"agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A—C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff'" would be "onerous and over burdensome").

Third, Defendants object to Request No. 70 to the extent it seeks information protected from disclosure by the attorney-client privilege. To the extent a request for "all documents" related to the origination, planning, and/or adoption of any formal or informal plan, policy, or practice with respect to limiting, metering, or capping the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum" implicates, for example, confidential communications between attorneys and clients which are made for the purpose of giving legal advice, *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981), such documents are privileged and protected from disclosure.

APPENDIX B

95

Fourth, any potentially relevant information related to "the origination, planning, and/or adoption of any" agency action of the type Plaintiffs refer to is protected, on its face, by the deliberative process privilege. To the extent a request for "all documents" "related to the origination, planning, and/or adoption of any formal or informal plan, policy, or practice with respect to limiting, metering, or capping the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum" implicates, for example, documents that are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

Finally, Defendants object to Request No. 70 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for "all documents" "related to the origination, planning, and/or adoption of any formal or informal plan, policy, or practice with respect to limiting, metering, or capping the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum" implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo,* No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants also object to RFP 70 in accordance with Objections Which Apply

to All RFPs Nos. 1, 3-4, and 6-10; Objections to Definitions Nos. 4-6, 8, and 10; and Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with Defendants' objections, and in light of Request No. 70 being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present that can be located after a reasonable search.

**Request for Production No. 71**

All documents and communications related to the motivations or intentions of you, CBP, or DHS with respect to limiting, metering, or capping the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum.

**Objections:** Defendants object to Request for Production No. 71 as seeking information outside the scope of Rule 34, not relevant to any party's claims or defenses, not proportional to the needs of the case, overly broad and unduly burdensome, vague and ambiguous, and protected from disclosure by the attorney-client privilege, the deliberative process privilege, and the attorney work-product doctrine. First, Defendants object to Request for Production No. 71 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communication(s)" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of

APPENDIX B

information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communication(s)" to include only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

Second, the "motivations or intentions" of any individual DHS or CBP employee, including the named Defendants, are facially irrelevant because they do not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. "[I]t is clear that the ordinary APA cause of action does not directly call into question the agency's subjective intent." *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency,* 156 F.3d 1279, 1280 (D.C. Cir. 1998). "When a party challenges agency action as arbitrary and capricious," as Plaintiffs have here, "the reasonableness of the agency's action is judged in accordance with its *stated* reasons." *Id.* (emphasis added) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402 (1971)). Consequently, "the actual subjective motivation of agency decisionmakers is *immaterial as a matter of law . . . ." Id.* at 1279 (emphasis added); *McCray v. United States,* 195 U.S. 27, 56 (1905) ("The decisions of this court from the beginning lend no support whatever to the assumption that the judiciary may restrain the exercise of lawful power on the assumption that a wrongful purpose or motive has caused the power to be exerted."); *id.* at 53-55. The subjective "motivations or intentions" of any individual DHS or CBP employee are accordingly not relevant to this case.

Third, a request to search for and produce "all documents" related to the

APPENDIX B

subjective "motivations or intentions" of the named Defendants, DHS, and CBP is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definitions, a complete response would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A—C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome, especially considering that the documents sought are "immaterial as a matter of law" to the issues in this case. *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency,* 156 F.3d 1279, 1279 (D.C. Cir. 1998); Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Fourth, the terms "motivations" and "intentions" are vague and ambiguous,

APPENDIX B

as they are susceptible to multiple understandings and do not specifically describe the information Plaintiffs seek.

Fifth, Defendants object to Request No. 71 to the extent it seeks information protected from disclosure by the attorney-client privilege. The attorney-client privilege protects confidential communications between attorneys and clients made for the purpose of giving legal advice. *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981). "The attorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice." *United States v. Richey,* 632 F.3d 559, 566 (9th Cir. 2011) (citing *Smith v. McCormick,* 914 F.2d 1153, 1159-60 (9th Cir. 1990)). Thus, any and all communications conducted in the course of the attorney-client relationship related to the subjective motivations or intentions of individual agency employees that have not been disclosed (or have otherwise been maintained in a manner consistent with the purpose of the privilege), to the extent they exist, are protected by the attorney-client privilege.

Sixth, Defendants object to Request No. 71 to the extent it seeks information protected from disclosure by the deliberative process privilege. The deliberative process privilege protects internal government deliberations in order to promote the "frank and candid discussion necessary for effective government." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150-51 (1975). The privilege is designed "to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Assembly of California v. United States Dep 't of Commerce,* 968 F.2d 916, 920 (9th Cir. 1992). Information is protected from disclosure by this privilege when it is (1) predecisional and (2) deliberative, thereby containing opinions, recommendations, or advice. *Id.* at 149. "Examples of documents that qualify as predecisional include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Ctr. for Medicare*

APPENDIX B

1    *Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations
2    and citation omitted). A request for *all* documents relating to the subjective
3    motivations or intentions of agency employees would include predecisional,
4    deliberative documents, such as recommendations, drafts, proposals, and
5    suggestions and are thus protected from disclosure by the deliberative process
6    privilege.

7          Finally, Defendants object to Request No. 71 to the extent it seeks documents
8    protected from disclosure by the attorney work-product doctrine. The work-product
9    doctrine protects "from discovery documents and tangible things prepared by a party
10   or his representative in anticipation of litigation." *Admiral Ins. Co. v. U.S. Dist. Ct.,*
11   881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman*
12   *v. Taylor,* 329 U.S. 495 (1947). "The work-product doctrine covers documents or
13   the compilation of materials prepared by agents of the attorney in preparation for
14   litigation." *United States v. Richey,* 632 F.3d 559, 567 (9th Cir. 2011) (citing *United*
15   *States v. Nobles,* 422 U.S. 225, 238 (1975)). Defendants will assert privileges
16   specific to each request in their privilege log, on the production itself, or in their
17   response to a specific RFP. Documents generated after the filing of Plaintiffs'
18   original complaint (ECF No. 1) in this action representing either communications
19   with counsel or communications or documents relating to the actual conduct of
20   litigation post-complaint—and thus clearly protected by either the attorney-client
21   privilege or the work-product doctrine—will be treated as non-responsive and
22   therefore will not appear on any privilege log.

23         Defendants also object to RFP 71 in accordance with Objections Which Apply
24   to All RFPs Nos. 1-4 and 6-10; Objections to Definitions Nos. 1-6, 8, and 10; and,
25   Objections to Instructions Nos. 1, 2, and 4.

26         Accordingly, Defendants understand and construe Request for Production No.
27   71 as seeking non-privileged documents related to the stated reasons of CBP's Office
28   of Field Operations for metering, including at the San Ysidro, Otay Mesa, Hidalgo,

APPENDIX B

1   and Laredo ports of entry.

2         **Response:** In accordance with Defendants' objections, and in light of Request

3   No. 71 being disproportional to the needs of the case, considering that the burden

4   and expense of the requested discovery outweighs its likely benefit, Defendants will

5   limit their search to a limited number of custodial and non-custodial sources.

6   Defendants will continue to confer with Plaintiffs in identifying reasonable custodial

7   and non-custodial sources and document identification protocols, and will produce

8   or log documents responsive to this understanding and construction of Request for

9   Production No. 71 after the parties agree on such sources and protocols. However,

10  in the event the parties cannot agree, Defendants will limit their search to the sources

11  identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report

12  (ECF No. 243), from which Defendants will produce or log documents responsive

13  to this Request, dating from January 1, 2016, to the present that can be located after

14  a reasonable search. Documents created on or after July 12, 2017, the date of

15  Plaintiffs' original complaint (ECF No. 1), representing either communications with

16  counsel or communications or documents relating to the actual conduct of litigation

17  post-complaint—and thus clearly protected by either the attorney-client privilege or

18  the work-product doctrine—will be treated as nonresponsive and therefore will not

19  appear on any privilege log.

20  **Request for Production No. 72**

21  All documents and communications related to any relationship, connection, or link

22  between the inspection and/or processing of noncitizens seeking asylum at ports of

23  entry along the U.S.-Mexico border and (a) a desire, plan, or effort to deter,

24  disincentivize, dissuade, or prevent noncitizens from coming to the United States

25  and/or (b) a desire, plan, or effort to encourage, incentivize, or force noncitizens to

26  enter or attempt to enter the United States between ports of entry on the U.S.-Mexico

27  border.

28         **Objections:** Defendants object to Request for Production No. 72 as seeking

1    information outside the scope of Rule 34, not relevant to any party's claims or

2    defenses, not proportional to the needs of the case, overly broad and unduly

3    burdensome, and protected from disclosure by the deliberative process privilege.

4    First, Defendants object to Request for Production No. 72 to the extent it seeks oral

5    or non-written communications. *See* Pls.' Second RFPs, Definition E (defining

6    "communication(s)" to include "the exchange of information by or through any

7    mode or medium including, but not limited to, spoken word, written correspondence,

8    any form of technology, face-to-face meetings or conveying of information through

9    third person(s) to some other intended recipient"). Federal Rule of Civil Procedure

10   34 allows a party to serve requests to inspect or produce "documents,"

11   "electronically stored information," or "designated tangible things." Fed. R. Civ. P.

12   34(a)(1). It does not allow a party to obtain non-tangible things. Defendants

13   accordingly construe the term "communication(s)" to include only those items

14   permitted by Rule 34 as stated in Objections to Definitions No. 4.

15          Second, Defendants object to Request No. 72 to the extent it seeks information

16   beyond the agency's stated reasons for any purported final agency action, as such

17   information is immaterial and irrelevant to the issues in this case. "[I]t is clear that

18   the ordinary APA cause of action does not directly call into question the agency's

19   subjective intent." *In re Subpoena Duces Tecum Served on the Office of the*

20   *Comptroller of the Currency,* 156 F.3d 1279, 1280 (D.C. Cir. 1998). "When a party

21   challenges agency action as arbitrary and capricious," as Plaintiffs have here, "the

22   reasonableness of the agency's action is judged in accordance with its *stated*

23   reasons." *Id.* (emphasis added) (citing *Citizens to Preserve Overton Park, Inc. v.*

24   *Volpe,* 401 U.S. 402 (1971)). Consequently, "the actual subjective motivation of

25   agency decisionmakers is *immaterial as a matter of law . . . ." Id.* at 1279 (emphasis

26   added); *McCray v. United States,* 195 U.S. 27, 56 (1905) ("The decisions of this

27   court from the beginning lend no support whatever to the assumption that the

28   judiciary may restrain the exercise of lawful power on the assumption that a

APPENDIX B

1   wrongful purpose or motive has caused the power to be exerted."); *id.* at 53-55. Thus,

2   to the extent any individual agency decisionmaker's purported "desire, plan, or effort

3   to deter, disincentivize, dissuade, or prevent noncitizens from coming to the United

4   States," or "desire, plan, or effort to encourage, incentivize, or force noncitizens to

5   enter or attempt to enter the United States between ports of entry on the U.S.-Mexico

6   border," differ from the agency's stated reasons for any final agency action, such

7   "desire[s]," if they exist, are immaterial and irrelevant as a matter of law to the issues

8   in this case.

9          Third, a request to search for and produce "all documents" relating to a

10  purported "desire, plan, or effort to deter, disincentivize, dissuade, or prevent

11  noncitizens from coming to the United States," or a purported "desire, plan, or effort

12  to encourage, incentivize, or force noncitizens to enter or attempt to enter the United

13  States between ports of entry on the U.S.-Mexico border," is not proportional to the

14  needs of the case and is overly broad and unduly burdensome. Request No. 72 is not

15  directed to any person and is thus facially overbroad. Even assuming Request No.

16  72 is directed to the named Defendants, DHS, and CBP (as many of Plaintiffs other

17  Requests are), a complete response, based on Plaintiffs' definitions, would require

18  Defendants to collect and search the documents of each of the named Defendants;

19  each of the named Defendants' "agents, representatives, employees, attorneys and

20  investigators"; all of U.S. Customs and Border Protection, including "its

21  headquarters and offices, including any divisions, subdivisions, components or

22  sections therein; CBP offices at ports of entry, including any divisions, subdivisions

23  or sections therein; or any other CBP organizational structures, including but not

24  limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors

25  hired by CBP"; and all of the U.S. Department of Homeland Security, including "its

26  headquarters and offices, including any divisions, subdivisions, components or

27  sections therein, or any other DHS organizational structures." *See* Pls.' Second

28  RFPs, Definitions A—C. DHS employs more than 240,000 people, and CBP

APPENDIX B

104

employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome, Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff'" would be "onerous and over burdensome"), especially considering that "the reasonableness of the agency's action is judged in accordance with its *stated* reasons." *In re Subpoena Duces Tecum,* 156 F.3d at 1279 (emphasis added).

