# EXHIBIT 1

JOSEPH H. HUNT
Assistant Attorney General, Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
GISELA A. WESTWATER (NE 21801)
Assistant Director
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
SAIRAH G. SAEED (IL 6290644)
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorneys
United States Department of Justice
Civil Division
Office of Immigration Litigation – District
Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>Kevin K. McALEENAN,[1] Acting Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*,<br><br>*Defendants* | Case No. 3:17-cv-02366-BAS-KSC<br><br>**DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS** |

---

[1] Acting Secretary McAleenan is automatically substituted for former Secretary Nielsen pursuant to Federal Rule of Civil Procedure 25(d).

Pursuant to Federal Rule of Civil Procedure 33, Defendants, in their official capacities, hereby submit their objections and responses to Plaintiffs' First Set of Interrogatories to All Defendants (Nos. 1–4). Defendants' objections and responses are based on the information known to Defendants at this time and are made without prejudice to assertion of additional objections should Defendants identify additional grounds for objection. Defendants specifically reserve the right to amend, supplement, clarify, revise, or correct any or all of their responses to these Interrogatories. By responding to these Interrogatories, Defendants do not waive, and specifically preserve, their right to assert any and all objections to the admissibility of any documents on any and all grounds, including, but not limited to, competency, relevance, materiality, and privilege. Furthermore, Defendants respond herein without in any manner admitting or implying that Plaintiffs' Interrogatories (or Defendants' responses) are relevant to any party's claim or defense or proportionate to the needs of the case. None of Defendants' responses herein should be construed or understood as an admission or denial of any legal or factual issues, nor an agreement with any of Plaintiffs' characterizations of legal or factual issues.

## GENERAL OBJECTIONS

1. Defendants object to these Interrogatories (and all discovery requests) as facially improper in this APA case. "[I]t is black-letter administrative law that in an APA case, a reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'" *Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013) (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)); *First Nat. Bank & Trust v. Dep't of Treasury*, 63 F.3d 894, 897 (9th Cir. 1995) ("Generally, judicial review of an agency decision is limited to the administrative record." (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). These Interrogatories are proper only to the extent they seek information that is absolutely necessary "to ascertain the contours of the precise policy at issue," *Venetian Casino Resort, L.L.C. v. E.E.O.C.*,

530 F.3d 925, 928 (D.C. Cir. 2008), and only to the extent they seek the information the agency had before it when it made its decision, *Hill Dermaceuticals, Inc.*, 709 F.3d at 47.

Moreover, any Interrogatory that seeks information relating to any DHS or CBP employee's subjective intentions or motivations, including the named Defendants' intentions or motivations, is facially improper. The Supreme Court has long recognized that "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government." *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977). In part for that reason, the Court has "made it abundantly clear" that APA review must focus only on the "contemporaneous explanation of the agency decision" that the agency chooses to rest upon. *Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 549 (1978). "When a party challenges agency action as arbitrary and capricious the reasonableness of the agency's action is judged in accordance with its *stated* reasons." *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 156 F.3d 1279, 1279 (D.C. Cir. 1998) (emphasis added) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S 402 (1971)). Unless intent is an element of a party's claims or defenses—which, in this case, it is not—"the actual subjective motivation of agency decisionmakers is immaterial as a matter of law," *id.* at 1280, and therefore not properly discoverable.

2.      Defendants object to the use of the term "noncitizen," as this term is vague and ambiguous and is not defined by Plaintiffs. Therefore, for the purpose of responding to these Requests, Defendants understand and construe the term "noncitizen" to mean "alien," as defined at 8 U.S.C. § 1101(a)(3). Such construction is reflected in all of Defendants' responses.

3.      Defendants object to the phrase "access the asylum process at a port of entry," as this phrase is vague and ambiguous, is not defined by Plaintiffs, and

DEFS.' RESPONSES TO PLS.' FIRST SET OF
INTERROGATORIES TO ALL DEFENDANTS
(Nos. 1–4), Case No. 3:17-cv-02366-BAS-KSC

potentially can be construed as referring to actions or statements other than those described in 8 U.S.C. §§ 1158 and 1225(b). For purposes of responding to these Interrogatories, Defendants understand and construe this phrase as referring to actions consistent with 8 U.S.C. §§ 1158 and 1225(b). Such construction is reflected in all of Defendants' responses.

4.      Defendants object to each and every Interrogatory to the extent it requests or appears to request information related to all ports of entry along the U.S.-Mexico border as lacking any legal basis, as not proportional to the needs of the case, as overly broad, and as unduly burdensome. "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.' In order to justify a departure from that rule, 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979), and *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 208, 216 (1974)). The class representatives allege that they applied for admission or attempted to apply for admission at only the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry. Thus, even assuming for argument's sake that the Court certifies the broadest possible class the representative parties might be legally permitted to represent, they still cannot challenge actions taken by other ports of entry, because they are not part of a class of such individuals and do not "possess the same interest and suffer the same injury" as those individuals. *Wal-Mart Stores, Inc.*, 564 U.S. at 348–49. The challenges in this action are thus limited to policies issued by the Office of Field Operations and actions that occurred at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry, *see id.*, and any Interrogatories that go beyond the scope of the specific claims and allegations at issue are legally improper.

