# Defendants' Exhibit 1

Defendants' Second Amended and Supplemented Responses to Plaintiffs' First Set of Requests for Production

JOSEPH H. HUNT
Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
GISELA A. WESTWATER (NE 21801)
Assistant Director
KATHERINE SHINNERS
Senior Litigation Counsel
SAIRAH G. SAEED (IL 6290644)
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-4067 | Fax: (202) 305-7000
Email: sairah.g.saeed@usdoj.gov
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorney

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | Hon. Cynthia A. Bashant<br>Mag. Judge Karen S. Crawford |
| v. | |
| | **DEFENDANTS' SECOND AMENDED AND SUPPLEMENTED RESPONSES TO PLAINTIFFS' FIRST SET OF** |

1

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
Case No. 3:17-cv-2366-BAS-KSC

Kevin K. McAleenan,[1]  Acting Secretary,     **REQUESTS FOR PRODUCTION**
U.S. Department of Homeland Security, in    **OF DOCUMENTS**
his official capacity, *et al.*,

              *Defendants.*

      Pursuant to Federal Rule of Civil Procedure 34, Defendants Kevin K.

McAleenan, Acting Secretary of the Department of Homeland Security ("DHS");

Kevin K. McAleenan, Commissioner, U.S. Customs and Border Protection

("CBP");  and  Todd C. Owen, CBP Executive Assistant Commissioner, Office of

Field Operations ("OFO"), all in their official capacities, hereby jointly submit

amended objections and responses to Plaintiffs' First Set of Requests for

Production ("RFPs" or "Requests") of Documents to Defendant Elaine C. Duke,

Requests 1-25; Plaintiffs' First Set of RFPs to Defendant John F. Kelly, Requests

1-25;  Plaintiffs' First Set of RFPs to Defendant Kevin McAleenan, Requests 1-25;

and, Plaintiffs' First Set of RFPs to Defendant Todd C. Owen, Requests 1-25.[2]

      Defendants' objections are based on the information known to Defendants at

this time and are made without prejudice to assertion of additional objections

should Defendants identify additional grounds for objection.  Defendants

specifically reserve the right to amend, supplement, clarify, revise, or correct any

or all of their responses to these Requests.  By responding to these Requests,

Defendants do not waive, and specifically preserve, their right to assert any and all

objections to the admissibility of any documents on any and all grounds, including,

---

[1] Acting Secretary McAleenan is automatically substituted for former Secretary
Nielsen pursuant to Federal Rule of Civil Procedure 25(d).

[2] Acting Secretary McAleenan responds to Plaintiffs' duplicative sets of Requests
for Production directed to the Secretary of Homeland Security.

2

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

but not limited to, competency, relevance, materiality, and privilege.  Furthermore, Defendants respond herein without in any manner admitting or implying that Plaintiffs' Requests (or Defendants' responses) are relevant to any party's claim or defense or proportionate to the needs of the case. None of Defendants' responses herein should be construed or understood as an admission or denial of any legal or factual issues, nor any agreement with Plaintiffs' characterization of any legal or factual issues.

Defendants jointly submit their responses as a matter of convenience in light of the near identity of each RFP served on the Defendants, the organizational relationships between the Defendants, and Defendants' need to refer to each other in responding to these RFPs, whether answering together or individually.  To the degree the response of one Defendant diverges from that of the other Defendants, it is duly noted below.

## OBJECTIONS WHICH APPLY TO ALL REQUESTS FOR PRODUCTION:

1.      Defendants object to these Requests (and all discovery requests) as facially improper in this Administrative Procedure Act ("APA") case.  Defendants continue to maintain, as briefed in their pending Motion to Dismiss (ECF Nos. 192 & 238) and in their portion of the 26(f) report (ECF No. 239), and supplement (ECF No. 243), that Plaintiffs' claims should be decided on the administrative record without discovery.  "[I]t is black-letter administrative law that in an APA case, a reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'" *Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013) (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)); *First Nat. Bank & Trust v. Dep't of Treasury*, 63 F.3d 894, 897 (9th Cir. 1995) ("Generally, judicial

3

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

review of an agency decision is limited to the administrative record.") (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). These Requests are proper only to the extent they seek information that is absolutely necessary "to ascertain the contours of the precise policy at issue," *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 530 F.3d 925, 928 (D.C. Cir. 2008) (internal quotations omitted), and only to the extent they request the information the agency had before it when it made its decision, *Hill Dermaceuticals, Inc.*, 709 F.3d at 47. Thus, Defendants continue to maintain that discovery of the type Plaintiffs seek is improper, and if this case is not dismissed in its entirety, it should be decided on the relevant administrative record. Defendants assert this objection to preserve it pending a ruling on their Motion to Dismiss. At this time, this objection serves as a limiting principle on the parameters of Defendants' search for documents; Defendants are not withholding any responsive documents collected as a result of that search from their production or privilege log on the basis of this objection alone.

2.      Moreover, any Request that seeks information relating to any DHS or CBP employee's subjective intentions or motivations, including the named Defendants', is facially improper. The Supreme Court has long recognized that "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government." *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 268 n. 18 (1977). In part for that reason, the Court has "made it abundantly clear" that APA review must focus only on the contemporaneous explanation of the agency decision" that the agency chooses to rest upon. *Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 549 (1978). "When a party challenges agency action as arbitrary and capricious the reasonableness of the agency's action is judged in accordance with its *stated* reasons." *In re Subpoena Duces Tecum*

4

*Served on the Office of the Comptroller of the Currency*, 156 F.3d 1279, 1279 (D.C. Cir. 1998) (emphasis added) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S 402 (1971)).  Unless intent is an element of a party's claims or defenses—which, in this case, it is not—"the actual subjective motivation of agency decision makers is immaterial as a matter of law," *id.* at 1280, and therefore not properly discoverable.  Accordingly, as set forth in their specific objections and responses, Defendants will not search for, produce, or log any documents in response to Plaintiffs' requests that concern solely what Plaintiffs allege to be the named Defendants' or DHS or CBP employees' subjective intentions or motivations that have no apparent connection to the existence or contours of a policy or practice claimed to be at issue.

3.    Defendants object to the use of the term "noncitizen," as this term is overly broad, vague and ambiguous. Specifically, the term "noncitizen" is a term proposed by Plaintiffs and not used by Defendants, and Plaintiffs do not provide a definition of what this term means. "Noncitizen" is not specific to the United States.  That is, it is not limited to those individuals who are not citizens of the United States and could encompass individuals who are not citizens of other nations.  Therefore, for the purpose of responding to these Requests, Defendants understand and construe the term "noncitizen," in the context of these discovery requests, to mean "alien," as defined in 8 U.S.C. § 1101(a)(3), and such construction is reflected in all of Defendants' responses and in any corresponding production or privilege log.

4.    Defendants object to the terms "seek asylum," "have a fear," "expressing a desire to seek asylum," "expressing a fear of returning to their countries of origin," and "presented themselves" as they are not defined by Plaintiffs, and are ambiguous and vague.  Specifically, Defendants object to these terms to the

5

extent that they encompass any actions other than those described in or contemplated under 8 U.S.C. §§ 1158 and 1225(b). For purposes of responding to Plaintiffs' Requests, Defendants construe these terms as referring to actions consistent with 8 U.S.C. §§ 1158 and 1225(b). Such construction is reflected in all of Defendants' responses and any corresponding production or privilege log; Defendants are not, however, withholding documents on the basis of this objection unless so stated in their specific objections and responses below.

5.    Defendants object to the phrase "near a port of entry on the U.S.-Mexico border," on the basis that this phrase is overbroad and seeks discovery beyond the scope of this lawsuit. For example, this phrase could be construed as referring to actions occurring between ports of entry, which are not relevant to any party's claims or defenses in this case. The claims in this action relate only to aliens who allegedly sought to enter the United States at one of four ports of entry (Laredo, Otay Mesa, San Ysidro, and Hidalgo) but were not immediately allowed to do so. Defendants therefore object to the extent that any Request seeks information beyond the claims raised by individual Plaintiffs in this action. Relatedly, such discovery would be unduly burdensome and disproportional to the needs of the case. Therefore, for purposes of their responses, Defendants will only search for and produce relevant and non-privileged documents relating to aliens arriving at "ports of entry" and Defendants' responses to each and every Request will be limited consistent with this objection.

6.    Defendants object to each and every Request to the extent it requests or appears to request information related to all ports of entry along the U.S.-Mexico border as not proportional to the needs of the case, overly broad, and unduly burdensome. The Court's Order directs the parties to "prioritize discovery necessary for a motion for class certification[.]" ECF No. 196 at 2. "The class

6

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'  In order to justify a departure from that rule, 'a class representative must be part of the class and possess the same interest and suffer the same injury as class members.'"  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979), and *East Tex. Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 208, 216 (1974)).  The putative class representatives allege that they applied for admission or attempted to apply for admission at only the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.  Thus, even assuming for argument's sake that the Court certifies the broadest possible class the representative parties might be legally permitted to represent, the individual plaintiffs still cannot challenge actions taken at other ports of entry, because those plaintiffs are not part of a class of individuals who applied for admission or attempted to apply for admission at such ports and do not "possess the same interest and suffer the same injury as those individuals."  *Wal-Mart Stores, Inc.*, 564 U.S. at 348-49.  The challenges in this action are thus limited to policies issued and actions taken by the headquarters portions of the Office of Field Operations and the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry, and any Requests that go beyond the scope of the specific claims and allegations at issue are legally improper and thus irrelevant.

Further, the burden of searching for, collecting, reviewing, and producing documents related to all ports of entry along the U.S.-Mexico border would be unduly burdensome and disproportional to the needs of the case.  Plaintiffs allege a border-wide practice, policy, and/or procedure; discovery from the four ports of entry where the named Plaintiffs allegedly encountered such a practice, policy, and/or procedure (or a subset thereof), in addition to discovery from select higher-level officials and centralized non-custodial sources, satisfies the needs of the case,

7

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

as any evidence of such a border-wide practice, policy, and/or procedure, if it exists, would necessarily be found in such locations. Any discovery from other ports of entry along the U.S.-Mexico border would thus be either irrelevant or duplicative and unduly burdensome.

In light of these issues, Defendants therefore understand and construe these Requests as seeking discovery limited to the headquarters portions of the Office of Field Operations and the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry, and will search for and produce only relevant and non-privileged documents relating to aliens arriving or attempting to arrive at these four ports of entry, and documents from Office of Field Operations Headquarters.  Defendants' responses to each and every Request, and their corresponding production and privilege log, will be limited consistent with this objection.  This objection also serves as a limiting principle on the parameters of Defendants' search for responsive documents, the contours of which are being contemporaneously negotiated with Plaintiffs.

7.    Defendants object to the RFPs to the extent that they seek: (a) attorney work product, trial preparation materials, or communications that are protected by the attorney-client privilege; (b) documents that are protected by the deliberative process privilege, the joint defense privilege, the common interest privilege, the law enforcement privilege (and/or as law enforcement sensitive), the official information privilege, the executive privilege, the investigatory files privilege, the self-critical analysis privilege, the *Machin* privilege; (c) documents that, if produced would violate the legitimate privacy interests and expectations of persons who are not party to this litigation; or (d) documents to which any other privilege applies.

