# Defendants' Exhibit 2

Defendants' First Amended and Supplemented Objections and Responses to Plaintiffs' Second Set of Requests for Production to All Defendants

JOSEPH H. HUNT
Assistant Attorney General, Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
GISELA A. WESTWATER (NE 21801)
Assistant Director
SAIRAH G. SAEED (IL 6290644)
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorneys
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation – District
Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259 | Fax: (202) 305-7000
katherine.j.shinners@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> Kevin K. McAleenan,[1] Acting Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*, <br><br> *Defendants* | Case No. 3:17-cv-02366-BAS-KSC <br><br> **DEFENDANTS' FIRST AMENDED AND SUPPLEMENTED OBJECTIONS AND RESPONSES TO PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION TO ALL DEFENDANTS** |

---

[1] Acting Secretary McAleenan is automatically substituted for Secretary Nielsen pursuant to Federal Rule of Civil Procedure 25(d).

Pursuant to Federal Rule of Civil Procedure 34, Defendants Kevin K. McAleenan, Acting Secretary of the Department of Homeland Security ("DHS"); Kevin K. McAleenan, Commissioner, U.S. Customs and Border Protection ("CBP"); and Todd C. Owen, CBP Executive Assistant Commissioner, Office of Field Operations ("OFO"), all in their official capacities, hereby submit amended and supplemented responses and objections to Plaintiffs' Second Set of Requests for Production to All Defendants (Nos. 26–109) ("RFPs" or "Requests").

Defendants' objections are based on the information known to Defendants at this time and are made without prejudice to assertion of additional objections should Defendants identify additional grounds for objection. Defendants specifically reserve the right to amend, supplement, clarify, revise, or correct any or all of their responses to these Requests. By responding to these Requests, Defendants do not waive, and specifically preserve, their right to assert any and all objections to the admissibility of any documents on any and all grounds, including, but not limited to, competency, relevance, materiality, and privilege. Furthermore, Defendants respond herein without in any manner admitting or implying that Plaintiffs' Requests (or Defendants' responses) are relevant to any party's claim or defense or proportionate to the needs of the case. None of Defendants' responses herein should be construed or understood as an admission or denial of any legal or factual, nor any agreement with Plaintiffs' characterization of any legal or factual issues.

## OBJECTIONS WHICH APPLY TO ALL REQUESTS FOR PRODUCTION

1.     Defendants object to these Requests (and all discovery requests) as facially improper in this Administrative Procedure Act ("APA") case.  Defendants continue to maintain, as briefed in their pending Motion to Dismiss (ECF Nos. 192 & 238) and in their portion of the 26(f) report (ECF No. 239), and supplement (ECF No. 243), that Plaintiffs' claims should be decided on the administrative record without discovery.  "[I]t is black-letter administrative law that in an APA case, a reviewing court 'should have before it neither more nor less information than did the

agency when it made its decision.'" *Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013) (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)); *First Nat. Bank & Trust v. Dep't of Treasury*, 63 F.3d 894, 897 (9th Cir. 1995) ("Generally, judicial review of an agency decision is limited to the administrative record." (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). These Requests are proper only to the extent they seek information that is absolutely necessary "to ascertain the contours of the precise policy at issue," *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 530 F.3d 925, 928 (D.C. Cir. 2008), and only to the extent they request the information the agency had before it when it made its decision, *Hill Dermaceuticals, Inc.*, 709 F.3d at 47. Thus, Defendants continue to maintain that discovery of the type Plaintiffs seek is improper, and if this case is not dismissed in its entirety, it should be decided on the relevant administrative record. Defendants assert this objection to preserve it pending a ruling on their Motion to Dismiss. At this time, this objection serves as a limiting principle on the parameters of Defendants' search for responsive documents, the contours of which are being contemporaneously negotiated with Plaintiffs; Defendants are not withholding any responsive documents collected as a result of that search from their production or privilege log on the basis of this objection alone.

2.      Moreover, any Request that seeks information relating to any DHS or CBP employee's subjective intentions or motivations, including the named Defendants', is facially improper. The Supreme Court has long recognized that "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government." *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 268 n. 18 (1977). In part for that reason, the Court has "made it abundantly clear" that APA review must focus only on the contemporaneous explanation of the agency decision" that the agency chooses to rest upon. *Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 549 (1978). "When a party challenges agency action as

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

arbitrary and capricious the reasonableness of the agency's action is judged in accordance with its *stated* reasons." *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 156 F.3d 1279, 1279 (D.C. Cir. 1998) (emphasis added) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S 402 (1971)). Unless intent is an element of a party's claims or defenses—which, in this case, it is not—"the actual subjective motivation of agency decisionmakers is immaterial as a matter of law," *id.* at 1280, and therefore not properly discoverable. Accordingly, as set forth in their specific objections and responses, Defendants will not search for, produce, or log any documents in response to Plaintiffs' requests that concern solely what Plaintiffs allege to be the named Defendants' or DHS or CBP employees' subjective intentions or motivations that have no apparent connection to the existence or contours of a policy or practice claimed to be at issue. This objection also serves as a limiting principle on the parameters of Defendants' search for responsive documents, the contours of which are being contemporaneously negotiated with Plaintiffs.

   3.    Defendants object to the use of the term "noncitizen," as this term is overly broad, vague and ambiguous. Specifically, the term "noncitizen" is a term proposed by Plaintiffs and not used by Defendants, and Plaintiffs do not provide a definition of what this term means. "Noncitizen" is not specific to the United States.  That is, it is not limited to those individuals who are not citizens of the United States and could encompass individuals who are not citizens of other nations. Therefore, for the purpose of responding to these Requests, Defendants understand and construe the term "noncitizen," in the context of these discovery requests, to mean "alien," as defined in 8 U.S.C. § 1101(a)(3), and such construction is reflected in all of Defendants' responses and any corresponding production or privilege log.

   4.    Defendants object to the terms and phrases "seek asylum," "have a fear," "expressing a desire to seek asylum," "expressing a fear of returning to their

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

countries of origin," and "present themselves," as these terms and phrases are vague and ambiguous, are not defined by Plaintiffs, and potentially can be construed as referring to actions or statements other than those described in 8 U.S.C. §§ 1158 and 1225(b). For purposes of responding to these RFPs, Defendants understand and construe these terms and phrases as referring to actions consistent with 8 U.S.C. §§ 1158 and 1225(b). Such construction is reflected in all of Defendants' responses and any corresponding production or privilege log; Defendants are not, however, withholding documents on the basis of this objection.

5.    Defendants object to the phrase "near ports of entry" on the basis that this phrase is overbroad and seeks discovery beyond the scope of this lawsuit. For example, this phrase could be construed as referring to actions occurring between ports of entry, which are not relevant to any party's claims or defenses in this case. The claims in this action relate only to aliens who allegedly sought to enter the United States at one of four ports of entry (Laredo, Otay Mesa, San Ysidro, and Hidalgo) but were not immediately allowed to do so. Defendants therefore object to the extent that any Request seeks information beyond the claims raised by individual Plaintiffs in this action because such discovery would also be disproportional to the needs of the case. Relatedly, such discovery would be unduly burdensome and disproportional to the needs of the case. Therefore, for purposes of their responses, Defendants will only search for and produce relevant and non-privileged documents relating to aliens arriving at "ports of entry" and Defendants' responses to each and every Request will be limited consistent with this objection.

6.    Defendants object to each and every Request to the extent it requests or appears to request information related to all ports of entry along the U.S.-Mexico border as not proportional to the needs of the case, overly broad, and unduly burdensome. The Court's Order directs the parties to "prioritize discovery necessary for a motion for class certification[.]" ECF No. 196 at 2. "The class action is 'an

exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'  In order to justify a departure from that rule, 'a class representative must be part of the class and possess the same interest and suffer the same injury as class members.'"  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979), and *East Tex. Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 208, 216 (1974)).  The putative class representatives allege that they applied for admission or attempted to apply for admission at only the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.  Thus, even assuming for argument's sake that the Court certifies the broadest possible class the representative parties might be legally permitted to represent, the individual plaintiffs still cannot challenge actions taken at other ports of entry, because those plaintiffs are not part of a class of individuals who applied for admission or attempted to apply for admission at such ports and do not "possess the same interest and suffer the same injury as those individuals."  *Wal-Mart Stores, Inc.*, 564 U.S. at 348-49.  The challenges in this action are thus limited to policies issued and actions taken by the headquarters portions of the Office of Field Operations and actions that occurred at the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry, and any Requests that go beyond the scope of the specific claims and allegations at issue are legally improper and thus irrelevant.

Further, the burden of searching for, collecting, reviewing, and producing documents related to all ports of entry along the U.S.-Mexico border would be unduly burdensome and disproportional to the needs of the case.  Plaintiffs allege a border-wide practice, policy, and/or procedure; discovery from the four ports of entry where the named Plaintiffs allegedly encountered such a practice, policy, and/or procedure (or a subset thereof), in addition to discovery from select higher-level officials and centralized non-custodial sources, satisfies the needs of the case, as any evidence of such a border-wide practice, policy, and/or procedure, if it exists, would necessarily be found in such locations. Any discovery from other ports of

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

entry along the U.S.-Mexico border would thus be either irrelevant or duplicative and unduly burdensome.

In light of these issues, Defendants therefore understand and construe these Requests as seeking discovery limited to headquarters portions of the Office of Field Operations and the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry, and will search for and produce only relevant and non-privileged documents relating to aliens arriving or attempting to arrive at these four ports of entry, and documents from Office of Field Operations Headquarters. Defendants' responses to each and every Request, and their corresponding production and privilege log, will be limited consistent with this general objection. This objection also serves as a limiting principle on the parameters of Defendants' search for responsive documents, the contours of which are being contemporaneously negotiated with Plaintiffs.

7.    Defendants object to the Requests to the extent that they seek: (a) attorney work product, trial preparation materials, or communications that are protected by the attorney-client privilege, (b) documents that are protected by the deliberative process privilege, the joint defense privilege, the common interest privilege, the law enforcement privilege (and/or as law enforcement sensitive), the official information privilege, the executive privilege, the investigatory files privilege, the self-critical analysis privilege, the *Machin* privilege; (c) documents that, if produced would violate the legitimate privacy interests and expectations of persons who are not party to this litigation; or (d) documents to which any other privilege applies.

Defendants will assert privileges specific to each request in their privilege log, on the production itself, or in their response to the request and Defendants agree to meet and confer regarding privilege objections to which Plaintiffs assert objections. Documents generated after the filing of Plaintiffs' initial Complaint in this action representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

8.     Defendants object to producing confidential, sensitive, or personally-identifying information prior to the entry of an order protecting that information from disclosure.

9.     Defendants object to each and every Request to the extent that it seeks information protected from disclosure by statutes, regulations, or directives regarding the protection of privacy, confidential information, or medical information, or under statutes and regulations prohibiting disclosure of information related to individual aliens—including, but not limited to, 8 U.S.C. § 1160(b)(5), (6); 8 U.S.C. § 1186a(c)(4); 8 U.S.C. § 1202(f); 8 U.S.C. § 1254a(c)(6), 8 U.S.C. § 1255a(c)(4), (5); 8 U.S.C. § 1304(b); 8 U.S.C. § 1367; 22 U.S.C. § 7105(c)(1)(C); 8 C.F.R. § 208.6; 8 C.F.R. § 210.2(e); 8 C.F.R. § 214.11(p); 8 C.F.R. § 214.14(e); 8 C.F.R. § 216.5(e)(3)(viii); 8 C.F.R. § 236.6; 8 C.F.R. § 244.16; 8 C.F.R. § 245a.2(t); 8 C.F.R. § 245a.3(n); 8 C.F.R. § 245a.21; 8 C.F.R. § 1003.46; or 8 C.F.R. § 1208.6—many of which would subject Defendants and their employees to civil or criminal penalties or other sanctions in the event of unauthorized disclosure. Thus, Defendants will not produce responsive information that falls within this category without an express written waiver from the alien authorizing such disclosure, or a court order, as may be permitted in certain circumstances.

10.     Defendants object to these Requests (and the definitions and instructions that accompany them) to the extent that they purport to impose obligations greater than those imposed by the Federal Rules of Civil Procedure, the Local Civil Rules of the U.S. District Court for the Southern District of California, or an order of this Court.  While Defendants are not currently aware of any documents they are withholding on the basis of this objection, Defendants nonetheless assert this objection to preserve it.

11.     Defendants object to the Requests to the extent they impose obligations

beyond those agreed upon in the Stipulated ESI Protocol. Defendants will search agreed upon custodian and non-custodial sources agreed to by the parties in accordance with the terms of that protocol. If the parties cannot agree on sources and search parameters, Defendants will limit their search parameters to the sources and search terms and methods identified by Defendants. Defendants also agree to meet and confer with Plaintiffs regarding the possibility of direct collection of documents without using a forensic document collection and the application of search terms if appropriate under the circumstances.

## OBJECTIONS TO DEFINITIONS

1.      Defendants object to the definitions of the terms "YOU" and "YOUR" on the grounds that they are overbroad, vague, unduly burdensome, invade the attorney/client privilege or the attorney work-product doctrine, and violate the Privacy Act, 5 U.S.C. § 552a *et seq.* Unless otherwise specified, Defendants interpret the definition of YOU or YOUR as referring to DHS, CBP, OFO, and individual DHS employees from whom DHS has the legal right to obtain upon demand information relevant to the claims and defenses in this case. Defendants do not interpret the definition of "YOU" or "YOUR" to include DHS component agencies or CBP subcomponents that are not parties to this case. Defendants' responses to each applicable Request, and their corresponding production and privilege log, will be limited consistent with this objection and the objections to the definitions of DHS and CBP. This objection also serves as a limiting principle on the parameters of Defendants' search for responsive documents, the contours of which are being contemporaneously negotiated with Plaintiffs.

2.      Defendants object to the definition of "CBP" as overbroad, unduly burdensome, and disproportional to the needs of the case. Plaintiffs' definition includes "any divisions, subdivisions, components or sections" of CBP and "CBP offices at ports of entry, including any divisions, subdivisions, components or sections therein[.]" Plaintiffs' definition also includes "any other CBP

organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP." First, Plaintiffs' definition is overly broad and disproportional to the needs of the case in that it would potentially include CBP components that are not relevant to the claims and defenses in this case, such as Air and Marine Operations and U.S. Border Patrol. Second, Plaintiffs' definition is also overly broad and disproportional to the needs of the case because this case challenges the alleged actions of CBP's Office of Field Operations at the headquarters level and at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry. Thus, request for documents from other subcomponents of CBP that do not relate to those challenged actions reaches beyond what may be relevant to the claims and defenses in this case. Third, asking Defendants to search and produce documents from all components of CBP would be unduly burdensome and also disproportional as CBP employs more than 60,000 people and many of these employees are not relevant to the claims or defenses in this case. *See* "About CBP," U.S. Customs and Border Protection (last modified April 18, 2019), https://www.cbp.gov/about.

Defendants also object to Plaintiffs' definition of "CBP" to the extent it includes all "private contractors hired by CBP." to the extent the work of those contractors is not relevant to this case and to the extent that Defendants do not have a legal right to obtain documents from them. As applicable, Defendants will construe Plaintiffs' requests as limited to seeking documents over which Defendants exercise possession or custody or have a legal right to obtain, and from contractors whose work relates to the Office of Field Operations and San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.

Defendants do not interpret the definition of "CBP" to include all subcomponents of CBP or all employees of CBP. Defendants construe "CBP" to refer to the named Defendants in their official capacities, U.S. Customs and Border Protection and, where appropriate in the context, its headquarters and its Office of

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

Field Operations, and the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.

Defendants' responses to each applicable Request, and their corresponding production and privilege log, will be limited consistent with this objection. This objection also serves as a limiting principle on the parameters of Defendants' search for responsive documents, the contours of which are being contemporaneously negotiated with Plaintiffs.

3. Defendants object to the definition of "DHS" as overbroad, vague, unduly burdensome, and disproportional to the needs of the case. Specifically, Plaintiffs' definition includes "headquarters and offices" and "any divisions, subdivisions, components or sections" of DHS. The definition also includes "any other DHS organizational structures." First, Plaintiffs' definition is overly broad and disproportional to the needs of the case in that it would include DHS components that are not relevant to the claims and defenses in this case. Second, Plaintiffs' definition is also overly broad and disproportional to the needs of the case because this case challenges the alleged actions of CBP's Office of Field Operations at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry. Third, asking Defendants to search and produce documents from all components of DHS would be unduly burdensome as DHS employs more than 240,000 people and many of these employees are not relevant to the claims or defenses in this case. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs. Accordingly, Defendants do not interpret the definition of "DHS" to include all component agencies of DHS or all employees of DHS and its component agencies. Defendants construe "DHS" to refer to DHS components, offices, and personnel at issue in this case, including, as applicable, the DHS Office of Inspector General ("OIG").

Defendants' responses to each applicable Request, and their corresponding production and privilege log, will be limited consistent with this objection. This

10

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

objection also serves as a limiting principle on the parameters of Defendants' search for responsive documents, the contours of which are being contemporaneously negotiated with Plaintiffs.

4.    Defendants object to the definition of "COMMUNICATION" on the grounds that it is vague, overly broad, unduly burdensome because it is defined so broadly as to include oral and/or non-written communications, which are beyond the scope of Rule 34.  *See* Fed. R. Civ. P. 34 (allowing requests to inspect or produce documents, electronically stored information, or tangible items).  For the purposes of responding to these Requests, Defendants construe COMMUNICATION to refer to oral or non-written communications only to the degree that they have been memorialized in tangible and reasonably accessible form, and such construction is reflected in all of Defendants' responses and in any corresponding production or privilege log.

5.    Defendants object to the definition of "DOCUMENT(S)" on the grounds that it is overly broad, unduly burdensome, and disproportional to the needs of this case because it is defined so broadly as to include oral and/or non-written communications, which are beyond the scope of Rule 34.  *See* Fed. R. Civ. P. 34 (allowing requests to inspect or produce documents, electronically stored information, or tangible items).  For purposes of this response, Defendants construe DOCUMENT(S) to include only oral or non-written communications that have been memorialized in tangible form, and such construction is reflected in all of Defendants' responses and any corresponding production or privilege log.

Defendants also object to the definition of "DOCUMENT(S)" to the extent it seeks documents "to which you otherwise have access."  In the Ninth Circuit, the standard for possession, custody, or control is the legal right to obtain documents. *See 7-UP Bottling Co. v. Archer Daniels Midland Co.* (*In re Citric Acid Litig.*), 191 F.3d 1090, 1107 (9th Cir. 1999).  Defendants are only under the obligation to produce relevant, non-privileged information, to the extent that it exists, if

individuals, operating in their official governmental capacity, have responsive, non-privileged information that is under the possession, custody or control of the named Defendants or that the named Defendants have the legal right to obtain on demand. *Id.* Therefore, the definition is overly broad and an incorrect statement of the standard. For purposes of this response, Defendants construe DOCUMENT(S) to include those documents within their possession, custody, and control, and such construction is reflected in all of Defendants' responses and any corresponding production or privilege log.

6. Defendants object to the definition of "ALL DOCUMENTS" on the grounds that it is overly broad, unduly burdensome, and disproportional to the needs of this case because it is defined so broadly as to include documents in the possession, custody or control of "affiliates, partners, agents, consultants, [] advisors, attorneys, investigators and representatives." In the Ninth Circuit, the standard for possession, custody, or control is the legal right to obtain documents. *See 7-UP Bottling Co. v. Archer Daniels Midland Co.* (*In re Citric Acid Litig.*), 191 F.3d 1090, 1107 (9th Cir. 1999). Defendants are only under the obligation to produce relevant, non-privileged information, to the extent that it exists, if individuals, operating in their official governmental capacity, have responsive, non-privileged information that is under the possession, custody or control of the named Defendants or that the named Defendants have the legal right to obtain on demand. *Id.* Defendants do not have the right to obtain documents from all "affiliates, partners, agents, consultants, [] advisors, attorneys, investigators and representatives."

Defendants also object to the definition of "ALL DOCUMENTS" on the grounds that it is overly broad and unduly burdensome because it is defined so broadly as to include documents not in Defendants' possession, custody or control but "to which [Defendant] otherwise ha[s] access." In the Ninth Circuit, the standard for possession, custody, or control is the legal right to obtain documents. *See 7-UP*

12

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

*Bottling Co. v. Archer Daniels Midland Co.* (*In re Citric Acid Litig.*), 191 F.3d 1090, 1107 (9th Cir. 1999). Defendants are only under the obligation to produce relevant, non-privileged information, to the extent that it exists, if individuals, operating in their official governmental capacity, have responsive, non-privileged information that is under the possession, custody or control of the named Defendants or that the named Defendants have the legal right to obtain on demand. *Id.* Defendants do not have the legal right to obtain all documents to which it otherwise has "access."

For purposes of these responses, Defendants will construe the requests as seeking only documents over which Defendants exercise possession or custody, or have the legal right to obtain, and such construction is reflected in all of Defendants' responses and any corresponding production or privilege log.

7.     Defendants object to the definitions of "IDENTIFY," "IDENTITY," and "IDENTIFIED," when used with respect to a document, to the extent they create an obligation which does not exist under Federal Rules of Civil Procedure 26 or 34, and to the extent they request that Defendants reveal information that is privileged or otherwise protected from disclosure.

8.     Defendants object to the definition of "RELATING TO" insofar as it purports to define "relate," "reflect," "respect," "regard," or "refer" to include "or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed in the request," as the use of any such terms are not proportional to the needs of the case, are overly broad, oppressive, and the burden of a request using any such term would outweigh its benefit. To ask Defendants to search for and produce documents with only the most tangential connection to responsive topics would be unduly burdensome because it would encompass discovery that is not relevant to the claims and defenses in this case.

Defendants thus place a limiting construction on "relating to" and interpret the term to seek only documents that are independently and directly responsive and relevant to the claims and defenses in this case, and such construction is reflected in

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

all of Defendants' responses and any corresponding production or privilege log. While it is difficult to identify in advance every type of document that Defendants may withhold on the basis of this objection, Defendants provide the following examples of the types of documents that they maintain are improperly encompassed by Plaintiffs' overbroad definition.

First, documents that "relate[s]" in some "indirect" manner to a responsive topic are not necessarily independently responsive. Accordingly, for example, Defendants reserve the right to withhold nonresponsive attachments that are members of an email family that also contains responsive attachments. Second, documents and forms that relate to a specific, individual alien's asylum application may "reflect" in some indirect manner agency procedures responsive to RFP 84, without actually discussing those agency procedures or providing meaningful information about the application of those agency procedures. Defendants reserve the right to withhold such documents even after the entry of a confidentiality protective order, particularly in light of the sensitive nature of such documents.

9. Defendants object to the definition of "including" and "including but not limited to," as the use of those terms is overly broad, vague and confusing. Defendants' concern with this definition is that it purports to require Defendants to produce categories of documents that are not expressly listed in the Requests, and which Defendants are not aware that Plaintiffs consider responsive. While Defendants are not currently withholding documents on the basis of this objection, unless specifically stated in their responses below, Defendants nonetheless assert this objection to preserve it.

10. Defendants object to the definitions of "and" and "or" insofar as they purport to define the terms as to be inclusive of each other "where dual construction will serve to bring within the scope of these requests any DOCUMENT which would otherwise not be brought within its scope," as overly broad, not proportional to the needs of the case, and burdensome. Defendants additionally object to the definitions

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

of "any" and "all" insofar as they purport to define the terms to be inclusive of each other as overly broad, vague, and confusing.

First, the definitions of "and" "or" "any" and "all" may bring into the scope of discovery information that may not be relevant to the claims or defenses in this case. Further, searching for documents that have the broader reading of these varying words would be unduly burdensome.

Defendants thus place a limiting construction on these terms such that they do not seek documents other than those that are independently responsive and relevant to the claims and defenses in this case, and such construction is reflected in all of Defendants' responses and any corresponding production or privilege log.

## OBJECTIONS TO INSTRUCTIONS:

1.     Defendants object to Instruction No. 1 relating to production or production format to the extent that it conflicts with provisions in the agreed-upon terms of the Stipulated ESI Protocol.

2.     Defendants object to Instruction No. 2 to the extent that the requirements listed exceed the requirements of Federal Rule of Civil Procedure 26(b)(5)(A) and/or the agreed-upon terms of the Stipulated ESI Protocol.

3.     Defendants object to Instruction Nos. 2 and 3 to the extent that they conflict in any way with the Ninth Circuit's standard for possession, custody, or control which defines control as "the legal right to obtain upon demand." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999).

4.     Defendants object to Instruction No. 3 as unduly burdensome insofar as it purports to require a document-by-document recounting, including, as completely as possible each author, preparer, and recipient of the Document; a complete description of the type, title, and subject matter of the Document; and the date on which and manner in which the Document was created, lost, discarded, destroyed, or otherwise disposed of, for every responsive Document, without regard to the date on which it was created, the date on which it was lost, discarded,

15

destroyed, or otherwise disposed of, or whether litigation involving the substance of
the Document was reasonably foreseeable at that time it was lost, discarded,
destroyed or otherwise disposed of.  Defendants construe such instruction as seeking
such information only with regards to documents "lost, discarded, destroyed, or
otherwise disposed of" only after July 12, 2017, the date that this lawsuit was filed.

## SPECIFIC OBJECTIONS AND RESPONSES

### Request for Production No. 26

All documents that you referenced in, or relied upon when drafting, your answers
and objections to Plaintiffs' interrogatories.

**Objections:** Defendants object to Request for Production No. 26 as premature
to the extent it seeks information about answers to interrogatories that have not yet
been served or answered.  Defendants further object to the Request to the extent it
seeks information protected from disclosure by any legal privileges or protections,
including, but not limited to, the attorney-client privilege, the attorney work-product
doctrine, the deliberative process privilege, and the law enforcement privilege and/or
as law enforcement sensitive. Defendants incorporate any objections to Plaintiffs'
interrogatories into these objections to Request for Production No. 26.

Defendants also object to RFP 26 in accordance with Objections Which Apply
to All RFPs Nos. 1 and 7-10; Objections to Definitions Nos. 1, 5-6, and 10; and,
Objections to Instructions Nos. 1, 2, and 4.

**Response:**  Subject to, and without waiving, their objections Defendants
respond as follows: Defendants will produce responsive, non-privileged documents
relied upon to answer Plaintiffs' First Set of Interrogatories, which Defendants
answered on April 29, 2019, if any such documents exist and have not already been
produced.  Documents created on or after July 12, 2017, the date of Plaintiffs'
original complaint (ECF No. 1), representing either communications with counsel

16

or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log. Defendants will supplement these objections and responses if and as appropriate under Federal Rule of Civil Procedure 26(e).

## Request for Production No. 27

All documents that you referenced in, or relied upon when drafting, your answer to Plaintiffs' second amended complaint.

**Objections:** Defendants object to Request for Production No. 27 as premature because it seeks information about an answer that has not yet been drafted. Defendants further object to the Request to the extent it seeks information protected from disclosure by any legal privileges or protections, including, but not limited to, the attorney-client privilege, the attorney work-product doctrine, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive.

Defendants also object to RFP 27 in accordance with Objections Which Apply to All RFPs Nos. 1 and 7-10; Objections to Definitions Nos. 1, 5-6, and 10; and Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with Defendants' objections, Defendants respond as follows: Defendants have not answered the Second Amended Complaint as of the date of these responses. Accordingly, Defendants cannot presently identify documents that are responsive to Request for Production No. 27. Defendants will supplement these objections and responses if and as appropriate under Federal Rule of Civil Procedure 26(e).

## Request for Production No. 28

All documents that you have received pursuant to any subpoena, letter of request, letter rogatory, mutual legal assistance treaty, or information request related to the

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

claims and defenses in this litigation.

**Objections:** Defendants object to Request for Production No. 28 because it seeks information protected from disclosure by executive privilege, including information that would implicate the foreign affairs of the United States. Defendants also object to the extent Request No. 28 seeks information protected from disclosure by any legal privileges or protections, including, but not limited to, the attorney-client privilege, the attorney work-product doctrine, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive. Defendants preserve any and all objections to Request No. 28.

Defendants also object to RFP 28 in accordance with Objections Which Apply to All RFPs Nos. 1 and 7-10; Objections to Definitions Nos. 1, 5-6, 8, and 10; Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with their objections, Defendants respond as follows: Defendants have not issued any subpoena under Federal Rule of Civil Procedure 45 as of the date of these responses. Accordingly, to the extent Request No. 28 requests documents received pursuant to a Rule 45 subpoena, no responsive documents exist. Defendants will supplement these objections and responses if and as appropriate under Federal Rule of Civil Procedure 26(e).

