# Defendants' Exhibit 3

Excerpts from the Hearing on Defendants' Motion to Dismiss the Second Amended Complaint

```
1                United States District Court
2             for the Southern District of California
3                                       )
   AL OTRO LADO, Inc., et al.,          )
4                                       )   No. 17cv2366-BAS
         Plaintiffs,                    )
5                                       )   May 10, 2019
            v.                          )
6                                       )   San Diego, California
   KIRSTJEN NIELSEN, Secretary,         )
7  U.S. Department of Homeland          )
   Security, in her official            )
8  capacity, et al.,                    )
9        Defendants.

10
                  TRANSCRIPT OF MOTION HEARING
11             BEFORE THE HONORABLE CYNTHIA BASHANT
                     United States District Judge
12
    APPEARANCES:
13
    For the Plaintiffs:      MAYER BROWN LLP
14                               MATTHEW H. MARMOLEJO
                                 Attorney at Law
15
                             THE CENTER FOR CONSTITUTIONAL RIGHTS
16                               BAHER AZMY
                                 ANGELO R. GUISADO
17                               Attorneys at Law

18                           SOUTHERN POVERTY LAW CENTER
                                 MELISSA E. CROW
19                               SARAH MARION RICH
                                 REBECCA CASSLER
20                               Attorneys at Law

21  For the Defendants:      U.S. DEPARTMENT OF JUSTICE
                                 ALEXANDER JAMES HALASKA
22                               GISELA ANN WESTWATER
                                 Attorneys at Law
23
    Court Reporter:          Dana Peabody, RDR, CRR
24                           District Court Clerk's Office
                             333 West Broadway, Suite 420
25                           San Diego, California 92101
                             DanaPeabodyCSR@gmail.com
```

```
                1              San Diego, California, May 10, 2019
                2                            *   *   *
                3              THE CLERK:  Calling matter number 1, 17cv2366, Al Otro
                4    Lado, Inc., et al. versus Nielsen, on calendar for motion
10:01           5    hearing.
                6              THE COURT:  Counsel, state your appearances for the
                7    record, please.
                8              MR. MARMOLEJO:  Your Honor, Matthew Marmolejo, Mayer
                9    Brown, LLP, for plaintiffs.
10:01          10              MR. AZMY:  Your Honor, Baher Azmy, A-Z-M-Y, for the
               11    plaintiffs, along with my colleague Angelo Guisado.
               12              MS. CROW:  And Melissa Crow, along with my colleagues
               13    Sarah Rich and Rebecca Cassler, for the plaintiffs.
               14              MS. WESTWATER:  Good morning, Your Honor.
10:02          15    Gisela Westwater.  I am here from Department of Justice on
               16    behalf of the defendants.
               17              MR. HALASKA:  Alexander Halaska, also from the
               18    Department of Justice, for defendants.
               19              MS. WESTWATER:  This is our agency counsel.
10:02          20              THE COURT:  Let me tell you -- this is going to be a
               21    little bit stream of consciousness, but let me tell you, sort
               22    of, where I sort of stand at this point in time, and maybe that
               23    will help focus your arguments.
               24         First of all, I don't really see that the political
10:02          25    question doctrine bars review of the issues.  It seems to me
```

```
 1   territorial rules that the government uses, and I would just
 2   stress that both *Rodriguez* and *Ibrahim*, the case they cite,
 3   adopt *Boumediene*.
 4           THE COURT:  To the extent you talk about *Ibrahim*, what
 5   significant -- I mean, the government does a lot about the
 6   significant voluntary connection.  What significant voluntary
 7   connection do the new individual plaintiffs have to the U.S.?
 8           MR. AZMY:  Your Honor, just so -- I think what *Ibrahim*
 9   suggests is post-*Boumediene*.  Voluntary connections can be one
10   of the practical circumstances in the impractical and anomalous
11   framework, but it is not itself a requirement.
12       And we know that for two reasons:  First, if it were,
13   *Boumediene* would have come out entirely differently because, I
14   dare say, the petitioners' there connection to the
15   United States were not voluntary; and second, *Rodriguez* itself
16   explains neither citizenship nor voluntary submission to
17   American law is a prerequisite to constitutional rights.
18       I think it just made sense that *Ibrahim* focuses on
19   voluntary connections given the petitioners.
20       So just quickly, what it means, that due process applies,
21   it means that this statutory entitlements under the INA cannot
22   be -- plaintiffs cannot be deprived of them without due process
23   of law.
24       So even if, for example, this Court were to find no final
25   agency action, the due process clause would still apply and
```

