# Defendants' Exhibit 5

## Declaration of Elaine Dismuke

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| Al Otro Lado, *et al.*, | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:17-cv-02366-BAS-KSC |
| | ) | |
| Kevin McAleenan, *et al.*, | ) | |
| *Defendants.* | ) | |
| | ) | |

**DECLARATION OF ELAINE DISMUKE**

I, Elaine Dismuke, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows, relating to the above-captioned matter:

1.  I am currently the eDiscovery Team Lead, Security Operations Division, Cyber Security Directorate, Office of Information and Technology, Enterprise Services, U.S. Customs and Border Protection ("CBP"). I have held this position since January 2011. I graduated from the University of Maryland in 1973 with a BS in Biology and was ITIL certified in 2006. My specialized training includes, but is not limited to: CISA Training in 2016, Clearwell Admin Training in 2014, Exchange 2007 Server Training in 2009, Exchange 2003 Server training in 2007, ITIL Foundations, Version 3 in 2008, Implementing and Managing MS Server with Exchange Server in 2003, Basic Outlook/Exchange Support in 2006, Lotus 6 Administration – Server and User Support Training in 2005, Lotus R5 training in 2005, Cc:Mail Administration and User Support in 1998 and Softswitch –mainframe training in 1998.

1

2.  The OIT eDiscovery team is responsible for, among other things, conducting centralized searches of email for CBP and its subcomponents.  I manage a team of 5 individuals, and currently have 104 open, active cases.

3.  I am familiar with the case of *Al Otro Lado v. McAleenan*, as it is one of my current open cases.  My team has collected the emails from six custodians that form the basis for the search term analysis and hit report that I understand will be provided to Plaintiffs.

## *General eDiscovery Process and Resource Constraints*

4.  As an initial matter, CBP does not have the tools in place to easily conduct an agency-wide search of employee emails.  CBP emails are currently archived by a third-party contractor.  The contractor maintains these emails on a series of "journal" servers, which keep a copy of every email sent or received by any CBP employee in chronological order.  Thus, in order to search the emails of a particular individual, those emails must first be collected and stored on a server.  These servers are then searchable by time period, custodian, and keyword, but not by mailbox.  Thus, to search for emails from a particular custodian for a particular keyword for a particular year, the servers must crawl through *all* CBP emails for that *entire* year—a massive amount of data.  CBP generates approximately 1.5 Million messages a day, which amounts to about 110 terabytes of email data per year.  Accordingly, a single custodian/keyword search for even the approximately three and a half-year period from January 2016 to the present would require the journal servers to crawl through about 350 terabytes of data.

5.  These estimates do not take into account the fact that CBP is in the process of migrating off of Email as a Service (journaled email) to Office 365.  Thus, emails are being migrated into this system, and any searches for emails must include both Office 365 and non-Office 365

2

searches.  In order to collect emails from a particular custodian, my team therefore must essentially run two searches – one over the journaled emails, and another over the Office 365 server.  While these searches can be run concurrently, downloading the messages from Office 365 can take several hours.  This therefore increases the time for running a particular search.

6.   Searches are generally conducted on a platform called Discovery Accelerator, which is a tool to run the searches and then store exported data.  Data is generally stored for approximately 45 days.  While searches in Discovery Accelerator generally take between six and eight hours to run per custodian/keyword, the speed of the searches depends on many factors, such as network connectivity/bandwidth, the amount of traffic on CBP's email services, and the complexity of the underlying searches.  The more complicated the search, the longer it takes to process the request, with a real possibility of network connectivity issues.

7.   While Discovery Accelerator can perform basic keyword searches, the tool is not able to conduct more advanced searches (such as proximity searches).  Therefore, in order to perform more advanced searches, email and other ESI is generally uploaded into Clearwell, which is an eDiscovery Tool that can process data through the entire EDRM (Electronic Discovery Reference Model) process. In other words, Clearwell can be used to identify, collect, process, analyze, review and produce data in one of several formats.  Cases in Clearwell must generally be available and able to be actively accessed for 2-5 years.  In order for data to be uploaded to Clearwell, it must first be moved to a data server.  The data server has a limited amount of space, and currently only has about 485 GIGS of space available, which is not enough space to process the volume of searches that CBP requires for

3

discovery.  Thus, for searches that are time-sensitive or critical, CBP must move data off the server to make room for new searches.  Any increase in the size of a particular case, or any increase in the complexity of a particular search, will thus further exacerbate these resource constraints, or would force CBP to purchase additional space.  The total cost to obtain an additional 600 terabytes (TB) of storage space would be $468,000 (which includes the server and maintenance).  CBP could also purchase an additional 40 TB data server at a cost of approximately $10,000.  However, given the volume of searches and the number of open cases, I estimate that this amount of storage would only be sufficient to process another 3 to 4 months' worth of data.

