1  MAYER BROWN LLP
2     Matthew H. Marmolejo (CA Bar No. 242964)
      *mmarmolejo@mayerbrown.com*
3  350 S. Grand Avenue
   25th Floor
4  Los Angeles, CA 90071-1503
      Ori Lev (DC Bar No. 452565)
5     (*pro hac vice*)
      *olev@mayerbrown.com*
6     Stephen M. Medlock (VA Bar No. 78819)
      (*pro hac vice*)
7     *smedlock@mayerbrown.com*
   1999 K Street, N.W.
8  Washington, D.C. 20006
   Telephone:  +1.202.263.3000
9  Facsimile:   +1.202.263.3300

10 SOUTHERN POVERTY LAW CENTER
      Melissa Crow (DC Bar No. 453487)
11    (*pro hac vice*)
      *melissa.crow@splcenter.org*
12 1701 17th Street, N.W., Suite 705
   Washington, DC 20036
13 Telephone: +1.202.355.4471
   Facsimile: +1.404.221.5857

14 *Additional counsel listed on next page*
   *Attorneys for Plaintiff Al Otro Lado, Inc.*
15
              **UNITED STATES DISTRICT COURT**
16
              **SOUTHERN DISTRICT OF CALIFORNIA**
17

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, | Case No.:  17-cv-02366-BAS-KSC |
| | Hon. Karen S. Crawford |
| Plaintiffs, | |
| | [DISCOVERY MATTER] |
| v. | |
| | **JOINT MOTION TO STRIKE EXHIBITS 5 AND 6 TO DECLARATION OF GISELA WESTWATER (DKT. NOS. 236-8 & 236-9) AND RELATED ARGUMENT** |
| Kevin K. McAleenan,[1] *et al.*, | |
| Defendants. | |
| | **NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |
| | [*Declarations of Ori Lev and Gisela A. Westwater Filed Concurrently*] |

---

[1] Acting Secretary McAleenan is automatically substituted for former Secretary Nielsen pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
   Baher Azmy  (NY Bar No. 2860740)
   (*pro hac vice*)
   *bazmy@ccrjustice.org*
   Ghita Schwarz  (NY Bar No. 3030087)
   (*pro hac vice*)
   *gschwarz@ccrjustice.org*
   Angelo Guisado (NY Bar No. 5182688)
   (*pro hac vice*)
   *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
   Mary Bauer (VA Bar No. 31388)
   (*pro hac vice*)
   *mary.bauer@splcenter.org*
1000 Preston Ave.
Charlottesville, VA
   Sarah Rich (GA Bar No. 281985)
   (*pro hac vice*)
   *sarah.rich@splcenter.org*
   Rebecca Cassler (MN Bar No. 0398309)
   (*pro hac vice*)
   *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030

AMERICAN IMMIGRATION COUNCIL
   Karolina Walters (DC Bar No. 1049113)
   (*pro hac vice*)
   *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, DC 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

# I.    PLAINTIFFS' ARGUMENT

## A.    INTRODUCTION

Plaintiffs respectfully request that this Court strike Exhibits 5 and 6 to the Declaration of Gisela Westwater offered in support of the recently-filed joint motion concerning Plaintiffs' First and Second Sets of Requests for Production.  *See* Dkt. Nos. 263-8 & 263-9.   In violation of this Court's prior discovery orders, the Local Civil Rules, and this Court's Chambers Rules, the Government failed to meet and confer regarding the matters set forth in these declarations.  Therefore, the Court should strike these declarations and the portions of the joint motion that rely upon them and award Plaintiffs the attorneys' fees associated with bringing this motion.

This Court already has been quite clear with the parties that no further violations of this Court's Local Rules or Chambers Rules will be tolerated.  *See* Dkt. No. 250 at 1 (addressing the Government's "flagrant violation of the Federal Rules of Civil Procedure, Civil Local Rules and the undersigned's Chambers Rules.").  Despite this, the Government has violated this Court's rules and orders concerning meeting-and-conferring prior to filing motion papers.  The Government did not meet and confer with Plaintiffs on the factual basis for their argument that it would be unduly burdensome to produce documents on a class-wide basis (i.e., from all ports of entry along the U.S.-Mexico border) in connection with the now-pending Joint Motion concerning Plaintiffs' First and Second Sets of Requests for Production.  *See* Dkt. No. 263 (the "Joint Motion").

At 7:52pm ET on May 24, 2019, the date that the Joint Motion was due to be filed with the Court, the Government disclosed for the first time the declarations of Elaine Dismuke (Dkt. No. 263-8) and Randy Howe (Dkt. No. 263-9), which are attached as Exhibits 5 and 6 to the Declaration of Gisela Westwater.  In their declarations, Ms. Dismuke and Mr. Howe argue that there are technological limitations on collecting and searching the email files of the Government's

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO STRIKE

1  custodians that might prove challenging or costly if done on a class-wide basis and

2  that it would be distracting to collect documents in connection with the litigation.

3  *See* Dkt No. 263-8 ¶¶ 5-8, 10; Dkt No. 263-9 ¶ 10.  During the parties' April 30,

4  2019 telephonic meet-and-confer and the parties' subsequent exchanges of

5  correspondence, the Government never identified these technological limitations or

6  potential costs, nor did the Government inform Plaintiffs that they intended to offer

7  the declarations of Ms. Dismuke and Mr. Howe or the information contained in the

8  declarations.[2]  Because the Government did not raise these facts in the parties' meet-

9  and-confer about these issues and attempted to ambush Plaintiffs with these

10  declarations at 7:52pm on the date that the joint motion was due to be filed,[3] the

11  Court should strike the Government's argument concerning the supposed undue

12  burden of producing class-wide discovery, and the Court should consider awarding

13  Plaintiffs the costs and fees associated with bringing this motion.

14      A party seeking a protective order limiting the scope of discovery "must

15  include a certification that the movant has in good faith conferred or attempted to

16  confer with other affected parties in an effort to resolve the dispute without court

17  action."  Fed. R. Civ. P. 26(c)(1).  It is not enough to have generally met-and-

18  conferred on disputed discovery requests.  The parties must meet and confer

19  "concerning *all disputed issues*" before filing a discovery motion.  Civ. L. R. 26.1.a.

20  (emphasis added).  The Local Rules also caution the parties that "[t]he Court will

21  entertain no motion pursuant to Rules 26 through 37 . . . unless counsel . . . have

22  previously met and conferred concerning *all disputed issues*."  *Id.* (emphasis added).

23  This Court's Chambers Rules emphasize the importance of the meet-and-confer

24

25  [2] Pursuant to Civ. L. R. 83.9, Plaintiffs may not file this discovery correspondence
   "[e]xcept as authorized by the judge."  Plaintiffs have summarized relevant portions
26  of the correspondence in the accompanying Declaration of Ori Lev.  Plaintiffs are
   happy to file copies of the correspondence on the docket if requested by the Court.

27

28  [3] The joint motion was due to be filed on May 24, 2019 by operation of Chambers
   Rule V(A).

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO STRIKE

requirement:

> Counsel must meet and confer on *all issues* **before** contacting the Court.  If counsel are located in the same district, the meet and confer must be in person.  If counsel are located in different districts, then telephone or video conference may be used for meet and confer discussions.  In no event will meet and confer letters, facsimiles or emails satisfy this requirement.

