UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AL OTRO LADO, INC. et al., <br><br>  Plaintiff, <br><br> v. <br><br> KIRSTEN M. NIELSEN, et al., <br><br>  Defendants. | Case No.: 17CV2366-BAS(KSC) <br><br> **ORDER RE: JOINT MOTION FOR ENTRY OF ESI AND PROTECTIVE ORDERS [DOC. NO. 251]** |

Currently pending before the Court is a Joint Motion for Entry of ESI Order and Protective Order. [Doc. No. 251.] The parties explain they have reached near complete agreement regarding the terms of their proposed ESI and Protective Orders, however, despite their best efforts are unable to resolve one dispute with respect to each document.

**I.    ESI Order**

The dispute with respect to the parties' proposed ESI Order pertains to the production of attachments to emails that are produced during discovery. Defendants contend they should be permitted to separate email "families" and produce only the email attachments they deem to be responsive to plaintiffs' requests for production. *See* Doc. 251-1, Lev. Decl. ¶¶ 4 & 5; Ex. A, App. A, § II(G) (Government's proposed redline reading: "Parties need only produce and/or log email attachments that contain responsive

material.")  Plaintiffs contend all non-privileged attachments to responsive emails should be produced.

Defendants acknowledge the general rule with respect to electronic discovery is that emails are produced as "families," meaning that courts generally require parties to produce a responsive email and its attachments together. *See, e.g., Sanchez Y Martin, S.A. de C.V. v. Dos Amigos, Inc.*, 2019 WL 581715, at *11 (S.D. Cal. 2019) ("[E]mails produced in discovery should be accompanied by their attachments. To do otherwise is effectively a redaction of responsive discovery.") (internal citation omitted); *Virco Mfg. Corp. v. Hertz Furniture Sys.*, 2014 WL 12591482, at *5 (C.D. Cal. 2014) ("emails produced in discovery should be accompanied by their attachments" and concluding that "by failing to produce email attachments, [the producing party] has effectively redacted, based upon relevance, portions of documents it otherwise apparently views to be discoverable/relevant/responsive to [the requesting party's] discovery requests"); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 2011 WL 3738979, at *5 (S.D.N.Y. 2011) ("[T]he prevailing practice . . . is for parties to produce any non-privileged attachment to an e-mail if the e-mail is determined to be relevant, and to produce the e-mail if any of the attachments are determined to be relevant.")

The reasoning behind this practice is sound. Parties must to be able to review entire email families as they are kept in the regular course of business in order to have the context to fully understand what is being communicated in the emails. Additionally, allowing the producing party to unilaterally decide if an attachment is "responsive" or "non-responsive," without producing the attachments itself, thwarts the receiving party's ability to evaluate and potentially challenge those determinations.

Defendants argue their proposal that non-responsive "sibling" attachments be withheld from production would reduce its burden and eliminate the production of certain nonresponsive documents that are of no benefit to resolving the issues presented by this case. Doc. No. 251, p. 16. They claim "it is likely that many of Defendants' emails will contain attachments that are not themselves responsive or are not even tangentially related

to the responsive document." *Id.*, p. 17. Producing the entire document family, they argue, would likely require defendants to spend a substantial amount of time reviewing the non-responsive and irrelevant attachments for any applicable privileges and making necessary redactions. Furthermore, they contend, these attachments may contain other material that may be law enforcement sensitive and which would not normally be provided to the public. *Id.*

Defendants propose the producing party be permitted to provide placeholders in lieu of any non-responsive attachments, along with available, non-privileged metadata for the excluded attachments (including metadata that preserves the relationship between the parent email and the attachments). That way, they contend, the receiving party can clearly see whether and which attachments have not been produced. *citing In re: Takata Airbag Prod. Liab. Litig.*, No. 14-24009-CV, 2016 WL 1460143, at *3 (S.D. Fla. Mar. 1, 2016) (for the proposition that other courts have entered into or endorsed stipulated orders that espouse this or similar approaches). *Takata*, however, cannot be read for the principle that non-responsive documents need not be produced, as that issue was not considered by the court. In that case, the parties ***agreed*** to allow a producing party to withhold irrelevant attachments from within responsive document families, pursuant to certain conditions. *Id*.

