1 | MAYER BROWN LLP
 |   Matthew H. Marmolejo (CA Bar No. 242964)
2 |   *mmarmolejo@mayerbrown.com*
 | 350 S. Grand Avenue
3 | 25th Floor
 | Los Angeles, CA 90071-1503
4 |   Ori Lev (DC Bar No. 452565)
 |   (*pro hac vice*)
5 |   *olev@mayerbrown.com*
 |   Stephen M. Medlock (VA Bar No. 78819)
6 |   (*pro hac vice*)
 |   *smedlock@mayerbrown.com*
7 | 1999 K Street, N.W.
 | Washington, D.C. 20006
8 | Telephone:  +1.202.263.3000
 | Facsimile:   +1.202.263.3300
9 |
10 | SOUTHERN POVERTY LAW CENTER
 |   Melissa Crow (DC Bar No. 453487)
11 |   (*pro hac vice*)
 |   *melissa.crow@splcenter.org*
12 | 1101 17th Street, N.W., Suite 705
 | Washington, DC 20036
13 | Telephone: +1.202.355.4471
 | Facsimile: +1.404.221.5857

14 | *Additional counsel listed on next page*
 | *Attorneys for Plaintiffs*

15 | **UNITED STATES DISTRICT COURT**

16 | **SOUTHERN DISTRICT OF CALIFORNIA**

17 |

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, | Case No.:  17-cv-02366-BAS-KSC |
| | Hon. Karen S. Crawford |
| Plaintiffs, | |
| | [DISCOVERY MATTER] |
| v. | |
| | **JOINT MOTION ON PLAINTIFFS' REQUEST TO COMPEL GOVERNMENT'S TIMELY PRODUCTION OF DOCUMENTS** |
| Kevin K. McAleenan,[1] *et al.*, | |
| Defendants. | **NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |
| | **[*Declarations of Stephen M. Medlock and Katherine J. Shinners Filed Concurrently*]** |

---

[1] Acting Secretary McAleenan is automatically substituted for former Secretary Nielsen pursuant to Fed. R. Civ. P. 25(d).

1

2   CENTER FOR CONSTITUTIONAL
3   RIGHTS
        Baher Azmy  (NY Bar No. 2860740)
4       (*pro hac vice*)
        *bazmy@ccrjustice.org*
5       Ghita Schwarz  (NY Bar No. 3030087)
        (*pro hac vice*)
6       *gschwarz@ccrjustice.org*
7       Angelo Guisado (NY Bar No. 5182688)
        (*pro hac vice*)
8       *aguisado@ccrjustice.org*
9   666 Broadway, 7th Floor
    New York, NY 10012
10  Telephone: +1.212.614.6464
    Facsimile: +1.212.614.6499
11
12  SOUTHERN POVERTY LAW CENTER
        Mary Bauer (VA Bar No. 31388)
13      (*pro hac vice*)
        *mary.bauer@splcenter.org*
14  1000 Preston Ave.
    Charlottesville, VA
15      Sarah Rich (GA Bar No. 281985)
        (*pro hac vice*)
16      *sarah.rich@splcenter.org*
        Rebecca Cassler (MN Bar No. 0398309)
17      (*pro hac vice*)
        *rebecca.cassler@splcenter.org*
18  150 E. Ponce de Leon Ave., Suite 340
    Decatur, GA 30030
19
20  AMERICAN IMMIGRATION COUNCIL
        Karolina Walters (DC Bar No. 1049113)
21      (*pro hac vice*)
        *kwalters@immcouncil.org*
22  1331 G St. NW, Suite 200
    Washington, DC 20005
23  Telephone: +1.202.507.7523
    Facsimile: +1.202.742.5619
24

25

26

27

28

# I.    PLAINTIFFS' ARGUMENT

## A.    INTRODUCTION

Plaintiffs respectfully request that this Court enter an order compelling the Government to substantially complete its production of documents responsive to Plaintiffs' First and Second Sets of Requests for Production on the following schedule:

- The Government shall substantially complete their production of responsive, non-privileged documents from Randy Howe, Todd Hoffman, Todd Owen, Carlos Rodrigues, and Sidney Aki on or before September 16, 2019;

- The Government shall substantially complete their document production from all remaining agreed-upon or court-ordered custodians on or before November 1, 2019; and

- The Government shall disclose its privilege log on or before December 1, 2019.[2]

Plaintiffs seek this reasonable deadline for the production of documents in response to their First and Second Sets of Requests for Production so that they can be prepared to litigate this matter, including taking key depositions, providing documents to their experts, resolving any disputes over privilege assertions, and proceeding with class certification briefing.

The Government served its responses and objections to Plaintiffs' First and Second Sets of Requests for Production on April 9 and 10, 2019.  Over 4 months have passed since then, and the Government still has not provided Plaintiffs with a reasonable deadline for the substantial completion of their production of documents.

---

[2] In an effort to narrow the disputes for this Court's adjudication, the parties have agreed that the Government will produce documents from three non-custodial sources (the Human Resources Business Engine ("HRBE"), Enterprise Data System ("EDS"), and the Consolidated Secondary Inspection System ("CSIS")) on or before September 25, 2019.  The Government will complete its production of documents from all agreed-upon non-custodial sources of documents by October 23, 2019.

JOINT MOTION TO COMPEL TIMELY
PRODUCTION OF DOCUMENTS

In violation of Fed. R. Civ. P. 34(b)(2)(B), initially the Government refused to provide Plaintiffs with a date for the completion of its document production. Medlock Decl. ¶¶ 9-10.  On June 7, 2019, the Court ordered the Government to "provide an alternate reasonable deadline for production, pursuant to Fed. R. Civ. P. 34(b)(2)(B)." Dkt. 269 at 1.  The Government only did so on July 3, 2019, and the deadline that the Government provided—January 31, 2020—was entirely unreasonable.  Medlock Decl. ¶ 11. On July 12, 2019, the Court held that "Defendants' representation that they cannot complete document production for the currently negotiated custodians and non-custodial sources until January 31, 2020, after every deadline set by the Court for class related discovery and class certification, is unacceptable." Dkt. 275 at 1.

Since then, Plaintiffs have engaged in two rounds of meet-and-confers with the Government concerning the schedule for document production in response to Plaintiffs' First and Second Sets of Requests for Production. *See* Medlock Decl. ¶¶ 21, 25.  While the Government has indicated that it may be able to produce a limited set of documents prior to December 2019, the Government has refused to agree to any schedule that calls for it to substantially complete its production of custodial documents prior to December 20, 2019.  *Id.* at ¶¶ 25-27.

This December 20, 2019 deadline is unreasonable for at least two reasons. First, the Government's already glacial production of documents combined with a schedule that allows the Government to withhold most of its document production until the eve of the Christmas and New Year's holidays means that the parties still will not be in a position to brief class certification until at least February 2020. Second, the members of Plaintiffs' putative class do not have the luxury of waiting over 300 days for the Government to complete its document production.

The Government's proposal for a protracted document production schedule is part of a pattern of unacceptable discovery delays.  Plaintiffs delivered their First Set of Requests for Production to the Government on August 9, 2017 and delivered their

1   Second Set of Requests for Production to the Government on February 19, 2019. In
2   the 2 years since Plaintiffs delivered their First Set of Requests for Production, the
3   Government has produced only 12,200 pages of documents. *See* Medlock Decl. ¶
4   28. Indeed, ***it has taken the Government over 90 days to merely collect documents***
5   ***from the parties' agreed upon custodians***. *Id.* at ¶ 32. ***It took the Government 72***
6   ***days to agree to the search terms that would be applied to the Government's***
7   ***documents***. *Id.* at ¶ 33. And, despite telling Plaintiffs that it intended to utilize
8   technology-assisted review ***over 48 days ago***, the Government still has not
9   adequately explained why its technology-assisted review protocol deviates from
10  accepted standards. *Id.* at ¶ 31.

11       On two occasions, this Court has noted its "concern[] with the pace of the
12  [Government's] engagement in discovery, including specifically document
13  production." Dkt. 269 at 1; *see also* Dkt. 275 at 1 ("the Court continues to be
14  concerned about the slow pace of defendants' document production"). Indeed, since
15  the Court observed that the Government "ha[s] not devoted adequate time and
16  resources to ensure discovery is accomplished in a timely manner," Dkt. 275 at 1,
17  the Government has produced only 13,967 pages of documents. Medlock Decl. at ¶
18  28. To make matters worse, the Government has the Government has produced only
19  270 emails and attachments from the period of April 2, 2018 to April 30, 2018 that
20  were in the possession of six custodians. *Id.* The Government has not produced a
21  single custodial document from the other eight of its agreed-upon custodians.[3] *Id.*
22  And the Government still has not confirmed that it has actually completed its
23  collection of documents belonging to the custodians that the parties agreed to in May
24  2019. *Id.* at ¶ 32.

