JOSEPH H. HUNT
Assistant Attorney General, Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section
GISELA A. WESTWATER (NE 21801)
Assistant Director
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259 | Fax: (202) 305-7000
katherine.j.shinners@usdoj.gov
SAIRAH G. SAEED (IL 6290644)
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorneys

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
**(San Diego)**

AL OTRO LADO, Inc., *et al.*,

*Plaintiffs*,

v.

KEVIN K. McALEENAN,[1] Acting Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*,

*Defendants*

Case No. 3:17-cv-02366-BAS-KSC

Hon. Karen S. Crawford

**DECLARATION OF KATHERINE J. SHINNERS**

[1] Acting Secretary McAleenan is automatically substituted for former Secretary Nielsen pursuant to Federal Rule of Civil Procedure 25(d).

# DECLARATION OF KATHERINE J. SHINNERS

I, Katherine J. Shinners, declare as follows:

1. I am Senior Litigation Counsel in the District Court Section of the U.S. Department of Justice's Office of Immigration Litigation. I am an attorney for the federal Defendants in their official capacities in the case entitled *Al Otro Lado, Inc. v. McAleenan*, No. 3:17-cv-02366-BAS-KSC, which is currently pending in the U.S. District Court for the Southern District of California. I submit this declaration in support of Defendants' portion of the joint motion regarding Plaintiffs' request to set certain deadlines for production of documents. These statements are based upon my personal knowledge, my review of Defendants' document productions, my review of Defendants' document review platform, my review of emails, letters, and other correspondence, and, where specifically noted, discussions with colleagues at the Department of Justice (DOJ) or with employees of U.S. Customs and Border Protection (CBP) or the Department of Homeland Security's Office of the Inspector General (OIG).

2. Attached hereto as **Exhibit 1** is a true and correct copy of Defendants' Active Learning Protocol, dated July 11, 2019.

3. Attached hereto as **Exhibit 2** is a true and correct copy of the Declaration of Scott Falk, Chief Counsel for CBP.

4. Attached hereto as **Exhibit 3** is a true and correct copy of the Declaration of Gisela Westwater, previously submitted at ECF Docket No. 268-2.

***Negotiating the Scope of Discovery in Response to Plaintiffs' First and Second Sets of Requests for Production***

5. Defendants served their first amended and supplemented objections and responses to Plaintiffs' First Set of RFPs (Nos. 1–25) on April 9, 2019, at 10:04 PM (Pacific), and their objections and responses to Plaintiffs' Second Set of RFPs (Nos. 26–109) on April 9, 2019, at 8:51 PM (Pacific).

6. On April 23, 2019, pursuant to Section II of the parties' proposed ESI Protocol, Defendants served Plaintiffs with a list of custodians and non-custodial sources from which Defendants proposed collecting documents in response to Plaintiffs' 109 requests in their First and Second RFPs. Defendants identified 10 custodians, including the Director of Field Operations, San Diego Field Office, Office of Field Operations; the Acting Port Director, Hidalgo Port of Entry (Sept. 2018–Oct. 2018), Laredo Field Office, Office of Field Operations; the Acting Port Director, Hidalgo Port of Entry (Oct. 2018–Apr. 2019), Laredo Field Office, Office of Field Operations; the Executive Director, Admissibility and Passenger Programs, Office of Field Operations; the Executive Director, Operations, Office of Field Operations; the Director, Enforcement Programs Division, Admissibility and Passenger Programs, Office of Field Operations; a Watch Commander from the San Ysidro Port of Entry, San Diego Field Office, Office of Field Operations; and the Assistant Director, Intake and Analysis, Office of Professional Responsibility, Investigative Operations Division. Defendants also identified four non-custodial sources, including a shared drive from CBP's Office of Training and Development containing training materials; a sharepoint site from the Office of Field Operations containing post-academy training materials; a sharepoint site from the Office of Field Operations containing OFO's policy database; and a sharepoint site from the Office of Field Operations, Admissibility and Passenger Programs, Enforcement Programs Division containing the Enforcement Programs Division's policy database.

