# EXHIBIT 3

JOSEPH H. HUNT
Assistant Attorney General, Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section
GISELA A. WESTWATER (NE 21801)
Assistant Director
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4174 | Fax: (202) 305-7000
gisela.a.westwater@usdoj.gov
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
SAIRAH G. SAEED (IL 6290644)
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorneys

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
(San Diego)**

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> Kevin K. McALEENAN,[1] Acting Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*, <br><br> *Defendants* | Case No. 3:17-cv-02366-BAS-KSC <br><br> Hon. Karen S. Crawford <br><br> **DECLARATION OF GISELA A. WESTWATER** |

---

[1] Acting Secretary McAleenan is automatically substituted for former Secretary Nielsen pursuant to Federal Rule of Civil Procedure 25(d).

# DECLARATION OF GISELA A. WESTWATER

I, Gisela A. Westwater, declare as follows:

1. I am an Assistant Director in the District Court Section of the U.S. Department of Justice's Office of Immigration Litigation. I am the lead attorney for the federal Defendants in their official capacities in the case entitled *Al Otro Lado, Inc. v. McAleenan*, No. 3:17-cv-02366-BAS-KSC, which is currently pending in the U.S. District Court for the Southern District of California. I submit this declaration in support of Defendants' portion of the joint motion regarding Plaintiffs' request to strike the declarations of Elaine Dismuke and Randy Howe (ECF Nos. 263-8 and 263-9). These statements are based upon my personal knowledge, my review of emails, letters, and other correspondences, and, where specifically noted, my discussions with my colleagues at the Department of Justice.

2. Defendants explained the undue burden of Plaintiffs' proposed discovery plan throughout the Rule 26(f) process. On February 19, 2019, at 11:21 PM (Eastern), Plaintiffs sent Defendants a letter that stated, in relevant part: "Plaintiffs intend to seek discovery regarding the factual allegations in their Second Amended Complaint—namely that defendants have engaged in an unlawful, widespread pattern, practice and policy of denying asylum seekers access to the asylum process at Ports of Entry on the U.S.-Mexico border through a variety of illegal tactics, including, but not limited to, coercion, verbal abuse, physical force, obstructing physical access, imposing unreasonable delays, and making false statements regarding lack of capacity as a pretext for denying access to the asylum process." Plaintiffs also sent Defendants 84 more Requests for Production ("RFPs") along with this February 19 letter, for a total of 109 RFPs. Plaintiffs proposed in the letter that the parties finish document discovery in this case by June 28, 2019, and that the parties finish all discovery in this case by August 30, 2019.

3. The parties held a Rule 26(f) conference on February 22, 2019. Defendants' counsel proposed at that conference that, in lieu of immediately responding to

Plaintiffs' 109 RFPs, the parties engage in targeted, prioritized discovery, whereby Defendants would search 3–5 custodians and several non-custodial sources for documents responsive to several highly relevant topics. Defendants' counsel informed Plaintiffs' counsel that this proposal was largely due to the constraints on Defendants' e-discovery resources, and that if Plaintiffs were not willing to agree to that targeted discovery proposal, Defendants would require approximately one year from the conclusion of RFP-related motions practice to complete their collection, review, and production of documents. Defendants' counsel also informed Plaintiffs' counsel that Plaintiffs' Requests for Production were considerably overbroad and were virtually certain to result in motions practice if Plaintiffs were unwilling to withdraw or amend them. Defendants' counsel also told Plaintiffs' counsel that it would be unduly burdensome to collect documents from all ports of entry along the U.S.-Mexico border.

4.  On March 5, 2019, Defendants returned a draft Joint Discovery Plan and Rule 26(f) Report to Plaintiffs that included, among other things, Defendants' proposed litigation schedule. Defendants proposed that document discovery be completed by January 31, 2020, and that all discovery be completed by March 31, 2020. Defendants explained in the March 5 draft that "Defendants' proposed discovery timelines take into account U.S. Customs and Border Protection (CBP)'s backlog in collection, processing, and production of ESI as a result of litigation workload, platform limitations, and the Government shutdown."

5.  Plaintiffs returned a draft Rule 26(f) Report to Defendants on March 7, 2019. Plaintiffs' March 7 draft included a proposal that the parties finish document discovery in this case by August 30, 2019, and that the parties finish all discovery in this case by September 27, 2019.

