MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:   +1.202.263.3300


*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*,<br><br>              Plaintiffs,<br><br>      v.<br><br>Kevin K. McAleenan,[1] *et al.*,<br><br>              Defendants. | Case No.:  17-cv-02366-BAS-KSC<br>Hon. Karen S. Crawford<br><br>[DISCOVERY MATTER]<br><br>**JOINT MOTION REGARDING PLAINTIFFS' REQUEST TO COMPEL LIMITED CLASS-WIDE DISCOVERY**<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**<br><br>[***Declarations of Stephen M. Medlock and Katherine J. Shinners Filed Concurrently***] |

---

[1] Acting Secretary McAleenan is automatically substituted for former Secretary Nielsen pursuant to Fed. R. Civ. P. 25(d).

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, DC 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

CENTER FOR CONSTITUTIONAL
RIGHTS
  Baher Azmy  (NY Bar No. 2860740)
  (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz  (NY Bar No. 3030087)
  (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688)
  (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Mary Bauer (VA Bar No. 31388)
  (*pro hac vice*)
  *mary.bauer@splcenter.org*
1000 Preston Ave.
Charlottesville, VA
  Sarah Rich (GA Bar No. 281985)
  (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309)
  (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113)
  (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, DC 20005

Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

## PLAINTIFFS' ARGUMENT

### I.   INTRODUCTION

On July 29, 2019, the Court largely denied the Government's motion to dismiss, finding that Plaintiffs have plausibly alleged that the Government has implemented a border-wide policy of turning back asylum seekers at ports of entry along the U.S.-Mexico border. *See* Dkt. 278 at 58-65.  On August 1, 2019, the Court denied without prejudice Plaintiffs' Joint Motion for Determination of Discovery Dispute (Dkt. 263) and directed the parties to meet and confer further regarding the scope of discovery in light of the Court's motion to dismiss opinion (Dkt. 278).  *See* Dkt. 279.  The parties have done so, and have substantially narrowed their disputes concerning the scope of discovery.

However, the Government maintains that the scope of discovery should be limited to four ports of entry ("POEs") on the U.S.-Mexico border and U.S. Customs and Border Protection's ("CBP's") Office of Field Operations ("OFO").   The Government's argument for doing so is that (a) the only ports of entry that are relevant are the ports that the named plaintiffs attempted to transit, (b) if a border-wide turnback policy existed, evidence of such a policy would be manifest in the documents that the Government has already agreed to produce, and (c) that producing border-wide discovery would be unduly burdensome and not proportionate to the needs of the case.

These arguments are baseless.  Class-wide discovery is plainly relevant. Plaintiffs allege a putative class that is border-wide, the Court has found those allegations to be plausible, and Plaintiffs are entitled to take discovery on those allegations.

Moreover, contrary to the Government's assumption, discovery is not limited to the existence of a turnback policy.  Discovery is also needed to determine whether the requirements of Rule 23(a) and 23(b) can be satisfied, including whether the

treatment of asylum seekers at a particular port of entry is similar to the treatment of asylum seekers at other POEs.  To determine whether the Rule 23(a) and 23(b) factors are met in this case, Plaintiffs need discovery from more than four POEs and the OFO.

Finally, the discovery that Plaintiffs are seeking from other POEs is not unduly burdensome or disproportionate.  Plaintiffs have offered to limit discovery from other POEs to four custodians.  During meet-and-confers with Plaintiffs, the Government has provided no evidence that discovery from these four custodians would be burdensome in any way.

## II.   PLAINTIFFS' MEET-AND-CONFER EFFORTS

Pursuant to Fed. R. Civ. P. 26(d)(2), Plaintiffs delivered their First and Second Sets of Requests for Production to the Government on February 19, 2019.  Medlock Decl. ¶¶ 4-5.  On April 9 and 10, 2019, the Government served its responses and objections to Plaintiffs' requests for production.  *Id.* at ¶ 6.  In their April 2019 responses to Plaintiffs' First and Second Sets of Requests for Production, the Government claimed that discovery should be limited to four POEs on the U.S.-Mexico border (San Ysidro, Otay Mesa, Hidalgo, and Laredo) and CBP's Office of Field Operations.  The Government asserts the same general objection:

