JOSEPH H. HUNT
Assistant Attorney General, Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259 | Fax: (202) 305-7000
katherine.j.shinners@usdoj.gov
SAIRAH G. SAEED (IL 6290644)
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorneys

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | Hon. Karen S. Crawford |
| v. | **DECLARATION OF KATHERINE J. SHINNERS** |
| KEVIN K. McALEENAN,[1] Acting Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*, | |
| *Defendants* | |

---

[1] Acting Secretary McAleenan is automatically substituted for former Secretary Nielsen pursuant to Federal Rule of Civil Procedure 25(d).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF KATHERINE J. SHINNERS

I, Katherine J. Shinners, declare as follows:

1.      I am Senior Litigation Counsel in the District Court Section of the U.S. Department of Justice's Office of Immigration Litigation. I am an attorney for the federal Defendants in their official capacities in the case entitled *Al Otro Lado, Inc. v. McAleenan*, No. 3:17-cv-02366-BAS-KSC, which is currently pending in the U.S. District Court for the Southern District of California. I submit this declaration in support of Defendants' opposition to Plaintiffs' request to "compel limited classwide discovery."  These statements are based upon my personal knowledge and my review of emails or other correspondence.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of my August 30, 2019 Declaration, previously submitted at ECF Docket No. 284-2.

3.      Attached hereto as **Exhibit 2** is a true and correct copy of the Declaration of Elaine Dismuke dated May 24, 2019, previously submitted at ECF Docket No. 263-8.

4.      Attached hereto as **Exhibit 3** is a true and correct copy of the Declaration of Randy Howe dated May 24, 2019, previously submitted at ECF Docket No. 263-9.

5.      On July 15, 2019, via email, while Plaintiffs' initial joint motion for determination of the instant discovery dispute was pending (*see* ECF Dkt. No. 263), Plaintiffs' counsel stated that they were "willing to limit the scope of custodians outside of the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry," and proposed four field custodians and one headquarters custodian to add to the agreed-upon custodian list.

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

6.      On July 15, 2019, Defendants responded by email, stating: "The Court stated that this dispute is still pending before the Court and that Defendants already have 'enough on their plate.' Is this a narrowed proposal to be considered after Judge Crawford rules on that pending motion? If so, while Defendants appreciate the narrowed proposal, the parties previously agreed that they would negotiate your proposed custodians after such a ruling, because Defendants may then need to pull back on collection from other custodians in order to maintain feasible parameters for document review."

7.      On July 26, 2019, Defendants reiterated this statement and further explained:

> Given that the parties' dispute is still pending before Judge Crawford, and that Judge Crawford stated at the July 12 Status Conference that Defendants already have "enough on their plate," Defendants will not agree at this time to add five more custodians. There is a substantial burden imposed by seeking documents from additional custodians, and Defendants maintain that a search for documents from other ports of entry or field offices is not legally proper at this stage. Nor is it clear why Plaintiffs are seeking to add another headquarters official at this stage of negotiations. Further, Defendants chose their current custodians based on their investigation into which individuals were most likely to possess responsive documents. Thus, even if Defendants were to agree to expanded discovery, Defendants would need to conduct the same investigation as to each Port/Field Office from which Plaintiffs seek to obtain discovery as they have with the agreed upon Ports/Field Offices; Defendants have not yet evaluated whether Plaintiffs' chosen custodians would be proper custodians and to do so would divert already limited resources.

8.      After the Court denied the prior joint motion without prejudice, the parties met and conferred via telephone on August 12, 2019, concerning discovery disputes arising from Defendants' responses to Plaintiffs' First and Second Sets of Requests for Production.

9.      In an August 22, 2019 letter, in response to the discussions at the August 12, 2019 meet-and-confer and to further narrow the areas of dispute,

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

Defendants agreed to conduct a limited collection from one of Plaintiffs' proposed additional custodians, Jud Murdock, for the period of October 1, 2018, through December 31, 2018. Defendants also agreed to add one search term to the parameters of their current search for documents responsive to Plaintiffs' First, Second, and Third Sets of RFPs.

10.   On August 15, 2019, Defendants sent Plaintiffs a proposal stating that they agreed to collect data from Customs and Border Protection's Consolidated Secondary Inspection System in response to Plaintiffs' Third Set of RFPs.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. This declaration was executed on September 5, 2019, in Washington, D.C.

*/s/ Katherine J. Shinners*
KATHERINE J. SHINNERS

Exhibit 1

1  JOSEPH H. HUNT
2  Assistant Attorney General, Civil Division
   WILLIAM C. PEACHEY
3  Director, Office of Immigration Litigation
   District Court Section
4  GISELA A. WESTWATER (NE 21801)
5  Assistant Director
6  KATHERINE J. SHINNERS (DC 978141)
   Senior Litigation Counsel
7  United States Department of Justice
8  Civil Division
   Office of Immigration Litigation
9  District Court Section
10 P.O. Box 868, Ben Franklin Station
   Washington, D.C. 20044
11 Tel: (202) 598-8259 | Fax: (202) 305-7000
12 katherine.j.shinners@usdoj.gov
13 SAIRAH G. SAEED (IL 6290644)
   ALEXANDER J. HALASKA (IL 6327002)
14 Trial Attorneys
15 *Counsel for Defendants*
16

17         **UNITED STATES DISTRICT COURT**
         **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
18                  **(San Diego)**

19 AL OTRO LADO, Inc., *et al.*,          Case No. 3:17-cv-02366-BAS-KSC
20              *Plaintiffs*,
                                          Hon. Karen S. Crawford
21
             v.
22                                        **DECLARATION OF KATHERINE J.**
23 KEVIN K. McALEENAN,[1] Acting Secre-   **SHINNERS**
   tary, U.S. Department of Homeland Secu-
24 rity, in his official capacity, *et al.*,
25              *Defendants*
26

27 ─────────────────
   [1] Acting Secretary McAleenan is automatically substituted for former Secretary
28 Nielsen pursuant to Federal Rule of Civil Procedure 25(d).

