MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:  +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, | Case No.: 17-cv-02366-BAS-KSC |
| Plaintiffs, | |
| v. | **EXHIBIT 9 TO MOTION FOR PROVISIONAL CLASS CERTIFICATION** |
| Kevin K. McAleenan,[1] *et al.*, | |
| Defendants. | |

---

[1] Acting Secretary McAleenan is automatically substituted for former Secretary Nielsen pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Mary Bauer (VA Bar No. 31388) (*pro hac vice*)
  *mary.bauer@splcenter.org*
1000 Preston Ave.
Charlottesville, VA
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.561

# DECLARATION OF J.R.

I, J.R., hereby declare under the penalty of perjury under the laws of the United States:

1. I make this declaration based on my own personal knowledge except where indicated otherwise. If I am called as a witness, I could and would testify competently and truthfully on these matters.

2. I am a citizen of Cuba.

3. I am 31 years old.

4. I am married and have two minor children. My children are in Cuba with my mother and my mother-in-law. My wife traveled to the U.S. with me, entered the U.S. to seek asylum, and is in a detention center in Louisiana.

5. I fled my country on or around December 1, 2018, because my life had already been completely destroyed and I had no other option besides fleeing. I didn't participate in any government activities because I do not agree with the government, and the Cuban government treated me badly on account of that. I tried to leave Cuba in 2015, and the government punished me. They took me in the early morning to Isla de la Juventud, and there they beat me. They treated me like a dog and threw me in a cell. This time, I had been unable to find work anywhere and my life was completely destroyed.

6. I am really afraid of returning to my country because the Cuban government will not let me live in peace with my family. I am afraid they will detain me again. In Cuba we have a dictatorship.

7. I traveled from Cuba to Guyana. From Guyana, I traveled through several countries en route to Mexico, including Brazil, Uruguay, Peru, Ecuador, Colombia, Panama, Costa Rica, Nicaragua, Honduras, and Guatemala. It was a long journey and it took months.

8. I did not seek asylum in the countries I traveled through, nor in Mexico, because I thought the only safe country of all those I traveled through was the United States. In the other countries I traveled through on my way to the United States, I saw that there is a lack of law and order.

9. I arrived in Matamoros, Mexico, at the border of Mexico and the United States, on or around June 8, 2019. On June 11, 2019, I went to the port of entry, which is at a bridge between Matamoros, Mexico and Brownsville, Texas.

10. On the bridge, there were Mexican immigration officials on the lookout to stop me from trying to reach the spot where U.S. immigration officials were, at the middle of the bridge. The Mexican officials told me that I first had to put myself on a list they had to control the flow of people towards the U.S. officials. They gave me instructions for adding my name to wait for a turn.

11. I put myself on the waitlist in Matamoros on June 11, 2019. My number on the list was 2002 and my wife's was 2003. The list was controlled by Mexican immigration officials, and they were in touch with U.S. officials who would ask every day for a certain number of people to present themselves at the U.S. offices. After putting myself on the list, I had to wait for my turn every day on the bridge, rain or shine, day and night, not moving so as not to lose my spot.

12. If I hadn't been turned back at the port of entry, or required to put myself on the list, I would have entered the port of entry to seek asylum in the United States on June 11, 2019.

13. After more than a month, my wife and I decided to cross the river to seek asylum in the United States. They still hadn't called our numbers. We decided to swim across because of the lack of safety we felt every day. My wife and I crossed the river on July 18, 2019, without knowing if we would get across because I don't know how to swim and I just put my life in God's hands.

14. Once we got across, I didn't try to flee. I sat down and waited until U.S. immigration authorities arrived so I could turn myself in voluntarily, and I had no intent of escaping. After I crossed the river, I was detained.

15. On or around July 25, 2019, the U.S. government returned me to Mexico to wait for my hearing in immigration court. For the moment I live in Monterrey. My next hearing is October 24, 2019, in Laredo, Texas.

16. I am really afraid of continuing to wait in Mexico. The same day that I was returned here, a few migrants we met in U.S. immigration detention were kidnapped, criminals picked them up as they were crossing the street. The migrants just went out to buy a drink and they were kidnapped. Mexico is a very dangerous country.

17. I am afraid for my life, in my country and here in Mexico. I need humanitarian protection.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on the 21st day of September, 2019 in Monterrey, Mexico.

\_\_\_J.R._____

J.R. (initials only)

## DECLARACIÓN DE J.R.

Yo, J.R., por la presente declaro bajo pena de perjurio en conformidad con las leyes de los Estados Unidos:

1. Hago esta declaración basado en mi conocimiento personal excepto donde he indicado lo contrario. Si me llamaran como testigo, podría testificar y testificaría de manera competente y veraz sobre estos asuntos.

2. Soy ciudadano de Cuba.

3. Tengo 31 años.

4. Estoy casado y tengo dos hijas de menor edad. Mis hijas están en Cuba, a cargo de mi suegra y mi mamá. Mi esposa viajó a los EEUU conmigo, entró a los EEUU para solicitar asilo, y está encerrada en un centro de detención en Louisiana.

