1  MAYER BROWN LLP
2    Matthew H. Marmolejo (CA Bar No. 242964)
     *mmarmolejo@mayerbrown.com*
3  350 S. Grand Avenue
   25th Floor
4  Los Angeles, CA 90071-1503
     Ori Lev (DC Bar No. 452565)
5    (*pro hac vice*)
     *olev@mayerbrown.com*
6    Stephen M. Medlock (VA Bar No. 78819)
     (*pro hac vice*)
7    *smedlock@mayerbrown.com*
   1999 K Street, N.W.
8  Washington, D.C. 20006
   Telephone:  +1.202.263.3000
9  Facsimile:   +1.202.263.3300

10  SOUTHERN POVERTY LAW CENTER
      Melissa Crow (DC Bar No. 453487)
11    (*pro hac vice*)
      *melissa.crow@splcenter.org*
12  1101 17th Street, N.W., Suite 705
    Washington, D.C. 20036
13  Telephone: +1.202.355.4471
    Facsimile: +1.404.221.5857

14  *Additional counsel listed on next page*
    *Attorneys for Plaintiffs*

15

## UNITED STATES DISTRICT COURT

16

## SOUTHERN DISTRICT OF CALIFORNIA

17

| | |
|---|---|
| 18  Al Otro Lado, Inc., *et al.*, | Case No.:  17-cv-02366-BAS-KSC |
| 19          Plaintiffs, | |
| 20     v. | **EXHIBIT 15 TO MOTION FOR PROVISIONAL CLASS CERTIFICATION** |
| 21  Kevin K. McAleenan,[1] *et al.*, | |
| 22          Defendants. | |

23
24
25
26
27

---

28  [1] Acting Secretary McAleenan is automatically substituted for former Secretary Nielsen pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
   Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
   *bazmy@ccrjustice.org*
   Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
   *gschwarz@ccrjustice.org*
   Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
   *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
   Mary Bauer (VA Bar No. 31388) (*pro hac vice*)
   *mary.bauer@splcenter.org*
1000 Preston Ave.
Charlottesville, VA
   Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
   *sarah.rich@splcenter.org*
   Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
   *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030

AMERICAN IMMIGRATION COUNCIL
   Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
   *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.561

# DECLARATION OF ▮ Roberto Doe

I, ▮ Roberto Doe hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters.

2. I am a national and citizen of Nicaragua. My date of birth is November 13, 1975. I am married and have three children. They are 10, 18, and 19 years old. I am currently living in a shelter in Reynosa, Mexico, having fled my country to seek asylum in the United States.

3. I fled Nicaragua in early September of 2018. I fear for my life and the life of my family members due to threats of violence from the government and paramilitaries allied with the government. I participated in protests, marches, and strikes against the government. When I closed my carpentry business during a general strike, the police and paramilitary organizations threatened me for participating. They said that if I closed my business then they were going to burn it down. They walked by my house nearly every day and sometimes threatened me and pointed gun at me and son and workers. I feared that the government would hurt my family if I stayed in Nicaragua, so I fled in the middle of the night so that the government would not notice. The day after I left, someone wrote "Plomo," which means lead (as in bullets) three times on the garage door of my business. This marked me as a target to be killed. My wife and children also

left for another part of the country and are in hiding.

4. I arrived in Reynosa, Tamaulipas on Saturday September 29, 2018. On October 2, 2018, I attempted to present myself at the Reynosa-Hidalgo Port of Entry to apply for asylum. I was at the back of the line of a group of six Nicaraguan nationals and one Honduran that tried to apply for asylum. As we walked on the bridge, we saw several U.S. immigration officials standing at the exact middle point of the bridge that divides the United States from Mexico. Our group approached the U.S. immigration officials, and we told them we wanted to apply for asylum.

5. After we asked for asylum, one of the U.S. officials told us that he had to talk to his office first made a call on his radio in English. He then told us to stand to the side. After that, he told us that the port of entry was "all full" and that we couldn't enter. He told us that we might have to wait for "hours, days, or weeks" before we could apply for asylum.

6. A short while after that, a different U.S. official, a woman, made another call. I heard her say in Spanish for someone to come and pick up some people. A few minutes later, a Mexican immigration official approached from the Mexican side of the border and asked to see all of our papers. We all handed our papers to this official. He looked at them and told us to come with them. Another one of the Nicaraguans I was with asked the U.S. official to help him, saying that the Mexican immigration officials would deport us. The U.S official said that he did not care and then did nothing else.

7. The Mexican immigration official then walked us back down the bridge towards the Mexican side and took us into an office. He left us with other INM officials. We waited for a long time there while various officials were on the phone. I overheard one of the officials saying to someone on the other end of the line that they needed seven or eight spaces for the next deportation transport. I believe that this was a threat to scare us, because we had a legal visa to travel in Mexico.

8. Eventually, the Mexican officials took our phones, and told us to wait in the bathroom of the office. We were very crowded together in a small bathroom, even though the waiting area was fairly empty. We had to stay there for an hour. I think they did this to make us feel uncomfortable.

9. As we were waiting in the bathroom, a Mexican official entered the room as well. He told us that we did not have the right to apply for asylum in the U.S., that it was a crime for us to try to apply for asylum in the United States. He told us that they would tear up our visas and deport us if we tried to come back. He told us that they were in communication with U.S. authorities and that if we came back to the bridge and attempted to apply for asylum again, the U.S. officials would send us back to Mexican authorities and that we would then be deported to Nicaragua.

10. After all of that, the Mexican official told us we could apply for a humanitarian visa of some sort in Mexico, but did not tell us how to apply. Either way, we said that we did not want to because it is so dangerous here in Mexico. They then gave us our papers back and told us to leave. It felt dangerous outside of the office, and

we anxiously waited there to try to get in contact with people from the migrant shelter. An official from the Instituto Tamaulipeco para Los Migrantes (Tamaulipan Institute for Migrants), which helps people who have been deported to Mexico by Americans, came up to us and told us that it was not safe there. This official told us that we were in danger of being kidnapped if we stayed there. We followed him back to their office, and then they called the police. We were escorted by two police cars in a van back to the migrant shelter.

11. I do not feel safe here in Reynosa. There are constant threats everywhere. There are armed men by the river close by. There is nowhere to go. I want to apply for asylum, but it is dangerous to cross, and I don't have the money to pay cartels to cross the river.

12. I cannot return to Nicaragua because of the threats against my life there. But staying in Mexico is not possible, as it may be even more dangerous here than Nicaragua for me. I would like to apply for asylum in the U.S., but am afraid to try again after what happened the first time, and my visa is about to expire.

13. I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters.

14. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on October 10, 2018 at Reynosa, Mexico.

███████ [signature of Roberto Doe]
─────────────────────────────

███████ Roberto Doe

## CERTIFICATION

I, Aaron Reichlin-Melnick, declare that I am fluent in the English and Spanish languages.

On Oct 10, 2018, I read the foregoing declaration and orally translated it faithfully and accurately into Spanish in the presence of the declarant. After I completed translating the declaration, the declarant verified that the contents of the foregoing declaration are true and accurate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on Oct 10, 2018 at Reynosa, Mexico.

_____   10-10-2018
Signature                   Date

Aaron Reichlin-Melnick
Printed Name