MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:   +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, | Case No.:  17-cv-02366-BAS-KSC |
| Plaintiffs, | |
| v. | **EXHIBIT 33 TO MOTION FOR PROVISIONAL CLASS CERTIFICATION** |
| Kevin K. McAleenan,[1] *et al.*, | |
| Defendants. | |

---

[1] Acting Secretary McAleenan is automatically substituted for former Secretary Nielsen pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Mary Bauer (VA Bar No. 31388) (*pro hac vice*)
  *mary.bauer@splcenter.org*
1000 Preston Ave.
Charlottesville, VA
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.561



**FACT SHEET: NOVEMBER 2018**

# Is Mexico Safe for Refugees and Asylum Seekers?

President Trump has repeatedly falsely asserted that the United States can turn away asylum seekers who have crossed through Mexico without seeking asylum there first—even though there is no legal basis for this claim. Secretary of Homeland Security Kirstjen M. Nielsen has also incorrectly stated that asylum seekers must "seek protections in the first safe country they enter, including Mexico."

Despite this rhetoric, **many refugees face deadly dangers in Mexico. For many, the country is not at all safe.** Mexico falls far short of meeting the legal requirements that would permit U.S. officials to treat it as a "safe third country" for the purpose of turning back asylum seekers. And since there is no safe third country agreement in place, the president and members of his administration have no legal basis to state that asylum seekers must apply for asylum in Mexico.

Rather than returning refugees to a country that is currently unable to provide them safety, the United States should strengthen support to build an effective refugee protection system in Mexico. This factsheet explains the concept of safe third country agreements under U.S. law and why Mexico does not meet the legal requirements.

## What is a "safe third country"?

Under a "safe third country" agreement, the United States and another country recognize that both countries effectively protect refugees seeking asylum. With an agreement in place, asylum seekers who request protection in the United States after first passing through the "safe" country may be returned there and given an opportunity to request protection in that other country.

**Canada is the only country that has a safe third country agreement with the United States.** The Canada-U.S. Safe Third Country Agreement was signed on December 5, 2002 and came into effect on December 29, 2004. As a result, asylum seekers who enter the United States after passing through Canada will be returned and permitted to request asylum there unless they qualify for an exception to the agreement.

Congress has spelled out three requirements that must be met before U.S. officials and agencies can block refugees from asylum on these grounds. **Specifically**, **to be a safe third country, the** Immigration and Nationality Act **requires that the country must:**

- ☑ **Guarantee asylum seekers protection from persecution:** The country must be a place where the refugee's "life or freedom would not be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion."

- ☑ **Provide access to "full and fair" procedures to assess asylum requests:** The country must afford "access to a full and fair procedure for determining a claim to asylum or equivalent temporary protection."

- ☑ **Agree to be designated a safe third country:** The country must have entered into a bilateral or multilateral safe third country agreement with the United States.

**FACT SHEET: NOVEMBER 2018**

# Mexico does not meet "safe third country" legal requirements

As Human Rights First has long documented, given the deadly dangers in Mexico and the deficiencies in its refugee protection system, Mexico falls far short of meeting "safe" country standards under U.S. law:

### Refugees are not adequately protected in Mexico.

As detailed in Human Rights First's 2017 report and updated in a 2018 fact sheet, **refugees and migrants face acute risks of kidnapping, disappearance, sexual assault, trafficking, and other grave harms in Mexico**. Refugees in Mexico are targeted due to their inherent vulnerabilities as refugees but also on account of their race, nationality, gender, sexual orientation, gender identity, and other reasons. Certain groups—"including the LGBTQ community, people with indigenous heritage, and foreigners in general"—face consistent persecution in Mexico and are often forced to seek protection outside of the country. Gay men and transgender women, for example, flee discrimination, beatings, attacks, and a lack of protection by police in Mexico. **Some refugees have been trafficked into forced labor**, while women and girls have been trafficked to Mexico's southern border where they have been exploited in bars and night clubs that cater to police, military, and other forces. Doctors Without Borders reported that 68% of refugees and migrants it interviewed had been exposed to violence and almost one third of refugee and migrant women had been sexually assaulted. Additionally, Amnesty International reports that criminal investigations of massacres and crimes against migrants remain "shrouded by impunity."

### Many refugees are left unprotected due to lack of access to full and fair procedures

**Deficiencies, barriers, and flaws in Mexico's asylum system leave many refugees unprotected** and Mexican authorities continue to improperly return asylum seekers to their countries of persecution. A 2018 Amnesty International report found that Mexican migration officials routinely turn back Central American asylum seekers and that **75 percent of migrants and asylum seekers surveyed were not informed of their right to seek asylum** by migration officers in detention facilities, even though this is required by Mexican law. Less than one percent of unaccompanied children apprehended in Mexico receive international protection, as detailed by Human Rights Watch.

Despite progress since launching an asylum system, barriers persist, leaving many refugees unprotected. The system for seeking legal protection lacks national reach and capacity. COMAR—"The Mexican Commission for Refugee Aid"—has only four offices around the country, leaving many refugees without access to the system. After halting its processing of asylum applications in 2017, Mexico only reopened its system in 2018 after a successful lawsuit by the Mexican Commission for the Defense and Protection of Human Rights. Refugee processing in Mexico remains plagued by backlogs and understaffing. In addition, **refugees are blocked from protection under an untenable 30-day filing deadline, denied protection by COMAR officers who claim that refugees targeted by groups with national reach can safely relocate within their countries, and lack an effective appeal process** to correct wrongful denials of protection. Finally, declining and disparate asylum recognition rates for Central Americans raise concerns that individuals from those countries remain unprotected.

### Mexico has not agreed to be a safe third country.

Mexico and the United States do not have a "safe third country" agreement.