MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:   +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, | Case No.:  17-cv-02366-BAS-KSC |
| Plaintiffs, | |
| v. | **EXHIBIT 44 TO MOTION FOR PROVISIONAL CLASS CERTIFICATION** |
| Kevin K. McAleenan,[1] *et al.*, | |
| Defendants. | |

---

[1] Acting Secretary McAleenan is automatically substituted for former Secretary Nielsen pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Mary Bauer (VA Bar No. 31388) (*pro hac vice*)
  *mary.bauer@splcenter.org*
1000 Preston Ave.
Charlottesville, VA
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.561

## DECLARATION OF ASYLUM ACCCESS MEXICO

I, Alejandra Macías Delgadillo on behalf of Asylum Access Mexico, hereby declare as follows:

1. I submit this declaration in support of Plaintiffs' Motion for Preliminary Injunction Prohibiting Government from Applying Asylum Ban to Provisional Class Members. If called as a witness, I could and would testify competently as follows.

### Professional Experience with the Mexican Asylum System

2. I am the Executive Director ("ED") of Asylum Access Mexico ("AAMX"), a nonprofit refugee rights organization based in Mexico. I have held this position since 2015.

3. As AAMX's ED, I supervise a team of 15 to 20 Mexican attorneys, as well as several support staff, who provide direct legal services to refugees and asylum seekers in Mexico. AAMX has offices in 6 Mexican states (Chiapas, Tabasco, Veracruz, Baja California, Nuevo León, and Mexico City). The attorneys under my supervision represent asylum seekers in front of Mexico's Commission to Assist Refugees ("COMAR"), the administrative agency that processes asylum claims in the first instance, as well as in administrative and judicial appeals. Our attorneys also represent recognized refugees in legal

claims to assert economic, social, cultural, civil and political rights in the Mexican legal system.

4. I am also responsible for AAMX's policy advocacy on a national and international level. In this role I work closely with other civil society organizations to identify protection gaps in the Mexican asylum system and other issues affecting refugees and asylum seekers, and to advocate in front of governmental authorities for needed changes.

5. AAMX also has a robust strategic litigation practice, in which the attorneys under my supervision identify and litigate cases that have to potential to bring about broader changes to ensure the rights of refugees and asylum seekers are respected in Mexico.

6. Prior to AAMX, I worked in other civil society and government positions advocating for human rights, particularly migrant and refugee rights. I have attached my C.V. as Exhibit A.

7. AAMX was founded in June 2015 to improve due process and access to justice for refugees seeking asylum in Mexico. Through legal services, community legal empowerment, and policy advocacy, AAMX empowers refugees and asylum seekers to demand their own rights.

8. The statements in this Declaration are based on (1) my personal experience coordinating Asylum Access's work in Mexico; (2) conversations with

AAMX employees who work directly with asylum seekers; (3) conversations with other civil society organizations, international organizations including the UN High Commission for Refugees ("UNHCR") and other UN bodies, Mexican governmental officials, and academics; and (4) extensive tracking of news coverage of and research into the asylum system in Mexico.

### Mexico Is Currently Hosting More People Fleeing Persecution Than Ever Before

9. Due to a range of factors, between 2014 and 2019 the flow of refugees and migrants from Central America, particularly Guatemala, Honduras, and El Salvador (the "Northern Triangle"), through Mexico to the United States has increased significantly.

10. The causes of this increased flow of refugees and migrants include, but are not limited to, violent gangs, organized crime and transnational drug cartels, political instability and corruption, generalized violence, sexual and gender-based violence, and economic instability, all of which plague the Northern Triangle countries.

11. AAMX and other human rights organizations have been particularly concerned by the increase of children, including unaccompanied minors, fleeing the Northern Triangle.

12. According to the Mexican Secretary of Government, in 2018 Mexico detained 31,717 migrant children, of whom it deported 25,965. Roughly one third of

these migrants (10,417) were unaccompanied minors, 98% of whom came from the Northern Triangle. See UNICEF, Annual Report-México 2018 at 48, (Spanish only) available at https://www.unicef.org/mexico/media/1781/file/Informe%20anual%202018.pdf (last visited 23 Sept. 2019).

