MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:   +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, | Case No.:  17-cv-02366-BAS-KSC |
| Plaintiffs, | |
| v. | **EXHIBIT 21 TO MOTION FOR PRELIMINARY INJUNCTION** |
| Kevin K. McAleenan,[1] *et al.*, | |
| Defendants. | |

---

[1] Acting Secretary McAleenan is automatically substituted for former Secretary Nielsen pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Mary Bauer (VA Bar No. 31388) (*pro hac vice*)
  *mary.bauer@splcenter.org*
1000 Preston Ave.
Charlottesville, VA
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.56

## DECLARATION OF O.S.

I, O.S., hereby declare under the penalty of perjury under the laws of the United States:

1. I make this declaration based on my own personal knowledge except where indicated otherwise. If I am called as a witness, I could and would testify fully and truthfully on these matters.

2. I am a citizen of Cuba.

3. I am 34 years old.

4. I am married. My partner is in Cuba with my two children, who are 13 and 5 years old.

5. I fled my country on or around May 26, 2018 because of political persecution against me. I did not participate in any of the political organizations of the Cuban government, which are many. Government officials would detain me whenever they felt like it. They would detain me because my spouse's family oppose the government, and they would tell me that I had to leave and abandon my family. The government's accusations and threats were constant. Because there was so much repression, I decided to try fleeing Cuba on a raft on two occasions, but they caught me and fined me. That's why I fled Cuba.

6. I am afraid of going back to my country because my life is in danger. I will always maintain my stance of not participating in anything related to the Cuban government, and they will punish me for that.

7. I traveled from Cuba to Guyana. From Guyana, I traveled through several counties en route to Mexico, including Brazil, Peru, Ecuador, Colombia, Panama, Costa Rica, Nicaragua, Honduras, and Guatemala. It was a very difficult journey.

8. I did not seek asylum in the countries I traveled through, nor in Mexico, they will give you a "safe passage" for the number of days they decide,

and if you don't comply with that their immigration authorities will take you and deport you to their country. In Costa Rica they gave me only three days.

9. I arrived in Matamoros, Mexico, at the border between Mexico and the United States, on or around June 8, 2019. On June 11, 2019, I went to the port of entry, which is at a bridge between Matamoros, Mexico and Brownsville, Texas.

10. At the bridge, Mexican immigration officials did not allow me to cross the bridge. The Mexican officials detained me while I was walking towards the bridge to get to the American officials, but the Mexican officials stopped me. They gave me instructions to put myself on a list and that later they would be calling names when the American immigration authorities asked for people.

11. I put myself on the waitlist in Matamoros on June 11, 2019. I had to show my passport to put myself on the list. My number on the list was 2008. The list was controlled by a person who identified himself as an official from the national migration agency in Mexico, or INM.

12. If I hadn't been turned away at the port of entry, or required to put myself on the list, I would have entered the port of entry to seek asylum in the United States on June 11, 2019.

13. At the beginning of my stay in Matamoros, I spent a few days sleeping on the Matamoros bridge, but the Mexican authorities threw us out of there. On a rainy day we looked for a small sheltered spot to spend the night, but they threw us out of there. A group of migrants and I decided to rent a house and pay the cost together.

14. After more than a month, I decided to cross the river to seek asylum in the United States. They still hadn't called my number. The list was very long. I decided to leave because they were giving out spots on the list to other people who arrived after me, and also because they hadn't called anyone off the list for two

weeks. I also decided to cross the river due to the very difficult security situation in Matamoros. I swam across on July 18, 2019.

15. I got to the American side and I turned myself in to American immigration, the Border Patrol, and then I was detained for about a week.

16. After that, on or around July 25, 2019, the U.S. government returned me to Mexico to wait for my hearings in immigration court. When they interviewed me before returning me to Mexico, on or around June 23 or 24, the U.S. officials didn't even listen to me or let me speak, and they made me sign something and told me that if I didn't sign it, they would sign it. I told them that I wouldn't feel safe if they returned me to Mexico but it didn't matter to them. For the moment I am living in Monterrey. My next hearing is October 23, 2019 in Laredo, Texas.

17. I am afraid of continuing to wait in Mexico. I was a witness to the kidnapping of three friends of mine. The criminals asked for nine thousand dollars for each one of them. They couldn't pay for their rescue.

18. I am afraid for my life, in my country and here in Mexico. I need humanitarian protection.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on the 21st day of September, 2019 in Monterrey, Mexico.

\_\_\_O.S._____
O.S. (initials only)

## DECLARACIÓN DE O.S.

Yo, O.S., por la presente declaro bajo pena de perjurio en conformidad con las leyes de los Estados Unidos:

1. Hago esta declaración basado en mi conocimiento personal excepto donde he indicado lo contrario. Si me llamaran como testigo, podría testificar y testificaría de manera competente y veraz sobre estos asuntos.

