MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:   +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, | Case No.: 17-cv-02366-BAS-KSC |
| Plaintiffs, | |
| v. | **EXHIBIT 48 TO MOTION FOR PRELIMINARY INJUNCTION** |
| Kevin K. McAleenan,[1] *et al.*, | |
| Defendants. | |

---

[1] Acting Secretary McAleenan is automatically substituted for former Secretary Nielsen pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Mary Bauer (VA Bar No. 31388) (*pro hac vice*)
  *mary.bauer@splcenter.org*
1000 Preston Ave.
Charlottesville, VA
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.56

## DECLARATION OF MARLON DOE

I, Marlon Doe, hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters.

2. I am a citizen and national of Cameroon. I am 26 years old.

3. I have a wife, whom I had to leave behind in Cameroon when fleeing for my life. I fled my home country on January 18, 2019 because of the Anglophone Crisis in Cameroon. The government forces arrested me, jailed me, beat me and tortured me. They also ruined my business and burned my house to the ground.

4. I fled to Nigeria, where I knew I was in immediate danger of arrest and return to Cameroonian authorities. From Nigeria I traveled to Brazzaville, Democratic Republic of Congo, where I stayed until March 5, 2019. From the Congo I flew to Ecuador ~~on a plane which made a stop in Turkey~~. From Ecuador I travelled through Colombia, Panama, Costa Rica, Nicaragua, Honduras, and Guatemala before reaching Mexico. I travelled through these countries by bus, by walking, and by boat.

5. I arrived in Tijuana toward the end of May ~~or beginning of June~~. I tried to seek asylum at the San Ysidro Port of Entry and spoke with a US official there. I told him and the other officers in front of the gate that I wanted to seek asylum. The officer told me that I had to obtain a "ficha" number from Mexican officials first, and then told me I had to leave the area. I tried to explain that I was afraid to go back to Cameroon and that I was also afraid to remain in México.

6. The next morning I spoke with Mexican immigration officials who told me that I had to get a ficha and wait for my number to be called, that migrants

were not allowed to enter the United States directly to seek asylum. During the time that I was waiting for my number to be called the temporary visa that I obtained from Mexican immigration authorities in Tapachula, México expired. Because I did not have a valid immigration document, I was harassed and detained my Mexican immigration officials one day for several hours. When I was finally released with my friend, we were released far away from where we were staying and had to find a way to get back ourselves, without any help from the Mexican immigration officers who took us into custody.

7. If I had not been turned away at the port of entry and required to wait on the waitlist, I would have crossed into the United States at the port of entry to seek asylum on or about May 30, 2019.

8. I did not seek asylum in any of the countries that I passed through on my journey to the United States. In Nigeria I knew that it was not safe for me to seek protection there, and that if I tried to do so I would just get removed back to Cameroon. I witnessed Nigerian officials arrest and detain Cameroonian separatists and Cameroonian English speakers for removal back to Cameroon. I did not seek asylum or permanent status in any of the countries in Latin America. I do not speak Spanish and had a hard time communicating with people. I always felt at risk and was severely mistreated, especially in Honduras and México.

9. On the morning of July 17, 2019, after about two months of waiting for my number to be called, I was waiting with a friend at "El Chaparral," the area next to the San Ysidro Port of Entry where migrants listen out for their number to be called. Two Mexican immigration officers began harassing us, asking us many questions, demanding to see our documents permitting us to stay in Mexico. We told them that, like many other asylum seekers, our temporary visas had expired while waiting for our number to be called. We explained that we had spoken with the Mexican organization Grupo Beta, who oversees the "waitlist" asylum process

at El Chaparral, who had informed us that they knew this was a problem and that to protect ourselves all we had to do to write our names down with them, which we had already done.

10. The Mexican immigration officers did not care. They accused us of staying here illegally and arrested us. When we were transported, we were taken to a parking lot where a bus was waiting for us. There were several migrants already there. The bus was surrounded by approximately 10 Mexican military officers with guns. They pointed their guns at us. One of the military officers stood at the entrance of the bus and told us that we could get into the bus the "good way" or the "bad way." He was adjusting his gloves when he said "or the bad way." We were detained for approximately eight hours. They released us at 9:00 p.m., miles away from where we were living and El Chaparral Port of Entry.

11. On Saturday, August 10, 2019 my name was called and I was finally able to enter the United States at the San Ysidro PedWest port of entry. I am now detained at the Otay Mesa Detention Center in San Diego, California where I am waiting for the opportunity to present my asylum claim. After my fourth day in detention, I began to experience flashbacks of the traumatic experiences that I have lived in Cameroon along with panic attacks, which are still occurring. Furthermore, after the announcement of the new asylum transit rule, I began to experience physical complications due to my high blood pressure caused by the anxiety that the new asylum transit rule.

12. If I went back to Cameroon, I fear I would be killed. The civil war is still ongoing, and the government and its paramilitary forces execute people every day. I am not safe in any part of Cameroon because the authorities already targeted me multiple times.

13. The decision for me to leave my country was a difficult one. I did not want to leave my wife, or my family and I still fear for their safety.

14. I cannot live in any of the countries that I passed through because I was mistreated and felt completely unsafe.

15. I hope I am able to present my application for asylum here in the United States. Because I am afraid of being harmed in my country, I ask that my name not be included in public documents. I am afraid I what will happen to me if I am returned or to my family who is still in Cameroon.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the things described above are true and correct.

Executed on September 25, 2019 at San Diego, California, United States.

_____
Marlon Doe