MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:  +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, | Case No.: 17-cv-02366-BAS-KSC |
| Plaintiffs, | |
| v. | **EXHIBIT 49 TO MOTION FOR PRELIMINARY INJUNCTION** |
| Kevin K. McAleenan,[1] *et al.*, | |
| Defendants. | |

---

[1] Acting Secretary McAleenan is automatically substituted for former Secretary Nielsen pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Mary Bauer (VA Bar No. 31388) (*pro hac vice*)
  *mary.bauer@splcenter.org*
1000 Preston Ave.
Charlottesville, VA
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.56

## DECLARATION OF MOWHA DOE

I, Mowha Doe, hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters.

2. I am a citizen and national of Cameroon. I am 23 years old.

3. I fled my home country on or about December 7, 2018 [AB MD] because of many violent incidents I suffered due to the Anglophone Crisis (or the Ambazonia War) in Cameroon.

4. In October 2017, I was a college student at the University of Buea where I helped lead a peaceful protest march in Cameroon. As a result, I was arrested and detained during which time I was beaten and denied food. After my release I went into hiding. ON NOVEMBER 11, 2018, I WAS ARRESTED BY THE MILITARY

5. One day armed government forces were in front of my parents' home IN BAFUT BECAUSE as several of my family members were gathered to make plans for the funeral of THEY WERE DOING MASS another family member. An officer asked my father why we were all meeting. ARREST. Before my father could answer, he was executed in front of me. After this, I fled to [AB MD] Nigeria.

6. Since fleeing Cameroon, my uncle has informed me that the government has issued a warrant for my arrest and is still looking for me. I am terrified to be returned to Cameroon because of what has happened to me and my father.

7. On or about January 21, 2019, I flew on a plane from Nigeria to Ecuador, which also made a stop at Brazil, Argentina, and Peru. From Ecuador I travelled through Colombia, Panama, Costa Rica, Nicaragua, Honduras, and

Guatemala before reaching Mexico. I travelled through these countries by road transport, by foot and by boat. It was a long and dangerous journey.

8. I arrived in Tijuana in or about May 2019. I travelled to Tijuana to ask for asylum in the United States, where I heard it was safe. When I went to the port of entry there were four US immigration officials standing in front of the entrance. I explained to one of the officials that I wanted to apply for asylum in the United States. The officer told me ~~that the immigration officials only attend to people who have a "ficha" number on the list and that I would have to return with a "ficha."~~ to go back to CHAPARRA and wait for my number to be called, MD AB

9. ~~The next day~~ Around on or about mid June, I went to the port of entry ~~and spoke with~~ Grupo Beta told me to go away. About five days later, I was standing ~~officials in order to obtain a "ficha." The officers told~~ me that asylum seekers had at bridge near port of entry and a Mexican official ~~to wait for our number to be called and that we were not allowed to go directly to~~ came & told me to leave. I told him ~~that~~ immigration pass ~~the United States to seek asylum. Other migrants waiting in the line at the port of~~ from Tapachula. He took the document does not allow ~~entry told us the same thing.~~ told me me to be in federal areas. He told me if he sees me again he will arrest me.

10. I did not seek asylum in any of the countries that I passed through on my journey to the United States. In Nigeria I knew that it was not safe for me to seek protection there, and that if I tried to do so I would just get removed back to Cameroon. I witnessed their officials arrest and detain Cameroonian separatists and Cameroonian English speakers for removal back to Cameroon. I did not seek asylum or permanent status in any of the countries in Latin America because I felt unsafe, was mistreated and I do not speak Spanish. I was never made to feel safe in these Latin American countries, especially in Mexico. MD AB

11. On the morning of July 17, 2019, after about two months of waiting for my number to be called, I was waiting with a friend at "El Chaparral," the area next to the San Ysidro Port of Entry where migrants listen out for their number to be called. Two Mexican immigration officers began harassing us, asking us many questions, demanding to see our documents permitting us to stay in Mexico. We

told them that, like many other asylum seekers, our temporary visas had expired while waiting for our number to be called. We explained that we had spoken with the Mexican organization Grupo Beta, who oversees the "waitlist" asylum process at El Chaparral, who had informed us that they knew this was a problem and that to protect ourselves all we had to do to write our names down with them, which we had already done. The Mexican immigration officers did not care. They accused us of staying here illegally and arrested us. We were detained for approximately eight hours. They released us around 10:00 p.m., miles away from where we were living, and we had to find our own way home. [handwritten: THE Mexican Imm off told us they would give us new passes, but the lied and never did. MO AB]

12. After being released, I went to speak with Mexican immigration officials at the port of entry to ask them if I could obtain an extension of my temporary visa. However, the Mexican immigration official told me that I could not receive an extension. I asked him what would happen if I was arrested again while waiting for my number to be called. The officer responded that would be something of my concern, not his, for having an expired temporary visa.

13. On Saturday, August 10, 2019 [strikethrough: my number was called, and] I was finally able to enter the United States at the PedWest port of entry. I am now detained in San Diego, California where I am waiting for the opportunity to present my asylum claim. I am extremely worried about how the new law will affect my case. I risked so much to escape to the United States to seek asylum, and I am afraid that I will.

[handwritten insertion to para 13: After 2 weeks of working for Beta Group, they finally allowed me in even though my number wasn't called. MD AB]

14. If I went back to Cameroon, I fear I would be arrested and killed. I am terrified because the government has a warrant out for my arrest. I was already targeted, and I am not safe in any part of Cameroon.

15. It was difficult for me to leave my country and my journey to the United States was terrible. I did not want to leave my family, especially after the brutal murder of my father.

16. I cannot live in any of the countries that I passed through because I was mistreated and felt completely unsafe.

17. I am holding onto hope that I am able to present my application for asylum here in the United States. Because I am afraid of being harmed in my country, I ask that my name not be included in public documents. I fear that if my name is publicized, my family and I will be placed in even greater danger than we already are now. I could never forgive myself if something else happened to my family as a result of my pursuit of safety.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the things described above are true and correct.

Executed on September 25, 2019 at San Diego, California, United States.

_____
Mowha Doe