# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

Al Otro Lado, *et al.*, )
    *Plaintiffs*, )
)
)
)
v. ) No. 3:17-cv-02366-BAS-KSC
)
Kevin McAleenan, *et al.*, )
    *Defendants*. )
)

## DECLARATION OF SCOTT FALK

I, Scott Falk, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows, relating to the above-captioned matter:

1. I am the Chief Counsel for U.S. Customs and Border Protection (CBP). I have held this position since 2013.

2. In my role as Chief Counsel, I am the principal legal advisor for the Commissioner of CBP. Within CBP's Office of Chief Counsel (OCC), I manage a staff of approximately 385 attorneys and support personnel in 31 offices nationwide.

3. I am familiar with *Al Otro Lado v. McAleenan.* 3:17-cv-02366, as attorneys in my office currently are assisting the Department of Justice (DOJ) in defending CBP in this litigation. Currently, we have approximately twenty attorneys from across the country engaged in document discovery in this case.

4. I understand that, in response to Plaintiffs' First and Second Sets of Requests for Production, CBP has identified fourteen custodians from the Office of Field Operations (OFO) and the Office of Professional Responsibility (OPR), and that the CBP Office of Information Technology's eDiscovery Team has pulled all emails for these custodians from

1

January 1, 2016 through March 2019 (for six of the custodians) and July 2019 (for seven of the custodians). For the remaining custodian, I understand that emails have been pulled from January 1, 2016 through the date of his retirement in September 2018. I understand that, to date, CBP has identified three million email messages from these fourteen custodians. This number does not reflect email families, and thus does not reflect the individual item/document count. This number also does not include non-email documents from these custodians. I also understand that CBP has agreed to locate relevant documents from CBP's Human Resources Business Engine (HRBE), as well as materials located on four shared drives or internal SharePoint sites operated by OFO and CBP's Office of Training and Development.

5. I understand that of the three million email messages collected to date, DOJ estimates that, following the application of appropriate search terms to those email messages, approximately one million messages will need to be reviewed for responsiveness (some of which will be done through the use of active learning[1]). Assuming a twenty percent responsiveness rate, DOJ anticipates that this will result in approximately 200,000 messages that will need to be reviewed for privilege and confidentiality. I understand that these numbers are estimates based on the total message count and historical rates of search term hits because CBP and DOJ have not yet completed processing and uploading all custodians' emails into DOJ's Relativity system and applying relevant search terms to those emails. The attorneys currently working on document review are engaged in a

---

[1] CBP is currently using an active learning tool with DOJ's Relativity system, which uses a machine-learning algorithm to identify responsive and non-responsive documents based on coding initially applied by attorney reviewers.

2

responsiveness and privilege review for those email messages that have already been uploaded to Relativity.

6. I also understand that CBP has agreed to collect emails from one additional custodian for a period from October 1 to December 31, 2018.

7. I understand that the Plaintiffs have requested that this Court enter an order compelling the government to substantially complete its production of documents responsive to Plaintiffs' First and Second Set of Production by November 1, 2019, with substantial completion of five specific custodians' documents by September 16, 2019.

8. I provide this declaration to explain current resource constraints within CBP OCC, and why such a timeline would be unreasonable, given those resource constraints.

9. As an initial matter, it is important to note that document review, especially privilege and confidentiality review, is a labor-intensive process. Our attorneys generally need to discuss privilege issues with our clients and, in many cases, other governmental agencies. Discussions with the clients can be especially time-consuming, as it may require consultation with, for instance, OFO both at the headquarters level and in a field office, and may also require consultation with other CBP components such as the U.S. Border Patrol (both at headquarters and in the field), the Office of Intelligence, or OPR. Depending on the document in question, it may also require consultation with the Office of the Commissioner or individuals at Department of Homeland Security (DHS) headquarters. Privilege review may also involve consultation with other components of DHS, such as U.S. Immigration and Customs Enforcement and U.S. Citizenship and Immigration Services, as well as with other agencies, such as the DEA and the FBI. It also generally involves consultation with the DOJ litigation team. Conducting a thorough privilege and

3

confidentiality review of every document is essential in order to ensure that critical privileges are not waived. Therefore, it is important that each attorney take the time required to conduct this review.

10. Based on our experience with *Doe v. McAleenan* (D. Ariz. 4:15-cv-00250), for which the agency engaged in extensive class-action discovery in 2017, we estimate that an attorney or paralegal, assigned exclusively to document review, can review approximately 80 to 100 documents in an 8-hour day. In 2017, we had approximately 35 OCC personnel around the country involved in performing such review as one aspect of their day-to-day responsibilities.

