# DEFENDANTS' EXHIBIT 10

Declaration of Ashley B. Caudill-Mirillo, Deputy Chief, Asylum Division, U.S. Citizenship and Immigration Services

(Oct. 4, 2019)

*Al Otro Lado, Inc., et al. v. Kevin McAleenan, et al.*,

No. 3:17-cv-02366-BAS-KSC (S.D. Cal.)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*,  ) <br>    *Plaintiffs*,              ) <br>                                      ) <br> v.                              ) <br>                                      ) <br> Kevin K. McAleenan, *et al.*,    ) <br>    *Defendants*.        ) | No. 3:17-cv-02366-BAS-KSC |

**DECLARATION OF ASHLEY B. CAUDILL-MIRILLO**

I, Ashley B. Caudill-Mirillo, pursuant to 28 U.S.C. § 1746, and based upon personal knowledge and information made known to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows relating to the above-captioned matter.

1. I am currently the Deputy Chief of the Asylum Division with U.S. Citizenship and Immigration Services (USCIS), U.S. Department of Homeland Security (DHS). I have held this position since February 2019. Prior to becoming the Deputy Chief of the Asylum Division, I served as the Management Branch Chief at Asylum Division Headquarters since 2015, where I was responsible for overseeing the Division's resource management and strategic planning, as well as its contracts, performance management initiatives, and labor-management obligations among other duties. I joined USCIS as an Asylum Officer in the New York Asylum Office in 2008 and in 2011, I became a Supervisory Asylum Officer. In 2012, I was selected to be the Deputy Director of the New York Asylum Office. In my current position as Deputy Chief of the Asylum Division, I oversee all Asylum Offices

1

nationwide as well as the Division's headquarters component, which is involved in policy development, quality assurance, and overall management of the asylum program.

2. The Declaration of Randy Howe, Executive Director for Operations, Office of Field Operations, U.S. Customs and Border Protection (CBP), explains at paragraphs 4 to 6 that CBP does not keep a systematic record of encounters with individuals at the international boundary line between the United States and Mexico who are informed that access to a port of entry is not immediately available, and that CBP records would not include any indicia of whether an individual, at some point, sought entry to the United States at the international boundary at a time when the port did not have capacity to immediately process the individual.

3. Therefore, USCIS would have to individually question each alien during the credible fear screening interview to determine whether they sought entry to the United States before July 16, 2019, but were informed that access to the port of entry was not immediately available. Additionally, for cases where the credible fear screening interview already took place, USCIS would have no way to determine if an individual sought entry to the United States before July 16, 2019, but was informed that access to the port of entry was not immediately available without reviewing the prior case's notes and doing case-by-case follow-up interviews. USCIS would also have no way to either confirm or refute the truth of the alien's assertions that they sought to enter the United States before July 16, 2019, but were told that the port did not have capacity to immediately process them, in order to ascertain whether an individual meets the provisional class definition.

4. In the absence of such record or documentation from CBP, USCIS personnel would need to expend additional time asking questions in all cases to which the Interim Final Rule applied to elicit information on this issue, as well as develop sufficient testimony to establish the

2

credibility of this assertion. For cases where the credible fear screening interview already took place, calling individuals back in for a follow up interview to take testimony on whether they sought entry before July 16, 2019, but were told that the port did not have capacity to immediately process them, would drastically increase USCIS' workload. In FY 2019, USCIS received 105,301 credible fear referrals. Given the incredible volume of credible fear cases that USCIS already handles, as well as the time sensitive challenges of processing these cases, individually questioning each alien on this issue going forward and calling individuals who were already screened back in for follow up interviews would place an unmanageable burden on USCIS.

Executed this 4th day of October, 2019.

*Ashley B. Caudill-Mirillo*
Ashley B. Caudill-Mirillo
Deputy Chief, Asylum Division
U.S. Citizenship and Immigration Services
Department of Homeland Security