JOSEPH H. HUNT
Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
SAIRAH G. SAEED (IL 6290644)
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorneys
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | Hon. Cynthia A. Bashant |
| v. | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PROVISIONAL CLASS CERTIFICATION (ECF No. 293)** |
| Kevin K. McALEENAN,* Acting Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*, | |
| *Defendants* | Special Briefing Schedule Ordered |

---

\* Acting Secretary McAleenan is automatically substituted for former Secretary Nielsen pursuant to Federal Rule of Civil Procedure 25(d).

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................... ii

INTRODUCTION .................................................................... 1

FACTUAL STATEMENT ............................................................ 2

    I.   CBP Engages in Metering at Particular Ports of Entry When Necessary to Protect the Safety and Security of the Port and Travelers. ................................................................... 2

    II.  Changes to the Asylum Process Under the July 16, 2019 Interim Final Rule ................................................................... 3

    III. The Proposed Class Representatives ................................... 5

ARGUMENT ......................................................................... 7

    I.   Congress Has Precluded the Classwide Relief that Plaintiffs Seek ........................................................................ 7

    II.  The Court Cannot Enter Plaintiffs' Requested Preliminary Injunctive Relief Absent Class Certification. ........................ 9

    III. Plaintiffs Have Not Satisfied the Prerequisites to Class Certification Because There is No Adequate or Typical Class Representative, There is No Truly Common Question, and the Proposed Class is Not Ascertainable. ................................ 10

        A.  Plaintiffs Lack Standing and So Have Not Identified Anyone Whose Claims are Typical or Representative of Those of the Putative Class. ..................................................... 10

        B.  The Individual Plaintiffs are Not Adequate Representatives. ............... 14

        C.  Plaintiffs Fail to Establish Commonality. ........................... 16

        D.  The Proposed Class Flunks Rule 23(b)(2) and is Not Ascertainable. ................................................... 22

CONCLUSION ...................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*AILA v. Reno*
  199 F.3d 1352 (D.C. Cir. 2000) ...................................................................8

*Almeida-Sanchez v. United States*,
  413 U.S. 266 (1973) ...................................................................................18

*Ardds v. Hodge*,
  2017 WL 5632076 (S.D. Cal. Nov. 22, 2017) .............................................9

*Astiana v. Ben & Jerry's Homemade, Inc.*,
  2014 WL 60097 (N.D. Cal. Jan. 7, 2014) ...................................................22

*Barr v. East Bay Sanctuary Covenant*,
  No. 19A230, 2019 WL 4292781 (U.S. Sept. 11, 2019) ...........................1, 5

*Brantley v. Maxwell-Jolly*,
  656 F. Supp. 2d 1161 (N.D. Cal. 2009) .......................................................9

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ...................................................................25

*Canales-Robles v. Peters*,
  2018 WL 4762899 (D. Or. 2018) ...............................................................15

*Carroll v. United States*,
  267 U.S. 132 (1925) ...................................................................................18

*Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*,
  2016 WL 314400 (N.D. Cal. Jan. 25, 2016) ..............................................25

*Coal. for a Healthy California v. F.C.C.*,
  87 F.3d 383 (9th Cir. 1996) .......................................................................15

*E. Texas Motor Freight Sys. Inc. v. Rodriguez*,
  431 U.S. 395 (1977) ...................................................................................14

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) .....................................................................16

*Flores v. Sessions*,
  2017 WL 6060252 (C.D. Cal. June 27, 2017) ............................................20

*Gen. Tel. Co. v. Falcon*,
  457 U.S. 147 (1982) ..............................................................................10, 11

*Genesis Healthcare Corp. v. Symczyk*,
  569 U.S. 66 (2013) .....................................................................................16

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1021 (9th Cir. 1998) ................................................................ 14, 17

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ................................................................ 11, 14

*I.N.S. v. Cardoza Fonseca*,
  480 U.S. 421 ................................................................................................ 5

*J.E.F.M. v. Lynch*,
  837 F.3d 1026 (9th Cir. 2016) ............................................................... 8, 9

*Kiyemba v. Obama*,
  555 F.3d 1022 (D.C. Cir. 2009) ................................................................ 18

*Korab v. McManaman*,
  805 F. Supp. 2d 1027 (D. Haw. 2011) ....................................................... 9

*LaReau v. Manson*,
  383 F. Supp. 214 (D. Conn. 1974) ........................................................... 15

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
  350 F.3d 1018 (9th Cir. 2003) .................................................................. 13

*Lucas v. Breg, Inc.*,
  212 F. Supp. 3d 950 (S.D. Cal. 2016) ....................................................... 24

*Marcus v. BMW of North America, LLC*,
  687 F.3d 583 (3d Cir. 2012) ...................................................................... 11

*Molski v. Gleich*,
  318 F.3d 927 (9th Cir. 2003) .................................................................... 16

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
  926 F.3d 528 (9th Cir. 2019) ............................................................... 13, 15

*Nguyen Da Yen v. Kissinger*,
  70 F.R.D. 656 (N.D. Cal. 1976) ................................................................ 17

*O'Connor v. Boeing N. Am., Inc.*,
  184 F.R.D. 311 (C.D.Cal.1998) ................................................................ 22

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) .................................................................... 21

*Pena v. Lynch*,
  815 F.3d 452 (9th Cir. 2016) ...................................................................... 5

*Preiser v. Newkirk*,
  422 U.S. 395 (1975) .................................................................................. 15

*Rhodes v. Cracker Barrel Old Country Store, Inc.*,
  213 F.R.D. 619 (N.D. Ga. 2003) .............................................................. 21

*Rutledge v. Elec. Hose & Rubber Co.*,
  511 F.2d 668 (9th Cir. 1975) .................................................................10

*Schulken v. Washington Mut. Bank*,
  2012 WL 28099 ......................................................................................16

*Sethavanish v. ZonePerfect Nutrition Co.*,
  2014 WL 580696 (N.D. Cal. Feb. 13, 2014) ..........................................23

*Spinelli v. Capital One Bank*,
  265 F.R.D. 598 (M.D. Fla. 2009).............................................................16

*Stanford v. Home Depot U.S.A., Inc.*,
  2008 WL 7348181 (S.D. Cal. May 27, 2008) .................................. 13, 15

*Torres v. Goddard*,
  314 F.R.D. 644 (D. Ariz. 2010) ..............................................................14

*United Steel Workers v. ConocoPhillips Co.*,
  593 F.3d 802 (9th Cir. 2010) ..................................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ......................................................................... passim

*Williams v. Agilent Technologies*,
  2004 WL 2780811 (N.D. Cal. Dec. 3, 2004).........................................21

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ......................................................... 10, 11

*Wolph v. Acer Am. Corp.*,
  272 F.R.D. 477 (N.D. Cal. 2011).............................................................22

*Xavier v. Philip Morris USA Inc.*,
  787 F. Supp. 2d 1075 (N.D. Cal. 2011) ........................................... 22, 25

*Zepeda v. INS*,
  753 F.2d 719 (9th Cir. 1983) ....................................................................9

