MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:   +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*,<br><br>   Plaintiffs,<br><br>  v.<br><br>Kevin K. McAleenan,[1] *et al.*,<br><br>   Defendants. | Case No.:  17-cv-02366-BAS-KSC<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION PROHIBITING GOVERNMENT FROM APPLYING ASYLUM BAN TO PROVISIONAL CLASS MEMBERS**<br><br>***PORTIONS FILED UNDER SEAL***<br><br>Hearing Date: October 21, 2019<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

---

[1] Acting Secretary McAleenan is automatically substituted for former Secretary Nielsen pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................. 1

I.    This Court Is Empowered to Issue the Injunction Plaintiffs Seek ................. 1

II.   Plaintiffs Have Satisfied the Preliminary Injunction Standard ..................... 3

    A.    Plaintiffs Are Likely To Succeed on the Merits .................................. 3

    B.    Plaintiffs Easily Satisfy the Irreparable Harm, Balance of Equities and Public Interest Requirements ............................................ 8

III.  This Court Has Jurisdiction .......................................................................... 10

CONCLUSION ........................................................................................................ 13

REPLY IN SUPP. OF MOT. FOR PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdi v. Duke,*
   280 F. Supp. 3d 373 (W.D.N.Y. 2017) ............................................... 12

*Abu Ali v. Ashcroft,*
   350 F. Supp. 2d 28 (D.D.C. 2004) ..................................................... 3

*Aracely, R. v. Nielsen,*
   319 F. Supp. 3d 110 (D.D.C. 2018) .................................................. 4

*Arce v. United States,*
   899 F.3d 796 (9th Cir. 2018) (per curiam) ...................................... 13

*Ariz. Dream Act Coal. v. Brewer,*
   757 F.3d 1053 (9th Cir. 2014) ........................................................... 2

*Bailey v. Pataki,*
   708 F.3d 391 (2d Cir. 2013) ............................................................. 9

*Damus v. Nielsen,*
   313 F. Supp. 3d 317 (D.D.C. 2018) ................................................ 12

*Di Biase v. SPX Corp.,*
   872 F.3d 224 (4th Cir. 2017) ............................................................ 2

*F.T.C. v. Dean Foods Co.,*
   384 U.S. 597 (1966) .......................................................................... 3

*Flores v. Barr,*
   934 F.3d 910 (9th Cir. 2019) ............................................................ 8

*FTC v. Neovi, Inc.,*
   604 F.3d 1150 (9th Cir. 2010) .......................................................... 4

*Gonzalez v. Arizona,*
   677 F.3d 383 (9th Cir. 2012), *aff'd sub nom, Arizona v. Inter*
   *Tribal Council of Ariz., Inc.,* 570 U.S. 1 (2013) ............................... 3

*Grace v. Whitaker,*
   344 F. Supp. 3d 96 (D.D.C. 2018) .................................................. 12

*Holder v. Humanitarian Law Project,*
   561 U.S. 1 (2010) .............................................................................. 9

*J.E.F.M. v. Lynch,*
   837 F.3d 1026 (9th Cir. 2016) ........................................................ 12

*Jennings v. Rodriguez,*
   138 S. Ct. 830 (2018) ...................................................................... 12

REPLY IN SUPP. OF MOT. FOR PRELIMINARY INJUNCTION

*Medina v. U.S. DHS,*
   313 F. Supp. 3d 1237 (W.D. Wash. 2018) ........................................................... 2

*Nken v. Holder,*
   556 U.S. 418 (2009) ........................................................... 10

*Padilla v. ICE,*
   354 F. Supp. 3d 1218 (W.D. Wash. 2018) ........................................................... 12

*R.I.L-R v. Johnson,*
   80 F. Supp. 3d 164 ........................................................... 12

*Rodriguez v. Hayes,*
   591 F.3d 1105 (9th Cir. 2010) ........................................................... 12

*Rodriguez v. Marin,*
   909 F.3d 252 (9th Cir. 2018) ........................................................... 12

*Sale v. Haitian Ctrs. Council, Inc.,*
   509 U.S. 155 (1993) ........................................................... 3

*SEC v. United Fin. Grp., Inc.,*
   474 F.2d 354 (9th Cir. 1973) ........................................................... 2

