# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, *et al.*,<br>    *Plaintiffs,*<br><br>v.<br><br>Kevin McAleenan, *et al.*,<br>    *Defendants.* | )<br>)<br>)<br>)<br>)     No. 3:17-cv-02366-BAS-KSC<br>)<br>)<br>)<br>) |

### DECLARATION OF ALMA COLE

I, Alma Cole, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows, relating to the above-captioned matter:

1. I am currently the Chief Information Security Officer (CISO), Executive Director, Cyber Security Directorate, Office of Information and Technology (OIT), Enterprise Services, U.S. Customs and Border Protection (CBP). I have held this position since February 2017. As the CISO, I am responsible for developing and implementing an information security program, which includes procedures and policies designed to protect enterprise communications, systems and assets from both internal and external threats. One of the program areas under my supervision is the CBP OIT eDiscovery team (the "eDiscovery Team"). The eDiscovery team is responsible for, among other things, conducting centralized searches of email for CBP and its subcomponents.

2. I am familiar with the case of *Al Otro Lado v. McAleenan,* as it is one of the current open cases being handled by my eDiscovery team.

3. The eDiscovery Team is responsible for pulling emails and other electronically stored information (ESI), for the nineteen custodians named in this case: Todd Owen, Carlos Rodriguez, Sidney Aki, Todd Hoffman, Randy Howe, Alberto Flores, Pete Flores, David John Gonzalez, Andres Guerra, Frank Longoria, Luis Mejia, Bryan Molnar, David Higgerson, Mariza Marin, Jud Murdock, Hector Mancha, Tater Ortiz, Michael Humphries, and David Salazar.

4. As an initial matter, CBP does not have the tools in place to easily conduct an agency-wide search of employee emails. CBP emails were previously archived by a third-party contractor. The contractor maintained these emails on a series of "journal" servers, which keep a copy of every email sent or received by any CBP employee in chronological order.

5. On January 1, 2019, CBP began to migrate off of Email as a Service (journaled email) to Office 365 during the time when custodian emails were being pulled in this case. Thus, emails were migrated into this system, and any searches for emails has to include both Office 365 and non-Office 365 searches. In order to collect emails from a particular custodian, the eDiscovery Team therefore must essentially run two searches - one over the journaled emails, and another over the Office 365 server. While these searches can be run concurrently, downloading the messages from Office 365 can take several hours. This therefore increases the time for running a particular search.

6. Once the data is located, email and other ESI is generally uploaded into Clearwell, which is an eDiscovery Tool that can process data through the entire Electronic Discovery Reference Model process, to identify, collect, process, analyze, review and produce data in one of several formats.

7. Clearwell is capable of running both basic (e.g., keyword) searches and advanced (e.g., proximity, nested proximity, and wildcard) searches. Once the search terms have been applied and run over ESI in Clearwell, the information can be processed and analyzed. This process also takes time and resources, as a member of the eDiscovery Team needs to run the terms, analyze the results, and then ensure the results make their way into the appropriate folders for analysis. Depending on the complexity of the searches and the amount of information that must be searched, the time and resources required to complete these tasks varies by task.

8. The eDiscovery Team encountered several unforeseen technical issues in collecting emails and other records for all custodians in this case.

9. The eDiscovery Team learned that certain emails that were part of its initial collection contained only partial text (that is, the messages that were cut off in the middle email) or had missing attachments.

10. It took several weeks of investigation for the eDiscovery and Office 365 Teams to determine why "stub" emails were collected and provided to DOJ. After investigation, the eDiscovery and Office 365 Teams determined that the "stub" emails were the result of CBP's migration to Office 365. As explained above, prior to the migration to Office 365, CBP's email was housed on journal servers owned by a third-party contractor. The contractor maintained those emails on a series of "journal" servers, which kept a copy of every email sent or received by any CBP employee in chronological order. The migration to Office 365 began on January 1, 2019 and continued through April 2019 for the custodians in this case. The migration affected all of the custodians in this case except two: custodian Longoria, who

retired from the agency prior to migration, and custodian Murdock, whose email pulls were limited by agreement to October through December 2018.

11. Prior to the migration of a custodian's mailbox to Office 365, all journaled emails (both sent and received) were stored only on the journal servers. Once a custodian's mailboxes were migrated to Office 365, however, emails created after that the migration date were stored only in Office 365. However, during the migration, an individual's entire inbox was migrated to Office 365. Thus, any messages that were stored in an individual's inbox in "archived" form would be transferred over to Office 365 as an archived (or "stub") message. While the original message remained stored, in complete form, on the journal servers, only the archived version would appear in Office 365. However, there are no "stub" emails created after a custodian transitioned to Office 365.

