# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*,<br><br>　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>Kevin K. McAleenan, *et al.*,<br><br>　　　　　　　　　Defendants. | Case No.: 17-cv-02366-BAS-KSC<br><br>**ORDER DENYING WITHOUT PREJUDICE THE PARTIES' MOTIONS TO SEAL**<br><br>**[ECF Nos. 290, 305, 311, 314]** |

　　　Before the Court are: (1) Plaintiffs' Motion to Seal Portions of their Preliminary Injunction and Class Certification Papers (ECF No. 290)[1]; (2) Defendants' Motion to Seal Portions of their Opposition to Plaintiffs' Motion for Preliminary Injunction (ECF No. 305); (3) the parties' Joint Motion to Seal Portions of Plaintiffs' Preliminary Injunction and Class Certification Reply Papers (ECF No. 311); and (4) the parties' Joint Motion to Seal Portions of Plaintiffs' Class Certification Reply Papers (ECF No. 314). For the reasons stated below, the Court **DENIES WITHOUT PREJUDICE** the parties' Motions.

---

[1] Defendants also filed a Response in Support of ("ISO") Plaintiffs' Motion to Seal Portions of their Preliminary Injunction and Class Certification Papers. (ECF No. 297.)

1

## I. BACKGROUND

The parties request that the Court seal 14 exhibits, in part or in their entirety, and the portions of the parties' briefings on Plaintiff's Motions for Preliminary Injunction and Provisional Class Certification that refer to the information contained in these exhibits.[2]

The parties state that 13 of the 14 exhibits contain "sensitive law enforcement information," including "CBP's immigration enforcement techniques, contingency planning, and the personal telephone numbers and email addresses of senior CBP officials" (ECF No. 290-1 at 2), "the number and categorization of detainees and migrants presenting at certain ports of entry" (ECF No. 311-1 at 3; ECF No. 314-1 at 1), and data and information exclusive to internal databases and "the opinions and

---

[2] These exhibits include:
  (1) an internal CBP email with subject line "CBP_MCAT_REPORT for February 25, 2018" (Ex. 41 to Mot. for Prelim. Inj.; Ex. 3 to Mot. for Provisional Class Certification.);
  (2) an internal CBP email with subject line "Field Office Queue Management Report 1.22.2018" (Ex. 42 to Mot. for Prelim. Inj.; Ex. 4 to Mot. for Provisional Class Certification);
  (3) a February 8, 2019 email chain with subject line "CBP MCAT C-1 Notes 2/8" (Ex. 5 to Mot. for Provisional Class Certification);
  (4) a copy of CBP's Laredo Field Office Contingency Plan (Ex. 43 to Mot. for Prelim. Inj.; Ex. 27 to Mot. for Provisional Class Certification);
  (5) the portions of a declaration from Rodney Harris (specifically, the sixth through tenth sentences of paragraph 12) that discuss the contents of a Highly Confidential "Laredo Field Office Contingency Plan" (Ex. 3 to Opp'n to Mot. for Prelim. Inj.);
  (6) an internal Customs and Border Protection ("CBP") email with the subject line "LFO Queue Management Report for December 19, 2018" (Ex. 4 to Reply ISO Mot. for Prelim. Inj.);
  (7) an internal CBP email with subject line "LFO Queue Management Report for December 20, 2018" (Ex. 3 to Reply ISO Mot. for Prelim. Inj.);
  (8) an internal CBP email with subject line "LFO Queue Management Report for December 21, 2018 @ 1000 hours CST" (Ex. 2. to Reply ISO Mot. for Prelim. Inj.);
  (9) an internal CBP email with subject line "LFO Queue Management Report for February 2, 2019" (Ex. 1 to Reply ISO Mot. for Prelim. Inj.);
  (10) an internal CBP email with subject line "Field Office Queue Management Report February 22, 2019" (Ex. 8 to Opp'n to Mot. for Prelim. Inj.);
  (11) an internal CBP email with the subject line "Field Office Queue Management Report March 6, 2019" (Ex. 5 to Reply ISO Mot. for Prelim. Inj.);
  (12) a spreadsheet dated March 14, 2019 with the title, "Laredo Field Office." (Ex. 6 to Reply Br. ISO Mot. for Prelim. Inj.);
  (13) an email and attachment entitled "Filed Office Queue Management 10.02.18" (Ex. 1 to Reply Br. ISO Mot. for Provisional Class Certification);
  (14) a copy of the waitlist kept for asylum seekers in Ciudad Juarez, Mexico (Ex. 4 to Reply Br. ISO Mot. for Provisional Class Certification).

