JOSEPH H. HUNT
Assistant Attorney General, Civil Division
SCOTT G. STEWART
Deputy Assistant Attorney General, Civil Division
WILLIAM C. PEACHEY
Director
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
SAIRAH G. SAEED (IL 6290644)
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorneys
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259 | Fax: (202) 305-7000
katherine.j.shinners@usdoj.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
**(San Diego)**

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | Hon. Cynthia A. Bashant |
| v. | **DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR EMERGENCY MOTION TO STAY PRELIMINARY INJUNCTION (ECF No. 330) PENDING APPEAL** |
| CHAD F. WOLF,[*] Acting Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*, | |
| *Defendants* | |

---

[*] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Federal Rule of Civil Procedure 25(d).

## DEFENDANTS' MEMORANDUM IN SUPPORT OF EMERGENCY MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

Pursuant to Section 4 of Judge Bashant's Standing Order for Civil Cases,[1] Defendants respectfully move the Court to stay its preliminary-injunction order (ECF Dkt. No. 330) barring enforcement of the interim final rule entitled "Asylum Eligibility and Procedural Modifications," 84 Fed. Reg. 33,829 (July 16, 2019) ("Rule"), pending the resolution of Defendants' appeal from that order. *See* Notice of Appeal (ECF Dkt. No. 335). Defendants ask that the Court order that any response to this motion be filed by December 9 and that the Court rule on this motion by December 11, 2019. Defendants further ask that the Court enter an administrative stay of its preliminary-injunction order pending briefing and adjudication of Defendants' stay motion. As explained below, the balance of harms weighs strongly in favor of a stay, and Defendants respectfully maintain that they are likely to prevail on the merits of their challenge to the Court's decision.

The preliminary injunction bars Defendants from enforcing the Rule with respect to a provisionally certified class that Plaintiffs estimate to exceed 26,000 members. November 19, 2019 Order (ECF No. 330) ("Order") 5–6, 22, 36. The injunction thus has a substantial detrimental impact on the public interest in discouraging irregular migration and addressing the unprecedented surge of migrants seeking entry through the southern border of the United States. The provisional class members, on the other hand, continue to have access to the process for seeking protection from

---

[1] Because Defendants are seeking a stay of a preliminary injunction, which constitutes emergency relief, Defendants understand that this motion does not require a conference of counsel under this Court's Standing Order for Civil Cases § 4.A. Defendants nevertheless informed Plaintiffs of their intent to seek a stay of this Court's Order on December 4, 2019. Plaintiffs stated that they oppose this motion. To the extent a conference is required, Defendants respectfully request that the Court waive the requirement that the conference take place seven days prior to the filing of the motion. *See* Standing Order for Civil Cases § 4.A.

Page 3 of 10

removal as set forth in the Rule. And the Order rests on serious errors of law.

# ARGUMENT

In deciding a motion to stay an order pending appeal, courts consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

## I. Considerations of Irreparable Harm and the Equities Weigh Strongly in Favor of a Stay.

The serious and irreparable harms to the government and the public from this Court's injunction outweigh any harm that members of the provisional class may suffer if the injunction is stayed.

### A. The Injunction Inflicts and Will Continue to Inflict Irreparable Injury on Defendants, Other Governmental Entities, and the Public.

The preliminary injunction causes direct, irreparable injury to the United States and the public. It frustrates the "wide public interest in effective measures to prevent" irregular migration at the U.S.-Mexico border. *United States v. Cortez*, 449 U.S. 411, 421 n.4 (1981). The United States has experienced an "overwhelming surge" of individuals crossing the southern border. 84 Fed. Reg. at 33,840. In response to this unprecedented surge, the Departments of Justice and Homeland Security issued the Rule, which restricts eligibility for asylum status by providing that an alien entering the United States across the southern land border is generally ineligible for asylum unless he or she first sought protection from persecution or torture where it was available in at least one third country through which the alien transited. *Id.* at 33,835. (The alien remains eligible for other forms of protection from removal and certain limited exceptions to the bar apply. *Id.* at 33,837.) Thus, the Rule represents the Executive's coordinated effort to address that surge and to discourage fraudulent or frivolous asylum claims. "Immigration courts received over 162,000

DEFS.' MEM. IN SUPPORT OF
MOT. TO STAY PRELIM. INJ.
Case No. 3:17-cv-02366-BAS-KSC

asylum [claims] in FY 2018, a 270 percent increase from five years earlier." *Id.* at 33,835, 33,838. That burden is "extreme" and "unsustainable," and the Rule seeks to address it by "encourag[ing] those fleeing genuine persecution to seek protection as soon as possible and dissuade those with non-viable claims." *Id.* at 33,831, 33,838, 33,842. The Court's injunction of the application of the Rule frustrates the government's and the public's strong interest in a well-functioning asylum system. The injunction also undermines "sensitive and weighty interests of . . . foreign affairs," *Holder v. Humanitarian Law Project*, 561 U.S. 1, 33–34 (2010), by preventing the full implementation of a Rule that is designed to "facilitate ongoing diplomatic negotiations" with regional partners, 84 Fed. Reg. at 33,840.

