1  MAYER BROWN LLP
     Matthew H. Marmolejo (CA Bar No. 242964)
2    *mmarmolejo@mayerbrown.com*
   350 S. Grand Avenue
3  25th Floor
   Los Angeles, CA 90071-1503
4    Ori Lev (DC Bar No. 452565)
     (*pro hac vice*)
5    *olev@mayerbrown.com*
     Stephen M. Medlock (VA Bar No. 78819)
6    (*pro hac vice*)
     *smedlock@mayerbrown.com*
7  1999 K Street, N.W.
   Washington, D.C. 20006
8  Telephone:  +1.202.263.3000
   Facsimile:   +1.202.263.3300
9
   SOUTHERN POVERTY LAW CENTER
10   Melissa Crow (DC Bar No. 453487)
     (*pro hac vice*)
11   *melissa.crow@splcenter.org*
   1101 17th Street, N.W., Suite 705
12 Washington, D.C. 20036
   Telephone: +1.202.355.4471
13 Facsimile:  +1.404.221.5857

14 *Additional counsel listed on next page*
   *Attorneys for Plaintiffs*
15
                **UNITED STATES DISTRICT COURT**
16
               **SOUTHERN DISTRICT OF CALIFORNIA**
17

18 | Al Otro Lado, Inc., *et al.*, | Case No.:  17-cv-02366-BAS-KSC |
   |---|---|
19 | Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR PROVISIONAL CLASS CERTIFICATION** |
20 | v. | |
21 | Chad F. Wolf,[1] *et al.*, | |
22 | Defendants. | ***PORTIONS FILED UNDER SEAL*** |
23 | | Hearing Date: January 13, 2020 |
24 | | **NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |
25 | | |

26

27 _____

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary
28 McAleenan pursuant to Fed. R. Civ. P. 25(d).

MEMO OF P. & A. IN SUPP. OF MOT. FOR
PROVISIONAL CLASS CERT.

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

MEMO OF P. & A. IN SUPP. OF MOT. FOR
PROVISIONAL CLASS CERT.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................... 1

II.   FACTS COMMON TO THE PROVISIONAL CLASS ............................. 1

    A.   THE METERING POLICY ..................................................... 1

    B.   THE ASYLUM COOPERATION AGREEMENT RULE ................. 4

III.  THE REQUIREMENTS OF FED. R. CIV. P. 23(A) ARE MET ................. 6

    A.   THE PROVISIONAL CLASS IS NUMEROUS ................................ 6

    B.   THERE ARE COMMON QUESTIONS OF LAW AND FACT ........ 8

    C.   TYPICALITY IS SATISFIED ........................................... 10

    D.   THE NAMED PLAINTIFFS AND COUNSEL ARE
         ADEQUATE ...................................................................... 11

IV.   RULE 23(B)(2) IS SATISFIED .................................................. 13

V.    THE PROVISIONAL CLASS IS ASCERTAINABLE ............................. 15

VI.   CONCLUSION ........................................................................ 16

MEMO OF P. & A. IN SUPP. OF MOT. FOR
PROVISIONAL CLASS CERT.

i

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Abdullah v. U.S. Sec. Assocs., Inc.*,
   731 F.3d 952 (9th Cir. 2013) ................................................................. 8

5

*Al Otro Lado, Inc. v. McAleenan*,
6   2019 WL 6134601 (S.D. Cal. 2019) ........................................*passim*

7

*Astiana v. Kashi Co.*,
   291 F.R.D. 493 (S.D. Cal. 2013) ........................................................ 7

8

*Baby Neal v. Casey*,
9   43 F.3d 48 (3d Cir. 1994) .................................................................. 13

10

*Backhaut v. Apple Inc.*,
   2015 WL 4776427 (N.D. Cal. 2015) .................................................. 16

11

*Bee, Denning, Inc. v. Capital Alliance Grp.*,
12   2016 WL 3952153 (S.D. Cal. 2016) .................................................. 15

13

*Betts v. Reliable Collection Agency, Ltd.*,
   659 F.2d 1000 (9th Cir. 1981) ............................................................. 1

14

*Briseno v. ConAgra Foods, Inc.*,
15   844 F.3d 1121 (9th Cir. 2017) ..................................................... 15, 16

16

*Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*,
   317 F.R.D. 91 (N.D. Cal. 2016) ......................................................... 7

17

*Doe v. Nielsen*,
18   357 F. Supp. 3d 972 (N.D. Cal. 2018) ......................................... 14, 15

19

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ............................................................... 8

20

*In re Facebook, Inc. PPC Advertising Litig.*,
21   282 F.R.D. 446 (N.D. Cal. 2012) ........................................................ 7

22

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................... 11

23

*Inland Empire - Immigrant Youth Collective v. Nielsen*,
24   2018 WL 1061408 (C.D. Cal. 2018) ................................................. 10

25

*J.L. v. Cissna*,
   2019 WL 415579 (N.D. Cal. 2019) .................................................... 16

26

*Lucas v. Breg, Inc.*,
27   212 F. Supp. 3d 950 (S.D. Cal. 2016) ............................................... 16

28

MEMO OF P. & A. IN SUPP. OF MOT. FOR
PROVISIONAL CLASS CERT.

