JOSEPH H. HUNT
Assistant Attorney General, Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
SAIRAH G. SAEED (IL 6290644)
ARI NAZAROV (CT 414491)
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorneys
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*,<br><br>                    *Plaintiffs*,<br><br>                    v.<br><br>Chad F. WOLF,* Acting Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*,<br><br>                    *Defendants* | Case No. 3:17-cv-02366-BAS-KSC<br><br>Hon. Cynthia A. Bashant<br><br>**EXHIBIT 4 TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER** |

---

* Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Federal Rule of Civil Procedure 25(d).

JOSEPH H. HUNT
Assistant Attorney General, Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
GISELA A. WESTWATER (NE 21801)
Assistant Director
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
SAIRAH G. SAEED (IL 6290644)
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorneys
United States Department of Justice
Civil Division
Office of Immigration Litigation – District
Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
(San Diego)**

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>Kevin K. McALEENAN,[1] Acting Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*,<br><br>*Defendants* | Case No. 3:17-cv-02366-BAS-KSC<br><br>**DEFENDANTS' FIRST AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS** |

---

[1] Acting Secretary McAleenan is automatically substituted for former Secretary Nielsen pursuant to Federal Rule of Civil Procedure 25(d).

Pursuant to Federal Rule of Civil Procedure 33, Defendants, in their official capacities, hereby submit their First Amended Objections and Responses to Plaintiffs' First Set of Interrogatories to All Defendants (Nos. 1–4). Defendants' investigation into the facts of this case is ongoing. Defendants' Amended Objections and Responses are based on the current procedural posture of the case and the information known to Defendants at this time and are made without prejudice to assertion of additional objections should Defendants identify additional grounds for objection. Defendants specifically reserve the right to amend, supplement, clarify, revise, or correct any or all of their responses to these Interrogatories. By responding to these Interrogatories, Defendants do not waive, and specifically preserve, their right to assert any and all objections to the admissibility of any documents on any and all grounds, including, but not limited to, competency, relevance, materiality, and privilege. Furthermore, Defendants respond herein without in any manner admitting or implying that Plaintiffs' Interrogatories (or Defendants' Responses) are relevant to any party's claim or defense or proportionate to the needs of the case. None of Defendants' responses herein should be construed or understood as an admission or denial of any legal issues, nor an agreement with or concession to any of Plaintiffs' characterizations of legal or factual issues.

## GENERAL OBJECTIONS

1.    Defendants object to these Interrogatories (and all discovery requests) as facially improper in this APA case. "[I]t is black-letter administrative law that in an APA case, a reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'" *Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013) (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)); *First Nat. Bank & Trust v. Dep't of Treasury*, 63 F.3d 894, 897 (9th Cir. 1995) ("Generally, judicial review of an agency decision is limited to the administrative record." (citing *Camp*

1   *v. Pitts*, 411 U.S. 138, 142 (1973)). These Interrogatories are proper only to the ex-

2   tent they seek information that is absolutely necessary "to ascertain the contours of

3   the precise policy at issue," *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 530 F.3d

4   925, 928 (D.C. Cir. 2008), and only to the extent they seek the information the

5   agency had before it when it made its decision, *Hill Dermaceuticals, Inc.*, 709 F.3d

6   at 47.

7         Moreover, any Interrogatory that seeks information relating to any DHS or

8   CBP employee's subjective intentions or motivations, including the named Defend-

9   ants' intentions or motivations, is facially improper. The Supreme Court has long

10   recognized that "judicial inquiries into legislative or executive motivation represent

11   a substantial intrusion into the workings of other branches of government." *Village*

12   *of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18

13   (1977). In part for that reason, the Court has "made it abundantly clear" that APA

14   review must focus only on the "contemporaneous explanation of the agency deci-

15   sion" that the agency chooses to rest upon. *Vermont Yankee Nuclear Power Corp. v.*

16   *Natural Res. Def. Council, Inc.*, 435 U.S. 519, 549 (1978). "When a party challenges

17   agency action as arbitrary and capricious the reasonableness of the agency's action

18   is judged in accordance with its *stated* reasons." *In re Subpoena Duces Tecum Served*

19   *on the Office of the Comptroller of the Currency*, 156 F.3d 1279, 1279 (D.C. Cir.

20   1998) (emphasis added) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*,

21   401 U.S 402 (1971)). Unless intent is an element of a party's claims or defenses—

22   which, in this case, it is not—"the actual subjective motivation of agency deci-

23   sionmakers is immaterial as a matter of law," *id.* at 1280, and therefore not properly

24   discoverable.

