MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:  +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*,<br><br>       Plaintiffs,<br><br>   v.<br><br>Chad F. Wolf,[1] *et al.*,<br><br>       Defendants. | Case No.:  17-cv-02366-BAS-KSC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO STAY PRELIMINARY INJUNCTION (ECF No. 330) PENDING APPEAL**<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

---

[1] Acting Secretary Wolf is automatically substituted for former Secretary Nielsen pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
   Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
   *bazmy@ccrjustice.org*
   Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
   *gschwarz@ccrjustice.org*
   Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
   *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
   Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
   *sarah.rich@splcenter.org*
   Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
   *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
   Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
   *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

**TABLE OF CONTENTS**

Page

RELEVANT BACKGROUND ..................................................................................... 1

ARGUMENT ............................................................................................................... 3

I. THE GOVERNMENT'S MOTION IS PROCEDURALLY DEFICIENT ..................................................................................................... 3

II. THE GOVERNMENT FAILS TO MEET THE STANDARD FOR ISSUANCE OF A STAY ................................................................................. 4

    A. THE GOVERNMENT HAS NOT MADE A STRONG SHOWING IT IS LIKELY TO SUCCEED ON THE MERITS ......... 5

    B. THE GOVERNMENT OFFERS NO EVIDENCE CONCERNING ITS IRREPARABLE INJURY AND PUBLIC INTEREST ARGUMENTS ............................................................... 8

    C. A STAY PENDING APPEAL WOULD CAUSE PROVISIONAL CLASS MEMBERS IRREPARABLE INJURY ............................................................................................. 11

CONCLUSION .......................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Otro Lado, Inc. v. McAleenan*,
  394 F. Supp. 3d 1168 (S.D. Cal. 2019) .............................................................. 6

*Bowen v. Georgetown Univ. Hospital*,
  488 U.S. 204 (1988) ............................................................................................ 7

*City & Cnty. of San Francisco v. U.S. Citizenship & Immigration Servs.*,
  --- F.3d ---, 2019 WL 6726131 (9th Cir. 2019) ................................................. 5

*E. Bay Sanctuary Covenant v. Barr*,
  385 F. Supp. 3d 922 (N.D. Cal. 2019) ................................................................ 8

*E. Bay Sanctuary Covenant v. Trump*,
  909 F.3d 1219 (9th Cir. 2018), *superseded by E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742 (2018) ........................................................ 8

*F.T.C. v. Dean Foods Co.*,
  384 U.S. 597 (1966) ............................................................................................ 7

*Hamoui v. Ashcroft*,
  389 F.3d 821 (9th Cir. 2004) ............................................................................ 12

*Lair v. Bullock*,
  697 F.3d 1200 (9th Cir. 2012) ............................................................................ 5

*Ms. L v. U.S. Immigration & Customs Enforcement*,
  330 F.R.D. 284 (S.D. Cal. 2019) ................................................................ 11, 13

*Nken v. Holder*,
  556 U.S. 418 (2009) ................................................................................... 4, 5, 9

*Tun v. INS*,
  445 F.3d 554 (2d Cir. 2006) ............................................................................. 12

*United States v. Morgan*,
  346 U.S. 502 (1954) ............................................................................................ 8

**Statutes**

8 U.S.C. § 1158(a)(1) .............................................................................................. 12

8 U.S.C. § 1158(b)(2)(c) ........................................................................................... 7

28 U.S.C. § 1651(a) .................................................................................................. 7

After receiving lengthy briefing and holding oral argument, this Court issued an extensive opinion granting Plaintiffs' motions for a preliminary injunction and provisional class certification. *See* Dkt. 330. This Court's preliminary injunction analysis built on an 84-page motion to dismiss opinion that carefully parsed the Government's statutory and jurisdictional arguments. *See* Dkt. 280. This Court's injunction prevents the Government from trapping thousands of asylum seekers in a legal Catch-22 that this Court previously described as "quintessentially inequitable." Dkt. 330 at 34. Now, in a seven-page motion that cites zero new evidence, the Government asks the Court to come to conclusions that are diametrically opposed to its prior well-considered opinions. *See* Dkt. 336-1 at 1-2. But attorney say-so is no substitute for real evidence and losing arguments rarely improve with repetition. In particular here, the Government's motion violates this Court's Standing Order, does not establish a likelihood of success on the merits, and fails to offer any new evidence that is relevant to irreparable harm or the public interest. The motion should be denied in full.

