MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:    +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile:  +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, | Case No.:  17-cv-02366-BAS-KSC |
| Plaintiffs, | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER PROHIBITING APPLICATION OF ASYLUM COOPERATIVE AGREEMENT RULE TO PROVISIONAL CLASS MEMBERS** |
| v. | |
| Chad F. Wolf,* *et al.*, | |
| Defendants. | Hearing Date: January 6, 2020 |
| | **NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

---

* Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
   Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
   *bazmy@ccrjustice.org*
   Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
   *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
   Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
   *sarah.rich@splcenter.org*
   Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
   *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
   Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
   *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3    I.    PLAINTIFFS HAVE SATISFIED THE TRO STANDARD........................1

4    A.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE
5          MERITS .........................................................................................1

6          1.    PLAINTIFFS WILL LIKELY PROVE THAT
7                METERING IS UNLAWFUL ...................................................1

8          2.    THE ACA RULE DOES NOT APPLY TO CLASS
9                MEMBERS ...............................................................................3

10   B.    PLAINTIFFS EASILY SATISFY THE IRREPARABLE
11         HARM, BALANCE OF EQUITIES AND PUBLIC INTEREST
           REQUIREMENTS .......................................................................4

12   II.   THIS COURT HAS JURISDICTION ................................................5

13   A.    PLAINTIFFS' CLAIMS ARE RIPE ..............................................5

14   B.    THE COURT RETAINS JURISDICTION OVER THESE
15         CLAIMS.........................................................................................7

16   C.    THE COURT IS EMPOWERED TO GRANT RELIEF
17         UNDER THE ALL WRITS ACT.......................................................10

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Al Otro Lado v. McAleenan,*
  394 F. Supp. 3d 1168 (S.D. Cal. 2019) ............................................................. 1, 8

*Barrios v. Holder,*
  581 F.3d 849 (9th Cir. 2009) ...................................................................... 2

*Bourdon v. DHS,*
  940 F.3d 537 (11th Cir. 2019) ................................................................... 9

*Bowen v. Georgetown Univ. Hospital,*
  488 U.S. 204 (1988) ................................................................................ 3

*F.T.C. v. Dean Foods Co.,*
  384 U.S. 597 (1966) ............................................................................... 10

*Grace v. Whitaker,*
  344 F. Supp. 3d 96 (D.D.C. 2018) .......................................................... 10

*Holder v. Humanitarian Law Project,*
  561 U.S. 1 (2010) ..................................................................................... 5

*Jennings v. Rodriguez,*
  138 S. Ct. 830 (2018) .......................................................................... 9, 10

*Jimenez-Mora v. Ashcroft,*
  86 F. App'x 527 (3d Cir. 2004) ................................................................. 9

*Make the Road N.Y. v. McAleenan,*
  2019 WL 4738070 (D.D.C. 2019) ............................................................ 9

*McNary v. Haitian Refugee Center, Inc.,*
  498 U.S. 479 (1991) .............................................................................. 8, 9

*Musunuru v. Lynch,*
  831 F.3d 880 (7th Cir. 2016) .................................................................... 9

*Nken v. Holder,*
  556 U.S. 418 (2009) ................................................................................ 5

REPLY IN SUPP. OF MOT. FOR TRO

*Porter v. Warner Hldg. Co.*,
   328 U.S. 395 (1946) ............................................................................... 7

*Reno v. Catholic Social Services, Inc.*,
   509 U.S. 43 (1993) ............................................................................... 7

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) ...................................................... 7, 10

*Rodriguez v. Marin*,
   909 F.3d 252 (9th Cir. 2018) ............................................................ 9

*Safer Chemicals, Healthy Families v. EPA*,
   943 F.3d 397 (9th Cir. 2019) ......................................................... 5, 6

*Sale v. Haitian Centers Council, Inc.*,
   509 U.S. 155 (1993) ............................................................................ 1

*In re Shi Zhou Li*,
   71 F. Supp. 2d 1052 (D. Haw. 1999) .............................................. 1

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ............................................................................ 6

*U.S. v. Oakland Cannabis Buyers' Coop.*,
   532 U.S. 483 (2001) ............................................................................ 7

