MAYER BROWN LLP
Matthew H. Marmolejo (CA Bar No. 242964)
*mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
Ori Lev (DC Bar No. 452565)
(*pro hac vice*)
*olev@mayerbrown.com*
Stephen M. Medlock (VA Bar No. 78819)
(*pro hac vice*)
*smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: +1.202.263.3000
Facsimile: +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
Melissa Crow (DC Bar No. 453487)
(*pro hac vice*)
*melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

Al Otro Lado, Inc., *et al.*,

Plaintiffs,

v.

Chad F. Wolf,[1] *et al.*,

Defendants.

Case No.: 17-cv-02366-BAS-KSC

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PROVISIONAL CLASS CERTIFICATION**

***PORTIONS FILED UNDER SEAL***

Hearing Date: January 13, 2020

**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
*bazmy@ccrjustice.org*
Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
*aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
*sarah.rich@splcenter.org*
Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
*rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
*kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION AND A TRO ARE DIRECTLY RELEVANT TO THE GOVERNMENT'S CONTINUED SCHEME TO DETER ASYLUM SEEKERS .......... 2

III. THE PROVISIONAL CLASS SATISFIES RULE 23 .......... 5

A. THERE ARE QUESTIONS COMMON TO THE CLASS .......... 5

B. DEFENDANTS' TYPICALITY ARGUMENT FAILS .......... 7

C. THE CLASS REPRESENTATIVE IS ADEQUATE .......... 8

D. RULE 23(B)(2)'S REQUIREMENTS ARE SATISFIED .......... 9

E. THE CLASS IS ASCERTAINABLE .......... 10

IV. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Otro Lado, Inc. v. McAleenan*,
2019 WL 6134601 (S.D. Cal. 2019) ........................................................*passim*

*Bee, Denning, Inc. v. Capital Alliance Grp.*,
2016 WL 3952153 (S.D. Cal. 2016) ........................................................9

*Friends of the Earth, Inc. v. Laidlaw Env'tl Servs., Inc.*,
528 U.S. 167 (2000) ........................................................8

*Inland Empire-Immigrant Youth Collective v. Nielsen*,
2018 WL 1061408 (C.D. Cal. 2018)........................................................10

*Los Angeles v. Lyons*,
461 U.S. 95 (1983) ........................................................7

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........................................................7, 8

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012)........................................................5

*Meyer v. Portfolio Recovery Assocs., LLC*,
707 F.3d 1036 (9th Cir. 2012)........................................................5, 9

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010) ........................................................8

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010)........................................................6, 7

*The Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*,
2016 WL 314400 (N.D. Cal. 2016)........................................................9

*Victorino v. FCA US LLC*,
326 F.R.D. 282 (S.D. Cal. 2018)........................................................6

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........................................................5, 6

**Statutes**

8 U.S.C. § 1158(a)(1) ........................................................2, 6, 9

**Other Authorities**

83 Fed. Reg. 55,934 (Nov. 9, 2018) ........................................................3

83 Fed. Reg. 57,661 (Nov. 9, 2018) ........................................................3

84 Fed. Reg. 33,829 (July. 16, 2019) ........ 3

84 Fed. Reg. 62,374 (Nov. 14, 2019) ........ 3

84 Fed. Reg. 63,994 (Nov. 19, 2019) ........ *passim*

7A Charles A. Wright, et al., *Federal Practice & Procedure* § 1775 (3d ed. 2018) ........ 9

Exec. Order No. 13767, 11, 82 Fed. Reg. 8,793 (Jan. 25, 2017) ........ 3

Exec. Order No. 13780, 82 Fed. Reg. 13209 (Mar. 6, 2017) ........ 3

Fed. R. Civ. P. 23 ........ *passim*

**CITATION FORM**

"Ex." refers to exhibits to the Declaration of Stephen M. Medlock, which is filed concurrently with this reply brief.

"Op. Br." refers to Plaintiffs' Memorandum of Points and Authorities in Support of Their Motion for Provisional Class Certification, Dkt. 351-1, 352-1.

