UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AL OTRO LADO, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>CHAD F. WOLF, Acting Secretary of Homeland Security, *et al.*,<br><br>　　　　　　　Defendants. | Case No. 17-cv-02366-BAS-KSC<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANTS' MOTION TO AMEND/CORRECT [ECF No. 362];**<br><br>**AND**<br><br>**(2) DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER WITHOUT PREJUDICE [ECF No. 344]** |

　　　On December 6, 2019, Plaintiffs moved for a temporary restraining order ("TRO") prohibiting the Government from applying a new regulation, "Implementing Bilateral and Multilateral Asylum Cooperative Agreements Under the Immigration and Nationality Act" ("ACA Rule"), to provisional class members who were metered by the U.S. Government at a port of entry before the effective date of the regulation. (Mot. for TRO, ECF No. 344; Mot. for Provisional Class Certification, ECF No. 352.) Defendants oppose the Motion and have submitted Motion amending their Opposition. (ECF Nos. 352, 362.) For the reasons stated below, the Court **GRANTS** Defendants' Motion to Amend/Correct their Opposition and **DENIES WITHOUT PREJUDICE** Plaintiffs' Motion for a TRO.

1

## I. BACKGROUND

The Rule implements a statutory exception to asylum in the Immigration and Nationality Act known as the "Safe third country" provision. 8 U.S.C. § 1158(a)(2)(A). Under this provision, the Attorney General can remove a foreign national otherwise eligible for asylum,

> pursuant to a bilateral or multilateral agreement, to a country (other than the country of the alien's nationality or, in the case of an alien having no nationality, the country of the alien's last habitual residence) in which the alien's life or freedom would not be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion, and where the alien would have access to a full and fair procedure for determining a claim to asylum or equivalent temporary protection, unless the Attorney General finds that it is in the public interest for the alien to receive asylum in the United States.

*Id.* The United States recently entered into ACAs with El Salvador, Guatemala, and Honduras which constitute such "bilateral or multilateral agreement[s]" to which the statutory exception applies, and the ACA Rule "modif[ies] existing regulations to provide for the implementation of" these ACAs.[1] 84 Fed. Reg. 63994 (Nov. 19, 2019) (to be codified at 8 C.F.R. §§ 208.4, 208.30, 1003.42, 1208.4, and 1240.11).

In addition to implementing the three aforementioned ACAs, the ACA Rule creates a bar that restricts "whether an alien may even *apply* for asylum." *Id.* at 63996 (emphasis original). To do so, the rule establishes "a screening mechanism" to evaluate an alien's likelihood of torture or of persecution based on race, religion, nationality, political opinion, or membership in a particular social group if removed a "third country"—in this case, El Salvador, Guatemala, or Honduras.

This threshold inquiry is conducted by an asylum officer or immigration judge who must determine: (1) if a foreign national is subject to the terms of an existing ACA; and (2) if the individual, should he or she state an affirmative fear of removal to a signatory third country, is more likely than not to be persecuted or tortured in that country. *Id.* at 63998.

---

[1] The ACA Rule does not alter the existing regulations governing removal under the U.S.-Canada Agreement, which is narrower in scope and directed only at third country nationals seeking to enter the U.S. at a U.S.-Canada land border port of entry. 84 Fed. Reg. 63,996.

The inquiry occurs directly after an initial inadmissibility or deportability determination is made during either an expedited removal proceeding or a "regular removal proceeding" under § 240 of the INA. *Id.*

## II.   LEGAL STANDARD

If the nonmovant has received notice of a TRO, the standard for issuing a temporary restraining order is the same as that for issuing a preliminary injunction. *See Brown Jordan Int'l, Inc. v. Mind's Eye Interiors, Inc.,* 236 F. Supp. 2d 1152, 1154 (D. Haw. 2002); *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.,* 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 98, 972 (1997) (emphasis original) (quotation omitted). "[T]he burden of proof at the preliminary injunction stage tracks the burden of proof at trial." *Thalheimer v. City of San Diego,* 645 F.3d 1109, 1116 (9th Cir. 2011).

To obtain preliminary injunctive relief, a movant must "meet one of two variants of the same standard." *All for the Wild Rockies v. Pena,* 865 F.3d 1211, 1217 (9th Cir. 2017.) Under the first standard, the movant must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* (quoting *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008)).

Under the second standard, the movant must show "that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits," that the "balance of hardships tips *sharply* in the Plaintiff's favor," and that "the other two *Winter* factors are satisfied." *Id.* (quotation omitted). The balance of equities and public interest factors merge "[w]hen the government is a party." *Drakes Bay Oyster Co. v. Jewell,* 747 F.3d 1073, 1092 (9th Cir. 2014) (quoting *Nken v. Holder,* 556 U.S. 418, 435 (2009)). Under the second standard, when the government is a party, the movant must show serious questions going to the merits; a balance of hardships, merged with public interest

considerations, tipping sharply in the movant's favor; and a likelihood of irreparable harm absent preliminary relief.

