MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:  +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, | Case No.: 17-cv-02366-BAS-KSC |
| Plaintiffs, | |
| v. | **EXHIBIT 9 TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| Chad F. Wolf,[1] *et al.*, | |
| Defendants. | **Declaration of Abigail Doe in support of Plaintiffs' Motion for Class Certification** |

---

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.401.221.5857

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.56

LATHAM & WATKINS LLP
　Manuel A. Abascal (Bar No. 171301)
　*manny.abascal@lw.com*
　Wayne S. Flick (Bar No. 149525)
　*wayne.s.flick@lw.com*
　James H. Moon (Bar No. 268215)
　*james.moon@lw.com*
　Robin A. Kelley (Bar No. 287696)
　*robin.kelley@lw.com*
　Faraz R. Mohammadi (Bar No. 294497)
　*faraz.mohammadi@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

AMERICAN IMMIGRATION COUNCIL
Melissa Crow (*pro hac vice* pending)
　mcrow@immcouncil.org
Karolina Walters (*pro hac vice* pending)
　kwalters@immcouncil.org
Kathryn Shepherd (*pro hac vice* pending)
　kshepherd@immcouncil.org
1331 G Street, NW, Suite 200
Washington, DC 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

CENTER FOR CONSTITUTIONAL
RIGHTS
Baher Azmy (*pro hac vice* pending)
　bazmy@ccrjustice.org
Ghita Schwarz (*pro hac vice* pending)
　gschwarz@ccrjustice.org
Angelo Guisado (*pro hac vice* pending)
　aguisado@ccrjustice.org
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>Elaine C. Duke, *et al.*,<br><br>　　　　Defendants. | Case No.: 2:17-cv-5111 JFW (JPRx)<br>Hon. John F. Walter (Courtroom 7A)<br><br>**DECLARATION OF ABIGAIL DOE IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date: December 11, 2017<br>Hearing Time: 1:30 p.m.<br><br>Pre-Trial Conf.: July 20, 2018<br>Trial: July 31, 2018 |

# DECLARATION OF ABIGAIL DOE

I, ABIGAIL DOE, hereby declare as follows:

1. I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters. Out of fear for my life and the lives of my children, I am submitting this declaration using a pseudonym so I do not reveal my true identity and my current whereabouts. Further, I have withheld particular dates and names of places because I am afraid that my persecutors may be able to identify me and will harm me or my family as a result.

2. I am a female Mexican national. I have two children. They are 7 and 9 years old. Until recently, we lived in Central Mexico. In May 2017, my husband disappeared.

3. My husband worked transporting food and goods across Mexico via tractor-trailer. In May 2017, before his disappearance, my husband told me he was approached by individuals who wanted him to use his tractor-trailer to transport drugs for them. He said no. I believe that they threatened my husband that if he did not do what they said, that he or his family would be harmed. My husband sounded very worried when he told me about what had happened. He told me that he did not want to work for these individuals because he did not want to put my life, or the lives of our children, in danger.

4. One day in May, 2017, per his usual routine, my husband awoke early and left the house for a long delivery trip. By mid-morning, he had not called me, which was highly unusual and it worried me very much because of the threat the cartel made against him. Even though I tried many times over the next two days, I was unable to reach him. I feared the worst because he usually was in constant communication with me.

5. About two days after he disappeared, still unable to reach him, I went to the local governmental authorities to file a missing person's report. Because the

1

authorities told me I had to wait 72 hours to submit such a report, I was turned away.

6. A few hours after trying to file the report, on my way to pick up my children from school, I was stopped at gunpoint by three armed men in black head-coverings in a black van or SUV. These men grabbed me and forced me into the car. They told me that if I continued to ask about my husband's disappearance, they would kill me and my children. They told me that if I continued to look for him, that I would find him in pieces in a remote field. They warned me that if my children and I wanted to stay alive, we must leave. I still do not know where my husband is, and I fear that he was murdered because he refused to collaborate in transporting drugs. Central Mexico is controlled by cartels, and primarily *La Familia Michoaocan (*Michoacan Family*)*, the Zetas and the *Caballeros Templarios* (the Knights Templar). I believe that members from one of these cartels most likely killed my husband and I am afraid that they will kill my children and me also.

7. The gunmen seemed to know where I lived, knew my phone number, and knew what happened to my husband. I was terrified, confused, and incredibly anxious. I called my parents for advice, and we decided that my only hope of being safe and protecting the lives of my children was to seek asylum in the United States.

8. I quickly gathered my children, packed some clothes, and boarded the first available bus to Tijuana. The bus ride took nearly two days.

9. My children and I arrived in Tijuana on May 24 around 4:00 p.m. We went immediately to what appeared to be an immigration processing line, which I later discovered was the Port of Entry at San Ysidro.

