MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  mmarmolejo@mayerbrown.com
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  olev@mayerbrown.com
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  smedlock@mayerbrown.com
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:  +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  melissa.crow@splcenter.org
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Chad F. Wolf,[1] *et al.*, <br><br> Defendants. | Case No.:  17-cv-02366-BAS-KSC <br><br> **EXHIBIT 12 TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** <br><br> **Declaration of Dinora Doe in support of Plaintiffs' Motion for Class Certification** |

---

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.401.221.5857

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.56

LATHAM & WATKINS LLP
   Manuel A. Abascal (Bar No. 171301)
   *manny.abascal@lw.com*
   Wayne S. Flick (Bar No. 149525)
   *wayne.s.flick@lw.com*
   James H. Moon (Bar No. 268215)
   *james.moon@lw.com*
   Robin A. Kelley (Bar No. 287696)
   *robin.kelley@lw.com*
   Faraz R. Mohammadi (Bar No. 294497)
   *faraz.mohammadi@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

AMERICAN IMMIGRATION COUNCIL
Melissa Crow (*pro hac vice* pending)
   mcrow@immcouncil.org
Karolina Walters (*pro hac vice* pending)
   kwalters@immcouncil.org
Kathryn Shepherd (*pro hac vice* pending)
   kshepherd@immcouncil.org
1331 G Street, NW, Suite 200
Washington, DC 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy (*pro hac vice* pending)
   bazmy@ccrjustice.org
Ghita Schwarz (*pro hac vice* pending)
   gschwarz@ccrjustice.org
Angelo Guisado (*pro hac vice* pending)
   aguisado@ccrjustice.org
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>Elaine C. Duke, *et al.*,<br><br>　　　　　Defendants. | Case No.: 2:17-cv-5111 JFW (JPRx)<br>Hon. John F. Walter (Courtroom 7A)<br><br>**DECLARATION OF DINORA DOE IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date:　December 11, 2017<br>Hearing Time:　1:30 p.m.<br><br>Pre-Trial Conf.:　July 20, 2018<br>Trial:　　　　　July 31, 2018 |

## DECLARATION OF DINORA DOE

I, Dinora Doe, declare as follows:

1. I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters. Because I am scared for my safety, I am submitting this declaration using a pseudonym so I do not reveal my true identity and my current whereabouts. Further, I have withheld particular dates and names of places because I am afraid that my persecutors may be able to identify me and will harm me or my family as a result.

2. I am a native and citizen of Honduras. I am 39 years old. I have four children. I have one son who is 21 years old, and three daughters who are 19, 18 and 17 years old. I currently reside in a cheap apartment in Tijuana, with my 18-year old daughter, Emilia. The apartment is not safe, and we hope that we can move soon to a place that is more secure. We are not safe here because we are in a dangerous neighborhood. We even sleep together in the same bed because we are so afraid at night.

3. My daughter and I fled Honduras for many reasons. In November 2015, we were targeted by the MS-13 gang, which controlled our neighborhood and wanted to take our house from us and force us to leave. I understood this to mean that they wanted us to leave the country. Our house was in MS-13 territory, and members of the gang wanted to live there. I think they wanted the house for one of their families to live in or they wished to conduct illegal activities there. I was living alone with my middle daughter, Emilia, who was 17 years old at the time. My other children are still living in Honduras with other family members. I separated from my husband about 7 seven years ago.

4. I received several notes from the gang saying that if we did not leave our house, they would kill us. One of the notes told me that we had to leave the house. Another note said that I had to leave the house and that the gang does not

1

give second chances. I quit my job after receiving another note, which said that if we did not leave, my head would hang from the doorway of the front door. After I quit, we fled to another city about 6 hours away by bus, where we remained in hiding.

5. A few weeks later, my daughter and I returned to our home because I had to pick up uniforms which belonged to my employer; if I did not return the uniforms, then I would not be able to collect my last paycheck. When we walked into the house, we found three MS-13 members there. They repeatedly raped my daughter and me in front of each other for three days.

6. After we escaped, we stayed in many different hotels in San Pedro Sula. A friend who lives in the U.S. sent me money so that we could flee the country. By the middle of January 2016, we made it to a town in Southern Mexico, where we spent the next six months living in a shelter. But we were not safe there.

