MAYER BROWN LLP
　Matthew H. Marmolejo (CA Bar No. 242964)
　*mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
　Ori Lev (DC Bar No. 452565)
　(*pro hac vice*)
　*olev@mayerbrown.com*
　Stephen M. Medlock (VA Bar No. 78819)
　(*pro hac vice*)
　*smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:　+1.202.263.3000
Facsimile:　+1.202.263.3300

SOUTHERN POVERTY LAW CENTER
　Melissa Crow (DC Bar No. 453487)
　(*pro hac vice*)
　*melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, | Case No.: 17-cv-02366-BAS-KSC |
| Plaintiffs, | |
| v. | **EXHIBIT 13 TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| Chad F. Wolf,[1] *et al.*, | |
| Defendants. | **Declaration of Ingrid Doe in support of Plaintiffs' Motion for Class Certification** |

---

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.401.221.5857

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.56

LATHAM & WATKINS LLP
  Manuel A. Abascal (Bar No. 171301)
  *manny.abascal@lw.com*
  Wayne S. Flick (Bar No. 149525)
  *wayne.s.flick@lw.com*
  James H. Moon (Bar No. 268215)
  *james.moon@lw.com*
  Robin A. Kelley (Bar No. 287696)
  *robin.kelley@lw.com*
  Faraz R. Mohammadi (Bar No. 294497)
  *faraz.mohammadi@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

AMERICAN IMMIGRATION COUNCIL
Melissa Crow (*pro hac vice* pending)
  mcrow@immcouncil.org
Karolina Walters (*pro hac vice* pending)
  kwalters@immcouncil.org
Kathryn Shepherd (*pro hac vice* pending)
  kshepherd@immcouncil.org
1331 G Street, NW, Suite 200
Washington, DC 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy (*pro hac vice* pending)
  bazmy@ccrjustice.org
Ghita Schwarz (*pro hac vice* pending)
  gschwarz@ccrjustice.org
Angelo Guisado (*pro hac vice* pending)
  aguisado@ccrjustice.org
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Elaine C. Duke, *et al.*,<br><br>Defendants. | Case No.: 2:17-cv-5111 JFW (JPRx)<br>Hon. John F. Walter (Courtroom 7A)<br><br>**DECLARATION OF INGRID DOE IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date: December 11, 2017<br>Hearing Time: 1:30 p.m.<br><br>Pre-Trial Conf.: July 20, 2018<br>Trial: July 31, 2018 |

# DECLARATION OF INGRID DOE

I, INGRID DOE, hereby declare as follows:

1. I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters. Out of fear for my life and the lives of my children, I am submitting this declaration using a pseudonym so I do not reveal my true identity and my current whereabouts. Further, I have withheld particular dates and names of places because I am afraid that my persecutors may be able to identify me and will harm me or my family as a result.

2. I am a 24-year old female Honduran national. I have two children. My daughter is three years old, and my son is one year old. I am six months' pregnant, and I am due in September. Until recently, my children and I lived in Honduras.

3. We fled Honduras because we had been harmed in the past and we feared for our lives. If we return to Honduras, my children and I will be killed.

4. In November 2009, members of the 18th Street Gang killed my mother and three siblings by cutting their necks with machetes. I came upon them killing my family in the house. They also threatened to kill me but I was able to escape.

5. The Honduran police took testimony about the murders and concluded that all of the murders were the result of a domestic dispute and took no further action.

6. I fled Honduras because my ex-boyfriend, Carlos, tried to kill my daughter and me. Carlos is the father to my son and also to the child that I am expecting. Carlos abused me for about two years. The abuse began about one year after we started our relationship at the end of 2014.

7. Carlos would rape me regularly, at times in front of my children. The abuse got more severe over the last year. He would heat up a knife and burn my

skin. He beat me with a belt. I have scars on my arms and my legs from the belt buckle and the heated knives. He tried to kill me on numerous occasions. He knew that I had nowhere to hide and that I was powerless.

8. The day before we fled, Carlos tried to kill me again. My daughter was afraid and began to cry. He grabbed her and threw her across the room by the arm. He lifted her into the air by her arm. He asked me if I wanted to see what he could do to my daughter. I cried and implored him to stop hurting her. I told him that he could hurt me but begged him not to hurt my daughter. He threw my daughter on the bed and asked me if I wanted to have the same ending as my mother. He began to beat me. He made me understand that I could not leave him. He beat me in my stomach even though I was pregnant.

