MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:  +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Chad F. Wolf,[1] *et al.*, <br><br> Defendants. | Case No.: 17-cv-02366-BAS-KSC <br><br> **EXHIBIT 46 TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** <br><br> **Ramos Declaration** |

---

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.401.221.5857

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.56

# DECLARATION OF NICOLE RAMOS

I, Nicole Ramos hereby declare under the penalty of perjury under the laws of the United States of America:

1. I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters.

2. I am the Border Rights Project Director of Al Otro Lado. In this capacity, I am responsible for managing the provision of legal orientation to asylum seekers and other migrants in Tijuana, Mexico. I supervise staff and volunteers, who assist at legal clinics and with human rights monitoring at the Pedwest Port of Entry.

**The Metering Policy Began in 2016**

3. Since December 2015 I have accompanied asylum seekers to the ports of entries in Tijuana and observed patterns in how U.S. Customs and Border Protection ("CBP") officers engage with asylum seekers seeking access to the asylum process by presenting themselves to U.S. immigration authorities at the port of entry.

4. In June 2016, the CBP and Mexican authorities instituted the first phase of metering in response to the arrival of the Haitian Exodus. Over an

approximately six month period, more than 15,000 Haitians migrated to Tijuana with the intent to seek protection in the United States.

5. During the first iteration of metering, asylum seekers were expected to register with Grupo Beta, a service run by the Mexican Government's National Institute of Migration ("INM"). Officials from Grupo Beta would communicate with the main shelters in Tijuana to inform the shelter administrators how many asylum seekers could be processed, and the asylum seekers could travel back to the port of entry to be processed. However, the process was disorderly. Asylum seekers who did not stay at a participating shelter had no information as to how the process functioned.

**Mexican Immigration Officials Changed Their Conduct After CBP Issued Its Previously-Secret Metering Policy**

6. I understand from the Government's filings in this case that CBP issued a formal metering policy on April 27, 2018. I am not aware of CBP or any other agency of the U.S. Government communicating the existence of this policy to asylum seekers approaching ports of entry ("POEs") on the U.S.-Mexico border. I first became aware of this policy was after an attorney for the Government in this matter disclosed the existence of the metering policy to the Court during oral argument on the Government's motion to dismiss in this litigation on May 10, 2019.

7. On May 6, 2018, Grupo Beta formalized a waiting list/metering system in Tijuana, Mexico that has continued to this day. Each morning starting around 7:00 AM, a group of asylum seekers who are on the list and Grupo Beta gather on the Mexican side of the Pedwest Port of Entry with a notebook. New asylum seekers who arrive at the Pedwest Port of Entry are added to the list. CBP communicates its daily capacity to Grupo Beta, which uses that information to call the appropriate numbers from the top of the list. Grupo Beta then loads the asylum seekers into vans and transports them to CBP for processing.

**The Waitlist in Tijuana, Mexico is Underinclusive**

8. Grupo Beta sets the rules for who can be added to the list in Tijuana. The rules require that each asylum seeker present identification, which has prevented asylum seekers who lack identification from being added to the list. The identification requirement appears to disproportionately affect Black migrants—their documents are often stolen on their perilous journeys to the United States border or lost in the process of fleeing dangers such as violence from state- and non-state actors or natural predators. In addition, the document requirements frequently change for Black migrants; on some days Grupo Beta requires original travel permission documents from México and original identification documents from Black asylum seekers, and then on other days, only requires that Black asylum seekers present copies. Transgender migrants whose gender presentation

does not match their identification documents are also, at times, prevented from adding their names to the list.

9. The rules instituted by Grupo Beta in Tijuana also require that no unaccompanied minors can be added to the list without a parent or guardian present. Ostensibly, unaccompanied minors should be able to present themselves at any US port of entry, but they are frequently stopped by officials on the Mexican side as they try to approach, detained, and transferred to the custody of the Mexican Department for Children and Families (commonly known as "DIF"). Once in DIF custody, unaccompanied children do not have access to outside counsel and are often prevented from seeking protection in the United States. Central American children in DIF custody are often deported back to their home countries by the Mexican government. Those unaccompanied children who do manage to reach a CBP official at the port of entry are often told by CBP officials that they must add their names to the metering list on the Mexican side. CBP officials often call Mexican authorities to detain unaccompanied children after they are turned away from the port of entry.

10. Our organization has received numerous reports of corruption of the list administered by Grupo Beta in Tijuana. In November of 2018, one of the list managers reported to our organization that another list manager was moving asylum seekers up on the list in exchange for money or sexual favors. The list

manager also told us that there were several asylum seekers who paid to have their names added to the list while still in South America.

**The Metering Policy Exposes Asylum Seekers to Violence in Mexico**

11. As of today, there are over 10,000 asylum seekers on the metering waitlist in Tijuana. Our office engages in human rights monitoring at the Pedwest and San Ysidro Ports of Entry every day and has observed a precipitous drop in the average daily number of asylum seekers admitted for processing over the past few months. Specifically, the reduction began on June 16, 2018, thirty days before the "Asylum Ban" was promulgated. From June 16, 2018 to July 15, 2018, CBP/Grupo Beta admitted only 332 people. By contrast, in the 30 days prior, they'd admitted 1,041 people, which was still lower than the monthly average of 1,200 admitted from January through May 15, 2019. Through all of early 2019, CBP/Grupo Beta had admitted asylum seekers from the waitlist on all but three days, New Year's Day, Easter, and World Refugee Day. Aside from those days, CBP admitted between 20 and 80 asylum seekers off of the list each day, with a daily average of 40 admitted per day. In the 30 days before the "Asylum Ban" was promulgated, there were zero asylum seekers processed by CBP on eleven of the thirty days, and 13 days with admissions in the single digits, for an average of 5-6

asylum seekers per day during that period. CBP sped up processing again once the "Asylum Ban" was announced.

12. Given the low daily average of asylum seekers processed at the Pedwest Port of Entry, asylum seekers currently adding themselves to the list can expect to wait nine or more months in Tijuana until they are able to be processed. Because of the long wait times, at least one-third of the asylum seekers on the list won't be present when their numbers are called, and fewer asylum seekers are attempting to add their numbers to the list now than in the past.

13. Due to the long wait for asylum seekers on the metering waitlist, asylum seekers stuck in Tijuana have been victims of sexual assault, aggravated assaults, kidnapping, extortion, and trafficking by criminal groups. Al Otro Lado has received numerous reports from asylum seekers who have been threatened by smugglers. Smugglers understand that many asylum seekers have family in the United States who could pay smuggling fees. Asylum seekers waiting to be processed are forced to accept these services and obtain payment from relatives in the United States. We have also received reports from waiting asylum seekers who have been kidnapped and trafficked by criminal groups. Migrants are reluctant to report threats or victimization to Mexican law enforcement officials due to their fear of official corruption or deportation.

I declare under penalty of perjury under the laws of the United States of

America that the things described above are true and correct.

Executed on September 25, 2019 at Tijuana, Mexico.

_____          _____September 25, 2017_____
Nicole Ramos                                                          September 25, 2019