MAYER BROWN LLP
Matthew H. Marmolejo (CA Bar No. 242964)
*mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
Ori Lev (DC Bar No. 452565)
(*pro hac vice*)
*olev@mayerbrown.com*
Stephen M. Medlock (VA Bar No. 78819)
(*pro hac vice*)
*smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: +1.202.263.3000
Facsimile: +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
Melissa Crow (DC Bar No. 453487)
(*pro hac vice*)
*melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

Al Otro Lado, Inc., *et al.*,

Plaintiffs,

v.

Chad F. Wolf,[1] *et al.*,

Defendants.

Case No.: 17-cv-02366-BAS-KSC

**EXHIBIT 97 TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**Declaration of Maria Doe**

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
*bazmy@ccrjustice.org*
Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
*gschwarz@ccrjustice.org*
Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
*aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
*sarah.rich@splcenter.org*
Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
*rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.401.221.5857

AMERICAN IMMIGRATION COUNCIL
Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
*kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.56

Maria Doe



**DECLARATION OF [redacted]**

Maria Doe

I, [redacted] hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters.

2. I am a citizen of Guatemala. I am 36 years old. I have two children; one is 7, and the other is 12. I was married to a Mexican, and I am a permanent resident of Mexico. My children were born in Mexico.

3. I lived in Chiapas, Mexico for seven years with my husband and children. My husband became involved with cartels and became very abusive toward me and the children. When I found out that he was involved with cartels, I left him. After I left my husband, the cartel he has been associated with started searching for me and my children. We searched for a safe place to live in Mexico or Guatemala for about two years, but wherever we went the cartels found us and came after us. Now he is involved with a new cartel, and is threatening us.

4. In September 2018, I traveled with my children to Nuevo Laredo, Mexico. I intended to cross the bridge and ask for asylum in the United States. On September 10, 2018, I went to the port of entry in Nuevo Laredo with my two kids. It was around 8:00 p.m. After paying the toll to access the bridge, when we approached the midpoint I was stopped by two United States immigration officials. They asked to see my identification. I showed them my identification and I told them that I wished to seek asylum in the United States They told me to wait on the Mexican side of the bridge for my turn and they would call me. I waited just a few minutes and then two Mexican officials walked toward me from the Mexican side of the bridge.

5. The Mexican officials told me that the United States officials would

not let me cross the bridge, but if I paid the Mexican officials $1500, or $500 for each of the three of us, they would arrange for us to cross the bridge. I did not have the money. Instead, I travelled Reynosa, Mexico to try to cross a different bridge to apply for asylum in the United States.

6. After I arrived in Reynosa, I ended up staying at a shelter near the border because the situation in Reynosa and all of Tamaulipas state is incredibly dangerous. We did not feel safe immediately going to the bridge until we knew what the situation was. While I was in the shelter, I met with an American lawyer, Jennifer Harbury, who agreed to help me present for asylum at the Reynosa-Hidalgo Port of Entry.

7. My children and I walked up to the bridge in Reynosa on September 19, 2018 in the late afternoon. I was accompanied by my American lawyer as well. I had my Mexican permanent residence card and my children's Mexican birth certificates. We were at the turnstile to walk onto the bridge, but only took a few steps before a Mexican immigration official demanded to see my documents. I gave him our identification documents. The Mexican officials started screaming at the top of his lungs, saying that I was abusing my Mexican residence for an illegal purpose by trying to cross the bridge to ask for asylum. He warned that he would rip up my identity documents if I continued to "abuse" my permanent residence in Mexico. His manner was very verbally abusive and many people were watching. Despite me and my lawyer arguing that I had the right to apply for asylum, I was afraid that the Mexican official would hurt us or destroy our documents and deport us to Guatemala, so we left the bridge.

8. After we left the bridge, we returned to the same shelter as before. My children and I stayed at the shelter for the next two weeks, afraid to leave because of how dangerous it was, while my attorney tried to resolve the problem. After the delay, I resolved to present myself and apply for asylum a second time.

9. My children and I walked up to the bridge in Reynosa again on October 9, 2018 to apply for asylum. We were again accompanied by my American lawyer. We paid quarters and entered the turnstile to walk onto the bridge. We walked to the middle of the bridge where U.S. officials check people's documents. We started to tell them that we wanted asylum, and at that moment a Mexican immigration officer grabbed my arm and demanded to see my papers. I told the Mexican officer that I was a legal resident with two Mexican citizen children and I showed him our papers. He then told me that my Mexican residency permit does not allow me to go to the United States. This was a different officer than the one who had told me this the first time.

10. The officer told me that I had to go to the station on the Mexican side of the border, and I argued with him that I had a right to leave Mexico and seek asylum in the United States. My lawyer said the same thing. He then called for backup, and two more officers arrived from the Mexican side. When we tried to argue with them, they ordered us to go with them.

11. During that time, my lawyer from Texas was with me and she spoke with the U.S. officials standing at the bridge and explained that I wanted to apply for asylum, and that my children and I were in danger. The U.S. officials were standing just a few feet away from my children and me. They heard everything that the Mexican officials were saying to us, but they did not intervene even though my American lawyer told them that I had a right to apply for asylum. The American officials said that what was happening had nothing to do with them, that it was a Mexican action. Even though we repeatedly asked to seek asylum, they refused to help us.

12. The Mexican officials took me to an office of Mexican immigration at the foot of the bridge. They separated me from my children and my lawyer and took me into a small room on the side. They told me that if I came back to this

Port of Entry, they would revoke my Mexican residency and that possibly I could try another port of entry if I wanted to cross to the United States, but I could not cross in Reynosa.

13. I am terrified of the cartels, and I know that my children and I are not safe staying in Mexico. Since I came to Reynosa I have received many phone calls from blocked numbers and I believe the cartels are trying to track my location. Two days ago my ex-husband called me and threatened me. I am afraid for my life. I want to return to a port of entry to apply for asylum but I am afraid that U.S. officials will not let me apply and that Mexican officials will deport me to Guatemala, where I will not be safe.

14. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 10, 2018 at Reynosa, Mexico.



Maria Doe

CERTIFICATION

I, Jennifer K. Harbury, declare that I am fluent in the English and Spanish languages.

On Oct. 10, 2018, I read the foregoing declaration and orally translated it faithfully and accurately into Spanish in the presence of the declarant. After I completed translating the declaration, the declarant verified that the contents of the foregoing declaration are true and accurate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on Oct. 10, 2018 at Reynosa, Mexico.

[signature]
Signature

10 Oct 2018
Date

Jennifer K. Harbury
Printed Name