1 | MAYER BROWN LLP
2 | Matthew H. Marmolejo (CA Bar No. 242964)
*mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
Ori Lev (DC Bar No. 452565)
(*pro hac vice*)
*olev@mayerbrown.com*
Stephen M. Medlock (VA Bar No. 78819)
(*pro hac vice*)
*smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: +1.202.263.3000
Facsimile: +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
Melissa Crow (DC Bar No. 453487)
(*pro hac vice*)
*melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Chad F. Wolf,[1] *et al.*,<br><br>Defendants. | Case No.: 17-cv-02366-BAS-KSC<br><br>**EXHIBIT 99 TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**Declaration of César Doe** |

---

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
 Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
 *bazmy@ccrjustice.org*
 Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
 *gschwarz@ccrjustice.org*
 Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
 *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
 Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
 *sarah.rich@splcenter.org*
 Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
 *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.401.221.5857

AMERICAN IMMIGRATION COUNCIL
 Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
 *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.56

**DECLARATION OF** Cesar Doe

I, Cesar Doe hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters.

2. My name is Cesar Doe. I was born on ▮ in Honduras. I am currently staying in a shelter in Tijuana, Mexico.

3. I fled Honduras in June 2018. The 18th Street gang, a notorious gang in my country that controls my neighborhood, demanded multiple times that I join the gang on threat of death. I refused. Later in June, multiple members of the gang kidnapped me and kept me for a day in an abandoned house in the mountains. While they were distracted, I was able to escape. I was very scared and the next day after I escaped, I fled Honduras.

4. I reached Tijuana on August 1, 2018. I went to the Port of Entry in order to apply for asylum in the United States. Before I was able to see a U.S. immigration officer, in the plaza adjacent to the bridge that leads to the Port of Entry known as "Chapparal," I was approached by individuals whom I later learned belonged to a group known as "Grupo Beta." Grupo Beta informed me

---

[1] To protect my life and the lives of my family members, I am proceeding under initials.

1

that I would need to go through them to apply for asylum. They explained that they would put me on a list and give me a number. They told me that once my number was called, I could proceed to the Port of Entry and apply for asylum.

5. Soon thereafter, Grupo Beta began physically organizing a number of individuals who also appeared intent on applying for asylum. Grupo Beta organized us into three groups: Group One consisted of individuals from Central American countries; Group Two consisted of African-appearing individuals; and Group Three consisted of Mexicans. I did not understand why we were segregated in this manner. I waited for about a half hour in Group One thinking that we would proceed to the Port of Entry sometime soon. When nothing happened, I asked a Grupo Beta official if I could leave. He said that I did not have permission to leave and that I had to go back and wait with my group.

6. About 15 minutes later, a Mexican immigration officer came. He started telling us that we needed a paper to present ourselves to U.S. officials and ask for asylum. He said that they would give us this paper at a detention center. Then they took 15 of us from Group One, Central Americans, and about 4 or 5 from Group Two, African-appearing people, to 4 vans that were parked in the plaza of "El Chapparral". I asked the officer why we needed to go on the van and to the

detention center. He said it was necessary for us to go there to get this paper so we can ask for political asylum in the US. They put us in 3 of the 4 vans and drove us about 5 kms from "El Chapparral".

7. When we arrived at the detention center, they asked if we had permission to be in Mexico and they asked us our names and dates of birth. When we said we did not have permission to be in Mexico they locked us up. There were four cells, one for minors, one for women and two for men. As soon as I got to the detention center, I asked for permission to make a phone call. I called the shelter where I had been staying in Tijuana to ask if they could help me. When I started to tell the shelter worker what had happened, a detention officer came and hung the phone up. I did not have the opportunity to tell the person at the shelter where I was. I asked for another phone call, but they would not allow it.

8. Two days later while I was still incarcerated in the detention center, a Mexican lawyer came to see us. I asked what was going to happen to us. The lawyer said that we were going to be deported to our countries. At that time, I learned that the Mexican officials planned to deport me to Honduras. They called the Honduran Consulate by phone to tell them I was detained. They asked me to get on the phone and tell them my name, date of birth and other details, which I

did, and the consular official confirmed that I would be sent back. I was very scared.

