JOSEPH H. HUNT
Assistant Attorney General, Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
ARI NAZAROV (CT 414491)
DHRUMAN Y. SAMPAT (NJ 270892018)
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorneys
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | Hon. Cynthia A. Bashant |
| v. | **Exhibit 28 to Defendants' Opposition to Plaintiffs' Motion for Class Certification** |
| Chad F. WOLF, Acting Secretary of Homeland Security, *et al.*, in their official capacities, | |
| *Defendants* | Portions Filed Under Seal |

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

(San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>CHAD F. WOLF, Acting Secretary, US Department of Homeland Security, *et al.*,<br><br>*Defendants* | Case No. 3:17-cv-02366-BAS-KSC |

### DECLARATION OF RODNEY H. HARRIS

I, Rodney H. Harris, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby declare as follows relating to the above-captioned matter.

1. I am currently the Deputy Assistant Director of Field Operations, Border Security, Laredo Field Office (LFO), Office of Field Operations (OFO), U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS). Prior to serving in this role, I was a Supervisory Program Manager for Border Security at the Laredo Field Office. I began my career as a Customs Inspector in Laredo, TX.

2. I make this declaration to explain the factors relevant to determining the capacity of the Laredo and Hidalgo POEs to process aliens without documents sufficient for lawful entry to the United States, as well as explain the basis for, and purpose of, the Laredo Field Office Contingency Plan.

3. The capacity of the Laredo and Hidalgo POEs to process aliens without documents sufficient for lawful entry to the United States is dependent, among other factors, upon there being space in the short-term hold rooms at each of those respective ports to hold such aliens pending their transfer to U.S. Immigration and Customs Enforcement (ICE), the U.S. Department of Health

1

and Human Services (HHS), or another federal agency. The short-term passenger-processing hold rooms at the Laredo POE have an aggregate designated capacity of approximately 120. The short-term passenger-processing hold rooms at the Hidalgo POE have an aggregate designated capacity of approximately 40. However, these short-term hold rooms are not used solely to hold individuals without documents sufficient for lawful entry to the United States. These short-term hold rooms are used to detain *all* inadmissible and deportable aliens pending their processing and, where appropriate, their transfer to ICE, HHS, or other federal agencies, as well as all individuals subject to criminal prosecution awaiting transfer to criminal custody. Thus, the number of individuals in CBP custody at the Laredo and Hidalgo POEs impacts the space that OFO has at each of those POEs to process additional individuals without documents sufficient for lawful entry.

4. While the designated capacity of these short-term hold rooms generally sets an upper ceiling for CBP's holding capacity purposes, CBP's actual capacity to hold individuals in its short-term hold rooms at the Laredo and Hidalgo POEs is generally lower than the designated capacity at any given time. CBP's actual capacity to hold individuals in its short-term hold rooms at the Laredo and Hidalgo POEs is impacted by various factors.

5. The primary factor affecting capacity in CBP's short-term hold rooms at the Laredo and Hidalgo POEs is throughput. CBP attempts to process all individuals in CBP custody as expeditiously as possible and to facilitate their transfer to another agency, as appropriate, without negating OFO's overall mission or compromising the safety of individuals within its custody. However, CBP does not have control over the speed at which other agencies assume custody of detainees. That speed directly impacts whether CBP has space to process additional individuals who are subject to detention. Depending on these agencies' movement of individuals, or lack thereof, CBP's short-term hold rooms may remain at or near capacity even without CBP processing additional individuals.

6. CBP's short-term hold rooms were not intended to be used for long-term detentions. As in-custody times increase due to factors beyond CBP's control, CBP may deem it necessary to take steps to manage the flow of aliens without documents sufficient for lawful entry into the port of entry, in order to ensure that the short-term hold rooms remain safe and sanitary for those already in custody.

