# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, *et al.*,<br>*Plaintiffs*,<br><br>v.<br><br>Chad Wolf, *et al.*,<br>*Defendants*. | )<br>)<br>)<br>)<br>)  No. 3:17-cv-02366-BAS-KSC<br>)<br>)<br>)<br>) |

## DECLARATION OF SCOTT FALK

I, Scott Falk, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows, relating to the above-captioned matter:

1. I am the Chief Counsel for U.S. Customs and Border Protection (CBP). I have held this position since 2013.

2. In my role as Chief Counsel, I am the principal legal advisor for the Commissioner of CBP. Within CBP's Office of Chief Counsel (OCC), I manage a staff of approximately 317 attorneys in 31 offices nationwide. Currently, my staff are handling nearly 20,000 ongoing, distinct legal matters.

3. I am familiar with *Al Otro Lado v. Wolf*, 3:17-cv-02366, as approximately 120 attorneys in my office, as well as several paralegals, have already devoted substantial time to document production in this case. Between September 9, 2019 and December 20, 2019, attorneys from across the country spent nearly 10,000 hours reviewing approximately 530,000 documents to get them ready for production. This includes review of nearly 20,000 documents over the course of the Thanksgiving holiday.

1

4. I understand that, of the Defendants' total production in this case, the Department of Justice (DOJ) expects that there will be 56,360 documents that are subject to a privilege of some kind, with the majority of these documents having been produced by CBP. I understand that the entire privilege log in this production is due on February 18, 2020. I understand that DOJ has provided plaintiffs with the privilege logs for Volumes 1-8 of the government's production, and that Volume 9 is expected to be provided shortly. I also understand that there are approximately 50,000 documents left for privilege log review in DOJ's Relativity system.

5. CBP currently has a team of approximately fifty attorneys nationwide reviewing these documents for purposes of the privilege log. However, given current resource constraints, CBP is unable to meet the current deadline. I provide this declaration to explain current resource constraints within CBP OCC, and why an extension of this deadline is needed.

6. As an initial matter, I understand that Relativity experienced an outage lasting from the morning of Wednesday, February 5, 2020 through approximately 8:30 pm on Thursday, February 6, 2020. During this outage, external users of the system (meaning users outside of DOJ) were not able to access the system. Thus, the attorneys on my team were not able to conduct any review of the privilege log documents during that time.

7. Additionally, CBP OCC was not able to marshal a significant team of attorneys to review the privilege log until very recently, given the number of other critical legal matters currently being handled by our attorneys across the country. As I indicated in my previous declaration, any time that an attorney in my office must spend on document review is time that he or she must divert from other critical job duties. Over the past

2

several months, CBP OCC has been engaged in document discovery in several other large-scale class actions; working on 122 open FOIA cases; working on other aspects of significant litigation not in discovery; and providing critical and time-sensitive legal advice to the Agency on issues of national importance, such as the recent 2019 novel coronavirus outbreak and response. Due to the importance of this work, CBP OCC has not had the resources to devote to creating a privilege log review team until very recently.

8. Three attorneys in my office are currently engaged in document discovery in *Jacobsen v. DHS*, (D. Ariz., 4:14-cv-02485). Two additional attorneys were also involved in the initial round of discovery. This case involves twenty-nine custodians, and there are currently over 156,000 documents and videos currently ready for review. It is expected that there may be approximately 2,000 additional documents to review following application of additional search terms. To date, 2,568 documents and videos have been produced, and the team is working to complete production within the next few weeks. Additionally, the litigation team expects that there will be approximately twenty-two depositions to be taken over the course of the next two to three months, with the first one scheduled for February 20, 2020.

9. Additionally, twelve attorneys in my office are engaged in discovery in *Askins v. DHS* (S.D. Cal., 3:12-cv-2600), which involves reviewing approximately 13,800 documents. The team has a current deadline to produce approximately 2,000 documents by February 18, 2020. Another three attorneys are currently engaged in the beginning stages of document discovery in *Ms. JP v. Barr*, (C.D. Cal., 2:18-cv-06081). Discovery in this case will involve the collection of documents from twenty-six custodians, with a date range of January 1, 2017, through January 10, 2019.

10. Even outside of the discovery context, attorneys in my office are currently handling over 3,000 open litigation-related matters, many of which involve a significant expenditure of time and resources. For example, CBP and DOJ recently concluded a two-week trial in *Doe v. Wolf*, (D. Ariz., 4:15-cv-00250), in which three attorneys from my office assisted DOJ in all aspects of the trial, including preparing nine agency witnesses and two expert witnesses, attending every day of the trial, and working closely with DOJ on litigation strategy. The OCC trial team worked through the Martin Luther King, Jr. holiday weekend preparing witnesses with DOJ; arranging for subject matter experts in Washington D.C. to be available to assist CBP witnesses if the topics at trial needed additional expertise; coordinating logistics to assure that CBP witnesses knew where to be and when, based on DOJ's changing needs; and ensuring that CBP witnesses were adequately prepared for the trial and their testimony. My office is also engaged in defending several other high-profile cases in litigation, including but not limited to *Ms. L v. ICE* (S.D. Cal., 3:18-cv-00428), *Flores v. Barr* (C.D. Cal., 2:85-cv-4544), *Las Americas Immigrant Advocacy Center v. Wolf*, (D.D.C., 1:19-cv-3640), *Cristian Doe v. Wolf*, (S.D. Cal., 3:19-cv-02119), *Alasaad v. McAleenan*, (D. Mass. 1:17-cv-11730), *El Ali v. Barr* (D. Md. 8:18-cv-2415), *Elhady v. Kable* (E.D. Va. 1:16-cv-375); and *Innovation Law Lab v. McAleenan*, (9th Cir. 19-15716) (in addition to approximately 25 total cases challenging the government's terrorist watchlist).

