1  MAYER BROWN LLP
      Matthew H. Marmolejo (CA Bar No. 242964)
2     *mmarmolejo@mayerbrown.com*
   350 S. Grand Avenue
3  25th Floor
   Los Angeles, CA 90071-1503
4     Ori Lev (DC Bar No. 452565)
      (*pro hac vice*)
5     *olev@mayerbrown.com*
      Stephen M. Medlock (VA Bar No. 78819)
6     (*pro hac vice*)
      *smedlock@mayerbrown.com*
7  1999 K Street, N.W.
   Washington, D.C. 20006
8  Telephone:  +1.202.263.3000
   Facsimile:   +1.202.263.3300
9
   SOUTHERN POVERTY LAW CENTER
10    Melissa Crow (DC Bar No. 453487)
      (*pro hac vice*)
11    *melissa.crow@splcenter.org*
   1101 17th Street, N.W., Suite 705
12 Washington, D.C. 20036
   Telephone: +1.202.355.4471
13 Facsimile: +1.404.221.5857

14 *Additional counsel listed on next page*
   *Attorneys for Plaintiffs*
15
                **UNITED STATES DISTRICT COURT**
16
                **SOUTHERN DISTRICT OF CALIFORNIA**
17

18 | Al Otro Lado, Inc., *et al.*, | Case No.:  17-cv-02366-BAS-KSC |
|---|---|
| Plaintiffs, | **PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION** |
| v. | |
| Chad F. Wolf,[1] *et al.*, | ***PORTIONS FILED UNDER SEAL*** |
| Defendants. | Hearing Date: March 3, 2020 (Special Briefing Schedule Granted) |
| | **NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

---

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

REPLY IN SUPP. OF
MOT. FOR CLASS CERT.

CENTER FOR CONSTITUTIONAL RIGHTS
   Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
   *bazmy@ccrjustice.org*
   Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
   *gschwarz@ccrjustice.org*
   Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
   *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
   Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
   *sarah.rich@splcenter.org*
   Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
   *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
   Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
   *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

REPLY IN SUPP. OF
MOT. FOR CLASS CERT.

# TABLE OF CONTENTS

**Page**

I.  Introduction ........................................................................................... 1

II. Plaintiffs Easily Satisfy the Commonality Standard .................................... 2

    A.  Plaintiffs Have Presented Substantial Evidence of Commonality ........ 2

    B.  Each of Defendants' Commonality Arguments Fail ........................... 4

    C.  The Court Should Not Entertain Defendants' Summary Judgment Arguments Under the Guise of Commonality ................. 10

III. Typicality Is Satisfied ............................................................................ 11

IV. Numerosity Plainly Exists ...................................................................... 14

V.  Defendants' Rule 23(b)(2) Argument Fails ................................................ 15

VI. Conclusion ........................................................................................... 15

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Cholakyan v. Mercedes-Benz USA, LLC*,
   281 F.R.D. 534 (C.D. Cal. 2012) .................................................................. 3

*Doe v. Wolf*,
   2020 U.S. Dist. LEXIS 6373 (S.D. Cal. 2020) ...................................... 4

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ................................................................ 10

*Evon v. Law Offices of Sidney Mickell*,
   688 F.3d 1015 (9th Cir. 2012) ............................................................... 3

*Garcia v. Johnson*,
   2014 WL 6657591 (N.D. Cal. 2014) .................................................. 6

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ............................................................... 14

*Independence Mining Co. v. Babbitt*,
   105 F.3d 502 (9th Cir. 1997) .......................................................... 6, 7

*J.P. v. Sessions*,
   2019 U.S. Dist. LEXIS 217560 (C.D. Cal. 2019) ............................... 4

*Lightfoot v. District of Columbia*,
   273 F.R.D. 314 (D.D.C. 2011) ............................................................. 7

*Makaron v. Enagic USA, Inc.*,
   324 F.R.D. 228 (C.D. Cal. 2018) ...................................................... 10

*Mazza v. Am. Honda*,
   666 F.3d 581 (9th Cir. 2012) ................................................................ 3

*McCurley v. Royal Seas Cruises, Inc.*
   331 F.R.D. 142 (S.D. Cal. 2019) ........................................................ 9

*Ms. L v. U.S. ICE*,
   331 F.R.D. 529 (S.D. Cal. 2018) ......................................................... 3

MEMO OF P. & A. IN SUPP. OF
MOT. FOR CLASS CERT.

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ................................................................. 3, 8

*Philips v. Ford Motor Co.*,
    2016 WL 7428810 (N.D. Cal. 2016) ........................................................ 11

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ................................................................. 12

*Rosas v. Baca*,
    2012 WL 2061694 (C.D. Cal. 2012) ......................................................... 3

*San Luis & Delta-Mendota Water Auth. v. Locke*,
    776 F.3d 971 (9th Cir. 2014) .................................................................... 7

*Santillan v. Gonzales*,
    388 F. Supp. 2d 1065 (N.D. Cal. 2005) ..................................................... 6

*Thomas v. Haslam*,
    303 F. Supp. 3d 585 (M.D. Tenn. 2018) .................................................. 11

*Util. Air Regulatory Grp. v. EPA*,
    573 U.S. 302 (2014) ................................................................................. 5

*Vietnam Veterans of Am. v. CIA*,
    811 F.3d 1068 (9th Cir. 2016) ................................................................. 6

