| | |
|---|---|
| 1 | MAYER BROWN LLP |
| 2 | Matthew H. Marmolejo (CA Bar No. 242964) |
|   | *mmarmolejo@mayerbrown.com* |
|   | 350 S. Grand Avenue |
| 3 | 25th Floor |
|   | Los Angeles, CA 90071-1503 |
| 4 | Ori Lev (DC Bar No. 452565) |
|   | (*pro hac vice*) |
| 5 | *olev@mayerbrown.com* |
|   | Stephen M. Medlock (VA Bar No. 78819) |
| 6 | (*pro hac vice*) |
|   | *smedlock@mayerbrown.com* |
| 7 | 1999 K Street, N.W. |
|   | Washington, D.C. 20006 |
| 8 | Telephone:  +1.202.263.3000 |
|   | Facsimile:  +1.202.263.3300 |

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, | Case No.:  17-cv-02366-BAS-KSC |
| Plaintiffs, | |
| v. | **EX. 1 TO PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION** |
| Chad F. Wolf,[1] *et al.*, | |
| Defendants. | **AOL-DEF-00003901 to 00003909** |

---

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.401.221.5857

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.56

 Official website of the Department of Homeland Security

 U.S. Department of Homeland Security

# Myth vs. Fact: DHS Zero-Tolerance Policy

**Release Date:** June 18, 2018

In recent days, we have seen reporters, Members of Congress, and other groups mislead the public on the Department of Homeland Security's (DHS) zero-tolerance policy.

Federal law enforcement officers have sworn duties to enforce the laws that Congress passes. Repeating intentionally untrue and unsubstantiated statements about DHS agents, officers, and procedures is irresponsible and deeply disrespectful to the men and women who risk their lives every day to secure our border and enforce our laws.

## Myth

DHS has a policy to separate families at the border.

## Fact

DHS does not have a blanket policy of separating families at the border. However, DHS does have a responsibility to protect all minors in our custody. This means DHS will separate adults and minors under certain circumstances. These circumstances include: 1) when DHS is unable to determine the familial relationship, 2) when DHS determines that a child may be at risk with the parent or legal guardian, or 3) when the parent or legal guardian is referred for criminal prosecution.

- Familial Relationship – If there is reason to question the claimed familial relationship between an adult and child, it is not appropriate to detain adults and children together.

- Human Trafficking and Smuggling – If there is reason to suspect the purported parent or legal guardian of human trafficking or smuggling, DHS detains the adult in an appropriate, secure detention facility, separate from the minor. DHS continues to see instances and intelligence reports indicating minors are trafficked by unrelated adults, posing as a "family" in an effort to avoid detention.

- Safety Risk – If there is reason to suspect the purported parent or legal guardian poses a safety risk to the child (e.g. suspected child abuse), it is not appropriate to maintain the adult and child together.

- Criminal Prosecution – If an adult is referred for criminal prosecution, the adult will be transferred to U.S. Marshals Service custody and any children will be classified as an unaccompanied alien child and transferred to the Department of Health and Human Services custody.

In recent months, DHS has seen a staggering increase in the number of illegal aliens using children to pose as family units to gain entry into the United States. From October 2017 to February 2018, there was a 315 percent increase in the number of cases of adults with minors fraudulently posing as "family units" to gain entry.

# Myth

Prior to April 2017, DHS never separated families arriving at the border.

# Fact

DHS has separated families under the circumstances described above. Because of court decisions, DHS can generally no longer hold families in detention beyond 20 days.

# Myth

DHS can indefinitely detain families who cross the border illegally.

# Fact

DHS generally releases families within 20 days. This creates a "get out of jail free" card for illegal alien families and encourages groups of illegal aliens to pose as families hoping to take advantage of that loophole.

In 2014, DHS increased detention facilities for arriving alien families and held families pending the outcome of immigration proceedings. However, a federal judge ruled in 2016 that under the Flores Settlement Agreement, minors detained as part of a family unit cannot be detained in unlicensed facilities for longer than a presumptively reasonable period of 20 days, at which point, such minors must be released or transferred to a licensed facility. Because most jurisdictions do not offer licensure for family residential centers, DHS rarely holds family units for longer than 20 days. The judge's ruling made it much more difficult for the Federal government to use the detention authorities Congress gave it.

# Myth

DHS is referring for prosecution all families coming to the border.

# Fact

DHS only refers to the Department of Justice those adults who violate the law by crossing the border illegally (or who have violated some other criminal law) and are amenable for prosecution. When adults, with or without children, unlawfully enter this country, there must be a consequence for breaking our laws.

DHS is not referring for prosecutions families or individuals arriving at ports of entry or attempting to enter the country through legal means. These families and individuals have not broken the law and will be processed accordingly.

# Myth

DHS is turning away asylum seekers at ports of entry.

## Fact

DHS complies with Federal law with regard to processing individuals claiming asylum at ports of entry.

CBP processes all aliens arriving at all ports of entry without documents as expeditiously as possible without negatively affecting the agency's primary mission to protect the American public from dangerous people and materials while enhancing the nation's economic competitiveness through facilitating legitimate trade and travel.

As the number of arriving aliens determined to be inadmissible at ports of entry continues to rise, CBP must prioritize its limited resources to ensure its primary mission is being executed. Depending on port circumstances at the time of arrival, CBP officials will allocate the necessary resources to its primary mission and operate appropriate access controls and queue management procedures for those arriving aliens without proper travel documents.

## Myth

DHS separates families who entered at the ports of entry and who are seeking asylum – even though they have not broken the law.

