MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:  +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, | Case No.: 17-cv-02366-BAS-KSC |
| Plaintiffs, | |
| v. | **EX. 28 TO PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION** |
| Chad F. Wolf,[1] *et al.*, | |
| Defendants. | **Class Member Declaration** |

---

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.401.221.5857

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.56

## DECLARATION OF ▓▓▓▓▓▓▓▓▓▓

I, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters.

2. My name is ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. I am a Guatemalan national born on ▓▓▓▓▓▓▓▓▓▓. I resided in Guatemala until October 2018 with my minor daughters R., who is eight-years-old, and D., who is four-years-old.

3. I left Guatemala to protect my daughters' lives and my own, which were threatened after I refused to do work for a political organization.

4. We travelled by bus through Mexico for approximately 10 days, arriving in Ciudad Juárez, Chihuahua on October 27, 2018. My daughter D. has suffered from a serious respiratory condition since birth, for which she requires medication. I was very worried for her health and well-being during such a long journey. I brought a large quantity of the medicines she needs and administered these to her during the journey.

5. On October 28, 2018, at or around 4:00 a.m., I arrived with my daughters at the El Paso Port of Entry at the Bridge of the Americas ("El Paso POE"). I approached the international line near the midway point of the bridge, where I saw two male border patrol officers in dark blue uniforms, both carrying big guns strapped across their chests. As we approached the officers, one stopped me from walking over the international line, which is marked by a line of reflectors in the bridge's pedestrian lane. This officer asked me in Spanish to show my documents or passport. I told him that I did not have any documents. The officer then asked me where I was from and I answered that I was from Guatemala. I also

told him that I was here to ask for asylum with my two daughters because we could no longer live in our country. The officer then told me that in that moment they were not permitting anyone to cross because there was no room. He told me to go back to Ciudad Juárez and look for a shelter. I told them again that I needed to cross because I could not go back to my country, and the official again stated that there was no room. We left shortly thereafter because my daughters were very cold and went to a nearby hotel. Later that day, I noticed my daughter D. began to cough and run a fever.

6. The next day, on October 29 at or around 5:00 a.m., I returned to the El Paso POE with my daughters. Two officers in blue uniforms with the same type of guns, but not the same officers as the day before, were again standing at the international line. I approached the two officers, and one asked me for my passport. I told him that I did not have a passport and that I needed help because I was escaping my country and that we wanted to cross into the United States to seek asylum. The officer told me to go back because asylum was not being given. I again asked the officers to let us pass because our lives were at risk in our country. The officer responded that it did not matter what I said to him because they would not let me pass. I repeated that I truly was in need. The officer became more agitated and raised his voice to me, asking me what I hadn't understood about what he had just said, and that he would not let me pass. I then left the port of entry with my two daughters and returned to the hotel.

7. Later that day, at or around 3:30 p.m., I again arrived at the same bridge with my daughters to seek asylum. Two officers were stationed about ten steps away from the international line in U.S. territory, and I noticed that neither carried the large guns I had seen on the other officers. We approached the officers, this time taking a few steps over the international line. One of the officers asked me to show my identification. I responded that I did not have anything. The

officer then asked me what my nationality was. I did not answer this question and only told the officer that I was there to ask for asylum because I could not return to my country. The other officer then ordered me to go back in a loud, angry voice. I asked the officers to please let me pass because I had my daughters with me. The officer who had become agitated then asked me if I did not understand what he had said, and told me I was wasting time. This same officer also aggressively took a step towards me, which caused me to move back. I was afraid this officer would act violently towards us and I crossed back across the international line into Mexico. The officer then remained standing on the line staring at us. I did not want to further provoke the officers and walked toward the entrance on the Mexican side of the bridge, where I stayed until approximately 6:00 p.m. At or around 6:00 p.m., a Mexican soldier approached us and asked what we were doing on the bridge. I responded that we were asking for asylum in the United States but had been turned away. He then ordered me to leave the bridge if they had already told me I could not pass. I returned to the hotel with my two daughters.

8. During these two days, my daughter D.'s health continued to deteriorate and I was very worried about her well-being, especially because of her lung condition. I was also running out of money, and would not have had enough to pay for additional nights at the hotel or for food for my daughters. I was very afraid of remaining in Mexico because of the risk that my daughters or I could be kidnapped, robbed, or otherwise harmed.

9. The following day, on October 30 at or around 1:00 p.m., I crossed the Rio Grande riverbed near downtown El Paso with my daughters. We walked near a massive construction site along the border and passed by a stationary Border Patrol vehicle. The officer inside did not see us or chose not to get out of his vehicle. We walked approximately another five minutes and walked up to another stationary Border Patrol vehicle. The officer inside asked us if we had just crossed

and I responded affirmatively. He asked if anyone else was with us and I told him we came alone. He then told us to wait and called in another officer to come for us. My daughters and I were taken to a Border Patrol station, where they asked for my documents and placed us into a cell that was already full of people. We were held in this cell for two days.

10.  On or around November 1, my daughter D. began to have a very hard time breathing and her cough worsened. I told an official about this, who responded that this was the consequence of bringing children. He then moved us to a different cell with fewer people, where we stayed an additional night.

11.  On or around November 2, we were transported to a different building, where we were again placed in a cell full of people. The cell was so full I could not lay down to sleep the first night. I believe we stayed in this building three nights, but I am unsure because my sense of time began to be distorted.

12.  On or around November 5, we were transported ~~back to the first site where we were held~~, and again placed in a cell for multiple nights.

13.  On November 8, we were transported to Tornillo, Texas, where I was told to sign documents that would facilitate our release. We were then transported to a shelter and released from custody.

14.  I wanted to enter the United States at a Port of Entry to seek asylum, and I tried to. However, after being denied entry to seek asylum multiple times by border officers, I decided out of desperation and the desire to protect my daughters' health, safety, and well-being to cross however I could and ask for asylum once I was in U.S. territory. I am worried that the way I entered will now be held against me and my daughters in our immigration cases.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 10, 2018 at El Paso, Texas.



## CERTIFICATION

I, Alan Dicker, declare that I am fluent in the English and Spanish languages.

On November 10, 2018, I read the foregoing declaration and orally translated it faithfully and accurately into Spanish in the presence of the declarant. After I completed translating the declaration, the declarant verified that the contents of the foregoing declaration are true and accurate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 10, 2018 at El Paso, Texas.

_____          11/10/18
Alan Dicker                        Date