# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*,<br>    *Plaintiffs*,<br><br>v.<br><br>Chad Wolf, *et al.*,<br>    *Defendants*. | No. 3:17-cv-02366-BAS-KSC |

### DECLARATION OF JOHNNY L. ARMIJO

I, Johnny L. Armijo, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records, and reasonably relied upon in the course of my employment, hereby declare as follows relating to the above-captioned matter.

1. I am the Assistant Director of Field Operations, San Diego, for U.S. Customs and Border Protection (CBP). I have been in this role since May 2013.

2. In this capacity, my primary duties include overseeing the planning, directing, and timely execution of Border Security programs and other law enforcement activities in the land, air, and sea environments. I also provide managerial oversight in policy guidance, assure program implementation and compliance, and evaluate program effectiveness throughout CBP's San Diego Field Office (SDFO), which includes the San Ysidro, Otay Mesa, Tecate, Calexico, and Andrade Ports of Entry (POE), as well as an international airport and seaport.

3. Prior to serving in my current capacity, I served as a Deputy Assistant Port Director (Enforcement) at the San Ysidro POE for nearly four years. Prior to that, I served in various supervisory and managerial positions for both CBP and the former Immigration & Naturalization Service (INS) for approximately 10 years. I was initially hired as an INS Immigration Inspector approximately 31 years ago.

4. I make this Declaration to support filing Exhibits 19 (AOL-DEF-00029917), 40 (AOL-DEF-00090513), 41 (AOL-DEF-00517231), and 48 (AOL-DEF-00036343 to Plaintiffs' Motion for Class Certification under seal.

1

*Exhibit 41*

5. Exhibit 41 is a document titled "Queue Management Brief Admissibility Enforcement Unit (AEU)."

6. This document was created for internal CBP use, namely, to brief the Commissioner of CBP on the SDFO's state of readiness to respond to an approaching migrant caravan in October 2018.

7. This document contains an assessment of the San Ysidro POE's resource limitations; detailed information about how CBP ensures that its facilities remain safe and sanitary; and information about CBP Office of Field Operations' consequence delivery approach, including comprehensive quarterly and aggregate statistics for the number of inadmissible aliens processed through the San Ysidro, Otay Mesa, and Tecate POEs during the 2018 fiscal year.

8. If publicly released, the information in this document could readily be exploited by a hostile actor.

    a. This document contains multiple categories of statistics for the each of the three POEs stated in Paragraph 7. Those categories include the number of inadmissible aliens who were processed as expedited removals, processed as expedited removals with credible fear invocations, placed in removal proceedings under Immigration and Nationality Act § 240, and allowed to withdraw their application for admission. The public release of such data could encourage a potential hostile actor to commit a criminal offense. For example, consider an alien contemplating whether to attempt to enter the United States by proffering a fraudulent or counterfeit document. That alien could use this data to assess—whether accurately or not—the chances that, if caught, the alien would be processed in a way that make the risk worthwhile. The public release of such data could also assist a hostile actor in the furtherance of his/her hostile act. For instance, consider an alien smuggler attempting to convince migrants to make the arduous journey north to our Southern Border. That alien smuggler would be able to proffer this data to recruit migrants, using the data to give himself the aura of someone migrants should trust.

    b. Further, when the statistics in this document are read together with the assessment of the San Ysidro POE's resource limitations, this document reveals operational

vulnerabilities. That is, if this document were released to the public, a hostile actor would have a sense as to the San Ysidro, Otay Mesa, and Tecate POEs's resource limitations insofar as processing inadmissible aliens. That hostile actor would then have a baseline to assess what number of inadmissible aliens would strain or overwhelm resources at each of these POEs, and could act accordingly. For example, a hostile actor could use this data to stage a mass incursion crippling CBP operations, or to gauge when CBP's resources may be reallocated toward detainee care and thus conditions may be favorable for smuggling drugs, weapons, contraband, or aliens through these POEs.

*Exhibit 48*

9. Exhibit 48 is a document titled "Migrant Processing at the Limit Line – San Diego Field Office."

10. This document contains detailed information about operations at the pedestrian limit lines of each of the five land POEs under the SDFO. This document contains specific information about the layout of the pedestrian limit line areas at certain POEs, including distance measurements and infrastructures or lack thereof. This document also contains assessments of operational vulnerabilities and potential solutions to mitigate them. Further, this document contains detailed information about operational protocols, including, most prominently, staffing of the limit line areas at each of the five land POEs under the SDFO.

11. If publicly released, the information in this document could readily be exploited by a myriad of hostile actors, including individuals planning to execute a terrorist attack in a POE or once they cross through a POE, individuals attempting to smuggle drugs into the United States on their bodies, and aliens attempting to enter the United States using fraudulent documents. These types of hostile actors would be able to use the specific and concrete information contained in this document to better plan and execute their criminal activities.

12. Additionally, the public release of this document could detrimentally affect CBP's operations, in that it could discourage CBP's management, from the field level to CBP's Office of Field Operations Headquarters, from assessing and candidly conveying operational vulnerabilities. CBP's operations, especially at the San Ysidro POE, are fast-paced and involve a high volume of activity. It is critical that CBP management be able to openly and honestly assess vulnerabilities and the most effective ways to rectify them.

*Exhibits 19 and 40*

13. Exhibit 19 is an email chain with the subject line "San Ysidro End of Day AEU Reporting for July 29, 2016." Exhibit 40 is an email chain with the subject line "San Ysidro End of Day AEU Reporting for September 3, 2016."

14. These documents contain a number of specific statistics for the San Ysidro POE for July 29, 2016 and September 3, 2016, respectively. Those statistics include: the number and location of detainees in custody; the number of inadmissible aliens who were processed as expedited removals, processed as expedited removals with credible fear invocations, placed in removal proceedings under Immigration and Nationality Act § 240, and allowed to withdraw their application for admission; the number of inadmissible aliens processed virtually; statistics related to CBP's Tactical Terrorism Response Teams, which use information derived from targeting and inspection to mitigate threats; the number of aliens transferred to different locations; and a breakdown by nationality of the number of aliens processed as expedited removals with credible fear invocations.

15. If publicly released, these documents could be exploited by a hostile actor in the same vein as Exhibit 41, as described in Paragraph 8(b).

16. I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 10th day of March, 2020.

_____
Johnny L. Armijo
Assistant Director Field Operations, San Diego
Office of Field Operations
U.S. Customs and Border Protection

4