MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:  +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, | Case No.:  17-cv-02366-BAS-KSC |
| Plaintiffs, | |
| v. | **EXHIBIT 43 TO MOTION FOR PRELIMINARY INJUNCTION** |
| Kevin K. McAleenan,[1] *et al.*, | *FILED UNDER SEAL* |
| Defendants. | |

---

[1] Acting Secretary McAleenan is automatically substituted for former Secretary Nielsen pursuant to Fed. R. Civ. P. 25(d).

1

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)

2

  *bazmy@ccrjustice.org*
  Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)

3

  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)

4

  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor

5

New York, NY 10012
Telephone: +1.212.614.6464

6

Facsimile: +1.212.614.6499

7

SOUTHERN POVERTY LAW CENTER
  Mary Bauer (VA Bar No. 31388) (*pro hac vice*)

8

  *mary.bauer@splcenter.org*
1000 Preston Ave.

9

Charlottesville, VA
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)

10

  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)

11

  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340

12

Decatur, GA 30030

13

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)

14

  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200

15

Washington, D.C. 20005
Telephone: +1.202.507.7523

16

Facsimile: +1.202.742.56

17

18

19

20

21

22

23

24

25

26

27

28

# LAREDO FIELD OFFICE CONTIGENCY PLAN

To ensure port management is provided the necessary resources to address the influx of unaccompanied alien children, family units, or other alien populations expressing fear of returning to Mexico and/or country of origin and minimize the impact to legitimate trade and travel.

*Mass Migration – Influx of Unaccompanied Alien Children, Family Units, or Other Alien Populations*

Highly Confidential/Attorneys' Eyes Only

**Laredo Field Office**
**Mass Migration Contingency Plan**
**Updated: August 31, 2017**

## I.    SITUATION

The number of unaccompanied alien children (UACs) processed by Laredo Field Office (LFO) ports of entry has increased significantly in recent years. From fiscal year (FY) 2011 to 2016 the LFO logged a 1,036% increase in UAC encounters. In comparison to the LFO's previous high-water mark year, FY2014, UAC encounters were up 153% in FY2016. And over the most recent FYs for which complete data is available, 2015-2016, the LFO noted an increase of 360%.



| | Brownsville | Del Rio | Eagle Pass | Hidalgo | Laredo | Progreso | Rio Grande City | Roma | Laredo Field Office |
|---|---|---|---|---|---|---|---|---|---|
| FY 11 | 70 | 9 | 25 | 60 | 99 | 10 | 2 | 5 | 280 |
| FY 12 | 111 | 7 | 55 | 102 | 163 | 15 | 14 | 6 | 445 |
| FY 13 | 114 | 12 | 52 | 214 | 301 | 12 | 1 | 7 | 693 |
| FY 14 | 293 | 3 | 129 | 285 | 506 | 5 | 12 | 20 | 1257 |
| FY 15 | 124 | 18 | 78 | 236 | 206 | 5 | 3 | 17 | 691 |
| FY 16 | 303 | 15 | 130 | 2224 | 375 | 24 | 7 | 97 | 3,190 |

Due to significant increases in UAC encounters at LFO ports of entry, and apprehensions by the United States Border Patrol (USBP) in the LFO area of responsibility (Del Rio, Laredo, and Rio Grande Valley Border Patrol Sectors), delays in obtaining placement with the U.S. Department of Health and Human Services – Office of Refugee Resettlement (ORR) have increased as well, causing operational challenges as the ports must maintain custodial care of the UACs for longer periods of time.

---

Highly Confidential/Attorneys' Eyes Only                          AOL-DEF-00011123

Increases in persons and family units (FMUs) claiming "credible fear" are correlated to increases in UAC numbers. From FY2011 to FY2016 the LFO saw a 1,330% increase in fear claims. From FY2014 to FY2016 the LFO experienced a 100% increase, and during the most recent years for which complete data is available, FY2015 to FY2016, the LFO logged an increase of 138%.



**Expedited Removal with Credible Fear**

| | BROWNSVILLE | DEL RIO | EAGLE PASS | HIDALGO | LAREDO | PROGRESO | RIO GRANDE CITY | ROMA | LAREDO FIELD OFFICE |
|---|---|---|---|---|---|---|---|---|---|
| | Brownsville | Del Rio | Eagle Pass | Hidalgo | Laredo | Progreso | Rio Grande City | Roma | Laredo Field Office |
| FY FY 11 | 64 | 18 | 0 | 305 | 46 | 5 | 5 | 26 | 466 |
| FY FY 12 | 125 | 8 | 9 | 328 | 46 | 5 | 2 | 14 | 565 |
| FY FY 13 | 294 | 14 | 17 | 544 | 237 | 4 | 5 | 33 | 1747 |
| FY FY 14 | 1410 | 19 | 149 | 937 | 595 | 43 | 18 | 100 | 3263 |
| FY FY 15 | 835 | 12 | 210 | 1059 | 456 | 107 | 3 | 55 | 2738 |
| FY FY 16 | 1350 | 43 | 445 | 3459 | 861 | 71 | 18 | 252 | 6519 |

The UACs and FMUs originate primarily from three Other-Than-Mexico (OTM) countries: El Salvador, Guatemala and Honduras.

LFO ports of entry do not have adequate facilities, infrastructure, equipment or staffing to accommodate the large number of arriving UACs and family units claiming fear of returning to Mexico or their country of origin.

## II.    MISSION

The Director Field Operations (DFO), Laredo will ensure undocumented aliens, specifically UACs and FMUs expressing fear of returning to Mexico and/or their country of origin or last residence are processed in accordance with existing laws and policy, and are treated with respect and concern. The provisions of CBP Directive No. 3340-043, *The Exercise of Discretionary Authority* and CBP Directive No. 3340-030B, *Secure Detention, Transport and Escort Procedures at Ports of Entry* will be strictly adhered to. The DFO will also ensure that lines of communication remain constant at all levels to minimize the time UACs and family units spend at LFO ports of entry, and port managers

Highly Confidential/Attorneys' Eyes Only                               AOL-DEF-00011124

are provided the resources necessary to address the influx of UACs and family units, and minimize the impact to legitimate trade and travel.

### III.  EXECUTION

A.  The DFO will:

1.  Exercise the responsibility to control the flow of people across our borders.

2.  Ensure terrorists, terrorist weapons; narcotics, criminal aliens, prohibited goods, and other illegal merchandise are prevented from entering the United States.

3.  Ensure that the security of the inspectional process is sufficient to identify frivolous or fraudulent applications for admission or discretion.

4.  Ensure that bona fide applicants for admission are processed expeditiously.

5.  Guarantee humane treatment of migrants and ensure due process under the Immigration and Nationality Act (INA).

6.  Require port directors to identify port detention capacities, operational thresholds, and specific trigger points necessitating outside assistance.

See Annex A through H.

B.  The DFO will implement a phased approach to manage the mass migration.

1.  Phase I – Organic Capabilities Sustained

i.  Mass migration does not exceed the operational capabilities of affected POEs.

ii.  Affected POEs will detain and process migrants under standard operational procedures.

2.  Phase II – Organic Capabilities Strained

i.  Mass migration exceeds the capacity of at least one POE, as identified in port-specific annexes.

ii.  With DFO concurrence, Port Director of affected POE will coordinate with neighboring POEs for assistance.

---

Highly Confidential/Attorneys' Eyes Only                          AOL-DEF-00011125

   iii. With DFO concurrence, Port Director of affected POE will coordinate with neighboring USBP stations for assistance.

   iv. Port Director of affected POE will activate Tactical Enforcement Officers (TEOs) and increase port's security posture.

   v. DFO will begin coordination with ORR, ERO, and the STC, to prepare for potential event expansion.

   vi. Port Directors will establish communication with Government of Mexico (GoM) to elicit information about mass migration.

   vii. DFO will place processing jump teams on hot standby.

   viii. LFO Special Response Team (SRT) members will be placed on hot standby.

3. Phase III – Organic Capabilities Exceeded

   i. Mass migration exceeds the capacity of multiple POEs.

   ii. LFO SRT will be activated.

   iii. LFO processing jump teams will be activated.

   iv. Port Directors coordinate with USBP, CBP Office of Air and Marine (OAM), and other local law enforcement agencies (LEAs) to help maintain port security.

   v. DFO staffs non-24/7 international crossings after hours for processing.

   vi. DFO requests assistance from South Texas Corridor (STC) Commander.

   vii. DFO requests TDY personnel from outside the South Texas corridor.

4. Phase IV – Organic Capabilities Overwhelmed

   i. Mass migration overwhelms the processing, transportation, and detention capacities of CBP components in South Texas (OFO and USBP).

   ii. DFO, in conjunction with OFO headquarters, explores alternative admissibility processing measures.

Highly Confidential/Attorneys' Eyes Only                          AOL-DEF-00011126

      iii. DFO, in conjunction with STC Commander, requests DHS assistance through CBP headquarters.

## IV. ADMINISTRATION

### A. Cost Estimates/Funding Issues:

1. Supplemental overtime funding will be required to support issues outside normal daily operations.

2. Affected ports will assess overtime and resource requirements (food, hygiene supplies, sanitation contracts, etc.) contingent on surge events.

3. As needed, DFO will request overtime cap waivers.

4. Supplemental OIT support will be required.

### B. Travel:

1. Travel and per diem expenses may be required.

2. Specific TDY support will be event-dependent and assessed by the affected port directors.

### C. Lodging:

1. Lodging expenses may be required.

2. Specific lodging requirements will be event-dependent and assessed by the affected port directors.

### D. Reception of Detailed Personnel:

Port Directors will be responsible for receiving detailed personnel, providing operational briefing, providing work assignments, etc.

### E. Uniform and Equipment:

1. All CBP personnel will wear approved uniform and will be equipped in accordance with existing protocol and policy. All specialty units will wear authorized uniforms utilized by their respective units.

2. CBP personnel will be required to follow all established DHS/CBP policy and guidelines. All armed CBP personnel will carry the standard issued

Highly Confidential/Attorneys' Eyes Only                        AOL-DEF-00011127

CBP sidearm and approved intermediate force weapons and will comply with all CBP use of force policies and regulations.

3. Utilization of body armor and the carrying of long-arms are encouraged for officer safety.

## F. Special Equipment:

All personnel detailed to this operation will be equipped by their duty station with CBP approved equipment.

## G. Alien Processing:

All undocumented aliens to include unaccompanied alien children will be processed in accordance with established procedures and at designated locations. Port Directors will coordinate with the Assistant United States Attorney's (AUSA) Office if prosecution is deemed necessary.

## H. Medical:

1. In the event of a medical emergency, all emergency medical protocols will be initiated by CBP personnel on scene.

2. All medical emergencies will be transported to the nearest medical facility. Port Directors will maintain an updated list of addresses, phone numbers and trauma levels of hospitals in their area of responsibility.

## I. Detention / Transportation:

Detention and transportation responsibilities will be conducted in accordance with existing CBP policy. All detained subjects will be detained and transported in relation to the category in which they were processed under. Port Directors will provide detailed instructions to assigned personnel on detention and transportation policies.

## J. Vehicles:

GOVs will be fueled as per existing port and field office policies.

Highly Confidential/Attorneys' Eyes Only                        AOL-DEF-00011128

## V.   COMMAND/CONTROL/COMMUNICATION

### A.  Chain of Command:

1. David P. Higgerson, Director Field Operations, Laredo

2. Frank S. Longoria, Assistant Director Field Operations – Border Security

### B.  Unit Command:

Port Directors will maintain tactical control and coordinate all day-to-day assignments and schedule the appropriate manpower for field operations.

### C.  Communications Details:

The primary means of communication will be via telephone.

### D.  Map Coordinates:

Not Applicable

### E.  Media Plan:

The LFO Public Affairs Officer (PAO), in coordination with CBP Office of Public Affairs (OPA), will coordinate responses to media inquiries and other media and public messaging.

### F.  Air Plan:

The LFO will coordinate with local OAM branches to secure operational support such as aerial observation of the POEs and surrounding areas, aerial reconnaissance of routes of ingress, transportation of SRT, etc.

### G.  Health and Safety Annex:

The DFO will ensure that the Laredo Field Office Standard Operating Procedures for Serious Communicable and Quarantinable Diseases are followed by all CBP employees.

### H.  Legal Advisement:

The LFO and ports of entry will refer all legal matters to their local Office of Chief Counsel.

Highly Confidential/Attorneys' Eyes Only                                   AOL-DEF-00011129

**Annexes**

A.    Port of Brownsville Port Specific Plan
B.    Port of Del Rio Port Specific Plan
C.    Port of Eagle Pass Port Specific Plan
D.    Port of Laredo Port Specific Plan
E.    Port of Hidalgo/Pharr/Anzalduas Port Specific Plan
F.    Port of Rio Grande City Port Specific Plan
G.    Port of Progreso Port Specific Plan
H.    Port of Roma Port Specific Plan
I.    Standard Operating Procedures – Serious Communicable and Quarantinable Diseases
J.    Temporary Holding Cell Capacities
K.    UAC Statistics
L.    Expedited Removal Credible Fear (ERCF) Statistics
M.    Laredo Field Office International Crossings (Types and Hours of Operation)

Highly Confidential/Attorneys' Eyes Only                               AOL-DEF-00011130

**Annex A**
**Port of Brownsville, Laredo Field Office (LFO)**
**Contingency Plan Addressing Possible Mass Migration Influxes**

I. **Situation:**

    A. During FY2016 the Port of Brownsville saw an approximate 50% increase in applicants seeking entry into the United States without lawful entry documentation. The port is anticipating a continued increase from FY17 to FY18.

    B. Most of the applicants that are seeking asylum in the United States, are expressing a fear (Credible Fear/CF) of returning to their home country, and/or want to reunite with a parent/family member in the United States.

    C. Applicants the Port of Brownsville are encountering, are from Caribbean basin (i.e. Cuba, Haiti), Central & South America (i.e. Brazil, El Salvador, Guatemala, and Honduras), and the African Continent (i.e. Somalia, Eritrea, Guinea, Mali). In the past two months, the Port of Brownsville has encountered a new trend of Romanian Families (one parent and child/children with the other parent and other child/children following later).

    D. A significant number of the applicants are other than Mexican (OTM).

    E. The current influx impacts port operations, i.e. long term detention duties, medical escorts, security duties, personal hygiene, feeding, laundry duties, and transportation (airports, shelters, way stations, detention centers, etc.).

    F. For cases that are completed, the Port of Brownsville relies upon ICE/ERO or ORR to allocate space in long-term detention facilities. The current volume of detainees is placing a significant strain on ICE/ERO and ORR detention capacity.

    G. The Port of Brownsville does not have the facilities, infrastructure, equipment, or personnel necessary to accommodate a large number of arriving aliens for extended detention periods.

II. **Mission:**

    A. The Port of Brownsville will effectively manage a mass migration event and/or a sustained migration occurring at the port of entry.

    B. The mass migration will be managed while maintaining continuity of operations (COOP).

    C. The purpose of this plan is to mitigate the risk to life from a mass migration event, and to ensure that the borders are secured while ensuring that legitimate trade and travelers continue to cross our borders without significant delays. These incident management strategies are designed to facilitate CBP's ability to mitigate against, prepare for, and respond to the impact of such events under extreme circumstances.

Highly Confidential/Attorneys' Eyes Only

    D.  Minimize UAC and OTM time in CBP custody.

    E.  The Brownsville port of entry has established a secondary organic overflow avenue for processing and staging.

## III.   Execution:

    A.  The Port Director will:

       1.  Exercise the responsibility to control the flow of people across our borders.

       2.  Ensure terrorists, terrorist weapons, narcotics, criminal aliens, prohibited goods, and other illegal merchandise are prevented from entering the United States.

       3.  Ensure that the security of the inspection process is sufficient to identify frivolous or fraudulent applications for admission or discretion.

       4.  Ensure that bona fide applicants for admission are processed expeditiously.

       5.  Guarantee humane treatment of migrants and ensure due process under the Immigration and Nationality Act (INA).

       6.  Identify the port's detention capacities, operational thresholds, and specific trigger points requiring outside assistance.

    B.  The Port Director will implement a phased approach to manage the mass migration.

       1.  Phase I – Organic Capabilities Sustained

          i.  Mass migration does not exceed the operational capabilities of the Port of Brownsville.

         ii.  The Port of Brownsville will detain and process migrants under standard operational procedures.

       2.  Phase II – Organic Capabilities Strained

          i.  Mass migration exceeds the capacity of the Port of Brownsville.

         ii.  Port Director and/or designee will:

            a.  Coordinate with the Ports of [ LE ] ( LE ) for assistance.

            b.  Coordinate with [ LE ] USBP stations for assistance.

    c. Activate Tactical Enforcement Officers (TEOs) and increase port's security posture.

    d. Begin coordination with ORR, ERO, and the STC, to prepare for potential event expansion.

    e. Establish communication with the Government of Mexico (GoM) to elicit information about mass migration.

    f. Test overflow processing work stations in anticipation of LFO jump team deployment.

3. Phase III – Organic Capabilities Exceeded

    i. Mass migration exceeds the capacity of port facilities.

    ii. Port Director will coordinate with USBP, CBP Office of Air and Marine (OAM), and other local law enforcement agencies (LEAs) to help maintain port security.

    iii. Port Director will staff non-24/7 international crossings after hours for processing.

    iv. Port Director will assign deployed jump teams to appropriate port locations.

    v. Port Director will initiate Secondary Processing and Detention facility at Los Indios Trade Office, dock space, and warehouse.

    vi. Port Director will coordinate with ORR and ERO for assistance with transporting aliens out of the area.

