# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, <br> Plaintiffs, <br><br> v. <br><br> Chad Wolf, *et al.*, <br> Defendants. | ) <br> ) <br> ) <br> ) <br> )    No. 3:17-cv-02366-BAS-KSC <br> ) <br> ) <br> ) <br> ) |

### DECLARATION OF TODD C. OWEN

I, Todd C. Owen, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records, and reasonably relied upon in the course of my employment, hereby declare as follows relating to the above-captioned matter.

1. I am currently the Executive Assistant Commissioner, Office of Field Operations (OFO), U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS). I have been employed in this role since February 2015. I began my career in 1990 with the legacy U.S. Customs Service. During my 30 years of federal service, I have held various leadership positions, including Executive Director, Cargo and Conveyance Security; Area Port Director, New Orleans; and Director, Field Operations (DFO), Los Angles. In my current position, I oversee more than 29,000 employees, with operations at 20 major field offices, 328 ports of entry (POEs), and 16 Preclearance locations. In my role, I am ultimately responsible for all decisions made by, and actions taken by, OFO.

2. I make this declaration to support CBP's assertion of the deliberative process privilege over documents (or portions of documents) that I understand have already been produced to plaintiffs without sufficient protection for privileged information, and which the government is now seeking to claw back and reproduce. I understand that plaintiffs are challenging CBP's assertion of privilege. Specifically, the documents at issue are: (1) three versions of an internal email

1

chain between CBP and DHS, ending on August 7, 2018 (AOL-DEF-00273358, AOL-DEF-00380556, and AOL-DEF-00380562); (2) an October 18, 2016 internal CBP email chain (AOL-DEF- 00525116); (3) three versions of a November 2018 internal CBP email chain (AOL-DEF-00028473, AOL-DEF-00379289, AOL-DEF-00028469, and AOL-DEF-00050247); and (4) an attachment to one of the messages in that email chain (AOL-DEF-00379291). These documents all reflect CBP and DHS decisions in which OFO was intimately and actively involved.

3. I hereby formally assert the deliberative process privilege, on behalf of CBP, as to each of the nine documents discussed herein. I will explain the deliberative nature of each document for which Plaintiffs are challenging the assertion of privilege, as well as the harm that would result from the disclosure of this privileged information.

*Port of Entry Briefing Email Chains*

4. The first set of documents that are subject to the deliberative process privilege and should be withheld in their entirety consists of email chains with the subject line "FW: [COS CLEARANCE] AS2BB – 08.09.18 – Point of Entry Briefing", with the last email being dated August 7, 2018 (AOL-DEF- 00273358, AOL-DEF-00380556, AOL-DEF-00380562). These emails contain internal discussions between various DHS and CBP employees relating to a request for CBP to meet with the DHS Deputy Secretary on potential changes to CBP's queue management policies and practices. The emails involve internal CBP deliberations regarding two potential courses of action, which were still under consideration at the time of the meeting and discussions. Each email contains internal deliberations and decision-making that, if disclosed, would reveal that deliberative decision-making process.

5. The first of the documents relating to the Point of Entry Briefing, AOL-DEF-00273358, is an email chain, beginning with an email sent on July 31, 2018 from the Confidential Assistant of the Office of the Deputy Secretary for DHS to three CBP personnel, with three DHS personnel copied. The ensuing email chain contains internal CBP discussions relating to the DHS meeting request with the Deputy Secretary, including internal discussions regarding the exact subject of

2

the meeting, the substance of two different potential courses of action and potential decision points still under review, an analysis of options and data/information needed to decide on a course of action, and discussions about the substance of the policy decision under consideration. Additionally, the deliberations also include the opinions and views of a particular CBP employee involved in the decision making process regarding both potential courses of action.

