JOSEPH H. HUNT
Assistant Attorney General
WILLIAM C. PEACHEY
Director
SAMUEL P. GO
Assistant Director
KATHERINE J. SHINNERS
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation –
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259
Fax: (202) 305-7000
katherine.j.shinners@usdoj.gov

ALEXANDER J. HALASKA
ARI NAZAROV
DHRUMAN Y. SAMPAT
Trial Attorneys

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
(San Diego)**

| | |
|---|---|
| AL OTRO LADO, INC., *et al*, <br><br> Plaintiffs, <br><br> v. <br><br> CHAD F. WOLF, Acting Secretary, U.S. DHS, in his official capacity; *et al.*, <br><br> Defendants. | Case No. 3:17-cv-02366-BAS-KSC <br> Hon. Karen S. Crawford <br><br> **[REDACTED COPY OF DOCUMENT FILED UNDER SEAL] [DISCOVERY MATTER] JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE CONCERNING DEFENDANTS' JANUARY 30 CLAWBACK NOTICE** <br><br> [*Declarations of Katherine J. Shinners and Stephen M. Medlock Filed Concurrently*] |

The parties submit this joint motion for purposes of deciding the propriety of certain of Defendants' claims of deliberative-process privilege. Defendants asserted privilege over these documents in a letter dated January 30, 2020 ("January 30 Clawback"). Plaintiffs challenged several of the privilege claims. The parties have conferred, and have narrowed their dispute to nine documents, or portions thereof, which are listed below and will be lodged with this Court for *in camera* review, highlighted to identify the material over which Defendants are asserting privilege.

| Document | Bates Range | Defendants' Deliberative Process Privilege Assertions |
|---|---|---|
| 1 | AOL-DEF-00525116–18 | Page 525116: second email; writer's discussion of the viewpoints of author and various decision-makers with respect to potential courses of action for addressing surge of Haitian migrants that reflects the give and take of on-going-high-level policy decisions and do not reflect the final decision of the executive branch. |
| 2 | AOL-DEF-00028473–75 | Pages 28473-74: substantive discussion of non-final proposal for changes to processing aliens at the San Ysidro Port of Entry. |
| 3 | AOL-DEF-00379289–90 | Pages 379289-90: substantive discussion of non-final proposal for changes to processing aliens at the San Ysidro Port of Entry. |
| 4 | AOL-DEF-00379291–96 | Attachment to Doc. 3: predecisional document outlining proposed course of action that has not been approved. |
| 5 | AOL-DEF-00028469–70 | Pages 28469-70: substantive discussion of non-final proposal for changes to processing aliens at the San Ysidro Port of Entry. |
| 6 | AOL-DEF-00050247–50 | Pages 50248-49: substantive discussion of non-final proposal for changes |

Case 3:17-cv-02366-BAS-KSC   Document 437   Filed 04/02/20   PageID.32945   Page 3 of 17

| | | | |
|---|---|---|---|
| | | | to processing aliens at the San Ysidro Port of Entry. Page 50247: substantive discussion of potential future actions to be considered by DHS at a future time. |
| | 7 | AOL-DEF-00273358–60 | DP: entire email chain; discussion within CBP relating to DHS request for meeting with DHS Deputy Secretary regarding potential changes to policies and practices with respect to queue management. Email chain reveals DHS and CBP deliberations and decisionmaking regarding multiple potential courses of action with respect to operations and policy of the Department and agency. Each email contains information about the decisionmaking processes that would reveal that deliberative process, including proposed course of action that were under consideration by CBP and by Deputy DHS Secretary. That information includes: (1) the subject of the meeting; (2) substantive discussion of two different potential courses of action and non-final decisions under review and discussion; (3) an analysis of the type of information needed for briefing to make a decision on one course of action; and (4) the views of an individual CBP employee (Mr. Howe) that contain pre-decisional reactions or recommendations related to ongoing decisionmaking process. |
| | 8 | AOL-DEF-00380556–61 | DP: entire email chain; discussion within CBP relating to DHS request for meeting with DHS Deputy Secretary regarding potential changes to policies and practices with respect to |

