MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:  +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, | Case No.: 17-cv-02366-BAS-KSC |
| Plaintiffs, | |
| v. | **EX. A TO JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE CONCERNING DEFENDANTS' JANUARY 30 CLAWBACK NOTICE** |
| Chad F. Wolf,[1] *et al.*, | |
| Defendants. | |

---

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.561

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

----------------------------------x

AL OTRO LADO, INC., et al.,        :

          Plaintiffs,           : Case No.:

   vs.                             : 17-cv-02366-BAS-KSC

KEVIN K. MCALEENAN, et al.,        :

          Defendants.           :

----------------------------------x


DEPOSITION MARKED CONFIDENTIAL

DEPOSITION OF TODD OWEN

Washington, D.C.

Friday, December 13, 2019

9:40 a.m.


Job No.: 529549

Pages: 1 - 332

Reported by: Elizabeth Mingione, RPR



Page 67

1    Q.   Prior to its issuance?

2    A.   Prior to it issuance, I don't recall.

3    Q.   You cite in this memorandum as part of your

4 official duties as the EAC at CBP's Office of Field

5 Operations; is that correct?

6    A.   Yes.

7    Q.   And you would have been knowledgeable about

8 the contents of this memorandum at the time you signed

9 it; is that right?

10   A.   Yes.

11   Q.   And you signed it on or about the date list

12 on the memorandum, April 27, 2018; is that right?

13   A.   Correct. On or about the date.

14   Q.   Correct.

15   A.   Because when the memos come to me, they

16 don't have a date on them yet.  And then when the

17 executive secretaries issue it, within the next day or

18 two that's when they date stamp it.

19   Q.   Okay.  And from reviewing this memorandum,

20 other than the fact there's been a few redactions on

21 it, to your knowledge is this memorandum accurate and

22 correct?



Page 68

1      A.     Yes.

2      Q.     And if I refer to this memorandum as the
3   metering policy, you'll understand that?

4      A.     Metering guidance.  Yes, sir.

5      Q.     Okay.  It's your position, isn't it, sir,
6   that the metering policy was motivated by capacity
7   constraints at ports of entry on the Mexico border?

8      A.     In 2016 in San Ysidro.  Yes.

9      Q.     Any other ports of entry where there were
10  capacity constraints that you believe justified this
11  memorandum?

12     A.     The metering practice started in 2016.  It
13  started in San Ysidro.  As other ports were
14  overwhelmed with the volume of migrants, then we
15  adopted the same practice across the southwest border
16  as needed.  That was throughout 2016.

17            In 2017, the migrant numbers subsided
18  significantly.  It was less necessary to implement
19  metering throughout 2017.  In 2018, the migrants
20  numbers again started to increase, starting to reach a
21  high point in the spring of 2018.  That was what drove
22  this message, this guidance across our southwest



Page 69

1   border.

2       Q.    At the time this memorandum was issued,
3   what were the capacity -- what ports of entry were
4   capacity constrained that you felt justified the
5   issuance of this metering guidance?

6       A.    I don't recall specifically what ports, but
7   our primary gateway ports in the southwest border
8   began to experience capacity issues again throughout
9   2016.  Those would be the major ports, the San
10  Ysidros, the Calexico, Nogales, El Paso, Laredo,
11  Hidalgo off and on, Brownsville off and on.

12      Q.    And it's your assumption that those were
13  the ports that were capacity constrained at that time;
14  is that right?

15      A.    At that time, but again we have 26 ports
16  along the southwest border, 46 actual crossings.  A
17  port of entry may have multiple crossings.  El Paso
18  has four crossings.  At some point because of the
19  migrant situation which ebbs and flows, one of those
20  bridges might have capacity while the other three do
21  not.  It really is a very fluid situation at the ports
22  from port to port, day to day.

