MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:  +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, | Case No.: 17-cv-02366-BAS-KSC |
| Plaintiffs, | |
| v. | **EX. B TO JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE CONCERNING DEFENDANTS' JANUARY 30 CLAWBACK NOTICE** |
| Chad F. Wolf,[1] *et al.*, | |
| Defendants. | |

---

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.561

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
-------------------------------
AL OTRO LADO, INC., et al.,

    Plaintiffs,

v.                                Case No.
                                  17-cv-02366-BAS-KSC
KEVIN K. McALEENAN, et al.,

    Defendants.
-------------------------------

    Deposition Taken of ███████████, on Thursday, November 21, 2019, at 9:30 a.m., held at the offices of Mayer Brown, 1999 K Street, N.W., Washington, D.C. 20006, before Goldy Gold, a Registered Professional Reporter and a Notary Public within and for District of Columbia.



Page 99

```
 1    Tecate, who have training that enables them to
 2    process asylum seekers, correct?
 3         A.    Correct.
 4         Q.    And do you know -- do you know of
 5    instances where asylum seekers have actually been
 6    processed at Tecate?
 7         A.    Yes.
 8         Q.    And do you know what the actual capacity
 9    of Tecate is on a daily basis to process asylum
10    seekers?
11         A.    No.
12         Q.    Is it safe to say that it is higher than
13    zero?
14         A.    Yes.
15         Q.    And in most days that you were posted to
16    the limit line, the Tecate port was processing zero
17    asylum seekers per day, correct?
18         A.    Yes.
19         Q.    So it's just simply not true that when
20    officers told asylum seekers that the port was
21    currently at capacity and turning them back, that the
22    port was actually -- that Tecate was actually at
23    capacity, right?
24         A.    Correct.
25         Q.    So you were instructed to lie to people
```



Page 100

1   when turning them back; is that right?
2       A.   We were instructed, yes.
3       Q.   How did it make you feel that your
4   management was telling you to lie to people in order
5   to turn them back from U.S. soil to Mexican soil?
6       A.   I didn't do it.  I would have the
7   manager come down and they would have to do it.
8       Q.   So the management would lie?
9       A.   Yes.
10      Q.   They would lie for you, essentially; is
11  that right?
12      A.   Well, I wouldn't talk to them.  First
13  off, I don't -- a lot of time I don't speak the
14  language --
15      Q.   I see.
16      A.   -- enough to tell them all that.
17      Q.   But when the supervisor came down, they
18  would give this capacity excuse, correct?
19      A.   Not all the time.
20      Q.   So sometimes they would, though?
21      A.   Yes.
22      Q.   And when they said the port was at
23  capacity, you knew that was a lie, right?
24      A.   Yes.
25      Q.   And it would have been obvious to those



Page 101

1  supervisors that it was a lie as well, correct?
2       A.    Correct.
3       Q.    In fact, it was obvious to everybody who
4  was implementing this policy at Tecate that the
5  capacity excuse was a lie, right?
6       A.    Correct.
7             MR. MEDLOCK:  We'll mark the next
8       exhibit as Exhibit 4.
9             [Exhibit 4, a declaration, was marked
10      for identification.]
11 BY MR. MEDLOCK:
12      Q.    Okay, sir.  I put in front of you what
13 we've marked as Exhibit 4 to your deposition.  It's a
14 multipage declaration from Mariza Marin, whose name
15 I'm hoping I pronounced correctly, that was filed
16 earlier in this litigation.
17            Please take a moment to review it, and
18 then let me know verbally on the record when you've
19 finished doing that.
20      A.    This is going to take a while.  It looks
21 like a lot of it is not my port of entry.
22      Q.    Yes, that's correct.
23            You want me to direct you to the place I
24 would like to talk to you about?
25      A.    Sure.

