1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

AL OTRO LADO, INC. et al.,

                        Plaintiffs,

v.

CHAD F. WOLF, Acting Secretary, U.S.
Department of Homeland Security, in his
official capacity, et al.,

                        Defendants.

Case No.:  17CV2366-BAS(KSC)

**ORDER DENYING DEFENDANTS'
MOTION TO CLAW-BACK
DOCUMENTS [DOC. NO. 437] AND
GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO SEAL [DOC. NO. 435]**

     A Joint Motion for Determination of Discovery Dispute and companion Motion to Seal were filed on April 2, 2020. [Doc. Nos. 435 & 437.] In the discovery motion, defendants seek to claw-back nine documents that were produced during discovery which defendants contend are protected by the deliberative process privilege. [Doc. No. 437.] Defendants also move to seal portions of the discovery motion discussing these documents and Exhibit C. [Doc. No. 435.] Plaintiffs oppose defendants' requests for claw-back and sealing of Exhibit C, but do not oppose the request to seal portions of the discovery motion in which the subject documents are discussed. [Doc. Nos. 435 & 437.] As explained below, the discovery motion is denied with respect to defendants' request

1

1 the subject documents be clawed-back based on their assertion of the deliberative process

2 privilege. The motion to seal is granted in part and denied in part.

3 **DISCUSSION**

4 **A. <u>Timeliness of Discovery Dispute</u>**

5 As a threshold issue, plaintiffs contend defendants failed to timely bring the

6 parties' discovery dispute to the Court's attention, pursuant to the undersigned's

7 Chambers Rules, which require parties inform the Court of their discovery dispute within

8 30 days of the event giving rise to the dispute.  [Doc. No. 437, pp. 7-8 of 17[1].]  The issue

9 boils down to when the duty arose to inform the Court about defendants' request to claw-

10 back the subject documents. Both sides agree that on January 30, 2020, defendants made

11 their claw-back request to plaintiff in a letter identifying 20 documents or portions

12 thereof, including the nine subject documents, for which various privileges were asserted,

13 including attorney-client, work-product, and deliberative process. [Doc. 437-1, para. 4;

14 437-3, para. 13.] Plaintiffs responded the next day by email, stating, in relevant part

15 "[f]or the reasons discussed in the letter that I sent you yesterday, the Government's

16 deliberative process and law enforcement privilege claims are unsupported. Accordingly,

17 I am writing to inform you that pursuant to Section IV(G)(5)(b) of the Court's ESI Order

18 (Dkt. 277), Plaintiffs will be challenging the privilege claim with respect to each of these

19 documents." [*Id.*, para. 6; *Id.*, para. 14.] Defense counsel responded on February 4, 2020,

20 "[w]e are a little confused about the parameters of Plaintiffs' challenge. The clawback

21 letter… includes assertions of privileges other than deliberative process and law

22 enforcement privilege. … Can you let us know by February 6 precisely which claims of

23 privilege Plaintiffs are challenging and the reason for the challenge, to aid in a productive

24 conference." [*Id.*, para. 7; *Id.*, para 15.] On February 6, 2020, plaintiffs clarified "[w]e

25 challenge all of the invocations of the law enforcement privilege in the chart attached to

26

27

28 [1] All references to page numbers in Court filings, refer to the page numbers assigned by the Court's ECF system appearing at the top of each page, as oppose to page numbers assigned by the parties.

17CV2366-BAS(KSC)

your email for the previously-stated reasons. We also challenge the invocations of the law enforcement privilege with respect to email addresses of current and former employees that could be produced on an outside-counsel-only basis." [*Id.*, para. 8; *Id.*, para. 16.] Defendants requested to meet and confer regarding their claw-back request on February 27, 2020, at which point they represented they interpreted the Court's Chambers Rules to mean defendants had from February 6 to March 9, 2020, to advise the Court of the dispute. [*Id.*, para. 10; *Id.*, para. 17.] Counsel met and conferred on March 5 and contacted the Court's chambers regarding their dispute on March 9, 2020. [Doc. 437-3, para. 18 & 19.]

By plaintiffs' assessment, the parties' dispute regarding claw-back of the subject documents arose on January 31, 2020, when plaintiffs responded to the claw-back request indicating they believe defendants' deliberative process and law enforcement privilege claims are unsupported. Under this analysis, defendants missed the deadline to bring the matter to the Court's attention by eight days. Defendants contend the triggering event did not occur until plaintiffs clarified their position by email on February 6, and, therefore, the discovery motion is timely.

