JOSEPH H. HUNT
Assistant Attorney General, Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
ARI NAZAROV (CT 414491)
DHRUMAN SAMPAT (NJ 270892018)
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorneys
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | Hon. Cynthia A. Bashant |
| v. | **EXHIBIT 1** |
| Chad F. WOLF, Acting Secretary of Homeland Security, in his official capacity, *et al.*, | |
| *Defendants* | |

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>Chad WOLF, Acting Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*,<br><br>*Defendants*. | Case No. 3:17-cv-02366-BAS-KSC |

**DECLARATION OF MARIZA MARIN**

I, Mariza Marin, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby declare as follows relating to the above-captioned matter.

1. I am the Assistant Director of Field Operations, Border Security, San Diego, for the Office of Field Operations (OFO), U.S. Customs and Border Protection (CBP). I have held this position since September of 2019.

2. In this capacity, I oversee the planning, directing, and timely execution of Border Security programs and other law enforcement activities in the land, air, and sea environments. I also provide managerial oversight in policy guidance, assure program implementation and compliance, and evaluate program effectiveness throughout CBP's San Diego Field Office. CBP's San Diego Field Office includes five land ports of entry, including the busiest land port of entry in the western hemisphere; an international airport; a seaport; and multiple general aviation centers. I serve as the fourth-line supervisor for the Admissibility Enforcement Units and Criminal Enforcement Units within the SDFO. Further, I oversee SDFO's International Liaison Unit (ILU), a specialty unit comprised of select OFO managers who perform ancillary duties coordinating with foreign governmental officials.

3. Prior to my current position, I served as Assistant Port Director for Passenger Operations at the Otay Mesa POE, as Supervisory CBP Officer, Watch Commander, at the San Ysidro POE, as Supervisory CBP Officer, Branch Chief, at the San Ysidro POE, and as a first-line

Supervisory CBP Officer at the San Ysidro POE since February of 2014. I have been employed by CBP since 2008.

4. The San Ysidro POE is the busiest land border port of entry in the western hemisphere. In fiscal year 2019, the San Ysidro POE processed 21,700,000 northbound pedestrians, 31,200,000 northbound vehicles, and 78,000,000 northbound travelers altogether. The San Ysidro POE's AEU (the AEU) principally processes and holds inadmissible aliens seeking admission to the United States—processing them for expedited removal, placing them in removal proceedings, or taking other actions as appropriate, and providing appropriate treatment for them in CBP's short-term detention facilities until they are turned over to other federal agencies, paroled into the United States, or repatriated to Mexico.

5. The AEU's operations are complex and dynamic. CBP adheres to certain standards for individuals in custody, which state, for instance, that family units with juveniles generally should remain together, and also that male and female adult detainees generally should be separated at all times in hold rooms. But, the AEU has limited, if any, advanced notice of the specific demographics and characteristics of the populations it serves, and has no control over how quickly third-party agencies take custody over detainees. Therefore, the AEU must continually assess and reassess how to distribute its detainees amongst hold rooms in order to ensure they are given appropriate care. This is further complicated by the fact that the AEU also processes inadmissible aliens who are apprehended attempting to run through or surreptitiously enter through the port of entry, and often must hold individuals awaiting criminal prosecution, neither of which can be anticipated in advance.

6. As such, the optimal functioning of both the San Ysidro POE in general and its AEU in particular rely upon CBP's ability to obtain information and intelligence to identify trends in activity, predict future events that may have an operational impact, and strategically plan accordingly. For instance, if CBP obtains information or intelligence indicating a potential migrant incursion at the San Ysidro POE, CBP may take measures to harden the port of entry, such as reallocating staffing and erecting physical barriers, and to ensure, to the extent possible, that the AEU is prepared to intake a sizeable group of inadmissible aliens.

7. Exhibit 1 to Plaintiffs' Opposition to Defendants' Motion to Strike consists of an internal CBP email chain between the Port Director of the San Ysidro POE, the then-Assistant Port Director of Tactical Operations of the San Ysidro POE, the then-Watch Commander of the AEU

and Criminal Enforcement Unit at the San Ysidro POE, and three ILU liaisons. The group discussed using a law enforcement technique that involved engaging CBP officials from a certain unit at the San Ysidro POE to question certain individuals held at the AEU about a specific topic.

8. The information in Exhibit 1 to Plaintiffs' Opposition to Defendants' Motion to Strike should be kept confidential and filed under seal for the following reasons:

  a. Public disclosure of this document would put certain individuals on notice that when they seek to enter the United States, CBP officials from a certain unit may question them about a particular topic. These individuals would then have an incentive to receive coaching on how to answer such questions and/or to fabricate answers to such questions. This would undermine CBP's future ability to utilize this law enforcement technique to develop information about the topic at issue, which could, in turn, adversely impact the mission readiness of the San Ysidro POE and the AEU.

  b. Additionally, public disclosure of this document would put the public at large on notice as to CBP's law enforcement priorities and techniques for gathering information. Even individuals without knowledge as to the specific topic at issue in the document may have knowledge of like or related issues. Just as with individuals who may have knowledge of the particular topic, this wider group of individuals would have an incentive to receive coaching on how to answer such questions and/or to fabricate answers to such questions before presenting themselves for inspection. This would undermine CBP's future ability to utilize this law enforcement technique to develop information about the topic at issue, which could, in turn, adversely impact the mission readiness of the San Ysidro POE and the AEU.

///
///
///
///
///
///
///

3

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed on the 30th day of April, 2020

_____
Mariza Marin
Assistant Director Field Operations, Border Security
San Diego Field Office
Office of Field Operations
U.S. Customs and Border Protection

4