JOSEPH H. HUNT
Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
SAMUEL P. GO
Assistant Director
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
ALEXANDER J. HALASKA (IL 6327002)
ARI NAZAROV (CT 414491)
DHRUMAN Y. SAMPAT (NJ 270892018)
United States Department of Justice
Civil Division
Office of Immigration Litigation – District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4281 | Fax: (202) 305-7000
Trial Attorneys
*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
|        *Plaintiffs*, | Hon. Cynthia A. Bashant |
| v. | **DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR RULE 72(A) OBJECTIONS TO PORTIONS OF THE MAGISTRATE JUDGE'S MAY 1 DISCOVERY ORDER (ECF No. 446)** |
| CHAD F. WOLF, Acting Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*, | |
|        *Defendants* | Hearing Date: June 15, 2020 |
| | **NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

1

# **TABLE OF CONTENTS**

2

3   INTRODUCTION ...................................................................................1

4   RELEVANT BACKGROUND ..............................................................1

5   ARGUMENT ........................................................................................6

6       I.   Standard of Review ..................................................................6

7       II.  Deliberative Process Privilege Issues ......................................7

8           a.   Documents 7-9: "Point of Entry Briefing"........................7

9           b.   Documents 2-6: "Re: C1 Migrant Processing Direction" .....................12

10  CONCLUSION ....................................................................................15

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Advanced Physicians, S.C. v. Connecticut General Life Insurance Co.*,
--- F.Supp.3d ---, 2020 WL 58698 (N.D. Tex. Jan. 3, 2020)..................................6

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Group, Inc.*,
99 F.Supp.3d 1110 (C.D. Cal. 2015) ...................................................................10

*Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*,
410 F.3d 1173 (9th Cir. 2005) ..............................................................................10

*California Native Plant Society v. U.S. E.P.A.*,
251 F.R.D. 408 (N.D. Cal. 2008) ............................................................................8

*California v. Kinder Morgan Energy Partners, L.P.*,
2010 WL 11672491 (S.D. Cal. Dec. 16, 2010) .......................................................7

*Carter v. U.S. Dep't of Commerce*,
307 F.3d 1084 (9th Cir. 2002) ................................................................................8

*CollegeSource, Inc. v. AcademyOne, Inc.*,
2015 WL 4772644 (S.D. Cal. Aug. 12, 2015) .........................................................7

*Dept. of Interior v. Klamath Water Users Protective Ass'n*,
532 U.S. 1 (2001)...................................................................................................14

*Fox News Network, LLC v. U.S. Dep't of Treasury*,
911 F. Supp.2d 261 (S.D.N.Y. 2012) ......................................................................9

*FTC v. Warner Comm'ns, Inc.*,
742 F.2d 1156 (9th Cir. 1984) .................................................................. 8, 10, 13

*In re BofI, Inc. Securities Litigation*,
318 F.R.D. 129 (S.D. Cal. 2016) ............................................................................6

*L.H. v. Schwarzenegger*,
2007 WL 2009807 (E.D. Cal. 2007).............................................................. 7, 12

*Motor Vehicle Mfrs. Ass'n v. State Farm*,
  463 U.S. 29 (1983) ...................................................................... 11, 13

*N.L.R.B. v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) ...................................................................... 8, 14

*Nat'l Wildlife Federation v. U.S. Forest Serv.*,
  861 F.2d 1114 (9th Cir. 1988) ...................................................... 9, 11

*Oceana Inc. v. Ross*,
  2018 WL 5276297 (C.D. Cal. Aug. 20, 2018) ....................................8

*Osband v. Woodford*,
  290 F.3d 1036 (9th Cir. 2002) .........................................................6

*Regents of University of California v. Affymetrix, Inc.*,
  No. 17-cv-01394-H-NLS, 2018 WL 3752752 (S.D. Cal. Aug. 6, 2018) ..............6

*Sierra Club, Inc. v. United States Fish and Wildlife Serv.*,
  925 F.3d 1000 (9th Cir. 2019) ...................................................... 11, 14

