JOSEPH H. HUNT
Assistant Attorney General, Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
ARI NAZAROV (CT 414491)
DHRUMAN SAMPAT (NJ 270892018)
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorneys
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
|      *Plaintiffs*, | Hon. Karen S. Crawford |
| v. | **JOINT MOTION FOR DETERMINATION OF PRIVILEGE DISPUTE** |
| Chad F. WOLF, Acting Secretary of Homeland Security, in his official capacity, *et al.*,* | *Declaration of Alexander J. Halaska filed concurrently* |
|      *Defendants* | |

---

* Acting Commissioner Morgan is automatically substituted for former Commissioner McAleenan as a Defendant pursuant to Federal Rule of Civil Procedure 25(d).

# **JOINT MOTION FOR DETERMINATION OF PRIVILEGE DISPUTE**

Pursuant to this Court's Civil Pretrial Procedures, § VIII, the parties hereby jointly move for a determination of a privilege dispute involving nineteen documents produced by Defendants to Plaintiffs in discovery and later clawed back. The parties met and conferred on May 1 and May 7, 2020, and were unable to resolve the entirety of their dispute. On May 7, 2020, pursuant to this Court's Civil Pretrial Procedures, § VIII.B, and this Court's Order Granting Joint Motion for Extension of Time to Contact the Court Regarding Discovery Dispute (ECF No. 445), the parties jointly called chambers to present the dispute, whereupon this Court requested that the parties submit this joint motion.

DATED: June 4, 2020                    Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director

KATHERINE J. SHINNERS
Senior Litigation Counsel

*/s/ Alexander J. Halaska*
ALEXANDER J. HALASKA
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov
*Counsel for Defendants*

i

DATED: June 4, 2020

MAYER BROWN LLP
    Matthew H. Marmolejo
    Ori Lev
    Stephen M. Medlock

SOUTHERN POVERTY LAW CENTER
    Melissa Crow
    Sarah Rich
    Rebecca Cassler

CENTER FOR CONSTITUTIONAL RIGHTS
    Baher Azmy
    Ghita Schwarz
    Angelo Guisado

AMERICAN IMMIGRATION COUNCIL
    Karolina Walters

By: */s/ Stephen M. Medlock*
    Stephen M. Medlock

*Attorneys for Plaintiffs*

JOINT MOT. FOR DETERMINATION
OF PRIVILEGE DISPUTE
Case No. 3:17-cv-02366-BAS-KSC

## DEFENDANTS' INTRODUCTION

This lawsuit challenges U.S. Customs and Border Protection's (CBP) metering practices at ports of entry along the U.S.-Mexico border. *See* Second Amended Complaint (SAC) (ECF No. 189). During discovery, CBP inadvertently produced to Plaintiffs nineteen documents relating to the January 2019 revocation of Al Otro Lado employee Nicole Ramos's enrollment in the CBP Trusted Traveler program SENTRI; a law-enforcement operation called Operation Secure Line; and intelligence-gathering efforts centering on a potential marriage-fraud ring in Tijuana. In March 2020—almost immediately upon learning of the inadvertent disclosure—Defendants clawed back portions or the entirety of these documents as law-enforcement privileged because the documents contain intelligence information and CBP's law-enforcement sources, methods, and priorities, the disclosure of which would compromise the effectiveness of CBP's law-enforcement operations.

Plaintiffs dispute the privilege assertions because they believe that the documents show that CBP "retaliated" against Ramos for her and Al Otro Lado's participation in this litigation. That claim is baseless and unsupported. The documents contain no references to this litigation at all. Instead, they show that CBP's revocation of Ramos's SENTRI enrollment is supported by reasons perfectly consistent with an assessment that Ramos is not a low-risk traveler who should hold expedited border-crossing privileges, and that CBP's actions involving Ramos are centered on activities that are demonstrably unrelated to this litigation. Plaintiffs cannot show a need for these documents in this case, and CBP would be harmed by their disclosure. Therefore, this Court should hold that the documents contain law-enforcement privileged information.

## DEFENDANTS' BACKGROUND

In late 2019, Defendants produced to Plaintiffs in discovery the nineteen documents at issue here. *See* Halaska Decl. ¶¶ 5–23. The first group of documents consists of an email chain and its sixteen embedded images sent on January 11, 2019,

JOINT MOT. FOR DETERMINATION
OF PRIVILEGE DISPUTE
Case No. 3:17-cv-02366-BAS-KSC

by a supervisory CBP officer to his superiors in the San Diego Field Office recommending the revocation of Nicole Ramos's SENTRI enrollment. *See* Gov't Exhs. 1–17; Gov't Ex. 20, Wagner Decl. ¶ 4. The government asserts the law-enforcement privilege over the entirety of each document. Plaintiffs dispute the assertion.

The second document is an intelligence report created on January 14, 2019, by a Border Patrol agent in Border Patrol's San Diego Sector. *See* Gov't Ex. 18; *see* Gov't Ex. 21, Heitke Decl. ¶ 3. The intelligence report pertains to intelligence-gathering efforts focused on a potential marriage-fraud ring in Tijuana. *See* Gov't Ex. 18 at 694. The government asserts the law-enforcement privilege over the information highlighted in red on p. 703 of the document. Plaintiffs dispute the assertion.

