| | |
|---|---|
| JOSEPH H. HUNT | |
| Assistant Attorney General | |
| WILLIAM C. PEACHEY | |
| Director | |
| SAMUEL P. GO | |
| Assistant Director | |
| KATHERINE J. SHINNERS | |
| Senior Litigation Counsel | |
| United States Department of Justice | ALEXANDER J. HALASKA |
| Civil Division | ARI NAZAROV |
| Office of Immigration Litigation – | DHRUMAN Y. SAMPAT |
| District Court Section | Trial Attorneys |
| P.O. Box 868, Ben Franklin Station | |
| Washington, D.C. 20044 | *Counsel for Defendants* |
| Tel: (202) 598-8259 | |
| Fax: (202) 305-7000 | |
| katherine.j.shinners@usdoj.gov | |

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, INC., *et al*, | Case No. 3:17-cv-02366-BAS-KSC |
| | Hon. Karen S. Crawford |
| Plaintiffs, | |
| | **[DISCOVERY MATTER] JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE CONCERNING SCOPE OF 30(b)(6) DEPOSITION** |
| v. | |
| CHAD F. WOLF, Acting Secretary, U.S. DHS, in his official capacity; *et al.*, | |
| Defendants. | [*Declarations of Katherine J. Shinners and Stephen M. Medlock Filed Concurrently*] |

The parties submit this joint motion for the determination of a discovery dispute relating to the scope of Plaintiffs' deposition of the Department of Homeland Security (DHS) under Federal Rule of Civil Procedure 30(b)(6). Defendants seek an order limiting the scope of the deposition or requiring that the information sought be obtained through other means, under Federal Rules of Civil Procedure 26(b)(1), 26(b)(2)(C)(i) and 26(c)(1). The parties, though counsel, met and conferred via telephone regarding the 30(b)(6) deposition of DHS on May 14 and May 21, 2020, but were unable to reach agreement on the issues raised in this motion.

## I. DEFENDANTS' ARGUMENT

Defendants seek a minimal limitation on the scope of the 30(b)(6) deposition of DHS, and only to prevent unnecessary burdens and intrusion into the independent and investigatory functions of DHS's Office of Inspector General (OIG) and its Office for Civil Rights and Civil Liberties (CRCL). In this case, Plaintiffs challenge the practices and policies of DHS component agency U.S. Customs and Border Protection (CBP) with respect its practice of metering aliens without documents sufficient for lawful entry who seek to enter land ports of entry along the U.S.-Mexico border. Defendants have thus made available in discovery numerous documents and other information concerning OIG and CRCL investigations or inspections concerning matters that relate to Plaintiffs' allegations. Despite having already obtained this discovery, and despite the fact that the OIG and CRCL investigations themselves are *not* the subject of Plaintiffs' complaint, Plaintiffs insist that they must take a deposition on the conduct of these investigations as well.

Yet to require a deposition to probe further into final reports of investigations or the conduct of ongoing or open investigations or inspections is of little to no benefit to the case. First, much of the information sought regarding these inquiries is privileged, such as information concerning ongoing and open investigations, as well as any information that would reflect predecisional, interim determinations by investigators or inspectors, regardless of whether the inquiry is closed. And if Plaintiffs seek only to confirm specific, non-privileged facts about the conduct of the investigation, such information could be obtained through other, less burdensome means. Further, to allow questioning that presses the witness to elaborate on OIG's conclusions set forth in final reports could result in inadvertent revelation of privileged information and undermine the investigatory function, chill future investigative work, and hinder independent decisionmaking. For these reasons, the Court should prevent or limit inquiry into these investigations and inspections at the DHS 30(b)(6) deposition and/or order that discovery be had through less burdensome

means under Rules 26(b)(1), 26(b)(2)(C)(i), or 26(c).

