# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, *et al.*,<br>    *Plaintiffs*,<br><br>v.<br><br>Chad Wolf, *et al.*,<br>    *Defendants*. | No. 3:17-cv-02366-BAS-KSC |

## DECLARATION OF JOSEPH V. CUFFARI

I, Joseph V. Cuffari, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows, relating to the above-captioned matter:

1. I am the Inspector General of the Department of Homeland Security, and head of the Office of Inspector General (DHS OIG). I was nominated by the President to serve in this capacity and confirmed by the Senate as Inspector General of DHS on July 25, 2019. I have had a long career in government oversight, having served in a variety of leadership positions with the Air Force Office of Special Investigations, the Department of Defense Office of the Inspector General, and the Department of Justice Office of the Inspector General prior to my appointment to DHS OIG. As the Inspector General of the Department of Homeland Security, I am responsible for overseeing all of DHS OIG's program offices and the execution of DHS OIG's oversight mission.

2. I make this declaration for the purpose of explaining the harm that would befall DHS OIG should DHS OIG be required to submit to a deposition under Fed. R. Civ. P. 30(b)(6)

concerning the conduct of specific investigations, inspections, audits, or reviews conducted by DHS OIG. To require an oral deposition on these topics would jeopardize DHS OIG's ability to conduct independent, objective oversight work and impair its ability to identify possible fraud, waste, and abuse through investigation, audit, and inspection of the Department of Homeland Security (the Department) and its component agencies. As Inspector General of the Department, I am head of OIG, and I am responsible for both DHS OIG's oversight work and its mission support work. Accordingly, I am able to evaluate what equities and privileges are at issue as they relate to OIG work product and underlying materials developed during the course of completing mission work.

3. DHS OIG is one of 75 Statutory Inspectors General across the federal government. Inspectors General are unique among federal officers, as they are charged with independent and unbiased oversight of each of their respective departments or agencies. This work is done pursuant to the authority of the Inspector General Act of 1978 (IG Act), as amended. *See* 5 U.S.C. app. §§ 1-13. Congress is a key stakeholder, helping to guide the work of Inspectors General in identifying fraud, waste and abuse of taxpayer dollars and other government resources.

4. Under the IG Act, Inspectors General have a degree of discretion and autonomy that other executive branch officials do not have. Specifically, IGs may: obtain access to any agency record; inspect, audit, and evaluate any agency program without the consent of the agency head; testify before Congress without clearing their remarks with the Administration; hire and fire staff; obtain legal advice from counsel independent of agency counsel; publish reports without clearing them through agency leadership; and manage their own

organization's budgets. These unique authorities allow Inspectors General to complete their mission work in an independent and impartial manner.

5. Established by Congress in 2002, DHS OIG is charged with independent oversight of the Department by identifying and deterring fraud, waste, and abuse in the Department and its component agencies. DHS OIG, as with all Inspectors General, is necessarily independent from the Department in order to conduct its mission work in an unbiased manner.

6. DHS OIG performs its oversight of the Department and its component agencies through investigations, audits, inspections, and special reviews of DHS programs and operations. DHS OIG provides oversight in areas as requested by congressional stakeholders and through notifications received from its Complaint Hotline, where members of the general public, contractors, and federal employees may submit complaints related to suspected fraud, waste, and abuse. In addition to input from key stakeholders, DHS OIG relies on these complaints to help guide what oversight work may be needed.

7. Because securing and managing the borders of the United States is one of the core mission areas of the Department, it is also a focus of DHS OIG oversight work. Accordingly, DHS OIG equities related to complaints, investigations, inspections, and special reviews were implicated by Plaintiffs' requests for production of documents and interrogatories as part of discovery in this matter.

8. On January 31, 2020, Plaintiffs served DHS a 30(b)(6) Notice of Deposition (Notice). The Notice included 43 topics, four of which seek information specific to DHS OIG investigations, inspections, and special reviews. Topic 10 seeks information related to a published DHS OIG report, OIG-19-65, "Investigation of Alleged Violations of Immigration Laws at the Tecate, California Port of Entry by U.S. Customs and Border

Protection Personnel." Topic 11 seeks information about investigations and complaints undertaken by DHS OIG and/or other Department offices, including open and/or ongoing investigations. Topic 27 seeks information related to an inspection conducted by OIG's Office of Special Reviews and Evaluations given the project number 18-122, which is an open and ongoing matter for which a report has not yet been issued. Topic 34 seeks information relating to communications with a specific DHS OIG witness and report OIG-19-65.

9. Through the course of responding to Plaintiffs' numerous requests for production, DHS OIG responded to each topic outlined in the Notice, producing documents including finalized reports, complaints, reports of investigation, and underlying memoranda related to both inspection work and investigation work. To engage in oral testimony as it relates to the contents of these documents would be disproportionate to the needs of this case, as each of the documents provided stands on its own.

10. For any document gathered from the Department or a component agency during the course of DHS OIG mission work, DHS OIG is unable to speak to the facts underlying the individual document as it did not create the document. Any conclusions that OIG made from the aggregation of documents collected are presented in the final public report or final Report of Investigation, if such a report has been issued. Any discussion of why certain documents were relied upon or not in the final report, as the case may be, would interfere with DHS OIG's decision-making process and encroach on DHS OIG's deliberative process privilege. Further, questions regarding the conduct of investigations or inspections for which no final report has been issued would intrude on the deliberative process privilege, as no final DHS OIG decision related to findings or recommendations has been made.

11. Moreover, even if the information sought were not covered by the deliberative process privilege, to require deposition testimony about the conduct of investigations or inspections would be detrimental to DHS OIG, because disclosure of OIG's processes would impair its investigative or inspection functions and hinder DHS OIG's ability to complete its mission work in an impartial and independent manner. Indeed, providing deposition testimony related to DHS OIG's conduct could have a chilling effect on Department employees' cooperation in future DHS OIG investigations, audits, inspections, and other oversight activities.

12. Lastly, the investigators, inspectors, investigative counsel, and auditors who comprise the DHS OIG workforce would not be able to work independently, without undue influence or interruption, if the methods and decisions underlying their work were to become exposed through deposition testimony. Were DHS OIG to discuss the decision-making process underpinning its mission work, this would tend to reveal to the Department and its component agencies the methods and procedures that DHS OIG uses to examine, analyze, and ultimately find fraud, waste, and abuse. Such knowledge could be used to circumvent future oversight efforts and undermine DHS OIG's mission.

13. Inspectors General speak through final reports and testimony to Congress. Because these final reports and testimony include both carefully assessed findings and, where appropriate, recommendations, they embody the full oversight function of Inspectors General. Confusion is bound to arise if an OIG employee testifies as to observations and conclusions not contained in a report or congressional testimony. As Inspectors General are not compliance bodies and do not manage agency programs, the findings and recommendations contained in reports and congressional testimony represent the sum total of a final DHS OIG action. If

subject to deposition testimony on the processes underlying its mission work, DHS OIG's ability to perform its mission in an impartial manner will be irreparably harmed.

14. DHS OIG's status as an independent, impartial oversight body is predicated upon the mission work of DHS OIG proceeding without actual or the appearance of undue external influences that could affect its objectivity. To produce a witness to discuss the underpinnings of DHS OIG mission work would undermine our ability to continue to provide valuable unbiased oversight on behalf of our key stakeholders. For all of the foregoing reasons, on behalf of DHS OIG, I am submitting this declaration describing the harm that would ensue should DHS OIG be required to provide oral testimony concerning OIG's work.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 29th day of May, 2020.

*[signature]*

Joseph V. Cuffari
Inspector General
Department of Homeland Security