**MAYER BROWN LLP**
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:   +1.202.263.3000
Facsimile:   +1.202.263.3300

**SOUTHERN POVERTY LAW CENTER**
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Chad F. Wolf,[1] *et al.*, <br><br> Defendants. | Case No.: 17-cv-02366-BAS-KSC <br><br> **JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING REQUESTS FOR PRODUCTION 220 AND 222** <br><br> *DECLARATION OF STEPHEN M. MEDLOCK FILED CONCURRENTLY* |

---

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
   Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
   *bazmy@ccrjustice.org*
   Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
   *gschwarz@ccrjustice.org*
   Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
   *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
   Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
   *sarah.rich@splcenter.org*
   Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
   *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
   Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
   *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

## REQUESTS FOR PRODUCTION 220 AND 222

**Plaintiffs' Request for Production 220:** Documents sufficient to show the categories of documents, electronically-stored information, and things that Randy Howe was instructed to preserve in connection with this litigation.

**Defendants' Objection to RFP No. 220:** Defendants object to this Request to the extent that it seeks documents or information protected from disclosure by the attorney-client privilege, the attorney work-product protection, the deliberative process privilege, the executive privilege, the investigatory files privilege, the law enforcement privilege, or any other applicable privilege or protection from disclosure. In particular, Defendants object to this Request to the extent it seeks production of any litigation hold memos in this case or other communications with counsel relating to legal advice and the conduct of litigation.

Defendants further object to this Request as cumulative and duplicative of discovery already obtained. Defendants have already provided, both formally, and informally, information about the date Randy Howe was instructed to preserve documents and electronically-stored information relevant to the claims and defenses in this litigation.

Defendants also object to this Request as outside the proper scope of discovery because it seeks discovery about discovery, and does not seek information relevant to the claims and defenses in this case.

Defendants further object to this Request in accordance with General Objections 1, 3, 4, 5, and 6, and Objections to Definition No. 7.

**Defendants' Response to RFP No. 220:** In accordance with and subject to their Objections, Defendants respond as follows: Defendants will not search for or produce documents in response to this Request.

**Plaintiffs' Request for Production 222:** All documents providing guidance to DHS officers or employees concerning the implementation of the Court's November 19, 2019 preliminary injunction order.

**Defendants' Objections to RFP 222:** Defendants object to this Request to the extent it seeks documents or information protected from disclosure by the attorney-client privilege, the attorney work-product protection, the deliberative process privilege, the law enforcement privilege, the executive privilege, the investigatory files privilege, or any other applicable privilege or protection from disclosure. In particular, Defendants object to this Request as seeking work product or attorney-client-privileged communications that were developed for the purpose of compliance with the Court's preliminary injunction order. Under the terms of the ESI Order, Defendants are not required to log such communications or documents.

Defendants object to this Request as irrelevant to the claims and defenses in this case, to the extent it seeks guidance concerning the credible fear interview process. Implementation of the preliminary injunction order, which relates to the application of the third-country transit rule IFR during the credible fear interview process, and not the initial processing of aliens without documents sufficient for lawful entry at land ports of entry to the United States, is not conducted by CBP Officers at ports of entry and is thus not relevant to the claims and defenses in this case.

Defendants object to this Request as irrelevant and not proportional to the needs of the case because Plaintiffs have made no showing of a need for documents assessing implementation of, or compliance with, the preliminary injunction order.

Defendants further object to this Request in accordance with General Objections Nos. 1, 3, 4, 5, and 6 and Objections to Definitions Nos. 7 and 8.

**Defendants' Response to RFP 222:** In accordance with their objections, Defendants respond as follows: Defendants will not search for or produce documents in response to this Request.

