# EXHIBIT A

Case 3:17-cv-02366-BAS-KSC Document 376-2 Filed 12/30/19 PageID.25480 Page 2 of 5

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Al Otro Lado, Inc., *et al.*, | ) | |
|     *Plaintiffs,* | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:17-cv-02366-BAS-KSC |
| | ) | |
| Chad Wolf, *et al.*, | ) | |
|     *Defendants.* | ) | |
| _____ | ) | |

## DECLARATION OF RANDY HOWE

I, Randy Howe, pursuant to 28 U.S.C. § 1746, and based upon personal knowledge and information made known to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows relating to the above-captioned matter.

1. I am currently the Executive Director for Operations, Office of Field Operations (OFO), U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS). I have been employed in this role since October 2017. I began my career in 1988 with the legacy U.S. Immigration and Naturalization Service. During my 31 years of federal service, I have held various leadership positions, including Area Port Director, Buffalo; Assistant Director for Border Security; and Border Security Coordinator. Immediately prior to assuming my current role, I served as Director of Field Operations for the Preclearance Office. In my current position, I oversee more than 23,000 employees, with operations at 20 major field offices, 328 POEs, and 16 Preclearance locations. Because of my responsibilities, I am familiar with the agency's queue management processes generally, as well as the information that is or is not collected from individuals during that process. I am

1

Case 3:17-cv-02366-BAS-KSC   Document 376-2   Filed 12/30/19   PageID.25431   Page 3 of 5

also familiar with the types of records that OFO generally creates for individuals encountered at a port of entry.

2. Queue management, or "metering," is the process by which OFO manages the flow of pedestrian traffic at the land border ports of entry. Generally, this process involves CBP officers or private security contactors standing at the international boundary line that separates Mexico from the United States (sometimes referred to as the "limit line"). These officers or contractors identify whether or not travelers approaching the port of entry have documentation that appears to permit them to lawfully enter the United States. If a traveler has such documentation, then they will generally be permitted to cross the international boundary, enter the United States, and enter the port of entry right away. If the traveler does not have such documentation, then, depending on the current operational capacity of the port, they will either be permitted to enter the United States and the port or they will be informed that such access is not immediately available. This is because conducting thorough inspections of individuals without documentation sufficient for lawful entry is particularly resource-intensive. CBP must, for instance, verify the identity and background, if available, of these individuals seeking to enter the United States, which can be time consuming. The port of entry must ensure that it has sufficient capacity to conduct such inspections, as well as capacity to temporarily hold those individuals found inadmissible to the United States, pending their transfer out of CBP custody to another federal agency.

3. CBP policy states that no CBP personnel may take any steps to discourage travelers from waiting to be processed, from claiming fear of return to another country, or from seeking any other protections.

4. Personnel at the limit line generally only have brief, normally entirely verbal, encounters with individuals and, if those individuals present any forms of identification or travel

2

documents, conduct basic visual document examinations. Officers at the limit line do not have the means or opportunity to authenticate those documents and generally do not obtain biographical information about the traveler or memorialize the encounter in any way, whether that be the date, time, or other factual specifics about the encounter. The encounter at the physical border line is not intended to be a detailed encounter; memorializing a great deal of information at this time would be not only impracticable but potentially dangerous to the personnel and the port. The primary function of personnel at the limit line is to manage the queue of individuals seeking to enter the port and to ensure a safe and secure environment. Personnel at the limit line are in a constant or near-constant cycle of encountering dozens or hundreds of travelers a day, some of whom may be seeking to cause harm or evade the law. For these reasons, forcing limit line personnel to halt their present duties and memorialize the encounter, when those travelers may or may not need interpretive assistance to engage in thorough dialogue, including collecting biographical information about that individual or family unit (along with at least some measure of verification), would weaken the operational posture of the remainder of the limit line and could pose a threat to safety.

5. Because many of the travelers seeking entry do not possess easily authenticable forms of identification, and because there is no systematic record of these encounters, there is no way for CBP to determine who may or may not have been encountered at the limit line historically. Indeed, there is no way to even calculate, with any degree of accuracy, how many individuals have been encountered at the limit line. Were any individual to come forward and assert that they had been encountered at the limit line, CBP would have no way to either confirm or refute that individual's own statements.

3

Case 3:17-cv-02366-BAS-KSC Document 470-7 Filed 06/18/20 PageID.33762 Page 5 of 5
Case 3:17-cv-02366-BAS-KSC Document 376-2 Filed 12/30/19 PageID.25483 Page 5 of 5
Page 5 of 5

6. Once an individual is present in the United States and is inspected by CBP, CBP creates a number of records about that individual's encounter and processing. Such records include sworn statements regarding an individual's reason for traveling to the United States, records evidencing the circumstances surrounding an individual's encounter, appropriate removal documents for those aliens determined to be inadmissible, as well as records documenting their treatment in CBP custody. Such records are generally linked to a specific individual, and are stored in CBP's electronic systems of records. None of these records would include any indicia of whether an individual, at some point, sought entry to the United States at the international boundary at a time when the port did not have capacity to immediately process the individual.

7. I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.


Executed this ___17___ day of December, 2019.


Randy Howe
Executive Director – Operations
Office of Field Operations
U.S. Customs and Border Protection

4