# EXHIBIT B

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

---------------------------x

AL OTRO LADO, INC., et al., :

    Plaintiff,          :

   -vs-             : Case No.

KEVIN K. McALEENAN, et al., : 17-cv-02366-BAS-KSC

    Defendants.      :

---------------------------x

CONFIDENTIAL

30(b)(6) Deposition of

U.S. CUSTOMS & BORDER PROTECTION

By and Through

RANDY J. HOWE

Washington, D.C.

Thursday, January 9, 2019

9:34 a.m.

Job No.:  541878

Pages 1 - 305

Reported by:  Tammy S. Newton

Magna Legal Services
866-624-6221
www.MagnaLS.com



Page 2

1

2    30(b)(6) Deposition of Randy J. Howe held at the

3    offices of:

4        Mayer Brown

5        1999 K Street, N.W.

6        Washington, D.C. 20006

7

8

9

10   Pursuant to agreement, before Tammy S. Newton, a

11   Notary Public in and for the District of

12   Columbia.

13

14

15

16

17

18

19

20

21

22



```
                                                          Page 3

 1                  A P P E A R A N C E S

 2        ON BEHALF OF PLAINTIFFS:

 3               STEPHEN M. MEDLOCK, ESQUIRE

 4               Mayer Brown

 5               1999 K Street, N.W.

 6               Washington, D.C. 20006

 7               (202) 263-3221

 8               smedlock@mayerbrown.com

 9                     and

10               ANGELO GUISADO, ESQUIRE

11               Center for Constitutional Rights

12               666 Broadway, 7th Floor

13               New York, New York 10012

14               (212) 614-6454

15               aguisado@ccrjustice.org

16

17

18

19

20

21

22
```



Page 4

1          ON BEHALF OF DEFENDANTS:

2               KATHERINE J. SHINNERS, ESQUIRE

3               SUSAN IMERMAN, ESQUIRE

4               U.S. Department of Justice

5               Office of Immigration Litigation

6               Ben Franklin Square, P.O. Box 868

7               Washington, D.C. 20044

8               (202) 598-8259

9               katherine.j.shinners@usdoj.gov

10                   and

11              SARAH RICH, ESQUIRE

12              REBECCA CASSLER, ESQUIRE

13              Southern Poverty Law Center

14              1101 17th Street, N.W.

15              Suite 705

16              Washington, D.C. 20036

17              (202) 355-4471

18              sarah.rich@splcenter.org

19              (Appeared via Telephone)

20

21

22



Page 5

1          Also Present:

2                  Louisa Slocum, Esquire, CBP

3                  Kristine King, Esquire, CBP

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22



Page 19

1  BY MR. MEDLOCK:

2      Q    Sir, I put in front of you marked

3  Exhibit 78 to your deposition.  It is a two-page

4  letter from Katherine J. Shinners to myself dated

5  January 8th, 2020.  Do you see that, sir?

6      A    Yes, sir.

7      Q    Have you seen a copy of this letter

8  before?

9      A    No.

10      Q    Okay.  I'll -- beneath the salutation,

11  "Dear Counsel," it reads, "I write to advise you

12  that defendants' counsel recently learned that

13  Custodian Randy Howe has not retained personal,

14  hard-copy notes that he has taken at daily

15  internal operations meetings."

16           Did I read that correctly?

17      A    You did.

18           MS. SHINNERS:  I just -- go ahead.

19  BY MR. MEDLOCK:

20      Q    Okay.  So I want to understand what

21  that sentence means to the best of your

22  understanding.  What are the daily internal



Page 20

1     operations meetings that are referred to here?

2               MS. SHINNERS:  Objection to the scope.

3     Just to make clear, this is not within the scope

4     of the 30(b)(6) topics and two, to the extent

5     that you know, you can answer.

6               THE WITNESS:  Each day EAC Owen has a

7     morning 8:15 operational meeting.

8     BY MR. MEDLOCK:

9         Q     And so when you say "each day", that's

10    each weekday?

11        A     Each weekday.

12        Q     So that morning operational meeting at

13    8:15, how long does it last for?

14        A     Typically 20 to 30 minutes.

15        Q     And your practice has been to take

16    notes during that meeting?

