UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AL OTRO LADO, INC., et al.,<br><br>                    Plaintiffs,<br><br>v.<br><br>CHAD F. WOLF, Acting Secretary, U.S. Department of Homeland Security, in his official capacity, et al.,<br><br>                    Defendants. | Case No.:  3:17-cv-2366-BAS-KSC<br><br>**ORDER REGARDING PRIVILEGE DISPUTE; ORDER GRANTING MOTION TO SEAL [Dkt. Nos. 461, 462, 463]** |

Before the Court are the parties' Joint Motion for Determination of Privilege Dispute (Dkt. No. 463, the "Joint Motion") and their corresponding Joint Motion to Seal Portions of the Parties' Joint Motion for Determination of Privilege Dispute (Dkt. No. 461, the "Motion to Seal").  For the reasons set forth herein, the Court finds that with limited exceptions, the documents and information at issue in the Joint Motion are not protected from disclosure by the law enforcement privilege, and therefore DENIES Defendants' request to claw back these documents.  The Court GRANTS the Motion to Seal.

### I.  BACKGROUND

On January 14, 2020, Plaintiffs moved to certify "a class [of] all noncitizens who seek or will seek to access the U.S. asylum process by presenting themselves at a Class A

port of entry … on the U.S.-Mexico border, and were or will be denied access to the U.S. asylum process by or at the instruction of U.S. Customs and Border Protection … officials on or after January 1, 2016." Dkt. No. 390 at 3. Plaintiffs' class certification motion was supported by 67 declarations of pseudonymous asylum-seekers, all of whom are putative class members. *See* Dkt. 434 at 5-6. Defendants, in turn, moved to strike the declarations, demanding to know the identities of the declarants. *See* Dkt. Nos. 411, 411-1 at 6-8. Plaintiffs opposed and asserted, *inter alia*, that the declarants have a genuine fear of retaliation by the government in immigration enforcement proceedings. Dkt. No. 434 at 4, 6. Plaintiffs sought to support their opposition to Defendants' motion to strike with documents produced in the litigation, which purportedly substantiate the declarants' fear of retaliation. Dkt. No. 463 at 15. When Defendants thereafter requested to claw back those documents under a claim of privilege, this dispute ensued.

At issue are 19 documents that fall into three categories: (1) an email and 16 embedded images regarding Customs and Border Protection's ("CBP") decision to revoke SENTRI border-crossing privileges for Nicole Ramos, an attorney and employee of Plaintiff Al Otro Lado (Government Exhibits ("Gov't Ex.") 1 through 17, bearing Bates numbers AOL-DEF-00556914 through AOL-DEF-00556934); (2) a Border Patrol intelligence report (Gov't Ex. 18, bearing Bates numbers AOL-DEF-00528691-707); and (3) a Power Point presentation prepared to brief Customs and Border Patrol leadership about certain operations at the border in late December 2018 (Gov't Ex. 19, bearing Bates numbers AOL-DEF-00516605-623).[1] Defendants assert each of the 19 documents is protected by the law enforcement privilege. In support of their assertion of the law enforcement privilege, Defendants submit declarations from Customs and Border Patrol's Deputy Executive Assistant Commissioner John P. Wagner (Dkt. Nos. 461-2 and 463-2,

---

[1] Defendants lodged the 19 exhibits for the Court's *in camera* review. The Court will refer to the exhibits using the exhibit numbers assigned to them in the Declaration of Alexander J. Halaska, Dkt. No. 463-1, ¶¶5-23. Where additional clarity or a pinpoint cite is needed, the Court will also refer to the document(s) by Bates number.

the "Wagner Decl.") and Chief Patrol Agent Aaron Heitke (Dkt. Nos. 461-3 and 463-3, the "Heitke Decl.").[2] No other privilege or protection from disclosure is claimed.

Pursuant to the protective order that governs discovery in this litigation, Defendants have designated each of the 19 documents either "Confidential" or "Highly Confidential – Attorneys' Eyes Only." *See* Dkt. No. 276 (the "Protective Order"). Thus, Defendants additionally request to file under seal portions of the parties' Joint Motion that quote from or refer to the documents. Dkt. No. 461 at 3-6. Deputy Commissioner Wagner's and Agent Heitke's declarations are also submitted in support Defendants' sealing request. Dkt. Nos. 461-2 and 461-3. Plaintiffs do not oppose the Motion to Seal. Dkt. No. 461 at 6.

