MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:   +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, | Case No.:  17-cv-02366-BAS-KSC |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR CLARIFICATION OF THE PRELIMINARY INJUNCTION** |
| v. | |
| Chad F. Wolf,[1] *et al.*, | |
| Defendants. | Hearing Date: August 17, 2020 |
| | **NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

---

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
    Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
    *bazmy@ccrjustice.org*
    Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
    *gschwarz@ccrjustice.org*
    Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
    *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
    Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
    *sarah.rich@splcenter.org*
    Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
    *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
    Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
    *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

MEMO OF P. & A. IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................. 1

II.   BACKGROUND ................................................................. 4

    A.    Implementation of the Preliminary Injunction ...................... 4

    B.    The Asylum Process ...................................................... 5

    C.    Noncompliance with the Preliminary Injunction .................. 6

    D.    Defendants' Position on the Injunction's Scope ................... 8

III.  CLARIFICATION OF THE SCOPE AND APPLICABILITY OF
THE PRELIMINARY INJUNCTION IS WARRANTED ....................... 10

    A.    Lifting the administrative stay of the preliminary injunction
warrants reopening or reconsidering past determinations
regarding class members' asylum eligibility. .................... 12

    B.    EOIR is bound by the preliminary injunction .................... 13

    C.    Defendants' class member identification efforts must
encompass all provisional class members. ....................... 15

IV.   CONCLUSION ................................................................. 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Al Otro Lado v. Wolf*,
   945 F.3d 1223 (9th Cir. 2019) ................................................................. 4

*Al Otro Lado v. Wolf*,
   952 F.3d 999 (9th Cir. 2020) ............................................................. 4, 15

*Barahona-Gomez v. Reno*,
   167 F.3d 1228 (9th Cir. 1999) ............................................................... 15

*N.A. Sales Co. v. Chapman Indus. Corp.*,
   736 F.2d 854 (2d Cir. 1984) .................................................................. 11

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978) .............................................................................. 15

*Paramount Pictures Corp. v. Carol Publ'g Grp.*,
   25 F. Supp. 2d 372 (S.D.N.Y. 1998) .................................................... 11

*Regal Knitwear Co. v. Nat'l Labor Relations Bd.*,
   324 U.S. 9 (1945) ............................................................................ 11, 15

*Robinson v. Delicious Vinyl Records Inc.*,
   No. CV 13-411-CAS, 2013 WL 12119735 (C.D. Cal. Sept. 24,
   2013) ...................................................................................................... 11

*United States v. Laurins*,
   857 F.2d 529 (9th Cir. 1988) ................................................................. 13

*United States v. N.Y. Tel. Co.*,
   434 U.S. 159 (1977) .............................................................................. 15

*Zeetogroup, LLC v. Fiorentino*,
   No. 19-CV-458 JLS (NLS), 2020 WL 886866 (S.D. Cal. Feb. 24,
   2020) ...................................................................................................... 12

**Statutes**

8 U.S.C. § 1181(a) ....................................................................................... 5

8 U.S.C. § 1182(a) ................................................................................ 5

8 U.S.C. § 1225(a)(3) .......................................................................... 5

8 U.S.C. § 1225(b) .............................................................................. 5

8 U.S.C. § 1225(b)(2) .......................................................................... 5

8 U.S.C. § 1229 ............................................................................... 5, 6

8 U.S.C. § 1229a ............................................................................ 5, 6

**Other Authorities**

8 C.F.R. § 235.3(b)(4) ........................................................................ 5

8 C.F.R. § 235.6(a)(1)(ii) ................................................................... 6

8 C.F.R. § 235.6(a)(1)(iii) .................................................................. 6

Dara Lind (@DLind), Twitter (November 27, 2019, 9:37 AM),
    https://twitter.com/DLind/status/1199698671656415233 ............... 14

Fed. R. Civ. P. 65(d) ...................................................................... 13

Human Rights First, *Asylum Denied, Families Divided:  Trump
    Administration's Illegal Third-Country Transit Ban,* (July 2020),
    https://www.humanrightsfirst.org/sites/default/files/AsylumDenied
    FamiliesDivided.pdf ........................................................................ 2

U.S. Dep't of Justice, Executive Office for Immigration Review, Fact
    Sheet: Executive Office for Immigration Review: An Agency
    Guide, 1 (Dec. 2017),
    https://www.justice.gov/eoir/page/file/eoir_an_agency_guide/down
    load ................................................................................................ 3, 5

# I.    INTRODUCTION

On November 19, 2019, this Court issued a preliminary injunction that prohibits Defendants from applying the Asylum Ban, 84 Fed. Reg. 33,829 (July 16, 2019), *codified at* 8 C.F.R. §§ 208.13(c)(4), 1208.13(c)(4), to "***all*** non-Mexican asylum seekers who were unable to make a direct asylum claim" at a port of entry before July 16, 2019 "because of the U.S. Government's metering policy, and who continue to seek access to the U.S. asylum process." Dkt. 330 at 36 (emphasis added). On March 5, 2020, the Ninth Circuit denied Defendants' motion to stay the injunction pending appeal and dissolved its prior administrative stay. Since then, Plaintiffs have brought to Defendants' attention numerous violations of the preliminary injunction. After extensive meet-and-confer sessions, the parties are at an impasse over the injunction's scope. Accordingly, Plaintiffs seek clarification from this Court.

