# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*,<br>    *Plaintiffs*,<br><br>v.<br><br>Chad Wolf, *et al.*,<br>    *Defendants*. | No. 3:17-cv-02366-BAS-KSC |

**DECLARATION OF TODD HOFFMAN**

I, Todd Hoffman, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records, and reasonably relied upon in the course of my employment, hereby declare as follows relating to the above-captioned matter.

1. I am currently the Executive Director, Admissibility and Passenger Programs (APP), Office of Field Operations (OFO), U.S. Customs and Border Protection (CBP). In this position, I oversee nine Director-level program offices: the Admissibility Review Office; Electronic System for Travel Authorization Program Management Office; Fraudulent Document Analysis Unit; Traveler Entry Programs; Immigration Advisory Programs; Traveler Policy; Enforcement Programs Division; Trusted Traveler Programs; and the Traveler Call Center. I have served in this position since 2015. Prior to serving in this role, I was the Port Director at Los Angeles International Airport.

2. I make this declaration to support Defendants' request to file under seal certain excerpts of my deposition transcript that were submitted in connection with a discovery motion.

3. During my deposition, I discussed, in detail, CBP's internal process for drafting, finalizing, and issuing various agency policies, memoranda, and other documents,

1

including OFO's April 27, 2018 Metering Guidance. Specifically, I provided testimony regarding which individuals and offices within CBP were involved in drafting and issuing the Metering Guidance and other documents, the reasons why those particular individuals and offices were involved in the process, the role those individuals played in the process, the reasons why certain actions were or were not taken during this process, and the role that entities outside of CBP played in the process. I also provided testimony about the substance of internal deliberations and conversations between and among various individuals in CBP regarding the Metering Guidance. These internal deliberations reveal the personal opinions, thoughts, and considerations of various individuals within CBP and OFO, the reasons underlying OFO's issuance of the guidance, and whether this litigation had any impact on the policy. This testimony includes the testimony at pages 153-154, 186-187, and 200-201, among others.

4. This testimony should remain confidential, as it reveals specific details about CBP's decision-making process. In explaining which individuals and entities both within and external to CBP participated in the process and why, this testimony provides a snapshot into the relative priorities of certain individuals and offices of that process. It thus reveals the relative weight CBP applied to different factors and considerations when developing the April 2018 guidance, and the relative priorities of the input from different CBP offices. It also reveals whether and how CBP consulted with outside entities, and which entities were involved in this process.

5. All of this testimony would, if publicly disclosed, have a chilling effect on the agency's process for drafting and issuing similar policy documents. When the agency issues a particular policy, it does so following a period of internal agency deliberations, during

which CBP examines various operational, policy, legal, and practical considerations, and weighs the relative importance of various factors in shaping the final guidance. During this process, it is important that the relevant decision-makers are aware of all the relevant factors and can determine who in the agency is best positioned to provide decision-makers with this relevant information. It is also important that the agency determine whether individuals outside of CBP may have relevant knowledge, experience, and guidance to contribute to the process. It is also of critical importance that individuals involved in the process are able to provide honest, frank, and unvarnished opinions regarding the policy, the potential impacts of the policy, and the relevant importance of various factors in developing the policy. Such a process ensures that agency decision-makers have a complete picture of the relevant facts, as well as assessments from those with experience and knowledge of the issues and factors most likely to be critical to the decision-making process.

6. However, the very effectiveness of the decision-making process depends on the ability of the agency to seek out and obtain unvarnished opinions from all individuals with insight into the particular policy. Therefore, the agency must be able to seek out and rely on participation from all relevant individuals, including those from outside the agency. The process by which the agency determines who to involve in this decision-making process should remain confidential, in order to protect the integrity of the process. Specifically, public disclosure could subject the agency's choices to scrutiny. For instance, if it was revealed that CBP consulted with the interagency community on policy A, but not on policy B, members of the public may question the decision-making process and perhaps the decision itself. As a result, individuals within the agency may feel a sort of pressure

to consult with the interagency regarding policy C, regardless of the whether the agency itself determined that there was a need to do so. This unnecessary consultation may slow down or otherwise hinder the effectiveness of the decision-making process and the effectiveness of future policies. Therefore, this testimony should remain confidential.

7. Similarly, CBP's ability to issue an effective policy depends on the willingness of individuals within CBP to communicate in an unvarnished and open manner about a particular policy, including their own personal opinions, concerns, and thoughts about the policy itself; the potential operational impacts of the policy; and the potential impact of the policy on litigation, other policy decisions, or external entities; among other factors. However, if these assessments were disclosed to the public, it would permit members of the public to scrutinize these opinions, which would have a chilling effect on agency officials' willingness to provide candid, frank, and open input into future policy decisions. This, too, can harm the effectiveness of the decision-making process, and ultimately, harm the effectiveness of future policy decisions. Therefore, this testimony should remain confidential.

8. I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 20th day of July, 2020.

*[signature]*

Todd Hoffman
Executive Director,
Admissibility and Passenger Programs
Office of Field Operations
U.S. Customs and Border Protection

4