UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AL OTRO LADO, INC., et al.,<br><br>                     Plaintiffs,<br><br>v.<br><br>CHAD F. WOLF, Acting Secretary, U.S. Department of Homeland Security, in his official capacity, et al.,<br><br>                     Defendants. | Case No.: 3:17-cv-02366-BAS-KSC<br><br>**ORDER REGARDING MOTION FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING REQUESTS FOR PRODUCTION 220 AND 222; ORDER GRANTING MOTION TO SEAL [Doc. Nos. 468, 469, 470]** |

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute Regarding Requests for Production 220 and 222 (the "Joint Motion" or "Jt. Mot."). Doc. Nos. 469 (under seal), 470 (public version). The parties also jointly moved to seal exhibits 2-4 to their Joint Motion (the "Motion to Seal"). Doc. No. 468. The parties' dispute was fully briefed on June 18, 2020, and the Court heard oral argument on July 2, 2020. Having considered the parties' submissions and the arguments of counsel, the Court GRANTS plaintiffs' motion to compel production of documents responsive to Request for Production No. 220, subject to the Court's *in camera* review; DENIES plaintiffs' motion to compel production of documents responsive to Request for Production No. 222; and GRANTS the parties' Motion to Seal.

/ /

1

## I.  DISPUTE REGARDING REQUEST FOR PRODUCTION NO. 220

### A. Background

In January 2020, plaintiffs deposed Randy Howe, whom defendants had designated as a Rule 30(b)(6) witness on certain topics.  Jt. Mot. at 5.  Mr. Howe is the former Executive Director of U.S. Customs and Border Protection's Office of Field Operations. *Id.*  Plaintiffs describe Mr. Howe as "one of the highest[-]level career employees at [the Office of Field Operations] who had direct involvement in the decision to turn back asylum seekers presenting themselves at ports of entry on the U.S.-Mexico border." *Id.* Mr. Howe has attested that "because of [his] responsibilities," he is "familiar with the [CBP's] queue management processes generally[.]" *See* Doc. No. 470-7 at 3.

Plaintiffs report that the evening before Mr. Howe's deposition, defendants informed plaintiffs that Mr. Howe had not retained his personal, hard-copy notes from daily operational meetings he attended from October 2017 to January 2020.  Jt. Mot. at 5. During the deposition, plaintiffs' counsel elicited from Mr. Howe that every weekday at 8:15 a.m. he briefed his supervisor about "the daily happenings of the last 24-hour period," and met with his direct reports immediately afterwards.  Doc. No. 470-2 at 9:6-20; *id.* at 10:12-20.  To organize himself before and during these meetings, he wrote "little notes to himself," which he would "commonly" place in his "shred bin" once the meetings concluded.  Doc. No. 470-2 at 10:20-21; *id.* at 15:14-20.  Although he could not recall specifically, Mr. Howe admitted that it was possible some of his notes related to the processing of undocumented individuals at ports of entry on the U.S.-Mexico border. Doc. No. 470-2 at 14:17-15:6; *id.* at 11:14-12:7.

After the deposition, plaintiffs propounded the following document request:

> **Plaintiffs' Request for Production 220:** Documents sufficient to show the categories of documents, electronically-stored information, and things that Randy Howe was instructed to preserve in connection with this litigation.

1  Jt. Mot. at 3.  Defendants objected that the litigation hold notice issued to Mr.
2 Howe was protected from disclosure by the attorney-client privilege and the work
3 product doctrine, and that the request was also cumulative, outside the scope of proper
4 discovery, and sought irrelevant information.  *Id.*  Based on these objections, defendants
5 have refused to produce the hold notice.  *Id.*

