ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | Hon. Cynthia A. Bashant |
| v. | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLARIFICATION OF THE PRELIMINARY INJUNCTION** |
| Chad F. WOLF, Acting Secretary of Homeland Security, in his official capacity, *et al.*, | |
| *Defendants*[*] | |

---

[*] Acting Commissioner Morgan is automatically substituted as a Defendant for former Commissioner McAleenan pursuant to Federal Rule of Civil Procedure 25(d).

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................... ii

INTRODUCTION ..............................................................................1

BACKGROUND ................................................................................2

    A.  This Litigation, the Rule, and This Court's Preliminary Injunction ................................................................................2

    B.  The Government's Compliance with the Preliminary Injunction ................5

    C.  Plaintiffs' Allegations of Non-Compliance ................................8

ARGUMENT ....................................................................................11

    I.  This Court Should Reject Plaintiffs' Request to "Clarify" the Injunction. ...............................................................................11

        A.  This Court's and the Ninth Circuit's Orders Are Clear. .......................11

        B.  The Government is Complying With This Court's and the Ninth Circuit's Orders. ................................................16

    II.  The Preliminary Injunction is Not Directed at EOIR, and EOIR Is Not Bound by it. ......................................................................19

    III.  There is No Basis Under Rule 23(d) to Order the Government to Identify Class Members. ...........................................................23

CONCLUSION .................................................................................25

DEFS.' OPP'N TO PLS.' MOT. TO
CLARIFY PRELIM. INJ. ORDER
Case No. 3:17-cv-02366-BAS-KSC

# TABLE OF AUTHORITIES

## Federal Cases

*Al Otro Lado v. Wolf*,
    945 F.3d 1223 (9th Cir. 2020) ................................................ 5, 13

*Al Otro Lado v. Wolf*,
    952 F.3d 999 (9th Cir. 2020) .................................................. 5, 13

*Al Otro Lado, Inc. v. McAleenan*,
    394 F. Supp. 3d 1168 (S.D. Cal. 2019) ......................................... 3

*Barahona-Gomez v. Reno*,
    167 F.3d 1228 (9th Cir. 1999) ................................................... 24

*CFPB v. Howard Law, P.C.*,
    671 F. App'x 954 (9th Cir. 2016) ................................................ 21

*Cornucopia Products, LLC v. Dyson, Inc.*,
    No. 12-cv-0234, 2013 WL 12098786 (D. Ariz. June 20, 2013) ................... 12

*East Bay Sanctuary Covenant v. Barr*,
    964 F.3d 382 (9th Cir. 2020) ..................................................... 11

*Hamama v. Adducci*,
    912 F.3d 869 (6th Cir. 2018) ..................................................... 22

*Harper v. Va. Dept. of Taxation*,
    509 U.S. 86 (1993) ............................................................ 15, 19

*JIPC Mgmt., Inc. v. Incredible Pizza Co., Inc.*,
    08-cv-4310, 2008 WL 11336396 (C.D. Cal. Aug. 26, 2008) ...................... 15

*Nken v. Holder*,
    556 U.S. 418 (2009) ........................................................... 13, 14

*NLRB v. Sequoia Dist. Council of Carpenters, AFL-CIO*,
    568 F.2d 628 (9th Cir. 1977) ..................................................... 21

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) ......................................................... 2, 24, 25

*Optinrealbig.com, LLC v. Ironport Systems, Inc.*,
　　323 F. Supp. 2d 1037 (N.D. Cal. 2004)........................................................15

*Regal Knitwear Co. v. NLRB*,
　　324 U.S. 9 (1945).......................................................................... 12, 21

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
　　525 U.S. 471 (1999)...........................................................................22

*Resolution Trust Corp. v. Dean*,
　　813 F. Supp. 1426 (D. Ariz. 1993) ...............................................................20

*Teague v. Lane*,
　　489 U.S. 288 (1989)..................................................................... 15, 19

*Townley v. Miller*,
　　693 F.3d 1041(9th Cir. 2012) ................................................................16

*United States v. Baker*,
　　641 F.2d 1311 (9th Cir. 1981) ...............................................................21

*United States v. New York Telephone Co.*,
　　434 U.S. 159 (1977)...........................................................................23

*University of Texas v. Camenisch*,
　　451 U.S. 390 (1981)..................................................................... 13, 15

*Wal-Mart Stores, Inc. v. Dukes*,
　　564 U.S. 338 (2011)..................................................................... 2, 16

*Westar Energy, Inc. v. Lake*,
　　552 F.3d 1215 (10th Cir. 2009) ...............................................................13

*Zeetogroup, LLC. v. Fiorentino*,
　　No. 19-cv-458, 2020 WL 8868662 (S.D. Cal. Feb. 24, 2020) ......................11

**Federal Statutes**

6 U.S.C. § 202 ......................................................................................7

6 U.S.C. § 251 ......................................................................................7

6 U.S.C. § 252(c) ........................................................................... 7, 21

8 U.S.C. § 1225(b)(1)(B)(iii) ................................................................................ 6, 21

8 U.S.C. § 1229a(a)(1) ............................................................................................. 6

8 U.S.C. § 1229a(c)(4) ...................................................................................... 21, 22

8 U.S.C. 1252(f)(1) ................................................................................................. 22

**Federal Regulations**

8 C.F.R. § 208.30(d) ............................................................................................... 21

8 C.F.R. § 208.30(e)(5)(iii) ...................................................................................... 4

8 C.F.R. § 1003.0(a) ................................................................................................ 6

8 C.F.R. § 1003.0(c) ................................................................................................ 7

8 C.F.R. § 1003.0(e)(2) ............................................................................................ 7

8 C.F.R. § 1003.0(f) ................................................................................................. 7

8 C.F.R. § 1003.1(a)(1) ............................................................................................ 6

8 C.F.R. § 1003.1(b) ........................................................................................... 6, 21

8 C.F.R. § 1003.1(c) ................................................................................................. 6

8 C.F.R. § 1003.10(b) ......................................................................................... 6, 22

8 C.F.R. § 1003.10(c) ............................................................................................... 6

8 C.F.R. § 1003.39 ............................................................................................... 9, 10

8 C.F.R. § 1003.42 ............................................................................................. 6, 21

8 C.F.R. § 1003.9(c) ................................................................................................. 7

8 C.F.R. § 1208.13(c) ............................................................................................... 4

8 C.F.R. § 1208.2(b) ........................................................................................... 4, 21

8 C.F.R. § 1208.30(g) .............................................................................................. 21

8 C.F.R. § 1240.1 ..................................................................................................... 6

**Federal Rules**

Federal Rule of Civil Procedure 65(d)(2) ......................................................... 19, 21

**Administrative Rules and Decisions**

Asylum Eligibility and Procedural Modifications,
       84 Fed. Reg. 33,829 (July 16, 2019) ........................................................3, 4

**Legislative Materials**

Reorganization Plan Modification for the Dept. of Homeland Security,
       H. Doc. No. 108-32, 108th Cong. (2003).......................................................7

# INTRODUCTION

This Court should deny Plaintiffs' Motion to Clarify the Preliminary Injunction. This Court's order is clear: "Defendants *are* hereby enjoined from applying the [rule]" to class members and are "ordered to return to the pre-[rule] practices for processing the asylum applications of" class members. Order Granting Pls.' Mot. for Class Certification and Pls.' Mot. for Prelim. Inj. 36 (ECF No. 330; PI Order) (emphases altered). Contrary to Plaintiffs' strained reading, the order's language is prospective only. It prohibits Defendants from applying the rule to class members, but it does not require Defendants to undo things already lawfully done. Asylum denials that were issued pursuant to the rule and which became administratively final before the injunction was issued or while the injunction was stayed do not violate the injunction. Further, neither this Court's nor the Ninth Circuit's orders require the government to affirmatively reopen and readjudicate those lawful asylum denials. Indeed, that relief would be inconsistent with a preliminary injunction's purpose to prevent irreparable injury; a stay order's purpose to preserve the status quo; and the rule that final judgments are not entitled to be reopened and readjudicated under later-announced standards. The government is complying with the order's clear terms, so there is no need for any clarification.

