ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
(San Diego)**

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | |
| v. | **GOVERNMENT EXHIBIT 2** |
| Chad F. WOLF, Acting Secretary of Homeland Security, in his official capacity, *et al.*, | |
| *Defendants* | |

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Al Otro Lado, Inc., *et al.*, | ) | |
|     *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | No. 3:17-cv-02366-BAS-KSC |
| | ) | |
| Chad F. Wolf, *et al.*, | ) | |
|     *Defendants.* | ) | |
| | ) | |

## DECLARATION OF ASHLEY B. CAUDILL-MIRILLO

I, Ashley B. Caudill-Mirillo, pursuant to 28 U.S.C. § 1746, and based upon personal knowledge and information made known to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows relating to the above-captioned matter.

1.  I am currently the Deputy Chief of the Asylum Division with U.S. Citizenship and Immigration Services (USCIS), U.S. Department of Homeland Security (DHS). I have held this position since February 2019. Prior to becoming the Deputy Chief of the Asylum Division, I served as the Management Branch Chief at Asylum Division Headquarters since 2015, where I was responsible for overseeing the Division's resource management and strategic planning, as well as its contracts, performance management initiatives, and labor-management obligations among other duties. I joined USCIS as an Asylum Officer in the New York Asylum Office in 2008, and, in 2011, I became a Supervisory Asylum Officer. In 2012, I was selected to be the Deputy Director of the New York Asylum Office. In my current position as Deputy Chief of the Asylum Division, I oversee all Asylum Offices nationwide as well as the Division's headquarters

component, which is involved in policy development, quality assurance, and overall management of the asylum program.

2.   I provided guidance relating to the above-captioned matter by email to Asylum Division field office staff and managers, Asylum Division headquarters staff and leadership, Refugee, Asylum and International Operations Directorate executive leadership, and detailees from the Refugee Affairs Division on November 24, 2019; December 21, 2019; December 29, 2019; March 5, 2020; and March 16, 2020. USCIS asserts attorney-client privilege over a paragraph in the November 26, 2019 email. That paragraph contains advice that was relayed to Asylum Division personnel from USCIS's Office of the Chief the Counsel, for the purpose of providing Asylum Division personnel with legal advice regarding the preliminary injunction.

3.   The guidance distributed on November 24, 2019 instructed the email recipients to begin using a list of questions when conducting credible-fear interviews for non-Mexican nationals focused on whether the individual was subject to metering before July 16, 2019; and instructed that they cannot apply the rule to an individual who, after answering the questions, establishes that she is more likely than not an *Al Otro Lado* class member.

4.   On November 26, 2019, USCIS paused service for any credible fear cases that were interviewed on or after November 20, 2019, but that had not yet been served and where the Third Country Transit Asylum Bar would have applied. For these cases, USCIS conducted follow-up interviews in accordance with the guidance distributed on November 24, 2019 for prospective cases, including (a) asking the individual questions to determine if he or she was subject to metering, (b) making a class member determination, and (c) if the individual established class membership, applying the significant possibility standard to the individual's claim. This pause in service and application of the November 24, 2019 guidance for prospective cases applied to cases where the original determination was that the bar applied and the

screening determination was going to be positive, negative, or where the case was pending an outcome, but the decision had not been served.

5. I understand that Plaintiffs in this case have asked the Court to order Defendants to "make all reasonable efforts to identify class members." Pls.' Mem. in Support of Mot. to Clarify the Prelim. Inj. 18 (ECF No. 494-1). USCIS is not able to reliably develop a comprehensive class list from its own electronic records, and any attempt to do so would be unsuccessful because USCIS's credible fear records cannot capture or identify the entire *Al Otro Lado* class.

6. As a general matter, USCIS tracks whether an individual in the credible fear process is subject to the Third Country Transit Asylum Bar Rule ("rule") using a special group code in its electronic records system. USCIS uses separate special group codes for when an asylum officer determines that an individual in the credible fear process is subject to the bar, meets one of the regulatory exceptions to the bar, or is more likely than not an *Al Otro Lado* provisional class member and on that basis is not subject to the rule.

