ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | |
| v. | **GOVERNMENT EXHIBIT 3** |
| Chad F. WOLF, Acting Secretary of Homeland Security, in his official capacity, *et al.*, | |
| *Defendants* | |

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> Chad F. WOLF, Acting Secretary of Homeland Security, in his official capacity, *et al.*, <br><br> *Defendants* | Case No. 3:17-cv-02366-BAS-KSC |

### DECLARATION OF JILL W. ANDERSON, GENERAL COUNSEL, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW

I, JILL W. ANDERSON, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that my testimony below is true and correct:

1. I serve as the General Counsel for the Executive Office for Immigration Review ("EOIR"). In this capacity I manage the Office of General Counsel ("OGC") and provide legal counsel to the Agency on matters pertaining to the Immigration and Nationality Act and other laws and procedures as they relate to EOIR, among other duties. I have served in this position since December 2019.

2. Prior to December 2019, I served as Acting General Counsel beginning in June 2019. From September 2017 to June 2019, I served as Deputy General Counsel. My prior positions in EOIR were Supervisory Attorney for the Board of Immigration Appeals ("BIA") from May 2011 to September 2017, and Attorney Advisor for the BIA from December 2006 to May 2011.

3. I make this Declaration based on my own personal knowledge, on information contained in the records of EOIR, or information provided to me by EOIR employees.

**EOIR OGC Guidance**

4. Although EOIR is not a party to this litigation, EOIR has voluntarily agreed to act consistently with this Court's November 19, 2019 class-certification and preliminary-injunction order. On November 22, 2019, OGC issued legal guidance to the leadership of the Office of the Chief Immigration Judge ("OCIJ") and of the BIA regarding the impact of the order. OCIJ leadership disseminated the guidance and a copy of the order to the immigration judges ("IJs") who adjudicate cases and their staff, and the BIA disseminated the guidance to Board Members and attorney advisors. As counsel to OCIJ and the BIA, the guidance provided to OGC's clients is protected by attorney-client privilege, and was marked with a banner indicating such.[1] EOIR has never authorized this document to be disclosed publicly.

5. On December 26, 2019, OGC issued legal guidance to OCIJ and BIA leadership regarding the December 20, 2019 order of the U.S. Court of Appeals for the Ninth Circuit staying the preliminary injunction. This legal guidance was disseminated to the adjudicators and their staff. BIA leadership disseminated the guidance to Board Members and attorney advisors. As counsel to OCIJ and the BIA, the guidance provided to OGC's clients is protected by attorney-client privilege.

6. On March 5, 2020, OGC issued legal guidance to OCIJ leadership regarding the Ninth Circuit's order lifting the stay of the preliminary injunction. This legal guidance was disseminated to the adjudicators and their staff. On March 6, this legal guidance was provided to the BIA. As counsel to OCIJ and the BIA, the guidance provided to OGC's clients is protected by attorney-client privilege.

7. On May 7, 2020, OGC issued supplemental legal guidance regarding the preliminary injunction to the Chief Immigration Judge, which was disseminated that day to the Assistant Chief Immigration Judge ("ACIJ") for the Tacoma, Washington immigration court, who then disseminated it to the IJs who adjudicate cases in that court. As counsel to OCIJ, the guidance provided to OGC's client is protected by attorney-client privilege.

8. On June 3, 2020, OGC issued supplemental legal guidance regarding the preliminary

---

[1] The email specifically contained the following language at the bottom of the communication:
***Warning***Attorney/Client Privilege***Attorney Work Product***
This communication and any attachments may contain confidential and/or sensitive attorney/client privileged information or attorney work product and/or law enforcement sensitive information. It is not for release, review, retransmission, dissemination, or use by anyone other than the intended recipient. Please notify the sender if this e-mail has been misdirected and immediately destroy all originals and copies. Furthermore, do not print, copy, re-transmit, disseminate, or otherwise use this information. This document is for INTERNAL GOVERNMENT USE ONLY and may be exempt from disclosure under the Freedom of Information Act, 5 U.S.C. §§ 552(b)(5), (b)(7).

    injunction to the BIA similar to the supplemental legal guidance issued to OCIJ on May 7, 2020. As counsel to the BIA, the guidance provided to OGC's client is protected by attorney-client privilege.

9. On July 29, 2020, OGC issued supplemental legal guidance regarding the preliminary injunction to the Chief Immigration Judge, which was disseminated that day to the Assistant Chief Immigration Judge ("ACIJ") for the LaSalle, Louisiana immigration court, who then disseminated it to the IJs who adjudicate cases in that court. As counsel to OCIJ, the guidance provided to OGC's client is protected by attorney-client privilege.

