ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
**(San Diego)**

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | |
| v. | **GOVERNMENT EXHIBIT 15** |
| Chad F. WOLF, Acting Secretary of Homeland Security, in his official capacity, *et al.*, | |
| *Defendants* | |

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
ADELANTO IMMIGRATION COURT

File No. ▇▇▇
In the Matter of:

▇▇▇
a.k.a. ▇▇▇

Respondent

In Removal Proceedings

**DETAINED**

**Charge:** INA § 212(a)(7)(A)(i)(I) –an alien with no valid entry documents

**Applications:** Asylum, Withholding of Removal, and Convention Against Torture

**On Behalf of Applicant**
David I. Horowitz, Esq.
Kirkland & Ellis, LLP
555 South Flower Street
Los Angeles, California 90071

**On Behalf of DHS**
Andres Kohl, Esq.
Immigration and Customs Enforcement
10250 Rancho Road
Adelanto, California 92301

## Decision of the Immigration Judge

### I.  Factual and Procedural History

The Department of Homeland Security (DHS) initiated removal proceedings against respondent, ▇▇▇ filed a Notice to Appear (NTA) with the Adelanto, California, Immigration Court on September 12, 2019, alleging that: (1) respondent is not a citizen or national of the United States; (2) that she is a native and citizen of Cameroon; (3) that respondent applied for admission at the Port of Entry at San Ysidro, California on August 17, 2019; and, (4) that she did not possess or present a valid immigrant visa, reentry permit, border crossing identification card, or other valid entry document. (Exh. 1). Based on those allegations, the NTA charged respondent with removability under Immigration and Nationality Act (INA) § 212(a)(7)(A)(i)(I), as an intending immigrant without valid entry documents. *Id.*

Respondent admitted the allegations contained in the NTA, and the court determined that

1

she was removable as charged. INA § 240(c)(2)(A). On that date, the court directed Cameroon as the country of removal, should removal become necessary. 8 C.F.R. § 1240.10(f).

Respondent filed a Form I-589, Application for Asylum and Withholding of Removal, on November 26, 2019. (Exh. 6). On February 11, 2019, the court conducted an evidentiary hearing on respondent's applications for relief.

## II.  Evidence

The evidence in the record consists of respondent's February 11, 2019, testimony, as well as the following exhibits:

Exhibit 1   Notice to Appear

Exhibit 2   Notice of Asylum Deadline

Exhibit 3   Record of Deportable/Inadmissible Alien, Form I-213

Exhibit 4   CIA World Factbook-Cameroon

Exhibit 5   U.S. Department of State-Cameroon

Exhibit 6   Application for Asylum and Withholding of Removal, Form I-589

Exhibit 7   Respondent's Exhibit 5 of 5

Exhibit 8   Respondent's Exhibit 4 of 5

Exhibit 9   Respondent's Exhibit 3 of 5

Exhibit 10  Respondent's Exhibit 2 of 5

Exhibit 11  Respondent's Exhibit 1 of 5

Exhibit 12  Respondent's Exhibit 1-5

Exhibit 13  DHS-Asylum Office Materials

The court considered all the evidence in the record even if it is not specifically discussed in this decision.

A. **Respondent's Testimony**

Respondent fears return because she is an Anglophone. She was born in Cameroon. She speaks English and Pidgin English. Her detailed declaration is contained in the record. (Exh. 10 at 34-48). She testified that on October 2016, there was a peaceful demonstration. She was arrested by the military police and detained for six days. In 2017, her father was arrested by the police. She was beaten and detained. In 2018 her family's house was burned down. She was separated from her family. She lived with her boyfriend, but he was killed. On December 12, 2018, she was arrested and detained. She later escaped. She is afraid to return that she would be arrested, detained or even killed. She is afraid of the military and the separatist fighters called the "Amba Boys."

In the fall of 2016, she participated in the demonstration at the University. She studied marketing at the University. The University failed to release scholarship money and charged late tuition fees. She was not in the front line of the demonstration, but she was hit with a baton and kicked. An officer pulled her by her head into a truck.

She was taken to a police station. She was placed in a cell. The conditions were horrible. Women were taken and assaulted. On the sixth night, an officer took her out of the cell to another room. The officer locked the door. Her clothes were forcefully taken off, but she was menstruating and told to return to her cell. The attempted sexual assault scared her.

She was taken to the State Counsel. Charges were filed, alleging that she was a terrorist. She said she was not guilty. She said she was protesting in a nonviolent manner. She is not in favor of forming a separatist state of "Ambazonia."

She spoke with Elvis, her boyfriend, after release from detention. She went back to school in 2017. She described the situation as dangerous. The Amba Boys were kidnapping people. She

did not graduate from the University. She was concerned about warnings that said "occupants must leave." She was afraid and left.

