MAYER BROWN LLP
 Matthew H. Marmolejo (CA Bar No. 242964)
 *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
 Ori Lev (DC Bar No. 452565)
 (*pro hac vice*)
 *olev@mayerbrown.com*
 Stephen M. Medlock (VA Bar No. 78819)
 (*pro hac vice*)
 *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:   +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
 Melissa Crow (DC Bar No. 453487)
 (*pro hac vice*)
 *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Chad F. Wolf,[1] *et al.*,<br><br>Defendants. | Case No.:  17-cv-02366-BAS-KSC<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR CLARIFICATION OF THE PRELIMINARY INJUNCTION**<br><br>Hearing Date: August 17, 2020<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

---

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

REPLY IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .......................................................................................... 1

II.   ARGUMENT ................................................................................................. 2

      A.    DEFENDANTS MISINTERPRET THE COURT'S ORDER AND
            IGNORE ITS INTENT ...................................................................... 2

      B.    EOIR IS BOUND BY THE PRELIMINARY INJUNCTION .............. 5

      C.    DEFENDANTS SHOULD BEAR THE BURDEN OF IDENTIFYING
            POTENTIAL CLASS MEMBERS ...................................................... 8

III.  CONCLUSION .............................................................................................. 9

REPLY IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Otro Lado v. Wolf*,
   952 F.3d 999 (9th Cir. 2020) ...................................................................8

*Capital Area Immigrants' Rights Coalition ("CAIR") v. Trump*,
   No. 19-2117, 2020 WL 3542481 (D.D.C. June 30, 2020)......................7

*Fajardo v. INS*,
   300 F. 3d 1018 (9th Cir. 2002) ................................................................6

*Harper v. Va. Dept. of Taxation*,
   509 U.S. 86 (1993)...................................................................................4

*Hernandez v. Sessions*,
   872 F.3d 976 (9th Cir. 2017) ...................................................................3

*Paramount Pictures Corp. v. Carol Publ'g Grp.*,
   25 F. Supp. 2d 372 (S.D.N.Y. 1998).......................................................2

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) .................................................................7

*Teague v. Lane*,
   489 U.S. 288 (1989).................................................................................4

*United States v. N.Y. Tel. Co.*,
   434 U.S. 159 (1977).................................................................................6

**Statutes**

8 U.S.C. § 1158.................................................................................................7

8 U.S.C. § 1252(f)(1) .......................................................................................7

**Other Authorities**

8 C.F.R. § 1208.13(c)(4) ..................................................................................3

84 Fed. Reg. 33,829-01 (July 16, 2019) .........................................................3

Fed. R. Civ. P. 65(d) ....................................................................................2, 5

Rule 23(b)(3)....................................................................................................8

REPLY IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

iv

## I.    INTRODUCTION

Defendants' opposition makes it clear that the parties have starkly different understandings of the scope of this Court's preliminary injunction order.  It is also clear that, without court intervention, Defendants' noncompliance will continue.

Defendants confuse Plaintiffs' motion for clarification with a motion for contempt. Plaintiffs are not seeking to hold Defendants in contempt for the instances of noncompliance identified in Plaintiffs' opening brief. Rather, Plaintiffs use these instances of noncompliance to demonstrate the overarching problems with Defendants' interpretation and implementation of the injunction. Defendants themselves seem to acknowledge the gaps in their implementation by consistently issuing supplemental guidance in response to Plaintiffs' outreach. *Compare, e.g.,* Medlock Decl. at ¶ 3 (Plaintiffs bring M.M.M. case in LaSalle, Louisiana immigration court to Defendants' attention on July 27, 2020) *with* Dkt. 508-4 at ¶ 9 (supplemental guidance issued to same immigration court two days later).

The timeline provided in Defendants' response leaves no doubt that the instances of noncompliance were corrected only because Plaintiffs brought them to Defendants' attention. *Compare, e.g.*, Dkt. 494-2 at ¶¶ 4, 5 (Plaintiffs identified instances of noncompliance in immigration judge's (IJ) orders on April 20, 2020), *with* Dkt. 508-4 at ¶ 7 (The Executive Office for Immigration Review (EOIR) issued supplemental guidance on the injunction to the Tacoma immigration court on May 7, 2020) *and* Dkt. 508 ("Opp'n") at 14-15 (IJ denied A.N.A. and E.T.M.'s motions to reopen proceedings on May 5, 2020, but reopened the proceedings *sua sponte* on May 11, "following the dissemination of EOIR OGC's May 7 supplemental guidance").

