ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorneys
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
(San Diego)**

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | Hon. Karen S. Crawford |
| v. | **GOVERNMENT EXHIBIT 1**<br>**Declaration of Joseph Draganac** |
| Chad F. WOLF, Acting Secretary of Homeland Security, in his official capacity, *et al.*, | |
| *Defendants* | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Al Otro Lado, Inc., *et al.*, *Plaintiffs,* | ) ) ) ) | |
| v. | ) ) | No. 3:17-cv-02366-BAS-KSC |
| Chad Wolf, *et al.*, *Defendants.* | ) ) ) ) | |

DECLARATION OF JOSEPH DRAGANAC

I, Joseph Draganac, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records, and reasonably relied upon in the course of my employment, hereby declare as follows relating to the above-captioned matter.

1. I am currently the Deputy Executive Director, Operations, Office of Field Operations (OFO), U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS). I have been employed in this role since October 2017. I began my career in April 2000. During my 20 years of federal service, I have held various leadership positions, including Assistant Port Director at the Port of Buffalo and Deputy Director of the Field Operations Academy. In my current position, I oversee more than 24,000 employees, with operations at 20 major field offices, 328 POEs, and 16 Preclearance locations. In my current role, I am responsible for reinforcing the frontline by supporting Field and Executive leaders with critical information, guidance, and expertise.

1

2. I make this declaration to support CBP's assertion of the deliberative process privilege over thirty-five documents that I understand have already been produced to Plaintiffs without sufficient protection for privileged communications, which the government is now seeking to claw back and withhold in their entirety. I also understand that Plaintiffs are challenging CBP's assertion of privilege over these documents.

3. Specifically, the documents at issue that CBP intends to claw back are: (1) various versions of a May 24, 2018 internal CBP email chain with the subject line "Info Needed by 1600" (AOL-DEF-00095574, AOL-DEF-00090887, AOL-DEF-00090901, AOL-DEF-00377294, AOL-DEF-00095562, AOL-DEF-00095578, AOL-DEF-00095582, AOL-DEF-00095816, AOL-DEF-01037128, AOL-DEF-00276327, AOL-DEF-00902179, AOL-DEF-01037139, AOL-DEF-00095827, AOL-DEF-00902188, AOL-DEF-01037131, AOL-DEF-00095832, AOL-DEF-00902186, AOL-DEF-01037134, AOL-DEF-00224218, AOL-DEF-00288076, AOL-DEF-00288078, AOL-DEF-00224243, AOL-DEF-00351591, AOL-DEF-00074316, AOL-DEF-00371167, AOL-DEF-00371170, AOL-DEF-00790693, AOL-DEF-01269953, AOL-DEF-01269954, AOL-DEF-01269961, AOL-DEF-00908907, AOL-DEF-00908910 and AOL-DEF-01037137); and (2) two versions of a May 24, 2018 email chain between individuals at CBP and DHS with the subject line "Today's Meeting – A Few Items" (AOL-DEF-00288011 and AOL-DEF-00288013).

4. I hereby formally assert the deliberative process privilege, on behalf of CBP, as to each of the thirty-five documents discussed herein. This assertion is based on my personal consideration and review of the documents. I will explain the deliberative nature of each document for which Plaintiffs are challenging the assertion of privilege, as well as the harm that would result from the disclosure of this privileged information.

*Email Chain "Info Needed by 1600"*

5. The first set of documents over which I am asserting the deliberative process privilege consists of email chains with the subject line "FW: Info needed by 1600", dated May 24, 2018 (AOL-DEF-00095574, AOL-DEF-00090887, AOL-DEF-00090901, AOL-DEF-00377294, AOL-DEF-00095562, AOL-DEF-00095578, AOL-DEF-00095582, AOL-DEF-00095816, AOL-DEF-00276327, AOL-DEF-00095827, AOL-DEF-00095832, AOL-DEF-00224218, AOL-DEF-00288076, AOL-DEF-00288078, AOL-DEF-00224243, AOL-DEF-00351591, AOL-DEF-00074316, AOL-DEF-00371167, AOL-DEF-00371170, AOL-DEF-00790693, AOL-DEF-01269953, AOL-DEF-01269954, AOL-DEF-01269961, AOL-DEF-00902179, AOL-DEF-00902186, AOL-DEF-00902188, AOL-DEF-00908907, AOL-DEF-00908910, AOL-DEF-01037128, AOL-DEF-01037131, AOL-DEF-01037134, AOL-DEF-01037137, AOL-DEF-01037139).

6. This set of documents consists of various email chains between OFO's headquarters and the Directors of Field Operations (DFOs) along the southwest border gathering specific information from the field in response to an inquiry from the DHS Secretary. This request for information was sent out in advance of a meeting with the Secretary regarding a *proposal* related to the implementation of queue management. The emails contain requests for certain factual information and estimates, as well as the substantive responses to the requests, which were compiled and presented to CBP and DHS leadership for the purpose of informing future policy decisions related to the implementation of queue management. Therefore, the request, and the related discussions, are part and parcel to the internal CBP and DHS decision-making process. The Secretary's request, by its very nature, served as a prompt for deliberative discussions within CBP, for purposes of informing further discussions relating to non-

final, potential policy decisions. These emails contain relevant facts, detailed assessments of those facts, and opinions for CBP leadership to take into consideration and evaluate as part of the process for advising senior DHS decision-makers on the implementation of potential policy decisions. The email chains consist of information that DHS specifically requested from CBP in order to assess the strengths and weaknesses of certain policy decisions related to the implementation of queue management. The emails also contain the relevant information that OFO field leaders deemed important to share with CBP and DHS decision-makers regarding the operational considerations, estimates, and alternatives necessary to consider in making policy decisions.

