MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:   +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*,<br><br>                     Plaintiffs,<br><br>      v.<br><br>Chad F. Wolf,[1] *et al.*,<br><br>                     Defendants. | Case No.:  17-cv-02366-BAS-KSC<br><br>**JOINT MOTION FOR DETERMINATION OF MAY 2020 CLAWBACK DISPUTE**<br><br><br>***DECLARATIONS OF STEPHEN M. MEDLOCK AND ALEXANDER J. HALASKA FILED CONCURRENTLY*** |

---

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

The parties submit this joint motion for purposes of deciding the propriety of certain of Defendants' claims of deliberative-process privilege. This motion addresses a claw back notice was served on May 29, 2020 (the "May Clawback"). Plaintiffs disputed several of the privilege claims. The parties have met, conferred, and narrowed their disputes to 34 documents, or portions thereof, which are listed below and will be lodged with this Court for *in camera* review, highlighted to identify the material over which Defendants are asserting privilege.

| Documents | Bates Range | Defendants' Deliberative Process Privilege ("DPP") Assertions |
|---|---|---|
| 1 | AOL-DEF-00095574 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| 2 | AOL-DEF-00090887 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| 3 | AOL-DEF-00090901 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| 4 | AOL-DEF-00377294 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |

JOINT MOTION FOR DETERMINATION OF
DISCOVERY DISPUTE

| 5 | AOL-DEF-00095562 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| 6 | AOL-DEF-00095578 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| 7 | AOL-DEF-00095582 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| 8 | AOL-DEF-00095816 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| 9 | AOL-DEF-00276327 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| 10 | AOL-DEF-00095827 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations |

JOINT MOTION FOR DETERMINATION OF
DISCOVERY DISPUTE

| | | | |
|---|---|---|---|
| | | | for policymaking. |
| **11** | | AOL-DEF-00095832 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| **12** | | AOL-DEF-00224218 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| **13** | | AOL-DEF-00288076 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| **14** | | AOL-DEF-00288078 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| **15** | | AOL-DEF-00224243 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |

JOINT MOTION FOR DETERMINATION OF
DISCOVERY DISPUTE

| 16 | AOL-DEF-00351591 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmaker's predecisional considerations for policymaking. |
| 17 | AOL-DEF-00074316 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| 18 | AOL-DEF-00371167 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| 19 | AOL-DEF-00371170 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| 20 | AOL-DEF-00790693 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| 21 | AOL-DEF-01269953 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations |

4

JOINT MOTION FOR DETERMINATION OF
DISCOVERY DISPUTE

| | | for policymaking. |
|---|---|---|
| **22** | AOL-DEF-01269954 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| **23** | AOL-DEF-01269961 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| **24** | AOL-DEF-00902186 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| **25** | AOL-DEF-00902179 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| **26** | AOL-DEF-00902188 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| **27** | AOL-DEF-00908907 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies |

JOINT MOTION FOR DETERMINATION OF
DISCOVERY DISPUTE

| | | the decisionmakers' predecisional considerations for policymaking. |
|---|---|---|
| **28** | AOL-DEF-00908910 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| **29** | AOL-DEF-01037128 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| **30** | AOL-DEF-01037131 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| **31** | AOL-DEF-01037134 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| **32** | AOL-DEF-01037137 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
| **33** | AOL-DEF-01037139 | DPP: entire document; email chain gathering, presenting, and revising information and estimates in response to request from DHS Secretary for purposes of informing future policy decisions relating to implementation of queue management, |

JOINT MOTION FOR DETERMINATION OF
DISCOVERY DISPUTE

| | | which reflects internal deliberations and identifies the decisionmakers' predecisional considerations for policymaking. |
|---|---|---|
| **34** | AOL-DEF-00288011 | DPP: entire document; substantive discussion of non-final proposed changes and edits to DHS Secretary's queue management memo and information provided for purposes of informing potential decisionmaking regarding implementation of queue management. |
| **35**[2] | AOL-DEF-00288013 | DPP: entire document; substantive discussion of non-final proposed changes and edits to DHS Secretary's queue management memo and information provided for purposes of informing potential decisionmaking regarding implementation of queue management. |

---

[2] These documents are referred to below as "Doc." They will be lodged with the Court for *in camera* review by Defendants.

