ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorneys
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
(San Diego)**

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> Chad F. WOLF, Acting Secretary of Homeland Security, in his official capacity, *et al.*, <br><br> *Defendants* | Case No. 3:17-cv-02366-BAS-KSC <br><br> Hon. Karen S. Crawford <br><br> **GOVERNMENT EXHIBIT 1** <br> **Declaration of Matthew S. Davies** |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*,<br>    *Plaintiffs,*<br><br>v.<br><br>Chad Wolf, *et al.*,<br>    *Defendants.* | No. 3:17-cv-02366-BAS-KSC |

## DECLARATION OF MATTHEW S. DAVIES

I, Matthew S. Davies, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records, and reasonably relied upon in the course of my employment, hereby declare as follows relating to the above-captioned matter.

1.  I am currently the Deputy Executive Director, Admissibility and Passenger Programs, Office of Field Operations (OFO), U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS). I have been employed in this role since January 2020. I began my career in 2002. During my 18 years of federal service, I have held various leadership positions, including Director for the Electronic System for Travel Authorization Program Management Office in Washington, D.C., Area Port Director in Chicago, Illinois, Acting Executive Director for Acquisition Policy and Oversight in Washington, D.C., Port Director in Dublin, Ireland, and Acting Division Chief-Mission Support at San Diego Border Patrol Sector. In my current position, I oversee more than 170 employees across nine Director-level program offices. In my role, I have

1

2. responsibility for overseeing and coordinating OFO programs and policy related to the admission and processing of international visitors and travelers to the United States.

2. I make this declaration to support CBP's assertion of the deliberative process privilege and attorney-client privilege over documents (or portions of documents) that I understand have already been produced to Plaintiffs without sufficient protection for privileged communications, which the government is now seeking to claw back and withhold or reproduce with updated redactions. I also understand that Plaintiffs are challenging CBP's assertion of privilege over these documents.

3. Specifically, the documents at issue that CBP intends to claw back are: (1) four versions of a July 13, 2017 internal CBP email chain (AOL-DEF-00094030, AOL-DEF-00069025, AOL-DEF-00094022 and AOL-DEF-00069033);[1] (2) four identical versions of the first attachment to the July 13, 2017 email chain (AOL-DEF- 00094032, AOL-DEF-00094024, AOL-DEF-00069027, and AOL-DEF-00069035); (3) four identical versions of the second attachment to the July 13, 2017 email chain (AOL-DEF-00094034, AOL-DEF-00094026, AOL-DEF-0069029, and AOL-DEF-0069037); (4) four identical versions of the third attachment to the July 13, 2017 email chain (AOL-DEF-00094036, AOL-DEF-00094028, AOL-DEF-00069031, and AOL-DEF-00069039); and (5) an April 25, 2018 internal CBP email chain (AOL-DEF-00665934).

4. I hereby formally assert the deliberative process privilege, on behalf of CBP, as to each of the seventeen documents discussed herein. This assertion is based on my personal consideration and review of the documents. I will explain the deliberative nature of each

---

[1] For clarity, each of these documents are versions of the July 13, 2017 internal CBP email chain. AOL-DEF-00094030 and AOL-DEF-00069025 are full, identical versions of the email chain, whereas AOL-DEF-00094022 and AOL-DEF-00069033 are identical versions which contain only the first two emails of the July 13, 2017 email chain.

2

        document for which Plaintiffs are challenging the assertion of privilege, as well as the harm that would result from the disclosure of this privileged information.

5.     Additionally, I am providing information to support CBP's assertion of the attorney-client privilege over the following documents: (1) four versions of a July 13, 2017 internal CBP email chain (AOL-DEF-00094030, AOL-DEF-00069025, AOL-DEF-00094022 and AOL-DEF-00069033); (2) four versions of the second attachment to the July 13, 2017 email chain (AOL-DEF-00094034, AOL-DEF-00094026, AOL-DEF-0069029, and AOL-DEF-0069037); (3) four versions of the third attachment to the July 13, 2017 email chain (AOL-DEF-00094036, AOL-DEF-00094028, AOL-DEF-00069031, and AOL-DEF-00069039); and (4) portions of an April 25, 2018 internal CBP email chain (AOL-DEF-00665934). I will explain the attorney-client nature of each document for which Plaintiffs are challenging the assertion of privilege, as well as the harm that would result from the disclosure of this privileged information.

