|   |   |
|---|---|
| 1 | MAYER BROWN LLP |
| 2 | Matthew H. Marmolejo (CA Bar No. 242964)<br>*mmarmolejo@mayerbrown.com* |
| 3 | 350 S. Grand Avenue<br>25th Floor |
| 4 | Los Angeles, CA 90071-1503<br>Ori Lev (DC Bar No. 452565) |
| 5 | (*pro hac vice*)<br>*olev@mayerbrown.com* |
| 6 | Stephen M. Medlock (VA Bar No. 78819)<br>(*pro hac vice*) |
| 7 | *smedlock@mayerbrown.com*<br>1999 K Street, N.W. |
| 8 | Washington, D.C. 20006<br>Telephone: +1.202.263.3000 |
|   | Facsimile: +1.202.263.3300 |

MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:  +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
   Melissa Crow (DC Bar No. 453487)
   (*pro hac vice*)
   *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| Al Otro Lado, Inc., *et al.*, | Case No.: 17-cv-02366-BAS-KSC |
|---|---|
| Plaintiffs, | **EXHIBIT 1 TO DECLARATION OF STEPHEN M. MEDLOCK IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF JUNE 2020 CLAWBACK** |
| v. |  |
| Chad F. Wolf,[1] *et al.*, |  |
| Defendants. |  |

---

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
   Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
   *bazmy@ccrjustice.org*
   Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
   *gschwarz@ccrjustice.org*
   Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
   *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
   Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
   *sarah.rich@splcenter.org*
   Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
   *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
   Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
   *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

----------------------------------x

AL OTRO LADO, INC., et al.,       :

          Plaintiffs,           : Case No.:

    vs.                           : 17-cv-02366-BAS-KSC

KEVIN K. MCALEENAN, et al.,       :

          Defendants.           :

----------------------------------x


DEPOSITION MARKED CONFIDENTIAL

DEPOSITION OF TODD OWEN

Washington, D.C.

Friday, December 13, 2019

9:40 a.m.




Job No.: 529549

Pages: 1 - 332

Reported by: Elizabeth Mingione, RPR

Page 2

             Deposition of TODD OWEN, held at the offices of Mayer Brown, LLP, 1999 K Sreet, Northwest, Washington, D.C., commencing at 9:40 a.m., Friday, December 13, 2019, and taken down stenographically by Elizabeth Mingione, Registered Professional Reporter and Notary Public for the Commonwealth of Virginia.

```
 1   A P P E A R A N C E S  O F  C O U N S E L:

 2   ON BEHALF OF PLAINTIFFS:

 3            MAYER BROWN, LLP

 4            Stephen M. Medlock, Esquire

 5            Ori Lev, Esquire

 6            1999 K Street, Northwest

 7            Washington, DC 20006

 8            (202) 263-3000

 9            Smedlock@mayerbrown.com

10

11   ON BEHALF OF DEFENDANTS:

12            U.S. DEPARTMENT OF JUSTICE

13            Katherine J. Shinners, Esquire

14            David White, Esquire

15            Ben Franklin Station

16            PO Box 868

17            Washington, DC 20044

18            (202) 598-8259

19            Katherine.J.Shinner@usdoj.gov

20

21   (Appearances, Continued)

22
```

Page 4

1                A L S O   P R E S E N T

2             Louisa Slocum,  Esquire

3                  Rameez Burney

4    Karolina Walters, American Immigration Council

5                  Kristine King

6        Matthew Fenn (via phone, as indicated)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Page 4

```
                                                          Page 5
 1                       C O N T E N T S

 2                    WITNESS:  TODD OWEN

 3    EXAMINATION BY:                                     PAGE

 4    Mr. Medlock ....................................       9

 5    Ms. Shinners ..................................     312

 6    Mr. Lev .......................................     322

 7

 8                         *    *    *

 9

10                     DEPOSITION EXHIBITS

11                         TODD OWEN

12    NUMBER          DESCRIPTION                         PAGE

13    Exhibit 20   Notice of Deposition ............      19

14    Exhibit 21   Website Printout of Todd Owen

15         Description ............................       49

16    Exhibit 22   U.S. Customs and Border Protection

17         Standard of Conduct, AOL-DEF-00669013 ....     51

18    Exhibit 23   Metering Guidance Memorandum, Date

19         Stamped April 27, 2018 ..................      63

20    Exhibit 24   E-mail from Randy Howe, June 19,

21         2018, AOL-DEF-00088501 ..................      81

22    (Exhibits Continued)
```

