MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:  +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, | Case No.:  17-cv-02366-BAS-KSC |
| Plaintiffs, | **EXHIBIT 3 TO DECLARATION OF STEPHEN M. MEDLOCK IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF JUNE 2020 CLAWBACK** |
| v. | |
| Chad F. Wolf,[1] *et al.*, | |
| Defendants. | |

---

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

AL OTRO LADO, INC., et al.,  '
                             '
    Plaintiffs,              '
                             '
vs.                          ' CAUSE NO. 17-CV-02366-BAS-KSC
                             '
KEVIN K. McALEENAN, et al.,  '
                             '
    Defendants.              '

ORAL VIDEOTAPED DEPOSITION

MR. FRANK S. LONGORIA, JR.

June 18, 2020

ORAL VIDEOTAPED DEPOSITION OF MR. FRANK S. LONGORIA, JR., produced as a witness at the instance of the Plaintiffs and duly sworn, was taken in the above-styled and numbered cause on June 18, 2020, from 11:50 a.m. to 5:47 p.m., before Michelle Hartman, Certified Shorthand Reporter in and for the State of Texas and Registered Professional Reporter, reported by computerized stenotype machine via a Zoom videoconference, pursuant to the California Rules of Civil Procedure and the provisions stated on the record or attached hereto.

```
                                                              Page 2

 1                         APPEARANCES
 2
 3   FOR THE PLAINTIFFS:
 4        Mr. Angelo Guisado
 5        CENTER FOR CONSTITUTIONAL RIGHTS
 6        666 Broadway
 7        7th Floor
 8        New York, New York 10012
 9        Telephone: 212-614-6454
10        E-mail: aguisado@ccrjustice.org
11   and
12        Ms. Sarah Rich
13        SOUTHERN POVERTY LAW CENTER
14        1101 17th Street, N.W.
15        Suite 705
16        Washington, D.C. 20036
17        Telephone:  202-355-4471
18        E-mail:  sarah.rich@splcenter.org
19   FOR THE DEFENDANTS:
20        Mr. Ari Nazarov
21        U.S. DEPARTMENT OF JUSTICE - CIVIL DIVISION
22        Office of Immigration Litigation
23        Ben Franklin Station, P.O. Box 868
24        Washington, DC 20044
25        Telephone: 2020514-4120
26        E-Mail: ari.nazarov@usdoj.gov
27   ALSO PRESENT:
28        Ms. Zoe Ridolfi
29        Ms. Joanne Chou
30        Ms. Louisa Slocum, in-house attorney CBP
31        Mr. Benjamin Wolarsky, in-house attorney Defendants
32        Mr. Tyler Crotty, videographer
33        Mr. Erik Davidson, BU videographer
34
35
```

```
                                                              Page 3
 1                              INDEX
 2                                                            PAGE
 3    MR. FRANK S. LONGORIA, JR.
 4    Examination by Mr. Guisado ........................7
 5    Examination by Mr. Nazarov ......................266
 6    Further Examination by Mr. Guisado ..............268
 7    Signature Page  .................................270
 8    Signature Page  .................................271
 9    Court Reporter's Certificate ....................272
10
11                             EXHIBITS
12    EXHIBIT             DESCRIPTION                        PAGE
13
14    Exhibit 298    CBP's metering guidance issued            35
15                   by Todd Owen, executive
16                   assistant commissioner, Office
17                   of Field Operations, April
18                   27th, 2018 e-mail chain, Bates
19                   AOL-DEF 00011374 - 75
20
21    Exhibit 299    AUGUST 28, 2018 E-mail Chain              51
22                   Re:  Queue Management
23                   Communications at the Laredo
24                   Communication Office, AOL-DEF
25                   00909720 TO 22
26
27    Exhibit 300    Training video,                           57
28                   AOL-DEF-00390069
29    Exhibit 301    June 8th, 2018 e-mail chain               72
30                   bearing the Bates AOL-DEF
31                   00190367 to 69
32    Exhibit 302    May 30th e-mail bearing Bates             85
33                   AOL-DEF 00911036
34
35    Exhibit 303    August 6th, 2018 e-mail chain             91
36                   that bears Bates AOL-DEF
37                   00909668 TO 69
38
39
```

