MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:   +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>Chad F. Wolf,[1] *et al.*,<br><br>    Defendants. | Case No.:  17-cv-02366-BAS-KSC<br><br>**EXHIBIT 4 TO DECLARATION OF STEPHEN M. MEDLOCK IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF JUNE 2020 CLAWBACK** |

---

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
   Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
   *bazmy@ccrjustice.org*
   Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
   *gschwarz@ccrjustice.org*
   Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
   *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
   Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
   *sarah.rich@splcenter.org*
   Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
   *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
   Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
   *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AL OTRO LADO, INC., ET AL., | ) IN THE DISTRICT COURT ) ) |
| PLAINTIFFS, | ) CASE NO. ) 17-cv-02366-BAS-KSC |
| VS. | ) ) ) |
| KEVIN K. MCALEENAN, ET AL., | ) ) |
| DEFENDANTS. | ) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONFIDENTIAL

ORAL AND VIDEOTAPED DEPOSITION OF

SAMUEL CLEAVES

MAY 20, 2020

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL AND VIDEOTAPED DEPOSITION of SAMUEL CLEAVES, produced as a witness at the instance of the Plaintiff, and duly sworn, was taken in the above-styled and numbered cause on May 20, 2020, from 8:59 a.m. to 5:04 p.m., Mountain Time, before Delia Ordonez, CSR in and for the State of Texas, reported by machine shorthand, via Webex Magna LegalVision.

Magna Legal Services

866.624.6221

www.MagnaLS.com

```
 1                    A P P E A R A N C E S
 2
 3   FOR THE PLAINTIFFS:
 4        Matthew Fenn
 5        Sydney Fields
 6        Mayer Brown
 7        1999 K Street, N.W.
 8        Washington, D.C. 20006
 9        202.263.3221
10        Mfenn@mayerbrown.com
11        Sfields@mayerbrown.com
12
13   FOR THE DEFENDANTS:
14
15        Katherine J. Shinners
16        Ari Nazarov
17        U.S. Department of Justice
18        Office of Immigration Litigation
19        Ben Franklin Station, P.O. Box 868
20        Washington, D.C. 20044
21        202.598.8259
22        Katherine.j.shinners@usdoj.gov
23        Ari.Nazarov@usdoj.gov
24
25        Rebecca Cassler
26        Southern Poverty Law Center
27        1101 17th Street, N.W., Suite 705
28        Washington, D.C. 20036
29        202.355.4471
30
31   ALSO PRESENT:
32        Evan McCulloch
33        Louisa Slocum, CBP
34   THE VIDEOGRAPHER:
35        Solange Tran
36   THE MAGNA LEGAL TECHNICIAN:
37        Kevin Cranford
38
```

```
                                                          Page 3
 1                           INDEX
 2            ORAL AND VIDEOTAPED DEPOSITION OF
 3                      SAMUEL CLEAVES
 4                       MAY 20, 2020
 5
 6                   E X A M I N A T I O N
 7  SAMUEL CLEAVES                                     P A G E
 8  Examination by Mr. Matthew E. Fenn....               7
 9  Examination by Ms. Sydney Fields......             199
10  Examination by Ms. Katherine J. Shinners           246
11  Signature and Changes.................             250
12  Reporter's Certificate................             252
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
```

```
                                                                   Page 4
 1                              EXHIBITS
 2                 ORAL AND VIDEOTAPED DEPOSITION OF
 3                           SAMUEL CLEAVES
 4                            MAY 20, 2020
 5
 6   NO.          DESCRIPTION                              P A G E
 7   Exhibit 3    Metering Guidance                         121
 8   Exhibit 79   30(b)(6) Notice                            14
 9   Exhibit 86   AOL-DEF-00041455                          183
10   Exhibit 159  AOL-DEF-00090647                           33
11   Exhibit 160  AOL-DEF-00290938                           32
12   Exhibit 161  AOL-DEF-00273818                           68
13   Exhibit 162  AOL-DEF-00027382                           81
14   Exhibit 163  FRE 1006 Summary of Impact to              83
15                Port Operation 2018
16
17   Exhibit 164  Defendants  Supplemental and               90
18                Amended Responses to
19                Plaintiffs  Fourth Set of
20                Interrogatories to All
21                Defendants
22
23   Exhibit 165  AOL-DEF-00047772                          125
24
25   Exhibit 166  AOL-DEF-01267496                          132
26
27   Exhibit 167  AOL-DEF-00272935                          134
28
29   Exhibit 168  AOL-DEF-00272936                          141
30
31   Exhibit 169  Defendants  Objections and                149
32                Responses to Plaintiffs
33                Fifth Set of Interrogatories
34                to All Defendants
35   Exhibit 170  Human Rights First Report                 155
36   Exhibit 171  AOL-DEF-00038270                          163
37   Exhibit 172  AOL-DEF-00037758                          171
```

```
                                                              Page 5
 1                           EXHIBITS
 2              ORAL AND VIDEOTAPED DEPOSITION OF
 3                       SAMUEL CLEAVES
 4                        MAY 20, 2020
 5
 6   NO.           DESCRIPTION                         P A G E
 7   Exhibit 173  Beto O'Rourke Twitter Video           175
 8   Exhibit 174  AOL-DEF-00095574                      189
 9   Exhibit 175  AOL-DEF-00799450                      200
10   Exhibit 176  AOL-DEF-00808783                      206
11   Exhibit 177  AOL-DEF-00845774                      214
12   Exhibit 178  AOL-DEF-00811791                      218
13   Exhibit 179  AOL-DEF-00838795                      224
14   Exhibit 180  AOL-DEF-00851607                      236
15   Exhibit 181  AOL-DEF-00842504                      241
16
17
18
19
20
21
22
23
24
25
26
27
```

```
                                                          Page 6
 1                THE VIDEOGRAPHER:  We are now on the
 2    record.  This begins Media No. 1 in the deposition of
 3    Sam Cleaves in the matter of Al Otro Lado, Inc., et al.
 4    versus Kevin K. McAleenan, et al., in the United States
 5    District Court Southern District of California.
 6                Today is Wednesday, May 20th, 2020, and the
 7    time is 9:59 a.m.  This deposition is being held
 8    remotely at the request of Mayer Brown, LLP.
 9    Videographer is Solange Tran, our trial tech, Kevin
10    Cranford, and the court reporter is Delia Ordonez, all
11    through Magna Legal Services.
12                Will counsel and all parties present please
13    state their appearances and who they represent?
14                MR. FENN:  Matthew Fenn from Mayer Brown,
15    and I represent the plaintiffs.
16                MS. FIELDS:  Sydney Fields from Mayer
17    Brown, also for the plaintiffs.
18                MS. SHINNERS:  Katherine Shinners from U.S.
19    Department of Justice for the defendants.
20                MR. NAZAROV:  Ari Nazarov, also from the
21    U.S. Department of Justice, for the defendants.
22                MS. SHINNERS:  And we have agency counsel
23    present from U.S. Customs and Border Protection, Louisa
24    Slocum, and Evan McCulloch on the phone.
25                THE VIDEOGRAPHER:  Will the court reporter
```

