ETHAN P. DAVIS
Principal Deputy Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorneys
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | **GOVERNMENT EXHIBIT 1** |
| v. | |
| Chad F. WOLF, Acting Secretary of Homeland Security, in his official capacity, *et al.*, | |
| *Defendants* | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*,<br>    *Plaintiffs*,<br><br>v.<br><br>Chad Wolf, *et al.*,<br>    *Defendants*. | )<br>)<br>)<br>)<br>)  No. 3:17-cv-02366-BAS-KSC<br>)<br>)<br>)<br>) |

**DECLARATION OF RODNEY HARRIS**

I, Rodney Harris, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records, and reasonably relied upon in the course of my employment, hereby declare as follows relating to the above-captioned matter.

1. I am currently the Deputy Assistant Director of Field Operations, Border Security, Laredo Field Office (LFO), Office of Field Operations (OFO), U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS). Prior to serving in this role, I was a Supervisory Program Manager for Border Security at the Laredo Field Office. I began my career as a Customs Inspector in Laredo, TX.

2. I make this declaration to support the filing under seal of excerpts from my deposition transcript, which was taken on June 2, 2020.

3. During my deposition, I provided testimony related to the lists of migrants waiting in shelters to enter the United States, including communications between individuals in the Laredo Field Office and the Department of State, whether there was operational utility in the obtaining these lists, and whether the Field Office received copies of such lists.

4. First, I was asked questions related to an email chain between a Department of State employee and myself, in which we discussed details about a list of individuals waiting to

1

enter the United States from a shelter in Mexico. As I testified, I forwarded this email to the Laredo Port of Entry Chief of Staff for further discussion, including to determine whether the port had any interest in receiving lists of this nature. In the deposition, I also explained the nature of my communications with the State Department; the information generally contained within these migrant waitlists; the importance and considerations that the Laredo Field Office and ports within the Field Office assign to this information; whether the Field Office or ports of entry determined such waitlists to be have operational utility; and whether any of the ports in the Field Office had ever received copies of waitlists from either shelters in Mexico or officials from the Mexican government. I also testified about my general understanding of the shelter system on the Mexican side of the border and the operational utility of receiving certain data points from shelters and Mexican officials.

5. Such testimony should remain confidential, as it reveals the substance of communications between CBP and the Department of State relating to efforts to work to manage the relationship between the United States and Mexico on the southern border. Given the fluidity of operations on the southern border, and the need for close communications between individuals in the U.S. government and governmental and non-governmental actors in Mexico, CBP works closely with the State Department and other agencies to ensure the most efficient and effective communication with Mexican partners. In this context, it is particularly important that CBP is able to exchange regular, open, and candid communications with its federal partners, so that officials can make appropriate and timely decisions impacting the safety and security of the border. Officials on the ground must often make quick decisions, and it is critical that they are able to freely share all relevant information for purposes of making those decisions, without concern about how the decision would be perceived by the public. Therefore, disclosure of these internal communications to the public would adversely impact the willingness of individuals to freely share critical

2

information. In particular, in my opinion, disclosure of these internal communications may stifle the willingness of officials in the government of Mexico, or Mexico-based non-governmental organizations to share information with officials in the State Department and with CBP.

6. In addition, this testimony reveals specific information about interactions between officials from the U.S. government and NGOs and officials in Mexico, including the manner and type of communications and specific topics discussed. Specifically, this testimony reveals whether and how officials at ports of entry in the Laredo Field Office received information about migrants on waitlists waiting to enter the ports of entry, including whether the sharing of such information had any operational utility. This testimony therefore provides insight into the details of discussions between individuals in the Laredo Field Office and individuals in Mexico. Such communications are critical to ensuring that the United States and Mexico are able to work together to address common issues on their shared border. It is critical that individuals on both sides of the border are able to communicate openly, regularly, and candidly, as such communication ensures that the United States and Mexico are able to work together to address common issues. The substance of these communications, if disclosed publicly, would draw public scrutiny to whether and what type of information was shared related to these waitlists, and would impact the willingness of individuals on both sides of the border to share relevant information in a free and open manner and would impair the utility of working-level relationships between these individuals. This would significantly impact the ability of the two countries to jointly address security risks and other issues in the future.

7. This testimony also reveals specific operational details regarding the manner in which Mexico operates shelter systems along the border and specific actions taken by the Mexican government to regulate the flow of migrants who intend to approach ports of entry. These operational details could, if disclosed publicly, harm the ability of both Mexico and the

3

United States to manage operations on both sides of the U.S.-Mexico border. Specifically, the United States and Mexico have a joint interest in ensuring that their joint border is safe and secure, and thus regularly share information regarding their respective actions to maintain security and manage the flow of trade and travel across the border. This information is shared with sufficient detail to enable officials on both sides of the border to maintain sufficient situational awareness and to be prepared to work together to address any security or other concerns. Release of these operational details to the public would harm intergovernmental and intragovernmental communications.

8. I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 31 day of August, 2020.

_____
Rodney H. Harris
Deputy Assistant Director of Field Operations- Border Security
Laredo Field Operations
Office of Field Operations
U.S. Customs and Border Protection