MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:   +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*,<br><br>                Plaintiffs,<br><br>        v.<br><br>Chad F. Wolf,[1] *et al.*,<br><br>                Defendants. | Case No.:  17-cv-02366-BAS-KSC<br><br>**EXHIBIT 8 IN SUPPORT OF PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**<br><br>**REDACTED VERSION** |

---

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
   Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
   *bazmy@ccrjustice.org*
   Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
   *gschwarz@ccrjustice.org*
   Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
   *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
   Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
   *sarah.rich@splcenter.org*
   Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
   *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
   Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
   *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

EXHIBIT 8 IN SUPPORT OF PLAINTIFFS' MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT

Case 3:17-cv-02366-BAS-KSC  Document 535-10  Filed 09/04/20  PageID.46299  Page 1 of 2
Case 3:17-cv-02366-BAS-KSC  Document 390-7  Filed 01/14/20  PageID.29709  Page 3 of 41
Page 3 of 41

1   MAYER BROWN LLP
      Matthew H. Marmolejo (CA Bar No. 242964)
2      *mmarmolejo@mayerbrown.com*
    350 S. Grand Avenue
3   25th Floor
    Los Angeles, CA 90071-1503
4      Ori Lev (DC Bar No. 452565)
      (*pro hac vice*)
5      *olev@mayerbrown.com*
      Stephen M. Medlock (VA Bar No. 78819)
6      (*pro hac vice*)
      *smedlock@mayerbrown.com*
7   1999 K Street, N.W.
    Washington, D.C. 20006
8   Telephone:  +1.202.263.3000
    Facsimile:   +1.202.263.3300
9
    SOUTHERN POVERTY LAW CENTER
10     Melissa Crow (DC Bar No. 453487)
      (*pro hac vice*)
11     *melissa.crow@splcenter.org*
    1101 17th Street, N.W., Suite 705
12  Washington, D.C. 20036
    Telephone: +1.202.355.4471
13  Facsimile: +1.404.221.5857

14  *Additional counsel listed on next page*
    *Attorneys for Plaintiffs*
15
                **UNITED STATES DISTRICT COURT**
16
               **SOUTHERN DISTRICT OF CALIFORNIA**
17

18  Al Otro Lado, Inc., *et al.*,            Case No.:  17-cv-02366-BAS-KSC

19               Plaintiffs,

20          v.                               **EXHIBIT 5 TO PLAINTIFFS'**
                                             **MOTION FOR CLASS**
21  Chad F. Wolf,[1] *et al.*,               **CERTIFICATION**

22               Defendants.                 **Department of Homeland Security**
                                             **U.S. Customs and Border Protection**
23                                           **Report of Investigation**

24                                           ***FILED UNDER SEAL***

25

26

27  _____

28  [1] Acting Secretary Wolf is automatically substituted for former Acting Secretary
    McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
    Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
    *bazmy@ccrjustice.org*
    Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
    *gschwarz@ccrjustice.org*
    Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
    *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
    Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
    *sarah.rich@splcenter.org*
    Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
    *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.401.221.5857

AMERICAN IMMIGRATION COUNCIL
    Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
    *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.56

# DEPARTMENT OF HOMELAND SECURITY
# U.S. CUSTOMS AND BORDER PROTECTION
## OFFICE OF PROFESSIONAL RESPONSIBILITY

## REPORT OF INVESTIGATION

### Office of Professional Responsibility
### San Diego, CA

### Case# 201802466



THIS REPORT CONTAINS SENSITIVE LAW ENFORCEMENT MATERIAL. IT MAY NOT BE
LOANED OUTSIDE YOUR AGENCY AND, EXCEPT IN CONNECTION WITH OFFICIAL
AGENCY ACTION, NO PORTION OF THE REPORT MAY BE COPIED OR DISTRIBUTED
WITHOUT THE KNOWLEDGE AND CONSENT OF U.S. CUSTOMS AND BORDER PROTECTION

| DEPARTMENT OF HOMELAND SECURITY | 1. CASE NUMBER |
|---|---|
| Customs and Border Protection | 201802466 |
| | PREPARED BY |
| | ANTUNEZ, YANINA C |
| REPORT OF INVESTIGATION | 2. REPORT NUMBER |
| | 008 |

**3. TITLE**

███████ CBP OFFCR/0601 Detainee/Alien - Abuse (Physical Abuse)/SAN YSIDRO, SAN DIEGO, CA

**4. FINAL RESOLUTION**

| **5. STATUS** | **6. TYPE OF REPORT** | **7. RELATED CASES** |
|---|---|---|
| Closing Report | Blue Book | |

**8. TOPIC**

CBPO ███████ dragged a UDA by the legs and returned the UDA to Mexico at the SY/POE.

**9. SYNOPSIS**

On December 18, 2017, ████████████████████████████ **LE** ████████████████

███████ **LE** ██████████ contacted Senior Special Agent (SSA) Brian Miller, CBP, Office of Professional Responsibility, San Diego, CA (CBP OPR/San Diego), to report Officer (CBPO) ███████ ██████ allegedly pulled an Undocumented Alien (UDA) by the legs and returned the UDA to Mexico.

SSAs from the CBP OPR/San Diego, IOD Special Agent in Charge San Diego (SAC/San Diego) reviewed SY/POE video footage, performed record checks, and conducted CBPOs interviews. On July 24, 2018, CBPO ███████ admitted he dragged a UDA by the legs and returned the UDA to Mexico via the SY/POE.

| 10. CASE OFFICER (Print Name & Title) ANTUNEZ, YANINA C - CBP OPR Special Agent | 11. COMPLETION DATE 19-OCT-2018 | 14. ORIGIN OFFICE CBP OPR SAC SAN DIEGO |
|---|---|---|
| 12. APPROVED BY(Print Name & Title) JEFFERY ARNDT / CBP OPR Special Agent Supervisor | 13. APPROVED DATE 23-OCT-2018 | 15. TELEPHONE NUMBER ███████ |

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO HEADQUARTERS, DEPARTMENT OF HOMELAND SECURITY, TOGETHER WITH A COPY OF THE DOCUMENT.

THIS DOCUMENT CONTAINS INFORMATION REGARDING CURRENT AND ON-GOING ACTIVITIES OF A SENSITIVE NATURE. IT IS FOR THE EXCLUSIVE USE OF OFFICIAL U.S. GOVERNMENT AGENCIES AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY. IT CONTAINS NEITHER RECOMMENDATIONS NOR CONCLUSIONS OF THE DEPARTMENT OF HOMELAND SECURITY. DISTRIBUTION OF THIS DOCUMENT HAS BEEN LIMITED AND FURTHER DISSEMINATION OR EXTRACTS FROM THE DOCUMENT MAY NOT BE MADE WITHOUT PRIOR WRITTEN AUTHORIZATION OF THE ORIGINATOR.

Confidential                                                                      AOL-DEF-00014042

| DEPARTMENT OF HOMELAND SECURITY | 1. CASE NUMBER |
| --- | --- |
| | 201802466 |
| | **PREPARED BY** |
| | ANTUNEZ, YANINA C |
| **REPORT OF INVESTIGATION**<br>**CONTINUATION** | **2. REPORT NUMBER** |
| | 008 |

**10. NARRATIVE**

ALLEGATION ONE:  On January 2, 2018, CBPO ▮▮▮▮ dragged a UDA by the legs to return the UDA to Mexico at the SY/POE; Sustained.

