MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:   +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*,<br><br>                 Plaintiffs,<br><br>      v.<br><br>Chad F. Wolf,[72] *et al.*,<br><br>                 Defendants. | Case No.:  17-cv-02366-BAS-KSC<br><br>**EXHIBIT 73 IN SUPPORT OF PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |

---

[72] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
  *gschwarz@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

JOSEPH H. HUNT
Assistant Attorney General, Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
SAMUEL P. GO
Assistant Director
KATHERINE J. SHINNERS
Senior Litigation Counsel
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-2859 | Fax: (202) 305-7000
katherine.j.shinners@usdoj.gov
ALEXANDER J. HALASKA
ARI NAZAROV
DHRUMAN Y. SAMPAT
Trial Attorneys

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>CHAD F. WOLF, Acting Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*,<br><br>*Defendants* | Case No. 3:17-cv-02366-BAS-KSC<br><br>**DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS' THIRD SET OF REQUESTS FOR ADMISSION TO ALL DEFENDANTS** |

1

1
2

## DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS' THIRD SET OF REQUESTS FOR ADMISSIONS TO ALL DEFENDANTS

3

## INTRODUCTION

4
5
6
7
8
9
10
11
12
13
14
15
16
17

Pursuant to Federal Rule of Civil Procedure 26 and 36, Defendants, in their official capacities, hereby submit initial objections to "Plaintiffs' Third Set of Requests for Admission to All Defendants," served on January 21, 2020 (hereinafter, "Requests"). Defendants' objections and responses are based on the information known to Defendants at this time and are made without prejudice to assertion of additional objections should Defendants identify additional grounds for objection. Defendants specifically reserve the right to amend, supplement, clarify, revise, or correct any or all of their responses to these Requests for Admissions under Rules 26(e) and 36(b). Defendants' responses are provided in accordance with Federal Rule of Civil Procedure 26(b)(1), which permits the discovery of any information, not privileged, that is both (1) relevant to any party's claim or defense, and (2) proportional to the needs of the case. By providing such information, Defendants do not waive, and specifically preserve, any objection to its admissibility on the grounds of relevance, materiality, or other appropriate ground.

18
19

## GENERAL OBJECTIONS/OBJECTIONS TO DEFINITIONS

20
21
22
23
24
25
26
27
28

1.    Defendants object to Plaintiffs' Requests for Admission to the extent that they are improper attempts to use requests for admission as discovery devices. *See, e.g., Wigler v. Elec. Data Sys. Corp.*, 108 F.R.D. 204, 206 (D. Md. 1985) ("Rule 36 is not a discovery tool in the truest sense, but, rather, is a procedure for obtaining admissions for the record of facts already known."); *Erie Ins. Prop. & Cas. Co. v. Johnson*, 272 F.R.D. 177, 184 (S.D. W.Va. 2010) ("requests for admission are intended to narrow the scope of issues for trial, not to lead to the discovery of admissible evidence."); *see also Workman v. Chinchinian*, 807 F. Supp. 634, 646-47 (E.D. Wash. 1992); *U.S. S.E.C. v. Nutmeg Group, LLC*, 285 F.R.D. 403 (N.D. Ill.

2012).

2.    Defendants object to Plaintiffs' Definition A ("CBP") as overbroad. This case challenges the alleged actions of CBP's Office of Field Operations ("OFO") at ports of entry along the U.S.-Mexico border. Aside from the command structures in agency headquarters, any Request regarding the conduct of any other divisions, subdivisions, components or sections of CBP, including U.S. Border Patrol or of OFO at ports of entry that are neither a subject of the named Plaintiffs' allegations nor from which the court has ordered discovery in its October 9, 2019 Order, is overbroad and not proportional to the needs of this case. Similarly, any request for admission regarding the conduct of any contractors is likewise overbroad and not proportional to the needs of this case unless such request  is limited to conduct within scope of the contractors' duties for OFO at the San Ysidro, Otay Mesa, Hidalgo, Laredo, Brownsville, Calexico, Nogales, and El Paso ports of entry. Defendants therefore construe "CBP" to refer to any and all OFO divisions, subdivisions, or sections operating at the relevant ports of entry during the relevant time period, the headquarters portion of OFO.

3.    Defendants object to Plaintiffs' Definition B ("DHS") as overbroad. This case challenges the alleged actions of OFO at ports of entry along the U.S.-Mexico border. Any request for admission regarding the conduct of any other divisions, subdivisions, or other organization structures of DHS, which has the interpretative potential to include USCIS, the Coast Guard, FEMA, TSA, the Secret Service, and ICE, is overbroad and not proportional to the needs of this case. Defendants therefore construe "DHS" to refer to DHS components, offices, and personnel at issue in this case.

4.    Defendants object to the Plaintiffs' Definition D ("Port of Entry" or "POE") as, in the context of both the scope of this litigation, overbroad and irrelevant.  Defendants maintain that the challenges in this action are limited to policies issued and actions taken by the headquarters portions of OFO and actions

that occurred at the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry. To the extent that Plaintiffs argue that information about other ports of entry beyond San Ysidro, Otay Mesa, Laredo, and Hidalgo, is relevant to the requirements for class certification under Federal Rule of Civil Procedure 23(a), Defendants maintain their objection that such an inquiry is disproportionate to the needs of the case in light of the overall burden of conducting an inquiry into specific events at numerous ports of entry along the U.S.-Mexico border.  That is, discovery from the four ports of entry where the named Plaintiffs allegedly encountered an alleged practice, policy, and/or procedure, in addition to discovery from the agreed-upon custodians and non-custodial sources, satisfies the needs of the case, as any evidence of a border-wide practice, policy, and/or procedure, if it exists, would necessarily be found in such locations. Discovery from other ports of entry along the U.S.-Mexico border would thus be duplicative and thus unduly burdensome. At the very least, any inquiry beyond these four ports of entry should be limited to the four ports of entry cited by the Court in its October 9, 2019 Order.  Accordingly, Defendants construe the definition of "Port of Entry" as limited to the San Ysidro, Otay Mesa, Laredo, Hidalgo, Brownsville, Calexico, Nogales and El Paso Ports of Entry.

