MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:    +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

Al Otro Lado, Inc., *et al.*,

       Plaintiffs,

    v.

Chad F. Wolf,[78] *et al.*,

       Defendants.

Case No.:  17-cv-02366-BAS-KSC

**EXHIBIT 79 IN SUPPORT OF PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

---

[78] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
   Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
   *bazmy@ccrjustice.org*
   Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
   *gschwarz@ccrjustice.org*
   Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
   *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
   Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
   *sarah.rich@splcenter.org*
   Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
   *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
   Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
   *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

**Walter Dresslar**

| | |
|---|---|
| **From:** | HARALSON, WILLIAM T <WILLIAM.T.HARALSON@cbp.dhs.gov> |
| **Sent:** | Wednesday, April 12, 2017 12:09 PM |
| **To:** | Walter Dresslar |
| **Cc:** | ATKINSON, DAVID; CLOUGH, ERIC; PONCE, EDUARDO H |
| **Subject:** | Arbitration Invocation Request (Failure to Process Asylum/Credible Fear Seekers HID 2017) |
| **Attachments:** | FailureToProcessAsylumERCFseekersHID2017.pdf |

Mr. Dresslar,

Chapter 149 would like to invoke the attached grievance into arbitration as the Agency has continuously failed to properly process asylum and/or credible fear seekers at the Ports of Hidalgo, Texas.  Aliens seeking

The Agency's Step 3 response was received on March 31st, 2017 and thirty (30) days from then would be April 30th, 2017 (last day to invoke).  A hard copy of this grievance will be sent to you later today.

I will call you to discuss the details of this grievance and the evidence we have of the Agency's violation as well as any additional information you will require to invoke this grievance into arbitration.

Respectfully,

**William T. Haralson**
**NTEU Representative**
**NTEU Chapter 149**
**956-843-5749 Union Office**
**956-239-2747 Cell**



1

**Exhibit**

**291**

NTEU - 000141



Chapter 149 Hidalgo, Texas

January 19, 2017

Mr. Carlos J. Gonzalez
9901 South Cage Blvd
Pharr, Texas 78577
956-227-7168
9562832060
carlos.javier.gonzalez.cbp.dhs.gov

Dear Sir,

Pursuant to the current National CBP/NTEU National Bargaining Agreement (NBCA), the Union is requesting a Step 1 grievance meeting with the Agency concerning:

(Article 2- Section 1) The Agency's failure to exercise the referenced authorities or discretion fairly and consistently so as to avoid adverse impact to the employee's working conditions, responsibilities, integrity and creditability with the position they hold with the US Government.

(Article 33- Sections 1 and 4A) The Agency also failed to initiate prompt and appropriate action to correct unsafe conditions whenever they are found to exist and raised. In which the Agency is required to make every reasonable effort, consistent with the mission of the Service and the inherent hazards of the work to be performed, to provide and maintain safe and healthful working conditions when and where it is within its authority and control to do so.

(Article 3- Section 3, Article 31- Section 4A and B) Therefore, the Agency officials failed to conduct themselves in a professional and businesslike manner, characterized by mutual courtesy, in their day to day working relationships when, (Article 26-Section 3.A) the Agency unilaterally implemented without notice changes in operational or administrative procedures or of any new initiative affecting an employee's working conditions, lawful orders; by acting in the following capricious and malicious manner:

**Brief Summary:**

Since, on or about 12/6/2016 and in a continuing manner, the Agency has unilaterally implemented a policy that prevents and/or blocks CBP Officers (pedestrian primary/secondary) from processing political asylum seekers and assessing their possible persecution or torture, and their potential

national security and/or terrorist threats to the United States. To include, recording asylum seeker's contact with CBP Officers at the Hidalgo, Ports of Entry while physically presenting themselves for inspection. CBP Directive 3320-002A, CBP Directive 3340-040A, current Immigration and Nationality Act (INA).

**Example, but not limited to:** CBPO Josh Garza referred Other Than Mexican (OTM) Asylum seekers during his 6am to 8am overtime assignment on 12/31/2016 while working with CBPO David Atkinson. CBP Supervisor Marco Solis and Private Security Guards (LARA) escorted the referred asylum seekers back to Mexico without secondary system screening or evaluation (direct radio communication) PCS employees stated that this was the running order from management for OTM asylum seekers. CBP Supervisor Marco Solis and other Agency representatives informed CBPO David Atkinson with witnesses (Clough, Garza) that the Agency was not processing OTMs for asylum purposes and that they are to be returned to Mexico, or call the supervisor and they would escort them out of the building, that they are not being referred for processing, just metered reports internally for numbers.

