1  MAYER BROWN LLP
     Matthew H. Marmolejo (CA Bar No. 242964)
2      *mmarmolejo@mayerbrown.com*
   350 S. Grand Avenue
3  25th Floor
   Los Angeles, CA 90071-1503
4    Ori Lev (DC Bar No. 452565)
     (*pro hac vice*)
5      *olev@mayerbrown.com*
     Stephen M. Medlock (VA Bar No. 78819)
6    (*pro hac vice*)
       *smedlock@mayerbrown.com*
7  1999 K Street, N.W.
   Washington, D.C. 20006
8  Telephone:  +1.202.263.3000
   Facsimile:   +1.202.263.3300
9
   SOUTHERN POVERTY LAW CENTER
10   Melissa Crow (DC Bar No. 453487)
     (*pro hac vice*)
11     *melissa.crow@splcenter.org*
   1101 17th Street, N.W., Suite 705
12 Washington, D.C. 20036
   Telephone: +1.202.355.4471
13 Facsimile: +1.404.221.5857

14 *Additional counsel listed on next page*
   *Attorneys for Plaintiffs*

15                **UNITED STATES DISTRICT COURT**

16              **SOUTHERN DISTRICT OF CALIFORNIA**

17

18 | Al Otro Lado, Inc., *et al.*, | Case No.:  17-cv-02366-BAS-KSC |
   |---|---|
19 | Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO EXCLUDE DEFENDANTS' PURPORTED EXPERT TESTIMONY** |
20 | v. | |
21 | Chad F. Wolf,[1] *et al.*, | |
22 | Defendants. | |
23 | | ***REDACTED PUBLIC VERSION*** |
24 | | **Hearing Date: October 12, 2020** |
25 | | **NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |
26

27 ─────────────────
   [1] Acting Secretary Wolf is automatically substituted for former Acting Secretary
28 McAleenan pursuant to Federal Rule of Civil Procedure 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
   Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
   *bazmy@ccrjustice.org*
   Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
   *gschwarz@ccrjustice.org*
   Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
   *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
   Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
   *sarah.rich@splcenter.org*
   Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
   *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
   Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
   *kwalters@immcouncil.org*
1331 G St. N.W., Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION .................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................ 2

      A.    "Operational Capacity" ......................................................... 2

      B.    Defendants' Experts Admit That Operational Capacity Cannot
            Be Calculated and Cannot Justify Turnbacks on a Specific Day ........ 4

      C.    Defendants' Expert Disclosures ............................................. 6

      D.    Defendants Admit That They Directed Their "Experts" To
            Review Documents and Data to Come to Their Conclusions ............ 6

      E.    Defendants Attempt to Add New Opinions and Conclusions To
            Their Rule 26(a)(2)(C) Disclosures ....................................... 6

III.  ARGUMENT ....................................................................................... 7

      A.    Defendants' Expert Testimony Should Be Excluded for Failure
            To Comply with Federal Rule of Civil Procedure 26(a)(2)(B) ........... 7

      B.    Defendants' Expert Testimony Flunks the *Daubert* Test ................. 11

            i.     This Court Should Exercise Its Gatekeeping Duty To
                   Exclude Litigation-Driven Junk Science .......................... 11

            ii.    Defendants' Experts Have No Methodology for
                   Calculating Operational Capacity ................................. 12

            iii.   Defendants' Expert Reports Are Based on Unreliable
                   Counterfactual Assumptions ....................................... 17

      C.    Even If Defendants' Expert Testimony Is Admitted, It Should
            Be Given No Weight Whatsoever .......................................... 18

IV.   CONCLUSION ................................................................................. 21

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Abarca v. Merck & Co.*,
  2010 WL 4643642 (E.D. Cal. 2010) .................................................................12

5

6

*AngiScore, Inc. v. TriReme Med., Inc.*,
  87 F. Supp. 3d 986 (N.D. Cal. 2015) ...............................................................12

7

8

*Att'y Gen. of Okla. v. Tyson Foods, Inc.*,
  565 F.3d 769 (10th Cir. 2009) .........................................................................12

9

*Beane v. Utility Trailer Mfg. Co.*,
  2013 WL 1344763 (W.D. La. 2013) ...................................................................8

10

11

*Beech Aircraft Corp. v. United States*,
  51 F.3d 834 (9th Cir. 1995) .............................................................................12

12

13

*Carbajal v. Lucio*,
  2016 U.S. Dist. LEXIS 174331 (D. Colo. 2016) ..............................................14

14

*Cervantes v. Zimmerman*,
  2019 WL 1598219 (S.D. Cal. 2019) (Bashant, J.)........................................9, 10

15

16

*CFM Commc'ns, LLC v. Mitts Telecasting Co.*,
  424 F. Supp. 2d 1229 (E.D. Cal. 2005)............................................................12

17

*Daubert v. Merrell Dow Pharm., Inc.*,
  43 F.3d 1311 (9th Cir. 1995) ...........................................................................17

18

19

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993)..............................................11, 12, 13, 14, 16, 17, 18

20

21

*Deutsch v. Novartis Pharm. Corp.*,
  768 F. Supp. 2d 420 (E.D.N.Y. 2011) ..............................................................14

22

*Diviero v. Uniroyal Goodrich Tire Co.*,
  114 F.3d 851 (9th Cir. 1997) ...........................................................................18

23

24

*Downey v. Bob's Discount Furniture Hldgs, Inc.*,
  633 F.3d 1 (1st Cir. 2011)...................................................................................8

25

26

MEMO OF P. & A. IN SUPP. OF
PLTFS' MOT. TO EXCLUDE

27

28

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ................................................................12

*Fail-Safe, LLC v. A.O. Smith Corp.*,
    744 F. Supp. 2d 870 (E.D. Wis. 2010)...................................................13

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)...............................................................................13

*Goodman v. Staples The Office Superstore, LLC*
    664 F.3d 817 (9th Cir. 2011) ........................................................8, 9, 10

*GPNE Corp. v. Apple, Inc.*,
    2014 WL 1494247 (N.D. Cal. 2014) ...............................13, 14, 15, 16

*Hoffman v. Constr. Protective Servs., Inc.*,
    541 F.3d 1175 (9th Cir. 2008) ................................................................9

*I.V. v. Wenatchee Sch. Dist. No. 246*,
    342 F. Supp. 3d 1083 (E.D. Wash. 2018)..............................................13

*Kennedy v. Allied Mut. Ins.*,
    952 F.2d 262 (9th Cir. 1991) ..................................................................1

*Krause v. Hawaiian Airlines, Inc.*,
    2019 WL 2598770 (E.D. Cal. 2019)......................................................10

*Krouch v. Wal-Mart Stores, Inc.*,
    2014 WL 5463333 (N.D. Cal. 2014) .......................................................1

