MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:   +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*,<br><br>       Plaintiffs,<br><br>      v.<br><br>Chad F. Wolf,[1] *et al.*,<br><br>       Defendants. | Case No.:  17-cv-02366-BAS-KSC<br><br>**[DISCOVERY MATTER] JOINT MOTION CONCERNING SPOLIATION SANCTIONS**<br><br><br>***[DECLARATIONS OF STEPHEN M. MEDLOCK AND KATHERINE J. SHINNERS FILED CONCURRENTLY]*** |

---

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
 Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
 *bazmy@ccrjustice.org*
 Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
 *gschwarz@ccrjustice.org*
 Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
 *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
 Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
 *sarah.rich@splcenter.org*
 Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
 *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
 Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
 *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

## <u>JOINT MOTION CONCERNING SPOLIATION SANCTIONS</u>

Pursuant to the Court's July 10, 2020 Order (Dkt. 485) and Section VIII of the Court's Chambers' Rules for Civil Pretrial Procedures, the parties respectfully submit their joint motion concerning spoliation sanctions.  Plaintiffs seek an order imposing sanctions for Defendants' spoliation of certain documents that they claim should have been retained by Defendants during the pendency of this litigation.  The parties, through counsel, met and conferred via telephone regarding spoliation sanctions, but were unable to resolve this dispute.

# PLAINTIFFS' ARGUMENT

## I.    Introduction

Plaintiffs do not bring this motion lightly. But the spoliation in this case is so clear that sanctions are warranted.  The factual basis for spoliation sanctions is not in serious dispute.

As explained in more detail in Plaintiffs' summary judgment motion (*see* Dkt. 533), this is a case about the implementation of a turnback policy at Class A ports of entry on the U.S.-Mexico border.[2]  Defendants refer to aspects of the turnback policy as "metering" or "queue management."  This Court has previously explained that a key issue in this case is whether Defendants have legitimate reasons for implementing the turnback policy or if the turnback policy is based on a pretext.  *See* Dkt. 280 at 60-61; Dkt. 446 at 6.  Therefore, a key question is what information the senior-most officials at U.S. Customers and Border Protection's (CBP's) Office of Field Operations (OFO) discussed when implementing the policy.  For example: did they consider the turnback policy to be unjustified, illegal, or based on a pretext?

It is undisputed that two senior officials at OFO, Todd Owen and Randy Howe,[3] received litigation hold notices informing them that they should preserve ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████   Ex. 1 (CBPALOTRO000390) at 395.  Mr. Howe and Mr. Owen admit that they attended regular meetings of senior officials at OFO where the

---

[2] Below, Defendants profess ignorance about what Plaintiffs mean by the terms "turnback policy" and "pretext."  That is of no moment.  The terms are defined and explained extensively in Plaintiffs' Second Amended Complaint (*see* Dkt. 189 at ¶¶ 2-3), Motion for Class Certification (*see* Dkt. 389-1 at 10-21), and Motion of Summary Judgment (*see* Dkt. 533-1 at 4-16).

[3] During almost all of the time period relevant to this litigation, Mr. Owen was the Executive Assistant Commissioner of OFO, the senior-most official at OFO.  *See* Defs' Ex. A at ¶ 1.  Mr. Howe was the Executive Director of Operations at OFO from October 2017 to January 18, 2020.  Defs' Ex. B at ¶ 1.

JOINT MOTION CONCERNING SPOLIATION
SANCTIONS

implementation of queue management was discussed.  Ex. 2 at 19:20-20:14; Defs'
Ex. A at ¶ 8.  During these meetings, Mr. Owen and Mr. Howe admit that they took
hand-written notes about the topics discussed during the meeting "to remind
[themselves] to take further action," Defs' Ex. A at ¶ 10, and to "jog [their]
memor[ies] of particular follow up actions," *id.*; *see also* Defs' Ex. B at ¶ 7 (Mr.
Howe wrote down "trigger words" that he would "use to assist [himself] in recalling"
topics that he wanted to raise during the meeting). Both Mr. Owen and Mr. Hoffman
admit that they discarded these hand-written notes, Defs' Ex. A at ¶ 11; Defs' Ex. B
at ¶ 8, despite ████████████████████████████████████████████████
████████████████. Therefore, as this Court put it, there "is evidence of spoliation";
the remaining question is "whether the spoliation was willful or merely negligent."
Dkt. 506 at 5.  Because the spoliation in this case was either willful or grossly
negligent, the proper sanction for Defendants' spoliation is for the Court to adopt a
rebuttable presumption that the destroyed evidence would have been detrimental to
Defendants' case.

Defendants have no meaningful justification for Mr. Owen's and Mr. Howes'
destruction of documents that they were specifically instructed to preserve.  They
argue that M. Howe and Mr. Owen merely took "non-substantive" notes.  But the
record shows otherwise.  Mr. Howe and Mr. Owen took these notes specifically so
that they could remember what was discussed at high-level meetings and so that they
could take further action.  Their notes were substantive.  *See, e.g.*, *Substantive*,
Merriam-Webster  Dictionary  (2020)  ("involving  matters  of  . . .  practical
importance"); *Substantive*, Cambridge Dictionary (2020) ("having real importance
of value").  These notes would have shown what the senior-most officials at OFO
discussed regarding the implementation of the turnback policy.  They also would
have shown what follow-up actions OFO leadership thought were warranted
concerning the turnback policy.  Because Mr. Howe and Mr. Owen routinely
destroyed their notes, Plaintiffs lost the opportunity to meaningfully question Mr.

JOINT MOTION CONCERNING SPOLIATION
SANCTIONS

Howe and Mr. Owen at their depositions about those discussions and follow-up actions that occurred during the high-level meetings.

Moreover, Mr. Owen and Mr. Howe were not allowed to substitute their judgment for that reflected in the litigation hold that they received. The litigation hold—*which Defendants do not even cite below*—instructed Mr. Owen and Mr. Howe ███████████████████████ Ex. 1 at 395. The litigation hold warned Mr. Howe and Mr. Owen that ████████████████████████ ████████████████████████████████████████ ████████ *Id.* The litigation hold specifically advised Mr. Owen and Mr. Howe to ████████████████████████████████████ ████████████████████████ *Id.* at 401. The litigation hold further instructed Mr. Owen and Mr. Howe ███████████████████████████ ██████████████████████ *Id.* Instead of following the clear guidance in the litigation hold, Mr. Owen and Mr. Howe determined that their notes were not "substantive" and discarded them.

It gets worse. Defendants' counsel also bungled their efforts to send litigation hold notices to key custodians. The most glaring example is Mr. Howe. Mr. Howe became the Executive Director for Operations at OFO on October 2017—months after this litigation was filed. *See* Dkt. 1. As the Executive Director, Mr. Howe had direct responsibility for the operations of ports of entry on the U.S.-Mexico border, including efforts to turn asylum seekers back to Mexico at those ports of entry.

