1  MAYER BROWN LLP
     Matthew H. Marmolejo (CA Bar No. 242964)
2    *mmarmolejo@mayerbrown.com*
   350 S. Grand Avenue
3  25th Floor
   Los Angeles, CA 90071-1503
4    Ori Lev (DC Bar No. 452565)
     (*pro hac vice*)
5    *olev@mayerbrown.com*
     Stephen M. Medlock (VA Bar No. 78819)
6    (*pro hac vice*)
     *smedlock@mayerbrown.com*
7  1999 K Street, N.W.
   Washington, D.C. 20006
8  Telephone:  +1.202.263.3000
   Facsimile:   +1.202.263.3300
9
   SOUTHERN POVERTY LAW CENTER
10   Melissa Crow (DC Bar No. 453487)
     (*pro hac vice*)
11   *melissa.crow@splcenter.org*
   1101 17th Street, N.W., Suite 705
12  Washington, D.C. 20036
   Telephone: +1.202.355.4471
13  Facsimile: +1.404.221.5857

14  *Additional counsel listed on next page*
   *Attorneys for Plaintiffs*
15
                  **UNITED STATES DISTRICT COURT**
16
                **SOUTHERN DISTRICT OF CALIFORNIA**
17

18  Al Otro Lado, Inc., *et al.*,                │  Case No.:  17-cv-02366-BAS-KSC

19                    Plaintiffs,                 │  **EXHIBIT 3 IN SUPPORT OF JOINT**
                                                  │  **MOTION CONCERNING**
20          v.                                    │  **SPOLIATION SANCTIONS**

21  Chad F. Wolf,[1] *et al.*,

22                    Defendants.

23

24

25

26

27  ─────────────────────
28  [1]  Acting Secretary Wolf is automatically substituted for former Acting Secretary
   McAleenan pursuant to Fed. R. Civ. P. 25(d).

                              EXHIBIT IN SUPPORT OF JOINT MOTION
                                CONCERNING SPOLIATION SANCTIONS

CENTER FOR CONSTITUTIONAL RIGHTS
    Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
    *bazmy@ccrjustice.org*
    Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
    *gschwarz@ccrjustice.org*
    Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
    *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
    Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
    *sarah.rich@splcenter.org*
    Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
    *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
    Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
    *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOSEPH H. HUNT
Assistant Attorney General, Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
ARI NAZAROV (CT 414491)
ALEXANDER J. HALASKA (IL 6327002)
DHRUMAN Y. SAMPAT(NJ 270892018)
Trial Attorneys
United States Department of Justice
Civil Division
Office of Immigration Litigation – District
Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 514-4120 | Fax: (202) 305-7000
*Counsel for Defendants*

### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | |
| v. | **DEFENDANTS' SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' SIXTH SET OF INTERROGATORIES TO ALL DEFENDANTS** |
| CHAD F. WOLF, Acting Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*, | |
| *Defendants* | |

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendants, in their official capacities, hereby submit supplemental objections and responses to Plaintiffs' Sixth Set of Interrogatories to All Defendants (Nos. 22-25). Specifically, Defendants hereby supplement their response to Interrogatory No. 24

Defendants' objections and responses are based on the information known to Defendants at this time and are made without prejudice to the assertion of additional objections should Defendants identify additional grounds for objection. Defendants specifically reserve the right to amend, further supplement, clarify, revise, or correct any or all of their responses to these Interrogatories. By responding to and supplementing these Interrogatories, Defendants do not waive, and specifically preserve, their right to assert any and all objections to the admissibility of any documents on any and all grounds, including, but not limited to, competency, relevance, materiality, and privilege.

Furthermore, Defendants respond herein without in any manner admitting or implying that Plaintiffs' Interrogatories (or Defendants' responses) are relevant to any party's claim or defense or proportional to the needs of the case. None of Defendants' responses herein should be construed or understood as an admission or denial of any legal issues, nor an agreement with any of Plaintiffs' characterizations of legal or factual issues.

## <u>GENERAL OBJECTION</u>

Defendants object to these Interrogatories (and all discovery requests) as facially improper in this APA case. "[I]t is black-letter administrative law that in an APA case, a reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'" *Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013) (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)); *First Nat. Bank & Trust v. Dep't of Treasury*, 63 F.3d 894, 897 (9th Cir. 1995) ("Generally, judicial review of

an agency decision is limited to the administrative record." (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). These Interrogatories are proper only to the extent they seek information that is absolutely necessary "to ascertain the contours of the precise policy at issue," *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 530 F.3d 925, 928 (D.C. Cir. 2008), and only to the extent they seek the information the agency had before it when it made its decision, *Hill Dermaceuticals, Inc.*, 709 F.3d at 47. Defendants are not withholding any information on the basis of this objection, however.

