JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
SAMUEL P. GO
Assistant Director
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
ALEXANDER J. HALASKA (IL 6327002)
ARI NAZAROV (CT 414491)
HAYDEN WINDROW (NY 4384749)
DHRUMAN Y. SAMPAT (NJ 270892018)
United States Department of Justice
Civil Division
Office of Immigration Litigation – District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4281 | Fax: (202) 305-7000
Trial Attorneys
*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | Hon. Karen S. Crawford |
| v. | **DEFENDANTS' EXHIBIT C IN SUPPORT OF JOINT MOTION REGARDING SPOLIATION DISPUTE** |
| CHAD F. WOLF, Acting Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*, | |
| *Defendants* | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

DEFENDANTS' EX. C IN SUPPORT OF JOINT MOTION FOR SPOLIATION DISPUTE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, ) <br>    *Plaintiffs,* ) <br> ) <br> ) <br> v. ) <br> ) <br> Chad Wolf, *et al.*, ) <br>    *Defendants.* ) <br> _____ ) | No. 3:17-cv-02366-BAS-KSC |

**DECLARATION OF TODD HOFFMAN**

I, Todd Hoffman, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records, and reasonably relied upon in the course of my employment, hereby declare as follows relating to the above-captioned matter.

1.  I am currently the Executive Director, Admissibility and Passenger Programs (APP), Office of Field Operations (OFO), U.S. Customs and Border Protection (CBP). In this position, I oversee nine Director-level program offices: the Admissibility Review Office; Electronic System for Travel Authorization Program Management Office; Fraudulent Document Analysis Unit; Traveler Entry Programs; Immigration Advisory Programs; Traveler Policy; Enforcement Programs Division; Trusted Traveler Programs; and the Traveler Call Center. I have served in this position since 2015. Prior to serving in this role, I was the Port Director at Los Angeles International Airport.

2.  In my position as the Executive Director of APP, I attend a daily 8:15 a.m. operational meeting at OFO Headquarters. These meetings are internal to OFO senior leadership and are attended by the OFO Executive Assistant Commissioner (EAC) Todd Owen, the EAC's chief of staff, the deputy EAC, the deputy EAC's chief of staff, and the six OFO

1

        Executive Directors. Other individuals may attend this meeting to provide information on a particular event or topic, depending on the events that transpired in the previous twenty-four hours leading up to the meeting.

3. The intent of these daily meetings is to brief EAC Owen on significant events that occur at all ports of entry in the United States, to include all air, land, and sea ports within the preceding twenty-four hours and discuss particular upcoming events or general topics that warrant EAC Owen's attention. The order of these meetings is relatively informal. These meetings typically begin with a discussion of any topics that EAC Owen determined to be important, and continue with an "around the room," during which time meeting participants brief EAC Owen on topics they believe EAC Owen should be made aware. There is no agenda or list of standing topics for these meetings. Rather, because the goal of each meeting is to keep senior leadership abreast of important items that might affect port operations, each meeting typically consists of a high-level overview of significant events or topics. Some of these events may be captured in electronic reports, while others consist of specific topics that any of the Executive Directors may believe necessary to bring to the EAC's attention.

4. As I testified in my deposition, I generally bring a notebook to all meetings I attend, including, but not limited to, the 8:15 meetings. Depending on the nature of the meeting and the particular topics being discussed, I may or may not take notes in advance of or at a particular meeting. There is no general standard or practice that I abide by when deciding when or how to take notes. Instead, the decision depends on the nature of the meetings that I attend and the anticipated follow up from a particular meeting. For instance, if I am going to brief on a particular topic, I may outline in my notebook what I

      plan to brief and may later refer to those notes to ensure I cover all of the necessary points I wanted to address. Additionally, I may takes notes during a particular meeting if I anticipate that I may later have to provide information about a particular topic. Generally, my notes consist of bullets or summaries that I can later refer to, if needed. The purpose of the notes is to allow me to recall the substance of what was said and what I considered to be of importance at the time. Thus, I have taken prepared bullets to the 8:15 meetings, and I have also, at times, taken notes during the 8:15 meetings.

5. As Executive Director of APP, my area of responsibility is oversight of policies regarding admissibility and passenger entry. This ranges from how to process individuals in primary and secondary inspection to the proper documentation of adverse actions in OFO's electronic system of records, as well as broader agency policy programs such as the Migration Protection Protocols (MPP). While the implementation of queue management (or metering) is not within my area of responsibility, if I attended a meeting that discussed the topic, I would typically take notes on the matter in case I later was required to brief queue management in the context of broader immigration issues that are within my portfolio. Therefore, to the extent that metering or queue management was discussed during the 8:15 a.m. meetings, my notes would likely reflect or contain a reference to the discussion.

6. As I testified during my deposition, I have preserved all of my notebooks, which contain my notes from or relating to various meetings, including the 8:15 a.m. meetings. I reviewed my notebooks provided CBP's Office of Chief Counsel with for material that was relevant to this litigation. In determining what notes were responsive to document requests, I worked with an attorney from the CBP Office of Chief Counsel to review the

3

notebooks for relevant, responsive material. It is my understanding that the responsive notes were produced by CBP in this litigation.

7. I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 25th day of August, 2020.

_____
Todd Hoffman
Executive Director,
Admissibility and Passenger Programs
Office of Field Operations
U.S. Customs and Border Protection