JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF CALIFORNIA
#### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | **DEFENDANTS' EXHIBIT 67** |
| v. | |
| Chad F. WOLF, Acting Secretary of Homeland Security, in his official capacity, *et al.*, | |
| *Defendants*. | |

JEFFREY BOSSERT CLARK
Assistant Attorney General, Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
ARI NAZAROV (CT 414491)
ALEXANDER J. HALASKA (IL 6327002)
DHRUMAN Y. SAMPAT(NJ 270892018)
Trial Attorneys
United States Department of Justice
Civil Division
Office of Immigration Litigation – District
Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 514-4120 | Fax: (202) 305-7000

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | |
| v. | **DEFENDANTS' SECOND AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS** |
| CHAD F. WOLF, Acting Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*, | |
| *Defendants* | |

Pursuant to Federal Rule of Civil Procedure 33, Defendants, in their official capacities, hereby submit their Second Amended Objections and Responses to Plaintiffs' First Set of Interrogatories to All Defendants (Nos. 1–4). Specifically, Defendants supplement their responses to Interrogatories No. 1 and 2. Defendants' investigation into the facts of this case is ongoing. Defendants' Amended Objections and Responses are based on the current procedural posture of the case and the information known to Defendants at this time and are made without prejudice to assertion of additional objections should Defendants identify additional grounds for objection. Defendants specifically reserve the right to amend, supplement, clarify, revise, or correct any or all of their responses to these Interrogatories. By responding to these Interrogatories, Defendants do not waive, and specifically preserve, their right to assert any and all objections to the admissibility of any documents on any and all grounds, including, but not limited to, competency, relevance, materiality, and privilege. Furthermore, Defendants respond herein without in any manner admitting or implying that Plaintiffs' Interrogatories (or Defendants' Responses) are relevant to any party's claim or defense or proportionate to the needs of the case. None of Defendants' responses herein should be construed or understood as an admission or denial of any legal issues, nor an agreement with or concession to any of Plaintiffs' characterizations of legal or factual issues.

## GENERAL OBJECTIONS

1.    Defendants object to these Interrogatories (and all discovery requests) as facially improper in this APA case. "[I]t is black-letter administrative law that in an APA case, a reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'" *Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013) (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)); *First Nat. Bank & Trust v. Dep't of Treasury*, 63 F.3d 894, 897 (9th Cir. 1995) ("Generally, judicial review of an agency decision is limited to the administrative record." (citing *Camp*

*v. Pitts*, 411 U.S. 138, 142 (1973)). These Interrogatories are proper only to the extent they seek information that is absolutely necessary "to ascertain the contours of the precise policy at issue," *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 530 F.3d 925, 928 (D.C. Cir. 2008), and only to the extent they seek the information the agency had before it when it made its decision, *Hill Dermaceuticals, Inc.*, 709 F.3d at 47.

Moreover, any Interrogatory that seeks information relating to any DHS or CBP employee's subjective intentions or motivations, including the named Defendants' intentions or motivations, is facially improper. The Supreme Court has long recognized that "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government." *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977). In part for that reason, the Court has "made it abundantly clear" that APA review must focus only on the "contemporaneous explanation of the agency decision" that the agency chooses to rest upon. *Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 549 (1978). "When a party challenges agency action as arbitrary and capricious the reasonableness of the agency's action is judged in accordance with its *stated* reasons." *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 156 F.3d 1279, 1279 (D.C. Cir. 1998) (emphasis added) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S 402 (1971)). Unless intent is an element of a party's claims or defenses—which, in this case, it is not—"the actual subjective motivation of agency decisionmakers is immaterial as a matter of law," *id.* at 1280, and therefore not properly discoverable.

2.     Defendants object to the use of the term "noncitizen," as this term is vague and ambiguous and is not defined by Plaintiffs. Therefore, for the purpose of responding to these Interrogatories, Defendants understand and construe the term "noncitizen" to mean "alien," as defined at 8 U.S.C. § 1101(a)(3). Such construction

1  is reflected in all of Defendants' responses.

2      3.    Defendants object to the phrase "access the asylum process at a port of

3  entry," as this phrase is vague and ambiguous, is not defined by Plaintiffs, and po-

4  tentially can be construed as referring to actions or statements other than those de-

5  scribed in 8 U.S.C. §§ 1158 and 1225. For purposes of responding to these Interrog-

6  atories, Defendants understand and construe this phrase as referring to actions con-

7  sistent with 8 U.S.C. §§ 1158 and 1225. Such construction is reflected in all of De-

8  fendants' responses.

9      4.    Defendants object to each and every Interrogatory to the extent it re-

10  quests or appears to request information related to all ports of entry along the U.S.-

11  Mexico border as lacking any legal basis, as not proportional to the needs of the case,

12  as overly broad, and as unduly burdensome. "The class action is 'an exception to the

13  usual rule that litigation is conducted by and on behalf of the individual named par-

14  ties only.' In order to justify a departure from that rule, 'a class representative must

15  be part of the class and possess the same interest and suffer the same injury as the

16  class members.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011)

17  (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979), and *East Tex. Motor*

18  *Freight System, Inc. v. Rodriguez*, 431 U.S. 208, 216 (1974)). The class representa-

19  tives allege that they applied for admission or attempted to apply for admission at

20  only the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry. Thus, even

21  assuming for argument's sake that the Court certifies the broadest possible class the

22  representative parties might be legally permitted to represent, they still cannot chal-

23  lenge actions taken by other ports of entry, because they are not part of a class of

24  such individuals and do not "possess the same interest and suffer the same injury"

25  as those individuals. *Wal-Mart Stores, Inc.*, 564 U.S. at 348–49. The challenges in

26  this action are thus limited to policies issued by the Office of Field Operations and

27  actions that occurred at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of

28  entry, *see id.*, and any Interrogatories that go beyond the scope of the specific claims

DEFS.' SECOND AM. RESPONSES AND
OBJ. TO PLS.' FIRST SET OF INTERROGA-
TORIES TO ALL DEFS. (Nos. 1–4)
Case No. 3:17-cv-02366-BAS-KSC

1  and allegations at issue are legally improper.

2      Further, the burden of searching for, collecting, reviewing, and producing

3  documents related to all ports of entry along the U.S.-Mexico border would be overly

4  broad, unduly burdensome, and disproportionate to the needs of the case. As De-

5  fendants have explained, Plaintiffs allege a border-wide practice, policy, and/or pro-

6  cedure; discovery from the four ports of entry where the named Plaintiffs allegedly

7  encountered such a practice, policy, and/or procedure (or a subset thereof), in addi-

8  tion to discovery from select higher-level officials and centralized non-custodial

9  sources, satisfies the needs of the case, as any evidence of such a border-wide prac-

10  tice, policy, and/or procedure, if it exists, would necessarily be found in such loca-

11  tions. Any discovery from other ports of entry along the U.S.-Mexico border, besides

12  having no legal basis, would thus be duplicative and unduly burdensome. In light of

13  these issues, Defendants therefore understand and construe these Interrogatories as

14  seeking discovery limited to the headquarters portions of Office of Field Operations

15  and the San Ysidro, Otay Mesa, Laredo, and Hidalgo ports of entry. Defendants'

16  responses to each and every Interrogatory will be limited consistent with this general

17  objection.

18      5.    Defendants object to each and every Interrogatory, whether broadly or

19  narrowly construed, to the extent that it seeks information or documents protected

20  by the attorney work-product doctrine. *See* Pls.' Interrog. Instruction No. 2. The

21  work-product doctrine protects "from discovery documents and tangible things pre-

22  pared by a party or his representative in anticipation of litigation." *Admiral Ins. Co.*

23  *v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P.

