MAYER BROWN LLP
   Matthew H. Marmolejo (CA Bar No. 242964)
   *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
   Ori Lev (DC Bar No. 452565)
   (*pro hac vice*)
   *olev@mayerbrown.com*
   Stephen M. Medlock (VA Bar No. 78819)
   (*pro hac vice*)
   *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:   +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
   Melissa Crow (DC Bar No. 453487)
   (*pro hac vice*)
   *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*,<br><br>             Plaintiffs,<br><br>      v.<br><br>Chad F. Wolf,[1] *et al.*,<br><br>             Defendants. | Case No.:  17-cv-02366-BAS-KSC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF STEPHANIE LEUTERT**<br><br>**Hearing Date: October 19, 2020**<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

OPP. TO MOT. TO EXCLUDE

CENTER FOR CONSTITUTIONAL RIGHTS
　　Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
　　*bazmy@ccrjustice.org*
　　Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
　　*gschwarz@ccrjustice.org*
　　Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
　　*aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
　　Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
　　*sarah.rich@splcenter.org*
　　Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
　　*rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
　　Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
　　*kwalters@immcouncil.org*
1331 G St. N.W., Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

# Table of Contents

**Page**

I.      INTRODUCTION ........................................................................................ 1

II.     ARGUMENT ............................................................................................ 3

    A.      Defendants Misapprehend the *Daubert* Standard and Rule 702. ........ 3

    B.      Ms. Leutert's Technical and Specialized Knowledge Helps the
Trier of Fact. ................................................................................... 5

    C.      Ms. Leutert's Testimony Is Based on a Reliable Analysis of
Defendants' *Own Data*. ................................................................. 10

III.    CONCLUSION ...................................................................................... 15

## Table of Authorities

Page(s)

**Cases**

*Allen v. Similasan Corp.*,
306 F.R.D. 635 (S.D. Cal. 2015)....................................................................... 13

*D.F. ex rel. Amador v. Sikorski Aircraft Carrier Corp.*,
2017 WL 4922814 (S.D. Cal. Oct. 30, 2017)...................................................... 7

*AngiScore, Inc. v. TriReme Med., Inc.*,
87 F. Supp. 3d 986 (N.D. Cal. 2015)................................................................... 4

*Estate of Barabin v. AstenJohnson, Inc.*,
740 F.3d 457 (9th Cir. 2014)............................................................................... 4

*Claar v. Burlington N. R. Co.*,
29 F.3d 499 (9th Cir. 1994)................................................................................. 6

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) .................................................................................*passim*

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011)............................................................................... 4

*Erhart v. BofI Holding, Inc.*,
445 F. Supp. 3d 831 (S.D. Cal. 2020) ................................................................. 5

*FTC v. Connelly*,
2007 WL 6492913 (C.D. Cal. 2007)................................................................... 5

*FTC v. Neovi, Inc.*,
2011 WL 1465590 (S.D. Cal. 2011) ................................................................... 4

*Godinez v. Huerta*,
2018 WL 2018048 (S.D. Cal. May 1, 2018)................................................*passim*

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ................................................................................ 4, 10, 11

*Laconner Assocs., LLC v. Island Tug & Barge Co.*,
2008 WL 2077948 (W.D. Wash. 2008) .............................................................. 5

*Marketquest Grp. v. BIC Corp.*,
    2018 WL 1756117 (S.D. Cal. Apr. 12, 2018) ..................................................... 14

*McMorrow v. Mondelez Int'l, Inc.*,
    2020 WL 1237150 (S.D. Cal. Mar. 13, 2020).............................................*passim*

*Messick v. Novartis Pharm. Corp.*,
    747 F.3d 1193 (9th Cir. 2014) .................................................................... 10, 15

*Odyssey Wireless, Inc. v. Apple Inc.*,
    2016 WL 7644790 (S.D. Cal. Sept. 14, 2016) .................................................. 14

*In re Packaged Seafood Prods. Antitr. Litig.*,
    2020 WL 5739316 (S.D. Cal. Sept. 24, 2020) ........................................ 8, 12, 14

*PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*,
    2011 WL 5417090 (N.D. Cal. Oct. 27, 2011) .................................................. 6, 8

*Thomas v. Newton Int'l Enters.*,
    42 F.3d 1266 (9th Cir. 1994) ........................................................................... 5, 6

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales
    Practices & Prods. Liability Litig.*,
    978 F. Supp. 2d 1053 (C.D. Cal. 2013) ............................................................... 9

*Wolkowitz v. Lerner*,
    2008 WL 1885770 (C.D. Cal. 2008) .................................................................... 5

