MAYER BROWN LLP
Matthew H. Marmolejo (CA Bar No. 242964)
*mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
Ori Lev (DC Bar No. 452565)
(*pro hac vice*)
*olev@mayerbrown.com*
Stephen M. Medlock (VA Bar No. 78819)
(*pro hac vice*)
*smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: +1.202.263.3000
Facsimile: +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
Melissa Crow (DC Bar No. 453487)
(*pro hac vice*)
*melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

Al Otro Lado, Inc., *et al.*,

Plaintiffs,

v.

Chad F. Wolf,[1] *et al.*,

Defendants.

Case No.: 17-cv-02366-BAS-KSC

# PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE DEFENDANTS' PURPORTED EXPERT TESTIMONY

**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**

[1] Defendants have represented that Mr. Wolf is the Acting Secretary of the U.S. Department of Homeland Security. Numerous courts disagree. *Casa de Md., Inc. v. Wolf*, 2020 WL 5500165, at *23 (D. Md. 2020); *Immigrant Legal Res. Ctr. v. Wolf*, 2020 WL 5798269, at *7-9 (N.D. Cal. 2020); *N.W. Immigrant Rts. Project v. USCIS*, 2020 WL 5995206, at *24 (D.D.C. 2020).

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
*bazmy@ccrjustice.org*
Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
*gschwarz@ccrjustice.org*
Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
*aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
*sarah.rich@splcenter.org*
Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
*rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
*kwalters@immcouncil.org*
1331 G St. N.W., Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION .......... 1

II. DEFENDANTS WERE REQUIRED TO DISCLOSE FULL, WRITTEN EXPERT REPORTS .......... 2

A. Defendants' Experts Are Rule 26(a)(2)(B) Witnesses .......... 2

B. Defendants' Conduct Harmed Plaintiffs And There Is No Justifiable Excuse For It .......... 5

III. *DAUBERT* APPLIES AND IT DOOMS DEFENDANTS' EXPERTS .......... 6

A. Defendants Misstate the *Daubert* Standard .......... 6

B. Defendants' Experts Flunk the *Daubert* Test .......... 7

IV. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. AllianceOne, Inc.*,
2011 WL 2066617 (S.D. Cal. 2011) .......... 6

*Brauer Bros., Inc. v. Nike, Inc.*,
2011 WL 12828588 (S.D. Cal. 2011) .......... 3, 4

*Copart, Inc. v. Sparta Consulting, Inc.*,
2017 WL 85824 (E.D. Cal. 2017) .......... 5

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .......... *passim*

*Deutsch v. Novartis Pharm. Corp.*,
768 F. Supp. 2d 420 (E.D.N.Y. 2011) .......... 7

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) .......... 8

*Goodman v. Staples The Office Superstore, LLC*,
644 F.3d 817 (9th Cir. 2011) .......... 2, 3, 5, 6

*Harvey v. Novartis Pharm Corp.*,
895 F. Supp. 2d 1206 (N.D. Ala. 2012) .......... 7

*I.V. v. Wenatchee Sch. Dist. No. 246*,
342 F. Supp. 3d 1083 (E.D. Wash. 2018) .......... 8

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) .......... 7

*Lust By & Through Lust v. Merrell Dow Pharm., Inc.*,
89 F.3d 594 (9th Cir. 1996) .......... 7

*LVL XII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
209 F. Supp. 3d 612 (S.D.N.Y. 2016) .......... 8

*Mann v. City of San Diego*,
2014 WL 12729300 (S.D. Cal. 2014) .......... 5

*Mintel Grp., Ltd. v. Neergheen*,
636 F. Supp. 2d 677 (N.D. Ill. 2009).......... 9

*Navelski v. Int'l Paper Co.*,
244 F. Supp. 3d 1275 (N.D. Fla. 2017) .......... 9

*Ollier v. Sweetwater Union High Sch. Dist.*,
768 F.3d 843 (9th Cir. 2014) .......... 10

*Open Text, S.A. v. Box, Inc.*,
2015 WL 349197 (N.D. Cal. 2015).......... 9, 10

*Republic of Ecuador v. Mackay*,
742 F.3d 860 (9th Cir. 2014) .......... 5

*Rowland v. Novartis Pharm. Corp.*,
9 F. Supp. 3d 553 (W.D. Pa. 2014) .......... 7

*Tajonera v. Black Elk Energy Offshore Ops., LLC*,
2016 WL 3180776 (E.D. La. 2016).......... 7

