JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation – District Court Section
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
ALEXANDER J. HALASKA (IL 6327002)
ARI NAZAROV (CT 414491)
HAYDEN WINDROW (NY 4384749)
DHRUMAN Y. SAMPAT (NJ 270892018)
Trial Attorneys
United States Department of Justice
Civil Division
Office of Immigration Litigation – District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 514-4120 | Fax: (202) 305-7000

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | Hon. Cynthia A. Bashant |
| v. | **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE TESTIMONY OF STEPHANIE LEUTERT** |
| CHAD F. WOLF, Acting Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*, | |
| *Defendants* | Hearing Date: October 19, 2020 |
| | **NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................1
ARGUMENT ................................................................................................................2
   I.   The Court May Not Abdicate Its Gatekeeping Responsibilities. ...................2
   II.  Plaintiffs Admit that Leutert Does Not Have the Requisite Knowledge to Opine on Government Operations ..........................................3
   III. Leutert's Flawed Methodology Warrants Striking Her Testimony ..............7
CONCLUSION .............................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*A.B. v. Cty. of San Diego*,
   2020 WL 4430971 (S.D. Cal. July 31, 2020) ........................................................2

*Allen v. Am. Capital Ltd.*,
   287 F. Supp. 3d 763 (D. Ariz. 2017) ................................................................8, 9

*Amador v. Sikorski Aircraft Corp.*,
   2017 WL 4922814 (S.D. Cal. Oct. 30, 2017) ......................................................4

*Bee, Denning, Inc. v. Capital All. Grp.*,
   310 F.R.D. 614 (S.D. Cal. 2015) .........................................................................3

*Brighton Collectables, Inc. v. RK Texas Leather Mfg.*,
   923 F. Supp. 2d 1245 (S.D. Cal. 2013) ................................................................8

*Daubert v. Merrell Dow Pharm.*,
   43 F.3d 1311 (9th Cir. 1995) ...............................................................................9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 .........................................................................................................2

*Erhart v. Bofl Holding Inc.*,
   445 F. Supp. 3d 831 (S.D. Cal. 2020) ..................................................................8

*Estate of Barabin v. AstenJohnson, Inc.*,
   740 F.3d 457 (9th Cir. 2014) ...............................................................................2

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
   618 F.3d 1025 (9th Cir. 2010) .............................................................................8

*FTC v. Qualcomm Inc.*,
   2018 WL 6615050 (N.D. Cal. Dec. 17, 2018) .....................................................2

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) .........................................................................................7, 8

*Henricksen v. ConocoPhillips Co.*,
   605 F. Supp. 2d 1142 (E.D. Wash. 2009) ........................................................7, 8

*In re Hanford Nuclear Reservation Litig.*,
   894 F. Supp. 1436 (E.D. Wash. 1995) ................................................................... 9

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices and Products Liability Litigation*,
   978 F. Supp. 2d 1053 (C.D. Cal. 2013) ................................................................. 5

*Jinro America Inc. v. Secure Investments, Inc.*,
   266 F.3d 993 (9th Cir. 2001) ................................................................................ 6

*LeClercq v. The Lockformer Co.*,
   2005 WL 1162979 (N.D. Ill. Apr. 28, 2005) ................................................... 8, 10

*Maricopa Country*,
   2010 WL 1381338 (D. Ariz. Apr. 6, 2010) ........................................................... 5

*Moussouris v. Microsoft, Corp.*,
   311 F. Supp. 3d 1223 (W.D. Wash. 2018) ............................................................ 8

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*,
   2017 WL 1174756 (S.D. Cal. Mar. 29, 2017) ....................................................... 5

*Ocampo v. United States*,
   2019 WL 3068216 (S.D. Cal. July 12, 2019) ........................................................ 2

*Smilovits v. First Solar, Inc.*,
   2019 WL 6875492 (D. Ariz. Dec. 17, 2019) ......................................................... 6

*Smith v. Pac. Bell Tel. Co., Inc.*,
   649 F. Supp. 2d 1073 (E.D. Cal. 2009) ................................................................. 8

