# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, <br> *Plaintiffs,* <br><br> v. <br><br> Chad Wolf, *et al.*, <br> *Defendants.* | ) <br> ) <br> ) <br> ) <br> )     No. 3:17-cv-02366-BAS-KSC <br> ) <br> ) <br> ) <br> ) |

**DECLARATION OF RODNEY HARRIS**

I, Rodney Harris, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records, and reasonably relied upon in the course of my employment, hereby declare as follows relating to the above-captioned matter.

1. I am currently the Deputy Assistant Director of Field Operations, Border Security, Laredo Field Office (LFO), Office of Field Operations (OFO), U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS). I have been in this position since July 2018. Prior to serving in this role, I was a Supervisory Program Manager for Border Security at the Laredo Field Office. I began my career as a Customs Inspector in Laredo, TX, in 1999, and have served in various roles at both the Laredo Port of Entry and the Laredo Field Office.

2. I make this declaration to support the filing under seal of portions of my deposition in this case, taken on June 2, 2020, as well as portions of the deposition transcript of former Assistant Director of Field Operations Frank Longoria, which was taken on June 18, 2020.

1

3. Specifically, in my deposition, I discussed the substance of particular concerns raised by officers in the Laredo Field Office regarding the location of queue management points at certain ports of entry in the Laredo Field Office, and specific steps the Laredo Field Office took to mitigate these concerns. This discussion reveals specific operational vulnerabilities of ports of entry in the Laredo Field Office that would, if publicly disclosed, provide hostile actors with detailed information that could be used to harm CBP operations at those ports of entry.

4. More specifically, my testimony revealed that officers were concerned that certain areas at certain ports of entry were not covered by security cameras or otherwise lacked line of sight to port management. My testimony also revealed that officers were concerned that certain areas of certain ports had weak or non-existent cell or radio coverage. My testimony also reveals the reasons why certain operational factors, such as the organization of certain vehicle and pedestrian lanes, also led to concerns about officer safety.

5. These details reveal vulnerabilities about the ports of entry in the Laredo Field Office that can be used by hostile actors to harm operations and endanger the safety of CBP officers. For instance, my testimony reveals that certain areas of certain ports are not covered by surveillance cameras. This information thus reveals that any activity occurring in that area would not be detected through such cameras, and thus provides a hostile actor looking to harm CBP officers or members of the traveling public with detailed information as to where to take such an action without fear of detection. Similarly, my testimony reveals certain areas of the port in which cell and radio coverage may be insufficient to permit officers to communicate with port management in an emergency.

This information thus similarly provides detailed information as to where it may be possible to attack or otherwise harm officers or members of the traveling public without detection. Thus, taken together, this information provides detailed information about vulnerabilities at the ports of entry that provide a clear road map for those looking to endanger CBP employees or members of the public.

6. Hostile actors could use these vulnerabilities to cause general harm to CBP operations at ports of entry in the Laredo Field Office. Specifically, armed with information that a particular port of entry lacks camera coverage in a certain area, a smuggling organization could specifically target that area of the port of entry for purposes of sending drugs or other contraband into the port, knowing that the risk of detection is low. These areas would also be highly vulnerable to potential human smuggling attempts, both covert and overt, and can serve as staging areas to persons or groups that may intend to run or force their way through a port of entry and into the United States.

7. I also testified to steps that individuals in the Laredo Field Office, including myself, took to try to mitigate these safety concerns. My testimony thus reveals how the Field Office took steps to address certain concerns and whether we were able to fully or partially mitigate those concerns. These mitigation actions therefore reveal whether certain safety concerns were more or less concerning, which concerns have been fully or partially mitigated, and which concerns may still exist today. This too, reveals operational vulnerabilities that can be exploited as described above.

8. Similarly, Mr. Longoria testified to the reasons why port management decided that it was necessary to install a turnstile at the Brownsville port of entry. This testimony reveals the specific operational concern to which port management was responding, and the reasons

3

why such a turnstile was necessary to respond to that concern. This testimony, too, reveals operational vulnerabilities and whether those vulnerabilities may have been fully or partially mitigated. It also reveals the specific factors that port management considered when determining how best to address these operational concerns, which reveals the relative priorities of these operational concerns to port management.

9. This testimony can also be exploited to harm port operations. Specifically, the testimony reveals that, in response to specific operational concern A, Brownsville management took step B. In discussing this, however, it also reveals that Brownsville management also did not take steps C, D, or E, all of which may still be available to hostile actors seeking to harm operations or CBP personnel. Thus, in revealing the steps that the port took, the testimony provides hostile actors with sufficient information to realign their resources in order to take *other* actions not previously mitigated.

10. I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 19 day of October, 2020.

_____
Rodney H. Harris
Deputy Assistant Director of Field Operations- Border Security
Laredo Field Operations
Office of Field Operations
U.S. Customs and Border Protection

4