1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| AL OTRO LADO, *et al.*, | Case No. 17-cv-02366-BAS-KSC |
| Plaintiffs, | **ORDER:** |
| v. | **(1) GRANTING PLAINTIFFS' MOTION FOR CLARIFICATION OF THE PRELIMINARY INJUNCTION (ECF No. 494);** |
| CHAD F. WOLF, Acting Secretary of Homeland Security, *et al.*, | |
| Defendants. | **(2) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO SEAL (ECF No. 495);** |
| | **AND** |
| | **(3) DENYING AS MOOT PLAINTIFFS' EX PARTE MOTION FOR ORAL ARGUMENT (ECF No. 509)** |

21

Before the Court is Plaintiffs' Motion for Clarification of this Court's November 19,

22

2019 Preliminary Injunction ("Motion"). (ECF No. 494.) Defendants oppose, and

23

Plaintiffs reply. (ECF Nos. 508, 516.) After considering the parties' arguments, the Court

24

**GRANTS** Plaintiffs' Motion and **CLARIFIES** the parameters of the Preliminary

25

Injunction below. The Court further **GRANTS IN PART** and **DENIES IN PART**

26

Plaintiffs' Motion to Seal filed in connection with the Motion (ECF No. 495) and **DENIES**

27

**AS MOOT** Plaintiffs' Ex Parte Motion for Oral Argument on the Motion (ECF No. 509).

28

# I.   BACKGROUND

## A.   Procedural History

Plaintiffs' underlying claims in this case concern Defendants' purported "Turnback Policy," which included a "metering" or "waitlist" system in which asylum seekers were instructed "to wait on the bridge, in the pre-inspection area, or at a shelter"—or were simply told that "they [could not] be processed because the ports of entry is 'full' or 'at capacity[.]'"  (Second Am. Compl. ¶ 3, ECF No. 189.)  Plaintiffs allege that this policy is intended to deter individuals from seeking asylum in the United States and violates constitutional, statutory, and international law.  (*Id.* ¶¶ 3, 5, 72–83.)

While this lawsuit was pending, Defendants promulgated a regulation on July 16, 2019 entitled "Asylum Eligibility and Procedural Modifications"—also known as the "Asylum Ban" or the "Asylum Transit Rule."  84 Fed. Reg. 33,829 (July 16, 2019), *codified at* 8 C.F.R. § 208.13(c)(4).  Among other things, the rule renders asylum seekers who enter, attempt to enter, or arrive at the United States-Mexico border after July 16, 2019 ineligible for asylum if they transit through at least one country other than their country of origin and fail to apply for humanitarian protection in that country.

Plaintiffs filed Motions for a Preliminary Injunction and Provisional Class Certification to partially enjoin the application of the Asylum Ban to asylum seekers from countries other than Mexico who were metered before its effective date.  (ECF Nos. 293, 294.)  They argued the Asylum Ban would, if applied to these asylum seekers who were metered at the border before July 16, 2019, permanently bar these individuals from accessing any asylum process altogether, since they their 30-day window to apply for asylum in Mexico—a country they transited through—had already expired.

On November 19, 2019, the Court granted Plaintiffs' Motions.  (Prelim. Inj., ECF No. 330.)  Specifically, the Court ordered the following:

> The Court provisionally certifies a class consisting of "all non-Mexican asylum seekers who were unable to make a direct asylum claim at a U.S. POE before July 16, 2019 because of the U.S. Government's metering policy, and who continue to seek access to the U.S. asylum process."

…

> Defendants are hereby **ENJOINED** from applying the Asylum Ban to members of the aforementioned provisionally certified class and **ORDERED** to return to the pre-Asylum Ban practices for processing the asylum applications of members of the certified class.

(Prelim. Inj. at 36.)

Defendants appealed and concurrently filed an emergency motion to stay the Preliminary Injunction pending the appeal's resolution. (ECF Nos. 335, 354.) The Ninth Circuit issued an administrative stay of the order on December 20, 2019 pending resolution of the motion to stay on the merits. (ECF No. 369.) After oral argument, the court lifted the stay on March 5, 2020. (ECF No. 418.) Oral argument on the underlying appeal was held on July 10, 2020 and a determination remains pending. (*See Al Otro Lado et al. v. Chad Wolf, et al.*, No. 19-56417 (9th Cir. Dec. 5, 2019), Dkt. Nos. 97, 105.)

**B.    Effect of Preliminary Injunction on Immigration Proceedings**

In the aftermath of the Preliminary Injunction, Defendants have made piecemeal efforts at various stages of immigration proceedings to identify class members. Below, the Court summarizes the steps Defendants allege they have taken after the Order issued on November 19, 2019, after the Ninth Circuit granted an administrative stay of the Order on December 20, 2019, and after the stay was lifted on March 5, 2020.

**1.    United States Citizenship and Immigration Services ("USCIS")**

Five days after the Preliminary Injunction issued, USCIS directed asylum officers to ask screening questions during credible fear interviews to determine if individuals were more likely than not members of the class; if so, they were instructed to apply the more generous pre-Asylum Ban standard to class members' asylum claims. (Opp'n to Mot. ("Opp'n") at 5, 16, ECF No. 508; Updated Guidance on Credible Fear Processing Pursuant to Al Otro Lado Litigation ("USCIS Updated Guidance") at 7–9, Ex. 1 to Decl. of Alexander J. Halaska ("Halaska Decl."), ECF No. 508-2.) USCIS also paused credible fear decisions for those who had been interviewed between November 20, 2019 and November 26, 2019 and conducted follow-up interviews to determine class member status

1  for those previously believed to be subject to the Asylum Ban.  (Opp'n at 5, 16; Decl. of

2  Ashley B. Caudill-Mirillo ("Caudill-Mirillo Decl.") ¶ 4, Ex. 2 to Halaska Decl., ECF No.

3  508-3.)

4       On December 29, 2020, nine days after the Ninth Circuit imposed the stay, USCIS

5  directed asylum officers to stop asking class member screening questions in credible fear

6  interviews, "but to note in the record if the interviewee affirmatively asserted that they

7  were metered or were an Al Otro Lado class member."  (USCIS Updated Guidance at 4–

8  5; Decl. of Ori Lev ("Lev Decl.") ¶ 9a, ECF No. 494-2.)  However, the screening practice

9  was reinstituted once the administrative stay was lifted on March 5, 2020.  (USCIS Updated

10  Guidance at 2–4.)

11       2.   Immigration and Customs Enforcement ("ICE")

12       On December 8, 2019, ICE suspended the removal of all individuals in custody who

13  had received negative credible fear determinations between July 16, 2019 (the date the

14  Asylum Ban took effect) and November 19, 2019 (the date the Preliminary Injunction

15  issued) and who had no case pending before Executive Office of Immigration Review.

