1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AL OTRO LADO, *et al.*,<br><br>                                   Plaintiffs,<br><br>   v.<br><br>CHAD F. WOLF, Acting Secretary of Homeland Security, *et al.*,<br><br>                                   Defendants. | Case No. 17-cv-02366-BAS-KSC<br><br>**ORDER:**<br><br>**(1)  GRANTING PLAINTIFFS' EMERGENCY MOTION (ECF No. 574);**<br><br>**AND**<br><br>**(2)  DENYING WITHOUT PREJUDICE THE PARTIES' RESPECTIVE MOTIONS TO SEAL (ECF Nos. 586, 589)** |

On October 12, 2020, Plaintiffs filed an Ex Parte Emergency Motion to Enforce Preliminary Injunction and Temporarily Enjoin the Removal of a Preliminary Injunction Class Member ("Emergency Motion" or "Motion"), seeking to enjoin Defendants from removing a Cameroonian national ("Applicant") from the United States.  (Mot., ECF No. 574.)  Plaintiffs argue that Applicant is a member of the class subject to this Court's November 19, 2019 Preliminary Injunction and is therefore entitled to a credible fear determination based on the merits of her asylum claim.  (Mem. of P. & A. in supp. of Mot. ("Mem. of P. & A.") at 3–4, ECF No. 574-1; *see also* Prelim. Inj., ECF No. 330.)  The Court construed Plaintiffs' Motion as a Motion for a Temporary Restraining Order, granted it until the parties could be heard, and set a deadline for Defendants to respond. (ECF No. 576.)  Defendants filed an Opposition on October 16, 2020, and Plaintiffs filed a Notice of Additional Exhibits in support of their Motion in response.  (Opp'n, ECF No. 588; Notice of Additional Exs., ECF No. 591.)  A telephonic hearing was held on October

19, 2020.  (ECF No. 595.)  After considering the parties' arguments both in their briefing and during oral argument, the Court **GRANTS** Plaintiffs' Motion and **DENIES WITHOUT PREJUDICE** their motions to seal.

## I.    BACKGROUND

### A.    Procedural History

On September 26, 2019, Plaintiffs moved for a preliminary injunction and provisional class certification (ECF Nos. 293, 294) regarding the "Asylum Eligibility and Procedural Modifications" regulation, which imposed significant restrictions on asylum eligibility.  This rule, referred to as the "Transit Rule" or the "Asylum Ban," requires asylum seekers to previously seek and be denied humanitarian protection in a country they travel through en route to the United States before they are eligible to apply for asylum in this country.  *See* 8 C.F.R. § 208.13(c)(4).  Plaintiffs sought to prevent Defendants from applying the Asylum Ban to a class of non-Mexican nationals who were prevented from making direct claims for asylum at ports of entry ("POEs") before July 16, 2019 because they were turned back by Defendants or otherwise instructed to wait their turn in Mexico pursuant to Defendants' "metering" policy.  The lawfulness of the metering policy is at the core of the parties' dispute in the underlying lawsuit.  (*See* Second Am. Compl., ECF No. 189.)

The Court granted Plaintiffs' Motions.  (ECF No. 330.)  The provisionally certified class consists of "all non-Mexican asylum-seekers who were unable to make a direct asylum claim at a U.S. POE before July 16, 2019 because of the U.S. Government's metering policy, and who continue to seek access to the U.S. asylum process."  (*Id.* at 36.) The Court enjoined Defendants "from applying the Asylum Ban to members" of this class and ordered them **"**to return to the pre-Asylum Ban practices for processing the asylum applications of members of the certified class."  (*Id.*)

On July 17, 2020, Plaintiffs moved for clarification of the Preliminary Injunction. (ECF Nos. 494.)  After the issue was fully briefed, and after hearing related arguments in the oral argument held on the instant Motion (ECF No. 595), the Court granted Plaintiffs'

- 2 -

17cv2366

motion and clarified, among other things, that the Preliminary Injunction applied to class members whose removal orders became final before the injunction issued on November 19, 2019.  (*See* Order Granting Pls.' Mot. for Clarification at 8–13, ECF No. 605.)

