UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

AL OTRO LADO, INC., et al.,

                    Plaintiffs,

v.

CHAD F. WOLF, Acting Secretary, U.S.
Department of Homeland Security, in his
official capacity, et al.,

                    Defendants.

Case No.:  3:17-cv-2366-BAS-KSC

**ORDER REGARDING JOINT MOTION FOR DETERMINATION OF JUNE 2020 CLAWBACK DISPUTE; ORDER GRANTING MOTION TO SEAL [Doc. Nos. 522, 524]**

       Before the Court is the parties' Joint Motion for Determination of June 2020 Clawback Dispute (the "Joint Motion" or "Jt. Mot.").  Doc. No. 523 (sealed), Doc. No. 524 (public, redacted version).  Defendants request to claw back documents they assert are privileged and were inadvertently produced in discovery.  Defendants also make an unopposed motion to seal portions of the Joint Motion that quote from or describe the contents of the purportedly privileged documents ("Motion to Seal" or "Sealing Mot.").  Doc. No. 522.  For the reasons set forth herein, the Court DENIES defendants' request to claw back the documents and GRANTS the Motion to Seal.

## I.  BACKGROUND

       The parties filed the Joint Motion on August 18, 2020.  On the same date, defendants lodged 17 documents identified as Government Documents A through Q with

1

the undersigned's chambers for the Court's *in camera* review.  *See* Jt. Mot. at 3-6.
Government Documents A through P are four iterations of a July 13, 2017 email and
attachments, resulting in 16 documents among which are several duplicates.  Government
Document Q is a heavily-redacted email chain dated April 25, 2018.  Despite the
lodgment of 17 documents with the Court, the parties have clarified that their dispute
relates to only one document, of which there are four identical copies: Government
Documents C, G, K and O.[1]  *See* Doc. No. 566.  The remaining 13 documents, over
which defendants also assert the attorney-client and/or deliberative process privileges, are
provided for "context."  *Id.* at 3.  To support their assertions of privilege, defendants
submit the declaration of Matthew S. Davies, Deputy Executive Director of Admissibility
and Passenger Programs for Customs and Border Protection's ("CBP") Office of Field
Operations ("Davies Decl.").[2]  Doc. No. 524-2.

The document at issue, which the Court will refer to as the "Draft Guidance," is a
November 2016 memorandum regarding metering which was attached to the July 13,
2017 email string.  Jt. Mot. at 7; Doc. No. 566 at 3.  Defendants claim the Draft Guidance
is protected in its entirety by the attorney-client and deliberative process privileges.  Jt.
Mot. at 3-6.  No other privilege or protection from disclosure is asserted as a basis for
clawing back the Draft Guidance.  Defendants designated the Draft Guidance
"Confidential" under the operative Protective Order.[3]  *See* Doc. No. 276.

/ /

/ /

---

[1] Government Documents C, G, K and O bear beginning Bates numbers AOL-DEF-00094034, AOL-DEF-00094026, AOL-DEF-00069029 and AOL-DEF-00069037, respectively.

[2] The Davies Declaration is also submitted in support of the Motion to Seal.  Doc. No. 522-2.

[3] The Protective Order provides that documents designated "Confidential" may disclosed only to counsel, the Court, the named parties and their officers, directors and employees, and certain third parties and witnesses.  Doc. No. 276 at 9-10.  Defendants also designated the remaining 13 documents either "Confidential" or "Highly Confidential" under the Protective Order.

## II.  LEGAL STANDARDS [4]

### A. The Attorney Client Privilege

"The attorney-client privilege protects confidential communications between attorney and client, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011).  The Ninth Circuit has established an eight-part test for the applicability of the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009).  Defendants bear the burden of proving each of these elements as the party asserting the privilege.  *Id.* at 608.

The attorney-client privilege is narrowly construed, *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002), and applies "'only when necessary to effectuate its limited purpose of encouraging complete disclosure by the client.'" *Griffith v. Davis*, 161 F.R.D. 687, 694 (C.D. Cal. 1995) (citations omitted).

