MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:   +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, | Case No.:  17-cv-02366-BAS-KSC |
| Plaintiffs, | |
| v. | **EXHIBIT 4 TO PLAINTIFFS' MOTION FOR CLARIFICATION OF THE PRELIMINARY INJUNCTION** |
| Chad F. Wolf,[1] *et al.*, | |
| Defendants. | *FILED UNDER SEAL* |

---

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  bazmy@ccrjustice.org
  Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
  gschwarz@ccrjustice.org
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  aguisado@ccrjustice.org
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  sarah.rich@splcenter.org
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  rebecca.cassler@splcenter.org
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  kwalters@immcouncil.org
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

```
AL OTRO LADO, INC., ET    )
AL.,                      )
    PLAINTIFFS,           )
                          )
VS.                       ) CASE NO.
                          ) 17-cv-02366-BAS-KSC
                          )
KEVIN K. MCALEENAN, ET    )
AL.,                      )
    DEFENDANTS.           )
```

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL AND VIDEOTAPED DEPOSITION OF
RODNEY HARRIS
JUNE 2, 2020

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL AND VIDEOTAPED DEPOSITION of RODNEY HARRIS, produced as a witness at the instance of the Plaintiff, and duly sworn, was taken in the above-styled and numbered cause on June 2, 2020, from 10:23 a.m. to 6:27 p.m., before Delia Ordonez, CSR in and for the State of Texas, reported by machine shorthand, via Webex Magna LegalVision.

Magna Legal Services
866.624.6221
www.MagnaLS.com



```
                                                           Page 2
 1                  A P P E A R A N C E S
 2   FOR THE PLAINTIFFS:
 3       Rebecca Cassler
         Sara Rich
 4       Southern Poverty Law Center
         1101 17th Street, N.W., Suite 705
 5       Washington, D.C. 20036
         202.355.4471
 6       Rebecca.cassler@splcenter.org
         Sara.rich@splcenter.org
 7
         Allison Parr
 8       Steve Medlock
         Mayer Brown
 9       1999 K Street, N.W.
         Washington, D.C. 20006
10       202.263.3221
         AWParr@mayerbrown.com
11
     FOR THE DEFENDANTS:
12
         Ari Nazarov
13       Dhruman Y. Sampat
         U.S. Department of Justice
14       Office of Immigration Litigation
         P.O. Box 868, Ben Franklin Station
15       Washington, D.C. 20044
         202.598.8259
16       Ari.Nazarov@usdoj.gov
         Dhruman.y.sampat@usdoj.gov
17
18   ALSO PRESENT:
19       Louisa Slocum, CBP
20       Benjamin Wolarsky
21   THE VIDEOGRAPHER:
         Noah Fox
22
     THE MAGNA LEGAL TECHNICIAN:
23
         Kevin Cranford
24
25
```



Page 224

1  it, I don't recall it ever having affected our
2  operations. If we were ordered to do something with
3  the -- regarding the injunction to it, then I don't
4  recall. I don't recall. I'm sorry.
5      Q. (BY MS. CASSLER) No, it's okay. Okay. Let's
6  move on to a different topic.
7          We talked about the list keepers in Mexico
8  earlier today. Do you remember that?
9      A. Yes.
10     Q. Would it be possible for LFO port personnel to
11 obtain copies of the wait list from the Mexican list
12 keepers?
13         MR. NAZAROV: Objection, form.
14     A. Would it be possible? Yes. I mean, we could
15 ask.
16     Q. (BY MS. CASSLER) After the Ninth Circuit
17 listed -- this question doesn't make sense. Hold on.
18         Has CBP headquarters ever requested that
19 any component of LFO ever request those lists from the
20 Mexican list keepers?
21         MR. NAZAROV: Objection, form.
22     A. Not that I remember. We've been --
23 requested -- most of the requests are just about
24 numbers, like, "Hey, how many people are waiting to come
25 across?" But I don't recall having been asked to



Case 3:17-cv-02366-BAS-KSC  Document 626-1  Filed 11/13/20  PageID.55229
Page 6 of 11

Page 280

1        A.   Is it just the one page here?
2        Q.   Yes, it's just the one page.
3        A.   Yes.  Yes, I read the three -- the three
4   messages.
5        Q.   Great.  Thank you.  So I wanted to start at the
6   bottom of the page.  This is an e-mail from 
7   His e-mail address indicates that he is a State
8   Department employee.  And the subject line of the e-mail
9   is:  "List of asylum seekers at casa migrants Nazareth."
10            Is that correct?
11       A.   Yes.
12       Q.   And in this e-mail, he states:  "We met with
13  the director of casa migrants Nazareth yesterday and he
14  provided us with a list of asylum seekers currently at
15  the shelter waiting for INM to give them time to cross
16  the bridge.  Let me know if this is useful.  He said he
17  can send this to us every time they have a major change
18  in the number or composition."
19            Did I read that correctly?
20       A.   Yes.
21       Q.   Thank you.  In looking at the next message up,
22  you've forwarded Mr. ████'s communication to
23  Mr. Crawford and Mr. Barrera; is that correct?
24       A.   Yes.
25       Q.   And Mr. Barrera, is he the -- what was his role



