JEFFREY BOSSERT CLARK
Acting Assistant Attorney General,
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | Hon. Cynthia A. Bashant |
| v. | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' *EX PARTE* EMERGENCY MOTION TO ENFORCE PRELIMINARY INJUNCTION AND TEMPORARILY ENJOIN REMOVAL OF PRELIMINARY INJUNCTION CLASS MEMBER** |
| CHAD F. WOLF, Acting Secretary of Homeland Security, *et al.*, in their official capacities,* | |
| *Defendants* | |

---

* Pursuant to Fed. R. Civ. P. 25(d), Acting Commissioner Mark A. Morgan is automatically substituted as a Defendant for former Commissioner McAleenan, and Executive Assistant Commissioner William A. Ferrara is automatically substituted as a Defendant for former Executive Assistant Commissioner Owen.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ..........................................................................1

BACKGROUND ............................................................................2

   A.  The Rule and This Court's Preliminary-Injunction Order ...........2

   B.  Applicant's Proceedings .......................................................3

STANDARD OF REVIEW ...............................................................7

ARGUMENT ................................................................................7

  I.  The Preliminary-Injunction Order Does Not Provide Authority to Enjoin Applicant's Removal. ...............................................7

    A.  Application of the Rule to Applicant is Consistent with the Preliminary-Injunction Order. .......................................7

    B.  Applicant Fails to Establish that She was Subject to Metering. ...............................................................9

    C.  Any Improper Application of the Rule was Harmless. ..........12

  II.  Plaintiffs are Not Entitled to Relief Under the Traditional Four-Factor Test. ...............................................................13

CONCLUSION ............................................................................16

1

## <u>TABLE OF AUTHORITIES</u>

2

**<u>Federal Cases</u>**

3

*Am. Trucking Ass'ns v. City of Los Angeles*,

4
    559 F.3d 1046 (9th Cir. 2009) ........................................................................7

5

*Avendano-Ramirez v. Ashcroft*,

6
    365 F.3d 813 (9th Cir. 2004) .......................................................................13

7

*Capital Area Immigrants' Rights Coalition v. Trump*,

8
    — F. Supp. 3d —, 2020 WL 3542481 (D.D.C. 2020) ....................................6

9

*D.A.M. v. Barr*,

10
    — F. Supp. 3d —, 2020 WL 5525056 (D.D.C. Sept. 15, 2020) ................8, 9

11

*D.A.M. v. Barr*,

12
    No. 20-cv-1321, 2020 WL 4218003 (D.D.C. July 23, 2020)................ 14, 15

13

*DHS v. Thuraissigiam*,

14
    140 S. Ct. 1959 (2020)..................................................................................14

15

*E. Bay Sanctuary Covenant v. Trump*,
    950 F.3d 1242 (9th Cir. 2020) .....................................................................16

16

*Grace v. Barr*,

17
    — F. 3d —, 2020 WL 4032652 (D.C. Cir. July 17, 2020)...........................14

18

*Harper v. Va. Dept. of Taxation*,

19
    509 U.S. 86 (1993)..........................................................................................9

20

*Heartland By-Products, Inc. v. United States*,

21
    568 F.3d 1360 (Fed. Cir. 2009) ......................................................................9

22

*Jimenez-Angeles v. Ashcroft*,

23
    291 F.3d 594 (9th Cir. 2002) .......................................................................15

24

*Landon v. Plasencia*,

25
    459 U.S. 21 (1982)........................................................................................16

26

*M.M.V. v. Barr*,

27
    No. 19-cv-2773, 2020 WL 2119744 (D.D.C. May 1, 2020).........................14

28

*Montero–Martinez v. Ashcroft*,
    277 F.3d 1137 (9th Cir. 2002) ....................................................................13

*MVC Technologies USA Inc. v. Kendrick*,
    No. 19-cv-3247, 2019 WL 9598365 (D. Ariz. Oct. 15, 2019) ......................7

*Nken v. Holder*,
    556 U.S. 418 (2009)............................................................................... 2, 16

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999)......................................................................... 2, 15, 16

*Spallone v. United States*,
    493 U.S. 265 (1990).......................................................................................7

*Teague v. Lane*,
    489 U.S. 288 (1989).......................................................................................9

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008)...........................................................................................7

**<u>Federal Statutes</u>**

8 U.S.C. § 1225(b)(1)(B)(iii)(I) ...........................................................................15

8 U.S.C. § 1252(a)(5) ...........................................................................................15

8 U.S.C. § 1252(b)(9) ...........................................................................................15

8 U.S.C. § 1252(e) ........................................................................................ 2, 14

8 U.S.C. § 1252(g) ........................................................................................ 2, 15

8 U.S.C. § 1252(a)(2)(A) ............................................................................. 1, 2, 13

**<u>Federal Regulations</u>**

8 C.F.R. § 1208.30(g)(2)(iv)(A) ..............................................................................8

**<u>Other Authorities</u>**

Asylum Eligibility and Procedural Modifications,
    84 Fed. Reg. 33,829 (July 16, 2019) ..................................................... 1, 2, 3

iii

# **INTRODUCTION**

For two reasons, this Court should deny Plaintiffs' *Ex Parte* Emergency Motion to Enforce Preliminary Injunction and Temporarily Enjoin Removal of Preliminary Injunction Class Member (ECF No. 574).

