1  JEFFREY BOSSERT CLARK
2  Acting Assistant Attorney General
   Civil Division
3  WILLIAM C. PEACHEY
   Director, Office of Immigration Litigation –
4  District Court Section
5  KATHERINE J. SHINNERS (DC 978141)
   Senior Litigation Counsel
6  ALEXANDER J. HALASKA (IL 6327002)
7  Trial Attorney
   United States Department of Justice
8  Civil Division
9  Office of Immigration Litigation
10 P.O. Box 868, Ben Franklin Station
   Washington, D.C. 20044
11 Tel: (202) 307-8704 | Fax: (202) 305-7000
12 alexander.j.halaska@usdoj.gov
13
14 *Counsel for Defendants*

15              **UNITED STATES DISTRICT COURT**
16       **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
                      **(San Diego)**
17

18 AL OTRO LADO, Inc., *et al.*,          Case No. 3:17-cv-02366-BAS-KSC

19              *Plaintiffs,*              **EXHIBIT 1**

20                                         *Lodged Under Seal*
        v.
21

22 Chad F. WOLF, Acting Secretary of
   Homeland Security, in his official
23 capacity, *et al.*,

24
              *Defendants.*
25

26

27

28

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| Al Otro Lado, Inc., *et al.*, | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:17-cv-02366-BAS-KSC |
| | ) | |
| Chad F. Wolf, *et al.*, | ) | |
| *Defendants.* | ) | |
| | ) | |

**DECLARATION OF GRAHAM R. DOEREN**

I, Graham Doeren, pursuant to 28 U.S.C. § 1746, and based upon personal knowledge and information made known to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows relating to the above-captioned matter.

1.      I am the Acting Director and the Deputy Director of the Arlington Asylum Prescreening Center (ZAC), an office within U.S. Citizenship and Immigration Services (USCIS), U.S. Department of Homeland Security (DHS). I have been serving as the Acting Director of ZAC since June 2020, and as the Deputy Director since January 2020. Prior to January 2020, I served as the Acting Deputy Director of ZAC beginning in November 2019. The Arlington Asylum Prescreening Center specializes in the interview and adjudication of credible fear, reasonable fear, and other threshold screening cases across the country. ZAC staff includes Managers, Supervisors, Analysts, Asylum Officers, Training Officers, Fraud Detection and national Security Immigration Officers, Mission Support Staff, and Operational Support Staff. In my role as the Deputy Director of ZAC, I am responsible for managing ZAC's adjudications and operations. In my role as the Acting Director of ZAC, I am responsible for management of

1

ZAC staff and all cases arising out of ZAC's jurisdiction. I have been employed by USCIS since May 2013, serving in various officer and managerial capacities.

     2.    Attached hereto as Exhibits A–D are true and accurate copies of the following documents relating to the credible fear screening of ███████████████████████ (A██ ███████):

- as Exhibit A: Credible Fear Interview Notes, dated August 30, 2019;

- as Exhibit B: Credible Fear Interview: Questions & Answers, dated October 23, 2019;

- as Exhibit C: Form I-870, Record of Determination/Credible Fear Worksheet, dated October 29, 2019;

- as Exhibit D: Form I-869A, Record of Negative Credible/Reasonable Fear Finding and Request for Review by Immigration Judge for Aliens Barred from Asylum Pursuant to 8 CFR 208.13(c)(4), dated November 8, 2019; and

- as Exhibit E: Form I-863, Notice of Referral to Immigration Judge, dated November 8, 2019.

Each of these documents sets forth USCIS's activities and was made at or near the time of the event by an individual with knowledge, was kept in the course of USCIS's regularly conducted activity and was made pursuant to its regular practices.

     3.    Attached hereto as Exhibit F is a true and accurate copy of correspondence from ███████████████s attorney of record to USCIS, dated December 23, 2019, requesting reconsideration of the negative fear determination made by USCIS.

     4.    Attached hereto as Exhibit G is a true and accurate copy of correspondence from USCIS to ██████████████ attorney of record, dated January 14, 2019, declining to

2

reconsider the negative fear determination. Based on a review of USCIS records, this date is likely a typo and should reflect January 14, 2020.

5.     Attached hereto as Exhibit H is a true and accurate copy of the USCIS interview notes dated, March 19, 2020 associated with the *Al Otro Lado* class membership screening of

████████████. This document sets forth USCIS's activities and was made at the time of the event by an individual with knowledge, was kept in the course of USCIS's regularly conducted activity and was made pursuant to its regular practice.

6.     Attached hereto as Exhibit I is a true and accurate copy of the USCIS interview notes dated, March 25, 2020 associated with the *Al Otro Lado* class membership screening of

████████████. This document sets forth USCIS's activities and was made at the time of the event by an individual with knowledge, was kept in the course of USCIS's regularly conducted activity and was made pursuant to its regular practice.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 16th day of October 2020.

GRAHAM R DOEREN
Digitally signed by GRAHAM R DOEREN
Date: 2020.10.16 20:08:50 -04'00'

Graham Doeren
Acting Director, ZAC
U.S. Citizenship and Immigration Services
Department of Homeland Security

# EXHIBIT A

A#: 
Name:
Country: Cameroon

Interview Date:08/30/2019
Asylum Officer: E. Madden ZAR 657
Location of Applicant: OMDC

## CREDIBLE FEAR INTERVIEW NOTES

**The following notes are not a verbatim transcript of this interview. These notes are recorded to assist the individual officer in making a credible fear determination and the supervisory asylum officer in reviewing the determination. There may be areas of the individual's claim that were not explored or documented for purposes of this threshold screening.**

INTERVIEW START TIME: 2:49 pm

**INTERPRETER INFORMATION**

*Language Line code:*
*Code 209644*
*French*

Q. Hello interpreter. This is a credible fear interview. Please have form I-870 and M-444 available for your reference. Now I will put you under oath. Do you affirm that you will truthfully, literally and fully interpret the questions asked by me and the answers given by the applicant; that you will not add to, delete from, comment on, or otherwise change the matter to be interpreted; that you will immediately notify me if you become aware of your inability to interpret in a neutral manner; and that you understand that the matters discussed during this interview are confidential?
A. Yes

Q. Thank you interpreter. I will put the applicant on the line. Please introduce yourself to the applicant and explain that she should speak loudly and clearly, and to take regular pauses so that you can interpret everything she says accurately.
A. yes sir

Q. *[To the applicant]* Hello, I am Officer Madden. I will be conducting your interview today. The interpreter has been placed under oath and has promised to keep the information we discuss today confidential. Do you understand the interpreter?
A. yes perfectly

Q. Are you comfortable being interviewed in French?
A. yes

Q. Do you speak any language other than French?
A. A little Spanish and so little English

Q. Are you comfortable being interviewed by a male officer and a male interpreter?
A.yes

Q. Please let me know at any time if you do not understand a question that I ask or you have trouble understanding the interpreter.
A. ok

## INTRODUCTION & OATH

Q. We are here today because you indicated that you are afraid to return to Cameroon.

A#:
Name:
Country: Cameroon

Q. Are you still afraid to return?
A. yes very afraid

Q. What is your full name?
A.

Q. Before we begin, I'd like to tell you a little about the interview. Today's interview is confidential which means that it will not be shared with anyone in Cameroon. The interpreter is here to help me understand you, by interpreting word for word what you say. As we talk, please remember to pause so that the interpreter can interpret. First, we will go over some biographical information, and then I will ask you questions about why you fear returning to your country. At the end of the interview, I will give you a chance to add anything you think is important or to ask me any additional questions you may have. Do you understand?
A. yes

Q. Now I will place you under oath. This means that you are legally required to provide information that is true and accurate. Please raise your right hand. Do you swear or affirm that the testimony you will provide will be the truth, the whole truth, and nothing but the truth?
A. yes I swear it

Q. Thank you. You may put your hand down.

## ORIENTATION

Q. On 08/2/2019, you should have been read two pages of information that explained the credible fear process, and about your rights and responsibilities throughout this process. Do you remember that?
A. Yes.

Q. Did you understand the information that was explained to you in the orientation?
A. yes

Q. Do you have an attorney or consultant to represent you today?
A. No.

Q. Did you receive a list of attorneys who may be able to represent you for free or at low cost?
A. yes

Q. An attorney or consultant is not required during this interview but you have the right to have one present if you would like one. Of course, I can make sure that you are given a copy of the list of attorneys who may be able to represent you for free or at low cost. Would you like to have your interview today by yourself or would you like to reschedule so that you can have more time to find an attorney/consultant?
A. I would like to continue

Q. Are you comfortable continuing without an attorney present?
A. I am comfortable

Q. The interpreter will now read an explanation of the purpose of this interview.



A#:
Name:
Country: Cameroon

*[Interpreter reads PARAGRAPH 1.28, FORM I-870 to the applicant]*
*The purpose of this interview is to determine whether you may be eligible for asylum or protection from removal to a country where you fear persecution or torture. I am going to ask you questions about why you fear returning to your country or any other country you may be removed to. It is very important that you tell the truth during the interview and that you respond to all of my questions. This may be your only opportunity to give such information. Please feel comfortable telling me why you fear harm. U.S. law has strict rules to prevent the disclosure of what you tell me today about the reasons why you fear harm. The information you tell me about the reasons for your fear will not be disclosed to your government, except in exceptional circumstances. The statements you make today may be used in deciding your claim and in any future immigration proceedings. It is important that we understand each other. If at any time I make a statement you do not understand, please stop me and tell me you do not understand so that I can explain it to you. If at any time you tell me something I do not understand, I will ask you to explain.*

Q. Do you understand?
A. yes

## BACKGROUND

Q. Are you alone in the room?
A. yes

Q. How are you feeling today?
A. not very well

Q. Can you explain why are not feeling well?
A. I feel like the world is falling in on me. Nervous and depressed

Q. How are you being treated in the detention facility?
A. well

Q. Do you have any medical conditions or concerns?
A. no

Q. Have you taken any medications in the last 48 hours?
A. no

Q. Have you notified the detention facility of your depression?
A. yesterday I wanted to see the psychologist. But I did not put my name on the list so I could not see him. I have put my name on the list for the psychologist today but I have not seen him yet.

Q. Is the depression related to the harm you suffered in the past?
A. yes

Q. Will your depression affect your ability to proceed with today's interview?
A. no

## ENTRY/ENCOUNTER ISSUES

Q. Our records show that you last entered the United States on or about 07/29/2019 at the San Ysidro POE. Is that correct?
A. yes



A#:
Name:
Country: Cameroon

Q. How many days were you in the US before you were apprehended by immigration officials?
A. Yes. It was Mexican immigration that brought me there

Q. Do you remember answering questions from immigration officers soon after you entered the US on 7/29/2019?
A. yes

Q. Did someone interpret the questions the officer asked you in your language?
A. yes they one on the phone

Q. Was your statement read back to you in your language?
A. no

Q. Did they treat you with respect?
A. yes

Q. Was everything you told the officers at the time true, complete, and accurate to the best of your knowledge?
A. yes

Q. Is either of your parents a citizen or resident of the US?
A. no

## ABC

Q. Was this the first time you entered the US?
A. yes

Q. When did you last leave your country?
A. 03/01/2019

Q. Which countries did you travel through on your way to the US?
A. Turkey, Panama, Colombia, Ecuador that is where I got a free visa.

Q. After Ecuador anywhere else?
A. Costa Rica, Nicaragua, Honduras, Guatemala, and Mexico

Q. Were you able to remain in any of these countries legally?
A. No all these countries were just to pass through and continue my travel

Q. Have you ever been to any other countries at any time in your life?
A.

Q. Any other countries?
A. No

Q.

A#: ███████
Name: ████████
Country: Cameroon

A.because on ████████████████ T████████████████████
an███████████████████ ▐████████████████████
███████████████████████████

Q. So just to clarify you are saying ████████████████ ?
A.yes ████████████████

Q. Who ███████ ?
A. A ███████████████

Q. ▐████████████████████████████
A. yes

Q. Is this incident part of your claim for Asylum or is it because of something else?
A. yes this is part of it.

Q. Have you ever applied for asylum in any country?
A. no

Q. Have you ever applied for a visa to any country?
A. no

Q. Have you ever applied for a visa to US?
A. yes twice.

Q. Did anyone help you prepare your application?
A. I did it myself

Q. Everything in your visa application was true and accurate?
A. yes

Q. Have you ever been recognized as a refugee in any country?
A.  no

**I-870**
Q. Have you ever been known by or called any other names?
A. no

Q. What is your date of birth?
A. ███████████

Q. Have you ever used any other birthdates?
A. no

Q. Are you a native and citizen of Cameroon?
A. yes

Q. Are you a citizen of any other countries?
A. no

A#:
Name:
Country: Cameroon

Interview Date:08/30/2019
Asylum Officer: E. Madden ZAR 657
Location of Applicant: OMDC

Q. Have you ever lived in any other countries?
A. Yes

Q. What immigration status did you have when you were in          at that time?
A. no

Q. Was your last address in          , Cameroon?
A. yes

Q. What is your race or ethnicity – for example, white, black, Hispanic, indigenous, Latin?
A. Black

Q. What is your religion, if you have one?
A. Catholic

Q. Are you married, single, living with a partner, divorced, or widowed?
A. Single

Q. have you ever been married before?
A. no

Q. Do you have any children?
A. yes
   Name:
   Date of Birth:
   Citizenship:
   Present Location:

   Name:
   Date of Birth:
   Citizenship:
   Present Location:

Q. Is          only a Cameroonian citizen, like does he have dual citizenship?
A. no he is just a Cameroon citizen?

Q. These are your only children?
A. yes

Q. Who are your children with now?
A. the first is with my parents. The second one I have left with a friend and I told that friend to bring back to my parents

Q. Who would you live with in the U.S. if you were released?
A. Name:
   Relationship:
   Immigration status: US citizen
   Address: Atlanta, GA
   Telephone:



A#
Name:
Country: Cameroon

Interview Date:08/30/2019
Asylum Officer: E. Madden ZAR 657
Location of Applicant: OMDC

Q. What kind of work did you do in Cameroon?
A. I was an esthetician

Q. Did you have any other jobs?
A. I was a commercial agent.

Q. how long have you been an esthetician?
A. 7 years

Q. Do you work for yourself or a company?
A. I'm self employed

Q. What do you mean by a commercial agent?
A. I was representing some beauty products to different prospective buyers and when I had a sell I would earn a commission.

