JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation – District
Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259 | Fax: (202) 305-7000
ALEXANDER J. HALASKA (IL 6327002)
DHRUMAN Y. SAMPAT(NJ 270892018)
Trial Attorneys

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | Hon. Cynthia A. Bashant |
| v. | **DEFENDANTS' RESPONSE IN SUPPORT OF PLAINTIFFS' MOTION TO SEAL PORTIONS OF PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT [ECF No. 608]** |
| CHAD F. WOLF, Acting Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*, | |
| *Defendants* | |

# INTRODUCTION

Defendants hereby respond in support of Plaintiffs' Motion to Seal Portions of their Reply in Support of their Motion for Summary Judgment (ECF No. 608). For the reasons discussed in Plaintiffs' Motion to Seal and in this Response in Support, Defendants join Plaintiffs' request to redact and seal all or portions of Exhibits 2-14, 16-17, 19-37 to Plaintiffs' Reply in Support of their Motion for Summary Judgment ("MSJ Reply").

Specifically, Defendants submit additional argument and facts supporting the sealing of the following exhibits/portions thereof, and information derived therefrom and described and/or referenced in the Plaintiffs' briefing:

1) The portions of the document bearing the Bates number AOL-DEF-00090275, at Plaintiffs' Reply Exhibit 2, that contain employee contact information and number of individuals of different categories who presented themselves at ports of entry;

2) The portions of the document bearing the Bates number AOL-DEF-00356565, at Plaintiffs' Reply Exhibit 3, that contain employee contact information and number of individuals of different categories who presented themselves at ports of entry;

3) The portions of the document bearing the Bates number AOL-DEF-00023065, at Plaintiffs' Reply Exhibit 4, that contain employee contact information and number of individuals of different categories who presented themselves at ports of entry;

4) The portions of the document bearing the Bates number AOL-DEF-00062658, at Plaintiffs' Reply Exhibit 5, that contain employee contact information;

5) The portions of the document bearing the Bates number AOL-DEF-00238845, at Plaintiffs' Reply Exhibit 6, that contain employee contact information;

6)     The portions of the document bearing the Bates number AOL-DEF-00243111, at Plaintiffs' Reply Exhibit 7, that contain employee contact information;

7)     The portions of the document bearing the Bates number AOL-DEF-00539629, at Plaintiffs' Reply Exhibit 8, that contain employee contact information;

8)     The portions of the document bearing the Bates number AOL-DEF-00632354, at Plaintiffs' Reply Exhibit 9, that contain employee contact information;

9)     The portions of the document bearing the Bates number AOL-DEF-00632364, at Plaintiffs' Reply Exhibit 10, that contain employee contact information;

10)     The portions of the document bearing the Bates number AOL-DEF-00067823, at Plaintiffs' Reply Exhibit 11, that contain employee contact information and number of individuals of different categories who presented themselves at ports of entry;

11)     Pages 828 and 829 of the document bearing the Bates number AOL-DEF-00067827, at Plaintiffs' Reply Exhibit 12;

12)     The portions of the document bearing the Bates number AOL-DEF-00272878, at Plaintiffs' Reply Exhibit 13, that contain employee contact information, processing and capacity data, and information on communications with Mexico;

13)     The portions of the document bearing the Bates number AOL-DEF-00242587, at Plaintiffs' Reply Exhibit 14, that contain employee contact information;

14)     The portions of the document bearing the Bates number AOL-DEF-00210387, at Plaintiffs' Reply Exhibit 16, that contain witness identification and employee contact information;

15) Portions of the document bearing the Bates number AOL-DEF- 00014832, at Plaintiffs' Reply Exhibit 17, that identify a CBP employee potentially subject to discipline;

16) The portions of the document bearing the Bates number AOL-DEF-00036065, at Plaintiffs' Reply Exhibit 19, that contain employee contact information;

17) The portions of the document bearing the Bates number AOL-DEF-00040005, at Plaintiffs' Reply Exhibit 20, that contain employee contact information;

18) The portions of the document bearing the Bates number AOL-DEF-00090819, at Plaintiffs' Reply Exhibit 21, that contain employee contact information and regarding law enforcement techniques, methods, and intelligence;

