# EXHIBIT C

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

AL OTRO LADO, Inc., *et al.*,

Plaintiffs,

v.

Chad WOLF, Acting Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*,

Defendants.

Case No. 3:17-cv-02366-BAS-KSC

---

## SECOND DECLARATION OF AARON HEITKE

I, Aaron Heitke, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby declare as follows relating to the above-captioned matter.

1.      I am the Chief Patrol Agent for San Diego Sector, U.S. Border Patrol (BP), U.S. Custom and Border Protection (CBP).  I have held this position since November 2019.  Prior to my current position, I served in a number of other management positions, including as Deputy Chief Patrol Agent for San Diego Sector, as Chief Patrol Agent for Grand Forks Sector in North Dakota, as Deputy Chief Patrol Agent for Havre Sector in Montana, as Associate Chief of the Arizona Corridor's Alliance to Combat Transnational Threats, as an Associate Chief of the Enforcement and Technology Division at BP's Headquarters in Washington, D.C., and as Assistant Chief Patrol Agent of Houlton Sector in Maine.  I have been employed by the BP for over 22 years.

2.      In my current position, I am the highest-ranking BP official for San Diego Sector. San Diego Sector encompasses over 56,000 square miles.  Within that area, San Diego Sector's primary area of responsibility encompasses 7,000 square miles, comprised of 60 linear miles of international boundary with Mexico and 114 coastal border miles along the Pacific Ocean.  I oversee approximately 2,500 Border Patrol Agents and 200 support personnel.  I am responsible for the planning, management, direction, and coordination of operations at San Diego Sector's Headquarters and eight stations to detect and prevent the entry of illegal aliens, narcotics, illicit

1

contraband, terrorists, and weapons of terrorism into the United States between ports of entry. In order to accomplish its mission, BP relies on variety of investigative and law enforcement techniques, many of which are not known to the general public.

3.      On April 27, 2020, I signed a declaration in which I asserted the law-enforcement privilege over information contained in three documents and, alternatively, attested to the reasons why those documents should remain sealed. One of those documents, which begins with Bates number AOL-DEF-00528691, is an intelligence report that was created on January 14, 2019 by a Border Patrol Agent (Intelligence) assigned to a specialty unit within San Diego Sector known as the Sector Intelligence Unit. Another one of those documents, which begins with Bates number AOL-DEF-00516605, is a 19-page PowerPoint Presentation from CBP's Region IX Emergency Operations Center, titled "Region IX Update: 29 December 2018 (1800-0800)."

4.      I have since become aware that, on December 20, 2019, a partially-redacted version of the document that begins with Bates number AOL-DEF-00528691 was filed on the public docket in a case captioned *Kasia Dousa v. U.S. Department of Homeland Security, et. al.*, 3:19-cv-01255-LAB-KSC (S.D. Cal.).

5.      Accordingly, I make this second declaration to amend my assertion of the law-enforcement privilege over certain portions of the document that begins with Bates number AOL-DEF-00528691 and over AOL-DEF-00516617 (which is page from the document that begins at Bates number AOL-DEF-00516605), as set forth below. I also amend my previous assertion that, at a minimum, the document that begins with Bates number AOL-DEF-00528691 and AOL-DEF-00516617 should remain under seal in their entirety. Instead, I assert that the information over which I assert the law-enforcement privilege in paragraphs 10-12, and 21-22, below, as well as the information described in paragraphs 15-19 and 23, below, should remain under seal. This declaration does not have any bearing on my assertion of the law-enforcement privilege over the information in the remaining document addressed in my April 27, 2020 declaration.

**The Document that Begins with Bates Number AOL-DEF-00528691**

*Background*

6.      As explained in my April 27, 2020 declaration, certain individuals within CBP are responsible for collecting and analyzing intelligence, which is processed law-enforcement information about a threat, adversary, or issue of concern in the CBP operational environment. Intelligence, in other words, is operational information that has been analyzed and interpreted,

2

which can be (and is) used to identify information gaps, methods, trends, adversary intentions, threat capabilities, and vulnerabilities. This intelligence therefore provides CBP frontline operators and other decisionmakers with a distinct understanding of threats and trends within a given area of responsibility, and thus enables such decisionmakers to effectively plan and execute CBP's law enforcement and border security operations.

