# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Al Otro Lado, Inc., *et al.*, <br>    *Plaintiffs,* | ) <br> ) <br> ) <br> ) | |
| v. | ) <br> ) | No. 3:17-cv-02366-BAS-KSC |
| Chad Wolf, *et al.*, <br>    *Defendants.* | ) <br> ) <br> ) | |

**DECLARATION OF ERIK MONCAYO**

I, E. Erik Moncayo, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records, and reasonably relied upon in the course of my employment, hereby declare as follows:

1. I am currently the Acting Assistant Commissioner, Office of International Affairs (INA), Operations Support, U.S. Customs and Border Protection (CBP). I have been in this position since January 19, 2020. Prior to serving in this position, I have served in a variety of other management positions, including as INA's Deputy Assistant Commissioner; the Chief of Staff and Operations Chief for the DHS Joint Task Force – West; a Supervisory Border Patrol Agent in Douglas, Arizona, and Charleston, South Carolina; Assistant Chief at U.S. Border Patrol Headquarters; Patrol Agent in Charge of the El Centro, California, Border Patrol Station; and Division Chief of Operations for the El Centro Border Patrol Sector. I have also served as an Assistant CBP Attaché to Mexico and as the CBP Attaché to Panama. I began my career with the U.S. Border Patrol in February 1996 at Douglas, Arizona.

2. CBP's INA coordinates and supports all of CBP's foreign initiatives, policies, programs and activities. INA works to develop and maintain relationships with a variety of both

1

foreign and domestic partners to support CBP's mission and the United States government's objectives relating to anti-terrorism, border security, non-proliferation, export control, immigration, capacity-building, and the facilitation of legitimate trade and travel. To execute this mission, CBP employs a number of personnel overseas, who work to effectively represent CBP's priorities and mission abroad.

3. I make this declaration to support the filing under seal of several exhibits to Plaintiffs' Opposition to Defendants' Motion to Strike in *Al Otro Lado v. Wolf*, No. 17-cv-02366 (S.D. Cal.) (including any appeal), specifically, AOL-DEF-00283080 and AOL-DEF-00283226. These documents warrant being filed under seal, as they contain law enforcement sensitive information.

4. Both of these documents are email chains from December 2018 that were sent to various individuals and entities within CBP, DHS, and other federal agencies, providing detailed factual updates regarding an approaching migrant caravan and related subjects of law enforcement interest. The emails consist of information obtained and compiled by CBP, DHS, and other U.S. government personnel working at various foreign locations – including U.S. embassies – with foreign law enforcement partners, for purposes of providing relevant individuals in CBP, DHS, and other federal partners with situational awareness of migrant caravan's progress through Central America and Mexico and other relevant facts of interest. It is of critical importance that individuals who were responsible for making decisions regarding the government's response to the caravan had such situational awareness in order to determine the most effective and appropriate response to the approaching caravan, and were able to effectively and efficiently allocate resources, as needed, to this response.

5. These emails, therefore, contain specific sensitive information on particular topics that is presented in granular detail, such that the information must remain protected from public

disclosure. For instance, these updates contain a detailed discussion of particular ongoing activities and individuals of interest to law enforcement, including criminal activity and perpetrators and victims of crimes. Public release of such information would provide individuals engaged in such activity, as well as other hostile actors looking to evade law enforcement, with notice of the government's continued interest in these activities. Such notice would permit hostile actors to adjust their operational posture or cease activities to avoid law enforcement scrutiny. For instance, if individuals involved in criminal or other unlawful activities learn of law enforcement investigations into or enforcement efforts against these activities, they are likely to change their behavior and work to undermine such investigations or enforcement activities. The updates also contain a discussion of specific actions taken by both domestic and foreign law enforcement related to the activities of interest, such as arrests and particular allocation of personnel and other resources. Public disclosure of such information would reveal the extent of law enforcement interest into the activities, and would similarly permit such actors to reallocate resources and change their operational posture to avoid law enforcement scrutiny.

