JEFFREY BOSSERT CLARK
Acting Assistant Attorney General,
Civil Division
AUGUST E. FLENTJE
Special Counsel
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
EREZ REUVENI (CA 264124)
Assistant Director
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA
## (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | Hon. Cynthia A. Bashant |
| v. | **MEMORANDUM IN SUPPORT OF DEFENDANTS' EXPEDITED MOTION TO STAY ORDER GRANTING PLAINTIFFS' MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION PENDING APPEAL** |
| CHAD F. WOLF, Acting Secretary of Homeland Security, in his official capacity, *et al.*, | |
| *Defendants.* | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .....................................................................................................1

BACKGROUND ......................................................................................................1

ARGUMENT ............................................................................................................4

    I.   Considerations of Irreparable Harm and the Equities Weigh Strongly in Favor of a Stay. ...........................................................................5

        A.   The Order Inflicts Irreparable Injury on Defendants, EOIR, and the Public. ........................................................................................5

        B.   A Stay Pending Appeal Will Not Substantially Harm Plaintiffs. ...........................................................................................10

    II.  The Government is Likely to Prevail on the Merits. ...................................11

CONCLUSION .......................................................................................................14

# TABLE OF AUTHORITIES

**Federal Cases**

*Al Otro Lado v. Wolf*,
    945 F.3d 1223 (9th Cir. 2019) ................................................................ 3, 12

*Al Otro Lado v. Wolf*,
    952 F.3d 999 (9th Cir. 2020) ........................................................................3

*Al Otro Lado, Inc. v. McAleenan*,
    394 F. Supp. 3d 1168 (S.D. Cal. 2019) ....................................................2, 3

*Al Otro Lado, Inc. v. McAleenan*,
    423 F. Supp. 3d 848 (S.D. Cal. 2019) ................................................ 3, 9, 12

*Barr v. E. Bay Sanctuary Covenant*,
    140 S. Ct. 3 (2019) ........................................................................................3

*Capital Area Immigrants' Rights Coalition v. Trump*,
    — F. Supp. 3d —, 2020 WL 3542481 (D.D.C. June 30, 2020) ............... 4, 10

*Griggs v. Provident Consumer Discount Co.*,
    459 U.S. 56 (1982) ......................................................................................12

*Hamama v. Adducci*,
    912 F.3d 869 (6th Cir. 2018) ......................................................................14

*Jennings v. Rodriguez*,
    138 S. Ct. 830 (2018) ..................................................................................13

*McClatchy Newspapers v. Central Valley Typographical Union No. 46,
    Intern. Typographical Union*,
    686 F.2d 731 (9th Cir. 1982) ......................................................................12

*Nken v. Holder*,
    556 U.S. 418 (2009) ......................................................................... 4, 11, 13

*Padilla v. ICE*,
    953 F.3d 1134 (9th Cir. 2020) ....................................................................13

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) ....................................................................................13

*Townley v. Miller*,
   693 F.3d 1041 (9th Cir. 2012) ............................................................................12

*United States v. Chemical Foundation*,
   272 U.S. 1 (1926) ..................................................................................................8

*Univ. of Texas v. Camenisch*,
   451 U.S. 390 (1981) ............................................................................................10

*Westar Energy, Inc. v. Lake*,
   552 F.3d 1215 (10th Cir. 2009) ..........................................................................11

**Federal Statutes**

8 U.S.C. § 1225(b)(1)(B)(iii)(III) .................................................................................2

8 U.S.C. § 1225(b)(1)(B)(v) ......................................................................................14

8 U.S.C. § 1229a(c)(4) .................................................................................................2

8 U.S.C. § 1229a(c)(4)(A) .........................................................................................14

8 U.S.C. § 1252(f)(1) .................................................................................................13

**Federal Regulations**

8 C.F.R. § 1003.1(b) ....................................................................................................2

8 C.F.R. § 1003.42 .......................................................................................................2

8 C.F.R. § 1208.2(b) ....................................................................................................2

8 C.F.R. § 1208.30(g) ..................................................................................................2

**Federal Rules**

Fed. R. Civ. P. 62(d) ..................................................................................................12

Fed. R. Civ. P. 65(d)(1) .............................................................................................12

**Administrative Rules and Decisions**

Asylum Eligibility and Procedural Modifications,
   84 Fed. Reg. 33,829 (July 16, 2019) ............................................................ 2, 13

