MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:   +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, | Case No.:  17-cv-02366-BAS-KSC |
| Plaintiffs, | **DECLARATION OF ORI LEV IN SUPPORT OF MOTION TO ENFORCE PRELIMINARY INJUNCTION** |
| v. | |
| Chad F. Wolf,[1] *et al.*, | |
| Defendants. | |

---

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

1  CENTER FOR CONSTITUTIONAL RIGHTS
       Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
2      *bazmy@ccrjustice.org*
       Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
3      *gschwarz@ccrjustice.org*
       Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
4      *aguisado@ccrjustice.org*
5  666 Broadway, 7th Floor
   New York, NY 10012
6  Telephone: +1.212.614.6464
7  Facsimile: +1.212.614.6499

8  SOUTHERN POVERTY LAW CENTER
       Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
9      *sarah.rich@splcenter.org*
       Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
10     *rebecca.cassler@splcenter.org*
   150 E. Ponce de Leon Ave., Suite 340
11 Decatur, GA 30030
   Telephone: +1.404.521.6700
12 Facsimile: +1.404.221.5857
13
   AMERICAN IMMIGRATION COUNCIL
14     Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
       *kwalters@immcouncil.org*
15 1331 G St. NW, Suite 200
   Washington, D.C. 20005
16 Telephone: +1.202.507.7523
17 Facsimile: +1.202.742.5619

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF ORI LEV

# DECLARATION OF ORI LEV

I, Ori Lev, state the following pursuant to 28 U.S.C. § 1746:

1.    I am a partner at Mayer Brown LLP, a member of the District of Columbia Bar, admitted *pro hac vice* to this Court for this action, and counsel for the Plaintiffs in this case.

2.    Pursuant to Civ. L. R. 7.1(f), I make this declaration in support of Plaintiffs' Motion for Enforcement of the Preliminary Injunction.

General Overview of the Parties' Consultations

3.    Plaintiffs' and Defendants' counsel have conferred extensively regarding Defendants' and the Executive Office for Immigration Review's ("EOIR") (collectively, the "government") obligations under, and efforts to comply with, the Preliminary Injunction (Dkt. 330) and Clarification Order (Dkt. 605) (collectively, the "Orders") issued by this Court.

4.    The consultations began via email on November 5, 2020, when Plaintiffs raised questions regarding scheduled deportation flights and what the government was doing to ensure that PI class members who had the Asylum Ban applied to them would not be removed prior to receiving the benefit of the Orders. The parties agreed on a set of criteria (described below) for determining that certain individuals facing imminent removal were *not* PI class members; the removal of such individuals could continue without screening for class membership. This led to continued conversations regarding the Orders' requirements and what steps Defendants and EOIR had taken and intended to take to comply with the Orders. The extensive email consultations continued through November 25, 2020. The parties also conferred via telephone on November 13, 19, and 24, and December 4, 2020. A summary of the parties' consultations through November 25, 2020 are set forth in paragraphs 8 to 22 below.

5.    In the course of these consultations, Plaintiffs realized that Defendants

did not have and did not intend to develop a comprehensive plan to comply with the Clarification Order, read the Clarification Order in an unduly narrow light, and were inappropriately focused on providing notice to, and reopening or reconsidering the cases of, discrete subsets of PI class members. Moreover, Defendants insisted on moving forward with screening this discrete subset of potential PI class members for class membership, prior to developing appropriate class membership screening procedures. In these consultations, Defendants were often unable to provide meaningful answers to Plaintiffs' questions regarding specific steps they intended to take to comply with the Clarification Order or a timeline for compliance. For example, Defendants could not provide answers to questions about next steps in the comprehensive identification of PI class members, including a process by which PI class members affirmatively could assert class membership.

6.    Defendants were also unwilling to share information with Plaintiffs regarding the identities of PI class members as required by the Clarification Order absent entry of a protective order. Plaintiffs do not believe a protective order is required but agreed to the entry of a reasonable protective order. The parties' conferred but were unable to reach agreement regarding the terms of such a protective order.

7.    On November 25, 2020, Plaintiffs sent Defendants a letter setting forth Plaintiffs' views of the requirements of the Orders as well as the areas where the parties had reached an impasse. The letter is described in greater detail in paragraphs 23 to 29 below. Defendants responded by letter dated December 2, 2020 (see paragraphs 30 to 45 below), and the parties conducted a final phone consultation on December 4, 2020 (see paragraphs 46 to 48 below).

The Parties' Initial Discussions

8.    The parties' initial emails and discussions identified a series of issues regarding the government's compliance with the Orders.

*No Comprehensive Plan*

9.     It became apparent that the government did not have a comprehensive plan for how it would comply with the Orders. Although the government at times indicated that it was developing such a plan it never provided Plaintiffs a date certain by which such a plan would be completed. Plaintiffs repeatedly requested such a plan in writing.

*Focus on Individuals in DHS Custody*

10.     Rather than adopt a comprehensive plan for compliance, the government was focused on what to do with individuals in DHS custody facing imminent removal. Defendants asserted that the government must expeditiously notify these individuals why their removal was stayed and screen them to assess PI class membership and, consequently, additional relief under the Orders. Because the government had not yet articulated appropriate screening procedures for class membership or an adequate process for asserting and receiving relief under the Orders, this proposal raised several issues the parties discussed for several weeks.

