MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:   +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*,<br><br>                    Plaintiffs,<br><br>    v.<br><br>Chad F. Wolf,[1] *et al.*,<br><br>                    Defendants. | Case No.:  17-cv-02366-BAS-KSC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER CONCERNING ASYLUM INFORMATION OF POTENTIAL PRELIMINARY-INJUNCTION CLASS MEMBERS**<br><br>Hearing Date: January 19, 2021<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

---

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
   Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
   *bazmy@ccrjustice.org*
   Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
   *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
   Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
   *sarah.rich@splcenter.org*
   Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
   *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
   Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
   *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................... 1

II.   BACKGROUND ......................................................................... 2

    A.    The PI and Clarification Order .......................................... 2

    B.    The Parties' Consultations and Areas of Disagreements .... 4

        1.    Insistence on a Second Order ................................... 4

        2.    Limitations on Disclosure ........................................ 5

        3.    Preconditions on Sharing Information ...................... 6

III.  ARGUMENT .............................................................................. 6

    A.    The Court Has Ordered Defendants To Share Information ... 6

    B.    This Is Not a Discovery Dispute Governed by Rule 26 ...... 7

    C.    Defendants' Proposed Terms Are Unreasonable ................. 8

        1.    Oral Consent Is Sufficient ........................................ 9

        2.    Attorneys Who Have Not Entered an Appearance May
             Represent Asylum Seekers ..................................... 10

        3.    Family Members Often Aid Asylum Seekers ......... 12

        4.    Attorneys and Family Members Should Be Able To
             Authorize Further Disclosure ................................. 13

        5.    The Requirement That Plaintiffs Provide Information to
             the Government Upon Demand Is Unreasonable and
             Likely Unethical ...................................................... 14

    D.    Defendants Misinterpret the Confidentiality Regulations ... 15

        1.    The Regulations Apply Only to the Government ... 15

        2.    The Reference to Third-party Obligations in the Internal
             Guidance Document Does Not Apply to Non-
             governmental Parties .............................................. 16

IV.   CONCLUSION .......................................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*A.B.T. v. U.S.C.I.S.*,
   2012 WL 2995064 (W.D. Wash. 2012) ................................................................ 2

*Al Otro Lado, Inc. v. Wolf*,
   2020 U.S. App. LEXIS 39856 (9th Cir. 2020)...................................................... 4

*Impact Engine, Inc. v. Google LLC*,
   No. 319CV01301CABBGS, 2020 WL 1939023 (S.D. Cal. Apr. 21,
   2020).......................................................................................................... 8, 9

*Ms. L v. U.S. Immigration & Customs Enforcement*,
   No. 18-cv-00428-DMS-MDD (S.D. Cal. July 8, 2018)................................... 10

*Owino v. Holder*,
   771 F.3d 527 (9th Cir. 2014) ............................................................................. 2

*Phillips v. Gen. Motors Corp.*,
   307 F.3d 1206 (9th Cir. 2002) .......................................................................... 8

*Quality Inv. Props. Santa Clara, LLC v. Serrano Elec., Inc.*,
   2010 WL 2889178 (N.D. Cal. 2010).................................................................. 1

*Rivera v. NIBCO, Inc.*,
   384 F.3d 822 (9th Cir. 2004) ............................................................................ 8

*Satmodo, LLC v. Whenever Commc'ns, LLC*,
   2018 WL 1071707 (S.D. Cal. 2018) .................................................................. 1

**Other Authorities**

8 C.F.R. §§ 208.6, 1208.6............................................................................... 9, 10

8 C.F.R. § 208.30(d)(4) ...................................................................................... 12

84 Fed. Reg. 33,829 (July 16, 2019) .............................................................. 2, 3

Fed. R. Civ. P. 26............................................................................... 1, 6, 7, 8

Joseph E. Langlois, Director, Asylum Division, USCIS, "Fact Sheet
   on Confidentiality" (June 15, 2005) ................................................................. 7

**PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER**

Model Rule of Professional Conduct 1.3 ............................................... 13

Williston on Contracts § 62:3 .............................................................. 11

**PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER**

# I.    INTRODUCTION

The government's motion for a protective order is the latest step in a long-standing effort by the Trump administration to ignore and work around this Court's November 19, 2019 preliminary injunction order ("PI"). The present motion concerns the information-sharing requirements of this Court's October 30, 2020 order clarifying the scope of its prior preliminary injunction order. *See* Dkt. 605 ("Clarification Order"). In that order, this Court specifically directed the government to take reasonable and affirmative steps to identify members of the class that this Court provisionally certified in connection with the PI (the "PI class members"). *See id.* at 23, 25. Since October 30, 2020, the government has not identified a single PI class member to Plaintiffs or affirmatively shared any information with Plaintiffs regarding any PI class members. The government's apparent rationale for failing to comply with this Court's order is that this Court needs to issue a *second* order requiring the government to disclose this information. Plaintiffs' position is simple: this Court already told the government what to do over 60 days ago; it does not need to say the same thing again.

