MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  mmarmolejo@mayerbrown.com
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  olev@mayerbrown.com
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  smedlock@mayerbrown.com
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:  +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  melissa.crow@splcenter.org
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, | Case No.: 17-cv-02366-BAS-KSC |
| Plaintiffs, | **PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO ENFORCE THE PRELIMINARY INJUNCTION** |
| v. | |
| Pete T. Gaynor,[1] *et al.*, | *Redacted Public Version* |
| Defendants. | |
| | Hearing Date: January 19, 2021 |
| | **NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

---

[1] Acting Secretary Gaynor is automatically substituted for former Acting Secretary Wolf pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
   Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
   *bazmy@ccrjustice.org*
   Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
   *gschwarz@ccrjustice.org*
   Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
   *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
   Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
   *sarah.rich@splcenter.org*
   Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
   *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
   Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
   *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT .......................................................................................................2

    A. Plaintiffs' Proposed Implementation Plan Is Necessary to Ensure Timely Compliance with the Court's Prior Orders .................2

    B. Plaintiffs' Proposed Implementation Measures Are Reasonable, Necessary, And Consistent with the Court's Prior Orders ..................5

        a. Defendants' Unnecessarily Threaten the Exclusion of Verifiable PI Class Members from Identification .....................5

        b. Defendants' Proposed Notice Does Not Comply With the Clarification Order ...................................................................8

        c. Reopening and Reconsideration Relief Under the Clarification Order May Not Be Limited By Defendants' Self-Imposed Criteria ...............................................................9

III. CONCLUSION ................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Al Otro Lado v. Wolf*,
    945 F.3d 1223 (9th Cir. 2019) ............................................................................. 3

*Al Otro Lado v. Wolf*,
    952 F.3d 999 (9th Cir. 2020) ............................................................................... 5

*Capital Area Immigrants' Rights Coalition v. Trump*,
    2020 WL 3542481 (D.D.C. June 30, 2020) .................................................. 9, 10

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
    10 F.3d 693 (9th Cir. 1993) ................................................................................. 2

*Dufresne v. Comm'r, IRS*,
    26 F.3d 105 (9th Cir. 1994) ............................................................................... 10

*Franco-Gonzalez v. Holder*,
    2014 WL 5475097 (C.D. Cal. Oct. 29, 2014) ..................................................... 4

*Hutto v. Finney*,
    437 U.S. 678 (1979) ............................................................................................ 2

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) ............................................................................................ 8

*Shillitani v. United States*,
    384 U.S. 364 (1966) ............................................................................................ 2

*Spallone v. United States*,
    493 U.S. 265 (1990) ............................................................................................ 2

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) ............................................................................. 9

**Other Authorities**

85 Fed. Reg. 82,260 (Dec. 17, 2020) ........................................................................ 10

## I. INTRODUCTION

Defendants' Opposition highlights the government's insufficient compliance with the November 19, 2019 preliminary injunction ("PI") and the October 30, 2020 order clarifying the PI ("Clarification Order") (collectively "Orders"). Plaintiffs do not argue that Defendants have undertaken *no* steps to comply with the Orders, but Defendants' claims of "diligent work" to implement the Clarification Order are belied by the facts. Time is of the essence. Each day that passes without substantial compliance with the Orders furthers the harm to PI class members who continue to have the Asylum Ban applied to their cases in violation of this Court's Orders.

Instead of making genuine efforts to implement the Clarification Order, after waiting over a month, Defendants appealed the Order, Dkt. 634, demanded a decision from this Court on staying the Order within nine days of filing, Dkt. 638, and then sought an administrative stay from the Ninth Circuit and further stay pending appeal. *Al Otro Lado v. Wolf*, No. 20-56287, Dkt. 7-1 (Dec. 12, 2020). Significantly, Defendants have devoted most of their compliance efforts to addressing the government's affirmative duty to reconsider or reopen final determinations of asylum ineligibility based on application of the Asylum Ban—the very part of the Clarification Order that has been partially stayed. *Al Otro Lado v. Wolf*, No. 20-56287, Dkt. 15 ("Admin. Stay") at 2 (Dec. 18, 2020). Yet the remainder of the Clarification Order *remains in effect*. *Id.* at 2. But Defendants have no plan for substantially complying with the Order in a timely manner. Moreover, without explanation but incorrectly, Defendants assert that they have no current obligation to affirmatively reopen or reconsider *any* PI class members' cases. *See* Opp. at 23 ("[T]he government's affirmative obligation to identify cases for reopening or reconsideration . . . has been stayed."). But the administrative stay entered by the Ninth Circuit was limited to those PI class members with final asylum determinations issued before November 19, 2019 and during the prior administrative stay; other class members remain entitled to that relief. Admin Stay at 2.

