JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
AUGUST E. FLENTJE
Special Counsel
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259 | Fax: (202) 305-7000
katherine.j.shinners@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | Hon. Cynthia A. Bashant |
| v. | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER** |
| PETER T. GAYNOR, Acting Secretary of Homeland Security, *et al.*, in their official capacities,[*] | |
| *Defendants*. | |

---

[*] Pursuant to Federal Rule of Civil Procedure 25(d), Acting Secretary Gaynor is automatically substituted as a Defendant for Acting Secretary Wolf, Acting Commissioner Morgan is automatically substituted for former Commissioner McAleenan, and Executive Assistant Commissioner Ferrara is automatically substituted for former Executive Assistant Commissioner Owen.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTION .......................................................................................1

BACKGROUND .........................................................................................2

    Plaintiffs' Claims and the Court's Ruling on Defendants'
    Motion to Dismiss ...............................................................................2

    Challenges to the Interim Final Rule in Other Litigation ......................4

    The Preliminary Injunction and Defendants' Appeal .............................5

    The Final Transit Rule .........................................................................6

ARGUMENT ..............................................................................................9

I.    The INA Precludes the Court from Granting the Relief
    Plaintiffs Seek. ....................................................................................9

II.    The Court Cannot Use Its Equitable Authority or the All Writs
    Act to Enjoin the Application of the Final Transit Rule to the
    Provisional Class. ..............................................................................11

    A.    The Final Transit Rule Is A Proper Exercise of the
        Executive Branch's Rulemaking Authority. ..................................11

    B.    An Injunction of the Final Transit Rule Would not
        "Enforce" the Court's Prior PI Order. ..........................................12

    C.    The PI Order Rests on Error and Cannot Support a New
        Injunction. ...................................................................................15

III.    The Court Should Not Grant A New TRO of the Final Transit
    Rule. .................................................................................................15

    A.    Legal Standard ............................................................................16

    B.    Plaintiffs Are not Likely to Succeed on the Merits of
        their Claims. ...............................................................................16

    C.    Considerations of Irreparable Harm and the Equities
        Favor the Government. .................................................................22

IV.    The Court Should Reject Plaintiffs' Request for Retrospective
    Relief ...............................................................................................25

CONCLUSION .........................................................................................25

# TABLE OF AUTHORITIES

**Federal Cases**

*Al Otro Lado v. Wolf*,
    952 F.3d 999 (9th Cir. 2020) ................................................................ 6, 19, 20

*Al Otro Lado, Inc.*,
    394 F. Supp. 3d 1168 (2019) ................................................................ 3, 20

*Am. Trucking Ass'ns v. City of Los Angeles*,
    59 F.3d 1046 (9th Cir. 2009) ................................................................16

*Barr v. East Bay Sanctuary Covenant*,
    140 S. Ct. 3 (2019)................................................................4

*Capital Area Immigrants' Rights Coalition v. Trump*,
    471 F. Supp. 3d 25 (D.D.C. 2020)................................................................4

*DeBeers Consol. Mines v. United States*,
    325 U.S. 212 (1945)................................................................16

*DHS v. Thuraissigiam*,
    140 S. Ct. 1959 (2020)................................................................ 9, 10

*Drakes Bay Oyster Co. v. Jewell*,
    747 F.3d 1073 (9th Cir. 2014)................................................................14

*East Bay Sanctuary Covenant v. Barr*,
    385 F. Supp. 3d 922 (N.D. Cal. 2019)................................................................4

*East Bay Sanctuary Covenant v. Barr*,
    391 F. Supp. 3d 974 (N.D. Cal. 2019)................................................................4

*East Bay Sanctuary Covenant v. Barr*,
    934 F.3d 1026 (9th Cir. 2019) ................................................................15

*East Bay Sanctuary Covenant v. Barr*,
    964 F.3d 832 (9th Cir. 2020) ................................................................15

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010)................................................................22

*ICE v. Padilla*,
    No. 20-234, 2021 WL 78039 (U.S. Jan. 11, 2021) ......................................11

*INS v. Cardoza-Fonseca*,
    480 U.S. 421 (1987)...............................................................................24

*J.E.F.M. v. Lynch*,
    837 F.3d 1026 (9th Cir. 2016) ...............................................................10

*Kisor v. Wilkie*,
    139 S. Ct. 2400 (2019)..................................................................... 18, 19

*Lambert v. Saul*,
    980 F.3d 1266 (9th Cir. 2020) ...............................................................18

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
    140 S. Ct. 2367 (2020)..........................................................................12

*Mills v. United States*,
    273 F. 625 (9th Cir. 1921) .......................................................................9

*New Hampshire Hosp. Ass'n v. Price*,
    No. 15-CV-460-LM, 2017 WL 1383668 (D.N.H. Apr. 18, 2017)...............12

*NRDC, Inc. v. Southwest Marine, Inc.*,
    242 F.3d 1163 (9th Cir. 2001) ...............................................................13

*Pa. Bureau of Correction v. U.S. Marshals Service*,
    474 U.S. 34 (1985)................................................................................15

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*,
    810 F.3d 631 (9th Cir. 2015) .................................................................17

*Padilla v. ICE*,
    953 F.3d 1134 (9th Cir. 2020) ...............................................................11

*Pangea Legal Servs. v. DHS*,
    No. 20-cv-9253, 2021 WL 75756 (N.D. Cal. Jan. 8, 2021) .................. 7, 23

*Safer Chemicals, Healthy Families v. U.S. Envtl. Prot. Agency*,
    943 F.3d 397 (9th Cir. 2019) .................................................................18

iii

*Sale v. Haitian Centers Council, Inc.*,
    509 U.S. 155 (1993)......................................................................................17

*Synopsys, Inc. v. AzurEngine Techs., Inc.*,
    401 F. Supp. 3d 1068 (S.D. Cal. 2019) ......................................................16

*United States v. Aldana*,
    878 F.3d 877 (9th Cir. 2017) .........................................................................8

*United States v. Corrales-Beltran*,
    192 F.3d 1311 (9th Cir. 1999) ................................................................ 8, 17

*United States v. Cortez*,
    449 U.S. 411 (1981)......................................................................................22

*United States v. N.Y. Tel. Co.*,
    434 U.S. 159 (1977)......................................................................................13

*United States v. Novak*,
    476 F.3d 1041 (9th Cir. 2007) .....................................................................14

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008).................................................................................. 16, 22

**Federal Statutes**

8 U.S.C. § 1158(a)(1)...........................................................................................3

8 U.S.C. § 1158(b)(1)(A).....................................................................................24

8 U.S.C. § 1158(b)(2)(C) .............................................................................. 11, 21

8 U.S.C. § 1225(b)(1)(A)(ii) ................................................................................3

8 U.S.C. § 1225(b)(1)(B)(iii) .............................................................................11

8 U.S.C. § 1225(b)(1)(B)(v) ...............................................................................11

8 U.S.C. § 1229a(c)(4)(A) ..................................................................................11

8 U.S.C. § 1252(a)(2)(A)(iii) ...............................................................................9

8 U.S.C. § 1252(a)(5).........................................................................................10

8 U.S.C. § 1252(b)(9).........................................................................................10

iv

8 U.S.C. § 1252(e)(3)................................................................14

8 U.S.C. § 1252(f)(1) ...............................................................10

**Federal Rules**

Fed. R. Civ. P. 65(d)(1)............................................................12

**Administrative Rules and Decisions**

Asylum Eligibility and Procedural Modifications,
    84 Fed. Reg. 33,829 (July 16, 2019) .................................. passim

Asylum Eligibility and Procedural Modifications, 85 Fed. Reg. 82,260 (Dec.
    17, 2020) .......................................................... passim

*Matter of Patel*,
    20 I&N Dec. 368 (BIA 1991) ......................................... 7, 9, 17

Procedures for Asylum and Withholding of Removal; Credible Fear and
    Reasonable Fear Review,
    85 Fed. Reg. 80,274 (Dec. 11, 2020)....................................6

**Other Authorities**

The American Heritage Dictionary of the English Language (3d ed. 1992)...........17

**INTRODUCTION**

Plaintiffs' motion seeks to enjoin the application of the Final Transit Rule to the provisional class based primarily on the erroneous premise that the government was not permitted to enact that Rule. Yet this Court did not previously enjoin the government from enacting a final rule, nor did this Court rule on the lawfulness of the Interim Final Rule (or IFR), the precursor to the Final Transit Rule. Instead, it preliminarily enjoined the application of the IFR as to a particular class of individuals. The government is complying with that prior injunction. Accordingly, the Court cannot enjoin the Final Transit Rule as an exercise of its authority to enforce the prior injunction.

