MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, DC 20006
Telephone:  +1.202.263.3000
Facsimile:  +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, DC 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Peter T. Gaynor,[1] *et al.*,<br><br>Defendants. | Case No.:  17-cv-02366-BAS-KSC<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Special briefing schedule ordered<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

---

[1] Acting Secretary Gaynor is automatically substituted for the former Acting Secretary. *See* Fed. R. Civ. P. 25(d).

REPLY IN SUPP. OF PLS' MOT. FOR TRO

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, DC 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................ 1

I. This Court Clearly Has the Authority to Enjoin the Application of the Second Asylum Ban to the Provisional Class ................................................. 2

II. As the Government Concedes, this Court Should Issue a TRO ..................... 3

    A. Plaintiffs Are Likely to Succeed on the Merits ................................... 5

    B. The Remaining Factors Decisively Favor Injunctive Relief ............... 8

CONCLUSION ......................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Otro Lado, Inc. v. Wolf*,
  952 F.3d 999 (9th Cir. 2020) ................................................................... 1, 5, 6, 8

*Ali v. U.S.C.I.S.*,
  2010 WL 5252875 (S.D. Fla. 2010) ................................................................. 6

*DHS v. Thuraissigiam*,
  140 S. Ct. 1959 (2020) ................................................................................. 2, 3

*ICE v. Padilla*,
  2021 WL 78039 (U.S. Jan. 11, 2021) ................................................................ 3

*Kamal v. Eden Creamery, LLC*,
  2019 WL 2617041 (S.D. Cal. 2019) ................................................................. 5

*Kisor v. Wilkie*,
  139 S. Ct. 2400 (2019) ....................................................................................... 7

*Pangea Legal Servs. v. U.S. Dep't of Homeland Security*,
  2021 WL 75756 (N.D. Cal. 2021) ............................................................. 1, 10

*Matter of Patel*,
  20 I&N Dec. 368 (BIA 1991) .......................................................................... 6

*Sale v. Haitian Centers Council*,
  509 U.S. 155, 162 n.11 (1993) ........................................................................ 6

*Salehpour v. INS*,
  761 F.2d 1442 (9th Cir. 1985) ......................................................................... 8

*United States v. Corrales-Beltran*,
  192 F.3d 1311 (9th Cir. 1999) ......................................................................... 6

*United States v. Hook*,
  195 F.3d 299 (7th Cir. 1999) ........................................................................... 2

**Statutes**

1 U.S.C. § 1 ................................................................................................................. 6

8 U.S.C. § 1158(a) ............................................................................................. 5, 6, 9

8 U.S.C. § 1225(b)(1)(A)(ii) .................................................................................. 5, 9

8 U.S.C. § 1252(a)(2)(A)(iii) ..................................................................................... 2

8 U.S.C § 1252(f)(1) .................................................................................................. 3

8 U.S.C. § 1326 ......................................................................................................... 6

28 U.S.C. § 1651 ....................................................................................................... 4

Pub. L. No. 104-208 (1996) ...................................................................................... 6

**Other Authorities**

Fed. R. Civ. P. 30(b)(6) ......................................................................................... 6, 7

REPLY IN SUPP. OF PLS' MOT. FOR TRO

ii

# INTRODUCTION

Last week, a district court warned the government that "recycl[ing] exactly the same legal and factual claims" in search of a different outcome is a "troubling litigation strategy," as "the government keeps crashing the same car into the gate, hoping it might break through." *Pangea Legal Servs. v. U.S. Dep't of Homeland Security*, 2021 WL 75756, at *4 (N.D. Cal. 2021) (granting preliminary injunction). The same admonition applies here with particular force. The government's opposition is based on the remarkable premise that it is right and this Court's years of substantive opinions are wrong. But that is what appeals are for, not agency rule-making. Indeed, the government has filed multiple appeals related to the preliminary injunction prohibiting it from applying the Asylum Ban to provisional class members. The Ninth Circuit has ruled—twice—that the government is unlikely to prevail on the merits of those appeals. *See Al Otro Lado, Inc. v. Wolf*, 952 F.3d 999, 1013 (9th Cir. 2020); Dkt. 668. The government may not simply circumvent this process by issuing a substantively identical Second Asylum Ban ("SAB").

