# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AL OTRO LADO, *et al.*, <br><br> Petitioners, <br><br> v. <br><br> PETER T. GAYNOR, Acting Secretary of Homeland Security, *et al.*, <br><br> Respondents. | Case No. 17-cv-02366-BAS-KSC <br><br> **TEMPORARY RESTRAINING ORDER** |

Before the Court is Plaintiffs' Motion for a Temporary Restraining Order ("Motion") requesting that the Court prohibit Defendants from applying yet another regulation— titled Asylum Eligibility and Procedural Modification, 85 Fed. Reg. 82,260 (Dec. 17, 2020) ("Final Transit Rule")—to members of the provisional class previously certified by this Court. (ECF No. 658.) Defendants oppose the Motion and Plaintiffs reply. (ECF Nos. 667, 670.) For the reasons stated below, the Court **GRANTS** Plaintiffs' Motion and temporarily restrains Defendants from applying this regulation to provisional class members.

**I.   BACKGROUND**

Plaintiffs' underlying claims in this case concern Defendants' purported "Turnback Policy," which included a "metering" or "waitlist" system in which asylum-seekers at the southern border were instructed "to wait on the bridge [at a port of entry], in the pre-inspection area, or at a shelter"—or were simply told that "they [could not] be processed because the ports of entry [were] 'full' or 'at capacity[.]'" (Second Am. Compl. ¶ 3, ECF

No. 189.) Plaintiffs allege that this policy was intended to deter individuals from seeking asylum in the United States, in violation of constitutional, statutory, and international law. (*Id.* ¶¶ 3, 5, 72–83.) The Court has certified the class in this underlying dispute. (ECF No. 513.) The parties have also filed and briefed cross motions for summary judgment that await resolution. (ECF Nos. 535, 563.)

During the pendency of this action, Defendants have promulgated new asylum eligibility regulations—including the Final Transit Rule—that have threatened the preservation of the underlying class of metered asylum-seekers. This has led to a morass of litigation ancillary to the primary case regarding the lawfulness of Defendants' metering practices. The Court summarizes this byzantine procedural history below.

**A.  Asylum Ban**

On July 16, 2019, Defendants promulgated a regulation entitled "Asylum Eligibility and Procedural Modifications"—also known as the "Asylum Ban" or the "Interim Final Rule" ("IFR").[1] 84 Fed. Reg. 33,829 (July 16, 2019), *codified at* 8 C.F.R. §§ 208.13(c)(4), 1208.13(c)(4). Among other things, the rule renders asylum seekers who enter, attempt to enter, or arrive at the United States-Mexico border after July 16, 2019 ineligible for asylum if they transit through at least one country, other than their country of origin, and fail to apply for any available humanitarian protection in that country.

Plaintiffs moved for a preliminary injunction and provisional class certification to partially enjoin the application of the IFR to asylum-seekers from countries other than Mexico who were metered before its effective date. (ECF Nos. 293, 294.) They argued that: (1) the provisional class was prevented from accessing the asylum process before the effective date of the IFR only because they were subject to Defendants' unlawful metering practices; and (2) the IFR, if applied to this class, would preclude these individuals from obtaining any form of humanitarian protection, since they their 30-day window to apply for asylum in Mexico—a country through which they transited—had already expired.

---

[1] Because the Final Transit Rule refers to this initial regulation as the IFR, the Court does the same in this Order for the sake of clarity.

On November 19, 2019, the Court granted Plaintiffs' Motions. (Prelim. Inj., ECF No. 330.) The Court's order was partly based on its previous finding that Plaintiffs located on Mexican soil at the time they were metered were "arriving in" the United States for purposes of asylum under the plain language of the Immigration and Nationality Act ("INA"). (*See id.* at 4–5 (citing *Al Otro Lado v. McAleenan*, 394 F. Supp. 3d 1168, 1199–1201 (S.D. Cal. 2019)).) In its concluding paragraph, the Court issued the following order:

> The Court provisionally certifies a class consisting of "all non-Mexican asylum seekers who were unable to make a direct asylum claim at a U.S. POE before July 16, 2019 because of the U.S. Government's metering policy, and who continue to seek access to the U.S. asylum process."
>
> …
>
> Defendants are hereby **ENJOINED** from applying the Asylum Ban to members of the aforementioned provisionally certified class and **ORDERED** to return to the pre-Asylum Ban practices for processing the asylum applications of members of the certified class.

