MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, DC 20006
Telephone:  +1.202.263.3000
Facsimile:   +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, DC 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*,<br><br>            Plaintiffs,<br><br>     v.<br><br>Alejandro Mayorkas,[1] *et al.*,<br><br>            Defendants. | Case No.:  17-cv-02366-BAS-KSC<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR EXPEDITED MOTION FOR DISCOVERY CONCERNING COMPLIANCE WITH PRELIMINARY INJUNCTION**<br><br>Hearing Date: March 22, 2021<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

---

[1] Secretary Mayorkas is automatically substituted pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, DC 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

1

## <u>TABLE OF CONTENTS</u>

2
                                                                                           **Page**

3    INTRODUCTION ..................................................................................... 1

4    RELEVANT BACKGROUND .............................................................. 4

5        I.      The Preliminary Injunction ...................................... 6

6        II.     The Clarification Order and Order on Plaintiffs' Emergency
                 Motion ................................................................................ 7

7        III.    The Government's Stonewalling and The Pending Motion to
                 Enforce ............................................................................. 9

8        IV.     The Aborted February 2021 Deportation Flight ................ 11

9    ARGUMENT ........................................................................................ 14

     CONCLUSION ..................................................................................... 18

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLS' MOT. FOR DISCOVERY RE
COMPLIANCE WITH PRELIMIARY INJUNCTION

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abdi v. McAleenan,*
   2019 U.S. Dist. LEXIS 72762 (W.D.N.Y. 2019)....................................15, 16, 17

*Al Otro Lado, Inc. v. Wolf,*
   952 F.3d 999 (9th Cir. 2020) .............................................................................7, 18

*Blackberry Ltd. v. Typo Prods. LLC,*
   2014 WL 4136586 (N.D. Cal. 2014) ......................................................................14

*Cal. Dep't of Soc. Servs. v. Leavitt,*
   523 F.3d 1025 (9th Cir. 2008) ...............................................................................14

*Damus v. Nielsen,*
   328 F.R.D. 1 (D.D.C. 2018) ...................................................................................15

*Fraihat v. U.S. Immigration & Customs Enf't,*
   2020 U.S. Dist. LEXIS 94952 (C.D. Cal. 2020) ...................................................14

*Gen. Elec. Co. v. Liang,*
   2014 WL 1089264 (C.D. Cal. 2014) ......................................................................14

*Nat'l Law Ctr. on Homelessness & Poverty v. U.S. VA,*
   842 F. Supp. 2d 127 (D.D.C. 2012) ..........................................................17, 18

*Palmer v. Rice,*
   231 F.R.D. 21 (D.D.C. 2005) ...........................................................................14, 15

*United States v. Viray,*
   2012 WL 759884 (C.D. Cal. 2012) ........................................................................14

**Federal Statutes**

8 U.S.C. § 1158(a)(1) ...............................................................................................7

8 U.S.C. § 1225(b)(1)(A)(ii)......................................................................................7

1  **Other Authorities**

2
8 C.F.R. § 208.13(c)(4) ................................................................. 1

3
8 C.F.C. § 1208.13(c)(4) ............................................................... 1

4
84 Fed. Reg. 33,829 (July 16, 2019) ........................................... 1

5

6  Fed. R. Civ. P. 23(d) .................................................................... 9

7  Fed. R. Civ. P. 30(b)(6) ............................................................... 4

8  Zolan Kanno-Youngs & Michael D. Shear, *Trump Loyalists Across*
9     *Homeland Security Could Vex Biden's Immigration Policies*, N.Y.
       Times (Feb. 3, 2021) ......................................................... 3, 16
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLS' MOT. FOR DISCOVERY RE
COMPLIANCE WITH PRELIMIARY INJUNCTION

1

# **INTRODUCTION**

2    It has been nearly fifteen months since this Court issued a preliminary

3 injunction ("PI") prohibiting the government from applying the rule entitled

4 "Asylum Eligibility and Procedural Modifications," 84 Fed. Reg. 33,829 (July 16,

5 2019), *codified* 8 C.F.R. §§ 208.13(c)(4), 1208.13(c)(4), widely known as the

6 "Asylum Ban," to a provisionally-certified class of asylum seekers who were

7 metered prior to July 16, 2019 ("PI class"). Dkt. 330 at 36. In the last fifteen months,

8 the government has done almost anything to avoid complying with this Court's

9 order.  During this time, the government has filed two appeals, four motions to stay,

10 and a motion for protective order and has promulgated a nearly identical final rule

11 that purports to permanently codify the Asylum Ban.  *See, e.g.*, Dkts. 335, 336, 369,

12 418, 634, 636, 637, 638, 641, 644, 647, 652, 656, 657, 658, 662, 665, 667, 668, 671.

13 Consequently, Plaintiffs need limited discovery to determine the government's

14 compliance, or lack thereof, with the preliminary injunction entered fifteen months

15 ago.

16    As a result of the government's "piecemeal" compliance efforts, on October

17 30, 2020, this Court issued an order clarifying the scope of the PI ("Clarification

18 Order"). Dkt. 605 at 3. In that order, this Court required the government to (a) "take

19 immediate affirmative steps to reopen and reconsider past determinations that

20 potential class members were ineligible for asylum based on the Asylum Ban," (b)

21 "inform identified class members" in government custody or immigration

22 proceedings "of their potential class membership and the existence and import of the

23 preliminary injunction," and (c) "make all reasonable efforts to identify class

24 members . . . and shar[e] information regarding class members' identities with

25 Plaintiffs."  Dkt. 605 at 24-25; *see also id.* at 23 ("the Court sees no reason for this

26 information [lists of potential PI class members] . . . to be withheld. . . . Defendants

27 must . . . share the information in their custody regarding the identities of class

28 members with Plaintiffs.").

