MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:   +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Alejandro Mayorkas,[1] *et al.*, <br><br> Defendants. | Case No.:  17-cv-02366-BAS-KSC <br><br> **EXHIBIT 1 TO DECLARATION OF STEPHEN M. MEDLOCK** |

---

[1] Secretary Mayorkas is automatically substituted pursuant to Fed. R. Civ. P. 25(d).

1  CENTER FOR CONSTITUTIONAL RIGHTS
      Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
2     *bazmy@ccrjustice.org*
      Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
3     *gschwarz@ccrjustice.org*
      Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
4     *aguisado@ccrjustice.org*
   666 Broadway, 7th Floor
5  New York, NY 10012
   Telephone: +1.212.614.6464
6  Facsimile: +1.212.614.6499

7  SOUTHERN POVERTY LAW CENTER
      Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
8     *sarah.rich@splcenter.org*
      Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
9     *rebecca.cassler@splcenter.org*
   150 E. Ponce de Leon Ave., Suite 340
10 Decatur, GA 30030
   Telephone: +1.404.521.6700
11 Facsimile: +1.404.221.5857

12 AMERICAN IMMIGRATION COUNCIL
      Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
13    *kwalters@immcouncil.org*
   1331 G St. NW, Suite 200
14 Washington, D.C. 20005
   Telephone: +1.202.507.7523
15 Facsimile: +1.202.742.561

MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: +1.202.263.3000
Facsimile: +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Alejandro Mayorkas,[1] *et al.*, <br><br> Defendants. | Case No.: 17-cv-02366-BAS-KSC <br><br> **DECLARATION OF REBECCA CASSLER IN SUPPORT OF PLAINTIFFS' EXPEDITED MOTION FOR DISCOVERY CONCERNING COMPLIANCE WITH PRELIMINARY INJUNCTION** |

---

[1] Secretary Mayorkas is automatically substituted pursuant to Fed. R. Civ. P. 25(d).

DECLARATION OF REBECCA CASSLER

1
2 CENTER FOR CONSTITUTIONAL RIGHTS
    Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
3   *bazmy@ccrjustice.org*
    Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
4   *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
5 New York, NY 10012
Telephone: +1.212.614.6464
6 Facsimile: +1.212.614.6499

7
SOUTHERN POVERTY LAW CENTER
8   Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
    *sarah.rich@splcenter.org*
9   Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
    *rebecca.cassler@splcenter.org*
10 150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
11 Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857
12

13
AMERICAN IMMIGRATION COUNCIL
14   Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
    *kwalters@immcouncil.org*
15 1331 G St. NW, Suite 200
Washington, D.C. 20005
16 Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619
17

18

19

20

21

22

23

24

25

26

27

28

2   DECLARATION OF REBECCA CASSLER

**DECLARATION OF REBECCA CASSLER**

I, Rebecca Cassler, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am an attorney with at the Southern Poverty Law Center ("SPLC") and counsel for the Plaintiffs in this case.

2. I make this declaration in support of the Plaintiffs' expedited motion for discovery concerning compliance with preliminary injunction.

**Communications from PI Class Members to Plaintiffs' Counsel & Efforts by Plaintiffs' Counsel to Obtain Information from the Government**

3. In conferrals over the course of the preceding months, Plaintiffs' counsel learned that the government has created a document to be provided to certain noncitizens in government custody stating that they may be PI class members and that they will be subject to further screening. *See* Dkt. 657-6. Plaintiffs' counsel provided an email address to be included in that document for potential PI class members to contact Plaintiffs' counsel. The sufficiency of the notice provided to potential PI class members through this document is in dispute in Plaintiffs' pending Motion to Enforce the Preliminary Injunction. *See* Dkt. 646 at 24-27; Dkt. 665 at 12.

4. At no point has the government provided Plaintiffs' counsel with a list of individuals to whom the notice has been provided.

5. In the late afternoon on Friday, January 22, 2021, Plaintiffs' counsel received an email from a family member of a detained individual, ███████ ███████ ("SC"), A███████, who had received the document described in the prior paragraph. The email stated that SC had received "a stay letter from the detention center and is looking further to have another interview with the judge." In the email, the family member asked whether he could do anything to support SC.

6. Plaintiffs' counsel responded on Sunday, January 24, 2021, requesting documents about SC's case. In a follow-up email on Monday, January 25, 2021, SC's family member asked if there is "anything that can be done to help [SC] in

parole [or] Bond."

