UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

AL OTRO LADO, INC., et al.,

Plaintiffs,

v.

CHAD F. WOLF, Acting Secretary, U.S. Department of Homeland Security, in his official capacity, et al.,

Defendants.

Case No.: 3:17-cv-02366-BAS-KSC

**REPORT AND RECOMMENDATION FOR ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SANCTIONS**

**[Doc. No. 549]**

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute Concerning Spoliation Sanctions (the "Joint Motion" or "Jt. Mot."). Doc. No. 548 (sealed); Doc. No. 549 (redacted, public version). In the Joint Motion, plaintiff requests evidentiary sanctions be imposed against defendants for the destruction of handwritten meeting notes. Because the requested sanctions may affect the conduct of the trial in this matter, the undersigned Magistrate Judge makes this Report and Recommendation to the Honorable Cynthia A. Bashant pursuant to 28 U.S.C. § 636 and Civ.LR 72.1. *See Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, Case No. C 06–3359 JF (RS), 2009 WL 1949124, at *10 (N.D. Cal. July 2, 2009) (noting that the "precise contours" of evidentiary sanctions "must be left to" the judge presiding over the trial). Having carefully considered the

///

parties' submissions and the arguments of counsel, and for the reasons set forth below, the Court **RECOMMENDS** that plaintiffs' request for sanctions be **GRANTED IN PART** and **DENIED IN PART**. The Court will address the parties' request to seal confidential exhibits attached to the Joint Motion, and portions of the Joint Motion that reveal confidential information, by separate Order. *See* Doc. Nos. 547, 677.

## I. BACKGROUND

Plaintiffs' underlying claims in this case arise out of defendants' implementation of the so-called "Turnback Policy," which plaintiffs assert defendants wrongfully implemented to discourage individuals from seeking asylum in the United States. Jt. Mot. at 4; *see also* Doc. No. 189 at ¶¶ 3, 5, 72-83. Certain aspects of the Turnback Policy are referred to as "queue management" or "metering." Jt. Mot. at 4.[1]

The instant dispute concerns handwritten notes taken by Randy Howe and Todd Owen during daily meetings with leadership personnel at the U.S. Customs and Border Protection's ("CBP") Office of Field Operations ("OFO"), during which queue management, metering and/or the Turnback Policy may have been discussed. *Id.* at 4-6, 8, 19-20. To remedy the destruction of the meeting notes, plaintiffs state the "proper sanction" is for the Court to "adopt a rebuttable presumption that (a) at the daily OFO leadership meeting, Mr. Owen and Mr. Howe instructed CBP officers to turn back asylum seekers who were arriving at ports of entry on the U.S.-Mexico border and (b) the notes taken by Mr. Owen and Mr. Howe would show that the [T]urnback [P]olicy is based on pretext." *Id.* at 13.

Defendants admit that Messrs. Owen and Howe, two senior officials at OFO, destroyed the notes they took during these briefings. *Id.* at 20-21. However, they argue the requested rebuttable presumption is not warranted, because plaintiffs have failed to

[1] Citations herein are to the Court's ECF-generated page numbers, except for witness and counsel declarations, citations to which are to numbered paragraphs.

demonstrate both that the spoliated evidence was relevant to their claims, and that they were prejudiced by the spoliation. *Id.* at 23-28.

## II. LEGAL STANDARD

The law imposes upon litigants "a duty to preserve evidence which [they] know[] or reasonably should know is relevant to" pending or reasonably anticipated legal action. *In re Napster*, *Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006). Once the duty to preserve evidence is triggered, a party must "preserve all relevant documents related to the litigation." *Id.* at 1070. Litigants need not preserve "every shred of paper," but they must take care not to destroy "unique, relevant evidence that might be useful to an adversary." *Zubulake v. UBS Warburg*, *LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003). A party's "failure to preserve documents or things for another's use as evidence in pending or reasonably foreseeable litigation" is known as spoliation. *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1052 (S.D. Cal. 2015).

