SARAH HARRINGTON
Deputy Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
SAMUEL P. GO
Assistant Director
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation – District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-2859 | Fax: (202) 305-7000
katherine.j.shinners@usdoj.gov
*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | Hon. Cynthia A. Bashant |
| v. | **DECLARATION OF KATHERINE J. SHINNERS IN SUPPORT OF OPPOSITION TO MOTION FOR DISCOVERY CONCERNING COMPLIANCE WITH PRELIMINARY INJUNCTION** |
| ALEJANDRO MAYORKAS, Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*, | |
| *Defendants* | |

## DECLARATION OF KATHERINE J. SHINNERS

I, Katherine J. Shinners, declare as follows:

1.    I am Senior Litigation Counsel with the District Court Section of the U.S. Department of Justice, Office of Immigration Litigation. I represent the federal defendants in their official capacities in the case entitled *Al Otro Lado, Inc. v. Mayorkas*, No. 3:17-cv-02366-BAS-KSC, which is currently pending in the U.S. District Court for the Southern District of California. I also represent non-party the Executive Office for Immigration Review (EOIR), an agency of the U.S. Department of Justice, with respect to this litigation.

2.    I make this declaration to provide information with respect to the Government's Opposition to Plaintiffs' "Motion for Discovery Concerning Compliance with Preliminary Injunction," which seeks discovery concerning: (1) the Court's November 19, 2019 Order granting a preliminary injunction (ECF No. 330) ("Preliminary Injunction Order") and precluding application of the third-country transit rule to members of a provisional class (the "PI Class"); and (2) the Court's October 30, 2020 Order on Plaintiffs' Motion to Clarify (ECF No. 605) ("October 30 Order"). These statements are based on my personal knowledge. In my role as counsel for the government, I am aware of communications between counsel concerning the implementation of the PI Order and the October 30 Order, as well as information reported to me by the agencies impacted by those orders, including U.S. Citizenship and Immigration Services (USCIS), U.S. Customs and Border Protection (CBP), U.S. Immigration and Customs Enforcement (ICE)—all component agencies of the Department of Homeland Security (DHS)—and EOIR.

**November-December 2020 Conferences with Counsel**

3.    The first steps taken by the Government to implement the directives in the October 30 Order were toward identifying cases eligible for reopening or reconsideration under Paragraph 2 of the Court's October 30 Order, using two different but somewhat overlapping methods: (1) using data to identify asylum denials issued

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

in regular removal proceedings before EOIR, in order to manually review the resulting records of proceedings; and (2) setting up screening criteria and interviewing certain potential class members who are in ICE custody.

4.      In November and December 2020, Plaintiffs' and Defendants' counsel conferred over the telephone and via email and letter concerning implementation of the Court's October 30 Order, which contains requirements for identification of, notice to, and particular relief to be afforded to, members of the subclass certified in the Court's prior Preliminary Injunction Order (ECF No. 330) ("PI Order").

5.      On November 10, 2020, in response to inquiries from Plaintiffs' counsel regarding individuals who Plaintiffs claimed were scheduled to be removed on a charter flight, I sent an email explaining that ICE was "conducting screening of all individuals who will be on the flight," including individuals who had expedited orders of removal and thus who had been subject to prior class membership screening, and that the parameters of the screening were "to allow removal to go forward for, if known: (1) those who entered before July 16, 2019; (2) those who last entered at a place other than across the southern land border; (3) those who entered after June 30, 2020;  (5) those who never claimed fear or filed an asylum application; (6) those who never had the transit rule applied to their asylum application/fear claims; (7) those asylum applicants for whom the final adjudicator denied asylum only on grounds other than the transit rule; (8) those subject to a final administrative removal order pursuant to Section 238(b) of the Immigration and Nationality Act (INA); (9) those subject to a reinstated order of removal under section 241(a)(5) of the INA and the underlying removal order that was reinstated became administratively final before July 16, 2019; and (10) those whose asylum applications reveal that they did not leave their home country, or did not arrive in Mexico, before July 16, 2019."

6.      On November 11, 2020, in response to a request from Plaintiffs' counsel for information about the substance of the immigration cases of certain individuals that Plaintiffs believed were scheduled for removal on the flight referenced,

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

Defendants proposed via email to Plaintiffs' counsel that the parties "file a joint motion to amend the Protective Order (ECF No. 276) or for entry of a discrete protective order to expressly allow Defendants to share with Plaintiffs' counsel information [about preliminary-injunction subclass members] that is protected under 8 C.F.R. §§ 208.6 or 1208.6."

