SARAH HARRINGTON
Deputy Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
SAMUEL P. GO
Assistant Director
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259 | Fax: (202) 305-7000
katherine.j.shinners@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | **DEFENDANTS' EXHIBIT A** |
| v. | |
| ALEJANDRO MAYORKAS, Secretary of Homeland Security, in his official capacity, *et al.*, | |
| *Defendants.* | |

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Al Otro Lado, Inc., *et al.*, | ) | |
|     *Plaintiffs,* | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:17-cv-02366-BAS-KSC |
| | ) | |
| Chad Wolf, *et al.*, | ) | |
|     *Defendants.* | ) | |
| | ) | |

## DECLARATION OF JAY VISCONTI

I, Jay Visconti, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows, relating to the above-captioned matter:

    1.    I am the Director (Associate Chief) for the CBP STAT Division within Operations Support, U.S. Customs and Border Protection (CBP), Department of Homeland Security, where I manage CBP STAT's creation and delivery of high-level analysis and reporting into CBP's immigration and seizure data. I have previously provided two declarations to this Court, on August 3, 2020, and November 25, 2020, related to the court's November 19, 2019 preliminary injunction and the October 30, 2020 order granting plaintiffs' motion to clarify the preliminary injunction. I understand that plaintiffs filed a "Motion to Enforce Preliminary Injunction" on December 15, 2020. I provide this declaration to explain the data that CBP has pulled as part of the government's efforts to identify members of the provisional class of "all non-Mexican asylum-seekers who were unable to make a direct asylum claim at a U.S. POE before July 16, 2019 because of the U.S. Government's metering policy, and who continue to seek access to the U.S. asylum process."

2.     I have formally served as the Director of the CBP STAT Division since August 2019. Previously, I served as a Senior Advisor to the Chief Operating Officer and Senior Official Performing the Functions and Duties of the Commissioner. In that role, I performed similar functions to those I am performing now with respect to providing reports and high-level analysis. Prior to serving in that position, I was the Assistant Chief over Border Patrol's Statistics and Data Integrity (SDI) Branch, where I provided day-to-day statistics and analysis to USBP senior leadership and worked to ensure data quality within the USBP data. Prior to serving as the Assistant Chief over the USBP SDI Branch, I was an Operations Officer and played a key role in the development of the Border Patrol's e3 electronic system of records. I have been a U.S. Border Patrol agent since January 2, 1996.

3.     CBP STAT provides CBP senior leadership with aggregate statistics related to alien apprehensions, inadmissible aliens, drug seizures, use of force and assault data, in the form of both recurring and ad hoc reports. In my role as the Director of CBP STAT, I am able to run reports of, and retrieve data from, CBP's electronic systems of records, including USBP's e3 system and OFO's Unified Secondary (USEC) system, formerly known as Secure Integrated Government Mainframe Access (SIGMA). Many of these reports combine data from the e3 system and the SIGMA or USEC systems. In Fiscal Year 2020 (October 2019 through September 2020), CBP STAT performed over 4,090 recurring reports (representing a 121% increase compared to the previous year) and almost 1,400 ad hoc reports (representing an 893% increase compared to the previous year). I have general familiarity with USEC and its capabilities, and particular familiarity with e3 and its capabilities.

4.     When a CBP officer or Border Patrol agent encounters an individual either at or between the ports of entry, the officer or agent creates a record of the encounter. Information

about the individual encountered, the date of the encounter, the circumstances of the encounter, and the resulting action, is included both on various official forms, as well as in the relevant electronic system of records. For individuals who are determined to be aliens, the information will generally include the alien's Alien File number (A-number) and processing disposition, in addition to the information described above.

      5.      On November 20, 2020, CBP STAT received a request to pull the following data from CBP's electronic system of records: all non-Mexican aliens encountered along the southwest border by both USBP and OFO, with an encounter date of 7/16/19 through 6/30/20, who were processed for expedited removal, expedited removal/credible fear, or a notice to appear (NTA). This pull thus included all individuals who were processed for an NTA, including those who were processed for an NTA pursuant to the Migrant Protection Protocols (MPP). Upon receiving this request, for both USBP data and OFO data, CBP STAT queried available data from the relevant systems of record for all records based on the requested criteria.

      6.      On November 25, 2020, CBP STAT completed the initial pull, which included 143,721 records. On December 3, 2020, CBP STAT was informed that, for approximately 200 of these records, there was no A-number associated with the records. Records may be missing A-numbers for several reasons, mainly due to data entry errors or oversight. CBP STAT is generally able to look up an alien's A-number through running queries of the individual's other identifying information in various CBP and DHS databases, to search for any previous encounters during which the individual was provided with an A-number. CBP STAT researched and double checked these queries, and following these efforts, CBP STAT was able to backfill the A-numbers for all of the individuals on the list except for seventeen entries.

7.  During this process, CBP STAT also identified approximately twenty-eight "bad" records, including, for instance, duplicate or incomplete records. These records could have been created in various ways, including system redundancies that created two partial records for the same individual. CBP STAT deleted these records from the data pull.

8.  Also during this process, CBP STAT determined that individuals processed by the U.S. Border Patrol for a Warrant of Arrest/Notice to Appear (WA/NTA) had been inadvertently excluded from the previous data pull. Therefore, CBP STAT re-ran the data with these cases included. CBP STAT also filled in several missing A-numbers for these WA/NTA records, using the process described above. In all, CBP STAT was able to backfill 184 previously-missing A-numbers. CBP STAT completed this updated data pull on December 17, 2020, resulting in 182,499 records, 182,482 of which included useable A-numbers.

9.  I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this ___4th___ day of January, 2021.

JAY VISCONTI
Digitally signed by JAY VISCONTI
Date: 2021.01.04 20:12:43 -05'00'

Jay Visconti
Director (Associate Chief)
CBP STAT Division, Operations Support
U.S. Customs and Border Protection