SARAH HARRINGTON
Deputy Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
SAMUEL P. GO
Assistant Director
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259 | Fax: (202) 305-7000
katherine.j.shinners@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | **DEFENDANTS' EXHIBIT B** |
| v. | **[Redacted Public Version]** |
| ALEJANDRO MAYORKAS, Secretary of Homeland Security, in his official capacity, *et al.*, | |
| *Defendants*. | |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| Al Otro Lado, Inc., *et al.*, | ) | |
|     *Plaintiffs,* | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:17-cv-02366-BAS-KSC |
| | ) | |
| Chad F. Wolf, *et al.*, | ) | |
|     *Defendants.* | ) | |
| | ) | |

**DECLARATION OF ELIZABETH E. MURA**

I, Elizabeth E. Mura, pursuant to 28 U.S.C. § 1746, and based upon personal knowledge and information made known to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows relating to the above-captioned matter.

1.      I am currently the Branch Chief of the Operations Branch, in the Asylum Division, Refugee, Asylum & International Operations Directorate, within U.S. Citizenship and Immigration Services (USCIS), Department of Homeland Security (DHS).  I have held this position since February 2016.  Prior to becoming the Branch Chief of the Operations Branch, I served as an Operations Branch Asylum Officer at Asylum Headquarters, where I was responsible for various portfolios, such as the Asylum Division's case management systems, reporting, asylum-related employment authorization, and forms.  I joined the Immigration and Naturalization Service as an Asylum Officer in the Chicago Asylum Office in 2002, and, in 2006, I became a Supervisory Asylum Officer.  In my current position as the Operations Branch Chief, I have oversight of certain aspects of the administration of the credible fear determination process, including maintaining the policies and procedures that govern USCIS processing of credible fear cases nationwide.  I am responsible for ensuring that those policies and procedures

1

are communicated to the asylum officers, overseen by supervisors, and implemented within the
Asylum Division nationwide.

2.     I understand that on February 16, 2021, Plaintiffs filed a "Motion for Discovery"
concerning the U.S. District Court for the Southern District of California's November 19, 2019
preliminary injunction order and October 30, 2020 order granting Plaintiffs' "Motion for
Clarification of the Preliminary Injunction."

3.     Since issuance of the October 30, 2020 order, USCIS has developed detailed
procedural guidance for asylum offices to conduct *Al Otro Lado v. Wolf* (*AOL*) preliminary
injunction class membership interviews for individuals with a final order of removal detained in
U.S. Immigration and Customs Enforcement (ICE) custody who are referred to USCIS by ICE.
The detailed guidance was carefully drafted in close consultation with U.S. Customs and Border
Protection (CBP), ICE, and the Department of Justice (DOJ). The guidance was distributed to all
asylum offices on December 22, 2020.  Exhibit 1 (Message from Andrew Davidson, Chief of
Asylum Division).

4.     The disseminated guidance included a process for class membership screening
interviews to be referred to USCIS by ICE.  Exhibit 2 (Class Membership Screening Guidance).
Local ICE Enforcement and Removal Officers (ERO) will refer detained individuals who have a
final order of removal to USCIS using pre-existing local USCIS points of contact.

5.     The local asylum office must coordinate with local ICE to schedule the *AOL*
Preliminary Injunction Class Membership Screening Interview for each referred individual.  The
asylum offices track referred cases throughout the interview and determination on the *AOL* Class
Screening using an internal SharePoint Enterprise Collaboration Network ("ECN") page.  At the
interview, the asylum officer confirms that the individual received the "Notice of Potential Class
Membership in Cases Subject to Removal" from ICE.  If the individual indicates they did not

2

previously receive a copy, the asylum officer or the interpreter will read the "Notice of Potential Class Membership in Cases Subject to Removal" to the individual.

6.    Before conducting screening interviews, asylum officers were instructed to familiarize themselves with a document drafted by CBP counsel entitled AOL Guidance, which contains counsel's mental impressions and work product. USCIS also developed a supplemental and amended list of questions to be asked during the class membership interview to determine whether the individual sought to enter the United States at a port of entry to seek asylum before July 16, 2019. Exhibit 3 (Class Membership Screening Interview Questions).

7.    The Class Membership Screening Guidance also instructs officers when making class member determinations to consult lists maintained by Mexican entities that are purportedly of individuals waiting in Mexican border cities or towns, to the extent such lists are available. The guidance further notes that the lists maintained by Mexican entities do not contain Alien (A) numbers, some do not contain dates of birth or the dates that the names were added to the lists, and names may be misspelled or contain differing variations. Without complete identifying information or unique identifiers, and without complete information about when names were added to a list, USCIS may be unable to reliably match particular individuals with names on the lists in many instances. As a result, USCIS is unable to conclude, based solely on the lists, that a particular individual whose name appears on a waitlist is an *AOL* preliminary injunction class member. Accordingly, in addition to consulting the lists, the asylum officers are required to ask the Class Membership Screening Questions to elicit testimony on whether the individual was subject to metering prior to July 16, 2019.

8.    Asylum officers are required to conduct all interviews in a non-adversarial manner. As part of their training program, asylum officers are expected to successfully complete multiple courses on (1) conducting a non-adversarial interview, (2) effectively eliciting

testimony, (3) communicating across cultural barriers, (4) working with interpreters, and (5) interviewing vulnerable populations. Asylum officers also receive extensive training on their duty to be neutral, unbiased adjudicators and to give adequate and appropriate consideration to every decision in a case. In order to reach a conclusion, asylum officers must make sure to obtain sufficient testimony regarding the claim and ask all relevant follow-up questions. If officers find discrepancies between prior testimony or other records, they should ask questions to correct any errors or clarify misunderstandings and to provide an opportunity to explain.

9.      I have reviewed the interview notes from the Class Membership Screening of an individual identified by Plaintiffs as ███ and raised in Plaintiffs' memorandum in support of the Motion for Discovery (Dkt. 680-1 at 6.). Exhibit 4 (Screening Notes). The Screening Notes include a series of questions asked by the asylum officer to determine whether the individual sought to enter the United States at a port of entry to seek asylum before July 16, 2019. These questions are drawn from the supplemental and amended list of metering questions asylum officers received in the guidance issued on December 22, 2020. Exhibit 3 (Class Membership Screening Interview Questions). The asylum officer in this case implemented the guidance by asking questions that are critical to reaching a determination on class membership. As instructed, the asylum officer also consulted the different waitlists available to USCIS to locate the individual. Due to an oversight, the officer did not realize that one of the excel documents containing the waitlist information had multiple tabs of names to review, ██████████ ████████████████████████████. Nevertheless, because asylum officers are instructed to not rely solely on the lists, the officer in this case asked the Class Membership Screening Questions to elicit testimony on whether the individual was subject to metering prior to July 16, 2019, ████████████████████████████████████ ████. Exhibit 5 (Screening Determination). Based on my review of this case, the officer

behaved in a professional manner and asked appropriate follow up questions.  Additionally, this asylum officer, and all asylum officers, received reminders to continue carefully reviewing available lists in their entirety, including all tabs of the spreadsheets.

10.      I have reviewed the interview notes from the Class Membership Screening of an individual identified by Plaintiffs as ████ in their memorandum in support of the Motion for Discovery.  <u>Exhibit 6</u>.  ██████████████████████████



11.      I have reviewed the interview notes from the Class Membership Screening of an individual identified as by Plaintiffs as ████ in their memorandum in support of the Motion for Discovery.  <u>Exhibit 7</u>.  █████████████████████████

12.      I have reviewed the interview notes from the Class Membership Screening of an individual identified by Plaintiffs as ████ in their memorandum in support of the Motion for Discovery.  <u>Exhibit 8</u>.  ██████████████████████

████ r.  <u>Exhibit 9</u>.

13.      Asylum officers are required to consult DHS records and prior statements by the individual, note any discrepancies between the identifying information on the lists and in DHS records, and to ask class members whether they have additional documentary evidence to submit

(while noting that such documentation is not required to demonstrate class membership), when determining if the individual has established they are more likely than not a class member.

14.    USCIS also drafted a new template memo to file, Exhibit 10, and class membership determination notice to document these activities and class membership determinations, Exhibit 11.

15.    The Class Membership Guidance also provides instructions as to how to process the case depending on whether or not the individual establishes class membership.  The guidance provides that asylum offices will coordinate with local ICE offices to schedule an *AOL* preliminary injunction class membership interview for all individuals referred by ICE for such interview.  Although the guidance and the notice to be provided to potential class members do not specify the exact procedures for submitting documentary evidence or an exact timeframe for conducting each interview, this allows local asylum offices the flexibility to receive documentary evidence from the individual based on local detention facility procedures and allows local asylum offices the flexibility to coordinate with their local ICE counterparts to schedule the interviews based on the volume of referrals, office-specific scheduling constraints, and logistical considerations, including asylum office capacity in light of other priority screening workloads and constraints due to the coronavirus pandemic.

16.    The Class Membership Guidance provides that for individuals referred by ICE for an *AOL* preliminary injunction class membership interview, officers are to determine if the individual establishes, they are more likely than not an *AOL* preliminary injunction class member based on whether or not they were subject to metering before July 16, 2019.  The guidance provides that if the individual establishes they are more likely than not a class member and has a final order of expedited removal, officers will either: (a) if USCIS applied the Third Country Transit Asylum Bar Interim Final Rule ("TCT bar") in the prior credible fear determination,

6

reopen the prior negative determination, conduct a new credible fear interview, and make a new credible fear determination without applying the TCT bar; or (b) if USCIS did not apply the TCT bar in the prior credible fear determination but an immigration judge did during review of the negative determination, re-issue the negative credible fear determination paperwork and re-refer the negative determination for new review by an immigration judge.  Officers are to complete the required forms documenting the class membership determination to be placed in the A-file and update USCIS's asylum pre-screening case management system with the class membership determination and, if the individual is a class member, the new credible fear determination or new referral for immigration judge review; record the class member determination in the *AOL* class membership tracking mechanism; and notify ICE by email of the class membership determination and, if applicable, new credible fear determination or new referral for immigration judge review.

17.    The Class Membership Guidance further provides that, if the individual establishes he is more likely than not a class member and has a final order of removal issued in immigration proceedings before the Executive Office for Immigration Review (EOIR), officers are to complete the required forms documenting the class membership determination to be placed in the A-file, record the class membership determination in the *AOL* class membership tracking mechanism on SharePoint, and notify ICE by email of the class membership determination.  Additionally, USCIS provides EOIR with a report of who has been determined to be more likely than not a class member.  My understanding is that EOIR then follows its own guidance regarding reopening.

18.    Additionally, following issuance of the October 30, 2020 order and to assist in developing a master list of potential class members, USCIS used a list of A numbers provided by CBP to identify matches with A numbers contained in the Asylum Division's asylum pre-

screening case management system, which reflects individuals who have been referred to USCIS

for different types of fear screenings and non-refoulement assessments, including, but not limited

to, credible fear, and provided data about the determinations or assessments for those individuals

to DOJ, CBP, ICE, and DHS.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my

knowledge and belief.