Fourth, processing may encompass actions such as a secondary inspection for agricultural or customs purposes. *See* U.S. DHS PRIVACY IMPACT ASSESSMENT FOR THE TECS SYSTEM: CBP PRIMARY AND SECONDARY PROCESSING at 5 (December 22, 2010), https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-tecs-december2010_0.pdf. Activities like these that may be included in the processing of an alien are outside the scope of this lawsuit.

Finally, Defendants object to Request No. 72 to the extent it seeks information protected from disclosure by the deliberative process privilege. The deliberative process privilege protects internal government deliberations in order to promote the "frank and candid discussion necessary for effective government." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150-51 (1975). The privilege is designed "to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Assembly of California v. United States Dep't of Commerce,* 968 F.2d 916, 920 (9th Cir. 1992). Information is protected from disclosure by this privilege when it is (1) predecisional and (2) deliberative, thereby containing opinions, recommendations, or advice. *Id.* at 149. "Examples of

APPENDIX B

documents that qualify as predecisional include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted). A request for "all documents" relating to a purported "desire, plan, or effort to deter, disincentivize, dissuade, or prevent noncitizens from coming to the United States," or a purported "desire, plan, or effort to encourage, incentivize, or force noncitizens to enter or attempt to enter the United States between ports of entry on the U.S.-Mexico border," to the extent such "desire[s]" constitute the agency's stated reasons, would include predecisional, deliberative documents, such as recommendations, drafts, proposals, and suggestions, that are protected from disclosure by the deliberative process privilege. To the extent such "desire[s]" do not constitute the agency's stated reasons for its actions, such documents are "immaterial as a matter of law." *In re Subpoena Duces Tecum,* 156 F.3d at 1279; *McCray,* 195 U.S. at 56 ("The decisions of this court from the beginning lend no support whatever to the assumption that the judiciary may restrain the exercise of lawful power on the assumption that a wrongful purpose or motive has caused the power to be exerted."); *id.* at 53-55.

Defendants also object to RFP 72 in accordance with Objections Which Apply to All RFPs Nos. 1-4 and 6-10; Objections to Definitions Nos. 4-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

Accordingly, Defendants understand and construe Request for Production No. 72 as seeking non-privileged documents related to the stated reasons of CBP's Office of Field Operations for metering, including at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.

**Response:** In accordance with Defendants' objections, and in light of Request No. 72 being disproportional to the needs of the case, considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will

APPENDIX B

limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, and will produce or log documents responsive to this understanding and construction of Request for Production No. 72 after the parties agree on such sources and protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as nonresponsive and therefore will not appear on any privilege log.

**Request for Production No. 73**

All documents and communications analyzing or assessing the impact of any formal or informal policy, practice, or effort to meter or limit the number of noncitizens who can apply for asylum at a port of entry on the U.S.-Mexico border on the health or wellbeing of asylum seekers.

**Objections:** Defendants object to Request for Production No. 73 as seeking information outside the scope of Rule 34, not relevant to any party's claims or defenses, and as vague and ambiguous. First, Defendants object to Request for Production No. 73 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communication(s)" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other

APPENDIX B

107

intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communication(s)" to include only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

Second, the effect of a "formal or informal policy, practice, or effort to meter or limit the number" of persons who may apply for asylum at ports of entry on the U.S.-Mexico border on those persons' "health or wellbeing" is not relevant to any party's claims or defenses because it does not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. An analysis or assessment of the effect of such alleged actions on a traveler's "health or wellbeing" does not have "any tendency" to make any of the issues in this case "more or less probable than [they] would be without" the analysis or assessment, nor are such analyses or assessments, to the extent they exist, "of consequence in determining" the issues. Fed. R. Evid. 401.

Finally, Defendants object to the term "wellbeing" as vague and ambiguous because it is not defined by Plaintiffs and is susceptible to multiple meanings. Defendants accordingly construe Request No. 73 as referring only to the "health" of the delineated persons.

Defendants also object to RFP 73 in accordance with Objections Which Apply to All RFPs Nos. 1, 4, and 6-10 and Objections to Definitions Nos. 4-6, and 10.

**Response:** In light of the foregoing objections, Defendants will not search for, produce, or log documents responsive to Request for Production No. 73.

APPENDIX B

108

**Request for Production No. 74**

All documents and communications analyzing or assessing the number of individuals turned back to Mexico and/or that CBP refuses to inspect and process as a part of any formal or informal policy, practice, or effort to meter or limit the number of noncitizens who can apply for asylum at a port of entry on the U.S.-Mexico border, including but not limited to any documents setting goals or targets for the number of asylum seekers to be turned back from any port of entry or all ports of entry generally.

    **Objections:** Defendants object to Plaintiffs' characterization that CBP "turn[s] back" individuals to Mexico and "refuses to inspect and/or process" individuals at ports of entry along the U.S.-Mexico border. To the extent Request No. 74 can be understood and construed as seeking statistics, data, or other numerical figures relating to the number of persons without travel documents in Mexico waiting to cross the border into the United States at a port of entry, Defendants expressly incorporate herein their objections to Request for Production No. 77.

    Defendants also object to RFP 74 in accordance with Objections Which Apply to All RFPs Nos. 1, 4, 6-7, and 10; Objections to Definitions Nos. 2, 4-6, and 9-10; and Objections to Instructions Nos. 1, 2, and 4.

    **Response:** Subject to and without waiving Defendants' objections, Defendants respond as follows: Defendants do not "refuse[] to inspect and/or process" individuals at ports of entry along the U.S.-Mexico border. Therefore, Defendants will not conduct a separate search for such documents. However, should Defendants locate any responsive documents related to the four ports of entry at issue if collected as a result of their agreed-upon search , Defendants will produce or log such documents.

**Request for Production No. 75**

All documents relating to any statistics, data or other numerical figures, whether estimates or actual values, representing, analyzing or assessing CBP's or DHS's

capacity to (a) inspect and process asylum seekers at any port of entry or at ports of entry generally along the U.S.-Mexico border, (b) conduct credible fear interviews at any port of entry or at ports of entry generally along the U.S.-Mexico border, and (c) house or otherwise care for noncitizens awaiting credible or reasonable fear interviews, whether at a port of entry or elsewhere.

**Objections:** Defendants object to Request for Production No. 75 as seeking documents that can be obtained "from some other source that is more convenient, less burdensome, [and] less expensive" for the parties. Fed. R. Civ. P. 26(b)(2)(C)(i), as not proportionate to the needs of the case, as overly broad and unduly burdensome, as seeking information protected from disclosure by the deliberative process privilege and the law enforcement privilege and/or as law enforcement sensitive, and an incorrect statement of law, to the extent it implies that CBP conducts credible fear interviews. First, Defendants object to Request No. 75 to the extent it requests publicly available statistics and numerical figures, which can be found at: https://www.cbp.govinewsroom/stats.

Second, a request to search for and produce "all documents" related to the delineated topics is not proportional to the needs of the case and is overly broad and unduly burdensome. Request No. 75 is not directed to any person and is thus facially overbroad. Even assuming Request No. 75 is directed to the named Defendants, DHS, and CBP (as many of Plaintiffs other Requests are), a complete response, based on Plaintiffs' definitions, would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S.

Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A—C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff']" would be "onerous and over burdensome"). Further, Request No. 75 is not proportionate to the needs of the case and is overly broad and unduly burdensome because it requests all documents relating to statistics, data, or numerical figures relating to all ports of entry on the U.S.-Mexico border. Consistent with the Objections Applying to All Request No. 6, Defendants construe this Request as seeking documents relating to the four ports of entry at issue.

Third, Defendants object to Request No. 75 to the extent it seeks information protected from disclosure by the deliberative process privilege. To the extent any analyses or assessments of the four ports' capacities are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

APPENDIX B

Fourth, Defendants object to Request No. 75 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for "all documents" relating to the named Defendants' "knowledge, assent, direction, acquiescence, authorization, or consent to any formal or informal policy, practice, or effort to meter or limit the number of noncitizens that can apply for asylum at a port of entry on the U.S.-Mexico border" implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo,* No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Finally, Defendants object to Request No. 75 to the extent it implies that CBP conducts credible or reasonable fear interviews at ports of entry, as only asylum officers conduct such interviews, and such interviews are not done at POEs.

Defendants also object to RFP 75 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, 6-7, and 10; Objections to Definitions Nos. 2-3, 5-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

Accordingly, Defendants understand and construe Request for Production No. 75 as seeking non-attorney-client privileged documents relating to statistics or data representing, analyzing, or assessing the Office of Field Operations' capacity to inspect and process the traveling public at the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response:** In accordance with their objections, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, and will produce or log

documents responsive to this understanding and construction of Request for Production No. 75 after the parties agree on such sources and protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present, that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or material generated at the direction of counsel—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

**Request for Production No. 76**

All documents relating to any statistics, data or other numerical figures, whether estimates or actual values, representing CBP's or DHS's rate of processing of asylum seekers at ports of entry along the U.S.-Mexico border.

**Objections:** Defendants object to Request for Production No. 76 as seeking documents that can be obtained "from some other source that is more convenient, less burdensome, [and] less expensive" for the parties, Fed. R. Civ. P. 26(b)(2)(C)(i); as not proportionate to the needs of the case; and as overly broad and unduly burdensome. First, Defendants object to Request No. 76 to the extent it requests publicly available statistics and numerical figures, which can be found at: https://www.cbp.gov/newsroom/stats. Second, Request No. 76 is not proportionate to the needs of the case and is overly broad and unduly burdensome because it requests all documents relating to statistics, data, or numerical figures relating to all ports of entry on the U.S.-Mexico border. Consistent with the Objections Which Apply to All RFPs No. 6, Defendants construe this Request as seeking documents relating to the four ports of entry at issue.

Defendants object to Request No. 76 as vague and confusing, and to the extent

1    it reflects an incorrect statement of the law.

2         Defendants also object to RFP 76 in accordance with Objections Which Apply

3    to All RFPs Nos. 1, 4, 6-7 and 10; Objections to Definitions Nos. 2-3, 5-6, and 10;

4    and Objections to Instructions Nos. 1 and 4.

5         **Response:** In accordance with their objections, Defendants will produce

6    documents responsive to Request for Production No. 76 related to the San Ysidro,

7    Otay Mesa, Hidalgo, and Laredo ports of entry. Defendants will continue to confer

8    with Plaintiffs in identifying reasonable custodial and non-custodial sources and

9    document identification protocols, and will produce or log documents responsive to

10   this Request after the parties agree on such sources and protocols. However, in the

11   event the parties cannot agree, Defendants will limit their search to the sources

12   identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report

13   (ECF No. 243), from which Defendants will produce or log documents responsive

14   to this Request, dating from January 1, 2016, to the present, that can be located after

15   a reasonable search. Documents created on or after July 12, 2017, the date of

16   Plaintiffs' original complaint (ECF No. 1), representing either communications with

17   counsel or communications or documents relating to the actual conduct of litigation

18   post-complaint—and thus clearly protected by either the attorney-client privilege or

19   the work-product doctrine—will be treated as non-responsive and therefore will not

20   appear on any privilege log.

21   **Request for Production No. 77**

22   All documents relating to any statistics, data or other numerical figures, whether

23   estimates or actual values, representing, assessing or analyzing the number of

24   noncitizens waiting to present themselves to seek asylum at any port of entry along

25   the U.S.-Mexico border.

26        **Objections:** Defendants object to Request for Production No. 77 as seeking

27   documents that can be obtained "from some other source that is more convenient,

28   less burdensome, [and] less expensive" for the parties, Fed. R. Civ. P. 26(b)(2)(C)(i);

114

APPENDIX B

as seeking information that is not relevant to any party's claims or defenses; as not proportionate to the needs of the case, overly broad and unduly burdensome, vague and ambiguous; and seeking information protected from disclosure by the deliberative process privilege and the law enforcement privilege and/or as law enforcement sensitive. First, Defendants object to Request No. 77 to the extent it requests publicly available statistics and numerical figures, which can be found at: https://www.cbp.gov/newsroom/stats.