Further, the burden of searching for, collecting, reviewing, and producing documents related to all ports of entry along the U.S.-Mexico border would be overly

broad, unduly burdensome, and disproportionate to the needs of the case. As Defendants have explained, Plaintiffs allege a border-wide practice, policy, and/or procedure; discovery from the four ports of entry where the named Plaintiffs allegedly encountered such a practice, policy, and/or procedure (or a subset thereof), in addition to discovery from select higher-level officials and centralized non-custodial sources, satisfies the needs of the case, as any evidence of such a border-wide practice, policy, and/or procedure, if it exists, would necessarily be found in such locations. Any discovery from other ports of entry along the U.S.-Mexico border, besides having no legal basis, would thus be duplicative and unduly burdensome. In light of these issues, Defendants therefore understand and construe these Interrogatories as seeking discovery limited to the headquarters portions of Office of Field Operations and the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry. Defendants' responses to each and every Interrogatory will be limited consistent with this general objection.

5.    Defendants object to each and every Interrogatory, whether broadly or narrowly construed, to the extent that it seeks information or documents protected by the attorney work-product doctrine. *See* Pls.' Interrog. Instruction No. 2. The work-product doctrine protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. U.S. Dist. Ct*., 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman v. Taylor*, 329 U.S. 495 (1947). "The work-product doctrine covers documents or the compilation of materials prepared by agents of the attorney in preparation for litigation." *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)). Such documents include, for example, notes and emails of Defendants' attorneys and staff, and draft and final internal documents. Even if these materials were otherwise discoverable pursuant to Federal Rule of Civil Procedure 26(b)(1)—and they are not—these materials are protected from disclosure by the work-product doctrine. Defendants

DEFS.' RESPONSES TO PLS.' FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS
(Nos. 1–4), Case No. 3:17-cv-02366-BAS-KSC

will assert privileges specific to each request in their privilege log, on the production itself, or in their response to a specific Interrogatory. Documents generated after the filing of Plaintiffs' original Complaint (ECF No. 1) in this action representing either communications with counsel or material generated at the direction of counsel—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

6.     Defendants object to each and every Interrogatory, whether broadly or narrowly construed, to the extent it seeks information or documents protected by the attorney-client privilege. The attorney-client privilege protects confidential communications between attorneys and clients which are made for the purpose of giving legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "The attorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citing *Smith v. McCormick*, 914 F.2d 1153, 1159–60 (9th Cir. 1990)). Thus, all communications conducted in the course of the attorney-client relationship and not disclosed or otherwise maintained in a way that is inconsistent with the purpose of the privilege, are protected by the attorney-client privilege. Such communications include, for example, communications between Defendants and Defendants' counsel, including notes, emails, drafts, and internal documents (including but not limited to contracting materials) that were conducted for the purpose of securing legal advice, legal services, or assistance in a legal proceeding following the initiation of this action. Defendants will assert privileges specific to each request in their privilege log, on the production itself, or in their response to a specific Interrogatory. Documents generated after the filing of Plaintiffs' complaint in this action representing either communications with counsel or material generated at the direction of counsel—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as

1    non-responsive and therefore will not appear on any privilege log.

2        7.    Defendants object to each and every Interrogatory, whether broadly or

3    narrowly construed, to the extent it seeks information or documents protected by the

4    deliberative process privilege. This privilege protects internal government

5    deliberations in order to promote the "frank and candid discussion necessary for

6    effective government." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–51

7    (1975). Information protected by this privilege must be (1) predecisional and (2)

8    deliberative, thereby containing opinions, recommendations, or advice. *Id.* at 149.

9    "Examples of documents that qualify as predecisional include recommendations,

10   draft documents, proposals, suggestions, and other subjective documents which

11   reflect the personal opinions of the writer rather than the policy of the agency." *Ctr.*

12   *for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008)

13   (internal quotations and citation omitted)). To the extent that any work product

14   contains recommendations that have not been adopted, or discussions that have not

15   been finalized, the work product is protected by the deliberative process privilege.

16   Documents generated after the filing of Plaintiffs' Complaint in this action

17   representing either communications with counsel or material generated at the

18   direction of counsel—and thus clearly protected by either the attorney-client

19   privilege, the work-product doctrine, or the deliberative process privilege—will be

20   treated as non-responsive and therefore will not appear on any privilege log.

21   Defendants will assert privileges specific to each request in their privilege log, on

22   the production itself, or in her response to the request.

23       8.    Defendants object to each and every Interrogatory to the extent it seeks

24   information or documents protected from disclosure by the law enforcement

25   privilege. The law enforcement privilege is "applicable to the government interest

26   in preserving confidentiality of law enforcement records [and] has various names:

27   (1) the 'official information privilege,' (2) the 'law enforcement privilege,' and (3)

28   a type of 'executive privilege.'" *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007

6

WL 1589541, at *4–5 (E.D. Cal. June 1, 2007) (citing cases); *Hayslett v. City of San Diego*, No. 13-cv-1605, 2014 WL 1154314, at *1–2 (S.D. Cal. Mar. 21, 2014). The privilege, which "has been recognized in the absence of a statutory foundation," is intended "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation," amongst other reasons. *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 63 (1st Cir. 2007) (quoting *In re Dep't of Investigation of City of New York*, 856 F.2d 481, 483 (2d Cir. 1988), *cert. denied*, 552 U.S 1295 (2008)). Defendants will assert this privilege in their privilege log, on the production itself, or in their response to the Interrogatory.

9. Defendants object to each and every Interrogatory to the extent it seeks information or documents protected from disclosure by the investigatory files privilege, self-critical analysis privilege, the *Machin* privilege, *see Machin v. Zuckert*, 316 F.2d 336 (D.C. Cir. 1963), or by any other legal basis precluding disclosure, including the Inspector General Act of 1978, Pub. L. No. 95-452 (Oct. 12, 1978), 5 U.S.C. app. 3. Defendants will assert privileges specific to each request in their privilege log, on the production itself, or in their response to the Interrogatory.