8

Defendants will assert privileges specific to each request in their privilege log, on the production itself, or in their response to the request.  Documents generated after the filing of Plaintiffs' initial Complaint in this action representing either communications with counsel or communications relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

8.     Defendants object to producing confidential, sensitive, or personally-identifying information prior to the entry of an order protecting that information from disclosure.

9.     Defendants object to each and every Request to the extent that it seeks information protected from disclosure by statutes, regulations, or directives regarding the protection of privacy, confidential information, or medical information, or under statutes and regulations prohibiting disclosure of <u>information related to individual aliens</u>—including but not limited to: 8 U.S.C. §§ 1160(b)(5),(6); 1186a(c)(4); 1202(f); 1254a(c)(6); 1255a(c)(4),(5); 1304(b); and 1367; 22 U.S.C. § 7105(c)(1)(C); 8 C.F.R. §§ 208.6; 210.2(e); 214.11(p); 214.14(e); 216.5(e)(3)(viii); 236.6; 244.16; 245a.2(t); 245a.3(n); 245a.21; 1003.46; and 1208.6—many of which would subject Defendants and their employees to civil or criminal penalties or other sanctions in the event of unauthorized disclosure.  Thus, Defendants will not produce responsive information that falls within this category without an express written waiver from the alien authorizing such disclosure, or court order, as may be permitted in certain circumstances.

10.     Defendants object to the RFPs (and the definitions and instructions that accompany them) to the extent that they purport to impose obligations greater than  those imposed by the Federal Rules of Civil Procedure, the Local Civil Rules

9

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

of the U.S. District Court for the Southern District of California, or an order of this Court. While Defendants are not currently aware of any documents they are withholding on the basis of this objection other than as stated specifically below, Defendants nonetheless assert this objection to preserve it.

11.    Defendants object to the RFPs to the extent they impose obligations beyond those agreed upon in the Stipulated ESI Protocol. Defendants will search agreed upon custodian and non-custodial sources agreed to by the parties in accordance with the terms of that protocol. If the parties cannot agree on sources and search parameters, Defendants will limit their search parameters to the sources and search terms and methods identified by Defendants. Defendants also agree to meet and confer with Plaintiffs regarding the possibility of direct collection of documents without using a forensic document collection and the application of search terms if appropriate under the circumstances.

## OBJECTIONS TO DEFINITIONS:

1.    Defendants object to the definitions of the terms "YOU" and "YOUR" on the grounds that they are overbroad, vague, unduly burdensome, invade the attorney/client privilege or the attorney work-product doctrine, and violate the Privacy Act, 5 U.S.C. § 552a *et seq*. Unless otherwise specified, Defendants interpret the definition of YOU or YOUR as referring to DHS, CBP, OFO, and individual DHS employees from whom DHS has the legal right to obtain upon demand information relevant to the claims and defenses in this case. Defendants do not interpret the definition of "YOU" or "YOUR" to include DHS component agencies or CBP subcomponents that are not parties to this case. Defendants' responses to each applicable Request, and their corresponding production and privilege log, will be limited consistent with this objection and the objections to the

10

definitions of DHS and CBP.  This objection also serves as a limiting principle on the parameters of Defendants' search for responsive documents, the contours of which are being contemporaneously negotiated with Plaintiffs.

2.    Defendants object to the definition of "CBP" as overbroad, unduly burdensome, and disproportional to the needs of the case. Plaintiffs' definition includes "any divisions, subdivisions, components or sections" of CBP and "CBP offices at ports of entry, including any divisions, subdivisions, components or sections therein[.]"  Plaintiffs' definition also includes "any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP."  First, Plaintiffs' definition is overly broad and disproportional to the needs of the case in that it would potentially include CBP components that are not relevant to the claims and defenses in this case, such as Air and Marine Operations and U.S. Border Patrol. Second, Plaintiffs' definition is also overly broad and disproportional to the needs of the case because this case challenges the alleged actions of CBP's Office of Field Operations at the headquarters level and at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry. Thus, requests for documents from  other subcomponents of CBP that do not relate to those challenged actions reaches beyond what may be relevant to the claims and defenses in this case.  Third, asking Defendants to search and produce documents from all components of CBP would be unduly burdensome and also disproportional as CBP employs more than 60,000 people and many of these employees are not relevant to the claims or defenses in this case. *See* "About CBP," U.S. Customs and Border Protection (last modified April 18, 2019), https://www.cbp.gov/about.

Defendants also object to Plaintiffs' definition of "CBP" to the extent it includes all "private contractors hired by CBP" to the extent the work of those

11

contractors is not relevant to this case and to the extent that Defendants do not have a legal right to obtain documents from them. As applicable, Defendants will construe Plaintiffs' requests as limited to documents over which Defendants exercise possession or custody or have a legal right to obtain, and from contractors whose work relates to the Office of Field Operations and San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.

Defendants do not interpret the definition of "CBP" to include all subcomponents of CBP or all employees of CBP. Defendants construe "CBP" to refer to the named Defendants in their official capacities, U.S. Customs and Border Protection and, where appropriate in the context, its headquarters and its Office of Field Operations, and the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.

Defendants' responses to each applicable Request, and their corresponding production and privilege log, will be limited consistent with this objection. This objection also serves as a limiting principle on the parameters of Defendants' search for responsive documents, the contours of which are being contemporaneously negotiated with Plaintiffs.

3. Defendants object to the definition of "DHS" as overbroad, vague, unduly burdensome, and disproportional to the needs of the case. Specifically, Plaintiffs' definition includes "headquarters and offices" and "any divisions, subdivisions, components or sections" of DHS. The definition also includes "any other DHS organizational structures." First, Plaintiffs' definition is overly broad and disproportional to the needs of the case in that it would include DHS components that are not relevant to the claims and defenses in this case. Second, Plaintiffs' definition is also overly broad and disproportional to the needs of the case because this case challenges the alleged actions of CBP's Office of Field

12

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
Case No. 3:17-cv-2366-BAS-KSC

Operations at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry. Third, asking Defendants to search for and produce documents from all components of DHS would be unduly burdensome as DHS employs more than 240,000 people and many of these employees are not relevant to the claims or defenses in this case. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs.  Accordingly, Defendants do not interpret the definition of "DHS" to include all component agencies of DHS or all employees of DHS and its component agencies. Defendants construe "DHS" to refer to DHS components, offices, and personnel at issue in this case, including, as applicable, the DHS Office of Inspector General ("OIG").

Defendants' responses to each applicable Request, and their corresponding production and privilege log, will be limited consistent with this objection.  This objection also serves as a limiting principle on the parameters of Defendants' search for responsive documents, the contours of which are being contemporaneously negotiated with Plaintiffs.

4.    Defendants object to the definition of "COMMUNICATION" on the grounds that it is vague, overly broad, and unduly burdensome because it is defined so broadly as to include oral and/or non-written communications, which are beyond the scope of Rule 34.  *See* Fed. R. Civ. P. 34 (allowing requests to inspect or produce documents, electronically stored information, or tangible items).  For the purposes of responding to these Requests, Defendants construe COMMUNICATION to refer to oral or non-written communications only to the degree that they have been memorialized in tangible and reasonably accessible form, and such construction is reflected in all of Defendants' responses and in any corresponding production or privilege log.

13

5.      Defendants object to the definition of "DOCUMENT(S)" on the grounds that it is overly broad, unduly burdensome, and disproportional to the needs of this case because it is defined so broadly as to include oral and/or non-written communications, which are beyond the scope of Rule 34.  *See* Fed. R. Civ. P. 34 (allowing requests to inspect or produce documents, electronically stored information, or tangible items).  For purposes of this response, Defendants construe DOCUMENT(S) to include only oral or non-written communications that have been memorialized in tangible form, , and such construction is reflected in all of Defendants' responses and any corresponding production or privilege log.

Defendants also object to the definition of "DOCUMENT(S)" to the extent it seeks documents "to which you otherwise have access."  In the Ninth Circuit, the standard for possession, custody, or control is the legal right to obtain documents. *See 7-UP Bottling Co. v. Archer Daniels Midland Co.* (*In re Citric Acid Litig.*), 191 F.3d 1090, 1107 (9th Cir. 1999).  Defendants are only under the obligation to produce relevant, non-privileged information, to the extent that it exists, if individuals, operating in their official governmental capacity, have responsive, non-privileged information that is under the possession, custody or control of the named Defendants or that the named Defendants have the legal right to obtain on demand.  *Id.*  Therefore, the definition is overly broad and an incorrect statement of the standard.  For purposes of these Responses, Defendants construe DOCUMENT(S) to include those documents within their possession, custody, and control, and such construction is reflected in all of Defendants' responses and any corresponding production or privilege log.

6.      Defendants object to the definition of "ALL DOCUMENTS" on the grounds that it is overly broad, unduly burdensome, and disproportional to the needs of this case because it is defined so broadly as to include documents in the

14

1   possession, custody or control of "affiliates, partners, agents, consultants, []

2   advisors, attorneys, investigators and representatives."   In the Ninth Circuit, the

3   standard for possession, custody, or control is the legal right to obtain

4   documents.  *See 7-UP Bottling Co. v. Archer Daniels Midland Co.* (*In re Citric*

5   *Acid Litig.*), 191 F.3d 1090, 1107 (9th Cir. 1999).  Defendants are only under the

6   obligation to produce relevant, non-privileged information, to the extent that it

7   exists, if individuals, operating in their official governmental capacity, have

8   responsive, non-privileged information that is under the possession, custody or

9   control of the named Defendants or that the named Defendants have the legal right

10  to obtain on demand.  *Id.*  Defendants do not have the right to obtain documents

11  from all "affiliates, partners, agents, consultants, [] advisors, attorneys,

12  investigators and representatives."

13       Defendants also object to the definition of "ALL DOCUMENTS" on the

14  grounds that it is overly broad and unduly burdensome because it is defined so

15  broadly as to include documents not in Defendants' possession, custody or control

16  but "to which [Defendant] otherwise ha[s] access."  In the Ninth Circuit, the

17  standard for possession, custody, or control is the legal right to obtain

18  documents.  *See 7-UP Bottling Co. v. Archer Daniels Midland Co.* (*In re Citric*

19  *Acid Litig.*), 191 F.3d 1090, 1107 (9th Cir. 1999). Defendants are only under the

20  obligation to produce relevant, non-privileged information, to the extent that it

21  exists, if individuals, operating in their official governmental capacity, have

22  responsive, non-privileged information that is under the possession, custody or

23  control of the named Defendants or that the named Defendants have the legal right

24  to obtain on demand.  *Id.*  Defendants do not have the legal right to obtain all

25  documents to which it otherwise has "access."

26

27                              15

28

For purposes of these responses, Defendants will construe the requests as seeking only documents over which Defendants exercise possession or custody, or have the legal right to obtain, and such construction is reflected in all of Defendants' responses and any corresponding production or privilege log.