To the extent Request No. 28 requests documents received pursuant to any non-Rule 45 subpoena, letter of request, letter rogatory, mutual legal assistance treaty, or information request related to the claims and defenses in this litigation, such a request seeks privileged information. Accordingly, Defendants neither confirm nor deny whether any such documents exist, nor will they search for or produce any such documents, to the extent they exist.

## Request for Production No. 29

All documents that you have relied upon when drafting your responses and objections to plaintiffs' requests for admission or referenced in your responses and

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

objections to plaintiffs' requests for admission.

**Objections:** Defendants object to Request for Production No. 29 as premature because it seeks information about responses to requests for admission that have not yet been served, and to the extent it calls for documents protected from disclosure by any legal privileges or protections, including, but not limited to, the attorney-client privilege, the attorney work-product doctrine, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive.

Defendants also object to RFP 29 in accordance with Objections Which Apply to All RFPs Nos. 1 and 7-10; Objections to Definitions Nos. 1, 5-6, and 10; and Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with their objections, Defendants respond as follows: Defendants have not been served with requests for admission as of the date of these responses. Accordingly, Defendants cannot presently identify any documents that are responsive to Request for Production No. 29. Defendants will supplement these objections and responses if and as appropriate under Federal Rule of Civil Procedure 26(e).

## Request for Production No. 30

All documents that you have referenced in, or relied upon when drafting, your Federal Rule of Civil Procedure 26(a) initial disclosures.

**Objections:** Defendants object to Request for Production No. 30 to the extent it calls for documents protected by any legal privileges, including, but not limited to, the attorney-client privilege, the attorney work-product doctrine, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive. Defendants also object to RFP 30 in accordance with Objections Which Apply to All RFPs Nos. 1 and 7-10; Objections to Definitions Nos. 1, 5-6, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

**Response:** Subject to, and without waiving, their objections, Defendants

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

will produce or log non-privileged responsive documents responsive to Request for Production No. 30. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

**Request for Production No. 31**

Any document referenced in, or relied upon, when drafting any declaration or affidavit that you have submitted to the Court in this litigation.

**Objections:** Defendants object to Request for Production No. 31 as to the extent it calls for documents protected by any legal privileges, including, but not limited to, the attorney-client privilege, the attorney work-product doctrine, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive. Defendants also object to RFP 31 in accordance with Objections Which Apply to All RFPs Nos. 1, 7-10; Objections to Definitions Nos. 1, 5-6, and 10; Objections to Instructions Nos. 1, 2, and 4.

**Response:** Subject to, and without waiving, their objections, Defendants will produce or log non-privileged responsive documents, if any, responsive to Request for Production No. 31. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

**Request for Production No. 32**

All documents that you intend to use for purposes of impeachment at any deposition,

evidentiary hearing, or at trial in this litigation.

**Objections:** Defendants object to Request for Production No. 32 as premature, speculative, and outside the proper scope of discovery. This request does not purport to seek documents based on their relevance to claims and defenses to this case, but instead improperly seeks pure impeachment material with no other connection to the case, which is not required to be disclosed under Federal Rule of Civil Procedure 26(a)(3). Defendants also object to this Request as calling for the disclosure of work product, and to the extent it calls for documents protected from disclosure by any legal privileges or protections, including, but not limited to, the attorney-client privilege, the attorney work-product doctrine, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive. Defendants further object to this Request as improper to the extent it seeks to limit the future use of impeachment material; Defendants cannot know or predict what the precise testimony of any deponent or trial witness will be.

Defendants also object to RFP 32 in accordance with Objections Which Apply to All RFPs Nos. 1 and 7-10 and Objections to Definitions Nos. 1, 5-6, and 10.

**Response:** In accordance with their objections, Defendants respond as follows: Defendants will not produce documents in response to this Request.

## Request for Production No. 33

All documents cited in or relied upon in any expert reports disclosed by you in this litigation.

**Objections:** Defendants object to Request for Production No. 33 as premature and to the extent it calls for documents protected by any legal privileges or protections from disclosure, including, but not limited to, the attorney-client privilege, the attorney work-product doctrine, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive. Defendants also object to RFP 33 in accordance with Objections Which Apply to All RFPs Nos. 1,

21

7-10 and Objections to Definitions Nos. 1, 5-6, and 10; Objections to Instructions
Nos. 1, 2, and 4.

**Response:** In accordance with their objections, Defendants respond as
follows: Defendants have not disclosed any expert reports as of the date of these
responses. Accordingly, no documents responsive to Request for Production No. 33
presently exist. Defendants will supplement their responses if and as appropriate
under Federal Rule of Civil Procedure 26(e).

## Request for Production No. 34

Documents sufficient to show policies adopted by you, DHS, or CBP for the
retention of documents and/or electronically stored information.

**Objections:** Defendants object to Request for Production No. 34 as vague and
ambiguous, as it does not define the term "sufficient." Defendants object to Request
for Production No. 34 to the extent it calls for documents protected by any legal
privileges or protections from disclosure, including, but not limited to, the attorney-
client privilege, the attorney work-product doctrine, the deliberative process
privilege, and the law enforcement privilege and/or as law enforcement sensitive.
Defendants also object to RFP 34 in accordance with Objections Which Apply to
All RFPs Nos. 1, 7-10; Objections to Definitions Nos. 1-3, 5-6, and 10; Objections
to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with their objections, Defendants will produce or
log documents responsive to Request for Production No. 34. Documents created on
or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1),
representing either communications with counsel or communications or documents
relating to the actual conduct of litigation post-complaint—and thus clearly
protected by either the attorney-client privilege or the work-product doctrine—will
be treated as non-responsive and therefore will not appear on any privilege log.

1  **Request for Production No. 35**

2  All non-privileged documents and communications containing reactions by you or

3  officials at DHS or CBP to this lawsuit.

4  **Objection:** Defendants object to Request for Production No. 35 as seeking

5  information that is outside the scope of Rule 34, not relevant to any party's claim or

6  defense, not proportional to the needs of the case, overly broad and unduly

7  burdensome, and vague and ambiguous. First, Defendants object to Request for

8  Production No. 35 to the extent it seeks oral or non-written communications. *See*

9  Pls.' Second RFPs, Definition E (defining "communication(s)" to include "the

10  exchange of information by or through any mode or medium including, but not

11  limited to, spoken word, written correspondence, any form of technology, face-to-

12  face meetings or conveying of information through third person(s) to some other

13  intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve

14  requests to inspect or produce "documents," "electronically stored information," or

15  "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to

16  obtain non-tangible things. Defendants accordingly construe the term

17  "communication(s)" to include only those items permitted by Rule 34 as stated in

18  Objections to Definitions No. 4.

19  Second, the named Defendants, DHS's, and CBP's "reactions . . . to this

20  lawsuit" are not relevant to any party's claims or defenses because they do not bear

21  on the issues in this case: whether the named Plaintiffs were, at the time of their

22  alleged injury, arriving aliens applying for admission to the United States; whether

23  Defendants have implemented a formal policy or taken final agency action to

24  "restrict access to the asylum process at ports of entry along the U.S.-Mexico

25  border"; and whether such a policy or final agency action, if it exists, and in the form

26  it exists, is unlawful. A "reaction" to this lawsuit would not have "any tendency" to

27  make any of the issues in this case "more or less probable than [they] would be

28  without" the "reaction," nor is the fact of a "reaction" "of consequence in

23

1  determining" the issues. Fed. R. Evid. 401.

2      Third, a request to produce the "reactions" of the named Defendants, DHS,

3  and CBP "to this lawsuit" is not proportional to the needs of the case and is overly

4  broad and unduly burdensome. Based on Plaintiffs' definitions, a complete response

5  would require Defendants to collect and search the documents of each of the named

6  Defendants; each of the named Defendants' "agents, representatives, employees,

7  attorneys and investigators"; all of U.S. Customs and Border Protection, including

8  "its headquarters and offices, including any divisions, subdivisions, components or

9  sections therein; CBP offices at ports of entry, including any divisions, subdivisions

10 or sections therein; or any other CBP organizational structures, including but not

11 limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors

12 hired by CBP"; and all of the U.S. Department of Homeland Security, including "its

13 headquarters and offices, including any divisions, subdivisions, components or

14 sections therein, or any other DHS organizational structures." *See* Pls.' Second

15 RFPs, Definitions A–C. Such a search, especially given the vagueness of the term

16 "reaction," would be unduly burdensome and disproportionate to the needs of the

17 case.

18     Although Plaintiffs limit the definitions of "your," "CBP," and "DHS" based

19 on what is "appropriate in the context" of each request, there is nothing in Request

20 for Production No. 35 that indicates what the "appropriate context" of a search for

21 "reactions" to this lawsuit might be. *See id.* DHS employs more than 240,000 people,

22 and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of

23 Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP,"

24 U.S. Customs and Border Protection (last modified April 18, 2019), https://www.

25 cbp.gov/about. Collecting and searching through the documents of all of these

26 individuals, as Plaintiffs request, is plainly not proportional to the needs of this case

27 and is overly broad and unduly burdensome, especially considering that any

28 "reactions" are of no consequence to the issues. *See* Fed. R. Evid. 401; *cf. Alfaro v.*

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

*City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Finally, the term "reactions" is vague and ambiguous because it does not specify the information Plaintiffs seek and is susceptible to multiple definitions and understandings. *See, e.g.*, "Reaction," *Oxford English Dictionary* (3d Ed. Dec. 2008). Thus, even if Request No. 35 were appropriately limited in scope, Defendants would not know what documents and communications to search for.

Defendants also object to RFP 35 in accordance with Objections Which Apply to All RFPs Nos. 1-6 and 10; Objections to Definitions Nos. 1-6, and 10.

**Response:** In light of the foregoing objections, Defendants will not search for, produce, or log documents responsive to Request for Production No. 35.

**Request for Production No. 36**

All documents and communications containing reactions by you or employees, representatives, or officials of DHS or CBP to tweets or comments by the President of the United States and/or the White House concerning (a) noncitizens seeking asylum in the United States, (b) migrant "caravans," (c) the United States' capacity to detain and/or process noncitizens seeking to enter the United States via the U.S.-Mexico border, (d) noncitizens seeking to enter the United States via the U.S.-Mexico border, and/or (e) "illegal immigration," including, but not limited, to the following tweets and/or statements:

- June 16, 2015: "When Mexico sends its people, they're not sending their best. They're not sending you. They're not sending you. They're sending people that have lots of problems, and they're bringing those problems with [them]. They're bringing drugs. They're bringing crime. They're rapists. And some, I assume, are good people."

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

- October 8, 2017: "END ASYLUM ABUSE: Tighten standards (including 'credible fear' standard), impose penalties for fraud, and ensure applicants are not released while their claims are verified."

- October 8, 2018: "Chronic asylum fraud and loopholes allow illegal immigrants to gain quick and easy entry."

- June 18, 2018: "We don't want what is happening with immigration in Europe to happen with us!"

- June 19, 2018: "Current law sets an easily-met credible fear standard, which allows aliens who make meritless asylum claims to remain in the United States for years while they litigate their cases."

- June 24, 2018: "When somebody comes in, we must immediately, with no Judges or Court Cases, bring them back from where they came."

- June 30, 2018: "When people come into our Country illegally, we must IMMEDIATELY escort them back out without going through years of legal maneuvering."

- July 5, 2018: "When people, with or without children, enter our Country, they must be told to leave without our Country being forced to endure a long and costly trial. Tell the people, 'OUT,' and they must leave, just as they would if they were standing on your front lawn."

- October 21, 2018: "The Caravans are a disgrace to the Democrat Party. Change the immigration laws NOW!"

- October 21, 2018: "Full efforts are being made to stop the onslaught of illegal aliens from crossing our [s]outhern [b]order. People have to apply for asylum in Mexico first, and if they fail to do that, the U.S. will turn them away. The courts are asking the U.S. to do things that are not doable!"

- November 1, 2018: "Flaws in our asylum system allow illegal aliens with meritless claims to cross our borders and remain here for years."

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

- November 1, 2018: "The standards that apply to the credible fear process is a major driver of our Nation's immigration crisis."
- November 16, 2018: "Isn't it ironic that large [c]aravans of people are marching to our border wanting U.S.A. asylum because they are fearful or being in their country – yet they are proudly waiving . . . their country's flag. Can this be possible? Yes, because it is all a BIG CON, and the American taxpayer is paying for it!"
- November 18, 2018: "Catch and [r]elease is an obsolete term. It is not [c]atch and [d]etain. Illegal [i]mmigrants trying to come into the U.S.A., often proudly flying the flag of their nation as they ask for U.S. [a]sylum, will be detained or turned away. Dems must approve [b]order [s]ecurity & [w]all NOW!"
- December 28, 2018: "We will be forced to close the [s]outhern [b]order entirely if the [o]bstrunctionist Democrats do not give us the money to finish the [w]all & also change the ridiculous immigration laws that our [c]ountry is saddled with. Hard to believe there was a Congress & President who would approve!"
- January 30, 2019: "Asylum loopholes are exhausting resources and diverting our law enforcement personnel from their mission—forcing agencies tasked with preventing illegal border crossing to 'act more like a makeshift Red Cross.'"

**Objections:** Defendants object to Request for Production No. 36 as seeking information that is outside the scope of Rule 34, not relevant to any party's claim or defense, not proportional to the needs of the case, overly broad and unduly burdensome, and vague and ambiguous. First, Defendants object to Request for Production No. 36 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communication(s)" to include "the exchange of information by or through any mode or medium including, but not

limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communication(s)" to include only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

Second, the named Defendants, DHS's, and CBP's "reactions" to "tweets or comments by the President of the United States and/or the White House" concerning the delineated topics are not relevant to any party's claims or defenses because they do not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. A "reaction" to the President's or White House's tweets or statements does not have "any tendency" to make any of the issues in this case "more or less probable than [they] would be without" the "reaction," nor is the fact that a DHS or CBP employee may have "react[ed]" to such tweets or statements "of consequence in determining" the issues. Fed. R. Evid. 401.

Third, a request to produce the "reactions" of the named Defendants, DHS, and CBP to "tweets or comments by the President of the United States and/or the White House" concerning the delineated topics is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definitions, a complete response would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S.

Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A–C. Although Plaintiffs limit the definitions of "your," "CBP," and "DHS" based on what is "appropriate in the context" of each request, there is nothing in Request for Production No. 35 that indicates what the "appropriate context" of a search for "reactions" to "tweets or comments by the President of the United States and/or the White House" might be. *See id.* DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome, especially considering that any "reactions" are of no consequence to the issues. *See* Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Finally, the term "reactions" is vague and ambiguous because it does not specify the information Plaintiffs seek and is susceptible to multiple definitions and understandings. Thus, even if Request No. 36 were appropriately limited in scope, Defendants would not know what documents and communications to search for.

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

Request No. 36 also improperly seeks information outside the time frame of this lawsuit.

Defendants also object to RFP 36 in accordance with Objections Which Apply to All RFPs Nos. 1-4, 6-10 and Objections to Definitions Nos. 1-6, and 9-10.

**Response:**   In light of the foregoing objections, Defendants will not search for, produce, or log documents responsive to Request for Production No. 36.

## Request for Production No. 37

All documents and communications containing your reactions to, comments on, or criticism of any news media accounts or reports of non-governmental organizations related to any formal or informal policy, practice, or effort to meter or limit the number of noncitizens who can apply for asylum at a port of entry on the U.S.-Mexico border, including but not limited to reports published by Amnesty International, Human Rights Watch, the Washington Post, the New York Times, the U.S. Commission on International Religious Freedom, Human Rights First, Refugees International, and/or the Washington Office on Latin America.

**Objections:** Defendants object to Request for Production No. 37 as seeking information that is outside the scope of Rule 34, not relevant to any party's claim or defense, not proportional to the needs of the case, overly broad and unduly burdensome, and vague and ambiguous. First, Defendants object to Request for Production No. 37 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communication(s)" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

1   obtain  non-tangible  things.  Defendants  accordingly  construe  the  term
2   "communication(s)" to include only those items permitted by Rule 34 as stated in
3   Objections to Definitions No. 4.

4          Second, the named Defendants, DHS's, and CBP's "reactions to, comments
5   on, or criticism of any news media accounts or reports of non-governmental
6   organizations" related to the delineated topics are not relevant to any party's claims
7   or defenses because they do not bear on the issues in this case: whether the named
8   Plaintiffs were, at the time of their alleged injury, arriving aliens applying for
9   admission to the United States; whether Defendants have implemented a formal
10  policy or taken final agency action to "restrict access to the asylum process at ports
11  of entry along the U.S.-Mexico border"; and whether such a policy or final agency
12  action, if it exists, and in the form it exists, is unlawful. A "reaction[] to, comment[]
13  on, or criticism of" a news media account or non-governmental organization report
14  does not have "any tendency" to make any of the issues in this case "more or less
15  probable than [they] would be without" the reaction, comment or criticism, nor is
16  the fact that a DHS or CBP employee may have reacted to, commented on, or
17  criticized such reports "of consequence in determining" the issues. Fed. R. Evid.
18  401.

19         Third, a request to produce the named Defendants', DHS's, and CBP's
20  reactions to, comments on, or criticisms of "any news media accounts or reports of
21  non-governmental organizations . . . including but not limited to reports published
22  by Amnesty International, Human Rights Watch, the Washington Post, the New
23  York Times, the U.S. Commission on International Religious Freedom, Human
24  Rights First, Refugees International, and/or the Washington Office on Latin
25  America," is not proportional to the needs of the case and is overly broad and unduly
26  burdensome. Based on Plaintiffs' definitions, a complete response would require
27  Defendants to collect and search the documents of each of the named Defendants;
28  each of the named Defendants' "agents, representatives, employees, attorneys and

31

investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A–C.

Although Plaintiffs limit the definitions of "your," "CBP," and "DHS" based on what is "appropriate in the context" of each request, there is nothing in Request for Production No. 35 that indicates what the "appropriate context" of a search for "reactions" to this lawsuit might be. *See id.* DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome, especially considering that any reactions, comments, or criticisms are of no consequence to the issues. *See* Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Finally, Request No. 37 is also vague and ambiguous. Plaintiffs do not define the following terms and phrases: "reactions," "news media account," "reports of non-governmental organizations," and "formal or informal policy, practice, or effort."

Defendants also object to RFP 37 in accordance with Objections Which Apply to All RFPs Nos. 1-3, and 6-10 and Objections to Definitions Nos. 1, 4-6, and 8-10.

**Response:**    In light of the foregoing objections, Defendants will not search for, produce, or log documents responsive to Request for Production No. 37.

## Request for Production No. 38

All documents that you have produced to any committee or subcommittee of the U.S. Congress related to any formal or informal policy, practice, or effort to meter or limit the number of noncitizens who can apply for asylum at a port of entry on the U.S.-Mexico border.

**Objections:** Defendants object to Request for Production No. 38 to the extent it seeks documents that can be obtained "from some other source that is more convenient, less burdensome, [and] less expensive" for the parties. Fed. R. Civ. P. 26(b)(2)(C)(i). Publicly available information responsive to Request No. 38 can be found at: https://www.cbp.gov/about/congressional-resources/114th-congress-toolkit.

Defendants further object to Request No. 38 to the extent it seeks information protected from disclosure by any executive privilege, as it specifically requests communications between Defendants and members of Congress, and to the extent it seeks information protected by any other legal privileges or protections, including, but not limited to, the attorney-client privilege, the attorney work-product doctrine, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive.

Defendants also object to RFP 38 in accordance with Objections Which Apply to All RFPs Nos. 1, 3,and 6-10; Objections to Definitions Nos. 1, 5-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

**Response:**    In accordance with their objections, CBP will search for and produce non-privileged documents responsive to Request for Production No. 38 that

33

are not already publicly available. Further, Defendants will produce non-privileged documents responsive to this request, if any, that may be located as a result of their search of a limited number of custodial and non-custodial sources (as described in Response to Request No. 40). Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

**Request for Production No. 39**

All transcripts of testimony and written statements provided to any committee or subcommittee of the U.S. Congress related to any formal or informal policy, practice, or effort to meter or limit the number of noncitizens that can apply for asylum at a port of entry on the U.S.-Mexico border.

**Objections:** Defendants object to Request for Production No. 39 to the extent it seeks documents that can be obtained "from some other source that is more convenient, less burdensome, [and] less expensive" for the parties. Fed. R. Civ. P. 26(b)(2)(C)(i). Transcripts of congressional hearings can be obtained at https:// www.govinfo.gov/app/collection/CHRG. Written congressional testimony given by DHS officials can be obtained at https://www.dhs.gov/news-releases/testimony. Written congressional testimony given by CBP officials can be obtained at https:// www.cbp.gov/about/congressional-resources/testimony, and https://www.cbp.gov/ about/congressional-resources/testimony-archive.

Defendants also object to RFP 39 in accordance with Objections Which Apply to All RFPs Nos. 1, 3, and 10 and Objections to Definitions Nos. 5-6, 8, and 10; Objections to Instructions Nos. 1 and 4.

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

**Response:**   In light of Defendants' objections, and because the documents sought by Request No. 39 can be found at the foregoing URLs, Defendants will not be conducting a separate search for responsive documents.  Defendants will produce non-privileged documents responsive to this request, if any, that may be located as a result of their search of a limited number of custodial and non-custodial sources (as described in Response to Request No. 40).

### Request for Production No. 40

All final drafts of policies, memoranda, statements in the Federal Register, or executive orders related to any formal or informal policy, practice, or effort to meter or limit the number of noncitizens that can apply for asylum at a port of entry on the U.S.-Mexico border.

**Objections:** Defendants object to Request for Production No. 40 to the extent it seeks documents that can be obtained "from some other source that is more convenient, less burdensome, [and] less expensive" for the parties. Fed. R. Civ. P. 26(b)(2)(C)(i). Final drafts of DHS implementation memoranda can be found at: https://www.dhs.gov/ending-legal-loopholes-and-securing-our-border;  and  https://www.dhs.gov/executive-orders-protecting-homeland. Final drafts of CBP guidance documents can be found at https://www.cbp.gov, including at https://www.cbp.gov/document/guidance. Final drafts of statements published in the Federal Register can be found in the Federal Register, at: https://www.federalregister.gov/. Final drafts of executive orders can be located in the Federal Register, at: https://www.federalregister.gov/presidential-documents/executive-orders. CBP-specific publications in the Federal Register can be located at: https://www.federalregister.gov/agencies/us-customs-and-border-protection.

Defendants also object to RFP 40 in accordance with Objections Which Apply to All RFPs Nos. 1, 3, 6, and 10; Objections to Definitions Nos. 5-6, 8, and 10; and, Objections to Instructions Nos. 1 and 4.

1   **Response:**   In light of Defendants' objections, Defendants will limit their

2   search to a limited number of custodial and non-custodial sources. Defendants will

3   continue to confer with Plaintiffs in identifying reasonable custodial and non-

4   custodial sources and document identification protocols. However, in the event the

5   parties cannot agree, Defendants will limit their search to the sources identified in

6   Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No.

7   243), from which Defendants will produce all non-privileged documents responsive

8   to this Request, dating from January 1, 2016, to the present that can be located after

9   a reasonable search. Defendants will not search for any documents that can be found

10  at the foregoing URLs.  Documents created on or after July 12, 2017, the date of

11  Plaintiffs' original complaint (ECF No. 1), representing either communications with

12  counsel or communications or documents relating to the actual conduct of litigation

13  post-complaint—and thus clearly protected by either the attorney-client privilege or

14  the work-product doctrine—will be treated as non-responsive and therefore will not

15  appear on any privilege log.

16

17  **Request for Production No. 41**

18  All documents or communications related to your knowledge, assent, direction,

19  acquiescence, authorization, or consent to any formal or informal policy, practice,

20  or effort to meter or limit the number of noncitizens that can apply for asylum at a

21  port of entry on the U.S.-Mexico border.

22  **Objections:** Defendants object to Request for Production No. 41 to the extent

23  it seeks information that is outside the scope of Rule 34, as not proportional to the

24  needs of the case, as overly broad and unduly burdensome, and as seeking

25  information protected from disclosure by the attorney-client privilege, the

26  deliberative process privilege, and the law enforcement privilege and/or as law

27  enforcement sensitive. First, Defendants object to Request No. 41 to the extent it

28

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

1    seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E

2    (defining "communications" to include "the exchange of information by or through

3    any mode or medium including, but not limited to, spoken word, written

4    correspondence, any form of technology, face-to-face meetings or conveying of

5    information through third person(s) to some other intended recipient"). Federal Rule

6    of Civil Procedure 34 allows a party to serve requests to inspect or produce

7    "documents," "electronically stored information," or "designated tangible things."

8    Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things.

9    Defendants accordingly construe the term "communications" to include only those

10    items permitted by Rule 34 as stated in Objections to Definitions No. 4.

11      Second, a request to produce "all documents" relating to the named

12    Defendants' "knowledge, assent, direction, acquiescence, authorization, or consent

13    to any formal or informal policy, practice, or effort to meter or limit the number of

14    noncitizens that can apply for asylum at a port of entry on the U.S.-Mexico border"

15    is not proportional to the needs of the case and is overly broad and unduly

16    burdensome. Based on Plaintiffs' definition, a complete response would require

17    Defendants to collect and search the documents of each of the named Defendants

18    and each of the named Defendants' "agents, representatives, employees, attorneys

19    and investigators." *See* Pls.' Second RFPs, Definition A. Acting Secretary

20    McAleenan oversees more than 240,000 employees. *See* "About DHS," U.S. Dep't

21    of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs.

22    Commissioner McAleenan oversees more than 60,000 employees. "About CBP,"

23    U.S. Customs and Border Protection (Last modified April 18, 2019),

24    https://www.cbp.gov/about. Executive Assistant Commissioner Owen oversees

25    more than 29,000 employees. https://www.cbp.gov/about/leadership-

26    organization/executive-assistant-commissioners-offices/field-operations (Oct. 19,

27    2016); Second Am. Compl. ¶ 38. Collecting and searching through the documents

28    of all of these individuals, as Plaintiffs request, is plainly not proportional to the

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

needs of this case and is overly broad and unduly burdensome *Cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Third, Defendants object to Request for Production No. 41 to the extent it seeks information protected from disclosure by the attorney work-product doctrine. To the extent a request for "all documents" relating to the named Defendants' "knowledge, assent, direction, acquiescence, authorization, or consent to any formal or informal policy, practice, or effort to meter or limit the number of noncitizens that can apply for asylum at a port of entry on the U.S.-Mexico border" implicates, for example, "documents and tangible things prepared by a party or his representative in anticipation of litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman v. Taylor*, 329 U.S. 495 (1947), including "documents or the compilation of materials prepared by agents of the attorney in preparation for litigation," *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)), such as, for example, notes and emails of Defendants' attorneys and staff, and draft and final internal documents, such documents are protected from disclosure by the attorney work-product doctrine.

Fourth, Defendants object to Request for Production No. 41 to the extent it seeks information protected by the attorney-client privilege. To the extent a request for "all documents" relating to the named Defendants' "knowledge, assent, direction, acquiescence, authorization, or consent to any formal or informal policy, practice, or effort to meter or limit the number of noncitizens that can apply for asylum at a port of entry on the U.S.-Mexico border" implicates, for example, confidential communications between attorneys and clients which are made for the purpose of giving legal advice, *Upjohn Co. v. United States*, 449 U.S. 383, 389

1   (1981), such documents are privileged and protected from disclosure.

2        Fifth, Defendants object to Request No. 41 to the extent it seeks information

3   protected from disclosure by the deliberative process privilege. To the extent a

4   request for "all documents" relating to the named Defendants' "knowledge, assent,

5   direction, acquiescence, authorization, or consent to any formal or informal policy,

6   practice, or effort to meter or limit the number of noncitizens that can apply for

7   asylum at a port of entry on the U.S.-Mexico border" implicates, for example,

8   documents that are predecisional and deliberative, thereby containing opinions,

9   recommendations, or advice, *NLRB v. Sears, Roebuck & Co*., 421 U.S. 132, 149

10  (1975), including, but not limited to, "recommendations, draft documents, proposals,

11  suggestions, and other subjective documents which reflect the personal opinions of

12  the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v.*

13  *HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation

14  omitted), such documents are privileged and protected from disclosure.