|       |    |                                                                       |
|-------|----|-----------------------------------------------------------------------|
|       | 1  | prevent any kind of arbitrary deprivations of statutory rights;       |
|       | 2  | say, for example, the use of denial of asylum for purposes of         |
|       | 3  | deterrence.  So the claims, for now, are coterminous, but due         |
|       | 4  | process is an independent claim, in our view.                         |
| 11:17 | 5  |             THE COURT:  Do I need to even delve into the              |
|       | 6  | extraterritorial reach of the due process -- I mean of the            |
|       | 7  | Fifth Amendment?  Can't I resolve plaintiffs' claims, due             |
|       | 8  | process claims, by looking at whether the underlying INA              |
|       | 9  | provisions include them?                                              |
| 11:18 | 10 |             MR. AZMY:  Yes, Your Honor, I think the due process      |
|       | 11 | claim -- whether or not it applies -- that is, if Your Honor          |
|       | 12 | finds that -- I'm sorry.  Are you saying that the --                  |
|       | 13 |             THE COURT:  The extraterritorial, whether the due         |
|       | 14 | process clause that applies is extraterritorial.  I'm not sure        |
| 11:18 | 15 | I even have to reach that.  Or do I?                                  |
|       | 16 |             MR. AZMY:  I don't think you do, Your Honor.  I think    |
|       | 17 | they're slightly different tests, for whatever reason.  I think       |
|       | 18 | the statutory test is looking, parsing the statutory language,        |
|       | 19 | and the constitutional test happens to be this flexible one.          |
| 11:18 | 20 |      And I'm not going to stand here and say that this doctrine      |
|       | 21 | is super coherent.  It is what it is, but given what it is, I         |
|       | 22 | think we'd urge you to decide that both govern the plaintiffs         |
|       | 23 | in this case.                                                         |
|       | 24 |      And just quickly with political question before I get to        |
| 11:19 | 25 | ATS, we agree completely with Your Honor that we are not              |

|  |  |  |
|---|---|---|
|  | 1 | MR. AZMY: The answer is that would not violate the |
|  | 2 | norm of non-refoulement because that individual was given a |
|  | 3 | process, and that's not sort of a repulsion or a genuine |
|  | 4 | refusal. The norm includes the opportunity -- |
| 11:23 | 5 | THE COURT: A due process, sort of, right? |
|  | 6 | MR. AZMY: Exactly, and that's, you know, what we're |
|  | 7 | broadly saying is -- |
|  | 8 | THE COURT: So you're saying they wouldn't -- if |
|  | 9 | they're denied asylum under the INA, they wouldn't have any |
| 11:23 | 10 | fallback ATS claim? |
|  | 11 | MR. AZMY: Exactly, exactly, just like if they're |
|  | 12 | denied -- just as we say we don't necessarily have a right to |
|  | 13 | an appositive result under the INA, just access to the process. |
|  | 14 | And if I could just -- oh, just quickly on the preemption |
| 11:24 | 15 | argument, I think it may be true that a comprehensive |
|  | 16 | regulatory scheme in the INA might preempt customary |
|  | 17 | international law as such, and all the cases that the |
|  | 18 | government cites involves an individual who is in deportation |
|  | 19 | proceedings and simply cites a provision of the customary |
| 11:24 | 20 | international law to oppose or override an INA provision, and |
|  | 21 | the courts say I can't do that. |
|  | 22 | I think it's difficult when you have a federal statute |
|  | 23 | authorizing the courts to look at federal common law, and I'm |
|  | 24 | not aware of a principle where one statute can preempt another. |
| 11:25 | 25 | And if I just might close in the way as my colleague |