8.  Clearwell is capable of running both basic (e.g., keyword) searches and advanced (e.g., proximity, nested proximity, and wildcard) searches.  Once the search terms have been applied and run over ESI in Clearwell, the information can be processed and analyzed.  This process also takes time and resources, as a member of my team needs to run the terms, analyze the results, and then ensure the results make their way into the appropriate folders for analysis.  Depending on the complexity of the searches and the amount of information that must be searched, the time and resources required to complete these tasks varies by task. Additionally, CBP requires a license to process data for each case in Clearwell.  Each license is for 6.1 terabytes (TB) of data.  Once 6.1 TB of data has been processed, my team either needs to archive or delete a case to free up additional licenses to process additional data.  Additional licenses can be purchased from a vendor using an unfunded request.  The cost of any such license would depend on the amount of additional data CBP needed to process and thus purchase from the vendor.

***Open Cases***

4

9.   Currently, the eDiscovery Team has 104 open cases in various stages of production and

review.  These cases are based on civil litigation requests, trade issues, congressional fact

finding, criminal cases, and Freedom of Information Act (FOIA) requests. Those requests

come from the Office of Chief Counsel, the Office of Professional Responsibility, the CBP

FOIA Office, the Department of Homeland-Office of Inspector General, the SOC (Security

Operations Center), and Managerial Administrative requests.  This figure does not include

the requests from OIT's Technology Service Desk for individual email message restores, nor

does this figure include requests sent to eDiscovery from the CBP Email Services team, the

Office 365 Project team, or one of our customers asking for additional data their previously

completed request. Data pulls range from a single search to searches on 30 or more

custodians  with or without key words or Enterprise Searches (searching all 75,000 CBP

mailboxes) using multiple key words. There is no way to know how much data will be

included in each case until that case is pulled. Search time frames have been as short as 1

day to as long as 11 years.  Based on the scope of each request, there can be different types

of searches which could include not only email messages, but internet data pulls,

logon/logoff information, data collection from servers to include miscellaneous data from

shared drives, home drives and individual hard drives, which in the case of Border Patrol,

Air and Marine or the Office of Field Operations, could be in the hundreds, as these offices

log into multiple computers on a daily basis and move between different locations as their

duties require.

10.   Additionally, because of the government shut down from December 22, 2018 through

January 25, 2019, work on many of these open cases has been significantly delayed.

Specifically, for any cases that were pending at the time of the shutdown, the team is twelve

weeks behind schedule.  Thus, my team has had to reprioritize some of these cases, and must

ensure that we do not miss any deadlines as a result of this delay.  Additionally, the server

on which Discovery Accelerator runs can only support 7 to 10 search sessions at one time.

CBP shares these search sessions with other DHS components, and has been allotted 5 of the

available search sessions.

### *Specific Work in* **Al Otro Lado**

11.  Currently, in *Al Otro Lado*, my team has collected all email messages from six custodians

from January 1, 2016 through March 13, 2019.  This search collected 660,253 emails

(1,443,523 items), which amounted to 626.85 GIGs.  All of these searches were uploaded to

Clearwell for the application of additional search strings.  Due to the volume of the searches,

the server used to upload these searches onto Clearwell is now almost out of space.

12.  Following the application of Defendants' initial proposed search terms (which I understand

have been provided to Plaintiffs), there are 75,085 documents and 253,565 items ready for

review.  All of these documents are stored on the server, and thus take up a significant

amount of space.

13.  Additionally, my team is currently collecting the emails from an additional four custodians

in both Discovery Accelerator and the Office 365 server.  My team collected 722, 537

messages from these additional four custodians, which amounts to 224 GIGs of data.  Due to

the space constraints on the Clearwell server, it will not be feasible to upload these searches

into Clearwell without removing other cases.  Because we have so many open cases, and

because all of these cases are time-sensitive, it is very difficult to find space on the server.

While we have submitted funding requests to obtain more space, the funding requests have

not been approved.  Until we receive this additional space, my team must manually assess

6

existing files in the server and make any necessary adjustments manually. This, in turn, requires members of my team to spend significant time doing this work, rather than running, collecting, and analyzing search results. Additionally, there are over 150 cases in Clearwell that must remain active.

14. I understand that, as part of the discovery process, there may be additional custodians added. Given the existing space restrictions on our server the number of other open cases the team has, and the time it takes to complete these searches, adding additional custodians in this case will significantly increase the burden on my team and our servers. The volume of data from just the original six custodians is more than we have space for on the servers. Any additional increase in the number of custodians will only exacerbate the resource constraints, and will require my team to look for additional funding and additional resources.

15. If discovery in this case is expanded to include every land port of entry along the southwest border, I understand that we could see a significant increase in the number of custodians. Given the number of open cases and the resource constraints discussed above, any increase in the number of custodians would lead to significant expenses and would significantly increase the time it would take to complete discovery in this case.

16. I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 24 day of May, 2019.

Elaine Dismuke
eDiscovery Team Lead
Security Operations Division
Cyber Security Division
Office of Information and Technology
Enterprise Services
U.S. Customs and Border Protection

7