Chambers Rule V(B) (emphasis added); *see also* Dkt. No. 250 at 3-4 (noting the Government's prior failure to adhere to the meet-and-confer requirements set forth in the Federal Rules, Local Rules, and Chambers Rules).  The requirement to meet and confer on all disputed issues exists for a good reason.  Numerous courts have held that parties should approach discovery in a transparent manner and avoid ambush tactics.  *See, e.g.*, *Bd. of Regents of Univ. of Neb. v. BASF Corp.*, 2007 WL 3342423, at *5 (D. Neb. 2007) ("The overriding theme of recent amendments to the discovery rules has been open and forthright sharing of information by all parties to a case with the aim of expediting case progress, minimizing burden and expense, and removing contentiousness as much as practicable."); *Styer v. Frito-Lay, Inc.*, 2015 U.S. Dist. LEXIS 33466, at *13 (M.D. Pa. 2015) ("The hallmarks of discovery in federal court are, and should be, openness, transparency, and candor.  Gamesmanship, ambush, surprise, and concealment have no place in federal practice.").

## B.    THE GOVERNMENT FAILED TO MEET AND CONFER ON THE FACTUAL BASIS FOR ITS UNDUE BURDEN OBJECTION

Here, the Government ignored the requirement to meet and confer on all disputed issues set forth in the Court's Local Rules and Chambers Rules and opted for a strategy of concealment and ambush, rather than transparency and candor.  On April 9 and 10, 2019, the Government served its responses and objections to

Plaintiffs' First and Second Sets of Requests for Production. Lev. Decl. ¶ 3. In its discovery responses, the Government objected to providing discovery from all of the ports of entry along the U.S.-Mexico border and attempted to limit discovery to four ports of entry located in in California and Texas (i.e., San Ysidro, Otay Mesa, Hidalgo, and Laredo). *Id.* The Government argued that "[a]ny discovery from other ports of entry along the U.S.-Mexico border would be duplicative and unduly burdensome." *Id.* However, the Government's objections did not provide a factual basis for why it would be burdensome or costly to collect, search, review, and produce documents from all ports of entry along the U.S.-Mexico border. *Id.*

After receiving the Government's objections and responses to Plaintiffs' first and second sets of requests for production, the parties agreed to meet and confer about them on April 30, 2019. Lev. Decl. ¶ 4. In advance of this discovery conference, Plaintiffs wrote to the Government challenging the factual basis for the Government's undue burden objection. *Id.* In this letter, Plaintiffs stated:

> The parties have not yet completed their negotiations regarding the scope of discovery, custodians, non-custodial sources, and search terms. Therefore, it is entirely premature and inappropriate for the Government to assume that providing class-wide discovery would be unduly burdensome. ***If the Government has a basis for its position that regardless of the custodians, non-custodial sources, and search terms that the parties negotiate it will be unduly burdensome to provide Plaintiffs with class-wide discovery, please explain it to us during our conference on April 30, 2019.***

*Id.*

On April 30, 2019, the parties met and conferred by telephone for approximately two hours concerning Plaintiffs' First and Second Set of Requests for Production. Lev. Decl. ¶ 5. During this meet and confer, the Government referred to technological limitations that would make it difficult for the parties to prioritize

discovery based on search terms.  *Id.*  However, the Government never explained the factual basis for its argument that it would be unduly burdensome to produce discovery on a class-wide basis.  *Id.*  For example, the Government never provided Plaintiffs with any of the following salient factual details contained in the Dismuke and Howe declarations:

- CBP's emails are archived by a third-party contractor on a series of "journal" servers.  Lev. Decl. ¶ 8; Dkt. No. 263-8 ¶ 4.

- CBP is in the process of migrating from "journal" email servers to Office 365 email servers.  Lev. Decl. ¶ 8; Dkt. No. 263-8 ¶ 5.

- CBP uses Discovery Accelerator to run search terms on CBP's email servers.  Lev. Decl. ¶ 8; Dkt. No. 263-8 ¶ 6.

- CBP's primary tool for applying search terms, Discovery Accelerator, does not support the use of proximity-based keyword searches.  Lev. Decl. ¶ 8; Dkt. No. 263-8  ¶ 7.

- CBP is currently running 12 weeks—i.e., 3 months—behind in applying search terms for litigation and FOIA matters.  Lev. Decl. ¶ 8; Dkt. No. 263-8  ¶ 10.  This means that the Government will not be able to produce documents until at least August 20, 2019—meaning that, despite the fact that Plaintiffs delivered their First and Second Sets of Requests for Production in February 2019, ***the Government will not be able to produce a single email from its agreed-upon custodians until after the August 5, 2019 Early Neutral Evaluation conference and after the August 16, 2019 deadline for Plaintiffs' disclosure of its class certification experts***.  Lev. Decl. ¶ 8; *see also* Dkt. No. 246 ¶¶ 5, 7.

- The mere act of searching for relevant discovery would distract CBP employees from their jobs.  Lev. Decl. ¶ 8; Dkt. No. 263-9 ¶ 10.

On April 30, 2019, after the telephonic meet-and-confer had concluded, Plaintiffs' counsel sent the Government an email to memorialize the discussions at

the meet and confer. Lev. Decl. ¶ 6. In this email, Plaintiffs noted that the parties were at an impasse on whether the Government would provide class-wide discovery. *Id.* However, this summary of the April 30 discovery conference contains no discussion of the factual basis for the Government's argument that class-wide discovery would be unduly burdensome. *Id.* Plaintiffs closed this email by stating, "If I have mischaracterized any of our discussions, please let me know." *Id.* The Government never responded to this email stating that Plaintiffs had mischaracterized the April 30, 2019 discovery conference. *Id.*

Indeed, the Government never informed Plaintiffs that they intended to offer *any* factual support for its argument that class-wide discovery would be unduly burdensome. Lev. Decl. ¶ 8.[4]

## C.    THE    GOVERNMENT'S    SANDBAGGING    TACTICS SUBSTANTIALLY PREJUDICED PLAINTIFFS

Although not necessary for seeking sanctions under Fed. R. Civ. P. 37, it is important to note that the Government's discovery gamesmanship has substantially prejudiced Plaintiffs. By providing Plaintiffs with a copy of the declarations of Ms. Dismuke and Mr. Howe minutes before they were to be filed, the Government robbed Plaintiffs of the opportunity to answer the allegations made in those declarations and to engage with the Government about the facts asserted therein.

And to be clear, the allegations in the declarations can be easily rebutted. For

[4] Below, the Government provides a lengthy account of the parties' meet-and-confer efforts that is largely irrelevant to this motion. In its discussion of the meet-and-confers between the parties, the Government never contests the fact that it did not disclose the existence of the Howe and Dismuke declarations until hours before the Joint Motion was due to be filed with the Court. And nowhere does the Government state that it disclosed the facts recounted in the Howe and Dismuke declarations to Plaintiffs during an in-person or telephonic meet-and-confer. At most, the Government argues that Plaintiffs should have been able to figure out the factual basis for the Government's objection based on written correspondence and scattered statements in telephone conferences that addressed other issues weeks before the Government served its responses and objections to Plaintiffs' First and Second Sets of Requests for Production. Meet-and-confers are not a guessing game. If the Government had a factual basis for its undue burden objection, it should have stated that factual basis during the parties' telephonic meet-and-confer addressing Plaintiffs' First and Second Sets of Requests for Production.

example, the Government claims that its technological limitations would make discover unduly burdensome. *See* Dkt. No. 263-8 ¶¶ 4-8. However, there is no factual support for this statement. In her declaration, Ms. Dismuke does not claim to have tested a single search term that the Government has proposed to determine (a) how long it will take the search term to run or (b) the number of potentially responsive documents that the Government would need to review. *See id.* ¶¶ 11-15. Nor has Ms. Dismuke attempted to take a representative sample of data from ports of entry outside of the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry to determine whether data from other ports of entry would be unduly burdensome to collect, search, and review. *See id.* Therefore, Ms. Dismuke's declaration contains general statements concerning CBP's e-discovery resources, but *does not* contain "specific facts which indicate the nature and extent of the burden" imposed by Plaintiffs' requests for production. *Acosta v. Wellfleet Commc'ns, LLC*, 2018 WL 664779, at *8 (D. Nev. 2018) (quoting *Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 528-29 (D. Nev. 1997)).