Although defendants concede they have not yet begun their review of the emails plaintiffs request, they hypothesize that it ***may*** be unduly burdensome to review and produce emails with non-responsive attachments and these attachments ***may*** contain sensitive law enforcement information. Defendants do not offer any factual support for this claim. "The party claiming undue burden 'must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence.'" *Acosta v. Wellfleet Commc'ns, LLC*, 2018 WL 664779, at *8 (D. Nev. 2018) (quoting *Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 528-29 (D. Nev. 1997)). "Conclusory or speculative statements of harm, inconvenience, or expense are plainly insufficient." *See also Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 334 (D. Nev. 2016). "The fact that production of documents would be burdensome

and expensive and would hamper a party's business operation is not a reason for refusing to order production of relevant documents. . . . The standard is whether the burden and expense is 'undue' and whether the hardship is unreasonable in light of the benefits to be secured from the discovery." *Acosta*, 2018 WL 664779, at *8 (quoting *Doe v. Neb.*, 788 F. Supp. 2d 975, 981 (D. Neb. 2011)). Thus, defendants' speculative argument that the default practice of producing email families may be unduly burdensome is insufficient.

Moreover, the proposed ESI Order includes provisions that are designed to reduce the burden associated with identifying a large number of email attachments on a privilege log. First, the parties have agreed non-responsive email attachments that are privileged need not be listed on a privilege log. *See* Doc. 251-1, *Lev. Decl.* ¶ 5; Ex. A § IV(F). Second, they have agreed privilege logs may be populated using metadata taken from the parties' document productions, rather than engaging in the cumbersome process of creating privilege logs manually. *See id.* at § IV(B). Furthermore, with respect to defendants' concerns attachments may contain sensitive law enforcement information that is not typically available to the general public, the parties' proposed Protective Order contains provisions that allow defendants to designate any such documents as Confidential – Attorneys Eyes Only. *See id.* at § I(E).

## II. Protective Order

The dispute with respect to the parties' proposed Protective Order pertains to language proposed by plaintiffs with respect to the scope of protection afforded to Protected Material, meaning documents or information designated as "CONFIDENTIAL" or "CONFIDENTIAL ATTORNEYS EYES ONLY." Although there are various provisions in their draft Protective Order relating to the parties' ability to share and use such Protected Material, the parties' dispute centers around the following language, which plaintiffs propose including in Section VI.A (discussing "Basic Principles" for "Access to and Use of Protected Materials"):

> "Unless this Order allows its disclosure, Protected Information shall not be disclosed except as agreed upon by the Parties or as allowed by another Order

> of this Court, and shall be disclosed solely for purposes of prosecuting or defending this Action, including any appeals. Protected Information must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this agreement."

*See* Doc. 251-1, *Lev. Decl.* ¶ 5; Ex. B, § VI.A. Plaintiffs seek this protective language because they anticipate defendants asking them for "highly sensitive personal or organizational information that could have life altering consequences related to their immigration status or, in plaintiff Al Otro Lado's case, sensitive and far-reaching implications for its business, personnel, and operations." Doc. No. 251, p. 13

Defendants assert that plaintiffs' proposal does not comport with Fed. R. Civ. P. 26(c), which they contend places the burden on plaintiffs to show good cause for their proposed language. *Id.*, p. 25. Plaintiffs, they argue, cannot show good cause because their proposed language is intended for improper purposes, i.e. attempting to immunize them from any potential actions by the U.S. government and prevent defendants from sharing information with other U.S. government entities in furtherance of their official duties. *Id.* pp. 25-26.

Defendants further claim plaintiffs' proposed language places an unreasonable burden on defendants' interest in ensuring that any unlawful activity that may come to light is referred to the appropriate authorities. *Id.* pp. 26-30. Defendants primarily rely on the Privacy Act, which generally places strict limits on federal agencies' abilities to disclose information about individuals, but allows law-enforcement related disclosures to other agencies under certain circumstances. 5 U.S.C. § 552a. The specific exceptions identified by defendants are when disclosure of the record is "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties" (5 U.S.C. § 552a(b)(1)); "for a routine use" (meaning "the use of such record for a purpose which is compatible with the purpose for which it was created") (5 U.S.C. §§ 552a(b)(3), (a)(7)); or "for a civil or criminal law enforcement activity if the activity is authorized by law, and if the head of the agency or instrumentality has made a written

request to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought" (5 U.S.C. § 552(b)(7)). *Id*. pp. 26-29. Lastly, defendants cite to the mandatory disclosure requirements of the Intelligence Reform and Terrorism Protection Act of 2004 ("IRTPA"), Pub. L. No. 108-458, § 1016(i), 118 Stat. 3638, 3670 (2004) (codified at 6 U.S.C. § 485(i)) ("The head of each department or agency . . . shall," inter alia, "ensure full department or agency compliance with information sharing policies, procedures, guidelines, rules, and standards."); Exec. Order No. 13,388, "Further Strengthening the Sharing of Terrorism Information to Protect Americans," § 2(a), 70 Fed. Reg. 62,023, 2005 WL 2777052 (Oct. 25, 2005) ("the head of each agency that possesses or acquires terrorism information shall promptly give access to the terrorism information to the head of each other agency that has counterterrorism functions, and provide the terrorism information to each such agency"); Homeland Security Act of 2002, Pub. L. No. 107-296, § 202(d)(2), 116 Stat. 2135, 2149–50 (2002) (codified at 6 U.S.C. § 122(d)(2)) ("The Secretary . . . shall work to ensure that intelligence or other information relating to terrorism to which the Department has access is appropriately shared with the elements of the Federal Government.")