25

26

27
28  [3] These figures are accurate as of August 27, 2019. On August 28, 2019, the Government sent Plaintiffs a letter indicating that the Government was producing another 1,947 pages of documents. Plaintiffs have not yet received the DVD containing this document production.

1    The conditions that asylum seekers face on the U.S.-Mexico border are rapidly
2    deteriorating.  "[A]t least 50,000 migrants who have reached the U.S. border with
3    Mexico" have been forced to wait in towns on the Mexican side of the border.  *See*
4    Elliot Spagat, *In Mexico, Thousands More Names Added to Border Wait Lists*, AP
5    (Aug. 8, 2019), http://bit.ly/2TgVrTk.  They live in "impromptu refugee camp[s]"
6    where "waste oozes out of the floor and sinks" and "[f]lies buzz around overflowing
7    trash and unrefrigerated food," all while temperatures regularly hit 100 degrees.  *See*
8    Molly O'Toole & Carolyn Cole, *Facing Trump's Asylum Limits, Refugees From as*
9    *Far as Africa Languish in a Mexican Camp*, L.A. Times   (July 8, 2019),
10   https://lat.ms/2XPS0Yf.  For instance, in Matamoros, Mexico, on the border with
11   Brownsville, Texas, migrants sleep outside near a Mexican migration center in the
12   summer heat with young children:[4]



1
2
3
4
5
6
7
8
9
10



11

12    Due to the Government's Turnback Policy, many of the members of the

13 putative class are faced with a difficult choice: wait indefinitely in unsafe and

14 unsanitary conditions outside a port of entry or attempt a life-threatening crossing

15 into the United States between ports of entry. *See* Emily Green, *Migrant Father*

16 *Who Drowned With Daughter Was Extorted Hours Before Crossing*, Vice News

17 (July 3, 2019), http://bit.ly/30fXzNp (describing extortion that asylum seeker faced

18 when waiting to enter a port of entry prior to deciding to cross Rio Grande River and

19 drowning with 23-month-old daughter).  The class that Plaintiffs plead and seek to

20 represent cannot wait 304 days for a complete document production.

21    Enough is enough.  Plaintiffs requested documents from the Government

22 months ago.  Despite repeated warnings from the Court, the Government has only

23 produced a smattering of documents and continues to propose unreasonable

24 deadlines for the completion of its document production.  The Court previously

25 stated that "[i]f defendants continue to provide unreasonable deadlines for document

26 production, pursuant to Fed. R. Civ. P. 34(b)(2)(B), they can anticipate the Court

27 will take a more active role in imposing said deadlines."  Dkt. 275 at 1-2.  Plaintiffs

28 respectfully request that the Court do so and order that the Government produce

JOINT MOTION TO COMPEL TIMELY
PRODUCTION OF DOCUMENTS

1  documents according to the schedule set forth in page 1 of this motion.

2  **B.    THE GOVERNMENT'S DELAYED DOCUMENT**
3  **COLLECTION, REVIEW, AND PRODUCTION**

4  Plaintiffs delivered their First Set of Requests for Production to the
5  Government pursuant to Fed. R. Civ. P. 26(d)(2) on August 9, 2017.  Medlock Decl.
6  ¶ 4.  After this case was transferred from the Central District of California to this
7  Court and this Court lifted the stay on discovery, *see* Dkt. 113, 202, Plaintiffs re-
8  delivered their First Set of Requests for Production on February 19, 2019.  Medlock
9  Decl. ¶ 4.  On the same day, Plaintiffs delivered their Second Set of Requests for
10  Production to the Government.  *Id.* ¶ 5.

11  On April 9 and 10, 2019, the Government served its responses and objections
12  to these requests for production.  Medlock Decl. ¶ 6.  The Government's responses
13  and objections did not state when the Government would produce documents
14  responsive to these requests.  *Id*.

15  Since April 10, 2019, the parties have engaged in extensive negotiations
16  concerning the scope of discovery, custodians, non-custodial sources, and search
17  terms.  Medlock Decl. ¶ 7.   While these negotiations have, at times, resulted in
18  impasses that require this Court's intervention, *see* Dkt. 251, the parties have reached
19  significant agreements on 14 custodians, 8 non-custodial sources, and over 150
20  search terms.  *Id*.

21  On June 7, 2019, the Court convened a joint status conference regarding the
22  parties' progress in producing discovery in this case.  Dkt. 267.  During the joint
23  status conference, the Government asserted that its document production had been
24  delayed due to resource and technological constraints.  Medlock Decl. ¶ 8.  The
25  Court stated that it did not "buy" these arguments.  *Id*.  The same day, the Court
26  issued its Order Following Status Conference and Setting Further Status Conference.
27  Dkt. No. 269.  In its order, the Court stated, in part: "[T]he Court is concerned with
28  the pace of defendants' engagement in discovery, including specifically document

1   production.  Defendants are expected to devote adequate time and resources to
2   ensure discovery is accomplished in a timely manner and, when they are unable to
3   produce documents within the timeframe set forth in [P]laintiffs' Request for
4   Production, to provide an alternate reasonable deadline for production, pursuant to
5   Fed. R. Civ. P. 34(b)(2)(B)."  *Id.* at 1.

6       On June 11, 2019, the Government wrote to Plaintiffs via email, stating that
7   the Government would begin its document production on July 3, 2019 and make
8   rolling document productions every four weeks thereafter.  Medlock Decl. ¶ 9.
9   Plaintiffs responded by noting that Rule 34(b)(2)(B) requires the Government to
10  state the end date of its document production.  *Id.*

11      Later the same day, the parties held a telephonic meet-and-confer.  *Id.* ¶ 10.
12  During that meet-and-confer, the Government informed Plaintiffs that it did not
13  anticipate completing its document production until January 2020.  *Id.*  The
14  Government stated that it would take until January 2020 to complete its document
15  production because of the Government's asserted technological limitations, resource
16  constraints, and the burden associated with completing a privilege log.  *Id.*  During
17  this telephonic meet-and-confer, Plaintiffs told the Government that the
18  Government's proposed schedule for producing documents was unacceptable, and
19  the parties noted that they were at an impasse on this issue.  *Id.*

20      Because the Government did not provide a date certain for the completion of
21  its document production, Plaintiffs requested a second telephonic meet-and-confer
22  on July 3, 2019.  *Id.* ¶ 11.  In email correspondence prior to that conference, the
23  Government stated that its document review would be complete on January 31, 2020.
24  *Id.*  During the parties' telephone conference, Plaintiffs and the Government agreed
25  that they were at an impasse concerning whether the Government would complete
26  its document production by October 1, 2019.  *Id.*

27      Separately, on July 3, 2019, the Government made its first production of
28  documents responsive to Plaintiffs' First and Second Sets of Requests for

1   Production. Medlock Decl. ¶ 11.  The Government has indicated that it anticipates
2   producing documents every four weeks on a rolling basis.  *Id.*

3         The parties met and conferred one final time by telephone on July 10, 2019,
4   in an effort to avoid motion practice and to better understand each other's position.
5   Medlock Decl. ¶ 13.  The Government maintained that it cannot complete its
6   production of documents until January 31, 2020.  *Id.*  But perhaps just as concerning
7   as the Government's position was the Government's newly articulated reason.  In
8   addition to the Government's well-worn excuse that it does not have enough
9   resources for various litigation-related tasks, the Government has informed Plaintiffs
10  that the Government's document collection and processing itself is proceeding more
11  slowly than expected.  *Id.*  For example, on July 10, 2019, the Government stated
12  that there are "many buckets" of documents that it has yet to collect and process, let
13  alone review or produce.  *Id.*  Specifically, the Government stated that as of July 10,
14  it had collected and processed documents from only 6 of the 14 agreed-upon
15  custodians for a limited time period, which is both surprising and concerning this far
16  into document discovery.  *Id.*

17        On July 12, 2019, the Court held a joint status conference concerning,
18  amongst other things, the pace of the Government's document discovery and the
19  Government's proposed January 31, 2020 deadline for the completion of document
20  discovery.  Medlock Decl. ¶ 14.  Following the joint status conference, the Court
21  ruled: "Defendants' representation they cannot complete document production for
22  the currently negotiated custodians and non-custodial sources until January 31, 2020,
23  after every deadline set by the Court for class related discovery and class
24  certification, is unacceptable."  Dkt. 275 at 1.  The Court noted that "[i]f defendants
25  continue to provide unreasonable deadlines for document production, pursuant to
26  Fed. R. Civ. P. 34(b)(2)(B), they can anticipate the Court will take a more active role
27  in imposing said deadlines."  *Id.* at 1-2.

28        Following this ruling, on July 15, 2019, Plaintiffs wrote to the Government,

proposing the Government complete its production of documents by October 1, 2019. Medlock Decl. ¶ 16. On July 17, 2019, the Government rejected this proposal, but failed to propose an alternate deadline for its document production. *Id.* at ¶ 17. The same day, Plaintiffs wrote to the Government asking for the Government provide a date certain by which the Government's document production would be complete. *Id.* at ¶ 18. On July 19, 2019, the Government responded that it would not be able to complete its document production until December 20, 2019. *Id.* at ¶ 19. However, the Government stated that its December 20, 2019 proposal was "an estimate" and that it was subject to change. *Id.* at ¶ 19.