7. In an April 29, 2019 letter, Plaintiffs agreed to the custodians and non-custodial sources Defendants had proposed on April 23, but stated their belief that the list was "incomplete." Plaintiffs proposed adding 24 additional individual custodians, including individuals from more than a dozen more ports of entry along the U.S-Mexico border. Plaintiffs also proposed adding at least four more non-custodial sources.

8. Defendants responded to Plaintiffs' proposal via letter on May 6, 2019. Defendants stated: "As stated during the parties' conference, Defendants initial list of custodians included individuals who Defendants determined after an initial investigation were most likely to possess responsive information related to the four Ports of Entry relevant to the allegations of the Named Plaintiffs (Hidalgo, Laredo, Otay Mesa, and San Ysidro). This list included key individuals from the Office of Field Operations (OFO) and the relevant Field Offices and/or Ports of Entry. Accordingly, Defendants maintain that their initial list of custodians and non-custodial sources is sufficiently comprehensive to conduct a reasonable and proportional search. Plaintiffs' proposal to add 24 additional individual custodians, in particular, far exceeds what is proportional to the needs of the case." Defendants nevertheless agreed to add four additional custodians, including the Assistant Director, Field Operations, Laredo Field Office (retired Sept. 2018), Office of Field Operations; the Executive Assistant Commissioner, Office of Field Operations; the Port Director of the San Ysidro Port of Entry and of Passenger Operations at the Otay Mesa Port of Entry, San Diego Field Office, Office of Field Operations; and the Port Director, Hidalgo Port of Entry, Laredo Field Office, Office of Field Operations, for a total of 14 custodians. Defendants also agreed to add four additional non-custodial sources, including one source from CBP's Human Resources Management division and three sources from DHS's Office of Inspector General, for a total of eight non-custodial sources.

9. Defendants sent Plaintiffs a letter on May 20, 2019, disclosing their list of 176 proposed search terms and an explanation of how Defendants intended collect documents from their 22 data sources (including whether and how search terms would be applied to those data sources). Defendants stated in that letter:

> Defendants request that the parties meet and confer regarding these search terms on Monday, June 3. Defendants thus intend to provide a Hit Report on or before Friday, May 24, 2019, which will be based on a sample from certain of these designated data sources to generate a

> Hit Report as defined in the [ESI] Protocol. That sample includes emails from six custodians dating from January 1, 2016 through approximately February 2019. These custodians are those six custodians identified in Defendants' initial targeted discovery proposal described in the Parties' Supplemental Joint Discovery Plan (ECF No. 243), at pages 16-17: Pete R. Flores; David P. Higgerson; Alberto A. Flores; David John Gonzalez; Todd A. Hoffman; and Mariza Marin.

10. On May 24, 2019, Defendants sent Plaintiffs, via email, a hit report contained in two Microsoft Excel spreadsheets (broken apart due to the number of search terms) of Defendants' proposed search terms as applied to the document sample containing the emails of six of Defendants' custodians.

11. On May 29, 2019, Plaintiffs sent Defendants, via email, a counter-proposal of 226 separate search terms. Plaintiffs proposed adding new search terms and significantly expanding 104 of the existing search terms.

12. On June 6, 2019, the parties met and conferred regarding Plaintiffs' proposed search terms. Defendants explained at the conference that they could not accept many of Plaintiffs' proposed terms because they substantially increased the volume for review with little to no benefit to the discovery of relevant material. However, Defendants' counsel stated that Defendants would analyze whether they could further modify Plaintiffs' proposed terms in an effort to reach agreement.

13. On June 10, 2019, Plaintiffs sent Defendants, via email, an excel spreadsheet to use to track the parties' negotiations over search terms.

14. On June 11, 2019, the parties met and conferred by telephone regarding various discovery-related issues. At that conference, Plaintiffs advised that they anticipated proposing additional search terms should the Court rule in their favor on certain pending discovery disputes. Due to the volume of documents involved, and given that the time and cost of processing documents increases with volume, Defendants' counsel had been waiting to reach agreement on search terms before beginning the process of exporting the majority of documents to be uploaded onto the review platform. At this point, however, Defendants determined not to wait for

search terms to be finalized to proceed with processing, exporting, and uploading large volumes of documents to the review platform, and to apply search terms after those documents had been uploaded to the review platform. Defendants also began considering using Relativity's "Active Learning" tool, a form of technology-assisted review, to assist with responsiveness review.