6.  Defendants returned another draft of the Rule 26(f) Report to Plaintiffs on March 8, 2019. Defendants again proposed that document discovery be complete

2

WESTWATER DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

by January 31, 2020, and that all discovery be complete by March 31, 2020. Defendants explained in their March 8 draft that, "[a]s to the pace of discovery, Plaintiffs' proposal is unrealistic. Contrary to Plaintiffs' assertions, the Government's discovery resources are not limitless. While the Government may have been ordered to respond to discovery requests on expedited bases in other cases, each time the Government is forced to respond in short order, it must divert resources from its other congressionally-mandated missions, thus prioritizing litigation at the expense of operations, and is also at the expense of discovery efforts in other pending litigation. Additionally, unlike private litigants, the Government is not easily able to contract for outside litigation support services, especially as here where the majority of discovery will focus on law enforcement sensitive information about operations at this nation's Ports of Entry and may also involve information falling under one of the Executive privileges. Counsel for Defendants spent a great deal of time talking with their clients about discovery in order to make a reasonable discovery plan. Defendants' proposed discovery timelines take into account CBP's backlog in collection, processing, and production of ESI as a result of litigation workload, platform limitations, and the Government shutdown. Defendants are prepared to discuss these constraints with the Court in greater detail during the scheduling conference if needed." Defendants also explained in that March 8 draft that "if the parties commence with broad scale discovery at this time, Defendants anticipate that the next few months will be spent in litigation over the proper scale and scope of discovery, and only after such issues have been resolved will Defendants be able to identify custodians, topics, and appropriate collection methodologies. Defendants simply do not have the resources to be moving on all fronts at the same time – reviewing and producing while objecting and litigating." Defendants also noted at various points throughout their March 8 draft that Plaintiffs' proposal was unworkable, unreasonable, and overly burdensome. This is the same explanation of Defendants' position

that appears in the Joint Discovery Plan and Rule 26(f) Report filed with the Court on March 8, 2019. *See* ECF No. 239 at 11–14, 22–29.

7. On March 12, 2019, the Court continued the Case Management Conference from March 15, 2019, to March 22, 2019. *See* ECF No. 240. The parties took the opportunity presented by the continuance to continue meeting and conferring about the scope and timing of discovery. At a March 15, 2019 meet-and-confer, Defendants' counsel again informed Plaintiffs' counsel that Plaintiffs' proposed case schedule was unworkable. Defendants' counsel stated that this was so because of the large volume of ESI and the large number of custodial (and non-custodial) sources that were implicated by Plaintiffs' document requests, because collecting and reviewing documents at the scale and speed of Plaintiffs' proposed discovery plan would distract DHS and CBP employees from their other constitutional and statutory obligations, and because of Defendants' counsel's similarly pressing obligations in the numerous other cases each attorney is handing. Defendants' counsel stated that Defendants' proposed targeted discovery plan was a method of reducing the number of custodians to a workable number. Defendants' counsel also explained that Defendants had significant relevance, proportionality, burden, and privilege objections to the breadth and number of Plaintiffs' 109 RFPs, and that Defendants' proposed discovery plan was more workable because it would alleviate many (but not all) of those issues.

8. Defendants also explained the scope of their e-discovery capabilities to Plaintiffs through the process of negotiating the ESI Protocol. For example, Plaintiffs' original proposed ESI Protocol identified only search terms as a method of collecting documents. Defendants' March 29, 2019 draft of the ESI Protocol included a proposed provision, under the heading "Procedures Regarding Document Collection," stating: "The parties reserve their rights to identify responsive documents through methods other than search terms, to include informed custodial self-identification." Defendants explained in the March 29 draft that Defendants "would

4

WESTWATER DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

1  like to maintain flexibility to use search terms to *collect* documents. Collecting
2  and processing documents prior to applying search terms could result in undue expense." At an April 2, 2019 meet-and-confer regarding the ESI Protocol, Plaintiffs
4  stated that they believed self-collection of documents to be insufficient, and that the
5  parties should exclusively use search terms to collect documents. Defendants again
6  explained that, depending on the volume, it would be extremely and unduly expensive to collect and process all documents from custodians with potentially responsive
8  information and then apply search terms to determine which documents were responsive. The parties thus agreed to include a provision allowing for informed custodial self-identification to identify responsive documents.