> Defendants object to each and every Request to the extent that it requests or appears to request information related to all ports of entry along the U.S.-Mexico border as not proportional to the needs of the case, overly broad, and unduly burdensome.  The claims in this action relate only to aliens arriving or attempting to arrive at four specific ports of entry on the U.S.-Mexico border: San Ysidro, Otay Mesa, Laredo, and Hidalgo.  As no class exists in this action, such requests go beyond the scope of the specific claims and allegations at issue.  Further, the burden of searching for, collecting, reviewing, and producing documents related to all ports of entry along the U.S.-Mexico border

would be disproportional to the needs of the case.  As Defendants explained during the parties' meet-and-confer, Plaintiffs allege a border-wide practice, policy, and/or procedure; discovery from the four ports of entry where the named Plaintiffs allegedly encountered such a practice, policy, and/or procedure (or a subset thereof), in addition to discovery from select higher-level officials and centralized non-custodial sources, satisfies the needs of the case, as any evidence of a border-wide practice, policy, and/or procedure, if it exists, would necessarily be found in such locations.  Any discovery from other ports of entry along the U.S.-Mexico border would be duplicative and unduly burdensome.   Defendants therefore understand and construe these Requests as seeking discovery limited to the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry, and will search for and produce only relevant and non-privileged documents relating to aliens arriving or attempting to arrive at these four ports of entry, and documents from the Office of Field Operations Headquarters.  Defendants' responses to each and every Request will be limited consistent with this general objection.  However, should Defendants locate responsive documents related to other ports of entry, Defendants will not withhold or redact those documents on the basis of this objection alone.

Gov'ts Objs. to Pltfs' Second Set of RFPs at Gen. Obj. 4; *see also* Gov'ts Objs. to Pltfs' Second Set of RFPs at Gen. Obj. 5 (asserting same objections and limitations).[2]

After receiving the Government's responses and objections, the parties began a series of telephonic meet-and-confers that spanned late April 2019 and early May 2019.  Medlock Decl. ¶ 7.  The parties were unable to resolve several disputes concerning the scope of discovery and ultimately presented them to the Court on

---

[2] The exact wording of each requests in Plaintiffs' First and Second Sets of Requests for Production are replicated at pages 63-300 of Dkt. 263.

May 24, 2019, in a joint motion. *See* Dkt. 263; Medlock Decl. ¶ 7. The Government's submission in that joint motion included two fact witness declarations that were not previously disclosed to Plaintiffs, despite Plaintiffs requests. *See* Dkt. 268. Plaintiffs moved to strike these declarations. *See id.*

On July 15, 2019, while the May 24, 2019 joint motion was still pending, Plaintiffs offered to limit the scope of discovery from custodian outside of the San Ysidro, Otay Mesa, Hidalgo, and Laredo POEs to the following four custodians:

- Hector Mancha, Director of Field Operations, El Paso Field Office;
- Tater G. Ortiz, Port Director, Brownsville Port of Entry;
- Michael Humphries, Port Director, Nogales Port of Entry; and
- David Salazar, Port Director, Calexico Port of Entry.[3]

Medlock Decl. ¶ 8. Plaintiffs' rationale for these five additional custodians was simple: a large number of asylum seekers have attempted to present themselves at the Brownsville, Nogales, Calexico, and El-Paso-area POEs and been turned away by CBP officers. *Id.* at ¶ 9. The port directors and director of field operations for those ports will have information concerning the implementation of the Turnback Policy at those POEs. *Id.* In subsequent discussions concerning these four proposed custodians, the Government has never denied that these proposed custodians possess information relevant to Plaintiffs' claims.

On July 17, 2019, the Government rejected Plaintiffs' proposal, stating that the joint motion was "still pending" and that the Government already had "enough on [its] plate." Medlock Decl. ¶ 10.

On July 29, 2019, the Court substantially denied the Government's motion to dismiss Plaintiffs' Second Amended Complaint. *See* Dkt. 278. On July 31, 2019, Plaintiffs wrote to the Government requesting that the Government withdraw some of the arguments raised in the May 24, 2019 joint motion in light of the Court's

---

[3] In addition, Plaintiffs proposed that the Government should produce documents in the possession, custody, and control of Jud Murdock, the Acting Assistant Commissioner of CBP, from a limited time period in 2018. The Government ultimately agreed to this request.

motion to dismiss opinion.  Medlock Decl. ¶ 11.  Before the Government could respond to Plaintiffs' request, the Court issued an order denying the May 24, 2019 joint motion without prejudice.  *See* Dkt. 279.  In light of the Court's motion to dismiss opinion, the parties were "directed to revisit, by way of the meet and confer process, their respective positions concerning" the May 24, 2019 joint motion.  *Id.* at 2.  The Court also ordered that "[t]he meet and confer process is to resume forthwith."  Dkt. 279 at 2.  The Court also directed the parties to not file a renewed joint motion "until the parties have thoroughly met and conferred regarding all disputed issues."  *Id.*

That same day, Plaintiffs' counsel reached out to the Government's counsel to set up a meet-and-confer.  Medlock Decl. ¶ 12.  The parties met and conferred via telephone on August 12, 2019.  *Id.* at ¶ 13. During this telephone conference, the parties were able to significantly narrow their disputes concerning the scope of discovery.  *Id*.  However, the parties continue to dispute whether the scope of discovery should be limited to four POEs (San Ysidro, Otay Mesa, Laredo, and Hidalgo) and the OFO, or if Plaintiffs could seek limited discovery from other POEs.  *Id*.