## <u>DECLARATION OF KATHERINE J. SHINNERS</u>

I, Katherine J. Shinners, declare as follows:

1.      I am Senior Litigation Counsel in the District Court Section of the U.S. Department of Justice's Office of Immigration Litigation. I am an attorney for the federal Defendants in their official capacities in the case entitled *Al Otro Lado, Inc. v. McAleenan*, No. 3:17-cv-02366-BAS-KSC, which is currently pending in the U.S. District Court for the Southern District of California. I submit this declaration in support of Defendants' portion of the joint motion regarding Plaintiffs' request to set certain deadlines for production of documents.  These statements are based upon my personal knowledge, my review of Defendants' document productions, my review of Defendants' document review platform, my review of emails, letters, and other cor-respondence, and, where specifically noted, discussions with colleagues at the De-partment of Justice (DOJ) or with employees of U.S. Customs and Border Protection (CBP) or the Department of Homeland Security's Office of the Inspector General (OIG).

2.      Attached hereto as **Exhibit 1** is a true and correct copy of Defendants' Active Learning Protocol, dated July 11, 2019.

3.      Attached hereto as **Exhibit 2** is a true and correct copy of the Declara-tion of Scott Falk, Chief Counsel for CBP.

4.      Attached hereto as **Exhibit 3** is a true and correct copy of the Declara-tion of Gisela Westwater, previously submitted at ECF Docket No. 268-2.

***Negotiating the Scope of Discovery in Response to Plaintiffs' First and Sec-ond Sets of Requests for Production***

5.      Defendants served their first amended and supplemented objections and responses to Plaintiffs' First Set of RFPs (Nos. 1–25) on April 9, 2019, at 10:04 PM (Pacific), and their objections and responses to Plaintiffs' Second Set of RFPs (Nos. 26–109) on April 9, 2019, at 8:51 PM (Pacific).

1

6.     On April 23, 2019, pursuant to Section II of the parties' proposed ESI Protocol, Defendants served Plaintiffs with a list of custodians and non-custodial sources from which Defendants proposed collecting documents in response to Plaintiffs' 109 requests in their First and Second RFPs. Defendants identified 10 custodians, including the Director of Field Operations, San Diego Field Office, Office of Field Operations; the Acting Port Director, Hidalgo Port of Entry (Sept. 2018–Oct. 2018), Laredo Field Office, Office of Field Operations; the Acting Port Director, Hidalgo Port of Entry (Oct. 2018–Apr. 2019), Laredo Field Office, Office of Field Operations; the Executive Director, Admissibility and Passenger Programs, Office of Field Operations; the Executive Director, Operations, Office of Field Operations; the Director, Enforcement Programs Division, Admissibility and Passenger Programs, Office of Field Operations; a Watch Commander from the San Ysidro Port of Entry, San Diego Field Office, Office of Field Operations; and the Assistant Director, Intake and Analysis, Office of Professional Responsibility, Investigative Operations Division. Defendants also identified four non-custodial sources, including a shared drive from CBP's Office of Training and Development containing training materials; a sharepoint site from the Office of Field Operations containing post-academy training materials; a sharepoint site from the Office of Field Operations containing OFO's policy database; and a sharepoint site from the Office of Field Operations, Admissibility and Passenger Programs, Enforcement Programs Division containing the Enforcement Programs Division's policy database.

7.     In an April 29, 2019 letter, Plaintiffs agreed to the custodians and non-custodial sources Defendants had proposed on April 23, but stated their belief that the list was "incomplete." Plaintiffs proposed adding 24 additional individual custodians, including individuals from more than a dozen more ports of entry along the U.S.-Mexico border. Plaintiffs also proposed adding at least four more non-custodial sources.

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

8.      Defendants responded to Plaintiffs' proposal via letter on May 6, 2019. Defendants stated: "As stated during the parties' conference, Defendants initial list of custodians included individuals who Defendants determined after an initial investigation were most likely to possess responsive information related to the four Ports of Entry relevant to the allegations of the Named Plaintiffs (Hidalgo, Laredo, Otay Mesa, and San Ysidro). This list included key individuals from the Office of Field Operations (OFO) and the relevant Field Offices and/or Ports of Entry. Accordingly, Defendants maintain that their initial list of custodians and non-custodial sources is sufficiently comprehensive to conduct a reasonable and proportional search. Plaintiffs' proposal to add 24 additional individual custodians, in particular, far exceeds what is proportional to the needs of the case." Defendants nevertheless agreed to add four additional custodians, including the Assistant Director, Field Operations, Laredo Field Office (retired Sept. 2018), Office of Field Operations; the Executive Assistant Commissioner, Office of Field Operations; the Port Director of the San Ysidro Port of Entry and of Passenger Operations at the Otay Mesa Port of Entry, San Diego Field Office, Office of Field Operations; and the Port Director, Hidalgo Port of Entry, Laredo Field Office, Office of Field Operations, for a total of 14 custodians. Defendants also agreed to add four additional non-custodial sources, including one source from CBP's Human Resources Management division and three sources from DHS's Office of Inspector General, for a total of eight non-custodial sources.

9.      Defendants sent Plaintiffs a letter on May 20, 2019, disclosing their list of 176 proposed search terms and an explanation of how Defendants intended collect documents from their 22 data sources (including whether and how search terms would be applied to those data sources).  Defendants stated in that letter:

> Defendants request that the parties meet and confer regarding these search terms on Monday, June 3. Defendants thus intend to provide a Hit Report on or before Friday, May 24, 2019, which will be based on a sample from certain of these designated data sources to generate a

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

Hit Report as defined in the [ESI] Protocol. That sample includes emails from six custodians dating from January 1, 2016 through approximately February 2019. These custodians are those six custodians identified in Defendants' initial targeted discovery proposal described in the Parties' Supplemental Joint Discovery Plan (ECF No. 243), at pages 16-17: Pete R. Flores; David P. Higgerson; Alberto A. Flores; David John Gonzalez; Todd A. Hoffman; and Mariza Marin.