5. Yo huí de mi país aproximadamente el 1 de diciembre del año 2018 porque ya me tenían la vida destruida por completo, no tuve más opción que huir. Yo no participaba en ninguna actividad del gobierno porque no estoy de acuerdo con el gobierno, y por eso fui mal tratado por el gobierno cubano. Yo intenté salir de Cuba en 2015, y el gobierno me castigó. En la Isla de la Juventud, me cogieron de madrugada y me golpearon. Me trataron como un perro y me tiraron en un calabozo. Esta vez, yo ya no podía conseguir trabajo en ningún lugar y mi vida fue completamente destruida.

6. Tengo mucho miedo de regresar a mi país porque el gobierno cubano no me dejaría vivir tranquilo con mi familia. Tengo miedo que me metan preso otra vez. En Cuba tenemos una dictadura.

7. Yo viajé de Cuba a Guyana. De Guyana, atravesé por varios países en rumbo a México, incluyendo Brasil, Uruguay, Perú, Ecuador, Colombia, Panamá, Costa Rica, Nicaragua, Honduras, y Guatemala. Fue un viaje largo y duró meses.

8. No solicité asilo en los países que atravesé, ni en México, porque considero que el único país seguro de todos los que pasé es los EEUU. En los otros

países que atravesé en rumbo a los EEUU, vi que hay mucha inseguridad.

9. Llegué en Matamoros, México, en la frontera entre México y los EEUU, aproximadamente el 8 de junio del año 2019. El 11 de junio de 2019, yo fui al puerto de entrada, cual está en un puente entre Matamoros, México y Brownsville, Téxas.

10. En el puente, habían oficiales de inmigración mexicana al pendiente de que yo no intentara llegar al retén que tenían oficiales de migración de los estados unidos, a medio del puente. Los oficiales mexicanos me dijeron que debía primero apuntarme en una lista que ellos tenían para el control del paso hacia los oficiales estadounidenses. Ellos me dieron instrucciones de anotarme para esperar un turno.

11. Me anoté en la lista de espera en Matamoros el 11 de junio del año 2019. Mi número en la lista fue 2002 y mi esposa el 2003. La lista era controlada por oficiales de migración mexicanos, ellos a su vez tenían contacto con oficiales estadounidenses que iban pidiendo por día cierto número de personas para presentarse a oficinas de estados unidos. Después de anotarme en la lista, tenía que esperar por mi turno diariamente en el puente a sol y sombra, día y noche, sin moverme por no perder mi turno.

12. Si no hubiera sido rechazado en el puerto de entrada ni requerido de anotarme en la lista, hubiera entrado al puerto de entrada para solicitar asilo en los EEUU el 11 de junio del año 2019.

13. Después de más de un mes, yo y mi esposa decidimos cruzar el río para solicitar asilo en los EEUU. Todavía no habían llamado nuestros números. Decidimos cruzar nadando por la inseguridad que se vive diariamente. Yo y mi esposa cruzamos el río el 18 de julio del año 2019 sin saber si lo iba a lograr porque yo no sé nadar y solo puse mi vida en manos de Dios.

14. Al cruzar, no hice intento de huir. Me quedé sentado a esperar que

viniera migración de los EEUU para entregarme voluntariamente, y no hice el intento de escapar. Después de que crucé el río, me encerraron.

15. En aproximadamente el 25 de julio del año 2019, el gobierno estadounidense me regresó a México para esperar mis audiencias en la corte de inmigración. Por el momento vivo en Monterrey. Mi próxima audiencia es el 24 de octubre del año 2019, en Laredo, Téxas.

16. Tengo mucho miedo de quedarme esperando en México. Ese mismo día que me devolvieron, fueron secuestradas unas personas inmigrantes que conocí cuando estaba encerrado, al cruzar la calle de allí mismo se los llevaron los criminales. Los migrantes solo salieron a comprar una bebida y de ahí los secuestraron. México es un país muy peligroso.

17. Yo tengo miedo por mi vida, en mi país y aquí en México. Necesito protección humanitaria.

Declaro bajo pena de perjurio según las leyes de los Estados Unidos que todo lo anterior es verdadero y correcto.

Ejecutado el día 21 de septiembre, 2019 en *Monterrey*, México.

_____J.R._____
J.R. (firma de iniciales)

## TRANSLATOR'S CERTIFICATION

I, _Gabriela Maxcy_, declare that I am fluent in the English and Spanish languages.

I have reviewed the original Spanish declaration and the foregoing English translation thereof, and I certify that the English version is a faithful and accurate translation of the Spanish-language original.

I hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on the ___23___ day of September, 2019 in ___ATLanTa___, ___Georgia___.

_____          _September 23, 2019_
Name: Gabriela Maxcy                 Date