13. Most of the people fleeing the Northern Triangle intend to travel to the United States. This journey is long and dangerous, particularly for children and other vulnerable groups,

14. Refugees, asylum seekers, and economic migrants are often targeted by gangs and drug cartels for extortion, recruitment, and kidnapping in Mexico. For example, in August of 2010 the Zetas drug cartel kidnapped more than 70 migrants from 2 trucks in San Fernando, Tamaulipas. When the migrants refused to work for the Zetas, gunmen summarily executed 72 of them, in one of the most gruesome massacres of Mexico's drug war.

15. Kidnapping of refugees and migrants continues to be a serious problem, especially in Tamaulipas State.

16. To better protect themselves against these dangers, in 2018 refugees and migrants formed so-called "caravans," in which large groups travelled together across Central America and Mexico.

17. Supposedly in response to these migrant caravans, in 2018-19 the Trump administration enacted significant changes to the U.S. asylum system, which has had major impacts on the migration flows between the US and Mexico.

18. In particular, by implementing the policies of "metering," whereby the U.S. only allows a limited number of asylum seekers across the border each day, and the Remain in Mexico program (formally known as the "Migrant Protection Protocols," or "MPP"), whereby asylum seekers are returned to Mexico while their U.S. cases are pending, tens of thousands of refugees and migrants have become stranded on the Mexican side of the border, in some of the most dangerous areas in the country.

19. Local and international media regularly report stories of MPP returnees being murdered, kidnapped, assaulted, extorted, and raped.

20. The Trump administration's recent rule, requiring all non-Mexican asylum seekers to first seek asylum in Mexico or be automatically denied, will only exacerbate the issues we now see on the border.

**The Mexican Asylum System is Inadequate to Provide Protection to the Current Population of Non-Mexicans Fleeing Persecution**

21. Although Mexico is party to the 1951 Refugee Convention and its 1967 Protocol, its national agency responsible for making Refugee Status Determinations ("RSD"), COMAR, is ill-equipped to process the tens of

thousands of claims it has received following the recent changes in U.S. policy and the exodus from the Northern Triangle.

22. By way of context, in 2014 COMAR received 2,137 asylum petitions, whereas in 2018 it received 29,364 petitions. As of August 2019, COMAR has already received 39,983 petitions. See COMAR Statistics, Aug. 2019, (Spanish only), available at: https://www.gob.mx/comar/articulos/la-comar-en-numeros?idiom=es (last visited Sept. 23, 2019).

23. Whereas the number of asylum petitions has grown exponentially each year, COMAR's budget has risen only incrementally. COMAR's director, Alfonso Ramírez Silva, recently testified that the agency requires at least MXN $100 million per year to process current levels of asylum seekers, while the 2019 budget is only MXN $20 million and the 2020 budget is MXN $27 million.

24. COMAR's incremental growth has nonetheless outstripped its capacity, and many of its new hires lack training and experience to deal with sensitive cases such as unaccompanied minors and survivors of torture or sexual and gender-based violence.

25. Exacerbating the lack of training and experience, COMAR has been unable to hire sufficient staff to process the massive growth in asylum seekers. This causes significant delays in processing and resolving applications, as well as

a tendency for decisions to be poorly reasoned or lack any detailed examination of the facts and law.

26. Although COMAR has very recently established a presence on the U.S. - Mexico border (most of its personnel are assigned to the Mexico - Guatemala border and Mexico City), the offices on the northern border are woefully understaffed.

27. In Tijuana, for example, COMAR has only two employees, neither of whom are empowered to emit documents identifying individuals as asylum seekers, or resolve cases. Rather, COMAR's Tijuana office simply records information, which then must be sent to Mexico City to be processed. This results in significant delays in processing asylum applications.

28. Other cities with a large refugee presence, such as Mexicali, lack COMAR offices. There, immigration officials receive asylum petitions, despite the majority not having specific or adequate training or experience on international protection issues.

29. Due to these various challenges, although Mexican law requires asylum petitions to be decided within 45 working days, which can be extended to 90 working days in exceptional circumstances, in practice petitions are often not adjudicated for one to two years.

30. Although Mexican law guarantees an interpreter to non-Spanish-speaking asylum seekers and obligates officials to provide information regarding refugee rights to people in their native languages, this law is constantly ignored. COMAR has a very limited number of English and French speakers that it uses for *ad hoc* interpretation (despite these officials having no formal training on translation and interpretation), but there is no formal system for providing interpreters.

31. COMAR has no capacity to provide translation services for the significant number of asylum seekers who speak indigenous languages or Haitian creole, or other languages. Most of these asylum seekers are forced to present their claims in languages they do not fully understand, and many are deported without receiving information regarding international protection in their native languages.