2. Soy ciudadano de Cuba.

3. Tengo 34 años.

4. Estoy casado. Mi pareja está en Cuba con mis dos hijos de 13 y 5 años.

5. Yo huí de mi país aproximadamente el 26 de mayo del año 2018 por persecución política hacia mi. Yo no participaba en ninguna de las organizaciones políticas del gobierno cubano, que son muchas. Oficiales del gobierno me llevaron preso cada que les daba la gana. Me llevaban preso debido a que la familia de mi esposa son opositores, y me decían que tenía que salirme y abandonar a mi familia. Eran constantes el acoso y las amenazas del gobierno. Decidí, debido a que era mucha la represión, tratar de huir en dos ocasiones de Cuba en balsas, pero me cogieron y me multaron. Por eso yo huí de Cuba.

6. Tengo miedo de regresar a mi país porque mi vida corre peligro. Siempre me voy a mantener en mi postura de no pertenecer a nada del gobierno cubano, y por eso me van a castigar.

7. Yo viajé de Cuba a Guyana. De Guyana, atravesé por varios países en rumbo a México, incluyendo Brasil, Perú, Ecuador, Colombia, Panamá, Costa Rica, Nicaragua, Honduras, y Guatemala. Fue un viaje muy duro.

8. No solicité asilo en los países que atravesé, ni en México, ellos te dan un salvoconducto y te ponen los días que ellos decidan, y si no cumples con ese tiempo, te agarra la inmigración y te deportan a tu país. En el caso de Costa Rica

sólo me permitieron tres días.

9. Llegué en Matamoros, México, en la frontera entre México y los EEUU, aproximadamente el 8 de junio del año 2019. El 11 de junio del 2019, yo fui al puerto de entrada, cual está en un puente entre Matamoros, México y Brownsville, Téxas.

10. En el puente, oficiales de inmigración mexicana no me permitieron cruzar el puente. Los oficiales mexicanos me detuvieron al estar caminando rumbo al puente para llegar con oficiales americanos, pero los oficiales mexicanos me lo impidieron. Me dieron instrucciones de anotarme a una lista que posteriormente ellos estarían llamando conforme autoridades migratorias estadounidenses pedirán a personas.

11. Me anoté en la lista de espera en Matamoros el 11 de junio del año 2019. Tuve que presentar mi pasaporte para anotarme en la lista. Mi número en la lista fue 2008. La lista era controlada por una persona que se identificó como oficial de migración nacional en México, o INM.

12. Si no hubiera sido rechazado en el puerto de entrada ni requerido anotarme en la lista, hubiera entrado al puerto de entrada para solicitar asilo a los EEUU el 11 de junio del año 2019.

13. Al principio de mi estancia en Matamoros, pasé unos días durmiendo en el puente de Matamoros, pero las autoridades mexicanas nos echaban del lugar. En un día lluvioso buscamos un pequeño resguardo para poder pasar la noche, pero ellos nos corrieron del lugar. Un grupo de migrantes y yo decidimos irnos a una renta de casa y pagar todos juntos ese gasto.

14. Después de más que un mes, yo decidí cruzar el río para solicitar asilo en los EEUU. Todavía no habían llamado mi número. La lista era muy larga. Decidí salir porque estuvieron dándole el lugar en la lista a otras personas que llegaron después y también porque pasaban hasta quince días sin llamar a nadie. Y

también decidí cruzar el río por la situación tan difícil de inseguridad en Matamoros. Crucé nadando el 18 de julio del año 2019.

15. Llegué al lado americano y me entregué a migración estadounidense, al Border Patrol, y de allí fui encerrado por aproximadamente 8 días.

16. Después, en aproximadamente el 25 de julio del año 2019, el gobierno estadounidense me regresó a México para esperar mis audiencias en la corte de inmigración. Cuando me entrevistaron antes de retornarme a México, aproximadamente el 23 o 24 de julio, los oficiales estadounidenses ni siquiera me escucharon, no me dejaron hablar, y me hicieron firmar pues me dijeron que si no firmaba ellos lo iban a firmar. Yo argumenté que no me sentía seguro de que me retornaran a México pero no les importó. Por el momento estoy viviendo en Monterrey. Mi próxima audiencia es el 23 de octubre del año 2019, en Laredo, Téxas.

17. Tengo miedo de quedarme esperando en México. Yo fui testigo del secuestro de tres amigos míos. Los criminales pedían nueve mil dólares por cada uno de ellos. Ellos no pudieron pagar por el rescate.

18. Yo tengo miedo por mi vida, en mi país y aquí en México. Necesito protección humanitaria.

Declaro bajo pena de perjurio según las leyes de los Estados Unidos que todo lo anterior es verdadero y correcto.

Ejecutado el día 21 de septiembre, 2019 en Monterrey, México.

_O.S._____
O.S. (firma de iniciales)

## TRANSLATOR'S CERTIFICATION

I, _Gabriela Maxcy_, declare that I am fluent in the English and Spanish languages.

I have reviewed the original Spanish declaration and the foregoing English translation thereof, and I certify that the English version is a faithful and accurate translation of the Spanish-language original.

I hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on the ___23___ day of September, 2019 in __Atlanta__, __Georgia__.

_____          _September 23, 2019_
Name: Gabriela Maxcy                Date