11. While we similarly have a team of attorneys who are working on document discovery this year, it is important to note that this case is not the only one in which CBP is currently engaged in discovery. CBP is currently engaged in – or will soon begin – document discovery in two additional class actions, both of which will require teams of attorneys around the country to perform document review. In those two cases, the agency has identified approximately 420,000 documents for review. This is in addition to the significant number of other cases in litigation – in particular FOIA lawsuits – that have been filed against the agency, most of which involve the processing of thousands, if not tens of thousands, of records.[2] For example, OCC currently is defending a FOIA lawsuit in the Eastern District of Michigan where the records at issue have been broken down into four categories. One category alone contains over 9,300 records (over 30,000 pages). The agency has been ordered to process 3,356 pages per month through December 2019 or risk court sanctions. All of these lawsuits similarly require attorneys from around the country

---

[2] The average number of FOIA lawsuits against CBP has nearly doubled since FY17.

4

to spend considerable portions of their time on document review, while also ensuring that our demanding, mission-critical responsibilities do not suffer.

12. As explained above, we currently have approximately twenty attorneys who have been assigned to review documents for redaction and possible production in this case. All of the CBP attorneys assigned to this review also are responsible for handling their regular full-time workloads.

13. Any time that an attorney in my office must spend on document review is necessarily time that must be diverted from other critical job duties. For example, we have legal offices at both CBP's Field Operations Academy (where recently hired CBP officers are trained) and the U.S. Border Patrol Academy (where recently hired U.S. Border Patrol agents are trained). Our attorneys at these offices provide extensive legal training to each class that enters the Academy, including classroom teaching and any remedial after-hours instruction. As the Agency looks to hire more CBP officers, in particular, the legal staff at the Field Operations Academy will need to devote more hours to teaching and related activities. Any time that these attorneys must spend conducting document review is time that these attorneys will not be available for such training.

14. In addition, my office is currently engaged in several other significant cases that require extensive attorney hours outside of the civil discovery context. CBP is currently defending several other high-profile civil cases, including *Doe v. Nielsen* (described above), *Askins v. DHS* (S.D. Cal. 3:12-cv-02600), *Ms. L v. ICE* (S.D. Cal. 3:18-cv-00428), *Flores v. Barr* (C.D. Cal. 2:85-cv-4544), *Alasaad v. McAleenan,* (D. Mass. 1:17-cv-11730), and *El Ali v. Barr* (D. Md. 8:18-cv-2415). There are over forty Federal Tort Claims Act claims related to family separation around the country, all of which must be handled by attorneys in my

5

office. The attorneys in my office also serve as agency counsel for litigation assistance to DOJ in defense of other federal tort, *Bivens*, immigration and trade actions against the agency or its employees; for affirmative litigation in which the government is seeking duties, penalties, liquidated damages, or forfeiture of property in cases before federal district courts and the Court of International Trade; and for appeals in non-CBP cases that nevertheless impact CBP's mission and operations.

15. Attorneys in my office also serve as the exclusive representatives of the Agency in several hundred administrative matters before the Merit Systems Protection Board, Equal Employment Opportunity Commission, Federal Labor Relations Authority, and labor arbitrators each year.

16. Additionally, approximately thirty CBP attorneys across the country have been designated as Special Assistant United States Attorneys (SAUSAs) and are responsible for appearing daily on behalf of the government in federal unlawful entry prosecutions and in certain border felony prosecution cases, whether on a full-time or part-time basis, including in the Southern District of California, District of Arizona, Western District of Texas, and Southern District of Texas. During FY 2019 alone, CBP SAUSAs have been assigned to handle over 30,000 misdemeanor and felony prosecutions.

17. My attorneys engage in a wide array of other important legal work for the Agency on a daily basis, including advising the clients on labor and employment matters, search and seizure, the application of law enforcement authorities, the construction of border infrastructure, fiscal and appropriations law, environmental law, and myriad trade enforcement issues (including review of civil penalty actions, valuation and liquidation questions related to goods that have entered the country, and questions related to prohibited

or restricted merchandise and merchandise produced or manufactured with forced labor). CBP has approximately 60,000 employees across the country, over 43,000 of whom are law enforcement personnel, and our relatively small number of attorneys provide mission-critical advice to this large workforce, on a wide variety of legal issues, including all the issues described above, on a daily basis. As previously explained, we have approximately twenty attorneys (or roughly 5.2 percent of my workforce) from across the country engaged in document discovery in this case. My office would be forced to divert a significant number of attorneys and support personnel from our other mission-critical tasks (including document review for other significant cases in litigation) to add to the already considerable team we have working on this case should we be required to complete document discovery on the timelines provided above.

18. I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 20th day of August 2019.

Scott F___
Chief Counsel
Office of Chief Counsel
U.S. Customs and Border Protection

7