## STATUTES

8 U.S.C. § 1158 ............................................................................................4

8 U.S.C. § 1158(a)(1) .................................................................................18

8 U.S.C. § 1158(a)(2) ...................................................................................4

8 U.S.C. § 1158(b)(1)(A) .............................................................................4

8 U.S.C. § 1158(b)(1)(B) .............................................................................4

8 U.S.C. § 1158(b)(2)(A)(vi) .....................................................................13

8 U.S.C. § 1158(b)(2)....................................................................................4

iv

8 U.S.C. § 1158(b)(2)(C) ..............................................................................4

8 U.S.C. § 1225(b)(1).......................................................................... 1, 4, 7, 8

8 U.S.C. § 1225(b)(2) ...................................................................................4

8 U.S.C. § 1229 ............................................................................................4

8 U.S.C. § 1229a .......................................................................................4, 7

8 U.S.C. § 1231(a)(5) ............................................................................. 7, 13

8 U.S.C. § 1252(a)(2)(A) .............................................................................8

8 U.S.C. § 1252(a)(2)(A)(iii) .......................................................................5

8 U.S.C. § 1252(a)(2)(e) ..............................................................................8

8 U.S.C. § 1252(e) .......................................................................................8

8 U.S.C. § 1252(e)(1)(B) .............................................................................8

8 U.S.C. § 1252(e)(2) ...................................................................................8

8 U.S.C. § 1252(e)(3) ...................................................................................8

8 U.S.C. § 1252(e)(4) ...................................................................................8

8 U.S.C. § 1252(e)(5) ...................................................................................8

8 U.S.C. § 1253(h) .......................................................................................5

## RULES

Fed. R. Civ. P. 23 ................................................................................ 7, 8, 10

Fed. R. Civ. P. 23(a) ....................................................................... 10, 16, 22

Fed. R. Civ. P. 23(a)(3) ..............................................................................10

Fed. R. Civ. P. 23(a)(4) ..............................................................................16

Fed. R. Civ. P. 23(b) ..................................................................................10

Fed. R. Civ. P. 23(b)(2)....................................................................... *passim*

## REGULATIONS

8 C.F.R. § 208.30(e)(5)(iii) .........................................................................5

# ADMINISTRATIVE RULES AND DECISIONS

*Aliens Subject to a Bar on Entry Under Certain Presidential Proclamations; Procedures for Protection Claims,*
    83 Fed. Reg. 55934, 55935 (Nov. 9, 2018) ........................................................24

*Asylum Eligibility and Procedural Modifications,*
    84 Fed. Reg. 33,829 (July 16, 2019).....................................................1, 4, 5, 12

# **INTRODUCTION**

This Court should deny Plaintiffs' request to certify a class in aid of their requested extraordinary injunction barring Defendants from applying—to thousands of aliens—an interim final rule governing asylum eligibility that, just weeks ago, the Supreme Court permitted to go into effect nationwide and without limitation. *See* Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33,829 (July 16, 2019) ("IFR" or "Rule"); Order, *Barr v. East Bay Sanctuary Covenant*, No. 19A230, 2019 WL 4292781 (U.S. Sept. 11, 2019).

First, class certification is barred by the Immigration and Nationality Act ("INA"). That statute precludes class challenges to the application of the Rule in expedited removal under 8 U.S.C. § 1225(b)(1). The statute also precludes district-court challenges to the application of the Rule in regular removal proceedings by channeling any such claims to courts of appeals on individual petitions for review. Plaintiffs' class-certification motion never addresses these statutory bars, but those bars are alone a sufficient basis for denying their class-certification motion.

Second, Plaintiffs fail to establish the prerequisites for maintaining a class action. To start, Plaintiffs lack standing: Plaintiffs have not shown that any of them has been or could be subject to the Rule, and thus they have not shown that any named Plaintiff is a member of the class that their lawyers propose to certify. This Court cannot certify a class where no plaintiff is subject to the challenged policy—doing so would disregard core Article III limits on judicial authority. For this same reason, the named Plaintiffs' claims are not typical of those of the proposed class, and they are inadequate class representatives.

Plaintiffs' claims also lack commonality because there are no common questions that are capable of generating "common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiffs frame their request for injunctive relief as dependent on the purported illegality of the metering practices challenged in their lawsuit. As the Court explained in its Order

1

on Defendants' Motion to Dismiss, "potentially legitimate factors" may exist to justify those metering practices. Order on Mot. to Dismiss 60 (ECF No. 280) ("MTD Op."). Accordingly, under this ruling, the legality of metering cannot be evaluated on a classwide basis using common proof. Instead, the Court would need to examine each and every implementation of metering at each port of entry to the United States on each and every day to determine whether the circumstances at those times legitimately justify those implementations. Class treatment is inappropriate in such circumstances.

Finally, Plaintiffs' proposed class not appropriate for certification under Rule 23(b)(2) and is not ascertainable because Plaintiffs have not demonstrated reliable means of identifying the individuals who would receive the relief Plaintiffs seek.

## **FACTUAL STATEMENT**

### I. **CBP Engages in Metering at Particular Ports of Entry When Necessary to Protect the Safety and Security of the Port and Travelers.**

CBP's Office of Field Operations ("OFO") operates the official ports of entry (ports, or "POEs") to the United States, including POEs along the U.S.-Mexico border. Ex. 1[1] ¶ 3. OFO is thus responsible for border security and for ensuring the safety and security of travelers passing through those ports. *See* Ex. 1 ¶¶ 3–5; Halaska Decl. Ex. 3 ¶ 9 (ECF No. 307-4). OFO has faced a challenge to its operations at various points since 2016 due to extremely high numbers of individuals without travel documents presenting themselves at those ports. *See, e.g.*, Exs. 2, 3.

CBP has managed in various ways the flow of individuals without documents sufficient for lawful entry at particular ports where the numbers of individuals waiting exceeded port capacity. Exs. 2, 3. "Metering," or queue management, is the process by which CBP manages the flow of pedestrian traffic into land border POEs.

---

[1] Unless otherwise specified, Exhibits are to the Declaration of Katherine J. Shinners submitted herewith.

DEFS.' OPP'N TO PLS.' MOT.
FOR PROV. CLASS CERT.
Case No. 3:17-cv-02366-BAS-KSC

Ex. 4 ¶ 2. Typically, metering involves determining whether a traveler who is approaching the port has documentation that appears to permit them to lawfully enter the United States. *Id.* If the port lacks the capacity to process that person, then she may be told that access to the port is not immediately available. *Id.* Individuals without travel documents require "resource-intensive" inspections, and the POE must ensure "that it has sufficient capacity to conduct such inspections, as well as capacity to temporarily hold those individuals found inadmissible to the United States pending their transfer out of CBP custody to another federal agency." *Id.*

In April 2018, Todd Owen, CBP's Executive Assistant Commissioner for Field Operations, issued a memo providing guidance on OFO's authority to "meter the flow of travelers at the land border to take into account the port's processing capacity." Ex. 5 at 1. Such actions may be taken "[w]hen necessary or appropriate to facilitate orderly processing and [to] maintain the security of the port and safe and sanitary conditions for the traveling public." *Id.* The metering guidance thus allows Directors of Field Operations ("DFOs") to elect to use metering as necessary. *Id.* The guidance, by its terms, does not permit OFO to refuse to process an individual. *Id.* Rather, it expressly instructs that "[o]nce a traveler is in the United States, he or she must be fully processed." *Id.* It also instructs that "DFOs may not create a line specifically for asylum-seekers only, but could, for instance, create lines based on legitimate operational needs, such as lines for those with appropriate travel documents and those without such documents." *Id.* The decision to implement metering procedures is dependent on a variety of ever-changing factors, including the ports' holding capacities, the ports' throughputs, the characteristics and demographics of individuals already in custody, and the resources available for processing and inspection in light of OFO's other mission responsibilities. Ex. 6 ¶¶ 6–11; Halaska Decl. Ex. 3 (ECF No. 307-4) ¶¶ 3–10.