*Textile Unlimited, Inc. v. A. BMH & Co.,*
   240 F.3d 781 (9th Cir. 2001) ........................................................... 2

*United States v. Cortez,*
   449 U.S. 411 (1981) ........................................................... 9

**Statutes**

8 U.S.C. § 1225(b)(1) ........................................................... 11

8 U.S.C. § 1225(b)(1)(B)(ii) ........................................................... 8

8 U.S.C. § 1229a ........................................................... 8, 12

8 U.S.C. § 1252 ........................................................... 10, 13

8 U.S.C. § 1252(a)(2)(A) ........................................................... 10

8 U.S.C. § 1252(a)(2)(A)(i) ........................................................... 11

8 U.S.C. § 1252(a)(2)(A)(ii) ........................................................... 10

8 U.S.C. § 1252(a)(2)(A)(iii) ........................................................... 11

8 U.S.C. § 1252(a)(2)(A)(iv) ........................................................... 11

8 U.S.C. § 1252(a)(5) ........................................................... 13

8 U.S.C. § 1252(b)(9) ........................................................... 12

8 U.S.C. § 1252(e) ........................................................... 11

REPLY IN SUPP. OF MOT. FOR PRELIMINARY
INJUNCTION.

8 U.S.C. § 1252(e)(1)(A) ............................................................................. 11

8 U.S.C. § 1252(e)(1)(B) ............................................................................. 12

8 U.S.C. § 1252(e)(2) ................................................................................. 12

8 U.S.C. § 1252(e)(3) ........................................................................... 11, 12

8 U.S.C. § 1252(f) ..................................................................................... 12

8 U.S.C. § 1252(f)(1) ................................................................................. 12

28 U.S.C. 1651 ................................................................................. 1, 2, 3, 13

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, 11A Federal Practice &
    Procedure Civ .§ 2948 (3d ed. 2019) ...................................................... 2

Fed. R. Civ. P. 65 ....................................................................................... 1

## **CITATION FORM**

"Ex." refers to the exhibits to the Declaration of Melissa Crow in Support of Plaintiffs' Motion for Preliminary Injunction, Dkt. 294-2.

"Gov't Ex." refers to the exhibits to the Declaration of Alexander J. Halaska, Dkt. 307-1.

"Rep. Ex." refers to exhibits to the Declaration of Melissa Crow filed concurrently with this brief.

REPLY IN SUPP. OF MOT. FOR PRELIMINARY INJUNCTION

# INTRODUCTION

Plaintiffs seek a preliminary injunction to ensure that access to asylum remains an option for provisional class members, who—but for CBP's illegal metering policy—would never have been subject to the Asylum Ban. Absent an injunction to preserve the status quo, this Court would be foreclosed from granting class members full relief and restoring them to the position they would have been in prior to Defendants' unlawful conduct.

The bulk of Defendants' opposition rests on the fundamentally incorrect premise that Plaintiffs' motion challenges the validity of the Asylum Ban. Defendants' arguments fail in numerous respects. First, this Court has ample authority under Rule 65 and the All Writs Act to preserve the status quo and Plaintiffs' ability to obtain meaningful relief if they prevail in challenging the metering policy. Second, Defendants cannot overcome the collective force of the record evidence demonstrating that the asserted capacity justification for turnbacks is a pretext. Third, provisional class members will suffer irreparable harm if the relief they seek—access to the asylum process as it existed when Defendants subjected them to metering—is foreclosed by the effects of metering. Fourth, the balance of the equities favors the Plaintiffs, who seek only to preserve the status quo for long enough to litigate their claims. Finally, because Plaintiffs do not challenge particular outcomes in individual cases, but rather Defendants' systematic failure to provide meaningful access to the asylum process, the jurisdiction stripping provisions Defendants cite are irrelevant.