12. In other words, the only "stub" emails that would be pulled from Office 365 are those emails that would have been created before a custodian transitioned to Office 365, and which were in "archived" form at the time the custodian transitioned to Office 365.

13. In all previous collections of emails for litigation, the CBP eDiscovery Team collected emails only from the journal servers. Because, in this case, the eDiscovery Team was aware that the custodians had migrated to Office 365, the team also conducted a pull of emails directly from Office 365. Thus, for all custodians except for Judson Murdock, Frank S. Longoria, Hector Mancha, David Salazar, Tater Ortiz, and Michael Humphries, the team conducted a pull from CBP's journal servers for the date of January 1, 2016 through December 31, 2018, and then conducted a separate pull from Office 365 from January 1, 2019 through the date of collection. Because not all custodians migrated to Office 365 on the same date, however, pulling from Office 365 for this date range meant that all

custodians' journal server emails (except for custodians Longoria and Murdock) were not pulled from prior to their migration.

14. The team conducted the pull in this manner because, at the time of collection, the team did not know the exact migration date of each custodian.

15. Following the investigation into this issue, the eDiscovery Team determined that DOJ already possessed complete email copies of the incomplete, "stub" messages which had been created prior to January 1, 2019, since the complete messages were initially copied to the journal servers when each email was created and sent.

16. To ensure that CBP captured complete versions of messages created *after* January 1, 2019, but prior to the custodian's migration to Office 365, the eDiscovery Team conducted a second pull from the journal servers, for the affected custodians, which captured emails generated between Jan 1, 2019 and their O365 migration date. This second pull therefore ensured that the complete version of all messages for the custodians during that time frame.

17. To aid their investigation into the cause of the "stub" emails, the eDiscovery Team began a manual review of the "stub" emails . . This review had to be done manually because the eDiscovery tools CBP and DOJ use are different eDiscovery tools. CBP uses Clearwell; DOJ uses Relativity. When an email is run through an eDiscovery tool, a unique identifier is assigned to that email. When CBP and DOJ run one specific email through their respective eDiscovery tools, two different identifiers are created for the same email. So a manual comparison had to be made between the complete and incomplete emails to attempt to match them up.

18. This one-for-one match up was extremely time consuming. It continued until November 8, 2019, when the eDiscovery Team determined that it had collected all complete emails from

the custodians. The emails from the second pull of journal server emails for these custodians (Owen, Hoffman, Howe, Aki, Rodriguez, P. Flores, A. Flores, Gonzalez, Guerra, Higgerson, Marin, Mejia, and Molnar) were provided to DOJ on November 10, 2019.

19. This case represents the first time CBP has had to conduct an eDiscovery data pull in a national litigation case since the Office 365 migration. These problems presented a host of technical difficulties that took time to resolve. However, now that the problem has been identified, the eDiscovery Team is prepared to address it so that this does not happen again.

20. On November 1, 2019, the eDiscovery Team learned from DOJ that the email data sets from custodians Higgerson and Murdock did not contain all required metadata for DOJ to properly load the data into Relativity. The errors occurred because data was pulled using an outdated export template that was improperly configured. Because the incorrect export template was used, incomplete files were exported and given to DOJ. The eDiscovery Team has corrected those errors and re-pulled the emails using the proper templates.

21. Custodian Murdock's emails, with the correct metadata, were provided to DOJ on November 10, 2019.

22. The data for custodian Higgerson was much larger than anticipated (approximately 2.4 million files or 432 gigabytes), which slowed down the export process. The export to the encrypted hard drive was completed and delivered to DOJ on November 11, 2019. Late in the afternoon on November 8, 2019, we discovered that the eDiscovery Team had mistakenly collected emails from CBP employee Frank C. Longoria, rather than the intended custodian, Frank S. Longoria. The eDiscovery Team has now pulled the emails from the correct custodian. The data was delivered to DOJ on November 10, 2019.

23. <u>We were unable to pull all of the non-email ESI until November 11, 2019, because we were devoting our limited resources to address the issues described above.</u>

24. To address the various problems the eDiscovery Team has encountered in this case, I authorized additional staff to run the searches necessary to find the "clean" copies of the "stub" messages. All five eDiscovery technicians were redirected to work only on this case and an additional twelve Security Operations Center employees and contractors were authorized to work additional hours to provide additional shift support to support this effort around the clock.

25. I understand from reviewing documents in this case that CBP attorneys have also expended significant resources to review the data pulled from the named custodians. Between September 9, 2019 and November 11, 2019, 122 CBP attorneys have dedicated over 7,100 hours to reviewing the documents we provided to DOJ.

26. I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 12 day of November, 2019.

Alma Cole
Chief Information Security Officer
Executive Director, Cybersecurity Directorate
Office of Information and Technology
U.S. Customs and Border Protection
Department of Homeland Security