2

reactions of agency officials to the information provided" (ECF No. 297 at 2–3). Defendants argue that certain information, if disclosed, risks revealing "resource vulnerabilities" and "operational vulnerabilities" that could be exploited by others to undermine border security. (ECF No. 297 at 2–4; ECF No. 305-1 at 3–4; ECF No. 311-1 at 4–5.) Regarding the several reports that are the subject of the parties' sealing motions, Defendants state that

> [t]he Reports contain data that, if made public, could provide hostile actors actionable information about which ports of entry are facing certain operational challenges, and thus reveal when/where/under what conditions someone or something should try to affect entry or avoid entry, should create diversions or distractions, or should make moves to create operational difficulties for the ports, all of which would put the security of our border in a more vulnerable posture.

(ECF No. 297 at 2–3; ECF No. 305-1 at 3; ECF No. 311 at 4; ECF No. 314-1 at 3 (all quoting the Declaration of Randy Howe ¶ 10).) Further, Defendants claim that preventing public disclosure of agency officials' email addresses is a compelling reason to seal the documents containing this information. (ECF No. 297 at 3.)

Lastly, Plaintiffs state that a copy of the waitlist kept for asylum seekers in Ciudad Juarez should be sealed because the list contains the personally identifiable information of asylum-seekers, which could lead to their further persecution if it is revealed they are in Ciudad Juarez. (ECF No. 314-1 at 2.)

## II. LEGAL STANDARD

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citing *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). "The presumption of access is 'based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure

3

of accountability and for the public to have confidence in the administration of justice." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). A party seeking to seal a judicial record bears the burden of overcoming the strong presumption of access. *Foltz*, 331 F.3d at 1135. The showing required to meet this burden depends upon whether the documents to be sealed relate to a motion that is "more than tangentially related to the merits of the case." *Ctr. for Auto Safety*, 809 F.3d at 1102. When the underlying motion is more than tangentially related to the merits, the "compelling reasons" standard applies. *Id*. at 1096–98. When the underlying motion does not surpass the tangential relevance threshold, the "good cause" standard applies. *Id.*

## III. DISCUSSION

Plaintiffs' motions are more than tangentially related to the merits of this consolidated dispute. *See id.* at 1099–1102 (applying compelling reason standard to motion for preliminary injunction); *see also Baker v. SeaWorld Entm't, Inc.*, No. 14CV2129-MMA (AGS), 2017 WL 5029612, at *3 (S.D. Cal. Nov. 3, 2017) (finding motion for class certification to be more than tangentially related to merits of the case and citing cases). Hence, these motions and the exhibits attached to them are subject to the "compelling reasons" standard.[3]

"In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179. If a court chooses to seal documents, it must "base its decision on a compelling reason and articulate the factual basis for its ruling, without

---

[3] Defendants do not dispute this characterization; indeed, they concede this point. (*See* ECF No. 305-1 at 2 ("When the documents to be protected are 'more than tangentially related to the merits,' *as is the situation here*, parties must show compelling reasons to keep those documents sealed.") (emphasis added).)

4

17cv2366

relying on hypothesis or conjecture." *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995). This requires the party seeking to seal documents to "make a particularized showing . . . supported by specific factual findings that outweigh the important public policies favoring disclosure of that document." *Unknown Parties v. Johnson*, No. CV-15-00250-TUC-DCB, 2016 WL 8199309, at *4 (D. Ariz. June 27, 2016) (citing *Kamakana*, 447 F.3d at 1178, 1180–81). Therefore, blanket claims of privacy or law enforcement are insufficient; instead, the party "must demonstrate specific prejudice or harm flowing from the disclosure of a specific document." *Id.*

Below, the Court addresses the two categories of exhibits that are the subject of the Motions to Seal: (1) Defendants' email chains and the attached reports; and (2) the Ciudad Juarez waitlist.[4]

**A. Email Chains and Attached Reports**

As explained below, the parties' arguments do not satisfy the "compelling reasons" standard regarding Defendants' email chains and the attached reports.