The injunction also imposes a crushing burden on government agencies, including agencies that are not parties to this litigation. To begin with, the identification of class members is extremely burdensome. U.S. Customs and Border Protection ("CBP") does not keep records of which individuals are subject to metering/queue management, *see* ECF No. 307-8 (Oct. 4 Howe Decl.) ¶ 5, and Plaintiffs have yet to provide Defendants with a list of potential class members or evidence to support the identification of potential class members other than the one unauthenticated waitlist from one Mexican city that was attached to their Reply, ECF No. 316-5.[2] Accordingly, a significant burden falls on the government to add resource-intensive procedures to attempt to determine whether an alien who expresses fear of return to his home country was subject to queue management at the relevant time.

The injunction also imposes extensive fact-finding burdens on multiple agencies. The provisional class members who have entered the United States may be at

---

[2] Plaintiffs submitted only a declaration of counsel attaching this purported "true and accurate copy" of a Ciudad Juarez waitlist, with no explanation of its contents and no declaration from someone with knowledge concerning the creation or maintenance of the list. *See* ECF No. 316-1 (Medlock Decl.) ¶ 5. In any event, Defendants do not concede that such waitlists are sufficient or reliable evidence of class membership.

various stages of their expedited removal procedures or removal proceedings: post-issuance of an order of expedited removal, *see* 8 C.F.R. § 208.30(g)(1)(ii); at the credible-fear interview stage conducted by an asylum officer, 8 C.F.R. § 208.30; at review of a negative reasonable-fear determinations conducted by the Executive Office for Immigration Review ("EOIR"), 8 C.F.R. §§ 208.30(e)(5)(iii), 208.30(g)(2), 1208.30(g); or in removal proceedings before an immigration judge or the Board of Immigration Appeals under 8 U.S.C. § 1229a, *see* 8 C.F.R. § 208.30(e)(5)(iii). Provisional class members are located at various locations around the United States. They may be detained, or they may have been released from detention. Accordingly, adjudicators all over the nation must now add intensive fact-finding procedures about whether someone was subject to CBP's queue management practices at any or all of these stages. *See, e.g.*, ECF No. 307-10 (declaration from U.S. Citizenship and Immigration Services ("USCIS") detailing operational burdens). Any such fact-finding, particularly at the credible-fear stage, bogs down what is supposed to be an expedited removal process. *See Am. Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1355 (D.C. Cir. 2000) (describing the enactment of the expedited removal processes, including those who claim fear or express an intent to seek asylum). Further, because the identification of class members is difficult and time-consuming, the injunction impacts the immigration system as a whole. Increased fact-finding and adjudication may lead to longer detention times in ICE custody, including for those who may not be provisional class members, which necessarily puts additional strain on the immigration system. Moreover, longer detention times will necessarily affect ICE's ability to accept transfer of individuals from short-term CBP custody at ports of entry and other holding facilities, exacerbating the capacity issues that underlie CBP's metering/queue management practices.

**B. A Stay Pending Appeal Will Not Substantially Harm Plaintiffs.**

The harms to the public interest and to the government outweigh any harm to the provisional class (which Defendants maintain does not even include any of the

individual representative Plaintiffs in this case).

If the preliminary injunction were stayed and the Rule applied to provisional class members, those class members would still have access to the procedures for seeking humanitarian protection in the United States. *See* 8 C.F.R. § 208.30(e)(5)(iii). Even class members who do not qualify for asylum under the Rule (because they did not seek asylum while in transit to the United States and do not otherwise qualify for an exception to the bar) remain eligible for other non-discretionary forms of protection in the United States, such as withholding of removal and protections under the regulations implementing the Convention Against Torture ("CAT"). *Id.* If class members are deemed ineligible for asylum under the Rule, they are denied a discretionary benefit, *INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 n.6 (1987); 8 U.S.C. § 1158(b)(1)(A), and it ordinarily makes little sense to describe the denial of a discretionary benefit as an irreparable harm. That is especially so when "[o]nly a small minority" of asylum claims are meritorious to begin with. 84 Fed. Reg. at 33,831.