*Lyon v. ICE,*
     171 F. Supp. 3d 961 (N.D. Cal. 2016) ............................................................... 14

*Lyon v. ICE,*
     300 F.R.D. 628 (N.D. Cal. 2014) ..................................................................... 8

*Lyon v. ICE,*
     308 F.R.D. 203 (N.D. Cal. 2015) ..................................................................... 14

*Ms. L. v. ICE,*
     331 F.R.D. 529 (S.D. Cal. 2018) ............................................................... 7, 14

*Nak Kim Chhoeun v. Marin,*
     2018 WL 6265014 (C.D. Cal. 2018) ............................................................... 10

*Orantes-Hernandez v. Meese,*
     685 F. Supp. 1488 (C.D. Cal. 1988) ............................................................... 14

*Parsons v. Ryan,*
     754 F.3d 657 (9th Cir. 2014) ........................................................................... 11

*Plata v. Schwarzenegger,*
     2005 WL 2932253 (N.D. Cal. 2005) ............................................................... 14

*Rodriguez v. Hayes,*
     591 F.3d 1105 (9th Cir. 2010) ................................................................... 10, 11

*In re Rubber Chemicals Antitrust Litig.,*
     232 F.R.D. 346 (N.D. Cal. 2005) ..................................................................... 7

*Saravia v. Sessions,*
     280 F. Supp. 3d 1168 (N.D. Cal. 2017) ........................................................... 15

*Unknown Parties v. Johnson,*
     163 F. Supp. 3d 630 (D. Ariz. 2016) ........................................................*passim*

*Vietnam Veterans of Am. v. C.I.A.,*
     288 F.R.D. 192 (N.D. Cal. 2012) ..................................................................... 16

*Von Colln v. Cty. of Ventura,*
     189 F.R.D. 583 (C.D. Cal. 1999) ..................................................................... 7

*Wal-Mart Stores, Inc. v. Dukes,*
     564 U.S. 338 (2011) ................................................................................... 8, 13

*Walters v. Reno,*
     145 F.3d 1032 (9th Cir. 1998) ................................................................... 13, 14

*Westways World Travel, Inc. v. AMR Corp.,*
     218 F.R.D. 223 (C.D. Cal. 2003) ..................................................................... 13

*In re Yahoo Mail Litig.,*
     308 F.R.D. 577 (N.D. Cal. 2015) ..................................................................... 7

MEMO OF P. & A. IN SUPP. OF MOT. FOR
PROVISIONAL CLASS CERT.

**Statutes, Rules and Regulations**

8 U.S.C. § 1158(a)(1) ..................................................................... 9

8 U.S.C. §1225(a)(1) ...................................................................... 2

8 U.S.C. § 1225(b)(1)(A)(ii).......................................................... 9

Fed. R. Civ. P. 23....................................................................*passim*

**Other Authorities**

2 William B. Rubenstein, *Newberg on Class Actions* (5th ed. Dec.
     2019) ...................................................................................... 14

7A Mary Kay Kane, *Fed. Prac. & Proc. Civ.* § 1763 (3d ed. Aug.
     2019) ................................................................................. 8, 12

Agreement Between the Government of the United States of America
     and the Government of the Republic of Guatemala on Cooperation
     Regarding the Examination of Protection Claims, 84 Fed. Reg.
     64,095 (Nov. 20, 2019)............................................................ 5

Implementing Bilateral and Multilateral Asylum Cooperation
     Agreements Under the Immigration and Nationality Act,
     84 Fed. Reg. 63,994 (Nov. 19, 2019) ....................................... 5

Hamed Aleaziz, *Trump Wants To Start Deporting Asylum-Seekers To
     Honduras By January*, BuzzFeed News (Nov. 25, 2019),
     https://bit.ly/2rWXiD5 ............................................................. 6

Fox News, *Chad Wolf gives first TV interview as acting DHS chief on
     'Fox & Friends'* (Nov. 26, 2019), https://bit.ly/34SPSPH ................. 5

*Metering Update*, Univ. of Tex., Strauss Ctr. (Nov. 2019),
     http://bit.ly/36nAQlp .............................................................. 7

Reuters, *Shifting Asylum 'Burden,' U.S. Sends Guatemala First
     Honduran Migrant*, N.Y. Times (Nov. 21, 2019),
     https://nyti.ms/2OQwYn2 ....................................................... 5

Reuters, *U.S. Sends First Salvadoran Back to Guatemala Under
     Asylum Deal*, N.Y. Times (Dec. 3, 2019), https://nyti.ms/34QlZ2M ............ 5

# I.    INTRODUCTION

The Named Plaintiffs ("Named Plaintiffs" or "Plaintiffs") seek provisional class certification for the purpose of pursuing a temporary restraining order ("TRO").  Plaintiffs easily meet all of the requirements of Rules 23(a) and 23(b)(2). They seek certification of a class consisting of all asylum seekers who were unable to make a direct asylum claim at a U.S. port of entry ("POE") before November 19, 2019 because of the U.S. Government's metering policy, and who continue to seek access to the U.S. asylum process.[2]  Less than a month ago, the Court certified a similar provisional class (hereafter, "Asylum Ban Class").  *See Al Otro Lado, Inc. v. McAleenan*, 2019 WL 6134601, at *11-16 (S.D. Cal. 2019) (Dkt. 330).  The only differences between the provisional class proposed in this motion and the Asylum Ban Class are: (1) this class includes noncitizens from any country who were metered between July 16, 2019 and November 18, 2019, (2) this class includes asylum seekers from Mexico who were metered prior to July 16, 2019, and (3) this Rule 23(b)(2) provisional class seeks injunctive relief with respect to the Government's "Asylum Cooperation Agreement (ACA)" interim final rule.  None of these differences dictates a different result.  This provisional class should be certified as well.

# II.    FACTS COMMON TO THE PROVISIONAL CLASS

## A.    THE METERING POLICY

The claims of the provisional class are based on a common set of operative facts.  The facts concerning the Government's metering policy are recounted in Plaintiffs' September 26, 2019 motions for preliminary injunction and provisional class certification.  *See* Dkts. 292, 293, 315, 316.  Plaintiffs will not repeat them, but

---

[2] By this motion, Plaintiffs seek to provisionally certify a subclass of the class alleged in their Second Amended Complaint. *See* Dkt. 189 ¶ 236.  "[A] class may be divided into subclasses that are each treated as a class under this rule."  Fed. R. Civ. P. 23(c)(5). A proposed subclass should be certified if it meets Rule 23's requirements. *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981).