25         2.     Defendants object to the use of the term "noncitizen," as this term is

26   vague and ambiguous and is not defined by Plaintiffs. Therefore, for the purpose of

27   responding to these Interrogatories, Defendants understand and construe the term

28   "noncitizen" to mean "alien," as defined at 8 U.S.C. § 1101(a)(3). Such construction

DEFS.' FIRST AMENDED RESPONSES TO
PLS.' FIRST SET OF INTERROGATORIES
TO ALL DEFS. (Nos. 1–4)
Case No. 3:17-cv-02366-BAS-KSC

1    is reflected in all of Defendants' responses.

2        3.    Defendants object to the phrase "access the asylum process at a port of

3    entry," as this phrase is vague and ambiguous, is not defined by Plaintiffs, and po-

4    tentially can be construed as referring to actions or statements other than those de-

5    scribed in 8 U.S.C. §§ 1158 and 1225. For purposes of responding to these Interrog-

6    atories, Defendants understand and construe this phrase as referring to actions con-

7    sistent with 8 U.S.C. §§ 1158 and 1225. Such construction is reflected in all of De-

8    fendants' responses.

9        4.    Defendants object to each and every Interrogatory to the extent it re-

10   quests or appears to request information related to all ports of entry along the U.S.-

11   Mexico border as lacking any legal basis, as not proportional to the needs of the case,

12   as overly broad, and as unduly burdensome. "The class action is 'an exception to the

13   usual rule that litigation is conducted by and on behalf of the individual named par-

14   ties only.' In order to justify a departure from that rule, 'a class representative must

15   be part of the class and possess the same interest and suffer the same injury as the

16   class members.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011)

17   (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979), and *East Tex. Motor*

18   *Freight System, Inc. v. Rodriguez*, 431 U.S. 208, 216 (1974)). The class representa-

19   tives allege that they applied for admission or attempted to apply for admission at

20   only the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry. Thus, even

21   assuming for argument's sake that the Court certifies the broadest possible class the

22   representative parties might be legally permitted to represent, they still cannot chal-

23   lenge actions taken by other ports of entry, because they are not part of a class of

24   such individuals and do not "possess the same interest and suffer the same injury"

25   as those individuals. *Wal-Mart Stores, Inc.*, 564 U.S. at 348–49. The challenges in

26   this action are thus limited to policies issued by the Office of Field Operations and

27   actions that occurred at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of

28   entry, *see id.*, and any Interrogatories that go beyond the scope of the specific claims

DEFS.' FIRST AMENDED RESPONSES TO
PLS.' FIRST SET OF INTERROGATORIES
TO ALL DEFS. (Nos. 1–4)
Case No. 3:17-cv-02366-BAS-KSC

1    and allegations at issue are legally improper.

2         Further, the burden of searching for, collecting, reviewing, and producing

3    documents related to all ports of entry along the U.S.-Mexico border would be overly

4    broad, unduly burdensome, and disproportionate to the needs of the case. As De-

5    fendants have explained, Plaintiffs allege a border-wide practice, policy, and/or pro-

6    cedure; discovery from the four ports of entry where the named Plaintiffs allegedly

7    encountered such a practice, policy, and/or procedure (or a subset thereof), in addi-

8    tion to discovery from select higher-level officials and centralized non-custodial

9    sources, satisfies the needs of the case, as any evidence of such a border-wide prac-

10   tice, policy, and/or procedure, if it exists, would necessarily be found in such loca-

11   tions. Any discovery from other ports of entry along the U.S.-Mexico border, besides

12   having no legal basis, would thus be duplicative and unduly burdensome. In light of

13   these issues, Defendants therefore understand and construe these Interrogatories as

14   seeking discovery limited to the headquarters portions of Office of Field Operations

15   and the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry. Defendants'

16   responses to each and every Interrogatory will be limited consistent with this general

17   objection.

18        5.    Defendants object to each and every Interrogatory, whether broadly or

19   narrowly construed, to the extent that it seeks information or documents protected

20   by the attorney work-product doctrine. *See* Pls.' Interrog. Instruction No. 2. The

21   work-product doctrine protects "from discovery documents and tangible things pre-

22   pared by a party or his representative in anticipation of litigation." *Admiral Ins. Co.*

23   *v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P.

24   26(b)(3)); *see Hickman v. Taylor*, 329 U.S. 495 (1947). "The work-product doctrine

25   covers documents or the compilation of materials prepared by agents of the attorney

26   in preparation for litigation." *United States v. Richey*, 632 F.3d 559, 567 (9th Cir.