## RELEVANT BACKGROUND

This Court is already familiar with the arguments concerning its November 19, 2019, preliminary injunction order. Briefly, the essential substantive and procedural facts are these:

- Plaintiffs contend that the Government "has engaged in an unlawful, widespread pattern and practice of denying asylum-seekers access to the asylum process . . . though a variety of illegal tactics."  Dkt. 189 ¶ 2.

- In the course of discovery, Plaintiffs have uncovered substantial evidence that corroborates these allegations.  The Government has a written metering policy.  Although officials from U.S. Customs and Border Protection ("CBP") have insisted that the metering policy is a tool to deal with capacity constraints at ports of entry ("POEs"), discovery has shown

that this capacity excuse is a pretext. *See, e.g.*, Dkt. 351 at Ex. 1 99:19-100:9, 101:3-6, 152:1-154:1; *id.* at Ex. 10 ¶¶ 61, 88, 91.

- On July 16, 2019, the Government issued an interim final rule—widely known as the Asylum Ban—providing (with narrow exceptions) that noncitizens who pass through another country prior to reaching the U.S.-Mexico land border are ineligible for asylum in the U.S. Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33,829, 33,830 (July 16, 2019).

- The Asylum Ban applies to any noncitizen who "enters, attempts to enter, or arrives in the United States across the southern land border on or after July 16, 2019." 8 C.F.R § 208.13(c)(4) (as added by the Asylum Ban).

- In its November 19, 2019 order, this Court certified a class consisting of "all non-Mexican asylum-seekers who were unable to make a direct asylum claim at a U.S. POE before July 16, 2019 because of the Government's metering policy, and who continue to seek access to the U.S. asylum process." Dkt. 330 at 21.

- In the same order, the Court noted that class members "who may not yet be in the United States, but who [are] in the process of arriving in the United States through a POE[,]" are "arriving in the United States" such that the U.S. has a duty to inspect and process them, including providing them with access to the U.S. asylum process. *Id.* at 31.

- The Court found that individuals who attempted to enter the U.S. but were prevented from doing so because of the metering policy, had "arrived in" the U.S. under the governing immigration statutes and regulations. The Court therefore found the "plain text" of the Asylum Ban—which implicates those who "enter[], attempt[] to enter or arrive[]" after July 16—could not apply to provisional class members metered before its effective date. *Id.* at 30, 32.

- Because the Government had been "at best, misleading, and at worst, duplicitous" when it applied the Asylum Ban to people the Government itself had forced to wait in Mexico, the Court found irreparable harm to Plaintiffs and that the balance of equities clearly tipped in their favor. *Id.* at 33.

- Fifteen days after this Court granted Plaintiffs' motion for a preliminary injunction, the Government moved to stay the injunction pending the resolution of an appeal to the Ninth Circuit. *See* Dkt. 336-1 at 1. The Government cited no new evidence in support of its motion to stay. *See generally id.*

- The Government sought to have its motion to stay heard on an expedited schedule. *See* Dkt. 337. This Court denied that motion and set a briefing schedule for the motion to stay. *See* Dkt. 347. Apparently unsatisfied with that briefing schedule, six days later the Government filed a substantially similar motion before the Ninth Circuit. *See* Appellants' Emergency Motion to Stay, *Al Otro Lado v. Wolf*, No. 19-56417 (9th Cir. Dec. 12, 2019) (Dkt. 12).

**ARGUMENT**

**I.  THE GOVERNMENT'S MOTION IS PROCEDURALLY DEFICIENT**

The Court should deny the Government's motion for the simple reason that the Government failed to comply with this Court's Standing Order. The Court's Standing Order for Civil Cases is unambiguous and clear: before filing a noticed motion, a party must first contact opposing counsel to discuss the motion, and "*[t]he conference must take place at least seven (7) days prior to the filing of the motion.*" Standing Order § 4.A. Moreover, "[t]he *only* exceptions to this meet-and-confer requirement" are (1) where the plaintiff is appearing pro se, (2) motions for temporary restraining orders or preliminary injunctions, and (3) cross-motions for summary judgment. *Id.* (emphasis added). Notwithstanding this plain language, the

Government asserts that "[b]ecause Defendants are seeking a stay of a preliminary injunction, which constitutes emergency relief, Defendants understand that this motion does not require a conference of counsel under this Court's Standing Order for Civil Cases § 4.A." Dkt 336-1 at 1 n.1.