*United States v. Argueta-Rosales*,
   819 F.3d 1149 (9th Cir. 2016) .......................................................... 1

*United States v. Cortez*,
   449 U.S. 411 (1981) ............................................................................ 5

*United States v. Lopez-Perera*,
   438 F.3d 932 (9th Cir. 2006) ............................................................ 2

*United States v. Vowell & M'Clean*,
   9 U.S. 368, 372 (1810) ...................................................................... 1

*Vartelas v. Holder*,
   566 U.S. 257 (2012) ............................................................................ 2

*Zadvydas v. Davis*,
   533 U.S. 678 (2001) ............................................................................ 9

REPLY IN SUPP. OF MOT. FOR PRELIMINARY
INJUNCTION.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Statutes**

5 U.S.C. § 208(a)(2)(a) ................................................................................. 6

5 U.S.C. § 706(2) ........................................................................................... 2

8 U.S.C. § 1158 ............................................................................. 1, 2, 7, 8, 9

8 U.S.C. § 1158(a)(3) ..................................................................................... 8

8 U.S.C. § 1225 ................................................................................. 2, 7, 9, 10

**Other Authorities**

84 Fed. Reg. at 63,994 .............................................................................. 4, 8

84 Fed. Reg. at 64,001 ................................................................................. 6

# CITATION AND ABBREVIATION FORM

"ACA Rule" refers to the interim final rule entitled Implementing Bilateral and Multilateral Asylum Cooperation Agreements under the Immigration and Nationality Act, 84 Fed. Reg. 63,994 (Nov. 19, 2019).

"Ex." refers to the exhibits to the concurrently filed declaration of Stephen M. Medlock.

"Medlock Decl." refers to the concurrently filed declaration of Stephen M. Medlock.

"Op. Ex." refers to the exhibits to Plaintiffs' Memorandum in Support of their Motion for Temporary Restraining Order, *see* Dkt. 344 at Exs. 1-10; Dkt. 346 at Exs. 11-21.

"Opp." refers to Defendants' Opposition to Plaintiffs' Motion for Temporary Restraining Order, *see* Dkt. 357.

"POE" refers to a port of entry on the U.S.-Mexico border.

# I.    PLAINTIFFS HAVE SATISFIED THE TRO STANDARD

The Government's opposition offers no argument that suggests that this Court's prior preliminary injunction and motion to dismiss orders were incorrect. As a result, Plaintiffs easily satisfy the TRO standard here.  Even though the provisional class members arrived in the U.S. prior to November 19, 2019, as the Government now admits, they are subject to the ACA Rule.  The Government cannot continuously place the class members in a legal Catch-22; a TRO should be issued to end this fundamentally inequitable conduct.

## A.    Plaintiffs Are Likely to Succeed on the Merits

### 1.    Plaintiffs Will Likely Prove that Metering Is Unlawful

First, the Court has previously considered and rejected all of Defendants' arguments.[2] Defendants' citations to *In re Shi Zhou Li*, 71 F. Supp. 2d 1052, 1055-57 (D. Haw. 1999), and *Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 174-76 (1993), are unavailing, as the Plaintiffs/Petitioners in those cases were on an island or the "high seas," and not asylum seekers at POEs, at the border or otherwise arriving in the U.S. and therefore entitled to statutory and constitutional protections.

Second, the Government's argument that 8 U.S.C. § 1158's use of the term "arrives in" is meant to ensure that people in expedited removal may apply for asylum and therefore cannot refer to people who have been metered, Opp. 16-17, is disingenuous. "Entry" is a term of art linked to the INA's distinction, before 1996, between deportation proceedings and exclusion proceedings. *United States v. Argueta-Rosales*, 819 F.3d 1149, 1158 (9th Cir. 2016). By contrast, "physical

---

[2] *See Al Otro Lado v. McAleenan*, 394 F. Supp. 3d 1168, 1194-96, 1204-05 (S.D. Cal. 2019) (CBP has a mandatory duty to inspect and refer people "otherwise seeking admission … to … the United States" and "arriving aliens"—a group which includes those "in the process of arriving" at a POE who are metered); *id.* at 1201-02 (the presumption against extraterritoriality is not implicated in this case); *id.* at 1215-22 (Plaintiffs' due process claims are coextensive with their statutory claims). *United States v. Vowell & M'Clean* (Opp. 15) a one-paragraph 209-year-old opinion that happens to use the phrase "port of entry" is about duties on imported goods carried on ships and has no relevance to interpreting the INA. 9 U.S. 368, 372 (1810).