"Opp." refers to Defendants' Opposition to Plaintiffs' Motion for Provisional Class Certification, Dkt. 376.

"Opp. Ex." refers to the exhibits to Defendants' Opposition to Plaintiffs' Motion for Provisional Class Certification, Dkt. 376-2 through Dkt. 376-25.

# I. INTRODUCTION

This Court's prior analysis of provisional class certification in *Al Otro Lado, Inc. v. McAleenan*, 2019 WL 6134601 (S.D. Cal. 2019) ("PI Order"), applies here and requires certification of plaintiffs' new proposed provisional class for purposes of their temporary restraining order ("TRO") motion. Defendants barely cite this opinion and offer no meaningful basis to distinguish it. Instead, they resort to repeating arguments they have made before, citing the same exhibits (indeed, 23 of the 24 exhibits cited in Defendants' opposition were previously submitted to the Court), and hoping for a better result. Plaintiffs submit this reply to summarize why this Court's prior class certification ruling was correct and why it is on all fours with this motion.

Each of Defendants' arguments concerning class certification fails for the same reasons that they all failed in the PI Order. As an initial matter, Defendants' argument that Plaintiffs' motions for a temporary restraining order and provisional class certification have nothing to do with the claims specified in the Second Amended Complaint is flat wrong. Beginning as early as the summer of 2016, Defendants spearheaded a wide-ranging effort to target, deter, and block asylum seekers at the U.S.-Mexico border. Defendants' metering policy and turnbacks of asylum seekers at ports of entry ("POEs") are the centerpiece of this pattern of illegal conduct. The ACA Rule is another, more recent, outgrowth of this ongoing anti-asylum effort. Moreover, Defendants' argument on this point has no relevance to the Fed. R. Civ. P. 23 factors.

Defendants' arguments regarding the Rule 23 factors fail as well.

***First***, Defendants' commonality argument fails because there are multiple questions capable of generating answers common to the class, including whether Defendants improperly construed the ACA Rule[2] to apply to provisional class

---

[2] Implementing Bilateral and Multilateral Asylum Cooperative Agreements Under the INA, 84 Fed. Reg. 63,994 (Nov. 19, 2019) ("ACA Rule").

members that arrived in the U.S. prior to November 19, 2019. Contrary to Defendants' suggestion, the answer to this question has nothing to do with whether an individual asylum seeker presented herself at the international boundary line seeking asylum in the U.S.

***Second***, Plaintiff Roberto Doe's claims are typical of the class and he is an adequate class representative. Roberto Doe presented himself at the Reynosa-Hidalgo port of entry on October 2, 2018, well in advance of November 19, 2019, and was subject to the metering policy. He plans to return to a U.S. POE and would therefore be subject to the ACA Rule. He also continues to be injured by the Government's metering policy and misinterpretation of 8 U.S.C. §§ 1158(a)(1) and 1225(b) and therefore has standing.

***Third***, Defendants misstate the law by insinuating that a class may be certified only if Plaintiffs' TRO seeks precisely the same injunctive relief sought in the Second Amended Complaint. Moreover, Defendants mistakenly assert that ascertainability is a requirement in a Rule 23(b)(2) case.

As a result, the Court should certify a provisional class of all asylum seekers who were unable to make a direct asylum claim at a U.S. POE before November 19, 2019 because of the U.S. Government's metering policy, and who continue to seek access to the U.S. asylum process.

## II. PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION AND A TRO ARE DIRECTLY RELEVANT TO THE GOVERNMENT'S CONTINUED SCHEME TO DETER ASYLUM SEEKERS

Defendants open their brief by claiming that Plaintiffs "continue to seek to certify so-called 'sub-classes' to enjoin application" of new immigration rules "[r]ather than advancing the[] claims" in their Second Amended Complaint. *See* Dkt. 376 at 1. Defendants are incorrect. The crux of the Second Amended Complaint and the present TRO and provisional class certification motions is one and the same: Defendants are continuing to defy the INA's mandate that they inspect

asylum seekers arriving at POEs and provide them access to the U.S. asylum process.