## III. ANALYSIS

Plaintiffs allege that the application of the ACA Rule to the class members will result in irreparable injury because removal to a third country would extinguish their ability to obtain relief in the underlying action. (Mem. of P. & A. In Support of Mot. for TRO at 4, ECF No. 344-1.) However, the Court does not find that Plaintiffs have met this burden because Plaintiffs have not established that Defendants are likely to apply the regulation to the class.

"Under either formulation of the [preliminary injunction] test, the party seeking the injunction must demonstrate that it will be exposed to some significant risk of irreparable injury." *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991). While Plaintiffs are not required to show actual injury, "a strong threat of irreparable injury before trial is an adequate basis" for such relief. *Diamontiney v. Borg*, 918 F.2d 793, 795 (9th Cir. 1990) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure, § 2948 at 437–38 (1973) (footnote omitted)). Thus, a plaintiff must show an "immediate threatened injury as a prerequisite to preliminary injunctive relief." *Midgett v. Tri-County Met. Transp. Dist.*, 254 F.3d 846, 851 (9th Cir. 2001).

To support its claim that application of the ACA Rule on the class satisfies this standard, Plaintiffs claim that "the Government is accelerating its enforcement of the rule" and has rescinded its previous representations about the breadth of the application of the rule.[2] Specifically, although an initial declaration from a CBP official represented that the

---

[2] Defendants' Motion to Amend/Correct (ECF No. 362) includes a revised version of the Declaration of Michael Ringler, an Assistant Chief for Border Patrol's Specialty Programs/Planning Division and the Declaration of Todd Hoffman, Executive Director, Admissibility and Passenger Programs, Office of Field Operations, Customs and Border Protection. (ECF Nos. 362-2, 362-3.) The Motion to Amend/Correct was not opposed by Plaintiffs. The Court hereby **GRANTS** the Motion and considers its contents for purposes of this Order.

ACA Rule was "being applied only to those aliens who entered without inspection, and not those aliens seeking admission at a port of entry," Defendants submitted an amended declaration from the same official that omits this language. (Compare Dec. of Michael Ringler ¶ 10, ECF No. 357-4 with Mot. to Amend/Correct, Dec. of Michael Ringler ("Amended Ringler Dec."), ECF No. 362-2.)[3]  Further, an additional declaration from another CBP official states that the ACA Rule is being applied at the El Paso port of entry and that, to date, one person has been referred to USCIS pursuant to the Rule but was ultimately "reprocessed for a different form of removal proceedings."  (Dec. of Todd Hoffman ¶¶ 4, 5, ECF No. 362-3.)

These statements, however, do not establish a likelihood that Defendants will apply the Rule to provisional class members, thereby causing them irreparable harm.  The fact that Defendants have referred a single individual pursuant under the ACA Rule at a port of entry—who was then reprocessed pursuant to a different removal authority—does not create a "strong threat" of enforcement of the Rule against the class members. *See Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980) (finding that facts "sufficient to justify some apprehension" of immediate injury, while potentially sufficient for standing, did not satisfy plaintiff's burden for preliminary injunctive relief).  These circumstances are distinct from those surrounding the Asylum Ban, in which Defendants affirmatively stated their intention to enforce compliance of the Asylum Ban on the provisional class. (*See* Opp'n to Mot. for Prelim. Inj. at 23–24, ECF No. 307 ("Class members have all had the opportunity since July 16 to seek relief in Mexico to comply with the terms of the [Asylum Ban] . . .").)

Further, the Court's initial order granting a preliminary injunction and class certification regarding the Asylum Ban is currently on appeal. *See Al Otro Lado et al. v. Chad Wolf, et al.*, No. 19-56417 (9th Cir. Dec. 5, 2019). Depending on the outcome of the

---

[3] The amended declaration also includes statistics from the Rio Grande Valley sector inadvertently omitted in the initial declaration and qualifies the accuracy of the statistics by stating that they are "unofficial approximates . . . based on the numbers of individuals who were referred to USCIS." (Amended Dec. of Michael Ringler ¶¶ 3, 8.)

appeal, the Government may be required to "return to the pre-Asylum Ban practices for processing the asylum applications of members of the certified class." (Order Granting Prelim. Inj. and Class Certification at 36, ECF No. 330.) The "pre-Asylum Ban practices" necessarily prohibit any application of the ACA Rule to the class because the ACA Rule became effective well after the Asylum Ban. The Court assumes that the Government will, in good faith, await the Ninth Circuit's decision on the merits of this Court's preliminary injunction and avoid taking steps that could complicate or preclude its compliance with a court order.

## IV. CONCLUSION

The Court **GRANTS** Defendants' Motion to Amend/Correct (ECF No. 362) and **DENIES WITHOUT PREJUDICE** Plaintiffs' Motion for a TRO (ECF No. 344). Plaintiffs may renew the Motion for a TRO if Plaintiffs learn that Defendants have applied or will imminently apply the ACA Rule to any provisional class member. Further, if Plaintiffs marshal additional evidence to support the likelihood of irreparable harm to the class, Plaintiffs may file a noticed Motion for a Preliminary Injunction regarding the application of the ACA Rule to the provisional class.

**IT IS SO ORDERED.**

**DATED: January 6, 2020**

Hon. Cynthia Bashant
United States District Judge