10. When I reached the front of the line, I informed a person in a dark-blue shirt who spoke Spanish that I wanted to apply for asylum. I told him about my husband's disappearance and the threats to me and to my children. I explained

2

Case 3:17-cv-02366-BAS-KSC Document 390-11 Filed 01/14/20 PageID.20788 Page 40 of 393
Case 2:17-cv-05111-JFW-JPR Document 98-2 Filed 11/13/17 Page 4 of 7 Page ID #:1393
Page 6 of 9

briefly what happened to our family and our fear of return. He escorted me to different immigration officers inside of the building.

11. When I met with other officials, I repeated my desire to apply for asylum, but I was not allowed to explain my circumstances in detail. I was searched, photographed, and fingerprinted, as were my children.

12. I was next led into another room and asked to wait. Eventually, I was approached by other officers who asked me to explain the nature of my husband's disappearance. I was able to explain briefly that my husband had disappeared and that I was abducted and threatened by men who I believe are members of a well-known cartel. There are two major cartels in my community who are always fighting over territory. I do not know which cartel made my husband disappear, or threatened my children and me. I again repeated my desire to apply for asylum. I told them I was scared for my life and for the lives of my children and that I did not feel safe in Mexico.

13. The officers did not allow me to explain further and instead told me that I did not qualify for political asylum in the United States. I tried to express in greater detail the circumstances of why I wanted to apply for asylum but this was met with the same response: I simply did not qualify.

14. The officers also said that they would keep me there all night if I kept asking questions, that if I insisted on entering the United States, that my children would be taken away from me. They did not explain why.

15. The officers told me that the only option I had would be to let the Mexican government handle my situation. They explained that Mexican authorities could help me relocate within Mexico and that they would help keep me safe. They let me know I had two choices: I could pass through and have my children taken away, or I could return to Mexico and seek help from the Mexican government. I did not want to lose my children. And I did not understand what the Mexican authorities had to do with my desire to apply for asylum, especially

because I had already asked for help from the authorities in my hometown, and they had failed to help or protect us.

16. The officials gave me a document in English that I could not read or understand. I asked what it meant and was told that it was so that "Mexican authorities can help you," that it was "not a deportation form," and that "it was not anything bad." They recorded me with a video camera and told me to say that I agreed to accept the help of the Mexican authorities. They repeated this multiple times, and at no point did they explain to me anything further about the document or video.

17. I agreed to sign the document even though I did not understand what it said. The document was not translated for me. I had been threatened with death at gunpoint only two days before, and had taken a two-day bus ride across the country. I was exhausted, confused, and frightened: not just for myself, but for my children as well. I was afraid if I did not sign the document, the officers would carry out their threats and take my children away from me.

18. Later, I was taken to a different office and the officers there orally translated the document into Spanish. However, I really did not know if the translation had been done correctly. I do not speak English and was not able to confirm. I do not recall being asked any of the questions on the form by the immigration officers and I do not recall giving the answers that the officers wrote on the form. The form states that I said I do not have a fear of return to my home country of Mexico. This is absolutely false. I was threatened by men at gunpoint who I believe killed my husband and I am still terrified they will find me and my family in Mexico. The authorities are unable to protect us and there is no one who can keep us safe.

19. After I signed the documents, an immigration officer took me back into Mexico and left me and my children to fend for ourselves. Initially, my children and I stayed at a shelter in Tijuana because we had no money to stay

4

anywhere else. I met other families in the shelter who were also not permitted to cross into the United States to apply for asylum.

20. Two weeks ago, the people who run the shelter told me I could not stay there any longer. A lawyer from Al Otro Lado found a place for my children and me to stay temporarily, but we cannot live here much longer. I cannot support myself in Mexico because my children and I must remain in hiding to protect our lives.

21. I still wish to seek asylum inside the United States, where my family and I would be safe, and would like to try again. But I am afraid that if I try again, I will simply be turned away again or be given the same choice by the officers – that if I cross, I will lose my children.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 7, 2017 at Tijuana, Mexico.

*Abigail Doe*
Abigail Doe

**CERTIFICATION**

I, Hilda Gissela Bonilla, declare that I am fluent in the English and Spanish languages. On July 7, 2017, I read the foregoing declaration and orally translated it faithfully and accurately into Spanish in the presence of the declarant. After I completed translating the declaration, the declarant verified that the contents of the foregoing declaration are true and accurate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

5

Case 3:17-cv-02366-BAS-KSC Document 390-11 Filed 01/14/20 PageID.20791 Page 20 of 20
Case 2:17-cv-05111-JFW-JPR Document 98-2 Filed 11/13/17 Page 7 of 7 Page ID #:1396
Page 9 of 9

1  Executed on July 7, 2017 at Tijuana, Mexico.

_____
Hilda Gissela Bonilla

6