7. One day in July 2016, my daughter and I were at a park in the town with a friend and her baby, when a group of about eight men approached us. I knew that they were members of MS-13 because all of them had MS-13 tattoos. Three of the men talked to us and told us that they knew that we were staying at the shelter in the town. They told us they knew we were from Honduras. They said the name of the man who ran the shelter, which confirmed that they really knew where we were staying and that we were not safe. I was terrified and knew we had to leave Mexico for the United States as soon as possible. We fled the town within a few days.

8. My daughter and I first attempted to seek asylum in the United States in August 2016. We went to the Otay Mesa port of entry in Tijuana. At around 8:00 am, we walked up to the entrance where we encountered a group of men in uniforms. Some of them were standing and some of them were sitting behind a desk. There were about four tall men in dark blue uniforms. I told one of the men

2

that I wanted to ask for asylum in the United States. Right after I said this, he signaled for back up.

9. About five more officers then came to talk to us. One of these new officers told me that there was no asylum in the United States. This same man told us to go back to Mexico. I noticed that there were other people asking for asylum who were also being turned away. I overheard them asking for asylum, but the officers also told them that they could not get asylum in the United States.

10. Officers then escorted us out of the port. I thought that they were going to take us somewhere else so that we could apply for asylum, but then I realized that they were not going to let us in. We decided to wait outside the port.

11. A few hours later, at around 5:00 pm that same afternoon, we approached the port entrance a second time. We walked up to the port, and I again told the officers that we were from Honduras, and that we wanted to apply for asylum. Again, there were a group of officers in dark blue uniforms. I did not recognize any of the officers from earlier that day, so I hoped that we would have better luck and that they would let us apply for asylum this time.

12. One of the officers told me that Central Americans did not understand that there was no asylum in the United States for us. He stated this in perfect Spanish. He told me that if we returned to the port again, they would transfer us to Mexican officials who would deport us back to Honduras. Again, five officers escorted us out of the port. I was becoming hopeless.

13. We waited outside the port. I knew we had to try again because returning to Honduras was not an option for us. I considered trying again that same day. However, we were tired and scared because it was getting dark, so I decided that we should wait until the next morning.

14. While we were waiting outside the port, we saw many Mexican officials around the entrance. I believe they were Mexican policemen based on the uniforms they were wearing and the small Mexican flag badges on their sleeves.

3

15. The next morning, at around 7:00 am, we approached the port at Otay Mesa to try to ask for asylum a third time. I told the first officer I encountered that we wanted to apply for asylum because we were scared for our lives and could not return to Honduras.

16. At the gate, one of the officers tried to separate me from my daughter. They pulled me inside the gate while another officer stayed behind with my daughter. The officers told me that I could pass through the port, but that I had to leave my daughter behind. I told them that I could not leave her behind; I said that she was just a child, and I told them that we had a right to apply for asylum. I told them that what they were doing was illegal.

17. The officers told me that there was no asylum for us, but that I did not seem to understand that. I continued to insist that we had a right to apply for asylum, but they still did not let us in. The officers escorted us out of the port. One of them tried to drag me by the arm.

18. After this, we went to my brother-in-law's house in Tijuana for several days. We could not stay there for very long because there was not enough space for us. We have very little money so we have moved several times since then trying to find somewhere safe to stay.

19. Having been turned away so many times, we have not attempted to ask for asylum in the U.S. again. I am afraid that the officers at the port will reject us again or try to separate me from my daughter.

20. About a month ago, a woman called me and asked me what part of Mexico I was in. I recognized her voice. She said she was calling to let me know that her nephew, who was a gang member in Honduras, wanted to leave. I think she was calling me under false pretenses to help the gangs find out where I was. I am very afraid that gang members will find us if we remain in Mexico.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

4

Executed on July 7, 2017 at Tijuana, Mexico.

*Dinora Doe*
Dinora Doe

## CERTIFICATION

I, Hilda Gissela Bonilla, declare that I am fluent in the English and Spanish languages. On July 7, 2017, I read the foregoing declaration and orally translated it faithfully and accurately into Spanish in the presence of the declarant. After I completed translating the declaration, the declarant verified that the contents of the foregoing declaration are true and accurate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 7, 2017 at Tijuana, Mexico.

Hilda Gissela Bonilla

5