9. Carlos pointed the gun at my head. He threatened to kill me if I tried to leave him.

10. We fled Honduras the next morning. I quickly gathered my children, grabbed my documents, and we left. It took us about one week to travel to the border between Guatemala and Mexico. After crossing the Guatemalan border, it took us about four months to travel to Tijuana. We had to stay in Chiapas for about two months because my son had health problems. It was very difficult for us because the doctors in Chiapas refused to treat him because we did not have status to remain in Mexico. Eventually, he was strong enough and we continued our journey by bus to Tijuana, where I planned to ask for asylum in the United States.

11. My children and I arrived in Tijuana around June 10, 2017. We were traveling with another woman and her daughter whom we had met on the journey. This woman had told me about a shelter we could stay in when we arrived in Tijuana. We have been staying at this shelter in Tijuana since we arrived almost one month ago. I do not know how much longer we will be allowed to remain at the shelter.

2

12. We first asked for asylum at the Otay Mesa Port of Entry in Tijuana on the afternoon of June 24, about two weeks after we arrived in Tijuana. Another mother, Rosa, and her three children were with us when we went to the port that day. Rosa and her children are from Michoacan, Mexico. They fled their home due to death threats and violence in Michoacan.

13. When we arrived at the port entrance, Rosa was in front with her three children, and I was behind them, with my two children. Two officers in grey uniforms asked for Rosa's documents. Rosa showed the officers their Mexican identification documents and stated that they were there to ask for asylum. One of the officers then said that there was no asylum at that port and that asylum had ended. Both officers were white and spoke good Spanish. Rosa asked the officers why there was no more asylum. One of the officers responded that a new law had passed which meant no more asylum. Rosa left the port with her children.

14. After Rosa left the port entrance, I approached the same officers. I told them that I wished to speak to an immigration officer. One of the officers asked me why. I told him that I was there to apply for asylum. He then told me to step aside and wait.

15. After about a half hour, the same officer who had told me to wait said that they could not assist me. He told me to go to another port at San Ysidro, and that the officers there could help me.

16. Later that afternoon, we arrived at the port at San Ysidro. We approached the port entrance, where there were three officers, all male. Two of them spoke good Spanish, and one of them did not.

17. I told them that I wished to apply for asylum. One of the officers told me to step to the side. The officers spoke among themselves in English. One of them asked me what I was doing there. Again, I told him that I was there to ask for asylum. The officer told me that there was no asylum there and that I could not pass through the port because I did not have any documents. I told him a third

3

Case 3:17-cv-02366-BAS-KSC Document 390-15 Filed 01/14/20 PageID.20828 Page 45 of 425
Case 2:17-cv-05111-JFW-JPR Document 98-6 Filed 11/13/17 Page 9 of 6 Page ID #:1425
Page 7 of 8

time that I wished to ask for asylum. I told him that I could not go back to my country because we would be killed. The officer responded that there was a new law in the United States that meant no asylum. Again, the officer told me that because I did not have the correct documents, I did not have the right to enter the United States.

18. A different officer then escorted my children and me out of the port and back to Mexico. He led me by my arm. We returned to the shelter where we have been staying ever since.

19. I still wish to seek asylum inside the United States, where my family and I will be safe, and would like to try again. But I am afraid that if I try again, I will simply be turned away again. I have also heard that sometimes U.S. immigration officers separate mothers from their children.

20. We cannot stay near the border much longer because we are only allowed to stay at the shelter temporarily. I am terrified to leave the shelter to look for another place to stay with my children. I know of no other place where I would be able to stay. I am afraid that my ex-partner or members of 18th Street Gang will find us and kill us.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 7, 2017 at Tijuana, Mexico.

*Ingrid Doe*
Ingrid Doe

4

## CERTIFICATION

I, Hilda Gissela Bonilla, declare that I am fluent in the English and Spanish languages. On July 7, 2017, I read the foregoing declaration and orally translated it faithfully and accurately into Spanish in the presence of the declarant. After I completed translating the declaration, the declarant verified that the contents of the foregoing declaration are true and accurate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 7, 2017 at Tijuana, Mexico.

_____
Hilda Gissela Bonilla

5