9. I was detained for around twelve days when the Mexican lawyer came back and told me that a human rights group had made it possible for me to leave the detention center and go back to the shelter in Tijuana. Somehow, thankfully, they were able to secure my release. I have been staying at the shelter ever since.

10. About three days after I left detention, I went with an employee of the organization Al Otro Lado to try to put my name on the waitlist for asylum seekers waiting to speak with U.S. officials. When I arrived at the plaza, I spoke to a member of Grupo Beta. He seemed to be the person who was in charge of registering me for a number. The Grupo Beta officer wore an orange shirt with the Grupo Beta logo. He was located in the plaza adjacent to the bridge that leads to the port of entry. In order to get on the list, I had to tell him my age and show him a copy of my birth certificate. I was given the number 740.

11. A few weeks later, during early September 2018, I returned to the port of entry to try again to present myself to the U.S. immigration officers to ask for political asylum. I wanted to try again because I did not feel safe. I was followed by a group of gang members in Mexicali before arriving to Tijuana.

There appears to be even more gang members here in Tijuana and this is why I am afraid to leave the shelter. I also fear being deported by Mexican Immigration. They have already tried to deport me on one occasion, and on another occasion the officers attempted to take me into custody for not having legal status in Mexico. I wanted to see if I could be processed before the date that my number on the waitlist was to be called. I was living like a prisoner in the shelter because of my fear of being on the street. I went with two female lawyers from the organization, Al Otro Lado. The attorneys spoke to the U.S. immigration officers and told them that I wanted to apply for political asylum. The officers did not speak to me. They only spoke to the lawyers. They told the lawyers that I could not seek political asylum, and that they would not accept me. I left with the two lawyers and returned to the shelter.

12. A few weeks later, toward the end of September, 2018, I returned to the port of entry because it was the day that my number on the waitlist was to be called, and I believed that finally I would be allowed to present my case to the U.S. officials. When I arrived at the port of entry, a group of officers from Grupo Beta began asking me many questions. I was approached by three male Grupo Beta officers. I knew that they were Grupo Beta officers because they wore orange vests

that were marked with their logo. They told me that I did not have sufficient documentation to prove my identity. They accused me of being a minor although I presented a photocopy of my birth certificate that showed I was eighteen years old. The officers asked me if I had legal documents to prove that I had permission from Mexican Immigration to be present in Mexico, and I responded that I did not. The officers then threatened to call Mexican Immigration and to have me picked up by the child protective services agency, the "DIF."

13. When the Grupo Beta officers found out that I did not have legal documents to reside in Mexico, they began to push me toward a corner of the plaza while they called Mexican Immigration. I was terrified of being sent back to the detention center and being deported to Honduras. Fortunately, the same employee of Al Otro Lado who helped me to put my name on the waitlist was at the port of entry while this was happening, and he intervened on my behalf. He told the Grupo Beta officers that I was an adult, and that they should let me join the asylum seekers who were being processed. The Grupo Beta officers told him the same thing that they told me, that my birth certificate was not sufficient proof to show my age and that I was illegal in Mexico. To prevent me from being taken into custody, the Al Otro Lado employee escorted me away from the Grupo Beta

officers and helped me get back to the shelter.

14. I still wish to apply for asylum in the United States. I do not feel safe in Mexico, and I am worried that the 18th Street gang can track me here. I am too afraid to go back to Grupo Beta to get on the list to apply for asylum. I fear that they will just call Mexican Immigration and have me deported to Honduras, as they have already tried to do. I just want to feel safe. I hope the United States can offer me protection.

15. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 11, 2018 at Tijuana, Mexico.

███ _____

███ esar Doe

## CERTIFICATION

I, RIGOBERTO MARTINEZ AGUILAR, declare that I am fluent in the English and Spanish languages.

On October, 11, 2018, I read the foregoing declaration and orally translated it faithfully and accurately into Spanish in the presence of the declarant. After I

1
2  completed translating the declaration, the declarant verified that the contents of the
3  foregoing declaration are true and accurate.
4       I declare under penalty of perjury under the laws of the United States of
5  America that the foregoing is true and correct.
6       Executed on October 11, 2018 at Tijuana, Mexico.
7  RIGOBERTO MARTINEZ AGUILAR                October 8, 2018
8
9
10
11
12
13
14
15
16
17
18