7. Additionally, the actual capacity of CBP's short-term hold rooms is impacted by the characteristics and demographics of individuals in custody. For example, CBP makes efforts

to keep family units together in its short-term hold rooms. However, the demographics of a particular family unit may impact the amount of space that CBP has for other individuals. A family unit consisting of a father and his teenage daughter cannot, in general, be held with a family unit consisting of a mother and her teenage son, as CBP policy requires that adult males and females generally be held separately. Thus, each family unit would generally require a short-term hold room all to themselves, unless CBP had another family unit consisting of similar demographics. Additionally, it is CBP policy to hold unaccompanied alien children (UACs) separately from unrelated adults. Accordingly, there may be instances where a short-term hold room is deemed by CBP to be at capacity when it is being utilized by a single UAC or one family unit consisting of two individuals, regardless of that short-term hold room's designated holding capacity. Similarly, if an individual is determined to be a risk to others, for instance, because s/he has a significant medical condition such as a contagious disease, or a criminal history or known gang affiliations, that individual may require an entire short-term hold room to him/herself.

8. Similarly, pursuant to CBP policy, single adult males are held separately from single adult females. Accordingly, there may be an instance in which a short-term hold room is deemed to be at capacity when it is occupied by one single adult male, regardless of that short-term hold room's designated capacity, if the remainder of individuals in custody are family units or single adult females.

9. In addition, the capacity of the Laredo and Hidalgo POEs to inspect and process aliens without documents sufficient for lawful entry is tied to the daily operations at the POEs, and the availability of resources to respond to operational needs, which are complex and ever-changing. CBP's OFO is the largest component in CBP and is responsible for border security—including anti-terrorism, immigration, anti-smuggling, trade compliance, and agriculture protection—while simultaneously facilitating the lawful trade and travel at U.S. ports of entry that is critical to our Nation's economy, and while managing a finite set of resources and personnel. OFO managers at all POEs must continually assess mission needs, initiatives, priorities, and trends, and then determine how best to allocate and, at times, re-allocate their resources. Those allocations and re-allocations of resources may impact CBP's holding capacity at a particular POE. For instance, many of the illicit narcotics available in the United States are moved through, between, and around land border POEs along the Southwest Border. To address this threat, many resources at Southwest Border POEs are assigned to enforcement activities focusing on the interdiction of

3

narcotics and other threats to national security. A spike in arrests at a particular POE may mean that additional space in CBP's short-term hold rooms is needed for individuals subject to criminal prosecution, and that fewer officers are available for inspection and processing of other individuals.

10. Specifically, the Laredo POE is one of the largest ports in the nation, and in fiscal year 2017, processed over 4.9 million passenger vehicles, over 3.1 million pedestrians, over 2.5 million cargo containers and railcars. The Hidalgo POE is also a very busy port. In fiscal year 2017, for instance, the Hidalgo POE processed over 12 million passengers. OFO managers at the Laredo and Hidalgo POEs must balance their resources to ensure that they are able to process this high volume of pedestrian, vehicle, and commercial traffic in a timely manner, as such expeditious processing is critical to U.S. economic security and the health of local economies. For instance, an increase in passenger or commercial vehicle volume may require the redirection of resources from other areas of the port's operations, including the processing of individuals who arrive without documents sufficient for lawful entry. Managers must regularly account for the magnitude and diversity of operations at each of these POEs, and strategically allocate, and at times, re-allocate finite resources to ensure that mission needs, initiatives, and priorities are met.

11. The Laredo Field Office Contingency Plan, which I understand has been filed with court, is a contingency plan designed to ensure that the Laredo Field Office has the necessary resources to address a possible influx of unaccompanied alien children, family units, or other alien populations. The Contingency Plan contains specific operational plans to handle possible mass migration influxes for all ports within the Laredo Field Office, which includes the ports of Brownsville, Del Rio, Eagle Pass, Laredo, Hidalgo, Rio Grande City, Progresso, and Roma. The Contingency Plan addresses not only issues that may arise across the entire field office, but also contains specific port operational plans. The Contingency Plan generally outlines how the Laredo Field Office would reorganize its resources in order to address an urgent and emergent issue. It includes how the Field Office will ensure that the inspection process remains secure, as well as the particular thresholds at which specific ports will seek additional assistance.

12. [redacted]

4



I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 10th day of February, 2020.

_____
Rodney H. Harris
Deputy Assistant Director of Field Operations- Border Security
Laredo Field Operations
Office of Field Operations
U.S. Customs and Border Protection