11. There are also 136 Federal Tort Claims Act claims related to family separation around the country, all of which must be handled by attorneys in my office. The attorneys in my office also serve as agency counsel for litigation assistance to DOJ in defense of other federal tort, *Bivens*, immigration and trade actions against the agency or its employees;

for affirmative litigation in which the government is seeking duties, penalties, liquidated damages, or forfeiture of property in cases before federal district courts and the Court of International Trade; and for appeals in non-CBP cases that nevertheless impact CBP's mission and operations.

12. Additionally, we have a team of approximately eight attorneys nationwide handling this litigation, including approximately three who manage all of the day-to-day aspects of this case. For those three attorneys in particular, managing this case takes up approximately 80 to 90 percent of their daily workload, on average. Since December, the attorneys handling this case have assisted DOJ in defending five depositions and responding to Plaintiffs' Fourth Set of Interrogatories, and have worked on all aspects of the responses to Plaintiffs' requests for a temporary restraining order (TRO) and a preliminary injunction (PI). Preparing a response to Plaintiffs' Interrogatories requires a substantial amount of work, as the attorneys must work closely with CBP's Office of Field Operations (OFO) in all four Field Offices along the southwest border to obtain the relevant factual information, at a sufficient level of detail, to provide a appropriate responses. Additionally, responding to Plaintiffs' PI and TRO has required the preparation of multiple declarations to support the filing of various exhibits under seal. Preparing such declarations involves considerable review of the documents, as well as extensive coordination and review of the language of the declaration with the declarant. This team of attorneys is working closely with DOJ to respond to Plaintiffs' motion for class certification in this case, preparing for an additional 30(b)(6) deposition, and assessing the extensive new discovery requests that Plaintiffs recently served in this case (including an additional 114 new Requests for Production).

13. Additionally, approximately thirty CBP attorneys across the country are designated as Special Assistant United States Attorneys (SAUSAs) and are responsible for appearing daily on behalf of the government in federal unlawful entry prosecutions and in certain border felony prosecution cases, whether on a full-time or part-time basis, including in the Southern District of California, District of Arizona, Western District of Texas, and Southern District of Texas. In FY19, CBP SAUSAs obtained over 41,000 criminal convictions for violations of 8 U.S.C. §§ 1325, 1326. In FY20, to date, they have obtained over 8,500 convictions.

14. All of this litigation work is in in addition to the 122 open FOIA lawsuits that that my office is handling, many of which involve the processing of thousands, if not tens of thousands, of records.[1] Many of these cases involve expedited production timelines. For example, in one case currently pending in the District of Connecticut, CBP has already made 11 productions, ranging from 500-2,000 pages per production, and expects to make an additional two or three productions prior to February 21, 2020. Under the current court-imposed schedule, each production requires a minimum of 1,500 pages. Attorneys handling these FOIA cases must often engage in extensive coordination with CBP and DHS leadership, as well as the FOIA office, to ensure that all documents are handled appropriately and all redactions are applied properly.

15. As described in my previous declaration, my attorneys also engage in a wide array of other important legal work for the Agency on a daily basis, including advising the clients on all aspects of CBP's mission. Most recently, eight attorneys in my office (including three members of my management team), have been advising the Agency on all aspects

---

[1] Only a few years ago, our office handled an average of 22 FOIA cases per year.

of the Agency's response to the 2019 novel coronavirus outbreak. CBP, particularly OFO, plays a critical role in the overall U.S. government response to the outbreak, as CBP is responsible for inspection of all individuals who arrive in the United States. Thus, CBP, as well as other entities in DHS, is responsible for the "funneling" of flights to certain airports so that passengers can be screened by the Centers for Disease Control and Prevention (CDC). OFO must also inspect all passengers on those flights once they land. Additionally, CBP is responsible for implementing the President's *Proclamation on Suspension of Entry As Immigrants and Non-Immigrants of Persons who Pose a Risk of Transmitting 2019 Novel Coronavirus*. Implementing this Proclamation has required the preparation of legal guidance to the operators on the ground, addressing complex legal questions related to the implementation, and communicating regularly with others in DHS, the CDC, and other relevant government agencies. Due to the importance of protecting the American public from this new disease, it is critical that the operators responsible for implementing this proclamation receive answers to their legal questions in a time-sensitive manner, and that the legal advice be accurate, clear, and concise. This work has consumed approximately 70 percent, on average, of these attorneys' collective workloads since approximately January 21, 2020. During the weekend of February 1-2, 2020, these attorneys, collectively, spent at least 45 hours working on this response.

16. Despite continuing to need to devote sufficient resources to the critical tasks described above, we currently have, as explained above, approximately fifty attorneys (approximately 16 percent of my workforce) who have been assigned to the privilege log review in this case. All of the CBP attorneys assigned to this review also are responsible for handling their regular full-time workloads. Thus, even assigning this many attorneys

7

to this review creates a significant burden on the Agency, and on these attorneys. As indicated previously, any time spent on privilege review takes these attorneys away from the other mission-critical and time-sensitive matters described above.

17. I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 10th day of February, 2020.

Scott Falk
Chief Counsel
Office of Chief Counsel
U.S. Customs and Border Protection

8