*In re Verisign, Inc. Sec. Litig.*,
    2005 U.S. Dist. LEXIS 10438 (N.D. Cal. 2005) ....................................... 14

*Villiarimo v. Aloha Island Air, Inc.*,
    281 F.3d 1054 (9th Cir. 2002) ................................................................. 11

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .............................................................................. 7, 8

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ................................................................. 13

**Statutes, Rules and Regulations**

5 U.S.C. § 706(1) ............................................................................. 4, 5, 6, 7

5 U.S.C. § 706(2) ................................................................................ 4, 5, 7

REPLY IN SUPP. OF
MOT. FOR CLASS CERT.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8 U.S.C. § 1158.................................................................................................. 5

8 U.S.C. § 1225.................................................................................................. 5

Fed. R. Civ. P. 23.......................................................................................*passim*

REPLY IN SUPP. OF
MOT. FOR CLASS CERT.

## Citation Form

"Op. Br." refers to Plaintiffs' opening brief in support of their Motion for Class Certification. *See* Dkts. 389-1, 390-1.

"Op. Ex." refers to the exhibits attached to Plaintiffs' opening brie in support of their Motion for Class Certification. *See* Dkts. 389-3 – 389-105, 390-3 – 390-105.

"Opp." refers to Defendants' Opposition to Plaintiffs' Motion for Class Certification. *See* Dkts. 405, 406.

"Opp. Ex." refers to the exhibits attached to Defendants' Opposition to Plaintiffs' Motion for Class Certification. *See* Dkts. 405-2 – 405-31, 406-2 – 406-31.

"Rep. Ex." refers to the exhibits filed concurrently with this reply brief.

REPLY IN SUPP. OF
MOT. FOR CLASS CERT.

# I.    Introduction

Defendants have been caught lying about their policies toward asylum seekers multiple times. Initially, they told the public it was a "myth" that they were turning back asylum seekers. Rep. Ex. 1 at AOL-DEF-00003903-04. This was untrue. In 2016, Defendants started turning back asylum seekers at ports of entry ("POEs") on the U.S.-Mexico border, in violation of the Immigration and Nationality Act ("INA") and in numbers large enough to suggest an intentional, coordinated Turnback Policy. By 2018, Defendants standardized their turnback practices under anodyne euphemisms such as "metering" and "queue management," and began blocking asylum seekers from crossing the international boundary line. *See* Op. Ex. 27. When forced to justify their policy, Defendants indicated that it was a natural response to the limited capacity of their POEs. *Id.* This was also a lie. Defendants' own capacity statistics, the testimony of a whistleblower, and contemporaneous internal emails show that Defendants had much more capacity to process asylum seekers than they were actually using; the real purpose of metering is and always has been to restrict the number of individuals who can access the U.S. asylum process. *See, e.g.*, Op. Ex. 23 at AOL-DEF-00372629; Op. Ex. 40 at AOL-DEF-0090513; Op. Ex. 41 at AOL-DEF-00517231; Op. Ex. 42 at AOL-DEF-00041453; Op. Ex. 22 at AOL-DEF-00046742; Op. Ex. 43 at AOL-DEF-00039597; Op. Ex. 52 at AOL-DEF-00205673.

In their opening brief, Plaintiffs put forward substantial evidence detailing these lies and showing that each of the elements of Rules 23(a) and 23(b)(2) are satisfied with respect to the class and subclass. Among other things, this evidence shows that Defendants adopted a Turnback Policy, the Policy is being enforced at all Class A POEs, the Policy has harmed thousands of class members, and that the validity of Defendants' purported justification for the Policy (a supposed lack of capacity) can be assessed using the class-wide methodology explained by Plaintiffs' expert, Stephanie Leutert. *See* Op. Br. at 10-21. This alone is sufficient to certify the class and the subclass.

REPLY IN SUPP. OF
MOT. FOR CLASS CERT.

Defendants offer no persuasive response to the expert report, deposition admissions, and dozens of witness declarations and internal U.S. Customs and Border Protection ("CBP") documents that Plaintiffs cite. Nor can they.

**Commonality and Typicality.** Defendants argue that differences between POEs and class members defeat commonality and typicality. This is not the case. The commonality and typicality tests permit class members to have somewhat different factual circumstances when they are affected by a single Government policy. For that reason, courts routinely certify classes that are strikingly similar to the class and subclass. Moreover, Defendants' invitation to this Court to opine on factual matters that are unrelated to the elements of Rule 23 should be rejected.

**Numerosity.** Among other reasons, numerosity exists because both the class and the subclass address the same conduct—denying noncitizens access to the U.S. asylum process. Defendants' adoption of the metering guidance was an attempt to cloak with bureaucratic legitimacy the ongoing practice of turnbacks while retaining the core illegality—the act of turning asylum seekers away. The class is not limited by the metering guidance in order to prevent Defendants from continuing to deny asylum seekers access to the U.S. asylum process at POEs by other means. Therefore, it is improper to de-link the class and subclass, as Defendants suggest.

**23(b)(2).** Defendants' Rule 23(b)(2) section is a restatement of their failed commonality and typicality arguments. Moreover, Defendants make premature arguments regarding the ultimate scope of injunctive relief. None of these arguments are of any moment.

As a result, Defendants' arguments should be rejected and the class and subclass should be certified.