## Fact

If an adult enters at a port of entry and claims asylum, they will not face prosecution for illegal entry. DHS does have a responsibility to protect minors we apprehend and will separate in three circumstances:1) when DHS is unable to determine the familial relationship, 2) when DHS determines that a child may be at risk with the parent or legal guardian, or 3) when the parent or legal guardian is referred for criminal prosecution.

## Myth

Once separated, arriving alien adults cannot contact minors and are not told where the minors are being held by the Department of Health and Human Services (HHS).

# Fact

DHS is committed to and has procedures in place to connect family members after separation so adults know the location of minors and have regular communication with them.

HHS and DHS work to facilitate communication between detained adults and minors (in HHS custody) in a number of ways to include telephone and/or video conferencing. Additionally, ICE has posted information in all over 72-hour facilities advising detained adults who are trying to locate, and/or communicate with a child in the custody of HHS to call the Detention Reporting and Information Line (DRIL) for assistance. This posted information includes:

- HHS Adult Hotline (24 hours a day, 7 days a week, in both English and Spanish):
    - If calling from outside an ICE detention facility, call 1-800-203-7001.
    - If calling from an ICE detention facility, dial 699# on the free call platform.
    - Please note that you will need to provide the child's full name, date of birth, and country of origin. It is also helpful to provide the child's alien registration number, if you know it.

- HHS Email: information@ORRNCC.com (mailto:information@ORRNCC.com)

Individuals may also obtain information about a particular immigration case (including their child's), or information about reunifying with minors, through the following methods:

- ICE Call Center (Monday-Friday, 8 am-8 pm EST):
    - If calling from outside an ICE detention facility, call 1-888-351-4024.
    - If calling from an ICE detention facility, dial 9116# on the free call platform.

- ICE Email: Parental.Interests@ice.dhs.gov (mailto:Parental.Interests@ice.dhs.gov)

Additionally, CBP has developed and distributed bilingual documents outlining the separation and reunification process.

## Myth

Language barriers prevent aliens apprehended at the border, and subject to prosecution, from receiving adequate information.

## Fact

All US Border Patrol trainees are required to take Spanish language training while at the Border Patrol Academy, and achieve proficiency in Spanish. All Border Patrol personnel on the Southwest Border are bilingual.

CBP apprehends illegal aliens from numerous countries that speak many languages other than Spanish. Should an agent ever have a language or communication issue, they are required to find another Agent who speaks the language or to utilize contract interpreters.

All Border Patrol personnel at the border are directed to clearly explain the relevant process to apprehended individuals. CBP provides detainees with written documentation (in Spanish and English) that lays out the process – to include the appropriate phone numbers to contact.

## Myth

CBP and ICE officers are not properly trained to separate minors from their custodians.

## Fact

The safety of CBP employees, detainees, and the public is paramount during all aspects of CBP operations. CBP treats all individuals in its custody with dignity and respect, and complies will all laws and policy, including CBP's National Standards on Transport, Escort, Detention, and Search (TEDS). TEDS reinforces/reiterates the need to consider the best interest of children and mandates adherence to established

protocols to protect at-risk populations, to include standards for the transport and treatment of minors in CBP custody.

All ICE facility staff who interact with adults receive trauma-informed care training. ICE is augmenting mental health care staffing, to include trained clinical staff, to provide mental health services to detained adults.

# Myth

DHS detention facilities are in poor condition and do not provide clean drinking water.

# Fact

DHS facilities are safe and sanitary, and adults and minors are provided access to food and drinking water, medical care as needed, and adequate temperature control and ventilation.

# Myth

DHS and HHS houses migrants in "inhumane fenced cages" or in an "ice box."

# Fact

DHS and HHS utilize short-term facilities in order to process and temporarily hold migrants that have been apprehended. These short-term facilities do not employ the use of 'cages' to house minors. Certain facilities make use of barriers in order to separate minors of different genders and age groups – for the safety of those who are being held. Additionally, CBP facilities have adequate temperature control and ventilation. ICE facilities are designed for longer-term detention of adults and, in some cases, families.

DHS takes seriously our responsibility for the safety and security of all migrants in the custody of the United States government.

## Myth

DHS has never separated families for prosecutions before – this is a new policy in this Administration.

## Fact

Illegal border crossers, including family units, were referred for prosecutions, as appropriates, under the previous Administration. The average referral rate for amenable adults from FY10 – FY16 was 21 percent.

## Myth

By choice, DHS refuses to keep families together through the immigration adjudication and removal process.

## Fact

Court decisions interpreting the Flores Settlement Agreement (FSA), which has been in existence for over 20 years but was significantly broadened in 2016, limits the government's ability to detain family units. Pursuant to these court decisions, minors detained as part of a family unit cannot be detained in unlicensed facilities for longer than a presumptively reasonable period of 20 days, at which point, minors must be released or transferred to a licensed facility. Because most jurisdictions do not offer licensure for family residential centers, DHS can rarely detain a family for longer than 20 days.

The Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) requires unaccompanied alien children (other than those from contiguous countries – Mexico and Canada – who are eligible to withdraw their application for admission) be transferred from DHS to the Department of Health and Human Services within 72 hours, absent exceptional circumstances.

Topics:  Border Security (/topics/border-security) , Immigration and Customs Enforcement (/topics/immigration-enforcement)

Keywords:  Border Security (/keywords/border-security) , Family detention (/keywords/family-detention) , southwest border (/keywords/southwest-border)

Last Published Date: June 18, 2018

AOL-DEF-00003909