4. Encounter

    i. Staging

        a. The Port has established pre-staging/staging wait areas at each land border crossings under area of responsibility.

    ii. Triage/Categorizing

        a. UACs

        b. Family Units

        c. Adults

    iii. Initial Medical Screening

        a. Pregnant

        b. Communicable Diseases

Highly Confidential/Attorneys' Eyes Only

    c.   Special Needs (i.e. Physically Handicapped or Mentally Disabled)

5. Processing

   i.   Holding Areas

       a.   The port has the following holding cells available:

           i.   Gateway Bridge has two (2) cells in Passport Control Secondary with a total capacity of 15 detainees. In addition, Gateway Bridge has one cell in the Vehicle Secondary Building with a capacity of seven (7) detainees; and two (2) cells in Pedestrian Processing with a capacity of 11 detainees.

          ii.   B&M Bridge has two (2) cells in Passport Control Secondary with a total capacity of 20 detainees. In addition, B&M Bridge has one (1) cell in the Vehicle Secondary Building with a capacity of three (3) detainees); and two cells in Pedestrian Processing with a capacity of 13 detainees.

        iii.   Veterans Bridge has two (2) cells in Passport Control Secondary with a total capacity of 15 detainees. In addition, Veterans Bridge has one (1) cell in the Vehicle Secondary Building with a capacity of two (2) detainees; and two (2) cells in Pedestrian Processing with a capacity of 12 detainees.

        iv.   Los Indios Bridge has two (2) cells in Passport Control Secondary with a total capacity of 19 detainees. In addition, Los Indios Bridge has one (1) cell in the Vehicle Secondary Building with a capacity of five (5) detainees; and two (2) cells in Pedestrian Processing with a capacity of 15 detainees.

       b.   In addition to the holding cells, the port currently has the capacity to stage approximately 239 persons in the passport control lobby areas (Gateway-88, Brownsville & Matamoros Bridge-51, Veteran's-52, and Los Indios-48). These figures are based on formulas used by GSA fire code for the maximum amount of persons per square foot for the purposes of staging. An additional overflow processing area has been designated at the Los Indios Trade Office for processing. The maximum capacity of the overflow

Highly Confidential/Attorneys' Eyes Only

processing area is approximately 300 persons.  This area will only be used when the port has reached the maximum occupancy levels listed above for all bridges.

    ii.  Processing Capacity:  The port currently has twenty-eight work stations with the capacity to process cases.  (Gateway PCS 4 and 5 counters, Brownsville and Matamoros Bridge  PCS 3 and 5 counters, Veteran's PCS 4 and 4 counters, and Los Indios PCS 3 and 5 counters).  The number of workstations available may be affected if interview rooms are used to house unaccompanied alien children (UACs).  In addition to these areas, an additional area has been designated at Los Indios Trade facility for an additional 17 processing stations to include  The holding area has an approximate capacity to stage 300 people.

    iii.  Processing Times:   Based on the workstations available and absent any language barriers (i.e. other than English or Spanish), the port has a capacity to process approximately 300 cases every 24 hours with an average processing time of 2.5 hours per terminal.

6.  Transportation

    i.  Detention before Transportation- The port has the capacity to accommodate 41 UACs and securely detain 48 adults within its interview rooms and detention cells.

    ii.  G4S will be contacted for transport after placement has been authorized by ERO.

    iii.  Organic resources will be utilized for transport after placement has been authorized by ERO.

    iv.  OBP will be contacted for assistance in the transportation of detainees to ERO.

## IV.  Administration:

A.  The Brownsville Operations Center will be fully staffed and operational.

    1.  Contact Numbers for the Brownsville Operations Center:

        i.  LE

    2.  All reporting will be consolidated at the LFO and forwarded to appropriate higher commands.

B.  To the extent possible, operations will be executed utilizing organic port resources and personnel.

C.  Resource requirements will be identified and relayed to the LFO:

AOL-DEF-00011135

1. Cost Estimates / Funding Issues

   i.   Supplemental overtime funding and/or other funding issues outside normal operations will be required.

   ii.  Specific overtime and resource requirements (food, hygiene supplies, sanitation contracts, etc.) will be event-dependent and assessed by Port Director.

   iii. Port Director will request overtime cap waivers for appropriate port personnel.

   iv.  Supplemental OIT support will be required.

2. Travel

   i.   Travel and per diem expenses may be required.

   ii.  Specific TDY support will be event-dependent and assessed by the Port Director.

3. Lodging

   i.   Lodging expenses may be required.

   ii.  Specific lodging requirements will be event-dependent and assessed by the Port Director.

4. Reception of Detailed Personnel

   i.   Port Director will be responsible for receiving detailed personnel, providing operational briefing, providing work assignments, granting system accesses, etc.

5. Uniform and Equipment

   i.   All CBP personnel will wear approved uniform and will be equipped in accordance with existing protocol and policy. All specialty units will wear authorized uniforms utilized by their respective units.

   ii.  CBP personnel will be required to follow all established DHS/CBP policy and guidelines. All armed CBP personnel will carry the standard issued CBP sidearm and approved intermediate force weapons and will comply with all CBP use of force policies and regulations.

   iii. Utilization of body armor and the carrying of long-arms are encouraged for officer safety.

AOL-DEF-00011136

6. Special Equipment

    i. All personnel detailed to this operation will be equipped by their duty station with CBP approved equipment.

7. Alien Processing

    i. All illegal aliens apprehended within the POEs will be processed in accordance with established procedures and at designated locations. Port Director will coordinate with the United States Attorney's Office (USAO) if prosecution is deemed necessary.

8. Medical

    i. In the event of a medical emergency, all emergency medical protocols will be initiated by CBP personnel on scene.

    ii. All medical emergencies will be transported to the nearest medical facility. Port Director will maintain an updated list of addresses, phone numbers and trauma levels of hospitals in their area of responsibility.

    iii. In those cases where detainees require medical clearance (non-emergency) prior to acceptance for placement by ICE/ERO or ORR, the detainee will be taken to the nearest medical facility and escorted in accordance with CBP policy.

9. Detention / Transportation

    i. Detention and transportation responsibilities will be conducted in accordance with existing CBP policy. All detained subjects will be detained and transported in relation to the category in which they were processed under. Port Director will provide detailed instructions to assigned personnel on detention and transportation policies.

10. Vehicles

    i. GOVs will be fueled as per existing port and field office policies.

## V. Command / Control / Communications:

A. The Port Director or his designee will act as the incident commander.

B. The Port Director will coordinate with the STC, LFO, OFO headquarters, and the Government of Mexico (GoM) as necessary.

C. Port Director, or his/her designee, will have operational/tactical control and command authority over respective CBP components involving, organizing, and

employing commands, assigning tasks, designating objectives and giving authoritative direction necessary to accomplish area objectives while maintaining tactical and operational control of their assets.

D. Communication will occur throughout the LFO under the purview of existing policy and capabilities. All communications will be carried out in the encrypted mode.

E. Point of Contact

 1. Petra Horne, Port Director

  Office: ███████████

  Cell: ██████████

 2. Bob Parker, Deputy Port Director

  Office: ██████████

  Cell: ██████████

 3. Adriana Gonzalez, Assistant Port Director – Border Security

  Office: ███████████, ext. ██████

  Cell: ██████████

 4. Jose Aguilar, Assistant Port Director – Border Security

  Office: ██████████

  Cell: ██████████

 5. Watch Commanders

  Sylvia Gutierrez

  Cell: ██████████

  Chris Kishore

  Cell: ██████████

  Maria L. Kishore

  Cell: ██████████

  Michael Martinez

  Cell: ██████████

Highly Confidential/Attorneys' Eyes Only

Laura Rohrbough

Cell: ███████████

Highly Confidential/Attorneys' Eyes Only

**Appendices**

**Media Plan:**

The LFO Public Affairs Officer **(PAO)**, in coordination with CBP Office of Public Affairs (OPA), will coordinate responses to media inquiries and other media and public messaging.

| | | |
|---|---|---|
| Primary Local PAL | Elias Rodriguez (BRO) |  |
| Secondary Local PAL | Jacqueline Bruce (BRO) | |
| LFO PAO | Mucia Dovalina | |
| CBP OPA PAO | Rick Pauza | |

**Air Plan:**

The LFO will coordinate with local OAM branches to secure operational support such as aerial observation of the POEs and surrounding areas, aerial reconnaissance of routes of ingress, transportation of SRT, etc.

**Health and Safety Annex:**

The Port Director will ensure that the Laredo Field Office Standard Operating Procedures for Serious Communicable and Quarantine Diseases are followed by all CBP employees.

**Contacts:**

**Law Enforcement:**

- Brownsville Police Dept.                           956-548-7000
  - Liaison: J.J. Trevino                           956-548-7121
- Cameron County Sheriff's Office                    956-544-0860
  - Liaison: "Norma"                                956-544-6700
- Cameron County                                     956-547-7000
  - Liaison: Tom Hushen                             956-547-7000
- Texas Department of Public Safety                  956-565-7500/7600
  - Liaison: Tony Pena                              956-270-0728/565-7120
- University of Texas/Brownsville                     956-882-2222/882-7788
  - Liaison: Raul Munquia                           956-882-2222/882-7788
- OBP RGV Sector
  - Liaison: Evan Adamson
  - Liaison: Marlene Castro
- OBP Ft. Brown
  - Liaison: Sup. Oscar Garcia III
- OBP Brownsville
  - Liaison: Duty Supervisor
- OBP Harlingen
  - Liaison: Orlando Sierra

- OBP BORTAC Liaison 
  - Liaison: Omar Escalan
- OAM Liaison
  - Liaison: Asst. Dept. Mario Sanchez
- HSI Liaison
  - Liaison: Adelina Pruneda
  - Liaison: Sector

**EMS/Hospitals:**

Valley Baptist Medical Center/Brownsville
1040 W Jefferson St
Brownsville TX
(956) 698-5400

Valley Regional Medical Center
100 E. Alton Gloor Blvd.
Brownsville, Texas 78526
(956) 350-7000

Valley Baptist Medical Center-Harlingen
2101 Pease St.
Harlingen, Texas 78520
(956) 389-1100

Weslaco Knapp Medical Center
1401 E. 8th St.
Weslaco, Texas
(956) 968-8567

McAllen Medical Center
301 W. Expressway 83
McAllen, Texas
(956) 632-4000

Mission Regional Medical Center
900 S. Bryan
Mission, Texas
(956) 323-9000

Rio Grande Regional
101 E. Ridge Rd.
McAllen, Texas
(956) 632-6000

Valley Day and Night Clinic
3302 Boca Chica Blvd.

Brownsville, Texas
(956)-982-1001

Valley Day and Night Clinic
1755 W. Price Rd.
Brownsville, Texas
(956) 546-1000

**Government of Mexico**

- CISEN :                          (011) 52 1868 828-2159
- Mexican Customs:        (011) 52 868 191-0574/(011) 52 165 110-03295
- Mexican Immigration:   (011) 52 868 812-0251
- Mexican Consul:           956-459-8467

Highly Confidential/Attorneys' Eyes Only                                        AOL-DEF-00011142

**Annex B**
**Port of Del Rio, Laredo Field Office (LFO)**
**Contingency Plan Addressing Possible Mass Migration Influxes**

I.    **Situation:**

    A.  During FY17 the Port of Del Rio has encountered applicants seeking entry into the United States without lawful entry documentation seeking asylum in the United States, expressing a fear (Credible Fear/CF) of returning to their home country, and/or wanting to reunite with a parent/family member in the United States.

    B.  A significant number of the applicants are other than Mexicans (OTMs) and arriving as unaccompanied alien children (UACs) and family units.

    C.  The Port of Del Rio does not have the facilities, infrastructure, equipment or personnel necessary to accommodate a large number of arriving aliens for extended detention periods.

II.    **Mission:**

    A.  The Port of Del Rio will effectively manage a mass migration event and/or a sustained migration occurring at the port of entry.

    B.  The mass migration will be managed while maintaining continuity of operations (COOP).

    C.  The purpose of this plan is to mitigate the risk to life from a mass migration event, and to ensure that the borders are secured while ensuring that legitimate trade and travelers continue to cross our borders without significant delays.

    D.  Minimize UAC and OTM time in CBP custody.

III.    **Execution:**

    A.  The Port Director will:

        1.  Exercise the responsibility to control the flow of people across our borders.

        2.  Ensure terrorists, weapons of terror, narcotics, criminal aliens, prohibited goods, and other illegal merchandise are prevented from entering the United States.

        3.  Ensure that the security of the inspection process is sufficient to identify frivolous or fraudulent applications for admission or discretion.

        4.  Ensure that bona fide applicants for admission are processed expeditiously.

AOL-DEF-00011143

5. Guarantee humane treatment of migrants and ensure due process under the Immigration and Nationality Act (INA).

6. Identify the port's detention capacities, operational thresholds, and specific trigger points requiring outside assistance.

B. The Port Director will implement a phased approach to manage the mass migration.

1. Tier I – Sustained Operational Capabilities

   i. Mass migration does not exceed the operational capabilities of the Port of Del Rio.

   ii. The Port of Del Rio will detain and process migrants under local standard operational procedures.

2. Tier II – Strained Operational Capabilities

   i. Mass migration exceeds the capacity of the Port of Del Rio.

   ii. Port Director and/or designee will:

      a. Coordinate with the Ports of [ LE ] for assistance.

      b. Coordinate with U.S. Border Patrol Sector Del Rio to request assistance from [ LE ] stations.

      c. Activate Tactical Enforcement Officers (TEOs) and increase port's security posture.

      d. Begin coordination efforts with local ERO, ORR, and the STC Del Rio Area Team, to prepare for potential event expansion.

      e. Establish communication with the Government of Mexico (GoM) to elicit information about mass migration.

      f. Utilize G4S assets for Facilities Guard to conduct detention log checks, provide meals, and escort individuals from processing locations to detention cells.

3. Phase III – Organic Capabilities Exceeded

   i. Mass migration exceeds the capacity of port facilities.

   ii. Port Director will coordinate with USBP, CBP Office of Air and Marine (OAM), and other local law enforcement agencies (LEAs) to help maintain port security.

      iii. Port Director will assign deployed jump teams to appropriate port locations.

      iv. Port Director will initiate Secondary Processing and Detention facility with USBP stations.

      v. Port Director will coordinate with ORR, ERO, USBP, and G4S for assistance with transporting aliens out of the area

4. Encounter

   i. Staging

      a. The Port has established pre-staging/staging wait areas at each land border crossings under area of responsibility.

   ii. Triage/Categorizing

      a. UACs

      b. Family Units

      c. Adults

   iii. Initial Medical Screening

      a. Pregnant

      b. Communicable Diseases

      c. Special Medical Needs (Physically Handicapped or Mentally disabled)

5. Processing

   i. Holding Areas – The Del Rio Port of Entry currently has the capacity to stage approximately sixty-three (63) persons (seated) in the passport control lobby, a controlled area. The maximum capacity of the overflow processing area is forty-nine (49) persons. The overflow of these 49 persons would be in the 12 holding cells (10 cells may hold up to 4 persons and 2 cells are family unit cells; 1 can hold a family of 6-8 persons, the other can hold a family of 4 and the 1 cell in cargo can hold 3 persons). The cells are located in the secure area of the Admin building, the Headhouse, Cargo area, and at ADT.

   ii. Processing Capacity – The passport control area currently has eight (8) workstations that may be used for processing in case there is an influx of cases. There are five (5) interview rooms with one (1) workstation each. Four (4) are in the secure area of

the Admin building and one (1) is in the Headhouse. Total workstations are 13.

    iii.  Processing Times – Based on the workstations available and absent any language barriers (e.g. Other than English or Spanish), the port, "ideally", has the capacity to process no more than 104 Expedited Removal/Credible Fear cases within a 24 hour period.



6.  Transportation

    i.  Detention before Transportation – The port has the capacity to accommodate thirty-eight (38) persons (adults/minors) and securely detain them in the detention cells.

    ii.  G4S will be contacted for transport after placement has been authorized by ERO. If G4S is not available, the POE will use its available resources for transportation.

    iii.  Organic resources will be utilized for transport after placement has been authorized by ERO.

    iv.  OBP will be contacted for assistance in the transportation of detainees to ERO.

## IV.  Administration:

A.  The port's command center will be activated at the Port Director's discretion.

    1.  Contact Numbers upon activation of Command Center:

        i.  

    2.  All reporting will be consolidated at the Laredo Operations Center and forwarded through appropriate chain-of-command.

B.  To the extent possible, operations will be executed utilizing organic port resources and personnel.

C.  Resource requirements will be identified and relayed to the LFO:

    1.  Cost Estimates / Funding Issues

        i.  Supplemental overtime funding and/or other funding issues outside normal operations will be required.

    ii.  Specific overtime and resource requirements (food, hygiene supplies, sanitation contracts, etc.) will be event-dependent and assessed by Port Director.

    iii.  Port Director will request overtime cap waivers for appropriate port personnel.

    iv.  Supplemental OIT support will be required.

2. Travel

    i.  Travel and per diem expenses may be required.

    ii.  Specific TDY support will be event-dependent and assessed by the port director.

    iii.  Request will be made for non-per diem volunteers of officers residing in Del Rio, but stationed at other ports (e.g. Eagle Pass, Laredo, and RGV).

3. Lodging

    i.  Lodging expenses may be required.

    ii.  Specific lodging requirements will be event-dependent and assessed by the port director.

    iii.  Request will be made for non-per diem volunteers of officers residing in Del Rio, but stationed at other ports (e.g. Eagle Pass, Laredo, and RGV).

4. Reception of Detailed Personnel

    i.  Port Director will be responsible for receiving detailed personnel, providing operational briefing, providing work assignments, granting system accesses, etc.

5. Uniform and Equipment

    i.  All CBP personnel will wear approved uniform and will be equipped in accordance with existing protocol and policy. All specialty units will wear authorized uniforms utilized by their respective units.

    ii.  CBP personnel will be required to follow all established DHS/CBP policy and guidelines. All armed CBP personnel will carry the standard issued CBP sidearm and approved intermediate force weapons and will comply with all CBP use of force policies and regulations.

Highly Confidential/Attorneys' Eyes Only

       iii. Utilization of body armor and the carrying of long-arms are encouraged for officer safety.

6. Special Equipment

       i. All personnel detailed to this operation will be equipped by their duty station with CBP approved equipment.

7. Alien Processing

       i. All illegal aliens apprehended within the POEs will be processed in accordance with established procedures and at designated locations. Port Director will coordinate with the United States Attorney's Office (USAO) if prosecution is deemed necessary.

8. Medical

       i. In the event of a medical emergency, all emergency medical protocols will be initiated by CBP personnel on scene.

       ii. All medical emergencies will be transported to the nearest medical facility. Port Director will maintain an updated list of addresses, phone numbers and trauma levels of hospitals in their area of responsibility.

9. Detention / Transportation

       i. Detention and transportation responsibilities will be conducted in accordance with existing CBP policy. All detained subjects will be detained and transported in relation to the category in which they were processed under. Port Director will provide detailed instructions to assigned personnel on detention and transportation policies.

10. Vehicles

       i. GOVs will be fueled as per existing port and field office policies.

## V.   Command / Control / Communications:

A. The Port Director or his/her designee will act as the incident commander.

B. The Port Director or his/her designee will coordinate with the STC, OFO headquarters, and the Government of Mexico (GoM) as necessary.

C. Port Director, or his/her designee, will have operational control and command authority over respective CBP components involving, organizing, and employing commands, assigning tasks, designating objectives and giving authoritative

AOL-DEF-00011148

direction necessary to accomplish area objectives will maintain tactical and operational control of their assets.

D.  Communication will occur throughout the LFO under the purview of existing policy and capabilities.  All communications will be carried out in the encrypted mode.