6. The next two email chains discussing the port of entry briefing, AOL-DEF-00380556 and AOL-DEF-00380562, contain the same material as AOL-DEF-00273358, but also contain additional intra-agency discussions between CBP personnel about the ongoing queue management policy discussion, specifically, requesting and providing clarification on their understanding of the policy decisions under discussion, and the contents of the pre-decisional recommendations contained in a memorandum drafted by CBP employee Ryan Koseor.

7. All three email strings contain a back-and-forth discussion regarding potential future agency actions and potential changes to agency policy. On their face, these email chains reflect conversations that are pre-decisional and deliberative in nature, as they contain discussions regarding multiple *potential* courses of action. The emails reflect CBP and DHS personnel's opinions on future policies, recommendations for implementing such policies, and deliberations among CBP and DHS relating to the potential operational impacts of such policy decisions. These emails thus show the iterative process by which DHS and CBP evaluate and assess potential policy changes, as well as the nature of the discussions related to such policy changes. During this decision-making process, CBP and DHS personnel must be free to communicate honestly and openly about their own opinions, recommendations, and reactions to potential plans of actions, in order to ensure that agency and Department leadership are able to formulate policies that are sound from a legal and policy perspective. Part of this process involves the consideration and discussion of all potential options, even those that contain a policy, operational, or legal risk. Employees must feel free to propose, discuss, and assess all potential policy options. Should the details of the iterative process, as well as employees' own role in developing such policy options

3

and their reactions to those policies, be disclosed outside of the government, it would severely stifle employees' willingness to fully participate in that process, which would significantly harm the ability of CBP and DHS to propose and discuss policy in the future.

*Email Chain on El Centro Processing Center*

8. The second set of documents that contains deliberative and pre-decisional material is an email chain with the subject line "RE: Migrants – Updates and policy decision re El Centro Processing Center concept", dated October 18, 2016 (AOL-DEF-00525116). This email string includes an internal CBP communication from then-Deputy CBP Commissioner Kevin McAleenan recounting various policy considerations that were still under consideration by the Secretary of Homeland Security and the National Security Council, the decision-makers' weighing of those considerations, as well as Deputy Commissioner McAleenan's impressions of the ongoing decision-making. These communications reflect the substance of ongoing deliberations, the viewpoints of various decision-makers and of Deputy Commissioner McAleenan, and do not reflect any final agency decision or practice. These emails reflect the give-and-take discussion of ongoing, high-level policy decision-making and do not reflect the final decision of the Executive Branch.

9. This information is thus privileged and must be protected. CBP leadership must often make decisions based on previous decisions made by other DHS components, the Secretary, and others in the Executive Branch. Thus, as part of the CBP decision-making process, leadership must evaluate the potential impacts of a previously-made decision and determine the most appropriate course of action for CBP moving forward. This process involves an honest and frank assessment of the existing policy as well as the potential need for future policy changes. These deliberative internal assessments must remain protected from public disclosure, as public scrutiny of this process would have a significant chilling effect on leadership's willingness to engage in such an honest assessment of policy decisions in the future. Such a chilling effect would harm the effectiveness of future decision-making.

***Email Chain on San Ysidro Processing Center***

10. The third set of documents that should be redacted to protect privileged material consists of email chains with the subject line "Re: C1 Migrant Processing Direction", dated November 11, 2018, November 12, 2018, and November 14, 2018, respectively (AOL-DEF-00379289 and its attachment, AOL-DEF-00379291; AOL-DEF-00028469; AOL-DEF-00028473; AOL-DEF-00050247). AOL-DEF-00379289 and AOL-DEF-00028469 consist of an email chain discussing the substance of various non-final proposals regarding changes to processing aliens at the San Ysidro Port of Entry, including an assessment of the strengths and weaknesses of the options, as well as recommendations and opinions related to those policy proposals. AOL-DEF-00028473 contains the same material as AOL-DEF-00379289 and AOL-DEF-00028469, as well as an additional follow up email that I sent to CBP's Deputy Commissioner discussing the substance of a draft proposal for processing migrants at the San Ysidro port of entry. This email contains a detailed description of the draft proposal, including the relevant facts that the Deputy Commissioner and other decision-makers need to assess the strengths and weaknesses of the proposal and reach a final decision. This email also contains my own personal opinions regarding the merits of the draft proposal.