| | | |
|---|---|---|
| | | queue management. Email chain reveals DHS and CBP deliberations and decisionmaking regarding multiple potential courses of action with respect to operations and policy of the Department and agency. Each email contains information about the decisionmaking processes that would reveal that deliberative process, including proposed course of action that were under consideration by CBP and by Deputy DHS Secretary. That information includes: (1) the subject of the meeting; (2) substantive discussion of two different potential course of action and non-final decisions under review and discussion; (3) an analysis of the type of information needed for briefing to make a decision on one course of action; and (4) discussions regarding the substance of policy proposals still under discussion. |
| 9[1] | AOL-DEF-00380562-64 | DP: entire email chain; discussion within CBP relating to DHS request for meeting with DHS Deputy Secretary regarding potential changes to policies and practices with respect to queue management. Email chain reveals DHS and CBP deliberations and decisionmaking regarding multiple potential courses of action with respect to operations and policy of the Department and agency. Each email contains information about the deci- |

---

[1] These documents are referred to below as "Doc." Exhibits to the concurrently filed declaration of Stephen Medlock are referred to sequentially as "Ex."

3

| | | |
|---|---|---|
| | | sionmaking processes that would reveal that deliberative process, including proposed course of action that were under consideration by CBP and by Deputy DHS Secretary. That information includes: (1) the subject of the meeting; (2) substantive discussion of two different potential course of action and non-final decisions under review and discussion; (3) an analysis of the type of information needed for briefing to make a decision on one course of action; and (4) discussions regarding the substance of policy proposals still under discussion. |

# JOINT MEMORANDUM OF POINTS AND AUTHORITIES

## I. TIMELINESS OF DISPUTE

***Defendants' Position.*** Defendants timely raised this dispute with the Court on March 9, 2020. The event giving rise to the dispute occurred on February 6, 2020, when Plaintiffs either set forth the scope of their challenge to Defendants' January 30 Clawback or the time to do so expired. If the Court disagrees, Defendants respectfully request a retroactive extension.

On January 30, 2020, Defendants sent Plaintiffs a letter identifying 20 documents that needed to be clawed back based on various grounds. Shinners Decl. ¶ 4. Under the ESI Order (ECF No. 277), Plaintiffs had until February 6, 2020, to either destroy/return the documents or challenge the privilege claim. ESI Order § IV(G)(5). Plaintiffs sent a response email on January 31, 2020 that purported to raise a challenge to all documents due to Plaintiffs' disagreement with claims of law enforcement and deliberative process privilege. Shinners Decl. ¶ 6. Yet the January 30 Clawback listed several documents with claims of both attorney-client and deliberative process privilege, as well as documents without any deliberative process or law enforcement privilege claims. *See id.* ¶ 4. Defendants thus subsequently requested that Plaintiffs specify the parameters of their challenge. *Id.* ¶ 7. On February 6, 2020, Plaintiffs responded that they were only challenging assertions of deliberative process and law enforcement privilege, but did not specify which documents they were challenging. *Id.* ¶ 8. On February 27, 2020, Defendants reached out to schedule a conference regarding this dispute on March 2 or 4, 2020.[2] *Id.* ¶ 10. In that email, Defendants advised Plaintiffs that they believed the 30-day time period for bringing this dispute to the Court's attention began on February 6,

---

[2] Defendants did not seek to schedule the conference sooner due to litigation deadlines during the intervening time, including their opposition to Plaintiffs' class-certification motion, and counsel's desire to investigate the ten pages of privilege arguments invoked by Plaintiffs in a separate letter. Shinners Decl. ¶ 9.

5

2020 and ended on March 9, 2020, and asked Plaintiffs to advise if they disagreed. *Id.* Plaintiffs sought to schedule the parties' conference for March 5, 2020, and only on March 4, 2020, did they notify Defendants that they disagreed and that they believed the 30-day period had run on March 2, 2020. *Id.* ¶¶ 11-12. Had Defendants been aware of Plaintiffs' position, they could have sought an extension before March 2, 2020, to avoid litigating this issue.