The purpose of the requirement that counsel contact the Court within 30 days of a discovery dispute arising is to promote diligence by the parties with the goal of ensuring discovery disputes are resolved in a timely manner, whether by agreement of the parties or through judicial intervention.  Here, there is no indication that counsel for defendants did not act diligently with respect to bringing this issue to the Court's attention. Defendants promptly requested clarification regarding the scope of plaintiffs' objection to the claw-back request and requested the parties meet and confer thereafter. While defendants did not request to meet and confer until 21 days after receipt of the clarification, they explain they did not try to meet and confer earlier because they believed their 30 day deadline expired on March 9, and they had other litigation demands in this case in February, including defendants' opposition to plaintiffs' motion for class certification, a motion to strike anonymous and pseudonymous declarations, a reply brief

1  and motion to seal in the Ninth Circuit appeal, and the preparation of privilege logs.

2  [Doc. Nos. 437, p. 6, fn. 2; 437-1, para. 9.] Given the lack of clarity as to when the

3  parties' dispute regarding claw-back of the subject documents arose, compounded with

4  the litigation demands on counsel at that time, and the obvious efforts by defense counsel

5  to diligently advance the parties' dispute, the Court will not deny defendants' efforts to

6  claw-back the subject documents based on untimeliness and, instead, turns to the merits

7  of the parties' dispute.

8  **B. Deliberative Process Privilege**

9  The deliberative process privilege is a qualified privilege that applies to pre-

10  decisional, non-factual, non-public communications occurring within federal agencies.

11  *See United States v. Irwin*, 127 F.R.D. 169, 172 (C.D. Cal. 1989), *citing generally In re*

12  *Franklin Natl Bank Sec. Litig.*, 478 F. Supp. 577, 580-81 (E.D.N.Y. 1979). It shields

13  from protection such communications relating to matters of law or policy, with the

14  purpose of protecting the quality of governmental decision-making by maintaining the

15  confidentiality of advisory opinions, recommendations, and deliberations that

16  compromise part of the process by which government formulates law or policy. *See Natl*

17  *Wildlife Fed'n v. U.S. Forestry Serv.*, 861 F.2d 1114, 1116-17 (9th Cir. 1988). The

18  accepted rationale is that frank and open discussions within governmental agencies would

19  be "chilled" if the personal opinions and ideas of government personnel involved in the

20  decision-making process were subject to public scrutiny. *Id.*

21  The initial burden of establishing the applicability of the privilege is on the

22  government. *Redland Soccer Club v. Dept. of Army of the U.S.*, 55 F.3d 827, 854 (3rd Cir.

23  1995); *Mobil Oil Corp. v. Dept. of Energy*, 520 F.Supp. 414, 416 (N.D.N.Y.1981). A

24  predecisional document is one that was "prepared in order to assist an agency

25  decisionmaker in arriving at his [or her] decision" and may include "recommendations,

26  draft documents, proposals, suggestions, and other subjective documents which reflect

27  the personal opinions of the writer rather than the policy of the agency." *Assembly of Cal.*

28  *v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992).  A document is

17CV2366-BAS(KSC)

deliberative if it is "actually related to the process by which policies are formulated." *Nat'l Wildlife Fed'n*, 861 F.2d at 1117.  Because the deliberative process privilege is "so dependent upon the individual document and role it plays in the administrative process," the government must "establish what deliberative process is involved, and the role played by the documents in issue in the course of that process." *Elec. Frontier Found.v. CIA*, 2013 WL 5443048, at *12 (N.D. Cal. 2013). Blanket assertions of the privilege are insufficient. *Exxon Corp*., 91 F.R.D. at 43. Rather, the agency must provide "precise and certain" reasons for preserving the confidentiality of designated material. *Mobil Oil*, 520 F.Supp. at 416.

Even where the privilege is properly asserted, it is not absolute. The deliberative process privilege is a qualified privilege, to be applied as narrowly as possible, consistent with efficient administrative operations. *See Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980).  The court must determine whether the need for the evidence overrides the government's interest in non-disclosure. *See F.T.C. v. Warner Comm. Inc*., 742 F.2d 1156, 1161 (9th Cir.1984). The policies supporting the privilege must be balanced by strong competing interests, foremost of which is the interest of the litigants, and ultimately of society, in accurate judicial fact finding.  *Franklin Natl Bank Sec. Litig.*, 478 F. Supp. at 582.  For example, the privilege may be inapplicable where the agency's decision-making process is itself at issue. *See Mr. and Mrs. "B" v. Board of Ed. of Syosset Cent. Sch. Dist.*, 35 F.Supp.2d 224, 230 (E.D.N.Y.1998); *Burka v. N.Y.C. Transit Authority*, 110 F.R.D. 660, 667 (S.D.N.Y.1986).  Keeping these principals in mind, the Court has reviewed *in camera* each of the subject documents.