*U.S. Equal Opportunity Commission v. Chipotle Mexican Grill, Inc.*,
  2019 WL 3811890 (N.D. Cal. Aug. 1, 2019) .................................. 7, 12

*United States v. Fernandez*,
  231 F.3d 1240 (9th Cir. 2000) .........................................................8

*United States v. Weber Aircraft Corp.*,
  465 U.S. 792 (1984) ......................................................................11

*Vietnam Veterans of Am. v. C.I.A.*,
  2011 WL 4635139 (N.D. Cal. Oct. 5, 2011) .....................................12

iii

# INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 72(a), Defendants respectfully submit their objections to portions of Judge Crawford's Order Denying Defendants' Motion to Claw-Back Documents and Granting in Part and Denying in Part Defendants' Motion to Seal (ECF No. 446) ("May 1 Order"), as they relate to the Documents identified as Documents 2 through 9 in that order.

First, Defendants object to the May 1 Order's conclusion that the deliberative process privilege does not protect discussions about preparation of an analysis to present to ultimate decisionmakers to evaluate potential policy decisions (Documents 7 through 9), because the emails on their face reflect internal deliberations to evaluate potential courses of action with respect to metering practices. Further, although the issue was not reached, the privilege does not yield because Plaintiffs cannot establish that their need for these documents outweighs Defendants' interest in non-disclosure.

Second, Defendants object to the May 1 Order's conclusion that the deliberative process privilege should yield with respect to the certain deliberative documents (Documents 2 through 6) and that Plaintiffs' need for the information found in those documents outweighs Defendants' interest in protecting the information. Given that Defendants have produced well over one million pages of documents through the course of discovery, many of which contain information about the reasons for metering, Plaintiffs cannot show a need for predecisional information about every policy option explored that relates to the processing of aliens at ports of entry.

Defendants do not object to the remainder of the May 1 Order, which, among other things, correctly concluded that documents 2 through 6 were privileged communications.

# RELEVANT BACKGROUND

On January 30, 2020, Defendants notified Plaintiffs that they asserted privilege over a number of documents that had been inadvertently produced through the

course of discovery. Plaintiffs challenged several of these privilege claims, and the dispute was narrowed to nine documents, or portions thereof. On April 2, 2020, after meeting and conferring, the parties filed a joint motion before Judge Crawford for resolution of the dispute regarding the applicability of the deliberative process privilege to those nine documents (ECF No. 437). For the Court's convenience, the table below lists all of the documents that were the subject of that joint motion. The documents in bold reflect those still subject to dispute and that Defendants intend to lodge with this Court for *in camera* review, highlighted to identify the material over which Defendants are asserting privilege.

| Document | Bates Range | Defendants' Deliberative Process Privilege Assertions |
|---|---|---|
| 1 | AOL-DEF-00525116–18 | Page 525116: second email; writer's discussion of the viewpoints of author and various decision-makers with respect to potential courses of action for addressing surge of Haitian migrants that reflects the give and take of ongoing-high-level policy decisions and do not reflect the final decision of the executive branch. |
| **2** | **AOL-DEF-00028473–75** | **Pages 28473-74: substantive discussion of non-final proposal for changes to processing aliens at the San Ysidro Port of Entry.** |
| **3** | **AOL-DEF-00379289–90** | **Pages 379289-90: substantive discussion of non-final proposal for changes to processing aliens at the San Ysidro Port of Entry.** |
| **4** | **AOL-DEF-00379291–96** | **Entire Document (Attachment to Doc. 3): predecisional document outlining proposed course of action that has not been approved.** |
| **5** | **AOL-DEF-00028469–70** | **Pages 28469-70: substantive discussion of non-final proposal for changes to processing aliens at the San Ysidro Port of Entry.** |