The third document is a PowerPoint presentation created in December 2018 by CBP's Region IX Emergency Operations Center (EOC) to brief the Region IX leadership about developments in Operation Secure Line, an operation "designed to ensure that CBP was prepared for any attempted incursion of large groups of intending migrants, whether at or between ports of entry." *See* Gov't Ex. 19; Wagner Decl. ¶¶ 10–14. The government asserts the law-enforcement privilege over the information highlighted in red on pp. 617 and 618. Plaintiffs dispute the assertion.[1]

## **DEFENDANTS' ARGUMENT**

This Court should hold that the specified information in CBP's documents is law-enforcement privileged. The disclosure of that information would harm the government's law-enforcement operations, and Plaintiffs cannot show a need for it.

---

[1] Separately, the parties have moved to seal the entirety of Gov't Exhs. 1, 11, 18, and 19 on the public docket. *See* ECF Nos. 432, 449. That motion remains pending. After the motion and response were filed, the government learned that portions of Gov't Ex. 18 were filed on the public docket by the plaintiff's counsel in *Dousa v. DHS*, No. 19-cv-1255 (S.D. Cal.). The government will accordingly amend its pending sealing request to Judge Bashant with respect to Exhs. 18 and 19 via separate filing. For the purposes of this Joint Motion, however, the government has marked with blue boxes the portions of Gov't Exhs. 1, 11, 18, and 19 that continue to be subject to the pending sealing request.

2

Although the Ninth Circuit has not formally recognized the law-enforcement privilege, "[f]ederal common law recognizes a qualified privilege for official information." *Dousa v. DHS*, No. 19-cv-1255, 2019 WL 6311990, at \*2 (S.D. Cal. Nov. 22, 2019) (internal quotation marks omitted). "To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery." *Id.* (internal quotation marks omitted). District courts in the Ninth Circuit have used the ten-factor test from *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D. Pa. 1973), to guide this inquiry. *See, e.g.*, *Wagafe v. Trump*, — F.R.D. —, 2020 WL 246693 (W.D. Wash. 2020). Under that test, courts consider:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case.

*Frankenhauser*, 59 F.R.D. at 344.

**<u>SENTRI Email.</u>** This Court should hold that the SENTRI email (Gov't Ex. 1) and the sixteen documents that were attached to the email (Gov't Exhs. 2–17) are law-enforcement privileged. *First*, CBP has "offer[ed] competent evidence about how the specific requested disclosure would harm governmental interests." *Dousa*, 2019 WL 3611990, at \*2. CBP's Deputy Executive Assistant Commissioner (DEAC) Wagner, the second-highest-ranking official in CBP's Office of Field Operations, explains that "SENTRI is one of four CBP Trusted Traveler Programs,

JOINT MOT. FOR DETERMINATION
OF PRIVILEGE DISPUTE
Case No. 3:17-cv-02366-BAS-KSC

which allow pre-enrolled, low-risk participants to receive expedited border pro-cessing, enabling CBP to direct additional scrutiny to unknown, potentially higher-risk travelers arriving at ports of entry." Wagner Decl. ¶ 5. Disclosure:

> would reveal the types and sources of information that CBP considers relevant for determining eligibility in its Trusted Traveler Programs, thereby under-mining CBP's ability to use the same law enforcement techniques and sources to assess future applicants for and participants in those Trusted Traveler Pro-grams. Individuals seeking to obtain or retain Trusted Traveler privileges for illicit purposes could use that information to identify any possible gaps in CBP's decision making, manipulate information provided to CBP, and change their behavior in order to inappropriately obtain Trusted Traveler privileges. Such manipulation could result in CBP being unable to assess applicants for and participants in the Trusted Traveler Programs with the requisite confi-dence level, and could result in CBP incorrectly identifying individuals as low risk and thus eligible for Trusted Traveler Programs, when, for instance, they pose a threat to national security.

*Id.* ¶ 6; *see also id.* ¶ 7 (explaining additional harms).

Additionally, Gov't Ex. 2 contains a record from TECS, CBP's "principal law enforcement and anti-terrorism database," "known as a 'lookout.'" Wagner Decl. ¶¶ 8.a, 8.b. A TECS lookout "generally provides instructions to officers on how they should exercise their discretion in certain situations, such as how to handle the in-spection of certain individuals who may pose a threat to the United States or who may be involved in unlawful activity." *Id.* ¶ 8.b. Disclosure of this document would cause the distinct harm of "undermin[ing] the[] utility [of TECS lookouts]" by "al-lowing hostile actors to tailor countermeasures in attempt to circumvent law enforce-ment. For example, an alien smuggler who learns that CBP has a lookout associated with his vehicle may start using a different vehicle. As another example, a narcotics trafficker who learns that CBP has a lookout associated with her name may then explore other methods for trafficking, such as paying others to do the transport." *Id.* ¶ 8.b; *see also id.* ¶ 8.c. (additional harms). This constitutes *prima facie* harm.

*Second*, the balance of the *Frankenhauser* factors tips in the government's favor. The justifications for revoking Nicole Ramos's SENTRI privileges are of no

JOINT MOT. FOR DETERMINATION
OF PRIVILEGE DISPUTE
Case No. 3:17-cv-02366-BAS-KSC

"importance ... to the plaintiff's case" and have no bearing on the reasons for or lawfulness of CBP's metering practices. *Frankenhauser*, 59 F.R.D. at 344 (factor #10). This case is thus distinguishable from cases like *Dousa*, where this Court noted the "obvious" relevance of the law-enforcement documents to the complaint. 2019 WL 6311990, at *3. For similar reasons, the eighth *Frankenhauser* factor also weighs in CBP's favor: Although Plaintiffs raise a good-faith challenge to metering, they have not offered a persuasive explanation why the reasons underlying Ramos's SENTRI revocation relate to metering or are necessary to litigate their causes of action.