*Background.* Plaintiffs served a Rule 30(b)(6) deposition notice on the Department of Homeland Security (DHS) on January 31, 2020 (Notice). Declaration of Katherine J. Shinners ("Shinners Decl.") ¶ 3; Ex. A. That Notice contained 43 separate topics on which Plaintiffs requested testimony from DHS. Ex. B. Four of the 43 topics in the Notice seek testimony concerning investigations, inspections, or other inquiries conducted by DHS offices or components, including DHS OIG and CRCL. *See id.* DHS OIG is an independent oversight entity charged with "identifying and deterring fraud, waste, and abuse" in DHS and its component agencies; it executes its functions through "investigations, audits, inspections, and special reviews of DHS programs and operations." Ex. B, Declaration of Joseph V. Cuffari ("Cuffari Decl.") ¶¶ 5, 6. One of DHS CRCL's functions is the investigation of "complaints from the public alleging violations of civil rights or civil liberties by DHS personnel, programs, or activities." Ex. C at pp. 32, 35-56. The four topics at issue (the "Topics") are: Topic 10, which seeks testimony about an OIG inspection into practices at the Tecate port of entry, which resulted in a final public report; Topic 11, which seeks testimony about *any* other investigation (open or closed) by OIG, CRCL, and/or other entities concerning the allegations in this case; Topic 27, which seeks testimony about an OIG inspection for which a final report has not yet been issued; and Topic 34, which seeks information about "communications between [a] CBP Officer [] and DHS OIG related to metering . . . at the Tecate POE." Ex. A.

*Legal Standards.* The scope of discovery is limited to information that is both "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The proportionality inquiry is based on various factors, including "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The proportionality rule governs all discovery and is intended to provide parties with "efficient access to what is needed to

1  prove a claim or defense, but eliminate unnecessary or wasteful discovery." *Cancino Castellar v. McAleenan*, 2020 WL 1332485, at *4 (Mar. 23, 2020); *Jones v. Hernandez*, 2018 WL 1981207, at *2 (Apr. 27, 2018). The Court may also "limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). The Court may also limit the scope of a deposition by "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters," or that "prescribes a discovery method other than the one selected by the party seeking discovery," upon a showing of good cause and to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

***The Burden of a Deposition of DHS on The Conduct of Investigations, Inspections, or other Inquiries Far Outweighs any Benefit that May be Obtained through the Deposition.*** There is little to no benefit to producing a live witness to testify regarding the overbroad Topics. Preparing a 30(b)(6) witness to testify on those topics thus runs afoul of Rule 26(b)(1) and is "unnecessary, [] over-burdensome, and simply [] not appropriate." *Jones*, 2018 WL 539082, at *3 (determining that a 30(b)(6) deposition was not proportional, and directing other methods of discovery on certain topics), *objections overruled*, 2018 WL 1981207 (Apr. 27, 2018). First, much of the decisionmaking behind OIG or CRCL inquiries will be protected by the deliberative process privilege, which "protect[s] against premature disclosure of proposed agency … decisions" and covers "advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *F.T.C. v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984); *see also Moye, O'Brien, O'Rourke, Hogan & Picketer v. Natl' R.R. Passenger Corp.*, 376 F.3d 1270 (11th Cir. 2004) (applying deliberative-process

4

privilege to IG audit documents); *Humane Soc'y of the U.S. v. Westland/Hallmark Meat Co.*, 2012 WL 12886501, at *6 (C.D. Cal. Sept. 26, 2012) (same); Ex. C.[1] This is particularly true where the inquiry is ongoing, as is the case for the inspection listed in Topic 27 and some investigations in Topic 11. Cuffari Decl. ¶¶ 8, 10. While counsel can instruct a witness not to answer when the question clearly elicits privileged information, in this case questions about facts found during an inquiry may also elicit predecisional deliberations about the meaning of those facts, and thus "drawing the line between questions which seek to elicit facts and questions which will lead to a revelation of [protected information]" will be difficult. *See Fid. Mgmt. & Research Co. v. Actuate Corp.*, 275 F.R.D. 63, 64 (D. Mass. 2011) (denying motion to compel in part and ordering deposition on written questions in lieu of live questioning). And Plaintiffs' own exhibit demonstrates that their questioning tends to press the boundaries of privilege. *See infra pp.* 9-10.

As to potential non-privileged areas of inquiry that Plaintiffs have pointed to—such as the establishment of facts regarding admissibility of documents and the confirmation of particular facts to determine whether all responsive documents have been produced—responses to those questions "can clearly be provided more efficiently and fairly through answers to interrogatories." *Cancino Castellar*, 2020 WL 1332485, at *31. Even five additional interrogatories containing specific inquiries would be much less burdensome than educating a witness to memorize the underlying facts of a variety of different investigations and inspections to try to answer Plaintiffs' questions at a deposition, and will present much less of a danger of intruding on privileged aspects of the agencies' work. *See, e.g.*, *Gen-Probe Inc. Becton, Dickinson & Co.*, 2012 WL 12845593, at *2 (S.D. Cal. Mar. 28, 2012) (declining to compel 30(b)(6) deposition where the topics created an undue preparation

---

[1] Defendants are not formally asserting a privilege, but are pointing to the predecisional and deliberative nature of much of the content of the Topics and the resulting difficulties and burden in conducting this aspect of the deposition.