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

## PLAINTIFFS' ARGUMENT

**I.   Request for Production 220**

Defendants have a duty to preserve information relevant to the claims and defenses in the litigation from the moment that they reasonably anticipate litigation. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003). Unfortunately, one of Defendants' key custodians, Randy Howe, the former Executive Director of U.S. Customs and Border Protection ("CBP's") Office of Field Operations ("OFO") did not do so. Mr. Howe is one of the highest level career employees at OFO who had direct involvement in the decision to turn back asylum seekers presenting themselves at ports of entry on the U.S.-Mexico border.  But, although this case was filed on July 12, 2017, Mr. Howe did not receive a litigation hold until December 20, 2018.  *See infra* at 9.  Defendants have not explained why they waited months to send Mr. Howe a litigation hold.[2]

Defendants admit that Mr. Howe failed to retain documents relevant to the claims and defenses in this litigation. On January 8, 2020 at 9:17pm ET, approximately 12 hours before Mr. Howe's deposition was scheduled to begin, Defendants sent a letter to Plaintiffs admitting that Mr. Howe "has not retained personal, hard-copy notes that he took at daily internal operations meetings" from at least October 2017 to January 2020.  Medlock Decl. ¶ 10.  Specifically, Mr. Howe attended a daily 8:15am operations meeting with the senior-most officials at OFO. Ex. 1 at 19:20-20:14.  Mr. Howe would come to this 20-30 minute meeting with a piece of paper containing bullet points about events that had happened in the prior 24 hours. *Id.* at 20:15-21:11.  Mr. Howe took notes on what was discussed during the 8:15am meeting on that same piece of paper. *Id.* at 22:5-13.  These notes included information about the operation of ports of entry on the U.S.-Mexico border

---

[2] Curiously, Defendants crow about the fact that Mr. Howe became the Executive Director of Field Operations in October 2017. *See infra* at 9.  But Defendants do not explain why they waited for over a year after Mr. Howe took that position to send him a litigation hold notice. *See id.*

JOINT MOTION FOR DETERMINATION OF
DISCOVERY DISPUTE

and may have included information about migrant caravans and the process of inspecting asylum seekers at ports of entry on the U.S.-Mexico border. *Id.* at 22:14-23:15. After taking notes about what was said at the 8:15am meeting, Mr. Howe took his notes to a 9am daily meeting with his direct reports. *Id.* at 21:12-21. After that 9am meeting, Mr. Howe routinely threw his notes into a shred bin. *Id.* Defendants have not produced a single copy of Mr. Howe's notes from any of the 8:15am meetings.

Defendants try to insinuate that Mr. Howe's notes from these meetings are meaningless and duplicative. Not so. Mr. Howe testified that he used these notes to jog his memory about topics that were discussed during high level meetings that he attended. Ex. 1 at 20:6-22:13. When Mr. Howe destroyed these notes, Plaintiffs were deprived of the ability to refresh Mr. Howe's recollection about what was discussed during these meetings.[3]

Although litigation hold notices are normally privileged, when a party makes a "preliminary showing of spoliation," that privilege gives way and the party is entitled to discover relevant litigation hold notices. *See, e.g.*, *City of Colton v. Am. Promotional Events, Inc.*, 2011 U.S. Dist. LEXIS 163984, at *232 (C.D. Cal. 2011); *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 482 (D. Del. 2012) (collecting cases showing that "there has been a growing trend among courts to find the attorney-client privilege is lost when spoliation has occurred"). A court need not find "'actual' spoliation before ordering production of litigation hold letters." *City of Colton*, 2011 U.S. Dist. LEXIS 164984, at *234-35. Therefore, events such as an "extraordinary delay in issuing litigation hold letters" will suffice

---

[3] Defendants also insinuate that the discussions from these high-level meetings may be memorialized in emails. *See infra* at 10. That is incorrect. Mr. Howe testified that sometimes he may have "follow[ed]-up" with Todd Owen via email. Ex. 1 at 28:21-29:3. He later explained that the best evidence of what occurred at those meetings were his now-destroyed notes. *Id.* at 32:8-12 ("Q. Sure. Is there any other evidence out there . . . of what you actually talked about at these 8:15 meetings other than the bullet points that you wrote down? A. No.").

for requiring the production of those litigation holds. *Id.* at *235.