17        A     Not substantive notes but the intent

18    of that meeting is to brief Mr. Owen on the daily

19    happenings of the last 24-hour period, maybe some

20    things that he needs to be aware of.  So I would

21    go in there with -- just things in my mind to

22    trigger that I need to advise him of.



Page 21

1       Q       So these are sort of your bullet

2    points to organize your briefing of EAC Owen?

3       A       Pretty much.  Just very basic words to

4    trigger my mind on events that happened in the

5    last 24 hours.

6       Q       And where do you write these bullet

7    points down?

8       A       Piece of paper.

9       Q       Do you have a notebook, or is it just

10   looseleaf paper you're using?

11      A       Looseleaf paper.

12      Q       And after you brief EAC Owen at that

13   8:15 meeting, what do you do with that looseleaf

14   paper with the bullet points on it?

15      A       I have a nine o'clock meeting with my

16   direct reports that are in headquarters.  So if

17   there's anything from the 8:15 meeting that I

18   need to pass on to them, a request from EAC Owen,

19   an update on a particular issue, I would keep it

20   for that meeting, and then after that, I'd

21   commonly just place it in my shred bin.

22      Q       So that I get this process down, you



Page 22

1    bring the bullet points that you jot down before

2    the 8:15 to your meeting with EAC Owen; is that

3    right?

4          A    Correct.

5          Q    Then during the meeting, do you take

6    notes on what EAC Owen tells you as sort of

7    follow-up items you may need to take to the 9

8    a.m. meeting?

9          A    Yes.  If there is a request from him,

10   update on a particular program, I might -- or

11   follow-up with a particular director of field

12   operations, I might make a little note just to

13   trigger my memory so I follow my boss' request.

14         Q    Sure.  And the briefing bullet points

15   that you take to the 8:15 meeting, have those

16   bullet points ever included information about the

17   operation of ports of entry on the U.S.-Mexico

18   border?

19         A    Have they?

20         Q    Yes.

21         A    Yes.

22         Q    Have those bullet points ever included



Page 23

1    information on processing an inspection of

2    individuals without proper travel documents at

3    ports of entry on the U.S.-Mexico border?

4         A    I don't recall a specific instance

5    but --

6         Q    Is it possible?

7         A    It's possible.  There's a vast -- vast

8    variety of things that occur within our daily

9    operations.  So it could be anywhere from a large

10   seizure, an NCIC arrest at a port of entry, an

11   employee matter where maybe somebody was

12   arrested.  So it's really a wide scope of things.

13        Q    How about migrant caravans, could that

14   also be in those notes?

15        A    There may have been.

16        Q    And you were instructed by counsel to

17   retain information related to this case, correct?

18             MS. SHINNERS:  Objection to the scope.

19   You can answer.

20             THE WITNESS:  I was.

21   BY MR. MEDLOCK:

22        Q    When did you receive that direction?



Page 24

    1              MS. SHINNERS:  Same objection to this

    2    line of questioning.  Go ahead.

    3              THE WITNESS:  I don't recall.

    4              MR. MEDLOCK:  You can have a standing

    5    objection.

    6              MS. SHINNERS:  I was going to say.

    7    I'll just object to this line of questioning as

    8    beyond the scope.

    9              THE WITNESS:  I don't recall.

   10    BY MR. MEDLOCK:

   11        Q    Do you recall whether it was in 2017?

   12        A    I don't recall.

   13        Q    When you were writing down these notes

   14    and then -- and then putting them in your shred

   15    bin, at some point you knew that this litigation

   16    was going on and you needed to preserve relevant

   17    information, correct?

   18        A    I would like to point out that --

   19    although I -- I'm assuming I got notified.  I've

   20    only been in this position since October of '17.

   21    So I don't know exactly when I may have received

   22    it.  So I'm assuming I have been.  I don't



Page 25

1    remember when.  I certainly -- I wasn't in this

2    current role.  So I probably wouldn't have

3    received it before October of '17, if that makes

4    sense.

5        Q    Okay.  So sometime after October 2017,

6    to the best of your knowledge, you were told by

7    legal counsel that you needed to preserve

8    documents that were relevant to this case; is

9    that right?

10       A    Yes.

11       Q    And you understood that this case

12   related to the processing and inspection of

13   individuals without proper travel documents at

14   ports of entry on the U.S.-Mexico border,

15   correct?