## II.  THE PRIVILEGE DISPUTE

### A. Legal Standard Regarding the Law Enforcement Privilege

"The federal law enforcement privilege is a qualified privilege designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement." *Chinn v. Blankenship*, No. 09-5119 RJB, 2010 WL 11591399, at *6 (W.D. Wash. Feb. 26, 2010).[3] "'[R]ooted in common sense as well as common law,'" the law enforcement privilege aims "'to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.'" *Hemstreet v. Duncan*, No. CV-07-732-ST, 2007 WL 4287602, at *2 (D. Or. Dec. 4, 2007) (citations omitted).

---

[2] Defendants submitted identical copies of Agent Heitke's and Deputy Commissioner Wagner's declarations in support of the Joint Motion and the Motion to Seal.

[3] The "law enforcement privilege" is also sometimes referred to as the "official information privilege" or the "ongoing investigation privilege." *See Dousa v. U.S. Dep't of Homeland Sec.*, No. 19-CV-1255-LAB(KSC), 2019 WL 6311990, at *2 (S.D. Cal. Nov. 22, 2019) (collecting cases). The Court adopts the parties' nomenclature and will refer to it as the "law enforcement privilege" herein.

"As the party asserting the privilege and seeking its benefits, [D]efendants have the burden of establishing that the privilege applies" to each of the 19 documents at issue. *Dousa*, 2019 WL 6311990, at *2. To do so, Defendants must put forth "'competent evidence about how the specific requested disclosure would harm governmental interests.'" *Id.* (*quoting Kelly v. City of San Jose*, 114 F.R.D. 653, 663, 669 (N.D. Cal. 1987)). Such evidence should include a "formal claim of privilege" by a responsible official, based on that official's personal consideration of the information, that describes with specificity both the information to be protected and the harm that would ensue from its disclosure. *Wagafe v. Trump*, 334 F.R.D. 619, 623 (W.D. Wash. 2020).

Because the law enforcement privilege is a qualified privilege, once Defendants make a threshold showing that the law enforcement privilege applies, the Court must "'weigh the government's interests in ensuring the secrecy of the documents in question against the need of the adverse party to obtain discovery.'" *Chinn*, 2010 WL 11591399 at *6 (citations omitted). *See also Hemstreet*, 2007 WL 4287602, at *2 (noting that "[t]he law enforcement privilege is not absolute," but "requires 'a need to balance the public interest in nondisclosure against the need of the particular litigant for access to the privileged information.'"). This balancing test is "moderately pre-weighted in favor of disclosure." *Kelly*, 114 F.R.D. at 662. Factors the Court may consider in weighing the parties' competing interests include:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought

>is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case.

*Wagafe*, 334 F.R.D. at 623-24 (*quoting Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973)). This list is neither "exhaustive" nor controlling. *Kelly*, 114 F.R.D. at 663 (further noting that courts must decide questions of privilege "on a case by case basis"). Thus, while these factors may guide the Court's analysis, the "focus[]" of the inquiry ultimately is "the extent to which the defendant's interest in confidentiality outweighs the plaintiff's interest in the information." *Maria Del Socorro Quintero Perez, CY v. United States*, No. 13CV1417-WQH-BGS, 2016 WL 362508, at *3 (S.D. Cal. Jan. 29, 2016). Where "the potential benefits of disclosure outweigh the potential disadvantages," the privilege will be "set aside." *Allen v. Woodford*, No. CV-F-05-1104 OWW LJO, 2007 WL 309945, at *9 (E.D. Cal. Jan. 30, 2007).