In implementing the preliminary injunction, Defendants have taken minimal and insufficient steps to identify class members and to ensure that the Asylum Ban does not impact their eligibility for asylum. Rather than identify "all" class members, Defendants have identified only class members who either (1) had their initial credible fear interview after the administrative stay was lifted, or (2) were in the custody of U.S. Immigration and Customs Enforcement (ICE) when the administrative stay was lifted because they were subject to a final order of removal. See Lev Decl. ¶¶ 10(a), (d), (e); 11; 12(b).

Defendants fail to comprehensively identify class members at many stages of the asylum process—such as those currently seeking administrative or judicial review of their asylum claims, and those already deemed ineligible for asylum because of the Asylum Ban but who were not in ICE's custody when the administrative stay was lifted because they had been removed from the United States, were granted only withholding of removal or Convention Against Torture relief, or for other reasons. As a result of this haphazard compliance, the government

MEMO OF P. & A. IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

1   has applied the Asylum Ban to class members even after the stay was lifted.

2   Plaintiffs—relying solely on *ad hoc* reporting by individual attorneys representing

3   class members in their asylum proceedings—have identified numerous such

4   examples.[2] At least three times, class members with final orders granting

5   withholding of removal who were not in ICE custody filed motions to reopen their

6   cases after the stay was lifted; those motions were denied on the theory that the

7   applicable law was "unsettled" because the preliminary injunction is on appeal. *See*,

8   *e.g.*, Ex. 1 at 6, Ex. 2 at 6. And in another even more troubling case, an individual's

9   asylum claim was denied on the basis of the Asylum Ban more than a month after

10  the Ninth Circuit dissolved the administrative stay. Ex. 3 at 3. In that case, counsel

11  representing Defendant DHS opposed the class member's motion to reopen and

12  reconsider, notwithstanding the clear error of law that had occurred in subjecting the

13  class member to the Asylum Ban. *Id*.

14      As described above, all the examples identified by Plaintiffs involve class

15  members who have affirmatively raised their entitlement to the injunction's

16  protection, only to be improperly rejected. In addition to the improper denial of such

17  class members' motions, Defendants have failed to take adequate steps to identify

18  all the class members who have gone through Defendants' custody since July 16,

19  2019 and been subject to the Asylum Ban—although the relevant information is at

20  Defendants' disposal. *See*, *e.g.*, Lev Decl. ¶¶ 8(a), (b), 9(a). Instead of identifying all

21  affected class members, Defendants have required asylum seekers themselves—

22  many of whom are unrepresented—to self-identify as class members, an absurd

23  option that has almost certainly allowed for some class members to fall through the

24

25  [2] Plaintiffs suspect there are many additional instances of noncompliance that simply
    have not been brought directly to the attention of Plaintiffs' counsel. *See*, *e.g.*,
26  Human Rights First, *Asylum Denied, Families Divided: Trump Administration's
    Illegal    Third-Country    Transit    Ban*,    12    (July    2020),
27  https://www.humanrightsfirst.org/sites/default/files/AsylumDeniedFamiliesDivide
    d.pdf (describing an immigration judge in Laredo who repeatedly applied the Ban to
28  class members and denied asylum in December 2019, prior to the Ninth Circuit's
    administrative stay).

cracks and denied others the full protections to which they are entitled. Therefore, Plaintiffs file this motion seeking clarification of Defendants' obligations under the preliminary injunction.

*First*, Plaintiffs request that the Court clarify that the preliminary injunction is fully in force and that, therefore, the government must reopen or reconsider past determinations in which potential class members were deemed ineligible for asylum based on the Asylum Ban, regardless of what stage of removal proceedings a potential class member is in. To this end, Plaintiffs also seek clarification that the Executive Office for Immigration Review (EOIR) is bound by the preliminary injunction.[3]

*Second*, Plaintiffs request that the Court make clear that Defendants must make all reasonable efforts to identify all potential class members, including those already removed from the United States, and inform them of their potential class membership and of the injunction. Because most asylum seekers are unrepresented, it is unreasonable to expect them to be aware of, and advocate for application of, the preliminary injunction to their cases. Right now, whether a class member will receive the benefit of the injunction hinges on the happenstance of what stage of the asylum process she is in. The injunction does not permit this inconsistency.