**B. Legal Standard**

7  The law imposes upon litigants "a duty to preserve evidence which it knows or
8 reasonably should know is relevant to" pending or reasonably anticipated legal action.  *In
9 re Napster*, *Inc. Copyright Litig.*, 462 F.Supp.2d 1060, 1067 (N.D. Cal. 2006).  Where the
10 litigant is an organization, corporation, or agency, its officers are "require[d]" to
11 communicate the organization's discovery obligations, including its obligation to
12 preserve relevant evidence, "to employees in possession of discoverable materials."  *Id.*
13 at 1070 (*quoting Nat'l Ass'n of Radiation Survivors*, 115 F.R.D. 543, 557-58 (N.D. Cal.
14 1987)).  While not "every shred of paper" must be preserved, litigants must take care not
15 to destroy "unique, relevant evidence that might be useful to an adversary."  *Zubulake v.
16 UBS Warburg*, *LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003).

**C. Discussion**

18  Plaintiffs recognize that litigation hold notices such as the one they seek here are
19 normally considered a privileged attorney-client communication and "[g]enerally … are
20 not discoverable…"  *Agne v. Papa John's Int'l, Inc.*, No. C10-1139-JCC, 2012 WL
21 12882903, at *3 (W.D. Wash. Feb. 6, 2012).  However, citing to *City of Colton v. Am.
22 Promotional Events, Inc.*, No. EDCV 09–01864 PSG (SSx), 2011 WL 13223880 (C.D.
23 Cal. Nov. 22, 2011), plaintiffs argue that a preliminary showing of spoliation can
24 overcome the privilege, and does so here.  Jt. Mot. at 6.  Plaintiffs stress that they are not
25 required to prove spoliation at this point, but only to show evidence of spoliation.  Jt.
26 Mot. at 6.  According to plaintiffs, that requirement is easily satisfied by defendants'
27 admission that they did not issue a litigation hold notice to Mr. Howe until months after
28 //

the litigation began, defendants' admission that Mr. Howe destroyed his notes both before and after the litigation hold was issued, or both. *Id.* at 7.

The Court finds that plaintiffs have made a sufficient preliminary showing of spoliation to overcome the attorney-client privilege that presumably attached to the litigation hold notice issued to Mr. Howe. *See City of Colton*, 2011 WL 13223880, at *5 (finding privilege had been "overcome" by preliminary showing of spoliation); *see also Cannata v. Wyndham Worldwide Corp.*, No. 2:10–cv–00068–PMP–LRL, 2011 WL 3495987, at *2 (D. Nev. Aug. 10, 2011) (noting that litigation hold notices are generally "not discoverable" "*unless spoliation is at issue*") (emphasis added). Defendants concede – as indeed they must – that Mr. Howe shredded his meeting notes. Jt. Mot. at 11; *see also* Doc. No. 470-2 at 10:19-21 (Mr. Howe testifying to his custom of shredding his notes after the meetings concluded). Defendants also concede that Mr. Howe was not instructed to preserve relevant documents until December 2018 – over a year after this litigation was initiated. Jt. Mot. at 11; Doc. No. 470-6, ¶8. Either of these facts is sufficient to make a preliminary showing of spoliation, which the Ninth Circuit defines as "the 'destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation.'" *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009) (citation omitted); *see also Czuchaj v. Conair Corp.*, No. 13cv1901 BEN (RBB), 2016 WL 4161818, at *6 (S.D. Cal. Apr. 1, 2016) (imposing spoliation sanctions for party's "unexplained failure to issue a litigation hold" for eight months after receipt of pre-filing notice letter).

Defendants' assertion that Mr. Howe's notes consisted simply of "basic words to trigger" his memory of the meetings does not persuade the Court that he had no duty to preserve them. Jt. Mot. at 12. Because the notes were destroyed, it is impossible for the Court to say whether defendants' subjective characterization of the notes as "shorthand, non-substantive notes" that did not contain information relevant to this case is correct. Jt. Mot. at 12. But the question before the Court is not whether plaintiffs were prejudiced by the destruction of Mr. Howe's meeting notes, or whether that destruction was willful.