Further, this Court should not order that the Executive Office for Immigration Review (EOIR) is bound by the injunction. Although EOIR is not a party to this litigation and the injunction is not directed to it, EOIR has voluntarily agreed to comply. It has issued legal guidance to its adjudicators regarding the injunction and supplemental legal guidance to address allegations of non-compliance. Following that guidance, immigration judges have *sua sponte* reopened a number of class members' proceedings and granted them asylum. Plaintiffs claim to have identified six instances of alleged non-compliance that warrant "clarification" that EOIR is bound. But none of the cases involves an existing asylum denial issued pursuant to the rule that became final while the injunction was in effect. So there are no violations that

DEFS.' OPP'N TO PLS.' MOT. TO
CLARIFY PRELIM. INJ. ORDER
Case No. 3:17-cv-02366-BAS-KSC

warrant clarification. In any event, Plaintiffs are wrong that EOIR "work[s] with" the Department of Homeland Security (DHS) to apply the rule, Mot. 13, and therefore is bound by the injunction under Federal Rule of Civil Procedure 65(d)(2). By law, immigration judges are independent administrative judges who review negative credible-fear determinations made by U.S. Citizenship and Immigration Services' (USCIS) asylum officers and adjudicate asylum applications in removal proceedings where U.S. Immigration and Customs Enforcement (ICE) is a party. EOIR does not "work with" DHS any more than appellate courts work with trial courts or judges work with prosecutors.

Finally, this Court should reject Plaintiffs' demand that the government create a comprehensive list of class members, including those who were denied asylum before the injunction was issued or while the injunction was stayed, and provide them with notice of the preliminary injunction. The government reasonably has sought to identify class members while the injunction was in effect through the credible-fear screening process and through evidence submitted by individuals in the course of their immigration proceedings, as this Court allowed. *See* PI Order 28. Further, class members' awareness of the injunction is immaterial because the government is complying with the order's clear terms. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011). In any event, if the representative plaintiffs wish for class members to have notice, it is their job to provide it, not the government's. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 356 (1978). Plaintiffs fail to show why the government should be required to shoulder this substantial burden that is unlikely to produce meaningful benefit.

This Court should deny Plaintiffs' Motion in its entirety.

## BACKGROUND

### A.    This Litigation, the Rule, and This Court's Preliminary Injunction

Plaintiffs filed this lawsuit against DHS, U.S. Customs and Border Protection (CBP), and CBP's Office of Field Operations (OFO) in July 2017. The operative

DEFS.' OPP'N TO PLS.' MOT. TO
CLARIFY PRELIM. INJ. ORDER
Case No. 3:17-cv-02366-BAS-KSC

complaint challenges CBP's alleged "unlawful, widespread pattern and practice of denying asylum seekers access to the asylum process at [ports of entry] on the U.S.-Mexico border" and CBP's alleged "Turnback Policy." Second Am. Compl. ¶¶ 2–3 (ECF No. 189). On July 29, 2019, this Court substantially denied the government's motion to dismiss the operative complaint, holding that Plaintiffs had stated claims upon which relief could be granted. *See Al Otro Lado, Inc. v. McAleenan*, 394 F. Supp. 3d 1168 (S.D. Cal. 2019).

On July 16, 2019, about two weeks before this Court issued its motion-to-dismiss order, the Attorney General and the Acting Secretary of Homeland Security promulgated the interim final rule entitled "Asylum Eligibility and Procedural Modifications," 84 Fed. Reg. 33,829 (July 16, 2019) (the "rule"). With certain exceptions, the rule renders ineligible for asylum "any alien who enters, attempts to enter, or arrives in the United States across the southern land border on or after July 16, 2019, after transiting through at least one country outside the alien's country of citizenship, nationality, or last lawful habitual residence en route to the United States," unless she applied for and was denied protection from persecution or torture in at least one such country. 84 Fed. Reg. at 33,843.

There are several points in the immigration system at which the rule might be applied to an alien subject to its terms. *See* 84 Fed. Reg. at 33,843; *see also* Gov't Opp'n to Pls.' Mot. for Prelim Inj. 3–4 (Gov't PI Opp'n; ECF No. 307). The rule requires asylum officers and immigration judges to apply the bar on asylum eligibility when conducting and reviewing credible-fear determinations during expedited removal. *Id.* at 33,830. This means that when an alien in expedited removal is ineligible for asylum under the rule, the asylum officer will enter a negative credible-fear determination and will then apply "the long-established reasonable-fear standard to assess whether further proceedings on a possible statutory withholding or CAT protection claim are warranted." *Id.* at 33,837. If the asylum officer makes a positive

reasonable-fear determination, the alien is placed into full removal proceedings be-fore an immigration judge for further consideration of the withholding or CAT claims and de novo review of the applicant's eligibility for asylum. *Id.*; *see* 8 C.F.R. § 208.30(e)(5)(iii). If the asylum officer makes a negative credible- or reasonable-fear determination, the alien may seek review of that determination by an immigra-tion judge, who will conduct a de novo review of the asylum officer's determination that the rule bars the alien from asylum eligibility and will consider whether the alien has a reasonable fear. 84 Fed. Reg. at 33,838. In full removal proceedings, immigra-tion judges are also required to determine whether an asylum applicant is ineligible for asylum under the rule or other mandatory bars. 8 C.F.R. §§ 1208.2(b), 1208.13(c).

On September 26, 2019, Plaintiffs sought a preliminary injunction prohibiting the government from applying the rule to a provisional subclass of aliens who were unable to enter the United States before July 16, 2019, because of CBP's metering policy. On November 19, 2019, this Court granted a preliminary injunction. It certi-fied a provisional class of "all non-Mexican asylum-seekers who were unable to make a direct asylum claim at a U.S. [port of entry] before July 16, 2019 because of the U.S. Government's metering policy, and who continue to seek access to the U.S. asylum process," and it stated: "Defendants are hereby **ENJOINED** from applying the [rule] to members of the aforementioned provisionally certified class and **OR-DERED** to return to the pre-[rule] practices for processing the asylum applications of members of the certified class." PI Order 36.

On December 4, 2019, the government appealed from the preliminary-injunc-tion order. *See* Notice of Appeal (ECF No. 335). On December 12, the government moved the Ninth Circuit for an immediate administrative stay of the injunction and a stay pending appeal. *See* Emergency Mot. for Admin. Stay and Stay Pending Ap-peal, *Al Otro Lado, Inc. v. Wolf*, No. 19-56417 (9th Cir. Dec. 12, 2019). On Decem-ber 20, a Ninth Circuit motions panel granted the government's motion and issued

1    an administrative stay of the preliminary injunction pending a decision on the motion

2    for a stay pending appeal. *Al Otro Lado v. Wolf*, 945 F.3d 1223, 1224 (9th Cir. 2020).

3    The Ninth Circuit's stay order remained in effect until March 5, 2020, when a mo-

4    tions panel denied the government's request for a stay pending appeal, which termi-

5    nated the administrative stay. *Al Otro Lado v. Wolf*, 952 F.3d 999 (9th Cir. 2020).