7. However, due to orders issued in this and other litigation, the special group codes for individuals in the credible fear process subject to the bar and those who establish an exception to the bar have not been continuously and uniformly used since July 16, 2019. Thus, these rule-related special group codes are not reliable proxies for all individuals who had the rule applied to them during that time and are potentially *Al Otro Lado* class members. For example, in the *East Bay Sanctuary Covenant v. Barr* litigation, between July 24, 2019 and September 10, 2019, the rule was at times enjoined nationwide and at times enjoined only in the Ninth Circuit. During the periods when the rule was enjoined (either nationwide or only in the Ninth Circuit), asylum officers were instructed to cease applying the rule consistent with the scope of the injunction, and therefore stopped using the rule-related special group codes for credible fear

3

cases impacted by the applicable injunction. Because of the shifting orders issued in the *East Bay* litigation, an individual may have received a credible fear determination from USCIS during a period when the rule was enjoined, and therefore generally would not have a rule-related special group code in USCIS' electronic record system, but the rule may have been applied to them during subsequent proceedings before an immigration judge during a period when the rule was not enjoined. Therefore, USCIS's rule-related special group codes would not reliably identify all individuals who had the rule applied to them between July 24, 2019, and September 10, 2019, and who are therefore potential *Al Otro Lado* class members.

8. Additionally, prior to issuing guidance to implement the *Al Otro Lado* preliminary injunction, USCIS did not routinely elicit information to determine whether an individual was subject to metering before July 16, 2019, in the normal course of making credible fear determinations. Accordingly, even if USCIS records could reliably identify all individuals who had the rule applied to them between July 24, 2019, and September 10, 2019, it is highly unlikely that even a manual review of USCIS's credible fear records for cases completed when the rule was enjoined would contain information sufficient to determine if the individual was subject to metering before July 16, 2019, and therefore is an *Al Otro Lado* class member.

9. USCIS guidance for implementing the *Al Otro Lado* preliminary injunction instructed asylum officers to use the *Al Otro Lado*-related special group code for individuals who were asked the metering questions and were found more likely than not to be a provisional class member. However, credible fear determinations made prior to the issuance of this Court's injunction, or while this Court's injunction was stayed between December 20, 2019 and March 4, 2020, generally will not include this special group code because asylum officers were not required to ask the metering questions and apply the *Al Otro Lado*-related special group code prior to the issuance of this Court's preliminary injunction or during the pendency of the stay.

4

However, individuals who received credible fear determinations during those time periods who have been re-referred to USCIS for an *Al Otro Lado* class membership screening pursuant to USCIS' March 16, 2020 retrospective guidance generally should have the *Al Otro Lado*-related special group code if they are found to be class members. Credible fear determinations made since March 5, 2020, after the stay terminated, generally should have the *Al Otro Lado* special group code for individuals who are found to be class members.

      10.    USCIS's December 29, 2019 guidance following the Ninth Circuit's order granting a stay of the injunction instructed asylum officers to enter "VOLUNTEERED METERED/AOL" or "POTENTIAL METERED/AOL" in the free-text "Decision Notes" field of its electronic records system if the individual affirmatively asserted that she was a class member (for cases pending an interview), or the asylum officer had already asked the metering questions and found the individual met the provisional class definition prior to service (for post-interview cases pending service), respectively. USCIS is able to search the free-text "Decision Notes" field for notations indicating potential *Al Otro Lado* class membership, including for decisions made between December 20, 2019, and March 4, 2020. However, as noted, this information would be contained in the Decision Notes field only if the individual affirmatively indicated that she was a class member or the asylum officer had already asked the metering questions and found the individual met the provisional class definition. Moreover, USCIS's search capability of the Decision Notes field is limited to an exact text match and there is no guarantee that USCIS could develop a search string that would reliably capture all of the potential notations that asylum officers might make in this free-text field indicating the individual may have been subject to metering. Thus, I cannot say that searching the "Decision

Notes" field would reliably capture all potential *Al Otro Lado* class members who received a credible-fear determination between December 20, 2019, and March 4, 2020.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 3rd day of August, 2020.

ASHLEY B CAUDILL MIRILLO
Digitally signed by ASHLEY B CAUDILL MIRILLO
Date: 2020.08.03 19:46:56 -04'00'

Ashley B. Caudill-Mirillo
Deputy Chief, Asylum Division
U.S. Citizenship and Immigration Services
Department of Homeland Security