**Time and Resources Required for Plaintiffs' Requested Relief**

10. I understand that Plaintiffs in this case ask this Court to order the government, including EOIR, to "take immediate affirmative steps to reopen or reconsider past determinations that potential class members were ineligible for asylum based on the [rule], regardless of what stage of removal proceedings such potential class members are in," with such steps including "identifying affected class members and" potentially "directing immigration judges or the BIA to reopen or reconsider their cases"; to "make all reasonable efforts to identify class members, including but not limited to reviewing their records for notations regarding class membership made pursuant to" guidance issued by U.S. Customs and Border Protection ("CBP"); and "inform identified class members, including those already removed from the United States, of their potential class membership and the existence and import of the preliminary injunction." Pls.' Mem. of Points and Authorities in Support of Their Motion for Clarification of the Preliminary Injunction, at 17–18 (ECF No. 494-1). Plaintiffs' requested relief would impose an immense burden on EOIR at a time when the agency is already facing significant staffing and workflow disruptions stemming from the global COVID-19 pandemic.

11. EOIR maintains a paper record of proceedings ("ROP") of each individual's proceedings in immigration court. The record may vary in size from a few pages and a small number of digital audio recordings of hearings to multiple volumes containing hundreds of pages and multiple lengthy audio recordings of hearings, depending on the complexity of the issues involved and the documentation presented in conjunction with the case. As such, an individualized review of documents contained in the ROP and the audio recordings could take between 6 and 24 employee-hours per case, depending on the individual case. The ROPs are housed at immigration courts across the country during the pendency of the proceedings, and then sent to the Federal Records Center ("FRC") to be archived once the case is completed. Although EOIR recently began rolling out an electronic filing system available for use by attorneys and accredited representatives of individuals in immigration

      court proceedings, the system is not available for use by pro se individuals.

12. EOIR utilizes an electronic case management system ("CASE") that captures into an electronic database a subset of data from the ROPs. EOIR's CASE database tracks whether an individual was placed in removal proceedings by DHS, and what applications for relief an individual applied for and the outcome of those applications, but it does not track the underlying basis for the decision to grant or deny an application for relief or protection from removal, including an application for asylum, withholding of removal or protection under the Convention Against Torture. In order to learn the underlying basis for the decision to grant or deny an application, including whether the individual was subject to the transit rule, EOIR would have to undertake a manual review of the physical file.

13. EOIR's CASE database also records whether an individual received a credible fear review before an immigration judge following an adverse credible fear finding by an asylum officer. But CASE does not track the underlying basis for the outcome of the immigration judge's review, such as whether the immigration judge affirmed the asylum officer's determination that the individual was subject to the rule, or whether the immigration judge found that the individual was ineligible on some other ground or otherwise unable to establish a credible fear of removal significant possibility that s/he could establish eligibility for asylum, withholding or CAT. In order to learn the basis for affirming an adverse credible fear finding during a credible-fear review, including whether the individual was subject to the transit rule, EOIR would have to undertake a manual review of the physical file.

14. In order to track this information, EOIR would have to make significant changes to its database system to create new data fields to specifically capture whether the individual was subject to the transit rule, and if so, whether metering was addressed. There could be any number of reasons for denying a particular application for relief, including a number of statutory bars to relief and discretionary determinations. The purpose of the database is to capture high-level information that would assist the components in file management and case tracking. It was not intended to record every aspect of the proceeding, including substantive findings made by the adjudicators that involve complex decision-making and turn on innumerable factors presented in a given case. As such, while the system records a subset of information relating to the substantive determination on an application for relief or finding of removability that may provide some information related to potential class membership, the system does not capture other independent reasons for granting or denying an application for relief or removability findings. A manual review of each case would still be required. Moreover, making such changes would not only require a significant financial allocation and resource commitment to accomplish, it would require the agency to conduct training for the users in the field to start capturing this information. This information would

4

only be captured prospectively where such information is affirmatively established on the record. If EOIR were to try and capture the information retrospectively, it would have to conduct a manual review of each file and all of the audio recordings for the hearing associated with each case to discern whether such information was in fact presented in the record.