In 2018 she lived with her father. She described the village as unsafe because there was a military base nearby. The Amba Boys came by. A military person was killed near her house. There was an investigation. The BIR (Rapid Intervention Battalion) attacked the village. She ran away. She was in the forest for two weeks. She was with neighbors.

She returned to the village to look for her family. The family home was burned down. She did not see her family. She saw a grave. A neighbor said the military burned the house. Her grandmother was killed in the fire. All their belongings were burned.

She went to live with her boyfriend. The rest of her family disappeared. One day Elvis went work. She did not hear from him and was worried. She heard someone at the hospital was dead. It was her boyfriend Elvis. He had been shot and was dead. She believes the military was responsibility for his death. There was a curfew. Elvis was not a separatist or Amba Boy. The military came looking for her at Elvis's house. His family accused her of being an accomplice with the military in his death.

Later she was kidnapped by the Amba Boys. She was blindfolded and put in a car. She was taken in house. They asked her questions about Elvis. They made her swear she was not a "Black Leg" (a government informant). She was taken to the roadside and left.

She then called a friend, Marian, and stayed with her for a week. On December 12, 2018, the military came to the house looking for her. They kicked and slapped her. She was beaten. They beaten Marian and left her. Respondent was taken in a truck. They said these were "the last days on earth."

4

She was taken to a police station in Bamenda. She was asked question about Elvis. The officer said they were building a case against her. They said she would be taken to the Yaounde police station. Her father told her people did not return from this place. She was taken to another police station. Marian and her father arranged for her to be smuggled out and escaped.

She was in Douala two or three months. She went to Ecuador. She was scared of the military. She did not want to put others in danger. Her uncle made arrangements for her travel. She did not apply for asylum or refugee status in any of the countries she traveled through. She continues to fear persecution based on her political opinion should she return to Cameroon.

On cross-examination she stated there were hundreds of students protesting at the University. At the Tiko jail she was not physically harmed other than the attempted sexual assault. Her mother took care of her she bought drugs. She went to the hospital for malaria. A gunman came to the hospital. The house was burned down. Her grandmother was presumed dead. There was a grave next to the house. The family left the house after it burned. She did not see her family after the incident. She does not believe she could return.

Her family is in Cameroon. Her uncle said they are in Douala. She did not mention meeting her "sister" that was really her cousin. She did not tell CBP that she was kidnapped by the Amba Boys. She was released without harm.

She stayed with her friend Marion. The military found her she does not know how. They used force on both of them. They were looking for her and they took her. They did not take Marian. She was later released and went to her uncle's house. She had injuries but did not seek medical attention.

She used her passport and identity card were used to leave the country. Her passport was with her uncle. She had plans to attend school so her uncle had her passport. She had her

5

identification with her.

Her family is in Douala. This includes her parents, siblings, and uncle. She does not know if they have experienced any harm.

### III.   Applications for Relief

**A.   Credibility**

An applicant filing for relief from removal must persuade the court that her evidence is credible. INA §§ 208(b)(1)(B)(iii), 241(b)(3)(C). Respondent's applications are subject to the credibility standards articulated in the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (2005), because they were filed after May 11, 2005. *See Shrestha v. Holder*, 590 F.3d 1034, 1039-40 (9th Cir. 2010). The court finds that respondent provided credible testimony and affords her testimony and declaration full evidentiary weight. INA §§ 208(b)(1)(B)(iii), 241(b)(3)(C).

**B.   Safe Third Country Bar**

An alien is ineligible to apply for asylum if she crossed the southern land border of the United States on or after July 16, 2019, and failed to seek asylum or other humanitarian protection in a safe third country—defined as any country party to the 1951 United Nations Convention relating to the Status of Refugees, the 1967 Protocol, or the United Nations Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment—prior to entering the United States.[1] INA § 208(b)(2)(C); 8 C.F.R. § 1208.13(c)(4). The Supreme Court and Ninth Circuit have stayed injunctions of the safe third country bar, so the court is required to apply it. *See Barr v. East Bay Sanctuary Covenant*, 140 S. Ct. 3 (2019) (mem.) (staying nationwide injunction); *Al Otro Lado, Inc., et al. v. McAleenan*, 17-CV-02366, 2019 WL 6134601 (S.D. Cal. Nov. 19, 2019), *stayed by Al Otro Lado v. Wolf*, No. 19-56417 (9th Cir. Dec. 20, 2019)

---

[1] There is also an exception for victims of severe forms of trafficking, as defined by 8 C.F.R. § 214.11, but that exception does not apply in this case. 8 C.F.R. § 1208.13(c)(4)(iii); (Exh. 10 at 46-47) (respondent's declaration).

6

(administratively staying an injunction that prevented the government from applying the third-country bar to "non-Mexican asylum-seekers who were unable to make a direct claim at a United States Port of Entry before July 16, 2019, because of the Government's metering policy, and who continue to seek access to the U.S. asylum process.").