Compliance with an injunction should not be a game of Whac-A-Mole.  The burden is not on Plaintiffs to identify instances of noncompliance with the injunction so that Defendants can engage in piecemeal, ameliorative efforts, only to later argue that no violations have occurred. This Court's preliminary injunction applies with

REPLY IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

1    full force and it is *Defendants'* responsibility to ensure that *all* class members who

2    had the Asylum Ban applied to them because of *Defendants'* metering policy do not

3    suffer any adverse effects. Defendants' response demonstrates that the instances of

4    noncompliance identified by Plaintiffs may be merely the tip of the iceberg.

5         Defendants' understanding of the scope of the preliminary injunction excludes

6    class members with final orders who are not detained. *See* Dkt. 494-2 at ¶¶ 10(a),

7    10(d), 10(e), 11; 12(b); Opp'n at 24. Those exclusions are incorrect because, *first*,

8    Defendants have ignored the language and intent of the preliminary injunction order.

9    *Second*, Defendants are wrong when they deny EOIR's responsibility for

10   implementing the injunction. *Third*, Defendants cannot shirk their responsibility and

11   ability to identify potential class members, particularly given their exclusive access

12   to information that would allow for such identification. Defendants should have

13   given the injunction its obvious meaning. Instead, they appear to have engaged in a

14   search for loopholes. That should end.

15   **II.    ARGUMENT**

16        Federal Rule of Civil Procedure 65(d)(1) requires that injunctions address

17   with specificity the "act or acts restrained or required." Where, as here, the parties'

18   understanding of what acts are required differ, clarification of the injunction is

19   needed to ensure proper implementation and to avoid future contempt. *Paramount*

20   *Pictures Corp. v. Carol Publ'g Grp.*, 25 F. Supp. 2d 372, 374 (S.D.N.Y. 1998)

21   (citing *Regal Knitwear Co. v. Nat'l Labor Relations Bd.*, 324 U.S. 9, 15 (1945)).

22        **A. Defendants Misinterpret the Court's Order and Ignore Its Intent**

23        The parties agree that the preliminary injunction "covers 'all' class members."

24   Opp'n at 19. They disagree about whether Defendants have taken the steps necessary

25   to comply with the injunction with respect to all class members. Defendants'

26   misinterpretation of the preliminary injunction is based on two elemental

27   misunderstandings.

28        ***First***, Defendants exclude non-detained class members from the scope of the

REPLY IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

injunction. Defendants assert that the combined guidance issued after the Ninth

Circuit lifted its stay appropriately covers "all detained class members." *Id.* at 24.

This begs the question: what about non-detained class members? Defendants do not

point to a single instance where this Court's preliminary injunction order

differentiated between detained and non-detained class members. Nor do they

identify any language that allows for exclusion of non-detained class members from

the injunction's protections. Nor can they. The massive loophole that Defendants

have manufactured in the Court's preliminary injunction order must be remedied.

**Second**, Defendants claim that the Asylum Ban[2] cannot be applied to class

members with final asylum denials. *See* Opp'n at 19. According to Defendants, such

class members, "had the rule *applied* to them, but the government is no longer

'applying' it to them in violation of the injunction," because the irreparable injury

covered by the injunction has already occurred. *Id.* By Defendants' logic, the class

members who have been injured the most are entitled to no injunctive relief. That

defies both common sense and even a cursory reading of the preliminary injunction

order.

Reprising an argument that has been rejected by both this Court and a motions

panel of the Ninth Circuit, Defendants confuse Plaintiffs' challenge to metering with

a challenge to the Asylum Ban. The irreparable injury this injunction addresses is

the lack of access to the asylum process due to Defendants' metering of class

members prior to July 16, 2019. Therefore, the status quo the injunction seeks to

redress is the opportunity to access the asylum process. To suggest that principles of

retroactivity would prevent an injunction that requires U.S. Department of

Homeland Security (DHS) officials and immigration judges to reconsider past

determinations defies precedent. *See Hernandez v. Sessions*, 872 F.3d 976, 997,

1000 (9th Cir. 2017) (affirming a preliminary injunction that required the

---

[2] Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33,829-01 (July 16,
2019), *codified at* 8 C.F.R. §§ 208.13(c)(4), 1208.13(c)(4).