7. The various email chains stemming from the request for information therefore reveal the process by which both CBP and DHS engaged in its decision-making processes. The internal dialogue among the individuals involved in this email exchange reflect an open exchange of information, in which OFO personnel, based on their operational experience and knowledge of facts on the ground, provided assessments and opinions to CBP and DHS leadership, at the request of DHS leadership, to be used in considering operational challenges and vulnerabilities in the potential implementation of queue management. This information was compiled at the request of senior decision-makers within CBP and DHS, in order to make a well-informed policy decision.

*Email Chain "Today's Meeting – a Few Items"*

8. The second set of documents that are subject to the deliberative process privilege consists of email chains with the subject line "Today's Meeting – A few items", dated May 24, 2018 (AOL-DEF-00288011 and AOL-DEF-00288013). These emails contain internal discussions between various DHS and CBP leaders relating to a meeting held on May 24,

4

2018, to discuss potential policy options related to queue management. The email chain, like the email chain discussed above, contains factual assessments requested by the DHS Secretary and information about the potential operational consequences of certain policy decisions under discussion. The information was compiled and exchanged for the purpose of informing the decision-making process with respect to the potential implementation of the Secretary's proposed course of action. At the time of this email exchange, the proposed course of action had not been implemented and the assessments and opinions exchanged therein were deliberative in nature. The email also contains a substantive discussion of non-final, proposed revisions to be made to a memorandum from the DHS Secretary. Therefore, this set of documents each contains internal deliberations and back-and-forth discussions regarding potential future agency actions that, if disclosed, would reveal the agency's internal deliberative decision-making process.

*Harms of Disclosure*

9. Each of the documents discussed in this declaration were prepared to inform agency decisions or were an integral part of agency deliberations, and reflect analyses undertaken as part of that decision-making process. The various emails, and their accompanying attachments, reflect consideration of *proposed* non-final agency activities, containing communications among agency leadership and recommendations and suggestions from policy advisors. These communications include, but are not limited to, deliberations, evaluations, analyses, and comments regarding pre-decisional policy actions and options for leadership's consideration. Moreover, these documents reflect the give-and-take discussions which precede any public position of the agency. Release of this information

and internal agency deliberations would negatively impact the decision-making process, as it would impede open and frank discussions in the deliberative process.

10. All of the information communicated through these documents is critical to ensuring that DHS and CBP leadership are able to make the most effective policy decisions. When making such decisions, it is of particular importance that leadership at various levels within the agency and department receive detailed, specific, and unfiltered information and assessments regarding the implications of various potential policy options. Such a process allows leaders to consider all appropriate facts and alternatives and to come to a reasoned, well-informed decision that best serves the needs of the agency and department. As part of this process, agency personnel must feel free to propose, discuss, and assess all potential policy options in connection with the guidance, even those that may present legal, operational, or policy risks. Personnel must also feel free to provide decision-makers with all relevant facts, assessments, and opinions regarding potential policy options, including, in particular, facts or opinions that reveal potential or anticipated vulnerabilities, challenges, or benefits of the options. In other words, it is important that decision-makers receive *all* relevant input from *all* relevant individuals within the agency.

11. However, should these pre-decisional deliberations, including the ideas considered but not ultimately accepted be disclosed outside of the government, it would lead to undue public scrutiny of the process, which would severely stifle individuals' willingness to fully participate in that process. For example, if, during the process of considering whether to implement Policy A, the agency also considered Policies B, C, and D, disclosure of those alternative proposals would be likely to place additional scrutiny on the ultimate decision to implement Policy A (e.g., questions regarding the rationale for Policy A versus Policy

B). Similarly, if, during the process of considering whether to implement Policy A, the decision-maker specifically asked agency employees to provide information about the vulnerabilities of policy A, in order to inform the decision-making process, disclosure of such information would be likely to lead to additional scrutiny regarding the ultimate policy implementation. Disclosure of such pre-decisional deliberations in this manner would lead to a chilling effect on agency personnel's willingness to provide frank and open communications in the future, as they may feel that their own opinions were open to public scrutiny. Such a chilling effect would significantly harm the ability of CBP and DHS to propose, consider, and discuss various policy changes in the future.

12. I am aware that in this litigation the parties have entered into a Protective Order, ECF No. 277, and I have reviewed the terms of this stipulated Protective Order. The existence of this Protective Order does not change my assessment of the importance of shielding these internal, pre-decisional agency deliberations from disclosure. Even disclosure under a protective order would not mitigate the chilling effect and detrimental consequences that would result from these documents being disclosed for the purposes of this litigation.

13. I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 17 day of August, 2020.

Joseph Draganac
Deputy Executive Director, Operations
Office of Field Operations
U.S. Customs and Border Protection