JOINT MOTION FOR DETERMINATION OF
DISCOVERY DISPUTE

## **DEFENDANTS' ARGUMENT**

### I.    INTRODUCTION

Plaintiffs are challenging Defendants' assertion of deliberative process privilege over several related email chains that pertain to the government's high-level deliberative processes with respect to queue management. There is no question—and Plaintiffs do not dispute—that the material at issue is protected by the deliberative process privilege. The emails in question predate the decision to issue the June 5, 2018 Prioritization-Based Queue Management Memorandum and were prepared to assist the decisionmaker in arriving at a final decision. *Sierra Club, Inc. v. U.S. Fish & Wildlife Serv.*, 925 F.3d 1000, 1012 (9th Cir. 2019); *see also id.* at 1014 (holding that a document created by a final decisionmaker was not predecisional because it represented the final view of the agency). They are also deliberative, and their disclosure "would expose an agency's decisionmaking process in such a way to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its function." *Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002). Nor should the privilege yield in this case. There is no need to delve into internal, high-level deliberations to assess whether the government's queue management policies are supported by adequate reasoning. Accordingly, these materials should not be disclosed so as to "protect[] and encourage[] the agency's ability to have candid discussions." *California Native Plant Society v. U.S. Envtl. Prot. Agency*, 251 F.R.D. 408,411 (N.D. Cal. 2008).

The privilege should not give way here. Contrary to Plaintiffs' allegation, *see infra* at p. 13, Defendants have not used the privilege as a sword and a shield, as they have not previously relied on the privileged deliberations at issue or similar predecisional deliberations in defense of their case. Rather, the disclosure of the privileged material was inadvertent. Further, contrary to Plaintiffs' allegation, these documents do not reveal or show any "intent" related to the policy at issue. The documents compile certain information requested by the DHS Secretary as part of the decisionmaking process, but do not contain *any* discussion of the reasons or

"intent" underlying the policy decision itself. Lastly, the government maintains that these deliberations—even if they demonstrated "intent"—are irrelevant to the issues to be decided in this case.  At issue here is the objective validity of the government's metering or "queue management" practices, not its "intent" or even the decisionmaking process itself. It is true that Judge Bashant has stated that the validity of the government's justification for metering—operational capacity constraints in light of CBP's multiple statutory mission sets—is at issue. However, the validity of this justification must be examined on its merits by evaluating the facts underlying those capacity constraints, which Defendants have produced in discovery. *See Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 50 (1983) ("It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself."). But even if "intent" were relevant, there is no need for Plaintiffs to delve into predecisional deliberations, particularly those that do not, on their face, contain any discussion of "intent," because the government's interest in ensuring the free flow of policy ideas would be harmed by disclosure of their deliberations.

## II.     THE DOCUMENTS AT ISSUE.

Defendants assert the privilege over the entirety of various email chains relating to the proposed adoption of the June 2018 Prioritization-Based Queue Management Memo, which were inadvertently produced in discovery. The May 24, 2018 email conversation collects information, projections, and estimates, from CBP officials about certain possible effects of the ████████████████████████ ████████████████████, in response to questions from the Secretary of Homeland Security.  Docs. 1-32, *see* Draganac Decl. ¶ 5-7. This information was then relayed through CBP leadership to the DHS Secretary as part of the decisionmaking process surrounding the implementation of the Prioritization-Based Queue Management pilot.  Docs. 33-35, *see* Draganac Decl. ¶ 5-7, 8.

These documents are protected by the deliberative process privilege because they (1) reveal predecisional information collected as part of the decisionmaking

process; and (2) reveal the thought processes and considerations of senior policymakers at CBP and DHS in determining whether to implement prioritization-based queue management as set forth in the later June 5, 2018 Prioritization-Based Queue Management memo. *See* Draganac Decl. ¶¶ 5-7, 8. The questions posed by the Secretary in preparation for the May 24, 2018 meeting reveal the content of internal deliberations. Further, the responses were clearly considered by both CBP and DHS  decision-makers, as opposed to the "Point of Entry Briefing" rejected by the court as not entitled to deliberative process privilege in its May 1 Privilege Order (ECF No. 446).