***Email Chain Regarding Human Rights Watch Inquiry and Meeting***

6.     The first set of documents (AOL-DEF-00094030, AOL-DEF-00069025, AOL-DEF-00094022, and AOL-DEF-00069033) are two versions of the same email chain, dated July 13, 2017. I am asserting both the deliberative process privilege and the attorney-client privilege over these emails. The body of each email consists of a draft response to an inquiry from an outside entity, which, at the time the email was sent, was undergoing review by CBP's Office of Chief Counsel. This draft response in the email reflects an internal, staff-level draft being provided to more senior individuals within OFO for review and, potentially, final release. Thus, this response does not reflect a final agency response to the outside entity. These emails also reflect, as noted above, agency counsel's involvement in reviewing the draft response, and thus reveals the advice that

OFO sought from CBP counsel. In addition to a discussion of the advice OFO sought from counsel, the last emails on the chain, as reflected in AOL-DEF-00094030 and AOL-DEF-00069025, explain counsel's own participation in related discussions with OFO and CBP leadership on topics related to the draft response contained in the email. Attorneys from the Office of Chief Counsel are also copied on every email within the chain.

7. The second set of documents (AOL-DEF- 00094032, AOL-DEF-00094024, AOL-DEF-00069027, and AOL-DEF-00069035; AOL-DEF-00094034, AOL-DEF-00094026, AOL-DEF-0069029, and AOL-DEF-0069037; AOL-DEF-00094036, AOL-DEF-00094028, AOL-DEF-00069031, and AOL-DEF-00069039) are the attachments that accompanied each of the July 13, 2017 emails (AOL-DEF-00094030, AOL-DEF-00069025, AOL-DEF-00094022, AOL-DEF-00069033). I am asserting the deliberative process privilege over AOL-DEF-00094032, AOL-DEF-00094024, AOL-DEF-00069027, and AOL-DEF-00069035. I am asserting both the deliberative process privilege and the attorney-client privilege over AOL-DEF-00094034, AOL-DEF-00094026, AOL-DEF-0069029, and AOL-DEF-0069037; and AOL-DEF-00094036, AOL-DEF-00094028, AOL-DEF-00069031, and AOL-DEF-00069039.

8. The first set of attachments, AOL-DEF-00094032, AOL-DEF-00094024, AOL-DEF-00069027, and AOL-DEF-00069035, consists of a briefing memorandum entitled "Meeting with Human Rights Watch". This briefing memo was attached to the July 13, 2017 email containing a draft response to the inquiry from an outside entity, and was circulated for the specific purpose of assisting OFO in drafting and reviewing the response to the outside entity, and to provide context for additional discussions with OFO and CBP leadership. Therefore, the briefing memorandum was circulated as a part of the

agency's process for preparing the response and for additional follow-up discussions with OFO and CBP leadership.

9. The second set of attachments, AOL-DEF-00094034, AOL-DEF-00094026, AOL-DEF-0069029, and AOL-DEF-0069037, consists of a non-final, pre-decisional draft memorandum entitled "Metering at the Southwest Border POEs". Counsel was involved in drafting this guidance, including providing substantive edits and advice. This document was attached to the July 13, 2017 email chain as part of internal discussions regarding the request from the outside entity and related discussions with OFO leadership, which included advice from counsel. This proposed guidance was not finalized, approved for dissemination or implemented at the time it was attached to the email.

10. The third set of attachments, AOL-DEF-00094036, AOL-DEF-00094028, AOL-DEF-00069031, and AOL-DEF-00069039, consists of a draft response to an outside entity that, at the time it was circulated, was under review by CBP, including by CBP counsel. This draft response was also attached to the July 13, 2017 email chain as part of internal discussions regarding the request from the outside entity and related discussions with OFO leadership, which included advice from counsel. This draft response was neither finalized nor approved at the time it was attached to the email.

11. As discussed above, all of these documents are deliberative and pre-decisional, as they reflect the Agency's ongoing decision-making process. Specifically, the body of the July 13, 2017 email, as well as two of its attachments, contain non-final, draft language still under review and discussion by OFO and CBP as part of an ongoing process of considering the most appropriate response to an outside entity. Additionally, the entire email chain and its attachments reveals the process by which CBP evaluated possible

responses to an inquiry received from an outside entity, the specific language being considered, as well as the context in which this response was being prepared. Accordingly, these documents should be protected from disclosure under the deliberative process privilege.

12. Additionally, AOL-DEF-00094030, AOL-DEF-00069025, AOL-DEF-00094022, and AOL-DEF-00069033; AOL-DEF-00094034, AOL-DEF-00094026, AOL-DEF-0069029, and AOL-DEF-0069037; and AOL-DEF-00094036, AOL-DEF-00094028, AOL-DEF-00069031, and AOL-DEF-00069039 contain privileged communications between OFO and CBP's Office of Chief Counsel. Specifically, the documents reveal the legal advice rendered by agency counsel to OFO, through counsel's review of particular documents and draft language. Disclosure of these communications would be detrimental to the agency decision-making and planning process, as it would reveal the specific role that counsel plays in such process, including the specific topics on which counsel was consulted and the reason for such consultation. Additionally, disclosure would also harm OFO's future communications with the Office of Chief Counsel. Requiring the disclosure of these documents would significantly impair the protections afforded by the attorney-client relationship and deter full and frank communications between attorneys and their clients, in general. Accordingly, these documents should not be disclosed, as they are protected by attorney-client privilege.