Case 3:17-cv-02366-BAS-KSC    Document 524-4    Filed 08/18/20    PageID.35851
Page 9 of 15

Page 6

```
 1   NUMBER           DESCRIPTION                              PAGE

 2   Exhibit 25   E-mail from Robert Hood, August

 3       2, 2017, AOL-DEF-00328857 ................   100

 4   Exhibit 26   E-mail from Todd Owen, May 25,

 5       2016 AOL-DEF-00761338 ...................   104

 6   Exhibit 27   E-mail Chain, Sept. 13, 2016,

 7       AOL-DEF-00762746 ........................   123

 8   Exhibit 28   E-mail Chain from Todd Hoffman,

 9       Sept. 16, 2016, AOL-DEF-00762523 ........   132

10   Exhibit 29   E-mail from Katherine Stark, Sept. 7,

11       2016 AOL-DEF-00761290 ...................   135

12   Exhibit 30   E-mail Chain from Todd Owen, August

13       17, 2016, AOL-DEF-00761340 ..............   142

14   Exhibit 31   E-mail chain, Novemer 11, 2016,

15       AOL-DEF-00272936 ........................   146

16   Exhibit 32   ***   Exhibit is removed ***

17   Exhibit 33   E-mail from Hector Mancha,

18       AOL-DEF-00081089 ........................   162

19   Exhibit 34   E-mail from Beverly Good, Nov. 22,

20       2016, AOL-DEF-00032389 ..................   167

21   Exhibit 35   E-mail from Alberto Flores, November

22       14, 2016, AOL-DEF-00576607 ..............   174
```

```
                                                              Page 7
 1   NUMBER            DESCRIPTION                              PAGE

 2   Exhibit 36      ***  Exhibit is Removed ***

 3   Exhibit 37      ***  Exhibit is Removed ***

 4   Exhibit 38   E-mail from Valerie Boyd, June 5,

 5        2018, AOL-DEF-00273293 .................. 196

 6   Exhibit 39   Homeland Security Memo of June 5,

 7        2018, AOL-DEF-00273294 .................. 199

 8   Exhibit 40   Memo from Kevin McAleenan, August 1,

 9        2018, AOL-DEF-00039620 .................. 213

10   Exhibit 41   Evaluation of Prioritization Queue

11        Management Pilot, AOL-DEF-00039621 ...... 213

12   Exhibit 42 Mark Morgan Memo, CBPALTR0000303 .. 213

13   Exhibit 43   Complaint fof Declaratory and

14        Injunctive Relief ....................... 220

15   Exhibit 44   E-mail Chain Aug. 14, 2017,

16        AOL-DEF-00723886 ........................ 223

17   Exhibit 45   Confidential Al Otro Lado Lawsuit

18        Document, AOL-DEF-00723887 .............. 225

19   Exhibit 46    E-mail from William Haralson,

20        March 15, 2017, NTEU 000132 ............. 229

21   Exhibit 47   Search Results Report and E-mail

22        from Eddie Arias, July 3, 2018 .......... 243
```

```
                                                           Page 8
 1   NUMBER           DESCRIPTION                          PAGE

 2   Exhibit 48    Five-Page Document, Annotations ..   248

 3   Exhibit 49    E-mail from David Atkinson,

 4         March 19, 2019, NTEU-000110 ..............   255

 5   Exhibit 50    Photograph of Mother and Child ...   291

 6   Exhibit 51    Photograph of Bodies in Water ....   292

 7   Exhibit 52    E-mail Chain, March 19, 2019,

 8         AOL-DEF-00269970 ........................   293

 9   Exhibit 53    E-mail Chain, March 19, 2019,

10         AOL-DEF-00270451 ........................   296
```