Page 4

| | EXHIBITS (cont.) | |
|---|---|---|
| EXHIBIT | DESCRIPTION | PAGE |
| Exhibit 304 | August 3rd, 2018 e-mail from Raquel Garza to the Laredo operations center bearing Bates AOL-DEF 0002896 | 97 |
| Exhibit 305 | August 4th, 2018 e-mail to the Laredo operations center bearing Bates AOL-DEF 00059739 | 97 |
| Exhibit 306 | November 12th, 2016 and November 15th, 2016 e-mail chain, bears Bates AOL-DEF 00046133 to 36 | 105 |
| Exhibit 307 | November 14th, 2016 e-mail bearing Bates AOL-DEF 00576995 to 96 | 114 |
| Exhibit 308 | Bates AOL-DEF 1430 to 32 | 130 |
| Exhibit 309 | June 13th, 2018 e-mail chain, bears Bates AOL-DEF 00911232 | 163 |
| Exhibit 310 | May 18th to 19th, 2018 e-mail chain bearing Bates AOL-DEF 00303561 to 63 | 197 |
| Exhibit 311 | July 6th to July 9th, 2018 e-mail chain that bears Bates AOL-DEF 01205190 to 91 | 204 |
| Exhibit 312 | June to July 2018 e-mail chain bearing the Bates number, AOL-DEF 0137408 to 10 | 208 |
| Exhibit 313 | July 2018 e-mail chain bearing Bates AOL-DEF 00566075 to 76 | 215 |
| Exhibit 314 | Laredo Port of Entry Impact Port Operations" summarizing queue management reports from June 16th, 2018 to July 14, 2018 | 224 |