Page 49

1        MS. SHINNERS: Object to the form.
2        Q. (BY MR. FENN) There are seven ports of entry
3   on the U.S.-Mexico border in the El Paso Field Office,
4   correct?
5        A. Let me count them. No. There's five ports of
6   entry. The border crossings -- now there's six
7   currently, used to be five. The border crossings within
8   the Port of El Paso are referred to commonly as ports of
9   entry that you can see on the map that you showed me
10  previously. So I guess if you -- depending on how you
11  look at it, I guess it could be yes and no.
12       Q. Okay. So are the six -- you said that there
13  were six ports of entry on the U.S.-Mexico border in the
14  El Paso Field Office. Are those six Columbus, Santa
15  Teresa, Paso del Norte, Bridge of the Americas, Ysleta,
16  Tornillo, and Presidio?
17       A. They would be Columbus, Santa Teresa, Port of
18  El Paso, Tornillo, Ysleta, and Presidio, with Paso del
19  Norte and Bridge of the Americas as border crossings
20  within the Port of El Paso currently.
21       Q. Okay. Have you ever heard the term "capacity"
22  used with respect to these six ports of entry?
23       MS. SHINNERS: Objection, scope.
24       A. I've heard the term --
25       MS. SHINNERS: You can answer.

Page 50

1    A.  -- capacity.  I -- I don't know or recall if
2    I've ever heard it for the other ports of entry,
3    although I assume they have one.
4         Q.  (BY MR. FENN)  Does the El Paso Field Office
5    have a definition of the term "capacity" as it is used
6    with respect to these six ports of entry?
7         A.  No, not a definition.
8         Q.  So there's no definition memorialized in a
9    statute?
10        A.  A statute of law?
11        Q.  Yes.
12        A.  The -- the -- no, the Port of El Paso doesn't
13   make its own laws.
14        Q.  Do you know if there's any definition of the
15   term "capacity" in a regulation governing the El Paso
16   Field Office?
17        A.  No.
18        Q.  How about any guidance from CBP or the El Paso
19   Field Office?
20        A.  No, no official guidance.  We use operational
21   considerations when trying to -- I guess trying to
22   define capacity, but no actual set definition.
23        Q.  Is there any definition of "capacity" in a CBP
24   or El Paso Field Office memorandum that you've seen?
25        A.  No.