# AC, WP, DP, LE

ALLEGATION TWO:  CBPO ▮▮▮▮, did not follow CBP policy and procedures pertaining to the processing of asylum seekers; Sustained.

PROSECUTORIAL ACTION:  N/A.

On December 18, 2017, SSA Miller, CBP OPR/San Diego, received a call from ▮▮▮ **LE** ▮▮▮ who reported an allegation of physical abuse of a traveler.  ▮ **LE** ▮ provided a written summary and video footage, which indicated that on January 2, 2017, CBPO ▮▮▮▮ allegedly pulled a UDA by the legs, and returned the UDA to Mexico (Exhibit 1 and 2).

# AC, WP, DP, LE

The allegation reported states, on January 2, 2017, a group of five UDAs sought asylum at the SY/POE west pedestrian inspection area; four UDAs were escorted back to Mexico and one was processed as a credible fear/asylum applicant.

The above-mentioned video footage was thoroughly reviewed by CBP management as follows:

The video footage indicated five UDAs approached CBPO ▮▮▮▮ pedestrian primary inspection area.  CBPO ▮▮▮▮ stepped out of his booth and directed the UDAs to Mexico.  The UDAs did not comply and walked past CBPO ▮▮▮▮'s booth into the U.S.  CBPOs in the vicinity assisted CBPO ▮▮▮▮ and once three of the UDAs were subdued, they were escorted back to Mexico.  During that time, CBPO ▮▮▮▮ was struggling with a non-compliant UDA who dropped to the ground and did not allow CBPO ▮▮▮▮ get a hold of his arms.  Instead, CBPO ▮▮▮▮ grabbed the UDA by the legs and dragged the UDA back to Mexico.  The fifth UDA, later identified as, ▮▮▮▮ **LE** ▮▮▮▮ was processed as an Expedited Removal/Credible Fear case (ER/CF).

Confidential                                                                                    AOL-DEF-00014043

| DEPARTMENT OF HOMELAND SECURITY | 1. CASE NUMBER |
|---|---|
| | 201802466 |
| | PREPARED BY |
| | ANTUNEZ, YANINA C |
| REPORT OF INVESTIGATION CONTINUATION | 2. REPORT NUMBER |
| | 008 |



### 10. NARRATIVE

On April 4, 2018, [ LE ] was interviewed at his residence in Washington, D.C. by SSAs Ralph Velez and Shannon Malone, CBP OPR/Washington. [ LE ] was notified the interview would also be audio and video recorded. The DVD obtained from the interview was properly labeled and stored in the case file.

The interview below which was conducted in the Spanish language was transcribed and translated by SSA Yanina Antunez (Exhibit 3).

The interview is a summary and it is not intended to be a verbatim account and does not memorialize all statements made during the interview. The video recording captured the actual quoloquialisms and words spoken. The recording below is uniquely identified by authentication code [ LE ] (Exhibit 4).

After being advised of the identity of the interviewing SSAs, the nature of the interview, and review of the SY/POE video footage, [ LE ] provided the following information:

According to [ LE ] on January 2, 2017, he and four companions sought political asylum at the Otay Mesa Port of Entry (Otay/POE). However, the CBPO at primary inspection insulted them and directed them to the SY/POE.

Once [ LE ] and his companions arrived at the SY/POE, [ LE ] approached the CBPO at primary inspection and applied for entry. The CBPO left the primary inspection area, walked toward [ LE ] companions and directed them to the "Beta Group" south of the SY/POE.

[Agent's Note: The Beta group is a non-profit organization in Mexico who protects migrants.]

Despite of the CBPO's orders, [ LE ] and his companions did not comply. Several of [ LE ] [ LE ] companions were directed to exit the SY/POE and [ LE ] was cornered against the wall, where he was subsequently arrested.

During [ LE ] rrest [ LE ] bbserved UDA [ LE ] Last Name Unknown (LNU) refusing to follow the CBPO's orders and dropped to the ground. At that point, the CBPO grabbed him/her foot and dragged him/her towards the SY/POE's exit gate.

In closing, [ LE ] stated that although he and his companions were all wearing black clothing, he was still able to identify the CBPO (CBPO ▆▆▆ ) and [ LE ] LNU. The video footage clearly showed the CBPO (CBPO ▆▆▆ ragging [ LE ] LNU.

Confidential                                                        AOL-DEF-00014044

| | DEPARTMENT OF HOMELAND SECURITY | 1. CASE NUMBER |
|---|---|---|
|  | | 201802466 |
| | | PREPARED BY |
| | | ANTUNEZ, YANINA C |
| | REPORT OF INVESTIGATION CONTINUATION | 2. REPORT NUMBER |
| | | 008 |

**10. NARRATIVE**

On June 7, 2017, SSA Antunez emailed Supervisory CBPO (SCBPO⬛⬛⬛⬛⬛SY/POE regarding a group of UDAs that crossed into the U.S. via CBPO⬛⬛⬛⬛ primary booth on January 2, 2017. SSA Antunez particularly inquired about a UDA by the name of ⬛ **LE** ⬛LNU and if he/she ⬛ **LE** ⬛LNU) sought asylum sometime after January 2, 2017. SCBPO⬛⬛⬛ provided SSA Antunez names of UDAs who sought asylum, however none matched the description or name of ⬛⬛⬛⬛ **LE** ⬛⬛⬛Exhibit 5).

On June 7, 2018, Watch Commander (WC)⬛⬛⬛⬛⬛⬛ was interviewed at the SY/POE by SSAs Antunez and Christian Vermilyia, CBP OPR/San Diego. WC⬛⬛⬛⬛ was notified the interview would also be audio and video recorded. The DVD obtained from the interview was properly labeled and stored in the case file.

The interview below is a summary and it is not intended to be a verbatim account and does not memorialize all statements made during the interview. The video recording captured the actual words spoken. The recording below is uniquely identified by authentication code ⬛⬛⬛⬛ **LE** ⬛⬛⬛⬛(Exhibit 6).

After being advised of the identity of the interviewing SSAs, and the nature of the interview, WC ⬛⬛⬛⬛⬛provided the following information:

According to WC ⬛⬛⬛⬛ on or about October 2017, ⬛ **LE** ⬛called WC ⬛⬛⬛⬛ into his office and asked her to review video footage from an incident that occurred on January 2, 2017, involving a group of UDAs and CBPO⬛⬛⬛⬛. The video footage showed CBPO ⬛ pulling a UDA by the legs to return to Mexico. After WC ⬛⬛⬛⬛reviewed the video footage, she referred to her end of shift reports to confirm the incident. However, the end of shift reports did not confirm the indent because no one (CBPOs) reported anything.

On January 2, 2017, WC ⬛⬛⬛⬛ also stated the SY/POE was at adequate capacity. If the SY/POE would have been at maximum capacity, the UDAs would have been denied entry before they made it to the primary inspection booth.

Furthermore, WC⬛⬛⬛⬛⬛stated that on said date, during a CBP Standard Operating Procedure, "Muster" briefing at the San Ysidro and Otay Mesa POEs, under no circumstances CBPOs were to deny asylum applicants entry into the U.S. CBPOs were also instructed to take into custody any asylum applicant encountered on primary inspection as long as the POE was at adequate capacity. After the briefings were conveyed, all of the CBPOs signed a muster sign-up sheet and acknowledged they were going to adhere by the new procedures (Exhibit 7).