5.     Defendants object to Plaintiffs' Definition F, of "arriving noncitizen," as defined in "Definition F," as vague and overly broad.  Plaintiffs purport to define this term as "a noncitizen described in 8 U.S.C. § 1225(b)(1)."  However, section 1225(b)(1) does not include a definition of the term "arriving noncitizen," or "arriving alien."  8 U.S.C. § 1225(b)(1) provides a procedure for the "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled," namely, procedures governing *only* those aliens who are processed for expedited removal.  This provision does not set forth procedures that apply broadly to any other alien arriving in the United States.  Therefore, under plaintiffs' construction, "arriving noncitizen" would encompass only those aliens who, upon arrival at a port of entry, are processed for expedited removal.  As

Defendants cannot make a determination of whether an alien is, in fact, an alien described in section 1225(b)(1) until that alien is inspected and processed, this definition does not properly describe all aliens encountered by Defendants. Therefore, Defendants will construe this term to mean "an alien without documents sufficient for lawful entry to the United States." Defendants further object to the term "arriving noncitizen," to extent that the term is used to describe aliens who have not yet entered the United States.

6.    Defendants object to Requests for Admissions Nos. 16 – 20 as improper because they exceed the 25-request limit set by local rule. *See* L.R. 36.1 ("No party will serve on any other party requests for admission which, *including subparagraphs*, number more than twenty-five requests for admission without leave of court.") (emphasis added); *Blanton v. Torrey Pines Prop. Mgmt., Inc.*, No. 15-CV-0892 W (NLS), 2017 WL 2291752, at *3 (S.D. Cal. May 24, 2017). In Plaintiffs' First Set of Requests for Admissions, Plaintiffs served Requests for Admission Nos. 1 and 4, which employed a definition of "turned back" that included six different subparts and thus meant that each of these Requests contained six subparts/subparagraphs. Accordingly, Plaintiffs' First Set of Requests for Admission (Nos. 1 through 4) were in actuality Requests for Admission Nos. 1 through 14; Plaintiffs' Second Set of Requests for Admission (Nos. 5 through 6) were in actuality Requests for Admission Nos. 15 through 16; and the instant Requests (Nos. 7 through 20) are in actuality Requests for Admission Nos. 17 through 30 (and additionally, Plaintiffs' Request for Admission No. 18 is compound, and so constitutes three Requests for Admission). Defendants retain Plaintiffs' original numbering below, however, to avoid confusion.

## SPECIFIC OBJECTIONS AND RESPONSES

### Request for Admission No. 7:

Admit that, between January 1, 2016 and the date of these requests, one or more

CBP officers have directed asylum seekers standing on U.S. soil to return to Mexico without inspecting or processing them.

**Objections:**

Defendants object to this Request as vague and ambiguous for several reasons. First, as to the term "directed," it is not clear what actions Plaintiffs intend to include in this definition, and whether this encompasses only an order or command, or whether it would also include, for instance, suggestions or encouragements; Defendants construe the term "directed" to mean "ordered" or "commanded." Second, Plaintiffs do not define "asylum seekers." Pursuant to 8 U.S.C. § 1158, any alien who is present in the United States may apply for asylum, regardless of status (including whether he or she has documents sufficient for lawful entry) and regardless of whether he or she expresses a fear of return upon initial encounter. Accordingly, Defendants construe this Request as asking for an admission or denial of whether CBP has ordered or commanded aliens without documents sufficient for lawful entry who were standing on U.S. soil to return to Mexico.

Defendants object to this Request as vague and overly broad because it lacks a specific location element or limiting principle. Specifically the request seeks information regarding the actions of "one or more CBP officers," which is not limited to the actions of CBP officers at ports of entry on the U.S.-Mexico border, or even at ports of entry at all. This request, for instance, could be read to require an admission regarding the actions of CBP officers standing at any point in the United States. Similarly, the request would also cover *any* individual seeking asylum, located anywhere in the United States ("on U.S. soil"). Thus, the unduly broad scope of this request renders a reasonable inquiry and response nearly impossible.

Defendants object to this Request as overly broad and unduly burdensome because it seeks an admission or denial regarding the specific actions of "one or more officers" since January 2016, and thus purports to require Defendants to

6

interview nearly every officer in CBP, including those located at its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures to determine whether any officer ever engaged in the described conduct. The unduly broad scope of this request renders a reasonable inquiry and response nearly impossible.

Defendants also object to the use of the term "one or more" as ambiguous and misleading because it only asks for an admission as to one occurrence, but suggests a larger number.

Defendants further object to this Request to the extent an admission would reveal the existence or substance of ongoing investigations protected from disclosure by the law enforcement or investigatory files privilege.

**Response**: Subject to, and without waiving the foregoing objections, Defendants respond as follows: Defendants admit that, between January 1, 2016 and the date of these requests, there has been at least one instance in which a CBP Officer instructed an alien without documents sufficient for lawful entry who was standing on U.S. soil to return to Mexico without inspecting or processing them.

## Request for Admission No. 8:

Admit that, between January 1, 2016 and the date of these requests, CBP personnel at one or more POEs on the U.S.-Mexico border have engaged in metering and/or queue management when those POEs were utilizing less than 100% of their detention capacity.

**Objections:**

In accordance with General Objection No. 4, Defendants object to this Request and the definition of "POE" as irrelevant, legally improper, overly broad and unduly burdensome, and disproportionate to the needs of the case, to the extent the Request requires inquiry into any CBP component or subcomponent besides the headquarters portions of the Office of Field Operations or the San Ysidro, Otay

Mesa, Hidalgo, Laredo, El Paso, Brownsville, Nogales, and Calexico ports of entry. Accordingly, Defendants construe this topic as seeking an admission or denial regarding the port-specific practices at the following eight POEs: San Ysidro, Otay Mesa, Hidalgo, Laredo, El Paso, Brownsville, Nogales, and Calexico.

Defendants also object to this request as vague and ambiguous for several reasons. With respect to the undefined term "detention capacity," Plaintiffs have not explained whether this refers to the number of individuals physically present in CBP designated holding facilities at the particular Port of Entry, or some other definition. Plaintiffs have also not defined the term "utilizing." Lastly, Plaintiffs have not defined "100%." Specifically, Plaintiffs do not explain whether "100%" covers only a situation in which the number of individuals in custody at a particular facility was exactly identical to the stated maximum physical capacity of that facility, or whether "100%" takes into account the demographics or other characteristics of individuals in custody and the inability to utilize the maximum holding space due to those factors. Accordingly, Defendants construe this request as seeking an admission of whether Defendants were conducting metering/queue management when there were fewer individuals in custody than the stated maximum physical capacity of the designated holding space within a particular port of entry.

Additionally, Plaintiffs have not defined the term "CBP personnel," and it is not clear whether they intend this term to mean something different from "CBP Officer." To the extent that "CBP personnel" has a broader meaning than "CBP officer," this Request is not proportional to the needs of the case and is overly broad and unduly burdensome because a complete response would require Defendants to canvas all of CBP, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP." Therefore, CBP

8

construes this term to mean "CBP Officer."