In ladder, this also includes the following:

3] Reducing the safety environment for employees at the passenger and secondary sites by not evaluating or screening persons who are Other Than Mexicans (OTM) seeking political asylum (e.g., but not limited to: Africans, El Salvadorians...) as lawfully mandated and past practiced. Private Security Guards are instructed by the Agency to stop certain asylum seekers from entering the building, have them call a CBP Supervisor and; both Supervisors and security guards deny entry and processing and escort them back to the path to Mexico.

4] Continuation of preventing/ blocking CBP Officers from referring all asylum seekers into secondary for evaluation and processing. As officers are order by Agency officials to transport and transfer certain asylum seekers (OTM's) from one city (Pharr, Texas) to another (Hidalgo, Texas) without screening and having them directly forced back into Mexico without the following checks: health or national security and/or terrorist threats. (12/6/2016-CBP Supervisors Marco Solis, Efrain Gonzalez, Ismael Hernandez; CBP Officer's Jessica Ibarra, Abraham Pena, Sylvia Guerra and Eric Clough). 8 USC 1158(a)(1), 8 USC 1225(b)(1)(A)(ii), 8 USC 235(B).

5] Failing to provide health screening or hazard plans for employees who come in contact with overnight ill or non-ill asylum seekers in the PCS areas. In fact, certain asylum seekers are told by Agency officials (Uribe) not to disclose their illnesses to any person, as they would be returned to their country. This in turn creates and unsanitary and unhealthy working environment for employees in the passenger secondary rotational sites, as the PCS areas have a continuous strong odor of human waste lingering in the air.

6] Implementation of a policy and procedure that places officers in jeopardy of violating federal law, rules and regulations pertaining to asylum seekers; which threatens a CBP Officer's employment, credibility and integrity with the US Government.

7] Asylum seekers were emotional traumatized, employees were stressed out by the practices placed by the agency.

**Remedy:**

The Union is requesting that all employees that were not allowed to process asylum seekers due to the Agency's orders and unilateral practices be exonerated from all wrong doing as mandated by the NCBA. The Union requests that health checks be completed on asylum seeking detainees prior to their extended stay during processing. The Union requests that a Job Hazards Plan be implemented for the affected work environments that detain and handle temporarily detained individuals in the A, B, and C buildings. The Union requests back-pay for all mandated work that would have been conducted if the asylum processing, transportation, care and detainment procedures would have been followed pursuant to CBP Mandates, law, rule and regulations. Additional Cleaning of inspectional sites, back pay for all work conducted by Private Security Officers that would have otherwise been mandated to be performed by a CBP Officer in the facilitation and handling of blocked/denied asylum seekers. All attorney fees and all other remedies deemed appropriate by a third party.

Please provide a proposed meeting date for this meeting by email. Please respond electronically at david.atkinson@cbp.dhs.gov and for any additional information concerning this matter. You may also reach me at 956-227-2222.

Respectfully Submitted,

Mr. David Atkinson
President- NTEU Chapter 149
Hidalgo, Texas.



Chapter 149

**Hidalgo, Texas**

February 21, 2017

**Mr. Javier Cantu**
U.S. Customs and Border Protection
Hidalgo, Texas

**Step 2 Grievance (Failure to Process ER/CF & Asylum Seekers HID 2017)**

Mr. Cantu,

Due to the Agency's failure to respond to this issue at the Step 1 grievance level. The Union hereby requests an Article 27, Section 12.B-Step 2 Grievance meeting with you pursuant to the Current CBP/NTEU National Collective Bargaining Agreement (NCBA) regarding all issues raised in the CBP Form 280 and its attachments.

Please provide me with a proposed date and time to meet concerning this matter.