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)...............................................................................13

*LaShip, LLC v. Hayward Baker, Inc.*,
    296 F.R.D. 475 (E.D. La. 2013)..............................................................8

*Lust By & Through Lust v. Merrell Dow Pharm. Inc.*,
    89 F.3d 594 (9th Cir. 1996) ..................................................................11

*Marmo v. Tyson Fresh Meats, Inc.*,
    457 F.3d 748 (8th Cir. 2006) ................................................................17

*Metavante Corp. v. Emigrant Sav. Bank*,
    619 F.3d 748 (7th Cir. 2010) ................................................................12

*Meyers v. Nat'l R.R. Passenger Corp.*,
    619 F.3d 729 (7th Cir. 2010) ..................................................................8

*Mintel Int'l Grp., Ltd. v. Neergheen*,
    636 F. Supp. 2d 677 (N.D. Ill. 2009) ....................................................16

MEMO OF P. & A. IN SUPP. OF
PLTFS' MOT. TO EXCLUDE

*Navelski v. Int'l Paper Co.*,
  244 F. Supp. 3d 1275 (N.D. Fla. 2017)........................................................13

*Ollier v. Sweetwater Union High Sch. Dist.*,
  768 F.3d 843 (9th Cir. 2014) ......................................................................18

*Open Text, S.A. v. Box, Inc.*,
  2015 WL 349197 (N.D. Cal. 2015) .......................................................13, 14

*R & R Sails, Inc. v. Ins. Co. of Pa.*,
  673 F.3d 1240 (9th Cir. 2012) ....................................................................10

*Richter v. Hickman*,
  578 F.3d 944 (9th Cir. 2009) ......................................................................12

*Schilder Dairy, LLC v. DeLaval, Inc.*,
  2011 WL 2634251 (D. Idaho 2011) ............................................................12

*Seaboard Lumber Co. v. United States*,
  308 F.3d 1283 (Fed. Cir. 2002)...................................................................12

*In re Silicone Gel Breast Implants Prods. Liab. Litig.*,
  318 F. Supp. 2d 879 (C.D. Cal. 2004) ........................................................12

*Tajonera v. Black Elk Energy Offshore Ops., L.L.C.*,
  2016 U.S. Dist. LEXIS 73985 (E.D. La. 2016) ..........................................14

*In re Toyota Motor Corp. Unintended Acceleration Prods. Liab. Litig.*,
  978 F. Supp. 2d 1053 (C.D. Cal. 2013) ......................................................16

*United States v. Flores*,
  901 F.3d 1150 (9th Cir. 2018) ....................................................................12

*United States v. Rushing*,
  388 F.3d 1153 (8th Cir. 2004) ......................................................................1

*Volk v. United States*,
  57 F. Supp. 2d 888 (N.D. Cal. 1999) ..........................................................12

*Wong v. Regents of Univ. of Cal.*,
  410 F.3d 1052 (9th Cir. 2005) ....................................................................10

**Other Authorities**

Fed. R. Civ. P. 26(a) .........................................................................................9, 10

Fed. R. Civ. P. 26(a)(2)(B) .........................................................2, 6, 7, 8, 9, 10, 11

Fed. R. Civ. P. 26(a)(2)(C) .............................................................2, 6, 7, 8, 9, 14

MEMO OF P. & A. IN SUPP. OF
PLTFS' MOT. TO EXCLUDE

Fed. R. Civ. P. 26(a)(2)(C)(i) ................................................................................14

Fed. R. Civ. P. 26(a)(2)(C) ....................................................................................14

Fed. R. Civ. P. 37(c) ...............................................................................................9

Fed. R. Civ. P. 37(c)(1) ...........................................................................................9

Fed. R. Evid. 702 ...........................................................11, 12, 14, 16, 17, 18

Fed. R. Evid. 702(b) ..............................................................................................17

MEMO OF P. & A. IN SUPP. OF
PLTFS' MOT. TO EXCLUDE

## I.    INTRODUCTION

Defendants have a problem.  Their sole explanation for turning back asylum seekers at ports of entry ("POEs") on the U.S.-Mexico border is that the turnbacks were justified by limited "operational capacity" at those POEs.  Dkt. 283 at ¶ 7.  But operational capacity is not a metric that Defendants use, apart from their desperate attempts to justify in this litigation a policy that they privately admit is illegal.  *See* Ex. 1 ("[CBP] acknowledged that [CBP's] unilateral work policies broke CBP mandates, Federal immigration rules and Laws" by implementing the turnback policy); Ex. 2 at 125:2-15 (multiple CBP officials █████████████████████ ██████████████████████████████████████); Ex. 3 at 161:8-10 (CBP switched to using █████████████████████████████████).[2]

Three 30(b)(6) witnesses—Mariza Marin, Rodney Harris, and Samuel Cleaves—previously testified on behalf of Defendants that operational capacity has no official definition, cannot be tracked or calculated, and that no one can reconstruct what the operational capacity of a POE was at any given time.  Now, remarkably, Defendants have asked *the same* witnesses to don expert's clothing and testify that operational capacity can be defined and calculated.  But contradicting prior sworn testimony is no basis for an expert report or summary judgment.  *See Kennedy v. Allied Mut. Ins.*, 952 F.2d 262, 266 (9th Cir. 1991) ("[I]f a party who has been examined at length on deposition could raise an issue of fact by simply submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment."); *Krouch v. Wal-Mart Stores, Inc.*, 2014 WL 5463333, at *6 (N.D. Cal. 2014) ("Expert testimony should not be admitted when it is speculative, it is not supported by sufficient facts, or the facts of the case contradict or otherwise render the opinion unreasonable.") (quoting *United States v. Rushing*, 388 F.3d 1153, 1156 (8th Cir. 2004)).

---

[2] "Ex." refers to the exhibits to the contemporaneously filed declaration of Stephen M. Medlock.

MEMO OF P. & A. IN SUPP. OF
PLTFS' MOT. TO EXCLUDE

1    Defendants' expert testimony should be excluded for several reasons.

2    **First**, Defendants failed to disclose this testimony in a written expert report

3    as required by Federal Rule of Civil Procedure 26(a)(2)(B).  In essence, Defendants

4    are attempting to smuggle in opinions via brief Rule 26(a)(2)(C) summaries when

5    the opinions of Defendants' purported experts were generated by an attorney-

6    directed document and data review and should have been disclosed in a written

7    expert report under Federal Rule of Civil Procedure 26(a)(2)(B).

8    **Second**, Defendants' experts put forward no methodology for calculating

9    "operational capacity."  They never link the general operational limitations of POEs

10   to limitations on the number of asylum seekers that can be processed and inspected.