Because Defendants waited months to send a litigation hold to Mr. Howe, and failed to take reasonable steps to preserve evidence, such as the notes taken by Mr. Howe and Mr. Owen, spoliation sanctions are appropriate. Specifically, the Court should draw rebuttable presumptions that (a) at the daily OFO leadership meeting, Mr. Owen and Mr. Howe instructed CBP officers to turn back asylum seekers who were arriving at ports of entry on the U.S.-Mexico border and (b) the notes taken by Mr. Owen and Mr. Howe would show that the turnback policy is based on a pretext.

## II.    Factual Background

### A.    The Turnback Policy

Plaintiffs have already provided the Court with a detailed accounting of the implementation of the turnback policy in their recently-filed motion for summary judgment. *See* Dkt. 533 at 4-18.  In brief, the relevant facts are these.  Beginning in May 2016 at the San Ysidro Port of Entry, CBP changed entirely the way that it inspects and processes asylum seekers arriving at ports of entry.  Rather than carrying out their congressionally-mandated duty to inspect and process all asylum seekers arriving at ports of entry, CBP officers began turning back asylum seekers at ports of entry.  Initially, due to decisions made by OFO leadership, these practices were not standardized.  For instance, in some instances, CBP officers forced asylum seekers to withdraw their applications for admission; in others, CBP officers used physical force to prevent asylum seekers from stepping onto U.S. soil; and, in other cases, CBP officers lied to asylum seekers by telling them that the ports of entry were "at capacity."

In April and June 2018, Defendants memorialized portions of the turnback policy, directing ports of entry to turn back asylum seekers when they were "at capacity."  At the same time, Defendants re-defined the term "capacity" to be essentially meaningless.  Around this time, ███████████████████████ ██████████████████████████████████████████████████[4]  In fact, the policy ultimately gave ports of entry license to slash the number of asylum

---

[4] Buried in a footnote below, Defendants label this argument "conclusory." They contend that ███████████████████████████████████ *Infra* at 21 n.12.  Defendants' argument ignores the record ████████████ ████████ Dkt. 533-1 at 13-14. ████████████████████████████████████████████ *Id.* at 14. ██████████████████████████████ *Id.*  This was not some sort of hypothetical exercise, as Defendants imply.  Defendants explicitly ███████████████████████████████████ The evidence is not "conclusory," it is damning.

JOINT MOTION CONCERNING SPOLIATION
SANCTIONS

1    seekers inspected and processed to far below 100% of their capacity.

2        **B.    Defendants' Failed Document Preservation Efforts**

3        Plaintiffs filed their initial complaint in this case on July 12, 2017. *See* Dkt.

4    1.  Defendants were served with a copy of the complaint on July 14, 2017. *See* Dkt.

5    41.  CBP sent a litigation hold notice to Todd Owen, in July 2017. *See* Ex. 3 at 15.

6    However, Defendants' document preservation efforts were woefully incomplete and

7    under-inclusive. Some custodians received litigation hold notice months or years

8    after this litigation was filed.  For example, Randy Howe, the Executive Director of

9    OFO who was in charge of all operations at ports of entry, did not receive a litigation

10   hold notice until December 20, 2018—over a year after he assumed that position.

11   *Id.* at 16.

12       **C.    Defendants' Document Destruction**

13       The results of Defendants' shoddy document preservation efforts are all too

14   predictable.   Multiple high-level OFO employees destroyed their notes of what

15   occurred at daily operational meetings.  Randy Howe destroyed notes that he took

16   to jog his memory concerning the topics discussed at daily 8:15am operational

17   meetings attended by the senior-most career officials at OFO. *See* Ex. 2 at 19:20-

18   20:14; Ex. 4.  Mr. Howe routinely took these notes from October 2017 to December

19   2019 and, despite receiving a litigation hold notice in December 2018, routinely

20   destroyed those notes by placing them in a shred bin. *See* Ex. 2 at 20:15-32:22; Ex.

21   3 at 17.  Defendant Todd Owen also routinely destroyed similar notes that he took

22   at the 8:15 a.m. meeting that he used to jog his memory concerning what was

23   discussed at those meetings, despite having received a litigation hold notice as early

24   as July 20, 2017.  Ex. 3 at 17.

25   **III.   Argument**

26       **A.    Spoliation Sanctions Are Warranted**

27       "Spoliation is 'the destruction or significant alteration of evidence, or the

28   failure to preserve property for another's use as evidence[,] in pending or reasonably

JOINT MOTION CONCERNING SPOLIATION
SANCTIONS

foreseeable litigation." *Reinsdorf v. Skechers U.S.A. Inc.*, 296 F.R.D. 604, 625-26 (C.D. Cal. 2013) (quoting *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)). "[T]he party alleging spoliation has the burden to prove by a preponderance of the evidence that the accused party actually destroyed, altered, or failed to preserve relevant evidence." *U.S. E.E.O.C. v. Wedco, Inc.*, 2014 WL 4635678, at *2 (D. Nev. 2014) (citing *LaJocies v. City of N. Las Vegas*, 2011 WL 1630331, at *1 (D. Nev. 2011)).

"A federal court is empowered to sanction a spoliating party under its inherent authority under Federal Rule of Civil Procedure . . . 37. The Court may exercise its inherent authority to impose sanctions 'based on a party's failure to preserve relevant evidence . . . if [the party] had some notice that the evidence was potentially relevant to pending or reasonably foreseeable litigation." *Soule v. P.F. Chang's China Bistro, Inc.*, 2020 U.S. Dist. LEXIS 23802, at *10 (D. Nev. 2020). "[I]f relevant evidence has been shown to exist, and if the possessor of that evidence was on notice that the evidence was potentially relevant to litigation which was reasonably foreseeable, and if that party failed to take reasonable steps to preserve it, sanctions may be imposed upon that party." *Id.*

"A party seeking sanctions for spoliation of evidence must prove the following elements: (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered, (2) the destruction or loss was accompanied by a culpable state of mind, and (3) the evidence was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence[.]" *Brannan v. Bank of Am.*, 2017 WL 4031442, at *2 (D. Nev. 2017), *adopted by* 2018 WL 1002613 (D. Nev. 2018).

Here, each of the *Brannan* factors are satisfied, and a rebuttable presumption that the spoliated evidence was favorable to Plaintiffs is warranted. ***First***, there is no question that Defendants had "control over the evidence [and] had an obligation to preserve it when it was destroyed." *Brannan*, 2017 WL 4031442, at *2. Mr. Owen

and Mr. Howe were all CBP employees and received litigation hold notices (no matter how belated they may have been) at the time that they destroyed documents relevant to this ca. *Supra* at 5.