## OBJECTIONS TO DEFINITIONS

1.      Defendants object to the definition of "You" and "Your," as defined in "Definition A," as overbroad and unduly burdensome in the context of this litigation and these interrogatory responses. Unless otherwise specified, Defendants interpret the definition of "You" or "Your" as referring to the named Defendants in their official capacities, and individual employees of the U.S. Department of Homeland Security (DHS) or U.S. Customs and Border Protection (CBP) from whom CBP or DHS has the legal right to obtain upon demand information relevant to the claims and defenses in this case. Defendants do not interpret the definition of "You" or "Your" to include DHS or CBP components or subcomponents that are not relevant to this litigation.

2.      Defendants object the definition of "Port of Entry," as defined in "Definition B," as overly broad, unduly burdensome, and not proportional to the needs of the case in the context of these Interrogatories.   The putative class representatives alleged that they applied for admission or attempted to apply for admission at only the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry. Thus, even assuming for argument's sake that the Court certifies the broadest possible class the representative parties might be legally permitted to represent, they still cannot challenge actions taken by other ports of entry.

DEFENDANTS' SUPP. RESPONSES TO
PLAINTIFFS' SIXTH SET OF INTERROGATORIES
TO ALL DEFENDANTS
Case No. 3:17-cv-02366-BAS-KSC

. . . to guard against divulging the attorney's strategies and legal impressions . . . .").

Further, Defendants object to Interrogatory No. 22 as premature because no class has been certified with respect to the merits of Plaintiffs claims. *See generally Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501–02 (9th Cir.1996) (recognizing that "injunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification"). Further, if a class were certified, the claims of the class should be limited "to those fairly encompassed by the named plaintiff's claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). Accordingly, Defendants will not respond to this Interrogatory to the extent it seeks information about harms to members of the putative/proposed class(es), including specific harms to specific members.

In addition, Defendants also object to Interrogatory 22 as vague and ambiguous, as Plaintiffs do not clearly define the phrases "[r]emedies available at law, such as monetary damages." Specifically, Plaintiffs indicate that the phrase shall have the same meaning as used in *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391 (2006). In *eBay*, the Supreme Court reviewed a request for a permanent injunction in a patent infringement dispute, and rejected the general rule applied by the Court of Appeals that an injunction should issue once patent infringement has been established. The case provides no clear or relevant definition, beyond merely mentioning it, of "[r]emedies available at law, such as monetary damages" that would appear applicable to the facts of this case.

Defendants also object to this Interrogatory in accordance with General Objections Number 1 and Objections to Definitions Numbers 1and 3.

**Response:** Subject to, and without waiving, the foregoing objections, Defendants respond as follows:

Defendants hereby incorporate their response to Interrogatory No. 22.

DEFENDANTS' SUPP. RESPONSES TO
PLAINTIFFS' SIXTH SET OF INTERROGATORIES
TO ALL DEFENDANTS
Case No. 3:17-cv-02366-BAS-KSC

## Interrogatory 24

Describe with as much specificity as possible the efforts that you undertook to preserve documents, electronically stored information, and things relevant to the claims and defenses in this litigation, including, but not limited to, the date on which CBP employees and third-parties were advised to preserve such materials, the names of the individuals that received a notice to preserve such materials, the steps that you undertook to ensure that such materials were not destroyed, deleted, overwritten, modified, or discarded, and instances where you learned that such materials were destroyed, deleted, overwritten, modified, or discarded.

**Objections:** Defendants object to this Interrogatory as exceeding the number of interrogatories permitted without leave of court under Federal Rule of Civil Procedure 33, because Plaintiffs' Interrogatory No. 21 contained four discrete subparts and thus should have been counted as Interrogatories Nos. 21-24. *See also* L.R. 33.1 ("No party will serve on any other party interrogatories, which, including discrete subparts, number more than twenty-five interrogatories without leave of court."). Specifically, Plaintiffs' Interrogatory No. 21 contained four discrete subparts: (a) whether arriving noncitizens were permitted to step onto U.S. soil before they were metered and the number of times that this occurred, (b) whether arriving noncitizens were escorted from U.S. soil back to Mexican soil and the number of times that this occurred, (c) whether arriving noncitizens were permitted to stay in the space between the limit line and the POE building and the number of times that this occurred, and (d) when you began metering/queue management at the POE. These subparts are not "logically or factually subsumed within and necessarily related to the primary question" and therefore must be construed as separate interrogatories. *See White v. Cinemark USA, Inc.*, No. 04CV0397 GEB CMK, 2005 U.S. Dist. LEXIS 41814, 2005 WL 3881658, at *2-3 (E.D. Cal. Mar. 28, 2005) (holding that asking for "each and every fact" relating to each affirmative defense

should be treated as separate interrogatories since each defense may be both factually and logically different); *Bovarie v. Schwarzenegger*, No. 08CV1661 LAB NLS, 2011 U.S. Dist. LEXIS 17006, 2011 WL 719206, at *2 (S.D. Cal. Feb. 22, 2011) (holding that an interrogatory that seeks a response as to multiple affirmative defenses is counted as a separate interrogatory for each affirmative defense . . . ). Accordingly, Plaintiffs have exceeded the number of interrogatories allowed by the rules and no response by the Defendants is required.