24  26(b)(3)); *see Hickman v. Taylor*, 329 U.S. 495 (1947). "The work-product doctrine

25  covers documents or the compilation of materials prepared by agents of the attorney

26  in preparation for litigation." *United States v. Richey*, 632 F.3d 559, 567 (9th Cir.

27  2011) (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)). Such documents

28  include, for example, notes and emails of Defendants' attorneys and staff, and draft

1   and final internal documents. Even if these materials were otherwise discoverable

2   pursuant to Federal Rule of Civil Procedure 26(b)(1)—and they are not—these ma-

3   terials are protected from disclosure by the work-product doctrine. Defendants will

4   assert privileges specific to each request in their privilege log, on the production

5   itself, or in their response to a specific Interrogatory. Documents generated after the

6   filing of Plaintiffs' original Complaint (ECF No. 1) in this action representing either

7   communications with counsel or material generated at the direction of counsel—and

8   thus clearly protected by either the attorney-client privilege or the work-product doc-

9   trine—will be treated as non-responsive and therefore will not appear on any privi-

10  lege log.

11      6.      Defendants object to each and every Interrogatory, whether broadly or

12  narrowly construed, to the extent it seeks information or documents protected by the

13  attorney-client privilege. The attorney-client privilege protects confidential commu-

14  nications between attorneys and clients which are made for the purpose of giving

15  legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "The attorney-

16  client privilege may extend to communications with third parties who have been

17  engaged to assist the attorney in providing legal advice." *United States v. Richey*,

18  632 F.3d 559, 566 (9th Cir. 2011) (citing *Smith v. McCormick*, 914 F.2d 1153, 1159–

19  60 (9th Cir. 1990)). Thus, all communications conducted in the course of the attor-

20  ney-client relationship and not disclosed or otherwise maintained in a way that is

21  inconsistent with the purpose of the privilege, are protected by the attorney-client

22  privilege. Such communications include, for example, communications between De-

23  fendants and Defendants' counsel, including notes, emails, drafts, and internal doc-

24  uments (including but not limited to contracting materials) that were conducted for

25  the purpose of securing legal advice, legal services, or assistance in a legal proceed-

26  ing following the initiation of this action. Defendants will assert privileges specific

27  to each request in their privilege log, on the production itself, or in their response to

28

a specific Interrogatory. Documents generated after the filing of Plaintiffs' complaint in this action representing either communications with counsel or material generated at the direction of counsel—and thus clearly protected by either the attorney-client privilege or the work-product doctrine—will be treated as non-responsive and therefore will not appear on any privilege log.

7.    Defendants object to each and every Interrogatory, whether broadly or narrowly construed, to the extent it seeks information or documents protected by the deliberative process privilege. This privilege protects internal government deliberations in order to promote the "frank and candid discussion necessary for effective government." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–51 (1975). Information protected by this privilege must be (1) predecisional and (2) deliberative, thereby containing opinions, recommendations, or advice. *Id.* at 149. "Examples of documents that qualify as predecisional include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted)). To the extent that any work product contains recommendations that have not been adopted, or discussions that have not been finalized, the work product is protected by the deliberative process privilege. Documents generated after the filing of Plaintiffs' Complaint in this action representing either communications with counsel or material generated at the direction of counsel—and thus clearly protected by either the attorney-client privilege, the work-product doctrine, or the deliberative process privilege—will be treated as non-responsive and therefore will not appear on any privilege log. Defendants will assert privileges specific to each request in their privilege log, on the production itself, or in her response to the request.

8.    Defendants object to each and every Interrogatory to the extent it seeks information or documents protected from disclosure by the law enforcement privi-

1  lege. The law enforcement privilege is "applicable to the government interest in pre-

2  serving confidentiality of law enforcement records [and] has various names: (1) the

3  'official information privilege,' (2) the 'law enforcement privilege,' and (3) a type

4  of 'executive privilege.'" *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL

5  1589541, at *4–5 (E.D. Cal. June 1, 2007) (citing cases); *Hayslett v. City of San*

6  *Diego*, No. 13-cv-1605, 2014 WL 1154314, at *1–2 (S.D. Cal. Mar. 21, 2014). The

7  privilege, which "has been recognized in the absence of a statutory foundation," is

8  intended "to prevent disclosure of law enforcement techniques and procedures, to

9  preserve the confidentiality of sources, to protect witness and law enforcement per-

10  sonnel, to safeguard the privacy of individuals involved in an investigation, and oth-

11  erwise to prevent interference with an investigation," amongst other reasons. *Com-*

12  *monwealth of Puerto Rico v. United States*, 490 F.3d 50, 63 (1st Cir. 2007) (quoting

13  *In re Dep't of Investigation of City of New York*, 856 F.2d 481, 483 (2d Cir. 1988),

14  *cert. denied*, 552 U.S 1295 (2008)). Defendants will assert this privilege in their

15  privilege log, on the production itself, or in their response to the Interrogatory.

16    9.    Defendants object to each and every Interrogatory to the extent it seeks

17  information or documents protected from disclosure by the investigatory files privi-

18  lege, self-critical analysis privilege, the *Machin* privilege, *see Machin v. Zuckert*,

19  316 F.2d 336 (D.C. Cir. 1963), or by any other legal basis precluding disclosure,

20  including the Inspector General Act of 1978, Pub. L. No. 95-452 (Oct. 12, 1978), 5

21  U.S.C. app. 3. Defendants will assert privileges specific to each request in their priv-

22  ilege log, on the production itself, or in their response to the Interrogatory.

23    10.    Defendants object to producing or providing confidential, sensitive, or

24  personally-identifying information prior to the entry of an order protecting that in-

25  formation from disclosure.

26    11.    Defendants object to each and every Interrogatory to the extent that it

27  seeks information protected from disclosure by statutes, regulations, or directives

28

DEFS.' SECOND AM. RESPONSES AND
OBJ. TO PLS.' FIRST SET OF INTERROGA-
TORIES TO ALL DEFS. (Nos. 1–4)
Case No. 3:17-cv-02366-BAS-KSC

regarding the protection of privacy, confidential information, or medical information, or under statutes and regulations prohibiting disclosure of information related to individual aliens—including, but not limited to, 8 U.S.C. § 1160(b)(5), (6); 8 U.S.C. § 1186a(c)(4); 8 U.S.C. § 1202(f); 8 U.S.C. § 1254a(c)(6), 8 U.S.C. § 1255a(c)(4), (5); 8 U.S.C. § 1304(b); 8 U.S.C. § 1367; 22 U.S.C. § 7105(c)(1)(C); 8 C.F.R. § 208.6; 8 C.F.R. § 210.2(e); 8 C.F.R. § 214.11(p); 8 C.F.R. § 214.14(e); 8 C.F.R. § 216.5(e)(3)(iii); 8 C.F.R. § 236.6; 8 C.F.R. § 244.16; 8 C.F.R. § 245a.2(t); 8 C.F.R. § 245a.3(n); 8 C.F.R. § 245a.21; 8 C.F.R. § 1003.46; or 8 C.F.R. § 1208.6—many of which would subject Defendants and their employees to civil or criminal penalties or other sanctions in the event of unauthorized disclosure. Defendants will not produce this information without an express written waiver from the relevant person authorizing such disclosure, or a court order, as may be permitted in certain circumstances.

12. Defendants object to these Interrogatories (and the definitions and instructions that accompany them) to the extent they purport to impose obligations greater than those imposed by the Federal Rules of Civil Procedure, the Local Civil Rules of the U.S. District Court for the Southern District of California, or an order of this Court.