**Other Authorities**

Fed. R. Evid. 401 ....................................................................................................... 4

Fed. R. Evid. 702 ...............................................................................................*passim*

Fed. R. Evid. 703 ....................................................................................................... 5

# I.    INTRODUCTION

Plaintiffs' expert, Stephanie Leutert, is qualified to opine in this case, her opinions are reliable, and her testimony will be helpful to the Court in examining the validity of Defendants' claims that their officers turned back or metered asylum seekers at ports of entry ("POEs") on the U.S.-Mexico border because they were "at capacity." In a nutshell, Defendants' motion to exclude Ms. Leutert's testimony is an argument about the weight of her testimony, not its admissibility, and the motion should therefore be denied.

Plaintiffs filed a motion for summary judgment based on the undisputed evidence adduced during the course of discovery. The record shows that since May 2016, Defendants have unlawfully turned back asylum seekers at Class A POEs on the U.S.-Mexico border under the pretext that those POEs were "at capacity." *See* ECF No. 535. Plaintiffs' expert, Stephanie Leutert, has unique and extensive experience, including conducting field work and preparing publications regarding the turnback policy and processing of asylum seekers at the border. Drawing on her experience, Ms. Leutert reviewed and analyzed thousands of documents produced by Defendants during discovery. These documents included hundreds of contemporaneous POE capacity reports that employees at U.S. Customs and Border Protection's ("CBP's) Office of Field Operations ("OFO") prepared and that OFO's senior management relied upon when making operational decisions. Based on her experience, her review of these materials, and her use of standard methodology recognized and accepted in the field of political science, Ms. Leutert concluded that there is no contemporaneous data showing that operational exigencies justified turning back asylum seekers. *See* Ex. 1 (the "Report").[2]

---

[2] For ease of reference and in an effort to avoid duplication of resources, Plaintiffs refer to the Merits Expert Report of Stephanie Leutert, dated July 10, 2020, as the "Report" and cite it as such throughout. The Report was previously submitted to the Court as Exhibit 1 to Defendants' motion to exclude Ms. Leutert's testimony. Plaintiffs also cite to Defendants' Exhibits 2 and 3 throughout as "Def. Ex. __."

1    Ms. Leutert's conclusions are consistent with those she offered in an earlier
2    expert report submitted in support of Plaintiffs' motion for class certification, which
3    the Court granted on August 6, 2020. *See* ECF No. 513. Defendants did not move
4    to exclude Ms. Leutert's expert report at the class certification stage despite the fact
5    that Ms. Leutert utilized similar data sources and nearly identical methodology. In
6    their motion, Defendants fail to explain why Ms. Leutert's class certification expert
7    report was not objectionable, but her merits expert report, which relied on *more* data,
8    should now be excluded. Rather, Defendants' motion should be seen for what it is:
9    a last-ditch effort to rebut the mountain of evidence showing that Defendants'
10   capacity excuse was pretextual and to gloss over the complete dearth of evidence
11   showing any *legitimate* justifications for turnbacks.

12   Defendants now argue that Ms. Leutert's testimony should be excluded
13   because: (1) she lacks the requisite experience in the subject area on which she
14   opines and is therefore unqualified to serve as an expert; and (2) her methodology is
15   flawed because "she disregarded relevant data," her analysis has not been subject to
16   peer scrutiny, and "she did not calculate the margin of error in her calculations."
17   Mot. at 4-7, 9. Those arguments fail for several reasons. ***First***, even a cursory
18   review of Ms. Leutert's credentials, experience, and body of work upon which she
19   draws demonstrates that she easily clears the low bar for offering an expert opinion
20   under Rule 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).
21   ***Second***, Defendants' arguments concerning Ms. Leutert's methodology
22   mischaracterize her report and deposition testimony, mischaracterize the relevant
23   law, and even if true, go to the *weight* of Ms. Leutert's testimony—not its
24   admissibility.

25   Ultimately, all of Defendants' arguments can be reduced to two points: (1)
26   they think that their proffered experts are better, and (2) they think that the only
27   people who can judge CBP's actions are current or former CBP employees.
28   Defendants are free to make those points in cross-examination, but not in a *Daubert*

1   brief.  The Court should deny Defendants' motion to exclude Ms. Leutert's merits

2   expert report.

3   **II.    ARGUMENT**

4       **A.    Defendants Misapprehend the *Daubert* Standard and Rule 702.**

5       Defendants misunderstand the *Daubert* standard.  They make two basic

6   mistakes: (1) they confuse the admissibility of evidence with the weight that should

7   be accorded to that evidence, and (2) they ignore the fact that this is a bench trial.