*Tarter v. Throne Law Office, P.C.*,
2019 WL 609337 (D. Mont. 2019).......... 3

*Tavilla v. Cephalon Inc.*,
2012 U.S. Dist. LEXIS 49943 (D. Ariz. 2012) .......... 9

*Ulbrick v. UPR Prod., Inc.*,
2011 WL 500034 (E.D Mich. 2011) .......... 3

*United States v. Sierra Pacific Industries*,
2011 U.S. Dist. LEXIS 60372 (E.D. Cal. 2011) .......... 3

**Other Authorities**

Fed. R. Evid. 702 .......... 7, 8, 10

Fed. R. Evid. 702(c).......... 8

Rule 26(a)(2)(B) .......... *passim*

Rule 26(a)(2)(C) .......... *passim*

# I. INTRODUCTION

Defendants' opposition only confirms that the purported expert testimony of Mariza Marin, Rodney Harris, and Samuel Cleaves should be excluded. Defendants' opposition relies on two remarkable arguments. First, Defendants argue that purported expert witnesses who review materials provided to them by counsel and reach conclusions that are outside of their percipient knowledge do not need to provide an expert report under Fed. R. Civ. P. 26(a)(2)(B). Second, Defendants claim that their experts "[are] not subject to the *Daubert* factors because they rely solely on their professional knowledge and experience." Opp. at 1.[2]

Neither assertion is true. Experts who rely on discovery materials, and not their first-hand observation, to reach their conclusions must disclose full, written expert reports. Ms. Marin and Mr. Cleaves submitted "declarations" in support of Defendants' recent cross-motion for summary judgment ("CM") that show that they relied on documents from the discovery records—rather than their own percipient knowledge—to reach their opinions. And Mr. Harris' Rule 26(a)(2)(C) disclosure confirms that he did the same. Accordingly, they are Rule 26(a)(2)(B) witnesses, who were required to submit full written expert reports. Further, Defendants' failure to disclose full written expert reports is not justifiable or harmless. Defendants ignored mandatory authority that is nearly a decade old and sandbagged Plaintiffs by withholding more than 30 documents that their experts relied upon.

Furthermore, Defendants badly misread *Daubert* case law. Defendants claim that there are two standards for admitting expert testimony—a heightened *Daubert* standard that applies only to "scientific" testimony and some sort of lower standard when an expert offers "non-scientific opinions and testimony." Opp. at 15. That argument is counter to decades of Supreme Court and Ninth Circuit case law.

---

[2] "Opp." refers to Defendants' Opposition to Plaintiffs' Motion to Exclude (Dkt. 569). "Op. Br." refers to Plaintiffs' Memorandum in Support of their Motion to Exclude (Dkt. 534). "CM Ex." refers to the exhibits to Defendants' Cross-Motion for Summary Judgment (Dkt. 562-2, *et seq.*).

Defendants' experts are offering nothing more than because-I-said-so opinions based on no methodology. There is one *Daubert* standard, it applies in this case, and it requires the exclusion of Defendants' expert reports.

## II. DEFENDANTS WERE REQUIRED TO DISCLOSE FULL, WRITTEN EXPERT REPORTS

### A. Defendants' Experts Are Rule 26(a)(2)(B) Witnesses

Defendants' expert testimony should be excluded because they did not disclose written expert reports that comply with Rule 26(a)(2)(B) on or before the August 7, 2020 deadline for Defendants' expert disclosures. *See* Dkt. 420. The parties' dispute on this point hinges on the application of a single case, *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817 (9th Cir. 2011). In *Goodman*, a plaintiff in a personal injury action saw several treating physicians. *Id.* at 826. In addition to examining the plaintiff, the treating physicians in *Goodman* also received and reviewed "a large number of unidentified medical records" provided by the plaintiff's attorney to arrive at opinions regarding the nature and origin of the plaintiff's injuries. *Id.* at 826, n.2. Prior to trial, the plaintiffs disclosed these treating physicians as experts under Rule 26(a)(2)(C). *Id.* at 825. The defendant, Staples, moved to exclude the testimony of those experts, arguing that the physicians were "retained experts" under Rule 26(a)(2)(B) because they reviewed materials provided to them by the plaintiff's counsel. *Id.* at 826. The Ninth Circuit agreed, holding that a treating physician is only a "non-retained" expert to the extent they are testifying about what they witnessed first-hand, i.e. to "opinions that were formed during the course of treatment." *Id.* at 826.