*United States v. Adams*,
   444 F. Supp. 3d 1248 (D. Or. 2020) ..................................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .............................................................................................. 3

*Watts v. Allstate Indem. Co.*,
   2013 WL 210059 (E.D. Cal. Jan. 17, 2013) .......................................................... 3

**Rules**

Fed. R. Evid. 702 ................................................................................................2, 3

# INTRODUCTION

This Court should reject the arguments made by Plaintiffs in their Opposition and instead grant Defendants' motion to exclude the testimony of Stephanie Leutert ("Leutert"), Plaintiffs' proffered expert witness. Leutert lacks the requisite qualifications to reliably opine on the topics at issue, and none of Plaintiffs' arguments undermine these compelling reasons to exclude Leutert's purported expert opinion testimony.

<u>First</u>, contrary to Plaintiffs arguments, this Court may not abdicate its gatekeeping role in determining whether Leutert's testimony is admissible. Despite this case proceeding as a bench trial, the Court must still determine whether: (1) Leutert qualifies as an expert on the topics on which she opines; and (2) her testimony would be reliable under *Daubert* given the flawed methodology she employed.

<u>Second</u>, Plaintiffs cannot rely on Leutert's experience as an academic and lecturer on Central American and Mexican migration policy at the University of Texas at Austin to qualify her to provide the opinions set forth in her report. Contrary to Plaintiffs' generalizations, Leutert was not been asked to opine on the workings of metering/queue management (what they term a "turnback policy"). Instead, Plaintiffs proffer Leutert's opinions on *the justifications* for metering/queue management: namely, CBP's operational capacity at ports of entry along the southwest border. Ex. 1 at ¶¶ 20, 22. Yet Leutert does not have any educational background in public administration, organizational staffing, or law enforcement administration. Her professional background is devoid of any governmental experience, law enforcement experience, or experience with detention or other administrative capacity issues in any context, including managing a complex operational environment. Her lack of relevant expertise alone is grounds for disqualification and exclusion of her testimony.

<u>Third</u>, Leutert employed flawed methodology, thereby making her testimony unreliable. Leutert disregarded documents and data that reflect how various operations and multiple missions impact the ports' ability to process individuals without

documents sufficient for lawful entry. Her unreliable testimony should thus be excluded.

# ARGUMENT

## I. The Court May Not Abdicate Its Gatekeeping Responsibilities.

Plaintiffs do not dispute that they bear the burden to establish that Leutert's testimony is admissible. *A.B. v. Cty. of San Diego*, 2020 WL 4430971, at *1–2 (S.D. Cal. July 31, 2020) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 & n. 10 (1993)). Plaintiffs must meet that burden by showing that Leutert has "scientific, technical, or other specialized knowledge" that "will help the trier of fact understand the evidence or to determine a fact in issue. *A.B.*, 2020 WL 4430971, at *1–2 (citing Fed. R. Evid. 702). As argued in Defendants' opening brief and further below, Leutert does not possess the requisite knowledge of experience that would assist the Court in understanding the evidence or to determine a fact at issue, nor is her proffered testimony reliable. *See generally* Defs.' Mot. Both concerns independently warrant exclusion of Leutert's expert testimony. Despite these concerns, Plaintiffs argue that the Court should simply admit Leutert's testimony and determine what weight it should be given.[1] Pls.' Opp. at 3-5. But contrary to Plaintiffs' arguments, this Court may not abdicate its role as a gatekeeper to determine the admissibility of expert testimony. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 464 (9th Cir. 2014). Even in a bench trial, it must still determine whether the expert's proffered testimony is admissible. *FTC v. Qualcomm Inc.*, 2018 WL 6615050, at *2 (N.D. Cal. Dec. 17, 2018); *see also Ocampo v. United States*, 2019 WL 3068216, at *7-8 (S.D. Cal. July 12, 2019) (conducting a *Daubert* analysis to determine the admissibility of an expert opinion in a bench trial). Here, Defendants argue that Leutert's testimony fails to even meet the threshold for admissibility. *See*

---

[1] Plaintiffs did not rely on Leutert's merits expert report in their summary judgment briefing, *see* ECF No. 535-1, although they appear to reserve the right to rely on it at trial should the case proceed past summary judgment.