16  (Opp'n at 17; Email from Joseph P. Laws, Ex. 5 to Halaska Decl., ECF No. 508-6.)  They

17  were referred to USCIS to be screened for class membership at this time.  (*Id.*)

18       It appears ICE stopped referring these individuals to USCIS once the administrative

19  stay took effect on December 20, 2019, but returned to this practice on March 16, 2020,

20  after the stay was lifted.  (Opp'n at 6; USCIS Updated Guidance at 2; Email from Peter B.

21  Berg, Ex. 6 to Halaska Decl., ECF No. 508-7.)  ICE then began referring to USCIS for

22  class membership screening the cases of potential class members who were still in ICE

23  custody or who had been released or paroled from ICE custody.  (Lev Decl. ¶ 10d.)  This

24  was later limited to only class members in ICE custody and excluded those released or

25  paroled because, Defendants contend, asylum seekers not in custody "likely are still in

26  removal proceedings and remain eligible for relief under the preliminary injunction through

27  the administrative review process."  (*Id.* ¶¶ 10d, 11.)  ICE's screening procedures were

28

followed only once after the dissolution of the stay, and ICE has confirmed that it will not continue to screen for class members.  (*Id.*)

### 3.   Customs and Border Protection ("CBP")

Also following the issuance of the Court's Order, CBP issued guidance instructing CBP officers and Border Patrol agents to annotate the Form I-213 with "Potential AOL Class Member" if they encountered an individual who affirmatively stated that they were metered, provided information from which an agent could infer they have been subject to metering, or affirmatively claimed to be a class member.  (Lev Decl. ¶ 8a–b; Decl. of Jay Visconti ("Visconti Decl.") ¶ 5, Ex. 7 to Halaska Decl., ECF No. 508-8.)  The instruction was issued to all Border Patrol agents and other CBP officers and was applicable to all ports of entry along the U.S.-Mexico border.  (Lev. Decl. ¶ 8a–b.)  This guidance was never rescinded, but as of June 12, 2020, CBP represented that it "was not relying on this information or taking any other steps to identify potential class members."  (*Id.* ¶ 11.)

### 4.   Executive Office for Immigration Review ("EOIR")

Lastly, as to EOIR, Defendants state that the office "has voluntarily agreed to act consistently with the preliminary injunction" and has issued guidance to this effect at the time it was issued, shortly after the imposition of the administrative stay, and shortly after the stay was lifted.  (Decl. of Jill W. Anderson ("Anderson Decl.") ¶¶ 4–6, Ex. 3 to Halaska Decl., ECF No. 508-4.)  Supplemental guidance was also disseminated through the immigration court systems in the months following.  (*Id.* ¶¶ 7–9.)

Defendants represented to Plaintiffs, as late as April 20, 2020, that EOIR's position was that immigration judges and members of the Board of Immigration Appeals "are not to apply the third-country transit rule to provisional class members."  (Lev Decl. ¶ 4.)  However, in June 2020, Defendants made clear that they did not consider EOIR bound by the Preliminary Injunction and that they did not consider any non-final application of the Asylum Ban to class members a violation of the Preliminary Injunction "while administrative proceedings remain ongoing."  (*Id.* ¶ 7b.)

Plaintiffs identify several cases in which they claim class members with final orders denying asylum raised their entitlement to the Preliminary Injunction's protection and were improperly rejected by immigration judges. (Mem. of P. & A. at 2, 6–7, ECF No. 494-1.) In two instances, after the stay was lifted, immigration judges denied motions to reopen because they considered the state of law "unsettled" due to the pending appeal on the merits, meaning there was no "material change in the law" warranting reconsideration of their orders of removal. (*See In re E.T.M.*, Ex. 1 to Lev Decl., ECF No. 494-3; *In re A.N.A.*, Ex. 2 to Lev Decl., ECF No. 494-4.) These cases were ultimately reopened *sua sponte* upon "further consideration." (*Id.*) In another case, DHS affirmatively opposed a class member's motion to reopen on the basis that the copy of the waitlist provided to prove class membership was not sufficiently reliable. (*In re M.T.A.*, Ex. 3 to Lev Decl., ECF No. 494-5.) While initially the immigration judge found in favor of the Government and denied the motion to reopen, the judge later granted the applicant's motion to reconsider and granted asylum pursuant to *East Bay Sanctuary Covenant v. Barr*, 964 F.3d 382 (9th Cir. 2020). (*Id.*; Order of the Immigration Judge, Ex. 23 to Halaska Decl., ECF No. 508-24.)

Defendants also cite a case where, while the preliminary injunction was stayed, an applicant was denied asylum pursuant to the Asylum Ban but granted withholding of removal. (*In re F.S.S.*, Ex. 15 to Halaska Decl., ECF No. 508-16.) The applicant moved to reconsider the asylum denial before the immigration judge the day after the Ninth Circuit lifted its administrative stay and appealed the asylum denial to the Board of Immigration Appeals one week later. (Order of the Immigration Judge on Mot. to Reconsider at 1, Ex. 16 to Halaska Decl., ECF No. 508-17; Notice of Appeal, Ex. 17 to Halaska Decl., ECF No. 508-18.) The immigration judge later denied the motion to reconsider, which the applicant also appealed. (Order of the Immigration Judge at 3; Ex. 18 to Halaska Decl., ECF No. 508-19.) Both this appeal and the direct appeal remain pending before the BIA. (Opp'n at 10.)