### B.     Applicant's Immigration History

Applicant is a Cameroonian national currently detained at the Prairieland Detention Facility in Alvarado, Texas.  (Mem of P. & A. at 4; October 17, 2020 Decl. of Applicant ("Applicant Decl.") ¶ 15, Ex. 1 to Notice of Additional Exs., ECF No. 590-1.)  She states that she fled her home country on March 1, 2019 to seek humanitarian protection after Cameroonian government officials assaulted her on the basis of her political, tribal, and ethnic affiliation.  (Applicant Decl. ¶ 4; Aug. 30, 2019 Credible Fear Interview Notes at 4–5, 8–10, Ex. A to Decl. of Graham Doeren ("Doeren Decl."); *see also* English Translation of 2019 Decl. of Applicant at 1–8, Ex. F to Doeren Decl.)[1]

Applicant attests that she did not attempt to enter the United States on her own either at a POE or otherwise because she was told by other migrants that she first had to put her name "on the waitlist kept by Mexican immigration officials and wait [her] turn." (Applicant Decl. ¶¶ 5, 7.)  She states on June 5, 2019, she went to the plaza near the San Ysidro POE where a list manager wrote her name on the list and gave her a piece of paper with the number 3295.  (*Id.* ¶ 6.)

Plaintiffs have attached to their Motion an undated photocopy of a portion of a waitlist bearing Applicant's name as one of ten people assigned waitlist number 3295. (*See* Decl. of Nicole Ramos ("Ramos Decl.") ¶ 17, Ex. 2 to Mot., ECF No. 574-3.)  Al Otro Lado's Advocacy Coordinator attests that she obtained this document after visiting the office of the National Institute of Migration ("INM") at the San Ysidro West POE in April 2020, where she took photos of the notebook pages containing the waitlist for March 24, 2019 to July 17, 2019.  (Decl. of Karen Galvan ("Galvan Decl.") ¶¶ 3–5, Ex. 2 to Notice of Additional Exhibits, ECF No. 591-2.)  She authenticates the photocopy as a true and correct copy of the photos she took of the waitlist pages including numbers 3293

---

[1] All exhibits to the Doeren Declaration are docketed as ECF No. 587-1.

through 3295.  (*Id.* ¶ 5.)  She  also states that the pages indicate that the last number issued on July 15, 2019 was 3667, the last number called that day was 2702, and the last  number called on November 19, 2019 was 3487.  (*Id.* ¶ 6.)  Plaintiffs state that this information corroborates that Applicant, with a number of 3295, placed her name on the waitlist on or around June 5, 2019.  (*Id.* ¶¶ 5–6; *see also* Ramos Decl. ¶¶ 8, 10–11 (citing to Al Otro Lado's "internal records").)

Applicant states that she was able to enter the United States before her number was called because she volunteered to assist with managing the waitlist process at the plaza.  (Applicant Decl. ¶¶ 8, 10.)  She was therefore able to enter the United States at the San Ysidro POE on July 29, 2019.  (Oct. 23, 2019 Credible Fear Interview: Questions & Answers at 2, Ex. B to Doeren Decl.; Oct. 23, 2019 Record of Determination/Credible Fear Worksheet at 1 ("Oct. 23, 2019 Record of Determination"), Ex. C to Doeren Decl.) She was detained the same day in Otay Mesa, San Diego.  (Oct. 23, 2019 Record of Determination at 1.)

Applicant was placed in expedited removal proceedings.  (Decl. of Rebecca Cassler ¶ 3b, Ex. 1 to Mot., ECF No. 574-2.)  On August 30, 2019 and October 23, 2019, an asylum officer conducted credible fear interviews with Applicant in French through an interpreter.  (*See* Aug. 30, 2019 Credible Fear Interview Notes; Oct. 23, 2019 Credible Fear Interview Notes at 1.)  During the first interview, Applicant was asked about her background, her travels after departing from Cameroon, and specifics about harm suffered and her fear of future persecution.  (*See generally*, Aug. 30, 2019 Credible Fear Interview Notes.)  She was also asked questions about discrepancies in her testimony regarding the preparation of her visa application and inconsistencies between her testimony and the content of the application.  (*Id.* at 11–12.)