### B.  The Deliberative Process Privilege

The deliberative process privilege is a qualified privilege that "exempts from discovery information reflecting advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1019 (E.D. Cal. 2010).  Its purpose is to foster quality government decision-making, and it "applies only if 'disclosure of [the] materials would expose an agency's decision[-]making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's

---

[4] The Court applies the federal common law of privilege in this case, which is brought under federal law. *See* Fed. R. Evid. 501 (federal common law "governs a claim of privilege" unless otherwise provided by rule or statute, or where "state law supplies the rule of decision").

ability to perform its functions." *Kowack v. U.S. Forest Svc.*, 766 F.3d 1130, 1135 (9th Cir. 2014) (citation omitted) (alteration in original).

A document must be both "predecisional" and "deliberative" to be protected by the privilege. *Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002). A predecisional document is one that not only predates the government decision or policy but also was "'prepared in order to assist [the] decisionmaker in arriving at his decision.'" *Id.* (citations omitted).  A deliberative document contains opinions, recommendations, or advice about government policies or decisions.  *See F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).  The initial burden of establishing the applicability of the privilege is on the government. *See North Pacifica*, *LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003).

With these principles in mind, the Court has reviewed the documents *in camera*. For the reasons that follow, the Court finds the Draft Guidance is not protected by either the attorney-client or the deliberative process privileges.  As the Court finds both privileges inapplicable, it does not reach the question whether defendants waived the attorney-client privilege or whether the deliberative process privilege yields to plaintiffs' need for the documents.  Since there is no dispute between the parties regarding defendants' assertion of privilege over Government Documents A, B, D, E, F, H, I, J, L, M, N, P and Q, the Court also does not address whether these documents are privileged.

## III.   DISCUSSION

### A. The Draft Guidance Is Not Protected by the Attorney-Client Privilege

Defendants claim that the Draft Guidance is protected by the attorney-client privilege because an unidentified attorney "helped write" the document by making "substantive edits" to it, and it was attached to emails which are themselves (assertedly) privileged.  Jt. Mot. at 7-8; *see also* Davies Decl., ¶9.  Of course, not every document that an attorney lays eyes or pen upon is privileged.  *See Martin*, 278 F.3d at 999 ("The fact that a person is a lawyer does not make all communications with that person privileged.").  A contrary rule would fly in the face of the Ninth Circuit's admonition that

"[b]ecause it impedes full and free discovery of the truth, the attorney-client privilege is [to be] strictly construed." *Weil v. Inv./Indicators*, *Research and Mgmt.*, *Inc.*, 647 F.2d 18, 24 (9th Cir. 1981); *see also Ruehle*, 583 F.3d at 607 (noting that the privilege "'ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle'") (citation omitted).  The Court thus turns to the question of whether defendants, as the "proponent[s] of the privilege," have met their burden of establishing aits elements.  *Southern Union Co. v. Southwest Gas Corp.*, 205 F.R.D. 542, 548 (D. Ariz. 2002) (rejecting claim of privilege where proponent did not prove all elements).

The attorney-client privilege "protects communications rather than information." *Gen-Probe Inc. v. Becton, Dickinson and Co.*, No. 09-cv-2319 BEN NLS, 2012 WL 3762447, at *2 (S.D. Cal. Aug. 29, 2012) (quoting *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1037 (2d Cir. 1984)).  On its face, the Draft Guidance is not a communication between an attorney and client, nor does it reveal the substance of any such communications.  *See id.* (noting that the attorney-client privilege does not "impede disclosure of information except to the extent that disclosure would reveal confidential communications"); *see also United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1070 (N.D. Cal. 2002) (noting that a party fails to carry its burden of demonstrating privilege where the document "does not contain or reveal a communication between attorney and client").