Page 281

```
 1   at Laredo?
 2        A.   He's held several positions over the years, but
 3   I think at this particular time, if you look at that
 4   last -- the top of the message, it says chief of staff.
 5        Q.   Thank you.  And Mr. Crawford?
 6        A.   At that time, I believe he was the deputy port
 7   director.
 8        Q.   Thank you so much.  And in this e-mail, you ask
 9   them:  "Would you have any interest in getting these
10   lists?"
11             Correct?
12        A.   Yes.
13        Q.   And just going to the top of the document,
14   Mr. Barrera's response, he says:  "They help in that we
15   would at least know what is coming our way and would
16   allow us to prepare for anything out of the ordinary."
17             Correct?
18        A.   Yes.
19        Q.   And is Mr. Barrera saying that having access to
20   these wait lists would be operationally beneficial for
21   the Laredo Port of Entry?
22        A.   That's the way I read, yes.
23        Q.   Do you know -- did you ever respond to
24   ▮▮▮▮▮▮▮▮▮ e-mail and follow up about these lists?
25        A.   Yeah.  So after having received that
```



Page 282

1  response -- excuse me. So having received that response
2  from the port, I would have responded to [redacted] and
3  said, yes, you know, the port's interested in seeing
4  this -- this information. I wouldn't know if that --
5  you know, from my perspective, which is probably why I
6  didn't respond and I sent it to the port for comment, is
7  that that shelter is only one of the shelters in Nuevo
8  Laredo, and they have numerous shelters. So just one --
9  having the information from one shelter doesn't really
10 give anyone a comprehensive picture of what's going on
11 in Nuevo Laredo, which is the city across from Laredo,
12 Texas. So I would have, you know, an interest in the
13 overall numbers, but the actual list, no.
14      Q. Did you receive these lists from --
15      A. I'm sorry?
16      Q. -- from this shelter?
17         Did you end up receiving the list from this
18 shelter?
19      A. I don't recall, but probably.
20      Q. Would you happen to recall how frequently you
21 received these lists?
22      A. No, I don't. If -- when I did receive them, I
23 would have just forwarded them to the port.
24      Q. Would the list be stored anywhere, perhaps in
25 your e-mail?



Page 283

1    A.   Oh, yes.  As mentioned before, I made it a
2    point to save anything even remotely similar to this as
3    part of the litigation hold that we're under.
4    Q.   Got it.  And do you recall whether the list
5    would have come directly from the shelter or from
6    ▇▇▇▇ from the State Department?
7    A.   I don't recall having ever received anything
8    directly from the shelter, so it would have come from
9    ▇▇▇▇
10   Q.   Thank you.  And you mentioned that this
11   particular shelter, casa migrants Nazareth, is just one
12   of many shelters serving that area, correct?
13   A.   Yes.
14   Q.   Have you ever received lists from the other
15   shelters in the area?
16   A.   I may have.  I don't recall.  I wouldn't be
17   surprised if I did, but it probably would have
18   been -- or it would have been forwarded from the State
19   Department and, more than likely, ▇▇▇▇ yes.
20   Q.   Thank you.  And either from ▇▇▇▇ or
21   from -- or from any other -- any other entity, have you
22   ever received any wait lists at shelters that are
23   relevant to the other POEs within the Laredo LFO?
24             MR. NAZAROV:  Objection, form.
25             MS. PARR:  I apologize.  I'll restate that.



Page 284

1      Q.   (BY MS. PARR)  Have you ever received any wait
2   lists of asylum seekers from other shelters?
3      A.   I believe so.  I recall having received
4   messages from the ports, but from what I remember, a
5   port of entry would have just sent us something, "Hey,
6   FYI, you know, we -- we got this list from -- you know,
7   from one of the shelters."  But it's -- I never saw that
8   as being -- and I don't think it is -- even in this
9   case, it's not the -- you know, the comprehensive "the
10  list" that everyone refers to.  It's just a list of
11  people that happened to be waiting at that particular
12  shelter.
13     Q.   Thank you, Mr. Harris.  And did you ever
14  receive any lists from INM?
15     A.   I don't recall having received anything
16  directly from INM.
17     Q.   And do you know if any ports within LFO
18  received any lists from INM?
19     A.   The ports, they may have, but I -- I don't
20  recall.  I don't recall.  No, not that I recall.
21     Q.   Thank you, Mr. Harrison.
22     A.   But I would be inclined to think that they
23  have.
24     Q.   I'm sorry.  Could you please repeat that?
25     A.   I said I will be inclined to think that they



Page 285

1  have.  Whether it -- how detailed it was, you know, what
2  was on it, I don't know, but I don't recall anything
3  specifically.
4       Q.  Okay.  But as we said, it -- it's possible, and
5  actually, you -- you think they probably have, correct?
6       A.  Yeah, it -- it's possible, but I think that
7  whatever they received would have been similar to this,
8  not a comprehensive list, just, you know, a list of
9  what -- you know, who was staying in the shelter or, you
10 know, what the -- the nationality breakdown would have
11 been.  That's always helpful information.  So that's
12 kind of the nature I think it would have taken, but I
13 don't recall --
14      Q.  Okay.
15      A.  -- specifics to answer your question.  I'm
16 sorry.
17      Q.  Thank you so much, Mr. Harris.  I really
18 appreciate your time.
19           MS. PARR:  Can we go off the record just
20 very briefly?
21           THE VIDEOGRAPHER:  We're going off the
22 video record.  The time is 5:43 p.m.
23           (Break was taken.)
24           THE VIDEOGRAPHER:  We are back on the video
25 record.  The time is 6:10 p.m.  Counsel, you may