*First*, the government did not violate the Order Granting Plaintiffs' Motion for Preliminary Injunction (ECF No. 330; PI Order) by applying the rule to ███ ████████████████ (Applicant) before the order was issued on November 19, 2019, so this Court's inherent authority to enforce the preliminary-injunction order does not provide a basis to enjoin Applicant's removal. U.S. Citizenship and Immigration Services (USCIS) issued Applicant a negative credible-fear determination on October 29, 2019 because Applicant was determined to be ineligible for asylum pursuant to the interim final rule entitled "Asylum Eligibility and Procedural Modifications," 84 Fed. Reg. 33,829 (July 16, 2019) (the transit rule), and because Applicant's testimony was not credible. An immigration judge affirmed the negative determination on November 14, 2019, rendering it final. This determination was and is permissible under the preliminary-injunction order because the order is prospective only, and it does not require the government to reopen and reverse a negative credible-fear determination issued pursuant to the rule that became final before the injunction issued. Moreover, USCIS screened Applicant for class membership in a two-hour interview on March 25, 2020 (for which her attorney declined to be present and did not seek to reschedule), and Applicant failed to establish that she was subject to metering prior to the rule's effective date. Plaintiffs' belated attorney declarations do not show otherwise. Thus, there is no violation of the preliminary injunction and, consequently, no basis to enjoin Applicant's removal in the name of enforcing the injunction. But even if there had been a violation, any error would have been harmless because the adverse credibility determination (which, under 8 U.S.C. § 1252(a)(2)(A)(iii), is entirely outside the scope of judicial review) supplies an independent basis for Applicant's negative credible-fear determination.

*Second*, Plaintiffs do not establish their entitlement to injunctive relief under the traditional four-factor test. Plaintiffs are not likely to succeed on the merits of their claim because the Court lacks independent authority to enjoin Applicant's removal under the Immigration and Nationality Act (INA), at 8 U.S.C. §§ 1252(a)(2)(A), (e), (g). Moreover, Plaintiffs fail to show that the equities and public interest favor a stay of Applicant's removal. Class counsel attests that Applicant fears returning to Cameroon, but Applicant's own testimony was so inconsistent that the asylum officer could not be sure of Applicant's true identity. Moreover, Applicant, through counsel, twice sought reconsideration of her negative credible-fear determination. She also received an *Al Otro Lado* screening interview. But at no point did she claim or establish that she was entitled to the benefits of the *Al Otro Lado* preliminary injunction. "There is always a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings [that Congress] established, and 'permit[s] and prolong[s] a continuing violation of United States law.'" *Nken v. Holder*, 556 U.S. 418, 436 (2009) (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.* (*AADC*), 525 U.S. 471, 490 (1999)). That interest is severely undermined when a party at the eleventh hour raises arguments that have long been available to it for the purpose of thwarting a lawful removal. Plaintiffs fail to establish their entitlement to emergency injunctive relief under the four-factor test.

This Court should deny Plaintiffs' *Ex Parte* Motion.

## BACKGROUND

### A.    The Rule and This Court's Preliminary-Injunction Order

On July 16, 2019, the Attorney General and the Acting Secretary of Homeland Security promulgated the transit rule. *See* 84 Fed. Reg. 33,829. With certain exceptions, the rule renders ineligible for asylum "any alien who enters, attempts to enter, or arrives in the United States across the southern land border on or after July 16,

DEFS.' OPP. TO PLS.' MOT. TO
ENFORCE PRELIM. INJ.
Case No. 3:17-cv-02366-BAS-KSC

2019, after transiting through at least one country outside the alien's country of citizenship, nationality, or last lawful habitual residence en route to the United States," unless she applied for and was denied protection from persecution or torture in at least one such country. *Id.* at 33,843.

On November 19, 2019, this Court granted a preliminary injunction. It certified a provisional class of "all non-Mexican asylum-seekers who were unable to make a direct asylum claim at a U.S. [port of entry] before July 16, 2019 because of the U.S. Government's metering policy, and who continue to seek access to the U.S. asylum process." PI Order 36. The Court ordered: "Defendants are hereby enjoined from applying the [rule] to members of the aforementioned provisionally certified class and ordered to return to the pre-[rule] practices for processing the asylum applications of members of the certified class." *Id.* (emphases altered).