Q. How long have you done this job?
A. 5 years

Q. In the last ten years are these the only jobs you have had?
A. yes

Q. Where in Cameroon were you working?
A. base was in            but I was traveling in different areas

Q. Did you only travel for both jobs?
A. both of them

Q. Was both jobs always based in ?
A. yes

Q. Have you ever worked in the military or the police?
A. no

Q. What is the highest level of education you have completed?
A. A technical degree in audio visual and sound

## HARM
Q. We are now going to talk about why you fear returning to your country.  Please remember to pause often so the interpreter may accurately interpret everything you say.  Please listen carefully to the questions and only answer the question I ask.  Please let me know at any time if you do not understand one of my questions or if you have any questions for me. Do you understand?
A.ok

## PAST

Q. Have you ever been threatened or  physically harmed in Cameroon?
A.  yes

A#:
Name:
Country: Cameroon

Q. Were you threatened or harmed or both?
A. both

Q. How many times were you threatened or harmed in total?
A.

Q. When was the first time you were threatened/harmed in Cameroon?
A.

Q. Who threatened or harmed you?
A.

Q. [
A. y

Q. When was the last time you were threatened or harmed in Cameroon?
A

Q. Who threatened or harmed you?
A.

Q. Can you describe the worst time you were threatened or harmed?
A.

Q. You mentioned earlier that                    . When did this happen?
A

Q. Can you tell me what happened that day

Q. Were
A. yes they were. And later

Q.
A.

Q. What
A.

Case 3:17-cv-02366-BAS-KSC    Document 626-8    Filed 11/13/20    PageID.55300
Page 14 of 150

A#:
Name:
Country: Cameroon

Interview Date:08/30/2019
Asylum Officer: E. Madden ZAR 657
Location of Applicant: OMDC

Q. What is you ethnicity?
A.

Q. What specific                                                              ?
A. they

Q. What do they mean by                              ?
A.

Q.
A.

Q.
A.

Q.
A. no

A.

Q.
A.

Q.
A.

Q.
A.

Q. That is not what I asked.

Q. Other than we have discussed today, have you ever been threatened or harmed by anyone else in Cameroon for any other reason?
A. no.

A#:
Name:
Country: Cameroon

Interview Date:08/30/2019
Asylum Officer: E. Madden ZAR 657
Location of Applicant: OMDC

Q. Have you ever been mistreated, threatened, or harmed by any member of your family or household in Cameroon?
A. no

## **FUTURE**

Q. What harm do you fear you will suffer if you return to Cameroon?
A.

Q. Is there anyone else that you fear will harm you if you return to Cameroon?
A. no

Q. Why do you think they will still want to harm you?
A.

Q. Why would they want to harm you

Q. Where specifically?
A. from

Q. If you return to Cameroon,

Q. Any other reasons they would be able to find you?
A. I don't know

A#:
Name:
Country: Cameroon

Interview Date:08/30/2019
Asylum Officer: E. Madden ZAR 657
Location of Applicant: OMDC

Q. Do you think you could live safely in another area of Cameroon?
A. No

Q. Why couldn't you live safely in another part of Cameroon?
A. because

Q. Other than what we have discussed today, do you fear threats or harm by anyone else in Cameroon for any other reason?
A.no

## NEXUS QUESTIONS

Q. I'm going to ask you some questions to make sure that we covered all the reasons you left your country. It is possible that not all of these questions apply to you. If a question doesn't apply to you, it's okay to say no. In Cameroon,

Q. Have you been harmed or threatened or do you fear you would be because of your religion?
A. no

Q. Have you been harmed or threatened or do you fear you would be because of your nationality?
A. no

Q. Besides what we have already discussed. Have you ever been harmed or threatened, or do you fear you would be, because of a group or organization you belong to?
A. no

Q. Besides what we have already discussed. Have you ever been harmed or threatened, or do you fear you would be, because there is something about you that makes you different or unique within your society?
A. no

## CAT

Q. I am going to ask you a series of questions regarding public officials. "Public officials" are people who work with or for the government in Cameroon. and have some type of authority. They may include police officers, soldiers, mayors, prosecutors, judges, and other government officials and employees.

Q. Do you understand who I am referring to when I say "public officials"?
A. yes

Q. Besides what we have already discussed. Have any public officials ever mistreated, threatened, or harmed you?
A. No

Q. Did you understand the questions I asked about public officials?
A. yes

Q. Is there anything else important to your claim that we have not yet discussed?
A. no

Q. Have you ever stated you had any other children when you applied for a visa?

A#:
Name:
Country: Cameroon

Interview Date:08/30/2019
Asylum Officer: E. Madden ZAR 657
Location of Applicant: OMDC

A. yes

Q. At the time you filed your visa application in 2015. How many children did you have?
A. I had one child. In fact I gave my file to my friend who filled it out for me because he knew how to file an application.

Q. What is this friend's name?
A.

Q. Do you know if he has helped other people with their visa applications?
A. No

Q. Where is          at?
A. At that time he was in          But now I do not know

Q. You stated to me earlier that you completed your application on your own, but now you are saying someone else did. Can you explain?
A. I wanted to say that I took the initiative to travel and nobody advised me to travel

Q. In your visa application, you stated you were married but you stated to me you were never married. Can you explain?
A. I was never married. I never mentioned that I was married.

Q. In your visa application. You sated you were working for communication for IBC, but to me you stated you were only a commercial agent and esthetician for the past ten years. Can you explain?
A. No I was not working for that place.

## MANDATORY BARS
Now, I will ask a few questions that I ask all applicants.

Q. Have you ever harmed or hurt another person?
A. no

Q. Have you ever helped someone or asked someone to hurt another person?
A. no

Q. Have you ever used a weapon or been trained on how to use a weapon?
A. no

Q. Have you ever committed a crime in any country?
A. no

Q. besides what we have already discussed. Have you been arrested, convicted, or sentenced for a crime?
A. no

Q. Have you ever been a member of a gang or another violent group?
A. no

Q. Have you ever been associated with a group that harms others, uses violence, or commits illegal activities?

Case 3:17-cv-02366-BAS-KSC    Document 626-8    Filed 11/13/20    PageID.55304
Page 18 of 150

A#:
Name:
Country: Cameroon

Interview Date:08/30/2019
Asylum Officer: E. Madden ZAR 657
Location of Applicant: OMDC

A. no

Q. Have you ever helped or given anything, including money, to a group that harms others or uses violence?
A. no

Q: Terrorist activities include things like using weapons or explosives to harm or kill people, or cause damage to property. Do you understand what I mean by "terrorist activities"?
A: yes

Q. Have you ever been a terrorist or participated in any terrorist related activities?
A. no

## SUMMARY OF TESTIMONY

Q. Please give me a moment to summarize the information you provided during your interview. While I do so, I will ask the interpreter to read an explanation of the possible outcomes of your case.

### [Interpreter reads PARAGRAPH 3.2, FORM I-870 to applicant]

*If the Department of Homeland Security determines you have a credible fear of persecution or torture, your case will be referred to an immigration court, where you will be allowed to seek asylum or withholding of removal based on fear of persecution or withholding of removal under the Convention Against Torture. The Field Office Director in charge of this detention facility will also consider whether you may be released from detention while you are preparing for your hearing. If the asylum officer determines that you do not have a credible fear of persecution or torture, you may ask an Immigration Judge to review the decision. If you are found not to have a credible fear of persecution or torture and you do not request review, you may be removed from the United States as soon as travel arrangements can be made.*

Q. Did you understand?
A. yes

Q. Do you have any questions about it?
A. no

Q. Please listen carefully as I read the summary of your case. This is a summary, so it will not include every detail that you provided today. After I read it, I will ask you whether the summary is correct.
A. ok

## WRITE SUMMARY OF MATERIAL FACTS HERE

You testified: ...

You were

You are afraid to return to Cameroon because

. You do not believe you could live anywhere in Cameroon safely
because

Q. Is this summary of your testimony accurate?
A. yes



A#:
Name:
Country: Cameroon

Interview Date:08/30/2019
Asylum Officer: E. Madden ZAR 657
Location of Applicant: OMDC

Q. Are there any changes you would like to make?
A. no

## CONCLUSION

Q. The information you provided will be used to determine if you can ask an Immigration Judge to allow you to stay in the United States. The interpreter has already explained the possible outcomes of your case.

Q. Do you have any questions?
A. no

Q. Did you understand the questions that I asked you today?
A. yes

Q. Did you understand your interpreter today?
A. yes

Q. Interpreter, did you have any problems understanding the Applicant today?
Interpreter: not at all.

Q. This concludes your credible fear interview; thank you for taking the time to speak with me today. Please do not hang up the phone, but you can tell the officer that you have finished. Good luck to you.
A.

**INTERVIEW END TIME: 5:34 pm**

# EXHIBIT B

Alien Number: A [REDACTED]
Name: [REDACTED]
Country: Cameroon
Asylum Office: Arlington (ZAC)

Date: 23-Oct-2019
Asylum Officer: Ina Chu, ZOL02U
Lionbridge: ID59990 and ID5099

# Credible Fear Interview: Questions & Answers

NOTE: THE FOLLOWING NOTES ARE NOT A VERBATIM TRANSCRIPT OF THIS INTERVIEW. THESE NOTES ARE RECORDED TO ASSIST THE INDIVIDUAL OFFICER IN MAKING A CREDIBLE FEAR DETERMINATION AND THE SUPERVISORY ASYLUM OFFICER IN REVIEWING THE DETERMINATION. THERE MAY BE AREAS OF THE INDIVIDUAL'S CLAIM THAT WERE NOT EXPLORED OR DOCUMENTED FOR PURPOSES OF THIS THRESHOLD SCREENING.

Location of Applicant: **Otay Mesa Detention Center, 7488 Calzada de la Fuente, San Diego, CA 92154**
Was Attorney Present During Interview? **Yes** ☐ **No** ☒
Location of Interview: **Telephonic**

---

| INTERVIEW INITIATED: 9:40am EST |
| --- |

**Language:** French

### ☒ Administered Interpreter Oath

Do you affirm that you will truthfully, literally and fully interpret the questions asked by the asylum officer and the answers given by the applicant; that you will not add to, delete from, comment on, or otherwise change the matter to be interpreted; and that you will immediately notify the officer in this case if you become aware of your inability to interpret in a neutral manner on account of a bias against the applicant or the applicant's race, religion, nationality, membership in a particular social group, or political opinion?
Yes

Do you affirm that you understand that the matters discussed during this interview are confidential?
Yes

I am an asylum officer. I understand you spoke to another asylum officer previously. We have a couple more questions for you. I'll be conducting today's interview through an interpreter, who has been placed under oath to completely interpret everything you say and to keep everything you say confidential. Can you please verify your name?

[REDACTED]

What is your best language of understanding?
French

Can you understand the interpreter clearly?
Yes

Do you still fear return to Cameroon?
⦿ Yes    ◯ No

Do you have an attorney at this time?
No

*Credible-Fear Interview*

Page 1 of 10

Alien Number: A ▮▮▮▮▮▮▮▮                      Date: 23-Oct-2019
Name: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮             Asylum Officer: Ina Chu, ZOL02U
Country: Cameroon                            Lionbridge: ID59990 and ID5099
Asylum Office: Arlington (ZAC)

You have the right to talk to an attorney before the interview and to have an attorney with you during this call, but it is not required. Do you want to do that, or do you want to continue this interview without an attorney?
We can continue

☒ Administered Applicant Oath

Before we begin, I need to place you under oath to promise to tell the truth. Please raise your right hand. Do you swear to tell the truth, the whole truth, and nothing but the truth?
Yes

Thank you, you may put your hand down.

☒ Applicant received and signed M-444 before interview (advisals)

When you were detained, do you remember receiving some documents explaining your rights, the interview process, and a list of attorneys. It talks about the court process. Sometimes this information is in a video or an audio recording at the facility. Do you remember anything like that?
Yes

Any questions about that?
No

Records indicate you last entered the United States on 7/29/2019, through/at San Ysidro, Ca is that correct?
Yes

Was this the first time you entered the U.S.?
Yes

☒ Interpreter read Section 1.28 (Form I-870) to applicant

Do you understand what was just read to you?
Yes

Do you have any questions about what was just read to you or would you like me to explain it in a different way?
No

How are you feeling today?
I'm doing better

Were you not doing well?
The situation is not good, but I'm holding up

*Credible-Fear Interview*                                             Page 2 of 10

Alien Number: A ▮▮▮▮▮
Name: ▮▮▮▮▮▮▮▮▮▮
Country: Cameroon
Asylum Office: Arlington (ZAC)

Date: 23-Oct-2019
Asylum Officer: Ina Chu, ZOL02U
Lionbridge: ID59990 and ID5099

How is the situation not good?
Meaning I've never been in detention. I'm uncomfortable

How are you being treated in detention?
Good

(Interpreter having side conversations with the applicant. When provided feedback, the interpreter did not adjust. Officer changes interpreters to Lionbridge ID5099 at 9:55pm)

Is there anything that may affect your ability to testify today?
No

☒ Went over Biographic Information on the Form I-870

Other than the name you gave me earlier, have you ever been known by any other names or aliases?
No

When is your birthday?