19) The portions of the document bearing the Bates number AOL-DEF-00210387, at Plaintiffs' Reply Exhibit 22, that contain witness identification and employee contact information;

20) The portions of the document bearing the Bates number AOL-DEF-00031410, at Plaintiffs' Reply Exhibit 23 that contain employee contact information and capacity and processing information;

21) The portions of the document bearing the Bates number AOL-DEF-00030508, at Plaintiffs' Reply Exhibit 24 that contain employee contact information and capacity information;

22) The portions of the document bearing the Bates number AOL-DEF-00249063, at Plaintiffs' Reply Exhibit 25 that contain employee contact information and a description of operational contingency planning;

23) The portions of the document bearing the Bates number AOL-DEF-00249075, at Plaintiffs' Reply Exhibit 26, that contain employee contact information;

24) The portions of the document bearing the Bates number AOL-DEF-00247296, at Plaintiffs' Reply Exhibit 27, that contain employee contact information;

25) The portions of the document bearing the Bates number AOL-DEF-00247309, at Plaintiffs' Reply Exhibit 28, that contain employee contact information;

26) The portions of the document bearing the Bates number AOL-DEF-00247380, at Plaintiffs' Reply Exhibit 29, that contain employee contact information;

27) The portions of the document bearing the Bates number AOL-DEF-00247381, at Plaintiffs' Reply Exhibit 30, that contain employee contact information;

28) The portions of the document bearing the Bates number AOL-DEF-00030448, at Plaintiffs' Reply Exhibit 31 that contain employee and agency contact information including conference line information, and capacity and processing data;

29) The entire document bearing the Bates number AOL-DEF- 00280782, at Plaintiffs' Reply Exhibit 32;

30) The portions of the document bearing the Bates number AOL-DEF-00047694, at Plaintiffs' Reply Exhibit 33, that contain employee contact information and communications with Mexico;

31) The portions of the document bearing the Bates number AOL-DEF-01272477, at Plaintiffs' Reply Exhibit 34, that contain employee contact information and limit-line staffing information;

32) The portions of the document bearing the Bates number AOL-DEF-01205190, at Plaintiffs' Reply Exhibit 35, that contain employee contact information;

33) The portions of the document bearing the Bates number AOL-DEF-

00235276, at Plaintiffs' Reply Exhibit 36, that contain employee contact information and sensitive details on port operations;

34) The portions of the document bearing the Bates number AOL-DEF-00547009, at Plaintiffs' Reply Exhibit 37, that contain employee contact information, details of law enforcement techniques and methods, information about port operations and staffing, and intelligence information; and

35) Portions of the Report of Stephanie Leutert, dated July 10, 2020, at Plaintiffs' Reply Exhibit 38, as set forth in Appendix 1.

As the Court largely determined in its August 6, 2020 Order (ECF No. 510) ("Sealing Order"), there are compelling reasons to seal the confidential information contained in these exhibits, as well as any portions of the parties' briefs that discuss or rely on them. The sensitive law enforcement information and communications which the parties are seeking to seal include information about operations of land ports of entry that would expose vulnerabilities of those ports and threaten their integrity and security. Public release of such information would also have a chilling effect on open communications within the government and with foreign governments, and would further compromise the ports' operations and expose ports to higher risk of criminal activity—such as drug and weapons trafficking—which in turn would threaten the public health and safety of the United States. These documents also contain private or sensitive information concerning witnesses to law enforcement investigations and employees that, if disclosed, would compromise their privacy interests and potentially threaten their own safety or the security of the agency. These documents also contain communications with foreign governments that, if disclosed, would chill international cooperation.

## ARGUMENT

While Defendants acknowledge the presumptive right of access to court records based upon common law and First Amendment grounds, *see, e.g., Nixon v. Warner Commc'ns., Inc.*, 435 U.S. 589, 597 (1978), *Philips ex rel. Estates of Byrd*

*v. Gen. Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002), Defendants agree with Plaintiffs that the above-listed material should be filed under seal.