7.      Within the San Diego Sector, the Sector Intelligence Unit is a specialty unit that provides station commanders with information to prioritize, plan for, and respond to threats against the security of the United States, and works with partners throughout the law-enforcement and intelligence communities to preempt potential threats through intelligence-driven operational planning. Border Patrol Agents (Intelligence) assigned to the Sector Intelligence Unit collect, refine, analyze, and disseminate strategic and tactical intelligence reports; identify and prepare reports on trends and patterns; utilize a variety of automated information systems to gather information for intelligence, enforcement, and prosecutions; and work together with law enforcement partners including U.S. Immigration and Customs Enforcement Homeland Security Investigations, the Federal Bureau of Investigations, and the Drug Enforcement Administration.

8.      Border Patrol Agents (Intelligence) may disseminate the intelligence they collect and analyze in various formats, including Field Information Reports. Field Information Reports are created and maintained in a system called Intelligence Reporting System-Next Generation (IRS-NG), which sits on CBP's Automated Targeting System (ATS) platform. ATS is a decision-support tool that compares traveler, cargo, and conveyance information against law enforcement, intelligence, and other enforcement data, derived from a variety of sources, using risk-based scenarios and assessments. ATS compares information about travelers and conveyances arriving in, transiting through, or exiting the country against law-enforcement and intelligence databases, compares existing information about individuals and cargo entering and exiting the country with patterns identified as requiring additional scrutiny, and allows users to search data across many different databases and systems to provide a consolidated view of data about a person or entity. ATS thus provides CBP with a critical tool in its border security mission, as it ensures that CBP

3

has a comprehensive view of all types of potential threats to national and border security. CBP has published several publicly-available Privacy Impact Assessments on ATS.[1]

9.      Additionally, records in IRS-NG are covered by CBP's Intelligence Records System (CIRS), System of Records Notice.[2]  CIRS contains information, including raw intelligence information, public source information, and other information collected by CBP pursuant to its statutory authorities, collected by CBP to support and enhance CBP's ability to identify individuals who pose a potential law-enforcement or security risk; enforce immigration, customs, and other laws; and protect U.S. border security. Access to IRS-NG is restricted to individuals who have an official need to access IRS-NG, consistent with their official duties. Additionally, IRS-NG controls access to information and workspaces by providing users with access specific to their roles and responsibilities within CBP.

*Assertions of Law Enforcement Privilege*

10.      **I am asserting the law enforcement privilege over the "TECS alert" number contained on page 13 of AOL-DEF-00528691.** TECS is CBP's principal law enforcement and anti-terrorism database system. TECS is an overarching law-enforcement information collection, analysis, and sharing environment that securely links telecommunications devices and personal computers to a central system and database. This environment is comprised of several modules designed to collect, maintain, and vet data, and to conduct analyses, assess risk, and share information. TECS contains temporary and permanent enforcement, inspection, and intelligence records relevant to the law enforcement mission of CBP and numerous other federal agencies that CBP supports. TECS is described in further detail in the Federal Register at 73 Fed. Reg. 77778 (Dec. 19, 2008). The U.S. Department of Homeland Security ("DHS") has also published a Privacy Impact Assessment on TECS.[3] The TECS number affiliated with the TECS alert on page 13 of AOL-DEF-00528691 is a computer code that could be used by a hostile actor seeking to acquire, modify, or remove TECS records containing law enforcement information and intelligence belonging to DHS or its components, or other Federal, State, local, Tribal, foreign, or international government agencies.

---

[1]  https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp006-ats-december2019.pdf; https://www.dhs.gov/sites/default/files/publications/privacy_pia_cbp_ats006b_0.pdf
[2] *See* https://www.govinfo.gov/content/pkg/FR-2017-09-21/pdf/2017-19718.pdf.
[3]https://www.dhs.gov/sites/default/files/publications/DHS-PIA-ALL-021%20TECS%20System%20Platform.pdf

4

11.     **Additionally, I am asserting the law enforcement privilege over the names of three individuals in the section entitled "Information Gaps" on page 13 of AOL-DEF-00528691.** This section describes gaps in CBP's information and intelligence related to the potential marriage fraud scheme that was the subject matter of this Field Information Report. If the names in this section were disclosed, they—when read together with the remaining information in this section and throughout the Field Information Report itself—would reveal to a hostile actor precisely what information CBP had not been able to ascertain about the potential marriage-fraud scheme at that point in time. Even though this information is historical, a hostile actor could evaluate that assessment, along with other information in this Field Information Report and other publicly available information, to extrapolate sufficient information to gain general insights into the limits of CBP's abilities to acquire information and intelligence. The hostile actor could then exploit that knowledge to change its behavior or take other steps to evade CBP's efforts to collect intelligence and thus execute its mission.