6. Additionally, these updates include detailed information regarding potential factors that could influence both the caravan's progress and government officials' response to the caravan – such as, for instance, statements from politicians and other public figures regarding the caravan, anticipated additional protests or demonstrations, the involvement of individuals or groups with criminal or other ties in such demonstrations, and health and safety issues among individuals in the caravan. It is critical that individuals in CBP, DHS, and other agencies who are responsible for responding to the arrival of such large groups of individuals at the U.S. border receive such granular, real-time updates, in order to ensure that they have all relevant information to make the most appropriate decisions. This information also provides a detailed snapshot into

3

potential areas of concern to law enforcement and other government officials, law enforcement's priorities and the priorities of other government officials, and the relative resources devoted to these priorities. For example, the updates may demonstrate that, following a particular event or the involvement of particular individuals in an event, law enforcement determined it was necessary to move resources either towards or away from a certain area or to take or stop taking certain actions.  Such information would, if disclosed, permit individuals to alter their behavior and evade law enforcement activity.

7. Additionally, these updates contain granular, detailed, real-time assessments of vulnerabilities (or perceived vulnerabilities) in partner nations' law-enforcement efforts.  It is critical that individuals within CBP and DHS are able to share such frank and honest assessments of their foreign partners, as it is critical that decisionmakers are able to understand all relevant facts at hand in order to make the most effective decisions.  For instance, in determining the appropriate response to an anticipated arrival of a large group of individuals, a U.S. government decisionmaker must have an understanding of the size of the group, its anticipated location of arrival, the anticipated date of arrival, and efforts that partner nations' law-enforcement personnel may have already undertaken, or anticipate taking, with regard to this group.  The same decisionmaker must also have confidence that partner law enforcement agencies are capable of taking particular actions, to ensure that the U.S. government agency's response is both proportionate and does not create unintended vulnerabilities.  Similarly, the decisionmaker must have an understanding of how confident he or she can be that the information supporting these factual assumptions is accurate, also to ensure a proportionate and effective response.

8. If these frank assessments of perceived or actual vulnerabilities were released publicly, it would allow hostile actors to exploit these vulnerabilities and further facilitate illicit

activity such as human and narcotics smuggling. Additionally, public disclosure of perceived or actual vulnerabilities would have a significant chilling effect on foreign partners' willingness to cooperate and share information with U.S law enforcement agencies, thereby severely limiting joint efforts to reduce unlawful activity across the region.

9. Additionally, given the importance of ensuring that agency decisionmakers have all relevant information, these updates provide real-time, on-the-ground, ever-changing and highly fact-specific information, much of which may be uncorroborated or unverified at the time that it is provided. It is critical that law enforcement personnel have all relevant and up-to-date information, so that they, using their training and experience, can process, synthesize and analyze such reporting and use these items as a portion of the information collected to make educated analytic decisions. However, this information, if revealed to the public, would provide hostile actors with information about the types of information that DHS and CBP consider when conducting such law enforcement analysis, and could provide hostiles actors with information regarding potential sources that may be vulnerable to manipulation.

10. Lastly, these updates contain factual and statistical assessments of the number of individuals identified as part of the migrant caravan encountered by foreign governments, as well as the number of individuals encountered and apprehended at the U.S.-Mexico border. This information, which is itself broken down in various ways, including by country of origin and location of encounter, provides a detailed operational snapshot of the resources dedicated to the caravan's arrival by both DHS and its foreign partners. While this data is historical, it reveals – especially when combined with other information – how DHS and its partners in the region allocate resources to monitor and respond to the movement of such a large group of individuals. This information can be exploited by hostile actors, who could use this information to allocate

their own resources accordingly, by, for instance, directing such large groups to areas where there are perceived to be vulnerabilities in the resources available to respond.

      11.    For these reasons, the documents listed above, as well any charts, exhibits, or representations of information that contain information derived therefrom, should be filed under seal and kept confidential

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed this __28th__ day of April, 2020

EDMUNDO E MONCAYO
Digitally signed by EDMUNDO E MONCAYO
Date: 2020.04.28 15:34:42 -04'00'

E. Erik Moncayo
Acting Assistant Commissioner,
Office of International Affairs
Operations Support
U.S. Customs and Border Protection