## INTRODUCTION

Pursuant to this Court's Standing Order for Civil Cases, § 4.A, Defendants respectfully move this Court on an expedited basis to stay this Court's Order Granting Plaintiff's Motion for Clarification of the Preliminary Injunction (Order) (ECF No. 605) pending Defendants' appeal of that Order to the U.S. Court of Appeals for the Ninth Circuit, and for an administrative stay of the Order pending briefing and adjudication of this Expedited Motion. The Order imposes new substantive obligations on the government that were not set forth in the Preliminary-Injunction Order and that significantly and irreparably harm the United States, and Defendants respectfully maintain that they are likely to prevail on the merits of their appeals from this Court's injunctive orders.

## BACKGROUND

Plaintiffs filed this lawsuit in July 2017. *See* Compl. (ECF No. 1). In their operative (second amended) complaint, filed on November 13, 2018, Plaintiffs allege in part that the Department of Homeland Security (DHS), Customs and Border Protection (CBP), and CBP's Office of Field Operations (OFO) have implemented metering procedures at land ports of entry along the U.S.-Mexico border to deny undocumented aliens access to the U.S. asylum process purportedly in violation of 8 U.S.C. §§ 1158 and 1225. *E.g.*, Second Am. Compl. ¶ 3 (ECF No. 189).

On November 29, 2018, the government moved to dismiss the Second Amended Complaint, arguing primarily that the statutes—which permit an alien "who is physically present in the United States or who arrives in the United States" to apply for asylum, § 1158(a)(1), and require the government to refer for a credible-fear interview an alien who "is arriving in the United States" if the alien is inadmissible on certain grounds and claims fear, § 1225(b)(1)(A)(ii)—by their terms do not apply to aliens standing in Mexico. *See* Defs.' Mot. to Dismiss (ECF No. 192).

On July 16, 2019, the Attorney General and the Acting Secretary of Homeland Security issued the interim final rule entitled "Asylum Eligibility and Procedural

1  Modifications," 84 Fed. Reg. 33,829 (July 16, 2019) (the rule). Subject to limited
2  exceptions, the rule establishes a mandatory bar on asylum eligibility for an alien
3  who "enters, attempts to enter, or arrives in the United States" across the southern
4  border on or after July 16, 2019, but who did not apply for protection from persecu-
5  tion or torture where it was available in at least one third country through which the
6  alien transited en route to the United States. 84 Fed. Reg. at 33,835. The rule poten-
7  tially can be applied to an alien by U.S. Citizenship and Immigration Services
8  (USCIS), when an asylum officer conducts a credible-fear interview, *id.* at 33,837;
9  by the Executive Office for Immigration Review (EOIR), when an immigration
10 judge reviews an asylum officer's negative credible-fear determination (including
11 pursuant to the rule), *see* 8 U.S.C. § 1225(b)(1)(B)(iii)(III), 8 C.F.R. §§ 1003.42,
12 1208.30(g); by EOIR, when an immigration judge adjudicates an asylum claim in
13 full removal proceedings, *see* 8 U.S.C. § 1229a(c)(4), 8 C.F.R. § 1208.2(b); by
14 EOIR, when the Board of Immigration Appeals (BIA) adjudicates an appeal from
15 an immigration judge's order denying asylum, *see* 8 C.F.R. § 1003.1(b); or by a fed-
16 eral court of appeals when adjudicating a petition for review of a removal order.

17     On July 29, 2019, this Court substantially denied the government's motion to
18 dismiss. The Court reasoned that the present-tense phrase "arrives in" in
19 § 1158(a)(1) shows that the statute confers a right to apply for asylum on aliens who
20 have not arrived in the United States but who are "in the process of arriving in" the
21 United States because they have approached the southern border to apply for asylum.
22 *Al Otro Lado, Inc. v. McAleenan*, 394 F. Supp. 3d 1168, 1198–1203 (S.D. Cal. 2019).
23 The Court reasoned that its reading of § 1158 was "buttressed by" the present-pro-
24 gressive phrase "who is arriving in the United States" in § 1225(b)(1)(A)(ii). *Id.* at
25 1200.

26     On September 26, 2019, after the Supreme Court in separate litigation permit-
27 ted the transit rule to go into effect nationwide without limitation, *see Barr v. E. Bay*
28

*Sanctuary Covenant*, 140 S. Ct. 3 (2019), Plaintiffs in this case filed a motion seeking to enjoin the government from applying the rule to a proposed subclass of aliens who were subject to CBP's metering practices before July 16, 2019, *see* Pls.' Mot. for Prelim. Inj. (ECF No. 294).