*Who Gets Screened for PI Class Membership*

11.     First, as referenced above, the parties agreed on a set of criteria that could be applied to allow certain individuals to be deported without running afoul of the Orders. These are individuals: (1) who entered before July 16, 2019; (2) who last entered at a place other than across the southern land border; (3) who entered after June 30, 2020; (5) who never claimed fear or filed an asylum application; (6) who never had the Asylum Ban applied to their asylum application/fear claims; (7) subject to a final administrative removal order pursuant to Section 238(b) of the Immigration and Nationality Act (INA); (9) subject to a reinstated order of removal under section 241(a)(5) of the INA and the underlying removal order that was reinstated became administratively final before July 16, 2019; and (10) whose asylum applications reveal that they did not leave their home country, or did not arrive in Mexico, before July 16, 2019.

DECLARATION OF ORI LEV

12.    The parties did not agree on other categories of individuals that the government proposed to exclude from future screening: (1) those who had the Asylum Ban applied to them, but where the final decision also referenced an alternate basis to deny asylum; (2) those who had the Asylum Ban applied to them by an initial adjudicator, but where the final decision was based on an alternate ground;[2] and (3) those with final asylum determinations dated after June 30, 2020 (the date of the decision in *Capital Area Immigrants' Rights Coalition v. Trump ("CAIR")*, No. 19-2117 (TJK), 2020 WL 3542481 (D.D.C. June 30, 2020), vacating the Asylum Ban). Notwithstanding continued consultation, the parties remain at an impasse regarding whether these individuals are entitled to be screened for PI class membership and afforded the benefits of the Orders.

*Notice to Individuals in DHS Custody*

13.    Second, the government proposed to provide notice to those in DHS custody, purportedly to explain why their removal had been stayed. The parties exchanged numerous drafts of this notice through December 9, 2020. While Defendants adopted some of Plaintiffs' suggestions to improve the notice, the last version of the notice shared by Defendants on December 8, 2020, which Defendants' asserted "more than complies with the requirements of Paragraph 3 [of the Clarification Order]," still (a) failed to inform recipients when they would be screened for PI class membership—and consequently, by when they would be required to obtain evidence to establish PI class membership, (b) contained a confusing definition of metering,[3] (c) mischaracterized the PI class as applying only

---

[2] Plaintiffs had initially agreed to exclude from further screening those "for whom the final adjudicator denied asylum only on grounds other than the Asylum Ban." After further clarification from Defendants that this category included "someone to whom the transit rule was applied by a prior adjudicator at a particular stage, but to whom ultimately it was not applied by the final adjudicator," Plaintiffs indicated that they believed such individuals were entitled to be screened for PI class membership and have their case reopened/reconsidered if appropriate.

[3] Specifically, the proposed notice defines metering as "the government's practice of controlling the intake into those ports of entry of individuals who do not possess entry documents (such as U.S. passports, U.S. visas, entry permits, or border-

DECLARATION OF ORI LEV

4

1  to those who "were subject to metering at a port of entry" (as opposed to applying

2  to those subject to the government's metering policy—including those who did not

3  make it physically to a port of entry, but nevertheless were unable to seek asylum at

4  a port of entry), and (d) did not provide relevant information about how to obtain

5  relief once an individual has established PI class membership. Plaintiffs informed

6  Defendants of these concerns on December 9, 2020. Although Plaintiffs provided an

7  email address for inclusion in the notice at which recipients of the notice could

8  contact class counsel with questions about the litigation, Plaintiffs declined to

9  provide a phone number to be included in the notice at which recipients could call

10  class counsel because (a) Defendants declined to provide information about who

11  potential PI class members could contact within the government to get more

12  information about subsequent steps in the process of PI implementation (despite

13  being the only entity with that information) and (2) Plaintiffs lacked critical

14  information about PI implementation, and therefore would not be able to

15  meaningfully assist callers. Defendants have not shared a subsequent version of the

16  notice with Plaintiffs.

17         *Process for Screening Those in DHS Custody*

18         14.    Third, Defendants were unable or unwilling to share with Plaintiffs the

19  process to be used for PI class member screening that was proposed for those in DHS

20  custody. Specifically, Defendants were unwilling to share the screening questions

21  that would be used. On November 23, 2020, Defendants did provide for the first time

22  the screening questions that had been used by USCIS to screen individuals for class

23  membership after the Court issued the preliminary injunction in 2019.

24         15.    Attached hereto as **Exhibit 1** is a true and accurate copy of *Al Otro*

25  *Lado: USCIS Metering Questions*, which Defendants provided to Plaintiffs on

26  November 23, 2020, and described as "the questions developed in 2019 for use by

27  _____

28  crossing cards) by telling such individuals that the port of entry is at capacity and
   that the port will permit them to enter for processing at a later time."

DECLARATION OF ORI LEV

USCIS for purposes of gathering information concerning preliminary-injunction class membership."