The government attempts to shoe-horn its motion into Federal Rule of Civil Procedure 26(c)(1). *See* Dkt. 647-1 at 6. But Rule 26(c)(1) is limited to *discovery*. And this Court's conclusion that the government must take reasonable and affirmative steps to assist with the identification of class members, including sharing relevant information with Plaintiffs, was based on the class certification standard. *See*, *e.g.*, Dkt. 605 at 21-23 (citing the analysis of Rule 23 in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 355-56 (1978)). And none of the cases cited by the government has anything to do with ascertaining membership in an injunctive relief class.[2] Because the government's motion is based on the false presumption that this

---

[2] *See*, *e.g.*, *Quality Inv. Props. Santa Clara, LLC v. Serrano Elec., Inc.*, 2010 WL 2889178 at *1 (N.D. Cal. 2010) (dispute concerning protective order for discovery); *Satmodo, LLC v. Whenever Commc'ns, LLC*, 2018 WL 1071707, at *2-3 (S.D. Cal.

**PLS. OPP TO DEFS' MOT. FOR PROTECTIVE ORDER**

is a discovery dispute, and the government has not carried its burden to show that good cause exists for a protective order, no protective order should be issued.

In an effort to avoid motions practice, Plaintiffs attempted to negotiate a simple protective order with the government. But Plaintiffs' efforts to avoid clogging this Court's docket should not be taken as an admission that a further protective order is necessary. It is not. But, if this Court is inclined to grant a protective order, it should grant the protective order proposed by Plaintiffs in their pending Motion to Enforce the PI. *See* Proposed Order granting Plaintiffs' Motion to Enforce Preliminary Injunction (Dkt. 644).

## II.    BACKGROUND

### A.    The PI and Clarification Order

On July 16, 2019, the government issued a rule providing that, with narrow exceptions, noncitizens would be categorically ineligible for asylum if they transited through a third country en route to the U.S. but did not receive a final judgment denying protection in that country. Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33,829 (July 16, 2019) ("Asylum Ban"). In other words, any non-Mexican asylum seeker who arrived at a port of entry on the U.S.-Mexico border ("POE") would need to fully adjudicate an asylum claim in Mexico prior to seeking asylum in the U.S. Because Mexico generally requires asylum seekers to make an asylum application within 30 days of arriving in the country, the Asylum Ban effectively denied access to the U.S. asylum process for asylum seekers who had been waiting in Mexico for weeks because of the government's turnback policy. *See*, *e.g.*, Dkt. 330 at 6-7.

Plaintiffs filed a motion for preliminary injunction to prevent the government from applying the Asylum Ban to a provisional class of asylum seekers who

---

2018) (same); *A.B.T. v. U.S.C.I.S.*, 2012 WL 2995064, at *1 (W.D. Wash. 2012) (dispute concerning use of acronyms in place of asylum seekers' names); *Owino v. Holder*, 771 F.3d 527, 533 (9th Cir. 2014) (discussing State Department's violation of asylum seeker's right to confidentiality).

PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER

attempted to enter the U.S. prior to the Asylum Ban's July 16, 2019 effective date but were denied entry because of the government's metering policy. On November 19, 2019, this Court issued the PI and certified the provisional class consisting of "all non-Mexican asylum seekers who were unable to make a direct asylum claim at a U.S. port of entry before July 16, 2019 because of the U.S. Government's metering policy, and who continue to seek access to the U.S. asylum process." Dkt 330 at 36 ("PI class"). This Court enjoined the government from applying the Asylum Ban to members of the PI class and ordered the government to return to the pre-Asylum Ban practices for processing class members' requests for asylum. *Id*.

Since November 2019, the government has not fully complied with the PI. The government has failed to take reasonable steps to determine if asylum seekers were PI class members, resulting in the government applying the Asylum Ban to an unknown number of PI class members. Although the government has lists of thousands of asylum seekers who were metered at POEs, it is still unclear if the government is cross-referencing these lists against information in its possession. Nor has the government shared any information about PI class members that it has identified using its internal records.

As a result, Plaintiffs moved to clarify the scope of the PI. On October 30, 2020, this Court granted Plaintiffs' motion, clarifying that (a) the PI applied to all PI class members; (b) the Executive Office for Immigration Review ("EOIR") was bound by the terms of the PI; (c) the government had to reopen or reconsider past determinations that potential PI class members were ineligible for asylum based on the Asylum Ban; and (d) the government had to make all reasonable efforts to identify PI class members and notify those in its custody or in immigration proceedings of their class membership and the PI. Dkt. 605 at 24-25.