Plaintiffs' Motion to Enforce seeks to ensure PI class member identification efforts, as ordered by this Court, do not unnecessarily exclude certain class members, that PI class members receive adequate notice of the existence and import of the Orders, and that all PI class members receive the relief to which they are entitled under the Orders. Because the government's prolonged, piecemeal efforts at compliance endanger those aspects of the prior Orders, this Court's enforcement of those Orders is not only reasonable, but imperative.

## II.  ARGUMENT

"[F]ederal courts are not reduced to issuing injunctions . . . and hoping for compliance. Once issued, an injunction may be enforced." *See Hutto v. Finney*, 437 U.S. 678, 690 (1979). Both parties agree on this Court's authority to enforce its prior orders. *See* Opp. at 8-9.[2]

### A.  Plaintiffs' Proposed Implementation Plan Is Necessary to Ensure Timely Compliance with the Court's Prior Orders.

This Court should order development of an implementation plan because the government has been unable to provide any date certain for substantial compliance with the Court's Orders—the majority of which continue to bind the government—and because such an implementation plan would further judicial efficiency.

*First*, over two months have passed since issuance of the Clarification Order and the PI has been in continuous effect for over nine months, but the government has not substantially complied with the Court's Orders. The government waited until October 30, 2020—nearly a year after the issuance of the PI—to begin certain PI

---

[2] The cases cited by Defendants to suggest that Plaintiffs must meet a high burden to prevail on this motion are inapposite because, as Defendants correctly state, Opp. at 9, Plaintiffs' motion does not seek contempt. *See Spallone v. United States*, 493 U.S. 265, 276 (1990) (addressing limitations placed on a court's "use of the contempt power"); *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (addressing burden for "party alleging civil contempt"). Defendants' bald assertion that Plaintiffs should nonetheless have to meet these high burdens is simply incorrect. *See Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("[C]ourts have inherent power to enforce compliance with their lawful orders.").

implementation measures, such as identifying *all* PI class members, which the Clarification Order makes clear were necessitated by the original terms of the PI. Moreover, in the over 60 days since issuance of the Clarification Order, Defendants have not identified a single PI class member to Plaintiffs, have failed to draft—much less issue—notice to PI class members in Defendants' custody or in administrative proceedings that is compliant with the Clarification Order, and have been unable to describe—much less implement—a process for reopening or reconsidering final determinations of asylum ineligibility based on application of the Asylum Ban. Nor have Defendants shared any additional compliance information with Plaintiffs since the filing of the Motion to Enforce, belying Defendants' protestations of "cooperation" and "open line[s] of communication." Opp. at 10; *see* Walters Decl. at ¶ 3. Worse still, the government does not identify a single date by which it intends to take any particular steps towards further compliance. *See, e.g.*, Opp. at 23 ("Defendants intend to develop procedures . . . ."); Opp. at 21 (asserting that ruling on "yet to be finalized" notices would be premature, but failing to provide any timeline for finalizing). Vague notions of what Defendants *intend* to do *someday* are insufficient to ensure compliance with the Orders.

In addition, Defendants are incorrect that the administrative stay is indicative of a likely ruling on the merits of the stay request such that an implementation order would be inappropriate at this time. *See* Opp. at 11. As the Ninth Circuit previously stated in this case, an administrative stay "does not constitute in any way a decision as to the merits of the motion for stay pending appeal." *Al Otro Lado v. Wolf*, 945 F.3d 1223, 1224 (9th Cir. 2019). And most aspects of the Clarification Order and the PI are still *in effect*. Admin. Stay as 2 (other than limited stay, stay request "denied in all other respects").

Defendants admit that the focus of their implementation efforts has been precisely that portion of the Clarification Order that was partially administratively

3

stayed by the Ninth Circuit. *See* Opp. at 5. Therefore, those aspects of the Court's Orders that are currently in effect are the ones that require attention and for which the government has no concrete plans. Thus, a written implementation plan setting forth the steps that the government intends to take to ensure compliance with each paragraph of the Clarification Order and the intended deadline for completing each step is reasonable. *See Franco-Gonzalez v. Holder*, 2014 WL 5475097, at *1 (C.D. Cal. Oct. 29, 2014) (order requiring the government to establish specific procedures within a set period of time for implementation of injunctive relief).