Defendants acknowledge that, putting to the side the fact that the operative complaint in this case has nothing to do with the transit rule, the Court could use the reasoning it used before to enter a new order enjoining application of the Final Transit Rule to members of the provisional class. But Defendants urge the Court to reconsider that reasoning. Defendants respectfully submit, as they have argued on appeal, that the Court's prior preliminary injunction and the underlying reasoning was flawed, primarily because the IFR and the Final Transit Rule do in fact apply by their terms to the provisional class members because those class members never stepped foot in the United States before July 16, 2019, and, even if they had, are subject to the rule upon entering again after the effective date. Indeed, the government's interpretation of the regulation is confirmed in the preamble to the Final Transit Rule and entitled to deference. Further, none of the members of the Ninth Circuit stay panel affirmed this Court's reasoning for granting the injunction. Although Plaintiffs argue that an injunction is warranted because metering is universally unlawful, they barely develop this argument, and they provide no reason for the Court to so hold. As Plaintiffs cannot establish a likelihood of success, they cannot obtain preliminary-injunctive relief, and their Motion should be denied.

DEFS.' OPP. TO PLS.' MOT. FOR TRO
(FINAL TRANSIT RULE)
Case No. 3:17-cv-02366-BAS-KSC

# BACKGROUND

## Plaintiffs' Claims and the Court's Ruling on Defendants' Motion to Dismiss

As the Court is well aware, this lawsuit is not a challenge to substantive asylum rules and regulations. Instead, it is a challenge to various disparate, unrelated types of alleged conduct by Customs and Border Protection (CBP) Officers at land ports of entry (POEs) along the Southwest border, which Plaintiffs lump together under the label "turnback policy," and which they claim denied them access to the asylum process in the United States. Mem. in Supp. of Pls.' Mot. for Summ. J. (ECF No. 535-1) (Pls.' MSJ), at 4-5; *see also* Second Amended Compl. (ECF No. 189) (SAC) ¶¶ 2-4. Among the conduct challenged is CBP's "metering" or "queue management" process, which CBP first implemented in May 2016 in response to an unprecedented surge of aliens without documents sufficient for lawful entry seeking to present themselves at the San Ysidro POE. Metering is the process by which a POE controls the intake of undocumented aliens into the port in accordance with its capacity to process the aliens' applications for admission and temporarily hold such aliens in CBP custody while discharging their other priority missions, including protecting national security and facilitating trade and travel. As was demonstrated by the events in 2016, if CBP could not engage in metering, POEs could be become overwhelmed, creating potentially unsafe and unsanitary conditions for undocumented aliens seeking admission as well as for other travelers and for CBP Officers, putting immense strain on CBP's and DHS's resources, and diverting significant resources away from priority missions. Mem. in Supp. of Defs.' Mot. for Summ. J. (ECF No. 563-1) (Defs.' MSJ) at 10-25; Declaration of Katherine J. Shinners (Shinners Decl.) Ex. A ¶¶ 31-95, 97-103, 105-108, 111-114, Ex. B.

Plaintiffs claim that metering violates the Immigration and Nationality Act (INA), the Administrative Procedure Act (APA), the Due Process Clause, and the international-law norm of non-refoulement. SAC ¶¶ 3, 203–35. Plaintiffs rely on the asylum statute, which generally allows an alien "who is physically present in the

DEFS.' OPP. TO PLS.' MOT. FOR TRO
(FINAL TRANSIT RULE)
Case No. 3:17-cv-02366-BAS-KSC

United States or who arrives in the United States" to apply for asylum, 8 U.S.C. § 1158(a)(1), and the expedited removal statute, which requires CBP to refer an alien "who is arriving in the United States" for a credible fear interview if he asserts an intent to apply for asylum or a fear of persecution, *id.* § 1225(b)(1)(A)(ii). SAC ¶¶ 205, 208–09. Plaintiffs contend that when a CBP officer who is conducting metering prevents an alien who intends to seek asylum in the United States from immediately crossing the U.S.-Mexico border into a POE, the officer deprives the alien of a statutory right to apply for asylum in the United States and fails to discharge his duty to refer that alien for a credible fear interview. SAC ¶¶ 244–93.

In November 2018, the government moved to dismiss the operative (second amended) complaint, arguing, among other things, that metering is lawful because the asylum and expedited removal statutes by their terms apply only to aliens "in the United States," so the government does not violate those statutes by preventing an alien who is outside the United States from crossing the border. Mot. to Dismiss 6–11 (ECF No. 192-1) (citing 8 U.S.C. §§ 1158(a)(1), 1225(b)(1)(A)(ii)). In July 2019, the Court denied that motion to dismiss. It held that Plaintiffs stated claims regarding the government's alleged failure to process them for asylum under the metering policy. *See Al Otro Lado, Inc.*, 394 F. Supp. 3d 1168, 1199–1205 (2019). The Court reasoned that the asylum and expedited removal statutes apply extraterritorially to aliens who are outside the United States in a foreign country and wish to cross the border to apply for asylum, conferring on such aliens a right to apply for asylum and a duty on the government to process their application for admission and refer them for consideration of their asylum claim. *See id.* Although the Court held that the asylum and expedited removal statutes apply to aliens "who may not yet be in the United States," it did not declare that metering is categorically unlawful. *Id.* at 1212. Rather, the Court acknowledged that "there may exist potentially legitimate factors that prevent CBP officers from immediately" processing undocumented aliens seeking to enter the ports. *Id.*

**Challenges to the Interim Final Rule in Other Litigation**

On July 16, 2019, the Departments of Justice and Homeland Security (the "Departments") issued a joint interim final rule entitled "Asylum Eligibility and Procedural Modifications," 84 Fed. Reg. 33,829 (July 16, 2019) (the "IFR"). The Court is familiar with the Interim Final Rule, which establishes a substantive immigration rule under which certain aliens "who enter[] or attempt[] to enter the United States across the southern border after failing to apply for protection in a third country ... through which the alien transited en route to the United States [are] ineligible for asylum." *Id.* at 33,830. The IFR "also require[s] asylum officers and immigration judges to apply this new bar on asylum eligibility when administering the credible-fear screening process applicable to stowaways and aliens who are subject to expedited removal." *Id.* Individuals who are ineligible for asylum under the IFR are nonetheless eligible to seek other forms of protection from removal, such as withholding of removal and protection under the Convention Against Torture (CAT). 84 Fed. Reg. at 33,830, 33,837–38.