***Significantly, the government concedes that this Court "could use the reasoning it used before to enter a new order enjoining application of" the Second Asylum Ban***. Opp. at 1.[2] That dooms the government's opposition. Nevertheless, the government claims that this Court should undo nearly every substantive opinion it has issued in this case, including its statutory interpretation of the INA, which the Ninth Circuit has commended as having "considerable force" and "likely correct," *Al Otro Lado*, 952 F.3d at 1013. Relying on just six exhibits previously submitted to this Court and precisely the same arguments that this Court rejected at the motion to

---

[2] "Opp." refers to the government's opposition to Plaintiffs' motion for a temporary restraining order. *See* Dkt. 667. "Op. Ex." refers to the exhibits offered in support of Plaintiffs' motion for a temporary restraining order. *See* Dkts. 658-3, 658-4. "Pls' Br." refers to Plaintiffs' memorandum in support of their motion for a temporary restraining order. *See* Dkt. 658-1. "PI" and "preliminary injunction" refer to this Court's November 19, 2019 preliminary injunction order. *See* Dkt. 330. "PI Class" and "provisional class" refer to the class that this Court provisionally certified on November 19, 2019. *See* Dkt. 330.

dismiss and preliminary injunction phases of this case, the government "urge[s] the Court to reconsider . . . [the] reasoning" of its prior rulings, Opp. at 1, merely because it issued the exact same rule as before with a patina of post-hoc rationalization. This rationalization is not entitled to any deference. As a result, this Court should issue a temporary restraining order enjoining the application of the Second Asylum Ban to provisional class members and ordering the government to return to the pre-Ban practices for processing their asylum claims.

## I. This Court Clearly Has the Authority to Enjoin the Application of the Second Asylum Ban to the Provisional Class

Knowing full well that the reasoning of the Court's prior opinions justifies issuing the relief Plaintiffs seek, Defendants assert that the Court lacks the power to grant a TRO or to enforce its prior orders. The government's arguments fail.

***First***, the government makes a half-hearted attempt to cast *DHS v. Thuraissigiam*, 140 S. Ct. 1959 (2020) as an "intervening Supreme Court case that is in tension with this Court's [preliminary injunction] ruling." Opp. at 9. But the only portion of *Thuraissigiam* that the government cites with any specificity is ***the syllabus***. *Id.* at 10 (citing "*Thuraissigiam*, 140 S. Ct. at 1961"); *see also United States v. Hook*, 195 F.3d 299, 308 (7th Cir. 1999) ("We do not grant precedential authority to the syllabus of a Supreme Court decision."). Even if the government had cited the proper portion of the opinion, *Thuraissigiam* hardly breaks new ground. It merely summarizes 8 U.S.C. § 1252(a)(2)(A)(iii) as preventing courts from reviewing "the determination" that an individual noncitizen "lacks credible fear of persecution." *Thuraissigiam*, 140 S. Ct. at 1966. But, as this Court has already held, Plaintiffs are not seeking to overturn the government's determination that an individual lacks a credible fear of persecution. To the contrary, Plaintiffs seek to protect PI class members' ability to access the asylum process *at all*—whether through a credible fear interview or directly in removal proceedings—as was their right at the time PI class members were arriving in the United States. Therefore, as

this Court has already held, its "determination at the injunction stage, therefore, is not a 'review' of decisions related to expedited removal, and these sections [of the INA] do not apply to divest this Court of jurisdiction." *Id.* at 16.

The government speculates that *Thuraissigiam* supports its interpretation of 8 U.S.C § 1252(f)(1) because the Supreme Court recently issued an order vacating and remanding a case concerning ICE's alleged policy and practice of holding asylum seekers without an opportunity for a bond hearing. *See ICE v. Padilla*, 2021 WL 78039, at *1 (U.S. Jan. 11, 2021). This supposition is dubious. Section 1252(f)(1) appears nowhere in *Thuraissigiam. See generally Thuraissigiam*, 140 S. Ct. 1959. Moreover, the government did not suggest that *Thuraissigiam* had any relevance to § 1252(f)(1) in its petition for certiorari in *Padilla. See*, Petition for Writ of Certiorari at 13, 18-25, 28, 29, *Dep't of Homeland Sec. v. Padilla*, No. 20-234 (U.S. Aug. 24, 2020), *available at* shorturl.at/fglxG.