(*Id.* at 36.)

Defendants appealed the Preliminary Injunction to the Ninth Circuit. (ECF No. 335.) After granting an administrative stay on December 20, 2019, the Ninth Circuit denied Defendants' motion to stay the Preliminary Injunction on March 5, 2020. (ECF Nos. 369, 418.) The court heard oral argument on July 10, 2020 on the merits of the appeal but issued an order on December 2, 2020 holding the proceedings in abeyance pending issuance of the mandates in two related cases. (ECF No. 636.)

### B.     Subsequent Litigation

While this underlying appeal of the Preliminary Injunction has been pending, several disputes related to the Preliminary Injunction or the provisionally certified class have arisen between the parties.

First, Plaintiffs moved for a temporary restraining order similar to the instant motion but concerning a different regulation, "Implementing Bilateral and Multilateral Asylum Cooperative Agreements Under the Immigration and Nationality Act" (the "ACA Rule"). (ECF Nos. 344, 352.) Plaintiffs claimed Defendants intended to impose the ACA Rule on members of the provisional class to extinguish their underlying metering claims and bar

them from accessing the asylum process. (*Id.*)  The Court denied the motion without prejudice, finding that Plaintiffs had not established a likelihood that Defendants would apply the new regulation to class members. (ECF No. 382.) The Court also based its decision on the fact that the terms of the Preliminary Injunction, if affirmed on appeal, would require Defendants to "return to the pre-Asylum Ban practices" for asylum-seekers metered before July 16, 2019 and therefore "necessarily prohibit[ed]" the application of the more recently promulgated ACA Rule. (*Id.* at 5–6.) The Court stated that it assumed Defendants would act in good faith by "avoid[ing] taking steps that could complicate or preclude its compliance with a court order." (*Id.* at 6.)

Second, on July 17, 2020, Plaintiffs filed a Motion for Clarification of the Preliminary Injunction after the parties failed to resolve disputes about the scope of the order and Defendants' attendant obligations. (ECF No. 494.) The Court then issued an order on October 30, 2020 (the "Clarification Order") clarifying that the Preliminary Injunction: (1) applied to individuals denied asylum before the order issued and during the administrative stay; (2) bound the Executive Office of Immigration Review to the terms of the order; and (3) required Defendants to take affirmative steps to reopen or reconsider past asylum denials for class members, make reasonable efforts to identify class members and inform them of their class membership, and share identifying information with Plaintiffs. (ECF No. 605.)

Defendants appealed the Clarification Order and moved to stay the order in this Court. (ECF Nos. 636, 637.) The briefing on the motion to stay is ongoing. (ECF No. 641.) On December 18, 2020, the Ninth Circuit granted in part and denied in part Defendants' request for an administrative stay. (ECF No. 652.) The stay applies to the Clarification Order's requirement that Defendants take affirmative steps to find and reopen or reconsider the asylum denials of provisional class members that became final before the Preliminary Injunction was entered or during the period of the administrative stay, but was denied in all other respects. (*Id.*)

Lastly, Plaintiffs have filed another Motion to Enforce the Preliminary Injunction on December 15, 2020, citing continued conflicts over the implementation measures required by the Clarification Order. (*See* ECF Nos. 644, 657, 665.)

### C. New Regulation

The regulation that is the subject of the instant Motion, referred to by Defendants as the "Final Transit Rule," purports to "respond[] to comments received on the [IFR]," "make[] minor changes to regulations implemented or affected by the IFR for clarity and correction of typographical errors," and "adopt[] 'as final' certain of the IFR's amendments to the Code of Federal Regulations." (Defs.' Opp'n to Pls.' Mot. ("Opp'n") at 6 (citing Asylum Eligibility and Procedural Modification, 85 Fed. Reg. 82,260, 82,289 (Dec. 17, 2020)).)