PLS' MOT. FOR DISCOVERY RE
COMPLIANCE WITH PRELIMINARY INJUNCTION

1   In the three-and-a-half months since this Court issued the Clarification Order,

2   ***Defendants have not produced a single document to Plaintiffs*** that identifies class

3   members, nor have Defendants been able to confirm that the relevant agencies have

4   a plan and timeline for ensuring compliance with all aspects of the PI, as interpreted

5   by the Clarification Order (the "Orders"). As a result, months after this Court ordered

6   the parties to share information to effectuate compliance with the PI, Plaintiffs still

7   do not know the identities of PI class members and still do not have an understanding

8   of how the government makes determinations regarding PI class membership or how

9   the government ensures PI relief to those PI class members owed such relief.

10  As Plaintiffs explain in their pending motion to enforce the PI, the parties

11  continue to have different interpretations of the Court's orders. In light of the

12  government's failure to share information as required by the Court's Orders and the

13  parties' other areas of disagreement regarding implementation of the Orders,

14  Plaintiffs moved to enforce the PI. Dkt. 644, 646. That motion is still pending. As

15  Plaintiffs warned in their motion to enforce: "The passage of time permits more"

16  members of the PI class "to be removed from the United States under removal orders

17  that violate" the PI.  Dkt. 646 at 12. This is particularly true given that, according to

18  the information it has made available to Plaintiffs, the government's flawed

19  implementation efforts are focused on those potential PI class members facing

20  imminent deportation. *See* Dkt. 644-2 at ⁋ 10.

21  The intervening months have further demonstrated the inadequacy of the

22  government's implementation efforts. Because the government has not shared any

23  information with Plaintiffs regarding the identities of potential PI class members and

24  minimal information regarding its processes for identifying PI class members,

25  Plaintiffs are left to rely on *ad hoc* reporting from the advocacy community regarding

26  potential PI violations, repeated motions practice, and eleventh-hour threats to

27  involve this Court as the means to enforce the PI. Previously, this Court issued a

28  temporary restraining order barring a PI class member (the "Applicant") from being

PLS' MOT. FOR DISCOVERY RE
COMPLIANCE WITH PRELIMINARY INJUNCTION

1  removed from the United States after the government asked her ambiguous questions

2  regarding her membership in the PI class and, as a result, erroneously excluded her

3  from the PI class. See Dkt. 607 at 10-11. Most recently, on February 2, 2021,

4  Plaintiffs learned via a series of What's App messages that fifteen potential PI class

5  members were scheduled for a deportation flight to Cameroon the very next day. Ex.

6  1 (Cassler Decl.) at ¶¶ 12-13;[2] Ex. 2 (Huber Decl.) at ¶¶ 3-5; *see also* Zolan Kanno-

7  Youngs & Michael D. Shear, *Trump Loyalists Across Homeland Security Could Vex*

8  *Biden's Immigration Policies*, N.Y. Times (Feb. 3, 2021) (describing the same

9  flight). Upon learning of the potential deportation of individuals in violation of the

10  PI, Plaintiffs' counsel reached out to the government for information regarding these

11  individuals on the morning of February 2. After a full day without a response from

12  the government, and a flurry of late-night emails in which Plaintiffs threatened to

13  file a motion for a temporary restraining order to stop the flight, the government

14  informed Plaintiffs that the removals of those 15 individuals had been stayed (or, in

15  one case, had not been scheduled). Ex. 1 at ¶¶ 14-34. The next day, the government

16  canceled the flight. *Id.* at ¶ 35. In the course of the exchange with the government,

17  Plaintiffs learned that the government had planned to deport individuals whose

18  entitlement to PI protections is the subject of dispute in the pending Motion to

19  Enforce. *Id.* at ¶ 36.

20      Compliance with the PI should not depend on Plaintiffs' *ad hoc* interventions

21  and threats to run to court. Rather, Plaintiffs should be afforded basic information to

22  ensure that the government is complying with this Court's Orders. At this point, the

23  government's foot-dragging has steadily eroded the presumption that it is operating

24  in good faith. Because the government has not provided basic information to

25  Plaintiffs regarding who is likely a PI class member, how the government went about

26  making that determination, and what the government did after determining that an

27  ──────────────

28  [2] "Ex." refers to the exhibits to the concurrently-filed declaration of Stephen M.
Medlock.

PLS' MOT. FOR DISCOVERY RE
COMPLIANCE WITH PRELIMINARY INJUNCTION

1   individual was likely a PI class member, Plaintiffs seek limited discovery to

2   determine the government's compliance, or lack thereof, with the Orders.