7. After receiving the initial email from SC's family member, and without access to any details about SC's case, Plaintiffs' counsel wrote to government counsel on January 25, 2021, asking if the government's position had changed regarding their request for a protective order prior to sharing information with Plaintiffs' counsel. Plaintiffs requested that "Defendants withdraw their motion for protective order and proceed with sharing information with Plaintiffs to facilitate compliance with the Court's orders regarding relief for the PI class." The email further stated: "Now that Defendants have distributed notice to potential class members with Plaintiffs' counsel's contact information, such information sharing is necessary to ensure that Plaintiffs' counsel may meaningfully respond to potential class members."

8. Government counsel responded on January 26, 2021, stating that the government would not withdraw its request for a protective order, and stating that "if class members reach out to you they can also sign a Privacy Act Waiver or similar written statement authorizing disclosure, like the Applicant did." Defendants' counsel then asked what information Plaintiffs' counsel anticipates needing to respond to PI class members.

9. On January 27, 2021, Plaintiffs' counsel responded, stating:

> We are facing another situation in which a family member has reached out to us on behalf of a detained individual. The information we need to be able to assist class members is information about their cases, the status of their cases, and what the next steps are – e.g., are they scheduled for a class membership screening interview and when. For example, at a minimum, it would be helpful to have any decisions or determinations rendered by the government in the potential class members' cases, specifically whether a prior AOL screening interviewed [sic] occurred and the record of that screening; any prior IJ decision; any prior BIA decision; and any prior CFI or RFI transcript. We continue to believe that the extant court order requires the government to share this information with us and reserve our rights to

4     DECLARATION OF REBECCA CASSLER

Case 3:17-cv-02366-BAS-KSC   Document 680-3   Filed 02/16/21   PageID.57174
Page 7 of 17

seek further court intervention on this issue.

10. On January 28, 2021, government counsel responded by email, stating that the government "do[es] not agree that the Court's orders contemplate providing Class Counsel with" the records Plaintiffs' counsel requested "for every potential class member," but that government counsel "can take back to the client agencies particular requests for information based on a particularized need." The email further stated that the agencies would not provide any such information without either "an appropriate protective order" or authorization to release such information from the individual to whom the records pertain.

11. Following that exchange, Plaintiffs' counsel undertook efforts to schedule a legal call with SC for the purpose of discussing whether the individual would be willing to sign a privacy waiver. Those efforts, which to date have been unsuccessful, are described in detail in the concurrently filed Declaration of Cindy Escoto.

**Potential Deportations of PI Class Members**

12. At the end of January 2021, an SPLC staff member learned that a flight was scheduled to depart on February 3, 2021 to remove noncitizens from the United States to Cameroon or other African countries. SPLC's knowledge of that flight is described in more detail in the concurrently filed Declaration of Katrina Huber.

13. On the morning of February 2, 2021, Plaintiffs' counsel received a list of nine individuals whom advocates, lawyers, volunteers or family members had reason to believe might be PI class members who also appeared to be scheduled for removal on the flight the following day.

14. At 10:18 am[2] on February 2, 2021, counsel for Plaintiffs sent counsel for the government an email providing the names and A numbers of these nine

---

[2] All times in this declaration refer to Eastern Standard Time.

individuals that plaintiffs had reason to believe were potential PI class members scheduled to be deported the next day. The names of the individuals, their A numbers, and their pseudonyms for purposes of this declaration are:



a. ███████████████, A███████ ("AS")
b. ████████, A███████ ("NF")
c. ████████, A███████ ("MC")
d. █████████████, A███████ ("GN")
e. ██████████, A███████ ("NC")
f. ███████████████████, A███████ ("FL")
g. ███████████████, A███████ ("LW")
h. ████████, A███████ ("BC")
i. █████████████, A███████ ("JM")

15. The email further noted:

> we are in the process of trying to obtain more details regarding each of their cases, but – given the urgency of the situation – we hereby request that these individuals not be deported until their status can be confirmed. If they are in fact AOL class members, and if the Asylum Ban formed any part of the basis for denying them asylum (whether or not in conjunction with other reasons), their deportation would violate the terms of the preliminary injunction currently in place. Based on preliminary information we have obtained, we understand that at least one of these individuals ([GN]) did have the asylum ban applied to him. Please let us know by no later than 4 pm today whether the government will stop their deportation pending ascertainment of their entitlement to PI relief so that we can consider what further steps we need to take.

16. At 4:04 pm on February 2, 2021, government counsel responded that they had conveyed the information and Plaintiffs' request "to the agencies this morning and are awaiting a response." Counsel also asked what Plaintiffs meant by "pending ascertainment of their entitlement to PI relief."