The Court may sanction a party who has spoliated evidence in the exercise of its inherent powers, or under Federal Rule of Civil Procedure 37. *See id. at* 1052-53 (noting these "two sources of authority" for imposing spoliation sanctions). "A trial court's discretion in selecting the form of a spoliation sanction is broad, and can range from comparatively minor sanctions, such as awarding attorney's fees, to more severe sanctions, such as dismissal." *Rockman Co. (USA)*, *Inc. v. Nong Shim Co.*, *Ltd.*, 229 F. Supp. 3d 1109, 1121 (N.D. Cal. 2017). In exercising this discretion, the Court should consider "'(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party.'" *Id.* at 1122 (citation omitted).

The Court may impose sanctions for spoliation even in the absence of bad faith. *See Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 288 (N.D. Cal. 2015). Indeed, even "simple notice" of the evidence's "potential relevance to the litigation" is a sufficient basis to impose sanctions. *Id.* (quoting *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993)). "However, a party's motive or degree of fault is relevant to what sanction, if any,

is imposed." *In re Napster*, 462 F. Supp. 2d at 1066-67. As a rule, "courts should choose'the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim.'" *Id.*

**III. DISCUSSION**

**A. The Spoliated Meeting Notes**

The Court begins its discussion with a description of the documents at issue. Mr. Howe testified at his deposition that each weekday at 8:15 a.m. he and others in operations leadership met with Mr. Owen to "brief" him "on the daily happenings of the last 24-hour period."[2] Deposition of Randy Howe ("Howe Depo."), Doc. No. 549-3 at 14. Mr. Howe declares that "[t]he intent of these daily meeting was to brief [Mr.] Owen on significant events that occurred at all ports of entry," and the operations meetings were "relatively informal." Declaration of Randy Howe ("Howe Decl."), Doc. No. 549-10, ¶ 3. The topics for each meeting varied and the discussion "consisted of a high-level overview of significant events and issues." *Id.*, ¶¶ 3-4.

Messrs. Owen and Howe acknowledge that the topics of queue management generally and metering specifically may have come up at the operations meetings. *See* Declaration of Todd C. Owen ("Owen Decl."), Doc. No. 549-9, ¶ 8; Deposition of Todd Owen ("Owen Depo."), Doc. No. 549-12, at 15-16; Howe Decl., ¶ 4; Howe Depo. at 16-17. However, both deny that there was any deliberation related to metering or queue management *per se* at the operations meetings. Mr. Howe states that because the daily operations meeting was intended only to "provide a … high-level snapshot" to Mr. Owen, it would not have been the appropriate venue for "substantive discussion and decision-making" regarding "the implementation of particular policies." Howe Decl., ¶ 4. Mr. Owen similarly describes the operations meetings as "an operational recap" of significant events and issues over the preceding 24 hours. Owen Decl., ¶ 4. Mr. Owen further states

---

[2] The Court refers to the daily 8:15 a.m. meetings of operations leadership as the "operations meetings."

that "the purpose of these meetings is not to make substantive decisions or to have substantive discussions about the implementation of particular policies." *Id.*, ¶ 7.

Mr. Howe testified that in preparation for the operations meetings, he wrote down on "loose-leaf paper" some "very basic words to trigger [his] mind" about matters about which he was to "advise" Mr. Owen. Howe Depo. at 14-15. During the meetings, Mr. Howe might then "make a little note" about anything he needed to discuss with his direct reports, with whom he met every weekday at 9:00 a.m. – that is, immediately following the 8:15 operations meeting.[3] *Id.* at 15, 16. Once both meetings concluded, Mr. Howe's custom was to "place [the notes] in his shred bin." *Id.* at 15. The day before Mr. Howe's January 2020 deposition, defendants' counsel disclosed to plaintiffs' counsel that they had discovered Mr. Howe did not preserve his handwritten notes of the operations and staff meetings, which was also confirmed in later-served interrogatory responses. *See* Declaration of Katherine J. Shinners ("Shinners Decl."), Doc. No. 549-8, ¶ 3; Doc. No. 549-5 at 4; Doc. No. 549-4 at 13.