7.      Also on November 11, 2020, I sent an email to Plaintiffs' counsel attaching a draft notice that was intended to be used for a limited purpose of informing individuals in ICE (DHS) custody that their removals had been paused pending a class membership determination, stating: "we seek Class counsel's input on a draft notice to be provided to those in DHS custody whose originally-scheduled removals have been or will be paused pending further screening in light of the October 30, 2020 Order." Plaintiffs returned edits to the draft notice on November 12, 2020.

8.      On November 13, 2020, I sent an email to Plaintiffs' counsel that explained Defendants' efforts thus far. It further explained the import of the draft notice intended for those in ICE custody, stating, among other things: "Obviously, pausing removals presents a number of issues for [ICE Enforcement and Removal Operations] and the aliens who remain in its custody, so we are trying to move to provide notice to this group as well as work on the further identification and [class membership] screening procedures outlined below." I also provided further information and questions about Defendants' pre-removal screening procedures, including to state that: "Defendants maintain that those with IJ orders issued after June 30, 2020, BIA orders issued after June 30, 2020, or orders of expedited removal that became final after June 30, 2020, should be able to be removed regardless of class membership. There should be no reason to reopen these cases, because the transit rule was not to be applied by the adjudicators to any case."

9.      That November 13, 2020 email also sought Plaintiffs' views on how to accomplish the October 30 Order's requirement to identify class members and stated

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

that Defendants' "first priority has been working to identify those with asylum denials in 240 [regular removal] proceedings (which would include those who were denied asylum but granted withholding of removal) between July 16, 2019, and June 30, 2020, inclusive."

10.    On Friday, November 13, 2020, counsel for the parties conferred via telephone regarding the implementation of the preliminary injunction. I explained on that call that, due to the language of the October 30 Order, which called in Paragraph 2 for "immediate affirmative steps" to reopen and reconsider cases in which asylum was previously denied based on the Transit Rule, the government's "immediate concern" with respect to compliance with the Order was to take affirmative steps to identify cases for reopening and reconsideration under that paragraph. At that conference, Defendants also again stated their position that, when seeking to identify the asylum denials that fell into this category—through manual file review or other burdensome screening and interview methods—it did not make sense to review those files/cases if the final asylum denial was issued after June 30, 2020, the date the Transit Rule interim final rule was vacated in a separate case, *Capital Area Immigrants' Rights Coalition v. Trump*, 471 F.Supp.3d 25 (D.D.C. June 30, 2020) (*CAIR*). After that date, the vacated rule should not have been applied to anyone.

11.    Also on Friday, November 13, 2020, Plaintiffs' counsel provided Defendants' counsel with a draft joint motion to amend the Protective Order.

12.    On Wednesday, November 18, 2020, Defendants' counsel provided a draft of a new, separate protective order for Plaintiffs' consideration. This draft was created from scratch—rather than as an amendment to the prior confidentiality protective order—to tailor the confidentiality provisions to facilitate the sharing of asylum information for purposes of the Court's October 30 Order.

13.    Counsel for the parties again conferred via telephone on November 19, 2020, and discussed various topics. The discussions revealed that the parties were in agreement on various aspects of the Court's October 30 Order—including that it

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

applied to those class members who were granted withholding of removal but denied asylum, and also potentially applied to those class members who entered illegally after attempting to enter at a Port of Entry.

14.    At the November 19 conference, counsel discussed, among other topics, different options for identification of class members. As a result of this conference, Defendants began an effort to identify a comprehensive list of *potential* class members using data points available in different agencies' electronic system of records.  First, U.S. Customs and Border Protection would provide information about inadmissible aliens it had encountered between July 16, 2019, and June 30, 2020. Then, USCIS and EOIR would provide data from their respective systems reflecting whether or not the alien sought asylum and disposition of that case. Once the list was narrowed down, data from ICE could provide current contact information and information about execution of removal orders to facilitate locating and providing notice to those class members to whom Defendants are required to provide notice, as well as to share with Plaintiffs to facilitate their ability to provide notice to class members.

15.    Meanwhile, counsel for the parties continued to exchange drafts of the proposed protective order.

16.    On November 23, 2020, I sent an email to Plaintiffs' counsel attaching the questions previously employed by USCIS when screening individuals for class membership. Plaintiffs' counsel promptly returned comments on those questions on November 24, 2020, which USCIS considered in further refining USCIS class interview procedures.