Executed this 8th day of March 2021.

ELIZABETH E MURA

Digitally signed by ELIZABETH E MURA
Date: 2021.03.08 16:04:46 -05'00'

Elizabeth E. Mura
Branch Chief
Operations Branch, Asylum Division
Refugee, Asylum & International Operations
Directorate
U.S. Citizenship and Immigration Services
Department of Homeland Security

EXHIBIT 1

| | |
|---|---|
| **From:** | Asylum Chief |
| **To:** | RAIO - Asylum Field Office Staff; RAIO - Asylum Field Office Managers |
| **Cc:** | RAIO - Asylum HQ; RAIO - Asylum HQ Leadership; ASM HQ Supervisors |
| **Subject:** | Al Otro Lado (AOL) Preliminary Injunction Guidance |
| **Date:** | Tuesday, December 22, 2020 6:08:09 PM |
| **Attachments:** | USCIS AOL Class Membership Screening Guidance FINAL 2020-12-22.docx |
| | Guidance for Determining Class Membership FINAL 2020-12-22.docx |
| | USCIS AOL P-I Class Membership Screening Interview Questions FINAL 2020-12-22.docx |
| | AOL P-I Class Membership Screening Determination FINAL 2020-12-22.docx |
| | Memo to File - Al Otro Lado Preliminary-Injunction Class Membership Screening FINAL 2020-12-22.docx |
| **Importance:** | High |

**FOR INTERNAL USE ONLY**

Asylum Colleagues,

On October 30, 2020, the U.S. District Court for the Southern District of California issued an order in *Al Otro Lado v. Wolf* granting plaintiffs' motion to clarify the preliminary injunction. On December 18, 2020, the U.S. Court of Appeals for the Ninth Circuit granted a partial administrative stay of the district court's October 30, 2020 order.

The *AOL* Preliminary Injunction (PI) class membership screening guidance has been finalized.  This guidance currently applies to detained individuals referred to USCIS by ICE/ERO for an *AOL* preliminary-injunction class membership screening.  USCIS will be screening certain cases where the individual has received a final expedited removal order or where the individual has received a final removal order from EOIR in 240 proceedings.  USCIS will **NOT** be screening individuals who are in pending 240 removal proceedings before EOIR.

Local ICE ERO will begin referring certain detained individuals to USCIS using local POCs.  Note that this guidance is different from the guidance issued for *AOL* Retrospective CF cases on March 16, 2020.

The *AOL* P-I class member screenings must be completed using the following new guidance, documents and lists. **This guidance supersedes all previously issued *AOL* guidance.**

**Documents attached include:**

1. USCIS *AOL* Preliminary-Injunction Class Membership Screening Guidance, December 22, 2020

2. Guidance for Determining Provisional Subclass Membership for Purposes of the Preliminary Injunction in *Al Otro Lado v. Wolf* ("CBP *AOL* Guidance")

3. USCIS *AOL* Preliminary-Injunction Class Membership Screening Interview Questions, December 22, 2020

4. Memo to File: *Al Otro Lado* Preliminary-Injunction Class Membership Screening

5. *AOL* Preliminary-Injunction Class Membership Screening Determination

   -
   **Note:** a "Notice of Potential Class Membership" referenced in the USCIS *AOL* Preliminary-Injunction Class Membership Screening Guidance will be provided once available. <u>Do not begin conducting *AOL* PI class member screenings for cases referred by ICE for an *AOL* PI class membership screening until the Notice is available.</u> If you begin receiving referrals from ICE for an *AOL* PI class membership screening before you have received the Notice from Asylum HQ, please notify Asylum HQ.

*AOL* P-I class membership screening interviews and, if applicable, certain information about the new credible fear determination are to be tracked on a special ECN site here: https://ecn.uscis.dhs.gov/team/raio/Asylum/AOL-class/SitePages/Home.aspx.  This site also includes the guidance and related documents for reference.

All asylum officers must be given time to review the attached Guidance and related documents

before conducting any *AOL* P-I class membership screening interviews.  Operational staff, SAOs, TOs, Srs and Section Chiefs must also be familiar with the Guidance and process as appropriate depending on their responsibilities with this caseload.  Please begin screening cases referred by ICE for an *AOL* PI class membership screening as described pursuant to the attached guidance, once Asylum HQ has provided the Notice of Potential Class Membership.

**New Credible Fear Referrals:**

As of today, asylum officers must **no longer use** the USCIS *AOL* metering questions distributed by Deputy Chief Ashley Caudill-Mirillo on November 24, 2019.  Instead, asylum officers must use the updated "USCIS AOL Preliminary Injunction Class Membership Screening Interview Questions, December 22, 2020" issued today in new credible fear cases**.  All of the questions must be asked** to screen for *AOL* preliminary-injunction class membership during the credible fear interview, unless the directions direct you to either stop or skip to a later question if the response is "no."

Document the metering questions and the individual's responses in Q&A notes. Create a summary of the individual's responses to the metering questions and document it in the Q&A. Verbally summarize the individual's responses to the metering questions to the individual, ask the individual to confirm the accuracy of the summary, and provide the individual the opportunity to make any corrections in the Q&A notes. Document in the Q&A notes that the individual was provided the summary, was provided the opportunity to make corrections, and confirmed the accuracy of the summary. If the individual establishes he or she is more likely than not a class member, inform the individual and document the class determination in the Q&A notes. Also document the class determination on the I-870 by writing: "Individual [established/did not establish] that it is more likely than not that he or she meets the class definition in *Al Otro Lado v. Wolf*" in the ADDITIONAL INFORMATION/CONTINUATION section.

Include the *AOL* screening interview Q&A in the credible fear service packet. Document the *AOL* class membership determination in Global, using the "NO BAR – AOL" special group code for class members, or by writing "**NOT AN AOL CLASS MEMBER**" (rather than "NOT METERED") in the Decision Notes for non-class members.  It is important that the class determination be documented appropriately in Global. *AOL* P-I class member screenings for new credible fear referrals do not need to be recorded on the ECN.

Additional guidance may be provided at a future date.

Please address and questions or concerns to Asylum HQ through your chain of command to the Operations and Quality Assurance APSO teams.

Sincerely,

Andrew Davidson

Chief, Asylum Division

EXHIBIT 2

*For Official Use Only*

**USCIS *AOL* Preliminary-Injunction  Class Membership Screening Guidance
December 22, 2020**

1) Local ICE/ERO will refer individuals  who have a final order of removal (either final
   expedited removal order or final order from an IJ or the BIA) to USCIS using pre-existing
   local USCIS POCs and methods currently in place for handling  other types of screening
   referrals in each AOR.

2) For all referred individuals,  the asylum office must coordinate  with local ICE to schedule an
   *AOL* Preliminary-Injunction  Class Membership Screening Interview.

3) The Asylum Office will track the referred case throughout  the interview and determination
   on the *AOL* Class Screening SharePoint (ECN) page here:
   https://ecn.uscis.dhs.gov/team/raio/Asylum/AOL-class/SitePages/Home.aspx

4) *Prior to the interview*, the asylum officer must:
   a. Review the guidance document entitled, "Guidance for Determining  Provisional Subclass
      Membership  for Purposes of the Preliminary  Injunction  in *Al Otro Lado v. Wolf*" ("CBP
      *AOL* Guidance")
   b. Create a memo to file[1] documenting  the following:
      i. Note whether the individual's  name seems to appear on one of the following
         waitlists or other lists that may indicate  an individual's  presence in a Mexican
         border town, and indicate which list the name appears on (Calexico/Mexicali;  El
         Paso/Ciudad Juarez; San Ysidro/Tijuana;  or Presidio/Ojinaga).  These lists do not
         contain A numbers; search by name and date of birth (if DOB is listed). Note in
         the memo to file if there are any discrepancies between the individual's  name,
         DOB, and other identifying  information  in DHS records, and their name, DOB,
         and other identifying  information  on a list. The lists are contained in multiple
         separate files[2]:

---

[1] See attached "Memo to File - *Al Otro Lado* Preliminary-Injunction Class Membership Screening".
[2] Class Counsel has provided what they state are three waitlists from the Mexican border towns from
March through July 15, 2019: "Waitlist transcribed Tijuana Mexicali  (March – July 2019) for DOJ" and
"Juarez Lista de Solicitantes de asilo thru 7.15.19". Additionally, CBP has located the following
additional lists in its possession that may be waitlists or other lists that may indicate an individual's
presence in Mexico during a particular time frame: (1) between November 2018 and January 2019,
Mexico's federal immigration agency ("INAMI") provided CBP OFO four separate pieces of the waitlist
from Mexicali ("Lista nombres CBP1", "Listado Nombres CBP2", "Listado CBP Nombres3", and
"Listado CBP Nombres4"), which contain lists of names corresponding to what appear to be Mexicali
waitlist numbers 1258 through 1761; and (2) the Acting Port Director of the Presidio, TX POE received a
list of individuals  from INAMI in 2019, which appears to be a partial/excerpted list of predominantly
Cuban nationals present in the city of Ojinaga, Mexico, and for which the dates ("fechas") in the left-hand
column appear to correspond to dates in 2019.  As explained in the "Guidance for Determining
Provisional Subclass Membership for Purposes of the Preliminary Injunction in *Al Otro Lado v. Wolf*"
("CBP *AOL* Guidance"), the waitlists are not created or relied upon in any way by CBP in its metering
process.  These lists may not be reliable, accurate, or comprehensive lists of those who were waiting to

*For Official Use Only*

*For Official Use Only*

**USCIS _AOL_ Preliminary-Injunction Class Membership Screening Guidance**
**December 22, 2020**

1. San Ysidro/Tijuana
   a. "Waitlist transcribed Tijuana Mexicali (March – July 2019) for DOJ", four tabs labeled as "TJ" with date ranges
2. El Paso/Ciudad Juarez
   a. "Juarez Lista de Solicitantes de asilo thru 7.15.19"
3. Calexico/Mexicali
   a. "Waitlist transcribed Tijuana Mexicali (March – July 2019) for DOJ", tab labeled as "Mexicali" with a date range
   b. "Lista nombres CBP1"
   c. "Listado Nombres CBP2"
   d. "Listado CBP Nombres3"
   e. "Listado CBP Nombres4"
      i. Items (b) – (e) were provided to CBP by INAMI in three separate communications on 11/30/18, 1/19/19, and 1/29/19.
4. Presidio, TX
   a. "Predidio POE Scan"
   b. This list was provided to CBP in 2019, but the document itself does not have a date range associated with it.

ii. Note whether the individual appears on the CBP OFO list as an individual who was flagged in OFO's electronic system of record of having affirmatively claimed to be a class member upon encounter.[3]
   1. An individual's inclusion on this list means only that the individual was flagged in OFO's electronic system of record as an individual who affirmatively *claimed* to be a class member upon encounter. This flag is not a determination that the individual necessarily *is* a class member.
   2. Any questions about discrepancies between information on the CBP OFO list and DHS records or other evidence should be raised to Asylum Ops APSO <AsylumOpsAPSO@uscis.dhs.gov> and Asylum QA APSO <AsylumQAAPSO@uscis.dhs.gov>.

iii. Note whether an individual's I-213 includes an annotation "POTENTIAL AOL CLASS MEMBER" (for I-213s from U.S. Border Patrol) or "Potential AOL Class Member" (for I-213s from OFO).
   1. This annotation means that the individual was noted by Border Patrol or OFO as an individual who affirmatively claimed to be a class member

---

enter the United States through a port of entry at any given time. The government is merely using these waitlists as potentially indicative that the individual sought to enter at a U.S. port of entry before July 16, 2019. The waitlists do not contain A numbers, and some do not contain dates of birth or dates the names were added to the waitlist; names may also be misspelled on the waitlist.
[3] See Excel file titled, "Copy of 2020-11-05_APP_AOL_Preliminary_Injunction_Guidance v1".