Second, the number of people without travel documents in Mexico waiting to cross the border into the United States at a port of entry is not relevant to any party's claims or defenses.

Third, a request to search for and produce "all documents" related to the delineated topics is not proportional to the needs of the case and is overly broad and unduly burdensome. Request No. 77 is not directed to any person and is thus facially overbroad. Even assuming Request No. 77 is directed to the named Defendants, DHS, and CBP (as many of Plaintiffs other Requests are), a complete response, based on Plaintiffs' definitions, would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A—C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017),

APPENDIX B

115

https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff'" would be "onerous and over burdensome"). Further, Request No. 77 is not proportionate to the needs of the case and is overly broad and unduly burdensome because it requests all documents relating to statistics, data, or numerical figures relating to all ports of entry on the U.S.-Mexico border. Consistent with Objections With Apply to All RFPs No. 6, Defendants construe this Request as seeking documents relating to the four ports of entry at issue.

Fourth, Defendants object to Request No. 77 to the extent it seeks information protected from disclosure by the deliberative process privilege. To the extent any analyses or assessments of the number of persons without travel documents waiting in Mexico are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

Finally, Defendants object to Request No. 77 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for "all documents" relating to "any statistics, data or other numerical figures, whether estimates or actual values, representing, assessing or analyzing the number of noncitizens waiting to present

APPENDIX B

116

themselves to seek asylum at any port of entry along the U.S.-Mexico border" implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo,* No. 06-cv-1283, 2007 WL 1589541, at \*5 (E.D. Cal. June 1, 2007).

Defendants also object to RFP 77 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, 6-7, and 10; Objections to Definitions Nos. 5-6, 8, and 10; and Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with Defendants' objections, and in light of Request No. 77 being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants understand and construe Request No. 77 as limited to the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry. Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce all non-privileged documents responsive to this Request, dating from January 1, 2016, to the present that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

**Request for Production No. 78**

All documents relating to any statistics, data or other numerical figures, whether estimates or actual values, representing, assessing or analyzing the number of noncitizens whom CBP refuses to inspect and/or process at ports of entry along the U.S.-Mexico border.

     **Objections:** Defendants object to Plaintiffs' characterization that CBP "refuses to inspect and/or process" individuals at ports of entry along the U.S.-Mexico border. CBP inspects such persons when the port has capacity to process them. To the extent Request No. 78 can be understood and construed as seeking statistics, data, or other numerical figures relating to the number of persons without travel documents in Mexico waiting to cross the border into the United States at a port of entry to apply for admission, Defendants object to this request as duplicative Request No. 77.

     Defendants also object to RFP 78 in accordance with Objections Which Apply to All RFPs Nos. 1, 3, and 6-7, and 10; Objections to Definitions Nos. 2, 5-6, 8, and 10; and Objections to Instructions Nos. 1, 2, and 4.

     **Response:** In accordance with their objections, Defendants respond as follows: Defendants do not "refuse[] to inspect and/or process" individuals at ports of entry along the U.S.-Mexico border. Therefore, Defendants will not conduct a separate search for such documents.

**Request for Production No. 79**

All documents relating to any statistics, data or other numerical figures, whether estimates or actual values, representing, assessing or analyzing the number of individuals told or instructed by CBP to wait in Mexico before presenting themselves to seek asylum.

     **Objections:** Defendants object to Request for Production No. 79 as seeking information that is not relevant to any party's claims or defenses, as not proportionate to the needs of the case, overly broad and unduly burdensome, and as

1    seeking information protected from disclosure by the deliberative process privilege

2    and the law enforcement privilege and/or as law enforcement sensitive. .

3         First, a request to search for and produce "all documents" related to the

4    delineated topics is not proportional to the needs of the case and is overly broad and

5    unduly burdensome. Request No. 79 is not directed to any person and is thus facially

6    overbroad. Even assuming Request No. 79 is directed to the named Defendants,

7    DHS, and CBP (as many of Plaintiffs other Requests are), a complete response,

8    based on Plaintiffs' definitions, would require Defendants to collect and search the

9    documents of each of the named Defendants; each of the named Defendants'

10   "agents, representatives, employees, attorneys and investigators"; all of U.S.

11   Customs and Border Protection, including "its headquarters and offices, including

12   any divisions, subdivisions, components or sections therein; CBP offices at ports of

13   entry, including any divisions, subdivisions or sections therein; or any other CBP

14   organizational structures, including but not limited to U.S. Border Patrol, U.S. Office

15   of Field Operations or private contractors hired by CBP"; and all of the U.S.

16   Department of Homeland Security, including "its headquarters and offices,

17   including any divisions, subdivisions, components or sections therein, or any other

18   DHS organizational structures." *See* Pls.' Second RFPs, Definitions A—C. DHS

19   employs more than 240,000 people, and CBP employs more than 60,000 people. *See*

20   "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017),

21   https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection

22   (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and

23   searching through the documents of all of these individuals, as Plaintiffs request, is

24   plainly not proportional to the needs of this case and is overly broad and unduly

25   burdensome. *Cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at

26   *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that

27   obligates a party to "canvas every employee who might have had a conversation with

28   [the plaintiff '"] would be "onerous and over burdensome"). Further, Request No. 79

APPENDIX B

1   is not proportionate to the needs of the case and is overly broad and unduly
2   burdensome because it requests all documents relating to statistics, data, or
3   numerical figures relating to all ports of entry on the U.S.-Mexico border. Consistent
4   with Objections Which Apply to All RFPs Nos. 1 and 6, Defendants construe this
5   Request as seeking documents relating to the four ports of entry at issue.

6       Second, Defendants object to Request No. 79 to the extent it seeks information
7   protected from disclosure by the deliberative process privilege. To the extent any
8   analyses or assessments of the number of people without travel documents waiting
9   in Mexico are predecisional and deliberative, thereby containing opinions,
10  recommendations, or advice, *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149
11  (1975), including, but not limited to, "recommendations, draft documents, proposals,
12  suggestions, and other subjective documents which reflect the personal opinions of
13  the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v.*
14  *HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation
15  omitted), such documents are privileged and protected from disclosure.

16      Third, Defendants object to Request No. 79 to the extent it seeks information
17  protected from disclosure by the law enforcement privilege and/or as law
18  enforcement sensitive. To the extent a request for "all documents" relating to
19  analyses or assessments of the number of persons instructed to wait in Mexico
20  implicates, for example, "law enforcement techniques and procedures," the
21  "confidentiality of sources," the "protect[ion of] witnesses and law enforcement
22  personnel," "safeguard[ing] the privacy of individuals involved in an investigation,"
23  and/or the "prevent[ion of] interference with an investigation," such information is
24  subject to the law enforcement privilege and protected from disclosure. *Deocampo*
25  *v. City of Vallejo,* No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

26      Defendants also object to RFP 79 in accordance with Objections Which Apply
27  to All RFPs Nos. 1, 4, 6-7, and 10; Objections to Definitions Nos. 2, 5-6, 8, and 10;
28  and Objections to Instructions Nos. 1, 2, and 4.

APPENDIX B

120

**Response:** In accordance with their objections, Defendants respond as follows: Defendants continue to investigate, but they are not currently aware of any statistics, data, or other numerical figures maintained by Defendants, of the number of people without travel documents who are instructed or told to wait in Mexico at any given time. Therefore, Defendants will not conduct a separate search for such documents. However, should Defendants locate any responsive documents related to the four ports of entry at issue collected as a result of their agreed-upon search for documents, Defendants will produce or log such documents.

**Request for Production No. 80**

All documents relating to any statistics, data or other numerical figures, whether estimates or actual values, representing, assessing or analyzing the number of individuals apprehended or intercepted by Mexican authorities as they were approaching a port of entry to seek asylum.

**Objections:** Defendants object to Request for Production No. 80 as seeking information that is not relevant to any party's claims or defenses, as not proportionate to the needs of the case, as overly broad and unduly burdensome, as vague and ambiguous, and as seeking information protected from disclosure by the deliberative process privilege and the law enforcement privilege and/or as law enforcement sensitive. First, any documents relating to "the number of individuals apprehended or intercepted by Mexican authorities as they were approaching a port of entry to seek asylum" do not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. Whether Mexican immigration officials "apprehend or intercept" persons in Mexican territory, subject to Mexico's laws, does not bear on those issues. *See* Fed. R. Evid. 401.

APPENDIX B

121

Second, a request to search for and produce "all documents" related to the delineated topics is not proportional to the needs of the case and is overly broad and unduly burdensome. Request No. 80 is not directed to any person and is thus facially overbroad. Even assuming Request No. 80 is directed to the named Defendants, DHS, and CBP (as many of Plaintiffs other Requests are), a complete response, based on Plaintiffs' definitions, would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A—C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff'" would be "onerous and over burdensome"). Further, Request No. 80 is not proportionate to the needs of the case and is overly broad and unduly burdensome because it requests all documents relating to statistics, data, or

APPENDIX B

numerical figures relating to all ports of entry on the U.S.-Mexico border. Consistent with Objections Which Apply to All RFPs Nos. 1 and 6, Defendants construe this Request as seeking documents relating to the four ports of entry at issue.

Third, Defendants object to the phrases "as they were approaching a port of entry to seek asylum" as vague and ambiguous, as Defendants have no way of knowing whether a particular person approaching a port of entry intends to seek asylum or not until he or she crosses the border.

Fourth, Defendants object to Request No. 80 to the extent it seeks information protected from disclosure by the deliberative process privilege. To the extent any analyses or assessments of the number of individuals apprehended or intercepted by Mexican authorities as they were approaching a port of entry to seek asylum are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

Fifth, Defendants object to Request No. 80 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for "all documents" relating to analyses or assessments of the number of individuals apprehended or intercepted by Mexican authorities as they were approaching a port of entry to seek asylum implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo*

APPENDIX B

*v. City of Vallejo,* No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants also object to RFP 80 in accordance with Objections Which Apply to All RFPs Nos. 1, 4-7, and 10; Objections to Definitions Nos. 5-6, 8, and 10; and Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with their objections, Defendants respond as follows: Defendants do not, as a matter of agency policy, keep track of the number of individuals apprehended or intercepted by Mexican authorities as they were approaching a port of entry. Therefore, Defendants will not conduct a separate search for such documents. However, should Defendants locate any responsive documents during their search for documents related to the four ports of entry at issue, Defendants will produce or log such documents.

**Request for Production No. 82**

All documents relating to any statistics, data or other numerical figures, whether estimates or actual values, regarding annual funding for physical facilities at ports of entry.

**Objections:** Defendants object to Request for Production No. 82 as seeking information not relevant to any party's claims or defenses, not proportional to the needs of the case, overly broad and unduly burdensome, as seeking documents protected from disclosure by the deliberative process privilege, and seeking documents that can be obtained from some other source that is more convenient, less burdensome, and less expensive for the parties. First, not "all documents" related to the delineated "annual funding for physical facilities at ports of entry" bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful.

APPENDIX B

124

Second, a request to produce "all documents relating to any statistics, data or other numerical figures, whether estimates or actual values, regarding annual funding for physical facilities at ports of entry" is not proportional to the needs of the case and is overly broad and unduly burdensome. Request No. 82 is not directed to any person and is thus facially overbroad. Even assuming Request No. 82 is directed to the named Defendants, DHS, and CBP (as many of Plaintiffs other Requests are), a complete response, based on Plaintiffs' definitions, would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A—C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome"). Further, Request No. 82 is not proportionate to the needs of the case

and is overly broad and unduly burdensome because it requests all documents relating to statistics, data, or numerical figures relating to all ports of entry on the U.S.-Mexico border. Consistent with Objections Which Apply to All RFPs No. 6, Defendants construe this Request as seeking documents relating to the four ports of entry at issue.

Third, Defendants object to Request No. 82 to the extent it seeks internal documents protected from disclosure by the deliberative process privilege, as explained in Defendants' General Objection No. **Error! Reference source not found..** To the extent any "statistics, data or other numerical figures, whether estimates or actual values, regarding annual funding for physical facilities at ports of entry" are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure. *See, e.g., L.H. v. Schwarzenegger,* No. 06-cv-2042, 2007 WL 1531420, at *4-5 (E.D. Cal. May 25, 2007) (report & recommendation) ("budget change proposals" protected by deliberative process privilege), *affirmed in relevant part,* 2007 WL 2009807, at *34 (E.D. Cal. July 6, 2007).