10. Defendants object to producing or providing confidential, sensitive, or personally-identifying information prior to the entry of an order protecting that information from disclosure.

11. Defendants object to each and every Interrogatory to the extent that it seeks information protected from disclosure by statutes, regulations, or directives regarding the protection of privacy, confidential information, or medical information, or under statutes and regulations prohibiting disclosure of information related to individual aliens—including, but not limited to, 8 U.S.C. § 1160(b)(5), (6); 8 U.S.C. § 1186a(c)(4); 8 U.S.C. § 1202(f); 8 U.S.C. § 1254a(c)(6), 8 U.S.C.

§ 1255a(c)(4), (5); 8 U.S.C. § 1304(b); 8 U.S.C. § 1367; 22 U.S.C. § 7105(c)(1)(C); 8 C.F.R. § 208.6; 8 C.F.R. § 210.2(e); 8 C.F.R. § 214.11(p); 8 C.F.R. § 214.14(e); 8 C.F.R. § 216.5(e)(3)(iii); 8 C.F.R. § 236.6; 8 C.F.R. § 244.16; 8 C.F.R. § 245a.2(t); 8 C.F.R. § 245a.3(n); 8 C.F.R. § 245a.21; 8 C.F.R. § 1003.46; or 8 C.F.R. § 1208.6—many of which would subject Defendants and their employees to civil or criminal penalties or other sanctions in the event of unauthorized disclosure. Defendants will not produce this information without an express written waiver from the relevant person authorizing such disclosure, or a court order, as may be permitted in certain circumstances.

12.     Defendants object to these Interrogatories (and the definitions and instructions that accompany them) to the extent they purport to impose obligations greater than those imposed by the Federal Rules of Civil Procedure, the Local Civil Rules of the U.S. District Court for the Southern District of California, or an order of this Court.

## OBJECTIONS TO DEFINITIONS

1.     Defendants object to the definition of "YOU" and "YOUR" as overbroad and invading the attorney/client privilege or the attorney work-product doctrine. Unless otherwise specified, Defendants interpret the definition of YOU or YOUR as referring to the named Defendants in their official capacities, and individual U.S. Department of Homeland Security ("DHS") employees from whom DHS has the legal right to obtain upon demand information relevant to the claims and defenses in this case. Defendants do not interpret the definition of "YOU" or "YOUR" to include DHS or CBP components or subcomponents that are not relevant to this litigation.

2.     Defendants object to the definition of "CBP" as overbroad. This case challenges the alleged actions of CBP's Office of Field Operations at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry along the U.S-Mexico border. Any request for information or documents from any other subcomponent within CBP is

thus overly broad and unduly burdensome. Defendants therefore construe "CBP" to refer to U.S. Customs and Border Protection and, where appropriate in the context, its headquarters and its Office of Field Operations, including any divisions, subdivisions, or sections therein.

3.      Defendants object to the definition of "DHS" as overbroad. This case challenges the alleged actions of CBP's Office of Field Operations at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry along the U.S.-Mexico border. Any request for information or documents from other DHS divisions, subdivisions, components, or sections is thus overly broad and unduly burdensome. Defendants therefore construe "DHS" to refer to the Department of Homeland Security personnel at issue in this case.

4.      Defendants object to the definitions of "IDENTIFY," "IDENTITY," and "IDENTIFIED" to the extent they purport to create an obligation which does not exist under the Federal Rules of Civil Procedure and to the extent they request information that is privileged or otherwise protected from disclosure.

## SPECIFIC OBJECTIONS AND RESPONSES

### Interrogatory No. 1

Identify and describe with as much factual specificity as possible any formal or informal policy, practice, or effort that you followed or undertook or in which you engaged relating to metering or limiting the number of noncitizens that can access the asylum process at a port of entry on the U.S.-Mexico border.

**Objections:** Defendants object to Interrogatory No. 1 as overly broad and unduly burdensome, as vague and ambiguous, and as seeking information protected from disclosure by the attorney-client privilege, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive. First, as described in General Objections No. 1 and No. 4 and incorporated herein, Interrogatory No. 1 is overly broad and unduly burdensome to the extent it purports to relate to any CBP component or subcomponent besides the headquarters portions

DEFS.' RESPONSES TO PLS.' FIRST SET OF
INTERROGATORIES TO ALL DEFENDANTS
(Nos. 1–4), Case No. 3:17-cv-02366-BAS-KSC

of the Office of Field Operations or the San Ysidro, Otay Mesa, Hidalgo, or Laredo ports of entry. Interrogatory No. 1 is also unduly burdensome because it is duplicative of Plaintiffs' Request for Production to All Defendants No. 44. Consistent with those General Objections, Defendants understand and construe Interrogatory No. 1 as relating only to the headquarters portions of the Office of Field Operations and the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.

Second, Interrogatory No. 1 is vague and ambiguous because Plaintiffs do not define the terms "policy," "practice," or "effort," and it is unclear how those terms are distinct or differ from one another. Interrogatory No. 1 is also vague and ambiguous because, as described in General Objection No. 3 and incorporated herein, Plaintiffs not define the phrase "access [to] the asylum process," and it is unclear what actions fall within the scope of that phrase.

Third, Defendants object to Interrogatory No. 1 to the extent it seeks information protected by the attorney-client privilege, as explained in Defendants' General Objection No. 6. To the extent a request to "identify and describe" any "formal or informal policy, practice, or effort" with "as much factual specificity as possible" implicates, for example, confidential communications or advice between attorneys and clients which are made for the purpose of giving legal advice, *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981), such information is privileged and protected from disclosure.