7. Defendants object to the definition of "IDENTIFY" and "IDENTIFIED" used with the respect to a document to the extent it creates an obligation that does not exist under Federal Rules of Civil Procedure 26 or 34, by requesting that Defendants reveal information that is privileged or otherwise protected from disclosure.

8. Defendants object to the definition of "RELATING TO" insofar as it purports to define "relate," "reflect," "respect," "regard," or "refer" to include "or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed in the request," as the use of any such terms are not proportional to the needs of the case, are overly broad, oppressive, and the burden of a request using any such term would outweigh its benefit. To ask Defendants to search for and produce documents with only the most tangential connection to responsive topics would be unduly burdensome because it would encompass discovery that is not relevant to the claims and defenses in this case.

Defendants thus place a limiting construction on "relating to" such that they interpret the term to not seek only documents that are independently and directly responsive and relevant to the claims and defenses in this case, and such construction is reflected in all of Defendants' responses and any corresponding production or privilege log. While it is difficult to identify in advance every type of document that Defendants may withhold on the basis of this objection, Defendants provide the following examples of the types of documents that they maintain are improperly encompassed by Plaintiffs' overbroad definition.

16

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

First, documents that "relate[s]" in some "indirect" manner to a responsive topic are not necessarily independently responsive.  Accordingly, for example, Defendants reserve the right to withhold nonresponsive attachments that are members of an email family that also contains responsive attachments.  Second, documents and forms that relate to a specific, individual alien's asylum application may "reflect" in some indirect manner agency procedures responsive to RFP 1, without actually discussing those agency procedures would not provide meaningful information about the application of those agency procedures. Defendants reserve the right to withhold such documents even after the entry of a confidentiality protective order, particularly in light of the sensitive nature of such documents.

9.     Defendants object to the definition of "including" and "including but not limited to," as the use of those terms is overly broad, vague and confusing. Defendants' concern with this definition is that it purports to require Defendants to produce categories of documents that are not expressly listed in the Requests, and which Defendants are not aware that Plaintiffs consider responsive.  While Defendants are not currently aware of any documents they are withholding on the basis of this objection, Defendants nonetheless assert this objection to preserve it.

10.     Defendants object to the definitions of "and" and "or" insofar as they purport to define the terms as to be inclusive of each other "where dual construction will serve to bring within the scope of these requests any DOCUMENT which would otherwise not be brought within its scope," as overly broad, not proportional to the needs of the case, and burdensome.  Defendants additionally object to the definitions of "any" and "all" insofar as they purport to define the terms to be inclusive of each other as overly broad, vague, and confusing.

17

First, the definitions of "and" "or" "any" and "all" may bring into the scope of discovery information that may not be relevant to the claims or defenses in this case. Further, searching for documents that have the broader reading of these varying words would be unduly burdensome.

Defendants thus place a limiting construction on these terms such that they do not seek documents other than those that are independently responsive and relevant to the claims and defenses in this case, and such construction is reflected in all of Defendants' responses and any corresponding production or privilege log.

## **OBJECTIONS TO INSTRUCTIONS:**

1.    Defendants object to Instruction No. 1 relating to production or production format to the extent that it conflicts with provisions in the agreed-upon terms of the Stipulated ESI Protocol.

2.    Defendants object to Instruction No. 2 to the extent that the requirements listed exceed the requirements of Federal Rule of Civil Procedure 26(b)(5)(A) and/or the agreed-upon terms of the Stipulated ESI Protocol.

3.    Defendants object to Instruction Nos. 2 and 3 to the extent that they conflict in any way with the Ninth Circuit's standard for possession, custody, or control which defines control as "the legal right to obtain upon demand*." In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999).

4.    Defendants object to Instruction No. 3 as unduly burdensome insofar as it purports to require a document-by-document recounting, including, as completely as possible each author, preparer, and recipient of the Document; a complete description of the type, title, and subject matter of the Document; and the date on which and manner in which the Document was created, lost, discarded, destroyed, or otherwise disposed of, for every responsive Document, without

18

regard to the date on which it was created, the date on which it was lost, discarded, destroyed, or otherwise disposed of, or whether litigation involving the substance of the Document was reasonably foreseeable at that time it was lost, discarded, destroyed or otherwise disposed of.  Defendants construe such instruction as seeking such information only with regards to documents "lost, discarded, destroyed, or otherwise disposed of" only after July 12, 2017, the date that this lawsuit was filed.

**REQUEST FOR PRODUCTION NO. 1:**

All documents relating to any and all criteria or standards that CBP personnel use or have used to determine whether noncitizens arriving at or near a port of entry on the U.S.-Mexico border are seeking asylum or have a fear of returning to their countries of origin.

**Objections to Request for Production No. 1:**

Defendants object to RFP 1 in that it is overly broad, disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit.  For example, RFP No. 1 purports to require Defendants to produce "all documents" "relating to" "any and all criteria or standards" that any unspecified "CBP personnel" uses or has used.  As outlined in the objections to Plaintiffs' definitions above, the definition of CBP is overly broad, disproportional to the needs of the case, and unduly burdensome. Defendants construe this request as requiring a search for current, relevant, and non-privileged documents that provide guidance on the processing of arriving aliens who express a fear of return , consistent with 8 U.S.C. §§ 1158 and 1225(b). Defendants also object to this request as vague and ambiguous because it is not clear what is meant by "any and all criteria or standards."

19

Defendants also object to RFP 1 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-10 and Objections to Definitions Nos. 2, 5-6, 8, and 10; and, Objections to Instructions No. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response to Request for Production No. 1**:

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

**REQUEST FOR PRODUCTION NO. 2:**

All documents relating to any and all policies, procedures, recommendations or guidelines on the processing of noncitizens arriving at or near a port of entry on the U.S.-Mexico border who express a desire to seek asylum or express a fear of returning to their countries of origin, including:

20

(a) Scheduling appointments for such individuals to present themselves at a port of entry;

(b) Use of a ticketing or metering system to process such individuals;

(c) Requiring documentation before initiating processing of such individuals;

(d) Use of shelters in Mexico to house such individuals so that they can be processed on later dates;

(e) Directing such individuals away from one or more ports of entry;

(f) Separating such individuals from any family members who have traveled with them to the port of entry;

(g) Requiring or conducting pre-screening of such individuals by local, state or federal Mexican agencies or private security organizations;

(h) When to apply Section 235(b)(2)(C) of the Immigration and Nationality Act ("INA") regarding treatment of noncitizens from contiguous territories;

(i) When to complete Form I-275, Withdrawal of Application for Admission/Consular Notification;

(j) When to refuse to process such individuals;

(k) When to complete Form I-867, Record of Sworn Statement in Proceedings under INA §235(b)(1), where noncitizens have expressed a fear of returning to their countries of origin; or

(l) When to issue Form I-860, Notice and Order of Expedited Removal, where noncitizens have expressed a desire to seek asylum or expressed a fear of returning to their countries of origin.

**Objections to Request for Production No. 2:**

Defendants object to RFP 2 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the

21

likely benefit.  For example, RFP No. 2 purports to require Defendants to produce "all documents" "relating to" (two already objectionably overbroad and vague terms) "policies, procedures, recommendations or guidelines" on the "processing" (an undefined term) of "noncitizens ...  who express a desire to seek asylum or express a fear …."  Such an expansive request is not only disproportionate and burdensome but also overbroad in that it seeks documents irrelevant to any claim or defense in this case.

Defendants construe the terms "ticketing" or "metering system" as stated by Plaintiffs as vague and ambiguous.  Defendants construe these terms as they are commonly used by Defendants in the course of business.

Defendants object to the term "processing," which Plaintiffs do not define, as vague and overly broad.  Defendants object to this request on the ground that it seeks discovery of information that is beyond the scope of this lawsuit and not proportional to the needs of this case.  *See e.g.*, Fed. R. Civ. P. 26(b)(1).  For example, processing may encompass actions such as a secondary inspection for agricultural or customs purposes.  *See* U.S. DHS PRIVACY IMPACT ASSESSMENT FOR THE TECS SYSTEM: CBP PRIMARY AND SECONDARY PROCESSING at 5 (December 22, 2010), https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-tecs-december2010_0.pdf.  Activities like these that are included in the processing of an alien are outside the scope of this lawsuit.  Defendants construe the term "processing" here to refer only to those actions outlined in (a)-(d), (f)-(g) and (i)-(l) above.

Defendants object to paragraphs (c), (h), (i), (j), (k), and (l) to the extent that they seek information nonspecific to those who may seek protection under 8 U.S.C. § 1158 or express a fear pursuant to 8 U.S.C. § 1225(b).

22

Defendants additionally object to paragraph (h) in its entirety as not relevant to any party's claims or defenses and as disproportional to the needs of this case because no named Plaintiff alleges that he or she was processed for  return to a contiguous country pursuant to Defendants' statutory authority at 8 U.S.C. § 1225(b)(2)(C).  This category of information has no bearing on the claims at issue in this action and therefore is overbroad and seeks the discovery of information that is beyond the scope of this lawsuit, is not relevant to any party's claim or defense, and is not proportional to the needs of this case.

Defendants object to this request as a compound request which seeks information through subparts which are not fairly encompassed by the general request.

Defendants also object to RFP 2 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-10; Objections to Definitions Nos. 5-6, 8-10; and, Objections to Instructions No. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

23

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

**Response to Request for Production No. 2:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

**REQUEST FOR PRODUCTION NO. 3:**

All documents relating to legal or other agreements, policies or procedures governing the collaboration or interaction of CBP personnel with local, state or federal Mexican government officials regarding the arrival or processing of noncitizens expressing a desire to seek asylum or expressing a fear of returning to their countries of origin at or near ports of entry on the U.S.-Mexico border.

**Objections to Request for Production No. 3:**

Defendants object to RFP 3 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 3 purports to require Defendants to produce "all documents" "relating to" "legal or other agreements, policies or procedures" governing the collaboration or interaction of unlimited and unspecified "CBP

24

personnel" with all levels of Mexican officials.  Such an expansive request is not only disproportionate and burdensome but also overbroad in that it seeks documents irrelevant to any claim or defense in this case.

Defendants also object to this request on the basis that "legal or other agreements" is vague and ambiguous.  Specifically, it is not clear what is meant by "legal agreements," as Plaintiffs do not provide any statute or other reference to determine what is intended by this term.  Moreover, it is unclear what the term "other agreements" is intended to encompass.

Defendants further object to the terms "collaboration" and "interaction," as they could cover even the most informal interactions. Defendants will read these terms to cover only formal, written policies, procedures, binding Agreements or non-binding arrangements within the possession, custody or control of Defendants, which specifically relate to individuals who, at a port of entry, seek protection consistent with 8 U.S.C. §§ 1158 and 1225(b).

In addition, Defendants object to this request on the ground that it seeks discovery of information that is beyond the scope of this lawsuit and not proportional to the needs of this case.  *See e.g.*, Fed. R. Civ. P. 26(b)(1). "Processing" may encompass actions such as such as a secondary inspection for agricultural or customs purposes.  *See* U.S. DHS PRIVACY IMPACT ASSESSMENT FOR THE TECS SYSTEM: CBP PRIMARY AND SECONDARY PROCESSING at 5 (December 22, 2010), https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-tecs-december2010_0.pdf.  Activities like these that may be included in the processing of an alien are outside the scope of this lawsuit. Defendants also object to RFP 3 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-10; Objections to Definitions Nos. 2, 5-6, 8, and 10; and, Objections to Instructions No. 1-4.