15       Sixth, Defendants object to Request No. 41 to the extent it seeks information

16  protected from disclosure by the law enforcement privilege and/or as law

17  enforcement sensitive. To the extent a request for "all documents" relating to the

18  named Defendants' "knowledge, assent, direction, acquiescence, authorization, or

19  consent to any formal or informal policy, practice, or effort to meter or limit the

20  number of noncitizens that can apply for asylum at a port of entry on the U.S.-

21  Mexico border" implicates, for example, "law enforcement techniques and

22  procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law

23  enforcement personnel," "safeguard[ing] the privacy of individuals involved in an

24  investigation," and/or the "prevent[ion of] interference with an investigation," such

25  information is subject to the law enforcement privilege and protected from

26  disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5

27  (E.D. Cal. June 1, 2007).

28       Finally, Defendants object to Request No. 41 as vague and confusing, and to

the extent it reflects an incorrect statement of the law. Defendants will construe this request as requesting documents related to any alleged policy of queue management or "metering" as these terms are commonly used by Defendants in the course of business.

Defendants also object to RFP 41 in accordance with Objections Which Apply to All RFPs Nos. 1, 3, and 6-10; Objections to Definitions Nos. 1, 4-6, 8, and 10; Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with Defendants' objections, and in light of Request No. 41 being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce all non-privileged documents responsive to this Request, dating from January 1, 2016, to the present that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

## Request for Production No. 42

All documents or communications related to your knowledge, assent, direction, acquiescence, authorization, or consent to the use of misrepresentations, threats, intimidation, coercion, verbal or physical abuse, denying access to the asylum

process, and/or physically obstructing access to a port of entry (including checking the travel or identification documents of pedestrians approaching ports of entry before they cross the U.S.-Mexico border and screening out pedestrians assumed to be seeking asylum), with respect to noncitizens seeking asylum in the United States at any port of entry on the U.S.-Mexico border.

**Objections:** Defendants object to Request No. 42, to the extent that it characterizes Defendants as knowing, assenting, directing, acquiescing, authorizing or consenting to misrepresentations, threats, intimidation, coercion, verbal or physical abuse, denying access to the asylum process, and/or physically obstructing access to ports of entry to asylum seekers at ports of entry along the U.S.-Mexico border, as: not proportional to the needs of the case; overly broad and unduly burdensome; vague and ambiguous; and seeking information protected from disclosure by the deliberative process privilege and the law enforcement privilege and/or as law enforcement sensitive.

Defendants object to Request for Production No. 42 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communications" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communications" to include only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

A request to produce all documents related to the named Defendants' "knowledge, assent, direction, acquiescence, authorization, or consent" to the delineated topics is not proportional to the needs of the case and is overly broad and

unduly burdensome. Based on Plaintiffs' definitions, a complete response would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A–C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Request No. 42 is vague and ambiguous. Plaintiffs do not define the following terms and phrases: "knowledge," "assent," "direction," "acquiescence," "authorization," "consent," "misrepresentations," "threats," "intimidation," "coercion," "verbal or physical abuse," and "denying access to the asylum process." Defendants also object to the terms "noncitizens" and "seeking asylum," and construe those terms as outlined in Defendants' Objections Which Apply to All RFPs Nos. 3 and 4.

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

Defendants object to Request No. 42 as not proportional to the needs of the case and as overly broad and unduly burdensome to the extent it is not limited to the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry. The claims of the individual Plaintiffs in this action arise only out of the Laredo, Otay Mesa, San Ysidro, and Hidalgo ports of entry. As no class exists in this action, and as no Plaintiff alleges any injury at any port of entry besides San Ysidro, Otay Mesa, Hidalgo, and Laredo, Defendants therefore object to the extent that these requests seek information beyond the scope of the ports of entry at which individual plaintiffs have made specific allegations. Moreover, the burden of producing information regarding other ports of entry would be disproportional to the needs of the case. As explained during the parties' meet and confer, Plaintiffs allege a border-wide practice, policy, and/or procedure; discovery from the four ports of entry where the named Plaintiffs allegedly encountered such practice, policy, and/or procedure (or a subset thereof), in addition to discovery from select higher-level custodial and non-custodial sources, satisfies the needs of the case. Any discovery from other ports of entry along the Mexico-U.S. border would be duplicative and unduly burdensome. Defendants therefore construe this request as seeking discovery limited to the Laredo, Otay Mesa, San Ysidro, and Hidalgo ports of entry, and select records from Office of Field Operations Headquarters.

Defendants object to Request for Production No. 42 to the extent it seeks information protected from disclosure by the attorney work-product doctrine. To the extent a request for "all documents" relating to the delineated topics implicates, for example, "documents and tangible things prepared by a party or his representative in anticipation of litigation," *Admiral Ins. Co. v. U.S. Dist. Ct*., 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman v. Taylor*, 329 U.S. 495 (1947), including "documents or the compilation of materials prepared by agents of the attorney in preparation for litigation," *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)), such

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

1    as, for example, notes and emails of Defendants' attorneys and staff, and draft and

2    final internal documents, such documents are protected from disclosure by the

3    attorney work-product doctrine.

4        Defendants object to Request for Production No. 42 to the extent it seeks

5    information protected by the attorney-client privilege. To the extent a request for "all

6    documents" relating to the delineated topics implicates, for example, confidential

7    communications between attorneys and clients which are made for the purpose of

8    giving legal advice, *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981), such

9    documents are privileged and protected from disclosure.

10       Defendants object to Request No. 42 to the extent it seeks information

11   protected from disclosure by the deliberative process privilege. To the extent a

12   request for "all documents" relating to the delineated topics implicates, for example,

13   documents that are predecisional and deliberative, thereby containing opinions,

14   recommendations, or advice, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149

15   (1975), including, but not limited to, "recommendations, draft documents, proposals,

16   suggestions, and other subjective documents which reflect the personal opinions of

17   the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v.*

18   *HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation

19   omitted), such documents are privileged and protected from disclosure.

20       Defendants object to Request No. 42 to the extent it seeks information

21   protected from disclosure by the law enforcement privilege and/or as law

22   enforcement sensitive. To the extent a request for "all documents" relating to the

23   delineated topics implicates, for example, "law enforcement techniques and

24   procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law

25   enforcement personnel," "safeguard[ing] the privacy of individuals involved in an

26   investigation," and/or the "prevent[ion of] interference with an investigation," such

27   information is subject to the law enforcement privilege and protected from

28   disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5

(E.D. Cal. June 1, 2007).

Defendants object to Request No. 42 to the extent it seeks information implicated by the Privacy Act.

Defendants also object to RFP 42 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, 6-10; Objections to Definitions Nos. 1, 4-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with Defendants' objections, and in light of Request No. 42 being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Joint 26(f) Report (ECF No. 243), from which Defendants will produce all non-privileged documents responsive to this Request, dating from January 1, 2016, to the present that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

## Request for Production No. 43

All documents or communications related to CBP or DHS officials using misrepresentations, threats, intimidation, coercion, verbal or physical abuse, denying access to the asylum process, and/or physically obstructing access to a port of entry (including checking the travel or identification documents of pedestrians

1     approaching ports of entry before they cross the U.S.-Mexico border and screening

2 out pedestrians assumed to be seeking asylum), with respect to noncitizens seeking

3 asylum in the United States at any port of entry on the U.S.-Mexico border.

4     **Objections:** Defendants object to Request No. 43 to the extent that it

5 characterizes Defendants using threats, intimidation, coercion, verbal or physical

6 abuse, denying access to the asylum process, and/or physically obstructing access to

7 ports of entry to asylum seekers at ports of entry along the U.S.-Mexico border, as

8 seeking information that is outside the scope of Rule 34, as not proportional to the

9 needs of the case, as overly broad and unduly burdensome, as vague and ambiguous,

10 and as seeking information protected from disclosure by the deliberative process

11 privilege and the law enforcement privilege and/or as law enforcement sensitive.

12     First, Defendants object to Request for Production No. 43 to the extent it seeks

13 oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining

14 "communications" to include "the exchange of information by or through any mode

15 or medium including, but not limited to, spoken word, written correspondence, any

16 form of technology, face-to-face meetings or conveying of information through third

17 person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34

18 allows a party to serve requests to inspect or produce "documents," "electronically

19 stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does

20 not allow a party to obtain non-tangible things. Defendants accordingly construe the

21 term "communications" to include only those items permitted by Rule 34 as stated

22 in Objections to Definitions No. 4.

23     Second, a request to produce all documents or communications related to the

24 delineated topics is not proportional to the needs of the case and is overly broad and

25 unduly burdensome. Based on Plaintiffs' definitions, a complete response would

26 require Defendants to collect and search the documents of each of the named

27 Defendants; each of the named Defendants' "agents, representatives, employees,

28 attorneys and investigators"; all of U.S. Customs and Border Protection, including

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

"its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A–C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Third, Request No. 43 is also vague and ambiguous. Plaintiffs do not define the following terms and phrases: "misrepresentations," "threats," "intimidation," "coercion," "verbal or physical abuse," and "denying access to the asylum process." Defendants also object to the terms noncitizens and seeking asylum and construe those terms as explained in Defendants' Objections Which Apply to All RFPs Nos. 3 and 4.

Fourth, Defendants object to Request No. 43 to the extent it seeks information protected from disclosure by the deliberative process privilege. To the extent any documents "related to CBP or DHS officials using misrepresentations, threats, intimidation, coercion, verbal or physical abuse, denying access to the asylum

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

process, and/or physically obstructing access to a port of entry (including checking the travel or identification documents of pedestrians approaching ports of entry before they cross the U.S.-Mexico border and screening out pedestrians assumed to be seeking asylum), with respect to noncitizens seeking asylum in the United States at any port of entry on the U.S.-Mexico border" are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

Fifth, Defendants object to Request No. 43 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent any documents "related to CBP or DHS officials using misrepresentations, threats, intimidation, coercion, verbal or physical abuse, denying access to the asylum process, and/or physically obstructing access to a port of entry (including checking the travel or identification documents of pedestrians approaching ports of entry before they cross the U.S.-Mexico border and screening out pedestrians assumed to be seeking asylum), with respect to noncitizens seeking asylum in the United States at any port of entry on the U.S.-Mexico border" implicate "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Finally, Defendants object to Request No. 43 to the extent it seeks information

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

protected by the Privacy Act.

Defendants also object to RFP 43 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, and 6-10; and Objections to Definitions Nos. 2-3, 4-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with Defendants' objections, and in light of Request No. 43 being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Joint 26(f) Report (ECF No. 243), from which Defendants will produce all non-privileged documents responsive to this Request, dating from January 1, 2016, to the present that can be located after a reasonable search.    Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

**Request for Production No. 44**

To the extent not produced in response to another request, all documents and communications related to any formal or informal policy, practice, or effort to meter or limit the number of noncitizens who can apply for asylum at a port of entry on the U.S.-Mexico border.

**Objections:** Defendants object to Request for Production No. 44 as seeking information that is outside the scope of Rule 34, as overly broad and unduly

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

1  burdensome, as not proportional to the needs of the case, and as seeking information

2  protected from disclosure by the attorney-client privilege, the attorney work-product

3  doctrine, the deliberative process privilege, and the law enforcement privilege and/or

4  as law enforcement sensitive. First, Defendants object to Request for Production No.

5  44 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs,

6  Definition E (defining "communications" to include "the exchange of information

7  by or through any mode or medium including, but not limited to, spoken word,

8  written correspondence, any form of technology, face-to-face meetings or conveying

9  of information through third person(s) to some other intended recipient"). Federal

10  Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce

11  "documents," "electronically stored information," or "designated tangible things."

12  Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things.

13  Defendants accordingly construe the term "communications" to include only those

14  items permitted by Rule 34 as stated in Objections to Definitions No. 4.

15       Second, a request to produce all documents or communications related to the

16  delineated topics is not proportional to the needs of the case and is overly broad and

17  unduly burdensome. Based on Plaintiffs' definitions, a complete response would

18  require Defendants to collect and search the documents of each of the named

19  Defendants; each of the named Defendants' "agents, representatives, employees,

20  attorneys and investigators"; all of U.S. Customs and Border Protection, including

21  "its headquarters and offices, including any divisions, subdivisions, components or

22  sections therein; CBP offices at ports of entry, including any divisions, subdivisions

23  or sections therein; or any other CBP organizational structures, including but not

24  limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors

25  hired by CBP"; and all of the U.S. Department of Homeland Security, including "its

26  headquarters and offices, including any divisions, subdivisions, components or

27  sections therein, or any other DHS organizational structures." *See* Pls.' Second

28  RFPs, Definitions A–C. DHS employs more than 240,000 people, and CBP employs

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Third, Defendants object to Request for Production No. 44 to the extent it seeks information protected from disclosure by the attorney work-product doctrine. To the extent a request for "all documents" relating to "any formal or informal policy, practice, or effort to meter or limit the number of noncitizens who can apply for asylum at a port of entry on the U.S.-Mexico border" implicates, for example, "documents and tangible things prepared by a party or his representative in anticipation of litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman v. Taylor*, 329 U.S. 495 (1947), including "documents or the compilation of materials prepared by agents of the attorney in preparation for litigation," *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)), such as, for example, notes and emails of Defendants' attorneys and staff, and draft and final internal documents, such documents are protected from disclosure by the attorney work-product doctrine.

Fourth, Defendants object to Request for Production No. 44 to the extent it seeks information protected by the attorney-client privilege. To the extent a request for "all documents" relating to "any formal or informal policy, practice, or effort to meter or limit the number of noncitizens who can apply for asylum at a port of entry on the U.S.-Mexico border" implicates, for example, confidential communications

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

between attorneys and clients which are made for the purpose of giving legal advice, *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981), such documents are privileged and protected from disclosure.

Fifth, Defendants object to Request No. 44 to the extent it seeks information protected from disclosure by the deliberative process privilege. To the extent a request for "all documents" relating to "any formal or informal policy, practice, or effort to meter or limit the number of noncitizens who can apply for asylum at a port of entry on the U.S.-Mexico border" implicates, for example, documents that are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

Finally, Defendants object to Request No. 44 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for "all documents" relating to "any formal or informal policy, practice, or effort to meter or limit the number of noncitizens who can apply for asylum at a port of entry on the U.S.-Mexico border" implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants also object to RFP 44 in accordance with Objections Which Apply to All RFPs Nos. 1, 3, and 6-10; Objections to Definitions Nos. 4-6, 8, and 10; and,

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

Objections to Instructions Nos. 1, 2, and 4.

Accordingly, Defendants understand and construe Request for Production No. 44 as seeking non-privileged documents relating to metering at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.

**Response:** In accordance with their objections, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, and will produce or log documents responsive to this understanding and construction of Request for Production No. 44 after the parties agree on such sources and protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present, that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

## Request for Production No. 45

To the extent that you claim that the actions of any CBP official or DHS official that are relevant to Plaintiffs' claims were ultra vires, all documents that support your contention that those actions were ultra vires.

**Objections:** Defendants object to Request for Production No. 45 as vague and confusing. Defendants understand and construe Request No. 45 as seeking documents governing Office of Field Operations employees' inspection and

processing of aliens without travel documents.  Defendants also object to RFP 45 in accordance with Objections Which Apply to All RFPs Nos. 1 and 6-10; Objections to Definitions Nos. 1-3, 5-6, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

**Response:**  In accordance with their objections, Defendants will provide documents responsive to their understanding and construction of Request for Production No. 45. Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, and will produce or log documents responsive to this understanding and construction of Request for Production No. 45 after the parties agree on such sources and protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present, that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

**Request for Production No. 46**

Documents sufficient to show how you, CBP, and/or DHS define the term "capacity" when use with respect to (a) conducting credible fear interviews, (b) housing persons awaiting credible fear interviews, (c) processing asylum seekers, and/or (d) inspecting asylum seekers, including but not limited to documents showing how you,

1    CBP, and/or DHS calculate such a capacity in terms of personnel, space, time, and
2    funding.

3        **Objections:** Defendants object to Request for Production No. 46 to the extent
4    it seeks information that is protected from disclosure by the attorney work-product
5    doctrine, the attorney-client privilege, the deliberative process privilege, and the law
6    enforcement privilege and/or as law enforcement sensitive. First, consistent with
7    Defendants' General Objection No. 6, Defendants construe and understand this
8    Request as seeking information relating to the capacity of the San Ysidro, Otay
9    Mesa, Hidalgo, and Laredo ports of entry to safely inspect and process the traveling
10   public. Defendants also understand and construe the term "capacity" as it is used in
11   the regular course of business.

12       Second, Defendants object to Request for Production No. 46 to the extent it
13   seeks information protected from disclosure by the attorney work-product doctrine.
14   To the extent a request for documents relating to the capacity of the San Ysidro,
15   Otay Mesa, Hidalgo, and Laredo ports of entry implicates, for example, "documents
16   and tangible things prepared by a party or his representative in anticipation of
17   litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989)
18   (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman v. Taylor*, 329 U.S. 495 (1947),
19   including "documents or the compilation of materials prepared by agents of the
20   attorney in preparation for litigation," *United States v. Richey*, 632 F.3d 559, 567
21   (9th Cir. 2011) (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)), such as,
22   for example, notes and emails of Defendants' attorneys and staff, and draft and final
23   internal documents, such documents are protected from disclosure by the attorney
24   work-product doctrine.

25       Third, Defendants object to Request for Production No. 46 to the extent it
26   seeks information protected by the attorney-client privilege. To the extent a request
27   for documents relating to the capacity of the San Ysidro, Otay Mesa, Hidalgo, and
28   Laredo ports of entry implicates, for example, confidential communications between

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

attorneys and clients which are made for the purpose of giving legal advice, *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981), such documents are privileged and protected from disclosure.

Fourth, Defendants object to Request No. 46 to the extent it seeks information protected from disclosure by the deliberative process privilege. To the extent a request for documents relating to the capacity of the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry implicates, for example, documents that are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co*., 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

Fifth, Defendants object to Request No. 46 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for documents relating to the capacity of the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Sixth, Defendants object to Request No. 46 as vague and confusing, and to the extent it reflects an incorrect statement of the law.

Defendants also object to RFP 46 in accordance with Objections Which Apply to All RFPs Nos. 1, 4, 6-10; Objections to Definitions Nos. 1-3, 5, 9, and 10.

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

Accordingly, Defendants understand and construe Request for Production No. 46 as seeking non-privileged documents relating to the capacity of the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry to safely inspect and process the traveling public. Defendants will produce documents responsive to this understanding and construction of this Request.

**Response:** Subject to and without waiving their objections, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, and will produce or log documents responsive to this understanding and construction of Request for Production No. 46 after the parties agree on such sources and protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present, that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

## Request for Production No. 47

Documents sufficient to show any contracts, bids, or agreements that you have entered into with any third party, including any government contractor, related to establishing, expanding or decreasing the capacity of any port of entry on the U.S.-Mexico border with respect to (a) conducting credible fear interviews, (b) housing persons awaiting credible fear interviews, (c) processing asylum seekers, and/or (d)

inspecting asylum seekers.

**Objections:** Defendants object to Request for Production No. 47 as not proportional to the needs of the case, as overly broad and unduly burdensome, and as seeking documents protected from disclosure by the deliberative process privilege and the law enforcement privilege and/or as law enforcement sensitive. First, a request to produce "contracts, bids, or agreements" relating to "the capacity of any port of entry on the U.S.-Mexico border" is not proportional to the needs of the case and is overly broad and unduly burdensome, as it is not limited to the four ports of entry at issue. Consistent with Defendants' General Objection No. 6, Defendants construe this Request as seeking documents relating to the capacity of the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry to safely inspect and process the traveling public.

Second, Defendants object to Request No. 47 to the extent it seeks internal documents that are protected from disclosure by the deliberative process privilege. To the extent any documents relating to contracts, bids, or agreements regarding to the capacity of the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure. *See, e.g.*, *L.H. v. Schwarzenegger*, No. 06-cv-2042, 2007 WL 1531420, at *4–5 (E.D. Cal. May 25, 2007) (report & recommendation) ("budget change proposals" protected by deliberative process privilege), *affirmed in relevant part*, 2007 WL 2009807, at *3–4 (E.D. Cal. July 6, 2007).

Third, Defendants object to Request No. 47 to the extent it seeks information

protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent any documents relating to contracts, bids, or agreements regarding the capacity of the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry implicate "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Fourth, Defendants object to Request No. 47 as vague and confusing, and to the extent it reflects an incorrect statement of the law. Defendants construe this Request as seeking documents relating to the capacity of the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry to safely inspect and process the traveling public.

Defendants also object to RFP 47 in accordance with Objections Which Apply to All RFPs Nos. 1, 4, 6, and 10; Objections to Definitions Nos. 1, 5, 8, and 9-10; and, Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with their objections, Defendants will produce non-privileged documents relating to contracts, bids, or agreements regarding the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports' capacities to safely inspect and process the traveling public. Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

**Request for Production No. 48**

All documents related to any limitation on the capacity of any port of entry on the U.S.-Mexico border with respect to (a) conducting credible fear interviews, (b) housing persons awaiting credible fear interviews, (c) processing asylum seekers, and/or (d) inspecting asylum seekers.

**Objections and Responses:** Defendants object to Request for Production No. 48 as duplicative of and subsumed by other Requests for Production, including Requests No. 41, No. 44, No. 46, No. 47, No. 53, No. 75, and No. 83. Defendants expressly incorporate their objections and responses to Requests No. 41, No. 44, No. 46, No. 47, No. 53, No. 75, and No. 83 herein.

**Request for Production No. 49**

All documents related to limitations on, or lack of, the capacity of any port of entry on the U.S.-Mexico border to inspect, handle, process or accept asylum seekers being used as a basis to adopt policies that limit the total number of asylum seekers processed at any port of entry on the U.S.-Mexico border.

**Objections and Responses:** Defendants object to Request for Production No. 49 as duplicative of and subsumed by other Requests for Production, including Requests No. 41, No. 44, No. 46, No. 47, No. 53, No. 75, and No. 83. Defendants expressly incorporate their objections and responses to Requests No. 41, No. 44, No. 46, No. 47, No. 53, No. 75, and No. 83 herein.

**Request for Production No. 50**

All documents related to efforts by you, DHS, or CBP to increase or decrease the capacity of any port of entry on the U.S.-Mexico border with respect to (a) conducting credible fear interviews, (b) housing persons awaiting credible fear interviews, (c) processing asylum seekers, and/or (d) inspecting asylum seekers.

**Objections and Responses:** Defendants object to Request for Production No. 50 as duplicative of and subsumed by other Requests for Production, including Requests No. 41, No. 44, No. 46, No. 47, No. 53, No. 75, and No. 83. Defendants expressly incorporate their objections and responses to Requests No. 46 and No. 47 herein.

**Request for Production No. 51**

All documents related to the maximum capacity of any port of entry along the U.S.-Mexico border with respect to processing noncitizens seeking asylum in the United States, and any changes in that maximum capacity level, including but not limited to the steps taken to accommodate surges (i.e., higher than usual number of asylum seekrs [*sic*]) in the number of noncitizens seeking asylum at a port of entry along the U.S.-Mexico border.

**Objections and Responses:** Defendants object to Request for Production No. 51 as duplicative of and subsumed by other Requests for Production, including Requests No. 41, No. 44, No. 46, No. 47, No. 53, No. 75, and No. 83. Defendants expressly incorporate their objections and responses to Requests No. 46 and No. 47 herein.

**Request for Production No. 52**

All documents related to efforts by you, DHS, or CBP to limit the capacity of any port of entry on the U.S.-Mexico border with respect to (a) conducting credible fear interviews, (b) housing persons awaiting credible fear interviews, (c) processing asylum seekers, and/or (d) inspecting asylum seekers.

**Objections and Responses:** Defendants object to Request for Production No. 52 as duplicative of and subsumed by other Requests for Production, including Requests No. 41, No. 44, No. 46, No. 47, No. 53, No. 75, and No. 83. Defendants expressly incorporate their objections and responses to Requests No. 46 and No. 47 herein.

### Request for Production No. 53

All documents related to appropriations or funding requests made by you, CBP, or DHS regarding increasing the capacity of any port of entry on the U.S.-Mexico border with respect to (a) conducting credible fear interviews, (b) housing persons awaiting credible fear interviews, (c) processing asylum seekers, and/or (d) inspecting asylum seekers.

**Objections:** Defendants object to Request for Production No. 53 as seeking information not relevant to any party's claims or defenses, not proportional to the needs of the case, overly broad and unduly burdensome, seeking documents protected from disclosure by the deliberative process privilege, and seeking documents that can be obtained from some other source that is more convenient, less burdensome, and less expensive for the parties. First, not "all documents" related to the delineated "appropriations or funding requests" bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful.

Second, a request to produce "all documents related to appropriations or funding requests" is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definitions, a complete response would require Defendants to collect and search the documents of each of the named

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A–C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome. *See* Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Third, Defendants object to Request No. 53 to the extent it seeks internal budget proposals and related information protected from disclosure by the deliberative process privilege. The deliberative process privilege protects internal government deliberations in order to promote the "frank and candid discussion necessary for effective government." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–51 (1975). The privilege is designed "to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Assembly of California v. United States Dep't of Commerce*, 968

F.2d 916, 920 (9th Cir. 1992). Information is protected from disclosure by this privilege when it is (1) predecisional and (2) deliberative, thereby containing opinions, recommendations, or advice. *Id.* at 149. "Examples of documents that qualify as predecisional include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted). Any documents reflecting the agency's budget- or appropriations-related deliberations fall into this category of protected information. *See, e.g.*, *L.H. v. Schwarzenegger*, No. 06-cv-2042, 2007 WL 1531420, at *4–5 (E.D. Cal. May 25, 2007) (report & recommendation) ("budget change proposals" protected by deliberative process privilege), *affirmed in relevant part*, 2007 WL 2009807, at *3–4 (E.D. Cal. July 6, 2007).

Finally, Defendants object to Request No. 53 as vague and confusing, and to the extent it reflects an incorrect statement of the law.

Defendants also object to RFP 53 in accordance with Objections Which Apply to All RFPs Nos. 1, 4, 5-6-10; Objections to Definitions Nos. 1-3, 5-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

Accordingly, Defendants understand and construe Request for Production No. 53 as seeking final appropriations- or funding-related documents created by DHS regarding the capacity of the San Ysidro, Otay Mesa, Hidalgo, or Laredo ports of entry to safely inspect and process the traveling public. Such documents can be obtained "from some other source that is more convenient, less burdensome, [and] less expensive" for the parties. Fed. R. Civ. P. 26(b)(2)(C)(i). The Department of Homeland Security's final appropriations- or funding-related documents for fiscal years 2003 through 2020, including budgets-in-brief, can be located at: https://www.dhs.gov/dhs-budget.

**Response:**    In accordance with their objections, Defendants state that final

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

appropriations- or funding-related documents created by DHS can be obtained "from some other source that is more convenient, less burdensome, [and] less expensive" for the parties. Fed. R. Civ. P. 26(b)(2)(C)(i). The Department of Homeland Security's final appropriations- or funding-related documents for fiscal years 2003 through 2020, including budgets-in-brief, can be located at: https://www.dhs.gov/ dhs-budget. Because these documents are publicly available, Defendants will not conduct a separate search for documents in response to Request No. 53.  However, Defendants will produce or log additional responsive documents if such responsive documents are collected as part of the parties' agreed-upon search.

**Request for Production No. 54**

All of your public statements and speeches concerning the capacity of any port of entry, or the capacity of ports of entry or of the United States generally, with respect to (a) conducting credible fear interviews, (b) housing persons awaiting credible fear interviews, (c) processing asylum seekers, and/or (d) inspecting asylum seekers.

**Objections:** Defendants object to Request for Production No. 54 as overly broad and unduly burdensome and as seeking information that can be obtained "from some other source that is more convenient, less burdensome, [and] less expensive" for the parties. Fed. R. Civ. P. 26(b)(2)(C)(i). DHS's press releases can be obtained at: https://www.dhs.gov/news-releases/press-releases. Public statements or speeches of DHS officials can be obtained at: https://www.dhs.gov/news-releases/speeches. CBP's media releases can be obtained at: https://www.cbp.gov/newsroom/media-releases/all. Public statements or speeches of CBP officials can be obtained at: https://www.cbp.gov/newsroom/speeches.

Defendants object to Request No. 54 as vague and confusing, and to the extent it reflects an incorrect statement of the law.  Defendants construe this Request as seeking documents relating to the capacity of the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry to safely inspect and process the traveling public.