Moreover, Ms. Dismuke's factual allegations are incomplete and contradictory. For example, Ms. Dismuke states that CBP is transitioning from journaled email servers to a Microsoft Office 365 system. Dkt No. 263-8 ¶ 5. Ms. Dismuke then claims that the only electronic discovery tools available to the Government for collecting and culling emails are Discovery Accelerator and Clearwell. *See id.* ¶¶ 7-8. But Ms. Dismuke (and the Government) ignore the fact that Microsoft Office 365 has a built-in e-discovery capability that allows an administrator to create litigation holds, run searches of emails, and export search results to a document review platform. *See* Microsoft, *eDiscovery Cases in the Security & Compliance Center* (May 17, 2019), https://docs.microsoft.com/en-us/office365/securitycompliance/ediscovery-cases. Ms. Dismuke never explains why the Government has refused to utilize the e-discovery capabilities associated with Office 365 or the burdens that would be associated with doing so. *See* Dkt No.

263-8 ¶¶ 5-8.

Likewise, Mr. Howe claims that collecting documents would distract CBP employees from their day-to-day business. Dkt No. 263-9 ¶ 7. Responding to discovery requests in any case requires some degree of distraction from a document custodian's daily activities. Mr. Howe's declaration never explains how this identified burden would be "undue" either in terms of the number of hours that would be required to respond to Plaintiffs' requests or how responding to discovery would impair the operations of a port of entry. *See id.*; *see also Barnum v. Equifax Info. Servs., LLC*, 2018 U.S. Dist. LEXIS 39424, at *4 (D. Nev. 2018) ("Once a burden has been established, the question becomes whether that burden is 'undue.'"). Moreover, Mr. Howe never explains why searches of custodians' files at the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry will apparently not distract CBP from its missions, but searching for responsive documents at other ports of entry will do so.

Mr. Howe's declaration is also contradictory. Mr. Howe claims that since Executive Assistant Todd Owen issued the Government's Metering Policy in April 2018, it is his "opinion" that "discovery from all ports of entry is not . . . likely to yield significant additional relevant information beyond what is currently being collected from [CBP's Office of Field Operations] headquarters." Dkt. No. 263-9 ¶ 10. Mr. Howe's "opinion," however, is unfounded. *First*, Mr. Howe does not claim to have reviewed any documents or emails to support his opinion. Therefore, his declaration is little more than his own speculation about where relevant documents may be found. *Second*, Mr. Howe ignores the fact that Plaintiffs' allegations concern much more than "metering" or "queue management." Plaintiffs claim that the Government engaged in a host of improper conduct, including using physical force to block the entrances to ports of entry and lying to migrants, to turn back noncitizens seeking asylum from ports of entry on the U.S.-Mexico border. *See* Dkt. No. 189 ¶¶ 3, 84-106. *Third*, Mr. Howe improperly assumes that this case only focuses on

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO STRIKE

conduct beginning in April 2018. In fact, Plaintiffs allege that the Government was turning back noncitizens seeking asylum in the United States as early as 2016. *See id.* ¶¶ 48-55.

Knowing that the declarations of Ms. Dismuke and Mr. Howe could be so easily undermined, the Government withheld them until the last minute in an effort to enhance its arguments via gamesmanship. By denying Plaintiffs the opportunity to make these arguments, the Government substantially prejudiced Plaintiffs.

## D. THE GOVERNMENT HAS NO VALID EXCUSE FOR ITS CONDUCT

The parties held a telephonic meet-and-confer conference regarding this dispute on May 28, 2019. During that conference, the Government offered a number of excuses for its conduct, none of which are valid.

*First*, the Government claimed that it did comply with this Court's Local Civil Rules and Chambers Rules by providing Plaintiffs with written correspondence regarding the undue burden associated with producing class-wide discovery. Lev. Decl. ¶ 9. But the Government cannot identify a single letter or email in which it disclosed the factual basis for its undue burden argument. And, even if it could, this Court has already explained that parties must meet and confer about disputed issues by telephone or in-person prior to filing a discovery motion. *See* Dkt. No. 250 at 3-4 (observing that the Government violated the Local Civil Rules and Chambers Rules by discussing matters with Plaintiffs "via email, and not by telephone"); *see also* Chambers Rule V(B).

*Second*, the Government argues that upon learning that the Government had failed to meet-and-confer regarding the factual basis for its undue burden objection, Plaintiffs should have filed a motion to extend the deadline for filing a joint motion concerning the Plaintiffs' First and Second Sets of Requests for Production. Lev. Decl. ¶ 9. This gets matters backwards. The burden was on the Government to comply with the Local Civil Rules, the Chambers Rules, and the Court's prior orders.

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO STRIKE

1   The Government should not be permitted to shift the blame for its own violations of

2   these rules and orders.

3       *Third*, the Government claims that, during telephone conferences concerning

4   the ESI Protocol in this case, it provided some information concerning the

5   limitations of its e-discovery tools.  Lev. Decl. ¶ 9.  That is incorrect.  As an initial

6   matter, the Government's reference to meet-and-confers on other matters in this case

7   belies the fact that the Government never provided the factual basis for its undue

8   burden objection when the parties were meeting and conferring about Plaintiffs'

9   First and Second Sets of Requests for Production.  Moreover, the Government's

10  argument ignores the substance of the prior discussions concerning the ESI Protocol.

11  During negotiations regarding the ESI Protocol in this case, the Government stated

12  generally that its e-discovery tools had unspecified limitations.  *Id.* ¶ 10.  Prior to

13  providing Plaintiffs with the Dismuke and Howe declarations on May 24, 2019, the

14  Government never provided any factual information substantiating these statements,

15  such as (a) the identity of the e-discovery tools that the Government was using to

16  collect emails, (b) the type of email servers that the Government's email was stored

17  on, (c) the limitations on the search strings that can be used in the Government's e-

18  discovery tools, and (d) the amount of available server space for hosting and

19  searching emails using the Government's e-discovery tools.  *Id.*

20      Consequently, the Government's arguments do not change the crux of this

21  motion.  The Government ignored this Court's orders and rules concerning meeting

22  and conferring on all disputed matters before resorting to discovery motions practice.

23  **E.    EXHIBITS 5 AND 6 TO THE DECLARATION OF GISELA**

24  **        WESTWATER SHOULD BE STRUCK**

25      The Government should be sanctioned for its conduct.  When a party "fails to

26  obey an order" concerning discovery, the Court may "issue further just orders,"

27  including striking portions of pleadings and motion papers.  *See* Fed. R. Civ. P.

28  37(b)(2)(A)(iii) (empowering court to "strik[e] pleadings in whole or in part").

1    "Instead of or in addition to the orders above, the court must order the disobedient

2    party, the attorney advising that party, or both to pay the reasonable expenses,

3    including attorney's fees, caused by the failure, unless the failure was substantially

4    justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P.

5    37(b)(2)(C).