Additionally, defendants argue plaintiffs' proposed information-sharing prohibition improperly absolves them of their obligation, "for each particular document [they] seek[] to protect, of showing that specific prejudice or harm will result if no protective order is granted." Doc. No. 251, p. 30 (citation omitted). Plaintiffs' proposal, they contend, improperly attempts to shift plaintiffs' burden of showing particularized good cause to defendants. *Id.*

Defendants propose the following alternative language, which they claim is similar to that proposed by Customs and Border Protection ("CBP") and adopted by the court in *Janefeshan v. U.S. Customs & Border Protection*, 2018 WL 741369 (E.D.N.Y., Feb. 7, 2018):

> Notwithstanding the foregoing, nothing in this Protective Order supersedes the existing independent statutory, law enforcement, national security, or

regulatory obligations imposed on a Party, and this Protective Order does not prohibit or absolve the Parties from complying with such other obligations. Specifically, an employee of the United States may disclose, or may direct another person to disclose, Protected Information that is relevant to any civil, criminal, regulatory, or administrative action to any appropriate federal, state, local, foreign, or tribal law enforcement authority or any other appropriate agency with authority pertaining to any activity relating to the Protected Information . . . .[1]

Doc. No. 251, p. 31.

In *Janfeshan*, the plaintiff, a Muslim who was born in Afghanistan and is a lawful resident of the United States, alleged CBP agents stopped him at JFK International Airport, subjected him to extensive questioning, and seized and searched his cellular phone – all without reasonable suspicion and because of his race or national origin – in violation of the Fourth and Fifth Amendments. *Janefeshan*, 2018 WL 741369 at *1. Magistrate Judge Lois Bloom weighed in on a dispute between the parties that is very similar to the one here. Fearing information that might negatively affect his application for naturalization would be disclosed by CBP, plaintiff requested the parties' stipulated protective order include a provision limiting CBP's ability to share such information with other governmental agencies. CBP, on the other hand, argued for a procedure that allowed for intra- and inter-governmental sharing of the plaintiff's information, citing the government's interest in ensuring that any unlawful activity is referred to the appropriate authorities. In an order that provides very little reasoning as to her decision, Magistrate Judge Bloom decided the following provision, which was proposed by CBP, stuck the appropriate balance under the facts of that case:

Nothing in this Protective Order shall prohibit or limit the United States or any of its agencies or employees from using or disclosing materials or information designated as "Confidential Information" or "Attorneys' Eyes Only" as the United States, its agencies, and its employees, would otherwise

---

[1] Defendants' representation the language they propose is similar to that used in *Janefeshan* is misleading. Defendants' proposal is more accurately described as a gutted version of the provision used in *Janefeshan,* with all protection for plaintiffs having been removed.

be authorized to do by law absent entry of the Protective Order. Notwithstanding the foregoing sentence, Plaintiff may request, in writing to counsel for Defendants, that specific "Confidential Information" or "Attorneys' Eyes Only" information designated and being disclosed by Plaintiff not be disclosed to persons other than those described in paragraph 7 of this Protective Order. Plaintiff shall make such written request at the time that Plaintiff serves a written response to the discovery request(s) to which the "Confidential Information" is responsive. If the specific "Confidential Information" "Attorneys' Eyes Only" information is disclosed during a deposition, Plaintiff shall make the request orally at the time of the disclosure and submit the written request (described in the second sentence of this paragraph) before the end of the next business day. In the event that Defendants reject Plaintiff's request, Defendants shall so advise Plaintiff's counsel in writing, and Plaintiff may apply within three (3) business days of the rejection to the Court for an order prohibiting Defendants, notwithstanding the first sentence of this paragraph, from disclosing the specified "Confidential Information" "Attorneys' Eyes Only" information to persons other than those described in paragraph 7 of this Protective Order. From the time Defendants receive a timely written or oral request as detailed above, they shall not disclose the specified "Confidential Information" or "Attorneys' Eyes Only" information to persons other than those described in paragraph 7 of this Protective Order unless and until the Court rules that they are permitted to do so if Plaintiff makes a timely application to the Court after Defendants deny his request.