On July 25, 2019, the parties held a telephonic meet-and-confer regarding the proposed deadline for the substantial completion of the Government's document production. Medlock Decl. ¶ 21. The parties were unable to come to an agreement regarding the deadline for the Government's document production. *Id.* However, the Government indicated that it may be able to agree to a document production schedule with staggered document production deadlines. *Id.*

On July 30, 2019, Plaintiffs proposed a document production schedule with staggered deadlines for document production. Medlock Decl. ¶ 22. Under this proposal, the Government would produce documents from five priority custodians (Randy Howe, Todd Hoffman, Todd Owen, Carlos Rodriguez, and Sidney Aki) by September 6, 2019. *Id.* The Government would then complete its production of documents from priority non-custodial sources, including the Government's HBRE and EDS systems, by September 20, 2019. *Id.* The Government would then complete its document production from all other non-custodial sources by October 4, 2019. *Id.* Finally, the Government would complete its document production by October 25, 2019. *Id.*

On August 2, 2019, the Government rejected Plaintiffs' proposed document production schedule. Medlock Decl. ¶ 23. Notably, the Government stated that it could not agree to produce documents from Plaintiffs' proposed priority custodians

JOINT MOTION TO COMPEL TIMELY
PRODUCTION OF DOCUMENTS

1    because "we are still in the process of collecting and/or uploading emails from some

2    of these custodians." *Id.* This was particularly disturbing because the Government

3    originally proposed these custodians on May 6, 2019. *Id.* at ¶ 32. The Government

4    offered no reason why it has taken over **90 days** to merely **collect** these documents.

5    *Id.* at ¶ 23.

6         On August 12, 2019, the parties meet and conferred via telephone for a second

7    time concerning the deadline for the Government's production of documents.

8    Medlock Decl. ¶ 25. During the meet-and-confer, Plaintiffs proposed the document

9    production schedule set forth on the first page of this motion to the Government. *Id.*

10   The Government rejected this proposal as well and continued to assert that it could

11   not complete its document production until December 20, 2019. *Id.* at ¶¶ 25-27.

12        **C.    THE GOVERNMENT SHOULD SUBSTANTIALLY**

13               **COMPLETE ITS DOCUMENT PRODUCTION BY**

14               **NOVEMBER 1, 2019**

15        Rule 37 permits a party to compel the production of documents and

16   electronically-stored information where "a party fails to produce documents . . . as

17   requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). Rule 34(b)(2)(B) requires

18   the party responding to a request for production to "state that it will produce copies

19   of documents or of electronically stored information instead of permitting

20   inspection." When a party does so, "[t]he production must then be completed no

21   later than the time for inspection specified in the request or another reasonable time

22   specified in the response." Fed. R. Civ. P. 34(b)(2)(B). The 2015 Advisory

23   Committee Notes to Rule 34 state, in pertinent part: "When it is necessary to make

24   the production in stages the response should specify the beginning and end dates of

25   the production." *Fischer v. Forrest*, 2017 U.S. Dist. LEXIS 28102, at *24 (S.D.N.Y.

26   2017) (quoting 2015 Advisory Committee Notes).

27        Plaintiffs' proposed timetable for the Government's document production is

28   reasonable. The period from July 3, 2019 (the date that the Government began its

document production) to November 1, 2019—comprising 84 business days—is sufficient time for the Government to substantially complete its document production in response to Plaintiffs' First and Second Sets of Requests for Production. Courts have ruled that time periods of far less than 84 business days comprise a "reasonable time" for the production of documents. *See, e.g.*, *Qualcomm Inc. v. Apple, Inc.*, 2019 U.S. Dist. LEXIS 23760, at *21 (S.D. Cal. 2019) (ordering production of all documents within 14 days); *Maiorano v. Home Depot USA, Inc.*, 2017 U.S. Dist. LEXIS 176287, at *7 (S.D. Cal. 2017) (compelling production of documents in response to four requests "no later than 14 days from the date of this Order" in a product liability case).[5] *Qualcomm Inc. v. Apple, Inc.* is instructive. 2019 U.S. Dist. LEXIS 23760, at *21. In that case, Apple requested that Qualcomm produce all documents related to the negotiation, terms, and payment provisions of Qualcomm's license agreements for certain patented technologies. *Id.* Qualcomm did not object to producing these documents, but it did not provide a date certain for its document production either. *Id.* Qualcomm represented to the district court that it was "working expeditiously" to produce the documents, but that its document production would be delayed by "third-party notice and consent obligations." *Id.* Citing Rule 34(b)(2)(B), the district court determined that "[t]his is just not good enough." *Id.* (internal quotation marks omitted). The district court ordered that Qualcomm complete this lengthy document production "no later than 14 days from the date of this Order." *Id.*

Here, Plaintiffs are asking for the Government to produce documents on a far less stringent timeline than was ordered in *Qualcomm*. Where Qualcomm was ordered to produce extensive documents related to negotiations and licensing

---

[5] *See also In re NC Swine Farm Nuisance Litig.*, 2016 WL 3661266, at *2 (E.D.N.C. 2016) (rolling document production that would be "fully completed within thirty days" was "appropriate under Rule 34(b)(2)(B)" (internal quotation marks omitted)); *Obesity Res. Inst., LLC v. Fiber Res. Int'l, LLC*, 2016 WL 9049608, at *1-2 (S.D. Cal. 2016) (noting that third party "has now had three months to produce the requested documents" and ordering that documents should be produced within 10 days).

1  agreements for several patents in two weeks, Plaintiffs ask only that the Government

2  complete its document production in 84 business days.

3      Moreover, the Government's estimate that it may still take up to 3,400 hours

4  to complete its document review (*see* Parties' July 8, 2019 Joint Status Conference

5  Statement at 13) is entirely consistent with completing a document review on or

6  before October 1, 2019.  Starting on July 3, 2019, a team of 20 document reviewers

7  could complete a 3,400 hour document review by August 7, 2019.[6]  Similarly, a team

8  of 10 document reviewers could complete a 3,400 hour review by September 6,

9  2019.[7]  Indeed, even a document review team with as few as 7 document reviewers

10  would allow the Government to complete its document review by September 30,

11  2019.[8]  Therefore, the Government's ability to substantially complete its document

12  production in response to Plaintiffs' First and Second Sets of Requests for

13  Production is a matter entirely within the Government's control.  The Government

14  simply needs to devote adequate resources to completing its document review.

15      Certainly, the Government has never explained why it needs 117 business

16  days (between July 3, 2019 and December 20, 2019) to substantially complete its

17  document production.  Nor has the Government provided any reason why it should

18  benefit from its lengthy delay—***over 90 days***—in collecting documents from agreed-

19  upon custodians.  This lengthy document production timetable is not reasonable

20  given the dangers that members of the proposed class face.  As temperatures rise,

21  sanitation and health conditions worsen, and waits at ports of entry become

22  interminable, class members cannot wait for the Government to complete its

23  document production at a glacial pace.  *See, e.g.*, Elliot Spagat, et al., *For Thousands*

24  *of Asylum Seekers, All They Can Do Is Wait*, Associated Press (May 9, 2019),

---

25
26  [6] 3,400 hours divided by 160 total hours of document review per day would allow the Government to complete its document review in 21.25 days.

27  [7] 3,400 hours divided by 80 total hours of document review per day would allow the Government to complete its document review in 42.5 business days.

28  [8] 3,400 hours divided by 56 total hours of document review per day would allow the Government to complete its document review in 60.7 business days.

http://bit.ly/2YHM01c (describing asylum seekers that "sleep in tents next to bridges leading to Texas for weeks on end" who are subject to "shakedowns and kidnappings by gangs and corrupt officials").

## D.   THE   GOVERNMENT'S   COUNTERARGUMENTS   ARE   UNAVAILING

### 1.   The Government has the resources to review and produce a large number of documents.

Below, the Government provides a prolix discussion of its document collection and review process and string cites—all of which are in service of a single argument: discovery takes time, the Government does not have unlimited resources, and the attorneys involved in this case have other matters to attend to. *Infra* at 17-31. Importantly, this is precisely the same argument that the Government has made, and this Court has rejected, at two prior joint status conferences. *See* Dkts. 269, 275.

The Government's recycled argument fares no better here. The Government provides no valid justification for why, over 3 months after the parties agreed on the Government's document custodians, the Government still have not collected documents from all 14 custodians. The Government also does not deny that its estimated 3,400 hour document collection could be completed well before November 1, 2019 if the Government devoted as few as 7 full-time document reviewers to its document review in this case. And, importantly, the Government never states that it would not comply with an order requiring it to complete its document production by November 1, 2019.