15. On June 14, 2019, after conducting additional testing and analysis, Defendants provided Plaintiffs with their response to Plaintiffs' May 29, 2019 search-term proposal. Defendants accepted 49 of Plaintiffs' proposed search terms, and made counter-proposals on many others.

16. On June 17, 2019, Plaintiffs provided Defendants with another counter-proposal that again proposed additional modifications to numerous terms. Before Defendants could assess whether to accept those terms as modified, they needed to analyze them and run volume/hit reports for those terms to determine whether they could accept them. Due to the complexity of the searches, the volume of documents to be searched, and competing priorities, obtaining those volume reports took time.

17. On June 25, 2019, Defendants provided Plaintiffs with their response to Plaintiffs' June 17 proposal. Defendants accepted 19 of Plaintiffs' proposed terms and made counter-proposals on several others. Further, as a result of a meet-and-confer between the parties that same day, Defendants agreed to further analyze and consider two of Plaintiffs' proposed search terms.

18. On July 15, 2019, Plaintiffs provided Defendants with their response to Defendants' proposals, which rejected most of Defendants' proposals.

19. After conducting further analysis of Plaintiffs' proposed search terms, Defendants responded to Plaintiffs' July 15, 2019 proposal by email dated July 30, 2019, accepting the majority of Plaintiffs' proposals, with the caveat that Defendants reserve the right to revisit their agreement on those terms should Defendants be unable to proceed with their Active Learning protocol, as described further below and attached hereto as Exhibit 1.

20. The parties ultimately agreed on 202 search terms on July 31, 2019. I used the search term reporting tool in the DOJ Civil Division review platform in Relativity 9.6, to apply these agreed search terms to the emails of 8 custodians that have been uploaded to that review platform (constituting 2,470,121 total documents, counting emails and attachments). The application returns approximately 22% of the total documents, including family members (constituting 536,639 total documents).

21. At a July 25, 2019 conference regarding Defendants' responses to Plaintiffs Third Set of Requests for Production of Documents (which Defendants served on July 15, 2019), Plaintiffs stated that they may seek to add search terms based on their Third Set of Requests.

***Defendants' Document Collection, Processing, and Review***

22. According to information provided to me by Elaine Dismuke, eDiscovery Team Lead, Security Operations Division, Cyber Security Directorate, Office of Information and Technology, Enterprise Services, CBP, CBP has collected emails from the 14 agreed-upon custodians for the time period beginning January 1, 2016. The number of email messages collected from each custodian are as follows:

| Custodian/Source | Volume (Email message count) |
|---|---:|
| Sidney Aki | 273,977 |
| Frank S. Longoria | 79,789 |
| Carlos Rodrigues | 839,367 |
| Todd Owen | 265,358 |
| Andres Guerra | 170,180 |
| Luis Mejia | 186,260 |
| Randy Howe | 330,451 |
| Bryan Molnar | 35,646 |
| David John Gonzalez | 70,170 |
| David Higgerson | 95,817 |
| Alberto Flores | 153,215 |
| Pete Romero Flores | 156,575 |

| | |
|---|---|
| Mariza Marin | 172,173 |
| Todd Hoffman | 85,034 |
| TOTAL | **2,914,012** |

Ms. Dismuke informed me that the message count reflects the number of email messages, and does not count each family member/item attached to the email message. On August 22, 2019, Defendants told Plaintiffs via letter: "Defendants have already collected almost 3 million email messages from the 14 agreed-upon custodians. This figure counts email families and thus does not reflect the individual item/document count, which is much higher."

23. Defendants are using DOJ Civil Division's Relativity 9.6 review platform ("review platform") to review and, if necessary, redact documents for production.

24. Based on my knowledge and review of the workspace in the review platform, the emails from the following eight custodians for the full time range have been uploaded to the review platform: Todd Hoffman, Randy Howe, Bryan Molnar, David John Gonzalez, Andres Guerra, Pete Romero Flores, Alberto Flores, and Luis Mejia. Additionally, emails from custodians Maria Marin and David Higgerson dating from April 1 to April 30, 2018, have also been uploaded for review. After application of search terms, the total number of documents from these sources that are subject to responsiveness review is 536,639.