11     9.     As another example, one of the agreed-upon terms of the Protocol provides that a Producing Party shall provide to the Requesting Party a Hit Report of its proposed search terms "on its designated data sources, or on a sample from certain of those designated data sources. If a Producing Party elects to provide a Hit Report based on a sample from certain of those designated data sources, it shall disclose the data sources that were included and excluded from the sample, the time period of the sample, and any known facts that could skew the results shown in the sample (i.e., a custodian being on leave or a non-custodial source being taken offline for maintenance)." *See* ECF No. 251-2 at 7–8 (PageID.5267–68). Plaintiffs initially proposed in an April 4, 2019 draft of the ESI Protocol that: "In any event, the time period for any such sample shall be no shorter than 3 months." In an April 5, 2019 draft returned to Plaintiffs, Defendants stated in relevant part that: "We have investigated, and we cannot agree to three months of data based on processing capabilities. We may be able to agree to some shorter minimum time period, but we would have to invoke the flexibility paragraph if we couldn't get that volume processed under the timelines." Plaintiffs proposed in an April 8, 2019 draft of the Protocol to lower the three-month minimum timeframe to a two-month minimum timeframe. Defendants responded in an April 9, 2019 email that "we do not think this strict

requirement should be written into the protocol. As we have explained, the time and cost of processing makes it difficult or impossible for us to process certain larger volumes for search term testing. Thus, we do not agree to the language in the current draft. We are, however, willing to continue to discuss the proposed sample time frame with Plaintiffs." The draft of the ESI Protocol Defendants sent with this April 9 email similarly stated that: "Defendants are concerned that this requirement will render the search term testing contemplated in this protocol impossible due to the cost and time needed to process documents. We are willing to continue to discuss what may be possible, but do not think this term should be written in to the agreement." In a subsequent April 9, 2019 email, Plaintiffs did not request any additional information from Defendants about search term sampling, and instead stated simply: "Thanks for the explanation. On the time frame sampling issue, we believe that the best course is to write in language stating that the parties will continue to meet and confer on the time frame for sampling, as that correctly summarizes both parties positions. I added redlined language to that effect in the attached draft. Please let us know if the Government can agree to that language or if you have any edits." The redline edit in Plaintiffs' April 9 draft of the ESI Protocol states: "The parties will continue to meet and confer regarding the proper timeframe for such sampling."

10. Defendants also explained that Plaintiffs' 109 RFPs imposed an undue burden during their meet-and-confer efforts regarding those RFPs. Defendants served their first amended and supplemented objections and responses to Plaintiffs' First Set of RFPs (Nos. 1–25) on April 9, 2019, at 10:04 PM (Pacific), and their objections and responses to Plaintiffs' Second Set of RFPs (Nos. 26–109) on April 9, 2019, at 8:51 PM (Pacific). Defendants objected, amongst other grounds, on the basis that Plaintiffs' 109 RFPs imposed a significant undue burden, particularly in light of Plaintiffs' definition of "all documents."

11. On April 23, 2019, pursuant to an agreed-upon term of Section II of the parties' proposed ESI Protocol, Defendants served Plaintiffs with a list of custodians

6

WESTWATER DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

and non-custodial sources from which Defendants proposed collecting documents in response to Plaintiffs' 109 First and Second RFPs. Defendants identified 10 custodians, including the Director of Field Operations, San Diego Field Office, Office of Field Operations; the Acting Port Director, Hidalgo Port of Entry (Sept. 2018–Oct. 2018), Laredo Field Office, Office of Field Operations; the Acting Port Director, Hidalgo Port of Entry (Oct. 2018–Apr. 2019), Laredo Field Office, Office of Field Operations; the Executive Director, Admissibility and Passenger Programs, Office of Field Operations; the Executive Director, Operations, Office of Field Operations; the Director, Enforcement Programs Division, Admissibility and Passenger Programs, Office of Field Operations; a Watch Commander from the San Ysidro Port of Entry, San Diego Field Office, Office of Field Operations; and the Assistant Director, Intake and Analysis, Office of Professional Responsibility, Investigative Operations Division. Defendants also identified four non-custodial sources, including a shared drive from CBP's Office of Training and Development containing training materials; a sharepoint site from the Office of Field Operations containing post-academy training materials; a sharepoint site from the Office of Field Operations containing OFO's policy database; and a sharepoint site from the Office of Field Operations, Admissibility and Passenger Programs, Enforcement Programs Division containing the Enforcement Programs Division's policy database.