On August 22, 2019, the Government sent a letter to Plaintiffs that further limited the scope of the parties' disputes.  The Government "maintain[ed] that discovery relating to other ports of entry [was] improper and/or disproportionate to the needs of the case, and is thus unduly burdensome."  Medlock Decl. at ¶ 14.

## C.   THE GOVERNMENT SHOULD PRODUCE LIMITED CLASS-WIDE DISCOVERY

The issues presented by this renewed joint motion are narrow: (1) Are documents in the possession, custody, and control of the four custodians proposed by Plaintiffs relevant to the claims and defenses in the litigation?  (2) Would producing those documents be proportional to the needs of the case?  (3) Has the Government presented evidence proving that it would be unduly burdensome to

produce documents from those four custodians?  As shown below, the answers to these questions demonstrate that the Government should be compelled to produce documents from Plaintiffs' proposed four additional custodians.

The Government's rationale for limiting discovery to these four POEs and the OFO does not withstand scrutiny.  *First*, the Government claims that, until a class is certified, the only POEs that are relevant are the ports that the named plaintiffs attempted to transit.  But that ignores the allegations in the Plaintiffs' Second Amended Complaint—Plaintiffs plead a class that encompasses all of the POEs that are capable of processing noncitizens seeking asylum in the United States.  *See* Dkt. 189 at ¶ 236.  The Court has found these allegations, and most of the Second Amended Complaint, plausible.  Plaintiffs should be allowed to take limited discovery concerning POEs beyond San Ysidro, Otay Mesa, Hidalgo, and Laredo. *Second*, the Government claims that discovery from San Ysidro, Otay Mesa, Hidalgo, Laredo, and the OFO should be sufficient to determine whether the Turnback Policy exists.  But this ignores the fact that Plaintiffs also need discovery concerning the Rule 23(a) and 23(b)(2) factors to determine whether the Government had a common policy of turning back asylum seekers at POEs other than San Ysidro, Otay Mesa, Hidalgo, and Laredo.  *Third*, citing general allegations regarding the number of CBP employees, the Government claims that border-wide discovery will be unduly burdensome and not proportionate to the needs of the case. However, the Government ignores the fact that Plaintiffs have agreed to limit the scope of discovery from other POEs to the following four CBP employees:

- Hector Mancha, Director of Field Operations, El Paso Field Office;
- Tater G. Ortiz, Port Director, Brownsville Port of Entry;
- Michael Humphries, Port Director, Nogales Port of Entry; and
- David Salazar, Port Director, Calexico Port of Entry.

Accordingly, the Government's arguments should be rejected and the Court should order the Government to produce documents from these four custodians.

### A.   PLAINTIFFS' NARROW REQUEST FOR CLASS-WIDE DISCOVERY IS RELEVANT

There is no doubt that Plaintiffs' narrowed request for class-wide discovery is relevant to the allegations and defenses in this case.  The Federal Rules of Civil Procedure authorize parties to obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  "Information within the scope of discovery need not be admissible in evidence to be discoverable." *Id.*  "The party resisting discovery generally bears the burden to show that the discovery requested is irrelevant to the issues in the case or is not proportional to the needs of the case.  If the resisting party meets its burden, then the burden shifts to the moving party to show the information is relevant and necessary." *Kellgren v. Petco Ani. Supplies, Inc.*, 2016 WL 4097521, at *2 (S.D. Cal. 2016); *see also Henderson v. Holiday CVS, L.L.C.*, 269 F.R.D. 682, 686 (S.D. Fla. 2010) ("The party resisting discovery has a heavy burden of showing why the requested discovery should not be permitted.").

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence."  *Old Chief v. United States*, 519 U.S. 172, 178 (1997).  Therefore, "[t]he question of relevancy should be construed liberally and with common sense and discovery should be allowed unless the information sought has no conceivable bearing on the case." *Solo v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (citation omitted); *see also Ghorbain v. Guardian Life Ins. Co. of Am.*, 2016 U.S. Dist. LEXIS 116132, at *3 (W.D. Wash. 2016) ("The court should and ordinarily does interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation.") (citation omitted).