10.     On May 24, 2019, Defendants sent Plaintiffs, via email, a hit report contained in two Microsoft Excel spreadsheets (broken apart due to the number of search terms) of Defendants' proposed search terms as applied to the document sample containing the emails of six of Defendants' custodians.

11.     On May 29, 2019, Plaintiffs sent Defendants, via email, a counter-proposal of 226 separate search terms. Plaintiffs proposed adding new search terms and significantly expanding 104 of the existing search terms.

12.     On June 6, 2019, the parties met and conferred regarding Plaintiffs' proposed search terms. Defendants explained at the conference that they could not accept many of Plaintiffs' proposed terms because they substantially increased the volume for review with little to no benefit to the discovery of relevant material. However, Defendants' counsel stated that Defendants would analyze whether they could further modify Plaintiffs' proposed terms in an effort to reach agreement.

13.     On June 10, 2019, Plaintiffs sent Defendants, via email, an excel spreadsheet to use to track the parties' negotiations over search terms.

14.     On June 11, 2019, the parties met and conferred by telephone regarding various discovery-related issues. At that conference, Plaintiffs advised that they anticipated proposing additional search terms should the Court rule in their favor on certain pending discovery disputes. Due to the volume of documents involved, and given that the time and cost of processing documents increases with volume, Defendants' counsel had been waiting to reach agreement on search terms before beginning the process of exporting the majority of documents to be uploaded onto the review platform. At this point, however, Defendants determined not to wait for

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

search terms to be finalized to proceed with processing, exporting, and uploading large volumes of documents to the review platform, and to apply search terms after those documents had been uploaded to the review platform. Defendants also began considering using Relativity's "Active Learning" tool, a form of technology-assisted review, to assist with responsiveness review.

15. On June 14, 2019, after conducting additional testing and analysis, Defendants provided Plaintiffs with their response to Plaintiffs' May 29, 2019 search-term proposal. Defendants accepted 49 of Plaintiffs' proposed search terms, and made counter-proposals on many others.

16. On June 17, 2019, Plaintiffs provided Defendants with another counter-proposal that again proposed additional modifications to numerous terms. Before Defendants could assess whether to accept those terms as modified, they needed to analyze them and run volume/hit reports for those terms to determine whether they could accept them. Due to the complexity of the searches, the volume of documents to be searched, and competing priorities, obtaining those volume reports took time.

17. On June 25, 2019, Defendants provided Plaintiffs with their response to Plaintiffs' June 17 proposal. Defendants accepted 19 of Plaintiffs' proposed terms and made counter-proposals on several others. Further, as a result of a meet-and-confer between the parties that same day, Defendants agreed to further analyze and consider two of Plaintiffs' proposed search terms.

18. On July 15, 2019, Plaintiffs provided Defendants with their response to Defendants' proposals, which rejected most of Defendants' proposals.

19. After conducting further analysis of Plaintiffs' proposed search terms, Defendants responded to Plaintiffs' July 15, 2019 proposal by email dated July 30, 2019, accepting the majority of Plaintiffs' proposals, with the caveat that Defendants reserve the right to revisit their agreement on those terms should Defendants be unable to proceed with their Active Learning protocol, as described further below and attached hereto as Exhibit 1.

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

20.     The parties ultimately agreed on 202 search terms on July 31, 2019.  I used the search term reporting tool in the DOJ Civil Division review platform in Relativity 9.6, to apply these agreed search terms to the emails of 8 custodians that have been uploaded to that review platform (constituting 2,470,121 total documents, counting emails and attachments).  The application returns approximately 22% of the total documents, including family members (constituting 536,639 total documents).

21.     At a July 25, 2019 conference regarding Defendants' responses to Plaintiffs Third Set of Requests for Production of Documents (which Defendants served on July 15, 2019), Plaintiffs stated that they may seek to add search terms based on their Third Set of Requests.

***Defendants' Document Collection, Processing, and Review***

22.     According to information provided to me by Elaine Dismuke, eDiscovery Team Lead, Security Operations Division, Cyber Security Directorate, Office of Information and Technology, Enterprise Services, CBP, CBP has collected emails from the 14 agreed-upon custodians for the time period beginning January 1, 2016. The number of email messages collected from each custodian are as follows:

| Custodian/Source | Volume (Email message count) |
|---|---|
| Sidney Aki | 273,977 |
| Frank S. Longoria | 79,789 |
| Carlos Rodrigues | 839,367 |
| Todd Owen | 265,358 |
| Andres Guerra | 170,180 |
| Luis Mejia | 186,260 |
| Randy Howe | 330,451 |
| Bryan Molnar | 35,646 |
| David John Gonzalez | 70,170 |
| David Higgerson | 95,817 |
| Alberto Flores | 153,215 |
| Pete Romero Flores | 156,575 |

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

| Mariza Marin | 172,173 |
| Todd Hoffman | 85,034 |
| TOTAL | **2,914,012** |

Ms. Dismuke informed me that the message count reflects the number of email messages, and does not count each family member/item attached to the email message. On August 22, 2019, Defendants told Plaintiffs via letter: "Defendants have already collected almost 3 million email messages from the 14 agreed-upon custodians. This figure counts email families and thus does not reflect the individual item/document count, which is much higher."

23.     Defendants are using DOJ Civil Division's Relativity 9.6 review platform ("review platform") to review and, if necessary, redact documents for production.

24.     Based on my knowledge and review of the workspace in the review platform, the emails from the following eight custodians for the full time range have been uploaded to the review platform: Todd Hoffman, Randy Howe, Bryan Molnar, David John Gonzalez, Andres Guerra, Pete Romero Flores, Alberto Flores, and Luis Mejia.  Additionally, emails from custodians Maria Marin and David Higgerson dating from April 1 to April 30, 2018, have also been uploaded for review.  After application of search terms, the total number of documents from these sources that are subject to responsiveness review is 536,639.