32. While asylum seekers are awaiting adjudication, they are forbidden from leaving the state in which they registered, and must check in with COMAR regularly. Leaving the state without permission, or failing to check in, results in COMAR deeming the asylum petition abandoned, allowing for the deportation of asylum seekers.

33. Although Mexican law generally prohibits detention of asylum seekers for more than 15 days, immigration officials have, in some cases, interpreted a

general law regarding detention of undocumented migrants to permit the detention of asylum seekers for extended periods.

*Mexico Has a 30-Day Bar on Asylum Applications*

34. Under Mexican law, asylum seekers must initially register with COMAR or immigration authorities within 30 days of entering Mexico, or their petition may be barred.

35. Although an asylum seeker can show good cause for submitting an untimely application, the burden is on the asylum seeker to show cause and COMAR has discretion to reject such a petition.

36. It is extremely important to have an attorney to successfully appeal a determination of untimeliness, as these cases are often decided on legal formalities that a *pro se* applicant will have trouble navigating. Private attorneys are beyond the means of most asylum seekers, however, and there are insufficient pro bono attorneys to handle the majority of these types of cases.

37. It is unclear whether COMAR will apply the 30 day bar to asylum seekers who are returned to Mexico, either through MPP or as part of the implementation of the Transit Rule. These cases may need to be litigated on an individual basis.

*Mexico Does Not Provide Meaningful Access to Asylum for Unaccompanied Children*

38. Although Mexican law has strong protections for unaccompanied children, these laws are not enforced, and unaccompanied children are often detained and deported without undergoing any evaluation of their need for international protection.

39. In 2018, for example, Mexico held more than 100,000 children in migrant detention centers, and deported more than 25,000 children. See "Informe de Audiencia temática sobre infancia y adolescencia migrante en Centroamérica, México y Estados Unidos." Interamerican Commission on Human Rights, p. 10, Sept. 2019 (Spanish only).

40. By detaining migrant children, the Mexican state has erected significant barriers to international protection, including asylum. Detention serves as an impediment to access to counsel, as well as access to information regarding the right to seek international protection.

41. Furthermore, under pressure from the U.S. government, Mexico has militarized its southern border and has sped up deportation processes, resulting in many children (and adults) being returned to their countries of origin without any evaluation of their need for international protection.

42. The Inter-American Commission on Human Rights has been sufficiently troubled by these deficiencies that it scheduled a thematic hearing on the

protection of child migrants and refugees in Mexico for September 26, 2019, at the request of a group of civil society organizations including AAMX.

*Many Asylum Seekers and Refugees Are Not Safe in Mexico*

43. Due to its proximity to the Northern Triangle, its relatively porous southern border, and the presence of violent transnational gangs and organized crime within Mexico, many refugees and asylum seekers face persecution in Mexico from the same agents that led them to flee their countries of origin.

44. Asylum seekers in Mexico regularly report the presence of their persecutors within Mexico, particularly gang members from their countries of origin.

45. The restrictions on inter-state travel during the pendency of asylum claims exacerbates this problem, as asylum seekers cannot easily flee their persecutors within Mexico.

46. AAMX is gravely concerned that the implementation of the Transit Rule will place greater stress on the Mexican asylum system, and will lead to the *refoulement* of refugees to countries in which they will face persecution.

47. I declare under penalty of perjury of the law of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Executed September 24, 2019

Alejandra Macías Delgadillo

# ALEJANDRA MACÍAS DELGADILLO

alejandramaciasdelgadillo@gmail.com
alejandra.macias@asylumaccess.org
Phone (52) 55 26 61 62 02
**LAWYER**

## EDUCATION

| | |
|---|---|
| 2014- 2016: | **MA in Human Rights, Iberoamerican University.** |
| 2010-2011: | **Diploma Corporate Law, Instituto Tecnológico Autónomo de México (ITAM).** |
| 1998-2003: | **Bachelor of Laws, University of San Luis Potosí. (UASLP).** |

## DIPLOMAS AND OTHER COURSES

2017
| | |
|---|---|
| 2012: | Course on International Refugee Law, of the United Nations High Commissioner for Refugees (UNHCR), Lima, Peru |
| 2009-2010: | Diploma in Criminal Adversarial System, Agency for International Development (USAID), Mexico, DF |
| 2009-2010: | International English Legal Certificate Executive Business, México. |
| 2006-2007: | The Language of Legal Method at Birkbeck University of London, English Language Course at the Burlington School of English; London, England. |
| 2005: | English Language at the London Study Centre School in London, England. |
| 2003: | Advanced training course in the Specialty of Legal Assistant; in the 31st Public Notary System of Qualification for the Workers of the National Service. |