## II. Changes to the Asylum Process Under the July 16, 2019 Interim Final Rule

Once an alien enters the United States at a port, various components of the

DEFS.' OPP'N TO PLS.' MOT.
FOR PROV. CLASS CERT.
Case No. 3:17-cv-02366-BAS-KSC

Department of Justice ("DOJ") and the Department of Homeland Security ("DHS") process that individual using relevant procedures. Certain inadmissible aliens who express a fear of return to their home country are subject to procedures to assess eligibility for asylum or protection from removal through expedited removal or regular removal proceedings. *See* 8 U.S.C. §§ 1225(b)(1), 1225(b)(2), 1229, 1229a.

As explained more fully in Defendants' Opposition to Plaintiffs' Preliminary Injunction Motion, the determination whether to grant asylum to aliens who otherwise meet statutory eligibility criteria lies within the discretion of Attorney General or the Secretary of Homeland Security. *Id.* §§ 1158(a)(2), (b)(1)(A)–(B), (b)(2); Defs.' Opp. to Mot. for. Prelim. Inj. 3, 12 (ECF No. 307) ("PI Opp."). As part of this discretion, the Attorney General and the Secretary "may by regulation establish additional limitations and conditions, consistent with [section 1158], under which an alien shall be ineligible for asylum." *Id.* § 1158(b)(2)(C).

Exercising their express statutory authority, on July 16, 2019, the Attorney General and the Acting Secretary issued the Rule. The Rule applies only prospectively to aliens who enter or arrive in the United States on or after July 16, 2019. 84 Fed. Reg. at 33830. Subject to limited exceptions, it establishes a mandatory bar on asylum eligibility for an alien who enters or attempts to enter the United States across the southern border, but who did not apply for protection from persecution or torture where it was available in at least one third country through which he or she transited en route to the United States. 84 Fed. Reg. at 33,835. The Rule also requires asylum officers and immigration judges to apply this new bar on asylum eligibility when administering the credible-fear screening process during expedited removal. *Id.* at 33,830. This means that when an alien in expedited removal proceedings is referred for an interview with an asylum officer, but is ineligible for asylum under the third-country-transit bar, the asylum officer will make a negative credible-fear determination. The asylum officer will then apply "the long-established reasonable-fear standard to assess whether further proceedings on a possible statutory withholding or CAT

protection claim are warranted." *Id.* at 33,837. If the asylum officer makes a positive reasonable-fear determination, the alien is placed into regular removal proceedings under section 1229a for further consideration of the withholding or CAT claims. *Id.*; *see* 8 C.F.R. § 208.30(e)(5)(iii). If the asylum officer makes a negative credible- or reasonable-fear determination, the alien may appeal either or both determinations to an immigration judge. 84 Fed. Reg. at 33,838. Consistent with the statute, the immigration judge's determination is not appealable to either the Board of Immigration Appeals or an Article III court. 8 U.S.C. § 1252(a)(2)(A)(iii); *see Pena v. Lynch*, 815 F.3d 452, 455 (9th Cir. 2016). The Rule does not impact an alien's ability to obtain withholding of removal or CAT protection, through which the United States satisfies its non-refoulement obligations. 84 Fed. Reg. at 33,830, 33,837–38; *e.g.*, *Cardoza Fonseca*, 480 U.S. at 429 (referring to the former withholding of removal statute 8 U.S.C. § 1253(h), not the asylum statute, as "the counterpart" of Article 33.1).

As explained in Defendants' PI Opposition, the Rule has been challenged in other district courts. *See* PI Opp. 4–5 (summarizing other proceedings). Although a district judge issued a nationwide preliminary injunction against the Rule, the Supreme Court stayed that order, allowing the Rule to go into effect nationwide. *East Bay*, No. 19A230, 2019 WL 4292781.

## III.  The Proposed Class Representatives[2]

No named Plaintiff is subject to the Rule at this time, and thus Plaintiffs have identified no member of the proposed subclass as a proposed class representative.

Plaintiffs Abigail Doe, Beatrice Doe, and Carolina Doe are natives and citizens of Mexico. Second Am. Compl. ("SAC") ¶¶ 24, 25, 26. These Plaintiffs all

---

[2] It is not clear which Plaintiff(s) seek to represent the proposed provisional class. Plaintiffs appear to argue that all named individual Plaintiffs can represent the class, Pls.' Mem. 1, 19–20, but they have submitted a declaration from only one Plaintiff. *See* Medlock Decl., Ex. 15 (Oct 10, 2018 Decl. of Roberto Doe) (ECF No. 293-17). In an abundance of caution, Defendants assume that Plaintiffs are proposing any or all individual Plaintiffs as representatives of the putative provisional class.

allege that they entered ports in May 2017, but that CBP officials misinformed or coerced them into withdrawing their applications for admission to the United States. *Id.* ¶¶ 119, 125–31, 134–36. Plaintiffs Dinora Doe and Ingrid Doe allege that they were given misinformation and turned away from ports in August 2016 and June 2017, respectively. *Id.* ¶¶ 141–44, 149–51.

All named Plaintiffs except Beatrice Doe and Roberto Doe eventually entered, or in some cases re-entered, the United States at a port of entry before July 16, 2019. Abigail Doe entered on July 15, 2017; Carolina Doe entered on July 15, 2017; Dinora Doe entered on July 18, 2017; Ingrid Doe entered on July 15, 2017; Maria Doe entered on October 18, 2018; Ursula and Juan Doe entered on October 19, 2018; Victoria Doe entered on October 18, 2018; Bianca Doe entered on October 18, 2018; Emiliana Doe entered on October 18, 2018; and Cesar Doe entered on October 18, 2018. Exs. 7-17.

Plaintiff Roberto Doe alleges that he approached the Hidalgo Port of Entry on October 2, 2018, but was told that the Port was "all full" and that he could not enter. Medlock Decl., Ex. 15 (ECF No. 293-17) ¶¶ 4–5. Roberto Doe then spoke with Mexican officials, who told him he "could apply for a humanitarian visa" in Mexico. *Id.* ¶ 10. In November 2018, Plaintiffs alleged that Roberto Doe was in the custody of Mexican officials and that his deportation to Nicaragua was imminent. SAC ¶ 159. Before these alleged 2018 events, Roberto Doe had illegally entered the United States at least three times without inspection and had previously been ordered removed from the country. Exs. 18-23. DHS first encountered Roberto Doe in 2002 in Douglas, Arizona, and granted him voluntary return to Mexico (as Roberto had claimed to be a Mexican national). Ex. 18. DHS encountered Roberto again in Texas in 2005 and issued him a Notice to Appear in removal proceedings under 8 U.S.C. § 1229a. Exs. 18, 19. Roberto failed to appear for his removal proceedings, and on June 15, 2005, an immigration judge ordered him removed *in absentia*. Ex. 20. Roberto was eventually apprehended and removed to Nicaragua in December 2006. Ex.