# ARGUMENT

## I.  THIS COURT IS EMPOWERED TO ISSUE THE INJUNCTION PLAINTIFFS SEEK

Defendants' claim that the Court is not authorized to issue the requested injunction, Dkt. 307 ("Gov't Br.") at 10, rests on a fundamental misunderstanding of Plaintiffs' motion. As Plaintiffs stressed, their motion does "not challeng[e] the

REPLY IN SUPP. OF MOT. FOR PRELIMINARY INJUNCTION

Asylum Ban itself," which is under review elsewhere, Dkt. 294-1 ("Op. Br.") at 9-10. Even assuming the validity of the Asylum Ban, Plaintiffs seek to preserve the legal status of provisional class members prior to its enactment so that they are not penalized by the illegal conduct actually challenged in this case—Defendants' denial of access to the asylum process through their metering policy. Rule 65 grants district courts "'broad powers and wide discretion to frame the scope of appropriate equitable relief' when issuing a preliminary injunction to preserve the status quo," *Medina v. U.S. DHS*, 313 F. Supp. 3d 1237, 1248 (W.D. Wash. 2018) (quoting *SEC v. United Fin. Grp., Inc.*, 474 F.2d 354, 358-59 (9th Cir. 1973)), and to prevent the "irreparable loss of rights" that might occur before a final judgment. *Textile Unlimited, Inc. v. A. BMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001); *see also Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060-61 (9th Cir. 2014).

Put another way, Plaintiffs' requested injunction accomplishes exactly what Defendants concede is appropriate, as it "preserve[s] a court's post-judgment remedial powers," Gov't Br. at 10, by ensuring that any relief provided will be meaningful. *See also* Charles Alan Wright & Arthur R. Miller, 11A Federal Practice & Procedure Civ .§ 2948 (3d ed. 2019); *Di Biase v. SPX Corp.*, 872 F.3d 224, 231 (4th Cir. 2017) ("[A] preliminary injunction can also act to restore, rather than merely preserve, the status quo, even when the nonmoving party has disturbed it.").

For the same reason, Defendants misunderstand the Court's power under the All Writs Act ("AWA"), 28 U.S.C. 1651, because Plaintiffs in no way are making a "collateral challenge . . . on the implementation" of the Asylum Ban. Gov't. Br. at 24. Accordingly, Plaintiffs are not seeking to "enlarge [this] court's jurisdiction" to address the Asylum Ban, Gov't Br. at 24; they are seeking an order to preserve the court's existing jurisdiction over Plaintiffs' claims challenging the metering policy. Absent the requested relief, application of the Asylum Ban—which Defendants concede will bar access to the statutory process that would allow for consideration of provisional class members' asylum claims on the merits—functionally would

REPLY IN SUPP. OF MOT. FOR PRELIMINARY INJUNCTION

1    extinguish the Court's ability to provide effective relief in a well-pled and long-
2    litigated challenge to the metering policy. Fundamentally grounded in equity, the
3    AWA recognizes that Defendants should not benefit from the very illegality before
4    the Court—the functional denial of access to the asylum process through metering—
5    to insulate their claims from review. *See F.T.C. v. Dean Foods Co.*, 384 U.S. 597,
6    604 (1966) (AWA allows court "to preserve [its] jurisdiction or maintain the status
7    quo by injunction pending review of an agency's action"); *Abu Ali v. Ashcroft*, 350
8    F. Supp. 2d 28, 54 (D.D.C. 2004) (courts "may and should take such action as will
9    defeat attempts to wrongfully deprive parties" of their right to pursue claims).

10   **II.    PLAINTIFFS HAVE SATISFIED THE PRELIMINARY INJUNCTION**
11          **STANDARD**

12       **A.    Plaintiffs Are Likely To Succeed on the Merits**

13       Plaintiffs' primary legal argument is that metering is a blatant violation of the
14   law for which Defendants lack statutory and constitutional authority. Much of
15   Defendants' rebuttal to Plaintiffs' likelihood of success on the merits argument
16   merely reasserts legal arguments already rejected by this Court.[2] Defendants did not
17   seek reconsideration of the Court's decision on its Second Motion to Dismiss, and
18   Defendants provide no reason for doing so now through briefing on this motion. *See*
19   *Gonzalez v. Arizona*, 677 F.3d 383, 390 (9th Cir. 2012), *aff'd sub nom, Arizona v.*