First, that the accompanying email chains contain "internal opinions and reactions" of agents is not compelling reasons to protect them from disclosure. The emails contain brief and innocuous observations by agents about capacity at the ports of entry. Defendants do not identify a specific harm that would be caused by the public disclosure of these statements, and the Court does not find that any of the statements could be used for scandalous or libelous purposes.

---

[4] Plaintiffs include two additional documents in a set of Sealed Lodged Proposed Documents filed on October 21, 2019: the Supplemental Declaration of Roberto Doe (Ex. 2 to Plaintiffs' Reply Br. ISO their Motion for Provisional Class Certification, ECF No. 315-3) and the Declaration of Bridget Cambria, the executive director of a nonprofit providing representation to families detained in Pennsylvania (Ex. 3 to Plaintiffs' Reply Br. ISO their Motion for Provisional Class Certification, ECF No. 315-4). Plaintiffs do not state in any of their Motions to Seal that they seek to seal these particular documents. In any event, after review of these documents, the Court discerns no compelling reason to protect them from public disclosure and denies without prejudice the parties' Motions as to these two documents, to the extent the parties sought to seal them.

5

Second, it is unclear to the Court what vulnerabilities are disclosed by the data in the Queue Management Reports or the Contingency Plan that can be exploited by "hostile actors." Defendants' vague, generalized concern about bad actors potentially frustrating the operations of ports of entry does not articulate a particularized harm flowing from public disclosure necessary to satisfy the heightened "compelling reasons" standard. *See Motley v. City of Fresno, California*, No. 1:15-CV-00905-DAD-BAM, 2016 WL 1060144, at *2 (E.D. Cal. Mar. 17, 2016) (finding concerns that disclosure of a procedure would "somehow allow criminals to evade law enforcement and inflict harm on the public" did not meet compelling reasons standard). Further, much of the information provided in the Contingency Plan is superficial in substance, sometimes including only a single line of instruction per topic and frequently referring only to unspecified "existing CBP policies and procedures." In addition, some of its most sensitive details appear to have already been redacted.

This case is distinguishable from other cases in which courts have found that security concerns warrant sealing documents from public view. Here, there are no details revealing the location of agents such that certain areas of the ports would be susceptible to security breaches if the information was disclosed. *C.f., Bell v. Home Depot U.S.A., Inc.*, No. 2:12-CV-02499-GEB-CKD, 2015 WL 6082460, at *2 (E.D. Cal. Oct. 15, 2015) (finding compelling reasons to seal security standards of procedure that contained protocols "including when doors are unlocked, when alarms are deactivated, and where employees are positioned during this process" such that the store's security and employee safety could be compromised by disclosure). These documents also do not contain information regarding how the border is monitored and secured against unlawful entry. *C.f. United States ex rel. Kelly v. Serco, Inc.*, No. 11CV2975 WQH-RBB, 2014 WL 12675246, at *2 (S.D. Cal. Dec. 22, 2014) (sealing documents that contained "locations, technical specifications and operational

capabilities of restricted Homeland Security microwave communications systems along the United States border").

The parties similarly fail to make this showing regarding agents' email addresses and personal telephone numbers. The only specific argument offered in support of sealing any of this information is Defendants' circular claim that preventing disclosure of email addresses "provides a compelling reason to seal the document." (ECF No. 297 at 3.) The cases Defendants cite in support of this proposition relate to the email addresses of private individuals, not public officials.

However, the Court recognizes that these agents retain some interest in their personal privacy. *Lissner v. U.S. Customs Serv.*, 241 F.3d 1220, 1223 (9th Cir. 2001) ("individuals do not waive all privacy interests in information relating to them simply by taking an oath of public office, but by becoming public officials, their privacy interests are somewhat reduced") (citation omitted); *see also Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 977 (9th Cir. 2009) (recognizing, in FOIA context, public employees' "legitimate interest in keeping private matters that could conceivably subject them to annoyance or harassment") (citations and internal quotation marks omitted). Generally, lower level officials "have a stronger interest in personal privacy than do senior officials." *Id.* (citing *Dobronski v. FCC*, 17 F.3d 275, 280 n.4 (9th Cir. 1994)).