To the extent that Plaintiffs have alleged that they may be removed after application of the Rule, the Supreme Court considered similar claims of harm but nonetheless stayed a nationwide injunction of the Rule pending its review by the courts. *See* Resp'ts' Opp'n to App. for Stay 28–29, *Barr v. East Bay Sanctuary Covenant*, No. 19A230 (U.S. Sept. 4, 2019). Further, any such injury would be self-inflicted, because provisional class members have all had the opportunity since July 16, 2019, to seek protection in Mexico to comply with the terms of the Rule, and Plaintiffs conceded this is a remedy that class members still can seek. *See* Pls.' Mem. in Supp. of Mot. for Preliminary Inj. (ECF No. 294-1) 12 ("it is possible to seek a waiver of [Mexico's] 30-day bar"). If Mexico were to reject their claims, then the provisional class members can present that evidence to the appropriate U.S. agency decisionmaker. *See* 84 Fed. Reg. at 33,831, 33,843. The provisional class members' claims that they are barred from seeking asylum in Mexico are speculative and

should not be credited when they refuse to seek protection in Mexico as the Rule requires. Indeed, the only provisional class members Plaintiffs identify who attempted to apply for asylum in Mexico "abandoned their cases," ECF No. 294-30 ¶ 28, even though Plaintiffs' own evidence shows that they may still be eligible, *see* ECF No. 294-29 ¶¶ 34–36 (noting that Mexican immigration officials can waive what they describe as a 30-day registration requirement for good cause). Considerations of the hardships and the balance of the equities thus weigh strongly in favor of Defendants, not Plaintiffs.

## II. Defendants Are Likely to Prevail on the Merits.

Defendants respectfully maintain that they are likely to succeed on their appeal because the central premise of the Court's ruling—which relies on reasoning from its prior order on Defendants' motion to dismiss ("MTD Order," ECF No. 280)—rests on an incorrect interpretation and extraterritorial application of the statute and regulations.

The Court held that Plaintiffs were likely to succeed on the merits because the Rule—and the regulations it amends—do not by their terms apply to the provisional class members, because they "attempted to enter or arrived at the Southern border before July 16, 2019 to seek asylum." Order 31. Yet the Rule and regulations do not exempt from its application those who attempted to enter, entered, or arrived in the United States before July 16, 2019, but then again attempted to enter, entered, or arrived in the United States *after* July 16, 2019. There is no textual support in the Rule for this interpretation.

Nor can the Rule be extended to exempt such individuals by virtue of the Court restating its prior reasoning that someone who approaches a port of entry but remains outside the territory of the United States is "in the process of arriving in the United States" and thus falls within the bounds of the asylum statute, 8 U.S.C. § 1158(a)(1). Order 31 (citing *Al Otro Lado, Inc. v. McAleenan*, 394 F. Supp. 3d 1168,

1199–1205 (S.D. Cal. July 29, 2019). Section 1158(a)(1) does not speak to the process of arrival; it speaks to "physical presen[ce] *in* the United States" or "arriv[al] *in* the United States" (emphasis added). Further, contrary to the Court's prior reasoning, the expedited removal statute at section 1225(b)(1)(A)(ii) does not support the Court's interpretation. *See* MTD Order 38–39. That requires an immigration officer to refer an alien "who is arriving in the United States" to an asylum officer if she expresses a fear of persecution or an intention to apply for asylum. Even the phrase "is arriving" must be read in light of its context and connection to section 1158(a)(1) and the presumption against extraterritoriality. *See, e.g.*, *Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 173–74 (1993) (interpreting the precursor to the current withholding-of-removal statute to apply only within the United States); *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991) ("It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." (internal quotation marks omitted)). Notably, moreover, a process already exists for accepting applications for refugee status from persons outside the United States. *See* 8 U.S.C. § 1157(c) (permitting the Attorney General (now the Secretary) to admit refugees). The existence of such a separate statutory process reinforces the conclusion that section 1158(a)(1) does not apply to persons outside the United States.

Accordingly, because the asylum statute does not support the interpretation that aliens who approached the border before July 16, 2019, and were not able to enter until after July 16 were "in the process of arriving in" the United States for purposes of the opportunity to seek asylum, it cannot be said that such individuals fall outside the Rule's scope.

## CONCLUSION

Defendants respectfully request that the Court stay the Order pending appeal and enter an administrative stay while it considers this request.

DATED: December 4, 2019     Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

SCOTT G. STEWART
Deputy Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director

*/s/ Katherine J. Shinners*
KATHERINE J. SHINNERS
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259 | Fax: (202) 305-7000
katherine.j.shinners@usdoj.gov

ALEXANDER J. HALASKA
Trial Attorney

*Counsel for Defendants*

# CERTIFICATE OF SERVICE

No. 17-cv-02366-BAS-KSC

I certify that I served a copy of this document on the Court and all parties by filing this document with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all counsel of record.

DATED: December 4, 2019          Respectfully submitted,

*/s/ Katherine J. Shinners*
KATHERINE J. SHINNERS
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259 | Fax: (202) 305-7000
katherine.j.shinners@usdoj.gov

*Counsel for Defendants*