MEMO OF P. & A. IN SUPP. OF MOT. FOR
PROVISIONAL CLASS CERT.

1

1  do incorporate them, here.

2      Since filing the September 26, 2019 motions, Plaintiffs have uncovered

3  disturbing evidence in the form of deposition testimony from a whistleblower that

4  confirms that the ostensible rationale for the metering policy is false:

5  • U.S. Customs and Border Protection ("CBP") officers "██████████████

6  ██" to asylum seekers regarding the capacity of POEs on the U.S.-Mexico

7  border "████████████████" to Mexico.  Ex. 1 at 99:19-100:9.

8  • "████████████████████████████████████" the metering

9  policy "████████████████████."  Ex. 1 at 101:3-6.

10 • The Government's metering policy was ████████████████████

11 ██████."  Ex. 1 at 152:1-154:1.

12 • In testimony that completely undermines the Government's various

13 arguments about the definition of the term "arrives in" as it is used in 8

14 U.S.C. §§ 1158(a)(1), 1225(a)(1), *see* Dkt. 280 at 37-38, ████████████

15 ████████████████████████████████████████████████

16 ████████████████████████████████████████.  Ex. 1 at

17 96:3-97:18.

18 • ████████████████████████████████████████████████

19 ████████████████████████████████████████████████

20 ██████████.  Ex. 1 at 174:14-176:22.

21 • In fact, ████████████████████████████████████████

22 ████████████████████████████████████████████████

23 ████████████████████████████████████████████████

24 ████████████████████████████████████████████████

25 ██████████.  Ex. 1 at 243:22-244:23.

26 The Government ████████████████████████████████████████

27 ████████████████████████████████████████████████

28 ██████.  In an August 23, 2018 letter ████████████████████████

MEMO OF P. & A. IN SUPP. OF MOT. FOR
PROVISIONAL CLASS CERT.

1 ████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ██████████████████████████████████ Ex. 2 at 5421.  T█

4 ████████████████████████████████████████████

5 ████████████████████████████████████████████

6 ████████████████. Ex. 3 at 6-7. ████████████████

7 ████ "████████████████████████."  *Id.* at 4.[3]  Despite these

8 conclusions, █████████████████████████████████████

9 ████████████████████████. *Id.*

In addition, Plaintiffs' class certification expert, Stephanie Leutert, has reviewed hundreds of internal CBP reports concerning the implementation of the metering policy. Ex. 11 ¶¶ 10-18, Ex. C.  She has conducted field interviews with asylum seekers on the Mexican side of the border who were metered and spoke to the individuals who maintain the waitlists used to implement the metering policy. Ex. 11 ¶ 6.  Finally, Ms. Leutert has traveled to the U.S.-Mexico border to directly observe how the metering policy is implemented.  *Id.* ¶ 18.  Based on this analysis, Ms. Leutert concludes that "███████████████████████████████████ ███████████████."  *Id.* ¶ 88.  Ms. Leutert has also found that ████████ ████████████████████████████████████████████ ████████████.  *Id.* ¶ 61.  Using this class-wide method, she reached the same conclusion that the whistleblower did—██████████████████████████

---

[3] Disturbingly, DHS OIG appears to have ████████████████████████ ████████████████████████████████████████████ ████████████████ Ex. 3 at 4.  In fact ████████████ ████████████████████ Ex. 4.  And contemporaneous emails from 2018 and 2019 show that ████████████████████████████████████████████. Ex. 1 at 107:13-118:23; *see also* Ex. 5 at 7161; Ex. 6 at 0598; Ex. 7 at 6901; Ex. 8 at 8203; Ex. 9 at 0965; Ex. 10 at 5860.

MEMO OF P. & A. IN SUPP. OF MOT. FOR
PROVISIONAL CLASS CERT.



1    ▅▅▅▅▅▅. *Id.* ¶ 91 (explaining that ▅▅▅▅▅▅▅▅▅▅▅▅▅▅

2    ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

3    ▅▅▅▅▅▅▅▅▅▅▅).

4    Each member of the provisional class was subject to the same metering policy

5    that a whistleblower from CBP now admits was an "▅▅▅▅▅▅▅" and a "▅▅▅

6    ▅▅▅▅▅▅▅▅▅▅▅▅." Ex. 1 at 99:19-101:6, 152:1-154:1. And, ▅▅▅

7    ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅, the

8    Government's response is a collective shoulder shrug. Ex. 3 at 4.

9    ## B.    THE ASYLUM COOPERATION AGREEMENT RULE

10    In recent months, the Government has sought to double down on its immoral

11    practice of lying to asylum seekers in order to turn them back to Mexico. In July

12    2019, after the members of the Asylum Ban Class "relied on the Government's

13    representations," *Al Otro Lado*, 2019 WL 6134601, at *19, that their asylum claims

14    would be processed if they waited outside ports of entry, the Government suddenly

15    changed course and promulgated an Interim Final Rule rendering these individuals

16    ineligible for asylum in the United States unless and until they sought protection in

17    a transit country and received a final judgment denying such protection. *See id*. This

18    Court enjoined the Government from applying that rule to the Asylum Ban Class.

19    *Id.*

20    Before the ink was dry on the Court's preliminary injunction opinion, the

21    Government promulgated a new interim final rule that again attempted to renege on

22    its representations to a broader provisional class. This time the Government issued

23    a new Interim Final Rule ("ACA Rule" or "Rule") that could render nearly all

24    migrants waiting at the U.S.-Mexico border as a result of the Government's metering

25    policy as of November 19, 2019, including but not limited to class members covered

26    by this Court's Asylum Ban injunction, ineligible for asylum in the United States,

27    and send them to Guatemala, Honduras, El Salvador, or some other third country to

28

MEMO OF P. & A. IN SUPP. OF MOT. FOR
PROVISIONAL CLASS CERT.