27   2011) (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)). Such documents

28   include, for example, notes and emails of Defendants' attorneys and staff, and draft

DEFS.' FIRST AMENDED RESPONSES TO
PLS.' FIRST SET OF INTERROGATORIES
TO ALL DEFS. (Nos. 1–4)
Case No. 3:17-cv-02366-BAS-KSC

and final internal documents. Even if these materials were otherwise discoverable pursuant to Federal Rule of Civil Procedure 26(b)(1)—and they are not—these materials are protected from disclosure by the work-product doctrine. Defendants will assert privileges specific to each request in their privilege log, on the production itself, or in their response to a specific Interrogatory. Documents generated after the filing of Plaintiffs' original Complaint (ECF No. 1) in this action representing either communications with counsel or material generated at the direction of counsel—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

6.     Defendants object to each and every Interrogatory, whether broadly or narrowly construed, to the extent it seeks information or documents protected by the attorney-client privilege. The attorney-client privilege protects confidential communications between attorneys and clients which are made for the purpose of giving legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "The attorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citing *Smith v. McCormick*, 914 F.2d 1153, 1159–60 (9th Cir. 1990)). Thus, all communications conducted in the course of the attorney-client relationship and not disclosed or otherwise maintained in a way that is inconsistent with the purpose of the privilege, are protected by the attorney-client privilege. Such communications include, for example, communications between Defendants and Defendants' counsel, including notes, emails, drafts, and internal documents (including but not limited to contracting materials) that were conducted for the purpose of securing legal advice, legal services, or assistance in a legal proceeding following the initiation of this action. Defendants will assert privileges specific to each request in their privilege log, on the production itself, or in their response to

a specific Interrogatory. Documents generated after the filing of Plaintiffs' complaint in this action representing either communications with counsel or material generated at the direction of counsel—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

7.    Defendants object to each and every Interrogatory, whether broadly or narrowly construed, to the extent it seeks information or documents protected by the deliberative process privilege. This privilege protects internal government deliberations in order to promote the "frank and candid discussion necessary for effective government." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–51 (1975). Information protected by this privilege must be (1) predecisional and (2) deliberative, thereby containing opinions, recommendations, or advice. *Id.* at 149. "Examples of documents that qualify as predecisional include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted)). To the extent that any work product contains recommendations that have not been adopted, or discussions that have not been finalized, the work product is protected by the deliberative process privilege. Documents generated after the filing of Plaintiffs' Complaint in this action representing either communications with counsel or material generated at the direction of counsel—and thus clearly protected by either the attorney-client privilege, the work-product doctrine, or the deliberative process privilege—will be treated as non-responsive and therefore will not appear on any privilege log. Defendants will assert privileges specific to each request in their privilege log, on the production itself, or in her response to the request.

8.    Defendants object to each and every Interrogatory to the extent it seeks information or documents protected from disclosure by the law enforcement privi-

DEFS.' FIRST AMENDED RESPONSES TO
PLS.' FIRST SET OF INTERROGATORIES
TO ALL DEFS. (Nos. 1–4)
Case No. 3:17-cv-02366-BAS-KSC

lege. The law enforcement privilege is "applicable to the government interest in preserving confidentiality of law enforcement records [and] has various names: (1) the 'official information privilege,' (2) the 'law enforcement privilege,' and (3) a type of 'executive privilege.'" *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *4–5 (E.D. Cal. June 1, 2007) (citing cases); *Hayslett v. City of San Diego*, No. 13-cv-1605, 2014 WL 1154314, at *1–2 (S.D. Cal. Mar. 21, 2014). The privilege, which "has been recognized in the absence of a statutory foundation," is intended "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation," amongst other reasons. *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 63 (1st Cir. 2007) (quoting *In re Dep't of Investigation of City of New York*, 856 F.2d 481, 483 (2d Cir. 1988), *cert. denied*, 552 U.S 1295 (2008)). Defendants will assert this privilege in their privilege log, on the production itself, or in their response to the Interrogatory.

9.   Defendants object to each and every Interrogatory to the extent it seeks information or documents protected from disclosure by the investigatory files privilege, self-critical analysis privilege, the *Machin* privilege, *see Machin v. Zuckert*, 316 F.2d 336 (D.C. Cir. 1963), or by any other legal basis precluding disclosure, including the Inspector General Act of 1978, Pub. L. No. 95-452 (Oct. 12, 1978), 5 U.S.C. app. 3. Defendants will assert privileges specific to each request in their privilege log, on the production itself, or in their response to the Interrogatory.

10.   Defendants object to producing or providing confidential, sensitive, or personally-identifying information prior to the entry of an order protecting that information from disclosure.