The Government, however, fails to explain why its motion "constitutes emergency relief," why it waited 19 days to file the motion if it is indeed an "emergency", or on what basis it "understand[s]" that the motion is not subject to the clear requirements of the Standing Order, which contains no exception for "emergency relief" or motions for a stay. Plaintiffs raised the failure to comply with the Court's Standing Order during the conference with the Government, but the Government insisted on filing the motion the same day as the parties' conference. For this reason alone, the Court should deny the Government's motion.

## II. THE GOVERNMENT FAILS TO MEET THE STANDARD FOR ISSUANCE OF A STAY

In issuing the preliminary injunction, this Court concluded that an injunction was warranted in this case to remedy the "quintessentially inequitable" outcome for provisional class members "caught in the legal bind created by Defendants' previous policies at the southern border and a newly-promulgated regulation known as the Asylum Ban." Dkt 330 at 1, 34. The Court's conclusion was indisputably correct.

The standard for a stay pending appeal mirrors the standard for an injunction in the first instance, although the burden of proof is reversed. The stay analysis is guided by four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 433–34 (2009) (internal quotations omitted). Factors (1) and (2) "are the most critical," such that "mere possibility" of success or irreparable injury is insufficient to satisfy them. *Id.* at 434. Indeed, if the party moving for a stay cannot make the required "strong showing" of a likelihood of success on the merits—the "irreducible minimum requirement" for obtaining a stay—the court's "analysis ends." *City & Cnty. of San Francisco v. U.S. Citizenship & Immigration Servs.*, --- F.3d ---, 2019 WL 6726131, at *11 (9th Cir. 2019). Because a stay of a preliminary injunction "is an intrusion into the ordinary process of administration and judicial review, [it] is not a matter of right, even if irreparable injury might otherwise result to the applicant." *Id.* (quoting *Nken*, 556 U.S. at 427) (internal quotation marks omitted). In addition, the Ninth Circuit requires that the moving party establish "a *probability* of irreparable injury if the stay is not granted." *Lair v. Bullock*, 697 F.3d 1200, 1214 (9th Cir. 2012). The Government fails to meet this heavy burden.

In asking the Court to stay its preliminary injunction ruling, the Government is actually asking the Court to *reverse* its preliminary injunction ruling. But the Government has offered no new evidence and no new rationale that would justify revisiting, much less rejecting, the Court's decision to enjoin application of the Asylum Ban to provisional class members.

### A. THE GOVERNMENT HAS NOT MADE A STRONG SHOWING IT IS LIKELY TO SUCCEED ON THE MERITS

Apparently recognizing that it has already lost the argument regarding likelihood of success, and that it has nothing new to say, the Government buries its merits argument toward the end of its brief. *See* Dkt. 336-1 at 6-7. This is not surprising. The Government's argument is nothing more than a belated and unpersuasive motion for reconsideration.

The Government contends that the Asylum Ban "do[es] not exempt from its application those who attempted to enter, entered, or arrived in the United States

before July 16, 2019, but then again attempted to enter, entered, or arrived in the United States after July 16, 2019." Dkt. 336-1 at 7. Thus, the Government argues that the Asylum Ban clock continuously resets. *Id.* In the Government's view, an asylum applicant's initial "arrival," which this Court concluded entitles her to be processed under the then-governing asylum rules, does not really count as an arrival, because that asylum seeker must, *due to the very governmental obstruction challenged in this case*, "arrive" once again to face the strictures of the Asylum Ban. *See id.*

That is incorrect for at least four reasons. **First**, this Court has made clear in two lengthy and well-reasoned opinions what "arrives in" means in the sections of the Immigration and Nationality Act relevant to this case. *See Al Otro Lado, Inc. v. McAleenan*, 394 F. Supp. 3d 1168, 1199-1205 (S.D. Cal. 2019); Dkt. 330 at 30-32. Like many losing litigants, the Government disagrees. *See* Dkt. 335. However, the mere fact that the Government disagrees with the Court's findings and rationale is not a legitimate reason for staying the preliminary injunction. As the Government has failed to make the required "strong showing" of a likelihood of success on the merits, the Court need not analyze the other stay factors and should deny the Government's motion on that basis alone.[2]