1   presence" is not a term of art. *Barrios v. Holder*, 581 F.3d 849, 863 (9th Cir. 2009),

2   *abrogated on other grounds*, *Hernandez-Rodriguez v. Barr*, 776 F. App'x 477, 478

3   (9th Cir. 2019). Thus, "physical presence" is not a special reference to regular, as

4   opposed to expedited, removal proceedings. *See, e.g., United States v. Lopez-Perera*,

5   438 F.3d 932, 935 (9th Cir. 2006). Consequently, the pre-1996 version of § 1158

6   would have already applied to people in regular *or* expedited removal proceedings.

7   *Compare* 8 U.S.C. § 1158(a) (1996) (applying to any noncitizen "physically present

8   or who arrives in the United States"), *with* 8 U.S.C. § 1158(a) (1980) (applying to

9   any noncitizen "physically present in the United States or at a land border or port of

10  entry").[3]

11      Third, the Government has not meaningfully addressed Plaintiffs' mounting

12  evidence that metering is unlawful and pretextual. Contrary to the Government's

13  assertion, Opp. 18, ██████████████████████████████. As both a

14  whistleblower and the Executive Assistant Commissioner of CBP, Todd Owen,

15  admitted, ████████████████████████████. *See*

16  Op. Ex. 1 at 97:11-18, 131:7-19, 206:15-19; Ex. 1 at 32:18-33:4, 94:9-18, 151:11-

17  153:5. The Government "ha[s] always acknowledged" that doing so "[is] unlawful,"

18  Opp. 17, and growing evidence shows that ██████████████████████

19  ██████. Ultimately, metering is a euphemistic workaround to avoid mandatory

20  duties of inspection. A policy to evade and subvert an explicit statutory command

21  simply cannot be legal. 5 U.S.C. § 706(2); Dkt. 280 at 58-59.

22      Similarly, the Government falsely claims that metering "is [] simply a tool"

23  that enables it to efficiently manage its resources. Opp. 18. The Government has

24

25  _____

    [3] The Government's general citation to *Vartelas v. Holder*, 566 U.S. 257, 261-63

26  (2012) (cited at Opp. 17), is smoke and mirrors. Both the pre- and post-1996 versions
    of the INA indicate that people who are on their way into the country from outside

27  have the right to apply for asylum. Ultimately, if "arrives in" in § 1158 is a reference
    to "arriving" in § 1225 (the expedited removal statute), as the Government appears

28  to argue, (Opp. 17), then "arrives in" clearly encompasses provisional class members
    because they are "arriving aliens." *See supra* n.2.

1    used the metering policy to ████████████████████████████████████

2    ████████████████████. *See* Op. Ex. 1 at 100:17-101:6. CBP officers consistently

3    raised questions about the purpose and legality of metering. *See* Ex. 2 (in a union

4    grievance meeting CBP officials "acknowledged that the Agency's [metering

5    policy] broke CBP mandates, Federal Immigration rules and Laws" and that CBP

6    was "intentionally . . . blocking asylum to persons and families in order to block the

7    flow of asylum applicants"); Ex. 3 at 115-26 (letter signed by nearly 200 CBP

8    officers revealing instructions to "intercept[] and immediately prevent[] asylees who

9    request asylum from entering the United States").[4]

10    Despite its protests to the contrary, there is also no doubt that ██████████

11    ████████████████████████████████████. *See, e.g.*, Ex. 4 (████████

12    ████████████████████████████████████████████████████████

13    ████); Ex. 5 (████████████████████████████████████████

14    ████████████████████████). And, counter to Defendants' position—and as

15    this Court correctly observed—"there is no room for deterrence under the scheme