Beginning in 2017, the Government has enacted a series of executive orders[3], administrative rules[4], and presidential proclamations[5] aimed at deterring asylum seekers and denying them access to the U.S. asylum process. The metering policy and the ACA Rule are both elements of this ongoing effort. On April 27, 2018, CBP formalized a metering policy that permits the directors of POEs to turn away asylum seekers, telling them that the POE has reached capacity. *See* Opp. Ex. 2. Then, on June 5, 2018, the Secretary of Homeland Security gave the metering policy teeth by adopting a "[REDACTED]" memorandum. *See* Ex. 1 at 457. Under "[REDACTED]," Defendants have chosen to [REDACTED], even though Defendants have a legal duty to provide noncitizens access to the U.S. asylum process at POEs. *Id.*; Ex. 2 at 212:3-6. In June 2018, CBP also moved from considering [REDACTED] of POEs on the U.S.-Mexico border to considering "[REDACTED]" when determining [REDACTED] [REDACTED]. *See* Ex. 3 at 915 (noting that in June 2018, [REDACTED] "[REDACTED] [REDACTED]"). This change was significant. [REDACTED]

---

[3] *See, e.g.*, Exec. Order No. 13767, 11, 82 Fed. Reg. 8,793 (Jan. 25, 2017) (calling for building a physical wall on U.S.-Mexico border, construction of new detention facilities, returning asylum seekers to Mexico, and restricting use of parole with respect to asylum seekers); Exec. Order No. 13780, 82 Fed. Reg. 13209 (Mar. 6, 2017) (denying asylum benefits to refugees from Iran, Iraq, Libya, Somalia, Sudan, Syria, and Yemen, subject to certain exceptions).

[4] *See, e.g.*, Aliens Subject to Bar on Entry Under Certain Presidential Proclamations; Procedures for Protection Claims, 83 Fed. Reg. 55,934 (Nov. 9, 2018) (banning migrants that entered the U.S. between POEs from accessing U.S. asylum process); Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33,829 (July. 16, 2019) (Asylum Ban for those who transited through a third country); Asylum Application, Interview, and Employment Authorization for Applicants, 84 Fed. Reg. 62,374 (Nov. 14, 2019) (making it more difficult for asylum seekers to receive employment authorization in the U.S.).

[5] *See, e.g.*, Proclamation No. 9822, Addressing Mass Migration Through the Southern Border of the United States, 83 Fed. Reg. 57,661 (Nov. 9, 2018) (banning migrants from seeking asylum in any location other than a port of entry).



. *See, e.g.*, Ex. 2 at 185:9-20; Ex. 4 ( ). On the other hand, . Ex. 2 at 74:11-76:15, 189:8-191:6. In other words, in the spring of 2018, Defendants quietly adopted a set of previously undisclosed policies that allow them to deny asylum seekers access to the asylum process at POEs based on trumped-up capacity concerns while simultaneously enabling them to lower the supposed capacity of POEs and making their actual capacity more difficult to track. Defendants use the term "capacity" to refer not to the amount of resources they *could have used* to process asylum seekers, but rather the (very limited) amount of resources they *chose to use* to process asylum seekers.

The line officers within CBP understood this self-fulfilling metering policy for the sham that it is. Defendants rushed this metering policy to the field in a manner that caused confusion and jeopardized officer safety. *See, e.g.*, Ex. 5 at 171:20-172:23; Ex. 6 at 110. CBP officers worried that there was no legal authority to support turning back asylum seekers to Mexico. Ex. 7 (letter signed by dozens of CBP officers requesting "clarification for the authority or law" permitting metering); Ex. 5 at 165:9-18. And CBP officers and management saw the intent behind the metering policy for what it is—an effort to deter asylum seekers. Ex. 8 at 673 (San Diego Field Office of CBP ); Ex. 9 (Department of Homeland Security Office of Inspector General investigator ); Ex. 10 at 783 (email explaining that " "); Ex. 11 at 881 (" "). These CBP officers realized that the "capacity" excuse was a lie. Ex. 5 at 99:19-101:2; Ex. 6 at 110 (email to CBP Commissioner: "The employees would like