## II. Plaintiffs Easily Satisfy the Commonality Standard

### A. Plaintiffs Have Presented Substantial Evidence of Commonality

"The commonality requirement is construed in a relatively liberal fashion, and the existence of some common legal and factual issue is sufficient." *Cholakyan v.*

REPLY IN SUPP. OF
MOT. FOR CLASS CERT.

*Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 551 (C.D. Cal. 2012); *Mazza v. Am. Honda*, 666 F.3d 581, 589 (9th Cir. 2012) (commonality is a "limited burden"). "[C]ommonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members. Under such circumstances, individual factual differences among class members pose no obstacle to commonality." *Rosas v. Baca*, 2012 WL 2061694, at *3 (C.D. Cal. 2012); *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) ("Where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists.").

Courts routinely find commonality where, as here, the harms suffered by the class members are the result of government policies. *See Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014). In *Parsons*, the plaintiffs claimed that the Arizona Department of Corrections violated the Eighth Amendment's prohibition on cruel and unusual punishment. *Id.* at 662-63. The defendants in *Parsons* argued that, due to differences between inmates and correctional institutions, the plaintiffs' claims were simply "a collection of individual constitutional violations." *Id.* at 675. The Ninth Circuit rejected these arguments and affirmed certification of the class because the plaintiffs pointed to 17 statewide policies that affected the class. *Id.* at 678. The Ninth Circuit reasoned that "[t]hese policies and practices are the 'glue' that holds together the putative class and the subclass; either each of the policies and practices is unlawful . . . or it is not." *Id.*; *see also Ms. L v. U.S. ICE*, 331 F.R.D. 529, 539 (S.D. Cal. 2018) (where plaintiffs "challeng[ed] the Government's practice" with respect to immigration enforcement "the reasoning of *Parsons* . . . compels the same conclusion, namely that the commonality requirement is met"); *J.P. v. Sessions*, 2019 U.S. Dist. LEXIS 217560, at *56 (C.D. Cal. 2019) (commonality existed despite the fact that "the alleged injuries of some members of a certified class may have had more than one cause").

So too here. Plaintiffs have submitted (a) evidence that Defendants adopted a

3

REPLY IN SUPP. OF
MOT. FOR CLASS CERT.

uniform policy that denied asylum seekers access to the U.S. asylum process at POEs, *see* Op. Ex. 27; (b) the declarations of scores of asylum seekers showing that they were denied access to the U.S. asylum process at multiple POEs, *see* Op. Exs. 64-88; (c) testimony from a whistleblower that Defendants' asserted justification for the metering policy, lack of capacity, was an "obvious" "lie" and characterizing that policy as "a solution in search of a problem," *see* Op. Ex. 3 at 99:19-101:2, 153:24-154:1; and (d) the testimony of Plaintiffs' expert, Stephanie Leutert, who applied a methodology common to all POEs, to determine that Defendants deny asylum seekers access *regardless* of the capacity of a POE. *See* Op. Ex. 7 at ¶ 91. Based on these common facts, Plaintiffs assert that they have suffered or will suffer the same injury, Dkt. 189 ¶ 2, and, therefore, assert the same legal claims. *See id.* at ¶¶ 244-303. As a result, commonality exists. *Doe v. Wolf*, 2020 U.S. Dist. LEXIS 6373, at *20 (S.D. Cal. 2020) (commonality existed where class asserted "the same legal claim," "suffered the same legal injury," and sought "the same relief").

### B.    Each of Defendants' Commonality Arguments Fail

Given the substantial record concerning commonality, Defendants attempt some sleight of hand. They ignore Plaintiffs' claim under 5 U.S.C. § 706(2) entirely. Then, they attempt to recast access to the asylum process as a discretionary benefit, turnbacks as merely delayed agency action, and Defendants' own capacity figures as irrelevant. Defendants arguments are unavailing. But Plaintiffs' claims are not limited to 5 U.S.C. § 706(1) and the facts do not support Defendants' other suppositions. As a result, each of their commonality arguments fails.

*First*, Defendants advance no argument that commonality does not exist with respect to Plaintiffs' claims under 5 U.S.C. § 706(2) that the Turnback Policy and the metering policy are categorically unlawful.[2]

---

[2] Plaintiffs do not concede that metering is lawful in some circumstances, *see* Opp. at 22, 25, 26, 29, nor did the Court's prior order foreclose Plaintiffs' argument that metering is categorically unlawful. The Court stated that "it is entirely possible that

REPLY IN SUPP. OF
MOT. FOR CLASS CERT.

1    **Second**, the duties to inspect and process arriving noncitizens are mandatory,

2    not discretionary. *See* 8 U.S.C. §§ 1225(a)(1), (a)(3), 1225(b)(1)(A)(ii). Congress

3    never authorized the government to discriminate among or turn back any arriving

4    noncitizens at POEs, no matter the supposed justifications behind such conduct—as

5    such, Defendants' proffered justifications are irrelevant. *See Util. Air Regulatory*

6    *Grp. v. EPA*, 573 U.S. 302, 328 (2014) ("[It is a] core administrative-law principle

7    that an agency may not rewrite clear statutory terms to suit its own sense of how the

8    statute should operate.").

9    **Third**, Defendants speculate that there might be justifications for turnbacks.