E.  Point of Contact

1.  Alberto D. Perez, Port Director

Office: ███████████

Cell: ███████████

2.  Narcisco Gonzalez, Asst. Port Director – Mission Support

Office: ███████████

Cell: ███████████

3.  David W. Green , Asst Port Director, Cargo & Conveyance Operations

Office: ███████████

Cell: ███████████

4.  Gilbert Calderon, Chief CBPO – Tactical Operations

Office: ███████████

Cell: ███████████

5.  Barbara Calderon, Chief CBPO – Passenger Operations

Office: ███████████

Cell: ███████████

Highly Confidential/Attorneys' Eyes Only

## Appendices

**Media Plan:**

The LFO Public Affairs Officer (PAO), in coordination with CBP Office of Public Affairs (OPA), will coordinate responses to media inquiries and other media and public messaging.

| | | |
|---|---|---|
| Primary Local PAL | Dennis Smith |  |
| Laredo Field Office PAO | Mucia Dovalina | |

**Air Plan:**

The LFO will coordinate with local OAM branches to secure operational support such as aerial observation of the POEs and surrounding areas, aerial reconnaissance of routes of ingress, transportation of SRT, etc.

**Health and Safety Annex:**

The Port Director will ensure that the Laredo Field Office Standard Operating Procedures for Serious Communicable and Quarantinable Diseases are followed by all CBP employees.

**Contacts:**

**Law Enforcement:**

- Del Rio Police Dept.                          (830) 774-8718
- Val Verde County Sheriff's Office    (830) 774-7513
- Texas Department of Public Safety   (830) 703-1225
- USBP Del Rio Sector
- USBP Del Rio Station
- USBP Comstock Station
- USBP Bracketville Station
- HSI Del Rio Resident Office

**EMS/Hospitals:**

Val Verde Regional Medical Center
801 N. Bedell Avenue
Del Rio, Texas 78840
(830) 775-8566

**Government of Mexico**

- Mexican Customs:        (877) 101-0645
- Mexican Immigration:   (877) 772-1052
- Mexican Consul:          (830) 775-2352

**Annex C**
**Port of Eagle Pass, Texas, Laredo Field Office (LFO)**
**Contingency Plan Addressing Possible Mass Migration Influxes**

I.    **Situation:**

    A.  During FY16 the Port of Eagle Pass saw a dramatic increase in applicants seeking entry into the United States. These applicants are not in possession of lawful entry documentation.

    B.  Most of the applicants are seeking asylum in the United States, are expressing a fear (Credible Fear/CF) of returning to their home country, and/or want to reunite with a parent/family member in the United States.

    C.  A significant number of the applicants are other than Mexicans (OTMs).

    D.  A multitude of the applicants are arriving as unaccompanied alien children (UACs) and family units.

    E.  Due to a significant increase in apprehensions by United States Border Patrol (USBP) in the LFO area of responsibility (Del Rio, Laredo, and Rio Grande Valley Border Patrol Sectors), the delay in obtaining detention space from the Office of Refugee Resettlement (ORR) and Immigration and Customs These delays have impacted port operations as port resources are used to conduct long term detention duties – medical escorts, security duties, personal hygiene, feeding, laundry duties, and transportation (airports, shelters, way stations, detention centers, etc.).

    F.  The Eagle Pass Port of Entry does not have the facilities, infrastructure, equipment or personnel necessary to accommodate a large number of arriving aliens for extended detention periods.

    G.  Eagle Pass will often experience delays in the area of 7-14 days before placement is secured.

II.   **Mission:**

    A.  The Eagle Pass Port of Entry will effectively manage a mass migration event and/or a sustained migration occurring at the port of entry.

    B.  The mass migration will be managed while maintaining continuity of operations (COOP).

    C.  The purpose of this plan is to mitigate the risk to life from a mass migration event, and to ensure that the borders are secured while ensuring that legitimate trade and travelers continue to cross our borders without significant delays. These incident management strategies are designed to facilitate CBP's ability to mitigate against, prepare for, and respond to the impact of such events under extreme circumstances. Stressing that Officer safety is paramount in all occasions.

Highly Confidential/Attorneys' Eyes Only

D. Minimize UAC and OTM time in CBP custody.

E. The Eagle Pass Port of entry has establish a secondary alternative with OBP South Station as an overflow avenue for processing and staging.

III.    **Execution:**

A. The Port Director will:

1. Exercise the responsibility to control the flow of people across our borders.

2. Ensure terrorists, terrorist weapons, narcotics, criminal aliens, prohibited goods, and other illegal merchandise are prevented from entering the United States.

3. Ensure that the security of the inspection process is sufficient to identify fraudulent applications for admission or discretion.

4. Ensure that bona fide applicants for admission are processed expeditiously and maintaining inspectional integrity.

5. Guarantee humane treatment of migrants and ensure due process under the Immigration and Nationality Act (INA).

6. Identify the port's detention capacities, operational thresholds, and specific trigger points requiring outside assistance.

B. The Port Director will implement a phased approach to manage the mass migration.

1. Phase I – Organic Capabilities Sustained

    i. Mass migration does not exceed the operational capabilities of the Pass Port of Entry.

    ii. The Eagle Pass Port of Entry will detain and process migrants under standard operational procedures currently in place.

2. Phase II – Organic Capabilities Strained

    i. Mass migration exceeds the capacity of the Eagle Pass Port of Entry.

    ii. Port Director and/or designee will:

        a. Coordinate with the [ LE ] [ LE ] for assistance.

        b. Activate Tactical Enforcement Officers (TEOs) and increase port's security posture.

        c.  Begin coordination with ORR, ERO, and the STC, to prepare for potential event expansion.

        d.  Establish communication with the Government of Mexico (GoM0 to elicit information about mass migration.

3.  Phase III – Organic Capabilities Exceeded

    i.  Mass migration exceeds the capacity of port facilities.

    ii.  Port Director will coordinate with USBP, CBP Office of Air and Marine (OAM), and other local law enforcement agencies (LEAs) to help maintain port security.

    iii.  Port Director will staff non-24/7 international crossings after hours for processing.

    iv.  Port Director will assign deployed jump teams to appropriate port locations.

    v.  Port Director will coordinate with ORR and ERO for assistance with transporting aliens out of the area.

4.  Encounter

    i.  Staging

        a.  The Port has established pre-staging/staging wait areas at each land border crossings under area of responsibility.

    ii.  Triage/Categorizing

        a.  UACs

        b.  Family Units

        c.  Adults

    iii.  Initial Medical Screening

        a.  Pregnant

        b.  Communicable Diseases

        c.  Special Medical Needs (Physically Handicapped or Mentally disabled)

5.  Processing

    i.  Holding Areas – The port currently has the capacity to stage approximately 100 persons in the passport control lobby and Secondary areas of the Camino Real International Bridge, and 80

AOL-DEF-00011153

at the Eagle Pass International Bridge. Additional overflow processing areas have been designated at the Camino Real International Bridge (training room) and the multi-purpose meeting room at Eagle Pass International (50-60 person additional capacity).

    a. Camino Real has four holding cells.

    b. Eagle Pass has three holding cells.

ii. Processing Capacity – The port currently has eight work stations at the Camino Real International Bridge with the capacity to process cases. The port has seven at the Eagle Pass International Bridge that can be used as work stations. The number of workstations available may be affected if interview rooms are used to house unaccompanied alien children (UACs).

6. Transportation

    i. G4S will be contacted for transport after placement has been authorized by ERO.

    ii. Organic resources will be utilized for transport after placement has been authorized by ERO.

    iii. OBP will be contacted for assistance in the transportation of detainees to ERO.

## IV.   Administration:

A. The port's command center will be activated at the Port Director's discretion.

    1. Contact Numbers upon activation of Command Center:

        i.    LE

    2. All reporting will be consolidated at the LFO and forwarded to appropriate higher commands.

B. To the extent possible, operations will be executed utilizing organic port resources and personnel.

C. Resource requirements will be identified and relayed to the LFO:

    1. Cost Estimates / Funding Issues

        i. Supplemental overtime funding and/or other funding issues outside normal operations will be required.

AOL-DEF-00011154

    ii.   Specific overtime and resource requirements (food, hygiene supplies, sanitation contracts, etc.) will be event-dependent and assessed by Port Director.

    iii.  Port Director will request overtime cap waivers for appropriate port personnel.

    iv.  Supplemental OIT support will be required.

2. Travel

    i.   Travel and per diem expenses may be required.

    ii.   Specific TDY support will be event-dependent and assessed by the port director.

3. Lodging

    i.   Lodging expenses may be required.

    ii.   Specific lodging requirements will be event-dependent and assessed by the port director.

4. Reception of Detailed Personnel

    i.   Port Director will be responsible for receiving detailed personnel, providing operational briefing, providing work assignments, granting system accesses, etc.

5. Uniform and Equipment

    i.   All CBP personnel will wear approved uniform and will be equipped in accordance with existing protocol and policy. All specialty units will wear authorized uniforms utilized by their respective units.

    ii.   CBP personnel will be required to follow all established DHS/CBP policy and guidelines. All armed CBP personnel will carry the standard issued CBP sidearm and approved intermediate force weapons and will comply with all CBP use of force policies and regulations.

    iii.  Utilization of body armor and the carrying of long-arms are encouraged for officer safety.

6. Special Equipment

    i.   All personnel detailed to this operation will be equipped by their duty station with CBP approved equipment.

7. Alien Processing

Highly Confidential/Attorneys' Eyes Only

     i.   All illegal aliens apprehended within the POEs will be processed in accordance with established procedures and at designated locations.  Port Director will coordinate with the United States Attorney's Office (USAO) if prosecution is deemed necessary.

8. Medical

     i.   In the event of a medical emergency, all emergency medical protocols will be initiated by CBP personnel on scene.

     ii.  All medical emergencies will be transported to the nearest medical facility. Port Director will maintain an updated list of addresses, phone numbers and trauma levels of hospitals in their area of responsibility.

9. Detention / Transportation

     i.   Detention and transportation responsibilities will be conducted in accordance with existing CBP policy.  All detained subjects will be detained and transported in relation to the category in which they were processed under.  Port Director will provide detailed instructions to assigned personnel on detention and transportation policies.

10. Vehicles

     i.   GOVs will be fueled as per existing port and field office policies.

**V.    Command / Control / Communications:**

A. The Port Director or his designee will act as the incident commander.

B. The Port Director will coordinate with the STC, OFO headquarters, and the Government of Mexico (GoM) as necessary.

C. Port Director, or his/her designee, will have operational control and command authority over respective CBP components involving, organizing, and employing commands, assigning tasks, designating objectives and giving authoritative direction necessary to accomplish area objectives will maintain tactical and operational control of their assets.

D. Communication will occur throughout the LFO under the purview of existing policy and capabilities.  All communications will be carried out in the encrypted mode.

E. Points of Contact

1. John Brandt, Port Director

Highly Confidential/Attorneys' Eyes Only

Office: ████████████

Cell: ███████████

2. Pete Macias, Assistant Port Director, Passenger Operations

Office: █████████████

Cell: ██████████

3. Gilbert Sepulveda, Assistant Port Director, Trade Operations

Office: ██████████

Cell: ██████████

4. John Alanis, Administration Chief

Office: ████████

Cell: ███████████

**Appendices**

**Media Plan:**

The LFO Public Affairs Officer (PAO), in coordination with CBP Office of Public Affairs (OPA), will coordinate responses to media inquiries and other media and public messaging.

| | | |
|---|---|---|
| Primary Local PAO | Dennis Smith | ███████████ |
| Laredo LFO PAO | Mucia Dovalina | ████████ |

**Air Plan:**

The LFO will coordinate with local OAM branches to secure operational support such as aerial observation of the POEs and surrounding areas, aerial reconnaissance of routes of ingress, transportation of SRT, etc.

**Health and Safety Annex:**

The Port Director will ensure that the Laredo Field Office Standard Operating Procedures for Serious Communicable and Quarantinable Diseases are followed by all CBP employees.

**Contacts:**

**Law Enforcement:**

- Eagle Pass Police Dept.                  830-773-9044
- Maverick County Sheriff's Office          830-773-2321
- Texas Department of Public Safety         830-773-5050
- OBP DLR Sector                           ████████
- OBP Eagle Pass North                     ████████
- OBP Eagle Pass South                     ████████
- OBP Del Rio Station                      ██████
- OBP BORTAC Liaison
- Patrol Agent in Charge Del Rio Sector    ██████
  BORTAC Commander                         ████████
  BORSTAR Commander                        ████████
- HSI                                      ██████

**EMS/Hospitals:**

Fort Duncan Regional Medical Center
3333 N Foster Maldonado Blvd
Eagle Pass, TX
(830) 773-5321

Val Verde Regional Medical Center

801 N Bedell Ave, Del Rio, TX 78840
(830) 775-8566

Uvalde Memorial Hospital
1025 Garner Field Rd, Uvalde, TX 78801
(830) 278-6251

**Government of Mexico**

- CISEN :                    0115218688282159
- Mexican Aduana PD          0115213141030384
  - Asst to PD             0115213141338008

- Mexican Immigration        0115218441214185
- Mexican Consul:            830-773-9255

Highly Confidential/Attorneys' Eyes Only

**Annex D**
**Port of Laredo, Laredo Field Office (LFO)**
**Contingency Plan Addressing Possible Mass Migration Influxes**

I.    **Situation:**

    A.  During FY16 the Port of Laredo saw a dramatic increase in applicants seeking entry into the United States without lawful entry documentation.

    B.  Most of the applicants are seeking asylum in the United States, are expressing a fear (Credible Fear/CF) of returning to their home country, and/or want to reunite with a parent/family member in the United States.

    C.  A significant number of the applicants are other than Mexicans (OTMs).

    D.  Most of the applicants are arriving as unaccompanied alien children (UACs) and family units.

    E.  Due to a significant increase in apprehensions by United States Border Patrol (USBP) in the LFO area of responsibility (Del Rio, Laredo, and Rio Grande Valley Border Patrol Sectors), the delay in obtaining detention space from the Office of Refugee Resettlement (ORR) and Immigration and Customs Enforcement (ICE) Enforcement Removal Operations (ERO) has increased from an average of 24-48 hours, to five days or more.  These delays have impacted port operations as port resources are used to conduct long term detention duties – medical escorts, security duties, personal hygiene, feeding, and transportation (airports, shelters, way stations, detention centers, etc.).

    F.  The Port of Laredo does not have the facilities, infrastructure, equipment or personnel necessary to accommodate a large number of arriving aliens for extended detention periods.

II.   **Mission:**

    A.  The Port of Laredo will effectively manage a mass migration event and/or a sustained migration occurring at the port of entry.

    B.  The mass migration will be managed while maintaining continuity of operations (COOP).

    C.  The purpose of this plan is to mitigate the risk to life from a mass migration event, and to ensure that the borders are secured while ensuring that legitimate trade and travelers continue to cross our borders without significant delays.  These incident management strategies are designed to facilitate CBP's ability to mitigate against, prepare for, and respond to the impact of such events under extreme circumstances.

    D.  Minimize UAC, Family Units and OTM time in CBP custody.

Highly Confidential/Attorneys' Eyes Only

III.  **Execution:**

    A.  The Port Director will:

        1.  Exercise the responsibility to control the flow of people across our borders.

        2.  Ensure terrorists, terrorist weapons, narcotics, criminal aliens, prohibited goods, and other illegal merchandise are prevented from entering the United States.

        3.  Ensure that the security of the inspection process is sufficient to identify frivolous or fraudulent applications for admission or discretion.

        4.  Ensure that bona fide applicants for admission are processed expeditiously.

        5.  Guarantee humane treatment of migrants and ensure due process under the Immigration and Nationality Act (INA).

        6.  Identify the port's detention capacities, operational thresholds, and specific trigger points requiring outside assistance.

    B.  The Port Director will implement a phased approach to manage the mass migration.

        1.  Phase I – Organic Capabilities Sustained

            i.  Mass migration contained within normal working conditions.

            ii.  Port Director will ensure mass migration within normal working conditions does not affect day to day operations.

        2.  Phase II – Organic Capabilities Strained

            i.  Mass migration exceeds the capacity of at least one international crossing within the port of entry.

            ii.  Port Director will coordinate with other international crossings within the port of entry for assistance.

            iii.  Port Director will begin coordination with ORR, ERO, and the STC, to prepare for potential event expansion.

            iv.  Port Director will establish communication with Government of Mexico (GoM) to elicit information about mass migration.

            v.  Port Director will test overflow processing work stations in anticipation of expanding additional resources.

Highly Confidential/Attorneys' Eyes Only

      vi.  Port Director will ensure sufficient supplies i.e., empty A file jackets, personal hygiene, etc.

3. Phase III – Organic Capabilities Exceeded

      i.  Mass migration exceeds the capacity of port facilities.

      ii.  Port Director will activate Tactical Enforcement Officers (TEOs) and increase port's security posture.

      iii.  Port Director will coordinate with USBP, CBP Office of Air and Marine (OAM), and other local law enforcement agencies (LEAs) to help maintain port security.

      iv.  Port Director will staff non-24/7 international crossings after hours for processing.

      v.  Port Director will assign additional personnel and/or request assistance for jump teams for all available resources at each location as appropriate.

      vi.  Port Director will coordinate with ORR and ERO for assistance obtaining detention space and with transporting aliens out of the area.

      vii.  Port Director will identify additional locations within the port of entry for the staging and housing of detainees.

4. Encounter

      i.  Staging

            a.  Upon arriving at the port of entry U.S. Customs and Border Protection Officers (CBPOs) will identify a secure and proper location for all individuals as part of a mass migration seeking admission without proper entry documents.

            b.  CBP will establish a pre-staging area for inadmissible migrants.

            c.  Once organic detention areas have been exhausted within the port of entry, Port Director will ensure additional locations for detention have proper resources, i.e. tents with a cooling system, access to restrooms, personal hygiene and food/water.

            d.  Port Director will utilize TEOs and coordinate with USBP, CBP Office of Air and Marine (OAM), and other local law

Highly Confidential/Attorneys' Eyes Only

enforcement agencies (LEAs) to assist in securing perimeter security and safe guarding detainees.

    e. Port Director will ensure sufficient transport vehicles are on hand and ready for transporting.

ii. Triage / Categorizing

    a. Upon arrival of the migrants CBP will:

        i. Identify the travelers applying for admission that are part of the mass migration group.

        ii. Determine admissibility of each applicant.

        iii. If the applicant is determined to be admissible, the applicant will be admitted and released to depart the Federal Inspection Site (FIS).

        iv. If the applicant is determined to be inadmissible, he or she will be referred and escorted to a pre-staging area as determined by CBP.

        v. Once in the pre-staging area, the migrant will be separated by category.

    b. UAC

        i. Unaccompanied Alien Child under the age of 18 years old.

    c. Family Units

        i. Parent/Legal Guardian and minor child/children.

    d. Adults

        i. Any individual 18 years old and above.

iii. Initial Medical Screening

    a. CBPO will look for any outward signs of health concerns and inquire for any possible health issues, such as:

        i. Prescribed medication

        ii. Pregnancy

        iii. Rashes

        iv. Lice, etc.