11. AOL-DEF-00379291 is an attachment to AOL-DEF-00379289, entitled "Ped West", dated November 11, 2018. This memorandum contains even more details regarding the draft proposal included in my email to the Deputy Commissioner. This memorandum is pre-decisional, as it consists of a draft plan and proposed courses of action for managing the migration surge at the San Ysidro port of entry. This proposal was not finalized, implemented, or approved.

12. Lastly, AOL-DEF-00050247 contains the same material as AOL-DEF-00028473, as well as additional follow up emails containing direction from the DHS Secretary regarding the processing of migrants at San Ysidro. The email conveying the Secretary's direction contains a deliberative discussion of additional potential policy options to potentially be considered and discussed in the

future. This email chain thus reflects the nature of policy proposals that were not approved or implemented, as well as an initial discussion of policy options *to be considered* in the future.

13. All of this information is deliberative, pre-decisional, and subject to the deliberative process privilege. Specifically, this email chain reveals the process by which CBP and DHS engaged in dialogue with respect to options for the managing the influx of migration, including changes made to previously-taken actions and steps CBP was prepared to take in the future. This process involves an iterative exchange of information, in which individuals within OFO, based on their operational experience and knowledge of facts on the ground, provided recommendations to CBP and DHS leadership regarding potential course of actions for addressing operational challenges and vulnerabilities. These emails also show various individuals' reactions, including my own, to the options under discussion, as well as recommendations regarding the potential implementation of such options. Senior decision-makers within CBP and DHS then considered these recommendations, as well as my opinions and the opinions of others within the agency, to make the most appropriate decision.

14. All of this information is critical to ensure that DHS and CBP leadership are able to make the most effective policy decisions to address such operational vulnerabilities. When making these decisions, it is of critical importance that leadership receives detailed, specific, and unfiltered recommendations regarding policy options, so that they can consider all appropriate facts and come to a reasoned, well-supported decision that best supports the needs of the agency and the Department. Part of this process is presenting multiple different options, some of which may ultimately end up being rejected or not approved. Policy proposals which were considered, but not accepted or approved, should also remain confidential, as it is critical that decision-makers are free to make appropriate policy decisions without the threat of public disclosure and second-guessing by outside entities, as such after-the-fact second-guessing could have a significant chilling effect on leadership's willingness to engage in this type of frank, honest, and detailed

6

evaluation of options. Revelation of options considered, but not approved, would permit outside entities with a mechanism to engage in such second guessing.

***Harms of Disclosure***

15. Each of the documents discussed in this declaration were prepared to inform agency decisions and reflect analyses undertaken to support recommendations to agency leadership. The various emails, and their accompanying attachments, reflect consideration of *proposed* non-final agency activities, containing communications among agency leadership and recommendations and suggestions from policy advisors. These communications include, but are not limited to, deliberations, evaluations, analysis, and comments regarding pre-decisional policy actions and options for leadership. Moreover, these documents reflect the give-and-take discussions which precede any public position of the agency. Release of this information and internal deliberations would reveal agency deliberations and negatively impact the decision-making process, as it would impede open and frank discussions in the deliberative process.

16. I am aware that in this litigation the parties have entered into a Protective Order, ECF No. 276, and I have reviewed the terms of this stipulated Protective Order. The existence of this Protective Order does not change my assessment of the importance of shielding these internal, pre-decisional agency deliberations from disclosure. Even disclosure under a protective order would not mitigate the chilling effect and detrimental consequences that would result from these documents being disclosed for the purposes of this litigation.

17. I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed this  10  day of March, 2020.

Todd C. Owen
Executive Assistant Commissioner
Office of Field Operations
U.S. Customs and Border Protection