*Plaintiffs' Position.* Defendants' claw back motion should be denied because it is untimely. This Court's Chambers Rules are clear: discovery disputes must be brought to the attention of the Court by telephone "within **30 days** of the event giving rise to the dispute." Chambers R. § VIII(B). This 30-day deadline can only be extended by a Court order, and a party seeking to extend the 30-day deadline must do so within 30 days of learning about the dispute. *Id.*

Defendants admit that they did not bring this motion to the Court's attention within 30 days of learning of the dispute. As Defendants concede, on January 30, 2020, Plaintiffs sent Defendants a letter challenging many of the deliberative process assertions in their privilege log. Shinners Decl. ¶ 5. On the same day, Defendants attempted to claw back additional documents, including the nine in dispute here, via a letter. *Id.* at ¶ 4. The next day, on January 31, 2020, Plaintiffs wrote to Defendants informing them that based on the arguments contained in their January 30, 2020 letter, Plaintiffs "w[ould] be challenging the claim of privilege" with respect to these documents. *Id.* at ¶ 6. It could not be clearer that on January 31, 2020 the parties had a dispute concerning Defendants' January 30, 2020 clawback request. *See, e.g.*, *Dispute*, Black's Law Dictionary (11th ed. 2019) (defining "dispute" as a "conflict or controversy"). Defendants violated this Court's Chambers Rules when they did not advise this Court of the discovery dispute until March 9, 2020—38 days after receiving Plaintiffs' letter confirming the dispute. Medlock Decl. ¶ 19.

Defendants suggest that the event that gave rise to the dispute occurred on

6

February 6, 2020. *Supra* at 5. But, as Defendants' declaration makes clear, by February 6 the parties were conferring with one another via email to better understand their respective positions. Shinners Decl. ¶¶ 7-8. However, "ongoing meet and confer efforts . . . do not extend the [30-day] deadline." Chambers R. § VIII(B); *see also Bell N. Res., LLC v. Huawei Device (Dongguan) Co.*, 2019 U.S. Dist. LEXIS 147744, at *8 (S.D. Cal. 2019) ("Allowing the deadline to be delayed based upon meet and confer efforts . . . would undermine, if not eliminate, the goal of timely discovery.").

Finally, Defendants assert that their failure to comply with this Court's rules should be forgiven because either (a) Plaintiffs did not inform them of when the 30-day deadline would run, or (b) Defendants had other litigation obligations. *Supra* at 5 & 5, n.2. Neither argument holds water. It is not Plaintiffs' duty to keep Defendants apprised of Defendants' litigation deadlines. And this Court has previously warned Defendants that compliance with this Court's rules is not optional. *See* Dkt. 250 at 4. As a result, Defendants' motion is untimely and that is where this Court's analysis should end.

## II. DELIBERATIVE PROCESS PRIVILEGE CLAIMS AT ISSUE.

*Defendants' Introduction***:** The material at issue is protected by the deliberative process privilege because it recounts or reflects "advisory opinions, recommendations, and deliberations comprising part of the process by which government decisions and policies are formulated." *Oceana Inc. v. Ross*, 2018 WL 5276297, at *2 (C.D. Cal. Aug. 20, 2018) (citing *FTC v. Warner Comm'ns, Inc.* 742 F.2d 1156, 1161 (9th Cir. 1984). The material is (1) predecisional, in that it predates the corresponding decisions, *California Native Plant Society v. U.S. E.P.A.*, 251 F.R.D. 408, 411 (N.D. Cal. 2008); and (2) deliberative, as it "would expose an agency's decisionmaking process in such a way to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its function." *Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002).

The deliberative process privilege should not give way here. Defendants have not waived the privilege, as they have not previously disclosed the privileged communications at issue, nor have they relied on them or similar predecisional deliberations in defense of their case. At issue here is the objective validity of the government's metering or "queue management" practices, not its "intent" or "misconduct," or even the decisionmaking process itself. It is true that Judge Bashant has stated that the validity of the government's justification for metering—operational capacity constraints in light of CBP's multiple statutory mission sets—is at issue. However, the validity of this justification may (and must) be examined on its merits by evaluating the facts underlying those capacity constraints, which Defendants have produced in discovery. And even if the decisionmaking process were at issue here, that does not mean the privilege is inapplicable to all deliberations about all policy decisions; the privilege only yields if Plaintiffs' need for the materials overrides the interest in non-disclosure. *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1020-21 (E.D. Cal. 2010); *Vietnam Veterans of Am. v. C.I.A.*, 2011 WL 4635139, at *10 (N.D. Cal. Oct. 5, 2011) ("[I]ntent is properly considered as a factor in the substantial need analysis"). None of the deliberative material demonstrates pretext or undermines the government's defense that CBP's ability to process undocumented aliens is limited by finite resources and its need to focus on other statutory mission sets. Plaintiffs thus do not have sufficient need for the privileged content to override Defendants' interest in protecting internal deliberations. And the protective order—even the Attorneys' Eyes Only designation—cannot fully protect against the harms of disclosure of government decisionmaking processes. *See* Owen Decl. ¶ 16. Although the deliberations are irrelevant to the merits, Plaintiffs' counsel attempt to impute negative meaning to them and attached them to their briefing, which may result in their public release if not redacted for privilege. This will inevitably chill officials' frank and open communication, compromising future decisionmaking. *See* Owen Decl. ¶¶ 7, 9, 14, 15.