### Document No. 1: "Re: Haitian Migrants"

The portion of this email chain that is claimed to be protected by the deliberative process privilege involves a communication from then-Deputy CBP Commissioner Kevin McAleenan in which he expresses his opinion regarding an existing policy. Defendants explain that senior CBP officials sometimes analyze past policy decisions when making new ones. [Doc. 435-2, para. 9.] Defendants have not shown the content of his remark to

1    be either pre-decisional, meaning that it was made in order to assist an agency

2    decisionmaker in arriving at his or her decision. Nor have they explained what policy

3    decision was at issue or the role the communication played in the decision-making

4    process. Thus, it is not privileged.

5           ***Documents No. 2-6: "Re: C1 Migrant Processing Direction"***

6          This set of documents includes email chains involving Kevin McAleenan and a

7    memorandum in which the substance of a non-final proposal regarding changes to

8    processing undocumented aliens at the San Ysidro Port of Entry is discussed and

9    recommendations are made. [Doc. No. 435-2, paras. 10-12.] These recommendations

10   were considered by senior decision-makers within CBP and DHS, but the proposal was

11   not implemented. [*Id.*] Because these communications are pre-decisional and deliberative

12   in nature, the Court must determine whether plaintiffs' need for the evidence overrides

13   the government's interest in non-disclosure. *See F.T.C.*, 742 F.2d at 1161.

14        A key issue in this case is the validity of defendants' stated justification for

15   metering – operational capacity constraints. [Doc. No. 280, p. 60.]  The question

16   presented is whether defendants' Turnback Policy is the result of "legitimate factors that

17   prevent CBP officers from immediately discharging the mandatory duties set forth in 8

18   U.S.C. 1158(a)(1) and 8 U.S.C. 1225," or whether those "asserted concerns over capacity

19   are merely a pretext to avoid discharging the duties set forth in 8 U.S.C. 1158 (a)(1) and 8

20   U.S.C. 1225 and deter asylum seekers from seeking asylum in the U.S." [*Id.*]  On this

21   point, defendants have offered testimony in this case that their motivation for metering at

22   the southern borders is due to capacity constraints at ports of entry, including specifically

23   the San Ysidro Port of Entry. [Doc. No. 437-4, p. 5.] The memorandum and portions of

24   the email chains for which defendants assert the deliberative process privilege relate

25   directly to defendants' motivation in implementing the Turnback Policy. As such,

26   plaintiffs' need for unredacted copies of Documents 2 through 6 outweighs defendants'

27   interest in non-disclosure, particularly where the information is subject to a Protective

28   Order restricting the scope of its disclosure, as is the case here.

17CV2366-BAS(KSC)

*Documents 7-9: "Point of Entry Briefing"*

These documents consist of three email strings between CBP and DHS personnel regarding potential future agency actions and potential changes to agency policy. [Doc. No. 435-2, paras. 4-7.] The emails were generated as a result of a request for a meeting to discuss potential changes to CBP's queue management policies and practices with the DHS Deputy Secretary, however, there is no indication the substance of these emails was considered by CBP decisionmakers. [*Id.*] Additionally, defendants have not shown the communications were made in order to assist an agency decisionmaker in arriving at his or her decision or otherwise explained what role the communications played in the decision-making process. Thus, these email strings are not privileged.

## C. Motion to Seal

Defendants also move to seal portions of the discovery motion specifically discussing the documents that are at issue, as well as the sealing of the discovery motion's Exhibit C. [Doc. No. 435.]

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & Cty. of Honolulu,* 447 F.3d 1172, 1178 (9th Cir. 2006) (*citing Foltz v. State Farm Mut. Auto Ins. Co.,* 331 F.3d 1122, 1135 (9th Cir. 2003)). "The presumption of access is 'based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (*quoting United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). A party seeking to seal a judicial record bears the burden of overcoming the strong presumption of access. *Foltz*, 331 F.3d at 1135.