2

| 6 | **AOL-DEF-00050247–50** | **Pages 50248-49: substantive discussion of non-final proposal for changes to processing aliens at the San Ysidro Port of Entry.**<br>**Page 50247: substantive discussion of potential future actions to be considered by DHS at a future time.** |
|---|---|---|
| 7 | **AOL-DEF-00273358–60** | **Page 273358: discussion within CBP relating to DHS request for meeting with DHS Deputy Secretary regarding potential changes to policies and practices with respect to queue management. The email chain reveals DHS and CBP deliberations and decisionmaking regarding multiple potential courses of action with respect to operations and policy of the Department and agency. The two emails contain information about the decisionmaking processes that would reveal that deliberative process, including proposed courses of action that were under consideration by CBP and by Deputy DHS Secretary. That information includes: (1) the subject of the meeting; (2) substantive discussion of two different potential courses of action and non-final decisions under review and discussion; (3) an analysis of the type of information needed for briefing to make a decision on one course of action; and (4) the views of an individual CBP employee (Mr. Howe) that contain pre-decisional reactions or recommendations related to ongoing decisionmaking process.** |
| 8 | **AOL-DEF-00380556–61** | **Pages 380556-57: discussion within CBP relating to DHS request for** |

3

| | | **meeting with DHS Deputy Secretary regarding potential changes to policies and practices with respect to queue management. The two email chain reveals DHS and CBP deliberations and decisionmaking regarding multiple potential courses of action with respect to operations and policy of the Department and agency. Each email contains information about the decisionmaking processes that would reveal that deliberative process, including proposed course of action that were under consideration by CBP and by Deputy DHS Secretary. That information includes: (1) the subject of the meeting; (2) substantive discussion of two different potential course of action and non-final decisions under review and discussion; (3) an analysis of the type of information needed for briefing to make a decision on one course of action; and (4) discussions regarding the substance of policy proposals still under discussion.** |
|---|---|---|
| **9[1]** | **AOL-DEF-00380562-64** | **DP: page 380562; discussion within CBP relating to DHS request for meeting with DHS Deputy Secretary regarding potential changes to policies and practices with respect to queue management. The email reveals DHS and CBP deliberations and decisionmaking regarding consideration of potential courses of action with respect to operations and** |

---

[1] These documents are referred to below as "Doc."

|  |  | **policy of the Department and agency. The email contains information about the decisionmaking processes that would reveal that deliberative process, including proposed courses of action that were under consideration by CBP and by Deputy DHS Secretary. That information includes: (1) the subject of the briefing paper; (2) an analysis of the type of information needed for briefing to make a decision on one course of action; (3) discussions about the how the briefing may need to be revised; and (4) discussions regarding the substance of policy proposals still under discussion.** |
|---|---|---|

On May 1, 2020, Judge Crawford issued the May 1 Order Denying Defendants' Motion to Claw-Back Documents and Granting in Part and Denying in Part Defendants' Motion to Seal (ECF No. 446) With respect to documents 2 through 6, Judge Crawford correctly concluded that those documents contained information protected by the deliberative process privilege; however, Judge Crawford went on to conclude that Plaintiffs' need for the unredacted documents outweighed Defendants interest in protecting the privileged information because "[t]he memorandum and portions of the email chains … relate directly to defendants' motivation in implementing the Turnback Policy." May 1 Order at 6.

With respect to documents 7 through 9, Judge Crawford determined that they were not privileged because: (1) there was "no indication the substance of these emails was considered by CBP decisionmakers,"; and (2) "defendants [did not show] the communications were made in order to assist an agency decisionmaker in arriving at his or her decision or otherwise explained what role the communications played in the decision-making process." *Id*. at 7.

1    Pursuant to this Court's Standing Order and Local Rule 7.1, the parties met

2 and conferred on May 8, 2020. Sampat Decl. ¶ 3. At that time, Plaintiffs indicated

3 their intention to oppose Defendants' objections. *Id*. ¶ 5.

4                                    **<u>ARGUMENT</u>**

5    Defendants object to the May 1 Order in two respects: (1) Defendants main-

6 tain that certain discussions contained in documents 7 through 9 are protected by the

7 deliberative process privilege; and (2) Defendants maintain that Plaintiffs have not

8 shown a need for the unredacted versions of documents 2 through 6 that outweighs

9 the government's interest in protecting internal deliberations relating to policy deci-

10 sions. May 1 Order at 6. Accordingly, the rulings in the May 1 Order with respect to

11 these documents are contrary to law and should be set aside.