Plaintiffs argue that the revocation shows that CBP "retaliated" against Ramos for her and Al Otro Lado's participation in this litigation, which Plaintiffs cite as a reason why they should not be required to disclose to Defendants the identities of 67 declarants in this case and have a need for the documents here. *See* ECF No. 434. This argument is baseless. The documents do not discuss the declarants, any similarly situated individuals, or this litigation at all. In fact, the documents show on their face that CBP had objectively reasonable bases for revoking Ramos's SENTRI privileges that are entirely unrelated to this litigation, which defeats any inference of retaliation. *See, e.g.*, Gov't Ex. 1 at 914 *and* Gov't Ex. 2 at 919 (noting the first reason in support of the recommendation and providing additional details); *see* Gov't Ex. 1 at 914–15 *and* Gov't Ex. 4 at 921 (second and third reasons in support of the recommendation and additional details); Gov't Ex. 1 at 915 *and* Gov't Ex. 5 at 922 (fourth reason and additional details). It is objectively reasonable to conclude from this information, as CBP did, that Ramos was not a low-risk traveler who should receive expedited border-crossing privileges. There was no "retaliation." Regardless, these documents are unnecessary to the litigation because there is no evidence from putative class members showing that they do, in fact, fear "retaliation," and Plaintiffs do not explain why CBP's actions are an "undue intrusion" on any of Ramos's protected rights. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984).

JOINT MOT. FOR DETERMINATION
OF PRIVILEGE DISPUTE
Case No. 3:17-cv-02366-BAS-KSC

The third *Frankenhauser* factor weighs in the government's favor because the documents reveal the types of information that CBP considers when assessing whether an individual qualifies as a low-risk traveler eligible for SENTRI enrollment. Disclosure of this example of how CBP assesses continuing eligibility for Trusted Traveler enrollment would thus create a disincentive for agency personnel to provide candid recommendations in the future. The fourth *Frankenhauser* factor weighs in CBP's favor because the email itself is an evaluation that Ramos is not a low-risk traveler and a recommendation that her SENTRI enrollment be revoked. That is true of the email's supporting documents, too, because the facts contained in the documents are expressly incorporated into and intertwined with the recommendation.

The sixth *Frankenhauser* factor also weighs in the government's favor. True, CBP's assessment of whether Ramos should retain her SENTRI enrollment ended when it revoked the enrollment. But the law-enforcement privilege "may be asserted to preserve the *future* effectiveness of an investigative technique," not just investigative techniques used in ongoing matters. *Shah v. Dept. of Justice*, 89 F. Supp. 3d 1074, 1081 (D. Nev. 2015) (emphasis added). Disclosure of the documents "would reveal the types and sources of information that CBP considers relevant for determining eligibility in its Trusted Traveler Programs, thereby undermining CBP's ability to use the same law enforcement techniques and sources to assess future applicants for and participants in those Trusted Traveler Programs." Wagner Decl. ¶ 6. And the ninth *Frankenhauser* factor favors the government because members of the public can seek federal government records under the Freedom of Information Act (FOIA) or through discovery in a case that squarely challenges actions allegedly taken against them by a federal agency. *See, e.g.*, *Dousa*, 2019 WL 6311990; *Phillips v. CBP*, No. 19-cv-6338 (C.D. Cal.).

The fifth and seventh *Frankenhauser* factors tip against Defendants because the government does not presently anticipate criminal or disciplinary proceedings,

JOINT MOT. FOR DETERMINATION
OF PRIVILEGE DISPUTE
Case No. 3:17-cv-02366-BAS-KSC

but these factors tip against Defendants only weakly. The inquiry is whether there are "benefits to disclosure that outweigh potential disadvantages," *Dousa*, 2019 WL 6311990, at *2, and the lack of impending criminal or disciplinary proceedings here is not an affirmative benefit to disclosure. And the first and second *Frankenhauser* factors do not apply because the documents do not cite a government witness as a source of the information. Thus, they do not favor either party. This Court should hold that the documents are law-enforcement privileged.

**BP Intelligence Report.** This Court should also hold that the "TECS alert" number and the names of the three individuals that appear under the section entitled "Information Gaps" on p. 703 of the Border Patrol intelligence report (Gov't Ex. 18; highlighted in red) are law-enforcement privileged. *First*, CBP has "offer[ed] competent evidence about how the specific requested disclosure" of the TECS alert number and the names "would harm governmental interests." *Dousa*, 2019 WL 6311990, at *2. As noted above, and as Chief Patrol Agent Heitke, the highest-ranking official in the U.S. Border Patrol's San Diego Sector, explains, "TECS is CBP's principal law enforcement and anti-terrorism database system," which is "designed to collect, maintain, and vet data, and to conduct analyses, assess risk, and share information." Heitke Decl. ¶ 10. The TECS alert number on p. 703 "is a computer code that could be used by a hostile actor seeking to acquire, modify, or remove TECS records containing law enforcement information and intelligence." *Id.* The harm resulting from disclosure of this information, potentially including manipulation or loss of law-enforcement data, would be catastrophic.