5

burden and proceeding through interrogatories would lessen the risk of disclosure of privileged material). Indeed, Defendants have already provided discovery that should satisfy many non-privileged areas of inquiry, including responsive, non-privileged documents that were part of the OIG case files for most of the investigations and inspections referenced in the topics, including those referenced in Topics 10 and 27. *See* Shinners Decl. ¶¶ 10-12. It is thus unclear what additional benefit Plaintiffs will obtain from a deposition that could not be more easily satisfied by a small number of additional interrogatories.

***A Deposition on the Proposed Topics Would Cause Undue Harm to the Independent Functions of DHS OIG.*** Moreover, Plaintiffs have declined to limit their deposition inquiry to discrete factual inquiries. It is thus highly likely that DHS OIG will suffer specific harm from the expansive deposition Plaintiffs seek. For example, Plaintiffs do not offer that they will not ask the DHS witness to elaborate on, or provide personal opinions beyond, the OIG findings already made and set forth in final, public reports. *See, e.g.*, Topic 10 (seeking information about the factual findings. Such questions are harmful and burdensome. They may encourage the witness to inadvertently provide information covered by the deliberative process privilege, cause confusion as to the OIG's position, reveal OIG methods and procedures, and generally undermine OIG's independence and its oversight functions. Cuffari Decl. ¶¶ 10-13. Inspectors General "speak through final reports and testimony to Congress" that include "carefully assessed findings and, where appropriate, recommendations." *Id.* ¶ 13. Questioning seeking to go beyond those findings will interfere with that careful decision-making process, potentially seed confusion as to the OIG's position, and thereby undermine its function. These issues are only compounded when Plaintiffs' questions seek information concerning inquiries for which a final report has not yet issued, as with the inspection listed in Topic 27 and some investigations listed in Topic 11. *Id.* ¶ 10. An order precluding inquiry into the Topics at deposition is thus warranted under Rule 26(b)(2) or 26(c).

6

## I. PLAINTIFFS' ARGUMENT

The Federal Rules of Civil Procedure directly address Defendants' concerns and require that the Rule 30(b)(6) deposition of the U.S. Department of Homeland Security go forward. Fed. R. Civ. P. 26(d)(3)(A) allows discovery methods to be "used in any sequence," regardless of the Defendants' preference that discovery occur in another sequence or by other methods.  The only exception to this general rule is when a defendant shows that it is entitled to a protective order.  When seeking a protective order, "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *LF Centennial Ltd. V. Z-Line Designs, Inc*, 2017 WL 1281803, at *2 (S.D. Cal. 2017) (citation omitted).

Defendants fail to carry that burden here.  Defendants seek to prevent Plaintiffs from questioning a DHS-designated Rule 30(b)(6) witness about internal investigations related to the very conduct challenged in this case—turning back asylum seekers at ports of entry. Defendants do not dispute that the Topics 10, 22, 27, and 34 in Plaintiffs' 30(b)(6) Deposition Notice are relevant. Shinners Decl., Ex. A. Instead, they attempt to limit Plaintiffs to written discovery on these relevant topics and bar whole categories of non-privileged testimony, based on purported concerns about burden.

But Defendants have provided no evidence of *undue* burden apart from the fact that properly preparing a Rule 30(b)(6) deponent is, as a general matter, burdensome and speculation that Plaintiffs might ask questions that call for privileged testimony.  Neither of these arguments hold water.  *First*, "courts have held that identifying the generalized burden of being deposed . . . is insufficient grounds for precluding a deposition." *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 334 (D. Nev. 2016).  *Second*, the remedy for

a question that seeks privileged information is objecting to the question and instructing the witness to not answer the question or to limit their answer so that the answer does not contain privileged information. *See* Fed. R. Civ. P. 30(c)(2). *Third*, Defendants' proposal to provide written interrogatory responses is entirely unworkable because it will only result in highly-caveated answers written by attorneys, not the straight-forward answers that deposition fact-finding generates.