Here, Plaintiffs have more than a preliminary showing of spoliation. They have admissions that it took Defendants months to issue a litigation hold and an admission that a key custodian destroyed relevant notes of high-level meetings occurring both before and after Defendants sent the litigation hold letter to him. Therefore, Defendants should be compelled to produce documents responsive to Request for Production 220. *See City of Colton*, 2011 U.S. Dist. LEXIS 164984, at *237-38 (requiring Government to produce litigation hold notices based on lengthy delay in issuing litigation hold notice).

## II.     Request for Production 222

Plaintiffs seek documents concerning Defendants' compliance with the Court's preliminary injunction because they have uncovered evidence that Immigration Judges have failed to comply with Judge Bashant's November 19, 2019 preliminary injunction order. Despite raising concerns regarding noncompliance with Defendants in late April, Defendants refused to share any relevant guidance with Plaintiffs and only agreed to provide non-specified, additional guidance to the judge at issue. Medlock Decl. ¶ 11. Following these assurances, Plaintiffs identified additional instances of noncompliance from the same court. *See, e.g.*, Medlock Decl. ¶ 12; Ex. 2 at 3; Ex. 3 at 3. Despite the Ninth Circuit's lifting of the emergency, administrative stay of the preliminary injunction, motions to reopen cases where the immigration judge had denied asylum in the first instance based on the application of the Asylum Transit Ban at issue in the injunction, 8 C.F.R. 1208.13(c)(4), were denied because the appeal of the preliminary injunction order has not yet been decided. *See* Ex. 2 at 3-4; Ex. 3 at 3-4. Specifically, the court concluded that the "respondent cannot show a material change in law" and the state of the law is "unsettled." Ex. 2 at 4; Ex. 3 at 4. After alerting Defendants of these additional cases, Plaintiffs learned that the cases had been reopened *sua sponte*. *See, e.g.*, Ex. 4 at 3 (citing only "further consideration" as the basis for reopening and granting

asylum). Then, on June 5, 2020, Defendants sent an email to Plaintiffs providing the dates on which they supposedly provided guidance regarding compliance with Judge Bashant's order, but further refused to produce any documents evidencing that guidance. Medlock Decl. at ¶ 12.

Courts have inherent authority to monitor and enforce their prior orders. *See Shillitani v. United States*, 384 U.S. 364, 370 (1966). That authority extends to allowing post-judgment discovery to aid the court in determining whether a party has complied with the order. *See Richmark Corp. v. Timber Falling Consultants, Inc.*, 937 F.2d 1444, 1449 (9th Cir 1991). A district court "should give careful attention to a request for discovery to establish noncompliance with one of its judgments." *Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008). When considering whether to allow this sort of compliance discovery, "the kind and amount of evidence of noncompliance required to justify discovery is, necessarily, considerably less than the need to show actual noncompliance." *Id.* at 1034. Indeed, "[v]ery little proof of noncompliance" is necessary. *Rutherford v. Baca*, 2009 U.S. Dist. LEXIS 134084, at *6 (C.D. Cal. 2009).

Here, Plaintiffs have presented discrete and specific evidence of non-compliance with Judge Bashant's November 19, 2019 preliminary injunction in the form of Immigration Judge decisions. *See* Ex. 2 at 3-4; Ex. 3 at 3-4. These instances of noncompliance raise legitimate questions as to the sufficiency of the steps Defendants have taken to ensure that all provisional class members obtain the benefit of the preliminary injunction. Discovery is the only reliable way to answer these questions. *See W. Org. of Res. Councils v. Bernhardt*, 2020 U.S. Dist. LEXIS 8603, at *7 (D. Mont. 2020) ("While Defendants may ultimately be able to show there has not been a violation of the injunction, they have not persuasively argued that no further inquiry is warranted.").