16       A    Correct.

17       Q    And to the best of your knowledge,

18   there may have been some notes regarding the

19   processing of individuals without proper travel

20   documents at ports of entry on the U.S.-Mexico

21   border that you did place into your shred bin; is

22   that right?



Page 26

1       A     I wouldn't say there's substantive

2    notes.

3       Q     I'm just asking.  There are notes

4    though that were placed in the shred bin that

5    dealt with that topic; is that right?

6       A     They weren't substantive notes.

7    Everything that I would have brought up to Mr.

8    Owen would have been captured in electronic form.

9    So significant events, anything that I would

10   typically bring up would have been captured in

11   electronically.  Any follow-up to Mr. Owen's

12   requests for additional information always would

13   have been kept electronically.

14             And then again, my notes weren't

15   substantive.  They were only things to trigger

16   me.  So in my mind I was not throwing out

17   anything that was in violation to this.  It was

18   just little notes to me.  Nothing in great detail

19   other than notes to me to follow-up with Mr.

20   Owen.

21      Q     So when you say "captured

22   electronically," how is it that the substance of



Page 27

1    your briefing to EAC Owen at the 8:15 operational

2    meeting was captured electronically?

3        A    So if I'm briefing him on a

4    significant seizure or significant event, it's

5    all reportable.  It's all -- he would have

6    received it.  So he would have had that

7    electronically.  It would have been -- that was

8    just a trigger point for me to say, "As you know,

9    sir, yesterday there was a seizure at one of the

10   crossings."  A follow-up to that discussion.

11       Q    Is there a hard copy or electronic

12   agenda that goes to the participants at the 8:15

13   meeting --

14       A    No, sir.

15       Q    -- beforehand?  Is there any sort of

16   preread materials that go to the participants at

17   that meeting?

18       A    No, sir.

19       Q    Do you provide any sort of minutes or

20   summary of the 8:15 meeting after it occurs?

21       A    No, sir.

22       Q    So while I understand there would be



Page 28

1   some paper trail related to items that were

2   discussed during the meeting, the best way to

3   understand whether those were actually discussed

4   at the meeting is looking at your bullet points,

5   right?

6           MS. SHINNERS:  Objection.

7           THE WITNESS:  I don't understand your

8   question.

9   BY MR. MEDLOCK:

10      Q    I get that if there's a NCIC event or

11  there's a large seizure, EAC Owen would find out

12  about that, correct?

13      A    Correct.

14      Q    And the question is, the best way to

15  understand whether that was actually raised

16  during this 8:15 meeting and what request, if

17  any, Mr. Owen had as a result of that briefing is

18  to look at your notes; is that right?

19          MS. SHINNERS:  Objection;

20  argumentative.

21          THE WITNESS:  I don't get what you're

22  saying.  All the information that was discussed



Page 29

1   was captured electronically in reports.  Any

2   follow-up to him would have been an e-mail to him

3   as a follow-up.

4   BY MR. MEDLOCK:

5        Q     Is there any paper or electronic

6   summary of what is actually discussed during the

7   8:15 meeting?

8        A     No.

9        Q     Does anyone, to your knowledge, take

10  regular notes at the 8:15 meeting besides

11  yourself?

12       A     I don't know.

13       Q     Have you ever seen anybody else doing

14  it?

15       A     I don't recall.

16       Q     So as you sit here today, you can't

17  actually recall ever seeing anyone else take

18  notes during that meeting?

19       A     No -- no.

20       Q     So as you sit here today, you're the

21  only person that you know of that would take

22  notes on requests from EAC Owen during the 8:15



Page 67

```
 1        Q      November of '89.  And then in November
 2   of '89, where did you go to work next?
 3        A      Went to Montreal preclearance.
 4   Montreal, Canada.
 5        Q      What does "preclearance" mean?
 6        A      Well, we perform all of the CBP
 7   functions in a foreign country.  So when the
 8   plane lands, individuals can just go about -- you
 9   basically clear customs or immigration in that
10   foreign country.
11        Q      I got it.  How long were you in
12   Montreal preclearance for?
13        A      Three years and two months.
14        Q      So that would take us up to '92,
15   January '92?
16        A      Correct.
17        Q      In January '92, where did you work
18   next?
19        A      To Niagara Falls, New York as
20   immigration inspector.
21        Q      When did you leave that position?
22        A      I went to Toronto preclearance in
```