Finally, because the law enforcement privilege "is based on the harm to law enforcement efforts that might result from ***public*** disclosure of investigatory files," *Torres v. Goddard*, No. CV 06-2482-PHX-SMM, 2010 WL 3023272, at *5 (D. Ariz. July 30, 2010) (emphasis added), the Court should consider whether disclosure of the information pursuant to a protective order will ameliorate any harm that might otherwise occur from that disclosure. As the court in *Kelly* observed:

> [I]n many situations what would pose the threat to law enforcement interests is disclosure to the public generally, not simply to an individual litigant and/or her lawyer. Thus the weight of some of the interests in the law enforcement category may be reduced because courts routinely enter tightly crafted protective orders under which only a single litigant, sometimes only that litigant's lawyer, has access to the sensitive information.

114 F.R.D. at 662.

With these principles in mind, the Court turns to Defendants' assertion that the documents at issue are protected by the law enforcement privilege.

//
//

### B. SENTRI Email and Embedded Images

For the most part, Defendants and their declarant treat the SENTRI email and the 16 images embedded in it (Gov't Exs. 1-17, Bates Nos. AOL-DEF-00556914 through AOL-DEF-00556934) in the aggregate. Dkt. No. 463 at 6-10; Wagner Decl., ¶¶4, 6-7. Defendants assert broadly that the SENTRI email and images "reveal the types and sources of information that CBP considers relevant for determining eligibility in its Trusted Traveler Programs," and, more specifically, "the types of information that CBP considers when assessing whether an individual qualifies as a low-risk traveler eligible for SENTRI enrollment." Dkt. No. 463 at 7, 9. Defendants state that if they are not allowed to claw back these documents, bad actors may be able to "identify possible gaps in CBP's decision making, manipulate information provided to CBP, and change their behavior in order to inappropriately obtain Trusted Traveler privileges." Dkt. No. 463 at 7; Wagner Decl., ¶6. This, Defendants claim, would undermine their law enforcement efforts. Dkt. No. 463 at 7, 9; Wagner Decl., ¶6.

Of the 16 embedded images, Defendants single out two for additional analysis. The first document is a record from CBP's anti-terrorism database, known as a "lookout," related to Ms. Ramos (Gov't Ex. 2, Bates No. AOL-DEF-00556919). *See* Dkt. No. 463 at 7-8; Wagner Decl., ¶8a. In general, Defendants explain, lookouts "provide instruction to officers on how they should exercise their discretion in certain situations" or with respect to "certain individuals." Wagner Decl., ¶8b. Defendants state that "[t]he disclosure of lookouts would … undermine their utility and allow hostile actors to tailor countermeasures in [an] attempt to circumvent law enforcement. *Id.* Defendants also claim that if disclosed, this lookout could reveal "law enforcement techniques and procedures … generally," including "the nature and extent of the government's law enforcement interest in particular facts," information that a "hostile actor" could use to his or her advantage. *Id.*, ¶8c.

The second embedded image that Defendants address specifically is an excerpt from the field information report (discussed below) that "contain[s] information

regarding individuals of interest to law enforcement," including information collected and maintained by CBP and another federal agency (Gov't Ex. 5, Bates No. AOL-DEF-00556922). Wagner Decl., ¶8d (incorporating by reference ¶13). According to Defendants, disclosure of this information could "alert individuals that they may be of law enforcement interest, such that they may take steps to alter their behavior" to evade detection by the authorities. *Id.*, ¶13.

The Court finds Defendants' moving papers and supporting declaration "lack[] the requisite specificity and fail[] to allege more than a general assertion of potential harm." *Quintero Perez*, 2016 WL 362508, at *4. It is Defendants' burden to provide "*specific* information about how disclosure of the *specific* documents requested … would threaten the *specific* governmental and privacy interests at stake." *Bernat v. City of California City*, No. 1:10–cv–00305 OWW JLT, 2010 WL 4008361, at *3 (E.D. Cal. Oct. 12, 2010) (italics in original). Instead, Defendants speculate generally about what unnamed "hostile actors" might do with the same *type* of information. *See* Wagner Decl., ¶¶6-8. For example, Defendants' declarant states that "an alien smuggler who learns that CBP has a lookout associated with his vehicle may start using a different vehicle," or "a narcotics trafficker who learns that CBP has a lookout associate with her name may then explore other methods for trafficking." *Id.*, ¶8b; *see also* Dkt. No. 463 at 7 (arguing that these scenarios "constitute[] *prima facie* harm."). Such references to hypothetical lookouts placed on hypothetical smugglers and traffickers does little to aid the Court in assessing whether the particular lookout before it – the one pertaining to Ms. Ramos – is privileged. Defendants' speculative references to "hostile actors," "individuals seeking to obtain or retain Trusted Traveler privileges for illicit purposes" "individuals seeking to evade law enforcement activities," or "individuals [who] may be of interest to law enforcement" (Wagner Decl., ¶¶6-8, 13) do not "'provide the [C]ourt with the information it needs to make a reasoned assessment of the weight of the interests that line