This Court's preliminary injunction order mandates both prospective relief—by ordering Defendants to "return to the pre-Asylum Ban practices for processing the asylum applications" of class members—*and retroactive relief*—by enjoining Defendants "from applying the Asylum Ban" to class members. Dkt. 330 at 36. Clarification is warranted because Defendants' current implementation efforts effectively limit retroactive relief to an arbitrary subset of class members. But all

---

[3] EOIR is the government agency, housed in the U.S. Department of Justice, charged with "administer[ing] the Nation's immigration court system," which includes the U.S. immigration courts and the Board of Immigration Appeals. U.S. Dep't of Justice, Executive Office for Immigration Review, Fact Sheet: Executive Office for Immigration Review: An Agency Guide, 1 (Dec. 2017), https://www.justice.gov/eoir/page/file/eoir_an_agency_guide/download.

MEMO OF P. & A. IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

class members are currently entitled to relief under the preliminary injunction, whether or not they might have the opportunity for further review at some unspecified and unidentified time in the future.

## II.    BACKGROUND

### A.    Implementation of the Preliminary Injunction

On November 19, 2019, this Court enjoined Defendants "from applying the Asylum Ban" to a provisionally certified class of "all non-Mexican asylum-seekers who were unable to make a direct asylum claim at a U.S. port of entry before July 16, 2019 because of the U.S. Government's metering policy, and who continue to seek access to the U.S. asylum process." Dkt. 330 at 36. The Court also ordered Defendants to "return to the pre-Asylum Ban practices for processing the asylum applications of members of the certified class." *Id.*

More than two weeks after the Court issued the preliminary injunction, on December 4, 2019, Defendants appealed the Court's order and sought an emergency stay of the preliminary injunction pending appeal. Dkts. 335, 336. Unsatisfied with this Court's response, three days later, Defendants asked the Ninth Circuit to stay the injunction. The Ninth Circuit granted an administrative stay on December 20, 2019, making clear that its decision to do so was "not in any respect on the merits of the dispute." *Al Otro Lado v. Wolf*, 945 F.3d 1223, 1224 (9th Cir. 2019). Then, on March 5, 2020, the Ninth Circuit denied Defendants' stay motion and lifted the administrative stay. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1003 (9th Cir. 2020). So as of March 5, 2020, this Court's preliminary injunction has been in effect.

Plaintiffs have sought the internal written guidance that various government agencies (including EOIR) have issued on how to comply with the injunction. But Defendants have refused to share this guidance (although they have provided high-level summaries of some of the guidance).  See Lev Decl. ¶¶ 6-10.[4]

---

[4] On January 21, 2020, Plaintiffs propounded a request for production on Defendants seeking "[a]ll documents providing guidance to DHS officers or employees

MEMO OF P. & A. IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

## B.     The Asylum Process

There are various stages of removal proceedings at which the Asylum Ban might be applied to class members because of the opportunities for review built into the U.S. system to protect those fleeing persecution or torture. These procedures are summarized below.

All noncitizens arriving at ports of entry (POEs) along the U.S.-Mexico border must be inspected by U.S. Customs and Border Protection (CBP) officials. 8 U.S.C. § 1225(a)(3). CBP officials determine whether each noncitizen may be admitted to the United States. *See id.* § 1182(a). Because asylum seekers often flee their countries on very short notice, they frequently lack valid entry documents and so are inadmissible. *See id.* § 1181(a).

After determining that a noncitizen is inadmissible, CBP places her into either expedited or regular removal proceedings. *Id.* §§ 1225(b) (expedited proceedings), 1229 (regular removal proceedings). If an asylum seeker is placed in regular removal proceedings, CBP issues her a Notice to Appear (NTA), which allows the asylum seeker to pursue her asylum claim before an immigration judge (discussed below). *See id.* §§ 1225(b)(2), 1229, 1229a.

Expedited removal proceedings are more streamlined and are reserved for people apprehended at or near the border. *See id.* § 1225(b)(1)(A)(i). But, if a noncitizen placed in expedited removal proceedings "indicates either an intention to apply for asylum . . . or a fear of persecution," then CBP must refer her for a credible fear interview with an asylum officer from U.S. Citizenship and Immigration Services (USCIS). *Id.* § 1225(b)(1)(A)(ii). If the asylum officer finds there to be a "significant possibility" that the individual can establish asylum eligibility, then she is transferred into regular removal proceedings. *See id.* § 1225(b)(1)(B)(ii), (v); 8

concerning the implementation of the Court's November 19, 2019 preliminary injunction order." Dkt. 470 at 2. Defendants refused to search for or produce any responsive documents, and the discovery dispute over this request is currently before Magistrate Judge Crawford. *Id.*

MEMO OF P. & A. IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

C.F.R. § 235.3(b)(4). In regular removal proceedings, asylum seekers can submit an asylum application, develop a full record before an immigration judge, appeal to the Board of Immigration Appeals (BIA), and seek judicial review of an adverse decision. 8 U.S.C. §§ 1229, 1229a; 8 C.F.R. §§ 235.6(a)(1)(ii), (iii).

Thus, a government official could apply the Asylum Ban to class members (or flag their files for possible application of the Asylum Ban, *see* Lev Decl. ¶¶ 8-9) at the CBP inspection stage; during a USCIS credible fear interview; during proceedings before an immigration judge; or on administrative appeal to the BIA. Because the injunction proscribes any application of the Asylum Ban to class members, class members are entitled to relief whenever they appear before an agency or officer involved in the asylum process.