Rather, the question is whether plaintiffs should be allowed to take the "initial step" of discovering the content of the litigation hold notice issued to Mr. Howe so that they can "investigate and possibly prove spoliation." *City of Colton*, 2011 WL 13223880, at *5. There is no dispute that the notes were destroyed. Jt. Mot. at 11. Mr. Howe's own testimony demonstrates that the notes were *potentially* relevant and that there was no "other evidence" of what was discussed at his daily meetings other than his notes. Jt. Mot. at 6 n.3; Doc. No. 470-2 at 21:8-12. That Mr. Howe "destroy[ed] unique, relevant evidence that might [have] be[en] useful" to plaintiffs is evidence of spoliation. *Zubulake*, 220 F.R.D. at 217. Furthermore, the content of the litigation hold notice is relevant to a determination of whether the spoliation was willful or merely negligent. *See id.* at 220 ("Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent."). Accordingly, the Court finds that plaintiffs are entitled to discover the litigation hold notice provided to Mr. Howe, and GRANTS plaintiffs' motion to compel documents responsive to Request for Production No. 220.

Defendants also claim that the litigation hold notice issued to Mr. Howe may contain counsel's protected work product (Jt. Mot. at 10), explaining at oral argument that the identification of what should be considered relevant (and thus preserved) has the potential to reveal counsel's mental impressions. Plaintiffs and defendants are amenable to the Court reviewing the litigation hold notice *in camera* to address these concerns. Therefore, defendants are ordered to lodge the litigation hold notice for the Court's *in camera* inspection within 7 days of the date of this Order. Defendants will be permitted to redact their counsel's protected work product, if the Court should find any, before producing the litigation hold notice to plaintiffs.

## II. DISPUTE REGARDING REQUEST FOR PRODUCTION NO. 222
### A. Background

On November 19, 2019, Judge Bashant issued a preliminary injunction in this matter, enjoining defendants from applying the provisions of 8 C.F.R. § 208.13(c)(4) (known as the "Asylum Ban") to certain asylum seekers who were unable to make a

1  direct asylum claim at a U.S. POE before July 16, 2019 because of defendants' metering
2  policy. *See generally* Doc. No. 330 (the "Injunction"). The Injunction applies to all
3  members of the provisionally certified class of asylum seekers. *Id.* at 36. Plaintiffs
4  allege they have "uncovered evidence that Immigration Judges" are in violation of the
5  Injunction. Jt. Mot. at 7. To investigate whether defendants have taken sufficient "steps
6  … to ensure that all provisional class members obtain the benefit of the preliminary
7  injunction" (Jt. Mot. at 8), plaintiffs propounded this document request:

> **Plaintiffs' Request for Production 222:** All documents providing guidance to DHS officers or employees concerning the implementation of the Court's November 19, 2019 preliminary injunction order.

Jt. Mot. at 4. Defendants objected and claimed the protection from disclosure based on the attorney-client, executive, investigatory files and law enforcement privileges, as well as the work product doctrine. *Id.* Defendants also objected that the request sought irrelevant information, because credible fear interviews are not conducted by Customs and Border Protection. *Id.*

**B. Legal Standard**

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

If a party fails to produce documents in response to written requests, the party seeking discovery may move for an order compelling disclosure. Fed. R. Civ. P. 37(a)(3). Generally, the party seeking to compel discovery has the burden of establishing that its requests satisfy Rule 26's relevancy requirement. *See Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). The Court "must limit" any proposed discovery

that it determines to be "outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii). "District courts have broad discretion" in making this determination. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005); *see also U.S. Fid. and Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, n. 10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery[.]").