6    **B.    The Government's Compliance with the Preliminary Injunction**

7    DHS, CBP, ICE, USCIS, and EOIR have taken comprehensive steps to com-

8    ply with this Court's and the Ninth Circuit's orders.

9    **USCIS.** On November 24, 2019, USCIS's Asylum Division directed asylum

10    officers to immediately begin using a series of standard questions during credible-

11    fear interviews of non-Mexican nationals to discern whether the interviewee was

12    subject to metering before July 16, 2019 (the "metering questions"); and informed

13    officers that they "<u>cannot</u>" apply the rule to aliens who establish that they are more

14    likely than not *Al Otro Lado* class members. *See* Ex. 1, at 7–9. Instead, the guidance

15    directed that such aliens' claims "be assessed under the lower 'significant possibil-

16    ity' standard consistent with pre-[rule] procedures." Ex. 1, at 8. USCIS also con-

17    ducted follow-up interviews with aliens who received credible-fear interviews be-

18    tween November 20 and November 26 to ask those individuals the metering ques-

19    tions and, if the aliens established that they were more likely than not *Al Otro Lado*

20    class members, to assess their claims under the pre-rule standard. Ex. 2, Decl. of

21    USCIS Asylum Division Deputy Chief Ashley B. Caudill-Mirillo ¶ 4. On December

22    21, USCIS issued updated guidance requiring asylum officers conducting credible-

23    fear interviews to document the metering questions and interviewee's responses in

24    the interview notes and to orally summarize and confirm the accuracy of the inter-

25    viewee's responses to the metering questions. *See* Ex. 1, at 5–6.

26    On December 29, 2019, USCIS directed asylum officers to "return to pre-

27    AOL preliminary injunction processing." Ex. 1, at 4–5. Asylum officers ceased ask-

28    ing the metering questions in prospective cases that were pending an interview. *See*

Ex. 1, at 4–5.

On March 5, 2020, the Asylum Division notified asylum personnel of the Ninth Circuit's order terminating the stay of the preliminary injunction and re-implemented the *Al Otro Lado* processing guidance. *See* Ex. 1, at 2–4. After March 16, 2020, ICE began referring to USCIS for class-membership screening aliens in ICE's custody who entered the United States and were issued a negative credible-fear determination pursuant to the rule between July 16, 2019, and March 5, 2020, without being asked the metering questions and whose cases were not pending before EOIR. *See* Ex. 1, at 2. Asylum personnel were instructed to interview these individuals using the metering questions and, if the interviewee was found to more likely than not be an *Al Otro Lado* class member, to make a new credible-fear determination under the pre-rule standard *See* Ex. 1, at 2.

**EOIR.** EOIR, a component of the U.S. Department of Justice, "adjudicate[s] immigration cases by fairly, expeditiously, and uniformly interpreting and administering the Nation's immigration laws." *See* https://www.justice.gov/eoir/about-office. EOIR is organized into the Office of the Director, the Office of the Chief Immigration Judge (OCIJ), the Board of Immigration Appeals (BIA), the Office of the General Counsel (OGC), and other offices. 8 C.F.R. § 1003.0(a). Immigration judges within the OCIJ adjudicate (among other things) asylum applications in regular removal proceedings and review USCIS's negative credible- or reasonable-fear determinations. 8 U.S.C. §§ 1225(b)(1)(B)(iii)(III), 1229a(a)(1); 8 C.F.R. §§ 1003.42, 1240.1. The BIA adjudicates appeals from immigration judges' decisions in full removal proceedings. 8 C.F.R. §§ 1003.1(a)(1), (b), 1003.10(c).

By regulation, "immigration judges shall exercise their independent judgment and discretion" when deciding the individual cases before them. *Id.* § 1003.10(b). Other than members of the BIA acting on a lawful appeal from or certification of the decision of an immigration judge, *see id.* §§ 1003.1(b), 1003.1(c), and in limited circumstances the Director, no employee at EOIR possesses the authority to direct

DEFS.' OPP'N TO PLS.' MOT. TO
CLARIFY PRELIM. INJ. ORDER
Case No. 3:17-cv-02366-BAS-KSC

the result of an individual case assigned to an immigration judge, *id.* §§ 1003.0(c), (e)(2), (f), 1003.9(c).

EOIR is not a party to this litigation. Nevertheless, it has voluntarily agreed to act consistently with the preliminary injunction and has issued legal guidance to OCIJ and BIA leadership and staff at each relevant stage, including shortly after the preliminary injunction was issued; shortly after the December 20, 2019 order staying the preliminary injunction; and shortly after the March 5, 2020 order terminating the stay of the preliminary injunction. *See* Ex. 3, Decl. of EOIR General Counsel Jill W. Anderson ¶¶ 4–6. EOIR OGC has also issued targeted supplemental legal guidance on May 7, June 3, and July 29, 2020, to address alleged instances of non-compliance with the injunction. EOIR asserts the attorney-client privilege over this legal guidance. *See* Ex. 4 ¶¶ 7–9.

**ICE.** ICE is a DHS component agency responsible for implementing the Secretary's immigration detention and removal responsibilities, among other duties. *See* 6 U.S.C. §§ 202(3), 251. ICE's Enforcement and Removal Operations (ERO) is responsible for detaining inadmissible and deportable aliens and removing aliens with final removal orders from the United States. *Id.* § 251. ICE's Office of the Principal Legal Advisor (OPLA) represents the government in removal proceedings before immigration judges and the BIA. *See id.* § 252(c); Reorganization Plan Modification for the Dept. of Homeland Security, H. Doc. No. 108-32, 108th Cong., at 3 (2003). ICE does not conduct credible-fear interviews or adjudicate asylum applications and therefore is not charged with applying the rule.

On December 5, 2019, ICE OPLA issued legal guidance regarding the preliminary injunction to OPLA attorneys and personnel. *See* Ex. 4, Decl. of ICE Deputy Principal Legal Advisor for Enforcement and Litigation Adam V. Loiacono ¶ 7. On December 8, ICE ERO suspended the removal of aliens in custody who received a negative credible-fear determination pursuant to the rule between July 16, 2019, and November 19, 2019, and whose cases were not pending before EOIR, and began

referring those aliens to USCIS to be screened for *Al Otro Lado* class membership. *See* Ex. 5, at 2. On December 31, ICE OPLA issued legal guidance regarding the preliminary injunction to OPLA attorneys and personnel. *See* Ex. 4 ¶ 9. On March 6, 2020, following the order terminating the stay of the preliminary injunction, ICE OPLA issued legal guidance regarding the preliminary injunction to OPLA attorneys and personnel. *See* Ex. 4 ¶ 10. On March 16, ICE ERO suspended the removal of detained aliens who received a negative credible-fear determination pursuant to the rule between July 16, 2019, and March 6, 2020, and whose cases were not pending before EOIR, and began referring those detained aliens whose negative credible-fear determination had been affirmed by an immigration judge to USCIS for *Al Otro Lado* class-membership screening. *See* Ex. 6, at 2–3.

**CBP.** CBP is a DHS component agency tasked with securing the United States' borders and facilitating lawful travel and trade. *See* 6 U.S.C. § 211(c). CBP does not conduct credible-fear interviews or adjudicate asylum applications and thus does not have occasion to apply the rule. Following the issuance of the preliminary injunction, U.S. Border Patrol and OFO issued guidance instructing agents and officers to annotate the Form I-213, Record of Deportable/Inadmissible Alien, when they encounter an individual who affirmatively claims to be a class member. *See* Ex. 7, Decl. of CBP STAT Division Director Jay Visconti ¶ 5. OFO also updated its electronic records system to include an equivalent annotation in the electronic system itself. Ex. 7 ¶ 6.