15. Thus, in order for EOIR to identify all potential class members who have been denied asylum by EOIR pursuant to the rule since July 16, 2019, a legal assistant at each immigration court would need to locate each ROP from the immigration courts in the field or those records that have already been retired to the FRC, and arrange to ship the record to EOIR headquarters. The FRC charges $4.95 per ROP in order to locate and pull each file; $4.95 to return and re-file each ROP; and a $46.25 processing fee associated with the retrieval, return, and refiling of each ROP, in addition to shipping and handling costs. Currently, all but six of the FRCs are closed and only processing emergency requests. The six FRCs that just reopened last week are only operating with 10-20 percent of their staffs. A number of immigration courts remain closed or are only open in a limited capacity for filing or to hear cases remotely, further limiting EOIR's ability to obtain files. Considering the logistics associated with obtaining the ROPs, already-existing workloads of the EOIR employees and vendors, and transit time for the ROPs to arrive to EOIR-OGC from the immigration courts, I estimate that two full-time employees at the immigration court, working eight hours per day, five days a week, could send approximately 150 ROPs to OGC per week. As discussed below, EOIR issued 96,952 decisions during the Ninth Circuit stay. If EOIR were to limit its search to just those decisions issued during the stay, EOIR would have to expend 51,680 employee hours to send all 96,952 files to OGC, which could take up to 646 weeks to complete if OGC were to receive 150 ROPs per week.[2] This is an estimate for ROPs located at the immigration court. For those ROPs already archived at the FRCs, it would take an individual employee working full-time an additional three to five days to place the orders with the FRC for every thousand ROPs in archive. This is in addition to the time it will take the FRC staff to locate, pull and ship the files to OGC, which due to the current closures is unknown at this time. These estimates are based on the OGC FOIA unit's experience ordering large numbers of ROPs to respond to FOIA requests.

16. After receiving the file, EOIR-OGC would have to conduct a review of the file and listen to the audio recordings of each hearing for indicia of potential class membership, such as whether the individual claims to have been subject to CBP's metering policy before July 16, 2019; entered the United States on or after July 16, 2019, and was placed into expedited removal proceedings, which EOIR does not track as DHS is solely responsible for

---

[2] OCIJ currently does not have the resources available to divert two full-time employees to this task as a result of staffing shortages due to the COVID-19 pandemic.

executing such proceeding and does not necessarily provide EOIR with that information when someone is ultimately placed in removal proceedings; or received a positive credible-fear determination and was placed in section 240 removal proceedings but was found by an immigration judge to be subject to the transit bar and asserted that he or she had been subject to the metering policy. Because a metering claim can be asserted orally on the record or in writing, EOIR-OGC would have to review the paper records and the audio recordings in each record of proceeding to determine whether the individual satisfied the criteria for class membership. In order to insure complete inclusivity, EOIR would be required to search all cases that were initiated since July 16, 2019, not just cases that show as "completed" in CASE since that date, to identify all potential class members who may have had the transit rule applied to them.

17. EOIR presently has a backlog of over one million cases. *See* https://www.justice.gov/eoir/page/file/1242166/download.

18. From July 16, 2019 until July 17, 2020, 482,904 removal cases and 18,462 credible fear review cases were initiated in the immigration courts.

19. Between July 16, 2019 and July 17, 2020, the IJs issued 292,077 decisions in removal cases and 18,761 decisions in credible fear review cases, and the BIA issued 23,515 decisions in removal cases.[3]

20. Between December 20, 2019 and March 5, 2020, 87,988 removal cases and 4,671 credible fear review cases were completed by IJs and 4,293 decisions were issued by the BIA, for a total of 96,952 decisions issued during the Ninths Circuit's stay of the District Court's decision.

21. EOIR-OGC estimates that an individualized review of the ROP, including the audio recordings, could take between 6 to 24 employee-hours per case, and therefore it could review no more than 30 ROPs every 30 days. Due to significant staffing and workflow disruptions stemming from the global COVID-19 pandemic, including the mounting backlog of cases, the immigration courts do not have resources to assist with the review of these files. Because of other ongoing Agency demands, including competing immigration-related litigation to which EOIR is a party (OGC is currently handling thirty-eight (38) class action lawsuits in addition to 3-5 new habeas petitions served weekly), only approximately four OGC employees are available part-time to conduct the record review, as they must also work on other cases with similar demands. OGC has one office located in EOIR headquarters, Falls Church, Virginia, with a current staff of twenty-five (25)

---

[3] The Board does not have authority to review credible fear or reasonable fear review determination made by immigration judges pursuant to 8 CFR §§ 1208.30(g)(2)(iv)(A) and 1208.31(g)(1) respectively.

federal attorneys and thirteen (13) support staff. OGC supports litigation, policy, regulatory review, the Fraud Program, the Attorney Discipline Program, FOIA, Employee Labor Relations, Ethics, Reasonable Accommodations, Records Management, and Privacy for the Agency. Consequently, four employees represents more than ten percent of our staff to work on tracking and reporting for this single litigation. Consequently, if EOIR were required to review even just the 96,952 decisions issued during the Ninth Circuit's stay of the preliminary injunction, it would take EOIR 3,231 months or 269 years to undertake this review. Such an obligation would be substantial.

Signed this 3rd day of August, 2020

JILL ANDERSON
Digitally signed by JILL ANDERSON
Date: 2020.08.03 17:56:21 -04'00'

Jill W. Anderson
General Counsel
Executive Office for Immigration Review