In this case, respondent left Cameroon and traveled to Ecuador, Colombia, Panama, Costa Rica, Nicaragua, Honduras, Guatemala, and Mexico. (Exh. 6 at 7). She did not apply for asylum or refugee status in any of those countries. She explained that she received a pass to travel to Tijuana in Chiapas, Mexico. (Exh. 10 at 53-56). In Tijuana she stayed in a camp. On June 5, 2019, she took a bus to an immigration center. She was told by a United States immigration officer that she could not enter the country, and she subsequently received a number from Mexican authorities. (Exh. 10 at 47) (respondent's declaration), 53-55 (Mexican immigration certificate dated June 5, 2019). Respondent ultimately applied for admission at the Port of Entry at San Ysidro, California on August 17, 2019. (Exh. 3 at 2) ("On August 17th, 2019 at approximately 1002 hours, ▮▮▮ ... attempted to enter the United States from Mexico via pedestrian primary lanes at the San Ysidro, California Port of Entry.").

Because respondent failed to apply for protection from persecution or torture in a safe third country prior to crossing the southern land border of the United States on August 17, 2019, the court finds that she is ineligible to apply for asylum. 8 C.F.R. § 1208.13(c)(4)(i).

C. **Withholding of Removal**

To qualify for withholding of removal, an applicant must show that her life or freedom would be threatened because of a protected ground if he were to return to the country of removal. INA § 241(b)(3)(A); *Barajas-Romero v. Lynch*, 846 F.3d 351, 359 (9th Cir. 2017) (explaining that the "a reason" nexus requirement for withholding of removal includes weaker motives than the

7

"one central reason" asylum standard). An applicant may establish eligibility for withholding of removal through either a presumption that their life or freedom would be threatened based on past persecution or an independent showing of a clear probability of future persecution. *Tamang v. Holder*, 598 F.3d 1083, 1091 (9th Cir. 2010); 8 C.F.R. § 1208.16(b)(1)–(2).

The court finds that respondent is entitled to a presumption that her life or freedom would be threatened because she suffered past persecution at the hands of the Cameroonian government "because of" her political opinion. 8 C.F.R. § 1208.16(b)(1)(i). Specifically, the harm respondent experienced—repeated beatings by soldiers and prison guards, menacing threats, attempted sexual assault, and extended periods of unlawful detention—rises to the level of persecution. *See Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019) (discussing persecution standard). Further, the evidence clearly establishes that respondent was arrested and harmed by government officials because of her imputed Ambazonian-secessionist political opinion. (Exh. 10 at 35, 38-40) (respondent's declaration), 74-82 (declaration of Dr. Natalie Letsa describing conditions in Cameroon and discussing respondent's experiences); *see also* (Exh. 5 at 1) ("Human rights issues included arbitrary and unlawful killings by security forces as well as armed Anglophone separatists; forced disappearances by security forces, Boko Haram, and separatists; torture by security forces and Anglophone separatists; *prolonged arbitrary detention including of suspected Anglophone separatists by security forces*") (emphasis added).

The court further finds that DHS failed to rebut the presumption that respondent's life or freedom would be threatened by showing a fundamental change in circumstances or by establishing that respondent could reasonably relocate to avoid future harm. 8 C.F.R. § 1208.16(b)(1)(ii); *see* (Exh. 5); (Exh. 10 at 7) (asylum officer's analysis).

8

Because respondent's life or freedom would be threatened because of a protected ground in Cameroon, the court grants her application for withholding of removal. INA § 241(b)(3)(A). In light of this disposition, the court does not reach respondent's application for protection under the Convention Against Torture. *See Simeonov v. Ashcroft*, 371 F.3d 532, 538 (9th Cir. 2004) (agencies are not required to reach non-dispositive issues).

Accordingly, the following orders[2] shall enter:

### Orders

Respondent's application for asylum under INA § 208 is **DENIED**.

Respondent is ordered removed from the United States to **CAMEROON**.

Respondent's application for withholding of removal under INA § 241(b)(3)(A) is **GRANTED**. Respondent shall not be removed to Cameroon.

Respondent's application for protection under the Convention Against Torture is **WITHDRAWN**.

Date: February 13, 2020

Tammy L. Fitting
Immigration Judge

---

[2] Respondent has the right to appeal this decision, using a Form EOIR-26, which must be *received* by the Board of Immigration Appeals within 30 calendar days after the mailing of this order. 8 C.F.R. §§ 1003.3(a)(1), 1003.38(b), 1240.15. Respondent has the right to an attorney of her choosing during her appeal at no expense to the United States government. An appeal must be accompanied by a filing-fee, but a fee-waiver is available. 8 C.F.R. § 1003.8(a)(3).