REPLY IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

3

1   government, including immigration judges, to "provide new bond hearings to

2   individuals who are currently detained on bonds that were set pursuant to [pre-

3   injunction] procedures."). Such a suggestion also defies Defendants' practice in this

4   case, as Defendants have issued guidance requiring the re-screening of certain class

5   members. *See* 508-2 at 2 (providing guidance issued by Defendant USCIS requiring

6   re-screening for credible fear of certain "retrospective" cases, which included "cases

7   decided between July 16, 2019 and March 5, 2020").[3]

8        The preliminary injunction states that Defendants "are hereby **ENJOINED**

9   from applying the Asylum Ban to members of the aforementioned provisionally

10   certified class." Dkt. 330 at 36. The plain meaning of the order is that Defendants

11   are enjoined from allowing the Asylum Ban to affect the cases of class members. If

12   the plain language were not clear enough, any dictionary confirms that "apply"

13   means "to put into operation or effect." *Apply*, Merriam-Webster.com,

14   https://www.merriam-webster.com/dictionary/apply (last accessed Aug. 6, 2020).

15        Defendants assert that they are enjoined only from applying the Asylum Ban

16   in cases going forward. *See* Opp'n at 18-22. That is wrong. The injunction is not

17   limited to prospective relief. If that were true, then the Court would not have needed

18   to include the second clause of the injunction, ordering Defendants to "return to the

19   pre-Asylum Ban practices for processing the asylum applications of members of the

20   certified class," Dkt. 508-2 at 8, because the two clauses would have been

21

---

22   [3] Defendants' reliance on *Harper v. Va. Dept. of Taxation*, 509 U.S. 86 (1993) and

23   *Teague v. Lane*, 489 U.S. 288 (1989) to support their argument that the injunction
may not be applied retroactively is misplaced. *Teague* asserts the retroactivity

24   standard for criminal cases, 489 U.S. at 316, which *Harper* confirms is distinct from
the standard for civil cases. *Harper*, 509 U.S. at 96-97. Moreover, Defendants'

25   quotation from *Harper* leaves out the relevant end of the Supreme Court's finding:
"When this Court applies a rule of federal law to the parties before it, that rule is the

26   controlling interpretation of federal law and must be given full retroactive effect in
all cases still open on direct review *and as to all events, regardless of whether such*

27   *events predate or postdate our announcement of the rule.*" *Id.* at 97. *Harper* thus
supports a finding that when the preliminary injunction is in effect, it must be given

28   full retroactive effect in cases that improperly applied the Asylum Ban to class
members—i.e., events—prior to the Ninth Circuit's lifting of the stay.

REPLY IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

1    synonymous. Each day that a class member is denied meaningful access to the

2    asylum process solely because their claim was adjudicated in January 2020 and not

3    March 2020, is a continuing instance of the government "applying" the Asylum Ban

4    to class members. This is true whether the class member is detained with a final

5    order of removal, not detained with an order granting withholding of removal, or

6    otherwise unjustly deprived of asylum.

7    **B. EOIR Is Bound By the Preliminary Injunction**

8        EOIR is bound by this Court's injunction because its conceded compliance

9    efforts demonstrate that EOIR is an entity that is "in active concert or participation,"

10    Fed. R. Civ. P. 65(d)(2), with Defendants to implement the injunction. *See* Dkt. 508-

11    4 at 3-4 (detailing EOIR's efforts to comply with the injunction). Defendants admit

12    as much, arguing that one of the limited ways Defendants believe the Asylum Ban

13    can be applied is by immigration judges. *See* Opp'n at 18 ("[T]he [Asylum Ban] can

14    be 'applied'. . . during full removal proceedings before immigration judges, and

15    during the appeal of an immigration judge's decision to the BIA."). Again, this begs

16    an obvious question: how can Defendants simultaneously argue that EOIR is not

17    bound by the injunction and attempt to take credit for EOIR's bungled efforts to

18    comply with the injunction?

19        Defendants have no consistent answer to this question. Before the Ninth

20    Circuit, Defendants not only conceded the applicability of the injunction to EOIR,

21    but relied upon this relationship to argue that the injunction imposed a burden

22    sufficient to justify a stay. Dkt. 494-7 at 47-48. Now, in front of this Court, they

23    argue that EOIR never had a duty to comply with the injunction to begin with. *See*

24    Opp'n at 28. Defendants' facile and outcome-driven interpretation of the preliminary

25    injunction is precisely why clarification is needed.