### III.    THE DELIBERATIVE PROCESS SHOULD NOT YIELD BECAUSE THE HARMS OF DISCLOSURE OUTWEIGH THE NEED FOR THE DOCUMENTS.

For the privilege to yield, the Court must determine whether Plaintiffs' "need for the materials and need for accurate fact-finding override[s] the government's interest in nondisclosure" after considering: (1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. *F.T.C. v. Warner Commc'ns, Inc.*, 742 F.3d 1156, 1161 (9th Cir. 1984). Here, the harms that would result from disclosure of internal deliberations far outweigh Plaintiffs' need for the documents.

Plaintiffs have not met their burden to show that the privilege over these documents should yield. Plaintiffs argue that these emails are "critical" to their case because they reveal that the government's primary motivation was to turn individuals away and that all other considerations were a "pretext." *Infra* at p. 12. Here, the emails at issue hardly constitute "direct evidence" of "pretext," *see infra* at p. 15, but instead reveal an evaluation of potential effects of fully implementing a proposed policy. Without a stronger showing that these emails reveal a pretext,

JOINT MOTION FOR DETERMINATION OF
DISCOVERY DISPUTE

Plaintiffs cannot overcome the deliberative process privilege. *See American Petroleum Tankers Parent, LLC v. U.S.*, 952 F. Supp. 252, 267 (D.D.C. 2013) (upholding the Government's assertion of privilege and rejecting plaintiff's prima facie showing of pretext as insufficient to overcome DPP.).

Even if Plaintiffs' claims of pretext were an appropriate inference to draw from these materials, the government maintains that the "intent" of a particular policy is irrelevant to causes of action that Plaintiffs assert under the APA, the INA, the Due Process Clause, and the international norm of non-refoulement. *See In re Subpoena Duces Tecum Served on Office of Comp. of Currency*, 156 F.3d 1279, 1279 (D.C. Cir. 1998) ("the actual subjective motivation of agency decisionmakers is immaterial as a matter of law – unless there is a showing of bad faith or improper behavior"). Instead, the question is whether "agency action" may be upheld "on the basis articulated by the agency," *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 50 (1983). Thus, the inquiry should be whether the government's use of metering, and its decision to prioritize its mission sets as outlined in the June 2018 memo, is supported by the conditions at each port of entry and by articulable justifications outlined in its final policy memos, and not the perceived subjective motivation of the decisionmaker. That is, the validity of the government's justification may (and must, in an APA case) be examined on its merits by evaluating the facts underlying its capacity constraints, which the government has produced in discovery. Indeed, Plaintiffs' proffered expert report examines and assesses this information. While Defendants disagree with Plaintiffs' conclusions about this evidence, the fact remains that the evidence concerning capacity is sufficient to evaluate the Plaintiffs' claims in this case. Further, there is other available evidence that Plaintiffs claim demonstrate "pretext" or "intent"—including documents that Plaintiffs have attached to their briefing and that the District Court has already

considered. Class Certification Order (ECF No. 513) at 11, 16. Plaintiffs thus cannot show that they need the deliberative documents at all.

And the harms of disclosure to the quality of governmental decisionmaking cannot be understated. Release of internal deliberations would negatively impact future deliberations and would greatly impede on an agency's ability to engage in open and frank discussions. *See* Draganac Decl. ¶ 10 ("Agency personnel must feel free to propose, discuss, and assess all potential policy options in connection with the guidance, even those that may present legal, operational, or policy risks."). The protective order—even the Attorneys' Eyes Only designation—cannot fully protect against these harms. *See* Draganac Decl. ¶¶ 11-12. Indeed, it is this risk of using officials' words against them—regardless of the validity of these inferences—that is precisely the harm against which the deliberative process privilege was meant to protect. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001) (privilege rests on "the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news" and "to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government.").