***Email Chain "RE: Document1"***

13. I am asserting the attorney-client privilege over AOL-DEF-00665934, as this document reflects a back-and-forth discussion between agency counsel and individuals within OFO for the purpose of relaying and receiving legal advice. Additionally, I am asserting

6

deliberative process privilege over the document, as it contains pre-decisional internal agency discussions relating to non-final, developing, and draft guidance.

14. AOL-DEF-00665934 is an email chain, with emails that range from April 23, 2018 to April 25, 2018, with the subject line "RE: Document1." This email chain contains internal CBP communications between CBP's Office of Chief Counsel and individuals within OFO regarding the drafting of agency guidance related to metering, including the draft text of that guidance and OFO's leadership's deliberations related to the issuance of the guidance. The emails within this chain contain not only requests for legal advice and reveal the pre-decisional deliberations of OFO leadership, but also contain the actual legal advice rendered by counsel. The chain reflects agency counsel's edits to the draft guidance, mental impressions, and legal advice conveyed to OFO leadership. Requiring the disclosure of this document would significantly impair the protections afforded by the attorney-client relationship and deter full and frank communications between CBP's Office of Chief Counsel and its client, OFO.

15. On its face, this email chain reflects pre-decisional, draft content that is deliberative in nature. The chain contains discussions related to *draft* metering guidance and reveals the opinions and recommendations of individuals in both CBP's Office of Chief Counsel and OFO regarding the draft, proposed language. Additionally, as described above, the email reveals the content of internal deliberations by individuals within OFO leadership. As a result, these emails show the process by which CBP – to include agency counsel – evaluates and assesses potential guidance, as well as the nature of the discussions related to any draft policy documents. Disclosure of this document would significantly harm the agency's decision-making process, as explained in more detail below.

7

*Harms of Disclosure*

16. Each of the documents discussed in this declaration were prepared to inform agency decisions and reflect analyses undertaken as part of that decision-making process. The various emails, and their accompanying attachments, reflect consideration of *proposed* non-final documents and policies, containing the recommendations and opinions of individuals within the agency rendered as part of the decision-making process. These communications include, but are not limited to, deliberations, evaluations, analysis, and opinions regarding pre-decisional policy discussions and options for leadership's consideration. Moreover, these documents reflect the give-and-take discussions which precede any public position of the agency. Release of these communications and internal deliberations would reveal agency deliberations and negatively impact the decision-making process, as it would impede open and frank discussions in the deliberative process.

17. Specifically, when making policy decisions and decisions regarding the agency's position on a particular policy, is of critical importance that leadership at various levels within the agency receive detailed, specific, and unfiltered information and assessments regarding the implications of various potential policy options or agency positions. Such a process allows leaders to consider all appropriate facts and alternatives and to come to a reasoned, well-informed decision that best serves the needs of the agency. As part of this process, CBP personnel must be free to communicate honestly and openly about all relevant facts, as well as their own opinions, recommendations, and reactions to potential policy or a potential agency position, in order to ensure the agency is able to formulate policies that are sound from a legal and policy perspective, and to ensure that the agency

considers all relevant opinions. In other words, it is important that decision-makers receive all relevant input from all relevant individuals within the agency.

18. However, should these pre-decisional deliberations be disclosed outside of the government, it would lead to undue public scrutiny of the agency's decision-making process, which would severely stifle individuals' willingness to fully participate in that process and harm the integrity of the process. For example, if, during the process of considering the agency's public position on Topic A, the decision-maker specifically asked agency employees to provide several alternatives, along with the relative strengths and weaknesses of these alternatives, in order to inform the decision-making process, disclosure of such information would be likely to lead to additional scrutiny regarding the ultimate policy implementation. Disclosure of such pre-decisional deliberations in this manner would lead to a chilling effect on agency personnel's willingness to provide frank and open communications in the future, as they may feel that their own opinions were open to public scrutiny. Such a chilling effect would severely stifle individuals' willingness to fully participate in that process, which would significantly harm the ability of CBP to propose and discuss guidance in the future.

19. Moreover, some of the documents include communications that are protected by attorney-client privilege. Release of this information would reveal confidential communications between the client and the attorney that were made for the purpose of obtaining or providing legal assistance and would negatively impact the ability to have full and frank discussions with counsel.

20. I am aware that in this litigation the parties have entered into a Protective Order, ECF No. 277, and I have reviewed the terms of this stipulated Protective Order. The existence of this Protective Order does not change my assessment of the importance of shielding these

internal, pre-decisional agency deliberations from disclosure. Even disclosure under a protective order would not mitigate the chilling effect and detrimental consequences that would result from these documents being disclosed for the purposes of this litigation.

21. I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 17TH day of August, 2020.

_____
Matthew S. Davies
Deputy Executive Director
Admissibility and Passenger Programs
Office of Field Operations
U.S. Customs and Border Protection