                  (Exhibits Attached to Transcript,

                   Except for Nos. 32, 36, 37 TBD)

```
                                                               Page 9
 1                       P R O C E E D I N G S

 2    Whereupon,

 3                            TODD OWEN,

 4              having been first duly sworn was

 5              examined and testified as follows:

 6                            -  -  -

 7                     EXAMINATION CONDUCTED

 8        BY MR. MEDLOCK:

 9        Q.    Good morning, sir.

10        A.    Good morning.

11        Q.    Can you please state and spell your name

12    for the record.

13        A.    My name is Todd Owen, T-O-D-D, O-W-E-N.

14        Q.    Have you ever gone by any other names, sir?

15        A.    No.

16        Q.    Are you presently employed?

17        A.    Yes.

18        Q.    Where are you employed?

19        A.    With U.S. Customs and Border Protection,

20    Washington, D.C.

21        Q.    What is your -- if I refer to U.S. Customs

22    and Border Protection as CBP, you'll understand that?
```

Page 73

1  believe the metering had a chilling effect.
2      Q.   You were told that the metering policy had
3  a deterrent effect, weren't you?
4      A.   I was told?
5      Q.   Yes.
6      A.   I do not recall being told.  I believe some
7  feel that it has a deterrent effect.
8      Q.   But you don't recall ever been told that
9  the metering policy had a deterrent effect?
10     A.   I may have.  I don't recall.
11     Q.   Were you told at any point that the
12 metering policy was working because it was cutting
13 down on the number of asylum seekers that came to the
14 port of entry?
15     A.   I don't recall that.
16     Q.   Were you told that the metering policy
17 created a humanitarian disaster?
18     A.   Humanitarian disaster?
19     Q.   Yeah.
20     A.   No.
21     Q.   Do you believe that the metering policy
22 created a humanitarian disaster?

Page 74

1   A.   No. Disaster, no.

2   Q.   If somebody told you that the metering
3   policy created a humanitarian disaster, you would have
4   told them that's not correct; is that right?

5   A.   Well, I would tell them if that's their
6   opinion and I don't share that opinion.

7   Q.   Isn't it true that metering occurred at
8   ports of entry even when those ports have excess
9   capacity?

10  A.   You have to define capacity.

11  Q.   How do you define capacity?

12  A.   I define capacity as two parts. There is
13  the physical capacity which is the space within the
14  detention cells. Then there's the operational
15  capacity which takes into consideration such things as
16  the demographics of those in custody, the conditions
17  of those in custody T, the issues and sickness issues,
18  the other operational priorities as to how the
19  resources in the ports are being directed that day,
20  all of these other day-to-day operational
21  considerations which may keep a port from reaching the
22  full physical space that they have.

Page 75

1      Q.    So if a port decides to prioritize other
2  matters over processing migrants without proper travel
3  documents, they may have a lower operational capacity;
4  is that right?
5      A.    Could you repeat that question.
6      Q.    Sure.
7      A.    Trying to follow.
8      Q.    If as a policy matter a port decides that
9  they are going to prioritize other missions besides
10 inspecting and processing individuals that don't have
11 proper travel documents, that port will effectively
12 have a lower operational capacity; is that right?
13     A.    Correct.  The finite resources that we have
14 are directed amongst multiple priorities in the ports
15 of entry.  The more you direct towards narcotics
16 intradiction or the counter-terrorism threat means
17 there's less to do other things in, whether that's the
18 migrant processing, the trade enforcement, the
19 agriculture mission.  The full scope of what we do at
20 the ports of entry, if you push resources in one area,
21 there will be less resources in other areas including
22 migrant process.