Page 5

```
 1                    EXHIBITS (cont.)
 2    EXHIBIT              DESCRIPTION                  PAGE
 3    Exhibit 315   January 17, 2017 e-mail chain       228
 4                  bears Bates AOL-DEF 00577299 to
 5                  300
 6    Exhibit 316   June 8th, 2018 e-mail chain         235
 7                  bears Bates AOL-DEF 00565178 to
 8                  82
 9    Exhibit 317   * Skipped exhibit
10    Exhibit 318   June 5th through 6th, 2018          251
11                  e-mail chain that bears the
12                  Bates numbers AOL-DEF 00767892
13    Exhibit 319   MCAT Report dated June 5            258
14    Exhibit 320   MCAT Report dated June 6            258
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```

Page 5

Page 6

1                 THE VIDEOGRAPHER:  We are now on the
2    record.  This begins the deposition of Frank Longoria
3    in the matters of Al Otro Lado v. McAleenan in the
4    United States District Court for the Southern
5    District of California.
6                 Today is Thursday, June 18th, 2020,
7    and the time is approximately 11:50 a.m. -- I'm
8    sorry, Central time is 10:50 a.m.  The videographer
9    is Tyler Crotty of Magna Legal Services, and the
10   court reporter is Michelle Hartman of Magna Legal
11   Services.
12                Counsel, at this time could you please
13   state your appearances and whom you represent for the
14   record.
15                MR. GUISADO:  Angelo Guisado, Center
16   for Constitutional Rights for the Plaintiffs.
17                MS. RICH:  Sarah Rich, Southern
18   Poverty Law Firm, also for the Plaintiffs.
19                MR. NAZAROV:  Ari Nazarov of the
20   United States Department of Justice - Civil Division
21   for the Defendants.
22                THE COURT REPORTER:  Okay.  Can I have
23   an agreement, on the record, please, from Counsel
24   that the court reporter may swear in the witness
25   remotely.

Page 160

1          MR. NAZAROV:  Well, okay, that's fair
2  enough.  But when you're asking the same question, he
3  said -- he's done the best to answer it and you keep
4  asking, it's badgering.  I have to protect the
5  witness a little bit.  I have told you, we waited two
6  hours for the deposition.  He's retired.  It's late
7  in the deposition.  You get to ask your questions but
8  not to badger him.
9          MR. GUISADO:  You requested this
10 deposition, Ari.  It is three hours and 30 minutes,
11 roughly by my count.  We still have halfway to go.
12     Q.  (BY MR. GUISADO) Mr. Longoria, I
13 appreciate your patience in this matter, and I'm
14 going to instruct your Counsel to stop giving
15 speaking objections.
16          The last question on this document is:
17 Is it true that Javier Vasquez e-mailed you regarding
18 his misunderstanding about queue management and
19 capacity and you did not clarify that confusion for
20 him?  Is that right?
21          MR. NAZAROV:  Objection:  Form.
22          THE WITNESS:  And my response is you
23 have to understand the relationship between Javier
24 Vasquez and myself.  That was not simply a DFO to
25 assistant port director.  You have to understand

1   that.  And if you're not willing to listen to that,
2   then my answer -- my response stands.
3            MR. GUISADO:  Move to strike the
4   answer as nonresponsive.
5            Tyler, please put the document to the
6   side.
7            THE VIDEOGRAPHER:  (Complies).
8       Q.   (BY MR. GUISADO) Mr. Longoria, when did
9   CBP start using the term "operational capacity"?
10      A.   2018.
11      Q.   Do you know who at CBP came up with
12  that term?
13      A.   No.
14      Q.   Do you know why they came up with that
15  term?
16      A.   No.
17      Q.   Did the definition or its usage change
18  over time?
19      A.   Not to my knowledge.
20      Q.   Is the definition of "operational
21  capacity" anywhere in a statute?
22      A.   Not to my knowledge.
23      Q.   You're not aware of any regulation that
24  defines the term "operational capacity"?
25      A.   I'm not aware of any.

1          Q.   You're not aware of any internal
2    memorandum that defines "operational capacity"?
3          A.   What's your question?
4          Q.   Are you aware of any internal
5    memorandum that defines "operational capacity"?
6          A.   No.
7          Q.   Are you aware of any guidance that
8    defines "operational capacity"?
9          A.   Defines, no.
10         Q.   Are you aware of any muster that
11   defines "operational capacity"?
12         A.   No.
13              MR. GUISADO:  Please queue up FL 11.
14   That's Exhibit 309 AOL-DEF 00911232.
15         Q.   (BY MR. GUISADO) Take your time with
16   the document, Mr. Longoria.
17              MR. NAZAROV:  Mr. Longoria, can you
18   see that?
19              THE WITNESS:  Yes, sir.
20              MR. NAZAROV:  Okay.  Are you able to
21   read it?
22              THE WITNESS:  Yes, sir.
23              MR. NAZAROV:  All right.  We haven't
24   gotten it yet, so if you could give me a minute.
25   Okay.

Page 163