1     Q.   How about a standard operating procedure?  Any
2    definition of "capacity" in a standard operating
3    procedure?
4     A.   No, not that I know of.
5     Q.   How about musters, do you know whether the term
6    "capacity" has ever been defined in musters?
7     A.   No.
8     Q.   Do you know whether the term "capacity" has
9    ever been defined in any other sort of official document
10   that you've seen?
11    A.   I believe I've seen it mentioned in a memo from
12   headquarters about metering where -- where it just
13   mentions detention capacity and processing capacity and
14   operational capacity, but it doesn't define it.
15    Q.   Did you say you saw that in a memo from
16   headquarters?
17    A.   I think so.
18    Q.   Do you recall when that memo would have been
19   issued?
20    A.   April 2018.
21    Q.   And is the memo that you're referring to the
22   April 2018 memo from Todd Owen on metering?
23    A.   Yes, sir.
24    Q.   Okay.  We'll take a look at that memo in a bit.
25         Has the definition of the term "capacity,"

Page 52

1  as it is used with respect to these six ports of entry
2  that we were just discussing, has that changed -- has
3  that changed at any time?
4              MS. SHINNERS:  Objection, scope.
5      A.  I can't speak for any other ports of entry, but
6  for the Port of El Paso, I can answer that question, if
7  you want.
8      Q.  (BY MR. FENN)  Sure.
9      A.  Yes, for the Port of El Paso, it -- it has
10 changed.  In the beginning, we gave an inaccurate count
11 for capacity.  We were using the wrong parameters.  And
12 then, once that was realized, it had to be changed to
13 use the right parameters.
14              Our facilities were never designed for
15 overnight detention, so that became a central point of
16 what capacity means is what you can hold overnight.  We
17 were never designed to do it, so we had never had to ask
18 that question before, but that became exactly what
19 people were asking for.  Usually when they're asking us
20 that, it's:  "How many people can you hold overnight?"
21     Q.  And so how did the -- how did the definition of
22 capacity change -- strike that.
23              Do I understand your testimony to be that
24 previously the definition of capacity did not consider
25 how many people could be detained overnight?

Page 65

1  capacity is -- is we can really only take in around 30
2  or below at a time because they're -- they'll be at the
3  end of the queue within the port.  There are others
4  ahead of them already processed and waiting and moved
5  out.  And that's generally the reason why.  So -- yeah,
6  go ahead.  I'm sorry.
7       Q.  No problem.  If you were to tell your
8  supervisor that the El Paso Port of Entry was at its
9  operational capacity, how could your assertion be
10 verified?
11      A.  What we can do is -- operational capacity, the
12 number of cases that we have.  So it would be -- you
13 would have to take in the number of cases we have
14 overall, the number of people being held overall versus
15 the number we project being moved out or going to move
16 out or the capability of being moved out.  It would also
17 be the number that we can process, project to process.
18 That's a little bit complex because if -- depending on
19 budget restraints, we can process more sometimes;
20 sometimes we can't.
21           It also is operational capacity of what
22 else is going on in the port.  Are there other things
23 going on that's going to take away from admissibility
24 processing?  Are we -- are we intercepting other types
25 of violators other than migrants that are going to eat

Page 66

1  into operational capacity? How many transports do we
2  have to do? That takes two officers at a time. And how
3  many emergent events are -- are occurring? Port of
4  El Paso is quite large, and on the southern border, it
5  experiences significant events quite often.
6      Q.  Is it your testimony that the operational
7  capacity of the Port of El Paso could change from day to
8  day?
9      A.  It does.
10     Q.  And does CBP or does someone at the Port of
11 El Paso track what the operational capacity is on a
12 given day?
13     A.  No, because it is a culmination of multiple
14 factors. Yeah, that would become impossible to track.
15 If you wrote it down, it would be different after you
16 get done writing it down. That's an overexaggeration,
17 but...
18     Q.  So does the CBP or does somebody within the
19 Port of El Paso create any regular reports showing the
20 operational capacities for the Port of El Paso?
21     A.  No, not specific to operational capacity. We
22 generally report numbers and where they are in the
23 processing, that type of thing, which may go into the
24 decision-making of operational capacity, but, no,
25 nothing specific.

Page 67

1    Q.  And is your answer the same for other ports of
2    entry within the El Paso Field Office?
3    A.  I don't know specifically the mechanics of how
4    they report it, but my understanding is, yes, they both
5    take into consideration detention capacity and
6    operational capacity when making those decisions.
7    Q.  But you would agree that there's a difference
8    between taking operational capacity into consideration
9    and recording data on operational capacity, correct?
10   A.  No, actually, I don't know the difference
11   between what you're asking.
12   Q.  I'm asking whether -- you said that -- strike
13   that.
14           You testified earlier that it would be too
15   difficult to record data on operational capacity for the
16   Port of El Paso, correct?
17           MS. SHINNERS:  Objection, misstates
18   testimony.
19   A.  We would record data on the events that are
20   occurring and how many people we have and where they are
21   in the processing.  But as for your question on
22   operational capacity, which is a complex decision on
23   determining exactly what was going on at the port in
24   multiple facets, no, I -- I don't think we have anything
25   that captures everything like that in a report.