Confidential                                                              AOL-DEF-00014045

| DEPARTMENT OF HOMELAND SECURITY | 1. CASE NUMBER |
|---|---|
|  | 201802466 |
| | PREPARED BY |
| | ANTUNEZ, YANINA C |
| REPORT OF INVESTIGATION CONTINUATION | 2. REPORT NUMBER |
| | 008 |

## 10. NARRATIVE

[Agent's Note: The CBP Standards of Operating Procedures are relayed during "Muster" briefings. Muster briefings are informational short meetings conducted by management with CBPOs prior, during, or after the end of their shift. After said muster briefings, CBPOs sign a muster sign-up sheet in acknowledgement of the informational meeting. However, during this investigation CBP Management was unable to provide CBP OPR a copy of a sign-up sheet indicating CBPO ███████ acknowledged any of the muster briefings.]

After WC ███████ reviewed the video footage, she stated CBPO ███████ removed a UDA to Mexico and the other UDAs ran through primary inspection. At that point, the CBPOs assisting CBPO ███████ should have taken the UDAs into custody and processed them via the admissibility unit. Upon CBPO ███████ return, it appeared as if he was pointing at the CBPOs directing them not to allow the UDAs into the country.

According to the video footage, ██████ LE ████ LNU purposely threw himself/herself to the ground when CBPO ███████ attempted to lift his/her arm, but he/she did not comply.

In Closing, WC ███████ said she was surprised CBPO ███████ did not adhere by the muster's procedures. CBPO ███████ has worked in the admissibility unit, expedited removals and credible fear cases. WC ███████ stated, "He is just not someone new, he knows about asylum seekers and I was shocked. He knows better than to not process asylum seekers because of his background."

Lastly, WC ███████ stated that if she would have known about the incident she would have reported the incident to ████ LE ████.

On June 7, 2018, Branch Chief (BC ███████ was interviewed at the SY/POE by SSAs Antunez and Vermilyia, CBP OPR/San Diego. BC ███████ was notified the interview would also be audio and video recorded. The DVD obtained from the interview was properly labeled and stored in the case file.

The interview below is a summary and it is not intended to be a verbatim account and does not memorialize all statements made during the interview. The video recording captured the actual words spoken. The recording below is uniquely identified by authentication code ████████ LE ████████ (Exhibit 8).

After being advised of the identity of the interviewing SSAs, and the nature of the interview, BC ███████ provided the following information:

Confidential                                                                                    AOL-DEF-00014046

| DEPARTMENT OF HOMELAND SECURITY | 1. CASE NUMBER |
|---|---|
| | 201802466 |
| | **PREPARED BY** |
| | ANTUNEZ, YANINA C |
| **REPORT OF INVESTIGATION CONTINUATION** | **2. REPORT NUMBER** |
| | 008 |

**10. NARRATIVE**

According to BC ▇▇▇▇ on or about June 2017, WC ▇▇▇▇▇▇ nformed him of an incident that occurred on January 2, 2017, at approximately 2305 hours, involving CBPO ▇▇▇▇ and a group of UDAs at the SY/POE primary inspection area.

After BC ▇▇▇▇ was made aware of the aforementioned incident, he reviewed the Operations Chief Log for January 2, 2017. However, the log did not indicate there had been an incident involving CBPO ▇▇▇▇ or a group of UDAs.

On the day of the incident, BC ▇▇▇▇ stated that at the beginning of his shift at the SY/POE, he surveyed various areas within the POE and ensured all the CBPOs were in their assign post and equipment was working properly.

After BC ▇▇▇▇ made his rounds, he recalled he left the supervisor's office at approximately 2248 hours to the SENTRI office. When BC ▇▇▇▇ returned to the supervisor's office, no one (CBPOs) reported an incident had occurred. BC ▇▇▇▇ said he speculated the incident must have happened when he was surveying the SY/POE.

In closing, BC ▇▇▇▇ stated, "I have no knowledge of the event."

On July 20, 2018, CBPO ▇▇▇▇▇▇ was interviewed at the SY/POE by SSAs Antunez and Sara Hittinger, CBP OPR/San Diego. CBPO ▇▇▇▇ was notified the interview would also be audio and video recorded. The DVD obtained from the interview was properly labeled and stored in the case file.

The interview below is a summary and it is not intended to be a verbatim account and does not memorialize all statements made during the interview. The video recording captured the actual words spoken. The recording below is uniquely identified by authentication code ▇▇▇ **LE** ▇▇▇▇ (Exhibit 9).

After being advised of the identity of the interviewing SSAs, and the nature of the interview, CBPO ▇▇▇▇ provided the following information:

According to CBPO ▇▇▇▇ on January 2, 2017, he was assigned to the primary inspection pedestrian west facility at the SY/POE. It was a slow night at the SY/POE, when all of the sudden CBPO ▇▇▇▇ adjacent to CBPO ▇▇▇▇ primary booth, yelled for assistance. CBPO ▇▇▇▇ observed CBPO ▇▇▇▇ reaching for a subject and he (CBPO ▇▇▇▇ darted out of his booth to stop the subject. CBPO ▇▇▇▇ grabbed the subject by the arms and asked for

Confidential                                                              AOL-DEF-00014047

| DEPARTMENT OF HOMELAND SECURITY | 1. CASE NUMBER |
|---|---|
| | 201802466 |
| | PREPARED BY |
| | ANTUNEZ, YANINA C |
| REPORT OF INVESTIGATION CONTINUATION | 2. REPORT NUMBER |
| | 008 |

**10. NARRATIVE**

immigration documents, but the subject gave him a blank stare. While that was happening
CBPOs in the vicinity responded and as soon as they arrived he (CBPO          turned over the
subject to the CBPOs and walked back to his booth. At that moment, CBPO          observed
CBPO          drag a subject by the leg towards Mexico. CBPO          was unaware the
above-mentioned subjects were seeking asylum. (Time Stamp 04:04:20)

In regards to muster briefings, CBPO          stated he abides by changes and new policies
presented to the CBPOs. During CBPO          ncident, the muster briefing indicated that all
asylum seekers were supposed to be referred to secondary for processing.

In regards to reporting the incident to CBP management, CBPO          reported the incident to
the secondary CBPOs who sat next to the supervisor's office and was made aware     LE
was an asylum seeker. CBPO          stated that if that would have happened to him, he would
have reported the incident to CBP management.

In closing, CBPO          stated he does not like to work with CBPO          because he
(CBPO          sleeps on the job. CBPO          is rude, arrogant and unprofessional to the
traveling public and asylum seekers. Although CBPO          is senior to CBPO          he
(CBPO          stated he would not want to learn anything from CBPO          Time Stamp
07:00:00)

On July 20, 2018, CBPO Alfred          was interviewed at the SY/POE by SSAs Antunez and
Hittinger, CBP OPR/San Diego. CBPO          as notified the interview would also be audio
and video recorded. The DVD obtained from the interview was properly labeled and stored in the
case file.

The interview below is a summary and it is not intended to be a verbatim account and does not
memorialize all statements made during the interview. The video recording captured the actual
words spoken. The recording below is uniquely identified by authentication code
     LE          (Exhibit 10).