Defendants also object to this Request as misleading and prejudicial. The Request not only fails to take into account the impact of CBP's operational needs and priorities on its ability to process and hold individuals, but it also does not take into account CBP's inability to fill holding cells to maximum capacity due to its need to hold individuals of different demographics and with certain characteristics apart from each other (including to address illness, injury, or other medical issues) or CBP's need to give individuals in custody additional space as time in custody increases. Thus, a port's actual capacity to hold individuals is not the same as the stated maximum physical capacity of the designated holding space within a particular port of entry.

Defendants also object to the use of the term "one or more" as ambiguous and misleading because it only asks for an admission as to one occurrence, but suggests a larger number.

**Response**: Subject to and without waiving the foregoing objections, Defendants respond as follows: Defendants admit that, on at least one occasion since January 1, 2016, CBP officers have engaged in metering/queue management when the number of individuals in custody at a particular port was less than the stated maximum physical capacity of the designated holding space within the particular port of entry.

## Request for Admission No. 9:

Admit that, between January 1, 2016 and the date of these requests, CBP personnel at one or more POEs on the U.S.-Mexico border have referred asylum seekers to other POEs, even when the referring-POE was utilizing less than 100% of its detention capacity.

**Objections:**

In accordance with General Objection No. 4, Defendants object to this Request and the definition of "POE" as irrelevant, legally improper, overly broad

and unduly burdensome, and disproportionate to the needs of the case, to the extent the Request requires inquiry into any CBP component or subcomponent besides the headquarters portions of the Office of Field Operations or the San Ysidro, Otay Mesa, Hidalgo, Laredo, El Paso, Brownsville, Nogales, and Calexico ports of entry. Accordingly, Defendants construe this topic as seeking an admission or denial regarding the port-specific practices at the following eight POEs: San Ysidro, Otay Mesa, Hidalgo, Laredo, El Paso, Brownsville, Nogales, and Calexico.

Defendants object to this request as vague and ambiguous for several reasons. First, Plaintiffs have not defined "asylum seekers." Pursuant to 8 U.S.C. § 1158, any alien who is present in the United States may apply for asylum, regardless of status (including whether he or she has documents sufficient for lawful entry) and regardless of whether he or she expresses a fear of return upon initial encounter. Additionally, individuals may *only* apply for asylum once they are physically present in the United States. Thus, Defendants construe this term as meaning "aliens without documents sufficient for lawful entry to the United States." Second, with respect to the undefined term "detention capacity," Plaintiffs have not explained whether this refers to the number of individuals physically present in CBP designated holding facilities at the particular Port of Entry, or some other definition. Similarly, Plaintiffs have also not defined the term "utilizing." Plaintiffs have also not defined "100%." Specifically, Plaintiffs do not explain whether "100%" covers only a situation in which the number of individuals in custody at a particular facility was exactly identical to the stated maximum physical capacity of that facility, or whether "100%" takes into account the demographics or other characteristics of individuals in custody and the inability to utilize the maximum holding space due to those factors.

Defendants object to the Request as vague and overbroad because Plaintiffs have not defined the term "CBP personnel," and it is not clear whether they intend this term to mean something different from "CBP officer." To the extent that the

10

term "CBP personnel" does encompass something broader than "CBP officer," this Request to admit whether "CBP personnel" engaged in specific actions is not proportional to the needs of the case and is overly broad and unduly burdensome because a complete response would then require Defendants to canvas all of CBP, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, U.S. Office of Field Operations or private contractors hired by CBP." Therefore, Defendants construe this term as meaning "CBP officers."

Plaintiffs have also not defined the phrase "CBP personnel *at* ports of entry along the U.S.-Mexico border" (emphasis added). Specifically, plaintiffs have not explained whether they intend this to mean only CBP officers who are physically present at the POE, or whether this would also include officers staffing a limit line position, if the limit line position is not at the POE facility. Defendants construe this request as asking for an admission as to whether CBP Officers who are assigned to a particular POE have referred aliens to another POE for inspection and processing, regardless of where those CBP Officers are physically located at the time of the referral.

Defendants also object to this Request as misleading and prejudicial. The Request not only fails to take into account the impact of CBP's operational needs and priorities on its ability to process and hold individuals, but it also does not take into account CBP's inability to fill holding cells to maximum capacity due to its need to hold individuals of different demographics and with certain characteristics apart from each other (including to address illness, injury, or other medical issues) or CBP's need to give individuals in custody additional space as time in custody times increase. Thus, a port's actual capacity to hold individuals is not the same as the stated maximum physical capacity of the designated holding space within a

11

particular port of entry.

Defendants also object to the use of the term "one or more" as ambiguous and misleading because it only asks for an admission as to one POE, but suggests a larger number.

Defendants also object to this Request to the extent an admission would reveal the existence or substance of ongoing investigations protected from disclosure by the law enforcement or investigatory files privilege.

**Response:** Subject to and without waiving their objections, Defendants respond as follows: Defendants admit that, on at least one occasion since January 1, 2016, CBP officers at at least one POE have referred aliens without documents sufficient for lawful entry to another POE for inspection and processing when the number of individuals at the referring POE was less than the stated maximum physical capacity of the designated holding space at the referring POE.

**Request for Admission No. 10**:

Admit that, between January 1, 2016 and the date of these requests, one or more CBP officers have expressed concern that the metering and/or queue management policy is illegal.

**Objections:**

Defendants object to this Request as vague and ambiguous, because it does not specify the information Plaintiffs seek and is susceptible to multiple definitions and understandings.  Specifically, the term "expressed concern" could include any communication, formal or informal, written or oral, made in an official or unofficial capacity.  The term "concern" is also vague and open to multiple understandings – ranging from actual emotional distress to mild frustration to anything in between. Thus, even if this Request were appropriate, Defendants would not know which communications it covered.

Defendants also object to this Request as overly broad and unduly burdensome, because a request for admission on the "concerns" of "one or more

12

officers" since January 2016, on the legality of a policy would require Defendants to interview nearly every officer in CBP, including those located at its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures to determine whether such officer ever expressed any concern on the legality of the queue management/metering policy in any capacity since January 2016 to anyone at all, even outside of the Government. Such a search, especially given the vagueness of the term "concern," would be unduly burdensome and disproportionate to the needs of the case.

Further, Defendants object to this Request as irrelevant to the issues to be decided in this case. Whether CBP's metering policy is permissible under the law is a legal determination; indeed, it is the ultimate issue subject to adjudication in this case. Whether *any* CBP officer, including any line or low-level Supervisory CBP officer who would only be privy to a subset of relevant information, may have expressed his or her subjective opinion about the legality of CBP's metering policy to anyone at all does not have "any tendency" to make any of the issues in this case "more or less probable than [they] would be without" the "concern," nor is the fact that an officer may have expressed such concerns "of consequence in determining" the issues. Fed. R. Evid. 401.