Respectfully Submitted,

Mr. William T. Haralson
NTEU Representative
Chapter 149- Hidalgo, Texas

DEPARTMENT OF HOMELAND SECURITY
U.S. Customs and Border Protection
National Treasury Employees Union

## GRIEVANCE FORM

| | 1A. GRIEVANCE NUMBER | 1.B DATE FILED |
|---|---|---|
| | Failure to Process ER/CF & Asylum HID 2017 | 2/21/2017 |

**2. Filer ( EMPLOYEE NAME(S) OR UNION CHAPTER)**
William T. Haralson/NTEU Chapter 149

**3. EMPLOYEE POSITION AND WORK STATION**
CBP Officers/Ports of Hidalgo, Texas

**4. EMPLOYEES IMMEDIATE SUPERVISOR (NAME**
Acting Port Director Javier Cantu/ Chief SCBPO Carlos Gonzalez

**5. EMPLOYEES REPRESENTATIVE (CHECK ONE)**

[ ] SELF     [x] UNION (COMPLETE 5A & 5B)

**5A. NAME OF UNION REPRESENTATIVE**
William T. Haralson
**5B. UNION REP. TELEPHONE NUMBER**
956-227-2222

**6A. SPECIFIC ARTICLE(S) OR SECTION(S) OF THE AGREEMENT ALLEGED TO HAVE BEEN VIOLATED; SECTIONS OF APPLICABLE LAW OR REGULATION ALLEGED TO HAVE BEEN VIOLATED; OR THE SPECIFIC NATURE OF THE CONDITION EMPLOYMENT IN DISPUTE.** All Articles and Sections of the National CBP/NTEU Agreement dated May 11, 2011 (NCBA) and the following articles and sections; ARTICLE 2-Section 1; ARTICLE 3-Section 3; ARTICLE 7-Sections H and I; ARTICLE 26-Section 10; ARTICLE 31-Sections 4.A and 4.B; ARTICLE 33-Sections 1 and 4.A; ARTICLE 35-All; ARTICLE 35-Section G.2; ARTICLE 37-All; ARTICLE 37-Sections 1, 3 and 5; 19 USC 267; 19 USC 281; 19 USC 1451 (1011/1944 Overtime), as amended; Federal Employees Pay Act of 1945 (FEPA), as amended; CBP Directive 3320-002A; CBP Directive 3340-040A; 5 USC 7116(a) 1,5,7 and 8; Current Immigration and Nationality Act (INA); 8 USC 1158(a)(1); 8 USC 1225(b)(1)(A)(II); 8 USC 235 (B).

**6b. IF ALLEGATION OF AN UNFAIR LABOR PRACTICE, INDICATE SPECIFIC SECTIONS OF USC 7116(a) THAT HAVE BEEN VIOLATED BY CHECKING APPLICABLE BOX(S). IT IS AN UNFAIR LABOR PRACTICE FOR THE AGENCY TO:**

[X] (1) TO INTERFERE WITH,RESTRAIN OR COERCE ANY EMPLOYEE IN THE EXCERISE BY THE EMPLOYEE OF ANY RIGHT UNDER THIS CHAPTER;

[ ] (2) TO ENCOURAGE OR DISCOURAGE MEMBERSHIP IN ANY LABOR ORGANIZATION BY DISCRIMINATION IN CONNECTION WITH HIRING,TENURE,PROMATION, OR OTHER CONDITIONS OF EMPLOYMENT;

[ ] (3) TO SPONSOR,CONTROL OR OTHERWISE ASSIST ANY LABOR ORGANIZATION,OTHER THAN TO FURNISH, UPON REQUEST,CUSTOMARY AND ROUNTINE,SERVICE AND FACILITIES IF THE SERVICES AND FACILITIES ARE ALSO FURNISH ON AN IMPARTIAL BASIS TO OTHER LABOR ORGANIZATIONS HAVING EQUIVALENT STATUS;

[ ] (4) TO DISCIPLINE OR OTHERWISE DISCRMINATE AGAINST AN EMPLOYEE BECAUSE THE EMPLOYEE HAS FILED A COMPLAINT,AFFIDAVIT,OR PETITION, OR HAS GIVEN ANY INFORMATION OR TESTIMONY UNDER THIS CHAPTER;

[X] (5) TO REFUSE TO CONSULT OR NEGOITATE IN GOOD FAITH WITH A LABOR ORGANIZATION AS REQUIRED BY THIS CHAPTER;

[ ] (6) TO FAIL OR REFUSE TO COOPERATE IN IMPASSE PROCEDURES AND IMPASSE DECISIONS AS REQUIRED BY THIS CHAPTER;

[X] (7) TO ENFORCE ANY RULE OR REGULATION(OTHER THAN A RULE OR REGULATION IMPLEMENTING SECTION 2302 OF THIS TITLE)WHICH IS IN CONFLICT WITH ANY APPLICABLE COLLECTIVE BARGAINING AGREEMENT IF THE AGREEMENT WAS IN EFFECT BEFORE THE DATE THE RULE OR REGULATION WAS PRESCRIBE ; OR

[X] (8) TO OTHERWISE FAIL OR REFUSE TO COMPLY WITH ANY PROVISION OF THIS CHAPTER.