11   Defendants do argue that POEs' capacity to process and inspect asylum seekers

12   **might** be impacted by certain factors.  *See* Ex. 4 at 2.  But speculation is not a

13   substitute for a reliable methodology.

14   **Third**, even if Defendants' justifications were relevant, Defendants' experts

15   base their proffered testimony on an untenable counterfactual assumption.  They

16   assume that the "operational capacity" of a port can be defined and calculated.  But

17   Defendants' own experts admitted in their depositions that they have no reliable

18   basis or data for determining the "operational capacity" of a POE, because there is

19   no definition of "operational capacity" and it is not a measurable metric.

20   **Finally**, if this Court admits Defendants' proposed expert testimony in error,

21   it should be accorded no weight. Courts have long held that a party cannot

22   manufacture a disputed material fact by contradicting its witnesses' sworn

23   deposition testimony or putting forward an expert to contradict the undisputed facts.

24   That is all that Defendants have done here.

25   ## II.    FACTUAL BACKGROUND

26   ### A.    "Operational Capacity"

27   "Operational capacity" is a made-up term with no fixed definition or means

28   of measurement that Defendants adopted partway through this litigation in an

MEMO OF P. & A. IN SUPP. OF
PLTFS' MOT. TO EXCLUDE

1    attempt to justify their illegal conduct. Defendants have not issued ██████

2    ██████████████████████████████████████████████████████ and

3    they cannot link ███████████

4    ████████████████████████████████ *See, e.g.*, Ex. 5 at Interrog. 25 ("

5    ███████████████████████████████████████████████████████████

6    ███████████████████████████████████████████████████████████

7    ██████████████████."); Ex. 6 at 68:8-71:24; Ex. 3 at 161:20-162:12; Ex. 7 at

8    50:4-51:7. In fact, "████████████████████████████████████████████

9    ███████████████████████████████████████████████████████████

10   ██████████████████. Ex. 3 at 181:22-182:4; *see also* Ex. 8 at 140:19-21

11   ███████████████████████████████████████████████████████████

12   ██████████."); Ex. 9 at 56:21-57:20, 60:4-23.

         There is a simple reason for this shift from detention capacity to "operational

     capacity" as a purported metric for determining when a POE could justify turning

     back asylum seekers.[3] The detention capacity figures that CBP *actually calculates*

     *and tracks on a daily basis* and that CBP's leadership relies on when making

     operational decisions show that ████████████████████████. *See* Ex. 10

     at ¶¶ 22, 61-76. Moreover, contemporaneous reports showed that █████████

     ███████████████████████████████████████████████████████. *See*

     Ex. 11; Ex. 12; Ex. 13; Ex. 14; Ex. 15. Once POEs were empowered to

     ██████████████████████████████, the ports began ███████████████

     ████████████████. *See, e.g.*, Ex. 16 at 453; *see also* Ex. 17 at 742 (reporting

     that San Ysidro POE had a "██████████████████████████████."); Ex.

---

[3] As explained in Plaintiffs' concurrently filed Motion for Summary Judgment, Plaintiffs do not concede that there is any proper justification for turnbacks under the Immigration and Nationality Act ("INA") or the Administrative Procedure Act ("APA"). However, should the Court disagree with Plaintiffs' main arguments under the INA and APA, Plaintiffs advance alternative APA arguments that Defendants' stated justification for the Turnback Policy was pretextual and that their real justifications were illegal.

18 at 408 (" ███████████████████████████████████████████

███████████████████ [.]"); Ex. 19 (CBP sent guidance regarding "█

████████████████████████ .").

**B.    Defendants' Experts Admit That Operational Capacity Cannot Be Calculated and Cannot Justify Turnbacks on a Specific Day**

Each of Defendants' three proffered experts admitted under oath that there is no way to calculate the operational capacity of a POE.

***Samuel Cleaves*** admitted that, although the El Paso POE supposedly distinguishes between operational capacity and detention capacity, the terms "operational capacity" and "detention capacity" are not defined. *See* Ex. 7 at 55:19-61:21. Significantly, Mr. Cleaves testified that, "because [operational capacity] is a culmination of multiple factors," it "would be[] impossible to track." *Id.* at 66:10-17. Therefore, determining whether limits on a POE's operational capacity justified turnbacks would be impossible, because, as soon as "you wrote [the operational capacity of the POE] down, it would be different after you get done writing it down." *Id.* at 66:10-17 (noting that the explanation was a slight exaggeration).

***Rodney Harris*** testified that CBP has "never had a calculation for . . . operational capacity." Ex. 8 at 107:4-7. Mr. Harris admitted that CBP began using "operational capacity" as a metric in June 2018—after this litigation was filed. *Id.* at 137:25-138:12. Mr. Harris also explained that, ███████████████████

████████████████████████████████████████████████████████

███████████████████████████. *Id.* at 140:19-23; *see also* *id.* at 292:13-15 (admitting that "there is no official list of factors that go into operational capacity").

***Mariza Marin*** admitted that the supposed distinction between physical capacity and "operational capacity" is not written down in any form. *See* Ex. 6 at 68:8-72:25. Ms. Marin acknowledged that CBP offers no training on "operational capacity." *Id.* at 77:21-78:1. She explained that CBP has never defined the term

"operational capacity" in Congressional testimony or in public statements. *Id.* at 78:3-15, 79:13-19. Nor has anyone at the San Ysidro POE ever written down the factors that it considers when determining the "operational capacity" of the POE. *Id.* at 111:13-112:13. Ms. Marin also admitted the ████████████████████████ ████████████████████████████████████████████ ████████████████. *Id.* at 102:3-111:11.

In the end, Ms. Marin's testimony indicates that she is not even a reliable fact witness when it comes to operational capacity, much less an expert:

> Q.    So let me get this straight. The operational capacity of a [POE] is not defined in any official document, correct?
>
> A.    To my knowledge, [correct].
>
> . . .
>
> Q.    And you can't tell me what it is on any given day, correct?
>
> A.    Correct.
>
> . . .
>
> Q.    [And] you can't tell me which factor it was that caused operational capacity to change at any given time; correct?
>
> A.    Correct.
>
> Q.    So how do you expect the court in this case to believe you that operational capacity exists when it isn't written down, you can't tell the court what it is, and you can't tell the court how it changed?
>
> A.    I can only speak to the facts that it changed every day.

Ex. 6 at 130:10-131:19.

In other words, Mr. Cleaves, Mr. Harris, and Ms. Marin all admitted that there is no methodology for determining, despite now claiming to be experts on, operational capacity.