*Second*, the destruction and loss of the spoliated materials was accompanied by a culpable state of mind. *Brannan*, 2017 WL 4031442, at *2. A "culpable state of mind" requires a showing "of at least negligence." *Nutrition Distrib. LLC v. PEP Res., LLC*, 2018 U.S. Dist. LEXIS 205250, at *11 (S.D. Cal. 2018). In this case, Defendants' failed to send a litigation hold notice to Mr. Howe until December 20, 2018, at which point Mr. Howe had been destroying his notes of high-level meetings at OFO for *months*. *See supra* at 4-6. The failure to timely issue a litigation hold notice is, at the very least, gross negligence. *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1007 (D. Ariz. 2011) (failure to issue timely litigation hold was gross negligence).[5]

After Mr. Howe received a litigation hold in December 2018, he willfully destroyed his notes based on his belief that the notes "weren't substantive." Ex. 2 at 26:15-20. But Mr. Howe's rationale ignores the import of his notes—they are the best evidence of what was discussed at meetings of the senior-most officials at OFO where metering was a topic of discussion. *Id.* at 32:8-12; Ex. 5 at 28:19-30:14. Mr. Howe's conduct was willful and reckless. Once he received his severely belated litigation hold notice, he knew, or should have known, from the litigation hold notices that he received that he needed to retain all documents relevant to the claims and defenses in this case. But he chose to supplant his personal judgment about what was "substantive" for the law. *See, e.g.*, *Victorino v. FCA US LLC*, 2017 U.S. Dist. LEXIS 168390, at *31 (S.D. Cal. 2017) (a "party's destruction of evidence qualifies

---

[5] Below, Defendants accuse Plaintiffs of attempting to create a "per se" standard for gross-negligence. Far from it. Plaintiffs' argument is simple. Defendants failed to send Mr. Howe a litigation hold for months. Then, Defendants allowed two of their key witnesses to destroy contemporaneous notes of high-level meetings where the turnback policy was discussed. That is grossly negligent under any standard.

as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed'").

During his time as the head of OFO, Mr. Owen was a *defendant* in this case. He received a litigation hold on July 20, 2017. Ex. 3 at 17. He acknowledged that he attended operational meetings where metering was discussed. Ex. 5 at 30:12-14. Yet, he admits that he destroyed notes about those meetings. Defs' Ex. A at ¶ 11. It is difficult to think of more obvious evidence of willful spoliation. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) ("A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were *potentially* relevant to the litigation before they were destroyed.'").

***Third***, the evidence that was destroyed was clearly relevant. "[R]elevance is a two-part test that requires a showing of both relevance and prejudice." *Esquivel v. Prudential Life Ins. Co.*, 2018 U.S. Dist. LEXIS 224236, at *7 (C.D. Cal. 2018). "[L]ost or destroyed evidence is 'relevant' if 'a reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.'" *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 531 (D. Md. 2010). "A party suffers prejudice if the spoliation substantially denies that party the ability to support . . . its claim." *Mizzoni v. Allison*, 2018 U.S. Dist. LEXIS 80969, at *15 (D. Nev. 2018). In particular, prejudice exists where a party "is forced to rely on incomplete and spotty evidence" as a result of an opposing party's failure to preserve and produce evidence. *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 353 (9th Cir. 1995).

In this case, there is no doubt that Mr. Owen's and Mr. Howe's notes were relevant and their destruction was prejudicial. Mr. Owen and Mr. Howe admittedly took these short notes in order to jog their memories about what was discussed at the daily 8:15 a.m. meeting of the senior-most officials at OFO. *See, e.g.*, Ex. 5 at 28:19-30:14; Ex. 2 at 21:1-21. High-level OFO officials discussed metering during these meetings. *See, e.g.*, Ex. 5 at 30:12-14. When Mr. Owen and Mr. Howe destroyed

JOINT MOTION CONCERNING SPOLIATION
SANCTIONS

their notes, they deprived Plaintiffs of the ability to refresh their recollections on what was discussed during the meetings.  Instead, Plaintiffs were forced to rely on their spotty recollections of what was said at the meetings.  *See, e.g.*, Ex. 2 at 22:22-23:13 (Mr. Howe was unable to recall whether his written notes ever referenced inspecting and processing asylum seekers at POEs on the U.S.-Mexico border).

Mr. Owen and Mr. Howe assert that their notes were "non-substantive," and therefore irrelevant.  Ex. 3 at 17.  But, "the relevance of . . . [destroyed] documents cannot be clearly ascertained because the documents no longer exist," and Defendants "can hardly assert any presumption of irrelevance as to the destroyed documents."  *Leon*, 464 F.3d at 959.  At any rate, Defendants are flat wrong when they assert that contemporaneous notes taken by key custodians at high-level meetings where metering was admittedly discussed are somehow irrelevant.  Regardless of how cursory these notes were, their purpose was to jog Mr. Howe's and Mr. Owen's memories about topics that were discussed during those high-level meetings.  Because Mr. Owen and Mr. Howe destroyed their notes, Plaintiffs lost the ability to refresh their memories and engage in meaningful questioning regarding meetings where metering was discussed.

## B.    A Rebuttable Presumption Is Warranted

When considering the proper sanction for spoliation, "the court should choose the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim."  *LaJocoies v. City of N. Las Vegas*, 2011 WL 1630331, at *4 (D. Nev. 2011) (internal citation omitted).  The most severe sanction—terminating the case in favor of the non-spoliating party—"should not be imposed unless there is clear and convincing evidence of both bad-faith spoliation and prejudice to the opposing party."  *Micron Tech., Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1328-29 (9th Cir. 2011) (internal citation omitted).

"The middle available sanction is to order a rebuttable presumption against the offering party that the evidence, if it has not been despoiled, would have been

detrimental to the despoiler." *Soule*, 2020 U.S. Dist. LEXIS 23802, at *11-12. "To warrant a rebuttable presumption, [the offending party] must have consciously disregarded its obligation to preserve" the lost evidence. *McCabe v. Wal-Mart Stores, Inc.*, 2016 WL 706191, at *3 (D. Nev. 2016) (citation omitted). "By failing to do as little as issue a litigation hold notice to . . . employees for [several] months after its preservation duty arose, and by further delaying issuance of litigation hold notices to several key custodians," a party "act[s] with not just simple negligence but rather conscious disregard of its duty to preserve." *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 998 (N.D. Cal. 2012).

"[The] least severe sanction is to enter an adverse inference jury instruction that an offending party destroyed evidence." *Soule*, 2020 U.S. Dist. LEXIS 23802, at *12. In other words, "[a]n adverse inference is an instruction to the trier of fact that evidence made unavailable by a party was unfavorable to that party." *Lewis v. Ryan*, 261 F.R.D. 513, 521 (S.D. Cal. 2009). In the context of a bench trial, an adverse inference is the equivalent of a finding of fact. *Optowave Co. v. Nikitin*, 2007 WL 129009, at *8 (M.D. Fla. 2007).