Defendants object to this Interrogatory to the extent it calls for communications, information, and documents protected by the attorney-client privilege and work product doctrine, including communications from counsel providing legal advice regarding preservation and documents reflecting the mental impressions of counsel concerning information that may be relevant to claims or defenses.

Defendants object to this Interrogatory as vague and ambiguous as Plaintiffs have not defined what they mean by "efforts." Defendants construe the term "efforts" as actions.

Defendants additionally object to this Interrogatory as vague and ambiguous, and potentially overbroad, because Plaintiffs have not defined "things." Defendants construe the term "things" as "tangible things" within the scope of Defendants' preservation obligations.

Defendants object to the term "modified" as used in this Interrogatory as vague and overly broad, given that certain documents may be modified as part of the drafting/creation process in the ordinary course of business.

Defendants also object to this Request as outside the proper scope of discovery because it seeks discovery about discovery, rather than seeking information relevant to the claims and defenses in this case. To the extent Plaintiffs argue that they are seeking this information because Defendants' disclosures and related evidence with

DEFENDANTS' SUPP. RESPONSES TO
PLAINTIFFS' SIXTH SET OF INTERROGATORIES
TO ALL DEFENDANTS
Case No. 3:17-cv-02366-BAS-KSC

respect to preservation make a "preliminary showing of spoliation," which Defendants dispute, the Request is still disproportionate to the needs of the case. It is not narrowly tailored to address the preservation issues but instead seeks information far beyond that related to any preservation issues identified. In particular, Defendants object to providing preservation instructions related to DHS or any of its components other than CBP. Relatedly, Defendants object to this Interrogatory as unduly burdensome and disproportionate to the needs of the case because it purports to require Defendants to provide the name of every individual who received notice to preserve relevant documents and electronically stored information (ESI) for this litigation. Given the scope of the case, which alleges a border-wide policy or practices of CBP's Office of Field Operations along the Southwest border, as well as the amendments made to the complaint over time and the changes to Plaintiffs' arguments and requests for relief, it would be unduly burdensome to provide the name of every individual within CBP who received a notice to preserve relevant documents and ESI, including individuals who do not possess information or documents that are ultimately deemed not relevant to the claims or defenses in this case or responsive to any of Plaintiffs' document requests.

Defendants object to this Interrogatory to the extent it purports to exceed the requirements of the September 17, 2018, Order Granting in Part and Denying in Party Defendants' Motion for a Protective Order, Dkt. 170, which required Defendants to preserve video, *not otherwise overwritten in the ordinary course of business*, of (1) specific incidents of an individual's withdrawal of their application for admission, if identified by plaintiffs within 45 days; (2) other specific "incidents between alleged asylum seekers and the government," if identified by plaintiffs within 45 days; (3) "surveillance ESI of lines of individuals attempting to enter the San Ysidro POE between December 18, 2017 and December 26, 2017"; and (4) other incidents of "surveillance ESI" if identified by the plaintiffs within 45 days.

DEFENDANTS' SUPP. RESPONSES TO
PLAINTIFFS' SIXTH SET OF INTERROGATORIES
TO ALL DEFENDANTS
Case No. 3:17-cv-02366-BAS-KSC

Defendants also object to this request in accordance with General Objection Number 1.

**Response:**   Subject to, and without waiving, the foregoing objections, Defendants respond as follows:

**Office of Field Operations (OFO) Headquarters, Office of Information Technology (OIT) Headquarters, and Office of Professional Responsibility (OPR) (Headquarters):**

_Steps Taken to Advise Employees of Preservation Obligations_

A litigation hold notice was initially distributed in this case on or about July 20, 2017 (July 2017 HQ Notice), to, among others: Defendant Executive Assistant Commissioner Todd Owen; the individuals included on an "OFO HQ Directors" list serve, which includes the directors of OFO headquarters programs, including the programs within OFO's Admissibility and Passenger Programs and Operations Directorates; the Assistant Commissioner of CBP's Office of Information Technology (OIT); and the Assistant Commissioner of CBP's Office of Professional Responsibility (OPR).  On or about July 20, 2017, OPR further distributed this litigation hold to individuals within OPR's Investigative Operations Division.