## OBJECTIONS TO DEFINITIONS

1. Defendants object to the definition of "YOU" and "YOUR" as overbroad and invading the attorney/client privilege or the attorney work-product doctrine. Unless otherwise specified, Defendants interpret the definition of YOU or YOUR as referring to the named Defendants in their official capacities, and individual U.S. Department of Homeland Security ("DHS") employees from whom DHS has the legal right to obtain upon demand information relevant to the claims and defenses in this case. Defendants do not interpret the definition of "YOU" or "YOUR" to include DHS or CBP components or subcomponents that are not relevant to this litigation.

2.      Defendants object to the definition of "CBP" as overbroad. This case challenges the alleged actions of CBP's Office of Field Operations at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry along the U.S-Mexico border. Any request for information or documents from any other subcomponent within CBP is thus overly broad and unduly burdensome. Defendants therefore construe "CBP" to refer to U.S. Customs and Border Protection and, where appropriate in the context, its headquarters and its Office of Field Operations, including any divisions, subdivisions, or sections therein.

3.      Defendants object to the definition of "DHS" as overbroad. This case challenges the alleged actions of CBP's Office of Field Operations at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry along the U.S.-Mexico border. Any request for information or documents from other DHS divisions, subdivisions, components, or sections is thus overly broad and unduly burdensome. Defendants therefore construe "DHS" to refer to the Department of Homeland Security personnel at issue in this case.

4.      Defendants object to the definitions of "IDENTIFY," "IDENTITY," and "IDENTIFIED" to the extent they purport to create an obligation which does not exist under the Federal Rules of Civil Procedure and to the extent they request information that is privileged or otherwise protected from disclosure.

## SPECIFIC OBJECTIONS AND RESPONSES

### Interrogatory No. 1

Identify and describe with as much factual specificity as possible any formal or informal policy, practice, or effort that you followed or undertook or in which you engaged relating to metering or limiting the number of noncitizens that can access the asylum process at a port of entry on the U.S.-Mexico border.

**Objections:** Defendants object to Interrogatory No. 1 as overly broad and unduly burdensome, as vague and ambiguous, and as seeking information protected from disclosure by the attorney-client privilege, the deliberative process privilege,

and the law enforcement privilege and/or as law enforcement sensitive. First, as described in General Objections No. 1 and No. 4 and incorporated herein, Interrogatory No. 1 is overly broad and unduly burdensome to the extent it purports to relate to any CBP component or subcomponent besides the headquarters portions of the Office of Field Operations or the San Ysidro, Otay Mesa, Hidalgo, or Laredo ports of entry. Interrogatory No. 1 is also unduly burdensome because it is duplicative of Plaintiffs' Request for Production to All Defendants No. 44. Consistent with those General Objections, Defendants understand and construe Interrogatory No. 1 as relating only to the headquarters portions of the Office of Field Operations and the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.

Second, Defendants initially objected to Interrogatory No. 1 as vague and ambiguous because Plaintiffs did not define the terms "policy," "practice," or "effort," and it was unclear how those terms were distinct or differed from one another. Plaintiffs have since clarified that they use the term "policy" to refer to an agency policy or guidance, and that they use the term "effort" to refer to an informal attempt to engage in a course of conduct. Defendants therefore construe the term "practice" to include a generally accepted course of conduct in response to a particular set of factual circumstances (even if that course of conduct is not undertaken pursuant to a formal agency "policy"), and construe the term "effort" to include actions of individual officers (which may or may not be consistent with an agency "policy" or "practice"). Plaintiffs' definition of "effort" is overly broad and unduly burdensome in the context of this Interrogatory because it purportedly requires Defendants to investigate and describe any particular action taken with regard to aliens without documents sufficient for lawful entry at any port of entry on the U.S.-Mexico border over the course of three years. Thus, consistent with their objections and their construction of the terms, Defendants will provide information related to agency policies and the implementation of those policies at the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry, as well as information about the general practices at these

1  ports of entry, but consistent with General Objections No. 1 and 4, Defendants will
2  not provide information in response to this Interrogatory related to all "efforts" taken
3  by individual officers, regardless of whether such "efforts" are consistent with, be-
4  yond the scope of, or contradictory to agency policies.

5       Defendants also objected to Interrogatory No. 1 as vague and ambiguous be-
6  cause, as described in General Objection No. 3 and incorporated herein, Plaintiffs
7  did not define the phrase "access [to] the asylum process," and it was unclear what
8  actions fall within the scope of that phrase. Plaintiffs did not clarify this phrase dur-
9  ing the parties' meet-and-confer. Defendants accordingly understand and construe
10 the phrase "noncitizens that can access the asylum process" to mean "aliens without
11 documents sufficient for lawful entry who can enter a port of entry for processing."

12      Third, Defendants object to Interrogatory No. 1 to the extent it seeks infor-
13 mation protected by the attorney-client privilege, as explained in Defendants' Gen-
14 eral Objection No. 6. To the extent a request to "identify and describe" any "formal
15 or informal policy, practice, or effort" with "as much factual specificity as possible"
16 implicates, for example, confidential communications or advice between attorneys
17 and clients which are made for the purpose of giving legal advice, *Upjohn Co. v.
18 United States*, 449 U.S. 383, 389 (1981), such information is privileged and pro-
19 tected from disclosure.

20      Fourth, Defendants object to Interrogatory No. 1 to the extent it seeks infor-
21 mation protected from disclosure by the deliberative process privilege, as explained
22 in Defendants' General Objection No. 7. To the extent a request to "identify and
23 describe" any "formal or informal policy, practice, or effort" with "as much factual
24 specificity as possible" implicates, for example, documents or communications that
25 are predecisional and deliberative, thereby containing opinions, recommendations,
26 or advice, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975), including, but
27 not limited to, "recommendations, draft documents, proposals, suggestions, and
28 other subjective documents which reflect the personal opinions of the writer rather

11

than the policy of the agency," *Ctr. for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (internal quotations and citation omitted), such documents and communications are privileged and protected from disclosure.

Finally, Defendants object to Interrogatory No. 1 to the extent it requests information protected from disclosure by the law enforcement privilege and, until there is a protective order in place, as law enforcement sensitive, as explained in Defendants' General Objection No. 8. To the extent a request to "identify and describe" any "formal or informal policy, practice, or effort" with "as much factual specificity as possible" implicates, for example, "law enforcement techniques and procedures," the "confidentiality of sources," the "protect[ion of] witnesses and law enforcement personnel," "safeguard[ing] the privacy of individuals involved in an investigation," and/or the "prevent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Vallejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

**Response:**   Subject to and without waiving their general and specific objections, Defendants respond as follows: Defendants' investigation is ongoing, and this Response is based on information reasonably available to them at this time. Defendants will supplement this Response as appropriate during and after the course of document discovery. At this time, Defendants are aware of the following information that may be responsive to this Interrogatory.

On April 27, 2018, Todd C. Owen, Executive Assistant Commissioner for CBP's Office of Field Operations, issued a memorandum entitled "Metering Guidance." The document is provided with these responses pursuant to Federal Rule of Civil Procedure 33(d) and is labeled CBPALOTRO000299.

Prior to April 27, 2018, some land ports of entry along the southern border took steps to meter the flow of travel into their facilities.  Such queue management procedures were generally undertaken at times when a particular port of entry

1    reached a capacity in which it was no longer safe to permit more individuals to enter

2    the port for processing. These actions were generally implemented in response to an

3    increased number of individuals presenting at ports of entry without documents suf-

4    ficient for lawful entry, all of whom must be safely processed and, in general, tem-

5    porarily held pending their transfer to another agency. As a general matter, the San

6    Ysidro, Otay Mesa, and Laredo ports of entry saw, at times, a high volume of indi-

7    viduals who sought to enter the port without documents sufficient for lawful entry.