8   Both of those errors, which pervade Defendants' motion, are sufficient reason to

9   deny the motion.

10      ***First,*** the *Daubert* standard is a rule of admissibility, not a rule for weighing

11  evidence.  *See Daubert*, 509 U.S. at 588.  As the gatekeeper, the district court is

12  charged with assessing whether "the reasoning or methodology underlying the

13  [proposed expert] testimony is scientifically valid and . . . whether that reasoning or

14  methodology properly can be applied to the facts in issue," not the relative appeal of

15  the expert's conclusions.  *Id.* at 592-93.  If the proffered expert meets the threshold

16  standard, their testimony is admitted and the factfinder's weighing of that testimony

17  happens at a later time.  *See* Fed. R. Evid. 702.

18      "Expert testimony is liberally admitted under the Federal Rules."  *Daubert*,

19  509 U.S. at 588. Federal Rule of Evidence 702 governs the admissibility of expert

20  testimony.  Expert witnesses can testify to "scientific, technical, or other specialized

21  knowledge" that will assist the "trier of the fact [in] understand[ing] the evidence or

22  to determine a fact in issue."  Fed. R. Evid. 702.  Expert testimony is admissible

23  pursuant to Rule 702 if it is relevant and reliable.  *Daubert*, 509 U.S. at 589.  Under

24  Rule 702, the "central concern" of whether expert testimony is relevant is whether it

25  can provide "appreciable help" to the factfinder.  *Godinez v. Huerta*, 2018 WL

26

27

28

OPP. TO MOT. TO EXCLUDE

2018048, at *5 (S.D. Cal. May 1, 2018) (Bashant, J.).[3]  Reliability requires that an expert's testimony "have a reliable basis in the knowledge and experience of his [or her] discipline."  *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999)).

The inquiry into the admissibility of an expert witness' testimony does not "require a court to admit or exclude evidence based on its persuasiveness."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011).  In other words, a trial court will not weigh the correctness of an expert witness—the inquiry is only whether the expert's testimony is reliable. *See* Advisory Committee Notes to Rule 702, 2000 Amendments.

Notwithstanding the liberal admission of expert testimony, Rule 702 imposes four constraints. First, "the expert's scientific, technical, or other specialized knowledge" must "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  Second and third, the testimony must be "based on sufficient facts or data" and be "the product of reliable principles and methods."  *Id.*  Fourth, the expert must have "reliably applied the principles and methods to the facts of the case."  *Id.*

**Second**, Defendants also ignore the procedural posture of this case.  Courts have noted that "the *Daubert* gatekeeping obligation is less pressing in connection with a bench trial' where 'the "gatekeeper" and trier of fact [are] one and the same."  *AngiScore, Inc. v. TriReme Med., Inc.*, 87 F. Supp. 3d 986, 1016 (N.D. Cal. 2015) (internal quotation marks omitted); *see also FTC v. Neovi, Inc.*, 2011 WL 1465590, at *2 (S.D. Cal. 2011) ("The importance of the trial judge's gatekeeping role is limited where, as here, 'the judge is the trier of fact and has an ongoing opportunity to evaluate the admissibility and weight of expert testimony.'") (citation omitted);

---

[3] Generally, evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.

1  *Laconner Assocs., LLC v. Island Tug & Barge Co.*, 2008 WL 2077948, at *1 (W.D.

2  Wash. 2008) (collecting cases).  Therefore, if a district court has doubts about the

3  Rule 702 foundation or weight of an expert's opinion, "it need not make those

4  determinations before hearing the testimony."  *Wolkowitz v. Lerner*, 2008 WL

5  1885770, at *2 (C.D. Cal. 2008); *see also FTC v. Connelly*, 2007 WL 6492913, at

6  *2 n.2 (C.D. Cal. 2007) ("Because this is a bench trial, the Court need not preclude

7  the expert's testimony because of potential problems with the sufficiency of facts or

8  data relied on or the reliability of the methods used to formulate their opinions.

9  Rather, the Court can evaluate the expert's testimony against the Rule 702 standard

10  as they testify.").

11  Because Defendants improperly conflate the weight to be accorded to expert

12  testimony with the admissibility of that testimony and because Defendants ignore

13  that fact that the gatekeeper and the fact-finder are the same person, Defendants'

14  motion is irretrievably flawed.