Defendants attempt to distinguish *Goodman* on the basis that *Goodman* was a personal injury case, and this case involves the U.S.-Mexico border. Opp. at 12. But that distinction makes no difference. When a purported expert "[is] functioning analogously to a physician performing an 'after-the-fact' diagnosis rather than providing 'in-the-moment' or 'on-the-scene' treatment," they must provide a Rule

26(a)(2)(B) expert report. *Ulbrick v. UPR Prod., Inc.*, 2011 WL 500034, at *4 (E.D Mich. 2011) (mechanic who was not involved in car accident needed to provide a report on his "after-the-fact" examination of plaintiff's car); *Tarter v. Throne Law Office, P.C.*, 2019 WL 609337, at *5 (D. Mont. 2019) (after-the-fact opinions regarding legal representation excluded because they were not disclosed in Rule 26(a)(2)(B) report).

In *United States v. Sierra Pacific Industries*, 2011 U.S. Dist. LEXIS 60372 (E.D. Cal. 2011), a district court applied *Goodman* to a case that did not involve a treating physician in a personal injury case. *Id.* at *13-18. In *Sierra*, the Government disclosed two fire investigators as Rule 26(a)(2)(C) experts. *Id.* at *13-14. The district court found that the fire investigators were properly categorized as Rule 26(a)(2)(C) experts because their testimony was "limited to the knowledge and opinions that they formed at the time they drafted their [investigative narrative] on the cause and origin" of a wildfire. *Id.* at *17. The district court contrasted the fire investigators with the physicians in *Goodman* who "reviewed documents after they treated [the] plaintiff." *Id.* at *16-17.

Likewise, *Brauer Bros., Inc. v. Nike, Inc.*, 2011 WL 12828588 (S.D. Cal. 2011), a case cited (and misread) by Defendants, illustrates why the testimony of Mr. Cleaves, Mr. Harris, and Ms. Marin should be excluded. In *Brauer Bros.*, the plaintiff disclosed a witness under Fed. R. Civ. P. 26(a)(2)(C) who had extensive first-hand experience with licensing negotiations in the apparel industry. *Id.* at *1. The Court ruled that the witness could "testify as a percipient witness regarding his own licensing work," and was "not required to prepare a[n expert] report" concerning his first-hand observations. *Id.* at *3. However, the witness' testimony "regarding industry standard royalty rates on apparel licenses" that were "formed outside of the course of his relationship with [the plaintiff]," "necessitate[d] a report as to those opinions." *Id.* As a result, the Court found that the plaintiff could not rely on the expert "to supply evidence on a motion, at a hearing, or at trial regarding his

expert opinions on industry standard royalty rates for apparel licenses." *Id.* at *5.

So too here. Mr. Cleaves, Mr. Harris, and Ms. Marin are percipient witnesses, their deposition testimony is already before the Court and speaks for itself. However, in their role as purported experts they went beyond their percipient knowledge to offer testimony and opinions based on their review of documents. *Those* opinions should have been disclosed in expert reports, but Defendants did not do so.

Defendants claim that Mr. Cleaves, Ms. Marin, and Mr. Harris are "testifying [solely] as to firsthand knowledge," as "percipient witnesses [testifying about] their experience." Opp. 13. Not true. On September 25, 2020, Defendants served declarations from Mr. Cleaves and Ms. Marin in support of their cross-motion for summary judgment. These declarations illustrate in stark detail why Defendants' purported expert testimony should be excluded.

In his declaration, Mr. Cleaves went beyond his first-hand observations, and reviewed ***55 documents***, including ***29 documents that were not produced to Plaintiffs until after Defendants filed their cross-motion for summary judgment***. *See* CM Ex. 58 at App'x. In an apparent attempt to sweep this fact under the rug, Defendants ***omitted this appendix from their Daubert opposition papers***. *Compare* CM Ex. 58 (containing appendix), *with* Dkt. 570-3 (excluding appendix). Mr. Cleaves reviewed these 55 documents "to discuss how specific factors impacted" the El Paso POE's "operational capacity" on June 17, 2018. CM Ex. 58 at ¶ 17. Mr. Cleaves explicitly states in his declaration that "[a]fter reviewing th[ose] materials," he "conclude[d] that on Sunday, June 17, 2018, the Port of El Paso was operating beyond its operational capacity during its midnight shift and at or near its operational capacity for all other shifts on this date." *Id.*