*generally* Defs.' Mot. As set forth in their Motion and below, Leutert's knowledge and opinions will not "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

Plaintiffs also suggest that the Court should admit Leutert's testimony merely because Defendants did not seek to exclude her prior report at the class certification stage. *See* Pls.' Opp. at 2, 12. It makes no sense to preclude Defendants from challenging the admissibility of Leutert's merits opinions simply because they chose not to expend valuable litigation resources challenging her opinions with respect to class certification. Class certification is an entirely different context, involving inquiry into the merits only insofar as necessary to evaluate whether the requirements for class certification are met. *See Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 623 (S.D. Cal. 2015) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351-52 (2011)). The distinction between class certification and summary judgment is evidenced by the fact that Leutert's opinions proffered during class certification differ from the opinions proffered at this stage. *Compare* ECF No. 390-9 at ¶ 23(a)-(h) *with* Ex. 1 at ¶ 22(a)-(c). Therefore, Defendants are not precluded from challenging the admissibility of Leutert's merits opinions at this stage. *See Watts v. Allstate Indem. Co.*, 2013 WL 210059, at *8 (E.D. Cal. Jan. 17, 2013) (reevaluating the admissibility of expert testimony at class certification when individual had proffered different opinions at summary judgment).

## II. Plaintiffs Admit that Leutert Does Not Have the Requisite Knowledge to Opine on Government Operations

Plaintiffs do not contest that Leutert lacks the educational and professional experience that could qualify her to opine on CBP's short-term detention operations and how managing such operations—which requires CBP to balance its limited resources to implement its multiple priority missions, while dealing with numerous other constraints, including but not limited to those related to labor and employment

issues and budgetary limitations—relates to processing individuals without documents sufficient for lawful entry to the United States at ports of entry along the entire southwest border. Defs. Mot. at 5-6. Instead, Plaintiffs argue that Leutert is qualified to opine on the "turnback policy"[2] based on experience that has nothing to do with detention, organizational operations, or government operations. Pls. Opp. at 6-7. In doing so, Plaintiffs mischaracterize Defendants' arguments and rewrite Leutert's own report.

Leutert claims to be "an expert on the practices of [CBP] officers and supervisors . . . with respect to asylum seekers who are in the process of arriving at ports of entry . . . on the U.S.-Mexico border." Ex. 1 at 2. Plaintiffs have failed to show how her testimony "remains within the reasonable confine of [her] subject area." *D.F. by and through Amador v. Sikorski Aircraft Corp.*, 2017 WL 4922814, at *14 (S.D. Cal. Oct. 30, 2017) (internal citations and quotations omitted). Contrary to Plaintiffs' suggestions, Leutert does not offer opinions about how metering or queue management is conducted in practice or the experiences of migrants in border towns. Instead, Leutert offers opinions about the legitimacy of Defendants' justifications for metering, which involve complex operational constraints. Ex. 1 at ¶¶ 20, 22. Ms. Leutert lacks *any* type of expertise in *any* academic or professional context to opine in such a manner on the operations of a port of entry.[3]

Nothing in Leutert's report, deposition testimony, or in Plaintiffs' opposition

---

[2] Leutert assumes that "metering" and "queue management" are part of an alleged "turn-back policy," Ex. 1 at 3, n.2, but, as Defendants noted earlier, Leutert offers no evidence or opinion to support the existence of an alleged "turn-back policy." Defs.' Mot. at 4, n. 1.

[3] Defendants are not arguing that *only* government employees can be qualified opine on topics such as detention capacity and the need to balance operational priorities in order to accomplish statutory missions. *See* Pls. Opp. at 8. But Leutert lacks any experience, training, or education that even touches on these topics.