1

## C.   Parties' Arguments on Motion for Clarification[1]

On July 17, 2020, Plaintiffs filed the instant Motion seeking an order clarifying that the Government must: (1) take "immediate affirmative steps to reopen or reconsider" past asylum denials for potential class members, "regardless of what stage of removal proceedings such potential class members are in"; and (2) "make all reasonable efforts to identify class members and inform identified class members of their potential class membership" and "the existence and import of the preliminary injunction."  (Mem. of P. & A. at 17–18.)  The first of these requests additionally requires that the Court clarify that EOIR is bound by the Preliminary Injunction.  (*Id.*)

Defendants oppose, arguing that the terms of the Preliminary Injunction do not require them to reopen or reconsider any asylum denials issued pursuant to the Asylum Ban that became administratively final before the Preliminary Injunction was issued or while it was stayed.  (Opp'n at 1.)  First, they contend that the Preliminary Injunction is prospective only, meaning that it requires Defendants to return to pre-Asylum Ban practices from the date of the order (November 19, 2019) forward.  (*Id.* at 13–15.)  Second, they contend that because the administrative stay divested the Preliminary Injunction of enforceability between December 20, 2019 and March 5, 2020, they are also not required to affirmatively reopen and readjudicate asylum denials that became final for class members during this period.  (*Id.* at 13.)  Regarding EOIR, Defendants claim that while the agency is complying with the Preliminary Injunction, it is not bound by the order because it is not in active concert or participation with DHS in removal proceedings.  (*Id.* at 19–20.)  Lastly, Defendants argues it should not be required to develop a comprehensive list of class members because it is already making reasonable efforts to identify them and the only lists available are over- or under-inclusive of class membership.  (*Id.* at 23–25.)

---

[1] Plaintiffs moved *ex parte* for oral argument on the Motion.  (ECF No. 509.)  A hearing on a related dispute in this case included argument directly relevant to the instant Motion.  (*See* ECF No. 595.)  The Court did not find further argument necessary to decide the Motion and therefore denies as moot Plaintiff's *ex parte* request.

## II.   LEGAL STANDARD

"It is undoubtedly proper for a district court to issue an order clarifying the scope of an injunction in order to facilitate compliance with the order and to prevent 'unwitting contempt.'"  *Paramount Pictures Corp. v. Carol Publ'g Grp.*, 25 F. Supp. 2d 372, 374 (S.D.N.Y. 1998) (citing *Regal Knitwear Co. v. Nat'l Labor Relations Bd.*, 324 U.S. 9, 15 (1945)); *Sunburst Prod., Inc. v. Derrick Law Co.*, 922 F.2d 845 (9th Cir. 1991) ("The modification or clarification of an injunction lies within the 'sound discretion of the district court[.]") (citing same).  Rule 65 requires that injunctions be specific "so that those who must obey them will know what the court intends to require and what it intends to forbid." *Int'l Longshoremen Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1968).  "By clarifying the scope of a previously issued preliminary injunction, a court 'add[s] certainty to an implicated party's effort to comply with the order and provide[s] fair warning as to what future conduct may be found contemptuous.'" *Robinson v. Delicious Vinyl Records Inc.*, No. CV 13-411-CAS (PLAx), 2013 WL 12119735, at *1 (C.D. Cal. Sept. 24, 2013) (quoting *N.A. Sales Co. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984)).

## III.   DISCUSSION

### A.   Scope of the Preliminary Injunction

First, the Court addresses whether its Preliminary Injunction applies to orders denying class members' asylum claims based on the Asylum Ban that became final before the Preliminary Injunction issued on November 19, 2019 and during the Ninth Circuit's administrative stay of the order from December 20, 2019 to March 5, 2020.

#### 1.   Asylum denials that became final before November 19, 2019

Plaintiffs argue that the Preliminary Injunction's effect is not conditioned on a class member's current stage of removal proceedings.  (Mem. of P. & A. at 12.)  Therefore, they argue, Defendants should be required to reopen or reconsider the eligibility of all class members previously denied asylum due to the Asylum Ban, even those with final orders of removal that predate the Court's order or that were issued during the administrative stay.

1    (Mem. of P. & A. at 12.)  The thrust of Defendants' position is that because asylum seekers
2    with final orders of removal have had the Asylum Ban "applied" to them in the past, the
3    Government cannot continue to apply the Asylum Ban to them in the future, which it
4    understands to be the Preliminary Injunction's only prohibition.  (Opp'n at 13 ("The order
5    covers 'all' class members, but the government cannot refrain 'from applying' a rule to a
6    class member who is not before it.").)  Defendants thus contend that they are only required
7    to refrain from applying the Asylum Ban, going forward, at four stages of the immigration
8    process: (1) the credible-fear screening; (2) reviews of credible fear determinations; (3) full
9    removal proceedings before immigration judges; and (4) on appeal to the BIA.  (*Id.* at 12.)

10        Defendants focus their arguments on the purported "retroactivity" of the Court's
11   Preliminary Injunction, relying on case law regarding the retroactive effect of the Supreme
12   Court's application of a rule of federal law.  (Opp'n at 15, 19 (citing *Harper v. Va. Dep't
13   of Taxation*, 509 U.S. 86 (1993), and *Teague v. Lane*, 489 U.S. 288 (1989)).)  The Court
14   finds this framing inapposite in the context of equitable relief.  Defendants do not cite—
15   and the Court does not find—"any authority establishing any bright line rule or precedent
16   limiting the Court's broad equitable discretion to decide whether to extend an injunction"
17   to actions approved or pending before the relief issued.  *People of State of California ex
18   rel. Lockyer v. U.S. Dep't of Agric.*, No. C05-03508 EDL, 2006 WL 2827903, at *2 (N.D.
19   Cal. Oct. 3, 2006) (rejecting defendants' claim of "retroactive" application of an injunction
20   on logging practices to previously approved project and finding instead that the court must
21   "examine the specific facts of each case to determine the proper scope of injunctive relief").

22        "'District courts have broad latitude in fashioning equitable relief when necessary to
23   remedy an established wrong.'"  *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1024
24   (9th Cir. 2016) (quoting *Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010)).
25   The Supreme Court has made clear that "the scope of injunctive relief is dictated by the
26   extent of the violation established."  *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979);
27   *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15 (1971) ("As with any equity
28   case, the nature of the violation determines the scope of the remedy.").

17cv2366

"A preliminary injunction . . . is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Sierra On-Line, Inc. v. Phx. Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). Therefore, "[t]he 'purpose of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits.'" *Id.* (quoting *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009)). "The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy." *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted).