In the second interview, a different officer asked Applicant whether she had applied for asylum in the countries she passed through before reaching the United States.  (Oct. 23, 2019 Credible Fear Interview: Questions & Answers at 6.)  Because she had not, the asylum officer explained that the Asylum Ban regulation barred her from the credible fear

- 4 -

17cv2366

process.  (*Id.*)  The document indicates that the remainder of the interview was intended to determine if Applicant had "a reasonable fear"—not a credible fear—of persecution or torture.  (*Id.* at 7.)  It also states that if it was determined that she did not have "a reasonable possibility of being persecuted or tortured," then she was allowed to have an immigration judge review that decision as well as the determination "that [she] did not have a credible fear of persecution because [she was] barred from asylum under 8 C.F.R. § 208.13(c)(4)."  (*Id.*)  The officer then inquired about additional discrepancies between Applicant's testimony and her visa application and interview with the consular officer.  (*Id.* at 7–10.)

In the Record of Determination/Credible Fear Worksheet, under a section titled "Credible Fear Determination (and reasonable fear determination, where applicable)," the asylum officer checked a box under the sub-header "Credibility" indicating "Applicant found **not** credible."  (*See* Oct. 23, 2019 Record of Determination at 5.)  No boxes are selected under "Credible Fear Finding" regarding whether Applicant established a credible or reasonable fear or persecution or torture.  (*Id.*)  Under "Identity," the asylum officer checked a box indicating that "Applicant's identity was not determined with a reasonable degree of certainty."  (*Id.* at 6.)  The continuation paragraph states the following:

> Alien is barred from asylum pursuant to 8 CFR 208.13(c)(4) and therefore the alien has not established a significant possibility of establishing eligibility for asylum and has received a negative credible fear of persecution determination. Alien was then screened for potential entitlement to withholding under INA 241 or [Convention Against Torture ("CAT")] protection under a "reasonable possibility of persecution" and "reasonable possibility of torture" standard.

(*Id.*)  The asylum officer went on to explain that Applicant's testimony about her family, marital status, visa application preparation, and other details of her life—when cross-referenced with other testimony, her consular interview, and her visa application—"call into question the applicant's identity" and warranted a finding that she was not credible.  (*Id.* at 6–7.)

The asylum officer then issued a negative credible fear determination specifically stating that Applicant was "an alien described in 8 CFR 208.13(c)(4)" and therefore had

17cv2366

"not established a credible fear" because she could not show "a significant possibility of establishing eligibility for asylum." (Record of Negative Credible/Reasonable Fear Finding, Ex. D to Doeren Decl.) The asylum officer did not check the box indicating that Applicant failed to establish a reasonable fear for withholding of removal or CAT protection; instead, the asylum officer checked the box stating: "Considering the totality of the circumstances and all relevant factors, you have not established that your testimony is credible." (*Id.*) On this basis, United States Citizenship and Immigration Services ("USCIS") ordered Applicant removed on November 8, 2019. (*Id.*)

Applicant requested review of the credible fear and reasonable fear determinations by an immigration judge, who affirmed the asylum officer's determination on November 14, 2019. (*Id.*; Order of the Immigration Judge, Ex. A to Decl. of Karla Moy, Ex. 2 to Opp'n, ECF No. 587-2.) Specifically, the immigration judge found that Applicant had not established "a significant possibility" of persecution based on a protected category or of being subjected to serious physical or mental harm from a government official. (Order of the Immigration Judge.) The order also includes a handwritten notation on the bottom left that reads "Respondent not credible in totality of circumstances." (*Id.*) Applicant's expedited order of removal became final the same day. *See* 8 C.F.R. § 208.31(g)(1) (establishing that if an immigration judge affirms an asylum officer's negative credible fear finding, "the case shall be returned to the Service for removal of the alien" and "[n]o appeal shall lie from the immigration judge's decision").[2]

After this Court entered its Preliminary Injunction on November 19, 2019 (ECF No. 330), Applicant received a follow-up interview to determine if she had been metered at a port of entry. (March 25, 2020 Credible Fear interview: Question & Answers, Ex. I to