As defendants concede, the Draft Guidance was not written by an attorney.  Jt. Mot. at 7.  Defendants claim that "counsel" provided "substantive edits and advice" on the document, but as plaintiffs correctly point out, the Draft Guidance contains no redlining, handwriting or commentary from an attorney (or anyone else for that matter) purporting to give legal advice as to its contents.  Jt. Mot. at 7, 15.  Based on its own review, the Court cannot agree with defendants' conclusory statement that disclosure of the Draft Guidance "would reveal … the specific topics on which counsel was consulted and the reason for such consultation" or the "legal advice rendered by agency counsel." Davies Decl., ¶12.  Put simply, the Draft Guidance does not reference or expose any legal

advice sought or given, or that the client requested or expected any such exchange to be kept confidential.  Because defendants fail to "prov[e] each essential element" of the attorney-client privilege, *Ruehle*, 583 F.3d at 607, the Court finds that no attorney-client privilege ever attached to the Draft Guidance.  Given this finding, the Court need not address whether defendants waived the privilege.

The Court's analysis is not changed by the fact that the Draft Guidance was attached to a purportedly privileged email.  *See* Jt. Mot. at 8; Davies Decl., ¶9.  "[N]ot all attachments to, or enclosures with, [privileged] documents are necessarily protected by the privilege."  *O'Connor v. Boeing North Am.*, 185 F.R.D. 272, 280 (C.D. Cal. 1999) (collecting cases).  Instead, the party asserting the attorney-client privilege "must prove that each attachment is protected by privilege." *Our Children's Earth Found. v. Nat'l Marine Fisheries Svc.*, 85 F.Supp. 3d 1074, 1088 (N.D. Cal. 2015) (citations omitted); *see also Bruno v. Equifax Info. Svcs.*, No. 2:17-cv-327-WBS-EFB, 2019 WL 633454, at *8 (E.D. Cal. Feb. 14, 2019) (party claiming privilege is "required to show that the information in each email attachment is protected"); *accord Martin*, 278 F.3d at 1000 (party asserting privilege "must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which [the] privilege is asserted").  Thus, even assuming defendants have properly asserted the attorney-client privilege over the July 13, 2017 email string,[5] that does not confer privilege upon all attachments to it.  A contrary rule would render the attorney-client privilege virtually limitless in scope, and would "conflict[] with the strict view [of the privilege] applied under federal common law … ." *Ruehle*, 583 F.3d at 608 (finding error in the District Court's "liberal" application of the privilege).

/ /

---

[5] *See also ChevronTexaco*, 241 F. Supp. 2d at 1075 (finding that "[t]he mere fact" that counsel is copied on an email "will not shield" communications that are not privileged) and *Apple Inc. v. Samsung Elec. Co., Ltd.*, 306 F.R.D. 234, 240 (N.D. Cal. 2015) (noting that a "single email of a 'legal nature' does not privilege the entire email thread") (citations omitted).

1        Accordingly, defendants' request to claw back the Draft Guidance as protected by

2   the attorney-client privilege is denied.  The Court turns next to defendants' assertion that

3   the Draft Guidance is protected from disclosure by the deliberative process privilege.

4   **B. The Draft Guidance Is Not Protected by the Deliberative Process Privilege**

5        As set forth above, to qualify for the deliberative process privilege, the Draft

6   Guidance must be both predecisional and deliberative. *Carter*, 307 F.3d at 1089.

7   Defendants assert that these requirements are met because the Draft Guidance "is a non-

8   final, predecisional policy document" that was "never issued to the field."  Jt. Mot. at 10.

9   The Court disagrees, and finds that the Draft Guidance is neither predecisional nor

10  deliberative.