## B.   Applicant's Proceedings

Applicant, a citizen of Cameroon, arrived in the United States on July 29, 2019, at the San Ysidro Port of Entry in San Diego, California. *See* Gov't Ex. 1, at 32.[1] She was found inadmissible and ordered removed from the United States pursuant to 8 U.S.C. § 1225(b)(1). *See* Gov't Ex. 1, at 42.

On August 30, 2019, and October 23, 2019, an asylum officer conducted credible-fear interviews with Applicant in French through an interpreter. *See* Gov't Ex. 1, at 6–19, 21–30. Applicant testified that she traveled through multiple countries before arriving in the United States, and that she did not apply for asylum in any of them. *See* Gov't Ex. 1, at 26. The asylum officer determined that Applicant was ineligible for asylum pursuant to the rule. *See* Gov't Ex. 1, at 26.

Based on several unexplained discrepancies in Applicant's testimony, the asylum officer also found Applicant not credible and that Applicant failed to establish her identity with a reasonable degree of certainty. Gov't Ex. 1, at 35, 36, 37–38. For

---

[1] Pin cites are to the ECF-generated pagination.

example, the officer explained that in February 2015, Applicant participated in a visa interview with a consular officer. The consular officer wrote in the notes: ███ 8 U.S.C. 1202(f) ███ Gov't Ex. 1, at 37. In April 2015, Applicant participated in another visa interview with a consular officer, and this officer wrote in the notes: ███ 8 U.S.C. 1202(f) ███ Gov't Ex. 1, at 37. But, the asylum officer stated, in Applicant's credible-fear interview, Applicant testified that "she had one child at the time of her interviews." Gov't Ex. 1, at 37. Applicant stated that there was a discrepancy because "her friend completed the visa applications on her behalf." Gov't Ex. 1, at 37. The asylum officer determined that this explanation was not reasonable because "[t]he information regarding her children did not come from her visa applications; rather, the information came from" Applicant herself during "the consular interviews." Gov't Ex. 1, at 37.

As another example, the asylum officer noted that Applicant stated on both of her visa applications that ███ 8 U.S.C. 1202(f) ███. *See* Gov't Ex. 1, at 37–38. At the second visa interview, Applicant provided ███ 8 U.S.C. 1202(f) ███. *See* Gov't Ex. 1, at 37–38. But, the asylum officer stated, Applicant testified at the credible-fear interview that "she was never married, and that the ███ 8 U.S.C. 1202(f) ███" was just a friend. Gov't Ex. 1, at 38. Applicant stated that there was a discrepancy because this friend listed himself as the husband on the visa applications and Applicant did not review them before they were filed, *see* Gov't Ex. 1, at 38, but Applicant could not explain how the consular officer's interview notes included ███ 8 U.S.C. 1202(f) ███, *see* Gov't Ex. 1, at 28–29 ("I don't know.").

The asylum officer explained that these and other discrepancies in Applicant's testimony "taken alone could be explained away, especially when weighed against the humanitarian benefit being sought. However taken together, they call into question [Applicant's] identity." Gov't Ex. 1, at 38. The asylum officer found that "[Applicant] is not credible in the totality of circumstances." Gov't Ex. 1, at 38.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Applicant sought de novo review of the asylum officer's determination from an immigration judge. *See* Gov't Ex. 1, at 40. On November 14, 2019, the immigration judge conducted the review and heard testimony from Applicant. *See* Gov't Ex. 2, at 14. At the conclusion of the review, the immigration judge affirmed USCIS's negative credible-fear determination and ordered the case be returned to DHS for Applicant's removal. Gov't Ex. 2, at 14. The immigration judge concluded that Applicant failed to establish a significant possibility that she would be persecuted on a protected ground or intentionally subjected to serious harm by the government if returned. *See* Gov't Ex. 2, at 14. The immigration judge wrote, "Respondent not credible in totality of circumstances." Gov't Ex. 2, at 14.

On December 23, 2019, Applicant, through counsel, sent USCIS a "Request/Motion for Reconsideration of Negative Reasonable Fear Finding." *See* Gov't Ex. 1, at 45–138. Applicant included a written statement intended to address "the[] inconsistencies" in her testimony and requested that USCIS reconsider its adverse credibility determination in light of the statements and other attached evidence. Gov't Ex. 1, at 47. The Request/Motion did not seek reconsideration based on this Court's November 19, 2019 preliminary injunction order. *See* Gov't Ex. 1, at 45–57. USCIS declined the request. *See* Gov't Ex. 1, at 140.