Ever used any other dates of birth?
No

When you crossed the border into the United States, were you with any family members, including even those housed elsewhere?
No

Where were you born?
Cameroon

What country are you a citizen of?
Cameroon

Are you a citizen of any other country?
No

Have you lived in any other countries?
No

Have you ever had legal permission to live in any other country?
No

Do you identify with an ethnicity or race?
Black

*Credible-Fear Interview*

Page **3** of **10**

Alien Number: A█████████
Name: ████████████████████
Country: Cameroon
Asylum Office: Arlington (ZAC)

Date: 23-Oct-2019
Asylum Officer: Ina Chu, ZOL02U
Lionbridge: ID59990 and ID5099

What is your religion?
Catholic

What was your last address in your home country?
█████ Cameroon

Do you have a street name or a house number?
No street name or house number

Are you married, single, living with a partner?
Single

Have you ever been married?
No

Do you have any children?
████████████████████████████████████████████████

How old is █████ today?
███ years old

Who's their father?
████████████████████

Do they share the same father?
No

What about █████ father? His name
████████████████████

Where are both of them today?
████████████████████

Still in touch with them?
Now no. When I was living in Cameroon, yes

Ever married to either of them?
No

Do you have any family, friends, or relatives in the US with whom would stay, if released?
████████████████████████████████████████

Did you ever apply for any legal status in the United States before, such as TPS or for asylum?

*Credible-Fear Interview*

Page **4** of **10**

<u>Alien Number:</u> ▮▮▮
<u>Name:</u> ▮▮▮▮▮▮▮▮
<u>Country:</u> Cameroon
<u>Asylum Office:</u> Arlington (ZAC)

<u>Date:</u> 23-Oct-2019
<u>Asylum Officer:</u> Ina Chu, ZOL02U
<u>Lionbridge:</u> ID59990 and ID5099

No

What about a US visa?
Yes

How many times?
2

Result of the applications?
Refused

Have your parents ever been to the U.S.?
No

Where are your parents currently living?



Have your parents ever applied for asylum in the U.S. before?
No

Did you pay a smuggler or coyote?
I paid someone to help me to Quito. He created the documents needed to get from Cameroon to Quito

How much did you pay this person?
1,500,000 Franc CSA

How did you arrange the funds to pay?
Girlfriend helped me for a piece of the cost. And the person I worked for helped me for a piece of the cost. I also sold my belongings. Together, I paid

How'd you get from Quito to the US?
I met people in Ecuador and I traveled with them

So did anyone help you along the way, as you traveled from Cameroon to the US?
The people with whom I traveled

Were these smugglers?
All of them were immigrants. It was no one organizing commerce

Did anyone charge you for getting from Quito to the US?
No

When did you leave Cameroon?
3/1/2019

Alien Number: A[redacted]
Name: [redacted]
Country: Cameroon
Asylum Office: Arlington (ZAC)

Date: 23-Oct-2019
Asylum Officer: Ina Chu, ZOL02U
Lionbridge: ID59990 and ID5099

What countries did you travel through to get to the U.S?
Turkey, Bogotá, Panama, Ecuador, Colombia...

You went to Colombia twice?
The first part was by airplane then by bus

Ok Bogota is in Colombia. So are you saying after Ecuador you went back to Colombia?
The first time I was transiting

Ok to confirm, are you saying you went to Colombia twice?
Yes the first time I was in transit

The first time it was a layover?
Yes

After going to Colombia the second time, where'd you go?
Panama, Costa Rica, Nicaragua, Honduras, Guatemala, Mexico

Have you applied for asylum in any of the countries you traveled through on your way to the U.S.?
No

Why didn't you apply there?
In those countries, there's a lot of discrimination. I didn't want to stay

Has anyone ever forced you to do things you did not want to do?
No

Did you ever work for anyone against your will?
No

Did anyone ever restricted you freedom or held your documents?
No

Do you owe money to anyone for bringing you to the U.S.?
No I paid all my debts

Are expected to work in a certain job to pay off a debt to someone who helped you get to the U.S.?
No

There is a new regulation in the U.S. that says that you are not eligible for asylum if you passed through
another country like Mexico and did not apply for protection in those countries you passed through.
Since you did not apply for asylum in those countries, you are barred from the credible fear process. I'm
going to have the interpreter read some information to you that explains what this means.

Alien Number: ███████
Name: ███████
Country: Cameroon
Asylum Office: Arlington (ZAC)

Date: 23-Oct-2019
Asylum Officer: Ina Chu, ZOL02U
Lionbridge: ID59990 and ID5099

*The purpose of the remainder of the interview is to determine if you have a reasonable fear of persecution or torture. If it is determined that you have a reasonable possibility of being persecuted or tortured in the country to which you will be ordered removed, you will receive a Notice to Appear for a hearing in immigration court for consideration of your claim for withholding of removal under section 241(b)(3) of the Act, or for withholding or deferral of removal under the Convention Against Torture. If it is determined that you do not have a reasonable possibility of being persecuted or tortured, then you may ask to have an immigration judge review that decision. During that immigration judge review, you may also request review of the determination that you do not have a credible fear of persecution because you are barred from asylum under 8 CFR § 208.13(c)(4).*

Do you understand what I just read to you?
Yes

Do you have any questions about this information or want me to explain it in any other way?
No

Before you said you applied for 2 visas. Did you prepare both the visa applications yourself?
No

So neither?
Yes

Who prepared those two visa applications?
A friend of mine who did it for me

Why did he or she do it rather than you?
He offered to do it as a birthday gift and he asked if I can pay for the travel

Why was that a birthday gift?
I said I wanted to take a vacation and I already had a passport and he told me, in that case, I will offer that as a gift

The visa application contains a lot of biographic data. Why is he the best person to fill out that data?
He being my friend, he knows all of my information

How did he get your passport number and information about your family?
He asked me for it

Were you sitting with him when he filled out both applications?
No

Did you review the applications before he submitted them?
When they refused the visa, that's when I saw where the mistakes were

Where were the mistakes?

*Credible-Fear Interview*

Alien Number: ▊
Name: ▊
Country: Cameroon
Asylum Office: Arlington (ZAC)

Date: 23-Oct-2019
Asylum Officer: Ina Chu, ZOL02U
Lionbridge: ID59990 and ID5099

That friend of mine asked me to marry him. He put some information in the application and that's when I saw it was in conflict with reality. That's why it was refused

What part of the applications were incorrect?
He said he was married to me and put a name of a second child that I didn't know. That's when I saw there was an error. That child is his own child

Friend's name?
▊

How'd you meet this friend?
Schoolmate of mine

What was this child's name that he put on the application?
I don't remember

When was his child born?
I don't have any information about that kid because it's not mine

What was the point of putting him putting false information on your application? That could have gotten you in trouble
I don't know. He's the only one who knows the reason

How many children did you have at that time?
One

Did he accompany you to the consular interviews?
No

Do you remember your interviews with the consular officers?
Not very well

Did you answer all of the questions truthfully?
I don't remember the questions but I know I answered truthfully

Did your friend tell you to answer the questions in a certain way?
No

Were you pregnant at the time of the interviews?
No

In what language were these interviews conducted?
French

Did you understand the consular officers?

*Credible-Fear Interview*

Page **8** of **10**

Alien Number: A█████████
Name: █████████████████
Country: Cameroon
Asylum Office: Arlington (ZAC)

Date: 23-Oct-2019
Asylum Officer: Ina Chu, ZOL02U
Lionbridge: ID59990 and ID5099

Yes

Did you tell the consular officers you had two children?
At that time, when he asked me if I had any children, he said you have two kids, and I said no, I have one. And that's when I found out the conflict

He said you have two kids. "He" being the consular officer?
Yes

I'm looking at the notes from your second consular interview. I have that 8 U.S.C. 1202(f)
8 U.S.C. 1202(f)
I had a kid who was 2.5 years old

Is there a reason why your consular notes say 8 U.S.C. 1202(f)
█████
At that time, I had a 2.5 year old kid and I told the officer that I didn't have a 5 year old. When I asked him where he got that information, that's when he told me that was his child

Who told the consular officer that you have a 5 year old? 8 U.S.C. 1202(f)
I don't know. The officer asked if I have some children. I said I have one

Who told the consular officer that you have a 5 year old? 8 U.S.C. 1202(f)
I don't know

If your friend 8 U.S.C. 1202(f)                                    who else could have told the consular officer you have a 5 year old?
I don't remember

Did you ever tell the consular officer that you were married?
I don't remember

I have here that 8 U.S.C. 1202(f)
As I told you, I've never been married. There are many questions I don't remember

The notes from the consular interview regarding 8 U.S.C.      are specific, and include 8 U.S.C.
8 U.S.C. 1202(f)
He was an accountant where I was in training

So who told the consular officer that he was an accountant?
It could have been me. As I said before, when I went to the interview, I wasn't aware of what was on the application. When I answered the officer, that's what created the conflict. After I asked my friend why those statements in the application, that's when he told me that he included that child in the application

I'm saying that this extra information 8 U.S.C. 1202(f)
██████████████So who gave the consular officer this information?

Alien Number: ▮▮▮▮▮▮                    Date: 23-Oct-2019
Name: ▮▮▮▮▮▮▮▮▮▮▮▮▮               Asylum Officer: Ina Chu, ZOL02U
Country: Cameroon                      Lionbridge: ID59990 and ID5099
Asylum Office: Arlington (ZAC)

I don't know

I also have that 8 U.S.C. 1202(f) ▮▮▮▮▮▮▮▮ But you told me earlier that you were never
pregnant in 2015
No I was not (laughs)

What again is ▮▮▮▮ date of birth?
▮▮▮▮▮▮▮▮▮

You told me earlier it was ▮▮▮▮▮▮
It's ▮▮▮

I also have that you told the first asylum officer that his date of birth is ▮▮▮▮▮▮ Why the
difference?
I don't know who was born in ▮▮▮

Did you tell the I first asylum officer that ▮▮▮▮▮ birthday was in ▮▮▮ ?
No, I didn't say that. He was born in ▮▮▮

Is there anything else that is important to your claim that we have not yet discussed?
No

☒ Interpreter Read Section 3.2 (I-870) to applicant

Do you understand what was read to you?
Yes

Do you have any comments or questions?
No

Did you understand the interpreter?
Yes

---

INTERVIEW CONCLUDED: 11:29pm

**NOTES END**

# EXHIBIT C

**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services

# Record of Determination/Credible Fear Worksheet

| IRA | Arlington (ZAC) | | |
|---|---|---|---|
| District Office Code | Asylum Office Code | Alien's File Number | Alien's Last/ Family Name |
| Chu | Ina | Cameroon | |
| Asylum Officer's Last Name | Asylum Officer's First Name | Alien's Nationality | |

## *All statements in italics must be read to the applicant*

### SECTION I:                                    INTERVIEW PREPARATION

1.1  7/29/2019                                    1.2  At San Ysidro, Ca

Date of arrival [MM/DD/YY]                         Port of arrival

1.3                                               1.4  Otay Mesa Detention Center, 7488 Calzada de la Fuente, San
     7/29/2019                                         Diego, CA 92154

Date of detention [MM/DD/YY]                       Place of detention

1.5  8/2/2019                                     1.6  N/A

Date of AO orientation [MM/DD/YY]                  If orientation more than one week from date of detention, explain delay

1.7  9/4/2019; 10/23/2019          1.8  ZAC (Telephonic)

Date of interview [MM/DD/YY]             Interview site

1.9  ☒ Applicant received and signed **Form M-444** and relevant *pro bono* list on        8/2/2019

                                                                                  Date signed [MM/DD/YY]

1.10  Does applicant have consultant(s)?          ☐ Yes    ☒ No

1.11  If yes, consultant(s) name, address, telephone number and relationship to applicant

      N/A

1.12  Persons present at the interview (check which apply)

1.13  ☐  Consultant(s)

1.14  ☒  Other(s), list:              Interpreter (Telephonic)

1.15  ☐  No one other than applicant and asylum officer

1.16  Language used by applicant in interview:        French

| 1.17 | Lionbridge : 59990 | ☒ Yes ☐ No | 09:40 AM E | 09:55 AM E |
|---|---|---|---|---|
| | Interpreter Service, Interpreter ID Number. | Interpreter Has Forms | Time Started | Time Ended |
| 1.18 | Lionbridge : 5099 | ☒ Yes ☐ No | 09:55 AM E | 11:29 AM E |
| | Interpreter Service, Interpreter ID Number. | Interpreter Has Forms | Time Started | Time Ended |
| 1.19 | Language Line: 209644 (original interview) | ☒ Yes ☐ No | 2:49 PM E | 5:34 PM E |
| | Interpreter Service, Interpreter ID Number. | Interpreter Has Forms | Time Started | Time Ended |

1.20  ☐  Interpreter **was not changed** during the interview

1.21  ☒  Interpreter **was changed** during the interview for the following reason(s):

1.22  ☐  Applicant requested a female interpreter replace a male interpreter, or *vice versa*

1.23  ☐  Applicant found interpreter was not competent          1.24  ☐  Applicant found interpreter was not neutral

1.25  ☒  Officer found interpreter was not competent             1.26  ☐  Officer found interpreter was not neutral

1.27  ☐  Bad telephone connection

1.28  ☒  Asylum officer read the following paragraph to the applicant at the beginning of the interview:

**Alien's File Number:**  A█████████

*The purpose of this interview is to determine whether you may be eligible for asylum or protection from removal to a country where you fear persecution or torture. I am going to ask you questions about why you fear returning to your country or any other country you may be removed to. It is very important that you tell the truth during the interview and that you respond to all of my questions. This may be your only opportunity to give such information. Please feel comfortable telling me why you fear harm. U.S. law has strict rules to prevent the disclosure of what you tell me today about the reasons why you fear harm. The information you tell me about the reasons for your fear will not be disclosed to your government, except in exceptional circumstances. The statements you make today may be used in deciding your claim and in any future immigration proceedings. It is important that we understand each other. If at any time I make a statement you do not understand, please stop me and tell me you do not understand so that I can explain it to you. If at any time you tell me something I do not understand, I will ask you to explain.*

## SECTION II:                     BIOGRAPHIC INFORMATION

2.1 _____

Last Name/ Family Name [ALL CAPS]

2.2 _____    2.3 _____

First Name                          Middle Name

2.4 _____    2.5 Female

Date of birth [MM/DD/YY]            Gender

2.6 _____

Other names and dates of birth used

2.7 Cameroon              2.8 Cameroon

Country of birth          Country (countries) of citizenship (list all)

2.9 █████ Cameroon

Address before coming to the U.S. (List Address, City/Town, Province, State, Department, and Country).