The presumption of access is "based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). Thus, when the documents to be protected are "more than tangentially related to the merits," parties must show compelling reasons to keep those documents sealed. *Heldt*, 2018 WL 5920029 at *1 (quoting *Ctr. for Auto Safety*, 809 F.3d 1092, 1096–98); *see also McCurley v. Royal Seas Cruises, Inc.*, No. 17-cv-296, 2018 WL 3629945, at *2 (S.D. Cal. July 31, 2018). Compelling reasons include "when [] 'court files might [] become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). "In certain circumstances, courts have allowed the *government* to file under seal material that contains confidential and sensitive government information that might endanger or undermine law enforcement's activities . . . where the government identifies the particular harm that may result from the specific disclosure." *Music Grp. Macao Commercial Offshore Ltd. v. Foote*, No. 14-CV-03078-JSC, 2015 WL 3993147, at *3 (N.D. Cal. June 30, 2015) (internal citations omitted; emphasis in original); *see Hesterberg v. United States*, No. C-13-01265 JSC, 2013 WL 6057068, at *2 (N.D. Cal. Nov. 15, 2013) (finding compelling reasons to seal portions of documents that could "empower criminal suspects who come in contact with . . . officers because they will be able to predict the officer's actions."). As shown below, Defendants' request to file law enforcement sensitive materials under seal satisfies the "compelling reasons" standard. Defendants have provided specific information regarding the harm that could occur if the information were to be disclosed. *See Am. Auto. Ass'n of N. California, Nevada & Utah v. Gen. Motors LLC*,

No. 17-CV-03874-LHK, 2019 WL 1206748, at *1 (N.D. Cal. Mar. 14, 2019). The public interest in the information at issue is far outweighed by the interest in confidentiality. *See Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010).

### A. The Court Should Seal Law-Enforcement Sensitive Material Regarding Port Operations and Vulnerabilities, Including Staffing Information, Capacity and Processing Data, Contingency Planning, Intelligence, Law Enforcement Techniques and Methods, and Communications with Mexico.

The following Exhibits contain details about port operations, capacity, contingency plans, shifts and staffing, limit line positions, intelligence, law enforcement techniques and methods, as well as information about communications with the government of Mexico, the details of which warrant sealing: Reply Ex. 2, AOL-DEF-00090275; Reply Ex. 3, AOL-DEF-00356565; Reply Ex. 4, AOL-DEF-00023065; Reply Ex. 11, AOL-DEF-00067823; Reply Ex. 13, AOL-DEF-00272878; Reply Ex. 21, AOL-DEF-00090819; Reply Ex. 23, AOL-DEF-00031410; Reply Ex. 24, AOL-DEF-00030508; Reply Ex. 25, AOL-DEF-00249063; Reply Ex. 31, AOL-DEF-00030448; Reply Ex. 33, AOL-DEF-00047694; Reply Ex. 34, AOL-DEF-01272477; Reply Ex. 36, AOL-DEF-00235276; Reply Ex. 37, AOL-DEF-00547009; and Reply Ex. 38, the Report of Stephanie Leutert dated July 10, 2020.

The public release of this sensitive law enforcement information would harm CBP's operations and impair cross-border security, for the reasons stated in the Court's prior Sealing Order (ECF 510), as well as the September 4, 2020 Declaration of Vernon Foret, former Executive Director for Operations, Office of Field Operations (OFO) ("Foret Decl."), attached hereto as Exhibit A, and the November 30, 2020 Declaration of Joseph Draganac, Acting Executive Director, Operations, Office of Field Operations (OFO) ("Draganac Decl."), attached hereto as Exhibit B.

"[D]etention capacity provide[s] critical information about [a] port's capability to process and hold individuals," which can be exploited by outside individuals

1  to take certain actions to harm operations. Foret Decl. ¶¶ 9-10.  Similarly, infor-
2  mation about a port's "processing rate . . . provides insight into how resources may
3  or could be allocated towards processing," which, when "cross-referenced with other
4  information, such as staffing levels and budgetary information," would permit others
5  to understand "vulnerabilities in the port's resource allocation that may be able to be
6  exploited." *Id*. ¶ 15. For these reasons, the Court has permitted "targeted redactions"
7  of similar detailed information about different ports' operations, "including specifics
8  about its detention capacity and staffing." *See* Sealing Order at 14, 18-19 & Appen-
9  dix A. This Court has thus already recognized that there are compelling reasons to
10 seal the type of information about port infrastructure, staffing, contingency planning,
11 and information relating to processing and detention capacity that is contained in the
12 portions of these documents that Defendants propose to seal. *See* Sealing Order at
13 13, 17, 20.