12.     I have reviewed the terms of the Protective Order, ECF No. 277, in this litigation. A "Confidential" or a "Highly Confidential – Attorneys' Eyes Only" designation under the Protective Order is not sufficient to prevent the harm to CBP's operations that would result from the foregoing information in AOL-DEF-00528691 being disclosed in this litigation. While I do not question the integrity of attorneys involved in this litigation, the consequences of an inadvertent disclosure could be severe: A hostile actor could use the information described in paragraph 10, above, to corrupt the integrity of information and intelligence contained in TECS. That corruption could undermine ongoing law enforcement investigations, the willingness of other governmental agencies to share information with DHS and CBP, and ultimately, the security of our nation. Additionally, a hostile actor could analyze the information described in paragraph 11, above, to understand the limits of CBP's abilities to acquire information and intelligence, and then use those insights to inform his or her potential future unlawful activity and undermine CBP's mission.

***Requests for Sealing***

13.     At a minimum, the information described in paragraphs 10, 11, and 12, above, should be filed under seal, for the reasons set forth in those respective paragraphs.

14.    In addition, the following information in AOL-DEF-00528691 should be filed under seal:

15.    **The contact information of the Border Patrol Agent who prepared this Field Information Report on pages 2 and 14; the names of certain individuals contained at pages 4 and 13; the biographical information of the four individuals contained at pages 5, 6, 8, 13, 15, 16, and 17; and other data points maintained in CBP databases, including the criminal history and border crossing history information, of the three individuals contained at pages 5, 6, and 8.**  If disclosed to the public, the contact information of the Border Patrol Agent who prepared this Report could be used to harass or otherwise endanger this CBP employee.  Similarly, disclosure of the names and biographical information of the private individuals referenced in this Report would provide outside individuals with sufficient information to harass or endanger these individuals.  With regard to the information maintained in CBP databases, such as criminal and border crossing history, this information should remain sealed for two reasons.  First, this information provides additional detail about the specific individuals, which could be further used by hostile actors to harass or endanger these individuals.  Second, this information reveals additional details regarding the specific data points maintained within CBP database that the San Diego Sector's Sector Intelligence Unit determined to be relevant for inclusion in this Field Information Report about a potential marriage-fraud scheme.  This information, especially when combined with the other biographical information regarding the individuals, reveals the extent of CBP's inquiry into these individuals, the types of information CBP was utilizing to conduct its inquiry, and the importance of certain data points to this particular inquiry.  This information, therefore, provides a clear snapshot into CBP's law-enforcement priorities and techniques.  A hostile actor could use this information to understand which specific pieces of information CBP and other agencies determine to be relevant to particular investigations or inquiries into potential unlawful activity, and could therefore take steps to change their behavior and limit CBP's ability to obtain such information and collect relevant intelligence in the future.  As described in paragraphs 6 and 7, the collection of intelligence is critical to CBP's ability to execute its mission.

16.    **The "Product ID" number that appears on the cover sheet and in the header of every page, and the "Product ID" number that appears on the last line of text on page 11.**  "Product ID" numbers are unique identifying codes assigned to Field Information Reports.  Field Information Reports are retrievable in IRS-NG by their "Product ID" numbers.  Because of the

6

harm that could come from a hostile actor accessing Field Information Reports, CBP deems "Product ID" numbers to be law-enforcement sensitive information and restricts their internal dissemination accordingly.

17.    **The "Associated Workspace" number that appears on page 3.** The "Associated Workspace" number reflects the virtual folder within IRS-NG in which the Field Information Report was filed. Typically, more than one Field Information Report will share the same "Associated Workspace" number. At times, an "Associated Workspace" number will also be used for intelligence, and even raw intelligence, memorialized in other formats. Accordingly, the "Associated Workspace" number indicates how CBP categorized the subject matter of the report and provides an IRS-NG user with an official need to know access to related Field Information Reports and other intelligence reports. This number, like other information in IRS-NG, is law enforcement sensitive and is restricted only to individuals who have a need to know the information.