On November 19, 2019, this Court issued an order provisionally certifying Plaintiffs' requested class and issuing a preliminary injunction. *Al Otro Lado, Inc. v. McAleenan*, 423 F. Supp. 3d 848 (S.D. Cal. 2019). The provisional class consists of "all non-Mexican asylum-seekers who were unable to make a direct asylum claim at a U.S. POE before July 16, 2019 because of the U.S. Government's metering policy, and who continue to seek access to the U.S. asylum process." *Id.* at 878. The injunctive order states: "Defendants are hereby **ENJOINED** from applying the [rule] to members of the aforementioned provisionally certified class and **ORDERED** to return to the pre-[rule] practices for processing the asylum applications of members of the certified class." *Id.* "Adopting and applying" the reasoning from its motion-to-dismiss order—*i.e.*, that "arrives in" and "arriving in" include aliens "in the process of arriving in" the United States, 394 F. Supp. 3d at 1198–1203—this Court reasoned that "[t]he wording of the [rule] is clear": "by its express terms, [the rule] does not apply to those non-Mexican foreign nationals in the subclass who attempted to enter or arrived at the southern border *before* July 16, 2019 to seek asylum but were prevented from making a direct claim at a POE pursuant to the metering policy." 423 F. Supp. 3d at 875.

On December 4, 2019, the government appealed from the Preliminary-Injunction Order and sought a stay pending appeal. On December 20, 2019, a Ninth Circuit motions panel granted an administrative stay "[b]ecause granting the stay request would preserve the status quo." *Al Otro Lado v. Wolf*, 945 F.3d 1223, 1224 (9th Cir. 2019). On March 5, 2020, the motions panel denied the government's request for a stay pending appeal, which terminated the temporary stay. *Al Otro Lado v. Wolf*, 952 F.3d 999 (9th Cir. 2020). The government's appeal remains pending.

On June 30, 2020, the rule was vacated in separate litigation on procedural grounds. *See Capital Area Immigrants' Rights Coalition v. Trump* (*CAIR*), — F. Supp. 3d —, 2020 WL 3542481 (D.D.C. June 30, 2020).

On July 17, 2020, Plaintiffs moved this Court "for clarification" that the Preliminary-Injunction Order requires the government to affirmatively reopen and reconsider rule-based asylum denials that became administratively final before the injunction issued or while it was temporarily stayed by the Ninth Circuit. *See* Pls.' Mot. for Clarification of the Prelim. Inj. 1 (ECF No. 494).

On October 30, 2020, this Court issued an order granting Plaintiffs' motion and ordering new relief. This Court ordered that EOIR is bound by the preliminary injunction; that "DHS and EOIR must take immediate affirmative steps to reopen or reconsider past determinations that potential class members were ineligible for asylum based on the [rule], for all potential class members in expedited or regular removal proceedings"; that "Defendants must inform identified class members in administrative proceedings before USCIS or EOIR, or in DHS custody, of their potential class membership and the existence and import of the preliminary injunction"; and that "Defendants must make all reasonable efforts to identify class members ... and shar[e] information regarding class members' identities with Plaintiffs." Order 24–25.

## **ARGUMENT**

When adjudicating a motion for a stay pending appeal, courts consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

## I. Considerations of Irreparable Harm and the Equities Weigh Strongly in Favor of a Stay.

The Order imposes new substantive obligations on the government that impose serious and irreparable harms to the United States and the public, and those harms outweigh any injury that members of the provisional subclass may suffer if the Order is stayed.

### A. The Order Inflicts Irreparable Injury on Defendants, EOIR, and the Public.

The Order requires the government to "take immediate affirmative steps to reopen or reconsider past determinations that potential class members were ineligible for asylum based on the [rule]," including by "identifying affected class members," and to "make all reasonable efforts to identify class members," including by reviewing OFO's and Border Patrol's records for class-membership annotations. Order 25. The government's efforts to comply with these instructions have irreparably harmed, and will continue to irreparably harm, the United States.