16.    The next day, November 24, 2020, Plaintiffs identified the following problems with the prior USCIS screening questions:

    a.  "Question 2: The phrase "seek to enter" is ambiguous, both as to "seek" and as to "enter". Those terms aren't defined, interpretation and translation could vary, and the phrase may be understood as referring to attempts to enter without inspection between ports. We think that asking about efforts to approach a port would be more likely to solicit accurate testimony regarding the issues the government is asking about."

    b.  "Question 2(a): As written, an individual who answers "no" to question 2 or answers question 2(a) with a statement that they did not try to enter the United States prior to July 16, 2019 (perhaps because they understood it to mean entering without inspection), would not be asked any additional questions (including about being turned away by US or Mexican officials (question 2(d)) or putting or trying to put their name on a waitlist (questions 3 and 4)), in light of the instruction "no need for additional questions"."

    c.  "Question 3: Asking the interviewee if they "put [their] name" on a list is confusing and could be misunderstood/mistranslated because in nearly all cases we are aware of, individuals other than the asylum seeker are the ones that physically write the names onto the list."

    d.  "Question 3(a): the date in the bracketed instruction is wrong; it should be 7/16/19, not 7/16/16."

    e.  "Question 3(a): the bracketed instruction that there is "no need for additional questions" is wrong. There is no reason that Questions 4 and 5 should not be asked."

DECLARATION OF ORI LEV

6

f.  "Question 5: It is unlikely that individuals were "asked" to put name [sic] on a list; they may have been told about the existence and operation of the list."

17.    The parties also conferred regarding whether the government would obtain additional waitlists beyond those that had been provided by Plaintiffs and what weight the government would afford such waitlists during the USCIS screening process. The government was unwilling to commit to obtaining such additional waitlists, indicated that the waitlists were not organized by A numbers, may contain mis-spellings, were under-inclusive and in certain instances may list individuals who added their names to the list prior to arriving in a border town. Defendants indicated that they intended to consult the waitlists in their possession as part of the PI class member screening process, but were not willing to treat such waitlists as presumptive evidence of PI class membership.

*Broader Compliance Steps*

18.    The parties also discussed their understanding of the government's broader compliance obligations under the Order.

19.    Defendants indicated that the government was taking steps to identify all individuals who crossed at Ports of Entry ("POEs") or were encountered by Border Patrol between POEs after July 16, 2019, with a likely end date for the data pull of June 30, 2020.

20.    Defendants indicated that they were seeking to identify individuals with final asylum denials based on the Asylum Ban, but that this process required a case review (as opposed to reliance on a data field), so Defendants and EOIR were going to review cases with a Notice to Appear dated after July 16, 2019, and likely through June 30, 2020. Defendants indicated that June 30, 2020 was an appropriate cut-off date for case review in light of the decision in *CAIR* and the notice of the *CAIR* decision that was provided to Immigration Judges ("IJs") and the Board of Immigration Appeals ("BIA"). Plaintiffs requested to see the notice of the *CAIR*

1  decision that had been provided to IJs and the BIA and what sort of quality assurance

2  review, if any, was conducted to ensure that the Asylum Ban was no longer being

3  applied after June 30, 2020. Defendants have not shared this information to date.

4       21.    Defendants also indicated that the government did not intend to

5  reopen/reconsider *all* cases in which the Asylum Ban had been applied in order to

6  determine PI class membership. Instead, Defendants hoped to develop an

7  unspecified process by which to screen such individuals for PI class membership

8  and then only reopen/reconsider the cases of those identified as PI class members to

9  whom the Asylum Ban was applied. Defendants indicated that they were still

10  considering the process by which they would seek evidence of PI class membership

11  from those individuals not in DHS custody and the process by which they would

12  review such evidence (including who would do the review). As noted above,

13  Defendants also indicated that those individuals who had the Asylum Ban applied to

14  them but where there was also an "independent ground" for asylum denial did not

15  need to have their cases reopened/reconsidered.

16       22.    Defendants stated that the government was not planning on determining

17  PI class membership based on the dates that individuals entered at a particular Port

18  of Entry and the dates metering was occurring at that Port of Entry.

19  Plaintiffs' November 25, 2020 Letter

20       23.    In light of these initial discussions, on November 25, 2020, Plaintiffs

21  sent Defendants a letter requesting that Defendants provide Plaintiffs with a written

22  implementation plan outlining the steps the government intends to take to comply

23  with the Clarification Order and a timeline for taking those steps. The letter also set

24  out Plaintiffs' understanding of the requirements of the Orders and Plaintiffs'

25  position with respect to a protective order.