Importantly, the Clarification Order required the government to share certain information with Plaintiffs' counsel to facilitate the identification of potential PI class members. *Id*. at 21-23. Noting the administrative and logistical difficulties

PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER

involved and the information exclusively in Defendants' custody, this Court ordered that Defendants "must review their own records to aid in the identification of class members and must share the information in their custody regarding the identities of class members with Plaintiffs." *Id*. at 23; *see also id.* at 25 (ordering Defendants to "shar[e] class members' identities with Plaintiffs").

That has not happened. Over more than 60 days, the government **has not identified a single PI class member to Plaintiffs**, much less shared the information in its custody with Plaintiffs. That is inexcusable. The Ninth Circuit did not stay the government's general requirement to identify PI class members and share that information with Plaintiffs. *See Al Otro Lado, Inc. v. Wolf*, 2020 U.S. App. LEXIS 39856, at *2-3 (9th Cir. 2020). In its motion papers, the government does not even attempt to explain why it has failed to comply with this Court's Clarification Order, apart from the fact that it apparently disagrees with it. Instead, its arguments are based on the presumption that the government needs to be ordered to share information again. *See* Cassler Decl., ¶ 3.

### B.     The Parties' Consultations and Areas of Disagreements

The parties have consulted extensively regarding the need for, and the appropriate scope of, a protective order governing the disclosure of asylum-related information pertaining to potential PI class members. The sticking point in the negotiations were that (a) the government believed that this Court needed to issue a *second* order requiring it to share information with Plaintiffs, (b) the government insisted on limitations on Plaintiffs' ability to share information it received that have no basis in law and find no support in the Clarification Order and (c) the government sought to impose record-keeping and record-sharing obligations on Plaintiffs.

### 1.     Insistence on a Second Order

The government takes the position that it cannot share information with Plaintiffs about potential PI class members absent a new order mandating such disclosure. Dkt. 644-2 ¶¶ 6, 29, 45, 51(f). But this Court already ordered the

**PLS. OPP TO DEFS' MOT. FOR PROTECTIVE ORDER**

government to share such information with Plaintiffs, and the government never explains why it needs to be twice ordered to do the same thing. Dkt. 605 at 22-23, 25; *see also* Dkt. 644-2, ¶¶ 6, 29.

### 2.    Limitations on Disclosure

Next, the government has sought to impose unreasonable limitations on the further disclosure of information it has already been required to share under the Clarification Order.

**Oral v. written authorization.** Plaintiffs have proposed that they be allowed to share asylum-related information based upon the written *or oral* authorization of the individual to whom the information pertains, or such individual's family member or attorney. Dkt. 644-2, ¶ 49. Defendants insist that information can be shared only upon a *signed*, *written* authorization from the individual to whom the information pertains. *Id.*, ¶ 50; Dkt. 644-4 at 4 (¶ 5); Dkt. 647-3 at 7 (¶ VI.B.5).

**Attorneys who have not entered an appearance.** Plaintiffs have proposed that they be allowed to share information with any attorney representing an individual to whom the information pertains. Dkt. 644-2, ¶ 49. Defendants insist that information can be shared only with attorneys for the individual who have completed specified government forms necessary to enter an appearance at specific stages in the individual's immigration case. *Id.*, ¶ 50; Dkt. 644-4 at 3 (¶ 4); Dkt. 647-3 at 6-7 (¶ VI.B.4).

**Family members.** Plaintiffs have proposed that they be allowed to share information with family members of the individuals to whom the information pertains, in light of the difficulty of communicating with PI class members in government custody or already deported. Dkt. 644-2, ¶ 49. Defendants have rejected any information sharing absent a signed, written authorization from the individual to whom the information pertains. *Id.*, ¶ 50; Dkt. 644-4 at 3 (¶ 4).

**Those authorized by attorneys or family members.** Plaintiffs have proposed that they be allowed to share information with individuals authorized

**PLS. OPP TO DEFS' MOT. FOR PROTECTIVE ORDER**

(orally or in writing) by an asylum seeker's attorney or family member. Dkt. 644-2, ¶ 49. Defendants have rejected any information sharing based solely on the authorization of counsel or family members. *Id.*, ¶ 50; Dkt. 644-4 at 4 (¶ 5).

### 3.    Preconditions on Sharing Information

The government has insisted that Plaintiffs maintain records of any disclosure of asylum-related information obtained from the government. Dkt. 644-2, ¶ 50; Dkt 644-4 at 4. Plaintiffs have rejected this proposal. Dkt. 644-2, ¶ 49. Likewise, the government would require Plaintiffs to produce records of any disclosures of asylum-related information to Defendants or EOIR upon their demand. Dkt. 644-2, ¶ 50; Dkt 644-4 at 4. Plaintiffs have rejected both proposals because there is no basis to impose such obligations on Plaintiffs, and the proposed "produce on demand" provision would intrude on Plaintiffs' counsel's attorney work product and improperly insert the government into Plaintiffs' efforts on behalf of the class. Dkt. 644-2, ¶ 49.