*Second*, an implementation plan will further judicial efficiency. Despite Defendants' assertions of cooperation, the declarations from agency officials attached to Defendants' opposition provide substantially more information about the government's implementation efforts than Plaintiffs have otherwise received. *See* Walters Decl. at ¶ 3. For example, the Mura Declaration reveals that U.S. Citizenship and Immigration Services (USCIS) "developed a supplemental and amended list of questions to be asked during the class membership interview," Opp. Exh. D at ¶ 4, which was presumably already "distributed to all asylum offices on December 22, 2020" along with the rest of USCIS' procedural guidance, *id.* at ¶ 3. But notwithstanding documented problems with the prior membership screening questions for class members and Plaintiffs' requests, *see* Plaintiffs' Motion to Enforce the PI ("Mot.") at 10, 16, Defendants have not shared these new questions with Plaintiffs. *See* Walters Decl. at ¶ 4. Having demonstrated an inability to get these questions right, additional oversight is warranted. Part of the reason to develop an implementation plan is to obviate the need for Plaintiffs to run to court every time they uncover a problem with compliance and unnecessarily expend judicial resources. Both the parties and the Court would benefit from an order requiring Defendants to propose an implementation plan to Plaintiffs and the parties to meet and confer, and from the Court establishing a mechanism by which remaining areas

of disagreement regarding implementation can be raised with this Court in a timely and orderly manner. Otherwise, Plaintiffs fear they will need to file repeated motions as they continue to uncover flaws in various aspects of the government's actions.

### B. Plaintiffs' Proposed Implementation Measures Are Reasonable, Necessary, And Consistent with the Court's Prior Orders.

#### a. Defendants' Unnecessarily Threaten the Exclusion of Verifiable PI Class Members from Identification

This Court ordered Defendants to make "all reasonable efforts to identify class members," Dkt. 605 at 25, and previously told Defendants that "[c]lass membership *can be determined by* cross-checking a class member's name with the names included on [metering] waitlists." Dkt. 330 at 28 (emphasis added). Moreover, Defendants agree that the waitlists are evidence of class membership. *See* Opp. Exh. A at ¶ 14 (declaring that "excerpts of the waitlist from Mexicali/Calexico from November 2018-January 2019, and a list from Presidio/Ojinaga from 2019" uncovered in Defendants' custody were sent to USCIS "to assist" with determining PI class membership). In light of that admission, "all reasonable efforts to identify class members" includes reasonable efforts to obtain additional waitlists. The government's position is particularly troubling where the waitlists are uniquely available to the government *because it previously relied on them* to implement its metering policy. *See Al Otro Lado v. Wolf*, 952 F.3d 999, 1009 (9th Cir. 2020). The government admits to developing a relationship with cross-border counterparts, including non-governmental bodies, to implement metering. *See* Opp. Exh. A at ¶ 6 ("[I]f the port has the capacity to process 10 individuals, the port will inform a designated point of contact (POC) in Mexico of this fact. Depending on the location, ports may communicate directly with Mexican government officials, with Mexican state government officials, or with various NGOs or shelters at which migrants may be waiting."). Defendants' description of the various parties that might maintain waitlists, Opp. at 14-15, does not provide a reason not to seek such lists. *See, e.g.*,

5

Ex. 1 ("███████████████" with "███" ██████████████████████ and "████████" to meter asylum seekers in ██████████████████████); Ex. 2 (reporting meeting of CBP "Duty Chief" in Nogales with "Shelter Coordinator" to discuss waitlists); Ex. 3 (CBP coordinating with Mexican government officials and the Senda de Vida shelter in Reynosa/Hidalgo to meter asylum seekers). Similarly, that these counterparts may not be able or willing to provide the waitlists at each port, or to provide a complete list, is no reason not to ask. *See* Opp. Exh. A at ¶ 11 (admitting that "CBP could reach out to its POCs at the port of entry"). Nor are the government's completely speculative assertions about possible harm to the relationship with Mexico a basis for defying the Court's order to make "all reasonable efforts to identify class members," Dkt. 605 at 26. *See, e.g.*, Opp. Exh. A at ¶ 12 ("could cause harm"); *id.* ("could negatively impact"). Where obtaining additional waitlists would facilitate the proper identification of class members, it is unreasonable for the government not to attempt to obtain the lists from its POCs in Mexico.