Plaintiff Al Otro Lado and others challenged the IFR in separate litigation. After the U.S. District Court for the Northern District of California issued orders preliminary enjoining the rule nationwide, *see East Bay Sanctuary Covenant v. Barr*, 385 F. Supp. 3d 922 (N.D. Cal. 2019); *East Bay Sanctuary Covenant v. Barr*, 391 F. Supp. 3d 974 (N.D. Cal. 2019), the Supreme Court stayed those injunctive orders "in full," thereby permitting the IFR to go into effect nationwide. *Barr v. East Bay Sanctuary Covenant*, 140 S. Ct. 3 (2019). That stay remains in effect "pending disposition of the Government's appeal ... and disposition of the Government's petition for a writ of certiorari, if such writ is sought." *Id.* On June 30, 2020, the IFR was vacated on procedural grounds in separate litigation. *See Capital Area Immigrants' Rights Coalition v. Trump (CAIR)*, 471 F. Supp. 3d 25 (D.D.C. 2020), *appeal docketed*, No. 20-5271 (D.C. Cir. filed Aug. 31, 2020).

**The Preliminary Injunction and Defendants' Appeal**

After the Supreme Court stayed the injunctions of the IFR, Plaintiffs in this case sought to partially enjoin the IFR's application. In November 2019, this Court granted Plaintiffs' request and enjoined Defendants from applying the IFR to a provisional class of "all non-Mexican asylum-seekers who were unable to make a direct asylum claim at a U.S. POE before July 16, 2019 because of the U.S. Government's metering policy, and who continue to seek access to the U.S. asylum process," and ordered Defendants "to return to pre-Asylum Ban practices for processing" provisional class members' "asylum applications." ECF No. 330 (PI Order) at 36.

In the PI Order, the Court did not address the legality of the IFR or of metering. PI Order at 15, 23. Instead, it based its decision on a ground not argued by the parties, holding that "Plaintiffs are likely to succeed on the merits of their claim that the [IFR] does not apply to them." PI Order at 31. "Adopting and applying" the reasoning of its July 2019 order denying the government's motion to dismiss, the Court construed the IFR's language and concluded that the IFR, "by its express terms, does not apply to those non-Mexican foreign nationals who attempted to enter or arrived at the southern border *before* July 16, 2019 to seek asylum but were prevented from making a direct claim at a POE pursuant to the metering policy." PI Order at 31 (emphasis in original); *see* PI Order at 30–32. The Court reasoned that an alien who approached the border to seek asylum before July 16 but was metered was "in the processing of arriving in the United States" (and thus was, per the Court's prior reasoning, "arriving in the United States") before the IFR's effective date, PI Order at 31, and so that alien is not covered by the IFR because the IFR "clearly states that it applies only to aliens who entered, attempted to enter, or arrived on or after July 16, 2019," PI Order at 32. The Court added that applying the IFR to Plaintiffs would irreparably harm them by stripping them of "an opportunity to have their asylum claims heard," and that the equities favored an injunction because class members purportedly "relied on the Government's representations" that "they would

DEFS.' OPP. TO PLS.' MOT. FOR TRO
(FINAL TRANSIT RULE)
Case No. 3:17-cv-02366-BAS-KSC

eventually have an opportunity to make a claim for asylum in the United States." PI Order at 34; *see also* PI Order at 32–35.

The government appealed the PI Order to the Ninth Circuit, and also moved that court for a stay of the PI Order. *See Al Otro Lado v. Wolf*, No. 19-56417 (9th Cir.). After granting an administrative stay, a divided motions panel ultimately declined to stay the PI Order pending appeal. *Al Otro Lado v. Wolf*, 952 F.3d 999 (9th Cir. 2020). In that decision, the Ninth Circuit determined that the government was required to, and did not, make an "especially strong showing" of likelihood of success on the merits of the appeal. *See id.* at 1011.

On October 30, 2020, this Court issued a new order granting Plaintiffs' Motion to Clarify the PI Order. *See* ECF No. 605 (October 30 Order). On December 2, 2020, Defendants appealed from the October 30 Order. *See* ECF No. 634. That appeal is pending. *Al Otro Lado v. Wolf*, No. 20-56287 (9th Cir.).

**The Final Transit Rule**

On December 17, 2020, the Departments issued and published in the Federal Register a joint final rule entitled "Asylum Eligibility and Procedural Modifications," 85 Fed. Reg. 82,260 (Dec. 17, 2020) (Final Transit Rule). (When necessary or efficient to group the IFR and the Final Transit Rule together, Defendants refer to them collectively as the "transit rule.") The Final Transit Rule "responds to comments received on the IFR and makes minor changes to regulations implemented or affected by the IFR for clarity and correction of typographical errors," *id.* at 82,260, and it adopted "as final" certain of the IFR's amendments to the Code of Federal Regulations (at 8 C.F.R. §§ 208.13, 1208.13). *Id.* at 82,289. The Final Transit Rule noted that an intervening final rule, "Procedures for Asylum and Withholding of Removal; Credible Fear and Reasonable Fear Review," 85 Fed. Reg. 80,274 (Dec. 11, 2020) (Global Asylum Rule), "made various amendments to the regulatory text as amended in the IFR," such that "certain amendments published in the IFR are no longer necessary." *Id.* at 82261 n.5. Amendments that were not incorporated into the

DEFS.' OPP. TO PLS.' MOT. FOR TRO
(FINAL TRANSIT RULE)
Case No. 3:17-cv-02366-BAS-KSC

Final Transit Rule because they were addressed in the Global Asylum Rule include provisions related to the procedures for credible fear processing and review contained in 8 C.F.R. §§ 208.30(e), and 1003.42. The Final Transit Rule takes effect on January 19, 2021. *Id.* at 82260.  The Global Asylum Rule, however, was recently enjoined by another District Court. *Pangea Legal Servs. v. DHS*, No. 20-cv-9253, 2021 WL 75756, at *7 (N.D. Cal. Jan. 8, 2021). Accordingly, while that injunction is in effect, and absent additional rules taking effect or additional regulatory developments, the Final Transit Rule will not be applied during credible fear proceedings.

In the preamble to the Final Transit Rule, the Departments clarified that the rule "applies to all aliens who enter, attempt to enter, or arrive in the United States across the southern land border on or after July 16, 2019." 85 Fed. Reg. at 82,268. These three terms, the authors noted, "require physical presence in the United States, and, as a result, any aliens who did not physically enter the United States before July 16, 2019, are subject to this rule." *Id.* "Therefore, the rule applies to aliens who, for example, were subject to metering before July 16, 2019, and, as a result, had not entered, attempted to enter, or arrived in the United States by that time." *Id.* at 82,269. As the authors explained, this was always the intended meaning of these terms, which was based on longstanding precedent. *Id.* at 82,268-69 & n.22.