***Second***, the government relies on formalism to claim that because the Second Asylum Ban is a new, final rule, this Court cannot modify its prior preliminary injunction to encompass it or enjoin the Second Asylum Ban by enforcing the prior preliminary injunction. Not so. Executive branch agencies have no authority to supplant this Court's decision about the unambiguous plain meaning of a regulation with their preferred interpretation. Pls' Br. at 8-10; Dkt. 330 at 31-32; *see infra* II.A. The government was aware of this Court's interpretation when it issued the Second Asylum Ban. Rather than change the language of the regulation, it decided to ignore this Court. SAB at 82,268 n.22. That it cannot do. Moreover, the Second Asylum Ban plainly violates this Court's order that the government "return to the pre-Asylum Ban practices for processing the asylum applications of members of the [provisional] class." Dkt. 330 at 36. Thus, this Court may fashion relief in the form of a modification of the earlier preliminary injunction or simply enforcing its prior order.

**II.     As the Government Concedes, this Court Should Issue a TRO**

As the government concedes, this Court's prior rulings demonstrate that this

Court should issue a TRO with respect to the Second Asylum Ban. *See* Opp. at 1. The government also profoundly misunderstands the equitable authority the court possesses to enjoin its conduct. Contrary to the government's suggestion, Plaintiffs do not seek to enjoin the government's authority, *vel non*, to engage in new rulemaking. *See* Opp. at 11-12. Plaintiffs invoke the Court's authority to enjoin any attempt of the government to *apply* the new, substantively identical Second Asylum Ban to class members, for precisely the same reason it enjoined the First Asylum Ban. No amount of government formalism can escape the substantively binding force of the Court's prior PI.

First, as detailed in Plaintiffs' opening brief, the court possesses ample authority to make what would be a merely ministerial modification to the original terms of the preliminary injunction of the First Asylum Ban to extend it to the substantively identical functioning of the Second Asylum Ban. *See* Pls' Br. at 11-12. Second, the All Writs Act, 28 U.S.C. § 1651 ("AWA") offers an independent basis for granting injunctive relief, which the government continues to misunderstand. *See* Dkt. 330 at 19-21. Contrary to the government's understanding, Plaintiffs do not invoke the AWA as a substantive ground to invalidate the metering process and thereby resolve Plaintiffs' claims on the merits. As before, Plaintiffs invoke the AWA to prevent the government from effectively extinguishing Plaintiffs' substantive claims pending before this Court, by applying new, categorical asylum prohibitions to class members who should be entitled to invoke the rules in effect prior to the issuance of either the First or now, the Second Asylum Ban. *See* Dkt. 330 at 20. That is precisely what the PI does, and what an AWA injunction of the Second Asylum Ban would do. *See* Dkt. 610 at 16 n.11 (noting further briefing on remedy will be appropriate). Moreover, the government completely ignores the case law establishing this Court's independent AWA authority to issue an order to protect the integrity of the PI, which the Final Asylum Ban seeks to undermine. *See* Dkt. 658-1 at 12.

In addition, Plaintiffs are likely to succeed on the merits because the Second Asylum Ban plainly contradicts the reasoning and holdings of this Court's preliminary injunction and motion to dismiss rulings. The irreparable harm and balance of the equities also favor Plaintiffs because the government is attempting to recreate the same "quintessentially inequitable" situation that this Court's prior preliminary injunction ruling sought to remedy. Dkt. 330 at 34. The government offers no availing argument to the contrary.