Relevant here is the Final Transit Rule's response to a comment that the IFR conflicts with the language of the INA establishing that "[a]ny alien who . . . arrives in the United States (whether or not at a designated port of arrival . . . ) . . . may apply for asylum." 8 U.S.C. § 1158(a)(1). In response, the rule clarifies that the IFR

> applies to all aliens who enter, attempt to enter, or arrive in the United States across the southern land border on or after July 16, 2019. These three terms . . . require physical presence in the United States, and, as a result, any aliens who did not physically enter the United States before July 16, 2019, are subject to this rule. ***This includes, for example, aliens who may have approached the U.S. border but were subject to metering by DHS at a land border port of entry and did not physically cross the border into the United States before July 16, 2019.***

(85 Fed. Reg. at 82,268 (emphasis added).) In a footnote immediately following this paragraph, the rule further explains:

> The Departments note that this result is different from the district court's reasoning in granting a preliminary injunction in *Al Otro Lado, Inc. v. McAleenan*, 423 F. Supp. 3d 848, 875–76 (S.D. Cal. 2019), which included aliens who approached a U.S. port of entry but were not immediately permitted to cross the border as within the class of aliens who had "attempted to enter or arrived in" the United States. *See Al Otro Lado v. McAleenan*, 394 F. Supp. 3d 1168, 1199–1205 (S.D. Cal. 2019). The district court's

> interpretation is contrary to the Departments' intent, as explained below. The Departments also note that, even if aliens subject to metering prior to July 16, 2019, were exempt from this rule, they would nevertheless become subject to the rule upon any subsequent entry into the United States.

(*Id.* n.22.) The Final Transit Rule then explains that agencies intend the terms "entry," "attempted entry," and "arrival" to require physical presence in the United States, excluding asylum-seekers whom CBP "encounter[s] at the physical border line of the United States and Mexico, who have not crossed the border line at the time of that encounter[.]" *Id.* at 82,269. The rule takes effect on January 19, 2021.

## II. LEGAL STANDARD[2]

The purpose of a temporary restraining order is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974) (footnote omitted). If the nonmovant has received notice of a motion for a temporary restraining order, the standard for issuing such order is the same as that for issuing a preliminary injunction. *See Brown Jordan Int'l, Inc. v. Mind's Eye Interiors, Inc.*, 236 F. Supp. 2d 1152, 1154 (D. Haw. 2002); *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). Here, Defendants have received notice of the Motion and have had the opportunity to be heard in opposition. Therefore, the preliminary injunction standard applies.

To obtain preliminary injunctive relief, a movant must "meet one of two variants of the same standard." *All for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017). Under the first standard, the movant must show "that he is likely to succeed on the merits,

---

[2] The parties dispute whether this Court must issue another injunction to enjoin the Final Transit Rule or whether prohibiting the application of this rule requires only that the Court enforce its initial Preliminary Injunction. Defendants claim that the Final Transit Rule is a "new agency action" requiring a new injunction. (Opp'n at 12–13.) Plaintiffs argue nothing prevents the Court from modifying or enforcing its earlier Preliminary Injunction against the Final Transit Rule. (Mot. at 7–12; Reply at 3.) The parties provide little by way of citation to supporting authorities for their arguments. In any event, solely for purposes of this Order, the Court assumes without deciding that separate injunctive relief is required to provide a remedy in this instance, and therefore applies the preliminary injunction standard to its analysis.

that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Under the second standard, the movant must show "that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits," that the "balance of hardships tips *sharply* in the Plaintiff's favor," and that "the other two *Winter* factors are satisfied." *Id.* (quotation omitted). "Serious questions are substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (quotations and citation omitted). The balance of equities and public interest factors merge "[w]hen the government is a party." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

### III. ANALYSIS

The Court finds that Plaintiffs have sufficiently shown that serious questions exist as to the merits of this challenge, that class members are likely to suffer irreparable harm in the absence of the requested relief, and that the balance of equities and public interest tip strongly in their favor.