3   Specifically, Plaintiffs seek discovery with the following limitations:

4       (1)  All discovery will be limited to matters related to the government's

5   compliance with the PI and subsequent orders clarifying, enforcing, staying, or

6   lifting stays related to the PI, including, but not limited to, the Clarification Order

7   and the pending Motion to Enforce the Preliminary Injunction;

8       (2)  Unless otherwise ordered by the Court, the Parties' previously-negotiated

9   ESI Protocol (Dkt. 277), Protective Order (Dkt. 276), and Remote Deposition

10  Protocol (Dkt. 454) shall apply to any such discovery;

11      (3)  Plaintiffs' discovery requests shall be limited to 20 requests for production

12  to U.S. Immigration and Customs Enforcement, the Executive Office for

13  Immigration Review (EOIR), U.S. Customs and Border Protection (CBP), and the

14  U.S. Department of Homeland Security (collectively the "PI respondents"), 10

15  interrogatories to the PI respondents, and Fed. R. Civ. P. 30(b)(6) depositions of the

16  PI respondents;

17      (4)  The following schedule shall apply to this discovery: (a) Plaintiffs shall

18  serve their requests within two days of any order permitting discovery, (b) PI

19  respondents shall serve their answers and objections within 20 days of service, (c)

20  subject to their duty to supplement discovery responses and disputes to be resolved

21  by the Court, the PI respondents must complete their production of documents within

22  40 days of service of the requests, and (d) subject to the duty to supplement and any

23  outstanding disputes between the parties, discovery shall be completed within 60

24  days of the Court's order permitting discovery;

25      (5)  The court may permit additional discovery upon a showing of good cause.

26                              **RELEVANT BACKGROUND**

27      Complying with an injunction should not be a difficult exercise for the

28  government.  Yet, ensuring that the government is actually complying with the PI

PLS' MOT. FOR DISCOVERY RE
COMPLIANCE WITH PRELIMINARY INJUNCTION

and Clarification Order has proven to be a frustrating and disheartening exercise. When ordered to provide information to Plaintiffs regarding the identities of class members, the government has not done so. When ordered to provide notice to class members regarding the existence and import of the PI, the government's notice did not properly convey that information. When asked whether it had a comprehensive plan for implementing the Orders, the government refused to share one. The government has argued against this Court even holding a simple status conference to discuss the government's compliance efforts. The government has demanded that Plaintiffs receive written authorization from each member of the PI class—which comprises thousands of asylum seekers—before the government will provide any information about that class member. But when Plaintiffs attempted to set up calls to reach out to a member of the class held in ICE custody in an attempt to follow the government's proposal, no one answered repeated calls, and repeated voicemails have not been responded to. *See* Ex. 3 (Escoto Decl.) at ¶¶ 2-7.

At the same time, the government has been doing everything in its power to stay or delay the implementation of the Orders. Each pronouncement from this Court on the PI is met with an appeal, motions to stay, and further delays or outright refusals to provide Plaintiffs with information regarding the implementation of the PI.

This leaves Plaintiffs to ask two basic questions: (1) Why is the government so desperate to keep Plaintiffs from finding out what is really happening to their class members, and (2) How are the Orders really being implemented? Thus far, Plaintiffs have only been able to piece together parts of the story based on *ad hoc* communications with immigration advocates. However, even this incomplete picture is not pretty. On several occasions, Immigration Judges ("IJs") repeatedly refused to implement the PI even when it was clear that the asylum seeker before them was a PI class member and entitled to the benefits of the PI. *See* Dkt. 494-2 at ¶¶ 4-5, 13. Rather than accepting prima facie evidence of PI class membership, such

PLS' MOT. FOR DISCOVERY RE
COMPLIANCE WITH PRELIMINARY INJUNCTION

as the fact that an asylum seeker's name appears on a waitlist prior to July 16, 2019, it appears that the government is interviewing such individuals without telling them that their name appears on a waitlist in the government's possession. In the one interview Plaintiffs have been made aware of, the asylum officer appeared to be seeking to undermine the credibility of that evidence by repeatedly asking the PI class member about the exact date that he first arrived at a POE and adversarially questioning his recollection. Ex. 2 at ¶ 13. And, on multiple occasions, ICE has come within hours of sending PI class members out of the country on removal flights. *See infra* at 8, 11-13. In at least one case, Plaintiffs have learned that the government conducted a POE class member's screening *after* the asylum seeker's removal flight was stayed. Ex. 2 at ¶ 12. This is not a picture of the government doing its best to comply with the Orders.

Enough is enough. This motion and the pending motion to enforce seek to rectify this situation in complementary ways. The motion to enforce seeks to require the government to come up with a comprehensive plan for complying with the Orders and to share the plan with Plaintiffs and the Court. *See* Dkt. 646 at 1-2. Furthermore, the motion to enforce seeks regular status conferences for the parties to discuss the government's compliance efforts with the Court and to remedy deficiencies in a timely manner. *Id.* at 11-12. This motion requests discovery to ensure that the government's assurances about its compliance efforts are actually what is occurring on the ground. Both steps are necessary to avoid more motions practice and to ensure that the government finally and fully complies with the Orders.

Below Plaintiffs explain the procedural and factual history specifically necessitating this motion.