17. At 4:56 pm on February 2, 2021, counsel for Plaintiffs responded and explained that "[u]nder the PI and Clarification Order, these individuals should not

be deported unless and until it has been determined that (a) they are not class members or (b) their asylum/fear claim was not denied based on the Asylum Ban (regardless of whether other reasons were also articulated for the decision). 'Pending ascertainment of their entitlement to PI relief' means until it has been determined that they are not entitled to the protections of the PI, as clarified by the Clarification Order—i.e., that they fit into one of the categories listed above (not a class member or didn't have claim denied based on Asylum Ban). If any such individual is a class member whose fear/asylum claim was denied based on the Asylum Ban (regardless of whether other reasons were also articulated for the decision) then the individual would be entitled to notice of the PI and its import and reopening/reconsideration relief."

18. In the 4:56 pm email, counsel for Plaintiffs further informed the government that Plaintiffs had learned that:

    a. GN ███████████████████████, ███████████████
   ███████, and that the Asylum Ban was applied in his case;

    b. NF was ███████████████████████████████
   ███████████; and

    c. NC ███████████████████████████████████.

19. In the 4:56 pm email, counsel for Plaintiffs also stated: "Given your inability to confirm that the deportation of the[se] individuals and the others listed below has been halted pending ascertainment of their entitlement to PI relief, can you please let us know when the flight will depart? We are hoping to avoid yet another emergency motion before Judge Bashant."

20. Having received no further response from the government, at approximately 6:30 pm on February 2, 2021, counsel for the Plaintiffs called counsel for the government to inquire as to the status of the flight and the potential PI class members who had been identified. During that phone call, counsel for the government stated that:

a. She was unable at that time to share information regarding the status of the nine potential PI class members that Plaintiffs had identified, in part because no protective order had been entered;

b. She could not share the time of the deportation flight due to "security concerns" other than to state that the flight was not scheduled to depart on that day (i.e., on February 2);

c. All individuals on the flight met one of the screening criteria the parties had discussed in November 2020 shortly after the Court issued its Clarification Order on October 30, 2020 (Dkt. 605).

   i. Counsel for the government expressly noted that this included cases where an initial adjudicator (e.g., an immigration judge) had deemed an individual ineligible for asylum based on the Asylum Ban, and a subsequent adjudicator (e.g., the BIA) affirmed that determination on grounds other than the Asylum Ban.

   ii. Counsel for the government noted that this was one of the screening criteria on which the parties disagreed.

21. On the call, Plaintiffs' counsel indicated that absent additional information from government counsel, Plaintiffs would feel compelled to seek the Court's intervention.

22. At 7:40 pm on February 2, 2021, counsel for the government emailed Plaintiffs' counsel and stated that ICE had ▊▊▊▊▊▊▊▊▊ of five of the nine individuals identified by Plaintiffs as potential PI class members: AS, MC, GN, NC, and JM. Government counsel also noted that one of the individuals, NF, was ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊. Finally, government counsel stated that she did not yet have information regarding the remaining three individuals (FL, LW, BC) but was "working on what information we can provide about these individuals."

23. At 8:28 pm, Plaintiffs' counsel obtained a separate list of individuals

whom advocates, lawyers, volunteers, or family members believed were scheduled to be removed on the flight the following day. Plaintiffs' counsel compared that list with the few copies of the metering waitlists in their possession (Tijuana, Mexicali, and Ciudad Juárez) covering a period of time prior to July 16, 2019, which Plaintiffs' counsel also previously provided to government counsel. Plaintiffs' counsel located eleven individuals in total who were on the list of those believed to be scheduled for removal the following day who were also on a metering waitlist in Plaintiffs' counsel's possession. The eleven identified individuals included JM, NC, MC, NF, and GN—five of the six people government counsel had identified in their 7:40 pm email as having received stays of removal. Plaintiffs' counsel's comparison of the lists also identified six other individuals who were on both the anticipated flight list and a metering waitlist for either Tijuana or Mexicali.