Plaintiffs deposed Mr. Owen in December 2019, during which he was neither questioned nor offered testimony about his own note-taking practices at the operations meetings. *See generally* Doc. No. 549-12. He subsequently revealed, however, that during the operations meetings he would "write down particular words or phrases to remind myself to take future action" and to "jog [his] memory of particular follow up actions." Owen Decl., ¶ 10. Like Mr. Howe, Mr. Owen's "standard practice" was to "discard" his notes once any "appropriate follow up" had been completed. *Id.*, ¶ 11. Defendants informed plaintiffs of the possibility that Mr. Owen failed to preserve his notes from the operations meetings through an interrogatory response served in June 2020. *See* Doc. No. 549-4 at 13; Shinners Decl., ¶ 6.

///

---

[3] The Court refers to Mr. Howe's daily meetings with his direct reports as the "staff meetings."

A third witness, Todd Hoffman, also attended the operations meetings. Defendants submit excerpts of Mr. Hoffman's June 2020 deposition and his sworn declaration, which reveal that Mr. Hoffman's practice was to keep a "notebook" that he used to take notes at any meetings he attended, including the operations meetings. *See* Declaration of Todd Hoffman ("Hoffman Decl."), Doc. No. 549-11, at ¶¶ 4-5; Doc. No. 549-13 ("Hoffman Depo.") at 8-9. When one notebook was full, he would start a new one. Hoffman Depo. at 5-6. Although Mr. Hoffman testified that it was "possible" that he attended operations meetings during which queue management was discussed and did not take notes, his belief was that "[his] notes are pretty comprehensive in that regard." *Id.* at 9. Mr. Hoffman preserved his notebooks (six in total) which were turned over to defendants' counsel and, ultimately, produced to plaintiffs in the litigation.[4] *Id.* at 8; *see also* Hoffman Decl., ¶ 6; Jt. Mot. at 21, 27.

**B. Litigation Holds**

In further support of their request for spoliation sanctions, plaintiffs assert that "[d]efendants' document preservation efforts" in this litigation "were woefully incomplete and under-inclusive." Jt. Mot. at 8. Plaintiffs note that although Mr. Owen was notified of the need to preserve relevant documents in July 2017, Mr. Howe did not receive his first litigation hold notice until December 2018 – more than a year after this litigation was initiated, and more than a year after he assumed his OFO leadership role. *Id.*; *see also* Howe Decl., ¶ 9 (stating that Mr. Howe first received a litigation hold notice in December 2018). Plaintiffs posit that the document destruction that occurred was the "predictable" result of defendants' "shoddy" document preservation. Jt. Mot. at 8.

In response, defendants stress that they have made "comprehensive preservation efforts," including "early and frequent distribution of litigation hold notices" – although not, admittedly, to Mr. Howe. *Id.* at 28-29 (acknowledging that Mr. Howe did not receive

[4] The parties do not state whether any witness maintained or produced notes of the staff meetings.

a "formal litigation hold in a timely manner"). Defendants' interrogatory responses indicate that written litigation hold notices were distributed to custodians at OFO's headquarters in July 2017, June 2018, December 2018, and March 2020. Doc. No. 549-4 at 11-13. Without revealing their contents, the Court notes that the litigation hold notices were broadly drafted and generally directed recipients to resolve any doubts on the side of preservation. Defendants also issued identical litigation hold notices to custodians in field offices in San Diego, Tucson, Laredo, and El Paso on multiple occasions beginning in July 2017 and continuing through June 2020. *See generally id.* at 14-24. In addition, verbal notices and supplemental reminders of the obligation to preserve documents were given sporadically from July 2017 through May 2020. *Id.* at 15.