17.    Counsel for the parties again conferred via telephone on November 24, 2020. At that conference, counsel discussed a number of matters, including the terms of the proposed protective order. At the end of that conference, I relayed that Defendants had begun developing a comprehensive class list as described in Paragraph 9, *supra*. I also provided information that Plaintiffs had requested about guidance issued to EOIR adjudicators regarding the *CAIR* decision.

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

18. Also on November 24, 2020, I sent an email to Plaintiffs' counsel with a revised draft of the notice to be provided to individuals in ICE custody and asked for contact information for Class Counsel to be included in the notice. Plaintiffs' counsel responded by email on November 25, 2020, stating areas where Plaintiffs disagreed regarding the contents of the draft notice, and also providing an email address for Class Counsel to include in the notice. Counsel for the parties subsequently exchanged emails and conferred regarding whether Class Counsel could provide a telephone number for use in the notice and how detainees could access confidential telephone calls to Class Counsel.

19. On November 25, 2020, Plaintiffs' counsel sent Defendants' counsel a letter setting forth their view of steps that should be taken to implement the October 30 Order. Plaintiffs stated in the letter that "Defendants appear to have chosen to focus their implementation efforts on a subset of the most narrow category of those eligible for reopening or reconsideration relief, but Plaintiffs believe that efforts made to identify all class members will facilitate the identification of those who also must receive notice and reconsideration or reopening relief under the Clarification Order."

20. In their November 25, 2020 letter, Plaintiffs stated that: "'All reasonable efforts to identify class members' should include identifying all individuals who (i) were processed as asylum seekers since July 16, 2019 at Class A POEs on the U.S.-Mexico border or (ii) who otherwise entered the United States and sought asylum since July 16, 2019." (footnote omitted). Plaintiffs went on to state that "it is incumbent upon the government to cast a broad net to identify potential class members."

21. The November 25, 2020 letter went on, in a section entitled "establishing class membership," to state: "'All reasonable efforts to identify class members' also includes seeking copies of the metering waitlists . . . and using them, along with the waitlists provided by Plaintiffs, in determining PI class membership, as discussed

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

below." The letter stated: "Once Defendants have established the entire universe of potential PI class members [described in Paragraph 14, *supra*], Defendants should affirmatively seek evidence of PI class membership from these individuals, *unless* Defendants have already established PI class membership based on review of an individual's case file and the relevant metering waitlist." The letter when on to state Plaintiffs' position as to what evidence should or should not be examined and how it should be treated, as generally described in the Declaration of Ori Lev (Lev Declaration), ECF No. 644-2, ¶ 24(c)-(i). With respect to Paragraph 24(e) of the Lev Declaration, however, Plaintiffs actually stated: "[A]n individual who was processed for asylum who entered the U.S. at the San Ysidro POE between July 16, 2019 and November 19, 2019 should be treated as a presumptive class member absent specific evidence that the individual was not impacted by metering prior to July 16, 2019," and then noted information about the waitlist numbers in a footnote.

22.    In their November 25, 2020 letter, Plaintiffs also set out their view on the requirements of Paragraphs 2 and 3 of the October 30 Order as generally described in Paragraphs 25 and 26 of the Lev Declaration.

23.    In their November 25, 2020 letter, Plaintiffs also stated that they disagree with certain features of the protective order. Plaintiffs expressed disagreements with certain limitations on disclosure of class members' asylum information to third parties: "Plaintiffs do not agree to limit those with whom they may share 'Asylum Material' to Counsel of Record, court personnel, the individual noncitizen to whom such information pertains and his or her attorney or accredited representative as demonstrated by a filed G-28, a filed EOIR-27, or a DHS Privacy Waiver." The letter stated that Plaintiffs were "not willing to prematurely limit the individuals with whom they may share 'Asylum Material,' given the anticipated logistical challenges in communicating with and getting signed documents from PI class members. The requirement that Plaintiffs may only use 'Asylum Material' for the limited purpose

of facilitating compliance with the Court's orders, coupled with the independent professional ethical obligations that apply to Plaintiffs' counsel serving the role of class counsel, already require Plaintiffs to proceed with appropriate care in the storage and use of class member information." Plaintiffs' November 25 letter made no mention of the other provisions of the protective order that allowed for disclosure to other individuals as the need arises, upon agreement of the parties or order of the Court, so long as those individuals sign on to the terms of the protective order. In the letter, Plaintiffs' counsel also stated that "Plaintiffs do not agree to maintain records of disclosures to PI class members or their representatives to be produced at Defendants' request." At the November 24, 2020 telephone conference, as well as at subsequent telephone conferences, Plaintiffs' counsel argued that this requirement was burdensome and unnecessary.