*For Official Use Only*

*For Official Use Only*

**USCIS *AOL* Preliminary-Injunction Class Membership Screening Guidance**
**December 22, 2020**

upon encounter of apprehension. This annotation is not evidence that the individual necessarily *is* a class member.

2. Any questions about discrepancies between an annotation on a CBP I-213 and DHS records or other evidence should be raised to Asylum Ops APSO <AsylumOpsAPSO@uscis.dhs.gov> and Asylum QA APSO <AsylumQAAPSO@uscis.dhs.gov>.

iv. Note whether the I-213, I-867A/B (sworn statement), I-877 (sworn statement), or any other processing documents contain affirmative indications of class membership or evidence that would tend to negate class membership.

v. Note whether the individual was previously asked class membership screening questions and whether the responses contained evidence of class membership or evidence that would tend to negate class membership.

5) *At the interview*, the asylum officer must:
   a. Confirm the individual received the "Notice of Potential Class Membership in Cases Subject to Removal" from ICE. If the individual indicates they did not previously receive a copy, provide a copy at the beginning of the interview in the individual's language (if available) and have the interpreter read the "Notice of Potential Class Membership in Cases Subject to Removal."
   b. Ask the updated metering questions of all individuals referred for an *AOL* Class Membership Screening Interview, even if they were previously asked metering questions. **Asylum officers must use the December 2020 list of metering questions rather than the November 2019 questions.**
   c. Document the metering questions and the individual's responses in Q&A notes.
   d. Create a summary of the individual's responses to the metering questions and document it in the Q&A. Verbally summarize the individual's responses to the metering questions to the individual, ask the individual to confirm the accuracy of the summary, and provide the individual the opportunity to make any corrections in the Q&A notes. Document in the Q&A notes that the individual was provided the summary, was provided the opportunity to make corrections, and confirmed the accuracy of the summary.
   e. Ask whether the individual has documentary evidence that they would like to submit that they have not already submitted.

6) *After the interview*, the asylum officer must determine if the individual has established he or she is more likely than not an *AOL* class member, based on the CBP *AOL* Guidance and the below:
   • The burden is on the individual to establish class membership. See the CBP *AOL* Guidance document for the relevant class definition.
   • The standard of proof for establishing class membership is "more likely than not." That is, the individual need establish that it is more likely than not that he or she is a class member.
   • Documentary evidence of class membership is not required to satisfy this standard.

*For Official Use Only*

*For Official Use Only*

### USCIS *AOL* Preliminary-Injunction  Class Membership Screening Guidance
### December 22, 2020

- Evidence of class membership, including but not limited to, documentation of a stay in a shelter or hotel in a Mexican border town/city during the relevant pre-July 16, 2019 time period; documentation regarding the placement of a name on a waitlist during the relevant pre-July 16, 2019 time period; and declarations, affidavits, or the individual's own statements regarding whether they may have been subject to metering during the relevant pre-July 16, 2019 time period will generally be sufficient to establish that an individual is more likely than not a class member in the absence of contradictory evidence in DHS records or the individual's current or prior testimony.

- The waitlists provided to DOJ by class counsel, as well as the portions of waitlists and other lists indicating presence in a Mexican border town provided by INAMI or other entities to CBP OFO, may be evidence of class membership in that the presence of the individual's name on one of the lists may indicate that the individual was at or near the Mexican border near the San Ysidro, El Paso, Calexico, or Presidio ports of entry, as applicable, and made efforts before July 16, 2019, to enter the United States at that port of entry. (The Presidio list appears to have entries ranging from April 2019 through October 2019, with gaps.) However, if an individual's name is included on one of these waitlists, but the individual's own statements (during the current *AOL* P-I class member screening interview, prior credible fear interview, prior *AOL* class member screening interview, or sworn statements) clearly and unequivocally contradict that information —for example, if the individual clearly states and affirms that they did not leave their home country or arrive in Mexico before July 16, 2019— the individual's own statements may be given greater weight than the existence of a name on the waitlist.

- The absence of an individual's name on a waitlist should not be used to conclude that the individual is not a class member where there is other credible evidence of class membership, including but not limited to the individual's own testimony. First, DHS only has partial transcriptions of waitlists or other partial lists that may indicate an individual's presence in Mexico during a particular time frame, and that correspond to only six ports of entry: Calexico/Mexicali; El Paso/Ciudad Juarez; San Ysidro/Tijuana; and Presidio/Ojinaga. The Presidio/Ojinaga list is a list of Cuban nationals only. An individual may have placed his or her name on one of these waitlists during a date range other than the ranges provided by class counsel or provided to CBP. Additionally, waitlists exist in other Mexican border towns, but the U.S. government does not have copies of these lists. Second, it is reported that the waitlists are not always accurate or complete. Accordingly, it is possible that an individual's name was misspelled or transcribed incorrectly on the waitlist, or that the individual attempted to present themselves at a port of entry before July 16, 2019, but his/her name was not placed on a waitlist.

- Asylum officers cannot rely on a prior *AOL* class membership determination that an individual is not an *AOL* class member. However, asylum officers can consider an individual's statements from prior screening interviews as relevant evidence to be

*For Official Use Only*

**USCIS *AOL* Preliminary-Injunction Class Membership Screening Guidance
December 22, 2020**

considered when determining whether the individual is more likely than not a class member, including in assessing the individual's credibility.

**For individuals with final expedited removal orders[4]:**

a. **Class Membership Established:** If the asylum officer determines the individual has established they **ARE** more likely than not an *AOL* class member, then, in most cases, the prior negative credible fear determination must be reopened in Global and the Third Country Transit Asylum Bar IFR cannot be applied. When class membership is established, supervisory review of the *AOL* class member determination is not required.

    i. Document the class member determination in a "Memo to File - *Al Otro Lado* Preliminary-Injunction Class Membership Screening" and in an "*AOL* Preliminary-Injunction Class Membership Determination" form.

    ii. The class member determination must be recorded on the *AOL* Class Screening ECN page here: https://ecn.uscis.dhs.gov/team/raio/Asylum/AOL-class/SitePages/Home.aspx, in addition to uploading the related determination documents.

    iii. *If USCIS did not apply the Third Country Transit Asylum Bar IFR in the prior credible fear determination, but an immigration judge applied the IFR during review of the negative credible fear determination:* USCIS is not required to conduct a new credible fear interview or make a new credible fear determination because the prior USCIS negative credible fear determination did not apply the Third Country Transit Asylum Bar IFR. Re-issue the negative credible fear determination paperwork by completing and signing a new Form I-863, Notice of Referral to Immigration Judge and a new Form I-869, Record of Negative Credible Fear Finding and Request for Review by Immigration Judge, with current dates, and refer the negative credible fear determination for a new immigration judge review. Supervisory asylum officers must change the special group code to **NO BAR – AOL** on the Entry tab in Global. Document in the Decision Notes in Global when the negative credible fear determination was referred for a new immigration judge review. Do not make any other changes in Global. Select "Class Member, ER Case – New CF Screening NOT Required" as the *AOL* Class Membership Screening outcome on the ECN. Skip to steps xii-xiii.

    iv. *If USCIS applied the Third Country Transit Asylum Bar IFR in the prior credible fear determination:* Inform the individual that they have been found to be an *AOL* P-I class member and that they will receive a new credible fear interview. Inform the individual that the credible fear interview will be scheduled for a later date/time unless the individual wants to proceed with the new credible fear interview at this time. Follow standard credible fear processing guidance for

---

[4] This includes individuals who received a negative credible fear determination that was affirmed by an immigration judge, or who received a negative credible fear determination and did not request review by an immigration judge.

**USCIS *AOL* Preliminary-Injunction Class Membership Screening Guidance**
**December 22, 2020**

allowing the individual to reschedule for an attorney/consultant to participate in the new credible fear interview.

  1. If the new credible fear interview will be conducted immediately following the class screening interview, proceed to step v.
  2. If the new credible fear interview will be conducted at a later date/time, notify ICE/ERO that the individual was found to be an *AOL* class member, and coordinate with local ICE/ERO to schedule the new credible fear interview. Follow standard credible fear procedures regarding the consultation period. When the new credible fear interview is scheduled, follow steps v. – xiii.

  v. The asylum officer must review the prior credible fear interview record and determination, move forward with conducting a new credible fear interview, and make a new credible fear determination applying the significant possibility standard, consistent with pre-Third Country Transit Asylum Bar IFR procedures.

  vi. Complete a new *Credible Fear Determination Checklist.*

  vii. Issue a new *I-870, Record of Determination/Credible Fear Worksheet* (using the pre-IFR version dated 2/27/17), and include in the ADDITIONAL INFORMATION/CONTINUATION section the following language: "Alien established that it is more likely than not that he or she meets the class definition in *Al Otro Lado v. Wolf*."

  viii. If the new credible fear determination is negative after applying the significant possibility standard, the asylum officer must issue new negative credible fear documentation and refer the case for IJ review using Form I-863 (if IJ review is requested), attaching the required credible fear review documents as is standard for initial negative credible fear determinations referred for IJ review.

  ix. If the credible fear determination is positive after applying the significant possibility standard, the asylum officer must issue an NTA.

  x. Supervisory review is required after the credible fear determination is made. Supervisory asylum officers must change the special group code to **NO BAR – AOL** on the Entry tab in Global and update the decision card, if applicable. **The office must not change the dates of decision, decision service, supervisory review, and interview in Global.** Instead, document in the Decision Notes that the credible fear determination was reopened and a new determination was made. Please include relevant details such as the credible fear interview date, decision date, and service date.

  xi. Certain aspects of the credible fear determination must be recorded on the *AOL* Class Screening ECN page here:
  https://ecn.uscis.dhs.gov/team/raio/Asylum/AOL-class/SitePages/Home.aspx.
  Select "Class Member, ER Case – New CF Screening Required" as the *AOL* Class Membership Screening outcome on the ECN.

  xii. The Q&A notes of the *AOL* class membership screening interview, memo to file, and "*AOL* Preliminary-Injunction Class Membership Determination" form must