Defendants also object to RFP 82 in accordance with Objections Which Apply to All RFPs Nos. 1, 6-7, and 10; Objections to Definitions Nos. 5-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

Accordingly, Defendants understand and construe Request for Production No. 82 as seeking "numerical figures regarding annual funding for physical facilities at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry."

**Response:** In accordance with their objections, Defendants respond as

APPENDIX B

follows: Documents responsive to Request No. 82 can be obtained "from some other source that is more convenient, less burdensome, [and] less expensive" for the parties. Fed. R. Civ. P. 26(b)(2)(C)(i). The Department of Homeland Security's final appropriations- or funding-related documents for fiscal years 2003 through 2020, including budgets-in-brief, can be located at: https://www.dhs.gov/dhs-budget. Therefore, Defendants will not conduct a separate search for such documents. However, should Defendants locate any responsive documents during their search for documents related to the four ports of entry at issue, Defendants will produce or log such documents.

**Request for Production No. 83**

All documents relating to formal or informal communications with local, state or federal Mexican government officials or their agents, including but not limited to officials with the Institute Nacional de Migraci6n ("INM"), regarding (a) the arrival or processing of individuals expressing a desire to seek asylum or expressing a fear of returning to their countries of origin at or near ports of entry on the U.S.-Mexico border; (b) the apprehension or interdiction of, or interference with, individuals seeking asylum in the United States; and/or (c) the capacity of a port of entry along the U.S.-Mexico border, or the United States generally, to inspect, process, house, care for, or interview individuals seeking asylum in the United States.

**Objections:** Defendants object to Request for Production No. 83 as not proportionate to the needs of the case, overly broad and unduly burdensome, and as seeking information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. First, a request to search for and produce "all documents relating to formal or informal communications with local, state or federal Mexican government officials or their agents" is not proportional to the needs of the case and is overly broad and unduly burdensome. Request No. 83 is not directed to any person and is thus facially overbroad. Even assuming Request No. 83 is directed to the named Defendants, DHS, and CBP (as many of Plaintiffs other Requests are),

APPENDIX B

a complete response, based on Plaintiffs' definitions, would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A—C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome"). Consistent with Objections Which Apply to All RFPs No. 6, Defendants construe this Request as seeking documents relating to the four ports of entry at issue.

Second, Defendants object to Request No. 83 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for "all documents relating to formal or informal communications with local, state or federal Mexican government

officials or their agents" pertaining to the three delineated topics implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo,* No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants also object to RFP 83 in accordance with Objections Which Apply to All RFPs Nos. 1, 4-6, and 7-10; Objections to Definitions Nos. 4-6, and 8-10; and Objections to Instructions Nos. 1, 2, and 4.

Defendants understand and construe Request for Production No. 83 as seeking documents relating to communications (as construed by Defendants) between Office of Field Operations employees at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry and Institute Nacional de Migraci6n ("INM") employees regarding those four ports' capacity to process aliens without travel documents for admission, as well as any communications (as construed by Defendants) between the San Diego and Laredo Field Offices and INM.

**Response:** In accordance with their objections, Defendants understand and construe Request for Production No. 83 as seeking documents relating to communications between Office of Field Operations employees at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry, and at the San Diego and Laredo Field Offices, and Institute Nacional de Migracion ("INM") employees, regarding those four ports' capacity to process aliens without travel documents for admission. Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, and will produce or log documents responsive to this understanding and construction of Request for Production No. 83 after the parties agree on such sources and protocols.

1    However, in the event the parties cannot agree, Defendants will limit their search to
2    the sources identified in Defendants' portion of the Supplement to the Parties' Joint
3    26(f) Report (ECF No. 243), from which Defendants will produce or log documents
4    responsive to this Request, dating from January 1, 2016, to the present, that can be
5    located after a reasonable search. Documents created on or after July 12, 2017, the
6    date of Plaintiffs' original complaint (ECF No. 1), representing either
7    communications with counsel or communications or documents relating to the actual
8    conduct of litigation post-complaint—and thus clearly protected by either the
9    attorney-client privilege or the work-product doctrine—will be treated as non-
10   responsive and therefore will not appear on any privilege log.

11   **Request for Production No. 84**

12   All documents relating to plans drafted or adopted by you, CBP, or DHS with respect
13   to inspecting, processing, interviewing, housing, or caring for noncitizens seeking
14   asylum in the United States that were or are a part of a migrant "caravan."

15       **Objections:** Defendants object to Request for Production No. 84 as not
16   proportionate to the needs of the case, as overly broad and unduly burdensome, as
17   unnecessarily duplicative of other Requests for Production, and as seeking
18   information protected from disclosure by the attorney work-product doctrine, the
19   attorney-client privilege, the deliberative process privilege, and the law enforcement
20   privilege and/or as law enforcement sensitive.

21       First, a request for "all documents" relating to the named Defendants', CBP's,
22   or DHS's plans to inspect, process, interview, house, or care for aliens without travel
23   documents who intend to apply for admission to the United States is not
24   proportionate to the needs of the case, as it essentially requests all documents relating
25   to all aspects of CBP's responsibilities at land ports of entry on the border with
26   respect to the processing of aliens without travel documents traveling in a large
27   group. A complete response, based on Plaintiffs' definitions, would require
28   Defendants to collect and search the documents of each of the named Defendants;

APPENDIX B

each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A—C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome"). Further, Request No. 84 is not proportionate to the needs of the case and is overly broad and unduly burdensome because it is not limited to the four ports of entry where the individual Plaintiffs allege they encountered CBP. Consistent with Objections Which Apply to All RFPs No. 6, Defendants construe this Request as seeking documents relating to the four ports of entry at issue.

Second, this Request is overbroad in that "processing" encompasses actions such as a secondary inspection for agricultural or customs purposes. *See* U.S. DHS PRIVACY IMPACT ASSESSMENT FOR THE TECS SYSTEM: TECS PRIMARY AND SECONDARY PROCESSING at 5 (December 22, 2010),

1   https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-tecs-

2   december2010_0.pdf. Activities like these that may be included in the processing of

3   an alien are outside the scope of this lawsuit.

4       Third, Defendants object to Request for Production No. 84 to the extent it

5   seeks information protected from disclosure by the attorney work-product doctrine.

6   To the extent a request for "all documents" relating to the "plans drafted or adopted"

7   by the named Defendants, CBP, or DHS with respect to the delineated topics

8   implicates, for example, "documents and tangible things prepared by a party or his

9   representative in anticipation of litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.,* 881

10  F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman v.*

11  *Taylor,* 329 U.S. 495 (1947), including "documents or the compilation of materials

12  prepared by agents of the attorney in preparation for litigation," *United States v.*

13  *Richey,* 632 F.3d 559, 567 (9th Cir. 2011) (citing *United States v. Nobles,* 422 U.S.

14  225, 238 (1975)), such as, for example, notes and emails of Defendants' attorneys

15  and staff, and draft and final internal documents, such documents are protected from

16  disclosure by the attorney work-product doctrine.

17      Fourth, Defendants object to Request for Production No. 84 to the extent it

18  seeks information protected by the attorney-client privilege. To the extent a request

19  for "all documents" relating to "plans drafted or adopted by [the named Defendants],

20  CBP, or DHS with respect to inspecting, processing, interviewing, housing, or caring

21  for noncitizens seeking asylum in the United States that were or are a part of a

22  migrant 'caravan' implicates, for example, confidential communications between

23  attorneys and clients which are made for the purpose of giving legal advice, *Upjohn*

24  *Co. v. United States,* 449 U.S. 383, 389 (1981), such documents are privileged and

25  protected from disclosure.

26      Fifth, Defendants object to Request No. 84 to the extent it seeks information

27  protected from disclosure by the deliberative process privilege. To the extent a

28  request for "all documents" relating to "plans drafted or adopted by [the named

APPENDIX B

Defendants], CBP, or DHS with respect to inspecting, processing, interviewing, housing, or caring for noncitizens seeking asylum in the United States that were or are a part of a migrant 'caravan' implicates, for example, documents that are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

Finally, Defendants object to Request No. 84 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for "all documents" relating to "plans drafted or adopted by [the named Defendants], CBP, or DHS with respect to inspecting, processing, interviewing, housing, or caring for noncitizens seeking asylum in the United States that were or are a part of a migrant 'caravan' implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo,* No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants also object to RFP 84 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, and 6-10; Objections to Definitions Nos. 1-3, 5-6, 8, and 10; and Objections to Instructions Nos. 1, 2, and 4.

Accordingly, Defendants understand and construe Request for Production No. 84 as seeking documents containing non-privileged instructions to Office of Field Operations employees at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of

APPENDIX B

133

entry about the inspection and processing of aliens (as limited by Defendants' objections above) without travel documents who seek to apply for admission in the United States.

**Response:** Subject to and in light of their objections, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, and will produce or log documents responsive to this understanding and construction of Request for Production No. 84 after the parties agree on such sources and protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present, that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

**Request for Production No. 86**

All documents relating to plans, instructions, or orders for CBP or DHS officials to communicate with, or otherwise work with, Mexican government officials, including the INM, to prevent noncitizens seeking asylum in the United States from approaching or accessing a port of entry.

**Objections:** Defendants object to Request for Production No. 86 to the extent it requests documents relating to third parties' intent, as not proportionate to the needs of the case, as overly broad and unduly burdensome, as unnecessarily duplicative of other Requests for Production, and as seeking information protected

from disclosure by the attorney work-product doctrine, the attorney-client privilege, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive. First, Defendants object to Request No. 86 to the extent it requests communications with Mexican government officials relating to "noncitizens seeking asylum in the United States." Defendants cannot know whether an individual intends to seek asylum in the United States before they encounter that individual, and an individual is not "seeking asylum in the United States" until that person is, at minimum, within the territorial jurisdiction of the United States. Consistent with Defendants' Objections Which Apply to All Requests Nos. 3 and 4,Defendants construe this Request as seeking information relating to aliens without travel documents in Mexico.

Second, a request for all documents relating to plans, instructions, or orders for CBP or DHS officials to communicate with, or otherwise work with, Mexican government officials, including the INM, to prevent aliens without travel documents in Mexico from approaching or accessing a port of entry is not proportionate to the needs of the case. A complete response, based on Plaintiffs' definitions, would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A—C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland

APPENDIX B

Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome"). Further, Request No. 86 is not proportionate to the needs of the case and is overly broad and unduly burdensome because it is not limited to the four ports of entry where the individual Plaintiffs allege they encountered CBP. Consistent with Objections Which Apply to All RFPs No. 6, Defendants construe this Request as seeking documents relating to the four ports of entry at issue.

Third, Defendants object to Request for Production No. 86 to the extent it seeks information protected from disclosure by the attorney work-product doctrine. To the extent a request for all documents relating to plans, instructions, or orders for CBP or DHS officials to communicate with, or otherwise work with, Mexican government officials, including the INM, to prevent aliens without travel documents in Mexico from approaching or accessing a port of entry implicates, for example, "documents and tangible things prepared by a party or his representative in anticipation of litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.,* 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman v. Taylor,* 329 U.S. 495 (1947), including "documents or the compilation of materials prepared by agents of the attorney in preparation for litigation," *United States v. Richey,* 632 F.3d 559, 567 (9th Cir. 2011) (citing *United States v. Nobles,* 422 U.S. 225, 238 (1975)), such as, for example, notes and emails of Defendants' attorneys and staff, and draft and final internal documents, such documents are protected from disclosure by the attorney work-product doctrine.

APPENDIX B

Fourth, Defendants object to Request for Production No. 86 to the extent it seeks information protected by the attorney-client privilege. To the extent a request for all documents relating to plans, instructions, or orders for CBP or DHS officials to communicate with, or otherwise work with, Mexican government officials, including the INM, to prevent aliens without travel documents in Mexico from approaching or accessing a port of entry implicates, for example, confidential communications between attorneys and clients which are made for the purpose of giving legal advice, *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981), such documents are privileged and protected from disclosure.