Fourth, Defendants object to Interrogatory No. 1 to the extent it seeks information protected from disclosure by the deliberative process privilege, as explained in Defendants' General Objection No. 7. To the extent a request to "identify and describe" any "formal or informal policy, practice, or effort" with "as much factual specificity as possible" implicates, for example, documents or communications that are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents,

DEFS.' RESPONSES TO PLS.' FIRST SET OF
INTERROGATORIES TO ALL DEFENDANTS
(Nos. 1–4), Case No. 3:17-cv-02366-BAS-KSC

proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents and communications are privileged and protected from disclosure.

Finally, Defendants object to Interrogatory No. 1 to the extent it requests information protected from disclosure by the law enforcement privilege and, until there is a protective order in place, as law enforcement sensitive, as explained in Defendants' General Objection No. 8. To the extent a request to "identify and describe" any "formal or informal policy, practice, or effort" with "as much factual specificity as possible" implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

**Response:** Subject to and without waiving their general and specific objections, Defendants respond as follows: On April 27, 2018, Todd C. Owen, Executive Assistant Commissioner for CBP's Office of Field Operations, issued a memorandum entitled "Metering Guidance." The document is provided with these responses pursuant to Federal Rule of Civil Procedure 33(d) and is labeled CBPALORT000276.

Prior to April 27, 2018, some land ports of entry along the southern border took steps to meter the flow of travel into their facilities. Such queue management procedures were generally undertaken at times when a particular port of entry reached a capacity in which it was no longer safe to permit more individuals to enter the port for processing. These actions were generally implemented in response to an

DEFS.' RESPONSES TO PLS.' FIRST SET OF
INTERROGATORIES TO ALL DEFENDANTS
(Nos. 1–4), Case No. 3:17-cv-02366-BAS-KSC

increased number of individuals presenting at ports of entry without documents sufficient for lawful entry, all of whom must be safely processed and, in general, temporarily held pending their transfer to another agency. As a general matter, the San Ysidro, Otay Mesa, and Laredo ports of entry saw, at times, a high volume of individuals who sought to enter the port without documents sufficient for lawful entry. As a result, some individuals were required to wait in Mexico until it was safe for them to be processed. Each port of entry along the southern border has a unique operating environment and unique resource constraints.

Since January 2016, the practice for the San Ysidro port of entry has been that, generally, aliens who are not in possession of documents sufficient for lawful entry are brought to the limit line at the San Ysidro port of entry by Grupo Beta, the humanitarian arm of Instituto Nacional de Migración ("INAMI"), in accordance with CBP's ability to intake them. Metering practices at San Ysidro prior to April 2018 are also described generally in CBPALORT000103—000106, CBPALORT000112—000136. Given the limited capabilities at Otay Mesa, the general practice has been for aliens without documents sufficient for lawful entry to be directed to arrive at San Ysidro.

Prior to the issuance of the Metering Guidance, during periods in which queue management was in effect at the Laredo port of entry, CBP officers provided individuals with an appointment date and time. Such aliens were also provided with a list of humanitarian resources in Nuevo Laredo. This practice has since ceased. Metering practices in Laredo prior to April 2018 are described generally in BATES CBPALORT00001—000059.

As noted in the April 27, 2018 Metering Guidance, directors of field operations ("DFOs") have discretion to implement procedures to manage the flow of travelers at the land border when necessary and appropriate based on a particular port of entry's processing capacity. Each port of entry's specific queue management procedures may vary based on their unique operating environment and unique

DEFS.' RESPONSES TO PLS.' FIRST SET OF
INTERROGATORIES TO ALL DEFENDANTS
(Nos. 1–4), Case No. 3:17-cv-02366-BAS-KSC

resource constraints. However, as a general matter, queue management procedures are implemented in order to ensure that the port of entry has a sufficient capacity to safely process all individuals and to temporarily hold those found to be inadmissible.

Currently, at the Laredo and Hidalgo ports of entry, officers are placed at the U.S.-Mexico border in the middle of the bridge leading to the port of entry. The officers determine if individuals approaching this point have documents sufficient for lawful entry, and, if they do not, whether there is sufficient capacity in the port to process and temporarily hold these individuals. If there is not sufficient capacity in the port of entry at that time, individuals are informed of that fact, and are instructed that they must wait in Mexico until it is safe for them to enter the port for processing.

Defendants will supplement this response as appropriate.

**Interrogatory No. 2**

Describe with as much factual specificity as possible the reasons why you followed, undertook, or engaged in any formal or informal policy, practice, or effort relating to metering or limiting the number of noncitizens that can access the asylum process at a port of entry on the U.S.-Mexico border.

**Objections:** Defendants object to Interrogatory No. 2 as lacking any legal basis, as seeking information that is not relevant to any party's claims or defenses, as vague and ambiguous, as overly broad and unduly burdensome, as not proportionate to the needs of the case, and as seeking information protected from disclosure by the attorney-client privilege, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive. First, to the extent Interrogatory No. 2 requests anything but Defendants' stated reasons for any final agency action, such a request is facially improper, as explained in General Objection No. 1, and as overly broad and unduly burdensome and not proportionate to the needs of the case.