25

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response to Request for Production No. 3:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

**REQUEST FOR PRODUCTION NO. 4:**

All documents relating to legal or other agreements, policies or procedures governing the collaboration or interaction of CBP personnel with private security organizations regarding the arrival or processing of noncitizens expressing a desire to seek asylum or expressing a fear of returning to their countries of origin at or near ports of entry on the U.S.-Mexico border.

**Objections to Request for Production No. 4:**

Defendants object to RFP 4 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the

26

likely benefit.  For example, RFP No. 4 purports to require Defendants to produce "all documents" "relating to" "legal or other agreements, policies or procedures" governing the "collaboration or interaction" of unlimited and unspecified  "CBP personnel" with all private security organizations.  Such an expansive request is not only disproportionate and burdensome but also overbroad in that it seeks documents irrelevant to any claim or defense in this case.

Defendants further object to this request on the basis that "legal or other agreements" is vague and ambiguous. Specifically, it is not clear what is meant by "legal agreements," as Plaintiffs do not provide any statute or other reference to determine what is intended by this term. Moreover, it is unclear what the term "other agreements" is intended to encompass.

Defendants further object to the terms "collaboration" and "interaction," as they could cover even the most informal interactions.  Defendants will read these terms to cover only formal, written policies, procedures, binding agreements or non-binding arrangements within the possession, custody and control of Defendants, which specifically relate to arriving aliens who, at a port of entry, express an intention to apply for asylum, as defined at 8 U.S.C. § 1158 or express a fear of persecution in their home country as provided under § 1225(b).

Defendants further object to this request on the basis that "private security organizations" is vague and ambiguous.

In addition, Defendants object to this request on the ground that it seeks discovery of information that is beyond the scope of this lawsuit and not proportional to the needs of this case.  *See e.g.*, Fed. R. Civ. P. 26(b)(1).  For example, "processing" may encompass actions such as a secondary inspection for agricultural or customs purposes.  *See* U.S. DHS PRIVACY IMPACT ASSESSMENT FOR THE TECS SYSTEM: CBP PRIMARY AND SECONDARY PROCESSING at 5

27

(December 22, 2010), https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-tecs-december2010_0.pdf.  Activities like these that may be included in the processing of an alien are outside the scope of this lawsuit.

Defendants also object to RFP 4 in accordance with Objections Which Apply to All RFPs Nos. 1, and 3-10; Objections to Definitions Nos. 2, 5-6, 8 and 10; and, Objections to Instructions No. 1-4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response to Request for Production No. 4:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search.  *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

**REQUEST FOR PRODUCTION NO. 5:**

All documents relating to training materials or other records used to instruct, guide or otherwise prepare CBP personnel to process noncitizens arriving at or

28

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

near ports of entry on the U.S.-Mexico border, who express a desire to seek asylum or express a fear of returning to their countries or origin.

**Objections to Request for Production No. 5:**

Defendants object to RFP 5 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 5 purports to require Defendants to produce "all documents" "relating to" training materials or unspecified "other records" used to "instruct, guide or otherwise prepare" unspecified CBP personnel. Such an expansive request is not only disproportionate and burdensome but also overbroad in that it seeks documents irrelevant to any claim or defense in this case.

In addition, Defendants object to this request on the ground that it seeks discovery of information that is beyond the scope of this lawsuit and not proportional to the needs of this case. *See e.g.*, Fed. R. Civ. P. 26(b)(1). For example, "processing" may encompass actions such as a secondary inspection for agricultural or customs purposes. *See* U.S. DHS PRIVACY IMPACT ASSESSMENT FOR THE TECS SYSTEM: CBP PRIMARY AND SECONDARY PROCESSING at 5 (December 22, 2010), https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-tecs-december2010_0.pdf. Activities like these that may be included in the processing of an alien are outside the scope of this lawsuit.

Defendants also object to RFP 5 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-10; Objections to Definitions Nos. 2, 5-6, 8, and 10; and, Objections to Instructions No. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

29

**Response to Request for Production No. 5:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

**REQUEST FOR PRODUCTION NO. 6:**

All documents relating to communications within or among CBP, DHS or any of their agents, agencies, subagencies or offices, relating to the processing of noncitizens arriving at or near ports of entry on the U.S.- Mexico border who express a desire to seek asylum or express a fear of returning to their countries of origin, including communications relating to:

(a) Scheduling appointments for such individuals to present themselves at a port of entry;

(b) Use of a ticketing or metering system to process such individuals;

(c) Requiring documentation before initiating processing of such individuals;

(d) Use of shelters in Mexico to house such individuals so that they can be processed on later dates;

30

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

(e) Directing such individuals away from one or more ports of entry;

(f) Separating such individuals from any family members who have traveled with them to the port of entry;

(g) Requiring or conducting pre-screening of such individuals by local, state or federal Mexican agencies or private security organizations;

(h) When to apply Section 235(b)(2)(C) of the INA regarding treatment of noncitizens from contiguous territories;

(i) When to complete Form I-275, Withdrawl of Application for Admission/Consular Notification;

(j) When to refuse to process such individuals;

(k) When to complete Form I-867, Record of Sworn Statement in Proceedings under INA §235(b)(1), where noncitizens have expressed a desire to seek asylum or expressed a fear of returning to their countries of origin; or

(l) When to issue Form I-860, Notice and Order of Expedited Removal, where noncitizens have expressed a desire to seek asylum or expressed a fear of returning to their countries or origin.

**<u>Objections to Request for Production No. 6:</u>**

Defendants object to RFP 6 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 6 purports to require Defendants to produce "all documents" "relating to" "communications" (three already objectionably overbroad and vague terms) within and among employees of very large government agencies "relating to" the "processing" (an undefined term) of certain arriving aliens. Such an expansive request is not only disproportionate and

31

burdensome but also overbroad in that it seeks documents irrelevant to any claim
or defense in this case.

Defendants object to the extent that "communications within or among CBP,
DHS or any of their agents, agencies, subagencies or offices," is intended to
include *all* communications between individual CBP officers, agents, and
personnel with their counterparts in other DHS components, in relation to the
transfer, parole, release, or detention of a particular alien. Such information has no
bearing on the claims at issue in this action and therefore is overbroad and seeks
the discovery of information that is beyond the scope of this lawsuit, is not relevant
to any party's claim or defense, and is not proportional to the needs of this case.

Defendants construe the terms "ticketing" or "metering system" as stated by
Plaintiffs as vague and ambiguous. Defendants construe these terms as they are
commonly used by Defendants in the course of business.

Defendants object to the term "processing," which Plaintiffs do not define,
as vague and overly broad. Plaintiffs' definition of processing may
encompass actions such as a secondary inspection for agricultural or customs
purposes. *See* U.S. DHS PRIVACY IMPACT ASSESSMENT FOR THE TECS SYSTEM:
CBP PRIMARY AND SECONDARY PROCESSING at 5 (December 22, 2010),
https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-tecs-
december2010_0.pdf. Activities like these that may be included in the processing
of an alien are outside the scope of this lawsuit. Defendants construe the term
"processing" here to refer only to those actions outlined in (a)-(d), (f)-(g), and (i)-
(l) above.

Defendants objects to paragraphs (c), (h), (i), (j), (k), and (l) to the extent
that they seek information nonspecific to those who may seek protection under 8
U.S.C. § 1158 or express a fear pursuant to 8 U.S.C. § 1225(b).

32

Defendants additionally object to paragraph (h) in its entirety as not relevant to any party's claims or defenses and as disproportional to the needs of this case because no named Plaintiff alleges that he or she was processed for return to a contiguous country pursuant to Defendants' statutory authority at 8 U.S.C. 1225(b)(2)(C).  This category of information has no bearing on the claims at issue in this action and therefore is overbroad and seeks the discovery of information that is beyond the scope of this lawsuit, is not relevant to any party's claim or defense, and is not proportional to the needs of this case.

Defendants object to this request as a compound request which seeks information through subparts which are not fairly encompassed by the general request.

Defendants also object to RFP 6 in accordance with Objections Which Apply to All RFPs Nos. 1, and 3-10; Objections to Definitions Nos. 2-6 and 8-10; and, Objections to Instructions No. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response to Request for Production No. 6**:

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint

33

26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

**REQUEST FOR PRODUCTION NO. 7:**

All documents relating to communications to or from CBP or DHS relating to the processing of noncitizens arriving at or near ports of entry on the U.S.-Mexico border who express a desire to seek asylum or express a fear of returning to their countries or origin, including communications relating to:

(a) Scheduling appointments for such individuals to present themselves at a port of entry;

(b) Use of a ticketing or metering system to process such individuals;

(c) Requiring documentation before initiating processing of such individuals;

(d) Use of shelters in Mexico to house such individuals so that they can be processed on later dates;

(e) Directing such individuals away from one or more ports of entry;

(f) Separating such individuals from any family members who have traveled with them to the port of entry;

(g) Requiring or conducting pre-screening of such individuals by local, state or federal Mexican agencies or private security organizations;

(h) When to apply Section 235(b)(2)(C) of the INA regarding treatment of noncitizens from contiguous territories;

(i) When to complete Form I-275, Withdrawal of Application for Admission/Consular Notification;

(j) When to refuse to process such individuals;

34

(k) When to complete Form I-867, Record of Sworn Statement in
Proceedings under INA §235(b)(1), where noncitizens have expressed a
desire to seek asylum or expressed a fear of returning to their countries or
origin; or

(l) When to issue a Form I-860, Notice and Order of Expedited Removal,
where noncitizens have expressed a desire to seek asylum or expressed a
fear of return to their countries of origin.

**Objections to Request for Production No. 7:**

Defendants object to RFP 7 in that it is disproportionate to the needs of the
case, and the burden and expense of the proposed discovery clearly outweighs the
likely benefit.  For example, RFP No. 7 purports to require Defendants to produce
"all documents" "relating to" "communications" (three already objectionably
overbroad and vague terms) between employees of  very large agencies "relating
to" the "processing" (an undefined term) of certain arriving aliens.  Such an
expansive request is not only disproportionate and burdensome but also overbroad
in that it seeks documents irrelevant to any claim or defense in this case.

Defendants object to the extent that "communications to or from CBP or
DHS" is intended to include all communications between individual CBP officers,
agents, and personnel with their counterparts in other DHS components, in relation
to the transfer, parole, release, or detention of a particular alien.  Such information
has no bearing on the claims at issue in this action and therefore is overbroad and
seeks the discovery of information that is beyond the scope of this lawsuit, is not
relevant to any party's claim or defense, and is not proportional to the needs of this
case.

Defendants object to this Request to the extent that "[a]ll documents relating
to communications…to…CBP or DHS…" is intended to include all

35

communications between Mexican authorities and CBP and/or DHS on the grounds that it seeks the discovery of information that is beyond the scope of this lawsuit, not relevant to any party's claim or defense, and is not proportional to the needs of the case.