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

Defendants also object to RFP 54 in accordance with Objections Which Apply to All RFPs Nos. 1, 4, 6, and 10; Objections to Definitions Nos. 1, 5-6, and 10; and, Objections to Instructions Nos. 1 and 4.

**Response:**    Because the documents sought by Request No. 54 can be found at the foregoing URLs, Defendants will not be conducting a separate search for responsive documents. However, should Defendants locate any responsive documents during their search for documents related to the four ports of entry at issue, Defendants will produce or log such documents.

## Request for Production No. 55

All communications between you and any White House staff member, including but not limited to members of the White House Domestic Policy Council, related to limiting, capping, or metering the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum.

**Objections:** Defendants object to Request for Production No. 55 as seeking information that is outside the scope of Rule 34, as not proportional to the needs of the case, as overly broad and unduly burdensome, and as seeking information protected from disclosure by the deliberative process privilege. First, Defendants object to Request for Production No. 55 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communications" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communications" to include only those items permitted by Rule 34 as stated

1    in Objections to Definitions No. 4.

2          Second, a request to produce all communications between the named

3    Defendants' and any White House staff members, if they exist, is not proportional

4    to the needs of the case and is overly broad and unduly burdensome. Based on

5    Plaintiffs' definition, a complete response would require Defendants to collect and

6    search the documents of each of the named Defendants and each of the named

7    Defendants' "agents, representatives, employees, attorneys and investigators." *See*

8    Pls.' Second RFPs, Definition A. Acting Secretary McAleenan oversees more than

9    240,000 employees. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27,

10   2017), https://www.dhs.gov/about-dhs. Commissioner McAleenan oversees more

11   than 60,000 employees. "About CBP," U.S. Customs and Border Protection (Last

12   modified April 18, 2019), https://www.cbp.gov/about. Executive Assistant

13   Commissioner    Owen    oversees    more    than    29,000    employees.

14   https://www.cbp.gov/about/leadership-organization/executive-assistant-

15   commissioners-offices/field-operations (Oct. 19, 2016); Second Am. Compl. ¶ 38.

16   Collecting and searching through the documents of all of these individuals, as

17   Plaintiffs request, is plainly not proportional to the needs of this case and is overly

18   broad and unduly burdensome, especially considering that any potentially relevant

19   communications between the named Defendants and White House staff members

20   relating to an agency policy are protected by the deliberative process privilege, and

21   any other communications are not relevant to the issues in this case. *See* Fed. R.

22   Evid. 401; *cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3

23   n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that

24   obligates a party to "canvas every employee who might have had a conversation with

25   [the plaintiff]" would be "onerous and over burdensome").

26          Third, any potentially relevant communications between the named

27   Defendants and any White House staff members, including members of the

28   Domestic Policy Council, are protected by the deliberative process privilege. The

deliberative process privilege protects internal government deliberations in order to promote the "frank and candid discussion necessary for effective government." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–51 (1975). The privilege is designed "to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Assembly of California v. United States Dep't of Commerce,* 968 F.2d 916, 920 (9th Cir. 1992). Information is protected from disclosure by this privilege when it is (1) predecisional and (2) deliberative, thereby containing opinions, recommendations, or advice. *Id.* at 149. "Examples of documents that qualify as predecisional include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted). A request for documents relating to "limiting, capping, or metering the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum," to the extent such communications precede a final agency decision, are protected from disclosure under this privilege. To the extent such communications are unrelated to any final agency decision, they are not relevant to the issues in this case; discovery may be permissible in an APA case in the rare circumstances where it is necessary "to ascertain the contours of the *precise policy at issue*," but not to ascertain the irrelevant communications of government actors. *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 530 F.3d 925, 928 (D.C. Cir. 2008) (emphasis added); *see also* Minute Order (paperless) of Feb. 21, 2019, *Hispanic Affairs Project, et al. v. Perez, et al.*, No. 15-cv-1562 (D.D.C. Feb. 21, 2019) (on remand from *Hispanic Affairs Project v. Acosta*, 901 F.3d 378 (D.C. Cir. 2018), permitting "limited discovery" to allow the plaintiffs "to discover facts needed to prove the existence and the parameters of any *policy*" (emphasis added)).

Defendants object to Request No. 55 to the extent it requests any

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

communications protected from disclosure by executive privilege.

Defendants also object to RFP 55 in accordance with Objections Which Apply to All RFPs Nos. 1, 3, 4, and 6-10; and Objections to Definitions Nos. 1, 4, and 8-10; and, Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with Defendants' objections, and in light of Request No. 55 being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

### Request for Production No. 56

All communications between CBP and any White House staff member related to limiting, capping, or metering the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum.

**Objections:** Defendants object to Request for Production No. 56 as seeking information that is outside the scope of Rule 34, as not proportional to the needs of the case, as overly broad and unduly burdensome, and as seeking information

protected from disclosure by the deliberative process privilege. First, Defendants object to Request for Production No. 56 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communications" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communications" to include only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

Second, a request to produce all communications between CBP and any White House staff members, if they exist, is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definition, a complete response would require Defendants to collect and search the documents of all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP." *See* Pls.' Second RFPs, Definition B. Commissioner McAleenan oversees more than 60,000 employees. "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Executive Assistant Commissioner Owen oversees more than 29,000 employees. https://www.cbp.gov/about/leadership-organization/executive-assistant-commissioners-offices/field-operations (Oct. 19, 2016); Second Am. Compl. ¶ 38. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the

70

1    needs of this case and is overly broad and unduly burdensome, especially

2    considering that any potentially relevant communications between CBP and White

3    House staff members relating to an agency policy are protected by the deliberative

4    process privilege, and any other communications are not relevant to the issues in this

5    case. *See* Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL

6    4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an

7    interrogatory that obligates a party to "canvas every employee who might have had

8    a conversation with [the plaintiff]" would be "onerous and over burdensome").

9         Third, any potentially relevant communications between CBP and any White

10    House staff members are protected by the deliberative process privilege. The

11    deliberative process privilege protects internal government deliberations in order to

12    promote the "frank and candid discussion necessary for effective government."

13    *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–51 (1975). The privilege is

14    designed "to allow agencies freely to explore possibilities, engage in internal

15    debates, or play devil's advocate without fear of public scrutiny." *Assembly of*

16    *California v. United States Dep't of Commerce,* 968 F.2d 916, 920 (9th Cir. 1992).

17    Information is protected from disclosure by this privilege when it is (1) predecisional

18    and (2) deliberative, thereby containing opinions, recommendations, or advice. *Id.*

19    at 149. "Examples of documents that qualify as predecisional include

20    recommendations, draft documents, proposals, suggestions, and other subjective

21    documents which reflect the personal opinions of the writer rather than the policy of

22    the agency." *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235

23    (D.D.C. 2008) (internal quotations and citation omitted). A request for documents

24    relating to "limiting, capping, or metering the number of noncitizens who are

25    allowed to present themselves at a port of entry on the U.S.-Mexico border to seek

26    asylum," to the extent such communications precede a final agency decision, are

27    protected from disclosure under this privilege. To the extent such communications

28    are unrelated to any final agency decision, they are not relevant to the issues in this

71

case; discovery may be permissible in an APA case in the rare circumstances where
it is necessary "to ascertain the contours of the *precise policy at issue*," but not to
ascertain the irrelevant communications of government actors. *Venetian Casino
Resort, L.L.C. v. E.E.O.C.*, 530 F.3d 925, 928 (D.C. Cir. 2008) (emphasis added);
*see also* Minute Order (paperless) of Feb. 21, 2019, *Hispanic Affairs Project, et al.
v. Perez, et al.*, No. 15-cv-1562 (D.D.C. Feb. 21, 2019) (on remand from *Hispanic
Affairs Project v. Acosta*, 901 F.3d 378 (D.C. Cir. 2018), permitting "limited
discovery" to allow the plaintiffs "to discover facts needed to prove the existence
and the parameters of any *policy*" (emphasis added)).

Defendants object to Request No. 56 to the extent it requests any
communications protected from disclosure by executive privilege.

Defendants also object to RFP 56 in accordance with Objections Which Apply
to All RFPs Nos. 1, 3-4, 6-10; Objections to Definitions Nos. 2, 4, and 8, and10.

**Response:** In accordance with Defendants' objections, and in light of
Request No. 56 being disproportional to the needs of the case considering that the
burden and expense of the requested discovery outweighs its likely benefit,
Defendants will limit their search to a limited number of custodial and non-custodial
sources. Defendants will continue to confer with Plaintiffs in identifying reasonable
custodial and non-custodial sources and document identification protocols.
However, in the event the parties cannot agree, Defendants will limit their search to
the sources identified in Defendants' portion of the Supplement to the Parties' Joint
26(f) Report (ECF No. 243), from which Defendants will produce or log documents
responsive to this Request, dating from January 1, 2016, to the present that can be
located after a reasonable search. Documents created on or after July 12, 2017, the
date of Plaintiffs' original complaint (ECF No. 1), representing either
communications with counsel or communications or documents relating to the actual
conduct of litigation post-complaint—and thus clearly protected by either the
attorney-client privilege or the work-product doctrine—will be treated as non-

responsive and therefore will not appear on any privilege log.

**Request for Production No. 57**

All communications between DHS and any White House staff member related to limiting, capping, or metering the number of individuals that are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum.

**Objections:** Defendants object to Request for Production No. 57 as seeking information that is outside the scope of Rule 34, as not proportional to the needs of the case, as overly broad and unduly burdensome, and as seeking information protected from disclosure by the deliberative process privilege. First, Defendants object to Request for Production No. 57 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communications" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communications" to include only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

Second, a request to produce all communications between DHS and any White House staff members, if they exist, is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definition, a complete response would require Defendants to collect and search the documents of the entire U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definition C. Acting

Secretary McAleenan oversees more than 240,000 employees. *See* "About DHS,"
U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs.
Collecting and searching through the documents of all of these individuals, as
Plaintiffs request, is plainly not proportional to the needs of this case and is overly
broad and unduly burdensome, especially considering that any potentially relevant
communications between DHS and White House staff members relating to an
agency policy are protected by the deliberative process privilege, and any other
communications are not relevant to the issues in this case. *See* Fed. R. Evid. 401; *cf.*
*Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal.
Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party
to "canvas every employee who might have had a conversation with [the plaintiff]"
would be "onerous and over burdensome").

      Third, any potentially relevant communications between DHS and any White
House staff members are protected by the deliberative process privilege. The
deliberative process privilege protects internal government deliberations in order to
promote the "frank and candid discussion necessary for effective government."
*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–51 (1975). The privilege is
designed "to allow agencies freely to explore possibilities, engage in internal
debates, or play devil's advocate without fear of public scrutiny." *Assembly of
California v. United States Dep't of Commerce,* 968 F.2d 916, 920 (9th Cir. 1992).
Information is protected from disclosure by this privilege when it is (1) predecisional
and (2) deliberative, thereby containing opinions, recommendations, or advice. *Id.*
at 149. "Examples of documents that qualify as predecisional include
recommendations, draft documents, proposals, suggestions, and other subjective
documents which reflect the personal opinions of the writer rather than the policy of
the agency." *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235
(D.D.C. 2008) (internal quotations and citation omitted). A request for documents
relating to "limiting, capping, or metering the number of noncitizens who are

allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum," to the extent such communications precede a final agency decision, are protected from disclosure under this privilege. To the extent such communications are unrelated to any final agency decision, they are not relevant to the issues in this case; discovery may be permissible in an APA case in the rare circumstances where it is necessary "to ascertain the contours of the *precise policy at issue*," but not to ascertain the irrelevant communications of government actors. *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 530 F.3d 925, 928 (D.C. Cir. 2008) (emphasis added); *see also* Minute Order (paperless) of Feb. 21, 2019, *Hispanic Affairs Project, et al. v. Perez, et al.*, No. 15-cv-1562 (D.D.C. Feb. 21, 2019) (on remand from *Hispanic Affairs Project v. Acosta*, 901 F.3d 378 (D.C. Cir. 2018), permitting "limited discovery" to allow the plaintiffs "to discover facts needed to prove the existence and the parameters of any *policy*" (emphasis added)).

Defendants object to Request No. 57 to the extent it requests any communications protected from disclosure by executive privilege.

Defendants also object to RFP 57 in accordance with Objections Which Apply to All RFPs Nos. 1, 4, 6-7, and 9-10; Objections to Definitions Nos. 3-4, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with Defendants' objections, and in light of Request No. 56 being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present that can be

located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

**Request for Production No. 58**

All communications between you and any labor union representing CBP or DHS employees, including but not limited to the National Border Patrol Council, related to limiting, capping, or metering the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum.

**Objections:** Defendants object to Request for Production No. 58 as seeking information not relevant to any parties' claims and defenses, not proportional to the needs of the case, and as overly broad and unduly burdensome. First, any communications between the named Defendants and "any labor union representing CBP or DHS employees" is not relevant to any party's claims or defenses because they do not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. A communication with a labor union does not have "any tendency" to make any of the issues in this case "more or less probable than [they] would be without" that communication, nor is the fact that a DHS or CBP employee may communicate with a labor union "of consequence in determining" the issues, because labor unions do not set agency policy. Fed. R. Evid. 401.

Request for Production No. 58 is further not relevant to the parties' claims or

defenses to the extent it seeks communications with labor unions that do not represent employees of the Office of Field Operations, the entity responsible for overseeing ports of entry. Any communications between the named Defendants and labor unions representing employees of any other DHS or CBP entities—such as the U.S. Border Patrol, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, the Transportation Security Administration, the Coast Guard, and the Federal Emergency Management Agency—are therefore not related to "limiting, capping, or metering the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum."

Second, a request to produce any of the named Defendants' communications with any labor union representing DHS or CBP employees, if they exist, is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definition, a complete response would require Defendants to collect and search the documents of each of the named Defendants and each of the named Defendants' "agents, representatives, employees, attorneys and investigators." *See* Pls.' Second RFPs, Definition A. Acting Secretary McAleenan oversees more than 240,000 employees. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs. Commissioner McAleenan oversees more than 60,000 employees. "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Executive Assistant Commissioner Owen oversees more than 29,000 employees. https://www.cbp.gov/about/leadership-organization/executive-assistant-commissioners-offices/field-operations (Oct. 19, 2016); Second Am. Compl. ¶ 38. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome, especially considering that any communications between the named Defendants and a labor union are of no consequence to the issues. *See* Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL

4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Defendants also object to RFP 58 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, and 6-10; and Objections to Definitions Nos. 1-4, and 8-10.

**Response:**   In light of the foregoing objections, Defendants will not search for or produce documents responsive to Request for Production No. 58.

## Request for Production No. 59

All communications between DHS and any labor union representing CBP or DHS employees, including but not limited to the National Border Patrol Council, related to limiting, capping, or metering the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum.

**Objections:** Defendants object to Request for Production No. 59 as seeking information not relevant to any parties' claims and defenses, not proportional to the needs of the case, and as overly broad and unduly burdensome. First, any communications between DHS and "any labor union representing CBP or DHS employees" is not relevant to any party's claims or defenses because those communications do not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. A communication with a labor union does not have "any tendency" to make any of the issues in this case "more or less probable than [they] would be without" that communication, nor is the fact that DHS may communicate with a labor union "of consequence in determining" the issues, because labor unions do not set agency policy. Fed. R. Evid. 401.

Request for Production No. 59 is further not relevant to the parties' claims or defenses to the extent it seeks communications with labor unions that do not represent employees of the Office of Field Operations, the entity responsible for overseeing ports of entry. Communications with labor unions representing employees of any other DHS or CBP entities—such as the U.S. Border Patrol, U.S. Immigration and Customs Enforcement, the Transportation Security Administration, the Coast Guard, and the Federal Emergency Management Agency—are therefore not related to "limiting, capping, or metering the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum."

Second, a request to produce any communications between DHS and any labor union representing DHS or CBP employees is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definition, a complete response would require Defendants to collect and search the documents of the entire U.S. Department of Homeland Security, "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definition C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome, especially considering that any communications between DHS and a labor union are of no consequence to the issues. *See* Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over

burdensome").

Defendants also object to RFP 59 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, and 6-9; and Objections to Definitions Nos. 2-4, and 8-10.

**Response:**    In light of the foregoing objections, Defendants will not search for or produce documents responsive to Request for Production No. 59.

## Request for Production No. 60

All communications between CBP and any labor union representing CBP or DHS employees, including but not limited to the National Border Patrol Council, related to limiting, capping, or metering the number of individuals that are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum.

**Objections:** Defendants object to Request for Production No. 60 as seeking information not relevant to any parties' claims and defenses, not proportional to the needs of the case, and as overly broad and unduly burdensome. First, any communications between CBP and "any labor union representing CBP or DHS employees" is not relevant to any party's claims or defenses because those communications do not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. A communication with a labor union does not have "any tendency" to make any of the issues in this case "more or less probable than [they] would be without" that communication, nor is the fact that DHS may communicate with a labor union "of consequence in determining" the issues, because labor unions do not set agency policy. Fed. R. Evid. 401.

Request for Production No. 60 is further not relevant to the parties' claims or defenses to the extent it seeks communications with labor unions that do not

represent employees of the Office of Field Operations, the entity responsible for overseeing ports of entry. Communications with labor unions representing employees of any other DHS or CBP entities—such as the U.S. Border Patrol, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, the Transportation Security Administration, the Coast Guard, and the Federal Emergency Management Agency—are therefore not related to "limiting, capping, or metering the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum."

Second, a request to produce any communications between CBP and any labor union representing DHS or CBP employees is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definition, a complete response would require Defendants to collect and search the documents of the entirety of U.S. Customs and Border Protection, "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP." Pls.' Second RFPs, Definition B. CBP employs more than 60,000 employees. *See* "About CBP," U.S. Customs and Border Protection (last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome, especially considering that any communications between CBP and a labor union are of no consequence to the issues. *See* Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Defendants also object to RFP 60 in accordance with Objections Which Apply

to All RFPs Nos. 1, 4, and 6-10 and Objections to Definitions Nos. 2-4, and 8-10.

**Response:** In light of the foregoing objections, Defendants will not search for or produce documents responsive to Request for Production No. 60.

**Request for Production No. 61**

All communications between you and the Federation for American Immigration Reform related to limiting, capping, or metering the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum.

**Objections:** Defendants object to Request for Production No. 61 as seeking information not relevant to any parties' claims and defenses, not proportional to the needs of the case, and as overly broad and unduly burdensome. First, any communications between the named Defendants and the Federation for American Immigration Reform is not relevant to any party's claims or defenses because they do not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. A communication with an advocacy group not involved in this action does not have "any tendency" to make any of the issues in this case "more or less probable than [they] would be without" that communication, nor is the fact that a DHS or CBP employee may communicate with such an advocacy group "of consequence in determining" the issues, because advocacy groups do not set agency policy. Fed. R. Evid. 401.

Second, a request to produce any communications between the named Defendants and the Federation for American Immigration Reform is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on

Plaintiffs' definition, a complete response would require Defendants to collect and search the documents of each of the named Defendants and each of the named Defendants' "agents, representatives, employees, attorneys and investigators." *See* Pls.' Second RFPs, Definition A. Acting Secretary McAleenan oversees more than 240,000 employees. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs. Commissioner McAleenan oversees more than 60,000 employees. "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Executive Assistant Commissioner Owen oversees more than 29,000 employees. https://www.cbp.gov/about/leadership-organization/executive-assistant-commissioners-offices/field-operations (Oct. 19, 2016); Second Am. Compl. ¶ 38. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome, especially considering that communications between the named Defendants and a non-party advocacy group are of no consequence to the issues. *See* Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Defendants also object to RFP 61 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, and 6-10 and Objections to Definitions Nos. 1, 4, and 8, and 10.

**Response:**   In light of the foregoing objections, Defendants will not conduct a separate search for documents responsive to Request for Production No. 61.

### Request for Production No. 62

All communications between DHS and the Federation for American Immigration Reform related to limiting, capping, or metering the number of noncitizens who are

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

1   allowed to present themselves at a port of entry on the U.S.-Mexico border to seek
2   asylum.

3       **Response:**   Defendants object to Request for Production No. 62 as seeking
4   information not relevant to any parties' claims and defenses, not proportional to the
5   needs of the case, and as overly broad and unduly burdensome. First, any
6   communications between DHS and the Federation for American Immigration
7   Reform is not relevant to any party's claims or defenses because they do not bear on
8   the issues in this case: whether the named Plaintiffs were, at the time of their alleged
9   injury, arriving aliens applying for admission to the United States; whether
10  Defendants have implemented a formal policy or taken final agency action to
11  "restrict access to the asylum process at ports of entry along the U.S.-Mexico
12  border"; and whether such a policy or final agency action, if it exists, and in the form
13  it exists, is unlawful. A communication with an advocacy group not involved in this
14  action does not have "any tendency" to make any of the issues in this case "more or
15  less probable than [they] would be without" that communication, nor is the fact that
16  a DHS or CBP employee may communicate with such an advocacy group "of
17  consequence in determining" the issues, because advocacy groups do not set agency
18  policy. Fed. R. Evid. 401.

19      Second, a request to produce any communications between DHS and the
20  Federation for American Immigration Reform is not proportional to the needs of the
21  case and is overly broad and unduly burdensome. Based on Plaintiffs' definition, a
22  complete response would require Defendants to collect and search the documents of
23  the entire U.S. Department of Homeland Security, "its headquarters and offices,
24  including any divisions, subdivisions, components or sections therein, or any other
25  DHS organizational structures." *See* Pls.' Second RFPs, Definition C. DHS employs
26  more than 240,000 people, and CBP employs more than 60,000 people. *See* "About
27  DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/
28  about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome, especially considering that communications between DHS and a non-party advocacy group are of no consequence to the issues. *See* Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Defendants also object to RFP 62 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, and 6-10 and Objections to Definitions Nos. 3-4, 8, and 10.

**Response:** In light of the foregoing objections, Defendants will not conduct a separate search for documents responsive to Request for Production No. 62.

### Request for Production No. 63

All communications between CBP and the Federation for American Immigration Reform related to limiting, capping, or metering the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum.

**Objections:** Defendants object to Request for Production No. 63 as seeking information not relevant to any parties' claims and defenses, not proportional to the needs of the case, and as overly broad and unduly burdensome. First, any communications between CBP and the Federation for American Immigration Reform is not relevant to any party's claims or defenses because they do not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico

border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. A communication with an advocacy group not involved in this action does not have "any tendency" to make any of the issues in this case "more or less probable than [they] would be without" that communication, nor is the fact that a DHS or CBP employee may communicate with such an advocacy group "of consequence in determining" the issues, because advocacy groups do not set agency policy. Fed. R. Evid. 401.

Second, a request to produce any communications between CBP and the Federation for American Immigration Reform is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definition, a complete response would require Defendants to collect and search the documents of the entirety of U.S. Customs and Border Protection, "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP." *See* Pls.' Second RFPs, Definition B. CBP employs more than 60,000 people. *See* "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome, especially considering that communications between DHS and a non-party advocacy group are of no consequence to the issues. *See* Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Defendants also object to RFP 63 in accordance with Objections Which Apply

to All RFPs Nos. 1, 3-4, and 6-10 and Objections to Definitions Nos. 2, 4, 8, and 10.

**Response:**   In light of the foregoing objections, Defendants will not conduct a separate search for documents responsive to Request for Production No. 63.

## Request for Production No. 64

All documents and communications by you, CBP, or DHS referring to individuals seeking asylum as "illegal" or suggesting that such noncitizens are seeking to enter the United States improperly.

**Objections:** Defendants object to Request for Production No. 64 as seeking information that is outside the scope of Rule 34, not relevant to any party's claims or defenses, not proportional to the needs of the case, as overly broad and unduly burdensome, and vague and ambiguous. First, Defendants object to Request for Production No. 64 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communication(s)" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communication(s)" to include only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

Second, any documents and communications by the named Defendants, CBP, or DHS "referring to individuals seeking asylum as 'illegal' or suggesting that such noncitizens are seeking to enter the United States improperly" is not relevant to any party's claims or defenses because they do not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying

for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. A reference to an alien seeking asylum in the United States as "illegal," or a suggestion that such an alien is seeking to enter the United States improperly, does not have "any tendency" to make any of the issues in this case "more or less probable than [they] would be without" such a reference or suggestion, nor are such references or suggestions "of consequence in determining" the issues, because individual DHS or CBP employees' opinions on such matters do not represent agency policy. Fed. R. Evid. 401.

Third, a request to produce all documents and communications by the named Defendants, CBP, or DHS "referring to individuals seeking asylum as 'illegal' or suggesting that such noncitizens are seeking to enter the United States improperly" is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definitions, a complete response would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A–C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security

(Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome, especially considering that any of the statements Plaintiffs refer to, if they exist, are of no consequence to the issues. *See* Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Finally, the phrase "suggesting that such noncitizens are seeking to enter the United States improperly" is vague and ambiguous. The term "suggestion" is vague because it is not defined and is susceptible to multiple interpretations and meanings. The terms "seeking" and "improperly" are vague and ambiguous in that they do not describe with reasonable particularity the actions Plaintiffs are referring to.

Defendants also object to RFP 64 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, and 6-10 and Objections to Definitions Nos. 1-6, and 10.

**Response:** In light of the foregoing objections, Defendants will not conduct a separate search for documents responsive to Request for Production No. 64.

## Request for Production No. 65

All documents or communications by you, CBP, or DHS referring to noncitizens seeking asylum in the United States as exploiting a legal "loophole."

**Objections:** Defendants object to Request for Production No. 65 as seeking information not relevant to any party's claims or defenses, not proportional to the needs of the case, and as overly broad and unduly burdensome. First, any documents and communications by the named Defendants, CBP, or DHS "referring to noncitizens seeking asylum in the United States as exploiting a legal "loophole'" is

not relevant to any party's claims or defenses because they do not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. A reference to an alien seeking asylum in the United States as "exploiting a legal 'loophole'" does not have "any tendency" to make any of the issues in this case "more or less probable than [they] would be without" such a reference or suggestion, nor are such references or suggestions "of consequence in determining" the issues, because individual DHS or CBP employees' opinions on such matters do not represent agency policy. Fed. R. Evid. 401.

Second, a request to produce all documents and communications by the named Defendants, CBP, or DHS "referring to noncitizens seeking asylum in the United States as exploiting a legal 'loophole'" is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definitions, a complete response would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A–C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See*

90

"About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome, especially considering that any reactions, comments, or criticisms are of no consequence to the issues. *See* Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Defendants also object to RFP 65 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, 6-10; Objections to Definitions Nos. 1-6, and 10; and, Objections to Instructions Nos. 1, 2, and 4..

**Response:**   In light of the foregoing objections, Defendants will not conduct a separate search for documents responsive to Request for Production No. 65.

## Request for Production No. 66

All documents or communications related to the factual basis for any public statement by you, CBP, DHS, the Attorney General of the United States, any White House staffer, or the President of the United States asserting that there has been an "influx," "flood," or "surge" in noncitizens seeking asylum at ports of entry along the U.S.-Mexico border.

**Objections:** Defendants object to Request for Production No. 66 as seeking documents not in the named parties "possession, custody or control." Fed. R. Civ. P. 34(a)(1). In the Ninth Circuit, the standard for possession, custody, or control is the legal right to obtain documents. *See 7-UP Bottling Co. v. Archer Daniels Midland Co.* (*In re Citric Acid Litig.*), 191 F.3d 1090, 1107 (9th Cir. 1999). "Actual control is required, not merely theoretical control based on an 'inherent

relationship.'" *Solis v. Tomco Auto Products, Inc.*, No. 12-cv-618, 2012 WL 12878752, at *1 (C.D. Cal. Sept. 20, 2012) (quoting *United States v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1453–54 (9th Cir. 1989)). Defendants do not have the legal right to obtain documents related to the factual basis for public statements made by the Attorney General, White House staffers, or the President of the United States. Accordingly, Defendants construe Request for Production No. 66 as seeking documents concerning the factual basis for any public statement by the named Defendants, CBP spokespersons, and DHS spokespersons asserting that there has been an "influx," "flood," or "surge" in noncitizens seeking asylum at ports of entry along the U.S.-Mexico border.