6         Here, the Government failed to meet and confer with Plaintiffs regarding the

7    factual basis for its undue burden objection to providing class-wide discovery in

8    response to Plaintiffs' First and Second Sets of Requests for Production.  This

9    violated the Federal Rules of Civil Procedure, the Local Civil Rules, the Court's

10   Chambers Rules, and this Court's prior discovery order (Dkt. No. 250).  This Court

11   has already been clear that deviations from the Federal Rules of Civil Procedure, the

12   Local Civil Rules, and this Court's Chambers Rules will not be tolerated.  That

13   should be particularly true here.  At a minimum, the Court should strike Exhibits 5

14   and 6 to the Declaration of Gisela Westwater and award Plaintiffs the costs and fees

15   associated with bringing this motion.[5]

16   **II.    DEFENDANTS' ARGUMENT**

17        The Court should reject Plaintiffs' request to strike the declarations of Elaine

18   Dismuke and Randy Howe (ECF Nos. 263-8 and 263-9) and their request for

19   attorneys' fees for several reasons. First, contrary to Plaintiffs' characterizations—

20   which omit an entire month of discovery-related correspondence between the

21   parties—Defendants have been meaningfully meeting and conferring with

22   Plaintiffs for months on "all disputed issues" related to the burden imposed by

23   Plaintiffs' 109 Requests for Production ("RFPs"), including the substantial

24   additional burden that would be imposed were Defendants required to provide

25   discovery from all land ports of entry across the U.S.-Mexico border. CivLR

26   _____

27   [5] Should the Court grant this motion, Plaintiffs are prepared to provide the Court
     with an accounting of its attorneys' fees and costs associated with this motion within

28   14 days of the Courts order granting the motion.

1  26.1(a); Chambers Rule V.B.

2       Second, Plaintiffs are not prejudiced by the submission of the Dismuke and

3  Howe declarations because the statements contained therein simply substantiate

4  Defendants' positions on the "disputed issues." In any event, Plaintiffs' reply

5  arguments—which are offered without prior approval of the Court—fail in both

6  form and substance. Moreover, Defendants' common-sense position that the

7  border-wide discovery Plaintiffs seek to compel is not proportional to the needs of

8  the case does not hinge on the specific facts contained in the declarations.

9  Regardless of the specific collection burdens that would be imposed by expanding

10  the scope of discovery, there is no doubt that requiring discovery from ports of

11  entry for which there are no representative Plaintiffs and no specific allegations

12  imposes a disproportionate burden on Defendants, particularly in light of the

13  significant amount of discovery they have already agreed to provide.

14       Finally, the Court should reject Plaintiffs' request for attorneys' fees.

15  Defendants have not "fail[ed] to obey an order to provide or permit discovery,"

16  and such a fee award would be "unjust" in light of Defendants' diligent

17  participation in discovery planning and efforts to meet and confer with Plaintiffs

18  over the past several months. *See* Fed. R. Civ. P. 37(b)(2)(A), (C). Defendants

19  respectfully request that the Court deny Plaintiffs' request in its entirety.

20      **A.**    **Defendants Have Met and Conferred with Plaintiffs Since the**

21              **February 22, 2019 Rule 26(f) Conference About "All Disputed**

22              **Issues" Raised in Plaintiff's Motion to Compel.**

23       Defendants have been meeting and conferring for several months with

24  Plaintiffs on "all disputed issues" related to the burden imposed by their 109

25  RFPs—including the burden of expanding the scope of discovery beyond the four

26  ports of entry at issue in this case. CivLR 26.1(a); *see* Chambers Rule V.B.

27  Defendants began providing Plaintiffs with ample notice of their discovery

28  capabilities and the basis of their burden objection during the initial and

1    supplemental Rule 26(f) processes, continued to do so during the parties'

2    negotiations over the ESI Protocol, cited those burdens in their objections to the

3    RFPs, and reiterated the basis of their objections during the parties' extensive

4    meet-and-confer efforts regarding those RFPs. Defendants have plainly satisfied

5    the Southern District's and this Court's rules requiring the parties to meet and

6    confer "on all disputed issues." CivLR 26.1(a); Chambers Rule V.B.

7          ***The Initial Rule 26(f) Process.*** Plaintiffs emailed 84 Requests for

8    Production to Defendants on February 19, 2019, at 11:21 PM (Eastern), bringing

9    them up to a total of 109 pending RFPs as of that date. Declaration of Gisela A.

10   Westwater ¶ 2, June 7, 2019 (filed concurrently[6]). The overwhelming majority of

11   these RFPs sought "all documents" "related to" dozens of far-flung topics from a

12   time period of three-plus years, and were directed on their face to each named

13   Defendant and all of the 240,000-plus employees who reported to them. *See* Joint

14   Mot. Regarding Pls.' Mot. to Compel, at 42 n. 7 (ECF No. 263); Defs.' Objections

15   and Responses to Plaintiffs' First and Second RFPs (ECF Nos. 263-4 and 263-5).

16   Plaintiffs proposed that Defendants finish collecting, reviewing, redacting, and

17   producing documents in response to these RFPs by June 28, 2019, and that the

18   parties complete all discovery in the case by August 30, 2019. *Id.*

19         Defendants' counsel explained at the telephonic Rule 26(f) conference two

20   days later that the scope and number of Plaintiffs' document requests, compared

21   with Defendants' discovery capabilities, made Plaintiffs' proposed discovery

22   schedule flatly unworkable. *Id.* ¶ 3. Although Defendants understood that the

23   parties would negotiate over custodians, non-custodial sources, and search terms

24   through a process to be established in a forthcoming ESI Protocol, Plaintiffs had

25   made clear in their February 19 letter that they intended to seek discovery from all

26

27   ───────────────

28   [6] Ms. Westwater's declaration summarizes the relevant portions of the parties' discovery-related
correspondence. Like Plaintiffs, Defendants are similarly willing to submit that correspondence
should the Court request. *See supra* at 2 n.2.

land ports of entry along the U.S.-Mexico border, regardless of the total number or scope of the individual RFPs themselves. *Id.* ¶ 2. Defendants' counsel explained at the parties' Rule 26(f) conference on February 22 that, in light of the number and scope of Plaintiffs' 109 RFPs and Defendants' discovery capabilities, and considering Plaintiffs' intent to seek discovery from all border ports of entry, a June 28, 2019 document discovery deadline was not feasible. *Id.* ¶ 3. Defendants explained that, if Plaintiffs were not amenable to Defendants' proposed period of initial targeted discovery, which would involve only 3–5 agency custodians over a limited time period of Plaintiffs' choosing, Defendants would require approximately one year from the resolution of any RFP-related discovery motions[7] to complete their collection, review, and production of documents. *Id.*

Defendants further explained the burdens in responding to discovery on the scale Plaintiffs seek in several drafts of the Joint Discovery Plan and Rule 26(f) Report exchanged between the parties after the February 22 Conference. For example, in a March 5, 2019 draft of the Rule 26(f) Report, Defendants proposed that document discovery be completed by January 31, 2020, and that all discovery be completed by March 31, 2020. Defendants explained in this draft that these "proposed discovery timelines take into account [CBP's] *backlog in collection, processing, and production of ESI* as a result of litigation workload, platform limitations, *and the Government shutdown*." *Id.* ¶ 4 (emphasis added).