Order at 52, *Janefeshan v. U.S. Customs & Border Protection,* 16CV6915 (E.D.N.Y. Dec. 1, 2017.) Thereafter the plaintiff objected to the decision and the matter was taken up by District Judge Allyne R. Ross, who reviewed Judge Bloom's order, pursuant to 28 U.S.C. §636(b)(1)(A). Noting the plaintiff had raised important issues concerning privacy, discrimination and a litigant's ability to vindicate his constitutional rights, Judge Ross found his argument about the potential misuse of his information to be too speculative to warrant reversal of Judge Bloom's order under the clear error standard. *Janefeshan*, 2018 WL 741369 at *4. In doing so, the court observed the provision adopted by Judge Bloom provided plaintiff with some protection against misuse by implementing a procedure which required Judge Bloom's approval before any specific information could be shared with governmental agencies. *Id.* at *5. The court also found there was no clear error with respect

to: the requirement that plaintiff had the burden of objecting and justifying the confidentiality of his information in the context of intra- and inter-governmental sharing; Judge Bloom reliance on CBP's justifications for including the subject provision; or with the provision impermissibly chilling plaintiff's ability to vindicate his constitutional rights. *Id*. at *6-9. Thus, Judge Ross, noting the court had no information regarding the substance of the information plaintiff might want to protect, nor whether or for what purpose CBP might want to disseminate it, found the procedure, which allowed Judge Bloom to adjudicate any future disputes of this nature on a case-by-case basis, to neither be clearly erroneous nor contrary to law.[2]

The Court agrees with defendants to the extent they argue the language proposed by plaintiffs, which does not allow for any intra- or inter-governmental sharing of confidentially designated information, is unduly restrictive when balanced against defendants' law enforcement related interests and particularly, the mandatory disclosure requirements of the IRTPA. On the other hand, the language proposed by defendants is inadequate to safeguard against plaintiffs' interest in limiting dissemination of their sensitive information.

Defendants advocate for a different standard with respect to the handling of plaintiffs' sensitive information in comparison with the handling of that belonging to defendants. The proposed Protective Order allows defendants to unilaterally designate documents or information as confidential and any such information will be treated accordingly unless and until the Court rules otherwise. This practice is typical of the handling sensitive information in litigation. Here, however, although defendants may freely and unilaterally designate their sensitive information as being subject to certain protections, they contend plaintiffs must establish good cause for each and every document

---

[2] This procedure was apparently never utilized as the plaintiff voluntarily dismissed his Complaint against CBP six days after his objections were overruled. Stipulation of Dismissal at 58, *Janefeshan,* 16CV6915 (E.D.N.Y. Feb. 13, 2018.)

prior to their sensitive information being afforded any protection whatsoever. Such a requirement imposes a significantly higher burden on plaintiffs with respect to the protection of their sensitive information than what is required of defendants, who are under no obligation to prove particularized good cause up-front, before it is even known what specific documents and information are implicated. There is no discernable reason why the playing field should not be equivalent between the parties.

Plaintiffs have raised important and serious concerns regarding the potential sharing of their sensitive information. Discovery is just commencing in this case. At this time, it is unknown specifically what information defendants will seek. It follows that we also do not know what information requested by defendants plaintiffs will want to protect from intra- or inter-government sharing. Lastly, within the as-yet-defined universe of information requested by defendants and deemed to be too sensitive for sharing by plaintiffs, we do not know what, if any, of this information defendants will determine should be shared with another governmental agency. What is appropriate, therefore, is the implementation of a procedure that fairly balances the interests of both sides. For the reasons articulated in *Janefeshan,* the Court finds the provision used in that case accomplishes this objective. The parties shall, therefore, submit a stipulated proposed protective order that incorporates the procedure utilized by that court.[3] If a challenge is made with respect to the plaintiffs' classification of information as being restricted from intra- or inter-governmental sharing, plaintiffs will have the burden to justify maintaining the confidentiality of their information within this context. *See Janefeshan*, 2018 WL 741369 at *6 ("in the context of discovery, the party that wishes to keep information confidential must move to do so.) (citation omitted.)

//

---

[3] The parties shall also modify VII. CHALLENGING PROTECTED DESIGNATIONS to comport with the Court's procedure for the handling of discovery disputes, as outlined in Section V., Discovery Disputes, of the Court's Chambers Rules.

### III. Conclusion

Based on the foregoing, the parties shall lodge with the Court's Chambers a stipulated ESI Order and stipulated Protective Order that incorporates the Court's rulings herein. The proposed Orders shall be lodged by email (efile_crawford@casd.uscourts.gov) on or before **July 12, 2019**, and shall be in a word-processing editable format (i.e. Word or WordPerfect).

**IT IS SO ORDERED.**

Dated: July 2, 2019

Hon. Karen S. Crawford
United States Magistrate Judge