The Court has already stated that it does not "buy" the Government's arguments regarding technological and resource constraints. Medlock Decl. ¶ 8. Moreover, the Court has directed the Government to "devote adequate time and resources to ensure discovery is accomplished in a timely manner." Dkt. 269 at 1. This Court is not alone in doing so. In other immigration cases the Government has been criticized for failing to produce documents in a timely manner. *See, e.g.,*

*Hernandez v. Sessions*, Case No. 5:16-cv-00620-JGB-KK, slip op. at 2 (C.D. Cal. July 10, 2018) (Dkt. 195) ("[T]he production of responsive documents by [the Government] has been neither complete nor prompt.  It has been a trickle.").  In those cases, the Government was "strongly advised . . . that [it] should immediately hire additional staff and technical personnel to promptly review documents to assure a more complete and prompt production of documents."  *Id.*

Despite being ordered to "devote adequate time and resources to ensure discovery is accomplished in a timely manner," Dkt. 269 at 1, and despite this not being the first time that the Government has been ordered to do so in immigration litigation, the Government has not done so.  The Government acknowledges that as early as February 2019 that discovery in this case would be complex and would take time. *See infra* at 18.  However, the Government did not take the steps necessary to prepare for this document review.  The Government *still* has not completed its document collection.  *Infra* at 23.  The Government only has approximately 20 part-time attorneys devoted to discovery in this matter (and the Government does not define what "part-time" means).  *Infra* at 27.  Tellingly, the Government admits that it has been able to assign up to 35 attorneys to review documents in similar immigration litigation, but offers no reason why it has not done so in this case.  Falk Decl. ¶ 10.

The Government's delay in collecting, reviewing, and producing documents is unacceptable. The Government has the resources to complete its document production in a timely manner. With as few as 7 full-time document reviewers, the Government can complete its document review prior to November 1, 2019.  *Supra* at 7. The Government merely needs to devote these reasonable resources to completing its document production in response to Plaintiffs' First and Second Sets of Requests for Production.

**2.    The Government's previously undisclosed factual declarations do not change this Court's analysis.**  On August 28, 2019 at 11:12pm (ET), the

Government provided Plaintiffs with its section of this joint motion. Accompanying the draft of the joint motion were the declarations of Scott Falk, Katherine Shinners, and Gisela Westwater. The Shinners and Falk declarations contain new facts that were not previously disclosed to Plaintiffs during several meet-and-confers concerning the Government's document collection and production efforts. Ms. Shinners' declaration contains a list of the number of email messages that the Government has collected from its agreed-upon custodians that was not previously disclosed to Plaintiffs. *See* Shinners Decl. ¶ 22. The Government never disclosed the possibility that it would attach a declaration from Mr. Falk to this joint motion. Mr. Falk's declaration contains previously undisclosed facts concerning other e-discovery efforts that CBP is currently undertaking in other cases and other demands on the time of CBP's document review attorneys. *See* Falk Decl. ¶¶ 11, 14-15, 17.

This conduct is inappropriate. Plaintiffs have already been forced to move to strike previously undisclosed factual declarations that the Government attempted to append to joint motions at the last minute. *See* Dkt. 268. On August 1, 2019, the Court warned the parties to be certain to "fully discuss the factual basis" for their joint motions. *See* Dkt. 279 at 2. The Government has ignored the Court's guidance by attempting to sandbag Plaintiffs by providing these facts at the last minute.

At any rate, these declarations add nothing of substance to the Government's arguments. At best, they state that document discovery is time-consuming, the Government does not have infinite resources to review documents, and the attorneys working on this matter has competing priorities. The Government has made these arguments many times before, and nearly every defendant in civil litigation can make the same excuses. The Court has already noted that it does not "buy" these arguments, Medlock Decl. ¶ 8, and the Government's recitation of the same arguments does nothing to change the Court's prior conclusion. *See, e.g.*, *Carr v. United States*, 560 U.S. 438, 462 (2010) (Alito, J. dissenting) ("A bad argument does not improve with repetition.").

**3.    The Government's "no prejudice" argument strains credulity.**

Faced with numerous contemporaneous accounts and photos showing the human toll of the Government's lackadaisical document collection and production, the Government remarkably claims that its delays "do[] not prejudice Plaintiffs." *Infra* at 34.  Therefore, the Government suggests that Plaintiffs should simply accept the Government's December 20, 2019 document production deadline and put off class certification briefing and expert reports until 2020.  But, as discussed above, this case involves extremely vulnerable people living in unsanitary and unsafe conditions, without access to employment or medical resources due to the Government's turnback policy. *Supra* at 4-5.[9]  Contrary to the Government's belief, the Government's continued delays have real and serious consequences for these individuals. *See* Emily Green, *Migrant Father Who Drowned With Daughter Was Extorted Hours Before Crossing*, Vice News (July 3, 2019), http://bit.ly/30fXzNp (describing extortion that asylum seeker faced when waiting to enter a port of entry prior to deciding to cross Rio Grande River and drowning with 23-month-old daughter).  The Government's argument simply does not pass the laugh test.

**E.    CONCLUSION**

The Government's sluggish document production is not reasonable and, therefore, violates Fed. R. Civ. P. 34(b)(2)(B).  Plaintiffs respectfully request that the Court order the Government to substantially complete its production of documents responsive to Plaintiffs' First and Second Sets of Requests for Production based on the parties' currently agreed-upon custodians, non-custodial sources, and search terms according to the schedule set forth on the first page of this joint motion.

---

[9] In a footnote below (*infra* at 35 n.13), the Government attempts to whitewash its conduct by claiming that asylum seekers are routinely inspected at Ports of Entry.  This is not true.  The Government has turned back thousands of asylum seekers that are living in makeshift conditions in border towns on the U.S.-Mexico border.  In just one of these border towns, Tijuana, at least 10,000 asylum seekers are waiting 6 to 9 months to be inspected and processed at the San Ysidro Port of Entry. *See* Robert Strauss Center for Int'l Sec. & Law, Univ. of Tex., *Metering Update*, 4 (Aug. 2019), http://bit.ly/2KPHnNU.

## II. DEFENDANTS' ARGUMENT

## A.   INTRODUCTION

Plaintiffs' motion and proposed production deadlines gloss over several realities of the manner in which discovery in this case has proceeded.  Their proposed deadlines are also unrealistic and unreasonable in light of the extremely large volume of documents subject to collection and review and Defendants' finite resources. Despite those finite resources, Defendants have nonetheless made, and continue to make, substantial efforts to provide responsive, nonprivileged documents to Plaintiffs as quickly as possible while keeping Plaintiffs apprised of the status of the collection and processing of documents.  Defendants' frequent, rolling productions of documents have included, contrary to Plaintiffs' assertions, ESI from various custodians, the individual Plaintiffs' A files and related documents, congressional testimony, and record retention policies and schedules.  Defendants have agreed to make productions at least every four weeks and, where feasible, have agreed to interim deadlines to complete production of particular categories of documents. Indeed, contrary to Plaintiffs' representation, Defendants have no intention of "withholding most of [their] document production" until their projected December 20, 2019, substantial completion date.  Accordingly, it is not reasonable or necessary to order the aggressive production deadlines Plaintiffs seek, and the Court should deny Plaintiffs' motion in its entirety.

Plaintiffs accuse Defendants of delay but fail to acknowledge that Defendants have devoted substantial resources to negotiating the scope of discovery and litigating discovery disputes.  Since the time Defendants served their responses and objections to Plaintiffs' first two sets of document requests on April 9, 2019, Defendants have agreed to provide expansive discovery and have actively and timely engaged and cooperated with Plaintiffs with respect to their obligations under the ESI protocol and the federal and local rules.  During this time period, in addition to devoting substantial time and effort to negotiating the scope of discovery with

Plaintiffs, Defendants responded to a third set of Requests for Production, two sets of Interrogatories, and one set of Requests for Admission; and briefed oppositions to three discovery motions, including the instant motion and an opposition to Plaintiffs' motion to strike Defendants' declarations.  During this time period, Defendants also argued their motion to dismiss and answered a 304-paragraph complaint.  Plaintiffs also recently served a Fourth Set of Requests for Production to which responses are due on September 13.

These diversions of Defendants' already-strained litigation resources aside, the sheer volume of documents that Defendants are reviewing for potential production—projected at hundreds of thousands of documents—counsels against setting the deadlines Plaintiffs demand.  In particular, Plaintiffs' request that the Court set a seemingly-arbitrary deadline of September 16, 2019 for substantial completion of document production from their five recently-identified "priority" custodians is not feasible due to the nature of Defendants' technology-assisted responsiveness review, the status of Defendants' collection and processing of documents for review, and Defendants' limited resources.  Plaintiffs' demands disregard the effort and time required for production, including the time required to accurately review documents for privileged or confidential information.  Plaintiffs appear to labor under the misconception that the United States Government has bottomless resources and innumerable personnel to exploit those purported resources. The Government must operate within various constraints on time, money, and personnel, including balancing the demands of other litigation and operational missions.