25. Based on my conversations with colleagues at DOJ, individuals on CBP's e-discovery team, and individuals at DHS OIG, I understand that emails from the following custodians and documents from the following non-custodial sources are currently being processed for uploading to the review platform: Sidney Aki; Carlos Rodrigues; Mariza Marin; Todd Owen; Frank S. Longoria; CBP's Human Resources Business Engine; DHS OIG's Shared Drive; and DHS OIG's Enterprise Data System.

***Defendants' Use of Active Learning to Assist with Responsiveness Review***

26. As noted above, in June 2019, Defendants began considering using Relativity's Active Learning tool to assist with responsiveness review of CBP documents.

27. Defendants advised Plaintiffs via email on July 2, 2019, that they intend "to use Active Learning to assist in responsiveness review of a subset of the ESI after application of search terms. In accordance with the agreed-upon terms of the ESI Protocol, we will disclose Defendants' Active Learning protocol. We anticipate being able to provide the Active Learning Protocol next week."

28. Defendants further discussed with Plaintiffs their planned use of Active Learning at a July 10, 2019 telephone conference.

29. On July 11, 2019, Defendants provided their Active Learning Protocol (attached hereto as Exhibit 1) to Plaintiffs via email.

30. Defendants provided additional information about Defendants' use of Active Learning to Plaintiffs via email on July 19 and August 9, 2019, and at a telephone conference on July 22, 2019.

31. As explained in the Active Learning Protocol attached as Exhibit 1 hereto, in Active Learning, knowledgeable individuals ("Subject Matter Experts") manually code documents for responsiveness to train the Active Learning tool. There are currently six Subject Matter Experts from CBP reviewing documents for responsiveness to train the Active Learning tool.

32. As also explained in the Active Learning Protocol, documents that are manually coded as responsive or that are ranked as highly relevant by Active Learning are being released for privilege and confidentiality review. Defendants are currently prioritizing privilege and confidentiality review of documents from custodians Todd Hoffman and Randy Howe.

***Defendants' Document Productions***

33. On March 29, April 18, April 19, April 23, April 29, and May 14, 2019,

Defendants produced approximately 200 pages of organizational charts, at CBPALOTRO00000150 to CBPALOTRO00000298; CBPALOTRO00000300 to CBPALOTRO00000302; and DHSALOTRO00000054 to DHSALOTRO00000092.

34. On April 29, 2019, Defendants produced CBP's April 2018 guidance regarding metering or queue management, at CBP-ALOTRO00000299.

35. The parties then agreed that Defendants will make rolling productions at least every four weeks, beginning on July 3, 2019.

36. On July 3, 2019, Defendants produced non-confidential documents, including records retention schedules, congressional testimony, and budget documents, at AOL-DEF-00000001 to AOL-DEF-00004217.

37. On July 8, 2019, Defendants produced the A files for the individual Plaintiffs, at AOL-DEF-00004218 to AOL-DEF-00005290 and DHSALOTRO00000093 to DHSALOTRO00001766.

38. On July 12, 2019, Defendants produced various non-confidential documents, including records retention schedules, at AOL-DEF-00005291 to AOL-DEF-00010190.

39. On July 31, 2019, Defendants produced emails from various custodians from April 2018, at AOL-DEF-00010191 to AOL-DEF-000101894.

40. On August 16, 2019, Defendants produced emails from various custodians from April 2018, at AOL-DEF-00010895 to AOL-DEF-00011999.

41. On August 28, Defendants produced emails from custodian Todd Hoffman spanning the relevant time period, at AOL-DEF-00012000 to AOL-DEF-00013947.

***The Parties' Correspondence and Conferences Related to the Defendants' Document Production Schedule***

42. On Friday, June 28, 2019, Plaintiffs sent an email to Defendants asking among other things: "When does the government anticipate that its production of documents in response to Plaintiffs' First and Second Sets of Requests for Production will be complete?"