12. In an April 29, 2019 letter, Plaintiffs stated that the term "all documents" used in the overwhelming majority of Plaintiffs 109 RFPs "is intended to be, and should be read as, co-extensive with the possession, custody, or control standard articulated in Fed. R. Civ. P. 34(a)," and that the term "should be understood as being modified by the custodian, non-custodial source, and search term procedures contained in the ESI Order." Plaintiffs also agreed in this April 29, 2019 letter to the custodians and non-custodial sources Defendants proposed on April 23, but stated their belief that the list was "incomplete." Plaintiffs proposed adding at least 23 additional individual custodians, including former Secretary of Homeland Security

Kirstjen Nielsen, Acting Secretary of Homeland Security and Commissioner of U.S. Customs and Border Protection Kevin McAleenan, the chiefs of staff to both of those individuals, and individuals from more than a dozen more ports of entry along the U.S-Mexico border. Plaintiffs also proposed adding at least four more non-custodial sources, including sources containing "government contracts and bids for DHS or CBP," sources containing "statistics or figures relating to noncitizens seeking to access the U.S. asylum process," sources containing "complaints concerning, or disciplinary action taken against, CBP officers for denying or constructively denying noncitizens access to the U.S. asylum process"; and sources containing "drafts of reports and investigatory files of DHS OIG."

13. Defendants responded to Plaintiffs' proposal via letter on May 6, 2019. Defendant stated: "As stated during the parties' conference, Defendants initial list of custodians included individuals who Defendants determined after an initial investigation were most likely to possess responsive information related to the four Ports of Entry relevant to the allegations of the Named Plaintiffs (Hidalgo, Laredo, Otay Mesa, and San Ysidro). This list included key individuals from the Office of Field Operations (OFO) and the relevant Field Offices and/or Ports of Entry. Accordingly, Defendants maintain that their initial list of custodians and non-custodial sources is sufficiently comprehensive to conduct a reasonable and proportional search. Plaintiffs' proposal to add 24 additional individual custodians, in particular, far exceeds what is proportional to the needs of the case." Defendants nevertheless agreed to add four additional custodians, including the Assistant Director, Field Operations, Laredo Field Office (retired Sept. 2018), Office of Field Operations; the Executive Assistant Commissioner, Office of Field Operations; the Port Director of the San Ysidro Port of Entry and Port Director of the San Ysidro Port of Entry and of Passenger Operations at the Otay Mesa Port of Entry, San Diego Field Office, Office of Field Operations; and the Port Director, Hidalgo Port of Entry, Laredo Field Office, Office of Field Operations, for a total of 14 custodians. Defendants also agreed to

Case 3:17-cv-02366-BAS-KSC Document 268-2 Filed 06/07/19 PageID.6304 Page 10 of 12

1. add four additional non-custodial sources, including one source from CBP's Human Resources Management and three sources from DHS's Office of Inspector General, for a total of eight non-custodial sources.

14. Defendants also specifically explained in their May 6, 2019 letter why they did not agree to Plaintiffs' other proposed custodians and non-custodial sources. In particular, Defendants stated: "In accordance with their objections to the Requests for Production, Defendants will not be identifying custodians pertaining to Ports of Entry and Field Offices that are not related to the Named Plaintiffs' specific allegations. As explained, actions taken at those Ports of Entry are irrelevant to both class certification and the merits, because there is no representative Plaintiff that alleges any type of conduct related to these specific Ports of Entry. Further, the collection of documents from those Ports of Entry is extremely burdensome. Defendants have already identified 14 custodians from OFO Headquarters, the San Diego and Laredo Field Offices, and the four Ports of Entry at issue. Plaintiffs seek to add 14 additional custodians from other Ports of Entry and from the El Paso Field Office, which would likely greatly increase the volume of information and documents to be processed, reviewed, and searched, with no benefit to the resolution of the issues raised by Plaintiffs' complaint." Defendants also stated: "Similarly, Defendants do not agree that former Secretary Nielsen, Acting Secretary McAleenan, or their Chiefs of Staff are appropriate custodians in this matter. Evidence of policies, practices, or efforts taken by CBP should exist in the possession of the CBP custodians identified. Plaintiffs cannot show any reason to search the materials of high-ranking officials, particularly in light of Defendants' already-extensive proposed document collection."