Plaintiffs require discovery from the Government in order to determine if "there are questions of fact or law common to the class."  Fed. R. Civ. P. 23(a)(2).  This means that Plaintiffs must show that their claims "depend on a common

contention such that 'determination of it truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke.'" *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588-89 (9th Cir. 2012). Therefore, "[w]hat matters to class certification . . . [is] the capacity of a classwide proceeding to generate common answers apt to drive resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). But "[d]issimilarities within the proposed class . . . have the potential to impede the generation of common answers." *Id.* Discovery from Plaintiffs' proposed custodians will show whether there are dissimilarities within the class based on the POE where the putative class members attempted to present themselves. For example, this discovery will show whether the class representatives' treatment at the San Ysidro, Otay Mesa, Hidalgo, and Laredo POEs is similar to the Government's treatment of other noncitizens seeking asylum at other ports of entry. By taking the position that Plaintiffs are not entitled to discovery as broad as their class definition, the Government is attempting to deny Plaintiffs the very discovery that would support a motion for class certification. Plaintiffs are entitled to class-wide discovery to test whether the Rule 23(a) factors are satisfied in this case.

## B.  THE GOVERNMENT'S CLAIM THAT DISCOVERY FROM FOUR POES AND THE OFO SHOULD BE SUFFICIENT MISSES THE MARK

The Government's rejoinder is that, even if discovery from other POEs might be relevant, it is overkill. The Government argues that the existence and implementation of the Turnback Policy should be apparent through discovery from the San Ysidro, Otay Mesa, Hidalgo, and Laredo POEs and the OFO.

But the existence of the Turnback Policy is not the only subject that is within the scope of discovery in this case. In order to certify a class, a plaintiff must prove that the elements of Fed. R. Civ. P. 23(a) are met and that the defendant "acted or refused to act on grounds that apply generally to the class, so that final injunctive

relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiff must "satisfy" this requirement "through evidentiary proof." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Under Rule 23(b)(2), a plaintiff "need not demonstrate every member of the class has suffered from an adverse effect." *Lyon v. U.S. Immigration & Customs Enf't*, 171 F. Supp. 3d 961, 983 (N.D. Cal. 2016). "It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). *See also* William B. Rubenstein, et al. *Newberg on Class Actions* § 4:28 (5th ed. 2018) ("certification of a Rule 23(b)(2) class is proper despite the fact that not all class members may have suffered the injury posed by the class representatives so long as the challenged policy or practice was generally applicable to the class as a whole."). Therefore, a plaintiff seeking to certify a Rule 23(b)(2) class must show that the defendant "engaged in a 'common policy.'" *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 599 (N.D. Cal. 2015).

As a result, Plaintiffs require discovery from other POEs to determine whether the Government implemented a common policy with respect to asylum seekers attempting to present themselves for inspection at POEs along the U.S.-Mexico border. This discovery will show, amongst other things, whether port directors at other POEs were given so much discretion in implementing the Government's metering policy that those POEs effectively adopted different policies with respect to asylum seekers. Or, as the Plaintiffs contend, the evidence may show that the Government adopted a common policy with respect to asylum seekers that was implemented globally at POEs along the U.S.-Mexico border. In either case, Plaintiffs are plainly entitled to this discovery.

## C.   PLAINTIFFS' PROPOSED LIMITED CLASS-WIDE DISCOVERY IS PROPORTIONATE AND NOT BURDENSOME

In response to Plaintiffs' requests, the Government raises a familiar bogeyman—citing general statistics regarding the number of CBP employees and number of documents that the Government has already agreed to review—the Government claims that it simply has too much on its plate and cannot review additional documents.  This is not the case.

"The party claiming undue burden 'must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence.'" *Acosta v. Wellfleet Commc'ns, LLC*, 2018 WL 664779, at *8 (D. Nev. 2018) (quoting *Jackson v. Montgomery Ward & Co., Inc.*, 173 F.R.D. 524, 528-29 (D. Nev. 1997)). "Conclusory or speculative statements of harm, inconvenience, or expense are plainly insufficient." *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 2016 WL 4071988, at *4 (D. Nev. 2016).  "The fact that production of documents would be burdensome and expensive and would hamper a party's business operation is not a reason for refusing to order production of relevant documents. . . .  The standard is whether the burden and expense is 'undue' and whether the hardship is unreasonable in light of the benefits to be secured from the discovery." *Acosta,* 2018 WL 664779, at *8.