25.     Based on my conversations with colleagues at DOJ, individuals on CBP's e-discovery team, and individuals at DHS OIG, I understand that emails from the following custodians and documents from the following non-custodial sources are currently being processed for uploading to the review platform: Sidney Aki; Carlos Rodrigues; Mariza Marin; Todd Owen; Frank S. Longoria; CBP's Human Resources Business Engine; DHS OIG's Shared Drive; and DHS OIG's Enterprise Data System.

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

***Defendants' Use of Active Learning to Assist with Responsiveness Review***

26.    As noted above, in June 2019, Defendants began considering using Relativity's Active Learning tool to assist with responsiveness review of CBP documents.

27.    Defendants advised Plaintiffs via email on July 2, 2019, that they intend "to use Active Learning to assist in responsiveness review of a subset of the ESI after application of search terms.  In accordance with the agreed-upon terms of the ESI Protocol, we will disclose Defendants' Active Learning protocol.  We anticipate being able to provide the Active Learning Protocol next week."

28.    Defendants further discussed with Plaintiffs their planned use of Active Learning at a July 10, 2019 telephone conference.

29.    On July 11, 2019, Defendants provided their Active Learning Protocol (attached hereto as Exhibit 1) to Plaintiffs via email.

30.    Defendants provided additional information about Defendants' use of Active Learning to Plaintiffs via email on July 19 and August 9, 2019, and at a telephone conference on July 22, 2019.

31.    As explained in the Active Learning Protocol attached as Exhibit 1 hereto, in Active Learning, knowledgeable individuals ("Subject Matter Experts") manually code documents for responsiveness to train the Active Learning tool. There are currently six Subject Matter Experts from CBP reviewing documents for responsiveness to train the Active Learning tool.

32.    As also explained in the Active Learning Protocol, documents that are manually coded as responsive or that are ranked as highly relevant by Active Learning are being released for privilege and confidentiality review.  Defendants are currently prioritizing privilege and confidentiality review of documents from custodians Todd Hoffman and Randy Howe.

***Defendants' Document Productions***

33.    On March 29, April 18, April 19, April 23, April 29, and May 14, 2019,

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

Defendants produced approximately 200 pages of organizational charts, at CBPALOTRO00000150 to CBPALOTRO00000298; CBPALOTRO00000300 to CBPALOTRO00000302; and DHSALOTRO00000054 to DHSALOTRO00000092.

34.   On April 29, 2019, Defendants produced CBP's April 2018 guidance regarding metering or queue management, at CBP-ALOTRO00000299.

35.   The parties then agreed that Defendants will make rolling productions at least every four weeks, beginning on July 3, 2019.

36.    On July 3, 2019, Defendants produced non-confidential documents, including records retention schedules, congressional testimony, and budget documents, at AOL-DEF-00000001 to AOL-DEF-00004217.

37.   On July 8, 2019, Defendants produced the A files for the individual Plaintiffs, at AOL-DEF-00004218 to AOL-DEF-00005290 and DHSALOTRO00000093 to DHSALOTRO00001766.

38.   On July 12, 2019, Defendants produced various non-confidential documents, including records retention schedules, at AOL-DEF-00005291 to AOL-DEF-00010190.

39.   On July 31, 2019, Defendants produced emails from various custodians from April 2018, at AOL-DEF-00010191 to AOL-DEF-000101894.

40.   On August 16, 2019, Defendants produced emails from various custodians from April 2018, at AOL-DEF-00010895 to AOL-DEF-00011999.

41.   On August 28, Defendants produced emails from custodian Todd Hoffman spanning the relevant time period, at AOL-DEF-00012000 to AOL-DEF-00013947.

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

***The Parties' Correspondence and Conferences Related to the Defendants'
Document Production Schedule***

42.   On Friday, June 28, 2019, Plaintiffs sent an email to Defendants asking
among other things: "When does the government anticipate that its production of
documents in response to Plaintiffs' First and Second Sets of Requests for Produc-
tion will be complete?"

43.   On Tuesday, July 2, 2019, Defendants stated in response to Plaintiffs'
counsel:

> With respect to your questions regarding an end date for document
> production, we did previously give you an end date: January 31,
> 2020.  As discussed at our meet and confer on June 11, 2019, this is
> the date Defendants set forth in the Parties' Joint 26(f) Report (ECF
> No. 243).  Defendants' responses to Plaintiffs' Document Requests
> contemplate that Defendants' search for documents will be based on
> the parameters of a negotiated search.  Thus, we did not give a differ-
> ent end date in those responses, because the parties have not yet
> agreed upon those parameters and several disputes are pending before
> the Court.  But we did advise Plaintiffs' counsel on June 11, 2019,
> that we are maintaining the January 31, 2020 deadline set forth in the
> Parties' Joint 26(f) until we are able to provide a more refined dead-
> line.

44.   In that same email, Defendants also advised Plaintiffs' counsel of the
delay Defendants were experiencing in preparing and processing documents for re-
view:

> Because of the volume of ESI (660,000 email messages from the first
> six CBP custodians), the process of preparing and processing docu-
> ments for review has taken longer than anticipated.  We had hoped to
> save processing time and cost by applying search terms to those
> emails before preparing them for review, but we were not able to be-
> cause the parties' negotiations on search terms are ongoing, and be-
> cause Plaintiffs indicated at our June 11, 2019 meet and confer that
> they will have additional search strings to propose should outstanding
> discovery disputes be resolved in their favor.  Accordingly, due to the

10

volume of emails, processing these documents for review is time-consuming and is being done on a rolling basis, beginning with those first six custodians.

45.   Defendants further advised Plaintiffs in that July 2, 2019, email that they were intending "to use Active Learning to assist in responsiveness review of a subset of the ESI after application of search terms.  In accordance with the agreed-upon terms of the ESI Protocol, we will disclose Defendants' Active Learning protocol.  We anticipate being able to provide the Active Learning Protocol next week."