## WORK EXPERIENCE
_____

| | | |
|---|---|---|
| 2015- | **Asylum Access México (AAMX)** | Deputy Director from Asylum Access Mexico (AAMX). I first joined when Asylum Access Mexico was created to fill the gap in legal empowerment for refugees near the southern border Mexican with Guatemala. I oversee the activities and operations of the Asylum Access Mexico offices across the country currently 7 offices in Mexico: Mexico City, Palenque, Villahermosa, Monterrey, Tijuana, Acayucan, and Tenosique. I lead policy advocacy and national and regional networks where Asylum Access is member. Responsable to manage public policy initiatives at the state and national levels to ensure due process and the protection of refugees' rights to employment, education, safety, and freedom of movement. |
| 2011-2015 | **SIN FRONTERAS, IAP. (For the Human rights of migrants, refugees and their families)** | Lawyer and coordinator of the area of asylum seekers, where I was in charge of various strategic litigation cases on the subject of asylum seekers, refugees and stateless persons. I am the first lawyer to litigate asylum-seekers and refugee cases in the Mexican courts, obtaining several favorable judgments. Contribute to the empowerment of international migrants asylum seekers, refugees and their families through the effective exercise of their rights. |
| 2009-2011 | **INMUJERES DF (WOMEN´S INSTITUTE, MEXICAN GOVERMENT)** | Lawyer Policy Area Prevention of Violence against Women.<br>Advising on violence and follow up cases by institutional violence. Training on Violence, Human Rights Law and Access of Women to a Life Free of Violence to workers in the Federal District Government. Interagency Coordination Officer of the Law on Women's Access to a Life Free of Violence in the Federal District and monitor compliance with this law. Responsible for monitoring the Committees for the prevention, care and access to justice for the Law of Access of Women to a Life Free of Violence in Mexico |

| | | |
|---|---|---|
| | | City.<br>Participation in Projects:<br>Development of training manuals for care and human rights of women victims of violence to government workers, making the diagnosis concerning the status of women in prison, making the diagnosis of care and access to justice for women victims of violence from the perspective of gender guidelines for emergency housing regulation and refugee centers in the Federal District operating guidelines for the Center for Justice for Women Victims of Violence in the City; Legislative Harmonization in various laws and regulations from a gender perspective, monitoring cases of victims of human trafficking in persons and participation in working groups on human trafficking. |
| 2008 | **VAZQUEZ CU, y SÁNCHEZ ABOGADOS, S.C. y/o DELVA CONSULTING SOLUTIONS S.A. DE C.V.** | Ordering the recovery of portfolios of diverse banks, as well as to coordinate to the lawyers at national level; contract elaboration, transactions.<br>CORPORATIVE: Trade-Marks registrations, reconstructions of debt, contracts and agreements.<br>LITIGATIONS: Experience in litigations of diverse nature (civil law, family law, mercantile) in all instances. Mexico, Federal District. |
| 2007 | **ALTONAR &ASOCIADOS, LAW FIRM** | Lawyer, legal consultant's office, litigation in civil law, family law, mercantile matters. Contracts and marks |
| 2003-2004 | **CORPORATIVO JURÍDICO, S. C., LAW FIRM** | Legal adviser, responsible for coordinating the internships in family law, commercial and corporate law. |
| 2002-2003 | **CIVIL COURT** | Social Service<br>Activities:<br>● Assistant in the elaboration of trial judgments.<br>● Trial hearings.<br>San Luis Potosi, S.L.P |
| 2000-2002 | **BUFETE DE LA GAZA, S. C.** | Internship in civil and corporate law. |

**ADDITIONAL INFORMATION**
_____
Mexican Nationality
English language skills: reading, writing and conversation.

I have published articles on human rights of asylum seekers, refugees, migrants and stateless persons. **I got the first favorable ruling for which a person is recognized as a refugee by the court:** It is the first sentence in Mexico, issued on human rights of asylum seekers and refugees, by the Plenum of the Superior Court of the Federal Court of Administrative Justice. I subsequently obtained more favorable judgments for recognition of refugee status.
Since June 2016 I am part of the Citizen Council of the National Institute of Migration (Mexican Government Institution).