21. In November 2011, Roberto Doe was encountered in Texas, having again entered the United States without inspection. Ex. 22. DHS reinstated Roberto's prior removal order, *see* 8 U.S.C. § 1231(a)(5), and removed him from the United States in December 2011. Exs. 21, 23. Roberto did not claim a fear of return to Nicaragua during his 2011 encounter. Ex. 22.

## ARGUMENT

The Court should deny Plaintiffs' Motion for Provisional Class Certification.

## I.    Congress Has Precluded the Classwide Relief that Plaintiffs Seek.

Together, Plaintiffs' Motion for Provisional Class Certification and Motion for a Preliminary Injunction ask this Court to prevent DOJ and DHS from applying the Rule to thousands of unnamed putative subclass members' potential asylum claims—some of which would be adjudicated in expedited removal proceedings under section 1225(b)(1), and some in "regular" removal proceedings under section 1229a. *See* Pls.' Mem. in Support of Pls.' Mot. for Class Cert. 13 (ECF No. 293-1) ("Pls.' Mem."). Regardless of whether Plaintiffs can otherwise meet the class-certification requirements of Rule 23 or the preliminary-injunction standards (which they cannot), the INA bars this Court from granting the classwide relief Plaintiffs seek.

***Class Actions are Prohibited in Challenges to Expedited Removal Proceedings.*** The INA divests this Court of jurisdiction to certify a class on any claims or requests for relief that seek review of expedited removal orders, including claims that seek to bar DOJ or DHS from applying the Rule to the asylum claims of putative provisional subclass members who are in or will be placed into expedited removal proceedings, or to implement section 1225(b)(1) through mandatory application of asylum ineligibility rules in expedited removal. As explained in Defendants' PI Opposition, the statute provides for limited review of matters related to section 1225(b)(1)'s expedited removal proceedings, and that review may be had only in the U.S. District Court for the District of Columbia (other than in individual habeas cor-

pus proceedings). PI Opp. 7–9 (citing 8 U.S.C. §§ 1252(a)(2)(A), (e)). Most importantly for purposes of this Motion, class actions are unavailable in those limited cases where judicial review of expedited removal procedures is available: "[N]o court may . . . certify a class under Rule 23 of the Federal Rules of Civil Procedure in any action for which judicial review is authorized under [§ 1252(e)(2)–(5)]." 8 U.S.C. § 1252(e)(1)(B). This is a clear "prohibition on class actions." *AILA v. Reno*, 199 F.3d 1352, 1359 (D.C. Cir. 2000). Thus, no Court may certify Plaintiffs' putative provisional subclass to the extent that it challenges application of the Rule in the context of expedited removal procedures. As the D.C. Circuit explained, in section 1252(e) "Congress meant to allow litigation challenging" expedited removal "by, and only by, aliens against whom the new procedures had been applied." *Id.* at 1359–60. So this Court lacks jurisdiction to certify a class for the injunctive remedy Plaintiffs seek with respect to application of the Rule in expedited removal.

***Review of Any Issue Arising in Removal Proceedings is Channeled to Individual Petitions for Review in the Courts of Appeals—Not District Court.*** The INA similarly precludes district-court review of the asylum claims of putative provisional subclass members in regular removal proceedings—a group for whom Plaintiffs also have not named any provisional representative. As explained in Defendants' PI Opposition, "*any* issue—whether legal or factual—arising from *any* removal-related activity can be [judicially] reviewed *only* through the [petition-for-review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016); PI Opp. 9–10. This means that Plaintiffs' argument about the substantive standard they claim should be applied to their future asylum claims must be channeled for consideration, on an individual rather than class basis, into review of any final orders of removal in the appropriate courts of appeals. This is true even though Plaintiffs are asserting claims on behalf of a putative class. In *J.E.F.M.*, for example, the Ninth Circuit affirmed the dismissal of putative class claims asserting that juveniles have a right to counsel in removal proceedings because the INA precludes district court jurisdiction over such claims

DEFS.' OPP'N TO PLS.' MOT.
FOR PROV. CLASS CERT.
Case No. 3:17-cv-02366-BAS-KSC

and requires them to be raised as individual claims in the context of review of removal proceedings under the INA. *Id.* Thus, the Court lacks jurisdiction over such claims and should decline to certify any class.

## II. The Court Cannot Enter Plaintiffs' Requested Preliminary Injunctive Relief Absent Class Certification.

Plaintiffs are also incorrect when they suggest that the Court could grant their requested preliminary injunction without certifying a class. *See* Pls.' Mem. 12. "The court may not determine the rights of persons not before it." *Ardds v. Hodge*, 2017 WL 5632076, at *5 (S.D. Cal. Nov. 22, 2017) (citing, *inter alia*, *Zepeda v. INS*, 753 F.2d 719, 727–28 (9th Cir. 1983)). Thus, "[w]ithout a properly certified class, a court cannot grant relief on a class-wide basis." *Zepeda*, 753 F.2d at 728 n.1. While courts have in some cases granted a preliminary injunction that benefits others beyond the named plaintiffs, that would be appropriate (if ever) only where broader relief is the "inevitable" result of granting relief on the named plaintiffs' claims. *See id.* For example, to remedy individual plaintiffs' claims of segregated public transportation, a court may order wide desegregation of transportation that may benefit others who are similarly situated. *Id.*

That is not the case here. To order the type of classwide relief Plaintiffs seek in this case—the injunction of the application of the Rule to a particular subclass of individuals of which the named Plaintiffs are not even members—Plaintiffs must satisfy Rule 23's requirements for the maintaining a class action. *See Korab v. McManaman*, 805 F. Supp. 2d 1027, 1039 (D. Haw. 2011).[3] As explained above, Plaintiffs cannot obtain class certification for threshold jurisdictional reasons. And as detailed below, even if the Court has jurisdiction to certify a class, Plaintiffs have not met their burden for maintaining a class action.

---

[3] Although the court in *Brantley v. Maxwell-Jolly*, 656 F. Supp. 2d 1161 (N.D. Cal. 2009), ordered a classwide preliminary injunction in the absence of class certification, it did so because the defendants had previously argued that such relief was appropriate and were thus judicially estopped from opposing the broader injunction.

### III. Plaintiffs Have Not Satisfied the Prerequisites to Class Certification Because There is No Adequate or Typical Class Representative, There is No Truly Common Question, and the Proposed Class is Not Ascertainable.

To certify any class, including a "provisional class," Plaintiffs must establish the four required elements set forth in Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the [named plaintiffs] are typical of the claims or defenses of the class; and (4) the [named plaintiffs] will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). "[A]ctual, not presumed, conformance with Rule 23(a) [is] indispensable." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982). And plaintiffs who propose certification under Rule 23(b)(2)—as Plaintiffs do—must show that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The party seeking class certification bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met." *United Steel Workers v. ConocoPhillips Co.*, 593 F.3d 802, 807 (9th Cir. 2010). Failure to meet "any one of Rule 23's requirements destroys the alleged class action." *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975).

### A. Plaintiffs Lack Standing and So Have Not Identified Anyone Whose Claims are Typical or Representative of Those of the Putative Class.