---

20
21   [2] *Compare, e.g.*, Gov't Br. at 14 ("[E]ven if metering were done for deterrence
     purposes, a policy that seeks to deter irregular migration would be lawful" and citing
22   *Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 163–64, 165 (1993)) *with* Dkt. 280
     at 24, 63 (finding that deterrence policy based on false claims of capacity is
23   "plausibly inconsistent with and violative of the scheme Congress enacted" and
     citing *Sale* while explaining that Plaintiffs raise cognizable statutory claims); Gov't
24   Br. at 19 ("The Constitution and the INA grant the Executive the authority and duty
     to manage the flow of trade and travel through ports of entry.") *with* Dkt. 280 at 58
25   ("Whatever authority the Secretary may possess . . . over the 'flow of traffic' across
     the border, Congress's general allowance for the Secretary to 'perform such other
26   acts as [she] deems necessary for carrying out' her authority to administer and
     enforce the INA, . . . cannot entail the authority to rewrite specific congressional
27   mandates or to pretend that such mandates do not exist."); Gov't Br. at 20-21
     ("Plaintiffs have no statutory rights under sections 1225 or 1158 while standing in
28   Mexico.") *with* Dkt. 280 at 42 ("The Court concludes that the statute's language
     sufficiently displaces the presumption [against extraterritoriality].").

REPLY IN SUPP. OF MOT. FOR PRELIMINARY INJUNCTION

*Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013).

On Plaintiffs' alternative argument that metering is an effort to unlawfully deter asylum seekers and is based on pretextual claims of lack of capacity, Defendants' factual arguments regarding the likelihood of success on the merits ignore their own documents. *See Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 140-41, 148 (D.D.C. 2018) (ICE official's "self-serving declaration" was "not sufficient to discredit" credible evidence to the contrary—including evidence of the agency's own past statement—at PI stage); *cf. FTC v. Neovi, Inc.*, 604 F.3d 1150, 1159 (9th Cir. 2010) ("[A court] need not find a genuine issue of fact if, in its determination, the particular declaration was uncorroborated and self-serving."). Defendants point to evidence that the overall number of asylum seekers attempting to enter the United States at ports of entry has increased. That may be true, but it is also irrelevant. The relevant question is whether Defendants had sufficient capacity to inspect and process these increased numbers of asylum seekers without resorting to metering. *See* Dkt. 280 at 60-62. The evidence unequivocally shows that Defendants had excess capacity and workable contingency plans to deal with the increased numbers of asylum seekers, but they chose to violate the law instead. As a result, each of Defendants' six factual arguments fails.

First, Defendants encourage the Court to ignore the fact that



Gov't. Br. at 16. But that argument is belied by

Ex. 43 at 131 (emphasis added).

REPLY IN SUPP. OF MOT. FOR PRELIMINARY INJUNCTION

1    ████████████████████████████ Ex. 43 at 122. Defendants argue that █

2    ████████████████████████████████████████████████████████

3    ████████████████████████████████████████ Gov't Br. at 5. █

4    ████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████

6    ████████████████████████████████████████ Ex. 43 at 123,

7    134-35. ██████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████

11   ████████ See, e.g., Rep. Ex. 1 ████████████████████████

12   ████████████████████████████████████████████████████████

13   ████████████████████████████████████████ ); Rep. Ex. 2-4

14   (similar). [3]

15        Second, Defendants argue that ████████████████████████

16   ████████████████████████████████████████████████████████

17   ████████████████████████████ .[4] Gov't Br. at 14-15. But these documents show

18   _____

19   [3] Ongoing discovery will shed further light on █████████████

20   ████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████

25   ████████ *Compare* Ex. 42 at 014 ( █████████████████████

26   ████████ ) *and* Rep. Exs. 1-6 *with* Ex. 43 at 135 ( ████
     ).

27   [4] Defendants argue that █████████████████████████████

28   ████████████████████████████████████████████████████████ ,

REPLY IN SUPP. OF MOT. FOR PRELIMINARY
INJUNCTION

1   that █████████████████████████████████████████████████

2   ███████████████████████████████████████. *See* Ex. 42 at 12012-13 (████████

3   ██████████████); Gov't Ex. 8 at AOL-DEF-00012241 (██████████████████

4   █████████████████). ████████████████████████████████████████████

5   ████████████. *See, e.g.*, Rep. Ex. 5 at 336 (████████████████); Rep Ex. 6 at 410

6   (██████████████). Therefore, these documents show, on a border-wide basis,

7   that Defendants' capacity excuse is bogus and the metering policy is pretextual.