Here, Defendants seek to conceal the phone numbers and email addresses of senior agency officials. (ECF No. 290-1 at 2.) While the public has a strong interest in the contents of the emails and their attachments, given their relevance to the port capacity claims at the heart of this case, the public has no comparable interest in or need for the office phone numbers and cell numbers of the agency officials. The redaction of this information will not compromise the public's understanding of this case or the judicial process. *See Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010). The agency officials do not, however, have a similar privacy interest

in their email addresses. First, these emails appear, by their domain, to be official CBP email accounts, not personal accounts. Second, Defendants do not seek to prevent disclosure of the officials' names, and each email username is simply the name of each official. Third, the disclosure of email addresses, unlike phone numbers, leaves agency officials less susceptible to annoyance or harassment because of the ease with which spam or other unwanted messages can be filtered and removed. Therefore, the Court does not permit redaction of the email addresses.

In sum, the parties have not stated compelling reasons for sealing the internal CBP emails, attached reports, and Contingency Plan. However, the Court concludes that limited redactions of the agency officials' office phone numbers and cell numbers is warranted.

**B.    Ciudad Juarez Waitlist**

Plaintiffs request that the Court seal the Ciudad Juarez waitlist because the individuals listed could face further persecution if their location in Ciudad Juarez is publicly disclosed. The list, which is almost 3,000 pages long, consists of a spreadsheet of information about the asylum-seekers including, but not limited to: the names of what appear to be their emergency contacts, corresponding emergency phone numbers, birthdates, city/state/country of origin, CBP identification numbers, gender, sexual orientation, medical conditions, blood type, previous occupations, level of education, criminal and immigration history, and the type of persecution each individual is fleeing in their home country. It is not entirely clear to the Court if the list contains the names of the asylum-seekers themselves.

The Court must balance these individuals' privacy interest in the above information with the interest in public access to this record. These individuals' interest in ensuring their personal safety by preventing public disclosure of this information is critically important. However, the list itself is also vital to the enforcement of the injunctive relief requested in this action. Balancing these

8

17cv2366

interests, the Court therefore concludes that the document should be made publicly available with redactions concealing certain identifying information. *See Hedrick v. Grant*, No. 2:76-CV-0162-GEB-EFB P, 2017 WL 550044, at *2 (E.D. Cal. Feb. 10, 2017) (finding that redactions sufficiently protected class members' privacy interests but also preserved public access to a document that would "be among the evidence considered by the court . . . in determining the merits of the motion to enforce and thus are an important part of the record of the case").

The waitlist appears to contain enough personal information that, if disclosed in its entirety, could allow someone familiar with an asylum-seeker to deduce their identity. However, many of the data points in the list, if viewed without reference to the other personal information provided, will not expose the identities of these individuals. For example, without more information, disclosing the gender, sexual orientation, country of origin, blood type, level of education, and type of identification document of individual asylum-seekers will likely not permit members of the public to determine their identities, even when viewed in the aggregate. Similarly, neither would each individuals' location of entry into Mexico, method of travel, or their reason for leaving their country of origin, which is stated in broad categorical terms with no reference to any specific actors or locations.

Thus, the Court permits redactions of the asylum-seekers' names (assuming their names appear on the list), previous occupations, city/state of origin, birthdates, and the names and telephone numbers of their emergency contacts.

## IV. CONCLUSION AND ORDER

Accordingly, the Court **DENIES WITHOUT PREJUDICE** the parties' Motions to Seal. Both parties may file amended motions that more fully address the "compelling reasons" supporting sealing of the relevant exhibits. Further, Plaintiffs may file an amended motion identifying other information in the waitlist that they seek to redact in addition to the categories of information listed in this Order.

However, if the parties choose not to file amended motions, the parties must submit the relevant exhibits with redactions to the Court by **December 5, 2019**. The information to be redacted from the exhibits includes:

    (1)    CBP officials' office phone numbers and cell phone numbers;

    (2)    On the Ciudad Juarez waitlist, the asylum-seekers':

        a) Names;

        b) Previous occupations;

        c) City/state of origin;

        d) Birthdates;

        e) Emergency contact information (names and phone numbers).

The unredacted versions of these exhibits will be sealed and the redacted versions will be publicly filed. If the parties' briefings for the preliminary injunction or class certification motions refer to any information now subject to redaction, the parties shall also submit versions of these briefings redacting only the information listed above. The unredacted briefings will remain sealed.

    **IT IS SO ORDERED.**

**Dated: November 21, 2019**

Hon. Cynthia Bashant
United States District Judge