1  seek protection.[4]  The Government will implement this Rule by publishing ACAs

2  with specific third countries in the Federal Register; it has already published its

3  agreement with Guatemala and has begun sending asylum seekers to that country.[5]

4  The ACA Rule makes no exceptions for asylum seekers who were metered or

5  otherwise turned back at the U.S.-Mexico border prior to its effective date; the only

6  ACA published so far similarly makes no such exceptions.

7  By its terms, the ACA Rule should not apply to provisional class members

8  who were metered before its effective date; like the Asylum Ban, it applies to asylum

9  seekers who "arrive at a U.S. port of entry . . . on or after the effective date of the

10  rule." 84 Fed. Reg. at 63,994. And yet the Government is already sending asylum

11  seekers to Guatemala and will continue to do so unless this Court intervenes.

12  Asylum seekers who were subject to metering before the ACA Rule went into

13  effect are at risk of being sent to Guatemala—and indeed may be among those

14  already sent to Guatemala—thereby denying them access to the U.S. asylum

15  process.[6]  Defendant Acting Secretary Wolf announced that the Department of

16  Homeland Security intends to remove asylum seekers to Honduras as well;[7] media

17

18  [4] Implementing Bilateral and Multilateral Asylum Cooperative Agreements Under
19  the Immigration and Nationality Act, 84 Fed. Reg. 63,994 (Nov. 19, 2019). The
20  ACA Rule does not even allow those noncitizens to whom it is applied to seek other
forms of protection in the United States, including withholding of removal or
protection under the Convention Against Torture. *See id.* at 64,000.

21  [5] Agreement Between the Government of the United States of America and the
22  Government of the Republic of Guatemala on Cooperation Regarding the
Examination of Protection Claims, 84 Fed. Reg. 64,095 (Nov. 20, 2019) (hereinafter,
23  "Guatemala Asylum Cooperation Agreement" or "Guatemala ACA"). Press reports
indicate that at least one Honduran and one Salvadoran have been sent to Guatemala.
24  *See* Reuters, *U.S. Sends First Salvadoran Back to Guatemala Under Asylum Deal*,
N.Y. Times (Dec. 3, 2019), https://nyti.ms/34QlZ2M (reporting that one Salvadoran
25  and two Hondurans were sent back on the same flight); Reuters, *Shifting Asylum
'Burden,' U.S. Sends Guatemala First Honduran Migrant*, N.Y. Times (Nov. 21,
26  2019), https://nyti.ms/2OQwYn2.

[6] *See supra* n.5.

27  [7] Fox News, *Chad Wolf gives first TV interview as acting DHS chief on 'Fox &
28  Friends'* (Nov. 26, 2019), https://bit.ly/34SPSPH.

MEMO OF P. & A. IN SUPP. OF MOT. FOR
PROVISIONAL CLASS CERT.

1  reports indicate that ongoing discussions with the Honduran government are meant
2  to culminate in the implementation of an asylum cooperation agreement by January
3  2020.[8] Application of the ACA Rule—and removal of ACA provisional class
4  members to Guatemala or other third countries—effectively forecloses Plaintiffs'
5  ability to challenge the metering policy.  Therefore, by their previously filed motion
6  (*see* Dkts. 343, 344), Plaintiffs seek a TRO to preserve the status quo and permit
7  adjudication of their existing claims by barring Defendants from applying the ACA
8  Rule to ACA provisional class members who were subject to metering prior to
9  November 19, 2019, the effective date of the ACA Rule.

10 **III.    THE REQUIREMENTS OF FED. R. CIV. P. 23(A) ARE MET**

11      Plaintiffs seek provisional certification of the following class, for purposes of
12 the TRO and any subsequent preliminary injunctive relief:

13      All asylum seekers who were unable to make a direct asylum claim at
14      a U.S. POE before November 19, 2019 because of  the U.S.
15      Government's metering policy, and who continue to seek access to the
16      U.S. asylum process.

17 Plaintiffs believe that the proposed class (like the Asylum Ban Class) would include
18 any asylum seekers who put their names on waitlists in Mexican border towns,
19 regardless of whether they first physically approached the border. Such individuals
20 were subject to the Government's metering policy; they just learned of it from third
21 parties, rather than directly from CBP officers. The Government has adopted a
22 different interpretation of the Asylum Ban Class. Accordingly, Plaintiffs ask that the
23 Court expressly address this issue in its opinion.  This provisional class easily meets
24 all of the requirements for class certification described in Rules 23(a) and 23(b)(2).

25      **A.    THE PROVISIONAL CLASS IS NUMEROUS**

26      Federal Rule of Civil Procedure 23(a)(1) requires that the class be "so
27
28 [8] Hamed Aleaziz, *Trump Wants To Start Deporting Asylum-Seekers To Honduras By January*, BuzzFeed News (Nov. 25, 2019), https://bit.ly/2rWXiD5.

MEMO OF P. & A. IN SUPP. OF MOT. FOR
PROVISIONAL CLASS CERT.

numerous that joinder of all members is impracticable." "'Impracticability does not mean impossibility'" but only "the difficulty or inconvenience of joining all members of [the] class." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 501 (S.D. Cal. 2013) (quoting *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964)).