11.   Defendants object to each and every Interrogatory to the extent that it seeks information protected from disclosure by statutes, regulations, or directives

regarding the protection of privacy, confidential information, or medical information, or under statutes and regulations prohibiting disclosure of information related to individual aliens—including, but not limited to, 8 U.S.C. § 1160(b)(5), (6); 8 U.S.C. § 1186a(c)(4); 8 U.S.C. § 1202(f); 8 U.S.C. § 1254a(c)(6), 8 U.S.C. § 1255a(c)(4), (5); 8 U.S.C. § 1304(b); 8 U.S.C. § 1367; 22 U.S.C. § 7105(c)(1)(C); 8 C.F.R. § 208.6; 8 C.F.R. § 210.2(e); 8 C.F.R. § 214.11(p); 8 C.F.R. § 214.14(e); 8 C.F.R. § 216.5(e)(3)(iii); 8 C.F.R. § 236.6; 8 C.F.R. § 244.16; 8 C.F.R. § 245a.2(t); 8 C.F.R. § 245a.3(n); 8 C.F.R. § 245a.21; 8 C.F.R. § 1003.46; or 8 C.F.R. § 1208.6—many of which would subject Defendants and their employees to civil or criminal penalties or other sanctions in the event of unauthorized disclosure. Defendants will not produce this information without an express written waiver from the relevant person authorizing such disclosure, or a court order, as may be permitted in certain circumstances.

12.    Defendants object to these Interrogatories (and the definitions and instructions that accompany them) to the extent they purport to impose obligations greater than those imposed by the Federal Rules of Civil Procedure, the Local Civil Rules of the U.S. District Court for the Southern District of California, or an order of this Court.

## OBJECTIONS TO DEFINITIONS

1.    Defendants object to the definition of "YOU" and "YOUR" as overbroad and invading the attorney/client privilege or the attorney work-product doctrine. Unless otherwise specified, Defendants interpret the definition of YOU or YOUR as referring to the named Defendants in their official capacities, and individual U.S. Department of Homeland Security ("DHS") employees from whom DHS has the legal right to obtain upon demand information relevant to the claims and defenses in this case. Defendants do not interpret the definition of "YOU" or "YOUR" to include DHS or CBP components or subcomponents that are not relevant to this litigation.

2.     Defendants object to the definition of "CBP" as overbroad. This case challenges the alleged actions of CBP's Office of Field Operations at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry along the U.S-Mexico border. Any request for information or documents from any other subcomponent within CBP is thus overly broad and unduly burdensome. Defendants therefore construe "CBP" to refer to U.S. Customs and Border Protection and, where appropriate in the context, its headquarters and its Office of Field Operations, including any divisions, subdivisions, or sections therein.

3.     Defendants object to the definition of "DHS" as overbroad. This case challenges the alleged actions of CBP's Office of Field Operations at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry along the U.S.-Mexico border. Any request for information or documents from other DHS divisions, subdivisions, components, or sections is thus overly broad and unduly burdensome. Defendants therefore construe "DHS" to refer to the Department of Homeland Security personnel at issue in this case.

4.     Defendants object to the definitions of "IDENTIFY," "IDENTITY," and "IDENTIFIED" to the extent they purport to create an obligation which does not exist under the Federal Rules of Civil Procedure and to the extent they request information that is privileged or otherwise protected from disclosure.

## SPECIFIC OBJECTIONS AND RESPONSES

### Interrogatory No. 1

Identify and describe with as much factual specificity as possible any formal or informal policy, practice, or effort that you followed or undertook or in which you engaged relating to metering or limiting the number of noncitizens that can access the asylum process at a port of entry on the U.S.-Mexico border.

**Objections:** Defendants object to Interrogatory No. 1 as overly broad and unduly burdensome, as vague and ambiguous, and as seeking information protected from disclosure by the attorney-client privilege, the deliberative process privilege,

1    and the law enforcement privilege and/or as law enforcement sensitive. First, as de-

2    scribed in General Objections No. 1 and No. 4 and incorporated herein, Interrogatory

3    No. 1 is overly broad and unduly burdensome to the extent it purports to relate to

4    any CBP component or subcomponent besides the headquarters portions of the Of-

5    fice of Field Operations or the San Ysidro, Otay Mesa, Hidalgo, or Laredo ports of

6    entry. Interrogatory No. 1 is also unduly burdensome because it is duplicative of

7    Plaintiffs' Request for Production to All Defendants No. 44. Consistent with those

8    General Objections, Defendants understand and construe Interrogatory No. 1 as re-

9    lating only to the headquarters portions of the Office of Field Operations and the San

10   Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.

11        Second, Defendants initially objected to Interrogatory No. 1 as vague and am-

12   biguous because Plaintiffs did not define the terms "policy," "practice," or "effort,"

13   and it was unclear how those terms were distinct or differed from one another. Plain-

14   tiffs have since clarified that they use the term "policy" to refer to an agency policy

15   or guidance, and that they use the term "effort" to refer to an informal attempt to

16   engage in a course of conduct. Defendants therefore construe the term "practice" to

17   include a generally accepted course of conduct in response to a particular set of fac-

18   tual circumstances (even if that course of conduct is not undertaken pursuant to a

19   formal agency "policy"), and construe the term "effort" to include actions of indi-

20   vidual officers (which may or may not be consistent with an agency "policy" or

21   "practice"). Plaintiffs' definition of "effort" is overly broad and unduly burdensome