**Second**, the Government's conception that it can control arrival would lead to absurd results. Under the Government's logic, it could bus all asylum seekers currently awaiting processing in the United States to Mexico, drive them back across the border, and *voilà*—they would all now be subject to the Asylum Ban because they again "entered" the U.S. after July 16. That certainly cannot be the meaning of the Asylum Ban; yet that is not much different from the provisional class members who "arrived in"—and would have entered—the U.S. prior to July 16 but for the illegal conduct challenged in this case

---

[2] Notably, the Government does not address at all either Plaintiffs' argument that they are likely to succeed on the merits of their claims that metering is unlawful, Dkt. 294-1 at 13-20.

PLS.' OPPOSITION TO DEFS.' EMER. MOT. TO STAY PRELIM. INJ. PENDING APPEAL

***Third***, the Government's reading of the Asylum Ban would also result in an impermissibly retroactive regulation—applicable to people who entered, attempted to enter, or arrived in the United States to apply for asylum prior to July 16, 2019— in excess of statutory authority. *See Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 208 (1988) (explaining that "[r]etroactivity is not favored in the law," that "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result," and that "a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms"); 8 U.S.C. § 1158(b)(2)(c) (granting DHS authority to "by regulation establish additional limitations and conditions . . . under which an alien shall be ineligible for asylum," but lacking express authorization for regulation with retroactive effect). By forcing an asylum seeker to enter, attempt to enter, or arrive in the United States a second time, after rejecting her the first time through metering before July 16, 2019, the Government manipulates the *latest* date of entry, attempted entry or arrival in order to apply the Ban to those who arrived or attempted to arrive (and some cases also entered) before July 16, 2019. Interpreting the Asylum Ban as applicable to such a person would make the Ban itself an impermissibly retroactive regulation.

***Four***, the Government fails entirely to address an alternative and legally sufficient ground upon which this Court based its order: the All Writs Act ("AWA"). Dkt. 330 at 19-21; *see* 28 U.S.C. § 1651(a). The Act encompasses a federal court's power "to preserve [its] jurisdiction or maintain the status quo by injunction pending review of an agency's action through the prescribed statutory channels," *F.T.C. v. Dean Foods Co.*, 384 U.S. 597, 604 (1966), and "provides this Court with the ability to construct a remedy to right a 'wrong [which] may [otherwise] stand uncorrected.'" Dkt. 330 at 19 (quoting *United States v. Morgan*, 346 U.S. 502, 512 (1954)). As this Court noted, "the AWA independently authorizes this Court to grant injunctive relief

to prevent" the Government from using the Asylum Ban to "prematurely extinguish" the class members' claims. Dkt. 300 at 20. The Government entirely ignores this independent basis for the Court's opinion, undermining its argument regarding the likelihood of success on the merits.

For each of these reasons, the Government has not made a strong showing that it is likely to succeed on the merits. Therefore, the Government's motion to stay should be denied in its entirety.

### B. THE GOVERNMENT OFFERS NO EVIDENCE CONCERNING ITS IRREPARABLE INJURY AND PUBLIC INTEREST ARGUMENTS

The Government's motion should be denied for another separate and independent reason. In its arguments concerning irreparable injury and the public interest, the Government forgets that attorney say-so is no substitute for actual evidence. But that is all the Government offers here. At best, the Government is simply urging the Court to review the same record and come to ***diametrically opposite*** findings on the irreparable injury and public interest elements. This Court should reject these arguments for five reasons.

***First***, the Government argues that the injunction somehow undermines the Government's and the public's interest in a well-functioning asylum system and alleged interest in deterring asylum seekers. Dkt. 336-1 at 2-3. The Government fails to mention that "while the public has a weighty interest in efficient administration of the immigration laws at the border," the public has an equally important "interest in ensuring that statutes enacted by their representatives are not imperiled by executive fiat." *E. Bay Sanctuary Covenant v. Barr*, 385 F. Supp. 3d 922, 958 (N.D. Cal. 2019) (quotation marks ommitteed), *superseded by E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742 (2018)) (internal quotation marks and alteration omitted). The Government's argument also ignores the fact that the injunction applies only to provisional class members and not to those who arrived after July 16 or will arrive

in the future. It is difficult to conceive how this limited, retrospective injunction can undermine the Government's alleged interest in deterrence. The injunction has no impact on the applicability of the Asylum Ban to those individuals who might decide to seek protection in the United States or on the future validity of the Asylum Ban. Whatever deterrent effect the Asylum Ban may have should not be impacted by the Court's narrow injunction, which does not apply to future migrants.