16    Congress has enacted." Dkt. 278 at 65.

2.    **The ACA Rule Does Not Apply to Class Members**

18    In arguing that the ACA Rule applies to provisional class members on its face,

19    the Government takes the position that the ACA Rule clock continually resets, to the

20    Government's advantage. In the Government's view, an asylum applicant's initial

21    "arrival," which the district court concluded entitles her to be processed under the

22    then-governing asylum rules, does not really count as an arrival, because that asylum

23    seeker must, *due to the very governmental obstruction challenged in this case*,

24    "arrive" again to face the strictures of the ACA Rule. Opp. 13-14. The government's

25    reading would also render the Rule impermissibly retroactive. *See Bowen v.*

26

27    [4] *See also* Ex. 6 (████████████████████████████████████); Ex.

28    8 (████████████████████████████████████); Ex. 9 at 057-059; Ex. 10 (████). Exhibit 7 has been left blank due to a claw back claim by the Government.

*Georgetown Univ. Hospital*, 488 U.S. 204, 208 (1988) ("congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result").

Under the Government's strained logic, it could bus all asylum seekers currently awaiting processing in the U.S. to Mexico, drive them back across the border, and *voilà*—they would all now be subject to the ACA Rule because they again "entered" after November 19. That logic does not square with the ACA Rule's statement that it will only apply "prospectively." Yet that situation is not meaningfully different from the provisional class members who "arrived in"—and would have entered—the U.S. prior to November 19 but for the illegal conduct challenged in this case. Such a result would allow the Government to constantly move the goalposts to apply the ACA Rule to more people than the plain terms of the rule would otherwise allow. *See* 84 Fed. Reg. at 63,994 (the ACA Rule applies "prospectively" with a cut-off date of November 19, 2019).

### B.    Plaintiffs Easily Satisfy the Irreparable Harm, Balance of Equities and Public Interest Requirements

The same irreparable harms and balance of equities at issue in the preliminary injunction regarding the application of the Asylum Ban, govern here.  *See* Dkt. 330 at 33. There, as here, Plaintiffs will suffer irreparable harm absent a TRO that would "return Plaintiffs to the status quo before the [ACA Rule] went into effect." *Id.* at 34.  The Government's argument that "plaintiffs who cross into the United States are still able to access the asylum process that the statute creates," Opp. 23, is "at best, misleading, and at worst, duplicitous." Dkt. 330 at 33. While provisional class members waited in Mexico in reliance on the Government's representations, the Government changed the statute by imposing novel, onerous requirements. This "quintessentially inequitable" result irreparably harms plaintiffs. *Id.* at 34.

In arguing that the Court should weigh the injunction's purported interference with foreign affairs and the public interest in "'prevent[ion]'[of] irregular migration

at the southern border," Opp. 21-22 (citation omitted), the Government relies on cases involving plaintiffs supporting designated foreign terrorist organizations or smuggling migrants into the U.S. *See United States v. Cortez*, 449 U.S. 411, 413-15 (1981); *Holder v. Humanitarian Law Project*, 561 U.S. 1, 10 (2010). Here, provisional class members are migrants lawfully seeking to access the U.S. asylum process. It is well-established that it is in the public interest to "prevent[] [noncitizens] from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken v. Holder*, 556 U.S. 418, 436 (2009). The removal of any provisional class member to a third country would be "wrongful" because the individual will never have had access to the U.S. asylum process as it existed when she first presented herself at the border before the draconian change in rules—solely as a result of the government's own unlawful metering policy. The government cannot credibly claim that provisional class members' "right to apply for asylum was always contingent on the applicability of an ACA," Opp. 24, when the rule governing that application was published approximately a month ago and class members have been waiting in Mexico to access the U.S. asylum process for substantially longer.

## II.    THIS COURT HAS JURISDICTION

### A.    Plaintiffs' Claims Are Ripe

The Government interprets the ACA Rule to apply to all provisional class members and refuses to stipulate that it will not apply the rule to its full extent. Medlock Decl. at ¶ 2. In fact, the Government is accelerating its enforcement of the rule so rapidly that one day after filing its opposition, it confessed that its earlier assertions about its limited enforcement were outdated. Ex. 11 at ¶¶ 4-5. The Government has already used the ACA Rule to remove dozens of people to Guatemala, Ex. 12 at ¶¶ 4-7, and is beginning to apply the ACA Rule to asylum seekers at POEs. Ex. 11 at ¶¶ 4-5.