you to provide them the proper authority and sections of law that allows them to . . . prevent [asylum seekers] from entering the U.S. after presenting themselves for inspection and requesting asylum. . . . [T]he agency is claiming publicly that they are not conducting these activities when they really are."); Ex. 12 at 132 ("the Agency intentionally . . . den[ied] and block[ed] asylum to persons and families in order to block the flow of asylum applicants" and to create "a chilling [e]ffect[] to all others attempting entry into the United States.").

Similarly, the ACA Rule seeks to deter asylum seekers from presenting at the southern border and to deny them access to the U.S. asylum system—this time, by simply sending them to countries Defendants have deemed "safe" even though tens of thousands of people are currently fleeing persecution in those same countries. And provisional class members would not be at risk under the ACA Rule but for Defendants' illegal metering. Therefore, Defendants are simply incorrect when they claim that Plaintiffs' TRO motion and this motion are unrelated to the relief sought in the Second Amended Complaint.

## III. THE PROVISIONAL CLASS SATISFIES RULE 23[6]

### A. THERE ARE QUESTIONS COMMON TO THE CLASS

Defendants contend that commonality cannot exist because the implementation of the metering policy and conditions of migrants affected by it allegedly vary from POE to POE. *See* Opp. at 2-4. But Defendants ignore the binding Rule 23 standard for commonality.

"All questions of fact and law need not be common to satisfy the [commonality requirement]. The existence of shared legal issues with divergent factual precedents is sufficient." PI Order at *12 (quoting *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012)). In fact, commonality presents a "limited burden," that "only requires a single significant question of law

[6] Defendants do not argue that the provisional class is not numerous or that class counsel is inadequate—and therefore concede those points. PI Order at *12, *13-14.

and fact." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("for purposes of Rule 23(a)(2), even a single common question will do").

Here, Plaintiffs have identified multiple common questions of law and fact, including whether Defendants are improperly construing the ACA Rule to apply to those class members who arrived at a POE before November 19, 2019. PI Order at *13 (certifying class based on a similar common question). Even assuming that there are differences among some POEs and migrants waiting in Mexican border towns, this question enables the Court to "determine, in one fell swoop, whether class members . . . arrived in the United States such that the [ACA Rule] is inapplicable to them." *Id.*[7] Because this is "a common issue for all subclass members. . . . Rule 23(a)(2) has been met." *Id.*

Defendants argue that the legality of metering is not a common question because that capacity constraints at POEs *may have* justified metering in *some* instances. *See* Opp. at 12-17. But Defendants never cite a single contemporaneous document showing that capacity constraints justified metering at a single POE. *See id.* Nor can they. As previously explained, Defendants intentionally adopted a set of policies that allowed POEs to intentionally lower their capacity in order to meter asylum seekers. *See supra* at 3-5. Multiple CBP officers at multiple POEs immediately understood these capacity excuses to be a "lie" that was "obvious to everybody that was implementing [the metering] policy" because Defendants, in fact, "intentionally . . . den[ied] and block[ed] asylum to persons and families in order to block the flow of asylum applicants" to create "a chilling [e]ffect[] to all others attempting entry into the United States." Ex. 5 at 99:25-100:24, 101:3-6; Ex. 12 at 132; Ex. 7 at 115-126.

---

[7] Even if the Court were to credit Defendants' commonality arguments regarding differences between class members (and it should not do so), that is an argument for certifying a narrower class, not for denying certification altogether. *See Victorino v. FCA US LLC*, 326 F.R.D. 282, 301-02 (S.D. Cal. 2018).