10   They assert that these justifications require an analysis of each instance in which a

11   noncitizen arrived at a POE to determine whether agency action was unlawfully

12   withheld under 5 U.S.C. § 706(1).  Opp. at 23-25.  But any factual differences in

13   how CBP officers turn away asylum seekers at various POEs reflect nothing more

14   than slight variations in the implementation of the same overarching policy. If the

15   policy is unlawful, then any implementation it is likewise unlawful.[3] Furthermore,

16   in their discussion of the *TRAC* factors, Opp. at 23, 26, 32, Defendants misapprehend

17   Plaintiffs' § 706(1) arguments. Each turnback amounts to "agency action unlawfully

18   withheld," 5 U.S.C. § 706(1)—a refusal to inspect and process as *required* by the

19   INA. *TRAC* applies to claims of agency delay, not outright denial.  *Compare Indep.*

20   *Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (courts apply the *TRAC*

21   factors to decide "claims of agency delay"), *with Vietnam Veterans of Am. v. CIA*,

22
23   there may exist potentially legitimate factors that prevent CBP officers from
     immediately discharging their mandatory duties set forth in 8 U.S.C. § 1158(a)(1)
     and 8 U.S.C. § 1225." Dkt. 280 at 60. There are myriad ways in which these duties
24   might not be *immediately* discharged even without metering; for example,
     Defendants could process all travelers in the order that they arrive at a POE.

25   [3] Plaintiffs' debunking of Defendants' explanation for metering—supposed capacity
     constraints—does not mean, as Defendants mistakenly claim, "that the
26   implementation of metering procedures at individual ports is based on, and must be
     evaluated against, the ports' specific operating environments." Opp. at 28.
27   Plaintiffs' extensive evidence that metering across the entire border is based on
     pretext strengthens, rather than weakens, the argument for commonality.
28

REPLY IN SUPP. OF
MOT. FOR CLASS CERT.

811 F.3d 1068, 1076 (9th Cir. 2016) (applying traditional mandamus analysis to claim of agency action unlawfully withheld). And whether all arriving asylum seekers must be inspected and processed is a common question of law (which this Court has already answered). *See* Dkt. 280 at 44-47.[4]

Moreover, Plaintiffs have presented substantial evidence that the capacity excuse is a pretext. *See* Op. Br. 11-18. Senior CBP and DHS officials demonstrated a desire to ██████████████████████████ and then standardized this process via the metering policy. *Id.* at 8. Even though port directors ████████████████ ████████████████████████████████████████████████████████████ ███████ and CBP officers at POEs had previously ██████████████████ ████████████████████, CBP management directed them to ████ ████████████████. *Id.* at 7-8. CBP management then ████████████████ ████████████████████████████████████████████████████████████ *Id.* at 10-11. ██████████████████████████, CBP management did not ████████████████████. *Id.* at 11. When it became clear that the detention capacity numbers in CBP's internally-generated reports undermined the justification for metering, CBP and DHS management ████████████████████████████ ████████████████████████████████████████████ and instead justify metering based on supposed "operational capacity numbers" that are not tracked or relied upon by CBP management. *Id.* at 11-13.[5] And when CBP officers ██████████████████████████████████████████████████, they

---

[4] If the Court disagrees that turnbacks amount to withholding of a mandatory duty, any delay is still capable of class-wide resolution under the *TRAC* factors because it is based on bad faith. *See Babbitt*, 105 F.3d at 510, as well as other facts going to *TRAC* analysis that are common to the class as a whole, *see Garcia v. Johnson*, 2014 WL 6657591 (N.D. Cal. 2014) (*TRAC* factors applied to a class); *Santillan v. Gonzales*, 388 F. Supp. 2d 1065 (N.D. Cal. 2005) (similar).

[5] Defendants misleadingly refer to operational capacity as a "figure." *See* Opp. at 7, n. 2. That is incorrect. Defendants do not ████████████████████████████. *See* Op. Ex. 2 at 189:8-191:6.

REPLY IN SUPP. OF
MOT. FOR CLASS CERT.

1 were ██████████. *Id.* at 16-17.

2   The reason for this pattern of conduct is simple—as contemporaneous emails

3 show, Defendants were engaged in an effort to intentionally "████████████████

4 ████████" and "████████████████████████████." Op. Ex. 40 at AOL-DEF-

5 0090315; Op. Ex. 41 at AOL-DEF-00517231.[6] Unsurprisingly, a detailed analysis

6 conducted by Plaintiffs' expert shows that Defendants denied asylum seekers access

7 to the U.S. asylum process *regardless* of the capacity of POEs. Op. Ex. 7 at ¶¶ 88-

8 91. This obvious pretextual and bad-faith assertion of capacity violates 5 U.S.C. §

9 706(1) and is arbitrary and capricious in violation of 5 U.S.C. § 706(2). *See Babbitt*,

10 105 F.3d at 510 ("[I]f the court determines that the agency [has] delay[ed] in bad

11 faith, it should conclude that the delay is unreasonable."); *San Luis & Delta-Mendota*

12 *Water Auth. v. Locke*, 776 F.3d 971, 994 (9th Cir. 2014) (a violation of § 706(2)

13 arises when an agency has "offered an explanation for its decision that runs counter

14 to the evidence before the agency[] or is . . . implausible.") (citation omitted).