AOL-DEF-00011163

      b.  Identify immediate health concerns and if required transport individual to the nearest medical facility.

5. Processing

   i.  Holding Areas

      a.  The port of entry has four international crossings with facilities to hold detainees.

         i.  Gateway to the Americas Bridge

            1.  Secondary processing area currently has two detention rooms and two detention cells.

        ii.  Lincoln Juarez Bridge

            1.  Secondary processing area has two detention rooms and four detention cells.

        iii.  World Trade Bridge

            1.  Secondary processing area has one detention room and four detention cells.

        iv.  Colombia Solidarity Bridge

            1.  Secondary processing area has two detention cells.

      b.  Once the organic resources of these international crossing facilities have been exhausted, the old import lot will be used as a temporary staging area to contain the overflow of migrants at the port of entry.

   ii.  Processing Capacity

      a.  Gateway to the Americas Bridge

         i.  Privately owned vehicles and pedestrians.

            1.  Closed to privately owned vehicles for bridge remodel and construction.

        ii.  Open 24 hours, 7 days a week.

        iii.  Total of 7 workstations available for processing.

      b.  Lincoln Juarez Bridge

         i.  Privately owned vehicles and commercial buses.

Highly Confidential/Attorneys' Eyes Only

          i.  Commercial buses are routed to Old Import Lot for inspection due to remodel and construction.

    ii.  Open 24 hours, 7 days a week.

    iii.  Total of 6 workstations available for processing.

  c.  Old Import Lot

    i.  Commercial buses routed downstairs for inspection due to construction at Lincoln Juarez Bridge.

    ii.  Privately owned vehicles inspected only during high volume special holiday traffic and when no buses are referred downstairs for inspection.

    iii.  Total of 13 workstations available for processing.

  d.  World Trade Bridge

    i.  Commercial conveyances only.

    ii.  Open 0800 hours to 2400 hours Monday – Friday, open 0800 hours to 1600 hours Saturday and open 1000 hours to 1400 hours Sunday.

    iii.  Total of 5 workstations available for processing.

  e.  Colombia Solidarity Bridge

    i.  Commercial conveyances, privately owned vehicles and pedestrians.

    ii.  Open 0800 hours to 2400 hours, 7 days a week.

    iii.  Total of 4 workstations available for processing.

iii.  Processing

  a.  Pat down searches will be conducted on all individuals, and their personal belongings will be bagged and tagged.

  b.  

  c.  Applicant will be processed according to HQ, OFO and LFO policy.

  d.  Detention space request.

Highly Confidential/Attorneys' Eyes Only

       iv.  Outside counsel with a properly executed Form G-28 will be allowed to wait in the lobby area, room permitting.

          a.  The Laredo Office of Chief Counsel will have a representative on site to assist as may be required.

       v.  Any activists and/or advocacy groups on site will be limited to an area outside the FIS as designated by local officials.

6. Transportation

       i.  Transportation arrangements will be made by CBP once placement is secured by ORR or ERO.

       ii.  It is the responsibility of CBP to provide transportation of detainees from the port of entry to designated locations, i.e. ERO facilities, airport, way stations for consolidated transports, shelters, etc.

       iii.  Coordination with USBP and contract transportation services will be made once placement is secured for possible consolidation of transports.

## IV.  Administration:

A. All reporting will be consolidated and forwarded to appropriate higher chain of command from the command center.

B. To the extent possible, operations will be executed utilizing organic port resources and personnel.

C. Resource requirements will be identified and relayed to the LFO:

1. Cost Estimates / Funding Issues

       i.  Supplemental overtime funding and/or other funding issues outside normal operations will be required.

       ii.  Specific overtime and resource requirements (food, hygiene supplies, sanitation contracts, etc.) will be event-dependent and assessed by Port Director.

       iii.  Port Director will request overtime cap waivers for appropriate port personnel.

       iv.  Supplemental OIT support will be required.

2. Travel

       i.  Travel and per diem expenses may be required if outside assistance is requested.

 AOL-DEF-00011166

    ii. Specific TDY support will be event-dependent and assessed by the port director.

3. Lodging

    i. Lodging expenses may be required if outside assistance is requested.

    ii. Specific lodging requirements will be event-dependent and assessed by the Port Director.

4. Reception of Detailed Personnel

    i. Port Director will be responsible for receiving detailed personnel, providing operational briefing, providing work assignments, etc.

5. Uniform and Equipment

    i. All CBP personnel will wear approved uniform and will be equipped in accordance with existing protocol and policy. All specialty units will wear authorized uniforms utilized by their respective units.

    ii. CBP personnel will be required to follow all established DHS/CBP policy and guidelines. All armed CBP personnel will carry the standard issued CBP sidearm and approved intermediate force weapons, and will comply with all CBP use of force policies and regulations.

    iii. Utilization of body armor and the carrying of long-arms are encouraged for officer safety.

6. Special Equipment

    i. All personnel detailed to this operation will be equipped by their duty station with CBP approved equipment.

7. Alien Processing

    i. All illegal aliens apprehended within the POEs will be processed in accordance with established procedures and at designated locations. Port Director will coordinate with the United States Attorney's Office (USAO) if prosecution is deemed necessary.

8. Medical

    i. In the event of a medical emergency, all emergency medical protocols will be initiated by CBP personnel on scene.

    ii. All medical emergencies will be transported to the nearest medical facility. Port Director will maintain an updated list of addresses,

AOL-DEF-00011167

phone numbers and trauma levels of hospitals in their area of responsibility.

    iii. The City of Laredo Health Department will be notified on all possible communicable diseases.

9. Detention / Transportation

    i. Detention and transportation responsibilities will be conducted in accordance with existing CBP policy. All detained subjects will be detained and transported in relation to the category in which they were processed under. Port Director will provide detailed instructions to assigned personnel on detention and transportation policies.

10. Vehicles

    i. GOVs will be fueled as per existing port and field office policies.

## V. Command / Control / Communications:

A. The Port Director will designate an incident commander.

B. The Port Director will coordinate with the STC, OFO headquarters, and the Government of Mexico (GoM), as necessary.

C. Port Director, or his/her designee, will have operational control and command authority over respective CBP components involving, organizing, and employing commands, assigning tasks, designating objectives and giving authoritative direction necessary to accomplish area objectives and will maintain tactical and operational control of their assets.

D. Communication will occur throughout the port of entry under the purview of existing policy and capabilities. All communications will be carried out in the encrypted mode.

E. Points of Contact

    1. Gregorio Alvarez, Port Director

        Office: ▆▆▆▆▆▆▆▆

        Cell: ▆▆▆▆▆▆▆

    2. Albert Flores, Deputy Port Director

        Office: ▆▆▆▆▆▆

        Cell: ▆▆▆▆▆▆▆

    3. Francisco Garcia, Assistant Port Director, Passenger Operations

Office: ████████████

Cell: ████████████

4. Watch Commanders

William Trevino

Cell: ████████████

Leobardo Benavidez

Cell: ██████████

Cynthia Rodriguez

Cell: ██████████

Javier Vazquez

████████████

Jesus Barrera

████████████

Juan Chavez

████████████

Highly Confidential/Attorneys' Eyes Only

## Appendices

**Media Plan:**

The LFO Public Affairs Officer (PAO), in coordination with CBP Office of Public Affairs (OPA), will coordinate responses to media inquiries and other media and public messaging.

| Primary Local PAL | Diego Hernandez | ████████ |
| Laredo LFO PAO | Mucia Dovalina | ████████ |
| CBP OPA PAO | Rick Pauza | ████████ |

**Air Plan:**

The LFO will coordinate with local OAM branches to secure operational support such as aerial observation of the POEs and surrounding areas, aerial reconnaissance of routes of ingress, transportation of SRT, etc.

**Health and Safety Annex:**

The Port Director will ensure that the Laredo Field Office Standard Operating Procedures for Serious Communicable and Quarantinable Diseases are followed by all CBP employees.

A. In the event of any medical emergency, 911 will be called.

B. If necessary the local fire department or hospital can be contacted to directly dispatch EMS.

C. A marked law enforcement unit, driving in a safe manner, with emergency lights and siren activated, can drive to any of the below listed medical facilities within 10 minutes.

D. All medical emergencies will be transported to the nearest medical facility.

E. Laredo area of responsibility:

    a. Doctor's Hospital
       Trauma level III
       10700 McPherson Rd
       Laredo, Texas 78045
       (956) 523-2000

    b. Laredo Medical Center
       Trauma level III
       1700 E. Sanders
       Laredo, Texas 78041
       (956) 796-2000

Highly Confidential/Attorneys' Eyes Only

c. City of Laredo Health Department
   2600 Cedar
   Laredo, Texas 78041
   (956) 795-4921

d. Trauma III Facility

   i. The hospital provides initial evaluation and stabilization to the trauma patient. Comprehensive medical and surgical impatient services are available to those patients who can be maintained in a stable or improving condition without specialized care. Emergency physicians and nurses are immediately available. Surgeons are able to within 20 minutes to assess, resuscitate, stabilize, and initiate transfer as necessary to a higher level trauma care center.

**Contacts:**

**Points of Contact:**

- OBP POC – Narciso Ramos
- ERO POC – Robert Cerna
- CIS POC – Martin Hernandez
- ASYLUM POC – Ashlyn/Gadson
- FPS POC – Carlos Guardiola
- Bridge Director POC – Mario Maldonado
- Laredo PD POC –Joe Baeza



**General Law Enforcement Contact Information:**

- Laredo Police Department                      (956) 795-2800
  - o  Liaison:  Duty Watch Commander         (956) 795-3134, 3135, 3136, 3023
- Webb County Sheriff's Office                  (956) 523-4500, 4408, 4465
  - o  Liaison: Lt. Ricardo Garcia            (956) 718-8084
- Laredo Border Patrol Sector (LRT)
  - o  Liaison:  Border Intel Center (BIC)
- LRT BORTAC
  - o  Liaison: PAIC Jerry Doyle
- Office of Air & Marine (OAM)
  - o  Liaison:  Supervisor Vidaurri          Option #
- Texas Department of Public Safety            (956) 728-2201
  - o  Liaison:  Sgt. Conrad Hine             (956) 489-9403
- Texas A&M International Police Dept.          (956) 326 2100
  - o  Liaison: Sup. Cindy Garcia             (956) 326-2100
- Federal Protective Services (Mega Center)



Highly Confidential/Attorneys' Eyes Only

  o Liaison:  Carlos Guardiola 
- HSI Duty Agent

**Government of Mexico Contact Information:**

- **MX Consulate Office (Laredo, Texas)**

   Office: 956-723-0990
   Consul Carolina Zaragoza Flores
   Emergency Contact Number: █████████

- **CISEN**

   Office: 011-52-867-719-0010
   Alternate Number: 011-52-867-719-2332

- **C4**

   Office: 011-52-867-711-2552
   Nextel: 72*609937*2

- **Mexican Customs**

| | |
|---|---|
| Administration: | 011-52-867-711-0263 (0900-2000 hrs). |
| Bridge 1: | 011-52-867-711-0265 / 3238 |
| Bridge 2: | 011-52-867-711-0265 / 3238 |
| Railroad: | 011-52-867-711-3200 (Ext. 71561) |
| WTB: | 011-52-867-711-3204 |
| Colombia: | 011-52-867-734-5101 (0900-2200 hrs. M-F) (1000-1400 hrs. Sat.) |

- **Mexican Immigration**

| | |
|---|---|
| Administration: | 011-52-867-711-0263 (0900-2000 hrs.) |
| Bridge 1: | 011-52-867-718-1177 (#8) |
| Bridge 2: | 011-52-867-712-7245 |
| Railroad: | 011-52-867-718-1177 (#8) |
| WTB: | 011-52-867-711-3200 (Ext. 73204) |
| Colombia: | 011-52-867-734-5101 (0900-2200 hrs. M-F) (1000-1400 hrs. Sat.) |

**Annex E**
**Port of Hidalgo, Texas, Laredo Field Office (LFO)**
**Contingency Plan Addressing Possible Mass Migration Influxes**

I.   **Situation:**

    A. Since FY2014 the Port of Hidalgo, Texas has seen an increase in arriving aliens seeking entry into the United States without lawful entry documentation.

    B. Most of the applicants are economic migrants seeking employment through the asylum process and/or requesting reunification with family members who are unlawfully present in the US.

    C. A significant number of the applicants are other than Mexicans (OTMs), to include Special Interest Aliens (SIAs).

    D. Most of the applicants are arriving as unaccompanied alien children (UACs) and family units.

    E. Due to a significant increase in apprehensions in the Rio Grande Valley (RGV), Office of Field Operations (OFO) and United States Border Patrol (USBP) experience delays in obtaining detention space from the Office of Refugee Resettlement (ORR) and Immigration and Customs Enforcement (ICE) Enforcement Removal Operations (ERO), from an average of 24-48 hours, to five days or more. These delays have impacted port operations as port resources are used to conduct long term detention duties – medical escorts, security duties, personal hygiene, feeding, and transportation (airports, shelters, way stations, detention centers, etc.).

    F. The Rio Grande Valley Central Processing Center (CPC) assists with the temporary holding of OFO processed family units and unaccompanied alien children. These aliens remain in the responsibility of OFO until ICE/ERO or ORR take physical custody of them.

    G. The Port of Hidalgo, Texas does not have the facilities, infrastructure, equipment or personnel necessary to accommodate a large number of arriving aliens for extended detention periods.

II.   **Mission:**

    A. The Port of Hidalgo, Texas will effectively manage a mass migration event and/or a sustained migration occurring at the port of entry.

    B. The mass migration will be managed while maintaining continuity of operations (COOP).

    C. The purpose of this plan is to mitigate the risk to life from a mass migration event, and to ensure that the borders are secured while ensuring that legitimate trade and travelers continue to cross our borders without significant delays. These incident

AOL-DEF-00011173

management strategies are designed to facilitate CBP's ability to mitigate against, prepare for, and respond to the impact of such events under extreme circumstances.

D. Minimize UAC and OTM time in CBP custody.

III. **Execution:**

A. The Port Director will:

1. Exercise the responsibility to control the flow of people across our borders.

2. Ensure terrorists, terrorist weapons, narcotics, criminal aliens, prohibited goods, and other illegal merchandise are prevented from entering the United States.

3. Ensure that the security of the inspection process is sufficient to identify frivolous or fraudulent applications for admission or discretion.

4. Ensure that bona fide applicants for admission are processed expeditiously.

5. Guarantee humane treatment of migrants and ensure due process under the Immigration and Nationality Act (INA).

6. Identify the port's detention capacities, operational thresholds, and specific trigger points requiring outside assistance.

B. The Port Director will implement a phased approach to manage the mass migration contingent on the number of arriving aliens.

1. Phase I – Organic Capabilities Sustained

    i. Mass migration does not exceed the operational capabilities of the Hidalgo, Texas Port of Entry.

    ii. The Hidalgo, Texas Port of entry will detain, process, and transport migrants commensurate with Port policies and procedures.

2. Phase II – Organic Capabilities Strained

    i. Mass migration exceeds the capacity of at least one port facility, as identified in port-specific annexes.

    ii. Port Director and/or designee will do the following:

        a. Will coordinate with neighboring POEs ([ LE LE ]) for assistance.

      b. Will coordinate with neighboring USBP stations ( **LE** **LE** ) for assistance.

      c. Will activate Tactical Enforcement Officers (TEOs) and increase port's security posture.

      d. Will begin coordination with ORR, ERO, STC, other local federal/state law enforcement agencies (LEAs), and local government officials to prepare for potential event expansion. (Appendix 1)

      e. Will establish communications with Government of Mexico (GoM) to elicit information about mass migration. (Appendix 2)

      f. Will test overflow processing work stations in anticipation of LFO jump team deployment.

3. Phase III – Organic Capabilities Exceeded

    i. Mass migration exceeds the capacity of port facilities.

    ii. Port Director and/or designee will do the following:

      a. Will coordinate with FPS, USBP, CBP Office of Air and Marine (OAM), and other local law enforcement agencies (LEAs) to help maintain port security.

      b. Will staff non-24/7 international crossings after hours for processing with DFO concurrence.

      c. Will assign deployed jump teams to appropriate port locations.

      d. Will coordinate with ORR and ERO for assistance with transporting aliens out of the area.

C. Encounter

1. Triage / Categorizing

    i. The Port has established pre-staging/staging wait areas

    ii. Assigned Officers will separate migrants into the following groups and processed in this order:

      a.
      b.
      c.



AOL-DEF-00011175

d.

e.

D. Staging

    1. UAC and Family Unit *1 will be escorted to the PCS lobby.

    2. Family Unit *2, adult females, and adult males will be escorted to the "OLD IMPORT LOT" and staged according to grouping underneath the existing canopy.

    3. Once processing is complete and space requests sent, migrants will be escorted to the "OLD IMPORT LOT" and staged according to grouping underneath the existing canopy so the next group of migrants can be processed.

    4. Migrants will be monitored at all times regardless of staging location by designated security officers/agents

**NOTE:** Processing is event-dependent; as such the Port will adjust and make appropriate decisions concerning staging based upon influx.

E. Initial Medical Screening

    1. Officers will canvas migrants to determine if a medical emergency/issue exists.

    2. In the event of a medical emergency/issue, all emergency medical protocols will be initiated by CBP personnel on scene.

    3. An improvised isolation area has been designated for migrants deemed to pose a health and safety risk (contagious disease).

F. Processing

    1. See Administration section (IV)(C)(6) for processing capacity specifics

    2. Approximate processing times:

        i.   Family Unit     2-4 hours

        ii.  UAC          1-2 hours

        iii. ER/CF        2-3 hours

        iv. NTA/Detain   2-3 hours

    3. The appropriate office will be contacted upon processing completion to request placement.

AOL-DEF-00011176

G. Transportation

    1. G4S will be used to the greatest extent possible

    2. If G4S is unable to transport, the Port of Hidalgo, Texas will use organic/TDY resources

## IV. Administration:

A. The Port's command center will be activated at the Port Director's discretion.

    1. All reporting will be consolidated at the LFO and forwarded to appropriate higher commands.

    2. Port's operational chain of command:

| | | |
|---|---|---|
| i. | Incident Commander | Port Director or designee |
| ii. | Operations Officer | Watch Commander on duty |
| iii. | Security Officer | AT-CET Supervisor on duty |
| iv. | Intelligence Officer | TAU Supervisor/Officer on duty |

B. To the extent possible, operations will be executed utilizing organic port resources and personnel.

    1. CBP Officers (Series 1895)      426

    2. CBP Canine Enforcement Officers (Series 1895)    29

    3. CBP Agriculture Specialists (Series 401)      45

    4. CBP Agriculture Canine Specialist (Series 401)     3

C. Resource requirements will be identified and relayed to the LFO:

    1. Cost Estimates / Funding Issues

        i. Supplemental overtime funding and/or other funding issues outside normal operations will be required.

        ii. Specific overtime and resource requirements (food, hygiene supplies, sanitation contracts, etc.) will be event-dependent and assessed by port director.

        iii. Port Director will request overtime cap waivers for appropriate port personnel.

        iv. Supplemental OIT support will be required.