**A. Document 1: "Re: Haitian Migrants"**

**Defendants' position:** Defendants assert the privilege over a small portion of this document, in which Kevin McAleenan, then CBP's Deputy Commissioner, recounts ongoing executive branch decisionmaking, including his impression of decisionmakers' assessments of the disadvantages of a potential course of action. Doc. 1; Owen Decl. ¶ 8. It is clear from the face of the email that he is relaying positions expressed by various decisionmakers █████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████ These predecisional evaluations are exactly the "give-and-take" of the then-ongoing policymaking process that the privilege protects. *See Nat'l Wildlife Fed'n v. U.S. Forest Serv.,* 861 F.2d 1114, 1117 (9th Cir. 1988) (the privilege is to "maintain[] the confidentiality of the give-and-take that occurs among agency members in the formulation of policy").

Plaintiffs claim that the privilege should not apply or that Defendants have waived it as to this communication. They argue that this email relates to "asylum seekers who were presenting themselves at the San Ysidro port of entry" and evidences a desire by CBP leadership ███████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████
And even if Mr. McAleenan were referencing asylum-seekers, nothing in the redacted statements in any way demonstrates that operational capacity concerns are

false. In any event, individual officials' viewpoints are irrelevant to this case. *In re Subpoena Duces Tecum*, 156 F.3d 1279, 1279-80 (D.C. Cir. 1998) ("[T]he actual subjective motivation of agency decisionmakers is immaterial as a matter of law").

**Plaintiffs' position:** Defendants' proposed clawback is overbroad because it seeks to withhold documents that have nothing to do with the deliberative process. To be protected by the deliberative process privilege, a document must be "both predecisional and deliberative." *Perez v. United States*, 2016 U.S. Dist. LEXIS 15887, at *6 (S.D. Cal. 2016). A predecisional document is one that was "prepared in order to assist an agency decisionmaker in arriving at his [or her] decision" and may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Assembly of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992). A document is deliberative if it is "actually related to the process by which policies are formulated." *Nat'l Wildlife Fed'n v. U.S. Forestry Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988). Because the deliberative process privilege is "so dependent upon the individual document and role it plays in the administrative process," the government must "establish what deliberative process is involved, and the role played by the documents in issue in the course of that process." *Elec. Frontier Found. v. CIA*, 2013 WL 5443048, at *12 (N.D. Cal. 2013).

This email chain discusses the personal views of Kevin McAleenan and Mark Morgan about asylum seekers who were presenting themselves at the San Ysidro port of entry in 2016. It is not predecisional or deliberative. Defendants merely claim that the email *might* have been predecisional because senior CBP officials *sometimes* analyze past policy choices when making new decisions. Owen Decl. ¶ 9. Defendants have not explained what policy decision was at issue or the role that this document played in the decision-making process. It is not privileged. *See Jones v. Murphy*, 256 F.R.D. 510, 519 (D. Md. 2008).

**B. Documents 2-6: "Re: C1 Migrant Processing Direction"**

**Defendants' position:** This set of emails discusses and evaluates a proposed course of action that was never adopted concerning how to process undocumented aliens at the San Ysidro Port of Entry. Docs. 2-6. The redacted content is predecisional and deliberative. Owen Decl. ¶ 10. Specific proposals that were considered, but not adopted, constitute non-final opinions or recommendations that do not reflect the final agency decision and thus constitute deliberative material. *See id.* ¶ 14; *Freedom of the Press Found. v. DOJ*, 241 F. Supp. 3d 986, 1000 (N.D. Cal. 2017).