The standard applicable to a motion to seal turns on whether the sealed materials are submitted in conjunction with a dispositive or non-dispositive motion. Whether a motion is "dispositive" turns on whether the documents to be sealed relate to a motion that is "more than tangentially related to the merits of the case." *Ctr. for Auto Safety*, 809 F.3d at 1102. When the underlying motion is more than tangentially related to the merits, the "compelling reasons" standard applies. *Id.* at 1096–98. Parties seeking to maintain confidentiality of documents attached to non-dispositive motions, such and the discovery motion pending here, must make a "particularized showing" of "good cause." *Kamakana*, 447 F.3d at 1180 (*quoting Foltz*, 331 F.3d at 1137).

### *Request to Seal Portions of the Discovery Motion*

Defendants request the Court allow the sealing of portions of the discovery motion that quote or address the documents at issue on the basis of the deliberative process privilege. [Doc. No. 435, p. 3.] Additionally, they contend the cited portions of these documents contain sensitive law-enforcement and other information that could harm the operations of CBP and other governmental entities if disclosed. [*Id.*, at 3-4; Doc. No. 435-3.]

As discussed, *supra*, Document Nos. 2-6 are deliberative process privileged documents. The Court has denied defendants' claw-back request for these documents because plaintiffs' need for this discovery outweighs the government's interest in nondisclosure. The Court's finding these are privileged documents, however, is good cause to seal the portions of the discovery motion discussing or quoting from these documents. [Doc. No. 436, p. 12, lns. 9-10; p. 13, lns. 10-1; p. 14, lns. 9-11.]

The only documents discussed in the remainder of the discovery motion are Document Nos. 1 and 7. While neither of these documents are protected by the deliberative process privilege, the defendants' representations that these documents contain confidential and sensitive law-enforcement and other information that could harm the operations of CBP and other governmental entities if disclosed provides good cause for the sealing of the portions of the discovery motion discussing these two documents.

17CV2366-BAS(KSC)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Exhibit C – the Leutert Report

Defendants also seek to seal Exhibit C, the Leutert Report, which they contend references and discusses information defendants have designated as confidential and which is the subject of two others motions to seal that are currently pending before District Judge Bashant. [Doc. No. 435, p. 4.]

This document, however, is already available to the public. On February 24, 2020, the Ninth Circuit denied a motion filed by defendants seeking to re-seal certain exhibits attached to the Opposition to Motion for Stay Pending Appeal that were inadvertently left unsealed after the 21-day provisional seal expired.  *See Al Otro Lado, et al. v. Chad F. Wolf*, et al., Case No. 19-56417 (9th Cir. Dec. 5, 2019), Doc. No. 82.  The Leutert Report was one of the documents that was the subject of the Ninth Circuit's decision. Defendants now argue it should be sealed in connection with the discovery motion because "any additional publication of this document may cause additional harm to Defendants' operations by making the report more available to potential bad actors." [Doc. No. 435, p. 4.]  The Court disagrees  and  denies  defendants' motion to seal Exhibit C for the same reasons stated by the Ninth Circuit regarding the Motion to Re-Seal.  The information is publicly available on the Ninth  Circuit docket, which generally moots  any  later  attempt to seal the documents from public view.  *See Kamakana,* 447 F.3d at 1184 (affirming an unsealing order because the information at issue was "already publicly available"); *Constand v. Cosby*, 833 F.3d  405,  410  (3d  Cir.  2016)  ("[W]e are  similarly  without  power  to affect  the dissemination of the unsealed documents' contents in any meaningful way" where "[f]ive  prominent  news  organizations published  articles  about  the  documents."); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) ("[H]owever confidential  it  may  have  been beforehand,  subsequent  to  publication it  [i]s  confidential no longer. . . . [A court] simply do[es] not have the power . . . to make what has thus become public private again.").

/ /

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

Based on the foregoing, defendants' motion to claw-back the nine subject documents is DENIED. Defendants' motion to seal is GRANTED IN PART and DENIED IN PART. The Clerk of the Court is directed to file the Joint Motion for Determination of Discovery Dispute Concerning Defendants' January 30 Clawback Notice (Doc. No. 436, but not Doc. No. 436-1) under seal. Defendants shall resubmit Exhibit C to the Joint Motion (the Leutert Report) for filing.

IT IS SO ORDERED.

Dated:  April 30, 2020

Hon. Karen S. Crawford
United States Magistrate Judge

17CV2366-BAS(KSC)