12   **I.    Standard of Review**

13       This Court should review Defendants' timely filed objections *de novo*. Under

14 Federal Rule of Civil Procedure 72(a), when timely objections are filed, the district

15 judge must "set aside any part of the order that is clearly erroneous or is contrary to

16 law." A decision runs contrary to law if it fails to apply or misapplies the relevant

17 statutes, case law, or rules of procedure. *Lerma v. Arends*, at *3 (E.D. Cal. June 22,

18 2011) (internal citations and quotations omitted). To determine if a magistrate

19 judge's decision ran contrary to law, the district court conducts *de novo* review. *Re-

20 gents of University of California v. Affymetrix, Inc.*, No. 17-cv-01394-H-NLS, 2018

21 WL 3752752, at *2 (S.D. Cal. Aug. 6, 2018); *see also Osband v. Woodford*, 290

22 F.3d 1036, 1041 (9th Cir. 2002). Mixed questions of law and fact are subject to *de

23 novo* review. *See In re Bofl, Inc. Securities Litigation*, 318 F.R.D. 129, 133-34 (S.D.

24 Cal. 2016) (holding that the magistrate judge's protective order was "contrary to

25 law" after reviewing the factual finding used to support that there was good cause);

26 *Advanced Physicians, S.C. v. Connecticut General Life Insurance Co.*, --- F.Supp.3d

27 ---, 2020 WL 58698, at *4-5 (N.D. Tex. Jan. 3, 2020) (reviewing Rule 72(a) objec-

28 tions using the *de novo* standard to evaluate the underlying facts to determine

whether the fiduciary exception pierced the attorney-client privilege).[2] The application of the deliberative process privilege, as well as the question of whether the privilege should yield, may be subject to *de novo* review. *See e.g. U.S. Equal Opportunity Commission v. Chipotle Mexican Grill, Inc.*, 2019 WL 3811890, at \*4 (N.D. Cal. Aug. 1, 2019) (conducting *de novo* review to determine whether the deliberative process privilege protected the requested evidence and whether the privilege should yield); *L.H. v. Schwarzenegger*, 2007 WL 2009807, at \*5 (E.D. Cal. 2007) (conducting *de novo* review to determine whether privileged information should nevertheless be produced, and holding that the magistrate judge's conclusion was contrary to law because it did not fully engage with the factors to determine whether the deliberative process privilege should yield).

Defendants respectfully submit that their objections to the May 1 Order be reviewed *de novo*. If, however, this Court were to apply the clearly erroneous standard, Defendants maintain that the Magistrate Judge clearly erred because the clear factual record established both that the documents at issue are subject to the deliberative process privilege and why the privilege should not yield.

## II. Deliberative Process Privilege Issues

### a. Documents 7-9: "Point of Entry Briefing"

The Magistrate Judge's ruling that the deliberative process privilege did not protect the certain of the communications in these emails was contrary to the law.

---

[2] Defendants acknowledge that certain courts within the district have declined to commit to a *de novo* standard of review when reviewing mixed questions of law and fact, but have applied both the "clearly erroneous" and the *de novo* standards of review in such instances. *See e.g.*, *CollegeSource, Inc. v. AcademyOne, Inc.*, 2015 WL 4772644, at \*3 (S.D. Cal. Aug. 12, 2015) (the court did not commit to one standard of review but rather concluded that the plaintiff's claims failed even under *de novo* review); *California v. Kinder Morgan Energy Partners, L.P.*, 2010 WL 11672491, at \*3 (S.D. Cal. Dec. 16, 2010) (the court determined that the magistrate judge's order was neither contrary to law nor clearly erroneous when evaluating a privilege dispute).