The government would also be harmed by the disclosure of the names in the section entitled "Intelligence Gaps." That section of the intelligence report:

> describes gaps in CBP's information and intelligence related to the potential marriage fraud scheme that was the subject matter of this Field Information Report. If the names in this section were disclosed, they—when read together with the remaining information in this section and throughout the Field Infor-

7

mation Report itself—would reveal to a hostile actor precisely what information CBP had not been able to ascertain about the potential marriage-fraud scheme at that point in time. Even though this information is historical, a hostile actor could evaluate that assessment, along with other information in this Field Information Report and other publicly available information, to extrapolate sufficient information to gain general insights into the limits of CBP's abilities to acquire information and intelligence. The hostile actor could then exploit that knowledge to change its behavior or take other steps to evade CBP's efforts to collect intelligence and thus execute its mission.

*Id.* ¶ 11. This constitutes a *prima facie* showing of harm. *See, e.g.*, *Wagafe*, 2020 WL 246693, at *3 (denying motion to compel disclosure of "personal identifying information" contained in benefit applications because disclosure "could permit such individuals to learn of derogatory information possessed by USCIS or other government agencies, and permit bad actors to falsify or misrepresent information or otherwise obstruct USCIS enforcement efforts").

*Second*, the balance of the *Frankenhauser* factors tips in the government's favor. Like the SENTRI email and its attachments, the TECS alert number and the names in the intelligence report about a potential marriage-fraud scheme in Tijuana are of no "importance ... to the plaintiff's case" relating to metering. 59 F.R.D. at 344 (factor #10). Nor does the report support an inference of retaliation. The report explains that CBP gathered information regarding a potential marriage-fraud ring after Border Patrol agents apprehended two migrants in December 2018 who possessed a generic marriage certificate stamped by a Virginia notary showing that they had been married two weeks prior in Tijuana. Gov't Ex. 18 at 694. During subsequent intelligence-gathering, CBP learned that Ramos was associated with the individuals involved in the potential marriage-fraud scheme. *See, e.g.*, *id.* at 701. It did not begin gathering intelligence because of this litigation, and there is no evidence that CBP acted in "retaliation." The tenth and eighth *Frankenhauser* factors thus weigh in CBP's favor.

The third and fourth *Frankenhauser* factors also weigh in the government's

JOINT MOT. FOR DETERMINATION
OF PRIVILEGE DISPUTE
Case No. 3:17-cv-02366-BAS-KSC

favor. The report lays out and evaluates the gaps in CBP's intelligence. *See* Gov't Ex. 18 at 703. Disclosure of that candid self-evaluation would create a disincentive for agency personnel to include such candid assessments of the weaknesses in CBP's information in the future, which would hinder the agency's ability to effectively implement CBP's law-enforcement and border-security missions. The ninth *Frankenhauser* factor also favors the government because members of the public can seek federal government records through FOIA or through discovery in a case that squarely challenges actions allegedly taken against them by a federal agency. *See, e.g.*, *Dousa*, 2019 WL 6311990; *Phillips v. CBP*, No. 19-cv-6338 (C.D. Cal.).

The fifth and seventh *Frankenhauser* factors tip against Defendants, but only weakly. The inquiry is whether there are "benefits to disclosure that outweigh potential disadvantages," *Dousa*, 2019 WL 6311990, at *2, and the lack of impending criminal or disciplinary proceedings here is not an affirmative benefit to disclosure. And the first and second factors do not apply, and thus favor neither party, because the documents do not cite a governmental witness as a source. This Court should hold that the specified information in the report is law-enforcement privileged.

**Region IX EOC PowerPoint.** Finally, this Court should hold that the information highlighted in red on pp. 617 and 618 of the Region IX PowerPoint (Gov't Ex. 19) is law-enforcement privileged. *First*, CBP has demonstrated how "the specific requested disclosure would harm governmental interests." *Dousa*, 2019 WL 6311990, at *2. Chief Patrol Agent Heitke explains that the information on p. 617 "consists of TECS record IDs, which facilitate navigation through [] CBP's TECS database." Heitke Decl. ¶ 21. Page 617 also:

> describes specific law-enforcement actions and steps CBP took with regard to information about these individuals, including a description of with which entities the information was further shared and disseminated. Disclosure of this information would alert the individuals of interest, as well as [similarly situated individuals], of the types of actions CBP takes with certain types of sensitive information, which would permit such individuals to take actions to

> evade law enforcement, thereby undermining CBP and other agencies' abili-
> ties to continue to obtain and develop information and intelligence about these
> individuals and the potential unlawful activity.

*Id.* And DEAC Wagner explains that the information on p. 618 consists of "detailed information regarding individuals of interest to law enforcement," including an individual not otherwise mentioned throughout the documents at issue. Wagner Decl. ¶ 13. "Disclosure of such information would alert individuals that they may be of law enforcement interest, such that they may take steps to alter their behavior in order to evade such law enforcement activity and thereby undermine CBP's ability to obtain and develop further information and/or intelligence related to those individuals. That, in turn, could seriously undermine CBP's ability to perform its law enforcement mission." *Id.* This is a *prima facie* showing of harm from disclosure. *See Wagafe*, 2020 WL 246693, at *3.

*Second*, the balance of the *Frankenhauser* factors tips in the government's favor. As explained, this information is of no "importance ... to the plaintiff's case," 59 F.R.D. at 344, and neither the updates on CBP's intelligence-gathering related to the potential marriage-fraud scheme nor the information regarding the persons of interest support any inference that CBP "retaliated" against Nicole Ramos. For this reason, the eighth factor also weighs in the government's favor. Further, the ninth *Frankenhauser* factor favors the government because members of the public can seek federal government records through FOIA or through discovery in a case that squarely challenges actions allegedly taken against them by a federal agency. *See, e.g.*, *Dousa*, 2019 WL 6311990; *Phillips v. CBP*, No. 19-cv-6338 (C.D. Cal.).