### A. All 30(b)(6) Depositions Are Burdensome; Defendants Have Not Shown Why This One Is *Unduly* Burdensome

Properly preparing a Rule 30(b)(6) deponent to testify can be a burdensome task. However, it is a process that occurs in nearly all civil litigation. What Defendants have not explained is *why this specific deposition* is unduly burdensome. Defendants state that the deposition may occasionally involve questions that arguably seek the disclosure of privileged information. But that occurs in nearly every deposition. Defendants also speculate that five undrafted interrogatories will be less burdensome than answering deposition questions. Of course. Lawyers drafting answers to five interrogatories will always be less burdensome than a witness answering dozens of questions.

But these arguments miss the point. "The need to adequately prepare a Rule 30(b)(6) designee does not, on its own, create [an] undue burden for [Defendants]." *Ellis v. Corizon, Inc.*, 2018 WL 1865158, at *5 (D. Idaho 2018). In fact, "the burden upon the responding party, to prepare a knowledgeable Rule 30(b)(6) witness, may be an onerous one, but we are not aware of any less onerous means of assuring that the position of a[n] [organization], that is involved in litigation, can be fully and fairly explored." *Prokosh v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 639 (D. Minn. 2000)).

Defendants have never provided this Court with "specific facts which indicate the nature and extent of the burden." *Cancino Castellar v. McAleenan*, 2020

8

WL 1332485, at *6 (S.D. Cal. 2020) (citation omitted). And the "conclusory or speculative statements of harm, inconvenience, or expenses" that they rely upon "are plainly insufficient." *Id.* (citation omitted).  The requisite specific facts identifying a burden are entirely missing from Defendants' motion papers.  Instead, they present a chain of hypothetical concerns about privilege that *might* apply to questions that *might* be asked and speculate that these unasked deposition questions *might* be less burdensome than unpropounded interrogatories.  These speculative concerns are not what Rule 26(c) was meant to address. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." (quoting *Cipollone v. Ligett Grp., Inc.,* 785 F.2d 1108, 1121 (3d Cir. 1986))).  Defendants' request for a protective order should be denied.

### B. If A Question Calls For Privileged Information, Defendants Can Object To It.  If An Answer Implicates the Independent Functions of OIG, It Can Be Sealed.

The bulk of Defendants' argument is that Plaintiffs *could* ask questions that *may* touch on topics protected by the deliberative process privilege.  This concern is overblown, premature, and, in any event, no basis for a protective order.  If Defendants feel that Plaintiffs are encroaching upon the deliberative process privilege, or any other privilege, they can object to the question and instruct the witness not to answer the question or to limit her response to the question.  Fed. R. Civ. P. 30(c)(2). Remarkably, nowhere in their argument do Defendants acknowledge this ready-made remedy that is available to them, nor do they explain why it is insufficient.  And it is not as though Defendants are somehow incapable of asserting privilege objections.  During the recent deposition of Todd Hoffman, government counsel instructed Mr. Hoffman to not answer or to limit his answer to a remarkable 25 questions, *see* Ex. 1 to Medlock Decl. at 58:5-11, 59:15-19, 60:6-12, 61:10-17,

9

61:21-62:3, 62:17-22, 63:19-64:7, 65:14-66:2, 66:11-67:7, 67:13-68:3, 68:9-16, 75:1-11, 75:21-76:6, 84:3-11, 84:19-85:6, 88:16-89:5, 153:21-154:4, 186:6-18, 187:5-17, 200:5-201:1, 201:3-12, 240:16-241:1, 244:14-21, 245:2-9, 245:20-246:5, 335:22-336:13. Defendants have not explained why they cannot similarly interpose objections during the 30(b)(6) deposition of DHS.[2]

Likewise, if Defendants are concerned that testimony will implicate OIG's independent functions, they can designate the testimony Highly Confidential under the Court's protective order. *See* Dkt. 276.

### C. Five Interrogatories Are No Substitute for a 30(b)(6) Deposition

Defendants make a half-hearted argument that Plaintiffs can learn just as much through five interrogatory answers as they would through a Rule 30(b)(6) deposition. But the federal rules do not permit a party to "elect to supply the answers [to 30(b)(6) topics] in a written response to an interrogatory." *Veolia Water N. Am. Operations Servs., LLC v. SSAB Ala., Inc.*, 2018 WL 9597052, at *2 (S.D. Ala. 2018). And Defendants have not provided any basis for circumventing the general rule that "a litigant must appear for deposition notwithstanding the availability of written discovery on the same topics." *Colony Ins. Co. v. Sanchez*, 2019 WL 3241160, at *3 (D. Nev. 2019) (citation omitted).