Moreover, Defendants' June 5 email identifies the guidance issued by various components of DHS and, with respect to most of the guidance, briefly describes it

without asserting any privilege. Defendants have thus waived any privilege claim with respect to such guidance. Because a claim of privilege "contravene[s] the fundamental principle that the public has a right to every man's evidence," *Trammel v. United States*, 445 U.S. 40, 50 (1980) (internal alterations and quotation marks omitted), privilege claims construed narrowly, *see, e.g.*, *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002). In particular, courts recognize several ways by which parties may waive a claim of privilege. *See, e.g.*, *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010). Importantly here, voluntary disclosure of privilege information to a third-party "will generally destroy the privilege." *Pac . Pictures Corp. v. United States*, 679 F.3d 1121, 1127 (9th Cir. 2012). In particular, "the attorney-client privilege is waived upon the voluntary disclosure of protected information by a client, or by an attorney at the behest of a client." *United States v. Reyes*, 239 F.R.D. 591, 602 (N.D. Cal. 2006). Thus, "once the proverbial cat is out of the bag, . . . the communications are no longer worthy of protection." *Dukes v. Wal-Mart Stores, Inc.*, 2013 U.S. Dist. LEXIS 42740, at *22 (N.D. Cal. 2013).[4]

Here, the cat is definitely out of the bag. In an email sent on June 5, 2020, counsel for Defendants stated: "On December 2, 2019, CBP's Office of Field Operations (OFO) instructed the Directors of Field Operations that when CBP officers encounter an alien who makes an affirmative claim to have been metered or subjected to queue management prior to July 16, 2019 or who requests to be recognized as an *Al Otro Lado* class member, CBP officers will annotate on the I-213 that the alien is a potential *Al Otro Lado* class member. The instruction is applicable to all ports of entry along the U.S.-Mexico border." Medlock Decl. ¶ 12. By revealing the date of a communication and its contents, Defense counsel voluntarily waived any claim of privilege as to the underlying document. This document and any responsive materials related to it should be produced.

---

[4] The party asserting the privilege bears the burden to prove that it has not been waived. *Weil v. Inv./Indicators, Res. & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).

# DEFENDANTS' ARGUMENT

## I.     Request for Production 220

In Request for Production 220, Plaintiffs admittedly seek a privileged litigation hold notice, drafted by counsel for U.S. Customs and Border Protection (CBP), which contains legal guidance with respect to preservation obligations as well as the mental impressions of counsel. *See supra* p. 4; *City of Colton v. Am. Promotional Events, Inc.*, 2011 WL 13223880, at *2 (C.D. Cal. Nov. 22, 2011); *Gibson v. Ford Motor Co.*, 510 F. Supp. 2d 1116, 1123-24 (N.D. Ga. 2004); *Muro v. Target Corp.*, 250 F.R.D. 350, 360 (N.D. Ill. 2007), *aff'd*, 580 F.3d 485 (7th Cir. 2009). Plaintiffs have not met their burden to show spoliation of material evidence by CBP official Randy Howe that would cause the privilege to yield in favor of production of the litigation hold notice that Mr. Howe received. *EPAC Techs., Inc. v. Thomas Nelson, Inc.*, 2015 WL 13729725, at *6 (M.D. Tenn. Dec. 1, 2015) ("Speculative claims do not satisfy the party's obligation of making a preliminary showing of spoliation."); *Mcdevitt v. Verizon Servs. Corp.*, 2016 WL 1072903, at *2 (E.D. Pa. Feb. 22, 2016) (noting that the requesting party must produce evidence to establish spoliation), *report and recommendation adopted,* No. CV 14-4125, 2016 WL 1056702 (E.D. Pa. Mar. 17, 2016). Further, Plaintiffs have already had the opportunity to depose Mr. Howe about the litigation hold notice, his document retention practices, and the reasons that he did not retain his non-substantive notes.