//
//

up, in the ***particular situation before the [C]ourt***, against the requested disclosure.'" *Quintero Perez*, 2016 WL 362508, at *4 (emphasis added) (*quoting Kelly*, 114 F.R.D. at 670).[4]

Nor is the Court persuaded that the SENTRI email and embedded images reveal sensitive information about CBP's techniques and practices that must be protected from disclosure. Even if these documents reveal CBP's law enforcement techniques, which this Court has determined they do not, those techniques "are not unlike those traditionally used by law enforcement to obtain information." *Dousa*, 2019 WL 6311990, at *3. For example, the embedded images include information collected during inspections of persons crossing the border, and images and information taken from Ms. Ramos's social media accounts. That CBP makes use of such information in its law enforcement activities does not strike the Court as "particularly sensitive or confidential." *Id.* The Court is also struck by Defendants' statement that the records and information at issue are "available … from other sources," *Wagafe*, 334 F.R.D. at 624, because "members of the public" could "seek" them through a FOIA request. Dkt. No. 463 at 9. This undermines, rather than supports, Defendants' assertion that the information in these records is particularly sensitive and should be protected from disclosure.

Further, even assuming Defendants had articulated tangible and nonspeculative harms that might ensue from ***public*** disclosure of the purportedly privileged documents, they fail to address how those harms would be mitigated by the Protective Order in place in this litigation. *See Kelly*, 114 F.R.D. at 662 (noting the distinction between disclosure to the public at large and disclosure to a litigant and her counsel). Defendants' declarant describes the potential consequences should documents describing CBP's law enforcement techniques become widely known. Wagner Decl., ¶¶6-8, 13. Yet, when

---

[4] Indeed, in evaluating a prior motion to seal, Judge Bashant rejected such "vague, generalized concern about bad actors potentially frustrating the operations of ports of entry" as failing to "articulate a particularized harm flowing from public disclosure..." that would justify sealing the records. Dkt. No. 332 at 6.

Defendants disclosed the SENTRI email family to Plaintiffs, they designated the email itself and 4 of the embedded images "Highly Confidential – Attorneys' Eyes Only" and designated the remaining embedded images "Confidential," thereby prohibiting their disclosure outside of the litigation.[5]  Defendants largely ignore the safeguards these designations afforded them.  Their single reference to the effect of the Protective Order is a conclusory statement that it is "not sufficient to prevent the harm to CBP's operations that would result from these documents being disclosed in this litigation."  Wagner Decl., ¶9.  Neither Defendants nor their declarant explain why this is so, and the Court notes that Defendants stipulated to the Protective Order and agreed that it was necessary "to ***adequately protect*** information that the Parties are entitled to keep confidential."  Dkt. No. 276 at 2 (emphasis added).  The Court expects the parties to comply with the Protective Order, and finds that production of the SENTRI email and embedded images under its terms will "minimize the impact on the interests at issue." *Bernat*, 2010 WL 4008361, at *2 (overruling objections based on law enforcement privilege where supporting declaration failed to address the impact of a protective order); *see also Quintero Perez*, 2016 WL 362508 at *4 (same).

The Court finds that because "the declaration submitted on behalf of Defendants only provides general assertions of harm" and "fails to demonstrate why disclosing the information sought under a carefully crafted protective order to protect the confidentiality of the information would harm a significant governmental interest," Defendants have failed to make the requisite threshold showing that the SENTRI email and embedded images are protected by the law enforcement privilege.  *Conan v. City of Fontana*, No.