## C.    Noncompliance with the Preliminary Injunction

In late April 2020, Plaintiffs first raised with Defendants their concern that Defendants were not complying with the injunction. *See* Lev Decl. ¶ 4. The first instance of noncompliance brought to Plaintiffs' attention arose from proceedings before an immigration judge. When Plaintiffs raised their concern with the judge's application of the injunction, Defendants replied that "EOIR [] has agreed to comply with the PI" and that "EOIR's Office of the General Counsel (OGC) issued legal guidance on March 5, 2020, which was disseminated the morning of March 6, 2020, to IJs [immigration judges] and Board members." Lev Decl. ¶ 4. However, Defendants refused to share or describe the contents of this written guidance with Plaintiffs. Defendants agreed to provide additional guidance to the judge involved in the case but also refused to share or describe that guidance to Plaintiffs. *Id.*

Whatever it was, the guidance did not work. In May 2020, Plaintiffs identified three more instances of noncompliance by judges *in the same court*. *See*, *e.g.*, Lev Decl. ¶ 5; Ex. 1; Ex. 2. In all these cases, class members' asylum claims had initially been denied based on application of the Asylum Ban. Upon dissolution of the administrative stay, the class members moved to reopen their cases so that their

asylum claims could be considered on the merits—that is, in accordance with "pre-Asylum Ban practices for processing the asylum applications of members of the certified class," and without the Asylum Ban being "appl[ied]" to them. Dkt. 330 at 36. In both cases, an immigration judge denied the motion to reopen, finding that in light of the pendency of the appeal of the preliminary injunction (and notwithstanding the dissolution of the stay), the state of the law is "unsettled" and that the class members therefore "cannot show a material change in law" warranting reconsideration. *See*, *e.g.*, Ex. 1 at 6; Ex. 2 at 6. After alerting Defendants to these additional cases, Plaintiffs learned that the cases were subsequently reopened *sua sponte*. *See*, *e.g.*, Ex. 1 at 9 (citing only "further consideration" as the basis for reopening and granting asylum).

On June 24, 2020, Plaintiffs brought another instance of noncompliance with the preliminary injunction to Defendants' attention. *See* Lev Decl. ¶ 13. In this case, an immigration judge applied the Asylum Ban to a class member on April 21, 2020—well over a month after the Ninth Circuit had dissolved the stay. Ex. 3 at 3. The immigration judge initially granted a motion to reopen based on the dissolution of the stay, in part because DHS had failed to file an opposition. *Id.* However, after DHS filed an untimely opposition to the motion, the judge vacated his prior decision and denied the motion to reopen. *Id.* That is, Defendant DHS took affirmative steps to prevent the reopening of a class member's asylum case even though the Asylum Ban had been wrongfully applied to that class member while the preliminary injunction was in effect. Of particular concern is the basis for the immigration judge's decision after hearing from DHS. Although the asylum seeker had presented a declaration from Al Otro Lado Border Rights Project Director Nicole Ramos as well as a copy of the Tijuana waitlist, the judge rejected the claim of class membership essentially because he deemed the documents not sufficiently reliable. Ex. 3 at 4-5. Having refused to obtain copies of the very waitlists they relied upon to determine who could enter the United States pursuant to their metering policy, *see*

1   Dkt. 330 at 27-28, Defendants are now apparently arguing that the evidence

2   presented by asylum seekers—who, of course, cannot access the official waitlists

3   directly—is insufficient to establish class membership.[5]

### D.    Defendants' Position on the Injunction's Scope

5   Plaintiffs and Defendants first met and conferred about these instances of

6   noncompliance with the preliminary injunction on June 2, 2020. Lev Decl. ¶ 3. In

7   response to discussions during the meet-and-confer, on June 5, 2020, Defendants

8   informed Plaintiffs that "[t]he government agrees that asylum officers, immigration

9   judges, and Board members are not to apply the [Asylum Ban] to provisional class

10  members at any stage of their removal proceedings, but *disagrees with Plaintiffs'*

11  *position that any non-final application of the [Asylum Ban] to a class member*

12  *violates the preliminary injunction while administrative proceedings remain*

13  *ongoing*." Lev Decl. ¶ 7(b) (emphasis added). Thus, Defendants do not view

14  application of the injunction to a class member as problematic so long as the class

15  member may obtain further administrative review of her claim. They declined to

16  take further steps to identify class members and ensure they receive the benefit of

17  the preliminary injunction. Lev Decl. ¶ 12(c).