**C. Discussion**

As plaintiffs correctly note, the Court is empowered to order discovery "to aid the court in determining whether a party has complied with [its] order[s]." *Fraihat v. U.S. Immigration and Customs Enforcement*, No. EDCV 19-1546 JGB (SHKx), 2020 WL 2758553, at *3 (C.D. Cal. May 15, 2020) (*citing Richmark Corp. v. Timber Falling Consultants, Inc.*, 937 F.2d 1444, 1449 (9th Cir. 1991)); *see* Jt. Mot. at 8. The Court disagrees, however, that plaintiffs have identified evidence of noncompliance which "raise[s] legitimate questions" regarding defendants' efforts to abide by the Injunction, such that they are entitled to the discovery they seek. Jt. Mot. at 8.

Defendants' "discrete and specific evidence of noncompliance" (*id.*) consists of three decisions by a single Immigration Law Judge ("ILJ") sitting in Tacoma, Washington denying two requests to reopen certain asylum proceedings (and reopening a third *sua sponte*) based on the Ninth Circuit's decision not to stay the Injunction.[1] Doc. Nos. 460-3, 470-4, and 470-5. *See Al Otro Lado v. Wolf*, 952 F.3d 999 (9th Cir. 2020). Although neither the ILJ, nor the Executive Office for Immigration Review ("EOIR") under whose direction and authority she acts, is a defendant in this action, the Court is aware that plaintiffs recently filed a motion for "clarification" of the Injunction (the

---

[1] Without opining as to whether the ILJ correctly interpreted or applied the law, the Court notes that the ILJ's decision not to reopen two cases was based on multiple legal and factual findings. Specifically, the ILJ determined that both motions to reopen were untimely and that the asylum-seeker had not demonstrated diligence. Doc. No. 470-3 at 5; Doc. No. 470-4 at 5. The ILJ then also found that because the Ninth Circuit decision not to stay the injunction was made by a motions panel, it did not bind the merits panel, who had not yet issued a decision. Doc. No. 470-3 at 6; Doc. No. 470-4 at 6. Thus, the ILJ concluded the motions panel's decision was not a "material change in law." Doc. No. 470-3 at 6.

"Clarification Motion").[2] *See* Doc. No. 494. In the Clarification Motion, plaintiffs request that the District Court issue an order clarifying that EOIR is, in fact, bound by the Injunction. *Id.* at 8, 16. Plaintiffs also request that the District Court direct defendants to "make all reasonable efforts to identify all potential class members…and inform them of their potential class membership and of the [I]njunction." *Id.* at 8, 16-17. The Court agrees with defendants that there is "absolutely no relationship" between the discovery sought by Request for Production 222 and the resolving the question of whether the Injunction applies to EOIR. Jt. Mot. at 13. *Accord Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (upholding district court's refusal to compel discovery that was "only minimally relevant" to plaintiff's claims that defendant violated consent decree). Nor does the requested discovery appear relevant to plaintiffs' request that defendants should be instructed to implement specific procedures to correct their alleged practice of simply "presum[ing] that class members are aware of the preliminary injunction." Doc. No. 494 at 17-18. In other words, the guidance DHS gave to its staff regarding implementation of, and compliance with, the Injunction does not alter the relief plaintiffs request in the Clarification Motion or the basis for that relief. *See* Fed. R. Civ. P. 26(b)(1) (in determining relevancy and proportionality, courts should consider "the importance of the discovery in resolving the issues"). Plaintiffs have not identified any other pending motion to which the guidance documents are relevant.

Put simply, the relevance of the documents plaintiffs seek is not "'readily apparent.'" *Harris v. German*, No. 1:15-cv-01462-DAD-GSA-PC, 2019 WL 6683136, at *9 (E.D. Cal. Dec. 6, 2019) (*quoting Johnson v. Kraft Foods N. Am.*, 236 F.R.D. 535, 542 n.20 (D. Kan. 2006)). "The scope of discovery," while broad, "is not unlimited." *Cabell v. Zorro Prods.*, 294 F.R.D. 604, 607 (W.D. Wash. 2013). Therefore, it was plaintiffs' burden demonstrate that their document request "satisfies the relevancy requirements" of

---

[2] Defendants have not yet filed their opposition to plaintiffs' Clarification Motion, which is due August 3, 2020. The District Court will hear oral argument on the Clarification Motion on August 17, 2020.