C.    **Plaintiffs' Allegations of Non-Compliance**

The provisional class is estimated to include more than 26,000 aliens. *See* PI Order 22. After engaging in "extensive" efforts to monitor the government's compliance with the injunction, Decl. of Alexander J. Halaska ¶ 2, Plaintiffs identify only six alleged violations. None of the cases involves an existing asylum denial issued pursuant to the rule that became final while the injunction was in effect.

***A.N.A.*** On September 24, 2019, before the preliminary injunction was issued,

Immigration Judge Fitting of the Tacoma, Washington immigration court granted A.N.A.'s application for withholding of removal and denied her application for asylum pursuant to the rule. *See* Ex. 8, at 3. A.N.A. waived appeal, making the decision final. *See* Ex. 8, at 4; 8 C.F.R. § 1003.39 (immigration judge's decision is final "upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken"). On May 1, 2020, A.N.A. filed a motion to reopen in immigration court in light of the Ninth Circuit's March 5 order terminating its stay of the preliminary injunction. *See* Ex, 8, at 3. On May 5, the immigration judge denied the motion and declined to reopen A.N.A.'s proceedings. *See* Ex. 8, at 3–5. On May 11, following the dissemination of EOIR OGC's May 7 supplemental guidance, the immigration judge *sua sponte* reopened A.N.A.'s proceedings and granted her asylum. *See* Ex. 9, at 3–4.

**_E.T.M._** On October 1, 2019, before the preliminary injunction was issued, Immigration Judge Fitting granted E.T.M.'s application for withholding of removal and denied her application for asylum pursuant to the rule. *See* Ex. 10, at 3. E.T.M. waived appeal, making the immigration judge's decision final. *See* Ex. 10, at 4; 8 C.F.R. § 1003.39. On May 4, 2020, E.T.M. filed a motion to reopen in immigration court in light of the Ninth Circuit's March 5 order. *See* Ex. 10, at 3. On May 5, the immigration judge denied the motion and declined to reopen E.T.M.'s proceedings. *See* Ex. 10, at 3–5. On May 11, following the dissemination of EOIR OGC's May 7 guidance, the immigration judge *sua sponte* reopened E.T.M.'s proceedings and granted her asylum. *See* Ex. 11, at 3–4.

**_M.M.M._** On January 24, 2020, while the preliminary injunction was stayed, an immigration judge in the LaSalle, Louisiana immigration court granted M.M.M.'s application for withholding of removal and denied his application for asylum pursuant to the rule. *See* Ex. 12, at 3–4. On June 16, 2020, after the immigration judge's decision was final, *see* 8 C.F.R. § 1003.39, M.M.M. filed a motion to reopen in immigration court in light of the Ninth Circuit's March 5 order. *See* Ex. 12, at 4. On June 30, Immigration Judge Munson denied the motion as untimely and declined to

DEFS.' OPP'N TO PLS.' MOT. TO
CLARIFY PRELIM. INJ. ORDER
Case No. 3:17-cv-02366-BAS-KSC

reopen M.M.M.'s proceedings. *See* Ex. 12, at 3–6.

**_R.N._** On January 28, 2020, while the preliminary injunction was stayed, Immigration Judge Floyd of the Tacoma immigration court granted R.N.'s application for withholding of removal and denied his application for asylum pursuant to the rule. *See* Ex. 13, at 3. R.N. waived appeal, making the immigration judge's decision final. *See* Ex. 13, at 4; 8 C.F.R. § 1003.39. On April 27, R.N. filed a motion to reopen in immigration court in light of the Ninth Circuit's March 5 order. *See* Ex. 13, at 3. On May 5, the immigration judge denied the motion and declined to reopen R.N.'s proceedings. *See* Ex. 13, at 3–5. On May 20, following the dissemination of EOIR's May 7 guidance, the immigration judge *sua sponte* reopened R.N.'s proceedings and granted him asylum. *See* Ex. 14, at 3–4.

**_F.S.S._** On February 13, 2020, while the preliminary injunction was stayed, Immigration Judge Fitting, sitting in the Adelanto, California immigration court, granted F.S.S.'s application for withholding of removal and denied her application for asylum pursuant to the rule. *See* Ex. 15, at 2–10. On March 6, F.S.S. filed a motion to reconsider in immigration court in light of the Ninth Circuit's March 5 order. *See* Ex. 16, at 3. On March 13, before the immigration judge ruled on the motion, F.S.S. appealed the asylum denial to the BIA and moved the BIA to remand the appeal to the immigration court for adjudication of the motion to reconsider. *See* Ex. 17. On March 17, the immigration judge denied the motion to reconsider. *See* Gov't Ex. 16, at 3–5. On April 13, F.S.S. appealed the denial of the motion to reconsider to the BIA. *See* Ex. 18. F.S.S.'s direct appeal and the appeal from the denial of the motion to reopen remain pending before the BIA.

**_M.T.A._** On April 21, 2020, Immigration Judge Baker of the Las Vegas, Nevada immigration court granted M.T.A.'s application for withholding of removal and denied her application for asylum pursuant to the rule. *See* Ex 19, at 2. M.T.A. did not appeal, making the immigration judge's decision final. *See* Ex 19, at 2; 8 C.F.R. § 1003.39. On May 21, M.T.A. filed a motion to reopen, arguing that she

was an *Al Otro Lado* class member. *See* Ex 19, at 2. DHS did not immediately respond to the motion, and on June 3, the immigration judge reopened M.T.A.'s proceedings and granted asylum. *See* Ex 19, at 2. On June 10 and 11, 2020, DHS filed a motion to reopen and reconsider the asylum grant based on the authenticity of M.T.A.'s documentary evidence. *See* Ex. 20; Ex. 21. DHS explained that its brief was untimely because of an inadvertent administrative oversight. *See* Ex. 20, at 3. On June 15, the immigration judge vacated his June 3 decision and denied M.T.A.'s application for asylum, holding that the evidence was "insufficient to support reopening." Ex. 22, at 4. On July 8, 2020, the immigration judge *sua sponte* reopened M.T.A.'s proceedings and granted asylum, citing the Ninth Circuit's July 6 decision in *East Bay Sanctuary Covenant v. Barr*, 964 F.3d 382 (9th Cir. 2020). *See* Ex. 23, at 3.

Plaintiffs contend that these cases are violations of the injunction because the individuals "affirmatively raised their entitlement to the injunction's protection, only to be improperly rejected." Mot. 2.

## **ARGUMENT**

## I.    This Court Should Reject Plaintiffs' Request to "Clarify" the Injunction.

Plaintiffs contend that it is "'necessary'" for this Court to "[c]larif[y]" that the Ninth Circuit's order "[l]ifting the administrative stay of the preliminary injunction warrants reopening or reconsidering past determinations regarding class members' asylum eligibility" because "'the Parties have different understandings of the scope of the Injunction.'" Mot. 12 (quoting *Zeetogroup, LLC. v. Fiorentino*, No. 19-cv-458, 2020 WL 886866, at *2 (S.D. Cal. Feb. 24, 2020)); *see also id.* at 12–13. No clarification is warranted because this Court's and the Ninth Circuit's orders are clear, and the government is complying with the orders.