26        Defendants' shifting position becomes more absurd when it is applied to

27    individual immigration proceedings. For instance, Defendants tie themselves in

28    knots trying to explain what is going on with the case of M.T.A. They assert that this

REPLY IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

instance of noncompliance is not a violation of the preliminary injunction, *even though the IJ applied the Asylum Ban to a class member while the injunction was in effect*, because the IJ later ultimately granted a motion to reopen and reconsider the case. Opp'n at 25. That the IJ later reopened M.T.A.'s case does not address the problem that the IJ failed to apply the injunction to M.T.A. in the first place. In fact, in the case of F.S.S., Defendants argue no violation of the injunction occurred even though the IJ *denied* F.S.S.'s *timely* motion to reconsider when the injunction was in effect because the denial is on appeal. *See* Opp'n at 16, 25. In Defendants' telling, EOIR is not bound by the injunction, so it can continue to apply the Asylum Ban to class members' cases if it is so inclined and cannot be held responsible for failures to implement the injunction, even though  EOIR issued guidance instructing immigration judges on how to implement the injunction. It is, at a minimum, disingenuous for Defendants to argue that EOIR has no obligation to implement the injunction after having told the Ninth Circuit that EOIR is responsible for doing so.

In addition, Defendants' argument that EOIR is not bound by the injunction because IJs may exercise lawful discretion in individual adjudications is inapposite. IJs' exercise of discretion, including in granting motions to reopen, is appropriately limited by applicable law and subject to review for abuse of discretion. *See Fajardo v. INS*, 300 F. 3d 1018, 1019, 1022 (9th Cir. 2002). More importantly, Plaintiffs are not asserting that the injunction requires individual judges to exercise their discretion in a particular way. Rather, Plaintiffs are asking the Court to clarify that the injunction covers motions to reopen or reconsider cases where the Asylum Ban was previously applied to class members.[4] Defendants appear to agree with this

---

[4] The All Writs Act (AWA) also provides a separate and independent basis to apply the preliminary injunction to EOIR. *See United States v. N.Y. Tel. Co.*, 434 U.S. 159 (1977). Defendants essentially concede as much, as their only argument regarding the AWA is that the preliminary injunction itself is invalid, a position already rejected by this Court and a motions panel of the Ninth Circuit. *See* Opp'n at 28-29 n.3.

REPLY IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

1   interpretation since they have issued supplemental guidance multiple times

2   following Plaintiffs' identification of instances where an immigration judge denied

3   a class member's motion to reopen—after which the IJ grants reopening or

4   reconsideration *sua sponte*. *See* Defs. Br. at 15-17 (identifying *sua sponte* reopening

5   of the cases of A.N.A., E.T.M., R.N., and M.T.A.).

6         Defendants attempt to resurrect their argument that 8 U.S.C. § 1252(f)(1)

7   prohibits injunctive relief in this case also fails. The Ninth Circuit has held that

8   section 1252(f) "prohibits only injunction of 'the operation of' [8 U.S.C. §§ 1221-

9   32], not injunction of a violation of the statutes." *See, e.g., Rodriguez v. Hayes*, 591

10   F.3d 1105, 1120 (9th Cir. 2010). Here, the injunction enjoins only the application

11   of an interim agency rule—the Asylum Ban—to a discrete group of asylum

12   seekers. It is *Defendants* who have sought to affect how the statute is implemented

13   with their interim rule, not class members seeking to enjoin the unlawful

14   application of that rule—which had not even been implemented at the time they

15   were metered but should have been inspected and processed. The injunction, which

16   simply orders the government to comply with its obligations under the Immigration

17   and Nationality Act (INA) in inspecting and processing class members, is thus

18   beyond the reach of section 1252(f)(1). If enjoining a regulation amounted to

19   rewriting a statute, then no facially unlawful regulatory change related to 8 U.S.C.

20   §§ 1221- 1232 could ever be enjoined.[5]

21         Finally, Defendants' myopic focus on the activities of immigration judges

22   ignores the role that DHS attorneys have in reopening or reconsidering class

23   members' asylum claims. Instead of relying on immigration judges to grant motions

24   to reopen or reconsider filed by class members, Defendants can and should join or

25   independently file such motions for identified class members, rather than opposing

26

27   [5] In any case, the Asylum Ban amends 8 C.F.R. part 208, which comprises the implementing regulations for 8 U.S.C. § 1158—a statute not covered by section

28   1252(f)(1). *See Capital Area Immigrants' Rights Coalition ("CAIR") v. Trump*, No. 19-2117, 2020 WL 3542481, *23 (D.D.C. June 30, 2020).

REPLY IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

such motions, as in the case of M.T.A. *See* Dkt. 494-1 at 12 (explaining how "DHS took affirmative steps to prevent the reopening of a class member's asylum case even though the Asylum Ban had been wrongfully applied to that class member while the preliminary injunction was in effect.").