Plaintiffs do not dispute that these documents are privileged and rather assert falsely that "the Government has no interest in the privacy of [these] communications." *Infra* at p. 15. On the contrary, the disclosure of these documents inevitably chills officials' frank and open communication, compromising future decisionmaking. Draganac Decl. ¶¶ 9-12. Such a chilling effect would significantly harm the ability of CBP and DHS to propose, consider, and discuss various policy changes in the future. *See id.*

//

//

JOINT MOTION FOR DETERMINATION OF
DISCOVERY DISPUTE

# PLAINTIFFS' ARGUMENT

## I.    Introduction

A party cannot use a privilege law as both a shield and sword.  *Oracle Am., Inc. v. Innovative Tech. Distribs., LLC*, 2011 WL 2558925, at *1 (N.D. Cal. 2011).  But, that is exactly what Defendants have done. and continue to do.

This is a case concerning the Defendants' policy of turning back asylum seekers that are in the process of arriving at ports of entry on the U.S.-Mexico border. In their Answer, Defendants "deny that CBP has implemented a 'Turnback Policy' and aver instead that CBP has issued guidance permitting ports of entry . . . to implement metering procedures based on their operational capacities."  Dkt. 283 at ¶ 7.  As Defendants put it in their class certification opposition, turnbacks occurred at ports of entry on the U.S.-Mexico border for "operational purposes," such as a lack of holding capacity, "not to deter [non-citizens] from seeking asylum in the United States." Dkt. 406 at 10.  One of the key documents Defendants have cited in support of this argument is a "prioritization-based queue management" memorandum that was first issued on June 5, 2018.  *See* Dkt. 406-4 at 306.

Defendants would like the Court to accept the justifications in the prioritization-based queue management memo, but are attempting to shield from discovery based on the deliberative process privilege documents showing that they were adopted based on a pretext. Specifically, correspondence concerning the prioritization-based queue management policy shows that U.S. Homeland Security Secretary Kirstjen Nielsen specifically considered ███████████████ ███████████████████████████████████████████████ ███████████████████████, and pressed on with implementing the policy anyway.  Because Defendants have put the prioritization-based queue management memorandum at the heart of their defense, their efforts to assert the deliberative process privilege must fail.  Even if the deliberative process privilege does apply,

JOINT MOTION FOR DETERMINATION OF
DISCOVERY DISPUTE

1    that qualified privilege is overcome by the need for this highly relevant information.

2    **II.      The Prioritization-Based Queue Management Policy Was a Thinly-**

3    **Veiled Effort to Turn Back Asylum Seekers**

4         The documents subject to the May Clawback Notice are critical to this case.

5    In May 2018, DHS began rewriting its guidance on turning back asylum seekers.  In

6    late May 2018, DHS Secretary Nielsen began considering a "prioritization-based

7    queue management" approach that would allow port directors to turnback asylum

8    seekers when they felt that certain amorphous factors warranted it.  During a May

9    24, 2018 meeting concerning the prioritization-based queue management policy,

10   Secretary  Nielsen ███████████████████████████████████████████

11   ████████████████████████████████████████████████████████████

12   ████████████████████████   Doc. 17 at 317.  In response to Secretary Nielsen's

13   question, the Office of Field Operations' (OFO's) San Diego Field Office indicated

14   that ███████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████

16   █████████████████████.  *Id.* at 316.  OFO's El Paso Field Office reported

17   that █████████████████████████████████████████████████   Doc.

18   1 at 575. ████████████████████████████████████████████████

19   ██  Doc. 4. ████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████

22   ██  Doc. 34  at 011. █████████████████████████████████████████

23   ████████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████ *Id.*

25   ████████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████████

27   █████████████████████████████████ *Id.* ████████████████████

28

JOINT MOTION FOR DETERMINATION OF
DISCOVERY DISPUTE

███████████████████████████████████████████ After being briefed about the effects of the policy, Secretary Nielsen implemented it on June 5, 2018. Therefore, the documents that Defendants seek to claw back are powerful evidence that, despite their litigation position, officials at the highest level of the U.S. Department of Homeland Security and U.S. Customs and Border Protection explicitly ████████████████████████████████████████████ ██████████████████████████████████████ before implementing it.