1  Q. (BY MR. GUISADO) Mr. Longoria, let me
2  know when you've read the document.
3  MR. NAZAROV: It's two e-mails, right,
4  Angelo?
5  MR. GUISADO: That's correct.
6  MR. NAZAROV: Yeah, have you read both
7  of them, Mr. Longoria?
8  THE WITNESS: Yes.
9  MR. NAZAROV: Okay.
10  (Exhibit 309 marked)
11  Q. (BY MR. GUISADO) Mr. Longoria, I am
12  showing you what will be marked Exhibit 309 to your
13  deposition. It is a June 13th, 2018 e-mail chain
14  that bears the Bates number AOL-DEF 00911232.
15  Do you recognize this document?
16  THE VIDEOGRAPHER: Sorry, Counsel,
17  it's 3 -- 310, not 309.
18  MR. GUISADO: 310, thank you very
19  much.
20  MR. NAZAROV: I have it as 309. Hold
21  on. Am I looking at --
22  MR. GUISADO: We marked it 309.
23  THE VIDEOGRAPHER: The last document
24  that we used was 309. So I would make this one 310.
25  I don't believe it's been marked yet.

Page 180

1        Q.   Why not?

2        A.   That is part of their job.

3        Q.   It says that they're -- it says under
4   operational capacity -- strike that.

5             Under operational capacity, ports have
6   the discretion to allocate resources to whatever
7   operations they see fit; is that right?

8             MR. NAZAROV:  Objection:  Form.

9             THE WITNESS:  Repeat the question.

10       Q.   (BY MR. GUISADO) You testified that
11  under operational capacity, it was up to the port's
12  discretion to allocate resources to the operations as
13  they saw fit; is that right?

14       A.   If there was a threat and it was
15  identified as one of our four priorities, yes, sir.

16       Q.   And inspection and processing of
17  non-citizens is one of those operations, even if it
18  wasn't within one of the four priorities listed by
19  Mr. McAleenan; is that right?

20            MR. NAZAROV:  Objection:  Form.

21            THE WITNESS:  I didn't understand the
22  question.

23       Q.   (BY MR. GUISADO) You testified that
24  there were -- that it was up to the discretion of the
25  port to allocate resources to their operations as

1  they saw fit under operational capacity; is that
2  right?
3          A.  Yes.
4          Q.  Is the processing of migrants or
5  non-citizens without proper entry documents one of
6  those operations?
7          A.  Yes.
8          Q.  Under the discretion afforded under
9  operational capacity, could a port move resources
10 away from immigration processing towards another
11 operation?
12         A.  Yes.
13         Q.  Is that what was happening within the
14 Laredo field office?
15         A.  Yes.
16         Q.  Mr. Koseor states in his e-mail at 1:00
17 p.m., "If one family a day allows Roma to continue to
18 process traffic and conduct enforcement, then that is
19 your -- that is your capacity."
20             Did I read that right?
21         A.  That's correct.
22         Q.  In other words, the capacity of the
23 Roma port of entry is what the Roma port of entry
24 assesses it to be; is that right?
25         A.  Correct.

Page 182

1      Q.  It's up to them to define how many
2  immigrants they can process in any given day under
3  operational capacity; is that right?
4      A.  Yes.
5      Q.  When you e-mailed Ryan Koseor on this
6  bottom e-mail at 11:41 a.m., what did you mean when
7  you said, "You need to clear up the operational
8  capacity issue"?
9      A.  Could we go back to it?
10           THE VIDEOGRAPHER:  (Complies).
11           THE WITNESS:  Okay.
12           MR. GUISADO:  It's at -- it's at the
13  bottom.  If you could zoom in, Tyler, I'd appreciate
14  that.
15           THE VIDEOGRAPHER:  (Complies).
16           THE WITNESS:  Oh, I see it.  I see it.
17           MR. GUISADO:  Okay.
18           MR. NAZAROV:  Do you need some time to
19  read it again, Mr. Longoria?
20           THE WITNESS:  No, sir.
21           As a representative of the migration
22  crisis action team and working for headquarters, I
23  was just recommending to him that they may want to
24  look more closely at the operational capacity issue.
25      Q.  (BY MR. GUISADO)  Why did you say, "It

Page 183

1  should be detention capacity because that's a clearly
2  defined number"?
3         A.  Well, that's what I believed.
4         Q.  What did you think would happen if they
5  left it at detention capacity and didn't switch to
6  operational capacity?
7         A.  Things would continue as they were
8  prior to that.
9         Q.  What did you --
10        A.  They would process as detention
11 capacity.
12        Q.  What did you think would happen if they
13 instituted the switch to operational capacity?
14        A.  The number of people being processed
15 would drop.
16        Q.  Thank you, Mr. Longoria.
17            MR. NAZAROV:  I'm going to ask for --
18 do you have a lot of more questions about this
19 document?
20            MR. GUISADO:  No, that's my last
21 question on this document.  We can take a break if
22 you want.
23            MR. NAZAROV:  At the beginning of this
24 deposition -- again, I just want to go on the
25 record -- you were asked how long you're going to go,