After being advised of the identity of the interviewing SSAs, and the nature of the interview, CBPO
          rovided the following information:

According to CBPO          on January 2, 2017, CBPO          requested assistance at the
SY/POE primary inspection to manage a group of UDAs. CBPO          sponded and assisted
with the arrest of a UDA later identified, as          LE          However,

Confidential                                                        AOL-DEF-00014048

| | DEPARTMENT OF HOMELAND SECURITY | **1. CASE NUMBER** |
|---|---|---|
| | | 201802466 |
| | | **PREPARED BY** |
| | | ANTUNEZ, YANINA C |
| | **REPORT OF INVESTIGATION CONTINUATION** | **2. REPORT NUMBER** |
| | | 008 |

**10. NARRATIVE**

CBPO ████ stated he was unaware UDA ▐ **LE** ▐ or the rest of the UDAs were asylum seekers. Furthermore, CBPO ████ id not instruct CBPO ████ o process the UDAs as asylum seekers. (Time Stamp 06:07:41)

During UDA **LE** arrest, CBPO ████ observed CBPO ████ drag a UDA by the legs to return the UDA to Mexico.

CBPO ████ referenced the CBP muster briefing at the beginning of the shift and stated CBPOs were instructed to process all UDAs seeking asylum. CBPO ████ tated, if he would have been the primary CBPO, he would have referred the group of UDAs to secondary inspection for processing and would have reported the incident to CBP management. (Time Stamp 5:53:58)

In closing, CBPO ████ reiterated, during the aforementioned incident, they've (CBPOs) been instructed to process all UDAs seeking asylum. As to why the above-mentioned UDAs were not processed, CBPO ████ tated he did not know.

On July 24, 2018, CBPO ████ was interviewed at the Otay/POE by SSAs Antunez and Hittinger, CBP OPR/San Diego. CBPO ████ was notified the interview would also be audio and video recorded. The DVD obtained from the interview was properly labeled and stored in the case file.

The interview below is a summary and it is not intended to be a verbatim account and does not memorialize all statements made during the interview. The video recording captured the actual words spoken. The recording below is uniquely identified by authentication code ▐ **LE** ▐ Exhibit 11).

After being advised of the identity of the interviewing SSAs, and the nature of the interview, CBPO ████ provided the following information:

According to CBPO ████ at the beginning of 2017, the SY/POE was undergoing an asylum seeker crisis. During that time, CBP management instructed CBPOs assigned to the midnight shift to follow current port policies, which he (CBPO ████ said were conflicting and constantly changing. Said policies instructed the CBPOs to stop the UDAs at the limit line within the SY/POE, and other policies instructed the CBPOs to stop the UDAs at the primary booth as long as they did not claim asylum. (Time Stamp 17:28:10)

Confidential                                                                    AOL-DEF-00014049

|  | DEPARTMENT OF HOMELAND SECURITY | **1. CASE NUMBER** |
|---|---|---|
| | | 201802466 |
| | | **PREPARED BY** |
| | | ANTUNEZ, YANINA C |
| | **REPORT OF INVESTIGATION CONTINUATION** | **2. REPORT NUMBER** |
| | | 008 |

## 10. NARRATIVE

The above-mentioned policies indicated the UDAs would have to claim asylum at primary inspection before allowing them into the U.S.  However, management instructed the CBPOs to direct UDAs to the Beta group in Tijuana, B.C., Mexico.  (Time Stamp 17:29:00)

CBPO ▉▉▉ explained CBP management kept CBPOs informed of new policies or changes during muster briefings and discussed said policies at the beginning of their shift.  However, even though the CBPOs were briefed via a written muster, CBP management verbally directed them differently.  (Time Stamp 17:34:18)

On January 2, 2017, CBPO ▉▉▉ was assigned to the SY/POE primary pedestrian inspection area.  CBPO ▉▉▉ stated that a group of UDAs approached his booth and one of them placed a folder on the counter.  CBPO ▉▉▉ immediately identified the UDAs postures as travelers who routinely seek asylum.

However, in this case, the UDAs did not say anything; CBPO ▉▉▉ simply directed the UDAs (south) to the Beta Group.

After CBPO ▉▉▉ directed the UDAs to the Beta Group, the UDAs did not follow CBPO ▉▉▉ orders and walked passed his (CBPO ▉▉▉) booth without inspection.  At that point, the UDAs were in the U.S. illegally and CBPO ▉▉▉ requested CBPO assistance.

When the UDAs were intercepted, some complied and some did not comply with the CBPOs orders.  One of the non-compliant UDAs, later identified as ⌐ LE ⌐ was arrested and taken into custody.  During ⌐ LE ⌐ arrest, CBPO ▉▉▉ intercepted one of the UDAs and directed him to the Beta Group.  However, the UDA did not comply and threw himself/herself to the ground and became limp.  CBPO ▉▉▉ was then forced to lift him/her up, but since he/she refused to give CBPO ▉▉▉ his/her hands or arms, CBPO ▉▉▉ dragged him/her by the foot into Mexico.

Additionally, CBPO ▉▉▉ believed that at the heat of the situation, dragging the UDA into Mexico was the best option given the circumstances. He dragged the UDA into Mexico because he/she refused to follow orders.  "Yes, that is what I did." (Time Stamp 17:38:36)

CBPO ▉▉▉ stated he failed to process the group of UDAs who walked passed his primary booth, due to CBP management's conflicting policies.  CBPO ▉▉▉ stated, "I do what I am told, what I am saying, I do what I am told.  If they don't claim asylum, you could kick them back, if they tell me to process them that is what I am going do."

Confidential                                                                                    AOL-DEF-00014050

| DEPARTMENT OF HOMELAND SECURITY | 1. CASE NUMBER |
|---|---|
|  | 201802466 |
| | **PREPARED BY** |
| | ANTUNEZ, YANINA C |
| **REPORT OF INVESTIGATION**<br>**CONTINUATION** | **2. REPORT NUMBER** |
| | 008 |

## 10. NARRATIVE

Following CBPO ▮▮▮▮▮ above-mentioned statement, he was shown a copy of a muster briefing and was asked why he did not abide by the muster's instructions. CBPO ▮▮▮▮▮ stated that was his understanding and that is what he was going to do.

When CBPO ▮▮▮▮▮ was asked if he reported the incident to management, he stated, he probably should have reported the incident, but he did not.

According to the CBP Standard of Operating Procedures, CBPOs are to adhere to changes within the intake processing of UDAs seeking asylum. The procedures will ensure proper effectiveness of the CBPOs duties and responsibilities (Reference Exhibit 7).

In closing, CBPO ▮▮▮▮▮ reiterated, the SY/POE was in crisis mode and manned by a skeleton crew. CBPO ▮▮▮▮▮ stated he believes he performed his duties in good faith and he did not have malice towards the UDA he dragged into Mexico. In hindsight, he made a bad decision.

CPBO ▮▮▮▮▮ did not wish to review the January 2, 2017, incident between him and the UDA.

CBPO ▮▮▮▮▮ does not hold a security clearance.

Confidential                                                                                          AOL-DEF-00014051

| DEPARTMENT OF HOMELAND SECURITY | 1. CASE NUMBER |
|---|---|
|  | 201802466 |
| | PREPARED BY |
| | ANTUNEZ, YANINA C |
| **REPORT OF INVESTIGATION**<br>**Exhibit List** | 2. REPORT NUMBER |
| | 008 |

1. ⌐ **LE** ⌐ written summary, dated November 16, 2017.
2. SY/POE video footage, dated January 2, 2017.
3. UDA ⌐ LE ⌐ video/audio recording, dated April 4, 2018.
4. UDA ⌐ **LE** ⌐ transcription, dated April 4, 2018.
5. SCBPO ███████ email, dated June 7, 2018.
6. WC ███████ video/audio recording, dated June 7, 2018.
7. Standard Operating Procedures (Muster), dated 6/27/16 to 12/7/17.
8. BC ███████ video/audio recording, dated June 7, 2018.
9. CBPO ███████ video/audio recording, dated July 20, 2018.
10. CBPO ███████ video/audio recording, dated July 20, 2018.
11. CBPO ███████ video/audio recording, dated July 24, 2018.