Defendants also object to the use of the term "one or more" as ambiguous and misleading because it only asks for an admission as to one occurrence, but suggests a larger number.

Defendants further object to this Request to the extent that it seeks information about communications protected by the attorney-client privilege.

**Response:** Subject to, and without waiving their objections, Defendants respond as follows: Defendants admit that, since January 1, 2016, at least one CBP officer has questioned the legality of the metering and/or queue management policy.

13

1    **Request for Admission No. 11:**

2    Admit that, between January 1, 2016 and the date of these requests, one or more

3    CBP officers have expressed concern that the metering and/or queue management

4    policy put officers in unsafe situations.

5    **Objections:**

6         Defendants object to this Request as vague and ambiguous, because it does

7    not specify the information Plaintiffs seek and is susceptible to multiple definitions

8    and understandings.  Specifically, the term "expressed concern" could include any

9    communication, formal or informal, made in an official or unofficial capacity.  The

10   term "concern" is also vague and open to multiple understandings – ranging from

11   actual emotional distress to mild frustration to anything in between.  Thus, even if

12   this Request were appropriate, Defendants would not know which communications

13   it covered.  Additionally, the term "put officers in unsafe situations" is vague and

14   ambiguous, as it is also susceptible to multiple definitions and understandings, and

15   is highly subjective.  What one officer determines to be "unsafe" could be very

16   different than what another officer determines to be "unsafe."

17        Defendants further object to this Request as irrelevant because an admission

18   that "one or more CBP officers have expressed concern that the metering and/or

19   queue management put[s] officers in unsafe situations" would not bear on the issues

20   in this case.  Specifically, the concern is not relevant to whether the named Plaintiffs

21   were, at the time of their alleged injury, arriving aliens applying for admission to the

22   United States; whether Defendants have implemented a formal policy or taken final

23   agency action to "restrict access to the asylum process at ports of entry along the

24   U.S.-Mexico border;" and whether such a policy or final agency action, if it exists,

25   and in the form it exists, is unlawful.  Expression of concern by a CBP officer over

26   the impact of a policy on officer safety does not have "any tendency" to make any

27   of the issues in this case "more or less probable than [they] would be without" the

28   "concern," nor is the fact that an officer may have expressed such concerns "of

14

consequence in determining" the issues.  Fed. R. Evid. 401.

Defendants also object to this Request as overly broad and unduly burdensome and/or disproportionate to the needs of the case,  because it seeks an admission or denial concerning the "concern[s]" of "one or more officers" since January 2016, and as such it would require Defendants to interview/canvas every officer in CBP, including those located at its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures to determine whether such officer ever expressed any concern on the safety of the queue management/metering policy in any capacity since January 2016 to anyone at all, even outside of the Government.  Such a search, especially given the vagueness of the term "concern," would be unduly burdensome and disproportionate to the needs of the case.

Defendants also object to the use of the term "one or more" as ambiguous and misleading because it only asks for an admission as to one occurrence, but suggests a larger number.

Defendants also object to this Request to the extent that it seeks information about communications protected by the attorney-client privilege.

**Response:** Subject to and without waiving their objections, Defendants respond as follows: Defendants admit that, on at least one occasion since January 1, 2016, at least one CBP officer has expressed an opinion that the metering/queue management policy as implemented during specific periods at specific POEs put officers in unsafe situations.

## Request for Admission No. 12:

Admit that, between January 1, 2016 and the date of these requests, one or more CBP officers requested additional guidance regarding the metering and/or queue management policy.

**Objections:**

15

Defendants object to this request as not relevant to any claim or defense, and as overly broad and not proportionate to the needs of the case. An admission that "one or more CBP officers have requested additional guidance" is not relevant to any party's claims or defenses because such request would not bear on the issues in this case. Requests for additional guidance on policy implementation would not have "any tendency" to make any of the issues in this case "more or less probable than [they] would be without" the request for guidance, nor would it be "of consequence in determining" the issues. Fed. R. Evid. 401.

Defendants further object to this Request as overly broad and unduly burdensome because determining whether "one or more officers" requested additional guidance on the metering and/or queue management policy since January 2016 would require Defendants to interview nearly every officer in CBP, including those located at its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures to determine whether such officer ever requested additional policy guidance since January 2016. For the same reasons, this request is not proportional to the needs of the case.

Defendants further object to this request as vague and ambiguous, because it does not specify the information Plaintiffs seek and is susceptible to multiple definitions and understandings. Specifically, the term "requested additional guidance" could include any communication, formal or informal, oral or written, made in an official or unofficial capacity, ranging from an actual question about the meaning of the policy, to a question about the meaning of a particular word in the policy, to a casual comment by an individual that more detail on a particular topic may be preferred.

Defendants also object to the use of the term "one or more" as ambiguous and misleading because it only asks for an admission as to one occurrence, but

16

suggests a larger number.

Defendants further object to this Request to the extent that it seeks information about communications protected by the attorney-client privilege.

**Response:** Subject to, and without waiving their objections, Defendants respond as follows: Defendants admit that, since January 1, 2016, at least one CBP officer has requested additional guidance regarding the metering and/or queue management policy.

## Request for Admission No. 13:

Admit that, between January 1, 2016 and the date of these requests, DHS has declined to take steps that would increase the capacity of one or more POEs on the U.S.-Mexico border to inspect and process asylum seekers.

**Objections:**

Defendants object to the term "DHS," as defined in Definition B, as overbroad, unduly burdensome, and not proportional to the needs of the case in the context of this Request, because the Request purports to seek an admission or denial from components or offices in DHS that have no relevance to these claims or responsibility over or authority with respect to POEs.

In accordance with General Objection No. 4, Defendants object to this Request and the definition of "POE" as irrelevant, legally improper, overly broad and unduly burdensome, and disproportionate to the needs of the case, to the extent the Request requires inquiry into any CBP component or subcomponent besides the headquarters portions of the Office of Field Operations or the San Ysidro, Otay Mesa, Hidalgo, Laredo, El Paso, Brownsville, Nogales, and Calexico ports of entry. Accordingly, Defendants construe this topic as seeking information regarding the following eight POEs: San Ysidro, Otay Mesa, Hidalgo, Laredo, El Paso, Brownsville, Nogales, and Calexico.

Defendants also object to this Request as overly broad, unduly burdensome, and/or disproportionate to the needs of the case, because a request to admit or deny

17

whether DHS has "declined to take steps" could require Defendants to collect and search the documents of all of DHS, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein, or any other DHS organizational structures." Such a search, especially given the vagueness of the term "capacity" would be unduly burdensome and disproportionate to the needs of the case.