**6C. PROHIBITED PERSONNEL PRACTICE (SEE ARTICLE 7,SEC.2 OF THE NATIONAL AGREEMENT)**
5 USC 7116(a) 1,5,7,8.

**7. STATEMENT OF THE CIRCUMSTANCES GIVING TO RISE TO THE GRIEVANCE (PROVIDE NATURE OF THE INCIDENT, PERSONS INVOLVED, TIME, DATE, PLACE, ETC.)**

See Attachments A and B

**8. ACTION REQUESTED**

PROVIDED IN ATTACHMENT A

**9. EMPLOYEE SIGNATURE**     DATE 2/21/2017

**10. NTEU REPRESENTATIVE SIGNATURE**     DATE 2/21/2017

NTEU - 000146

## Attachment A

Since, on or about December 6, 2016 and in a continuing manner, the Agency has **unilaterally implemented a policy that prevents** and/or blocks CBP Officers **(Pedestrian/Vehicle Primary/Secondary) from** processing subjects who seek asylum or **express credible fear of persecution or torture** in their native country. This intentional **blocking of subjects also prevents CBP Officers** from properly screening them for any **potential National security and/or terrorist threats** to the United States. This Agency **practice also prevents any type of recording system** for asylum seeker's contact with **CBP Officers at the Hidalgo, Texas Ports of Entry** while physically presenting **themselves for inspection. CBP Directive 3320-002A, CBP Directive 3340-040A,** Current Immigration and Nationality Act (INA). **(See Attachment B)**

**Example, but not limited to:** While conducting his inspectional duties alongside CBP **Officer David Atkinson (Witness)** during his 0600 to 0800 overtime assignment on **12/31/2016, CBP Officer Josh Garza referred OTM (Other than Mexican) asylum** seekers to CBP secondary for processing. CBP Supervisor Marco Solis and contract **Security Guard (Lara) then escorted the referred asylum seekers back to Mexico** without secondary system screening or evaluation (direct radio communication). PCS **employees stated that this practice is the result of an ongoing order from management** for OTM Asylum seekers attempting to make entry into the United States via the **Hidalgo, Texas Ports of Entry. CBP Supervisor Marco Solis and other Agency** Representatives informed CBPO David Atkinson along with witnesses (CBPO Clough, **CBPO Garza) that the Agency was not processing OTMs for asylum purposes and that** they are to be returned to Mexico, or the duty Supervisor was to be contacted who **would then escort subjects out of the FIS and no OTM asylum seekers would be** referred for secondary processing (only metered reports for internal numbers/stats).

This also includes the following:

1] Reducing the safety environment for employees at the passenger and secondary processing areas by not evaluating or screening persons who are other than Mexican (OTM) Nationals seeking political asylum (e.g., but not limited to: Eritreans, El Salvadorians, etc.) as lawfully mandated and past practiced. Private security guards are instructed by the Agency to cut off and prevent certain asylum seekers from entering the building, they are then instructed to contact the duty CBP Supervisor and both the security guards and Supervisory CBP Officers deny entry and any subsequent secondary processing of individuals before escorting them back to Mexico.

2] Continuation of preventing/blocking CBP Officers from referring all asylum seekers into secondary for evaluation and processing. As Officers are ordered by Agency Officials to transport and transfer certain asylum seekers (OTMs) from one city (Pharr, Texas) to another (Hidalgo, Texas) without any proper secondary screening and having them directly escorted back to Mexico without the following checks: health or national security and/or terrorist threats. (12/6/2016-CBP Supervisors Marco Solis, Efrain Solis,

NTEU - 000147

and Ismael Hernandez; CBP Officers Jessica Ibarra, Abraham Pena, Sylvia Guerra and Eric Clough).  8 USC 1158(a)(1), 8 USC 1225(b)(1)(A)(ii), and 8 USC 235 (B).