MEMO OF P. & A. IN SUPP. OF
PLTFS' MOT. TO EXCLUDE

1

2      **C.     Defendants' Expert Disclosures**

3          After Mr. Cleaves, Mr. Harris, and Ms. Marin testified that CBP cannot track

4   "operational capacity," that "operational capacity" has no definition, and that they

5   cannot determine which factors would have caused the "operational capacity" of a

6   POE to change at any given point in time, on August 7, 2020, Defendants disclosed

7   that *those same witnesses* will offer opinions on the factors that comprise, or may

8   comprise, "operational capacity" and attempt to calculate the supposed "operational

9   capacity" for the San Ysidro, El Paso, and Laredo POEs on a single day—June 17,

10  2018.   *See* Ex. 4 at 2-8.   Although Ms. Marin, Mr. Cleaves, and Mr. Harris

11  supposedly reached this opinion based on their review of documents, emails, and

12  data done at the direction of Defendants' attorneys, *id.* at 3-7, they did not even

13  bother to provide expert reports as required by Federal Rule of Civil Procedure

14  26(a)(2)(B).

15      **D.     Defendants Admit That They Directed Their "Experts" To Review**

16             **Documents and Data to Come to Their Conclusions**

17         During discussions concerning this motion, Defense counsel admitted that

18  they directed Mr. Cleaves, Mr. Harris, and Ms. Marin to review documents to

19  calculate the "operational capacity" of POEs on a specific day.   Medlock Decl. ¶ 4.

20  In a September 1, 2020 email, Defense counsel admitted that "they asked [Mr.

21  Cleaves, Mr. Harris, and Ms. Marin] to review documents and facts from a specific

22  day." *Id.*

23      **E.     Defendants Attempt to Add New Opinions and Conclusions To**

24             **Their Rule 26(a)(2)(C) Disclosures**

25         The September 1, 2020 email is notable for another reason.   Defendants'

26  counsel stated Mr. Cleaves, Mr. Harris, and Ms. Marin analyzed "operational

27  capacity" at three POEs on a single day—June 17, 2018— "as an example that is

28  illustrative of the overall practices, procedures, and considerations" that other POEs

MEMO OF P. & A. IN SUPP. OF
PLTFS' MOT. TO EXCLUDE

used to calculate operational capacity for years. *Id.* But nothing in the Rule 26(a)(2)(C) disclosure states that Mr. Cleaves, Mr. Harris, or Ms. Marin reviewed any documents that are supposedly related to the "operational capacity" of other POEs or came to the conclusion that the documents they reviewed are illustrative of operations at other POEs. Ex. 4 at 2-8. In fact, one of Defendants' purported experts, Mariza Marin, said the ***exact opposite*** at her deposition. *See* Ex. 6 at 72:2-25. Ms. Marin testified that "the dynamics that go into operational capacity, . . . would not be the same . . . . [and] would differ from port of entry to port of entry, from day to day[.]" *Id.* at 72:2-13. She also admitted that she does not know how ports of entry in other regions, such as Texas, define "operational capacity." *Id.* at 73:1-4. As a result, this previously-undisclosed opinion that operations at three POEs on a Sunday in June 2018 is somehow indicative of how every other POE operated on every other day that the turnback policy was in effect has no foundation. Therefore, Defendants' Rule 26(a)(2)(C) disclosures should be seen for what they are—an attempt to white wash damning testimony that operational capacity does not exist in any meaningful sense.

## III.    ARGUMENT

### A.    Defendants' Expert Testimony Should Be Excluded for Failure To Comply with Federal Rule of Civil Procedure 26(a)(2)(B)

Because Defendants' proffered experts purport to offer opinions beyond the scope of Federal Rule of Civil Procedure 26(a)(2)(C) expert testimony, their testimony should be excluded for failure to comply with Federal Rule of Civil Procedure 26(a)(2)(B). Rule 26(a)(2) governs the disclosure of expert testimony. Under Rule 26(a)(2)(B), a witness who is "retained or specifically employed to provide expert testimony" or "whose duties as the party's employee regularly involve giving testimony" must provide a written report containing "a complete statement of all opinions the witness will express and the basis and reasons for them." Conversely, Rule 26(a)(2)(C) requires "summary disclosures of the opinions

1  to be offered by expert witnesses who are not required to provide reports under Rule

2  26(a)(2)(B) and of the facts supporting those opinions."

3      The scope of expert witness testimony permissible under Rule 26(a)(2)(C) is

4  much narrower than expert testimony allowed under Rule 26(a)(2)(B).  "Although

5  . . . Rule 26(a)(2)(C) witnesses may testify beyond their personal knowledge, there

6  are still limits to the scope of a 26(a)(2)(C) witness's testimony." *LaShip, LLC v.*

7  *Hayward Baker, Inc.*, 296 F.R.D. 475, 480 (E.D. La. 2013).  Importantly, "[a]

8  26(a)(2)(C) witness's opinion must be based on facts or data obtained or observed

9  in the course of the sequence of events giving rise to the litigation."  *Id.*; *Downey v.*

10  *Bob's Discount Furniture Hldgs, Inc.*, 633 F.3d 1, 6 (1st Cir. 2011) (a witness is

11  properly designated as a Rule 26(a)(2)(C) witness where "his opinion testimony

12  arises not from his enlistment as an expert but, rather, from his ground-level

13  involvement in the events giving rise to the litigation"); *Beane v. Utility Trailer Mfg.*

14  *Co.*, 2013 WL 1344763, at *3 (W.D. La. 2013) (a Rule 26(a)(2)(C) expert's

15  "conclusions and opinions" must "arise from firsthand knowledge of activities they

16  were personally involved in before the commencement of the lawsuit").

17      For example, in *Goodman v. Staples The Office Superstore, LLC*, the Ninth

18  Circuit considered a situation where a plaintiff in a personal injury case "retained a

19  number of her treating physicians to render expert testimony beyond the scope of

20  the treatment rendered." 644 F.3d 817, 826 (9th Cir. 2011). Because the physicians

21  "reviewed information provided by [plaintiff's] attorney that they hadn't reviewed

22  during the course of treatment," the Court held that "those doctors fell outside the

23  scope of [Rule 26(a)(2)(C)]" and that "Rule 26(a)(2)(B) required disclosure of

24  written reports."  *Id.*; *see also Meyers v. Nat'l R.R. Passenger Corp.*, 619 F.3d 729,

25  734-35 (7th Cir. 2010) (physician who "is offered to provide expert testimony as to

26  the cause of plaintiff's injury, but who did not make that determination in the course

27  of providing treatment" was required to submit a written expert report).