In this case, the proper sanction is for the court to draw the rebuttable presumption that the evidence destroyed by Mr. Owen and Mr. Howe would have been helpful to Plaintiffs' case. *Soule*, 2020 U.S. Dist. LEXIS 23802, at *11-12. This presumption is warranted because Defendants took months to distribute litigation holds to Mr. Howe and then allowed custodians to destroy key information in a willful or grossly negligent manner. *See supra* at 5; *Apple Inc.*, 888 F. Supp. 2d at 998. Therefore, the Court should adopt a rebuttable presumption that (a) at the daily OFO leadership meeting, Mr. Owen and Mr. Howe instructed CBP officers to turn back asylum seekers who were arriving at ports of entry on the U.S.-Mexico border and (b) the notes taken by Mr. Owen and Mr. Howe would show that the turnback policy is based on a pretext.

JOINT MOTION CONCERNING SPOLIATION
SANCTIONS

### C.    Defendants' Arguments to the Contrary Are Baseless

Defendants arguments below offer no basis for this Court to avoid entering spoliation sanctions.

***First***, Defendants attempt to turn the spoliation inquiry on its head. They argue that Plaintiffs have based this motion on nothing more than their own "fertile imagination" about what may have been discussed at those meetings. That is incorrect. Mr. Owen and Mr. Howe admitted that they attended a regular meeting at which queue management, an aspect of the turnback policy, was discussed. *Supra* at 3-6. The evidence also shows that the turnback policy was based on a pretext. *See* Dkt. 533 at 13-14. Defendants' senior leadership knew that the turnback policy was a pretext because they ███████████████████████████████████ ████████████████████████████████████. *Id.* It requires no leap of logic to conclude that the same officials discussed their knowledge that the turnback policy was based on a pretext during meetings whether they (a) admitted that they discussed the policy, and (b) destroyed their notes of the meeting.

***Second***, Defendants boldly claim that the court should conclude that the notes taken by Mr. Owen and Mr. Howe were not relevant. That is entirely wrong. Both Mr. Owen and Mr. Howe admit that they took notes regarding queue management, an aspect of the turnback policy. *Supra* at 1-2. They further admit that they would have used these notes to inform follow-up actions that they took and to jog their memories about what was discussed during those meetings. *Supra* at 1-2. It is precisely the discussions at those meetings and the follow-up actions with respect to the turnback policy that Plaintiffs were prevented from inquiring into due to Defendants' spoliation.

***Third***, Defendants argue that Mr. Owen and Mr. Howe did not act in bad faith because they did not intentionally destroy their notes, but believed them to be "non-substantive." That is not correct. The standard for preserving documents is whether the information "would have supported the claims or defenses of the party that

sought it,'" *Victor Stanley*, 269 F.R.D. at 531, not whether a document custodian thought that the documents were "substantive." And there is no question that Mr. Owen's and Mr. Howe's notes would have supported Plaintiffs' claims. By design, they would have jogged the memories of Mr. Owen and Mr. Howe about discussions that OFO's senior officers had concerning the turnback policy and its implementation.

*Fourth*, Defendants argue that there was no prejudice to Plaintiffs because it is not likely that questioning Mr. Owen and Mr. Howe regarding their notes would have generated favorable testimony. That is rich. Fundamentally, Defendants are arguing that they know what these destroyed notes said and how witnesses would have answered questions about them. As this Court has already pointed out, that is preposterous. *See* Ex. 6 at 34:11-16 ("What I'm concerned about is that there's a statement from the defense that these notes aren't relevant, they're just little notes, and they're not substantive, but you haven't actually seen these notes, so how can you determine whether they're relevant or not or partially relevant? I don't understand that.").

Furthermore, Defendants argument is factually incorrect. The evidence shows that Defendants ███████████████████████████████████████, Dkt. 533 at 13-14, ████████████████████ █████████████████████████████████████████████████, *id.* at 16, and privately admitted that the turnback policy broke the law, *id.* at 12. In addition, a CBP officer turned whistleblower and contemporaneous documents show that the capacity rationale given for turnbacks is a lie. *Id.* at 1-2. Given that evidence, and the fact that Mr. Owen and Mr. Howe disobeyed a litigation hold and destroyed their notes of high-level meetings where the policy was discussed, it is reasonable to believe that Plaintiffs would have uncovered further evidence that Mr. Owen and Mr. Howe discussed the fact that the turnback policy was based on a pretext.

*Finally*, Defendants point to the fact that one of their custodians, Todd

Hoffman, did preserve his notes and those notes were produced to Plaintiffs. They also argue that Plaintiffs could have asked Mr. Hoffman about his notes. This argument misses the mark. The mere fact that other custodians understood that they needed to preserve their hand-written notes only proves that Mr. Howe and Mr. Owen should have done the same.[6]

**IV.     Conclusion**

Plaintiffs' motion should be granted in full. The Court should adopt a rebuttable presumption that (a) at the daily OFO leadership meeting, Mr. Owen and Mr. Howe instructed CBP officers to turn back asylum seekers that were arriving at ports of entry on the U.S.-Mexico border and (b) the notes taken by Mr. Owen and Mr. Howe would show that the turnback policy is based on a pretext.

---

[6] Below Defendants also argue that Plaintiffs could have questioned Mr. Howe about Mr. Hoffman's notes in an effort to refresh Mr. Howe's recollection. *See infra* at 27. It is difficult to see how Plaintiffs could have done so, short of time travel. Mr. Howe was deposed on January 9, 2020. Defendants did not produce Mr. Hoffman's notes until June 9, 2020. At that point, it was not possible to notice the Rule 30(b)(1) deposition of Mr. Howe before the June 19, 2020 close of fact discovery. *See* Dkt. 454 at § II(C) (generally requiring 14 days' notice for remote depositions).

JOINT MOTION CONCERNING SPOLIATION
SANCTIONS

# **DEFENDANTS' ARGUMENT**

Plaintiffs move for spoliation sanctions in response to the loss of handwritten, shorthand notes of U.S. Customs and Border Protection (CBP) Officials Todd Owen[7] and Randy Howe from a daily operational meeting at which participants typically review and discuss the prior day's significant events and other events and topics of interest. They ask the Court to draw two vague evidentiary presumptions that bear no factual or logical connection to these notes. The Court should deny this request, as the loss of these notes does not warrant relief, let alone the imposition of overly-broad presumptions that lack evidentiary basis.