An additional litigation hold notice, which supplemented the July 2017 Notice, was distributed on or about June 5, 2018 (June 2018 HQ Notice) to, among others: the Migration Crisis Action Team; the OFO Chief of Staff; the Assistant Commissioner of OIT; and the Assistant Commissioner of OPR.  On or about June 5, 2018, OPR further distributed this litigation hold to individuals within OPR's Investigative Operations Division.

On or about December 3, 2018, an additional litigation hold notice (December 2018 HQ Notice), which superseded the prior litigation hold notices, was distributed to, among others: Defendant Executive Assistant Commissioner Todd Owen; the

CONFIDENTIAL

Migration Crisis Action Team; the OFO Chief of Staff; the Assistant Commissioner of OPR; and the Assistant Commissioner of OIT.  On or about December 3, 2018, OPR further distributed this litigation hold to individuals within OPR's Investigative Operations Division.  On or about December 20, 2018, the OFO Chief of Staff further distributed this litigation hold to all OFO headquarters Executive Directors, all Directors of Field Operations, and all Border Security Coordinators within the Field Offices.

An additional litigation hold notice, which superseded the prior litigation hold notices, was distributed on or about March 30, 2020 (March 2020 HQ Notice) to among others, various directors of OFO headquarters programs, including programs within OFO's Admissibility and Passenger Programs and Operations Directorates; the Assistant Commissioner of OIT; and the Assistant Commissioner of OPR.  On or about April 7, 2020, OPR further distributed this litigation hold to individuals within OPR's Investigative Operations Division.

In addition to the written litigation hold notices, on or about July 14, 2017, EAC Owen and the Assistant Commissioner of OIT were notified of the need to preserve relevant video from the ports of entry.  EAC Owen communicated this preservation obligation to the four Directors of Field Operations on the southwest border, consistent with their preservation obligations.

Additionally, on or about May 19 and 22, 2020 all Field Offices on the southwest border were specifically reminded of their continuing obligation to preserve all text and WhatsApp communications with Mexico regarding metering or queue management.

*Additional headquarters steps taken to ensure that that such materials were not destroyed, deleted, overwritten, modified, or discarded.*

All CBP email is retained and cannot be deleted or altered by the individual users.  CBP migrated its email to Microsoft's Office 365 over several months in

DEFENDANTS' SUPP. RESPONSES TO
PLAINTIFFS' SIXTH SET OF INTERROGATORIES
TO ALL DEFENDANTS
Case No. 3:17-cv-02366-BAS-KSC

CONFIDENTIAL

2019 (completing the migration in July 2019).  Prior to this migration, CBP utilized email as a service, in which copies of all email sent or received were maintained, in chronological order, on a "journal" server operated by a third-party contractor. During the migration to Office 365, all users' inboxes were migrated to Office 365, and emails are now stored in the Microsoft Office365 Cloud service.  In Office 365, no message is deleted from any mailbox.  A "deleted" message is not actually deleted, just removed from the user's view, but is retained in a "recovery" folder. CBP has enabled "legal hold" for all CBP accounts within O365, ensuring that all emails are maintained and discoverable even if deleted by the end user.

_Instances where you learned that such materials were destroyed, deleted, overwritten, modified, or discarded._

CBP learned in January 2020 that Randy Howe, former Executive Director for Operations, OFO, did not retain the non-substantive, hand-written notes that he took to and/or at daily 8:15 operational meetings among OFO leadership that he attended from approximately October 2017 through December 2019.   These meetings consist of "a 24-hour recap of the activities that took place in the ports of entry." Owen Dep. 30: 3-4.  These notes were "not substantive," and were "[j]ust very basic words to trigger [Randy Howe's] mind on events that happened in the last 24 hours," for purposes of advising EAC Owen.  Howe Dep. 20:17; 21: 1-5.  They also consisted of follow-up reminders designed to "trigger [Mr. Howe's] memory so [he] follow[ed] [his] boss' request."  _Id._ 22: 13.  CBP learned in late May 2020 that Custodian Todd Owen may have also taken similar non-substantive notes designed to trigger his own memory at daily meetings, as needed, and similarly not preserved these notes.

CONFIDENTIAL

**San Diego Field Office (SDFO)**

*Litigation Hold Notices and Preservation Instructions.*

On or about July 13, 2017, a litigation hold notice (July 2017 SDFO Notice) was distributed to, among others, the Director of Field Operations, the then-Assistant Director of Field Operations (Border Security), the Port Directors of the San Ysidro and Calexico POEs, and OIT's Information System Security Manager, Field Support Directorate.

On or about November 16, 2017, the July 2017 HQ Notice was distributed to, among others, the Director of Field Operations, the Port Director and the Assistant Port Directors of the San Ysidro POE, and various other managers at both the San Diego Field Office and the San Ysidro POE.