8    As a result, some individuals were required to wait in Mexico until it was safe for

9    them to be processed. Each port of entry along the southern border has a unique

10   operating environment and unique resource constraints.

11        Since January 2016, the practice for the San Ysidro port of entry has been that,

12   generally, aliens who are not in possession of documents sufficient for lawful entry

13   are brought to the limit line at the San Ysidro port of entry by Grupo Beta, the hu-

14   manitarian arm of Instituto Nacional de Migración ("INAMI"), in accordance with

15   CBP's ability to intake them. Metering practices at San Ysidro prior to April 2018

16   are also described generally in CBPALORT000103–000106, CBPALORT000112–

17   000136. Given the limited capabilities at Otay Mesa, the general practice has been

18   for aliens without documents sufficient for lawful entry to be directed to arrive at

19   San Ysidro.

20        Prior to the issuance of the Metering Guidance, during periods in which queue

21   management was in effect at the Laredo port of entry, CBP officers provided indi-

22   viduals with an appointment date and time. Such aliens were also provided with a

23   list of humanitarian resources in Nuevo Laredo. This practice has since ceased. Me-

24   tering practices in Laredo prior to April 2018 are described generally in BATES

25   CBPALORT00001–000059.

26        As noted in the April 27, 2018 Metering Guidance, directors of field opera-

27   tions ("DFOs") have discretion to implement procedures to manage the flow of trav-

28   elers at the land border when necessary and appropriate based on a particular port of

13

1   entry's processing capacity. Each port of entry's specific queue management proce-

2   dures may vary based on their unique operating environment and unique resource

3   constraints. However, as a general matter, queue management procedures are imple-

4   mented in order to ensure that the port of entry has a sufficient capacity to safely

5   process all individuals and to temporarily hold those found to be inadmissible.

6       Currently, at the Laredo and Hidalgo ports of entry, officers are placed at the

7   U.S.-Mexico border in the middle of the bridge leading to the port of entry. The

8   officers determine if individuals approaching this point have documents sufficient

9   for lawful entry, and, if they do not, whether there is sufficient capacity in the port

10  to process and temporarily hold these individuals. If there is not sufficient capacity

11  in the port of entry at that time, individuals are informed of that fact, and are in-

12  structed that they must wait in Mexico until it is safe for them to enter the port for

13  processing.

14      Defendants will supplement this response as appropriate.

15  **Supplemental Response**

16      On June 5, 2018, then-DHS Secretary Kirstjen Nielsen issued a memorandum

17  entitled "Prioritization Based Queue Management" which directed CBP to establish

18  a 30-day pilot program to focus on its primary mission by prioritizing staffing and

19  operations at ports of entry along the Southwest Border in accordance with a set list

20  of ordered priorities: (1) national security efforts; (2) counter-narcotics operations;

21  (3) economic security; and (4) trade and travel facilitation.  These four priorities

22  reflect the mission sets that CBP has prioritized since its creation in 2003.  *See, e.g.,*

23  Cleaves Dep. 188: 8-13; Howe Dep. 128:18-129: 6; Owen Dep. 203: 18-19.  Alt-

24  hough OFO has always assessed a multitude of factors in determining operational

25  capacity and whether metering is appropriate, the Prioritization-Based Queue Man-

26  agement memo "provides specific guidance on our priorities and how [OFO] should

27  address those at the ports of entry."  Howe Dep., 120: 10-12.  CBP continues to

28  operate under these priorities today. *Id.* 125: 5-7; Owen Dep. 14-16.

DEFS.' SECOND AM. RESPONSES AND
OBJ. TO PLS.' FIRST SET OF INTERROGA-
TORIES TO ALL DEFS. (Nos. 1–4)
Case No. 3:17-cv-02366-BAS-KSC

1    In November 2019, CBP determined that OFO should renew its focus on di-
2    recting its resources to its priority mission sets.  On or about November 18 and No-
3    vember 22, 2019, OFO HQ held two calls with the southwest border DFOs to reit-
4    erate the importance of implementing CBP's priority mission sets, which OFO HQ
5    understood would likely have the effect of reducing the daily intake of aliens without
6    documents sufficient for lawful entry waiting to be processed, and to convey that a
7    memorandum would be forthcoming.

8    On November 27, 2019, CBP's Acting Commissioner Mark A. Morgan issued
9    a memorandum entitled "Prioritization-Based Queue Management," "ask[ing] for []
10   continued vigilance in prioritizing staffing and operations in accordance with the
11   priority as outlined in the June 5, 2018 memorandum."  Acting Commissioner Mor-
12   gan also expanded the second priority – counter-narcotics operations – to include
13   outbound operations.  As noted in both memoranda, as well as in the April 27, 2018
14   Metering Guidance, Directors of Field Operations ("DFOs") have discretion to im-
15   plement procedures and manage resources to manage the flow of travel, based on
16   the availability of port-specific resources on a given day as well as a port of entry's
17   holding capacity.  Field leadership also maintain the operational flexibility to bal-
18   ance resources in order to accomplish OFO's mission sets according to the order of
19   priority in both memoranda.

20   Upon receiving these instructions, the San Diego Field Office (SDFO) en-
21   gaged in an analysis to ensure that its overtime funds were being allocated in accord-
22   ance with OFO's priority mission sets.  At the time, the SDFO was comprised of
23   four divisions including the SDFO's Enforcement and Intelligence Division.  The
24   SDFO's Enforcement and Intelligence Division was, in turn, comprised of five units,
25   including the Admissibility Enforcement Unit (AEU).  The AEU primarily handles
26   the processing and temporary detention of inadmissible aliens.  The AEU was the
27   only unit within the SDFO's Enforcement and Intelligence Division that did not per-
28   form work directly related to OFO's priority mission sets.  All of the other units

15

within the SDFO's Enforcement and Intelligence Division performed work directly relating to OFO's top two priority mission sets.

The SDFO determined that its Enforcement and Intelligence Division was disproportionately spending its overtime funds in the AEU at the expense of other units in the division. Accordingly, the SDFO decided to prospectively reduce its overtime expenditures in the AEU by approximately 30%. To attain this reduction, the San Ysidro and Calexico POEs generally scheduled fewer CBP Officers for overtime for each shift in their respective AEUs. This, in turn, led to a decrease in the number of individuals without documents sufficient for lawful entry processed on most days. In the ensuing weeks, the SDFO determined it was appropriate to further prospectively reduce overtime expenditures. The San Ysidro and Calexico POEs generally scheduled still fewer CBP Officers for overtime for each shift in their respective AEUs. This led to a further decrease in the number of individuals without documents sufficient for lawful entry processed on most days.

On or about November 22, 2019, the Tucson DFO briefed Arizona Port Directors on resource prioritization. He instructed the Port Directors to restrict the number of individuals without documents sufficient for lawful entry to only the amount, which could safely be processed. He also instructed the Arizona Port Directors to maintain a strong enforcement posture and not to reassign resources from other priorities to case processing. Furthermore, on November 27, 2019, he provided the Arizona Port Directors with the November 27, 2019 Acting Commissioner Mark A. Morgan's memorandum.

Following the calls with OFO HQ, the Laredo Field Office called each Port Director to reiterate OFO's priority mission sets and that they should be directing their resources to those priorities.

After being briefed on the calls with OFO HQ, the El Paso DFO called each of the Port Directors to remind them that ensuring success on all enforcement mission sets was a priority. Specifically, the DFO emphasized the counter-terrorism,

DEFS.' SECOND AM. RESPONSES AND
OBJ. TO PLS.' FIRST SET OF INTERROGA-
TORIES TO ALL DEFS. (Nos. 1–4)
Case No. 3:17-cv-02366-BAS-KSC

counter-narcotics, and outbound operations mission sets.