15  **B.    Ms. Leutert's Technical and Specialized Knowledge Helps the**

16  **Trier of Fact.**

17  Ms. Leutert's background, experience, and specialized knowledge regarding

18  the processing of asylum seekers at the U.S.-Mexico border make her uniquely

19  situated to assist the trier of fact in determining key facts in issue—*i.e.*, the manner

20  in which CBP has been turning back asylum seekers since 2016 and whether there

21  appear to be any legitimate justifications for those turnbacks.   Defendants'

22  arguments to the contrary (*see* Mot. at 4) are simply incorrect.

23  A witness is qualified to give expert testimony by her "knowledge, skill,

24  experience, training, or education."  Fed. R. Evid. 702.  The qualifications for expert

25  witnesses under Rule 702 are construed broadly.  *See Thomas v. Newton Int'l Enters.*,

26  42 F.3d 1266, 1269 (9th Cir. 1994).  In addition, "Rule 703 relaxes, for experts, the

27  requirement that witnesses have personal knowledge of the matter to which they

28  testify." *Erhart v. BofI Holding, Inc.*, 445 F. Supp. 3d 831, 839 (S.D. Cal. 2020)

1   (Bashant, J.) (quoting *Claar v. Burlington N. R. Co.*, 29 F.3d 499, 501 (9th Cir.

2   1994)).

3       "In the Ninth Circuit, an expert may be qualified to offer a particular opinion

4   either as a result of practical training or academic experience." *McMorrow v.*

5   *Mondelez Int'l, Inc.*, 2020 WL 1237150, at *2 (S.D. Cal. Mar. 13, 2020) (Bashant,

6   J.) (citing *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)). "The

7   threshold for qualification is low for purposes of admissibility; minimal foundation

8   of knowledge, skill, and experience suffices." *Id.* at *2-3 (quoting *PixArt Imaging,*

9   *Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*, 2011 WL 5417090, at *4 (N.D.

10  Cal. Oct. 27, 2011)).

11      As is well detailed in Ms. Leutert's report, her background makes her

12  eminently qualified to opine on the turnback policy at POEs on the U.S.-Mexico

13  border.  For one, she is the Director of the Central America and Mexico Policy

14  Initiative ("CAMPI") at the Strauss Center for International Security and Law at the

15  University of Texas at Austin.  Report ¶ 1.  In this role, she has conducted extensive

16  original research on the U.S.-Mexico border and Central American migration, which

17  has consisted of:  (i) multiple trips to eight Mexican border cities; (ii) interviews

18  with many asylum seekers waiting on international bridges or living in nearby

19  encampments or migrant shelters; (iii) firsthand observations of turnbacks of asylum

20  seekers' at POEs on the border; (iv) review of waitlists in six Mexican border cities

21  and interviews with thirteen individuals charged with running those waitlists; and

22  (v) partnering with colleagues who conducted similar fieldwork in five additional

23  border cities.  *Id.* ¶ 1, 5.  As a result of her fieldwork, Ms. Leutert and CAMPI

24  published the first-ever border-wide report on CBP's turnback policy and the related

25  asylum waitlists in Mexican border cities, and seven subsequent update reports.  *Id.*

26  ¶¶ 3, 11; *see also* Report Ex. A (detailing publications Ms. Leutert has authored in

27  the past ten years).  These reports have been recognized and used in official

28  publications by Mexico's Secretary of Foreign Relations, the U.S. Congressional

1   Research Service, and the Inter-American Human Rights Commission.  *Id.* ¶ 18.

2       In addition, Ms. Leutert has taught a graduate-level course on Central

3   American migration and Mexico's migration policy at the Lyndon B. Johnson

4   School of Public Affairs at the University of Texas at Austin.  Report ¶ 4.  She also

5   has further experience conducting field work and policy research in Latin America,

6   Central America, Uganda, and Ukraine.  *Id.* Ex. A.

7       These qualifications and experience clearly rise above the low threshold for

8   admissibility and surpass the requisite "minimal foundation of knowledge, skill, and

9   experience."  *McMorrow*, 2020 WL 1237150, at *2-3.  Moreover, Ms. Leutert's

10  expertise and body of work is directly tied to the subject on which she opines—the

11  Government's turnback policy.  Indeed, Mexican and U.S. governmental bodies look

12  to Ms. Leutert's field work and reports as instructive.  Report ¶ 18.  It is therefore

13  difficult to comprehend the argument that Ms. Leutert's testimony is not within the

14  "reasonable confines of [her] subject area."  Mot. at 5 (quoting *D.F. ex rel. Amador*

15  *v. Sikorski Aircraft Carrier Corp.*, 2017 WL 4922814, at *14 (S.D. Cal. Oct. 30,

16  2017)).  And it is equally difficult to understand how Ms. Leutert's testimony, which

17  is informed by her impressive and field-leading body of work, would not provide

18  "appreciable help" to the factfinder.  *Godinez*, 2018 WL 2018048, at *5.