In her declaration, Ms. Marin similarly offers testimony that goes beyond her percipient observations by reviewing documents and applying "concepts" concerning "operational capacity" to the conditions at the San Ysidro POE on June 17, 2018. CM Ex. 60 at ¶ 14. In total, Ms. Marin reviewed and relied upon ***14***

***documents, two of which were not produced until Defendants filed their cross-motion for summary judgment***. CM Ex. 60 at App'x. Based on her review of these materials, Ms. Marin opines that the number of asylum seekers in custody at the San Ysidro POE at a ***specific time*** on a ***specific day*** is due to five factors, and not the border-wide turnback policy. *Id.* at ¶ 16.

According to Defendants' Rule 26(a)(2)(C) disclosure, Mr. Harris will offer similar testimony. At Defense counsel's request, Mr. Harris reviewed documents related to the operations of the Laredo POE on June 17, 2018. Dkt. 570-2 at 7 (Defense counsel confirming that Mr. Harris reviewed documents at their request); Based on reviewing these documents, Mr. Harris concluded that the Laredo POE was doing "an adequate job of balancing its competing priorities" on that day, not executing the turnback policy. Dkt. 570-2 at 7.

This is precisely the sort of testimony that should have been disclosed in a written expert report that complied with Rule 26(a)(2)(B). Defendants' experts over-stepped the boundary for Rule 26(a)(2)(C) expert testimony by explicitly relying on documents at the request of Defense counsel and then using those documents to reach opinions. *See Goodman*, 644 F.3d at 826; *Mann v. City of San Diego*, 2014 WL 12729300, at *3 (S.D. Cal. 2014) (an expert must disclose a full expert report under Rule 26(a)(2)(B) "if their testimony goes beyond . . . on-the-scene knowledge and observations"). None of Defendants' cases hold otherwise. *See, e.g.*, *Republic of Ecuador v. Mackay*, 742 F.3d 860, 866 n.1 (9th Cir. 2014) (not addressing whether Rule 26(a)(2)(C) experts reviewed documents outside of their normal work to come to their opinions); *Copart, Inc. v. Sparta Consulting, Inc.*, 2017 WL 85824, at *2-3 (E.D. Cal. 2017) (same).

### B. Defendants' Conduct Harmed Plaintiffs And There Is No Justifiable Excuse For It

Defendants claim that their failure to disclose full expert reports was substantially justified and harmless. Opp. at 13-15. That is inaccurate.

First, there is no justification for not disclosing full expert reports. *Goodman* clearly required Defendants to do so. 644 F.3d at 826. Unlike the cases that Defendants cite, this is not a case where there is a split in authority or a dearth of mandatory authority;[3] Defendants merely needed to follow mandatory authority that has been on the books for nearly a decade.

Second, Defendants' conduct did real harm to Plaintiffs. As Defendants admit, they withheld the details of Mr. Cleaves' and Ms. Marin's opinions and the documents they relied upon until Defendants filed their cross-motion for summary judgment. This sandbagging denied Plaintiffs the ability to depose Mr. Cleaves and Ms. Marin about how they selected the documents they relied upon, the contents of those documents, and contrary information that they did not review. Furthermore, it was not until Defendants filed their cross-motion for summary judgment that Plaintiffs learned that Mr. Cleaves and Ms. Marin relied on over 30 documents that have not been produced to Plaintiffs, despite Defendants agreeing to produce all documents that their declarants relied upon. This sandbagging should not be countenanced.

Defendants violated Rule 26(a)(2)(B). They have no excuse for doing so, and they harmed Plaintiffs in the process. Their experts' testimony should be excluded.

## III. *DAUBERT* APPLIES AND IT DOOMS DEFENDANTS' EXPERTS

### A. Defendants Misstate the *Daubert* Standard

Defendants' argument regarding *Daubert* ignores Supreme Court precedent and mischaracterizes Rule 26(a)(2)(C) experts. To begin with, Defendants claim that "the *Daubert* factors are inapplicable" to non-scientific opinions and testimony. Opp. at 15. That is just wrong. The Supreme Court put this question to bed over 20 years ago. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *see also* Fed. R. Evid. 702 (applying same standard to all "scientific," "technical," and

[3] *See, e.g.*, *Adams v. AllianceOne, Inc.*, 2011 WL 2066617, at *10 (S.D. Cal. 2011) (not imposing sanctions where there was a "split in authority" regarding Rule 30(b)(6) depositions).