"explain[s] how [her] experience leads to the conclusion reached, why that experience is sufficient basis for the opinion, and how that experience is reliably applied to the facts." *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices and Products Liability Litigation*, 978 F. Supp. 2d 1053, 1067 (C.D. Cal. 2013) (quoting Fed. R. Evid. 702 advisory committee's note (2000)); *see also Transwestern Pipeline Co., LLC v. 3.42 Acres, More of Less, of Permanent Easement Located in Maricopa Country*, 2010 WL 1381338, at *2 (D. Ariz. Apr. 6, 2010). Plaintiffs rely on Leutert's credentials as an academic who focuses on migration and migration policy. Pls.' Opp. at 6. But none of her listed experiences relate to how an entity goes about making the decision of when and how to intake aliens for processing based on their operational capacities, or how ports or similar entities operate. Defs.' Mot. at 5-9. As this Court has previously held, this failure to connect Leutert's qualifications to her opinions and expected testimony warrants exclusion. *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 2017 WL 1174756, at *3-4 (S.D. Cal. Mar. 29, 2017) (Bashant, J.).

Plaintiffs' reliance on deposition testimony to claim that Leutert has the requisite knowledge and experience to opine on CBP's operations is misplaced. First, they claim that Leutert has spoken to "too many CBP and DHS officers and officials to count on topics involving turnbacks and port operations," Pls.' Opp. at 8, but fail to acknowledge that she could not recall what discussions she had about CBP's operations with these individuals. *See* Defs.' Ex. 3 at 35:5-10. More importantly, she never discussed operational capacity with any individual at CBP or OFO. Ex. 2 at 37:21-38:1. Further, having talked to individuals as part of social science fieldwork does not render Leutert qualified to opine about the adequacy of operational capacity justifications. Second, the fact that Leutert has taught classes about "CBP's total staffing numbers" means only that she looked at overall staffing numbers broken down by field office, *not* at the operations of specific ports of entry. Defs.' Ex. 3 at 38:18-39:6. And again, this does not render her qualified to opine about operational

capacity justifications. Regardless of whether Leutert has reviewed documents or had conversations that touch on CBP operations, she lacks *any* professional or academic experience or qualifications to render opinions relating to those operations. Plaintiffs try to shift the question away from Leutert's qualifications by focusing on the fieldwork and document review she has done for her report. This is circular. Reviewing documents does not make someone an expert qualified to interpret or opine on whether those documents support operational capacity justifications.

Plaintiffs also claim that Leutert could not consider the Prison Rape Elimination Act (PREA) or the William Wilberforce Trafficking Victims Protect Reauthorization Act (TVPRA) because doing so would amount to proffering legal opinions. Pls.' Opp. at 9.[4] This is beside the point. Defendants are arguing that Leutert lacks the qualifications to opine on CBP's operational constraints, and the fact that she is not familiar with the requirements of these statutes is demonstrative of her lack of relevant knowledge. Both PREA and the TVPRA impose operational obligations on CBP. Defs.' Mot. at 7 (describing the operational effects of the relevant regulations and statute). Leutert would not be providing a legal opinion simply by understanding or discussing the implications of these statutes on CBP's ability to process individuals without sufficient documents for lawful entry. *Cf. Smilovits v. First Solar, Inc.*, 2019 WL 6875492, at *10-11 (D. Ariz. Dec. 17, 2019) (concluding that an expert may opine on the implications of warranty obligations and their effect on accounting calculations but may not opine on whether the party had a statutory or implied warranty obligations).

Ultimately, Plaintiffs cannot "cloak" Leutert "with the mantle of an expert," when she lacks the expertise to provide the proffered opinions. *Jinro America Inc. v. Secure Investments, Inc.* 266 F.3d 993, 1004 (9th Cir. 2001). Therefore, the Court

---

[4] Notably, Plaintiffs do not disagree that Leutert is unfamiliar with CBP's National Standards on Transport, Escort, Detention and Search (TEDS), which govern CBP's interactions with detained individuals. Defs. Mot. at 6-7.

should exclude her testimony.