The pending controversy in this proceeding for injunctive relief concerns the applicability of the Asylum Ban's eligibility bar to members of the provisionally certified class. Therefore, the last uncontested status of class members in this case exists at the point before the Asylum Ban went into effect on July 16, 2019, when DHS was still processing asylum seekers according to its previous and longstanding asylum eligibility requirements. *See, e.g.*, *Regents of the Univ. of Calif. v. U.S. Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011, 1046, 1048 n.20 (N.D. Cal. 2018), *aff'd*, 908 F.3d 476 (9th Cir. 2018) (enjoining DHS from rescinding the Deferred Action for Childhood Arrivals ("DACA") program and ordering it "to maintain the DACA program on a nationwide basis on the same terms and conditions as were in effect before the rescission," because that was "the status quo before which was that DACA was fully implemented"), *rev'd in part, vacated in part*, ___ U.S. ___, 140 S.Ct. 1891 (2020); *S.A. v. Trump*, No. 18-CV-03539-LB, 2019 WL 990680, at *13 (N.D. Cal. Mar. 1, 2019) (finding, where plaintiffs sought a preliminary injunction requiring DHS to continue to process conditionally approved beneficiaries under the recently rescinded Central American Minors program, that the status quo ad litem was the point before DHS stopped processing those applications).

This is consistent with the equitable purpose of the Preliminary Injunction. The violation requiring a remedy is Defendants' decision to apply the Asylum Ban to divest all class members of access to the asylum process because they were unable, due to

Defendants' metering practices, to cross the border before the rule's effective date. Accordingly, the Court's order was structured to restore class members to the status quo by preventing the application of the Asylum Ban to class members who, but for metering, would have had the opportunity to enter the United States before the regulation imposed additional asylum eligibility requirements.  (*See* Prelim. Inj. at 34 (finding that but for the metering policy, asylum seekers "would have entered the United States and started the asylum process without delay . . . under the law in place at the time of their metering, which did not include the requirement that they first exhaust asylum procedures in Mexico").)[2]

For this reason, Defendants were instructed to "return to the pre-Asylum Ban practices for processing the asylum applications *of members of the certified class*." (Prelim. Inj. at 36 (emphasis added).)  Class members were not limited to only those non-Mexican asylum seekers with non-final removal orders.  Rather, class membership was contingent on whether an asylum seeker had been metered and thereby prevented from making a direct asylum claim at a port of entry before July 16, 2019.  If the Court were to narrow this application of injunctive relief only to those without final removal orders, it would vitiate the equitable nature of its remedy.  The scope of the remedy, therefore, must provide redress to all those metered in order to restore equity.

To the extent Defendants contend that requiring them to take affirmative action to comply with the Court's order impermissibly changes the nature of the injunctive relief from prohibitive to mandatory—which is subject to a higher standard—the Court similarly finds this position untenable.  Preliminary injunctions "that prohibit enforcement of a new law or policy . . . [are] prohibitory," not mandatory.  *Ariz. Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014).   Here, the Preliminary Injunction prohibited

---

[2] The Court adopted its analysis from its earlier order denying Defendants' motion to dismiss establishing that those who had been metered had "arrived" or "attempted to enter" POEs before the effective date of the Asylum Ban and thus were not subject to the plain language of the regulation.  (Order Re: Mot. to Dismiss at 35–40, ECF No. 280.)  In its order denying Defendants' motion to stay, the Ninth Circuit noted that this Court's interpretation of the regulation had  "considerable force" and was "likely correct," although it did not decide the issue.  (Order Denying Mot. to Stay at 31, *Al Otro Lado, et al. v. Chad F. Wolf, et al.* (9th Cir.), No. 19-56417, Dkt. No. 84.)

application of the Asylum Ban to class members in order to preserve the status quo ante litem, or the class members' last uncontested status.  Actions required to reinstate the status quo ante litem do not convert prohibitive orders into mandatory relief.  *See, e.g.*, *S.A.*, 2019 WL 990680, at *14 (requiring DHS to process the applications of conditionally-approved beneficiaries of the CAM program "in good faith" by prohibiting DHS from "adopt[ing] any policy, procedure, or practice of not processing the beneficiaries or placing their processing on hold en masse"); *Regents*, 279 F. Supp. 3d at 1025–26, 1048 n.20 (where plaintiffs did not file their complaint for three months after DHS terminated the DACA program, court nonetheless held that its injunction vacating DHS's rescission of DACA and ordering DHS to continue processing DACA renewal applications was prohibitory, not mandatory, as it simply preserved the status quo ante litem); *Angotti v. Rexam, Inc.*, No. C 05-5264 CW, 2006 WL 1646135, at *6–*7 (N.D. Cal. June 14, 2006) (citing *GoTo.com*, 202 F.3d at 1210) (rejecting defendant's argument that requiring it to resume payment and administration of benefits requires the court's injunction to be treated as mandatory because the proposed injunctive relief "would simply preserve the last uncontested status preceding the current litigation").[3]

The Preliminary Injunction provides equitable relief  to restore class members to the appropriate status quo ante litem in this case—the period before July 16, 2019 when asylum eligibility requirements preceding the Asylum Ban were still in effect.  It therefore applies

---

[3] The Ninth Circuit has also made clear the following:

> [A]fter a defendant has been notified of the pendency of a suit seeking an injunction against him, even though a temporary injunction be not granted, he acts at his peril and subject to the power of the court to restore the status, wholly irrespective of the merits as they may be ultimately decided . . . .

*Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172, 1187 (9th Cir. 2000) (quoting *Nat'l Forest Preservation Group v. Butz*, 485 F.2d 408 (9th Cir.1973)).  Defendants were aware of Plaintiffs' motions for injunctive relief and provisional class certification regarding the Asylum Ban, at the latest, by the date of filing on September 26, 2019.  Thus, Defendants acted at their peril if they decided to proceed with intended removals of class members after receiving notice of these motions.  *See Angotti*, 2006 WL 1646135, at *6–*7.

to all class members, including those with asylum denial orders that became final before the Preliminary Injunction issued on November 19, 2019.

    2.    Asylum denials that became final during the administrative stay

An administrative stay "is only intended to preserve the status quo until the substantive motion for a stay pending appeal can be considered on the merits, and does not constitute in any way a decision as to the merits of the motion for stay pending appeal." *Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019).  Defendants argue that because the Ninth Circuit's administrative stay suspended the Court's "alteration of the status quo" and "temporarily divest[ed] [the] order of enforceability," the Preliminary Injunction does not apply to removal orders based on the Asylum Ban that became final during the stay. (Opp'n at 13–14 (quoting *Nken v. Holder*, 556 U.S. 418, 428–29 (2009).)  Further, Defendants contend that even once this order was lifted, it did not require reopening or reconsidering past determinations regarding asylum eligibility.  (*Id.* at 14.)