---

[2] In August 2020, Applicant moved to reopen her proceedings for a new credible fear interview based on a decision by U.S. District Court for the District of Columbia vacating the transit rule on procedural grounds in *Capital Area Immigrants' Rights Coalition v. Trump (CAIR)*, __ F. Supp. 3d __, 2020 WL 3542481 (D.D.C. 2020). (Resp.'s Mot. to Reopen.) On September 8, 2020, the immigration court rejected the filing on the basis that a negative credible finding by an immigration judge is final and can be reconsidered only by the Department of Homeland Security. (Rejected Filing, Ex. B to Moya Decl., ECF No. 587-2.) USCIS had previously denied Applicant's Motion for Reconsideration on January 19, 2019. (USCIS Letter, Ex. G to Doeren Decl.)

17cv2366

1  Doeren Decl.)  The following are relevant excerpts of the exchanges that occurred during

2  that interview:

3        Q:     What day did you cross the border from Mexico into the US?
4        A:     July 29, 2019

5        Q:     Did you ever seek to enter the United States before that time July 29, 2019?
         A:     Yes in Tijuana
6

7        Q:     Are you sure
         A:     Yes

8        Q:     Where
9        A:     In Tijuana.  I wanted to cross the border but I had no money and had to work

10                   . . .

11       Q:     Did you attempt to cross the border in Tijuana
         A:     Yes
12

13       Q:     At what location
         A:     San Ysidro

14       Q:     How many times [have you] tried to cross the border in San Ysidro
15       A:     Just once

16       Q:     When
17       A:     July 29, 2019

18       Q:     Did you tr[y] to cross before July 29, 2019
         A:     No
19

20       Q:     You mean your first and only attempt to cross the border was at San Ysidro
         A:     Yes

21       Q:     Remembered the date
22       A:     July 29, 2019

23       Q:     While in Tijuana were you told to put your name on any sort of list to get
24              into a POE
         A:     Can you repeat the question
25

26       Q:     Did you ever place your name on a list to enter the US through a port of entry
               besides San Ysidro on July 29, 2019
27       A:     No.

28

17cv2366

Q:   Were you ever told that you could return to a POE to be processed
A:   Can you repeat the question please

Q:   While you were in Tijuana, were you told to come back to a POE to be processed at another day
A:   No.

(*Id.*)   The asylum officer then summarized Applicant's testimony, in relevant part, as follows: "You stated that you never wrote your name down on a list and your first and only attempt to cross the border into the US was on July 29 at San Ysidro[.]" (*Id.* at 4–5.) When asked if the summary was correct, Applicant confirmed that it was.  (*Id.* at 5.) Applicant recalls having this phone interview on March 25, 2020 but does not remember "ever being asked about putting [her] name on the waitlist in Tijuana" or being asked if she "had a number from the waitlist in Tijuana or to produce proof that [she] was on the waitlist in Tijuana." (Applicant Decl. ¶¶ 13–14.)

After this interview, the asylum officer issued another determination stating, in relevant part:

> Alien did not establish that it is more likely than not that she meets the provisional class definition in Al Otro Lado v. Wolf.
>
> Alien is barred from asylum pursuant to 8 CFR 208.13(c)(4) and therefore the alien has not established a significant possibility of establishing eligibility for asylum and has received a negative credible fear of persecution determination. Alien was then screened for potential entitlement to withholding under INA 241 or CAT protection under a "reasonable possibility of persecution" and "reasonable possibility of torture" standard.

(April 14, 2020 Record of Determination/Credible Fear Worksheet at 5, Ex. A to Decl. of Shoshana Kushner, Ex. 3 to Notice of Additional Exhibits, ECF No. 590-2.)[3]  Unlike the previous determination, the asylum officer found that Applicant's identity was determined with a reasonable degree of certainty based on her immigration records.  (*Id.*)

---

[3] Based on the record before the Court, it does not appear that Applicant had any opportunity to seek administrative review of the class membership determination made by the asylum officer.

17cv2366

**C.    Plaintiffs' Emergency Motion**

On October 12, 2020, Plaintiffs filed the instant Motion seeking to temporarily enjoin Defendants' removal of Applicant to Cameroon.  (ECF No. 574.)  Plaintiffs allege that she was deemed ineligible for asylum on October 23, 2019 because of Defendants' application of the Asylum Ban to her claim, but that because there is documentary evidence that she was metered before July 16, 2019, she is entitled to a credible fear determination on the merits of her case.  (Mem. of P. & A. at 4.)  They further state that Applicant's removal was scheduled to take place as early as midnight central time on October 13, 2020.  (*Id.* at 2.)