11       To establish this privilege, defendants must "identify a specific decision to which

12  the document is predecisional." *Maricopa Audubon Soc'y v. U.S. Forest Serv*., 108 F.3d

13  1089, 1094 (9th Cir. 1997); *see also United States ex rel. Poehling v. UnitedHealth*

14  *Group, Inc.*, No. CV 16-8697 MWF (SSx), 2018 WL 8459926, at *13 (C.D. Cal. Dec. 14,

15  2018) (collecting cases).  In that regard, defendants state that the Draft Guidance was part

16  of a group of email communications and other documents exchanged to develop a

17  response to an "inquiry from an outside entity."  Davies Decl., ¶6; *see also id.*, ¶8

18  (documents were exchanged as part of the "process for preparing the response"); ¶9

19  (documents related to "internal discussions regarding the request from the outside

20  entity"); ¶10 (same); ¶11 (documents were "part of an ongoing process of considering the

21  most appropriate response" to the inquiry).  The deliberative process privilege protects

22  "an agency's internal deliberations over ***policy or legal issues***" from public scrutiny.

23  *Nat'l Immigration Law Ctr. v. U.S. Immigration and Customs Enforcement*, No. CV 14-

24  9632 PSG (MANx), 2015 WL 12684437, at *9 (C.D. Cal. Dec. 11, 2015) (emphasis

25  added).  It is not meant "to protect Government secrecy pure and simple." *Dep't of*

26  *Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001).  Defendants'

27  deliberations regarding how best to address public relations matters or "possible

28  / /

responses to an inquiry received from an outside entity" (Davies Decl., ¶11) are not the type of policy decisions the privilege is intended to protect.

Moreover, it is not enough to say that the Draft Guidance was "not the final version" of the metering policy and was later "updated." Jt. Mot. at 10. First, "[m]aterial which predates a decision chronologically, but did not contribute to that decision, is not predecisional in any meaningful sense." *Carter*, 307 F.3d at 1089 (citations omitted). Even if defendants had identified "a specific decision-making process" to which the Draft Guidance relates (as opposed to proposed communications with a third party about that policy decision), defendants have not established the "role" the Draft Guidance in that process. *Id.*; *see also Cal. Native Plant Soc'y v. U.S. Envtl. Prot. Agency*, 251 F.R.D. 408, 413 (N.D. Cal. 2008). Second, "'draft'" documents are not protected deliberative materials merely "because they may have been 'subject to revision.'" *Nat'l Res. Def. Council*, 388 F. Supp. 2d at 1107 (citations omitted); *see also Poehling*, 2018 WL 8459926, at *13 ("'simply designating a document as a 'draft' does not automatically make it privileged under the deliberative process privilege'") (citation omitted). The fact that the Draft Guidance was "not finalized" in July 2017 (Davies Decl., ¶9) does not, standing alone, establish that it is predecisional.

The Draft Guidance is also not deliberative. "[F]or a document to be 'deliberative' it should disclose the personal opinions or 'mental processes of decision-makers.'" *Cal. Native Plant Soc'y*, 251 F.R.D. at 413 (quoting *Carter*, 307 F.3d at 1090). The privilege does not protect "documents that do not express subjective opinions or whose release is unlikely to expose an agency's decision[-]making process [so] as to discourage 'frank and open discussions of ideas.'" *Or. Natural Desert Ass'n v. Cain*, No. 3:09-CV-00369-PK, 2016 WL 7104845, at *4 (D. Or. Dec. 5, 2016) (citations omitted). Here, defendants' conclusory statement that the Draft Guidance "reflect[s] the Agency's ongoing decision-making process" is not borne out by a review of the document, which in fact shows it to be devoid of "opinions, recommendations, and reactions to" any particular policy under consideration. Davies Decl., ¶¶11, 17. For that reason, the Court

8

is unable to find that disclosure of the Draft Guidance "would expose [defendants'] decision[-]making process in such a way as to discourage candid discussion within the agency and thereby undermine [defendants'] ability to perform its functions." *Carter*, 307 F.3d at 1090. It may be true that "CBP personnel must be free to communicate honestly and openly about all relevant facts, as well as their own opinions, recommendations and reactions." Davies Decl., ¶17. Defendants, however, have simply not shown how disclosure of the Draft Guidance would "chill" this process. *See Thomas*, 715 F. Supp. 2d at 1029 (finding conclusory statement that disclosure would "have a significant chilling effect" on agency deliberations insufficient to support deliberative process privilege); *see also Greenpeace v. Nat'l Marine Fisheries Serv.*, 198 F.R.D. 540, 543 (W.D. Wash. 2000) (to support assertion of privilege, government must "provide 'precise and certain' reasons for preserving the confidentiality" of information).