On March 19, 2020, a USCIS asylum officer initiated an *Al Otro Lado* screening interview with Applicant to assess whether she was subject to this Court's preliminary-injunction order. *See* Gov't Ex. 1, at 142–43. USCIS postponed the interview at Applicant's request to allow her to contact her attorney. *See* Gov't Ex. 1, at 142–43.

On March 25, 2020, a USCIS asylum officer conducted Applicant's *Al Otro Lado* screening interview in French through an interpreter. *See* Gov't Ex. 1, at 145–50. At the beginning of the interview, the asylum officer spoke with Applicant's attorney on the telephone. *See* Gov't Ex. 1, at 146–47. The attorney declined to participate in the interview, did not instruct a legal assistant to listen to the interview by

1    telephone, and did not ask for the interview to be rescheduled. *See* Gov't Ex. 1, at

2    146–47. Applicant chose to proceed without her attorney. *See* Gov't Ex. 1, at 147.

3        Applicant testified that she crossed the border from Mexico into the United

4    States on July 29, 2019. Gov't Ex. 1, at 147. She said that she tried to cross the border

5    at the San Ysidro Port of Entry "[j]ust once." Gov't Ex. 1, at 148. Applicant con-

6    firmed that the July 29, 2019 crossing at San Ysidro was "[her] first and only attempt

7    to cross the border." Gov't Ex. 1, at 148. When asked, "Did you ever place your

8    name on a list to enter the US through a port of entry besides San Ysidro on July 29,

9    2019," Applicant responded, "No." Gov't Ex. 1, at 148. When asked, "While you

10   were in Tijuana, were you told to come back to a POE to be processed at another

11   day," Applicant responded, "No." *See* Gov't Ex. 1, at 148. At the conclusion of the

12   interview, the asylum officer summarized and read her understanding of Applicant's

13   testimony as follows: "You testified that you left Cameroon sometime in March

14   2019. You arrived in Tijuana Mexico in May 2019.  You testified that you worked

15   in Tijuana for couple of months to earn some money. You stated that you never

16   wrote your name down on a list and your first and only attempt to cross the border

17   into the US was on July 29 at San Ysidro." Gov't Ex. 1, at 148–49. The asylum

18   officer asked, "Is this summary correct," and Applicant stated, "Yes." Gov't Ex. 1,

19   at 149.

20       On or about August 24, 2020, Applicant, through counsel, filed a motion with

21   the Otay Mesa Immigration Court to reopen her proceedings and grant a credible-

22   fear interview. *See* Gov't Ex. 2, at 5–20. Applicant argued that on June 30, 2020, the

23   U.S. District Court for the District of Columbia vacated the transit rule on procedural

24   grounds in *Capital Area Immigrants' Rights Coalition v. Trump* (*CAIR*), — F. Supp.

25   3d —, 2020 WL 3542481 (D.D.C. 2020), and consequently, the rule "should no

26   longer be considered a bar to requesting asylum." Gov't Ex. 2, at 7; *see also* Gov't

27   Ex. 2, at 9–11. The motion did not seek relief based on this Court's preliminary-

28   injunction order or the Ninth Circuit's order denying the government's motion for a

DEFS.' OPP. TO PLS.' MOT. TO
ENFORCE PRELIM. INJ.
Case No. 3:17-cv-02366-BAS-KSC

1  stay pending appeal. *See* Gov't Ex. 2, at 5–20. On September 8, 2020, the immigra-
2  tion court rejected the filing. *See* Gov't Ex. 2, at 22–23.

### STANDARD OF REVIEW

4  A court has inherent authority to enforce compliance with its lawful orders.
5  *See MVC Technologies USA Inc. v. Kendrick*, No. 19-cv-3247, 2019 WL 9598365,
6  at *1 (D. Ariz. Oct. 15, 2019) (citing *Spallone v. United States*, 493 U.S. 265, 276
7  (1990)). When ordering compliance, a court "is obliged to use the least possible
8  power adequate to the end proposed." *Spallone*, 493 U.S. at 276 (citations and quo-
9  tation marks omitted).

10  Separately, injunctive relief is an "extraordinary remedy that may only be
11  awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v.*
12  *NRDC, Inc.*, 555 U.S. 7, 22 (2008). A party seeking a preliminary injunction must
13  show that "'[they are] likely to succeed on the merits, that [they are] likely to suffer
14  irreparable harm in the absence of preliminary relief, that the balance of equities tips
15  in [their] favor, and that an injunction is in the public interest.'" *Am. Trucking Ass'ns*
16  *v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555
17  U.S. at 20).