2.10 Black          2.11 Catholic          2.12 French

Applicant's race or ethnicity    Applicant's religion    All languages spoken by applicant

2.13 Marital status:  ☒ Single    ☐ Married    ☐ Legally separated    ☐ Divorced    ☐ Widowed

2.14 Did spouse arrive with applicant?    ☐ Yes    ☐ No

2.15 Is spouse included in applicant's claim?    ☐ Yes    ☐ No

2.16 If currently married (including common-law marriage) list spouse's name, citizenship, and present location (**if with applicant, provide A-Number**):

2.17 Children:  ☒ Yes    ☐ No

2.18 List any children (*Use the continuation section to list any additional children*):

| Date of birth (MM/DD/YY) | Name | Citizenship | Present location (if w/ PA, list A-Numbers) | Did child arrive with PA? | | Is child included in PA's claim? | |
|---|---|---|---|---|---|---|---|
| █████ | █████ | █████ | █████ | ☐ Yes | ☒ No | ☐ Yes | ☒ No |
| █████ | █████ | █████ | █████ | ☐ Yes | ☒ No | ☐ Yes | ☒ No |
| _____ | _____ | _____ | _____ | ☐ Yes | ☐ No | ☐ Yes | ☐ No |
| _____ | _____ | _____ | _____ | ☐ Yes | ☐ No | ☐ Yes | ☐ No |
| _____ | _____ | _____ | _____ | ☐ Yes | ☐ No | ☐ Yes | ☐ No |

Form I-870 (Rev. 7/16/2019) N Page 2

**Alien's File Number:**

| Alien's File Number: | A |
|---|---|

2.19    Does applicant claim to have a medical condition (physical or mental), or has the officer observed any indication that a medical condition exists? If YES, answer questions 2.20 and 2.21 and explain below.    ☐ Yes    ☒ No

2.20    Has applicant notified the facility of medical condition?    ☐ Yes    ☐ No

2.21    Does applicant claim that the medical condition relates to torture?    ☐ Yes    ☐ No

2.22    Does the applicant have a relative, sponsor, or other community ties, including spouse or child already listed above?    ☒ Yes    ☐ No

2.23    If YES, provide information on relative or sponsor (use continuation section, if necessary):

Name

Relationship    Sister

Address

Telephone Number

☒ Citizen    ☐ Legal Permanent Resident    ☐ Other

## SECTION III:

## CREDIBLE-FEAR INTERVIEW

**The following notes are not a verbatim transcript of this interview.**
**These notes are recorded to assist the individual officer in making a determination**
**and the supervisory asylum officer in reviewing the determination.**
**There may be areas of the individual's claim that were not explored or documented for purposes of this threshold screening.**

The asylum officer must elicit sufficient information related to both credible fear of persecution and credible fear of torture to determine whether the applicant meets the threshold screening. Even if the asylum officer determines in the course of the interview that the applicant has a credible fear of persecution, the asylum officer must still elicit any additional information relevant to a fear of torture. Asylum officers are to ask the following questions and may use the continuation sheet if additional space is required. If the applicant replies YES to any question, the asylum officer must ask follow-up questions to elicit sufficient details about the claim in order to make a credible fear determination.

3.1    a. *Have you or any member of your family ever been mistreated or threatened by anyone in any country to which you may be returned?*

☒ Yes    ☐ No

See Q&A

b. *Do you have any reason to fear harm from anyone in any country to which you may be returned?*

☒ Yes    ☐ No

See Q&A

c. If YES to questions *a* or *b*: *Was it or is it because of any of the following reasons*? (Check each of the following boxes that apply.)

☒ Race    ☐ Religion    ☐ Nationality    ☐ Membership in a particular social group    ☐ Political Opinion

See Q&A

Alien's File Number:

3.2    ☒    At the conclusion of the interview, the asylum officer must read the following to applicant:

*If the Department of Homeland Security determines you have a credible fear of persecution or torture, or, where applicable, a reasonable fear of persecution or torture, your case will be referred to an immigration court, where you will be allowed to seek asylum or withholding of removal based on fear of persecution or withholding of removal under the Convention Against Torture. The Field Office Director in charge of this detention facility will also consider whether you may be released from detention while you are preparing for your hearing. If the asylum officer determines that you do not have a credible fear of persecution or torture, and, where applicable, you do not have a reasonable fear of persecution or torture, you may ask an Immigration Judge to review the decision. If you are found not to have a credible fear of persecution or torture and, where applicable, you do not have a reasonable fear of persecution or torture, you do not request review, you **may be removed** from the United States as soon as travel arrangements can be made. Do you have any questions?*

No

3.3    ☒    At the conclusion of the interview, the asylum officer must read a summary of the claim, consisting of the responses to Questions 3.1 a-c and information recorded in the Additional Information/Continuation section, to applicant.

****Typed Question and Answer (Q&A) interview notes and a summary and analysis of the claim must be attached to this form for all negative credible fear decisions. These Q&A notes must reflect that the applicant was asked to explain any inconsistencies or lack of detail on material issues and that the applicant was given every opportunity to establish a credible fear.

## SECTION IV:                          CREDIBLE FEAR FINDINGS

**A.    Credible Fear Determination (and reasonable fear determination, where applicable):**

Credibility

4.1    ☐    Applicant found credible.

4.2    ☒    Applicant found **not** credible.

Nexus

4.3    ☐    Race    4.4    ☐    Religion    4.5    ☐    Nationality    4.6    ☐    Membership in a Particular Social Group

(Define the social group): _____

4.7    ☐    Political Opinion    4.8    ☐    Coercive Family Planning [CFP]    4.9    ☐    No Nexus

Credible Fear Finding

4.10   ☐    Credible fear (or in the case of an alien determined to have no credible fear of persecution because he or she is barred from asylum pursuant to 8 CFR 208.13(c)(4), reasonable fear) of **persecution** established.

       OR

4.11   ☐    Credible fear (or in the case of an alien determined to have no credible fear of persecution because he or she is barred from asylum pursuant to 8 CFR 208.13(c)(4), reasonable fear) of **torture** established.

       OR

4.12   ☐    No fear of persecution or torture established.

**B.    Possible Bars:**

4.13   ☐    Applicant could be subject to a bar(s) to asylum or withholding of removal (check the box(es) that applies and explain on the continuation sheet):

       4.14   ☐    Particularly Serious Crime    4.15   ☐    Security Risk    4.16   ☐    Aggravated Felon

       4.17   ☐    Persecutor    4.18   ☐    Terrorist    4.19   ☐    Firmly Resettled

       4.20   ☐    Serious Non-Political Crime Outside the United States

4.21   ☒    Applicant does **not** appear to be subject to a bar(s) to asylum or withholding of removal.

---

**Alien's File Number:** A

## C.     Identity:

4.25 ☐ Applicant's identity was determined with a reasonable degree of certainty (check the box(es) that applies):

4.26 ☐ Applicant's own credible statements. (If testimony is credible overall, this will suffice to establish the applicant's identity with a reasonable degree of certainty.)

4.27 ☐ Passport, which appears to be authentic.

4.28 ☐ Other evidence presented by applicant or in applicant's file (List): _____

4.29 ☒ Applicant's identity was **not** determined with a reasonable degree of certainty. (Explain on the continuation sheet.)

## SECTION V:             ASYLUM OFFICER / SUPERVISOR NAMES AND SIGNATURES

5.1  Ina Chu, ZOL02U          5.2  _[signature]_          5.3  10/23/2019

Asylum officer name and ID CODE (print)     Asylum officer's signature          Decision date

5.4  Amanda Reiss, ZOL01H      5.5  _Amanda Reiss_       5.6  10/29/2019

Supervisory asylum officer name        Supervisor's signature          Date supervisor approved decision

## ADDITIONAL INFORMATION/CONTINUATION

Alien is barred from asylum pursuant to 8 CFR 208.13(c)(4) and therefore the alien has not established a significant possibility of establishing eligibility for asylum and has received a negative credible fear of persecution determination. Alien was then screened for potential entitlement to withholding under INA 241 or CAT protection under a 'reasonable possibility of persecution' and 'reasonable possibility of torture' standard.

In February 2015, the applicant had a visa interview with a consular officer. In the notes, the consular officer wrote, 8 U.S.C. 1202(f)

The visa was denied under 214B, intending immigrant. During her credible fear interviews, the applicant told both USCIS officers she had one child at the time of her visa interviews. When confronted with the discrepancy, the applicant explained her friend completed her visa applications on her behalf, and that she never reviewed the visa applications for accuracy.

The applicant's explanation is not reasonable. The information regarding her children did not come from her visa applications; 8 U.S.C. 1202(f)

The second USCIS officer noticed additional discrepancies. First, the applicant listed 8 U.S.C. on both visa applications. 8 U.S.C. 1202(f)

Form I-870 (Rev. 7/16/2019) N Page 6

**Alien's File Number:**                                                                  A

The applicant told the USCIS officers she was never married, and that 8 U.S.C. 1202(f)   on her visa applications, was actually the same friend who completed the visa applications on her behalf. When confronted with the discrepancy, the applicant restated her friend filled out the visa applications, and she does not know why he listed himself as her husband. Notably, the applicant said she did not partake in filling out the visa applications; however, the applications contained specific and private bio data such as the applicant's passport number, parents' names, and their dates of birth.

Second, 8 U.S.C. 1202(f)                                                                      The applicant told the USCIS officer that she was not pregnant during the first visa interview. When confronted with the discrepancy, the applicant reiterated she was not pregnant during the first visa interview.

Third, the applicant told the first USCIS officer            date of birth is            The applicant told the second USCIS Officer         date of birth is         then later,             . When confronted with this discrepancy, the applicant reiterated         date of birth is

Each of the latter discrepancies taken alone could be explained away, especially when weighed against the humanitarian benefit being sought. However taken together, they call into question the applicant's identity. The second USCIS officer finds the applicant is not credible in the totality of circumstances.

# EXHIBIT D

**U. S. Department of Homeland Security**
U.S. Citizenship and Immigration Services

**Record of Negative Credible/Reasonable Fear Finding and
Request For Review by Immigration Judge for Aliens Barred
From Asylum Pursuant to 8 CFR 208.13(c)(4)**

Alien File Number: ▮▮▮▮▮▮▮

**1.    To be explained to the alien by the asylum officer:**

**A.** U.S. Citizenship and Immigration Services (USCIS) has determined that you are an alien described in 8 CFR 208.13(c)(4) and therefore, you have not established a credible fear because you cannot show a significant possibility of establishing eligibility for asylum.

**B.** You have not established a reasonable fear with respect to your application for withholding of removal under INA 241(b)(3) or withholding or deferral of removal under the Convention Against Torture pursuant to 8 CFR 208.16 for the following reason(s):

☐  You have not established a reasonable fear of persecution in a country to which you have been ordered removed because:
  ☐  You have not indicated that you were harmed in the past and you have not expressed fear of future harm.
  ☐  There is no reasonable possibility that the harm you experienced and/or the harm you fear is on account of your race, religion, nationality, political opinion, or membership in a particular social group.
  ☐  You have not indicated that you were harmed in the past, or there is no reasonable possibility that the past harm or the harm you fear in the future constitutes persecution.
  ☐  There is no reasonable possibility that you would suffer the harm you fear.
  ☐  You could reasonably avoid persecution by relocating within your country.

**AND**

☐  You have not established a reasonable fear of torture in a country to which you may be removed because you have not established that there is a reasonable possibility that:
  ☐  You would suffer severe physical or mental pain or suffering.
  ☐  The harm you fear would be specifically intended to inflict severe physical or mental pain or suffering.
  ☐  The harm you fear would be inflicted by or at the instigation of, or with the consent or acquiescence of, a public official or other person acting in an official capacity.
  ☐  The harm you fear would be inflicted while you are in the custody or physical control of the offender.
  ☐  The harm you fear would not arise only from, would not be inherent in, and would not be incidental to, lawful sanctions.

**C.** ☒  Considering the totality of the circumstances and all relevant factors, you have not established that your testimony is credible.

Therefore, you are ordered removed from the United States. You may request that an Immigration Judge review this decision.

If you request that an Immigration Judge review this decision, you will remain in detention until an Immigration Judge reviews your case. That review could occur as long as 7 days after you receive this decision.

If you indicate below that do not request that an Immigration Judge review the decision, you may be removed from the United States immediately.

**2.    To be completed by the alien:**

☒  **Yes, I request Immigration Judge review** of the decisions that I do not have a credible fear of persecution or torture and that I do not have a reasonable fear of persecution or torture.