14        The Court has also recognized that there are compelling reasons to seal com-
15 munications with, or information shared by, the Government of Mexico. Sealing
16 Order at 5-6, 9, 10-11 ("The Court will also allow redactions related to communi-
17 cations from the Government of Mexico."). "All of this information should remain
18 confidential, as disclosure to the public would stifle the free flow of information
19 that is critical to maintaining a safe and secure border." *See* Foret Decl. ¶ 4. Disclo-
20 sure of these communications may stifle the willingness of officials in the govern-
21 ment of Mexico, or Mexico-based non-governmental organizations to share infor-
22 mation with officials in CBP. *See* Foret Decl. ¶ 6.

23        Thus, Reply Exhibit 38, the Merits Report of Stephanie Leutert warrants par-
24 tial sealing because it reveals information relating to port capacity, staffing num-
25 bers, contingency planning, and sensitive communications with Mexico. *See* Ap-
26 pendix 1.

27        Reply Exhibit 33, bearing the Bates number AOL-DEF-00047694, also in-
28

cludes communications with Mexican authorities regarding port and border operations that warrants sealing. Reply Ex 33 at 694. Reply Exhibit 25, which bears the Bates number AOL-DEF-00249063, is an email containing specific operational details about port processing and references to the operational trigger point for taking certain actions. The Court has already permitted sealing contingency plans in their entirety to prevent disclosure of DHS and CBP's operational vulnerabilities in the event of a crisis situation. *See* Sealing Order at 20 (granting motion to seal the information contained in the Mass Migration Contingency Plan). Such documents, like the steps referred to in Reply Exhibit 25, reveal an assessment of the operational situation facing the agency at the time. Such documents include discussion of anticipated actions, the current and anticipated migration flow, and potential operation vulnerabilities facing both CBP and its interagency partners. These granular operational details should remain sealed as they "can be exploited by hostile actors." *See* Foret Decl. ¶ 23.

Reply Exhibit 36, bearing the Bates number AOL-DEF-00235276 includes operational details highlighting enforcement actions and the strengths and weaknesses of certain port operations. *See* Reply Ex. 36 at 227. This email reveals which specific ports had an increase in enforcement actions over a specified period of time, including the type of narcotics seized and the nature of the immigration enforcement actions. *Id*. This email also explains specific methods by which individuals had attempted to circumvent queue management at the Hidalgo POE, revealing potential vulnerabilities that can be exploited. Specifically, "a hostile actor could use this information" at the Hidalgo POE, or other POEs, "in an attempt to disrupt operations and make the port more vulnerable to smuggling attempts." *See* Draganac Decl. ¶¶ 3-8. Similarly, Reply Exhibit 37, bearing the Bates number AOL-DEF-00547009, reveals operational vulnerabilities about the San Ysidro POE, including efforts to address current threats, and intelligence about processing

numbers, and the number of National Guard personnel deployed to the Field Office. *See* Reply Ex. 37 at 009. These specific details reveal the Field Office's techniques, tactics, specific intelligence collection techniques and methods; and the results of these specific law enforcement actions and intelligence collection efforts. Should this information be disclosed publicly, "hostile actors would be able to utilize the insight into the nature of the Field Office's law enforcement priorities" and could then "change their behavior so as to take steps to *evade* detection by those same law enforcement actions." *See* Draganac Decl. ¶¶ 9-12. This document also contains intelligence about migration trends. "Intelligence . . . provides CBP frontline operators and other decision makers with a distinct understanding of threats and trends within a given area of responsibility, and thus enables such decision makers to effectively plan and execute CBP's law enforcement and border security operations." However, if disclosed publicly, this information "would also permit hostile actors to compare the specifics of the intelligence with information in its own possession, to assess whether the Field Office had any information or knowledge gaps, and, if so, to exploit those gaps," and harm operations. *Id.* ¶¶14-15.