18.    **All remaining information on page 3.** The remaining information on page 3 is law enforcement sensitive information regarding the development of the Field Information Report itself. In other words, the information on this page reveals the techniques and methods utilized to collect the information in the Field Information Report, including specific intelligence-collection goals and priorities of the Field Information Report and the particular geographic and operational areas of focus. Additionally, the information reveals the Border Patrol's assessment of the reliability of the information and intelligence contained in the Field Information Report, source descriptions, information about related CBP alerts and lookouts, and the virtual categorization of the Field Information Report in IRS-NG. All of this information reveals details about CBP's law enforcement priorities and how the information in this report fits into these priorities, details about how CBP collects certain types of intelligence, context for how the subject matter of this report fits into broader CBP law enforcement goals, and details of CBP's own assessment of the reliability of the information and potential vulnerabilities. Public disclosure of this information would provide a detailed snapshot of CBP's intelligence collection capabilities, which would provide hostile actors with detailed insight to such capabilities, enabling them to change their behavior or otherwise exploit or evade law enforcement. Additionally, disclosure would reveal additional details about the IRS-NG system, which could provide an additional method of unauthorized access to the system.

19. **The information regarding how the event described on page 4 was processed in CBP's "e3 portal," including the specific event number entered into the system.** The e3 portal serves as CBP's portal to U.S. Immigration and Customs Enforcement's (ICE) Enforcement Integrated Database (EID) and the DHS Automated Biometric Identification System (IDENT) to collect and transmit data related to law enforcement activities. e3 collects and transmits biographic, encounter, and biometric data for identification and verification of individuals encountered at the border for CBP's law enforcement and immigration mission. e3 transmits data in real time from CBP Border Patrol Agents to ICE EID and IDENT, and retrieves records from those systems for CBP enforcement action purposes. The e3 suite of applications, which communicate with each other over the CBP network and through EID, which is owned by ICE, enables Border Patrol Agents to record an apprehended individual's biographic information and seized property; uniquely identify or verify the identity of the individuals they encounter by capturing the apprehended individual's photograph and fingerprints and transmitting them in real-time to IDENT; facilitate the capture and recording of data pertaining to border violence and alien smugglers; view and record information pertaining to criminal trials; build cases for prosecution; generate documents electronically per the requirements of a particular court; print, update, and track cases; and create statistical reports. The e3 event number is a unique identifying code that identifies a particular event in the system of records, for identification and tracking purposes, and allows an e3 user to retrieve records in EID and IDENT related to the event. The e3 event number is law enforcement sensitive and is restricted only to individuals who have a need to know the information.

**The Page Bates Numbered AOL-DEF-00516617 (from the Document that Begins at Bates Number AOL-DEF-00516605)**

*Background*

20. I respectfully refer the Court to paragraphs 11 and 12 of my April 27, 2020 declaration for background information regarding the 19-page document that begins with Bates number AOL-DEF-00516605. The page Bates numbered AOL-DEF-00516617 is page 13 of that document.

*Assertions of Law Enforcement Privilege*

21.    I continue to assert the law-enforcement privilege over all of the information below the line with the dates of birth for the three individuals of interest depicted on the page Bates numbered AOL-DEF-00516617. This information consists of TECS record IDs, which facilitate navigation through through CBP's TECS database. Additionally, this information describes specific law-enforcement actions and steps CBP took with regard to information about these individuals, including a description of the entities with which the information was further shared and disseminated. Disclosure of this information would alert the individuals of interest, as well as any other individuals involved in the same or similar potential unlawful activity, of the types of actions CBP takes with certain types of sensitive information, which would permit such individuals to take actions to evade law enforcement, thereby undermining CBP and other agencies' abilities to continue to obtain and develop information and intelligence about these individuals and the potential unlawful activity. Further, this information would provide hostile actors with insights into the law enforcement priorities of CBP and other agencies, as well as the techniques and methods utilized to obtain certain information, permitting them to exploit this information to more effectively evade law enforcement.

22.    A "Confidential" or a "Highly Confidential – Attorneys' Eyes Only" designation under the Protective Order would not be sufficient to prevent the harm to CBP's operations that would result from the foregoing information on the page Bates numbered AOL-DEF-00516617 being disclosed in this litigation. *Any* release of this information could lead to the development of hostile countermeasures designed to undermine CBP's ability to protect the nation.

*Requests for Sealing*

23.    At a minimum, the information described in paragraph 21 and 22, above, should be filed under seal, for the reasons set forth in those respective paragraphs. In addition, the following information on the page Bates numbered AOL-DEF-00516617 should be filed under seal: the leftmost photograph and the names and dates of birth of all three individuals of interest. This information is duplicative of some of the information contained in AOL-DEF-00528691, and accordingly, the same reasons for sealing parts of that document, discussed in paragraph 15, above, apply to this information on the page Bates numbered AOL-DEF-00516617.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed on the 19th day of May, 2020

Aaron Heitke
Chief Patrol Agent
San Diego Sector
U.S. Border Patrol
U.S. Customs and Border Protection