The government's efforts to "identify ... class members," including those who were determined to be ineligible for asylum pursuant to the rule, *id.*, have been and will continue to be immensely burdensome. The government does not in the regular course record in its electronic databases whether an alien was subject to metering before entering the United States, Gov't Ex. 1, Decl. of Ashley B. Caudill-Mirillo ¶ 8 (Aug. 3, 2020); Gov't Ex. 2, Decl. of Jill W. Anderson ¶ 14 (Aug. 3, 2020), or (in EOIR's case) whether a denial of asylum was based on the rule, Gov't Ex. 2 ¶ 13. Accordingly, CBP has generated from its records a list of non-Mexican inadmissible aliens who were encountered or apprehended by immigration officers along the U.S-Mexico border between July 16, 2019 to June 30, 2020 (the date that the rule was vacated) and who were issued a Notice to Appear in removal proceedings or were issued an expedited removal order, and the government is using additional data from other components to narrow the list to those aliens who claimed fear and/or applied for asylum. This will still be an immensely overbroad list, as many of those aliens

will not have been subject to metering before July 16, 2019, many will not have been denied asylum based on the rule, and others may have been denied asylum pursuant to the transit rule and based on other grounds. Because the government does not electronically track the bases for many of these aliens' asylum denials or whether they were subject to metering, *see* Gov't Ex. 1 ¶ 8; Gov't Ex. 2 ¶¶ 13, 14, the only way to identify *potential* class members, including those who were denied asylum pursuant to the rule, is to manually review the immigration records of each alien whose name appears on the list. Even then, additional fact-finding will likely be necessary to determine whether an individual is a class member because the records may not contain sufficient evidence to determine whether the alien was subject to metering before July 16, 2019.

As detailed below, a manual review of all of the potentially relevant DHS and EOIR immigration records for each alien would be extremely burdensome.[1]

*First*, a manual review of CBP's Forms I-213 "for notations regarding class membership made pursuant to the guidance issued on November 25, 2019, and December 2, 2019, to CBP and OFO, respectively," Order 25, will be immensely burdensome, likely would not assist in identifying all potential class members, and cannot identify which class members were denied asylum pursuant to the rule. A manual review of the 152,205 Forms I-213 created by Border Patrol between November 25, 2019 and November 14, 2020 would take approximately 7,610 employee-hours. *See* Gov't Ex. 3, Decl. of Jay Visconti ¶ 4 (Nov. 25, 2020); *id.* ¶ 6 (estimating that it can take three minutes to retrieve and review one Form I-213 for a class-membership annotation). A manual review of the 32,018 Forms I-213 created by OFO between

---

[1] Defendants are thus currently focusing on reviewing the cases for overlapping subsets of these individuals: those whose applications for asylum were denied in removal proceedings before EOIR, and those who are in DHS custody and subject to removal.

December 2, 2019 and November 14, 2020, if necessary,[2] would take approximately 1,600 employee-hours. *See id.* ¶¶ 4, 6. This review would significantly strain CBP's limited resources. Moreover, the review would be only marginally beneficial, if at all, as it would not assist in the identification of any class members who entered the United States before the guidance was issued on November 25 and December 2, 2019.

*Second*, a manual review of the records of other non-party government agencies for potential evidence of class membership, as well as to determine whether asylum was denied on the basis of the rule, would be extremely and prohibitively burdensome. A review of EOIR's records for all potential class members to ascertain whether there is evidence of class membership would require the devotion of substantial resources. From July 16, 2019 to June 30, 2020 (when the rule was vacated in separate litigation), immigration judges issued decisions in 289,897 removal cases and 18,642 credible-fear reviews, for a total of 308,539 decisions. *See* Gov't Ex. 5, Decl. of Jill W. Anderson ¶¶ 5–8 (Nov. 24, 2020). The BIA issued 25,420 decisions in appeals from removal cases. *See id.* ¶¶ 5–8. The records of individual EOIR immigration-court proceedings "vary in size from a few pages and a small number of digital audio recordings of hearings to multiple volumes containing hundreds of pages and multiple lengthy audio recordings of hearings, depending on the complexity of the issues involved and the documentation presented in conjunction with the case. As such, an individualized review of documents contained in the ROP [record of proceeding] and the audio recordings could take between 6 and 24 employee-hours per case." Gov't Ex. 2 ¶ 11. Although the number of cases that EOIR is currently manually reviewing is being narrowed based on DHS data relating to the date

---

[2] OFO can search its electronic records system for a class-membership flag that field personnel were instructed to use if an individual affirmatively identified him- or herself as a subclass member. *See* Gov't Ex. 4, Decl. of Jay Visconti ¶ 6 (Aug. 3, 2020). A recent search shows that the flag has been used only nine times. Gov't Ex. 3 ¶ 7.

and place of the most recent encounter, as well as to those aliens who have been denied asylum in removal proceedings, the manual review nevertheless likely will take thousands of employee-hours: For example, if EOIR estimates that it must review 1,500 ROPs, such review likely would take between 9,000 and 36,000 hours.[3] Moreover, such review likely would not assist in identifying all class members, as the record may be devoid of evidence of class membership.