26       24.    The letter first outlined the steps Plaintiffs believe would be required

27  for the government to "make all reasonable efforts to identify class members" in

28  accordance with paragraph (4) of the Clarification Order. Plaintiffs noted that such

DECLARATION OF ORI LEV

8

identification is a prerequisite to being able to comply with the notice and reopening/reconsideration requirements of paragraphs (3) and (2) of the Clarification Order, respectively. The steps outlined by Plaintiffs included:

    a. identifying all individuals who (i) were processed as asylum seekers since July 16, 2019 at Class A POEs on the U.S-Mexico border or (ii) who otherwise entered the United States and sought asylum since July 16, 2019;

    b. affirmatively seeking evidence of PI class membership from these individuals, unless Defendants have already established PI class membership based on review of an individual's case file and the relevant metering waitlist. Plaintiffs also noted that Defendants should develop a written process for determining PI class membership that sets forth the type of evidence that will be considered and the weight such evidence will be given;

    c. seeking copies of the metering waitlists for those POEs where Plaintiffs have not provided Defendants with copies of waitlists;

    d. treating an individual's name on a waitlist to enter a POE on the U.S.-Mexico border prior to July 16, 2019 as presumptive evidence of PI class membership absent an articulated reason that such evidence does not reflect that an individual was present in a border city prior to July 16, 2019, and wished to seek asylum in the United States;

    e. identifying for each POE on the U.S.-Mexico border the dates that metering was occurring at the POE, the last waitlist number issued at the POE on July 15, 2019 ("the July 15 waitlist number"), and the date that individuals with the July 15 waitlist number were called to enter the United States (the "last entry date"), to the extent it is possible for the government to ascertain such information, and to then afford presumptive PI class membership (similar to paragraph d above) to any

DECLARATION OF ORI LEV

1        individual who entered at a POE prior to the last entry date;

2    f.    affording presumptive PI class membership to any individual who was

3         processed for asylum who entered the U.S. at the San Ysidro POE

4         between July 16, 2019 and November 19, 2019, absent specific

5         evidence that the individual was not in fact impacted by metering prior

6         to July 16, 2019, based on the dates and waitlist numbers described at

7         page 4 of the Clarification Order;

8    g.    reviewing the notations of PI class membership as expressly ordered by

9         the Court in paragraph (4) of the Clarification Order;

10   h.    considering other evidence provided by potential PI class members, and

11   i.    *not* relying on any statements made during, or conclusions reached

12        based on, Defendants' prior PI class member screening efforts.

13    25.    Plaintiffs' November 25 letter also outlined Plaintiffs' view of the

14   notice required to be provided pursuant to paragraph (3) of the Clarification Order,

15   including that the notice include:

16   a.    the process for establishing PI class membership, including a

17        meaningful description of the next steps that would allow individuals

18        to properly prepare to establish PI class membership (e.g., USCIS

19        screening interview, opportunity to provide evidence, and description

20        of evidence accepted);

21   b.    a description of the relief afforded to PI class members (i.e., that the

22        Asylum Ban may not be applied to them and that certain PI class

23        members may be entitled to have prior determinations reopened or

24        reconsidered); and

25   c.    any additional process required to obtain reopening and reconsideration

26        relief afforded to certain PI class members.

27   In this regard, Plaintiffs noted that they did not consider Defendants' proposed

28   "Notice of Potential Class Membership in Cases Subject to Removal" (the

DECLARATION OF ORI LEV

latest version of which had at that time been shared with Plaintiffs on the evening of November 24, 2020) to constitute adequate notice under the Clarification Order.

26.     Plaintiffs' November 25 letter also set forth Plaintiffs' views regarding the steps Defendants and EOIR are required to take to reopen or reconsider past determinations that potential PI class members were ineligible for asylum based on the Asylum Ban pursuant to paragraph (2) of the Clarification Order.

      a.  Plaintiffs first explained that the process must begin by identifying the universe of potential PI class members who have received an asylum ineligibility determination based on the Asylum Ban. Plaintiffs noted that PI class members who were determined to be ineligible for asylum based on the Asylum Ban but were granted another form of relief from removal (e.g., withholding of removal) are eligible for reopening or reconsideration relief, as are those with an executed final order of removal (i.e., those already removed).

      b.  Plaintiffs further explained that to the extent that Defendants intended, as they had stated in the parties' prior discussions, to identify eligible PI class members *prior to* reopening or reconsidering cases (as opposed to using the reopened case to make the PI class membership determination), they must use the same membership identification steps and criteria that Plaintiffs outlined in the letter with respect to paragraph (4) of the Clarification Order, including affording individuals an opportunity to submit evidence, and review of waitlists, entry dates and notations.

      c.  Plaintiffs' letter also explained that reopening or reconsideration must include an opportunity for the PI class member to submit evidence of asylum eligibility.

      d.  Plaintiffs made clear their view that PI class members who were

DECLARATION OF ORI LEV

11

1   deemed ineligible for asylum based on the Asylum Ban were entitled

2   to reopening/reconsideration relief even if they were denied asylum for

3   another reason, unless the denial of asylum was based on a separate,

4   categorical bar to asylum eligibility.

5       e.  And Plaintiffs explained that Defendants cannot categorically exclude

6           from reopening/reconsideration relief a PI class member simply

7           because the PI class member received a final determination after June

8           30, 2020 (the date of the *CAIR* decision), absent a review to confirm

9           that the Asylum Ban was not applied in the PI class member's case.