## III.    ARGUMENT

The government has not met its burden of establishing the necessity for a protective order or for the specific limitations on disclosure that it proposes. First, this Court has *already* ordered the government to disclose this information. Second, the government cannot seek a protective order limiting the scope of a prior court order concerning class certification issues under Fed. R. Civ. P. 26. Third, even if Rule 26 did apply, the government has not met its burden of established good cause for entry of a protective order because its proposed terms are unreasonable for a litany of reasons. Fourth, the government misreads its own regulation and misinterprets the scope of the internal agency guidance purporting to support it.

### A.    The Court Has Ordered Defendants To Share Information.

The government's refusal to share asylum-related information not only frustrates Plaintiffs' counsel's ability to adequately represent the PI class, but also contravenes a prior court order. This Court's October 30, 2020 Clarification Order

**PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER**

1     mandates that the government "*must* share the information in [its] custody regarding

2     the identities of class members with Plaintiffs." Dkt. 605 at 23 (emphasis added);

3     *see also id.* at 25. And for good reason. Taking note of the "administrative

4     complexity" of the case and the deficiencies of the available asylum-related

5     material, this Court concluded that it was "not necessarily easier for [the

6     government] to notify individuals [not in pending administrative proceedings or in

7     the government's custody] . . . of their potential class membership" than it would

8     be for Plaintiffs' counsel. *Id.* at 22-23. The Court, taking note of obvious logistical

9     challenges in identifying and providing notice to PI class members, entered an order

10     requiring the government to facilitate Plaintiffs' provision of notice to those PI class

11     members by sharing information about their identities. *Id.* Defendants' ongoing

12     refusal to abide by this Court's order issued over two months ago, now apparently

13     based on June 15, 2005 internal agency guidance[3] that the government did not

14     disclose to Plaintiffs prior to the filing of the Motion, *see* Cassler Decl. ¶¶ 3-4, is

15     nothing more than tactical delay. Such gamesmanship gravely jeopardizes PI class

16     members' safety and security by depriving them of the opportunity to access the

17     asylum process in the United States.[4]

18          **B.**    **This Is Not a Discovery Dispute Governed by Rule 26.**

19          This Court should reject the government's attempt to frame its reticence to

20     comply with a prior court order as a discovery dispute—it is not. The government

21     cannot use Fed. R. Civ. P. 26(c) as a shield against compliance with a prior order.

22     *See* Fed. R. Civ. P. 26(c)(1) ("A party or any person from whom discovery is sought

23     may move for a protective order . . ."). This Court's conclusion that the government

24

25     [3] Memorandum from Joseph E. Langlois, Director, Asylum Division, USCIS, "Fact

26     Sheet on Confidentiality" (June 15, 2005) ("Fact Sheet"),
https://www.uscis.gov/sites/default/files/document/memos/fctsheetconf061505.pdf

27     [4] The fact that parties have stipulated to protective orders in other cases, *see* Dkt.
647-4, Dkt. 647-5, does not support Defendants' position that they may refuse to

28     comply with a Court order absent a new Court order, and on Defendants' terms at
that.

**PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER**

must take reasonable and affirmative steps to assist with the identification of class members, including sharing relevant information with Plaintiffs, was based on the class certification standard. *See*, *e.g.*, Dkt. 605 at 21-23. Protective orders, on the other hand, are intended to govern the conduct of future discovery in a case, not to justify the withholding of court-ordered information *ex post facto.* If the government wants to change the scope of the Court's previous order, it needs to seek to clarify or amend it. But it has not done so.[5]

## C. Defendants' Proposed Terms Are Unreasonable.

Even if Rule 26 did apply, Defendants have failed to meet their burden of demonstrating that their requested protective order is necessary.

> In general, the party seeking a protective order for discovery materials must demonstrate that "good cause" exists for the protection of that evidence. "Good cause" is established where it is specifically demonstrated that disclosure will cause a "specific prejudice or harm." *Phillips [v. Gen. Motors Corp.*, 307 F.3d [1206,] 1211-12 [(9th Cir. 2002)]. Courts have held that the showing of "good cause" under Rule 26 is a heavy burden. *See Blankenship v. Hearst Corp.*, 519 F.2d 418 (9th Cir.1975).

*Rivera v. NIBCO, Inc.*, 384 F.3d 822, 827 (9th Cir. 2004). In deciding whether a protective order should issue, courts "must weigh the interests of both parties in considering the necessity and scope of the order." *Impact Engine, Inc. v. Google LLC*, No. 319CV01301CABBGS, 2020 WL 1939023, at *1 (S.D. Cal. Apr. 21, 2020).