      The case of the Applicant demonstrates why Defendants' refusal to consider the waitlists and information gleaned from the waitlists as presumptive evidence of class membership, and Defendants' insistence on considering statements made in previous class membership screenings, threaten the exclusion of verifiable class members from identification, and thereby relief, under the PI. *First*, where the government chose not to keep records of those it metered, there will be no perfect class list. But both parties agree that the waitlists exist because of the implementation of the government's metering policy. *See* Opp. Exh. A at ¶ 5. Thus, there currently exists no better record of class members. That the lists are not perfect is not a basis to discount their value as a class member identification tool. Experience shows the importance of the lists in identifying class members. *See, e.g.*, Dkt. 607 at 11 (order reversing agency conclusion that the Applicant was not a PI class member and

staying her removal based, in part, on a copy of a waitlist bearing her name). For the same reasons, Defendants' refusal to consider that an individual's waitlist number was called to present at a port before the date on which the last waitlist number issued on July 15, 2019 at that port was called (the "last entry date") as presumptive evidence of class membership[3] is equally unpersuasive. *See, e.g.*, *id.* (order reversing agency conclusion that the Applicant was not a PI class member and staying her removal based, in part, on her waitlist number and the last entry date at the San Ysidro POE); *see also* Mot. at 15-16 (describing how the government can use the last entry date, waitlists, and data at their unique disposal to identify class members).

*Second*, statements made by individuals as part of previous class membership screenings were infected by the confusing questions used in those screenings, as recognized by this Court. *See* Dkt. 607 at 10 (finding prior class membership screening "did not conclusively determine that Applicant was not a class member," in part, because of "the ambiguity of the screening questions"). Therefore, statements made during such prior screenings are not probative evidence, as Defendants assert, but instead threaten improper exclusion from the PI class.

*Finally*, Plaintiffs' inability to access class member information impedes their ability to monitor the government's compliance with the Orders. Without identifying information about PI class members that is uniquely accessible by Defendants, Plaintiffs are prevented from providing notice to and protecting the rights of PI class members. Plaintiffs' arguments in opposition to Defendants' refusal to provide this information are fully laid out in Plaintiffs' Opposition to Defendants' Motion for Confidentiality Protective Order. *See* Dkt. 656.

---

[3] In response to Defendants, *see* Opp. at 17, Plaintiffs revise their request and no longer seek an evidentiary presumption of class membership for anyone who entered at a POE prior to the last entry date, but only for those with a waitlist number that was called to present at a port before the "last entry date". Regardless when an individual entered, if they were assigned a waitlist number lower than the last one issued on July 15, 2019, then it can be presumed—absent other evidence—that the individual was metered before July 16, 2019.

7

### b. Defendants' Proposed Notice Does Not Comply With the Clarification Order

To adequately inform PI class members of "the existence and import" of the PI, as required by the Clarification Order, notice to potential class members must provide simple and clear information on how class members can assert class membership and access relief. *See* Mot. at 19-22. Despite edits to reflect *some* of Plaintiffs' concerns, Defendants' Proposed Notice, *see* Opp. Ex. E, still fails to comply with the Clarification Order because it does not generally describe how class member screenings will be conducted, including the minimum amount of time that potential PI class members will have to collect evidence in support of their class membership, and the process for reopening or reconsidering cases. Defendants' dogged focus on the inability to provide *precise* notice to every PI class member about the process for each individual case ignores the forest for the trees. Fundamental notions of due process require that notice "be of such nature as reasonably to convey the required information." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Of course, the government would need to have an implementation plan in place before it could provide such information.

Moreover, Defendants misconstrue Plaintiffs' requested relief. Plaintiffs merely ask that the Court *clarify* that adequate notice requires simple and clear information on how class members can assert class membership and access relief, because of Defendants' representations that it is not required in the current, or any subsequent, notice. Because of the evident disagreement on this point, Plaintiffs also request that any notice intended to comply with the Court's Orders be approved by the Court as part of the implementation plan.[4]

---

[4] Defendants' attempt to distinguish cases requiring specific notice on the facts misses the point. Plaintiffs cite those cases to show that courts regularly issue such relief as necessary to ensure compliance with their prior orders, including notice requirements. *Cf. Walters v. Reno*, 145 F.3d 1032, 1053 (9th Cir. 1998) (affirming specific notice requirements, including the use of simple and plain language, explanation of procedures, and the ability of plaintiffs and the court to review the modified notice).

      **c.  Reopening and Reconsideration Relief Under the Clarification Order May Not Be Limited By Defendants' Self-Imposed Criteria**

The Court ordered the government to take "affirmative steps to reopen or reconsider past determinations that potential class members were ineligible for asylum based on the Asylum Ban, for all potential class members in expedited or regular removal proceedings . . . ." Dkt. 605 at 25. That relief extends to "all potential class members" and so Defendants may not impose extraneous criteria that would limit relief to certain PI class members.