The preamble first addresses the term "entry," stating that it "has a longstanding definition in immigration law" and "generally requires physical presence in the United States free from official restraint, after inspection and admission at a port of entry or intentional evasion at or outside of a port of entry." *Id.* at 82,268 (citing *Matter of Patel*, 20 I&N Dec. 368, 370 (BIA 1991)). The preamble next addresses the term "arrive in":

> Similarly, although the U.S. Code does not define the term "arrival" (or "arrive"), the term is consistently accompanied by the phrase "in the United States." *See, e.g.*, INA 208(a)(2)(B), 8 U.S.C. 1158(a)(2)(B). Specifically, section 208(a) of the Act, 8 U.S.C. 1158(a), states that an alien who "arrives in" the United States may seek asylum.  The present

DEFS.' OPP. TO PLS.' MOT. FOR TRO
(FINAL TRANSIT RULE)
Case No. 3:17-cv-02366-BAS-KSC

tense phrase "arrives in" thus speaks to actual, ongoing arrival in the United States, not some potential arrival in the future. Similarly, the term "arriving alien" is defined by regulation as "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means"—all of which require the alien to be physically present in the port of entry. *See* 8 CFR 1.2, 1001.1(q). An alien cannot be an "applicant for admission" unless he is "present in the United States" or "arrives in the United States," INA 235(a)(1), 8 U.S.C. 1225(a)(1), and he cannot be "at a port-of-entry" unless he is in the United States, *see, e.g.*, *United States v. Aldana*, 878 F.3d 877, 882 (9th Cir. 2017) (explaining that ports of entry are physical facilities in U.S. territory); *see also* 8 CFR 235.1(a), 1235.1(a) (application to lawfully enter "shall be made . . . at a U.S. port-of-entry when the port is open for inspection"). Consistent with this reasoning, an immigration officer's duty to refer an alien "who is arriving in the United States" for a credible-fear interview does not attach until the "officer determines that an alien . . . is inadmissible" on certain grounds, INA 235(b)(1)(A)(ii), 8 U.S.C. 1225(b)(1)(A)(ii); the officer cannot determine that an alien is inadmissible on certain grounds until he inspects the alien, *see* INA 235(a)(3), 8 U.S.C. 1225(a)(3); and the officer's duty to inspect the alien does not attach until the alien "arrives in" the United States, INA 235(a)(1), 8 U.S.C. 1225(a)(1). For these reasons, this rule's references to the terms "arrival" and "arrive"—like the references to "entry"—require physical presence in the United States.

*Id.* at 82,268.

The preamble to the Final Transit Rule then provides the meaning of the term "attempt to enter," stating:

[T]he Departments intended, and continue to intend, for the phrase "attempt to enter" to encompass only those who are physically present in the United States. Aliens whom [CBP] encounter at the physical border line of the United States and Mexico, who have not crossed the border line at the time of that encounter, have therefore not attempted to enter. This interpretation, while perhaps counterintuitive in light of a colloquial understanding of the word "attempt," is nonetheless consistent with case law in the immigration context that has equated an "attempt"

8

to enter the United States with the actual crossing of the border. *See, e.g.*, *United States v. Corrales-Beltran*, 192 F.3d 1311, 1319–20 (9th Cir. 1999) ("The attempt is in itself a substantive offense. It is the act of crossing the boundary line into the United States. It is not an attempt to commit an independently described offense, in the sense in which the word 'attempt' is ordinarily used in criminal law. It is the actual re-entry into the United States.") (quoting *Mills v. United States*, 273 F. 625, 627 (9th Cir. 1921)). This interpretation of the word "attempt" in the context of attempting "to enter" is also consistent with the above-described meaning of the term "entry." Because "entry" requires more than mere physical presence, *see Matter of Patel*, 20 I&N Dec. at 370, an alien can physically cross the border of the United States and still be merely "attempting" to enter the United States because, for example, he or she has not yet obtained freedom from official restraint.

*Id.* at 82,269.

## ARGUMENT

## I.    The INA Precludes the Court from Granting the Relief Plaintiffs Seek.

Plaintiffs ask the Court to enjoin asylum officers and immigration judges from applying the Final Transit Rule to class members in expedited-removal proceedings and removal proceedings. And the INA precludes this Court from granting that re-lief—regardless of whether it is framed as a modification of an existing injunction or a new TRO. Although the Court previously rejected these arguments, PI Order at 9-18, Defendants respectfully ask the Court to reconsider its conclusions, especially in light of an intervening Supreme Court case that is in tension with this Court's ruling. *See DHS v. Thuraissigiam*, 140 S. Ct. 1959 (2020).

*First*, the INA (at 8 U.S.C. § 1252(a)(2)(A)(iii)) prohibits this Court from re-viewing asylum officers' determinations in expedited-removal proceedings that an alien is ineligible for asylum pursuant to the final rule. The INA states: "Notwith-standing any other provision of law … , no court shall have jurisdiction to review ... the application of [8 U.S.C. § 1225(b)(1)] to individual aliens, including the deter-mination made under [8 U.S.C. § 1225(b)(1)(B)]." 8 U.S.C. § 1252(a)(2)(A)(iii). This means that courts "may not review 'the determination' that an applicant lacks

DEFS.' OPP. TO PLS.' MOT. FOR TRO
(FINAL TRANSIT RULE)
Case No. 3:17-cv-02366-BAS-KSC

a credible fear of persecution." *Thuraissigiam*, 140 S. Ct. at 1961. *A fortiori*, this means that this Court lacks jurisdiction to enjoin the application of the Final Transit Rule to class members who *will* be placed in expedited-removal proceedings.

*Second*, the INA (at 8 U.S.C. §§ 1252(a)(5) and (b)(9)) prohibits this Court from reviewing immigration judges' application of the final rule to class members in removal proceedings. Section 1252(a)(5) states: "Notwithstanding any other provision of law … , a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal ... ." And section 1252(b)(9) states: "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." "Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the PFR [petition for review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016). Thus, only the courts of appeals have jurisdiction to review any class member's claim that they were improperly denied asylum pursuant to the transit rule by an immigration judge in removal proceedings. *A fortiori*, only the courts of appeals have jurisdiction to review the claims of aliens who *will* be denied asylum pursuant to the Final Transit Rule by an immigration judge in removal proceedings.

*Third*, the INA (at 8 U.S.C. § 1252(f)(1)) prohibits this Court from enjoining asylum officers and immigration judges on a class-wide basis from applying the rule to class members. The INA states: "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C. §§ 1221–1232] other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." Plaintiffs' requested injunction would impermissibly "restrain the operation of"

DEFS.' OPP. TO PLS.' MOT. FOR TRO
(FINAL TRANSIT RULE)
Case No. 3:17-cv-02366-BAS-KSC

8 U.S.C. §§ 1225(b)(1)(B)(iii) and (v) because it enjoins asylum officers from deciding that class members fail to establish a "credible fear of persecution," as that term is defined by statute, when class members would be ineligible for asylum pursuant to the final rule. The requested injunction also would impermissibly "restrain the operation of" 8 U.S.C. § 1229a(c)(4)(A) because it prohibits immigration judges from determining that class members "satisf[y] the application eligibility requirements" when class members are ineligible for asylum under the Final Transit Rule. Just this week, the Supreme Court vacated a decision of the Ninth Circuit that had held that Section 1252(f) did not preclude class-wide injunctive relief. *ICE v. Padilla*, No. 20-234, 2021 WL 78039 (U.S. Jan. 11, 2021) (vacating judgment in *Padilla v. ICE*, 953 F.3d 1134, 1138–39 (9th Cir. 2020) based on *Thuraissigiam*).

II.    **The Court Cannot Use Its Equitable Authority or the All Writs Act to Enjoin the Application of the Final Transit Rule to the Provisional Class.**

Plaintiffs argue that the Court should enjoin the Final Transit Rule as to the provisional class because, they say, the Final Transit Rule contravenes the PI Order. Mot. at 7-12. This reasoning is incorrect and misapprehends the nature of executive rulemaking authority as well as preliminary injunctive relief. This Court previously enjoined the *application* of the *IFR* to a *particular class* of individuals. It did not enjoin the Departments from issuing a final rule, nor did it determine that the underlying rule was substantively unlawful. The Final Transit Rule has not been enjoined by any court as to any population. Accordingly, neither the Court's inherent equitable authority nor the All Writs Act can justify enjoining the new Final Transit Rule.