### A.   Plaintiffs Are Likely to Succeed on the Merits[3]

***This Court's statutory construction is correct.*** Relying on an argument that has now failed *three* times,[4] the government claims that an asylum seeker who was in the process of arriving in the U.S. at a port of entry prior to July 16, 2019, but was turned back, will only arrive in the U.S. after July 16, 2019. Opp. at 17-19. At the heart of the government's statutory interpretation is its contention that "arrive" has the same meaning as "enter" and "attempt to enter," and all three "require physical presence in the United States." Opp. at 17. But sections 1158(a)(1) and 1225(b)(1)(A)(ii) of the INA refer to a noncitizen "who arrives in the United States," 8 U.S.C. § 1158(a)(1), or "is arriving in the United States," 8 U.S.C. § 1225(b)(1)(A)(ii). Section 1158(a)(1) separately refers to a noncitizen "who is physically present in the United States." 8 U.S.C. § 1158(a)(1). As this Court explained at length in its motion to dismiss opinion, the rule against surplusage; the Dictionary Act, 1 U.S.C. § 1; the plain language of the statute; and the legislative history of the provisions all support a single conclusion: noncitizens who are in the process of arriving in the United States, but who are not physically present in the

---

[3] In a one-sentence footnote that cites no case law, the government claims this Court's provisional class certification decision was wrongly decided. But, "[m]uch like th[is] Court '[d]oes not expect to find elephants in mouseholes, [it] does not expect to find dispositive arguments in footnotes." *Kamal v. Eden Creamery, LLC*, 2019 WL 2617041, at *8 n.5 (S.D. Cal. 2019) (Bashant, J.) (internal citation and quotation marks omitted).

[4] *See, e.g.*, Dkt. 280 at 35-47; Dkt. 330 at 30-32; *Al Otro Lado*, 952 F.3d at 1010-14.

U.S., are "arriving in the United States" and required to be inspected and processed. Dkt. 280 at 35-44.

None of the government's cases support a different conclusion. *Matter of Patel*, 20 I&N Dec. 368, 370 (BIA 1991), was decided before the phrase "who arrives in the United States" was added to section 1158(a) in 1996. *See Al Otro Lado*, 952 F.3d at 1012 (cataloging statutory changes); Pub. L. No. 104-208, 110 Stat. 3009 (1996). Thus, it relies on "out-dated entry doctrine." *Ali v. U.S.C.I.S.*, 2010 WL 5252875, at *3 (S.D. Fla. 2010). Likewise, *Sale v. Haitian Centers Council*, relies on the same pre-1996 version of section 1158(a) and deals with the interdiction of noncitizens on the high seas (*i.e.*, nowhere near U.S. territory). 509 U.S. 155, 162 n.11 (1993) (quoting 8 U.S.C. § 1158(a) (1980)); *see also* Dkt. 280 at 41-43 (rejecting presumption of extraterritoriality).

The only post-1996 case cited by the government, *United States v. Corrales-Beltran*, 192 F.3d 1311 (9th Cir. 1999), involved a prosecution for attempted reentry in violation of 8 U.S.C. § 1326. The passage of the opinion cited in the government's opposition and the Second Asylum Ban examines whether the attempted reentry is a separate criminal offense. *Id.* at 1319-20; *see also* Opp. at 17; SAB at 82,269. At most it defines "attempt" as "to make an effort at; try; undertake," and notes that making such an effort at illegal entry is itself a crime. 192 F.3d at 1319. As this Court has previously found, the provisional class members were clearly *trying* to enter the United States at a port of entry. Dkt. at 31. As the government's Rule 30(b)(6) witness was forced to admit, all asylum seekers that show up at a port of entry are *trying* to come to the U.S. Op. Ex. 1 at 199:2-200:2, 201:22-202:3.[5]

---

[5] The government claims that its 30(b)(6) witness was only offering her "colloquial understanding" of the term "attempt to enter." Opp. at 19 n.5. But the witness was a Rule 30(b)(6) witness who spent 30-40 hours preparing to testify, Op. Ex. 1 at 27:18-25, including meetings with legal counsel, *id.* at 34:23-36:13, multiple interviews with Office of Field Operations staff, *id.* at 30:22-34:11, and her own review of documents and deposition testimony, *id.* at 28:1-19, 36:14-23. She was testifying after being shown a copy of a training presentation that contained a definition of the