First, Defendants allege that it is lawful under the Executive's rulemaking authority to proceed with the issuance of a final rule despite the existence of the Preliminary Injunction on the same topic. (Opp'n at 11–12.) However, this is an incomplete characterization of the facts of this case. The Court previously interpreted the asylum provisions of a statute, the INA, to apply to asylum-seekers metered at ports of entry, thus concluding that these individuals could have requested asylum but for Defendants' metering practices. Defendants now claim that their rulemaking authority can be used to craft definitions in a regulation that run contrary to the Court's interpretation of the same language in the enabling statute, all for the explicit purpose of circumventing the Court's Preliminary Injunction. It is at least questionable, if not altogether doubtful, that Defendants can redefine statutory terms in a regulation in direct contradiction to the Court's

plain language interpretation, especially when their intention in doing so is to evade the import of the Court's previous rulings.[3]  *See California Cosmetology Coal. v. Riley*, 871 F. Supp. 1263, 1270 (C.D. Cal. 1994) (citing *Koshland v. Helvering*, 298 U.S. 441, 447 (1936)) ("A regulation may not serve to amend a statute or to add to the statute something which is not there." ), *aff'd,* 110 F.3d 1454 (9th Cir. 1997); *see also Brown v. Gardner*, 513 U.S. 115, 122 (1994) ("[T]he fact . . . that [a regulation] flies against the plain language of the statutory text exempts courts from any obligation to defer to it.").  The Final Transit Rule's lengthy interpretive arguments to the contrary cannot preemptively resolve these serious questions arising from this rather blatant evasive maneuvering around the Court's interpretation of the INA.

This action is especially legally dubious because the Court's interpretation has not been overturned or otherwise invalidated on appeal, which is still pending resolution. Indeed, the Ninth Circuit expressed in its order denying Defendants' motion for stay that this Court's "linguistic and contextual analysis has considerable force" and affirmed that pursuant to this statutory interpretation, "a class member's first arrival triggered a statutory right to apply for asylum and have that application considered . . . . As the [IFR] was not in place at the time each class member's right to apply for asylum attached, it makes sense that it would not apply." *Al Otro Lado, Inc. v. Wolf*, 952 F.3d 999, 1013–14 (9th Cir. 2020). This Court sees no reason why this rationale would not apply equally to the Final Transit Rule, which will take effect 18 months after the IFR.

The remaining prongs of the preliminary injunctive standard are easily met, considering the similarities between the Final Transit Rule and the IFR. It is clear that irreparable injury would occur if this relief were not issued. Defendants are unambiguous, both in the regulatory language of the Final Transit Rule and in their briefings, that one

---

[3] Further, as aforementioned, the Court previously denied Plaintiffs' request for a temporary restraining order regarding the ACA Rule on the basis that Defendants would comply in good faith with the instructions in the Preliminary Injunction, which implicitly barred the ACA Rule's implementation as to the class. It follows that the Final Transit Rule—which simply modifies the previously enjoined IFR— would be subject to the same prohibition.

purpose of the rule is to ensure that the asylum eligibility limitation applies to the asylum-seekers metered at the border who form the specific provisional class certified in this case. It is thus beyond doubt that Defendants seek to enforce the regulation against the class, and that without injunctive relief, Plaintiffs will be permanently barred from seeking asylum in the United States and could face physical danger if forced to return to their countries of origin. Lastly, given that the Final Transit Rule is an extension of the IFR previously enjoined, the Court finds that the balance of equities and public interest analysis stated in its Preliminary Injunction applies here with the same force. (*See* Prelim. Inj. at 34–35.) These factors favor Plaintiffs because Defendants' metering practices were the root cause of their inability to access the asylum process prior to the promulgation of the IFR. This remains true for any regulation that seeks to limit asylum eligibility, including the Final Transit Rule.