## I.    The Preliminary Injunction

This case concerns the government's illegal policy and practice of turning back asylum seekers at ports of entry on the U.S.-Mexico border ("POEs") via

PLS' MOT. FOR DISCOVERY RE
COMPLIANCE WITH PRELIMINARY INJUNCTION

1    various tactics, including metering. CBP officers standing at or near the border block
2    (or at least attempt to block) asylum seekers from crossing the border and refuse to
3    inspect and process those who approach the POE on their own. Instead under
4    metering, CBP asserts that POEs are allegedly "full" and only inspects and processes
5    asylum seekers after they have waited for some period of time in Mexico. *See* Dkt.
6    280 at 11-12. This Court previously ruled that asylum seekers who are arriving in
7    the United States at a POE, including those who are standing on Mexican soil but
8    who are in the process of arriving in the U.S., are entitled to be inspected and
9    processed in accordance with 8 U.S.C. §§ 1158(a)(1) and 1225(b)(1)(A)(ii). *See id.*
10   at 35-40, 44-47. In its order denying the government's motion to stay the PI, the
11   Ninth Circuit previously ruled that this Court's "linguistic and contextual analysis
12   has considerable force," is "likely correct," and that "a class member's first arrival
13   trigger[s] a statutory right to apply for asylum and have that application considered."
14   *Al Otro Lado, Inc. v. Wolf*, 952 F.3d 999, 1013-14 (9th Cir. 2020).

15          The government appealed the PI and sought a stay pending resolution of the
16   appeal. *See Al Otro Lado, Inc. v. Wolf*, 952 F.3d 999, 1005-06 (9th Cir. 2020). On
17   March 5, 2020, the Ninth Circuit denied the government's motion for a stay. *Id.* at
18   1015-16.

19   **II.    The Clarification Order and Order on Plaintiffs' Emergency Motion**

20          After the Ninth Circuit's order confirming that the PI was in full force and
21   effect, Plaintiffs began receiving information indicating that immigration judges
22   ("IJs") were not complying with the PI. For instance, in April and May, 2020,
23   Plaintiffs identified multiple instances in which an IJ's orders failed to comply with
24   the PI. *See* Dkt. 494-2 at ¶¶ 4-5. And in June 2020, plaintiffs identified an instance
25   in which DHS opposed a motion to reopen and reconsider a decision in which the IJ
26   had determined a class member to be ineligible for asylum under the Asylum Ban
27   after the Ninth Circuit had denied the government's motion to stay the PI. *Id.* ¶ 13.

28          On July 17, 2020, after attempts to negotiate multiple disputes about the scope

PLS' MOT. FOR DISCOVERY RE
COMPLIANCE WITH PRELIMINARY INJUNCTION

of the PI had reached an impasse, Plaintiffs filed a motion to clarify the scope of the PI. *See* Dkt. 494. That motion was predicated on the government's inadequate efforts to comply with the PI. *Id.* at 1. Indeed, it was not until Plaintiffs filed their motion that the government provided any detail about its compliance efforts. *See* Dkt. 508 at 5-8.

While the motion for clarification was pending, Plaintiffs continued to discover new instances that raised serious doubts about the sufficiency of the government's efforts to comply with the PI. For example, on July 27, 2020, Plaintiffs learned that an IJ had denied a putative class member's motion to reopen her case based on this Court's PI. *See* Dkt. 516-1 at ¶ 3. In her order, the IJ reasoned erroneously that this Court's PI was not binding in the Fifth Circuit. *See* Dkt. 508-13 at 3. Two days later, the government issued "supplemental guidance" to the IJ concerning the PI. *See* Dkt. 508-4 at ¶ 9.

Then, in early October 2020, Plaintiffs learned that the government was about to deport the Applicant, a PI class member whose name appeared on a Tijuana waitlist definitively showing that she had been metered prior to July 16, 2019, but whom the government had erroneously determined was not a PI class member. *See* Dkt. 574-1 at 4-5. Plaintiffs filed an emergency motion to enjoin the class member's removal from the United States until she was afforded a credible fear determination on the merits. *See* Dkt. 574.

On October 30, 2020, this Court granted Plaintiffs' motion for clarification. Dkt. 605. This Court rejected the government's argument that the Asylum Ban does not apply to PI class members whose asylum denials became administratively final prior to the issuance of the PI or during the period that the injunction was administratively stayed. Dkt. 605 at 11. This Court recognized that the purpose of the PI was to return members of the PI class to the status quo ante prior to the promulgation of the Asylum Ban. *See id.* As this Court put it, the PI "must provide redress to all those metered [prior to July 16, 2019] in order to restore equity." *Id.*

PLS' MOT. FOR DISCOVERY RE
COMPLIANCE WITH PRELIMINARY INJUNCTION

1    (the PI "was structured to restore class members to the status quo by preventing the

2    application of the Asylum Ban to class members who, but for metering, would have

3    had the opportunity to enter the United States before the regulation imposed

4    additional asylum eligibility requirements.").

5          In order to ensure that PI class members were not deemed ineligible for

6    asylum based on the Asylum Ban, this Court required the government to "review

7    [its] own records to aid in the identification of class members," to share that

8    information with Plaintiffs, and to provide notice of the PI to certain PI class

9    members under Fed. R. Civ. P. 23(d). Dkt. 605 at 23, 25. Critically, this Court held

10   that the government "**must** share the information in [its] custody regarding the

11   identities of class members with Plaintiffs." *Id.* at 23 (emphasis added). The Court

12   also granted Plaintiffs' emergency motion and enjoined the deportation of the

13   Applicant and ordered that she receive a credible fear determination on the merits of

14   her asylum claim. Dkt. 607.