24. At 9:30 pm on February 2, 2021, counsel for Plaintiffs emailed counsel for the government. The email stated: "We are still concerned about the three other individuals we previously identified as to whom the government has provided no information. We note that each of the individuals was denied asylum by an IJ prior to June 30, 2020 [the date that Asylum Ban was vacated in *CAIR Coalition v. Trump*, 471 F. Supp. 3d 25 (D.D.C. 2020), had his or her appeal denied by BIA after June 30, 2020, and has a pending motion[] to reopen or reconsider. We are concerned, therefore, that these are individuals who either (a) were incorrectly determined not to be class members (as the Applicant was, *see* Dkt. 607), or (b) fall into the disputed screening category we discussed earlier tonight – i.e., had their asylum claim denied by the IJ based on the Asylum Ban and then had the BIA affirm the denial on other grounds. As you know, we believe such individuals to be entitled to reopening/reconsideration relief. *See* Memo ISO Motion to Enforce at 24-25. **The government should not be removing such individuals pending the Court's decision on the Motion to Enforce**."

25. The 9:30 pm email also informed the government that Plaintiffs had

recently learned that six additional individuals scheduled to be on the next day's flight appeared on either the Tijuana or Mexicali waitlists prior to July 16, 2019. Plaintiffs asked the government to either confirm that these individuals did not have the asylum ban applied to them (at any stage of the proceeding) or stay their removal. The Plaintiffs identified the following individuals, along with their A numbers and waitlist numbers and waitlist dates, to the government:

    a. Tijuana, #3493, 6/24/19— ▓▓▓▓ ("AT")
    b. Tijuana #3296, 7/2/19— ▓▓▓▓ ("CV")
    c. Tijuana #3358, 6/10/19— ▓▓▓▓ ("NR")
    d. Tijuana #3253, 6/2/19— ▓▓▓▓ ("TN")
    e. Tijuana #3481, 6/21/19— ▓▓▓▓ ("MT")
    f. Mexicali #3197, 6/10/19— ▓▓▓▓ ("FT")

26. Finally, the 9:30 pm email also noted: "Our identification of these individuals as well as the others identified earlier today whose removal has now been stayed raises serious questions about the government's screening efforts and its compliance with the PI and the Clarification Order. The government may wish to halt this flight while it ensures that it is in compliance with the Court's orders. **If class members subject to the PI are removed on tomorrow's flight we will seek contempt sanctions**."

27. At 9:46 pm on February 2, 2021, government counsel responded by email stating that "we are unlikely to provide information on the additional individuals tonight, including about removal status." Counsel also provided additional information regarding the remaining three of the original nine potential PI class members that Plaintiffs had identified:

    a. LW "entered at the ▓▓▓▓ on ▓▓▓▓; he received

1    a decision from BIA on ▬▬▬, affirming the IJ's
2    removal order, and which does not rely on the transit rule in the
3    resolution of the appeal. He was also ▬▬▬
4    ▬▬▬."

  b. BC "entered at the ▬▬▬ on ▬▬▬; he received
  a decision from the BIA on ▬▬▬, affirming the IJ's
  removal order, and which does not rely on the transit rule in
  resolution of the appeal."

  c. FL "entered on ▬▬▬ at the ▬▬▬, … he has an ▬▬▬
  ▬▬▬, and … we are still
  investigating his status with respect to class membership and
  screening."

28.   At 10:38 pm on February 2, 2021, Plaintiffs' counsel informed counsel for the government that Plaintiffs intended to seek (a) the Court's intervention to halt the flight to ensure that no individuals entitled to protection under the PI would be removed and (b) discovery into the government's apparent non-compliance with the preliminary injunction.

29.   In emails at 11:56 pm on February 2, 2021 and 12:10 am on February 3, 2021, government counsel informed Plaintiffs' counsel that all fifteen individuals whom Plaintiffs' counsel had identified as potential PI class members earlier in the day on February 2 "▬▬▬
▬▬▬."

30.   Upon learning that all potential PI class members scheduled to be on the flight and identified by Plaintiffs' counsel ▬▬▬, Plaintiffs' counsel notified government counsel in an email at 12:35 am on February 3, 2021, that Plaintiffs would not be filing a motion to halt the scheduled flight.

31.   At 9:39 am on February 3, 2021, Plaintiffs' counsel provided to


government counsel, by email, two additional names of potential PI class members whom advocates, volunteers, attorneys, or family members had identified as possibly scheduled for removal on the flight that day: ███████ ("LA"), ███████, and ███████ ("KP"), A███████.

32. At 11:48 am on February 3, 2021, government counsel responded by email stating that "I███████," and that "███████."

33. At 2:32 pm on February 3, 2021, government counsel emailed Plaintiffs' counsel and stated that LA "███████, and for that reason was ruled out for class membership." In the same email, government counsel noted the length of the stays granted to the fifteen individuals identified by Plaintiffs' counsel the day before: twelve had ███████, one (NF) had a ███████, one (MT) ███████ and one (BC) ███████."