Mr. Howe testified that he was advised by defendants' counsel that he "needed to preserve documents that were relevant to this case," and that he "understood" that the lawsuit related to defendants' practices with respect to processing individuals at ports of entry along the U.S.-Mexico border. Howe Depo. at 19-20. Although he received detailed instructions as to the preservation of evidence related to this case through litigation hold notices issued in December 2018 and again in March 2020, Mr. Howe stated he did not "interpret" those notices as requiring him to preserve his meeting notes because the notes did not "fall into the same category as the documents requiring preservation." Howe Decl., ¶ 9. He explained at his deposition that he made the subjective determination that his notes were not encompassed by the litigation holds because "[t]hey weren't substantive notes … They were only things to trigger me. It was just little notes to me. Nothing in great detail[.]" Howe Depo. at 20. Thus, he did not believe he was acting "in violation" of the litigation hold when he shredded his meeting notes. *Id.*

Mr. Owen declares he received four litigation holds in the action, the first of which he received in July 2017. Owen Decl., ¶11. Mr. Owen also "did not view [his meeting notes] as substantive records" requiring preservation pursuant to those litigation holds because they "[did] not convey the substance of any discussions or the substance of any

///

particular incident." *Id.* Thus, like Mr. Howe, Mr. Owen did not consider his notes "responsive to the litigation holds in this case." *Id.*

**C. Plaintiffs Are Not Entitled to the Requested Adverse Inferences at Trial**

As noted above, there is no dispute that Messrs. Howe and Owen destroyed evidence. The parties' dispute concerns what, if any, sanction for that spoliation is warranted. Plaintiffs request an adverse-inference sanction, which is "'among the most severe sanctions'" the Court can impose.[5] *See Apple*, *Inc. v. Samsung Elecs. Co.*, *Ltd.*, 888 F. Supp. 2d 976, 994 (N.D. Cal. 2006) (further noting that "an adverse inference instruction … should not be imposed casually") (citation omitted); *see also Compass Bank*, 104 F. Supp. 2d at 1054 (noting that to "justify" an adverse inference instruction "the spoliating party's degree of fault and the resulting prejudice to the other party must be significant"). Courts in this Circuit typically apply a three-part test, requiring the party seeking an adverse inference from spoliation to show that: "(1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the records were destroyed with a 'culpable state of mind'; and (3) the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Apple*, 888 F. Supp. 2d at 989 (noting that "[t]rial courts have widely adopted" this three-part test). "The purpose of an adverse inference is not to impose any moral blame but to restore evidentiary balance and the risk should fall on the party responsible for the loss." *Victorino v. FCA US LLC*, 2017 WL 4541653, at *9 (S.D. Cal. Oct. 11, 2017) (citation omitted).

///

---

[5] The Court understands that this matter will be tried by bench trial, so the adverse inference would not take the form of a jury instruction but would simply be adopted by the District Judge as she weighs the evidence. *See, e.g.*, *Matter of Hornblower Fleet, LLC*, Case No. 16CV2468 JM-LL, 2019 WL 1506870, at **2-3 (S.D. Cal. Apr. 5, 2019) (collecting cases and recommending the adoption of an adverse inference in a bench trial); *Perez v. United States Postal Serv.*, Case No. C12-00315 RSM, 2014 WL 10715267, at *1 (W.D. Wash. Sept. 3, 2014) (imposing sanctions in bench trial and noting that "[t]he adverse inference will … be drawn by the Court in deciding this case").