24.    Plaintiffs requested a response to their November 25, 2020 letter by December 2, 2020. Defendants served a response letter on December 2, 2020.

25.    In Defendants' December 2, 2020 response letter, Defendants responded to various points in Plaintiffs' implementation plans. Initially, the letter noted: "At the outset, we disagree with Plaintiffs' characterization of the government's efforts to comply with the Order. It is true that the government has devoted significant initial efforts to addressing Paragraph 2 of the Order . . . . This is so for various reasons. First, the Order itself contemplate that the government first work on taking affirmative steps to identify cases for reopening or reconsideration. . . . Second, as previously discussed, . . . [the] efforts the government is making to identify class members are thus necessarily overbroad and will not be able to quickly identify actual class members or which cases are candidates for reopening or reconsideration. Third, and relatedly, the government must prioritize review of the potential class membership of individuals currently in the custody of [ICE] who are otherwise facing imminent removal. . . . Further, it makes practical sense to focus com-

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

pliance efforts on individuals with final removal orders because this category of individuals is more likely to be eligible for relief under Paragraph 2 than a broader list of class members." The letter also noted that additionally, EOIR "also took immediate, affirmative steps" in compliance with Paragraph 2. Finally, the letter noted, "[i]n the midst of these efforts . . . Defendants are also developing a broader list of individuals who were encountered by CBP at Southern land border ports of entry or between ports of entry along the Southern land border between July 16, 2019 and June 30, 2020, were processed for expedited removal or Section 240 removal proceedings, and were referred for a credible fear interview or who filed a Form I-589 in Section 240 removal proceedings. Although this list will be overbroad, it could be used for purposes of providing notice under Paragraph 3 of the Court's order. Creating this list involves several different steps and employs data from several different departments and components. Thus, although Defendants have accomplished some of this task, this data compilation is not yet complete."

26.    In the December 2 letter, Defendants also responded to Plaintiffs' view of implementation of the October 30 Order. Among other things, Defendants responded to Plaintiffs' plan to solicit evidence from all class members. In Defendants' view, it was only necessary to take affirmative steps to solicit evidence in conjunction with the affirmative obligation set forth in Paragraph 2. Thus, Defendants had previously stated that they would need procedures for soliciting evidence from those whose cases would be potentially eligible for reopening or reconsideration due to class membership in accordance with Paragraph 2, and who had not already established class membership through a USCIS interview or in their regular removal proceedings. Defendants thus stated in their December 2 letter that affirmatively seeking such evidence would be of little utility, for example, with respect to potential class members who already granted asylum, potential class members in pending proceedings—who could receive notice and submit evidence in pending proceedings—and potential class members who were denied asylum on grounds other than the

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

transit rule.

27.    In their December 2 letter, Defendants also stated that "solely to avoid a dispute with Plaintiffs, the government is not relying on the results of prior class membership screenings to exclude individuals from consideration for class membership. Yet an individuals' prior statements in prior screening interviews are nonetheless relevant evidence to be considered when determining whether the individual is more likely than not a class member."

28.    In their December 2 letter, Defendants also responded to Plaintiffs' statements regarding the notice required by Paragraph 3 of the October 30 Order, stating that "Defendants remain willing to continue [to] work with Plaintiffs on the contents of a Notice to be provided to potential class members . . . , but do not agree that reasonable notice of the existence and import of the preliminary injunction necessarily requires all of the details Plaintiffs request. Defendants also maintain that the current version of the Notice to be provided to those in DHS [ICE] custody who are facing removal meets the requirements of Paragraph 3 of the Order."

29.    In their December 2 letter, Defendants also responded to Plaintiffs' statements regarding Paragraph 2 of the October 30 Order, including by stating that: "Defendants agree that a class member's case may be eligible for reopening or reconsideration relief if the transit rule were applied to that class member to determine that she was ineligible for asylum, even if the rule were applied after June 30, 2020, Defendants take issue with requiring the government to conduct a broad review of cases that involve post-June 30 decisions for a rule-based asylum denial. The transit rule was vacated on June 30, 2020, and should not have been applied to anyone—class member or not—after that time. Accordingly, Defendants' position is that, for purposes of [the affirmative obligations of] Paragraph 2, [they] can presume that post-June 30 decisions recognized that vacatur and did not apply the transit rule."