**USCIS *AOL* Preliminary-Injunction  Class Membership Screening Guidance**
**December 22, 2020**

be added to the alien's A-file and electronically uploaded into Global and onto the ECN.

    xiii.  Notify the local ICE/ERO office that referred the individual for an *AOL* class membership screening by email that the individual was determined to be an *AOL* class member and provide the new credible fear service packet for service on the individual, and EOIR (if positive or if negative and IJ review is requested). Also attach the following documents to be added to the A-file: "Memo to File - *Al Otro Lado* Preliminary-Injunction Class Membership Screening," *AOL* class membership screening Q&A notes, and "*AOL* Preliminary-Injunction Class Membership Determination" form. The *AOL* class membership screening notes and the "*AOL* Preliminary-Injunction Class Membership Determination" form should be included in the credible fear service packet for service on the individual and EOIR.

b.  **Class Membership NOT Established:** If the asylum officer determines the individual has **NOT** established they are more likely than not an *AOL* class member, do not conduct a new credible fear interview and do not complete any related CF paperwork.

    i.  Document the class member determination in a "Memo to File - *Al Otro Lado* Preliminary-Injunction Class Membership Screening" and in an "*AOL* Preliminary-Injunction Class Membership Determination" form.

    ii.  Prior to notifying ICE of the results of the class membership determination, the asylum officer must obtain supervisory review of all negative class membership determinations. Supervisory review must be documented by a signature on the memo to file.

    iii.  The class member determination must be recorded on the *AOL* Class Screening ECN page here: https://ecn.uscis.dhs.gov/team/raio/Asylum/AOL-class/SitePages/Home.aspx, in addition to uploading the related determination documents. Select "Not a Class Member" as the *AOL* Class Membership Screening outcome on the ECN.

    iv.  The supervisory asylum officer must document the negative class membership determination by entering "**NOT AN AOL CLASS MEMBER**" in the Decision Notes on the Decision Card in Global. Do not change the decision, decision date, or service date. ***It is extremely important for tracking and reporting purposes that the Decision Notes be documented _exactly_ as provided in this guidance.***

    v.  The Q&A notes of the interview, memo to file, and "*AOL* Preliminary-Injunction Class Membership Determination" form must be added to the alien's A-file and electronically uploaded into Global and onto the ECN.

    vi.  Notify the local ICE/ERO office that that referred the case for an *AOL* class membership screening by email that the individual was determined **NOT** to be an *AOL* class member, and attach the following documents to be added to the A-file: "Memo to File - *Al Otro Lado* Preliminary-Injunction Class Membership Screening," AOL class membership screening notes, and "*AOL* Preliminary-Injunction Class Membership Determination" form. The *AOL* class membership

*For Official Use Only*

**USCIS *AOL* Preliminary-Injunction Class Membership Screening Guidance
December 22, 2020**

screening notes and the "*AOL* Preliminary-Injunction Class Membership Determination" form should be provided to the individual.

**For individuals with final removal orders from EOIR in INA 240 proceedings:**

a. **Class Membership Established:** If the asylum officer determines the individual has established they **ARE** more likely than not an *AOL* preliminary-injunction class member, then their removal proceedings before EOIR may be eligible to be reopened or reconsidered without application of the Third Country Transit Asylum Bar IFR. When class membership is established, supervisory review of the *AOL* class membership determination is not required.

   i. Document the class member determination in a "Memo to File - *Al Otro Lado* Preliminary-Injunction Class Membership Screening" and in an "*AOL* Preliminary-Injunction Class Membership Determination" form.

   ii. The class member determination must be recorded on the *AOL* Class Screening ECN page here: https://ecn.uscis.dhs.gov/team/raio/Asylum/AOL-class/SitePages/Home.aspx, in addition to uploading the related determination documents. Select "Class Member, 240 Case – New CF Screening NOT Required" as the *AOL* Class Membership Screening outcome on the ECN.

   iii. The Q&A notes of the *AOL* class membership screening interview, memo to file, and "*AOL* Preliminary-Injunction Class Membership Determination" form must be added to the alien's A-file and electronically uploaded onto the ECN.

   iv. Notify the local ICE/ERO office that referred the individual for an *AOL* class membership screening by email that the individual was determined to be an *AOL* class member and attach the following documents to be added to the A-file: "Memo to File - *Al Otro Lado* Preliminary-Injunction Class Membership Screening", *AOL* class membership screening Q&A notes, and "*AOL* Preliminary-Injunction Class Membership Determination" form. Ask ICE to provide a copy of the *AOL* class membership screening notes and the "*AOL* Preliminary-Injunction Class Membership Determination" form to the individual.

   v. Do not conduct a credible fear interview or create a case in Global. No further action is required of the asylum officer for processing this individual's case.

b. **Class Membership NOT Established:** If the asylum officer determines the individual has **NOT** established they are more likely than not an *AOL* class member, then reopening or reconsideration of their removal proceedings before EOIR is not required.

   i. Document the class member determination in a "Memo to File - *Al Otro Lado* Preliminary-Injunction Class Membership Screening" and in an "*AOL* Preliminary-Injunction Class Membership Determination" form.

   ii. Prior to notifying ICE of the results of the class membership determination, the asylum officer must obtain supervisory review of all negative class membership determinations. Supervisory review must be documented by a signature on the memo to file.

8

VER DEC. 22, 2020

*For Official Use Only*

### USCIS *AOL* Preliminary-Injunction  Class Membership Screening Guidance
### December 22, 2020

    iii.   The class member determination  must be recorded on the *AOL* Class Screening ECN page here: https://ecn.uscis.dhs.gov/team/raio/Asylum/AOL-class/SitePages/Home.aspx, in addition  to uploading  the related determination documents. Select "Not a Class Member" as the *AOL* Class Membership Screening outcome on the ECN.

    iv.   Notify the local ICE/ERO office that referred the case for an *AOL* class membership screening by email that the individual was determined **NOT** to be an *AOL* class member and attach the following  documents to be added to the A-file: "Memo to File - *Al Otro Lado* Preliminary-Injunction  Class Membership Screening," the *AOL* class membership screening notes, and "*AOL* Preliminary-Injunction  Class Membership Determination" form. Ask ICE to provide a copy of the *AOL* class membership screening notes and the "*AOL* Preliminary-Injunction  Class Membership Determination"  form to the individual.

    v.   Do not conduct a credible fear interview  or create a case in Global.  No further action is required of the asylum officer for processing this individual's case.


Any questions as to whether an individual  was metered and should be considered to be a class member should be directed to Asylum Ops APSO <AsylumOpsAPSO@uscis.dhs.gov>  and Asylum QA APSO <AsylumQAAPSO@uscis.dhs.gov>.

VER DEC. 22, 2020
*For Official Use Only*

EXHIBIT 3

*For Official Use Only*

### USCIS *AOL* Preliminary-Injunction Class Membership
### Screening Interview Questions

**All of the following questions must be asked of each individual during the *AOL* Preliminary-Injunction Class Membership Screening Interview, unless the directions direct you to stop or skip to a later question if the response is "no":**

1. What date did you leave your home country to come to the US?
2. How did you travel to the US? (Please include what countries you traveled through and when you stayed in each country.)
3. What day did you cross the border from Mexico into the US? [*applies to either entrance at POE or EWI; ask appropriate follow-up questions as necessary*]
4. Did you ever try to approach a port of entry to enter the United States before that time [*insert date of entry from 1 above*]?
   a. When? [*if the individual clearly indicates that they last entered the United States before July 16, 2019, no need for additional questions*]
   b. Where? [*if the individual clearly indicates that no attempts to enter before 7/16/19 were at a POE, skip to questions 5-7*]
   c. Which POE?
   d. What did you do to try to enter at the POE?
   e. What happened when you sought to enter at the POE?
      i. Did anyone tell you that the POE was full? If yes, who? [*ask appropriate follow-up questions for details*]
      ii. Did anyone tell you that you needed to wait in Mexico or go to a shelter before entering to the POE? If yes, who? [*ask appropriate follow-up questions for details*]
      iii. Where did you go? (Please include what city and where specifically, e.g., shelter, the streets).
      iv. How long did you spend there?
      v. Do you have any documentation that shows where you stayed and how long you spent in [*city and where specifically the individual states he or she stayed*]? If yes, are you able to provide that documentation or other information? [*note that providing documentation is not a prerequisite to showing class membership at this time*]
      vi. While you were in [*name of city in Mexico*] were you told to put your name on any sort of list to get into a POE? If yes, who told you that? [*ask appropriate follow-up questions for details*]
      vii. While you were in [*name of city in Mexico*] were you ever told that you could return to a POE to be processed? If yes, who told you that? [*ask appropriate follow-up questions for details*]
          1. If yes, did you then return to that POE? [*ask appropriate follow-up questions for details*]
          2. If no, did you at any point return to that POE or another POE anyway? [*ask appropriate follow-up questions for details*]

1

VER. DEC. 22, 2020

*For Official Use Only*

*For Official Use Only*

### USCIS *AOL* Preliminary-Injunction Class Membership
### Screening Interview Questions


5. Did you ever add your name to any sort of list in Mexico that you believed would get you a place in line to cross through a port of entry?
   a. Did you add your name to the list by writing it yourself?
   b. Did someone else write your name on the list? [*If yes, who? Were you present when he/she wrote your name? If not, did you ask him/her to do that?*]
   c. Did you give someone your name in order to receive a number so that you could enter the United States at a port of entry?
   d. When did you add your name to that list or receive a number? [*if the individual clearly indicates that this happened after 7/16/19, skip to questions 6-7*]
   e. Where were you when you added your name to that list?
   f. What steps did you take to place your name on the list?
   g. Why?
      i. Did anyone tell you that the POE was full? If yes, who? [*ask appropriate follow-up questions for details*]
      ii. Did anyone tell you that you needed to wait in Mexico or go to a shelter before going to the POE? If yes, who? [*ask appropriate follow-up questions for details*]
   h. While you were in [*name of city in Mexico*] were you ever told that you could go to a POE to be processed? If yes, who told you that? [*ask appropriate follow-up questions for details*]
      i. If yes, did you then go to that POE? [*ask appropriate follow-up questions for details*]
      ii. If no, did you at any point go to a POE anyway? [*ask appropriate follow-up questions for details*]
      iii. Did you decide to enter between the POEs rather than returning to a POE to be processed?
   i. After you added your name to a list, were you told at some point that your number had been called and it was time to enter the POE? If yes, when?
      i. Did you enter the POE when your number was called?
      ii. If you did not enter the POE when your number was called, why not?

6. Other than what you have already told me, did you ever try to add your name to a list in Mexico to get into the United States but were unable to add your name to the list?
   a. What happened?

7. Other than what you have already told me, did you know about the existence of a waitlist in Mexico that you believed would get you a place in line to enter the United States, but decide not to add your name to a list?
   a. Why did you decide not to add your name to a list?