Fifth, Defendants object to Request No. 86 to the extent it seeks information protected from disclosure by the deliberative process privilege. To the extent a request for all documents relating to plans, instructions, or orders for CBP or DHS officials to communicate with, or otherwise work with, Mexican government officials, including the INM, to prevent aliens without travel documents in Mexico from approaching or accessing a port of entry implicates, for example, documents that are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

Finally, Defendants object to Request No. 86 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for all documents relating to plans, instructions, or orders for CBP or DHS officials to communicate with, or otherwise work with, Mexican government officials, including the INM, to prevent aliens without travel documents in Mexico from approaching or accessing a port of entry

APPENDIX B

implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo,* No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants also object to RFP 86 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, and 6-10; Objections to Definitions Nos. 2-3, 5-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with Defendants' objections, and in light of Request No. 86 being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce all non-privileged documents responsive to this Request, dating from January 1, 2016, to the present that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as nonresponsive and therefore will not appear on any privilege log.

**Request for Production No. 88**

All documents and communications related to John P. Wagner's June 13, 2017 testimony before the House Appropriation Committee related to noncitizens seeking

APPENDIX B

asylum in the United States at ports of entry along the U.S.-Mexico border, including the factual basis for Mr. Wagner's assertion that turning away asylum seekers was justified by a lack of capacity at ports of entry.

**Objections:** Defendants object to Request for Production No. 88 as seeking information outside the scope of Rule 34, as not proportionate to the needs of the case, as overly broad and unduly burdensome, and as seeking information protected from disclosure by the attorney work-product doctrine, the attorney-client privilege, the deliberative process privilege, the law enforcement privilege and/or as law enforcement sensitive, and as seeking documents that can be obtained "from some other source that is more convenient, less burdensome, [and] less expensive" for the parties. Fed. R. Civ. P. 26(b)(2)(C)(i). First, Defendants object to Request for Production No. 88 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communication(s)" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communication(s)" to include only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

Second, a request for "all documents" relating to Mr. Wagner's June 13, 2017 testimony on the delineated topic is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definitions, a complete response would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection,

including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components, or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A—C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff']" would be "onerous and over burdensome").

Third, Defendants object to Request for Production No. 88 to the extent it seeks information protected from disclosure by the attorney work-product doctrine. To the extent a request for "all documents" relating to Mr. Wagner's June 13, 2017 testimony on the delineated topic implicates, for example, "documents and tangible things prepared by a party or his representative in anticipation of litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.,* 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman v. Taylor,* 329 U.S. 495 (1947), including "documents or the compilation of materials prepared by agents of the attorney in preparation for litigation," *United States v. Richey,* 632 F.3d 559, 567 (9th Cir. 2011) (citing *United States v. Nobles,* 422 U.S. 225, 238 (1975)), such as, for example, notes and emails

APPENDIX B

of Defendants' attorneys and staff, and draft and final internal documents, such documents are protected from disclosure by the attorney work-product doctrine.

Fourth, Defendants object to Request for Production No. 88 to the extent it seeks information protected by the attorney-client privilege. To the extent a request for "all documents" relating to Mr. Wagner's June 13, 2017 testimony on the delineated topic implicates, for example, confidential communications between attorneys and clients which are made for the purpose of giving legal advice, *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981), such documents are privileged and protected from disclosure.

Fifth, Defendants object to Request No. 88 to the extent it seeks information protected from disclosure by the deliberative process privilege. To the extent a request for "all documents" relating to Mr. Wagner's June 13, 2017 testimony on the delineated topic implicates, for example, documents that are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

Sixth, Defendants object to Request No. 88 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for "all documents" relating to Mr. Wagner's June 13, 2017 testimony on the delineated topic implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law

enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo,* No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Finally, Defendants object to Request No. 88 to the extent it seeks documents that can be obtained "from some other source that is more convenient, less burdensome, [and] less expensive" for the parties. Fed. R. Civ. P. 26(b)(2)(C)(i). Transcripts of congressional hearings can be obtained at https://www.govinfo.gov/app/collection/CHRG.

Defendants also object to RFP 88 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, 6-7, and 10; Objections to Definitions Nos. 4-6, and 8-10.

**Response:** In accordance with their objections, Defendants will produce non-privileged documents related to Mr. Wagner's June 13, 2017 testimony on the delineated topic that are not already publicly available.

## Request for Production No. 89

All documents and communications related to your live or written testimony before any Committee or Subcommittee of the U.S. Congress related to noncitizens seeking asylum in the United States at ports of entry along the U.S.-Mexico border, including but not limited to testimony given on December 20, 2018; October 10, 2018; May 15, 2018; May 8, 2018; and/or April 26, 2018.

**Objections:** Defendants object to Request for Production No. 89 as seeking information outside the scope of Rule 34, as not proportionate to the needs of the case, as overly broad and unduly burdensome, and as seeking information protected from disclosure by the attorney work-product doctrine, the attorney-client privilege, the deliberative process privilege, the law enforcement privilege and/or as law enforcement sensitive, and as seeking documents that can be obtained "from some other source that is more convenient, less burdensome, [and] less expensive" for the parties. Fed. R. Civ. P. 26(b)(2)(C)(i). First, Defendants object to Request for Production No. 89 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communication(s)" to include "the

exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communication(s)" to include only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

Second, a request for "all documents" relating to testimony given on the delineated topics is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definitions, a complete response would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A—C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of

APPENDIX B

this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome"). Based on these objections, and its Objection to Definitions No. 9, Defendants understand and construe this Request as limited to testimony given on those five dates.

Third, Defendants object to Request for Production No. 89 to the extent it seeks information protected from disclosure by the attorney work-product doctrine. To the extent a request for "all documents" relating to live or written testimony before a congressional committee or subcommittee on the delineated topics implicates, for example, "documents and tangible things prepared by a party or his representative in anticipation of litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.,* 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman v. Taylor,* 329 U.S. 495 (1947), including "documents or the compilation of materials prepared by agents of the attorney in preparation for litigation," *United States v. Richey,* 632 F.3d 559, 567 (9th Cir. 2011) (citing *United States v. Nobles,* 422 U.S. 225, 238 (1975)), such as, for example, notes and emails of Defendants' attorneys and staff, and draft and final internal documents, such documents are protected from disclosure by the attorney work-product doctrine.

Fourth, Defendants object to Request for Production No. 89 to the extent it seeks information protected by the attorney-client privilege. To the extent a request for "all documents" relating to live or written testimony before a congressional committee or subcommittee on the delineated topics implicates, for example, confidential communications between attorneys and clients which are made for the purpose of giving legal advice, *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981), such documents are privileged and protected from disclosure.

Fifth, Defendants object to Request No. 89 to the extent it seeks information

APPENDIX B

144

protected from disclosure by the deliberative process privilege. To the extent a request for "all documents" relating to live or written testimony before a congressional committee or subcommittee on the delineated topics implicates, for example, documents that are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

Sixth, Defendants object to Request No. 89 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for "all documents" relating to live or written testimony before a congressional committee or subcommittee on the delineated topics implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo,* No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Finally, Defendants object to Request No. 89 to the extent it seeks documents that can be obtained "from some other source that is more convenient, less burdensome, [and] less expensive" for the parties. Fed. R. Civ. P. 26(b)(2)(C)(i). Transcripts of congressional hearings can be obtained at https://www.govinfo.gov/app/collection/CHRG.

Defendants also object to RFP 89 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, and 6-10; Objections to Definitions Nos. 1, 4-6, 9, and 810;

APPENDIX B

1    and, Objections to Instructions Nos. 1, 2, and 4.

2        **Response:** In accordance with their objections, Defendants respond as

3    follows: Based on subsequent representations of Plaintiffs' counsel, Defendants now

4    understand this request as seeking testimony by former Secretary Nielsen.

5    Defendants will conduct a reasonable search and produce non-privileged documents,

6    if any exist, related to testimony on the delineated topics on the specified dates.

7    **Request for Production No. 91**

8    All documents and communications related to Secretary Nielsen's statements in her

9    May 15, 2018 Fox News interview concerning noncitizens seeking asylum in the

10   United States at ports of entry along the U.S.-Mexico border, including but not

11   limited to the factual basis for her statement that "We are 'metering,' which means

12   that if we don't have the resources to let them in on a particular day, they are going

13   to have to come back."

14       **Objections:** Defendants object to Request for Production No. 91 as seeking

15   information that is outside the scope of Rule 34, as overly broad and unduly

16   burdensome, as not proportional to the needs of the case, and as seeking information

17   protected from disclosure by the attorney-client privilege, the attorney work-product

18   doctrine, the deliberative process privilege, and the law enforcement privilege and/or

19   as law enforcement sensitive. First, Defendants object to Request for Production No.

20   91 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs,

21   Definition E (defining "communications" to include "the exchange of information

22   by or through any mode or medium including, but not limited to, spoken word,

23   written correspondence, any form of technology, face-to-face meetings or conveying

24   of information through third person(s) to some other intended recipient"). Federal

25   Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce

26   "documents," "electronically stored information," or "designated tangible things."

27   Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things.

28   Defendants accordingly construe the term "communications" to include only those

APPENDIX B

items permitted by Rule 34 as stated in Objections to Definitions No. 4.

Second, a request to produce "all documents" relating to all of former Secretary Nielsen's statements in her May 15, 2018 Fox News interview is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definitions, a complete response would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A—C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Third, Defendants object to Request for Production No. 91 to the extent it seeks information protected from disclosure by the attorney work-product doctrine.

APPENDIX B

1    To the extent a request for "all documents" relating to all of former Secretary
2    Nielsen's statements in her May 15, 2018 Fox News interview implicates, for
3    example, "documents and tangible things prepared by a party or his representative
4    in anticipation of litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.,* 881 F.2d 1486, 1494
5    (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman v. Taylor,* 329 U.S.
6    495 (1947), including "documents or the compilation of materials prepared by agents
7    of the attorney in preparation for litigation," *United States v. Richey,* 632 F.3d 559,
8    567 (9th Cir. 2011) (citing *United States v. Nobles,* 422 U.S. 225, 238 (1975)), such
9    as, for example, notes and emails of Defendants' attorneys and staff, and draft and
10   final internal documents, such documents are protected from disclosure by the
11   attorney work-product doctrine.

12   Fourth, Defendants object to Request for Production No. 91 to the extent it
13   seeks information protected by the attorney-client privilege. To the extent a request
14   for "all documents" relating to all of former Secretary Nielsen's statements in her
15   May 15, 2018 Fox News interview implicates, for example, confidential
16   communications between attorneys and clients which are made for the purpose of
17   giving legal advice, *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981), such
18   documents are privileged and protected from disclosure.

19   Fifth, Defendants object to Request No. 91 to the extent it seeks information
20   protected from disclosure by the deliberative process privilege. To the extent a
21   request for "all documents" relating to all of former Secretary Nielsen's statements
22   in her May 15, 2018 Fox News interview implicates, for example, documents that
23   are predecisional and deliberative, thereby containing opinions, recommendations,
24   or advice, *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975), including, but
25   not limited to, "recommendations, draft documents, proposals, suggestions, and
26   other subjective documents which reflect the personal opinions of the writer rather
27   than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F.
28   Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such

APPENDIX B

1  documents are privileged and protected from disclosure.

2      Finally, Defendants object to Request No. 91 to the extent it seeks information

3  protected from disclosure by the law enforcement privilege and/or as law

4  enforcement sensitive. To the extent a request for "all documents" relating to all of

5  former Secretary Nielsen's statements in her May 15, 2018 Fox News interview

6  implicates, for example, "law enforcement techniques and procedures," the

7  "confidentiality of sources," the "protect[ion of] witnesses and law enforcement

8  personnel," "safeguard[ing] the privacy of individuals involved in an investigation,"

9  and/or the "prevent[ion of] interference with an investigation," such information is

10  subject to the law enforcement privilege and protected from disclosure. *Deocampo*

11  *v. City of Vallejo,* No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

12      Defendants also object to RFP 91 in accordance with Objections Which Apply

13  to All RFPs Nos. 1,, 3-4, and 6-10; Objections to Definitions Nos. 4-6, and 8-10; and

14  Objections to Instructions Nos. 1, 2, and 4.

15      Accordingly, Defendants understand and construe Request for Production No.

16  91 as seeking documents relating to former Secretary Nielsen's statement in her May

17  15, 2018 Fox News interview that "We are 'metering,' which means that if we don't

18  have the resources to let them in on a particular day, they are going to have to come

19  back," as it applies to the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.