Second, Interrogatory No. 2 is vague and ambiguous because Plaintiffs do not define the terms "policy," "practice," or "effort," and it is unclear how those terms are distinct from one another. This Interrogatory is also vague and ambiguous because it is unclear whether Plaintiffs are seeking the reasons why a particular agency-wide policy or practice may have been implemented or enacted, or whether they are seeking the reasons why a particular agency component or subcomponent may have taken actions pursuant to or in accordance with such agency-wide policy or practice. Interrogatory No. 2 is also vague and ambiguous because, as described in General Objection No. 3 and incorporated herein, Plaintiffs not define the phrase "access [to] the asylum process," and it is unclear what actions fall within the scope of that phrase.

Third, Defendants object to Interrogatory No. 2 to the extent it seeks information protected by the attorney-client privilege, as explained in Defendants' General Objection No. 6. To the extent a request to describe with "as much factual specificity as possible" "the reasons why [Defendants] followed, undertook, or engaged in any formal or informal policy, practice, or effort" implicates, for example, confidential communications or advice between attorneys and clients which are made for the purpose of giving legal advice, *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981), such information is privileged and protected from disclosure.

Fourth, Defendants object to Interrogatory No. 2 to the extent it seeks information protected from disclosure by the deliberative process privilege, as explained in Defendants' General Objection No. 7. To the extent a request to describe with "as much factual specificity as possible" "the reasons why [Defendants] followed, undertook, or engaged in any formal or informal policy, practice, or effort" implicates, for example, documents or communications that are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975), including, but not

DEFS.' RESPONSES TO PLS.' FIRST SET OF
INTERROGATORIES TO ALL DEFENDANTS
(Nos. 1–4), Case No. 3:17-cv-02366-BAS-KSC

limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents and communications are privileged and protected from disclosure.

Finally, Defendants object to Interrogatory No. 2 to the extent it requests information protected from disclosure by the law enforcement privilege and, until there is a protective order in place, as law enforcement sensitive, as explained in Defendants' General Objection No. 8. To the extent a request to describe with "as much factual specificity as possible" "the reasons why [Defendants] followed, undertook, or engaged in any formal or informal policy, practice, or effort" implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

**Response:** Subject to, and without waiving the foregoing objections, Defendants respond as follows: As noted in the April 27, 2018 Owen Memo, directors of field operations ("DFOs") have discretion to implement procedures to manage the flow of travelers at the land border when necessary and appropriate based on a particular port of entry's processing capacity. In general, each of CBP's ports of entry has a finite capacity in which to accomplish multiple missions, including, for example, national security, counter-narcotics, facilitation of lawful trade, and processing of all travelers. CBP strives to manage its limited space and resources to best ensure safety and security for all travelers and our officers, while facilitating timely processing for U.S. citizens and lawful permanent residents, visitors with appropriate travel documents, and individuals without documents

DEFS.' RESPONSES TO PLS.' FIRST SET OF
INTERROGATORIES TO ALL DEFENDANTS
(Nos. 1–4), Case No. 3:17-cv-02366-BAS-KSC

sufficient for lawful entry. A port of entry's capacity to process inadmissible aliens is based on many different factors, including for instance, available holding space at the port, the overall volume of individuals arriving at the port, the number of employees available to process individuals, other enforcement actions taking place at the port of entry, the complexity of processing various categories of individuals (such as each individual's possession or lack of appropriate travel documents, medical needs, or translation requirements), and the resources of other government agencies to which inadmissible aliens must be transferred. The capacity of a particular port of entry may vary from day to day.

Processing individuals who are not U.S. citizens or lawful permanent residents or who lack a visa or other appropriate travel documents is particularly resource intensive. It may take hours before the necessary sworn statements, consulate checks, and paperwork are complete. These checks are necessary for CBP to verify the identity, age, and any immigration and/or criminal histories of individuals who arrive in the United States without appropriate travel documents. To ensure the safety of all travelers and CBP officers, CBP must ensure that the port of entry has sufficient capacity and resources to process all individuals, as well as temporarily hold those found to be inadmissible. In some cases, the port of entry may reach a capacity where it is no longer safe to permit more individuals to enter. If that occurs, individuals who approach the port of entry without documents sufficient for lawful entry may be directed to wait to be processed until capacity permits.

DFOs may determine, based on particular factual circumstances implementing capacity at any particular port of entry, that it is necessary or appropriate to meter the queue of travelers who lack documents sufficient for lawful entry. The particular reasons that such metering may be implemented at a particular port of entry on a particular day will be determined based on the relevant facts and circumstances at that port on that particular day.

DEFS.' RESPONSES TO PLS.' FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS (Nos. 1–4), Case No. 3:17-cv-02366-BAS-KSC

Defendants will supplement this response as appropriate.

**Interrogatory No. 3**

Identify any and all current or former CBP or DHS employees, agents, or representatives with knowledge of any formal or informal policy, practice, or effort that you followed or undertook or in which you engaged relating to metering or limiting the number of noncitizens that can access the asylum process at a port of entry on the U.S.-Mexico border.

**Objections:** Defendants object to Interrogatory No. 3 as potentially seeking information not relevant to any party's claim or defense, as overly broad and unduly burdensome, and as not proportionate to the needs of the case. First, Interrogatory No. 3 seeks information not relevant to any party's claims or defenses because, by requesting the identities of "any and all current or former CBP or DHS employees, agents, or representatives with knowledge of any formal or informal policy, practice, or effort . . . relating to metering or limiting the number of noncitizens that can access the asylum process at a port of entry on the U.S.-Mexico border," it seeks drastically more information that what is absolutely necessary "to ascertain the contours of the precise policy at issue," *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 530 F.3d 925, 928 (D.C. Cir. 2008), as explained in General Objection No. 1. Moreover, by seeking the identities of individuals with knowledge of any "informal policy, practice, or effort," Plaintiffs seek information not relevant to any party's claims or defenses, since there is no judicial review under the APA of non-final agency actions. Further, Interrogatory No. 3 requests irrelevant information to the extent it seeks the names of persons knowledgeable of Defendants' final agency actions at *all* ports of entry along the U.S.-Mexico border; as explained in General Objection No. 4, Plaintiffs have no legal basis for seeking discovery beyond the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.