Defendants construe the terms "ticketing" or "metering system" as stated by Plaintiffs as vague and ambiguous. Defendants construe these terms as they are commonly used by Defendants in the course of business.

Defendants object to the term "processing," which Plaintiffs do not define, as vague and overly broad. Plaintiffs' definition of processing may encompass actions such as a secondary inspection for agricultural or customs purposes. *See* U.S. DHS PRIVACY IMPACT ASSESSMENT FOR THE TECS SYSTEM: CBP PRIMARY AND SECONDARY PROCESSING at 5 (December 22, 2010), https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-tecs-december2010_0.pdf. Activities like these that may be included in the processing of an alien are outside the scope of this lawsuit. Defendants construe the term "processing" here to refer only to those actions outlined in (a)-(d), (f)-(g) and (i)-(l) above.

Defendants objects to paragraphs (c), (h), (i), (j), (k), and (l) to the extent that they seek information nonspecific to those who may seek protection under 8 U.S.C. § 1158 or express a fear pursuant to 8 U.S.C. § 1225(b).

Defendants additionally object to paragraph (h) in its entirety as not relevant to any party's claims or defenses and as disproportional to the needs of this case because no named Plaintiff alleges that he or she was processed for return to a contiguous country pursuant to Defendants' statutory authority at 8 U.S.C. § 1225(b)(2)(C). This category of information has no bearing on the claims at issue in this action and therefore is overbroad and seeks the discovery of information

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

that is beyond the scope of this lawsuit, is not relevant to any party's claim or defense, and is not proportional to the needs of this case.

Defendants object to this request as a compound request which seeks information through subparts which are not fairly encompassed by the general request.

Defendants object to this request as a compound request which seeks information through subparts which are not fairly encompassed by the general request.

Defendants also object to RFP 7 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-10; Objections to Definitions Nos. 2-6, and 8-10; and, Objections to Instructions No. 1-4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response to Request for Production No. 7**:

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection

37

DEFS.' SECOND AM. AND SUPPL. RESP. TO PLS.' FIRST SET OF REQ. FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

that can be located after a reasonable search.  *See* ECF No. 243 at 16-19.
Defendants will produce the documents on a rolling basis.

## REQUEST FOR PRODUCTION NO. 8:

All documents relating to any statistics, data or other numerical figures,
whether estimates or actual values, representing the number of noncitizens who
have presented themselves to CBP personnel at or near a port of entry on the U.S.-
Mexico border and expressed a desire to seek asylum or a fear of returning to their
countries of origin.

### Objections to Request for Production No. 8:

Defendants object to RFP 8 in that it is disproportionate to the needs of the
case, and the burden and expense of the proposed discovery clearly outweighs the
likely benefit.  For example, RFP No. 8 purports to require Defendants to produce
"all documents" "relating to" "any statistics, data or other numerical figures."
Such an expansive request is not only disproportionate and burdensome but also
overbroad in that it seeks documents irrelevant to any claim or defense in this case.

Defendants object to the term "other numerical figures" as vague and
undefined.  Defendants construe this request as seeking statistics and data, as those
terms are commonly used.

Defendants object to the term "actual values," particularly as opposed to
"estimates," as vague and ambiguous.  Defendants construe this request as seeking
statistics and data, as those terms are commonly used.

Defendants object to the term "presented themselves" as vague and
ambiguous, particularly for purposes of maintaining statistics.  Defendants
construe this request as seeking statistics and data related to aliens who were
inspected by CBP at the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of

38

entry and sought asylum or expressed a fear of return as those terms are commonly understood under 8 U.S.C. §§ 1158 and 1225(b).

Defendants also object to RFP 8 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-7, and 10; Objections to Definitions Nos. 2, 5-6, 8, and 10; and, Objections to Instructions No. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response to Request for Production No. 8:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

**REQUEST FOR PRODUCTION NO. 9:**

All documents relating to any statistics, data or other numerical figures, whether estimates or actual values, representing the number of noncitizens who have presented themselves to CBP personnel at or near a port of entry on the U.S.-

39

Mexico border and expressed a desire to seek asylum or a fear of returning to their
countries or origin, and who were then turned away at or near the port of entry by
CBP personnel who refuse to process them.

**Objections to Request for Production No. 9:**

Defendants object to RFP 9 in that it is disproportionate to the needs of the
case, and the burden and expense of the proposed discovery clearly outweighs the
likely benefit.  For example, RFP No. 9 purports to require Defendants to produce
"all documents" "relating to" "any statistics, data or other numerical figures."
Such an expansive request is not only disproportionate and burdensome but also
overbroad in that it seeks documents irrelevant to any claim or defense in this case.

Defendants object to the term "other numerical figures" as vague and
undefined.  Defendants construe this request as seeking statistics and data, as those
terms are commonly used.

Defendants object to the term "actual values," particularly as opposed to
"estimates," as vague and ambiguous.  Defendants construe this request as seeking
statistics and data, as those terms are commonly used.

Defendants object to the term "presented themselves" as vague and
ambiguous, particularly for purposes of maintaining statistics.  Defendants
construe this request as seeking statistics and data related to aliens who arrived at
the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry and sought asylum
or expressed a fear of return, as those terms are commonly understood under 8
U.S.C. §§ 1158 and 1225(b), in line with the objections herein.

Defendants also object to the terms "turned away" or "refused to process" as
vague and ambiguous. For purposes of responding to this Request, Defendants will
construe the Request to seek statistics and data, to the extent they exist,
representing the number of individuals who sought to enter a port of entry but were

40

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

1  not immediately allowed to do so, although the individual was an arriving alien at a

2  U.S. port of entry. Defendants also object to RFP 9 in accordance with Objections

3  Which Apply to All RFPs Nos. 1, 3-7, and 10; Objections to Definitions Nos. 2, 5-

4  6, 8, and 10; and, Objections to Instructions No. 1, 2, and 4.

5      Consistent with these objections, Defendants construe this request as limited

6  to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of

7  entry.

8  **Response to Request for Production No. 9:**

9      In accordance with Defendants' objections, and in light of the discovery

10  request being disproportional to the needs of the case considering that the burden

11  and expense of the requested discovery outweighs its likely benefit, Defendants

12  will limit their searches to a limited number of custodial and non-custodial sources.

13  Defendants will continue to confer with Plaintiffs in identifying reasonable

14  custodial and non-custodial sources and document identification protocols, but in

15  the event the parties cannot agree, Defendants will limit their searches to the

16  sources identified in Defendants' portion of the supplement to the parties' joint

17  26(f) report from which Defendants will produce all non-privileged documents

18  responsive to this request, dating from January 1, 2016, until the date of collection

19  that can be located after a reasonable search. *See* ECF No. 243 at 16-19.

20  Defendants will produce the documents on a rolling basis.

21  **REQUEST FOR PRODUCTION NO. 10:**

22      All documents relating to any statistics, data or other numerical figures,

23  whether estimates or actual values, representing the numbers of noncitizens who

24  have presented themselves to CBP personnel at or near a port of entry on the U.S.-

25  Mexico border and expressed a desire to seek asylum or a fear of returning to their

26  countries of origin, and whose access to the asylum process was then delayed by

27  41

28

CBP personnel or subject to requirements or conditions not set forth in the INA or other implementing regulations.

### **Objections to Request for Production No. 10:**

Defendants object to RFP 10 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 10 purports to require Defendants to produce "all documents" "relating to" "any statistics, data or other numerical figures." Such an expansive request is not only disproportionate and burdensome but also overbroad in that it seeks documents irrelevant to any claim or defense in this case.

Defendants object to the term "other numerical figures" as vague and undefined. Defendants construe this request as seeking statistics and data, as those terms are commonly used. Defendants will search for statistics and data related to aliens who arrived at a port of entry.

Defendants objects to the term "actual values," particularly as opposed to "estimates," as vague and ambiguous. Defendants construe this request as seeking statistics and data, as those terms are commonly used.

Defendants objects to the term "presented themselves" as vague and ambiguous, particularly for purposes of maintaining statistics. Defendants construe this request, in line with the objections herein, as seeking statistics and data related to aliens who arrived at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry and sought asylum or expressed a fear of return as those terms are commonly understood under 8 U.S.C. §§ 1158 and 1225(b).

Defendants objects to the term "delayed" as vague and ambiguous, particularly for purposes of maintaining statistics. Defendants construe this request as seeking statistics and data related to metering and ticketing, as those terms are commonly used by Defendants in the course of business. Defendants also object to

42

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

RFP 10 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-7,  and
10; Objections to Definitions Nos. 2, 5-6, 8, and 10; and, Objections to Instructions
No. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited
to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of
entry.

**Response to Request for Production No. 10:**

In accordance with Defendants' objections, and in light of the discovery
request being disproportional to the needs of the case considering that the burden
and expense of the requested discovery outweighs its likely benefit, Defendants
will limit their searches to a limited number of custodial and non-custodial sources.
Defendants will continue to confer with Plaintiffs in identifying reasonable
custodial and non-custodial sources and document identification protocols, but in
the event the parties cannot agree, Defendants will limit their searches to the
sources identified in Defendants' portion of the supplement to the parties' joint
26(f) report from which Defendants will produce all non-privileged documents
responsive to this request, dating from January 1, 2016, until the date of collection
that can be located after a reasonable search.  *See* ECF No. 243 at 16-19.
Defendants will produce the documents on a rolling basis.

**REQUEST FOR PRODUCTION NO. 11:**

All documents relating to any statistics, data or other numerical figures,
whether estimates or actual values, representing the number of noncitizens who
have presented themselves to CBP personnel at or near a port of entry on the U.S.-
Mexico border and expressed a desire to seek asylum or a fear of returning to their
countries of origin, and who were then put into removal proceedings pursuant to 8

43

U.S.C. §1229a or referred for credible fear interviews pursuant to 8 U.S.C.
§[1225](b).

### **Objections to Request for Production No. 11:**

Defendants object to RFP 11 in that it is disproportionate to the needs of the
case, and the burden and expense of the proposed discovery clearly outweighs the
likely benefit. For example, RFP No. 11 purports to require Defendants to produce
"all documents" "relating to" "any statistics, data or other numerical figures."
Such an expansive request is not only disproportionate and burdensome but also
overbroad in that it seeks documents irrelevant to any claim or defense in this case.

Defendants object to the term "other numerical figures" as vague and
undefined. Defendants construe this request as seeking statistics and data, as those
terms are commonly used.

Defendants object to the term "actual values," particularly as opposed to
"estimates," as vague and ambiguous. Defendants construe this request as seeking
statistics and data, as those terms are commonly used.

Defendants object to the term "presented themselves" as vague and
ambiguous, particularly for purposes of maintaining statistics. Defendants
construe this request, in line with the objections herein, as seeking statistics and
data related to aliens who arrived at the San Ysidro, Otay Mesa, Laredo, and
Hidalgo ports of entry and sought asylum or expressed a fear of return as those
terms are commonly understood under 8 U.S.C. §§ 1158 and 1225(b).