Based on this construction, Defendants object to Request for Production No. 66 to the extent it seeks documents that can be obtained "from some other source that is more convenient, less burdensome, [and] less expensive" for the parties. Fed. R. Civ. P. 26(b)(2)(C)(i). Statistics related to the number of inadmissible aliens encountered by the Office of Field Operations at ports of entry along the U.S.-Mexico border can be found at: https://www.cbp.gov/newsroom/stats/sw-border-migration; https://www.cbp.gov/newsroom/stats/sw-border-migration/fy-2018; https://www.cbp.gov/newsroom/stats/sw-border-migration-fy2017; https://www.cbp.gov/newsroom/stats/sw-border-migration/ofo-sw-border-inadmissibles; https://www.cbp.gov/newsroom/stats/ofo-sw-border-inadmissibles; and https://www.cbp.gov/newsroom/stats/ofo-sw-border-inadmissibles-fy2017. Statistics related to the number of inadmissible aliens who claim a fear of persecution at ports of entry along the U.S.-Mexico border can be found at: https://www.cbp.gov/newsroom/stats/sw-border-migration/claims-fear; and https://www.cbp.gov/newsroom/stats/sw-border-migration/claims-fear/inadmissibles-field-office.

Defendants also object to RFP 66 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, 6-10; Objections to Definitions Nos. 1-6, 8, and 10; and, Objections to Instructions Nos. 1-4.

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

**Response:** Because the documents sought by Request for Production No. 66 can be found at the foregoing URLs, Defendants will not conduct a separate search for responsive documents. However, Defendants will produce or log additional responsive documents if they are presently aware of them or if such responsive documents are collected as part of the parties' agreed-upon search.

**Request for Production No. 67**

Documents sufficient to show the crime rates amongst (a) noncitizens who are seeking asylum in the United States at ports of entry along the U.S.-Mexico border, (b) noncitizens who are paroled into the United States after seeking asylum in the United States at ports of entry along the U.S.-Mexico border, and/or (c) noncitizens who are granted asylum in the United States after presenting themselves at ports of entry along the U.S.-Mexico border.

**Objections:** Defendants object to Request for Production No. 67 as vague and ambiguous and as seeking information not relevant to any party's claims or defenses. First, the term "crime rates" is vague and ambiguous and is not defined by Plaintiffs.

Second, any documents related to "crime rates" amongst the three delineated categories of aliens is not relevant to any party's claims or defenses because they do not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. The crime rates amongst aliens seeking asylum at ports of entry along the U.S.-Mexico border, aliens who are paroled after seeking asylum at ports of entry along the U.S.-Mexico border, and aliens who are granted asylum after applying at a port of entry along the U.S.-Mexico border are facially not relevant to any of the issues in this case. *See* Fed. R. Evid. 401.

Defendants also object to RFP 67 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, and 6-10; Objections to Definitions Nos. 5 and 10.

**Response:**   In light of the foregoing objection, Defendants will not search for, produce, or log documents responsive to Request for Production No. 67.

## Request for Production No. 68

All documents or communications related to the September 27, 2018 report by DHS' Office of Inspector General, including but not limited to the factual basis for the report's statement that CBP was "regulating the flow of asylum-seekers at ports of entry."

**Objections:** Defendants object to Request for Production No. 68 as seeking information not relevant to any party's claims or defenses, protected from disclosure by the attorney-client privilege, and protected from disclosure by the deliberative process privilege. First, Request No. 68 seeks all documents or communications related to the September 27, 2018 OIG report, not just those related to the factual basis for the report's statement that CBP was "regulating the flow of asylum-seekers at ports of entry." The remainder of the report is related to OIG's initial observations regarding family separation issues and the zero tolerance policy, as its title suggests. Such observations do not have "any tendency" to make any of the issues in this action "more or less probable than [they] would be without" the observations, nor are they "of consequence in determining" the issues in this action. Fed. R. Evid. 401.

Second, Defendants object to Request No. 68 to the extent it seeks documents protected from disclosure by the attorney-client privilege, which protects confidential communications between attorneys and clients made for the purpose of giving legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "The attorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citing *Smith v. McCormick*, 914 F.2d

1153, 1159–60 (9th Cir. 1990)). Any and all communications conducted in the course of the attorney-client relationship that relate to the September 27, 2018 OIG report and not disclosed (or otherwise maintained in a manner consistent with the purpose of the privilege), to the extent they exist, are thus protected by the attorney-client privilege.

Third, Defendants object to Request No. 68 to the extent it seeks information protected from disclosure by the deliberative process privilege. The deliberative process privilege protects internal government deliberations in order to promote the "frank and candid discussion necessary for effective government." *NLRB v. Sears, Roebuck & Co*., 421 U.S. 132, 150–51 (1975). Information is protected from disclosure by this privilege when it is (1) predecisional and (2) deliberative, thereby containing opinions, recommendations, or advice. *Id*. at 149. "Examples of documents that qualify as predecisional include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted). A request for *all* documents and communications relating to the OIG report would include predecisional, deliberative documents, such as recommendations, drafts, proposals, and suggestions. In light of these objections, Defendants accordingly understand and construe Request for Production No. 68 as seeking only non-privileged documents and communications related to the report's statements that CBP "was limiting the flow of asylum-seekers at ports of entry."

Defendants also object to RFP 68 in accordance with Objections Which Apply to All RFPs Nos. 1, 4, and 6-10 and Objections to Definitions Nos. 2-, 4-6, and 8-10.

**Response:** Subject to and without waiving the foregoing objections, accordance with Defendants' objections, and in light of the Request being disproportional to the needs of the case, Defendants will limit their search to a

limited number of custodial and non-custodial sources in accordance with their reasonable construction of Request No. 68. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce all non-privileged documents responsive to this Request, dating from January 1, 2016, to the present that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log

**Request for Production No. 69**

All documents and communications by you, CBP, or DHS using derogatory language or ethnic slurs to refer to individuals seeking to present themselves at any port of entry on the U.S.-Mexico border or to the countries those individuals are from, including but not limited to references to such individuals as "criminals," "animals," or seeking to "infest" or "invade" the United States.

**Objections:** Defendants object to Request for Production No. 69 as vague and ambiguous, as seeking information that is outside the scope of Rule 34, as not relevant to any party's claims or defenses, as not proportional to the needs of the case, and as overly broad and unduly burdensome. First, the phrase "individuals seeking to present themselves" is vague and ambiguous and is not defined by Plaintiffs, as stated in the Objections Applying to all Requests No. 4.

Second, Defendants object to Request for Production No. 69 to the extent it

seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communication(s)" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communication(s)" to include only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

Third, the named Defendants', DHS's, and CBP's use of derogatory language or ethnic slurs in reference to the delineated persons, to the extent such statements exist, are not relevant because they do not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. The use of derogatory language by individual employees, if such statements exist, would not have "any tendency" to make any of the issues in this case "more or less probable than [they] would be without" the "reaction," nor would such statements be "of consequence in determining" the issues. Fed. R. Evid. 401. "[T]he actual subjective motivation of agency decisionmakers is *immaterial as a matter of law . . . .*" *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 156 F.3d 1279, 1279 (D.C. Cir. 1998) (emphasis added) (emphasis added). When a party challenges agency action as arbitrary and capricious," as Plaintiffs have here, "the reasonableness of the agency's action is judged in accordance with its *stated* reasons." *Id.* at 1280 (emphasis added) (citing *Citizens to Preserve Overton Park,*

*Inc. v. Volpe*, 401 U.S. 402 (1971)). "[I]t is clear that the ordinary APA cause of action does not directly call into question the agency's subjective intent." *Id.* at 1280; *McCray v. United States*, 195 U.S. 27, 56 (1905) ("The decisions of this court from the beginning lend no support whatever to the assumption that the judiciary may restrain the exercise of lawful power on the assumption that a wrongful purpose or motive has caused the power to be exerted."); *id.* at 53–55. Whether individual CBP officers have ever used derogatory language is accordingly not relevant to this case.

Fourth, Request No. 69 is vague and ambiguous because Plaintiffs do not define the terms " plan," "policy," or "practice," and it is unclear how those terms are distinct or differ from one another.

Finally, a request to search for and produce the delineated statements of the named Defendants, DHS, and CBP is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definitions, a complete response would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A–C.

Although Plaintiffs limit the definitions of "your," "CBP," and "DHS" based on what is "appropriate in the context" of each request, there is nothing in Request for Production No. 69 that indicates what the "appropriate context" of a search for such statements might be. *See id.* DHS employs more than 240,000 people, and CBP

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome, especially considering that the statements sought are of no consequence to the issues. *See* Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Defendants also object to RFP 69 in accordance with Objections Which Apply to All RFPs Nos. 1-2, 4, and 6-10 and Objections to Definitions Nos. 1-6, 9, and 10.

**Response:** In light of the foregoing objections, Defendants will not conduct search for, produce, or log documents responsive to Request for Production No. 69.

## Request for Production No. 70

All documents and communications related to the origination, planning, and/or adoption of any formal or informal plan, policy, or practice with respect to limiting, metering, or capping the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum.

**Objections:** Defendants object to Request for Production No. 70 as seeking information that is outside the scope of Rule 34, not proportional to the needs of the case, overly broad and unduly burdensome, and protected from disclosure under the attorney-client privilege, the deliberative process privilege, the attorney work-product doctrine, and the law enforcement privilege and/or as law enforcement sensitive. First, Defendants object to Request for Production No. 70 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E

(defining "communication(s)" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communication(s)" to include only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

Second, a request to search for and produce "all documents" related to the origination, planning, and/or adoption of any formal or informal plan, policy, or practice with respect to limiting, metering, or capping the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum" is not proportional to the needs of the case and is overly broad and unduly burdensome. Request No. 70 is not directed to any person and is thus facially overbroad. Even assuming Request No. 70 is directed to the named Defendants, DHS, and CBP (as many of Plaintiffs other Requests are), a complete response, based on Plaintiffs' definitions, would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A–C. DHS

employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Third, Defendants object to Request No. 70 to the extent it seeks information protected from disclosure by the attorney-client privilege. To the extent a request for "all documents" related to the origination, planning, and/or adoption of any formal or informal plan, policy, or practice with respect to limiting, metering, or capping the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum" implicates, for example, confidential communications between attorneys and clients which are made for the purpose of giving legal advice, *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981), such documents are privileged and protected from disclosure.

Fourth, any potentially relevant information related to "the origination, planning, and/or adoption of any" agency action of the type Plaintiffs refer to is protected, on its face, by the deliberative process privilege. To the extent a request for "all documents" "related to the origination, planning, and/or adoption of any formal or informal plan, policy, or practice with respect to limiting, metering, or capping the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum" implicates, for example, documents that are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149

(1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

Finally, Defendants object to Request No. 70 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for "all documents" "related to the origination, planning, and/or adoption of any formal or informal plan, policy, or practice with respect to limiting, metering, or capping the number of noncitizens who are allowed to present themselves at a port of entry on the U.S.-Mexico border to seek asylum" implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants also object to RFP 70 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, and 6-10; Objections to Definitions Nos. 4-6, 8, and 10; and Objections to Instructions Nos. 1, 2, and 4.

**Response:**  In accordance with Defendants' objections, and in light of Request No. 70 being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols. However, in the event the parties cannot agree, Defendants will limit their search to

the sources identified in Defendants' portion of the Supplement to the Parties' Joint
26(f) Report (ECF No. 243), from which Defendants will produce or log documents
responsive to this Request, dating from January 1, 2016, to the present that can be
located after a reasonable search.

**Request for Production No. 71**

All documents and communications related to the motivations or intentions of you,
CBP, or DHS with respect to limiting, metering, or capping the number of
noncitizens who are allowed to present themselves at a port of entry on the U.S.-
Mexico border to seek asylum.

**Objections:** Defendants object to Request for Production No. 71 as seeking
information outside the scope of Rule 34, not relevant to any party's claims or
defenses, not proportional to the needs of the case, overly broad and unduly
burdensome, vague and ambiguous, and protected from disclosure by the attorney-
client privilege, the deliberative process privilege, and the attorney work-product
doctrine. First, Defendants object to Request for Production No. 71 to the extent it
seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E
(defining "communication(s)" to include "the exchange of information by or through
any mode or medium including, but not limited to, spoken word, written
correspondence, any form of technology, face-to-face meetings or conveying of
information through third person(s) to some other intended recipient"). Federal Rule
of Civil Procedure 34 allows a party to serve requests to inspect or produce
"documents," "electronically stored information," or "designated tangible things."
Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things.
Defendants accordingly construe the term "communication(s)" to include only those
items permitted by Rule 34 as stated in Objections to Definitions No. 4.

Second, the "motivations or intentions" of any individual DHS or CBP
employee, including the named Defendants, are facially irrelevant because they do

not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. "[I]t is clear that the ordinary APA cause of action does not directly call into question the agency's subjective intent." *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 156 F.3d 1279, 1280 (D.C. Cir. 1998). "When a party challenges agency action as arbitrary and capricious," as Plaintiffs have here, "the reasonableness of the agency's action is judged in accordance with its *stated* reasons." *Id.* (emphasis added) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971)). Consequently, "the actual subjective motivation of agency decisionmakers is *immaterial as a matter of law . . . .*" *Id.* at 1279 (emphasis added); *McCray v. United States*, 195 U.S. 27, 56 (1905) ("The decisions of this court from the beginning lend no support whatever to the assumption that the judiciary may restrain the exercise of lawful power on the assumption that a wrongful purpose or motive has caused the power to be exerted."); *id.* at 53–55. The subjective "motivations or intentions" of any individual DHS or CBP employee are accordingly not relevant to this case.

Third, a request to search for and produce "all documents" related to the subjective "motivations or intentions" of the named Defendants, DHS, and CBP is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definitions, a complete response would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions

or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A–C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome, especially considering that the documents sought are "immaterial as a matter of law" to the issues in this case. *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 156 F.3d 1279, 1279 (D.C. Cir. 1998); Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Fourth, the terms "motivations" and "intentions" are vague and ambiguous, as they are susceptible to multiple understandings and do not specifically describe the information Plaintiffs seek.

Fifth, Defendants object to Request No. 71 to the extent it seeks information protected from disclosure by the attorney-client privilege. The attorney-client privilege protects confidential communications between attorneys and clients made for the purpose of giving legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "The attorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice."

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

1    *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citing *Smith v.*
2    *McCormick*, 914 F.2d 1153, 1159–60 (9th Cir. 1990)). Thus, any and all
3    communications conducted in the course of the attorney-client relationship related
4    to the subjective motivations or intentions of individual agency employees that have
5    not been disclosed (or have otherwise been maintained in a manner consistent with
6    the purpose of the privilege), to the extent they exist, are protected by the attorney-
7    client privilege.

8        Sixth, Defendants object to Request No. 71 to the extent it seeks information
9    protected from disclosure by the deliberative process privilege. The deliberative
10   process privilege protects internal government deliberations in order to promote the
11   "frank and candid discussion necessary for effective government." *NLRB v. Sears,*
12   *Roebuck & Co.*, 421 U.S. 132, 150–51 (1975). The privilege is designed "to allow
13   agencies freely to explore possibilities, engage in internal debates, or play devil's
14   advocate without fear of public scrutiny." *Assembly of California v. United States*
15   *Dep't of Commerce,* 968 F.2d 916, 920 (9th Cir. 1992). Information is protected
16   from disclosure by this privilege when it is (1) predecisional and (2) deliberative,
17   thereby containing opinions, recommendations, or advice. *Id.* at 149. "Examples of
18   documents that qualify as predecisional include recommendations, draft documents,
19   proposals, suggestions, and other subjective documents which reflect the personal
20   opinions of the writer rather than the policy of the agency." *Ctr. for Medicare*
21   *Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations
22   and citation omitted). A request for *all* documents relating to the subjective
23   motivations or intentions of agency employees would include predecisional,
24   deliberative documents, such as recommendations, drafts, proposals, and
25   suggestions and are thus protected from disclosure by the deliberative process
26   privilege.

27       Finally, Defendants object to Request No. 71 to the extent it seeks documents
28   protected from disclosure by the attorney work-product doctrine. The work-product

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

doctrine protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman v. Taylor*, 329 U.S. 495 (1947). "The work-product doctrine covers documents or the compilation of materials prepared by agents of the attorney in preparation for litigation." *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)). Defendants will assert privileges specific to each request in their privilege log, on the production itself, or in their response to a specific RFP. Documents generated after the filing of Plaintiffs' original complaint (ECF No. 1) in this action representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

Defendants also object to RFP 71 in accordance with Objections Which Apply to All RFPs Nos. 1-4 and 6-10; Objections to Definitions Nos. 1-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

Accordingly, Defendants understand and construe Request for Production No. 71 as seeking non-privileged documents related to the stated reasons of CBP's Office of Field Operations for metering, including at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.

**Response:** In accordance with Defendants' objections, and in light of Request No. 71 being disproportional to the needs of the case, considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, and will produce or log documents responsive to this understanding and construction of

Request for Production No. 71 after the parties agree on such sources and protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

**Request for Production No. 72**

All documents and communications related to any relationship, connection, or link between the inspection and/or processing of noncitizens seeking asylum at ports of entry along the U.S.-Mexico border and (a) a desire, plan, or effort to deter, disincentivize, dissuade, or prevent noncitizens from coming to the United States and/or (b) a desire, plan, or effort to encourage, incentivize, or force noncitizens to enter or attempt to enter the United States between ports of entry on the U.S.-Mexico border.

**Objections:** Defendants object to Request for Production No. 72 as seeking information outside the scope of Rule 34, not relevant to any party's claims or defenses, not proportional to the needs of the case, overly broad and unduly burdensome, and protected from disclosure by the deliberative process privilege. First, Defendants object to Request for Production No. 72 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communication(s)" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence,

any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communication(s)" to include only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

Second, Defendants object to Request No. 72 to the extent it seeks information beyond the agency's stated reasons for any purported final agency action, as such information is immaterial and irrelevant to the issues in this case. "[I]t is clear that the ordinary APA cause of action does not directly call into question the agency's subjective intent." *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 156 F.3d 1279, 1280 (D.C. Cir. 1998). "When a party challenges agency action as arbitrary and capricious," as Plaintiffs have here, "the reasonableness of the agency's action is judged in accordance with its *stated* reasons." *Id.* (emphasis added) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971)). Consequently, "the actual subjective motivation of agency decisionmakers is *immaterial as a matter of law* . . . ." *Id.* at 1279 (emphasis added); *McCray v. United States*, 195 U.S. 27, 56 (1905) ("The decisions of this court from the beginning lend no support whatever to the assumption that the judiciary may restrain the exercise of lawful power on the assumption that a wrongful purpose or motive has caused the power to be exerted."); *id.* at 53–55. Thus, to the extent any individual agency decisionmaker's purported "desire, plan, or effort to deter, disincentivize, dissuade, or prevent noncitizens from coming to the United States," or "desire, plan, or effort to encourage, incentivize, or force noncitizens to enter or attempt to enter the United States between ports of entry on the U.S.-Mexico border," differ from the agency's stated reasons for any final agency action, such "desire[s]," if they exist, are immaterial and irrelevant as a

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

1   matter of law to the issues in this case.

2          Third, a request to search for and produce "all documents" relating to a

3   purported "desire, plan, or effort to deter, disincentivize, dissuade, or prevent

4   noncitizens from coming to the United States," or a purported "desire, plan, or effort

5   to encourage, incentivize, or force noncitizens to enter or attempt to enter the United

6   States between ports of entry on the U.S.-Mexico border," is not proportional to the

7   needs of the case and is overly broad and unduly burdensome. Request No. 72 is not

8   directed to any person and is thus facially overbroad. Even assuming Request No.

9   72 is directed to the named Defendants, DHS, and CBP (as many of Plaintiffs other

10  Requests are), a complete response, based on Plaintiffs' definitions, would require

11  Defendants to collect and search the documents of each of the named Defendants;

12  each of the named Defendants' "agents, representatives, employees, attorneys and

13  investigators"; all of U.S. Customs and Border Protection, including "its

14  headquarters and offices, including any divisions, subdivisions, components or

15  sections therein; CBP offices at ports of entry, including any divisions, subdivisions

16  or sections therein; or any other CBP organizational structures, including but not

17  limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors

18  hired by CBP"; and all of the U.S. Department of Homeland Security, including "its

19  headquarters and offices, including any divisions, subdivisions, components or

20  sections therein, or any other DHS organizational structures." *See* Pls.' Second

21  RFPs, Definitions A–C. DHS employs more than 240,000 people, and CBP employs

22  more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security

23  (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and

24  Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about.

25  Collecting and searching through the documents of all of these individuals, as

26  Plaintiffs request, is plainly not proportional to the needs of this case and is overly

27  broad and unduly burdensome, Fed. R. Evid. 401; *cf. Alfaro v. City of San Diego*,

28  No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford,

M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome"), especially considering that "the reasonableness of the agency's action is judged in accordance with its *stated* reasons." *In re Subpoena Duces Tecum*, 156 F.3d at 1279 (emphasis added).

Fourth, processing may encompass actions such as a secondary inspection for agricultural or customs purposes. *See* U.S. DHS PRIVACY IMPACT ASSESSMENT FOR THE TECS SYSTEM: CBP PRIMARY AND SECONDARY PROCESSING at 5 (December 22, 2010), https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-tecs-december2010_0.pdf. Activities like these that may be included in the processing of an alien are outside the scope of this lawsuit.

Finally, Defendants object to Request No. 72 to the extent it seeks information protected from disclosure by the deliberative process privilege. The deliberative process privilege protects internal government deliberations in order to promote the "frank and candid discussion necessary for effective government." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–51 (1975). The privilege is designed "to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Assembly of California v. United States Dep't of Commerce,* 968 F.2d 916, 920 (9th Cir. 1992). Information is protected from disclosure by this privilege when it is (1) predecisional and (2) deliberative, thereby containing opinions, recommendations, or advice. *Id.* at 149. "Examples of documents that qualify as predecisional include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted). A request for "all documents" relating to a purported "desire, plan, or effort to deter, disincentivize, dissuade, or prevent noncitizens from coming to the United States," or a purported "desire, plan, or effort to encourage, incentivize,

or force noncitizens to enter or attempt to enter the United States between ports of entry on the U.S.-Mexico border," to the extent such "desire[s]" constitute the agency's stated reasons, would include predecisional, deliberative documents, such as recommendations, drafts, proposals, and suggestions, that are protected from disclosure by the deliberative process privilege. To the extent such "desire[s]" do not constitute the agency's stated reasons for its actions, such documents are "immaterial as a matter of law." *In re Subpoena Duces Tecum*, 156 F.3d at 1279; *McCray*, 195 U.S. at 56 ("The decisions of this court from the beginning lend no support whatever to the assumption that the judiciary may restrain the exercise of lawful power on the assumption that a wrongful purpose or motive has caused the power to be exerted."); *id.* at 53–55.

Defendants also object to RFP 72 in accordance with Objections Which Apply to All RFPs Nos. 1-4 and 6-10; Objections to Definitions Nos. 4-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

Accordingly, Defendants understand and construe Request for Production No. 72 as seeking non-privileged documents related to the stated reasons of CBP's Office of Field Operations for metering, including at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.

**Response:** In accordance with Defendants' objections, and in light of Request No. 72 being disproportional to the needs of the case, considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, and will produce or log documents responsive to this understanding and construction of Request for Production No. 72 after the parties agree on such sources and protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint

26(f) Report (ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

## Request for Production No. 73

All documents and communications analyzing or assessing the impact of any formal or informal policy, practice, or effort to meter or limit the number of noncitizens who can apply for asylum at a port of entry on the U.S.-Mexico border on the health or wellbeing of asylum seekers.

**Objections:** Defendants object to Request for Production No. 73 as seeking information outside the scope of Rule 34, not relevant to any party's claims or defenses, and as vague and ambiguous. First, Defendants object to Request for Production No. 73 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communication(s)" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communication(s)" to include only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

Second, the effect of a "formal or informal policy, practice, or effort to meter or limit the number" of persons who may apply for asylum at ports of entry on the U.S.-Mexico border on those persons' "health or wellbeing" is not relevant to any party's claims or defenses because it does not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. An analysis or assessment of the effect of such alleged actions on a traveler's "health or wellbeing" does not have "any tendency" to make any of the issues in this case "more or less probable than [they] would be without" the analysis or assessment, nor are such analyses or assessments, to the extent they exist, "of consequence in determining" the issues. Fed. R. Evid. 401.

Finally, Defendants object to the term "wellbeing" as vague and ambiguous because it is not defined by Plaintiffs and is susceptible to multiple meanings. Defendants accordingly construe Request No. 73 as referring only to the "health" of the delineated persons.

Defendants also object to RFP 73 in accordance with Objections Which Apply to All RFPs Nos. 1, 4, and 6-10 and Objections to Definitions Nos. 4-6, and 10.

**Response:**   In light of the foregoing objections, Defendants will not search for, produce, or log documents responsive to Request for Production No. 73.

## Request for Production No. 74

All documents and communications analyzing or assessing the number of individuals turned back to Mexico and/or that CBP refuses to inspect and process as a part of any formal or informal policy, practice, or effort to meter or limit the number of noncitizens who can apply for asylum at a port of entry on the U.S.-

Mexico border, including but not limited to any documents setting goals or targets for the number of asylum seekers to be turned back from any port of entry or all ports of entry generally.

**Objections:** Defendants object to Plaintiffs' characterization that CBP "turn[s] back" individuals to Mexico and "refuses to inspect and/or process" individuals at ports of entry along the U.S.-Mexico border. To the extent Request No. 74 can be understood and construed as seeking statistics, data, or other numerical figures relating to the number of persons without travel documents in Mexico waiting to cross the border into the United States at a port of entry, Defendants expressly incorporate herein their objections to Request for Production No. 77.

Defendants also object to RFP 74 in accordance with Objections Which Apply to All RFPs Nos. 1, 4, 6-7, and 10; Objections to Definitions Nos. 2, 4-6, and 9-10; and Objections to Instructions Nos. 1, 2, and 4.

**Response:** Subject to and without waiving Defendants' objections, Defendants respond as follows: Defendants do not "refuse[] to inspect and/or process" individuals at ports of entry along the U.S.-Mexico border. Therefore, Defendants will not conduct a separate search for such documents. However, should Defendants locate any responsive documents related to the four ports of entry at issue if collected as a result of their agreed-upon search , Defendants will produce or log such documents.

## Request for Production No. 75

All documents relating to any statistics, data or other numerical figures, whether estimates or actual values, representing, analyzing or assessing CBP's or DHS's capacity to (a) inspect and process asylum seekers at any port of entry or at ports of entry generally along the U.S.-Mexico border, (b) conduct credible fear interviews at any port of entry or at ports of entry generally along the U.S.-Mexico border, and (c) house or otherwise care for noncitizens awaiting credible or reasonable fear

interviews, whether at a port of entry or elsewhere.

**Objections:** Defendants object to Request for Production No. 75 as seeking documents that can be obtained "from some other source that is more convenient, less burdensome, [and] less expensive" for the parties. Fed. R. Civ. P. 26(b)(2)(C)(i), as not proportionate to the needs of the case, as overly broad and unduly burdensome, as seeking information protected from disclosure by the deliberative process privilege and the law enforcement privilege and/or as law enforcement sensitive, and an incorrect statement of law, to the extent it implies that CBP conducts credible fear interviews. First, Defendants object to Request No. 75 to the extent it requests publicly available statistics and numerical figures, which can be found at: https://www.cbp.gov/newsroom/stats.

Second, a request to search for and produce "all documents" related to the delineated topics is not proportional to the needs of the case and is overly broad and unduly burdensome. Request No. 75 is not directed to any person and is thus facially overbroad. Even assuming Request No. 75 is directed to the named Defendants, DHS, and CBP (as many of Plaintiffs other Requests are), a complete response, based on Plaintiffs' definitions, would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A–C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See*

"About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.
gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified
April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the
documents of all of these individuals, as Plaintiffs request, is plainly not proportional
to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v.
City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21,
2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas
every employee who might have had a conversation with [the plaintiff]" would be
"onerous and over burdensome"). Further, Request No. 75 is not proportionate to
the needs of the case and is overly broad and unduly burdensome because it requests
all documents relating to statistics, data, or numerical figures relating to all ports of
entry on the U.S.-Mexico border. Consistent with the Objections Applying to All
Request No. 6, Defendants construe this Request as seeking documents relating to
the four ports of entry at issue.

Third, Defendants object to Request No. 75 to the extent it seeks information
protected from disclosure by the deliberative process privilege. To the extent any
analyses or assessments of the four ports' capacities are predecisional and
deliberative, thereby containing opinions, recommendations, or advice, *NLRB v.
Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975), including, but not limited to,
"recommendations, draft documents, proposals, suggestions, and other subjective
documents which reflect the personal opinions of the writer rather than the policy of
the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235
(D.D.C. 2008) (internal quotations and citation omitted), such documents are
privileged and protected from disclosure.