When Plaintiffs then proposed an August 30, 2019 document discovery deadline in response, Defendants explained again in a March 8 return draft that such a short timeline was not workable, and proposed that document discovery be

---

[7] At the time, Defendants were referring only to motions related to Plaintiffs' 109 First and Second RFPs. Plaintiffs have since served another 42 document requests in a Third Set of RFPs (Nos. 110–152). Objecting and responding to this Third Set, as well as developing a list of custodial and non-custodial sources and search terms to apply to those sources, and collecting and reviewing those documents, will divert already-constrained resources from Defendants' current collection and review efforts related to the First and Second Sets, and is likely to further delay those efforts.

complete by January 31, 2020, and that all discovery be complete by March 31, 2020. *Id.* ¶¶ 5–6. Defendants explained specifically that:

> As to the pace of discovery, Plaintiffs' proposal is unrealistic. Contrary to Plaintiffs' assertions, the Government's discovery resources are not limitless. While the Government may have been ordered to respond to discovery requests on expedited bases in other cases, each time the Government is forced to respond in short order, *it must divert resources from its other congressionally-mandated missions*, thus prioritizing litigation at the expense of operations, and is also at the expense of discovery efforts in other pending litigation. Additionally, unlike private litigants, the Government is not easily able to contract for outside litigation support services, especially as here where the majority of discovery will focus on law enforcement sensitive information about operations at this nation's Ports of Entry and may also involve information falling under one of the Executive privileges. Counsel for Defendants spent a great deal of time talking with their clients about discovery in order to make a reasonable discovery plan. Defendants' proposed discovery timelines take into account *CBP's backlog in collection, processing, and production of ESI* as a result of litigation workload, platform limitations, *and the Government shutdown*. Defendants are prepared to discuss these constraints with the Court in greater detail during the scheduling conference if needed.

*Id.* ¶ 6 (emphasis added). Defendants also explained in this March 8 draft that "if the parties commence with broad scale discovery at this time, Defendants anticipate that the next few months will be spent in litigation over the proper scale and scope of discovery, and only after such issues have been resolved will Defendants be able to identify custodians, topics, and appropriate collection methodologies. Defendants simply do not have the resources to be moving on all fronts at the same time – reviewing and producing while objecting and litigating." *Id.* This is substantially the same explanation that appears in the Rule 26(f) Report filed on March 8, 2019. *See* ECF No. 239 at 11–14, 22–29.

     ***The Supplemental Rule 26(f) Process.*** After this Court continued the Case Management Conference from March 15, 2019, to March 22, 2019, the parties

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO STRIKE

took the opportunity presented by the continuance to continue meeting and conferring about the scope and timing of discovery. Westwater Decl. ¶ 7. At a March 15, 2019 telephonic meet-and-confer, Defendants' counsel stated that Plaintiffs' proposed schedule was unworkable because of the large volume of ESI and the large number of custodial and non-custodial sources that were implicated by Plaintiffs' document requests. *Id.* As counsel explained, collecting and reviewing documents at the scale and speed of Plaintiffs' proposed discovery plan would distract DHS and CBP employees from their other constitutional and statutory obligations. *Id.*

Plaintiffs' counsel did ask at this meet-and-confer for information about the number of DHS and CBP custodians who were likely to have information that was responsive to Plaintiffs' 109 RFPs. But on their face, Plaintiffs' 109 RFPs requested information from *all* DHS and CBP employees. *See id.* Again, although Defendants expected the parties to negotiate over the scope of a reasonable search, the ESI Protocol had not yet been finalized, and Defendants had not yet served their objections and responses to Plaintiffs' 109 First and Second RFPs. *See* Joint Mot. for Entry of Protective Order and ESI Order (ECF No. 251); *see also* Defs.' Objections and Responses to Plaintiffs' First and Second RFPs (ECF Nos. 263-4 and 263-5). Defendants also understood that Plaintiffs intended to seek discovery from all land ports of entry on the U.S.-Mexico border. Westwater Decl. ¶ 2. It was impossible to know at the time the precise number of agency employees who would be designated as custodians. However, knowing that Plaintiffs intended to seek discovery from all land ports of entry on the U.S.-Mexico border, Defendants' counsel explained at the meet-and-confer that Defendants' proposed targeted discovery plan was a way to provide the parties with the document discovery they would need to expeditiously address the class certification issue within the parameters of Defendants' available discovery resources. *Id.* ¶¶ 2, 7.

Thus, Plaintiffs' statements that Defendants did not meet and confer with

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO STRIKE

them on issues such as CBP's backlog in collection and processing of ESI, or that Defendants did not make them aware that tasking CBP officers with responding to Plaintiffs' broad discovery requests would be detrimental to the agency's other congressional mandates, *see supra* at 5, are not true. Plaintiffs have been aware since February 22 of the facts underlying Defendants' burden objection and that Defendants were not capable of conducting discovery at the pace and geographic scale Plaintiffs proposed. Westwater Decl. ¶ 3. Plaintiffs have been aware since March 5 that "CBP's backlog in collection, processing, and production of ESI as a result of litigation workload, platform limitations, and the Government shutdown" contributed to the burdens of discovery in this case. *Id.* ¶¶ 3–7.

**The ESI Protocol Negotiations.** Defendants also highlighted their e-discovery resource limitations—including the type of limitations discussed in the Dismuke declaration—throughout the parties' negotiation of an ESI Protocol. *See id.* ¶¶ 8–9. For example, when negotiating the terms of document collection, Defendants notified Plaintiffs that they wished to try to reduce the costs of processing documents by maintaining the flexibility to use search terms to collect documents, as well as to use informed custodial self-identification to collect documents. *Id.* ¶ 8. As Defendants explained in comments to the draft ESI Protocol, "[c]ollecting and processing documents prior to applying search terms could result in undue expense." *Id.* Defendants further explained at an April 2, 2019 meet-and-confer regarding the ESI Protocol that, depending on the particular custodians and the volume of documents in their possession, it could be extremely and unduly expensive to collect and process all documents from those custodians and then apply search terms to identify the population of documents for review. *Id.* The parties thus agreed to include a provision allowing for informed custodial self-identification to identify potentially responsive documents, which will give Defendants the flexibility to reduce the volume of documents that are collected for processing, search term application, and review. *Id.*

JOINT MOTION REGARDING PLAINTIFFS' MOTION TO STRIKE

Defendants further highlighted their specific burden concerns when negotiating the provisions of the ESI Protocol relating to search term testing. The proposed ESI Protocol provides that a Producing Party shall provide a Hit Report to the Requesting Party of its proposed search terms "on its designated data sources, or on a sample from certain of those designated data sources. If a Producing Party elects to provide a Hit Report based on a sample from certain of those designated data sources, it shall disclose the data sources that were included and excluded from the sample, the time period of the sample, and any known facts that could skew the results shown in the sample (i.e., a custodian being on leave or a non-custodial source being taken offline for maintenance)." *See* ECF No. 251-2 at 6–7. During the parties' discussions of the appropriate time frame for such a sample, Defendants advised Plaintiffs that their processing capabilities prevented them from agreeing to a strict requirement of a three-month time frame for a sample. Westwater Decl. ¶ 9. As counsel for Defendants explained to Plaintiffs' counsel on April 9, 2019, "we do not think this strict requirement" regarding the minimum timeframe for a search term sample "should be written into the protocol. As we have explained, the time and cost of processing makes it difficult or impossible for us to process certain larger volumes for search term testing. Thus, we do not agree to the language in the current draft. We are, however, willing to continue to discuss the proposed sample time frame with Plaintiffs." *Id.* In the draft of the ESI Protocol Defendants sent with this April 9 email, Defendants similarly stated in a comment that: "Defendants are concerned that this requirement [of a strict three-month time frame] will render the search term testing contemplated in this protocol impossible due to the cost and time needed to process documents. We are willing to continue to discuss what may be possible, but do not think this term should be written in to the agreement." *Id.*

### *Meet-and-Confer Efforts Regarding Plaintiffs' First and Second RFPs.*

Defendants also met and conferred with Plaintiffs about "all disputed issues"

1  regarding Plaintiffs' 109 RFPs during the meet-and-confer process itself. As the

2  Court can observe, Defendants provided detailed objections to Plaintiffs' 109 RFPs

3  in their responses and objections, which were served on April 9, 2019. *See* Defs.'