Defendants are nonetheless working with Plaintiffs to prioritize review and production from certain sources.  Defendants are making progress with collection, review, and production. Defendants have implemented technology-assisted review to streamline their review and expect to continue to increase their production output over the next two months. While Defendants will not be able to substantially

complete production from the 22 different custodians and non-custodial sources until December 20, 2019, they are devoting substantial resources to collection and review and will continue to produce as much as they are able from all sources on a rolling basis.  However, a November 1 deadline for substantial completion of production from the hundreds of thousands of documents subject to review is neither reasonable nor feasible, nor is Plaintiffs' recently-requested interim September 16 deadline from certain of those sources.  Accordingly, the Court should decline at this time to enter any deadline for substantial completion of document production in response to Plaintiffs' First and Second Sets of Requests for Production, let alone Plaintiffs' unrealistic proposed deadlines.

## B.   THE   PARTIES'   NEGOTIATIONS   REGARDING   DOCUMENT DISCOVERY

The parties met and conferred as required by Federal Rule of Civil Procedure 26(f) on February 22, 2019.  Declaration of Katherine J. Shinners, Ex. 1, Declaration of Gisela A. Westwater in Opposition to Motion to Strike (Westwater Decl.) ¶ 3.  At that conference, and during subsequent discovery-planning conferences and in their portions of the Parties' Joint 26(f) report, Defendants made clear that they did not have the resources to litigate discovery disputes and proceed with full discovery at the same time.  *See* Westwater Decl. ¶¶ 3 (declaring that Defendants stated at that conference that, if Plaintiffs were not willing to agree to Defendants' targeted discovery proposal, Defendants would require approximately one year from the conclusion of RFP-related motions practice to complete their collection, review, and production of documents), 6 (discussing the competing demands on government litigation resources and that "Defendants simply do not have the resources to be moving on all fronts at the same time – reviewing and producing while objecting and litigating").

The parties also negotiated an ESI Protocol that built in time for the parties to reasonably negotiate custodians and search terms.  ESI Protocol § II(B)-(C) (ECF

No. 277) at pp. 3-4.  Pursuant to that protocol, the parties agreed that after a party serves responses to requests for document production, the parties would then negotiate custodians, non-custodial sources, and search terms to be applied to narrow the universe of documents for review; this negotiation would take place over a period of up to 56 calendar days.  ESI Protocol § II(B)-(C) at pp. 3-4.  Defendants made clear during the negotiations of this ESI Protocol that they were concerned with the cost and time needed to process documents for review.   As they explained, Defendants "would like to maintain flexibility to use search terms to *collect* documents. Collecting and processing documents prior to applying search terms could result in undue expense."  Westwater Decl. ¶ 8.  Accordingly, Defendants expressly reserved the right to use search terms to narrow the field of documents for collection and processing, rather than applying search terms only after documents have been collected and processed.  Defendants also advised Plaintiffs that the "time and cost of processing" was an issue that made it necessary for them to use a sample of documents (rather than the full universe of documents that would be subject to review) to conduct search-term testing and analysis.  Westwater Decl. ¶ 9.  Finally, the ESI Protocol left open the possibility for either party to rely on Technology-Assisted Review.  ESI Protocol § III at p. 6.

Defendants responded to Plaintiffs' First and Second Sets of Requests for Production on April 9, 2019.  Shinners Decl. ¶ 5.  Defendants then proceeded to work with Plaintiffs to negotiate the parameters of their search for documents in response to those requests in accordance with the ESI Protocol timelines.  On April 23, 2019, Defendants identified 10 custodians and 4 non-custodial sources for collection.  *Id.* ¶ 5.  On May 6, 2019, after conferring with Plaintiffs, Defendants added 4 more custodians and 4 more non-custodial sources.  *Id.* ¶ 8.  On May 20, 2019, Defendants disclosed their proposed search terms and how they would be applied to the various data sources.  *Id.* ¶ 9.  Defendants also disclosed on May 20, 2019, that, in accordance with the ESI Protocol, they would be using a sample of six

custodians' emails to test those search terms and to generate a report showing the number of documents on which each search term "hit" in that sample. *Id.* ¶ 9.  On May 24, 2019, Defendants provided Plaintiffs with their hit report.  *Id.* ¶ 10.  The parties then proceeded to negotiate search terms over the next two months. *Id.* ¶¶ 11-20).  When the parties completed negotiation of search terms on July 31, 2019, there were 202 agreed-upon search terms.  *Id.* ¶ 20.  Plaintiffs have also indicated at various points that they will seek to augment the list of search terms based on the outcome of their motion with respect to the First and Second Set of Requests for Production, or based on certain new requests set forth in their Third Set of Requests for Production.  *Id.* ¶¶ 14, 21.

Although Defendants had planned to save cost by waiting to finalize search terms to narrow the universe of documents before processing and uploading those documents to the review platform, the nature of the search term negotiations and discovery disputes rendered that plan impossible.  Shinners Decl. ¶ 14.  Defendants thus proceeded in June 2019 with collecting and processing, on a rolling basis, documents spanning the entire relevant time period from a variety of different custodians without any search-term limitations, to ensure collection of the entire potential universe of documents for review.  *See Id.* ¶¶ 14, 44.

Given the broad discovery parameters and the government's finite resources, Defendants initially proposed January 31, 2020, as the date for completion of their document production.  Shinners Decl. ¶ 43.  On July 19, 2019, before search-term negotiations were completed, Defendants provided Plaintiffs with a revised date of December 20, 2019, for substantial completion of its document production, based on the then-agreed-upon search terms and custodians.   Shinners Decl. ¶ X.  Defendants provided this date based on projections of the volume of documents for review and the amount of time needed to review documents for privilege and confidentiality.  The number and breadth of search terms—and the number of documents that hit on the search terms—has only increased since that time.  *See*

Shinners Decl. ¶¶ 18-20.

On July 26, 2019, after the parties further met and conferred regarding the deadline for Defendants' document production, Defendants proposed a phased production schedule whereby Defendants agreed to substantial completion of documents from certain non-custodial sources—which will not be subject to Active Learning—by interim deadlines. Shinners Decl. ¶¶ 54-55. Defendants offered those interim deadlines "to try to find some area of agreement and to provide more certainty to Plaintiffs as to when production from particular sources could be completed." Shinners Decl. ¶ 55. On July 30, 2019, Plaintiffs made a counter-proposal and, for the first time, identified five custodians for prioritization (Randy Howe, Todd Hoffman, Todd Owen, Carlos Rodriguez, and Sidney Aki); Plaintiffs' proposal sought agreement to completion of document production from those custodians by September 6, 2019. *Id.* ¶ 56.[10]   On August 2, 2019, Defendants explained that they could not agree to this September 6 deadline, because they were still in the process of collecting emails from some of these five custodians. *Id.* ¶ 57. Defendants also explained that they could not agree to a hard deadline at this time for the production of these custodians' data, because that data is part of the Active Learning review, as described more fully below, and Defendants are not yet sure when the Active Learning project will be complete; further, responsive documents also must go through privilege and confidentiality review before they are produced. *Id.* ¶ 57.  Defendants stated, however, that they can prioritize privilege review of

---

[10] Because Defendants are collecting and processing documents on a rolling basis, Defendants previously invited Plaintiffs to identify particular custodians or non-custodial sources that they wished to prioritize. *See* Shinners Decl. ¶¶ 47, 49-50. On July 10, 2019, Defendants specifically advised Plaintiffs of the status of the collection of emails from the 14 custodial sources and invited Plaintiffs to identify particular custodians on which Defendants could focus more resources. *Id.* ¶ 50. Plaintiffs did not do so, but instead stated that Defendants should be the one to identify sources for prioritization. *Id.* ¶ 49.

these custodians' documents over those from other custodians. *Id.* ¶ 57. On August 15, 2019, Defendants reiterated that they can prioritize privilege and confidentiality review for these five custodians. *Id.* ¶ 58.

## C.    DEFENDANTS' DOCUMENT REVIEW PROCESS AND TECHNOLOGY-ASSISTED REVIEW PROTOCOL.

Defendants have been moving forward with rolling collection and review of ESI and hard copy documents from 22 different custodians and non-custodial sources. Defendants are collecting and loading documents onto their review platform on a rolling basis to provide discovery to Plaintiffs as soon as possible, and have already made numerous productions to Plaintiffs – including three productions containing ESI from various custodians.

### 1.  Status of Collection and Upload to Review Platform

Defendants have agreed to collect ESI from 14 custodians. Shinners Decl. ¶¶ 6-8, 14 & Ex. 2, Declaration of Scott Falk (Falk Decl.) ¶ 4. As of the date Plaintiffs served their portion of this motion, Defendant CBP had collected emails from all 14 custodians. *Id.* ¶ 22. This collection amounts to almost 3 million email messages.[11] *Id.* ¶ 22. Defendants have processed and begun review on emails from 8 of these custodians.[12] *Id.* ¶ 24.