43. On Tuesday, July 2, 2019, Defendants stated in response to Plaintiffs' counsel:

> With respect to your questions regarding an end date for document production, we did previously give you an end date: January 31, 2020. As discussed at our meet and confer on June 11, 2019, this is the date Defendants set forth in the Parties' Joint 26(f) Report (ECF No. 243). Defendants' responses to Plaintiffs' Document Requests contemplate that Defendants' search for documents will be based on the parameters of a negotiated search. Thus, we did not give a different end date in those responses, because the parties have not yet agreed upon those parameters and several disputes are pending before the Court. But we did advise Plaintiffs' counsel on June 11, 2019, that we are maintaining the January 31, 2020 deadline set forth in the Parties' Joint 26(f) until we are able to provide a more refined deadline.

44. In that same email, Defendants also advised Plaintiffs' counsel of the delay Defendants were experiencing in preparing and processing documents for review:

> Because of the volume of ESI (660,000 email messages from the first six CBP custodians), the process of preparing and processing documents for review has taken longer than anticipated. We had hoped to save processing time and cost by applying search terms to those emails before preparing them for review, but we were not able to because the parties' negotiations on search terms are ongoing, and because Plaintiffs indicated at our June 11, 2019 meet and confer that they will have additional search strings to propose should outstanding discovery disputes be resolved in their favor. Accordingly, due to the

volume of emails, processing these documents for review is time-consuming and is being done on a rolling basis, beginning with those first six custodians.

45. Defendants further advised Plaintiffs in that July 2, 2019, email that they were intending "to use Active Learning to assist in responsiveness review of a subset of the ESI after application of search terms. In accordance with the agreed-upon terms of the ESI Protocol, we will disclose Defendants' Active Learning protocol. We anticipate being able to provide the Active Learning Protocol next week."

46. Plaintiffs stated in an email dated July 2, 2019, 11:35 p.m. (ET) that "we appear to be at an impasse regarding the timeline for the Government's document production. … Particularly since the Government intends to use both search terms and active learning, the Government should be able to complete its production of document[s] much earlier than January 31, 2020. Instead, the Government should complete its production of documents by October 1, 2019." Plaintiffs went on to state: "Because it appears we are at an impasse on this issue, we propose … the Government and Plaintiffs meet and confer tomorrow by telephone regarding this matter … ."

47. Defendants responded in an email dated July 3, 2019, in which Defendants agreed to have "at least an initial meet and confer" that same day, and further stated "it seems to us that the parties may be able to reach some middle ground on issues relating to document production. We have given you the January 31, 2020 end date, but we have also stated that we hope to provide a refined end date as we understand more about the volume." Defendants stated in another response email that same date that they "are not proposing prioritization as a 'smoke screen' to delay production of documents – we are offering to work with Plaintiffs to at least try to prioritize certain sources or documents, all in the context of moving forward with the collection of the agreed-upon documents from agreed-upon sources."

48. At the July 3 conference, Plaintiffs explained the relief they planned to seek, including that the deadline they sought was for "substantial completion" of document production and would not include the time needed to prepare the privilege log.

49. At the July 3 conference, Defendants explained that they could not stipulate to the October 1, 2019 deadline because, based on the projected volume of ESI and their resources, they did not believe they could meet that deadline. Defendants also asked if there were sources or categories of documents that Plaintiffs propose for prioritization such that the parties could perhaps negotiate other production benchmarks that the parties could agree to. Plaintiffs responded that they believed Defendants were in a better position to propose prioritization methods.

50. On July 9, 2019, Defendants informed Plaintiffs that they "may rely on [substantive] declarations to support their opposition to Plaintiffs' motion to set a deadline of October 1, 2019" and that they "anticipate that if Defendants submit declarations those declarations will relate to the facts we have discussed or set forth at many points regarding the government's constraints." On July 10, 2019, the parties had an additional telephonic conference regarding the factual bases for Defendants' opposition to Plaintiffs' request for an October 1, 2019 deadline. At that conference, Defendants further explained the delays they were experiencing regarding the processing of documents to export and upload those documents to the review platform. Defendants again invited Plaintiffs to identify particular custodians for prioritization. Defendants also explained, among other things, that their opposition to a motion to set a deadline for substantial completion of document production may be based on the competing demands on CBP and DOJ attorneys' time and the time needed to conduct privilege and confidentiality review.

51. On July 10, 2019, Plaintiffs sent Defendants their portion of a joint motion to set an October 1 Deadline for completion of document production.