15. Plaintiffs served their portion of Plaintiffs' Joint Motion for Determination of Discovery Dispute regarding Defendants' objections to Plaintiffs' First and Second RFPs on May 15, 2019, at 11:30 PM (Eastern). Plaintiffs' portion of the Joint Motion was not complete, in that Plaintiffs provided the text of the RFPs and the objections and responses in separate documents, instead of "includ[ing]" that text in

the Joint Motion, as required by this Court's Chambers Rule V.D. Plaintiffs did not provide Defendants with a complete version of their portion of the Joint Motion until May 23, 2019, at 10:33 AM (Eastern), the day before Defendants agreed to return their responsive portion. Defendants served their portion of the Joint Motion on Plaintiffs on May 24, 2019, at 7:52 PM (Eastern), as agreed by the parties.

16. Defendants sent Plaintiffs a letter on May 20, 2019, that included a list of 176 proposed search terms and an explanation of the manner in which those search terms would be applied to the documents of the fourteen agency custodians, as contemplated by the agreed-upon terms of the ESI Protocol. Defendants sent Plaintiffs a Hit Report contained in two Microsoft Excel spreadsheets (broken apart due to size) of the proposed search terms applied to six of the custodians identified in their May 20 letter on May 24, 2019, as contemplated by the agreed-upon terms of the ESI Protocol. Plaintiffs returned their proposed edits to Defendants on May 29, 2019. Plaintiffs did not respond to Defendants' May 6, 2019 letter explaining their position on custodians and non-custodial sources until May 29, 2019, when Plaintiffs' counsel sent an email stating, in relevant part: "Also, when will the Government be responding to our points below concerning custodians and non-custodial sources?" Plaintiffs, however, had not referred "below" or in other correspondences to custodians and non-custodial sources since Defendants' May 6 letter. When Defendants asked for clarification, Plaintiffs responded in relevant part on June 4, 2019—after having served Defendants' with their portion of this motion to strike (discussed below)—that: "Plaintiffs do not view the Government's proposed custodians, non-custodial sources, or search terms as being sufficient to search for documents responsive to the disputed requests in Plaintiffs' First and Second Set of Requests for Production. For instance, the Government has not yet provided any custodians from land ports of entry along the U.S.-Mexico border other than the San Ysidro, Otay Mesa, Hidalgo, and Lardeo ports of entry. Therefore, if the Court com-

pels or partially compels the Government to produce documents in response to Plaintiffs' First and Second Sets of Requests for Production, we propose that the parties meet and confer regarding supplemental custodians, non-custodial sources, and search terms to search for the compelled discovery materials."

17. On May 28, 2019, at 12:06 PM (Eastern), Plaintiffs sent Defendants an email stating: "Unless the Government withdraws Exhibits 5 and 6 (Dkt. Nos. 263-8 and 263-9, respectively) to the recently-filed Declaration of Gisela Westwater, Plaintiffs intend to file a joint motion requesting that the Court strike them." Plaintiffs' counsel asked Defendants' counsel to meet and confer on Plaintiffs' motion less than three hours later, at 3:00 PM (Eastern). Defendants' counsel agreed, and the parties met and conferred via telephone. Because of the short notice, I was not able to attend this meet-and-confer, but my colleagues Katherine J. Shinners, Sairah G. Saeed, Alexander J. Halaska, and Dhruman Y. Sampat were present for Defendants. My colleagues inform me that Plaintiffs did not state that they intended to seek fees in relation to this motion; that Plaintiffs did not state that they intended to make arguments against the substance of the Dismuke or Howe declarations; and that Plaintiffs did not ask for Defendants' position on a motion to file a reply to address their issues with the Dismuke and Howe declarations. Plaintiffs served their portion of this motion to strike on Defendants on May 29, 2019.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. This declaration was executed on June 7, 2019, in Washington, D.C.

                      */s/ Gisela A. Westwater*
                      GISELA A. WESTWATER