Similarly, parties are entitled to discovery that is relevant, non-privileged, and "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b).  The party that objects that the burden of the proposed discovery outweighs its likely benefit must provide "information concerning [the] burden or expense" of the proposed discovery.  *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 2017 WL 2267149, at *1 (E.D. La. 2017) (denying

1   proportionality objection).

2      In this case, Plaintiffs have addressed the Government's proportionality and

3   burden concerns by limiting their requests for discovery from POEs other than San

4   Ysidro, Otay Mesa, Laredo, and Hidalgo to four custodians.  This will not be, as the

5   Government has insinuated, an open-ended search through the files of all CBP

6   employees at all POEs.   In the meet-and-confers between the parties, the

7   Government has not presented any evidence that would indicate that document

8   discovery from Plaintiffs' proposed four additional custodians would be unduly

9   burdensome or that the burden of such discovery outweighs the benefits of such

10  discovery.  Nor has the Government provided Plaintiffs with any information about

11  whether the documents in the possession of Plaintiffs' proposed custodians would

12  be duplicative of documents that the Government has already collected from other

13  custodians.  In short, the Government has provided *no* evidence suggesting that

14  discovery from Plaintiffs' four additional custodians would be burdensome in any

15  way.

16      The Government argues that it has already collected over 3 million documents

17  from the 14 custodians and 8 non-custodial sources that the parties have previously

18  agreed upon, and that this will result in the Government reviewing approximately

19  200,000 documents for privilege and confidentiality.  But this is merely a complaint

20  about the discovery that the Government *has already agreed to produce*.   The

21  Government has not offered any facts concerning the burden that will be associated

22  with collecting, reviewing, and producing documents from the four custodians at

23  issue in this motion.  The Government merely speculates that adding these four

24  custodians "will substantially increase the already heavy burden" on the

25  Government.  Medlock Decl. ¶ 14.  But this conclusory statement, which nearly any

26  defendant in complex litigation could make, is not sufficient to demonstrate that

27  Plaintiffs' proposed discovery is unduly burdensome or disproportionate.  *See, e.g.*,

28  *Nationstar Mortg., LLC*, 2016 WL 4071988, at *4.  As a result, the Government's

proportionality and burden arguments regarding Plaintiffs' request for limited discovery from other POEs should be rejected.

### D.   CONCLUSION

For the foregoing reasons, the Court should order the Government to produce limited class-wide discovery from Plaintiffs' proposed four additional custodians.

## **DEFENDANTS' ARGUMENT**

## I.   INTRODUCTION

The title of Plaintiffs' motion is a misnomer.  Defendants have already agreed to provide pre-certification "classwide" discovery regarding Plaintiffs' allegations of a so-called "Turnback Policy" that applies at land ports of entry (POEs) along the U.S.-Mexico Border.[4]  Defendants are providing wide-ranging discovery relating to whether that alleged policy exists, as well as to whether class certification is appropriate under Federal Rule of Civil Procedure 23(a).  Defendants are providing document discovery from: relevant CBP headquarters officials; non-custodial sources concerning trainings and policies that apply across the U.S-Mexico border; field office officials from the San Diego and Laredo Field offices; and officials from the particular POEs at which the named Plaintiffs sought to enter the United States (San Ysidro, Otay Mesa, Laredo, and Hidalgo).  This discovery should be more than sufficient to determine whether defendants engaged in a "common policy" that applies at land POEs on the U.S.-Mexico border and whether that policy is implemented in the same or similar way, and for the same or similar reasons, at each and every POE.  Indeed, Plaintiffs have never adequately explained why this discovery is insufficient at this pre-certification stage or beyond.

---

[4] Plaintiffs appear to argue that "the OFO" is a separate entity from any of these POEs.  That is incorrect.  CBP's Office of Field Operations (OFO) operates at all POEs across the southwest border and across the United States.  *See* Howe Decl. ¶¶ 3-5.  Defendants have agreed to produce documents form the San Ysidro, Otay Mesa, Laredo, and Hidalgo POEs (all of which fall under OFO control), as well as OFO headquarters.

Plaintiffs claim they need particularized discovery from some POEs to show whether the putative class representatives' experience is typical of other putative class members' experiences. Yet Plaintiffs have yet to provide any specific reason why they need particularized discovery from ports beyond the four POEs already at issue.  Indeed, Plaintiffs implicitly acknowledge that obtaining discovery from each and every POE along the U.S.-Mexico border is not proportionate to the needs of the case.   Thus, the Court should accept Defendants' reasonable limitation on particularized discovery to those POEs that are actually implicated by the putative class representatives' allegations.