46.   Plaintiffs stated in an email dated July 2, 2019, 11:35 p.m. (ET) that "we appear to be at an impasse regarding the timeline for the Government's document production. … Particularly since the Government intends to use both search terms and active learning, the Government should be able to complete its production of document[s] much earlier than January 31, 2020.  Instead, the Government should complete its production of documents by October 1, 2019."  Plaintiffs went on to state: "Because it appears we are at an impasse on this issue, we propose … the Government and Plaintiffs meet and confer tomorrow by telephone regarding this matter … ."

47.   Defendants responded in an email dated July 3, 2019, in which Defendants agreed to have "at least an initial meet and confer" that same day, and further stated "it seems to us that the parties may be able to reach some middle ground on issues relating to document production.  We have given you the January 31, 2020 end date, but we have also stated that we hope to provide a refined end date as we understand more about the volume."  Defendants stated in another response email that same date that they "are not proposing prioritization as a 'smoke screen' to delay production of documents – we are offering to work with Plaintiffs to at least try to prioritize certain sources or documents, all in the context of moving forward with the collection of the agreed-upon documents from agreed-upon sources."

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

48.    At the July 3 conference, Plaintiffs explained the relief they planned to seek, including that the deadline they sought was for "substantial completion" of document production and would not include the time needed to prepare the privilege log.

49.    At the July 3 conference, Defendants explained that they could not stipulate to the October 1, 2019 deadline because, based on the projected volume of ESI and their resources, they did not believe they could meet that deadline.  Defendants also asked if there were sources or categories of documents that Plaintiffs propose for prioritization such that the parties could perhaps negotiate other production benchmarks that the parties could agree to.  Plaintiffs responded that they believed Defendants were in a better position to propose prioritization methods.

50.    On July 9, 2019, Defendants informed Plaintiffs that they "may rely on [substantive] declarations to support their opposition to Plaintiffs' motion to set a deadline of October 1, 2019" and that they "anticipate that if Defendants submit declarations those declarations will relate to the facts we have discussed or set forth at many points regarding the government's constraints."  On July 10, 2019, the parties had an additional telephonic conference regarding the factual bases for Defendants' opposition to Plaintiffs' request for an October 1, 2019 deadline.  At that conference, Defendants further explained the delays they were experiencing regarding the processing of documents to export and upload those documents to the review platform.  Defendants again invited Plaintiffs to identify particular custodians for prioritization.  Defendants also explained, among other things, that their opposition to a motion to set a deadline for substantial completion of document production may be based on the competing demands on CBP and DOJ attorneys' time and the time needed to conduct privilege and confidentiality review.

51.    On July 10, 2019, Plaintiffs sent Defendants their portion of a joint motion to set an October 1 Deadline for completion of document production.

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

52. On July 15, 2019, Plaintiffs sent Defendants an email proposing that the parties agree to an October 1 Deadline for completion of document production.

53. On July 19, 2019, Defendants responded via email as follows:

> Defendants' alternate proposed date for substantial completion of document production in response to the First and Second RFPs, based on the currently agreed-upon custodians and search terms, is December 20, 2019. This is an estimate of the time needed for completion based on the information we have at this time, and accounting for the substantial volume of documents that Defendants are collecting and reviewing from 22 different custodians and non-custodial sources from two different components. As you know, we currently estimate that at least half a million documents will be subject to review after the application of the currently agreed-upon search terms. We do not yet know if that figure is accurate, nor do we yet know the general responsiveness rate for that collection, which will greatly influence the amount of time needed for privilege and confidentiality review.

54. On July 22, 2019, the parties conferred regarding Defendants' Active Learning protocol. At that conference, the parties discussed the parties' ongoing negotiations regarding Defendants' document production schedule. Defendants suggested that the parties could potentially agree to certain phased production deadlines, but explained that it would be very difficult for Defendants to agree to particular deadlines for documents that are subject to Active Learning.

55. On July 26, 2019, Defendants proposed the following phased production schedule:

> As we discussed, although Defendants' best estimate for substantial complete of document production from the currently agreed-upon sources and using currently agreed-upon search terms remains December 20, 2019, Defendants offered to come up with a phased schedule for completion of production from particular sources at earlier dates. Accordingly, Defendants propose as follows:
> a. Defendants would substantially complete production of responsive, non-privileged case files from HRBE and EDS on or before September 25, 2019.

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

b.      Defendants would substantially complete production of respon-
sive, non-privileged documents from CBP non-custodial sources 1-4
(see attached letter) on or before October 23, 2019.
c.      Defendants would substantially complete production of respon-
sive, non-privileged documents from DHS OIG Shared Drive on or
before November 20, 2019.
d.      Defendants' review and production from other sources would
continue on a rolling basis on the previously-agreed four-week inter-
vals, with substantial completion of document production from all
agreed-upon sources by December 20, 2019.
Of course, any efforts devoted to review and production from one
source will necessarily divert resources from review of other sources,
but Defendants wanted to offer these interim deadlines to try to find
some area of agreement and to provide more certainty to Plaintiffs as
to when production from particular sources could be completed.

56.     On July 30, 2019, Plaintiffs sent a counter-proposal to Defendants via email.  That counter-proposal included, among other things, a proposal that "De-fendants shall substantially complete production of responsive, non-privileged doc-uments from Randy Howe, Todd Hoffman, Todd Owen, Carlos Rodrigues, and Sid-ney Aki on or before September 6, 2019."

57.     On August 2, 2019, Defendants responded by email, stating that:

Defendants cannot agree to this [September 6] deadline.  Among other
reasons already discussed, we are still in the process of collecting
and/or uploading emails from some of these custodians.  More im-
portantly, while we can seek to prioritize review of these custodial
sources over others once they are uploaded to the review platform, we
cannot agree that we will "substantially complete" production from
any custodians by September 6 (or any date before December 20,
2019), because their data is part of Active Learning review, and we do
not yet know when training of the program will be complete, nor do
we know the volume of documents for privilege and confidentiality
review (which, as discussed at our July 10 conference and at various
other points, takes substantial time to complete, in part due to the
prevalence of privilege issues for law enforcement agencies and the
fact that we often need to extensively consult with clients or third par-
ties).