Typicality requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement "assure[s] that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* This requirement "derives its independent legal

significance from its ability to screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 598 (3d Cir. 2012) (internal quotation omitted). Thus, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class member." *Falcon*, 457 U.S. at 156. A class certification motion "should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citations omitted).

Here, Plaintiffs have not identified *any* named Plaintiff who has been or will be injured in the manner in which they claim the putative subclass members have been or will be injured. Plaintiffs brought this lawsuit to enjoin metering/queue management and other alleged practices, but the injury sought to be redressed in Plaintiffs' PI Motion on behalf of the provisional class is different. Plaintiffs seek in their Motion to retrospectively alter the procedural and substantive rules applied to certain individuals who were subject to queue management and will now be subject to the Rule. The named individual Plaintiffs cannot benefit from this injunctive relief and are not (and never were) members of the proposed class of "all non-Mexican noncitizens who were denied access to the U.S. asylum process before July 16, 2019 as a result of the Government's metering policy and continue to seek access to the U.S. asylum process." Pls.' Mem. 1, 7.[4] This dooms their request for class certification.

First, Plaintiffs Abigail Doe, Beatrice Doe, and Carolina Doe are natives and citizens of Mexico. For this reason, the Rule does not affect them, because they did

---

[4] As noted, *supra* note 2, Plaintiffs do not specify who they intend to represent the provisional class. They argue that all named individual Plaintiffs' claims are typical of those of the putative provisional class, but point only to the declarations of Plaintiff Roberto Doe and of unnamed putative subclass members. *See* Pls.' Mem. 19–20.

not transit through a third country before they entered the United States. *See* 83 Fed. Reg. at 33830, 33835. They are not and never were members of the class.

Second, Plaintiffs' definition of "metering policy" in their class definition applies to actions taken by CBP after the issuance of the April 27, 2018 memo described above. Pls.' Mem. 4, 13. Plaintiffs Abigail Doe, Beatrice Doe, Carolina Doe, Dinora Doe, and Ingrid Doe allege that they were initially prevented from pursuing their asylum claims by purported CBP actions that took place *before* April 27, 2018. In any event, Abigail, Carolina, Dinora, and Ingrid all also eventually entered (or re-entered) the United States and were processed before July 16, 2019. Accordingly, they were not affected by the metering policy, as defined by Plaintiffs, nor the Rule. Their claims are not typical of those who challenge metering generally, as the conduct challenged and the relief sought diverge from that challenged and sought in Plaintiffs' PI Motion.

Third, most individual Plaintiffs entered the United States for processing before the July 16, 2019 effective date of the Rule: Abigail Doe, Carolina Doe, Dinora Doe, Ingrid Doe, Maria Doe, Ursula and Juan Doe, Victoria Doe, Bianca Doe, Emiliana Doe and Cesar Doe. Thus, none of these Plaintiffs are affected by the Rule, and they cannot benefit from the relief sought. Their claims and interests do not align with those of the proposed provisional class members.

The only Plaintiff who is not a Mexican citizen and might claim to be part of the class is Roberto Doe. But Roberto has not provided sufficient information to establish that he is subject to the Rule. Roberto has provided no information regarding his whereabouts or intent as of July 16, 2019, so the Court cannot know whether he is outside of the United States or seeking entry to the United States. He also does not appear to be part of the putative class because there is no evidence that he "continue[s] to seek access to the U.S. asylum process," Pls. Mem. 13, or that he has been or will imminently be harmed by allowing the Rule to continue in full force for those

DEFS.' OPP'N TO PLS.' MOT.
FOR PROV. CLASS CERT.
Case No. 3:17-cv-02366-BAS-KSC

to whom it applies. Plaintiffs have submitted only a stale October 10, 2018 declaration from Roberto Doe that attests only that he may have been subject to metering in October 2018. The declaration does not state whether Roberto continues to seek access to the asylum process. It does not state whether Roberto, who alleges that he was taken into Mexican custody in October 2018, sought asylum in Mexico, which could potentially take him outside of the scope of the Rule. It is also not clear whether Roberto has firmly resettled in Mexico, which would render him ineligible for asylum in the United States for other reasons. *See* 8 U.S.C. § 1158(b)(2)(A)(vi). And it does not provide his whereabouts at the time the Rule issued; this is a key fact because, if Roberto illegally entered the United States at some point after October 2018, his prior removal order could be reinstated and he would be ineligible for asylum for reasons unrelated to the Rule. *See* 8 U.S.C. § 1231(a)(5). Accordingly, Plaintiffs have presented no evidence to show that the Rule affects Roberto Doe and that his claim is typical of the claims of the provisional class members.

This lack of demonstrated injury from the Rule is fatal to a finding of typicality. A purported class representative must establish standing to be deemed a proper representative of the class. *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532-33 (9th Cir. 2019). If the named Plaintiffs cannot establish "the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *Id.* In a putative class action, the class representatives must allege *and* show that they were personally injured, "'not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Stanford v. Home Depot U.S.A., Inc.*, 2008 WL 7348181 at *7 (S.D. Cal. May 27, 2008) (quoting *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003)).

Here, although certain individual Plaintiffs allege that they have suffered injury as a result of metering, their own allegations reveal that they do not have standing to pursue the relief requested in their preliminary injunction motion. That is, they

have not been, or will not be, injured by the implementation of the Rule in connection with the metering policy. Accordingly, the named Plaintiffs' claims are not typical of those of the class because the named Plaintiffs cannot establish the requisite "case or controversy" needed for Article III standing to pursue their requested preliminary injunctive relief. Their lack of standing also represents a "unique defense" that threatens to preoccupy the litigation and likewise precludes class certification. *Hanon*, 976 F.2d at 508–09.[5]

### B. The Individual Plaintiffs are Not Adequate Representatives.

For similar reasons, the individual named Plaintiffs are not adequate representatives of the class. The adequacy of representation is based on: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1021. Plaintiffs contend that there are over 26,000 putative class members, Pls. Mem. 14, and it is inexcusable to seek relief with none of those individuals as a representative Plaintiff.

As explained above, the named Plaintiffs will "suffer[] no injury" as a result of the practices they seek to preliminarily enjoin and thus are "simply not eligible to represent a class of persons who [will] allegedly suffer injury." *E. Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403–04 (1977). "[O]ne who is not a member of the defined class cannot serve as a representative plaintiff." *Torres v. Goddard*, 314 F.R.D. 644, 656 (D. Ariz. 2010).

Further, Plaintiffs are wrong to suggest that the Court can enter substantive class relief for a class in the absence of a representative plaintiff with standing to

---

[5] Plaintiffs' argument that the Answer contains no defenses that are specific to the named Plaintiffs is misleading, *see* Pls.' Mem. 18, because the Answer does not address the entirely new and separate relief sought via their current class certification and preliminary injunction motions: an injunction barring application of the Rule.

pursue that relief. As explained above, a class cannot be certified if the class representative lacks standing as to his individual claim. *NEI Contracting*, 926 F.3d at 533 (holding that class decertification is required when it is determined that representative plaintiff lacked standing). To hold otherwise would allow courts to issue advisory opinions in the absence of a case or controversy before it. "A federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them.'" *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975); *see also Coal. for a Healthy California v. F.C.C.*, 87 F.3d 383, 386 (9th Cir. 1996) (advisory opinions are prohibited under Article III).