8       Third, Defendants argue that CBP's increased funding and staffing are

9   irrelevant because a Senate report stated that these funds and personnel would be

10  used to interdict opioids. Gov't Br. at 16. Not true. Defendants' own exhibit makes

11  clear that the increased funds and front-line personnel also addressed the number of

12  asylum seekers at ports of entry because "Port Officers . . . are also responsible for

13  conducting admissibility interviews." Gov't Ex. 1 at 13.

14      Fourth, Defendants attempt to minimize the statements of Jud Murdock and

15  President Trump, suggesting they were either not linked directly to the metering

16  policy or merely describe a salutary policy of efficiently managing port resources.

17  Gov't Br. at 14.[5] Not so. These statements were made contemporaneous to CBP's

18  implementation of the metering policy and describe Defendants' deterrence motive

19  in vivid terms. The Court has already acknowledged the relevance and temporal

20  scope of these comments in its motion to dismiss opinion. *See* Dkt. 280 at 10-11.

21  Defendants' stilted reading of Acting Assistant Commissioner Murdock's statement

22  is particularly telling. In a Congressional briefing where he represented CBP, Mr.

23  Murdock said "[t]he more we process, the more will come" when describing why

24  ─────────────────────

    Gov't Br. at 15 n.3, Plaintiffs concede that appears to be true, but it misses the point.

25  These reports strongly support Plaintiffs' argument that Defendants operate well
    below capacity and therefore their "explanation of metering is pretextual." Op. Br.

26  at 16. CBP's own data also demonstrates that ████████████████████████████

27  ██████████████. Op. Br. at 17-18; Ex. 23 ¶ 6.

    [5] Defendants entirely ignore the statements Plaintiffs quoted from the President's

28  senior policy advisor, Stephen Miller.

REPLY IN SUPP. OF MOT. FOR PRELIMINARY
INJUNCTION



"DHS had chosen to limit processing to 100 asylum seekers per day at the San Ysidro [POE]." Ex. 35 at 1. Defendants inaccurately claim that the statement was "offered without any context." But Mr. Murdock plainly stated that Defendants are metering in order to deter, notwithstanding Defendants' post hoc effort to recharacterize his words.

Fifth¸ Defendants attempt to re-write the September 2018 and September 2019 OIG reports. Defendants claim that the fact that ports of entry have excess capacity while metering is occurring is evidence that "metering is working." Gov't Br. at 17. But this is inconsistent with the sworn testimony of Randy Howe, who claims that metering is implemented only when a port of entry does not have "sufficient capacity to conduct . . . inspections, as well as capacity to temporarily hold [asylum seekers]." Gov't Ex. 7 ¶ 2. It cannot be true that metering is implemented only when a port is at or near capacity when OIG observed ports with excess capacity engaging in metering. In response to Defendants' emphasis on OIG's failure to "corroborate that CBP managers issued a specific instruction to Tecate Port personnel . . . to start returning and redirecting asylum seekers," the September 2019 report documents that a whistleblower reported such an instruction, that turnbacks did happen during the relevant time period, and that "some witnesses may have chosen to be less than forthcoming regarding a practice most witnesses acknowledged as improper." Dkt. 300-2 at 8-9 & n.9. Moreover, Defendants draw the lesson that CBP can police itself from the fact that OIG determined that CBP officers at the Tecate POE were violating federal immigration law by turning asylum seekers back to Mexico. That is not true. Despite noting rampant illegality at the Tecate POE, the September 2019 OIG report "contains no recommendations" for fixing the problem. Dkt. 300-2 at 4. Any such recommendations would be unenforceable, in any case. This is not a problem that can be solved with a few sternly worded memos.