There is no "specific number of class members required for numerosity." *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005). A plaintiff does not need to specify the exact number of class members in order to certify a class. *Ms. L. v. ICE*, 331 F.R.D. 529, 536 (S.D. Cal. 2018).

However, "courts generally find that the numerosity factor is satisfied if the class comprises 40 or more members, and will find that it has not been satisfied when the class comprises 21 or fewer." *In re Facebook, Inc., PPC Advertising Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012), *aff'd sub nom. Fox Test Prep v. Facebook, Inc.*, 588 F. App'x 733 (9th Cir. 2014). Where, as here, a plaintiff "seek[s] only injunctive and declaratory relief, the numerosity requirement is relaxed and [the] plaintiff[] may rely on [] reasonable inference[s] . . . that the number of unknown and future members . . . is sufficient to make joinder impracticable." *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 317 F.R.D. 91, 100 (N.D. Cal. 2016) (internal quotation marks omitted), *aff'd* 867 F.3d 1093 (9th Cir. 2017); *see also In re Yahoo Mail Litig.*, 308 F.R.D. 577, 589-90 (N.D. Cal. 2015) ("In determining whether numerosity is satisfied, the Court may consider reasonable inferences drawn from the facts before it.").

Here, joinder is clearly impracticable, because "general knowledge and common sense indicate that [the provisional class] is large." *Von Colln v. Cty. of Ventura*, 189 F.R.D. 583, 590 (C.D. Cal. 1999) (internal quotation marks omitted). The ACA provisional class contains at least 21,000 individuals, which is "large enough on its face" to satisfy Rule 23(a)(1). *Al Otro Lado*, 2019 WL 6134601, at *12; *see also Metering Update*, Univ. of Tex., Strauss Ctr. (Nov. 2019),

MEMO OF P. & A. IN SUPP. OF MOT. FOR
PROVISIONAL CLASS CERT.

1   http://bit.ly/36nAQlp.

2   ## B.    THERE ARE COMMON QUESTIONS OF LAW AND FACT

3   Rule 23(a) next requires that there be "questions of law or fact common to the

4   class." Fed. R. Civ. P. 23(a)(2). However, all questions of law and fact do not need

5   to be common to the proposed class in order to satisfy Rule 23(a). *Ellis v. Costco*

6   *Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). Instead, commonality requires

7   plaintiffs to demonstrate that their claims "depend upon a common contention . . .

8   [whose] truth or falsity will resolve an issue that is central to the validity of each one

9   of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350

10  (2011). Commonality can be satisfied by a single common issue. *See*, *e.g.*, *Abdullah*

11  *v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (commonality "does not

12  . . . mean that *every* question of law or fact must be common to the class; all that

13  Rule 23(a)(2) requires is a single *significant* question of law or fact") (internal

14  quotation marks omitted).

15  When a plaintiff is seeking injunctive and declaratory relief, commonality is

16  present "where the lawsuit challenges a system-wide practice or policy that affects

17  all of the putative class members." *Unknown Parties v. Johnson*, 163 F. Supp. 3d

18  630, 635 (D. Ariz. 2016) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir.

19  2001)). Such suits "by their very nature often present common questions satisfying

20  Rule 23(a)(2)." 7A Mary Kay Kane, *Fed. Prac. & Proc. Civ.* § 1763 (3d ed. Aug.

21  2019). Furthermore, the fact that a policy is enforced in a less than uniform manner

22  does not negate a finding of commonality. *See Lyon v. ICE*, 300 F.R.D. 628, 642

23  (N.D. Cal. 2014) ("The fact that the precise practices among the three [immigration

24  detention] facilities may vary does not negate the application of a constitutional floor

25  equally applicable to all facilities.").

26  For example, in *Unknown Parties*, a group of detainees at CBP detention

27  facilities in the U.S. Border Patrol's Tucson Sector sued the Secretary of Homeland

28  Security and the CBP Commissioner for violations of the Due Process Clause of the

8

MEMO OF P. & A. IN SUPP. OF MOT. FOR
PROVISIONAL CLASS CERT.

Fifth Amendment. 163 F. Supp. 3d at 634. The plaintiffs sought declaratory and injunctive relief, including an order compelling the Government to provide the proposed class with beds; access to soap, toothbrushes, toothpaste, and other sanitary supplies; clean drinking water and nutritious meals; reasonable holding cell temperatures; and access to medical care. *Id.* The plaintiffs moved to certify a class of "'all individuals who are now or in the future will be detained for one or more nights at a CBP facility, including Border Patrol facilities, within the Border Patrol's Tucson Sector.'" *Id.* (citation omitted). The Government argued that the proposed class lacked commonality, because plaintiffs were challenging "a number of different conditions they allege were experienced by a variety of individuals . . . over an unspecified period of time at eight different Border Patrol stations throughout the Tucson Sector." *Id.* at 637. Because the plaintiffs "provide[d] numerous declarations in which putative class members attest to" system-wide deprivation of their due process rights, the court found that the commonality requirement was met and that "[p]laintiffs' contentions, if proven, would be []capable of classwide resolution." *Id.*; *see also id.* at 638-39 (rejecting as "irrelevant" Government's argument that "factual differences" in the treatment of "the individual immigration detainees" negated commonality because plaintiffs asserted claims based on "Sector-wide conditions of confinement").

Just so here. This case presents at least two common questions: (1) Did the provisional class members "arrive in" the United States for purposes of asylum?, *see* 8 U.S.C. § 1158(a)(1), 8 U.S.C. § 1225(b)(1)(A)(ii), and (2) Did the Defendants improperly construe the ACA Rule to apply to class members that arrived in the United States prior to November 19, 2019? This Court has already determined that these are the sort of questions that are "common . . . for all subclass members" and that can be determined "in one fell swoop." *Al Otro Lado*, 2019 WL 6134601, at *13. The same result is warranted here.