22   in the context of this Interrogatory because it purportedly requires Defendants to

23   investigate and describe any particular action taken with regard to aliens without

24   documents sufficient for lawful entry at any port of entry on the U.S.-Mexico border

25   over the course of three years. Thus, consistent with their objections and their con-

26   struction of the terms, Defendants will provide information related to agency poli-

27   cies and the implementation of those policies at the San Ysidro, Otay Mesa, Hidalgo,

28   and Laredo ports of entry, as well as information about the general practices at these

10

1   ports of entry, but consistent with General Objections No. 1 and 4, Defendants will

2   not provide information in response to this Interrogatory related to all "efforts" taken

3   by individual officers, regardless of whether such "efforts" are consistent with, be-

4   yond the scope of, or contradictory to agency policies.

5       Defendants also objected to Interrogatory No. 1 as vague and ambiguous be-

6   cause, as described in General Objection No. 3 and incorporated herein, Plaintiffs

7   did not define the phrase "access [to] the asylum process," and it was unclear what

8   actions fall within the scope of that phrase. Plaintiffs did not clarify this phrase dur-

9   ing the parties' meet-and-confer. Defendants accordingly understand and construe

10  the phrase "noncitizens that can access the asylum process" to mean "aliens without

11  documents sufficient for lawful entry who can enter a port of entry for processing."

12      Third, Defendants object to Interrogatory No. 1 to the extent it seeks infor-

13  mation protected by the attorney-client privilege, as explained in Defendants' Gen-

14  eral Objection No. 6. To the extent a request to "identify and describe" any "formal

15  or informal policy, practice, or effort" with "as much factual specificity as possible"

16  implicates, for example, confidential communications or advice between attorneys

17  and clients which are made for the purpose of giving legal advice, *Upjohn Co. v.*

18  *United States*, 449 U.S. 383, 389 (1981), such information is privileged and pro-

19  tected from disclosure.

20      Fourth, Defendants object to Interrogatory No. 1 to the extent it seeks infor-

21  mation protected from disclosure by the deliberative process privilege, as explained

22  in Defendants' General Objection No. 7. To the extent a request to "identify and

23  describe" any "formal or informal policy, practice, or effort" with "as much factual

24  specificity as possible" implicates, for example, documents or communications that

25  are predecisional and deliberative, thereby containing opinions, recommendations,

26  or advice, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975), including, but

27  not limited to, "recommendations, draft documents, proposals, suggestions, and

28  other subjective documents which reflect the personal opinions of the writer rather

DEFS.' FIRST AMENDED RESPONSES TO
PLS.' FIRST SET OF INTERROGATORIES
TO ALL DEFS. (Nos. 1–4)
Case No. 3:17-cv-02366-BAS-KSC

than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents and communications are privileged and protected from disclosure.

Finally, Defendants object to Interrogatory No. 1 to the extent it requests information protected from disclosure by the law enforcement privilege and, until there is a protective order in place, as law enforcement sensitive, as explained in Defendants' General Objection No. 8. To the extent a request to "identify and describe" any "formal or informal policy, practice, or effort" with "as much factual specificity as possible" implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

**Response:**   Subject to and without waiving their general and specific objections, Defendants respond as follows: Defendants' investigation is ongoing, and this Response is based on information reasonably available to them at this time. Defendants will supplement this Response as appropriate during and after the course of document discovery. At this time, Defendants are aware of the following information that may be responsive to this Interrogatory.

On April 27, 2018, Todd C. Owen, Executive Assistant Commissioner for CBP's Office of Field Operations, issued a memorandum entitled "Metering Guidance." The document is provided with these responses pursuant to Federal Rule of Civil Procedure 33(d) and is labeled CBPALOTRO000299.

Prior to April 27, 2018, some land ports of entry along the southern border took steps to meter the flow of travel into their facilities. Such queue management procedures were generally undertaken at times when a particular port of entry

DEFS.' FIRST AMENDED RESPONSES TO
PLS.' FIRST SET OF INTERROGATORIES
TO ALL DEFS. (Nos. 1–4)
Case No. 3:17-cv-02366-BAS-KSC

1    reached a capacity in which it was no longer safe to permit more individuals to enter

2    the port for processing. These actions were generally implemented in response to an

3    increased number of individuals presenting at ports of entry without documents suf-

4    ficient for lawful entry, all of whom must be safely processed and, in general, tem-

5    porarily held pending their transfer to another agency. As a general matter, the San

6    Ysidro, Otay Mesa, and Laredo ports of entry saw, at times, a high volume of indi-

7    viduals who sought to enter the port without documents sufficient for lawful entry.

8    As a result, some individuals were required to wait in Mexico until it was safe for

9    them to be processed. Each port of entry along the southern border has a unique

10   operating environment and unique resource constraints.