***Second***, the Government's vague invocation of unspecified "ongoing diplomatic negotiations," *see* Dkt. 336-1 at 3, is not sufficient to warrant a stay. The Government asserts, without any factual support, that the injunction somehow undermines foreign affairs; this unsubstantiated assertion is of no weight when analyzing the interests at stake here.[3] *See Nken*, 556 U.S. at 434-35 ("[S]imply showing some possibility of irreparable injury fails to satisfy the second factor." (internal quotation marks and citation omitted)).

***Third***, the Government argues that the injunction imposes a "crushing" burden on it, including by requiring it to engage in "extensive fact-finding" to determine whether an asylum seeker is a provisional class member. Dkt. 336-1 at 3-4. Notably, the Government presents *no evidence* to support these factual contentions. On that basis alone the Government's argument in this regard should be rejected.

Nor does the Government's contention on this point make any sense. The Asylum Ban itself creates additional processes and imposes a burden on the Government; the Ban requires determining whether an asylum seeker transited through another country on their way to the southern border, whether they applied for protection in that third country, and whether they were denied protection. *See* Dkt. 330 at 5. The Government is already asking asylum seekers additional questions and doing additional fact-finding *simply to comply with its own Asylum Ban*. The

---

[3] Plaintiffs do not concede that either deterrence or the purported diplomatic negotiations are valid considerations, but the Court need not reach this issue given the inapplicability of the Government's argument to the injunction.

level of fact-finding required by the injunction—which merely determines whether to proceed to the fact-finding mandated by the Asylum Ban—is minimal, arguably less than what the Asylum Ban itself requires. As the Court itself recognized, class membership can be readily determined by cross-checking a name against the waitlists or by submission of declarations. Dkt. 330 at 27-28. The Government offers no explanation as to why these are insufficient—or burdensome—steps to take.[4]

***Fourth***, the Government complains that "Plaintiffs have yet to provide Defendants with a list of potential class members." Dkt. 336-1 at 3. This gets matters backwards. The Government has the burden of complying with the preliminary injunction, not Plaintiffs. The Government's complaint is also curious because the Government could seek these lists itself from the Mexican authorities, but has informed Plaintiffs that it has no intention of doing so. Dkt. 339-1 at ¶ 2; *see also* Dkt 330 at 27-28 (noting that the Government has not challenged the assertion that it is in regular contact with the Mexican government regarding the waitlists).

Moreover, any "difficulty in identifying proposed class members is the result of Defendants' own record keeping practices, or lack thereof." *Ms. L v. U.S. Immigration & Customs Enforcement*, 330 F.R.D. 284, 290 (S.D. Cal. 2019). The Government first violated the law by metering and turning back Plaintiffs and class members. It failed to document those violations. The Government then adopted an Asylum Ban and illegally applied it to individuals whom the Government had illegally metered before the Ban went into effect. The Government cannot violate the law, fail to keep adequate records of whose rights it was violating and when, and then claim that an injunction mandating compliance with the law is a burden.[5]

---

[4] The Government cites a long list of circumstances in which an individual's potential class membership might arise. Dkt. 336-1 at 3-4. This list demonstrates only the need for the Government to issue clear guidance to relevant personnel and to implement a system to audit and ensure compliance with the injunction. It does not demonstrate that the consequent burden is unreasonable or that the fact-finding exercise is "extensive."

[5] Plaintiffs have managed to secure and share with the Government a copy of a waitlist maintained by Mexican authorities, despite their lack of diplomatic and other connections to the Mexican government. *See* Dkt. 341-1 (redacted copy of 7,350-

PLS.' OPPOSITION TO DEFS.' EMER. MOT. TO STAY PRELIM. INJ. PENDING APPEAL

*Fifth*, the Government's contention that the injunction will lead to increased detention times is unavailing. *See* Dkt. 336-1 at 4. The Government offers no evidentiary support for this contention. There is simply no evidence that would lead one to conclude that asking a handful of questions to ascertain whether an asylum seeker is a provisional class member will materially slow down proceedings or lead to the parade of horribles the Government posits "may" follow. *See id.* at 4. And, of course, detention of asylum seekers is discretionary in most cases and entirely in the Government's control.