Ripeness "coincides squarely with standing's injury in fact prong." *Safer*

1  *Chemicals, Healthy Families v. EPA*, 943 F.3d 397, 411 (9th Cir. 2019). If a

2  "threatened injury is 'certainly impending,' or there is a "'substantial risk' that the

3  harm will occur," a future injury may satisfy the injury in fact requirement. *Susan B.*

4  *Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Provisional class members have

5  "a substantial risk of harm" because—but for the metering policy—they would have

6  been processed before November 19, 2019, and would not face the application of

7  the ACA rule.  That they are now subject to this Rule at all is a "certainly impending"

8  injury all class members will face.

9       The Government asserts that Plaintiffs' claims are unripe because they cannot

10  show that the government will "categorically have the Rule applied to them because

11  the Government is not currently applying the Rule to all [noncitizens] who cross the

12  border." Opp at 9. This is not the point. When plaintiffs challenge the government's

13  withholding of a right or benefit, the Ninth Circuit "applie[s] a 'firm prediction rule'

14  to determine constitutional ripeness." *Safer Chemicals*, 943 F.3d at 415. The test

15  "ask[s] whether [the court] 'can make a firm prediction that the plaintiff will apply

16  for the benefit at issue, and that the agency will deny the application by virtue of the

17  challenged rule." *Id.* (internal quotations and alterations omitted).

18       The Court can firmly predict that provisional class members who are fleeing

19  persecution and awaiting processing in Mexico will seek asylum in the U.S. after

20  November 19, 2019, because they were all metered before that date.  The Court also

21  can firmly predict that provisional class members will be subject to the Rule and

22  likely ineligible to apply for asylum in the U.S. *First*, the rule applies to class

23  members on its face. *See* ACA Rule, 84 Fed. Reg. at 64,001 (the rule "will cover

24  ACAs to the full extent permitted by section 208(a)(2)(a), which *contains no*

25  *limitation* to only those [noncitizens] who have transited through the relevant third

26  country or who arrive at ports of entry." (emphasis added)). *Second*, the

27  government's own evidence suggests that it is rapidly expanding implementation.

28  *See* Ex. 12 at ¶¶ 4-5.  Moreover, the Government admits that the rule is intended to

1  "alleviate [the] burdens" of the large number of migrants coming to the U.S. to seek
2  asylum by sending them to "willing regional partners." Opp. 20. *Finally*, the
3  Government cannot escape the fact that provisional class members are subject to the
4  ACA Rule by being coy about whether it intends to apply the Rule to them. This
5  would allow the government to skirt pre-enforcement challenges to a rule by simply
6  refusing to state that it will apply the rule to its full extent.

7    *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 59 (1993), cited by the
8  Government, supports Plaintiffs' argument. *Reno* explains, "[i]n some cases, the
9  promulgation of a [law] will itself affect parties concretely enough to satisfy
10 [ripeness]," such as where plaintiffs face "the immediate dilemma to choose between
11 complying with the newly imposed, disadvantageous restrictions and risking serious
12 penalties for violation." *Id.* at 57. Here, the mere promulgation of the ACA Rule
13 forces provisional class members to choose between continuing to seek asylum in
14 the U.S., knowing they would be subject to the ACA Rule and potentially sent to a
15 third country, or foregoing their asylum claims in the U.S.

16    **B.    The Court Retains Jurisdiction Over These Claims**

17    Defendants erroneously contend that various provisions of 8 U.S.C. §§ 1158
18 and 1252 foreclose this Court's jurisdiction to grant the requested injunction.[5]
19 Defendants' arguments are rooted in a fundamental misinterpretation of the ACA
20 Rule, which by its terms and by operation of this Court's prior ruling, Dkt. 280 at
21 36-44, does not apply to provisional class members. They also misunderstand the
22 purpose of Plaintiffs' motion, which is not to challenge a particular outcome in an
23 individual case, but to preserve provisional class members' statutory and
24 constitutional claims challenging the government's metering policy.