Defendants' remaining arguments to the contrary fail. Defendants claim that whether they are misconstruing the law concerning when an asylum seeker "arrives in" the U.S. is not "central to the validity of" Plaintiffs' claims. Opp. at 8-9 (quoting *Wal-Mart Stores*, 564 U.S. at 350). This is ludicrous. As this Court explained in its second motion to dismiss opinion, whether asylum seekers were "arriving in" the U.S. is central to this case—particularly to Plaintiffs' INA, APA Section 706(1), and Due Process claims. *See* Dkt. 280 at 36-44. The definition of "arrives in" as used in 8 U.S.C. § 1158(a)(1) and whether Defendants are misconstruing the scope of the ACA Rule based on a misunderstanding of that definition is therefore central to both Plaintiffs' TRO motion and the Second Amended Complaint. *See* Dkt. 189 at ¶¶ 205, 208, 221 (the "arrives in" language in 8 U.S.C. § 1158(a)(1) triggers a duty to inspect and process an asylum seeker). Therefore, the commonality test is satisfied.

**B. DEFENDANTS' TYPICALITY ARGUMENT FAILS**

Defendants claim that typicality is not satisfied because none of the Named Plaintiffs are members of the provisional class. *See* Opp. at 17-21. Not so. "The typicality requirement is permissive and requires only that the representative's claims be reasonably coextensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.*

As this Court has previously found, Roberto Doe's claims are typical of the class. *Al Otro Lado*, 2019 WL 6134601, at *13. Roberto Doe is a Nicaraguan national. *Id.* He traveled to the U.S.-Mexico border and presented himself to CBP officials at the Reynosa-Hidalgo POE on October 2, 2018. *Id.* At that time, CBP officers told Roberto Doe that the POE was "full" and that he would have to return to Mexico before being inspected and processed at the POE. *Id.* He still intends to apply for asylum in the U.S. *Id.* "Because Roberto Doe claims he came to a U.S.

POE . . . to seek asylum, attempted to make a direct claim for asylum at a POE before [November 19], 2019 but was turned away due to the metering policy, and still intends to seek asylum in the United States . . . he has provided sufficient information to satisfy the test for typicality." *Id.*

Citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992), Defendants argue unpersuasively that Roberto Doe's injury is not "imminent." Opp. at 20-21. But, in *Lujan*, the plaintiffs were not at risk of an "imminent" injury because their "[p]ast exposure to illegal conduct" did not "show a present case or controversy regarding injunctive relief" since it was "unaccompanied by any continuing, present adverse effects." 504 U.S. at 564 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Specifically, the *Lujan* plaintiffs suffered no continuing adverse effect from seeing endangered animals in Egypt and Sri Lanka. *Id.* That is not the case here. Unlike the bereft eco-tourists in *Lujan*, Roberto Doe has suffered continuing, present adverse effects because he was not allowed to access the U.S. asylum process after arriving in the U.S. in October 2018. And, he will suffer the injury of having the ACA Rule improperly applied to him when he returns to seek asylum in the U.S.

Moreover, Defendants also ignore the fact that "'imminence' is concededly a somewhat elastic concept." *Lujan*, 504 U.S. at 565, n.2. And post-*Lujan* decisions have explained that a plaintiff merely need to show a "reasonable probability" or "substantial risk," *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153 (2010) that "the defendant's allegedly wrongful behavior will likely occur or continue." *Friends of the Earth, Inc. v. Laidlaw Env'tl Servs., Inc.*, 528 U.S. 167, 190 (2000). That is precisely what has occurred here. Roberto Doe faces the substantial risk and reasonable probability that when he returns to the border he will be subject to the ACA Rule despite the fact that he arrived in the U.S. in October 2018. As a result, Roberto Doe's claims are typical of the provisional class.

### C. THE CLASS REPRESENTATIVE IS ADEQUATE

Defendants' adequacy argument restates their belief that Roberto Doe lacks

standing or that his claims are not reasonably co-extensive with the claims of the provisional class. *See* Opp. at 21-22. However, Roberto Doe suffered precisely the same injury as the other class members, has standing, and fits precisely into the class definition. *See supra* at 6-7. Therefore, this case is nothing like the cases Defendants cite where the class representative plainly did not fit into the proposed class definition.