15   ***Fourth***, Defendants' analogy to *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338

16 (2011) is inapt. *See* Opp. at 26. In *Wal-Mart*, a putative class of 1.5 million female

17 employees challenged discretionary decisions made by managers of 3,400 Wal-Mart

18 stores regarding salaries and promotions. *Id.* at 352. In essence, the putative class in

19 *Wal-Mart* sought to "produce a common answer to the crucial question *why was I*

20 *disfavored*." *Id.* Because the managers of the Wal-Mart stores were "left to their

21 own devices," *id.* at 355, there were literally dozens of answers to this question,

22 including that some managers were "select[ing] sex-neutral, performance-based

23 criteria," some were "reward[ing] various attributes that produce[d] [a] disparate

24 impact," and others might be "guilty of intentional discrimination that produce[d] a

25

26 [6] Defendants assert that all that Plaintiffs have shown is "a constellation of disparate
but equally suspect practices." *Lightfoot v. District of Columbia*, 273 F.R.D. 314,

27 326 (D.D.C. 2011). Not so. This is not a case where "the proffered 'common issue'
is a somewhat amorphous claim of systemic . . . misconduct," *id.* at 324. Plaintiffs

28 have pointed to specific policies formalizing Defendants' conduct. Op. Br. at 10-17.

REPLY IN SUPP. OF
MOT. FOR CLASS CERT.

sex-based disparity." *Id.* "This case is different than *Wal-Mart* in every respect that matters." *Parsons*, 754 F.3d at 681. This case does not involve a discretionary activity; Defendants have a non-discretionary duty to inspect and process asylum seekers that present themselves at POEs. *Supra* at 5. Unlike the Wal-Mart managers who were left to their own devices, Defendants directed port director to turn back asylum seekers. Op. Ex. 27. And, although Defendants claim that these turnbacks were justified by port-specific capacity concerns, contemporaneous statistical evidence shows that capacity was a pretext. Op. Br. at 17-19. Those statistics demonstrate that detention capacity was not the driver of turnbacks, and "operational capacity" is a non-existent number tracked by nobody that appears to have been conceived of as a post-hoc effort to shield the Turnback Policy from judicial review. *Id.* Accordingly, *Wal-Mart* supports class certification.

**Finally**, Defendants criticize Plaintiffs and their expert, Stephanie Leutert, for not considering the "operational capacity" of POEs based on the competing mission sets and staffing limitations of CBP. *See* Opp. at 25-26. This argument is misleading. Ms. Leutert did not use operational capacity in her expert report because "███████████████████████████████████████████████████." Rep. Ex. 2 at 147:14-15. Defendants do not █████████████████████████████████. Op. Ex. 2 at 189:8-17. "████████████████████████████," if not impossible, to "████████████████████████████████████████████████." *Id.* at 189:18-190:15. Because this data was unavailable, Ms. Leutert used the very same capacity data that CBP generates and considers on a daily basis—analyzing 547 MCAT reports and 314 field queue management reports. Op. Ex. 7 at Table 7. CBP considers these reports so reliable that t██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Op. Ex. 2 at 45:20-47:3. In addition, CBP's senior management ████████████████████████████████████████████. *See, e.g.*, Rep. Exs. 3-5 (███████████

1　████████████████████████████████████).  As the Executive

2　Assistant Commissioner of CBP testified:

3　　　Q.　██████████████████████████████████████

4　　　　　██████████████████████████████████████

5　　　　　████████████████?

6　　　A.　█████████████████████████.

7　Op. Ex. 2 at 190:20-191:3.

8　　　　It was perfectly permissible for Ms. Leutert to use the best available data to

9　determine the capacity of POEs to inspect and process asylum seekers.  For instance,

10　in *McCurley v. Royal Seas Cruises, Inc.*, a class certification expert did not have

11　access to particular web traffic data and instead used Amazon's *Alexa* web traffic

12　data. 331 F.R.D. 142, 158 (S.D. Cal. 2019).  The defendant objected to the expert's

13　conclusions because the expert allegedly did not use the best data source available.

14　*Id.* at 157.  This Court found that even if those objections were "technically correct,"

15　they were ultimately "immaterial."  *Id.* at 157.  Although relying on imperfect data,

16　the class certification expert's opinion was a "relevant consideration to whether

17　Plaintiffs have shown class certification is appropriate." *Id.*

18　　　　Defendants' only substantive response to Mr. Leutert's expert report is the

19　recycled declarations of Rodney Harris, Mariza Marin, and Michael Humphries.  *See*

20　Opp. Exs. 27, 28, 29. Ms. Marin reviews the custody logs from the San Ysidro POE

21　for two days. Opp. Ex. 27 at ¶ 12. Mr. Humphries does little more—he analyzes

22　various processing components of the Nogales POE on particular days in 2018 and

23　2019.  Opp. Ex. 29 at ¶¶ 15-16. Mr. Harris testifies generally about the capacity of

24　the Laredo POE without reviewing any data regarding the capacity of the Port.  Opp.

25　Ex. 28 at ¶ 3. However, these declarations do nothing to counter Ms. Leutert's

26　conclusion that metering occurs regardless of "the ebbs and flows of migration

27　numbers." Op. Ex. 7 at ¶ 91. They do not, for example, show that POEs ceased

28　metering when they had available detention space. And these declarations make

REPLY IN SUPP. OF
MOT. FOR CLASS CERT.