AOL-DEF-00011177

2. Travel

    i. Travel and per diem expenses may be required.

    ii. Specific TDY support will be event-dependent and assessed by the port director.

3. Lodging

    i. Lodging expenses may be required.

    ii. Specific lodging requirements will be event-dependent and assessed by the port director.

4. Reception of Detailed Personnel

    i. Port Director will be responsible for receiving detailed personnel, providing operational briefing, providing work assignments, etc.

5. Uniform and Equipment

    i. All CBP personnel will wear approved uniform and will be equipped in accordance with existing protocol and policy. All specialty units will wear authorized uniforms utilized by their respective units.

    ii. CBP personnel will be required to follow all established DHS/CBP policy and guidelines. All armed CBP personnel will carry the standard issued CBP sidearm and approved intermediate force weapons and will comply with all CBP use of force policies and regulations.

    iii. Utilization of body armor and the carrying of long-arms are encouraged for officer safety.

    iv. All personnel detailed to this operation will be equipped by their duty station with CBP approved equipment.

6. Alien Processing

    i. All illegal aliens apprehended within the POEs will be processed in accordance with established procedures and at designated locations. Port Director will coordinate with the United States Attorney's Office (USAO) if prosecution is deemed necessary.

    ii. Operational Areas:

        a. Hidalgo International Crossing

            i. Passenger Operations: 24 hours / 7 days a week

Highly Confidential/Attorneys' Eyes Only

      ii.  18 available processing stations (12 inside secondary/6 at counter)

      iii.  4 detention cells (2 wet / 2 dry) with the capacity to house 24 migrants (approximate)

      iv.  2 dedicated processing hold rooms that can accommodate 10 (approximate)

      v.  Lobby area capacity is 105 (approximate)

   b.  Pharr International Crossing

      i.  Passenger Operations:  0600 – 0000 / 7 days a week

      ii.  6 available processing stations (2 inside secondary / 4 at counter)

      iii.  3 detention cells (2 wet / 1 dry) with the capacity to house 14 migrants (approximate)

      iv.  Lobby area capacity is 30 (approximate)

   c.  Anzalduas International Crossing

      i.  Passenger Operations:  0600 – 2200 / 7 days a week

      ii.  2 available processing stations (6 if utilizing SENTRI stations)

      iii.  16 detention cells (9 wet / 7 dry) with the capacity to house 50 migrants (approximate)

      iv.  Lobby area capacity is 15 (35 if utilizing SENTRI area) (approximate)

7.  Medical

   i.  In the event of a medical emergency, all emergency medical protocols will be initiated by CBP personnel on scene.

   ii.  All medical emergencies will be transported to the nearest medical facility. Port Director will maintain an updated list of addresses, phone numbers and trauma levels of hospitals in their area of responsibility.  (Appendix 3)

   iii.  The Port Director will ensure that appropriate Personal Protective Equipment (PPE) is available.

8. Detention / Transportation

    i. Detention and transportation responsibilities will be conducted in accordance with existing CBP policy. All detained subjects will be detained and transported in relation to the category in which they were processed under. Port Director will provide detailed instructions to assigned personnel on detention and transportation policies.

9. Vehicles

    i. GOVs will be fueled as per existing port and field office policies.

    ii. The Port will utilize the two assigned vans for transportation related functions (13 person capacity per van).

**V.    Command / Control / Communications:**

    A. The Port Director will designate an incident commander.

    B. The Port Director will coordinate with the LFO, and the Government of Mexico (GoM) as necessary.

    C. Port Director, or his/her designee, will have operational control and command authority over respective CBP components involving, organizing, and employing commands, assigning tasks, designating objectives and giving authoritative direction necessary to accomplish area objectives will maintain tactical and operational control of their assets.

    D. Communication will occur throughout the LFO under the purview of existing policy and capabilities. All communications will be carried out in the encrypted mode.

**Media Plan:**

All media inquiries will be referred to the CBP Office of Public Affairs (OPA)

    A. Maribel Saenz (HID)    ██████████

    B. Esteban Garcia (HID)    ██████████

    C. Elias Rodriguez (BRO)    ██████████

    D. Rick Pauza (LFO)    ██████████

    E. Mucia Dovalina (LFO)    ██████████

AOL-DEF-00011180

**Air Plan:**

The Port of Hidalgo, Texas will coordinate with local OAM branches to secure operational support such as aerial observation of the POEs and surrounding areas, aerial reconnaissance of routes of ingress, transportation of SRT, etc.

AOL-DEF-00011181

## Appendix I – Coordination with U.S. Partners

**Points of Contact:**

- OBP POC – Ramiro Garza Jr 
- ERO POC – Homero Salinas
- CIS POC – Arcelia Adriano
- ASYLUM POC – Ashlyn/Gadson
- FPS POC – Mitch Sisler
- Bridge Director POC – Juan Olaguibel
- Hidalgo PD POC – Lt. C. Vargas    (956) 537-5007 (**Will notify Hidalgo EMS**)

**General Contact Information:**

- McAllen Police Department    (956) 682-4321
- Hidalgo Police Department    (956) 843-2737
- Pharr Police Department    (956) 784-7700
- Mission Police Department    (956) 584-5000
- Hidalgo County SO    (956) 383-8114
- OBP RGV Sector 
- OBP Weslaco Station
- OBP McAllen Station TOC
- OBP McAllen    Station
- OBP BORTAC Liaison
- OAM Liaison
- Texas Department of Public Safety    (956) 279-0956
- Federal Protective Services
- HSI Duty Agent

Highly Confidential/Attorneys' Eyes Only

**Appendix 2 – Coordination with Government of Mexico Partners**

| | |
|---|---|
| CISEN – Francisco Casas | 011-521-899-122-5778 |
| CISEN (Office) | 011-52-555-449-1518 |
| Mexican Customs/Immigration (HID) | 011-521-89-99-22-1312 |
| Mexican Customs/Immigration (PPR) | 011-521-89-99-44-1510 |
| Mexican Customs/Immigration (ANZ) | 011-521-89-99-44-1508 |

Highly Confidential/Attorneys' Eyes Only

## Appendix 3 – Medical Centers

McAllen Medical Center
311 W Expressway 83
McAllen TX
(956) 632-4100

Rio Grande Regional
101 E Ridge Rd
McAllen TX
(956) 632-6000

Mission Regional Medical Center
900 S. Bryan
Mission TX
(956) 323-9000

Weslaco Knapp Medical Center
1401 E 8th St
Weslaco TX
(956) 968-8567

Harlingen Valley Baptist Medical Center
2101 Pease St
Harlingen TX
(956) 389-1100

Valley Baptist Medical Center
1040 W Jefferson St
Brownsville TX
(956) 698-5400

Valley Regional Medical Center
100 E Alton Gloor Blvd
Brownsville TX 78526
(956) 350-7000

Starr County Memorial Hospital
1861 US 83
Roma, TX
(956) 487-5561

On Standby:
Dr. Leonel Moreno
Family Physicians Clinic
(956) 682- 4515

Highly Confidential/Attorneys' Eyes Only

**Annex F**
**Port of Rio Grande City, Texas, Laredo Field Office (LFO)**
**Contingency Plan Addressing Possible Mass Migration Influxes**

I. **Situation:**

    A. During FY2017 the Port of Rio Grande City, Texas has seen a dramatic decrease in applicants seeking entry into the United States without lawful entry documentation.

    B. Most of the applicants who seek asylum in the United States are expressing a fear (Credible Fear/CF) of returning to their home country, and/or want to reunite with a parent/family member in the United States.

    C. Most of the applicants are arriving as unaccompanied alien children (UACs) and family units.

    D. Additionally, the Port of Rio Grande City has seen a dramatic decrease in Cuban nationals applying for entry under the Cuban Refugee Adjustment Act (CRAA).

    E. The Port of Rio Grande City, Texas does not have the facilities, infrastructure, equipment or personnel necessary to accommodate a large number of arriving aliens for extended detention periods.

II. **Mission:**

    A. The Port of Rio Grande City, Texas will effectively manage a mass migration event and/or a sustained migration occurring at the port of entry.

    B. The mass migration will be managed while maintaining continuity of operations (COOP).

    C. The purpose of this plan is to mitigate the risk to life from a mass migration event, and to ensure that the borders are secured while ensuring that legitimate trade and travelers continue to cross our borders without significant delays. These incident management strategies are designed to facilitate CBP's ability to mitigate against, prepare for, and respond to the impact of such events under extreme circumstances.

    D. Minimize UAC and OTM time in CBP custody.

III. **Execution:**

    A. The Port Director will:

        1. Exercise the responsibility to control the flow of people across our Port of Entry.

                    AOL-DEF-00011185

2. Ensure terrorists, weapons, narcotics, criminal aliens, prohibited goods, and other illegal merchandise is prevented from entering through the Port of Entry.

3. Ensure that the security of the inspection process is sufficient to identify frivolous or fraudulent applications for admission or discretion.

4. Ensure that bona fide applicants for admission are processed expeditiously.

5. Guarantee humane treatment of migrants and ensure due process under the Immigration and Nationality Act (INA).

6. Identify the port's detention capacities, operational thresholds, and specific trigger points requiring outside assistance.

B. The Port Director will implement a phased approach to manage the mass migration.

1. Phase I – Organic Capabilities Sustained

   i. Mass migration does not exceed the operational capabilities of the Rio Grande City, Texas Port of Entry.

   ii. The Rio Grande City, Texas Port of entry will detain, process, and transport migrants commensurate with Port policies and procedures.

2. Phase II – Organic Capabilities Strained

   i. Mass migration exceeds the capacity of at least one port facility, as identified in port-specific annexes.

   ii. Port Director and/or designee will do the following:

      a. Will coordinate with neighboring POEs ( LE LE and other ports within the Laredo Field Office as needed) for assistance.

      b. Will coordinate with neighboring USBP stations (McAllen, and Rio Grande City) for assistance.

      c. Will activate Tactical Enforcement Officers (TEOs) and increase port's security posture.

      d. Will begin coordination with ORR, ERO, STC, other local federal/state law enforcement agencies (LEAs), and local government officials to prepare for potential event expansion. (Appendix 1)

e. Will establish communications with Government of Mexico (GoM) to elicit information about mass migration. (Appendix 2)

f. Will test overflow processing work stations in anticipation of LFO jump team deployment.

3. Phase III – Organic Capabilities Exceeded

   i. Mass migration exceeds the capacity of port facilities.

   ii. Port Director and/or designee will do the following:

      a. Will coordinate with USBP, CBP Office of Air and Marine (OAM), and other local law enforcement agencies (LEAs) to help maintain port security.

      b. Will staff non-24/7 international crossings after hours for processing with DFO concurrence.

      c. Will assign deployed jump teams to appropriate port locations.

      d. Will coordinate with ORR and ERO for assistance with transporting aliens out of the area.

4. Phase IV- Organic Capabilities Overwhelmed

   i. Mass migration overwhelms the processing, transportation, and detention capacities of CBP components in South Texas (OFO and USBP).

   ii. Port Director, in conjunction with DFO will explore alternative admissibility processing measures.

   iii. DFO, in conjunction with the STC Commander, requests DHS assistance through CBP headquarters.

## IV. Administration:

A. The Port's command center will be activated at the Port Director's discretion.

   1. All reporting will be consolidated at the LFO and forwarded to appropriate higher commands.

   2. Port's operational chain of command:

      | | | |
      |---|---|---|
      | i. | Incident Commander | Port Director or designee |
      | ii. | Operations Officer | Supervisor on duty |
      | iii. | Intelligence Officer | TAU Supervisor/Officer on duty |

B. To the extent possible, operations will be executed utilizing organic port resources and personnel.

    1. CBP Managers                           12

    2. CBP Officers (Series 1895)           49

    3. CBP Canine Enforcement Officers (Series 1895)    4

    4. CBP Agriculture Specialists (Series 401)    4

C. Resource requirements will be identified and relayed to the LFO:

    1. Cost Estimates / Funding Issues

        i. Supplemental overtime funding and/or other funding issues outside normal operations will be required.

        ii. Specific overtime and resource requirements (food, hygiene supplies, sanitation contracts, etc.) will be event-dependent and assessed by port director.

        iii. Port Director will request overtime cap waivers for appropriate port personnel.

        iv. Supplemental OIT support will be required.

    2. Travel

        i. Travel and per diem expenses may be required.

        ii. Specific TDY support will be event-dependent and assessed by the port director.

    3. Lodging

        i. Lodging expenses may be required.

        ii. Specific lodging requirements will be event-dependent and assessed by the port director.

    4. Reception of Detailed Personnel

        i. Port Director will be responsible for receiving detailed personnel, providing operational briefing, providing work assignments, etc.

    5. Uniform and Equipment

        i. All CBP personnel will wear approved uniform and will be equipped in accordance with existing protocol and policy. All specialty units will wear authorized uniforms utilized by their respective units.

Highly Confidential/Attorneys' Eyes Only

    ii. CBP personnel will be required to follow all established DHS/CBP policy and guidelines. All armed CBP personnel will carry the standard issued CBP sidearm and approved intermediate force weapons and will comply with all CBP use of force policies and regulations.

    iii. Utilization of body armor and the carrying of long-arms are encouraged for officer safety.

6. Special Equipment

    i. All personnel detailed to this operation will be equipped by their duty station with CBP approved equipment.

7. Alien Processing

    i. All illegal aliens apprehended within the POEs will be processed in accordance with established procedures and at designated locations. Port Director will coordinate with the United States Attorney's Office (USAO) if prosecution is deemed necessary.

    ii. Operational Areas:

        a. Rio Grande City

            i. Passenger Operations: 17 hours / 7 days a week

            ii. 4 available processing stations (2 inside secondary/2 at counter)

            iii. 2 detention cells with the capacity to house 14 migrants (approximate)

            iv. Lobby area capacity is 15 (approximate)

        b. Los Ebanos

            i. Passenger Operations: 8 hours / 7 days a week depending on the weather.

            ii. 2 available processing stations (1 inside secondary / 1 at the counter.

            iii. 2 detention cells with the capacity to house 12 migrants (approximate).

    iii. Processing Times

        a. Rio Grande City

AOL-DEF-00011189

Based on the workstations available and absent any language barriers, the port has the capacity to process no more than 24 Expedited Removal Credible Fear cases every 24 hours.

    b.    Los Ebanos

Based on the workstations available and absent any language barriers, the port has the capacity to process no more than 12 Expedited Removal Credible Fear cases every 24 hours.

8. Medical

    i.    In the event of a medical emergency, all emergency medical protocols will be initiated by CBP personnel on scene.

    ii.    All medical emergencies will be transported to the nearest medical facility. Port Director will maintain an updated list of addresses, phone numbers and trauma levels of hospitals in their area of responsibility. (Appendix 3)

9. Detention / Transportation

    i.    Detention and transportation responsibilities will be conducted in accordance with existing CBP policy. All detained subjects will be detained and transported in relation to the category in which they were processed under. Port Director will provide detailed instructions to assigned personnel on detention and transportation policies.

10. Vehicles

    i.    GOVs will be fueled as per existing port and field office policies.

    ii.    The Port will utilize the one assigned van for transportation related functions (13 person capacity per van).

    iii.    The port may also utilize two pursuit vehicles that can transport two additional passengers (each).

**V.    Command / Control / Communications:**

A. The Port Director will designate an incident commander.

B. The Port Director will coordinate with the LFO, and the Government of Mexico (GoM) as necessary.

C. Port Director, or his/her designee, will have operational control and command authority over respective CBP components involving, organizing, and employing commands, assigning tasks, designating objectives and giving authoritative

Highly Confidential/Attorneys' Eyes Only

direction necessary to accomplish area objectives will maintain tactical and operational control of their assets.

D.  Communication will occur throughout the LFO under the purview of existing policy and capabilities.  All communications will be carried out in the encrypted mode.

E.  Point of Contacts

> 1.  David J. Gonzalez, Port Director
>     Office: ██████████
>     Cell: ██████████
>
> 2.  Imelda Recio, Assistant Port Director, Passenger/Trade Processing
>     Office: ██████████
>     Cell: ██████████
>
> 3.  Hernando Cardenas, Chief CBPO, Tactical Operations
>     Office: ██████████
>     Cell: ██████████

Highly Confidential/Attorneys' Eyes Only

**Appendices**

**Media Plan:**

All media inquiries will be referred to the CBP Office of Public Affairs (OPA)

    A. Hector Ramirez (RGC) 

    B. Maribel Saenz (HID)

    C. Mucia Dovalina (LFO)

**Air Plan:**

The Port of Rio Grande City, Texas will coordinate with local OAM branches to secure operational support such as aerial observation of the POEs and surrounding areas, aerial reconnaissance of routes of ingress, transportation of SRT, etc.

**Contacts:**

**Points of Contact:**



- OBP POC – Ryan Landrum
- ERO POC – Jacob Castro
- ASYLUM POC – Ashlyn/Gadson
- Bridge POC – Sam Vale
- Rio Grande PD POC – N. Castillo    (956) 487-8892
- DPS POC – Brent Akin

**General Contact Information:**



- McAllen Police Department    (956) 682-4321
- Mission Police Department    (956) 584-5000
- Hidalgo County SO    (956) 383-8114
- La Joya Police Department    (956) 585-4855
- Starr County Sheriff's Office    (956) 487-5571
- OBP RGV Sector
- OBP McAllen Station TOC
- OBP McAllen    Station
- OBP BORTAC Liaison
- OBP Rio Grande City
- Texas Department of Public Safety    (956) 716-3600
- HSI Duty Agent
- Starr EMS    (956) 487-5561

Highly Confidential/Attorneys' Eyes Only

**Government of Mexico Partners**

- CISEN                                      011-52-899-953-2200
- C4                                         011-52-899-921-8250
- CAPUFE                                     011-52-891-974-0762
- Mexican Customs (RIO & LSE) (PD)           011-52-891-974-3568
- Mexican Customs (RIO & LSE)                011-52-891-974-3551
- Mexican Immigration                        011-52-891-974-0036
- UASF                                       877-367-7710

**Medical Centers**

Starr County Memorial Hospital
1861 US 83
Rio Grande City, TX
(956) 487-5561

McAllen Medical Center
311 W Expressway 83
McAllen TX
(956) 632-4100

Rio Grande Regional
101 E Ridge Rd
McAllen TX
(956) 632-6000

Mission Regional Medical Center
900 S. Bryan
Mission TX
(956) 323-9000

Starr County Emergency Operations Center
(956) 487-5571

Edinburg Children's Hospital
1102 W Trenton
Edinburg, TX
(956) 388-6000

Doctor's Hospital Renaissance
5321 S McColl Rd
Edinburg, TX
(956) 631-4515

Highly Confidential/Attorneys' Eyes Only

AOL-DEF-00011193

McAllen Heart Hospital
1900 S. D St
McAllen, TX
(956)994-2000

Highly Confidential/Attorneys' Eyes Only

AOL-DEF-00011194

**Annex G**
**Port of Progreso, Texas Laredo Field Office (LFO)**
**Contingency Plan Addressing Possible Mass Migration Influxes**

I.    **Situation:**

    A.    During FY16 the Port of Progreso saw a dramatic increase in applicants seeking entry into the United States without lawful entry documentation.