Plaintiffs argue that the privilege does not, or should not, cover this decisionmaking process, because it involves a proposal ███████████████████████████████████████████████████████████████ Yet the question in this case is whether "agency action" may be upheld "on the basis articulated by the agency," *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 50 (1983), not whether other courses of action were feasible or even optimal. Indeed, the need for agency officials to feel comfortable to propose courses of action, even if ultimately rejected, is precisely why predecisional, deliberative documents are protected from disclosure. *See Dept. of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001). Finally, Plaintiffs cannot show a need for the documents. Defendants have produced information about the reasons for metering that is sufficient to evaluate Defendants' capacity justification and whether it is pretextual; there is no need to delve into predecisional deliberations about every policy option relating to processing aliens at ports of entry. *See* Owen Decl. ¶¶ 7, 14.

**Plaintiffs' position.** Defendants' argument fails for two reasons. ***First***, Defendants ignore the fact that "the privilege may be inapplicable" in a case "where the [Government's] decision-making process is itself at issue." *Greenpeace Nat'l Marine Fisheries Serv.*, 198 F.R.D. 540, 543 (W.D. Wash. 2000). In this case, Defendants' deliberations concerning the Turnback Policy, including its metering policy, are directly at issue. As the Court explained in its motion to dismiss opinion, a

key issue in this case is whether Defendants' Turnback Policy is the result of "legitimate factors that prevent CBP officers from immediately discharging the mandatory duties set forth in 8 U.S.C. § 1158(a)(1) and 8 U.S.C. § 1225," or whether those "asserted concerns over capacity are merely a pretext to avoid discharging the duties set forth in 8 U.S.C. § 1158(a)(1) and 8 U.S.C. § 1225 and deter asylum seekers from seeking asylum in the United States." Dkt. 280 at 60. These documents go directly to the Defendants' intent in implementing the Turnback Policy. In the documents, senior officials expressed concern that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"[3] Doc. 1 at 116, stated that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Doc. 7 at 358, and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Doc. 2 at 473; Doc. 3 at 289; Doc. 4 at 901-96; Doc. 5 at 469; Doc. 6 at 247. Because "the deliberative process privilege does not apply in actions where the government's decision making is central to the plaintiff's case," the privilege does not apply here. *Thomas*, 715 F. Supp. 2d at 1020.[4]

---

[3] Defendants claim that this statement had nothing to do with U.S. asylum policy. That is not correct. As Plaintiffs discussed at length in their class certification motion, Mr. McAleenan made these statements at a time that an increased number of Haitian immigrants were presenting themselves for inspection at the San Ysidro port of entry in order to seek asylum in the United States. *See* Dkt. 389-1 at 7-9.

[4] Defendants' citation to *In re Subpoena Duces Tecum*, 156 F.3d 1279 (D.C. Cir. 1998) is misleading. The full sentence from the opinion reads: "That is because the actual subjective motivation of agency decisionmakers is immaterial as a matter of law – *unless there is a showing of bad faith or improper behavior*." *Id.* at 1279-80 (omitted language emphasized). That is precisely the issue here. Defendants turned back asylum seekers and then covered their conduct up with a bogus excuse about the capacity of ports of entry. This case is not about the "optimal" means of processing asylum seekers. Plaintiffs are arguing that Defendants violated the law and their rationale for their illegal conduct is a lie.

***Second***, Defendants' deliberative process privilege argument fails because Defendants cannot "use the [deliberative process] privilege as both a sword and a shield." *Pac. Gas. & Elec. Co. v. Lynch*, 2002 U.S. Dist. LEXIS 28773, at *10 (N.D. Cal. 2002). Defendants have permitted deponents from their agencies to testify regarding the motivation for metering. *See, e.g.*, Ex. A at 68:5-8 ("Q. Okay. It's your position, isn't it, sir, that the metering policy was motivated by capacity constraints at ports of entry on the Mexico border? A. In 2016 in San Ysidro. Yes."). After offering this testimony, Defendants are now attempting to claw back documents that, at the very least, call that testimony into serious question. As noted above, the documents show that CBP leadership ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬" *Supra* at 12. Defendants should not be allowed to selectively invoke the deliberative process privilege in order to exclude documents that cast doubt of their self-serving testimony concerning the rationale for the metering policy.