The material at issue is protected by the deliberative process privilege because it recounts or reflects "advisory opinions, recommendations, and deliberations compromising part of the process by which government decisions and policies are formulated." *Oceana Inc. v. Ross*, 2018 WL 5276297, at *2 (C.D. Cal. Aug. 20, 2018) (citing *FTC v. Warner Comm'ns, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984)).

The deliberative process privilege requires the document to be both predecisional and deliberative. *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000). A document is predecisional if it predates the corresponding decision. *California Native Plant Society v. U.S. E.P.A.*, 251 F.R.D. 408, 411 (N.D. Cal. 2008). Material is deliberative if it "would expose an agency's decisionmaking process in such a way to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its function." *Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002). Ultimately, the privilege is meant to "protect[] and encourage[] the agency's ability to have candid discussions." *California Native Plant Society*, 251 F.R.D. at 411.

In ruling that these email chains were not protected by the deliberative process privilege, the Magistrate Judge determined that the "emails were generated as a result of a request for a meeting to discuss *potential* changes to CBP's queue management policies and practices with the DHS Deputy Secretary[.]" May 1 Order at 7 (emphasis added). Accordingly, the Magistrate Judge acknowledged that the emails were predecisional—because they predated a policy decision—and that the emails were part of that decisionmaking process. There is no requirement that the *particular emails* be considered by the ultimate decisionmaker, as the May 1 Order suggests. May 1 Order at 7. Instead, the question is whether the email chain reveals the deliberative, consultative process of the government. *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (noting that the deliberative process privilege was created to protect documents "reflecting" the deliberations that are "part of a process by which governmental decisions" are created); *see also Fox News Network, LLC v.*

1    *U.S. Dep't of Treasury*, 911 F. Supp.2d 261, 283 (S.D.N.Y. 2012) (holding that an
2    email thread that reflected an "exchange of concerns and suggested approaches [fell]
3    squarely within the protection of the deliberative process privilege."). Here, the in-
4    formation that Defendants seek to protect in these documents reveal, among other
5    things: "the substance of two different potential courses of action and potential de-
6    cision points still under review"; "an analysis of options and data/information
7    needed to decide on a course of action"; "the opinions and views of a particular CBP
8    employee involved in the decision making process"; and "the contents of pre-deci-
9    sional recommendations contained in a memorandum drafted by [a] CBP em-
10   ployee." Owen Decl. ¶¶ 5, 6. The identification and assignment of priority to the
11   issues deemed relevant to the formulation of policy is protected by the deliberative
12   process privilege. *Nat'l Wildlife Federation v. U.S. Forest Serv.*, 861 F.2d 1114,
13   1121 (9th Cir. 1988). Clearly, these email chains identified the information that CBP
14   deemed relevant to communicate to DHS for the purposes of arriving at a decision.
15   *See* Doc. 7, at AOL-DEF-00273358 (revealing information requested by deci-
16   sionmakers in advance of a meeting to analyze a potential policy choice, as well as
17   a recounting of the recommendations relating to the potential policy options, which
18   thus reveals the proposals and deliberations themselves); Doc. 8, AOL-DEF-
19   00380556-57 (discussing a memorandum being prepared in advance of the meeting
20   for decisionmaking purposes, and identifying the central focus of the proposed
21   agency action); Doc. 9, AOL-DEF-00380562 (same). Indeed, the proposed redac-
22   tions in Documents 7 through 9 not only identify agency priorities, but also tend to
23   reveal the substance of non-final or tentative proposals, which constituted recom-
24   mendations: "So long as such recommendations do not represent final agency policy,
25   it is clear that they fall within the deliberative process privilege." *Nat'l Wildlife*
26   *Fed'n*, 861 F.2d at 1121. Accordingly, the determination that these documents were
27
28

9

1    not privileged is contrary to law.[3]

2         Because the Magistrate Judge determined that the documents and their content

3    were not protected by the deliberative process privilege, she never addressed

4    whether the privilege should yield. Therefore, even though these documents contain

5    privileged communications, Plaintiffs may argue that the privilege should yield. For

6    the privilege to yield, the Court must determine whether Plaintiffs "need for the ma-

7    terials and need for accurate fact-finding override[s] the government's interest in

8    nondisclosure" after considering: (1) the relevance of the evidence; (2) the availa-

9    bility of other evidence; (3) the government's role in the litigation; and (4) the extent

10   to which disclosure would hinder frank and independent discussion regarding con-

11   templated policies and decisions. *FTC*, 742 F.3d at 1161.