The fifth and seventh *Frankenhauser* factors tip against Defendants, but only weakly, since the lack of impending criminal or disciplinary proceedings here is not an affirmative benefit to disclosure. And the first and second factors do not apply because the documents do not cite a government witness as a source. Thus, they do not favor either party. This Court should hold that the specified information in the report is law-enforcement privileged.

JOINT MOT. FOR DETERMINATION
OF PRIVILEGE DISPUTE
Case No. 3:17-cv-02366-BAS-KSC

## PLAINTIFFS' INTRODUCTION

This dispute regarding Defendants' assertion of the law enforcement privilege arose from what has become a familiar and troubling pattern of last-minute claw-backs in this litigation.  First, Plaintiffs sent Defendants a group of exhibits that Plaintiffs intended to file under seal with an opposition brief, which included many of the documents at issue here.  Next, Defendants realized how damaging the content of the exhibits was and, despite leading Plaintiffs to believe that they simply needed more time before joining in the motion to seal, instead attempted to claw back the exhibits under the guise of the law enforcement privilege hours before Plaintiffs' filing was due.  But there is no "bad documents" privilege.  Defendants cannot continue to resort to the law enforcement and deliberative process privileges as all-encompassing tools to protect against the disclosure of substantively harmful information when that information is not, in fact, privileged.

And there is no question that these are bad documents.  Collectively, they show that CBP used the flimsiest of evidence— ██████████████████ ██████████████████████—as the basis for revoking the SENTRI card that effectively enables her to conduct clinics for migrants that intend to seek asylum in the United States and to accompany asylum seekers to monitor their human rights when they present themselves at the U.S.-Mexico border.  Even though the documents show that CBP ██████████████████████ ██, CBP revoked her SENTRI card anyway based on ██████████████ ██.  When the Government punishes a U.S. citizen based on who they associate with, it violates the First Amendment.  *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984).  Because state interference with a U.S citizen's freedom of association and speech is unwarranted and unlawful, *see id.*, that is where this where this Court's analysis should end.

But there are additional reasons why the Court should reject Defendants' assertion of the law enforcement privilege over the nineteen documents at issue here.

JOINT MOT. FOR DETERMINATION
OF PRIVILEGE DISPUTE
Case No. 3:17-cv-02366-BAS-KSC

*First*, Defendants cannot identify any sensitive information or law enforcement techniques that would be revealed through disclosure of the documents, nor any specific, non-speculative harm that would occur (or has occurred) as a result. Indeed, Defendants have failed to articulate why the Protective Order in this case is insufficient to maintain confidentiality over the information at issue. *Second*, even if the documents at issue did fit within the qualified law-enforcement privilege, the relevance of the information in the documents and Plaintiffs' need for that information overcomes the qualified privilege. As a result, the Court should require that this information be fully disclosed.

### PLAINTIFFS' BACKGROUND

On March 30, 2020, Plaintiffs sent Defendants a group of exhibits that Plaintiffs intended to file under seal as part of Plaintiffs' Opposition to Defendants' Motion to Strike. *See* Halaska Decl. ¶ 2. Plaintiffs assumed that Defendants would join in the request to seal because Defendants themselves had produced these documents with a "Confidential" or "Highly Confidential – Attorneys' Eyes Only" designation under the governing Protective Order.[2] Instead, hours before Plaintiffs' Opposition brief was to be filed, Defendants served Plaintiffs with a sweeping clawback letter asserting law enforcement privilege over the entirety of a number of potential exhibits to Plaintiffs' Opposition brief. *See* Halaska Decl. ¶ 3. Plaintiffs immediately informed Defendants that they disputed the privilege assertions. *Id.* Because the parties could not reach the Court, they agreed that the exhibits would be filed under seal pending determination of the instant privilege dispute. *See* ECF Nos. 432-33.

---

[2] The Protective Order in this case states that material designated as "Confidential" may only be disclosed to specifically identified parties and "the Named Parties and their officers, directors, and employees to whom disclosure is reasonably necessary to assist with the prosecution or defense of this Action." *See* ECF No. 276 ¶ VI.C. Materials designated as "Highly Confidential – Attorneys' Eyes Only" may only be disclosed to counsel, the Court, arbitrators or mediators, experts or consultants, or witnesses. *See id.*

JOINT MOT. FOR DETERMINATION
OF PRIVILEGE DISPUTE
Case No. 3:17-cv-02366-BAS-KSC

Over a month later, the parties met and conferred regarding the documents in question but could not resolve their dispute. Halaska Decl. ¶ 4. Defendants maintain that large portions of a January 2019 SENTRI email and its sixteen attachments, a January 2019 Border Patrol Field Information Report, and an Emergency Operations Center Region IX Update from December 2018 are protected by the law enforcement privilege. *See* Gov't Exs. 1-19. Notably, Defendants do not discuss the nineteen documents themselves in great detail, nor do the accompanying declarations asserting the law enforcement privilege and presenting speculative and generalized harms that could allegedly result from the documents' disclosure. *See* Gov't Exs. 20-21. Plaintiffs discuss these nineteen documents in greater detail below.

## PLAINTIFFS' ARGUMENT

The Court should reject Defendants' assertion of law enforcement privilege over the nineteen documents at issue here for several reasons. *First*, as discussed above, there is no legitimate law enforcement interest in violating a U.S. citizen's constitutional rights, as CBP did here. *U.S. Jaycees*, 468 U.S. at 618. The documents themselves clearly evidence CBP's retaliation against Ms. Ramos for her expression of opinions that CBP did not like and for her association with individuals CBP was targeting. Such activity is relevant to Plaintiffs' retaliation concerns here, and that alone should be enough to require disclosure of the documents.