Defendants' proposal to answer five interrogatories in place of testimony is

---

[2] Defendants' citation to *Fid. Mgmt. & Res. Co. v. Acuate Corp.*, 275 F.R.D. 63 (D. Mass. 2011) is inapposite. In that case, a party sought to discover the factual basis for the "defendant's damages claims and asserted affirmative defenses." *Id.* at 63. The district court in that case ruled that because affirmative defenses are "drafted by attorneys . . . it [is] extremely difficult to distinguish between" questions seeking facts and questions seeking attorney work product. *Id.* at 64. No such concern is present here. Plaintiffs are not seeking testimony regarding documents that were drafted by litigation counsel; instead, they are seeking testimony concerning the facts of OIG investigations into metering and turnbacks at ports of entry.

10

1 inadequate; "[t]he two forms [of discovery] are not equivalent." *FDIC v. Hutchins*,
2 2013 WL 12109446, at *3 (N.D. Ga. 2013) (citation omitted). Interrogatory re-
3 sponses "are typically drafted by lawyers and by their nature are self-serving."
4 *Reynolds v. Jamison*, 488 F.3d 756, 769 (7th Cir. 2007) (Rovner, J., concurring in
5 part). Parties also need not "accept their opponent's statement that all relevant evi-
6 dence has been produced [or will be produced] via a given discovery vehicle—they
7 are entitled to test this assertion in questioning witnesses during depositions." *Mil-*
8 *waukee Elec. Tool Corp. v. Chevron N. Am., Inc.*, 2015 WL 4393896, at *5 (E.D.
9 Wisc. 2015). District courts routinely allow plaintiffs to take 30(b)(6) depositions
10 despite arguments that interrogatories would be more efficient or that noticed dep-
11 osition topics overlap with written discovery requests. *See, e.g.*, *Autoridad De Car-*
12 *reteras Y Transportacion v. Transcore Atl., Inc.*, 319 F.R.D. 422, 438 n.2 (D.P.R.
13 2016) (collecting cases).

14 A comparison with *Cancino Castellar v. McAleenan*, 2020 WL 1322485
15 (S.D. Cal. 2020), demonstrates why deposition testimony is proper. In that case, the
16 court permitted a 30(b)(6) deposition to go forward on readily ascertainable topics
17 such as policies, practices, and procedures regarding ICE detention of arriving non-
18 citizens. *See id.* at *15-23, 30-31. However, three proposed topics were "not suffi-
19 ciently specific, and as a result, no agency witness could likely testify to the re-
20 quested information." On these vague topics, which were broadly related to agen-
21 cies' expenditures or resources, the court concluded interrogatories would be both
22 more efficient *and more fair*. *Id.* at *18, 22, 31.

23 In contrast, Defendants do not argue that Plaintiffs' 30(b)(6) topics here con-
24 tain such ambiguities. Plaintiffs seek testimony concerning DHS's independent
25 knowledge of discrete factual issues related to OIG and CRCL investigations. These
26 topics are proper, and interrogatories are no substitute for them.

27
28

11

1  Dated: June 18, 2020

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director

SAMUEL P. GO
Assistant Director

*/s/ Katherine J. Shinners*
KATHERINE J. SHINNERS
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259 | Fax: (202) 305-7000
katherine.j.shinners@usdoj.gov

ALEXANDER J. HALASKA
ARI NAZAROV
DHRUMAN Y. SAMPAT
Trial Attorneys

*Counsel for Defendants*


MAYER BROWN LLP
    Matthew H. Marmolejo
    Ori Lev
    Stephen M. Medlock

SOUTHERN POVERTY LAW CENTER
    Melissa Crow
    Sarah Rich
    Rebecca Cassler

CENTER FOR CONSTITUTIONAL RIGHTS
    Baher Azmy
    Ghita Schwarz
    Angelo Guisado

AMERICAN IMMIGRATION COUNCIL
    Karolina Walters

By: */s/ Stephen M. Medlock*
    Stephen M. Medlock

*Attorneys for Plaintiffs*