Litigation hold notices warrant protection from disclosure to avoid the chilling effect disclosure could have on advice of counsel and on effective preservation instructions. "These instructions are often, if not always, drafted by counsel, involve their work product, [and] are often overly inclusive." *Gibson v. Ford Motor Co.*, 510 F. Supp. 2d 1116, 1123 (N.D. Ga. 2004). "[C]ompelled production [of a litigation hold] could dissuade other businesses from issuing such instructions in the event of litigation." *Id.* Indeed, Plaintiffs do not dispute that the litigation hold at issue is covered by the attorney-client privilege and the work product doctrine. Nor have

they made a sufficient showing for that privilege to give way with respect to the litigation hold received by Mr. Howe.

Plaintiffs filed this lawsuit in July 2017. Complaint (ECF No. 1) ¶ 2 (July 12, 2017). At the time the original complaint was filed, Mr. Howe was serving as the Director of Field Operations for the Preclearance Office. Shinners Decl. Ex. A, December 17, 2019, Declaration of Randy Howe ("Howe Decl.") (ECF No. 376-2) ¶ 1. "Preclearance" involves "stationing CBP personnel at designated foreign airports to inspect travelers prior to boarding U.S.-bound flights." *CBP Preclearance*, https://www.cbp.gov/border-security/ports-entry/operations/preclearance#:~:text=Preclearance%20Overview.%20U.S.%20Customs%20and%20Border%20Protection%20%28CBP%29,immigration%2C%20customs%2C%20and%20agriculture%20inspections%20of%20international%20air; (last modified May 26, 2020); *see also* Shinners Decl. Ex. B, Deposition of Randy Howe ("Howe Dep.") 67:5-10. Mr. Howe then became the Executive Director of Operations for CBP's Office of Field Operations (OFO) in October 2017. Howe Decl. ¶ 1. In October and November 2018, Plaintiffs amended their complaint. *See* First Am. Compl. (ECF No. 176); Second Am. Compl. (ECF No. 189). Mr. Howe received a litigation hold notice on December 20, 2018. Shinners Decl. ¶ 8.[5]

As Plaintiffs acknowledge, upon learning that Mr. Howe had not preserved certain notes from daily internal operations meetings, Defendants notified Plaintiffs of that fact. *See supra* p. 3. Plaintiffs then had the opportunity to depose Mr. Howe about his notes and notetaking practices, preservation instructions he received, and his other document retention practices. As Mr. Howe explained, he did receive instructions to preserve documents that were relevant to this matter. Howe Dep. 25:5-10. He also explained that the notes he took to and at the daily operations meetings with Executive Assistant Commissioner Todd Owen were not

---

[5] Plaintiffs do not, and cannot, argue that Defendants failed to issue litigation holds at the inception of this litigation. *See* Shinners Decl. ¶ 9 (citing privilege log).

"substantive." Howe Dep. 26:1, 6. These notes were not meeting minutes or other detailed accounts. Instead, they were "little notes" Mr. Howe wrote to himself, consisting of "basic words to trigger [his mind] on events that happened in the last 24 hours" to brief Mr. Owen, or "a little note just to trigger [his] memory" as to follow-ups requested by Mr. Owen. Howe Dep. 20:6-22:13. The duty to preserve of course extends only to relevant documents. *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1137 (N.D. Cal. 2012). Although Mr. Howe stated that the notes would have included information about the operations of ports of entry, "[t]here's a vast . . . variety of things that occur within our daily operations," and not everything about port operations is relevant to this case. *See* Howe Dep. 23:7-9. Notably, Plaintiffs did not ask questions of Mr. Howe about the meetings' or the notes' *specific* content to determine whether those shorthand, non-substantive notes would have contained particular evidence that Plaintiffs would have deemed relevant to their claims.