---

[5] Under the terms of the Protective Order, to which the parties stipulated after lengthy negotiations and conferences with the Court, documents designated either "Highly Confidential – Attorneys' Eyes Only" or "Confidential" may disclosed only to counsel, the Court, and limited third parties and witnesses; documents designated "Confidential" may also be disclosed to the named parties and their officers, directors and employees.  Dkt. No. 276 at 9-10.  The parties' obligation to keep discovery materials confidential unless otherwise ordered by the Court continues even after the final disposition of the action. *Id.* at 5, 9-10.

EDCV 16-1261-KK, 2017 WL 2874623, at *5 (C.D. Cal. July 5, 2017). Accordingly, "the Court does not need to engage in the balancing test articulated by the *Kelly* court." *Myles v. County of San Diego*, No. 15cv1985-BEN (BLM), 2016 WL 2343914, at *6 (S.D. Cal. May 4, 2016). Nevertheless, the Court further finds that even if Defendants had made a threshold showing that the SENTRI email and embedded images are protected by the law enforcement privilege, Plaintiffs' need for the information transcends that privilege. Defendants argue that Plaintiffs "have not offered a persuasive explanation why the reasons underlying Ramos's SENTRI revocation relate to metering." Dkt. No. 463 at 8. Whether or not these documents "are necessary to litigate [Plaintiffs'] causes of action," *id.*, they are relevant to Plaintiffs' ability to oppose to Defendants' motion to strike 67 witness declarations in support of Plaintiffs' motion for class certification. Despite Defendants' insistence that the SENTRI email and images are "of 'no importance … to [Plaintiffs'] case" (Dkt. No. 463 at 8), certification is a "'significant litigation event'" in a class action. *Lee v. Pep Boys-Manny Moe & Jack of Calif.*, No. 12-cv-05064-JSC, 2016 WL 324015, at *5 (N.D. Cal. Jan. 27, 2016) (citation omitted).[6] Thus, Plaintiffs' need for this evidence is sufficient to "overcome" any asserted law enforcement privilege. *Hemstreet*, 2007 WL 4287602, at *2.

### C. Field Information Report

Defendants also assert law enforcement privilege over certain information appearing on the page bearing Bates number AOL-DEF-00528703, contained in an unclassified Field Information Report regarding a migrant caravan and possible marriage fraud activities. Dkt. No. 463 at 10; Gov't Ex. 18 (Bates Nos. AOL-DEF-00528691–707). First, Defendants wish to redact as privileged a numerical code that is used to track the report in Defendants' computer system; and second, Defendants assert that the names

---

[6] Whether CBP's revocation of Ms. Ramos's SENTRI privileges was "objectively reasonable" or was predicated on "the flimsiest of evidence" (Dkt. No. 463 at 8, 14) does not affect the Court's privilege or relevance analysis. The Court therefore makes no finding as to the correctness of CBP's decision.

identified under the section "Information Gaps" are privileged. Dkt. No. 463 at 10. Defendants designated this document "Highly Confidential – Attorneys' Eyes Only" under the terms of the Protective Order.

As to the numerical database identification code, Defendants declare that in the wrong hands, it could be used to "acquire, modify or remove … records" from Defendants' systems, thereby "corrupt[ing] the integrity of information and intelligence contained" in that system. Heitke Decl., ¶¶10, 12. Plaintiffs "concede" that the database identifier "falls within the scope of the law enforcement privilege." Dkt. No. 463 at 23. Furthermore, the Court has previously permitted redaction of these same "internal file identification codes" as "not relevant to the parties' claims or defenses." *Dousa*, 2019 WL 6311990, at *3. The database identification code is likewise irrelevant here, and given that Plaintiffs do not object to Defendants' assertion of privilege over this information, the Court will permit Defendants to claw back this document for the purpose of redacting the code from page AOL-DEF-00528703.