18  Defendants also have continued to refuse to produce the written guidance sent

19  to the various government agencies involved in implementing the preliminary

20  injunction, but did provide a summary of some of the issued guidance. Lev Decl. ¶¶

21  6-10. Significantly, Defendants' summary revealed that, prior to the dissolution of

22  the stay, U.S. Border Patrol (BP) and CBP's Office of Field Operations (OFO) issued

---

24  [5] Plaintiffs have not yet conferred with Defendants regarding what level of evidence
    the government considers sufficient to establish class membership and what
25  guidance has been issued in that regard. Plaintiffs believe that the example described
    above constitutes a clear violation of the injunction. To the extent that the parties
26  come to an impasse regarding the question of whether evidence of the kind presented
    in the cited example is sufficient to establish class membership and whether
27  Defendants have taken appropriate steps to ensure that such evidence is accepted,
    Plaintiffs reserve the right to seek future court intervention on that issue, including
28  through a motion for contempt, to enforce the injunction, or otherwise. At this
    juncture, Plaintiffs' clarification motion is limited to the issues set forth below.

MEMO OF P. & A. IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

1   guidance instructing officers to annotate an asylum seeker's immigration documents

2   to indicate that the individual is a potential class member. Lev Decl. ¶¶ 8(a), (b).

3       Following the dissolution of the stay, Defendants apparently issued guidance

4   requiring renewed screening for class membership for individuals who *had not yet*

5   *had* credible fear interviews. Lev Decl. ¶ 10(a). Those who had already had such

6   interviews, however, and had been subject to the Asylum Ban, were identified and

7   referred for renewed screening *only* if they had final removal orders and happened

8   to be in ICE custody on March 16, 2020, when ICE Enforcement and Removal

9   Operations (ERO) issued guidance regarding the dissolution of the stay. Lev Decl.

10  ¶¶ 10(d), (e); 11. All other class members—those still in administrative proceedings,

11  those with final orders but not in ICE custody as of March 16, 2020, and those

12  already deported—are on their own. They need to self-identify as class members and

13  raise their claims to class membership in whatever way they can.

14      Defendants also claim that EOIR issued guidance regarding the preliminary

15  injunction and dissolution of the stay to immigration judges and the Board of

16  Immigration Appeals, including supplemental guidance to the Tacoma Immigration

17  Court, where judges repeatedly denied motions to reopen class members' cases as

18  described above. Lev Decl. ¶¶ 10 (b), (f), (g). Defendants have refused to disclose

19  the substance of that guidance to Plaintiffs, but—based on the repeated instances of

20  noncompliance described above—it appears to be insufficient to ensure compliance

21  with the preliminary injunction. Defendants have not disclosed the substance of any

22  guidance issued to attorneys representing the government in removal proceedings

23  regarding how they should handle cases of possible class members to whom the

24  Asylum Ban was applied at earlier stages of their proceedings.

25      On June 12, 2020, Plaintiffs and Defendants met-and-conferred a second time.

26  *See* Lev Decl. ¶ 3. At this meet-and-confer, Defendants confirmed that despite

27  guidance to BP and OFO to annotate immigration files to indicate potential class

28  membership, CBP was not relying on this information or taking any other steps to

MEMO OF P. & A. IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

identify potential class members for purposes of implementing the preliminary injunction. Lev Decl. ¶ 11. Moreover, ICE ERO's identification of potential class members in its custody occurred only once, and ICE ERO screened individuals with final removal orders in its custody only at that time. *Id.* Finally, Defendants confirmed that the government's position is that identification and screening of individuals for class membership is required only for those individuals with final orders of removal, because all others still would have the opportunity to assert claims of class membership under the injunction at later stages of the administrative process. *Id.*

The import of the government's position is that those class members to whom the Asylum Ban had been applied must continue to seek administrative or judicial review in order to obtain the benefit of the preliminary injunction. This raises two distinct concerns. First, class members are entitled to have their asylum claims decided without application of the Asylum Ban and should not have to pursue additional review to obtain the injunction's benefits. Second, and more importantly, the government's position would mean that class members to whom the Asylum Ban was wrongly applied will benefit from the injunction only if they are sophisticated enough to pursue further administrative review and identify the government's legal error. It is unrealistic to expect that most asylum seekers, the majority of whom remain unrepresented, would be aware of the preliminary injunction, let alone the administrative stay, its subsequent dissolution, and the legal implications that those events have for their claims. This is especially true because Defendants have undertaken no efforts to identify most class members or inform them of the injunction.

## III.    CLARIFICATION OF THE SCOPE AND APPLICABILITY OF THE PRELIMINARY INJUNCTION IS WARRANTED

Given Defendants' stubbornly narrow view of the injunction, which is causing ongoing harm to class members, Plaintiffs ask the Court to clarify the injunction's

MEMO OF P. & A. IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

scope. "It is undoubtedly proper for a district court to issue an order clarifying the scope of an injunction in order to facilitate compliance with the order and to prevent 'unwitting contempt.'" *Paramount Pictures Corp. v. Carol Publ'g Grp.*, 25 F. Supp. 2d 372, 374 (S.D.N.Y. 1998) (citing *Regal Knitwear Co. v. Nat'l Labor Relations Bd.*, 324 U.S. 9, 15 (1945)). "By clarifying the scope of a previously issued preliminary injunction, a court 'add[s] certainty to an implicated party's effort to comply with the order and provide[s] fair warning as to what future conduct may be found contemptuous.'" *Robinson v. Delicious Vinyl Records Inc.*, No. CV 13-411-CAS (PLAx), 2013 WL 12119735, at *1 (C.D. Cal. Sept. 24, 2013) (quoting *N.A. Sales Co. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984)).