Rule 26. *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015) (noting that the burden of demonstrating relevance is on "the party seeking to compel discovery"). Because plaintiffs failed to establish that the documents responsive to Request for Production No. 222 are within Rule 26(b)'s broad scope, their motion to compel is DENIED.[3]

### III.   MOTION TO SEAL

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (*citing Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). "'The presumption of access is 'based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice.'" *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (*quoting United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)).

The party requesting that documents be sealed bears the burden of overcoming the strong presumption of access. *Foltz*, 331 F.3d at 1135. Where, as here, the documents to be sealed are attached to a non-dispositive discovery motion, the party requesting sealing must make a "'particularized showing'" of "'good cause.'" *Kamakana*, 447 F.3d at 1180 (*quoting Foltz*, 331 F.3d at 1137). "Good cause exists where the party seeking protection shows that specific prejudice or harm will result" if the request to seal is denied. *Anderson v. Marsh*, 312 F.R.D. 584, 594 (E.D. Cal. 2015). Even where good cause is shown, the Court should only seal the information that is necessary to protect a person

---

[3] Having found the documents plaintiffs seek are not relevant, the Court does not reach the issue of whether the documents are privileged, or whether any privilege was waived.

1  from harm. *See In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 425
2  (9th Cir. 2011) (in determining whether to seal documents, "a court must still consider
3  whether redacting portions of the discovery material will nevertheless allow disclosure").
4     The parties move the Court to seal the names and "A" numbers of asylum seekers
5  contained in Exhibits 2, 3 and 4 to the Joint Motion. Doc. No. 468 at 3; Doc. No. 468-1
6  at 3. Because requests for asylum relate to sensitive issues giving rise to the applicant's
7  credible fear of persecution, the information contained in an asylum application is
8  generally confidential. *See* 8 C.F.R. §§ 208.6(a), 1208.6(a) (prohibiting disclosure
9  "without the written consent of the applicant," with limited exceptions); *see also A.B.T. v.*
10 *U.S. Citizenship and Immigration Servs.*, No. 2:11–cv–02108 RAJ, 2012 WL 2995064, at
11 *5 (W.D. Wash. July 20, 2012) (noting that these regulations "permit[] disclosure of
12 [asylum seekers'] identities to the courts, but [they] do[] not permit disclosure to the
13 general public"). Furthermore, the parties' proposed redactions are narrowly drawn, and
14 will not obscure more than is necessary to protect the asylum seekers' privacy and
15 confidentiality. *See Whitecryption Corp. v. Arxan Techs., Inc.*, No. 15-cv-00754-WHO,
16 2016 WL7852471, at *2 (N.D. Cal. Mar. 9, 2016) (noting that records should be redacted
17 "in the narrowest way possible to preserve their confidential information while protecting
18 the general right of the public to access court records"). Accordingly, the Court finds
19 good cause to permit the proposed "limited and clear" redactions, *Kamakana*, 447 F.3d at
20 1183, and GRANTS the parties' Motion to Seal.
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

**ORDER**

For the reasons set forth above, the Court hereby **ORDERS** that:

1. Plaintiffs' motion to compel documents responsive to Request for Production No. 220 is **GRANTED**. Defendants shall lodge the litigation hold notice(s) issued to Randy Howe to efile_Crawford@casd.uscourts.gov within 7 days of the date of this Order. The Court will conduct an *in camera* inspection to evaluate whether the documents contain counsel's protected work product.

2. Plaintiffs' motion to compel documents responsive to Request for Production No. 222 is **DENIED**.

3. The parties' Motion to Seal (Doc. No. 468) is **GRANTED**.

**IT IS SO ORDERED.**

Dated: July 31, 2020

Hon. Karen S. Crawford
United States Magistrate Judge