### A.    This Court's and the Ninth Circuit's Orders Are Clear.

There is no need for this Court to "clarify" the terms of the preliminary injunction because this Court's and the Ninth Circuit's orders are clear. "While the

Court has discretion to give clarification of its injunctions, and should provide clarification of any ambiguous language that could cause unwitting contempts, such clarification is unnecessary" when "the preliminary injunction is clear." *Cornucopia Products, LLC v. Dyson, Inc.*, No. 12-cv-0234, 2013 WL 12098786, at *2 (D. Ariz. June 20, 2013); *see Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945) (clarification is within a court's "sound discretion").

This Court's November 19, 2019 order states: "Defendants are hereby **ENJOINED** from applying the [rule] to members of the ... provisionally certified class and **ORDERED** to return to the pre-[rule] practices for processing the asylum applications of members of the certified class." PI Order 36. "Defendants" are DHS, CBP, and OFO. "Hereby" means "by this, or the present, declaration, action, document, etc.; by means of this; as a result of this." *See* https://www.dictionary.com/browse/hereby (accessed July 22, 2020). "Are ... enjoined" is a predicate phrase that declares that Defendants are enjoined, or "legally prohibit[ed]." *Enjoin*, Black's Law Dictionary (11th ed. 2019). "From applying the [rule] to members of the ... provisionally certified class" is a prepositional phrase that states what Defendants are prohibited from doing to whom: "applying the [rule]" to class members. PI Order 36. And, as explained, the rule can be "applied" in immigration proceedings at the credible-fear screening stage, during the review of a negative credible- or reasonable-fear determination, during full removal proceedings before immigration judges, and during the appeal of an immigration judge's decision to the BIA. *See supra* at pp. 3–4; Gov't PI Opp'n 3–4. So the order is clear: DHS, CBP, and OFO cannot apply the rule to non-Mexican nationals who were unable to enter the United States before July 16, 2019, because of metering. Instead, Defendants must "return to the pre-[rule] practices" during credible-fear screening, during reviews of negative credible-fear determinations, during full removal proceedings before immigration judges, and on appeal to the BIA.

Consistent with a preliminary injunction's "purpose ... to preserve the relative

DEFS.' OPP'N TO PLS.' MOT. TO
CLARIFY PRELIM. INJ. ORDER
Case No. 3:17-cv-02366-BAS-KSC

positions of the parties," *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981), and prevent irreparable injury, the order's language is prospective only. It states that "Defendants *are* hereby enjoined from applying the [rule]" and "ordered to return to the pre-[rule] practices." PI Order 36 (emphases altered). It does not order Defendants to reopen final asylum denials that were already lawfully issued pursuant to the rule. The order covers "all" class members, but the government cannot refrain "from applying" a rule to a class member who is not before it. If, however, a class member who was lawfully denied asylum pursuant to the rule before the injunction was issued later files a motion to reopen or reconsider after the injunction was issued, and the government grants the motion and reopens the proceedings such that decision is no longer final, the government must not "apply" the rule to the class member again. The class member is entitled to have her claim adjudicated under "the pre-[rule] practices." But there is no action that the injunctive order requires the government to take with respect to aliens who were issued lawful, final asylum denials pursuant to the rule before the injunction issued. Those class members had the rule *applied* to them, but the government is no longer "applying" it to them in violation of the injunction. PI Order 36. Indeed, it would be "difficult to conclude such retrospective relief is necessary to prevent an irreparable injury" there, "since the [purported] injury ... has already occurred." *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1225 (10th Cir. 2009).

Similarly, the Ninth Circuit's termination of the administrative stay does not require the government to affirmatively reopen and readjudicate asylum denials that became final while the injunction was stayed. The Ninth Circuit's order contains no such language. *See Al Otro Lado*, 952 F.3d 999. And that interpretation would be inconsistent with the stay order's purpose to "preserve the status quo." *Al Otro Lado*, 945 F.3d at 1224. "[A] stay operates upon the judicial proceeding itself. It does so ... by temporarily divesting an order of enforceability." *Nken v. Holder*, 556 U.S. 418, 428 (2009). The motions panel knew that the government would apply the rule to

13

1   class members under the status quo ante if it issued a stay, and it was aware of Plain-

2   tiffs' contention that a stay would result in "irreparable harm." Appellees' Opp'n to

3   Appellants' Mot. for an Admin. Stay, at 4, *Al Otro Lado, Inc. v. Wolf*, No. 19-56417

4   (9th Cir. Dec. 13, 2019). But it issued the stay order anyway and "suspend[ed]" this

5   Court's "alteration of the status quo." *Nken*, 556 U.S. at 429 (internal quotation

6   marks omitted). When the stay order terminated, the preliminary injunction was re-

7   stored and altered the status quo in the same way it did before: By the termination

8   of the stay, "Defendants *are* hereby enjoined" from applying the rule to class mem-

9   bers. PI Order 36 (emphases altered). The preliminary injunction does not require

10  retrospective adjudication of final asylum denials, so the termination of the stay does

11  not require it, either.

12      Plaintiffs' arguments in support of their contention that the order "[l]ifting the

13  administrative stay ... warrants reopening or reconsidering past determinations re-

14  garding class members' asylum eligibility," Mot. 12, are flawed.

15      *First*, Plaintiffs contend that the preliminary injunction "mandates both pro-

16  spective relief—by ordering Defendants to 'return to pre-[rule] practices for pro-

17  cessing the asylum applications' of class members—*and retroactive relief*—by en-

18  joining Defendants 'from applying the [rule]' to class members." Mot. 3 (quoting PI

19  Order 36). Similarly, Plaintiffs contend that "[t]he preliminary injunction prohibits

20  Defendants from applying the Asylum Ban to '*all* non-Mexican asylum seekers who

21  were unable to make a direct asylum claim' at a port of entry before July 16, 2019

22  'because of the U.S. Government's metering policy, and who continue to seek access

23  to the U.S. asylum process.' The injunction's language is not limited to certain stages

24  of removal proceedings." Mot. 12 (quoting PI Order 36; emphasis in Mot.). But as

25  explained, the injunctive order states that "Defendants *are*" enjoined from applying

26  the rule. (Emphasis added.) The language is prospective only, and it can bind De-

27  fendants only when the injunction is in effect. Contrary to Plaintiffs' suggestion, the

28

DEFS.' OPP'N TO PLS.' MOT. TO
CLARIFY PRELIM. INJ. ORDER
Case No. 3:17-cv-02366-BAS-KSC

phrase "'from applying the [rule]' to class members" says what Defendants are pro-hibited from doing, not that they must undo things already lawfully done. The in-junction by its terms does not require the government to affirmatively reopen and readjudicate rule-based asylum denials that became final before the preliminary in-junction was issued or while it was stayed. And Plaintiffs' argument is inconsistent with settled principles of retroactivity: When a court announces a precedential rule of law, that rule "is the controlling interpretation of federal law and must be given full retroactive effect in all cases *still open on direct review*." *Harper v. Va. Dept. of Taxation*, 509 U.S. 86, 97 (1993) (emphasis added). Cases that are final and closed are not entitled to be reopened and readjudicated under later-announced rules. *See Teague v. Lane*, 489 U.S. 288, 308 (1989) ("[I]t has long been established that a final civil judgment entered under a given rule of law may withstand subsequent judicial change in that rule.").

*Second*, Plaintiffs contend that Defendants' reading of the injunction would "arbitrarily limit[]" class members' relief. Mot. 12. But a preliminary injunction that grants only prospective relief is not for that reason arbitrary. That is perfectly con-sistent with "[t]he purpose of a preliminary injunction ... merely to preserve the rel-ative positions of the parties until a trial on the merits can be held." *Camenisch*, 451 U.S. at 395; *see also JIPC Mgmt., Inc. v. Incredible Pizza Co., Inc.*, 08-cv-4310, 2008 WL 11336396, at *25 (C.D. Cal. Aug. 26, 2008) ("'Irreparable harm,' for pur-poses of obtaining preliminary injunctive relief, is harm 'that cannot be redressed by legal or equitable remedy following trial.'" (quoting *Optinrealbig.com, LLC v. Ironport Systems, Inc.*, 323 F. Supp. 2d 1037, 1050 (N.D. Cal. 2004))).