## C. Defendants Should Bear the Burden of Identifying Potential Class Members.

Defendants argue that they should not be burdened with identifying potential class members because they cannot create a "comprehensive" class list. Opp'n at 29, 30. Defendants made this same "ascertainability" argument in their opposition to the preliminary injunction and before a motions panel of the Ninth Circuit. Dkt. 308 at 29-32; Dkt. 494-7 at 57-58. They lost twice. Dkt. 330 at 26-29 (finding the class ascertainable); *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008-09 (9th Cir. 2020) (finding that "the government's guesses concerning the likely burden of ascertaining class membership lack support in the record"). Undaunted, they attempt to take a third bite at the apple in their opposition brief. Opp'n at 29. But their argument fails for the same reason—this is not a Rule 23(b)(3) class, nor is this a motion for reconsideration of the preliminary injunction order. Defendants have been ordered to cease applying the Asylum Ban to class members. Defendants must do so.

More to the point, the perfect should not be the enemy of the good. The goal should be for Defendants to identify *potential* class members, not all actual class members. Class members will still be required to make the requisite showing of eligibility for relief. But Defendants have in their custody vital information regarding potential class membership, to which Plaintiffs have no access. *See, e.g.*, Dkt. 508-3 ¶ 10 ("USCIS is able to search the free-text 'Decision Notes' field for notations indicating potential *Al Otro Lado* class membership, including for decisions made between December 20, 2019, and March 4, 2020."); Dkt. 508-8 at ¶ 6 ("[I]f an individual claims to be a class member, that information is recorded on both the Form I-213 and recorded in [U.S. Customs and Border Protection's (CBP) Office of

REPLY IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

Field Operations' (OFO)] electronic system."). At best, Plaintiffs must rely on self-reporting by attorneys and individual asylum seekers, which cannot possibly capture the universe of potential class members that Defendants could identify.  Defendants should be required to engage in *reasonable* further class member identification efforts based on the resources at their disposal and in conjunction with the metering lists that they could obtain from their Mexican counterparts. *See* Dkt. 494-6 at 224:10-15, 280:5-285:16. This need not extend to manually combing through every I-213 form, but at a minimum should capture the annotations in OFO's "electronic system of record" of class members who affirmatively identified themselves to OFO, including the twelve annotations already identified. *See* Dkt. 508-8 at ⁋ 6. In characterizing their burden as undue, Defendants ignore that their efforts can be limited based on information in Defendants' custody regarding when CBP inspected class members at various ports in comparison to when those same class members put their names on waitlists. For example, if by a certain date in fall 2019 CBP officers at the San Ysidro port of entry were processing asylum seekers who put their names on a Tijuana-based waitlist after July 16, 2019, then CBP would only need to review claims prior to that date.. Therefore, the universe of claims to be reviewed is significantly smaller than Defendants suggest.

## III.    CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for clarification of the preliminary injunction and clarify that:

- The government is required to reopen or reconsider past determinations that potential class members were ineligible for asylum based on the Asylum Ban, regardless of the stage of removal proceedings such potential class members are in;

- EOIR is bound by the terms of the preliminary injunction;

- Defendants must make all reasonable efforts to identify class members; and

- Defendants must inform all identified class members, including those

9

1    already removed from the United States, of their potential class membership

2    and the existence and import of the preliminary injunction.

3    Dated: August 10, 2020

MAYER BROWN LLP
4        Matthew H. Marmolejo
     Ori Lev
5        Stephen M. Medlock

6    SOUTHERN POVERTY LAW
7    CENTER
     Melissa Crow
8        Sarah Rich
9        Rebecca Cassler

10   CENTER FOR CONSTITUTIONAL
11   RIGHTS
     Baher Azmy
12       Ghita Schwarz
     Angelo Guisado
13

14   AMERICAN IMMIGRATION
     COUNCIL
15       Karolina Walters

16

17   By: */s/ Stephen M. Medlock*
     Stephen M. Medlock

18
     *Attorneys for Plaintiffs*
19

20

21

22

23

24

25

26

27

28

REPLY IN SUPP. OF MOT. FOR
CLARIFICATION OF THE PRELIM. INJ.

1

**CERTIFICATE OF SERVICE**

2        I certify that I caused a copy of the foregoing document to be served on all

3   counsel via the Court's CM/ECF system.

4   Dated:  August 10, 2020             MAYER BROWN LLP

5

6                              By _/s/ Stephen M. Medlock_

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28