## III.   The Relevance Of The Documents Outweighs Defendants' Qualified Deliberative Process Privilege

"The deliberative process privilege is a qualified privilege that applies to pre-decisional, non-factual, non-public communication occurring within federal agencies." Dkt. 446 at 4 (citations omitted). It shields from discovery communications related to matters of law or policy, with the purpose of protecting governmental decision-making by maintaining the confidentiality of recommendations, advise, and deliberations about the formulation of regulations and policy. *Id.* The Government bears the initial burden of establishing that documents are covered by the privilege. *Id.*.

The deliberative process privilege is not absolute.  Dkt. 446 at 5.  It is a qualified privilege that is to be applied as narrowly as possible.  *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.3d 854, 868 (D.C. Cir. 1980).  Even if the privilege applies, the documents at issue may be discoverable if the plaintiffs' "need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *L.H. v. Schwarzenegger*, 2007 WL 2009807, at *2–3 (E.D. Cal. 2007) (citing *FTC v. Warner Commc'ns., Inc.*, 742 F.2d 1156, 1161 (9th Cir.1984)).  In *Warner*, the Ninth Circuit laid out four factors to be considered when balancing the plaintiffs' need for discovery against the government's privilege claim: (1) the relevance of the evidence sought to the litigation; (2) the availability

JOINT MOTION FOR DETERMINATION OF
DISCOVERY DISPUTE

of comparable evidence from other sources; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. 742 F.2d at 1161.

All four factors favor disclosure the documents here. (1) All of the documents link the Government's policies to an illegal intent to turnback asylum seekers who are in the process of arriving at a port of entry. *See* Dkt. 280 at 60 (a key issue in this case is whether the Government's stated justification for turn backs— "operational capacity constraints" is a pretext); Dkt. 446 at 6. In particular, Documents 1-34 show that DHS Secretary Nielsen explicitly requested and considered how the extent to which the prioritization-based queue management policy would result in turnbacks of asylum seekers. (2) There is no other evidence that directly shows that the prioritization-based queue management memorandum was based on a pretext. Indeed, Defendants steadfastly denied that was the case. For instance, after acknowledging that CBP policy required him to testify fully and accurately, Ex. 1 at 51:12-54:1, and that he has always been honest about the purpose of the metering policy, *id.* at 56:22-57:13, Todd Owen testified that the purpose of the turnback policy "was not . . . to deter migrants from enter the U.S. No, it was not." *Id.* at 70:1-5. Plaintiffs should not have to take Mr. Owen's word for it. (3) The Government is a party to this case and the deliberative process privilege is "inapplicable where the agency's decision-making is itself at issue." Dkt. 446 at 5. (4) The disclosure of the documents at issue here would not hinder Government decision-making—the Government has no interest in the privacy of communications that violate the law and, at any rate, the Protective Order in this case restricts the disclosure of these documents. *See* Dkt. 446 at 6. Thus, even if the deliberative process privilege applied to these documents, all of the *Warner* factors, and this Court's prior analysis of those factors, favor the disclosure of the documents.

Dated: August 18, 2020

ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director

KATHERINE J. SHINNERS
Assistant Director

*/s/ Alexander J. Halaska*
ALEXANDER J. HALASKA
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

MAYER BROWN LLP
   Matthew H. Marmolejo
   Ori Lev
   Stephen M. Medlock

SOUTHERN POVERTY LAW CENTER
   Melissa Crow
   Sarah Rich
   Rebecca Cassler

CENTER FOR CONSTITUTIONAL RIGHTS
   Baher Azmy
   Ghita Schwarz
   Angelo Guisado

AMERICAN IMMIGRATION COUNCIL

JOINT MOTION FOR DETERMINATION OF
DISCOVERY DISPUTE

1                   Karolina Walters

2

3             By: */s/ Stephen M. Medlock*
                 Stephen M. Medlock

4               *Attorneys for Plaintiffs*

JOINT MOTION FOR DETERMINATION OF
DISCOVERY DISPUTE

1

**CERTIFICATE OF SERVICE**

2          I certify that I caused a copy of the foregoing document to be served on all

3    counsel via the Court's CM/ECF system.

4    Dated:  August 18, 2020                    MAYER BROWN LLP

5

6                                              By  */s/ Stephen M. Medlock*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28