Confidential                                                                                AOL-DEF-00014052

O F F I C I A L    U S E    O N L Y
**DEPARTMENT OF HOMELAND SECURITY**
**U. S. CUSTOMS AND BORDER PROTECTION**
**OFFICE OF PROFESSIONAL RESPONSIBILITY**

NOVEMBER 16, 2017
**201802466**
**EXHIBIT 1**
**LE**  written summary



**DEPARTMENT OF HOMELAND SECURITY**
**U. S. CUSTOMS AND BORDER PROTECTION**
**OFFICE OF PROFESSIONAL RESPONSIBILITY**
O F F I C I A L    U S E    O N L Y

201802466

EXHIBIT 1

Confidential

# AC, WP, DP, LE

**SUMMARY OF INCIDENT JANUARY 02, 2017:**

Report of Findings relates to CBPO ▮▮▮▮ pulling a passenger that attempted to apply for asylum on January 02, 2017 at approximately 2310 hours at the Pedwest facility at the San Ysidro Port of Entry.

The video reviewed reflects that five (5) individuals presented themselves at pedestrian primary booth 12, manned by CBPO ▮▮▮▮ One of the subjects has a brief discussion with CBPO ▮▮▮ at which time CBPO ▮▮▮ steps out of the booth to direct the group back to Mexico. The subjects fail to comply and three (3) of the five (5) proceed past the primary booth and attempt to Enter Without Inspection (EWI). CBPO(s) ▮▮▮▮ and ▮▮▮▮ immediately approach the three subjects. CBPO ▮▮▮ returns to the post primary area and attempts to escort one of the subjects back to Mexico by placing his hands on the subject initiating movement towards Mexico. CBPO(s) ▮▮▮▮ and ▮▮ initiate the escort of the other subjects back to Mexico. CBPO(s) ▮▮▮▮ and Paragon contract security guards respond and assist with the escort back to Mexico.

While the group was being escorted, CBPO ▮▮▮ struggled with one of the subjects who falls to the ground. CBPO ▮▮▮ then grabs at the subject's legs and pulls her towards Mexico for a short distance. From the exterior camera viewed, the subject then stands and walks with the three other subjects who were all escorted back to Mexico.

The fifth subject later identified as ⌐ LE ⌐ was processed as an Expedited Removal/Credible Fear case (ER/CF). ⌐ LE ⌐ stated that she was a transgender and that she was traveling with three (3) other transgender persons and a gay man. Those four individuals appear to be the four individuals escorted back to Mexico.

1

AOL-DEF-00014054

In Secondary a personal search was conducted on ▮ LE ▮ by CBPO Stephen Burden and witnessed by CBPO(s) ███████████ ▮and███████████

The CBPO officers involved in the initial encounter on pedestrian primary where the four subjects were encountered and eventually returned to Mexico were in violation of CBP's policy and guidance provided and mustered to all port of entry personnel on July, September, and November of 2016 reiterating the processing and handling of requests for asylum/credible fear.

The on duty supervisor at PedWest was Branch Chief ███████████ and the duty Watch Commander was ███████████ who have indicated that they were not notified of the incident.

## BACKGROUND:

In the first two quarters of FY 2017 the San Ysidro Port of Entry (SYS) continued to experience a surge of foreign nationals asserting claims of fear of returning to their home countries. San Ysidro continued to reach capacity and had to control the flow of undocumented travelers into our custody through queue management (metering). Queue management started at the San Ysidro POE on May 30, 2016 and concluded in February 2017. Through queue management, which was just one component of San Ysidro's planning to address the waves of incoming mass migration, San Ysidro was able to support an orderly process flow and prevent the facilities at the POEs from becoming dangerous – either to CBP officers or to those individuals being processed or detained by CBP. Queue management was a temporary measure that facilitated a safe process for people to apply to the United States at a time of historic migration movements to the United States along the SWB, including the surge of Haitian nationals arriving at the San Ysidro POE in the latter half of 2016. Queue management was conducted in partnership with entities of the government of Mexico responsible for immigration and humanitarian issues, as those entities similarly wanted to maintain an orderly flow of migrants. During periods when queue management protocols were used, Mexican nationals expressing a fear of return to Mexico were processed by the San Ysidro without delay, as their situation was distinct from those of third-country nationals, who were in Mexico awaiting processing by CBP for entry into the United States, and whose claim (if presented) related to the fear of returning to their country of origin, not the fear of remaining in Mexico. CBP officials engaged with various NGOs on the queue management process while it was happening. The San Ysidro Port Director held monthly in-person meetings with more than a dozen representatives from many non-governmental and humanitarian service organizations, to receive their feedback on how queue management was occurring. In July, September, and November of 2016 musters were sent to all San Ysidro and Otay Mesa CBP Officers informing them that under no circumstances will an asylum applicant be denied entry into the U.S and that any applicant for asylum encountered on primary should be taken into custody.

In January of 2017 San Ysidro was at capacity and under queue management protocols (metering). The AEU end of shift (2200) numbers for the time period of 01/02/17-01/04/17 indicate 292, 301 and 288. However, the situation in January was dynamic and fluid. Detention space was dependent on movement from ICE/ERO. San Ysidro were metering to capacity during that time period with additional numbers detained in AEU such as prosecutions and Material Witnesses not included in the AEU End of Shift report. Officers were briefed that any

Confidential

AOL-DEF-00014055

applicant for asylum encountered on primary should be taken into custody, escorted to the security office, and transported to the PedWest facility for proper intake and processing.

# AC, WP, DP, LE

3

O F F I C I A L   U S E   O N L Y
**DEPARTMENT OF HOMELAND SECURITY**
**U. S. CUSTOMS AND BORDER PROTECTION**
**OFFICE OF PROFESSIONAL RESPONSIBILITY**

JANUARY 2, 2017
# 201802466
# EXHIBIT 2
# SY/POE video footage



**DEPARTMENT OF HOMELAND SECURITY**
**U. S. CUSTOMS AND BORDER PROTECTION**
**OFFICE OF PROFESSIONAL RESPONSIBILITY**
O F F I C I A L   U S E   O N L Y

201802466

EXHIBIT 2

Confidential

O F F I C I A L   U S E   O N L Y
### DEPARTMENT OF HOMELAND SECURITY
### U. S. CUSTOMS AND BORDER PROTECTION
### OFFICE OF PROFESSIONAL RESPONSIBILITY

APRIL 4, 2018
## 201802466
# EXHIBIT 3
# LE video/audio recording



### DEPARTMENT OF HOMELAND SECURITY
### U. S. CUSTOMS AND BORDER PROTECTION
### OFFICE OF PROFESSIONAL RESPONSIBILITY
O F F I C I A L   U S E   O N L Y

201802466

**EXHIBIT 3**

O F F I C I A L   U S E   O N L Y
DEPARTMENT OF HOMELAND SECURITY
U. S. CUSTOMS AND BORDER PROTECTION
OFFICE OF PROFESSIONAL RESPONSIBILITY

APRIL 4, 2018
# 201802466
# EXHIBIT 4

**LE** interview's transcription



DEPARTMENT OF HOMELAND SECURITY
U. S. CUSTOMS AND BORDER PROTECTION
OFFICE OF PROFESSIONAL RESPONSIBILITY
O F F I C I A L   U S E   O N L Y

201802466

EXHIBIT 4

April 4, 2018

201802466 CBPO ███████ SSA Yanina Antunez/CBP OPR/San Diego

SSA Shannon Malone and SSA Ralph Velez/CBP OPR/Washington, D.C.