Defendants object to this Request as vague and ambiguous in several respects. First, it is unclear what Plaintiffs mean by "capacity" in this context. The term "capacity" does not specify the information Plaintiffs seek and is susceptible to multiple definitions and understandings. For instance, the ordinary meanings afforded to "capacity" include "the potential or suitability for holding, storing, or accommodating," "the maximum amount or number that can be contained or accommodated," "the faculty or potential for treating, experiencing or appreciating," or "the facility or power to produce, perform, or deploy." *Capacity*, Merriam-Webster English Dictionary Online, https://www.merriam-webster.com/dictionary/capacity?src=search-dict-hed, (Feb. 6, 2020). This could encompass, as relevant to this case, a port of entry's overall physical holding capacity, a port of entry's operational capacity to hold individuals and ensure sufficient resources are available to conduct priority mission sets, or, potentially, some other definition of capacity. Second, the Request also does not specify what Plaintiffs mean by "declined to take steps." This term is ambiguous and susceptible to multiple definitions and understandings. Specifically, it is not clear what Plaintiffs mean by "steps," as this could encompass, for instance, plans that were never implemented, actions that were affirmatively undertaken, as well as actions that were started but not completed. It could also encompass both formal plans as well as informal actions taken on a particular day. Defendants construe this term to mean "actions," both formal and informal. Additionally, Plaintiffs have not defined "asylum seekers." Pursuant to 8 U.S.C. § 1158, any alien who is present in the

18

United States may apply for asylum, regardless of his or her status and regardless of whether he or expresses a fear of return upon initial encounter. Defendants construe this term as meaning "aliens without documents sufficient for lawful entry."

Defendants also object to this Request because it presumes that POEs have a specific "capacity to inspect and process asylum seekers," and that such capacity can be "increased." As explained in response to Interrogatories Nos. 6 and 7, pursuant to 8 U.S.C. § 1225(a), CBP inspects and processes all applicants for admission who arrive at a port of entry with or without documents sufficient for lawful entry—not just those who may express a desire to seek asylum or a fear of returning to their home country. CBP also inspects and processes at its ports of entry U.S. citizens and lawful permanent residents, those with documents sufficient for lawful entry (such as nonimmigrants), and those without documents sufficient for lawful entry who present themselves for inspection and do not express an intent to apply for asylum or a fear of return. *See, e.g.*, 8 U.S.C. §§ 1184, 1185; 8 C.F.R. § 235.1. Additionally, CBP officers at ports of entry must also devote their limited resources to fulfilling CBP's priority missions of ensuring the safety and security of the country and facilitating lawful trade and travel. Defendants are unable to define a specific capacity for each POE to "inspect and process asylum seekers." Moreover, CBP's capacity to inspect and process applicants for admission arriving at POEs is also dependent on the ability of third-party federal agencies to move such individuals through the entire immigration system. The capacity at one particular POE is just one part of the larger capacity of the immigration system. Thus, even if a particular port of entry's capacity could be "increased," such an increase would not, necessarily, result in an increased ability to inspect and process more aliens who arrive without documents sufficient for lawful entry to the United States. Thus, it not clear what Plaintiffs intend by "increase the capacity of one or more POEs." This request is also vague and ambiguous because plaintiffs have not defined what they mean by "inspect and process."

19

Defendants also object to the use of the term "one or more" as ambiguous and misleading because it only asks for an admission as to one POE, but suggests a larger number.

**Response:** Subject to, and without waiving their objections, Defendants respond as follows: Deny.

## Request for Admission No. 14:

Admit that, between January 1, 2016 and the date of these requests, CBP has declined to take steps that would increase the capacity of one or more POEs on the U.S.-Mexico border to inspect and process asylum seekers.

**Objections:**

In accordance with General Objection No. 4, Defendants object to this Request and the definition of "POE" as irrelevant, legally improper, overly broad and unduly burdensome, and disproportionate to the needs of the case, to the extent the Request requires inquiry into any CBP component or subcomponent besides the headquarters portions of the Office of Field Operations or the San Ysidro, Otay Mesa, Hidalgo, Laredo, El Paso, Brownsville, Nogales, and Calexico ports of entry. Accordingly, Defendants construe this topic as seeking information regarding the following eight POEs: San Ysidro, Otay Mesa, Hidalgo, Laredo, El Paso, Brownsville, Nogales, and Calexico.

Defendants also object to this Request as overly broad, unduly burdensome, and/or disproportionate to the needs of the case, because a request to admit or deny whether CBP has "declined to take steps" could require Defendants to collect and search the documents of all of CBP, including "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivsions or sections therein; or any other CBP organizational structures, including but not limited to U.S. Border Patrol, the Office of Field Operations, or private contractors hired by CBP." or Such a search, especially given the vagueness of the term "capacity" would be unduly

20

burdensome and disproportionate to the needs of the case.

Defendants object to this Request as vague and ambiguous in several respects. First, it is unclear what Plaintiffs mean by "capacity" in this context. The term "capacity" does not specify the information Plaintiffs seek and is susceptible to multiple definitions and understandings. For instance, the ordinary meanings afforded to "capacity" include "the potential or suitability for holding, storing, or accommodating," "the maximum amount or number that can be contained or accommodated," "the faculty or potential for treating, experiencing or appreciating," or "the facility or power to produce, perform, or deploy." *Capacity*, Merriam-Webster English Dictionary Online, https://www.merriam-webster.com/dictionary/capacity?src=search-dict-hed, (Feb. 6, 2020). This could encompass, as relevant to this case, a port of entry's overall physical holding capacity, a port of entry's operational capacity to hold individuals and ensure sufficient resources are available to conduct priority mission sets, or, potentially, some other definition of capacity. Second, the Request also does not specify what Plaintiffs mean by "declined to take steps." This term is ambiguous and susceptible to multiple definitions and understandings. Specifically, it is not clear what Plaintiffs mean by "steps," as this could encompass, for instance, plans that were never implemented, actions that were affirmatively undertaken, as well as actions that were started but not completed. It could also encompass both formal plans as well as informal actions taken on a particular day. Defendants construe this term to mean "actions," both formal and informal. Additionally, Plaintiffs have not defined "asylum seekers." Pursuant to 8 U.S.C. § 1158, any alien who is present in the United States may apply for asylum, regardless of his or her status and regardless of whether he or expresses a fear of return upon initial encounter. Defendants construe this term as meaning "aliens without documents sufficient for lawful entry."