3] Failing to provide health screening or job hazard plans for employees who come in contact with overnight ill or non-ill asylum seekers in the Passport Control Secondary (PCS) areas.  In fact, certain asylum seekers are told by Agency Officials (Acting Chief Jose Uribe) not to disclose their illnesses to any person or Officer, as they would be returned to their country.  This in turn creates an unsanitary and unhealthy working environment for employees in the passenger secondary rotational work sites, as the PCS areas have a continuous and lingering strong odor of human waste in the air.

4] Implementation of a policy and procedure that places officers in jeopardy of violating Federal Law, rules and regulations pertaining to asylum seekers; which threatens a CBP Officer's employment, credibility and integrity with the U.S. Government.

5] As a result of the Agency's implantation of this practice, Asylum seekers have been emotionally traumatized and employees have been placed in a position that can result in undue physical and/or emotional stress.

## Remedy

The Union is requesting that all employees who were not allowed to process asylum seekers due to the Agency's orders and unilateral practices be exonerated from all wrongdoing as mandated by the National Collective Bargaining Agreement (NCBA). The Union requests that health checks be performed on asylum seeking detainees prior to their extended stay during processing.  The Union requests that a Job Hazards Plan be implemented for the affected work environments that detain and handle temporarily detained individuals in the A, B, and C buildings.  The Union requests back-pay for all mandated work that would have been conducted if the asylum processing, transportation, care and detainment procedures would have been followed pursuant to CBP Mandates, Law, rule and regulations.  The Union requests additional cleanings of the inspectional sites, back pay for all work conducted by private security Officers that would have been otherwise been mandated to be performed by a CBP Officer in the facilitation and handling of blocked/denied asylum seekers.  The Union requests that the Agency abide by all local and National level agreements.  The Union requests back pay compensation for all qualified and available affected employees for all lost monies and work assignments in whatever form they may appear (Overtime, Premium Pay, Night Pay, Call-Back and Commutes) for any past, current or future lost overtime assignment(s) and all attorney fees and other awards deemed necessary by a third party. This compensation is for all affected time periods to include thereafter arbitration if needed.  The Union requests that the Agency immediately comply with the National Collective Bargaining Agreement (NCBA), Federal laws, rules and regulations

# Attachment B

NTEU - 000149

CUSTOMS DIRECTIVE

CANCELLED BY OFFICE OF FIELD OPERATIONS, ADMISSIBILITY AND
PASSENGER PROGRAMS, 12/14/09

ORIGINATING OFFICE: FO:P

DISTRIBUTION: S-01
CUSTOMS DIRECTIVE NO. 3320-002A
DATE: JUNE 8, 1999
SUPERSEDES: 3320-002, 12/2/88
REVIEW DATE: JUNE 2001

SUBJECT:  REQUESTS BY PERSONS TO REMAIN IN UNITED STATES (E.G.,
POLITICAL ASYLUM)

1     PURPOSE. To inform Customs officers of the proper procedures to follow when
a person (including a crewmember) arriving in the United States informs a Customs
officer that he or she wishes to remain in the United States.

2     POLICY.

2.1    This directive applies to all persons arriving in the United States, regardless of
nationality or means of conveyance, including those on foot.

2.2    The United States is bound by both the Protocol on Refugees and the
Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or
Punishment and, except under extraordinary circumstances, may not return persons to
countries where they may face persecution or torture. United States statutes and
regulations implementing these international obligations require that only officers
specifically trained and experienced in asylum law, country conditions, and related
matters make the determination whether the person should be returned to another
country. The U.S. Customs Service, therefore, defers to the Immigration and
Naturalization Service to make such determinations.

3     AUTHORITIES/REFERENCES. 19 USC 1433; 19 USC 1436; 19 USC 1461; 19
USC 1467;19 USC 1496;19 USC 1582; 46 USC App. 91;19 CFR Part 148 ;19 CFR
4.60(a) and 122.61-122.65.

4     RESPONSIBILITIES.

4.1    Principal Field Officers, to include Port Directors, are responsible for developing
and establishing procedures to ensure proper implementation of this Directive.

4.2    Supervisors shall ensure that inspectional personnel are familiar with the
procedures outlined in this directive and that all guidelines are followed.