28      So too here.  Each of Defendants' experts intend to testify about information

MEMO OF P. & A. IN SUPP. OF
PLTFS' MOT. TO EXCLUDE

that was provided to them by Defense counsel, rather than information that they reviewed or otherwise learned about in the regular course of their duties at CBP. For example, Defendants state that Mariza Marin "will testify that *she reviewed*" several categories of documents and data to determine issues that were allegedly affecting the "operational capacity" of the San Ysidro POE on June 17, 2018. Ex. 4 at 3 (emphasis added). Likewise, Samuel Cleaves intends to testify that "he came to . . . conclusion[s]" about the operational capacity of the El Paso POE "*after reviewing*" certain categories of reports and data. *Id.* at 5 (emphasis added). Rodney Harris came to similar conclusions regarding the operational capacity of the Laredo POE "after . . . *reviewing*" certain types of documents. *Id.* at 7 (emphasis added). Since each of Defendants' experts went beyond the scope of permissible Rule 26(a)(2)(C) testimony and intend to provide testimony based on their review of materials supplied by Defendants' counsel, they were required to provide written expert reports. *See Goodman*, 644 F.3d at 826. They did not do so.

Because Defendants failed to provide the expert reports required by Rule 26(a)(2)(B), Defendants' experts should be precluded from offering any opinions based on their review of documents or data provided to them by Defendants' counsel. "If a party fails to provide information . . . required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The Rule sets up a three-step framework for applying Rule 37(c)." *Cervantes v. Zimmerman*, 2019 WL 1598219, at *4 (S.D. Cal. 2019) (Bashant, J.). First, if "a party has violated its Rule 26(a) . . . disclosure obligations," then "exclusion of [the] untimely disclosed information is a 'self-executing, automatic sanction.'" *Id.* (quoting *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008)). Second, "a party is relieved from exclusion by showing that its Rule 26(a) . . . violation is substantially justified or harmless." *Id.* Finally, the court "may choose to impose sanctions in addition to or

MEMO OF P. & A. IN SUPP. OF
PLTFS' MOT. TO EXCLUDE

1    instead of exclusion." *Id.* (quotation marks omitted).

2        Here, the "automatic sanction" of excluding Defendants' expert testimony is

3    appropriate. *Cervantes*, 2019 WL 1598219, at *4. Defendants were required to

4    serve a "written report" containing "a complete statement of all opinions" that their

5    experts will espouse "and the basis and reasons for them." Fed. R. Civ. P.

6    26(a)(2)(B). Defendants did not do so.

7        Moreover, Defendants cannot satisfy their "burden of proving that [their]

8    failure to disclose [complete expert reports] was substantially justified or harmless."

9    *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012). **First**,

10   Defendants' failure to comply with Rule 26(a)(2)(B) is not substantially justified.

11   The Ninth Circuit has drawn a clear line between 26(a)(2)(B) experts and

12   26(a)(2)(C) experts. *See Goodman*, 644 F.3d at 826. Defendants' apparent failure

13   to understand which side of that line their experts fell on is not a substantial

14   justification for failing to comply with Federal Rule of Civil Procedure 26(a)(2)(B).

15   **Second**, "the failure to provide a complete written [expert] report . . . [is] not

16   harmless." *Krause v. Hawaiian Airlines, Inc.*, 2019 WL 2598770, at *4 (E.D. Cal.

17   2019). The Court set a deadline for the parties to disclose expert reports that

18   complied with Rule 26(a)(2). Defendants' failure to disclose expert reports that

19   comply with Rule 26(a)(2)(B), as was required here, violated that Court order.

20   "Disruption to the schedule of the court and other parties . . . is not harmless." *Wong*

21   *v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005). That is particularly

22   true here. Defendants have placed class members in life-threatening situations by

23   illegally turning them back to Mexico. *See, e.g.*, Ex. 20 at 746 (turnbacks were

24   "███████████████████████" in Tijuana); Ex. 21 at 438 (UNHCR warned

25   that CBP should "█████████████████████████"); Ex. 22

26   (concluding that prioritization-based queue management (*i.e.*, turning back asylum

27   seekers) would result in "████████████████████████████

28   ████████████████████████████████"); Ex. 2 at 67:5-

1  19 (CBP officers understood that ███████████████████████

2  █████████████████████████████).  The class members should not be

3  forced to continue to wait in these conditions while Defendants get a second chance

4  to cobble together expert reports that comply with the bare minimum requirements

5  of Rule 26(a)(2)(B). Accordingly, the Court should exclude Defendants' expert

6  testimony for failure to comply with Federal Rule of Civil Procedure 26(a)(2)(B).

7  **B.  Defendants' Expert Testimony Flunks the *Daubert* Test**

8  **i.  This Court Should Exercise Its Gatekeeping Duty To**

9  **Exclude Litigation-Driven Junk Science**

10  Defendants' experts should also be excluded because their proffered

11  testimony will violate Federal Rule of Evidence 702 and the *Daubert* standard.  The

12  proponent of expert testimony bears the burden of proving that it satisfies the

13  admissibility requirements of Federal Rule of Evidence 702. *Lust By & Through*

14  *Lust v. Merrell Dow Pharm. Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).  Federal Rule of

15  Evidence 702 provides that a witness may testify as an expert only if:

16  (a) the expert's scientific, technical, or other specialized knowledge will help

17  the trier of fact to understand the evidence or to determine a fact in issue;

18  (b) the testimony is based on sufficient facts or data;

19  (c) the testimony is the product of reliable principles and methods; and

20  (d) the expert has reliably applied the principles and methods to the facts of

21  the case.

22  Fed. R. Evid. 702.

23  Courts must assess whether "the reasoning or methodology underlying the

24  [proposed expert] testimony is scientifically valid and . . . whether that reasoning or

25  methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow*

26  *Pharm., Inc.*, 509 U.S. 579, 592-93 (1993).  "'[A]ny step that renders [the expert's]

27  analysis unreliable . . . renders the expert's testimony inadmissible.'" *In re Silicone*

28  *Gel Breast Implants Prods. Liab. Litig.*, 318 F. Supp. 2d 879, 890 (C.D. Cal. 2004)

MEMO OF P. & A. IN SUPP. OF
PLTFS' MOT. TO EXCLUDE

1   (citation omitted).    These criteria can be distilled into two overarching

2   considerations: "reliability and relevance." *Ellis v. Costco Wholesale Corp.*, 657

3   F.3d 970, 982 (9th Cir. 2011).[4]  Unfortunately for Defendants, their proposed expert

4   testimony is not reliable.