Plaintiffs ask the Court to impose a rebuttable presumption that Mr. Howe and Mr. Owen issued an undefined "turn back" instruction at some unspecified time to unspecified CBP Officers at one of these meetings. Yet there is no indication that the notes from the daily operational meetings would contain, or lead to, such evidence. To the contrary, the meetings were to discuss significant events over the last 24 hours, as well as other "events, topics, or issues" warranting the Executive Assistant Commissioner's (EAC's) awareness, rather than substantive policy. Ex. A ¶ 3. The meetings were attended by OFO leadership, and not by CBP Officers in the field. And Plaintiffs point to no direct evidence in the entire discovery record of numerous depositions and 1.4 million pages of documents that support the existence of a "turnback policy" that is different from, or broader than, the acknowledged practices of metering and queue management.

Plaintiffs also ask the Court to impose a rebuttable presumption that the notes would have shown that this "turnback policy" was based on a pretext. Even if it were clear what Plaintiffs mean by "pretext" in this context – which it is not – this request

---

[7] Plaintiffs did not meet and confer with Defendants about the loss of Mr. Owen's notes. Shinners Decl. ¶ 6. Their request, therefore, is not properly before the Court. *See Brady v. Grenedene USA, Inc.*, 2014 WL 11975003, at *1 (S.D. Cal. Dec. 30, 2014) (declining to address substance of dispute and denying motion because parties had not met and conferred on "*all* issues" before presenting disputes to court).

is a stretch. Given the purpose of the meetings—which was to discuss operations and topics of interest, rather than have substantive discussions about policy—and the purpose of Mr. Howe and Mr. Owen's notes—which was to jot down one or two trigger words for topics of discussion and follow-ups—there is no evidence that the lost, shorthand notes could possibly have led to the evidence Plaintiffs now seek to enter as a rebuttable presumption.

A court may sanction a party for despoiling non-ESI evidence under its inherent power. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).[8] If a court determines that a party despoiled evidence, it must tailor a remedy corresponding to the prejudice suffered by the other party, the import of the lost information, and the willfulness of the conduct. Plaintiffs' proposed remedies are not warranted. The Court should thus deny Plaintiffs' requests for rebuttable presumptions.

## I.    FACTUAL BACKGROUND

### A. Defendant CBP's Preservation Efforts

Defendant CBP has taken numerous, proactive steps to meet its preservation obligations in this border-wide class action implicating a broad swath of its operations. CBP issued litigation hold notices to relevant officials almost immediately after this lawsuit was filed and has updated those litigation hold notices throughout the course of the litigation. Ex. 3 at 15-24 (explaining how and when Defendants issued litigation holds). It proactively asked the Court for relief from extremely costly, disproportionate preservation of surveillance video. *See* ECF No. 148. Its emails are stored on servers and cannot be manually deleted by individual users. Ex. 3 at 17. That the vast majority of arguably relevant evidence was preserved

---

[8] If the evidence at issue is ESI, Federal Rule of Civil Procedure 37(e) applies. *Soulé v. P.F. Chang's China Bistro, Inc.*, 2020 WL 959245, at *5 (D. Nev. Feb. 26, 2020) (citing Fed. R. Civ. P 37(e)); Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment (Rule 37(e) "forecloses reliance on inherent authority or state law to determine when certain measures should be used" when applying spoliation sanctions).

JOINT MOTION CONCERNING SPOLIATION SANCTIONS

is evidenced in part by the fact that Defendants have produced over 1.4 million pages of documents, including emails, data, other ESI, and copies of hard copy, handwritten notes. Shinners Decl. ¶ 8. Instances in which documents were not preserved, and which this Motion addresses, were disclosed to Plaintiffs.

### B. Notes from the 8:15 am Daily Meetings

Plaintiffs' Motion is based on the loss of certain non-substantive, shorthand notes taken by OFO Officials at daily operational meetings. Plaintiffs focus on lost notes from Todd Owen and Randy Howe, but fail to mention that another custodian in this case, Todd Hoffman, also attended these same meetings and preserved his handwritten notes.

#### 1. Todd Owen's Notes

As Todd Owen, former Executive Assistant Commissioner of OFO, testified in his deposition[9] and attests in his declaration, he held daily operational meetings at 8:15 am with OFO leadership that were attended by the Deputy Executive Assistant Commissioner, his and the Deputy Executive Assistant Commissioner's chiefs of staff, and the six Executive Directors at OFO headquarters. Ex. A, ¶ 2. The meetings were "operational discussion[s]," which provided (1) operational recaps of OFO's activities over the previous 24 hours and (2) "a high-level overview of issues that either have been identified in electronic reports" or that Mr. Owen or one of his Executive Directors identified as "being of particular interest." Ex. 5, 30:3-4; Ex. D, 40:13-14; Ex. A, ¶ 3. The meeting participants also discussed upcoming events and other general topics that needed to be brought to Mr. Owen's attention. Ex. A, ¶ 3. These meetings focused on issues relating to all aspects of OFO's missions at all 328 POEs around the country. *Id*. ¶¶ 4-6. While participants discussed operational issues and general "topics or issues of interest to CBP or DHS as a whole," *id.* ¶ 6, "the

---

[9] During his deposition, Plaintiffs questioned Mr. Owen generally about the discussions at these meetings but did not ask questions about the specific discussions that took place. Ex. 5, 28:19-31:22. The entirety of Mr. Owen's transcript was filed with Plaintiffs' motion for summary judgment. ECF No. 535-12.

purpose of these meetings [was] not to make substantive decisions or to have substantive discussions about the implementation of particular policies." *Id*. ¶ 7. Such discussions and decision-making occurred in separate meetings. *Id*.

The nature of these meetings demonstrates that Mr. Owen did not take substantive notes during the meetings, let alone notes relevant to Plaintiffs' claims, or that could support the presumption Plaintiffs seek. *Id*. ¶ 10. Mr. Owen would jot down words or phrases to jog his memory on future action items. *Id*. He made the notes "only for purposes of appropriate follow up action," and the notes did not "convey the substance of any discussions or the substance of any particular incident[.]" *Id*. ¶ 11. Once a note served its purpose, he normally discarded it. *Id*. The notes did not reflect any substantive discussion of policies incidents, or responses thereto because, as indicated, any substantive discussions occurred at follow-up meetings, which would often involve substantive briefing materials or decision memos. *Id*. ¶ 10. Therefore, although Mr. Owen received a litigation hold notice, Mr. Owen did not believe that his shorthand notes were of sufficient substance to be subject to the litigation holds. *Id*. ¶ 11.