On or about December 14, 2017, a litigation hold notice (December 2017 SDFO Notice) was distributed to, among others, the Director of Field Operations, the Deputy Director of Field Operations, the then-Assistant Director of Field Operations (Border Security), and the Port Director of the San Ysidro POE.

On or about June 7, 2018, the June 2018 HQ Notice was distributed to, among others, the Director Field Operations, the then-Assistant Director of Field Operations (Border Security), and the Port Director of the San Ysidro POE.

On various dates in December 2018 and/or January 2019, the December 2018 HQ Notice was distributed to, among others, the Director of Field Operations, the Deputy Director of Field Operations, then-Assistant Director of Field Operations (Border Security), and the Port Directors of the San Ysidro, Otay Mesa, and Calexico POEs.

On or about April 7, 2020, the March 2020 HQ Notice was distributed to, among others, the Director of Field Operations, the Deputy Director of Field Operations, then-Assistant Director of Field Operations (Border Security), and the Port Directors of the San Ysidro, Otay Mesa, and Calexico POEs.

DEFENDANTS' SUPP. RESPONSES TO
PLAINTIFFS' SIXTH SET OF INTERROGATORIES
TO ALL DEFENDANTS
Case No. 3:17-cv-02366-BAS-KSC

CONFIDENTIAL

Additionally, individuals within the San Diego Field Office were periodically reminded via email of the need to preserve all WhatsApp and text messages that may be relevant to this litigation.

*Additional steps taken to ensure that that such materials were not destroyed, deleted, overwritten, modified, or discarded*

The San Diego Field Office first began searching for and preserving video footage pertaining to the named Plaintiffs shortly after the initial Complaint was filed. The San Diego Field Office also took additional steps to retain and preserve video identified by Judge Crawford or Plaintiffs in accordance with the September 17, 2018 Order Granting in Part and Denying in Part Defendants' Motion for a Protective Order (Dkt. 170). In total, CBP preserved approximately 700 video and/or audio clips from the San Ysidro and Otay Mesa POEs in connection with this litigation.

On or about December 9, 2018, the San Ysidro POE purchased eight (8) new Network Video Recorders (NVRs), at an estimated cost of $15,000.00 each, in order to preserve the video and/or audio recordings that were maintained on eighteen (18) previously-used NVRs.

In December 2019, CBP's local OIT in the San Diego Field Office worked with the identified document custodians in this case and other individuals who may now or in the future have relevant messaging communications—including but not limited to the Director of Field Operations, the Port Director of the San Ysidro POE, the Assistant Director of Field Operations (Border Security), and other managers— to ensure that all WhatsApp and text messages on government cell phones were synced to back up to a cloud service.

Additionally, a Watch Commander and a Branch Chief took screen shots of responsive text and WhatsApp with INAMI in February 2020 and in June 2020, respectively, to further ensure preservation of text messages.

19

CONFIDENTIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Instances where you learned that such materials were destroyed, deleted,*
*overwritten, modified, or discarded.*

Assistant Director of Field Operations (Border Security) Marin exchanged messages via the WhatsApp messaging application on her government-issued mobile device with officials from the Mexican immigration agency, INAMI, related to metering. The communications would typically relate to the number of individuals without documents sufficient for lawful entry that the San Ysidro POE could take in each day. Assistant Director of Field Operations (Border Security) Marin's WhatsApp messages with INAMI related to metering from approximately May 2016 to approximately September 2016 were lost approximately ten months prior to the start of this litigation. Her WhatsApp messages with INAMI from approximately September 2016 to approximately February 2017 and from approximately December 2017 to approximately April 2018 were lost when her cell phone stopped working in approximately April 2018. CBP is still ascertaining whether Assistant Director of Field Operations (Border Security) Marin's WhatsApp messages with INAMI from approximately April 2018 to approximately July 2019 were preserved.

**Amended and/or Supplemental Response for San Diego Field Office (SDFO)**

Defendants supplement this response to state as follows:

*Litigation Hold Notices and Preservation Instructions.*

On or about July 13, 2017, the July 2017 SDFO Notice was distributed to OIT's e-Discovery Team, in addition to the individuals listed in Defendants' initial response.