On April 30, 2020, Vernon T. Foret, Executive Director, Operations, for CBP's Office of Field Operations, issued a memorandum entitled "Metering Guidance." This document has previously been produced under Bates number CBPALOTRO000315.

**Interrogatory No. 2**

Describe with as much factual specificity as possible the reasons why you followed, undertook, or engaged in any formal or informal policy, practice, or effort relating to metering or limiting the number of noncitizens that can access the asylum process at a port of entry on the U.S.-Mexico border.

**Objections:** Defendants object to Interrogatory No. 2 as lacking any legal basis, as seeking information that is not relevant to any party's claims or defenses, as vague and ambiguous, as overly broad and unduly burdensome, as not proportionate to the needs of the case, and as seeking information protected from disclosure by the attorney-client privilege, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive. First, to the extent Interrogatory No. 2 requests anything but Defendants' stated reasons for any final agency action, such a request is facially improper, as explained in General Objection No. 1, and as overly broad and unduly burdensome and not proportionate to the needs of the case.

Second, Defendants initially objected to Interrogatory No. 2 as vague and ambiguous because Plaintiffs did not define the terms "policy," "practice," or "effort," and it was unclear how those terms were distinct or differed from one another. Defendants also objected to this Interrogatory as vague and ambiguous because it was unclear whether Plaintiffs were seeking the reasons why a particular agency-wide policy or practice may have been implemented or enacted, or whether they were seeking the reasons why a particular agency component or subcomponent may have

1    taken actions pursuant to or in accordance with such agency-wide policy or practice.

2    Plaintiffs have since clarified that they use the term "policy" to refer to an agency

3    policy or guidance, and that they use the term "effort" to refer to an informal attempt

4    to engage in a course of conduct. Defendants therefore construe the term "practice"

5    to include a generally accepted course of conduct in response to a particular set of

6    factual circumstances (even if that course of conduct is not undertaken pursuant to a

7    formal agency "policy"), and construe the term "effort" to include actions of indi-

8    vidual officers (which may or may not be consistent with an agency "policy" or

9    "practice"). Plaintiffs' definition of "effort" is overly broad and unduly burdensome

10   in the context of this Interrogatory because it purportedly requires Defendants to

11   investigate and describe any particular action taken with regard to aliens without

12   documents sufficient for lawful entry at any port of entry on the U.S.-Mexico border

13   over the course of three years. Thus, consistent with their objections and their con-

14   struction of the terms, Defendants will provide information related to agency poli-

15   cies and the implementation of those policies at the San Ysidro, Otay Mesa, Hidalgo,

16   and Laredo ports of entry, as well as information about the general practices at these

17   ports of entry, but consistent with General Objections No. 1 and 4, Defendants will

18   not provide information in response to this Interrogatory related to all "efforts" taken

19   by individual officers, regardless of whether such "efforts" are consistent with, be-

20   yond the scope of, or contradictory to agency policies.

21          Defendants also initially objected to Interrogatory No. 2 as vague and ambig-

22   uous because, as described in General Objection No. 3 and incorporated herein,

23   Plaintiffs did not define the phrase "access [to] the asylum process," and it was un-

24   clear what actions fall within the scope of that phrase. Plaintiffs did not clarify this

25   phrase during the parties' meet-and-confer. Defendants accordingly understand and

26   construe the phrase "noncitizens that can access the asylum process" to mean "aliens

27   without documents sufficient for lawful entry who can enter a port of entry for pro-

28   cessing."

1    Third, Defendants object to Interrogatory No. 2 to the extent it seeks infor-
2    mation protected by the attorney-client privilege, as explained in Defendants' Gen-
3    eral Objection No. 6. To the extent a request to describe with "as much factual spec-
4    ificity as possible" "the reasons why [Defendants] followed, undertook, or engaged
5    in any formal or informal policy, practice, or effort" implicates, for example, confi-
6    dential communications or advice between attorneys and clients which are made for
7    the purpose of giving legal advice, *Upjohn Co. v. United States*, 449 U.S. 383, 389
8    (1981), such information is privileged and protected from disclosure.

9    Fourth, Defendants object to Interrogatory No. 2 to the extent it seeks infor-
10   mation protected from disclosure by the deliberative process privilege, as explained
11   in Defendants' General Objection No. 7. To the extent a request to describe with "as
12   much factual specificity as possible" "the reasons why [Defendants] followed, un-
13   dertook, or engaged in any formal or informal policy, practice, or effort" implicates,
14   for example, documents or communications that are predecisional and deliberative,
15   thereby containing opinions, recommendations, or advice, *NLRB v. Sears, Roebuck
16   & Co.*, 421 U.S. 132, 149 (1975), including, but not limited to, "recommendations,
17   draft documents, proposals, suggestions, and other subjective documents which re-
18   flect the personal opinions of the writer rather than the policy of the agency," *Ctr.
19   for Medicare Advocacy, Inc. v. HHS,* 577 F. Supp. 2d 221, 235 (D.D.C. 2008) (in-
20   ternal quotations and citation omitted), such documents and communications are
21   privileged and protected from disclosure.

22   Finally, Defendants object to Interrogatory No. 2 to the extent it requests in-
23   formation protected from disclosure by the law enforcement privilege and, until
24   there is a protective order in place, as law enforcement sensitive, as explained in
25   Defendants' General Objection No. 8. To the extent a request to describe with "as
26   much factual specificity as possible" "the reasons why [Defendants] followed, un-
27   dertook, or engaged in any formal or informal policy, practice, or effort" implicates,
28   for example, "law enforcement techniques and procedures," the "confidentiality of

DEFS.' SECOND AM. RESPONSES AND
OBJ. TO PLS.' FIRST SET OF INTERROGA-
TORIES TO ALL DEFS. (Nos. 1–4)
Case No. 3:17-cv-02366-BAS-KSC

sources," the "protect[ion of] witnesses and law enforcement personnel," "safe-guard[ing] the privacy of individuals involved in an investigation," and/or the "pre-vent[ion of] interference with an investigation," such information is subject to the law enforcement privilege and protected from disclosure. *Deocampo v. City of Val-lejo*, No. 06-cv-1283, 2007 WL 1589541, at *5 (E.D. Cal. June 1, 2007).

**Response:**    Subject to, and without waiving the foregoing objections, De-fendants respond as follows: Defendants' investigation is ongoing, and this Re-sponse is based on information reasonably available to them at this time. Defendants will supplement this Response as appropriate during and after the course of docu-ment discovery. At this time, Defendants are aware of the following information that may be responsive to this Interrogatory.

As noted in the April 27, 2018 Owen Memo, directors of field operations ("DFOs") have discretion to implement procedures to manage the flow of travelers at the land border when necessary and appropriate based on a particular port of en-try's processing capacity. In general, each of CBP's ports of entry has a finite capac-ity in which to accomplish multiple missions, including, for example, national secu-rity, counter-narcotics, facilitation of lawful trade, and processing of all travelers. CBP strives to manage its limited space and resources to best ensure safety and se-curity for all travelers and our officers, while facilitating timely processing for U.S. citizens and lawful permanent residents, visitors with appropriate travel documents, and individuals without documents sufficient for lawful entry. A port of entry's ca-pacity to process inadmissible aliens is based on many different factors, including for instance, available holding space at the port, the overall volume of individuals arriving at the port, the number of employees available to process individuals, other enforcement actions taking place at the port of entry, the complexity of processing various categories of individuals (such as each individual's possession or lack of appropriate travel documents, medical needs, or translation requirements), and the

1    resources of other government agencies to which inadmissible aliens must be trans-

2    ferred. The capacity of a particular port of entry may vary from day to day.