19      Despite their steep hill to climb on expert qualification, Defendants have

20  thrown everything they can think of at the wall to see if something sticks in an

21  attempt to discredit Ms. Leutert.  They argue that she is unqualified to offer expert

22  testimony because she has never worked for a state or federal agency, does not have

23  an academic or professional background that includes law enforcement operations,

24  and does not have "governmental experience," a "background in governmental

25  operations," or "expertise in or assessing how CBP . . . manages its resources,

26  staffing, or other mission sets."  Mot. at 5-6.  Defendants argue that Ms. Leutert is

27  not familiar with the Prison Rape Elimination Act or the William Wilberforce

28

OPP. TO MOT. TO EXCLUDE

7

1   Trafficking Victims Protect Reauthorization Act. *Id.* at 7. And they argue that Ms.
2   Leutert's experience is too limited to the point of view of migrants. *Id.*

3        What Defendants are implying, but do not say directly, is that they believe
4   Ms. Leutert's testimony should be excluded because she does not have the *same*
5   experience as the three CBP officers that they are proffering as experts. That is not,
6   and never has been, the standard for admitting testimony under Rule 702. These
7   arguments twist the *Daubert* inquiry and, more importantly, go to the *weight* of Ms.
8   Leutert's testimony and not its admissibility. *McMorrow*, 2020 WL 1237150, at *4
9   ("Defendant's objection to the depth of [the expert's] experience specifically in the
10  relevant area goes to the weight of his testimony, not the admissibility."); *PixArt
11  Imaging, Inc.*, 2011 WL 5417090, at *4; *see also In re Packaged Seafood Prods.
12  Antitr. Litig.*, 2020 WL 5739316, at *2 (S.D. Cal. Sept. 24, 2020) ("Disputes as to
13  the strength of an expert's credentials . . . go to the weight, not the admissibility, of
14  [her] testimony.").

15       Defendants can point to no case law that states that an expert must have
16  previously been employed in government in order to opine on a government policy.
17  That is because such a rule would be entirely inconsistent with *Daubert*.
18  Defendants' implication that only current or former CBP employees can opine on
19  CBP's policies is flat wrong. Defendants also severely mischaracterize Ms.
20  Leutert's experience with and exposure to CBP officers and officials, port
21  operations, and law enforcement generally. As part of her extensive experience with
22  turnbacks at the border, Ms. Leutert testified that she has spoken with and
23  interviewed too many CBP and DHS officers and officials to count on topics
24  involving turnbacks and port operations, among many others (and she even took a
25  class of students to a presentation with a CBP representative). *See* Def. Ex. 3 at
26  31:15-36:19, 39:7-40:9. Ms. Leutert also testified that she has conducted research

27

28

1    into and taught classes on CBP's staffing numbers.  *Id.* at 37:6-38:25.[4]  She has also

2    partnered with law enforcement to compile data regarding migrants who died after

3    allegedly circumventing CBP checkpoints.  *Id.* at 29:13-31:1.

4         With respect to Defendants' borderline absurd argument concerning the

5    Prison Rape Elimination Act and the William Wilberforce Trafficking Victims

6    Protect Reauthorization Act, Ms. Leutert's lack of familiarity with two of the many

7    statutes that influence CBP policy and procedure do not undermine the remaining

8    substantial experience she has in the field.  And of course, it would be improper for

9    Ms. Leutert to offer legal opinions in the guise of expert testimony anyway.  *See*

10   *Godinez*, 2018 WL 2018048, at *5 (collecting cases).  Moreover, Ms. Leutert did

11   not need to analyze those statutes.  She relied upon the *internal data* that CBP's

12   senior-management uses to make operational decisions that ostensibly comply with

13   those statutes.