"specialized knowledge" that "will assist the trier of fact to . . . determine a fact in issue"); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-90 (1993) (the noun "knowledge" in Rule 702, not the adjectives "scientific," "technical," or "specialized," "establishes a standard of evidentiary reliability"). Even Defendants' lead case, *Victorino v. FCA US LLC*, explicitly applies the *Daubert* standard. 2018 WL 2551192, at *1-2 (S.D. Cal. 2018). And all that *United States v. Hankey* holds is that considerations such as peer review, error rate, and publication, do not apply to non-scientific experts. 203 F.3d 1160, 1169 (9th Cir. 2000).

Defendants also claim that they should be excused from complying with *Daubert* and Rule 702 because their experts are merely Rule 26(a)(2)(C) experts. Opp. at 19. Even assuming that is true (and it is not), Rule 26(a)(2)(C) is not an exception to the *Daubert* standard. Under Rule 702, every expert, including those "qualified . . . by . . . experience," must present "testimony [that] is the product of reliable principles and methods." Fed. R. Evid. 702. As the proponent of this testimony, Defendants bear the burden of showing that their experts' testimony complies with Rule 702. *Lust By & Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). For that reason, courts routinely hold that "Rule 26(a)(2)(C) experts who provide expert opinions pursuant to Rule 702 may also be challenged under *Daubert*." *Tajonera v. Black Elk Energy Offshore Ops., LLC*, 2016 WL 3180776, at *7 (E.D. La. 2016); *see also Deutsch v. Novartis Pharm. Corp.*, 768 F. Supp. 2d 420, 471 (E.D.N.Y. 2011) (applying *Daubert* to Rule 26(a)(2)(C) expert); *Harvey v. Novartis Pharm Corp.*, 895 F. Supp. 2d 1206, 1213 (N.D. Ala. 2012) (same); *Rowland v. Novartis Pharm. Corp.*, 9 F. Supp. 3d 553, 566 (W.D. Pa. 2014) (same). It is simply untrue that *Daubert* does not apply.

### B. Defendants' Experts Flunk the *Daubert* Test

Defendants' expert testimony is not reliable. *See, e.g.*, Fed. R. Evid. 702(c). Defendants claim that their experts used a "qualitative" methodology that did not rely on "one-size-fits-all factors" or reach "hard conclusions." Opp. at 20. But

simply saying that an expert relied on prior experience and performed a qualitative analysis does not excuse an expert from using a reliable methodology. *See, e.g.*, *LVL XII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 647 (S.D.N.Y. 2016) ("Use of a qualitative or experience-based methodology does not exempt an expert from *Daubert* scrutiny.").

Here, Mr. Cleaves, Mr. Harris, and Ms. Marin provide no explanation of the methodology that they used to reach their conclusions. They claim that they were able to determine that the leadership of the San Ysidro, Laredo, and El Paso POEs made decisions concerning inspecting and processing asylum seekers based on operational concerns, not a border-wide turnback policy. *See* Opp. at 2-8. In the end, their disclosures and declarations are little more than a rote recitation regarding the operations of a POE on a particular day and then stating that those facts are consistent with decisions about inspecting and processing asylum seekers being made based on operational exigencies. *See* Opp. at 2-8.

But, a district court's "gatekeeping function requires more than simply 'taking the expert's word for it.'" Fed. R. Evid. 702 advisory committee's note (2000) (quotation omitted). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). When an expert "fail[s] to set down any principles connecting the data and her conclusion," the "opinion rests on . . . *ipse dixit*" and should be excluded. *I.V. v. Wenatchee Sch. Dist. No. 246*, 342 F. Supp. 3d 1083, 1092-93 (E.D. Wash. 2018).

All that Defendants' experts offer here is *ipse dixit*. For instance, Mr. Cleaves' declaration details the operations of the El Paso POE on June 17, 2018. *See* CM Ex. 58 at ¶ 18. Mr. Cleaves states that these facts indicate that the port "was stretched thin" and was "operating beyond operational capacity." *Id.* at ¶ 18(i). But what was the operational capacity of the El Paso POE? Mr. Cleaves never says. He just opines that he believes the El Paso POE was operating beyond that undefined capacity

during a single shift on a single day. *Id.* at ¶ 18(i). Simply putting up "a person with experience in the field . . . to opine that 'I know it when I see it' . . . is not satisfactory." *Mintel Grp., Ltd. v. Neergheen*, 636 F. Supp. 2d 677, 684 (N.D. Ill. 2009); *Tavilla v. Cephalon Inc.*, 2012 U.S. Dist. LEXIS 49943, at *15 (D. Ariz. 2012) (excluding testimony where expert "provided nothing but her 'I know it when I see it' opinion").