### III. Leutert's Flawed Methodology Warrants Striking Her Testimony

Leutert's flawed methodology provides an independent basis for the Court to exclude Leutert's unreliable testimony. As is the case here, the Court may exclude proffered expert testimony if it determines "'there is simply too great an analytical gap between the data and opinion proffered.'" *Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1153–54 (E.D. Wash. 2009) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Leutert's methodology can be boiled down to three fundamental concerns, all of which undermine Leutert's reliability as a purported expert witness. Defs.' Mot. at 10-12. Plaintiffs' arguments are entirely misplaced.

First, Leutert affirmatively ignored relevant data without a scientifically-based explanation. Defs.' Mot. at 10-11. Plaintiffs argue that Leutert considered the same reports and documents that CBP considers when determining how many individuals are in custody at a specific POE. Pls.' Opp. at 10-11. But, by her own admission, she painted an incomplete picture. Instead of considering how the data reflecting CBP's other missions at ports of entry may impact CBP's decision on metering, she "did not believe that it would be methodologically sound to include them because [she] could not link them to metering in the type of way [she] would have needed to, to have appropriate analysis." Ex. 2. at 45:3-10. Reflecting her lack of qualifications to understand and opine on CBP's operations at various ports, she "used the only data" "that would allow [her] to get an operational picture of what was happening, was metered, which was physical capacity data."[5] *Id*. at 53:23-25.

---

[5] Indeed, Defendants have repeatedly stated that the number of individuals in custody is only one of the many factors influencing a port's capacity to process individuals without travel documents. *See e.g.*, ECF No. 563-20, Declaration of Mariza Marin; ECF No. 536-10, Deposition Transcript of Rodney Harris, 286:7-290:23; ECF No. 536-9, Deposition of Samuel Cleaves, 56:2-57:15.

Her "disregard of relevant data undermines the reliability of [Leutert]'s entire opinion in this matter." *LeClercq v. The Lockformer Co.*, 2005 WL 1162979, at *4 (N.D. Ill. Apr. 28, 2005). Exclusion on this ground alone would be appropriate. *Moussouris v. Microsoft, Corp.*, 311 F. Supp. 3d 1223, 1244 (W.D. Wash. 2018) (citing *Smith v. Pac. Bell. Tel. Co., Inc.*, 649 F. Supp. 2d 1073, 1096 (E.D. Cal. 2009)).[6]

Plaintiffs extend the argument by claiming that the failure to consider certain factors does not render the testimony inadmissible. Pls.' Opp. at 13-14. But their argument ignores that Leutert's opinions must be based on *sufficient* data. *Erhart v. Bofl Holding Inc.*, 445 F. Supp. 3d 831, 839 (S.D. Cal. 2020) (emphasis added) (citing Fed. R. Evid. 702). Leutert's opinions are unreliable because she "effectively cherry-pick[ed] data," which displays an "ends-driven approach in presenting the data." *Allen v. Am. Capital Ltd.*, 287 F. Supp. 3d 763, 786 (D. Ariz. 2017). By providing such a slanted analysis, Leutert's conclusions are "connected to the underlying data 'only by the *ipse dixit* of the expert,'" thereby making them inadmissible. *Henricksen*, 605 F. Supp. 2d at 1153-54 (quoting *Joiner*, 522 U.S. at 146)

Second, Plaintiffs and Leutert have not demonstrated that the employed methodology has been peer reviewed. Defs.' Mot. at 11. Because Leutert's research is

---

[6] Plaintiffs' Opposition and Leutert's testimony are confusing because they rest on the notion that each port's operational capacity must be able to be quantified. *See* Pls.' Opp. at 13 (noting that there are "no contemporaneous documents or data *quantifying*" the various factors that are considered when determining whether a port is operating at capacity). Defendants have repeatedly stated that operational capacity cannot be readily quantified. *See* ECF No. 535-12, Deposition Testimony of former Executive Assistant Commissioner Todd Owen, at 186:11-21; ECF No. 536-9, Deposition of Sam Cleaves, 66:15-16; ECF No. 536-8, Deposition of Mariza Marin, 101:8-14; ECF No. 536-10, Deposition of Rodney Harris, at 107:1-7. The likelihood of confusion may also be grounds for excluding Leutert's testimony. *See Brighton Collectables, Inc. v. RK Texas Leather Mfg.*, 923 F. Supp. 2d 1245, 1257 (S.D. Cal. 2013) (excluding expert opinion and testimony because it was likely to cause confusion) (citing *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010)).