First, the Court notes that *Nken* concerns a traditional motion to stay pending appeal. 556 U.S. at 422.  However, the Ninth Circuit has expressly stated that it is improper to consider the *Nken* factors when considering an administrative stay.  *Nat'l Urban League v. Ross*, ___ F.3d ___, No. 20-16868, 2020 WL 5815054, at *3 (9th Cir. Sept. 30, 2020) (citing *Doe #1*, 944 F.3d at 1223) (holding that applying the factors for a motion for stay pending appeal to an administrative stay "erroneously collapses the distinct legal analyses" for the two motions and that the "touchstone" for administrative stays is "the need to preserve the status quo").

In this case, the Ninth Circuit stated that its stay was intended to "preserve the status quo" by allowing the Government to continue applying the Asylum Ban to proposed class members until the motion to stay was decided on the merits.  (Order at 3, *Al Otro Lado, et al. v. Chad Wolf, et al.* (9th Cir.), No. 19-56417, Dkt. No. 24.)  Thus, between December 20, 2019 and March 5, 2020, Defendants were permitted to lawfully continue applying the Asylum Ban to class members.  However, once the motion to stay was denied on its merits, the Preliminary Injunction took full effect.

- 13 -

Defendants' position that they are not required to reopen or reconsider removal orders for class members that became final during the stay assumes, again, that the Preliminary Injunction can only be enforced against those cases that are not final. However, as stated above, the terms of the Preliminary Injunction are not so limited.  In fact, in order to remedy the harm identified by the Court, its Order must restore to the status quo ante litem all those metered who did not receive a determination on the merits of their asylum claim due to the application of the Asylum Ban to their case.  *See GoTo.com*, 202 F.3d at 1210; *see also Califano*, 442 U.S. at 702.

While the administrative stay allowed Defendants to stay the course regarding the application of the Asylum Ban at the time of the stay, it does not deprive the Preliminary Injunction of its full effect once the stay was lifted.  Defendants are correct that their application of the Asylum Ban during the stay was lawful and not in contempt of the Order.  Now that the Preliminary Injunction is fully in effect, however, refusing to reopen or reconsider orders of removal based on the Asylum Ban that became final during the stay is antithetical to the aforementioned purpose and intent of the order.

## B. Effect of Preliminary Injunction on EOIR Proceedings

Defendants' argument regarding EOIR is twofold.  First, they contend that there is no need for clarification because EOIR is complying with the Preliminary Injunction.  (Opp'n at 18–19.)  Second, they claim that EOIR, as a non-party, is not bound by the terms of the Preliminary Injunction.  (*Id.* at 20–22.)

EOIR's voluntary compliance with this Court's Order does not obviate the need for clarification of that Order's terms.  Indeed, the Supreme Court has indicated that enforcement orders are important preemptive measures against potential contempt.  *See Regal*, 324 U.S. at 15 (encouraging clarification "in the light of a concrete situation that left parties or 'successors and assigns' in the dark as to their duty toward the court . . . *to avoid unwitting contempts* as well as to punish deliberate ones") (emphasis added); *see also Matter of Hendrix*, 986 F.2d 195, 200 (7th Cir. 1993) (holding that requests to clarify whether injunction "applies to conduct in which the person proposes to engage," even if it

- 14 -

17cv2366

"looks like a request for an 'advisory opinion,' . . . is one that even a federal court can grant, in order to prevent unwitting contempts"); Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2956 (3d ed.) ("It should be noted that an interested individual who is confused as to the applicability of an injunction to him or whether the scope of an order applies to certain conduct may request the granting court to construe or modify the decree.").  In any event, the aforementioned immigration cases where the Asylum Ban has served as the basis for denying class members' asylum claims, even if ultimately resolved in their favor, evince some degree of uncertainty about the scope of the order, which necessitates clarification.  Indeed, the instant dispute itself reveals that certain ambiguities exist necessitating clarification of the Preliminary Injunction.  As such, the Court turns to whether EOIR is bound by the Preliminary Injunction.

### 1.    Whether EOIR is Bound Under Rule 65(d)(2)

Rule 65(d)(2) provides that an injunction or restraining order "binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described" in paragraphs (A) or (B). The Supreme Court has summarized the scope of the rule as follows:

> This [rule] is derived from the common law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in "privity" with them, represented by them or subject to their control. In essence it is that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.

*Regal*, 324 U.S. at 14.  Thus, "[a]n injunction binds a non-party only if it has actual notice and either 'abets the enjoined party' in violating the injunction or is 'legally identified' with the enjoined party."  *CFPB v. Howard Law, P.C.*, 671 F. App'x 954, 955 (9th Cir. 2016) (citing *United States v. Baker*, 641 F.2d 1311, 1313 (9th Cir. 1981), and *NLRB v. Sequoia Dist. Council of Carpenters, AFL-CIO*, 568 F.2d 628, 633 (9th Cir. 1977)); *see also Saga Int'l, Inc. v. John D. Brush & Co.*, 984 F. Supp. 1283, 1286 (C.D. Cal. 1997)

- 15 -

("An injunction applies only to a party, those who aid and abet a party, and those in privity with a party.").

Subsection C's "active concert or participation" criterion "is directed to the actuality of concert or participation, without regard to the motives that prompt the concert or participation." *New York State Nat'l Org. for Women v. Terry*, 961 F.2d 390, 397 (2nd Cir. 1992), *vacated on other grounds*, 506 U.S. 901 (1993); *see also Estate of Kyle Thomas Brennan v. Church of Scientology Flag Serv. Org., Inc.*, No. 809-CV-264-T-23EAJ, 2010 WL 4007591, at *2 (M.D. Fla. Oct. 12, 2010) (holding that "'in active concert or participation' . . . in no respect implies any conspiratorial, devious, or insidious intent or design" but instead "means a purposeful acting of two or more persons together or toward the same end, a purposeful acting of one in accord with the ends of the other, or the purposeful act or omission of one in a manner or by a means that furthers or advances the other.").  In considering whether a non-party engaged in "active concert and participation" for purposes of Rule 65(d), the Court must conduct "[a] fact-sensitive inquiry . . . to determine whether persons not named in an injunction can be bound by its terms because they are acting in concert with an enjoined party." *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 419 (E.D.N.Y. 2007) (citing 11A Wright & Miller at § 2956).