Finding that Plaintiffs satisfied the requirements of Federal Rule of Civil Procedure 65(b), the Court granted Plaintiffs' Motion without a formal or written opposition from Defendants and "temporarily restrained and enjoined from relocating Applicant outside the United States pending the Court's consideration of the issues in this action."  (Order Granting Pls.' Mot. at 4, ECF No. 376.)  Defendants were required to file an Opposition by October 16, 2020, and a hearing was set for October 19, 2020.  (*Id.* at 5.)

In their Opposition, Defendants contend that USCIS "issued Applicant a negative credible-fear determination" because she "was determined to be ineligible for asylum pursuant to the [Asylum Ban]" and because her testimony was not credible.  (Opp'n at 1.)  Defendants also challenge Applicant's claim that she was metered, arguing that "contemporaneous notes from Applicant's screening interview" on March 25, 2020 show that Applicant stated she only attempted to cross the border once on July 29, 2019.  (Opp'n at 10–11.)  Defendants also challenge the admissibility of the photocopy of the waitlist submitted by Plaintiffs on authentication grounds.  (*Id.* at 11.)

Beyond this, however, Defendants also claim that because the Preliminary Injunction applies only prospectively, it does not require that Defendants reopen or reconsider Applicant's expedited order of removal, which became final before the Preliminary Injunction went into effect.  (Opp'n at 7–9.)  They also argue that any improper application of the Ban was harmless because the finding that Applicant's

- 9 -

1    testimony was not credible supplies a basis for removal independent from the application

2    of the Asylum Ban.  (*Id.* at 12–13.)

3    **II.    DISCUSSION**

4          The instant motion does not call for sanctions, but instead requests that this Court

5    make two determinations: (1) whether Applicant is a class member and therefore entitled

6    to the relief afforded by this Court's Preliminary Injunction, i.e., a merits determination

7    on her asylum claim; and (2) whether Applicant has already received a merits

8    determination on her asylum claim such that Defendants are not in violation of the

9    Injunction.  The Court turns to both issues below.

10         **A.    Whether Applicant is a Member of the Class**

11         This Court recently issued an Order clarifying the scope of the Preliminary

12   Injunction, in which the Court expressly held that the Preliminary Injunction applies to all

13   non-Mexican asylum-seekers who were metered before July 16, 2019, regardless of

14   whether their orders for removal became final before the order issued.  (*See* Order

15   Granting Pls.' Mot. for Clarification at 8–13.)  Thus, the fact that Applicant's expedited

16   removal order became final before November 19, 2019 does not exclude her from the

17   class.

18         Further, the Court finds that the follow-up interview conducted in March 2020 did

19   not conclusively determine that Applicant was not a class member.  Although the asylum

20   officer asked whether she was told to put her name on a list to get to a POE, Applicant did

21   not answer the question and asked if it could be repeated.  Critically, the asylum officer

22   did not repeat this exact question, but instead asked if Applicant had put her name on a

23   list to enter a POE *besides San Ysidro*, to which Applicant said she had not.  The asylum

24   officer's summary of Applicant's testimony—in relevant part, that she "never wrote [her]

25   name down on a list"—was therefore inaccurate.  While Applicant confirmed the accuracy

26   of this summary, the Court finds that this cursory response is outweighed by the ambiguity

27   of the screening questions and the documentary evidence supporting Applicant's class

28   membership.

Lastly, although Defendants challenge the admissibility of the photocopy of the waitlist submitted by Plaintiffs (Opp'n at 11), these purported deficiencies appear to have been addressed by Plaintiffs' additional exhibits. Al Otro Lado's Advocacy Coordinator has provided a declaration based on personal knowledge regarding the origins of the waitlist and the dates the photocopied pages represent. (*See* Galvan Decl. ¶¶ 3–5.) She attests that she visited the INM, which maintains the waitlist, and was coordinated with an INM representative to take photos of the waitlist. (*Id.* ¶ 4.) This is sufficient evidence to support a finding that the photocopies bearing Applicant's name are the metering waitlist itself, as Plaintiffs represent.