Furthermore, defendants do not meaningfully address how the Protective Order in place in the action would mitigate these concerns, asserting only that the Protective Order "cannot fully protect" them. Jt. Mot. at 11. "The deliberative process privilege is designed to allow agencies to freely explore possibilities, engage in internal debates, or play devil's advocate without fear of ***public*** scrutiny." *Thomas*, 715 F. Supp. 2d at 1019 (emphasis added). But here, defendants designated the Draft Guidance "Confidential," thereby prohibiting disclosure of the documents outside of the litigation. *See* Doc. No. 276 at 9-10. To the extent that the Draft Guidance could reveal any deliberative process, the Court finds that the Protective Order "will sufficiently protect [defendants'] interests." *In re McKesson Gov't Entities Avg. Wholesale Price Litig.*, 264 F.R.D. 595, 602 (N.D. Cal. 2009).

For the foregoing reasons, the Court finds the deliberative process privilege does not apply to the Draft Guidance. As such, the Court does not reach the issue of whether plaintiffs' need for the document overcomes the privilege. *See* Jt. Mot. at 11-12.

/ /

/ /

9

# IV. MOTION TO SEAL

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citation omitted). A party seeking to seal a judicial record bears the burden of overcoming the strong presumption of access. *Foltz*, 331 F.3d at 1135. Parties requesting sealing of a non-dispositive motions (such as the instant privilege dispute) must make a "'particularized showing'" of "'good cause.'" *Kamakana*, 447 F.3d at 1180 (citation omitted). "Good cause exists where the party seeking protection shows that specific prejudice or harm will result" if the request to seal is denied. *Anderson v. Marsh*, 312 F.R.D. 584, 594 (E.D. Cal. 2015). Even where good cause for sealing exists, the Court has a responsibility to ensure that ***only*** the information that is necessary to protect the party from harm is obscured from the public's view. *See In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 425 (9th Cir. 2011).

Defendants' declarant states that disclosure of Government Documents A through Q – including the Draft Guidance – would lead to "undue public scrutiny" of DHS's deliberative process. Davies Decl., ¶18; *see also* Sealing Mot. at 3. Such scrutiny could in turn "stifle" DHS personnel's participation in future decision-making discussions. Davies Decl., ¶18; Sealing Mot. at 3. While these articulated harms were insufficient to establish that the documents are not discoverable, the Court finds that defendants have identified a particularized harm that would result in the ***public*** disclosure of the contents of the documents.[6] *Anderson*, 312 F.R.D. at 594. Furthermore, the parties have proposed

---

[6] Defendants also claim the information should be sealed because it would reveal privileged attorney-client communications. As explained above, the Court finds the Draft Guidance is not an attorney-client communication.

limited redactions that obscure only those portions of the Joint Motion that quote from or otherwise reveal the contents of Government Documents 1 through 35. Therefore, there is good cause to seal the Joint Motion.[7] Accordingly, the Court **GRANTS** the parties' Motion to Seal.

## ORDER

For the reasons stated herein, it is hereby **ORDERED**:

1. Defendants' request to claw back Government Documents C, G, K and O [Doc. No. 524] is **DENIED**.

2. Defendants' request to claw back Government Documents A, B, D, E, F, H, I, J, L, M, N, P and Q [Doc. No. 524] is **DENIED AS MOOT**.

3. The Motion to Seal [Doc. No. 522] is **GRANTED**.

**IT IS SO ORDERED**.

Dated: November 2, 2020

Hon. Karen S. Crawford
United States Magistrate Judge

---

[7] The Court makes no finding as to defendants' assertion that there are "compelling reasons … to seal portions of the Joint Motion that would reveal the content of the Documents." Sealing Mot. at 4.

3:17-cv-2366-BAS-KSC