### ARGUMENT

**I.    The Preliminary-Injunction Order Does Not Provide Authority to Enjoin Applicant's Removal.**

**A.    Application of the Rule to Applicant is Consistent with the Prelim-inary-Injunction Order.**

This Court's inherent authority to enforce the preliminary injunction does not
provide a basis to enjoin Applicant's removal because the application of the rule to
Applicant was and is lawful and is consistent with the Court's order. The prelimi-
nary-injunction order was issued on November 19, 2019. The order states: "Defend-
ants are hereby **ENJOINED** from applying the [rule] to members of the ... provi-
sionally certified class and **ORDERED** to return to the pre-[rule] practices for pro-
cessing the asylum applications of members of the certified class." PI Order 36. The

DEFS.' OPP. TO PLS.' MOT. TO
ENFORCE PRELIM. INJ.
Case No. 3:17-cv-02366-BAS-KSC

phrase "Defendants are hereby enjoined" is prospective only. It means that Defendants cannot apply the rule to class members whose cases are pending when or after the order issued. But as explained, it does not require Defendants to reopen rule-based negative credible-fear determinations that became final before the order was issued. *See* Defs.' Opp. to Pls.' Mot. for Clarification of the Prelim. Inj. 11–16 (ECF No. 508); *see also D.A.M. v. Barr*, — F. Supp. 3d —, 2020 WL 5525056, at *8 (D.D.C. Sept. 15, 2020) ("order vacating the [rule] means the government cannot issue any more orders of removal under that rule, but it does not mean that petitioners' removal orders (along with thousands of others) were automatically extinguished by operation of [the] judgment").

Similarly, the order "to return to the pre-[rule] practices for processing the asylum applications of members of the certified class," PI Order 36, does not require the government to reopen final rule-based removal orders. That would be a separate, affirmative requirement that is not included in the language of the injunctive order. Returning to "pre-[rule] practices" merely requires the government to adjudicate the cases before it without reference to the rule, in both substance and procedure. Those "practices" do not require USCIS to affirmatively reopen closed administrative proceedings as a matter of course. *See* 8 C.F.R. § 1208.30(g)(2)(iv)(A) (requiring the case to "be returned to [DHS] for removal of the alien" "[i]f the immigration judge concurs with the [negative credible-fear determination]"; providing that "[t]he immigration judge's decision is final and may not be appealed"; and providing that DHS "may," but need not, "reconsider a negative credible fear finding").

Nor does the fact that the injunction extends to all "members of the ... provisionally certified class," PI Order 36, mean that Applicant (even assuming she is a class member) cannot be removed unless the government reopens her proceedings and adjudicates her claim without reference to the rule. The class-certification order undoubtedly accounts for facts that pre-date the order, namely, being prevented from "mak[ing] a direct asylum claim at a U.S. POE before July 16, 2019 because of the

U.S. Government's metering policy." PI Order 36. But the preliminary-injunction order does not require any action as to class members whose claims have already been adjudicated. Even where "a decision is retroactive"—which is not the case here—that "does not mean that final judicial or administrative decisions are to be reopened" absent an affirmative command. *Heartland By-Products, Inc. v. United States*, 568 F.3d 1360, 1366 (Fed. Cir. 2009); *see also D.A.M.*, 2020 WL 5525056, at *7 ("[I]t is one thing to say that vacatur protects everyone from having an invalid rule applied to them in future adjudications, and quite another to say that vacatur erases from legal existence all *past* adjudications under the vacated rule."). This is consistent with the rule in civil litigation that when a court announces a precedential rule of law, that rule "is the controlling interpretation of federal law and must be given full retroactive effect in all cases *still open on direct review*." *Harper v. Va. Dept. of Taxation*, 509 U.S. 86, 97 (1993) (emphasis added). But cases that are final and closed are not entitled to be reopened and readjudicated under later-announced rules. *See Teague v. Lane*, 489 U.S. 288, 308 (1989) ("[I]t has long been established that a final civil judgment entered under a given rule of law may withstand subsequent judicial change in that rule.").

Applicant's expedited-removal order became final on November 14, 2019, following the immigration judge's review of USCIS's negative credible-fear determination. For that reason, the order does not violate the preliminary injunction, and this Court's inherent authority to enforce the injunction does not supply the basis to enjoin Applicant's removal.

## B.    Applicant Fails to Establish that She was Subject to Metering.

Even if the preliminary-injunction order did impose obligations on the government toward class members with final rule-based removal orders issued before the preliminary-injunction order, Applicant fails to establish that she was subject to metering before July 16, 2019.