☐  **No, I do not request Immigration Judge review** of the decisions that I do not have a credible fear of persecution or torture and that I do not have a reasonable fear of persecution or torture.

| Applicant's Last Name/ Family Name (Print) | Applicant's First Name (Print) | Applicant's Signature | |
|---|---|---|---|
| Cronley | B | 11/8/17 | |
| Asylum Officer's Last Name (Print) | Asylum Officer's First Name, (Print) | Date | |

The contents of this form were read and explained to the applicant in the _____French_____ language.

Interpreter used:

By telephone: (list interpreter service /ID number used _____ ).

In person (I, _____ , certify that I am fluent in both the _____ and English languages. I interpreted the above information completely and accurately to the alien.)

_____    _____
Interpreter's Signature    Date

Form I-869A (7/16/19)

# EXHIBIT E

U. S. Department of Homeland Security

# Notice of Referral to Immigration Judge

| | |
|---|---|
| c/o DHS Otay Mesa Detention Center, 7488 Calzada de la Fuente, San Diego, CA 92154<br>619-661-4071    DEPARTMENT OF JUSTICE | **Date** 11 8 19 |
| | **A-File** |
| **Name** ~~VE OFFICE FOR ATION REVIEW~~ | **Country of Citizenship**    Cameroon |
| **Place and Manner of Arrival**    San Ysidro, Ca Port of Entry NOV 0 8 2019 | **Date of Arrival**    7/29/2019 |

**To immigration judge:**    IMMIGRATION COURT
OTAY MESA (OTM)

☒ 1. The above-named alien has been found inadmissible to the United States and ordered removed under section 235(b)(1) of the Immigration and Nationality Act (Act). A copy of the removal order is attached. The alien has requested asylum or protection under the Convention against Torture. An asylum officer has reviewed the matter and concluded that the alien **does not** have a credible fear of persecution or torture. The alien has requested a review of that determination in accordance with section 235(b)(1)(B)(iii)(III) of the Act and 8 CFR § 208.30(g).

☐ 2. The above-named alien arrived in the United States as a stowaway and has been ordered removed under section 235(a)(2) of the Act. The alien has requested asylum or withholding of removal under the Convention against Torture. An asylum officer has reviewed the matter and concluded that the alien **does not** have a credible fear of persecution or torture. The alien has requested a review of that determination in accordance with section 235(b)(1)(B)(iii)(III) of the Act.

☐ 3. The above-named alien arrived in the United States in the manner described below and has requested asylum or withholding of removal under the Convention against Torture. The matter is referred for a determination in accordance with 8 CFR § 208.2(c). Arrival category (check each):

☐ Crewmember/applicant        ☐ Crewmember/refused        ☐ Crewmember/landed
☐ Crewmember/violator          ☐ VWP/applicant                ☐ VWP/violator
☐ 235(c) order                     ☐ S-visa nonimmigrant        ☐ Stowaway: credible fear determination attached

☐ 4. The above-named alien has been ordered removed by an immigration officer under section 235(b)(1) of the Act. A copy of the removal order is attached. In accordance with section 235(b)(1)(C) of the Act, the matter is referred for review of that order. The above-named alien claims to be (check one):

☐ a United States citizen                                         ☐ a lawful permanent resident alien
☐ an alien granted refugee status under section 207 of the Act    ☐ an alien granted asylum under section 208 of the Act

☐ 5. The above-named alien has been ordered removed under section 238(b) of the Act, or the Department of Homeland Security (DHS) has reinstated a prior exclusion, deportation, or removal order of the above-named alien under section 241(a)(5) of the Act. A copy of the removal order and, if applicable, the notice of reinstatement, are attached. The alien has expressed fear of persecution or torture. An asylum officer has reviewed the claim and concluded that the alien **does not** have a reasonable fear of persecution or torture. The alien has requested a review of that determination in accordance with 8 CFR §§ 208.31(f) and (g).

☐ 6. The above-named alien has been ordered removed under section 238(b) of the Act, or the DHS has reinstated a prior exclusion, deportation, or removal order of the above-named alien under section 241(a)(5) of the Act. A copy of the removal order and, if applicable, the notice of reinstatement, are attached. The alien has expressed fear of persecution or torture. An asylum officer has reviewed the claim and concluded that the alien **has** a reasonable fear of persecution or torture. The matter has been referred for a determination in accordance with 8 CFR § 208.31(e).

☐ 7. The Secretary of Homeland Security has determined that the release from custody of the above-named alien who is under a final order of removal would pose a special danger to the public according to the standards set in 8 CFR § 241.14(f)(1). The DHS has therefore invoked procedures to continue the alien's detention even though there is no significant likelihood that the alien will be removed from the United States in the reasonably foreseeable future. The matter is referred to the immigration judge for a review of this determination in accordance with 8 CFR § 241.14(g).

Page 1 of 2

Form I-863 (Rev.08/01/07)

U.S. Department of Homeland Security
Citizenship and Immigration Services                    Notice of Referral to Immigration Judge

## NOTICE TO APPLICANT

You are ordered to report for a hearing before an immigration judge for the reasons stated above. Your hearing is scheduled on:

__To be determined__    at    __To be determined__ .  You are to appear at: _____
   **(Date)**                    **(Time)**

_____ 7488 CALZADA DE LA FUENTE SAN DIEGO CA 92154. EOIR OTM San Diego, CA _____
                           **(Complete Office Address)**

☒ You may be represented in this proceeding, at no expense to the government, by an attorney or other individual authorized and qualified to represent persons before an Immigration Court. If you wish to be so represented, your attorney or representative should appear with you at this hearing. In the event of your release from custody, you must immediately report any change of your address to the Immigration Court on Form EOIR-33, which is provided with this notice. If you fail to appear for a scheduled hearing, a decision may be rendered in your absence.

☒ You may consult with a person or persons of your own choosing prior to your appearance in Immigration Court. Such consultation is at no expense to the government and may not unreasonably delay the process.

☒ Attached is a list of recognized organizations and attorneys that provide free legal service.

_____ Acting Supervisory Asylum Officer
**(Signature and title of immigration officer)**

## CERTIFICATE OF SERVICE

☒ The contents of this notice were read and explained to the applicant in the _____ language.

☐ An original of this notice was delivered to the above-named applicant by the undersigned on _____ and the alien has been advised of communication privileges pursuant to 8 CFR 236.1E. Delivery was made:

☒ in person    ☐ by certified mail, return receipt requested # _____    ☐ by regular mail

_____ Acting Supervisory Asylum Officer
**(Signature and title of the immigration officer)**

Attachments to copy presented to immigration judge:

☐ Passport                              ☐ Form I-860
☐ Visa                                  ☒ Form I-869
☐ Form I-94                             ☐ Form I-898
☐ Forensic document analysis           ☐ Asylum officer's reasonable fear determination worksheet (I-899)
☐ Fingerprints and photographs         ☒ Asylum officer's credible fear determination worksheet (I-870)
☐ EOIR-33

☐ **FOR 8 CFR 241.14(f) CASES ONLY:**  Written statement including summary of the basis for the Secretary's determination to continue the alien in detention, and description of the evidence relied on in finding the alien especially dangerous (with supporting documents attached).

☐ **FOR 8 CFR 241.14(f) CASES ONLY:**  Written notice advising the alien of initiation of proceedings and informing alien of procedures governing the Reasonable Cause Hearing at 8 CFR 241.14(h).

☐ Other
(specify):        **Interview notes** _____

Form I-863 (rev. 08/01/07)

# EXHIBIT F

LAW OFFICE OF
**LUIS MACIAS JR., APC**
ATTORNEY AT LAW

642 THIRD AVENUE, SUITE K
CHULA VISTA, CA 91910
p 619-245-4106 | f 619-245-4109

December 23, 2019                    **via email ZAR-APSO.ZAR-APSO@uscis.dhs.gov**

Arlington Asylum Office
1525 Wilson Boulevard, Suite 300
Arlington, VA 20598.

Re:    Request/Motion for Reconsideration of Negative Reasonable Fear Finding
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Dear Supervisor:

I am writing to request reconsideration of the negative credible fear finding made by the

Asylum Office and a stay of removal pending the decision on the motion. This follows a

determination hearing before the Immigration Judge on November 14, 2019 affirming the

decision of the asylum officer, and ordering the applicant removed from the U.S.

## AUTHORITY

A motion for reconsideration may be filed regarding a decision by a Department of

Homeland Security (DHS) officer. 8 C.F.R. section 1003.2 (g)(2). The Service may reconsider a

negative credible fear finding that has been concurred upon by an immigration judge after

providing notice of its reconsideration to the immigration judge. 8 C.F.R. section

1208.30(g)(2)(iv)(A).

An applicant may be re-interviewed prior to removal even if his application has been

denied by the Asylum Officer and the Immigration Judge if it is determined that the applicant

"has made a reasonable claim that compelling new information concerning the case exists and

should be considered." Memo, Benson, Exec. Assoc. Comm. for Field Operations, INS (Dec. 30, 1997), published on AILA InfoNet at Doc. No. 98021090.

### NEW EVIDENCE IN SUPPORT OF RESPONDENT'S CLAIM

According to the credible fear notes, respondent testified that he is afraid to return to

Cameroon because 

. If she returns to Cameroon she believes

and that she cannot safely relocate anywhere.

The respondent was given a negative credibility determination because of inconsistent responses to questions posed during the interview. Attached please find respondent's written statement which we ask you to consider. We would like to address these inconsistencies and explain why her negative reasonable fear should be reconsidered.

The first discrepancy discussed by the asylum officer involved respondent's visa applications where she listed herself as married                          The applicant told the asylum officer she was not married.

As explained by the respondent in her statement, she stated in the visa application that she was married because in the            married takes place in two phases – customary married and civil marriage. Respondent is married under the local customs and tradition of the            involving the use of the bride price, or "dowry," but the marriage is not recognized by law before the state because it does not appear in the civil registrar. This is fully corroborated by the attached articles on the            showing that "marriages typically involve a bride price to be paid to the bride's family."

Therefore, respondent was being truthful when she stated on the visa applications that she was married. However, it does not appear that either the consular officers or the asylum made the distinction clear when questioning respondent to her marital status.

Regarding the contention that respondent only had one child at the time of her consular interviews, not two, respondent acknowledges that she did tell the consular officer she had two children. However, respondent explains that her husband did have another child at the time so this is why she was told to state that she had two children: her son █████████████████ and the other child.

Respondent later learned that her husband had a second family, and she ended the relationship with him. The marriage was never legally recognized by the state, only in the ███████████████, and this is why she told the asylum officer she was never married. It is a true statement that respondent has never been legally married.

Regarding the statement by the consular officer that in February 2015 respondent appeared pregnant, she does not know why the consular officer would say that. She recalls that she was dressed in African garb and clothing and believes that perhaps she may have looked pregnant because she was heavier in weight. But she reports that she was not pregnant and that the officer was mistaken. Indeed, the consular officer only reported that she was "visibly pregnant", but noticeably absent is a note indicating that respondent confirmed she was pregnant during her consular interview.

Finally, we would like you to consider respondent's background. She is not well educated, and during her interview she noted she was "nervous and depressed." She was depressed because she had endured a significant trauma in her life: ████████████████

████████████████████ Please consider that under these circumstances, respondent probably

was not in the best frame of mind, and this may explain why she was not able to clearly answer

even a date of birth for ▮▮▮▮▮▮ (Please see excerpts from article titled "Trauma and

Memory: Telling Refugee Stories: Trauma, Credibility and the Adversarial Adjudication of

Claims for Asylum," providing that "by design . . . adjudication system is biased against the

stories told by trauma survivors," and "but when the applicant is a trauma survivor and the only

evidence is the applicant's story, aggressive cross-examination is more likely to obscure the truth

than reveal it especially when an applicant is not represented.")

Finally, we ask you consider that if respondent's claims are true that ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ this would consist of "past

persecution" on account of her ethnicity, political opinion, and membership in a particular social

group consisting of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

"Gender" or "sex" is a form of immutable characteristic specifically recognized in the

*Acosta* definition of particular social group. *Acosta*, 19 I&N Dec. 211, 233. The Ninth Circuit in

*Mohammed v. Gonzales* 400 F.3d 785 called gender a "prototypical immutable characteristic,"

an analysis later reaffirmed in *Perdomo v. Holder*, supra, 611 F.3d at 667 (noting that in

*Mohammed*, "we clearly acknowledged that women in a particular country, regardless of

ethnicity or clan membership, could form a particular social group," and remanding to the Board

to determine in the first instance). *See also, Silvestre-Mendoza v. Sessions*, 729 Fed. Appx. 597,

598 (2018) (remanding to the BIA to consider whether "Guatemalan women" constitutes a

particular social group).  In addition to the Ninth Circuit, the Third, the Seventh, the Eighth and

the Tenth Circuits all have endorsed the Board's immutability analysis in gender cases. *See, e.g.,*

*Gomez-Zuluaga v. Att'y Gen. of the United States*, 527 F.3d 330, 348 (3rd 2008) (finding

"women who have escaped involuntary servitude after being abducted and confined by the FARC" constitutes a particular social group); *Cece v. Holder*, 733 F.3d 662, 676–77 (7th Cir. 2013) (concluding that young women living alone in Albania is a cognizable social group under *Acosta* because the "the attributes are immutable or fundamental"); *Hassan v. Gonzales*, 484 F.3d 513, 518 (8th Cir. 2007) (finding Somali females to constitute a PSG); *Niang v. Gonzales*, 422 F.3d 1187, 1199 (10th Cir. 2005) (concluding that female members of a tribe constitutes a PSG); *See also Ahmed v. Holder*, 611 F.3d 90, 96 (1st Cir. 2010) ("Gender – a common, immutable characteristic – can be a component of a viable 'social group' definition.").