Reply Exhibit 21 similarly contains a discussion of specific techniques and methods utilized to collect certain types of intelligence, as well as the reasons underlying those actions, the revelation of which would allow those subjects of investigation to change their behavior and circumvent law enforcement operations. *Id.* ¶ 11; *see also* May 19, 2020 Declaration of Aaron Heitke, Chief Patrol Agent, San Diego Sector ("Heitke Decl."), attached hereto as Exhibit C ¶ 18 (explaining why U.S. Border Patrol intelligence-gathering and operational areas of focus should be protected from public disclosure).

Reply Exhibits 2-4, 11, 23-24, and 31 contain specific data regarding port capacity and processing information—including the numbers of individuals presenting themselves at POEs—similar to that which the Court already permitted

sealing. *See* Sealing Order at 14, 17-19 & Appendix A; *see, e.g.,* Reply Exs. 2-4, 11 (number of Haitians who presented themselves to the POE, which, when coupled with percentages, would reveal specific port capacity information); Reply Ex. 31 (capacity data and rates of processing which would reveal specific port capacity information and law enforcement techniques). Reply Exhibit 13 similarly contains information about detention capacity and the rate at which U.S. Immigration and Customs Enforcement (ICE) could accept individuals from CBP custody.

Reply Exhibit 34 contains information about limit line operations and staffing levels, disclosure of which would "jeopardize officer safety and the safety of travelers approaching the limit line." *See* Foret Decl. ¶ 22; *see also* Sealing Order at 13 (finding that similar information warranted sealing of prior exhibit). There thus exist compelling reasons to seal the identified portions of these documents.

### B. The Court Should Seal Sensitive Information Concerning Foreign Intelligence and Border Security Enforcement.

The following Exhibits contain details about foreign intelligence and intelligence regarding smuggling, the details of which warrant sealing: Reply Ex. 13, AOL-DEF-00272878; and Reply Ex. 32, AOL-DEF-00280782. As set forth in the April 28, 2020 Declaration of Erik Moncayo, Acting Assistant Commissioner, Office of International Affairs, Operations Support ("Moncayo Decl."), attached hereto as Exhibit D, such intelligence information should remain under seal.

Reply Exhibits 13 and 32 each contain intelligence obtained from foreign governments concerning the numbers of migrants potentially traveling to the United States, *see* Reply Ex. 13 at 879; and the progress of a migrant caravan, *see* Reply Ex. 32. As explained in the Moncayo declaration, information like this is compiled based on information from foreign law enforcement partners and other partners with situational awareness. Moncayo Decl. ¶ 4. Updates like these that "contain a discussion of specific actions taken by both domestic and foreign law enforcement related to the activities of interest" should not be publicly disclosed,

1  as it would "reveal the extent of law enforcement interest into the activities." *Id.* ¶
2  5. They provide a snapshot of "potential areas of concern to law enforcement and
3  other government officials, law enforcement's priorities and the priorities of other
4  government officials, and the relative resources devoted to these priorities," that
5  would permit individuals to alter their behavior and evade law enforcement activ-
6  ity. *Id.* ¶ 6. Public disclosure would also chill law enforcement partners and foreign
7  governments' willingness to share information with OFO. *Id.* ¶ 8.

These exhibits thus contain, in whole or in part, sensitive information that warrants sealing.

**C. The Court Should Seal Sensitive Employee and Witness Information.**

As permitted in the Court's prior Sealing Order (ECF No. 510, at p. 21) the Court should also seal government employee email addresses and other personal information, as well as the names of subjects and witnesses to investigations contained in the following documents, the disclosure of which would raise genuine privacy and security concerns: Reply Ex. 2, AOL-DEF-00090275; Reply Ex. 3, AOL-DEF-00356565; Reply Ex. 4, AOL-DEF-00023065; Reply Ex. 5, AOL-DEF-00062658; Reply Ex. 6, AOL-DEF-00238845; Reply Ex. 7, AOL-DEF-00243111; Reply Ex. 8, AOL-DEF-00539629; Reply Ex. 9, AOL-DEF-00632354; Reply Ex. 10, AOL-DEF-00632364; Reply Ex. 11, AOL-DEF-00067823; Reply Ex. 13, AOL-DEF-00272878; Reply Ex. 14, AOL-DEF-00242587; Reply Ex. 16, AOL-DEF-00210387; Reply Ex. 17, AOL-DEF-00014832; Reply Ex. 19, AOL-DEF-00036065; Reply Ex. 20, AOL-DEF-00040005; Reply Ex. 21, AOL-DEF-00090819; Reply Ex. 22, AOL-DEF-00210387; Reply Ex. 23, AOL-DEF-00031410; Reply Ex. 24, AOL-DEF-00030508; Reply Ex. 25, AOL-DEF-00249063; Reply Ex. 26, AOL-DEF-00249075; Reply Ex. 27, AOL-DEF-00247296; Reply Ex. 28, AOL-DEF-00247309; Reply Ex. 29, AOL-DEF-00247380; Reply Ex. 30, AOL-DEF-00247381; Reply Ex. 31, AOL-DEF-00030448; Reply Ex. 33, AOL-DEF-00047694; Reply Ex. 34, AOL-DEF-