Further, adjudicating motions to reopen or reconsider based on claimed class membership in these cases is prohibitively burdensome—particularly considering that EOIR already has a backlog of over one million cases. Gov't Ex. 2 ¶ 17.

*Third,* reviewing USCIS's records for evidence of class membership would also be immensely burdensome. Between July 16, 2019 and June 30, 2020, USCIS completed approximately 70,466 credible-fear cases. Gov't Ex. 6, Decl. of Jose C. Pitti ¶ 2 (Nov. 27, 2020). USCIS adjudicators were instructed to ask credible-fear interviewees whether they were subject to metering only during the month or so after this Court issued the Preliminary-Injunction Order and following the Ninth Circuit's order denying a stay pending appeal. *See* Gov't Ex. 1 ¶¶ 3, 9. Records of credible-fear interviews that were conducted at other times generally would not include sufficient information to determine whether the alien was subject to metering. And it would be immensely burdensome for the government to interview all of those aliens

---

[3] Plaintiffs also take the position that review may be required of cases that were adjudicated after the rule was vacated on June 30, 2020. *See* Decl. of Alexander J. Halaska ¶ 2 (filed concurrently). Defendants disagree that this should be required, as the government is entitled to the presumption that its officers did not apply the transit rule to anyone after the transit rule was vacated, and Plaintiffs have not offered evidence of any such applications. *See United States v. Chemical Foundation*, 272 U.S. 1, 14–15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."). But if the government were required to review decisions issued after June 30, 2020, that would only increase the burdens.

again to assess whether they are class members. Presuming that each screening interview can last 1.75 hours (as it did for the Applicant, *see* ECF No. 588-2, at ECF pp. 145, 150), interviewing even one-tenth of the 70,466 aliens who were issued a credible-fear decision while the rule was in effect would alone take approximately 12,331 hours.[4] Further, the government will need to establish procedures to ascertain class membership for those who were properly and lawfully removed from the United States under orders of expedited removal before the Preliminary-Injunction Order even took effect or while the Order was stayed. These burdens are drastic, and they irreparably harm the United States and the public.

Plaintiffs may argue that the government can use waitlists created and maintained by actors in Mexico to alleviate some of these burdens, but importantly, Plaintiffs have not claimed that the waitlists could substitute for other forms of manual file review or class-membership screening. To the contrary, Plaintiffs' own contentions show that the waitlists would not be an efficient tool for identifying the universe of potential or actual class members. For example, Plaintiffs admit that the waitlists are not comprehensive. *See, e.g.*, Decl. of Nicole Ramos ¶¶ 8–10 (ECF No. 390-48) ("The Waitlist in Tijuana, Mexico is Underinclusive"). This means that, given the breadth of this Court's Order, the waitlists cannot substitute for the government's initial efforts to identify and reopen or reconsider the cases of "all" potential provisional subclass members who were previously denied asylum pursuant to the rule. Order 25. Further, this Court held that aliens claiming to be class members "could be required to submit proof" of class membership, *Al Otro Lado*, 423 F. Supp. 3d at 874, and Plaintiffs admit that they have information showing that the

---

[4] Plaintiffs take that position that the government cannot rely on the results of any prior class-membership screening interviews where the interviewee was determined not to be a class member. *See* Halaska Decl. ¶ 3. The government disagrees, but if the government were to conduct class-membership interviews for *all* aliens who received a credible-fear determination while the rule was in effect, that would further increase the burdens.

waitlists are not reliable, *see* Ramos Decl. ¶ 10 (ECF No. 390-48) ("Our organization has received numerous reports of corruption of the list administered by Grupo Beta in Tijuana."). This means that even aliens whose names appear on the waitlists cannot conclusively be considered a provisional subclass member, especially if there is evidence weighing against a finding of class membership. While an individual's name appearing on a waitlist might in some circumstances corroborate that the individual was previously subject to metering, it cannot substitute for the burdensome identification and screening efforts that the Order requires the government to perform in the first place.