10      27.  The letter then identified issues as to which Plaintiffs believed the

11  parties were at an impasse, namely Defendants' unwillingness to:

12      a.  Obtain additional Class A POE metering waitlists from their Mexican

13          counterparts and treat metering waitlists as presumptive evidence of PI

14          class membership;

15      b.  Commit that prior PI class membership screenings and statements made

16          therein will not be used to exclude potential PI class members from PI

17          class membership;

18      c.  Commit that PI class members denied asylum based on application of

19          the Asylum Ban and other grounds remain eligible for reopening and

20          reconsideration relief, unless the denial of asylum was based on a

21          separate, categorical bar to asylum eligibility; and

22      d.  Commit that PI class members with final determinations made after

23          June 30, 2020, remain eligible for reopening or reconsideration relief,

24          unless further review of the decision accompanying the post-June 30

25          determination confirms that the adjudicator did not apply the Asylum

26          Ban in reaching the final determination.

27      28.  The letter also requested that Defendants provide a proposed written

28  implementation plan identifying the steps that the government intends to take to

DECLARATION OF ORI LEV

12

comply with the Clarification Order and a timeline for taking those steps by Wednesday, December 2, 2020, to further inform the conversations between the parties regarding the Clarification Order. The letter made clear that if Defendants failed to provide such a plan, Plaintiffs would consider the parties to be at an impasse generally regarding the implementation of the Clarification Order and intended to seek relief from the Court directing that Defendants establish a draft implementation plan by a date certain, creating a process for the parties to consult with regard to such a plan and a mechanism by which to bring unresolved implementation issues to the Court (or a special master) for resolution.

29.    Finally, the letter explained that Plaintiffs do not believe that a Protective Order is necessary for Defendants to comply with the Clarification Order's directive that Defendants share information regarding PI class members with Plaintiffs, even if that information would otherwise be protected from disclosure by the government under 8 C.F.R. §§ 208.6 and 1208.6. Plaintiffs, however, indicated that they were not opposed to a limited Protective Order that would provide that such information, when shared, would be used by Plaintiffs for the sole purpose of facilitating compliance with any Party's or non-Party's obligations under the Court's Orders. Plaintiffs expressly disagreed with the following features of Defendants' proposed protective order:

      a.    A prohibition on sharing the information with Plaintiff Al Otro Lado, Inc.

      b.    A limitation on sharing such information only with Counsel of Record, court personnel, the individual noncitizen to whom such information pertains and his or her attorney or accredited representative as demonstrated by a filed G-28, a filed EOIR-27, a filed EOIR-28, or a DHS Privacy Waiver. Plaintiffs specifically objected to the proposed reliance on government forms to indicate an attorney-client relationship and more generally objected to the disclosure limitation, given the

DECLARATION OF ORI LEV

13

anticipated logistical challenges in communicating with and getting signed documents from PI class members. In this regard, Plaintiffs noted that the requirement that Plaintiffs may only use such information for the limited purpose of facilitating compliance with the Court's Orders, coupled with counsel's independent professional ethical obligations that apply to Plaintiffs' counsel serving the role of class counsel, already require Plaintiffs' counsel to proceed with appropriate care in the storage and use of PI class member information.

c. A requirement that Plaintiffs maintain records of disclosures of such information to PI class members or their representatives, to be produced at Defendants' request.

Defendants' December 2 Response

30. Defendants responded to Plaintiffs' letter by letter dated December 2, 2020 (more than one month after the Clarification Order was issued). Defendants' letter first explained why the government had focused its initial compliance efforts on paragraph 2 of the Clarification Order, including the government's view that "the task of identifying all preliminary-injunction class members as set forth in Paragraph 4 of the [Clarification] Order is essentially impossible in light of the available records." The government also noted that it "must prioritize review of the potential class membership of individuals currently in the custody of U.S. Immigration and Customs Enforcement (ICE) who are otherwise facing imminent removal," so as to prevent those individuals' continued detention and the frustration of ICE's "ordinary removal operations."

31. Defendants' letter stated that "DHS has taken and is taking affirmative steps toward the reopening of cases by developing procedures for providing notice to those in ICE custody with final orders of removal who may be class members and who may be entitled under the [Clarification] Order to have their cases reopened or readjudicated, and for United States Citizenship and Immigration Services (USCIS)

DECLARATION OF ORI LEV

14

1    to interview those individuals to determine whether they are class members." The

2    letter went on to state that the "government anticipates that the notice and interview

3    procedures will be in place approximately one week after the notice is completed,"

4    that "[t]hose individuals who are identified as class members and who are subject to

5    orders of expedited removal and to whom the transit rule was applied will be referred

6    for a new credible fear interview," and the that "government is working toward

7    finalizing procedures for reopening the eligible cases of those individuals who

8    received final orders of removal in section 240 removal proceedings and are

9    identified as class members."

10        32.    The letter noted that "to comply with Paragraph 2, the Executive Office

11   for Immigration Review (EOIR) also took immediate, affirmative steps toward

12   identifying cases that are eligible for reopening by generating a list of individuals in

13   Section 240 removal proceedings for whom EOIR's systems indicate that an

14   application for asylum was denied between July 16, 2019 through June 30, 2020.

15   Currently, EOIR is preparing to begin the burdensome task of a case-by-case review

16   of each individual on this list who was encountered by CBP between July 16, 2019

17   and June 30, 2020. This case-by-case review requires manual collection and review

18   of each Record of Proceeding (ROP) for each individual on the list."