Here, Defendants have failed to carry their burden of demonstrating "specific prejudice or harm." *Phillips*, 307 F.3d at 1210-12. Against this absence of harm to the government, the Court must weigh the real harm to Plaintiffs—and the PI class members that the PI is intended to protect. Defendants' proposed protective order

---

[5] Having argued that its appeal of the PI deprived this Court of jurisdiction to issue the Clarification Order, the government is understandably hesitant to seek modification of the Clarification Order, which it has also appealed. But that presumed hesitation to appear inconsistent does not change the fact that if the government wants to change the Clarification Order it should move to do so.

**PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER**

would require an asylum seeker to whom the information pertains to provide signed, written authorization before Plaintiffs could share such information with anyone other than counsel who previously entered an appearance on the individual's behalf before DHS or EOIR. Dkt. 647-3 at 7 (¶¶ VI.B.4-5).[6] Then Plaintiffs would need to meticulously document what information they shared and with whom they shared it. Dkt. 647-3 at 7 (¶¶ VI.B final paragraph). Finally, whenever the government wills it, Plaintiffs must make a full accounting of how they shared the information. *Id.* These provisions would substantially impair Plaintiffs' ability to identify, locate and assist PI class members—the very purposes for which this Court ordered the information sharing in the first place. \

### 1. Oral Consent Is Sufficient.

Defendants argue that their proposed requirement of written, as opposed to oral, consent "mirror[s] the conditions and limitations set forth" in 8 C.F.R. §§ 208.6, 1208.6. But, as discussed below, those regulations apply only to the government. Defendants have failed to articulate a compelling reason to similarly limit Plaintiffs' disclosures of asylum-related information for purposes of enforcing the PI in this case. Defendants' argument that absent a signed, written authorization an asylum seeker "may not understand the import of the authorization" or what information she is authorizing Plaintiffs to disclose, Dkt. 647-1 at 9, is nothing more than conjecture. There is no reason to think that signing a form will result in more informed consent than a reasoned conversation with counsel. There is also no basis for the government to have to "establish the authenticity" of any oral consent. *See*

---

[6] Defendants seek to require that Plaintiffs may only share potential PI class member information with potential PI class members' attorneys if they have "submitted" a Form EOIR-27 (Notice of Entry of Appearance as Attorney or Accredited Representative Before the Board of Immigration Appeals), Form EOIR-28 (Notice of Entry of Appearance as Attorney or Representative Before the Immigration Court) or Form G-28 (Notice of Entry of Appearance as Attorney or Accredited Representative, submitted to DHS). Unlike the EOIR forms, the G-28 requires a client signature. *See* Form G-28 at 3, https://www.uscis.gov/sites/default/files/document/forms/g-28.pdf.

**PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER**

*id.* The government simply has no role in preemptively limiting—in a manner more restrictive than the rules of professional conduct—Plaintiffs' ability to use this information to further PI class members' rights. Indeed, Defendants have previously stipulated to a protective order that would allow class counsel in a different lawsuit to share asylum seekers' information much more broadly than would be permitted by the protective order Plaintiffs have agreed to here, including permitting information sharing without written consent of the asylum seekers. *See* Cassler Decl. Ex. A at 4-6 (protective order entered in *Ms. L v. U.S. Immigration & Customs Enforcement*, No. 18-cv-00428-DMS-MDD (S.D. Cal. July 8, 2018)).

In addition, Defendants' proposed requirement of written authorization would impose substantial burdens on Plaintiffs and undermine the very goal of information sharing—to ensure class members are aware of their rights under the PI. Class members are likely located throughout the world, with varying access to technology, and many may be living in hiding. Obtaining signed written consent would be burdensome, if not impossible, in many cases, Pinheiro Decl. ¶¶ 9-16, and is unnecessary. Even those class members in the United States may not have ready access to technology to efficiently provide signed, written consent. Indeed, even for those class members in Defendants' custody, the requirement of signed, written consent imposes additional hurdles and delays. Cassler Decl. ¶¶ 5-8; Pinheiro Decl. ¶¶ 4-8.

While Plaintiffs have agreed to obtain consent from a potential PI class member or (where necessary) her legal representative or family member before sharing information with someone other than the individual's legal representative or family member, Defendants have failed to justify the additional requirement that such consent be in writing. Because Defendants have not established good cause for this requirement and because it would hinder Plaintiffs' ability to help PI class members vindicate their rights, this proposed limitation should be rejected.