*First*, Defendants refuse to screen for further relief those cases in which asylum was denied by an immigration judge (IJ) after June 30, 2020[5]—the date the Asylum Ban was vacated in *Capital Area Immigrants' Rights Coalition v. Trump ("CAIR")*, 2020 WL 3542481 (D.D.C. June 30, 2020). To be clear, the parties' dispute is over whether Defendants must *screen* this category of final asylum determinations for eligibility for reopening and reconsideration relief, and not automatically exclude them from consideration. The Clarification Order is clear that the obligation to reopen or reconsider attaches where the past determination was "based on the Asylum Ban," which in this context means that the Asylum Ban was applied in the individual's case. Plaintiffs do not dispute that in some cases, *upon further screening*, reopening or reconsideration may not be warranted, but the Court's Order does not permit Defendants to refuse to screen these cases for eligibility for relief. In light of past misapplications of the Asylum Ban despite the *CAIR* decision, *see* Mot. at 25, the government's mere assertions that final asylum determinations issued after *CAIR* need not be screened are insufficient, particularly because the government reissued the Asylum Ban in final form. *See* Asylum

---

[5] These cases are excluded from the Ninth Circuit's administrative stay. *See* Admin. Stay at 2 (Dec. 18, 2020) (staying government's obligation "to take affirmative steps to find and reopen or reconsider cases" applying the Asylum Ban to PI class members *only* for those cases with asylum ineligibility determinations that "became final before November 19, 2019, . . . , or during the period of the administrative stay in *Al Otro Lado v. Wolf*, No. 19-56417, December 20, 2019, to March 5, 2020.").

Eligibility and Procedural Modification, 85 Fed. Reg. 82,260, 82,266 n.14 (Dec. 17, 2020) (undermining *CAIR*).

*Second*, the PI requires that the government "return to the pre-Asylum Ban practices for processing the asylum applications of members of the certified class." Dkt. 330 at 36. Defendants' desire to limit the PI class members entitled to this relief based on whether an IJ or the Board of Immigration Appeals (BIA) found an *additional* basis on which to deny asylum finds no support in the Court's Orders. *See* Mot. at 23-25. As with the prior group of final asylum determinations, the relevant legal wrong that the Court's Orders seek to remedy is the application of the Asylum Ban to the PI class member's case. It is simply impossible for the government to definitively assess, based on the record, whether the underlying matter was infected by the application of the Asylum Ban. *Cf. Dufresne v. Comm'r, IRS*, 26 F.3d 105, 107 (9th Cir. 1994) (requiring evidentiary hearing to determine whether misconduct rendered judgment fundamentally unfair or constituted harmless error). In fact, applying Defendants' self-imposed criteria for exclusion of cases with alternative bases of ineligibility for asylum from reconsideration would have excluded consideration of the Applicant's case. *See* Dkt. 607 at 13. Therefore, the government must reopen or reconsider the final asylum ineligibility determinations in PI class members' cases regardless of any alternative findings of ineligibility to ensure that such determinations were not the result of improper application of the Asylum Ban to the PI class member's claim.

## III. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion to Enforce the Preliminary Injunction in its entirety.[6]

---

[6] In addition, Plaintiffs request that any relief granted in response to this motion similarly apply to any order enjoining application of the Second Asylum Ban, Asylum Eligibility and Procedural Modification, 85 Fed. Reg. 82,260 (Dec. 17, 2020), to PI class members, as set forth in Plaintiffs' Motion for a Temporary Restraining Order (Dkt. 658).

Dated: January 12, 2021

MAYER BROWN LLP
   Matthew H. Marmolejo
   Ori Lev
   Stephen M. Medlock

SOUTHERN POVERTY LAW CENTER
   Melissa Crow
   Sarah Rich
   Rebecca Cassler

CENTER FOR CONSTITUTIONAL RIGHTS
   Baher Azmy
   Ghita Schwarz
   Angelo Guisado

AMERICAN IMMIGRATION COUNCIL
   Karolina Walters

By: */s/ Stephen M. Medlock*
   Stephen M. Medlock

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that I caused a copy of the foregoing document to be served on all counsel via the Court's CM/ECF system.

Dated:  January 12, 2021                                MAYER BROWN LLP

                                                          By */s/ Stephen M. Medlock*