A.    **The Final Transit Rule Is A Proper Exercise of the Executive Branch's Rulemaking Authority.**

The Departments have the authority to engage in rulemaking concerning substantive requirements for asylum eligibility. *See* 8 U.S.C. § 1158(b)(2)(C) ("The Attorney General may by regulation establish additional limitations and conditions, consistent with this section, under which an alien shall be ineligible for asylum under

DEFS.' OPP. TO PLS.' MOT. FOR TRO
(FINAL TRANSIT RULE)
Case No. 3:17-cv-02366-BAS-KSC

paragraph (1).”). The existence of a preliminary injunction of an interim final rule as to a limited class of individuals does not preclude the Departments from following routine notice-and-comment procedures to proceed with the issuance of a final rule on the same topic. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2378, 2384-85 (2020) (acknowledging procedural propriety of promulgating final rule after notice-and-comment conducted after publication of the interim final rule, in a case where interim final rule had been enjoined).

The Final Transit Rule is a new agency action. *New Hampshire Hosp. Ass'n v. Price*, No. 15-CV-460-LM, 2017 WL 1383668, at *3 (D.N.H. Apr. 18, 2017) (holding that a new final rule is a new agency action). The Final Transit Rule responds to public comment and other concerns, as reflected in the preamble. That response included the Departments' explanation that they intended the terms “enters,” “attempts to enter,” or “arrives in” to require physical presence in the United States, which is contrary to the Court's interpretation of those terms in the PI Order. *See* 85 Fed. Reg. at 82,268-69. Accordingly, contrary to Plaintiffs' arguments, the Final Transit Rule is a procedurally proper, new agency action.

### B.    An Injunction of the Final Transit Rule Would not “Enforce” the Court's Prior PI Order.

The PI Order does not enjoin the application of the Final Transit Rule to the provisional class. Instead, it enjoins application of what this Court called the “Asylum Ban,” which is defined as the IFR (the “joint interim final rule entitled ‘Asylum Eligibility and Procedural Modifications’”), to the provisional class. *See* PI Order at 5, 36; *see also* Fed. R. Civ. P. 65(d)(1) (requiring an injunction to “state its terms specifically” and “describe in reasonable detail . . . the act or acts restrained or required”). Nor did the PI Order determine that the IFR was unlawful or enjoin its application on this basis. Thus, the Court's PI Order—which enjoins the IFR—does not provide independent authority for the Court to enjoin the Final Transit Rule.

Plaintiffs first argue that the Court need not engage in the typical four-factor

DEFS.' OPP. TO PLS.' MOT. FOR TRO
(FINAL TRANSIT RULE)
Case No. 3:17-cv-02366-BAS-KSC

analysis to enjoin the Final Transit Rule because it has the authority to modify its PI Order to enforce compliance with it. Mot. at 10-11. Yet because the PI Order does not enjoin the Final Transit Rule, the Court's inherent authority to enforce its own orders does not apply to this situation. Defendants and EOIR complied with the PI Order, which enjoins the application of the IFR to the provisional class. Any modification of the PI Order to encompass an injunction of the Final Transit Rule would not be designed to enforce compliance with the PI Order. Instead, it would simply be a *new* injunction of the final rule. Indeed, none of the cases Plaintiffs cite involve or address a court's modification of a preliminary injunction of a prior rule to enjoin a new final rule. Further, because the government has appealed the PI Order, the Court lacks jurisdiction to substantively modify that injunction. *See NRDC, Inc. v. Southwest Marine, Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001).

Plaintiffs next argue that the All Writs Act (AWA) provides authority to extend the prior injunction to enjoin the Final Transit Rule. The AWA also does not apply here.  That Act allows courts to issue writs "in aid of" their jurisdiction, and may be invoked where "necessary or appropriate to effectuate and prevent the frustration" of the court's prior orders.  *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977). Here, Defendants are complying with the Court's prior PI Order, which only enjoins application of the IFR and does not declare the IFR substantively unlawful. It is thus not "necessary" to employ the AWA to enforce the PI Order.[1]

Plaintiffs also argue that the AWA can supply the authority to enjoin the Final Transit Rule because application of the Final Transit Rule to the provisional class "would destroy the court's jurisdiction over pending claims." Mot. at 12. Yet they

---

[1] Plaintiffs may contend that these arguments are formalistic (*see* Mot. at 10), but the arguments simply recognize the limitations of an existing preliminary injunction of a particular agency action, which are essential principles under Rule 65(d). As noted, this reasoning does not address the Court's authority to issue a *new* order enjoining the application of the Final Transit Rule to the provisional class, but Defendants respectfully that such a new order is unwarranted. *See infra* § III.

DEFS.' OPP. TO PLS.' MOT. FOR TRO
(FINAL TRANSIT RULE)
Case No. 3:17-cv-02366-BAS-KSC

do not explain why or how their class challenge to CBP's metering practices would be extinguished if the Final Transit Rule were applied to provisional class members. The challenges Plaintiffs make to CBP's metering practices at ports of entry are separate and distinct from the application of the Final Transit Rule, which occurs *after* individuals have entered the United States and been inspected and processed by CBP. Indeed, the relief Plaintiffs seek in this litigation is an injunction of "turn-backs" and a declaration that metering is unlawful, neither of which have any bearing on the substantive rules of asylum eligibility or the outcomes of individual class members' requests for asylum. Pls.' MSJ at 38 (asking the Court to "enter an injunction that permanently enjoins all forms of turnbacks and requires Defendants to inspect and process asylum seekers as they arrive at Class A POEs on the U.S.-Mexico border"), 38-39 (seeking declaratory relief). This Court is entirely capable of granting Plaintiffs' requested final relief even if it were to not issue the requested TRO. The Court, therefore, cannot rely on the AWA to support an injunction of the Final Transit Rule as to the provisional class.

Further, as explained above (*supra* § I), the INA divests the Court of authority under the AWA to issue the injunctive relief Plaintiffs seek. The statute's divestment of jurisdiction over the expedited removal process applies "[n]otwithstanding any other provision of law …, including section 2241 of Title 28 . . . and sections 1361 *and 1651 of such title*." 8 U.S.C. § 1252(a)(2)(A) (emphasis added); *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1083 (9th Cir. 2014) ("As a general matter, 'notwithstanding' clauses nullify *conflicting* provisions of law."); *United States v. Novak*, 476 F.3d 1041, 1046 (9th Cir. 2007) (en banc) ("[S]tatutory 'notwithstanding' clauses broadly sweep aside potentially conflicting laws."). Moreover, the fact that the INA channels jurisdiction to other courts precludes a conclusion that jurisdiction must be aided in *this* Court. *See* 8 U.S.C. § 1252(e)(3). Although the AWA "empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory

procedures appears inconvenient or less appropriate." *Pa. Bureau of Correction v. U.S. Marshals Service*, 474 U.S. 34, 43 (1985). Thus, even if the AWA did apply, the INA divests the Court of authority to issue the order Plaintiffs seek.

### C.    The PI Order Rests on Error and Cannot Support a New Injunction.

Separately, the prior PI Order cannot provide the basis for a new injunction because the prior PI Order was issued in error. Defendants maintain, as they have in their still-pending appeal, that the Court erred: in enjoining the IFR without assessing the Plaintiffs' likelihood of success on the merits of any of the claims actually advanced in the operative complaint; in concluding that the IFR by its own terms does not apply to members of the provisional class, who were subject to metering before July 16, 2019; and in entering a classwide injunction in contravention of the INA review provisions. For these reasons, the Court cannot extend the prior PI Order to also enjoin the Final Transit Rule.