The government even has the temerity to argue that not only is its interpretation somehow "better," it is "authoritative" and "entitled to deference." Opp. at 18. But this argument is based on a misreading of *Kisor v. Wilkie*, 139 S. Ct. 2400, 2412 (2019). *Kisor* held that deference "can arise only if a regulation is genuinely ambiguous . . . even after a court has resorted to all the standard tools of interpretation." *Id.* at 2414. "[A] court cannot waive the ambiguity flag" at the outset of its analysis. *Id.* at 2415. It must "exhaust all 'traditional tools' of construction," including "carefully consider[ing] the text, structure, history, and purpose" of the regulation and the statutory framework in which it rests. *Id.* That is precisely what this Court did in its prior preliminary injunction opinion. *See* Dkt. 330 at 30-32. And the government's invocation of *Kisor* does nothing to change that analysis.

Moreover, the government's alternative interpretation of the regulation—suggesting that the First and Second Asylum Bans apply to class members because they will arrive *again* in the United States after the effective date of the new rule, Opp. at 20—also is inconsistent with this Court's and the Ninth Circuit's prior orders and is due no deference. Defendants misrepresent the majority opinion denying the motion to stay the PI in suggesting otherwise. *See* Opp. at 19-20. In fact, the Ninth Circuit concluded, "[t]he government does not have a strong chance of succeeding on this point. It is the INA, not the Rule, that makes an alien's first arrival legally significant. *Under the district court's statutory interpretation*, a class member's first arrival triggered a statutory right to apply for asylum and have that application considered. . . . As the Rule was not in place at the time each class member's right to apply for asylum attached, it makes sense that it would not apply." *Al Otro Lado*, 952 F.3d at 1014 (emphasis added). Because both this Court and the Ninth Circuit found the regulation unambiguous on this point, the agencies' interpretation is due

---

term "attempt to enter." *See* Dkt. 533-19 at 199:20-201:21. This was not a conversation with someone plucked off the street about the meaning of "attempt to enter." The only reasonable interpretation is that Ms. Marin was testifying about the phrase "attempt to enter" as the government understands it.

no deference. *Cf. Salehpour v. INS*, 761 F.2d 1442, 1447 (9th Cir. 1985) ("Where the objective criteria of a regulation are clearly met, there is no room for an agency to interpret a regulation so as to add another requirement.").

The government's repetition of its thrice-failed arguments do not move the needle. Plaintiffs are likely to prevail on the merits.

***The Turnback Policy Is Illegal.*** In their opening brief, Plaintiffs showed by citation to the voluminous summary judgment record that the government's turnback policy is illegal. This evidence included admissions that (1) CBP officers lied to asylum seekers about the capacity of ports of entry when turning them back to Mexico; (2) CBP officers told union representatives that the turnback policy broke the law; (3) then-DHS Secretary Nielsen was told that fully implementing the turnback policy would cause hundreds of asylum seekers to be turned back each day, but implemented it anyway; and (4) a blockbuster report from DHS' Office of Inspector General supported nearly every aspect of Plaintiffs' case. Pls' Br. at 5-6. Finally, the government's only excuse for implementing the turnback policy—that it wanted to make processing asylum seekers a lower priority—is itself a violation of the Homeland Security Act. *See* Dkt. 585 at 1-4. The government's only response is a series of high-level citations to its summary judgment papers. Opp. at 21-22. The government does not even attempt to deal with the damning factual record cited in Plaintiffs' opening brief. *Id.*

For all of these reasons, Plaintiffs are likely to succeed on the merits.

**B.    The Remaining Factors Decisively Favor Injunctive Relief**

In its prior preliminary injunction ruling, this Court held that provisional class members "are simply seeking an opportunity to have their asylum claims heard." Dkt. 330 at 34. The class members relied on the government's statement that they would be permitted to enter the U.S. when there was sufficient space to inspect and process them. *Id.* at 33. The First and Second Asylum Bans effectuate "a shift that can be considered, at best, misleading, and at worst, duplicitous" by pulling the rug

out from under them and barring them from having meaningful access to the U.S. asylum process. *Id.* As before, "[t]his situation, at its core, is quintessentially inequitable." *Id.* at 34.