Lastly, Defendants raise several challenges to this Court's jurisdiction to hear this Motion under various jurisdiction-stripping provisions of the INA and under the All Writs Act. (*See* Opp'n at 9–11.) It is well-settled that a court may issue the orders necessary to determine its own jurisdiction. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 290 (1947) ("[T]he District Court unquestionably had the power to issue a restraining order for the purpose of preserving existing conditions pending a decision upon its own jurisdiction."); *see also Derminer v. Kramer*, 386 F. Supp. 2d 905, 906 (E.D. Mich. 2005) ("A court always has jurisdiction to determine its jurisdiction.").[4]

---

[4] The Court also notes that the way in which the Rule was authorized also raises questions as to its validity. The Rule states:

> The Acting Secretary of Homeland Security, Chad F. Wolf, having reviewed and approved this document, is delegating the authority to electronically sign this document to Chad R. Mizelle, who is the Senior Official Performing the Duties of the General Counsel for DHS, for purposes of publication in the Federal Register.

85 Fed. Reg. at 82,289. Recently, the Northern District of California issued a preliminary injunction regarding other regulations signed in a similar manner, finding that the plaintiffs had shown a likelihood that DHS lacked authority through Wolf for the proposed rulemaking because he was not nominated by the President and confirmed by the Senate. *Pangea Legal Servs. v. U.S. Dep't of Homeland Sec.*, No. 20-CV-09253-JD, 2021 WL 75756, at *3 (N.D. Cal. Jan. 8, 2021). Several other courts have also invalidated

Because of complex issues raised in this Motion, the Court finds that it is necessary to enjoin the application of the Final Transit Rule to the provisional class pending the Court's determination regarding the merits.

## IV. CONCLUSION

Accordingly, the Court **GRANTS** Plaintiffs' Motion for a TRO (ECF No. 658). Defendants are **TEMPORARILY ENJOINED** from applying 85 Fed. Reg. 82,260 (Dec. 17, 2020) to all non-Mexican asylum seekers who were unable to make a direct asylum claim at a U.S. Port of Entry ("POE") before July 16, 2019 because of the U.S. government's metering policy, and who continue to seek access to the U.S. asylum process. This Order extends to Defendants and any other federal officials and personnel involved in the asylum and/or removal process.

**IT IS FURTHER ORDERED** that a telephonic oral argument on the issues raised in the Motion is set for **February 3, 2021 at 1:30 p.m.** This temporary restraining order shall remain in effect until this date.

Information for calling into the teleconference is listed below. The parties and the public may access the hearing by calling the Court's teleconference number before 1:30 p.m. When prompted, enter the access code followed by the pound sign (#).

**Teleconference number**: (888) 557-8511

**Access code**: 6968297

Any members of the public that join the teleconference must mute their lines after joining.

**IT IS SO ORDERED.**

**DATED: January 18, 2021**

Hon. Cynthia Bashant
United States District Judge

---

Wolf's action on the basis that he was not a duly authorized Acting Secretary. *See Batalla Vidal v. Wolf*, No. 16-CV-4756 (NGG) (VMS), ––– F. Supp. 3d ––––, ––––, 2020 WL 6695076, at *9 (E.D.N.Y. Nov. 14, 2020); *Nw. Immigrant Rights Project v. United States Citizenship & Immigration Servs.*, No. CV 19-3283 (RDM), ––– F. Supp. 3d ––––, ––––, 2020 WL 5995206, at *24 (D.D.C. Oct. 8, 2020); *Immigrant Legal Res. Ctr. v. Wolf*, No. 20-CV-05883-JSW, ––– F. Supp. 3d ––––, ––––, 2020 WL 5798269, at *7 (N.D. Cal. Sept. 29, 2020); *Casa de Maryland, Inc. v. Chad F. Wolf*, Case No. 8:20-cv-02118-PX, ––– F.Supp.3d ––––, ––––, 2020 WL 5500165, at *23 (D. Md. Sept. 11, 2020).