15   **III.    The Government's Stonewalling and The Pending Motion to Enforce**

16         Despite having received a clear mandate to share information identifying

17   potential class members with Plaintiffs, the government has done anything but share

18   that information. After this Court issued the Clarification Order, Plaintiffs again met

19   and conferred with the government in an effort to ascertain the sufficiency of the

20   government's compliance efforts. In the course of these discussions, it became clear

21   that the government did not have, and did not intend to develop or share, a

22   comprehensive plan for complying with the Orders. Dkt. 644-1 at ¶ 5. The

23   government was also unable to give straightforward answers to simple questions

24   regarding the specific steps that the government intended to take to comply with the

25   Orders, or even their timeline for compliance. *Id.* For example, the government could

26   not provide answers to questions about how it would go about identifying members

27   of the PI class, including whether the government would create a process for asylum

28   seekers to affirmatively assert their class membership. *Id.*

PLS' MOT. FOR DISCOVERY RE
                                                       COMPLIANCE WITH PRELIMINARY INJUNCTION

1    Remarkably, after being told that they "must" share information with
2 Plaintiffs, the government refused to do so unless Plaintiffs agreed to the entry of a
3 restrictive protective order. Dkt. 644-2 at ¶ 6. The government even insisted that this
4 Court issue a *second* order requiring it to hand over information identifying potential
5 class members. *See* Dkt. 644-2 at ¶¶ 6, 29, 45, 51(f). The government further sought
6 to limit the disclosure of information by insisting that information regarding the
7 identities of potential PI class members—i.e., their names—could not be shared with
8 those class members' family members (all of whom presumably know the asylum
9 seeker's name) unless Plaintiffs obtained written authorization from the asylum
10 seeker, kept records of the disclosures, and allowed the government to audit those
11 records "on demand." *See* Dkt. 656 at 5-6. No such protective order is necessary
12 where Plaintiffs have agreed to the entry of a protective order restricting their use of
13 any information provided to efforts to facilitate the government's compliance with
14 the Order, Dkt. 646 at 17, and where the Court already has ordered the government
15 to produce this information to Plaintiffs.

16    Given the government's failure to provide sufficient transparency regarding
17 how it is complying with the Orders or to provide information regarding the
18 identities of potential class members, Plaintiffs filed a motion seeking to further
19 enforce the preliminary injunction (the "Motion to Enforce"). *See* Dkts. 644, 646.

20    In their Motion to Enforce, Plaintiffs identified a number of specific issues
21 with the government's implementation efforts including, as particularly relevant to
22 this motion: the government's unwillingness to obtain additional metering waitlists
23 from its Mexican counterparts; the government's unwillingness to treat an
24 individual's name on a metering waitlist prior to July 16, 2019 as presumptive
25 evidence of PI class membership; the government's insistence that a protective order
26 with unnecessarily restrictive terms is required to provide Plaintiffs with information
27 regarding potential PI class members; and the government's intent to exclude from
28 reopening/reconsideration relief PI class members to whom the Asylum Ban was

PLS' MOT. FOR DISCOVERY RE
COMPLIANCE WITH PRELIMINARY INJUNCTION

applied at an intermediate stage of the process (e.g., immigration court), where the final adjudicator (e.g., the Board of Immigration Appeals) denied asylum only on a basis other than the Asylum Ban. Dkt. 646 at 6-7. Among other things, Plaintiffs requested that this Court order the government to (a) draft a plan for compliance with the PI and share that plan with Plaintiffs and (b) hold regular hearings regarding the government's compliance efforts. *See* Dkt. 646 at 9-12. That motion remains pending. And the government continues to refuse to provide Plaintiffs with information regarding PI class members' identities and, as described below, is continuing to deport class members whose entitlement to PI relief is disputed in the fully-briefed Motion to Enforce.

## IV.    The Aborted February 2021 Deportation Flight

Plaintiffs filed their Motion to Enforce the PI, in part, because of the government's "myopic[] focus[] on pushing through the removals of those PI class members slated for imminent removal, without a concrete plan for how to properly screen such individuals for PI relief." Dkt. 646 at 1. Confirming these concerns, on the morning of February 2, 2021, Plaintiffs learned that another removal flight was scheduled to leave the United States for Cameroon some time on February 3, 2021, and that at least nine potential members of the PI class were scheduled to be on the flight. Ex. 1 at ¶ 13-14. These nine individuals were, to Plaintiffs' knowledge, being held at the Alexandria Staging Facility in Alexandria, Louisiana. It is impossible to schedule legal calls or conduct legal visits with individuals held at this facility. Ex. 2 at ¶ 10. At approximately 10 am on February 2, Plaintiffs emailed the government and requested that the nine individuals' deportation be stayed pending ascertainment of their entitlement to PI relief. Ex. 1 at ¶ 14-15. Plaintiffs requested a response by 4 pm that day to allow time for any emergency briefing that might be necessary. *Id.* at ¶ 15. At 4:04 pm, government counsel responded that Plaintiffs' request had been relayed "to the agencies" and that counsel was "awaiting a response." *Id.* at ¶ 16. At 4:56 pm, Plaintiffs' counsel reached out to government counsel again, and asked

PLS' MOT. FOR DISCOVERY RE
COMPLIANCE WITH PRELIMINARY INJUNCTION

1    what time the flight was scheduled to depart, noting that Plaintiffs "hop[ed] to avoid

2    yet another emergency motion before Judge Bashant." *Id.* at ¶ 19.