34. Information publicly available on EOIR's website indicates that fourteen of the seventeen potential PI class members identified by plaintiffs—AS, NF, MC, GN, NC, FL, LW, BC, JM, AT, NR, TN, MT, and FT—were each ordered removed by an immigration judge prior to June 30, 2020 (when the district court in DC vacated the Asylum Ban) and had their appeals denied by the BIA after June 30, 2020 (presumably on grounds other than the vacated Asylum Ban). This fact pattern is currently a subject of Plaintiffs' pending Motion to Enforce the Preliminary Injunction. *See* Dkt. 646 at 24-25. Of these fourteen potential PI class members, four of them—MC, NC, TN, and FT—were ordered removed by an immigration judge prior to March 5, 2020 (when the Ninth Circuit lifted the administrative stay of the PI). Apart from these fourteen, one other individual—█—received an ███████ in January 2020 (while the PI was administratively stayed).

35. Ultimately, the removal flight scheduled for February 3, 2021 never left. According to The Guardian, ICE cancelled the flight after receiving reports that Cameroonians scheduled for removal had been "assaulted by ICE officers and forced to put their fingerprints on documents authorizing their own deportation to a country where they believed they risked prison, torture or extrajudicial killing." Julian Borger, "Exclusive: Ice Cancels Deportation Flight to Africa after Claims of Brutality," *The Guardian* (Feb. 4, 2021), https://www.theguardian.com/us-news/2021/feb/04/ice-cancels-deportation-flight-african-asylum-seekers-brutality. An ICE spokesperson told The Guardian that ICE "decided to cancel the . . . flight to allow any potential victims or witnesses an opportunity to be interviewed" regarding the abuse allegations.

36. On February 5, 2021, Plaintiffs' counsel conferred with government counsel by telephone regarding the seventeen potential PI class members Plaintiffs' counsel identified on February 2 and 3. Plaintiffs' counsel asked the government to (a) identify the class member status of each of those individuals within seven days and (b) commit to providing Plaintiffs with seven days' advance notice before removing any of those individuals to allow the parties time to confer and, if necessary, seek court intervention. Government counsel said the government would consider the request and also asked if Plaintiffs would agree to entry of a temporary protective order pending the Court's ruling on Plaintiffs' Motion to Enforce (Dkt. 644) and the government's Motion for Protective Order (Dkt. 647). Government counsel indicated that she would forward a draft protective order with "tweaks" for Plaintiffs' consideration. Plaintiffs' counsel also informed the government that Plaintiffs intended to move for discovery regarding the government's compliance with the preliminary injunction. The parties met and conferred regarding Plaintiffs' request for discovery but were unable to reach agreement.

37. On February 10, 2021, government counsel forwarded a proposed protective order. The proposed protective order was substantively identical to the

1  order sought by the government in its pending motion, except that it limited
2  Plaintiffs' record retention obligations to those further disclosures of information
3  agreed to by the parties or authorized by the Court (as opposed to applying to any
4  further disclosures of information).

5      38.   On February 12, 2021, government counsel provided the following
6  information by email to Plaintiffs' counsel regarding the seventeen potential class
7  members identified by Plaintiffs' counsel on February 2 and 3:

    a. LA "█████████████████████████████";

    b. CV "██████████████████████████████████
█████████████████";

    c. AT and NR "██████████████████████████████
███████████";

    d. AS, NF, MC, GN, NC, LW, BC, JM, TN, and MT "████████
████████████████████████████████████████████
████████████████████████████████████████████
██████"; and

    e. DHS is "looking again at" FL, KP, and FT and "can provide more information related to class membership determinations upon entry of an appropriate protective order or receipt of a privacy act waiver or similar written consent."

    39.   Government counsel also noted in the same February 12, 2021, email that BC's removal "████████████████████" but that his removal "has ████████████" and he has "████████████████████."

    40.   Government counsel also noted in the same February 12, 2021 email that "ICE is not able to proactively provide information about removal dates due to operational concerns," but it can provide updates about "detention status and/or stays of removal should Plaintiffs request" such information, noting that it may take 24-48 hours to respond to such requests.

I declare under penalty of perjury under the laws of the United States of America that the preceding declaration is true and correct.

Executed on this 16th day of February 2021 at Fort Worth, Texas.

*/s/ Rebecca Cassler*

Rebecca Cassler