***1. Defendants Had an Obligation to Preserve the Meeting Notes***

The notes defendants' witnesses took during the daily operations meetings were both "unique" and – as will be addressed in greater detail below – "relevant" documents that would have been "useful" to plaintiffs in developing their case, and should have been preserved. *Zubulake*, 220 F.R.D. at 217; *see also* Howe Depo. at 23, 26 (Mr. Howe's testimony that his notes were a unique record of the operations meetings and the staff meetings). Defendants do not advance any persuasive argument that the meeting notes were exempt from this obligation – nor could they, as the notes are comfortably within the scope of defendants' litigation hold notice. *See* Doc. No. 682-1. The Court is not persuaded by the witnesses' "interpret[ation]" that the notes were not subject to the litigation hold because they were not "substantive records." Owen Decl., ¶ 11; *see also* Howe Decl., ¶¶ 8-9. Both witnesses acknowledge that the metering policy and operations at ports of entry were discussed during the operations meetings. *See* Owen Depo. at 15; Howe Depo. at 16. Having reviewed the litigation hold notice, which is broadly drafted and unambiguously alerts recipients to the need to preserve potentially relevant evidence, the Court finds no support for the witnesses' interpretation that the meeting notes were excepted from this instruction. And, the fact that another witness, Mr. Hoffman, preserved and produced his own handwritten notes from the operations meetings reinforces the Court's reading of the plain terms of the litigation hold notice. The Court agrees with plaintiffs that neither Mr. Howe nor Mr. Owen was permitted to "substitute their judgment for that reflected in the litigation hold that they received." Jt. Mot. at 6. Accordingly, the Court finds that defendants had an obligation to preserve the handwritten meeting notes.

***2. Defendants Acted with a Culpable State of Mind***

The requisite culpable state of mind for purposes of spoliation and adverse inference instructions does not require a finding of bad faith, but only a party's "conscious disregard" of its preservation obligations. *Apple*, 888 F. Supp. 2d at 998 (citation omitted). The required culpable state of mind "includes negligence." *Lewis v. Ryan*, 261 F.R.D. 513, 521 (S.D. Cal. 2009)).

Mr. Howe acknowledged at his deposition that he was instructed by defendants' counsel "to retain information related to this case," and that he understood the case related to the processing and inspection of individuals at ports of entry along the U.S.-Mexico border. Howe Depo. at 17, 19-20. Mr. Owen likewise admits to having received instructions to preserve documents relevant to the litigation. Owen Decl., ¶ 11. Defendants and their witnesses also concede that "implementation of queue management was sometimes discussed at these meetings, from an operational perspective." Jt. Mot. at 25; *see also* Howe Depo. at 16; Owen Decl., ¶ 8. Regarding his practice of shredding his notes from the operations meetings, Mr. Howe testified he did not believe he was violating his attorneys' instruction to preserve documents because the "notes weren't substantive," but just "little notes to [himself]" to "remind" or "trigger" him to take any appropriate next steps based on the discussion at the meeting. Howe Depo. at 20; *see also* Howe Decl., ¶ 7 (describing the notes as "one or two words that [he] would use to assist … in recalling a certain discussion point or reminding myself to follow up"). In a similar vein, Mr. Owen declares that his notes were "not substantive" but consisted of "particular words or phrases to remind [himself] to take future action," and therefore he did not consider them responsive to the litigation holds he received. Owen Decl., ¶ 10. Defendants also explain that no "substantive discussion and decision-making" occurred at the operations meetings, but was reserved for "other follow up meetings." *Id.*; *see also* Howe Decl., ¶ 4. According to Messrs. Howe and Owen, any "significant events" or follow-up actions from the operations meeting "would have been captured in electronic form." Howe Depo. at 20; Owen Decl., ¶ 10.

Based on the foregoing, the Court finds that neither Mr. Howe nor Mr. Owen acted in bad faith because there is no indication they destroyed their handwritten meeting notes with the "intent to deprive [plaintiffs] of relevant evidence." *See Coburn v. PN II, Inc.*, Case No. 2:07–cv–00662–KJD–LRL, 2010 WL 3895764, at *7 (D. Nev. Sept. 30, 2010); *see also U.S. E.E.O.C. v. Wedco, Inc.*, Case No. 3:12–cv–00523–RCJ–VPC, 2014 WL 4635678, at *5 (D. Nev. Sept. 15, 2014) (declining to find bad faith where witness

"shredded his handwritten notes" because he viewed them as a "draft" and the "important information" was transferred to the final document). Nevertheless, as explained above, Mr. Howe's and Mr. Owen's reading of the litigation hold notices – which specifically directed the preservation of internal communications and handwritten notes, among other things – was unreasonable. *See* Doc. No. 682-1. Both Mr. Howe and Mr. Owen (a named defendant in the case) knew or should have known that their meeting notes were potentially relevant to the litigation, and of their preservation obligations. Therefore, the Court finds the destruction of their meeting notes despite clear instructions from their attorneys to preserve them was negligent.