30.    On Friday, December 4, 2020, the parties again conferred via telephone concerning numerous topics, including implementation of the October 30 Order as

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

well as the proposed protective order.  At that conference, Plaintiffs' counsel stated that individuals who have been granted asylum are no longer class members because they are no longer seeking access to the U.S. asylum process.

31.     The evening of Friday, December 4, 2020, Plaintiffs proposed revised language for the protective order concerning the conditions for disclosure to third parties.  On Monday, December 7, 2020, I sent Plaintiffs an email providing Defendants' response to those revisions and offering that, if the parties could not come to an agreement, "the parties could agree to ask the Court to enter the more stringent version of the protective order pending resolution of those disputes, to facilitate Defendants' disclosure of information in the meantime."

32.     Plaintiffs' counsel responded via email on December 8, 2020, that "it is clear that the parties are at an impasse." Also on December 8, 2020, I sent Plaintiffs' counsel an email attaching a proposed protective order that incorporated recent revisions, stating that Defendants intended to seek the entry of a protective order in substantially the form of the attached order, and seeking to confirm Plaintiffs' position that "Plaintiffs do not generally oppose the entry of a protective order governing the use and disclosure of 208.6 information concerning class members and potential class members," but that Plaintiffs' counsel take issue with certain conditions of disclosure to third parties contained in the version attached. Based on the conferences of counsel and the exchanged drafts, emails and letters, I understand Plaintiffs' disagreement with Defendants' requested conditions on disclosure of asylum information of preliminary-injunction subclass members to third parties to be as follows:

a. Plaintiffs maintain they should be permitted to disclose asylum information to any attorney of the asylum applicant to which the information pertains, regardless of whether that attorney has entered their appearance in the applicant's immigration case.

b. Plaintiffs maintain they should be permitted to share asylum infor-

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

mation with the asylum applicant's "family members" without obtaining the applicant's prior consent.

c. Plaintiffs maintain that asylum applicants' family members and attorneys should be permitted to consent to further sharing of asylum information to still other individuals.

d. Plaintiffs maintain that they should be permitted to share asylum information with third parties based only on the applicant's oral (vs. written) consent.

e. Plaintiffs maintain that they should not be required to retain records of disclosures of asylum information to third parties.

33. Also on December 8, 2020, I sent an email to Plaintiffs' counsel with a revised draft notice to those in ICE custody, which incorporated many of the suggestions Plaintiffs made regarding the notice contents. I also asked: "Can Plaintiffs' counsel provide a phone number to include? Further, as discussed on Friday, ICE has confirmed that if you provide a 1-800 number, that number can be placed on the Pro Bono Platform and assigned a speed dial for free, confidential calling."

34. On December 9, 2020, Plaintiffs' counsel sent an email stating: "Recognizing that Defendants have incorporated some of our feedback, our position remains that this notice is not reasonable or adequate for purposes of complying with the Judge's order." In the email, Plaintiffs also expressly declined to include a phone number for Class Counsel, stating: "The notice also fails to provide relevant information about how to obtain relief, once an individual has established class membership. Because we do not have that information either, it would be inappropriate to include our phone number, as we likely will be unable to answer questions that callers have about the process. That said, we remain open to considering including a phone number on future notice that is reasonable and complies with the Court's order, on the assumption that such a number will be added to the national pro bono call list to enable free, unmonitored calls for any person in ICE custody."

35.     On December 15, 2020, Plaintiffs' counsel filed a Motion to Enforce Preliminary Injunction, and Defendants filed a Motion for Confidentiality Protective Order; Defendants filed their opposition to Plaintiffs' Motion to Enforce on January 5, 2021.

**Conferences of Counsel After the Filing of the Motion to Enforce**

36.     On January 25, 2021, at 11:02 p.m. Eastern Standard Time, Plaintiffs' counsel sent an email to counsel for the government with the subject line: "Defendants' Request for Protective Order." The email stated: "I'm writing to see if Defendants' position has changed regarding your proposal for a protective order governing "Asylum Information."  Plaintiffs request that Defendants withdraw their motion for protective order and proceed with sharing information with Plaintiffs to facilitate compliance with the Court's orders regarding relief for the PI class, which are in effect. Now that Defendants have distributed notice to potential class members with Plaintiffs' counsel's contact information, such information sharing is necessary to ensure that Plaintiffs' counsel may meaningfully respond to potential class members."