*For Official Use Only*

*For Official Use Only*

**USCIS *AOL* Preliminary-Injunction  Class Membership
Screening Interview Questions**


8.  [*If the individual claims to have been metered at San Ysidro/Tijuana, El Paso/Ciudad Juarez, or Calexico/Mexicali between March and July 16, 2019, and his/her name does not appear on the waitlist, and he/she has not offered an explanation as to why]:* We have a purported copy of [*part of the list for Tijuana or Ciudad Juarez or parts of the list for Mexicali*], and we did not locate your name on the list.  Do you know why your name does not appear on the list?

9.  [*If the individual claims to have arrived near the U.S.-Mexico border after July 16, 2019, but their name appears on one of the waitlists provided by plaintiffs or CBP:*] We believe  your name appears on a list of people  waiting to enter the United States in [*one of the relevant cities*] in [*relevant month/year*]. Do you know how your name could have gotten on that list? [*Officers should take account of the apparent commonality of names*]

10. Do you have any documentary evidence that you would like  to submit that you have not already submitted?

EXHIBIT 4

| A Number: ▮▮▮ | Interview Date: 02/09/2021 | |
|---|---|---|
| Name: ▮▮▮ | Asylum Officer: J. PEREZ GARCIA | |
| Country: ▮▮▮ | Interpreter: N/A Fluent English Speaking Applicant | |
| Asylum Office: ZOL | Start: 08:33am CST | Stop: 09:49am CST |

### USCIS AOL Preliminary-Injunction Class Membership Screening Interview

*No interpreter required. Applicant is a fluent English speaker. Applicant understood and responded with no issues and was competent in English. Prior interviews also provide record of applicant conducting interviews in English.*

### INTRODUCTION

| Officer | Applicant |
|---|---|
| Hello, my name is Officer Perez. I am an asylum officer. The purpose of our interview today is to talk about how you entered the United States. We will not be discussing the reasons why you left your country. | Ok, yes I understand |
| Please know that I have been placed under oath and everything you say is confidential. | Ok. |
| To confirm, do you understand me so far? | Yes, I do. |
| Do you speak any other languages? (*If yes, ask which is best language, ask PA what language they want to communicate in*) | I also speak Pidgin English. |
| And to clarify, which language is the best to communicate in for the interview? | English. |

### APPLICANT OATH

| Officer | Applicant |
|---|---|
| Before we begin, I will place you under oath. Please raise your right hand. | Ok. |
| Do you swear or affirm that all the statements you are about to make will be the truth, the whole truth, and nothing but the truth? | Yes, I do. |
| Thank you. You may lower your hand. | |

### BIO QUESTIONS/ATTORNEY

| Officer | Applicant |
|---|---|
| Can you please tell me your true and complete name? | ▮▮▮ |
| What is your date of birth? | ▮▮▮ |
| What country are you citizen of? | ▮▮▮ |
| Do you have an attorney? (*No G28 needed*) | Yes, I do. |
| • *If Yes:* You have the right to have your attorney or consultant present for our interview, typically over the phone. Do you want me to call and see if your representative is available to participate in the interview? | They attorneys name is ▮▮▮ |

*NOTICE OF POTENTIAL CLASS MEMBERSHIP CONFIRMATION*

| Officer | Applicant |
|---|---|
| Our records show that on you were provided with a document called "Notice of Potential Class Membership in Cases Subject to Removal" from ICE. Do you remember receiving this document? (*Note- Sometimes ICE will include copy of this document in referral packet, sometimes they do not. Another way is to check the comments section in EARM- it may indicate when the PA was served this notice. If no record to indicate PA received this form, ask if they remember receiving it or just start by asking interpreter to read this form.* | Yes, I did receive it. |
| *IF YES*- Great. Do you have any questions about that document? | No. |

*AOL PI CLASS MEMBERSHIP SCREENING QUESTIONS*

| Officer | Applicant |
|---|---|
| *What date did you leave your home country to come to the US?* | |
| *How did you travel to the US?  (Please include what countries you traveled through and when you stayed in each country.)* | |
| *When did you leave* ▮▮▮ *for* ▮▮ *?* | |
| *When did you arrived in* ▮▮▮ *after being in* ▮▮ *?* | |
| *How long did you stay in* ▮▮ *for?* | |
| *When did you arrive in* ▮▮▮ *?* | |
| *And how long were you in* ▮▮ *before leaving for* ▮▮ *?* | |
| *And when did you arrive to* ▮▮▮ *?* | |
| *And how long did you stay in* ▮▮▮ *?* | |

A Number: ▮▮▮
Asylum Officer: J. PEREZ GARCIA
Interview Date:  02/09/2021          Page **2** of 7

| | |
|---|---|
| | ■■■■■■■ |
| *And when did you arrive in* ■■■■ *?* | ■■■■■■■ |
| *And how long did you spend in* ■■■■ *?* | ■■■■■■ |
| *When did you arrive to* ■■■■ *?* | |
| *And how long did you stay in* ■■■■ *for?* | ■■■■■ |
| *And after* ■■■■ *when did you enter* ■■■■ *?* | ■■■■■ |
| *And how long did you stay in* ■■■■ *?* | ■■■■■ |
| *And when did you arrive in* ■■■■ *?* | ■■■ |
| *And when did you arrive to* ■■■■ *?* | ■■■■■ |
| *And when did you arrive to Mexico?* | I arrived in Mid-May to Mexico. So Mid May 2019. |
| *What cities did you travel through in Mexico to get to the US Border?* | I don't remember the name of the cities. I remember though getting to Tapachula in Mexico. |
| *When did you arrive in Tapachula?* | I arrived in June 2019. |
| *What day did you cross the border from Mexico into the US? [applies to either entrance at POE or EWI; ask appropriate follow-up questions as necessary]* | 25th August 2019. |
| *And what was the name of the area where you crossed from Mexico into the US in August 25th 2019?* | Tijuana, Mexico. |
| *When did you arrive to Tijuana?* | 7th of July 2019. |
| *How did you cross into the United States from Mexico?* | I went to San Ysidro, I presented myself there to get into the US. |
| *Did you ever try to approach a port of entry to enter the United States before that time August 25th 2019?* | Yes, yes, I did. |
| *When? [if the individual clearly indicates that they last entered the United States before July 16, 2019, no need for additional questions]* | I don't remember the dates. I know it was in July, but I can't remember the exact dates. The date I do |

| | remember though is July 7th, 2019. |
|---|---|
| *How do you remember July 7th, 2019?* | That was the first time of me going to the border. Most Mexicans were coming to the border, so I thought they were presenting themselves to US Immigration and I went with them. |
| *To clarify, what makes you sure that it was that date?* | Because it was an incident I cannot forget. It was something I remembered. |
| *Which POE?* | San Ysidro |
| *What did you do to try to enter at the POE?* | I just went there and one of the border patrol officers told me now, that I need to go back to Mexico and wait in Mexico. |
| *What happened when you sought to enter at the POE?* | They told me I had to go back. They said that I had to go back to Mexican immigration and that they can take us and give us to US immigration. That we had to wait in Mexico. |
| *Did anyone tell you that the POE was full?* | No, no. |
| *Did anyone tell you that you needed to wait in Mexico or go to a shelter before entering to the POE?* | Yes, sir |
| *And who specifically told you that?* | US and Mexican immigration |
| *When did they specifically tell you that?* | On July 7th, 2019. |
| *And how did you encounter Mexican immigration?* | Because I tried to go to the entry And Mexican immigration would approach us and stop and tell us that US immigration would eventually call them and tell them to when we were going to come in. We would go, but border Patrol would tell us to go back to Mexico and wait. Mexican immigration |

|  |  |
|---|---|
|  | would say to wait for the US to let us in. |
| *Where did you go?* | We went back to where we were sheltering. |
| *Okay, but where was this shelter? What was its name?* | It was called Best Space. It was in Tijuana. I do not remember the address. I do not know the street it was on. |
| *How long did you spend there?* | From July 7th to 25th August. |
| *Do you have any documentation that shows where you stayed and how long you spent in Tijuana and at the Best Space Shelter?* | Yes, I do have some documentation from Mexican immigration, like a pass showing I was in Tijuana. |
| *While you were in Tijuana were you told to put your name on any sort of list to get into a POE?* | I was told, but I didn't add my name. |
| *And who specifically told you?* | There were some volunteers walking around the Mexico/US area. They told us we had to put our names in a register in order to go to the US. |
| *And was this through the shelter or through another organization?* | It was Mexican immigration volunteers |
| *And how were you aware that the individuals who told you about the register were from Mexican immigration?* | They said they were Mexican immigration volunteers and had a uniform. |
| *While you were in Tijuana were you ever told that you could return to a POE to be processed?* | No. |
| *Did you ever add your name to any sort of list in Mexico that you believed would get you a place in line to cross through a port of entry?* | No. |
| *Other than what you have already told me, did you ever try to add your name to a list in Mexico to get into the United States but were unable to add your name to the list?* | No sir. |
| *Other than what you have already told me, did you know about the existence of a waitlist in Mexico that you believed would get you a place in line to enter the United States, but decide not to add your name to a list?* | No sir. |
| *Do you have any documentary evidence that you would like to submit that you have not already submitted?* | No sir. |

## SUMMARY/CONCLUSION

| Officer | Applicant |
|---|---|
| These are the end of my questions. I'm going to summarize the information we discussed and read it back to you to confirm it is correct. Please give me a moment while I create the summary. | ok |

## SUMMARY

| Officer |
|---|
| Today you testified that you left your home country of ▮▮▮▮ for the US ▮▮▮▮. You testified that you went from ▮▮▮ to ▮▮. You stayed there for two weeks and then left to ▮▮▮▮. You stayed in ▮▮▮▮ April 2019, and then traveled to ▮▮▮. The travel took ▮▮▮. You state you arrived in ▮▮▮ and did not stay, you immediately left for ▮▮▮ You then went from ▮▮ to ▮▮. You state you crossed through the jungles from ▮▮ to ▮▮ and that took ▮▮. You spent ▮▮ in ▮▮ because ▮▮ immigration had been taken to a refugee camp. You state after ▮▮, you went to ▮▮ and were there in ▮▮. You transited through there and went to ▮▮. You state you transited through ▮▮ for ▮ and then went to ▮. You as well went from ▮▮ to ▮. You state you went from ▮▮ to Mexico. You arrived in Mexico on June 25th, 2019. You state you remember being Tapachula, Mexico. You arrived to Tijuana July 7th 2019. You tried to enter July 7th, 2019 but were told to go back to Mexico and wait. You state prior to your crossing of August 25th, 2019, you did try to enter the US in July 2019. You state while in Tijuana you were told to about putting your name on a list by Mexican immigration that you have to put your name in register. You state you were not told by anyone to give your name in order to be put on a list to get a number to enter the US. You state you did not know about the existence of any waitlist to enter the US. |

## CONCLUSION

| Officer | Applicant |
|---|---|
| Does that sound like a correct summary of what you testified today? | Yes. |
| Would you like to make any corrections to your testimony or summary? | No. |
| Do you have any documentary evidence you would like to submit today? | Yes. |
| Just to confirm, you were provided with a summary of your testimony, were given an opportunity to make corrections and you confirmed the accuracy of the summary. Is this correct? | Yes. |
| Do you have any questions for me? | No. |

- This is the end of the interview. Please place the phone front of you, but do not hang up the phone. Let the officer know you are done.
- Interpreter, thank you for your service today. You may disconnect.