20  **Response:** In accordance with their objections, Defendants will limit their

21  search to a limited number of custodial and non-custodial sources. Defendants will

22  continue to confer with Plaintiffs in identifying reasonable custodial and non-

23  custodial sources and document identification protocols, and will produce or log

24  documents responsive to this understanding and construction of Request for

25  Production No. 91 after the parties agree on such sources and protocols. However,

26  in the event the parties cannot agree, Defendants will limit their search to the sources

27  identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report

28  (ECF No. 243), from which Defendants will produce or log documents responsive

APPENDIX B

149

to this Request, dating from January 1, 2016, to the present, that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

**Request for Production No. 92**

All documents and communications related to the formal or informal use of waitlists, including waitlists managed, operated or overseen by third parties, to regulate the entry of noncitizens seeking asylum at ports of entry on the U.S.-Mexico border.

**Objections:** Defendants object to Request for Production 92 as seeking information outside the scope of Rule 34, as not proportionate to the needs of the case, as overly broad and unduly burdensome, and as seeking information protected from disclosure by the attorney work-product doctrine, the attorney-client privilege, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive. First, Defendants object to Request for Production No. 92 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communications" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communications" to include only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

Defendants also object to Request No. 92 as requesting information relating

APPENDIX B

150

to "waitlists managed, operated or overseen by *third parties."* The standard for possession, custody, or control is the legal right to obtain documents. *See 7-UP Bottling Co. v. Archer Daniels Midland Co. (In re Citric Acid Litig.),* 191 F.3d 1090, 1107 (9th Cir. 1999). "Actual control is required, not merely theoretical control based on an 'inherent relationship.'" *Solis v. Tomco Auto Products, Inc.,* No. 12-cv-618, 2012 WL 12878752, at *1 (C.D. Cal. Sept. 20, 2012) (quoting *United States v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO,* 870 F.2d 1450, 1453-54 (9th Cir. 1989)). Defendants are under the obligation to produce relevant, non-privileged information, to the extent that it exists, only if individuals, operating in their official governmental capacity, have responsive, non-privileged information that is under the possession, custody, or control of the named Defendants or that the named Defendants have the legal right to obtain on demand. *Id.*

Third, Defendants object to the Request as irrelevant, overbroad, and not proportional to the needs of the case because because it seeks documents and information about actions taken in Mexico over which Defendants have no control.

Fourth, a request to produce "all documents" relating to "the formal or informal use of waitlists, including waitlists managed, operated, or overseen by third parties, to regulate the entry of noncitizens seeking asylum at ports of entry on the U.S.-Mexico border" is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definitions, a complete response would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its

APPENDIX B

headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A—C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome"). Moreover, Request No. 92 is not proportionate to the needs of the case and is overly broad and unduly burdensome because it is not limited to the four ports of entry at issue. Consistent with Objections Which Apply to All RFPs Nos. 1 and 6, Defendants construe this Request as seeking documents relating to the four ports of entry at issue. Consistent with Objections Which Apply to All RFPs Nos. 3 and 4, Defendants understand and construe the phrase "noncitizens seeking asylum" as "aliens without travel documents."

Fifth, Defendants object to Request for Production No. 92 to the extent it seeks information protected from disclosure by the attorney work-product doctrine. To the extent a request for "all documents" relating to the formal or informal use of waitlists to regulate the entry of aliens without travel documents at the San Ysidro, Otay Mesa, Hidalgo, or Laredo ports of entry implicates, for example, "documents and tangible things prepared by a party or his representative in anticipation of litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.,* 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman v. Taylor,* 329 U.S. 495 (1947), including "documents or the compilation of materials prepared by agents of the attorney in

preparation for litigation," *United States v. Richey,* 632 F.3d 559, 567 (9th Cir. 2011) (citing *United States v. Nobles,* 422 U.S. 225, 238 (1975)), such as, for example, notes and emails of Defendants' attorneys and staff, and draft and final internal documents, such documents are protected from disclosure by the attorney work-product doctrine.

Sixth, Defendants object to Request for Production No. 92 to the extent it seeks information protected by the attorney-client privilege. To the extent a request for "all documents" relating to the formal or informal use of waitlists to regulate the entry of aliens without travel documents at the San Ysidro, Otay Mesa, Hidalgo, or Laredo ports of entry implicates, for example, confidential communications between attorneys and clients which are made for the purpose of giving legal advice, *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981), such documents are privileged and protected from disclosure.

Seventh, Defendants object to Request No. 92 to the extent it seeks information protected from disclosure by the deliberative process privilege. To the extent a request for "all documents" relating to the formal or informal use of waitlists to regulate the entry of aliens without travel documents at the San Ysidro, Otay Mesa, Hidalgo, or Laredo ports of entry implicates, for example, documents that are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

Finally, Defendants object to Request No. 92 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for "all documents" relating to the

APPENDIX B

153

1  formal or informal use of waitlists to regulate the entry of aliens without travel
2  documents at the San Ysidro, Otay Mesa, Hidalgo, or Laredo ports of entry
3  implicates, for example, "law enforcement techniques and procedures," the
4  "confidentiality of sources," the "protect[ion of] witnesses and law enforcement
5  personnel," "safeguard[ing] the privacy of individuals involved in an investigation,"
6  and/or the "prevent[ion of] interference with an investigation," such information is
7  subject to the law enforcement privilege and protected from disclosure. *Deocampo*
8  *v. City of Vallejo,* No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

9      Defendants also object to RFP 92 in accordance with Objections Which Apply
10  to All RFPs Nos. 1, 3-4, 6-10; and Objections to Definitions Nos. 4-6, and 8-10; and
11  Objections to Instructions Nos. 1, 2, and 4.

12      **Response:** In accordance with their objections, Defendants understand and
13  construe Request for Production No. 92 as seeking documents relating to the formal
14  or informal use of waitlists to regulate the entry of aliens without travel documents
15  at the San Ysidro, Otay Mesa, Hidalgo, or Laredo ports of entry. Defendants will
16  limit their search to a limited number of custodial and non-custodial sources.
17  Defendants will continue to confer with Plaintiffs in identifying reasonable custodial
18  and non-custodial sources and document identification protocols, and will produce
19  or log documents responsive to this understanding and construction of Request for
20  Production No. 92 after the parties agree on such sources and protocols. However,
21  in the event the parties cannot agree, Defendants will limit their search to the sources
22  identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report
23  (ECF No. 243), from which Defendants will produce or log documents responsive
24  to this Request, dating from January 1, 2016, to the present, that can be located after
25  a reasonable search. Documents created on or after July 12, 2017, the date of
26  Plaintiffs' original complaint (ECF No. 1), representing either communications with
27  counsel or communications or documents relating to the actual conduct of litigation
28  post-complaint—and thus clearly protected by either the attorney-client privilege or

APPENDIX B

1   the work-product doctrine—will be treated as non-responsive and therefore will not

2   appear on any privilege log.

3   **Request for Production No. 94**

4   All documents comparing or contrasting by port of entry or region the

5   implementation of any formal or informal policy, practice, or effort to cap, limit, or

6   meter the number of noncitizens seeking asylum in the United States that are

7   processed at a particular port of entry along the U.S.-Mexico border, including but

8   not limited to the practices or conduct used to implement such formal or informal

9   policy, practice, or effort.

10       **Objections:** Defendants object to Request for Production No. 94 as not

11   proportionate to the needs of the case, as overly broad and unduly burdensome, and

12   as seeking information protected from disclosure by the attorney work-product

13   doctrine, the attorney-client privilege, the deliberative process privilege, and the law

14   enforcement privilege and/or as law enforcement sensitive. First, Request No. 94 is

15   not proportionate to the needs of the case and is overly broad and unduly burdensome

16   because it is not limited to the four ports of entry at issue. Consistent with Objections

17   Applying to all Requests Nos. 1 and 6, Defendants construe this Request as seeking

18   documents relating to the four ports of entry at issue.

19       Second, Defendants object to Request No. 94 to the extent it seeks information

20   protected from disclosure by the attorney work-product doctrine, as explained in

21   Defendants' General Objection No. **Error! Reference source not found..** To the

22   extent a request for "all documents comparing or contrasting by port of entry or

23   region the implementation of any formal or informal policy, practice, or effort to

24   cap, limit, or meter" the number of aliens without travel documents who may apply

25   for admission at a port of entry at a given time implicates, for example, "documents

26   and tangible things prepared by a party or his representative in anticipation of

27   litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.,* 881 F.2d 1486, 1494 (9th Cir. 1989)

28   (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman v. Taylor,* 329 U.S. 495 (1947),

APPENDIX B

1   including "documents or the compilation of materials prepared by agents of the

2   attorney in preparation for litigation," *United States v. Richey,* 632 F.3d 559, 567

3   (9th Cir. 2011) (citing *United States v. Nobles,* 422 U.S. 225, 238 (1975)), such as,

4   for example, notes and emails of Defendants' attorneys and staff, and draft and final

5   internal documents, such documents are protected from disclosure by the attorney

6   work-product doctrine.

7       Third, Defendants object to Request for Production No. 94 to the extent it

8   seeks information protected by the attorney-client privilege. To the extent a request

9   for "all documents comparing or contrasting by port of entry or region the

10  implementation of any formal or informal policy, practice, or effort to cap, limit, or

11  meter" the number of aliens without travel documents who may apply for admission

12  at a port of entry at a given time implicates, for example, confidential

13  communications between attorneys and clients which are made for the purpose of

14  giving legal advice, *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981), such

15  documents are privileged and protected from disclosure.

16      Fourth, Defendants object to Request No. 94 to the extent it seeks information

17  protected from disclosure by the deliberative process privilege. To the extent a

18  request for "all documents comparing or contrasting by port of entry or region the

19  implementation of any formal or informal policy, practice, or effort to cap, limit, or

20  meter" the number of aliens without travel documents who may apply for admission

21  at a port of entry at a given time implicates, for example, documents that are

22  predecisional and deliberative, thereby containing opinions, recommendations, or

23  advice, *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975), including, but not

24  limited to, "recommendations, draft documents, proposals, suggestions, and other

25  subjective documents which reflect the personal opinions of the writer rather than

26  the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d

27  221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents

28  are privileged and protected from disclosure.

APPENDIX B

Finally, Defendants object to Request No. 94 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for "all documents comparing or contrasting by port of entry or region the implementation of any formal or informal policy, practice, or effort to cap, limit, or meter" the number of aliens without travel documents who may apply for admission at a port of entry at a given time implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants also object to RFP 94 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, and 6-10; Objections to Definitions Nos. 5-6, and 9-10; and Objections to Instructions Nos. 1, 2, and 4.

Accordingly, Defendants understand and construe Request for Production No. 94 as seeking non-privileged documents relating to "metering" at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.

**Response:** Subject to and without waiving their objections, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present, that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with

1    counsel or communications or documents relating to the actual conduct of litigation

2    post-complaint—and thus clearly protected by either the attorney-client privilege or

3    the work-product doctrine—will be treated as non-responsive and therefore will not

4    appear on any privilege log.

5    **Request for Production No. 95**

6    Documents sufficient to show, by port of entry or region, the time periods during

7    which any formal or informal policy, practice, or effort to cap, limit, or meter the

8    number of noncitizens seeking asylum in the United States who are inspected and/or

9    processed at a port of entry along the U.S.-Mexico border was in place.

10    **Objections:** Defendants object to Request for Production No. 95 as not

11    proportionate to the needs of the case, as overly broad and unduly burdensome, and

12    as seeking information protected from disclosure by the attorney work-product

13    doctrine, the attorney-client privilege, the deliberative process privilege, and the law

14    enforcement privilege and/or as law enforcement sensitive. First, Request No. 95 is

15    not proportionate to the needs of the case and is overly broad and unduly burdensome

16    because it is not limited to the four ports of entry at issue. Consistent with Objections

17    Which Apply to All RFPs Nos. 1 and 6, Defendants construe this Request as seeking

18    documents relating to the four ports of entry at issue.