Second, Interrogatory No. 3 is overly broad and unduly burdensome and not

proportionate to the needs of the case because, by requesting the identities of "*any and all current or former* CBP or DHS employees, agents, or representatives with knowledge of *any formal or informal policy, practice, or effort . . .* relating to metering or limiting the number of noncitizens that can access the asylum process at a port of entry on the U.S.-Mexico border," it purports to require the identification of, at a minimum, all CBP employees who may have access to the Metering Guidance, or who may have knowledge of metering or queue management practices. Plaintiffs are essentially demanding that Defendants canvass and provide a list of every person who knows something about metering or queue management practices at land border ports of entry along the U.S.-Mexico border since January 2016. CBP employees more than 60,000 employees, any of whom may have had "knowledge" of such practices, and it is plainly overly broad and unduly burdensome for Defendants to canvass and identify all such persons. *See, e.g.*, *Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome"). In light of these objection, Defendants understand and construe Interrogatory No. 3 as requesting the identities of only the most knowledgeable persons on the delineated topics, as limited by Defendants' general and specific objections.

Third, Interrogatory No. 4 is vague and ambiguous because, as described in General Objection No. 3, Plaintiffs do not define the phrase "access [to] the asylum process," and it is unclear what actions fall within the scope of that phrase.

Fourth, Defendants object to Interrogatory No. 4 to the extent it seeks information protected by the attorney-client privilege, the deliberative process privilege, the law enforcement privilege and, until there is a protective order in place, as law enforcement sensitive, as explained in Defendants' General Objections No. 6, No. 7, and No. 8.

DEFS.' RESPONSES TO PLS.' FIRST SET OF
INTERROGATORIES TO ALL DEFENDANTS
(Nos. 1–4), Case No. 3:17-cv-02366-BAS-KSC

Finally, Defendants object to this request to the extent that it is duplicative of their obligations under Rule 26(a) of the Federal Rules of Civil Procedure.

**Response:** Subject to, and without waiving, Defendants' general and specific objections, Defendants respond as follows: The April 2018 Metering Guidance was distributed to the four Field Offices on the U.S.-Mexico border, and was directed to be disseminated to all CBP Officers in those field offices. Other individuals within CBP, both within OFO Headquarters offices and other offices within CBP, further have access to that Guidance. Additionally, Defendants provide the following non-exhaustive list of individuals as Office of Field Operations employees with knowledge of Defendants' metering and/or queue management actions as they relate to the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry:

- **Todd C. Owen**, Executive Assistant Commissioner, Office of Field Operations, U.S. Customs and Border Protection;

- **Randy Howe**, Executive Director, Operations, Office of Field Operations, U.S. Customs and Border Protection;

- **Todd Hoffman**, Executive Director, Admissibility and Passenger Programs, Office of Field Operations, U.S. Customs and Border Protection;

- **James Ryan Hutton**, Assistant Port Director, Area Port of San Francisco Office of Field Operations, U.S. Customs and Border Protection (and former Deputy Executive Director, Admissibility and Passenger Programs, Office of Field Operations, U.S. Customs and Border Protection);

- **Luis Mejia,** Director, Enforcement Programs Division, Admissibility and Passenger Programs, Office of Field Operations, U.S. Customs and Border Protection;

- **Pete Flores**, Director of Field Operations, San Diego Field Office, Office of Field Operations, U.S. Customs and Border Protection;

- **Anne L. Maricich**, Deputy Director of Field Operations, San Diego Field

19

Office, Office of Field Operations, U.S. Customs and Border Protection;

- **Johnny Armijo**, Assistant Director of Field Operations, San Diego Field Office, Office of Field Operations, U.S. Customs and Border Protection;

- **Sidney Aki**, Port Director, San Ysidro Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **Robert W. Hood**, Assistant Port Director, San Ysidro Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **Karen Ah Nee**, Supervisory Customs and Border Protection Officer (Chief), San Ysidro Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **Moises Castillo**, Supervisory Customs and Border Protection Officer (Watch Commander), San Ysidro Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **Mariza Marin**, Supervisory Customs and Border Protection Officer (Watch Commander), San Ysidro Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **David Higgerson**, Director of Field Operations, Laredo Field Office, Office of Field Operations, U.S. Customs and Border Protection;

- **Rodney Harris**, Assistant Director, Laredo Field Office, Office of Field Operations, U.S. Customs and Border Protection;

- **Gregory Alvarez**, Director, Northern Operations Command, Laredo Field Office, Office of Field Operations, U.S. Customs and Border Protection (and former Port Director, Laredo Port of Entry);

- **Carlos Rodriguez**, Acting Director, Southern Operations Command, Laredo Field Office, Office of Field Operations, U.S. Customs and Border Protection;

- **Alberto Flores**, Acting Port Director, Laredo Port of Entry, Office of Field

DEFS.' RESPONSES TO PLS.' FIRST SET OF
INTERROGATORIES TO ALL DEFENDANTS
(Nos. 1–4), Case No. 3:17-cv-02366-BAS-KSC

Operations, U.S. Customs and Border Protection;

- **Sylvia Briones,** Acting Port Director, Hidalgo Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **David John Gonzalez**, Assistant Port Director, Hidalgo Port of Entry, Office of Field Operations, U.S. Customs and Border Protection (and former Acting Port Director, Hidalgo Port of Entry); and

- **Andres Guerra**, Port Director, Roma Port of Entry, Office of Field Operations, U.S. Customs and Border Protection (and former Acting Port Director, Hidalgo Port of Entry).