To the extent that Plaintiffs are seeking information relevant to the claims
and defenses in this case, regarding the number of aliens processed for expedited
removal at ports of entry on the southwest border of the United States and who
express a fear of return, this information is publicly available. *See* Defs' Mot. to
Dismiss, ECF No. 18 at 10-11; *See also* CBP, "Claims of Fear: Southwest Border

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

and Claims of Credible Fear Total Apprehensions/Inadmissibles (FY2017-2018)" *available at* https://www.cbp.gov/newsroom/stats/sw-border-migration/claims-fear (last visited May 8, 2019); CBP, "Southwest Border Inadmissibles by Field Office FY2018," *available at* https://www.cbp.gov/newsroom/stats/sw-border-migration/claims-fear (last visited April 8, 2019). Accordingly, at least some of this discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(2)(C)(i).

Defendants also object to RFP 11 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-7, and 10; Objections to Definitions Nos. 2, 5-6, 8, and 10; and, Objections to Instructions No. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response to Request for Production No. 11:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis. Defendants do not

45

intend to withhold any documents from this production on the grounds that they may also be publicly available.

## REQUEST FOR PRODUCTION NO. 12:

All documents relating to any statistics, data or other numerical figures, whether estimates or actual values, representing the number of noncitizens who cross the U.S.-Mexico border unauthorized but then cross back into Mexico.

### Objections to Request for Production No. 12:

Defendants object to RFP 12 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 12 purports to require Defendants to produce "all documents" "relating to" "any statistics, data or other numerical figures." Such an expansive request is not only disproportionate and burdensome but also overbroad in that it seeks documents irrelevant to any claim or defense in this case.

Defendants object to the term "other numerical figures" as vague and undefined. Defendants construe this request as seeking statistics and data, as those terms are commonly used.

Defendants object to the term "actual values," particularly as opposed to "estimates," as vague and ambiguous. Defendants construe this request as seeking statistics and data, as those terms are commonly used.

Defendants object to the request on the basis that this request is vague and overbroad. Specifically, it is unclear what is meant by "cross the U.S.-Mexico border unauthorized but then cross back into Mexico." Thus, this request lacks sufficient specificity for Defendants to determine its scope.

Defendants additionally object to the request to the extent that it seeks the number of aliens who cross the border illegally, and are not apprehended by the

46

United States Border Patrol.  Such a request is overbroad and seeks the discovery
of information that is beyond the scope of this lawsuit, is not relevant to any
party's claim or defense, and is not proportional to the needs to this case.

To the extent that Plaintiffs are seeking information relevant to the claims
and defenses in this case, regarding the number of aliens who illegally crossed the
southwest border of the United States, this information is publicly available.  *See*
CBP, "Southwest Border Migration FY 2019" *available at*
https://www.cbp.gov/newsroom/stats/sw-border-migration (last visited May 8,
2019).  Accordingly, at least some of this discovery "can be obtained from some
other source that is more convenient, less burdensome, or less expensive[.]"  Fed.
R. Civ. P. 26(b)(2)(C)(i).

Defendants also object to RFP 12 in accordance with Objections Which
Apply to All RFPs Nos. 1, 3-7, and 10; Objections to Definitions Nos. 5-6, 8, and
10; and, Objections to Instructions No. 1, 2, and 4.

**<u>Response to Request for Production No. 12:</u>**

In accordance with Defendants' objections, and in light of the discovery
request being disproportional to the needs of the case considering that the burden
and expense of the requested discovery outweighs its likely benefit, Defendants
will limit their searches to a limited number of custodial and non-custodial sources.
Defendants will continue to confer with Plaintiffs in identifying reasonable
custodial and non-custodial sources and document identification protocols, but in
the event the parties cannot agree, Defendants will limit their searches to the
sources identified in Defendants' portion of the supplement to the parties' joint
26(f) report from which Defendants will produce all non-privileged documents
responsive to this request, dating from January 1, 2016, until the date of collection
that can be located after a reasonable search.  *See* ECF No. 243 at 16-19.

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

Defendants will produce the documents on a rolling basis. Defendants do not intend to withhold any documents from this production on the grounds that they may also be publicly available.

**REQUEST FOR PRODUCTION NO. 13:**

All organizational charts, graphs, lists or other documents that contain information relating to the organizational or operational structure and hierarchies of CBP, including the staffing of individual ports of entry along the U.S.-Mexico border.

**Objections to Request for Production No. 13:**

Defendants object to this request as irrelevant to claims at issue in this action, overbroad, disproportional to the needs of the case and outside the scope of the allegations in the complaint. Specifically, the organizational structure of CBP as a whole is unrelated to the claims at issue in this action. Moreover, the organizational structure of any particular port of entry is not relevant to the claims at issue, which is of a border-wide policy, practice, or procedure. To the extent Plaintiffs wish to seek discovery to establish the existence of such a border-wide policy, practice, or procedure from ports of entry beyond the Laredo, Otay Mesa, San Ysidro, and Hidalgo ports of entry, such request is not proportional to the needs of this case; Defendants should not have to "search for a needle" at 24 ports of entry on the southwest border of the United States to find evidence of what is allegedly a pervasive turnback or deterrence policy that Plaintiffs' claim so well known that it is implemented by hundreds of CBP officers separated by hundreds of miles.

Defendants also object to this request as not proportional to the needs of this case, given that it seeks the organizational structure of the whole agency, which includes more than 60,000 personnel and a host of operations unrelated to

48

Plaintiffs' claims. The time and resources necessary to gather such information are not proportional to Plaintiff's claims, which are related to four ports of entry on the U.S.-Mexico border.

Defendants also object to RFP 13 in accordance with Objections Which Apply to All RFPs Nos. 5-8; Objections to Definitions Nos. 1, and 6-10; and, Objections to Instructions No. 1, 2, and 4.

In line with the objections above, Defendants construe the request as seeking only organizational charts or lists relevant to operations at the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry insofar as those operations relate to aliens arriving or attempting to arrive at these ports of entry.

**Response to Request for Production No. 13:**

In accordance with its objections, Defendants conducted a reasonable search for organizational charts for the relevant offices in DHS; CBP; CBP Office of Field Operations Headquarters; the Laredo, Otay Mesa, San Ysidro, and Hidalgo ports of entry, and the field offices in which those ports of entry are located, and to the extent that responsive material was identified, it was provided on March 29, 2019. *See* CBPALOTRO00000150- CBPALOTRO00000183; *see also* DHSALOTRO00000054- DHSALOTRO00000092.  Defendants subsequently produced additional organizational charts related to CBP.  *See* CBPALOTRO00000184-CBPALOTRO00000275.

**REQUEST FOR PRODUCTION NO. 14:**

All organizational charts, graphs, lists or other documents that contain information relating to the organizational or operational structure and hierarchies of DHS to the extent the documents relate to the relationship or association of DHS with CBP.

49

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

**<u>Objections to Request for Production No. 14:</u>**

Defendants object to this request as irrelevant to claims at issue in this

action, overbroad, disproportional to the needs of the case and outside the scope of

the allegations in the complaint.  Specifically, the organizational structure of DHS

regarding the relationship between DHS and CBP as a whole is unrelated to the

claims and defenses in this case.  Defendants also object to this request as not

proportional to the needs of this case, given that it seeks the relationship between

CBP and DHS as a whole.  In responding to this request, Defendants construe the

request as seeking only documents regarding the relationships between DHS

and/or its subagencies with CBP in relation to the latter's processing of arriving

aliens at the San Ysidro, Otay Mesa, Laredo, or Hidalgo ports of entry.

Defendants object to the production of any other charts, graphs, or lists that would

pertain to sections of DHS and CBP as burdensome and disproportional because

they are not relevant to the claims and defenses in this case.  Seeking the

organizational structure of DHS as whole is not proportional to the needs of this

case because it includes at least 240,000 employees and a host of operations

unrelated to the claims and defenses in this case.

Defendants also object to RFP 14 in accordance with Objections Which

Apply to All RFPs No. 1 and 7-10; Objections to Definitions Nos. 2-3, 5-6, 8, and

10; and, Objections to Instructions No. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited

to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of

entry.

**<u>Response to Request for Production No. 14:</u>**

In accordance with their objections, Defendants conducted a reasonable

search for organizational charts for the relevant offices in DHS and CBP, as set

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

forth in its response to RFP No. 13; to the extent that responsive material was identified, it was provided on March 29, 2019. *See* CBPALOTRO00000150-CBPALOTRO00000183; *see also* DHSALOTRO00000054-DHSALOTRO00000092. Defendants subsequently produced additional organizational charts related to CBP. *See* CBPALOTRO00000184-CBPALOTRO00000275.

**REQUEST FOR PRODUCTION NO. 15:**

All documents relating to Plaintiffs, including complete copies of their A-files; and Forms I-275, Forms I-867 or Forms I-860 completed by or issued to any Plaintiff; or any surveillance or other video footage relating to any Plaintiff.

**Objections to Request for Production No. 15:**

Defendants object to producing A-files for the named Plaintiffs absent specific waivers from the Plaintiffs in line with the Objections Which Apply to All RFPs No. 9. Plaintiffs' privacy is protected by numerous statutes and regulations governing disclosure of information about aliens, and imposes further restrictions on dissemination of information relating to aliens seeking asylum or other forms of relief and protection under the Immigration and Nationality Act.

In light of the highly-sensitive law enforcement operations conducted at the nation's ports of entry, Defendants object to providing copies to Plaintiffs of any surveillance or other video footage of the named Plaintiffs.

Defendants also object to RFP 15 in accordance with Objections Which Apply to All RFPs No. 1 and 7-10; Objections to Definitions Nos. 5-6, and 8-10; and, Objections to Instructions No. 1, 2, and 4.

**Response to Request for Production No. 15:**

51

In accordance with its objections, Defendants will provide nonprivileged portions of the A-files for the named Plaintiffs once counsel for Plaintiffs provides the required signed waivers.

Defendants will arrange for viewing of surveillance and other video footage of Plaintiffs' processing in its possession upon request from Plaintiffs' counsel.

## REQUEST FOR PRODUCTION NO. 16:

All documents relating to any and all mechanisms or procedures used by DHS or CBP to track CBP personnel's compliance with any policies, procedures, recommendations or guidelines on the processing of noncitizens arriving at or near a port of entry on the U.S.-Mexico border who express a desire to seek asylum or express a fear of returning to their countries of origin.

### Objections to Request for Production No. 16:

Defendants object to RFP 16 in that it is overly broad, disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 16 purports to require Defendants to produce "all documents" "relating to" "any and all" "mechanisms and procedures." Taken together, this request is not only disproportionate and burdensome but also overbroad in that it seeks documents irrelevant to any claim or defense in this case.

Defendants object to the terms "mechanisms," "procedures," and "track" as vague and ambiguous. Defendants construe these terms to mean statistics, policies or procedures which relate to monitoring CBP officers' compliance with agency policy.

52

Defendants object to the term "recommendations," as it relates to the processing of individuals, as vague and ambiguous, since such a term connotes an optional action rather than a requirement.