Fourth, Defendants object to Request No. 75 to the extent it seeks information
protected from disclosure by the law enforcement privilege and/or as law
enforcement sensitive. To the extent a request for "all documents" relating to the
named Defendants' "knowledge, assent, direction, acquiescence, authorization, or

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

consent to any formal or informal policy, practice, or effort to meter or limit the number of noncitizens that can apply for asylum at a port of entry on the U.S.-Mexico border" implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Finally, Defendants object to Request No. 75 to the extent it implies that CBP conducts credible or reasonable fear interviews at ports of entry, as only asylum officers conduct such interviews, and such interviews are not done at POEs.

Defendants also object to RFP 75 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, 6-7, and 10; Objections to Definitions Nos. 2-3, 5-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

Accordingly, Defendants understand and construe Request for Production No. 75 as seeking non-attorney-client privileged documents relating to statistics or data representing, analyzing, or assessing the Office of Field Operations' capacity to inspect and process the traveling public at the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry.

**Response:** In accordance with their objections, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, and will produce or log documents responsive to this understanding and construction of Request for Production No. 75 after the parties agree on such sources and protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

(ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present, that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or material generated at the direction of counsel—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

## Request for Production No. 76

All documents relating to any statistics, data or other numerical figures, whether estimates or actual values, representing CBP's or DHS's rate of processing of asylum seekers at ports of entry along the U.S.-Mexico border.

**Objections:** Defendants object to Request for Production No. 76 as seeking documents that can be obtained "from some other source that is more convenient, less burdensome, [and] less expensive" for the parties, Fed. R. Civ. P. 26(b)(2)(C)(i); as not proportionate to the needs of the case; and as overly broad and unduly burdensome. First, Defendants object to Request No. 76 to the extent it requests publicly available statistics and numerical figures, which can be found at: https://www.cbp.gov/newsroom/stats. Second, Request No. 76 is not proportionate to the needs of the case and is overly broad and unduly burdensome because it requests all documents relating to statistics, data, or numerical figures relating to all ports of entry on the U.S.-Mexico border. Consistent with the Objections Which Apply to All RFPs No. 6, Defendants construe this Request as seeking documents relating to the four ports of entry at issue.

Defendants object to Request No. 76 as vague and confusing, and to the extent it reflects an incorrect statement of the law.

Defendants also object to RFP 76 in accordance with Objections Which Apply to All RFPs Nos. 1, 4, 6-7 and 10; Objections to Definitions Nos. 2-3, 5-6, and 10;

and Objections to Instructions Nos. 1 and 4.

**Response:**  In accordance with their objections, Defendants will produce documents responsive to Request for Production No. 76 related to the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, and will produce or log documents responsive to this Request after the parties agree on such sources and protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present, that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

## Request for Production No. 77

All documents relating to any statistics, data or other numerical figures, whether estimates or actual values, representing, assessing or analyzing the number of noncitizens waiting to present themselves to seek asylum at any port of entry along the U.S.-Mexico border.

**Objections:** Defendants object to Request for Production No. 77 as seeking documents that can be obtained "from some other source that is more convenient, less burdensome, [and] less expensive" for the parties, Fed. R. Civ. P. 26(b)(2)(C)(i); as seeking information that is not relevant to any party's claims or defenses; as not proportionate to the needs of the case, overly broad and unduly burdensome, vague

and ambiguous; and seeking information protected from disclosure by the deliberative process privilege and the law enforcement privilege and/or as law enforcement sensitive. First, Defendants object to Request No. 77 to the extent it requests publicly available statistics and numerical figures, which can be found at: https://www.cbp.gov/newsroom/stats.

Second, the number of people without travel documents in Mexico waiting to cross the border into the United States at a port of entry is not relevant to any party's claims or defenses.

Third, a request to search for and produce "all documents" related to the delineated topics is not proportional to the needs of the case and is overly broad and unduly burdensome. Request No. 77 is not directed to any person and is thus facially overbroad. Even assuming Request No. 77 is directed to the named Defendants, DHS, and CBP (as many of Plaintiffs other Requests are), a complete response, based on Plaintiffs' definitions, would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A–C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs. gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome"). Further, Request No. 77 is not proportionate to the needs of the case and is overly broad and unduly burdensome because it requests all documents relating to statistics, data, or numerical figures relating to all ports of entry on the U.S.-Mexico border. Consistent with Objections With Apply to All RFPs No. 6, Defendants construe this Request as seeking documents relating to the four ports of entry at issue.

Fourth, Defendants object to Request No. 77 to the extent it seeks information protected from disclosure by the deliberative process privilege. To the extent any analyses or assessments of the number of persons without travel documents waiting in Mexico are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

Finally, Defendants object to Request No. 77 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for "all documents" relating to "any statistics, data or other numerical figures, whether estimates or actual values, representing, assessing or analyzing the number of noncitizens waiting to present themselves to seek asylum at any port of entry along the U.S.-Mexico border" implicates, for example, "law enforcement techniques and procedures," the

"confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants also object to RFP 77 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, 6-7, and 10; Objections to Definitions Nos. 5-6, 8, and 10; and Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with Defendants' objections, and in light of Request No. 77 being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants understand and construe Request No. 77 as limited to the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry. Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce all non-privileged documents responsive to this Request, dating from January 1, 2016, to the present that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

**Request for Production No. 78**

All documents relating to any statistics, data or other numerical figures, whether estimates or actual values, representing, assessing or analyzing the number of noncitizens whom CBP refuses to inspect and/or process at ports of entry along the U.S.-Mexico border.

**Objections:** Defendants object to Plaintiffs' characterization that CBP "refuses to inspect and/or process" individuals at ports of entry along the U.S.-Mexico border. CBP inspects such persons when the port has capacity to process them. To the extent Request No. 78 can be understood and construed as seeking statistics, data, or other numerical figures relating to the number of persons without travel documents in Mexico waiting to cross the border into the United States at a port of entry to apply for admission, Defendants object to this request as duplicative Request No. 77.

Defendants also object to RFP 78 in accordance with Objections Which Apply to All RFPs Nos. 1, 3, and 6-7, and 10; Objections to Definitions Nos. 2, 5-6, 8, and 10; and Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with their objections, Defendants respond as follows: Defendants do not "refuse[] to inspect and/or process" individuals at ports of entry along the U.S.-Mexico border. Therefore, Defendants will not conduct a separate search for such documents.

**Request for Production No. 79**

All documents relating to any statistics, data or other numerical figures, whether estimates or actual values, representing, assessing or analyzing the number of individuals told or instructed by CBP to wait in Mexico before presenting themselves to seek asylum.

**Objections:** Defendants object to Request for Production No. 79 as seeking information that is not relevant to any party's claims or defenses, as not

proportionate to the needs of the case, overly broad and unduly burdensome, and as seeking information protected from disclosure by the deliberative process privilege and the law enforcement privilege and/or as law enforcement sensitive. .

First, a request to search for and produce "all documents" related to the delineated topics is not proportional to the needs of the case and is overly broad and unduly burdensome. Request No. 79 is not directed to any person and is thus facially overbroad. Even assuming Request No. 79 is directed to the named Defendants, DHS, and CBP (as many of Plaintiffs other Requests are), a complete response, based on Plaintiffs' definitions, would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A–C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs. gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

"onerous and over burdensome"). Further, Request No. 79 is not proportionate to the needs of the case and is overly broad and unduly burdensome because it requests all documents relating to statistics, data, or numerical figures relating to all ports of entry on the U.S.-Mexico border. Consistent with Objections Which Apply to All RFPs Nos. 1 and 6, Defendants construe this Request as seeking documents relating to the four ports of entry at issue.

Second, Defendants object to Request No. 79 to the extent it seeks information protected from disclosure by the deliberative process privilege. To the extent any analyses or assessments of the number of people without travel documents waiting in Mexico are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

Third, Defendants object to Request No. 79 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for "all documents" relating to analyses or assessments of the number of persons instructed to wait in Mexico implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants also object to RFP 79 in accordance with Objections Which Apply to All RFPs Nos. 1, 4, 6-7, and 10; Objections to Definitions Nos. 2, 5-6, 8, and 10;

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

and Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with their objections, Defendants respond as follows: Defendants continue to investigate, but they are not currently aware of any statistics, data, or other numerical figures maintained by Defendants, of the number of people without travel documents who are instructed or told to wait in Mexico at any given time. Therefore, Defendants will not conduct a separate search for such documents. However, should Defendants locate any responsive documents related to the four ports of entry at issue collected as a result of their agreed-upon search for documents, Defendants will produce or log such documents.

## Request for Production No. 80

All documents relating to any statistics, data or other numerical figures, whether estimates or actual values, representing, assessing or analyzing the number of individuals apprehended or intercepted by Mexican authorities as they were approaching a port of entry to seek asylum.

**Objections:** Defendants object to Request for Production No. 80 as seeking information that is not relevant to any party's claims or defenses, as not proportionate to the needs of the case, as overly broad and unduly burdensome, as vague and ambiguous, and as seeking information protected from disclosure by the deliberative process privilege and the law enforcement privilege and/or as law enforcement sensitive. First, any documents relating to "the number of individuals apprehended or intercepted by Mexican authorities as they were approaching a port of entry to seek asylum" do not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. Whether Mexican

1    immigration officials "apprehend or intercept" persons in Mexican territory, subject
2    to Mexico's laws, does not bear on those issues. *See* Fed. R. Evid. 401.

3         Second, a request to search for and produce "all documents" related to the
4    delineated topics is not proportional to the needs of the case and is overly broad and
5    unduly burdensome. Request No. 80 is not directed to any person and is thus facially
6    overbroad. Even assuming Request No. 80 is directed to the named Defendants,
7    DHS, and CBP (as many of Plaintiffs other Requests are), a complete response,
8    based on Plaintiffs' definitions, would require Defendants to collect and search the
9    documents of each of the named Defendants; each of the named Defendants'
10   "agents, representatives, employees, attorneys and investigators"; all of U.S.
11   Customs and Border Protection, including "its headquarters and offices, including
12   any divisions, subdivisions, components or sections therein; CBP offices at ports of
13   entry, including any divisions, subdivisions or sections therein; or any other CBP
14   organizational structures, including but not limited to U.S. Border Patrol, U.S. Office
15   of Field Operations or private contractors hired by CBP"; and all of the U.S.
16   Department of Homeland Security, including "its headquarters and offices,
17   including any divisions, subdivisions, components or sections therein, or any other
18   DHS organizational structures." *See* Pls.' Second RFPs, Definitions A–C. DHS
19   employs more than 240,000 people, and CBP employs more than 60,000 people. *See*
20   "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.
21   gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified
22   April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the
23   documents of all of these individuals, as Plaintiffs request, is plainly not proportional
24   to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v.*
25   *City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21,
26   2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas
27   every employee who might have had a conversation with [the plaintiff]" would be
28   "onerous and over burdensome"). Further, Request No. 80 is not proportionate to

the needs of the case and is overly broad and unduly burdensome because it requests
all documents relating to statistics, data, or numerical figures relating to all ports of
entry on the U.S.-Mexico border. Consistent with Objections Which Apply to All
RFPs Nos. 1 and 6, Defendants construe this Request as seeking documents relating
to the four ports of entry at issue.

Third, Defendants object to the phrases "as they were approaching a port of
entry to seek asylum" as vague and ambiguous, as Defendants have no way of
knowing whether a particular person approaching a port of entry intends to seek
asylum or not until he or she crosses the border.

Fourth, Defendants object to Request No. 80 to the extent it seeks information
protected from disclosure by the deliberative process privilege. To the extent any
analyses or assessments of the number of individuals apprehended or intercepted by
Mexican authorities as they were approaching a port of entry to seek asylum are
predecisional and deliberative, thereby containing opinions, recommendations, or
advice, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975), including, but not
limited to, "recommendations, draft documents, proposals, suggestions, and other
subjective documents which reflect the personal opinions of the writer rather than
the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d
221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents
are privileged and protected from disclosure.

Fifth, Defendants object to Request No. 80 to the extent it seeks information
protected from disclosure by the law enforcement privilege and/or as law
enforcement sensitive. To the extent a request for "all documents" relating to
analyses or assessments of the number of individuals apprehended or intercepted by
Mexican authorities as they were approaching a port of entry to seek asylum
implicates, for example, "law enforcement techniques and procedures," the
"confidentiality of sources," the "protect[ion of] witnesses and law enforcement
personnel," "safeguard[ing] the privacy of individuals involved in an investigation,"

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants also object to RFP 80 in accordance with Objections Which Apply to All RFPs Nos. 1, 4-7, and 10; Objections to Definitions Nos. 5-6, 8, and 10; and Objections to Instructions Nos. 1, 2, and 4.

**Response:**  In accordance with their objections, Defendants respond as follows: Defendants do not, as a matter of agency policy, keep track of the number of individuals apprehended or intercepted by Mexican authorities as they were approaching a port of entry. Therefore, Defendants will not conduct a separate search for such documents. However, should Defendants locate any responsive documents during their search for documents related to the four ports of entry at issue, Defendants will produce or log such documents.

## Request for Production No. 81

All documents relating to any statistics, data or other numerical figures, whether estimates or actual values, representing, assessing or analyzing the number of individuals waiting in Mexico to present themselves at a port of entry to seek asylum.

**Objections and Responses:** Defendants object to Request for Production No. 81 as duplicative of and subsumed by other Requests for Production, including Requests No. 77 and No. 78. Defendants expressly incorporate their objections and responses to Requests No. 77 and No. 78 herein**.**

## Request for Production No. 82

All documents relating to any statistics, data or other numerical figures, whether estimates or actual values, regarding annual funding for physical facilities at ports of entry.

**Objections:** Defendants object to Request for Production No. 82 as seeking information not relevant to any party's claims or defenses, not proportional to the

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

needs of the case, overly broad and unduly burdensome, as seeking documents protected from disclosure by the deliberative process privilege, and seeking documents that can be obtained from some other source that is more convenient, less burdensome, and less expensive for the parties. First, not "all documents" related to the delineated "annual funding for physical facilities at ports of entry" bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful.

Second, a request to produce "all documents relating to any statistics, data or other numerical figures, whether estimates or actual values, regarding annual funding for physical facilities at ports of entry" is not proportional to the needs of the case and is overly broad and unduly burdensome. Request No. 82 is not directed to any person and is thus facially overbroad. Even assuming Request No. 82 is directed to the named Defendants, DHS, and CBP (as many of Plaintiffs other Requests are), a complete response, based on Plaintiffs' definitions, would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second

RFPs, Definitions A–C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome"). Further, Request No. 82 is not proportionate to the needs of the case and is overly broad and unduly burdensome because it requests all documents relating to statistics, data, or numerical figures relating to all ports of entry on the U.S.-Mexico border. Consistent with Objections Which Apply to All RFPs No. 6, Defendants construe this Request as seeking documents relating to the four ports of entry at issue.

Third, Defendants object to Request No. 82 to the extent it seeks internal documents protected from disclosure by the deliberative process privilege, as explained in Defendants' General Objection No. **Error! Reference source not found.**. To the extent any "statistics, data or other numerical figures, whether estimates or actual values, regarding annual funding for physical facilities at ports of entry" are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co*., 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure. *See, e.g.*, *L.H. v. Schwarzenegger*, No. 06-cv-2042, 2007 WL 1531420, at *4–5 (E.D. Cal.

May 25, 2007) (report & recommendation) ("budget change proposals" protected by deliberative process privilege), *affirmed in relevant part*, 2007 WL 2009807, at *3–4 (E.D. Cal. July 6, 2007).

Defendants also object to RFP 82 in accordance with Objections Which Apply to All RFPs Nos. 1, 6-7, and 10; Objections to Definitions Nos. 5-6, 8, and 10; and, Objections to Instructions Nos. 1, 2, and 4.

Accordingly, Defendants understand and construe Request for Production No. 82 as seeking "numerical figures regarding annual funding for physical facilities at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry."

**Response:**   In accordance with their objections, Defendants respond as follows: Documents responsive to Request No. 82 can be obtained "from some other source that is more convenient, less burdensome, [and] less expensive" for the parties. Fed. R. Civ. P. 26(b)(2)(C)(i). The Department of Homeland Security's final appropriations- or funding-related documents for fiscal years 2003 through 2020, including budgets-in-brief, can be located at: https://www.dhs.gov/dhs-budget. Therefore, Defendants will not conduct a separate search for such documents. However, should Defendants locate any responsive documents during their search for documents related to the four ports of entry at issue, Defendants will produce or log such documents.

## Request for Production No. 83

All documents relating to formal or informal communications with local, state or federal Mexican government officials or their agents, including but not limited to officials with the Instituto Nacional de Migración ("INM"), regarding (a) the arrival or processing of individuals expressing a desire to seek asylum or expressing a fear of returning to their countries of origin at or near ports of entry on the U.S.-Mexico border; (b) the apprehension or interdiction of, or interference with, individuals seeking asylum in the United States; and/or (c) the capacity of a port of entry along

the U.S.-Mexico border, or the United States generally, to inspect, process, house, care for, or interview individuals seeking asylum in the United States.

**Objections:** Defendants object to Request for Production No. 83 as not proportionate to the needs of the case, overly broad and unduly burdensome, and as seeking information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. First, a request to search for and produce "all documents relating to formal or informal communications with local, state or federal Mexican government officials or their agents" is not proportional to the needs of the case and is overly broad and unduly burdensome. Request No. 83 is not directed to any person and is thus facially overbroad. Even assuming Request No. 83 is directed to the named Defendants, DHS, and CBP (as many of Plaintiffs other Requests are), a complete response, based on Plaintiffs' definitions, would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A–C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly

broad and unduly burdensome. *Cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome"). Consistent with Objections Which Apply to All RFPs No. 6, Defendants construe this Request as seeking documents relating to the four ports of entry at issue.

Second, Defendants object to Request No. 83 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for "all documents relating to formal or informal communications with local, state or federal Mexican government officials or their agents" pertaining to the three delineated topics implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants also object to RFP 83 in accordance with Objections Which Apply to All RFPs Nos. 1, 4-6, and 7-10; Objections to Definitions Nos. 4-6, and 8-10; and Objections to Instructions Nos. 1, 2, and 4.

Defendants understand and construe Request for Production No. 83 as seeking documents relating to communications (as construed by Defendants) between Office of Field Operations employees at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry and Instituto Nacional de Migración ("INM") employees regarding those four ports' capacity to process aliens without travel documents for admission, as well as any communications (as construed by Defendants) between the San Diego and Laredo Field Offices and INM.

**Response:** In accordance with their objections, Defendants understand and

construe Request for Production No. 83 as seeking documents relating to communications between Office of Field Operations employees at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry, and at the San Diego and Laredo Field Offices, and Instituto Nacional de Migración ("INM") employees, regarding those four ports' capacity to process aliens without travel documents for admission. Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, and will produce or log documents responsive to this understanding and construction of Request for Production No. 83 after the parties agree on such sources and protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present, that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

### Request for Production No. 84

All documents relating to plans drafted or adopted by you, CBP, or DHS with respect to inspecting, processing, interviewing, housing, or caring for noncitizens seeking asylum in the United States that were or are a part of a migrant "caravan."

**Objections:** Defendants object to Request for Production No. 84 as not proportionate to the needs of the case, as overly broad and unduly burdensome, as unnecessarily duplicative of other Requests for Production, and as seeking

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

1    information protected from disclosure by the attorney work-product doctrine, the

2    attorney-client privilege, the deliberative process privilege, and the law enforcement

3    privilege and/or as law enforcement sensitive.

4         First, a request for "all documents" relating to the named Defendants', CBP's,

5    or DHS's plans to inspect, process, interview, house, or care for aliens without travel

6    documents who intend to apply for admission to the United States is not

7    proportionate to the needs of the case, as it essentially requests all documents relating

8    to all aspects of CBP's responsibilities at land ports of entry on the border with

9    respect to the processing of aliens without travel documents traveling in a large

10   group. A complete response, based on Plaintiffs' definitions, would require

11   Defendants to collect and search the documents of each of the named Defendants;

12   each of the named Defendants' "agents, representatives, employees, attorneys and

13   investigators"; all of U.S. Customs and Border Protection, including "its

14   headquarters and offices, including any divisions, subdivisions, components or

15   sections therein; CBP offices at ports of entry, including any divisions, subdivisions

16   or sections therein; or any other CBP organizational structures, including but not

17   limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors

18   hired by CBP"; and all of the U.S. Department of Homeland Security, including "its

19   headquarters and offices, including any divisions, subdivisions, components or

20   sections therein, or any other DHS organizational structures." *See* Pls.' Second

21   RFPs, Definitions A–C. DHS employs more than 240,000 people, and CBP employs

22   more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security

23   (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and

24   Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about.

25   Collecting and searching through the documents of all of these individuals, as

26   Plaintiffs request, is plainly not proportional to the needs of this case and is overly

27   broad and unduly burdensome. *Cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018

28   WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an

interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome"). Further, Request No. 84 is not proportionate to the needs of the case and is overly broad and unduly burdensome because it is not limited to the four ports of entry where the individual Plaintiffs allege they encountered CBP. Consistent with Objections Which Apply to All RFPs No. 6, Defendants construe this Request as seeking documents relating to the four ports of entry at issue.

Second, this Request is overbroad in that "processing" encompasses actions such as a secondary inspection for agricultural or customs purposes. *See* U.S. DHS PRIVACY IMPACT ASSESSMENT FOR THE TECS SYSTEM: CBP PRIMARY AND SECONDARY PROCESSING at 5 (December 22, 2010), https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-tecs-december2010_0.pdf. Activities like these that may be included in the processing of an alien are outside the scope of this lawsuit.

Third, Defendants object to Request for Production No. 84 to the extent it seeks information protected from disclosure by the attorney work-product doctrine. To the extent a request for "all documents" relating to the "plans drafted or adopted" by the named Defendants, CBP, or DHS with respect to the delineated topics implicates, for example, "documents and tangible things prepared by a party or his representative in anticipation of litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman v. Taylor*, 329 U.S. 495 (1947), including "documents or the compilation of materials prepared by agents of the attorney in preparation for litigation," *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)), such as, for example, notes and emails of Defendants' attorneys and staff, and draft and final internal documents, such documents are protected from disclosure by the attorney work-product doctrine.

Fourth, Defendants object to Request for Production No. 84 to the extent it

seeks information protected by the attorney-client privilege. To the extent a request for "all documents" relating to "plans drafted or adopted by [the named Defendants], CBP, or DHS with respect to inspecting, processing, interviewing, housing, or caring for noncitizens seeking asylum in the United States that were or are a part of a migrant 'caravan'" implicates, for example, confidential communications between attorneys and clients which are made for the purpose of giving legal advice, *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981), such documents are privileged and protected from disclosure.

Fifth, Defendants object to Request No. 84 to the extent it seeks information protected from disclosure by the deliberative process privilege. To the extent a request for "all documents" relating to "plans drafted or adopted by [the named Defendants], CBP, or DHS with respect to inspecting, processing, interviewing, housing, or caring for noncitizens seeking asylum in the United States that were or are a part of a migrant 'caravan'" implicates, for example, documents that are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

Finally, Defendants object to Request No. 84 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for "all documents" relating to "plans drafted or adopted by [the named Defendants], CBP, or DHS with respect to inspecting, processing, interviewing, housing, or caring for noncitizens seeking asylum in the United States that were or are a part of a migrant 'caravan'" implicates, for example, "law enforcement techniques and procedures," the "confidentiality of

sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants also object to RFP 84 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, and 6-10; Objections to Definitions Nos. 1-3, 5-6, 8, and 10; and Objections to Instructions Nos. 1, 2, and 4.

Accordingly, Defendants understand and construe Request for Production No. 84 as seeking documents containing non-privileged instructions to Office of Field Operations employees at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry about the inspection and processing of aliens (as limited by Defendants' objections above) without travel documents who seek to apply for admission in the United States.

**Response:** Subject to and in light of their objections, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, and will produce or log documents responsive to this understanding and construction of Request for Production No. 84 after the parties agree on such sources and protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present, that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or

the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

## Request for Production No. 85

All documents relating to plans, instructions, or orders for CBP or DHS officials to intercept or stop noncitizens seeking asylum in the United States before they reach a port of entry.

**Objections and Responses:** Defendants object to Request for Production No. 85 as duplicative and subsumed by other Requests for Production, including Requests No. 94 and No. 95. Defendants expressly incorporate their objections and responses to Requests No. 94 and 95 herein.

## Request for Production No. 86

All documents relating to plans, instructions, or orders for CBP or DHS officials to communicate with, or otherwise work with, Mexican government officials, including the INM, to prevent noncitizens seeking asylum in the United States from approaching or accessing a port of entry.

**Objections:** Defendants object to Request for Production No. 86 to the extent it requests documents relating to third parties' intent, as not proportionate to the needs of the case, as overly broad and unduly burdensome, as unnecessarily duplicative of other Requests for Production, and as seeking information protected from disclosure by the attorney work-product doctrine, the attorney-client privilege, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive. First, Defendants object to Request No. 86 to the extent it requests communications with Mexican government officials relating to "noncitizens seeking asylum in the United States." Defendants cannot know whether an individual intends to seek asylum in the United States before they encounter that individual, and an individual is not "seeking asylum in the United States" until that person is, at minimum, within the territorial jurisdiction of the United States.

1  Consistent with Defendants' Objections Which Apply to All Requests Nos. 3 and
2  4,Defendants construe this Request as seeking information relating to aliens without
3  travel documents in Mexico.

4          Second, a request for all documents relating to plans, instructions, or orders
5  for CBP or DHS officials to communicate with, or otherwise work with, Mexican
6  government officials, including the INM, to prevent aliens without travel documents
7  in Mexico from approaching or accessing a port of entry is not proportionate to the
8  needs of the case. A complete response, based on Plaintiffs' definitions, would
9  require Defendants to collect and search the documents of each of the named
10 Defendants; each of the named Defendants' "agents, representatives, employees,
11 attorneys and investigators"; all of U.S. Customs and Border Protection, including
12 "its headquarters and offices, including any divisions, subdivisions, components or
13 sections therein; CBP offices at ports of entry, including any divisions, subdivisions
14 or sections therein; or any other CBP organizational structures, including but not
15 limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors
16 hired by CBP"; and all of the U.S. Department of Homeland Security, including "its
17 headquarters and offices, including any divisions, subdivisions, components or
18 sections therein, or any other DHS organizational structures." *See* Pls.' Second
19 RFPs, Definitions A–C. DHS employs more than 240,000 people, and CBP employs
20 more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security
21 (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and
22 Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about.
23 Collecting and searching through the documents of all of these individuals, as
24 Plaintiffs request, is plainly not proportional to the needs of this case and is overly
25 broad and unduly burdensome. *Cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018
26 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an
27 interrogatory that obligates a party to "canvas every employee who might have had
28 a conversation with [the plaintiff]" would be "onerous and over burdensome").

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

1    Further, Request No. 86 is not proportionate to the needs of the case and is overly

2    broad and unduly burdensome because it is not limited to the four ports of entry

3    where the individual Plaintiffs allege they encountered CBP. Consistent with

4    Objections Which Apply to All RFPs No. 6, Defendants construe this Request as

5    seeking documents relating to the four ports of entry at issue.

6         Third, Defendants object to Request for Production No. 86 to the extent it

7    seeks information protected from disclosure by the attorney work-product doctrine.

8    To the extent a request for all documents relating to plans, instructions, or orders for

9    CBP or DHS officials to communicate with, or otherwise work with, Mexican

10   government officials, including the INM, to prevent aliens without travel documents

11   in Mexico from approaching or accessing a port of entry implicates, for example,

12   "documents and tangible things prepared by a party or his representative in

13   anticipation of litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494

14   (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman v. Taylor*, 329 U.S.

15   495 (1947), including "documents or the compilation of materials prepared by agents

16   of the attorney in preparation for litigation," *United States v. Richey*, 632 F.3d 559,

17   567 (9th Cir. 2011) (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)), such

18   as, for example, notes and emails of Defendants' attorneys and staff, and draft and

19   final internal documents, such documents are protected from disclosure by the

20   attorney work-product doctrine.

21        Fourth, Defendants object to Request for Production No. 86 to the extent it

22   seeks information protected by the attorney-client privilege. To the extent a request

23   for all documents relating to plans, instructions, or orders for CBP or DHS officials

24   to communicate with, or otherwise work with, Mexican government officials,

25   including the INM, to prevent aliens without travel documents in Mexico from

26   approaching or accessing a port of entry implicates, for example, confidential

27   communications between attorneys and clients which are made for the purpose of

28   giving legal advice, *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981), such

1    documents are privileged and protected from disclosure.