4  Objections and Responses to Plaintiffs' First and Second RFPs (ECF Nos. 263-4

5  and 263-5); Westwater Decl. ¶ 10. Defendants will not repeat those objections

6  here, except to say that they provide notice to Plaintiffs that Defendants do not

7  have the capacity to conduct discovery from all land ports of entry on the U.S.-

8  Mexico border on Plaintiffs' proposed scale and timeline.

9       On April 23, 2019, in accordance with the agreed-upon timing deadlines of

10  the parties' proposed ESI Protocol,[8] Defendants served Plaintiffs with a list of

11  custodians and non-custodial sources from which Defendants proposed to collect

12  documents in response to Plaintiffs' 109 First and Second RFPs. *Id.* ¶ 11.

13  Defendants identified 10 custodians from Defendant U.S. Customs and Border

14  Protection ("CBP"), including custodians from the Office of Field Operations

15  Headquarters (the Executive Director of Admissibility and Passenger Programs,

16  the Executive Director of Operations, and the Director of the Enforcement

17  Programs Division within Admissibility and Passenger Programs); the San Diego

18  and Laredo Field Offices;  the four ports of entry at issue; and CBP's Office of

19  Professional Responsibility. Defendants also identified four non-custodial sources,

20  including sources containing training materials and policies. *Id.*

21       In an April 29, 2019 letter, sent just one day before the parties' scheduled

22  conference on Plaintiffs' RFPs, Plaintiffs accepted those proposed sources but

23  _____

24  [8] The agreed-upon terms of the pending proposed ESI Protocol give a Producing Party 14 days
    after it serves its RFP responses to propose custodial and non-custodial sources to the Receiving

25  Party. *See* ECF No. 251-2 at 5–6. The parties then have 14 days after the disclosure to meet and
    confer about the sufficiency of the Producing Party's proposed sources. *Id.* at 5. The Producing

26  Party has 14 days after this meet-and-confer to provide its proposed search terms to the
    Receiving Party. *Id.* The parties have 14 days after that disclosure to meet and confer about the

27  sufficiency of the proposed search terms. *Id.* No later than 10 days before this meet-and-confer,
    the Producing Party must provide the Receiving Party with a Hit Report showing the results of

28  the applications of its search terms to its sources. *Id.* at 6.

stated they believed the list to be "incomplete." *Id.* ¶ 12. Plaintiffs proposed adding approximately two dozen more custodians and a handful of additional non-custodial sources, including individuals from more than a dozen more ports of entry along the U.S-Mexico border, as well as the Director Field Operations for the El Paso Field Office and senior officials from both CBP and DHS. *Id.*

Defendants told Plaintiffs via letter on May 6, 2019, that, as "stated during the parties' conference, Defendants' initial list of custodians included individuals who Defendants determined after an initial investigation were most likely to possess responsive information related to the four Ports of Entry relevant to the allegations of the Named Plaintiffs (Hidalgo, Laredo, Otay Mesa, and San Ysidro). This list included key individuals from the Office of Field Operations (OFO) and the relevant Field Offices and/or Ports of Entry. Accordingly, Defendants maintain that their initial list of custodians and non-custodial sources is sufficiently comprehensive to conduct a reasonable and proportional search. Plaintiffs' proposal to add 24 additional individual custodians, in particular, far exceeds what is proportional to the needs of the case." *Id.* ¶ 13. Defendants nevertheless agreed to add four additional custodians, including the Executive Assistant Commissioner of the Office of Field Operations, a San Ysidro and Otay Mesa Port Director, and the Port Director at the Hidalgo port of entry, for a total of 14 custodians. *Id.* Defendants also agreed to add four additional non-custodial sources, including one source from CBP's Human Resources Management and three sources from DHS's Office of Inspector General, for a total of eight non-custodial sources. *Id.*

Defendants also specifically explained in this May 6 letter why they did not agree to Plaintiffs' other proposed custodians and non-custodial sources. *Id.* ¶ 14. In particular, Defendants stated that discovery from all land ports of entry on the U.S.-Mexico border would be extremely burdensome:

> In accordance with their objections to the Requests for Production, Defendants will not be identifying custodians pertaining to Ports of

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO STRIKE

Entry and Field Offices that are not related to the Named Plaintiffs'
specific allegations. As explained, actions taken at those Ports of Entry
are irrelevant to both class certification and the merits, because there is
no representative Plaintiff that alleges any type of conduct related to
these specific Ports of Entry. Further, the collection of documents from
those Ports of Entry is extremely burdensome. Defendants have already
identified 14 custodians from OFO Headquarters, the San Diego and
Laredo Field Offices, and the four Ports of Entry at issue. Plaintiffs seek
to add 14 additional custodians from other Ports of Entry and from the
El Paso Field Office, which would likely greatly increase the volume
of information and documents to be processed, reviewed, and searched,
with no benefit to the resolution of the issues raised by Plaintiffs'
complaint.

*Id.*

Plaintiffs served their portion of the Joint Motion to compel on Defendants on May 15, 2019, at 11:30 PM (Eastern), without giving any substantive response to Defendants' May 6 letter. *Id.* at ¶ 15.

Defendants sent Plaintiffs a letter on May 20, 2019, in accordance with the agreed-upon deadlines in the ESI Protocol, that included a list of 176 proposed search terms and an explanation of the manner in which those search terms would be applied, if applicable, to the agency custodians and custodial sources. *Id.* ¶ 16. On May 24, 2019, Defendants sent Plaintiffs a two-part Hit Report (which had to be broken into separate Excel spreadsheets due to its size) of the proposed search terms as applied to the emails of six of the CBP custodians identified in their May 20 letter. *Id.* At this time, Plaintiffs still had not provided any substantive response to Defendants' explanations in their May 6 letter of the burden and disproportionality of Plaintiffs' proposed additional custodians; in fact, they did not do so until June 4, 2019—two weeks after they served their portion of the motion to compel on Defendants and almost one week after serving Defendants with their portion of this motion to strike. *Id.*

The full scope of the parties' conferences over the past three months shows clearly that Defendants have meaningfully met and conferred with Plaintiffs on "all

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO STRIKE

disputed issues" underlying the undue burden imposed by the scope of Plaintiffs'
109 RFPs—whether applied to all land ports of entry on the U.S.-Mexico border or
not—and advised Plaintiffs of the burdens imposed by any effort to collect and
process documents. *See* CivLR 26.1(a); Chambers Rule V.B. The portrait Plaintiffs
offer in their portion of this Joint Motion implies that Defendants stonewalled
Plaintiffs during the April 30 meet-and-confer and then sent 11th-hour declarations
on May 24 in support of their undue burden argument. But that misrepresents the
facts by ignoring the ongoing communications between counsel for the parties
regarding discovery planning in this case.

  Plaintiffs' presentation of the facts completely omits the parties'
correspondences from the entire month of May, during which Defendants regularly
communicated with Plaintiffs about custodians, non-custodial sources, and search
terms in accordance with the agreed-upon terms of the proposed ESI Protocol. Not
only does this demonstrate Defendants' extensive participation in negotiating the
limits of discovery, but the custodian lists, search term lists, and hit reports
demonstrate the burden imposed by conducting a search for documents in response
to Plaintiffs' RFPs, as well as the incremental burden of adding custodians in order
to seek discovery from ports of entry not at issue. *See supra* at 3–6 *and* Lev Decl.
¶¶ 1–10 (providing no description of the parties' discovery-related
correspondences during May 2019); *see also Kellgren v. Petco Animal Supplies,
Inc.*, No. 13-cv-644, 2017 WL 979045, at *13 (S.D. Cal. Mar. 13, 2017)
(Crawford, M.J.) ("A document request . . . is also overly broad or unduly
burdensome on its face if it: (1) uses an omnibus term such as 'relating to' or
'concerning,' and (2) applies to a general category or group of document or a broad
range of information." (internal citations omitted)).