As of August 28, 2019, Defendants have uploaded onto their review platform

---

[11] This figure counts email families, and does not include each individual member of that email family. Shinners Decl. ¶ 22. Defendants have been transparent and have disclosed the volume of messages collected over the course of discovery; this overall figure was specifically disclosed to Plaintiffs via letter on August 22, 2019. *Id.*

[12] As Defendants advised Plaintiffs on July 2, 2019, Defendants have experienced delays in the processing and preparation of documents for review due to the high volume of documents and the corresponding time needed to process those documents to prepare them for review on Defendants' review platform. Shinners Decl. ¶ 44. Defendants further explained the status of their document collection and processing at the parties' meet and confer on July 10, 2019. *Id.* ¶ 50.

the following emails: (1) emails from the full time range (January 1, 2016 to the date of collection) for headquarters custodians Todd Hoffman, Bryan Molnar, Randy Howe, and Luis Mejia and field custodians David John Gonzalez, Andres Guerra, Pete Romero Flores, and Alberto Flores; and (2) emails from the time range of April 1 to April 30, 2018, for field custodians Mariza Marin and David Higgerson. Shinners Decl. ¶ 24. Emails from the remaining custodians are being processed and will be uploaded to Defendants' document review platform once processing is complete. *See id.* ¶ 25.

Defendants are also currently processing documents from the following three non-custodial sources: disciplinary case files from CBP's Human Resources Business Engine; documents from the Shared Drive of the DHS Office of Inspector General (OIG); and investigatory files from DHS OIG's Enterprise Data System. *See* Shinners Decl. ¶ 25. Defendants are collecting potentially responsive documents, if any from the five remaining non-custodial sources, as well as potentially responsive non-email documents from the 14 agreed-upon custodians on a rolling basis.

## 2. Document Productions & Schedule

Since March 29, 2019, Defendants have made numerous productions of Documents to Plaintiffs, including CBP's guidance regarding metering or queue management (the main practice challenged by Plaintiffs in this case), emails from agreed-upon custodians, organizational charts, records retention schedules, congressional testimony, budget documents, and A files of the individual Plaintiffs. Shinners Decl. ¶¶ 33-41.

Defendants have agreed to make rolling productions at least every four weeks beginning on July 3, 2019. Shinners Decl. ¶ 35. To expedite Plaintiffs' receipt of documents, however, Defendants have produced documents even more frequently. Since July 3, 2019, Defendants have made the following productions:

- July 3, 2019: AOL-DEF-00000001 to AOL-DEF-00004217 (non-

confidential documents, including congressional testimony and record
retention schedules);

- July 8, 2019:
    - AOL-DEF-00004218 to AOL-DEF-00005290 (A files of individual Plaintiffs);
    - DHSALOTRO0000093 to DHSALOTRO00001766 (A files of individual Plaintiffs);
- July 12, 2019: AOL-DEF-00005291 to AOL-DEF-00010190 (non-confidential documents, including record retention policies and schedules);
- July 31, 2019: AOL-DEF-00010191 to AOL-DEF-00010894 (emails from various custodians; documents pertaining to the named Plaintiffs);
- August 16, 2019: AOL-DEF-00010895 to AOL-DEF-00011999 (emails from various custodians);
- August 28, 2019: AOL-DEF-00012000 to AOL-DEF-00013947 (emails from Todd Hoffman).

Shinners Decl. ¶¶ 36-41.

### 3. **Review Status and Workflow**

*Responsiveness Review:* Based on the large volume of emails subject to collection in this case, Defendants project that, *after* the application of agreed-upon search terms, there may be as many as one million documents that Defendants will need to review to determine whether they are responsive. *See* Shinners Decl. ¶ 20, 22 (setting forth total message count and search term hit rates). Accordingly, Defendants are using a tool called Active Learning, a form of Technology-Assisted Review, on their Relativity review platform to assist with responsiveness review of documents from U.S. Customs and Border Protection (CBP) sources. *Id.* ¶ 31 & Ex. 1; *see also* https://help.relativity.com/9.6/Content/Relativity/Active_Learning/Active_Learnin

g.htm.  This will allow Defendants to devote less attorney time to identifying responsive documents and weeding out non-responsive documents, and more attorney time to reviewing documents for withholding or redaction for privilege and confidentiality designations, as set forth below.

As set forth in the attached Active Learning Protocol, Defendants intend to apply the Active Learning model to text-rich CBP documents that hit on agreed-on search terms, and their family members.  Shinners Decl. Ex. 1 (Active Learning Protocol § II(1)).  The Active Learning model uses an iterative training regimen in which the training set is repeatedly augmented by additional documents that are manually coded by Subject Matter Experts (SMEs) for responsiveness.  (Active Learning Protocol § I(1).  Currently, there are seven SMEs manually coding documents for responsiveness to train the Active Learning model.  Shinners Decl. ¶ 31.

This training process continues until the validation process – the Elusion Test – yields a project-specific target Elusion Rate.  Active Learning Protocol § I(6), III(2).  In the Elusion Test, an SME reviews a random, statistically significant sample of predicted non-responsive documents (that is, documents assigned a relevance rank by the Active Learning model that falls below a project-specific "Cutoff Rank") and manually codes the documents for responsiveness.  Active Learning Protocol §§ I(6), III(2).  The Elusion Rate is the percentage of documents that the SME manually codes as responsive.  Active Learning Protocol § I(6), III(2).  If the project-specific target rate is not met, Defendants will continue to manually code documents to continue to train the model until they meet the target Elusion Rate.  Thus, the Elusion Test may be run several times before it is determined that the training is complete. Active Learning Protocol § I(6), III(2).  Defendants have agreed to share the results of their elusion testing (the Elusion Rates) with Plaintiffs.

*Privilege and Confidentiality Review:* After a document is manually coded by Active Learning SMEs as responsive or is ranked above a particular relevance rank

by the Active Learning tool, it must be reviewed for privilege and confidentiality before it can be produced.   To facilitate rolling productions, Defendants are not waiting for training to be completed in Active Learning before conducting privilege review. Active Learning Protocol § III(3); Shinners Decl. ¶ 32.   Instead, they are releasing documents manually coded as responsive or ranked as highly relevant for privilege and confidentiality review.  *Id.* As part of this process, Defendants are now prioritizing privilege review of documents that meet these criteria and are from any of Plaintiffs' recently-identified "priority" custodians.   Shinners Decl. ¶ 32.

Confidentiality review entails determining whether the contents of a particular document warrant a Confidential or Attorneys' Eyes Only designation under the Stipulated Confidentiality Order.   Protective Order § II.E (ECF No. 276).   Privilege review entails determining whether all or any part of a document is subject to a claim of privilege, including governmental privileges such as the deliberative process privilege and the law enforcement privilege.  If only part of a document is privileged, the document cannot be withheld in full and the reviewer will need to make appropriate redactions.   Plaintiffs fail to appreciate the searching inquiry needed for review.   To ensure proper determination and application of a privilege, Defendants' attorneys must closely consult with others in the agency.   As CBP Chief Counsel Scott Falk explains, privilege and confidentiality review "is a labor-intensive process."  Falk Declaration ¶ 9.  CBP attorneys "generally need to discuss privilege issues with [their] clients and, in many cases, other governmental agencies. Discussions with the clients can be especially time-consuming, as it may require consultation with, for instance, OFO both at the headquarters level and in a field office, and may also require consultation with other CBP components."   *Id.* Undergirding all of this is the confidential nature of some aspects of immigration proceedings; many redactions can be anticipated given the amount of protected information in the documents regarding the processing of aliens who are seeking asylum.  *See*  8 C.F.R. § 208.6.   Thus, privilege review is different from, and a

precursor to, creation of a privilege log (which is also time-consuming and labor-intensive).

Defendants are conducting privilege and confidentiality review on a rolling basis, but they cannot yet know how many total documents will be subject to privilege and confidentiality review.   Defendants currently estimate that approximately one million documents will be subject to responsiveness review. Assuming one million documents for review and a 20% responsiveness rate, there will be a total of approximately 200,000 documents for privilege review.  Defendant CBP has a team of approximately 20 attorneys who are engaged in document discovery in this case, but they are additionally responsible for handling their regular-full-time workloads .  Falk Decl. ¶¶ 3, 12.

## D.  PLAINTIFFS' REQUEST TO SET A NOVEMBER 1 DEADLINE IS NOT REASONABLE IN LIGHT OF THE VOLUMINOUS ESI AT ISSUE.

In light of the volume of documents subject to collection and review in this case, the Court should decline to adopt Plaintiffs' proposed November 1 deadline for substantial completion of document production in response to Plaintiffs' First and Second Sets of Requests for Production.