52. On July 15, 2019, Plaintiffs sent Defendants an email proposing that the parties agree to an October 1 Deadline for completion of document production.

53. On July 19, 2019, Defendants responded via email as follows:

> Defendants' alternate proposed date for substantial completion of document production in response to the First and Second RFPs, based on the currently agreed-upon custodians and search terms, is December 20, 2019. This is an estimate of the time needed for completion based on the information we have at this time, and accounting for the substantial volume of documents that Defendants are collecting and reviewing from 22 different custodians and non-custodial sources from two different components. As you know, we currently estimate that at least half a million documents will be subject to review after the application of the currently agreed-upon search terms. We do not yet know if that figure is accurate, nor do we yet know the general responsiveness rate for that collection, which will greatly influence the amount of time needed for privilege and confidentiality review.

54. On July 22, 2019, the parties conferred regarding Defendants' Active Learning protocol. At that conference, the parties discussed the parties' ongoing negotiations regarding Defendants' document production schedule. Defendants suggested that the parties could potentially agree to certain phased production deadlines, but explained that it would be very difficult for Defendants to agree to particular deadlines for documents that are subject to Active Learning.

55. On July 26, 2019, Defendants proposed the following phased production schedule:

> As we discussed, although Defendants' best estimate for substantial complete of document production from the currently agreed-upon sources and using currently agreed-upon search terms remains December 20, 2019, Defendants offered to come up with a phased schedule for completion of production from particular sources at earlier dates. Accordingly, Defendants propose as follows:
>
> a. Defendants would substantially complete production of responsive, non-privileged case files from HRBE and EDS on or before September 25, 2019.

> b. Defendants would substantially complete production of responsive, non-privileged documents from CBP non-custodial sources 1-4 (see attached letter) on or before October 23, 2019.
>
> c. Defendants would substantially complete production of responsive, non-privileged documents from DHS OIG Shared Drive on or before November 20, 2019.
>
> d. Defendants' review and production from other sources would continue on a rolling basis on the previously-agreed four-week intervals, with substantial completion of document production from all agreed-upon sources by December 20, 2019.
>
> Of course, any efforts devoted to review and production from one source will necessarily divert resources from review of other sources, but Defendants wanted to offer these interim deadlines to try to find some area of agreement and to provide more certainty to Plaintiffs as to when production from particular sources could be completed.

56. On July 30, 2019, Plaintiffs sent a counter-proposal to Defendants via email. That counter-proposal included, among other things, a proposal that "Defendants shall substantially complete production of responsive, non-privileged documents from Randy Howe, Todd Hoffman, Todd Owen, Carlos Rodrigues, and Sidney Aki on or before September 6, 2019."

57. On August 2, 2019, Defendants responded by email, stating that:

> Defendants cannot agree to this [September 6] deadline. Among other reasons already discussed, we are still in the process of collecting and/or uploading emails from some of these custodians. More importantly, while we can seek to prioritize review of these custodial sources over others once they are uploaded to the review platform, we cannot agree that we will "substantially complete" production from any custodians by September 6 (or any date before December 20, 2019), because their data is part of Active Learning review, and we do not yet know when training of the program will be complete, nor do we know the volume of documents for privilege and confidentiality review (which, as discussed at our July 10 conference and at various other points, takes substantial time to complete, in part due to the prevalence of privilege issues for law enforcement agencies and the fact that we often need to extensively consult with clients or third parties).

58. On August 15, 2019, as the parties continued to negotiate other deadlines, Defendants again advised Plaintiffs via email that they were unable to agree to a September deadline for the emails from Randy Howe, Todd Hoffman, Todd Owen, Carlos Rodrigues, and Sidney Aki. Defendants stated: "Defendants already set forth the practical reasons they are unable to agree to this deadline. Defendants can prioritize privilege and confidentiality review of documents from these custodians over other documents from other custodians, however."

59. Plaintiffs served their portion of a "Joint Motion to Compel Government's Timely Production of Documents" at 10:21 p.m. ET on Monday, August 19, 2019.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. This declaration was executed on August 30, 2019, in Washington, D.C.

*/s/ Katherine J. Shinners*
KATHERINE J. SHINNERS