## II.   BACKGROUND: PLAINTIFFS' CLAIMS AND ALLEGATIONS.

In their Complaint, Plaintiffs allege that Defendants have engaged in a "Turnback Policy," an alleged "formal policy to restrict access to the asylum process at POEs by mandating that lower-level officials directly or constructively turn back asylum seekers at the border."  Second Am. Compl. (ECF Dkt. No. 189) ¶ 3. Plaintiffs allege that CBP officials implement this policy in various ways, "including through pretextual assertions that POEs lack capacity to process asylum-seekers." Order on Motion to Dismiss (ECF Dkt. No. 278), at p. 3 (citing Second Am. Compl. ¶¶ 3, 48-83).  To challenge this alleged policy, Plaintiffs bring five causes of action, but they all boil down to two types of challenges.  First, Plaintiffs assert a claim under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(C) and (D), alleging that the "Turnback Policy"—either an official policy or a high-level sanctioning of certain conduct—exceeds statutory authority or is without observance of procedure required by law.  *See* Second Am. Compl. ¶¶ 271-282; Order on Motion to Dismiss at pp. 49-51.  Plaintiffs also assert a claim under the APA, 5 U.S.C. § 706(1), that asks the Court to compel "agency action unlawfully withheld or unreasonably delayed," and which challenges "alleged failures by CBP officers to discharge certain mandatory statutory duties" through individual acts, supposedly in implementation of the "Turnback Policy."  Order on Motion to Dismiss at pp. 28,

51; Second Am. Compl. ¶¶ 257-69.

## III.   BACKGROUND: THE SCOPE OF DEFENDANTS' CURRENT DOCUMENT COLLECTION.

As recounted in prior briefing and filings before this Court, the parties have engaged in extensive negotiations about the scope of Defendants' search for documents in response to Plaintiffs' First, Second, and Third Sets of Requests for Production of Documents (RFPs).  As of this date, the parties have agreed on 15 custodians, 9 non-custodial sources, and 203 search terms to be applied to documents from many of those sources.  ECF Dkt. No. 284-2, 8/30/19 Shinners Decl. ¶¶ 6-8, 20; Declaration of Katherine J. Shinners, September 4, 2019 (9/4/19 Shinners Decl.) ¶¶ 9-10.[5]  These custodians include six CBP headquarters custodians, the Directors of Field Operations for the San Diego and Laredo Field Offices responsible for the four POEs at issue, as well as Port Directors or other officials from those four POEs. 8/30 Shinners Decl. ¶¶ 6-8; 9/4/19 Shinners Decl. ¶ 9.  The non-custodial sources include, among others, central repositories for CBP policy and training documents. 8/30 Shinners Decl. ¶ 6.

The resulting volume from this search, which spans from January 2016 to the varying dates of collection, is extremely large. Examining emails alone, Defendants have collected almost three million email messages from 14 of the 15 agreed-upon custodians.  *See* 8/30 Shinners Decl. ¶ 22.  Based on the information they have at this time, *see id.* ¶¶ 20, 24, Defendants project that there may be as many as 200,000 documents that will need to be reviewed for privilege and confidentiality before production.  *See* ECF No. 284 at p. 28.

---

[5] As part of ongoing discussions regarding Plaintiffs' various RFPs, Defendants recently agreed to add another search term, to conduct a limited collection from an additional headquarters custodian, Jud Murdock, former Acting Assistant Commissioner of CBP's Office of Intelligence, and to collect data from another non-custodial source, CBP's Consolidated Secondary Inspection System. Declaration of Katherine J. Shinners, September 4, 2019 (9/4/19 Shinners Decl.) ¶¶ 9-10.

## IV. THE COURT SHOULD REJECT PLAINTIFFS' BID TO UNNECESSARILY EXPAND THE SCOPE OF PRE-CERTIFICATION DISCOVERY.

Discovery must be relevant and proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  Further, a court has broad discretion to "limit the scope of any discovery method if it determines that 'the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  *Gusman v. Comcast Corp.*, 298 F.R.D. 592, 595 (S.D. Cal. 2014) (quoting Fed. R. Civ. P. 26(b)(2)(C)(i)).  In this pre-certification stage, "Plaintiffs bear the burden of either making a prima facie showing that Rule 23 class action requirements are satisfied or that discovery is likely to produce substantiation of the class allegations."  *Aldapa v. Fowler Packing Co., Inc.*, 310 F.R.D. 583, 588 (E.D. Cal. 2015) (citing *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985)).  While the District Court has broad discretion as to whether to allow pre-certification discovery, "the need for discovery, the time required, and the probability of discovery providing *necessary* factual information" are also relevant factors 'bearing on the correctness of the trial court's exercise of discretion [to allow pre-certification discovery].'" *A.A. v. Cty. of Riverside*, No. 14-cv-2556, 2016 WL 10576640, at *3 (C.D. Cal. Mar. 14, 2016) (quoting *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977)) (emphasis added). Here, Plaintiffs have not shown that pre-certification discovery from four additional custodians—beyond the 24 custodians and non-custodial sources that Defendants have already agreed to provide—is necessary or justified in the context of this case.