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

1

2          58.    On August 15, 2019, as the parties continued to negotiate other dead-

3    lines, Defendants again advised Plaintiffs via email that they were unable to agree

4    to a September deadline for the emails from Randy Howe, Todd Hoffman, Todd

5    Owen, Carlos Rodrigues, and Sidney Aki.  Defendants stated: "Defendants already

6    set forth the practical reasons they are unable to agree to this deadline.  Defendants

7    can prioritize privilege and confidentiality review of documents from these custodi-

8    ans over other documents from other custodians, however."

9          59.    Plaintiffs served their portion of a "Joint Motion to Compel Govern-

10   ment's Timely Production of Documents" at 10:21 p.m. ET on Monday, August 19,

11   2019.

12         I declare under penalty of perjury that the foregoing is true and correct to the

13   best of my knowledge. This declaration was executed on August 30, 2019, in Wash-

14   ington, D.C.

15

16                              /s/ Katherine J. Shinners
                               KATHERINE J. SHINNERS

17

18

19

20

21

22

23

24

25

26

27

28

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

Exhibit 2

# Defendants' Exhibit 5

## Declaration of Elaine Dismuke

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

Al Otro Lado, *et al.*,                             )
      *Plaintiffs,*                          )
                         )
                         )
v.                                                  )          No. 3:17-cv-02366-BAS-KSC
                         )
Kevin McAleenan, *et al.*,                          )
      *Defendants.*                          )
_____ )

**DECLARATION OF ELAINE DISMUKE**

      I, Elaine Dismuke, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows, relating to the above-captioned matter:

1.   I am currently the eDiscovery Team Lead, Security Operations Division, Cyber Security Directorate, Office of Information and Technology, Enterprise Services, U.S. Customs and Border Protection ("CBP"). I have held this position since January 2011. I graduated from the University of Maryland in 1973 with a BS in Biology and was ITIL certified in 2006. My specialized training includes, but is not limited to: CISA Training in 2016, Clearwell Admin Training in 2014, Exchange 2007 Server Training in 2009, Exchange 2003 Server training in 2007, ITIL Foundations, Version 3 in 2008, Implementing and Managing MS Server with Exchange Server in 2003, Basic Outlook/Exchange Support in 2006, Lotus 6 Administration – Server and User Support Training in 2005, Lotus R5 training in 2005, Cc:Mail Administration and User Support in 1998 and Softswitch –mainframe training in 1998.

2. The OIT eDiscovery team is responsible for, among other things, conducting centralized searches of email for CBP and its subcomponents. I manage a team of 5 individuals, and currently have 104 open, active cases.

3. I am familiar with the case of *Al Otro Lado v. McAleenan*, as it is one of my current open cases. My team has collected the emails from six custodians that form the basis for the search term analysis and hit report that I understand will be provided to Plaintiffs.

## *General eDiscovery Process and Resource Constraints*

4. As an initial matter, CBP does not have the tools in place to easily conduct an agency-wide search of employee emails. CBP emails are currently archived by a third-party contractor. The contractor maintains these emails on a series of "journal" servers, which keep a copy of every email sent or received by any CBP employee in chronological order. Thus, in order to search the emails of a particular individual, those emails must first be collected and stored on a server. These servers are then searchable by time period, custodian, and keyword, but not by mailbox. Thus, to search for emails from a particular custodian for a particular keyword for a particular year, the servers must crawl through *all* CBP emails for that *entire* year—a massive amount of data. CBP generates approximately 1.5 Million messages a day, which amounts to about 110 terabytes of email data per year. Accordingly, a single custodian/keyword search for even the approximately three and a half-year period from January 2016 to the present would require the journal servers to crawl through about 350 terabytes of data.

5. These estimates do not take into account the fact that CBP is in the process of migrating off of Email as a Service (journaled email) to Office 365. Thus, emails are being migrated into this system, and any searches for emails must include both Office 365 and non-Office 365

2

searches.  In order to collect emails from a particular custodian, my team therefore must essentially run two searches – one over the journaled emails, and another over the Office 365 server.  While these searches can be run concurrently, downloading the messages from Office 365 can take several hours.  This therefore increases the time for running a particular search.

6.   Searches are generally conducted on a platform called Discovery Accelerator, which is a tool to run the searches and then store exported data.  Data is generally stored for approximately 45 days.  While searches in Discovery Accelerator generally take between six and eight hours to run per custodian/keyword, the speed of the searches depends on many factors, such as network connectivity/bandwidth, the amount of traffic on CBP's email services, and the complexity of the underlying searches.  The more complicated the search, the longer it takes to process the request, with a real possibility of network connectivity issues.

7.   While Discovery Accelerator can perform basic keyword searches, the tool is not able to conduct more advanced searches (such as proximity searches).  Therefore, in order to perform more advanced searches, email and other ESI is generally uploaded into Clearwell, which is an eDiscovery Tool that can process data through the entire EDRM (Electronic Discovery Reference Model) process. In other words, Clearwell can be used to identify, collect, process, analyze, review and produce data in one of several formats.  Cases in Clearwell must generally be available and able to be actively accessed for 2-5 years.  In order for data to be uploaded to Clearwell, it must first be moved to a data server.  The data server has a limited amount of space, and currently only has about 485 GIGS of space available, which is not enough space to process the volume of searches that CBP requires for

discovery.  Thus, for searches that are time-sensitive or critical, CBP must move data off the server to make room for new searches.  Any increase in the size of a particular case, or any increase in the complexity of a particular search, will thus further exacerbate these resource constraints, or would force CBP to purchase additional space.  The total cost to obtain an additional 600 terabytes (TB) of storage space would be $468,000 (which includes the server and maintenance).  CBP could also purchase an additional 40 TB data server at a cost of approximately $10,000.  However, given the volume of searches and the number of open cases, I estimate that this amount of storage would only be sufficient to process another 3 to 4 months' worth of data.