The cases Plaintiffs cite, Pls.' Mem. 20, do not undermine this fundamental rule. In *Canales-Robles v. Peters*, 2018 WL 4762899, at *5 (D. Or. 2018), the court addressed whether a proposed amended complaint was futile for failure to name a representative plaintiff for a particular subclass. The court declined to so hold, noting that the plaintiffs represented that they would name a representative before actually filing the amended complaint, "which was sufficient to justify permitting the [] subclass to proceed to the certification stage." *Id.* at *6. The *LaReau* decision is similarly inapposite, as it addressed the situation of a transitory putative class where the representative plaintiffs' detention-related claims quickly became moot because they were released from pretrial detention. *LaReau v. Manson*, 383 F. Supp. 214, 216–17 (D. Conn. 1974). Although the *LaReau* court certified a class despite the fact that the named plaintiffs' individual claims had mooted out, it also stated that it would dismiss the class action if another class representative did not intervene within 30 days. *Id.* at 218. Neither the *Canales-Robles* nor the *LaReau* court granted classwide relief without a representative plaintiff. Further, here, it is not that the individual Plaintiffs claims have mooted out. They *never* had standing to pursue the preliminary injunctive relief they now seek. *NEI Contracting*, 926 F.3d at 533 (distinguishing between mootness and initial standing when determining appropriateness of decertification). Further, this case does not involve a mootness concern relating to the

timing of class certification, *see, e.g., Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 76 (2013), given that Plaintiffs claim there are large numbers of individuals who will be subject to the Rule, and there is no reason to think those claims would become moot.

Even leaving aside this fundamental defect of lack of standing, there is no evidence that the named Plaintiffs would vigorously represent the interests of the class. The nature of class certification under Rule 23(b)(2) amplifies the need to confirm the commitment of the class representatives, because members of a Rule 23(b)(2) class are not afforded the right to opt out of the class and are bound by any judgment. *Molski v. Gleich*, 318 F.3d 927, 947 (9th Cir. 2003). Here, the named Plaintiffs never had standing to represent the proposed class, and there is no reason to believe that they will vigorously represent that class. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011) (concluding that former employees are not adequate representatives of a class of current employees seeking injunctive relief); *Schulken v. Washington Mut. Bank*, 2012 WL 28099, at *5 & N.2 (N.D. Cal. Jan. 5, 2012) (analogizing Rule 23(a)(4) analysis to a standing analysis). Plaintiffs have not submitted a single sworn statement from any proposed representative regarding their willingness to accept the duties of a class representative. *See Spinelli v. Capital One Bank*, 265 F.R.D. 598, 614 (M.D. Fla. 2009). Accordingly, the Court also should deny Plaintiffs' Motion based on inadequate representation.

### C. Plaintiffs Fail to Establish Commonality.

To satisfy Rule 23(a)'s commonality prerequisite, the proposed class members must "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiffs cannot satisfy their burden by merely alleging that all of the proposed class members have "suffered a violation of the same provision of law" or raise some "common questions." *Id.* The commonality "language is easy to misread, since any competently crafted class complaint literally raises common 'ques-

tions.'" *Id.* Rather, the proposed class members' claims must depend upon a common contention, the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Thus, "what matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* Although "[t]he existence of shared legal issues with divergent factual predicates is sufficient [to establish commonality]," *Hanlon*, 150 F.3d at 1019, commonality cannot be established where there is wide factual variation requiring individual adjudications of each class member's claims. *See Nguyen Da Yen v. Kissinger*, 70 F.R.D. 656, 663–64 (N.D. Cal. 1976). Further, for certification under Rule 23(b)(2), Plaintiffs must show that "relief is available to the class as a whole" and that the challenged conduct "can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360.

Plaintiffs have not met their burden to demonstrate that any of these factual variations are unlikely to bear on individual class members' entitlement to relief. *See id.* Here, there is no common question because—crediting Plaintiffs' theory on the legality of metering—the Court would have to examine each instance of metering/queue management at each port of entry to determine whether such action is justified by "potentially legitimate factors." MTD Op. 60; *see* Pls.' Mem. 19 (arguing that the legality of metering turns on whether there is a "valid justification" or whether the "proffered justification for the metering policy is pretextual"[6]). Plaintiffs' request for preliminary injunctive relief depends, at least in part, on the purported illegality of metering. Although Defendants maintain that Plaintiffs' claims cannot succeed because metering is categorically lawful, under Plaintiffs' theory,

---

[6] Notably, in citing what they claim are common questions, Plaintiffs do not identify the legal standards they believe govern their claims, and Defendants do not concede the propriety of Plaintiffs' proposed analysis.

the inquiry into whether metering is lawful turns on whether there is a "valid justifi-cation" for implementing metering procedures. Pls.' Mem. 19. This question, how-ever, is not answerable by reference to broad generalizations about the number of individuals processed across the southwest border at numerous different ports of en-try at different times. Instead, the Court would have to examine each implementation of metering at each port of entry on every day—or even every hour—to determine whether its implementation has a "valid justification" based on each port's particular circumstances. Thus, there is no common question capable of generating answers that are common to the class and will "drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350.

Metering is within the Executive Branch's clear authority, and even Plaintiffs concede that metering may be appropriate under certain circumstances. The Consti-tution and the INA grant the Executive the authority to manage the flow of trade and travel through ports of entry as it sees fit. *See Almeida-Sanchez v. United States*, 413 U.S. 266, 272 (1973); *Carroll v. United States*, 267 U.S. 132, 154 (1925) ("Travelers may be so stopped in crossing an international boundary because of national self-protection reasonably requiring one entering the country to identify himself as enti-tled to come in[.]"). Controlling the manner and pace of travel into the ports of en-try—including the pace at which pedestrians without prior authorization to enter the United States is a sovereign power inherent in the executive's foreign affairs power. *See* PI Opp. 19. The asylum statute does not require otherwise, because it simply does not confer any rights on aliens outside the country's borders. *See* 8 U.S.C. § 1158(a)(1) (allowing "[a]ny alien who *is physically present* in the United States or who *arrives in the United States*" to apply for asylum (emphasis added)); *Kiyemba v. Obama*, 555 F.3d 1022, 1030–31 (D.C. Cir. 2009) (noting that "refugees apply from abroad; asylum applicants apply when already here"), *vacated on other grounds*, 559 U.S. 131 (2010); *see also* Defs.' Mem. in Support of Mot. to Dismiss 7–11 (ECF No. 192-1). Further, although Defendants respectfully disagree with the

Court's ruling on the extraterritorial reach of the asylum statute and related proce-dures, *see* MTD Op. 37–44, a factual dispute remains as to whether certain named Plaintiffs fall within the Court's defined scope of the statute's application.