Sixth, Defendants claim that "'throughput,' or the rate at which third-parties

REPLY IN SUPP. OF MOT. FOR PRELIMINARY INJUNCTION

transport mandatory detainees from ports to longer-term detention," is "the single biggest factor" causing the supposedly dire need for metering. Gov't Br. at 18. But as explained above, Defendants' own documents belie their claim that "[i]f other agencies do not move people from the ports, then OFO will remain at or near capacity." *Id.* Nor can Defendants blame metering on "third-party" delays in transfers of asylum seekers to ICE or HHS custody on the theory that a statute prohibits their release. Defendants fail to mention that they themselves control whether an asylum seeker at a POE is placed in expedited removal and allegedly subject to mandatory detention under § 1225(b)(1)(B)(ii), or alternatively, is placed in full removal proceedings under 8 U.S.C. § 1229a and generally not subject to mandatory detention. *Flores v. Barr*, 934 F.3d 910, 916-17 (9th Cir. 2019) ("The government has discretion to place noncitizens in standard removal proceedings even if the expedited removal statute could be applied to them[,] . . . [thereby] avoiding any mandatory detention allegedly required for expedited removal." (citation omitted)).[6]

## B.    Plaintiffs Easily Satisfy the Irreparable Harm, Balance of Equities and Public Interest Requirements

Defendants fail to contend with the primary harm asserted by Plaintiffs: *but for* Defendants' metering policy, provisional class members would have been processed for asylum prior to the effective date of the Asylum Ban. Instead of addressing this irreparable harm, Defendants argue that the implementation of a preliminary injunction would result in a "crushing burden on government agencies

---

[6] Defendant's invocation of asylum seekers' need for sanitary conditions is particularly disingenuous. Gov't Br. at 18-19. Defendants raise this excuse when convenient in service of their efforts to send asylum seekers into harm's way, but in other contexts, they disavow any understanding of what "sanitary" conditions even include. *See Flores*, 934 F.3d at 915 (noting the Government's argument that the term "safe and sanitary" is so vague as to be unenforceable and that "requir[ing] that Border Patrol stations provide the most basic human necessities—accommodations that allow for adequate sleep, essential hygiene items, and adequate, clean food and water" does not fall within the plain meaning of "safe and sanitary").

REPLY IN SUPP. OF MOT. FOR PRELIMINARY INJUNCTION

not a part of this litigation" of determining which asylum applicants had been metered and which had not. Gov't Br. at 22. Any burden is of Defendants' own making, a fact that tips the balance of the equities sharply in Plaintiffs' favor. *Cf. Bailey v. Pataki*, 708 F.3d 391, 403 (2d Cir. 2013) (finding that where "any exceptional burden that the State faced was of its own making" that factor should not work in the government's favor). Defendants state that "CBP does not maintain records of who has been metered" and yet asserts that it cannot rely on the waitlists or records from migrant shelters listing those who have been metered. Gov't Br. at 22. This position is nonsensical given that CBP relies on these very same lists for the day-to-day operation of Defendants' metering policy. *See* Dkt. 293, Ex. 26 at ¶ 7 ("CBP communicates its daily capacity to Grupo Beta, which uses that information to call the appropriate numbers from the top of the list. Grupo Beta then loads the asylum seekers into vans and transports them to CBP for processing.").

Further, Defendants assert harms related to an injunction of the Asylum Ban, the legality of which Plaintiffs have not challenged, as explained *infra*. If, as Plaintiffs assert, provisional class members have been unlawfully metered, then Defendants denied them the statutory process due to them when they first presented themselves at the border. Rectifying this statutory violation is in the public interest.

Moreover, Defendants rely on distinguishable cases to suggest that provisional class members' harm should be balanced against an injunction's purported interference with foreign affairs and the public interest in "'prevent[ion]' [of] irregular migration at the southern border." Gov't Br. at 21-22. In Defendants' cited cases, plaintiffs either sought to support organizations designated as foreign terrorist organizations or were suspected of smuggling migrants into the United States. *See United States v. Cortez*, 449 U.S. 411, 413-15 (1981); *Holder v. Humanitarian Law Project*, 561 U.S. 1, 10 (2010). Here, provisional class members are migrants lawfully seeking to access the U.S. asylum process. As to asylum seekers, the Supreme Court is clear that it is in the public interest to "prevent[]

REPLY IN SUPP. OF MOT. FOR PRELIMINARY INJUNCTION

1  [noncitizens] from being wrongfully removed, particularly to countries where they

2  are likely to face substantial harm." *Nken v. Holder*, 556 U.S. 418, 436 (2009). The

3  removal of any provisional class member following a denial of asylum based on the

4  Asylum Ban will be "wrongful" because the individual will never have had access

5  to the asylum process as it existed when she first presented herself at the southern

6  border.[7] And if not removed despite application of the Asylum Ban, she will have

7  had to sustain a much higher burden of proof for the lesser forms of relief that remain

8  available. The availability of these lesser forms of relief does not negate the

9  irreparable harm of being denied access to the asylum process, to which provisional

10 class members would have had meaningful access but for Defendants' unlawful

11 metering policy. Therefore, the balance of the equities and the public interest favor

12 the provisional class members.