Alternatively, the recent admission that the Government's metering policy

MEMO OF P. & A. IN SUPP. OF MOT. FOR
PROVISIONAL CLASS CERT.

1  was based on a bald-faced lie and the expert report of Stephanie Leutert offer this
2  Court a substantial basis to find that there are other questions of law and fact
3  common to the class, including:

4  • Whether the metering policy violates the INA;

5  • Whether the metering policy violates the Due Process Clause of the
6  Fifth Amendment;

7  • Whether the metering policy violates the ATS;

8  • Whether the Government has a valid justification for the metering
9  policy; and

10  • Whether the Government's proffered justification for the metering
11  policy is pretextual.

12  As a result, Plaintiffs easily satisfy the commonality requirement here. *See,*
13  *e.g.*, *Unknown Parties*, 164 F. Supp. 3d at 636-38; *Nak Kim Chhoeun v. Marin*, 2018
14  WL 6265014, at *5 (C.D. Cal. 2018) (commonality satisfied where "[t]he central
15  question in [the] case is whether the Government's policy of revoking proposed class
16  members' release and re-detaining them without any procedural protections is
17  unlawful"); *Inland Empire - Immigrant Youth Collective v. Nielsen*, 2018 WL
18  1061408, at *9 (C.D. Cal. 2018) (commonality satisfied where plaintiffs
19  "challenge[d] Defendants' common termination policies and practices as
20  categorically violating the APA and the Due Process Clause—not the agency's
21  ultimate exercise of discretion with respect to each recipient.") (internal quotation
22  marks omitted).

23  **C.    TYPICALITY IS SATISFIED**

24  Federal Rule of Civil Procedure 23(a)(3) requires that "the claims . . . of the
25  representative parties [be] typical of the claims . . . of the class." "[T]he typicality
26  requirement is permissive and requires only that the representative's claims are
27  reasonably co-extensive with those of absent class members; they need not be
28  substantially identical." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010)

(internal quotation marks omitted). "The test of typicality is 'whether other members [of the class] have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted). Typicality is satisfied "'when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Rodriguez*, 591 F.3d at 1124 (citation omitted).

Here, there is nothing unique or disparate about the Named Plaintiffs' claims against the Government. For example, as this Court previously noted, Plaintiff Roberto Doe "is a national of Nicaragua" who "traveled through Mexico to reach the United States' southern border." *Al Otro Lado*, 2019 WL 6134601, at *13. On October 2, 2018, "he presented himself to U.S. immigration officials at the Reynosa-Hidalgo POE with a group of Nicaraguan nationals and requested asylum." *Id.* In response, CBP officials told him that the POE was "all full" and that he would have to wait "hours, days, or weeks" before he would be processed at the POE. *Id.* (internal quotation marks omitted). While in Mexico, he applied for asylum but was denied due to Mexico's 30-day time bar and was subsequently deported from Mexico. *Id.* He still intends to apply for asylum in the United States. *Id.* This court has previously ruled that Roberto Doe's testimony "provide[s] sufficient information to satisfy the test of typicality for the purposes of Rule 23" with respect to the Asylum Ban class. *Id.* The same is true here.

## D.    THE NAMED PLAINTIFFS AND COUNSEL ARE ADEQUATE

Federal Rule of Civil Procedure 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This factor requires (1) that the proposed representative plaintiffs not have conflicts of interest with the proposed class and (2) that the plaintiffs be represented by qualified or competent counsel. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

1   "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a

2   party's claim of representative status."  *Fed. Prac. & Proc. Civ.*, *supra*, § 1768.

3       Similarly, Federal Rule of Civil Procedure 23(g) is designed to "guide the

4   court in assessing proposed class counsel as part of the certification decision."  Fed.

5   R. Civ. P. 23, Notes of Advisory Committee on 2003 Amendments.  Fed. R. Civ. P.

6   23(g)(1)(A) provides that, in appointing class counsel, a court "must consider" the

7   following: (i) the work counsel has done in identifying or investigating potential

8   claims in the action, (ii) counsel's experience in handling class actions, other

9   complex litigation, and the types of claims asserted in the action, (iii) counsel's

10  knowledge of the applicable law, and (iv) the resources that counsel will commit to

11  representing the class.

12      As the Court previously found in its November 19, 2019 order, each of those

13  requirements is satisfied here. *Al Otro Lado*, 2019 WL 6134601, at *13-14.

14  Plaintiffs' counsel have investigated the Government's Turnback Policy and

15  analyzed the legal basis for Plaintiffs' claims.  They have also identified hundreds

16  of additional victims of the Government's Turnback Policy, worked closely with

17  non-governmental organizations to obtain relevant evidence concerning the

18  metering policy and related practices, aggressively sought discovery from the

19  Government, and were successful in defeating both of the Government's motions to

20  dismiss and obtaining a preliminary injunction against the Government's application

21  of the Asylum Ban to provisional class members. *See generally id.* at *19.

22      Plaintiffs' counsel has extensive experience litigating complex litigation and

23  class actions, including complex litigation related to the Government's immigration

24  policies.  *See* Dkt. 293-2 ¶¶ 2-6 (listing prior litigation experience of Plaintiffs'

25  counsel).  Together, the provisional class action and subject matter expertise of

26  Plaintiffs' counsel qualify them to represent the Class.  Plaintiffs' counsel have also

27  committed substantial resources to this litigation.  *Id.* ¶ 2.  Collectively, over 40

28  attorneys have spent over 6,000 hours on this litigation through August 31, 2019.

MEMO OF P. & A. IN SUPP. OF MOT. FOR
PROVISIONAL CLASS CERT.