11          Since January 2016, the practice for the San Ysidro port of entry has been that,

12   generally, aliens who are not in possession of documents sufficient for lawful entry

13   are brought to the limit line at the San Ysidro port of entry by Grupo Beta, the hu-

14   manitarian arm of Instituto Nacional de Migración ("INAMI"), in accordance with

15   CBP's ability to intake them. Metering practices at San Ysidro prior to April 2018

16   are also described generally in CBPALORT000103–000106, CBPALORT000112–

17   000136. Given the limited capabilities at Otay Mesa, the general practice has been

18   for aliens without documents sufficient for lawful entry to be directed to arrive at

19   San Ysidro.

20          Prior to the issuance of the Metering Guidance, during periods in which queue

21   management was in effect at the Laredo port of entry, CBP officers provided indi-

22   viduals with an appointment date and time. Such aliens were also provided with a

23   list of humanitarian resources in Nuevo Laredo. This practice has since ceased. Me-

24   tering practices in Laredo prior to April 2018 are described generally in BATES

25   CBPALORT00001–000059.

26          As noted in the April 27, 2018 Metering Guidance, directors of field opera-

27   tions ("DFOs") have discretion to implement procedures to manage the flow of trav-

28   elers at the land border when necessary and appropriate based on a particular port of

DEFS.' FIRST AMENDED RESPONSES TO
PLS.' FIRST SET OF INTERROGATORIES
TO ALL DEFS. (Nos. 1–4)
Case No. 3:17-cv-02366-BAS-KSC

entry's processing capacity. Each port of entry's specific queue management proce-dures may vary based on their unique operating environment and unique resource constraints. However, as a general matter, queue management procedures are imple-mented in order to ensure that the port of entry has a sufficient capacity to safely process all individuals and to temporarily hold those found to be inadmissible.

Currently, at the Laredo and Hidalgo ports of entry, officers are placed at the U.S.-Mexico border in the middle of the bridge leading to the port of entry. The officers determine if individuals approaching this point have documents sufficient for lawful entry, and, if they do not, whether there is sufficient capacity in the port to process and temporarily hold these individuals. If there is not sufficient capacity in the port of entry at that time, individuals are informed of that fact, and are in-structed that they must wait in Mexico until it is safe for them to enter the port for processing.

Defendants will supplement this response as appropriate.

**Interrogatory No. 2**

Describe with as much factual specificity as possible the reasons why you followed, undertook, or engaged in any formal or informal policy, practice, or effort relating to metering or limiting the number of noncitizens that can access the asylum process at a port of entry on the U.S.-Mexico border.

**Objections:** Defendants object to Interrogatory No. 2 as lacking any legal ba-sis, as seeking information that is not relevant to any party's claims or defenses, as vague and ambiguous, as overly broad and unduly burdensome, as not proportionate to the needs of the case, and as seeking information protected from disclosure by the attorney-client privilege, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive. First, to the extent Interrogatory No. 2 requests anything but Defendants' stated reasons for any final agency action, such a request is facially improper, as explained in General Objection No. 1, and as overly

1    broad and unduly burdensome and not proportionate to the needs of the case.

2          Second, Defendants initially objected to Interrogatory No. 2 as vague and am-

3    biguous because Plaintiffs did not define the terms "policy," "practice," or "effort,"

4    and it was unclear how those terms were distinct or differed from one another. De-

5    fendants also objected to this Interrogatory as vague and ambiguous because it was

6    unclear whether Plaintiffs were seeking the reasons why a particular agency-wide

7    policy or practice may have been implemented or enacted, or whether they were

8    seeking the reasons why a particular agency component or subcomponent may have

9    taken actions pursuant to or in accordance with such agency-wide policy or practice.

10   Plaintiffs have since clarified that they use the term "policy" to refer to an agency

11   policy or guidance, and that they use the term "effort" to refer to an informal attempt

12   to engage in a course of conduct. Defendants therefore construe the term "practice"

13   to include a generally accepted course of conduct in response to a particular set of

14   factual circumstances (even if that course of conduct is not undertaken pursuant to a

15   formal agency "policy"), and construe the term "effort" to include actions of indi-

16   vidual officers (which may or may not be consistent with an agency "policy" or

17   "practice"). Plaintiffs' definition of "effort" is overly broad and unduly burdensome

18   in the context of this Interrogatory because it purportedly requires Defendants to

19   investigate and describe any particular action taken with regard to aliens without

20   documents sufficient for lawful entry at any port of entry on the U.S.-Mexico border

21   over the course of three years. Thus, consistent with their objections and their con-

22   struction of the terms, Defendants will provide information related to agency poli-

23   cies and the implementation of those policies at the San Ysidro, Otay Mesa, Hidalgo,

24   and Laredo ports of entry, as well as information about the general practices at these

25   ports of entry, but consistent with General Objections No. 1 and 4, Defendants will

26   not provide information in response to this Interrogatory related to all "efforts" taken

27   by individual officers, regardless of whether such "efforts" are consistent with, be-

28   yond the scope of, or contradictory to agency policies.