* * *

The Government's purported "crushing burden" is a mess of the Government's own making, for first having decided to meter asylum seekers without providing them with any documentation indicating that they had been turned back, *see* Dkt. 330 at 27-29, and then failing to take reasonable steps to comply with the injunction. This Court has already ruled that any difficulties in identifying class members are not so substantial as to preclude the relief granted. *See* Dkt. 330 at 27-29. They are similarly not a basis to stay the Court's injunction.

### C.   A STAY PENDING APPEAL WOULD CAUSE PROVISIONAL CLASS MEMBERS IRREPARABLE INJURY

Because there are multiple independent reasons to deny this motion, Plaintiffs respectfully submit that the Court need not weigh the harms to the parties. But should it do so, this Court should conclude that a stay of the preliminary injunction will cause irreparable and acute injury to provisional class members.

This Court has already held that provisional class members will suffer irreparable harm if the Asylum Ban is applied to them. Dkt. 330 at 32-34. The Government suggests that because the grant of asylum is discretionary, the harm

---

page Ciudad Juárez waitlist). The Government complains that it is "unauthenticated." Dkt. 336-1 at 3. But the Government cites no case, and Plaintiffs are aware of none, that requires evidence considered in connection with a preliminary injunction to be authenticated under Fed. R. Evid. 901.

here cannot be irreparable. Dkt. 336-1 at 5. This misconstrues the nature of Plaintiffs' claims, which are not focused on any individual's substantive asylum claim but rather on the right to *access the asylum process.* As this Court has recognized, that right is *not* discretionary. *See* Dkt. 280 at 54-58; Dkt. 330 17-18; 8 U.S.C. § 1158(a)(1) ("Any alien who … arrives in the United States … may apply for asylum"); *id.* § 1225(b)(1)(a)(ii) (immigration officer "shall refer the alien for an interview by an asylum officer").

The Government also argues that because provisional class members would still be eligible to seek lesser forms of protection—withholding of removal and relief under the Convention Against Torture—they will not suffer irreparable injury. Dkt. 336-1 at 5. That, however, ignores the important differences between asylum and these other forms of protection. *Hamoui v. Ashcroft*, 389 F.3d 821, 827 (9th Cir. 2004) (describing elements of Convention Against Torture and asylum as "analytically and factually different"); *Cazun v. Att'y Gen. of United States*, 856 F.3d 249, 252 (3d Cir. 2017) (explaining that Convention Against Torture relief is inferior to asylum relief).

Nor does the fact that the Supreme Court allowed the Asylum Ban to go into effect pending appeal have any impact here. *See* Dkt. 336-1 at 5. The Supreme Court's brief, unsigned order did not address whether application of the Asylum Ban would cause irreparable harm or otherwise discuss the relevant factors to a stay pending appeal. And, of course, the Supreme Court's order came in a case challenging the legality of the Asylum Ban itself, which is not at issue here. Finally, the purported availability of asylum in Mexico, *id.* at 336-1 at 5-6, ignores the record evidence and the Court's prior ruling regarding the practical unavailability of such asylum, particularly in light of Mexico's 30-day asylum application deadline. *See* Dkt. 294-1 at 11; Dkt. 330 at 24-25.

As the Court previously found, application of the Asylum Ban to provisional class members would cause them to "lose their right to claim asylum in the United

States," which constitutes irreparable harm. Dkt. 330 at 33-34. The Government's brief offers no basis to question this conclusion.

## CONCLUSION

For the reasons set forth above, the Court should deny Defendants' Motion.

Dated: December 20, 2019

MAYER BROWN LLP
   Matthew H. Marmolejo
   Ori Lev
   Stephen M. Medlock

SOUTHERN POVERTY LAW CENTER
   Melissa Crow
   Sarah Rich
   Rebecca Cassler

CENTER FOR CONSTITUTIONAL RIGHTS
   Baher Azmy
   Ghita Schwarz
   Angelo Guisado

AMERICAN IMMIGRATION COUNCIL
   Karolina Walters

By: */s/ Stephen M. Medlock*
   Stephen M. Medlock

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that I caused a copy of the foregoing document to be served on all counsel via the Court's CM/ECF system.

Dated: December 20, 2019            MAYER BROWN LLP


                                    By */s/ Stephen M. Medlock*