25

26 _____

27 [5] Because none of these provisions explicitly restricts this Court's equitable powers, the Court can, at a minimum, issue a ruling that averts a "quintessentially inequitable" result. *See Porter v. Warner Hldg. Co.*, 328 U.S. 395, 398 (1946) *U.S. v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 496 (2001); *Rodriguez v. Hayes*, 591 F.3d 1105, 1120 (9th Cir. 2010).

28

1    Section 1158(a)(3): The Government takes the extreme position that
2    § 1158(a)(3) precludes this Court from ruling, in the manner it has before, that the
3    ACA Rule does not apply to provisional class members who—under the Court's
4    prior ruling—arrived before the effective date of the Rule. As with the Asylum Ban,
5    the issue is the meaning of the term "arrive" as used identically in the ACA Rule.
6    The ACA Rule applies only prospectively to noncitizens who arrive at a U.S. port
7    of entry on or after November 19, 2019. *See* 84 Fed. Reg. at 63,994. Under this
8    Court's prior rulings, provisional class members metered prior to the effective date
9    of the ACA Rule were "arriving in the United States" before November 19. *See Al*
10   *Otro Lado v. Wolf*, 394 F. Supp. 3d at 1199-1205. Such individuals are thus not
11   subject to the ACA Rule or any of the "determinations" associated with it. *See* 8
12   U.S.C. §1158(a)(2)(A). Here, as before, Plaintiffs merely ask the Court to order the
13   Government to comply with the plain meaning of an applicability requirement
14   stemming from *its own rule*, which does not purport to derive from the statute.
15   Defendants' argument that provisional class members are subject to the ACA Rule
16   because they will arrive again to be inspected and processed is similarly inapposite
17   to the question of jurisdiction because Plaintiffs are not asking this Court to rule on
18   a particular determination under the ACA Rule.

19       Contrary to the Government's attempts to distinguish it, *McNary v. Haitian*
20   *Refugee Center, Inc.*, 498 U.S. 479 (1991), bolsters the availability of judicial review
21   in this case. *McNary* held that absent "clear congressional language mandating
22   preclusion of federal jurisdiction," a statute prohibiting judicial review of a
23   "determination respecting an application" for an immigration benefit did not also
24   preclude review of "an action alleging a pattern or practice of procedural due process
25   violations" in the administration of the benefit program. *Id.* at 483-84, 491-92. As in
26   *McNary*, the "determinations" referenced in section 1158(a)(2)(A) do not address
27   the types of legal claims Plaintiffs raise in this action—namely, statutory and
28   constitutional challenges to metering. *See id.* at 492 (determination "describes a

REPLY IN SUPP. OF MOT. FOR TRO

8

single act rather than a group of decisions or a practice or procedure employed in making decisions").[6] Defendants' overly expansive reading of the statute would foreclose judicial review of such claims. *Cf. McNary*, 498 U.S. at 497.

Section 1252(a)(2)(B)(ii): Section 1252(a)(2)(B)(ii), which precludes judicial review of "[d]enials of discretionary relief" by the Attorney General or the DHS Secretary, is similarly inapplicable. As discussed above, Plaintiffs do not challenge determinations under § 1158(a)(2)(A) or any denials of discretionary relief as a result of the Rule's application. Rather, Plaintiffs' claim is that the *application* of the Rule to provisional class members is unlawful. Even if Plaintiffs succeed on this claim, that result does not dictate the ultimate outcomes of their applications for discretionary relief. *See Make the Road N.Y. v. McAleenan*, 2019 WL 4738070, at *19 (D.D.C. 2019) (finding 1252(a)(2)(B)(ii) did not preclude judicial review of DHS' discretionary designation to expand the application of expedited review because plaintiffs challenged the manner in which the government implemented its decision, and not the decision itself); *see generally McNary*, 498 U.S. at 496 (noting "well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action"). Because § 1252(a)(2)(B)(ii) does not bar review of legal and constitutional challenges, as distinguished from the agency's ultimate discretionary decisions, it has no bearing here. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *Musunuru v. Lynch*, 831 F.3d 880, 888 (7th Cir. 2016).