**D. RULE 23(B)(2)'S REQUIREMENTS ARE SATISFIED**

Defendants argue Rule 23(b)(2) does not apply because the operative complaint did not specifically request a preliminary injunction against the ACA Rule. Opp. at 22-23. But Defendants cite no case, and Plaintiffs are aware of none, requiring the injunctive relief sought in a complaint and the injunctive relief sought by a Rule 23(b)(2) class to be identical. Rule 23(b)(2) states only that a class may be certified where the opposing party "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). This requires only "that final injunctive relief . . . be requested against the party opposing the class." 7A Charles A. Wright, et al., *Federal Practice & Procedure* § 1775 (3d ed. 2018). Therefore, provisional class certification is appropriate so long as the plaintiff has requested permanent injunctive relief in its complaint. *Meyer*, 707 F.3d at 1043.

Here, the open-ended prayer for relief in Plaintiffs' operative complaint and the All Writs Act are certainly broad enough to allow the court to remedy illegal conduct that flows from the metering policy described in the pleadings, including application of the ACA Rule to previously-metered asylum seekers. Dkt. 330 at 20. In their complaint, Plaintiffs seek a permanent injunction requiring Defendants to cease this conduct and comply with 8 U.S.C. §§ 1158 and 1225. Dkt. 189 ¶ 304(d)-(e). The injunctive relief sought in Plaintiffs' TRO is based on Defendants failure to comply with 8 U.S.C. §§ 1158(a)(1) and 1225(b) by implementing the illegal metering policy and the ACA Rule. Rule 23(b)(2) is satisfied.

**E. THE CLASS IS ASCERTAINABLE**

Defendants argue that the class is not ascertainable because Defendants will need to perform a minimal amount of administrative work to determine if asylum seekers are class members. *See* Opp. at 24-25. This argument is mistaken for two reasons. First, Defendants ignore this Court's prior conclusion that "ascertainability should not be required when determining whether to certify a class in the 23(b)(2) context." *Bee, Denning, Inc. v. Capital Alliance Grp.*, 2016 WL 3952153, at *5 (S.D. Cal. 2016). "Identification of individual class members is not required; to the contrary, the fact that class members are difficult or impossible to identify individually supports class certification under Rule 23(b)(2)." *The Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*, 2016 WL 314400, at *5 (N.D. Cal. 2016).

Second, Defendants have relied on waitlists maintained by various organizations in Mexican border towns to implement the metering policy. PI Order at *15. Class membership can be largely determined by Defendants cross-referencing these lists. *Id.*[8] In addition, asylum seekers can produce evidence that they are class members. While Defendants claim that this process may require some administrative work, that is no reason to deny class certification. *See, e.g.*, *Inland Empire-Immigrant Youth Collective v. Nielsen*, 2018 WL 1061408, at *13 (C.D. Cal. 2018) ("That some administrative effort is required does not preclude certification."). At most, Defendants claim that they will have to ask additional questions during interviews that they are already required to conduct. Opp. at 25. And Defendants cite no case indicating that such incremental effort is a reason to deny class certification.

**IV. CONCLUSION**

For the foregoing reasons, the Court should provisionally certify the class.

---

[8] Defendants criticize Plaintiffs for not obtaining these waitlists. Opp. at 25. But it is Defendants, not Plaintiffs, that have regular access to the individuals that maintain the lists.

Dated: January 6, 2020

MAYER BROWN LLP
Matthew H. Marmolejo
Ori Lev
Stephen S. Medlock

SOUTHERN POVERTY LAW CENTER
Melissa Crow
Sarah Rich
Rebecca Cassler

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy
Ghita Schwarz
Angelo Guisado

AMERICAN IMMIGRATION COUNCIL
Karolina Walters

By: *<u>/s/ Stephen M. Medlock</u>*
Stephen M. Medlock

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that I caused a copy of the foregoing document to be served on all counsel via the Court's CM/ECF system.

Dated: January 6, 2020

MAYER BROWN LLP

By *<u>/s/ Stephen M. Medlock</u>*