1  clear that ███████████████████████████████████████████.

2  Opp. Ex. 27 at ¶ 13; Opp. Ex. 29 at ¶ 18. In fact, the only response to Ms. Leutert's

3  conclusion, which is based on a review of 861 regularly-generated capacity reports,

4  is to call it "conclusory" in a footnote. Opp. at 28, n.8. It is difficult to see how a

5  detailed analysis of years of Defendants' own capacity data is "conclusory."

6      There is substantial evidence of commonality, including internal CBP

7  memoranda promulgating the Turnback Policy that was uniformly implemented at

8  all Class A POEs, documents showing the implementation of the Turnback Policy,

9  and numerous declarations from asylum seekers that were turned back from Class A

10  POEs. Ms. Leutert's expert report confirms this evidence.  Using a methodology

11  common to all class members, she shows that Defendants' capacity excuse (even if

12  such an excuse could be legally cognizable) is a pretext.

13      **C.    The Court Should Not Entertain Defendants' Summary Judgment**

14      **Arguments Under the Guise of Commonality**

15      To be sure, the parties dispute whether Defendants' capacity justification is a

16  pretext or whether lack of capacity is even a legally cognizable excuse for shirking

17  mandatory duties under the INA. *Compare* Op. Br. at 12-21, *with* Opp. at 2-16. But

18  "[t]he district court is required to examine the merits of the underlying claim in this

19  context, only inasmuch as it must determine whether common questions exist; not

20  to determine whether class members could actually prevail on the merits of their

21  claims. . . . To hold otherwise would turn class certification into a mini-trial." *Ellis*

22  *v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011); *Makaron v.*

23  *Enagic USA, Inc.*, 324 F.R.D. 228, 231 (C.D. Cal. 2018) ("a motion for class

24  certification is not . . . a motion for summary judgment"). Here, the only factual

25  question that this Court may need to resolve is whether Defendants' regularly-

26  generated capacity reports that Defendants' senior management rely upon are a

27  reasonable approximation of the capacity of POEs.  Because it is obvious that these

28  reports are reliable, *see supra* at 8-10, that is where the analysis of factual disputes

REPLY IN SUPP. OF
MOT. FOR CLASS CERT.

1    related to commonality should end.

2        At any rate, each of Defendants' merits arguments fails. For example,

3    Defendants cite Todd Owen's self-serving testimony that there was "███████

4    ████████████████████████████████████████████. Opp. at 11. But

5    they fail to inform the Court that after making that statement, Mr. Owen was

6    impeached multiple times with documents showing that ████████████████

7    ████████████████████████. *See* Op. Ex. 2 at 172:6-174:10, 229:15-

8    233:11; 243:19-250:16, 255:19-260:5. To believe Mr. Owen's testimony, the Court

9    would also have to ignore the testimony of a whistleblower that the capacity excuse

10   was an "obvious" "lie." Op. Ex. 3 at 99:13-101:2, 153:24-154:1.[7] Mr. Owen's

11   statement is precisely the sort of "uncorroborated and self-serving testimony" that

12   courts refuse to credit at summary judgment. *Villiarimo v. Aloha Island Air, Inc.*,

13   281 F.3d 1054, 1061 (9th Cir. 2002).

14                                    * * *

15       Defendants misunderstand Rule 23(a)(2). "The commonality requirement

16   does not simply call for the court to list all of the traits that can be ascribed to the

17   various class members and tally up the differences." *Thomas v. Haslam*, 303 F. Supp.

18   3d 585, 635 (M.D. Tenn. 2018). But that is precisely the error that Defendants invite.

19   Plaintiffs have more than made "the relatively minimal showing required to establish

20   commonality," *Philips v. Ford Motor Co.*, 2016 WL 7428810, at *7 (N.D. Cal.

21   2016), *aff'd,* 726 F. App'x 608 (9th Cir. 2018), by showing that Defendants adopted

22   a common policy that applies to all POEs and that Defendants' justification for that

23   policy can be refuted using a method common to the class.

24   **III.    Typicality Is Satisfied**

25       "The typicality requirement is permissive and requires only that the

26

27   ───────────────────

[7] Defendants attempt to minimize this testimony, *see* Opp. at 27 n.7, but the
whistleblower testified that turning back asylum seekers "████████████████"
Op. Ex. 3 at 175:7-10, and no one ever did anything to ███████████████████

28   ████████████████████. *Id.* at 175:11-177:24.

REPLY IN SUPP. OF
MOT. FOR CLASS CERT.

1    representative's claims be reasonably coextensive with those of the absent class

2    members; they need not be substantially identical." *Rodriguez v. Hayes*, 591 F.3d

3    1105, 1124 (9th Cir. 2010). Typicality is satisfied "when each class member's claim

4    arises from the same course of events, and each class member makes similar legal

5    arguments to prove the defendant's liability." *Id.*

6           That is the case here. All of the Named Plaintiffs were denied access to the

7    U.S. asylum process at a Class A POE by or at the instruction of CBP officials. *See*

8    Op. Ex. 73 at ¶¶ 4-5; Op. Ex. 9 at ¶¶ 9-19; Op. Ex. 10 at ¶¶ 9-22; Op. Ex. 11 at ¶¶

9    13-29; Op. Ex. 12 at ¶¶ 8-18; Op. Ex. 13 at ¶¶ 11-18; Op. Ex. 14 at ¶¶ 10-23. For

10   instance, when Named Plaintiff Dinora Doe arrived at the Otay Mesa POE in August

11   2016, CBP officers told her "to go back to Mexico" and escorted her out of the port.