    B.    Most of the applicants are seeking asylum in the United States, are expressing a fear (Credible Fear/CF) of returning to their home country, and/or want to reunite with a parent/family member in the United States.

    C.    A significant number of the applicants are other than Mexicans (OTMs).

    D.    Most of the applicants are arriving as unaccompanied alien children (UACs) and family units.

    E.    Due to a significant increase in apprehensions by United States Border Patrol (USBP) in the LFO area of responsibility (Del Rio, Laredo, and Rio Grande Valley Border Patrol Sectors), the delay in obtaining detention space from the Office of Refugee Resettlement (ORR) and Immigration and Customs Enforcement (ICE) Enforcement Removal Operations (ERO) has increased from an average of 24-48 hours, to five days or more.  These delays have impacted port operations as port resources are used to conduct long term detention duties – medical escorts, security duties, personal hygiene, feeding, laundry duties, and transportation (airports, shelters, way stations, detention centers, etc.).

    F.    The Port of Progreso does not have the facilities, infrastructure, equipment or personnel necessary to accommodate a large number of arriving aliens for extended detention periods.

II.    **Mission:**

    A.    The Port of Progreso will effectively manage a mass migration event and/or a sustained migration occurring at the port of entry.

    B.    The mass migration will be managed while maintaining continuity of operations (COOP).

    C.    The purpose of this plan is to mitigate the risk to life from a mass migration event, and to ensure that the borders are secured while ensuring that legitimate trade and travelers continue to cross our borders without significant delays.  These incident management strategies are designed to facilitate CBP's ability to mitigate against, prepare for, and respond to the impact of such events under extreme circumstances.

    D.    Minimize UAC and OTM time in CBP custody.

**III.    Execution:**

    A.  The Port Director will:

        1.  Exercise the responsibility to control the flow of people across our borders.

        2.  Ensure terrorists, terrorist weapons, narcotics, criminal aliens, prohibited goods, and other illegal merchandise are prevented from entering the United States.

        3.  Ensure that the security of the inspection process is sufficient to identify frivolous or fraudulent applications for admission or discretion.

        4.  Ensure that bona fide applicants for admission are processed expeditiously.

        5.  Guarantee humane treatment of migrants and ensure due process under the Immigration and Nationality Act (INA).

        6.  Identify the port's detention capacities, operational thresholds, and specific trigger points requiring outside assistance.

    B.  The Port Director will implement a phased approach to manage the mass migration.

        1.  Phase I – Organic Capabilities Sustained

            i.   Mass migration does not exceed the operational capabilities of the Port of Progreso.

            ii.  The Port of Progreso will detain and process migrants under standard operational procedures.

        2.  Phase II – Organic Capabilities Strained

            i.   Mass migration exceeds the capacity of the Port of Progreso.

            ii.  Port Director will coordinate with the Ports of [ LE ] [ LE ] for assistance...

            iii. Port Director will coordinate with [ LE ] Border Patrol station for assistance.

            iv.  Port Director will activate Tactical Enforcement Officers (TEOs) and increase port's security posture.

            v.   Port Director will begin coordination with ORR, ERO, and the STC, to prepare for potential event expansion.

      vi. Port Director will establish communication with Government of Mexico (GoM) to elicit information about mass migration.

      vii. Port Director will test overflow processing work stations in anticipation of LFO jump team deployment.

3. Phase III – Organic Capabilities Exceeded

    i. Mass migration exceeds the capacity of port facilities.

    ii. Port Director will coordinate with USBP, CBP Office of Air and Marine (OAM), and other local law enforcement agencies (LEAs) to help maintain port security.

    iii. Port Director will staff the Donna International Crossings after hours for processing.

    iv. Port Director will assign local jump teams to appropriate port locations.

    v. Port Director will initiate Secondary Processing and Detention facility at the Donna International Crossing main building.

    vi. Port Director will coordinate with ORR and ERO for assistance with transporting aliens out of the area.

4. Encounter

    Triage / Categorizing

    i. The Port has established pre-staging/staging wait areas

    ii. Assigned Officers will separate migrants into the following groups and processed in this order:

        a.
        b.
        c.
        d.



5. Staging

    i. UAC and Family Units will be escorted to the Passport Control Secondary interview rooms.

    ii. Adult females, and adult males will be escorted to the Passport Control Secondary lobby.

        iii.  Migrants will be monitored at all times regardless of staging location by designated security officers/agents.

6.  Initial Medical Screening

        i.  Officers will canvas migrants to determine if a medical emergency/issue exists.

        ii.  In the event of a medical emergency/issue, all emergency medical protocols will be initiated by CBP personnel on scene.

        iii.  An improvised isolation area has been designated for migrants deemed to pose a health and safety risk (contagious disease).

7.  Processing

See Administration section (IV) (C) (6) for processing capacity specifics

Approximate processing times:

| | | |
|---|---|---|
| i. | UAC (1) | 2-4 hours |
| ii. | ER/CF (1) | 2-4 hours |
| iii. | NTA/Detain (1) | 2-4 hours |

8.  The appropriate office will be contacted upon processing completion to request placement.

C.  Transportation

1.  G4S will be used to the greatest extent possible

2.  If G4S is unable to transport, the Port of Progreso, Texas will use organic resources

## IV.  Administration:

A.  The port's command center will be activated at the Port Director's discretion.

1.  All reporting will be consolidated at the LFO and forwarded to appropriate higher commands.

2.  Port's operational chain of command:

| | | |
|---|---|---|
| i. | Incident Commander | Port Director or designee |
| ii. | Operations Officer | Chief Officer/APD |
| iii. | Security Officer | Supervisor on duty |
| iv. | Intelligence Officer | TAU Officer/Supervisor on duty |

AOL-DEF-00011198

B. To the extent possible, operations will be executed utilizing organic port resources and personnel.

    1. CBP Officers (Series 1895)        84

    2. CBP Canine Enforcement Officers (Series 1895)    6

    3. CBP Agriculture Specialists (Series 401)    5

C. Resource requirements will be identified and relayed to the LFO:

    1. Cost Estimates / Funding Issues

        i. Supplemental overtime funding and/or other funding issues outside normal operations will be required.

        ii. Specific overtime and resource requirements (food, hygiene supplies, sanitation contracts, etc.) will be event-dependent and assessed by port director.

        iii. Port Director will request overtime cap waivers for appropriate port personnel.

        iv. Supplemental OIT support will be required.

    2. Travel

        i. Travel and per diem expenses may be required.

        ii. Specific TDY support will be event-dependent and assessed by the port director.

    3. Lodging

        i. Lodging expenses may be required.

        ii. Specific lodging requirements will be event-dependent and assessed by the port director.

    4. Reception of Detailed Personnel

        i. Port Director will be responsible for receiving detailed personnel, providing operational briefing, providing work assignments, etc.

    5. Uniform and Equipment

        i. All CBP personnel will wear approved uniform and will be equipped in accordance with existing protocol and policy. All specialty units will wear authorized uniforms utilized by their respective units.

Highly Confidential/Attorneys' Eyes Only

    ii. CBP personnel will be required to follow all established DHS/CBP policy and guidelines. All armed CBP personnel will carry the standard issued CBP sidearm and approved intermediate force weapons and will comply with all CBP use of force policies and regulations.

    iii. Utilization of body armor and the carrying of long-arms are encouraged for officer safety.

    iv. All personnel detailed to this operation will be equipped by their duty station with CBP approved equipment.

6. Alien Processing

    i. All illegal aliens apprehended within the POEs will be processed in accordance with established procedures and at designated locations. Port Director will coordinate with the United States Attorney's Office (USAO) if prosecution is deemed necessary.

    ii. Operational Areas:

        a. Progreso Port of Entry

            i. Passenger Operations: 24 hours / 7 days a week

            ii. 4 available processing stations (4 inside secondary)

            iii. 4 detention cells (3 wet / 1 dry) with the capacity to house 14 migrants (approximate)

            iv. 1 dedicated holding room that can accommodate family unit of 4 (approximate)

            v. Lobby area capacity is 25 (approximate)

        b. Donna International Crossing

            i. Passenger Operations: 0600 – 2200 / 7 days a week

            ii. Admin Building: 7 available processing stations (3 in interview rooms / 4 at counter); 5 detention wet cells; 3 hard interview rooms with the capacity to house 20 migrants (approximate)

            iii. Secondary Building: 4 available processing stations (2 in interview rooms); 2 detention wet cells and 1 dry cell with the capacity to house 12 migrants (approximate)

            iv. Lobby area capacity is 30 (approximate)

Highly Confidential/Attorneys' Eyes Only

7.  Medical

    i.  In the event of a medical emergency, all emergency medical protocols will be initiated by CBP personnel on scene.

    ii.  All medical emergencies will be transported to the nearest medical facility. Port Director will maintain an updated list of addresses, phone numbers and trauma levels of hospitals in their area of responsibility.

    iii.  The Port Director will ensure that appropriate Personal Protective Equipment (PPE) is available.

    iv.  The Port Director has made arrangements with Knapp Medical Center in Weslaco, Texas for medical triage in the event of a mass migration.

8.  Detention / Transportation

    i.  Detention and transportation responsibilities will be conducted in accordance with existing CBP policy. All detained subjects will be detained and transported in relation to the category in which they were processed under. Port Director will provide detailed instructions to assigned personnel on detention and transportation policies.

9.  Vehicles

    i.  GOVs will be fueled as per existing port and field office policies.

    ii.  The Port will utilize the two assigned vans for transportation related functions (13 person capacity per van).

**V.  Command / Control / Communications:**

A.  The Port Director will designate an incident commander.

B.  The Port Director will coordinate with the LFO, and the Government of Mexico (GoM) as necessary.

C.  Port Director, or his/her designee, will have operational control and command authority over respective CBP components involving, organizing, and employing commands, assigning tasks, designating objectives and giving authoritative direction necessary to accomplish area objectives will maintain tactical and operational control of their assets.

D.  Communication will occur throughout the LFO under the purview of existing policy and capabilities. All communications will be carried out in the encrypted mode.

Highly Confidential/Attorneys' Eyes Only

**Appendices**

**Media Plan:**

All media inquiries will be referred to the CBP Office of Public Affairs (OPA)

      D.  Sandra Cavazos (PGR)    

      E.  Mucia Dovalina (LFO)

**Air Plan:**

The Progreso Port of Entry will coordinate with local OAM branches to secure operational support such as aerial observation of the POEs and surrounding areas, aerial reconnaissance of routes of ingress, transportation of SRT, etc.

**Contacts:**

**Points of Contact:**



- Ursula – OIC
- ERO, Harlingen – OIC
- PIDC – OIC
- PGR Bridge Director – Julie Ramirez
- Donna Bridge Director – Josh Garcia
- Donna GSA/ Manager – Amy Mendoza
- Progreso GSA/ Manager – Rudy Sanchez

**General Contact Information:**



- Hidalgo County SO           (956) 383-8114
- WESLACO BP               (956) 647-8800
- WESLACO PD               (956) 968-8591
- DONNA PD                  (956) 464-4423
- OBP RGV Sector
- OBP Weslaco Station
- OBP McAllen Station TOC
- OBP McAllen Station
- OBP BORTAC Liaison
- OAM Liaison
- Texas Department of Public Safety    (956) 565-7600
- HSI Duty Agent

Highly Confidential/Attorneys' Eyes Only

**Government of Mexico Partners**

| | | |
|---|---|---|
| • | CISEN | 011-521-899-101-0751 |
| • | UASIF (Office) | 1-877-367-7710 |
| • | Mexico Federal Police | 011-52-899-909-0000 |
| • | Administrator, Mexico Customs, Jaime Nova | 011-52-899-921-0262 |
| | | 011-521-552-909-1803 |
| • | Operations, Mexico Customs, Alejandro Garcia | 011-52-899-921-0255 |
| | | 011-521-899-308-4673 |
| • | Tactical, Mexico Customs, Lucio Coronel | 011-52-899-921-0223 |
| | | 011-521-554-331-7215 |
| • | Mexican Customs/Immigration (PGR) | 011-52-899-937-0580 |
| • | Sat (PGR) – Christian Rodriguez | 011-52-899-921-0209 |
| | | 011-521-626-106-8247 |
| • | Federal Tolls – Nuevo Progreso (PGR) | 011-52-899-937-0058 |

**Medical Centers**

Weslaco Knapp Medical Center
1401 E 8th St
Weslaco, TX
(956) 968-8567          (7.5 Miles)

South Texas HS ER
330 West Expressway 83
Weslaco, TX
(956) 975-2300          (9.5 miles)

Rio Grande Regional
101 E Ridge Rd
McAllen, TX
(956) 632-6000          (21.9 Miles)

McAllen Medical Center
311 W Expressway 83
McAllen, TX
(956) 632-4100          (22.8 Miles)

Harlingen Valley Baptist Medical Center
2101 Pease St
Harlingen, TX
(956) 389-1100          (24.2 Miles)

Mission Regional Medical Center
900 S. Bryan
Mission, TX

Highly Confidential/Attorneys' Eyes Only

(956) 323-9000          (27.7 Miles)

Valley Baptist Medical Center
1040 W Jefferson St
Brownsville, TX
(956) 698-5400          (34.7 Miles)

Valley Regional Medical Center
100 E Alton Gloor Blvd
Brownsville, TX
(956) 350-7000          (39.9 Miles)

Starr County Memorial Hospital
1861 US 83
Roma, TX
(956) 487-5561          (65.6 Miles)

Highly Confidential/Attorneys' Eyes Only

### Annex H
### Port of Roma, Laredo Field Office (LFO)
### Contingency Plan Addressing Possible Mass Migration Influxes

I. **Situation:**

    A. During FY16 the Port of Roma saw a dramatic increase in applicants seeking entry into the United States without lawful entry documentation.

    B. Most of the applicants are seeking asylum in the United States, are expressing a fear (Credible Fear/CF) of returning to their home country, and/or want to reunite with a parent/family member in the United States.

    C. A significant number of the applicants are other than Mexicans (OTMs) and Cuban nationals.

    D. Most of the applicants are arriving as unaccompanied alien children (UACs) and family units, while most Cuban arrivals are adults.

    E. Due to a significant increase in apprehensions by United States Border Patrol (USBP) in the LFO area of responsibility (Del Rio, Laredo, and Rio Grande Valley Border Patrol Sectors), the delay in obtaining detention space from the Office of Refugee Resettlement (ORR) and Immigration and Customs Enforcement (ICE) Enforcement Removal Operations (ERO) has increased from an average of 24-48 hours, to five days or more. These delays have impacted port operations as port resources are used to conduct long term detention duties – medical escorts, security duties, personal hygiene, feeding, laundry duties, and transportation (airports, shelters, way stations, detention centers, etc.).

    F. The Port of Roma does not have the facilities, infrastructure, equipment or personnel necessary to accommodate a large number of arriving aliens for extended detention periods.

II. **Mission:**

    A. The Port of Roma will effectively manage a mass migration event and/or a sustained migration occurring at the port of entry.

    B. The mass migration will be managed while maintaining continuity of operations (COOP).

    C. The purpose of this plan is to mitigate the risk to life from a mass migration event, and to ensure that the borders are secured while ensuring that legitimate trade and travelers continue to cross our borders without significant delays. These incident management strategies are designed to facilitate CBP's ability to mitigate against, prepare for, and respond to the impact of such events under extreme circumstances.

    D. Minimize UAC and OTM time in CBP custody.

AOL-DEF-00011205

III.    **Execution:**

A.  The Port Director will:

1.  Exercise the responsibility to control the flow of people across our borders.

2.  Ensure terrorists, terrorist weapons, narcotics, criminal aliens, prohibited goods, and other illegal merchandise are prevented from entering the United States.

3.  Ensure that the security of the inspection process is sufficient to identify frivolous or fraudulent applications for admission or discretion.

4.  Ensure that bona fide applicants for admission are processed expeditiously.

5.  Guarantee humane treatment of migrants and ensure due process under the Immigration and Nationality Act (INA).

6.  Identify the port's detention capacities, operational thresholds, and specific trigger points requiring outside assistance.

B.  The Port Director will implement a phased approach to manage the mass migration.

1.  Phase I – Organic Capabilities Sustained

    i.  Mass migration does not exceed the operational capability of the Roma POE.

    ii.  Roma POE local protocols and SOPs will be followed and the processing of aliens will continue.

2.  Phase II – Organic Capabilities Strained

    i.  Mass migration exceeds the capacity of at least one port facility, as identified in port-specific annexes.

    ii.  Port Director will coordinate with neighboring POEs for assistance. ( LE                    LE                      )

    iii.  Port Director will coordinate with the [ LE ] USBP stations for assistance.

    iv.  Port Director will activate Tactical Enforcement Officers (TEOs) and increase port's security posture.

    v.  Port Director will begin coordination with ORR, ERO, and the STC, to prepare for potential event expansion.

    AOL-DEF-00011206

      vi. Port Director will establish communication with Government of
        Mexico (GoM) to elicit information about mass migration.

      vii. Port Director will test overflow processing work stations in
         anticipation of LFO jump team deployment.

3. Phase III – Organic Capabilities Exceeded

    i. Mass migration exceeds the capacity of port facilities.

    ii. Port Director will coordinate with USBP, CBP Office of Air and
       Marine (OAM), and other local law enforcement agencies (LEAs)
       to help maintain port security.

    iii. Port Director will staff the Falcon Dam POE after hours for
        processing.

    iv. Port Director will assign deployed jump teams to appropriate port
        locations.

    v. Port Director will coordinate with ORR and ERO for assistance
       with transporting aliens out of the area.