Defendants argue that "the validity of this justification [must] be examined on its merits by evaluating the facts underlying those capacity constraints." *Supra* at 8. But that ignores the discovery record. A whistleblower has testified that the "capacity constraints" Defendants reference are "a lie" that was "obvious to everyone that was implementing [the] policy." Ex. B at 99:25-101:6. Plaintiffs' expert analyzed contemporaneous statistics kept by CBP concerning the capacity of ports of entry and determined that the vast majority of the ports of entry operated well below 100% capacity. Ex. C at Table 4. Defendants responded by arguing that these documents do not reflect the actual capacities of ports of entry and attempting to minimize the testimony of the whistleblower. *See* Dkt. 405 at 25-26, 27 n.7. Because Defendants are denying the relevance of their own statistics and the testimony of a CBP officer who saw first-hand how the Turnback Policy worked, Defendants

13

should not be allowed to claw back evidence that confirms that Defendants' capacity justification was a pretext and that CBP's real desire was ███████████ ███████████ Doc. 1 at 116.

### C. Documents 7-9: "Point of Entry Briefing"

**Defendants' position.** These three email chains discuss and evaluate two potential courses of action with respect to metering practices. *See* Docs. 7-9; Owen Decl. ¶¶ 4-7. The emails were generated as a result of a request for a meeting to discuss potential changes to CBP's queue management policies and practices with the DHS Deputy Secretary. *See id.* ¶¶ 4, 7. Plaintiffs make similar arguments about why the deliberative process privilege should not cover this document; those arguments should be rejected for the same reasons articulated above. Plaintiffs additionally maintain that parts of Document 7 cast doubt on testimony regarding the motivation to engage in metering in 2016. This is incorrect, as the communication does not expressly or impliedly conflict with Defendants' testimony regarding the circumstances giving rise to metering practices. Nor does it conflict with the existing, non-privileged evidence regarding the justifications for metering/queue management. Plaintiffs thus show no need for this material.

**Plaintiffs' position.** There is no indication that these emails assisted a decision maker in reaching a policy decision. These emails discuss what would be on the agenda for a meeting that ███████████████████████████ ███████ Doc. 7 at 358. Indeed, Defendants do not claim that these documents were considered by CBP decision makers. Owen Decl. ¶ 7. Because these emails were not related to a governmental decision-making process, they are not predecisional or deliberative. *See Jones*, 256 F.R.D. at 519 (memoranda "absolutely [did] not fall" within the privilege because "[t]hey [were] not antecedent to [a] particular decision, nor part of a particular policy process.").

Dated: April 2, 2020

                              JOSEPH H. HUNT
                              Assistant Attorney General

|   |   |
|---|---|
| 1 | Civil Division |
| 2 | |
| 3 | WILLIAM C. PEACHEY<br>Director |
| 4 | |
| 5 | SAMUEL P. GO<br>Assistant Director |
| 6 | |
| 7 | */s/ Katherine J. Shinners*<br>KATHERINE J. SHINNERS |
| 8 | Senior Litigation Counsel<br>United States Department of Justice |
| 9 | Civil Division |
| 10 | Office of Immigration Litigation<br>P.O. Box 868, Ben Franklin Station |
| 11 | Washington, D.C. 20044 |
| 12 | Tel: (202) 598-8259 | Fax: (202) 305-7000<br>katherine.j.shinners@usdoj.gov |
| 13 | |
| 14 | ALEXANDER J. HALASKA<br>ARI NAZAROV |
| 15 | DHRUMAN Y. SAMPAT<br>Trial Attorneys |
| 16 | |
| 17 | *Counsel for Defendants* |
| 18 | |
| 19 | MAYER BROWN LLP |
| 20 |     Matthew H. Marmolejo<br>    Ori Lev |
| 21 |     Stephen M. Medlock |
| 22 | SOUTHERN POVERTY LAW CENTER |
| 23 |     Melissa Crow<br>    Sarah Rich |
| 24 |     Rebecca Cassler |
| 25 | CENTER FOR CONSTITUTIONAL |
| 26 | RIGHTS<br>    Baher Azmy |
| 27 |     Ghita Schwarz |
| 28 | |

Angelo Guisado

AMERICAN IMMIGRATION COUNCIL
Karolina Walters

By: */s/ Stephen M. Medlock*
Stephen M. Medlock

*Attorneys for Plaintiffs*