12        After considering these factors, the Court should conclude that the privilege

13   should not yield and that clawing these documents back is warranted. First, Plaintiffs

14   never even argued before the Magistrate Judge that the privilege should yield with

15   respect to Documents 8 and 9, let alone that these documents were necessary to their

16   claims. At most, they argued that one sentence in Document 7 was relevant to their

17   claims because it supposedly reflected Defendants' intent "in implementing the

18   Turnback Policy," ECF No. 437 at 12. Further, Defendants maintain that the internal

19   deliberations in these documents are not directly relevant to the determination of the

20   claims and defenses in this case, because deliberations concerning potential policy

21   changes are irrelevant to whether the governmental actions alleged and challenged

22

23       [3] Even under the clearly erroneous standard, this Court should overrule the Magis-

24   trate Judge's conclusion regarding these documents. The documents themselves and

25   supporting declarations firmly indicate that a mistake was committed with respect

26   to whether the documents are privileged. *Almont Ambulatory Surgery Ctr., LLC v.*
     *UnitedHealth Group, Inc.*, 99 F.Supp.3d 1110, 1154 (C.D. Cal. 2015) (quoting *Boyd*

27   *v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir.
     2005)).

28

in this case violate any legal provision. *See Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 50 (1983) ("It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself."). Moreover, the email chains are clear on their faces: none of the deliberative material demonstrates pretext or undermines the government's defense that CBP's capacity to process undocumented aliens is governed by its need to maintain safety and security at POEs, finite resources, and its need to balance those finite resources to focus on other statutory mission sets. Further, Plaintiffs have already received over one million pages of evidence, *see* Shinners Decl. ¶ 13, many of which contain information pertaining to the reasons for metering. Indeed, Plaintiffs have attached 43 internal agency documents to their Motion for Class Certification; Documents 7 through 9 were not among them. *See* Pls.' Mot. for Class Certification. Those produced documents are sufficient for the Court to evaluate Defendants' capacity justification and whether it is pretextual. On the other hand, the communications contained in Documents 7 through 9 reflect "back-and-forth debate" that is "precisely the type of deliberative process" that exemplifies a strong need for non-disclosure. *Sierra Club, Inc. v. United States Fish and Wildlife Serv.*, 925 F.3d 1000, 1013 n. 9 (9th Cir. 2019); *see also* Owen Decl. ¶ 15. Revealing these discussions and information would have a chilling effect on the "open and frank discussions" of the agency. Owen Decl. ¶ 15; *see also Nat'l Wildlife Fed'n*, 861 F.2d at 1117 ("[M]aintaining the confidentiality of the give-and-take that occurs among agency members in the formulation of policy … encourages the frank and open discussions of ideas, and hence, improves the decisionmaking process.") (citing *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 802-03 (1984)). Even the Attorneys' Eyes Only designation cannot fully protect against the harms of disclosure of the government's decisionmaking process. *See* Owen Decl. ¶ 16.

Accordingly, the Court should sustain Defendants' objections pertaining to

1    the referenced communications in documents 7 through 9 and overturn the Magis-

2    trate Judge's ruling that the aforementioned documents did not contain privileged

3    communications and allow Defendants to claw back the documents to prevent con-

4    tinued and further exposure of their deliberative processes.