*Second*, Defendants cannot specifically identify any sensitive information or law enforcement techniques that would be revealed through disclosure of the documents, nor any specific, non-speculative harm that would occur as a result. Amazingly, Defendants have not even *attempted* to articulate why the Protective Order in this case is insufficient to maintain confidentiality over the information at issue.

*Third*, even if the documents at issue *did* fit within the qualified law-enforcement privilege, the relevance of the information in the documents and Plaintiffs' need for that information overcomes the qualified privilege.

As Defendants concede, the Ninth Circuit has not formally recognized a law

13

JOINT MOT. FOR DETERMINATION
OF PRIVILEGE DISPUTE
Case No. 3:17-cv-02366-BAS-KSC

enforcement privilege. However, this Court has found that "[f]ederal common law recognizes a qualified privilege for official information." *Dousa v. DHS*, No. 19-cv-1255, 2019 WL 6311990, at *2 (S.D. Cal. Nov. 22, 2019) (Crawford, M.J.) (internal quotation marks omitted). "The purpose of [the law enforcement privilege] is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *Perez v. United States*, No. 13-cv-1417, 2016 WL 362508, at *2 (S.D. Cal. Jan. 29, 2016) (internal quotation marks omitted).

The first step in the Court's analysis is to determine whether Defendants have made a "substantial threshold showing that disclosure of specific information would result in specific harm to identified important interests." *Perez*, 2016 WL 362508, at *2. If Defendants do not meet this "substantial threshold showing," the privilege does not apply. If the threshold showing is made, the Court "must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery." *Dousa*, 2019 WL 6311990, at *2.[3]

Here, the declarations submitted by Defendants and their arguments above fail to meet the requisite threshold showing of potential harm for each of the nineteen documents they seek to claw back. Moreover, the relevance of and Plaintiffs' need for the information in the documents at issue substantially outweigh any speculative harm.

**SENTRI Email and Attachments.** The first group of documents at issue consists of an email chain sent on January 11, 2019, by a CBP officer to his superiors in the San Diego Field Office providing "justifications" for the revocation of Nicole

---

[3] Although the Court may consider the factors enumerated in *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D. Pa. 1973), as some courts in this Circuit have in determining the applicability of the law enforcement privilege, *Frankenhauser* is of course not controlling.

14

Ramos's SENTRI enrollment. *See* Gov't Ex. 1. There are sixteen embedded images that were produced as independent attachments to this email. *See* Gov't Exs. 2–17. Defendants assert the law enforcement privilege over the entirety of each document, using the blanket justification that disclosure of this document family "would reveal the types and sources of information that CBP considers relevant for determining eligibility in its Trusted Traveler Programs, thereby undermining CBP's ability to use the same law enforcement techniques and sources to assess future applicants for and participants in those Trusted Traveler Programs." Gov't Ex. 20 ¶ 6.

Regarding the cover email, Defendants' offered justification is plainly insufficient to meet the "substantial threshold showing" required. *See Perez*, 2016 WL 362508, at *2. Notably lacking from the Government's argument above or either of its accompanying declarations is any discussion of the specifics of the email itself. That is because a closer examination reveals that there are no sensitive or novel tactics, investigatory techniques, or information contained in this email that warrant application of the law enforcement privilege.

Specifically, the email discusses the following "types and sources of information" contributing to the justifications for the revocation of Ms. Ramos' SENTRI enrollment: (1) ███████████████████████████████████████████████████████████████████████████████████████; (2) ███████████████████████████████; (3) ████████████████████████████████████████; and (4) ████████████████████████████.

Because the ████████████ is not explained at all, there is no technique, investigatory tactic, or substance revealed there. And it is no secret that the Government uses social media and other public information to investigate individuals—indeed, DHS has publicly and openly discussed its use of social media as an investigatory

tactic.[4]  Nor is it any sort of revelation that CBP inspects travelers, may utilize information found on those travelers, and certainly considers past interactions with travelers as part of its investigatory efforts.  Finally, the Government concedes that the investigation in question concluded when Ms. Ramos's SENTRI enrollment was revoked.  In short, "these documents [do] not reveal any techniques or tactics that are particularly sensitive or confidential, as they are not unlike those traditionally used by law enforcement to obtain information."  *Dousa*, 2019 WL 6311990, at *2; *Doe 1 v. McAleenan*, No. 18-cv-2394, 2019 WL 4235344, at *6-7.  Nor do they reveal any substantively sensitive information, as the majority of it was already public and was in the possession of the targets of investigation to begin with.  *See Doe 1*, 2019 WL 4235344, at *6-7 (finding that "defendants cannot establish that the law enforcement objectives and interests associated with the particular vetting technique used . . . are compromised by disclosure of that information to plaintiffs where the information is already a matter of public record or is already known to plaintiffs").

Defendants have not only failed to articulate any sensitive law enforcement techniques or information that would be revealed by the disclosure of this email, but they also cannot point to any specific harm that could result from its disclosure or that would not be prevented by the Protective Order that is already in place.  Defendants state above that such disclosure would "undermin[e] CBP's ability to use the same law enforcement techniques and sources to assess future applicants for and participants in . . . Trusted Traveler Programs."  That is doubtful and highly speculative.  As discussed above, it is public knowledge that Defendants use these types

---

[4] *See, e.g.*, *Publicly Available Social Media Monitoring and Situational Awareness Initiative*, Dep't of Homeland Sec. (Mar. 25, 2019), *available at* https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp58-socialmedia-march2019.pdf; *DHS's Pilots for Social Media Screening Need Increased Rigor to Ensure Scalability and Long-Term Success*, Dep't of Homeland Sec. (Feb. 27, 2017), *available at* https://www.oig.dhs.gov/sites/default/files/assets/2017/OIG-17-40-Feb17.pdf.