Further, even if relevant, the information that Mr. Howe jotted down in his notes was typically captured or memorialized in other forms. "Everything that I would have brought up to Mr. Owen would have been captured in electronic form," such as reports of significant events. Howe Dep. 26:7-27:7. And "[a]ny follow-up to [Mr. Owen] would have been an e-mail to him as a follow up." Howe Dep. 28:22-29:3. There is no evidence that Mr. Howe failed to preserve any other documents or electronically stored information. Indeed, Defendants have produced or logged over 284,000 documents from CBP custodians—including almost 35,000 documents from Mr. Howe. Shinners Decl. ¶ 7. Defendants also recently produced responsive, hard copy notes from another custodian, Todd Hoffman, who would have attended the same daily operational briefings that Mr. Howe attended. Shinners Decl. ¶ 10. Unlike in the case cited by Plaintiffs, there is not a showing of several witnesses' "undisciplined retention practice." *See City of Colton*, 2011 WL 13223880, at *4. Further, Plaintiffs already had the opportunity to question Mr. Howe about his

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

1 document retention practices. Finally, there is no showing that Defendants failed to issue a litigation hold notice to other individuals at or around the time the lawsuit was filed. As the facts do not warrant production of the litigation hold notice Mr. Howe received, the Court should decline to compel its production.

## II.  Request for Production 222

Plaintiffs' Request for Production 222 seeks "all documents providing guidance to DHS officers or employees concerning the implementation of the Court's November 19, 2019 preliminary injunction order." While this Request may relate to the preliminary injunction issued in this case, the information sought is simply not relevant to the claims and defenses in this case. Plaintiffs' challenge is to CBP's metering practices at ports of entry along the U.S.-Mexico border, as well as to other alleged actions by CBP officers that Plaintiffs claim have denied them access to the U.S. asylum process. Yet implementation of the preliminary injunction does not implicate CBP's actions at ports of entry. Because the preliminary injunction enjoins the application of a rule determining eligibility for asylum, its implementation is not conducted by CBP. Instead, it is primarily United States Citizenship and Immigration Services (USCIS)—the entity responsible for screening those who claim fear of return to their home country for potential further proceedings—that implements the preliminary injunction within DHS. *See* Shinners Decl. Ex. C, Declaration of Ashley B. Caudill-Mirillo ¶¶ 3-11 (explaining burdens of implementing preliminary injunction on USCIS fear screenings).

Plaintiffs attempt to show the relevance of their Request by pointing to claimed instances of non-compliance with the preliminary injunction by Immigration Judges within the Department of Justice's Executive Office for Immigration Review (EOIR), which is not a party to this case. Although Defendants disagree with Plaintiffs' characterization of the Immigration Judges' actions as non-compliant with the preliminary injunction, the Immigration Judges' actions have absolutely no relationship to the discovery Plaintiffs seek in Request for Production

222. Plaintiffs do not even attempt to explain how guidance provided to "DHS Officers or employees" is relevant to their allegations of non-compliance by a completely separate department. Plaintiffs have never claimed a single instance of non-compliance by DHS. Accordingly, as the discovery sought has no bearing on any relevant issue in this case, the Court should decline to compel production of documents in response to Request for Production No. 222.

If the Court were to compel production in response to this Request, however, in accordance with Defendants' privilege, burden, and proportionality objections, the Court should limit production to only *non-privileged* documents providing instructions to DHS employees for implementation of the preliminary injunction.

Dated: June 18, 2020

        MAYER BROWN LLP
           Matthew H. Marmolejo
           Ori Lev
           Stephen M. Medlock

        SOUTHERN POVERTY LAW CENTER
           Melissa Crow
           Sarah Rich
           Rebecca Cassler

        CENTER FOR CONSTITUTIONAL RIGHTS
           Baher Azmy
           Ghita Schwarz
           Angelo Guisado

        AMERICAN IMMIGRATION COUNCIL
           Karolina Walters

        By: */s/ Stephen M. Medlock*
           Stephen M. Medlock

|   |   |
|---|---|
| 1 | *Attorneys for Plaintiffs* |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

**CERTIFICATE OF SERVICE**

I certify that I caused a copy of the foregoing document to be served on all counsel via the Court's CM/ECF system.

Dated: June 18, 2020                              MAYER BROWN LLP

                                                  By /s/ Stephen M. Medlock