The "Information Gaps" on the same page are a different matter. Defendants' declarant states that this information, "when read together with the remaining information in this section and throughout the Field Information Report itself" would not only reveal deficits in CBP's information relating to the specific investigation described in the report, but would also allow a "hostile actor" to "extrapolate" more generally about weaknesses in CBP's intelligence-gathering process. Heitke Decl., ¶11. This hypothetical "hostile actor" could "then use those insights to inform his or her potential future unlawful activity and undermine CBP's mission." *Id.*, ¶12. As before, Defendants' declarant states that production of the document under the existing Protective Order "is not sufficient to prevent" this harm. *Id.*

The same deficiencies in Defendants' showing regarding the SENTRI email and images are present here. The harms articulated by Defendants are too speculative and generalized to establish that the information is privileged. Defendants' declarant describes how public disclosure of the document may harm Defendants' legitimate law

enforcement interests, but "aside from [their] conclusory assertion," Defendants provide "no basis" for the Court to conclude that the attorneys-eyes-only designation of this document "is inadequate to protect the competing interests involved." *Wagafe*, 334 F.R.D. at 625 (ordering information produced). For these reasons, the Court again finds that Defendants have not made the showing necessary to invoke the law enforcement privilege with respect to the "Information Gaps" on page AOL-DEF-00528703 of the Field Information Report. Although Defendants' failure relieves the Court of the need to assess Plaintiffs' interest in disclosure, the Court nevertheless further finds that the document is relevant to Plaintiffs' arguments in support of class certification, and that this interest is sufficient to overcome any asserted privilege.

### D. PowerPoint Presentation

Finally, Defendants assert the law enforcement privilege over portions of a CBP PowerPoint Presentation (Gov't Ex. 19, Bates Nos. AOL-DEF-00516605–623). Defendants initially designated the document "Confidential," but subsequently re-designated it "Highly Confidential – Attorneys' Eyes Only," to which Plaintiffs did not object. Declaration of Alexander J. Halaska, Dkt. No. 463-1, ¶23.

Specifically, Defendants assert that the same or similar numerical database identification codes as described above, which appear on page AOL-DEF-00516617 of the document, are protected by the privilege. Defendants represent disclosure of the database identifiers would "facilitate navigation" through CBP's databases and Plaintiffs do not dispute that these codes fall within the scope of the privilege. Heitke Decl., ¶21; Dkt. No. 463 at 23. For the same reasons discussed above, the Court finds that Defendants may claw back Government Exhibit 19 for the purpose of redacting the database identification codes appearing on page AOL-DEF-00516617. *Dousa*, 2019 WL 6311990, at *3. *See also Wagafe*, 334 F.R.D. at 624 (denying motion to compel where party seeking information "d[id] not oppose the redaction" of personal information).

The Court reaches a different conclusion with respect to Defendants' assertion of privilege over additional information contained on pages AOL-DEF-00516617 and AOL-

1  DEF-00516618.  Regarding page AOL-DEF-00516617, Defendants claim that
2  "[d]isclosure of this information would alert the individuals of interest, as well as any
3  other individuals involved in the same or similar potential unlawful activity, of the types
4  of actions CBP takes with certain types of sensitive information," and that "hostile
5  actors" could "exploit" this knowledge to evade CBP's law enforcement efforts.  Heitke
6  Decl., ¶21.  Defendants claim that disclosure of the information on page AOL-DEF-
7  00516618  (which is identical in content to one of the images embedded in the SENTRI
8  email, *see* Gov't Ex. 5 at AOL-DEF-00556922) "would alert individuals that they may be
9  of law enforcement interest, such that they may take steps to alter their behavior in order
10  to evade law enforcement activity."  Wagner Decl., ¶13.  As before, Defendants'
11  declarants state that designation of the document as "Confidential" or 'Highly
12  Confidential – Attorneys' Eyes Only" "would not be sufficient to prevent" the purported
13  harm to CBP's law enforcement operations.  Wagner Decl., ¶14; Heitke Decl., ¶22.