Plaintiffs have identified repeated and continuing violations of the preliminary injunction. Subsequent conversations with Defendants indicate that their position on the proper application of the injunction is inconsistent with the language of the preliminary injunction order, inconsistent with past positions the government has taken in briefing its appeal of the preliminary injunction, and insufficient to ensure that all class members obtain the benefits of the injunction. Therefore, Plaintiffs seek an order clarifying what steps Defendants must take to ensure compliance with the preliminary injunction's requirement that the Asylum Ban not be applied to class members. Specifically, as described more fully below, Plaintiffs seek an order:

- Clarifying that the government is required to reopen or reconsider past determinations that potential class members were ineligible for asylum based on the Asylum Ban, regardless of the stage of removal proceedings such potential class members are in;

- Clarifying that EOIR is bound by the terms of the preliminary injunction;

- Clarifying that Defendants must make all reasonable efforts to identify class members; and

- Clarifying that Defendants must inform all identified class members, including those already removed from the United States, of their potential

MEMO OF P. & A. IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

1    class membership and the existence and import of the preliminary

2    injunction.

3    **A.    Lifting the administrative stay of the preliminary injunction**

4    **warrants reopening or reconsidering past determinations**

5    **regarding class members' asylum eligibility.**

6    Clarification of a preliminary injunction is "necessary" when it is "clear to the

7    Court that the Parties have different understandings of the scope of the Injunction."

8    *Zeetogroup, LLC v. Fiorentino*, No. 19-CV-458 JLS (NLS), 2020 WL 886866, at *2

9    (S.D. Cal. Feb. 24, 2020). Here, the parties have significantly different

10   understandings of which class members should be afforded relief and when in the

11   process that relief should be afforded.

12   The preliminary injunction prohibits Defendants from applying the Asylum

13   Ban to "*all* non-Mexican asylum seekers who were unable to make a direct asylum

14   claim" at a port of entry before July 16, 2019 "because of the U.S. Government's

15   metering policy, and who continue to seek access to the U.S. asylum process." Dkt.

16   330 at 36 (emphasis added). The injunction's language is not limited to certain stages

17   of removal proceedings. Therefore, relief for class members under the preliminary

18   injunction should not be arbitrarily limited. And yet, Defendants' stated position

19   "that any non-final application of the [Asylum Ban] to a class member [does not]

20   violate[] the preliminary injunction while administrative proceedings remain

21   ongoing," compels just this result. Lev Decl. ¶ 7(b).

22   Defendants' position presumes that class members are aware of the

23   preliminary injunction and also aware of the entire administrative process and can

24   access it. In fact, Defendants' position leads to the very instances of noncompliance

25   that Plaintiffs have identified. For example, in the latest example of noncompliance

26   that Plaintiffs shared with Defendants, a class member was granted withholding of

27   removal, instead of asylum, based on an improper application of the Asylum Ban

28   after March 5, 2020. Ex. 3 at 3. Although this class member filed a motion to reopen

MEMO OF P. & A. IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

1  her proceedings, the immigration judge ultimately denied the class member this

2  relief, based on an untimely *opposition by a Defendant in this case*. *Id.* Unless this

3  class member can and does appeal the decision, her administrative proceedings have

4  come to an end, and she will have been denied relief under the preliminary injunction

5  despite qualifying for protection.[6] Under Defendants' reasoning, this immigration

6  judge's ruling would not constitute a violation of the preliminary injunction because

7  the class member could still appeal and try her luck with another adjudicator.[7] The

8  implementation of this Court's injunction should not be based on the luck of the

9  draw. Class members are entitled to relief under the preliminary injunction *any* time

10  they come before an agency or officer tasked with implementing the injunction,

11  notwithstanding the opportunity for further review at some unspecified and

12  unidentified time in the future.

13  ### B.    EOIR is bound by the preliminary injunction.

14  Defendants take the position that, as a nonparty, EOIR has no obligations

15  under the injunction, but "has agreed to comply with the PI." Lev Decl. ¶ 4. This

16  logic does not square with the law or the government's prior statements.

17  Under Fed. R. Civ. P. 65(d), "[a] court order binds parties and those in active

18  concert with parties who have actual knowledge of the order." *United States v.*

19  *Laurins*, 857 F.2d 529, 535 (9th Cir. 1988). Here, Defendants have admitted that

20  EOIR officers work with DHS to implement the preliminary injunction. *See* Lev

21  Decl. ¶ 4. The release of guidance by EOIR's Office of General Counsel regarding

22  implementation of the preliminary injunction confirms EOIR's actual knowledge of

23  _____

24  [6] Plaintiffs understand that the Immigration Judge subsequently reversed his decision
    denying asylum, after Plaintiffs raised the issue with efense counsel in this case. But

25  such *ad hoc* remedies based on Plaintiffs' counsel's fortuitous intervention would
    only ensure compliance with the injunction in the rare cases that comes to Plaintiffs'

26  counsel's attention.