*Third*, Plaintiffs argue that "Defendants' position presumes that class mem-bers are aware of the preliminary injunction and also aware of the entire administra-tive process and can access it." Mot. 12. But class members' awareness of the in-junction is immaterial because the government is complying with the order's clear

DEFS.' OPP'N TO PLS.' MOT. TO
CLARIFY PRELIM. INJ. ORDER
Case No. 3:17-cv-02366-BAS-KSC

terms. *See infra.* Rule 23(b)(2) "does not require that class members be given notice ... presumably because it is thought (rightly or wrongly) that notice has no purpose when the class is mandatory." *Wal-Mart Stores, Inc.*, 564 U.S. at 363.

As the preliminary injunction is clear, the Court should reject Plaintiffs' request for clarification.[1]

## B. The Government is Complying With This Court's and the Ninth Circuit's Orders.

Plaintiffs also argue that "clarification" is necessary because the government purportedly is not complying with the injunction. *See* Mot. 6–8; 12–13. That is incorrect. The government (including EOIR) is complying with the order's clear terms.

On November 24, 2019, USCIS Asylum Division headquarters directed asylum officers to immediately begin asking a series of questions for all new credible-fear cases involving non-Mexican nationals to ascertain whether the interviewee was subject to metering or queue management before July 16, 2019. Ex. 1, at 7–9. When an alien's responses established that she was more likely than not an *Al Otro Lado* class member, USCIS directed its officials not to apply the rule and instead to consider the fear claim under the "significant possibility" standard for credible-fear cases used before the rule was promulgated. *See* Ex. 1, at 7–9. On November 26, to account for possible applications of the rule immediately following the injunction but before the dissemination of the November 24 guidance, USCIS paused service of credible-fear decisions in cases where a credible-fear interview was conducted on or after November 20, 2019, but the decision had not yet been served. Ex. 2 ¶ 4. In cases where the asylum officer was going to apply the rule, the officer conducted a follow-up interview using the metering questions to determine whether the alien was

---

[1] To the extent Plaintiffs seek a modification of the preliminary injunction, the Court is not empowered to make substantive modifications while the government's appeal is pending. *Townley v. Miller*, 693 F.3d 1041, 1042 (9th Cir. 2012) (filing of notice of appeal divested the district court of jurisdiction over preliminary injunction).

an *Al Otro Lado* class member. Ex. 2 ¶ 4. If her responses to the questions established that she more likely than not met the class definition, USCIS assessed the claim under the pre-rule standard. *See* Ex. 2 ¶ 4.

On December 8, 2019, ICE suspended the removal of aliens in its custody who were issued negative credible-fear determinations by USCIS pursuant to the rule between July 16 and November 19, 2019, and whose cases were not pending before EOIR, and referred those aliens to USCIS to be screened for class membership. *See* Ex. 5, at 2. Together, USCIS's and ICE's guidance would have covered all detained class members to whom the government had occasion to apply the rule in credible-fear/expedited-removal proceedings and whose cases were not pending before an immigration judge on or after November 19, 2019, and ensured that such class members' claims were adjudicated under the pre-rule standard.

As to individuals whose cases were pending before immigration judges, on November 22, 2019, consistent with its agreement to comply with the preliminary injunction, EOIR OGC issued legal guidance to its clients the OCIJ and the BIA relating to the injunction, which was disseminated to immigration judges and Board members and their staffs. Ex. 3 ¶ 4. Plaintiffs offer no concrete allegations of situations where immigration judges directly applied the rule to class members in regular removal proceedings immediately following the issuance of the preliminary injunction.[2]

---

[2] Plaintiffs assert in a footnote that "an immigration judge in Laredo ... repeatedly applied the [rule] to class members and denied asylum in December 2019, prior to the Ninth Circuit's administrative stay." Mot. 2 n. 2. Based on this, they speculate that "there are many additional instances of noncompliance that simply have not been brought directly to the attention of Plaintiffs' counsel." *Id.* Given the dearth of detail in Plaintiffs' allegation and their failure to meet and confer on this issue, Defendants are unable to respond to Plaintiffs' characterization. Regardless, the government will take appropriate steps if instances of non-compliance are specifically identified.

DEFS.' OPP'N TO PLS.' MOT. TO
CLARIFY PRELIM. INJ. ORDER
Case No. 3:17-cv-02366-BAS-KSC

1    Following the Ninth Circuit's December 20, 2019 order staying the prelimi-

2    nary injunction, the government returned to regular credible-fear and asylum pro-

3    cessing under the rule and operated under that guidance for the duration of the stay.

4    As explained, applications of the rule during the pendency of the stay were lawful.

5    *See supra* at Part I.A.

6    After the Ninth Circuit's stay terminated on March 5, 2020, the government

7    re-implemented its preliminary-injunction processing guidance. On March 5, USCIS

8    informed asylum officers of the stay's termination and re-implemented the *Al Otro*

9    *Lado* processing guidance "[e]ffective immediately." Ex. 1, at 2–4. On March 5 and

10   6, EOIR OGC issued guidance regarding the preliminary injunction to the OCIJ and

11   the BIA, Ex. 3 ¶ 6. On March 16, ICE identified and suspended the removal of aliens

12   in its custody who entered the United States between July 16, 2019, and March 5,

13   2020, and received a rule-based negative credible-fear determination from USCIS,

14   and whose cases were not pending before EOIR, and began referring those aliens to

15   USCIS for class-membership screening. *See* Ex. 6, at 2–3. Together, USCIS's,

16   EOIR's, and ICE's actions would have covered all detained class members to whom

17   the government has occasion to apply the rule in credible-fear or full removal pro-

18   ceedings on or after March 5, 2020, and ensure that such class members' claims are

19   assessed under the pre-rule standards. Plaintiffs have never alleged that DHS has

20   improperly applied the rule in credible-fear/expedited removal proceedings.

21   Plaintiffs claim to have identified "repeated and continuing violations of the

22   preliminary injunction." Mot. 11. But the six cases they identify are not violations.

23   *First*, A.N.A., E.T.M., M.M.M., R.N., and F.S.S. were denied asylum pursuant to

24   the rule before this Court issued the injunction or while the injunction was stayed.

25   *See* Ex. 9, at 3 (noting A.N.A.'s Sept. 24, 2019 asylum denial); Ex. 11, at 3 (noting

26   E.T.M.'s Oct. 1, 2019 asylum denial); Ex. 12 at 3–4 (noting M.M.M.'s Jan. 24, 2020

27   asylum denial); Ex. 14, at 3 (noting R.N.'s Jan. 28, 2020 asylum denial); Ex. 15, at

28   10 (F.S.S.'s Feb. 13, 2020 asylum denial). Those orders do not violate the injunction

DEFS.' OPP'N TO PLS.' MOT. TO
CLARIFY PRELIM. INJ. ORDER
Case No. 3:17-cv-02366-BAS-KSC

because the injunction was not in effect at those times. And certainly, they do not evidence class-wide non-compliance. *Cf.* Order re: Mot. for Determination of Discovery Dispute 7 (ECF No. 506) ("The Court disagrees, however, that plaintiffs have identified evidence of noncompliance [referring to three decisions by one immigration judge] which 'raise[s] legitimate questions' regarding defendants' efforts to abide by the Injunction, such that they are entitled to the discovery they seek.").