14:11:23 10:01 am

LE

***The following is a transcription of*** LE
***interview:***

**Ralph** - Declaracion de el  LE

SSA Shannon Malon and SSA Ralph Velez

LE

**Ralph** - Bajo Juramento

**Ralph** – Estas aqui para oir que nos puede decir de que se acuerda de un evento que ocurrio que se alega que un oficial de CBP alegadamente arrastro a un pasagero por las piernas y lo regreso a Mexico, en Enero 2, 2017, San Ysidro.

LE De ese suceso, Bueno nosotros nos acercamos eramos hibamos unas companeras eras cinco en total nos acercamos al puerto de entrada de Otay Mesa en primer instancia a pedir ayuda por asilo politico. Por lo cual en la puerta de entrada de Otay Mesa el official nos nos agredio solamente nos saco y nos dijo que nos direigieramos al Puerto de San Ysidro. Lo cual nosotros eso hicimos, estando en San Ysidro hicimos todo correctamente la linea como se tiene que hacer y al momento de pasar a el area donde se registra para entrar a los estados unidos yo doy frente mis companeros hiban atras de mi y yo platique con un agente, y dige que hibamos a pedir asilo.

**Ralph** – Mas despacio para captar toda su declaracion.

LE Yo entregue mi pasaporte, al momento de darle mi pasaporte el official salio de su cubiculo donde esta su computadora, y se dirigio asia la entrada y nosotros no hablamos ingles pero nos hacia entender con las mamos a senas de que salieramos por donde habiamos regresado y que por ahi nos hiban a ayudar que habia una cabinita no recuerdo "grupo veta" creo que grupo veta nos hiba a ayudar entonces nosotros no decidimos salirnos una companera y mi persona comnsamos a caminar por el lado de la computadora pasamos la computadora porque yo sabia que por eso me hiban a arrestar. Osea se que es un error, que rompi una regla pero era la unica manera de que me arrestaran lo hize de una manera pacifica.

**Ralph** – Y usd lo hizo aproposito y porque usd hizo eso?

LE En Primer instancia porque yo pedi una ayuda puerta de entrada por la cual no se me brindo que fue en la de Otay Mesa. Segunda instancia yo ya le habia pedido tanbien al official pedirle una ayuda al official el official queria sacarme y mandarme a el grupo veta. Que hace el grupo veta, deportar a personas a Mexico. Yo recorri Mexico por mucho tiempo fue un largo viaje para llegar a donde estaba lo

AOL-DEF-00014060

que yo llagaba a buscar no hera una ayda que no se me estaba brindando.  Pues la instancia por que yo tome esta decision fue una decision muy acelerada pero lo hice pore so porque yo estaba buscando ayuda por la cuel no se me estaba brindando, fue por eso.  Continueando, lo que sucedio al momento que yo hice eso una companera y mi persona traspasamos la computadora come le dije y los otros tres companeros se quedaron de lado de donde estabe nosotros nos traspasamos  y los otros tres se quedaron de el otro lado.  Cuando yo me traspase unos oficiales llegaron y nos agarraron y me arrinconaron en la pared, no puedo decir a certeza cuantos oficiales fueron pero si puedo decir que eran mas de tres o cuatro oficiales me arrinconaron contra la pared segun lo que yo recuerdo recuerdo que me agarraban del cuello lo que ellos querian hacer era sacarnos.  A mi otra companera tanbien le digeron que se saliera.

**Ralph** - Como se llama ella?

**LE**   **LE**   la que se habia metido con migo decidio salirse  se regreso para el lado de Mexico.  Otra companera  de los tres que estaban afuera ▆▆▆ estaba ▆▆▆ y estaba ▆▆▆ ▆ ▆▆ mi companera la sacaron a rastras de los pies.

**Ralph** – ▆▆▆ fue a la que sacaron.

**LE** Si correcto,  **LE**  se habia quedado con el grupo de lost res.

**Ralph** - Y usd precencio eso?

**LE** En el momento que me estaban agarrando a mi estaba biendo todo estaba biendo por todos lados y vi como mis companeros se salieron.

**Ralph** – Y usd vio cuando  **LE**  el official de CBP la arrastro?

**LE** La agarro de la pierna como para que se saliera ella no se queria salir.

**Ralph** – Usd presencio eso?

**LE** Si, osea si fue un momento muy rapido pero si.

**Ralph** – Ok, y que paso despues.

**LE** Bueno, a ellos los sacaron yo ya no supe que paso.

**Ralph** – Y usd  que le paso con usd?

**LE** Con migo se quedaron los oficiales, ahi forsejiando al final no me pudieron sacar y llego otro official y dijo que me hiban a arrestar que hera lo que yo queria y me arrestaron se fueron para Bueno me llevaron a un cuartito que estaba a la buelta.y empesaron a revisar todas mis pertenencias  me diejieron que me quitara mis anillos y mis aretes y me los quite y luego de eso empesaron a revisar mis pertenencias, yo soy una persona VIH positive yo utilize mis medicamentos yo llevava mis medicamentos ese dia con mi personal lo que sucedio fue de que el official al ver mis medicamentos solo se les quedo viendo los agarro y se fue con un grupo de oficiales no se que les dijo no puedo decirles que fue lo que les dijo.  Cuando regreso me pregunto que si yo estaba enfermo? Perdon, me dijo que si estaba enfermo y le dije que si.  Y me dijo guarda tus perternencias, de ahi me llevaron a tomar fotografia.  Luego me encerraron en un cuartito no se que me imagina que era de madrugada.  Perdi la nocion del tiempo.

AOL-DEF-00014061

**Ralph** - Te voy a mostrar el video para que tu me expliques que fue lo que paso? Paso a paso? Para el record, estamos tratando de prender el video para que el ⌐ **LE** ¬ lo pueda observar. Ahora, quiero que me diga cual e suds aqui en este vido y el grupo que me esta hacienda referencia? Esos son uds? Creo que eran cinco, unos dos tres. Esta personal es parte del grupo. Es usd?

⌐ **LE** ¬ Si yo so yo, lo que esta sucediendo es lo que yo le mencionabe desde el principio llegamos hicimos la linea correctamente al momento de que llego nuestro turno.

**Ralph** – Bienen de Mexico?

⌐ **LE** ¬ Estabmos en Tijuana. Me parece si mas no recuerdo, que en esa computadora en una de las dos nos toco si fue en una computadora de este lado. El official llama, ella es ⌐ **LE** ¬ Ahi estabamos el official me pidio los documentos le di mi pasaporte. Y le dije que pediamos asilo. El official toma mi pasaporte y me lo dio nos esta haciendo senales con la mano que vengamos y nos dirige hacia la salida. Que nos regresemos y que nos fueraoms para el grupo veta also asi le entendimos que el grupo veta nos va a ayuda, nosotros ya sabemos el grupo veta lo que hace es deportar a las personas. Entonces los otros tres companeros se quedaron ayi en lo que el official se movio a otra area yo y otra companera estephanie nos metimos y yo commence a caminar por este lado obiamente yo sabia que me hiban a arrestar que me hiban a detener y fue lo que paso. Ahi Bueno ahi me tenian a mi, fue un forcejeo, esa persona es estephanie.