Defendants also object to this Request because it presumes that POEs have a specific "capacity to inspect and process asylum seekers," and that such capacity can

be "increased." As explained in response to Interrogatories Nos. 6 and 7, pursuant to 8 U.S.C. § 1225(a), CBP inspects and processes all applicants for admission who arrive at a port of entry with or without documents sufficient for lawful entry—not just those who may express a desire to seek asylum or a fear of returning to their home country. CBP also inspects and processes at its ports of entry U.S. citizens and lawful permanent residents, those with documents sufficient for lawful entry (such as nonimmigrants), and those without documents sufficient for lawful entry who present themselves for inspection and do not express an intent to apply for asylum or a fear of return. *See, e.g.*, 8 U.S.C. §§ 1184, 1185; 8 C.F.R. § 235.1. Additionally, CBP officers at ports of entry must also devote their limited resources to fulfilling CBP's priority missions of ensuring the safety and security of the country and facilitating lawful trade and travel. Defendants are unable to define a specific capacity for each POE to "inspect and process asylum seekers." Moreover, CBP's capacity to inspect and process applicants for admission arriving at POEs is also dependent on the ability of third-party federal agencies to move such individuals through the entire immigration system. The capacity at one particular POE is just one part of the larger capacity of the immigration system. Thus, even if a particular port of entry's capacity could be "increased", such an increase would not, necessarily, result in an increased ability to inspect and process more aliens who arrive without documents sufficient for lawful entry to the United States. Thus, it not clear what Plaintiffs intend by "increase the capacity of one or more POEs." This request is also vague and ambiguous because plaintiffs have not defined what they mean by "inspect and process."

Defendants also object to the use of the term "one or more" as ambiguous and misleading because it only asks for an admission as to one POE, but suggests a larger number.

**Response:** Subject to, and without waiving their objections, Defendants respond as follows: Deny.

**Request for Admission No. 15:**

Admit that, between January 1, 2016 and the date of these requests, one or more CBP officers have expressed their belief that the capacity justification for the metering and/or queue management policy was false.

**Objections:**

Defendants object to this request as vague and ambiguous, because it does not specify the information Plaintiffs seek and is susceptible to multiple definitions and understandings. Specifically, the term "expressed their belief" could include a variety of different types of statements.

Defendants further object to this Request as vague and ambiguous because it does not specify what Plaintiffs believe the "capacity justification" is, or what aspect the CBP Officer claims is false.

Defendants also object to this Request as irrelevant, because an admission that "one or more CBP officers have *expressed their belief* that the capacity justification for the metering and/or queue management policy was false" is not relevant to any party's claims or defenses in this case. (Emphasis added). Expression of a CBP officer's belief over a policy's justification does not have "any tendency" to prove whether that justification is in fact true or false and does not make that "more or less probable than [it] would be without" the "belief," nor is the fact that an officer may have expressed such belief "of consequence in determining" the issue. Fed. R. Evid. 401.

Third, a request for admission on the "belief" of "one or more officers" since January 2016, "that the capacity justification for the metering and/or queue management policy was false" is overly broad and unduly burdensome, as it would require Defendants to interview nearly every officer in CBP, including those located at "its headquarters and offices, including any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures,  any

23

divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures" to determine whether any CBP officer expressed any such belief since January 2016 to anyone at all, even outside the Government. For the same reasons, this request is not proportionate to the needs of the case.

Additionally, Defendants object to this request on the grounds that the Request is vague and ambiguous, because it is unclear what Plaintiffs mean by "capacity" in this context. The term "capacity" does not specify the information Plaintiffs seek and is susceptible to multiple definitions and understandings. The ordinary meaning afforded to "capacity" is "the potential or suitability for holding, storing, or accommodating," "the maximum amount or number that can be contained or accommodated," "the faculty or potential for treating, experiencing or appreciating," or "the facility or power to produce, perform, or deploy." *Capacity*, Merriam-Webster English Dictionary Online, https://www.merriam-webster.com/dictionary/capacity?src=search-dict-hed, (Feb. 6, 2020). This could encompass, as relevant to this case, a port of entry's overall physical holding capacity, a port of entry's operational capacity to hold individuals and ensure sufficient resources are available to conduct OFO's priority mission sets, or, potentially, some other definition of capacity.

Defendants also object to the use of the term "one or more" as ambiguous and misleading because it only asks for an admission as to one occurrence, but suggests a larger number.

Defendants further object to this Request to the extent that it seeks information about communications protected by the attorney-client privilege.

**Response:** Subject to and without waiving their objections: Defendants admit that, since January 1, 2016, at least one CBP officer from one POE, in response to leading questions from Plaintiffs' counsel, agreed with Plaintiffs' counsel that a "capacity" justification was false with respect to that particular POE.

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Request for Admission No. 16:**

Admit that, between January 1, 2016 and the date of these requests, one or more CBP officers stated that metering and/or queue management had a deterrent effect.

**Objections:**

In accordance with General Objection No. 6, Defendants object to this Request because it exceeds the number of Requests for Admission permitted without leave of Court. Defendants provide a provisional response to this Request in an abundance of caution, but object to Plaintiffs' use of this response for any purpose.

Defendants object to this Request as vague and ambiguous, because it does not specify the information Plaintiffs seek and is susceptible to multiple definitions and understandings. Specifically, Plaintiffs do not define the phrase "deterrent effect." Not only is it unclear what "deterrent effect" means, but it is also unclear as to who or what "metering and/or queue management" has a "deterrent effect" on.

Second, an admission that "one or more CBP officers stated that metering and/or queue management had a deterrent effect" is not relevant to any party's claims or defenses because they do not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border"; and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful. A CBP officer's statement that "metering and/or queue management had a deterrent effect" does not make the issues in this case "more or less probable than [they] would be without" the statement nor is the fact that an officer may have made such statement "of consequence in determining" the issues. Fed. R. Evid. 401.

Third, Defendants object to this Request as overly broad and unduly burdensome because determining whether, since January 2016, "one or more officers stated that metering and/or queue management had a deterrent effect" could

require Defendants to interview nearly every officer in CBP, including those located in any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures to determine whether such officer ever made such statement since January 2016 to anyone at all, even outside the Government. For the same reasons, this request is not proportional to the needs of the case.

Defendants also object to the use of the term "one or more" as ambiguous and misleading because it only asks for an admission as to one occurrence, but suggests a larger number

**Provisional Response:** Subject to, and without waiving their objections, Defendants respond as follows: Defendants admit that, since January 1, 2016, at least one CBP official stated that metering and/or queue management may have had a deterrent effect.

## Request for Admission No. 17:

Admit that, between January 1, 2016 and the date of these requests, one or more CBP officers studied whether metering and/or queue management had a deterrent effect.

**Objections:**

In accordance with General Objection No. 6, Defendants object to this Request because it exceeds the number of Requests for Admission permitted without leave of Court. Defendants provide a provisional response to this Request in an abundance of caution, but object to Plaintiffs' use of this response for any purpose.