NTEU - 000150

## 5   PROCEDURES.

5.1   When a person arriving in the United States and regardless of the means of transport makes known to a Customs officer a desire to remain in the United States, it shall be assumed by the Customs officer that the person is seeking asylum in the United States. The person does not have to use the specific terms "asylum" or "persecution" to justify such an assumption by the Customs officer. The person may not say anything at all, but his non-verbal actions or body language may make the person's intention or fear of return obvious to the Customs officer. Customs officers are not to make judgement calls concerning such fear based on country of origin, credibility of the person, or possible strength of the claim. When a person expresses such a fear or desire to remain in the United States, further action shall be taken as follows:

5.1.1   If the Customs officer is working with a U.S. Immigration and Naturalization Service (INS) officer, the person seeking to remain in the United States shall be immediately turned over to the INS officer and the Customs officer shall forthwith notify the Port Director. The Port Director shall notify the Director, Field Operations, the Associate Chief Counsel, and the HQ Situation Room (1-877-748-7656), which shall notify the appropriate Customs officers at Headquarters, including the Assistant Commissioner (Field Operations).

5.1.2   If no U.S. Immigration and Naturalization Service (INS) officer is immediately available, the Customs officer shall detain the person seeking to remain in the United States under 19 USC 1582 (see also, 19 USC 1433, 1436, 1461, 1467, and 1496 and 19 CFR Part 148) and notify the nearest INS office or the appropriate INS office having jurisdiction over the location where the inspection is taking place that a person has expressed a fear of persecution or desire to remain in the United States. Protective Custody should be provided the person seeking to remain in the United States and, if necessary, reasonable force may be used to thwart attempts at forcible repatriation until an INS officer has had an opportunity to question the person. If, at a small land border port, an INS officer is unable to respond, the person may be directed to the nearest INS-staffed port.

5.2   The Customs officer shall obtain the name, nationality, date and place of birth, occupation, and documents of the person seeking to remain in the United States; the circumstances and location of the incident; and any other pertinent information. The Customs officer shall immediately call the Port Director and the Customs officer's immediate supervisor. If the Port Director and the Customs officer's immediate supervisor are not available, the Customs officer shall notify Sector. The Customs officer shall explain the situation to the Port Director, immediate supervisor, or responsible official in Sector and shall provide that person with the information he or she has obtained. The Port Director or other responsible official notified shall notify the INS District Director and arrange for the transfer of the case to the INS as soon as possible. The Customs Port Director shall ensure that all other appropriate Federal agencies (usually the Department of State and the Coast Guard) are immediately

NTEU - 000151

advised of the situation so that action can be properly coordinated. The Customs Port Director shall also notify the Director, Field Operations, and the Headquarters Situation Room (1-877-748-7666). Headquarters will be responsible for ensuring that the U.S. Secret Service Intelligence Division Duty Desk Supervisor, (202) 435-5000, is notified of the incident.

5.3     If the person seeking to remain in the United States is on board a vessel or aircraft and the master of the vessel or the commander of the aircraft refuses to permit the person to leave the vessel or aircraft, clearance (see 46 USC App. 91 and 19 CFR 4.60(a) and 122.61-122.65) shall be withheld pending resolution of the matter. The Headquarters Situation Room (1-877-748-7666) shall be contacted immediately and they shall contact the appropriate Customs officials at Headquarters.

6       **MEASUREMENT.**   The number of requests by persons to remain in the United States reported to the Headquarters Situation Room.

Commissioner of Customs

NTEU - 000152



**U.S. Citizenship** and
**Immigration** Services

# Asylum



**ALERT: Asylum Division Affirmative Asylum
Scheduling Bulletin**

Every year people come to the United States seeking protection because they have
suffered persecution or fear that they will suffer persecution due to:

- Race
- Religion
- Nationality
- Membership in a particular social group
- Political opinion

If you are eligible for asylum you may be permitted to remain in the United States. To
apply for Asylum, file a Form I-589, Application for Asylum and for Withholding of
Removal, within one year of your arrival to the United States. There is no fee to apply for
asylum.

You may include your spouse and children who are in the United States on your
application at the time you file or at any time until a final decision is made on your case.
To include your child on your application, the child must be under 21 and unmarried. For
more information see our Form I-589, Application for Asylum and for Withholding of
Removal page.

## Permission to Work in the United States

You cannot apply for permission to work (employment authorization) in the United States
at the same time you apply for asylum.