5          ii.   **Defendants' Experts Have No Methodology for Calculating**

6                **Operational Capacity**

7          The Court's "gatekeeping function requires more than simply 'taking the

8   expert's word for it.'"  Fed. R. Evid. 702 advisory committee's note (2000). "'[A]n

9   expert's opinion may not be based on assumptions of fact without evidentiary

10  support, or on speculative or conjectural factors.'"  *Abarca v. Merck & Co.*, 2010

11  WL 4643642, at *4 (E.D. Cal. 2010) (quoting *Richter v. Hickman*, 578 F.3d 944,

12  987 (9th Cir. 2009)); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)

13  ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district

14  court to admit opinion evidence that is connected to existing data only by the *ipse*

15  *dixit* of the expert.  A court may conclude that there is simply too great an analytical

16

17  [4] Courts have noted that "'the *Daubert* gatekeeping obligation is less pressing in
    connection with a bench trial' where 'the "gatekeeper" and trier of fact [are] one and
18  the same.'"  *AngiScore, Inc. v. TriReme Med., Inc.*, 87 F. Supp. 3d 986, 1016 (N.D.
    Cal. 2015) (quoting *Volk v. United States*, 57 F. Supp. 2d 888, 896 n.5 (N.D. Cal.
19  1999)).  "Nonetheless, while relaxed, the *Daubert* standards governing admissibility
    of expert testimony must still be met, even during a bench trial."  *Schilder Dairy,*
20  *LLC v. DeLaval, Inc.*, 2011 WL 2634251, at *2 (D. Idaho 2011); *see also Beech*
    *Aircraft Corp. v. United States*, 51 F.3d 834, 842 (9th Cir. 1995) (affirming district
21  court's decision to exclude expert testimony from a bench trial); *Metavante Corp. v.*
    *Emigrant Sav. Bank*, 619 F.3d 748, 760 (7th Cir. 2010) (*Daubert* applies in bench
22  trials and determinations regarding the admissibility of expert testimony "must still
    be made at some point."); *Att'y Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769,
23  779 (10th Cir. 2009) (during a bench trial "*Daubert's* standards must still be met");
    *Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1302 (Fed. Cir. 2002)
24  ("While these concerns are of lesser import in a bench trial, where no screening of
    the factfinder can take place, the *Daubert* standards of relevance and reliability for
25  scientific evidence must nevertheless be met.").  For this reason, several district
    courts have exercised their discretion to exclude expert opinions that are either
26  irrelevant or unreliable prior to conducting a bench trial.  *See, e.g.*, *CFM Commc'ns,*
    *LLC v. Mitts Telecasting Co.*, 424 F. Supp. 2d 1229, 1237 (E.D. Cal. 2005)
27  (excluding part of expert's testimony prior to bench trial).  And, at any rate, the Court
    may take *Daubert* into account when making findings regarding the reliability of
28  expert testimony.  *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018).

1    gap between the data and the opinion proffered."); *I.V. v. Wenatchee Sch. Dist. No.*

2    *246*, 342 F. Supp. 3d 1083, 1092-93 (E.D. Wash. 2018) (excluding expert's "purely

3    speculative" opinion where she "failed to set down any principles connecting the

4    data and her conclusion.  Rather, . . . [her] opinion rests on her own *ipse dixit*.").

5         Expert witnesses must "employ[] in the courtroom the same level of

6    intellectual rigor that characterizes the practice of an expert in the relevant field."

7    *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  Specifically, "[e]xperts

8    must follow some discernable methodology, and may not be a black box into which

9    data is fed at one end and from which an answer emerges at the other."  *GPNE Corp.*

10   *v. Apple, Inc.*, 2014 WL 1494247, at *4 (N.D. Cal. 2014) (citation and quotation

11   marks omitted).  "[T]he Court must be able to see the mechanisms in order to

12   determine if they are reliable and helpful."  *Id.*; *Fail-Safe, LLC v. A.O. Smith Corp.*,

13   744 F. Supp. 2d 870, 888 (E.D. Wis. 2010) (rejecting expert analysis because "the

14   court cannot simply take an expert's word for a specific proposition").  "A 'black

15   box' expert opinion . . . is one in which an expert's conclusion is stated without any

16   reasoned explanation that would enable the Court, a jury, or an opposing party to

17   meaningfully evaluate the process by which it was reached."  *Navelski v. Int'l Paper*

18   *Co.*, 244 F. Supp. 3d 1275, 1296 (N.D. Fla. 2017).

19        For example, in *Open Text, S.A. v. Box, Inc.*, the district court excluded an

20   expert's opinion concerning the proper royalty rate for a patent license because the

21   expert failed to "spell[] out the steps she took to go from the data to the royalty rate

22   opinion." 2015 WL 349197, at *6 (N.D. Cal. 2015).  In particular, the expert's

23   disclosure did not enable the fact finder to "see how the pieces fit together or how

24   the data [drove] the conclusion." *Id.* The expert's opinion in *Open Text* was

25   supported only by her professional experience, which is an "abstraction" not

26   "testable in the crucible of cross-examination." *Id.*; *see also GPNE Corp.*, 2014 WL

27   1494247, at *4 (excluding expert's damages opinion that was based on similar say-

28   so testimony).

MEMO OF P. & A. IN SUPP. OF
PLTFS' MOT. TO EXCLUDE

1    Here, Defendants' proposed expert testimony is a classic "black box" expert

2    opinion. Mr. Cleaves, Mr. Harris, and Ms. Marin purport to have reviewed

3    documents[5] and came to the conclusion that turning back asylum seekers at three

4    POEs was justified on June 17, 2018 due to the operational capacity of those ports.

5    *See* Ex. 4 at 2-7.  But they do nothing to link the data that they reviewed to the

6    conclusions that they reached. Nowhere in the summary of facts that Defendants'

7    purported experts intend to testify about, *see* Fed. R. Civ. P. 26(a)(2)(C),[6] is there

8    any mention of the methodology used to reach those conclusions. *See* 4 at 2-7. They

9    do not summarize which factors are pertinent to calculating "operational capacity,"

10   how they calculated "operational capacity," or how they compared the "operational

11   capacity" of the POEs to the actual number of individuals detained at the POE on

12   June 17, 2018. *See id.* Indeed, their summary references no identifiable methodology

13   for determining the operational capacity of POEs.  *See id.*  Defendants' experts

14   merely gesture at the existence of numbers and other information concerning the

15

16   [5] To make matters worse, Defendants' Rule 26(a)(2)(C) disclosure identifies these
     documents in only vague and general terms.