2. Randy Howe's Notes

As a former Executive Director for Operations for OFO, beginning in October 2017, Randy Howe attended the same daily meetings at which Mr. Owen was briefed on various significant events and topics from POEs around the country. Ex. 2, 20:12-22; Ex. B, ¶¶ 2, 3. Like Mr. Owen, Mr. Howe attests that the conversations at these meetings did not encompass substantive decisions or discussions about policy implementation. Ex. B, ¶ 4. The meetings "ke[pt] the EAC abreast of important issues and operational events"; those discussions thus sometimes touched on the topic of metering and queue management. *Id*. ¶¶ 3, 5. However, the attendees discussed queue management and metering "in the context of other operational issues," such as a particular POE facing capacity constraints, such that it had to implement queue management. *Id*. ¶ 5. Many of the significant events discussed at the 8:15 meetings were reported to Mr. Owen in email. Mr. Howe also generally

JOINT MOTION CONCERNING SPOLIATION
SANCTIONS

followed up with Mr. Owen in email. Ex. 2, 26:6-13.

Before attending the daily meeting, Mr. Howe sometimes wrote himself short-hand notes containing "trigger words" to help him recall events or issues to be brought to Mr. Owen's attention. Ex. B. ¶ 7; *see also* Ex. 2, 20:20-22. If needed, Mr. Howe took notes during the meetings in a similar short-hand manner to help him remember certain follow-up items to pass to his subordinates at a later meeting. Ex. B, ¶ 7. Therefore, even notes regarding metering or queue management, if they existed, would have consisted of one or two words to aid Mr. Howe in recalling certain discussion points for follow-up. *Id.* Mr. Howe, therefore, disposed of the notes after the meeting, because he "did not believe they were substantive, responsive, or relevant to the litigation holds" he received. *Id.* ¶¶ 8, 9.

### 3.  Todd Hoffman's Notes

Todd Hoffman, former Executive Director of the Admissibility and Passengers Programs at OFO, also attended the daily 8:15 meetings. Ex. C, ¶ 2. When Mr. Hoffman attends these and other meetings, he generally brings a notebook, and may, if appropriate, take notes that allow him to recall the substance of what was said and what he considered to be important at the time. *Id.* ¶ 4. He typically took notes on issues related to queue management, "in case [he] later was required to brief [the topic]." *Id.* ¶ 5. Mr. Hoffman preserved his notebooks and reviewed them for production. Ex. F, 37:17-22. Defendants produced these notes on June 9, 2020. Shinners Decl. ¶ 8. Plaintiffs did not ask Mr. Hoffman any questions about the substance of any of his notes during his deposition, even though the notes were available; nor did they ask to continue his deposition for more time to review those notes. ECF No. 535-6.[10] They did not ask him whether any of the notes were from the 8:15 am meetings. *Id.*

---

[10] Mr. Hoffman's full deposition transcript was filed with Plaintiffs' motion for summary judgment.

## II.    LEGAL STANDARDS

To prevail on a motion for sanctions under the court's inherent authority, a party must show by the preponderance of the evidence:

> (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind"; and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence.

*Brannan v. Bank of Am.*, 2017 WL 4031442, at *2, (D. Nev. Sept. 13, 2017) (citation and quotation marks omitted). The first prong requires a party to "preserve evidence that it knows or should know is relevant to a claim or defense of any party in the litigation." *Id.* The second prong "requires a showing of at least negligence." *Nutrition Distrib. LLC v. PEP Rsch., LLC*, 2018 WL 6323082, at *4 (S.D. Cal. Dec. 4, 2018) (citations omitted). The third prong "requires a showing that the evidence was destroyed in bad faith, or that the evidence would have helped the innocent party prove its claim or defense." *Id.* (citations omitted). The moving party must "establish a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the lost material would have produced evidence favorable to its cause." *Brannan*, 2017 WL 4031442, at *2.

When determining a proper sanction for spoliation, "the court should choose the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *Soulé*, 2020 WL 959245, at *3, 4 (citation and quotation marks omitted). To determine whether spoliation has prejudiced a party, the Court "looks into whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon*, 464 F.3d at 959 (citation and quotation marks omitted).

## III.    ARGUMENT

Plaintiffs have not shown they merit spoliation relief, let alone the specific rebuttable presumptions that they seek. First, they have not demonstrated that the

JOINT MOTION CONCERNING SPOLIATION
SANCTIONS

evidence is "relevant" for purposes of spoliation relief. Plaintiffs have not shown how Mr. Owen or Mr. Howe's meeting notes would have assisted in proving their claims; nor have they shown that Mr. Owen or Mr. Howe acted in bad faith. Instead, they speculate, without evidence, as to what those notes may have shown. Second, even if some relief were appropriate, the expansive rebuttable presumptions Plaintiffs seek—which bear no logical connection to the lost notes themselves— are not warranted. Plaintiffs have not shown the prejudice or the willfulness required for entry of a rebuttable presumption, because Defendants have produced the notes of another custodian who attended the same meetings, and because Mr. Owen and Mr. Howe did not act in bad faith.

### A. Plaintiffs Have Not Met Their Burden to Prevail on Their Motion for Sanctions Because They Have not Shown That the Meeting Notes Were Relevant.

Plaintiffs have failed to demonstrate that the meeting notes were relevant to their claims and, therefore, have not met their burden for spoliation relief, let alone any rebuttable presumptions. The "relevance" prong of the test for obtaining spoliation relief is not satisfied by showing that the lost evidence *may* have had *some* relevance to some issues in the case. Instead, it "requires a showing that the evidence was destroyed in bad faith, or that the evidence would have helped the innocent party prove its claim or defense." *Nutrition Distrib. LLC*, 2018 WL 6323082, at *4 (citations omitted). The moving party must "establish a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the lost material would have produced evidence favorable to its cause." *Brannan*, 2017 WL 4031442, at *2.

Plaintiffs have not demonstrated that the meeting notes would have helped them prove their claims, or that Mr. Howe or Mr. Owen disposed of their notes in bad faith. Plaintiffs ask the Court to enter a rebuttable presumption that, at the 8:15 meetings, "Mr. Howe and Mr. Owen instructed CBP officers to turn back asylum seekers who were arriving at ports of entry." *Supra* at 4, 11, 13. As an initial matter,

JOINT MOTION CONCERNING SPOLIATION SANCTIONS

Plaintiffs do not explain what this presumption means. They do not define "turn back" for these purposes—that is, they do not explain whether this instruction encompasses more than metering or queue management, which is the subject of formalized guidance issued in April 2018. They do not say precisely what the alleged instruction was or when it allegedly occurred. These specifics are crucial; without them, it is impossible to understand what facts Plaintiffs are even asking the Court to presume. Nor do they explain how or why they believe the lost notes would have contained, or led to the discovery of, this particular evidence, where other evidence has not. Indeed, Plaintiffs have presented no "concrete evidence" that the notes would have contained evidence of such an instruction and impermissibly rely on their "fertile imagination" in formulating their proposed rebuttable presumption. *Brannan*, 2017 WL 4031442, at *2. Plaintiffs never even sought to determine whether the notes could have uncovered such evidence, as they never asked Mr. Owen or Mr. Howe[11] whether there was a discussion at these meetings that OFO leadership should instruct CBP officers to "turn back asylum seekers."