Until on or about January 8, 2018, passenger operations located at the Otay Mesa POE was, organizationally, a part of the San Ysidro POE. The Port Director and the Assistant Port Directors (both Tactical and Passenger) of the San Ysidro POE together oversaw the Otay Mesa POE's passenger operations located at the

20

DEFENDANTS' SUPP. RESPONSES TO
PLAINTIFFS' SIXTH SET OF INTERROGATORIES
TO ALL DEFENDANTS
Case No. 3:17-cv-02366-BAS-KSC

CONFIDENTIAL

Otay Mesa POE. As such, when the Port Director of the San Ysidro POE received the July 2017 SDFO Notice on or about July 13, 2017, the July 2017 HQ Notice on or about November 16, 2017, and the December 2017 SDFO Notice on or about December 14, 2017, he received those notices based on all aspects of SDFO's operations that fell under his command, including passenger operations located at the Otay Mesa POE and all operations located at the San Ysidro POE. Likewise, when the Assistant Port Directors of the San Ysidro POE received the July 2017 SDFO Notice on or about November 16, 2017, they received that notice based on all aspects of SDFO's operations that fell under their command, including passenger operations located at the Otay Mesa POE.

On or about December 20, 2018, the December 2018 HQ Notice was distributed to the then- and previous- Port Directors of the Tecate POE, the then- and previous- Port Directors of the Andrade POE, and to the Port Director and Assistant Port Director (Passenger) of the Otay Mesa POE.

*Instances where you learned that such materials were destroyed, deleted, overwritten, modified, or discarded.*

Defendants have, since serving their initial response to this Interrogatory, ascertained that Assistant Director of Field Operations (Border Security) Marin's WhatsApp messages with INAMI from approximately April 2018 to approximately July 2019 were not preserved.

As stated in Defendant's initial response to this Interrogatory, Assistant Director of Field Operations (Border Security) Mariza Marin's WhatsApp messages with INAMI concerning metering from approximately May 2016 to approximately September 2016 were lost approximately ten months prior to the start of this litigation. Some of those messages, from late May and/or early June 2016, were exchanged in a WhatsApp chat that also included a Branch Chief and a Watch Commander, neither of whom preserved those WhatsApp messages.

CONFIDENTIAL

**Tucson Field Office**

*Litigation Hold Notices and Preservation Instructions*

The Tucson Field Office distributed the July 2017 HQ Notice on or about July 27, 2017, to various supervisors at the Tucson Field Office and its POEs, including, among others, the former Director of Field Operations; the Assistant Director of Field Operations, Trade; the Acting Assistant Director of Field Operations, Border Security; the Assistant Director, Mission Support, and the Port Director of the Nogales POE.

The Tucson Field Office distributed the December 2018 HQ Notice on or about December 20, 2018, to various supervisors at the Tucson Field Office and its POEs, including, among others, the Director of Field Operations; the Acting Assistant Director of Field Operations, Trade; the Acting Assistant Director of Field Operations, Border Security; the Assistant Director, Mission Support, and the Port Director of the Nogales POE.

The Tucson Field Office distributed the March 2020 HQ Notice, on or about April 17, 2020, to various supervisors at the Tucson Field Office and its POEs, including, among others, the Director of Field Operations; the Assistant Director of Field Operations, Trade; the Assistant Director of Field Operations, Border Security; the Assistant Director, Mission Support; and the Port Director of the Nogales POE.

On or about August 18, 2017, the Tucson Field Office also distributed the July 2017 HQ Notice to CBP's Office of Information Technology, Southwest Division.

*Additional steps taken to ensure that that such materials were not destroyed, deleted, overwritten, modified, or discarded*

The Nogales POE identified and preserved several video clips in response to requests from Plaintiffs in November 2019, in accordance with the Court's protective order regarding video preservation.

DEFENDANTS' SUPP. RESPONSES TO
PLAINTIFFS' SIXTH SET OF INTERROGATORIES
TO ALL DEFENDANTS
Case No. 3:17-cv-02366-BAS-KSC

CONFIDENTIAL

On or about November 30, 2017, the Tucson Office of Information and Technology preserved the computer hard drive of departing employee William K. Brooks, former Director of Field Operations, Tucson Field Office, who retired from public service in December 2017.

*Instances where you learned that such materials were destroyed, deleted, overwritten, modified, or discarded.*

Defendant CBP is not aware of any instances of destruction, deletion, overwriting, discarding, or otherwise failing to preserve relevant information within the Tucson Field Office or the Nogales POE.

**Amended and/or Supplemental Response for the Tucson Field Office**:

Defendants supplement this response as follows:

*Litigation Hold Notices and Preservation Instructions*

In addition to the individuals described in Defendants' initial response, the July 2017 HQ Notice, the December 2018 HQ Notice, and the March 2020 HQ Notice were distributed to all Port Directors in the Tucson Field Office's area of responsibility, including the land POEs of Nogales, Douglas, Naco, Lukeville, Sasabe, and San Luis.

**Laredo Field Office**

*Litigation Hold Notices and Preservation Instructions.*

All Port Directors in the Laredo Field Office received a litigation hold notice in this action on or about July 17, 2017 (July 2017 LFO Notice).

On or about December 20, 2018, the December 2018 HQ Notice was distributed to all Port Directors in the Laredo Field Office. It was re-distributed among the ports in the Laredo Field Office on or about January 29, 2019.