3        Processing individuals who are not U.S. citizens or lawful permanent resi-

4    dents or who lack a visa or other appropriate travel documents is particularly re-

5    source intensive. It may take hours before the necessary sworn statements, consulate

6    checks, and paperwork are complete. These checks are necessary for CBP to verify

7    the identity, age, and any immigration and/or criminal histories of individuals who

8    arrive in the United States without appropriate travel documents. To ensure the

9    safety of all travelers and CBP officers, CBP must ensure that the port of entry has

10   sufficient capacity and resources to process all individuals, as well as temporarily

11   hold those found to be inadmissible. In some cases, the port of entry may reach a

12   capacity where it is no longer safe to permit more individuals to enter. If that occurs,

13   individuals who approach the port of entry without documents sufficient for lawful

14   entry may be directed to wait to be processed until capacity permits.

15       DFOs may determine, based on particular factual circumstances implement-

16   ing capacity at any particular port of entry, that it is necessary or appropriate to meter

17   the queue of travelers who lack documents sufficient for lawful entry. The particular

18   reasons that such metering may be implemented at a particular port of entry on a

19   particular day will be determined based on the relevant facts and circumstances at

20   that port on that particular day.

21       Defendants will supplement this response as appropriate.

22   **Supplemental Response**

23       As described in Defendants' initial response to Interrogatory No. 2, CBP had,

24   at various points in 2016 and 2018, seen a sustained increase in the number of aliens

25   presenting at southwest border ports of entry without documents sufficient for lawful

26   entry.  Although OFO in 2016 shifted resources in order to process these increased

27   number of aliens, such shifting of resources was unsustainable because it had an

28   adverse impact on OFO's other priority mission sets.  *See, e.g.*, Cleaves Dep. 184:

21

17-22. The June 5, 2018 memorandum was issued to reaffirm CBP's primary mission and provide clear direction that OFO's resources should be directed toward accomplishing CBP's priority mission sets.

Similarly, CBP issued the November 27, 2019 memorandum to reiterate and re-emphasize the priority missions, to provide clear direction that resources should be directed towards those mission sets, and to highlight the importance of outbound operations (which was of particular importance to the Mexican government). *See* Owen Dep. 217: 9- 219:12.

In November 2019, OFO Headquarters instructed the southwest border DFOs to continue directing their resources to OFO's priority mission sets based on concerns throughout DHS about the number of individuals found inadmissible at the southwest border.

The April 2020 "Metering Guidance" was issued in response to a recommendation from the DHS Office of Inspector General.

**Interrogatory No. 3**

Identify any and all current or former CBP or DHS employees, agents, or representatives with knowledge of any formal or informal policy, practice, or effort that you followed or undertook or in which you engaged relating to metering or limiting the number of noncitizens that can access the asylum process at a port of entry on the U.S.-Mexico border.

**Objections:** Defendants object to Interrogatory No. 3 as potentially seeking information not relevant to any party's claim or defense, as overly broad and unduly burdensome, and as not proportionate to the needs of the case. First, Interrogatory No. 3 seeks information not relevant to any party's claims or defenses because, by requesting the identities of "any and all current or former CBP or DHS employees, agents, or representatives with knowledge of any formal or informal policy, practice,

or effort . . . relating to metering or limiting the number of noncitizens that can access the asylum process at a port of entry on the U.S.-Mexico border," it seeks drastically more information that what is absolutely necessary "to ascertain the contours of the precise policy at issue," *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 530 F.3d 925, 928 (D.C. Cir. 2008), as explained in General Objection No. 1. Moreover, by seeking the identities of individuals with knowledge of any "informal policy, practice, or effort," Plaintiffs seek information not relevant to any party's claims or defenses, since there is no judicial review under the APA of non-final agency actions. Further, Interrogatory No. 3 requests irrelevant information to the extent it seeks the names of persons knowledgeable of Defendants' final agency actions at *all* ports of entry along the U.S.-Mexico border; as explained in General Objection No. 4, Plaintiffs have no legal basis for seeking discovery beyond the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry.

Second, Interrogatory No. 3 is overly broad and unduly burdensome and not proportionate to the needs of the case because, by requesting the identities of "*any and all current or former* CBP or DHS employees, agents, or representatives with knowledge of *any formal or informal policy, practice, or effort* . . . relating to metering or limiting the number of noncitizens that can access the asylum process at a port of entry on the U.S.-Mexico border," it purports to require the identification of, at a minimum, all CBP employees who may have access to the Metering Guidance, or who may have  knowledge of metering or queue management practices. Plaintiffs are essentially demanding that Defendants canvass and provide a list of every person who knows something about metering or queue management practices at land border ports of entry along the U.S.-Mexico border since January 2016. CBP employees more than 60,000 employees, any of whom may have had "knowledge" of such practices, and it is plainly overly broad and unduly burdensome for Defendants to canvass and identify all such persons. *See, e.g.*, *Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting

that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome"). In light of these objections, Defendants understand and construe Interrogatory No. 3 as requesting the identities of only the most knowledgeable persons on agency policies and practices identified in response to Interrogatory No. 1, as limited by Defendants' general and specific objections.

Third, Interrogatory No. 4 is vague and ambiguous because, as described in General Objection No. 3, Plaintiffs do not define the phrase "access [to] the asylum process," and it is unclear what actions fall within the scope of that phrase.

Fourth, Defendants object to Interrogatory No. 4 to the extent it seeks information protected by the attorney-client privilege, the deliberative process privilege, the law enforcement privilege and, until there is a protective order in place, as law enforcement sensitive, as explained in Defendants' General Objections No. 6, No. 7, and No. 8.

Finally, Defendants object to this request to the extent that it is duplicative of their obligations under Rule 26(a) of the Federal Rules of Civil Procedure.

**Response:**   Subject to, and without waiving, Defendants' general and specific objections, Defendants respond as follows: Defendants' investigation is ongoing, and this Response is based on information reasonably available to them at this time. Defendants will supplement this Response as appropriate during and after the course of document discovery. At this time, Defendants identify the following persons as having the most knowledge on the delineated topics.

The April 2018 Metering Guidance was distributed to the four Field Offices on the U.S.-Mexico border, and was directed to be disseminated to all CBP Officers in those field offices. Other individuals within CBP, both within OFO Headquarters offices and other offices within CBP, further have access to that Guidance. Additionally, Defendants provide the following non-exhaustive list of individuals as Office of Field Operations employees with knowledge of Defendants' metering and/or

queue management actions as they relate to the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry:

- **Todd C. Owen**, Executive Assistant Commissioner, Office of Field Operations, U.S. Customs and Border Protection;

- **Randy Howe**, Executive Director, Operations, Office of Field Operations, U.S. Customs and Border Protection;

- **Todd Hoffman**, Executive Director, Admissibility and Passenger Programs, Office of Field Operations, U.S. Customs and Border Protection;

- **James Ryan Hutton**, Assistant Port Director, Area Port of San Francisco Office of Field Operations, U.S. Customs and Border Protection (and former Deputy Executive Director, Admissibility and Passenger Programs, Office of Field Operations, U.S. Customs and Border Protection);

- **Luis Mejia,** Director, Enforcement Programs Division, Admissibility and Passenger Programs, Office of Field Operations, U.S. Customs and Border Protection;

- **Pete Flores**, Director of Field Operations, San Diego Field Office, Office of Field Operations, U.S. Customs and Border Protection;

- **Anne L. Marichich**, Deputy Director of Field Operations, San Diego Field Office, Office of Field Operations, U.S. Customs and Border Protection;