14        Finally, that Ms. Leutert has spent substantial time on the Mexican side of the

15   border and interviewed many asylum seekers does not mean that she only "sees one

16   side" of the issues on which she opines, and certainly does not demonstrate that she

17   "lacks the requisite knowledge or experience to opine on operations of CBP at

18

19   [4] Defendants extensively discuss *In re Toyota Motor Corp. Unintended Acceleration
20   Marketing, Sales Practices & Prods. Liability Litig.*, 978 F. Supp. 2d 1053 (C.D.
     Cal. 2013), for the proposition that expert testimony should be excluded where the
21   expert lacks sufficient expertise and fails to explain how his experience allows him
     to reliably offer an expert opinion.  Mot. at 8.  But in *Toyota Motor Corp.*, the Court
22   explained that an expert who relies *solely or primarily on his experience* "must
     explain how that experience leads to the conclusions reached, why that experience
23   is a sufficient basis for the opinion, and how that experience is reliably applied to
     the facts."  *Id.* at 1067.  There, the expert spent his career as an attorney and
24   consultant, yet was opining on automotive electronics using *only* his experience, and
     failed to connect his experience to the facts of the case.  *Id.*  As a result, the Court
25   found that the expert's methodology was unreliable—not that he was unqualified.
     *Id.*  That is a far cry from the situation here.  First, Ms. Leutert's experience, training,
26   and body of work focuses on the turnbacks of asylum seekers—the very subject on
     which she opines.  Second, Ms. Leutert does not rely *solely* on her experience.  She
27   reviewed thousands of documents produced by the government and, in performing
     her analyses, relied on the very same documents used by decisionmakers at CBP.
28   Report at ¶¶ 13-18, 22.  Her methodology, which is unquestionably reliable, is
     discussed in greater detail below.

OPP. TO MOT. TO EXCLUDE

POEs." Mot. at 2. As discussed above, she specifically testified that she has spoken with numerous CBP officers and officials, takes academic trips to observe the operations of POEs, and has partnered with law enforcement to perform original research and data collection and analysis. *See* Def. Ex. 3 at 29:13-40:9. And again, much of Ms. Leutert's analysis is drawn from *Defendants' own data* that they themselves relied upon in order to conduct port operations.

What Defendants do not say outright is that their "qualifications" argument is a cross-examination outline, not a *Daubert* brief. The Court should reject these red-herring arguments and find that Ms. Leutert's background and experience easily clear the hurdle of "minimal foundation of knowledge, skill, and experience" necessary for expert testimony. *McMorrow*, 2020 WL 1237150, at *2-3.

## C.    Ms. Leutert's Testimony Is Based on a Reliable Analysis of Defendants' *Own Data*.

Next, the Court should allow Ms. Leutert's testimony because it is based on sufficient facts and data, is a product of reliable principles and methods, and reliably applies those methods and principles to the facts of the case. Fed. R. Evid. 702. The reliability inquiry is "flexible," *Daubert*, 509 U.S. at 588, and "Rule 702 should be applied with a 'liberal thrust' favoring admission," *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014). The trial court has "considerable leeway" in deciding how to determine the reliability of an expert's testimony and whether the testimony is in fact reliable. *Kumho Tire Co.*, 526 U.S. at 152.

Ms. Leutert explains in her report the comprehensive facts and data she reviewed in arriving at her conclusions. She considered regular reports that her organization, CAMPI, published on CBP's metering practices and the conditions for asylum seekers in Mexican border cities. Report at 11. These reports were based on extensive field work, phone interviews, and direct observation. *Id.* at 12. Ms. Leutert also considered over 3,000 documents produced by Defendants in this litigation or that were marked as exhibits at depositions. *Id.* at 13. More specifically,

she compiled an extensive analysis of CBP's Queue Management Reports, MCAT Daily Reports, Southwest Border Daily Operations Reports, Admissibility Reports from CBP's San Diego Field Office, and emails explaining these reports. *Id.* These reports provided information *compiled by CBP and used by high-level CBP officials* documenting the number of individuals being held in CBP custody at POEs and the available detention capacity at each port. *Id.* at 14. Ms. Leutert additionally considered CBP's Mass Migration Contingency Plans, emails regarding capacity and metering, and other internal CBP memos and musters. In addition, Ms. Leutert reviewed transcripts of the depositions of CBP officers and officials taken during the course of discovery. *Id.* These materials produced by Defendants are cited in dozens of footnotes and tables throughout Ms. Leutert's report, as well as in the accompanying exhibits to her report.

Ms. Leutert also reviewed open-source materials, including newspaper articles, reports from non-governmental organizations, and publicly available legal documents. *Id.* at 15. Finally, Ms. Leutert relied upon her own experiences and observations at POEs and the border. *Id.* at 17.