These are nothing more than "black box" expert opinions that are "stated without any reasoned explanation that would enable the Court, a jury, or an opposing party to meaningfully evaluate the process by which it was reached." *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1296 (N.D. Fla. 2017); *Open Text, S.A. v. Box, Inc.*, 2015 WL 349197, at *6 (N.D. Cal. 2015) (same).[4] To determine that a POE was "operating beyond operational capacity," CM Ex. 58 at ¶ 18(i), Mr. Cleaves must have compared the operations at the port to the operational capacity of the port at that time. Mr. Cleaves never explains how he did so. For example, his disclosure and declaration contain no explanation of how he estimated the operational capacity of the El Paso POE on June 17, 2018 or how he went about comparing that operational capacity to the actual operations of the port. *See* CM Ex. 58 at ¶ 18. He did not "spell[] out the steps [he] took to go from the data" to his opinion. *Open Text*, 2015 WL 349197, at *6. And his declaration and disclosure do not allow the court to "see how the pieces fit together or how the data [drove] the conclusion." *Id.* All that it does is list the inputs to Mr. Cleaves' analysis and his conclusion. *See* CM Ex. 58 at ¶ 18. But "the link, if any, between the[] inputs" he considered and his opinion "is written in invisible ink." *Open Text*, 2015 WL

[4] Defendants attempt to distinguish *Open Text* on the basis that the expert in *Open Text* was offering an opinion on the reasonable royalty rate in a patent infringement case. *See* Opp. at 19. But Defendants' attempted distinction is unconvincing. Like the experts in this case, the expert in *Open Text* was using a qualitative methodology to reach her opinion. *Open Text*, 2015 WL 349197, at *2-3, *6. The district court in *Open Text* determined that simply referencing an expert's "experience" was insufficient. *Id.* at *6. That is exactly the case here too.

349197, at *6. And simply saying that Mr. Cleaves' opinion is the result of a "qualitative" analysis based on his "experience," is an "abstraction" not "testable in the crucible of cross-examination." *Id.*[5]

As if that were not enough, Defendants are attempting to offer testimony that is fundamentally opposed to the undisputed record. Both sides agree that Defendants do not quantify, calculate, record, report, or define a POE's "operational capacity." *See* Op. Br. at 2-4; Opp. at 20. To the extent that operational capacity exists, Defendants admit that it is not a "hard number." Opp. at 21. Yet, Defendants' experts purport to have concluded that a specific port was operating "at," "near," or "beyond" its "operational capacity" during a particular shift on a particular day. *See* CM Ex. 58 at ¶ 18. Since the operational capacity of a port is unknowable and cannot be reconstructed, Defendants' expert testimony is nothing more than the experts' subjective belief that particular conditions represent a port being at, near, or beyond its operational capacity. Worse still, Defendants' experts cannot agree on what particular conditions must be considered to support their subjective belief regarding operational capacity at a given POE. *See* Op. Br. at 15-16. But expert opinion may not be mere "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590; *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014) ("personal opinion testimony is inadmissible as a matter of law under Rule 702 . . . and speculative testimony is inherently unreliable"). Because Defendants' experts fail to offer non-speculative opinions, their testimony should be excluded.

## IV. CONCLUSION

For the foregoing reasons, Defendants' expert testimony should be excluded.

Dated: October 19, 2020

MAYER BROWN LLP
Matthew H. Marmolejo
Ori Lev
Stephen M. Medlock

---

[5] As Plaintiffs explained in their opening brief, the same problem pervades the expert disclosures of Mr. Harris and Ms. Marin. *See* Op. Br. at 14-16.

SOUTHERN POVERTY LAW CENTER
Melissa Crow
Sarah Rich
Rebecca Cassler

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy
Ghita Schwarz
Angelo Guisado

AMERICAN IMMIGRATION COUNCIL
Karolina Walters

By: /s/ Stephen M. Medlock
Stephen M. Medlock

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that I caused a copy of the foregoing document to be served on all counsel via the Court's CM/ECF system.

Dated: October 19, 2020

MAYER BROWN LLP

By *\/s/ Stephen M. Medlock*