admittedly not independent of this litigation, Pls.' Opp. 10-11, Plaintiffs have to come forward with "objective, verifiable evidence that the testimony is based on 'scientifically valid principles.'" *In re Hanford Nuclear Reservation Litig.*, 894 F. Supp. 1436, 1447 (E.D. Wash. 1995) (quoting *Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1317 (9th Cir. 1995) ("*Daubert II*")). "One way to demonstrate this is by proving that the research and analysis have been subjected to 'normal scientific scrutiny through peer review and publication.'" *Hanford Nuclear Reservation Litig.*, 894 F. Supp. at 1447 (quoting *Daubert II*, 43 F.3d at 1317). The lack of evidence that her methodology has been reviewed "for the purpose of detecting substantive flaws" renders her testimony inadmissible. *United States v. Adams*, 444 F. Supp. 3d 1248, 1265-66 (D. Or. 2020).

Third, the Court should be troubled by Leutert's failure to calculate the margin of error in her analysis despite "the availability of statistical analysis." *Allen*, 287 F. Supp. 3d at 782. Leutert failed to calculate a margin of error in her calculations despite testifying that it was a "pretty basic calculation." Defs.' Mot. at 11-12.

Plaintiffs attempt to circumvent points two and three by again mischaracterizing Leutert's opinions. They argue that Leutert's opinions are based on her experiences and therefore should are not required to be scrutinized under *Daubert*. Pls.' Opp. at 14. That is patently wrong in this context. In reaching her opinions, she reviewed data that was provided to her to determine whether operational capacity justified Defendants' practices of queue management. *Id.* at 10-11. She then offers opinions about the data regarding operational capacity. Ex. 1 at ¶¶ 20, 22. But, as noted above, conducting interviews and reviewing documents does not constitute percipient or relevant experience in administrative or operational capacity, and it does not render Leutert qualified to interpret documents relating thereto. If that were the only qualification, literally anyone could be an expert on operational capacity based on "experience." As Plaintiffs themselves acknowledge, Leutert has *zero* experience working for a governmental entity, or at any entity that is at all similar to a

port of entry in its need to balance various operational mission sets, including short-term detention; she also lacks academic experience in public administration or law enforcement administration. *Id*. at 6-7. Leutert is thus nowhere near analogous to the expert that this Court considered, and ultimately allowed to testify, in *Godinez v. Huerta*, 2018 WL 2018048, at *3 (S.D. Cal. May 1, 2018) (Bashant, J.). In that case, the Court allowed expert testimony on police training policies and standards proffered by a twenty-seven-year veteran of the Los Angeles County Sheriff's Department who had retired holding a California Peace Officer Standards and Training (POST) Advanced Certificate and had graduated from the POST Command College. *Id*. at *3. Leutert, by contrast, lacks the experience that would allow her to opine on CBP's operations at all, let alone without being subject to *Daubert*. Defs.' Mot. at 4-9; *supra* at 3-7.

## CONCLUSION

For the foregoing reasons and reasons set out in Defendants' opening memorandum of law, Defendants respectfully request that the Court exclude Leutert's proffered testimony.

Dated: October 19, 2020                    Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director

KATHERINE J. SHINNERS
Senior Litigation Counsel

ALEXANDER J. HALASKA
ARI NAZAROV
HAYDEN WINDROW
Trial Attorneys

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*s/ Dhruman Y. Sampat*
DHRUMAN Y. SAMPAT
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4281| Fax: (202) 305-7000
dhruman.y.sampat@usdoj.gov

*Counsel for Defendants*

# **CERTIFICATE OF SERVICE**

I certify that I served a copy of this document on the Court and all parties by filing this document with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all counsel of record.

DATED: October 19, 2020

Respectfully submitted,

*s/ Dhruman Y. Sampat*
DHRUMAN Y. SAMPAT
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section

*Counsel for Defendants*