Here, the Department of Homeland Security and its component parts—including CBP and OFO—have been enjoined from enforcing the Asylum Ban regulation against members of the class.  The Court finds, based on the role and function of EOIR in enforcing immigration regulations, that it generally works "in active concert and participation" with Defendants such that it is bound by the Preliminary Injunction.

Although housed under the U.S. Department of Justice, EOIR is responsible for the adjudication, interpretation, and administration of immigration laws.  *See* <u>About the Office</u>, United States Department of Justice, https://www.justice.gov/eoir/about-office (last updated Aug. 14, 2018).  To this end, EOIR contains the immigration court system within the Office of the Chief Immigration Judge (OCIJ) and the Board of Immigration Appeals (BIA).  8 C.F.R. § 1003.0(a).  Immigration judges are inextricably linked to the credible

fear process for asylum claims, as they are responsible for adjudicating asylum applications in regular removal proceedings and reviewing USCIS's negative credible-fear determinations in expedited removal proceedings.  8 U.S.C. §§ 1225(b)(1)(B)(iii)(III), 1229a(a)(1); 8 C.F.R. §§ 1003.1(b)(9), 1003.10(c), 1003.42, 1240.1(a)(ii), 1208.30(g). The BIA, the administrative body that sits in review of immigration judge decisions in full removal proceedings, reviews immigration judge decisions in regular removal proceedings.  8 C.F.R. §§ 1003.1(a)(1), (b), 1003.10(c).  EOIR's function is therefore an extension of immigration enforcement efforts initiated by CBP or USCIS officers; it does not represent a separate or distinct enforcement mechanism, but merely a secondary step of the enforcement process.

This is further reflected in the regulatory scheme governing DHS and EOIR.  Both are governed by the same set of regulations concerning asylum and withholding of removal.  *Compare* 8 C.F.R §§ 208.1–208.31, *with* 8 C.F.R. §§ 1208.1–1208.31.  Indeed, DHS and the Department of Justice jointly published the Asylum Ban and required both asylum officers and immigration judges to apply this new bar on asylum eligibility when administering the credible fear screening process.  84 Fed. Reg. at 33,830; *see also M.M.V. v. Barr*, 456 F. Supp. 3d 193, 202 (D.D.C. 2020).  And as Defendants have conceded, EOIR personnel have several occasions to apply the Asylum Ban during expedited or regular removal proceedings initiated by either USCIS or CBP officers: (1) when immigration judges conduct a de novo review of a USCIS asylum officer's negative credible-fear determination; (2) when immigration judges adjudicate asylum claims in full removal proceedings; and (3) when the BIA adjudicates an appeal from an immigration judge's order denying asylum.  (Opp'n at 3–4.)

DHS and EOIR are not coordinating or cooperating to share information, nor are they separately pursuing administrative enforcement of immigration laws.  *But c.f. Vance v. Block*, 881 F.2d 1085 (9th Cir. 1989) (unpublished) (finding preparation of a "biological assessment" to constitute "[i]nteragency coordination and cooperation" insufficient for "active concert" for purposes of Rule 65(d)); *U.S. Commodity Futures Trading Comm'n v.*

*Amaranth Advisors, LLC*, 523 F. Supp. 2d 328, 335 (S.D.N.Y. 2007) ("Rule 65(d) does not apply to collaboration between two agencies pursuing enforcement actions pursuant to different statutes."). Much to the contrary, the statutory and regulatory scheme make clear that DHS and EOIR are essential parts of the same enforcement mechanism.[4] Thus, the Court finds that EOIR is, for purposes of general immigration enforcement, "in active concert or participation" with Defendants and is therefore bound by the Preliminary Injunction.

### 2.   All Writs Act ("AWA")

Under the AWA, federal courts have authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. The AWA provides this Court with the ability to construct a remedy to right a "wrong [which] may [otherwise] stand uncorrected." *United States v. Morgan*, 346 U.S. 502, 512 (1954). In the context of administrative law, the AWA allows the court "to preserve [its] jurisdiction or maintain the status quo by injunction pending review of an agency's action through the prescribed statutory channels." *F.T.C. v. Dean Foods Co.*, 384 U.S. 597, 604 (1966).

"The power conferred by the [All Writs] Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice." *United States v. New York Telephone Co.*, 434 U.S. 159, 174 (1977); *see also In re Baldwin–United Corp.*, 770 F.2d 328, 339 (2d Cir. 1985) ("Preliminary injunctions under Rule 65 are designed to preserve the status quo between

---

[4] Defendants contend that "EOIR adjudicators do not work 'in active concert or participation' with DHS any more than appellate courts work with trial courts or judges work with prosecutors." (Opp'n at 22.) Defendants' analogy appears to misinterpret the phrase "in active concert or participation." The phrase implies purposeful acts done toward the same end; it does not suggest improper motive or conduct otherwise unbecoming of judicial officers or officers of the court. *See Estate of Kyle Thomas Brennan*, 2010 WL 4007591, at *2 (noting Rule 65(d)(2)(C) does not imply "a partisan act or an act lacking in judicial impartiality"). Thus, just as courts and advocates work toward applying and enforcing the law, so too do DHS and EOIR work toward applying and enforcing immigration statutes and regulations.

the parties before the court pending a decision on the merits of the case at hand.  In contrast, injunctions [under the AWA] are needed to prevent third parties from thwarting the court's ability to reach and resolve the merits of the federal suit before it."); *Stratton v. Glacier Ins. Adm'rs, Inc.*, No. 1:02-cv-06213 OWW DLB, 2007 WL 274423, at *16 (E.D. Cal. Jan. 29, 2007) ("Injunctions under the All Writs Act are not subject to the standards for preliminary injunction under Fed. R. Civ. P. 65.") (citing *Baldwin*).

EOIR's compliance with the Court's Preliminary Injunction is necessary to effectuate its terms.  First, this Court previously established that it has independent jurisdiction over the underlying suit and therefore invokes the AWA only in aid of jurisdiction already established.  (*See* Prelim. Inj. at 8–19.)  Second, based on the explanation above, the Court's Preliminary Injunction is intended to protect all members of the class, i.e., those who were metered at ports of entry before July 16, 2019.  EOIR officials, namely immigration judges and the BIA, have the authority to reopen and reconsider final removal orders, as well as pass upon credible fear findings that may include testimony about metering, at critical stages in class members' removal proceeding.  To be clear, the Preliminary Injunction does not override the ability of immigration judges to make independent determinations about the merits of the class members' asylum claims; rather, it requires only that class members receive consideration of their claim instead of having it foreclosed by the Asylum Ban's automatic eligibility bar.