As such, the Court finds that Applicant is a member of the class, and now turns to whether her prior administrative proceedings constitute a merits determination on her asylum claim in compliance with the Preliminary Injunction.

**B.** **Whether Defendants Have Provided a Merits Determination**

The administrative record in Applicant's case alternatively refers to standards of fear necessary to establish withholding from removal, CAT protection, and asylum. The Court explains the differences between these standards before addressing the facts of Applicant's case.

1. Credible Fear and Reasonable Fear Standards

While the Asylum Ban states that it "does not change the credible-fear standard for asylum claims," an asylum-seeker subject to the Ban "would be ineligible for asylum and would thus not be able to establish a 'significant possibility . . . [of] eligibility for asylum under Section 1158.'" 84 Fed. Reg. 33,837 (quoting 8 U.S.C. § 1225(b)(1)(B)(v)) (alterations in original). However, the asylum-seeker may still obtain review from an immigration judge regarding whether the asylum officer correctly determined that he or she was subject to the Asylum Ban. *Id.*

The new rule also provides that anyone deemed ineligible under the Asylum Ban "would still be screened, but in a manner that reflects that their only viable claims could be for statutory withholding or CAT protection pursuant to 8 C.F.R. 208.30(e)(2)–(4) and

1208.16." 84 Fed. Reg. at 33,837.  In other words, even if an applicant is determined to be subject to the Asylum Ban and therefore ineligible for asylum, the asylum officer must still assess whether "further proceedings on a possible statutory withholding or CAT protection claim are warranted," which imposes the higher "reasonable fear" standard, rather than the "credible fear" standard.  *Id.*; *see Singh v. Barr*, No. CV-19-05641-PHX-MTL (JZB), 2019 WL 6219315, at *1 n.1 (D. Ariz. Nov. 21, 2019) (noting that the petitioner, who had been deemed ineligible for asylum under the Asylum Ban, was "screened only for potential entitlement to withholding . . . or CAT protection under a 'reasonable possibility of persecution' and 'reasonable possibility of torture' standard").

To establish a "reasonable fear" of persecution or torture, an applicant must "establish a reasonable possibility that he or she would be persecuted on account of his or her race, religion, nationality, membership in a particular social group or political opinion, or a reasonable possibility that he or she would be tortured in the country of removal."  8 C.F.R. § 208.31(c).  "This . . . screening process is modeled on the credible fear screening process, but requires the alien to meet a higher screening standard." Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8,478, 8,485 (Feb. 19, 1999); *compare Kamalthas v. INS*, 251 F.3d 1279, 1284 (9th Cir. 2001) (stating that the burdens of proof for CAT and withholding are "more likely than not" or 51% chance of persecution or torture) *with Khup v. Ashcroft*, 376 F.3d 898, 904 (9th Cir. 2004) (stating that in an asylum case, "even a ten percent chance of persecution may establish a well-founded fear").  Correspondingly, "[b]ecause the standard for showing entitlement to [withholding and CAT protection] (a probability of persecution or torture) is significantly higher than the standard for asylum (a well-founded fear of persecution), the screening standard adopted for initial consideration of withholding and deferral requests in these contexts is also higher."  *Id.*

### 2.   Applicant's Case

Applicant's administrative record does not include a determination on the merits of Applicant's asylum claim.   Immigration officials concluded multiple times during

Applicant's underlying proceedings that she was barred from the credible fear process altogether because she did not satisfy the additional eligibility criteria under the Asylum Ban. (*See* Oct. 23, 2019 Credible Fear Interview: Questions & Answers at 6; Oct. 23, 2019 Record of Determination at 6; Record of Negative Credible/Reasonable Fear Finding.) Immigration officials also made clear that credibility determinations were made under a reasonable fear standard attributable to withholding or CAT protection. (Oct. 23, 2019 Credible Fear Interview: Questions & Answers at 7.)