On March 25, 2020, USCIS conducted an *Al Otro Lado* screening interview

with Applicant. *See* Gov't Ex. 1, at 145–50. Applicant testified that she crossed the border from Tijuana into the United States on July 29, 2019; that this was her only "attempt to cross the border in Tijuana"; that she did not "tr[y] to cross before July 29, 2019"; and that she did not "place [her] name on a list to enter the US through a port of entry besides San Ysidro on July 29, 2019." Gov't Ex. 1, at 148. At the end of the interview, the asylum officer summarized and read aloud her understanding of Applicant's responses: "You testified that you left Cameroon sometime in March 2019. You arrived in Tijuana Mexico in May 2019. You testified that you worked in Tijuana for couple of months to earn some money. You stated that you never wrote your name down on a list and your first and only attempt to cross the border into the US was on July 29 at San Ysidro." Gov't Ex. 1, at 148–49. The officer asked Applicant, "Is this summary correct," and Applicant said, "Yes." Gov't Ex. 1, at 149. By her own testimony, Applicant confirmed that she is not a member of the provisional class, so it is lawful in all instances to remove Applicant pursuant to a rule-based removal order.

Plaintiffs rely on two belated attorney declarations to argue that Applicant "was subject to the Government's metering policy prior to July 16, 2019 and is entitled to the protections of the preliminary injunction." Mem. 4 (citing Decl. of Rebecca M. Cassler and Decl. of Nicole Ramos). Plaintiffs also contend that "at least in this instance[,] the Government's screening process to identify AOL PI class members failed." Mem. 4–5. Both arguments lack merit.

*First*, the belated Cassler and Ramos Declarations do not establish that Applicant was subject to metering before July 16, 2019. The Declaration of Rebecca M. Cassler is entirely hearsay, as it merely recounts the declarant's "understanding" based on "discussions" with Applicant. Cassler Decl. ¶ 3; Fed. R. Evid. 801(c), 802. Applicant has already offered untruthful testimony at least once. *See* Gov't Ex. 1, at 37–38. Moreover, Ms. Cassler's representations of Applicant's statements are directly rebutted by contemporaneous notes from Applicant's screening interview,

which show that Applicant told a USCIS asylum officer on March 25, 2020 that her first and only attempt to cross the border occurred on July 29, 2019. Gov't Ex. 1, at 148. The Cassler Declaration does not show that Applicant was subject to metering before the rule's effective date.

The Declaration of Nicole Ramos is not competent evidence. Ms. Ramos contends that "Al Otro Lado's internal records show that the last waitlist number given out by CBP[2] as of July 15, 2019, was #3666. Internal records also show that on July 16, 2019, the last waitlist number called to enter the United States was #2702." Ramos Decl. ¶ 9. These "internal records" are apparently based upon observations by "Al Otro Lado observers," who "monitor several data points, including the last waitlist number given out each day, and the last waitlist number called for processing by U.S. immigration authorities each day." *Id.* ¶ 8. But these "internal records" were not attached to the declaration and, to undersigned counsel's knowledge, have not been produced to Defendants. The only document attached to the declaration is a purported "photocopy" of an admittedly incomplete version of the waitlist. *See id.* at ECF p. 7. Ms. Ramos says that Al Otro Lado was "provided with a copy of the waitlist by the Instituto Nacional de Migracion (National Institute of Migration)," *id.* ¶ 17, but the document is not authenticated by anyone purporting to be the list holder, and Ms. Ramos does not provide any more details about how she obtained the purported excerpt from the list. Further, the incomplete photocopy does not include any dates indicating when an individual was added to the list or when Mexican authorities called a given number from the list. Ms. Ramos admits that Al Otro Lado lacks comprehensive knowledge of how the waitlist in Tijuana operates and that the waitlist is not a reliable indicator of the order in which individuals arrived in Tijuana

---

[2] CBP does not "give[] out" numbers or manage any sort of waitlist. Ramos Decl. ¶ 9; *see also, e.g.*, Ex. 17 to Pls.' Mot. for Summ. J., at 301:5–16 (ECF No. 535-19). Even Ms. Ramos admits that "[a]t the San Ysidro port of entry, th[e] list is managed by Mexican authorities." Ramos Decl. ¶ 6.

1    or are called by Mexican authorities. *See id.* ¶ 11 ("Al Otro Lado has limited capacity
2    and opportunities to view the waitlist maintained by Mexican officials at the port of
3    entry in Tijuana, Mexico."); *id.* ¶ 12 (describing "bribe[s]" paid to be added to the
4    waitlist). Given the lack of any dates on the face of the document and Ms. Ramos's
5    admission that the list is not reliably managed, the photocopy does not support Plain-
6    tiffs' contention that Applicant was unable to make a direct asylum claim at a U.S.
7    port of entry before July 16, 2019 because of metering.