Respondent's proposed social group of                         s immutable because it consist of two innate characteristics that are fundamental to an individual's identity. *Matter of Acosta* 19 I&N Dec. 211 at 233. '

xamples of immutable characteristics because they cannot be changed, and an individual should not be required to change his or her tribe and gender. *Id.* at 233 (proving that gender and nationality are innate characteristics that are fundamental to individual identity). *see also Matter of Kasinga*, 21 I&N Dec. 357, 356-66 (BIA 1996) (holding that the characteristic of being a "young women" and a "member of the Tchama-Kunsuntu Tribe" cannot be changed.").

With regards to particularity, the group must be defined by characteristics that provide a clear benchmark for determining who falls within the group. See *Matter of A-M-E & J-G-U-* 24 I&N Dec. 69, 76 (BIA 2007); *Matter of M-E-V-G-* 26 I&N Dec. at 239. Particularity requires proof that the social group is not amorphous and diffuse, but that is "sufficiently distinct" to be recognized "in the society in question, as a discrete class of persons." *Matter of S-E-G-* 24 I&N Dec. 579 (BIA 2008).

Here, the terms that define respondent's group – ' ██████████ – are clear and

precise, as ██████████████████ both have commonly understood meanings

that are unlikely to change when defined by different persons. See *Matter of A-M-E & J-G-U-* 24

I&N Dec. 69 at 76 (finding that the particular social group defined by "affluent Guatemalans"

was not particular because "affluence is simply too subjective, inchoate, and variable.")

Accordingly, respondent's group is not amorphous because its defining terms provide an

adequate benchmark, gender, for determining group membership. *Id.* And the boundaries of the

group are identifiable: women in the tribe are members, while women outside the tribe are not.

Some women are part of the group, while men are not.

The BIA's social distinction test requires a country condition report, expert or similar

evidence to show how the society from whence the claim arises views the group. *M-E-V-G-,* 26

I&N Dec. at 244 ("Evidence such as country conditions reports, expert witness testimony, and

press accounts of discriminatory laws and policies, historical animosities, and the like may

establish that a group exists and is perceived as 'distinct' or 'other' in a particular society.").

In the present case, the group is socially distinct within the society in question. This is

supported by respondent's statement that ████████████████████████



Supporting social distinction is respondent's testimony that her name ██████████

named, and "they know by name tha ██████████ . We also have a dialect that is different. We

do not have the same type of tone when we speak."

Supporting the evidence of social distinction, the record in this case include press

accounts, news articles, and country reports that are attached.

The potential human rights at stake in this case cannot be overstated, and based on the new evidence we ask you to reconsider the conclusions reached in this case.

Based on the above, applicant respectfully requests that the asylum office reconsider the conclusions reached in the interview and order a re-interview if appropriate. The interview can be tailored to address the specific issue raised in this motion, and the new evidence presented herein, including respondent's written statement.

Sincerely,

Luis Macias, Jr.

Enclosures-    Signed G-28
               Respondent's Written Statement and English translation
               News Articles re treatment of ███████████████████ party

**Notice of Entry of Appearance
as Attorney or Accredited Representative**

Department of Homeland Security

DHS
Form G-28
OMB No. 1615-0105
Expires 05/31/2021

## Part 1. Information About Attorney or Accredited Representative

1. USCIS Online Account Number (if any)

▶ [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

### Name of Attorney or Accredited Representative

2.a. Family Name (Last Name)  Castro

2.b. Given Name (First Name)  Carolina

2.c. Middle Name

### Address of Attorney or Accredited Representative

3.a. Street Number and Name  642 Third Avenue

3.b. ☐ Apt. ☒ Ste. ☐ Flr.  K

3.c. City or Town  Chula Vista

3.d. State  CA    3.e. ZIP Code  91910

3.f. Province

3.g. Postal Code

3.h. Country  United States

### Contact Information of Attorney or Accredited Representative

4. Daytime Telephone Number  619-245-4106

5. Mobile Telephone Number (if any)

6. Email Address (if any)  carolina.castro@macias-law.com

7. Fax Number (if any)  619-245-4109

## Part 2. Eligibility Information for Attorney or Accredited Representative

Select **all applicable** items.

1.a. ☒ I am an attorney eligible to practice law in, and a member in good standing of, the bar of the highest courts of the following states, possessions, territories, commonwealths, or the District of Columbia. If you need extra space to complete this section, use the space provided in **Part 6. Additional Information.**

Licensing Authority

1.b. Bar Number (if applicable)  253255

1.c. I (select **only one** box) ☒ am not ☐ am subject to any order suspending, enjoining, restraining, disbarring, or otherwise restricting me in the practice of law. If you are subject to any orders, use the space provided in **Part 6. Additional Information** to provide an explanation.

1.d. Name of Law Firm or Organization (if applicable)  Law Office of Luis Macias, Jr. APC

2.a. ☐ I am an accredited representative of the following qualified nonprofit religious, charitable, social service, or similar organization established in the United States and recognized by the Department of Justice in accordance with 8 CFR part 1292.

2.b. Name of Recognized Organization

2.c. Date of Accreditation (mm/dd/yyyy)

3. ☐ I am associated with

the attorney or accredited representative of record who previously filed Form G-28 in this case, and my appearance as an attorney or accredited representative for a limited purpose is at his or her request.

4.a. ☐ I am a law student or law graduate working under the direct supervision of the attorney or accredited representative of record on this form in accordance with the requirements in 8 CFR 292.1(a)(2).

4.b. Name of Law Student or Law Graduate

## Part 3. Notice of Appearance as Attorney or Accredited Representative

If you need extra space to complete this section, use the space provided in **Part 6. Additional Information.**

This appearance relates to immigration matters before (select **only one** box):

**1.a.** ☐ U.S. Citizenship and Immigration Services (USCIS)

**1.b.** List the form numbers or specific matter in which appearance is entered.

**2.a.** ☒ U.S. Immigration and Customs Enforcement (ICE)

**2.b.** List the specific matter in which appearance is entered.

**3.a.** ☐ U.S. Customs and Border Protection (CBP)

**3.b.** List the specific matter in which appearance is entered.

**4.** Receipt Number (if any)

▶ 

**5.** I enter my appearance as an attorney or accredited representative at the request of the (select **only one** box):

☒ Applicant    ☐ Petitioner    ☐ Requestor

☐ Beneficiary/Derivative    ☐ Respondent (ICE, CBP)

## Information About Client (Applicant, Petitioner, Requestor, Beneficiary or Derivative, Respondent, or Authorized Signatory for an Entity)

**6.a.** Family Name (Last Name) ███████████

**6.b.** Given Name (First Name) ██████

**6.c.** Middle Name ████

**7.a.** Name of Entity (if applicable)

**7.b.** Title of Authorized Signatory for Entity (if applicable)

**8.** Client's USCIS Online Account Number (if any)

▶ 

**9.** Client's Alien Registration Number (A-Number) (if any)

▶ A- ██████████████

## Client's Contact Information

**10.** Daytime Telephone Number

███████████

**11.** Mobile Telephone Number (if any)

**12.** Email Address (if any)

## Mailing Address of Client

**NOTE:** Provide the client's mailing address. **Do not** provide the business mailing address of the attorney or accredited representative **unless** it serves as the safe mailing address on the application or petition being filed with this Form G-28.

**13.a.** Street Number and Name    7488 Calzada De La Fuente

**13.b.** ☐ Apt.    ☐ Ste.    ☐ Flr.

**13.c.** City or Town    Otay Mesa

**13.d.** State    CA    **13.e.** ZIP Code    92154

**13.f.** Province

**13.g.** Postal Code

**13.h.** Country

United States

## Part 4. Client's Consent to Representation and Signature

### Consent to Representation and Release of Information

I have requested the representation of and consented to being represented by the attorney or accredited representative named in **Part 1.** of this form. According to the Privacy Act of 1974 and U.S. Department of Homeland Security (DHS) policy, I also consent to the disclosure to the named attorney or accredited representative of any records pertaining to me that appear in any system of records of USCIS, ICE, or CBP.

## Part 4. Client's Consent to Representation and Signature (continued)

### Options Regarding Receipt of USCIS Notices and Documents

USCIS will send notices to both a represented party (the client) and his, her, or its attorney or accredited representative either through mail or electronic delivery. USCIS will send all secure identity documents and Travel Documents to the client's U.S. mailing address.

If you want to have notices and/or secure identity documents sent to your attorney or accredited representative of record rather than to you, please select **all applicable** items below. You may change these elections through written notice to USCIS.

**1.a.** [X] I request that USCIS send original notices on an application or petition to the business address of my attorney or accredited representative as listed in this form.

**1.b.** [ ] I request that USCIS send any secure identity document (Permanent Resident Card, Employment Authorization Document, or Travel Document) that I receive to the U.S. business address of my attorney or accredited representative (or to a designated military or diplomatic address in a foreign country (if permitted)).

**NOTE:** If your notice contains Form I-94, Arrival-Departure Record, USCIS will send the notice to the U.S. business address of your attorney or accredited representative. If you would rather have your Form I-94 sent directly to you, select **Item Number 1.c.**

**1.c.** [ ] I request that USCIS send my notice containing Form I-94 to me at my U.S. mailing address.

### Signature of Client or Authorized Signatory for an Entity

**2.a.** Signature of Client or Authorized Signatory for an Entity
➡ ✗

**2.b.** Date of Signature (mm/dd/yyyy) 12/19/19

## Part 5. Signature of Attorney or Accredited Representative

I have read and understand the regulations and conditions contained in 8 CFR 103.2 and 292 governing appearances and representation before DHS. I declare under penalty of perjury under the laws of the United States that the information I have provided on this form is true and correct.

**1.a.** Signature of Attorney or Accredited Representative

**1.b.** Date of Signature (mm/dd/yyyy) 12/19/19

**2.a.** Signature of Law Student or Law Graduate

**2.b.** Date of Signature (mm/dd/yyyy)

## Part 6.  Additional Information

If you need extra space to provide any additional information within this form, use the space below.  If you need more space than what is provided, you may make copies of this page to complete and file with this form or attach a separate sheet of paper.  Type or print your name at the top of each sheet; indicate the **Page Number**, **Part Number**, and **Item Number** to which your answer refers; and sign and date each sheet.

**1.a**   Family Name
          (Last Name)            ███████████████████

**1.b.**  Given Name
          (First Name)           ███████████████████

**1.c.**  Middle Name            ███████████████████

**2.a.**  Page Number   **2.b.**  Part Number   **2.c.**  Item Number

**2.d.**
_____
_____
_____
_____
_____
_____
_____
_____
_____

**3.a.**  Page Number   **3.b.**  Part Number   **3.c.**  Item Number

**3.d.**
_____
_____
_____
_____
_____
_____
_____
_____
_____

**4.a.**  Page Number   **4.b.**  Part Number   **4.c.**  Item Number

**4.d.**
_____
_____
_____
_____
_____
_____
_____
_____
_____

**5.a.**  Page Number   **5.b.**  Part Number   **5.c.**  Item Number

**5.d.**
_____
_____
_____
_____
_____
_____
_____
_____
_____

**6.a.**  Page Number   **6.b.**  Part Number   **6.c.**  Item Number

**6.d.**
_____
_____
_____
_____
_____
_____
_____
_____

je m'appelle

fille ████ je

suis célibataire et mère de deux enfants, je suis née ████

je suis ████





Entre temps ma copine a fait la connaissance d'une
femme ; un jour dans le taxi alors qu'elle revenait de
l'école elle a essayé de lui expliquer le problème, elle
lui a remis le numero de Mme ████████████ qu'elle pourra
l'aider, nous l'avions appelé d'où elle nous proposa une
voix clandestine à partir de l'aéroport de Douala pour
l'équateur (quito)

Nous avons accepté, elle a demandé qu'on lui remette mon passport, avec une demi-carte photo et la somme de un million cinq cents mille francs CFA. ( 1.500.000 F) Nous avons collecté les fonds, ma copine l'a appelé, elle a envoyé quelqu'un on lui a remis.

Entre temps ma copine préparait mon voyage car je ne pouvais pas sortir de ma cachette, elle m'a trouvé un nouveau téléphone, je passais toute mes journées à faire des recherches à l'équateur c'est à ce moment que j'ai découvert que je pouvais voyager de l'équateur par route jusqu'aux les états-unis car je savais que les états-unis d'Amérique était un pays de paix et de droit qui respecte le droit de l'homme et qui traite mieux les immigrants.

Dix jours plutard on a remis le passport, les documents en ce qui concerne le voyage, le billet d'avion et que je devais partir dans deux jours. Le jour que je devais partir nous avons trouvé un pêcheur qui m'a transporté dans sa pirogue de Bonaberi jusqu'à la base Naval, lieu où on a pris rendez-vous avec le chauffeur de Mme ██████ qui m'amena jusqu'à l'aéroport de Douala.

Nous sommes entré par le parcking du sous-sol le chauffeur a appelé un commissaire il est venu me prendre dans la voiture, il m'a amené dans un bureau il a prit mon passport, mon billet d'avion et ma valise il est sorti plutard il est revenu me demander de le suivre, il m'a amené jusqu'à l'entrée de l'avion il m'a remi mon passport, mon billet d'avion, mon body-pass il m'a dit


support@asaptranslate.com


Member # 265128

## Certification of Translation

We, ASAP Translate, a professional translation services company having no relation to the client, hereby certify that our company's translations have been translated by qualified and experienced translators, and meets all USCIS requirements. In our company's best judgment the certified translations we provide are a true and accurate translation of the original documents, which truly reflects the content, meaning and style of the original documents.