01272477; Reply Ex. 35, AOL-DEF-01205190; Reply Ex. 36, AOL-DEF-00235276; and Reply Ex. 37, AOL-DEF-00547009.

As detailed in the February 11, 2020 Buckley Declaration ("Buckley Decl."), the Director of Security and Technology Division at CBP, which is attached hereto as Exhibit E, there are genuine security concerns regarding the disclosure of CBP employees' email addresses, including "significant cyber security threats to both the individual employee and CBP as a whole." Buckley Decl.¶¶ 3-5. These security threats are not hypothetical. Buckley Decl. ¶¶ 6-8. Indeed, the Court has already found these reasons compelling and has allowed Defendants to seal the personal and work email address and other contact information of CBP employees to the extent that they appear in any of the exhibits. *See* Sealing Order at 21. The Court should thus permit the sealing of government employee contact information to protect the privacy of employees and the security of agency operations.

Further, the Court should permit the sealing of identifying information of subjects of and witnesses to law enforcement and internal investigations, such as the whistleblower and other witnesses to an OIG investigation identified in Reply Ex. 16, Reply Ex. 17 (information of an officer potentially subject to discipline), Reply Ex. 22, and Reply Ex. 38 (the Leutert Report). In addition to the reasons provided above for sealing CBP employees' addresses, case law supports sealing this information. The Special Master in *Hewlett-Packard Co. S'holder Derivative Litig.* recommended sealing similar whistleblower identifying information in a criminal investigation because "the case law is clear that, while public access to court records is important, some documents are not subject to the public right of access because they have traditionally been kept secret for important policy reasons." *In re Hewlett-Packard Co. S'holder Derivative Litig.,* No. 12-CV-6003, 2015 WL 8570883, at *6 (N.D. Cal. Nov. 18, 2015), *report and recommendation adopted*, No. 12-CV-6003-CRB, 2015 WL 8479543 (N.D. Cal. Dec. 10, 2015), *aff'd*, 716 F. App'x 603 (9th

Cir. 2017) (internal citations omitted).  The Special Master in *Hewlett-Packard* explained that important public policy considerations including interference with an investigation, "by making the whistleblower a target of intimidation or harassment" was a "compelling reason[]" constituting "court files [] becom[ing] a vehicle for improper purposes." *Id.* (internal citations omitted).  Similar public policy reasons support sealing identifying information regarding other witnesses to the whistleblower investigation, as well as witnesses to, and subjects of, other internal investigations. *See also* Sealing Order at 6-7 & Appendix C thereto (permitting redaction of whistleblower's identity). Defendants respectfully request to seal the names of subjects of and witnesses to investigations due to the risks to employee privacy and safety.

### D. The Court Should Seal Deliberative Information of Government Agencies.

The Court should also permit the filing under seal of pages 828-829 of Reply Exhibit 12. The material at issue on these pages is protected from public disclosure because it recounts or reflects "deliberations comprising part of the process by which government decisions and policies are formulated." *Oceana Inc. v. Ross*, 2018 WL 5276297, at *2 (C.D. Cal. Aug. 20, 2018) (citing *FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984)). Material is deliberative if it "would expose an agency's decisionmaking process in such a way to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its function." *Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002). Ultimately, such information is protected from disclosure so as to "protect[] and encourage[] the agency's ability to have candid discussions." *California Native Plant Society v. EPA*, 251 F.R.D. 408, 411 (N.D. Cal. 2008). These pages of Exhibit 12 consist of predecisional recommendations regarding potential courses of action with respect to port operations, and thus squarely qualify for protection from public disclosure to avoid the chilling effect disclosure would have on candid and

frank policy-making discussions. Thus, these pages warrant sealing.