In sum, any method of identifying class members and cases for potential reopening to comply with the Order involves narrowing an overly-broad universe of potential class members through some combination of the extremely burdensome file review and other fact-finding methods. This alone places a burden on the already-backlogged immigration system. The reopening of prior negative credible fear determinations and asylum denials in removal proceedings will further and irreparably contribute to the backlogs in EOIR proceedings. Complying with the Order will thus substantially and irreparably injure the United States and the public.

**B.    A Stay Pending Appeal Will Not Substantially Harm Plaintiffs.**

These harms outweigh any injury to the provisional subclass. Provisional subclass members whose proceedings are not yet final will not be denied asylum pursuant to the rule because the government is complying with the Court's Preliminary-Injunction Order and because the rule has been vacated in separate litigation. *See CAIR*, 2020 WL 3542481. Provisional subclass members who were denied asylum pursuant to the rule before the Preliminary-Injunction Order was issued will not be harmed by a stay of this Order, because the alleged harm of being denied asylum has already occurred and thus is not the appropriate object of preliminary relief to maintain the status quo. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)

("[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held"); *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1225 (10th Cir. 2009) ("[i]t is ... difficult to conclude [that] retrospective relief is necessary to prevent an irreparable injury" where "the injury ... has already occurred"). And provisional subclass members who were denied asylum pursuant to the rule while the Preliminary-Injunction Order was stayed will not be harmed by a stay of this Order, because those asylum denials were undisputedly lawful and proper when they were issued. Further, provisional subclass members who are facing removal are not for that reason facing irreparable injury. *Nken*, 556 U.S. at 435 ("[a]lthough removal is a serious burden for many aliens, it is not categorically irreparable").

Moreover, the Order has resulted in lengthier immigration detention for some removable aliens, as the government has been forced to delay their removal pending a determination of whether they are a provisional subclass member who may be entitled to reopening or reconsideration of their immigration proceedings pursuant to Paragraph 2 of the Order. *See, e.g.*, ECF No. 5, Pet. for Writ of Habeas Corpus, *Pena v. U.S. Attorney General*, No. 20-cv-1214 (W.D. Tex. Nov. 10, 2020).

The harms to the United States, the public, and many removable aliens far outweigh the harms to the provisional subclass.

**II.     The Government is Likely to Prevail on the Merits.**

The government respectfully maintains its position that it is likely to succeed on the merits of its appeal of the Preliminary-Injunction Order (for the reasons discussed in its pending appeal) and the Order.

*First*, the Court erred by interpreting the Preliminary-Injunction Order to require the government to reopen prior asylum denials that became final before the Order was entered. The Preliminary-Injunction Order states: "Defendants are hereby **ENJOINED** from applying the [rule] to members of the ... provisionally certified class and **ORDERED** to return to the pre-[rule] practices for processing the asylum

applications of members of the certified class." *Al Otro Lado*, 423 F. Supp. 3d at 828. The Order is thus cast in prospective terms. It states what the government is prohibited from doing in the future and what it is required to do in the future. It does not require the government to reopen asylum applications that were properly denied in the past. Further, Federal Rule of Civil Procedure 65(d)(1) states that "[e]very order granting an injunction ... must ... (B) state its terms specifically; and (C) describe in reasonable detail ... the act or acts restrained or required." Stretching the Preliminary-Injunction Order to require the government to take actions that are not clearly within the Preliminary-Injunction Order's scope causes the Order to violate Rule 65(d)(1). And the Court lacked authority to substantively modify the Preliminary-Injunction Order while the government's appeal from that Order remains pending. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 59 (1982) ("The filing of a notice of appeal ... confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); *Townley v. Miller*, 693 F.3d 1041, 1042 (9th Cir. 2012) (filing of notice of appeal divested the district court of jurisdiction over preliminary injunction).[5] Regardless of whether the Court could have ordered the government to reopen final