19        33.    The letter further stated that "in efforts to comply with Paragraph 4 of

20   the Order, Defendants are also developing a broader list of individuals who were

21   encountered by CBP at Southern land border ports of entry or between ports of entry

22   along the Southern land border between July 16, 2019 and June 30, 2020, were

23   processed for expedited removal or Section 240 removal proceedings and were

24   referred for a credible fear interview or who filed a Form I-589 in Section 240

25   removal proceedings. Although this list will be overbroad, it could be used for

26   purposes of providing notice under Paragraph 3 of the Court's Order. Creating this

27   list involves several different steps and employs data from several different

28   departments and components. Thus, although Defendants have accomplished some

DECLARATION OF ORI LEV

15

1    of this task, this data compilation is not yet complete."

2        34.    The letter did not provide any additional details or timelines for the

3    actions described in paragraphs 30-33 above.

4        35.    The letter then went on to address some of Plaintiffs' points regarding

5    what is required to comply with the Court's Orders. First, Defendants stated that "it

6    would require staggering amounts of work to identify actual class members through

7    the immigration records, and even then, the records may not be sufficient and further

8    factfinding may be required. The government is thus developing a list of individuals

9    whom data reflects were encountered by CBP at a Southern land border port of entry

10   or between ports of entry along the Southern land border between July 16, 2019, and

11   June 30, 2020, and were referred for a credible fear interview or applied for asylum

12   in Section 240 removal proceedings to comply with Paragraph 4 of the Order. This

13   list would be exceedingly overbroad and would constitute many individuals who are

14   not actual class members. Given the difficulties of ascertaining class membership on

15   a classwide basis, however . . . . Defendants would agree to provide notice of

16   potential class membership to the individuals on this list who are in DHS custody or

17   who are in administrative proceedings before EOIR."

18       36.    Defendants next disagreed with the need to solicit evidence of PI class

19   membership from all potential PI class members, stating that "[s]uch an effort would

20   be grossly disproportionate to the benefits, and is thus not a reasonable effort to

21   identify class members." As examples of individuals from whom "soliciting

22   evidence of class membership would be of little utility," the government identified

23   those who have already been granted asylum, those denied asylum in Section 240

24   removal proceedings on grounds other than the transit rule, and those who are

25   currently in ongoing EOIR proceedings, since "those individuals can still present

26   evidence of class membership as necessary in the course of their proceedings and

27   given that the transit rule has been vacated, individuals with ongoing proceedings

28   have little, if any, need to present such evidence."

37.    With respect to establishing PI class membership, the government reiterated its view that an individual "must demonstrate that it is more likely than not that they are a class member." The letter stated that "[a]djudicators will consider information contained in an alien's immigration records, as well as such documentary or testimonial evidence that the alien may present, concerning whether the alien was prevented from entering the United States at a port of entry (POE) before July 16, 2019, as a result of metering, including evidence of their travel to or stays in a border town abutting a POE. The government will also consider evidence that individuals did not make any efforts before July 16, 2019, to enter the United States at a POE, including but not limited to individuals' own statements in prior interviews that they were not present in a Mexican border town before July 16, 2019."

38.    With respect to reliance on the government's prior PI class membership screening efforts, the letter stated that Defendants "disagree with Plaintiffs that [Defendants] are not permitted to rely on prior PI class membership screenings to exclude any individual from class membership. However, solely to avoid a dispute with Plaintiffs, the government is not relying on the *results* of prior class membership screenings to exclude individuals from consideration for class membership. Yet an individual's *prior statements* in prior screening interviews are nonetheless relevant evidence to be considered when determining whether the individual is more likely than not a class member." (emphasis added)

39.    With respect to obtaining or relying on waitlists, the letter stated: "Plaintiffs provide no authority for their position that waitlists should be treated as presumptive evidence of class membership. These lists are not U.S. government records and are not entitled to a presumption of regularity."

40.    With respect to the notice required under Paragraph 3 of the Clarification Order, the letter stated that Defendants "do not agree that reasonable notice of the existence and import of the preliminary injunction necessarily requires

DECLARATION OF ORI LEV

17

all of the details Plaintiffs request. Defendants also maintain that the [then-]current version of the Notice to be provided to those in DHS custody who are facing removal meets the requirements of Paragraph 3 of the Order."

41. With respect to the reopening/reconsideration relief ordered in Paragraph 2 of the Clarification Order, Defendants agreed with Plaintiffs that the provision applies to those with administratively final denials of asylum based on the Asylum Ban, as well as those who were denied asylum based on the Asylum Ban, but were granted other relief from removal.

42. With respect to obtaining evidence of PI class membership from those not in DHS custody prior to reopening/reconsidering cases, the letter states that the "government is still determining the best manner to conduct factfinding for other individuals, given that it is not contemplated by existing procedures. Defendants' position on the evidence to be considered is the same as set forth above."

43. With respect to PI class members determined to be ineligible under the Asylum Ban and with respect to whom an adjudicator also purported to deny asylum on another ground, the letter states that "Defendants do not agree that the Order requires EOIR to reopen a class member's Section 240 removal proceedings if the adjudicator noted that the transit rule applied, but also considered the asylum claim and separately denied asylum based on an independent ground that is supported by the record—regardless of whether that ground is a categorical bar to asylum eligibility."