**2.    Attorneys Who Have Not Entered an Appearance May**

**PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER**

**Represent Asylum Seekers.**

Defendants' proposed protective order would also prevent Plaintiffs from sharing information with counsel for PI class members who have not completed, and submitted to the government, one of three specified forms necessary to enter an appearance at specific stages in an individual's immigration case. Dkt. 647-3 at 6-7 (¶ VI.B.4). Again, Defendants have failed to justify this restriction. They devote a single sentence to it in their motion, arguing that only the submission of the referenced government forms can demonstrate that an asylum seeker has authorized the disclosure of asylum-related information to an attorney. Dkt. 647-1 at 8. But they fail to explain why such a limitation is necessary, where attorneys are duty-bound by the rules of professional responsibility to act in their clients' interests and to maintain client confidences. They also refuse to acknowledge that government forms do not apply to non-government actors such as Plaintiffs and have provided no basis for imposing their own internal administrative rules on Plaintiffs after the Court ordered that they share class member information. And, as is the case with Defendants' baseless demand that any consent be written as opposed to oral, Defendants have a track record of stipulating to a protective order permitting information sharing with a class member's attorney *or potential attorney* without requiring that attorney to have previously entered an appearance before DHS or EOIR. *See* Cassler Decl., Ex. A at 5.

Defendants' refusal to allow Plaintiffs to share information with certain PI class members' attorneys would unnecessarily limit Plaintiffs' ability to protect PI class members' rights. The specified forms, which are generally used to enter appearances in agency proceedings, are not necessary to establish an attorney-client relationship. *See*, *e.g.*, Williston on Contracts § 62:3. Written, oral, or implied agreements (4th ed.) (detailing how courts determine whether an attorney-client relationship has been established). Indeed, class members have the right to counsel even if their attorney did not previously represent them in the agency proceedings

**PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER**

1  for which one of the three forms is required.[7]

2      Plaintiffs also have no way of verifying that such a form has been filed.

3  Furthermore, it may be impossible for a class member to sign any form authorizing

4  disclosure of information, given the logistical challenges noted above. *See* Pinheiro

5  Decl., ¶¶ 4-16. For potential PI class members who are not in EOIR proceedings

6  (and thus have no way for an attorney to file an EOIR-27 or EOIR-28) and who have

7  no way to sign (or efficiently sign) a Form G-28, requiring a filed EOIR-27, EOIR-

8  28 or G-28 would effectively strip them of the right to individual representation in

9  relation to Plaintiffs' efforts to enforce the Court's Orders. Moreover, for potential

10  PI class members with whom extensive communication is impossible for logistical

11  or technological reasons, *see* Pinheiro Decl., ¶¶ 4-16, exchanging information with

12  their attorneys may be the only way for Plaintiffs to protect their right to relief under

13  the Court's orders. It is unclear what this burdensome requirement would accomplish

14  other than unnecessarily hindering Plaintiffs' efforts to vigorously protect class

15  members' rights.

16          **3.**    **Family Members Often Aid Asylum Seekers.**

17      Defendants have also rejected Plaintiffs' proposal that Plaintiffs be authorized

18  to share information with family members of PI class members for the purpose of

19  facilitating compliance with the PI. Dkt. 644-2, ¶ 49. Again, Defendants have failed

20  to support their position, arguing only that such information sharing might

21  "potentially subject the [asylum seeker or her relatives] to retaliation based on the

22  asylum claim." Dkt. 647-1 at 8.

23  _____

24  [7] It may be, for example, that a PI class member is represented by an attorney who
represented her only in a prior federal court action, such as a Petition for Review of

25  an order of the Board of Immigration Appeals or a petition for writ of habeas
corpus—proceedings for which no agency form is required. Some PI class members

26  may retain new counsel for the purpose of exploring eligibility for PI relief; such
counsel would also have had no occasion to enter an appearance before DHS or

27  EOIR. Similarly, counsel may attend a credible fear interview without entering an
appearance in the interviewee's case. *See* 8 C.F.R. § 208.30(d)(4) ("Any person or

28  persons with whom the alien chooses to consult may be present at the [credible fear]
interview . . . .").

      **PLS. OPP TO DEFS' MOT. FOR PROTECTIVE ORDER**

Based on the experience of Plaintiffs' counsel and Plaintiff AOL in representing asylum seekers, however, Plaintiffs may need to communicate with PI class members through their family members in order to provide notice of court orders, gather information to evaluate potential relief, or assist in facilitating reopening or reconsideration of prior asylum ineligibility determinations. Cassler Decl., ¶ 9; Pinheiro Decl., ¶ 4, 8. Indeed, Plaintiffs' efforts on behalf of the Applicant—whose deportation this Court enjoined in light of the government's failure to provide her the benefits of the preliminary injunction—were facilitated by communication with a family member of the Applicant. Cassler Decl., ¶ 9. Plaintiffs' counsel have independent ethical obligations to class members and will exercise their professional judgment to determine when information sharing with family members would be in individual class members' best interests. *See*, *e.g.*, ABA, Model Rule of Professional Conduct 1.3 Diligence-Comment. A blanket prohibition on such communications—absent a cumbersome process involving Court involvement—will hinder the ability of Plaintiffs to zealously represent the class.