## III.    The Court Should Not Grant A New TRO of the Final Transit Rule.

Plaintiffs are also not entitled to a new TRO of the Final Transit Rule under the traditional preliminary-injunction factors. Defendants acknowledge that this Court has enjoined application of the IFR to the provisional class, and has ordered the reopening or reconsideration of past applications of the IFR made before the PI entered or while it was stayed (although the government's appeals of both orders are currently pending).[2] Yet Defendants respectfully submit that the Court should reconsider its prior conclusions, which were reached without the benefit of briefing from the parties on the issues. The Final Transit Rule confirms the government's intent to

---

[2] Contrary to Plaintiffs' implication (Mot. at 9-10), the Ninth Circuit motions panel's ruling on Defendants' motion to stay the PI Order pending appeal is not a final decision on the merits of the appeal. *See East Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1028 (9th Cir. 2019); *East Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 855 (9th Cir. 2020).

DEFS.' OPP. TO PLS.' MOT. FOR TRO
(FINAL TRANSIT RULE)
Case No. 3:17-cv-02366-BAS-KSC

apply the transit rule to provisional class members, in contrast to the Court's interpretation of the rule that formed the basis for its PI Order.

### A.    Legal Standard

Injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008). A party seeking a temporary restraining order must show that it is "'likely to succeed on the merits, . . . likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest.'" *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20); *see also Synopsys, Inc. v. AzurEngine Techs., Inc.*, 401 F. Supp. 3d 1068, 1072 (S.D. Cal. 2019) ("The standard for obtaining a temporary restraining order is identical to the standard for obtaining a preliminary injunction.").

### B.    Plaintiffs Are not Likely to Succeed on the Merits of their Claims.

The Transit Rule Applies to Class Members. At the outset, Defendants note that, in assessing the first prong of the four-factor test for preliminary-injunctive relief, the Court must evaluate Plaintiffs' likelihood of success on their claims in the case—which challenge metering and other alleged CBP practices—not whether Plaintiffs are likely to succeed on the argument that the Final Transit Rule does not apply to provisional class members.[3] Only once likelihood of success on the "merits" and the other injunctive-relief factors are demonstrated, *Winter*, 555 U.S. at 7, does a court consider the question of *remedy* for the merits issues raised, *see DeBeers Consol. Mines v. United States*, 325 U.S. 212, 219 (1945). For injunctive relief to be proper, "there must be a relationship between the injury claimed in the motion for

---

[3] The PI Order also improperly rested its finding of commonality for purposes of class certification on its conclusion that the question of whether the Final Transit Rule applies was common to the provisional class. PI Order at 23.

DEFS.' OPP. TO PLS.' MOT. FOR TRO
(FINAL TRANSIT RULE)
Case No. 3:17-cv-02366-BAS-KSC

injunctive relief and the *conduct asserted in the underlying complaint*." Yet Plaintiffs do not seek this relief in their complaint. *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (emphasis added). The conduct challenged by Plaintiffs in their operative complaint is metering, not the transit rule. Because the complaint does not challenge the transit rule or allege that it is being improperly applied to the class, those claims are beyond the scope of the litigation.

In any event, Plaintiffs' argument that the Final Transit Rule does not apply to provisional class members is incorrect. *See* Mot. 13-15. The government has always maintained that the transit rule does apply, by its own terms, to those who were subject to metering before July 16, 2019, but who did not physically enter the United States for processing until July 16, 2019 or later. And the Departments have since confirmed that intent in the preamble to the Final Transit Rule.

The transit rule applies to "any alien who enters, attempts to enter, or arrives in the United States across the southern land border on or after July 16, 2019." 84 Fed. Reg. at 33,843. As the government has argued on appeal and reemphasized in the Final Transit Rule, the terms "entry," "attempt to enter," and "arrive" have longstanding and established definitions in immigration law that "require physical presence in the United States." 85 Fed. Reg. at 82,269. "Entry" requires "a crossing into the territorial limits of the United States, *i.e.*, physical presence," and freedom from official restraint. *Matter of Patel*, 20 I. & N. Dec. at 370. "Arrives in" means arrives *in* the United States, not *near* the United States. *See, e.g.*, The American Heritage Dictionary of the English Language 102 (3d ed. 1992) ("Arrive" means "to reach a destination."); *Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 173 & nn.11, 29 (1993). And "attempts to enter" means "the act of crossing the boundary line into the United States" and failing to effect an entry. *United States* v. *Corrales-Beltran,* 192 F.3d 1311, 1319–20 (9th Cir. 1999). By definition, all provisional class members fall within these categories. The class comprises aliens who "were unable to make a direct asylum claim" before July 16, 2019 (because they were metered and

DEFS.' OPP. TO PLS.' MOT. FOR TRO
(FINAL TRANSIT RULE)
Case No. 3:17-cv-02366-BAS-KSC

so did not enter the United States and apply for asylum before that date) and "who continue," on or after July 16, "to seek access to the U.S. asylum process." PI Order at 36. The class thus comprises aliens who were outside the United States on or after July 16, 2019 who will therefore cross the border and be physically present in the United States only after that date—which is to say, they are plainly covered by the transit rule. *See* 85 Fed. Reg. at 82,269 ("the rule applies to aliens who, for example, were subject to metering before July 16, 2019, and, as a result, had not entered, attempted to enter, or arrived in the United States by that time").

Under a proper reading of the transit rule, class members were never entitled to be exempted from the rule because none were physically present in the United States before the IFR took effect. This is supported by the government's interpretation of the terms "enters," "attempts to enter," or "arrives in" in the preamble to the Final Transit Rule. The government's interpretation of these terms is the better one, based on existing precedent and the statutory and regulatory context. It is also entitled to deference. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2412 (2019) ("Want to know what a rule means? Ask its author.").[4] This interpretation is an authoritative official position of the Departments. *See id* at 2416; *cf. Safer Chemicals, Healthy Families v. EPA*, 943 F.3d 397, 422 & n.17 (9th Cir. 2019) (evaluating interpretation of statute

---

[4] Plaintiffs argue that the Court should not defer to the Departments' explanation of the meaning of these terms because the terms are not sufficiently ambiguous to warrant deference. Mot. at 9 (citing *Kisor*, 139 S. Ct. at 2414). Defendants agree that the plain language of "enters" and "arrives in" unambiguously denote physical presence, contrary to the Court's conclusion in the PI Order. But if these terms are ambiguous, the Departments' interpretation is entitled to deference. *Kisor*, 139 S. Ct. at 2415-16. And the term "attempts to enter" is clearly susceptible of more than one meaning, as is evidenced by the case law cited in the preamble to the Final Transit Rule. *See* 85 Fed. Reg. at 82,269 ("This interpretation, while perhaps counterintuitive in light of a colloquial understanding of the word "attempt," is nonetheless consistent with [Ninth Circuit] case law in the immigration context that has equated an "attempt" to enter the United States with the actual crossing of the border.").

contained in regulatory preamble under *Chevron*); *Lambert v. Saul*, 980 F.3d 1266, 1275–76 (9th Cir. 2020) (same). The interpretation reflects the Departments' substantive immigration expertise. *See Kisor*, 139 S. Ct. at 2417. Further, the government's position on the meaning of these terms as used in the transit rule has not wavered—it has never put forth a contrary interpretation. *See id.*[5]