The government's scattershot arguments for "reconsideration" of this prior holding all miss the mark. The government asserts that the asylum seekers in the provisional class represent "irregular migration" that must be "prevent[ed]." Opp. at 22. Not so. The class members are asylum seekers that are following the law by seeking asylum through the statutorily prescribed channel of arriving at a port of entry. Dkt. 330 at 33. Next, the government alleges that there is a "surge" in asylum seekers coming to the border and that an injunction would undermine a "well-functioning asylum system" Opp. at 22. This argument is hard to take seriously. It is the government that intentionally broke the asylum system by knowingly turning back hundreds of asylum seekers each day—despite the fact those asylum seekers were arriving in the U.S.—based on the lie that ports of entry had reached capacity. The government then claims that the Second Asylum Ban would undermine the Trump Administration's "ongoing diplomatic negotiations" with Mexico and Central American countries. Opp. at 22. One wonders what sort of sensitive diplomacy could possibly be conducted in the final 36 hours of the Trump Administration. At any rate, the government's desire to conduct diplomatic negotiations does not outweigh the provisional class' interest in accessing the asylum process as required by 8 U.S.C. §§ 1158(a)(1) and 1225(b)(1)(A)(ii). Finally, the government resurrects the old chestnut of administrative convenience. Opp. at 23. It claims that asylum officers will be required to make determinations about class membership, which will slow down asylum interviews. *Id.* As this Court has found multiple times, this purported burden "was caused by Defendants." Dkt. 641 at 2; *see also* Dkt. 668 at 7 ("the Government's alleged harms arise mostly from poor recordkeeping").

The government also suggests that because lesser forms of immigration relief

are available and because another court recently enjoined a similar rule, Plaintiffs will not be harmed. That makes no sense. Even the government does not argue that withholding of removal or relief under the Convention Against Torture is the same as asylum. Opp. at 23-24. Nor does the government cite a single case that has enjoined the Second Asylum Bam. *Id.*[6] These arguments are, at best, red herrings. As a parting shot, the government claims that if a class member is deported under the Second Asylum Ban, that is the asylum seeker's fault. *Id.* at 24. This glib attempt to absolve the government's wrongdoing is particularly galling. It is the government that lied to the class members and then changed the rules. The class members merely ask the government to do what the INA requires.

* * *

The government offers no compelling reason for the Court to reconsider its prior reasoning or decline to grant a TRO. In light of the government's history of non-compliance with the preliminary injunction, Plaintiffs request that any additional relief afforded with respect to compliance with the original preliminary injunction also apply to the Second Asylum Ban. *See* Dkt. 665 at 10 n.6.

## CONCLUSION

For the foregoing reasons, and those explained in their opening brief, Plaintiffs' motion for a temporary restraining order should be granted.

Dated: January 15, 2021

    MAYER BROWN LLP
        Matthew H. Marmolejo
        Ori Lev
        Stephen M. Medlock

    SOUTHERN POVERTY LAW CENTER
        Melissa Crow
        Sarah Rich

---

[6] The case the government points to, *Pangea Legal Services v. DHS*, 2021 WL 75756, at *7 (N.D. Cal. 2021), enjoined a separate rule that made changes to procedures governing credible fear interviews. Opp. at 23. It did not enjoin the operative provisions of the Second Asylum Ban.

Rebecca Cassler

CENTER FOR CONSTITUTIONAL RIGHTS
   Baher Azmy
   Angelo Guisado

AMERICAN IMMIGRATION COUNCIL
   Karolina Walters

By: */s/ Stephen M. Medlock*
   Stephen M. Medlock

*Attorneys for Plaintiffs*

REPLY IN SUPP. OF PLS' MOT. FOR TRO

11

# CERTIFICATE OF SERVICE

I certify that I caused a copy of the foregoing document to be served on all counsel via the Court's CM/ECF system.

Dated: January 15, 2021                MAYER BROWN LLP


                                       By */s/ Stephen M. Medlock*