3         Having received no further information from the government, Plaintiffs'

4    counsel phoned government counsel at 6:30 pm to inquire as to the status of the

5    flight and the potential PI class members who had been identified. Ex. 1 at ¶ 20.

6    Counsel for the government was unwilling to even inform Plaintiffs' counsel as to

7    the scheduled time of the deportation flight due to unspecified "security concerns,"

8    *id.* at ¶ 20, leaving Plaintiffs no choice but to begin drafting emergency motion

9    papers. The government was also unable to provide any information regarding the

10   nine identified potential PI class members. *Id*. Importantly, the government did

11   indicate that all individuals scheduled to be deported met one of the screening criteria

12   the parties had discussed in November 2020 shortly after the Clarification Order was

13   issued. *Id*. Counsel for the government expressly noted that this included a screening

14   criterion on which the parties disagreed and which is a subject of the pending Motion

15   to Enforce. *Id*. Specifically, counsel for the government noted that individuals on the

16   flight might have been deemed ineligible for asylum under the Asylum Ban by an

17   initial decision maker, so long as a subsequent decision maker affirmed that

18   determination on grounds other than the Asylum Ban. *Id*.

19        At 9:30 pm that evening, Plaintiffs emailed the government to inform it that

20   Plaintiffs had identified six additional individuals that Plaintiffs believed to be

21   scheduled for the removal flight and whose names appear on the Tijuana or Mexicali

22   waitlists before July 16, 2019, indicating that they are PI class members. *Id.* at ¶¶

23   25-26. Plaintiffs asked the government either to confirm that these individuals did

24   not have the Asylum Ban applied to them or to stay their removals. *Id*.

25        Plaintiffs' access to information about the individuals scheduled to be on the

26   February 3 removal flight was limited to *ad hoc* reports from a group of advocates,

27   Ex. 2 at ¶¶ 3-5, and Plaintiffs lacked sufficient information to determine whether

28   potential PI class members beyond the fifteen identified were also scheduled to be

PLS' MOT. FOR DISCOVERY RE
COMPLIANCE WITH PRELIMINARY INJUNCTION

1  on the flight. But the fact that fifteen identified potential class members were set to
2  be removed raised red flags about the remainder of the passengers on the plane, to
3  say the least. In light of the absence of information from the government and the
4  proliferation of potential PI class members who Plaintiffs understood may be
5  scheduled for the removal flight, Plaintiffs informed the government that Plaintiffs
6  intended to file a motion for a temporary restraining order to halt the flight. Ex. 1 at
7  ¶ 28. Finally, at 11:56 pm, after a flurry of late night emails and more than twelve
8  hours after Plaintiffs first raised these issues with the government, the government
9  informed Plaintiffs' counsel that all fifteen individuals whom Plaintiffs' counsel had
10  identified as potential PI class members had had their removals stayed or had not
11  been scheduled for removal. *Id.* at ¶ 29 .

12      Plaintiffs subsequently learned that the flight had been canceled. Ex. 1 at ¶ 35.
13  However, the government has, thus far, refused to provide any forewarning if these
14  potential PI class members are placed on a future removal flight. Based on limited
15  information provided by the government, it appears that at least ten of these
16  individuals may fall into the disputed category described above (i.e., initial
17  adjudicator denied asylum based on Asylum Ban and subsequent adjudicator
18  affirmed on other grounds). Notwithstanding this Court's prior Orders, the
19  government has refused to provide additional information absent entry of a
20  protective order. *Id.* at ¶¶ 36-37.

21      Plaintiffs have since learned that one of the individuals they first identified to
22  the government on the morning of February 2, who was set to be removed the
23  following day, received a PI screening interview on February 10, *a week after the*
24  *flight was scheduled to depart*. Ex. 2 at ¶¶ 12-13. This class member's name appears
25  on the Tijuana metering waitlist in the government's possession, which indicates his
26  name was added to the list prior to July 16, 2019. Ex. 1 at ¶ 23. In total, eleven of
27  the fifteen potential PI class members whom Plaintiffs identified on February 2 show
28  up on the Tijuana or Mexicali waitlist prior to July 16, 2019, confirming their PI

PLS' MOT. FOR DISCOVERY RE
COMPLIANCE WITH PRELIMINARY INJUNCTION

1   class member status. *Id*. Based on the limited information in Plaintiffs' possession,

2   three of the remaining four entered at POEs in Texas—POEs where the government

3   has access to the metering waitlists and Plaintiffs do not. *Id*.

4                                    **ARGUMENT**

5       "[T]he existence of an injunction does not guarantee compliance with its

6   terms, particularly if there is no means to verify compliance." *Gen. Elec. Co. v.*

7   *Liang*, 2014 WL 1089264, at *4 (C.D. Cal. 2014). Therefore, a district court has the

8   "inherent power to enforce its judgments," including by ordering post-judgment

9   discovery. *Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008);

10  *see also United States v. Viray*, 2012 WL 759884, at *2 (C.D. Cal. 2012) (allowing

11  "post-judgment discovery to ensure compliance" with the terms of an injunction);

12  *Palmer v. Rice*, 231 F.R.D. 21, 25 (D.D.C. 2005) (allowing discovery where,

13  "without [it], plaintiffs will not be able to determine whether the government has

14  complied with the court's injunctions"). Accordingly, a district court should "give

15  careful attention to a request for discovery to establish noncompliance with one of