True, Mr. Howe did not receive a litigation hold notice until December 2018, and some of the spoliation occurred before that date. Howe Decl., ¶¶ 2, 9. Plaintiffs initiated this action in July 2017, and Mr. Howe assumed a leadership role at CBP in October 2017 – yet, he did not receive his first hold notice until December 2018. *See* Howe Decl., ¶ 9. Defendants' failure to timely issue a hold notice to Mr. Howe is an independent breach of their duty of preservation, because it was incumbent upon defendants' senior personnel to "communicate" the organization's preservation obligations "to employees in possession of discoverable materials." *Napster*, 462 F. Supp. 2d at 1070 (quoting *Nat'l Ass'n of Radiation Survivors*, 115 F.R.D. 543, 557-58 (N.D. Cal. 1987)). Defendants emphasize that they have made "comprehensive preservation efforts," including "early and frequent distribution of litigation hold notices," but do not offer any explanation to justify the extraordinary delay in issuing a hold notice to Mr. Howe specifically. Jt. Mot. at 29. Furthermore, the "implementation of a litigation hold" is "only the beginning" of compliance with a party's discovery obligations, and "[c]ounsel must oversee compliance… [and] monitor[] the party's efforts to retain and produce the relevant documents." *Czuchaj v. Conair Corp.*, Case No. 13cv1901 BEN (RBB), 2016 WL 4161818, at *4 (S.D. Cal. Apr. 1, 2016) (quoting *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004)). Thus, while the Court finds that defendants' otherwise thorough document preservation efforts preclude a finding of bad faith, they negligently

failed to take the necessary steps to preserve relevant evidence in Mr. Howe's possession, and therefore bear responsibility for the spoliation of his notes. *Reinsdorf*, 296 F.R.D. at 628 (stating that the "negligent destruction of evidence may be sanctioned because 'each party should bear the risk of its own negligence'") (citation omitted).

Because the Court finds that Mr. Howe's and Mr. Owen's shredding of their meeting notes and defendants' unexplained delay in issuing a litigation hold notice to Mr. Howe were negligent, the requirement that the evidence was destroyed with a culpable state of mind is satisfied.

***3. Relevance and Prejudice***

The final inquiry in the Court's sanctions analysis is whether plaintiffs have shown that the spoliated evidence was "relevant" to plaintiffs' claims "'such that a reasonable trier of fact could find that it would support th[ose] claim[s].'" *Apple*, 888 F. Supp. 2d at 989 (citation omitted). "Courts generally agree that 'relevance' for spoliation purposes 'is a two-pronged finding of relevance and prejudice' because 'for the court to issue sanctions, the absence of the evidence must be prejudicial to the party alleging spoliation of evidence.'" *Reinsdorf*, 296 F.R.D. at 627 (citation omitted).

Defendants assert that plaintiffs have not demonstrated relevance because they have not established a "reasonable possibility" that the spoliated evidence would have been favorable to plaintiffs. Jt. Mot. at 23. The Court disagrees. "The relevance standard is commonly recognized as one that is necessarily broad in scope in order 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Compass Bank*, 104 F. Supp. 3d at 1051 (quoting *Oppenheimer Fund*, *Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). The meeting notes easily satisfy that test: they are a contemporaneous record of meetings attended by CBP's senior leadership, at which metering and queue management were admittedly topics of discussion. *Id.* at 25. It is immaterial that the meetings were "not held for the purpose of making substantive decisions" or that the notes themselves were, in the subjective view of the note-takers, "non-substantive," not "meaningful," and not "significant." *Id.* at 26. Plaintiffs

are not required to "accept on faith" defendants' assertion that there was nothing of significance in the meeting notes. *Tipp v. Adeptus Health*, *Inc.*, Case No. CV-16-02317-PHX-DGC, 2018 WL 447256, at *4 (D. Ariz. Jan. 17, 2018).