37.     On January 26, 2021, I responded to Plaintiffs' counsel via email, stating as follows: "Defendants and EOIR still require a protective order governing use and further disclosure of asylum information. However, if class members reach out to you they can also sign a Privacy Act Waiver or similar written statement authorizing disclosure, like the Applicant did.  What information do you anticipate needing to respond to class members?  That would be helpful to know so we can explore solutions."

38.     On January 27, 2021, Plaintiffs' counsel sent an email response that stated, among other things, that "at a minimum, it would be helpful to have any decisions or determinations rendered by the government in the potential class members' cases, specifically whether a prior AOL screening occurred and the record of that screening; any prior IJ decision; any prior BIA decision; and any prior [credible

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

fear interview] or [reasonable fear interview] transcript." The email also stated: "We also have some questions about Defendants' compliance efforts. Specifically, how many people were given a notice containing our contact information? Did the notices include information about the date and time of screening interviews? What will the screening interviews consist of and what will happen next if someone is determined to be a PI class member? Is there any ability to seek review of a determination that a person is not a PI class member? It is difficult to set up a system to advise those who contact us without this basic information, as well as names and case information for the people who received the notice."

39.     On January 28, 2021, I sent an email to Plaintiffs' counsel in response. Initially, I stated: "Thank you for providing the types of information you would request to assist class members. While we do not agree that the Court's orders contemplate providing Class Counsel with the records of proceedings for each potential class member, such as records of prior screenings, interviews, and IJ/BIA decisions, and while Class Counsel do not individually represent potential class members, we can take back to the client agencies particular requests for information based on a particularized need," but reiterated that the agencies required an appropriate protective order or the written consent of the individual. The email went on to state: "If there is other, more limited information that you think would be of assistance, let us know and we and the agencies can consider that request as well."

40.     My January 28, 2021 email went on to provide information about the interview process for determining whether an individual was prevented from entering at a Port of Entry before July 16, 2019, as a result of metering: "As previously described, DHS is moving forward with the following process. Certain individuals in DHS custody who are subject to removal are provided notice in substantially the form attached to the opposition to the motion to enforce, with some minor non-substantive changes (see attached updated version). This notice is provided on a rolling basis by local ICE offices only to those who are referred to USCIS for interviews.

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

The notice itself does not list the timing of the interview, but interviews are scheduled on a rolling basis by the local asylum office. At this time, approximately 36 interviews have been conducted. Individuals may have their own counsel present for the interview, at no expense to the government. Individuals are interviewed by USCIS officers, who also review available waitlists and governmental records, as described in the opposition to the motion to enforce. The interview consists of questions designed to determine whether the individual was subject to metering before July 16, 2019, and to determine whether the individual has any documentary evidence s/he wishes to present for consideration. If an individual is determined to be a PI class member, s/he will receive documentation of that determination and will not be removed at least until further proceedings take place as set forth below. If an individual is determined to be a PI class member to whom the transit bar was applied and has an order of expedited removal: (1) if the transit bar was applied by USCIS at the credible fear stage, the individual will receive a new credible fear interview; (2) if USCIS did not apply the transit bar but entered a negative credible fear determination and the IJ, on review, applied the transit bar, the individual will receive a new referral for credible fear review. If an individual is determined to be a PI class member to whom the transit bar was applied and has an order of removal from immigration court proceedings: the cases will be referred to EOIR on a rolling basis to review to determine whether Paragraph 2 relief is appropriate. If someone is initially determined not to be a class member, there is internal USCIS supervisor review. And these individuals should still be on the broader list of potential class members that the government is developing."

41.    My January 28, 2021 email also offered to provide information about the identities of individuals interviewed after the Court rules on the protective order issues, and concluded: "Let us know if you have questions or would like to set up a time to discuss."