**INTERVIEW CONCLUDED:  09:49am CSTs**

EXHIBIT 5

**AOL Preliminary-Injunction**
**Class Membership Screening Determination**

Date: 02/10/2021



EXHIBIT 6

| A Number: ██████ | Interview Date: 2/12/21 | |
|---|---|---|
| Name: ████████████ | Asylum Officer: A. Walker ZOL072 | |
| Country: ████ | Interpreter: 207111 LL French | |
| Asylum Office: ZOL | Start: 8:05 am | Stop: 9:10 am |

### USCIS AOL Preliminary-Injunction Class Membership Screening Interview

## NTERPRETER OATH

| Officer | Interpreter |
|---|---|
| Hello interpreter. You will be interpreting for a credible fear related interview today. I have the applicant on the line. Could you please introduce yourself as the interpreter, make sure you are able to understand each other, and let the applicant know that I'm going to swear you in now? | Yes. (understanding confirmed) |
| Could you ask the applicant to speak a bit louder and come closer to the phone? | (interpreter instructs applicant) |
| Do you affirm that you will truthfully, literally, and fully interpret the questions asked by the officer and the answers given by the applicant; that you will not add to, delete from, comment on, or otherwise change the matter to be interpreted; and that you will immediately notify the officer if you become aware of your inability to interpret in a neutral manner? | Yes I do. |
| Do affirm that you understand that all matters in this interview are confidential? | Yes. |

☒ Administered Interpreter Oath

## INTRODUCTION

| Officer | Applicant |
|---|---|
| Hello, my name is Officer Walker. I am an asylum officer. My supervisor officer Tonkovich is also observing me during this interview. The purpose of our interview today is to talk about how you entered the United States. We will not be discussing the reasons why you left your country. | Okay |
| Please know that the interpreter has been placed under oath and everything you say is confidential. | Yes madam. |
| To confirm, do you understand the interpreter so far? | Yes madam. |
| And when we spoke on Tuesday, you indicated that you speak the languages ████ your dialect, and French, and that you wish to use French for the interview. Do you wish to use French for the interview again today? | Yes. |

## APPLICANT OATH

| Officer | Applicant |
|---|---|
| Before we begin, I will place you under oath to promise to tell the truth, just like last time. Please raise your right hand. | Yes madam. |

| | |
|---|---|
| Do you swear or affirm that all the statements you are about to make will be the truth, the whole truth, and nothing but the truth? | I do. |
| Thank you. You may lower your hand. | Thank you madam. |
| To the interpreter are you able to hear the applicant well enough? | (His voice is a little bit low, I will ask him again to speak up and move closer to the phone) |

## BIO QUESTIONS/ATTORNEY

| Officer | Applicant |
|---|---|
| Now I will ask you just a couple biographical questions. | Yes madam. |
| Can you please tell me your true and complete name? | ██████████████ |
| What is your date of birth? | |
| What country are you citizen of? | ██████ |
| On Tuesday, you requested to have your attorney John present for the interview. | Yes madam. |
| His law firm informed us on Wednesday that John is not available today, but his law firm partner is available. | Yes madam. |
| Would you like us to call his partner as your representative to observe the interview? | Yes madam. |
| Thank you, the interpreter will call your attorney now. (225-773-4015) | (interpreter calls attorney) |
| Good morning sir, can you please state your name? | (attorney: Joseph Giardinia) |
| Good morning counsel, we have on the phone: your client Christian, the interpreter, and I am officer Walker. Also on the phone observing the interview is my supervisor, officer Tonkovich. | (attorney: Okay. And just to confirm this is just an interview for the Al Otro lado case?) |
| Yes, the purpose of interview is to ask the applicant questions re his entry into the U.S. to evaluate potential preliminary injunction class membership in Al Otro Lado v. Wolf | (attorney: okay, just so you know, I don't think he qualifies, because I think he left ████████ and entered the US after July 26). : email address provided) |
| Thank you, and I did review his prior credible fear interview notes, however as a potential class member there is a list of questions that I need to ask in a certain order. | (attorney: okay) |
| If you have questions about the Al Otro Lado v. Wolf lawsuit, you may contact Class Counsel at the following email address: MeteringClass@splcenter.org.) | (attorney: [confirms email address] okay, thank you) |

## *NOTICE OF POTENTIAL CLASS MEMBERSHIP CONFIRMATION*

| Officer | Applicant |
|---|---|

| Our records show that on February 5, 2021, you were provided with a document called "Notice of Potential Class Membership in Cases Subject to Removal" from ICE. Do you remember receiving this document? | Yes madam. |
|---|---|
| Great. Do you have any questions about that document? | No ma'am. |

### *AOL PI CLASS MEMBERSHIP SCREENING QUESTIONS*

| Officer | Applicant |
|---|---|
| Now I will ask a list of questions that are necessary pursuant to that notice you received. | Yes. |
| 1. What date did you leave your home country to start your journey to come to the US? | ▮▮▮▮ |
| 2. How did you travel to the US? (Please include what countries you traveled through and when you stayed in each country.) | By all transportation means: bus, motorcycle, and ship. |
| And can you tell me what countries you travelled through? | Through ▮▮▮▮. |
| During your credible fear interview in November 2019, you indicated that you travelled through Turkey, Panama, Ecuador, Colombia, Costa Rica, Nicaragua, Honduras, Guatemala, and Mexico. Are those countries all correct? | Yes |
| And about how long did you stay in each of those countries? | So in ▮▮▮▮ it was just a layover because my trip was from ▮▮▮▮ to ▮▮▮▮. So I also had a transit in ▮▮▮▮. My final destination when I left ▮▮▮▮ was ▮▮▮▮. In ▮▮▮▮ I was just transiting to ▮▮▮▮, I stayed one week in a hotel in ▮▮▮▮ then I went to ▮▮▮▮ and stayed there for ▮▮▮▮ then it took me ▮▮▮▮ to cross the forest. After ▮▮▮▮ in the forest I ended up in ▮▮▮▮ where I stayed ▮▮▮▮ to ▮▮▮▮, then stayed 1 day in ▮▮▮▮, in ▮▮▮▮ they gave me a pass to take the bus go to ▮▮▮▮, then in ▮▮▮▮ they gave me a bus pass to go to ▮▮▮▮, I stayed in ▮▮▮▮, then in ▮▮▮▮ they gave me a pass to go to ▮▮▮▮, then from ▮▮▮▮ I went to Mexico. |
| 3. What day did you cross the border from Mexico into the US? | October 28, 2019. |
| 4. Did you ever try to approach a port of entry to enter the United States before that time October 28, 2019? | No |
| 5. Did you ever add your name to any sort of list in Mexico that you believed would get you a place in line to cross through a port of entry into the U.S.? | Yes |
| a. Did you add your name to the list by writing it yourself? | Sorry? |
| I'll repeat the last question: Did you ever add your name to any sort of list in Mexico that you | Yes |

| | |
|---|---|
| believed would get you a place in line to cross through a port of entry into the U.S.? | |
| Did you add your name to the list by writing your name on the list yourself? | No, I went to what's it called, immigration house, and there is immigration, and put my name on a list, and then they took us to the border to the American Immigration. |
| b. If someone else wrote your name for you on the list, who was that person? your name on the list? | He is the pastor, the priest of Casa Inmigrante. |
| c. Were you there, present with him, when he wrote your name on the list? | Yes. |
| And when did he write your name on that list? | I went there in September. |
| September of 2019? | Yes |
| Did you ever give anyone your name for a list in order to receive a number to enter the U.S. on a different occasion? | No. |
| 6. Other than what you have already told me today, did you ever try to add your name to a list in Mexico to get into the United States but were unable to add your name to a list? | Yes ma'am I told you that the only time was when I went to Casa Inmigrante and the priest did everything I gave him my ID card and he put my name on the list and then we followed the order for when we are to go to immigration. |
| And besides that one time, did you ever try to add your name to a list but you were unsuccessful, you weren't able to? | No. |
| 7. Other than what you have already told me, did you know about the existence of a waitlist in Mexico that you believed would get you a place in line to enter the United States, but decided not to add your name to a list? | I never had access to put my name on a list. |
| Did you ever hear about a different waitlist besides the Casa Inmigrante list that you decided not to add your name to? | No. |
| And just to clarify when did you cross from GT into MX? | I think I travelled for 2 or 3 days in GT to get to MX. |
| Did you first arrive in MX in September 2019? | Yes. |
| And about how long were you in MX, total? | Three weeks. |
| Thank you sir, and my last question is: Do you have any documentary evidence that you would like to submit today that you have not already submitted? | No madam. |

## SUMMARY/CONCLUSION

| Officer | Applicant |
|---|---|
| These are the end of my questions. I'm going to summarize the information we discussed and read it back to you to confirm it is correct. Please give me a moment while I create the summary. | Okay. |

## SUMMARY

| Officer |
|---|
| Today you testified that you departed your home country of ██████ to begin your journey to the United States on July 26, 2019. You had a flight layover in ██████ to get to your first destination, which was ██████. You stayed ██████ in a hotel in ██████, then stayed in ██████ for ██████, then crossed a forest for ██████ and arrived in ██████. You were given bus passes to travel from ██████ and then on to ██████, where you stayed for ██████k, then you continued to ██████ with another bus pass, and finally arrived in Mexico in September 2019. You stayed in Mexico for a total of about 3 weeks. In Mexico, in September 2019, you gave your name to a pastor at Casa Inmigrante to put your name on a list to wait in line to enter the U.S. You waited and crossed into the U.S. at a port of entry on October 28, 2019. You did not try to enter or cross into the U.S. prior to that date. You never put your name on another waiting list for entering the U.S. at any other time, and you did not hear of any other list other than the one you put your name on at Casa Inmigrante. |

## SUMMARY REVISED

| Officer |
|---|
| Today you testified that you departed your home country of ██████ to begin your journey to the United States on July 26, 2019. You took a flight with a layover in ██████ to get to your first destination, which was ██████. From ██████, you used all transportation means including bus, motorcycle, and ship to get to Mexico. First, you stayed ██████ in a hotel in ██████, then stayed in ██████ for ██████, then crossed a forest for ██████ arriving in ██████, where you stayed in different camps for 3 weeks, then continued on to ██████. You were given bus passes to travel from ██████ to ██████ and then on to ██████, where you stayed for ██████, then you continued to ██████ with another bus pass, and from ██████ arrived in Mexico in September 2019. You stayed in Mexico for a total of between 3 weeks to one month. In Mexico, in September 2019, you gave your name to a pastor at Casa Inmigrante to put your name on a list to wait in line to enter the U.S. You waited and crossed into the U.S. at a port of entry on October 28, 2019. You did not try to enter or cross into the U.S. prior to that date. You never put your name on another waiting list for entering the U.S. at any other time, and you did not hear of any other list other than the one you put your name on at Casa Inmigrante. |