19    Second, Defendants object to Request No. 95 to the extent it seeks information

20    protected from disclosure by the attorney work-product doctrine. To the extent a

21    request for "documents sufficient to show, by port of entry or region, the time

22    periods during which any formal or informal policy, practice, or effort to cap, limit,

23    or meter the number of noncitizens seeking asylum in the United States who are

24    inspected and/or processed at a port of entry along the U.S.-Mexico border was in

25    place" implicates, for example, "documents and tangible things prepared by a party

26    or his representative in anticipation of litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.,*

27    881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman*

28    *v. Taylor,* 329 U.S. 495 (1947), including "documents or the compilation of

APPENDIX B

158

materials prepared by agents of the attorney in preparation for litigation," *United States v. Richey,* 632 F.3d 559, 567 (9th Cir. 2011) (citing *United States v. Nobles,* 422 U.S. 225, 238 (1975)), such as, for example, notes and emails of Defendants' attorneys and staff, and draft and final internal documents, such documents are protected from disclosure by the attorney work-product doctrine.

Third, Defendants object to Request for Production No. 94 to the extent it seeks information protected by the attorney-client privilege. To the extent a request for "documents sufficient to show, by port of entry or region, the time periods during which any formal or informal policy, practice, or effort to cap, limit, or meter the number of noncitizens seeking asylum in the United States who are inspected and/or processed at a port of entry along the U.S.-Mexico border was in place" implicates, for example, confidential communications between attorneys and clients which are made for the purpose of giving legal advice, *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981), such documents are privileged and protected from disclosure.

Fourth, Defendants object to Request No. 94 to the extent it seeks information protected from disclosure by the deliberative process privilege. To the extent a request for "documents sufficient to show, by port of entry or region, the time periods during which any formal or informal policy, practice, or effort to cap, limit, or meter the number of noncitizens seeking asylum in the United States who are inspected and/or processed at a port of entry along the U.S.-Mexico border was in place" implicates, for example, documents that are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

APPENDIX B

159

Finally, Defendants object to Request No. 94 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for "documents sufficient to show, by port of entry or region, the time periods during which any formal or informal policy, practice, or effort to cap, limit, or meter the number of noncitizens seeking asylum in the United States who are inspected and/or processed at a port of entry along the U.S.-Mexico border was in place" implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo,* No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants also object to RFP 95 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, and 6-10; Objections to Definitions Nos. 5 and 10; and Objections to Instructions Nos. 1, 2, and 4.

Accordingly, Defendants understand and construe Request for Production No. 95 as seeking non-privileged documents relating to "metering" at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.

**Response:** Subject to and without waiving their objections, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present, that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of

APPENDIX B

1   Plaintiffs' original complaint (ECF No. 1), representing either communications with

2   counsel or communications or documents relating to the actual conduct of litigation

3   post-complaint—and thus clearly protected by either the attorney-client privilege or

4   the work-product doctrine—will be treated as non-responsive and therefore will not

5   appear on any privilege log.

6   **Request for Production No. 96**

7   To the extent that you claim that any formal or informal policy, practice, or effort to

8   cap, limit, or meter the number of noncitizens seeking asylum in the United States

9   who are processed at a port of entry along the U.S.-Mexico border was not

10  implemented across the entire U.S.-Mexico border or was not implemented at every

11  port of entry, all documents supporting the factual basis for that claim.

12  **Objections:** Defendants object to Request for Production No. 96 as not

13  proportionate to the needs of the case and as seeking information protected from

14  disclosure by any legal privileges or protections, including, but not limited to, the

15  attorney-client privilege, the attorney work-product doctrine, the deliberative

16  process privilege, and the law enforcement privilege and/or as law enforcement

17  sensitive. Defendants object to Request No. 96 because Plaintiffs do not define the

18  terms "policy, practice, or effort," and it is unclear how those terms are distinct or

19  differ from one another.

20  Defendants further object to this Request, in accordance with Objections

21  Which Apply to All RFPs No. 6, as seeking information and documents about ports

22  of entry that are not relevant to the claims and defenses in this case.

23  Defendants object to this Request as premature to the extent Defendants have

24  not yet made any formal "claim" or argument in this case that any formal or informal

25  policy, practice, or effort to cap, limit, or meter the number of noncitizens seeking

26  asylum in the United States who are processed at a port of entry along the U.S.-

27  Mexico border was not implemented across the entire U.S.-Mexico border or was

28  not implemented at every port of entry.

APPENDIX B

1       Defendants also object to RFP 96 in accordance with Objections Which Apply

2   to All RFPs Nos. 1, 3-4, and 6-10; Objections to Definitions Nos. 1, 5-6, and 10; and

3   Objections to Instructions Nos. 1, 2, and 4.

4       **Response:** Subject to and without waiving the foregoing objections,

5   Defendants respond as follows: Defendants will limit their search to a limited

6   number of custodial and non-custodial sources. Defendants will continue to confer

7   with Plaintiffs in identifying reasonable custodial and non-custodial sources and

8   document identification protocols. However, in the event the parties cannot agree,

9   Defendants will limit their search to the sources identified in Defendants' portion of

10  the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which

11  Defendants will produce or log documents responsive to this Request, dating from

12  January 1, 2016, to the present, that can be located after a reasonable search.

13  Documents created on or after July 12, 2017, the date of Plaintiffs' original

14  complaint (ECF No. 1), representing either communications with counsel or

15  communications or documents relating to the actual conduct of litigation post-

16  complaint—and thus clearly protected by either the attorney-client privilege or the

17  work-product doctrine—will be treated as non-responsive and therefore will not

18  appear on any privilege log.

19  **<u>Request for Production No. 97</u>**

20  To the extent that you claim that questions of fact are not common to the class

21  alleged in Plaintiffs' second amended complaint, all documents that support the

22  factual basis for your contention.

23      **Objections:** Defendants object to Request for Production No. 97 as

24  premature, as seeking documents and communications protected by the work

25  product doctrine, attorney-client privilege, the deliberative process privilege, and the

26  law enforcement privilege, and as outside the proper scope of discovery.

27      This request is outside the proper scope of discovery under Rule 26(b) because

28  it does not purport to seek documents based on their factual nature or on their

relevance to claims and defenses to this case. Instead, it improperly seeks to ascertain or limit Defendants' arguments in opposition to class certification and to prematurely reveal work product through a Request for Production of Documents.

Relatedly, Defendants object to the extent the Request seeks prior disclosure of documents, such as declarations, that do not already exist but would be created for purposes of opposition to class certification, which similarly impinges on work product protection.

Defendants object to this Request to the extent it seeks documents that are already in Plaintiffs' possession.

To the extent this Request seeks information about policies, practices, and instructions, it is duplicative of numerous requests, including Requests Nos. 1, 2, 6, 40-44, and 84. Defendants incorporate their objections and responses to those Requests hereto.

Defendants further object to this Request in accordance with Objections Which Apply to All RFPs Nos. 1, and 6-10; Objections to Definitions Nos. 1, 5-6 and 10; and Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with their objections, Defendants will not be providing documents specifically in response to this Request.. .

## Request for Production No. 98

To the extent that you claim that Plaintiffs' proposed class alleged in the second amended complaint is not sufficiently numerous to be certified, all documents that support your contention.

**Objections:** Defendants object to Request for Production No. 98 as premature, as seeking documents and communications protected by the work product doctrine, attorney-client privilege, the deliberative process privilege, and the law enforcement privilege, and as outside the proper scope of discovery.

This Request is outside the proper scope of discovery under Rule 26(b) because it does not purport to seek documents based on their factual nature or on

their relevance to claims and defenses to this case. Instead, it improperly seeks to ascertain or limit Defendants' arguments in opposition to class certification and to prematurely reveal work product through a Request for Production of Documents.

Relatedly, Defendants object to the extent this Request seeks prior disclosure of documents, such as declarations, that do not already exist but would be created for purposes of opposition to class certification, which similarly impinges on work product protection.

Defendants object to this Request to the extent it seeks documents that are already in Plaintiffs' possession.

To the extent this Request seeks information about statistics and data, it is duplicative of numerous requests, including Requests Nos. 9-12 and 75-81. Defendants incorporate their objections and responses to those Requests hereto.

Defendants further object to this Request in accordance with Objections Which Apply to All RFPs Nos. 1, and 6-10; Objections to Definitions Nos. 1, 5-6 and 10; and Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with their objections, Defendants will not be providing documents specifically in response to this Request..

**Request for Production No. 99**

To the extent that you claim that the named class representatives' claims are atypical of the claims of the purported class alleged in the second amended complaint, all documents that support the factual basis for your contention.

**Objections:** Defendants object to Request for Production No. 99 as premature, as seeking documents and communications protected by the work product doctrine, attorney-client privilege, the deliberative process privilege, and the law enforcement privilege, and as outside the proper scope of discovery.

This request is outside the proper scope of discovery under Rule 26(b) because it does not purport to seek documents based on their factual nature or on their relevance to claims and defenses to this case. Instead, it improperly seeks to ascertain

1  or limit Defendants' arguments in opposition to class certification and to
2  prematurely reveal work product through a Request for Production of Documents.

3      Relatedly, Defendants object to the extent the Request seeks prior disclosure
4  of documents, such as declarations, that do not already exist but would be created
5  for purposes of opposition to class certification, which similarly impinges on work
6  product protection.

7      Defendants further object to this Request as unduly burdensome to the extent
8  it seeks documents that are already in Plaintiffs' possession.

9      Defendants further object to this Request in accordance with Objections
10 Which Apply to All RFPs Nos. 1, and 6-10; Objections to Definitions Nos. 1, 5-6
11 and 10; and Objections to Instructions Nos. 1, 2, and 4.

12     **Response:** In accordance with their objections, Defendants will not be
13 providing documents specifically in response to this Request..

14 **Request for Production No. 100**

15 To the extent that you claim that the named class representatives are inadequate
16 representatives of the class alleged in the second amended complaint, all documents
17 that support the factual basis for your contention.

18     **Objections:** Defendants object to Request for Production No. 99 as
19 premature, as seeking documents and communications protected by the work
20 product doctrine, attorney-client privilege, the deliberative process privilege, and the
21 law enforcement privilege, and as outside the proper scope of discovery.

22     This Request is outside the proper scope of discovery under Rule 26(b)
23 because it does not purport to seek documents based on their factual nature or on
24 their relevance to claims and defenses to this case. Instead, it improperly seeks to
25 ascertain or limit Defendants' arguments in opposition to class certification and to
26 prematurely reveal work product through a Request for Production of Documents.

27     Relatedly, Defendants object to extent the Request seeks prior disclosure of
28 documents, such as declarations, that do not already exist but would be created for

purposes of opposition to class certification, which similarly impinges on work product protection.

Defendants further object to this Request as unduly burdensome to the extent it seeks documents that are already in Plaintiffs' possession.

Defendants further object to this Request in accordance with Objections Which Apply to All RFPs Nos. 1 and 6-10; Objections to Definitions Nos. 1, 5-6 and 10; and Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with their objections, Defendants will not be providing documents specifically in response to this Request.

**Request for Production No. 102**

All documents and communications relating to investigations of, research of, or requests for information about Al Otro Lado, Al Otro Lado employees or volunteers, the named Plaintiffs or other asylum seekers on account of their association with Al Otro Lado, or asylum seekers who have materials from Al Otro Lado in their possession.

**Objections:** Defendants object to Request for Production No. 102 as seeking information outside the scope of Rule 34, and as seeking information protected from disclosure by the attorney work-product doctrine, the attorney-client privilege, and the law enforcement privilege and/or as law enforcement sensitive. First, Defendants object to Request for Production No. 102 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communication(s)" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants

APPENDIX B

166

1    accordingly construe the term "communication(s)" to include only those items

2    permitted by Rule 34 as stated in Objections to Definitions No. 4.

3         Second, Defendants object to Request No. 102 to the extent it seeks

4    information protected from disclosure by the attorney work-product doctrine. To the

5    extent a request for "all documents and communications relating to investigations

6    of, research of, or requests for information about Al Otro Lado, Al Otro Lado

7    employees or volunteers, the named Plaintiffs or other asylum seekers on account of

8    their association with Al Otro Lado, or asylum seekers who have materials from Al

9    Otro Lado in their possession" implicates, for example, "documents and tangible

10   things prepared by a party or his representative in anticipation of litigation," *Admiral*

11   *Ins. Co. v. U.S. Dist. Ct.,* 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P.