These persons may be contacted only through Defendants' counsel. Defendants will supplement this list as appropriate.

## Interrogatory No. 4

Identify any and all current or former CBP or DHS employees, agents, or representatives with knowledge of the reasons why you engaged in metering or limiting the number of noncitizens that can access the asylum process at a port of entry on the U.S.-Mexico border.

**Objections:** Defendants object to Interrogatory No. 4 as lacking any legal basis, as seeking information that is not relevant to any party's claims or defenses, as overly broad and unduly burdensome, as not proportionate to the needs of the case, as vague and ambiguous, and as seeking information protected from disclosure by the attorney-client privilege, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive. First, to the extent Interrogatory No. 4 requests the identities of persons with potential knowledge of anything but Defendants' stated reasons for any final agency action, such a request is facially improper, as explained in General Objection No. 1.

Second, Interrogatory No. 4 is overly broad and unduly burdensome and not proportionate to the needs of the case because, by requesting the identities of "any

21

1   and all current or former CBP or DHS employees, agents, or representatives with

2   knowledge of the reasons why you engaged in" the delineated topics, it purports to

3   require the identification of all CBP employees with knowledge of the reasons for

4   which a particular port of entry may have elected to meter the queue of travelers.

5   Additionally, the Interrogatory purports to require the identification of all CBP

6   employees who may have knowledge of the general reasons for which the April 2018

7   Metering Guidance was issued.  Plaintiffs are therefore essentially demanding that

8   Defendants canvass and provide a list of virtually every person who knows

9   something about metering or queue management practices at land border ports of

10  entry along the U.S.-Mexico border since January 2016. CBP employs more than

11  60,000 employees, any of whom may have had knowledge of such practices, and it

12  is plainly overly broad and unduly burdensome for Defendants to canvas and identify

13  all such persons. *See, e.g.*, *Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL

14  4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an

15  interrogatory that obligates a party to "canvas every employee who might have had

16  a conversation with [the plaintiff]" would be "onerous and over burdensome").

17       Third, Interrogatory No. 4 is vague and ambiguous because, as described in

18  General Objection No. 3, Plaintiffs not define the phrase "access [to] the asylum

19  process," and it is unclear what actions fall within the scope of that phrase. This

20  Interrogatory is also vague and ambiguous because it does not describe whether it

21  seeks individuals with knowledge of the reasons for a particular policy or practice,

22  to the extent it exists, or individuals with knowledge of the reasons for actions taken

23  with respect to such policy or practice.

24       Fourth, Defendants object to Interrogatory No. 4 to the extent it seeks

25  information protected by the attorney-client privilege, the deliberative process

26  privilege, the law enforcement privilege and, until there is a protective order in place,

27  as law enforcement sensitive, as explained in Defendants' General Objections No.

28  6, No. 7, and No. 8.

Finally, Defendants also object to this request to the extent that it is duplicative of their obligations under Rule 26(a) of the Federal Rules of Civil Procedure.

**Response:** Subject to, and without waiving, Defendants' general and specific objections, Defendants respond as follows: Officials at OFO HQ, as well as many other CBP employees both at headquarters and across the agency, have knowledge of the fact that it may be necessary or appropriate for DFOs to elect to implement queue management procedures to ensure that the ports of entry operate at a safe processing capacity.

Defendants also identify the following non-exhaustive list of individuals as Office of Field Operations employees with knowledge of Defendants' stated reasons for metering and/or queue management actions as they relate to the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry:

- **Todd C. Owen**, Executive Assistant Commissioner, Office of Field Operations, U.S. Customs and Border Protection;
- **Randy Howe**, Executive Director, Operations, Office of Field Operations, U.S. Customs and Border Protection;
- **Todd Hoffman**, Executive Director, Admissibility and Passenger Programs, Office of Field Operations, U.S. Customs and Border Protection;
- **James Ryan Hutton**, Assistant Port Director, Area Port of San Francisco, Office of Field Operations, U.S. Customs and Border Protection (and former Deputy Executive Director, Admissibility and Passenger Programs, Office of Field Operations, U.S. Customs and Border Protection);
- **Luis Mejia,** Director, Enforcement Programs Division, Admissibility and Passenger Programs, Office of Field Operations, U.S. Customs and Border Protection;
- **Pete Flores**, Director of Field Operations, San Diego Field Office, Office of Field Operations, U.S. Customs and Border Protection;
- **Anne L. Maricich**, Deputy Director of Field Operations, San Diego Field

23

Office, Office of Field Operations, U.S. Customs and Border Protection;

- **Johnny Armijo**, Assistant Director of Field Operations, San Diego Field Office, Office of Field Operations, U.S. Customs and Border Protection;

- **Sidney Aki**, Port Director, San Ysidro Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **Robert W. Hood**, Assistant Port Director, San Ysidro Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **Karen Ah Nee**, Supervisory Customs and Border Protection Officer (Chief), San Ysidro Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **Moises Castillo**, Supervisory Customs and Border Protection Officer (Watch Commander), San Ysidro Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **Mariza Marin**, Supervisory Customs and Border Protection Officer (Watch Commander), San Ysidro Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **David Higgerson**, Director of Field Operations, Laredo Field Office, Office of Field Operations, U.S. Customs and Border Protection;