In addition, Defendants object to this request on the ground that it seeks discovery of information that is beyond the scope of this lawsuit and not proportional to the needs of this case. *See e.g.*, Fed. R. Civ. P. 26(b)(1). For example, "processing" may encompass actions such as a secondary inspection for agricultural or customs purposes. *See* U.S. DHS PRIVACY IMPACT ASSESSMENT FOR THE TECS SYSTEM: CBP PRIMARY AND SECONDARY PROCESSING at 5 (December 22, 2010), https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-tecs-december2010_0.pdf. Compliance with such activities is outside the scope of this lawsuit.

Defendants also object to RFP 16 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-10; Objections to Definitions Nos. 2-3, 5-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

### Response to Request for Production No. 16:

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the

sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

To the extent that Plaintiffs seek information from DHS OIG, this part of DHS is an independent and objective unit operating within DHS whose duty it is to detect and combat waste, fraud, and abuse in DHS programs and operations. DHS OIG has agreed to search for material potentially responsive to this request. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols relating to documents from DHS OIG. To the extent DHS OIG determines that potentially responsive materials may not be produced in whole or in part, it will provide authority for such determination in a response, privilege log, or on any documents produced.

## REQUEST FOR PRODUCTION NO. 17:

All documents relating to any and all mechanisms or procedures used by DHS or CBP to receive, review, track or respond to complaints against or concerning CBP personnel relating to the processing of noncitizens arriving at or near a port of entry on the U.S. Mexico border who express a desire to seek asylum or express a fear of returning to their countries or origin.

### Objections to Request for Production No. 17:

Defendants object to RFP 17 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 17 purports to require Defendants to produce

54

"all documents" "relating to" "any and all" "mechanisms and procedures." Taking these vague and expansive terms together, this request is not only disproportionate and burdensome but also overbroad in that it seeks documents irrelevant to any claim or defense in this case.

Defendants object to the terms "mechanisms," "procedures," and "track" as vague and ambiguous. Defendants will construe these terms to mean statistics, policies or procedures which relate to monitoring complaints against CBP employees.

In addition, Defendants object to this request on the ground that it seeks discovery of information that is beyond the scope of this lawsuit and not proportional to the needs of this case. *See e.g.*, Fed. R. Civ. P. 26(b)(1). For example, "processing" may encompass actions such as a secondary inspection for agricultural or customs purposes. *See* U.S. DHS PRIVACY IMPACT ASSESSMENT FOR THE TECS SYSTEM: CBP PRIMARY AND SECONDARY PROCESSING at 5 (December 22, 2010), https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-tecs-december2010_0.pdf. Such activities are outside the scope of this lawsuit.

Defendants also object to RFP 17 in accordance with Objections Which Apply to All RFPs Nos. 1 and 3-10; Objections to Definitions Nos. 2-3, 5-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response to Request for Production No. 17:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden

55

and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

To the extent that Plaintiffs seek information from DHS OIG, this part of DHS is an independent and objective unit operating within DHS whose duty it is to detect and combat waste, fraud, and abuse in DHS programs and operations. DHS OIG has agreed to search for material potentially responsive to this request. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols relating to documents from DHS OIG. To the extent DHS OIG determines that potentially responsive materials may not be produced in whole or in part, it will provide authority for such determination in a response, privilege log, or on any documents produced.

## REQUEST FOR PRODUCTION NO. 18:

All documents relating to any and all complaints against or concerning CBP personnel received by DHS or CBP, including, but not limited to, the Office of Inspector General and the Office for Civil Rights and Civil Liberties, relating to the processing of noncitizens arriving at or near a port of entry on the U.S.-Mexico

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

border who express a desire to seek asylum or express a fear of returning to their
countries of origin.

### Objections to Request for Production No. 18:

Defendants object to RFP 18 in that it is disproportionate to the needs of the
case, and the burden and expense of the proposed discovery clearly outweighs the
likely benefit.  For example, RFP No. 18 purports to require Defendants to produce
"all documents" "relating to" "any and all" complaints" "against or concerning"
CBP personnel.  Taking these vague and expansive terms together, this request is
not only disproportionate and burdensome but also overbroad in that it seeks
documents irrelevant to any claim or defense in this case.

In addition, Defendants object to this request on the ground that it seeks
discovery of information that is beyond the scope of this lawsuit and not
proportional to the needs of this case.  *See e.g.*, Fed. R. Civ. P. 26(b)(1).  For
example, "processing" may encompass actions such as a secondary inspection for
agricultural or customs purposes.  *See* U.S. DHS PRIVACY IMPACT ASSESSMENT
FOR THE TECS SYSTEM: CBP PRIMARY AND SECONDARY PROCESSING at 5
(December 22, 2010), https://www.dhs.gov/sites/default/files/publications/privacy-
pia-cbp-tecs-december2010_0.pdf.  Such activities are outside the scope of this
lawsuit.

Defendants also object to RFP 18 in accordance with Objections Which
Apply to All RFPs Nos. 1 and 3-10; Objections to Definitions Nos. 2-3, 5-6, and 8-
10; and, Objections to Instructions Nos. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited
to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of
entry.

### Response to Request for Production No. 18:

57

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

To the extent that Plaintiffs seek information from DHS OIG, this part of DHS is an independent and objective unit operating within DHS whose duty it is to detect and combat waste, fraud, and abuse in DHS programs and operations. DHS OIG has agreed to search for material potentially responsive to this request. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols relating to documents from DHS OIG. To the extent DHS OIG determines that potentially responsive materials may not be produced in whole or in part, it will provide authority for such determination in a response, privilege log, or on any documents produced.

**REQUEST FOR PRODUCTION NO. 19:**

All documents relating to any and all policies, procedures, criteria or standards used by CBP or DHS to discipline CBP personnel who fail to follow

58

proper policy or procedure relating to the processing of noncitizens arriving at or near a port of entry on the U.S.-Mexico border who express a desire to seek asylum or express a fear of returning to their countries of origin.

### **Objections to Request for Production No. 19:**

Defendants object to RFP 19 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 19 purports to require Defendants to produce "all documents" "relating to" "any and all" "policies, procedures, criteria, or standards." Taken together, the breadth of these terms and the corresponding search they demand is unreasonable. Such an expansive request is not only disproportionate and burdensome but also overbroad in that it seeks documents irrelevant to any claim or defense in this case.

In addition, Defendants object to this request on the ground that it seeks discovery of information that is beyond the scope of this lawsuit and not proportional to the needs of this case. *See e.g.*, Fed. R. Civ. P. 26(b)(1). For example, "processing" may encompass actions such as a secondary inspection for agricultural or customs purposes. *See* U.S. DHS PRIVACY IMPACT ASSESSMENT FOR THE TECS SYSTEM: CBP PRIMARY AND SECONDARY PROCESSING at 5 (December 22, 2010), https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-tecs-december2010_0.pdf. Such activities are outside the scope of this lawsuit.

Defendants also object to RFP 19 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-10; Objections to Definitions Nos. 2-3, 5-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

59

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response to Request for Production No. 19:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

To the extent that Plaintiffs seek information from DHS OIG, this part of DHS is an independent and objective unit operating within DHS whose duty it is to detect and combat waste, fraud, and abuse in DHS programs and operations. DHS OIG has agreed to search for material potentially responsive to this request. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols relating to documents from DHS OIG. To the extent DHS OIG determines that potentially responsive materials may not be produced in whole or in part, it will provide authority for such determination in a response, privilege log, or on any documents produced.

60

**REQUEST FOR PRODUCTION NO. 20:**

All documents relating to any and all disciplinary action taken by CBP or DHS against CBP personnel who fail to follow proper policy or procedure relating to the processing of noncitizens arriving at or near a port of entry on the U.S.-Mexico border who express a desire to seek asylum or express a fear or returning to their countries of origin. For the avoidance of doubt, at this time, Plaintiff's do not, through this request, seek individual personnel information that is protected from disclosure by applicable state or federal law. Defendant may redact identifying information from responsive documents to ensure that employee rights of confidentiality are preserved.

**Objections to Request for Production No. 20:**

Defendants object to RFP 20 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 20 purports to require Defendants to produce "all documents" "relating to" "any and all" "policies, procedures, criteria or standards" for disciplinary action. Such an expansive request is not only disproportionate and burdensome but also overbroad in that it seeks documents irrelevant to any claim or defense in this case.

In addition, Defendants object to this request on the ground that it seeks discovery of information that is beyond the scope of this lawsuit and not proportional to the needs of this case. *See e.g.*, Fed. R. Civ. P. 26(b)(1). For example, "processing" may encompass actions such as a secondary inspection for agricultural or customs purposes. *See* U.S. DHS PRIVACY IMPACT ASSESSMENT FOR THE TECS SYSTEM: CBP PRIMARY AND SECONDARY PROCESSING at 5 (December 22, 2010), https://www.dhs.gov/sites/default/files/publications/privacy-

61

pia-cbp-tecs-december2010_0.pdf.  Such activities are outside the scope of this lawsuit.

Defendants also object to RFP 20 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-10; Objections to Definitions Nos. 2-3, 5-6, 8, and 10; and Objections to Instructions Nos. 1-4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response to Request for Production No. 20:**

DHS responds that it does not normally possess disciplinary records for CBP employees.  Such records would be in the possession and under the control of CBP.

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search.  *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

**REQUEST FOR PRODUCTION NO. 21:**

All documents relating to, or issued by CBP or DHS pursuant to Executive Order 13767, entitled "Border Security and Immigration Enforcement Improvements," signed by President Donald J. Trump on January 25, 2017 (the Executive Order"), including all documents relating to compliance by CBP or DHS with the Executive Order.

**Objections to Request for Production No. 21:**

Defendants object to RFP 21 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 21 purports to require Defendants to produce "all documents" "relating to" or "issued by" CBP or DHS related to Executive Order 13767. Such an expansive request is not only disproportionate and burdensome but also overbroad in that it seeks documents irrelevant to any claim or defense in this case.

Defendants object to this request on the basis that it seeks discovery of information not related to the claims at issue in this action. Specifically, the Executive Order addresses a wide variety of issues related to immigration enforcement, many of which are beyond the scope of this litigation, including the detention and parole of aliens, the treatment of unaccompanied alien children, and additional actions needed to strengthen immigration enforcement at the U.S.-Mexico border. These issues are unrelated to the claims at issue in this action. Therefore, for purposes of this response, Defendants construe this request to apply only to documents relating to the processing of "arriving aliens" seeking protection consistent with 8 U.S.C. § 1158 and 1225(b) at the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

63

1    Defendants also object to RFP 21 in accordance with Objections Which

2  Apply to All RFPs Nos. 1, 6-10; Objections to Definitions Nos. 2-3, 5-6, and 8-10;

3  and, Objections to Instructions No. 1, 2, and 4.

4    Consistent with these objections, Defendants construe this request as limited

5  to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of

6  entry.

7    **Response to Request for Production No. 21**:

8    In accordance with Defendants' objections, and in light of the discovery

9  request being disproportional to the needs of the case considering that the burden

10  and expense of the requested discovery outweighs its likely benefit, Defendants

11  will limit their searches to a limited number of custodial and non-custodial sources.