2        Fifth, Defendants object to Request No. 86 to the extent it seeks information

3    protected from disclosure by the deliberative process privilege. To the extent a

4    request for all documents relating to plans, instructions, or orders for CBP or DHS

5    officials to communicate with, or otherwise work with, Mexican government

6    officials, including the INM, to prevent aliens without travel documents in Mexico

7    from approaching or accessing a port of entry implicates, for example, documents

8    that are predecisional and deliberative, thereby containing opinions,

9    recommendations, or advice, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149

10   (1975), including, but not limited to, "recommendations, draft documents, proposals,

11   suggestions, and other subjective documents which reflect the personal opinions of

12   the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v.*

13   *HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation

14   omitted), such documents are privileged and protected from disclosure.

15       Finally, Defendants object to Request No. 86 to the extent it seeks information

16   protected from disclosure by the law enforcement privilege and/or as law

17   enforcement sensitive. To the extent a request for all documents relating to plans,

18   instructions, or orders for CBP or DHS officials to communicate with, or otherwise

19   work with, Mexican government officials, including the INM, to prevent aliens

20   without travel documents in Mexico from approaching or accessing a port of entry

21   implicates, for example, "law enforcement techniques and procedures," the

22   "confidentiality of sources," the "protect[ion of] witnesses and law enforcement

23   personnel," "safeguard[ing] the privacy of individuals involved in an investigation,"

24   and/or the "prevent[ion of] interference with an investigation," such information is

25   subject to the law enforcement privilege and protected from disclosure. *Deocampo*

26   *v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

27       Defendants also object to RFP 86 in accordance with Objections Which Apply

28   to All RFPs Nos. 1, 3-4, and 6-10; Objections to Definitions Nos. 2-3, 5-6, 8, and

10; and, Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with Defendants' objections, and in light of Request No. 86 being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce all non-privileged documents responsive to this Request, dating from January 1, 2016, to the present that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

### Request for Production No. 87

All documents relating to plans, instructions, or orders for CBP or DHS officials to communicate with, or otherwise work with, Mexican government officials, including the INM, to prevent noncitizens seeking asylum in the United States from entering the United States in order to seek asylum at a port of entry.

**Objections and Responses**: Defendants object to Request for Production No. 87 as duplicative of, and subsumed by, other Requests for Production, including Request No. 86. Defendants expressly incorporate their objections and responses to Request No. 86 herein.

1 **Request for Production No. 88**

2 All documents and communications related to John P. Wagner's June 13, 2017

3 testimony before the House Appropriation Committee related to noncitizens seeking

4 asylum in the United States at ports of entry along the U.S.-Mexico border, including

5 the factual basis for Mr. Wagner's assertion that turning away asylum seekers was

6 justified by a lack of capacity at ports of entry.

7     **Objections:** Defendants object to Request for Production No. 88 as seeking

8 information outside the scope of Rule 34, as not proportionate to the needs of the

9 case, as overly broad and unduly burdensome, and as seeking information protected

10 from disclosure by the attorney work-product doctrine, the attorney-client privilege,

11 the deliberative process privilege, the law enforcement privilege and/or as law

12 enforcement sensitive, and as seeking documents that can be obtained "from some

13 other source that is more convenient, less burdensome, [and] less expensive" for the

14 parties. Fed. R. Civ. P. 26(b)(2)(C)(i). First, Defendants object to Request for

15 Production No. 88 to the extent it seeks oral or non-written communications. *See*

16 Pls.' Second RFPs, Definition E (defining "communication(s)" to include "the

17 exchange of information by or through any mode or medium including, but not

18 limited to, spoken word, written correspondence, any form of technology, face-to-

19 face meetings or conveying of information through third person(s) to some other

20 intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve

21 requests to inspect or produce "documents," "electronically stored information," or

22 "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to

23 obtain non-tangible things. Defendants accordingly construe the term

24 "communication(s)" to include only those items permitted by Rule 34 as stated in

25 Objections to Definitions No. 4.

26     Second, a request for "all documents" relating to Mr. Wagner's June 13, 2017

27 testimony on the delineated topic is not proportional to the needs of the case and is

28 overly broad and unduly burdensome. Based on Plaintiffs' definitions, a complete

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

response would require Defendants to collect and search the documents of each of
the named Defendants; each of the named Defendants' "agents, representatives,
employees, attorneys and investigators"; all of U.S. Customs and Border Protection,
including "its headquarters and offices, including any divisions, subdivisions,
components or sections therein; CBP offices at ports of entry, including any
divisions, subdivisions or sections therein; or any other CBP organizational
structures, including but not limited to U.S. Border Patrol, U.S. Office of Field
Operations or private contractors hired by CBP"; and all of the U.S. Department of
Homeland Security, including "its headquarters and offices, including any divisions,
subdivisions, components or sections therein, or any other DHS organizational
structures." *See* Pls.' Second RFPs, Definitions A–C. DHS employs more than
240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S.
Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs;
"About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019),
https://www.cbp.gov/about. Collecting and searching through the documents of all
of these individuals, as Plaintiffs request, is plainly not proportional to the needs of
this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego*,
No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford,
M.J.) (noting that an interrogatory that obligates a party to "canvas every employee
who might have had a conversation with [the plaintiff]" would be "onerous and over
burdensome").

Third, Defendants object to Request for Production No. 88 to the extent it
seeks information protected from disclosure by the attorney work-product doctrine.
To the extent a request for "all documents" relating to Mr. Wagner's June 13, 2017
testimony on the delineated topic implicates, for example, "documents and tangible
things prepared by a party or his representative in anticipation of litigation," *Admiral
Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P.
26(b)(3)); *see Hickman v. Taylor*, 329 U.S. 495 (1947), including "documents or the

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

compilation of materials prepared by agents of the attorney in preparation for litigation," *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)), such as, for example, notes and emails of Defendants' attorneys and staff, and draft and final internal documents, such documents are protected from disclosure by the attorney work-product doctrine.

Fourth, Defendants object to Request for Production No. 88 to the extent it seeks information protected by the attorney-client privilege. To the extent a request for "all documents" relating to Mr. Wagner's June 13, 2017 testimony on the delineated topic implicates, for example, confidential communications between attorneys and clients which are made for the purpose of giving legal advice, *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981), such documents are privileged and protected from disclosure.

Fifth, Defendants object to Request No. 88 to the extent it seeks information protected from disclosure by the deliberative process privilege. To the extent a request for "all documents" relating to Mr. Wagner's June 13, 2017 testimony on the delineated topic implicates, for example, documents that are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

Sixth, Defendants object to Request No. 88 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for "all documents" relating to Mr. Wagner's June 13, 2017 testimony on the delineated topic implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the

"protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Finally, Defendants object to Request No. 88 to the extent it seeks documents that can be obtained "from some other source that is more convenient, less burdensome, [and] less expensive" for the parties. Fed. R. Civ. P. 26(b)(2)(C)(i). Transcripts of congressional hearings can be obtained at https://www.govinfo.gov/ app/collection/CHRG.

Defendants also object to RFP 88 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, 6-7, and 10; Objections to Definitions Nos. 4-6, and 8-10.

**Response:** In accordance with their objections, Defendants will produce non-privileged documents related to Mr. Wagner's June 13, 2017 testimony on the delineated topic that are not already publicly available.

## Request for Production No. 89

All documents and communications related to your live or written testimony before any Committee or Subcommittee of the U.S. Congress related to noncitizens seeking asylum in the United States at ports of entry along the U.S.-Mexico border, including but not limited to testimony given on December 20, 2018; October 10, 2018; May 15, 2018; May 8, 2018; and/or April 26, 2018.

**Objections:** Defendants object to Request for Production No. 89 as seeking information outside the scope of Rule 34, as not proportionate to the needs of the case, as overly broad and unduly burdensome, and as seeking information protected from disclosure by the attorney work-product doctrine, the attorney-client privilege, the deliberative process privilege, the law enforcement privilege and/or as law enforcement sensitive, and as seeking documents that can be obtained "from some

1   other source that is more convenient, less burdensome, [and] less expensive" for the

2   parties. Fed. R. Civ. P. 26(b)(2)(C)(i). First, Defendants object to Request for

3   Production No. 89 to the extent it seeks oral or non-written communications. *See*

4   Pls.' Second RFPs, Definition E (defining "communication(s)" to include "the

5   exchange of information by or through any mode or medium including, but not

6   limited to, spoken word, written correspondence, any form of technology, face-to-

7   face meetings or conveying of information through third person(s) to some other

8   intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve

9   requests to inspect or produce "documents," "electronically stored information," or

10  "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to

11  obtain non-tangible things. Defendants accordingly construe the term

12  "communication(s)" to include only those items permitted by Rule 34 as stated in

13  Objections to Definitions No. 4.

14        Second, a request for "all documents" relating to testimony given on the

15  delineated topics is not proportional to the needs of the case and is overly broad and

16  unduly burdensome. Based on Plaintiffs' definitions, a complete response would

17  require Defendants to collect and search the documents of each of the named

18  Defendants; each of the named Defendants' "agents, representatives, employees,

19  attorneys and investigators"; all of U.S. Customs and Border Protection, including

20  "its headquarters and offices, including any divisions, subdivisions, components or

21  sections therein; CBP offices at ports of entry, including any divisions, subdivisions

22  or sections therein; or any other CBP organizational structures, including but not

23  limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors

24  hired by CBP"; and all of the U.S. Department of Homeland Security, including "its

25  headquarters and offices, including any divisions, subdivisions, components or

26  sections therein, or any other DHS organizational structures." *See* Pls.' Second

27  RFPs, Definitions A–C. DHS employs more than 240,000 people, and CBP employs

28  more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

(Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome"). Based on these objections, and its Objection to Definitions No. 9, Defendants understand and construe this Request as limited to testimony given on those five dates.

Third, Defendants object to Request for Production No. 89 to the extent it seeks information protected from disclosure by the attorney work-product doctrine. To the extent a request for "all documents" relating to live or written testimony before a congressional committee or subcommittee on the delineated topics implicates, for example, "documents and tangible things prepared by a party or his representative in anticipation of litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman v. Taylor*, 329 U.S. 495 (1947), including "documents or the compilation of materials prepared by agents of the attorney in preparation for litigation," *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)), such as, for example, notes and emails of Defendants' attorneys and staff, and draft and final internal documents, such documents are protected from disclosure by the attorney work-product doctrine.

Fourth, Defendants object to Request for Production No. 89 to the extent it seeks information protected by the attorney-client privilege. To the extent a request for "all documents" relating to live or written testimony before a congressional committee or subcommittee on the delineated topics implicates, for example,

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

confidential communications between attorneys and clients which are made for the
purpose of giving legal advice, *Upjohn Co. v. United States*, 449 U.S. 383, 389
(1981), such documents are privileged and protected from disclosure.

Fifth, Defendants object to Request No. 89 to the extent it seeks information
protected from disclosure by the deliberative process privilege. To the extent a
request for "all documents" relating to live or written testimony before a
congressional committee or subcommittee on the delineated topics implicates, for
example, documents that are predecisional and deliberative, thereby containing
opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.*, 421 U.S.
132, 149 (1975), including, but not limited to, "recommendations, draft documents,
proposals, suggestions, and other subjective documents which reflect the personal
opinions of the writer rather than the policy of the agency," *Ctr. for Medicare
Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations
and citation omitted), such documents are privileged and protected from disclosure.

Sixth, Defendants object to Request No. 89 to the extent it seeks information
protected from disclosure by the law enforcement privilege and/or as law
enforcement sensitive. To the extent a request for "all documents" relating to live or
written testimony before a congressional committee or subcommittee on the
delineated topics implicates, for example, "law enforcement techniques and
procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law
enforcement personnel," "safeguard[ing] the privacy of individuals involved in an
investigation," and/or the "prevent[ion of] interference with an investigation," such
information is subject to the law enforcement privilege and protected from
disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5
(E.D. Cal. June 1, 2007).

Finally, Defendants object to Request No. 89 to the extent it seeks documents
that can be obtained "from some other source that is more convenient, less
burdensome, [and] less expensive" for the parties. Fed. R. Civ. P. 26(b)(2)(C)(i).

Transcripts of congressional hearings can be obtained at https://www.govinfo.gov/
app/collection/CHRG.

Defendants also object to RFP 89 in accordance with Objections Which Apply
to All RFPs Nos. 1, 3-4, and 6-10; Objections to Definitions Nos. 1, 4-6, 9, and 8-
10; and, Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with their objections, Defendants respond as
follows: Based on subsequent representations of Plaintiffs' counsel, Defendants now
understand this request as seeking testimony by former Secretary Nielsen.
Defendants will conduct a reasonable search and produce non-privileged documents,
if any exist, related to testimony on the delineated topics on the specified dates.

## Request for Production No. 90

All public statements, press releases, and Congressional testimony from former
Attorney General Jefferson Sessions related to noncitizens seeking asylum in the
United States at ports of entry along the U.S.-Mexico border, including but not
limited to his statement that asylum seekers were engaged in "a deliberate attempt
to undermine our laws and overwhelm our system."

**Objections:** Defendants object to Request for Production No. 90 as seeking
information outside the scope of Rule 34 and to the extent it seeks documents that
can be obtained "from some other source that is more convenient, less burdensome,
[and] less expensive" for the parties, and to the extent it seeks documents from a
non-party. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). First, Defendants object to Request
No. 90 to the extent it seeks documents form the former Attorney General, who is
not a party to this case, and over whose documents Defendants do not exercise
possession, custody, or control. *See* Fed. R. Civ. P. 34(a) (allowing a party to serve
document requests "on any other party"); *7-UP Bottling Co. v. Archer Daniels
Midland Co.* (*In re Citric Acid Litig.*), 191 F.3d 1090, 1107 (9th Cir. 1999). "Actual
control is required, not merely theoretical control based on an 'inherent

relationship.'" *Solis v. Tomco Auto Products, Inc.*, No. 12-cv-618, 2012 WL 12878752, at *1 (C.D. Cal. Sept. 20, 2012) (quoting *United States v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1453–54 (9th Cir. 1989)).

Second, Defendants object to Request No. 90 to the extent it seeks publicly available documents. Transcripts of congressional hearings can be obtained at https://www.govinfo.gov/app/collection/CHRG. Written congressional testimony given by Department of Justice officials can be obtained at https://www.justice.gov/ola/congressional-testimony. Department of Justice press releases can be obtained at https://www.justice.gov/news.

Third, Defendants do not have possession, custody, or control over documents from the Department of Justice and former Attorney General Jefferson Sessions, as stated in Objections to Definitions Nos. 1-3 and 5-6.

Defendants also object to RFP 90 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, 6, and 10 and Objections to Definitions Nos. 5-6 and 8-10.

**Response:**   Because Request No. 90 improperly seeks documents over which Defendants do not have possession, custody, or control, and because the documents sought by Request No. 90 can be found at the foregoing URLs, Defendants will not search for, produce, or log responsive documents.

## Request for Production No. 91

All documents and communications related to Secretary Nielsen's statements in her May 15, 2018 Fox News interview concerning noncitizens seeking asylum in the United States at ports of entry along the U.S.-Mexico border, including but not limited to the factual basis for her statement that "We are 'metering,' which means that if we don't have the resources to let them in on a particular day, they are going to have to come back."

**Objections:** Defendants object to Request for Production No. 91 as seeking information that is outside the scope of Rule 34, as overly broad and unduly

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

burdensome, as not proportional to the needs of the case, and as seeking information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive. First, Defendants object to Request for Production No. 91 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communications" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communications" to include only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

Second, a request to produce "all documents" relating to all of former Secretary Nielsen's statements in her May 15, 2018 Fox News interview is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definitions, a complete response would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

RFPs, Definitions A–C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Third, Defendants object to Request for Production No. 91 to the extent it seeks information protected from disclosure by the attorney work-product doctrine. To the extent a request for "all documents" relating to all of former Secretary Nielsen's statements in her May 15, 2018 Fox News interview implicates, for example, "documents and tangible things prepared by a party or his representative in anticipation of litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman v. Taylor*, 329 U.S. 495 (1947), including "documents or the compilation of materials prepared by agents of the attorney in preparation for litigation," *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)), such as, for example, notes and emails of Defendants' attorneys and staff, and draft and final internal documents, such documents are protected from disclosure by the attorney work-product doctrine.

Fourth, Defendants object to Request for Production No. 91 to the extent it seeks information protected by the attorney-client privilege. To the extent a request for "all documents" relating to all of former Secretary Nielsen's statements in her May 15, 2018 Fox News interview implicates, for example, confidential communications between attorneys and clients which are made for the purpose of

giving legal advice, *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981), such documents are privileged and protected from disclosure.

Fifth, Defendants object to Request No. 91 to the extent it seeks information protected from disclosure by the deliberative process privilege. To the extent a request for "all documents" relating to all of former Secretary Nielsen's statements in her May 15, 2018 Fox News interview implicates, for example, documents that are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co*., 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

Finally, Defendants object to Request No. 91 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for "all documents" relating to all of former Secretary Nielsen's statements in her May 15, 2018 Fox News interview implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants also object to RFP 91 in accordance with Objections Which Apply to All RFPs Nos. 1,, 3-4, and 6-10; Objections to Definitions Nos. 4-6, and 8-10; and Objections to Instructions Nos. 1, 2, and 4.

Accordingly, Defendants understand and construe Request for Production No. 91 as seeking documents relating to former Secretary Nielsen's statement in her May

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

15, 2018 Fox News interview that "We are 'metering,' which means that if we don't have the resources to let them in on a particular day, they are going to have to come back," as it applies to the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.

**Response:** In accordance with their objections, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, and will produce or log documents responsive to this understanding and construction of Request for Production No. 91 after the parties agree on such sources and protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present, that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

## Request for Production No. 92

All documents and communications related to the formal or informal use of waitlists, including waitlists managed, operated or overseen by third parties, to regulate the entry of noncitizens seeking asylum at ports of entry on the U.S.-Mexico border.

**Objections:** Defendants object to Request for Production 92 as seeking information outside the scope of Rule 34, as not proportionate to the needs of the case, as overly broad and unduly burdensome, and as seeking information protected from disclosure by the attorney work-product doctrine, the attorney-client privilege,

the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive. First, Defendants object to Request for Production No. 92 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communications" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communications" to include only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

Defendants also object to Request No. 92 as requesting information relating to "waitlists managed, operated or overseen by *third parties*." The standard for possession, custody, or control is the legal right to obtain documents. *See 7-UP Bottling Co. v. Archer Daniels Midland Co. (In re Citric Acid Litig.)*, 191 F.3d 1090, 1107 (9th Cir. 1999). "Actual control is required, not merely theoretical control based on an 'inherent relationship.'" *Solis v. Tomco Auto Products, Inc.*, No. 12-cv-618, 2012 WL 12878752, at *1 (C.D. Cal. Sept. 20, 2012) (quoting *United States v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1453–54 (9th Cir. 1989)). Defendants are under the obligation to produce relevant, non-privileged information, to the extent that it exists, only if individuals, operating in their official governmental capacity, have responsive, non-privileged information that is under the possession, custody, or control of the named Defendants or that the named Defendants have the legal right to obtain on demand. *Id.*

Third, Defendants object to the Request as irrelevant, overbroad, and not proportional to the needs of the case because because it seeks documents and information about actions taken in Mexico over which Defendants have no control.

Fourth, a request to produce "all documents" relating to "the formal or informal use of waitlists, including waitlists managed, operated, or overseen by third parties, to regulate the entry of noncitizens seeking asylum at ports of entry on the U.S.-Mexico border" is not proportional to the needs of the case and is overly broad and unduly burdensome. Based on Plaintiffs' definitions, a complete response would require Defendants to collect and search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A–C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs.gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome"). Moreover, Request No. 92 is not proportionate to the needs of the case and is overly broad and unduly burdensome because it is not limited to the four ports of entry at issue. Consistent with Objections Which Apply to All RFPs Nos. 1 and 6,

Defendants construe this Request as seeking documents relating to the four ports of entry at issue. Consistent with Objections Which Apply to All RFPs Nos. 3 and 4, Defendants understand and construe the phrase "noncitizens seeking asylum" as "aliens without travel documents."

Fifth, Defendants object to Request for Production No. 92 to the extent it seeks information protected from disclosure by the attorney work-product doctrine. To the extent a request for "all documents" relating to the formal or informal use of waitlists to regulate the entry of aliens without travel documents at the San Ysidro, Otay Mesa, Hidalgo, or Laredo ports of entry implicates, for example, "documents and tangible things prepared by a party or his representative in anticipation of litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman v. Taylor*, 329 U.S. 495 (1947), including "documents or the compilation of materials prepared by agents of the attorney in preparation for litigation," *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)), such as, for example, notes and emails of Defendants' attorneys and staff, and draft and final internal documents, such documents are protected from disclosure by the attorney work-product doctrine.

Sixth, Defendants object to Request for Production No. 92 to the extent it seeks information protected by the attorney-client privilege. To the extent a request for "all documents" relating to the formal or informal use of waitlists to regulate the entry of aliens without travel documents at the San Ysidro, Otay Mesa, Hidalgo, or Laredo ports of entry implicates, for example, confidential communications between attorneys and clients which are made for the purpose of giving legal advice, *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981), such documents are privileged and protected from disclosure.

Seventh, Defendants object to Request No. 92 to the extent it seeks information protected from disclosure by the deliberative process privilege. To the

extent a request for "all documents" relating to the formal or informal use of waitlists
to regulate the entry of aliens without travel documents at the San Ysidro, Otay
Mesa, Hidalgo, or Laredo ports of entry implicates, for example, documents that are
predecisional and deliberative, thereby containing opinions, recommendations, or
advice, *NLRB v. Sears, Roebuck & Co*., 421 U.S. 132, 149 (1975), including, but not
limited to, "recommendations, draft documents, proposals, suggestions, and other
subjective documents which reflect the personal opinions of the writer rather than
the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d
221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents
are privileged and protected from disclosure.

Finally, Defendants object to Request No. 92 to the extent it seeks information
protected from disclosure by the law enforcement privilege and/or as law
enforcement sensitive. To the extent a request for "all documents" relating to the
formal or informal use of waitlists to regulate the entry of aliens without travel
documents at the San Ysidro, Otay Mesa, Hidalgo, or Laredo ports of entry
implicates, for example, "law enforcement techniques and procedures," the
"confidentiality of sources," the "protect[ion of] witnesses and law enforcement
personnel," "safeguard[ing] the privacy of individuals involved in an investigation,"
and/or the "prevent[ion of] interference with an investigation," such information is
subject to the law enforcement privilege and protected from disclosure. *Deocampo
v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants also object to RFP 92 in accordance with Objections Which Apply
to All RFPs Nos. 1, 3-4, 6-10; and Objections to Definitions Nos. 4-6, and 8-10; and
Objections to Instructions Nos. 1, 2, and 4.

**Response:**    In accordance with their objections, Defendants understand and
construe Request for Production No. 92 as seeking documents relating to the formal
or informal use of waitlists to regulate the entry of aliens without travel documents
at the San Ysidro, Otay Mesa, Hidalgo, or Laredo ports of entry. Defendants will

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols, and will produce or log documents responsive to this understanding and construction of Request for Production No. 92 after the parties agree on such sources and protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present, that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

**Request for Production No. 93**

Documents sufficient to show the number of noncitizens seeking asylum that have been turned back from a port of entry on the U.S.-Mexico border, and/or documents sufficient to calculate the number of noncitizens seeking asylum that have been turned back from a port of entry on the U.S.-Mexico border.

      **Objections and Responses:**    Defendants object to Request for Production No. 93 as unnecessarily duplicative of Requests for Production No. 77 and No. 78. Defendants expressly incorporate their objections and responses to those Requests herein.

**Request for Production No. 94**

All documents comparing or contrasting by port of entry or region the implementation of any formal or informal policy, practice, or effort to cap, limit, or

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

1    meter the number of noncitizens seeking asylum in the United States that are

2    processed at a particular port of entry along the U.S.-Mexico border, including but

3    not limited to the practices or conduct used to implement such formal or informal

4    policy, practice, or effort.

5        **Objections:** Defendants object to Request for Production No. 94 as not

6    proportionate to the needs of the case, as overly broad and unduly burdensome, and

7    as seeking information protected from disclosure by the attorney work-product

8    doctrine, the attorney-client privilege, the deliberative process privilege, and the law

9    enforcement privilege and/or as law enforcement sensitive. First, Request No. 94 is

10   not proportionate to the needs of the case and is overly broad and unduly burdensome

11   because it is not limited to the four ports of entry at issue. Consistent with Objections

12   Applying to all Requests Nos. 1 and 6, Defendants construe this Request as seeking

13   documents relating to the four ports of entry at issue.

14       Second, Defendants object to Request No. 94 to the extent it seeks information

15   protected from disclosure by the attorney work-product doctrine, as explained in

16   Defendants' General Objection No. **Error! Reference source not found.**. To the

17   extent a request for "all documents comparing or contrasting by port of entry or

18   region the implementation of any formal or informal policy, practice, or effort to

19   cap, limit, or meter" the number of aliens without travel documents who may apply

20   for admission at a port of entry at a given time implicates, for example, "documents

21   and tangible things prepared by a party or his representative in anticipation of

22   litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989)

23   (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman v. Taylor*, 329 U.S. 495 (1947),

24   including "documents or the compilation of materials prepared by agents of the

25   attorney in preparation for litigation," *United States v. Richey*, 632 F.3d 559, 567

26   (9th Cir. 2011) (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)), such as,

27   for example, notes and emails of Defendants' attorneys and staff, and draft and final

28   internal documents, such documents are protected from disclosure by the attorney

164    DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

work-product doctrine.

Third, Defendants object to Request for Production No. 94 to the extent it seeks information protected by the attorney-client privilege. To the extent a request for "all documents comparing or contrasting by port of entry or region the implementation of any formal or informal policy, practice, or effort to cap, limit, or meter" the number of aliens without travel documents who may apply for admission at a port of entry at a given time implicates, for example, confidential communications between attorneys and clients which are made for the purpose of giving legal advice, *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981), such documents are privileged and protected from disclosure.

Fourth, Defendants object to Request No. 94 to the extent it seeks information protected from disclosure by the deliberative process privilege. To the extent a request for "all documents comparing or contrasting by port of entry or region the implementation of any formal or informal policy, practice, or effort to cap, limit, or meter" the number of aliens without travel documents who may apply for admission at a port of entry at a given time implicates, for example, documents that are predecisional and deliberative, thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents are privileged and protected from disclosure.

Finally, Defendants object to Request No. 94 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent a request for "all documents comparing or contrasting by port of entry or region the implementation of any formal or informal policy, practice, or effort to cap, limit, or meter" the number of aliens without travel

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

documents who may apply for admission at a port of entry at a given time implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants also object to RFP 94 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, and 6-10; Objections to Definitions Nos. 5-6, and 9-10; and Objections to Instructions Nos. 1, 2, and 4.

Accordingly, Defendants understand and construe Request for Production No. 94 as seeking non-privileged documents relating to "metering" at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.

**Response:** Subject to and without waiving their objections, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present, that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

**Request for Production No. 95**

Documents sufficient to show, by port of entry or region, the time periods during which any formal or informal policy, practice, or effort to cap, limit, or meter the number of noncitizens seeking asylum in the United States who are inspected and/or processed at a port of entry along the U.S.-Mexico border was in place.

**Objections:** Defendants object to Request for Production No. 95 as not proportionate to the needs of the case, as overly broad and unduly burdensome, and as seeking information protected from disclosure by the attorney work-product doctrine, the attorney-client privilege, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive. First, Request No. 95 is not proportionate to the needs of the case and is overly broad and unduly burdensome because it is not limited to the four ports of entry at issue. Consistent with Objections Which Apply to All RFPs Nos. 1 and 6, Defendants construe this Request as seeking documents relating to the four ports of entry at issue.

Second, Defendants object to Request No. 95 to the extent it seeks information protected from disclosure by the attorney work-product doctrine. To the extent a request for "documents sufficient to show, by port of entry or region, the time periods during which any formal or informal policy, practice, or effort to cap, limit, or meter the number of noncitizens seeking asylum in the United States who are inspected and/or processed at a port of entry along the U.S.-Mexico border was in place" implicates, for example, "documents and tangible things prepared by a party or his representative in anticipation of litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman v. Taylor*, 329 U.S. 495 (1947), including "documents or the compilation of materials prepared by agents of the attorney in preparation for litigation," *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)), such as, for example, notes and emails of Defendants' attorneys and staff, and draft and final internal documents, such documents are

1  protected from disclosure by the attorney work-product doctrine.