  Plaintiffs' criticism that Defendants did not "disclose" or "inform them" of
certain specific statements in the Dismuke and Howe declarations similarly misses
the mark. *See supra* at 1, 9. The Federal Rules make clear that discovery is limited

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO STRIKE

to what is proportional to the needs of the case, considering, among other factors, whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Defendants informed Plaintiffs all along of the nature of their burden and disproportionality objection, including the e-discovery and operational burdens Defendants face that render exceedingly overbroad discovery even more burdensome. And neither the Southern District's Local Rules nor this Court's Chambers Rules expressly require disclosure of a declaration any earlier than service of their portion of a joint motion. *See* CivLR 26(a)(1); Chambers Rule V.

To be sure, Defendants take seriously their obligations to meet and confer with Plaintiffs about "all disputed issues," as demonstrated by their diligent efforts over the span of three months to meet and confer with Plaintiffs about document production in response to their RFPs in accordance with the agreed-upon terms of the ESI Protocol. *See supra* at II.A. But the case law does not support Plaintiffs' narrow interpretation of the meet-and-confer requirements. Rather, the case law looks to whether the parties met and conferred on the "issues" in dispute, not to whether a responding party disclosed that it intended to submit a declaration in opposition to a motion to compel. CivLR 26.1(a); *e.g.*, *Medina v. County of San Diego*, No. 08-cv-1252, 2014 WL 4793026, at *17–18 (S.D. Cal. Sept. 25, 2014) ("The parties met several times and were able to resolve several of the disputed issues and agree on a protective order. . . . The Court agrees that it might have been prudent for Plaintiff to engage in another meet and confer session before bringing the Motion to Compel. Given these facts, however, the Court is satisfied that Plaintiff fulfilled her requirement to meet and confer."). So too here, Defendants have satisfied their obligation to meet and confer with Plaintiffs before Plaintiffs filed their motion to compel.[9]

---

[9] Plaintiffs state at one point that "[a] party seeking a protective order limiting the scope of discovery 'must include a certification that the movant has in good faith conferred or attempted

**B.     Plaintiffs Are Not Prejudiced by the Submission of the Dismuke and Howe Declarations.**

Plaintiffs assert in their portion of this Joint Motion that they were prejudiced by the submission of the Dismuke and Howe declarations. *See supra* at 6–8. The Court should reject this contention because, as discussed above, Defendants meaningfully met and conferred with Plaintiffs on the "disputed issues" the declarations substantiate. Plaintiffs' claim that Defendants did not inform them that CBP is running behind schedule due to the government shutdown. *Supra* at 5 (referring to Dismuke Decl. ¶ 10 (ECF No. 263-8)). That is not true. Defendants explained to Plaintiffs during the Rule 26(f) Conference on February 22, 2019, that Defendants anticipated that they would not be able to finish collecting, reviewing, and producing documents in this case for approximately one year from the resolution of any RFP-related discovery motions. Westwater Decl. ¶ 3. Defendants also explained in their March 5 and March 8, 2019 drafts of the Rule 26(f) Report that this "proposed discovery timeline[] take[s] into account [CBP]'s *backlog* in collection, processing, and production of ESI as a result of litigation workload, platform limitations, *and the Government shutdown*." Westwater Decl. ¶¶ 3–4, 6. (emphases added).

Plaintiffs claim that Defendants never informed them that collecting, reviewing, and producing documents from all land ports of entry along the U.S.-Mexico border would distract agency employees from performing their jobs. *See supra* at 5 (referring to Howe Decl. ¶ 10 (ECF No. 263-9)). That is also not true. Defendants' counsel expressly told Plaintiffs' counsel at the March 15, 2019 telephonic meet-and-confer that collecting and reviewing documents at the scale

---

to confer with other affected parties in an attempt to resolve the dispute without court action.'" *Supra* at 2 (quoting Fed. R. Civ. P. 26(c)(1)). But this language from Rule 26(c)(1) is inapplicable here, because Defendants did not move for a protective order through the May 24 motion. Instead, Defendants opposed Plaintiffs' motion to compel on the ground that the scope of discovery is necessarily limited to that which is relevant and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 26(b)(2)(C)(iii).

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO STRIKE

and speed of Plaintiffs' proposed discovery plan would distract DHS and CBP employees from their other constitutional and statutory obligations. Westwater Decl. ¶ 7.

Plaintiffs also criticize Defendants for purportedly not providing "the identity of the e-discovery tools that [Defendants] was using the collect emails" [*sic*], "the type of email servers that [Defendants'] email was stored on," "the limitations on the search strings that can be used in [Defendants'] e-discovery tools," or "the amount of available server space for hosting and searching emails using [Defendants'] e-discovery tools." *See supra* at 9–10. But Plaintiffs do not claim they ever asked for that information during the meet-and-confer process regarding their RFPs.[10] *See* Lev Decl. ¶¶ 1–10. In any event, it is undisputed that Defendants told Plaintiffs early and often that, based on their e-discovery resources, Defendants could not produce documents in response to Plaintiffs' RFPs at the scale and pace Plaintiffs proposed, and that Defendants provided Plaintiffs with more specific information about their custodians, non-custodial sources, and search terms in accordance with the agreed-upon timeline in the ESI Protocol. The Court should therefore reject Plaintiffs' motion to strike and consider the information contained in the Dismuke and Howe declarations in ruling on Plaintiffs' motion to compel.

But even if the Court were to reject Defendants' arguments and accept Plaintiffs' characterizations of the parties' meet-and-confer efforts, that still would not change the fact that requiring discovery from all land ports of entry on the U.S.-Mexico border would be unduly burdensome in this case. As Defendants have argued, Plaintiffs have no legal basis to seek discovery from or about ports of entry and field offices that are not represented by putative class representatives. Thus,

---

[10] Plaintiffs did request information about the searching capabilities and limitations of Defendants' e-discovery tools on Friday, May 31, 2019, after they served their portion of this Joint Motion and in advance of the parties' meet-and-confer regarding Defendants' search terms. Defendants provided this information to Plaintiffs on Thursday, June 6.

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO STRIKE

any discovery from those ports of entry is *per se* unduly burdensome. Further, even
if such discovery had any marginal utility, its benefit is clearly outweighed by the
general burdens of adding custodians from all ports of entry along the U.S.-Mexico
border, which will in turn generate additional documents for collection, processing,
and review. Thus, even if the Court were to strike the Dismuke and Howe
declarations, it should still deny Plaintiffs' motion to compel.

### C.    The Court Should Reject Plaintiffs' Reply Arguments.

Plaintiffs also offer two pages of reply arguments against the substance of
the Dismuke and Howe declarations. *See supra* at 6–8. The Court should reject
those arguments on procedural and substantive grounds.

First, Plaintiffs never sought the prior approval of this Court to offer a reply,
nor did they ask for Defendants' position on a potential motion to file a reply, nor
did they inform Defendants during the parties' meet-and-confer that they intended
to offer arguments in opposition to the declarants' substantive statements.
Westwater Decl. ¶ 17; *see* Lev Decl. ¶¶ 1–10 (containing no indication of
Plaintiffs' intent to offer reply arguments). Plaintiffs' arguments thus violate
Chambers Rule V.B, which requires the parties to meet and confer on all disputed
issues, and Chambers Rule V.D, which prohibits the submission of replies without
prior approval of this Court. *See also* ECF No. 237 n.1 (cautioning Plaintiffs
against future violations of the Chambers Rules). This Court should ignore
Plaintiffs' reply arguments for those reasons alone.