More importantly, Plaintiffs' proposed timeline is not reasonable because it does not adequately account for the time needed to collect, process, and review the volume of ESI at issue.  Based on Defendants' collection to date, the total volume of email families collected from the 14 agreed-upon custodians is almost 3 million. Defendants project that as many as one million individual documents will be subject to review after the application of search terms.  Each responsive document and its family will also need to be reviewed for confidentiality and privilege before it can be produced to Plaintiffs. Thus, assuming there are one million documents for review and assuming only 20 percent of the documents reviewed are responsive, there will be approximately 200,000 documents to review for privilege.  Given the nature of governmental privileges—particularly in the law enforcement context—this is a

substantial undertaking. *See United States v. NCR Corp.*, No. 10-C-910, 2012 WL 4955304, at *1 (E.D. Wis. Oct. 17, 2012) (recognizing that responsiveness and privilege review of hundreds of thousands of documents was a "major, almost prohibitive, undertaking" for the United States Department of Justice and other governmental entities); Falk Decl. ¶ 9.

To enable Defendants to devote more attorney time to privilege and confidentiality review, they are using Active Learning to assist with responsiveness review and thus lessen the amount of time attorneys will devote to manually reviewing documents for responsiveness. Even with this projected efficiency gain, however, given the sheer volume of documents at issue, Defendants do not agree that a November 1 deadline is possible or reasonable. To process and upload at least 3 million email messages on a document-review platform, use Subject Matter Experts to train the Active Learning program to identify relevant, responsive documents from the population of documents that hit upon the agreed search terms, ensure that CBP and DHS lawyers review for privilege and confidentiality and make appropriate redactions and/or designations of privileged and/or confidential material requires a Herculean amount of time and effort.

Plaintiffs fail to appreciate the volume of documents here and make bald, unsupported assertions that the Government has infinite resources and personnel. The Government does not have unlimited money and manpower, as Plaintiffs mistakenly presume. *See Lund v. Affleck*, 442 F. Supp. 1109 (D.R.I. 1977) (recognizing that "government service agencies are not enclaves with unlimited resources, immune from budgetary strictures with concomitant allocation of services"). Presently, Defendants estimate that there may be as many as 200,000 total *documents*, not pages, for privilege and confidentiality review. A single document could consist of several hundred pages. The length of the document aside, to review 200,000 documents between August 19 and October 28, 2019, or 60 business days, Defendants would need to review 3,333 documents for privilege a

day.  This is not reasonable, given that Defendant CBP has a finite staff of attorneys and finite litigation resources, and its various attorneys have numerous litigation and operational responsibilities beyond the conduct of document discovery in this case. Falk Decl. ¶¶ 11-17.  These government attorneys cannot devote all of their time to document review.   Further, as Chief Counsel Falk states, CBP's Office of Chief Counsel "would be forced to divert a significant number of attorneys and support personnel from our other mission-critical tasks (including document review for other significant cases in litigation) to add to the already considerable team we have working on this case should we be required to complete document discovery on the timelines [requested by Plaintiffs]."  Falk Decl. ¶ 17.

Plaintiffs' suggested calculations purportedly demonstrating that document production can be completed before November 1, 2019, *supra* at 12, are speculative and unrealistic.  Those calculations rely on Defendants' initial 3400-hour estimate for privilege review, but Defendants' 3400-hour estimate was a projection based on the agreed-upon search terms at that time and the volume information available to them at that time, as well as an assumed rate of review and responsiveness rate of 20%. *See* July 8, 2019 Joint Status Conference Statement, at 13.  Those calculations are also based on the supposition that the number of government attorneys conducting review and the rate of review remain constant, and that these government attorneys can uninterruptedly conduct document review for eight hours a day every day.   This ignores the realities of government litigation, as explained above. Plaintiffs' calculations also do not account for system or network outages or any other unanticipated event.   Those calculations also assume, contrary to what Defendants have advised Plaintiffs and the Court, that all data from all 22 sources was ready for privilege review starting on July 3.

Thus, given the length of the parties' initial negotiations over the search parameters for documents in response to Plaintiffs' First and Second Sets of Requests for Production and the sheer volume of documents subject to collection

and review, Defendants' December 20, 2019, date for completion of document production is reasonable. Indeed, courts have repeatedly recognized that discovery in complex lawsuits with voluminous discovery takes a substantial amount of time. *E.g.*, *EMC Corp. v. Pure Storage, Inc.*, 310 F.R.D. 194, 198 (D. Mass. 2015) (noting in a complex case that the court extended a 14-month fact discovery period by an additional 4.5 months); *Hoffman v. United Tele., Inc.*, 575 F. Supp. 1463, 1466 (D. Kan. 1983) (noting that discovery in a non-class action suit took six years to complete); *In re Sinus Buster Products Consumer Litigation*, No. 12-DV-24299, 2014 WL 5819921, at *8 (E.D.N.Y. Nov. 10, 2014) (noting that discovery in a class action lasted over a year with "thousands" of documents being produced); *Fetrow Fix v. Harrah's Entertainment, Inc.*, No. 2:10–cv–00560, 2011 WL 6938594, at *3 (D. Nev. Dec. 20, 2011) (extending discovery in a Fair Labor Standards Act class case from two to nine months given the complexity of class actions); *Communications Workers of America Local 3603 v. BellSouth Telecommunications, Inc.*, No. 99-CV-857-WBH, 2000 WL 33321176, *8 (N.D. Ga. Oct. 26, 2000) (noting that discovery on class certification alone lasted "for close to nine months"); *Sears v. United States*, No. C04-2511, 2007 WL 527500, at *4 (W.D. Wash. Feb. 14, 2007) (noting prior extensions of one year to the discovery period due to the complex nature and voluminous discovery involved in a civil rights case). The Court should recognize the same here, and decline Plaintiffs' request to enter a November 1 deadline for substantial completion of document production.

The authority Plaintiffs cite, *supra* at pp. 10-11 & n.5, does not support their position that a November 1 deadline is appropriate under the circumstances of this case. The cases on which they rely do not appear to involve anywhere close to the projected volume of discovery at issue in this case. In *Qualcomm, Inc. v. Apple, Inc.*, No. 17cv1375-DMS-MDD, 2019 WL 585352, *1-*2 (S.D. Cal. Feb. 13, 2019), the Court ordered the plaintiff to produce documents responsive to a *single document request* within 14 days, because the plaintiff had failed to provide a date certain to

complete their production.  Significantly, the *Qualcomm* court did not require that *all* document discovery be completed in 14 days, and it also stated that the parties "are empowered to agree to a different date." *Qualcomm, Inc.*, 2019 WL 585352, at *2.  *Qualcomm* is thus not instructive here: First, the Court imposed a 14-day timeline for production in response to one request for production — not numerous requests for production, as are at issue here.  Second, there is no intimation in the decision to suggest that plaintiff was reviewing hundreds of thousands of documents to respond to that one request, as is the case for Defendants here.  Third, *Qualcomm* did not indicate how long the plaintiff had been working on collection and review of documents in response to that one request.  Fourth, Defendants have not refused to provide a date for completion of discovery, but propose December 20, 2019, which is reasonable based on the voluminous ESI subject to collection and review. *Qualcomm* thus provides no authority for Plaintiffs' argument that November 1 is a reasonable deadline to complete document production in this instance.

The remaining cases on which Plaintiffs rely are similarly inapposite. In *Maiorano v. Home Depot USA, Inc.*, No. 16cv2862-BEN-MDD, 2017 WL 4792380, at *2 (S.D. Cal. Oct. 10, 2017), as in *Qualcomm*, the producing party failed to provide a date certain to complete production of responsive documents, so the district court imposed a 14-day time period in which to respond to four requests for production.  Conspicuously, the parties in that case apparently did not argue, and the court did not discuss, what would be a reasonable time period based on the volume of discovery sought by those four requests.  In *Obesity Research Institute, LLC v. Fiber Research International, L.L.C.*, No 15-cv-0595-BAS-MDD, 2016 WL 9949608, *1-*2 (S.D. Cal. Apr. 5, 2016), the court similarly concluded that a party which had taken over three months to respond to a subpoena duces tecum and had refused to name a date certain to complete discovery must complete discovery within 10 days of the date of the order compelling completion. In *In re NC Swine Farm Nuisance Litigation*, No. 5:15-CV-00013-BR, 2016 WL 3661266, *2 (E.D.N.C. July

1, 2016), there appeared to be voluminous discovery for review, but the producing party had also already produced a substantial amount of documents in preliminary discovery and thus *agreed* to complete its rolling production within 30 days after serving its responses; the court declined to shorten that proposed production period. None of these cases support the proposition that 2 months is sufficient time for Defendants to complete document production in this case.