As explained above, Defendants have always agreed to provide discovery regarding border-wide, headquarters-level policies and procedures that are relevant to Plaintiffs' allegations and apply at all land ports of entry along the U.S.-Mexico border—to the extent such policies and procedures exist.  Defendants have also agreed to provide discovery regarding the application or implementation of any

relevant policies and relevant port-specific practices at the four ports of entry that are the subject of the allegations of the putative class representatives (San Ysidro, Otay Mesa, Hidalgo, and Laredo). For this reason, Defendants have worked with Plaintiffs to designate custodians and non-custodial sources that relate to border-wide policies, practices, and procedures, as well as custodians that relate to the four ports of entry and their respective field offices. The scope of Defendants' search, and the resulting volume of documents for review, is extremely large.

Plaintiffs cannot show that they need broader discovery to support their motion for class certification. Defendants thus maintain that discovery relating to other ports of entry is improper and/or disproportionate to the needs of the case, and is unduly burdensome. This is illustrated by an examination of Plaintiffs' claims. To the extent Plaintiffs are challenging a borderwide "policy" under the APA, 5 U.S.C. § 706(2), or through other causes of action, the challenge is to the legality of the border-wide policy or practice itself—which would emanate from headquarters components and be communicated to all ports of entry and/or field offices—and not to the particular application of that policy at particular ports.

By contrast, to the extent Plaintiffs are claiming unreasonable delay or withholding of agency action under 5 U.S.C. § 706(1) of the APA or other causes of action, this challenge is to individual instances of conduct and requires a fact-specific inquiry into the application of a policy to particular individuals at particular ports. *See Telecomms. Research and Action Center v. F.C.C.*, 750 F.2d 70, 79–80 (D.C. Cir. 1984); Order on Motion to Dismiss (ECF Dkt. No. 278) at p. 51 ("[I]ndividual turnbacks … are appropriately considered under Section 706(1)."). Yet the individual Plaintiffs can only represent *similarly situated* individuals in a Rule 23(b)(2) class. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) ("'[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977))); Fed. R. Civ. P.

23(b)(2) (plaintiffs must show that defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."). Accordingly, any material difference in the implementation of any border-wide policy between the *four ports at issue* would defeat Plaintiffs' ability to certify a borderwide class on their "unreasonable delay" claim. Thus, even if the Court were to determine that Plaintiffs were entitled to some particularized discovery from particular ports regarding the implementation of the claimed borderwide policy, Plaintiffs have not shown why they need particularized discovery from ports beyond San Ysidro, Otay Mesa, Hidalgo, and Laredo.[6]   Any such discovery would be unnecessarily duplicative for purposes of class certification. For these reasons, the Court should decline Plaintiffs' request to expand the already-broad scope of Defendants' search for documents at this stage. *See Aldapa*, 310 F.R.D. at 589 (explaining that the court has "discretion in controlling the scope of pre-certification discovery to balance Plaintiffs' need for discovery to substantiate their class allegations and concerns regarding overly burdensome discovery requests" and limiting pre-certification discovery to a subset of the putative class to reduce the burden on Defendants); *Romo v. GMRI, Inc.*, No. EDCV-12-0715-JLQ, 2013 WL 11310656, at *2 (C.D. Cal. Jan. 25, 2013) (the "scope of pre-certification discovery is not unlimited" and courts have "broad discretion to limit discovery" that could be obtained from some less burdensome source); *Gusman*, 298 F.R.D. at 596 (limiting production of information despite the court agreeing that the information was relevant because "production . . . would impose an undue burden on [defendant] in light of the other available means of obtaining the relevant information [regarding

---

[6] Defendants do not intend to use primary documents in opposition to class certification that they are not producing to Plaintiffs. Accordingly, Defendants will rely primarily on documents and evidence from headquarters and the two field offices and four ports of entry at issue. Defendants may use documents or related evidence that concern other ports, to the extent such documents were produced to Plaintiffs (for example, a document that provides information about all ports within the Laredo field office).

1  numerosity]").