8.  Clearwell is capable of running both basic (e.g., keyword) searches and advanced (e.g., proximity, nested proximity, and wildcard) searches.  Once the search terms have been applied and run over ESI in Clearwell, the information can be processed and analyzed.  This process also takes time and resources, as a member of my team needs to run the terms, analyze the results, and then ensure the results make their way into the appropriate folders for analysis.  Depending on the complexity of the searches and the amount of information that must be searched, the time and resources required to complete these tasks varies by task.  Additionally, CBP requires a license to process data for each case in Clearwell.  Each license is for 6.1 terabytes (TB) of data.  Once 6.1 TB of data has been processed, my team either needs to archive or delete a case to free up additional licenses to process additional data.  Additional licenses can be purchased from a vendor using an unfunded request.  The cost of any such license would depend on the amount of additional data CBP needed to process and thus purchase from the vendor.

**_Open Cases_**

9. Currently, the eDiscovery Team has 104 open cases in various stages of production and review. These cases are based on civil litigation requests, trade issues, congressional fact finding, criminal cases, and Freedom of Information Act (FOIA) requests. Those requests come from the Office of Chief Counsel, the Office of Professional Responsibility, the CBP FOIA Office, the Department of Homeland-Office of Inspector General, the SOC (Security Operations Center), and Managerial Administrative requests. This figure does not include the requests from OIT's Technology Service Desk for individual email message restores, nor does this figure include requests sent to eDiscovery from the CBP Email Services team, the Office 365 Project team, or one of our customers asking for additional data their previously completed request. Data pulls range from a single search to searches on 30 or more custodians with or without key words or Enterprise Searches (searching all 75,000 CBP mailboxes) using multiple key words. There is no way to know how much data will be included in each case until that case is pulled. Search time frames have been as short as 1 day to as long as 11 years. Based on the scope of each request, there can be different types of searches which could include not only email messages, but internet data pulls, logon/logoff information, data collection from servers to include miscellaneous data from shared drives, home drives and individual hard drives, which in the case of Border Patrol, Air and Marine or the Office of Field Operations, could be in the hundreds, as these offices log into multiple computers on a daily basis and move between different locations as their duties require.

10. Additionally, because of the government shut down from December 22, 2018 through January 25, 2019, work on many of these open cases has been significantly delayed. Specifically, for any cases that were pending at the time of the shutdown, the team is twelve

weeks behind schedule.  Thus, my team has had to reprioritize some of these cases, and must ensure that we do not miss any deadlines as a result of this delay.  Additionally, the server on which Discovery Accelerator runs can only support 7 to 10 search sessions at one time. CBP shares these search sessions with other DHS components, and has been allotted 5 of the available search sessions.

### *Specific Work in* **Al Otro Lado**

11.  Currently, in *Al Otro Lado*, my team has collected all email messages from six custodians from January 1, 2016 through March 13, 2019.  This search collected 660,253 emails (1,443,523 items), which amounted to 626.85 GIGs.  All of these searches were uploaded to Clearwell for the application of additional search strings.  Due to the volume of the searches, the server used to upload these searches onto Clearwell is now almost out of space.

12.  Following the application of Defendants' initial proposed search terms (which I understand have been provided to Plaintiffs), there are 75,085 documents and 253,565 items ready for review.  All of these documents are stored on the server, and thus take up a significant amount of space.

13.  Additionally, my team is currently collecting the emails from an additional four custodians in both Discovery Accelerator and the Office 365 server.  My team collected 722, 537 messages from these additional four custodians, which amounts to 224 GIGs of data.  Due to the space constraints on the Clearwell server, it will not be feasible to upload these searches into Clearwell without removing other cases.  Because we have so many open cases, and because all of these cases are time-sensitive, it is very difficult to find space on the server. While we have submitted funding requests to obtain more space, the funding requests have not been approved.  Until we receive this additional space, my team must manually assess

existing files in the server and make any necessary adjustments manually. This, in turn, requires members of my team to spend significant time doing this work, rather than running, collecting, and analyzing search results. Additionally, there are over 150 cases in Clearwell that must remain active.

14. I understand that, as part of the discovery process, there may be additional custodians added. Given the existing space restrictions on our server the number of other open cases the team has, and the time it takes to complete these searches, adding additional custodians in this case will significantly increase the burden on my team and our servers. The volume of data from just the original six custodians is more than we have space for on the servers. Any additional increase in the number of custodians will only exacerbate the resource constraints, and will require my team to look for additional funding and additional resources.

15. If discovery in this case is expanded to include every land port of entry along the southwest border, I understand that we could see a significant increase in the number of custodians. Given the number of open cases and the resource constraints discussed above, any increase in the number of custodians would lead to significant expenses and would significantly increase the time it would take to complete discovery in this case.

16. I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 24 day of May, 2019.

*Elaine Dismuke*
Elaine Dismuke
eDiscovery Team Lead
Security Operations Division
Cyber Security Division
Office of Information and Technology
Enterprise Services
U.S. Customs and Border Protection

Exhibit 3

# Defendants' Exhibit 6

## Declaration of Randy Howe

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

Al Otro Lado, *et al.*,　　　　　）
　　　*Plaintiffs,*　　　　　　　）
　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　）
v.　　　　　　　　　　　　　）　　　No. 3:17-cv-02366-BAS-KSC
　　　　　　　　　　　　　　）
Kevin McAleenan, *et al.*,　　　　）
　　　*Defendants.*　　　　　　　）
_____）

## DECLARATION OF RANDY HOWE

I, Randy Howe, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records, and reasonably relied upon in the course of my employment, hereby declare as follows, relating to the above-captioned matter:

1.　I am currently the Executive Director for Operations, Office of Field Operations (OFO), U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS). I have been employed in this role since October 2017. I began my career in 1988 with the legacy U.S. Immigration and Naturalization Service. During my 30 years of federal service, I have held various leadership positions, including Area Port Director, Buffalo; Assistant Director for Border Security; and Border Security Coordinator. Immediately prior to assuming my current role, I served as Director of Field Operations for the Preclearance Office. In my current position, I oversee more than 23,000 employees, with operations at 20 major field offices, 328 POEs, and 16 Preclearance locations.