Regardless of when the duties to inspect and process aliens under the asylum and expedited removal statutes arise, however, both the Court and Plaintiffs have acknowledged that "there may exist potentially legitimate factors that prevent CBP officers from immediately discharging" those duties. *Id.* at 60. Accordingly, for each of Plaintiffs' "common questions," the Court would at least have to examine the specific circumstances surrounding the metering of each putative class member to determine whether metering was justified. Further, as explained in the metering guidance, the Field Office makes the decision as to whether to "meter the flow of travelers at the land border to take into account the port's processing capacity." Me-tering Memo 1. And processing capacity differs by port and is influenced by a vari-ety of fluid factors. Thus, the decisions made—potentially on a daily or even hourly basis—by Directors of Field Operations across the border would need to each be separately addressed to determine whether metering was lawful under this Court's order on Defendants' motion to dismiss. Accordingly, there is no common answer to the central question raised by Plaintiffs' pending Motions: was metering justified at any time before July 16, 2019, at any Port of Entry along the U.S.-Mexico border?

For example, as explained in the accompanying Declaration of Mariza Marin, the capacity of the San Ysidro and Otay Mesa Ports of Entry must be analyzed on a daily basis to evaluate the reasons for metering and the ports' processing capacity. These ports' capacities to "process aliens without documents sufficient for lawful entry to the United States is dependent, *inter alia*, upon there being space in the short-term hold rooms at each of those respective ports to hold such aliens pending their transfer to U.S. Immigration and Customs Enforcement (ICE), the U.S. Depart-ment of Health and Human Services (HHS), or another federal agency." Ex. 6 ¶ 6.

DEFS.' OPP'N TO PLS.' MOT.
FOR PROV. CLASS CERT.
Case No. 3:17-cv-02366-BAS-KSC

"Additionally, the capacity of CBP's short-term hold rooms is impacted by the characteristics and demographics of individuals being detained." *Id.* ¶ 10. For example, the detention of family units may take up significantly more holding space than would be required for adult single males or females, *id.*, and indeed there has been litigation and review of conditions for children and families at other holding facilities that reinforces the pressure to maintain capacity limits. *See Flores v. Sessions*, 2017 WL 6060252, at *6 (C.D. Cal. June 27, 2017). The analysis of whether a port was justified in metering would also need to take into account the port's resource allocations, which "are complex and ever-changing." Ex. 6 ¶ 11. "[M]anagers at the San Ysidro and Otay Mesa POEs must account for the magnitude and diversity of operations at each of these POEs, and strategically allocate, and at times, re-allocate finite resources to ensure that mission needs, initiatives, and priorities are met." *Id.* The detailed analysis of the San Ysidro POE's holding and processing capacity for the period of July 1 to 2, 2019, demonstrates the searching, specific inquiry required to fully examine CBP's justifications for metering. *Id.* ¶ 12. The same considerations hold true for other POEs. For example, as described in the declaration of Deputy Assistant Director Harris of the Laredo Field Office, the capacity of the Laredo and Hidalgo POEs are also affected by various fluid factors, including whether there is "a spike in arrests at a particular POE" that requires the need to use short-term hold rooms for individuals subject to criminal prosecution. Halaska Decl. Ex. 3, ¶ 9 (ECF No. 307-4).

Plaintiffs' own evidence also demonstrates the need to examine particular circumstances of particular ports of entry at particular times. Plaintiffs argue that, based on the Brownsville POE's processing capacity as set forth in an emergency contingency plan, "[e]ven when accounting for such factors as the need to house vulnerable migrant populations . . . the Government has offered no valid justification for its decision to process fewer than 30 asylum seekers per day at the Brownsville POE."

Pls.' Mem. 7.[7] This argument implicitly acknowledges that an inquiry into whether these numbers are justified hinges on a Brownsville-specific analysis. For example: What is the processing capacity at Brownsville? What factors go to determining that processing capacity on any given day? Moreover, contrary to Plaintiffs' argument, if the Court were to find a lack of sufficient justification for metering at Brownsville, it could not presume the same finding for a different port on the same day, or the same month. The so-called borderwide proof on which Plaintiffs rely, Pls.' Mem. 7–8, obscures the importance of such circumstance-specific inquiries in evaluating the reasonableness of the "delay" in processing individuals who claim fear, and thus in assessing the legality of CBP's metering practices with respect to the putative class.

This analysis makes clear that, unlike in the civil-rights cases Plaintiffs cite, Pls.' Mem. 17, 19, the existence of a general policy of metering cannot alone support a finding of commonality. This is because the Court cannot determine that metering practices under the April 2018 metering guidance are implemented for categorically unlawful reasons. Under Plaintiffs' own theory, the legality of the practices depends on the validity of the justifications for invoking it. This is thus not a case where "either [the policy and practice] is unlawful as to every [class member] or it is not." *Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014). Here, the lawfulness of metering and of any resulting "delay" in processing may differ for individual putative class members or for groups of putative class members, depending on the port and the timing. *See, e.g.*, *Williams v. Agilent Technologies*, 2004 WL 2780811, at *5 (N.D. Cal. Dec. 3, 2004) (finding no commonality because decisions regarding termination and discipline of employees were made at many different locations by many different managers); *Rhodes v. Cracker Barrel Old Country Store, Inc.,* 213 F.R.D. 619, 676 (N.D. Ga. 2003) (finding that decision-making process scattered over 450 stores

---

[7] Further, Plaintiffs' analysis regarding Brownsville's capacity is incorrect. PI Opp. 15–16.

in forty-one states precluded commonality in employment decisions). As the deter-
mination of the lawfulness of Defendants' conduct—under Plaintiffs' theory—de-
pends on a variety of different factual analyses, Plaintiffs have not met their burden
to demonstrate commonality.

**D. The Proposed Class Flunks Rule 23(b)(2) and is Not Ascertainable.**

Plaintiffs' proposed class initially fails to satisfy the requirements of Rule
23(b)(2) because the identities of the class members—which are crucial to the ad-
ministration of the relief Plaintiffs seek—are not ascertainable. In short, it will be
impossible to administer the relief Plaintiffs seek because it is impossible to deter-
mine who sought to cross the border prior to July 16, and any process to make such
a determination will be riddled with fraudulent claims.

"As a threshold matter, and apart from the explicit requirements of Rule 23(a),
the party seeking class certification must demonstrate that an identifiable and ascer-
tainable class exists." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal.
2011). "A class definition should be precise, objective, and presently ascertainable."
*O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D.Cal.1998) (internal quo-
tations omitted). "While the identity of the class members need not be known at the
time of certification, class membership must be clearly ascertainable." *Wolph*, 272
F.R.D. at 482. The decision in *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d
1075 (N.D. Cal. 2011) (Alsup J.), is instructive. In *Xavier*, the plaintiff moved to
certify a class of smokers who were more than fifty years old and had at least a
twenty-pack-year smoking history. *Id*. at 1078. The court denied the motion, holding
that the class members could not be ascertained in a reliable manner. *Id*. at 1089.
Specifically, "[t]here [was] no reliable way in which smokers themselves could doc-
ument their long-term smoking histories." *Id*. The court declined to rely on affidavits
to determine class membership, reasoning that the procedure could invite fraudulent
or inaccurate claims. *Id*. at 1090–91; *see also Astiana v. Ben & Jerry's Homemade,
Inc.*, 2014 WL 60097, at *3 (N.D. Cal. Jan. 7, 2014) (proposed class did not satisfy

DEFS.' OPP'N TO PLS.' MOT.
FOR PROV. CLASS CERT.
Case No. 3:17-cv-02366-BAS-KSC

the ascertainability requirement because identifying class members would require the court to determine which consumers bought which version of a particular product, and plaintiff had not identified any objective way to make that determination); *Sethavanish v. ZonePerfect Nutrition Co.*, 2014 WL 580696 (N.D. Cal. Feb. 13, 2014) (similar).