13 **III.  THIS COURT HAS JURISDICTION**

14      Defendants erroneously contend that various provisions of 8 U.S.C. § 1252

15 foreclose this Court's jurisdiction to grant the requested injunction. Their arguments

16 are rooted in a fundamental misunderstanding of the purpose of Plaintiffs' motion,

17 which is to preserve meaningful access to the asylum *process* for provisional class

18 members, rather than challenging a particular outcome in an individual case.

19      Section 1252(a)(2)(A): Section 1252(a)(2)(A), which limits review of certain

20 matters related to expedited removal, is inapplicable because Plaintiffs do not

21 challenge Defendants' discretion to put provisional class members into expedited

22 removal or any findings specific to their cases.

23      Section 1252(a)(2)(A)(ii) bars review of Defendants' decision to invoke the

24 INA's expedited removal provisions. However, Plaintiffs take no position on

25 whether provisional class members should be put into expedited removal, or instead

26

27  [7] As Plaintiffs' previously explained, nearly all provisional class members are barred
    from obtaining asylum in Mexico, and their likelihood of obtaining a waiver of the
28  30-day bar is virtually nil. Op. Br. at 12.

placed directly into regular removal proceedings or paroled into the United States, *see* SAC at ¶ 205. Defendants' ultimate decision about *how* to process provisional class members has no bearing on its decision about *whether* these individuals can access the statutory process they were entitled to when Defendants metered them.

Sections 1252(a)(2)(A)(i) and (iii) preclude judicial review of credible fear determinations and expedited removal orders *in individual cases*, as well as claims "arising from or relating to the implementation or operation" of such orders. But Plaintiffs do not challenge any individual substantive decisions concerning the merits of an individual's asylum claim. For those provisional class members whom Defendants opt to put into expedited removal, Plaintiffs' principal concern is to preserve the opportunity to have their asylum claims adjudicated on the merits— which would have been available had they not been illegally metered. Otherwise, provisional class members will automatically receive negative credible fear determinations regardless of the credibility of their fear or the seriousness of their anticipated harm. *See* Gov't Br. at 3.

Finally, section 1252(a)(2)(A)(iv) bars judicial review of policies and procedures adopted to implement 8 U.S.C. § 1225(b)(1). Here, Plaintiffs challenge only Defendants' metering policy, which is distinct from their decisions about whether to invoke section 1225(b)(1) in a particular case. Plaintiffs do not seek judicial review of the legality of the Asylum Ban's expedited review provisions. Section 1252(a)(2)(A)(iv) is thus irrelevant.

Section 1252(e): This provision specifies the limited circumstances under which a court many grant equitable relief "in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1)." 8 U.S.C. § 1252(e)(1)(A). As previously noted, this action seeks only to rectify the adverse impact of Defendants' metering policy on Plaintiffs' meaningful access to the asylum process. Plaintiffs do not seek review of individual expedited removal orders or challenge the "validity of" the expedited removal "system." 8 U.S.C. § 1252(e)(3). Thus, neither

REPLY IN SUPP. OF MOT. FOR PRELIMINARY
INJUNCTION

1   the jurisdictional limitations in sections 1252(e)(2) and (e)(3) nor the prohibition on

2   class actions relating to expedited removal orders in section 1252(e)(1)(B) have any

3   bearing on this motion.