1   *Id.* ¶ 6.  Finally, Plaintiffs are aware of no conflicts amongst the provisional class.

2   "Thus, the requirements of Rule 23(a)(4) have been met."  *Al Otro Lado*, 2019 WL

3   6134601, at *14.

4   **IV.    RULE 23(B)(2) IS SATISFIED**

5          Rule 23(b)(2) permits class certification when "the party opposing the class

6   has acted or refused to act on grounds that apply generally to the class, so that final

7   injunctive relief or corresponding declaratory relief is appropriate respecting the

8   class as a whole."  Fed. R. Civ. P. 23(b)(2); *see also Wal-Mart*, 564 U.S. at 360

9   ("The key to the [23](b)(2) class is 'the indivisible nature of the injunctive or

10  declaratory remedy warranted—the notion that the conduct is such that it can be

11  enjoined or declared unlawful only as to all of the class members or as to none of

12  them.'") (internal quotation marks omitted).

13         "'Generally applicable,'" as used in Rule 23(b)(2), means that the party

14  opposing the class "'has acted in a consistent manner towards members of the class

15  so that [its] actions may be viewed as part of a pattern of activity, or has established

16  or acted pursuant to a regulatory scheme common to all class members.'"  *Westways*

17  *World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 240 (C.D. Cal. 2003) (citation

18  omitted).  "Even if some class members have not been injured by the challenged

19  practice, a class may nevertheless be appropriate."  *Walters v. Reno*, 145 F.3d 1032,

20  1047 (9th Cir. 1998).  Thus, it is sufficient if the defendant has adopted a pattern of

21  activity that is central to the claims of all class members irrespective of their

22  individual circumstances and the disparate effects of the defendant's conduct.  *Baby*

23  *Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994).

24         The mere existence of factual differences between some class members will

25  not defeat a motion to certify a Rule 23(b)(2) class.  *See Unknown Parties*, 163 F.

26  Supp. 3d at 643 (rejecting argument that plaintiffs were "challeng[ing] . . . various

27  practices amongst [multiple] facilities," because plaintiffs identified the "systemic

28  nature of the conditions" at CBP detention facilities) (internal quotation marks

MEMO OF P. & A. IN SUPP. OF MOT. FOR
PROVISIONAL CLASS CERT.

omitted); *Walters*, 145 F.3d at 1047 ("the government's dogged focus on the factual differences among the class members appears to demonstrate a fundamental misunderstanding of the rule"). Even if such claims "may involve some individualized inquiries," the relevant question for purposes of Rule 23(b)(2) is "the 'indivisible' nature of the claim alleged and the relief sought." *Ms. L.*, 331 F.R.D. at 541 (certifying Rule 23(b)(2) class); *Lyon v. ICE*, 308 F.R.D. 203, 214 (N.D. Cal. 2015) (rejecting argument that ICE facilities had different attributes, because "these differences do not negate the fact that Plaintiffs seek relief that is applicable to . . . the entire class"). This is because Rule 23(b)(2) "focuses on the defendant and questions whether the defendant has a policy that affects everyone in the proposed class in a similar fashion." 2 William B. Rubenstein, *Newberg on Class Actions* § 4:28 (5th ed. Dec. 2019).

Moreover, the "rights of the class under Rule 23(b)(2) are not measured solely by the facts and circumstances of the named representatives." *Lyon v. ICE*, 171 F. Supp. 3d 961, 984 n.17 (N.D. Cal. 2016); *see also Plata v. Schwarzenegger*, 2005 WL 2932253, at *6 (N.D. Cal. 2005) (citing a "few representative examples from the testimonial and documentary evidence" not confined to named plaintiffs to demonstrate inadequate medical care in California prisons); *Orantes-Hernandez v. Meese*, 685 F. Supp. 1488, 1507 (C.D. Cal. 1988) (reviewing testimony from class members, not just the named plaintiffs, to determine there was a procedural due process violation), *aff'd sub nom. Orantes-Hernandez v. Thornburgh*, 919 F.2d 549 (9th Cir. 1990).

For instance, in *Doe v. Nielsen*, a group of 87 Iranian Christians sued the Department of Homeland Security for denying them entry into the United States. 357 F. Supp. 3d 972, 980-81 (N.D. Cal. 2018). In their class certification motion, plaintiffs argued that the Government's "uniform response" to their applications to enter the United States was "sufficient to satisfy Rule 23(b)(2)." *Id.* at 992. The court reasoned that, in the face of the Government's apparent uniform action,

MEMO OF P. & A. IN SUPP. OF MOT. FOR
PROVISIONAL CLASS CERT.

1   "declaratory and injunctive relief [would] appl[y] equally to all members of the

2   proposed class and thus conform[ed] to Rule 23(b)(2)." *Id.*

3        This case is even stronger than *Doe v. Nielsen*. Here, Plaintiffs have evidence

4   that the provisional class members arrived in the United States prior to November

5   19, 2019, *see* Dkt. 293-17 ¶¶ 3-11; Dkt. 316 at 3; Dkt. 316-3 ¶¶ 3-7. Plaintiffs also

6   have evidence that the Government issued a new rule that reneged on its prior

7   representations to these individuals that their U.S. asylum claims would be processed

8   if they complied with the metering policy. *See supra* at 4-5. In addition, Plaintiffs

9   have direct admissions from a CBP whistleblower that the metering policy was based

10  on an "obvious" "lie" and was, in effect, a "solution in search of a problem." Ex. 1

11  at 99:19-101:6, 152:1-154:1. It is difficult to conceive of a stronger and more

12  cohesive Rule 23(b)(2) class.