1    Defendants also initially objected to Interrogatory No. 2 as vague and ambig-

2    uous because, as described in General Objection No. 3 and incorporated herein,

3    Plaintiffs did not define the phrase "access [to] the asylum process," and it was un-

4    clear what actions fall within the scope of that phrase. Plaintiffs did not clarify this

5    phrase during the parties' meet-and-confer. Defendants accordingly understand and

6    construe the phrase "noncitizens that can access the asylum process" to mean "aliens

7    without documents sufficient for lawful entry who can enter a port of entry for pro-

8    cessing."

9    Third, Defendants object to Interrogatory No. 2 to the extent it seeks infor-

10   mation protected by the attorney-client privilege, as explained in Defendants' Gen-

11   eral Objection No. 6. To the extent a request to describe with "as much factual spec-

12   ificity as possible" "the reasons why [Defendants] followed, undertook, or engaged

13   in any formal or informal policy, practice, or effort" implicates, for example, confi-

14   dential communications or advice between attorneys and clients which are made for

15   the purpose of giving legal advice, *Upjohn Co. v. United States*, 449 U.S. 383, 389

16   (1981), such information is privileged and protected from disclosure.

17   Fourth, Defendants object to Interrogatory No. 2 to the extent it seeks infor-

18   mation protected from disclosure by the deliberative process privilege, as explained

19   in Defendants' General Objection No. 7. To the extent a request to describe with "as

20   much factual specificity as possible" "the reasons why [Defendants] followed, un-

21   dertook, or engaged in any formal or informal policy, practice, or effort" implicates,

22   for example, documents or communications that are predecisional and deliberative,

23   thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck*

24   *& Co.*, 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations,

25   draft documents, proposals, suggestions, and other subjective documents which re-

26   flect the personal opinions of the writer rather than the policy of the agency," *Ctr.*

27   *for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (in-

28   ternal quotations and citation omitted), such documents and communications are

1    privileged and protected from disclosure.

2    Finally, Defendants object to Interrogatory No. 2 to the extent it requests in-

3    formation protected from disclosure by the law enforcement privilege and, until

4    there is a protective order in place, as law enforcement sensitive, as explained in

5    Defendants' General Objection No. 8. To the extent a request to describe with "as

6    much factual specificity as possible" "the reasons why [Defendants] followed, un-

7    dertook, or engaged in any formal or informal policy, practice, or effort" implicates,

8    for example, "law enforcement techniques and procedures," the "confidentiality of

9    sources," the "protect[ion of] witnesses and law enforcement personnel," "safe-

10   guard[ing] the privacy of individuals involved in an investigation," and/or the "pre-

11   vent[ion of] interference with an investigation," such information is subject to the

12   law enforcement privilege and protected from disclosure. *Deocampo v. City of Val-*

13   *lejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

14   **Response:**   Subject to, and without waiving the foregoing objections, De-

15   fendants respond as follows: Defendants' investigation is ongoing, and this Re-

16   sponse is based on information reasonably available to them at this time. Defendants

17   will supplement this Response as appropriate during and after the course of docu-

18   ment discovery. At this time, Defendants are aware of the following information that

19   may be responsive to this Interrogatory.

20   As noted in the April 27, 2018 Owen Memo, directors of field operations

21   ("DFOs") have discretion to implement procedures to manage the flow of travelers

22   at the land border when necessary and appropriate based on a particular port of en-

23   try's processing capacity. In general, each of CBP's ports of entry has a finite capac-

24   ity in which to accomplish multiple missions, including, for example, national secu-

25   rity, counter-narcotics, facilitation of lawful trade, and processing of all travelers.

26   CBP strives to manage its limited space and resources to best ensure safety and se-

27   curity for all travelers and our officers, while facilitating timely processing for U.S.

28   citizens and lawful permanent residents, visitors with appropriate travel documents,

and individuals without documents sufficient for lawful entry. A port of entry's capacity to process inadmissible aliens is based on many different factors, including for instance, available holding space at the port, the overall volume of individuals arriving at the port, the number of employees available to process individuals, other enforcement actions taking place at the port of entry, the complexity of processing various categories of individuals (such as each individual's possession or lack of appropriate travel documents, medical needs, or translation requirements), and the resources of other government agencies to which inadmissible aliens must be transferred. The capacity of a particular port of entry may vary from day to day.