Section 1252(f)(1): Section 1252(f)(1) "prohibits federal courts from granting classwide injunctive relief *against the operation of §§ 1221-123[2]*." *Jennings v. Rodriguez*, 138 S. Ct. 830, 851 (2018) (emphasis added) (internal citation and quotation omitted).[7] Plaintiffs do not seek an order from the Court enjoining or

---

[6] Both *Jimenez-Mora v. Ashcroft*, 86 F. App'x 527 (3d Cir. 2004), and *Bourdon v. DHS*, 940 F.3d 537 (11th Cir. 2019), which concern determinations in individual cases, are thus inapposite.

[7] Defendants do not contend that Section 1252(f)(1) bars this Court's ability to enter a declaratory judgment, nor could they. *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) (Section 1252(f)(1) "does not affect classwide declaratory relief").

restraining any of those statutory provisions—or the ACA Rule itself, but rather an order "to enjoin conduct … not authorized by the statutes." *Jennings v. Rodriguez*, 138 S. Ct. at 851 (internal citation omitted); *Rodriguez v. Hayes*, 591 F.3d 1105, 1120 (9th Cir. 2010). Specifically, Plaintiffs seek to preserve provisional class members' right to seek asylum under U.S. law as it existed prior to the ACA Rule— which by its terms does not apply to them and had not even been implemented at the time they should have been inspected and processed. Section 1252(f)(1) therefore "poses no bar." *Grace v. Whitaker*, 344 F. Supp. 3d 96, 143 (D.D.C. 2018); Dkt. 330 at 15.

### C.    The Court Is Empowered to Grant Relief Under the All Writs Act

As this Court concluded when issuing the preliminary injunction on the Asylum Ban, the All Writs Act ("AWA") separately authorizes the limited relief Plaintiffs seek. Dkt. 330 at 19-21.  For the same reasons articulated in section II.B, *supra*, the Court should reject the government's arguments that it lacks jurisdiction.  In addition, the argument that class members "never had a right to any particular set of asylum-application or asylum-eligibility rules," Opp. 25, fundamentally misunderstands the purpose of Plaintiffs' request under the AWA. Plaintiffs do not seek a preferred vehicle for asylum adjudication, but rather simply ask this Court to preserve the status quo and prevent the Government's action from extinguishing the Court's jurisdiction to hear and remediate their pending claims. *See* Dkt. 330 at 20-21.  As this Court's prior ruling recognizes*, id.*, the AWA empowers this Court to do precisely that.  *See F.T.C. v. Dean Foods Co.*, 384 U.S. 597, 604 (1966) (AWA reflects federal court's power "to preserve [its] jurisdiction or maintain the status quo by injunction pending review of an agency's action.").

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be granted.

REPLY IN SUPP. OF MOT. FOR TRO

1

2  Dated: December 20, 2019                    MAYER BROWN LLP
                                                  Matthew H. Marmolejo
3                                                 Ori Lev
                                                  Stephen M. Medlock
4
5                                              SOUTHERN POVERTY LAW
                                               CENTER
6                                                 Melissa Crow
                                                  Sarah Rich
7                                                 Rebecca Cassler
8
                                               CENTER FOR CONSTITUTIONAL
9                                              RIGHTS
                                                  Baher Azmy
10                                                Ghita Schwarz
                                                  Angelo Guisado
11
12                                             AMERICAN IMMIGRATION
                                               COUNCIL
13                                                Karolina Walters
14
15                                             By: */s/ Stephen M. Medlock*
                                                   Stephen M. Medlock
16
17                                             *Attorneys for Plaintiffs*
18
19
20
21
22
23
24
25
26
27
28

                                                          REPLY IN SUPP. OF MOT. FOR TRO

**CERTIFICATE OF SERVICE**

I certify that I caused a copy of the foregoing document to be served on all counsel via the Court's CM/ECF system.

Dated:  December 20, 2019                    MAYER BROWN LLP


By  */s/ Stephen M. Medlock*