12   Op. Ex. 12 at ¶¶ 9-10. In May 2017, Named Plaintiff Beatrice Doe was told that she

13   could not be processed at the Otay Mesa POE and was directed back to Mexico. Op.

14   Ex. 10 at ¶¶ 9-10. And Plaintiff Roberto Doe arrived at a Class A POE (Hidalgo)

15   after the formal metering policy went into effect in April 2018. Op. Ex. 72 at ¶ 4.

16   On October 2, 2018, he was told that the Hidalgo POE was "full" by an officer

17   standing at the mid-point of the bridge leading to the POE. *Id.* at ¶ 5. They are

18   typical of the class and sub-class.

19          Nevertheless, Defendants argue that the claims of the Named Plaintiffs are not

20   typical of some subclass members because (a) some of the class members placed

21   themselves on a waitlist, (b) some of the class members were metered prior to April

22   2018, (c) some of the class members may have been intercepted by Mexican

23   authorities, and (d) the Government may have a legitimate capacity rationale for

24   metering some class members. Opp. at 31-33. Not so, on all counts.

25          *First*, Defendants adopted a policy that denies all class members access to the

26   U.S. asylum process at all Class A POEs. *See* Op. Br. at 10-17. True, the mechanics

27   of the denial of access differs with respect to some of the class members. Some were

28   denied access at the borderline and then returned to Mexico to put their names on a

REPLY IN SUPP. OF
MOT. FOR CLASS CERT.

waitlist; others understood, based on the fact that metering was occurring border-wide, they would be denied access and put their names on the same waitlist. The result is the same—Defendants denied both the Named Plaintiffs and the class members access to the U.S. asylum process. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Typicality can be satisfied despite different factual circumstances.").

*Second*, Defendants argue that typicality is defeated because the Named Plaintiffs arrived at POEs prior to April 2018 and other class members arrived at POEs after April 2018, when the formal metering policy was in effect. Opp. at 31-32. But this makes no difference because, as explained above, the Named Plaintiffs and the class members were all denied access to the U.S. asylum process by or at the direction of CBP officers at Class A POEs.

*Third*, Defendants note that some class members were intercepted by Mexican authorities. Opp. at 33. That does not defeat typicality. Both the class and subclass include individuals that were denied access to the U.S. asylum process "at the direction of" CBP officers. Op. Br. at 1. Defendants enlisted Mexican authorities in their efforts to turn back asylum seekers. *See, e.g.*, Op. Ex. 40 at AOL-DEF-0090513 (" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ "); Op. Ex. 41 at AOL-DEF-00517231 (" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ "). Individuals that were turned back by Mexican officials acting at the behest of Defendants are typical of the class and subclass.

*Fourth*, Defendants assert that there might be unique defenses with respect to Roberto Doe and vaguely suggest the same is true for all other named Plaintiffs. Opp. at 32. They note that a document appears to indicate that the Hidalgo POE had ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ on October 2, 2018. *Id.* ***This proves Plaintiffs' point***. According to Defendants' own records, the capacity of the Hidalgo POE is ▮ ▮▮▮▮ . Rep. Ex. 6 at 087. Even assuming that ▮▮▮▮▮▮▮▮▮▮▮▮

1 ████████████████████████████████████████, they represented only

2 ███ % of the POE's processing capacity. *See id.* Also, there is no evidence in the

3 record that the "operational capacity" of the Hidalgo POE was somehow lower than

4 ███ on that day. On October 2, 2018, Hidalgo POE leadership noted that t████

5 ████████████████████████████████████████████████ Op. Ex. 96 at

6 615. Thus, Roberto Doe will not be "preoccupied with defenses unique to" him; he

7 was metered under false pretenses like the rest of the class. *Hanon v. Dataproducts*

8 *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citations omitted). Typicality exists.

## IV. Numerosity Plainly Exists

10   "Numerosity is a prerequisite which plaintiffs generally, and which Plaintiffs

11 here, satisfy very easily." *In re Verisign, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS

12 10438, at *12 (N.D. Cal. 2005). As few as 40 class members is sufficient to establish

13 numerosity. *See* Opp. at 17. Plaintiffs easily satisfy this low bar. They have

14 submitted dozens of declarations, waitlists, and statistical evidence showing that

15 thousands of noncitizens were subjected to the Turnback Policy. *See* Op. Ex. 7 at

16 ¶¶ 77-81; Op. Exs. 64-88, 97-103.[8]

17   Defendants' argument to the contrary is based on a misreading of Plaintiffs'

18 brief. They claim that the class lacks numerosity because it is "separate from the

19 metering sub-class." Opp. at 17. Not so. The class "specifically includes" the

20 metering sub-class. Op. Br. at 1. In their opening brief, Plaintiffs sought the