4. Encounter

    i. Staging

    ii. Triage / Categorizing

        a. UACs

        b. Family Units

        c. Adults

    iii. Initial Medical Screening

        a. Pregnant

        b. Communicable Diseases

        c. Disabilities/Special Needs

5. Processing

    i. Holding Areas: The Roma POE currently has the capacity to stage
      approximately 54 persons in the passport control lobby and
      secondary areas (32 in the lobby, 6 in hard secondary, 12 in the
      conference room and 4 in the holding cells). The Falcon Dam
      POE currently has the capacity to stage approximately 22 persons
      in the passport control lobby and secondary areas (16 in the lobby,
      2 in hard secondary and 4 in the holding cells). The training room

has been identified as an area that could potentially hold an additional 20 aliens if the proper resources are allotted.

    a. All UAC and family unit encounter will be safeguarded in the passport control interview rooms, processing area and possibly the POE's conference room in order to provide the least restrictive detention.

    b. All family units will placed in the passport control area.

    c. All other adults beginning with males will be placed in the holding cells (4 total/2 wet-2 dry)

    d. The Falcon Dam POE would follow the same protocol except that the Falcon POE has 4 wet cells.

ii. Processing Capacity

    a. The Roma POE has three interview rooms equipped with [ LE ] plus an additional 6 processing stations. Additional resources would need to be provided to be able to optimize the processing capacity.

    b. The Falcon POE has one processing station equipped with [ LE ] plus 4 other stations which can easily be utilized to process additional aliens.

iii. Processing Times: Based in the workstations available and absent any language barriers (i.e. other than English or Spanish), the Port of Roma has the capacity to process no more than 108 cases in a 24-hour period. The Port of Falcon has the capacity to process no more than 60 cases in a 24-hour period.

Note: Hard secondary CBPOs do continue servicing the soft secondary counter while processing cases requiring additional resources be assigned to the PCS area. In addition, the Falcon POE is operational for 14 hours only and would require and extensive addition of resources in order to operate 24 hours per day   Times noted below are per case and type.

    a. Cubans            1-2 hours

    b. UAC               6-8 hours

    c. ER/CF            4-5 hours

    d. NTA/Detain     6-8 hours

AOL-DEF-00011208

6. Transportation

    i.  G4S services will be utilized to the greatest extent possible.

    ii.  In the event that G4S is unable to assist, organic resources from the Roma POE will be utilized.

## IV.  Administration:

A. The port's command center will be activated at the Port Director's discretion.

    1. All reporting will be consolidated at the LFO and forwarded to appropriate higher commands.

    2. Roma POE's command structure

        i.  Incident Commander      Port Director or designee

        ii.  Operations Officer        APD/Chief SCBPO

        iii.  Security Officer          On-duty SCBPO

        iv.  Intelligence Officer       TAU CBPO/A-TCET

B. To the extent possible, operations will be executed utilizing organic port resources and personnel.

    1. CBP Officers (1895 series)        101

C. Resource requirements will be identified and relayed to the LFO:

    1. Cost Estimates / Funding Issues

        i.  Supplemental overtime funding and/or other funding issues outside normal operations will be required.

        ii.  Specific overtime and resource requirements (food, hygiene supplies, sanitation contracts, etc.) will be event-dependent and assessed by port director.

        iii.  Port Director will request overtime cap waivers for appropriate port personnel.

        iv.  Supplemental OIT support will be required.

    2. Travel

        i.  Travel and per diem expenses may be required.

        ii.  Specific TDY support will be event-dependent and assessed by the port director.

Highly Confidential/Attorneys' Eyes Only

3. Lodging

    i. Lodging expenses may be required.

    ii. Specific lodging requirements will be event-dependent and assessed by the port director.

4. Reception of Detailed Personnel

    i. Port Director will be responsible for receiving detailed personnel, providing operational briefing, providing work assignments, etc.

5. Uniform and Equipment

    i. All CBP personnel will wear approved uniform and will be equipped in accordance with existing protocol and policy. All specialty units will wear authorized uniforms utilized by their respective units.

    ii. CBP personnel will be required to follow all established DHS/CBP policy and guidelines. All armed CBP personnel will carry the standard issued CBP sidearm and approved intermediate force weapons and will comply with all CBP use of force policies and regulations.

    iii. Utilization of body armor and the carrying of long-arms are encouraged for officer safety.

6. Special Equipment

    i. All personnel detailed to this operation will be equipped by their duty station with CBP approved equipment.

7. Alien Processing

    i. All illegal aliens apprehended within the POEs will be processed in accordance with established procedures and at designated locations. Port Director will coordinate with the United States Attorney's Office (USAO) if prosecution is deemed necessary.

    ii. Operational Logistics

        a. Roma Port of Entry

            i. Passenger Operations: 24hours/7 days a week

            ii. 3 interview rooms with 6 additional processing stations

            iii. 4 Detention cells (2 wet/ 2 dry) with a capacity of 4 each

Highly Confidential/Attorneys' Eyes Only

        iv.  1 Passport control lobby with a capacity of 32

        v.  3 Interview rooms with a capacity of 3 each (UACs)

        vi.  1 Conference room with capacity of 12

        vii.  TOTAL CAPACITY = 54

    b.  Falcon Dam Port of Entry

        i.  Passenger Operations:  14 hours/7 days a week

        ii.  1 Processing station

        iii.  4 Detention cells (4 wet) with a capacity of 1 (each)

        iv.  1 Passport control lobby with a capacity of 16

        v.  2 Interview rooms with a capacity of 3 each (UACs)

        vi.  1 Training room with a capacity of 20

        vii.  TOTAL CAPACITY = 22 (with an option of an additional 20 staged in the training room)

8.  Medical

    i.  In the event of a medical emergency, all emergency medical protocols will be initiated by CBP personnel on scene.

    ii.  All medical emergencies will be transported to the nearest medical facility. Port Director will maintain an updated list of addresses, phone numbers and trauma levels of hospitals in their area of responsibility.

    iii.  Personal Protective Equipment will be made available by Port Management.

9.  Detention / Transportation

    i.  Detention and transportation responsibilities will be conducted in accordance with existing CBP policy.  All detained subjects will be detained and transported in relation to the category in which they were processed under.  Port Director will provide detailed instructions to assigned personnel on detention and transportation policies.

10.  Vehicles

    i.  GOVs will be fueled as per existing port and field office policies.

AOL-DEF-00011211

     ii. Transports will be carried out using the designated transport van and following established policies and SOPs.

**V.   Command / Control / Communications:**

    A. The Port Director will designate an incident commander.

    B. The Port Director will coordinate with the STC, OFO headquarters, and the Government of Mexico (GoM) as necessary.

    C. Port Director, or his/her designee, will have operational control and command authority over respective CBP components involving, organizing, and employing commands, assigning tasks, designating objectives and giving authoritative direction necessary to accomplish area objectives will maintain tactical and operational control of their assets.

    D. Communication will occur throughout the LFO under the purview of existing policy and capabilities.  All communications will be carried out in the encrypted mode.

Highly Confidential/Attorneys' Eyes Only

**Appendices**

**Media Plan:**

The LFO Public Affairs Officer (PAO), in coordination with CBP Office of Public Affairs (OPA), will coordinate responses to media inquiries and other media and public messaging.

A.  Mucia Dovalina (LFO)          █████████████

B.  Rick Pauza (CBP)              █████████████

**Air Plan:**

The Port Director will communicate with the LFO who in turn will coordinate with local OAM branches to secure operational support such as aerial observation of the POEs and surrounding areas, aerial reconnaissance of routes of ingress, transportation of SRT, etc.

**Health and Safety Annex:**

The Port Director will ensure that the Laredo Field Office Standard Operating Procedures for Serious Communicable and Quarantinable Diseases are followed by all CBP employees.

**Phone Tree:**

- OBP RGC              Ryan Landrum          ████████████
- ERO POC              Jacob Castro          ████████████
- Asylum POC           Daniel Phillips       ████████████
- Starr County Bridge  Roy Pena              ████████
- GSA                  Lisa Langham          ████████
- Starr County S.O.    Rene Fuentes          (956) 487-5571
- Roma P.D.            Jose H. Garcia        (956) 849-2231
- Zapata S.O.          Alonzo Lopez          ████████████
- H.S.I.               Louis Gomez           ██████
- D.P.S.               J Simpson             ████████████

**Government of Mexico Counterparts:**

- MX Customs           Luis Almaguer         011528971059001
- MX Immigration       Onecimo Lopez         011528979720001
- CISEN                Carlos Mata           0115218677271961
- UASIF                                      1-877-367-7710

**Medical Centers:**

Starr County Memorial Hospital
1861 US 83
Roma, TX                (11 Miles)
(956) 487-5561

Rio Grande Regional
101 E Ridge Rd
McAllen TX
(956) 632-6000          (53.5 Miles)

McAllen Medical Center
311 W Expressway 83
McAllen TX
(956) 632-4100          (53.5 Miles)

Mission Regional Medical Center
900 S. Bryan
Mission TX
(956) 323-9000          (48.3 Miles)

Highly Confidential/Attorneys' Eyes Only

**Annex I**
**Land Border Environment**
**Standard Operating Procedures**

**Laredo Field Office**
**Continuity of Operations Plan (COOP) Appendix**

**Function:** Serious Communicable/Quarantinable Disease Risk    **Date:** August 12, 2014
**Reviewed:** July 11, 2017

**Location:** Laredo Field Office

**Background:**

U.S. Customs and Border Protection (CBP) has received guidance from the Centers for Disease Control and Prevention (CDC) and Public Health concerning safety measures for encounters with travelers arriving at land border locations who exhibit symptoms of a serious communicable or quarantinable disease. CBP, Field Operations, is directing Field Offices and Port locations to utilize the information and guidance contained herein as Standard Operating Procedures (SOP) for encounters with land border crossers exhibiting symptoms of a serious communicable or quarantinable disease.

The SOP below is issued to reinforce CBP directives, training and musters relative to CBP land border processing, as well as encounters with and processing of individuals who may present public health threat.

**Related Directives and Memorandum of Understanding:**

- CBP Directive No. 3340-040A, Primary Processing of Travelers and Vehicles Seeking Entry to the United States at Land Ports of Entry
- CBP Directive No. 3340-030B, Secure Detention, Transport and Escort Procedures at Ports of Entry
- CBP Directive No. 5290-007A, Land Border Inspectional Safety Policy
- CBP Directive 4510-026A, Controlled Tire Deflation Directive
- Memorandum of Understanding between the Department of Health and Human Services and Homeland Security (October 2005)

**Information Sharing and Collection:**

- In accordance with Headquarters memorandum dated May 22, 2009, and titled "CBP Guidance for Processing Local Requests for Assistance or Information from the Centers for Disease Control, CBP will share information with the Department of Health and Human Services (HHS), Centers for Disease Control and Prevention (CDC).

- All information sharing requests will be managed in accordance with current CBP Guidance for Processing Local Requests for Assistance or Information.

    AOL-DEF-00011215

**Travelers' Health and Medical Surveillance:**

- Field Office and Port locations will take note of those travelers that exhibit symptoms consistent with a serious communicable or quarantinable disease during normal processing activities (i.e., watching for Illness) based on specific CBP Headquarters guidance.

  - **Watching for Illness:**
    The recognition and reporting of overt visible signs of illness, provided in the course of routine interactions with detainees of travelers. "Watching for Illness" does not involve the eliciting of a medical history or performance of a medical exam.

  - **Active Surveillance:**
    At the CDC's request, and as specifically directed by CBP headquarters, CBP officer and Agriculture Specialists may assist in performing active surveillance. Active surveillance is to identify ill persons suspected of possible infection with, or exposure to, pandemic influenza. Active measures are risk-based, can be varied, and will depend on location and extent of the pandemic outbreak. It may consist of a number of CDC-approved and imposed methods to assess risk that peopled entering the U.S. from affected countries or regions are carrying a quarantinable disease. These measures may be implemented at heightened time of operations during a declared pandemic.

CBP officers must be vigilant while performing inspectional duties. This includes observing border crossers for signs or symptoms of public health targeted illnesses, and reviewing itineraries, public health lookouts, and information from the CDC that may indicate certain individuals and/or diseases are a potential public health threat.

- Port locations will develop/identify procedures to ensure travelers exhibiting symptoms associated with a serious communicable or quarantinable disease are not able to exit the CBP area prior to consultation with the CDC or other appropriate health authorities. In addition, all primary booths and secondary officers will have appropriate Personal Protective Equipment (PPE). N-95 Respiratory face masks, surgical masks, and latex or nitrile gloves will be available at all ports of entry. Surgical masks will be for the use by any person suspected of being infected with a serious or communicable disease identified as a potential public health threat and N-95 masks will be for CBP officers' immediate use as appropriate.

- Leather or neoprene search/work gloves should not be worn for routine document inspections due to the inherent risk of contamination to the glove surfaces. CBP officers who choose to wear gloves for added protection will wear them under a pair of nitrile or latex gloves. CBP officers will wash their hands thoroughly with soap and water or alcohol-based hand gel in accordance with CDC and CBP guidance.

AOL-DEF-00011216

- 

### Encountering and Securing a Public Health Threat:

- All CBP officers who encounter and interact with ill travelers will utilize PPE commensurate with the level of risk and severity of symptoms; this should include the wearing of nitrile gloves and an N-95 mask, per CBP guidance, but may also include disposable goggles or TYVEK suits as may be required.

- In cases where CDC has prepared Traveler Alert Notices (T-HANS) or severe communicable/quarantinable disease information for dissemination, CBP personnel will provide the approved written information/guidance to arriving passengers at the primary booths or at passport control processing stations for those locations that lack a fully equipped FIS style facility.

### Passenger/Commercial Vehicle or Pedestrian:

- CBP officers encountering individuals traveling via passenger (car, motorcycle, etc.) or commercial vehicle (truck), or pedestrian lane(s) who, during processing, display or declare obvious signs or symptoms of a serious communicable or quarantinable disease, or are a public health lookout, must take the following actions:



Highly Confidential/Attorneys' Eyes Only



**Passenger Train or Bus:**

- CBP officers encountering individuals traveling via train or bus who, during processing, display or declare obvious signs or symptoms of a serious communicable or quarantinable disease, or are a public health lookout, must take the following actions:



Highly Confidential/Attorneys' Eyes Only                    AOL-DEF-00011218



**Refusals:**

- 

**Custodial Care of I11 or Informed Persons in CBP Custody:**

- Persons encountered who are suspected of having or declare that they have a serious communicable or quarantinable disease, or who are identified as a potential public health threat, and who are also the subject of an enforcement action and CBP detention, shall be detained and monitored in accordance with CBP Directive 3340-030B, Secure Detention, Transport and Escort Procedures at Ports of Entry.

- **Individual Caution Sheet: An** Individual Caution Sheet (copy attached) will be generated and posted near the entrance to the detention cell or in the secure area for those detainees who pose a special risk or who have particular needs, e.g. diabetic requiring injections or possible suicide risk. The sheet should not be posted in an area easily viewed by the public.

- The fact that there is a person detained with an Individual Caution Sheet will be communicated to all CBP officers on site during shift change briefings/musters.

- The Individual Caution Sheet will contain, at minimum, the following information regarding the person's special risk factor(s):

  (a) Name and DOB
  (b) Medical condition - requires prescribed medication
  (c) Hostile or uncooperative
  (d) Depression or suicidal
  (e) Asylum Claimant
  (f) Juvenile
  (g) Communicable Disease
  (h) Other

- The sheet will be maintained until the person is no longer in CBP custody.

- The Individual Caution Sheet must accompany an alien transferred to a formal detention center. After the person is released or transferred to another agency or facility, a copy of the Individual Caution Sheet will be retained locally for two years and three months, (see CBP Directive 3340-030B, Secure Detention, Transport and Escort Procedures at Ports of Entry.

- **Medical Monitoring: An** Individual Caution Sheet will be generated whenever a CBP officer suspects or receives information that a traveler detained for an independent law enforcement reason may have a serious communicable or quarantinable disease identified as a public health threat (such as TB, Severe Acute Respiratory Syndrome **(SARS),** Avian Influenza or H1N1 Influenza).

  o All persons placed in a secure area at a CBP facility will be asked whether they have a medical problem or condition that may require some attention. If they are currently taking any prescribed medications the CBP officers will attempt to identify the type of prescribed medication, when it was last taken, and when the next dosage is needed.

Highly Confidential/Attorneys' Eyes Only

- *An individual in CBP custody arrived from Mexico with prescription medication in his/her possession.* CBP officers shall not administer the medication without consulting with a health care provider in the U.S.

- *An individual in CBP custody is prescribed medication by a health care provider in the U.S.* Accordingly, in this case, we believe it is permissible for the Agency to administer the medication. The medicine is to be administered at a level no lower than a second-line supervisor.

o Administration of prescribed medication, medical assistance, or refusal of the same, will be noted on the Individual Caution Sheet.

**Medical Emergencies – Arrival by Land:**

- All declared or apparent medical emergencies arriving at a port of entry, or other location where inspectional services are provided, shall be treated as a bona fide emergency unless refuted by evidence to the contrary.

- Persons seeking admission into the United States with a medical emergency will only be delayed for such time as to validate their claim of an emergency, ascertain their intended destination, obtain a declaration of citizenship and their immigration status (visitor, LPR, student visa, etc.).

- When arriving via private vehicle, in most cases, the prudent action will be to summon Emergency Medical Services (EMS) providers to the Port of Entry location and begin to render aid and assistance as may be required. Any remaining inspectional requirements for those persons proceeding inland via ambulance will be accomplished after the medical emergency has been resolved, which may include escort to a medical facility in the United States. CBP employees must exercise sound judgment and remain professional when handling such emergencies.

- CBP officers are reminded their personal health and safety, and that of the traveling public around them, is of paramount importance. CBP officers encountering declared emergencies in private or commercial vehicles or pedestrian traffic will notify, telephonically or via portable radio, a shift supervisor regarding the location and nature of the emergency. This will include any subsequent action initiated or requested such as the rendering of first aid care, the wearing of PPE, and the notification of local emergency services, via 9 1 1, where applicable.

Highly Confidential/Attorneys' Eyes Only

**Cross-Border Ambulance Processing Procedures – Land Border Ports of Entry:**

- In an effort to standardize operating procedures, the steps below will be taken to ensure the effective processing of ambulance traffic.

- Ports must meet with and provide local EMS Ambulance companies a copy of this specific section dealing with Cross Border Ambulance Processing procedures ONLY, as well as, the telephone numbers to land border bridge authorities and the respective CBP port of entry.

- Whenever it is anticipated that an ambulance will be crossing the border from Canada or Mexico, the ambulance company's dispatch should expeditiously telephone the respective bridge or port authority and/or CBP office, and provide the following information:

    (a) Ambulance starting point and final destination.
    (b) Number of ambulance crew on board.
    (c) Patients name, citizenship, date of birth, country of residence and current status in Canada or Mexico.
    (d) Nature of the transport process (e.g. hospital to hospital transport, accident victim, possible treatment/quarantine for a serious communicable or quarantinable illness).
    (e) Priority of Response (routine or urgent).
    (f) Estimated time of arrival at the border.