5            b.    Documents 2-6: "Re: C1 Migrant Processing Direction"

6            The Magistrate Judge improperly concluded that the deliberative process priv-

7    ilege should yield for Documents 2 through 6. Even though the May 1 Order properly

8    determined that the documents contained privileged communications, the Magistrate

9    Judge erred in concluding that the privilege should yield in this case. In reaching this

10   conclusion, the Magistate Judge failed to engage in an analysis of the non-exclusive

11   factors under the governing legal standard under *FTC*, despite Defendants' discus-

12   sion of those factors. *See* ECF No. 437 at 8, 11 (citing *Vietnam Veterans of Am. v.*

13   *C.I.A.*, 2011 WL 4635139, at *10 (N.D. Cal. Oct. 5, 2011), which holds that "[I]ntent

14   is properly considered as a factor in the substantial need analysis" under *FTC*, and

15   arguing that Plaintiffs could not show a need for the case because (1) the information

16   sought was not relevant to the case; (2) the government had a strong interest in non-

17   disclosure; and (3) other evidence relating to Plaintiffs' claims was available). Be-

18   cause the Magistrate Judge failed to conduct the proper analysis, this Court must

19   now determine *de novo* whether the deliberative process privilege should give way.

20   *Chipotle Mexican Grill, Inc.*, 2019 WL 3811890, at *4 (N.D. Cal. Aug. 1, 2019);

21   *L.H*, 2007 WL 2009807, at *5. Under that analysis, Defendants' interest in protect-

22   ing from disclosure frank back-and-forth conversations regarding potential actions

23   at the San Ysidro Port of Entry outweighs Plaintiffs' need for the information. Fur-

24   ther, the Magistrate Judge incorrectly implied that Defendants' "motivation" is at

25   issue, and incorrectly concluded that the documents at issue reveal "motivation."

26   Rather, the documents contain discussions relating to changes to processing aliens

27   at a specific port of entry, and lack any indicia of motive of any kind. Therefore, this

28   portion of the Magistrate Judge's order should be overturned.

Under the *FTC* multi-factor analysis, Plaintiffs cannot establish a need for the deliberative material contained in Documents 2 through 6. *FTC*, 742 F.3d at 1161. First, the deliberative documents discuss and evaluate a proposed course of action that was never adopted concerning how to process aliens without documents sufficient for lawful entry at the San Ysidro Port of Entry. But the question in this case is whether the "agency action" challenged by Plaintiffs may be upheld "on the basis articulated by the agency," *State Farm*, 463 U.S. at 50, not whether other courses of action were feasible or even optimal, making these documents irrelevant to the merits of the case. Plaintiffs have argued, and the Magistrate Judge incorrectly held, that these documents reflect Defendants' motivation "in implementing the Turnback Policy," *see* May 1 Order at 6. Yet these documents do not discuss implementation of metering practices (which Plaintiffs refer to as the "Turnback Policy"). Further, subjective intent is not an element of Plaintiffs' claims. Nor do the documents express subjective intent or motivation. Rather, they discuss a potential course of action under consideration by the agency and the potential impact of taking such action. Although the government is a defendant in this litigation, there is simply no basis to delve into the predecisional deliberations about *every* possible course of action relating to the processing of aliens at ports of entry. Owen Decl. ¶¶ 7, 14.

Second, the availability of other evidence supports preserving the privilege over Documents 2 through 6. As of April 2, 2020, Defendants had already produced well over 280,000 documents throughout the course of discovery. Shinners Decl. ¶ 13. These documents relate to a variety of topics, including metering practices, the capacity of ports of entry on the U.S.-Mexico border, and CBP's policies and practices for the processing of aliens without documents sufficient for lawful entry. Plaintiffs cited to numerous of those and other documents to evaluate Defendants' capacity justification and whether it is pretextual in support of their class certification briefing in this case. *See* Pls.' Mot. for Class Certification. Only three of these 103 exhibits are the subject of this clawback assertion.

1    Third, disclosure of these or similar documents evaluating potential policy

2 changes would hinder the ability of the agency to candidly propose or engage in

3 discussions of potential actions for fear that such discussions or proposals would be

4 used against them. Limiting such discussions would impair the quality of deci-

5 sionmaking. Owen Decl. ¶ 12, 15. Agency officials must feel comfortable to propose

6 courses of action, even if ultimately rejected, and that is precisely why predecisional,

7 deliberative documents are protected from disclosure. *See Dept. of Interior v. Kla-*

8 *math Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001). Contrary to the Magis-

9 trate Judge's conclusions, revealing the back-and-forth of the consultative process

10 would not necessarily reflect the intent or motivation of the ultimate decisionmakers.