JOINT MOT. FOR DETERMINATION
OF PRIVILEGE DISPUTE
Case No. 3:17-cv-02366-BAS-KSC

1    of sources and investigative techniques, and the investigation in question has already

2    concluded.  Moreover, Defendants produced this email with a "Highly Confiden-

3    tial/Attorney's Eyes Only" designation—so this information would not, in fact, be

4    disclosed to the public (or even Ms. Ramos) at all.  Indeed, the document has been

5    on file under seal with the Clerk of Court, unredacted, for two months (*see* ECF No.

6    433), and the Government cannot offer any actual harm that has resulted.  In sum,

7    there would be no resulting harm from disclosure of this email, and even if there

8    were any potential harm, it would be easily obviated by the Protective Order that

9    already governs the production of documents.  *See United States v. Diaz-Rojas*, No.

10   16-CR-423, 2016 WL 4718432, at *3-4 (S.D. Cal. Sept. 8, 2016) (attorneys' eyes

11   only provision in protective order was sufficient to protect sensitive information cov-

12   ered by the law enforcement privilege); *see also Dousa*, 2019 WL 6311990, at *4

13   (same); *Doe v. Trump*, 329 F.R.D. 262, 275 (W.D. Wash. 2018) (same).

14        Defendants' law enforcement privilege assertions over the attachments to this

15   email are even weaker.  *See See* Gov't Exhs. 2–17.  The sixteen attachments are

16   comprised of ██████████████████████████████████████

17   ███████████████████████████████████████████████

18   ███████████████████████████████████████████████

19   ███████████████████████.  For the same reasons as the cover email, it is even

20   harder to see how any of this could be sensitive, let alone law enforcement privi-

21   leged.  Disclosure of these documents would not reveal (and has not revealed) any

22   particularly novel or sensitive law enforcement techniques, the substance of ongoing

23   investigations, or anything that might hinder future investigations.  *See Dousa*, 2019

24   WL 6311990, at *2; *Doe 1*, 2019 WL 4235344, at *6-7.  And like the cover email,

25   Defendants have failed to articulate any non-speculative harm that could result, or

26   actual harm that has resulted, from the disclosure of these documents, particularly in

27   light of the governing Protective Order.  *See Dousa*, 2019 WL 6311990, at *4; *Doe*,

28   329 F.R.D. at 275; *Diaz-Rojas*, 2016 WL 4718432, at *3-4.

17

JOINT MOT. FOR DETERMINATION
OF PRIVILEGE DISPUTE
Case No. 3:17-cv-02366-BAS-KSC

Even if the Court *did* find that the SENTRI email and attachments were law enforcement privileged, that privilege is qualified, and the Court "must weigh the potential benefits of disclosure against the potential disadvantages." *Dousa*, 2019 WL 6311990, at *2 (internal quotation marks omitted); *see Doe*, 329 F.R.D. at 275. Here, the potential benefits of disclosure clearly outweigh the potential disadvantages, which are minimal at best. Defendants argue that the revocation of Nicole Ramos' SENTRI enrollment is unrelated to the claims and defenses in this litigation, but that is not the case. As Plaintiffs argued in their Opposition to Defendants' Motion to Strike (*see* ECF No. 434), the named Plaintiffs, principals of named Plaintiff Al Otro Lado (such as Ms. Ramos), and putative class members face a reasonable fear that Defendants will retaliate against them for their participation in this lawsuit if Defendants learn their identities. This email and the accompanying attachments are perfect examples—they provide evidence that Ms. Ramos was retaliated against by DHS and CBP and faced adverse consequences for expressing her perfectly legitimate, legal, non-criminal views that were critical of CBP, and for her association with others that were critical of CBP. They are evidence of DHS and CBP's retaliatory animus, are related to issues that are central to this litigation, and are the subject of the aforementioned pending Motion to Strike that is presently before the Court. Thus, even if the Court does find that the SENTRI email and attachments are privileged, Plaintiffs' need for the information outweighs any potential disadvantages of disclosure—particularly in light of the Protective Order—and they should be fully disclosed. *See Dousa*, 2019 WL 6311990, at *3-4; *Doe*, 329 F.R.D. at 275.

**BP Intelligence Report.** The next document that Defendants seek to claw back for redaction is a Border Patrol Field Information Report from January 2019. *See* Gov't Ex. 18. In contrast to Defendants' initial clawback letter on March 31, 2020, by which Defendants sought to claw back this entire document, Defendants now seek to redact only the TECS Alert number and the names under the "Information Gaps" heading on page AOL-DEF-00528703. This is likely because the

18

JOINT MOT. FOR DETERMINATION<br>OF PRIVILEGE DISPUTE<br>Case No. 3:17-cv-02366-BAS-KSC

Court examined this very document in *Dousa* and ordered Defendants to produce it with the TECS Alert number redacted. *See Dousa*, 2019 WL 6311990, at *3-4. While Plaintiffs concede (and did concede on previous meet and confers) that the TECS Alert number falls within the scope of the law enforcement privilege, Plaintiffs disagree that the names of the investigatory targets on this page are privileged.