14  Once again, these assertions of harm "lack case-specific information" and do not
15  "offer a convincing reason" why disclosure under the protective order "already in place"
16  would be harmful. *See Estate of Kosakoff by Kosakoff v. City of San Diego*, 2009 WL
17  10672901, at *4 (S.D. Cal. Nov. 10, 2009).  Defendants have failed to make the requisite
18  threshold showing that the law enforcement privilege protects these documents from
19  disclosure.  *Id.* (finding defendants "did not make a threshold showing" of privilege).
20  Furthermore, the Court finds the document is relevant to Plaintiffs' arguments in support
21  of class certification, such that even if the law enforcement privilege applied, that
22  qualified privilege is overcome by Plaintiffs' need for the information.  *Wagafe*, 334
23  F.R.D. at 625 (finding "balance of factors weigh[ed] in favor of disclosure" where "[t]he
24  withheld information … is directly relevant to Plaintiff's claims").

### III. MOTION TO SEAL

26  "[T]he courts of this country recognize a general right to inspect and copy public
27  records and documents, including judicial records and documents." *Nixon v. Warner*
28  *Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).  "Unless a particular court record is one

1 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (*citing Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). "'The presumption of access is 'based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice.'" *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (*quoting United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). A party seeking to seal a judicial record bears the burden of overcoming the strong presumption of access. *Foltz*, 331 F.3d at 1135. Parties seeking to maintain confidentiality of documents attached to non-dispositive motions, such as the instant privilege dispute, must make a "'particularized showing'" of "'good cause.'" *Kamakana*, 447 F.3d at 1180 (*quoting Foltz*, 331 F.3d at 1137).

Although the Court has found that some of the documents in question are not privileged, Defendants' representations that these documents contain confidential and sensitive law-enforcement information that could harm CBP's and other entities' operations if publicly disclosed are sufficient to establish good cause for sealing. *See* Dkt. No. 446 at 8 (granting Defendants' motion to seal law enforcement records despite finding that the documents were not privileged). Further, the documents were designated by Defendants under the Protective Order as either "Confidential" or "Highly Confidential – Attorneys' Eyes Only." Accordingly, the Court finds the SENTRI email and 12 of its embedded images, the Field Information Report, and the PowerPoint presentation (Gov't Exs. 1-13, 18 and 19), and any portion of the Joint Motion that references these exhibits should be sealed. However, Defendants have not provided the Court with good cause to seal four statements posted by Ms. Ramos on her social media accounts (Gov't Exs. 14, 15, 16 and 17). Where information is "already publicly available," the Court cannot justify sealing it from public view. *See Kamakana*, 447 at 1184 (affirming unsealing order); *Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-cv-04984-

JST-MEJ, 2015 WL 1006534, at *6 (N.D. Cal. Mar. 6, 2015) (finding good cause for sealing was not established where "the same or similar information … ha[d] been made available for public viewing").

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED**:

1. Defendants' request to claw back the documents bearing Bates numbers AOL-DEF-00556914 through AOL-DEF-00556934 (Gov't Exs. 1-17) is **DENIED**.
2. Defendants' request to claw back the document bearing Bates numbers AOL-DEF-00528691-707 (Gov't Ex. 18) is **GRANTED** with respect to the database identification code on page AOL-DEF-00528703 and is otherwise **DENIED**.
3. Defendants' request to claw back the document bearing Bates numbers AOL-DEF-00516605-623 (Gov't Ex. 19) is **GRANTED** with respect to the database identification code on AOL-DEF-00516617 and **DENIED** as to all other information on pages AOL-DEF-00516617 and AOL-DEF-00516618.
4. The parties' Motion to Seal the Joint Motion is **GRANTED**.
5. Within 14 days of the date of this Order, Defendants shall lodge under seal on the docket the documents bearing Bates numbers AOL-DEF-00556914 through AOL-DEF-00556930, the document bearing Bates numbers AOL-DEF-00528691–707, and the document bearing Bates numbers AOL-DEF-00516605–623 (Gov't Exs. 1-13, 18 and 19), redacted for privilege as consistent with this Order.  Defendants shall also file these documents on the public docket, with the confidential information identified by Defendants redacted.

//
//
//
//
//
//

6. Within 14 days of the date of this Order, Defendants shall file on the public docket the documents bearing Bates numbers AOL-DEF-00556931 through AOL-DEF-00556934 (Gov't Exs. 14, 15, 16 and 17).

**IT IS SO ORDERED**.

Dated: June 26, 2020

Hon. Karen S. Crawford
United States Magistrate Judge