27  [7] This reasoning is inconsistent with Defendants' stated position that "asylum
    officers, immigration judges, and Board members are not to apply the [Asylum Ban]

28  to provisional class members at any stage of their removal proceedings." Lev Decl.
    ¶ 7(b).

13

1  the order as well.

2      Days after issuance of the preliminary injunction, on November 22, 2019,

3  EOIR's Office of General Counsel released guidance regarding implementation of

4  the injunction. Although the government has refused to share any EOIR guidance,

5  this initial guidance was leaked to the public. *See* Dara Lind (@DLind), Twitter

6  (Nov. 27, 2019, 9:37AM), https://twitter.com/DLind/status/1199698671656415233

7  (providing access to "Guidance from EOIR Office of General Counsel, sent Friday,

8  November 22, 2019"). In particular, the guidance stated that "while EOIR is not a

9  party to this litigation, EOIR should conform its actions to comply with the order

10 and thus should not apply the Rule to these class members because," in part, "under

11 FRCP 65(d)(2), the order arguably binds EOIR as a participant with DHS in

12 determining asylum eligibility for class members in credible fear review and

13 removal proceedings." *Id.* The guidance instructs "where the individual may be an

14 *Al Otro Lado* class member, the adjudicator should determine whether the individual

15 approached a POE [port of entry] at the southern border, before July 16, 2019, to

16 seek asylum but was not processed because of DHS' metering policy." *Id.* The

17 government's own lawyers acknowledge that Fed. R. Civ. P. 65(d) applies to EOIR

18 in this litigation and, therefore, instructs immigration judges and the Board of

19 Immigration Appeals to actively participate in identifying class members.

20     Moreover, in their briefing in support of their appeal of the preliminary

21 injunction, Defendants argued that the injunction must be vacated because it "enjoins

22 immigration judges or the Board of Immigration Appeals from concluding that

23 aliens subject to the Rule have failed to carry their burden of demonstrating their

24 eligibility for 'relief . . . from removal' in the form of asylum." Ex. 5 at 37-38.

25 Defendants cannot claim that the impact of implementing the injunction on EOIR is

26 a basis to vacate that injunction, but, conversely, that EOIR has no duty to implement

27 the same injunction. Therefore, Plaintiffs request clarification from the court that

28 EOIR has not merely "agreed" to implement the injunction, but rather is bound by

MEMO OF P. & A. IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

1  the terms of the preliminary injunction. *See Regal Knitwear*, 324 U.S. at 15 (finding

2  clarification appropriate "in the light of a concrete situation that left parties or

3  'successors and assigns' in the dark as to their duty toward the court.").[8]

4      **C.    Defendants' class member identification efforts must encompass all**

5          **provisional class members.**

6      A court may use its discretion under Rule 23(d) to require that Defendants

7  identify class members when Defendants "may be able to perform [this] necessary

8  task with less difficulty or expense than could the representative plaintiff."

9  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 355-56 (1978); *see also*

10 *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1236-37 (9th Cir. 1999). Here,

11 Defendants have admitted that they already are identifying certain class members.

12 Lev Decl. ¶¶ 8(a), (b), 10(d), (e). Moreover, the information needed to

13 comprehensively identify class members is uniquely within Defendants' custody and

14 control. For example, Defendants have access to the immigration documents that

15 *they themselves annotated to identify potential class members*, but which they have

16 heretofore refused to review. *See* Lev Decl. ¶¶ 8(a), (b); 11. Defendants also likely

17 have access to waitlists identifying many class members who were metered and

18 access to the status of the removal proceedings of identified potential class

19 members.[9] *See* Ex. 4 at 224:10-15, 280:5-285:16. In addition, Defendants have

20 access to the immigration files of potential class members inspected and processed

21 after July 16, 2019, when the Asylum Ban was implemented. Combined with the

22 waitlists, which indicate the dates when individuals were metered, these files could

---

23  [8] Separate and apart from Rule 65, the All Writs Act, upon which this Court based
24  its authority to issue the injunction, also authorizes the court to issue injunctions
    binding on non-parties. *United States v. N.Y. Tel. Co.*, 434 U.S. 159 (1977) ("The
25  power conferred by the Act extends, under appropriate circumstances, to persons
    who, though not parties to the original action or engaged in wrongdoing, are in a
26  position to frustrate the implementation of a court order or the proper administration
    of justice….").

27  [9] Both this Court and the Ninth Circuit motions panel found that the waitlists contain
28  relevant evidence to identify class members. See Dkt. 330 at 28; *Al Otro Lado*, 952
    F.3d at 1009-10.