*Second*, the subsequent denials of A.N.A.'s, E.T.M.'s, M.M.M.'s, and R.N.'s motions to reopen are not violations because their asylum denials were final by the time they filed their motions. *See* 8 C.F.R. § 1003.39. The rule had already been lawfully applied, and the denial of a motion to reopen a final decision does not constitute a new, impermissible "appl[ication]" of the rule. *See Harper*, 509 U.S. at 97; *Teague*, 489 U.S. at 308.

*Third*, there is no violation in F.S.S.'s case because her removal proceedings are still open before the BIA. *See* Ex. 17; Ex. 18. She does not have a final asylum denial, and because her proceedings are open, her asylum application is subject to the terms of the injunction. *See* Ex. 3 ¶ 4.

*Finally*, there is presently no violation in M.T.A.'s case. Although an immigration judge in the Las Vegas immigration court denied asylum to M.T.A. pursuant to the rule while the injunction was in effect, *see* Ex. 22, at 4, the immigration judge reopened M.T.A.'s proceedings on July 9, 2020, and granted her asylum, *see* Ex. 23, at 3. Thus, Plaintiffs identify no violations of this Court's injunction. There is no need for clarification.

## II.   The Preliminary Injunction is Not Directed at EOIR, and EOIR Is Not Bound by it.

Plaintiffs ask this Court to "clarify" that "EOIR is bound by the preliminary injunction," arguing that such an order is compelled by Federal Rule of Civil Procedure 65(d)(2). Mot. 13; *see also id.* at 13–15. But EOIR is complying with the in-

junction, so Plaintiffs' request is unnecessary. In any event, Plaintiffs offer no evidence or authority suggesting that EOIR is bound by the preliminary injunction under Rule 65. Plaintiffs instead contend that EOIR is bound under Rule 65(d)(2) because Defendants purportedly "have admitted that EOIR officers work with DHS to implement the preliminary injunction," Mot. 13 (citing Lev Decl. ¶ 4); because a leaked version of an attorney-client privileged communication from EOIR's Office of General Counsel says that "'under F.R.C.P. 65(d)(2), the [preliminary-injunction] order arguably binds EOIR as a participant with DHS in determining asylum eligibility for class members,'" Mot. 14 (quoting from a Google Doc tweeted by a journalist); and because the government on appeal characterized the preliminary injunction as "'enjoin[ing] immigration judges or the Board of Immigration Appeals.'" Mot. 14 (quoting the government's opening brief). These purported "admissions" either did not occur or do not actually bring EOIR within the scope of Rule 65(d).

*First*, it is not necessary for this Court to "clarify" that EOIR is bound by the injunction. EOIR has voluntarily agreed to abide by the order's terms, Ex. 3 ¶ 4, it has taken steps to do so, Ex. 3 ¶¶ 5–9, and as explained above there are no violations that warrant clarification, *see supra* at Part I.B.

*Second*, Plaintiffs claim that Defendants "admitted that EOIR officers work with DHS to implement the preliminary injunction." Mot. 13 (citing Lev Decl. ¶ 4). Not so. Plaintiffs' counsel's declaration accurately states the government's position: "EOIR has agreed to comply with the PI and its position is also that the PI is currently in effect and that IJs and Board Members are not to apply the third-country transit rule to provisional class members." Lev. Decl. ¶ 4 (internal alterations omitted). Further, the Court should not take into consideration a leaked legal guidance document over which EOIR asserts the attorney-client privilege and which was disclosed without EOIR's authorization. Ex. 3 ¶ 4 & n.1; *see Resolution Trust Corp. v. Dean*, 813 F. Supp. 1426, 1428–30 (D. Ariz. 1993) (no waiver of attorney-client privilege over

DEFS.' OPP'N TO PLS.' MOT. TO
CLARIFY PRELIM. INJ. ORDER
Case No. 3:17-cv-02366-BAS-KSC

1   government's internal "authority to sue" memorandum obtained by news organiza-

2   tion without authorization). But even if the Court were to consider the statements

3   being attributed to EOIR OGC, the statement that Rule 65(d)(2) "'*arguably*'" binds

4   EOIR is not, in fact, an admission. Mot. 14 (emphasis added). Further, EOIR should

5   not be faulted for making a good-faith effort to abide by this Court's order.

6       *Third*, EOIR as a matter of law does not "work with" DHS in removal pro-

7   ceedings, Mot. 13, and is not "in active concert or participation" with it, Fed. R. Civ.

8   P. 65(d)(2). "An injunction binds a non-party only if it has actual notice and either

9   'abets the enjoined party' in violating the injunction or is 'legally identified' with

10  the enjoined party." *CFPB v. Howard Law, P.C.*, 671 F. App'x 954, 955 (9th Cir.

11  2016) (citing *United States v. Baker*, 641 F.2d 1311, 1313 (9th Cir. 1981), and *NLRB*

12  *v. Sequoia Dist. Council of Carpenters, AFL-CIO*, 568 F.2d 628, 633 (9th Cir. 1977);

13  alterations omitted). Whether a third party is bound turns on its "relation [with] the

14  defendant." *Regal Knitwear Co.*, 324 U.S. at 15.

15      EOIR does not abet DHS, nor is it legally identified with DHS, in applying

16  the rule. USCIS has occasion to apply the rule during credible-fear screenings, the

17  purpose of which is "to elicit all relevant and useful information bearing on whether

18  the applicant has a credible fear of persecution or torture." 8 C.F.R. § 208.30(d). And

19  although ICE trial attorneys are present at removal hearings, they are advocates who

20  "represent [DHS] in all exclusion, deportation, and removal proceedings before

21  [EOIR]," including appeals to the BIA. 6 U.S.C. § 252(c). EOIR, in contrast, has

22  occasion to "apply" the rule when immigration judges conduct a de novo review a

23  USCIS asylum officer's negative credible-fear determination, *see* 8 U.S.C.

24  § 1225(b)(1)(B)(iii)(III), 8 C.F.R. §§ 1003.42, 1208.30(g); when immigration

25  judges adjudicate asylum claims in full removal proceedings, *see* 8 U.S.C.

26  § 1229a(c)(4), 8 C.F.R. § 1208.2(b); or when the BIA adjudicates an appeal from an

27  immigration judge's order denying asylum, *see* 8 C.F.R. § 1003.1(b). The immigra-

28

DEFS.' OPP'N TO PLS.' MOT. TO
CLARIFY PRELIM. INJ. ORDER
Case No. 3:17-cv-02366-BAS-KSC

tion judges are independent administrative judges who "shall exercise their *independent judgment and discretion*" when deciding cases and "shall seek to resolve the questions before them in a timely and *impartial manner* consistent with the [INA] and regulations." *Id.* § 1003.10(b) (emphases added). EOIR adjudicators do not work "in active concert or participation" with DHS any more than appellate courts work with trial courts or judges work with prosecutors.

*Fourth*, EOIR cannot be bound by the injunction simply because the government on appeal characterized the order as "'enjoin[ing] immigration judges or the Board of Immigration Appeals.'" Mot. 14 (quoting the government's opening brief). The preliminary injunction applies to "Defendants." PI Order 36. A party cannot change the plain language of the order through its briefs.