**Ralph** – Quien es la que esta en el piso?

⌐ **LE** ¬ Ella es ⌐ **LE** ¬ Casi no distingo todos andabamos ropa negra. Ese es el official, la hiba arrastrando del pie, fue lo que vi fue algo muy rapido. Los oficiales me tenian arrinconado en la pared. ███████ e salio, estephani tanbien decidio salirse.

**Ralph** – Que mas me puede decir de ese suceso?

⌐ **LE** ¬ Que mas puedo decir, nunca pense que las cosas se fueran a dar como se dieron yo llegue buscando una ayuda y esperaba que me la brindaran esperaba un proceso correspondiente y correcto yo ya leido como es el proceso y yo me he metido en la pagina de imigracion y habia leido que puedes pedir ayuda en una puerta de entrada ya sea por barco..yo esperaba que se hiciera pues las cosas no se dieron como you pensaba.

**Ralph** – Entonces como salio usd del Puerto de san Ysidro?

⌐ **LE** ¬ Yo nunca Sali de ayi. Pase 14 dias encerrado en ese lugar. Luego me trasladaron al centro de detenciones en MCC. Y luego pase de esa fecha pase encerrado asta el 31 de julio fue que Sali. Desde que Sali me estube unos dias en casa de mis tios, y me mude aca el 28 de Agosto.

**Ralph** – Aguna otra cosa? Tiene algo que decir de el de la imagen/video? Cual fue el Puerto de entrada que usd utilize para buscar asilo?

⌐ **LE** ¬ El primer el de otay mesa, lo cual el official nos mando a san Ysidro. 5 personal ⌐ **LE** ¬
⌐ **LE** ¬

**Ralph** – Que Asian en Mexico?

Confidential

**LE** Nos conosimos en un albergue de mariposas que esta ahi en Mexico.  Ahi nos conosimos ese dia yo dije que me hiba a entregar, y ellos me acompanaron habiamos formado como una Amistad.

**Ralph** – Que les dijo usd a los oficiales de CBP cuando CBP se acerco a la inspeccion en primary?

**LE** Cuando me acerque a la computadora, que hibamos por asilo, que si nos podian ayudar me pregunto que si todos, le dije que si me pidio mis documentos le di mi pasaporte, lo que salio en el video salio que nos regresaramos.

**Ralph** – Eran usd siguieron las instrucciones de CBP?

**LE** En mi caso no, yo hiba con la intencion de que me arrestaran.

Ralph – Entonces usd da testimonio de que usd precencio hizo con **LE** fue la que se callo al pizo y el la arrastro.

**LE** o lo vi en una menera rapida, no como en el video yo vi cuando la hiban sacando.

**Ralph** – Alguna otra cosa que usd quiera decir.

**LE** No tengo por el momento algo mas que agregar.

**Ralph** – Se siente usd intimidado, nos hemos portado con mucho respeto?

**LE** Al principio le marque a mi abogada, pero ella me dijo que no habia ningun problema.

Ralph – Esto conclulle la declaracion de el **LE** son las 10:23 am

Confidential

AOL-DEF-00014063

O F F I C I A L  U S E  O N L Y
DEPARTMENT OF HOMELAND SECURITY
U. S. CUSTOMS AND BORDER PROTECTION
OFFICE OF PROFESSIONAL RESPONSIBILITY

JUNE 7, 2018
**201802466**
**EXHIBIT 5**
**SCBPO** ███████ **email**



DEPARTMENT OF HOMELAND SECURITY
U. S. CUSTOMS AND BORDER PROTECTION
OFFICE OF PROFESSIONAL RESPONSIBILITY
O F F I C I A L  U S E  O N L Y

201802466

EXHIBIT 5

AOL-DEF-00014064

**ANTUNEZ, YANINA (OPR)**

| | |
|---|---|
| **From:** | ANTUNEZ, YANINA (OPR) |
| **Sent:** | Thursday, June 7, 2018 4:44 PM |
| **To:** | ███████████ |
| **Subject:** | RE: 201802466 |

Thank you.

**From:** ███████████
**Sent:** Friday, June 08, 2018 12:40:45 AM
**To:** ANTUNEZ, YANINA (OPR)
**Subject:** RE: 201802466

10/4, I'll take a look tomorrow.

**From:** ANTUNEZ, YANINA (OPR)
**Sent:** Thursday, June 07, 2018 4:04:29 PM
**To:** ███████████
**Subject:** RE: 201802466

<div style="border:1px dashed">

# LE

</div>

Thank you so much,

Yanina

**From:** ███████████
**Sent:** Thursday, June 07, 2018 11:25:37 PM
**To:** ANTUNEZ, YANINA (OPR)
**Subject:** RE: 201802466

Yanina,

We were never positive as to which person that arrived the following day was the one who was dragged. We have 2 possible.

<div style="border:1px dashed">

# LE

</div>

And

<div style="border:1px dashed">

# LE

</div>

Hope that helps!

1

**From:** ANTUNEZ, YANINA (OPR)
**Sent:** Thursday, June 07, 2018 11:48 AM
**To:** █████████████████████████████
**Subject:** 201802466



Per our telephone conversation, below is my contact information.  Thank you in advance.

(January 2, 2017, five transgender individuals who sought political asylum at the SY/POE)

Yanina

*Yanina Antunez*
*Senior Special Agent*
*U.S. Department of Homeland Security*
*U.S. Customs and Border Protection*
*Office of Professional Responsibility*
*610 W. Ash St., Suite 1600*
*San Diego, CA 92101*

CONFIDENTIALITY NOTICE/SENSITIVITY NOTICE: This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is law enforcement sensitive, proprietary, privileged, or confidential, and may be legally protected or otherwise exempt from disclosure. This message may be forwarded by the addressee, as appropriate, to further disseminate law enforcement sensitive information, as needed. If you have received this message in error, please notify the sender immediately by email and delete all copies of this message.

Confidential                                                                                    AOL-DEF-00014066

O F F I C I A L   U S E   O N L Y
**DEPARTMENT OF HOMELAND SECURITY**
**U. S. CUSTOMS AND BORDER PROTECTION**
**OFFICE OF PROFESSIONAL RESPONSIBILITY**

JUNE 7, 2018
# 201802466
# EXHIBIT 6
# WC ▮▮▮▮▮▮ video/audio recording



**DEPARTMENT OF HOMELAND SECURITY**
**U. S. CUSTOMS AND BORDER PROTECTION**
**OFFICE OF PROFESSIONAL RESPONSIBILITY**
O F F I C I A L   U S E   O N L Y

201802466

EXHIBIT 6

Confidential

O F F I C I A L   U S E   O N L Y
DEPARTMENT OF HOMELAND SECURITY
U. S. CUSTOMS AND BORDER PROTECTION
OFFICE OF PROFESSIONAL RESPONSIBILITY

6-27-16 TO 12-7-17
# 201802466
# EXHIBIT 7
# Standard Operating Procedures
# (Muster briefings)



DEPARTMENT OF HOMELAND SECURITY
U. S. CUSTOMS AND BORDER PROTECTION
OFFICE OF PROFESSIONAL RESPONSIBILITY
O F F I C I A L   U S E   O N L Y

201802466

EXHIBIT 7




## Customs and Border Protection
## San Ysidro/Otay Mesa Ports of Entry
## STANDARD OPERATING PROCEDURES

# MUSTER

**TO:**   **All Uniformed Personnel**
        **San Ysidro/Otay Mesa**

**From: Port Director Aki**
        **San Ysidro Port of Entry**

Due to the ongoing construction and infrastructure limitations at SYS/OTM port of entry; and to provide the most efficient processing of travelers, the following protocols will be adhered to:

**Limit Line Personnel:**

Under no circumstances will an asylum applicant be denied entry into the U.S. Please direct all applicants to the Pedestrian West (PedWest) facility for proper intake and processing.