Defendants object to this request as vague and ambiguous, because it does not specify the information Plaintiffs seek and is susceptible to multiple definitions and understandings. Specifically, Plaintiffs do not define the phrase "deterrent effect." Not only is it unclear what the term "deterrent effect" means, but it is also unclear as to who or what "metering and/or queue management" has a "deterrent effect" on. Plaintiffs also have not defined the phrase "studied," and it is susceptible to multiple

definitions and meanings.  Specifically, "studied" could include a formal or written "study," an informal survey or conversation, as well as Internet or other research into a particular topic.  Plaintiffs do not indicate which of these meaning they intend to convey.  Defendants construe this request as seeking an admission of whether an individual at CBP conducted inquiries or investigations into whether metering/queue management had a deterrent effect.

Defendants also object to this Request as irrelevant because an admission that "one or more CBP officers studied whether metering and/or management had a deterrent effect" does not bear on the issues in this case: whether the named Plaintiffs were, at the time of their alleged injury, arriving aliens applying for admission to the United States; whether Defendants have implemented a formal policy or taken final agency action to "restrict access to the asylum process at ports of entry along the U.S.-Mexico border;" and whether such a policy or final agency action, if it exists, and in the form it exists, is unlawful.  A study into whether "metering and/or queue management had a deterrent effect" does not make the issues in this case "more or less probable than [they] would be without" the statement nor is the fact that an officer may have made such statement "of consequence in determining" the issues. Fed. R. Evid. 401.

The request for admission on whether "one or more officers studied whether metering and/or queue management had a deterrent effects" since January 2016 is overly broad and unduly burdensome, as it would require Defendants to interview nearly every officer in CBP, including those located at any divisions, subdivisions, components or sections therein; CBP offices at ports of entry, including any divisions, subdivisions or sections therein; or any other CBP organizational structures to determine whether any officer ever studied deterrent effects on metering and/or queue management.  For the same reasons, this request is not proportional to the needs of the case.

Defendants also object to the use of the term "one or more" as ambiguous and

27

misleading because it only asks for an admission as to one occurrence, but suggests a larger number.

**Provisional Response:** Subject to and without waiving their objections, Defendants respond as follows: Defendants admit that, since January 1, 2016, at least one CBP official conducted inquiries into whether metering and/or queue management had a deterrent effect.

## Request for Admission No. 18:

Admit that, between January 1, 2016 and the date of these requests, one or more POEs on the U.S.-Mexico border provided asylum seekers with written appointments or tickets when they were metered, but were ordered to stop doing so.
**Objections:**

In accordance with General Objection No. 6, Defendants object to this Request because it exceeds the number of Requests for Admission permitted without leave of Court. Defendants provide a provisional response to this Request in an abundance of caution, but object to Plaintiffs' use of this response for any purpose.

Defendants object to this Request and the definition of "POE" as irrelevant, legally improper, overly broad and unduly burdensome, and disproportionate to the needs of the case, to the extent the Request requires inquiry into any CBP component or subcomponent besides the headquarters portions of the Office of Field Operations or the San Ysidro, Otay Mesa, Hidalgo, Laredo, El Paso, Brownsville, Nogales, and Calexico ports of entry. Accordingly, Defendants construe this topic as seeking information regarding the port-specific practices at the following eight POEs: San Ysidro, Otay Mesa, Hidalgo, Laredo, El Paso, Brownsville, Nogales, and Calexico.

Second, Defendants object to this Request as vague and ambiguous. First, Plaintiffs have not defined "asylum seekers." Pursuant to 8 U.S.C. § 1158, any alien who is present in the United States may apply for asylum, regardless of his or her status and regardless of whether he or expresses a fear of return upon initial encounter. Defendants construe this term as meaning "aliens without documents

28

sufficient for lawful entry." Plaintiffs also have not defined "ordered," and this term is susceptible to multiple different potential meanings. Specifically, it is not clear whether this term includes, for instance, an oral suggestion to cease a certain practice, a written directive, or something in between.

Defendants further object to this Request on the grounds that it contains compound, conjunctive, or disjunctive statements. The Request seeks an admission that "one or more POEs on the U.S.-Mexico border provided asylum seekers with written appointments *or* tickets." (Emphasis added). And, if so, whether "one or more POEs" "were ordered to stop doing so." Therefore, this Request is legally improper. *See U.S. ex rel Englund v. Los Angeles County*, 235 F.R.D. 675, 684 (E.D. Cal. 2006) ("Requests for admissions may not contain compound, conjunctive, or disjunctive statements."). Responding to this request would require an admission or denial of at least three distinct facts: whether any port of entry provided a written appointment; whether any port of entry provided a ticket; whether, if any port provided one or the other, the port was "ordered" to stop providing either a written appointment and/or a ticket. Accordingly, this Request is in fact three separate Requests.

Defendants further object to this Request to the extent it seeks information about communications protected by the attorney-client privilege.

**Provisional Response:** Subject to and without waiver of their objections, Defendants respond as follows: Defendants admit that, since January 1, 2016, at least one POE on the U.S. Mexico Border provided aliens without documents sufficient for lawful entry with written appointments or tickets when they were metered and was ordered to stop doing so.

## Request for Admission No. 19:

Admit that, between January 1, 2016 and the date of these requests, CBP officers standing at the limit line have directed arriving noncitizens expressing a credible fear of persecution or desire to apply for asylum in the U.S. that they should return to

Mexico and wait to be inspected and processed at a later time.

**Objections:**

In accordance with General Objection No. 6, Defendants object to this Request because it exceeds the number of Requests for Admission permitted without leave of Court. Defendants provide a provisional response to this Request in an abundance of caution, but object to Plaintiffs' use of this response for any purpose.

Defendants object to this Request on the grounds that it is contains compound, conjunctive, or disjunctive statements. *See U.S. ex rel Englund v. Los Angeles County*, 235 F.R.D. 675, 684 (E.D. Cal. 2006) ("Requests for admissions may not contain compound, conjunctive, or disjunctive statements."). Here, the Request seeks an admission as to whether "CBP officers standing at the limit line have directed arriving noncitizens . . . that they should return to Mexico *and* wait to be inspected *and* processed at a later time." (Emphasis added). Therefore, this request is legally improper.