You may apply for employment authorization if:

- 150 days have passed since you filed your complete asylum application, excluding
  any delays caused by you (such as a request to reschedule your interview) AND
- No decision has been made on your application

NTEU - 000153

If you are granted asylum you may work immediately. Some asylees choose to obtain Employment Authorization Documents (EADs) for convenience or identification purposes, but an EAD is not necessary to work if you are an asylee.

**To apply for employment authorization, you must file a Form I-765, Application for Employment Authorization. There is no fee to apply for your first EAD if you have a pending asylum application or if you have been granted asylum. For more information see our Form I-765, Application for Employment Authorization page.**

**See the 180-Day Asylum EAD Clock Notice (PDF, 338 KB) and the ABT Settlement Agreement for further information.**

## Bringing Your Family to the United States

**If you are granted asylum you may petition to bring your spouse and children to the United States by filing a Form I-730, Refugee/Asylee Relative Petition. To include your child on your application, the child must be under 21 and unmarried.**

**You must file the petition within two years of being granted asylum unless there are humanitarian reasons to excuse this deadline. There is no fee to file this petition. For more information see our Form I-730, Refugee/Asylee Relative Petition" page.**

## Filing for Permanent Residence (Green Card)

**You may apply for a green card one year after being granted asylum. To apply for a green card, file a Form I-485, Application to Register Permanent Residence or to Adjust Status. You must submit a separate I-485 application packet for yourself and, if applicable, for** each family member who received **derivative asylum based on your case.**

For more information about green cards, see our **Green Cards for an Asylee** page. For more information about asylum, see our **Questions & Answers: Asylum page.**



Last Reviewed/Updated: 08/06/2015

NTEU - 000154

# Step 1 Grievance

NTEU - 000155



Chapter 149 Hidalgo, Texas

January 19, 2017

**Mr. Carlos J. Gonzalez**
**9901 South Cage Blvd**
**Pharr, Texas 78577**
956-227-7168
9562832060
carlos.javier.gonzalez.cbp.dhs.gov

Dear Sir,

Pursuant to the current National CBP/NTEU National Bargaining Agreement (NBCA), the Union is requesting a Step 1 grievance meeting with the Agency concerning:

(Article 2- Section I) The Agency's failure to exercise the referenced authorities or discretion fairly and consistently so as to avoid adverse impact to the employee's working conditions, responsibilities, integrity and creditability with the position they hold with the US Government.

(Article 33- Sections 1 and 4A) The Agency also failed to initiate prompt and appropriate action to correct unsafe conditions whenever they are found to exist and raised. In which the Agency is required to make every reasonable effort, consistent with the mission of the Service and the inherent hazards of the work to be performed, to provide and maintain safe and healthful working conditions when and where it is within its authority and control to do so.

(Article 3- Section 3, Article 31- Section 4A and B) Therefore, the Agency officials failed to conduct themselves in a professional and businesslike manner, characterized by mutual courtesy, in their day to day working relationships when, (Article 26-Section 3.A) the Agency unilaterally implemented without notice changes in operational or administrative procedures or of any new initiative affecting an employee's working conditions, lawful orders; by acting in the following capricious and malicious manner:

**Brief Summary:**

Since, on or about 12/6/2016 and in a continuing manner, the Agency has unilaterally implemented a policy that prevents and/or blocks CBP Officers (pedestrian primary/secondary) from processing political asylum seekers and assessing their possible persecution or torture, and their potential

NTEU - 000156

national security and/or terrorist threats to the United States. To include, recording asylum seeker's contact with CBP Officers at the Hidalgo, Ports of Entry while physically presenting themselves for inspection. CBP Directive 3320-002A, CBP Directive 3340-040A, current Immigration and Nationality Act (INA).

**Example, but not limited to:** CBPO Josh Garza referred Other Than Mexican (OTM) Asylum seekers during his 6am to 8am overtime assignment on 12/31/2016 while working with CBPO David Atkinson. CBP Supervisor Marco Solis and Private Security Guards (LARA) escorted the referred asylum seekers back to Mexico without secondary system screening or evaluation (direct radio communication) PCS employees stated that this was the running order from management for OTM asylum seekers. CBP Supervisor Marco Solis and other Agency representatives informed CBPO David Atkinson with witnesses (Clough, Garza) that the Agency was not processing OTMs for asylum purposes and that they are to be returned to Mexico, or call the supervisor and they would escort them out of the building, that they are not being referred for processing, just metered reports internally for numbers.