17   [6] It is true that "[c]ourts must take care against requiring undue detail" in Rule
     26(a)(2)(C) disclosures, because "these witnesses have not been specially retained
18   and may not be as responsive to counsel as those who have." Fed. R. Civ. P.
     26(a)(2)(C), 2010 Advisory Committee Note. But nothing in Federal Rule of Civil
19   Procedure 26(a)(2)(C) preclude analysis of the reliability of an expert's methodology
     under Federal Rule of Evidence 702 and *Daubert*—indeed, Rule 26(a)(2)(C)
20   specifically states that Rule 26(a)(2)(C) experts must "present evidence under
     Federal Rule of Evidence 702." *See* Fed. R. Civ. P. 26(a)(2)(C)(i). For that reason,
21   "although *Daubert* and its progeny often discuss specially retained experts, Rule
     26(a)(2)(C) experts who provide expert opinions pursuant to Rule 702 may also be
22   challenged under *Daubert*." *Tajonera v. Black Elk Energy Offshore Ops., L.L.C.*,
     2016 U.S. Dist. LEXIS 73985, at *39 (E.D. La. 2016); *see also Deutsch v. Novartis*
23   *Pharm. Corp.*, 768 F. Supp. 2d 420, 473 (E.D.N.Y. 2011) (addressing methodology
     of non-retained treating physicians and concluding that certain physicians must be
24   excluded because their testimony was "not based on scientifically reliable or
     admissible methodologies."). And a purported expert's methodology is certainly a
25   fact that should be summarized in a Rule 26(a)(2)(C) disclosure. *See Carbajal v.*
     *Lucio*, 2016 U.S. Dist. LEXIS 174331, at *4 (D. Colo. 2016) (noting that even a
26   Rule 26(a)(2)(C) disclosure "must provide the opposing party with enough
     information regarding the expert's opinions and methodology to prepare efficiently
27   for deposition, any pretrial motions[,] and trial."). Indeed, it would make a mockery
     of the *Daubert* inquiry if Rule 26(a)(2)(C) experts could avoid a gatekeeping inquiry
28   into their methodology by refusing to disclose the methods that they used.

MEMO OF P. & A. IN SUPP. OF
PLTFS' MOT. TO EXCLUDE

operational posture of three ports of entry. *See id.* But mentioning that supporting evidence might exist, without more, is not a methodology. *Open Text, S.A.*, 2015 WL 349197, at *6; *GPNE Corp.*, 2014 WL 1494247, at *4.

Moreover, Defendants' proffered experts could not provide a reliable measure of "operational capacity" if they wanted to, because it does not exist. As the proffered experts themselves previously testified, it is ***impossible*** to calculate operational capacity or to link operational capacity to particular decisions made by POEs, because there is no definition of operational capacity and CBP has never attempted to calculate or track operational capacity. *See supra* at 2-5.

To make matters worse, Defendants' experts cannot even agree on the factors that are relevant to calculating operational capacity. Ms. Marin believes that operational capacity includes such factors as the "need to proceed conservatively . . . to safeguard operations against inherent unknowns" and a "reduction in overtime spending" at a POE. Ex. 4 at 3. In contrast, Mr. Cleaves does not list those factors as being relevant to calculating operational capacity at all. *Id.* at 5. Instead, Mr. Cleaves believes that the factors that are relevant to calculating the operational capacity of a POE include "operations [that are] underway" at the POE and "violations encountered" at the POE. *Id.* However, Mr. Cleaves notes that the factors that go into calculating operational capacity are "not limited to" those listed in his portion of the Rule 26 Disclosures, imposing no limiting principle whatsoever on the concept. *Id.* at 4. Mr. Harris similarly notes that operational capacity "is fluid and is based on many factors," which "includ[e]," but are "not limited to," those mentioned in the Disclosures. *Id.* at 6. And Mr. Cleaves, Mr. Harris, and Ms. Marin do not explain how they weighed these factors. And there is certainly no methodology disclosed for determining when a single day at a POE is "an example that is illustrative of overall practices, procedures, and considerations" that go into calculating "operational capacity." Medlock Decl. at ¶ 4. Defendants never disclose any methodology for comparing how POEs defined and calculated

1   "operational capacity" or whether it is proper to extrapolate from the experiences of

2   a single POE on a single day to the experiences of every POE that was turning back

3   asylum seekers for months. *See* Ex. 2-8. In the end, their methodology is, at best,

4   "'I know it when I see it'"—a "type of testimony . . . [that] is not satisfactory" and

5   inadmissible. *Mintel Int'l Grp., Ltd. v. Neergheen*, 636 F. Supp. 2d 677, 684 (N.D.

6   Ill. 2009). As a result, Defendants' expert disclosures emphasize the fact that there

7   is no definition of "operational capacity," no set list of factors that determine a POE's

8   "operational capacity," and no discernible methodology for calculating "operational

9   capacity."

10          Defendants rely heavily on the "experience" of their three proffered experts.

11  *See* Ex. 4 at 2-7. But the fact that a witness has experience "alone does not constitute

12  a sufficiently reliable and testable methodology to prevent exclusion under

13  *Daubert*." *GPNE Corp*, 2014 WL 1494247, at *4 (excluding expert that relied

14  primarily on his "30 years of experience" in an industry). "An expert who relies

15  solely on his experience 'must explain how that experience leads to the conclusions

16  reached, *why that experience is a sufficient basis for the opinion*, and how that

17  experience is applied to the facts.'" *In re Toyota Motor Corp. Unintended*

18  *Acceleration Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1067 (C.D. Cal. 2013)

19  (quoting Fed. R. Evid. 702, advisory committee's note (2000)). Defendants'

20  proffered experts provide no such linkages between their on-the-job experience and

21  the testimony they plan to provide. They ask this court to take their word for it, even

22  though they employ no discernible methodology for analyzing or calculating

23  operational capacity. They function merely as a black box into which documents are

24  spoon-fed by Defense counsel and self-serving justifications come out. *Daubert* and

25  the Federal Rules of Evidence do not permit experts to offer opinions that are not

26  supported by an identifiable methodology that can be evaluated for its scientific and

27  technical rigor. Their testimony should be excluded.

28

MEMO OF P. & A. IN SUPP. OF
PLTFS' MOT. TO EXCLUDE

1

2

###### iii.    Defendants' Expert Reports Are Based on Unreliable Counterfactual Assumptions

3    Since Defendants' experts make the counterfactual assumption that

4 operational capacity can be defined and calculated—despite their previous testimony

5 that the term has never been defined and cannot be calculated—their opinions do not

6 "fit" the facts of the case and therefore will not help the fact-finder understand any

7 fact in issue. *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1320 (9th Cir.

8 1995) (explaining that the "fit" requirement demands "a valid scientific connection

9 to the pertinent inquiry as a precondition to admissibility").    Federal Rule of

10 Evidence 702 requires expert testimony to be "based on sufficient facts or data."

11 Fed. R. Evid. 702(b). Ultimately, "[e]xpert testimony is inadmissible if it is . . .

12 contrary to the facts of the case." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748,

13 757 (8th Cir. 2006).