Plaintiffs also ask the Court to enter a rebuttable presumption that "the notes taken by Mr. Owen and Mr. Howe would show that the turnback policy is based on a pretext." Again, Plaintiffs' proposed presumption is exceedingly broad and very vague. They do not explain here, or in their summary judgment motion, what exactly the supposed "pretext" is, or whether it actually differs from the stated reasons for implementing metering or prioritization-based queue management.[12] Most crucially, Plaintiffs do not explain precisely how they believe the notes would have

---

[11] The entirety of Mr. Howe's transcript was filed with Plaintiffs' motion for summary judgment. ECF No. 535-6.

[12] Plaintiffs argue that the evidence demonstrates that "Defendants' senior leadership knew that the turnback policy was a pretext ██████████████████ ███████████████████████████ *Supra* at 11. This is conclusory. The consideration of the impacts of a potential policy choice before moving forward with that choice does not demonstrate "pretext." Rather, it exemplifies the deliberative weighing of pros and cons of policy and operational decisions that the agency is faced with on a daily basis.

JOINT MOTION CONCERNING SPOLIATION
SANCTIONS

demonstrated "pretext." Plaintiffs do not explain what specific topic(s) would have been potentially discussed and reflected in these shorthand meeting notes that would lead to evidence of "pretext." Plaintiffs' requested evidentiary presumption is not rooted in specific facts that could possibly have been reflected in the notes and is, at a minimum, impermissibly overbroad.

Further, multiple government witnesses have testified that the notes would not have provided or led to such evidence. These witnesses affirmed that: (1) the daily 8:15 meetings were for the purpose of recapping the last 24 hours of operations at ports across the country and discussing other topics of interest, Ex. A, ¶ 3; Ex. B, ¶ 2-3; Ex. 2, 20:17-22; and that (2) the meetings were not held for the purpose of making substantive decisions or having substantive discussions about the implementation of particular policies. Ex. A, ¶ 7; Ex. B, ¶ 4. Such meetings were conducted and attended by OFO headquarters officials, not CBP Officers in the field. Ex. A, ¶ 2; Ex. B, ¶ 2. Defendants acknowledge that the implementation of queue management was sometimes discussed at these meetings, from an operational perspective. For example, the subject might arise "in the context of other operational issues," such as a particular POE facing capacity constraints, such that it had to implement queue management. Ex. B, ¶¶ 3, 5. Yet, Mr. Owen also attested that, while it was important for him to be aware of such facts, he did "not direct any particular course of action in learning of such an event." Ex. A, ¶ 8. Given that fact, and given that the participants in these meetings did not have substantive discussions about the implementation of policies, it *does* require a huge "leap of logic" (*supra* at 11) to go from these facts to a presumption that the shorthand jottings of potential discussion topics and follow-ups would have demonstrated "pretext."

Finally, Mr. Hoffman's notes of the same meetings did not produce any evidence of the type Plaintiffs seek.[13]

---

[13] Plaintiffs did not even ask Mr. Hoffman *any* questions at his deposition about the few responsive notes that he took at the meetings and were produced from his notebooks. Ex. E.

Without evidence to the contrary, the Court must find that the meeting notes were not relevant—or at least not for the reason Plaintiffs claim. *See Galicia v. Nat'l R.R. Passenger Corp.*, 2018 WL 6314191, at *4 (C.D. Cal. July 20, 2018) (finding a video that supposedly could support plaintiff's case irrelevant because defendants had submitted evidence, including a declaration, to demonstrate that the information sought could not be found on the video); *see also Nida v. Allcom*, 2020 WL 2405251, at *3, 8 (C.D. Cal. Mar. 11, 2020) (denying spoliation motion because plaintiffs' claims that destroyed documents were relevant were "based entirely on speculation"). As they cannot show that the notes at issue would have helped them prove their claims, Plaintiffs have not established that the documents were "relevant."

Plaintiffs also have not shown that Mr. Owen or Mr. Howe acted in bad faith. *Leon*, 464 F.3d at 959 (emphasis removed) (internal quotations omitted). In *Leon*, an employer terminated an employee for a "failure to satisfactorily perform his job duties." *Id.* The employee intentionally deleted *all* of the data on his laptop, which included "evidence of pornographic files." *Id*. The Ninth Circuit affirmed the district court's finding of a willful spoliation of evidence after acknowledging that the party "knew he was under a duty to preserve all data on the laptop, but intentionally deleted many files and then wrote a program to write over the deleted documents." *Id*. In contrast to the employee in *Leon*, neither Mr. Owen nor Mr. Howe believed that the meeting notes were subject to the litigation holds they received because those notes were shorthand, non-substantive notes that did not memorialize the meeting's discussions or contents in any meaningful way. Ex. B, ¶ 6; Ex. A, ¶¶ 10-11. Moreover, many significant events discussed at the meetings or follow-up actions taken following the meetings would have been captured in subsequent emails. Ex. B, ¶ 7; Ex. A, ¶ 10. Plaintiffs' argument assumes, without basis, that Mr. Owen and Mr. Howe's short-hand notes independently concerned the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to render them responsive to the litigation hold notices that the Officials received. Ex. 1 at 9 (CBPALTOTRO000395). Although CBP

officials may have at times discussed the ███████████████████

███████ at the daily operational meetings, nothing indicates that Mr. Howe or Mr.

Owen thought that the notes related to those meetings captured any substantive

information █████████████ that was relevant to this case. Ex. 5, 30:3-4;

Ex. A, ¶¶ 3, 7, 10-11; Ex. B, ¶¶ 4-6, 9.[14] Plaintiffs have not met their burden for

spoliation sanctions.

**B. Plaintiffs Have Not Shown Prejudice Sufficient to Warrant a Rebuttable Presumption.**

Even if the Court were to find that the loss of the meeting notes warranted

relief, Plaintiffs have not demonstrated the prejudice or the willfulness required for

a rebuttable presumption. *See Soulé*, 2020 WL 959245, at *4; *see also Apple Inc. v.