The March 2020 litigation hold was distributed to all Port Directors in the Laredo Field Office on or about March 31, 2020. It was re-distributed among the ports in the Laredo Field Office on or about June 10, 2020.

DEFENDANTS' SUPP. RESPONSES TO PLAINTIFFS' SIXTH SET OF INTERROGATORIES TO ALL DEFENDANTS
Case No. 3:17-cv-02366-BAS-KSC

CONFIDENTIAL

*Additional steps taken to ensure that that such materials were not destroyed, deleted, overwritten, modified, or discarded*

Upon receiving the July 17, 2017 litigation hold notice in this case, the ports of entry in the Laredo Field Office began taking immediate steps to identify and preserve responsive documents.  The Laredo POE also began taking steps to identify and preserve relevant video footage immediately following the filing of the Initial Complaint in this action.  Following the filing of the Amended Complaint, the Laredo and Hidalgo POEs took actions to identify and preserve relevant video footage.  Additionally, the Laredo, Hidalgo, and Brownsville POEs searched for relevant video footage in response to requests from Plaintiffs, in accordance with the Court's protective order regarding video preservation.  No responsive video was identified.

Various CBP officials at the Laredo, Brownsville, and Hidalgo POEs have communicated with the Mexican government and/or shelters in Mexico by text message or WhatsApp.  These individuals have received multiple notices of the need to preserve such messages, including in March 2020, April 2020, May 2020, and June 2020.  The port of Laredo has preserved text files of WhatsApp messages dating back to September 2019.  The port of Hidalgo has taken screenshots or provided text files of messages dating back to February 2020 currently on individuals' phones.  The Port of Brownsville has preserved WhatsApp messages, via iCloud and other methods, dating back to August 2019.

*Instances where you learned that such materials were destroyed, deleted, overwritten, modified, or discarded.*

On February 5, 2020, a classified information data spill impacted the computer systems and cellular phones of some individuals in the Laredo Field Office, Laredo POE, Hidalgo POE, and Brownsville POE.  OIT took immediate steps to sanitize the hard drives and phones of impacted individuals.  These steps

DEFENDANTS' SUPP. RESPONSES TO
PLAINTIFFS' SIXTH SET OF INTERROGATORIES
TO ALL DEFENDANTS
Case No. 3:17-cv-02366-BAS-KSC

CONFIDENTIAL

included factory defaulting all assigned phones that had received the classified information via email, including the deletion of all text and WhatsApp messages that were present on those phones. Custodian Carlos Rodriguez's phone was impacted by this data spill, as were the phones of at least one other individual in the Hidalgo POE with responsive WhatsApp messages. Thus, all potentially relevant text and WhatsApp messages from early 2018 through February 2020, that had not been otherwise preserved via screen shot or other means, were lost when OIT returned the devices to factory specifications.

This classified information spill did not result in the loss of any individual's email, as all CBP email is stored on data servers, as identified above.

Defendant CBP is still in the process of ascertaining the full extent to which the ports within the Laredo Field Office exchanged text or WhatsApp messages with INAMI and/or shelters in Mexico related to metering, and the extent to which any such communications have been preserved.

**Amended and/or Supplemental Response for Laredo Field Office**

Defendants supplement this response as follows:

*Additional steps taken to ensure that that such materials were not destroyed, deleted, overwritten, modified, or discarded and Instances where you learned that such materials were destroyed, deleted, overwritten, modified, or discarded*

In addition to the individuals listed above, various officials at the Eagle Pass, Rio Grande City, and Del Rio POEs utilized WhatsApp to communicate with INAMI and individuals operating shelters in Mexico concerning metering. Much of this information was preserved, but some was not.

At Eagle Pass, three individuals—Assistant Port Director for Passenger/Tactical, a supervisory CBP officer, and an additional CBP officer—were primarily responsible for communicating with IMAMI concerning metering. These individuals began utilizing WhatsApp to communicate with INAMI concerning

DEFENDANTS' SUPP. RESPONSES TO
PLAINTIFFS' SIXTH SET OF INTERROGATORIES
TO ALL DEFENDANTS
Case No. 3:17-cv-02366-BAS-KSC

CONFIDENTIAL

metering in approximately June 2019.  These individuals have preserved screen shots of relevant messages from approximately August 2019 to August 2020.  All messages between approximately June and August 2019 were not preserved

At the Rio Grande City POE, a Chief CBP Officer, utilized WhatsApp to communicate with INAMI concerning metering, on an as-needed basis, between October 2019 and February 2020.  This individual has preserved, through screen shot and text file, these responsive messages.  He has also backed up his phone to a cloud storage provider .