- **Johnny Armijo**, Assistant Director of Field Operations, San Diego Field Office, Office of Field Operations, U.S. Customs and Border Protection;

- **Sidney Aki**, Port Director, San Ysidro Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **Robert W. Hood**, Assistant Port Director, San Ysidro Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **Karen Ah Nee**, Supervisory Customs and Border Protection Officer (Chief),

San Ysidro Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **Moises Castillo**, Supervisory Customs and Border Protection Officer (Watch Commander), San Ysidro Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **Mariza Marin**, Supervisory Customs and Border Protection Officer (Watch Commander), San Ysidro Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **David Higgerson**, Director of Field Operations, Laredo Field Office, Office of Field Operations, U.S. Customs and Border Protection;

- **Rodney Harris**, Assistant Director, Laredo Field Office, Office of Field Operations, U.S. Customs and Border Protection;

- **Gregory Alvarez**, Director, Northern Operations Command, Laredo Field Office, Office of Field Operations, U.S. Customs and Border Protection (and former Port Director, Laredo Port of Entry);

- **Carlos Rodriguez**, Acting Director, Southern Operations Command, Laredo Field Office, Office of Field Operations, U.S. Customs and Border Protection;

- **Alberto Flores**, Acting Port Director, Laredo Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **Sylvia Briones,** Acting Port Director, Hidalgo Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **David John Gonzalez**, Assistant Port Director, Hidalgo Port of Entry, Office of Field Operations, U.S. Customs and Border Protection (and former Acting Port Director, Hidalgo Port of Entry); and

- **Andres Guerra**, Port Director, Roma Port of Entry, Office of Field Operations, U.S. Customs and Border Protection (and former Acting Port Director, Hidalgo Port of Entry).

These persons may be contacted only through Defendants' counsel. Defendants will supplement this list as appropriate.

### Interrogatory No. 4

Identify any and all current or former CBP or DHS employees, agents, or representatives with knowledge of the reasons why you engaged in metering or limiting the number of noncitizens that can access the asylum process at a port of entry on the U.S.-Mexico border.

**Objections:** Defendants object to Interrogatory No. 4 as lacking any legal basis, as seeking information that is not relevant to any party's claims or defenses, as overly broad and unduly burdensome, as not proportionate to the needs of the case, as vague and ambiguous, and as seeking information protected from disclosure by the attorney-client privilege, the deliberative process privilege, and the law enforcement privilege and/or as law enforcement sensitive. First, to the extent Interrogatory No. 4 requests the identities of persons with potential knowledge of anything but Defendants' stated reasons for any final agency action, such a request is facially improper, as explained in General Objection No. 1.

Second, Interrogatory No. 4 is overly broad and unduly burdensome and not proportionate to the needs of the case because, by requesting the identities of "any and all current or former CBP or DHS employees, agents, or representatives with knowledge of the reasons why you engaged in" the delineated topics, it purports to require the identification of all CBP employees with knowledge of the reasons for which a particular port of entry may have elected to meter the queue of travelers. Additionally, the Interrogatory purports to require the identification of all CBP employees who may have knowledge of the general reasons for which the April 2018 Metering Guidance was issued. Plaintiffs are therefore essentially demanding that Defendants canvass and provide a list of virtually every person who knows something about metering or queue management practices at land border ports of entry

along the U.S.-Mexico border since January 2016. CBP employs more than 60,000 employees, any of whom may have had knowledge of such practices, and it is plainly overly broad and unduly burdensome for Defendants to canvas and identify all such persons. *See, e.g.*, *Alfaro v. City of San Diego*, No. 17-cv-46, 2018 WL 4562240, at *3 n.3 (S.D. Cal. Sept. 21, 2018) (Crawford, M.J.) (noting that an interrogatory that obligates a party to "canvas every employee who might have had a conversation with [the plaintiff]" would be "onerous and over burdensome").

Third, Interrogatory No. 4 is vague and ambiguous because, as described in General Objection No. 3, Plaintiffs not define the phrase "access [to] the asylum process," and it is unclear what actions fall within the scope of that phrase. This Interrogatory is also vague and ambiguous because it does not describe whether it seeks individuals with knowledge of the reasons for a particular policy or practice, to the extent it exists, or individuals with knowledge of the reasons for actions taken with respect to such policy or practice. In light of these objections, Defendants understand and construe Interrogatory No. 4 as requesting the identities of individuals most knowledgeable of the stated reasons for agency policies and practices identified in response to Interrogatory No. 1, as limited by Defendants' general and specific objections.

Fourth, Defendants object to Interrogatory No. 4 to the extent it seeks information protected by the attorney-client privilege, the deliberative process privilege, the law enforcement privilege and, until there is a protective order in place, as law enforcement sensitive, as explained in Defendants' General Objections No. 6, No. 7, and No. 8.

Finally, Defendants also object to this request to the extent that it is duplicative of their obligations under Rule 26(a) of the Federal Rules of Civil Procedure.

**Response:** Subject to, and without waiving, Defendants' general and specific objections, Defendants respond as follows: Defendants' investigation is ongoing, and this Response is based on information reasonably available to them at this

time. Defendants will supplement this Response as appropriate during and after the course of document discovery. At this time, Defendants identify the following persons as having the most knowledge on the delineated topics.

Officials at OFO HQ, as well as many other CBP employees both at headquarters and across the agency, have knowledge of the fact that it may be necessary or appropriate for DFOs to elect to implement queue management procedures to ensure that the ports of entry operate at a safe processing capacity. Defendants also identify the following non-exhaustive list of individuals as Office of Field Operations employees with knowledge of Defendants' stated reasons for metering and/or queue management actions as they relate to the San Ysidro, Otay Mesa, Hidalgo, and Laredo ports of entry:

- **Todd C. Owen**, Executive Assistant Commissioner, Office of Field Operations, U.S. Customs and Border Protection;

- **Randy Howe**, Executive Director, Operations, Office of Field Operations, U.S. Customs and Border Protection;

- **Todd Hoffman**, Executive Director, Admissibility and Passenger Programs, Office of Field Operations, U.S. Customs and Border Protection;

- **James Ryan Hutton**, Assistant Port Director, Area Port of San Francisco, Office of Field Operations, U.S. Customs and Border Protection (and former Deputy Executive Director, Admissibility and Passenger Programs, Office of Field Operations, U.S. Customs and Border Protection);

- **Luis Mejia,** Director, Enforcement Programs Division, Admissibility and Passenger Programs, Office of Field Operations, U.S. Customs and Border Protection;

- **Pete Flores**, Director of Field Operations, San Diego Field Office, Office of Field Operations, U.S. Customs and Border Protection;

- **Anne L. Maricich**, Deputy Director of Field Operations, San Diego Field Office, Office of Field Operations, U.S. Customs and Border Protection;

- **Johnny Armijo**, Assistant Director of Field Operations, San Diego Field Office, Office of Field Operations, U.S. Customs and Border Protection;

- **Sidney Aki**, Port Director, San Ysidro Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **Robert W. Hood**, Assistant Port Director, San Ysidro Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **Karen Ah Nee**, Supervisory Customs and Border Protection Officer (Chief), San Ysidro Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **Moises Castillo**, Supervisory Customs and Border Protection Officer (Watch Commander), San Ysidro Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **Mariza Marin**, Supervisory Customs and Border Protection Officer (Watch Commander), San Ysidro Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **David Higgerson**, Director of Field Operations, Laredo Field Office, Office of Field Operations, U.S. Customs and Border Protection;

- **Rodney Harris**, Assistant Director, Laredo Field Office, Office of Field Operations, U.S. Customs and Border Protection;

- **Gregory Alvarez**, Director, Northern Operations Command, Laredo Field Office, Office of Field Operations, U.S. Customs and Border Protection (and former Port Director, Laredo Port of Entry);

- **Carlos Rodriguez**, Acting Director, Southern Operations Command, Laredo Field Office, Office of Field Operations, U.S. Customs and Border Protection;

- **Alberto Flores**, Acting Port Director, Laredo Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **Sylvia Briones,** Acting Port Director, Hidalgo Port of Entry, Office of Field Operations, U.S. Customs and Border Protection;

- **David John Gonzalez**, Assistant Port Director, Hidalgo Port of Entry, Office of Field Operations, U.S. Customs and Border Protection and former Acting Port Director, Hidalgo Port of Entry); and

- **Andres Guerra**, Port Director, Roma Port of Entry, Office of Field Operations, U.S. Customs and Border Protection (and former Acting Port Director, Hidalgo Port of Entry).