In addition to the materials upon which Ms. Leutert relies, she explains her methodology in the Report, as well. She states that she received two questions from Plaintiffs' counsel that she was asked to address. *Id.* at 19. She then reviewed the fieldwork and research that she and other contemporaries have conducted across the U.S.-Mexico border, which consisted of original data collection, semi-structured interviews, observations, and a review of primary source materials. *Id.* at 18. As discussed, this fieldwork and research has been recognized and used in official publications by Mexico's Secretary of Foreign Relations, the U.S. Congressional Research Service, and the Inter-American Human Rights Commission. *Id.* Using her experience as background, Ms. Leutert then analyzed documents and data produced in this litigation, depositions, and open source materials from the time period January 1, 2016 to the present. *Id.* at 19.

OPP. TO MOT. TO EXCLUDE

11

1     Ms. Leutert further explained the methodology behind her class certification

2 and merits expert reports (in which she utilized similar documents and analysis) at

3 her depositions on January 28, 2020, and August 11, 2020. *See* Def. Ex. 2 at 33:19-

4 35:11, 38:17-42:7; Def. Ex. 3 at 147:16-152:17. Specifically, she stated that her

5 methodology of reviewing Defendants' documents tracked CBP's own, which

6 consisted of compiling MCAT and queue management data from hundreds of

7 internal reports across multiple years and POEs, and then deriving basic descriptive

8 statistics and analyzing patterns. *See* Def. Ex. 2, at 41:8-18; Def. Ex. 3 at 145:9-

9 148:13. She used this analysis in conjunction with her experience and her own data

10 collection and analysis when forming her opinions. Report ¶¶ 17-19.

11     Ms. Leutert explicitly states that in reviewing Defendants' data, she "did not

12 accept the truth of these documents uncritically. Rather, [she] used [her] experience

13 and observations on the ground to determine whether they were accurate." Report

14 at 16. This methodology is consistent with recognized standards from the disciplines

15 of political science and public policy. *Id.* at 18; *see also* Def. Ex. 2 at 40:8-14. The

16 materials Ms. Leutert considered and her methodology also clearly pass *Daubert*'s

17 reliability test. *See, e.g.*, *In re Packaged Seafood Prods. Antitr. Litig.*, 2020 WL

18 5739316, at *3 (finding expert's methodology reliable where based on "relevant

19 material in the scholarly literature, trade journals, newspapers, stock exchange

20 listings, and searchable databases," in addition to material adduced during

21 discovery); *McMorrow*, 2020 WL 1237150, at *4 (expert's opinion reliable where

22 his opinions had previously been published and he drew on his experience and

23 research on relevant literature).

24     Indeed, boiled down to is essence, Ms. Leutert did what every expert should

25 do. She received a null hypothesis. She set out to test it using the principles and

26 methodologies employed in her academic discipline. And, using that methodology,

27 she came to conclusions that would be helpful to the factfinder. The admissibility

28 of her testimony should not be in dispute. *Allen v. Similasan Corp.*, 306 F.R.D. 635,

642 (S.D. Cal. 2015) (Bashant, J.) (finding experts' methods objective, "helpful, reliable, and relevant" even where "simple"). Perhaps that is why Defendants did not move to exclude her prior expert testimony which used *the same methodology*, *reviewed the same categories of documents*, and *came to similar conclusions*.

Therefore, it should come as no surprise that all of Defendants' methodology arguments fall well short of the mark. First, Defendants argue that Ms. Leutert "ignored relevant data without scientifically-based explanation." Mot. at 10. In Defendants' view, Ms. Leutert failed to account for "CBP's priority mission," "operational justifications," and "staffing and resource decisions" in her analysis, rendering it unreliable. *Id.* Tellingly, Defendants do not cite to a single document that they contend Ms. Leutert should have considered but did not. Their argument is plainly wrong on both the facts and the law. As Ms. Leutert explains, she did not "ignore" these types of documents and data—indeed, there is an entire subsection of her report addressing these types of factors. Report ¶¶ 22(b), 124-35. When asked at her depositions, Ms. Leutert testified that she reviewed Defendants' own documents and data with these factors in mind, but could not incorporate them in her analysis because she simply could not link them to metering. Def. Ex. 2 at 45:3-10; Def. Ex. 3 at 145:5-147:15. The fact is that there are simply no contemporaneous documents or data quantifying these factors, or even defining many of these terms that Defendants bandy about in an effort to will away the data that CBP *did* rely on internally. Report ¶ 22(b); Def. Ex. 3 at 145:3-147:15.