Because courts can determine the lawfulness of immigration regulations, it follows that these findings will necessarily have an impact on all actors in the immigration system tasked with implementing such regulations.  The Court therefore finds that, under the AWA, binding EOIR to the terms of the Preliminary Injunction is necessary to preserve this Court's jurisdiction.

### 3.    8 U.S.C. § 1252(f)(1)

Finally, Defendants argue that Plaintiffs' interpretation of the Preliminary Injunction, if granted, would run afoul of a jurisdiction-stripping provision of the Immigration and Nationality Act ("INA").  (Opp'n at 22.)  Specifically, the INA states that

- 19 -

this Court has no jurisdiction or authority "to enjoin or restrain the operation of the provisions of part IV of this subchapter, . . . other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated."  8 U.S.C. § 1252(f)(1).  "Part IV" is a reference to the provisions of the INA titled "Inspection, Apprehension, Examination, Exclusion, and Removal," which currently include 8 U.S.C. §§ 1221–1232.  In other words, § 1252(f)(1) "limits the district court's authority to enjoin [immigration authorities] from carrying out legitimate removal orders." *Ali v. Gonzales*, 421 F.3d 795, 886 (9th Cir. 2005).

However, "[b]y its terms, § 1252(f)(1) does not . . . categorically insulate immigration enforcement from 'judicial classwide injunctions.'" *Gonzalez v. United States Immigration & Customs Enf't*, 975 F.3d 788 (9th Cir. 2020).  For example, the Ninth Circuit has held that where a court enjoins "conduct that allegedly is not even authorized by the statute, the court is not enjoining the operation of part IV of subchapter II, and § 1252(f)(1) therefore is not implicated."  *Id.*; *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1120 (9th Cir. 2010) (finding § 1252(f)(1) not applicable where the petitioner did "not seek to enjoin the operation of the immigration detention statutes, but to enjoin conduct it asserts is not authorized by the statutes").

Similarly, here, the Preliminary Injunction does not enjoin operation of expedited or regular removal proceedings authorized by Part IV of the INA; rather, it enjoined the application of the Asylum Ban to class members on the basis that the regulation, "by its express terms, does not apply to those non-Mexican foreign nationals . . . who attempted to enter or arrived at the southern border *before* July 16, 2019." (Prelim. Inj. at 31.)  Again, the Court does not intend by its Order to interfere with the "independent judgment and discretion" afforded to immigration judges in deciding the individual cases before them. *See* 8 C.F.R. § 1003.10(b).  Immigration judges are still tasked with addressing whether individual asylum seekers have sufficiently demonstrated class membership and are thus subject to the Preliminary Injunction's mandate, and these judges maintain the authority to make other findings on the merits.  Thus, applying the Preliminary Injunction to prevent

removals of class members based on the Asylum Ban, and instead requiring a merits-based determination of their asylum claims, is not precluded by § 1252(f)(1).

## C.   Class Member Identification

Plaintiffs also move this Court to clarify the requirement that Defendants make "all reasonable efforts to identify all potential class members, including those already removed from the United States, and inform them of their potential class membership and of the injunction." (Mem. of P. & A. at 3.)  Under Rule 23(c)(2), "the court shall direct" notice to class members, which is commonly understood to mean that the court "should order one of the parties to perform the necessary tasks." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354 n.21 (1978).  In instances where defendants "may be able to perform a necessary task with less difficulty or expense than could the representative plaintiff," a district court "properly may exercise its discretion under Rule 23(d) to order the defendant to perform the task in question." *Id.* at 355–56; *see also Barahona-Gomez v. Reno*, 167 F.3d 1228, 1236–37 (9th Cir. 1999).

First, the parties disagree on the ability of the class members to independently raise their entitlement to relief under the Preliminary Injunction during administrative proceedings.  Defendants take the position that only class members with final removal orders should be identified and screened for class membership, because those with ongoing cases can affirmatively raise their claims at later stages of the administrative proceedings. (Lev Decl. ¶¶ 7b, 11.)  Plaintiffs challenge the effectiveness of requiring class members to recognize their entitlement to relief and raise these claims on their own, and note that Defendants are not screening those with final removal orders in ICE custody as a failsafe if class members are unsuccessful in doing so.  (Mem. of P. & A. at 16.)

As the Court notes above, the Preliminary Injunction applies to a class defined by whether purported members were metered at ports of entry before July 16, 2019, not by the class members' current stage of removal proceedings.  Further, the Court agrees, given the general complexity of immigration law and its recently changing landscape, that requiring class members to identify their right to relief under the Preliminary Injunction is

an unreasonable allocation of the notice burdens under Rule 23(d). *See Castro-O'Ryan v. U.S. Dep't of Immigration & Naturalization*, 821 F.2d 1415, 1419 (9th Cir. 1987), *superseded*, 847 F.2d 1307 (9th Cir. 1987) ("[T]he immigration laws have been termed second only to the Internal Revenue Code in complexity.  A lawyer is often the only person who could thread the labyrinth.") (citations and quotations omitted).  Thus, the Court finds it appropriate for Defendants to make reasonable efforts to aid in identifying potential class members at all stages of removal proceedings.[5]  *See Barahona-Gomez v. Reno*, 167 F.3d at 1237 (finding district court did not err in requiring the government to provide notice where "notice was required to inform class members that equitable relief may be available," "to ensure that the INS did not mistakenly deport a class member," and where "the INS [was] unique positioned to ascertain class membership").

In light of this and the Court's finding below regarding information sharing, the Court finds that it is not necessarily easier for Defendants to notify individuals who are not in expedited removal proceedings, regular removal proceedings, or otherwise in DHS custody (such as ICE or CBP custody) of their potential class membership.  For these individuals, Plaintiffs and their counsel will have access to the same contact details of class members and can facilitate the notification process for those who were removed and remain outside the United States or for those who otherwise are not in pending administrative proceedings or in the custody of the government.