Because it is clear that the asylum officer made a merits determination in Applicant's case under the standards for withholding of removal and CAT protection, which requires a significantly higher showing from Applicant than asylum, the determination made in Applicant's case is not dispositive of her eligibility for asylum. As such, the previous credibility finding about Applicant's testimony does not constitute a determination on the merits of her asylum claim, which she is due as a class member.

## C.   Motions to Seal

The parties also seek to file portions of their Motions and attached exhibits under seal. (Pls.' Mot. to seal, ECF No. 589; Defs.' Mot to Seal, ECF No. 586.) Both parties seek to file under seal all exhibits attached to Defendants' Opposition and the portions of their brief that refer to them or reveal Applicant's identity or personal identifying information. (*Id.*) Plaintiffs have redacted information from their Notice of Additional Exhibits and from Applicant's Declaration and seek to seal in its entirety the April 14, 2020 Form I-870. (Mem. of P. & A. in supp. of Pls.' Mot. to Seal at 1, ECF No. 589-1.) Defendants seek to seal, in their entirety, all 11 exhibits attached to their Opposition and portions of their brief that refer to them. (Mem. of P. & A. in supp. of Defs.' Mot. to Seal at 3, ECF No. 586-1.)

The Court must balance Applicant's privacy interest in the above information with the interest in public access to these records. An asylum-seeker's interest in ensuring their personal safety by preventing public disclosure of this information is critically important

1   and, as noted by Defendants, protected by statute.[4]  *See A.B.T. v. U.S. Citizenship and*

2   *Immigration Servs.*, No. 2:11–cv–02108 RAJ, 2012 WL 2995064, at *5 (W.D. Wash. July

3   20, 2012) (noting that these regulations "permit[ ] disclosure of [asylum seekers']

4   identities to the courts, but [they] do[ ] not permit disclosure to the general public").

5          However, because the Motion directly implicates broader issues about enforcement

6   of the November 19, 2019 Preliminary Injunction and membership in the injunction class,

7   the Court disagrees that disclosure of this information has no bearing on the merits of the

8   action and that the public has no interest in the details of Applicant's underlying asylum

9   claim in this case.  The Court therefore concludes that none of the documents submitted

10  by the parties related to this Motion should be wholesale sealed, but rather should be made

11  publicly available with redactions concealing Applicant's identifying information.  *See In*

12  *re Midland Nat. Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1120 (9th Cir.

13  2012) (instructing district court to redact "sensitive personal" information even where

14  records are unsealed); *see also Hedrick v. Grant*, No. 2:76-CV-0162-GEB-EFB P, 2017

15  WL 550044, at *2 (E.D. Cal. Feb. 10, 2017) (finding that redactions sufficiently protected

16  class members' privacy interests but also preserved public access to a document that would

17  "be among the evidence considered by the court . . . in determining the merits of the motion

18  to enforce and thus are an important part of the record of the case").

19         The Court therefore denies without prejudice the motions and directs the parties to

20  narrow their requests by proposing only those targeted redactions that are necessary to

21  protect Applicant's identity, including but not limited to her name and date of birth and

22  those of her family members and details regarding her experience in her home country.

23

24

25

---

26  [4] Asylum seekers have the right to keep confidential any information contained in or pertaining to an
    asylum application that allows a third party to link the identity of the applicant to: (1) the fact that the
27  applicant has applied for asylum; (2) specific facts or allegations pertaining to the individual asylum
    claim contained in an asylum application; or (3) facts or allegations that are sufficient to give rise to a
28  reasonable inference that the applicant has applied for asylum.  8 C.F.R. §§ 208.6, 1208.6 (2012).

**III.    CONCLUSION**

Accordingly, the Court:

(1)    **GRANTS** Plaintiffs' Emergency Motion (ECF No. 574) and **ORDERS** Defendants to provide Applicant with a merits determination of her asylum claim, in compliance with the Court's Preliminary Injunction;

(2)    **DENIES WITHOUT PREJUDICE** Defendants' Motion to Seal (ECF No. 586) and Plaintiffs' Motion to Seal (ECF No. 589).  The parties shall submit their proposed redactions by **November 13, 2020**.  The documents shall remain sealed in the interim.

**IT IS SO ORDERED.**

**DATED: October 30, 2020**

Hon. Cynthia Bashant
United States District Judge

- 15 -

17cv2366