8        *Second*, USCIS screening procedures are sufficient to identify class members.
9    USCIS conducted Applicant's screening interviews in French through an interpreter.
10   USCIS continued the first interview at Applicant's request to allow her to contact
11   her attorney. At the second interview, Applicant's attorney was asked but declined
12   to participate in the interview, and he did not seek to have it rescheduled. *See* Gov't
13   Ex. 1, at 146–47 ("You can go ahead with the follow-up Q & A"). Applicant know-
14   ingly chose to proceed. The asylum officer spent two hours interviewing Applicant,
15   asking Applicant multiple questions about her time in Tijuana and asking Applicant
16   to clarify ambiguities. At the end, the asylum officer summarized her understanding
17   that Applicant "never wrote [her] name down on a list and [her] first and only attempt
18   to cross the border into the US was on July 29 at San Ysidro." Gov't Ex. 1, at 148–
19   49. Applicant confirmed that "this summary [is] correct." Gov't Ex. 1, at 149.

20       Defendants actions are lawful, and this Court's inherent authority to enforce
21   its own orders does not supply a basis to enjoin Applicant's removal.

22       **C.    Any Improper Application of the Rule was Harmless.**

23       Even if the government had improperly applied the rule to Applicant, that er-
24   ror would have been harmless. Applicant's testimony includes significant unex-
25   plained discrepancies that led the asylum officer to conclude that Applicant "is not
26   credible in the totality of circumstances." Gov't Ex. 1, at 38. Applicant was given
27   several opportunities to clarify her testimony, but she failed to offer satisfactory re-
28   sponses. *See* Gov't Ex. 1, at 37–38, 21–30. The immigration judge affirmed USCIS's

negative credible-fear determination on de novo review, stating: "Respondent not credible in totality of circumstances." Gov't Ex. 2, at 14. Even if this Court's inherent authority supplied a basis to enjoin Applicant's removal *pursuant to the rule*, it does not permit an injunction for failure to otherwise show entitlement to relief.

## II. Plaintiffs are Not Entitled to Relief Under the Traditional Four-Factor Test.

To the extent Plaintiffs seek a separate injunction prohibiting Applicant's removal independent of the Court's authority to enforce its orders, Plaintiffs also fail to show that they are entitled to relief under the traditional four-factor test.

*First*, Plaintiffs are unlikely to succeed on the merits because the Court does not have jurisdiction to enjoin Applicant's removal. The INA, 8 U.S.C. § 1252, states:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review except as provided in subsection (e), any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title.

8 U.S.C. § 1252(a)(2)(A)(i). This provision "'unequivocally and unambiguously'" "'strip[s] jurisdiction over all matters relating to an immigration order or decision.'" *Avendano-Ramirez v. Ashcroft*, 365 F.3d 813, 818 (9th Cir. 2004) (quoting *Montero–Martinez v. Ashcroft*, 277 F.3d 1137, 1143 (9th Cir. 2002)). This includes challenges to the physical removal of an alien, which Plaintiffs make here. *See, e.g.*, Supp. Decl. of Melissa Crow ¶ 13 (ECF No. 575-1) ("Plaintiffs consider [Applicant's] *removal* prior to her having a credible fear determination on the merits of her claim to be a violation of the preliminary injunction in this case." (emphasis added)); *Avendano-Ramirez*, 365 F.3d at 818 (Section 1252(a)(2)(A)(i) precludes collateral attacks on removal orders because such "review would necessarily involve entertaining a claim arising from the removal order," as it seeks "to nullify the continuing effects of that order."); *D.A.M. v. Barr*, No. 20-cv-1321, 2020 WL 4218003, at *8 (D.D.C. July 23,

2020) (Section 1252(a)(2)(A) "gives the government virtually unreviewable authority to decide whether and when to implement [aliens'] removal orders").

Section 1252(a)(2)(A) permits judicial review in the limited circumstances "provided in subsection (e)," but the exceptions in subsection (e) do not apply to Applicant's case. Section 1252(e)(2) permits sharply limited review in habeas corpus "of three matters: first, 'whether the petitioner is an alien'; second, 'whether the petitioner was ordered removed'; and third, whether the petitioner has already been granted entry as a lawful permanent resident, refugee, or asylee." *DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1966 (2020) (quoting 8 U.S.C. § 1252(e)(2)). Plaintiffs do not seek habeas review, so this subsection does not apply.

Section 1252(e)(3) permits challenges to the "validity of the system" that implements expedited-removal orders, but only in the District of Columbia within 60 days of the challenged action. 8 U.S.C. § 1252(e)(3). So this subsection does not provide a basis to review Applicant's claim.