We do not guarantee that the original is a genuine document, or that the statements contained in the original document are true. ASAP Translate assumes no liability for the way in which the customer uses the translation or any third party, including end-users of the translation.

Sincerely,

Thunder Hawk  LLC
d/b/a ASAP Translate
Address: P.O. Box 479 Lehi UT 84043

Signed:

# My story

My  name  is ████████████████████████ , daughter  of
████████ and of ████████████ , of maiden name ████████
I am single and a mother of two children, I was born on ████████████ I am
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

Indeed everything started in 2013 when ████████████████████









I can say that it is by the grace of God that I have been saved because since
that day many of us have been missing and without news.

After









In the meantime my friend met a woman named Mrs. ▮▮▮▮▮▮▮▮
who could help us. We had called her and she offered us a clandesdine route from
Douala airport to Ecuador (QUITO). We accepted, she asked that she be handed
my passport with a half card photo and the sum of one million five hundred
thousand francs CFA (1,500,000 CFA); we collected the funds and my friend
called her, she sent someone to recover.

In the mean time my friend was planning my trip because I could not get
out of my hiding place; she found me a new phone, I spent all my days doing
research about Ecuador, that's when I discovered that I could travel from Ecuador
by road to the United States because I knew that the United States of America was
a country of law that respects human rights and treats immigrants better.

Ten days later Mrs. ▮▮▮▮ gave us the passport and documents regarding
the trip, the plane ticket, I had to leave in two days. The day that I had to leave we
found a fisherman who transported me in his pirogue from ▮▮▮▮ to the N▮▮
Base, where we had made an appointment with the driver of Mrs. ▮▮▮▮ who
brought me to the ▮▮▮▮ airport.

We entered by parking in the basement, the driver called a steward who
came to take me in the car, he took me to an office he took my passport, my plane
ticket and my suitcase; he left, later he came back to ask me to follow him, he
brought me to the entrance of the plane, he handed me my passport, my plane

ticket, my body-pass, he told me that I had to get my suitcase back in Quito, he wished me a good trip and I went on the plane. This is how I left my country Cameroon on March 01, 2019 from ████████████ to Ecuador (Quito).

My friend had to stay in charge of going to give my child back to my parents and explain to them what had happened and why I left.



En 2015 pendant mon interview a l'ambassade
j'avais dis que je suis mariée par le que dans ma
culture ████████ au Cameroun le mariage se passe
en deux phases ( le mariage coutumier et le mariage
civil).

* le mariage coutumier ou encore appelé "Dote"
consiste à la connaissance et la presentation des deux fami
les (famille de la femme et de l'homme ), puis la famille
de la femme remet liste des choses à recevoir de la famille
de l'homme et pour finaliser, les deux familles doi-
vent encore se reunir, organiser une fête pour faire
manger aux deux mariés un même quartier de kola
et boire du vin de palme dans une même coupe, tout
en jurant devant leur parent qu'ils resteront unis pour
la vie et cet acte est considéré comme un
"pacte" et la femme est deja vendue, elle n'appar-
tient plus à sa famille par ce que même si elle se
sépare de son mari et qu'elle décéde sa dépouille
sera enterré chez son mari avec qui elle avait
signer le pacte. Il y a même des familles qui font
legaliser leur mariage coutumier chez un notaire.
Car cet acte ne se fait qu'une seule fois dans la vie
c'est la plus importante.

* le mariage civil : consiste à faire reconnaître
votre union par la loi devant un officier d'etat-civil
et c'est juste une sécurité sociale.

En 2015 pendant mon interview à l'embassade j'avais
déclaré que suis marié par ce que le nommé ███████
████████████████ avait déjà commencé avec la premier
phase de notre mariage coutumier. Il était déjà
entré en possession de ma liste jusqu'à remettre ce
qu'il fallait aux ayants droits, mais lui et moi
n'avions pas encore signé le pacte car on attendait
de fixer une date pour finaliser et légaliser les
deux mariages à la fois. L'engagement qu'il avait
prit vis à vis de moi montrait déjà que je suis sa
femme et il me présentait à toutes ses connaissances
comme étant sa femme.

Voilà pourquoi j'avais déclaré que je suis mariée.

En ce qui concerne le nombre d'enfant et leur âge.
C'est mon supposant mari qui m'avait demandé
de dire que j'ai ██████████████ et dans l'ignorance je l'ai
fait parce que généralement dans notre culture lorsque
deux personnes se marissent la famille de la femme ou
de l'homme vous donne une petit enfant que vous
devriez élever comme le vôtre, donc la période où je
devais me rendre à l'ambassade j'étais plutôt a █████
et c'est par téléphone qu'il m'a donné les informations
car je ne savais qui ces deux enfants devraient être mon fils et l'autre
la seconde fois quand je devais m'y rendre encore il
m'a dit que si on me pose encore la question de savoir
si j'ai des enfants, que je dise oui deux enfants de 5 et 2 an



Egnorante que j'étais, j'ai tout fait la déclaration car je ne savais pas que mon soit disant époux pouvait me donner des déclarations faultes. Toujours la même jour pendant mon interview on m'a demandé la proffession et le salaire de mon mari. Je leur ai dit qu'il est comptable financier et en ce qui concerne son salaire je ne connais pas mais selon ses charges je peux estimer à plus d'un million de francs CFA (Et c'est une réalité, même ma mère a plus de 30 ans de mariage ne connait pas les revenus de mon père). pour une seconde fois le visa a été refusé.

Le jour après ma demande de visa je suis aller rendre visite à mon beau-frère, le frère adoptif de mon supposé mari et c'est lui qui a attiré mon attention sur certain fait. Il m'a dit que je ne peux pas déclarer que suis marié alors mon mariage n'est pas legal, je ne peux déclarer que j'ai des enfants et je n'ai ni leurs actes, ni leur photo et qu'en plus de tout ça qu'il n'y a pas un enfant de l'âge de 5 ans dans leur famille. Quand je suis retourné à ██████ j'ai mené ma propre enquête et c'était vrai, mon criminel de soit disant marié menait une double vie et il profitait de ma naïveté et de mon ignorance pour une application de demande de visa pour ne moquer de moi et me faire comprendre qu'il avait déjà un engament avec une autre femme dont ils ont un enfant de 5ans.

Voilà pourquoi pendant mon interview j'ai déclaré à l'officier et qu'il qu'en 1985 je n'avais qu'un seul enfant, le lui ai dire deux ans qui a trois aujourd'hui quant à celui de 5 ans de 2015 je ne l'avais jamais connu. Malgré tout ce qu'il m'avait fait et ce que j'avais découvert je lui avait donné une seconde par ce que je m'étais déjà promise à lui et je l'aimais bien je lui ai donne une seconde chance dans l'espoir qu'il devait changer et que nous obtions pour la monogamie mais j'ai découvert qu'il était pire que ce que je pensais, j'ai donc décidé de mettre fin à cette relation, j'ai refais ma vie, raison pour laquelle j'ai déclaré à l'officier d'Avil que je ne me suis jamais mariée.

En ce qui concerne la grossesse de 2015 où l'officier déclare que j'étais enceinte, je ne l'étais pas il s'est fié de mon physique par ce que la jour j'étais habillé en tenue Africain ample et j'avais près du poids donc s'il n'y a pas d'accouchement en 2015 c'est que je n'étais pas enceinte et je n'ai pas fait d'avortement.

Pour la date de naissance de mon premier fils du ██████████ il est né ce jour et je détient son acte de naissance comme preuve donc de grace ni j'ai eu à donner une autre date que celle-ci c'est peut-être une erreur de ma part.

## **In my interview with the asylum officer**

In 2015 during my interview at the Embassy, I said that I was married because in my ▮▮▮▮▮▮▮▮▮ in Cameroon, marriage takes place in two phases (customary marriage and civil marriage).

❖ **Customary marriage or called "Dowry"** consists in knowing and presenting the two families, (the family of the woman and the man), then the family of the woman gives the list of things to receive from the family of the man and to finalize, the two families have yet to meet, to organize a celebration to make the two married couple eat the same Kola quarter and drink palm wine in the same cup, while swearing before their parents that they will remain united for life and this act is considered a "pact" and the woman no longer belongs to her family because even if she separates from her husband and the day she dies, her remains will be buried with her husband with whom she signed the pact (there are even families who have legalized their customary marriage at a notary) and this act is only once in the life of the woman, it's the most important one.

❖ **Civil marriage:** Consist of having your union recognized by the law before a civil status registrar and it is just a social security.

During my interview at the Embassy of the United States in Cameroon, I declared that I am married because I appointed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ had already started with the first phase of our customary marriage. He had already taken possession of my list for the dowry until he handed over what was needed to the rightful owners, but he and I had not yet signed the agreement because we were waiting to set a date to finalize and legalize the two weddings ceremonies at the same time. The commitment he made to me already showed that I was his wife and he introduced me to all his acquaintances as his wife.

That's why I said I was married.

Regarding the number of children and their age. It was my supposed husband who had asked me to say that I have two children and in ignorance, I did it because generally in our culture when two people get married, the family of the woman or the man gives you a small child that you will have to raise like yours, thus the period when I had to go to the Embassy, I was rather in           and it was by telephone that he gave me the information because I knew that these two children should be my son and the other. And unfortunately, the visa was refused.

I applied for a visa again the second time, when I had to go again, he told me that if I still ask the question of whether I have children, I say yes one of 5 years old and the other of 2 years old. Ignorant as I was, I made the statement because I did not know that my so-called husband could give me a false statement. On the same day, during my interview, I was asked for the profession and salary of my husband, I told them that he is a financial accountant and as for his salary, I do not know but according to his expenses, I could estimate more than one million francs (1,000,000 FCFA) (and this is a reality because I have never asked, even my mother who has more than 30 years of marriage does not know the monthly income of my father). For a second time, the visa was refused.

That day after my visa application, I went to visit my brother-in-law, the adopted brother of my supposed husband, and he was the one who drew my attention to certain facts. He told me that I could not declare that I was married, whereas my marriage was not yet legal and that I could not declare that I have children and I have neither their birth certificates nor their photos and on top of all that there was not a 5 year old child in their family.

When I returned to           I conducted my own investigations and it was true, my criminal so-called husband was living a double life and he was taking advantage of my naivety and my ignorance for a visa application to make fun of me and make me understand that he also had a commitment with another woman so they have a 5 years old child. That's why during my interview, I told the Asylum

officer that in 2015, I had only one child; the two-year-old who is 6 years old today. As for the 5-year-old of 2015, I had never known him.

In spite of all that he had done to me, and what I had discovered, I had given him a second chance because I had already promised myself to him and I loved him; I gave him a second chance in the hope that he would change and that we would choose monogamy, but I discovered that he was worse than I thought, so I decided to end this relationship. I had a new life and I had my second son in 2018. That's why I told the Asylum Officer that I have never being married.

Regarding to the 2015 pregnancy where the Officer declared that I was pregnant, I was not. The officer during my visit to the embassy relied on my appearance because that day I was dressed in full African clothing and I had gained weight and I did not give birth in 2015 or the next year, I was not pregnant and did not have an abortion.

For the date of birth of my first son of ▇▇▇▇▇▇▇ he was born that day and I hold his birth certificate as proof for grace if I had to give another date than that one it may be an error on my part.



support@asaptranslate.com



Member # 265128

**Certification by the Translator**

I, <u>Brizeida E. Mijares</u>, hereby certify that I speak and write fluently both the
<u>French</u> and <u>English</u> languages; that I have translated the foregoing document to
the best of my ability; and that it is a true and correct translation to the best of
my knowledge, information and belief.

Furthermore, I, <u>Brizeida E. Mijares</u>, hereby attest that I do not have any relation of
any kind with the customer that requested the translation.

Name: Brizeida E. Mijares

Date: December 04, 2019



Signature:

Address: ASAPTranslate, P. O. Box 479, Lehi UT 84043

Phone: 1-800-770-2305

E-mail: support@asaptranslate.com

# EXHIBIT G

**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
1525 Wilson Blvd., Mailstop 2455
Arlington, VA 20598-2455



**U.S. Citizenship
and Immigration
Services**

1/14/2019

Carolina Castro
LAW OFFICE OF LUIS MACIAS, JR. APC
642 THIRD AVE., STE. K
CHULA VISTA, CA 91910

RE: ███████████████████████████

Dear Counsel:

We have received your correspondence dated 12/23/2019, requesting that USCIS reconsider its negative credible fear determination for the individual listed above that was served on 11/08/2019.

USCIS credible fear screening determinations are not subject to motions to reopen or reconsider. Governing regulations provide that the avenue for an applicant to challenge a USCIS credible fear screening determination is to seek review of that screening determination from an immigration judge.

While USCIS can, solely in its own discretion, reconsider its screening determination where information comes to its attention that it believes warrants such action, USCIS does not believe such reconsideration is warranted in this case.

Sincerely,

On behalf of:
Jedidah Hussey, Director
Arlington Asylum Office

# EXHIBIT H

Alien Number: ██████████
Name: ████████████████████
Country: CAMEROON
Asylum Office: Arlington (ZAR)

Date: 19-Mar-2020
Asylum Officer: Ma, Emily
Interpreter: Transperfect: 174112

## Credible Fear Interview: Questions & Answers

NOTE: THE FOLLOWING NOTES ARE NOT A VERBATIM TRANSCRIPT OF THIS INTERVIEW.  THESE NOTES ARE RECORDED TO ASSIST THE INDIVIDUAL OFFICER IN MAKING A CREDIBLE FEAR DETERMINATION AND THE SUPERVISORY ASYLUM OFFICER IN REVIEWING THE DETERMINATION.  THERE MAY BE AREAS OF THE INDIVIDUAL'S CLAIM THAT WERE NOT EXPLORED OR DOCUMENTED FOR PURPOSES OF THIS THRESHOLD SCREENING.