## CONCLUSION

This Court should grant Plaintiffs' Motion to Seal Portions of Plaintiffs' Reply in Support of their Motion for Summary Judgment because compelling reasons exist to protect the sensitive material described herein from public disclosure.

Dated: November 30, 2020            Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director

*/s/ Katherine J. Shinners*
KATHERINE J. SHINNERS
Senior Litigation Counsel
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259 | Fax: (202) 305-7000
katherine.j.shinners@usdoj.gov

ALEXANDER J. HALASKA
DHRUMAN Y. SAMPAT
Trial Attorneys

*Counsel for Defendants*

# CERTIFICATE OF SERVICE

No. 17-cv-02366-BAS-KSC

I certify that I served a copy of this document on the Court and all parties by filing this document with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all counsel of record.

DATED: November 30, 2020           Respectfully submitted,

*/s/ Katherine J. Shinners*
KATHERINE J. SHINNERS
Senior Litigation Counsel
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section

*Counsel for Defendants*

Appendix 1

**REPLY EXHIBIT 38, EXPERT REPORT OF STEPHANIE LEUTERT (July 10, 2020)**

| Page No. | Paragraph(s) |
|---|---|
| 16-17 | 31, 32 n.22-26 (name of Whistleblower) |
| 19 | 37 (portions of the fifth sentence) |
| 21 | 40 (portions of the second sentence) |
| 21 | 41 |
| 21-22 | 42 (portions of the third and fourth sentences) |
| 22-23 | 44 (capacity numbers) |
| 23 | 47 (staffing numbers) |
| 35 | 71 (portions of the second sentence) |
| 36 | 72, n. 106 (name of Whistleblower) |
| 36-37 | 73 (portions of the first and second sentences) |
| 37 | 74 (Table 2 data) |
| 39 | 80 (number in custody) |
| 40 | 80 (Table 3 data) |
| 42 | 83, n. 131 (staffing numbers) |
| 43 | 85, n 136 (name of Whistleblower) |
| 45 | 89 (Table 4 data) |
| 45-46 | 90 (name of Whistleblower and limit line positions) |
| 46 | 90 & n. 142 (name of Whistleblower) |
| 49 | 93, n. 160 |
| 50 | 94 (fourth, fifth, and sixth sentences and portions of the eighth sentence) |
| 50 | 94, n. 162 |
| 52 | 97, n. 166, 168 (name of Whistleblower) |
| 54 | 100 (staffing number) |
| 57 | 103 (names of ports) |
| 58 | 105 (names of ports; specific capacity numbers) |
| 58-59 | 106 (capacity numbers) |
| 58 | 106, n. 186 |
| 60 | 106 (Graph 2) |
| 61 | 107 (Graph 3) |
| 62 | 108 (Table 7 data) |
| 63 | 109 (names of ports) |
| 64 | 110 (Table 8 data) |
| 65 | 112 (portions of the first and second sentences) |
| 65 | 112, n. 194 |
| 65 | 113 (first through fourth sentences) |
| 67 | 115 (portions of the fourth sentence) |
| 67 | 115, n. 200 |
| 67 | 116 (processing times) |

Appendix 1

| | |
|---|---|
| 70 | 119 (custody number) |
| 70 | 119 (Graph 4) |
| 71 | 121 (name of deponent and custody number) |
| 71 | 121 & n. 211, 213 (name of Whistleblower) |
| 72 | 122 (custody number) |
| 72 | 122 & n. 217 (name of Whistleblower) |
| 74 | 125 (detention numbers) |
| 74 | 125 n. 220 |
| 77 | 130 (custody numbers) & n. 231 |
| 81 | 138 (holding times) |
| 81-82 | 139 (portions of the second and third sentences) |
| 86 | Table 12 & n. 251-54 |
| 87 | Table 13 |
| 88 | Table 14 |
| 96 | N/A (name of Whistleblower) |