---

[5] Plaintiffs may argue that this Court had authority to issue the Order pursuant to Federal Rule of Civil Procedure 62(d), which permits courts to "suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights" while an interlocutory appeal from a preliminary-injunction order is pending. Plaintiffs would be incorrect. Rule 62(d) "is 'merely expressive of a power inherent in the court to preserve the status quo.'" *McClatchy Newspapers v. Central Valley Typographical Union No. 46, Intern. Typographical Union*, 686 F.2d 731, 734 (9th Cir. 1982) (quoting 7 J. Moore, Moore's Federal Practice P 62.05, at 62-19 to 20 (2d ed. 1979)). The Ninth Circuit motions panel ruled in this case that the status quo permitted the government to apply the rule to class members. *See Al Otro Lado*, 945 F.3d at 1224 ("granting the stay request would preserve the status quo"). Rule 62(d) thus does not supply the Court with authority to order the government to unwind asylum denials that were lawfully and properly issued pursuant to the rule before the Preliminary-Injunction Order was issued or while it was stayed.

asylum denials as part of the Preliminary-Injunction Order (which the government maintains it could not), the Preliminary-Injunction Order simply does not contain such a retroactive command.

*Second*, the Court erred by requiring the government to reopen asylum applications that were finally denied while the injunction was administratively stayed. A stay, by definition, "temporarily divest[s] an order of enforceability" for the period during which the stay remains in effect. *Nken*, 556 U.S. at 428. This Court thus lacked the authority to give the Preliminary-Injunction Order effect for a period in which the Ninth Circuit decided that the Preliminary Injunction should have no effect.

*Third*, the Order violates 8 U.S.C. § 1252(f)(1). Section 1252(f)(1) states that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C. §§ 1221–1232], other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." 8 U.S.C. § 1252(f)(1). "By its plain terms," section 1252(f)(l) "prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221–123[2], but specifies that this ban does not extend to individual cases." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–82 (1999); *see Jennings v. Rodriguez*, 138 S. Ct. 830, 851 (2018) (same).[6] This Court's Order binding EOIR to the Preliminary-Injunction Order violates § 1252(f)(1) because it prohibits immigration judges on a class-wide basis from finding during credible-fear reviews that provisional class members "would be ineligible for asylum and would thus not be able to establish a 'significant possibility ... [of] eligibility for asylum under section 1158.'" 84 Fed. Reg. at 33,837 (quoting 8 U.S.C.

---

[6] The Ninth Circuit held in *Padilla v. ICE* that § 1252(f)(1) does not prohibit classwide injunctive relief for aliens in ongoing removal proceedings. *See* 953 F.3d 1134, 1149–51 (9th Cir. 2020). The government respectfully maintains that the case was incorrectly decided and has sought certiorari. *See* Pet. for Writ of Certiorari, *DHS v. Padilla*, No. 20-234 (U.S. Aug. 24, 2020).

1  § 1225(b)(1)(B)(v)). The Order and the Preliminary-Injunction Order also violate
2  § 1252(f)(1) by prohibiting immigration judges on a class-wide basis from requiring
3  class members in full removal proceedings to satisfy their "burden of proof to estab-
4  lish that the alien ... satisfies the applicable eligibility requirements" and, "with re-
5  spect to any form of relief that is granted in the exercise of discretion, that the alien
6  merits a favorable exercise of discretion." 8 U.S.C. § 1229a(c)(4)(A). Both of these
7  prohibitions re-write the statute to include limitations on the government's authority
8  "that [do] not exist in the statute," which is precisely what § 1252(f) forecloses. *Ha-*
9  *mama v. Adducci*, 912 F.3d 869, 879–80 (6th Cir. 2018). This Court thus lacked
10 authority to issue the Order.

11 Accordingly, the government maintains that it is likely to succeed on the mer-
12 its of its appeals.

## CONCLUSION

14 This Court should stay the Order pending appeal and enter an administrative
15 stay of the Order while it considers this request.

16 //

DATED: December 2, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Deputy Assistant Attorney General,
Civil Division

AUGUST E. FLENTJE
Special Counsel

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

KATHERINE J. SHINNERS
Senior Litigation Counsel

*/s/ Alexander J. Halaska*
ALEXANDER J. HALASKA
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

# CERTIFICATE OF SERVICE

*Al Otro Lado v. Wolf*, No. 17-cv-02366-BAS-KSC (S.D. Cal.)

I certify that I served a copy of this document and its attachments on the Court and all parties by filing this document with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all counsel of record.

DATED: December 2, 2020          Respectfully submitted,

*/s/ Alexander J. Halaska*
ALEXANDER J. HALASKA
Trial Attorney
United States Department of Justice