44. With respect to asylum denial determinations made after June 30, 2020, the letter states that "[w]hile Defendants agree that a class member's case may be eligible for reopening or reconsideration relief if the transit rule were applied to that class member to determine that she was ineligible for asylum, even if the rule were applied after June 30, 2020, Defendants take issue with requiring the government to conduct a broad review of cases that involve post-June 30 decisions for a rule-based asylum denial. The transit rule was vacated on June 30, 2020, and should not have

1  been applied to anyone—class member or not—after that time. Accordingly,

2  Defendants' position is that, for purposes of Paragraph 2, it can presume that post-

3  June 30 decisions recognized that vacatur and did not apply the transit rule."

4      45.    With respect to the need for a protective order to comply with the

5  Court's order that Defendants provide Plaintiffs with information regarding PI class

6  members, the letter stated that:

7          a.  A protective order was needed in part because the Clarification Order

8              does not "expressly contemplate sharing information about individuals

9              who are potential class members" and does not "cover substantive

10             information about individuals' asylum or withholding claims";

11         b.  Defendants now agree that the information at issue could be shared with

12             Al Otro Lado; and

13         c.  That the remaining provisions of Defendants' proposed protective order

14             "that Plaintiffs dispute are designed to further the purpose of the

15             regulations [8 C.F.R. §§ 208.6, 1208.6] to ensure that disclosures of

16             protected material are not made beyond Plaintiffs without obtaining the

17             specific class member or potential class member's approval to disclose,

18             or without the individual to whom the information is disclosed agreeing

19             to the same limits on disclosure as Plaintiffs have agreed. Further, the

20             recordkeeping requirements for disclosures are necessary for the

21             government to ensure that its release of Asylum Material to Plaintiffs

22             does not violate the regulation."

23  <u>Subsequent Discussions Among the Parties</u>

24      46.    After the exchange of letters described above, the parties met

25  telephonically on December 4, 2020. During that call, counsel discussed the areas of

26  disagreement set forth in the correspondence. On that call, Defendants stated that:

27         a.  They would not agree to treat individuals who entered at a POE during

28             the dates when metering was ongoing and prior to the date that the last

DECLARATION OF ORI LEV

19

1    waitlist number issued on July 15, 2019 was called as presumptive PI

2    class members (see paragraph 24(e) above);

3    b.  They did not know who would determine PI class membership for those

4    potentially entitled to reopening/reconsideration relief who are not in

5    DHS custody, what process would be established for such

6    determinations, or how evidence of PI class membership could be

7    solicited or submitted in connection with such process (see paragraphs

8    21, 26(b) above);

9    c.  They would consider whether it made sense to solicit PI class

10    membership evidence from individuals in ongoing administrative

11    proceedings, in case *CAIR* is overturned, and had not considered

12    precisely what constituted "ongoing administrative proceedings" for

13    purposes of evidence solicitation determinations (see paragraph 36

14    above);

15    d.  They were unwilling to provide Plaintiffs the PI class member

16    screening questions that will be used by USCIS in connection with

17    screening individuals in DHS custody for PI class membership, or the

18    guidance that will be provided to those conducting the screening;

19    e.  That the asylum officer conducting PI class member screening for those

20    in DHS custody will have access to the waitlists that Plaintiffs have

21    provided to Defendants and that the waitlists will be considered (though

22    will not be considered presumptive evidence of PI class membership),

23    but were unable to answer basic questions about how such lists would

24    be reviewed or made available to the asylum officers;

25    f.  That the government did not believe that cases that are reopened or

26    reconsidered needed to be remanded for fact-finding in all cases and

27    that asylum determinations could appropriately be made based on the

28    existing record in certain cases (see paragraph 26(c) above); and

DECLARATION OF ORI LEV

g. That the guidance provided to IJs and the BIA regarding *CAIR* is privileged but that Defendants would consider sharing information regarding the dates any such guidance was provided (see paragraph 20 above); to date, Defendants have provided no further information regarding such guidance.

47. Plaintiffs reiterated the areas at which the parties are at an impasse, and indicated that they would seek court intervention clarifying Defendants' obligations under the Orders as well as an order directing Defendants to develop and share an implementation plan.

48. Finally, the parties discussed the protective order sought by Defendants before they are willing to share information regarding PI class members. Plaintiffs indicated that they would be willing to limit the sharing of such information to family members and counsel of the individual to whom the information relates, and indicated that they would provide proposed language to that effect to Defendants.

49. On the evening of December 4, 2020, Plaintiffs provided Defendants with proposed edits to the proposed protective order, authorizing plaintiffs to share the relevant information with (i) the potential PI class member to whom the information pertains, or to members of such individual's family, or to such individual's attorney or accredited representative (including his or her associates, clerks, paralegals, in-house investigators, stenographic personnel, litigation support contractors, and such other regular and temporary employees who assist the individual's attorney or accredited representative)" ("Listed Individuals"), and (ii) any person who the potential PI class member "has given written or oral consent to share such material with, as well as any person who [a Listed Individual] has given written or oral consent to share such material with, in accordance with the terms of this order."