### 4. Attorneys and Family Members Should Be Able To Authorize Further Disclosure.

Defendants have also rejected Plaintiffs' proposal that Plaintiffs be authorized to share information with third parties based on authorization from a PI class member's counsel or family member. Dkt. 644-2, ¶¶ 49-50. To be clear, Plaintiffs do not believe that any limitation on their disclosure of this information, beyond the requirement that it be used to facilitate compliance with the PI, is warranted. However, Plaintiffs proposed authorization of this category of individuals to provide Defendants with comfort that disclosure would not be solely a question of Plaintiffs' counsel's judgment, but also require the approval of another individual who can be reasonably expected to have the asylum seeker's best interests at heart. Given the challenges inherent in finding and communicating with PI class members, *see* Cassler Decl., ¶¶ 5-10; Pinheiro Decl., ¶¶ 4-16, it is essential that Plaintiffs be

**PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER**

1  authorized to share relevant information with trustworthy individuals to facilitate

2  compliance with the PI and vindicate class members' rights. Plaintiffs' proposal

3  provides an eminently reasonable approach under the circumstances and is more

4  restrictive than an existing stipulated protective order to which Defendants are a

5  party in another case. *See* Cassler Decl., Ex. A at 5-6 (in the context of information

6  sharing to facilitate compliance with a court order requiring reunification of parents

7  whom Defendants separated from their children, authorizing disclosure to class

8  members' counsel or prospective counsel, and also authorizing class counsel to

9  disclose class member information to "*[a]ny individuals or persons who Class*

10 *Counsel designates* for the purpose of facilitating the reunification of Class Members

11 and their children, including (but not limited to) nonprofit organizations, lawyers,

12 faith-based groups, shelters, *or any other organization or individuals who may be*

13 *able to assist in the reunification process*" (emphasis added)).

14
### 5. The Requirement That Plaintiffs Provide Information to the Government Upon Demand Is Unreasonable and Likely Unethical.
15

16 Defendants do not even attempt to defend the provision of their proposed

17 protective order that would require Plaintiffs to produce records of any disclosures

18 of information to Defendants or EOIR upon demand. Dkt. 674-3 at 7 (¶ VI.B.6).

19 Defendants' brief makes no mention of this provision,[8] referring only to the

20 "Proposed Protective Order's requirement that [Plaintiffs] keep records of

21 disclosures to third parties." Dkt. 647-1 at 9. Presumably, this is because the

22 provision is indefensible. Plaintiffs' decisions to share information with certain

23 individuals are likely protected by the attorney-work product doctrine and may be

24 privileged as well. Because Defendants and EOIR have no right to demand that

25 Plaintiffs produce such records to them upon demand, this provision should be

26

27

28
---
[8] The provision is also notably absent from both protective orders the government attaches to its motion, Dkt. 647-4 & 5, and is likewise absent from the protective order in the *Ms. L.* litigation. *See* Cassler Decl., Exh. A.

**PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER**

1  stricken.

2  **D. Defendants Misinterpret the Confidentiality Regulations.**

3  **1. The Regulations Apply Only to the Government.**

4  All of the government's arguments are based on a misinterpretation of 8

5  C.F.R. §§ 208.6 and 1208.6. These regulations, which limit disclosure of information

6  contained within or pertaining to an asylum application or related fear determination,

7  bind only the government. This conclusion follows from the plain language of the

8  regulations themselves. Sections 208.6(a) and 1208.6(a), which specify the

9  information subject to the regulations, refer to asylum- and fear-related records and

10  information in the custody of DHS and EOIR, respectively; if the regulations applied

11  to information in the custody of private parties, then it would make no sense for

12  those sections to permit disclosure "at the discretion of the Attorney General."

13  §§ 208.6(a), 1208.6(a).

14  *Owino v. Holder*, which Defendants erroneously cite in support of their

15  argument, is instructive. There, the Ninth Circuit reviewed whether the U.S. State

16  Department had violated 8 C.F.R. § 208.6 by delivering a Kenyan asylum seeker's

17  arrest documents directly to Kenyan police officers. 771 F.3d 527, 535 (9th Cir.

18  2014). Finding that it had, the court ruled that "*federal officials* must . . . maintain in

19  confidence information relating to applicants' asylum applications." *Id.* at 533

20  (emphasis added).