But even on its own terms, the Court's interpretation of the transit rule does not mean that provisional class members are exempt from the rule. The Court reasoned that class members who were metered before July 16, 2019 were not covered by the rule because they had already arrived in the United States before the rule took effect. As all members of the motion panel agreed, "this reasoning is definitely wrong. The Third Country Transit Rule applies to any alien who enters, attempts to enter, or arrives in the United States across the southern land border on or after July 16, 2019. It includes anyone, including the plaintiffs in this case, who will be attempting to enter the United States after July 16, 2019. There is no exception for persons who *previously* tried to enter the United States and who were unable to do so, whether due to metering or any other reason. The district court was thus mistaken to believe that the Third Country Transit Rule by its express terms contains a carve-out for metered persons. It does not." *Al Otro Lado*, 952 F.3d at 1026 (Bress, J., dissenting); *see also id.* at 1013 n.11 (majority op.) ("We note that the government may be right that, because the class members were 'metered,' they will arrive a sec-

---

[5] Plaintiffs point to the deposition testimony of a 30(b)(6) witness for CBP, who agreed that asylum seekers standing at the U.S.-Mexico border are attempting to enter the United States. Mot. at 15. This testimony was given subject to a timely scope objection, and the witness was not speaking about the interpretation of the transit rule. Defs.' MSJ at 40 n. 2. In any event, that witness's testimony reflects the "colloquial understanding" of the term "attempt to enter," which differs from the meaning in the immigration context, which equates an "attempt" to enter the United States with the actual crossing of the border.  *See* 85 Fed. Reg. at 82,269 (citing *Corrales-Beltran*, 192 F.3d at 1319–20).

DEFS.' OPP. TO PLS.' MOT. FOR TRO
(FINAL TRANSIT RULE)
Case No. 3:17-cv-02366-BAS-KSC

ond time when they get to the top of the waitlist and are finally admitted and pro-
cessed."). Even if the Court were correct that class members arrived in the United
States before the IFR took effect, those class members *also* arrived in the United
States after it took effect—and thus are subject to the transit rule.

Plaintiffs nonetheless argue that, based on the Court's interpretation of the
INA's provisions in its motion-to-dismiss order, a duty to inspect and process class
members for asylum arose when the class members physically approached a U.S.
POE and were thus "in the process of arriving." *See* Mot. at 14; *Al Otro Lado*, 394
F. Supp. 3d at 1200; *see also id.* at 1199–1203. According to Plaintiffs, this means
that it is only the first "arrival" that is legally significant to whether the transit rule
applies. *See* Mot. at 14. Defendants continue to respectfully disagree with the
Court's interpretation of the relevant statutes. Yet, even crediting the Court's statu-
tory interpretation, in order for Plaintiffs' reasoning to be correct, metering must be
unlawful, and this Court has not so held. *See Al Otro Lado*, 952 F.3d at 1034 (Bress,
J., dissenting) ("[I]f metering *is* lawful, as the district court conceded may be case,
then the supposed 'legal bind' and 'quintessentially inequitable' government behav-
ior are nothing of the sort, but rather a natural consequence of the government's valid
enforcement of the immigration laws."). Rather, the Court acknowledged that "there
may exist potentially legitimate factors that prevent CBP officers from immediately"
processing undocumented aliens seeking to enter the ports. *Al Otro Lado*, 394 F.
Supp. 3d at 1212. And, as discussed below (*infra* § III.B.2), metering is lawful and
justified by the evidentiary record and by CBP's need to balance its multiple statu-
torily-mandated mission sets. Given this, class-wide injunctive relief is not appro-
priate.

Further, Plaintiffs' theory—that the Court's determination that the statutes at
8 U.S.C.§§ 1158(a)(1), 1225(a)(3), and 1225(b)(1)(A)(ii) apply to aliens who are "in
the process of arriving in" the United States controls to whom the Final Transit Rule
applies—would effectively mean that the Departments are not able to determine who

DEFS.' OPP. TO PLS.' MOT. FOR TRO
(FINAL TRANSIT RULE)
Case No. 3:17-cv-02366-BAS-KSC

is ineligible for asylum under their own regulation. This position is inconsistent with the express statutory authority to make such regulations. *See* 8 U.S.C. § 1158(b)(2)(C) ("The Attorney General may by regulation establish additional limitations and conditions, consistent with this section, under which an alien shall be ineligible for asylum under paragraph (1)."). The Court should thus reconsider its holding that the transit rule does not apply to provisional class members.

Metering is Lawful. Plaintiffs have also failed to demonstrate a likelihood of success on their actual claims. As an initial matter, Plaintiffs do not actually submit evidence or argument in support of their likelihood of success on their metering claims, instead incorporating arguments from their Motion for Summary Judgment by reference. Mot. at 15. This is improper, and the Court should not consider these arguments in support of Plaintiffs' Motion.

Nonetheless, Plaintiffs are unlikely to succeed on their claims that CBP's metering policy violates the INA, the APA, or due process, with respect to the class or to the provisional subclass. As Defendants have shown in their own summary judgment briefing, metering is an appropriate and lawful practice that allows POEs to control intake of undocumented aliens—whose applications for admission are resource intensive and who must be held by CBP pending transfer to another agency—to ensure safe and sanitary conditions sufficient resources to implement priority missions such as national security and counter-narcotics. Metering is statutorily permissible and consistent with Congress's scheme requiring the elevation of DHS's national-security function over all others as well as a reasonable exercise of CBP's broad discretion to allocate its limited resources to accomplish its many statutory functions. Defs.' MSJ at 40-44, 53-54. Metering is not a policy of withholding of mandatory agency action, both because the statutes do not mandate any action with respect to those outside the United States (as are those who are subject to metering) and because CBP did not deny undocumented aliens to the asylum process even when metering, but continued to process tens of thousands of such individuals at

DEFS.' OPP. TO PLS.' MOT. FOR TRO
(FINAL TRANSIT RULE)
Case No. 3:17-cv-02366-BAS-KSC

POEs. *Id.* at 37-40. Further, CBP and DHS's decisions regarding metering were each well supported by the factual record before the agency, were logical and coherent, and were the product of reasoned decisionmaking; they were not based on "pretext" but were motivated by real capacity concerns and constraints. *Id.* at 44-53. In any event, Plaintiffs cannot establish that metering is unlawful in every case, as would be required for class-wide relief.

For these reasons, Plaintiffs cannot demonstrate a likelihood of success on their metering challenge or on their argument that the Final Transit Rule does not apply to provisional class members, and a TRO is not warranted.

## C.    Considerations of Irreparable Harm and the Equities Favor the Government.

The party seeking a preliminary injunction must show that the balance of equities tips in his favor, that the injunction sought is in the public interest, and that he would suffer irreparable harm without the injunction. *Winter*, 555 U.S. at 20. Although the Court previously determined that these factors favored entering the PI Order, Defendants respectfully ask the Court to reconsider that analysis here.

First, an injunction would frustrate the "wide public interest in effective measures to prevent" irregular migration at the southern border. *United States v. Cortez*, 449 U.S. 411, 421 n.4 (1981). The United States experienced an "overwhelming surge" of aliens crossing at the southern border, 84 Fed. Reg. at 33,840, and the IFR and the Final Transit Rule represent the Executive's effort to address that surge. *See* 85 Fed. Reg. at 82,260 at nn.1, 3 (incorporating by reference the preamble to the IFR). Second, the injunction would undermine "sensitive and weighty interests of . . . foreign affairs," *Holder v. Humanitarian Law Project*, 561 U.S. 1, 33–34 (2010), by preventing the implementation of a Rule that is designed to "better position the United States" in "ongoing diplomatic negotiations" with regional partners, 85 Fed. Reg. at 88,260. Third, the injunction would frustrate the government's and the public's strong interest in a well-functioning asylum system.