16  its [orders]." *Leavitt*, 523 F.3d at 1033-34. Limited discovery is proper where

17  "[i]nformation already present in the record raises questions of noncompliance." *Id.*

18  at 1034. However, "the kind and amount of evidence of noncompliance required to

19  justify discovery is, necessarily, considerably less than that needed to show actual

20  noncompliance." *Id.* Applying this standard, courts routinely allow plaintiffs to take

21  limited discovery regarding the defendants' compliance with injunctions. *See, e.g.*,

22  *Fraihat v. U.S. Immigration & Customs Enf't*, 2020 U.S. Dist. LEXIS 94952, at *20-

23  21 (C.D. Cal. 2020) (ordering ICE to produce documents regarding its compliance

24  with an injunction to plaintiffs prior to the entry of a protective order); *Blackberry*

25  *Ltd. v. Typo Prods. LLC*, 2014 WL 4136586, at *5 (N.D. Cal. 2014) (granting

26  discovery where plaintiff raised "serious questions . . . regarding [defendant's]

27

28

                                          PLS' MOT. FOR DISCOVERY RE
                                          COMPLIANCE WITH PRELIMINARY INJUNCTION

1   possible violations of the preliminary injunction").[3]

2       For example, in *Abdi v. McAleenan*, 2019 U.S. Dist. LEXIS 72762 (W.D.N.Y.

3   2019), a class of asylum seekers challenged the government's practices with respect

4   to bond hearings held at the Batavia, New York federal detention facility. *Id.* at *2.

5   The district court granted a motion for preliminary injunction requiring the

6   government to immediately adjudicate or readjudicate parole applications for

7   members of a putative class. *Id.* Then, the district court ordered the government to

8   give notice to a class of asylum seekers at the detention facility and to provide

9   petitioners' counsel with a list of putative class members. *Id.* at *3. The petitioners

10  filed a motion to enforce the preliminary injunction, contending that the government

11  was not taking appropriate measures to comply with the preliminary injunction and

12  class notice orders. *Id.* at *5. The petitioners pointed to multiple instances of non-

13  compliance with the district court's order, including the government's "refusal to

14  engage in a discussion" regarding the steps it was taking to comply with the

15  preliminary injunction. *Id.* at *6. Although the government offered a "several-

16  paragraph description[] of [the government's] process," the district court rejected

17  those arguments, finding that the government "fail[ed] to address Petitioners' well-

18  supported belief that these procedures are deficient." *Id.* at *10-11. The court

19  explained that the information the government had already produced "provide[d]

20  *only cursory insight* into [its] current procedures and [did] not respond to Petitioners'

21  concerns that *some subclass members are being missed*." *Id.* (emphasis added).

22  Therefore, the district court ordered the government to produce witnesses for

23  deposition within thirty (30) days to explain the government's methodology for

24  identifying members of the class and to address "recurring errors" in applying the

25  court's orders. *Id.* at *7.

26

---

27  [3] *See also Damus v. Nielsen*, 328 F.R.D. 1, 4-5 (D.D.C. 2018) (permitting post-
    injunction discovery); *Campaign v. Palmer*, 231 F.R.D. 21, 25 (D.D.C. 2005)
28  (same).

PLS' MOT. FOR DISCOVERY RE
COMPLIANCE WITH PRELIMINARY INJUNCTION

The same logic applies here. As in *Abdi*, Plaintiffs have identified several instances of non-compliance with this Court's Orders and a concern that due to the government's non-compliance, PI class members "are being missed." *Id.* at *10; *see also supra* at 13. The government has also similarly refused to provide Plaintiffs with basic information regarding the identities of class members. *Supra* at 9. Therefore, Plaintiffs have offered far more than a "well-supported belief" that the government is not complying with the Court's Orders. *Abdi*, 2019 U.S. Dist. LEXIS 72762, at *11. There is ample and uncontested evidence that (a) the government has not provided the identities of PI class members to Plaintiffs and (b) potential PI class members continue to come within hours of being removed from the United States. *Supra* at 8, 11-13. A recent New York Times article suggests that the government's continued fixation with deporting asylum seekers is a symptom of a recalcitrant agency that "does not intend to accept" changes to its "gung-ho" and "get tough" stance on asylum seekers. Zolan Kanno-Youngs & Michael D. Shear, *Trump Loyalists Across Homeland Security Could Vex Biden's Immigration Policies*, N.Y. Times (Feb. 3, 2021). Regardless of whether that is true, Plaintiffs should not have to guess at why the government's efforts to comply with this Court's Orders are plainly deficient. Rather than continuing to engage in fire drills and potential unnecessary motions practice based on *ad hoc* information about potential class members at risk of imminent removal, Plaintiffs seek to take discovery to determine how the government is ensuring potential PI class members are not entitled to PI relief prior to deporting them. This is particularly necessary because Plaintiffs' motion to enforce remains pending and, therefore, numerous aspects of proper PI implementation remain in dispute.