The Court is likewise unpersuaded by defendants' argument that plaintiffs cannot simply rely on their "fertile imaginations" but must provide "concrete evidence" that there were "specific" and relevant "facts … reflected in the notes." Jt. Mot. at 24-25. Due entirely to defendants' negligent destruction of the meeting notes, that is an impossible task. *See Compass Bank*, 104 F. Supp. 3d at 1054 (noting that spoliation creates a "dilemma" because "there is no way to know what the spoliated evidence would have revealed"); *see also Leon v. IDX Sys. Corp.*, 464 F. 3d 951, 959 (9th Cir. 2006) (observing that the "relevance" of spoliated documents "cannot be ascertained because the documents no longer exist") (citation omitted). Defendants' spoliation caused "the absence of specific evidence" and is precisely the basis upon which plaintiffs may be entitled to have the trier of fact draw inferences in their favor. *Compass Bank*, 104 F. Supp. 3d at 1054.

Despite the relevance of the meeting notes, however, the Court does not find plaintiffs' claims of prejudice from their destruction to be "particularly strong." *Apple*, 888 F. Supp. 2d at 994. It is true that, had the notes been available, plaintiffs may have been able to develop further testimony from Mr. Howe and Mr. Owen regarding any discussion of queue management or metering that may have transpired at "high-level meetings." Jt. Mot. at 12. And although "many" of the items discussed at the daily operations meetings were later memorialized in emails or other form, *id.* at 26, the Court does not believe that selective, post-meeting documentation is a substitute for the witnesses' spontaneously-taken notes. *See Reed v. Honeywell Intern.*, *Inc.*, Case No. CV 07–0396–PHX–MHM, 2009 WL 886844, at *10 (D. Ariz. Mar. 31, 2009) (finding that loss of handwritten notes was prejudicial even where typed summaries of the notes were available).

Nevertheless, the Court cannot agree that plaintiffs were "substantially denie[d]" the "ability to support [their] claims" by dint of the notes' destruction. Jt. Mot. at 11; *accord*

*Leon*, 464 F.3d at 959 (noting that prejudice inquiry requires assessment of whether spoliation "impaired" plaintiffs' "ability to go to trial or threatened to interfere with the rightful decision of the case") (citation omitted). Discovery in this case has been voluminous, and the spoliated meeting notes – while unique – are certainly not the only source of evidence in support of plaintiff's claims. *See*, *e.g.*, *Lofton*, 308 F.R.D. at 288 (noting that courts may decline to impose sanctions where "other evidence exists to prove the same information"); *see also Reinsdorf*, 296 FR.D. at 631 (finding no prejudice where defendant "produced other … evidence" supporting plaintiff's claims); *PacificCorp v. Nw. Pipeline GP*, 879 F. Supp. 2d 1171, 1190 (D. Or. 2012) (noting that "the existence of secondary evidence can reduce prejudice"). As defendants report, they have produced "hundreds of thousands of other contemporaneous documents" reflecting meetings and internal communications related to defendants' border-management practices. Jt. Mot. at 28. Plaintiffs have deposed not only Messrs. Howe, Owen and Hoffman – all attendees at the operations meetings – but dozens of other witnesses who undoubtedly offered relevant testimony as to these matters. Given the volume of discovery undertaken in this case, the Court is not persuaded that plaintiffs have been "'forced to rely on incomplete and spotty evidence'" to prove their claims. *Id.* at 11. Indeed, there is an obvious tension between this assertion and plaintiffs' pending motion for summary judgment – which they presumably brought because they believe the evidence in the case is not only complete, but so overwhelmingly in their favor as to warrant judgment as a matter of law. *See generally* Doc. No. 535.