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

42.     Plaintiffs' counsel's January 26 and 27 emails did not mention the individual who is identified as "SC" in their motion papers, *see, e.g.*, Cassler Decl. (ECF No. 680-3) ¶¶ 5-11. Plaintiffs' counsel did not request any information from counsel for the government about SC. Plaintiffs' counsel did not notify counsel for the government that they were unable to determine how to contact SC until they filed their discovery motion. It was not until February 23, 2021, that Plaintiffs' counsel reached out to counsel for the government via email with the following request: "As set out in the Declaration of Cindy Escoto filed last week, we have been trying to schedule a legal call with a potential PI class member detained at Batavia [detention facility] and have had no luck. We request your assistance in facilitating a legal call with the individual in question ([SC])." I responded via email shortly thereafter stating that government counsel were looking into the request, and also stated: "I also wondered if Plaintiffs/Class Counsel would reconsider at this time providing a 1-800 number that could be placed on ICE's pro bono platform to facilitate free/unrecorded/unmonitored calls from detention facilities.  My understanding is that option is still available, and I will confirm with ICE."  Later that same day, I sent an email providing information about how to schedule a legal call at the Batavia detention facility.

43.     On February 2 and 3, 2021, I engaged with counsel for Plaintiffs over email and telephone regarding their inquiries concerning individuals they claimed were scheduled to be removed on a February 3, 2021, flight. In their initial email on February 2, Plaintiffs had requested: "Please let us know by no later than 4 pm today whether the government will stop their deportation pending ascertainment of their entitlement to PI relief so that we can consider what further steps we need to take." At 4 pm, I had not yet received a response from the client agency as to this request for stays of removal, so I notified Plaintiffs' counsel via email that I was still awaiting a response and asked: Can you confirm what Plaintiffs mean by "pending ascer-

tainment of their entitlement to PI relief'"? This question was to understand the nature of Plaintiffs' stay request, that is, to whose assessment of entitlement to relief were Plaintiffs referring.

44.    At approximately 6:30 p.m. Eastern Time, I received a telephone call from several of Plaintiffs' counsel. After conferencing in one of my co-counsel, we proceeded to first discuss Plaintiffs' questions as to the timing of the flight.  To the best of my recollection, I notified Plaintiffs' counsel that the flight would not depart before tomorrow, but that due to security concerns I could not provide more information about the timing of the flight. Counsel for the Plaintiffs then asked for information about the individuals they had identified as supposedly scheduled to be on the flight, including what removal screening criteria had been applied.  I explained that I was still gathering and confirming information about those individuals from the relevant government agencies, as well as determining what information could be provided in the absence of a protective order or the individual's consent, and thus at that time I could not provide any information at all about the individuals. Plaintiffs' counsel then asked about general procedures in place.  I recall providing information about the general procedures for pre-removal screening, and stating that the screening criteria prior to allowing removal included a screening criterion that Plaintiffs disputed: that is, removal is permitted in cases where the BIA ultimately denied an individual asylum without relying on the transit rule (but where an intermediate adjudicator may have determined that the individual was ineligible for asylum). I also stated that I had passed along the requests for stays and had not received a decision on that request from the client agency.

45.    I exchanged several more emails with Plaintiffs' counsel to provide case information and removal status—including any judicial or administrative stays of removal that were in place or were granted—over the evening/night of February 2. Plaintiffs' counsel threatened contempt sanctions and stated that they intended to

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

seek court intervention to halt the flight and to seek discovery. In response to Plaintiffs' counsel's email stating Plaintiffs' intent to move to halt the flight and seek discovery, I asked for the exact basis for that request, and inquired: '"What procedures do you wish to understand that the government has not provided you with information on?"

46.     On Wednesday, February 3, 2021, Plaintiffs' counsel sent Defendants' counsel an email stating that Plaintiffs intended to "file a motion allowing them to take discovery concerning the government's compliance with the Court's November 2019 preliminary injunction and subsequent orders clarifying the scope of the preliminary injunction."

47.     On Wednesday, February 3, 2021, I sent an email to Plaintiffs' counsel asking, among other things: "As a threshold question, what procedures are Plaintiffs following for this motion?  We also would like to understand at or before the conference the precise relief requested, as well as a more specific description of the discovery Plaintiffs would seek. Without that information, it seems we cannot know whether the parties have a dispute, or the extent of the dispute."

48.     Counsel for the parties arranged to meet and confer on Friday, February 5, 2021 concerning Plaintiffs' intended discovery motion. On Friday, February 5, Plaintiffs' counsel responded via email stating, among other things: "On February 12th, Plaintiffs intend to move Judge Bashant for an order permitting limited discovery concerning the government's compliance with the November 2019 preliminary injunction and subsequent orders clarifying or enforcing that preliminary injunction." This email also recounted some information about the relief Plaintiffs intended to seek. As far as addressing the subject matter of the discovery sought, the email stated only that "All discovery will be limited to matters related to the government's compliance with the Court's November 19, 2019 preliminary injunction order (the "Order") and subsequent orders clarifying, enforcing, staying, or lifting stays related to the Order, including, but not limited to, the October 30, 2020 Clarification Order

and the pending Motion to Enforce the Preliminary Injunction."