## CONCLUSION

| Officer | Applicant |
|---|---|
| Does that sound like a correct summary of what you testified today? | There are three adjustments. |
| Please tell me any corrections to your testimony or summary? | (interpreter asks applicant to speak more clearly and slowly). Madam you wrote from ██████ to ██████ using all means of transportation and then from ██████ to Mexico using all means of transportation. But from ██████ to ██ I used only 1 transportation means which is the airplane. From ██ to MX is where I used different transport means meaning bus, boat, motorcycle. |
| Okay, thank you, I have made that correction to the revised summary. What other corrections? | Yeah I forgot what was the second correction, repeating myself made me lose focus and I forgot the second correction. |
| I will continue reading the summary from the first correction to help you remember the second correction. | Thank you ma'am. |

| | |
|---|---|
| (officer continues rereading) | That's it - I crossed the forest for one week and then ended up in ▮▮▮▮▮. In ▮▮▮▮▮ I stayed ▮▮▮▮ in different camps, then I arrived in ▮▮▮▮▮. |
| (officer makes correction, continues rereading) | That's another thing - I stayed in Mexico between three weeks to one month. |
| (officer makes correction). Thank you, I have made all of those corrections, were there any others that you wanted to make? | No ma'am. |
| Thank you, I appreciate all of those corrections and clarifications. | Thank you ma'am. |
| Just to confirm, you were provided with a summary of your testimony, were given an opportunity to make corrections and you confirmed the accuracy of the summary with the corrections made. | Ok, yes thank you very much. |
| Do you have any other questions for me today? | It's not a question, but a favor I want to request. |
| Okay, go ahead? | Yes as I am speaking to you right now I have been in detention for a year and a half now, I beg you to try to help me and get out of incarceration because my health is deteriorating and I really beg you to help. |
| I'm sorry to hear about your health sir, have you communicated your health concerns to the officers at the detention center? | They are trying their best to help me but it is not easy for me. |
| I understand sir, and I thank you for sharing your concerns. Please do follow up with the officers and your attorney if you have other health issues. My role as an officer today is just ask the questions about your entry into the U.S. | Thank you. |

- This is the end of the interview, I appreciate your time today. Please place the phone front of you, but do not hang up the phone. Let the officer know you are done. [Thank you and may God bless you.]
- Interpreter, thank you for your service today. Thank you counsel [attorney: thank you officer] Everyone may disconnect.

**INTERVIEW CONCLUDED: 9:10 am.**

EXHIBIT 7

| A Number: ████ | | Interview Date: February 9,2021 | |
|---|---|---|---|
| Name: ████████ | | Asylum Officer: K.Blair ZOL 086 | |
| Country: ████ | | Interpreter: None | |
| Asylum Office: ZOL | | Start: 8:00am | Stop: 9:03am |

**USCIS AOL Preliminary-Injunction Class Membership Screening Interview**

**INTRODUCTION**

| Officer | Applicant |
|---|---|
| I see you speak English. Do you want to do this interview in English or in another language | I can do it in English, I also speak Pidgin |
| Hello, my name is Officer Blair. I am an asylum officer. The purpose of our interview today is to talk about how you entered the United States. *Applicant interrupts* | Okay, my name is ████, I am at ████ is |
| We will not be discussing the reasons why you left your country and everything you say is confidential. | Okay |
| To confirm, do you understand the Officer so far? | Yes |
| Do you speak any other languages besides English and Pidgin? | Yes |
| What language is that | Pidgin English is like broken English, it came from England, they speak the dialect and when the British came to the Africa, they did not speak English correctly so it came with a lot of mistakes |
| You are comfortable conducting this interview in English correct | Yes, if it is correct it is good |

**APPLICANT OATH**

| Officer | Applicant |
|---|---|
| Before we begin, I will place you under oath. Please raise your right hand. | It is raised |
| Do you swear or affirm that all the statements you are about to make will be the truth, the whole truth, and nothing but the truth? | Yes |
| Thank you. You may lower your hand. | Thank you |

**BIO QUESTIONS/ATTORNEY**

| Officer | Applicant |
|---|---|
| Can you please tell me your true and complete name? | ████████ |

| | |
|---|---|
| What is your date of birth? | ████████ |
| What country are you citizen of? | ████████ |
| Do you have an attorney? | Yes |
| You have the right to have your attorney or consultant present for our interview, typically over the phone. Do you want me to call and see if your representative is available to participate in the interview? | Yes |
| Do you have your attorney 's name and telephone number. *Officer called three times and no response* | Angela Trahan, ████████ |
| Your attorney is not available. This interview is just to confirm your entry information and will not discuss your claim. Do you feel comfortable speaking to me today without an attorney | Just to confirm my entry. I am comfortable to speak since she is not available |
| Just to confirm you are comfortable speaking to me today without an attorney correct | Yes |

### *NOTICE OF POTENTIAL CLASS MEMBERSHIP CONFIRMATION*

| Officer | Applicant |
|---|---|
| Our records show that on February 5,2021, you were provided with a document called "Notice of Potential Class Membership in Cases Subject to Removal" from ICE. Do you remember receiving this document? | Yes, PI class action, Yes, I received that from ICE, Al Otro Lado |
| Great. Do you have any questions about that document? | Right now, no question but can I ask any question if it comes up |
| Sure | Alright |

### *AOL PI CLASS MEMBERSHIP SCREENING QUESTIONS*

| Officer | Applicant |
|---|---|
| What date did you leave your home country to come to the US? March 5,2019 | ████████ |
| How did you travel to the US? (Please include what countries you traveled through and when you stayed in each country.) | Countries I traveled thru ████ ████ I passed thru the jungle to ████████ ████████ to Mexico, Mexico to the United States, I stayed in Mexico for some time |
| When did you arrive in Mexico | Around April 2019 |
| What day did you cross the border from Mexico into the US | I crossed the border August 22,2019 |
| Did you ever try to approach a port of entry to enter the United States before | Yes, a lot of times, |

| | |
|---|---|
| August 22,2019 | when I went to the port of entry I was denied, they do not allow, they said there was a lot of people and I put my name list , I have to put my name on it and wait before my time before I can enter . |
| When did you ever try to approach a port of entry to enter the United States before August 22,2019 | First time was around the 28th of May 2019, after that day, I keep going there and they kept telling me I could not go, so I kept coming back each day, I did that for about four months, they told me US did not need that many people |
| Where did you ever try to approach a port of entry to enter the United States before August 22,2019 | The first time was Tijuana it may be San Ysidro , but I think it was Tijuana , that was the first time |
| Did you ever add your name to any sort of list in Mexico that you believed would get you a place in line to cross through a port of entry? | A list that immigration gives us to write our names |
| You wrote your name the list correct | No, you give them the spelling and they write your name and they gave you number. I wrote my name on the list and they gave me a number |
| Do you remember your number | It is about 3000, if I am not mistaken but it has been a very long time |
| Who did you give your name to in order to get on the list | At the immigration, I was present at immigration I was present |
| Did you give your name to Mexican immigration or American immigration | It was Mexican immigration , they give you a number after you give them your name and they give it to US immigration , we were in the group , it is joint immigration , we did |

|  |  |
|---|---|
|  | not know the difference, they told us to add our name and when the US is ready to receive you, they will call your name and take you to the US. They were working in the same place |
| When did you add your name to that list or receive a number? | When, I think it was around the 28th of May 2019, that I was the first time I approached, and they provided me with a list to write my name |
| Where were you when you added your name to that list? | Immigration in Tijuana |
| Did anyone tell you that the POE was full? | Yes, the immigration person they told us that it was full |
| Did anyone tell you that you needed to wait in Mexico or go to a shelter before going to the POE?  If yes, who told you that? | When I first arrived in Mexico, I arrived in Tc and held us there for some time, I have to wait in Tapachula, , the numbers need to reduce , they had me there for some time about a month, then they allowed me to go the port of entry. They told me to wait at Tapachula, because the border was full and then Tijuana would let them know that it was okay to let us go the border because, the border was not full |
| After you added your name to a list, were you told at some point that your number had been called and it was time to enter the POE? If yes, when | I went to Tijuana, I was in Tijuana for six months, the next port of entry was not too far, I went to the border town of Mexicali, and I went to the port of entry in Mexicali and I explained the situation to them and they told me I had to wait, They |

| | took my name, and my number. Told me to wait , they took my number from the hotel, and said when my name was called they will call me. I checked every day, and it was only Central American people going thru and I asked them about it and told me do not bother them, they will call me, and then on August, 22,2019, they called the hotel and told me to enter |
|---|---|
| Other than what you have already told me, besides putting your name on the list in Tijuana and Mexicali did you ever try to add your name to another list in Mexico to get into the United States but were unable to add your name to the list? | No, those were the only two ports of entry , that I approached and I put my name on both the list of Tijuana and Mexicali, and the other port of entry was far from Mexicali, the police was disturbing the immigrants for not having the papers ,which expire after three weeks ,if you are traveling after the expiration they will detain you. We were trying to explain, but they were saying it was not their fault it was the American immigration' fault |
| Other than what you have already told me, did you know about the existence of a waitlist in Mexico that you believed would get you a place in line to enter the United States, but decide not to add your name to a list? | I think the waitlist in Mexico , is the same list , the immigration list |
| Just to clarify, you entered your name in the list in Tijuana ,because you were told to wait because the port was full, you left Tijuana and put your name on the list in Mexicali ,because the wait was too long in Tijuana. Then you still had to wait in Mexicali until August 22,2019 when Mexican immigration called your hotel to you t come in | Yes, they called the hotel to tell me , at the time I left the hotel because ,the hotel was expensive and could not work ,so I moved to another part where other immigrants , the other people came to |

| | look for me and told me , when you arrive at the port of entry ,they tell you put your name on the list you have to wait |
| Do you know around the time you put your name on the list in Mexicali | Around June 10,2019 if I am not making a mistake |

## SUMMARY/CONCLUSION

| Officer | Applicant |
| --- | --- |
| These are the end of my questions. I'm going to summarize the information we discussed and read it back to you to confirm it is correct. Please give me a moment while I create the summary. | Alright |

## SUMMARY

| Officer |
| --- |
| Today you testified… You left ███████ on March 5,2019. You traveled thru ███████ I passed thru the jungle to ███████ ████████ to Mexico, Mexico to the United States. First you put your name on a list in Tijuana with immigration, because you were told the port was full and you will be told when you could enter. The wait in Tijuana was too long, so you went and put your name on a list in Mexicali around June 10,2019. In Mexicali you were also told wait because the border was full and immigration will call you and let you know when it was your time to enter. On August 22,2019, immigration called your hotel and said that it was time for you to enter the US |

## CONCLUSION

| Officer | Applicant |
| --- | --- |
| Does that sound like a correct summary of what you testified today? | Yes |
| Would you like to make any corrections to your testimony or summary? | When you are reading the part of Tijuana and the connection broke can you got back there |
| Would you like to make any corrections to your testimony or summary? | No, thanks , the summary is correct |
| Do you have any documentary evidence you would like to submit today? | Documentation |
| About your stay in Mexico | I do not have it know, I will have to look for it , but if you can give me time to look for it |
| Okay , it is not needed , but if so you will be given time to look for your | Okay |

| documentation | |
|---|---|
| Right now it is not needed ,but you will have time to look for it | Okay, I went to check the documentation . Enlighten me on that , I do not know what documentation about my stay in Mexico |
| So we do not need any documentation, if you had to submit that is fine or if you needed time to submit it you will be given time to look for it. But we do not need any of the documentation, we were just asking if you had it at this time, you could submit it | Okay, if I find it who can I give it to |
| You will have to ask to speak to your deportation officer , tell him or her you have some documentation to submit and tell the officer to submit it to neworleans.asylum@uscis.dhs.gov , with your A number and your name | Alright, okay, |
| Just to confirm, you were provided with a summary of your testimony, were given an opportunity to make corrections and you confirmed the accuracy of the summary. | Yes, that I want to go back to Tijuana port of entry |
| What about the Tijuana port of entry | Tijuana you do not talk about the day or the month |
| It will not be everything you told me but a summary of what you told me , but everything you told me is in the notes | Okay |
| Do you have any questions for me? | For now, no |

- This is the end of the interview. Please hang up the phone. Let the officer know you are done.