12   26(b)(3)); *see Hickman v. Taylor,* 329 U.S. 495 (1947), including "documents or the

13   compilation of materials prepared by agents of the attorney in preparation for

14   litigation," *United States v. Richey,* 632 F.3d 559, 567 (9th Cir. 2011) (citing *United*

15   *States v. Nobles,* 422 U.S. 225, 238 (1975)), such as, for example, notes and emails

16   of Defendants' attorneys and staff, and draft and final internal documents, such

17   documents are protected from disclosure by the attorney work-product doctrine.

18        Third, Defendants object to Request for Production No. 102 to the extent it

19   seeks information protected by the attorney-client privilege. To the extent a request

20   for "all documents and communications relating to investigations of, research of, or

21   requests for information about Al Otro Lado, Al Otro Lado employees or volunteers,

22   the named Plaintiffs or other asylum seekers on account of their association with Al

23   Otro Lado, or asylum seekers who have materials from Al Otro Lado in their

24   possession" implicates, for example, confidential communications between

25   attorneys and clients which are made for the purpose of giving legal advice, *Upjohn*

26   *Co. v. United States,* 449 U.S. 383, 389 (1981), such documents are privileged and

27   protected from disclosure.

28        Fourth, Defendants object to Request No. 102 to the extent it seeks

APPENDIX B

167

information protected from disclosure by the deliberative process privilege. To the extent a request for "all documents and communications relating to investigations of, research of, or requests for information about Al Otro Lado, Al Otro Lado employees or volunteers, the named Plaintiffs or other asylum seekers on account of their association with Al Otro Lado, or asylum seekers who have materials from Al Otro Lado in their possession" implicates, for example, documents that are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

Finally, Defendants object to Request No. 102 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for "all documents and communications relating to investigations of, research of, or requests for information about Al Otro Lado, Al Otro Lado employees or volunteers, the named Plaintiffs or other asylum seekers on account of their association with Al Otro Lado, or asylum seekers who have materials from Al Otro Lado in their possession" implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo,* No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants also object to RFP 102 in accordance with Objections Which Apply to All RFPs Nos. 1, 4, and 6-10 and Objections to Definitions Nos. 4-6, 8,

APPENDIX B

168

1    and 10.

2        **Response:** Because of, and without waiving, Defendants' objections,

3    Defendants will not search for, produce, or log any documents responsive to Request

4    for Production No. 102.

5    **Request for Production No. 103**

6    All communications with Guadalupe Correa-Cabrera or any other researcher funded

7    by or retained by you, CBP, or DHS to investigate, research, or request information

8    about Al Otro Lado or employees of Al Otro Lado.

9        **Objections:** Defendants object to Request for Production No. 103 as seeking

10   information outside the scope of Rule 34, as seeking information not relevant to any

11   party's claims or defenses, as not proportionate to the needs of the case, and as overly

12   broad and unduly burdensome. First, Defendants object to Request for Production

13   No. 103 to the extent it seeks oral or non-written communications. *See* Pls.' Second

14   RFPs, Definition E (defining "communication(s)" to include "the exchange of

15   information by or through any mode or medium including, but not limited to, spoken

16   word, written correspondence, any form of technology, face-to-face meetings or

17   conveying of information through third person(s) to some other intended recipient").

18   Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or

19   produce "documents," "electronically stored information," or "designated tangible

20   things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible

21   things. Defendants accordingly construe the term "communication(s)" to include

22   only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

23        Defendants object to Request No. 103 as not relevant to any party's claims or

24   defenses, as Defendants are not immediately aware of the individual mentioned in

25   this Request. Moreover, it would be overly broad and unduly burdensome for

26   Defendants to search the entirety of their records for this individual.

27        Defendants also object to RFP 103 in accordance with Objections Which

28   Apply to All RFPs Nos. 1, 7-10 and Objections to Definitions Nos. 1-4 and 10.

APPENDIX B

1    **Response:** In accordance with their objections, Defendants will not search

2    for, produce, or log any documents responsive to Request for Production No. 103.

3    **Request for Production No. 104**

4    All documents and communications relating to actions taken against Al Otro Lado,

5    Al Otro Lado employees or volunteers, the named plaintiffs or other asylum seekers

6    on account of their association with Al Otro Lado, or asylum seekers who have

7    materials from Al Otro Lado in their possession, including but not limited to seizing

8    or revoking SENTRI cards, denying SENTRI card applications, or placing any sort

9    of alert, flag, or limitation on passports or other travel documents.

10   **Objections:** Defendants object to Request for Production No. 104 as not

11   relevant to any party's claims or defenses. This case challenges Defendants' alleged

12   "engage[ment] in an unlawful, widespread pattern and practice of denying asylum

13   seekers access to the asylum process at POEs on the U.S.-Mexico border through a

14   variety of illegal tactics," and Defendants' alleged "adopt[ion of] a formal policy to

15   restrict access to the asylum process at POEs by mandating that lower-level officials

16   directly or constructively turn back asylum seekers at the border (the "Turnback

17   Policy") contrary to U.S. law." ECF No. 189 ¶¶ 2-3. This case does not raise any

18   challenge to the revocation of any Trusted Traveler Program membership.

19   Defendants also object to Request No. 104 to the extent it seeks information

20   protected from disclosure by the law enforcement privilege and/or as law

21   enforcement sensitive. To the extent this request for documents relating to alleged

22   actions taken by law enforcement implicates, for example, "law enforcement

23   techniques and procedures," the "confidentiality of sources," the "protect[ion of]

24   witnesses and law enforcement personnel," "safeguard[ing] the privacy of

25   individuals involved in an investigation," and/or the "prevent[ion of] interference

26   with an investigation," such information is subject to the law enforcement privilege

27   and protected from disclosure. *Deocampo v. City of Vallejo,* No. 06-cv-1283, 2007

28   WL 1589541, at *5 (E.D. Cal. June 1, 2007).

APPENDIX B

170

1   Defendants also object to RFP 104 in accordance with Objections Which

2   Apply to All RFPs Nos. 1, 4, and 6-10 and Objections to Definitions Nos. 4-6 and

3   8-10.

4   **Response:** In accordance with their objections, Defendants will not search

5   for, produce, or log documents responsive to Request for Production No. 104.

6   **Request for Production No. 105**

7   All documents and communications relating to CBP, DHS, or Mexican authorities

8   detaining employees or representatives of Al Otro Lado at or near the U.S.-Mexico

9   border.

10   **Objections:** Defendants object to Request for Production No. 105 as not

11   relevant to any party's claims or defenses. This case challenges Defendants' alleged

12   "engage[ment] in an unlawful, widespread pattern and practice of denying asylum

13   seekers access to the asylum process at POEs on the U.S.-Mexico border through a

14   variety of illegal tactics," and Defendants' alleged "adopt[ion of] a formal policy to

15   restrict access to the asylum process at POEs by mandating that lower-level officials

16   directly or constructively turn back asylum seekers at the border (the "Turnback

17   Policy") contrary to U.S. law." ECF No. 189 ¶¶ 2-3. This case does not raise any

18   challenge to the detention of any employee or representative of Al Otro Lado at or

19   near the U.S.-Mexico border.

20   Defendants also object to Request No. 105 to the extent it seeks information

21   protected from disclosure by the law enforcement privilege and/or as law

22   enforcement sensitive. To the extent this request for documents relating to alleged

23   actions taken by law enforcement implicates, for example, "law enforcement

24   techniques and procedures," the "confidentiality of sources," the "protect[ion of]

25   witnesses and law enforcement personnel," "safeguard[ing] the privacy of

26   individuals involved in an investigation," and/or the "prevent[ion of] interference

27   with an investigation," such information is subject to the law enforcement privilege

28   and protected from disclosure. *Deocampo v. City of Vallejo,* No. 06-cv-1283, 2007

APPENDIX B

171

1    WL 1589541, at *5 (E.D. Cal. June 1, 2007).

2        Defendants also object to RFP 105 in accordance with Objections Which

3    Apply to All RFPs Nos. 1 and 6-10 and Objections to Definitions Nos. 2--6, 8, and

4    10.

5        **Response:** In accordance with their objections, Defendants will not search

6    for, produce, or log documents responsive to Request for Production No. 105.

7    **Request for Production No. 106**

8    All documents and communications relating to any statements, accusations, or

9    claims made by CBP or DHS employees concerning Al Otro Lado.

10       **Objections:** Defendants object to Request for Production No. 106 as vague

11   and ambiguous, as not proportional to the needs of the case, and as overly broad and

12   unduly burdensome. Request No. 106 is vague and ambiguous because it does not

13   specify the types of statements, accusations, or claims Plaintiffs seek. To the extent

14   Plaintiffs seek all such documents, Request No. 106 is not proportionate to the needs

15   of the case and is plainly overly broad and unduly burdensome. *Cf. Alfaro v. City of*

16   *San Diego,* No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018)

17   (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every

18   employee who might have had a conversation with [the plaintiff]" would be

19   "onerous and over burdensome").

20       Defendants object to Request No. 106 as irrelevant to the claims and defenses

21   in this case, as statements concerning Al Otro Lado do not bear on the issues in this

22   case: whether the named individual Plaintiffs were, at the time of their alleged injury,

23   arriving aliens applying for admission to the United States; whether Defendants have

24   implemented a formal policy or taken final agency action to "restrict access to the

25   asylum process at ports of entry along the U.S.-Mexico border"; and whether such a

26   policy or final agency action, if it exists, and in the form it exists, is unlawful. The

27   "conditions" in Mexican border municipalities do not bear on those issues. *See* Fed.

28   R. Evid. 401.

APPENDIX B

172

Defendants also object to Request No. 106 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent this request for documents relating to alleged actions taken by law enforcement implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo,* No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants also object to RFP 106 in accordance with Objections Which Apply to All RFPs Nos. 1 and 7-10 and Objections to Definitions Nos. 2-3, 5-6, 8, and 10.

**Response:** In accordance with their objections, Defendants will not search for, produce, or log documents responsive to Request for Production No. 106.

## Request for Production No. 107

All documents relating to the conditions faced by noncitizens waiting on the Mexican side of the U.S.-Mexico border to seek asylum in the United States, including but not limited to rampant crime, kidnappings, extortion, and violence by gangs and cartels.

**Objections:** Defendants object to Request for Production No. 107 as seeking information that is not relevant to any party's claims or defenses, as not proportionate to the needs of the case, as overly broad and unduly burdensome, as vague and ambiguous, and as seeking information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. First, any documents relating to the "conditions faced" by the delineated persons while they wait in Mexico do not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United

APPENDIX B

States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. The "conditions" in Mexican border municipalities do not bear on those issues. *See* Fed. R. Evid. 401.

Second, a request to search for and produce "all documents" related to the delineated topics is not proportional to the needs of the case and is overly broad and unduly burdensome. Request No. 107 is not directed to any person and is thus facially overbroad. Even assuming Request No. 107 is directed to the named Defendants, DHS, and CBP (as many of Plaintiffs' other Requests are), a complete response, based on Plaintiffs' definitions, would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A—C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego,* No. 17-cv-46, 2018 WL 4562240, at

APPENDIX B

*3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff'" would be "onerous and over burdensome"). Further, Request No. 107 is not proportionate to the needs of the case and is overly broad and unduly burdensome because it requests all documents relating to the "conditions" of all Mexican border municipalities along the entire U.S.-Mexico border. Consistent with Objections Which Apply to All RFPs Nos. 1 and 6, Defendants construe this Request as seeking documents relating to Mexican border municipalities outside the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.

Second, Defendants object to Request No. 107 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for "all documents" relating to "the conditions faced" by the delineated persons in Mexican border municipalities implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo,* No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants further object to this Request in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, 6-10; Objections to Definitions Nos. 1-3, 5-6 and 8-10; and Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with their objections, Defendants will produce documents responsive to Request for Production No. 107 to the extent any such documents exist and are in their possession, custody or control. In light of Request No. 107 being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their search to a limited number of custodial and non-custodial sources.

APPENDIX B

1  Defendants will continue to confer with Plaintiffs in identifying reasonable custodial
2  and non-custodial sources and document identification protocols. However, in the
3  event the parties cannot agree, Defendants will limit their search to the sources
4  identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report
5  (ECF No. 243), from which Defendants will produce all non-privileged documents
6  responsive to this Request, dating from January 1, 2016, to the present that can be
7  located after a reasonable search.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

APPENDIX B