- **Rodney Harris**, Assistant Director, Laredo Field Office, Office of Field Operations, U.S. Customs and Border Protection;

- **Gregory Alvarez**, Director, Northern Operations Command, Laredo Field Office, Office of Field Operations, U.S. Customs and Border Protection (and former Port Director, Laredo Port of Entry);

- **Carlos Rodriguez**, Acting Director, Southern Operations Command, Laredo Field Office, Office of Field Operations, U.S. Customs and Border Protection;

- **Alberto Flores**, Acting Port Director, Laredo Port of Entry, Office of Field

DEFS.' RESPONSES TO PLS.' FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS (Nos. 1–4), Case No. 3:17-cv-02366-BAS-KSC

Operations, U.S. Customs and Border Protection;

- **Sylvia Briones,** Acting Port Director, Hidalgo Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **David John Gonzalez**, Assistant Port Director, Hidalgo Port of Entry, Office of Field Operations, U.S. Customs and Border Protection and former Acting Port Director, Hidalgo Port of Entry); and

- **Andres Guerra**, Port Director, Roma Port of Entry, Office of Field Operations, U.S. Customs and Border Protection (and former Acting Port Director, Hidalgo Port of Entry).

These persons may be contacted only through Defendants' counsel. Defendants will supplement this list as appropriate.

//

//

DEFS.' RESPONSES TO PLS.' FIRST SET OF
INTERROGATORIES TO ALL DEFENDANTS
(Nos. 1–4), Case No. 3:17-cv-02366-BAS-KSC

1    Dated: April 29, 2019                    Submitted as to objections only,

2
                                             JOSEPH H. HUNT
3                                            Assistant Attorney General
                                             Civil Division
4

5                                            WILLIAM C. PEACHEY
                                             Director, Office of Immigration Litigation –
6                                            District Court Section
7

8                                            GISELA A. WESTWATER
                                             Assistant Director
9

10                                           KATHERINE J. SHINNERS
                                             Senior Litigation Counsel
11

12                                           */s/ Alexander J. Halaska*
                                             ALEXANDER J. HALASKA
13                                           SAIRAH G. SAEED
                                             Trial Attorneys
14                                           U.S. Department of Justice
                                             Civil Division
15                                           Office of Immigration Litigation
                                             District Court Section
16                                           P.O. Box 868, Ben Franklin Station
                                             Washington, D.C. 20044
17                                           Tel: (202) 307-8704 | Fax: (202) 305-7000
                                             alexander.j.halaska@usdoj.gov
18
                                             *Counsel for Defendants*
19

20

21

22

23

24

25

26

27

28

DEFS.' RESPONSES TO PLS.' FIRST SET OF
     INTERROGATORIES TO ALL DEFENDANTS
     (Nos. 1–4), Case No. 3:17-cv-02366-BAS-KSC

# **CERTIFICATE OF SERVICE**

Case No. 3:17-cv-02366-BAS-KSC

I certify that on April 29, 2019, I served a copy of Defendants' Objections and Responses to Plaintiffs' First Set of Interrogatories to All Defendants (Nos. 1–4) on the following persons by email:

**Mary Catherine Bauer**
mary.bauer@splcenter.org

**Stephen Medlock**
smedlock@mayerbrown.com

**Matthew Ellis Fenn**
mfenn@mayerbrown.org

**Angelo R. Guisado**
aguisado@ccrjustice.org

**Matthew M. Marmolejo**
mmarmolejo@mayerbrown.com

**Baher Azmy**
bazmy@ccrjustice.org

**Micah D. Stein**
mstein@mayerbrown.com

**Ghita R. Schwarz**
gschwarz@ccrjustice.org

**Ori Lev**
olev@mayerbrown.com

**Karolina J. Walters**
kwalters@immcouncil.org

**Rebecca Cassler**
rebecca.cassler@splcenter.org

**Melissa E. Crow**
melissa.crow@splcenter.org

**Sarah Marion Rich**
sarah.rich@splcenter.org

*/s/ Alexander J. Halaska*
ALEXANDER J. HALASKA
Trial Attorney

1
2
3

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
**(San Diego)**

4    AL OTRO LADO, Inc., *et al.*,

5                                    *Plaintiffs*,

6                        v.

7    Kevin K. McALEENAN, Acting
8    Secretary, U.S. Department of Homeland
     Security, in his official capacity, *et al.*,
9
10                                    *Defendants*

Case No. 3:17-cv-02366-BAS-KSC

**CERTIFICATION OF**
**DEFENDANTS' RESPONSES TO**
**PLAINTIFFS' FIRST SET OF**
**INTERROGATORIES TO ALL**
**DEFENDANTS**

11

12        I, Todd C. Owen, hereby declare that I am the Executive Assistant
13   Commissioner, Office of Field Operations, U.S. Customs and Border Protection.
14   Based upon reasonable inquiry, knowledge, information, and belief, I certify that
15   Defendants' responses to Plaintiffs' First Set of Interrogatories to All Defendants
16   are true and correct to the best of my knowledge.

17

18

19   Dated: April 29, 2019
20                                    TODD C. OWEN
21                                    Executive Assistant Commissioner
                                      Office of Field Operations
22                                    U.S. Customs and Border Protection

23
24
25
26
27
28

DEFS.' RESPONSES TO PLS.' FIRST SET OF
INTERROGATORIES TO ALL DEFENDANTS
(Nos. 1–4), Case No. 3:17-cv-02366-BAS-KSC