12  Defendants will continue to confer with Plaintiffs in identifying reasonable

13  custodial and non-custodial sources and document identification protocols, but in

14  the event the parties cannot agree, Defendants will limit their searches to the

15  sources identified in Defendants' portion of the supplement to the parties' joint

16  26(f) report from which Defendants will produce all non-privileged documents

17  responsive to this request, dating from January 1, 2016, until the date of collection

18  that can be located after a reasonable search. *See* ECF No. 243 at 16-19.

19  Defendants will produce the documents on a rolling basis.

20  **REQUEST FOR PRODUCTION NO. 22:**

21

22    All documents relating to, or issued by CBP or DHS pursuant to, the

23  memorandum entitled "Implementing the President's Border Security and

24  Immigration Enforcement Improvement Policies," issued by DHS on February 20,

25  2017 (the "Memorandum"), including all documents relating to compliance by

26  CBP or DHS with the Memorandum.

27                                    64

28                    DEFS.' SECOND AM. AND SUPPL.
                      RESP. TO PLS.' FIRST SET OF REQ.
                      FOR PRODUC.
                       Case No. 3:17-cv-2366-BAS-KSC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

65

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

**Objections to Request for Production No. 22:**

Defendants object to RFP 22 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 22 purports to require Defendants to produce "all documents" "relating to" or "issued by" CBP or DHS related to Executive Order 13767. Such an expansive request is not only disproportionate and burdensome but also overbroad in that it seeks documents irrelevant to any claim or defense in this case.

Defendants object to this request on the basis that it seeks discovery of information not related to the claims at issue in this action. Specifically, the Memorandum addresses all of the issues identified in the Executive Order, many of which are beyond the scope of this litigation, including the detention and parole of aliens, the treatment of unaccompanied alien children, and additional actions needed to strengthen immigration enforcement at the U.S.-Mexico border. These issues are unrelated to the claims at issue in this action. Defendants further object to this request as disproportional to the needs of this case. The time and resources necessary to gather all documents related to CBP's implementation of Executive Order 13767 and the Memorandum is not proportional to the needs of this case, which is related solely to claims from arriving aliens seeking protection consistent with 8 U.S.C. §§ 1158 and 1225(b) at four ports of entry along the U.S./Mexico border.

Therefore, for purposes of these responses, Defendants will respond to the request only so far as it seeks documents specifically relating to compliance by DHS or CBP with any directives regarding the processing of arriving aliens seeking protection consistent with 8 U.S.C. §§ 1158 and 1225(b) at four ports of

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

entry along the U.S./Mexico border (San Ysidro, Otay Mesa, Laredo, and
Hidalgo).

Defendants also object to RFP 22 in accordance with Objections Which
Apply to All RFPs Nos. 1 and 6-10; Objections to Definitions Nos. 2-3, 5-6, and 8-
10; and, Objections to Instructions Nos. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited
to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of
entry.

67

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

**Response to Request for Production No. 22:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

**REQUEST FOR PRODUCTION NO. 23:**

All documents relating to, or issued by CBP or DHS pursuant to, the statement entitled "Statement from the Press Secretary on the Decline in Southwest Border Apprehensions," released by the White House Office of the Press Secretary on April 5, 2017.

**Objections to Request for Production No. 23:**

Defendants object to RFP 23 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 23 purports to require Defendants to produce "all documents" "relating to" or "issued by" CBP or DHS related to the "Statement from the Press Secretary on the Decline in Southwest Border Apprehensions."

68

Such an expansive request is not only disproportionate and burdensome but also overbroad in that it seeks documents irrelevant to any claim or defense in this case.

Defendants object to this request on the basis that it seeks discovery of information not related to the claims at issue in this action and is thus irrelevant. Specifically, the number of apprehensions on the US.-Mexico border is not relevant to the claims at issue in this action, which is related solely to claims from arriving aliens seeking protection consistent with 8 U.S.C. §§ 1158 and 1225(b) at four ports of entry along the Mexico/U.S. border.

Therefore, for purposes of these responses, Defendants will respond to the request only so far as it seeks documents specifically relating to compliance by DHS or CBP with any directives regarding the processing of arriving aliens seeking protection consistent with 8 U.S.C. §§ 1158 and 1225(b) at four ports of entry along the U.S./Mexico border (San Ysidro, Otay Mesa, Laredo, and Hidalgo).

Defendants also object to RFP 23 in accordance with Objections Which Apply to All RFPs Nos. 1, 6-10; Objections to Definitions Nos. 2-3, 5-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

**Response to Request for Production No. 23:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint

69

26(f) report from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search. *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

## REQUEST FOR PRODUCTION NO. 24:

All documents relating to any statements released by the White House relating to noncitizens arriving at or near a port of entry on the U.S.-Mexico border who express a desire to seek asylum or express a fear of returning to their countries or origin.

### Objections to Request for Production No. 24:

Defendants object to RFP 24 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 24 purports to require Defendants to produce "any statements released by the White House relating to noncitizens" seeking asylum. Such an expansive request is not only disproportionate and burdensome but also overbroad in that it seeks documents irrelevant to any claim or defense in this case.

Defendants object to this request on the basis that it seeks discovery of information not related to the claims at issue in this action, and is therefore irrelevant.

Defendants object to the terms "any statements" and "by the White House" as vague and overly broad. Without a time frame or identification of a specific release/statement, it is unclear what sort of documents Plaintiffs seek and what documents could be interpreted as coming within the scope of this request. It would be unduly burdensome on Defendants to scour any and all sources (press

70

releases, news articles, social media statements, etc.) for any and all statements of all members of the "White House" (the President, his staff, etc.) that might have touched on arriving aliens since January 1, 2016 and then to scour all agency records to identify whether there could be any link between them.

Defendants also object to RFP 24 in accordance with Objections Which Apply to All RFPs No. 1, 3-10 and Objections to Definitions Nos. 5-6, 8, and 10.

**Response to Request for Production No. 24:**

In accordance with their objections, Defendants will not produce any discovery responsive to this request.

**REQUEST FOR PRODUCTION NO. 25:**

All surveillance video footage relating to any investigation conducted by DHS, CBP or the Office of the Inspector General relating to noncitizens arriving at or near a port of entry on the U.S.-Mexico border who express a desire to seek asylum or express a fear or returning to their countries of origin.

**Objections to Request for Production No. 25:**

Defendants object to RFP 25 in that it is disproportionate to the needs of the case, and the burden and expense of the proposed discovery clearly outweighs the likely benefit. For example, RFP No. 25 purports to require Defendants to produce "all surveillance video footage relating to any investigation conducted by" the Defendants or "the Office of Inspector General relating to" those seeking asylum. Such an expansive request is not only disproportionate and burdensome but also overbroad in that it seeks documents irrelevant to any claim or defense in this case. To the extent that Plaintiffs seek information from DHS OIG, this part of DHS is an independent and objective unit operating within DHS whose duty it is to detect and combat waste, fraud, and abuse in DHS programs and operations. DHS OIG

71

has agreed to search for material potentially responsive to this request.  Defendants

will continue to confer with Plaintiffs in identifying reasonable custodial and non-

custodial sources and document identification protocols relating to documents from

DHS OIG.  To the extent DHS OIG determines that potentially responsive

materials may not be produced in whole or in part, it will provide authority for

such determination in a response, privilege log, or on any documents produced.

Defendants further object to this request to the extent that it seeks

information which would impinge upon the privacy rights or impinge the

protection rights of individuals who are seeking protection under 8 U.S.C. §§ 1158,

1225(b), or any other applicable statute.

Defendants further object to producing "[a]ll video surveillance footage

RELATING TO any investigation conducted by DHS" because coordination with

subordinate agencies whose work is not related to immigration, such as FEMA or

the U.S. Coast Guard, is not relevant or proportional to the needs of the case.

Defendants also object to this request to the extent it is irrelevant, overbroad,

vague, and ambiguous.  It is unclear what "investigation" entails and Plaintiffs

have not provided a definition.  It is not clear whether Plaintiffs intended for

"investigation" to include every encounter at the four ports of entry (consistent

with Defendants' limitation as stated in the general objection) where any employee

of any subcomponent of DHS and/or CBP questioned an arriving alien, or whether

it refers to formal or informal inquiries conducted by DHS and/or CBP or their

subcomponents in response to allegations of misconduct regarding the processing

of arriving aliens at these four ports of entry.  The former interpretation of

"investigation" would place an undue burden on Defendants in light of the

incredibly large number of hours of video footage captured every day at every port

of entry, the time consuming process of reviewing video footage to identify

72

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

responsive encounters, the hours required to determine what protections and/or privileges might apply to production, the excessive time and cost required to produce such footage, technical limitations, and the failure of Plaintiffs to limit this request to manageable periods of time.  Thus, for purposes of this response, Defendants construe "investigation" to refer only to a formal investigation into allegations of misconduct by CPB officers at the Laredo, Otay Mesa, San Ysidro, or Hidalgo ports of entry since January 1, 2016.

Defendants also object to RFP 25 in accordance with Objections Which Apply to All RFPs Nos. 1 and 3-10; Objections to Definitions Nos. 2-3, 5-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

Consistent with these objections, Defendants construe this request as limited to documents concerning the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response to Request for Production No. 25:**

In accordance with Defendants' objections, and in light of the discovery request being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their searches to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, but in the event the parties cannot agree, Defendants will limit their searches to the sources identified in Defendants' portion of the supplement to the parties' joint 26(f) report  from which Defendants will produce all non-privileged documents responsive to this request, dating from January 1, 2016, until the date of collection that can be located after a reasonable search.  *See* ECF No. 243 at 16-19. Defendants will produce the documents on a rolling basis.

73

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

To the extent that Plaintiffs seek information from DHS OIG, this part of DHS is an independent and objective unit operating within DHS whose duty it is to detect and combat waste, fraud, and abuse in DHS programs and operations. DHS OIG has agreed to search for material potentially responsive to this request. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols relating to documents from DHS OIG.  To the extent DHS OIG determines that potentially responsive materials may not be produced in whole or in part, it will provide authority for such determination in a response, privilege log, or on any documents produced.

Respectfully submitted this 9th day of May, 2019.

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director

GISELA A. WESTWATER
Assistant Director

KATHERINE SHINNERS
Senior Litigation Counsel

ALEXANDER J. HALASKA
Trial Attorney

By: */s/ Sairah G. Saeed*
SAIRAH G. SAEED
Trial Attorney
United States Department of Justice

74

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-4067
Facsimile: (202) 305-7000
Email: sairah.g.saeed@usdoj.gov

*Counsel for Defendants*

75

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC

## <u>CERTIFICATE OF SERVICE</u>

Case No. 3:17-cv-02366-BAS-KSCI certify that on May 9, 2019, I served a copy of the foregoing by electronic mail to the attorneys of record.


*/s/ Sairah G. Saeed*
SAIRAH G. SAEED
Trial Attorney

DEFS.' SECOND AM. AND SUPPL.
RESP. TO PLS.' FIRST SET OF REQ.
FOR PRODUC.
 Case No. 3:17-cv-2366-BAS-KSC