2     Third, Defendants object to Request for Production No. 94 to the extent it

3  seeks information protected by the attorney-client privilege. To the extent a request

4  for "documents sufficient to show, by port of entry or region, the time periods during

5  which any formal or informal policy, practice, or effort to cap, limit, or meter the

6  number of noncitizens seeking asylum in the United States who are inspected and/or

7  processed at a port of entry along the U.S.-Mexico border was in place" implicates,

8  for example, confidential communications between attorneys and clients which are

9  made for the purpose of giving legal advice, *Upjohn Co. v. United States*, 449 U.S.

10  383, 389 (1981), such documents are privileged and protected from disclosure.

11     Fourth, Defendants object to Request No. 94 to the extent it seeks information

12  protected from disclosure by the deliberative process privilege. To the extent a

13  request for "documents sufficient to show, by port of entry or region, the time

14  periods during which any formal or informal policy, practice, or effort to cap, limit,

15  or meter the number of noncitizens seeking asylum in the United States who are

16  inspected and/or processed at a port of entry along the U.S.-Mexico border was in

17  place" implicates, for example, documents that are predecisional and deliberative,

18  thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck*

19  *& Co.*, 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations,

20  draft documents, proposals, suggestions, and other subjective documents which

21  reflect the personal opinions of the writer rather than the policy of the agency," *Ctr.*

22  *for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008)

23  (internal quotations and citation omitted), such documents are privileged and

24  protected from disclosure.

25     Finally, Defendants object to Request No. 94 to the extent it seeks information

26  protected from disclosure by the law enforcement privilege and/or as law

27  enforcement sensitive. To the extent a request for "documents sufficient to show, by

28  port of entry or region, the time periods during which any formal or informal policy,

168

1    practice, or effort to cap, limit, or meter the number of noncitizens seeking asylum
2    in the United States who are inspected and/or processed at a port of entry along the
3    U.S.-Mexico border was in place" implicates, for example, "law enforcement
4    techniques and procedures," the "confidentiality of sources," the "protect[ion of]
5    witnesses and law enforcement personnel," "safeguard[ing] the privacy of
6    individuals involved in an investigation," and/or the "prevent[ion of] interference
7    with an investigation," such information is subject to the law enforcement privilege
8    and protected from disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007
9    WL 1589541, at *5 (E.D. Cal. June 1, 2007).

10        Defendants also object to RFP 95 in accordance with Objections Which Apply
11    to All RFPs Nos. 1, 3-4, and 6-10; Objections to Definitions Nos. 5 and 10; and
12    Objections to Instructions Nos. 1, 2, and 4.

13        Accordingly, Defendants understand and construe Request for Production No.
14    95 as seeking non-privileged documents relating to "metering" at the San Ysidro,
15    Otay Mesa, Hidalgo, and Laredo ports of entry.

16        **Response:** Subject to and without waiving their objections, Defendants will
17    limit their search to a limited number of custodial and non-custodial sources.
18    Defendants will continue to confer with Plaintiffs in identifying reasonable custodial
19    and non-custodial sources and document identification protocols. However, in the
20    event the parties cannot agree, Defendants will limit their search to the sources
21    identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report
22    (ECF No. 243), from which Defendants will produce or log documents responsive
23    to this Request, dating from January 1, 2016, to the present, that can be located after
24    a reasonable search. Documents created on or after July 12, 2017, the date of
25    Plaintiffs' original complaint (ECF No. 1), representing either communications with
26    counsel or communications or documents relating to the actual conduct of litigation
27    post-complaint—and thus clearly protected by either the attorney-client privilege or
28    the work-product doctrine—will be treated as non-responsive and therefore will not

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

appear on any privilege log.

**Request for Production No. 96**

To the extent that you claim that any formal or informal policy, practice, or effort to cap, limit, or meter the number of noncitizens seeking asylum in the United States who are processed at a port of entry along the U.S.-Mexico border was not implemented across the entire U.S.-Mexico border or was not implemented at every port of entry, all documents supporting the factual basis for that claim.

**Objections:** Defendants object to Request for Production No. 96 as not proportionate to the needs of the case and as seeking information protected from disclosure by any legal privileges or protections, including, but not limited to, the attorney-client privilege, the attorney work-product doctrine, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive. Defendants object to Request No. 96 because Plaintiffs do not define the terms "policy, practice, or effort," and it is unclear how those terms are distinct or differ from one another.

Defendants further object to this Request, in accordance with Objections Which Apply to All RFPs No. 6, as seeking information and documents about ports of entry that are not relevant to the claims and defenses in this case.

Defendants object to this Request as premature to the extent Defendants have not yet made any formal "claim" or argument in this case that any formal or informal policy, practice, or effort to cap, limit, or meter the number of noncitizens seeking asylum in the United States who are processed at a port of entry along the U.S.-Mexico border was not implemented across the entire U.S.-Mexico border or was not implemented at every port of entry.

Defendants also object to RFP 96 in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, and 6-10; Objections to Definitions Nos. 1, 5-6, and 10; and Objections to Instructions Nos. 1, 2, and 4.

**Response:** Subject to and without waiving the foregoing objections, Defendants respond as follows: Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce or log documents responsive to this Request, dating from January 1, 2016, to the present, that can be located after a reasonable search. Documents created on or after July 12, 2017, the date of Plaintiffs' original complaint (ECF No. 1), representing either communications with counsel or communications or documents relating to the actual conduct of litigation post-complaint—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

**Request for Production No. 97**

To the extent that you claim that questions of fact are not common to the class alleged in Plaintiffs' second amended complaint, all documents that support the factual basis for your contention.

**Objections**: Defendants object to Request for Production No. 97 as premature, as seeking documents and communications protected by the work product doctrine, attorney-client privilege, the deliberative process privilege, and the law enforcement privilege, and as outside the proper scope of discovery.

This request is outside the proper scope of discovery under Rule 26(b) because it does not purport to seek documents based on their factual nature or on their relevance to claims and defenses to this case. Instead, it improperly seeks to ascertain or limit Defendants' arguments in opposition to class certification and to

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

1   prematurely reveal work product through a Request for Production of Documents.

2       Relatedly, Defendants object to the extent the Request seeks prior disclosure

3   of documents, such as declarations, that do not already exist but would be created

4   for purposes of opposition to class certification, which similarly impinges on work

5   product protection.

6       Defendants object to this Request to the extent it seeks documents that are

7   already in Plaintiffs' possession.

8       To the extent this Request seeks information about policies, practices, and

9   instructions, it is duplicative of numerous requests, including Requests Nos. 1, 2, 6,

10  40-44, and 84.  Defendants incorporate their objections and responses to those

11  Requests hereto.

12      Defendants further object to this Request in accordance with Objections

13  Which Apply to All RFPs Nos. 1, and 6-10; Objections to Definitions Nos. 1, 5-6

14  and 10; and Objections to Instructions Nos. 1, 2, and 4.

15      **Response:**  In accordance with their objections, Defendants will not be

16  providing documents specifically in response to this Request.. .

17  ### Request for Production No. 98

18  To the extent that you claim that Plaintiffs' proposed class alleged in the second

19  amended complaint is not sufficiently numerous to be certified, all documents that

20  support your contention.

21      **Objections**: Defendants object to Request for Production No. 98 as

22  premature, as seeking documents and communications protected by the work

23  product doctrine, attorney-client privilege, the deliberative process privilege, and the

24  law enforcement privilege, and as outside the proper scope of discovery.

25      This Request is outside the proper scope of discovery under Rule 26(b)

26  because it does not purport to seek documents based on their factual nature or on

27  their relevance to claims and defenses to this case.  Instead, it improperly seeks to

28

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

1  ascertain or limit Defendants' arguments in opposition to class certification and to

2  prematurely reveal work product through a Request for Production of Documents.

3  Relatedly, Defendants object to the extent this Request seeks prior disclosure

4  of documents, such as declarations, that do not already exist but would be created

5  for purposes of opposition to class certification, which similarly impinges on work

6  product protection.

7  Defendants object to this Request to the extent it seeks documents that are

8  already in Plaintiffs' possession.

9  To the extent this Request seeks information about statistics and data, it is

10  duplicative of numerous requests, including Requests Nos. 9-12 and 75-81.

11  Defendants incorporate their objections and responses to those Requests hereto.

12  Defendants further object to this Request in accordance with Objections

13  Which Apply to All RFPs Nos. 1, and 6-10; Objections to Definitions Nos. 1, 5-6

14  and 10; and Objections to Instructions Nos. 1, 2, and 4.

15  **Response:**  In accordance with their objections, Defendants will not be

16  providing documents specifically in response to this Request..

17  **Request for Production No. 99**

18  To the extent that you claim that the named class representatives' claims are atypical

19  of the claims of the purported class alleged in the second amended complaint, all

20  documents that support the factual basis for your contention.

21  **Objections:**  Defendants object to Request for Production No. 99 as

22  premature, as seeking documents and communications protected by the work

23  product doctrine, attorney-client privilege, the deliberative process privilege, and the

24  law enforcement privilege, and as outside the proper scope of discovery.

25  This request is outside the proper scope of discovery under Rule 26(b) because

26  it does not purport to seek documents based on their factual nature or on their

27  relevance to claims and defenses to this case.  Instead, it improperly seeks to

28  ascertain or limit Defendants' arguments in opposition to class certification and to

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

prematurely reveal work product through a Request for Production of Documents.

Relatedly, Defendants object to the extent the Request seeks prior disclosure of documents, such as declarations, that do not already exist but would be created for purposes of opposition to class certification, which similarly impinges on work product protection.

Defendants further object to this Request as unduly burdensome to the extent it seeks documents that are already in Plaintiffs' possession.

Defendants further object to this Request in accordance with Objections Which Apply to All RFPs Nos. 1, and 6-10; Objections to Definitions Nos. 1, 5-6 and 10; and Objections to Instructions Nos. 1, 2, and 4.

**Response:** In accordance with their objections, Defendants will not be providing documents specifically in response to this Request..

## Request for Production No. 100

To the extent that you claim that the named class representatives are inadequate representatives of the class alleged in the second amended complaint, all documents that support the factual basis for your contention.

**Objections:** Defendants object to Request for Production No. 99 as premature, as seeking documents and communications protected by the work product doctrine, attorney-client privilege, the deliberative process privilege, and the law enforcement privilege, and as outside the proper scope of discovery.

This Request is outside the proper scope of discovery under Rule 26(b) because it does not purport to seek documents based on their factual nature or on their relevance to claims and defenses to this case. Instead, it improperly seeks to ascertain or limit Defendants' arguments in opposition to class certification and to prematurely reveal work product through a Request for Production of Documents.

Relatedly, Defendants object to extent the Request seeks prior disclosure of documents, such as declarations, that do not already exist but would be created for

purposes of opposition to class certification, which similarly impinges on work product protection.

Defendants further object to this Request as unduly burdensome to the extent it seeks documents that are already in Plaintiffs' possession.

Defendants further object to this Request in accordance with Objections Which Apply to All RFPs Nos. 1 and 6-10; Objections to Definitions Nos. 1, 5-6 and 10; and Objections to Instructions Nos. 1, 2, and 4.

**Response:**  In accordance with their objections, Defendants will not be providing documents specifically in response to this Request.

**Request for Production No. 101**

To the extent that you claim that Al Otro Lado lacks standing, all documents that support the factual basis for that contention.

**Objections and Responses:** Defendants do not, at this time, have any documents in their possession, custody, or control relating to Al Otro Lado's standing.

Defendants further object to this Request in accordance with Objections Which Apply to All RFPs Nos. 1 and 6-10; Objections to Definitions Nos. 1, 5-6 and 10; and Objections to Instructions Nos. 1, 2, and 4.

Defendants will supplement this response as necessary under Federal Rule of Civil Procedure 26(e), subject to any applicable future objections.

**Request for Production No. 102**

All documents and communications relating to investigations of, research of, or requests for information about Al Otro Lado, Al Otro Lado employees or volunteers, the named Plaintiffs or other asylum seekers on account of their association with Al Otro Lado, or asylum seekers who have materials from Al Otro Lado in their possession.

**Objections:** Defendants object to Request for Production No. 102 as seeking

information outside the scope of Rule 34, and as seeking information protected from disclosure by the attorney work-product doctrine, the attorney-client privilege, and the law enforcement privilege and/or as law enforcement sensitive. First, Defendants object to Request for Production No. 102 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communication(s)" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communication(s)" to include only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

Second, Defendants object to Request No. 102 to the extent it seeks information protected from disclosure by the attorney work-product doctrine. To the extent a request for "all documents and communications relating to investigations of, research of, or requests for information about Al Otro Lado, Al Otro Lado employees or volunteers, the named Plaintiffs or other asylum seekers on account of their association with Al Otro Lado, or asylum seekers who have materials from Al Otro Lado in their possession" implicates, for example, "documents and tangible things prepared by a party or his representative in anticipation of litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *see Hickman v. Taylor*, 329 U.S. 495 (1947), including "documents or the compilation of materials prepared by agents of the attorney in preparation for litigation," *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)), such as, for example, notes and emails of Defendants' attorneys and staff, and draft and final internal documents, such

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

1  documents are protected from disclosure by the attorney work-product doctrine.

2      Third, Defendants object to Request for Production No. 102 to the extent it

3  seeks information protected by the attorney-client privilege. To the extent a request

4  for "all documents and communications relating to investigations of, research of, or

5  requests for information about Al Otro Lado, Al Otro Lado employees or volunteers,

6  the named Plaintiffs or other asylum seekers on account of their association with Al

7  Otro Lado, or asylum seekers who have materials from Al Otro Lado in their

8  possession" implicates, for example, confidential communications between

9  attorneys and clients which are made for the purpose of giving legal advice, *Upjohn*

10 *Co. v. United States*, 449 U.S. 383, 389 (1981), such documents are privileged and

11 protected from disclosure.

12      Fourth, Defendants object to Request No. 102 to the extent it seeks

13 information protected from disclosure by the deliberative process privilege. To the

14 extent a request for "all documents and communications relating to investigations

15 of, research of, or requests for information about Al Otro Lado, Al Otro Lado

16 employees or volunteers, the named Plaintiffs or other asylum seekers on account of

17 their association with Al Otro Lado, or asylum seekers who have materials from Al

18 Otro Lado in their possession" implicates, for example, documents that are

19 predecisional and deliberative, thereby containing opinions, recommendations, or

20 advice, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975), including, but not

21 limited to, "recommendations, draft documents, proposals, suggestions, and other

22 subjective documents which reflect the personal opinions of the writer rather than

23 the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS*, 577 F. Supp. 2d

24 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents

25 are privileged and protected from disclosure.

26      Finally, Defendants object to Request No. 102 to the extent it seeks

27 information protected from disclosure by the law enforcement privilege and/or as

28 law enforcement sensitive. To the extent a request for "all documents and

communications relating to investigations of, research of, or requests for information about Al Otro Lado, Al Otro Lado employees or volunteers, the named Plaintiffs or other asylum seekers on account of their association with Al Otro Lado, or asylum seekers who have materials from Al Otro Lado in their possession" implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants also object to RFP 102 in accordance with Objections Which Apply to All RFPs Nos. 1, 4, and 6-10 and Objections to Definitions Nos. 4-6, 8, and 10.

**Response:** Because of, and without waiving, Defendants' objections, Defendants will not search for, produce, or log any documents responsive to Request for Production No. 102.

## Request for Production No. 103

All communications with Guadalupe Correa-Cabrera or any other researcher funded by or retained by you, CBP, or DHS to investigate, research, or request information about Al Otro Lado or employees of Al Otro Lado.

**Objections:** Defendants object to Request for Production No. 103 as seeking information outside the scope of Rule 34, as seeking information not relevant to any party's claims or defenses, as not proportionate to the needs of the case, and as overly broad and unduly burdensome. First, Defendants object to Request for Production No. 103 to the extent it seeks oral or non-written communications. *See* Pls.' Second RFPs, Definition E (defining "communication(s)" to include "the exchange of information by or through any mode or medium including, but not limited to, spoken

word, written correspondence, any form of technology, face-to-face meetings or conveying of information through third person(s) to some other intended recipient"). Federal Rule of Civil Procedure 34 allows a party to serve requests to inspect or produce "documents," "electronically stored information," or "designated tangible things." Fed. R. Civ. P. 34(a)(1). It does not allow a party to obtain non-tangible things. Defendants accordingly construe the term "communication(s)" to include only those items permitted by Rule 34 as stated in Objections to Definitions No. 4.

Defendants object to Request No. 103 as not relevant to any party's claims or defenses, as Defendants are not immediately aware of the individual mentioned in this Request. Moreover, it would be overly broad and unduly burdensome for Defendants to search the entirety of their records for this individual.

Defendants also object to RFP 103 in accordance with Objections Which Apply to All RFPs Nos. 1, 7-10 and Objections to Definitions Nos. 1-4 and 10.

**Response:** In accordance with their objections, Defendants will not search for, produce, or log any documents responsive to Request for Production No. 103.

## Request for Production No. 104

All documents and communications relating to actions taken against Al Otro Lado, Al Otro Lado employees or volunteers, the named plaintiffs or other asylum seekers on account of their association with Al Otro Lado, or asylum seekers who have materials from Al Otro Lado in their possession, including but not limited to seizing or revoking SENTRI cards, denying SENTRI card applications, or placing any sort of alert, flag, or limitation on passports or other travel documents.

**Objections:** Defendants object to Request for Production No. 104 as not relevant to any party's claims or defenses. This case challenges Defendants' alleged "engage[ment] in an unlawful, widespread pattern and practice of denying asylum seekers access to the asylum process at POEs on the U.S.-Mexico border through a variety of illegal tactics," and Defendants' alleged "adopt[ion of] a formal policy to

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

restrict access to the asylum process at POEs by mandating that lower-level officials directly or constructively turn back asylum seekers at the border (the "Turnback Policy") contrary to U.S. law." ECF No. 189 ¶¶ 2–3. This case does not raise any challenge to the revocation of any Trusted Traveler Program membership.

Defendants also object to Request No. 104 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent this request for documents relating to alleged actions taken by law enforcement implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants also object to RFP 104 in accordance with Objections Which Apply to All RFPs Nos. 1, 4, and 6-10 and Objections to Definitions Nos. 4-6 and 8-10.

**Response:**   In accordance with their objections, Defendants will not search for, produce, or log documents responsive to Request for Production No. 104.

## Request for Production No. 105

All documents and communications relating to CBP, DHS, or Mexican authorities detaining employees or representatives of Al Otro Lado at or near the U.S.-Mexico border.

**Objections:** Defendants object to Request for Production No. 105 as not relevant to any party's claims or defenses. This case challenges Defendants' alleged "engage[ment] in an unlawful, widespread pattern and practice of denying asylum seekers access to the asylum process at POEs on the U.S.-Mexico border through a

variety of illegal tactics," and Defendants' alleged "adopt[ion of] a formal policy to restrict access to the asylum process at POEs by mandating that lower-level officials directly or constructively turn back asylum seekers at the border (the "Turnback Policy") contrary to U.S. law." ECF No. 189 ¶¶ 2–3. This case does not raise any challenge to the detention of any employee or representative of Al Otro Lado at or near the U.S.-Mexico border.

Defendants also object to Request No. 105 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. To the extent this request for documents relating to alleged actions taken by law enforcement implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants also object to RFP 105 in accordance with Objections Which Apply to All RFPs Nos. 1 and 6-10 and Objections to Definitions Nos. 2--6, 8, and 10.

**Response:**  In accordance with their objections, Defendants will not search for, produce, or log documents responsive to Request for Production No. 105.

## Request for Production No. 106

All documents and communications relating to any statements, accusations, or claims made by CBP or DHS employees concerning Al Otro Lado.

**Objections:** Defendants object to Request for Production No. 106 as vague and ambiguous, as not proportional to the needs of the case, and as overly broad and unduly burdensome. Request No. 106 is vague and ambiguous because it does not

1    specify the types of statements, accusations, or claims Plaintiffs seek. To the extent

2    Plaintiffs seek all such documents, Request No. 106 is not proportionate to the needs

3    of the case and is plainly overly broad and unduly burdensome. *Cf. Alfaro v. City of*

4    *San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018)

5    (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every

6    employee who might have had a conversation with [the plaintiff]" would be

7    "onerous and over burdensome").

8        Defendants object to Request No. 106 as irrelevant to the claims and defenses

9    in this case, as statements concerning Al Otro Lado do not bear on the issues in this

10   case: whether the named individual Plaintiffs were, at the time of their alleged injury,

11   arriving aliens applying for admission to the United States; whether Defendants have

12   implemented a formal policy or taken final agency action to "restrict access to the

13   asylum process at ports of entry along the U.S.-Mexico border"; and whether such a

14   policy or final agency action, if it exists, and in the form it exists, is unlawful. The

15   "conditions" in Mexican border municipalities do not bear on those issues. *See* Fed.

16   R. Evid. 401.

17       Defendants also object to Request No. 106 to the extent it seeks information

18   protected from disclosure by the law enforcement privilege and/or as law

19   enforcement sensitive. To the extent this request for documents relating to alleged

20   actions taken by law enforcement implicates, for example, "law enforcement

21   techniques and procedures," the "confidentiality of sources," the "protect[ion of]

22   witnesses and law enforcement personnel," "safeguard[ing] the privacy of

23   individuals involved in an investigation," and/or the "prevent[ion of] interference

24   with an investigation," such information is subject to the law enforcement privilege

25   and protected from disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007

26   WL 1589541, at *5 (E.D. Cal. June 1, 2007).

27       Defendants also object to RFP 106 in accordance with Objections Which

28   Apply to All RFPs Nos. 1 and 7-10 and Objections to Definitions Nos. 2-3, 5-6, 8,

and 10.

**Response:**   In accordance with their objections, Defendants will not search for, produce, or log documents responsive to Request for Production No. 106.

## Request for Production No. 107

All documents relating to the conditions faced by noncitizens waiting on the Mexican side of the U.S.-Mexico border to seek asylum in the United States, including but not limited to rampant crime, kidnappings, extortion, and violence by gangs and cartels.

**Objections:** Defendants object to Request for Production No. 107 as seeking information that is not relevant to any party's claims or defenses, as not proportionate to the needs of the case, as overly broad and unduly burdensome, as vague and ambiguous, and as seeking information protected from disclosure by the law enforcement privilege and/or as law enforcement sensitive. First, any documents relating to the "conditions faced" by the delineated persons while they wait in Mexico do not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. The "conditions" in Mexican border municipalities do not bear on those issues. *See* Fed. R. Evid. 401.

Second, a request to search for and produce "all documents" related to the delineated topics is not proportional to the needs of the case and is overly broad and unduly burdensome. Request No. 107 is not directed to any person and is thus facially overbroad. Even assuming Request No. 107 is directed to the named Defendants, DHS, and CBP (as many of Plaintiffs' other Requests are), a complete response, based on Plaintiffs' definitions, would require Defendants to collect and

183

search the documents of each of the named Defendants; each of the named Defendants' "agents, representatives, employees, attorneys and investigators"; all of U.S. Customs and Border Protection, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP"; and all of the U.S. Department of Homeland Security, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." *See* Pls.' Second RFPs, Definitions A–C. DHS employs more than 240,000 people, and CBP employs more than 60,000 people. *See* "About DHS," U.S. Dep't of Homeland Security (Sept. 27, 2017), https://www.dhs. gov/about-dhs; "About CBP," U.S. Customs and Border Protection (Last modified April 18, 2019), https://www.cbp.gov/about. Collecting and searching through the documents of all of these individuals, as Plaintiffs request, is plainly not proportional to the needs of this case and is overly broad and unduly burdensome. *Cf. Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome"). Further, Request No. 107 is not proportionate to the needs of the case and is overly broad and unduly burdensome because it requests all documents relating to the "conditions" of all Mexican border municipalities along the entire U.S.-Mexico border. Consistent with Objections Which Apply to All RFPs Nos. 1 and 6, Defendants construe this Request as seeking documents relating to Mexican border municipalities outside the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.

Second, Defendants object to Request No. 107 to the extent it seeks information protected from disclosure by the law enforcement privilege and/or as

law enforcement sensitive. To the extent a request for "all documents" relating to "the conditions faced" by the delineated persons in Mexican border municipalities implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

Defendants further object to this Request in accordance with Objections Which Apply to All RFPs Nos. 1, 3-4, 6-10; Objections to Definitions Nos. 1-3, 5-6 and 8-10; and Objections to Instructions Nos. 1, 2, and 4.

**Response:**  In accordance with their objections, Defendants will produce documents responsive to Request for Production No. 107 to the extent any such documents exist and are in their possession, custody or control. In light of Request No. 107 being disproportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely benefit, Defendants will limit their search to a limited number of custodial and non-custodial sources. Defendants will continue to confer with Plaintiffs in identifying reasonable custodial and non-custodial sources and document identification protocols. However, in the event the parties cannot agree, Defendants will limit their search to the sources identified in Defendants' portion of the Supplement to the Parties' Joint 26(f) Report (ECF No. 243), from which Defendants will produce all non-privileged documents responsive to this Request, dating from January 1, 2016, to the present that can be located after a reasonable search.

## Request for Production No. 108

All documents relating to non-governmental organizations' and news outlets' documentation of arbitrary denial of access to or unreasonably delayed access to the

asylum process to individuals seeking asylum at ports of entry along the U.S.-Mexico border.

**Objections and Response:** Defendants object to Request for Production No. 108 as seeking information not in Defendants' possession, custody, or control. Documents "relating to non-governmental organizations' and news outlets' documentation of arbitrary denial of access to or unreasonably delayed access to the asylum process to individuals seeking asylum at ports of entry along the U.S.-Mexico border" would be in the possession of those non-governmental organizations and news outlets, not Defendants'.

To the extent Plaintiffs request documents in Defendants' possession, custody or control which merely refers to "non-governmental organizations' and news outlets' documentation of arbitrary denial of access to or unreasonably delayed access to the asylum process to individuals seeking asylum at ports of entry along the U.S.-Mexico border," Defendants object as unnecessarily duplicative of Request for Production No. 37. Defendants expressly incorporate their objections and responses to Request No. 37 herein.

Defendants further object to this Request in accordance with Objections Which Apply to All RFPs Nos. 1, 4, and 6-10; Objections to Definitions Nos. 5-6, 8, and 10; and Objections to Instructions Nos. 1-4.

## Request for Production No. 109

To the extent that you withhold or redact documents produced in response to any of Plaintiffs' First or Second Sets of Requests for Production based on the deliberative process privilege or the law enforcement privilege and/or as law enforcement sensitive, non-privileged documents sufficient to show the factual basis for your claim of privilege.

**Objections:** Defendants object to Request for Production No. 109 as vague and ambiguous.

186

Defendants further object to this request to the extent it imposes obligations beyond the Federal Rules of Civil Procedure and any applicable law regarding the assertion of privileges.

Defendants object to RFP 109 in accordance with Objections Which Apply to All RFPs Nos. 1 and 7-10; Objections to Definitions Nos. 1, 5, and 10; and Objections to Instructions Nos. 1-4.

**Response:**   Unless otherwise noted, Defendants will produce a privilege log establishing the bases for their claims of privilege.

Dated: May 9, 2019                    Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section

GISELA A. WESTWATER
Assistant Director

*s/ Katherine J. Shinners*
KATHERINE J. SHINNERS
Senior Litigation Counsel
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259 | Fax: (202) 305-7000
katherine.j.shinners@usdoj.gov

ALEXANDER J. HALASKA
SAIRAH G. SAEED
Trial Attorneys

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

1    *Counsel for Defendants*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS.' FIRST AM. AND SUPPL. RESPONSES
TO PLS.' SECOND SET OF RFPs
Case No. 3:17-cv-02366-BAS-KSC

## <u>CERTIFICATE OF SERVICE</u>

Case No. 3:17-cv-02366-BAS-KSC

I certify that on May 9, 2019, I served a copy of Defendants' First Amended and Supplemented Responses to Plaintiffs' Second Set of Requests for Production to all attorneys of record via email.

*/s/ Sairah G. Saeed*
Katherine J. Shinners
Senior Litigation Counsel

189