Plaintiffs' reply arguments also fail on the merits. Plaintiffs criticize Ms.
Dismuke for not "claim[ing] to have tested a single search term to determine (a)
how long it will take the search term to run or (b) the number of potentially
responsive documents" the search term would return, and for not "attempt[ing] to
take a representative sample of data from ports of entry outside of the San Ysidro,
Otay Mesa, Hidalgo, and Laredo ports of entry." *Supra* at 6–7. But Ms. Dismuke
clearly states that "searches in Discovery Accelerator generally take between six

and eight hours to run per custodian/keyword" regardless of which port of entry the custodian is from, and that "the speed of the searches depends on many factors, such as network connectivity/bandwidth, the amount of traffic on CBP's email services, and the complexity of the underlying searches. The more complicated the search, the longer it takes to process the request, with a real possibility of network connectivity issues." Dismuke Decl. ¶ 6. She also explains that the burden associated with applying even a single search term to a single custodian's documents is massive:

> [I]n order to search the emails of a particular individual, those emails must first be collected and stored on a server. These servers are then searchable by time period, custodian, and keyword, but not by mailbox. Thus, to search for emails from a particular custodian for a particular keyword for a particular year, the servers must crawl through *all* CBP emails for that *entire* year—a massive amount of data.

*Id.* ¶ 4. It plainly would not make sense to run a particular search term solely to determine how long the search would take, nor would it make sense to collect and test documents from a "representative sample" of custodians at other ports of entry when the search of even one custodian's documents consumes a massive amount of the agency's resources. *Id.*; *see also id.* ¶ 14 ("Given the existing space restrictions on our server, the number of other open cases the team has, and the time it takes to complete these searches, adding additional custodians in this case will significantly increase the burden on my team and our servers. The volume of data from just the original six custodians is more than we have space for on the servers.").

Plaintiffs next criticize Mr. Howe for not explaining how the burden of searching for and identifying documents at all ports of entry along the U.S.-Mexico border is "undue." *Supra* at 8. But Mr. Howe clearly states that CBP is currently facing "an unprecedented surge of individuals entering illegally and arriving at

1  ports of entry without documents," including "mainly family units" who "require

2  appropriate treatment to address their unique needs." Howe Decl. ¶ 6. From Mr.

3  Howe's perspective as OFO's Executive Director for Operations, the burden of

4  assigning officers to participate in document review when there are already

5  "unprecedented" resource constraints at the ports of entry is an undue burden that

6  would have a "significant negative impact on OFO operations." *See id.* ¶¶ 6, 9.

7      Plaintiffs also criticize Mr. Howe for offering the "unfounded" opinion that

8  "discovery from all ports of entry is not . . . likely to yield significant additional

9  relevant information beyond what is currently being collected from OFO

10  headquarters." *Supra* at 8. But Mr. Howe's opinion *is* founded; he explains that

11  discovery from all port of entry would be duplicative "because each POE is in

12  regular contact with OFO headquarters, including with regard to the

13  implementation of Executive Assistant Commissioner Todd Owen's April 2018

14  memorandum." Howe Decl. ¶ 10. "Email communications from the field regarding

15  metering or queue management procedures which may occur at the ports of entry

16  will be collected as part of the discovery from headquarters custodians." *Id.* Mr.

17  Howe explained that he has been in his current position as Executive Director of

18  Operations for more than two years, and has intimate familiarity with OFO

19  operations. *Id.* ¶ 1. Plaintiffs' challenges to Mr. Howe's declaration are misplaced.

20      **D.    The Court Should Reject Plaintiffs' Request for Attorneys' Fees.**

21      Finally, the Court should deny Plaintiffs' request for attorneys' fees.

22  Plaintiffs bring this motion under Federal Rule of Civil Procedure 37(b)(2), which

23  authorizes a court to issue "further just orders" if a party "fails to obey an order to

24  provide or permit discovery." But Defendants have not disobeyed any order to

25  provide or permit discovery, and have also not disobeyed the Court's order to meet

26  and confer before the filing of a discovery motion. Rather, as discussed extensively

27  above, Defendants understood that Plaintiffs were aware of the facts underlying

28  their burden objections, having met and conferred with Plaintiffs on these issues

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO STRIKE

for several months before Plaintiffs filed their motion to compel. Defendants have also provided Plaintiffs with specific information about custodians, non-custodial sources, and search terms on the ESI Protocol's agreed-upon timelines. *See supra* at II.A. For these reasons, an award of attorneys' fees would be unjust. *See* Fed. R. Civ. P. 37(b)(2). The Court should reject Plaintiffs' request for fees.[11]

\*       \*       \*

The Court should reject Plaintiffs' motion to strike in its entirety. Defendants meaningfully met and conferred with Plaintiffs for several months regarding the burden imposed by Plaintiffs' 109 RFPs. The Dismuke and Howe declarations simply substantiate the facial undue burdens of requiring discovery from all land ports of entry on the U.S.-Mexico border. There is accordingly no reason to strike the Dismuke and Howe declarations or to award Plaintiffs' attorneys' fees associated with this Joint Motion.

---

[11] Should the Court grant Plaintiffs' fee request, Defendants request the opportunity to respond to Plaintiffs' accounting of their attorneys' fees and costs.

JOINT MOTION REGARDING PLAINTIFFS'
MOTION TO STRIKE

Dated:  June 7, 2019

MAYER BROWN LLP
    Ori Lev
    Matthew H. Marmolejo
    Stephen M. Medlock

SOUTHERN POVERTY LAW CENTER
    Melissa Crow
    Mary Bauer
    Sarah Rich
    Rebecca Cassler

CENTER FOR CONSTITUTIONAL RIGHTS
    Baher Azmy
    Ghita Schwarz
    Angelo Guisado

AMERICAN IMMIGRATION COUNCIL
    Karolina Walters

By  */s/ Matthew H. Marmolejo*

*Attorneys for Plaintiffs*

JOINT MOTION REGARDING PLAINTIFFS' MOTION TO STRIKE

Dated: June 7, 2019                 Respectfully submitted,

                                    JOSEPH H. HUNT
                                    Assistant Attorney General
                                    Civil Division

                                    WILLIAM C. PEACHEY
                                    Director, Office of Immigration Litigation –
                                    District Court Section

                                    GISELA A. WESTWATER
                                    Assistant Director

                                    KATHERINE J. SHINNERS
                                    Senior Litigation Counsel

                                    */s/ Alexander J. Halaska*
                                    ALEXANDER J. HALASKA
                                    SAIRAH G. SAEED
                                    Trial Attorneys
                                    U.S. Department of Justice
                                    Civil Division
                                    Office of Immigration Litigation
                                    District Court Section
                                    P.O. Box 868, Ben Franklin Station
                                    Washington, D.C. 20044
                                    Tel: (202) 307-8704 | Fax: (202) 305-7000
                                    alexander.j.halaska@usdoj.gov

**CERTIFICATE OF COMPLIANCE WITH MEET-AND-CONFER
REQUIREMENT**

I certify that on May 28, 2019 the counsel for the parties met and conferred via telephone to discuss the dispute raised in this joint motion.  This conference occurred via telephone because counsel were located in New York and the District of Columbia.  The parties were unable to resolve the dispute presented in this motion.

Dated:  June 7, 2019                              MAYER BROWN LLP


By  */s/ Matthew H. Marmolejo*
*Attorney for Plaintiffs*

1

### CERTIFICATE OF SERVICE

2          I certify that I caused a copy of the foregoing document to be served on all

3    counsel via the Court's CM/ECF system.

4    Dated:  June 7, 2019                    MAYER BROWN LLP

5

6                                           By  /s/ Matthew H. Marmolejo

7                                           *Attorney for Plaintiffs*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28