## E.   PLAINTIFFS' PROPOSED SEPTEMBER 16 DEADLINE IS NOT FEASIBLE

Plaintiffs' additional request that the Court set an aggressive interim deadline for documents from five custodians (Todd Hoffman, Todd Owen, Randy Howe, Sidney Aki, and Carlos Rodrigues) for the full time period from 2016 to the present is likewise unreasonable and impossible.   It was not until July 30, 2019, that Plaintiffs stated that they wished to prioritize the production of documents from these custodians.  Shinners Decl. ¶ 56.  At that time, Defendants candidly informed Plaintiffs that Defendants had not yet completed the collection of emails from certain of these five custodians. *Id.* ¶ 57.  Defendants also expressed concern that they could not guarantee a substantial production deadline for documents like these custodians' emails, which are subject to Active Learning, because Defendants do not yet know when Active Learning training will be complete, nor the volume of documents from these five custodians that will be subject to privilege and confidentiality review. *Id.* ¶ 57.   Accordingly, Defendants stated that they could prioritize review of these custodians' documents over others, but could not agree to Plaintiffs' proposed deadline. *Id.* ¶¶ 57-58.

Currently, emails from two of these custodians—Todd Hoffman and Randy Howe—are uploaded to Defendants' review platform and are currently subject to review.   Shinners Decl. ¶ 24.   Defendants are prioritizing privilege and confidentiality review of emails from these two custodians; indeed, Defendants' August 28 document production consisted primarily of Mr. Hoffman's emails. *Id.*

¶¶ 32, 41.  Once the emails from the remaining three "priority" custodians, which have been collected and are currently being processed, will be uploaded and ready for review, Defendants will prioritize privilege and confidentiality review of emails from these three custodians as well.  However, given that many of these emails are still being processed, it is clearly impossible to substantially complete production from these custodians by mid-September. It is also not possible to complete Active Learning training, determine the proper relevance rank for the entire Active Learning project, and conduct privilege and confidentiality review of all emails from these custodians before September 16, 2019.

Thus, although Defendants are prioritizing, and will continue to prioritize, review of these five custodians' documents on a rolling basis, it is simply not feasible for them to substantially complete production of these custodians' documents in September, due to the status of their document collection and processing as well as the status of training the Active Learning model being used to assist with responsiveness review.  Moreover, Plaintiffs have made no argument as to why they believe their proposed September 16 deadline is necessary.  Accordingly, the Court should decline to enter the September 16 deadline for completion of document production from Plaintiffs' chosen custodians.

## F.   PLAINTIFFS WILL NOT BE PREJUDICED BY DEFENDANTS' PROPOSED DOCUMENT PRODUCTION TIMELINE

Moreover, Defendants' proposed, realistic deadline for substantial completion of document production—December 20, 2019—does not prejudice Plaintiffs. Plaintiffs' stated reason for seeking a November 1 deadline is the need to obtain documents, litigate discovery disputes, and take depositions in advance of class certification expert and briefing deadlines.  *Supra* at p. 1; Order Following Case Management Conference and Setting Case Management Dates (ECF No. 246).  Yet the Court has ordered the parties to confer and amend the current class certification briefing and expert deadlines.  *See* Order Following Status Conference (ECF No.

275), at p. 2 (stating that the parties shall file "a joint motion in which they propose an amended schedule for the filing of plaintiffs' motion for class certification and the related discovery deadlines" by August 30, 2019).  Rather than push for an unrealistic document production deadline, Plaintiffs could try to reach an agreement to a schedule that accommodates Defendants' December 20, 2019 deadline, particularly given that Defendants have agreed to interim deadlines for many categories of documents and have agreed to prioritize privilege and confidentiality review from Plaintiffs' five "priority" custodians.[13]

Further, Defendants are making progress with collection, review, and production, having made six rolling productions to Plaintiffs between July 3 and August 28, 2019.  Under their rolling production schedule, Defendants will make at least 2 more document productions before November 1, 2019.[14]  Defendants have also agreed to interim deadlines to documents from non-custodial sources. *Supra* at p. 1 n. 1.  Thus, although Defendants have stated they will substantially *complete* their document production by December 20, 2019, they have never indicated that they will withhold most documents until that date.  To the contrary, Defendants have stated that they will prioritize review of documents from Plaintiffs' selected

---

[13] Meanwhile, Plaintiffs cannot dispute that the government continues to inspect and process putative class members who present themselves at land ports of entry along the U.S.-Mexico border.  "In July, 10,050 people presenting themselves at ports of entry on the Southwest Border were deemed inadmissible, compared with 9,459 in the month of June and 11,396 in May. … [CBP Office of Field Operations] inadmissibility metrics include: individuals encountered at ports of entry who are seeking lawful admission into the United States but are determined to be inadmissible, individuals presenting themselves to seek humanitarian protection under our laws, and individuals who withdraw an application for admission and return to their countries of origin within a short timeframe." https://www.cbp.gov/newsroom/stats/sw-border-migration (last modified August 8, 2019).

[14] Defendants are scheduled to produce documents on September 25, 2019, and October 23, 2019.

1  "priority" custodians and continue to produce these and other documents on a rolling

2  basis in the meantime.  Shinners Decl. ¶¶ 55, 57-58 (setting forth Defendants' initial

3  proposed phased production schedule, which set forth particular deadlines for certain

4  sources, but which emphasized that production from the remaining sources will

5  "continue on a rolling basis on the previously-agreed four-week intervals").

6          In light of these facts, it is not necessary to grant Plaintiffs' request to set an

7  aggressive September 16, 2019 deadline for production of documents from their

8  five, recently-identified "priority" custodians or a November 1, 2019 deadline for

9  substantial completion of all document production in response to their First, Second,

10  and Third Sets of Requests for Production.[15]

11  **G.    CONCLUSION**

12          This Court should decline to enter a deadline for substantial completion of

13  document production in response to Plaintiffs' First and Second Requests for

14  Production at this time, let alone Plaintiffs' proposed deadlines.  Alternatively, the

15  Court should enter Defendants' proposed December 20, 2019 deadline.

16

17

18

19

20  ───────────────

[15] The Court should decline to credit Plaintiffs' characterization of Defendants'
21  conduct in briefing this matter as "inappropriate."  *See supra* at p. 15.  Defendants
previewed that they may submit substantive declarations in opposition to a motion
22  to set a deadline for substantial completion of document production, and submitted
a declaration from CBP's Chief Counsel to support the previously-disclosed
23  factual basis for their opposition. *See* Shinners Decl. ¶ 50.  Defendants' declaration
of counsel recounts updated information about email volume, which had in fact
24  been disclosed to Plaintiffs albeit in a different format, *see* Shinners Decl. ¶ 22.
Defendants remain transparent and have endeavored to fully confer with Plaintiffs
25  on these and other discovery disputes to reach areas of agreement.  This Court's
rules do not require parties to disclose the identity of their potential declarants in
26  order to meet and confer completely on the issues underlying a discovery dispute.
Plaintiffs notably do not argue that prior disclosure of these specific declarations
27  would have allowed the parties to more fully meet and confer on the issues.
Instead, Plaintiffs argue to the contrary: that these declarations support the same
28  factual bases that Defendants have been pointing to throughout the course of this
action when advocating for a longer document production time period.

1    Dated:  August 30, 2019                 MAYER BROWN LLP
2                                               Ori Lev
                                                Matthew H. Marmolejo
3                                               Stephen M. Medlock

4                                            SOUTHERN POVERTY LAW
5                                            CENTER
                                                Melissa Crow
6                                               Mary Bauer
                                                Sarah Rich
7                                               Rebecca Cassler

8                                            CENTER FOR CONSTITUTIONAL
9                                            RIGHTS
                                                Baher Azmy
10                                              Ghita Schwarz
                                                Angelo Guisado
11
12                                           AMERICAN IMMIGRATION
                                             COUNCIL
13                                              Karolina Walters

14
15                                           By _Stephen M. Medlock_____

16
17                                           *Attorneys for Plaintiffs*

18                                           JOSEPH H. HUNT
                                             Assistant Attorney General
19                                           Civil Division

20                                           WILLIAM C. PEACHEY
21                                           Director, Office of Immigration
                                             Litigation
22                                           District Court Section
23
24                                           s/ *Katherine J. Shinners*
                                             KATHERINE J. SHINNERS
25                                           Senior Litigation Counsel
                                             U.S. Department of Justice
26                                           Civil Division
                                             Office of Immigration Litigation
27                                           District Court Section
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259 | Fax: (202) 305-7000
katherine.j.shinners@usdoj.gov

ALEXANDER J. HALASKA
SAIRAH G. SAEED
Trial Attorneys

*Counsel for Defendants*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE WITH MEET-AND-CONFER REQUIREMENT

I certify that on July 3, 2019, July 25, 2019, and August 12, 2019 the counsel for the parties met and conferred via telephone to discuss the dispute raised in this joint motion.  This conference occurred via telephone because counsel were located in New York and the District of Columbia.  The parties were unable to resolve the dispute presented in this motion.

Dated:  August 30, 2019                                    MAYER BROWN LLP


By  */s/ Stephen M. Medlock*
*Attorney for Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I certify that I caused a copy of the foregoing document to be served on all counsel via the Court's CM/ECF system.

Dated:  August 30, 2019                    MAYER BROWN LLP


By  */s/ Stephen M. Medlock*