2       For the same reason, any additional burden imposed by the discovery sought

3  is undue because the discovery is not proportional to the needs of the case at this

4  stage. Defendants have previously submitted declarations addressing the particular

5  burdens involved in collecting documents from additional ports of entry.  As set

6  forth in the declaration of Elaine Dismuke, eDiscovery Team Lead at CBP, the task

7  of simply collecting all emails from a particular custodian is labor-intensive and

8  time-consuming.  Ex. 2, Dismuke Decl. ¶¶ 4-5.  Further, processing those additional

9  documents for the application of search terms is complicated by the fact that the

10  server housing CBP's eDiscovery tool is low on space.  *Id.* ¶¶ 11-14.  Accordingly,

11  "any increase in the number of custodians would lead to significant expenses and

12  would significantly increase the time it would take to complete discovery in this

13  case." *Id.* ¶ 15.  And, as explained by Randy Howe, Executive Director, Operations,

14  CBP Office of Field Operations, adding custodians from additional ports of entry is

15  "not … likely to yield significant additional relevant information beyond what is

16  currently being collected from OFO headquarters."  Ex. 3, Howe Decl. ¶ 10.   As

17  Mr. Howe explains, "each POE is in regular contact with OFO headquarters" and

18  "[e]mail communications from the field regarding metering and queue management

19  procedures which may occur at the ports of entry will be collected as part of the

20  discovery from headquarters custodians."  *Id.*  Discovery from additional POEs

21  "would be largely duplicative and would not . . . be likely to uncover significant

22  additional relevant information[.]"  *Id.*  Accordingly, the burden of collecting this

23  discovery outweighs any possible marginal benefit that it could provide, particularly

24  in light of the substantial impact any additional discovery would have on

25  Defendants' litigation and operational resources. *See* Fed. R. Civ. P. 26(b)(1).

26       Given the substantial breadth of Defendants' current search for documents

27  responsive to the First, Second, and Third Sets of RFPs, that additional discovery

28  from particular ports of entry is thus not necessary for purposes of determining

whether the class certification factors are met, and that such discovery will be burdensome and largely duplicative of the discovery already sought, the Court should deny Plaintiffs' request to add four more custodians.  Defendants' current search is sufficient for discovery relevant to the class certification factors, as they are providing discovery that goes both to the existence and contours of the claimed "policy," as well as its implementation at four particular ports.

Dated:  September 5, 2019                          MAYER BROWN LLP
                                                                   Ori Lev
                                                                   Matthew H. Marmolejo
                                                                   Stephen M. Medlock

                                                                   SOUTHERN POVERTY LAW
                                                                   CENTER
                                                                   Melissa Crow
                                                                   Mary Bauer
                                                                   Sarah Rich
                                                                   Rebecca Cassler

                                                                   CENTER FOR CONSTITUTIONAL
                                                                   RIGHTS
                                                                   Baher Azmy
                                                                   Ghita Schwarz
                                                                   Angelo Guisado

                                                                   AMERICAN IMMIGRATION
                                                                   COUNCIL
                                                                   Karolina Walters


                                                                   By  */s/ Stephen M. Medlock*


                                                                   *Attorneys for Plaintiffs*


                                                                   JOSEPH H. HUNT
                                                                   Assistant Attorney General
                                                                   Civil Division

                                                                   WILLIAM C. PEACHEY

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Director, Office of Immigration
Litigation
District Court Section

*s/ Katherine J. Shinners*
KATHERINE J. SHINNERS
Senior Litigation Counsel
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259 | Fax: (202) 305-
7000
katherine.j.shinners@usdoj.gov

ALEXANDER J. HALASKA
SAIRAH G. SAEED
Trial Attorneys

*Counsel for Defendants*

JOINT MOTION TO COMPEL LIMITED
CLASS-WIDE DISCOVERY

## CERTIFICATE OF COMPLIANCE WITH MEET-AND-CONFER REQUIREMENT

I certify that on August 12, 2019 the counsel for the parties met and conferred via telephone to discuss the dispute raised in this joint motion.  This conference occurred via telephone because counsel were located in New York and the District of Columbia.  The parties were unable to resolve the dispute presented in this motion.

Dated:  September 5, 2019                                MAYER BROWN LLP

By  */s/ Stephen M. Medlock*
*Attorney for Plaintiffs*

# CERTIFICATE OF SERVICE

I certify that I caused a copy of the foregoing document to be served on all counsel via the Court's CM/ECF system.

Dated:  September 5, 2019                    MAYER BROWN LLP


By  */s/ Stephen M. Medlock*

*Attorney for Plaintiffs*

JOINT MOTION TO COMPEL LIMITED
CLASS-WIDE DISCOVERY