2.　I am familiar with the case of *Al Otro Lado v. McAleenan.* I understand that plaintiffs have only raised allegations related to the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry. I understand that, notwithstanding this fact, that plaintiffs are requesting that OFO conduct discovery from all ports of entry along the southwest border. I make this

declaration to explain why such discovery would be burdensome and would be unlikely, in my opinion, to uncover additional relevant information regarding controlling the flow of individuals entering the United States at land ports of entry along the southwest border, known as metering or queue management.

3.  In my role as the Executive Director for Operations, I am responsible for executing the missions of CBP generally and, more particularly, OFO. The CBP mission includes the enforcement of the customs, immigration, and agriculture laws of the United States, as well as hundreds of other U.S. laws, on behalf of numerous federal agencies, at the border. OFO is the primary law enforcement agency responsible for the security of the U.S. border at its ports of entry (POEs), and its preclearance locations outside of the United States, while facilitating lawful international trade and travel.

4.  At the POEs, CBP officers ensure that all persons and merchandise seeking to enter the United States comply with all U.S. laws, including immigration, customs, and agriculture laws, as well as laws enforced on behalf of other federal agencies. In addition, CBP officers inspect incoming cargo on a daily basis to ensure that it complies with all appropriate agricultural laws, trade laws, and other requirements. On any average day in Fiscal Year 2018, OFO processed 1,133,914 incoming passengers and pedestrians; 285,925 incoming privately owned vehicles; and 81,438 truck, rail, and sea containers. CBP officers are thus the first line of protection at the POEs against any number of unpredictable threats that seek to do America harm.

5.  OFO has an extremely wide variety of missions, all of which further OFO's primary mission of protecting the security of the country. For instance, at POEs, OFO works to facilitate trade and travel; to detect narcotics and other public safety threats; to detect contraband and other threats to the country's economic resources; and to process aliens

2

who are determined to be inadmissible, including those who lack documents sufficient for lawful entry to the United States.  None of these mission sets can therefore easily be halted or diminished, and they all need to be balanced at each POE at any given time and must be carefully tailored to the POE's needs at that moment. Each field office along the southwest border, and each land POE within those field offices, has a unique operating environment and unique resource and staffing requirements.  Thus, each field office and POE need to be proactive in constantly reevaluating and directing their limited resources to appropriately meet the needs of each mission.

6.  Currently, CBP is facing an unprecedented surge of individuals entering illegally and arriving at ports of entry without documents. CBP has encountered more than 109,000 individuals in the last month alone, which is over 5,000 more individuals than were a encountered the month prior. This is the highest monthly total in well over a decade and we are not even halfway through an unprecedented fiscal year. It is unprecedented because these aliens, mainly consisting of family units, require appropriate treatment to address their unique needs. The resources required to provide appropriate treatment to this unprecedented surge has placed a significant strain on CBP operations and resources, as officers and agents must devote significant manpower, money, and facilities, to processing and holding.  Specifically, OFO has reallocated several hundred officers to the southwest border to assist the U.S. Border Patrol.  At many POEs, therefore, OFO is operating with additional decreased staffing, which places an additional significant strain on resources.

7.  If all the POEs along the southwest border were required to respond to discovery in this case, OFO would face additional operational burdens across the southwest border.  I understand that, in order to respond to a discovery request, individual custodians at a particular POE would need to search for and identify the locations of responsive files, in

both hard copy and electronic form. Depending on the number of custodians at a particular POE and the number and location of such files, such a search could require an extensive search and a significant amount of time. Additionally, while I understand that CBP's eDiscovery Team will generally collect electronically stored information from custodians' email and hard drives, individual custodians may have to provide input into locations of responsive email folders or specific terminology likely to lead to responsive documents. Those custodians may also need to review any electronically stored information collected by the eDiscovery Team to determine whether any responsive materials were missed during the collection. Lastly, I understand that, once documents have been collected, individuals with knowledge of the substance of a particular document may need to review the document to determine whether it is appropriate to produce it or whether redactions must be applied. Depending on the nature of a particular document, this may involve multiple individuals or even individuals at multiple ports of entry.

8. Additionally, I understand that discovery in this case may involve the preservation and production of video. The preservation of specific video footage is incredibly burdensome, as an individual officer must manually review footage for a particular incident, and then manually preserve the incident.

9. In other words, conducting discovery requires a significant amount of resources, and would likely require the POEs to pull officers from their regular duties in order to ensure that the agency appropriately responded to a particular request. OFO may already have to pull officers off the line at the four ports of entry currently at issue in this case in order to respond to discovery requests. Were each port of entry along the southwest border required to do the same, it would have a significant negative impact on OFO operations along the southwest border, which would, in turn, diminish OFO's effectiveness at executing its

4

national security mission.  These risks are particularly acute given the current constraints on OFO's operations.

10.   Additionally, because each POE is in regular contact with OFO headquarters, including with regard to the implementation of Executive Assistant Commissioner Todd Owen's April 2018 memorandum, discovery from all ports of entry is not, in my opinion, likely to yield significant additional relevant information beyond what is currently being collected from OFO headquarters.  Email communications from the field regarding metering or queue management procedures which may occur at the ports of entry will be collected as part of the discovery from headquarters custodians.  Therefore, discovery from all of the POEs on the southwest border would be largely duplicative and would not, in my opinion, be likely to uncover significant additional relevant information than what would be contained in documents collected from OFO headquarters.  Thus, to require each port of entry along the southwest border to engage in discovery would impose a significant operational burden for what is likely to be largely duplicative documents.

11.   I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.


Executed this 24 day of May, 2019.


Randy Howe
Executive Director, Operations
Office of Field Operations
U.S. Customs and Border Protection