In this case, Plaintiffs seek provisional certification of "[a]ll non-Mexican noncitizens who were denied access to the U.S. asylum process before July 16, 2019 as a result of the Government's metering policy and continue to seek access to the U.S. asylum process." Pls.' Mem. 13. Plaintiffs argue that the class consists of thousands of people spread around countless border towns near at least four southern ports of entry to the United States. *Id.* at 14–15.

Although the date on which individuals were subject to metering provides a theoretically objective way to define the provisional class, there is no reliable way to confirm the date when individuals first sought to present themselves at ports to seek access to the U.S. asylum process. The date an individual was first subject to metering is crucial to whether she is a member of the class. Yet CBP does not keep records of individuals who have not yet entered the United States and who are subject to metering. *See generally* Ex. 4. Rather, CBP personnel who stand at the international boundary line to facilitate metering have only brief, normally entire verbal encounters with individuals who approach the Port of Entry, and those occur while the alien is on Mexican soil. *Id.* ¶¶ 2, 4. If these officers are presented with documents by individuals approaching the port, the officers conduct "basic visual document examinations" and "generally do not obtain biographical information about the traveler or memorialize the encounter in any way, whether that be the date, time, or other factual specifics about the encounter." *Id.* ¶ 4. Thus, were someone to assert that that they had been encountered at the limit line on a particular date, "CBP would have no way to either confirm or refute that individual's own statements." *Id.* ¶ 5.

Thus, because CBP does not keep records demonstrating whether and when

23

an individual was subject to metering, it is impossible to resort to reliable records or information to accurately determine who are members of the class. If the Court were to grant the relief Plaintiffs request, the government would have to engage in additional fact-finding to determine whether an individual was subject to metering and thus whether they should be subject to the Rule or not. This amounts to an "investigat[ion] of the merits of individual claims to determine class membership." *See Lucas v. Breg, Inc.*, 212 F. Supp. 3d 950, 973 (S.D. Cal. 2016). As explained in the declaration of Ashley B. Caudill-Mirillo, to determine whether an individual was a class member, an asylum officer conducting a credible-fear screening interview would have to individually question the individual on this topic or, if the interview has already taken place, conduct follow-up questioning. Ex. 24 ¶ 3. Moreover, the asylum officer would have no way to confirm or refute the truth of an individual's assertions that he sought to enter the United States at a port of entry before July 16, 2019. *Id.* Indeed, to rely on sworn statements to determine class membership, *see* Pls.' Mem. 15, would invite fraudulent or inaccurate claims in an environment where there is a strong incentive to manufacture claims. *See Aliens Subject to a Bar on Entry Under Certain Presidential Proclamations; Procedures for Protection Claims*, 83 Fed. Reg. 55934, 55935 (Nov. 9, 2018) (only 17% of all completed positive credible fear screenings resulted in a grant of asylum).

Plaintiffs argue that the identity of class members can be obtained by reference to waitlists maintained by the Mexican government and non-governmental entities. Pls.' Mem. 25. Yet they have not proffered those waitlists into evidence and there is no indication that these waitlists would note the date on which an individual was first encountered at the international boundary. Further, Plaintiffs themselves indicate that the waitlists may be under-inclusive as well as subject to fraud and corruption and are not themselves reliable means of ascertaining class membership. Pls.' Mem. in Support of Mot. for Prelim. Inj. 3–4 & n.4 (ECF No. 294-1) ("Pls.' PI

DEFS.' OPP'N TO PLS.' MOT.
FOR PROV. CLASS CERT.
Case No. 3:17-cv-02366-BAS-KSC

Mem."). There is also a significant burden imposed on an already overburdened system in requiring credible fear officers to be trained in, and make factual assessments of, the time when an alien was previously metered. Ex. 24 ¶¶ 3–4.

Contrary to Plaintiffs' argument, the ascertainability requirement should be applied to their proposed Rule 23(b)(2) class. Indeed, Plaintiffs' failure to demonstrate that their class is ascertainable demonstrates that their class is not appropriate for certification under Rule 23(b)(2).[8] Typically, in a Rule 23(b)(2) class action:

> any relief obtained on behalf of the class . . . does not require distribution to the class. . . . [I]t is usually unnecessary to define with precision the persons entitled to enforce compliance. *Newberg on Class Actions* § 3.7 (5th ed.) (citation omitted). Identification of individual class members is not required; to the contrary, the fact that class members are difficult or impossible to identify individually supports class certification under Rule 23(b)(2).

*The Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*, 2016 WL 314400, at *5 (N.D. Cal. Jan. 25, 2016). This is not the case here. Plaintiffs are not seeking broad injunctive relief that can be applied generally to all aliens seeking asylum. Indeed, they claim they are not challenging the legality of the Rule itself. Pls.' PI Mem. 2. Instead, they are seeking relief from the Rule that applies only to those aliens who were subject to metering at particular times. It is important to be able to determine who those individuals are, because "[i]f a plaintiff class wins, any relief must be reasonably limited to those who are entitled to it." *Xavier*, 787 F. Supp. 2d at 1091. Accordingly, because the proposed class is not reliably ascertainable, it does not satisfy Rule 23(b)(2), and Plaintiffs' Motion must be denied.

## CONCLUSION

The Court should deny Plaintiffs' Motion for Class Certification.

---

[8] Defendants are not seeking to impose a "separate administrative feasibility requirement" as was rejected in *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017). Instead, the lack of ascertainability here is tied to Plaintiffs' inability to show that they are entitled to class certification under Rule 23(b)(2).

DATED: October 15, 2019                Respectfully submitted,


                                       JOSEPH H. HUNT
                                       Assistant Attorney General
                                       Civil Division


                                       WILLIAM C. PEACHEY
                                       Director


                                       */s/ Katherine J. Shinners*
                                       KATHERINE J. SHINNERS
                                       Senior Litigation Counsel
                                       United States Department of Justice
                                       Civil Division
                                       Office of Immigration Litigation
                                       District Court Section
                                       P.O. Box 868, Ben Franklin Station
                                       Washington, D.C. 20044
                                       Tel: (202) 598-8259| Fax: (202) 305-7000
                                       katherine.j.shinners@usdoj.gov


                                       ALEXANDER J. HALASKA
                                       SAIRAH G. SAEED
                                       Trial Attorneys

                                       *Counsel for Defendants*

DEFS.' OPP'N TO PLS.' MOT.
FOR PROV. CLASS CERT.
Case No. 3:17-cv-02366-BAS-KSC

## __CERTIFICATE OF SERVICE__

No. 17-cv-02366-BAS-KSC

I hereby certify that I served a copy of this document on the Court and all parties by filing this document with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all counsel of record.

DATED: October 15, 2019              Respectfully submitted,

                                     */s/ Katherine J. Shinners*
                                     KATHERINE J. SHINNERS
                                     Senior Litigation Counsel
                                     United States Department of Justice
                                     Civil Division
                                     Office of Immigration Litigation
                                     District Court Section

DEFS.' OPP'N TO PLS.' MOT.
FOR PROV. CLASS CERT.
Case No. 3:17-cv-02366-BAS-KSC