4        Section 1252(f)(1): As Defendants note, 8 U.S.C. § 1252(f)(1) "prohibits

5   federal courts from granting classwide injunctive relief *against the operation of §§*

6   *1221-123[2].*" *Jennings v. Rodriguez*, 138 S. Ct. 830, 851 (2018) (emphasis added)

7   (internal citation and quotation omitted).[8] Plaintiffs do not seek an order from this

8   Court enjoining or restraining any of those statutory provisions, but rather an order

9   "to enjoin conduct . . . not authorized by the statutes." *See id.* (internal citation

10  omitted); *Rodriguez v. Hayes*, 591 F.3d 1105, 1120 (9th Cir. 2010).[9] Specifically,

11  Plaintiffs seek to preserve provisional class members' meaningful access to the

12  asylum process despite the Ban—which would not have affected them absent

13  Defendants' metering policy. Section 1252(f)(1) therefore "poses no bar." *Grace v.*

14  *Whitaker*, 344 F. Supp. 3d 96, 143 (D.D.C. 2018); *see Rodriguez*, 80 F. Supp. 3d at

15  1120 (holding section 1252(f) does not limit a court's ability to enjoin a violation of

16  the INA).

17       Section 1252(b)(9): This section bars judicial review only where a legal

18  question "arise[s] from" a noncitizen's removal proceedings under 8 U.S.C. § 1229a.

19  *See Jennings*, 138 S. Ct. at 841 n.3 (2018) (plurality opinion). Section 1252(b)(9)

20  does not apply to "claims that are independent of or collateral to the removal

21  process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016); *accord Jennings*,

22  138 S. Ct. at 841 (affirming that (b)(9) covers only challenges to a removal order,

23  the decision to detain or seek removal, or the process by which removability will be

24

25  ─────────────────

    [8] Defendants do not contend that Section 1252(f)(1) bars this Court's ability to enter
26  a declaratory judgment, nor could they. *See Rodriguez v. Marin*, 909 F.3d 252, 256
    (9th Cir. 2018) (Section 1252(f)(1) "does not affect classwide declaratory relief").

27  [9] *See also Padilla v. ICE*, 354 F. Supp. 3d 1218 (W.D. Wash. 2018); *Damus v.*
28  *Nielsen*, 313 F. Supp. 3d 317, 328 (D.D.C. 2018); *R.I.L-R v. Johnson*, 80 F. Supp.
    3d 164, 184; *Abdi v. Duke*, 280 F. Supp. 3d 373, 409 (W.D.N.Y. 2017).

REPLY IN SUPP. OF MOT. FOR PRELIMINARY
INJUNCTION

decided). The issues here do not "arise from" removal proceedings, but rather from Defendants' unlawful metering policy.

Section 1252(a)(5): This section, which bars "judicial review of an order of removal," is likewise inapplicable. Plaintiffs' motion seeks only to preserve provisional class members' access to the statutory process providing for consideration of their asylum claims on the merits, not to affect the outcome of that process—which may or may not result in a removal order.

For the foregoing reasons, the jurisdictional bars in 8 U.S.C. § 1252 do not apply in this case.[10] This Court must resolve any remaining doubts and ambiguities in favor of jurisdiction. *See Arce v. United States*, 899 F.3d 796, 801 (9th Cir. 2018) (per curiam).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be granted.

Dated: October 17, 2019

MAYER BROWN LLP
Matthew H. Marmolejo
Ori Lev
Stephen S. Medlock

SOUTHERN POVERTY LAW CENTER
Melissa Crow
Sarah Rich
Rebecca Cassler

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy
Ghita Schwarz
Angelo Guisado

---

[10] Where § 1252 bars judicial review, this includes actions brought under the AWA. The fact that the statute explicitly mentions 28 U.S.C. 1651 as one type of "judicial review" is irrelevant because no provision of § 1252 bars judicial review in this instance.

REPLY IN SUPP. OF MOT. FOR PRELIMINARY INJUNCTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMERICAN IMMIGRATION
COUNCIL
    Karolina Walters

By: */s/ Stephen M. Medlock*
    Stephen M. Medlock

*Attorneys for Plaintiffs*

REPLY IN SUPP. OF MOT. FOR PRELIMINARY
INJUNCTION

1      **CERTIFICATE OF SERVICE**

2   I certify that I caused a copy of the foregoing document to be served on all

3 counsel via the Court's CM/ECF system.

4 Dated: October 17, 2019     MAYER BROWN LLP

5

6           By */s/ Stephen M. Medlock*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28