13       Plaintiffs' provisional Rule 23(b)(2) class should be certified. *See*, *e.g.*,

14  *Unknown Parties*, 163 F. Supp. 3d at 643 (injunctive relief claim that CBP

15  systematically violated detainees' constitutional rights was "the quintessential type

16  of claims that Rule 23(b)(2) was meant to address"); *Saravia v. Sessions*, 280 F.

17  Supp. 3d 1168, 1205 (N.D. Cal. 2017) (Rule 23(b)(2) satisfied "[b]ecause a single

18  injunction can protect all class members' procedural due process rights"), *aff'd* 905

19  F.3d 1137 (9th Cir. 2018).

20  **V.    THE PROVISIONAL CLASS IS ASCERTAINABLE**

21       While the Ninth Circuit has not yet ruled on the issue, this Court has

22  previously concluded that "ascertainability should not be required when determining

23  whether to certify a class in the 23(b)(2) context." *Bee, Denning, Inc. v. Capital*

24  *Alliance Grp.*, 2016 WL 3952153, at *5 (S.D. Cal. 2016) (Bashant, J.). However,

25  even if ascertainability is a requirement for a Rule 23(b)(2) class, the provisional

26  class is readily ascertainable. Rule 23 "does not impose a freestanding

27  administrative feasibility prerequisite to class certification." *Briseno v. ConAgra*

28  *Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017), *cert. denied sub nom. ConAgra*

MEMO OF P. & A. IN SUPP. OF MOT. FOR
PROVISIONAL CLASS CERT.

1   *Brands, Inc. v. Briseno*, 138 S. Ct. 313 (2017). "Although a proposed class must be

2   ascertainable in the sense that the proposed class must be sufficiently defined and

3   not vague, 'ascertainability' is not a threshold requirement for class certification."

4   *J.L. v. Cissna*, 2019 WL 415579, at \*7 (N.D. Cal. 2019).  Instead, ascertainability is

5   only relevant to the extent it is implicated by Rule 23's enumerated requirements.

6   *Briseno*, 844 F.3d at 1124 n.4.

7           Therefore, a proposed class is ascertainable if it can be defined using

8   "objective criteria."  *Backhaut v. Apple Inc.*, 2015 WL 4776427, at \*11 (N.D. Cal.

9   2015) (internal quotation marks omitted), *aff'd* 723 F. App'x 405 (9th Cir. 2018);

10   *Lucas v. Breg, Inc.*, 212 F. Supp. 3d 950, 973 (S.D. Cal. 2016) ("[A] class is not

11   ascertainable where a court must investigate the merits of individual claims to

12   determine class membership, or if membership depends upon subjective factors such

13   as a prospective member's state of mind.").  "Where the class definition proposed is

14   overly broad or unascertainable, the court has the discretion to narrow it."  *Vietnam*

15   *Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 211-12 (N.D. Cal. 2012).

16           Here, members of the class can be determined using objective criteria.  As this

17   Court previously explained, in at least some border cities, "Grupo Beta, a service

18   run by the Mexican Government's National Institute of Migration, maintains a

19   formalized list of asylum-seekers, communicates with CBP regarding POE capacity,

20   and transports asylum-seekers from the top of the list to CBP."  *Al Otro Lado*, 2019

21   WL 6134601, at \*15.  Thus, "[c]lass members are defined by a completely objective

22   criteria: whether these individuals were prohibited from requesting asylum at a U.S.

23   POE and instead required to place themselves on a waitlist" before November 19,

24   2019, "pursuant to the U.S. Government's metering policy."  *Id.*  Therefore, "even

25   if ascertainability is required under Rule 23(b)(2), . . . the proposed class satisfies

26   this requirement."  *Id.*

27   **VI.   CONCLUSION**

28           For the foregoing reasons and those explained in the accompanying motion

MEMO OF P. & A. IN SUPP. OF MOT. FOR
PROVISIONAL CLASS CERT.

1    for preliminary injunction, the Court should therefore provisionally certify the class.

2    Dated: December 11, 2019

3                                                      MAYER BROWN LLP
                                                           Matthew H. Marmolejo
                                                           Ori Lev
4                                                          Stephen M. Medlock

5                                                      SOUTHERN POVERTY LAW
                                                      CENTER
6                                                          Melissa Crow
7                                                          Sarah Rich
                                                           Rebecca Cassler
8

9                                                      CENTER FOR CONSTITUTIONAL
                                                      RIGHTS
10                                                         Baher Azmy
11                                                         Ghita Schwarz
                                                           Angelo Guisado
12

13                                                     AMERICAN IMMIGRATION
                                                      COUNCIL
14                                                         Karolina Walters

15

16                                                     By: */s/ Stephen M. Medlock*
                                                           Stephen M. Medlock
17
                                                       *Attorneys for Plaintiffs*
18

19

20

21

22

23

24

25

26

27

28

                                                      MEMO OF P. & A. IN SUPP. OF MOT. FOR
                                                      PROVISIONAL CLASS CERT.

**CERTIFICATE OF COMPLIANCE WITH MEET-AND-CONFER**

**REQUIREMENT**

Pursuant to Section 4(A) of the Court's Standing Order for Civil Cases, this motion is made following a telephone conference between counsel that took place on December 4, 2019.  During this conference, the parties were unable to eliminate the need to file this motion.

Dated:  December 11, 2019                    MAYER BROWN LLP


By  */s/ Stephen M. Medlock*
*Attorney for Plaintiffs*

1

## CERTIFICATE OF SERVICE

2      I certify that I caused a copy of the foregoing document to be served on all

3  counsel via the Court's CM/ECF system.

4  Dated:  December 11, 2019                    MAYER BROWN LLP

5

6                                              By _/s/ Stephen M. Medlock_

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMO OF P. & A. IN SUPP. OF MOT. FOR
PROVISIONAL CLASS CERT.