Processing individuals who are not U.S. citizens or lawful permanent residents or who lack a visa or other appropriate travel documents is particularly resource intensive. It may take hours before the necessary sworn statements, consulate checks, and paperwork are complete. These checks are necessary for CBP to verify the identity, age, and any immigration and/or criminal histories of individuals who arrive in the United States without appropriate travel documents. To ensure the safety of all travelers and CBP officers, CBP must ensure that the port of entry has sufficient capacity and resources to process all individuals, as well as temporarily hold those found to be inadmissible. In some cases, the port of entry may reach a capacity where it is no longer safe to permit more individuals to enter. If that occurs, individuals who approach the port of entry without documents sufficient for lawful entry may be directed to wait to be processed until capacity permits.

DFOs may determine, based on particular factual circumstances implementing capacity at any particular port of entry, that it is necessary or appropriate to meter the queue of travelers who lack documents sufficient for lawful entry. The particular reasons that such metering may be implemented at a particular port of entry on a particular day will be determined based on the relevant facts and circumstances at that port on that particular day.

Defendants will supplement this response as appropriate.

18

Dated: June 12, 2019                    Submitted as to objections only,

                                        JOSEPH H. HUNT
                                        Assistant Attorney General
                                        Civil Division

                                        WILLIAM C. PEACHEY
                                        Director, Office of Immigration Litigation –
                                        District Court Section

                                        GISELA A. WESTWATER
                                        Assistant Director

                                        KATHERINE J. SHINNERS
                                        Senior Litigation Counsel

                                        */s/ Alexander J. Halaska*
                                        ALEXANDER J. HALASKA
                                        SAIRAH G. SAEED
                                        Trial Attorneys
                                        U.S. Department of Justice
                                        Civil Division
                                        Office of Immigration Litigation
                                        District Court Section
                                        P.O. Box 868, Ben Franklin Station
                                        Washington, D.C. 20044
                                        Tel: (202) 307-8704 | Fax: (202) 305-7000
                                        alexander.j.halaska@usdoj.gov

                                        *Counsel for Defendants*

DEFS.' FIRST AMENDED RESPONSES TO
PLS.' FIRST SET OF INTERROGATORIES
TO ALL DEFS. (Nos. 1–4)
Case No. 3:17-cv-02366-BAS-KSC

1

## <u>CERTIFICATE OF SERVICE</u>

2

Case No. 3:17-cv-02366-BAS-KSC

3

I certify that on June 12, 2019, I served a copy of Defendants' First Amended

4

Objections and Responses to Plaintiffs' First Set of Interrogatories to All Defendants

5

(Nos. 1–4) on the following persons by email:

6

7

**Ori Lev**
olev@mayerbrown.com

8

9

**Matthew Marmolejo**
mmarmolejo@mayerbrown.com

10

11

**Stephen Medlock**
smedlock@mayerbrown.com

12

13

**Matthew Fenn**
mfenn@mayerbrown.com

14

15

**Colleen Snow**
csnow@mayerbrown.com

16

17

**Micah Stein**
mstein@mayerbrown.com

18

19

**Sasha Keck**
skeck@mayerbrown.com

20

21

**Janie McCutchen**
jmccutchen@mayerbrown.com

22

**Melissa Crow**
Melissa.crow@splcenter.org

23

24

**Sarah Rich**
sarah.rich@splcenter.org

25

**Mary Bauer**
mary.bauer@splcenter.org

**Angelo Guisado**
aguisado@ccrjustice.org

**Baher Azmy**
bazmy@ccrjustice.org

**Karolina Walters**
kwalters@immcouncil.org

**Carmen Martinez**
carmen.martinez@splcenter.org

**Cindy Escoto**
cindy.escoto@splcenter.org

**Rebecca Cassler**
rebecca.cassler@splcenter.org

**Lupe Aguirre**
laguirre@ccrjustice.org

**Claire Dailey**
cdailey@ccrjustice.org

26

27

*/s/ Alexander J. Halaska*
ALEXANDER J. HALASKA
Trial Attorney

28

DEFS.' FIRST AMENDED RESPONSES TO
PLS.' FIRST SET OF INTERROGATORIES
TO ALL DEFS. (Nos. 1–4)
Case No. 3:17-cv-02366-BAS-KSC

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*,<br><br>                    *Plaintiffs,*<br><br>            v.<br><br>Kevin K. McALEENAN, Acting Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*,<br><br>                    *Defendants* | Case No. 3:17-cv-02366-BAS-KSC<br><br>**CERTIFICATION OF DEFENDANTS' RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS** |

I, Todd C. Owen, hereby declare that I am the Executive Assistant Commissioner, Office of Field Operations, U.S. Customs and Border Protection. Based upon reasonable inquiry, knowledge, information, and belief, I certify that Defendants' first amended responses to Plaintiffs' First Set of Interrogatories to All Defendants are true and correct to the best of my knowledge.

Dated: June 12, 2019

TODD C. OWEN
Executive Assistant Commissioner
Office of Field Operations
U.S. Customs and Border Protection