21

---

22 [8] *See also* Rep. Ex. 7 at ¶ 3; Rep. Ex. 8 at ¶ 3; Rep. Ex. 9 at ¶ 3; Rep. Ex. 10 at ¶ 3;
Rep. Ex. 11 at ¶¶ 3-4; Rep. Ex. 12 at ¶¶ 3-7; Rep. Ex. 13 at ¶¶ 3-5; Rep. Ex. 14 at ¶¶
23 2-3; Rep. Ex. 15 at ¶¶ 3-4; Rep. Ex. 16 at ¶¶ 2-4; Rep. Ex. 17 at ¶¶ 2-4; Rep. Ex. 18
at ¶¶ 2-5; Rep. Ex. 19 at ¶¶ 2-3; Rep. Ex. 20 at ¶¶ 2-4; Rep. Ex. 21 at ¶¶ 2-5; Rep.
24 Ex. 22 at ¶¶ 6-10; Rep. Ex. 23 at ¶¶ 4-10; Rep. Ex. 24 at ¶¶ 3-5; Rep. Ex. 25 at ¶¶ 2-
8; Rep. Ex. 26 at ¶¶ 2-6; Rep. Ex. 27 at ¶¶ 2-8; Rep. Ex. 28 at ¶¶ 5-9; Rep. Ex. 29 at
25 ¶¶ 2-4; Rep. Ex. 30 at ¶¶ 5-10; Rep. Ex. 31 at ¶¶ 2-4; Rep. Ex. 32 at ¶¶ 2-8; Rep. Ex.
33 at ¶¶ 5-10; Rep. Ex. 34 at ¶¶ 2-6; Rep. Ex. 35 at ¶¶ 2-3; Rep. Ex. 36 at ¶¶ 2-4;
26 Rep. Ex. 37 at ¶¶ 2-4; Rep. Ex. 38 at ¶¶ 2-4; Rep. Ex. 39 at ¶¶ 5-10; Rep. Ex. 40 at
¶¶ 2-7; Rep. Ex. 41 at ¶¶ 2-7; Rep. Ex. 42 at ¶¶ 2-8; Rep. Ex. 43 at ¶¶ 2-4; Rep. Ex.
27 44 at ¶¶ 2-6; Rep. Ex. 45 at ¶¶ 2-3; Rep. Ex. 46 at ¶¶ 2-6; Rep. Ex. 47 at ¶¶ 2-4; Rep.
Ex. 48 at ¶¶ 2-6; Rep. Ex. 49 at ¶¶ 2-6; Rep. Ex. 50 at ¶¶ 2-9; Rep. Ex. 51 (Nogales,
28 Mexico waitlist); Rep. Ex. 52 (Ciudad Acuna, Mexico waitlist).

REPLY IN SUPP. OF
MOT. FOR CLASS CERT.

certification of a class of "all noncitizens who seek or will seek to access the U.S. asylum process by presenting themselves at a Class A POE," but were or will be "denied access to the U.S. asylum process." *Id.* Plaintiffs also seek the certification of a sub-class of individuals that were or will be denied access to the U.S. asylum process "as a result of Defendants' metering policy." *Id.* Defendants' illegal denial of access to the U.S. asylum process began in 2016 and "[b]y April 2018, Defendants formalized these practices" into the metering policy. *Id.* Prior to the issuance of the April 2018 metering guidance, Defendants implemented their Turnback Policy through a variety of common practices that CBP officials regularly applied border-wide in sufficient numbers to satisfy numerosity for class certification purposes. *See* Op. Exs. 64-88, 97-103. Following issuance of the April 2018 guidance, CBP officials implement the Turnback Policy through one of those practices—metering.

While that evidence of Defendants' initial turnback methods is relevant to Defendants' pattern and practice of illegal conduct, Plaintiffs do not seek to sweep that conduct into the class or sub-class. *See* Opp. at 18-19. The purpose of the broader class is to prevent Defendants from evading meaningful injunctive relief by denying access to the U.S. asylum process by a means other than, but substantially similar to, metering. As a result, the class and sub-class are overlapping, not separate. Because thousands of people have been harmed by the Turnback Policy, *see* Op. Ex. 7 at ¶ 78, numerosity is satisfied for both the class and the sub-class.

## V.    Defendants' Rule 23(b)(2) Argument Fails

Defendants claim that Rule 23(b)(2) does not apply because there are factual variations amongst POEs with respect to operational capacity. *See* Opp. at 35. This is incorrect. *See supra* at 4-10. Defendants also attempt to the ultimate scope of injunctive relief. *See* Opp. at 35. That argument is, at best, premature.

## VI.    Conclusion

For the foregoing reasons, the Court should certify the class and the subclass.

REPLY IN SUPP. OF
MOT. FOR CLASS CERT.

Dated: February 26, 2020

MAYER BROWN LLP
   Matthew H. Marmolejo
   Ori Lev
   Stephen M. Medlock

SOUTHERN POVERTY LAW
CENTER
   Melissa Crow
   Sarah Rich
   Rebecca Cassler

CENTER FOR CONSTITUTIONAL
RIGHTS
   Baher Azmy
   Ghita Schwarz
   Angelo Guisado

AMERICAN IMMIGRATION
COUNCIL
   Karolina Walters

By: */s/ Stephen M. Medlock*
   Stephen M. Medlock

*Attorneys for Plaintiffs*

16

1

**CERTIFICATE OF SERVICE**

2          I certify that I caused a copy of the foregoing document to be served on all

3    counsel via the Court's CM/ECF system.

4    Dated:  February 26, 2020                    MAYER BROWN LLP

5

6                                                By _/s/ Stephen M. Medlock_____

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28