- The ambulance dispatch center may receive specific direction from CBP or the bridge authority as to what traffic lane or booth to use.

- The ambulance vehicle operator will make every attempt to follow these directions to the best of their ability. In all cases, the ambulance staff will follow the procedures as outlined below:

    (a) Under no circumstances will any ambulance or staff member fail to stop at CBP inspectional lanes.
    (b) All ambulance auditory warning devices will be switched off prior to entering the primary inspection lane.
    (c) The driver of the ambulance will come to a full stop to inform the inspecting CBP officer of their destination and patient information.
    (d) Ambulances engaged in routine transport (non-emergency cases), where the staff and patient are able to communicate verbally with inspecting CBP officers without compromising the medical care of the patient, will stop and complete CBP's primary inspectional process.
    (e) If the CBP officer does not observe any abnormalities or receive conflicting information, the ambulance will be allowed to proceed inland or to secondary to transfer the patient to a U.S. based EMS ambulance.
    (f) If questions or concerns regarding citizenship or legal status arise during a medical emergency, the ambulance will be allowed to proceed and CBP officers will follow the ambulance to the medical care facility for completion of any remaining border inspectional requirements.

AOL-DEF-00011222

(g) If the intended medical facility is changed en-route, but after release from the land port of entry, the ambulance dispatch center must telephone CBP immediately to provide the change of destination.

**Transportation:**

- In the event a symptomatic traveler is directed by the CDC to be transported to a medical facility for further testing and/or evaluation, local EMS will be contacted to transport the individual(@) to the medical facility. CBP port managers will coordinate transportation with CDC and EMS officials to identify transportation needs and transportation safety guidance for CBP Officers that may be required to assist with the transport of a symptomatic passenger.

- If it is determined that an alien must be transported to a medical facility or other designated quarantine facility for further examination or isolation before a determination of admissibility can be made, CBP, wherever practicable, may parole the traveler into the United States on a temporary basis for medical treatment.

**Employee Health and Worker Protection and Countermeasures:**

- An IOIL will be created for all encounters with a public health threat.

- CBP management personnel will document all CBP personnel who have been exposed to a suspected public health threat utilizing a CA-2.

- If a CBP employee is exposed to a potentially contagious border crosser, CDC personnel will be provided with CBP Supervisory contact names and telephone numbers so that CDC may advise them appropriately.

- Supervisors (Managers, Management) should inform an employee of any instance in which a traveler whom the employee has cleared is confirmed to have a known serious communicable or quarantinable disease. Supervisors (Managers, Management) should tell the employee that there is a chance he/she has been exposed to a serious communicable or quarantinable disease and should recommend that the employee obtain an evaluation of his/her health status from a medical professional.

**CBP Internal Reporting Requirements**

- In all cases when CBP encounters an ill traveler or multiple travelers, the duty Supervisor will follow the port chain of command protocols until the Director, Field Operations and appropriate Field Office staff is notified as soon as possible. The duty Supervisor will also provide updates as appropriate.

- Directors, Field Operations will ensure that notification is provided as soon as possible to the Assistant the Assistant Commissioner, Field Operations of the situation along with providing appropriate updated information until the situation is resolved.

- The duty Supervisor will report to the Commissioner's Situation Room in accordance with CBP Directive 3340-025C Commissioner's Situation Room Reporting.

**Media Inquiries:**

- All media requests for information/interviews will be coordinated in advance through the Field Office Public Affairs Officer to ensure the most current public affairs guidance is utilized.

- Field Office Public Affairs Officers will disseminate, as appropriate, the most current Public Affairs Guidance issued by CBP Headquarters.

**Use of Force:**

- As in all other enforcement circumstances, CBPOs are authorized to employ reasonable and necessary force commensurate with the circumstances presented. CBPOs must follow existing policy on the use of force continuum. To help avoid use of force situations, it is recommended that CBPOs focus efforts on gaining cooperation and consent from individuals who demonstrate signs and symptoms of infection, or who provide information that may suggest potential infection.

- CBPOs should be advised that individuals who are infected with a serious communicable or quarantinable disease and who do not consent, who are uncooperative, or who attempt to flee an area in contravention of a CBP request or direction to move to another area for further inquiry and/or examination, are not deemed to pose an imminent threat of death or serious bodily injury to employees or others, and such actions do not justify the use of deadly force under current DHS and CBP guidelines and policies.

**Annex J**
**Temporary Holding Cell Capacities**

TEMPORARY HOLDING CELL CAPACITY
**BROWNSVILLE POE**

| Location | Cell in Admissibility Processing Area | Cell (1) Capacity | Cell (2) Capacity | Total Capacity |
|---|---|---|---|---|
| GATEWAY | 2 | 8 | 7 | 15 |
| B&M | 2 | 10 | 10 | 20 |
| VETERANS | 2 | 8 | 7 | 15 |
| LOS INDIOS | 2 | 10 | 9 | 19 |
| **TOTALS:** | **8** | **36** | **33** | **69** |

| Location | Cell in Secondary Area | | Cell Capacity | | | Total Capacity | |
|---|---|---|---|---|---|---|---|
| | Pedestrian | Vehicle | Pedestrian (1) | Pedestrian (2) | Vehicle | Pedestrian | Vehicle |
| GATEWAY | 2 | 1 | 5 | 6 | 7 | 11 | 7 |
| B&M | 2 | 1 | 6 | 7 | 3 | 13 | 3 |
| VETERANS | 2 | 1 | 6 | 6 | 2 | 12 | 2 |
| LOS INDIOS | 2 | 1 | 6 | 9 | 5 | 15 | 5 |
| **TOTALS:** | **8** | **4** | **23** | **28** | **17** | **51** | **17** |

| | |
|---|---|
| **Grand Total of Cells:** | **20** |
| **Grand Total of Temporary Detention Capacity:** | **137** |

TEMPORARY HOLDING CELL CAPACITY
**DEL RIO POE**

| Location | Cell in Admissibility Processing Area | Cell (1) Capacity | Cell (2) Capacity | Total Capacity |
|---|---|---|---|---|
| DEL RIO | 8 | 22 | 12 | 34 |
| ADT | 2 | 4 | 4 | 8 |
| CARGO | 1 | 3 | 0 | 3 |
| HEADHOUSE | 1 | 4 | 4 | 4 |
| **TOTALS:** | **12** | **33** | **20** | **49** |

| Location | Cell in Secondary Area | | Cell Capacity | | | Total Capacity | |
|---|---|---|---|---|---|---|---|
| | Pedestrian | Vehicle | Pedestrian (1) | Pedestrian (2) | Vehicle | Pedestrian | Vehicle |
| DEL RIO | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ADT | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| CARGO | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| HEADHOUSE | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **TOTALS:** | **0** | **0** | **0** | **0** | **0** | **0** | **0** |

| | |
|---|---|
| **Grand Total of Cells:** | **12** |
| **Grand Total of Temporary Detention Capacity:** | **49** |

**TEMPORARY HOLDING CELL CAPACITY**
**EAGLE PASS POE**

| Location | Cell in Admissibility Processing Area | Cell (1) Capacity | Cell (2) Capacity | Total Capacity |
|---|---|---|---|---|
| Eagle Pass Intl. | 1 | 2 | | 2 |
| Camino Real | 2 | 4 | 4 | 8 |
| **TOTALS:** | **3** | **6** | **4** | **10** |

| Location | Cell in Secondary Area | | Cell Capacity | | | Total Capacity | |
|---|---|---|---|---|---|---|---|
| | Pedestrian | Vehicle | Pedestrian | Vehicle (1) | Vehicle (2) | Pedestrian | Vehicle |
| Eagle Pass Intl. | | 2 | | 1 | 1 | | 2 |
| Camino Real | | 2 | | 1 | 1 | | 2 |
| Railroad | | 1 | | 2 | | | 2 |
| **TOTALS:** | **0** | **5** | **0** | **4** | **2** | **0** | **6** |

| | |
|---|---|
| **Grand Total of Cells:** | **8** |
| **Grand Total of Temporary Detention Capacity:** | **16** |

**TEMPORARY HOLDING CELL CAPACITY**
**LAREDO POE**

| Location | Cell in Admissibility Processing Area | Cell (1) Capacity | Cell (2) Capacity | Total Capacity |
|---|---|---|---|---|
| Gateway to the Americas | 2 | 6 | 6 | 12 |
| Colombia | 2 | 6 | 6 | 12 |
| **TOTALS:** | **4** | **12** | **12** | **24** |

| Location | Cell in Secondary Area | | Cell Capacity | | Total Capacity | |
|---|---|---|---|---|---|---|
| | Pedestrian | Vehicle | Pedestrian | Vehicle | Pedestrian | Vehicle |
| Lincoln Juarez | 0 | 2 | 0 | 12 | 0 | 12 |
| Colombia(Cargo) | 0 | 2 | 0 | 12 | 0 | 12 |
| World Trade | 2 | 2 | 12 | 12 | 12 | 12 |
| Airport | 0 | 2 | 0 | 12 | 0 | 12 |
| Railroad | 0 | 1 | 0 | 6 | 0 | 6 |
| **TOTALS:** | **2** | **9** | **12** | **54** | **12** | **54** |

| | |
|---|---|
| **Grand Total of Cells:** | **15** |
| **Grand Total of Temporary Detention Capacity:** | **90** |

Highly Confidential/Attorneys' Eyes Only

**TEMPORARY HOLDING CELL CAPACITY**
**HIDALGO POE**

| Location | Cell in Admissibility Processing Area | Cell (1) Capacity | Cell (2) Capacity | Total Capacity |
|---|---|---|---|---|
| HIDALGO | 2 | 6 | 6 | 12 |
| PHAR | 2 | 6 | 6 | 12 |
| ANZALDUAS | 2 | 6 | 6 | 12 |
| **TOTALS:** | **6** | **18** | **18** | **36** |

| Location | Cell in Secondary Area | | Cell Capacity | | | Total Capacity | |
|---|---|---|---|---|---|---|---|
| | Pedestrian | Vehicle | Pedestrian | Vehicle (1) | Vehicle (2) | Pedestrian | Vehicle |
| HIDALGO | 0 | 2 | 0 | 6 | 6 | 0 | 12 |
| PHAR | 0 | 1 | 0 | 6 | 0 | 0 | 6 |
| ANZALDUAS | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **TOTALS:** | **0** | **3** | **0** | **12** | **6** | **0** | **18** |

| | |
|---|---|
| **Grand Total of Cells:** | **9** |
| **Grand Total of Temporary Detention Capacity:** | **54** |

**TEMPORARY HOLDING CELL CAPACITY**
**RIO GRANDE CITY/LOS EBANOS POE**

| Location | Cell in Admissibility Processing Area | Cell (1) Capacity | Cell (2) Capacity | Total Capacity |
|---|---|---|---|---|
| RGC POE | 2 | 8 | 6 | 14 |
| LOS EBANOS | 2 | 6 | 6 | 12 |
| | | | | |
| **TOTALS:** | **4** | **14** | **12** | **26** |

| Location | Cell in Secondary Area | | Cell Capacity | | | Total Capacity | |
|---|---|---|---|---|---|---|---|
| | Pedestrian | Vehicle | Pedestrian (1) | Pedestrian (2) | Vehicle | Pedestrian | Vehicle |
| RGC POE OUTBOUND | 0 | 1 | 0 | 0 | 4 | 0 | 4 |
| LOS EBANOS | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | |
| **TOTALS:** | **0** | **1** | **0** | **0** | **4** | **0** | **4** |

| | |
|---|---|
| **Grand Total of Cells:** | **5** |
| **Grand Total of Temporary Detention Capacity:** | **30** |

Highly Confidential/Attorneys' Eyes Only

**TEMPORARY HOLDING CELL CAPACITY**
**PROGRESO POE**

| Location | Cell in Admissibility Processing Area | Cell (1) Capacity | Cell (2) Capacity | Cell (3) Capacity | Cell (4) Capacity | Cell (5) Capacity | Total Capacity |
|---|---|---|---|---|---|---|---|
| Progreso | 2 | 8 | 6 | | | | 14 |
| Donna | 5 | 4 | 4 | 4 | 4 | 4 | 20 |
| TOTALS: | 7 | 12 | 10 | 4 | 4 | 4 | 34 |

| Location | Cell in Secondary Area | | Cell Capacity | | | | Total Capacity | |
|---|---|---|---|---|---|---|---|---|
| | Pedestrian | Vehicle | Pedestrian | Vehicle (1) | Vehicle (2) | Vehicle (3) | Pedestrian | Vehicle |
| Progreso | 2 | | 6 | | | | 6 | |
| Donna | | 5 | | 4 | 4 | 4 | | 12 |
| TOTALS: | 2 | 5 | 6 | 4 | 4 | 4 | 6 | 12 |

| | |
|---|---|
| Grand Total of Cells: | 12 |
| Grand Total of Temporary Detention Capacity: | 52 |

**TEMPORARY HOLDING CELL CAPACITY**
**Roma POE**

| Location | Cell in Admissibility Processing Area | Cell (1) Capacity | Cell (2) Capacity | Total Capacity |
|---|---|---|---|---|
| Roma | 2 | 4 | 4 | 8 |
| Falcon Dam | 2 | 4 | 4 | 8 |
| TOTALS: | 4 | 8 | 8 | 16 |

| Location | Cell in Secondary Area | | Cell Capacity | | Total Capacity | |
|---|---|---|---|---|---|---|
| | Pedestrian | Vehicle | Pedestrian | Vehicle (1) | Vehicle (2) | Vehicle |
| Roma | 0 | 2 | 0 | 4 | 4 | 4 |
| Falcon Dam | 0 | 2 | 0 | 4 | 4 | 4 |
| | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTALS: | 0 | 4 | 0 | 8 | 8 | 8 |

| | |
|---|---|
| Grand Total of Cells: | 8 |
| Grand Total of Temporary Detention Capacity: | 32 |

Highly Confidential/Attorneys' Eyes Only

Highly Confidential/Attorneys' Eyes Only



**Annex K**
**UAC Statistics**
**Unaccompanied Alien Children**

Highly Confidential//Attorneys' Eyes Only



**Annex L**
**ERCF Statistics**
**Expedited Removal with Credible Fear**

AOL-DEF-00011230

Highly Confidential/Attorneys' Eyes Only

**Annex M**
**Laredo Field Office International Crossings (Types and Hours of Operation)**

| Port | Office / Crossing | Crossing Type | Days of Operation | Hours of Operation |
|---|---|---|---|---|
| Brownsville | Port of Brownsville | Port Office | Monday - Friday | 0800 - 1600 |
| | Gateway Bridge | Land | 7 Days a Week | 24 x 7 |
| | Brownsville & Matamoros Bridge | Land | 7 Days a Week | 24 x 7 |
| | Los Indios International Bridge | Land | 7 Days a Week | 0600 - 2400 |
| | Veterans International Bridge | Land | 7 Days a Week | 0600 - 2400 |
| | Brownsville Seaport | Seaport | Monday - Friday | 0800 - 1600 |
| | South Padre Island International Airport | Airport | 7 Days a Week | 0600 - 2200 |
| | West Rail Bridge | Rail | 7 Days a Week | Mon-Sat: 0800 - 2200 Sun: 0800 - 1600 |
| Del Rio | Port of Del Rio | Port Office | Monday - Friday | 0800 - 1600 |
| | Del Rio International Airport | Airport | 7 Days a Week | As Needed |
| | Del Rio International Bridge | Land | 7 Days a Week | 24 x 7 |
| | Lake Amistad Dam | Land | 7 Days a Week | 1000 - 1800 |
| Eagle Pass | Port of Eagle Pass | Port Office | Monday - Friday | 0800 - 1600 |
| | Camino Real International Bridge | Land | 7 Days a Week | 24 x 7 |
| | Union Pacific International Bridge | Rail | 7 Days a Week | 24 x 7 |
| | Eagle Pass International Bridge I | Land | 7 Days a Week | 0700 - 2300 |
| | Maverick Memorial International Airport | Airport | As Needed | As Needed |
| Laredo | Port of Laredo | Port Office | Monday - Friday | 0800 - 1700 |
| | Juarez-Lincoln International Bridge | Land | 7 Days a Week | 24 x 7 |
| | Gateway to the Americas Bridge | Land | 7 Days a Week | 24 x 7 |
| | KCS International Railroad Bridge | Rail | 7 Days a Week | 24 x 7 |

AOL-DEF-00011231

Highly Confidential/Attorneys' Eyes Only

| Port | Office / Crossing | Crossing Type | Days of Operation | Hours of Operation |
|---|---|---|---|---|
| | Colombia Solidarity Bridge | Land | 7 Days a Week | Pax: 0800 - 2400<br>Cargo:<br>M-F: 0800 - 2400<br>Sat: 0800 - 1600<br>Sun: 1000 - 1400 |
| | World Trade Bridge | Land | 7 Days a Week | M-F: 0700 - 2400<br>Sat: 0800 - 1600<br>Sun: 1000 - 1400 |
| | Laredo International Airport | Airport | 7 Days a Week | 24 x 7 |
| Hidalgo | Port of Hidalgo | Port Office | Monday - Friday | 0800 - 1630 |
| | Anzalduas International Bridge | Land | 7 Days a Week | 0600 - 2200 |
| | Hidalgo International Bridge | Land | 7 Days a Week | 24 x 7 |
| | Pharr International Bridge | Land | 7 Days a Week | 0600 - 2400 |
| | McAllen-Miller International Airport | Airport | 7 Days a Week | 0800 - 2400 |
| Progreso | Edinburg User Fee Airport | Airport | Monday - Friday | 0800 - 1600 |
| | Port of Progreso | Port Office | Monday - Friday | 0800 - 1630 |
| | Donna International Bridge | Land | 7 Days a Week | 0600 - 2200 |
| | Progreso International Bridge | Land | 7 Days a Week | 24 x 7 |
| | Valley User Fee Airport | Airport | Monday - Friday | 0600 - 2200 |
| | Weslaco/Mid Valley Landing Rights Airport | Airport | Monday - Saturday | 0800 - 1700 |
| Roma | Port of Roma | Port Office | Monday - Friday | 0800 - 1630 |
| | Falcon Lake Dam | Land | 7 Days a Week | 0700 - 2100 |
| | Roma International Bridge | Land | 7 Days a Week | 24 x 7 |
| Rio Grande City | Port of Rio Grande City | Port Office | Monday - Friday | 0800 - 1630 |
| | Rio Grande City International Bridge | Land | 7 Days a Week | 0700 - 2400 |
| | Los Ebanos Ferry Crossing | Ferry | 7 Days a Week | 0800 - 1600 |

AOL-DEF-00011232