11 Disclosure *would*, however, hinder frank and independent discussions among

12 agency employees about potential policies and decisions. Owen Decl. ¶ 7. Disclo-

13 sure of predecisional documents would reveal the agency's process of working out

14 its policy, which is what the deliberative process privilege is meant to protect.

15 *N.L.R.B.*, 421 U.S. at 153; *see also Sierra Club, Inc.*, 925 F.3d at 1013 n. 9 (the

16 deliberative process privilege is meant to protect the "back-and-forth" debate). Fi-

17 nally, the existence of the Protective Order does not adequately protect the govern-

18 ment's interests in preserving the privilege, particularly where Plaintiffs seek to im-

19 pute negative interpretations to the government's deliberative discussions and sub-

20 mit those discussions in support of their briefing.[4]

21

22 _____

23 [4] Even under the clearly erroneous standard, the outcome is no different. The Mag-

24 istrate Judge did not engage in a full analysis of the factors and ignored Defendants'

25 strong assertions that these communications are "critical to ensure that DHS and
CBP leadership are able to make the most effective policy decisions to address such

26 operational vulnerabilities." Owen Decl. ¶ 13. Further, as is clear from the face of
the documents, the Magistrate Judge erred in concluding that these documents re-

27 flected Defendants' motivation in "implementing the Turnback Policy." May 1 Or-
der at 6. Clearly, Defendants have a compelling reason in non-disclosure: protecting

28

14

Accordingly, this Court should overturn the Magistrate Judge's determination and rule that these documents should be protected from disclosure.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully object to the Magistrate Judge's conclusions that documents 7 through 9 were not protected by the deliberative process privilege and that Plaintiffs' need for documents 2 through 6 outweighed Defendants' interest in non-disclosure.

---

the "frank, honest, and detailed evaluation of options" considered by decisionmakers "without the threat of public disclosure and second-guessing by outside entities." *Id.* ¶ 14. The Magistrate Judge clearly erred in failing to acknowledge the government's strong interest in non-disclosure and in characterizing the documents as reflecting motivation.

Dated: May 15, 2020                 Respectfully submitted,

                                    JOSEPH H. HUNT
                                    Assistant Attorney General
                                    Civil Division

                                    WILLIAM C. PEACHEY
                                    Director

                                    SAMUEL P. GO
                                    Assistant Director

                                    KATHERINE J. SHINNERS
                                    Senior Litigation Counsel

                                    ALEXANDER J. HALASKA
                                    ARI NAZAROV
                                    Trial Attorneys

                                    *s/ Dhruman Y. Sampat*
                                    DHRUMAN Y. SAMPAT
                                    Trial Attorney
                                    U.S. Department of Justice
                                    Civil Division
                                    Office of Immigration Litigation
                                    District Court Section
                                    P.O. Box 868, Ben Franklin Station
                                    Washington, D.C. 20044
                                    Tel: (202) 532-4281| Fax: (202) 305-7000
                                    dhruman.y.sampat@usdoj.gov

                                    *Counsel for Defendants*

DEFENDANTS'
RULE 72(a) OBJECTIONS
Case No. 3:17-cv-02366-BAS-KSC

**CERTIFICATE OF SERVICE**

I certify that I served a copy of this document on the Court and all parties by filing this document with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all counsel of record.


DATED: May 15, 2020                    Respectfully submitted,

                                       *s/ Dhruman Y. Sampat*
                                       DHRUMAN Y. SAMPAT
                                       Trial Attorney
                                       U.S. Department of Justice
                                       Civil Division
                                       Office of Immigration Litigation
                                       District Court Section

                                       *Counsel for Defendants*

DEFENDANTS'
RULE 72(a) OBJECTIONS
Case No. 3:17-cv-02366-BAS-KSC