The Government speculates above and in its declarations that hostile actors (presumably ones with Pacer accounts and an interest in relatively obscure discovery disputes) could read the names in conjunction with the remainder of the information in the Report, identify gaps in CBP's information, and capitalize on that information. Plaintiffs fail to see how Attorneys' Eyes Only access under the Protective Order to the names on this page—targets of an investigation that is no longer ongoing—could possibly allow "hostile actors" to exploit the system. Accordingly, Defendants have failed to meet their "substantial threshold showing" required to justify application of the law enforcement privilege to the names on this page. *See Perez*, 2016 WL 362508, at *2.

But again, even if the Court disagrees and finds that the names on page AOL-DEF-00528703 are covered by the law enforcement privilege, the relevance of this information and Plaintiffs' need for it outweighs any speculative harm that might result. As discussed above, Plaintiffs argue in this action that class members face a reasonable fear that the Government will retaliate against them for their participation in this lawsuit if Defendants learn their identities. That includes ███████████ ███████████—one of the names Defendants seek to redact. The appearance of ████ ███████ name in this Report is highly relevant to the argument that she was retaliated against for expressing her First Amendment views that criticized CBP. As a result, the Court should find that this information should be disclosed. *See Dousa*, 2019 WL 6311990, at *3-4; *Doe*, 329 F.R.D. at 275.

**Region IX EOC PowerPoint.** The final document that Defendants seek to claw back is an Emergency Operations Center Region IX Update from December

JOINT MOT. FOR DETERMINATION
OF PRIVILEGE DISPUTE
Case No. 3:17-cv-02366-BAS-KSC

2018.  Like the BP Intelligence Report, Defendants initially sought to claw back this entire document but now seek to redact only TECS information on page AOL-DEF-00516617 and information related to ███████████ on page AOL-DEF-00516618. Again, Plaintiffs concede that the TECS information falls within the scope of the law enforcement privilege but fail to understand how the remainder of the information Defendants seek to redact could be privileged.  Defendants speculate that "[d]isclosure of this information would alert the individuals of interest, as well as any other individuals involved in the same or similar potential unlawful activity, of the types of actions CBP takes with certain types of sensitive information, which would permit such individuals to take actions to evade law enforcement." This again is highly speculative and does not show any specific harm that could occur or actual harm that has occurred during the time that this document has been filed under seal, or from exposure of an investigation that occurred over a year ago and is no longer ongoing. (Indeed, Ms. Ramos is surely already aware that her SENTRI card was revoked.) Considering the Confidential designation of this document under the Protective Order, Plaintiffs do not see how its disclosure could allow speculative hostile actors to exploit the system when it would be kept under seal anyway.  Again, Defendants have failed to meet their "substantial threshold showing" required to justify application of the law enforcement privilege. *See Perez*, 2016 WL 362508, at *2.

Even if the Court finds that this information is covered by the law enforcement privilege, the relevance of this information and Plaintiffs' need for it outweighs any speculative harm that might result.  As discussed above, the appearance in this document of ███████████████████████████████████████████████████████ is highly relevant to the argument that she may have been retaliated against for expressing her First Amendment views or simply for being a principal of Al Otro Lado, a named Plaintiff in this lawsuit. As a result, the Court should find that this information should be disclosed, as well. *See Dousa*, 2019 WL 6311990, at *3-4; *Doe*, 329 F.R.D. at 275.

JOINT MOT. FOR DETERMINATION
OF PRIVILEGE DISPUTE
Case No. 3:17-cv-02366-BAS-KSC

DATED: June 4, 2020                    Respectfully submitted,

                                       JOSEPH H. HUNT
                                       Assistant Attorney General
                                       Civil Division

                                       WILLIAM C. PEACHEY
                                       Director

                                       KATHERINE J. SHINNERS
                                       Senior Litigation Counsel

                                       */s/ Alexander J. Halaska*
                                       ALEXANDER J. HALASKA
                                       Trial Attorney
                                       United States Department of Justice
                                       Civil Division
                                       Office of Immigration Litigation
                                       District Court Section
                                       P.O. Box 868, Ben Franklin Station
                                       Washington, D.C. 20044
                                       Tel: (202) 307-8704 | Fax: (202) 305-7000
                                       alexander.j.halaska@usdoj.gov

                                       *Counsel for Defendants*

DATED: June 4, 2020                    MAYER BROWN LLP
                                           Matthew H. Marmolejo
                                           Ori Lev
                                           Stephen M. Medlock

                                       SOUTHERN POVERTY LAW CENTER
                                           Melissa Crow
                                           Sarah Rich
                                           Rebecca Cassler

                                       CENTER FOR CONSTITUTIONAL RIGHTS
                                           Baher Azmy
                                           Ghita Schwarz
                                           Angelo Guisado

JOINT MOT. FOR DETERMINATION
OF PRIVILEGE DISPUTE
Case No. 3:17-cv-02366-BAS-KSC

AMERICAN IMMIGRATION COUNCIL
Karolina Walters


By: */s/ Stephen M. Medlock*
Stephen M. Medlock

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

*Al Otro Lado v. Wolf*, No. 17-cv-02366-BAS-KSC (S.D. Cal.)

I certify that I served a copy of this document on the Court and all parties by filing this document with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all counsel of record.


DATED: June 4, 2020              Respectfully submitted,


                                 */s/ Alexander J. Halaska*
                                 ALEXANDER J. HALASKA
                                 Trial Attorney
                                 United States Department of Justice

23