MEMO OF P. & A. IN SUPP. OF MOT. FOR
                                        CLARIFICATION OF THE PRELIM. INJ.

be used to determine whether the Asylum Ban was improperly applied to a particular individual and the state of that individual's removal proceedings.

Defendants' only explanation for limiting their identification and screening of class members to asylum seekers at the beginning and the end of the asylum process is that all other potential class members may self-identify as class members during subsequent stages of their removal proceedings. Lev Decl. ¶¶ 7(b); 11. But this is insufficient for four reasons.

First, class members are presently eligible for relief under the injunction. Defendants may not rest on the assumption that removal proceedings will proceed in a timely manner and offer class members a meaningful future opportunity to seek relief under the injunction.

Second, Defendants admitted that the identification of potential class members with final orders in ICE custody was intended to occur only once because all other class members who already had the Asylum Ban applied to them should receive the benefit of the injunction at a later stage of their removal proceedings. In this way, Defendants place certain class members in a potential Catch-22: Defendants won't identify or screen class members without final orders who have been subject to the Asylum Ban because they have other avenues to get relief; however, if that process fails (which is likely, given that class members must affirmatively seek such relief) and these class members end up with final orders at some point in the future, these class members will not receive relief under the preliminary injunction because Defendants are no longer identifying class members with final orders in ICE custody.

Third, there is a sub-group of class members completely overlooked by Defendants' reasoning: class members who have been granted withholding of removal. These class members currently have protection in the United States, but the preliminary injunction awards them access to the *asylum* process. These class members have the right to have their asylum claims evaluated on the merits, but

MEMO OF P. & A. IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

1  without representation or access to information regarding the import of the

2  preliminary injunction, they may never be alerted to the additional relief for which

3  they may be eligible.

4      Finally, Defendants' reasoning also discounts the potentially large number of

5  class members who have final orders and have already been deported because their

6  claims for asylum were foreclosed by application of the Asylum Ban.

7                                      *   *   *

8      Defendants argue that the limited instances (in their view) of noncompliance

9  identified by Plaintiffs demonstrate that they are properly implementing the

10 injunction. But this is akin to arguing that cases of COVID-19 are minimal in areas

11 where testing for the virus is not available. Without visibility into the steps that

12 Defendants have taken to ensure implementation of the injunction, and without

13 access to the records that would demonstrate compliance or lack thereof, Plaintiffs

14 are left in the dark. But even in the dark, they have identified five separate instances

15 of noncompliance, and the government has essentially conceded that it is taking

16 insufficient steps to implement the injunction.

17 **IV.    CONCLUSION**

18     For the foregoing reasons, Plaintiffs request that the Court grant its motion for

19 clarification and make clear that:

20  • The government must take immediate affirmative steps to reopen or

21    reconsider past determinations that potential class members were ineligible

22    for asylum based on the Asylum Ban, regardless of what stage of removal

23    proceedings such potential class members are in. Such steps include

24    identifying affected class members and either directing immigration judges

25    or the BIA to reopen or reconsider their cases or directing DHS attorneys

26    representing the government in such proceedings to affirmatively seek, and

27    not oppose, such reopening or reconsideration;

28  • EOIR is bound by the terms of the preliminary injunction;

MEMO OF P. & A. IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

- Because Defendants, unlike Plaintiffs, have the relevant information at their disposal, Defendants must make all reasonable efforts to identify class members, including but not limited to reviewing their records for notations regarding class membership made pursuant to the guidance issued on November 25, 2019, and December 2, 2019, to BP and OFO, respectively; and

- Defendants must inform identified class members, including those already removed from the United States, of their potential class membership and the existence and import of the preliminary injunction.

Dated: July 17, 2020

MAYER BROWN LLP
    Matthew H. Marmolejo
    Ori Lev
    Stephen S. Medlock

SOUTHERN POVERTY LAW CENTER
    Melissa Crow
    Sarah Rich
    Rebecca Cassler

CENTER FOR CONSTITUTIONAL RIGHTS
    Baher Azmy
    Ghita Schwarz
    Angelo Guisado

AMERICAN IMMIGRATION COUNCIL
    Karolina Walters

By: */s/ Ori Lev*
    Ori Lev

*Attorneys for Plaintiffs*

MEMO OF P. & A. IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

**CERTIFICATE OF COMPLIANCE WITH MEET-AND-CONFER REQUIREMENT**

Pursuant to Section 4(A) of the Court's Standing Order for Civil Cases, this motion is made following two telephone conferences of counsel that took place on June 2 and June 12, 2020. During these conferences and through related email communication, the parties were unable to eliminate the need to file this motion.

Dated: July 17, 2020                    MAYER BROWN LLP


By  */s/ Ori Lev*
*Attorney for Plaintiffs*


**CERTIFICATE OF SERVICE**

I certify that I caused a copy of the foregoing document to be served on all counsel via the Court's CM/ECF system.

Dated: July 17, 2020                    MAYER BROWN LLP


By  */s/ Ori Lev*