*Fifth*, and in any event, Plaintiffs' attempt to "clarify" that EOIR is bound by the injunction underscores that the injunction Plaintiffs seek is prohibited by 8 U.S.C. § 1252(f)(1). *See* Gov't PI Opp'n 7–8. Section 1252(f)(1) states: "no court ... shall have jurisdiction or authority to enjoin or restrain the operation of" 8 U.S.C. §§ 1221–32 "other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." *See also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–82 (1999). By seeking to "clarify" that the injunction applies to EOIR, Plaintiffs confirm that they seek to prohibit immigration judges from holding an alien to her statutory burden to "establish that [she] satisfies the applicable eligibility requirements" and "merits a favorable exercise of discretion" in removal proceedings. 8 U.S.C. § 1229a(c)(4). Such a class-wide injunction that "create[s] out of thin air a requirement ... that does not exist in the statute" restrains the operation of the statute and is therefore prohibited by § 1252(f)(1). *Hamama v. Adducci*, 912 F.3d 869, 879 (6th Cir. 2018). EOIR is not bound by the injunction under Rule 65(d) or otherwise.[3]

---

[3] Plaintiffs contend in a footnote that, "[s]eparate and apart from Rule 65, the All

### III.    There is No Basis Under Rule 23(d) to Order the Government to Identify Class Members.

Plaintiffs ask this Court to order the government under Federal Rule of Civil Procedure 23(d) to comprehensively identify "all provisional class members" and "inform identified class members, including those already removed from the United States, of their potential class membership and the existence and import of the preliminary injunction." Mot. 15, 18. The Court should reject this request.

*First*, Plaintiffs fail to show that this request is necessary. The government explained in its preliminary-injunction and class-certification briefing that there is no reliable, comprehensive way to identify class members and that attempts to do so would be substantially burdensome. *See* Gov't PI Opp'n 22; Gov't Opp'n to Pls.' Mot. for Class Certification 24–25 (ECF No. 308). Based on those arguments, this Court held that "individuals could be required to submit proof (either by list or declaration) that he or she is a member of the class in order to get the relief sought." PI Order 28. The government reasonably has been using that method of identifying class members in proceedings, and Plaintiffs offer no evidence that it is not working. Even in the cases of alleged non-compliance that Plaintiffs identify, the respondents were able to present evidence that they were subject to metering during the relevant time period. *See, e.g.*, Ex. 8, at 3 ("On September 24, 2019, the court granted respondent's ... application for withholding of removal ... but denied her application for asylum because she was 'metered' at the southern land border of the United States and subject to the safe third country bar ... ."). Thus, there is no need to order the government to develop a comprehensive list of class members when it would

---

Writs Act ... also authorizes the court to issue injunctions binding on non-parties." Mot. 15 n.8. That could be true only if the injunction itself were proper, which the government respectfully contends it was not. *See United States v. N.Y. Tel. Co.*, 434 U.S. 159, 168–69, 172 (1977) (affirming All Writs Act injunction directing third-party telephone company to assist the FBI to implement a search warrant in part because the warrant itself was proper under Federal Rule of Criminal Procedure 41).

impose a substantial burden and is unlikely to generate any meaningful additional benefit.

*Second*, even if identifying and notifying class members were warranted, Plaintiffs fail to overcome the "general rule" that "the representative plaintiff should perform" the "particular tasks necessary to send the class notice." *Oppenheimer Fund, Inc.*, 437 U.S. at 356; *see also Barahona-Gomez v. Reno*, 167 F.3d 1228, 1236–37 (9th Cir. 1999) (extending this rule to a Rule 23(b)(2) class action).

This Court has discretion to order Defendants to perform notice-related tasks if Defendants are able to perform such tasks "with less difficulty or expense than could the representative plaintiff." *Oppenheimer Fund, Inc.*, 437 U.S. at 356. Plaintiffs contend that "Defendants have admitted that they already are identifying certain class members." Mot. 15. While it is true that the government has twice generated a list of aliens in ICE's custody who received negative credible-fear determinations from USCIS pursuant to the rule, and whose cases were not pending before EOIR, this search was both over- and under-inclusive of potential class members. It was over-inclusive because it identified a subset of aliens who received negative credible-fear determinations from USCIS pursuant to the rule, which includes more than just class members. *See* PI Order 36. And it was under-inclusive because USCIS's data concerning negative credible-fear determinations (from which the lists were generated) is not a reliable proxy for all aliens subject to the rule, and thus potentially did not capture some number of class members. *See* Ex. 2 ¶¶ 5–10 (explaining limitations of USCIS's data). Thus, USCIS's data cannot produce a comprehensive class list.

Plaintiffs also say that the government can generate a class list because CBP instructed Border Patrol agents and CBP officers to annotate Forms I-213 when they encounter a potential *Al Otro Lado* class member. *See* Mot. 16 (citing Lev. Decl. ¶¶ 8(a), 8(b), 11). But this data cannot be used to generate a comprehensive class list because it includes, at most, aliens who entered the United States after Border Patrol

and OFO issued their instructions in November and December 2019 to annotate the Forms I-213 when an individual affirmatively claims class membership. It would not include anyone who entered the United States before those instructions were issued. Further, the majority of these records can only be reviewed manually for the relevant annotations, so there is a substantial burden associated with developing even a partial class list using the Forms I-213. *See* Ex. 7 ¶¶ 4–6.

Similarly, EOIR's electronic records system does not as a matter of course track whether an alien was subject to metering. *See* Ex. 3 ¶¶ 14, 16. It also does not track whether an alien was denied asylum based on the rule. *See* Ex. 3 ¶¶ 12–13. To develop a class list from EOIR's records, every immigration court in the country would need to assign an employee (during a global pandemic) to manually pull the paper records of proceedings for every alien who entered the United States on the southern border on or after July 16, 2019, and manually review the entire record of proceeding—which can be hundreds of pages long and sometimes contain hours of audio recordings—for indicia of class membership. Ex. 3 ¶ 16; *see also id.* ¶¶ 11–21 (explaining substantial burdens on EOIR).

Thus, even if it were possible to develop a comprehensive class list using the government's records, it would impose a substantial burden. Plaintiffs should at a minimum bear the costs of developing a class list, particularly where the government has employed reasonable and comprehensive methods of identifying class members in the course of proceedings. *See Oppenheimer Fund, Inc.*, 437 U.S. at 538–39; *see also id.* at 362–63 ("[T]he suggestion that [Defendants] should have used 'different systems' to keep their records borders on the frivolous.").

## **CONCLUSION**

This Court should deny Plaintiffs' Motion to Clarify the Preliminary Injunction in its entirety.

DEFS.' OPP'N TO PLS.' MOT. TO
CLARIFY PRELIM. INJ. ORDER
Case No. 3:17-cv-02366-BAS-KSC

DATED: August 3, 2020

Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director

KATHERINE J. SHINNERS
Senior Litigation Counsel

*/s/ Alexander J. Halaska*
ALEXANDER J. HALASKA
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

DEFS.' OPP'N TO PLS.' MOT. TO
CLARIFY PRELIM. INJ. ORDER
Case No. 3:17-cv-02366-BAS-KSC

## **CERTIFICATE OF SERVICE**

*Al Otro Lado v. Wolf*, No. 17-cv-02366-BAS-KSC (S.D. Cal.)

I certify that I served a copy of this document on the Court and all parties by filing this document with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all counsel of record.

DATED: August 3, 2020            Respectfully submitted,

                                 */s/ Alexander J. Halaska*
                                 ALEXANDER J. HALASKA
                                 Trial Attorney
                                 United States Department of Justice

                                 *Counsel for Defendants*

DEFS.' OPP'N TO PLS.' MOT. TO
CLARIFY PRELIM. INJ. ORDER
Case No. 3:17-cv-02366-BAS-KSC