**Primary Personnel:**

Any applicant for asylum encountered on primary (pedestrian/vehicle/CBX) should be taken into custody, escorted to the security office, and transported to the PedWest facility for proper intake and processing.

Your adherence to these procedures will ensure proper effectiveness of our duties and responsibilities. Thx.

1

San Ysidro/Otay Mesa Ports of Entry                                        July 27, 2016



## Customs and Border Protection
## San Ysidro/Otay Mesa Ports of Entry
## STANDARD OPERATING PROCEDURES



# MUSTER

**TO:**    **All Uniformed Personnel**
           **San Ysidro/Otay Mesa**

**From:** **Port Director Aki**
          **San Ysidro Port of Entry**

Due to the ongoing construction and infrastructure limitations at SYS/OTM port of entry; and to provide the most efficient processing of travelers, the following protocols will be adhered to:

**Limit Line Personnel:**

Under no circumstances will an asylum applicant be denied entry into the U.S.  Please direct all applicants to the Pedestrian West (PedWest) facility for proper intake and processing.

**Primary Personnel:**

Any applicant for asylum encountered on primary (pedestrian/vehicle/CBX) will be taken into custody, escorted to the security office, and transported to the PedWest facility for proper intake and processing.

**PedWest:**

All Mexican credible fear cases will proceed to primary for processing, under no circumstance will a Mexican credible fear case be returned to Mexico.

Your adherence to these procedures will ensure proper effectiveness of our duties and responsibilities. Please do not deviate from these procedures or misinform travelers applying for credible fear/asylum as it can result in a human rights violation and/or personal and agency liability.

1

San Ysidro/Otay Mesa Ports of Entry                          September 01, 2016

**ANTUNEZ, YANINA (OPR)**

| | |
|---|---|
| **From:** | RODRIGUEZ, CARLOS C |
| **Sent:** | Tuesday, November 15, 2016 8:26 PM |
| **To:** | ^CBP_ALL SAN YSIDRO POE EMPLOYEES; ^CBP_ALL OTAY MESA POE EMPLOYEES |
| **Subject:** | Limit Line Muster |

Team,

Due to the ongoing construction and infrastructure limitations at SYS/OTM port of entry; and to provide the most efficient processing of travelers, the following protocols will be adhered to:

Limit Line Personnel:

Under no circumstances will an asylum applicant be denied entry into the U.S.  Please direct all applicants to the Pedestrian West (PedWest) facility for proper intake and processing.

Primary Personnel:

Any applicant for asylum encountered on primary (pedestrian/vehicle/CBX) should be taken into custody, escorted to the security office, and transported to the PedWest facility for proper intake and processing.

Your adherence to these procedures will ensure proper effectiveness of our duties and responsibilities.

1

                                                                                    AOL-DEF-00014071

**ANTUNEZ, YANINA (OPR)**

| | |
|---|---|
| **From:** | HOOD, ROBERT W |
| **Sent:** | Friday, April 14, 2017 2:35 PM |
| **To:** | SYS-OTM-MNGR |
| **Cc:** | HOOD, ROBERT W; AKI, SIDNEY K; CASTILLO, MOISES; MISENHELTER, JOSEPH; RODRIGUEZ, CARLOS C |
| **Subject:** | AEU Detention Space and Asylum Seekers |
| **Importance:** | High |

To ALL Managers,

Currently AEU has adequate detention space to process any applicant for asylum encountered at our facilities. Any asylum applicant we encounter should be taken into custody, escorted to the security office, and then transported to AEU for proper intake and processing. We should not be sending any asylum seekers back to Mexico. Please remind our officers.

Thank you,

Robert Hood

Customs & Border Protection

Assistant Port Director

San Ysidro Tactical Operations

1

AOL-DEF-00014072

Law Enforcement Sensitive
For Official Use Only

Confidential

O F F I C I A L   U S E   O N L Y
DEPARTMENT OF HOMELAND SECURITY
U. S. CUSTOMS AND BORDER PROTECTION
OFFICE OF PROFESSIONAL RESPONSIBILITY

JUNE 7, 2018
## 201802466
## EXHIBIT 8
**BC** ███████ **video/audio recording**



DEPARTMENT OF HOMELAND SECURITY
U. S. CUSTOMS AND BORDER PROTECTION
OFFICE OF PROFESSIONAL RESPONSIBILITY
O F F I C I A L   U S E   O N L Y

201802466

EXHIBIT 8

Confidential

O F F I C I A L   U S E   O N L Y
**DEPARTMENT OF HOMELAND SECURITY**
**U. S. CUSTOMS AND BORDER PROTECTION**
**OFFICE OF PROFESSIONAL RESPONSIBILITY**

JULY 20, 2018
**201802466**
**EXHIBIT 9**
**CBPO** ███████ **video/audio recording**



**DEPARTMENT OF HOMELAND SECURITY**
**U. S. CUSTOMS AND BORDER PROTECTION**
**OFFICE OF PROFESSIONAL RESPONSIBILITY**
O   F F I C I A L   U S E   O N L Y

201802466

**EXHIBIT 9**

Confidential                                                                                          AOL-DEF-00014075

O F F I C I A L   U S E   O N L Y
DEPARTMENT OF HOMELAND SECURITY
U. S. CUSTOMS AND BORDER PROTECTION
OFFICE OF PROFESSIONAL RESPONSIBILITY

JULY 20, 2018
201802466
EXHIBIT 10
CBPO ████████ video/audio recording



DEPARTMENT OF HOMELAND SECURITY
U. S. CUSTOMS AND BORDER PROTECTION
OFFICE OF PROFESSIONAL RESPONSIBILITY
O F F I C I A L   U S E   O N L Y

201802466

EXHIBIT 10

                                                  AOL-DEF-00014076

O F F I C I A L　U S E　O N L Y
**DEPARTMENT OF HOMELAND SECURITY**
**U. S. CUSTOMS AND BORDER PROTECTION**
**OFFICE OF PROFESSIONAL RESPONSIBILITY**

JULY 24, 2018
**201802466**
**EXHIBIT 11**
**CBPO ▮▮▮▮▮ video/audio recording**



**DEPARTMENT OF HOMELAND SECURITY**
**U. S. CUSTOMS AND BORDER PROTECTION**
**OFFICE OF PROFESSIONAL RESPONSIBILITY**
O　F　F　I　C　I　A　L　　U　S　E　　O　N　L　Y

201802466

**EXHIBIT 11**

Confidential