Additionally, Defendants object to this request as vague and ambiguous, as Plaintiffs' definition of "arriving noncitizens" encompasses only those processed under 8 U.S.C. § 1225(b)(1). An alien is only processed under § 1225(b)(1) following their inspection and processing at a port of entry. Therefore, CBP officers standing at the limit line do not encounter "arriving noncitizens," as individuals encountered at the limit line have not yet entered the United States, have not been inspected, and have not been determined to fall within § 1225(b)(1). Defendants also object to the undefined term "expressing a credible fear of persecution," because whether an alien has a "credible fear" of persecution is a determination made after an alien enters the United States and claims a fear of persecution in his or her home country; this is a determination made by asylum officers, not by CBP Officers. Defendants further object to the undefined phrase "expressing . . . a desire to apply for asylum in the U.S." as vague, because it is not clear what language Plaintiffs believe is contemplated by this phrase. Defendants also object to this phrase because

30

an individual cannot apply for asylum in the United States unless they are physically present in the United States.

Defendants also object to this request as vague and ambiguous, as it does not define "directed." Specifically, it is not clear whether this term refers only to a situation in which an individual is given an official order to do something, or whether it would also include "encouraged," "instructed," or "suggested." Additionally, Defendants object to this request as vague and ambiguous, as it purports to state that individuals who are encountered at the limit line are being "returned" to Mexico. CBP officers standing at the limit line are engaging with aliens who are still in Mexico and have not entered the United States. They therefore cannot be "returned" to that country, as they have not yet left Mexican territory, and thus remain in that country up and until they enter the United States. Thus, Defendants object to the term "return" as applied to interactions at the limit line.

**Response:** Subject to, and without waiving their objections, Defendants respond as follows: Defendants admit that, between January 1, 2016 and the date of these requests, CBP officers standing at the limit line have directed aliens without documents sufficient for lawful entry who have approached the limit line that they should wait to be inspected and processed at a later time.

## Request for Admission No. 20:

Admit that CBP has adopted a policy under which CBP officers standing at the limit line have directed arriving noncitizens expressing a credible fear of persecution or desire to apply for asylum in the U.S. that they should return to Mexico and wait to be inspected and processed at a later time.

**Objections:**

In accordance with General Objection No. 6, Defendants object to this Request because it exceeds the number of Requests for Admission permitted without leave of Court. Defendants provide a provisional response to this Request in an abundance of caution, but object to Plaintiffs' use of this response for any purpose.

31

Defendants object to this Request on the grounds that it is contains compound, conjunctive, or disjunctive statements. *See U.S. ex rel Englund v. Los Angeles County*, 235 F.R.D. 675, 684 (E.D. Cal. 2006) ("Requests for admissions may not contain compound, conjunctive, or disjunctive statements."). Here, the Request seeks an admission as to whether CBP has adopted a policy "that they should return to Mexico *and* wait to be inspected *and* processed at a later time." (Emphasis added). Thus, this request is legally improper.

Additionally, Defendants object to this request as vague and ambiguous, as Plaintiffs' definition of "arriving noncitizens" encompasses only those processed under 8 U.S.C. § 1225(b)(1). An alien is only processed under § 1225(b)(1) following their inspection and processing at a port of entry. Therefore, CBP officers standing at the limit line do not encounter "arriving noncitizens," as individuals encountered at the limit line have not yet entered the United States, have not been inspected, and have not been determined to fall within § 1225(b)(1). Defendants also object to the term "credible fear of persecution," as vague and misleading, because whether an alien has a "credible fear" of persecution is a determination made after an alien enters the United States and claims a fear of persecution in his or her home country; this is a determination made by asylum officers, not by CBP Officers. Thus, this Request is improper, as it implies that CBP officers make a determination as to whether a claim of fear is credible. Defendants further object to the undefined phrase "expressing . . . a desire to apply for asylum in the U.S." as vague, because it is not clear what language Plaintiffs believe is contemplated by this phrase. Defendants also object to this phrase because an individual cannot apply for asylum in the United States unless they are physically present in the United States.

The Request is further vague and ambiguous because it does not define "policy," or what they mean when they ask about actions taken "under" that policy. The Request also does not define "directed." Specifically, it is not clear whether this term refers only to a situation in which an individual is given an official order to do

32

something, or whether it would also include "encouraged," "instructed," or "suggested." Additionally, the Request is vague and ambiguous in its use of the phrase "return to Mexico," as it purports to state that individuals who are encountered at the limit line are being "returned" to Mexico. CBP officers standing at the limit line are engaging with aliens who are still in Mexico and have not entered the United States. They therefore cannot be "returned" to that country, as they have not yet left Mexican territory, and thus remain in that country up and until they enter the United States. Thus, Defendants object to the term "return" as applied to interactions at the limit line.

**Provisional Response:** Subject to, and without waiving their objections, Defendants respond as follows: Defendants admit that, between January 1, 2016 and the date of these requests, CBP officers standing at the limit line have directed aliens without documents sufficient for lawful entry who have approached the limit line that they should wait to be inspected and processed at a later time; Defendants also admit that, when executing the April 2018 Metering Guidance, CBP has instructed aliens without documents sufficient for lawful entry who have approached the limit line to wait to be inspected and processed at a later time; Defendants otherwise deny the Request in accordance with their objections.

Dated: April 8, 2020

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section

SAMUEL P. GO
Assistant Director

s/ *Katherine J. Shinners*

33

KATHERINE J. SHINNERS
Senior Litigation Counsel
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259 | Fax: (202) 305-7000
katherine.j.shinners@usdoj.gov

ALEXANDER J. HALASKA
ARI NAZAROV
DHRUMAN Y. SAMPAT
Trial Attorneys

*Counsel for Defendants*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

Case No. 3:17-cv-02366-BAS-KSC

I certify that on April 8, 2020, I served a copy of Defendants' Objections and Responses to Plaintiffs' Third Set of Requests for Admissions to All Defendants on the following persons by email:

**Ori Lev**
olev@mayerbrown.com

**Matthew Marmolejo**
mmarmolejo@mayerbrown.com

**Stephen Medlock**
smedlock@mayerbrown.com

**Matthew Fenn**
mfenn@mayerbrown.com

**Colleen Snow**
csnow@mayerbrown.com

**Sasha Keck**
skeck@mayerbrown.com

**Janie McCutchen**
jmccutchen@mayerbrown.com

**Melissa Crow**
Melissa.crow@splcenter.org

**Sarah Rich**
sarah.rich@splcenter.org

**Angelo Guisado**
aguisado@ccrjustice.org

**Baher Azmy**
bazmy@ccrjustice.org

**Karolina Walters**
kwalters@immcouncil.org

**Carmen Martinez**
carmen.martinez@splcenter.org

**Cindy Escoto**
cindy.escoto@splcenter.org

**Rebecca Cassler**
rebecca.cassler@splcenter.org

**Lupe Aguirre**
laguirre@ccrjustice.org

**Claire Dailey**
cdailey@ccrjustice.org

*/s/ Katherine J. Shinners*
Katherine J. Shinners
Senior Litigation Counsel

35