In ladder, this also includes the following:

3] Reducing the safety environment for employees at the passenger and secondary sites by not evaluating or screening persons who are Other Than Mexicans (OTM) seeking political asylum (e.g., but not limited to Africans, El Salvadorians,..) as lawfully mandated and past practiced. Private Security Guards are instructed by the Agency to stop certain asylum seekers from entering the building, have them call a CBP Supervisor and; both Supervisors and security guards deny entry and processing and escort them back to the path to Mexico.

4] Continuation of preventing/ blocking CBP Officers from referring all asylum seekers into secondary for evaluation and processing. As officers are order by Agency officials to transport and transfer certain asylum seekers (OTM's) from one city (Pharr, Texas) to another (Hidalgo, Texas) without screening and having them directly forced back into Mexico without the following checks: health or national security and/or terrorist threats. (12/6/2016-CBP Supervisors Marco Solis, Efrain Gonzalez, Ismael Hernandez; CBP Officer's Jessica Ibarra, Abraham Pena, Sylvia Guerra and Eric Clough). 8 USC 1158(a)(1), 8 USC 1225(b)(1)(A)(ii), 8 USC 235(B).

5] Failing to provide health screening or hazard plans for employees who come in contact with overnight ill or non-ill asylum seekers in the PCS areas. In fact, certain asylum seekers are told by Agency officials (Uribe) not to disclose their illnesses to any person, as they would be returned to their country. This in turn creates and unsanitary and unhealthy working environment for employees in the passenger secondary rotational sites, as the PCS areas have a continuous strong odor of human waste lingering in the air.

6] Implementation of a policy and procedure that places officers in jeopardy of violating federal law, rules and regulations pertaining to asylum seekers; which threatens a CBP Officer's employment, credibility and integrity with the US Government.

7] Asylum seekers were emotional traumatized, employees were stressed out by the practices placed by the agency.

NTEU - 000157

**Remedy:**

The Union is requesting that all employees that were not allowed to process asylum seekers due to the Agency's orders and unilateral practices be exonerated from all wrong doing as mandated by the NCBA. The Union requests that health checks be completed on asylum seeking detainees prior to their extended stay during processing. The Union requests that a Job Hazards Plan be implemented for the affected work environments that detain and handle temporarily detained individuals in the A, B, and C buildings. The Union requests back-pay for all mandated work that would have been conducted if the asylum processing, transportation, care and detainment procedures would have been followed pursuant to CBP Mandates, law, rule and regulations. Additional Cleaning of inspectional sites, back pay for all work conducted by Private Security Officers that would have otherwise been mandated to be performed by a CBP Officer in the facilitation and handling of blocked/denied asylum seekers. All attorney fees and all other remedies deemed appropriate by a third party.

Please provide a proposed meeting date for this meeting by email. Please respond electronically at david.atkinson@cbp.dhs.gov and for any additional information concerning this matter. You may also reach me at 956-227-2222.

Respectfully Submitted,

**Mr.** David Atkinson
President- NTEU Chapter 149
Hidalgo, Texas.

NTEU - 000158

**Remedy:**

The Union is requesting that all employees that were not allowed to process asylum seekers due to the Agency's orders and unilateral practices be exonerated from all wrong doing as mandated by the NCBA. The Union requests that health checks be completed on asylum seeking detainees prior to their extended stay during processing. The Union requests that a Job Hazards Plan be implemented for the affected work environments that detain and handle temporarily detained individuals in the A, B, and C buildings. The Union requests back-pay for all mandated work that would have been conducted if the asylum processing, transportation, care and detainment procedures would have been followed pursuant to CBP Mandates, law, rule and regulations. Additional Cleaning of Inspectional sites, back pay for all work conducted by Private Security Officers that would have otherwise been mandated to be performed by a CBP Officer in the facilitation and handling of blocked/denied asylum seekers. All attorney fees and all other remedies deemed appropriate by a third party.

Please provide a proposed meeting date for this meeting by email. Please respond electronically at david.atkinson@cbp.dhs.gov and for any additional information concerning this matter. You may also reach me at 956-227-2222.

Respectfully Submitted,

Mr. David Atkinson
President- NTEU Chapter 149
Hidalgo, Texas.

NTEU - 000159