14    Here, Defendants' proffered expert testimony is nothing more than

15 counterfactual speculation. Defendants' experts assume, without foundation, that

16 there is a definition of "operational capacity," that operational capacity can be

17 calculated, and that operational capacity can be linked to particular decisions made

18 by port directors concerning inspecting and processing asylum seekers. But, as

19 Defendants' purported experts admit, that is not true. *See supra* at 2-5.

20    Likewise, on September 1, 2020, Defendants' disclosed for the first time that

21 the operations of three POEs on Sunday, June 17, 2018 are "an example that is

22 illustrative of the overall practices, procedures, and considerations" of CBP with

23 respect to "operational capacity" at every POE.  Medlock Decl. at ¶ 4. But Plaintiffs'

24 experts ***sworn testimony directly contradicts that conclusion***.  *See supra* at 5.

25    Ultimately, Defendants' expert disclosures are little more than speculation

26 about what factors ***might*** have been relevant to calculating operational capacity on

27 a given day, ***guessing*** at what the operational capacity might have been, and

28 ***speculating*** about whether port directors made decisions based on that operational

MEMO OF P. & A. IN SUPP. OF
PLTFS' MOT. TO EXCLUDE

capacity. Defendants' experts admit as much by repeatedly qualifying their opinions with mushy language about the factors that were *actually considered* when a particular POE determined its "operational capacity." *See* Ex. 4 at 2-7 (disclosing testimony that POEs may have considered "factors such as" and "factors including but not limited to"). Anyone with a rudimentary understanding of how POEs work and a penchant for guesswork can testify as to what POEs could have considered or might have considered. That is not the point. Expert opinion may not be mere "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590; *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014) ("personal opinion testimony is inadmissible as a matter of law under Rule 702 . . . and speculative testimony is inherently unreliable"); *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997) (similar). In this case, no expertise is necessary or utilized to offer the opinion "maybe we were busy doing something else." Because Defendants' experts fail to offer non-speculative opinions that are consistent with the factual record, their testimony should be excluded.

## C. Even If Defendants' Expert Testimony Is Admitted, It Should Be Given No Weight Whatsoever

Even if the Court were to find that the serious flaws in Defendants' proffered expert testimony go only to the weight of that testimony (and it should not), the counterfactual testimony of Mr. Cleaves, Mr. Harris, and Ms. Marin is insufficient to create a material issue of fact for purposes of summary judgment and should be accorded no weight. A dispute of material fact must be "genuine." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

A purported expert witness cannot manufacture a genuine issue of material

MEMO OF P. & A. IN SUPP. OF
PLTFS' MOT. TO EXCLUDE

fact simply by contradicting the undisputed facts. *See Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1440 (9th Cir. 1995). "Assertions in expert affidavits do not automatically create a genuine issue of material fact . . . we are obliged to look at the record to determine whether, in light of any undisputed facts, the inferences to be drawn from the expert's affidavits are reasonable. When the expert opinion is not supported by sufficient facts to validate it in the eyes of the law or when indisputable record facts contradict or otherwise render the opinion unreasonable, summary judgment is appropriate." *Id.* (quotation marks and citations omitted); *see also Vollmert v. Wisc. Dep't of Transp.*, 197 F.3d 293, 298 (7th Cir. 1999) ("an admissible expert report may not be sufficient to preclude summary judgment"). Moreover, district courts should ignore attempts by witnesses to contradict their sworn deposition testimony at the summary judgment phase. *See, e.g.*, *Kennedy*, 952 F.2d at 266 ("[I]f a party who has been examined at length on deposition could raise an issue of fact by simply submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment."); *Camfield Tires, Inc. v. Michelin Tires Corp.*, 719 F.2d 1361, 1365-66 (8th Cir. 1983) ("If testimony under oath . . . can be abandoned many months later by the filing of an affidavit, probably no cases would be appropriate for summary judgment. A party should not be allowed to create issues of credibility by contradicting his own earlier testimony.").

Here, the proposed testimony of Mr. Cleaves, Mr. Harris, and Ms. Marin is contradicted by their own deposition testimony concerning "operational capacity" and the record, which shows that Defendants cannot and did not track or calculate "operational capacity" or link "operational capacity" to decisions made by POEs. *Supra* at 5. It is also flatly contradicted by undisputed facts, which show that Defendants broke the law by turning back asylum seekers who were approaching POEs, conceded that they were breaking the law in private conversations, lied to asylum seekers about why they were being turned back, and lied to the public about

turning back asylum seekers. *See, e.g.*, Ex. 23 at 100:25-101:6 (the "capacity excuse was a lie" that "was obvious to everybody"); Ex. 1 (Defendants "lack[ed] candor to the public in stating the true facts that [CBP is] . . . blocking asylum to persons and families in order to block the flow of asylum applicants."); Ex. 2 at 125:17-21 ("

"); Ex. 24 at 93:4-12 ("

.") (objection omitted); Ex. 25 at 111:13-19 (

); Ex. 27 at 045-046 (CBP officer

); Ex. 28 at 113 (CBP removed seats from the Hidalgo POE in order to reduce its capacity to process asylum seekers); Ex. 2 at 157:15-18 ("

."); Ex. 29 at 317 (

); Ex. 22 (

). Because Defendants' purported experts ignore the undisputed facts, contradict their own prior sworn deposition testimony, and attempt to offer counterfactual testimony in an effort to manufacture an illegitimate dispute of fact, their testimony should be given no weight.

MEMO OF P. & A. IN SUPP. OF
PLTFS' MOT. TO EXCLUDE

1   **IV.    CONCLUSION**

2         For the foregoing reasons, Defendants' expert testimony should be excluded.

3   Dated: September 4, 2020

4                                                     MAYER BROWN LLP
                                                        Matthew H. Marmolejo
                                                        Ori Lev
5                                                       Stephen M. Medlock

6                                                     SOUTHERN POVERTY LAW
7                                                     CENTER
                                                        Melissa Crow
8                                                       Sarah Rich
9                                                       Rebecca Cassler

10                                                    CENTER FOR CONSTITUTIONAL
11                                                    RIGHTS
                                                        Baher Azmy
12                                                      Ghita Schwarz
                                                        Angelo Guisado
13

14                                                    AMERICAN IMMIGRATION
                                                     COUNCIL
15                                                      Karolina Walters

16

17                                                   By: */s/ Stephen M. Medlock*
                                                        Stephen M. Medlock
18
                                                     *Attorneys for Plaintiffs*
19

20

21

22

23

24

25

26

27

28

MEMO OF P. & A. IN SUPP. OF
PLTFS' MOT. TO EXCLUDE

1

**CERTIFICATE OF SERVICE**

2          I certify that I caused a copy of the foregoing document to be served on all

3    counsel via the Court's CM/ECF system.

4    Dated:  September 4, 2020                    MAYER BROWN LLP

5

6                                               By  */s/ Stephen M. Medlock*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28