Samsung Elect. Co.*, 888 F. Supp. 2d 976, 993 (N.D. Cal. 2012) (recognizing that

courts have denied adverse inference instructions even where the test for spoliation

was satisfied because the "the degree of fault and level of prejudice were insufficient

to justify imposition of the sanction"). Plaintiffs hinge their prejudice argument on

the notion that the loss of the meeting notes deprived them of an opportunity to

question Mr. Howe and Mr. Owen about them. Plaintiffs do not provide any

explanation as to why they believe that the resulting testimony would have been

favorable to their claims, let alone that it would have supported the inference they

seek. Even if Plaintiffs were prejudiced, the effect is *de minimis*, because Defendants

have produced comparable evidence in the form of Mr. Hoffman's notes. Shinners

Decl. ¶ 7. "To the extent that metering or queue management was discussed during

the 8:15 am meetings, [Mr. Hoffman's] notes would likely reflect or contain a

reference to the discussion." Ex. C, ¶ 5. Additionally, anything substantive or

significant in the meeting notes would likely have been captured in email. Ex. B, ¶

7. Plaintiffs now claim that they would have been able to use the notes to refresh the

---

[14] Plaintiffs appear to argue that the Court should impute bad faith based on the
mere fact of non-preservation. But that is not in line with the case law and does not
make sense here because the notes were non-substantive.

witness's recollection about what was discussed during the meetings. But they never questioned the relevant witnesses about the specific instruction or topics that they now claim were issued or noted at particular meetings and that could have given rise to a need to refresh the witnesses' recollection. Nor did Plaintiffs use any other handwritten notes that Defendants produced in such a manner. Defendants also have produced hundreds of thousands of other contemporaneous documents, including records of other meetings and internal email communications about the implementation of metering and queue management.  Plaintiffs do not adequately explain why they could not have relied on those documents to refresh the witnesses' recollections regarding the topics discussed at the 8:15 meetings.

Plaintiffs have also not established the degree of fault necessary to warrant a rebuttable presumption. Plaintiffs do not substantiate their assertions that Defendants' conduct was willful or grossly negligent except to opine, without fact or further argument, that it was "either willful or grossly negligent." *Supra* at 2, 14. The Court should not consider such a conclusory argument. Moreover, at most, the loss of the notes was negligent because the content of the notes was non-substantive, consisting of only one or two words that were unlikely to be responsive to requests for document production in this case or otherwise relevant to the case. *See Victorino*, 2017 WL 4541653, at *6 (concluding that loss of evidence was negligent in part because individual had not been *specifically* directed to preserve the specific part in question); *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 780 (2d Cir. 1999) (finding no bad faith because individual had not been directed to preserve the specific pieces of evidence).

Plaintiffs argue that Defendants were grossly negligent because they did not issue a formal litigation hold to Mr. Howe in a timely manner. *See supra* at 7. They unflinchingly contend that "failure to timely issue a litigation hold notice is, *at the very least*, gross negligence." *Supra* at 7-8 (emphasis added) (citing *Surowiec v. Cap. Title Agency, Inc.*, 790 F. Supp. 2d 997, 1007 (D. Ariz. 2011)). They fail to mention, however, that the case they cite for this proposition, *Surowiec*, does not support a

*per se* finding of gross negligence in every case involving a failure to issue a litigation hold:

> The Court *disagrees* with *Pension Committee*'s holding that a failure to issue a litigation hold constitutes gross negligence *per se*. Per se *rules are too inflexible* for this factually complex area of the law where a wide variety of circumstances may lead to spoliation accusations. An allegedly spoliating party's culpability must be determined case-by-case.

790 F. Supp. 2d at 1007 (emphasis added). In this case, CBP has made comprehensive preservation efforts, to include early and frequent distribution of litigation hold notices. Ex. 3. And Mr. Owen *did* receive a litigation hold notice in a timely fashion. These facts preclude a finding of gross negligence here.

Even if sanctions were appropriate, options short of a rebuttable presumption exist to remedy any minimal prejudice to Plaintiffs. For example, the Court could preclude Defendants from relying on testimony about the 8:15 meetings in support of their defenses to Plaintiffs' allegations. *See Soulé*, 2020 WL 959246, at *4 (when determining a proper spoliation sanction, "the court should choose the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim"). Plaintiffs also could have sought a deposition of Mr. Howe under Rule 30(b)(1) to question him about Mr. Hoffman's notes to see if the notes refresh Mr. Howe's recollection. *See U.S. v. Faafiti*, 238 F. App'x 223, 224 (9th Cir. 2007) ("A witness may refresh his recollection with notes drafted by another person, provided that the witness is testifying from his own memory."). The non-specific, sweeping presumptions that Plaintiffs seek—which also lack evidentiary basis— would result in a windfall for Plaintiffs that far outweighs the import of these shorthand notes and the level of willfulness involved in their loss.

## IV.   CONCLUSION

The Court should deny Plaintiffs' request for sanctions. If the Court determines that corrective measures are proper, it should decline to impose

1   Plaintiffs' sweeping presumptions that bear no connection to the reality of the 8:15

2   operations meetings. The Court should order relief no more than necessary to

3   balance the evidentiary scale to remedy any prejudice to Plaintiffs.

4   Dated: September 11, 2020

5                                    MAYER BROWN LLP
6                                        Matthew H. Marmolejo
                                         Ori Lev
7                                        Stephen M. Medlock

8                                    SOUTHERN POVERTY LAW
9                                    CENTER
                                         Melissa Crow
10                                       Sarah Rich
11                                       Rebecca Cassler

12                                   CENTER FOR CONSTITUTIONAL
13                                   RIGHTS
                                         Baher Azmy
14                                       Ghita Schwarz
                                         Angelo Guisado
15

16                                   AMERICAN IMMIGRATION
                                     COUNCIL
17                                       Karolina Walters

18
                                     By: */s/ Stephen M. Medlock*
19                                       Stephen M. Medlock

20                                   *Attorneys for Plaintiffs*
21

22                                   JEFFREY BOSSERT CLARK
23                                   Acting Assistant Attorney General
                                     Civil Division
24

25                                   WILLIAM C. PEACHEY
                                     Director
26

27                                   SAMUEL P. GO
                                     Assistant Director
28

                                     JOINT MOTION CONCERNING SPOLIATION
                                     SANCTIONS

1

2      KATHERINE J. SHINNERS
       Senior Litigation Counsel
3

4      ALEXANDER J. HALASKA
       ARI NAZAROV
5      HAYDEN WINDROW
       Trial Attorneys
6

7      *s/ Dhruman Y. Sampat*
       DHRUMAN Y. SAMPAT
8      Trial Attorney
       U.S. Department of Justice
9      Civil Division
       Office of Immigration Litigation
10     District Court Section
       P.O. Box 868, Ben Franklin Station
11     Washington, D.C. 20044
       Tel: (202) 532-4281| Fax: (202) 305-7000
12     dhruman.y.sampat@usdoj.gov
13
14     *Counsel for Defendants*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT MOTION CONCERNING SPOLIATION
SANCTIONS

1

**CERTIFICATE OF SERVICE**

2          I certify that I caused a copy of the foregoing document to be served on all

3    counsel via the Court's CM/ECF system.

4    Dated:  September 11, 2020                    MAYER BROWN LLP

5

6                                                 By  */s/ Stephen M. Medlock*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28