At the Del Rio POE, the Port Director utilized WhatsApp to communicate with INAMI and with individuals operating shelters in Mexico concerning metering between February 2019 and July 2020.  The Port Director has preserved, through screen shot and text file, responsive messages for this time period. She has also backed up her phone to a cloud storage provider .

Additionally, data from an application called Telegram, which was utilized only at the Eagle Pass POE for internal CBP communications during a two-week period in August to September of 2018, has been lost. Some CBP officers used the Telegram application during this two-week period to communicate with their supervisors regarding queue management.  The port stopped using this application in or around September 2018, and the application was removed from the officers' phones.  All data on that application were deleted at that time.

**El Paso Field Office**

*Litigation Hold Notices and Preservation Instructions.*

The Director of Field Operations, along with all Port Directors in the El Paso Field Office, received the July 2017 HQ Notice on or about July 20, 2017.

The December 2018 HQ Notice was distributed to the Director of Field Operations and all Port Directors in the El Paso Field Office on or about December

DEFENDANTS' SUPP. RESPONSES TO
PLAINTIFFS' SIXTH SET OF INTERROGATORIES
TO ALL DEFENDANTS
Case No. 3:17-cv-02366-BAS-KSC

CONFIDENTIAL

21, 2018.

*Additional steps taken to ensure that that such materials were not destroyed, deleted, overwritten, modified, or discarded*

The El Paso POE searched for relevant video footage in response to requests from Plaintiffs, in accordance with the Court's protective order regarding video preservation, but did not identify any relevant footage.

CBP has taken screenshots of certain text messages, dating back to April 2019, exchanged between OFO managers at the El Paso POE and INAMI related to metering.

*Instances where you learned that such materials were destroyed, deleted, overwritten, modified, or discarded.*

Defendant CBP is aware of an individual who exchanged text messages with INAMI related to metering from approximately November 2018 to approximately March 2020 who deleted them to free storage space on his government mobile device. Defendant CBP is still in the process of ascertaining the extent the full extent to which the El Paso POE exchanged text messages with INAMI related to metering, and the full extent to which any such communications have been preserved.

**Amended/Supplemental Response for the El Paso Field Office**:

Defendants supplement this response as follows:

*Additional steps taken to ensure that that such materials were not destroyed, deleted, overwritten, modified, or discarded and Instances where you learned that such materials were destroyed, deleted, overwritten, modified, or discarded*

Seven Watch Commanders at the port of El Paso have communicated with INAMI concerning metering via text message. Much of this information was preserved, but some messages were not.

DEFENDANTS' SUPP. RESPONSES TO
PLAINTIFFS' SIXTH SET OF INTERROGATORIES
TO ALL DEFENDANTS
Case No. 3:17-cv-02366-BAS-KSC

CONFIDENTIAL

1

2      Of the seven individuals who communicated with INAMI concerning

3   metering, two individuals had primary responsibility for communicating with

4   INAMI, beginning in November 2018.  One of those individuals communicated with

5   INAMI from November 2018 through December 2019 on an as-needed basis.

6   Specifically, this individual exchanged text messages with INAMI on a sporadic

7   basis between November 2018 through August 2019.  Between August and October

8   2019, this individual exchanged messages with INAMI approximately every other

9   day.  Between October and December 2019, this individual exchanged text messages

10  with INAMI on a sporadic basis.  This individual  has provided screen shots of

11  relevant messages dating from April 2019 through December 2019.  As of May

12  2020, this individual's phone has been backed up to a cloud storage provider.  This

13  individual did not affirmatively delete any messages, but messages prior to April

     2019 were not preserved.

14      The second individual communicated with INAMI from November 2018 on

15  an as-needed basis until March 2020.  As indicated in Defendants' initial response

16  to this Interrogatory, this individual deleted responsive messages from his phone in

17  order to free up storage space on his phone.  As of May 2020, this individual's phone

18  has been backed up to a cloud storage provider.

19      Of the remaining five individuals who communicated with INAMI via text

20  message concerning metering, one individual communicated with INAMI, on an as-

21  needed basis, from June 2019 to March 2020.  Another individual communicated

22  with INAMI via text message, on an as-needed basis, from May 2019 through March

23  2020.  The third individual communicated with INAMI via text message, on an as-

24  needed basis, from May 2019 to January 2020.  The fourth individual communicated

25  with INAMI via text message, on an as-needed basis, during the month of March

26  2020.  These four individuals have preserved their responsive messages via screen

27  shot and have taken steps to back up their phone to a cloud storage provider.  The

28

28

DEFENDANTS' SUPP. RESPONSES TO
PLAINTIFFS' SIXTH SET OF INTERROGATORIES
TO ALL DEFENDANTS
Case No. 3:17-cv-02366-BAS-KSC

CONFIDENTIAL