These persons may be contacted only through Defendants' counsel. Defendants will supplement this list as appropriate.

//

//

1    Dated: September 25, 2020        Submitted as to objections only,

2

3                                      JEFFREY BOSSERT CLARK
                                       Acting Assistant Attorney General

4                                        Civil Division

5                                        WILLIAM C. PEACHEY

6                                        Director, Office of Immigration Litigation –
                                       District Court Section

7

8                                        SAMUEL P. GO
                                       Assistant Director

9

10                                        */s/ Katherine J. Shinners*
                                       KATHERINE J. SHINNERS

11                                        Senior Litigation Counsel

12                                        ARI NAZAROV

13                                        ALEXANDER J. HALASKA
                                       DHRUMAN Y. SAMPAT

14                                        Trial Attorneys

15                                        U.S. Department of Justice

16                                        Civil Division
                                       Office of Immigration Litigation

17                                        District Court Section

18                                        P.O. Box 868, Ben Franklin Station
                                       Washington, D.C. 20044

19                                        Tel: (202) 514-4120 | Fax: (202) 305-7000

20                                        *Counsel for Defendants*

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
(San Diego)**

AL OTRO LADO, Inc., *et al.*,

*Plaintiffs*,

v.

CHAD WOLF, Acting Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*,

*Defendants*

Case No. 3:17-cv-02366-BAS-KSC

**CERTIFICATION OF DEFENDANTS' SECOND AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS**

I, Randy Howe, hereby declare that I am the Director, Field Operations, Laredo Field Office, Office of Field Operations, U.S. Customs and Border Protection. Based upon reasonable inquiry, I certify that the information regarding CBP and OFO headquarters in Defendants' Second Amended Objections and Responses to Interrogatories 1 and 2 is true and correct to the best of my knowledge, information, and belief.

Dated: September 25, 2020

Randy Howe
Director, Field Operations (Laredo)
Office of Field Operations
U.S. Customs and Border Protection

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

AL OTRO LADO, Inc., *et al.*,

      *Plaintiffs,*

    v.

CHAD WOLF, Acting Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*,

      *Defendants*

Case No. 3:17-cv-02366-BAS-KSC

**CERTIFICATION OF DEFENDANTS' SECOND AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS**

  I, Samuel Cleaves, hereby declare that I am the Assistant Port Director for the Port of El Paso, El Paso Field Office, Office of Field Operations, U.S. Customs and Border Protection. Based upon reasonable inquiry, I certify that the information regarding the El Paso Field Office in Defendants' Second Amended Objections and Response to Plaintiffs' Interrogatory No. 1 is true and correct to the best of my knowledge, information, and belief.

Dated: September 25, 2020

        _____
        Samuel Cleaves
        Assistant Port Director
        Office of Field Operations
        U.S. Customs and Border Protection

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

AL OTRO LADO, Inc., *et al.*,

                         *Plaintiffs,*

              v.

CHAD WOLF, Acting Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*,

                        *Defendants*

Case No. 3:17-cv-02366-BAS-KSC

**CERTIFICATION OF DEFENDANTS' SECOND AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS**

I, Rodney H. Harris, hereby declare that I am the Deputy Assistant Director, Border Security, Laredo Field Office, Office of Field Operations, U.S. Customs and Border Protection. Based upon reasonable inquiry, I certify that the information regarding the Laredo Field Office in Defendants' Second Amended Objections and Response to Plaintiffs' Interrogatory No. 1 is true and correct to the best of my knowledge, information, and belief.

Dated: September 25, 2020

Rodney H. Harris
Deputy Assistant Director, Border Security
Laredo Field Office
Office of Field Operations
U.S. Customs and Border Protection

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

AL OTRO LADO, Inc., *et al.*,

     *Plaintiffs*,

  v.

CHAD WOLF, Acting Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*,

     *Defendants*

Case No. 3:17-cv-02366-BAS-KSC

**CERTIFICATION OF DEFENDANTS' SECOND AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS**

   I, Mariza Marin, hereby declare that I am the Assistant Director of Field Operations, Border Security, Office of Field Operations, U.S. Customs and Border Protection, San Diego Field Office. Based upon reasonable inquiry, I certify that the information regarding the San Diego Field Office in Defendants' Second Amended Objections and Response to Plaintiffs' Interrogatory No. 1 is true and correct to the best of my knowledge, information, and belief.

Dated: September 25, 2020

MARIZA MARIN
Digitally signed by MARIZA MARIN
Date: 2020.09.25 11:06:57 -07'00'

MARIZA MARIN
Assistant Director of Field Operations, Border Security
Office of Field Operations
U.S. Customs and Border Protection

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | |
| v. | **CERTIFICATION OF DEFENDANTS' SECOND AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS** |
| CHAD WOLF, Acting Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*, | |
| *Defendants* | |

I, Guadalupe H. Ramirez, hereby declare that I am the Director of Field Operations, Office of Field Operations, U.S. Customs and Border Protection, Tucson. Based upon reasonable inquiry, I certify that the information regarding the Tucson Field Office in Defendants' Second Amended Objections and Response to Plaintiffs' Interrogatory No. 1 is true and correct to the best of my knowledge, information, and belief.

Dated: September 25, 2020

Guadalupe H. Ramirez
Director of Field Operations, Tucson
Office of Field Operations
U.S. Customs and Border Protection

## **CERTIFICATE OF SERVICE**

Case No. 3:17-cv-02366-BAS-KSC

I certify that on September 25, 2020, I served a copy of Defendants' Second Amended Objections and Responses to Plaintiffs' First Set of Interrogatories to All Defendants (Nos. 1-4) on the following persons by email:

**Mary Catherine Bauer**
mary.bauer@splcenter.org

**Stephen Medlock**
smedlock@mayerbrown.com

**Matthew Ellis Fenn**
mfenn@mayerbrown.org

**Angelo R. Guisado**
aguisado@ccrjustice.org

**Matthew M. Marmolejo**
mmarmolejo@mayerbrown.com

**Baher Azmy**
bazmy@ccrjustice.org

**Micah D. Stein**
mstein@mayerbrown.com

**Ghita R. Schwarz**
gschwarz@ccrjustice.org

**Ori Lev**
olev@mayerbrown.com

**Karolina J. Walters**
kwalters@immcouncil.org

**Rebecca Cassler**
rebecca.cassler@splcenter.org

**Melissa E. Crow**
melissa.crow@splcenter.org

**Sarah Marion Rich**
sarah.rich@splcenter.org

*/s/ Ari Nazarov*
Ari Nazarov
Trial Attorney

33

DEFS.' SECOND AM. RESPONSES AND
OBJ. TO PLS.' FIRST SET OF INTERROGA-
TORIES TO ALL DEFS. (Nos. 1–4)
Case No. 3:17-cv-02366-BAS-KSC