But more importantly, even if Ms. Leutert had completely neglected or failed to account for these considerations (which she did not), even that would not render her testimony inadmissible. It is well settled that an expert's analysis is not rendered defective or unreliable simply because it ignores some factors that may be relevant or there is disagreement regarding the facts underlying the analysis, because that goes to the weight and not the admissibility of the expert's testimony. *See, e.g.*, *In re Packaged Seafood Prods. Antitr. Litig.*, 2020 WL 5739316, at *4 ("Defendants'

1  'cherry-picking' argument is unpersuasive.  There is no rule that an expert must

2  consider and discuss all of the evidence on the record in order to proffer admissible

3  testimony.  That [an expert] did not address (or review) deposition testimony where

4  defendants' employees testified to matters that purportedly undermine some of his

5  opinions or assumptions does not make his testimony excludable.  Those are grounds

6  for cross-examination."); *Marketquest Grp. v. BIC Corp.*, 2018 WL 1756117, at *3-

7  4 (S.D. Cal. Apr. 12, 2018) (Bashant, J.) (argument that analysis is defective because

8  it ignores other relevant factors goes to weight, not admissibility, of evidence);

9  *Odyssey Wireless, Inc. v. Apple Inc.*, 2016 WL 7644790, at *15 (S.D. Cal. Sept. 14,

10  2016) (declining to exclude expert's testimony because the defendant's

11  "disagreement with the facts underlying that opinion go to the weight to be afforded

12  the testimony and not its admissibility"); *see also, e.g.*, *McMorrow*, 2020 WL

13  1237150, at *3 (upholding methodology as reliable where expert explained that he

14  did not simply ignore articles because he disagreed with their conclusions but

15  considered only studies fitting with "the preponderance of data").  As a result,

16  Defendants' argument that Ms. Leutert's methodology is unreliable because she did

17  not consider certain materials fails.

18      Defendants' next two arguments against the reliability of Ms. Leutert's

19  report—that it has not been peer reviewed, and that she did not calculate the margin

20  of error in her analysis—are of no moment.  As this Court recently held, "[i]n the

21  context of non-scientific testimony, the *Daubert* factors (peer review, publications,

22  potential error rate, etc.) simply are not applicable because reliability depends

23  heavily on the knowledge and experience of the expert, rather than the methodology

24  or theory behind it."  *Godinez*, 2018 WL 2018048, at *3 (internal quotation marks

25  omitted).  The same is true here.  Ms. Leutert is not offering testimony in a "hard

26  science," such as chemistry or physics, where conclusions are subject to error rates

27  and peer review.  As a result, the peer review and error rate factors are simply

28

inapplicable, so the fact that her report was not peer reviewed and she did not calculate an error rate have no bearing on the reliability of her methodology.[5]  *Id.*

As discussed above, Ms. Leutert has deep knowledge and experience in her field.  Even before her retention, she had performed extensive fieldwork and written prolifically on Defendants' metering practice at the U.S.-Mexico border.  During the course of discovery, she bolstered her own experience and work in the field by reviewing thousands of documents produced by Defendants in concert with a multitude of deposition transcripts of CBP personnel.  Ms. Leutert used Defendants' own data, in concert with her experience and background, to perform her analysis and form her opinions.  Thus, her opinions are reliable, particularly given the "liberal thrust favoring admission." *Messick*, 747 F.3d at 1196.

## III.  CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to exclude the expert testimony of Stephanie Leutert.

Dated: October 5, 2020

MAYER BROWN LLP
  Matthew H. Marmolejo
  Ori Lev
  Stephen M. Medlock

SOUTHERN POVERTY LAW CENTER
  Melissa Crow
  Sarah Rich
  Rebecca Cassler

---

[5] Even if these factors were applicable, Defendants again mischaracterize the record and Ms. Leutert's testimony.  Ms. Leutert testified that her report could not be peer reviewed because it is based on non-public information that has been designated as Confidential or Highly Confidential in this litigation. Def. Ex. 2 at 47:3-4.  As to the error rate, Ms. Leutert testified that the errors were inherent in CBP's own data and calculations—not in her methodology. *Id.* at 50:1-51:21.

OPP. TO MOT. TO EXCLUDE

CENTER FOR CONSTITUTIONAL
RIGHTS
    Baher Azmy
    Ghita Schwarz
    Angelo Guisado

AMERICAN IMMIGRATION
COUNCIL
    Karolina Walters

By: */s/ Stephen M. Medlock*
    Stephen M. Medlock

*Attorneys for Plaintiffs*

OPP. TO MOT. TO EXCLUDE

1

**CERTIFICATE OF SERVICE**

2    I certify that I caused a copy of the foregoing document to be served on all

3  counsel via the Court's CM/ECF system.

4  Dated:  October 5, 2020                    MAYER BROWN LLP

5

6                                              By _/s/ Stephen M. Medlock_____

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28