Second, there is an issue regarding supporting documentation.  Plaintiffs seek clarification that Defendants are required to review their own documentation to help identify class members because they have already made efforts to do so and because they have access to these and other relevant documents, such as immigration files of potential class members.  (Mem. of P. & A. at 15–16.)  Defendants concede that they have "twice generated a list of aliens in ICE's custody who received negative credible-fear

---

[5] This would not shift the burdens during removability proceedings.  As Plaintiffs readily concede, individuals would still bear the burden of demonstrating their class membership, and therefore their eligibility for relief, to immigration officials.  (Reply at 8.)

determinations from USCIS pursuant to the [Asylum Ban], and those whose cases were not pending before EOIR."  (Opp'n at 24.)  However, they argue that because these lists were both over- and under-inclusive, they should not be required to produce them.  (*Id.*)[6] Considering the administrative complexity of the instant case—as attested to by Defendants themselves— the Court sees no reason for this information, however imperfect, to be withheld.  Deficient lists can be cross-referenced with immigration files, annotated I-213s, and other documentation—all within Defendants' custody—through which class members can be identified and corroborated.  *See Oppenheimer*, 437 U.S. at 355–56.[7] Thus, Defendants must review their own records to aid in the identification of class members and must share the information in their custody regarding the identities of class members with Plaintiffs.

## D.    Motion to Seal

Plaintiffs request to redact and seal the names of asylum seekers and A-file numbers contained in Exhibits 1–3 to their Motion and to seal excerpts from the transcript of the June 2, 2020 deposition of Rodney Harris attached as Exhibit 4.  (Pls.' Mot to Seal, ECF No. 495.)  Defendants filed a Response in support of the motion.  (Defs.' Resp., ECF No. 531.)

As to the identifying information of asylum seekers, both parties request sealing these details for privacy and confidentiality reasons.  The Court has previously allowed

---

[6] Defendants also rehash their ascertainability arguments from their class certification and preliminary injunction opposition briefs—"that there is no reliable, comprehensive way to identify class members and that attempts to do so would be substantially burdensome."  (Opp'n at 23.)  Defendants cite to various deficiencies in their own recordkeeping—e.g., that the annotated I-213s cover only certain time periods and EOIR's records do not track who was metered—to support their argument.  The Court again rejects these arguments on the basis that the class is based on a metering system established by Defendants and that Defendants relied on lists managed by the Mexican Government to facilitate metering.  (*See* Prelim. Inj. at 28–29.)  It therefore does not follow that determining who was subject to metering for purposes of complying with the Preliminary Injunction now presents an insurmountable task.

[7] The situation prompting Plaintiffs to recently file an Emergency Motion (ECF No. 494) in this case reflect the challenges associated with identifying and corroborating class membership claims in this case.  (*See* ECF Nos. 574, 588, 595.)

1   targeted redactions for this purpose and adopts the same reasoning to allow the parties to

2   do so here.

3       As to the Deposition of Rodney Harris ("Harris Deposition"), attached as Exhibit 4

4   to Plaintiffs' Motion, Defendants explain that it should be sealed in its entirety because his

5   testimony relating to the lists of migrants waiting in shelters to enter the United States

6   includes communications between CBP and the State Department and between the U.S.

7   Government and non-governmental organizations working in Mexico. (Defs.' Resp. at 4.)

8   According to Defendants, disclosure of these communications could chill communications

9   with officials in the Mexican Government or NGO personnel and reveal "the manner in

10  which Mexico operates shelter systems along the border and specific actions taken by the

11  Mexican." (*Id.*)

12      The Court does not find compelling reasons to seal this testimony. First, the fact

13  that information-sharing occurs between U.S. and Mexican officials regarding the list of

14  asylum seekers has already been publicly disclosed as a part of the metering policy. (*See*

15  Prelim. Inj. at 27–28.) Further, the testimony does not describe wide-ranging discussions

16  between CBP, the State Department, and /or the Mexican Government regarding border

17  infrastructure or security measures; rather, it is limited to questions about Defendants'

18  access to the waitlists, which is at the core the parties' dispute over class member

19  determination. There is one vague reference to the utility of the lists; the remainder of the

20  testimony excerpts confirms, in general terms, that lists were exchanged between shelters,

21  the INM, and CBP, to which Harris played a peripheral role in facilitating. Thus, the Court

22  denies the Motion to Seal. However, the Court will allow Defendants to redact the names

23  of State Department and other non-party contacts to maintain their privacy.

24  **V.    CONCLUSION**

25      Accordingly, Plaintiffs' Motion for Clarification of the Preliminary Injunction (ECF

26  No. 494) is **GRANTED**. The Court **CLARIFIES** the Preliminary Injunction as follows:

27      (1)    EOIR is bound by the terms of the preliminary injunction;

28

(2)    DHS and EOIR must take immediate affirmative steps to reopen or reconsider past determinations that potential class members were ineligible for asylum based on the Asylum Ban, for all potential class members in expedited or regular removal proceedings. Such steps include identifying affected class members and either directing immigration judges or the BIA to reopen or reconsider their cases or directing DHS attorneys representing the government in such proceedings to affirmatively seek, and not oppose, such reopening or reconsideration;

(3)    Defendants must inform identified class members in administrative proceedings before USCIS or EOIR, or in DHS custody, of their potential class membership and the existence and import of the preliminary injunction; and

(4)    Defendants must make all reasonable efforts to identify class members, including but not limited to reviewing their records for notations regarding class membership made pursuant to the guidance issued on November 25, 2019, and December 2, 2019, to CBP and OFO, respectively, and sharing information regarding class members' identities with Plaintiffs.

*** 

Further, the Court **GRANTS IN PART** the Motion to Seal (ECF No. 495).  The Clerk shall accept and file under seal Exhibit 1 (ECF No. 496-1), Exhibit 2 (ECF No. 496-2), and Exhibit 3 (ECF No. 496-3) to Plaintiffs' Motion.   However, the Court **DENIES WITHOUT PREJUDICE** the request to seal Exhibit 4 to Plaintiffs' Motion (Deposition of Rodney Harris).  Defendants shall file a redacted version of this exhibit, in accordance with the Court's aforementioned instructions, by **November 13, 2020**, which shall be accepted and filed by the Clerk upon receipt.  The exhibit shall remain sealed in the interim.

Lastly, for the reasons stated above, Plaintiffs' Ex Parte Motion for Oral Argument is **DENIED AS MOOT** (ECF No. 509).

**IT IS SO ORDERED.**

**DATED: October 30, 2020**

Cynthia Bashant

**Hon. Cynthia Bashant**
**United States District Judge**

17cv2366