And, even if Section 1252(e)(2) or (e)(3) applied, Section 1252(e)(1) prohibits the relief Plaintiffs seek. That section states: "Without regard to the nature of the action or claim and without regard to the identity of the party or parties bringing the action, no court may enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in a subsequent paragraph of this subsection." 8 U.S.C. § 1252(e)(1)(A). No other subpart of Section 1252(e) allows a court to enjoin an alien's removal. *See Grace v. Barr*, — F. 3d —, 2020 WL 4032652, at *17 (D.C. Cir. July 17, 2020) (explaining that section 1252(e)(1)(A) bars any equitable relief, injunctive, declaratory, or otherwise, in any "action[]" arising under section 1252(e)(2) "pertaining to an order to exclude an alien in accordance with section 1225(b)(1)"); *see M.M.V. v. Barr*, No. 19-cv-2773, 2020 WL 2119744, at *4 (D.D.C. May 1, 2020). Thus, even if Section 1252(e) included an exception to Section 1252(a)(2)(A)'s general prohibition on judicial review that

1  Plaintiffs could invoke, Section 1252(e)(1) still prohibits the issuance of a stay of

2  Applicant's removal.

3      For the same reason, Section 1252(g) divests this Court of jurisdiction over

4  Applicant's case. That section states:

> Except as provided in this section and notwithstanding any other provision of
> law (statutory or nonstatutory), including section 2241 of Title 28, or any
> other habeas corpus provision, and sections 1361 and 1651 of such title, no
> court shall have jurisdiction to hear any cause or claim by or on behalf of any
> alien arising from the decision or action by the Attorney General to commence
> proceedings, adjudicate cases, or execute removal orders against any alien un-
> der this chapter.

8 U.S.C. § 1252(g). Congress "provided in this section" (meaning Section 1252) for

review of challenges to removal orders in the courts of appeals. *See id.*

§§ 1252(a)(5), (b)(9). But it did not provide for the review of expedited removal

orders like Applicant's. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(I) ("Subject to subclause

(III), if the officer determines that an alien does not have a credible fear of persecu-

tion, the officer shall order the alien removed from the United States without further

hearing or review."). Further, even in the circumstances that Congress has permitted

judicial review (such as challenges to removal orders), Section 1252(g) would pre-

clude jurisdiction over Plaintiffs' claim that Applicant fears return to Cameroon.

That argument "directly implicates the government's discretionary authority to re-

turn noncitizens to their native countries," which is precisely what Section 1252(g)

guards against. *D.A.M.*, 2020 WL 4218003, at *9 (citing *AADC*, 525 U.S. at 482);

*see also Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002) ("We con-

strue § 1252(g), which removes our jurisdiction over 'decision[s] ... to commence

proceedings' to include not only a decision in an individual case *whether* to com-

mence, but also *when* to commence, a proceeding."). Plaintiffs' claims fail on the

merits because Section 1252 divests this Court of jurisdiction over their arguments.

    *Second*, Plaintiffs fail to show that the balance of the equities and the public

interest favors a stay of removal. Class counsel attests that Applicant fears returning

15

to Cameroon, but Applicant's own testimony was so inconsistent that the asylum officer could not be sure of Applicant's true identity. Moreover, Applicant, through counsel, twice sought reconsideration of her negative credible-fear determination. She also received an *Al Otro Lado* screening interview. But she never claimed or established that she was entitled to the benefits of the *Al Otro Lado* preliminary injunction. Enjoining her removal at the eleventh hour based on arguments that she for months has not chosen to pursue undermines the "public interest in prompt execution of removal orders," as "[t]he continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings [that Congress] established, and 'permit[s] and prolong[s] a continuing violation of United States law.'" *Nken*, 556 U.S. at 436 (quoting *AADC*, 525 U.S. at 490); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982), *and E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1281 (9th Cir. 2020) (noting the government's and the public's weighty "interest in the efficient administration of the immigration laws at the border" (citation and quotation marks omitted).

Plaintiffs thus fail to establish their entitlement to emergency injunctive relief either under the four-factor test, or as a matter of this Court's inherent authority.

## **CONCLUSION**

This Court should deny Plaintiffs' *Ex Parte* Motion to stay Applicant's removal.

DATED: September 25, 2020    Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Deputy Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director

KATHERINE J. SHINNERS
Senior Litigation Counsel

*/s/ Alexander J. Halaska*
ALEXANDER J. HALASKA
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

DEFS.' OPP. TO PLS.' MOT. TO
ENFORCE PRELIM. INJ.
Case No. 3:17-cv-02366-BAS-KSC

**<u>CERTIFICATE OF SERVICE</u>**

*Al Otro Lado v. Wolf*, No. 17-cv-02366-BAS-KSC (S.D. Cal.)

I certify that I served a copy of this document and its attachments on the Court and all parties by filing this document with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all counsel of record.

DATED: September 25, 2020            Respectfully submitted,

                                    */s/ Alexander J. Halaska*
                                    ALEXANDER J. HALASKA
                                    Trial Attorney
                                    United States Department of Justice