Location of Applicant:
Was Attorney Present During Interview? **Yes** ☐ **No** ☒
Location of Interview: **Telephonic**

---

Interview initiated at 12:37 PM EST. Transperfect 174112

**A#:** 203599551
**Language:**  French
**Interviewing Officer:** Emily Ma, EM, Arlington (ZAR)

☒ **Administered Interpreter Oath**

**Q:** Do you affirm that you will truthfully, literally and fully interpret the questions asked by the asylum officer and the answers given by the applicant; that you will not add to, delete from, comment on, or otherwise change the matter to be interpreted; and that you will immediately notify the officer in this case if you become aware of your inability to interpret in a neutral manner on account of a bias against the applicant or the applicant's race, religion, nationality, membership in a particular social group, or political opinion?
**A:** Yes

**Q:** Do you affirm that you understand that the matters discussed during this interview are confidential?
**A:** Yes

### Introduction
**Q:** I am an asylum officer and I will be conducting your interview today through an interpreter, who has been placed under oath to completely interpret everything you say and to keep everything you say confidential.  I just have a couple questions for you today.
**Q:** First, I want to place you under oath. This is a legal obligation to tell the truth. Do you swear or affirm to tell the truth, the whole truth, and nothing but the truth?
**A:** Yes

☒ Oath administered

**Q:** Can you please verify your name?
**A:** ████████████████████████

**Q:** DOB:
**A** ████████████

*Credible-Fear Interview*
HIGHLY CONFIDENTIAL

<u>Alien Number:</u> ████████
<u>Name:</u> ████████████████
Country: CAMEROON
<u>Asylum Office:</u> Arlington (ZAR)

<u>Date:</u> 19-Mar-2020
<u>Asylum Officer:</u> Ma, Emily
<u>Interpreter:</u> Transperfect: 174112

**Q:** What is your best language of understanding?
**A:** French

**Q:** Do you have an attorney at this time?
**A:** no

**Q:** Are you comfortable answering my questions today without atty present?
**A:** Is it possible for you to give me time to find one?

**Q:** You would like to find an attorney first?
**A:** I had a contract with atty. But the atty didn't know I had to be interviewed again.

**Q:** What is the name of your atty?
**A:** Louis Macias, I don't have his phone number on hand, or any of his other info on hand right now.

**Q:** Are you able to contact you atty?
**A:** Yes, when I go back to dorm, I think I should be able to find the number.

**Q:** My supervisor has approved this first reschedule, however you must contact your attorney as soon as possible. You may be rescheduled for the within the next 1-2 days. You must be prepared to have the interview at that time.
**A:** Ok. I understand.

**Q:** Have you understood my questions so far?
**A:** Yes

**Q:** Understand the interpreter?
**A:** Yes.

**Q:** Thank you for speaking with me today.
INTERVIEW CONCLUDED: 12:53 PM

**NOTES END**

# EXHIBIT I

Alien Number: ██████████
Name: ████████████████████
Country: CAMEROON
Asylum Office: Arlington (ZAC)

Date: 25-Mar-2020
Asylum Officer: Falade, Abigail
Interpreter: Language Line: 222566

## Credible Fear Interview: Questions & Answers

NOTE: THE FOLLOWING NOTES ARE NOT A VERBATIM TRANSCRIPT OF THIS INTERVIEW.  THESE NOTES ARE RECORDED TO ASSIST THE INDIVIDUAL
OFFICER IN MAKING A CREDIBLE FEAR DETERMINATION AND THE SUPERVISORY ASYLUM OFFICER IN REVIEWING THE DETERMINATION.  THERE
MAY BE AREAS OF THE INDIVIDUAL'S CLAIM THAT WERE NOT EXPLORED OR DOCUMENTED FOR PURPOSES OF THIS THRESHOLD SCREENING.

Location of Applicant: **Otay Mesa Detention Center, 7488 Calzada de la Fuente, San Diego, CA 92154**
Was Attorney Present During Interview? **Yes** ☐  **No** ☒
Location of Interview: **Telephonic**

---

Interview initiated at 10:54 AM EST.        222566

**A#:** 203599551
**Language:** French
**Interviewing Officer:** Officer Info, Arlington (ZAC)

☒ **Administered Interpreter Oath**

**Q:** Do you affirm that you will truthfully, literally and fully interpret the questions asked by the asylum
officer and the answers given by the applicant; that you will not add to, delete from, comment on, or
otherwise change the matter to be interpreted; and that you will immediately notify the officer in this
case if you become aware of your inability to interpret in a neutral manner on account of a bias against
the applicant or the applicant's race, religion, nationality, membership in a particular social group, or
political opinion?
  **A:** Yes

**Q:** Do you affirm that you understand that the matters discussed during this interview are confidential?
  **A:** Yes

### Introduction
**Q:** I am an asylum officer and I will be conducting your interview today through an interpreter, who has
been placed under oath to completely interpret everything you say and to keep everything you say
confidential.  We are having this interview today because you have expressed a fear of returning to
Cameroon at some point after you were detained, and today we will discuss what those fears may be.
**Q:** First, I want to place you under oath. This is a legal obligation to tell the truth. Do you swear or affirm
to tell the truth, the whole truth, and nothing but the truth?
  **A:** Yes

☒ **Oath administered**

**Q:** Can you please verify your name?
  **A:** ████████████████████

**Q:** What is your best language of understanding?
  **A:** French

*Credible-Fear Interview*

<u>Alien Number:</u> ███████████

<u>Name:</u> ████████████████████

<u>Country:</u> CAMEROON

<u>Asylum Office:</u> Arlington (ZAC)

<u>Date:</u> 25-Mar-2020

<u>Asylum Officer:</u> Falade, Abigail

<u>Interpreter:</u> Language Line: 222566

**Q:** I am going to ask the interpreter to read something to you now to explain the purpose of this interview.

☒ **Interpreter read Section 1.28 (Form I-870) to applicant**

**Q:** Do you still fear return to Cameroon?
  **A:** Yes.  Very much so

| |
|---|
| *If the applicant states they are not afraid to return:*<br>**Q:** Are you willing to return to Cameroon? |
| **A:** No |

| |
|---|
| **Q:** Do you want to continue with your credible fear interview? |
| **A:** Yes |

| |
|---|
| **Q:** Do you want to dissolve from your credible fear process? In other words, do you want to end this protection eligibility interview process and have an interview so that you may return to your country? |
| **A:** ◉ Continue Interview          ☐ Dissolve |

**Q:** Do you have an attorney at this time?
  **A:** Yes but I have not been able to reach him.  I have been calling and he is not picking up my calls

**Q:** What mean
  **A:** I have been calling and calling him since last Thursday and he is not answering my calls

**Q:** Did you leave him a voice message
  **A:** Yes

**Q:** Do you have his/her info with you
  **A:** Yes—619-274-2673

**Q:** What is his/her name
  **A:** Luis Macias

**Q:** Male attorney
  **A:** Yes or female

**Q:** You can talk to an attorney before the interview, but it is not required. Do you want to do that, or do you want to continue this interview without an attorney?
  **A:** No—I like to have my attorney but I have been calling and calling they are not picking up my calls

**Q:** Ok.  I will try and contact him now—Interpreter would you be able to call the attorney number and link us together
  **A:** OK.  I will.  What do you want me to do if a voice mail comes up—should I leave a message

Alien Number: ███████████                    Date: 25-Mar-2020
Name: ██████████████████████              Asylum Officer: Falade, Abigail
Country: CAMEROON                              Interpreter: Language Line: 222566
Asylum Office: Arlington (ZAC)

**Q:** No.  Could you please connect us if you get through and I will leave him a message
  **A:** Ok—hold on for me   (Line disconnected)11:20 am

**Q:** AO called attorney of record 619-274-2673.  Mr. Luis Marcias.  He answered the phone.  Good afternoon, this is AO, I have your client online for CF interview follow-up questions
**A:** Sorry, I thought she was supposed to be schedule for an interview yesterday.  I have an appointment with ICE this morning in downtown San Diego and have to leave now.  Can I have my legal assistant listen in on the interview

**Q:** Sure.  What is his/her name
  **A:** Nehemias Pedroza, he will be listening in.  Which case is this?  Would this be ███ because she was supposed to be interviewed yesterday, not today

**Q:** No.  This is ███
  **A:** Can I have the client's name

**Q:** Sure ████████████████████
  **A:** Oh, ok, give me a moment.  Ok.  Never mind, I think I know who you are talking about.  Never mind

**Q:** What do you mean
  **A:** I mean I know who you are talking about, she has been interviewed.  You can go ahead with the follow-up Q & A

**Q:** You mean Mr. Nehemias Pedroza would no-longer be listening in
  **A:** No. No. That is ok.  I have to go now.  Thanks

**Q:** Ok.  Bye


**Q:** (Applicant) I spoke with your representative, he was on his way out to another appointment.  Are you willing to continue with your interview w/o your attorney
  **A:** Yes.  I like to Continue

**METERING Q/A**
**Q:** What day did you cross the border from Mexico into the US?
  **A:** July 29, 2019

**Q:** Did you ever seek to enter the United States before that time July 29, 2019?
**A:** Yes in Tijuana

**Q:** Are you sure
**A:** Yes

**Q:** Where
**A:** In Tijuana.  I wanted to cross the border but I had no money and had to work

**Q:** How long did you work in Tijuana

*Credible-Fear Interview*                                                    Page **3** of **6**

Alien Number: ███████
Name: ███████████████████
Country: CAMEROON
Asylum Office: Arlington (ZAC)

Date: 25-Mar-2020
Asylum Officer: Falade, Abigail
Interpreter: Language Line: 222566

A: For couple of months

Q: Exact dates
A: I don't remember but I worked for couple of months

Q: Did you attempt to cross the border in Tijuana
A: Yes

Q: At what location
A: San Ysidro

Q: How many times tried to cross the border in San Ysidro
A: Just once

Q: When
A: July 29, 2019

Q: Did you tried to cross before July 29, 2019
A: No

Q: You mean your first and only attempt to cross the border was at San Ysidro
A: Yes

Q: Remembered the date
A: July 29, 2019

Q: While in Tijuana were you told to put your name on any sort of list to get into a POE
A: Can you repeat the question

Q: Did you ever place your name on a list to enter the US through a port of entry besides San Ysidro on July 29, 2019
A: No

Q: Were you ever told that you could return to a POE to be processed
A: Can you repeat the question please

Q: While you were in Tijuana, were you told to come back to a POE to be processed at another day
A: No

Q: Please give me a moment to review my notes and summarize what we discussed.

## Summary of Testimony
☒ **APSO SUMMARIZED THE CASE TO THE APPLICANT AS REQUIRED BY SECTION 3.2, FORM I-870**

| Summary of testimony |
|---|
| You testified that you left Cameroon sometime in March 2019.  You arrived in Tijuana Mexico in May 2019.  You testified that you worked in Tijuana for couple of months to earn some money. You stated |

Alien Number: ███████████
Name: ████████████████████
Country: CAMEROON
Asylum Office: Arlington (ZAC)

Date: 25-Mar-2020
Asylum Officer: Falade, Abigail
Interpreter: Language Line: 222566

> that you never wrote your name down on a list and your first and only attempt to cross the border into the US was on July 29 at San Ysidro

**Q:** Is this summary correct
**A:** Yes

**Q:** Are there any changes or additions you would like to make
**A:** Yes

**Q:** Please go ahead
A: Is this the end of the interview. I thought you are giving me another chance to better explain myself this time because I noticed there was a comprehension problem during my last interview

**Q:** What do you mean?

**A:** During my interview, they told me I had a right to a lawyer but they never provided me with a list of lawyers until after I got the result of my CF interview, which is when I received list of lawyers and I looked/retained one the same day.

**Q:** Was your attorney present during your CF interview
A: No. I was never given list of attorney until I received my decision. So, I did not have a lawyer present at the time of my interview. I received decision on a Wednesday and had to go to court the following day to face the judge. I asked the judge for more time, he told me that is his final decision. It was after I received the decision that I was able to contact a lawyer because the decision came with list of lawyers. I tried to appeal the decision but the 30days timeline was not respected and I was told I would be deported.

**Q**: You mean an AO told you that you had a right to a lawyer during your Asylum interview but did not provide you with list of lawyers.
**A:** Yes
**Q:** Please give me a minutes or two to check your records again
**A:** Ok. Thank you

**Q:** I looked through your file, it shows you were oriented about the process of CF interview which was conducted in French language through an interpreter which include your right to an attorney. You signed the document on August 2, 2019

**A:** Well I remembered that. I know they talked to me through a French interpreter and told me to sign some documents when I was detained. But the officer (AO) also told me I had right to an attorney but never provided me a list of lawyers until I received a decision on my case and an Immigration judge denied my case. I am now facing deportation and asking you for a second opportunity to present my case. I was hoping I am going to be given another chance to get a lawyer and re-present my case.

*Credible-Fear Interview*

HIGHLY CONFIDENTIAL

DHSALOTRO001786

Alien Number: ███████
Name: ████████████
Country: CAMEROON
Asylum Office: Arlington (ZAC)

Date: 25-Mar-2020
Asylum Officer: Falade, Abigail
Interpreter: Language Line: 222566

**Q:** Ok.  I heard you, all your concerns are duly noted. Thank you for speaking with me today, we are now at the end of the interview.  Thank you for talking to me and sharing your story with me.

INTERVIEW CONCLUDED:  12:41

**NOTES END**

*Credible-Fear Interview*

HIGHLY CONFIDENTIAL

DHSALOTRO001787