50. On December 7, 2020, Defendants rejected Plaintiffs' proposed edits to the proposed protective order, continuing to insist Plaintiffs can only share the

1   relevant information with an attorney or accredited representative of the individual

2   to whom the information pertains who has submitted a specified government form

3   establishing such a relationship (see paragraph 29(b) above) or to any person the

4   individual to whom the information pertains has authorized in a signed writing to

5   receive the information. Defendants also continued to insist that Plaintiffs maintain

6   records of any disclosure of such information and provide such records to

7   Defendants or EOIR upon request. Attached hereto as **Exhibit 2** is a true and

8   accurate copy of Defendants' proposed edits to Plaintiffs' December 4 proposed

9   protective order language (described in paragraph 49 above).

10       51.   The parties' discussions and correspondence make clear that the parties

11   are at an impasse regarding the following issues:

12   *Overall implementation*

13       a.   Defendants' refusal to provide a written implementation plan outlining

14         the steps they intend to take to comply with the Clarification Order and

15         a timeline for taking those steps;

16   *Paragraph (4) of the Clarification Order*

17       b.   Defendants' unwillingness to obtain additional metering waitlists from

18         their Mexican counterparts;

19       c.   Defendants' unwillingness to treat an individual's name on a metering

20         waitlist prior to July 16, 2019 as presumptive evidence of PI class

21         membership;

22       d.   Defendants' unwillingness to treat an individual's inspection and

23         processing at a POE on a date when the waitlist numbers being called

24         for entry at that POE were issued prior to July 16, 2019 as presumptive

25         evidence of PI class membership;

26       e.   Defendants' unwillingness to disclaim reliance on statements made

27         during Defendants' faulty prior efforts at PI class membership

28         screening (such as the screening of the Applicant) in determining class

DECLARATION OF ORI LEV

membership;

  f. Defendants' insistence that a protective order is required to provide Plaintiffs with information regarding potential PI class members and the provisions of such a protective order;

*Paragraph (3) of the Clarification Order*

  g. What constitutes adequate notice under paragraph (3) of the Clarification Order;

*Paragraph (2) of the Clarification Order*

  h. Defendants' failure to establish a process by which individuals potentially eligible for reopening/reconsideration can submit evidence of class membership equivalent to any procedures adopted for those in DHS custody;

  i. Defendants' intent to exclude from reopening/reconsideration relief PI class members who were deemed ineligible for asylum based on the Asylum Ban, where the asylum denial decision also identifies an alternative non-categorical reason for denying asylum;

  j. Defendants' intent to exclude from reopening/reconsideration relief PI class members to whom the Asylum Ban was applied at an intermediate stage of the process (e.g., immigration court), where the final adjudicator (e.g., the BIA) denied asylum only on a basis other than the Asylum Ban;

  k. Defendants' intent to not screen individuals with final determinations after June 30, 2020 for PI class membership or reopening/reconsideration relief.

<u>IJ Decisions</u>

  52. On December 14, 2020, Plaintiffs brought to Defendants' attention a case where an immigration judge appears to have incorrectly applied the Asylum Ban to a PI class member, in a decision issued on June 30, 2020. The decision denied

1    a motion to reopen and reconsider a prior asylum denial that had been based on the

2    Asylum Ban. The IJ rejected the applicant's argument that the Ninth Circuit's denial

3    of the government's motion to stay, and the concomitant dissolution of the

4    administrative stay of the preliminary injunction, constituted "changed law that is

5    applicable to this case." The IJ found that "Respondent's contention is misguided in

6    that this Ninth Circuit decision does not govern Fifth Circuit law." Attached hereto

7    as **Exhibit 3** is a true and accurate copy of the decision described above, which

8    Plaintiffs provided to Defense counsel on December 14, 2020. To protect the identity

9    of the asylum applicant, Plaintiffs are separately moving to seal the name and other

10   identifying information of the applicant.

11          53.    On December 9, 2020, Plaintiffs brought to Defendants' attention a

12   case where an immigration judge appears to have incorrectly applied the Asylum

13   Ban to a PI class member, in a decision issued on July 16, 2020. The respondent in

14   the case asserted at his hearing on July 9, 2020 that he was metered before July 16,

15   2019. Given that his Notice to Appear was issued on September 25, 2019, he appears

16   to be a PI class member. While finding "that it [was] unnecessary to address" the

17   Asylum Ban, the immigration judge instead denied the respondent's asylum claim

18   on discretionary grounds—primarily because he passed through numerous countries

19   en route to the United States and did not request asylum or refugee protection in any

20   of those countries prior to arrival in the United States. The immigration judge noted

21   further that the respondent's longest stay in a third country was the 76 days he spent

22   in Mexico (which was likely the result of metering). Attached hereto as **Exhibit 4** is

23   a true and accurate copy of the decision described above, which Plaintiffs provided

24   to Defense counsel on December 9, 2020. To protect the identity of the asylum

25   applicant, Plaintiffs are separately moving to seal the name and other identifying

26

27

28

DECLARATION OF ORI LEV

24

information of the applicant.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 15th day of December 2020 at Bethesda, Maryland.

By: */s/ Ori Lev*
Ori Lev