21  After applying "standard tools of interpretation," the regulations are not

22  "genuinely ambiguous" on the question of whether they apply to entities other than

23  DHS and EOIR. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414-15 (2019). To the contrary,

24  the regulations clearly apply only to the government, and therefore there is "no

25  plausible reason for deference" to the agency's argument that the regulations mean

26  something other than what they plainly say. *Id.* at 2415.[9]

27

28  ———————————
[9] The government cannot have it both ways: if the government's tortured interpretation of the regulations as applying to Plaintiffs were correct, there would be no need for a protective order in the first place.

**PLS. OPP TO DEFS' MOT. FOR PROTECTIVE ORDER**

### 2. The Reference to Third-party Obligations in the Internal Guidance Document Does Not Apply to Non-governmental parties.

Even if the regulations could read as ambiguous on this issue, the government's internal agency guidance does not actually support the government's position and, to the extent the government argues otherwise, its interpretation is not entitled to any deference.

First, while noting that third-party recipients are bound by the "confidentiality requirements of 8 CFR 208.6,"[10] the guidance fails to identify which third parties it is referring to. The most logical reading of the guidance is that it applies to third parties in the executive branch or their contractors, to whom disclosures are permitted under § 208.6(c)(1). Applying the regulations' substantive requirements to the other two groups to whom information may be disclosed—courts, § 208.6(c)(2), and others who have written consent of the individual who is the subject of the records, § 208.6(a)—makes little sense. As to the second group, DHS's own privacy waiver form does not extend the substantive provisions of the regulations to individuals who receive information with written consent under § 208.6(a). Instead, that form is clear that "DHS has no control over how the Recipient will use or disseminate [the] information."[11] And if the regulation were read to limit federal courts' use of information disclosed pursuant to court order under § 208.6(c)(2), which appears to be the government's interpretation of its own internal guidance, this reading would raise separation of powers concerns. The most plausible reading of the guidance is that it simply does not contemplate whether, if information is provided to Plaintiffs' counsel pursuant to a court order, class counsel is then bound by the regulations. In reality, the government is attempting to bootstrap a litigation position into internal guidance that is silent on the issue at hand. That

---

[10] The internal agency guidance relates only to 8 C.F.R. § 208.6 and not to its companion regulation, 8 C.F.R. § 1208.6.

[11] ICE Form 60-001 (2/11), Privacy Waiver Authorizing Disclosure to a Third Party, https://www.ice.gov/doclib/news/library/forms/pdf/60-001.pdf.

**PLS. OPP TO DEFS' MOT. FOR PROTECTIVE ORDER**

litigation position is due no deference. *Kisor*, 139 S. Ct. at 2416-17 (to receive deference, an interpretation must be the agency's "authoritative" or "official position," and a court "should decline to defer to a merely 'convenient litigating position'"); *Southeast Alaska Conservation Council v. U.S. Forest Service*, 443 F. Supp. 3d 995, 1020-21 (D. Alaska 2020) (applying *Kisor* to conclude deference to an agency's litigation position interpreting regulations was unwarranted).

Second, reading the guidance to mean that "third parties" includes class counsel is not a "reasonable" reading and would stretch the regulations far beyond their plain language. *See Kisor*, 139 S. Ct. at 2415-19. The regulations simply do not state that they apply to private parties in possession of information that, if in government custody, would be subject to the regulations. Because the regulations give no notice of such a possibility, the interpretation is entitled no deference because it would "create[] 'unfair surprise' to regulated parties." *Id.* at 2417-18.

For all of these reasons, Sections 208.6 and 1208.6 do not apply to information disclosed to Plaintiffs' counsel pursuant to the Court's orders, and the government lacks any legal basis for requiring that Plaintiffs be subject to a protective order imposing on them the regulations' substantive provisions.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion and instead order Defendants to comply with the Court's prior order and share relevant information with Plaintiffs.

Dated: January 5, 2021

<div style="margin-left:40%">

MAYER BROWN LLP
    Matthew H. Marmolejo
    Ori Lev
    Stephen M. Medlock

SOUTHERN POVERTY LAW CENTER
    Melissa Crow
    Sarah Rich
    Rebecca Cassler

</div>

**PLS. OPP TO DEFS' MOT. FOR PROTECTIVE ORDER**

CENTER FOR CONSTITUTIONAL
RIGHTS
    Baher Azmy
    Angelo Guisado

AMERICAN IMMIGRATION
COUNCIL
    Karolina Walters


By: */s/ Ori Lev*
    Ori Lev

*Attorneys for Plaintiffs*

**PLS. OPP TO DEFS' MOT. FOR
PROTECTIVE ORDER**

1

**CERTIFICATE OF SERVICE**

2

    I certify that I caused a copy of the foregoing document to be served on all

3

counsel via the Court's CM/ECF system.

4

Dated:  January 5, 2021               MAYER BROWN LLP

5

6

                             By _/s/ Ori Lev_

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28