As stated in the IFR, "[i]mmigration courts received over 162,000 asylum [claims] in FY 2018, a 270 percent increase from five years earlier." 84 Fed. Reg. at 33,838. That burden is "extreme" and "unsustainable," and the transit rule seeks to address it by "encourag[ing] those fleeing genuine persecution to seek protection as soon as possible and dissuade those with non-viable claims." *Id.* at 33,831, 33,838, 33,842. For these reasons, the PI Order has imposed a significant burden on government agencies not parties to this litigation, and an injunction of the Final Transit Rule would perpetuate those burdens and continue to strain the immigration system. Asylum officers and immigration judges have had to inject ad hoc fact-finding procedures into what should be an *expedited* removal process to identify provisional subclass members who seek asylum in different administrative contexts, and have been interviewed by different asylum officers or appeared before different immigration judges. *See, e.g.*, Shinners Decl. Exs. C-D. These burdens are significant and should not continue to be imposed.

At the same time, the Final Transit Rule does not impose a significant burden on the provisional subclass members.[6] As with the IFR, the Final Transit Rule potentially denies them a purely discretionary benefit, and it allows them to seek other forms of protection from removal, including withholding of removal and CAT protection. Moreover, the asylum-eligibility bar in the Final Transit Rule cannot currently be applied during any new credible fear determinations or review thereof, because the regulations containing the relevant procedures were enjoined in separate litigation. *Pangea Legal Servs.*, 2021 WL 75756, at *7; *supra* at 7. Thus, as the eli-

---

[6] Plaintiffs surprisingly claim that "appropriate [final] injunctive relief would include an order directing that those class members who would have crossed the southern border prior to July 16, 2019, … should have their asylum claims adjudicated based on the law that was then in place," despite the fact that they have not sought similar relief in their operative complaint or in their recently-filed motion for summary judgment. SAC ¶ 304; Pls.' MSJ at 38-39.

DEFS.' OPP. TO PLS.' MOT. FOR TRO
(FINAL TRANSIT RULE)
Case No. 3:17-cv-02366-BAS-KSC

gibility bar cannot currently be applied during expedited removal proceedings (subject to additional rules taking effect or additional regulatory developments), there is no imminent impact to provisional class members in those proceedings, let alone irreparable harm.

Further, Plaintiffs' argument that an injunction is necessary to prevent aliens from being removed is also not well-taken. Mot. at 16-17. As an initial matter, anyone in regular removal proceedings may raise a challenge to removal in those proceedings, and *only* in those proceedings. *See supra* Part I (discussing §§ 1252(a)(5), (b)(9)). For those in expedited removal, Congress set forth a limited mechanism for review in the District of the District of Columbia, and individual aliens sought review of the IFR pursuant to that mechanism. *See CAIR*, 471 F. Supp. 3d 25 (D.D.C. 2020). Further, asylum is a purely discretionary benefit, not an entitlement, *INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 n.6 (1987); 8 U.S.C. § 1158(b)(1)(A), and it ordinarily makes little sense to describe the denial of a discretionary benefit as irreparable harm. That is especially so when "[o]nly a small minority" of asylum claims are meritorious to begin with. 84 Fed. Reg. at 33,831; *see also* 85 Fed. Reg. at 82,272 ("over the years, the vast majority of asylum claims have been unsuccessful"). Moreover, removal of a class member after application of the transit rule would be an entirely self-inflicted injury because provisional class members had the opportunity to avoid application of the transit rule by seeking protection in Mexico to comply with the terms of the rule, and Plaintiffs concede this is a remedy that was still available to them. *See* Pls.' PI Br. (ECF No. 294-1) at 12 ("it is possible to seek a waiver of [Mexico's] 30-day bar"). If Mexico were to reject their claims, then the class members could present that evidence to the appropriate agency decisionmaker. *See* 84 Fed. Reg. at 33,831, 33,843. And even class members who refused to take the steps laid out in the transit rule remain eligible for other non-discretionary forms of protection in the United States, such as withholding of removal and CAT protection. Indeed, Plaintiffs have identified to the Court several

1    class members who were denied asylum, but granted withholding of removal, while
2    the PI Order was not in effect. Shinners Decl. Exs. E-F.

3         Plaintiffs argue that the equities tip in their favor because the "'government is
4    now so broadly interpreting a regulation that could have, but did not, include those
5    who were metered.'" Mot. at 18 (citing PI Order at 35). Yet, as explained above,
6    both the IFR and the Final Transit Rule *do* apply to those who were metered before
7    the IFR's effective date. *See supra* Section III.B.1. The government always intended
8    as much, based on the longstanding meaning of the terms "arrives in," "enters," and
9    "attempts to enter" in the immigration context (which meaning this Court did not
10   disagree with until its motion-to-dismiss opinion issued two weeks *after* the IFR was
11   issued), and the government confirmed its intent in the preamble to the Final Transit
12   Rule. The fact that the government planned to enforce the rule prospectively in line
13   with this longstanding meaning and its own intent does not amount to inequitable
14   conduct. Considerations of the hardships and the balance of the equities weigh
15   strongly in Defendants' favor, not Plaintiffs'.

16   **IV.    The Court Should Reject Plaintiffs' Request for Retrospective Relief**

17        Even if the Court were to order the relief requested by Plaintiffs, it should
18   reject Plaintiffs' proposed order to the extent it asks the Court to reopen or reconsider
19   past asylum denials based on the Final Transit Rule. Proposed Order ¶ 3. The Final
20   Transit Rule does not take effect until January 19, 2021. Accordingly, if the Court
21   were to enjoin the rule before January 19, 2021, there will be no need for such ret-
22   rospective relief.

23   **CONCLUSION**

24        For the foregoing reasons, the Court should deny Plaintiffs' Motion for Tem-
25   porary Restraining Order.
26   *//*

27
28

DEFS.' OPP. TO PLS.' MOT. FOR TRO
(FINAL TRANSIT RULE)
Case No. 3:17-cv-02366-BAS-KSC

DATED: January 13, 2021                Respectfully submitted,

                                       JEFFREY BOSSERT CLARK
                                       Acting Assistant Attorney General
                                       Civil Division

                                       WILLIAM C. PEACHEY
                                       Director

                                       */s/ Katherine J. Shinners*
                                       KATHERINE J. SHINNERS
                                       Senior Litigation Counsel
                                       United States Department of Justice
                                       Civil Division
                                       Office of Immigration Litigation
                                       District Court Section
                                       P.O. Box 868, Ben Franklin Station
                                       Washington, D.C. 20044
                                       Tel: (202) 598-8259 | Fax: (202) 305-7000
                                       katherine.j.shinners@usdoj.gov

                                       ALEXANDER J. HALASKA
                                       DHRUMAN Y. SAMPAT
                                       Trial Attorneys

                                       *Counsel for Defendants*

DEFS.' OPP. TO PLS.' MOT. FOR TRO
(FINAL TRANSIT RULE)
Case No. 3:17-cv-02366-BAS-KSC

# CERTIFICATE OF SERVICE

*Al Otro Lado v. Wolf*, No. 17-cv-02366-BAS-KSC (S.D. Cal.)

I certify that I served a copy of this document on the Court and all parties by filing this document with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all counsel of record.

DATED: January 13, 2021                    Respectfully submitted,

                                           */s/ Katherine J. Shinners*
                                           KATHERINE J. SHINNERS
                                           Senior Litigation Counsel
                                           United States Department of Justice

DEFS.' OPP. TO PLS.' MOT. FOR TRO
(FINAL TRANSIT RULE)
Case No. 3:17-cv-02366-BAS-KSC