In its opposition brief, the government will presumably spin the same yarn that it has spun since November 2019. The government will surely tell this Court that Plaintiffs' motion is unnecessary because the government is doing its best to comply with the Orders and that it is even making "progress," or possibly

PLS' MOT. FOR DISCOVERY RE
COMPLIANCE WITH PRELIMINARY INJUNCTION

1    "substantial progress," in doing so. *See* Dkt. 657 at 9; Dkt. 508 at 5 ("comprehensive

2    steps to comply"); Dkt. 647-1 at 3 ("engaging in conferences regarding

3    implementation of the [clarification order]"). The government will claim, without

4    evidence, that holding the government accountable by taking discovery is

5    "antithetical to this progress" and a supposedly "collaborative process" that is

6    ongoing between the parties. Dkt. 657 at 10. That is not the case. As outlined above,

7    there is no "collaborative process" concerning implementation of this Court's

8    Orders. Plaintiffs have repeatedly asked the government to provide the information

9    required by this Court's Orders and inquired as to how the government is complying

10   with those Orders. *Supra* at 9-13. In response, the government has provided non-

11   answers and filed a mountain of papers on this Court's and the Ninth Circuit's

12   dockets seeking to stay, limit, or appeal this Court's Orders in any way possible. *See*

13   *supra* at 1-2. The government simply is not taking "comprehensive" or "substantial"

14   steps toward compliance; they are seeking to avoid compliance altogether. Asylum

15   seekers who are likely members of the PI class keep coming within hours of being

16   removed. *See supra* at 8, 11-13.  To prevent such scenarios, this Court must hold the

17   government accountable via discovery and grant the pending motion to enforce (Dkt.

18   644) as soon as possible. *See, e.g.*, *Abdi*, 2019 U.S. Dist. LEXIS 72762, at *10-11

19   (rejecting argument that government had complied with preliminary injunction and

20   class notice orders and noting that the government's "inadequate explanation [was]

21   only compounded by [its] failure to engage in meaningful discussions with [the

22   plaintiffs]"); *Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans*

23   *Affairs*, 842 F. Supp. 2d 127, 131 (D.D.C. 2012) ("Equity would not be achieved if

24   a court decided simply to rubber-stamp an enjoined party's unsupported self-

25   assessment of its compliance with a court order.").

26        As it has previously argued, the government also likely will claim that even if

27   this Court believes that the government's compliance with the Orders has been less

28   than exemplary, the discovery that Plaintiffs propose is simply too "burdensome."

PLS' MOT. FOR DISCOVERY RE
COMPLIANCE WITH PRELIMINARY INJUNCTION

1    In addition, the government likely will claim that discovery into class member

2    identities, the methodology for identifying class members, and how the government

3    has complied with Orders is "immensely," "extremely," or "prohibitively"

4    burdensome and disproportionate because the government "does not electronically

5    track" the reasons for asylum denials or whether an individual was subject to

6    metering. *See* Dkt. 641 at 2. The government will claim further that discovery will

7    force it to manually review and produce records (as often happens in discovery). *Id.*

8    This Court has addressed and rejected those same arguments on multiple occasions.

9    *Id.* (collecting prior opinions). As both this Court and the Ninth Circuit have

10    explained, any record keeping deficiencies and consequent burdens associated with

11    identifying class members and providing that information to Plaintiffs is a mess of

12    the government's own making. *Id.*; *see also Al Otro Lado, Inc.*, 952 F.3d at 1008

13    (finding that the government's alleged harm in complying with the preliminary

14    injunction was "largely self-inflicted" and "the result of the government's own

15    failure to keep records of asylum seekers who have been metered or to provide the

16    asylum seekers with documentation of their attempt to seek asylum."). Plaintiffs will

17    not belabor this point further. The government's forthcoming, tired, and unfounded

18    burden arguments should be rejected (again).

19                        **CONCLUSION**

20    Fifteen months after this Court issued its PI, the government is still refusing

21    to provide basic information that would enable Plaintiffs to ensure that the

22    government is actually complying with this Court's Orders. Class members who

23    have been attempting to have the merits of their asylum claims considered since at

24    least July 2019 cannot wait any longer for the government to get its act together. The

25    evidence suggests that PI class members are falling through the cracks and coming

26    perilously close to removal (and may have been erroneously removed in violation of

27    this Court's PI). If the government is not willing to provide information

28    cooperatively or via a Court order, it should be required to submit to limited and

PLS' MOT. FOR DISCOVERY RE
COMPLIANCE WITH PRELIMINARY INJUNCTION

1  expedited discovery focused on the government's compliance with the PI and

2  subsequent orders clarifying or enforcing the PI. Plaintiffs' motion should be granted

3  in full.

4  Dated: February 16, 2021

MAYER BROWN LLP
5       Matthew H. Marmolejo
        Ori Lev
6       Stephen M. Medlock

7  SOUTHERN POVERTY LAW
8  CENTER
        Melissa Crow
9       Sarah Rich
10      Rebecca Cassler

11  CENTER FOR CONSTITUTIONAL
12  RIGHTS
        Baher Azmy
13      Angelo Guisado

14  AMERICAN IMMIGRATION
15  COUNCIL
        Karolina Walters

16

17  By: */s/ Stephen M. Medlock*
18      Stephen M. Medlock

19  *Attorneys for Plaintiffs*

20

21

22

23

24

25

26

27

28

PLS' MOT. FOR DISCOVERY RE
COMPLIANCE WITH PRELIMIARY INJUNCTION

1

## CERTIFICATE OF SERVICE

2      I certify that I caused a copy of the foregoing document to be served on all

3  counsel via the Court's CM/ECF system.

4  Dated:  February 16, 2021                MAYER BROWN LLP

5

6                                            By  /s/ Stephen M. Medlock

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28