For the above reasons, although defendants negligently spoliated relevant evidence, the Court finds that plaintiffs' requested adverse-inference sanctions are disproportional to the prejudice caused by the spoliation. *See Apple*, 888 F. Supp. 2d at 994-95 (finding "strong adverse inference instruction" was not warranted where prejudice to opposing party was minimal). The Court agrees with defendants that the imposition of plaintiffs' requested sanctions "would result in a windfall for [p]laintiffs." Jt. Mot. at 29. Therefore, the Court **RECOMMENDS** that the District Court decline to adopt a rebuttable

presumption that Mr. Owen and Mr. Howe instructed CBP officers to turn back asylum seekers at the U.S.-Mexico border, and decline to adopt a rebuttable presumption that the spoliated notes would show that the Turnback Policy is based on a pretext.

**D. The District Court Should Exclude Evidence or Testimony from Defendants Regarding the Operations Meetings**

Notwithstanding its finding that plaintiff has not made a showing that the requested rebuttable presumptions are appropriate, the Court determines that other sanctions are warranted in light of the clear evidence of defendants' negligent destruction of relevant documents. *See Reinsdorf*, 296 F.R.D. at 626 (stating that upon finding spoliation has occurred, the Court "must then consider all available sanctions and determine the appropriate one"). Because sanctions for negligent spoliation are not intended to be punitive, the Court should impose the least burdensome sanction that will deter future spoliation while providing a remedy for the evidentiary imbalance caused by the loss of relevant evidence. *Id.*

As an alternative to the adoption of any rebuttable presumption in plaintiffs' favor, defendants propose that the District Court "preclude [them] from relying on testimony about the [operations] meetings in support of their defenses to [p]laintiffs' allegations." Jt. Mot. at 29. Evidentiary exclusion is an available sanction for the negligent destruction of evidence. *See Lewis*, 261 F.R.D. at 522 (citing *Unigard Sec. Ins. Co. v. Lakewood Eng'r & Mfg. Corp.*, 982 F.2d 363, 368-69, n.2 (9th Cir. 1982)). The Court finds that precluding defendants from offering testimony or other evidence about the daily operations meetings in support of their defenses will "place the risk of an erroneous judgment" on defendants, the spoliating party, while also remedying the prejudice to plaintiffs that resulted from defendants' negligence. *See Reinsdorf*, 296 F.R.D. at 626. Therefore, the Court **RECOMMENDS** the District Court preclude such evidence at trial.

///

///

///

# CONCLUSIONS AND RECOMMENDATION

For the foregoing reasons, the Court finds that spoliation sanctions are warranted in this case, but that the adverse inference requested by plaintiffs is not appropriate. The Court finds that an alternative evidentiary exclusion sanction is appropriate to deter future spoliation and to remedy the evidentiary inequity caused by defendants' negligent spoliation.

Accordingly, it is **RECOMMENDED** that the Joint Motion be **GRANTED IN PART** and **DENIED IN PART**; and

It is **FURTHER RECOMMENDED** that the District Court decline to adopt a rebuttable presumption that Mr. Owen and Mr. Howe instructed CBP officers to turn back asylum seekers at the U.S.-Mexico border, and decline to adopt a rebuttable presumption that the spoliated notes would show that the Turnback Policy is based on a pretext; and

It is **FURTHER RECOMMENDED** that defendants be precluded from offering testimony or other evidence about the discussions at the daily operations meetings in support of their defenses during the trial of this matter.

**IT IS HEREBY ORDERED** that any party may object to this Report and Recommendation. Any objections must be filed with the Court and served on all parties ***no later than March 19, 2021*** and should be captioned "Objections to Report and Recommendation." The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

Dated: February 18, 2021

Hon. Karen S. Crawford
United States Magistrate Judge