49.     At the telephone conference among Defendants' and Plaintiffs' counsel on February 5, 2021, Plaintiffs' counsel stated that Plaintiffs would seek information about the procedures and the application of procedures concerning compliance and would not be limited by any particular time frame.

50.     Over the next few days, counsel for the Parties exchanged emails about issues relating to Plaintiffs' proposed discovery motion. On February 10, 2021, I sent an email to Plaintiffs' counsel stating: "As discussed on Friday, we wanted to revisit the class-member asylum information protective order, or at the very least Defendants' offer to seek conditional entry of a protective order pending the Court's resolution of the parties' disputes in this regard to facilitate the provision of information about potential class members as required or appropriate.  To that end, we've attached a proposed protective order with a revision to the recordkeeping provision (all changes from the version Defendants proposed to the Court are in track).  As noted, written consent of the asylum applicant remains the general requirement for further sharing of that individual's asylum information that is obtained from the government."

51.     In emails dated February 11 and 12, 2021, Defendants' counsel again offered entry of the conditional protective order to allow the government to more fully respond to Plaintiffs' requests for information about potential class members. Plaintiffs declined this proposal.

52.     On February 12, 2021, I sent an email to Plaintiffs' counsel providing some additional information in response to certain of Plaintiffs' inquiries about individuals who they claimed had been scheduled for a February 3 removal referenced in response to Paragraph 3. In that email, I stated, among other things, that one of the individuals about whom Plaintiffs had inquired does not yet have a final removal order. I also stated that Defendants "can provide an update about detention status and/or stays of removal should Plaintiffs request, unless such individuals are clearly

not class members. (It's likely best to allow 24-48 hours for us to respond to that request, just in case our clients are not able to get us that information quickly due to other duties.)."

53.      On February 25, 2021, Plaintiffs' counsel sent an email inquiring about the cases of two potential class members. I responded to that email, and included, among other things, some information about general procedures: "Regarding your broader inquiries, those with [Expedited Removal] Orders are sent to a new credible fear interview.  As you may have seen, the individual who is determined to be a class member (that is, unable to enter at a POE before July 16, 2019 due to metering) receives notice that says: 'If you have received an order of expedited removal, you may receive a new credible fear interview from an asylum officer or review of your prior credible fear determination from an immigration judge.  If you receive a final removal order in removal proceedings before the immigration court, your case may be eligible to be reopened before the Executive Office for Immigration Review, depending on the rulings in your case.'  EOIR reviews the case, and if reopened, the parties and respondent's counsel will be served with the order.  If the court reopens but determines that the respondent is not entitled to relief, the removal order could then be appealed."  My email went on to state: "In terms of other cases that are not reopened, we are happy to discuss these matters with Plaintiffs.  We are not available tomorrow but are more available Mon-Weds of next week."

54.      On March 3, 2021, counsel for Plaintiffs and the government had a telephone conference at which counsel for the government responded to various questions from Plaintiffs' counsel about various aspects of the government's procedures to implement the October 30 Order. At that conference I stated that government counsel would follow up in writing to provide answers to some of Plaintiffs' questions that government counsel wished to confirm with the client agencies and to provide a written description of EOIR's procedures for review of cases for reopening or reconsideration under the October 30 Order.

SHINNERS DECLARATION
Case No. 3:17-cv-02366-BAS-KSC

**Defendants' Exhibits**

55.     Attached hereto as Exhibit A is a true and correct copy of the Declaration of Jay Visconti, dated January 4, 2021.

56.     Attached hereto as Exhibit B is a true and correct copy of the Declaration of Elizabeth E. Mura, dated March 8, 2021.

57.     Attached hereto as Exhibit C is a true and correct copy of the updated version of the notice attached to my email referenced in Paragraph 40, *supra*.

58.     Attached hereto as Exhibit D is a true and correct copy of the Declaration of Robert Guadian, dated March 8, 2021.

59.     Attached hereto as Exhibit E is a true and correct copy of the Declaration of Jill Anderson, dated March 8, 2021.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. This declaration was executed on March 8, 2021, in Washington, D.C.

*s/ Katherine J. Shinners*
KATHERINE J. SHINNERS
Senior Litigation Counsel

*Counsel for Defendants*