**INTERVIEW CONCLUDED: 9:03am**

EXHIBIT 8

Applicant Name: ███████████████    Date: 2/8/2021
Alien Number: A ███████████    Asylum Officer: Wickham, ZHN 837
Country: ████████    Interpreter Service: Language Line # 207732
Office: ZHN    Start: 8:35AM CST    Stop: 9:15AM CST

## USCIS *AOL* Preliminary-Injunction Class Membership
## Screening Interview Questions

☒ **Interpreter Oath administered**

**Q:** I am an asylum officer and I will be conducting your interview today with the help of our interpreter, who has been placed under oath to completely interpret everything you say and to keep everything you say confidential. The purpose of our interview today is to determine whether you may have been metered at the Mexico/U.S. border prior to your entry into the United States.

Q: Is Portuguese your best language?
A: Yes, Portuguese

It's important that you tell the truth today, so I'll be placing you under oath now. Do you affirm that you will tell the truth the whole truth and nothing but the truth today?
**A:** I swear

☒ **Oath administered**

**Q:** Can you please verify your name?
A: ██████████████████

**Q:** What is your date of birth?
**A:** ██████████

**Q:** Have you ever used any different names of dates of birth?
**A:** No

**Q:** On 2/5/2021, you were provided with additional information regarding our interview today. This notice was called the 'notice of class membership in cases subject to removal.' You signed this document upon receipt. Do you recall receiving the notice I'm referring to?
**A:** Yes I received it

**Q:** Do you have any questions about the notice you received?
**A:** I could understand it.

**Q:** Today, I'm going to ask you some questions to determine if you are one of the people who were metered along the Mexico/U.S. border. Do you have any questions?
**A:** No questions.

1
VER. DEC. 22, 2020

*For Official Use Only*

Applicant Name: ███████████████    Date: 2/8/2021
Alien Number: A ██████████    Asylum Officer: Wickham, ZHN 837
Country: ███████    Interpreter Service: Language Line # 207732
Office: ZHN    Start: 8:35AM CST    Stop: 9:15AM CST
**Q:** In what country were you born?
**A:** ██████

Q: What date did you leave your home country to come to the US?
A: I left ████████ on ████████████████.

Q: How did you travel to the US? (Please include what countries you traveled through and when you stayed in each country.)
A: ████████ I stayed for ████████ ████████████████████████████████████████ ████████████, Mexico.

Q: How long did you stay in each of those countries?
A: ████████████████████████. Most other countries were only for a few days. The countries that took longer were ████████████████████, and Mexico.

Q: On what date did you first cross the border into Mexico?
A: I entered into Mexico on July 8 of 2019.

Q: What day did you cross the border from Mexico into the US?
A:It was December 12 of 2019.

Q: Did you ever try to approach a port of entry to enter the United States before December 12, 2019?
A: No I tried to put my name on the list to cross the bridge, but since the bridge was already closed I couldn't do anything else. I did this at a fire station. I did not go to the border.


Q: Did you ever add your name to any sort of list in Mexico that you believed would get you a place in line to cross through a port of entry?
A: Like I mentioned previously. To put your name on the list you had to go to the firefighters at their station. When I got there I got there late, so I could not put my name on the list at that time.

Q: What date did you try to go put your name on this list but were not able to?
A: I arrived there on November 20 2019, but I could not.

Q: Were you able to put your name any list like this at any other time?
A: No because that was the last day they were doing this list and there were too many people and there was no way to put my name on this list.

Q: Other than what you have already told me, did you ever try to add your name to a list in Mexico

2
VER. DEC. 22, 2020

*For Official Use Only*

Applicant Name: ███████████     Date: 2/8/2021
Alien Number: A ███████     Asylum Officer: Wickham, ZHN 837
Country: ██████     Interpreter Service: Language Line # 207732
Office: ZHN     Start:  8:35AM CST    Stop: 9:15AM CST

to get into the United States but were unable to add your name to the list?

A: I tried to on November 20, but since we were not able to we left for awhile and came back when we finally crossed in <u>December.</u>

Q: Other than what you  have already told me, did you know about the existence of a waitlist in Mexico that you believed would get you a place in line to enter the United States, but decide not to add your name to a list?

A:No I could not see other lists aside from the one I told you of.

Q: Do you have any documentary evidence that you would like to submit that you have not already submitted?

A: There is no documentation that I have.

Q: Please give me a few minutes to put together a summary of what we discussed today, and I will read you the summary when it is complete

A: Ok

**SUMMARY:**

**You testified that you left** ██████ **on March 29 of 2019. You traveled through several countries spending days to a month in each country before arriving in Mexico on July 8 of 2019. You Attempted to put your name on a list to get into the United States on November 20, 2019, but were not able to on that date because you arrived too late. They stopped taking names for that list the following day. You did not add your name to or know of any other list before November 20, 2019. Later, you crossed into the United States on December 12, 2019.**

**Q:** Is this a correct summary of what you've testified today?

**A:** Yes

**Q:** Is there anything you'd like to change, correct or add to the summary?
**A:** No, nothing.

**Q:** Do you have any questions before we conclude?
**A:** I don't have any questions to ask.

**Q:** Thank you for speaking with me today. That concludes our interview. You can hang up the phone and let the officer outside your door know that you've completed the interview.
**A:** Thank you.

3
VER. DEC. 22, 2020

*For Official Use Only*

EXHIBIT 9

***AOL* Preliminary-Injunction**
**Class Membership Screening Determination**

Date: 02/08/2021



VER. DEC. 22, 2020

EXHIBIT 10

**Memo to File:**
***Al Otro Lado*** **Preliminary-Injunction Class Membership Screening**

Date:
From:
RE:      ,
       ,
       [*only include dependents who are referred for an AOL P-I class membership screening*]

I.    The asylum officer reviewed the following lists and determined:

    ☐ The alien's name appears on the Calexico/Mexicali list.
        ("Waitlist transcribed Tijuana Mexicali (March – July 2019) for DOJ", tab "Mexicali March – July"; "Lista nombres CBP1"; "Listado Nombres CBP2"; "Listado CBP Nombres3"; or "Listado CBP Nombres4").

    ☐ The alien's name appears on the San Ysidro/Tijuana list.
        ("Waitlist transcribed Tijuana Mexicali (March – July 2019) for DOJ", tabs "TJ 32419-43019", "TJ 50119-51919", "TJ 51919-53119", or "TJ 6119-71619").

    ☐ The alien's name appears on the El Paso/Ciudad Juarez list.
        ( "Juarez Lista de Solicitantes de asilo thru 7.15.19")

    ☐ The alien's name appears on the Presidio list.
        ("Predidio POE Scan")

    ☐ The alien's name appears on [insert name of City/POE and name of list, if not listed above]

    ☐ The alien's name does not appear on any of the above lists.

    Notes:

II.    The asylum officer reviewed the CBP OFO list (Copy of 2020-11-05_APP_AOL_Preliminary_Injunction_Guidance v1) and determined:
    ☐ The alien's name **DOES** appear on the CBP OFO list.
    ☐ The alien's name does **NOT** appear on the CBP OFO list.

III.    The asylum officer reviewed the alien's I-213 and determined:
    ☐ The alien's I-213 **WAS** annotated with either "POTENTIAL AOL CLASS MEMBER" or "Potential AOL Class Member".
    ☐ The alien's I-213 **WAS NOT** annotated with either "POTENTIAL AOL CLASS MEMBER" or "Potential AOL Class Member."

1

VER. DEC. 22, 2020

IV.    The asylum officer reviewed relevant DHS records (I-213 and I-867A/B or I-877, or other relevant forms) and any prior *AOL* class membership screening Q&A, which reflect:

At the *Al Otro Lado* class membership screening interview:
- The asylum officer asked the above-named alien the December XX, 2020 USCIS *AOL* Preliminary-Injunction Class Membership Screening Interview Questions and documented his/her responses in interview notes.
- The asylum officer read the above-named alien a summary of his/her responses to the USCIS *AOL* Preliminary-Injunction Class Membership Screening Interview Questions, provided the above-named alien an opportunity to correct any errors, and documented everything in the interview notes.
- The above-named alien confirmed the accuracy of the summary.

V.    *AOL* Preliminary Injunction Class Membership Determination

☐    The alien **ESTABLISHED** that it is more likely than not that he/she is a member of the *Al Otro Lado* preliminary-injunction class.

☐    The alien **DID NOT ESTABLISH** that it is more likely than not that he/she is a member of the *Al Otro Lado* preliminary-injunction class.

See the interview notes for more information.

_____

**Asylum Officer**                                                    **[DATE]**

_____

**Supervisory Asylum Officer**                                        **[DATE]**
**[*if alien did not establish class membership; otherwise write N/A*]**

VER. DEC. 22, 2020

EXHIBIT 11

*AOL* Preliminary-Injunction
**Class Membership Screening Determination**

Date:
,
Dependents, if any:

,
[*only include dependents who are referred for an AOL P-I class membership screening*]

☒    You **ESTABLISHED** that it is more likely than not that you are a member of the *Al Otro Lado* preliminary-injunction class. If you received an order of expedited removal, you may receive a new credible fear interview from an asylum officer or review of your prior credible fear determination from an immigration judge. If you received a final removal order in removal proceedings before the immigration court, your case may be eligible to be reopened before the Executive Office for Immigration Review, depending on the rulings in your case.

☐    You **DID NOT ESTABLISH** that it is more likely than not that you are a member of the *Al Otro Lado* preliminary-injunction class.

VER. DEC. 22, 2020