SARAH HARRINGTON
Deputy Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
SAMUEL P. GO
Assistant Director
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259 | Fax: (202) 305-7000
katherine.j.shinners@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | **DEFENDANTS' EXHIBIT E** |
| v. | **[Public Redacted Version]** |
| ALEJANDRO MAYORKAS, Secretary of Homeland Security, in his official capacity, *et al.*, | |
| *Defendants*. | |

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | |
| v. | |
| ALEJANDRO MAYORKAS, Secretary of Homeland Security, in his official capacity, *et al.*, | |
| *Defendants* | |

## DECLARATION OF JILL W. ANDERSON, GENERAL COUNSEL, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW

I, JILL W. ANDERSON, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that my testimony below is true and correct:

1. I serve as the General Counsel for the Executive Office for Immigration Review ("EOIR"). In this capacity, I manage the Office of General Counsel ("OGC") and provide legal counsel to the Agency on matters pertaining to the Immigration and Nationality Act and other laws and procedures as they relate to EOIR, among other duties. I have served in this position since December 2019.

2. Prior to December 2019, I served as Acting General Counsel beginning in June 2019. From September 2017 to June 2019, I served as Deputy General Counsel. My prior positions in EOIR were Supervisory Attorney for the Board of Immigration Appeals ("BIA") from May 2011 to September 2017, and Attorney Advisor for the BIA from December 2006 to May 2011.

3. I make this Declaration based on my own personal knowledge, on information contained in the records of EOIR, or information provided to me by EOIR employees.

4. Although EOIR is not a party to this litigation, EOIR has voluntarily agreed to act consistently with this Court's November 19, 2019 class certification and preliminary

1

injunction order.  On October 30, 2020, the Court issued an order binding EOIR to the terms of the November 19, 2019 preliminary injunction order.

5. The October 30, 2020 Order also created additional requirements that "DHS and EOIR must take immediate affirmative steps to reopen or reconsider past determinations that potential class members were ineligible for asylum based on the Asylum Ban [third-country transit rule], for all potential class members in expedited or regular removal proceedings. Such steps include identifying affected class members and either directing immigration judges or the BIA to reopen or reconsider their cases or directing DHS attorneys representing the government in such proceedings to affirmatively seek, and not oppose, such reopening or reconsideration." [Order, ECF 605]

6. While the court's order creates authority to reopen these proceedings, at present, the federal regulations governing immigration proceedings prohibit EOIR adjudicators from sua sponte reopening except to correct a ministerial mistake or typographical error. 8 C.F.R. §§1003.2(a); 1003.23(b)(1). The adjudicators may only consider an untimely motion to reopen if it is a joint motion to reopen filed by both parties.  8 C.F.R. §§1003.2(a); 1003.23(iv).  Otherwise, motions to reopen filed outside the prescribed time and numerical limitations will only be considered if, in relevant part, "[a] material change in fact or law underlying a removability ground or ground specified in section 212 or 237 of the Act occurred after the entry of an administratively final order [d] vitiates all grounds of removability applicable to the alien; and "[t]he movant exercised due diligence in pursuing the motion to reopen." 8 C.F.R. §1003.23(b)(v)(A), (B). Notwithstanding these regulatory proscriptions, EOIR has developed and implemented unique procedures in full compliance with the October 30 Order, and thus will affirmatively open cases and consider motions to reopen cases that seek reopening under the October 30 Order.

7. On October 30, 2020, OGC issued legal guidance to the leadership of the Office of the Chief Immigration Judge ("OCIJ") and the Board of Immigration Appeals ("BIA") regarding the October 30, 2020 Order, including the additional requirements for identifying and reopening cases pursuant to the order. This legal guidance was disseminated by leadership to the adjudicators and their staff at OCIJ and the BIA.  As counsel to OCIJ and the BIA, the guidance provided to EOIR OGC's clients is protected by attorney-client privilege. EOIR has never authorized its guidance to be disclosed publicly.

8. Adjudicators promptly began reopening cases thereafter. *See, e.g.*, attached (redacted) Decision of the Immigration Judge Meredith Tyrakosky, dated November 17, 2021; Decision of Immigration Judge Pedro Espinal, dated December 23, 2020; Decision of Immigration Judge Julia Diaz-Rex, dated January 15, 2021.

2

9. To date, EOIR has identified over 2,000 cases for reopening review. The list is compiled from EOIR's database of individuals in removal proceedings under section 240 of the Immigration and Nationality Act ("INA") and from data provided by the Department of Homeland Security (DHS) concerning cases that were previously in proceedings before EOIR. Additionally, EOIR adjudicators are reviewing for reopening those cases where class members have exercised their right to file motions to reopen pursuant to the district court's order, notwithstanding the regulatory proscriptions mentioned above. EOIR-OGC expects this list to continue to grow as it continues to receive additional data relating to the class, including information about individuals identified as class members by DHS pursuant to DHS's class membership screening procedures. EOIR-OGC has provided its adjudicators with guidance for reviewing and reopening qualifying cases pursuant to the District Court's October 30, 2020 Order. This review process requires each court to conduct a manual case-by-case review of each record of proceeding (ROP) for every individual identified for reopening review.

10. ROPs are located in various locations, including at various immigration courts across the country, the BIA, and the Federal Records Centers (FRC), which are currently closed due to the pandemic and are responding only to emergency requests for records on an extended timetable. EOIR-OGC has instructed that requests made to the FRC indicate that these are emergency requests as the records are needed for ongoing federal court litigation.

11. Reopening review includes determining whether or not the ROP demonstrates that the individual is a preliminary-injunction class member. Class members: (1) are not citizens or nationals of Mexico, (2) most recently entered the U.S. on or after July 16, 2019, (3) were subject to metering at the southwest border before July 16, 2019, and (4) continue to seek access to the U.S. asylum process. With respect to the latter, anyone identified for reopening review shall be treated as continuing to seek access to the U.S. asylum process. Class member determinations are accepted and not revisited where DHS has informed EOIR that it has positively identified an individual as class members pursuant to its class membership screening procedures.

12. At this time, adjudicators must reopen or reconsider past determinations that potential class members were ineligible for asylum based on the Asylum Ban, even if asylum was denied on the merits on other grounds, in addition to the transit bar.

13. It is not uncommon for adjudicators to fully consider an application for asylum on the merits, and to deny such applications on a number of grounds in the alternative should one of the grounds fail to survive further review. As a result, by reopening proceedings class

3

E0003

members will receive a new decision on the merits. This is true even if class members previously received a full evidentiary hearing; were afforded every opportunity to provide testimony, evidence and witnesses in support of their asylum application; where no line of inquiry was foreclosed on account of the transit bar; where the immigration judge issued a full decision on the merits and denied asylum on the merits and not just on the transit bar; and the class member was given notice and an opportunity to appeal, and either declined to appeal, failed to perfect their appeal, or received a decision on appeal affirming the immigration judge's decision. *See, e.g.*, attached Decision of Monte Horton (redacted), dated February 20, 2020. By reopening proceedings, the class member will receive a new decision on the merits, starting anew the appeal period and resetting the time and numerical limitations on motions to reopen and reconsider, regardless of whether the original decision was accepted as final, an appeal was previously taken, or a prior motion to reopen or reconsider was filed.

14. Once a case is determined to meet the criteria for reopening, the adjudicators are tasked with reconsidering past determinations that potential class members were ineligible for asylum based on the Asylum bar. Whether the case will be re-calendared for a new merits hearing or will instead be decided based on the evidence already in the record will depend on the individual facts of the case. For example, where an application for asylum would have been granted but for the transit bar, and the individual was granted withholding of removal, the adjudicator may reopen proceedings and grant asylum in the same order without further deliberation. *See* attached Decision of Immigration Judge Kathryn DeAngelis, dated March 3, 2021; Decision of Immigration Judge Robin Rosche, dated February 25, 2021 Where asylum was denied based on the transit bar but the adjudicator alternatively determined that the respondent had not satisfied his or her burden of proving eligibility for asylum on the merits, the adjudicator may issue an order reopening the proceedings and setting forth the merits determination in the same order. Alternatively, the case could be scheduled for a new hearing once reopened. Any order, decision, or notice that is issued in any case is sent to the parties and/or their representative, at their address of record. An appeal of an Immigration Judge decision must be filed no later than 30 calendar days after the Immigration Judge renders an oral decision or mails a written decision. 8 C.F.R. § 1003.38(b).

15. Jurisdiction for reopening lies with the last entity to issue a decision in the case. For example, when an Immigration Judge issues a decision in an individual's removal proceedings and neither the individual nor DHS appeals the decision to the BIA, the IJ is the last entity to issue a decision and jurisdiction over a motion to reopen would lie with the IJ. If an IJ's decision is appealed to the BIA and the BIA is the last entity to issue a decision in the case, the BIA would have jurisdiction to reopen proceedings, with the exception of cases where the BIA had rendered a decision finding that it lacked jurisdiction

4

over the appeal. In such a case, the Immigration Judge would have jurisdiction to reopen. To expedite the file review process, EOIR-OGC has requested that even if jurisdiction lies with the BIA, if the immigration court is in possession of the ROP, that the file review commence at the immigration court to at least ascertain class membership.

16. On February 25, 2021, EOIR-OGC hosted an *Al Otro Lado* Reopening Review training session for OCIJ leadership, including all of the Assistant Chief Immigration Judges for the 67 immigration courts nationwide. The training included an overview of the reopening guidance, case updates and a question and answer session regarding the ongoing file review. EOIR-OGC continues to provide counsel on an as needed basis, and intends to host future training sessions with the adjudicators as the need arises.

17. To date, EOIR has reopened approximately 73 cases, with another 62 cases that have been identified and will be reopened, pursuant to the court's October 30, 2020 Order. EOIR continues to add cases to its review as class members are identified to it by plaintiffs and DHS.

18. I understand that Plaintiffs have recently inquired about the cases of certain individuals who have had proceedings before EOIR. I provide information about these cases below:

    a. According to EOIR's records, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, was ordered removed by an IJ on August 13, 2020. [EOIR Decl.] To date his order of removal is not administratively final because his appeal is still pending before the BIA.

    b. The IJ and BIA decisions for the following individuals identified by Plaintiffs are attached hereto:



E0005

1

2    Signed this 8th day of March, 2021

3

JILL ANDERSON

Digitally signed by JILL
ANDERSON
Date: 2021.03.08 18:35:53
-05'00'

4    Jill W. Anderson

5    General Counsel

Executive Office for Immigration Review

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

E0006



**U.S. Department of Justice**
Executive Office for Immigration Review
*Office of the General Counsel*

*5107 Leesburg Pike, Suite 2600*
*Falls Church, Virginia 22041*

Re: ████████████

I, <u>Elizabeth Burgus</u>, declare as follows:

I am employed as a Paralegal Specialist by the Department of Justice, Executive Office for

Immigration Review, Office of the General Counsel.   I certify that the attached Written

Decision and Orders of the Immigration Judge dated November 17, 2020 (5 pages), is a

correct and complete copy of the original included in the Record of Proceeding maintained

by EOIR for this case.

Pursuant to 28 USC 1746, I declare under penalty of perjury that the foregoing is true and

correct.

DATED: <u>01/05/2021</u>          SIGNED: ELIZABETH
BURGUS

Digitally signed by
ELIZABETH BURGUS
Date: 2021.01.05
11:23:32 -05'00'

Elizabeth Burgus
Paralegal Specialist

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**IMMIGRATION COURT**
**106 SOUTH SAINT MARY'S STREET, SUITE 600**
**SAN ANTONIO, TX 78205**

|  |  |
|---|---|
| In the Matter of | ) |
| ███████████████████████ | ) Case No.: A███████ |
| RESPONDENT | ) |
| In Removal Proceedings | ) |

**CHARGE:**     Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act
("INA" or "Act"), as amended, in that you are an immigrant who, at the
time of application for admission, is not in possession of a valid
unexpired immigrant visa, or other valid entry document required by the
Act.

**APPLICATION:**     8 C.F.R. § 1003.23(b): Motion to Reopen.

<u>**APPEARANCES**</u>

<u>**ON BEHALF OF RESPONDENT**</u>      <u>**ON BEHALF OF THE DEPARTMENT**</u>
*Pro Se*                                             U.S. Immigration & Customs Enforcement
                                                          Office of the Chief Counsel
                                                          1015 Jackson-Keller, Suite 100
                                                          San Antonio, Texas 78213

<u>**WRITTEN DECISION AND ORDERS OF THE IMMIGRATION JUDGE**</u>

## I.  Procedural History

On July 23, 2019, the Department of Homeland Security ("DHS" or "Department")
charged Respondent, ███████████████████, as removable pursuant to section
212(a)(7)(A)(i)(I) of the Act, in that she was an immigrant who, at the time of application for
admission, was not in possession of a valid unexpired immigrant visa, or other valid entry
document required by the Act. *See* Exh. 1. After admitting all factual allegations and conceding
the charge of removability contained in her Notice to Appear ("NTA"), the Court found
removability was established by clear and convincing evidence and directed ███████,
Respondent's country of citizenship and nativity, as the country of removal should removal
become necessary. Respondent filed an I-589 application seeking Asylum, Withholding of
Removal, and protection under the Torture Convention on October 22, 2019. *See* Exh. 2.

E0008

Thereafter, on November 6, 2019, Respondent appeared for her merits hearing and testified in support of her application for relief. At the conclusion of the hearing, the Court found Respondent was barred from Asylum pursuant to 8 CFR §1208.13(c)(4)—Third Country Transit Bar—, but granted Respondent's application for Withholding of Removal under the INA. *See* Decision of the Immigration Judge Meredith B. Tyrakoski (Nov. 6, 2019). Further, the Court found that Respondent's application for protection under the Convention against Torture was moot. *Id*. As such, the Court ordered Respondent removed from the United States to ▮▮▮▮▮ but withheld that order. Both parties reserved appeal of the Court's decision, although neither party appealed that decision.

Subsequent to the Court's decision, the District Court in the Southern District of California in *Al Otro Lado v. McAleenan* certified a class of individuals defined as "all non-Mexican asylum-seekers who were unable to make a direct asylum claim at a U.S. POE before July 16, 2019 because of the U.S. Government's metering policy, and who continue to seek access to the U.S. asylum process" and enjoined the application of the Asylum Ban to members of said certified class. 423 F. Supp. 3d 848, 878 (S.D. Cal. 2019). On October 30, 2020, the District Court further clarified that DHS and the Executive Office for Immigration Review ("EOIR") "must take immediate affirmative steps to reopen or reconsider past determinations that potential class members were ineligible for asylum based on the Asylum Ban, for all potential class members in expedited or regular removal proceedings." *See Al Otro Lado v. Wolf*, 17-CV-02366, 2020 WL 6384357 (S.D. Cal. Oct. 30, 2020).

Moreover, in a separate case issued on June 30, 2020, the U.S. District Court in the District of Columbia vacated the Third Country Transit Rule. *Capital Area Immigrants' Rights Coalition ("CAIR") v. Trump*, 19-cv-2117, 2020 WL 3542481 (D.D.C. June 30, 2020).

While neither party has filed a motion to reopen or reconsider the Court's November 6, 2019 decision, pursuant to *Al Otro Lado v. Wolf*, which created an affirmative obligation for EOIR to *sua sponte* reopen or reconsider proceedings for potential class members, the Court will review its ruling in Respondent's case. 17-CV-02366, 2020 WL 6384357 at *13-14.

## II.    *Sua Sponte* Reopening

"An Immigration Judge may, upon [] her own motion at any time . . . reopen . . . any case in which [] she has made a decision." 8 C.F.R. § 1003.23(b)(1). However, *sua sponte* authority is not "a general remedy for any hardships created by enforcement of the time and number limits in the motions regulations." *Matter of G-D-*, 22 I&N Dec. 1132, 1133-34 (BIA 1999). Rather, an Immigration Judge may exercise her discretion to reopen respondents' case in "exceptional situations." *Matter of J-J-,* 21 I&N Dec. 976, 984 (BIA 1997); *see also* 8 C.F.R. § 1003.23(b)(1), (3). "[I]t is the respondent's burden to demonstrate that such a situation exists." *Matter of Beckford*, 22 I&N Dec. 1216, 1218 (BIA 2000).

In the present case, pursuant to its authority under 8 C.F.R. § 1003.23(b), the Court will reopen Respondent's proceedings *sua sponte*, finding that *Al Otro Lado* preliminary injunction coupled with a change in the law pursuant to *CAIR* have created an exceptional situation which warrant the exercise of the Court's *sua sponte* authority. *See J-J-*, 21 I&N Dec. at 984; *see also* 8 C.F.R. § 1003.23(b).

To begin, the Court has reviewed the record of proceedings in Respondent's case and finds sufficient evidence to establish that Respondent was "metered" at the southern border, thereby establishing Respondent's *Al Otro Lado* class membership. *See* 423 F. Supp. 3d at 878. Specifically, at her merits hearing, Respondent testified that she arrived in the town of Miguel Aleman, Tamaulipas, Mexico on or about July 10, 2019 and had to wait eleven days before she could enter the United States. The Court takes administrative notice[1] that Miguel Aleman sits on the U.S.-Mexico border directly across from Roma, Texas where there is a Port of Entry. Respondent was not able to make entry into the United States until July 21, 2019, five days after the Third Country Transit Bar went into effect. As such, the Court is obligated, as a result of the preliminary injunction in *Al Otro Lado*, to reopen Respondent's case *sua sponte*.

Alternatively, even if Respondent were not found to be an *Al Otro Lado* class member, the Court finds that the change in law following *CAIR* and *East Bay Sanctuary Covenant East v. Barr*, 964 F.3d 832, 857-58 (9th Cir. 2020)—affirming the U.S. District Court for the Northern District of California's grant of a preliminary injunction against enforcement of the Third Country Transit Bar in the four states on the U.S.-Mexico border (including Texas)—in and of itself compels this Court to reopen Respondent's removal proceedings. These decisions, both issued in 2020, are material to Respondent's eligibility for asylum and could not have been discovered or presented at Respondent's merits hearing. *See* 8 C.F.R. § 1003.23(b)(3) (providing that a motion to reopen will not be granted unless the Immigration Judge is satisfied that "evidence sought to be offered is material and was not available and could not have been . . . presented at the former hearing"). At the conclusion of Respondent's merits hearing on November 6, 2019, the Court determined Respondent was not eligible for asylum pursuant to the Third Country Transit Bar. Notably, the Court granted Respondent's application for withholding of removal under the INA because Respondent demonstrated ███████████████████████████████████████████████. *See* ███████████████████████████████████████████████████████. *See* Decision of the Immigration Judge Meredith B. Tyrakoski. But for the Third Country Transit Bar, the Court would have granted Respondent's application for asylum. Case law set forth that the clear probability standard of proof for a grant of withholding of removal is a more stringent standard than the well-founded fear standard required for asylum. *INS v. Stevic*, 467 U.S. 407, 429-30 (1984); *see also Thuri v. Ashcroft*, 380 F.3d 788, 793 (5th Cir. 2004), *Efe v. Ashcroft*, 293 F.3d 899, 906 (5th Cir. 2002). Therefore, if an applicant has satisfied the higher burden to establish withholding of removal, she logically has met the lower burden of proof required for asylum. *Dayo v. Holder*, 687 F.3d 653, 658-59 (5th Cir. 2012); *Majd v. Gonzales*, 446 F.3d 590, 595 (5th Cir. 2006).

In light of the foregoing, if Respondent's proceedings were reopened under *CAIR*, the outcome of her application for asylum would "manifestly turn on the cited change in the law"— namely, the invalidation of the third country transit bar. *See G-D-*, 22 I&N Dec. at 1135. Moreover, this change in law does not require the Court to "completely readjudicate

---

[1] An Immigration Judge may take "administrative notice" of "commonly known facts." *See* 8 C.F.R. § 1003.1(d)(3)(iv) (The BIA and, by implication, the Immigration Courts, may take administrative notice of commonly known facts such as current events or the contents of official documents); *see also Matter of J-W-S-*, 24 I&N Dec. 185, 189 (BIA 2007) ("We also consider and take administrative notice of recent reports issued by the United States Department of State."); *Matter of R-R-*, 20 I&N Dec. 547, 551 n.3 (BIA 1992) ("It is well established that administrative agencies and the courts may take judicial [or administrative] notice of commonly known facts").

[Respondent's] claim" to "discern whether [the change in law] would have any impact on the outcome of [Respondent's] claim." *Id.* at 1135-36. Instead, the change in law has an unambiguous effect on Respondent's application for asylum, and represents a "revision . . . so profound" that Respondent would "clearly acquire[] eligibility for relief by virtue of [the] particular change in law." *See id.* at 1135 (citing *Matter of X-G-W-*, 22 I&N Dec. 71 (BIA 1998)).

Lastly, the District Court's ruling specifically vacated the Third Country Transit Bar after finding that it was enacted unlawfully. *See CAIR*, 19-cv-2117, 2020 WL 3542481 at *23. The District of Columbia Circuit, where the District Court sits, has continuously held that "[w]hen a court vacates an agency's rules, the vacatur restores the status quo before the invalid rule took effect . . . . ." *Environmental Defense v. Leavitt*, 329 F. Supp. 2d 55, 64 (D.C. Cir. 2004) (citing *Indep. U.S. Tanker Owners Comm. v. Dole*, 809 F.2d 847, 854 (D.C. Cir. 1987); *Sugar Cane Growers Co-op of Florida v. Veneman*, 289 F.3d 89, 97 (D.C. Cir. 2002)). Based on precedents in the District of Columbia Circuit, which requires the law to be restored to its state prior to the enactment of the vacated law, it is clear that the District Court intended for its decision to apply retroactively.

Accordingly, the Court will reopen Respondent's removal proceedings *sua sponte*.

### III. Asylum

An asylum applicant bears the evidentiary burden of establishing his claim for asylum. INA § 208(b)(1); 8 C.F.R. § 1208.13(a). To be eligible for asylum, an alien must be a "refugee" within the meaning of the Act. *See* INA § 208(b)(1)(A) (citing INA § 101(a)(42)(A)). To qualify as a refugee under the Act, an alien must establish past persecution or a well-founded fear of future persecution on account of one of the five statutory grounds: race, religion, nationality, membership in a particular social group, or political opinion. *Id.* § 101(a)(42)(A); 8 C.F.R. § 1208.13(b)(1). The applicant must establish that one of the five grounds was or will be at least one central reason for the claimed persecution. INA § 208(b)(1)(B)(i); *Shaikh v. Holder*, 588 F.3d 861, 864 (5th Cir. 2009).

Upon review of the record, the Court finds that Respondent is statutorily eligible for asylum and merits such relief as a matter of discretion. Previously, the Court found Respondent was credible and that she had met the "more likely than not" standard for withholding of removal, which is more stringent than the standard governing applications for asylum. As such, the Court finds that Respondent has necessarily met her burden of establishing that she has a well-founded fear of future persecution ▉▉▉▉▉▉. *See Orellana-Monson v. Holder*, 685 F.3d 511, 518 (5th Cir. 2012); *Abdel-Masieh v. INS*, 73 F.3d 579, 583 (5th Cir. 1996). In addition, the Court previously found that Respondent's fear of future persecution would be on account of a protected ground, ▉▉▉▉▉▉▉▉▉▉. *See Shaikh v. Holder*, 588 F.3d 861, 864 (5th Cir. 2009); *Adebisi v. INS*, 952 F.2d 910, 914 (5th Cir. 1992). Finally, the Court finds Respondent merits asylum as a matter of discretion: general humanitarian considerations heavily weigh in Respondent's favor, and the record lacks evidence of any negative discretionary factors. *See* INA § 240(c)(4)(A); *Matter of H-*, 21 I&N Dec. 337, 347 (BIA 1996); *Matter of Pula*, 19 I&N Dec. 467, 473 (BIA 1987). Thus, the Court will vacate the Court's decision dated November 6, 2019 and grant Respondent's application for asylum.

Accordingly, after careful consideration, the following orders are hereby entered:

**ORDERS**

**IT IS HEREBY ORDERED** that Respondent's removal proceedings are **REOPENED** *SUA SPONTE* pursuant to 8 C.F.R. § 1003.23(b)(1).

**IT IS FURTHER ORDERED** that the order of removal entered against Respondent on November 6, 2019, is **VACATED**.

**IT IS FURTHER ORDERED** that the order granting Respondent's application for withholding of removal under section 241(b)(3) of the Act entered on November 6, 2019, is **VACATED**.

**IT IS FURTHER ORDERED** that Respondent's application for asylum under section 208 of the Act is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondent's application for withholding of removal under section 241(b)(3) of the Act be considered **MOOT**.

**IT IS FINALLY ORDERED** that Respondent's application for withholding of removal under the Convention against Torture be considered **MOOT**.

Date: 11/17/2020

MEREDITH
TYRAKOSKI
Digitally signed by MEREDITH
TYRAKOSKI
Date: 2020.11.17 17:10:03
-06'00'

Meredith B. Tyrakoski
United States Immigration Judge

E0012

UNITED STATES IMMIGRATION COURT
3843 E. STAGG AVE
BASILE, LA 70515

IN THE REMOVAL CASE OF                          CASE NO.: ▮▮▮▮▮▮

RESPONDENT

ORDERS

[X] This is a memorandum of the Court's Decision and Orders entered on
December 23, 2020 . This memorandum is solely for the
convenience of the parties. The oral or written Findings, Decision
and Orders is the official opinion in this case. ( ) Both parties
waived issuance of a formal oral decision in the case.

[ ] The respondent was ordered REMOVED from the United States to
_____ ( ) in absentia.

[ ] Respondent's application for VOLUNTARY DEPARTURE was DENIED and
respondent was ordered removed to _____, in the
alternative to _____.

[ ] Respondent's application for VOLUNTARY DEPARTURE was GRANTED until
_____, upon posting a voluntary departure bond in the amount
of $_____ to DHS within five business days from the date of this
Order, with an alternate Order of removal to _____
or _____. Respondent shall present to DHS within
( ) thirty days ( ) sixty days from the date of this Order, all
necessary travel documents for voluntary departure.

[X] Respondent's application for ASYLUM was (X) granted ( ) denied
( ) withdrawn with prejudice.
( ) subject to the ANNUAL CAP under the INA section 207(a)(5).
( ) Respondent knowingly filed a FRIVOLOUS asylum application.

[X] Respondent's application for WITHHOLDING of removal under INA
section 241(b)(3) was ( ) granted ( ) denied ( ) withdrawn with
prejudice. not adjudicated

[✓] Respondent's application for WITHHOLDING of removal under the Torture
Convention was ( ) granted ( ) denied ( ) withdrawn with prejudice. not adjudicated

[ ] Respondent's application for DEFERRAL of removal under the Torture
Convention was ( ) granted ( ) denied ( ) withdrawn with prejudice.

[ ] Respondent's application for CANCELLATION of removal under section
( ) 203(b) of NACARA, ( ) 240A(a) ( ) 240A(b)(1) ( ) 240A(b)(2)
of the INA, was ( ) granted ( ) denied ( ) withdrawn with prejudice.
If granted, it was ordered that the DHS issue all appropriate documents
necessary to give effect to this Order. Respondent ( ) is ( ) is not
subject to the ANNUAL CAP under INA section 240A(e).

[ ] Respondent's application for a WAIVER under the INA section
_____ was ( ) granted ( ) denied ( ) withdrawn or
( ) other _____. ( ) The conditions imposed by
INA section 216 on the repondent's permanent resident status were removed.

[ ] Respondent's application for ADJUSTMENT of status under section _____
of the ( ) INA ( ) NACARA ( ) _____ was
( ) granted ( ) denied ( ) withdrawn with prejudice. If granted,
it was ordered that DHS issue all appropriate documents necessary to
give effect to this Order.

CASE NUMBER: ▮▮▮▮▮     RESPONDENT: ▮▮▮▮▮▮▮

[ ] Respondent's status was RESCINDED pursuant to the INA section 246.
[ ] Respondent's motion to WITHDRAW his application for admission was
( ) granted ( ) denied.  If the respondent fails to abide by any of
the conditions directed by the district director of DHS, then the
alternate Order of removal shall become immediately effective without
further notice or proceedings:  the respondent shall be removed from
the United States to _____.
[ ] Respondent was ADMITTED as a _____ until
_____ .  As a condition of admission, the respondent was
ordered to post a $ _____ bond.
[ ] Case was ( ) TERMINATED ( ) with ( ) without prejudice
( ) ADMINISTRATIVELY CLOSED.
[ ] Respondent was orally advised of the LIMITATION on discretionary
relief and consequences for failure to depart as ordered.
    [ ] If you fail to voluntarily depart when and as required, you shall
    be subject to civil money penalty of at least $500, but not more than
    $5,000, and be ineligible for a period of 10 years for any further
    relief under INA sections 240A, 240B, 245, and 248 (INA Section 240B(d)).
    [ ] If you are under a final order of removal, and if you willfully fail
    or refuse to 1) depart when and as required, 2) make timely application
    in good faith for any documents necessary for departure, or 3) present
    yourself for removal at the time and place required, or, if you conspire
    to or take any action designed to prevent or hamper your departure, you
    shall be subject to civil money penalty of up to $799 for each day under
    such violation.  (INA section 274D(a)).  If you are removable pursuant
    to INA 237(a), then you shall further be fined and/or imprisoned for up
    to 10 years.  (INA section 243(a)(1)).
[ ] Other: _____

_____
_____

Date: 12-23-2020                    _____
                                    PEDRO J. ESPINAL, Judge

APPEAL: ( ) waived  ( ) reserved  by  ( ) Respondent  ( ) DHS  ( ) Both

DUE BY: Jun 15, 2020

_____
                    CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY:
                    MAIL (M)  PERSONAL SERVICE [P]  ELECTRONIC SERVICE [E]
TO: [✓] ALIEN  [ ] ALIEN c/o Custodial Officer  [ ] ALIEN'S ATT/REP  [✓] DHS
DATE: 12/23/2020    BY: [ ] COURT STAFF  [ ] JUDGE _____

                                                                    Y2

E0014

U.S. DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
3843 E. STAGG AVE
BASILE, LA 70515

In the Matter of:                    Case No.: ████████████

███████████████                     Docket: SOUTH LOUISIANA CORRECTIONAL CENTER

RESPONDENT                           IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE

Upon consideration of RESPONDENT

( )   Motion to Reconsider an Immigration Judge's decision

(X)   Motion to Reopen proceedings

filed in the above entitled matter, it is hereby ordered that the motion

(X) Be Granted

( ) Be Denied for reasons indicated in the attached decision


PEDRO J. ESPINAL
Immigration Judge
Date: 12-23-2020

Appeal: NO APPEAL  (A/I/B)
Appeal Due By:

CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY: MAIL (M)  PERSONAL SERVICE [P]  ELECTRONIC SERVICE [E]
TO: [v] ALIEN [ ] ALIEN c/o Custodial Officer [ ] Alien/s ATT/REP [v] DHS
DATE: 12/23/2020 _____ BY: COURT STAFF _____
      Attachments: [ ] EOIR-33 [ ] EOIR-28 [ ] Legal Services List [ ] Other

Form EOIR 2 - 2T

E0015

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
3843 E. STAGG AVE
BASILE, LA  70515


Duncan | Kent, PLLC
Kent, Christopher Tyler
571 Highway 51
Suite B
Ridgeland, MS  39157

In the matter of                    File A ▊▊▊▊▊▊▊▊        DATE: Dec 23, 2020
▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊

__ Unable to forward - No address provided.
__ Attached is a copy of the decision of the Immigration Judge. This decision
   is final unless an appeal is filed with the Board of Immigration Appeals
   within 30 calendar days of the date of the mailing of this written decision.
   See the enclosed forms and instructions for properly preparing your appeal.
   Your notice of appeal, attached documents, and fee or fee waiver request
   must be mailed to:     Board of Immigration Appeals
                          Office of the Clerk
                          5107 Leesburg Pike, Suite 2000
                          Falls Church, VA 22041
__ Attached is a copy of the decision of the immigration judge as the result
   of your Failure to Appear at your scheduled deportation or removal hearing.
   This decision is final unless a Motion to Reopen is filed in accordance
   with Section 242b(c)(3) of the Immigration and Nationality Act, 8 U.S.C. §
   1252b(c)(3) in deportation proceedings or section 240(b)(5)(C), 8 U.S.C. §
   1229a(b)(5)(C) in removal proceedings.  If you file a motion to reopen, your
   motion must be filed with this court:
                          IMMIGRATION COURT
                          3843 E. STAGG AVE
                          BASILE, LA  70515
__ Attached is a copy of the decision of the immigration judge relating to a
   Reasonable Fear Review. This is a final order. Pursuant to 8 C.F.R. §
   1208.31(g)(1), no administrative appeal is available. However, you may file
   a petition for review within 30 days with the appropriate Circuit Court of
   Appeals to appeal this decision pursuant to 8 U.S.C. § 1252; INA §242.

__ Attached is a copy of the decision of the immigration judge relating to a
   Credible Fear Review. This is a final order. No appeal is available.

✓ Other:  IJ Order _____

                              _Jennette Hogan_____
                              COURT CLERK
                              IMMIGRATION COURT              FF

     cc:

IMMIGRATION COURT
3843 E. STAGG AVE
BASILE, LA 70515

In the Matter of

███████████████████        Case No.: ████████████████

Respondent                          IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on April 10, 2020.
This memorandum is solely for the convenience of the parties. If the
proceedings should be appealed or reopened, the oral decision will become
the official opinion in the case.

[  ]  The respondent was ordered removed from the United States to
      or in the alternative to .
[  ]  Respondent's application for voluntary departure was denied and
      respondent was ordered removed to  or in the
      alternative to .
[  ]  Respondent's application for voluntary departure was granted until
      upon posting a bond in the amount of $ _____
      with an alternate order of removal to .

Respondent's application for:
[ X ]  Asylum was ( X )granted  (  )denied(  )withdrawn.
[  ]  Withholding of removal was (  )granted (  )denied  (  )withdrawn.
[  ]  A Waiver under Section _____ was (  )granted (  )denied  (  )withdrawn.
[  ]  Cancellation of removal under section 240A(a) was (  )granted  (  )denied
      (  )withdrawn.

Respondent's application for:
[  ]  Cancellation under section 240A(b)(1) was (  ) granted  (  ) denied
      (  ) withdrawn. If granted, it is ordered that the respondent be issued
      all appropriate documents necessary to give effect to this order.
[  ]  Cancellation under section 240A(b)(2) was (  )granted (  )denied
      (  )withdrawn. If granted it is ordered that the respondent be issued
      all appropriated documents necessary to give effect to this order.
[  ]  Adjustment of Status under Section _____ was (  )granted (  )denied
      (  )withdrawn. If granted it is ordered that the respondent be issued
        all appropriated documents necessary to give effect to this order.
[  ]  Respondent's application of (  ) withholding of removal  (  ) deferral of
      removal under Article III of the Convention Against Torture was
      (  ) granted  (  )  denied  (  )  withdrawn.
[  ]  Respondent's status was rescinded under section 246.
[  ]  Respondent is admitted to the United States as a _____ until _____.
[  ]  As a condition of admission, respondent is to post a $ _____ bond.
[  ]  Respondent knowingly filed a frivolous asylum application after proper
      notice.
[  ]  Respondent was advised of the limitation on discretionary relief for
      failure to appear as ordered in the Immigration Judge's oral decision.
[  ]  Proceedings were terminated.
[  ]  If you are under a final order of removal, and if you willfully fail
      or refuse to 1) depart when and as required, 2) make timely application
      in good faith for any documents necessary for departure, or 3) present
      yourself for removal at the time and place required, or, if you conspire
      to or take any action designed to prevent or hamper your departure, you
      shall be subject to civil money penalty of up to $813 for each day under

E0017

ALIEN NUMBER: ███████        NAME: ████████████████

such violation. (INA section 274D(a)). If you are removable pursuant
to INA 237(a), then you shall further be fined and/or imprisoned for up
to 10 years. (INA section 243(a)(1)).

[X]  Other: _Post-order instructions included with this order._
     Date: _1/15/2021_

                                    _[signature]_
                                    JULIA DIAZ-REX
                                    Immigration Judge

Appeal (Waived) Reserved    Appeal Due By: _____

---

CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY:  MAIL [M]  PERSONAL SERVICE [P]  ELECTRONIC SERVICE [E]
TO: [ ] ALIEN  [ ] ALIEN c/o Custodial Officer  [M] ALIEN's ATT/REP  [M] DHS
DATE: _____1/15/21_____  BY: COURT STAFF
      Attachments: [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other

Q6

E0018

U.S. DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
3843 E. STAGG AVE
BASILE, LA 70515

In the Matter of:                          Case No.: ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮                          Docket: SOUTH LOUISIANA CORRECTIONAL CENTER

RESPONDENT
                                 IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE

Upon consideration of RESPONDENT

(   )   Motion to Reconsider an Immigration Judge's decision

( X )   Motion to Reopen proceedings

filed in the above entitled matter, it is hereby ordered that the motion

( X ) Be Granted

(   ) Be Denied for reasons indicated in the attached decision

JULIA DIAZ-REX
Immigration Judge
Date:  Jan 15, 2021

Appeal: NO APPEAL  (A/I/B)
Appeal Due By:  May 11, 2020

CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY: MAIL [M]   PERSONAL SERVICE [P]   ELECTRONIC SERVICE [E]
TO:   [ ] ALIEN   [ ] ALIEN c/o Custodial Officer  [ ] Alien's ATT/REP  [ ] DHS
DATE:    1 /15/ 21      BY: COURT STAFF
      Attachments:  [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List   [ ] Other

Form EOIR 2 - 2T

E0019

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
3843 E. STAGG AVE
BASILE, LA  70515


LAW OFFICE OF DMITRY EFROS
Efros, Dmitry
160 BROADWAY,
FL.10 EAST BLDG.
NEW YORK, NY  10038

In the matter of                    File A ▮▮▮▮▮▮▮▮        DATE: Jan 15, 2021
▮▮▮▮▮▮▮▮▮

Unable to forward - No address provided.
X Attached is a copy of the decision of the Immigration Judge. This decision
is final unless an appeal is filed with the Board of Immigration Appeals
within 30 calendar days of the date of the mailing of this written decision.
See the enclosed forms and instructions for properly preparing your appeal.
Your notice of appeal, attached documents, and fee or fee waiver request
must be mailed to:     Board of Immigration Appeals
                       Office of the Clerk
                       5107 Leesburg Pike, Suite 2000
                       Falls Church, VA 22041
__ Attached is a copy of the decision of the immigration judge as the result
of your Failure to Appear at your scheduled deportation or removal hearing.
This decision is final unless a Motion to Reopen is filed in accordance
with Section 242b(c)(3) of the Immigration and Nationality Act, 8 U.S.C. §
1252b(c)(3) in deportation proceedings or section 240(b)(5)(C), 8 U.S.C. §
1229a(b)(5)(C) in removal proceedings.  If you file a motion to reopen, your
motion must be filed with this court:
                       IMMIGRATION COURT
                       3843 E. STAGG AVE
                       BASILE, LA  70515
__ Attached is a copy of the decision of the immigration judge relating to a
Reasonable Fear Review. This is a final order. Pursuant to 8 C.F.R. §
1208.31(g)(1), no administrative appeal is available. However, you may file
a petition for review within 30 days with the appropriate Circuit Court of
Appeals to appeal this decision pursuant to 8 U.S.C. § 1252; INA §242.

__ Attached is a copy of the decision of the immigration judge relating to a
Credible Fear Review. This is a final order. No appeal is available.

__ Other: _____

                                            _____
                                            COURT CLERK
                                            IMMIGRATION COURT            FF
   cc: OFFICE OF THE CHIEF COUNSEL/OPLA - SA
       #7 TABONUCO ST. ROOM 313
       GUAYNABO, PR,  00968

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
801 W. SUPERIOR AVE, STE13-100
CLEVELAND, OH   44113


Ohio Credit Union League
Lee, Miriah
1812 Race Street, Unit 301
Columbus, OH   43202

In the matter of            File A                    DATE: Feb 20, 2020



Unable to forward - No address provided.
☑ Attached is a copy of the decision of the Immigration Judge. This decision
is final unless an appeal is filed with the Board of Immigration Appeals
within 30 calendar days of the date of the mailing of this written decision.
See the enclosed forms and instructions for properly preparing your appeal.
Your notice of appeal, attached documents, and fee or fee waiver request
must be mailed to:     Board of Immigration Appeals
                       Office of the Clerk
                       5107 Leesburg Pike, Suite 2000
                       Falls Church, VA 22041

___ Attached is a copy of the decision of the immigration judge as the result
of your Failure to Appear at your scheduled deportation or removal hearing.
This decision is final unless a Motion to Reopen is filed in accordance
with Section 242b(c)(3) of the Immigration and Nationality Act, 8 U.S.C. §
1252b(c)(3) in deportation proceedings or section 240(b)(5)(C), 8 U.S.C. §
1229a(b)(5)(C) in removal proceedings.  If you file a motion to reopen, your
motion must be filed with this court:
                       IMMIGRATION COURT
                       801 W. SUPERIOR AVE, STE13-100
                       CLEVELAND, OH   44113

___ Attached is a copy of the decision of the immigration judge relating to a
Reasonable Fear Review. This is a final order. Pursuant to 8 C.F.R. §
1208.31(g)(1), no administrative appeal is available. However, you may file
a petition for review within 30 days with the appropriate Circuit Court of
Appeals to appeal this decision pursuant to 8 U.S.C. § 1252; INA §242.

___ Attached is a copy of the decision of the immigration judge relating to a
Credible Fear Review. This is a final order. No appeal is available.

___ Other: _____
        _____

                                    COURT CLERK
                                    IMMIGRATION COURT              FF

     cc: LISK, MICHAEL
         925 KEYNOTE CIR., RM 201
         BROOKLYN HTS., OH,  44131


                                                          E0021

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**IMMIGRATION COURT**
**801 WEST SUPERIOR AVENUE, SUITE 13-100**
**CLEVELAND, OHIO 44113**

| | |
|---|---|
| **In The Matter Of:** ) | Date: FEBRUARY 20, 2020 |
| ) | |
| ██████████ ) | |
| ) | |
| Respondent. ) | |
| ) | Docket: Cleveland Detained (CLD) |
| **File Number: A**██████ ) | |

**RE: Asylum, Withholding of Removal, and Withholding under the Convention Against Torture**

**ON BEHALF OF THE RESPONDENT:**
Miriah Lee, Esq.
1812 Race Street, Unit 301
Cincinnati, Ohio 45202

**ON BEHALF OF THE DHS:**
Michael Lisk, Assistant Chief Counsel
Office of the Chief Counsel
Immigration and Customs Enforcement
925 Keynote Circle, Room 201
Brooklyn Heights, Ohio 44131

## DECISION AND ORDER OF THE IMMIGRATION JUDGE

### I. Procedural History

The Respondent is a native of ██████ and citizen of ██████. Exh. 1. On October 11, 2019, the Department of Homeland Security ("the Department") initiated removal proceedings against the Respondent by filing a Notice to Appear ("NTA") alleging the Respondent arrived in the United States at an unknown place on or about September 16, 2019, and charging the Respondent under sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA" or "the Act"), as an alien present without admission or parole who was not then in possession of a valid travel document. *Id.*

At a master calendar hearing conducted on November 16, 2019, the Respondent admitted factual allegations one through five and conceded the charges under INA §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I). Russia was designated as the country of removal, should such action become necessary. On November 19, 2019, the Respondent filed a Form I-589, Application for Asylum and Withholding of Removal, and relief under the Convention Against Torture ("CAT") with the Court, asserting past persecution and fear of future persecution on account of his political opinion. Exh. 2. The Court held an individual hearing on the merits of the Respondent's application on December 31, 2019.

E0022

For the following reasons, the Court will **DENY** the Respondent's application for asylum, withholding of removal under INA § 241(b)(3), and withholding of removal under the Convention Against Torture ("CAT").

## II. Evidence Presented

The Court has considered all evidence submitted by the parties, both documentary and testimonial, whether expressly referred to in this decision or not.

### A. Documentary Evidence

**Exhibit 1**    The Respondent's Form I-862, Notice to Appear, received by the Court on October 18, 2019;

**Exhibit 2**    The Respondent's Form I-589, Application for Asylum and for Withholding of Removal, received by the Court on November 19, 2019;

**Exhibit 3**    The Respondent's Evidentiary Submission, Tabs A-F, pages 1-71, received by the Court on December 6, 2019;

**Exhibit 4**    The Respondent's Evidentiary Submission, Tabs A-E, pages 1-17, received by the Court on December 5, 2019; and

**Exhibit 5**    The Respondent's Evidentiary Submission, Tabs A-F, pages 1-33, received by the Court on December 26, 2019.

### B. Testimonial Evidence

The Respondent testified in support of his application on December 31, 2019. The following is a summary of that testimony:

The Respondent is a twenty-eight year old native of    and citizen of    He is a member of the    The    supports the exposure of corruption in    and is against the presidency of    The Respondent participated in protests for the    He also donated money to the cause. He posted images to the internet exposing corruption. He recruited members to join the   .

████████████████████████████████████████████

████████ Respondent applied for and received a visa allowing him to travel anywhere in the European Union. The Respondent traveled to Finland, Italy, Germany, Israel, The Netherlands, and Poland on three separate trips. He did not seek asylum in any of those countries.

In December 2018, the Respondent was eating at a café with a friend when a vehicle pulled up and ████████ rolled down a window. ████████ instructed the Respondent to get in the car.

████████████████████████████████████████████

████████████████████████████████████████████

On May 15, 2019, the Respondent was interviewed at the U.S. consulate in Tel Aviv as part of a visa application. A ████ agency helped set up the interview and handled the paperwork. The interview was conducted in ████ The Respondent did not recall answering in the negative if he had ever been arrested during the course of his interview. The visa application was denied that day.

The Respondent decided to leave ████ on May 30, 2019. He traveled from ████ to Mexico City. On June 7, 2019, he received a refugee number in Tijuana. He did not want to wait for his number to be called. He attempted to enter at another entry point. When he explained his claim to officials, they told him he could travel elsewhere for help. He proceeded to another entry point and was told he needed to wait.

He has contacted his mother and friends since leaving. The police are looking for him and have been to his mother's home.

He fears returning to ████ because the police are looking for him and he fears that ████████ will harm him.

E0024

### III. Legal Standards and Analysis

**A.    Credibility and Corroboration**

**1.   Legal Standard**

In all applications for relief from removal, the Court must make a threshold determination of the alien's credibility. *See Mapouya v. Gonzales,* 487 F.3d 396, 406 (6th Cir. 2007); *Matter of O-D-,* 21 I&N Dec. 1079, 1081 (BIA 1998). An adverse credibility determination can be "fatal to claims for asylum and relief from removal." *Slyusar v. Holder*, 740 F.3d 1068, 1974 (6th Cir. 2014) (citing *Perlaksa v. Holder*, 361 F. App'x 655, 661 & n. 6 (6th Cir. 2010)).

As the Respondent filed his asylum application after May 11, 2005, the REAL ID Act credibility standards govern his case. *See Amir v. Gonzales,* 467 F.3d 921, 925 n.4 (6th Cir. 2006); Matter *of S-B-,* 24 I&N Dec. 42 (BIA 2006). Under the REAL ID Act, credibility determinations are based on the "totality of the circumstances" and take into account "all relevant factors." INA § 208(b)(1)(B)(iii). These factors include: the demeanor, candor, or responsiveness of the applicant or witness; the inherent plausibility of the applicant's or witness's account; the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor. *Id.*

In the case of an asylum applicant, the respondent's testimony may be sufficient to sustain his burden of proof without corroboration if it is demonstrably credible, persuasive, and probative of facts sufficient to show that the applicant is a refugee. INA § 208(b)(1)(B)(ii); 8 C.F.R. § 1208.13(a). Testimony is not considered credible when it is inconsistent, contradicted by other evidence, or inherently improbable. *See Matter of S-M-J-,* 21 I&N Dec. 722, 729 (BIA 1997). Minor and irrelevant inconsistencies cannot constitute the basis for an adverse credibility determination. *Sylla v. INS,* 388 F.3d 924, 926 (6th Cir. 2004). If the trier of fact determines that corroborative evidence should be produced, it "must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." *Id.*; *Matter of J-Y-C-,* 24 I&N Dec. 260, 263 (BIA 2007).

**2.   Analysis**

Upon careful consideration of all the facts in the record, both individually and cumulatively, the Court finds that the Respondent was not a credible witness due to inconsistencies between his testimony and other evidence in the record.

The Respondent submitted several medical records and a screen shot of text messages in support of his claim. The Court gives little weight to the medical records from the government-run hospital and the text messages.

E0025

The medical records from the government-run hospital are not properly authenticated since they would be official records. *See* 8 C.F.R. 1287.6(b). Second, the text messages the Respondent submitted in support of his application appear to have been written in preparation of litigation, which diminishes their reliability. Moreover, the texts are short and address none of the incidents that the Respondent testified occurred.

On May 15, 2019, the Respondent attended his visa interview at the U.S. consulate in Tel Aviv. The interview was conducted in ▮▮▮▮. He told his interviewers that he was never arrested. The Respondent told Border Patrol agents and testified that he was arrested twice, September 2018 and December 2018. The Respondent did not recall being asked if he was arrested in ▮▮▮ during his visa interview. He could not explain this inconsistency.

The Respondent testified to two instances involving police, yet he offered no evidence to corroborate those instances, such as police reports or witness statements. The Respondent also testified to two hospital stays, both allegedly lasted at least a week, yet he did not submit medical records to corroborate those treatments. The Respondent's only corroborating evidence were two diagnosis summaries. Exh. 4, Tabs A-B. The Respondent provided no other documentation, such as hospital records, police reports, or witness statements to corroborate his testimony. The Respondent testified that he reported his abuse to the authorities and claimed he had witnesses, yet he provided no witness statements to support his claim. Additionally, the diagnosis summaries do not align with the Respondent's claimed harm. The report from December 18, 2018, does not mention any evidence of neck injuries that would be typical with a strangulation that resulted in unconsciousness. Exh. 4, Tab A. Furthermore, the Respondent testified to being hit in the legs and the report makes no mention of injuries below the "beltline." *Id.*

The Respondent's mother submitted a statement to the Court; however, she did not mention either incident in which the Respondent claims police officers beat him. Exh. 4, Tab E. The Court finds it questionable that an individual, who, according to the Respondent's testimony, either knew or should have known of this incident, did not corroborate it in any way.

The Respondent testified that he was a member of the ▮▮▮▮▮▮▮, but offered no evidence to corroborate his political opinion, such as a political party card or a statement from a witness who participated in the party.

In consideration of the foregoing, the Court finds the Respondent's testimony contains significant inconsistencies and omissions that go to the heart of his claim. Additionally, the Respondent has failed to submit sufficient evidence to corroborate his testimony. Accordingly, the Court finds the Respondent was not a credible witness.

Based on the adverse credibility finding, the Court finds that the Respondent has not met his burden of proof regarding his application for asylum and withholding of removal under the REAL ID Act. The Court will accordingly **DENY** his applications for relief.

E0026

## B.   8 C.F.R. § 208.13(c)(4) (Third Country Transit Rule)

### 1.  Legal Standard

"Additional limitation on eligibility for asylum. Notwithstanding the provisions of § 208.15, any alien who enters, attempts to enter, or arrives in the United States across the southern land border on or after July 16, 2019, after transiting through at least one country outside the alien's country of citizenship, nationality, or last lawful habitual residence en route to the United States, shall be found ineligible for asylum unless:

> (i) The alien demonstrates that he or she applied for protection from persecution or torture in at least one country outside the alien's country of citizenship, nationality, or last lawful habitual residence through which the alien transited en route to the United States, and the alien received a final judgment denying the alien protection in such country;
> (ii) The alien demonstrates that he or she satisfies the definition of "victim of a severe form of trafficking in persons" provided in 8 CFR 214.11; or
> (iii) The only countries through which the alien transited en route to the United States were, at the time of the transit, not parties to the 1951 United Nations Convention relating to the Status of Refugees, the 1967 Protocol Relating to the Status of Refugees, or the United Nations Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment."

8 C.F.R. § 208.13.

### 2.  Analysis

Both the Department and the Respondent's counsel submitted briefs on the applicability of the Third Country Transit Rule to the Respondent. The Respondent's case closely mirrors that in *Nianga v. Wolfe.*

> Nianga first sought entry to and asylum in the U.S. in or around April of 2019. Complaint at 16. Nianga alleges that he was denied entry to the U.S. in *April 2019* under an unlawful "metering" policy. *Id.* Months later, on July 16, 2019, the (c)(4) bar became effective. *See* 8 C.F.R. § 208.13(c)(4). Then, on July 24, 2019, the (c)(4) bar became subject to a nationwide injunction under which the government was enjoined from "taking any action continuing to implement the [ (c)(4) bar]" and ordered "to return to the pre-[ (c)(4) bar] practices for processing asylum applications." *East Bay Sanctuary Covenant v. Barr*, 385 F. Supp. 3d 922, 960 (N.D. Cal.), *order reinstated*, 391 F. Supp. 3d 974, 985 (N.D. Cal. 2019). The Supreme Court eventually issued a stay of the nationwide injunction on September 11, 2019, "pending disposition of the Government's appeal in the United States Court of Appeals for the Ninth Circuit and disposition of the Government's petition for a writ of certiorari, if such writ is sought." *Barr v. East Bay Sanctuary Covenant*, —— U.S. ——, 140 S. Ct. 3, 204 L.Ed.2d 1189 (2019) (mem.). On *September 15, 2019*, four

E0027

days after the Supreme Court issued the stay, Nianga once again sought asylum in the U.S., but was ultimately denied asylum pursuant to the (c)(4) bar. Although the court lacks jurisdiction to determine the legality of the "metering" policy to which Nianga was subjected, the court is sympathetic to the fact that had Nianga been allowed to apply for asylum in April of 2019, he would not have been subject to the (c)(4) bar. Despite this harsh result, the court nonetheless lacks jurisdiction to grant Nianga the relief that he seeks.

*Nianga v. Wolfe*, No. 3:20-CV-0146-G, 2020 WL 415927, at \*5 (N.D. Tex. Jan. 27, 2020)(*emphasis added*).

The Respondent received his refugee number on or about June 7, 2019, and was denied entry pursuant to the "metering" policy. Exh. 5 at 8. He crossed the border and was apprehended on or about September 16, 2019. Exh. 1. He filed his asylum application on November 19, 2019. Exh. 2. The Court agrees with the analysis in *Nianga v. Wolfe,* and finds the Respondent is not eligible for asylum relief. However in the interest of a complete decision, the Court will analyze his claim nonetheless.

## C.    Asylum

### 1.   Legal Standard

An applicant may be granted asylum if he timely files an application and meets the definition of a refugee. INA § 208. Generally, for an asylum application to be timely filed, the applicant must file his application within one year of arrival. INA § 208(a) (2)(B). The applicant bears the burden of establishing, by clear and convincing evidence, that his application was timely filed. *Id.*

An applicant bears the burden of establishing he is a refugee, which requires a showing of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. INA §§ 101(a)(42)(A), 208(b)(1)(A); 8 C.F.R. §§ 1208.13, 1240.8(d); *INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992). If eligibility is established, asylum may be granted in the exercise of discretion. INA § 208(b)(1)(A); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 423 (1987).

"Persecution" is "a threat to the life or freedom of, or the infliction of suffering or harm upon, those who differ in a way regarded as offensive." *Matter of Acosta*, 19 I&N Dec. 211, 222 (BIA 1985); *Matter of Kasinga*, 21 I&N Dec. 357, 365 (BIA 1996). "'[P]ersecution'… requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998). However, a single incident may be sufficient to constitute persecution if it is correspondingly severe. *Lumaj v. Gonzales*, 462 F.3d 574, 577 (6th Cir. 2006).

An applicant claiming persecution on account of membership in a particular social group must demonstrate that the group is: "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I&N Dec. 227, 237 (BIA 2014). The particular social group must be a "central reason" for the persecutor's choice to inflict harm and not "incidental,

E0028

tangential, or subordinate" to another motivation. *Matter of A-B-*, 27 I&N Dec. 316, 338 (A.G. 2018).

The persecution must also be inflicted by the government of the country or by persons or an organization that the government is unable or unwilling to control. *Acosta*, 19 I&N Dec. at 222. An applicant seeking to establish persecution based on violent conduct of a private actor must show more than difficulty on behalf of the government in controlling private behavior. *A-B-*, 27 I&N Dec. at 337. The respondent must prove that the government "condoned the private actions" or "demonstrated a complete helplessness" to intervene. *Id.*

A finding of past persecution creates a rebuttable presumption that the applicant has a well-founded fear of future persecution for purposes of establishing eligibility for asylum. *See* 8 C.F.R. § 1208.13(b)(1). A finding of past persecution creates a rebuttable presumption that the applicant has a well-founded fear of future persecution. *See* 8 C.F.R. § 1208.13(b)(1). If an applicant cannot establish past persecution, he may nonetheless demonstrate statutory eligibility for asylum by establishing he has a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(2). To establish a well-founded fear of future persecution, the applicant must demonstrate both that he has a subjective fear of persecution and that the fear is objectively reasonable. *Matter of Mogharrabi*, 19 I&N Dec. 439, 439 (BIA 1987). Specifically, the applicant must demonstrate that he will either be individually singled-out for persecution, or there is a pattern or practice of persecution of similarly-situated individuals. *Elias-Zacarias*, 502 U.S. at 480; 8 C.F.R. § 1208.13(b)(2)(iii). There must be a "reasonable possibility," but not a certainty, that the applicant will suffer persecution. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 430 (1987); 8 C.F.R. §1208.13(b)(2). "Reasonable" means a one in ten chance of suffering persecution. *See Cardoza-Fonseca*, 480 U.S. at 430-31; *see also* 8 C.F.R. § 1208.13(b)(2).

Where an applicant establishes his statutory eligibility for asylum, relief may be granted in the exercise of discretion. INA § 208(b)(1)(A); *Cardoza-Fonseca*, 480 U.S. at 423.

### 2. Analysis

Although the Court finds the Respondent not credible, and not eligible due to the Third Country Transit Rule, the Court will nonetheless evaluate his claim for asylum in the interest of a thorough analysis. The Respondent arrived in the United States on or about September 16, 2019. Exh. 1. The Respondent filed his application on November 19, 2019. Exh. 3. He therefore filed within a reasonable time.  INA § 208(a)(2)(B).

The Respondent claims to fear returning to Russia based on past persecution and a fear of future persecution on account of his political opinion associated with membership in the ███████████ ███████.

E0029

The Respondent provided corroboration that he has suffered physical injuries that resulted in two visits to doctors. Ex. 4, Tabs A-B. The Court finds the Respondent adequately established that he suffered harm in ████. Persecution, however, does not encompass all treatment that society regards as unfair, unlawful, or unconstitutional. *Marikasi v. Lynch*, 840 F.3d 281, 288 (6th Cir. 2016) (citing *Lumaj v. Gonzales*, 462 F.3d 574, 577 (6th Cir. 2006)), *See also*, *Pilica v. Ashcroft*, 388 F.3d 941, 954 (6th Cir. 2004) (no persecution even though petitioner was twice arrested and detained for a week on each occasion and, on a third occasion, "was beaten by policemen, resulting in head injuries and a week-long hospitalization"). In light of this and the fact that medical records validating his hospitalization are not properly authenticated, the Court finds it is difficult to confirm or refute the Respondent's testimony about the level of harm he suffered. *See* 8 C.F.R. 1287.6(b). Accordingly, the Court finds the Respondent has not meet his burden of proof to establish that the level of harm he suffered rises to the level necessary to qualify as persecution.

The Respondent is not entitled to a presumption of well-founded fear of persecution because he did not establish past persecution. *See* 8 C.F.R. § 1208.13(b)(1). Here, while the Respondent may subjectively fear harm in Russia, he cannot establish his fear is objectively reasonable. The Respondent's subjective fear is also in question. The Respondent traveled to Poland, The Netherlands, Germany, Italy, Finland, and Israel on three separate excursions after his first arrest in September 2019. *See* Exh. 5, Tab C. He did not seek asylum in any of those countries. His fear was not genuine enough for him to remain outside of ████, instead he chose to return to ████ and not flee the harm he feared.

Additionally, the Court finds that the Respondent ultimately failed to establish a nexus between his persecution and statutorily protected ground. The ████████ provides for freedom of assembly. Exh. 3, Tab B at 22. The country conditions note "the law requires organizers of public meetings, demonstrations, or marches by more than one person to notify the government, although authorities maintained that protest organizers must receive government permission, not just provide notification." *Id.* "Police often broke up demonstrations that were not officially sanctioned. For example, on September 9, police throughout the country detained 1,195 persons who were demonstrating against pension reform." *Id.* at 34. The Court assigns considerable weight to the State Department's report, as "country condition profiles described by the State Department have been found to be 'the most appropriate and perhaps the best resource' for information on conditions in foreign nations." *Matter of V-T-S-*, 21 I&N Dec. 792, 799 (BIA 1997), quoting *Kazlauskas v. INS*, 46 F.3d 902, 906 (9th Cir. 1995).

The Respondent testified that he was arrested as part of the September 9 pension protests. While ████ citizens have the freedom of assembly, they must comply with government regulations. Exh. 3, Tab B, 22. In the case at hand, it appears that police did not arrest or harm the Respondent because of his political beliefs, but instead arrested him for violating the law. The Respondent failed to establish that the police were motivated to persecute him based upon political opinion and not because he was violating the law.

The Respondent also has not demonstrated that he could not internally relocate within ████ to avoid a threat to his life. *See* 8 C.F.R. § 1208.16(b)(3)(i). Russia is a large country and spans eleven time zones. The country conditions report notes that the law gives citizens the "right to choose their place of residence." Ex. 3 Tab A, 39. Thus, it appears from the country conditions report that

A████████                                    **Page 9 of 13**

it would be reasonable for the Respondent to relocate. Based on these facts, the Court finds that the Respondent has not established he could not reasonably relocate within ▮▮▮ to avoid the threat to his life or freedom.

In sum, even if the Court were to find the Respondent's testimony to be credible, and find him not subject to the Third Country Transit Rule, the Court finds the Respondent has not met his burden to establish past persecution or a well-founded fear of future persecution on a protected ground. INA § 208(b)(1)(B). Accordingly, the Respondent's application for asylum is **DENIED.**

### D.    Withholding of Removal under INA § 241(b)(3)

#### 1.    Legal Standard

A claim for withholding of removal is factually related to an asylum claim, but the standard for withholding of removal is more stringent than the standard for asylum. *See* INA § 241(b)(3); *INS v. Stevic*, 467 U.S. 407, 429 (1984); *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998). To qualify for withholding of removal under the act, the applicant must establish a "clear probability" of persecution, meaning that it is "more likely than not" that he will be subject to persecution on account of a protected ground if returned to the country from which he seeks withholding of removal. *Cardoza-Fonseca*, 480 U.S. 421, 423 (1987). If an alien demonstrates past persecution in the proposed country of removal, it is presumed that his life or freedom will be threatened in the future on the basis of his original claim, and the burden shifts to the Department to demonstrate by a preponderance of the evidence that a fundamental change in circumstances has occurred in that country, or that the applicant could safely relocate to another area in the proposed country of removal and that it would be reasonable to expect him to do so. 8 C.F.R. §§ 1208.16(b)(1)(i)-(ii); *Matter of D-I-M-*, 24 I&N Dec. 448, 450 (BIA 2008). The Court must grant withholding of removal to such an applicant. INA § 241(b)(3); 8 C.F.R. § 1208.16(b).

#### 2.    Analysis

As the Respondent has failed to satisfy the lower burden of proof required for asylum, it necessarily follows that he has failed to satisfy the more stringent clear probability of persecution standard required for withholding of removal. Accordingly, the Respondent's application for withholding of removal under the Act is **DENIED.**

### E.    Convention Against Torture

#### 1.    Legal Standard

Under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), as implemented by 8 C.F.R. §§ 1208.16-18, an applicant is eligible for withholding of removal if he establishes that it is "more likely than not that he would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Torture is defined as a severe form of pain or suffering intentionally inflicted for a specific purpose. 8 C.F.R. § 1208.18(a)(1). To determine whether it is "more likely than not" that an applicant will be tortured in the proposed country of removal, the Court should take into account the following: (1)



E0031

evidence of past torture; (2) evidence of whether the applicant can safely relocate to another part of the country of removal; (3) evidence of gross, flagrant, or mass violations of human rights within the country of removal; and (4) any other relevant country conditions. *See* 8 C.F.R. § 1208.16(c)(3).

The torture must be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). Acquiescence of a public official requires that the official have awareness of or remain "willfully blind" to the activity constituting torture, prior to its commission, and thereafter breach his or her legal responsibility to intervene to prevent such activity. 8 C.F.R. § 1208.18(a)(7). The Sixth Circuit has expressly rejected the Board decision requiring willful acceptance of the torture and has followed other Circuits in finding that willful blindness is sufficient to meet the acquiescence standard. *See Amir v. Gonzales*, 467 F.3d 921, 927 (6th Cir. 2006); *Ali v. Reno*, 237 F.3d 591, 597 (6th Cir. 2001).

### 2. Analysis

The Respondent failed to establish sufficient evidence of past torture or evidence that it is more likely than not that he will be tortured upon return to ▮▮▮▮▮. The harm the Respondent described does not rise to the requisite harm required under the Convention. The Respondent has not demonstrated that the harm he fears was or will be inflicted with the consent or acquiescence of a government official. There is no objective evidence in the record that the government of ▮▮ tortures individuals like the Respondent. There is no objective evidence in the record that, should he be harmed by an individual or nongovernmental entity, that the government of ▮▮ would not protect him or would acquiesce to his torture. There is no objective evidence in the record that the government of ▮▮ would not prosecute anyone who harmed the Respondent.

The Respondent failed to demonstrate that it is more likely than not that he will be tortured if removed to ▮▮, as required for withholding of removal under the CAT. *Kaba v. Mukasey*, 546 F.3d 741, 751 (6th Cir. 2008). Therefore, the Respondent's application for withholding of removal under the CAT is **DENIED**.

## ORDERS

Accordingly, it is hereby ordered that:

1. The Respondent's application for Asylum under INA § 208 is **DENIED**.

2. The Respondent's application for Withholding of Removal under INA § 241(b)(3) is **DENIED**.

3. The Respondent's application for Withholding or Deferral of Removal under the Convention Against Torture is **DENIED**.

4. The Respondent is ordered **REMOVED** to Russia.

So Ordered.

Date: *2-20-20*

**Monte J. Horton**
Immigration Judge

**Appeal Rights:** This decision is final unless an appeal is filed on Form EOIR-26, Notice of Appeal, with the Board of Immigration Appeals within thirty (30) calendar days of the date of the mailing of this written decision. Your notice of appeal, attached documents, and filing fee or a fee waiver request must be mailed to:

> Board of Immigration Appeals
> Office of the Clerk
> 5107 Leesburg Pike, Suite 2000
> Falls Church, VA 22041

Appeal forms are available in electronic format at http://www.justice.gov/eoir/formslist.htm. The fees are listed at http://www.justice.gov/eoir/appealtypes.htm.

**Consequences of Failing to Depart:** The Court has ordered you removed from the United States. Therefore, if you do not appeal this decision and you willfully fail or refuse to apply for the required travel documents to depart the United States, to present yourself for removal as instructed, to depart the United States as instructed, or to take any action, or conspire to take any action, to

prevent or hamper your departure, you will be subject to a civil monetary penalty of not more than $500 per day you are in violation.  INA §§ 240(c)(5), 274D(a); 8 C.F.R. § 1240.13(d).

E0034

RE: ███████████████████████████

File:  A█████████████

---

CERTIFICATE OF SERVICE

THIS DOCUMENT WAS SERVED BY:  MAIL [M]  PERSONAL SERVICE [P]  ELECTRONIC SERVICE [E]
TO: [ ] ALIEN  [ ] ALIEN c/o Custodial Officer  [ ] ALIEN's ATT/REP  [ ] DHS
DATE: 2/20/2020  BY:  COURT STAFF _____
    Attachments:  [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other

---

C1

203-**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**IMMIGRATION COURT**
**CHICAGO, ILLINOIS**

File: ███████                          Date:   March 3, 2021

In the Matter of:                  )
                                   )
███████████████,          )          IN REMOVAL PROCEEDINGS
                                   )
    Respondent.                    )

APPLICATION:        Motion to Reopen.

ON BEHALF OF THE RESPONDENT:          ON BEHALF OF THE GOVERNMENT:
*Pro se*                              Erin Keeley, Assistant Chief Counsel
                                      Department of Homeland Security
                                      525 West Van Buren Street, Suite 701
                                      Chicago, Illinois 60607

## DECISION OF THE IMMIGRATION JUDGE

On November 6, 2019, the court granted Respondent's application for withholding of removal under INA § 241(b)(3)(A), but denied his application for asylum because he was subject to the safe third country bar under 8 C.F.R. § 1208.13(c)(4). IJ Order November 6, 2019. However, on January 18, 2021, the United States District Court for the Southern District of California temporarily stayed the execution of the safe third country regulations as to members of the defined class. *Al Otro Lado, et al., v. Gaynor*, 17-cv-02366-BAS-KSC (S.D. Cal. January 18, 2021). The court finds that Respondent is a class member, and is, therefore, no longer subject to the safe third country regulations.

The court concludes that it is appropriate to reopen Respondent's case, *sua sponte*. 8 C.F.R. § 1003.23(b)(1). Because Respondent satisfied the requirements for withholding of removal, he has necessarily satisfied the requirements for asylum. *Cf. N.Y.C.C. v. Barr*, 930 F.3d 884, 890 (7th Cir. 2019) ("failure to establish eligibility for asylum necessarily means that [Respondent] cannot prevail on [] withholding of removal and CAT claims," because asylum has "the lowest burden of proof").

Accordingly, the court enters the following order:

## ORDER OF THE IMMIGRATION JUDGE

IT IS HEREBY ORDERED that Respondent's case is reopened sua sponte.
IT IS FURTHER ORDERED that Respondent's application for asylum is GRANTED.

_____
KATHRYN L. DEANGELIS
IMMIGRATION JUDGE

E0036

UNITED STATES DEPARTMENT OF JUSTICE
Executive Office for Immigration Review
Immigration Court
Chicago, Illinois

File:    A██████████            Date: February 25, 2021

In the Matter of                    )
                                    )
██████████████████████             )    IN REMOVAL PROCEEDINGS
                                    )
    Respondent                      )

## DECISION OF THE IMMIGRATION JUDGE

On January 22, 2020, the court granted the respondent's application for withholding of

removal under the Immigration and Nationality Act (INA) § 241(b)(3)(A), but denied their

application for asylum because they were subject to the safe third country bar under 8 C.F.R. §

1208.13(c)(4). *See* IJ Order sated January 22, 2020. However, on January 18, 2021, the United

States District Court for the Southern District of California temporarily stayed the execution of the

safe third country regulations to members of the defined class. *Al Otro Lado, et al., v. Gaynor,* 17-

cv-02366-BAS-KSC (S.D.CAL. January 18, 2021). The court finds that the respondent is a class

member and is therefore no longer subject to the safe third country regulations.

The court concludes that it is appropriate to *sua sponte* reopen the respondent's removal

proceedings. 8 C.F.R. § 1003.(b)(1). Having previously satisfied the higher burden of proof for

withholding of removal, it follows that the respondent is now entitled to asylum under INA §

208(b)(1)(B)(i).

Accordingly the following order shall enter:



 **U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**TATUNG, CELESTINE**                    **DHS/ICE Office of Chief Counsel - AUR**
**TATUNG & TATUNG ASSOCIATES LLC**       **12445 East Caley Avenue**
**9701 APOLLO DRIVE**                    **Centennial, CO 80111-5663**
**Suite 331**
**LARGO, MD 20774**


**Name:** ▇▇▇▇▇▇▇▇           **A** ▇▇▇▇▇▇▇

**Date of this notice: 9/30/2020**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Geller, Joan B

Userteam: Docket

E0039 

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**DHS/ICE Office of Chief Counsel - AUR**
**12445 East Caley Avenue**
**Centennial, CO 80111-5663**

**Name:** ███████████                    **A** ████████████

**Date of this notice: 9/30/2020**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. §1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Geller, Joan B

Userteam:

E0040

**U.S. Department of Justice**                                    Decision of the Board of Immigration Appeals

Executive Office for Immigration Review

Falls Church, Virginia 22041

File: A[redacted] – Aurora, CO                    Date:   **SEP 3 0 2020**

In re: [redacted]

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:  Celestine Tatung, Esquire

ON BEHALF OF DHS:  Carmen F. Rickard
                   Assistant Chief Counsel

APPLICATION:  Asylum; withholding of removal; Convention Against Torture

The respondent, who is a native and citizen of [redacted] appeals the Immigration Judge's March 12, 2020, decision denying his application for asylum, withholding of removal, and protection under the Convention Against Torture. *See* sections 208(b)(1)(A), 241(b)(3)(A) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A); 8 C.F.R. §§ 1208.16(c)-1208.18. The Department of Homeland Security (DHS) has filed a motion for summary affirmance. We will dismiss the appeal.

We review findings of fact determined by an Immigration Judge, including credibility findings, under a "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i). We review questions of law, discretion, and judgment, and all other issues in appeals from decisions of Immigration Judges de novo. 8 C.F.R. § 1003.1(d)(3)(ii). The Immigration Judge found the respondent credible.

The respondent's claims are based on an [redacted]

Preliminarily, the respondent argues on appeal that his proceedings lacked due process because he did not have an interpreter. The respondent indicated on his asylum application that he speaks English fluently (Exh. 3). When the Immigration Judge asked what his best language is, the respondent replied that it is English (Tr. at 1). The transcript indicates that the respondent responsively answered the questions asked of him. The one time the Immigration Judge indicated she could not understand the respondent was when he was speaking too close to the microphone (Tr. at 19). The Immigration Judge asked the respondent to repeat what he said, and he did so (Tr. at 19-20).

All of the instances the respondent cites where he stated he did not understand something seem to reflect that he did not follow the point of the DHS attorney's questions, not that he did not understand the spoken English (Tr. at 24-25, 28, 30). In each instance, the DHS attorney rephrased the question and the respondent answered responsively. The respondent has not established that

A

there was any impactful communication difficulty during his hearing. We conclude that he had a full and fair opportunity to present his claims to the Immigration Judge. *See generally Hadjimehdigholi v. INS*, 49 F.3d 642, 649-50 (10th Cir. 1995) (finding less than perfect translation by the interpreter did not hamper the alien's ability to present his case, particularly since the "attorney asked follow-up questions which elicited clarifying responses").

We adopt and affirm the decision of the Immigration Judge. *See Matter of Burbano*, 20 I&N Dec. 872, 874 (BIA 1994). We are not persuaded by the respondent's argument that the Immigration Judge misconstrued his testimony about believing
The respondent was explicitly asked,
and he replied, "No, I don't believe." (Tr. at 25). The respondent did not have a reasonable explanation when confronted with the discrepancy between that testimony and the crux of his claim, which is that

The respondent bears the burden to establish his eligibility for asylum and withholding of removal under the Act, and that burden includes demonstrating that the mistreatment he suffered, or may suffer in the future, bears a nexus to a protected ground, which in this case he asserts is imputed political opinion. Section 208(b)(1)(B)(i) of the Act. The lack of congruity in the respondent's account undermines his showing on the issue of nexus. If
In light of this lack of congruity, the other evidence such as the assertion that
is insufficient to meet his burden to show that imputed political opinion was, or would be, a central reason for the government's mistreatment of him.

Finally, the respondent has not shown clear error in the Immigration Judge's finding that he does not have a clear probability of being tortured (IJ at 6). The respondent testified that he thinks government officials
(Tr. at 31). He has not met his burden to show eligibility for protection under the Convention Against Torture. *See generally Matter of J-F-F-*, 23 I&N Dec. 912, 917 (A.G. 2006) (holding that an applicant for protection under the Convention Against Torture bears the burden to establish that each "step in this hypothetical chain of events is more likely than not to happen.").

Accordingly, we will dismiss the appeal.

ORDER: The appeal is dismissed.

NOTICE: If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $813 for each day

2

E0042

A

the respondent is in violation. *See* section 274D of the Immigration and Nationality Act, 8 U.S.C.
§ 1324d; 8 C.F.R. § 280.53(b)(14).

FOR THE BOARD

E0043


UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
3130 NORTH OAKLAND STREET
AURORA, CO 80010

| In The Matter Of: | ) | Date: March 12, 2020 |
|---|---|---|
| | ) | |
| | ) | |
| | ) | IN REMOVAL |
| **Respondent.** | ) | PROCEEDINGS |
| | ) | |
| **File No.:**   A# | ) | DETAINED |

**CHARGE:** Section 212(a)(7)(A)(i)(I) of the INA, in that at the time of application for admission, the alien was not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document as required by the Act.

**APPLICATIONS:** Asylum pursuant to INA § 208; Restriction/Withholding of Removal pursuant to INA § 241(b)(3); Relief under the United Nations Convention Against Torture pursuant to 8 C.F.R. §§ 1208.16(c), 1208.17, 1208.18.

**ON BEHALF OF RESPONDENT:**
Rajan Dhungana, Esq.
Sahara Legal Group
11138 Del Amo Boulevard, Suite 360
Lakewood, CA 90715

**ON BEHALF OF THE DEPARTMENT:**
Daniel McIntyre, Asst. Chief Counsel
U.S. Department of Homeland Security
12445 East Caley Avenue
Centennial, CO 80111

## WRITTEN DECISION

### I.   Procedural History

, the respondent, is a thirty-one-year-old native and citizen of
Exhs. 1 and 3. On November 6, 2019, the Department of Homeland Security (Department or DHS) filed a Notice to Appear (NTA), charging the respondent as removable under section 212(a)(7)(A)(i)(I) of the INA. Exh. 1. On the same day, the Court issued a Notice of Hearing, thereby vesting jurisdiction with the Court. *See* 8 C.F.R. § 1003.14(a); *Matter of Bermudez-Cota,* 27 I&N Dec. 441 (BIA 2018).

On December 12, 2019, the respondent appeared before the Court for a master calendar hearing and admitted all factual allegations. The Court sustained the charge of removability and designated          as the country of removal, should removal become necessary. On the same day, the respondent filed a Form I-589, Application for Asylum and for Withholding of Removal. *See* Exh. 3.



On February 28, 2020, the respondent appeared for an individual hearing and testified in support of his application. For the reasons set forth below, the Court will deny the respondent's applications for asylum, restriction/withholding of removal, and protection under the Convention Against Torture.

## II. Evidentiary Record

Five exhibits were added to the record. The respondent was the sole witness to testify in his case. The Court has given thorough consideration to all evidence submitted, regardless of whether that evidence is specifically named in this decision.

## III. Credibility and Corroboration

In all applications for asylum and restriction/withholding of removal, the Court must make a threshold determination of the alien's credibility. INA §§ 208(b)(1)(B)(ii)-(iii), 241(b)(3)(C); *Matter of O-D-*, 21 I&N Dec. 1079, 1081 (BIA 1998). The following factors may be considered in assessing an applicant's credibility: demeanor, candor, responsiveness, inherent plausibility of the claim, the consistency between oral and written statements, the internal consistency of such statements, the consistency of such statements with evidence of record, and any inaccuracy or falsehood in such statements, regardless of whether it goes to the heart of the applicant's claim. INA § 208(b)(1)(B)(iii); *Matter of J-Y-C-*, 24 I&N Dec. 260, 262 (BIA 2007); *Matter of S-B-*, 24 I&N Dec. 42, 43 n. 1 (BIA 2006).

The Court is troubled by the respondent's self-serving testimony, which includes surprising happenstance and seemingly dubious events. For example, the respondent's account

▮▮▮▮▮▮▮▮▮▮▮▮

Nonetheless, the respondent's testimony about the harm he suffered in ▮ and the reasons he fled the country are internally consistent and consistent with the documentary evidence provided. Consequently, as the slender record before the Court does not establish that the respondent lacks credibility, the Court finds he is a generally credible witness.

## IV. Asylum

### A. Asylum Eligibility & Procedural Modifications Rule

The Court first finds the respondent is a member of the certified class of "all non-Mexican asylum-seekers who were unable to make a direct asylum claim at a U.S. Port of Entry before July 16, 2019 because of the Government's metering policy, and who continue to seek access to the U.S. asylum process." *Al Otro Lado, Inc. v. McAleenan*, No. 3:17-cv-02366-BAS-KSC, 2019 WL 6134601, at *20 (S.D. Cal. 2019) (enjoining application of the Asylum Eligibility and Procedural Modifications Rule to the class).

2

E0045

On December 20, 2019, the United States Court of Appeals for the Ninth Circuit temporarily stayed the preliminary injunction in *Al Otro Lado* pending fuller consideration of the government's motion to stay. *Al Otro Lado v. Wolf*, No. 19-56417, 2019 WL 7046371 (9th Cir. 2019). On March 5, 2020, the Ninth Circuit denied the government's motion to stay, thereby lifting the temporary stay. *Al Otro Lado v. Wolf*, No. 19-56417, 2020 WL 1059682 (9th Cir. 2020). As such, the Ninth Circuit's injunction of the application of the Asylum Eligibility and Procedural Modifications Rule remains in effect. *Id.* at \*12.

Here, the respondent met his burden to establish he is a member of the certified class. The respondent testified that he⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ when he traveled to a U.S. Port of Entry (POE). A U.S. immigration official advised the respondent to return to Mexican immigration officials and receive a metering number. The respondent complied and received metering number⬛⬛ A supporting affidavit corroborates the respondent's account. In his affidavit, John Edward Nash stated that he interacted with the respondent and other immigrants in Tijuana on⬛⬛⬛ during which time the respondent told him that he had been in the area for two weeks. *See* Exh. 5. The letter states that Mr. Nash received the respondent's contact information⬛⬛⬛⬛⬛⬛. *Id.* Consequently, based on the respondent's credible testimony and the corroborating evidence, the Court finds the respondent is a member of the certified class and therefore remains eligible for asylum.

## B. Asylum Law & Analysis

To qualify for a grant of asylum, an applicant bears the burden of demonstrating that he meets the statutory definition of a "refugee" as defined in section 101(a)(42) of the Act. INA § 208(b)(1); 8 CFR § 1208.13(a); *Matter of S-M-J-*, 21 I&N Dec. 722, 724 (BIA 1997). A "refugee" is a person who is outside his country of nationality or last residence, unable or unwilling to return to that country, and unable to avail himself of the protection of that country because of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *See* INA § 101(a)(42)(A); 8 C.F.R. § 1208.13(b). An applicant's testimony, if credible, may be sufficient to sustain the applicant's burden without corroboration. 8 U.S.C. § 1158(b)(1)(B)(ii); 8 C.F.R. § 1208.13(a).

An applicant alleging past persecution must establish that: (1) he suffered harm rising to the level of persecution; (2) the persecution was on account of a protected ground; and (3) the persecution was committed by the government or by a force the government is unable or unwilling to control. 8 C.F.R. § 1208.13(b)(1). An applicant who can demonstrate that he suffered past persecution is entitled to the presumption that he has a well-founded fear of future persecution. *Id.*

To establish past persecution, a respondent must demonstrate that he was persecuted "*on account of* race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42) (emphasis added); 8 C.F.R. §§ 1208.13(b)(1), (b)(2)(i)(A). In instances where the applicant is asserting an actual or imputed political opinion as the protected ground, he must establish a causal connection between the political opinion, either actual or imputed, and the past or feared harm in his country of nationality. *Matter of S-P-*, 21 I&N Dec.

3

486, 489 (BIA 1996) (citing *Handbook on Procedures and Criteria for Determining Refugee Status*, Office of the United Nations High Commissioner for Refugees para. 80, 14 (Geneva, January 1992)). In *Matter of S-P-*, 21 I&N Dec. at 494, the BIA listed several factors for courts to consider when determining the motive of a persecutor: (1) indications in the particular case that the abuse was directed toward modifying or punishing opinion rather than conduct; (2) treatment of others in the population would be confronted by government agents in similar circumstances; (3) conformity to procedures for criminal prosecution or military law including developing international norms regarding the law of war; (4) the extent to which anti-terrorism laws are defined and applied to suppress political opinion as well as illegal conduct; and (5) the extent to which suspected political opponents are subjected to arbitrary arrest, detention, and abuse.

The respondent testified th



Here, even if this past harm rises to the level of persecution, the respondent has not met his burden to show he was persecuted on account of a protected ground, specifically his imputed

4

On the record before it, the Court is unable to reconcile the respondent's account. To find



Given these inherent conflicts, the respondent has not met his burden to show *why* he was harmed, much less that such harm was on account of his
Consequently, the Court finds the respondent has not established eligibility for asylum under the INA. Although the Court would consider whether the respondent could be subjected to a pattern or practice of persecution in
he has not presented *any* evidence of country conditions to establish such a pattern. As such, the Court will deny his application for relief.

## V.    Restriction/Withholding of Removal under INA § 241(b)(3)

Restriction/withholding of removal is mandatory relief that must be granted if the applicant establishes a "clear probability" of persecution by showing it is "more likely than not" that his "life or freedom would be threatened" because of race, religion, nationality, membership in a particular social group, or political opinion if he returns to his homeland. INA § 241(b)(3); 8 C.F.R. § 1208.16; *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987).

As the respondent failed to demonstrate his eligibility for asylum, he also necessarily failed to meet the more stringent standard for restriction/withholding of removal under INA § 241(b)(3) on the same basis. *See Cardoza-Fonseca*, 480 U.S. at 450; *Matter of Mogharrabi*, 19 I&N Dec. 439, 447 (BIA 1987). No objective evidence in the record independently establishes eligibility for relief.

## VI.    Protection Under the Convention Against Torture

To qualify for relief under the Convention Against Torture, an applicant must establish that it is more likely than not that he will be tortured if he is removed to the proposed country of removal. 8 C.F.R. § 1208.16(c)(2). Torture is defined as (1) an intentional infliction of severe pain or suffering, whether physical or mental; (2) for the purpose of obtaining information or a confession, punishment of an act or a suspected act, intimidation, coercion, or for any reason based on discrimination of any kind; provided that (3) "such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1); *Matter of M-B-A-*, 23 I&N Dec. 474, 477 (BIA 2002). "Acquiescence" requires that the public official have prior awareness of the activity and "thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7); *see Karki v. Holder*, 715 F.3d 792, 806 (10th Cir. 2013) ("[W]illful blindness suffices to prove acquiescence.") (quoting *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1192 (10th

5

E0048



Cir. 2005)). Torture is "an extreme form of cruel and inhuman treatment," which "does not include lesser forms of cruel, inhuman or degrading treatment or punishment." 8 C.F.R. § 1208.18(a)(2).

For the applicant to qualify for relief under the Convention Against Torture, he would have to establish not only that it is more likely than not that individuals in          would be sufficiently motivated to seek him out anywhere in the country, but also that it is more likely than not that if they found him, they would inflict harm amounting to severe pain or suffering, and finally, that the government would turn a blind eye to such torture. *See* 8 C.F.R. §§ 1208.18(a)(1), 1208.16(c)(3); *see also Matter of J-F-F-*, 23 I&N Dec. 912, 917-18 (A.G. 2006) (holding that eligibility cannot be established by simply stringing together a series of suppositions to show that torture is more likely than not to occur, unless the evidence shows that each step in the hypothetical chain of events is more likely than not to happen). In assessing whether the applicant has met his burden, all relevant evidence shall be considered, including, but not limited to: (1) evidence of past torture inflicted upon the applicant; (2) evidence that the applicant could relocate to a part of the country where he will not likely be tortured; (3) evidence of gross, flagrant, or mass violations of human rights within the proposed country of removal; and (4) other relevant information regarding country conditions in the proposed country of removal. 8 C.F.R. § 1208.16(c)(3).

The respondent has not met his burden to show that it is more likely than not he would be tortured upon his return to          The respondent argues that the          government, specifically the military, would find and torture him upon his return to the country. Nonetheless, the respondent submitted no country conditions evidence to support his claim and presented negligible and general arguments about his eligibility. Additionally, there is insufficient evidence the military continues to look for the respondent or would seek him out if he were to return to          In fact, the respondent managed to escape unscathed through the          airport. As such, the respondent has not established a likelihood of torture if he returns to          .

Accordingly, the Court will enter the following orders:

## ORDERS

IT IS HEREBY ORDERED that the respondent's application for asylum pursuant to INA § 208 be DENIED.

IT IS FURTHER ORDERED that the respondent's application for restriction/withholding of removal pursuant to INA § 241(b)(3)(A) be DENIED.

IT IS FURTHER ORDERED that the respondent's application for protection under the Convention Against Torture be DENIED.

IT IS FURTHER ORDERED that the respondent shall be removed to

FAILURE TO DEPART: The Court has ordered you removed from the United States. If you willfully fail or refuse to apply for the required travel documents to depart the United States, to

6

E0049

present yourself for removal as instructed, to depart the United States as instructed, or to take any action, or conspire to take any action, to prevent or hamper your departure, you will be subject to a civil monetary penalty of not more than $500 per day you are in violation. INA §§ 240(c)(5), 274D(a); 8 C.F.R. § 1240.13(d).

APPEAL RIGHTS: Both parties have the right to appeal the decision in this case. Any appeal is due to the Board of Immigration Appeals on or before thirty (30) calendar days from the date of service of this decision.

Date: March 12, 2020

Nina M. Carbone
Immigration Judge

7

E0050



U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**Hollithron, Henry D.**
**Hollithron Advocates, P.C.**
**4155 E Jewell Ave, Ste 310**
**Denver, CO 80222**

**DHS/ICE Office of Chief Counsel - AUR**
**12445 East Caley Avenue**
**Centennial, CO 80111-5663**

**Name:** ███████████        **A** ███████████

**Date of this notice: 10/23/2020**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

**Panel Members:**
**Liebowitz, Ellen C**

Schuetze
Userteam: Docket

E0051

U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

5107 Leesburg Pike, Suite 2000
Falls Church, Virginia 22041

**DHS/ICE Office of Chief Counsel - AUR**
**12445 East Caley Avenue**
**Centennial, CO 80111-5663**

**Name:**                              **A**

**Date of this notice: 10/23/2020**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. §1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

Donna Carr

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Liebowitz, Ellen C

Userteam:

E0052

**U.S. Department of Justice**                                    Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

File:    A            – Aurora, CO                           Date:

In re:                                                                    **OCT 2 3 2020**

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:    Henry D. Hollithron, Esquire

ON BEHALF OF DHS:    Alia A. Bullock
                     Assistant Chief Counsel

APPLICATION:    Asylum; withholding of removal; Convention Against Torture

The respondent, a native and citizen of _____ appeals from the Immigration Judge's decision dated May 1, 2020, denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture. Sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A); 8 C.F.R. §§ 1208.16(c), 1208.18. The Department of Homeland Security opposes the appeal. The appeal will be dismissed.

We review findings of fact determined by an Immigration Judge, including credibility findings, under a "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i). We review questions of law, discretion, and judgment, and all other issues in appeals from decisions of Immigration Judges de novo. 8 C.F.R. § 1003.1(d)(3)(ii).

The respondent seeks relief and protection from removal based on his claimed status as an _____ and activities with the _____ ("SCNC") (IJ at 2; Tr. at 26-27, 31). While the Immigration Judge expressed concerns regarding the respondent's testimony, the Immigration Judge found that the respondent was generally a credible witness, but that he did not sufficiently corroborate his claim to meet his burden of proving eligibility for asylum, withholding of removal, and protection under the Convention Against Torture (IJ at 3-6).

As an initial matter, we agree with the Immigration Judge's assessment of the respondent's credibility, including his concerns that the respondent did not provide specific and detailed testimony regarding his past harm, fear of returning to _____ and membership in _____ and his inconsistent testimony regarding his ethnicity and when he departed _____ (IJ at 3-4). The respondent's appellate contentions that he did provide specific testimony and that he did reasonably explain the inconsistencies are not availing, as they do not establish that the factual findings are "illogical or implausible, or without support in inferences that may be drawn from the facts in the record" (Respondent's Br. at 12-15). *Matter of A-B-*, 27 I&N Dec. 316, 341 (A.G. 2018); *see also Matter of D-A-C-*, 27 I&N Dec. 575, 579 (BIA 2019) ("An Immigration Judge 'is not required to accept a respondent's assertions, even if plausible, where there are other permissible views of the evidence based on the record." (citation omitted)).                E0053

A▮▮▮▮▮▮▮▮

We uphold the Immigration Judge's determination that the respondent did not sufficiently corroborate his otherwise credible testimony, and thus, he did not meet his burden of proving eligibility for asylum and withholding of removal (IJ at 3-5; Respondent's Br. at 17-18). The Immigration Judge's factual findings based on the evidence of record are without clear error. *See* 8 C.F.R. § 1003.1(d)(3)(i); *United States v. Nat'l Assn. of Real Estate Boards*, 339 U.S. 485, 495 (1950) (providing that a factual finding is not "clearly erroneous" merely because there are two permissible views of the evidence).

The REAL ID Act allows an applicant to rely solely on his own testimony without corroboration, but only where "the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." Section 208(b)(1)(B)(ii) of the Act; *Binbin He v. Lynch*, 607 F. App'x 826, 829-30 (10th Cir. 2015). In instances "[w]here the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain [it]." Sections 208(b)(1)(B)(ii) and 240(c)(4)(B) of the Act, 8 U.S.C. § 1229a(c)(4)(B); *Juarez-Morales v. Barr*, 819 F. App'x 630, 634 (10th Cir. 2020); *see also Matter of L-A-C-*, 26 I&N Dec. 516, 518-19 (BIA 2015) (providing that regardless of whether an applicant is deemed credible, he has the burden to corroborate the material elements of his claim where evidence is reasonably available).

Despite concerns with the respondent's credibility, the Immigration Judge found that the respondent was generally a credible witness, but that his testimony was not sufficiently specific or detailed to meet his burden of proof and thus corroborating evidence was necessary. We agree with the Immigration Judge's evaluation of the respondent's corroborative evidence, and his concerns with the respondent's failure to submit other corroborating evidence to support his claim.



In support of his claim, the respondent submitted, *inter alia*, a declaration from himself, his birth certificate, and forensic and mental health evaluations, as well as evidence of country conditions (IJ at 4; Exhs. 3-5). As the Immigration Judge found, the respondent testified that his father is ▮▮▮▮▮ ; that the respondent was born in ▮▮▮▮ , a ▮▮▮▮ region, because his mother is ▮▮▮▮ and initially indicated on his asylum application that he was from ▮▮▮▮ IJ at 4; Tr. at 27, 32, 48-49; Exh. 3). While the Immigration Judge acknowledged the respondent's testimony that he is an ▮▮▮▮ the Immigration Judge also reasonably noted that no evidence sufficiently corroborates his assertions that he is ▮▮▮▮ and that a person's ethnicity is established from his father (IJ at 4; Tr. at 48; Exhs. 4-5).

Regarding the respondent's past experiences in ▮▮▮▮ , membership in ▮▮▮▮ and threats of future harm, the Immigration Judge found that the respondent provided few details during testimony regarding his beliefs or opposition to the ▮▮▮▮ government and only testified generally that he believes ▮▮▮▮

▮▮▮▮ (IJ at 4; Tr. at 31-34, 42, 44-45, 52, 60-61). While the record contains evidence regarding ▮▮▮▮ generally, we agree with the Immigration Judge that the respondent has not submitted sufficient evidence relating to his past or future harm and

2

A█

or statements from individual familiar with his experiences and activities in███ to corroborate his claim (Exhs. 3-5).

We acknowledge that the respondent submitted his birth certificate and forensic and mental health evaluations, but both evaluations were conducted in the United States and based on the respondent's statements, and we agree that these documents do not sufficiently corroborate his particular claim regarding his past experience in███ (IJ at 4; Exh. 4, Tabs B, D, E; Respondent's Br. at 19). As the Immigration Judge reasonably noted, the respondent did not submit evidence from family, friends, or colleagues in███ corroborating his claim that he is an███ (IJ at 4-5; Exhs. 3-5). Moreover, the Immigration Judge considered the respondent's explanations and arguments that corroborating evidence was not reasonably available and did not clearly err in finding them unpersuasive (IJ at 4-5; Tr. at 54-56, 62-64). *See Matter of D-R-*, 25 I&N Dec. 445, 454 (BIA 2011) (providing that an Immigration Judge is not required to interpret the evidence in the manner advocated by the applicant).

The Immigration Judge acknowledged the difficulty in obtaining evidence from███ however, the respondent bears the burden of proof to establish his claim for relief and protection from removal (IJ at 5). *See* section 240(c)(4)(A)(i) of the Act (providing that an alien applying for relief or protection from removal has the burden of proof to establish that he satisfies the applicable eligibility requirements). We have considered the respondent's appellate contentions and are not persuaded of any error of fact or law in the Immigration Judge's determination in this regard. Because the respondent did not provide reasonably available evidence corroborating his claim, or adequately explain its absence, he is not able to carry his burden of proof. *See* sections 208(b)(1)(B)(ii) and 240(c)(4)(B) of the Act; 8 C.F.R. §§ 1208.13(a), 1208.16(b). Thus, we affirm the Immigration Judge's conclusion that the respondent did not meet his burdens of proof for asylum and withholding of removal on this basis. *See Gutierrez-Orozco v. Lynch*, 810 F.3d 1243, 1246 (10th Cir. 2016) ("[E]ven credible testimony may not be persuasive or sufficient in light of the record as a whole" to meet the applicant's burden of proof).

We also uphold the denial of the respondent's application for protection under the Convention Against Torture (IJ at 5-6; Respondent's Br. at 21-23). To be eligible for withholding of removal under the Convention Against Torture, the alien must establish that it is more likely than not that he will be tortured by a public official or a person acting in an official capacity in███, or that such an official would acquiesce in his torture. 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1).

While the respondent experienced past harm in███ he has not shown that he more likely than not would be tortured upon return, by or with the consent of the███ government, even considering country conditions (IJ at 6; Exhs. 4-5). *See* 8 C.F.R. § 1003.1(d)(3)(i); *Matter of Z-Z-O-*, 26 I&N Dec. 586, 590 (BIA 2015) (providing that an Immigration Judge's predictive findings of what may or may not occur are findings of fact, which are subject to a clearly erroneous standard of review). As the Immigration Judge found, the respondent has not shown that each link in the hypothetical chain of events leading to his claim of torture is more likely than not to occur. *See Matter of J-F-F-*, 23 I&N Dec. 912, 917-18 (A.G. 2006) (providing that the alien's claim cannot be based on speculation; rather, it must be more likely than not that the "entire chain" of posited events would occur). The respondent has

3    E0055

A

thus not established his eligibility for protection under the Convention Against Torture. *See* 8 C.F.R. §§ 1208.16(c), 1208.18; *Matter of R-A-F-*, 27 I&N Dec. 778, 779 (A.G. 2020).

Accordingly, the following order will be entered.

ORDER: The respondent's appeal is dismissed.

NOTICE: If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $813 for each day the respondent is in violation. *See* section 274D of the Immigration and Nationality Act, 8 U.S.C. § 1324d; 8 C.F.R. § 280.53(b)(14).

Allen Rubowitz
FOR THE BOARD



UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
3130 N. OAKLAND STREET
AURORA, CO 80010

| In The Matter Of: | | Date: May 1, 2020 |
|---|---|---|
| | ) | |
| | ) | |
| | ) | IN REMOVAL |
| **Respondent.** | ) | PROCEEDINGS |
| | ) | |
| **File No.:**    A# | ) | DETAINED |

**CHARGE:**    Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA), in
that at the time of application for admission, the alien was not in possession
of a valid unexpired immigrant visa, reentry permit, border crossing card, or
other valid entry document as required by the Act.

**APPLICATIONS:**    Asylum pursuant to INA § 208; Withholding of Removal pursuant to INA
§ 241(b)(3); Relief under the United Nations Convention Against Torture
(CAT) pursuant to 8 C.F.R. §§ 1208.16(c), 1208.17, 1208.18.

**ON BEHALF OF RESPONDENT:**
Henry D. Hollithron, Esq.
Hollithron Advocates, P.C.
4155 Jewell Avenue, Suite 310
Denver, CO 80222

**ON BEHALF OF THE DEPARTMENT:**
Assistant Chief Counsel
U.S. Department of Homeland Security
12445 East Caley Avenue
Centennial, CO 80111

## WRITTEN DECISION

### I.    Procedural History

Respondent) is a forty-year-old native and citizen of                 Exh. 1. The
Department of Homeland Security (Department or DHS) served Respondent with a Notice to
Appear (NTA) on December 13, 2019, alleging Respondent was not in possession of a valid
unexpired immigrant visa at the time of application for admission and charging him as removable
under INA § 212(a)(7)(A)(i)(I). *Id.* On December 14, 2019, the Department filed the NTA and the
Court issued a Notice of Hearing, thereby vesting jurisdiction with the Court. *See* 8 C.F.R.
§ 1003.14(a); *Matter of Bermudez-Cota*, 27 I&N Dec. 441 (BIA 2018).

On January 14, 2020, Respondent appeared before the Court for a master calendar hearing
and admitted all the factual allegations. Based on Respondent's admissions, the Court sustained the
charge of removability and designated Cameroon as the country of removal.



On January 27, 2020, Respondent filed a Form I-589, Application for Asylum and for Withholding of Removal. *See* Exh. 3. On April 17, 2020, Respondent appeared for an individual hearing and testified in support of his application.

For the reasons set forth below, the Court will deny Respondent's applications for asylum, withholding of removal, and protection under the CAT.

## II.    Evidentiary Record

The Record of Proceeding (Record) consists of Respondent's testimony and five exhibits. The Court has given thorough consideration to all evidence submitted, regardless of whether that evidence is specifically discussed or referenced in this decision.

Respondent testified in French. The following is a brief summary of the testimony.

Respondent testified that he was born in ███████ His father is ███████ and his mother is ███████ He ███████, but he also speaks Pidgin English.

In December 2014, Respondent started attending ███████ ███████ meetings. Respondent testified that ███████ ███████

E0058

A ████████████

████████████

Since he left in 2017, Respondent stated ████████████████████████████████████████

████████████████████████████████████████████████

## III.     Credibility and Corroboration

The Court will apply the provisions of the REAL ID Act of 2005 to Respondent's application and make a threshold determination regarding Respondent's credibility. *See* INA §§ 208(b)(1)(B)(iii); 241(b)(3)(C); *Matter of S-B-*, 24 I&N Dec. 42 (BIA 2006). In doing so, the Court will consider the totality of the circumstances and all relevant factors, including, without limitation, the demeanor, candor, or responsiveness of the applicant; the inherent plausibility of the applicant's account; the consistency between the applicant's written and oral statements and other evidence of record; the internal consistency of the testimony; the consistency between the testimony of different witnesses and other evidence of record; and any inaccuracies or falsehoods even if they do not go to the heart of the claim, so long as they are relevant. *Matter of J-Y-C-*, 24 I&N Dec. 260 (BIA 2007). An adverse credibility finding must be supported by "specific and cogent" reasons that have a legitimate nexus to the finding in the case. *Matter of A-S-*, 21 I&N Dec. 1106, 1110 (BIA 1998).

The applicant's testimony is of the utmost importance because of the difficulty he faces in procuring documentary evidence after having fled his country. *Wiransane v. Ashcroft*, 366 F.3d 889, 897 (10th Cir. 2004). Thus, an applicant's testimony, standing alone, may be sufficient to meet the burden of proof if it is demonstrably credible, persuasive, and probative of facts sufficient to demonstrate that the applicant is a refugee. *Id.*; *Matter of Dass*, 20 I&N Dec. 120, 124 (BIA 1989). However, if the applicant's testimonial evidence lacks specificity, detail, or credibility, there is a greater need for the respondent to submit corroborative evidence. *See Matter of Y-B-*, 21 I&N Dec. 1136, 1139 (BIA 1998).

Upon careful consideration of all the facts of record individually and cumulatively, including Respondent's testimony, the Court finds Respondent is generally credible. However, the Court notes that Respondent's testimony regarding his past harm and fear of returning to ████████ specifically, ███████████████████████████████████████, lacked specificity and details. Respondent provided vague testimony regarding ████████████████████ Further, the Court notes that there were discrepancies between Respondent's testimony and documentary evidence. In his credible fear interview, he told the asylum officer that he first tried to enter the United States in September 2019. Exh. 2 at 8. However, during his testimony, Respondent testified that he originally tried to enter the United States in June 2019, but Mexican immigration officials told him he needed to register with them.

Next, Respondent testified that he left ████████ in October 2017, but he told the immigration officer that he left ████████ in March 2019. Exh. 2 at 10. Respondent testified that he was confused during his interview with Border Patrol and "just wanted to leave." Finally, Respondent was inconsistent when it came to his ethnicity. During Respondent's credible fear interview he indicated that his ethnicity was ████████ however, on his I-589, he indicated that his ethnicity is ████████ Exh. 2 at 2; Exh. 3 at 1. When questioned, Respondent indicated that ████████ is a tribe or village that speaks different dialects of Pidgin English. Additionally, Respondent told the asylum officer that he would sometimes live with his mother in her village in ████████ Exh. 2 at 10. Respondent argues that during his interview he did not understand the difference between native language and ethnicity. Nevertheless, the Court finds these

3

A [redacted]

inconsistencies are insufficient to find Respondent is not overall a credible witness. Thus, the Court finds Respondent to be generally credible.

Although Respondent's testimony was credible, his testimony was not sufficiently detailed or persuasive to circumvent his need for reasonably obtainable corroborative evidence. *See Matter of Y-B-*, 21 I&N Dec. at 1139 (holding that the weaker the applicant's testimony, the greater the need for corroborative evidence). In the absence of such evidence to corroborate the cornerstones of Respondent's claim, the Court finds he has not met his evidentiary burden of proof.

An applicant bears the evidentiary burden of proof for asylum and withholding of removal under INA § 241(b)(3). INA § 208(b)(1)(B); 8 C.F.R. § 1208.13(a). Where the court determines that the applicant should "provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." INA § 208(b)(1)(B)(ii); *see Matter of S-M-J-*, 21 I&N Dec. 722, 725-26 (BIA 1997) ("The absence of such corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof."). Regardless of the credibility determination, an applicant bears the burden to "corroborate the material elements of the claim where the evidence is reasonably obtainable." *Matter of L-A-C-*, 26 I&N Dec. 516, 520-21 (BIA 2015).

The Court is concerned by Respondent's lack of corroborative evidence. The objective evidence is limited to general country conditions. Most notably, Respondent did not submit affidavits from any family members or friends to corroborate his claim that he is an [redacted] Respondent testified that he is [redacted] However, nothing in the Record indicates that a person's ethnicity birthright is automatically established from the father. *See generally* Exh. 5. He was born in [redacted] even initially indicated to the asylum officer that he was from [redacted] a [redacted] region. Respondent was educated in French and continued on to receive a degree as a dental technician. Exh. 3 at 4. Respondent testified that his brother is also an [redacted] however, he did not have his brother submit an affidavit confirming that they are [redacted]

Further, Respondent did not provide sufficient corroborating evidence regarding his [redacted] the past harm he suffered because [redacted] or threats of future harm. Respondent provided very little testimony as to [redacted] government. Respondent testified generally about his [redacted] a key element of his asylum claim, by confirming that he opposes the [redacted] but provided little detail regarding [redacted] He testified that he believes the [redacted] Additionally, Respondent provided little information about what he hoped to [redacted]

Moreover, Respondent testified th[redacted]

A

information. He further explained that the lawyer told him that it was not a good time to contact his family because there were police everywhere. However, when asked why he did not contact his brother himself, he stated that he did not have his brother's contact information. Respondent testified that his brother

However, Respondent did provide a letter from his brother confirming this. Finally, Respondent stated that he did not want to contact his mother because he was worried about her due to her age. However, Respondent contacted her each time he needed money during his travels from _____ to the United States.

The Court recognizes the difficulty of obtaining evidence from a country like _____ Nonetheless, as Respondent carries the burden of proof, the Court cannot find that Respondent has met his burden to provide "a believable, consistent, and sufficiently detailed claim so as to provide a plausible and coherent account of the basis for his alleged fear." *See* 8 C.F.R. §§ 1208.13(a), 1208.16(b); *Matter of Y-B-*, 21 I&N Dec. at 1139 (citing *Matter of E-P-*, 21 I&N Dec. 860 (BIA 1997)).

Consequently, the Court finds Respondent has not met his burden of proof or persuasion, and failed to submit reasonably obtainable corroborative evidence. Thus, Respondent did not met his evidentiary burden for asylum. INA § 208(b)(1)(B); 8 C.F.R. § 1208.13(a).

## IV.   Withholding of Removal under INA § 241(b)(3)

Respondent's application for withholding of removal relies on the same facts as his application for asylum. However, the evidentiary record only includes generalized country conditions. Consequently, the Court finds that Respondent has not met his evidentiary burden for withholding of removal under INA § 241(b)(3). *Matter of S-M-J-*, 21 I&N at 725-26; *Matter of L-A-C-*, 26 I&N Dec. at 519-20.

## V.   Withholding of Removal under the United Nations Convention Against Torture

To qualify for relief under the Convention Against Torture, the respondent must establish that it is more likely than not that he will be tortured if he is removed to the proposed country of removal. 8 C.F.R. § 1208.16(c)(2). Torture is "an extreme form of cruel and inhuman treatment," which "does not include lesser forms of cruel, inhuman or degrading treatment or punishment." 8 C.F.R. § 1208.18(a)(2).Torture is defined as (A) an intentional infliction of severe pain or suffering, whether physical or mental; (B) for the purpose of obtaining information or a confession, punishment of an act or a suspected act, intimidation, coercion, or for any reason based on discrimination of any kind; provided that (C) "such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1); *Matter of M-B-/-*, 23 I&N Dec. 474, 477 (BIA 2002). "Acquiescence" requires that the public official have prior awareness of the activity and "thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7).

In the present case, Respondent fears torture from the _____ government—specifically _____ military and law enforcement officers who Respondent claims will torture him upon his return to _____. Although country conditions describe isolated instances of "torture and abuse by security forces including in military and unofficial detention facilities," the evidence in the Record does not satisfy Respondent's high burden to show that he would "more likely than not" be subjected to such torture with the acquiescence of the _____ government.

5

E0061



*See generally* Exh. 5. The ███ constitution and law prohibit torture and other cruel, inhuman, or degrading treatment. *Id.* at 36 (noting that the Constitution provides that "under no circumstances shall any person be subjected to torture, to cruel, inhuman or degrading treatment"). The Court acknowledges the past harm Respondent has suffered; however, there is insufficient evidence that ███ Although Respondent testified that ███ no evidence was provided to corroborate this claim. Thus, based on the totality of the circumstances, the Court finds that Respondent has not established it is more likely than not that he will be tortured with the consent of the government upon his return to ███. *Matter of J-F-F-*, 23 I&N Dec. 912, 917-18 (A.G. 2006) (holding that eligibility cannot be established by simply stringing together a series of suppositions to show that torture is more likely than not to occur, unless the evidence shows that each step in the hypothetical chain of events is more likely than not to happen). Therefore, the Court finds Respondent has not met his burden to establish he qualifies for protection under the Convention Against Torture.

Accordingly, the Court will enter the following orders:

## ORDERS

IT IS HEREBY ORDERED that Respondent's application for asylum pursuant to INA § 208 is DENIED.

IT IS FURTHER ORDERED that Respondent be removed to 

IT IS FURTHER ORDERED that Respondent's application for withholding of removal pursuant to INA § 241(b)(3)(A) is DENIED.

IT IS FURTHER ORDERED that Respondent's application for relief pursuant to the Convention Against Torture pursuant to 8 C.F.R. §§ 1208.16(c), 1208.17, 1208.18 is DENIED.

APPEAL RIGHTS: Both parties have the right to appeal the decision in this case. Any appeal is due to the Board of Immigration Appeals on or before thirty (30) calendar days from the date of service of this decision.

Date: May 1, 2020

Honorable Matthew W. Kaufman
Immigration Judge

E0062



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**Tumanjong, Blaise F.**
**Fru Law Firm LLC**
**14603 Windy Creek**
**Helotes, TX 78023**

**DHS - ICE Office of Chief Counsel –**
**OAKDALE 2**
**1010 E. Whatley Rd.**
**OAKDALE, LA 71463**

**Name:** ███████████

**A** ████████

**Date of this notice: 7/29/2020**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Swanwick, Daniel L.

Userteam: Docket

E0063





**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**DHS - ICE Office of Chief Counsel -
OAKDALE 2
1010 E. Whatley Rd.
OAKDALE, LA 71463**

**Name:**                                    **A**

**Date of this notice: 7/29/2020**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. §1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Swanwick, Daniel L.

Userteam:

E0064

**U.S. Department of Justice**                    Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

File:  A██████████ – Oakdale, LA              Date:

In re: █████████████                                    JUL 2 9 2020

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:   Blaise F. Tumanjong, Esquire

APPLICATION:   Asylum; withholding of removal; Convention Against Torture

The respondent, a native and citizen of Cameroon, appeals the Immigration Judge's decision
dated February 11, 2020, denying his applications for asylum under section 208(b)(1)(A) of the
Immigration and Nationality Act, 8 U.S.C. § 1158(b)(1)(A), withholding of removal under section
241(b)(3) of the Act, 8 U.S.C. § 1231(b)(3), and for protection under the Convention Against
Torture, 8 C.F.R. §§ 1208.16-.18. The respondent's appeal will be dismissed.

We review findings of fact, including credibility findings, for clear error.
8 C.F.R. § 1003.1(d)(3)(i). We review questions of law, discretion, or judgment, and all other
issues de novo. 8 C.F.R. § 1003.1(d)(3)(ii).

On appeal, the respondent argues that the Immigration Judge erred in finding him not credible
and in failing to determine that he suffered past persecution and has a well-founded fear of future
persecution in ██████ on account of his support for greater political rights for ████████
citizens of ████████   See generally Respondent's Br. at 7-15. He also argues that the
Immigration Judge who heard his merits case was not impartial because he incorporated into the
decision certain facts not in evidence relating to his and his sister's departures from █████████
Id. at 16; see note 1 infra.

We discern no clear error in the Immigration Judge's adverse credibility finding (IJ at 9-13).
8 C.F.R. § 1003.1(d)(3)(i). The Immigration Judge based the adverse credibility finding on
specific and cogent reasons, i.e., the fact that the respondent's asylum application and his
statements to a border patrol officer were inconsistent with his testimony and corroborative
evidence.[1] See section 208(b)(1)(B)(iii) of the Act; see also Wang v. Holder, 569 F.3d 531, 537-
38 (5th Cir. 2009) (holding that under the REAL ID Act, considering the totality of the

---

[1] The respondent challenges the Immigration Judge's references to the respondent's sister's entry
into the United States and the respondent's use of his own ████████ passport to leave his
country (IJ at 15-16). He disputes both of these factual findings (Respondent's Br. at 16-17; see
also id. at Exh. 4 (respondent's statement)). (He also submits on appeal an affidavit of his sister
which does not address the issue of her presence in the United States. We decline to consider this
evidence since it was not made a part of the record below.) We acknowledge the respondent's
appellate contentions regarding the lack of evidentiary support for these factual findings by the
Immigration Judge. But we do not read the Immigration Judge's decision as incorporating the

E0065



circumstances and all relevant factors, a fact finder in an asylum claim may base an adverse credibility determination on any inconsistency, regardless of whether the inconsistency goes to the "heart of the claim"); *Matter of J-Y-C-*, 24 I&N Dec. 260, 262 (BIA 2007) (finding that the Immigration Judge properly considered the totality of the circumstances in determining that the respondent lacked credibility based on his inconsistent statements, implausible testimony, and a lack of corroboration).

Specifically, the respondent based his asylum application of his fear of ▉▉▉▉ government officials, who he said mistreated him when he participated in an October 2017 demonstration, and then killed his father, arrested him, and beat him in a November 2018 raid seeking separatists (Exh. 2). He indicated he sought no medical attention for any physical injuries stemming from these incidents, and denied any other harm in ▉▉▉▉ during an interview with an asylum officer. *See* Tr. at 76; Exh. 5. However, this is contradicted by Exh. 4, Tab 13, a medical certificate indicating that the respondent was hospitalized after a beating in October 2018, and that he spent 5 days recuperating in the hospital (IJ at 3-6). Neither the October 2018 attack nor the hospitalization was mentioned by the respondent in the written application or in the interview with the asylum officer. He was asked about this discrepancy during the hearing, and after pausing for "many minutes," he stated that he did not discuss the October 2018 incident because he was attacked by separatists, not the government (IJ at 5; Tr. at 39, 63). He reiterates this on appeal, stating that he does not fear the separatists (Respondent's Br. at 12). But this explanation is unconvincing, given that the asylum officer specifically asked how many times he was physically harmed in ▉▉▉▉ (without qualifying by whom), and the respondent did not mention the October 2018 incident. *See* Exh. 5 at 5. This omission is significant given that the alleged October 2018 beating occurred right before the alleged raid on his home, and since it resulted in arguably the most significant injuries incurred by the respondent, requiring a 5-day hospital stay. Moreover, the respondent explained his surprise at being confronted with this document by explaining that his mother submitted the document to his attorney without his knowledge (Tr. at 81). But his mother's statement makes no mention of this October 2018 incident or the respondent's hospitalization (Exh. 4-8).

Thus, considering the totality of the circumstances and all relevant facts, we affirm the Immigration Judge's adverse credibility finding. Section 208(b)(1)(B)(iii) of the Act; *Matter of J-Y-C-*, 24 I&N Dec. at 260; *see also Efe v. Ashcroft*, 293 F.3d at 903.

We are unconvinced by the respondent's appellate argument that the Immigration Judge was not impartial and that he displayed bias during the hearing below. Respondent's Br. at 16-17.

---

factual findings about the respondent's and his sister's travels into the adverse credibility determination. Rather, the record reflects that these factors were considered in the context of whether the respondent had a well-founded fear of future persecution, or whether he faced a probability of torture, considering his and his sister's ability to travel out of ▉▉▉▉ on their own identity documents (IJ at 15-16). We therefore do not find reason to disturb the adverse credibility determination, because, as explained herein, the discrepancy regarding the respondent's alleged attack in October 2018 is present in the record, it is significant, and it is probative of a lack of credibility. The respondent's explanation for this discrepancy is inadequate, as discussed herein.

E0066

A█████████

While it is true that the Immigration Judge strongly admonished the respondent not to provide untrue testimony and believed that he had submitted a false document in the form of the medical certificate, the record as a whole does not reflect bias or a lack of impartiality. The Immigration Judge's statements about and directives over the proceedings below were within his broad discretion to conduct removal proceedings, to set filing deadlines, admit and consider relevant and probative evidence, and to create and control the record of proceedings. 8 C.F.R. §§ 1003.31(c), 1003.36.

As the respondent was properly found to have provided incredible testimony, it follows that he has not satisfied his burden of proving eligibility for asylum or for withholding of removal. *See* 8 C.F.R. § 1208.13(a); *see also Matter of M-S-*, 21 I&N Dec. 125, 129 (BIA 1995) (holding that a persecution claim that lacks veracity cannot satisfy burdens of proof necessary to establish eligibility for asylum or withholding of removal).

Because the respondent did not challenge the Immigration Judge's denial of his request for protection under the Convention Against Torture, we deem this issue waived. *See Matter of R-A-M-*, 25 I&N Dec. 657, 658 n.2 (BIA 2012) (when an applicant fails to substantially appeal an issue addressed in an Immigration Judge's decision, that issue is waived before the Board); *Matter of Cervantes*, 22 I&N Dec. 560, 561 n.1 (BIA 1999) (expressly declining to address an issue not raised by a party on appeal).

Accordingly, the appeal will be dismissed on the entry of the following order.

ORDER: The respondent's appeal is dismissed.

NOTICE: If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $813 for each day the respondent is in violation. *See* Section 274D of the Immigration and Nationality Act, 8 U.S.C. § 1324d; 8 C.F.R. § 280.53(b)(14).

FOR THE BOARD

3

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
OAKDALE, LOUISIANA

File:  A                                                    February 11, 2020

In the Matter of

                                    )
                                    )        IN REMOVAL PROCEEDINGS
                                    )
                                    )
RESPONDENT

CHARGE:          Removable under Section 212(a)(7)(A)(i)(I) of the Immigration and
                 Nationality Act.

APPLICATIONS:    Withholding of Removal and Protection under the Convention
                 against Torture.


ON BEHALF OF RESPONDENT: BLAISE TUMANJONG

ON BEHALF OF DHS: MAHOGANY WATKINS


ORAL DECISION OF THE IMMIGRATION JUDGE

PROCEDURAL AND FACTUAL HISTORY

On September 24, 2019, the Department of Homeland Security and Immigration

and Customs Enforcement, hereinafter Department, personally served the respondent

with his Notice to Appear, alleging the respondent was a native and citizen of

             that he applied for admission at Calexico West, California, on August 21,

2019.  He did not possess a valid immigrant visa, re-entry permit, border crossing card,

E0068

or any other valid entry document. On these bases, the Government alleged that the respondent was, in fact, removable pursuant to Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act.

At a hearing held on October 22, 2019, the respondent admitted the factual allegations against him in the NTA. The Court sustained the charge of removability and did find that he was, in fact, removable by clear and convincing evidence to the country of ▇▇▇▇▇ The Court then reset his case for him to turn in his application, which he did, on November 20, 2019. The respondent appeared in court and submitted his completed application, and then the Court reset this case for merits, which was held today, February 11, 2020. The Court held a merits hearing. The respondent testified in support of his application.

As a preliminary matter, the Court would note the respondent's case is being adjudicated in the Fifth Circuit. Therefore, the Fifth Circuit addendum will be provided at Exhibit No. ~~seven7~~. The first exhibit in this case is the Notice to Appear. The second exhibit is the 589 of the respondent. Third exhibit is the Government's documents. The fourth exhibit are the respondent's documents. The credible fear interview is at Exhibit five~~5~~. And the respondent's motion to continue at Exhibit six~~6~~. ~~Fifth Circuit addendum will be marked as Exhibit 7~~.

## CREDIBILITY

Considering the totality of the circumstances and all relevant factors, the trier of fact may base a credibility determination on the demeanor, candor, and responsiveness of the applicant, pursuant to INA Section 240(c)(4)(C). The Court also considers the inherent plausibility of the applicant or witness' account as well as any inconsistencies between the applicant and witness' written and oral statements whenever made and

A2                2                February 11, 2020

whether or not under oath and considering the circumstances under which the
statements were made. The Court also considers the internal inconsistency of
statements with other evidence in the record, including the reports of the Department of
State on country conditions. The Court also considers any inaccuracies or falsehoods
in those without regard to whether the inconsistency, inaccuracy, or falsehood goes to
the heart of the applicant's claim or other relevant inconsistencies and factors.

There is no presumption of credibility. However, if no adverse credibility
determination is made, then the witness would have the rebuttable presumption of
credibility on appeal. However, in this case, that is not the case at all. The Court is
going to find the respondent has adverse credibility and will delineate its reasons in
particular.

Exhibit 4, tab 13 is the respondent's medical document concerning an October
2018 hospital visit, which was submitted without an original document, but rather as a
photocopy not original. This document was provided to the Court today after the
respondent was sworn to his application and that all of the documentation he was
providing to the Court would be true and correct to the best of his knowledge.
Nevertheless, this document at tab 13 was submitted for the hearing today. The Court
notes that Tthere was absolutely no discussion in the respondent's testimony here in
court or in his credible fear or in his 589 regarding any incident involving being detained
or harmed anywhere near October 29, 2018, or being incapacitated in the hospital for a
period of five days, where he would have sustained wounds, contusions, and bruises.
This medical document was provided to the respondent allegedly on November 5, 2018.
That would have been approximately 15 days or 16 days before his father was allegedly
murdered at the hands of ████████ police forces, very close in time.

This medical document and any discussion therein was not provided to the Court

A ██████████                              3                    February 11, 2020

prior to his testimony or in a credible fear where he had an interview with the asylum

officers which lasted approximately one hour and 15 minutes.  Importantly, in exhibit 5

Oon page 5 of 9, the respondent indicated that he had been harmed physically in his

home country.  It did not indicate whether it was at the hands of ███████ orces or at

███████ which is what the respondent later told the Court after being

asked questions about exhibit 4 tab 13. Respondent's testimony is, that this medical

record. itsupports a claim of harm that ███████████ However, the

Court does not find his testimony to that explanation to be plausible or credible but

rather subterfuge to cover for a false document submitted to the court that doesn t

comport with his previous history of physical injury .-

————The respondent was questioned were you physically harmed? -

Answer: yes.

How many times were you physically harmed in your country?

Five times.

Dates of the physical harm was the question.

████████████████████████

*Note Bene:* The respondent did not include the dates that he was allegedly harmed by

███████████████ This is quite important, because this goes to

the heart of the respondent's claim, as that he was being harmed in his home country

and therefore, fled persecution wheth███████████████

████████ .

A███████                          4                    February 11, 2020

Formatted: Font: Italic

Now, the respondent stated multiple times in his credible fear and in his application that he was a sympathizer with the ▮▮▮▮▮ fighting forces, which have been considered by some, to include the ▮▮▮▮▮ overnment, to be using violence in order to become ~~engage in being~~ independent from the country State of ▮▮▮▮▮ Nevertheless, the Court does not delineate between these two entities or the political causes of each party, but rather that the respondent did not testify truthfully when he appeared before the Court today. He told the asylum officers that he was harmed twice in 2017 and November 2018 and left out the hospitalization in October 2018. Coincidentally, this October 2018 incident is the only incident the respond has a medical record for and apparently it came as a result of the separatists fights whom he supports.

~~Respondent~~ He ~~was~~ questioned about this hospitalization and medical document in October 2018 by his own counsel, and his own counsel was even surprised that this medical document was ~~also was~~ included at Exhibit 4, tab 13, ~~which includes this medical documentation.~~ The respondent pondered for many minutes while looking at this document and ~~did not understand what it actually was,~~ then came up with the ~~some~~ explanation ~~conclusion~~ that this document provided was because he had been attacked by separatists, as opposed to ▮▮▮▮▮ ghters.

~~In reality, the respondent had never discussed this ever before, whether under oath at his asylum interview or during his credible fear interview or in his 589. He did not mention any discussion of anyone else attacking him or being hospitalized.~~ In fact, the respondent had just testified, on both occasions where he was detained in 2017 and 20189, that he was not hospitalized at all, and most importantly never sought hospitalization treatment. In reality, the respondent had never discussed this October

A▮▮▮▮▮                              5                    February 11, 2020

28. 2018 event ever before, whether under oath at his asylum interview or during his

credible fear interview or in his 589. He did not mention any discussion of anyone else

attacking him or being hospitalized with respect to this new medical document.

_____ So it came as a great surprise to the Court that the respondent would then

produce a medical documentation at Exhibit No. 4, tab 13, that provides that the

respondent was, in fact, detained in in a hospital for a period of five days, under the

care of a doctor by the name of Cyprus Emba_ [phonetic sp.]. Now, this medical

document was not actually produced, but in reality, it is in an original format but but

rather just a photocopy of it.

But the simple fact of the matter is that respondent did not delineate any these

actual injuries or cause of action that would have indicated that he would have been

harmed or injured other than when he was injured or caused to be harmed by

███████ ghting forces. The fact that the respondent did not include this

information and then tried to, later on in his direct testimony, double down on this tale

and declare that, in fact, his mother had provided this document to the Court and that he

was unaware of its being included into the record. Well, that is not simply the case, not

only because not only did the respondent provided it here today and swore ear to the

application and all his documentscease that , that these were the documents he would be

submitting and that they were all true and correct to the best of his knowledge -but he

declined to swear off this false document, as it was submitted, to be a fraud, which the

Court does find it to be a fraud now -

In totality. Simply put, the respondent submitted no other medical documentation,

whether it be from 2017, 2018, or 2019, for any attacks by ██████ forces nor did he

include any photographs, any other testimony from any other witnesses, or any other

documentation to indicate that he was ever in detention or that he had ever been

A ███████                          6                     February 11, 2020

harmed by the hands of the ████████

A ██████                    7                February 11, 2020

government.

Simply put, the only medical document that the respondent did provide that indicates he was detained for a period of five days at the hands of the separatsts in October 2018 and it now appears to be a fraud at that since he now states his family or Mother must have submitted it and he didn't do so. is a fraud.

The Court finds that the respondent's application. therefore. will be denied on the basis of adverse credibility and that the Court does find that respondent specifically did include this document in his documentation and it is, in fact, a falsehood.

The explanation provided by the respondent is not plausible at all. In his 589, his testimony and other medical documents, and later, the lack of photos or other documentary evidence to show that this incident or any other had actually occurred is not plausible. The respondent, after being caught having submitted a document that was not, in fact, true a reality simply stated that he was attacked again, yet this time by separatist forces because had already locked down his ████ orces incidents and wasn't able to go back and add a new hospitalization at the hands of ████ orces.

Respondent and had already testified decided that even though he was a separatist supporter and enthusiast of that cause, decided not to tell the court include that as that he had been persecuted by separatist fights having been persecuted at the hbut only at the hands of ands of the ████ government, or anyone else for that matter while in the country of ████ That simply does not wash.

The court invokes the old Latin legal maxim here. Falsus in uno, Faulus in omnibus. *The Santissima Trinidad,* 20 U.S. 283 (1822) If the respondent was harmed by separatist fighters then why was his still a supporter and furthermore why did they do him harm when in fact he was a sympathizer and supporter of their cause.

A█████                                    8                         February 11, 2020

In reality, what happened, the Court is convinced, is that the respondent respondent's family members or his own mother submitted this contrived medical document to bolster his claim of persecution despite the frivolous warning, but it which is a complete and utter fraud, and the court finds there is that there is no independent corroborative documentation or evidence to indicate that any of this ever actually occurred. The Court finds this medical document is a rather a very poor attempt to mislead the Court in the attempt to bolster his application for asylum by presenting a medical record the fact that he had been wounded or attacked by someone, by whom is unknown, which it does not state in the medical document and had obtained wounds, contusions, or other bruises on the November 5, 2018, some 15 or 16 days prior to his father allegedly being murdered.

The Court Moreover, one would is not persuaded wonder why that the respondent would seek to secret this new separatist attack from the asylum officer and even the Court when, if in fact, he is actually fleeing persecution in ████████ There is simply no reason to do so as it is a fatal mistake to mislead the Court with a completely contrived medical document about a completely contrived hospital visit.

Formatted: Space After: 10 pt, Line spacing: Multiple 1.15 li, Tab stops: Not at 0.5" + 6.5"

—And Pursuant to the Matter of

████████                          9                    February 11, 2020

Mogharrabi, the Court would deny his relief on the basis that

he has not testified truthfully here today.  The Court finds that the respondent's

explanation implausible and misleading at best.

Respondent's application, therefore, will be denied on the basis of adverse credibility

and that the Court does find that respondent specifically did include this false document

in his case.

Formatted: Space After: 10 pt, Line spacing: Multiple 1.15 li, Tab stops: Not at 0.5" + 6.5"

### ASYLUM, WITHHOLDING AND CAT

Formatted: Centered, Space After: 10 pt, Line spacing: Multiple 1.15 li, Tab stops: Not at 0.5" + 6.5"

There is no issue with respect to the filing deadline in this case.  The respondent did not seek asylum in any country prior to his arrival in the United States.  It does not appear that the respondent submitted any documentation to indicate that he had. Therefore, the Court is not going to consider the respondent's asylum case today, but rather would consider it to be a withholding of removal and withholding of removal pursuant to the Convention against Torture.

The burden of proof is always upon the applicant to establish that he is a refugee within the meaning of the Act.  The respondent did not submit his passport here today; however, he did submit an identity card, his birth certificate, and a driver's license. Therefore, the Court does not see that there is any issue with respect to the identity of the respondent as a native and citizen of ▆▆▆▆  However, this does not mean that the respondent met his burden with respect to clear probability that he would be harmed or persecuted in his country of removal, which is ▆▆▆▆

To establish a withholding of removal claim, the applicant must establish a clear probability his life or freedom would be threatened in the country directed for removal on account of race, religion, nationality, membership in a particular social group, or political opinion.  See INA Section 241(b)(3)(A).  The Court did not hear any testimony or evidence or a written response from the respondent as to him being a member of any

▆▆▆▆                                    10                    February 11, 2020

particular social group and therefore, will not analyze that.  However, it could be

inferred, because of the respondent's testimony, that he was an ██████

sympathizer or supporter that, therefore, his political opinion may be in opposition to the

government of ██████

**Formatted:** Space After: 10 pt, Line spacing: Multiple
1.15 li, Tab stops: Not at 0.5" + 6.5"

A ██████                    11                    February 11, 2020

———This means that he must establish it is more likely than not that he would be subject to

persecution on account of one the specified grounds in the statute. Persecution is defined as the threat of life or freedom or the infliction of harm or suffering upon those who differ in a way as regarded as offensive. This comes from the Matter of Acosta. The applicant must establish race, religion, nationality, membership in a particular social group, or political group was or will be at least one central reason for persecution. See INA Section 208(b)(1)(B)(i). The applicant must also establish that persecution was or will be inflicted by the government of the country of removal or by individuals which the group is unable to control or unwilling to control. That also comes from Acosta.

Withholding of removal is not a discretionary form of relief. If the applicant establishes eligibility, the application must be granted. See INA Section 241(b)(3). An applicant may qualify for withholding of removal if he suffered past persecution. See 8 C.F.R. Section 1208.16(b)(1). The applicant who is found to establish past persecution is also presumed to have a fear of future persecution. That presumption may be rebutted if the Department demonstrates a preponderance of the evidence, either the fundamental change in the circumstances or the applicant could avoid future persecution by relocating to another part of the country and that it would be reasonable to expect him to do so. That also comes from 8 C.F.R. Section 1208.16(b).

Applicant may also qualify for withholding of removal if his life or freedom would be threatened in the future. The applicant must establish it is more likely than not he would be persecuted on the account of race, religion, nationality, membership in a particular social group, or political opinion. There is no fear of persecution if the applicant could avoid future persecution by relocating to another part of the country and that it would be reasonable to expect him to do so.

A███████                          12                    February 11, 2020

E0079

In this case, the Court does not find that respondent suffered past persecution. In particular, the respondent did not submit any medical evidence or any documentation or photographs or any testimony that would indicate the respondent suffered any serious injuries that were life-threatening or would cause him to fall within the gambit of extreme conduct within the Fifth Circuit. In particular, the respondent stated not only in 2017 but also in 2019, when he was released, he did not go to the hospital. And the Court states this again:  he did not go to the hospital, he did not obtain any medical documentation to support the alleged persecution at the hands of ███████ orces.

The respondent's two arrests and one detention do not constitute past persecution. Persecution is extreme. It is more than discrimination, harassment, or threats unaccompanied by physical harm. See Eduard v. Ashcroft, 379 F.3d 182 (5th Cir. 2004). It also must be motivated, at least in part, by one of the five enumerated grounds in the statute. Recently, the Fifth Circuit, under whose jurisdiction this case arises, in Martinez-Lopez v. Barr, cited at 18-60393, 2019, reaffirmed the standard necessary in asylum cases. The Court stated we have held that mere denigration, harassment, and threats are ordinarily not extreme enough to be considered persecution, quoting Eduard and quoting Tesfamichael v. Gonzales, cited at 469 F.3d 109.

In Tesfamichael v. Gonzales, the Fifth Circuit tells us that an applicant's unpleasant or unduly prolonged one-month-long detention did not rise to a level of persecution. Likewise, it held that a beating by an official that did not require medical attention with a short duration also does not rise to a level of persecution. See Chen v. Ashcroft, a Fifth Circuit case from 2004. Detention for days may be harsh, but it does not qualify for extreme treatment, particularly when there is no evidence that respondent suffered significant physical injury or harm. The respondent's injuries or medical

A ███████                    13                    February 11, 2020

E0080

records are absent. The only document the respondent indicated that he did provide at
Exhibit 4, tab 13, is not corresponding with the dates the respondent states he suffered
any persecution at the hands of [redacted] forces. And moreover, the document is
not the original document. The Court would have given it very little credibility had it
actually been commensurate with date and time as to the respondent's detentions.

The Court would also note in Lin v. Holder, the Fifth Circuit concluded that an
alien did not demonstrate past persecution where he was electrically shocked trying to
protest his wife's abortion, briefly detained, and received a fine where the consequence
of nonpayment resulted in the loss of farming land. Furthermore, in Eduard v. Ashcroft,
the occasional verbal taunts and being hit upon the head with a stone, resulting in cuts
to the head and medication to stop bleeding, does not rise to the level of persecution.

Simply put, the Court does not find the respondent has demonstrated the harm
he may have suffered rises to a level of extreme persecution and would not have
granted asylum, even if the respondent was eligible.

The petitioner requesting withholding of removal must make a similar showing
but show it as a greater burden. He must demonstrate a "clear probability" of
persecution on account of one of the five protected grounds if he returns to his home
country. See Revencu v. Sessions, 895 F.3d 396 (5th Cir. 2018). The clear probability
standard requires more certainty than a well-founded fear. It means that the
persecution, upon return, is more likely than not. In addition, the petitioner seeking
petition under CAT must show that he is more likely than not to be tortured if returned to
his country of origin. See Chen v. Gonzales, 470 F.3d 1131.

Torture is defined by any act, severe pain or suffering, which physical or mental,
is intentionally inflicted upon a person or at the instigation of or with the consent or
acquiescence of a public official. To show the acquiescence of a public official, the

A[redacted]                        14                    February 11, 2020

petitioner must demonstrate that the government is willfully blind to the torture. See Chen. Said official must be aware of the torture and take no action to protect the victim.

The fact that respondent's close relatives continue to live peacefully in Cameroon undercuts his claim that persecution awaits his return. See Eduard v. Ashcroft, 379 F3d. 182 (5th Cir. 2004). Court would also note that respondent's sister is present in the United States, apparently on a visa of some sort, visiting his niece. Respondent did not have any other individuals testify as to the circumstances of his detention or his persecution at the hands of the ▓▓▓▓ government. Moreover, the Court would note that if the respondent's sister was allowed to leave ▓▓▓▓ with a visa and come to the United States and return, it may be that the respondent's family is not in any danger, nor would the respondent be in any danger if he was allowed to return or was forced to return, having not been successful in his withholding of removal case.

Eligibility for relief cannot be established by stringing together a series of suppositions when the evidence does not support each step in the hypothetical chain likely to happen. See Matter of M-B-A-; see also Matter of J-F-F-.

## RELOCATION

When an applicant does not show past persecution and does not demonstrate the national government is the persecutor, although the respondent states that he was also, apparently, persecuted by the ▓▓▓▓ fighters in October of 2018, he would bear the burden of showing that persecution is not geographically limited in such a way that relocation would not be unreasonable. The respondent stated he fled ▓▓▓▓ immediately and went to ▓▓▓▓ It does not appear that he relocated to any other locations.

15                                    February 11, 2020

As the respondent has failed to meet a well-founded fear standard of proof for the asylum claim because, in fact, there is no past persecution in this case supported by any documentary evidence that would indicate that this is not. In fact, as the Court previously concluded, without any documentation to establish that respondent had been harmed or have any serious injuries, the Court will not find that respondent has met the clear probability standard, which is higher than an asylum claim. See INS v. Cardoza-Fonseca, reporting that a withholding of removal is factually related to an asylum claim but the standard of proof is harder to meet.

The Court would note harsh prison conditions, standing alone, do not constitute torture under the Convention against Torture. However I will cover that in one moment.

Moreover, the respondent failed to establish future torture. While the Country Conditions report of corruption and impunity are present, the respondent also, apparently, was released from custody by a soldier and then provided with money and escorted off the premises, where he was allowed to flee ████ with his own passport that he obtained, apparently, in the middle of the summer of 2018 in May of 2018. The respondent did not produce his original passport or any identity document other than his driver's license and his birth certificate. The respondent's explanation for the loss of his passport was it was lost in the jungle in ████ by thieves. He did not make any report of this to anyone other than local officials.

Although the government does not consent or acquiesce torture of its citizens, it does appear that there are recent changes taking place in ████ As of two days ago, elections were held in ████ and hundreds of many political prisoners have been released. The respondent stated he was not actually never charged and was released by a soldier, either because of a bribe or because that individual felt sorry for him. Nevertheless, the respondent was not injured in a way that would have required

████                                    16                         February 11, 2020

his hospitalization or had serious physical injury or that he was tortured in a way that would require hospitalization at least at the hands of ███ forces as opposed to exhibit 4 tab 13 that supports the respondent's contention he was harmed by separatist fighters not the Government of ███ forces or entities that they control. -- Indeed, the respondent submitted no evidence to that effect.

Harsh prison conditions, standing alone, do not constitute torture under the Convention against Torture. An act only constitutes torture when it is intentionally inflicted as opposed to negligently or recklessly inflicted for a proscribed purpose. See 8 C.F.R. Section 1208.18(a)(1). Although the respondent states he was arrested and detained on one occasion in November of 2018 with the death of his father, it does not appear that respondent was caught while fleeing or was engaged in any way and produced only a writ from his home country, which is found at Exhibit 4, tab 7. This document also was not produced in original format. It is rather a photocopy of an arrest warrant dated December 27, 2018. This document, along with the respondent's other medical record, which the Court does not find to be credible, is not persuasive with respect to whether or not the ███ government is interested in pursuing the respondent.

Respondent himself stated he is not aware that the ███ government knows/notices he is even present in the United States, and since his passport is no longer available for inspection by the Government or for the Court, it is unable to discern whether or not the respondent had status in any other country on his travels through approximately ten countries before he arrived here in the United States or when he actually left ███

Accordingly, the following orders will be entered.

A ███                                    17                        February 11, 2020

<u>ORDERS</u>

IT IS HEREBY ORDERED that respondent's Application for Withholding of Removal pursuant to INA Section 241(b)(3) is denied.



A                                    18                    February 11, 2020

E0085

IT IS FURTHER ORDERED that respondent's Application for Withholding of

Removal pursuant to the Convention against Torture is denied.

IT IS FURTHER ORDERED that respondent be removed from the United States

to ███████████

**_Please see the next page for electronic_**

 signature

LARAGY W. SCOTT LARAGY
Immigration Judge

 A           19           February 11, 2020

E0086

//s//

Immigration Judge LARAGY, W. SCOTT

i:0e.t|eoir federation services|w.scott.laragy@usdoj.gov on May
4, 2020 at 2:36 PM GMT

                    20                    February 11, 2020

 

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**MOFOR, BOKWE**
**Immigration Law Offices**
**914 Silver Spring Avenue, Suite 112**
**SILVER SPRING, MD 20910**

**DHS - ICE Office of Chief Counsel -**
**OAKDALE 2**
**1010 E. Whatley Rd.**
**OAKDALE, LA 71463**

**Name:** ▮▮▮▮▮▮▮▮▮▮▮▮   A ▮▮▮▮▮▮▮▮

**Date of this notice: 10/14/2020**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

**Panel Members:**
**Geller, Joan B**

Userteam: Docket

E0088

U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*



**DHS - ICE Office of Chief Counsel -
OAKDALE 2
1010 E. Whatley Rd.
OAKDALE, LA 71463**

**Name:** **A**

**Date of this notice: 10/14/2020**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. §1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

**Panel Members:**
Geller, Joan B

Userteam:

E0089

**U.S. Department of Justice**
Executive Office for Immigration Review

Falls Church, Virginia 22041

Decision of the Board of Immigration Appeals

File: A[redacted] Oakdale, LA

Date: OCT 14 2020

In re: [redacted]

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT: Bokwe G. Mofor, Esquire

APPLICATION: Asylum; withholding of removal; Convention Against Torture

The respondent, a native and citizen of [redacted], appeals from the Immigration Judge's April 20, 2020, decision denying his appl[redacted] asylum, withholding of removal, and protection under the Convention Against Torture. *See* sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(1)(A) and 1231(b)(3)(A); 8 C.F.R. § 1208.18. The appeal will be dismissed.

We review findings of fact determined by an Immigration Judge, including credibility findings, under a "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i). We review questions of law, discretion, and judgment, and all other issues in appeals from decisions of Immigration Judges de novo. 8 C.F.R. § 1003.1(d)(3)(ii).

The Immigration Judge denied the respondent's applications for asylum, withholding of removal, and protection under the Convention Against Torture because he found that the respondent had not testified credibly (IJ at 4).[1] We discern no clear error in the Immigration Judge's adverse credibility finding. 8 C.F.R. § 1003.1(d)(3)(i); *Matter of A-B-*, 27 I&N Dec. 316, 341 (A.G. 2018) ("Where credibility determinations are at issue… even greater deference must be afforded to the [I]mmigration [J]udge's factual fin[redacted] The respondent repeatedly testified that his passport and birth certificate were stolen in [redacted] on his way to the Mexico-United States border (IJ at 3; Tr. at 46-47, 67-69, 78). However, the respondent provided a hotel receipt from Mexico indicating they verified his identity from his birth certificate (IJ at 3; Tr. at 74).

Although the respondent on appeal argues that he was not afforded an opportunity to explain the inconsistency, he does not provide any explanation and just refers to the discrepancy as a "mix-up" (Respondent's Br. at 28, 34, 36). Moreover, the inconsistency is glaring on the face of the record. *See Matter of Y-I-M-*, 27 I&N Dec. 724, 727-28 (BIA 2019) (holding that asylum applicants have a duty to proffer explanations for inconsistencies that are apparent in the record).

[1] The Immigration Judge made alternative findings, but because we affirm his adverse credibility finding, we need not address them. *See Matter of A-B-*, 27 I&N Dec. 316, 341 (A.G. 2018). We do note that although the Immigration Judge determined that the respondent was statutorily ineligible for asylum under 8 C.F.R. § 1208.13(c)(4), that rule has since been vacated (IJ at 5-6). *Capital Area Immigrants' Rights Coal. v. Trump*, No. CV 19-2117 (TJK), 2020 WL 3542481 (D.D.C. June 30, 2020).

Case 3:17-cv-02366-BAS-KSC   Document 695-6   Filed 03/08/21   PageID.57976
Page 92 of 296



The Immigration Judge's finding that these two situations are inconsistent is not clearly erroneous. *See Morales v. Sessions*, 860 F.3d 812, 817 (5th Cir. 2017); *see also Wang v. Holder*, 569 F.3d 531 (5th Cir. 2009) (upholding adverse credibility finding where identity documents were at issue).

Although the respondent argues that the discrepancy does not go to the heart of his claim, the Immigration Judge may rely on any discrepancy, so long as he weighs it in the totality of the circumstances (Respondent's Br. at 28). Section 208(b)(1)(B)(iii) of the Act; *Matter of J-Y-C-*, 24 I&N Dec. 260 (BIA 2007). Moreover, the Immigration Judge properly found that this inconsistency is significant because it is relevant to the respondent's identity (IJ at 3-4). *See Matter of O-D-*, 21 I&N Dec. 1079, 1081 (BIA 1998) ("A concomitant to [claims for asylum, withholding of removal, and protection under the Convention Against Torture] is the burden of establishing identity, nationality, and citizenship.").[2]

Because the respondent's testimony was not credible, and he did not provide any other independently reliable evidence, he did not meet his burden to establish eligibility for asylum, withholding of removal, and protection under the Convention Against Torture. 8 C.F.R. § 1208.13(a); *Zhang v. Gonzales*, 432 F.3d 339, 345 (5th Cir. 2005); *Matter of M-S-*, 21 I&N Dec. 125, 129 (BIA 1995) (stating that a persecution claim that lacks veracity cannot satisfy the burdens of proof necessary to establish eligibility for asylum and withholding of removal).

To the extent that the respondent argues his due process rights were violated by the Immigration Judge not accepting his late-filed evidence and not granting a continuance to accept the evidence, we conclude that his due process rights were not violated (Respondent's Br. at 33-34). It is not disputed that the respondent's documents were filed late (IJ at 4; Tr. at 14). The Immigration Court Practice Manual clearly states the potential consequences of late-filed documents, including that evidence is not considered or given less weight. Immigration Court Practice Manual Ch. 3.1(d)(ii). The Immigration Judge also considered the relevant factors in not granting a continuance (Tr. at 18-23). *See Matter of L-A-B-R-*, 27 I&N Dec. 405 (A.G. 2018).

We disagree with the respondent's assertion that the Immigration Judge "practically coerced" the Department of Homeland Security (DHS) attorney into opposing a continuance by asking if DHS opposed the motion (Tr. at 19; Respondent's Br. at 33). We are not persuaded that the Immigration Judge erred in not finding good cause for accepting the late-filed documents or granting a continuance, as the respondent's explanation is vague and does not specify why the documents were not available before the filing deadline (IJ at 4; Tr. at 14-23). *See* 8 C.F.R. § 1003.29 (motion for continuance must show good cause). Moreover, the respondent does not make any argument on how the documents would rehabilitate his testimony, and therefore he has not established the requisite prejudice. *See Santos-Alvarado v. Barr*, 967 F.3d 428, 440 (5th Cir. 2020) (finding no prejudice from excluding witness testimony when no proffer that the

---

[2] Although it is not clear that the Immigration Judge relied on the absence of authentication of the respondent's Cameroonian identification card, we conclude that the Immigration Judge's adverse credibility finding is adequately supported for the reasons discussed above and do not consider the lack of authentication of the card, which is in the Department of Homeland Security's possession, in our determination.

2                                    E0091

A 

testimony would have rehabilitated the respondent's inconsistent testimony and therefore concluding there was no due process violation).

The respondent also alleges the Immigration Judge evidenced bias against the respondent when he asked if DHS had received the respondent's documents (Respondent's Br. at 10). In our review of the record, we discern no indication of bias against the respondent. *See Wang v. Holder*, 569 F.3d at 540-41. Contrary to the respondent's allegation, it was appropriate for the Immigration Judge to see if the opposing party had received the late-filed documents. We therefore conclude that there were no due process violations in the respondent's case.

Accordingly, the following order will be entered.

ORDER: The appeal is dismissed.

NOTICE: If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $813 for each day the respondent is in violation. *See* section 274D of the Immigration and Nationality Act, 8 U.S.C. § 1324d; 8 C.F.R. § 280.53(b)(14).

FOR THE BOARD

3                                        E0092



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**IMMIGRATION COURT**
**OAKDALE, LOUISIANA**

| IN THE MATTER OF | ) | IN REMOVAL PROCEEDINGS |
|---|---|---|
| | ) | |
| ▆▆▆▆▆▆▆▆▆▆ | ) | File No.:A▆▆▆▆▆▆ |
| | ) | |
| **Respondent** | ) | |
| _____ | ) | |

**CHARGE:**     Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("Act"), as an immigrant who, at the time of application for admission, was not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

**APPLICATIONS:**     Asylum pursuant to INA § 208
Withholding of Removal pursuant to INA § 241(b)(3)
Withholding of Removal pursuant to the Convention Against Torture

**ON BEHALF OF RESPONDENT:**
Bokwe G. Mofor, Esq.
Immigration Law Offices
914 Silver Spring Ave., Suite 112
Silver Spring, Maryland 20910

**ON BEHALF OF THE DEPARTMENT:**
Lorraine L. Griffin, Assistant Chief Counsel
DHS/ICE/Litigation Unit
1010 East Whatley Road
Oakdale, Louisiana 71463

## DECISION AND ORDER OF THE IMMIGRATION JUDGE

### I. PROCEDURAL HISTORY

Respondent is a native and citizen of ▆▆▆▆ who applied for admission into the U.S. at POE, San Ysidro, California on August 23, 2019. He did not possess or present a valid immigrant visa, reentry permit, border crossing identification card, or other valid entry document. The U.S. Department of Homeland Security, Immigration and Customs Enforcement ("Department") issued a Notice to Appear ("NTA") on October 2, 2019, charging Respondent was removable pursuant to section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("Act").

At a hearing on January 31, 2020, the Respondent admitted the factual allegations contained in the NTA. Based on Respondent's admissions and the evidence submitted into the record, the Court found Respondent removable as charged. Respondent declined to designate a country of removal. The Court designated ▆▆▆. Respondent indicated he feared returning to ▆▆▆. Respondent submitted his completed Form I-589, Application for Asylum and for Withholding of Removal. The Court reset the case for a merits hearing.

- 1 -

E0093

A hearing on the merits was held April 6, 2020. Respondent was the sole witness in support of his application. The Court now issues this written decision addressing Respondent's applications for relief.

## II. SUMMARY OF THE EVIDENCE

The record contains exhibits one through three and Respondent's testimony. The Court has familiarized itself with the entire record of proceedings and considered all submitted evidence regardless of whether mentioned in this decision. *See* 8 C.F.R. § 1240.1(b).

### A. Exhibit List

Exhibit 1    Notice to Appear (dated October 2, 2019)

Exhibit 2    Respondent's I-589, Application for Asylum and for Withholding of Removal and Attachments

Exhibit 3    Respondent's Credible Fear Interview

### B. Summary of the Testimony

Respondent testified he is a native and citizen of ███████ Respondent testified he feared

E0094

- 2 -



Once Respondent arrived in Ecuador on April 29, 2019, he saw other Africans who were headed to the United States, and he decided to follow them. Respondent traveled through ███████, ████████████████████████████████████████ and Mexico before he arrived at the Mexico-United States border on July 8, 2019. Respondent states he was told to he could not enter but was given a number and told to return to Mexico. Respondent returned to Tijuana and stayed at hotel for one month until his number was called. Respondent returned and applied for admission at Port of Entry, San Ysidro, California on August 23, 2019.

### III. BURDEN OF PROOF AND CREDIBLITY

The Real ID Act amended the standards for the burden of proof and credibility in connection with applications for relief and applies to applications filed on or after May 11, 2005. *See* REAL ID Act § 101(h)(2), Pub. L. No. 109-13, 119-13, 119 St. 231 (235). Under the REAL ID Act, the alien bears the burden of establishing he or she is eligible for relief from removal and that, if relevant, the alien merits a favorable exercise of discretion. INA § 240(c)(4)(A). In determining if the alien has met his or her burden, the Court will assess whether the alien's testimony is credible, persuasive, and fact-specific. INA § 240(c)(4)(B). The Court weighs the testimony along with other evidence of record and considers the totality of the circumstances and all relevant factors. *Id.* § 240(c)(4)(B), (C).

The Court has carefully considered all of the evidence submitted into the record even if not specifically referenced in the decision. The Court has serious concerns regarding Respondent's burden to prove his identity. The Board of Immigration Appeals ("BIA") has held that corroborating evidence, such as place of birth, should be produced where it is reasonable to expect it. *See Matter of S-M-J-*, 21 I&N Dec. 722, 725-26 (BIA 1997). Otherwise, an explanation should be provided as to why corroborating evidence was not presented. *Id.* Respondent testified that his passport and birth certificate were stolen when he was traveling through the ███████ jungle along with some of his other belongings. Nevertheless, Respondent testified that the only identification he had *after* his belonging were stolen was his ████████ ID card, which had not been authenticated by the Department. However, Respondent presented a letter from the hotel he purportedly stayed at in Tijuana, Mexico. This letter indicated the Respondent presented his birth certificate to identify himself at the hotel contrary to his sworn testimony that he lost it in the jungle in ██████ along with his passport. In order for the hotel letter to be genuine, Respondent could not have lost birth certificate in ████ as he traveled through ████ and at least two other countries before arriving in Tijuana. The Court finds this a very serious discrepancy and wholly inconsistent with his testimony. Respondent's testimony as far as his identity and the location of his original identity documents is not established and in fact is completely contrary to his sworn testimony. Accordingly, his identity is not

E0095

- 3 -

established. No explanation was offered as to why Respondent did not submit these or other original identity documents. The Court notes his lost identity documents claim is identical to dozens who have been smuggled through South and Central America. As such, the Court finds Respondent has not provided sufficient nor valid corroborating evidence to establish identity.

Respondent also presented documentary evidence in support of his application; however, the documents were received after the call-up date for all evidence to be filed with the Court. Respondent's counsel stated the documents were mailed from ▇▇▇▇ and due to the ongoing situation in ▇▇▇▇ as well as the COVID-19 Pandemic, the documents were almost impossible to receive before the call up date. The Court noted the affidavits from Respondent's family are dated in March 2020. The Court further notes Respondent has been detained since August 2019, and counsel has been representing the Respondent since January 2020. Moreover, the government never received a copy of Respondent's documents, and was unable to examine the documents. Therefore, the Court does not find Respondent's counsel's explanations to be satisfactory and they are untimely. As such, the documents will not be considered as evidence.

After reviewing the totality of the record evidence, including Respondent's serious identity discrepancies, the Court makes an adverse credibility finding and finds that Respondent has not met the burden to establish that he is eligible for relief from removal. *See* INA § 240(c)(4)(A)–(C); *R-K-K-*, 26 I&N Dec. at 666; *J-Y-C*, 24 I&N Dec. at 265. Consequently, the Court finds that Respondent is ineligible for asylum or withholding of removal and denies Respondent's applications for relief. *See Matter of A-B-*, 27 I&N Dec. 316, 340 (A.G. 2018) ("[I]f an alien's asylum application is fatally flawed in one respect . . . an immigration judge or the Board need not examine the remaining elements of the asylum claim.") (citations omitted); *see also I.N.S. v. Bagamasbad*, 429 U.S. 24, 25–26 (1976) (observing that as a general rule, courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach). However, in the interest of rendering a complete decision, the Court will analyze Respondent's applications on the merits assuming *arguendo* that his testimony was credible.

## IV. ELGIBITY FOR RELIEF

### A. Asylum

#### *1. Eligibility*

To qualify for asylum under INA § 208, an applicant must establish that: (1) his application was The burden of proof is on the applicant for asylum to establish he is a refugee, within the meaning of Section 101(a)(42)(A) of the Act. To establish the applicant is a refugee, the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant. INA § 208(b)(1)(B)(i). An applicant seeking asylum based on past persecution must establish past persecution in his or her country of nationality or country of last habitual residence on one of the five enumerated grounds, and is unable or unwilling to return or avail themselves of that country's protection. 8 C.F.R. § 1208.13(b)(1). The applicant must also establish the persecution was or will be inflicted by the government of the country of removal or by individuals or groups the government is unable or unwilling to control. *Matter of Acosta*, 19 I&N Dec. 211, 222 (BIA 1985). The applicant must present facts establishing each element of the standard, and the immigration judge or the Board has the duty to determine whether those facts satisfy all of those elements. *Matter of A-B-*, 27 I&N Dec. 316 (A.G.

-4-                                                                          E0096



2018). If an asylum application is fatally flawed in one respect, an immigration judge or the Board need not examine the remaining elements of the asylum claim.

However, an applicant is not eligible for asylum because if he is subject to the third country transit bar. *See* 8 C.F.R. § 208.13(c)(4). The regulation prescribes mandatory denial of asylum shall be issued where an alien who enters, attempts to enter, or arrives in the United States across the southern land border on or after July 16, 2019, after transiting through at least one country outside the alien's country of citizenship, nationality, or last habitual residence in route to the United States, "shall" be found ineligible for asylum unless the alien demonstrates: (i) he or she applied for protection in a country through which he or she traveled and received a final judgment denying the alien protection in such country; (ii) he or she "satisfies the definition of a 'victim of a severe form of trafficking in persons'" pursuant to 8 C.F.R. 214.11; or, (iii) the countries through which he or she "transited en route to the United States were not, at the time of his or her travel, parties to the 1951 United Nations Convention relating to the Status of Refugees, the 1967 Protocol, or the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment of Punishment." *Id.*

This asylum eligibility bar in 8 CFR 1208.13(c)(4) was subject to injunctions issued by the United States District Court for the Northern District of California. *See East Bay Sanctuary Covenant v. Barr*, 391 F. Supp. 3d 974 (N.D. Cal. 2019). On September 11, 2019, the United States Supreme Court issued an order staying the district court's injunctions pending the disposition of the appeal in the United States Court of Appeals for the Ninth Circuit and disposition of the petition for a writ of certiorari, if one is sought. *See Barr v. East Bay Sanctuary Covenant*, No. 19A230 (U.S. Sept. 11, 2019). Accordingly, any aliens who entered, attempted to enter, or arrived in the United States on or after July 16, 2019, whose asylum applications are filed or remain pending after September 11, 2019, are subject to the asylum eligibility bar in 8 CFR 1208.13(c)(4).

Nevertheless, pursuant to the United States Court of Appeals for the Ninth Circuit's March 5, 2020 decision in *Al Otro Lado v. McAleenan*, No. 19-56417, this third-county transit eligibility bar does not apply to members of the class certified as "all non-Mexican asylum-seekers who were unable to make a direct asylum claim at a U.S. port of entry before July 16, 2019, because of the Government's metering policy, and who continue to seek access to the U.S. asylum process." This class was originally certified in an injunction order issued on November 19, 2019, by the District Court for the Southern District of California, but on December 20, 2019, the Ninth Circuit temporarily stayed the preliminary injunction before later issuing the March 5, 2020 order lifting the stay. Metering is a Department of Homeland Security practice by which asylum seekers were instructed to wait in Mexico to be processed because the port of entry was full or at capacity. Pursuant to the District Court's Order, "individuals could be required to submit proof (either by list or declaration) that he or she is a member of the class." *Al Otro Lado v. McAleenan*, No. 17-cv-02366-BAS-KSC, 2019 WL 6134601 (S.D. Cal. 2019), 28.

Respondent attempted to apply for admission into the United States on August 23, 2019. *See* Exhibit 1. Respondent testified he arrived in Tijuana Mexico on July 8, 2019, and claimed he would have entered on that date, but was given a number and told to wait in Mexico. However, Respondent did not present any evidence he had been subject to the Department of Homeland Security's metering policy. Moreover, Respondent did not alleged any of the other exemptions applied to him. Respondent's application for asylum was filed after September 11, 2019. Therefore, the Asylum

E0097

Eligibility and Procedural Modifications Rule, known as the "Third Country Transit Ban," applies in this case. 8 C.F.R. § 1208.13(c)(4) (2019). Based upon Respondent's admission and subsequent proof in the record, the Court must find he is ineligible for asylum in accordance with the regulations and thus is only eligible to apply for withholding of removal under INA § 241 (b)(3) and protection from removal under CAT 8 C.F.R. §§ 1208.16—1208.18 (2018). *See* 8 C.F.R. § 208.13(c)(4).

### 2. *Respondent's Claim*

Assuming *arguendo* Respondent were eligible to apply for asylum, the Court would deny Respondent's application for asylum, because he failed to meet his burden of to establish a well-founded fear of persecution. The term "persecution" does not encompass all treatment society regards as unfair or unlawful. *See Eduard v. Ashcroft*, 379 F.3d 182, 187-88 (5th Cir. 2004); *Majid v. Gonzales*, 446 F.3d 590, 595 (5th Cir. 2006). Rather, to constitute persecution, the conduct must be extreme. *Id.* While past incidents, multiple threats, and attacks may be taken in the aggregate to determine if they rise to the level of persecution even if no single incident is sufficient.

Here, the incidents of harm he claims to have suffered would not rise to the level of harm to establish persecution. *See Adebisi v. INS*, 952 F. 2d 910, 913 (5th Cir. 1992) ("The law regulating persecution claims, although humane in concept, is not generous."). Respondent did not allege any of the harm he suffered was severe or extreme. Respondent was beaten during a fourteen day detention, and though he sought medical attention for unspecified wounds on his body and cuts to his feet after his release, Respondent provided no medical documents or proof he was ever treated. Respondent also testified he was beaten every day during three months of a twelve month detention. Respondent testified he suffered no broken bones, lacerations, or any other serious injuries during that time. Respondent indicated after he was released, he administered traditional medicines himself, but Respondent was never clear about what injuries he suffered. Without more, the Court finds Respondent has not met his burden of proof in showing physical harm rising to the level of persecution.

Respondent also failed to show he was persecuted on the basis of a protected ground. Respondent indicated in his I-589 he was persecuted because of his political opinion and membership of a particular social group and nationality. An applicant seeking relief based on membership in a particular social group must establish that the proposed group: (1) contains members who share a common immutable characteristic; (2) is defined with particularity; and (3) is socially distinct within society. *See Matter of M-E-V-G-*, 26 I&N Dec. 227, 237 (BIA 2014); *see also Matter of W-G-R-*, 26 I&N Dec. 208 (BIA 2014). While Respondent's particular social group would meet the standard of a cognizable group, as discussed above, Respondent did not provide sufficient proof of identity. Even if the Court considered Respondent's national identification card as proof of his identity, the document was not authenticated by the Department as a genuine document. Thus, Respondent has not established he was a member of this particular social group or was persecuted because of his membership.

Respondent also did not prove that he meets the requirements for relief based on political opinion. If persecution is claimed on account of political opinion, the applicant must allege specific facts from which it can be inferred he holds a political opinion, which is known to his persecutor, and the persecution was or will be on account of the political opinion. *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992). Likewise, persecution based on political opinion may include a situation in which

E0098

an opinion has been attributed by the persecutor to the victim. *See Matter of S-P-*, 21 I&N Dec. 486, 489 (BIA 1996) (citing *Matter of A-G-*, 19 I&N Dec. 502, 507 (BIA 1987)). While imputed political opinion can be a protected statutory ground for asylum, Respondent's fear on account of his political opinion is speculative at best. *Matter of S-P-*, 21 I&N Dec. 486, 489 (BIA 1996). Respondent testified he was only suspected of being a part of a protest and a member of the ▮▮▮ but he denied ever being a member. Respondent testified he was not involved with any particular political group, or politically affiliated in any way. Respondent is not a member of any political organization. Aside from his testimony, there is no evidence the government persecuted Respondent because of political opinion or was interested in pursuing him because of his political opinion. If the Court were to accept Respondent proved a political opinion merely by being near a protest in the ▮▮▮ region, it would indicate any person who lived in the ▮ ▮▮▮ region would have a certain political opinion without actually proving such. Respondent provided no evidence he suffered disproportionately severe punishment on account of his political opinion.

Moreover, Respondent did not provide sufficient evidence to show future persecution. Respondent may have a subjective fear of returning to ▮▮▮ but his subjective fear is not objectively reasonable. Respondent fears he will be arrested, tortured, or killed by the government. However, Respondent stayed in ▮ ▮▮▮ without harm ▮ ▮▮▮ harmed ▮▮▮ Further, the 2019 ▮▮▮ Human Rights Report ("Country Report")[1] indicates circumstances have changed since Respondent's departure in April 2019. According to the Country Report, "a five-day national dialogue to address the crisis took place from September 30 to October 4, producing a number of recommendations." The report goes on to state that the ▮▮▮ government also released 333 prisoners arrested for their alleged roles in the separatist uprising. Both actions from ▮▮▮ government occurred in the latter portion of 2019, months after Respondent left ▮▮▮. Thus, based on the evidence presented, there is no certainty the mistreatment of Anglophones will continue as the ▮▮▮ government is attempting to address the problems in ▮▮▮ Accordingly, the Court finds Respondent failed to establish a well-founded fear of persecution on account of a protected ground.

### B. Withholding of Removal pursuant to INA § 241(b)(3)

As Respondent would have failed to meet the burden of proof for an asylum claim, the Court finds he has could not have met the higher standard of proof for a withholding of removal claim under the Act. A claim for withholding of removal is factually related to an asylum claim, but the standard of proof is harder to meet than the "well-founded" fear requirement for asylum. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 448–50 (1987).

### C. Withholding of Removal pursuant to the Convention Against Torture

8 C.F.R. § 1208.18(a)(1) defines torture as any act by which severe pain or suffering, whether

---

[1] The Country Report has significant probative value because general background information about a country, where applicable, must be included in the record as a foundation for an applicant's claim for asylum and withholding of removal. *Matter of S-M-J-*, 21 I&N Dec. 722 (BIA 1997). The U.S. Department of State is the most appropriate source to obtain information on the political atmosphere in foreign countries. *Rojas v. INS*, 937 F.2d 186, 190 n.1 (5th Cir. 1991). In the absence of contradictory evidence, the Country Report is entitled to considerable deference. *Matter of T-M-B-*, 21 I&N Dec. 775, 779 (BIA 1997).

E0099

mental or physical, is intentionally inflicted for purposes such as: obtaining information from him, or her, or a third person information or a confession; punishing him or her for an act he, or she, or a third person has committed or is suspected of having committed; or intimidating or coercing him or her, or a third person; or for any reason based on discrimination of any kind, when pain or suffering is inflicted by or at the instigation of, or with the consent, or acquiescence of the government or other person acting in an official capacity.

In assessing the likelihood of torture, the Court considers all evidence relevant to the possibility of future torture, including, but not limited to, evidence of past torture; the possibility of internal relocation; evidence of gross flagrant or mass violations of human rights; ad relevant information regarding conditions in the country of removal. 8 C.F.R. § 1208.16(c)(3). However, to meet his burden, specific grounds must exist that indicate the alien would personally be at risk. *Matter of S-V*, 22 I&N Dec. 1306, 1313 (BIA 2000). The mere existence of a consistent pattern of human rights violations in a particular country does not constitute a sufficient ground for finding that a particular person would more likely than not be tortured upon return to that country. *Id.*

Here, Respondent failed to establish past torture. The harm Respondent allegedly experienced does not rise to the level of extreme, cruel, and inhumane treatment within the meaning of torture. *See M-B-A-*, 23 I&N Dec. at 488 (citing *J-E-*, 23 I&N Dec. at 302). Likewise, Respondent also failed to establish future torture. While the Country Report, indicates human rights issues in ▮ included arbitrary and unlawful killings by security forces as well as armed ▮▮▮ eparatists and forced disappearances by security forces, Boko Haram, and separatists, it also indicates the government took some steps to identify, investigate, prosecute, or punish officials who committed human rights abuses in the security forces. This demonstrates that the government does not consent or acquiesce in the torture of its citizens but rather attempts to curb unlawful activity by its officials. Accordingly, the Court finds that Respondent failed to establish by clear and convincing evidence that the ▮ government would more likely than not torture Respondent upon his return or that he would suffer torture with the consent or acquiescence of ▮ officials.

## V. CONCLUSION

The Court finds Respondent is native and citizen of ▮ who is subject to removal as charged in the NTA. The Court finds Respondent has not met his burden of proof to establish his identity. He has also not met the burden in showing persecution or torture, past or future. Therefore, the request for relief will be denied. Based upon the above and foregoing, the following orders shall be entered:

Accordingly, the following orders shall be entered:

**ORDERS:** **IT IS HEREBY ORDERED that Respondent's application for asylum is DENIED.**

**IT IS HEREBY ORDERED that Respondent's application for withholding of removal pursuant to INA § 241(b)(3) is DENIED.**

**IT IS HEREBY FURTHER ORDERED that Respondent's application for withholding of removal pursuant to the Convention Against Torture is DENIED.**

E0100

**IT IS HEREBY FURTHER ORDERED that Respondent be REMOVED from the United States to** 

Date  4/20/2020

W. Scott Laragy
Immigration Judge

---

**CERTIFICATE OF SERVICE**

THIS DOCUMENT WAS SERVED BY:        MAIL (M)        PERSONAL SERVICE (P)

TO: [   ] ALIEN  [   ] ALIEN c/o Custodial Officer  [   ] ALIEN'S ATTY/REP  [ ✓ ] DHS

- 9 -

E0101

DATE: _____4/21/20_____        BY: COURT STAFF _____

Attachments: [   ] EOIR-33    [   ] EOIR-28    [   ] Legal Services List    [   ] Other

E0102



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

Price, James Eric
Los Angeles Immigration Attorneys, Inc
700 South Flower Street
Ste 2925
Los Angeles, CA 90017

DHS - ICE Office of Chief Counsel -
OAKDALE 2
1010 E. Whatley Rd.
OAKDALE, LA 71463


Name: [ ]                              A [ ]


Date of this notice: 10/16/2020


Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

Donna Carr

Donna Carr
Chief Clerk


Enclosure

Panel Members:
Geller, Joan B


Userteam: Docket


E0103

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*



**DHS - ICE Office of Chief Counsel -
OAKDALE 2
1010 E. Whatley Rd.
OAKDALE, LA 71463**

**Name:**

**A**

**Date of this notice: 10/16/2020**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. §1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

**Panel Members:**
Geller, Joan B

Userteam:

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**DHS - ICE Office of Chief Counsel -**
**OAKDALE 2**
**1010 E. Whatley Rd.**
**OAKDALE, LA 71463**

**Name:** ▮▮▮▮▮▮▮▮▮▮▮      **A** ▮▮▮▮▮▮▮▮

**Date of this notice: 10/16/2020**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. §1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

**Panel Members:**
Geller, Joan B

Userteam: ▮▮▮▮▮

E0105

**U.S. Department of Justice**                                      Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

File:    A███████ – Pine Prairie, LA                Date:           OCT 1 6 2020

In re:    ████████████

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:    James Eric Price, Esquire

APPLICATION:    Asylum; withholding of removal; Convention Against Torture

The respondent, a native and citizen of ███████, appeals from the Immigration Judge's May 18, 2020, decision denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture. *See* sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A); 8 C.F.R. §§ 1208.13, 16-18. The appeal will be dismissed.

We review the findings of fact determined by an Immigration Judge, including credibility findings, under a "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i). We review questions of law, discretion, or judgment, and all other issues in appeals from decisions of Immigration Judges de novo. 8 C.F.R. § 1003.1(d)(3)(ii).

As relevant here, the respondent expressed a fear of return to ███████ on account of his pro-███████ political opinion[1] (IJ at 2-3; Tr. at 49; Exh. 2 at 5-6, Exh. 4, Tab A).[2] The Immigration Judge first determined that the respondent was ineligible for asylum under the third-country transit rule at 8 C.F.R. § 208.13(c)(4) (IJ at 4). The Immigration Judge also determined that the respondent was not credible (IJ at 7-10, 14). Alternatively, the Immigration Judge denied withholding of removal because the respondent had not shown (1) past harm rising to the level of persecution, (2) a sufficient nexus between the claimed harm and a protected ground, and (3) an objectively reasonable fear of future harm (IJ at 11-13). The respondent challenges these rulings on appeal (Respondent's Br. at 10-28).

We discern no clear error in the Immigration Judge's finding that the respondent was not credible, and accordingly we will affirm the decision in this regard. *See* section 208(b)(1)(B)(iii) of the Act; 8 C.F.R. § 1003.1(d)(3)(i); *see also Matter of A-B-*, 27 I&N Dec. 316, 341 (A.G. 2018) ("[W]here credibility determinations are at issue, . . . even greater deference must be afforded to the [I]mmigration [J]udge's factual findings.") (internal quotations omitted). The respondent filed

---

[1]  Although the respondent also sought relief on account of a family conflict with his uncle, he has not meaningfully advanced this basis on appeal, and thus we deem that aspect of his claims waived (Respondent's Br. at 5, 20-28). *Matter of R-A-M-*, 25 I&N Dec. 657, 658 n.2 (BIA 2012).

[2]  We cite to the exhibit numbers as identified at the respondent's final hearing on April 28, 2020, irrespective of other exhibit numbering in the record (Tr. at 43-44, 88-89, 95-96, 98-99). E0106



his application after May 11, 2005; therefore, the provisions of the REAL ID Act apply (IJ at 2-3; Exh. 2). *See Matter of S-B-*, 24 I&N Dec. 42, 43 (BIA 2006). The Immigration Judge based his adverse credibility finding on specific and cogent reasons, including, inconsistencies within the respondent's testimony, inconsistencies between his testimony and his documentary evidence, and inconsistencies between different portions of the documentary evidence (IJ at 7-10, 14).

For instance, the respondent's testimony and credible fear interview were inconsistent about whether he applied for permanent resident status in South Africa, which further conflicted with the statement in his 2017 United States visa application that he was a permanent resident there[3] (IJ at 9; Tr. at 64, 89-91; Exh. 3 at 3; Exh. 7). The respondent's testimony also conflicted with his Form I-589 and his Form I-867A sworn statement about whether he had one spouse named           or an additional spouse named            , whom he indicated was a girlfriend in his credible fear interview (IJ at 8-9; Tr. at 47-48, 77-79; Exh. 2 at 2; Exh. 3 at 3; Exh. 8 at 3). The Immigration Judge permissibly determined that the inconsistencies about whether he and        obtained or might have obtained permanent residency in South Africa were particularly notable given the possible firm resettlement implications (IJ at 8-9; Tr. at 80-81, 89-91). *See* 8 C.F.R. § 1208.15 (explaining the firm resettlement ground of ineligibility for asylum); *Matter of D-R-*, 25 I&N Dec. 445, 453-54 (BIA 2011) (explaining that an Immigration Judge may make reasonable inferences from the evidence in the record and is not required to accept a respondent's account where other plausible views are supported by the record).

Additionally, the respondent's 2015 and 2017 visa applications were inconsistent with his testimony about whether he had a spouse named          and whether the applications were completed by himself or a third party (IJ at 7-9; Tr. at 85, 88-90, 101, 104; Exh. 6; Exh. 7). Further, the respondent's testimony, Form I-867A, and 2015 visa application were inconsistent about the years he attended the Ecole Polytechnique School, which was omitted on his Form I-589 (IJ at 9; Tr. at 86-87; Exh. 2 at 4; Exh. 6; Exh. 8 at 4). Moreover, the respondent's evidence was inconsistent about whether, and when, he was employed with different companies during and prior to his submission of his visa applications (IJ at 10; Tr. at 84-86, 95, 102-03; Exh. 2 at 4; Exh. 6; Exh. 7).

Despite the respondent's argument that the inconsistencies were too minor, our review of the record supports the Immigration Judge's adverse credibility finding (IJ at 7-10; Respondent's Br. at 16-18). *See* section 240(c)(4) of the Act; *Matter of J-Y-C-*, 24 I&N Dec. 260, 263-66 (BIA 2007) (explaining that the Immigration Judge may properly base a credibility determination on the totality of the circumstances, regardless whether an inconsistency goes to the heart of the claim); *see also Dayo v. Holder*, 687 F.3d 653, 657 (5th Cir. 2012) (upholding an adverse credibility finding based in part on inconsistent statements made at the United States consulate); *Kindia v. Gonzales*, 155 F. App'x 752, 753 (5th Cir. 2005) (same, as to inconsistencies between the respondent's testimony and visa applications). The respondent was given an opportunity to

---

[3] To the extent there is some immaterial ambiguity in the record about whether the respondent submitted his second visa application in 2017 or 2018, we will credit the Immigration Judge's reasonable finding that the application was submitted in 2017 (IJ at 7; Exh. 7).

A[redacted]

explain the discrepancies in his evidence, and the Immigration Judge permissibly rejected the respondent's explanations (IJ at 8-10; Tr. at 47-48, 84-91).[4] *See Matter of D-R-*, 25 I&N Dec. at 453-54.

For these reasons, we uphold the adverse credibility finding and agree with the Immigration Judge that the respondent did not meet his burden to establish eligibility for asylum or withholding of removal under the Act, either through his testimonial or documentary evidence (IJ at 7-10, 14). *See* 8 C.F.R. §§ 1208.13(a), 1208.16(b), (c)(2); *Matter of M-S-*, 21 I&N Dec. 125, 129 (BIA 1995) (noting that a persecution claim that lacks veracity cannot satisfy burdens of proof necessary to establish eligibility for asylum and withholding of removal). Therefore, we need not address the respondent's remaining arguments, such as his contentions concerning the third-country transit rule. *See INS v. Bagamasbad*, 429 U.S. at 25. Because "the credibility assessment here goes directly to the issue of whether or not [the respondent] will be tortured" in [redacted] the respondent also has not shown eligibility for relief under the Convention Against Torture (IJ at 7-10, 14). *Efe v. Ashcroft*, 293 F.3d 899, 907-08 (5th Cir. 2002).

Accordingly, the following order will be entered.

ORDER: The appeal is dismissed.

NOTICE: If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $813 for each day the respondent is in violation. *See* section 274D of the Immigration and Nationality Act, 8 U.S.C. § 1324d; 8 C.F.R. § 280.53(b)(14).

FOR THE BOARD

[4] Although the respondent contends that the Immigration Judge improperly relied on the perceived discrepancy about whether he was a member of the [redacted] or the [redacted] without allowing him an opportunity to explain it, we need not resolve that question because we affirm the adverse credibility finding for the reasons explained regardless whether that factor was properly relied upon (IJ at 10; Respondent's Br. at 19-20). *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**IMMIGRATION COURT**
**OAKDALE, LOUISIANA**

| | |
|---|---|
| **IN THE MATTER OF** ) | **IN REMOVAL PROCEEDINGS** |
| ) | |
| ) | **A#** ▓▓▓▓▓▓ |
| ) | |
| **Respondent** ) | **Detained** |
| _____ ) | |

**CHARGE:**       § 212(a)(7)(a)(i)(I) of the Immigration and Nationality Act (INA).

**APPLICATIONS:**   Withholding of Removal under INA § 241 (b)(3); and Protection from
Removal under the Convention Against Torture (CAT), 8 C.F.R. §§
1208.16—1208.18 (2018).

**ON BEHALF OF RESPONDENT**
Sandra L. Greene, Esq.
Greene Fitzgerald Advocates
2575 Eastern Boulevard, Unit 208
York, Pennsylvania 17402

**ON BEHALF OF THE GOVERNMENT**
Tanashe Chimwaze , Assistant Chief Counsel
Department of Homeland Security, ICE
1010 East Whatley Road
Oakdale, Louisiana 71463

## WRITTEN DECISION AND ORDER OF THE IMMIGRATION JUDGE

### I. PROCEDURAL HISTORY

On September 17, 2019, the Department of Homeland Security (DHS) issued a Notice to
Appear (NTA) to Nathania Funa (Respondent) alleging he is a native and citizen of ▓▓▓▓▓
*See* Exh. 1. The Department further alleged Respondent applied for admission at the Port of Entry,
San Ysidro, California on August 18, 2019 and at the time of requested entry Respondent did not
possess or present a valid immigrant visa, reentry permit, border crossing card, or other valid
document. *Id.* Based on the allegations DHS charged Respondent as inadmissible under INA §
212(a)(7)(A)(i)(I), as an alien not in possession of valid entry documents as required. *See id.*

On October 27, 2019, Respondent, appeared in person *pro se*. Respondent admitted the
four factual allegations in the NTA. Based on Respondent's admission an immigration judge
sustained the charge of inadmissibility by evidence which is clear and convincing. *See* INA §
240(c)(2)(B). The Court herein designates ▓▓▓▓▓ as the country of removal. *See* 8 C.F.R. §
1240.10(f). Respondent indicated a fear of returning to ▓▓▓▓▓. The Court reset the hearing for
the filing of an I-589. On December 4, 2019, the Court received Respondent's I-589. *See* Exh. 2.

E0109

On April 28, 2020, Respondent, represented by counsel, appeared before the Court, for a hearing on the merits of his application. At the individual hearing Respondent swore to the contents of his application and testified in support of it. Respondent was the sole witness. The Court now issues this written decision regarding Respondent's applications for relief.

## II. SUMMARY OF THE EVIDENCE

The record now contains exhibits one through ten and Respondent's testimony, taken on April 28, 2020. The Court has familiarized itself with the entire record of proceedings and considered all submitted evidence regardless of whether mentioned in this decision. *See* 8 C.F.R. § 1240.1(b).

### A. Exhibit List

| | |
|---|---|
| Exh. 1: | Notice to Appear, issued September 17, 2019. |
| Exh. 2: | Respondent's I-589, received December 4, 2019. |
| Exh. 3: | Credible Fear Interview. |
| Exh. 3a: | Respondent's Credible Fear Interview Corrections. |
| Exh. 4: | Respondent's Documents, Tabs 1-18, received on March 26, 2020. |
| Exh. 5: | Respondent's Filed Documents, Tabs A-H, received December 27, 2019. |
| Exh. 6: | Respondent's 2015 Visa Application to the United States. |
| Exh. 7: | Respondent's 2017 Visa Application to the United States. |
| Exh. 8: | Respondent's Sworn Statement. |
| Exh. 9: | South Africa Visa Information. |
| Exh. 10: | Copies of BIA Decision: *Matter of D-X- & Y-Z-*. |

### B. Summary of the Testimony

#### 1. Respondent

Respondent testified he is a native and citizen of        , who until his departure on March 31, 2019, was domiciled in        . Respondent testified he is a member of the        Respondent testified he left        after two incidents with the military and a family dispute. The general tenor of Respondent's testimony regarding the family dispute was that his father was a chief in his village and died. Respondent, who was in        , at the time, believed his uncle was responsible for his father's death. Respondent went to the police to complain, but was arrested instead. Respondent was released after an unspecified amount of time and left        in 2009. Respondent explained his reason for departing        to another area in        was that his uncle was a dangerous man who was powerful in the military. Respondent testified his uncle now lives in his father's home and he knows that, because he spoke to friends who still reside in        Nevertheless, Respondent did not testify to any issues arising from his family dispute after 2009.

The first incident with the        military Respondent alleged occurred on May 6, 2015. Respondent testified he was distributing fliers to the        population in an attempt to boycott an upcoming        celebration for unification, which was scheduled to occur on May 20, 2015. While distributing fliers the        military police arrested him and fourteen others. Respondent alleged on the first day of his detention he was beaten until he

Page **2** of **15**

E0110

collapsed and was not given medical treatment. He said he was beaten on his feet and had a front tooth broken after he was hit with the butt of a rifle. Respondent did not testify to other beatings during his seven-day detention. Respondent testified was able to leave after a family member came to pay his bail. He also indicated he signed a document, which declared he would not participate in anything with the          However, Respondent admitted he had signed a similar promise in 2008. He indicated there was an arrest warrant associated with the events in 2008. Respondent then testified the complaint alleged Respondent protested in 2008 in          Regardless, after Respondent's release he went to a friend's sister's home. He alleged he was in bad shape, but did not seek a doctor. However, he said his friend's sister was a nurse and she offered him aid during his three-month stay.

After staying with his friend's sister for three months, Respondent left          and went to South Africa. Respondent testified he feared he was going to be arrested during an upcoming Independence Day; however, he did not specify why exactly he believed so. Regardless, Respondent left          with a three-year work permit. Respondent resided in South Africa until he returned to          on February 13, 2019. Respondent did not indicate he ever applied for asylum in South Africa, but he did state he planned on applying for lawful permanent resident (LPR) status, but was told he was ineligible, because he did not have the requisite five years of residency.

Respondent testified his next incident with the          police occurred as a result of him attempting to get an identification card. He stated when he returned on February 13, 2019, he did not have an identification card. He initially said he went to pick up the card on March 6, 2019, but later said he picked up the card on March 27, 2019. When Respondent picked up the card, he alleged a woman came out with the police commissioner who later informed him he had a warrant for his arrest. Respondent said the arrest warrant said he was a part of a separatist group in          The commissioner asked if Respondent could go back to South Africa and Respondent indicated he could not, because his visa had expired and he had witnessed xenophobic attacks in South Africa. Respondent indicated the police commissioner sought a bribe and after haggling back and forth Respondent agreed to pay 700,000 Francs or the equivalent of $1,400. Respondent testified he got the money from a friend, whom he sent money to for his daughter while he worked in South Africa. Afterwards, Respondent was taken to the airport and boarded a flight to          Respondent testified he did not receive help arranging his travel from          o the United States and merely met other Africans, nationals, and Cubans when he arrived. He alleged he followed them until he arrived in Mexico. Respondent stated he spoke to his sister, who is a LPR, when he arrived in Mexico and she told him to apply for asylum in the United States. Respondent applied for admission at the San Ysidro, Port of Entry, on August 18, 2019.

### III.    BURDEN OF PROOF

#### A.  Eligibility

The Real ID Act amended the standards for the burden of proof and credibility in connection with applications for relief and applies to applications filed on or after May 11, 2005. *See* REAL ID Act § 101(h)(2), Pub. L. No. 109-13, 119-13, 119 St. 231 (235). Under the REAL

E0111

ID Act, the alien bears the burden of establishing he or she is eligible for relief from removal and that, if relevant, the alien merits a favorable exercise of discretion. INA § 240(c)(4)(A).

Respondent is ineligible for asylum under 8 C.F.R. § 208.13(c)(4). In relevant part, the regulation prescribes mandatory denial of asylum shall be issued where an alien who enters, attempts to enter, or arrives in the United States across the southern land border on or after July 16, 2019, after transiting through at least one country outside the alien's country of citizenship, nationality, or last habitual residence en route to the United States, "shall" be found ineligible for asylum unless: the alien demonstrates he or she applied for protection from persecution or torture in at least one country outside the alien's country of citizenship, nationality, or last lawful habitual residence through which the alien transited en route to the United States, and the alien received a final judgement denying the alien protection in such country. *Id.* (emphasis added). Although the initial implementation of the regulation was enjoined the Supreme Court subsequently stayed the injunction. *Barr v. East Bay Sanctuary Covenant*, ---U.S.---, 140 S. Ct. 3, 204 L.Ed.2d 1189 (2019)(mem.).

Here, based on the record, Respondent traveled through several countries including: and Mexico; however, he did not apply for asylum in any of the countries he traversed. Additionally, the record indicates Respondent traveled extensively to other locations including: South Africa, France, Mozambique, and others without ever applying for asylum. Based on the record, the United States was Respondent's ultimate destination and he eschewed the option of seeking protection in any of the countries he traveled through on his way to the United States or before. The Court notes Respondent appears to suggest he is a class-member subject to the government's metering policy and thus not subject to the transit rule in accordance with *Al Otro Lodo v. Wolf. See Al Otro v. Wolf*, 952 F.3d 999 (9th Cir. 2020). However, there is a dearth of evidence supporting Respondent's claim. Respondent did not testify he was metered or attempted to apply prior to his August 18, 2019, arrival. Respondent submitted a hotel receipt indicating that he was present in Tijauana, Mexico, but the document does not have a translation and will receive no weight. *See* 8 C.F.R. § 1003.33. Additionally, the document is not dispositive of whether Respondent was metered after he attempted to apply for asylum. With no testimony, reliable documents, or other evidence in the record that indicates Respondent attempted to claim asylum prior to the July 16, 2019, implementation of the transit rule it is not clear how Respondent would qualify as an *Al Otro* class member. Regardless, based on the vast proof in the record the Court must find Respondent is ineligible for asylum in accordance with the regulations. 8 C.F.R. § 208.13(c)(4). Therefore, Respondent is only eligible to apply for withholding of removal under INA § 241 (b)(3) and protection from removal under CAT 8 C.F.R. §§ 1208.16—1208.18 (2018). *See id.*

### B. Firm Resettlement

An applicant is barred from seeking asylum if he or she has firmly resettled in another country prior to arriving in the United States. *See* INA § 208(b)(2)(A)(vi); 8 C.F.R. §§ 208.13(c)(2)(i)(B), 208.15. According to federal regulations, an applicant is generally deemed firmly resettled if, prior to arriving in the United States, he or she entered another country with, or while in that country received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement unless he or she is able to establish either that: (a) entry into the country was a necessary consequence of his or her flight from persecution, that he or she remained

Page **4** of **15**

E0112


in that country only as long as was necessary to arrange onward travel, and that he or she did not establish significant ties to that country; or (b) the conditions of his or her residence in that country were so substantially and consciously restricted by the authority of the country of refuge that he or she was not in fact resettled. *See* 8 C.F.R. §208.15. In determining whether an applicant's life is was so restricted that he or she was unable to resettle, the Court must consider the living conditions of other residents of that country, the type of housing made available to the refugee, the types and extent of employment available to the refugee, and the extent to which the refugee received permission to hold property and to enjoy other rights and privileges, such as travel documentation that includes a right of entry or reentry, education, public relief, or naturalization, that is ordinarily available other residents within that nation. *Id.*

In *Matter of A-G-G-*, 25 I&N Dec. 486 (BIA 2011), the BIA determined that in cases involving issues of firm resettlement, DHS bears the burden of presenting prima facie evidence of an offer of firm resettlement. In doing so, the DHS should first secure and produce direct evidence of governmental documents indicating that the Respondent has the ability to stay in another country indefinitely. Such documents may include evidence of refugee status, a passport, or a travel document, among others. *Matter of A-G-G-*, 25 I&N at 501-02. However, the BIA determined that if the Department cannot produce direct evidence, indirect evidence that "clearly and forcefully" establishes the respondent's ability to stay in another country will suffice. *Id.* Such evidence includes: immigration laws or refugee process of the country; length of stay in the country; intent to settle in the country; family, business, property, social, and economic ties; receipt of government benefits or assistance; and whether the applicant has the "legal rights normally given to people who have some official status, such as the right to work and enter and exit the country." *Id.* at 502. Accordingly, the BIA found that providing evidence of a legal mechanism to obtain residence "may" be sufficient to establish a prima facie offer; however, this determination is *not* contingent on whether the applicant accepts the offer.

Moreover, in instances in which DHS meets this burden, the respondent may rebut by submitting prima facie evidence of an offer of firm resettlement by showing by a preponderance of the evidence that such an offer has not, in fact, been made or that he or she would not qualify for it. *Id.* Evidence may include how the law granting status is actually applied in practice. *Id.* However, if the applicant refuses to accept an offer or firm resentment or fails to renew permanent residence, then he may not rebut the offer. *Id.* Accordingly, the BIA determined that in rendering such a decision, the Court *must* consider the totality of the evidence entered by the parties to determine if the respondent has rebutted DHS's evidence of an offer of firm resettlement. *Id.* If the Immigration Judge determines that the respondent was in fact firmly resettled, then the burden shifts to the respondent to show by a preponderance of the evidence that either (a) his or her entry into that country was a necessary consequence of their flight from persecution, that he or she remained only long enough to arrange onward travel, and that he or she did not establish significant ties to that country; or (b) the conditions of his or her residence in that country was so substantially and consciously restricted by the authorities in that country that they were not in fact firmly resettled. *Id.*

Were Respondent eligible for asylum and not barred via the transit bar, in accordance with 8 C.F.R. § 208.13(c)(4), Respondent would not be barred from asylum due to firm resettlement in South Africa. The BIA has established a four-step framework as outlined in *Matter of D-X- & Y-*

E0113

*Z-*, 25 I&N Dec. 664, 665 (BIA 2012); *see also Matter of A-G-G-*, 25 I&N Dec. 486, 500-03 (BIA 2011). The first step requires DHS to present prima facie evidence of an offer of firm resettlement. *Matter of D-X- & Y-Z-*, 25 I&N Dec. 665 (BIA 2012). Here, the DHS's evidence is a mixture of a visa application, information on South African visas, and Respondent's testimony; however, none of the evidence presented establishes a firm offer from the South African government to Respondent. *See* Exh. 8, 9. The visa application, filed with the Department of State (DOS), presents a host of inconsistencies, which will be addressed in a later section of this decision; however, within the application filed on Respondent's behalf he indicates he is a LPR in South Africa. Yet, Respondent's testimony conflicted and he alleged he was not an LPR and he either filed for and was unsuccessful in getting LPR status or he was told he was ineligible for LPR status and chose not to file. Regardless, the DHS has not met its burden to make a prima facie showing that an offer of firm resettlement exists. *Matter of A-G-G-*, 25 I&N Dec. 486, 501. The DHS may meet their burden via securing direct evidence of government documents indicating an alien's ability to stay in a country indefinitely. *Id.* at 502. The BIA contemplated evidence of such governmental documents may include: evidence of refugee status, a passport, a travel document, or other evidence indicative of permanent residence. *Id.* The DHS's submitted evidence does not meet the contemplated governmental documents established by the BIA. The only document, which may have been indicative of permanent residence is Respondent's visa application; however, Respondent's testimony conflicts with the visa application and there is little independence evidence to show Respondent was in fact a LPR in South Africa. Although Respondent testified that he is married to a South African LPR, he did not submit a marriage certificate establishing the legality of the marriage nor did he claim the marriage in his I-589. *See* Exh. 2. Respondent appears to be married to multiple women and the spouse he claimed in his visa application is not the spouse whom he claims is a South African LPR nor is it the spouse he claims in his I-589. *See* Exhs. 2, 7, 8. All of which makes it nearly impossible for the Court to base the existence of a firm offer of permanent residence in South Africa primarily on Respondent's testimony and/or the visa application, which is derives from Respondent's statements to DOS.

When direct evidence of an offer for firm resettlement is unavailable the BIA has allowed indirect evidence to be used to show that an offer was made. *Id.* The issue in this case is that the indirect evidence is the same as the direct evidence and thus is flawed for the same reasons. The serious inconsistencies undermine the veracity of Respondent's claims in the documents as well as his testimony to the Court. The DHS's argument ultimately rests on the existence of a legal mechanism to obtain LPR status, by virtue of its mere existence as opposed to Respondent's affirmative application. The BIA has said the existence of a legal mechanism in a country by which an alien can obtain permanent residence may be sufficient to make a prima facie showing of an offer for firm resettlement. *See id. citing Elzour v. Ashcroft*, 378 F.3d 1143, 1152 (10th Cir. 2004)(observing that "a third country's offer of permanent resettlement may consist of providing a defined class of aliens a process through which they are entitled to claim permanent refugee"); *see also id.* at 1152 ("If an alien who is entitled to permanent refuge in another country turns his or her back on that country's offer by failing to take advantage of its procedures for obtaining relief, he or she is not generally eligible for asylum in the United States").

However, the DHS has not submitted evidence establishing the criteria, which would make LPR status available to Respondent. The DHS submitted information about visas, specifically relative visas, in South Africa; yet, the visas by their very definition do not conform to the

E0114

requirement of permanence. *See* Exh. 9. The relative visa allows a relative to stay in South Africa for two years. *Id.* There is no information on whether the visa is renewable, but the document indicates a visa holder may not work and does not generally afford the visa holder the rights needed for validation of a firm resettlement offer. Thus, the Court must find the DHS did not carry their burden and Respondent did not firmly resettle in South Africa.

## C. Credibility

In determining if the alien has met his or her burden, the Court will assess whether the alien's testimony is credible, persuasive, and fact-specific. INA § 240(c)(4)(B). The Court weighs the testimony along with other evidence of record and considers the totality of the circumstances and all relevant factors. *Id.* § 240(c)(4)(B), (C).

The Court has carefully considered the totality of the evidence submitted into the record, observed the testimony and demeanor of Respondent, and weighed his explanations to material inconsistencies. Here, after considering the totality of the circumstances and all relevant factors, the Court will make an adverse credibility finding and deny Respondent's application for withholding of removal on the basis of credibility. *See id.*; *Matter of D-R-*, 25 I&N Dec. 445, 454 (BIA 2011) (explaining that the immigration judge has broad discretion to accept and assign evidentiary weight to evidence). The Court makes its finding due to inconsistencies within Respondent's testimony, inconsistencies between his testimony and submitted documents, inconsistencies between his credible fear interview and testimony, inconsistencies between his testimony and sworn statement to border patrol, and external inconsistencies between his testimony and other documents in the record.

The Court will begin its analysis with Respondent's prior visa applications submitted to DOS. *See* Exhs. 6, 7. Respondent submitted two visa applications, the first visa application was submitted on January 8, 2015. *Id.* at Exh. 6. The second visa was submitted on May 5, 2017. *See* Exh. 7. The inconsistencies between Respondent's visa applications and other information in the record are numerous and expansive. When confronted with the inconsistencies Respondent offered a general explanation to both visa applications. Respondent stated he did not fill out the information in either visa application. He indicated he sent his passport to a human resource official for the first visa application and had his wife in South Africa,

filled out the second application with her sister. The Court does not find the explanation sufficient.

The Court initially notes, an Immigration Judge is not obliged to credit the Respondent's explanations for his inconsistencies. *See Matter of D-R-,* 25 I&N Dec. 445, 455 (BIA 2011) (explaining that an Immigration Judge may make reasonable inferences from direct and circumstantial evidence in the record as a whole and is not required to accept an alien's account as persuasive when there are other permissible views of the evidence), remanded on other grounds by *Radojkovic v. Holder*, 599 F. App'x 646 (9th Cir. 2015), clarified and affirmed by *Matter of D-R-,* 27 I&N Dec. 105 (BIA 2017). The fact that a different adjudicator could perhaps have viewed the evidence more charitably to the respondent does not establish clear error in the Immigration Judge's assessment of the evidence. Id.; see also *Cooper v. Harris*, 137 S. Ct. 1455, 1465 (2017) (holding that on clear error review, "[a] finding that is 'plausible' in light of the full record-even if another is equally or more so-must govern.").

Page **7** of **15**

Here, based on the evidence in the record, including Respondent's demeanor and other inconsistencies, the Court has serious doubts as to Respondent's explanation that he did not fill out either application. The Court's doubts are buttressed by the fact Respondent indicated in the visa applications he had "NO" assistance in filing these applications. *See* Exhs. 6, 7. Simply put the visa applications contradict Respondent's testimony that a human resource official or his wife in South Africa were responsible for the filing of his visa applications. This "NO" answer supports the notion that these were submissions of fraudulent applications and squarely places the truthfulness of the applications on Respondent's shoulders. Although, Respondent testified he did not physically sign the document, the document was digitally submitted from an IP address and thus was signed by Respondent when he submitted the visa application online.[1] Additionally, in Respondent's visa application he offered information only he would likely know. *See* Exh. 7. Respondent was asked if he had ever been issued a visa, had he been refused a visa, and if so to explain. *Id.* Respondent offered a detailed explanation that he was denied a visa to go to the United States for a conference due to his personal assistant's insufficient ability to persuade the officer conducting the interview. *Id.* He stated he was allowed to reapply, but chose to go to France instead. *Id.*

Regardless, even considering Respondent's claim, arguendo, if Respondent did not fill out the application, he ultimately authorized the applications to be filed and filled out on his behalf. At best, Respondent's explanation places his conduct as a clear willingness or reckless disregard to engage in fraud. However, both explanations are undermined by Respondents admission that he went to the United States embassy for the interview. The admission is sufficiently problematic to his implicit position that he was unaware of the information submitted in the visa applications. Additionally, Respondent offered no testimony and there is no information in the record indicating Respondent sought to remedy the incorrect information contained in the visa applications at any time prior to being presented with inconsistencies for impeachment purposes. In fact, the remarks from both interviews further buttress the position Respondent was actively engaged in the fraud. *See id.* The Court will consider the inconsistencies regarding Respondent's visa applications to be serious adverse considerations, which alone would be fatal to Respondent's application.

Respondent testified he is married to two separate women: ▮▮▮▮▮ and ▮▮▮▮▮ However, in his I-589, Respondent failed to list his marriage to Ms. Nadege. See Exh. 2, p. 2. When Respondent was asked why he did not list his other marriage on his I-589, he indicated he did not believe it was important. The Court does not find his explanation sufficient. Respondent failed to list his marriage and the failure to list the marriage has several consequences especially considering Respondent testified ▮▮▮▮▮ was a LPR in South Africa. Further supporting this point is that Respondent failed to disclose his second marriage in his sworn statement. *See* Exh. 8, p. 3. Therefore, when Respondent was asked if his wife at any time became a citizen or resident of any other country other than ▮▮▮▮ Respondent's answer of, "No." is

---

[1] A DS-160 is electronically signed by clicking the "Sign Application" button at the end of the form. Failure to sign may result in termination of the application. An electronic signature certifies that an applicant has read and understood the questions in the application and that the answers are true and correct to the best of their knowledge and belief. The submission of an application containing any false or misleading statements may result in the permanent refusal of a visa or denial of entry into the United States. All declarations made in the application are unsworn declarations made under penalty of perjury. https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/forms/ds-160-online-nonimmigrant-visa-application/ds-160-faqs.html

E0116

inconsistent with his in-court testimony. *Id.* Additionally, when Respondent was asked whether his spouse, child(ren), or other family members ever applied for or received any lawful status in other country other than the one from which he is claiming asylum, he indicated, "no." *See* Exh. 2, p. 7. Yet, the information is contradicted by his testimony that his wife applied for and received LPR status in South Africa. The Court will also note, Respondent indicated ▮▮▮▮ was his girlfriend in his credible fear interview, which exacerbates the inconsistency. *See* Exh. 3, p. 3. Further, in his visa application Respondent claimed to be married to a woman named ▮
▮▮▮▮▮ *See* Exh. 6. When the DHS asked Respondent who ▮▮▮▮▮▮
was, Respondent stated he did not know who the person was. The Court does not find the explanation sufficient. According to Respondent's I-589, he has been married to ▮▮▮ since January 1, 2009. *See* Exh. 2, p. 2. The blatant inconsistency severely undermines Respondent's credibility and indicates Respondent submitted verifiably false information on his application for a visa in order to defraud the United States government.

Respondent testified he has one child, a daughter named ▮▮▮▮▮▮ However, in Respondent's visa application he listed ▮▮▮▮ as his child. *See* Exh. 7. Respondent explained the child was not his biological child, but was ▮▮▮▮▮ whom Respondent told he would adopt. The Court does not find Respondent's explanation sufficient. The document speaks for itself. Respondent listed the child's relation to him as his child; therefore, it is not clear why Respondent failed to include the child on his I-589. *See* Exh. 2, p. 2.

Respondent indicated in his visa application he was a LPR in South Africa. *See* Exh. 7. Yet, Respondent testified he was not a LPR in South Africa. He explained he did not apply for LPR status in South Africa, because he was told he did not have the requisite five years of residency in order to be approved. However, later in the same hearing Respondent testified he applied for LPR status and was denied. He stated he had a receipt. When the DHS noted the inconsistent testimony and information in his visa application, Respondent explained he applied, but was turned down. The testimony was clear, Respondent stated he did not apply for LPR status and later changed his testimony. Additionally, Respondent told asylum officers during his Credible Fear Interview, he applied for LPR status. *See* Exh. 3, p. 3. Regardless the Court must find the inconsistency seriously undermines Respondent's credibility. Whether Respondent was a LPR has significant implications for his application. Respondent would be ineligible for asylum due to firm resettlement if he were a LPR of South Africa. Additionally, Respondent's claim would be severely undermined, considering he would have returned to ▮▮▮▮ after allegedly being harmed despite having the ability to remain in South Africa.

Respondent's information about the schools he attended is drastically inconsistent between his visa application, I-589, sworn statement, and testimony. Respondent testified he attended Ecole Polytechnique starting in 2009. Yet, his visa application indicated he attended the school from 2002-2007. Respondent's explanation regarding the inconsistency was not persuasive. Respondent told the border patrol officers in his sworn statement he last took classes at the school in 2008. *See* Exh. 8, p. 4. Regardless, Respondent did not list the school on his I-589. *See* Exh. 2, p. 4. Additionally, Respondent indicated he attended "British Collage [sic]," from March 10, 2010 – March 3, 2015. Respondent did not list the school on his I-589. *See* Exh. 2, p. 4. The falsity and blatant lack of candor regarding innocuous data undermines Respondent's credibility.

E0117



Similarly, Respondent's employment information is deeply inconsistent. On his I-589, Respondent indicated he worked for "Coke Cola South Africa" as a research manager from October 2015. *Id.* Yet, Respondent testified he was working at a company named Pepton from 2011 until 2015. In his visa application he stated he worked for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ from February 10, 2006, until December 1, 2015. *See* Exh. 7. The application directly conflicts with his in-court testimony and I-589. In Respondent's previous visa application, he stated he worked for a company named Asinex as an engineer. *See* Exh. 6.

Respondent testified h▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ However, Respondent was asked whether had ever been arrested or convicted for any offense or crime on his visa applications. *See* Exhs. 6, 7. Respondent answered, "NO" on both applications. *Id.* The inconsistent answer goes to the heart of Respondent's claim. It is not clear why Respondent would not disclose ▮▮▮▮▮▮▮▮▮▮▮ especially in regards to the second visa application. Based on Respondent's testimony he was in South Africa when he filed the visa application. Therefore, there is no reason why Respondent should not have included the a▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ d▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Further, Respondent did not claim he was ever ▮▮▮▮▮▮▮▮▮▮▮▮, when he was interviewed by border patrol officers. *See* Exh. 8, p. 6. Respondent stated his life was being threatened when he returned to ▮▮▮▮ after working in South Africa for three years. *Id.*

Respondent testified he was a member of the ▮▮▮▮; however, in his sworn statement to border patrol officers he stated he was a member of the ▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Exh. 8, p. 6. The Court notes the ▮▮▮ and ▮▮▮ are not the same entity and in fact ▮▮▮▮▮▮▮▮▮▮▮he inconsistency goes directly to the heart of Respondent's claim.

In light of the discrepancies, some of which were detailed above, the Court makes an adverse credibility finding and denies Respondent's claim for withholding of removal under INA § 241 (b)(3) and his claim for protection from removal under CAT, 8 C.F.R. §§ 1208.16—1208.18 (2018). The falsity and inconsistency of information in addition to Respondent's lack of candor call into question the veracity of his testimony. If Respondent were eligible for asylum, the Court would deny his application on the basis of credibility. The inconsistencies between his testimony and his application in whole undermine the application. 8 C.F.R. §§ 1208.13(a) & 1208.16(b); *Matter of Mogharrabi*, 19 I&N Dec. 439, 445 (BIA 1987).

## IV. APPLICATION FOR WITHHOLDING OF REMOVAL

To establish a claim for withholding of removal, the applicant must establish a clear probability his or her life or freedom would be threatened in the country directed for removal on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3)(A); *INS v. Stevic*, 467 U.S. 407 (1984). The applicant must establish it is more likely than not he or she would be subject to persecution on account of one of the specified grounds. A claim for withholding of removal is factually related to an asylum claim, but the standard of proof is higher than the "well-founded" fear requirement for asylum. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 448–50 (1987).

E0118

## A. Past Threat to Life or Freedom

Persecution within the context of the INS regulations relates to persecution by authorities, supporters of the regime, the military, or the government unless political conditions [in the alien's country of origin] are so specially oppressive that a wider range of claims of persecution must be given credence." *Adebisi v. INS*, 952 F.2d 910, 913-14 (5th Cir. 1992) (internal quotations and citations omitted). Serious violations of basic human rights constitute persecution. *Matter of T-*, 20 I&N Dec. 571 (BIA 1992). The determination of whether mistreatment rises to the level of persecution must be made on a case-by-case basis. *Matter of C-Y-Z-*, 21 I&N Dec. 915, 924 (BIA 1997).

Persecution itself is an extreme concept that does not include every sort of treatment that our society regards as offensive. *Arif v. Mukasey*, 509 F.3d 677,680 (5th Cir. 2007). Furthermore, the persecution must involve conduct that is extreme, otherwise a significant percentage of the world's population would qualify for asylum. *Majd v. Gonzales*, 446 F.3d 590, 595 (5th Cir. 2006). A finding of past persecution requires Respondent to present evidence that is so compelling that "no reasonable factfinder could fail to find the requisite fear of persecution." *Jukic v. INS*, 40 F.3d 747, 749 (5th Cir. 1994); *Adebisi v. INS*, 952 F. 2d 910, 913 (5th Cir. 1992) (noting "The law regulating persecution claims, although humane in concept, is not generous.") *See Matter of Kasinga*, 21 I&N Dec. 357, 367 (BIA 1996) (nexus is established where the central reason for persecution is to overcome a protected characteristic). Respondent has not established that extreme harm or suffering was inflicted on him in order to punish him for possessing a belief or characteristic that his purported persecutor sought to overcome. *See Arif v. Mukasey*, 509 F.3d 677, 680 (5th Cir. 2007).

Here, after considering all of the alleged acts cumulatively, the Court finds Respondent has not shown past harm in          . Absent consideration of Respondent's non-credible testimony, there is insufficient evidence to determine if Respondent was ever harmed in          and if he was it is not clear how serious the harm was. However, Respondent did submit two accounts to corroborate his claim or at least his claim from May 6, 2015. *See* Exh. 4, Tabs 2 and 3. In one account from a nurse in          (Ms. Nsom), who is also the sister of Respondent's friend          , Respondent's injuries were detailed. *Id.* at Tab 2. However,          statement omits broken teeth that Respondent claimed. *Id.* Respondent testified he was hit in the face with the butt of a rifle and lost teeth as a result, yet          statement does not mention the injury. *Id.* The injury coupled with Respondent's incapacitation was the most serious Respondent claimed and thus the Court will give reduced weight to          account. The BIA has made clear, an Immigration Judge has broad discretion to accept and assign evidentiary weight to evidence, may make reasonable inferences from direct and circumstantial evidence in the record as a whole, and is not required to accept a respondent's account where other plausible views of the evidence are supported by the record. *See Matter of D-R-*, 25 I&N Dec. 445, 454 (BIA 2011). Additionally, neither          nor her brother          appear to be aware that Respondent returned to          in 2019 and if they were, they did not mention it.

Regardless, aside from          testimony there is little evidence Respondent was ever arrested in 2015 and even less evidence he was detained in 2008 or 2019.

E0119

Respondent submitted a letter from the ___, which alleges Respondent was arrested. *See* Exh. 4, Tab 1. However, the letter does not provide dates Respondent was allegedly arrested. *Id.* Additionally, the letter omits Respondent's claimed arrest in 2009, despite mentioning Respondent's brother's imprisonment and subsequent diagnosis as well as death as a result of tuberculosis, which allegedly occurred in 2003. Further, the letter does not mention any detention or arrest of Respondent in 2019 despite Respondent's in-court testimony. *Id.* Thus, the Court will give the document reduced weight.

Considering the evidence holistically, Respondent, at best, was harmed once after being arrested by the ___ police in 2015. The extent of the injuries is not clear, but it does not appear to have been so serious as to meet the level of persecution as required by the INA. Nevertheless, after thorough consideration of all of the alleged persecutory acts cumulatively, the Court finds Respondent did not suffer past persecution in ___ *Matter of O-Z- & I-Z*, 22 I&N Dec. 23, 25—26 (BIA 1998) (finding that four physical attacks, repeated threats, humiliation, and vandalism in the aggregate rose to the level of persecution).

## B. Nexus

An applicant must also demonstrate nexus or a clear probability the threat to life or freedom would be on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3)(A); *INS v. Stevic*, 467 U.S. 407 (1984).

Respondent indicated in his I-589 he would be harmed based on his political opinion. *See* Exh. 2.

### 1. Political Opinion

If persecution is claimed on account of political opinion, the applicant must allege specific facts from which it can be inferred he holds a political opinion, which is known to his persecutor, and the persecution was or will be on account of the political opinion. *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992).

Here Respondent alleged he was harmed because of his political opinion. He stated he was

However, it is not clear based on Respondent's testimony whether ___ However, Respondent's arrest likely had little to do with his political opinion. Respondent testified ___

## C. Future Threat to Life or Freedom

An applicant must establish a clear probability his or her life or freedom would be threatened in the country directed for removal. INA § 241(b)(3)(A); *INS v. Stevic*, 467 U.S. 407 (1984).

Here, Respondent has not established a clear probability he would be harmed if he returned to ▓ Respondent may have a subjective fear of returning to ▓ but his subjective fear is not objectively reasonable. Respondent claims he was harmed by the military and he fears they will harm him again. However, there were several years between the alleged attacks. Additionally, Respondent's alleged fears are not reasonable and are undermined by his actions. Respondent testified he left ▓ in 2015 to South Africa, but returned in 2019 after his visa expired. Respondent did not file for asylum in South Africa despite being allegedly married to a South African LPR. Respondent did not offer a clear or persuasive reason as to why he did not seek asylum in any of the countries he traveled even before he came to the United States; however, he did indicate some aversion to South Africa due to what he described as xenophobic attacks he heard of or treatment he experienced. Yet, Respondent admitted he traveled to France and Mozambique, but declined to apply for asylum, which undercuts his own explanation. Despite having multiple opportunities to seek protection in a host of countries Respondent declined to and chose to return to ▓ Objectively, his fear is not reasonable. Additionally, Respondent's testimony indicated he may have jumped bail. Respondent testified he was allowed to leave custody in 2015, after his ID and phone were taken as collateral in lieu of the total bail money he was required to pay, but he did not indicate he ever went back. The Court notes criminal prosecution, absent being excessive or politically motivated, does not amount to persecution. *Milat v. Holder*, 755 F.3d 354 (5th Cir. 2014). However, Respondent's fear, according to his testimony was not based on the 2015. Finally, Respondent's alleged wife and child still reside in ▓ unharmed. Further, Respondent submitted an alleged arrest warrant in his documents; however, the document is not translated and will receive no weight. *See* 8 C.F.R. § 1003.33. Regardless, without more the Court must find Respondent did not establish his fear of returning to ▓ is objectively reasonable.

## D. Withholding Conclusion

In conclusion, the Court finds Respondent failed to establish a clear probability his life or freedom would be threatened in ▓ on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3)(A); *INS v. Stevic*, 467 U.S. 407 (1984). Thus, the Court will deny his application.

## V.    APPLICATION FOR PROTECTION FROM REMOVAL UNDER CAT

8 C.F.R. § 1208.18(a)(1) defines torture as any act by which severe pain or suffering, whether mental or physical, is intentionally inflicted for purposes such as:

(1) obtaining information from him, or her, or a third person information or a confession; punishing him or her for an act he, or she, or a third person has committed or is suspected of having committed; or intimidating or coercing him or her, or a third person; or for any reason based on discrimination of any kind, when

E0121

pain or suffering is inflicted by or at the instigation of, or with the consent, or acquiescence of the government or other person acting in an official capacity.

In assessing the likelihood of torture, the Court considers all evidence relevant to the possibility of future torture, including, but not limited to, evidence of past torture; the possibility of internal relocation; evidence of gross flagrant or mass violations of human rights; ad relevant information regarding conditions in the country of removal. 8 C.F.R. § 1208.16(c)(3). However, to meet his burden, specific grounds must exist that indicate the alien would personally be at risk. *Matter of S-V-*, 22 I&N Dec. 1306, 1313 (BIA 2000). The mere existence of a consistent pattern of human rights violations in a particular country does not constitute a sufficient ground for finding that a particular person would more likely than not be tortured upon return to that country. *Id.*

Here after, considering all evidence in the record, the Court finds that Respondent has not established that he warrants protection from removal under CAT. *See* 8 C.F.R. §§ 1208.16(c), 1208.17(a). Respondent's testimony, if credible, may be sufficient to sustain the burden of proof without corroboration. 8 C.F.R. § 1208.16(c)(2); *see also Matter of Y-B-*, 21 I&N Dec. at 1139, 1139 (BIA 1999). However, if the applicant's testimony is the primary basis for the CAT claim and it is found not to be credible, an adverse credibility finding may provide a sufficient basis for denial of CAT relief. Here, Respondent's testimony was not credible, as detailed in the credibility section. It is not clear whether Respondent was ever harmed by the            authorities. At best, Respondent submitted evidence that was flawed and inconsistent within itself and inconsistent externally with his testimony, none of which presents a compelling basis to believe there is a likelihood that Respondent would be tortured if he were returned to            . Thus, the Court will deny his application.

## VI. CONCLUSION

In sum, the Court finds that Respondent is not credible, he is ineligible for asylum, if he were eligible for asylum the Court would deny his claim based on credibility, he did not meet his burden to warrant withholding of removal, and he did not meet his burden to warrant protection under CAT. *See* supra §§ III-V. The Court therefore, denies his application for withholding of removal under INA § 241(b)(3) as well as his application for protection from removal under CAT under 8 C.F.R. §§ 1208.16 to 1208.18.

In light of the foregoing, the Court enters the following orders:

## ORDERS OF THE IMMIGRATION JUDGE

**IT IS HEREBY ORDERED that Respondent's application for withholding of removal pursuant to INA § 241(b)(3) is DENIED.**

**IT IS HEREBY FURTHER ORDERED that Respondent's application for withholding of removal pursuant to the Convention Against Torture is DENIED.**

**IT IS HEREBY FURTHER ORDERED that Respondent be REMOVED from the United States to** 

E0122

5/20/2020

Date

W. Scott Laragy
Immigration Judge

---

**CERTIFICATE OF SERVICE**

THIS DOCUMENT WAS SERVED BY:     MAIL (M)     PERSONAL SERVICE (P)

TO: [ ] ALIEN  [ ] ALIEN c/o Custodial Officer  [ ✓ ] ALIEN'S ATTY/REP  [ ✓ ] DHS

DATE: _____5/20/20_____     BY: COURT STAFF _____

Attachments: [ ] EOIR-33    [ ] EOIR-28    [ ] Legal Services List    [ ] Other

E0123



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

Tachi, Godwill C
The Tachi Law Firm, LLC
7501 Greenway Center Dr
Suite 450
Greenbelt, MD 20770

**DHS/ICE Office of Chief Counsel - JNA**
**PO Box 410**
**Trout, LA 71371**

Name:                       A

**Date of this notice: 8/6/2020**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Malphrus, Garry D.

Userteam: Docket

E0124

U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*



**DHS/ICE Office of Chief Counsel - JNA**
**PO Box 410**
**Trout, LA 71371**

**Name:**                          **A**

**Date of this notice: 8/6/2020**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. §1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

Donna Carr

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Malphrus, Garry D.

Userteam:

E0125

**U.S. Department of Justice**                                Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

File:   A            – Jena, LA                    Date:

In re:                                                          **AUG - 6 2020**

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:  Godwill C. Tachi, Esquire

APPLICATION:  Asylum; withholding of removal; Convention Against Torture

The respondent, a native and citizen of          , appeals from the Immigration Judge's
March 3, 2020, decision which denied his applications for asylum and withholding of removal, as
well as his alternative request for protection under the Convention Against Torture. *See* sections
208(b)(1)(A), 241(b)(3)(A) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(1)(A),
1231(b)(3)(A); 8 C.F.R. §§ 1208.16(c), 1208.18. The Department of Homeland Security (DHS)
has not responded to the appeal. The appeal will be dismissed.

We review findings of fact determined by an Immigration Judge, including credibility findings,
under a "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i). We review questions of law,
discretion, and judgment, and all other issues in an appeal from the decision of an
Immigration Judge, under a de novo standard. 8 C.F.R. § 1003.1(d)(3)(ii).

The respondent contends on appeal that the Immigration Judge erred in finding that his claim
was not credible (Respondent's Br. at 22-28). We defer to the Immigration Judge's credibility
finding unless the alien establishes clear error in that finding. 8 C.F.R. § 1003.1(d)(3)(i). The
respondent's appellate arguments do not persuade us that the Immigration Judge's adverse
credibility finding is clearly erroneous (*see* IJ at 3, 7-10). *Id. See generally* sections
208(b)(1)(B)(iii), 241(b)(3)(C) of the Act. *See also* section 240(c)(4)(C) of the Act, 8 U.S.C.
§ 1229a(c)(4)(C); *Avelar-Oliva v. Barr*, 954 F.3d 757 (5th Cir. 2020) (upholding adverse
credibility finding under REAL ID Act credibility standards); *Matter of J-Y-C-*, 24 I&N
Dec. 260 (BIA 2007) (same).

The Immigration Judge based his adverse credibility finding, in part, on the discrepancies
between the statements that the respondent made upon being intercepted upon arrival to the
United States, versus his testimony before the Immigration Judge (IJ at 3, 9). The Memorandum
of Investigation (Form G-166C) relating to the respondent's interception near the
United States/Mexico border reflects that the respondent was with a woman from          when
he was discovered by a border patrol agent, that he stated that he was entering the United States to
seek health-related treatment, and that he presented a fake lawful permanent resident card to the
agent and stated that he had paid $50 for the card (IJ at 3, 9; Exh. 8). The respondent testified, in
contrast, that he was alone when he was approached by the border patrol agent, that he did not
claim to be entering the United States to seek health-related treatment, that he did not present a
fake lawful permanent resident card, and that he had paid $50 to have his own identification
document from          scanned (IJ at 3, 6-7, 9; Tr. at 62-65, 86-91).                    E0126



"In light of the detailed findings by the Immigration Judge, the respondent was obligated on appeal to challenge those findings in a specific manner." *Matter of R-S-H-*, 23 I&N Dec. 629, 641 (BIA 2003). Yet the respondent does not challenge on appeal the Immigration Judge's findings concerning the foregoing inconsistencies in the record (*cf.* Respondent's Br. at 4-5, 22-27). The respondent has thus waived his opportunity to challenge these factors underlying the Immigration Judge's adverse credibility finding. *See Matter of R-A-M-*, 25 I&N Dec. 657, 658 n.2 (BIA 2012) (dispositive issue addressed in Immigration Judge's decision waived by alien where not raised on appeal). We affirm the Immigration Judge's adverse credibility finding based on the above unchallenged grounds.[1]

The Immigration Judge further observed that there were various discrepancies between the statements the respondent made before the asylum officer, and his in-court testimony (IJ at 7-8). For instance, whereas the respondent answered in the negative when asked by the asylum officer whether he was injured as a result of allegedly being beaten at a December 16, 2018, protest, when asked the same question by the Immigration Judge he responded that he was bruised (IJ at 7-8; *compare* Exh. 2 (Credible Fear Interview Notes at 4) *with* Tr. at 75-77). In addition, whereas the respondent only told the asylum officer that he was beaten with a belt at his home on January 28, 2019, he told the Immigration Judge that he was beaten with belts and kicked (IJ at 8; *compare* Exh. 2 (Credible Fear Interview Notes at 4) *with* Tr. at 50-51, 81). Notwithstanding the respondent's arguments to the contrary (Respondent's Br. at 23-24), the Immigration Judge appropriately relied on these discrepancies in assessing the respondent's credibility, where the respondent is fluent in English (Tr. at 24, 33) and "nothing in the record or in the detailed log of that [credible fear] interview indicates that []he was unable to understand the questions, that the asylum officer failed to adequately elicit details of [his] claim, or that []he was reluctant to reveal information." *See Avelar-Oliva v. Barr*, 954 F.3d at 764-65.

The Immigration Judge also found it implausible that the respondent could flee from two guards when the vehicle in which he was being transported was stopped by protesters, despite the fact that he claimed to have been beaten with belts and kicked for an hour or more per day for 26 of the preceding 28 days, and that he had been poorly fed and forced to sleep on a cold floor during that 28 day period (IJ at 5-6, 8-9; Tr. at 53-56, 58, 83-84). Similarly, considering the respondent's severe alleged mistreatment during the 28 days of detention, the Immigration Judge found that his testimony that he was only bruised and felt unwell after nearly a month of physical abuse was not plausible (IJ at 8). We are not persuaded by the respondent's appellate argument that these plausibility finding amounts to bald speculation by the Immigration Judge (Respondent's Br. at 27-28; *cf.* Respondent's Br. at 8). *See generally Yanfen Wang v. Holder*, 569 F.3d 531, 535-37 (5th Cir. 2009) (upholding adverse credibility finding that was based in part on Immigration Judge's finding that aspects of alien's claim were implausible). *See also Matter of D-R-*, 25 I&N Dec. 445, 454 (BIA 2011) (an Immigration Judge may make reasonable

---

[1] The United States Court of Appeals for the Fifth Circuit has held that a Record of Deportable/Inadmissible Alien (Form I-213), which is "essentially a recorded recollection of a conversation with [an] alien," is generally admissible unless the alien establishes that the statements reflected in the Form I-213 are not those of the alien, or that they were obtained through coercion. *See Bustos-Torres v. INS*, 898 F.2d 1053, 1056 (5th Cir. 1990). The Form G-166C in the respondent's case is likewise "essentially a recorded recollection of a conversation with [the respondent]" (Exh. 8), and the respondent has not argued on appeal that the statements recorded on the document are not his, or that they were obtained through coercion. *See generally id.*

E0127

A

inferences from direct and circumstantial evidence in the record as a whole and is not required to accept an alien's account where other plausible views of the evidence are supported by the record).

We conclude that the foregoing credibility factors support the Immigration Judge's adverse credibility finding, considering "the totality of the circumstances, and all relevant factors" (IJ at 3, 7-10). *See* sections 208(b)(1)(B)(iii), 240(c)(4)(C), 241(b)(3)(C) of the Act. We therefore need not address the remaining credibility issues cited in support of the Immigration Judge's credibility assessment. *See Avelar-Oliva v. Barr*, 954 F.3d at 766-67.

The Immigration Judge appropriately assessed the respondent's documentary evidence, and reasonably determined that it was insufficient to independently establish his eligibility for relief or protection from removal in the absence of credible testimony (IJ at 10-11). *Id.* at 769-72. In view of the foregoing, the Immigration Judge appropriately denied the respondent's applications for asylum, withholding of removal, and protection under the Convention Against Torture based on the adverse credibility finding (IJ at 11). *Id.* at 772. As such, we need not reach the respondent's remaining appellate arguments concerning the alternative grounds cited by the Immigration Judge in support of the denial of relief and protection from removal. *See generally Matter of J-G-*, 26 I&N Dec. 161, 170 (BIA 2013). Accordingly, the following order will be entered.

ORDER: The appeal is dismissed.

NOTICE: If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the DHS, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $813 for each day the respondent is in violation. *See* Section 274D of the Act, 8 U.S.C. § 1324d; 8 C.F.R. § 280.53(b)(14).

*Col mess*

FOR THE BOARD

E0128

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
JENA, LOUISIANA

File: A███████████                                                    March 3, 2020

In the Matter of

                                            )
                                            )     IN REMOVAL PROCEEDINGS
                                            )
RESPONDENT                                  )

CHARGES:

APPLICATIONS:

ON BEHALF OF RESPONDENT: CARLO TACHI

ON BEHALF OF DHS: MARISHA DAVIS

ORAL DECISION AND ORDERS OF THE IMMIGRATION JUDGE

I. PROCEDURAL HISTORY

The respondent is a native and citizen of ███████. On September 27, 2019,
the Department of Homeland Security served the respondent with a Notice to Appear,
charging him as removable from the United States. On October 30, 2019, the
respondent admitted the allegations and removability was found by clear and convincing
evidence. ███████ was designated as the country of removal. The respondent
requested relief in the form of asylum, withholding of removal, and protection under the
Convention against Torture. The hearing on the respondent's application was held on

1

March 3, 2020, and the respondent testified in support of his I-589 application. All
evidence in the record has been considered, whether specifically mentioned or not in
this decision. The Court now issues this oral decision.

## II. APPLICABLE LAW

An Addendum stating the standards of law and burdens of proof relevant to these
issues will be served on the parties and a copy placed in the record of proceedings.
That Addendum is hereby incorporated into this decision by reference.

## III. SUMMARY OF THE EVIDENCE

The Court has considered all of the evidence submitted into the record. If a
specific piece of evidence or portion of testimony is not described with particularity, it
does not mean it was not reviewed or considered.

### A. Documentary Evidence

Exhibit 1, Notice to Appear;

Exhibit 2, asylum officer's referral packet, including interviews with an asylum
officer and a Border Patrol agent;

Exhibit 3, the respondent's I-589 application for asylum and for withholding of
removal;

Exhibit 4, the respondent's supporting documents, Tabs A through F, received
January 15, 2020;

Exhibit 5, the respondent's supporting documents and country conditions, Tabs A
through E, received January 15, 2020;

Exhibit 6, the respondent's submission of identification documents, received
March 2, 2020;

Exhibit 7, the Department of Homeland Security country conditions articles;

Exhibit 8, Border Patrol memo of investigation.

A                                         2                          March 3, 2020

At the outset, the Court notes that the respondent's claim is based on his political opinion and his membership in a particular social group composed of the ▮▮▮▮▮

▮▮▮▮▮

### B. Summary of the Respondent's Testimony

The respondent is 22 years old, and he was born in ▮▮▮▮▮ in the southwest region. This is an English-speaking region. The respondent is married and has no children. The respondent's parents are alive and living in ▮▮▮▮. The respondent has four siblings who also live in ▮▮▮▮. The respondent went through secondary school in ▮▮▮▮. In ▮▮▮▮, the respondent was a mechanic.

The respondent left ▮▮▮▮ on March 27, 2019. He entered the United States on September 2, 2019. The respondent went from ▮▮▮▮ to the ▮▮▮▮ to ▮▮▮▮, to ▮▮▮▮, and to Mexico, all before coming to the United States. The respondent reached the Mexico border with the United States on April 1, 2019. The respondent waited in Mexico for his number to be called so that he could enter and ask for asylum.

The respondent did not enter through the port of entry. He did not wait for his number to be called and instead, entered illegally and was apprehended by a Border Patrol agent. The respondent stated there was a woman who came through at the same time he entered the United States, but that he was alone when apprehended. The respondent denies telling the Border Patrol agent he entered to seek health treatment. The respondent denies giving the officer a fake lawful permanent resident card or that he told the officer he paid $50 for the card. The respondent states he gave the officer a ▮▮▮▮ ID card.

The respondent did not have a legal right to live or work permanently in any of

A▮▮▮▮                               3                          March 3, 2020

the countries he passed through on his way to the United States. The respondent did
not apply for asylum or any other form of protection in any of the countries he passed
through on his way to the United States. The respondent did not pay a smuggler to get
him from ███████ to the United States. The respondent does not owe anyone
anything, no work, no services, no favors, no money for bringing him to the United
States.



The respondent left ███████ because he was mistreated by the ███████

The respondent was arrested one time in ███████ The respondent took part

A███████                                    4                              March 3, 2020

[redacted]



caught by the police or the military.



The respondent was in          or almost a week.  Thereafter, the respondent

started his journey to the United States.  If the respondent returns to          he will

be arrested, beaten, tortured, and killed.  The respondent states his family has been

threatened since he left to find out his whereabouts.  The respondent states there is no

place he can live in          and be safe.

On cross-examination, the respondent denies telling the Border Patrol agent he

A                                          6                            March 3, 2020

entered the United States with a female and was seeking medical treatment. The
respondent states there is a difference between the police and military. They are two
different agencies, and the respondent is able to distinguish between the military and
the police. The respondent does not know his uncle's views on the government and the
military. He does not know his mother's views on the government or the military. The
respondent states that there is difference between a prison and a police station. The
respondent states that generally you were taken to prison after trial, but he was being
taken because he was a



The respondent has heard of the                                                                     The

                                                          . The respondent


## IV. ELIGIBILITY FOR RELIEF

### A. Credibility

The Court has considered the respondent's testimony in accordance with his
documentary evidence, including his credible fear interview, Border Patrol interview, I-
589 application, and his supporting documentation. Based on the totality of the
circumstances and considering the plausibility and implausibility of the respondent's
testimony, and in consideration of the record evidence, the Court finds the respondent
not to have testified credibly.

With respect to the incident of December 16, 2018, the respondent told the
asylum officer he had his hands tied around his legs and he was beaten with a belt.
The respondent also told the asylum officer that he was hit with a gun. The testimony of
the respondent stated he was beaten with a belt and kicked. The respondent said
nothing about a gun. The respondent's story has changed.

With respect to the incident on December 16, 2018, the respondent told the

A                                                    7                              March 3, 2020

asylum officer he had no injuries. The testimony of the respondent stated he had
bruises. His stories differ.

With respect to the incident on January 28, 2019, the respondent told the asylum
officer he was made to lie on the floor and then beaten with belts. The respondent
mentioned no injuries. In testimony, the respondent stated he was laying on the floor
and kicked and beaten with a belt. As a result, the respondent states his jaw was
swollen. The respondent did not tell the asylum officer about being kicked or about the
injury to his jaw. The respondent's story has changed.

With respect to the arrest and subsequent detention on February 15, 2019, the
respondent told the asylum officer that after his escape, he went to a friend's where he
stayed for three days. The testimony of the respondent stated he was there for two
days. The respondent's stories again differ.

As a result of the February 15, 2019 arrest, the respondent stated he was
detained and beaten for 26 of 28 days where, in addition to being poorly fed and made
to sleep on a cold floor. The respondent had his hands and legs tied. He was hit with a
belt and kicked for at least an hour at a time. The respondent was also told to roll on a
cold floor. The respondent had bruises all over his body and felt sick. The respondent
did not seek medical treatment. The Court finds it implausible to believe that the
respondent could be so beaten for such long periods of time over the course of 26 of 28
days and yet not need medical attention and describe his injuries only as bruises.

Further, the respondent asks the Court to believe he escaped from the military
while being transferred from a police station to a prison. The respondent said the
protestors blocked the road, officers got down, leaving only two officers in the truck.
The respondent took the opportunity to jump down and run into the bush. It is
implausible to believe that his captors who were on one hand so overbearing and

A█████         8                                    March 3, 2020

calculating as to arrest, detain, and beat the respondent repeatedly, while on the other hand, so inept that the respondent was able to simply run or walk away from his captivity, especially where as the respondent would like the Court to believe he had just been repeatedly beaten for 26 of 28 days. It is much more likely the respondent simply would have been shot.

The respondent told a Border Patrol agent who apprehended respondent after he entered the United States that he was seeking health treatment. The respondent told the Border Patrol agent that he had an inhaler, but his breathing difficulties continued and that he thought that the United States could help him. The respondent denies this, but the Court would note that the respondent told the asylum officer that he suffered from asthma. This lends credibility to Exhibit 8 while putting the credibility of the respondent deeper into question. The Court notes the Border Patrol agent's memorandum of investigation also states that the respondent gave him a fake lawful permanent resident card that he paid $50 to obtain. The respondent also denied this, claiming he only gave the Border Patrol agent a ⬛⬛⬛⬛⬛ identification card. Again, as there is evidence to indicate the memorandum of investigation is credible, the Court cannot find the respondent to be credible.

The alien bears the evidentiary burden of proof and persuasion. An applicant's own testimony may be sufficient to meet his burden of proof for his asylum claim without corroboration if the testimony is credible, persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee. In determining whether the applicant has met his burden of proof, the Court may weigh the credible testimony along with other evidence of record. However, where the Court determines that an applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot

A⬛⬛⬛                                             9                                      March 3, 2020

reasonably obtain the evidence. In this instance, the Court has found the respondent not to be credible.

The respondent did provide a number of documents at Exhibit 4. The document in Tab A of Exhibit 4 is a lawyer's affidavit. It is hearsay, and the lawyer has no firsthand knowledge of any of the information in the document. The document does not speak to any of the incidents occurring in December of 2018 or January and February of 2019. It does not corroborate any of the harm the respondent claimed to have endured.

The document at Exhibit 4, Tab B, is an affidavit from the respondent's father. This affidavit also contains conclusory statements and is not based on firsthand knowledge. It lacks specificity or detail. The document does not evidence anything concerning the December 2018 or January 2019 incidents or the February 2019 incident. Further, with regard to the February 2019 incident, the affidavit says nothing about the respondent's wife, yet the respondent clams his wife was sexually assaulted during the February 2019 incident.

The document at Tab C is an affidavit from a neighbor. This document also contains conclusory statements and sets forth no basis for the neighbor's knowledge. It is nonspecific and fails to include the December 2018 incident.

The document at Exhibit 4, Tab D is an affidavit from the uncle. It also contains conclusory statements, is nonspecific, and there is no basis for the uncle's knowledge. This document also does not speak to the December 2018 or January 2019 incidents, only the February 2019 incident.

The document at Tab E is an affidavit from the respondent's wife. It is conclusory, nonspecific, and almost completely devoid of detail. It does not speak to the incident occurring in December 2018, only the incidents of January and February 2019.

The document at Tab F also is conclusory and nonspecific and does not speak to any incidents occurring in December 2018 or January of 2019.

The respondent did not provide the Court with any medical documents, which would substantiate his injuries, no pictures of him in any protests, no pictures of any injuries he received. He provided no social media extracts regarding any protests. In fact, he provided no proof of the actual protests whatsoever. He provided no police records or prison statements indicating that he had ever been detained or was being transferred to a prison. In short, the respondent failed to provide any objective, independent, trustworthy evidence that would in fact corroborate any of the respondent's testimony.

As a result, the Court would deny the respondent's applications for both lack of credibility and corroboration.

If an asylum application is fatally flawed in one respect, an Immigration Judge or the Board need not examine the remaining elements of the asylum claim.

## B. Asylum

### 1. Third-Country Transit Bar

At the outset, the Court finds the respondent is not eligible to seek asylum in the United States. The respondent, who entered the United States on September 2, 2019, through the southern border, is subject to the Third-Country Transit Bar. The respondent did not apply for asylum or any other form of protection in any other country he passed through on the way to the United States, and the respondent has not established that he was a victim of a severe form of trafficking in persons. The respondent was not a victim of sex trafficking or trafficking for the purposes of involuntary servitude, peonage, debt bondage, or slavery. The Court also takes judicial notice of the fact that Mexico is a party to the United Nations Convention against



11

March 3, 2020

E0139

Torture.

## 2. Past Persecution

Even if the respondent were to have been found credible and also to have
provided sufficient corroborating evidence and was not subject to the Third-Country
Transit Bar, the Court would, in the alternative, find that his application is denied
because he failed to show past persecution or a well-founded fear of future persecution
on account of a protected ground.

The respondent first claimed he suffered past persecution and that he has a well-
founded fear of persecution on account of his political opinion for having participated in
protests for the rights of English-speaking                He also claims he suffered
past persecution and has a well-founded fear of persecution on account of his
membership in a particular social group, defined as                          minority.

The law regulating persecution claims, although humane in concept, is not
generous. The term "persecution" does not encompass all treatment society regards as
unfair, unjust, unlawful, or unconstitutional; rather, to constitute persecution, the conduct
must be extreme. Not every infliction of harm by one person upon another rises to the
level of persecution. Threats, particularly non-imminent threats, and harassment do not
qualify as harm sufficient to establish past persecution. Neither discrimination nor
harassment ordinarily amounts to persecution, even if the conduct amounts to morally
reprehensible conduct. The Board of Immigration Appeals has addressed the issue of
unfulfilled threats and has found not all threats rise to the legal level of persecution.
Moreover, brief detentions are not persecution.

Detentions may be harsh, but it does not qualify as extreme treatment,
particularly when it is so brief and where there is no evidence the respondent suffered
significant physical harm or injury during the incarceration. The Fifth Circuit has held

E0140

that an alien who participated in a large demonstration, and was detained on several
occasions for three hours, interrogated, and beaten did not rise to the level of
persecution and did not establish past persecution.

In other cases, the Fifth Circuit has held that denigration, harassment, threats,
and a minor head injury from thrown rocks did not constitute persecution. The Fifth
Circuit has also held that long detention for days may be harsh, but does not qualify as
an extreme treatment, particularly where there is no evidence the respondent suffered
significant physical harm or injury during the incarceration. In other cases, the Fifth
Circuit stated that being detained for days, threatened, and subjected to physical abuse
through detention did not rise to the level of harm necessary for past persecution. The
Fifth Circuit has also previously held that an applicant's unpleasant and unduly
prolonged one month of detention did not rise to the level of persecution. In another
case, a nine-day detention, beaten with a baton, and subsequent monitoring did not rise
to the level of persecution. The Court finds that the mistreatment the respondent
described is not worse than the treatment of the aliens described above.

Past incidents should be taken in the aggregate to determine if they rise to the
level of persecution. Past persecution may also be established based on cumulative
effect of multiple threats and attacks, even if no single incident is sufficient.

The respondent claimed multiple instances of mistreatment by government
authorities on account of his political opinion or membership in a particular social group.
This includes three incidences, one in December of 2018 and two in January 2019,
where the respondent claimed he was physically mistreated by the government for his
participation in different political protests. The incidents all appear to have been brief,
isolated, and unrelated. The respondent did not suffer any significant injury, only some
bruising and a swollen jaw. The respondent did not see a doctor or get medical

A                                        13                              March 3, 2020

E0141

attention for any of the injuries. There is no persuasive evidence that the respondent was targeted for harm in any of these incidences, as others were also mistreated for similar reasons.

During the incident on January 28, 2019, and occasioned by the respondent's participation in a political protest, the respondent also claims his wife was sexually assaulted. However, there is no persuasive evidence that this was done because of the respondent's participation in the protest, as opposed to her being a victim of circumstances; a bystander who was allegedly taken advantage of by a policeman or policemen.

The incident in February 2019 appears unrelated to the first two claimed incidents as it occurred as the result of the respondent's participation and arrest in a February 15, 2019 protest. While the respondent claims numerous longstanding beatings, the respondent suffered only bruising. He did not see a doctor or get any other medical attention.

Further, while the respondent claims the government was behind all mistreatment, the respondent failed to show that the mistreatment was on account of his political opinion or membership in a particular social group as opposed to the government's lawful exercise of its authority to deal with civil disturbances.

Further, and as it is clear, ⬛⬛⬛ has been involved in what could be characterized as a civil war. Essentially, ⬛⬛⬛⬛⬛ have protested

⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ Generalized conditions of civil strife, including so-called civil war, do not support an asylum claim unless the applicant has been individually

E0142

targeted on the basis of a protected ground.

The evidence in this case is not persuasive that the respondent has been so targeted. The limited nature of the protection offered by refugee law is highlighted by the fact that it does not cover those fleeing from natural or economic disasters, civil strife, or war. What is clear is that ⬛⬛⬛⬛, or has, undergone a civil war of sorts, with separatist groups fighting the government for an independent ⬛⬛⬛⬛⬛⬛. This is exacerbated by persons demonstrating and protesting their dislike or disagreement with the government. In this sense, then the respondent fails to meet the definition of refugee.

### 3. Well-Founded Fear of Future Persecution

As the respondent did not establish that he suffered past persecution, he is not entitled to a presumption of a well-founded fear of future persecution. While the respondent may subjectively fear harm in ⬛⬛⬛⬛, he cannot establish his fear is objectively reasonable.

The respondent failed to demonstrate that any harm he experienced or fears that he may experience in ⬛⬛⬛⬛ ises to the level of persecution.

The respondent submitted country conditions information, including the Department of State 2018 Human Rights Report on ⬛⬛⬛. Other articles and the respondent's own testimony indicate that while human rights abuses committed by government forces do occur, abuses of similar magnitude are also committed by armed separatists against the general population of ⬛⬛⬛ As previously noted, ⬛⬛⬛ s locked in a civil conflict between ⬛⬛⬛⬛⬛⬛⬛

The Country Report indicates that the law requires organizers of public meetings, demonstrations, and processions to notify officials in advance. It does not require prior government approval of public assemblies, nor does it authorize the government to

suppress public assemblies that it has not approved in advance. Nevertheless, officials routinely asserted the law implicitly authorizes the government to grant or deny permission for public assemblies. Authorities typically cited security concerns as the basis for deciding to block assemblies. Police and gendarmes forcefully disrupt the meetings and demonstrations of citizens, trade unions, and political activists throughout the year, arrested participants in unapproved protests, and blocked political leaders from attending protests.

The Department of Homeland Security has also submitted evidence at Exhibit 7 consisting of a number of articles that indicate the ruling government in Cameroon is taking steps to calm the Anglophile conflict, including releasing over 300 separatist prisoners, adopting dozens of recommendations to restore peace, and the granting in December 2019 of special status to two English speaking regions within          that benefit the regions, including benefits to the schools and to the judiciary. In light of these recent and wide sweeping changes, it is unlikely the government or the police or military have the continued inclination to punish the respondent.

Further, it appears the respondent does not fear he will be harmed in the future because he aligned with the separatists, but because he participated in what, to authorities, was an unlawful assembly and then escaped, the only time he was arrested and detained. Thus, the police are not seeking to overcome the respondent's separatist leanings or beliefs, but to find an escaped prisoner.

Finally, the respondent's wife, parents, and siblings are all still living in

          . There is no evidence the respondent's family have been harmed in Cameroon since the respondent left Cameroon. This also reduces the respondent's well-founded fear of future persecution.

The respondent did not establish he has a well-founded fear of future

A                                                          16                                    March 3, 2020

E0144

persecution.

### 4. Particular Social Group

The respondent, in part, indicated his applications are based on his membership
in a particular social group composed of ███████████ minority. In order to be
recognized as a viable particular social group, the respondent must show that this group
is composed of members who share a common immutable characteristic, is defined with
particularity, and is socially distinct within the society in question.

With regard to whether or not the group is composed of members who share a
common immutable characteristic, being ████████ nd being ██████ would be
an immutable characteristic. However, the respondent may not always be in the
minority. The group, as defined, also fails in that it is not defined with particularity. In
that sense, it is simply too broad, too vague, too amorphous a group to meet the
particularity requirement. In that sense, the respondent cannot show discernible
boundaries to the group. In that respect, the group could be composed of members
from all walks of life, including varying different religious, social, economic, professional,
and educational backgrounds. As a result, the group is simply too broad and too
amorphous a group to be stated with particularity. The group also fails to have been
stated with social distinction in that it is much more likely that if the respondent were
presented to ████████ society that he would be looked upon as a young
████████ male as opposed to a ████████ minority.

### C. Withholding of Removal

As the respondent has failed to meet his burden of proof for an asylum claim, the
Court finds he has not met the higher standard of proof for a withholding of removal
claim under the Act. A claim for withholding of removal is factually related to an asylum
claim, but the standard of proof is higher and harder to meet than the well-founded fear

A█████                                    17                          March 3, 2020

E0145

requirement for asylum.

D. Withholding of Removal Pursuant to the Convention against Torture

The Court finds the respondent failed to establish past torture. Although the harm the respondent states he experienced is unfortunate, the Court has found the harm the respondent allegedly experienced did not rise to the level of persecution. Therefore, the Court must also find the harm suffered is not extreme, cruel, and inhumane treatment within the meaning of torture.

The Court finds the respondent has failed his burden to show that it is more likely than not he would be tortured by, or at the instigation of, or with the consent of acquiescence of a public official or persons acting in an official capacity in While the respondent has provided Country Conditions articles on the mistreatment of the Department of Homeland Security has also submitted evidence at Exhibit 7, consisting of a number of articles that indicate the ruling government in          is taking steps to calm the          conflict, including the release of over 300 separatist prisoners, and adopting dozens of recommendations to restore peace, and the granting on December 19, 2019, of special status to two English speaking regions within          that benefit the regions.  In light of these recent and wide sweeping changes, it is unlikely the government of          , including its police or military have any further inclination to torture the respondent.

Finally, the record does not contain independent evidence sufficient to meet the respondent's burden of proving eligibility for protection under the Convention against Torture.

Consequently, the Court finds the respondent failed to establish by clear and convincing evidence that the          government more likely than not would torture him upon his return to          or that he would suffer torture with the consent

A          18          March 3, 2020

E0146

or acquiescence of ▮▮▮▮▮▮ officials.

Accordingly, the following orders shall be entered.

## ORDERS OF THE IMMIGRATION JUDGE

IT IS HEREBY ORDERED the respondent's application for asylum is denied.

IT IS HEREBY ORDERED the respondent's application for withholding of

removal pursuant to Immigration and Nationality Act Section 241(b)(3) is denied.

IT IS HEREBY ORDERED the respondent's application for withholding of

removal pursuant to the Convention against Torture is denied.

IT IS FINALLY ORDERED that the respondent be removed from the United

States to ▮▮▮▮ in accordance with the charges contained within the Notice to

Appear.

March 3, 2020                              *Please see the next page for electronic*

*signature*

LANDIS, BRENT H.
U.S. Immigration Judge

A▮▮▮▮                                  19                              March 3, 2020

March 3, 2020

E0148

//s//

Immigration Judge LANDIS, BRENT H.

i:0e.t|eoir federation services|brent.landis@usdoj.gov on April
22, 2020 at 3:50 PM GMT



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

5107 Leesburg Pike, Suite 2000
Falls Church, Virginia 22041

Nkongchu, Evaristus                    **DHS - ICE Office of Chief Counsel -**
African Legal Concierge, PLLC          **OAKDALE 2**
2100 West Loop South                   **1010 E. Whatley Rd.**
Suite 800                              **OAKDALE, LA 71463**
Houston, TX 77027


**Name:**  ████████████████              **A** ████████████


**Date of this notice: 9/1/2020**


Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk


Enclosure

Panel Members:
Pepper, S. Kathleen


Loaca D
Userteam: Docket

E0150

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*



**DHS - ICE Office of Chief Counsel -**
**OAKDALE 2**
**1010 E. Whatley Rd.**
**OAKDALE, LA 71463**

**Name:**           **A**

**Date of this notice: 9/1/2020**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. §1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

Donna Carr

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Pepper, S. Kathleen

LucasD
**Userteam:** Docket

E0151

**U.S. Department of Justice**

Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:    A███████ – Oakdale, LA

Date:      **SEP - 1 2020**

In re: ████████████████

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT: Evaristus Nkongchu, Esquire

APPLICATION:    Asylum; withholding of removal; Convention Against Torture

The respondent, who is a native and citizen of ██████, appeals from the Immigration Judge's March 9, 2020, decision denying his application for asylum under section 208 of the Immigration and Nationality Act, 8 U.S.C. § 1158, withholding of removal under section 241(b)(3) of the Act, 8 U.S.C. § 1231(b)(3), and request for protection under Article 3 of the Convention Against Torture, as implemented by 8 C.F.R. §§ 1208.16-.18. The appeal will be dismissed.

We review the findings of fact made by the Immigration Judge, including the determination of credibility, for clear error. 8 C.F.R. § 1003.1(d)(3)(i). We review all other issues, including questions of judgment, discretion, and law, de novo. 8 C.F.R. § 1003.1(d)(3)(ii).

We agree with the Immigration Judge that the respondent has not established that he is eligible for asylum or withholding of removal or for protection under the Convention Against Torture (IJ at 1-6, 8-9; Tr. at 43-70; Exhs. 2, 5, 6). *See Matter of J-Y-C-*, 24 I&N Dec. 260 (BIA 2007). The Immigration Judge's adverse credibility finding is not clearly erroneous (IJ at 1-6, 8-9). Section 208(b)(1)(B)(iii) of the Act (in making a credibility determination the Immigration Judge should consider the totality of the circumstances, including the asylum applicant's demeanor, the plausibility of his account, and inconsistencies in the applicant's or witnesses' statements, the internal consistency of each such statement, and the consistency of such statements with other evidence of record).

The Immigration Judge's adverse credibility finding was based on inconsistencies between the respondent's testimony and other evidence in the record. As the Immigration Judge noted, the respondent's evidence with respect to the timing and dates of his first detention and his 13-day period of detention, as well as the frequency of the abuse in detention and whether he was beaten every day, was inconsistent (IJ at 4-5; Tr. at 34-37, 46-53; Exhs. 2, 5 at Supplement B, 6 at 21, 28). *See J-C-H-F-*, 27 I&N Dec. 211, 216 (BIA 2018) (noting that the accuracy and reliability of border interviews are matters of fact to be determined by the Immigration Judge and reviewed by us for clear error). While the respondent mischaracterizes the evidence in a number of respects,[1]

---

[1] For instance, the respondent argues that the Immigration Judge erred in finding an inconsistency with his SCNC membership because, in his testimony and all of the documents of record, there is no instance where the respondent stated clearly that he was a member of the ████ (Respondent's Br. at 12). However, this is not an accurate reflection of the record or the Immigration Judge's

A▉▉▉▉▉

as the Immigration Judge observed, the respondent's claim had evolved, was different from the story he told during his credible fear interview, was different from his sworn statement, and was different from his in-court testimony and asylum application (IJ at 1-6; Exhs. 2, 5, 6C; Respondent's Br. at 8-14). *See Zhang v. Gonzales*, 432 F.3d 339, 344-45 (5th Cir. 2005); *see also Yangping Liu v. Lynch*, 644 F. App'x 301 (5th Cir. 2016).

While the respondent explained that it was noisy and cold during his interview and the officer made a mistake recording his sworn statement, the Immigration Judge was not persuaded that his explanation resolved the inconsistencies and omissions in his evidence (Exhs. 2, 6C). *Matter of D-R-*, 25 I&N Dec. 445, 454 (BIA 2011) (explaining that an Immigration Judge is not required to accept a respondent's assertions, even if plausible, where there are other permissible views of the evidence based on the record), remanded on other grounds, *Radojkovic v. Holder*, 599 F. App'x 646 (9th Cir. 2015).

The respondent also claims that the Immigration Judge's erred in noting that he provided a false name at the border, when he readily and honestly admitted to doing so (IJ at 2; Tr. at 65; Respondent's Br. at 8-9). In light of our foregoing determinations, we do not rely on this specific finding as other record evidence amply supports the Immigration Judge's decision. As the foregoing demonstrates, there are numerous other discrepancies that support the Immigration Judge's adverse credibility determination in this proceeding. Therefore, the respondent cannot demonstrate any prejudice in this respect. *See Matter of Santos*, 19 I&N Dec. 105 (BIA 1984).

As we affirm the Immigration Judge's adverse credibility finding, we need not address the respondent's remaining arguments related to the merits of his asylum application (Respondent's Br. 15-17). *See Matter of A-B-*, 27 I&N Dec. 316, 340 (A.G. 2018) (noting that if an alien's asylum application is fatally flawed in one respect, an Immigration Judge or the Board need not examine the remaining elements of the asylum claim); *see also Matter of J-J-G-*, 27 I&N Dec. 808 (BIA 2020). We also affirm the Immigration Judge's determination that, in the absence of credible testimony, the respondent did not meet the higher burden of proof required for withholding of removal (IJ at 11). *Rui Yang v. Holder*, 664 F.3d 580, 588-89 (5th Cir. 2011).

The respondent argues that the Immigration Judge improperly used the adverse credibility finding against him when there was objective evidence supporting his protection claim (Respondent's Br. at 17-19). However, we disagree with the respondent's assertion (IJ at 9). Further, we discern no legal or clear factual error in the Immigration Judge's finding that the respondent did not establish that it is more likely than not that he will be subject to torture that is "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other

noted inconsistency. The record reflects that the respondent initially stated in his sworn statement that he fled Cameroon "because I was a member of the ▉▉▉" (Exh. 2 at 2). During the sworn

▉▉▉▉▉). The Immigration Judge properly considered this inconsistent with his other evidence and testimony reflecting that he was not a member of the ▉▉▉ (Tr. at 65-66).

A

person acting in an official capacity" if returned to Cameroon (IJ at 9; Exhs. 4, 6). *See* 8 C.F.R. §§ 1208.16(c)(2) and (3).

To the extent the respondent argues that the Immigration Judge misrepresented facts and did not properly administer the hearing (Notice of Appeal), the record reflects that the respondent was afforded full and fair consideration of his case in accordance with the applicable standards. 8 C.F.R. § 1003.1(d)(3)(ii).

In sum, the respondent's appellate arguments do not persuade us that the Immigration Judge's decision should be disturbed.

Accordingly, the following order shall be entered.

ORDER: The appeal is dismissed.

NOTICE: If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $813 for each day the respondent is in violation. *See* Section 274D of the Immigration and Nationality Act, 8 U.S.C. § 1324d; 8 C.F.R. § 280.53(b)(14).

FOR THE BOARD

E0154


UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
OAKDALE, LOUISIANA

File: A

March 9, 2020

In the Matter of

)
)       IN REMOVAL PROCEEDINGS
)
RESPONDENT                         )

CHARGES:

APPLICATIONS:

ON BEHALF OF RESPONDENT: LUIS MARRERO

ON BEHALF OF DHS: MAHOGRGANY WATKINS

ORAL DECISION OF THE IMMIGRATION JUDGE

The respondent is a native and citizen of          . He was charged with being

removable under INA Section 212(a)(7)(A)(i)(I). The Court previously sustained the

charge of removability against the respondent and designated          as the country

of removal. The respondent filed for relief in the form of asylum, withholding of removal,

and protection under the Convention against Torture, with membership in a particular

social group and political opinion as the bases of his applications for asylum and

withholding of removal. These proceedings were conducted via video teleconference.

The Immigration Judge sits in the Falls Church Immigration Adjudication Center. The

1

E0155

respondent and all other parties were present in Oakdale, Louisiana.

## EVIDENCE

The Court admitted Exhibits 1 through 6 and also took the sworn testimony of the respondent. The Court considered all admitted evidence and testimony in its entirety, regardless of whether specifically mentioned in this decision.

## CREDIBILITY

In all applications for relief, the Court must make a threshold determination of the alien's credibility. The REAL ID Act of 2005 amended the Immigration and Nationality Act to codify the standards for assessing credibility in asylum and withholding of removal applications and listed a number of factors for Courts to consider, including the demeanor, candor, and responsiveness of the applicant, the inherent plausibility of the applicant's account, the consistency of applicant's oral and written statements, the internal consistency of the applicant's statements, the consistency of the applicant's statements with other evidence of record to include the reports of the Department of State on country conditions, any inaccuracies or falsehoods in such statements, and any other relevant factor. It does not matter whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, and there is no presumption of credibility.

In this case, the Court has noted a number of inconsistencies, and they are as follows. Looking first to the respondent's Record of Sworn Statement in Exhibit 2, the Court notes that the respondent did use a fake name in order to enter the United States. He purchased a name apparently from a Haitian gentleman who was also waiting to enter the United States. The Court finds that the respondent's use of a false name and presentation of such a name to Border Patrol officials tends to undermine his credibility as an other relevant factor.

A                       2                      March 9, 2020

The respondent was also questioned during his first interview with Border Patrol officials, "why did your wife not travel with you?" The respondent answered "she was in school, and I did not have enough money." Not only was there evidence of record to indicate that the schools in the region were closed due to the hostilities, the respondent also testified that she was in hiding in the bush, which is inconsistent with what he told the Border Patrol officials, and the Court finds that to be also an inconsistency between both the country conditions evidence and the respondent's testimony and his statements to the Border Patrol officials, and tends to undermine his credibility as well.

The respondent was asked what his wife's birthday was and was unable to answer. The Court finds that that tends to undermine the respondent's credibility as well.

In Exhibit 2, again the Record of Sworn Statement, the respondent explained the circumstances of an arrest and a 13-day period of detention. The question that followed was what day were you arrested? The respondent answered February 13, 2019, contextually indicating that the 13-day period of detention began on February 13, 2019. In the respondent's I-589, the respondent indicated that he was arrested on October 1, 2017 and detained for a period of 13 days, and that on February 13, 2019, he was arrested and detained for a period of approximately three weeks.

————In the respondent's credible fear interview, Exhibit 6, page 21, the respondent told the asylum officer that he was arrested on October 1, 2018, and detained for a period of three days. In Exhibit 6, page 58, there was a statement from Bongsong Elvis which also indicates that the three week period of detention began in February of 2018. And the Court finds that those are inconsistencies both within or between the respondent's prior oral and written statements, as well as with other evidence of record, that tends to undermine respondent's credibility.

**Formatted:** Indent: First line: 0.5"



A                                       3                          March 9, 2020

Similarly, in the respondent's record of sworn statement in Exhibit 2, he told Border Patrol officials that after his release from the February 13, 2019 arrest and period of detention for 13 days, he was able to flee the country with the help of a commissioner. The respondent's I-589 indicates that after the 13 day period of detention, he was arrested again in 2019 and detained for approximately three weeks. It was on that occasion that he was able to leave with the assistance of the commissioner. The Court finds that to be an inconsistency between the Record of Sworn Statement and the respondent's I-589.

The respondent testified that he is not a member of the

**Formatted:** Indent: First line: 0.5"

————In respondent's Record of Sworn Statement, respondent was asked why did you leave your home in          and the respondent answered I was being

the Court finds that to be an inconsistency between the respondent's prior oral statement and his testimony.

The respondent testified that with respect at least to the apparent inconsistency in the date between 2018 or 2017 for the October 1st period of detention, that the asylum officer made a mistake, the respondent told the asylum officer a mistake had been made, but the asylum officer assured him that he would be able to correct that mistake at the Immigration hearing. However, toward the end of the credible fear interview, the respondent was read a summary of events in which the asylum officer

A                                    4                          March 9, 2020

E0158

described the three events as occurring in 2017, 2018, and 2019. Respondent was asked is the summary correct, and he answered yes. Respondent was asked, do you have any questions, and he answered ˈno, but I am pleading that he help me to solve the problem back in          The Court finds that to be an inconsistency between the respondent's testimony and his statements that are contained in the credible fear interview.

The respondent testified on direct examination that he was beaten three times a day during his February 13, 2018 period of detention. On cross-examination, the respondent stated that he was beaten four times a day. The Court finds that to be an inconsistency internal to the respondent's testimony and tends to further undermine his credibility.

In the respondent's I-589 he writes that he was beaten every day of the three week period of detention that began on February 13, 2019. That statement was found on the respondent's supplement B. During cross-examination, the respondent testified that he was not beaten every day of the February 13, 2019 period of detention. The Court finds that to be an inconsistency between the respondent's testimony and his I-589, supplement B. Tthat tends to further undermine the respondent's credibility.

In the respondent's I-589 he wrote that after he left the country on April 6, 2019, his wife and younger brother were arrested and his shop was burned. Page 55 and 56 of Exhibit 6, there is a statement from the respondent's wife that omits any reference to an arrest post-respondent's departure. It does state that respondent's family's home was looted, but omits any reference to the respondent's shop being burned. The Court finds there to be an inconsistency between the respondent's I-589 and other evidence of record that tends to further undermine the respondent's credibility. Upon consideration of all the facts of record individually and cumulatively, the Court finds that the

A                              5                              March 9, 2020

**Formatted:** Indent: First line: 0.5"

respondent was not a credible witness.

A                                    6                        March 9, 2020

LAW

An addendum of law stating the standards of law and burdens of proof relevant to the issues in this case will be served upon the parties and a copy placed in the Record of Proceedings. The addendum of law is hereby incorporated into this decision by reference.

FINDINGS OF FACT

Because the Court has determined the respondent not to be credible, the Court cannot come to a determination with respect to findings of fact as they relate to his testimony.

ANALYSIS

In the event a higher court were to disagree with this Court's credibility determination, the Court will prove a limited analysis pertaining to the respondent's claims for relief. First, looking to the procedural bar raised by the Government to the respondent's asylum eligibility, the Court does find that the respondent is barred under 8 C.F.R. 208.13(c)(4). Again, that provision, that procedural bar, requires a mandatory denial of any alien who enters, attempts to enter, or arrives in the United States across the southern land border on or after July 16, 2019, after transiting through at least one country outside the alien's country of citizenship, nationality, or last lawful habitual residence in route to the United States unless one of three exceptions is met. The first is that the respondent applied for protection from persecution or torture in at least one country outside the alien's country of citizenship through which he transited in route to the United States, and the respondent testified that he did not do so. The second exception is when an alien demonstrates that he or she satisfies the definition of a victim of a severe form of trafficking in persons. The respondent has not testified that he was subject to trafficking. And the third exception is when the only countries through



7                                    March 9, 2020

which the alien transited in route to the United States were, at the time of the transit, not parties to a number of conventions relating to the status of refugees, protocol relating to the status of refugees, or the U.N. Convention against Torture and other cruel, inhuman, or degrading treatment or punishment. And the respondent did enter the United States through Mexico over the southern land border, and that exception, likewise, does not apply.

Respondent testified that he was subject to a metering program and required to remain in Mexico for some period of time, but because of the adverse credibility determination, the Court cannot find that the respondent attempted to enter the United States before July 16, 2019.

To establish eligibility for asylum, an applicant must show that he or she has suffered past persecution or has a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. The REAL ID Act specifies that the applicant must establish that one of those fives grounds was or will be at least one central reason for persecuting the applicant. In this case, again, the Court has found the respondent not credible and, as a result, does not find past persecution in this case.

Formatted: Indent: First line: 0.5"

Well-Founded Fear of Future Persecution

For the same reason as in his past persecution analysis, the Court finds that the respondent has not met his burden of showing a well-founded fear of future persecution. As a result of the adverse credibility determination, the Court finds that the respondent has not established a subjectively held fear of future persecution, nor has the respondent demonstrated that the persecutor, the ▮▮▮▮▮ authorities in this case, has the inclination to punish the applicant upon his return, and as a result, the Court finds that he has not established the objective reasonableness of his well-founded fear

A▮▮▮▮                                   8                          March 9, 2020

E0162

of future persecution. The Court declines to find a well-founded fear of future
persecution in this case.

### Withholding of Removal

Having failed to demonstrate the lower burden proof required for asylum relief,
the respondent has necessarily failed to meet the higher burden required for withholding
of removal pursuant to the INA, and as a result, the Court denies the respondent's
application for withholding of removal.

### Protection under the Convention against Torture

Because the Court has found the respondent not credible with respect to
statements that go to the heart of his claim for protection under the Convention against
Torture, the Court finds that the respondent has not carried his burden of proof in
demonstrating that it is more likely than not that he will be tortured in Cameroon. And
the Court, therefore, denies the respondent's request for protection under the
Convention against Torture.

### ORDER

The Court denies the respondent's applications for asylum, withholding of
removal, and protection under the Convention against Torture and orders the
respondent removed to

### Advisals

Sir, the Court has ordered you removed from the United States. If you disagree
with the Court's decision, you have the right to appeal. If you do so, you must send a
notice of appeal, which is Form EOIR-26 to the Board of Immigration Appeals. Please
note that you must file your appeal within 30 calendar days after the Court makes its
decision in your case. That means that your notice of appeal must be received by the
Board of Immigration Appeals on or before Wednesday, April 8, 2020, since the Court is

A                                        9                                        March 9, 2020

issuing its decision today. If you do not file your appeal within that time limit, the

decision of the Court becomes final. I note that a member of the Court staff there has

handed you a copy of your appellate rights. I do encourage you to refer those carefully.

### Failure to Depart

Sir, the Court has ordered you removed from the United States. If you willfully

fail or refuse to apply for the required travel documents to depart the United States, to

present yourself for removal as instructed, to depart the United States as instructed, or

to take any action or conspire to take any action to prevent or slow down your

departure, you will be subject to a civil monetary penalty.

***Please see the next page for electronic***

***signature***

MARTZ, NICHOLAS A.
Immigration Judge

A                                    10                          March 9, 2020

//s//

Immigration Judge MARTZ, NICHOLAS A.

i:0e.t|eoir federation services|nicholas.a.martz@usdoj.gov on
May 4, 2020 at 5:31 PM GMT



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

TATUNG, CELESTINE
TATUNG & TATUNG ASSOCIATES LLC
9701 APOLLO DRIVE
# 331
LARGO, MD 20774

DHS - ICE Office of Chief Counsel -
OAKDALE 2
1010 E. Whatley Rd.
OAKDALE, LA 71463

Name: ████████████████          A ████████

**Date of this notice: 8/28/2020**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Morris, Daniel

Userteam: <u>Docket</u>

E0166

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*



**DHS - ICE Office of Chief Counsel -
OAKDALE 2
1010 E. Whatley Rd.
OAKDALE, LA 71463**

**Name:** ███████████████████         **A** ████████████

**Date of this notice: 8/28/2020**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. §1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Morris, Daniel

Userteam:

E0167

**U.S. Department of Justice**                                    Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

File:    A████████ – Oakdale, LA              Date:    **AUG 2 8 2020**

In re:   ████████████████

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:  Celestine Tatung, Esquire

APPLICATION:  Asylum; withholding of removal; Convention Against Torture

The respondent, a native and citizen of ███████ appeals from the March 27, 2020, decision of the Immigration Judge denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture. *See* sections 208(b)(1)(A), 241(b)(3)(A) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A); 8 C.F.R. §§ 1208.16-.18. The appeal will be dismissed.[1]

We review the findings of fact determined by an Immigration Judge, including credibility findings, under a "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i). We review questions of law, discretion, and judgment, and all other issues in appeals from decisions of Immigration Judges de novo. 8 C.F.R. § 1003.1(d)(3)(ii).

We affirm the decision of the Immigration Judge.[2] The Immigration Judge denied the respondent's applications for relief and protection because the respondent failed to provide sufficient evidence to corroborate his identity (Respondent's Br. at 4). He also denied the application for asylum on the merits, determining that the respondent has not suffered harm rising to level of past persecution, did not meet his burden to show that he has a well-founded fear of persecution, and did not establish that any past or potential harm was or would be on account of a protected ground (IJ at 6-7). *See* 8 C.F.R. § 1208.13(b). Finally, the Immigration Judge determined that the respondent did not meet his burden to establish that it is more likely than not that he would be tortured by or with the consent or acquiescence of ███████ public officials (IJ at 8). *See* 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a). For the reasons explained below, we agree with the Immigration Judge's decision to deny the applications for relief and protection on the merits.

---

[1] The respondent's request for oral argument is denied. 8 C.F.R. § 1003.1(e)(7).

[2] The Immigration Judge determined that the respondent is ineligible for asylum under 8 C.F.R. § 1208.13(c)(4) because he applied for asylum at the southern land border after July 16, 2019, after transiting through third countries (IJ at 5-6). We acknowledge that the United States District Court for the District of Columbia has since vacated this regulatory provision. *See Capital Area Immigrants' Rights Coalition v. Trump*, ___ F.Supp.3d ___, 2020 WL 3542481 (D.D.C. June 30, 2020). However, the Immigration Judge's decision also included an alternative analysis of the merits of the respondent's claim, which we affirm.

E0168

A▮▮▮▮▮▮

    The respondent first argues on appeal that the Immigration Judge violated his due process rights by allegedly prejudging his case based on the lack of documentation provided to corroborate his identity (Respondent's Br. at 20-23). This assertion is belied by the record. "As a general rule, due process requires that an alien be provided notice of the charges against him, a hearing before an executive or administrative tribunal, and a fair opportunity to be heard." *Arteaga-Ramirez v. Barr*, 954 F.3d 812, 813 (5th Cir. 2020) (citation omitted). Although the Immigration Judge indicated at the beginning of the final hearing that he was not inclined to grant the respondent's applications due to the lack of corroborating identification documents, he proceeded to provide the respondent a full and fair opportunity to present his case on the merits and provide an explanation for the missing documents prior to rendering his final decision (Tr. at 10-13, 20-21, 51-54). The respondent "has not shown any hostility due to extrajudicial sources or such a degree of hostility that fair judgment was impossible." *Wang v. Holder*, 569 F.3d 531, 541 (5th Cir. 2009). Accordingly, we conclude that the respondent has not established the existence of a due process violation in the proceedings below. Moreover, even assuming the existence of a due process violation, he has not demonstrated "that the outcome of the proceedings would have been different" absent the alleged violation. *Okpala v. Whitaker*, 908 F.3d 965, 971 (5th Cir. 2018).

    The Immigration Judge correctly determined that the respondent did not demonstrate that he suffered harm rising to the level of past persecution in ▮▮▮▮▮▮ IJ at 6). The respondent testified that he was imprisoned in poor conditions by the ▮▮▮▮▮▮ military for 10 days and was beaten by military officers on the first day, which resulted in cuts, wounds, and swollen legs (IJ at 3; Tr. at 33-34, 60-61). He was also kicked by the prison guards when they brought him food every day (IJ at 3; Tr. at 34, 60-61). Other than receiving traditional remedies, the respondent did not seek outside medical treatment for his injuries and did not provide specific evidence describing the severity of his injuries (IJ at 6; Tr. at 41). In the absence of evidence detailing the severity of the respondent's injuries from the alleged beatings, we conclude that he has not met his burden to show that the harm he experienced during his 10-day detention was sufficiently severe to rise to the level of persecution. *See Morales v. Sessions*, 860 F.3d 812, 816 (5th Cir. 2017) ("Persecution . . . is an extreme concept that does not include every sort of treatment our society regards as offensive.") (citation omitted). As the respondent has not established that he suffered past persecution, the respondent is not entitled to a presumption of a well-founded fear of persecution. *See* 8 C.F.R. § 1208.13(b)(2).

    We further conclude that the respondent is ineligible for asylum because he has not established a nexus between his alleged harm and a protected ground. "For both asylum and withholding of removal claims . . . an alien must show that a protected ground (*e.g.*, membership in a particular social group) was 'at least one central reason for persecuting the applicant.'" *Gonzales-Veliz v. Barr*, 938 F.3d 219, 224 (5th Cir. 2019) (quoting section 208(b)(1)(B)(i) of the Act, 8 U.S.C. § 1158(b)(1)(B)(i)). "The focus of the nexus analysis is on the persecutors' motives—why the persecutors sought to inflict harm." *Id.* at 231 (citation omitted). The Immigration Judge determined that the ▮▮▮▮▮▮ authorities targeted the respondent because they believed that he was engaged in criminal activity, namely manufacturing weapons for an armed ▮▮▮▮▮▮ separatist group (IJ at 2, 6-7; Tr. at 24, 30; Exh. 4:A). We discern no clear error in this finding. *See Matter of N-M-*, 25 I&N Dec. 526, 532 (BIA 2011) ("A persecutor's actual motive is a question

2

A

of fact to be determined by the Immigration Judge and reviewed by us for clear error."); *see also Sealed Petitioner v. Sealed Respondent*, 829 F.3d 379, 384 (5th Cir. 2016).[3]

As the respondent has not met his burden to establish a well-founded fear of persecution on account of a protected ground, he is ineligible for asylum. He also necessarily cannot meet the higher burden required for withholding of removal under section 241(b)(3)(A) of the Act. *See Dayo v. Holder*, 687 F.3d 653, 658 (5th Cir. 2012). Thus, we affirm the Immigration Judge's decision to deny his application for withholding of removal (IJ at 7).

Finally, we affirm the Immigration Judge's decision to deny the respondent's application for protection under the Convention Against Torture (IJ at 8). In order to qualify for protection under the Convention Against Torture, the respondent must establish that it is more likely than not that he would be tortured "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1). Evidence of past torture inflicted upon the respondent is among the factors to consider when assessing his claim. 8 C.F.R. § 1208.16(c)(3)(i). To constitute torture, "an act must be specifically intended to inflict severe physical or mental pain or suffering" and must be for such "purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind". 8 C.F.R. § 1208.18(a)(1), (5).

We agree with the Immigration Judge that the poor conditions and physical abuse experienced by the respondent during his 10-day detention did not result in sufficiently severe pain and suffering to constitute past torture (IJ at 8). *See Matter of J-E-*, 23 I&N Dec. 291, 301-02 (BIA 2002). Although we acknowledge the documentary evidence submitted by the respondent describing instances of severe mistreatment committed by the ███████████ security forces against individuals suspected of being ███████████ separatists (Exhs. 2:C, 5:G), the evidence does not establish that instances of torture are so pervasive such that it is more likely than not that the respondent faces a specific threat of torture if he is detained, as opposed to other acts of cruel, inhuman, or degrading punishment. *See id.* at 304. Moreover, given efforts by the ███████████ government to diffuse the conflict with the separatists since the respondent departed██████████ including the release of hundreds of prisoners, the respondent has not established that it is more███ likely than not that he would be detained and subsequently mistreated upon his return to█████████ (IJ at 7; Exh. 3:B-F). *See Matter of J-F-F-*, 23 I&N Dec. 912, 917-18 (A.G. 2006) (explaining that the evidence must establish that each step in the hypothetical chain of events that would result in the respondent's torture is more likely than not to occur).

Accordingly, the following order will be entered.

---

[3] While the respondent concedes that he was targeted based on suspicion that he was manufacturing weapons, he attempts to equate the act of illegally manufacturing weapons for a separatist group with the mere possession of a political opinion supporting a separatist group (Respondent's Br. at 32-33). We reject this proposed equivalence and agree with the Immigration Judge that the record does not show that the ███████████ authorities targeted the respondent based on an imputed political opinion.

A

ORDER: The appeal is dismissed.

NOTICE: If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $813 for each day the respondent is in violation. *See* Section 274D of the Immigration and Nationality Act, 8 U.S.C. § 1324d; 8 C.F.R. § 280.53(b)(14).

FOR THE BOARD

E0171



UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
OAKDALE, LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF | ) | IN REMOVAL PROCEEDINGS |
| | ) | |
| ███████████████ | ) | **File No.:**A██████████ |
| | ) | |
| **Respondent** | ) | |
| ─────────────────── | ) | |

**CHARGE:**     Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("Act"), as
an immigrant who, at the time of application for admission, was not in
possession of a valid unexpired immigrant visa, reentry permit, border crossing
card, or other valid entry document required by the Act, and a valid unexpired
passport, or other suitable travel document, or document of identity and
nationality as required under the regulations issued by the Attorney General
under section 211(a) of the Act.

**APPLICATIONS:**     Asylum pursuant to INA § 208
Withholding of Removal pursuant to INA § 241(b)(3)
Withholding of Removal pursuant to the Convention Against Torture

**ON BEHALF OF RESPONDENT:**
Celestine Tatung, Esq.
Tatung & Tatung Associates, LLC
9701 Apollo Drive, #331
Largo, Maryland 20774

**ON BEHALF OF THE DEPARTMENT:**
Tinashe Chimwaze, Assistant Chief Counsel
DHS/ICE/Litigation Unit
1010 East Whatley Road
Oakdale, Louisiana 71463

## DECISION AND ORDER OF THE IMMIGRATION JUDGE

### I. PROCEDURAL HISTORY

Respondent is a native and citizen of ███████ who applied for admission into the U.S. at
POE, San Ysidro, California on August 22, 2019. He did not possess or present a valid immigrant
visa, reentry permit, border crossing identification card, or other valid entry document. The U.S.
Department of Homeland Security, Immigration and Customs Enforcement ("Department") issued a
Notice to Appear ("NTA") on October 4, 2019, charging Respondent was removable pursuant to
section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("Act").

At a hearing on January 8, 2020, the Respondent admitted the factual allegations contained in
the NTA. Based on Respondent's admissions and the evidence submitted into the record, the Court
found Respondent removable as charged. Respondent declined to designate a country of removal.
The Court designated ████████ Respondent indicated he feared returning to ████████ Respondent
submitted his completed Form I-589, Application for Asylum and for Withholding of Removal. The
Court reset the case for a merits hearing.

- 1 -

E0172



A hearing on the merits was held March 10, 2020. Respondent was the sole witness in support of his application. The Court reviewed and considered the documentary evidence submitted into the record in the form of country reports, articles, affidavits, and other documents. *See, e.g.,* Exhibits 4 and 5. The Court now issues this written decision addressing Respondent's applications for relief.

## II. SUMMARY OF THE EVIDENCE

The record contains exhibits one through five and Respondent's testimony. The Court has familiarized itself with the entire record of proceedings and considered all submitted evidence regardless of whether mentioned in this decision. *See* 8 C.F.R. § 1240.1(b).

### A. Exhibit List

Exhibit 1    Notice to Appear (dated October 4, 2019)

Exhibit 2    Respondent's I-589, Application for Asylum and for Withholding of Removal and Attachments

Exhibit 3    Respondent's Credible Fear Interview

Exhibit 4    Department's Submission of Documents

Exhibit 5    Respondent's Submission of Documents

### B. Summary of the Testimony

Respondent testified he is a native and citizen of ▮▮▮▮ Respondent testified he feared returning to ▮▮▮▮ because he was accused of making guns for separatist fighters by the ▮▮▮▮ government. Respondent testified he was accused because he is an English speaking

Respondent first encountered ▮▮▮▮ military officers on July 19, 2018. A military post was attacked approximately 20 meters from Respondent's shop where he worked as a welder. Respondent and others in his shop were taken to the police station for questioning. The group, including the Respondent, were told that separatists had attacked the military post and if they discovered anything about the separatist fighters, they should call the police. The group was released and returned to the shop. Shortly after the group returned to shop, they were abducted by separatist fighters dressed in civilian clothes with guns. The separatist fighters wanted to know why they were at the police station. The group was fearful and did not answer. The separatist fighters relented and told the Respondent to go back to work.

On July 20, 2018, Respondent and his neighbor, who worked as a mechanic next door, were standing outside of their shops when two vehicles surrounded them. Military officers came into Respondent's shop and accused him of making weapons for separatist fighters. They also accused his neighbor of fixing vehicles for separatists. Military officers arrested Respondent and thirty others in the shop and burned it down. Respondent's neighbor was shot during the arrest and later died.

-2-

E0173

(image)



Respondent was taken into custody at the central prison in ▮▮▮ His first day in custody he was beaten with belts, guns, and kicked by military officers. He suffered cuts and wounds as well as swollen legs. The next nine days, Respondent was detained in poor conditions. He was also kicked at each time he was given food, which was once a day. Respondent was detained for ten days before separatist fighters attacked and burned prison. Respondent and others were helped out by separatist fighters and taken to their hideout. Separatist fighters wanted Respondent and others to join their cause, but Respondent did not want to. Respondent decided to escape.

Respondent ran from the separatist fighters, and went to his church. His pastor gave him traditional medicines for his wounds and helped hide him for four months. After four months, he was informed by the pastor that the military was looking for him. Respondent, fearful for his life, decided to flee to Nigeria.

Respondent traveled by foot to ▮▮▮ He lived in ▮▮▮ for six months. After living there unharmed, Respondent heard that the Nigerian government was working with the ▮▮▮ government to deport illegal ▮▮▮ back to ▮▮▮. Respondent decided to leave ▮▮▮ and departed on April 15, 2019 with the help of a friend. Though Respondent was detained at the ▮▮▮ irport, he was ultimately allowed to leave after he paid ▮▮▮ fficers a bribe.

Respondent traveled through ▮▮▮ before arriving in ▮▮▮ Because of the language barrier, he decided he could not remain in ▮▮▮ He joined other Africans and decide to come the United States. Respondent traveled through ▮▮▮ and Mexico before he arrived in the United States. Respondent testified he was told to go back into Mexico. Respondent returned and ultimately applied for admission at Port of Entry, San Ysidro, California on August 22, 2019.

## III.  BURDEN OF PROOF AND CREDIBLITY

### A.  Credibility

The Real ID Act amended the standards for the burden of proof and credibility in connection with applications for relief and applies to applications filed on or after May 11, 2005. *See* REAL ID Act § 101(h)(2), Pub. L. No. 109-13, 119-13, 119 St. 231 (235). Under the REAL ID Act, the alien bears the burden of establishing he or she is eligible for relief from removal and that, if relevant, the alien merits a favorable exercise of discretion. INA § 240(c)(4)(A). In determining if the alien has met his or her burden, the Court will assess whether the alien's testimony is credible, persuasive, and fact-specific. INA § 240(c)(4)(B). The Court weighs the testimony along with other evidence of record and considers the totality of the circumstances and all relevant factors. *Id.* § 240(c)(4)(B), (C).

The Court has carefully considered all of the evidence submitted into the record even if not specifically referenced in the decision. The Court notes an inconsistency within the record. Respondent stated in his application that he was arrested on two occasions. However, Respondent testified he was not arrested the first time, but rather taken into the station for questioning. While the Court notes this discrepancy, the Court does not reach the conclusion Respondent was being untruthful. Generally, Respondent's testimony was consistent with the statements in his I-589 application and other items in the record of proceedings. Therefore, after considering the totality of the circumstances and all relevant factors, the Court finds Respondent generally credible and in rendering its decision, will afford the testimony and the documentary evidence the appropriate weight.

E0174

*See id.*; *Matter of D-R-*, 25 I&N Dec. 445, 454 (BIA 2011) (explaining that the immigration judge has broad discretion to accept and assign evidentiary weight to evidence).

## B. Identity

Though the Court finds Respondent generally credibly as a witness, Respondent failed to provide sufficient evidence to meet his burden of proof in establishing his identity. An adverse credibility finding may be supported where an alien failed to establish his identity, nationality, citizenship, and other particulars of his or her claim. *Matter of O-D-*, 21 I&N Dec. 1079, 1084 (BIA 1998). The Board of Immigration Appeals ("BIA") has held that corroborating evidence, such as place of birth, should be produced where it is reasonable to expect it. *See Matter of S-M-J-*, 21 I&N Dec. 722, 725-26 (BIA 1997). Otherwise, an explanation should be provided as to why corroborating evidence was not presented. *Id.*

Respondent, through counsel, testified he entered the United States without any identity documents. Respondent traveled with a passport from ▮▮▮▮, but his passport was lost or stolen in ▮▮▮▮ The Court notes that this a common occurrence of those who are suspected of being smuggled into the United States. Further, Respondent failed to present any sufficient photo identification. Respondent presented a nearly illegible photocopy version of an ID card, and presented a laminated copy of his birth certificate. *See* Exh. 5, Tab A. Respondent received both documents while he was detained, but provided no explanation why he did not produce any sufficient form of a photo identification. Respondent presented several photocopied affidavits from his family and friends, however none of the affidavits have supporting identity documents from the affiants. *See* Exh. 5, Tabs C-F.

After considering the totality of the circumstances, including Respondent testified he traveled to and spent time in, Respondent could be ▮▮▮▮ Therefore, the Court must deny Respondent's applications for relief. Respondent failed to establish his identity and did not provide a sufficient explanation for the absence of critical documentation to establish his identity. *See Matter of O-D-*, 21 I&N Dec. 1079, 1084 (BIA 1998); *see also Matter of S-M-J-*, 21 I&N Dec. 722, 725 (BIA 1997).

## IV. ELGIBITY FOR RELIEF

Assuming Respondent is found credible, the Court will address Respondent's applications for relief in the alternative.

### A. Asylum

#### 1. Eligibility

To qualify for asylum under INA § 208, an applicant must establish that: (1) his application was The burden of proof is on the applicant for asylum to establish he is a refugee, within the meaning of Section 101(a)(42)(A) of the Act. To establish the applicant is a refugee, the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant. INA § 208(b)(1)(B)(i). An applicant seeking asylum based on past persecution must establish past persecution in his or her country of nationality or country of last habitual residence on one of the five enumerated grounds,

- 4 -



and is unable or unwilling to return or avail themselves of that country's protection. 8 C.F.R. § 1208.13(b)(1). The applicant must also establish the persecution was or will be inflicted by the government of the country of removal or by individuals or groups the government is unable or unwilling to control. *Matter of Acosta*, 19 I&N Dec. 211, 222 (BIA 1985). The applicant must present facts establishing each element of the standard, and the immigration judge or the Board has the duty to determine whether those facts satisfy all of those elements. *Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018). If an asylum application is fatally flawed in one respect, an immigration judge or the Board need not examine the remaining elements of the asylum claim.

However, an applicant is not eligible for asylum because if he is subject to the third country transit bar. *See* 8 C.F.R. § 208.13(c)(4). The regulation prescribes mandatory denial of asylum shall be issued where an alien who enters, attempts to enter, or arrives in the United States across the southern land border on or after July 16, 2019, after transiting through at least one country outside the alien's country of citizenship, nationality, or last habitual residence in route to the United States, "shall" be found ineligible for asylum unless the alien demonstrates: (i) he or she applied for protection in a country through which he or she traveled and received a final judgment denying the alien protection in such country; (ii) he or she "satisfies the definition of a 'victim of a severe form of trafficking in persons'" pursuant to 8 C.F.R. 214.11; or, (iii) the countries through which he or she "transited en route to the United States were not, at the time of his or her travel, parties to the 1951 United Nations Convention relating to the Status of Refugees, the 1967 Protocol, or the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment of Punishment." *Id.*

This asylum eligibility bar in 8 CFR 1208.13(c)(4) was subject to injunctions issued by the United States District Court for the Northern District of California. *See East Bay Sanctuary Covenant v. Barr*, 391 F. Supp. 3d 974 (N.D. Cal. 2019). On September 11, 2019, the United States Supreme Court issued an order staying the district court's injunctions pending the disposition of the appeal in the United States Court of Appeals for the Ninth Circuit and disposition of the petition for a writ of certiorari, if one is sought. *See Barr v. East Bay Sanctuary Covenant*, No. 19A230 (U.S. Sept. 11, 2019). Accordingly, any aliens who entered, attempted to enter, or arrived in the United States on or after July 16, 2019, whose asylum applications are filed or remain pending after September 11, 2019, are subject to the asylum eligibility bar in 8 CFR 1208.13(c)(4).

Nevertheless, pursuant to the United States Court of Appeals for the Ninth Circuit's March 5, 2020 decision in *Al Otro Lado v. McAleenan*, No. 19-56417, this third-county transit eligibility bar does not apply to members of the class certified as "all non-Mexican asylum-seekers who were unable to make a direct asylum claim at a U.S. port of entry before July 16, 2019, because of the Government's metering policy, and who continue to seek access to the U.S. asylum process." This class was originally certified in an injunction order issued on November 19, 2019, by the District Court for the Southern District of California, but on December 20, 2019, the Ninth Circuit temporarily stayed the preliminary injunction before later issuing the March 5, 2020 order lifting the stay. Metering is a Department of Homeland Security practice by which asylum seekers were instructed to wait in Mexico to be processed because the port of entry was full or at capacity. Pursuant to the District Court's Order, "individuals could be required to submit proof (either by list or declaration) that he or she is a member of the class." *Al Otro Lado v. McAleenan*, No. 17-cv-02366-BAS-KSC, 2019 WL 6134601 (S.D. Cal. 2019), 28.

E0176

Respondent attempted to apply for admission into the United States on August 22, 2019. *See* Exhibit 1. Respondent arrived in Mexico on June 1, 2019, and claimed he would have entered on June 28, 2019 but was told to wait in Mexico. However, Respondent did not present any evidence he had been subject to the Department of Homeland Security's metering policy. Moreover, Respondent did not alleged any of the other exemptions applied to him. Respondent's application for asylum was filed after September 11, 2019. Therefore, the Asylum Eligibility and Procedural Modifications Rule, known as the "Third Country Transit Ban," applies in this case. 8 C.F.R. § 1208.13(c)(4) (2019). Based upon Respondent's admission and subsequent proof in the record, the Court must find he is ineligible for asylum in accordance with the regulations and thus is only eligible to apply for withholding of removal under INA § 241 (b)(3) and protection from removal under CAT 8 C.F.R. §§ 1208.16—1208.18 (2018). *See* 8 C.F.R. § 208.13(c)(4).

## 2. Respondent's Claim

Assuming *arguendo* Respondent were eligible to apply for asylum, the Court would deny Respondent's application for asylum, because he did not meet his burden of proof to establish a well-founded fear of persecution. The term "persecution" does not encompass all treatment society regards as unfair or unlawful. *See Eduard v. Ashcroft*, 379 F.3d 182, 187-88 (5th Cir. 2004); *Majid v. Gonzales*, 446 F.3d 590, 595 (5th Cir. 2006). Rather, to constitute persecution, the conduct must be extreme. *Id.* While past incidents, multiple threats, and attacks may be taken in the aggregate to determine if they rise to the level of persecution even if no single incident is sufficient.

Here, the incidents of harm he claims to have suffered would not rise to the level of harm to establish persecution. *See Adebisi v. INS*, 952 F. 2d 910, 913 (5th Cir. 1992) ("The law regulating persecution claims, although humane in concept, is not generous."). Respondent did not allege any of the harm he suffered was severe or extreme. Respondent was beaten on one occasion during a ten day detention. He testified he had swollen legs and cuts and wounds. Respondent never indicated he sought medical treatment outside traditional medicines he administered to himself. Respondent never indicated he sought medical treatment for any injuries even if he after departed          and lived in           for six months. Respondent presented several affidavits in support of his claim, however each of the affidavits only state Respondent was beaten and each fails to provide any specificity regarding Respondent's injuries. Without more, the Court finds Respondent has not met his burden of proof in showing physical harm rising to the level of persecution.

Respondent also failed to show he was persecuted on the basis of a protected ground. Respondent indicated in his I-589 he was persecuted because of his political opinion and membership of a particular social group. If persecution is claimed on account of political opinion, the applicant must allege specific facts from which it can be inferred he holds a political opinion, which is known to his persecutor, and the persecution was or will be on account of the political opinion. *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992). Here, Respondent indicated he was not a member of any political organizations. Respondent did not explicitly claim he had a political opinion, but the general tenor of his testimony indicated that a political opinion had been imputed to him. Respondent claimed he was harmed by military officers based upon their suspicion that he was making illegal guns for Separatist Anglophone fighters, who are considered terrorists. Respondent was adamant he was not a separatist fighter. It appears Respondent was suspected of a potential crime. Respondent provided no evidence he suffered disproportionately severe punishment on account of his political opinion.

E0177

Respondent also claimed he was persecuted because he is ▮▮▮▮▮ An applicant seeking relief based on membership in a particular social group must establish that the proposed group: (1) contains members who share a common immutable characteristic; (2) is defined with particularity; and (3) is socially distinct within society. *See Matter of M-E-V-G-*, 26 I&N Dec. 227, 237 (BIA 2014); *see also Matter of W-G-R-*, 26 I&N Dec. 208 (BIA 2014). While Respondent's particular social group would meet the standard of a cognizable group, Respondent did not testify he was arrested for being Anglophone but because he was accused of making weapons. The Court also notes that Respondent was questioned the day before and not harmed by military officers but rather asked for assistance in an investigation. Thus, it appears Respondent's arrest and detention had little to do with his political opinion or his membership in a particular social group.

Moreover, Respondent did not provide sufficient evidence to show future persecution. Respondent may have a subjective fear of returning to ▮▮▮▮ but his subjective fear is not objectively reasonable. Respondent fears he will be arrested, tortured, or killed by the government. However, Respondent stayed in ▮▮▮▮ without harm for over four months after he escaped from the prison without incident. Respondent claimed during the four months he hid in a church, however, Respondent remained unharmed despite military presence and searches near the church and surrounding areas. The affidavit from Respondent's wife indicated the military had been looking for the Respondent continuously, and despite her being summoned to the police station for questioning his wife remains in ▮▮▮▮ Respondent's siblings all also remain in ▮▮▮▮ and are unharmed. More importantly, Respondent was not fleeing persecution when he arrived in the United States. Respondent lived in ▮▮▮▮ for four months after escaping prison undetected and relocated to ▮▮▮▮ n approximately November 2018, living there until April 2019. Respondent lived in ▮▮▮▮ unharmed, and only departed the country when he heard that the Nigerian government was working with the ▮▮▮▮ government. Respondent never indicated the Nigerian government attempted to detain or deport him personally. The Court also notes Respondent did not seek any refugee status.

Further, the Department has submitted evidence that indicates the circumstances have changed since Respondent's departure. Articles submitted by the Department indicate that the ▮▮▮▮

▮▮▮▮ Exhibit 4, Tab F. The ▮▮▮▮ government also released 333 prisoners arrested for t▮▮▮▮ *Id. at* Tab C. Both actions from ▮▮▮▮ government occurred in the latter portion of 2019, a year after Respondent left ▮▮▮▮. Thus, based on the evidence presented, there is no certainty the mistreatment of ▮▮▮▮ will continue as the ▮▮▮▮ government is attempting to address the problems in ▮▮▮▮ Accordingly, the Court finds Respondent failed to establish a well-founded fear of persecution on account of a protected ground.

## B. Withholding of Removal pursuant to INA § 241(b)(3)

As Respondent would have failed to meet the burden of proof for an asylum claim, the Court finds he has could not have met the higher standard of proof for a withholding of removal claim under the Act. A claim for withholding of removal is factually related to an asylum claim, but the standard of proof is harder to meet than the "well-founded" fear requirement for asylum. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 448–50 (1987).

E0178

## C. Withholding of Removal pursuant to the Convention Against Torture

8 C.F.R. § 1208.18(a)(1) defines torture as any act by which severe pain or suffering, whether mental or physical, is intentionally inflicted for purposes such as: obtaining information from him, or her, or a third person information or a confession; punishing him or her for an act he, or she, or a third person has committed or is suspected of having committed; or intimidating or coercing him or her, or a third person; or for any reason based on discrimination of any kind, when pain or suffering is inflicted by or at the instigation of, or with the consent, or acquiescence of the government or other person acting in an official capacity.

In assessing the likelihood of torture, the Court considers all evidence relevant to the possibility of future torture, including, but not limited to, evidence of past torture; the possibility of internal relocation; evidence of gross flagrant or mass violations of human rights; ad relevant information regarding conditions in the country of removal. 8 C.F.R. § 1208.16(c)(3). However, to meet his burden, specific grounds must exist that indicate the alien would personally be at risk. *Matter of S-V*, 22 I&N Dec. 1306, 1313 (BIA 2000). The mere existence of a consistent pattern of human rights violations in a particular country does not constitute a sufficient ground for finding that a particular person would more likely than not be tortured upon return to that country. *Id.*

Here, Respondent failed to establish past torture. The harm Respondent allegedly experienced does not rise to the level of extreme, cruel, and inhumane treatment within the meaning of torture. *See M-B-A-*, 23 I&N Dec. at 488 (citing *J-E-*, 23 I&N Dec. at 302). Likewise, Respondent also failed to establish future torture. While the 2018 Human Rights Report for            "Country Report")[1] indicates human rights issues in            included arbitrary and unlawful killings by security forces as well as armed            and forced disappearances by security forces, Boko Haram, and separatists, it also indicates the government took some steps to identify, investigate, prosecute, or punish officials who committed human rights abuses in the security forces and in the public service. This demonstrates that the government does not consent or acquiesce in the torture of its citizens but rather attempts to curb unlawful activity by its officials. Accordingly, the Court finds that Respondent failed to establish by clear and convincing evidence that the            government would more likely than not torture Respondent upon his return or that he would suffer torture with the consent or acquiescence of            fficials.

## V. CONCLUSION

The Court finds Respondent is native and citizen of            who is subject to removal as charged in the NTA. The Court finds Respondent has not met his burden of proof to establish his identity. He has also not met the burden in showing persecution or torture, past or future. Therefore, the request for relief will be denied. Based upon the above and foregoing, the following orders shall be entered:

---

[1] The Country Report has significant probative value because general background information about a country, where applicable, must be included in the record as a foundation for an applicant's claim for asylum and withholding of removal. *Matter of S-M-J-*, 21 I&N Dec. 722 (BIA 1997). The U.S. Department of State is the most appropriate source to obtain information on the political atmosphere in foreign countries. *Rojas v. INS*, 937 F.2d 186, 190 n.1 (5th Cir. 1991). In the absence of contradictory evidence, the Country Report is entitled to considerable deference. *Matter of T-M-B-*, 21 I&N Dec. 775, 779 (BIA 1997).

- 8 -

E0179

Accordingly, the following orders shall be entered:

**ORDERS:** **IT IS HEREBY ORDERED that Respondent's application for asylum is DENIED.**

**IT IS HEREBY ORDERED that Respondent's application for withholding of removal pursuant to INA § 241(b)(3) is DENIED.**

**IT IS HEREBY FURTHER ORDERED that Respondent's application for withholding of removal pursuant to the Convention Against Torture is DENIED.**

**IT IS HEREBY FURTHER ORDERED that Respondent be REMOVED from the United States to** ▇▇▇▇

3/27/2020

Date

W. Scott Laragy
U. S. Immigration Judge

---

**CERTIFICATE OF SERVICE**

THIS DOCUMENT WAS SERVED BY:    MAIL (M)    PERSONAL SERVICE (P)

TO: [  ] ALIEN  [  ] ALIEN c/o Custodial Officer  [X] ALIEN'S ATTY/REP  [X] DHS

DATE: 3/27/2020    BY: COURT STAFF  m.p.

Attachments: [  ] EOIR-33  [  ] EOIR-28  [  ] Legal Services List  [  ] Other

- 9 -

E0180



U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**TATUNG, CELESTINE**
**TATUNG & TATUNG ASSOCIATES LLC**
**9701 APOLLO DRIVE**
**# 331**
**LARGO, MD 20774**

**DHS - ICE Office of Chief Counsel -**
**OAKDALE 2**
**1010 E. Whatley Rd.**
**OAKDALE, LA 71463**

**Name:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮        A ▮▮▮▮▮▮▮▮▮

**Date of this notice: 10/15/2020**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

**Panel Members:**
**Creppy, Michael J.**

Userteam: Docket

E0181



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*



**DHS - ICE Office of Chief Counsel -
OAKDALE 2
1010 E. Whatley Rd.
OAKDALE, LA 71463**

**Name:**           A

**Date of this notice: 10/15/2020**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. §1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

Donna Carr

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Creppy, Michael J.

Trane
**Userteam:** Docket

E0182

**U.S. Department of Justice**                          Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

File:  A█████████ – Oakdale, LA                Date:        **OCT 1 5 2020**

In re:  █████████

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:  Celestine Tatung, Esquire

APPLICATION:  Asylum; withholding of removal; Convention Against Torture

The respondent, a native and citizen of █████████, appeals from the April 28, 2020, decision
of the Immigration Judge denying his applications for asylum, withholding of removal, and
protection under the Convention Against Torture. *See* sections 208(b)(1)(A) and 241(b)(3)(A) of
the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A); 8 C.F.R.
§§ 1208.16(c), 1208.18. The appeal will be dismissed.

We review the findings of fact determined by an Immigration Judge, including credibility
findings, under a "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i). We review questions
of law, discretion, and judgment, and all other issues in appeals from decisions of
Immigration Judges de novo. 8 C.F.R. § 1003.1(d)(3)(ii).

We affirm the Immigration Judge's conclusion that the respondent did not meet his burden of
proving eligibility for asylum, withholding of removal, and protection under the Convention
Against Torture (IJ at 3-15). *See* sections 208(b)(1)(B)(i) and 241(b)(3)(C) of the Act; 8 C.F.R.
§§ 1003.1(d)(3)(ii), 1208.16(c), 1208.18(a).

On appeal, the respondent argues that the Immigration Judge erred in denying his applications
for asylum, withholding of removal, and protection under the Convention Against Torture on the
basis that he was not credible and did not meet his burden of proving eligibility for the requested
relief and protection (Respondent's Br. at 24-29).

We affirm the Immigration Judge's adverse credibility finding as we do not find it to be clearly
erroneous. *See* 8 C.F.R. § 1003.1(d)(i); *Matter of A-B-*, 27 I&N Dec. 316, 341 (A.G. 2018)
("[W]here credibility determinations are at issue … even greater deference must be afforded to the
[I]mmigration [J]udge's factual findings."). The Immigration Judge based his adverse credibility
finding on specific and cogent reasons, including inconsistencies within the respondent's
testimony, inconsistencies between his testimony and the documentary evidence, and a lack of
corroboration (IJ at 5-9). Section 208(b)(1)(B)(iii) of the Act; *Matter of J-Y-C-*, 24 I&N Dec. 260
(BIA 2007) (Immigration Judge properly considered the totality of the circumstances in finding
that the respondent lacked credibility based on his implausible testimony, lack of corroboration,
and inconsistent statements among other reasons).

For example, the respondent's record of sworn statement provided to a United States Customs
and Border Protection (CBP) officer states that he travelled with his █████████ birth certificate,

A

but he later testified that he did not possess his birth certificate (IJ at 4; Tr. at 77-78; Exh. 7). There are also inconsistencies in the record as to whether the respondent protested with the
an                              The record of sworn

6-7; Tr. at 81, 83-84).    The Immigration Judge further found implausible the respondent's

The Immigration Judge considered the respondent's explanations regarding the inconsistencies within his own testimony and between his testimony and the documentary evidence (IJ at 6-8; Tr. at 77-81, 83-86). His explanations did not adequately resolve the inconsistencies. An Immigration Judge is not required to adopt the respondent's explanations for inconsistencies when there are other plausible views of the evidence. *See Matter of D-R-*, 25 I&N Dec. 445, 454 (BIA 2011) (drawing inferences from direct and circumstantial evidence is a routine and necessary task of any fact finder, and in the immigration context, the Immigration Judge is the fact finder). We have considered all of the respondent's explanations on appeal and we do not find them to be persuasive or adequately reconcile the inconsistencies in the record.

Based on the foregoing and other reasons presented by the Immigration Judge in his decision, the inconsistencies and discrepancies cited by the Immigration Judge are significant, are present in the record, and are adequate bases for the Immigration Judge's adverse credibility finding under the totality of the circumstances. *See* section 208(b) (1)(B)(iii) of the Act; *Matter of J-Y-C-*, 24 I&N Dec. 260 (BIA 2007).

In the absence of credible testimony, the respondent cannot establish his eligibility for asylum and withholding of removal. *See* 8 C.F.R. §§ 1208.13(a), 1208.16(b); *Matter of M-S-*, 21 I&N Dec. 125, 129 (BIA 1995) (persecution claim that lacks veracity cannot satisfy burdens of proof necessary to establish eligibility for asylum and withholding of removal).

Further, the Immigration Judge correctly determined that the respondent failed to provide reasonably available corroborative evidence concerning the material elements of his claim (IJ at 10-12, 14). *See* section 208(b)(1)(B)(ii) of the Act; *Matter of L-A-C-*, 26 I&N Dec. 516, 518-19 (BIA 2015) (regardless of whether an applicant is deemed credible he has the burden to corroborate the material elements of his claim where evidence is reasonably available). For the reasons stated by the Immigration Judge, the respondent did not submit nor adequately explain his failure to produce easily available corroborating evidence (IJ at 10-12, 14).

2

E0184

A

Apart from the respondent's discredited testimony, his corroborative evidence did not independently satisfy his burden of proving his eligibility for asylum and withholding of removal. 8 C.F.R. §§ 1208.13(a), 1208.16(b); *Matter of M-S-,* 21 I&N Dec. at 129.

We also uphold the denial of the respondent's request for protection under the Convention Against Torture, which is based on the same facts the Immigration Judge found not credible for the asylum and withholding of removal claims (IJ at 14). *See Dayo v. Holder,* 687 F.3d 653, 658-59 (5th Cir. 2012) (upholding denial of Convention Against Torture claim where it was based on the same non-credible evidence provided in support of the alien's asylum and withholding of removal claims). The respondent has not established independent of his own non-credible testimony, that it is more likely than not that he will be tortured by or "at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity" upon removal to Cameroon, for any reason, even considering country conditions (IJ at 14-15). 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1). Therefore, the respondent has not established eligibility for protection under the Convention Against Torture.

Finally, we are not persuaded by the respondent's argument that the Immigration Judge violated his due process rights and erred by excluding late-filed evidence (Respondent's Br. at 18-19). At the respondent's hearing on November 12, 2019, the parties were notified that the filing deadline would be 10 days before the originally scheduled January 23, 2020, final hearing (Tr. at 5; Notice of Hearing dated Nov. 12, 2019). The respondent's final hearing date was subsequently changed to February 10, 2020, which provided the respondent additional time to file evidence until February 1, 2020 (Tr. at 41; Notice of Hearing dated Nov. 20, 2019). Immigration Judges are required to resolve cases in a "timely and impartial manner," and have broad authority to regulate the course of a removal hearing and to set filing deadlines for applications and related documents. Section 240(b) of the Act, 8 U.S.C. § 1229a(b); 8 C.F.R. §§ 1003.10(b), 1003.31(c); *Matter of Interiano-Rosa,* 25 I&N Dec. 264 (BIA 2010) (Immigration Judges have authority to set filing deadlines for applications and related documents; an application or document that is not filed within the time established by the Immigration Judge may be deemed waived.); *see also* Immigration Court Practice Manual, §§ 3.1(b)(i)(A), (b)(ii)(A). The Immigration Judge acted within his authority in rejecting the respondent's evidence as untimely.

The respondent was provided with the opportunity to fully present his claim before the Immigration Judge, and our review of the record does not persuade us that the Immigration Judge's actions to efficiently conduct court proceedings violated the respondent's due process rights. *See Matter of G-,* 20 I&N Dec. 764 (BIA 1993); *Matter of Exame,* 18 I&N Dec. 303 (BIA 1982); *Matter of Bader,* 17 I&N Dec. 525 (BIA 1980). The respondent's disagreement with the ultimate outcome of the proceedings is insufficient to demonstrate that he was deprived a fundamentally fair hearing. *See Hadwani v. Gonzales,* 445 F.3d 798, 800-801 (5th Cir. 2006) (courts must look beyond the label of a due process violation) (citing *Torres-Aguilar v. INS,* 246 F.3d 1267, 1271 (9th Cir. 2001)). Moreover, the respondent has not meaningfully demonstrated any resultant prejudice that would amount to a due process violation. *See Okpala v. Whitaker,* 908 F.3d 965, 971 (5th Cir. 2018) ("To prevail on a claim regarding an alleged denial of due process rights, an alien must make an initial showing of substantial prejudice."); *Matter of Sibrun,* 18 I&N Dec. 354, 356-57 (BIA 1983). Thus, we find no basis to remand this case for further proceedings.

A

Because we have upheld the Immigration Judge's adverse credibility finding, we need not reach the Immigration Judge's alternate conclusion that, even if the respondent's claim were accepted as true, he would nevertheless have failed to establish eligibility for asylum, withholding of removal, and protection under the Convention Against Torture (IJ at 9-15). *See INS v. Bagasmasbad,* 429 U.S. 24, 25 (1976) ("As a general rule, courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

Accordingly, the following order will be entered.

ORDER: The appeal is dismissed.

NOTICE: If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $813 for each day the respondent is in violation. *See* section 274D of the Immigration and Nationality Act, 8 U.S.C. § 1324d; 8 C.F.R. § 280.53(b)(14).

FOR THE BOARD

4                                                                    E0186

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT

File: A                                                    April 28, 2020

In the Matter of

                                         )
                                         )        IN REMOVAL PROCEEDINGS
                                         )
RESPONDENT                               )

CHARGES:

APPLICATIONS:

ON BEHALF OF RESPONDENT: CELESTINE TATUNG

ON BEHALF OF DHS: TINASHE E. CHIMWAZA

ORAL DECISION OF THE IMMIGRATION JUDGE

        The respondent was classified as an arriving alien. He was charged

under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act. He said he

applied for admission in San Ysidro, California on August 25, 2019. Respondent

entered his pleadings in this case on November 12, 2019. This case was reset for a

hearing to have occurred on February 11 and then February 14 and then, finally, today's

date, which is now April 28, 2020. The respondent timely submitted his application for

asylum, withholding and CAT protections.

        The Court notes the respondent entered the United States after August

E0187

25, 2019. Respondent has not met his burden to establish that he is, in fact, eligible for asylum. Other than the respondent's testimony, the respondent produced no independent evidence of being metered or being prevented from entering into the United States prior to his entry on August 25, 2019. He did not submit any documents from Mexico or testimony from any other individuals aside from his own testimony. The respondent also, apparently, destroyed his identity document, his passport, which would have indicated when he actually departed ▆▆▆▆▆ or traveled through any other countries on the way to the United States which clearly would have indicated what the respondent's actual travel plans were prior to his arrival at the United States. The Court is unable to discern when the respondent actually left ▆▆▆▆▆▆▆▆▆▆ based on his willful destruction of his own identity document. However, the respondent has submitted his ▆▆▆▆▆ ational identity card to the Court. He did not submit his birth certificate or any other identity documents.

The Court is going to issue a standard oral decision today. We are going to mark the Notice to Appear as Exhibit 1. The respondent's 589 will be marked as Exhibit 2. The respondent was unable to sign this document due to the fact that he is in quarantine at the Pine Prairie Detention Facility. The credible fear is marked as Exhibit 3. The respondent's first exhibits are marked at 4, which were accepted without objection. Exhibit 5 is the Government's document, which were also accepted without objection. Respondent's exhibits, pages 1 through 11 at Exhibit 6 were excluded as untimely. They were not filed prior to the entry of the original date of this case, which would have been on February 11. Respondent submitted a motion for untimely submission; however, the Court notes that the respondent's counsel was late. Furthermore, these documents, as the respondent has allegedly been in the United States since at least August, stated that he contacted his lawyer who contacted his

A2▆▆▆▆▆                                          2                              April 28, 2020
                                                                              E0188

sponsor to get these documents rather than the respondent actually having these documents ready to be turned in in a timely manner. Therefore, the Court does not find that good cause, but rather delay by the respondent in not gathering his documents prior to the case. Therefore, the Court is not going to consider those documents. However, I will consider them for purposes of adverse credibility if needed. With respect to Government Exhibit 7, his sworn statement, which was not objected to by the respondent, and will be used in this proceeding and also for Exhibit 8, the Court will include a copy of the Fifth Circuit addendum, which it will be mailing to both parties at the conclusion of my oral decision today.

As the Court noted, the respondent did accept the allegations against him, 1 through 4, conceded the charge of removability, declined to designate a country of removability. The Court, in turn, designated Cameroon and the Court will continue with that presumption at this time unless counsel changes their mind. Now, with respect to oral decision of the Immigration Judge, as the Court noted the respondent's passport was not presented. He has presented minimal evidence of his identity, save his Cameroon I.D. card.

Respondent admits or states that he departed through ▇▇▇ as opposed to ▇▇▇▇ after having escaped from a prison or a cell where he was held with approximately 10 other individuals on or about January 1, 2019. The respondent then departed ▇▇▇ within four days using a passport that he apparently obtained some time in 2016. No photocopies or any other document were presented besides the respondent's identity card concerning his identity. In fact, the respondent's birth certificate also was not presented either by the respondent previously when he entered the United States or here at the hearing. It is the respondent's burden to establish his identity before the Court. The respondent carries the burden to establish identity in any

E0189

asylum claim and his failure to do so here will be a separate basis for denial of his claim. See Matter of O-D-, 21 I&N Dec. 1079, at 1081 (BIA 1998), stating that it is the alien's burden to establish his identity as a citizen and national of the country from which he seeks refuge. The Board of Immigration Appeals has held that corroborative evidence such as place of birth should be produced when it is reasonable to expect it. See Matter of S-M-J-, 21 I&N Dec. 722 (BIA 1997). Otherwise, an explanation should be provided as to why corroborative evidence is not presented. Here the respondent did not produce his birth certificate nor did he produce his passport which would clearly establish his identity as a native and citizen of           , but rather stated that he deliberately destroyed his identity document in an attempt to create subterfuge or to not allow individuals within either Guatemala or Mexico to deport him back to Nevertheless, the respondent has actually not produced any other document besides a            tional identity card which in and of itself does not confer citizenship upon the respondent, particularly when that coupled with his own birth certificate which the respondent stated he was in possession of when the was traveling into the United States as stated in his sworn statement which is marked at Exhibit 7. The respondent stated he used his passport and birth certificate as he traveled and he freely told this to the Border Patrol Officers; however, today he emphatically said that he did not actually have his birth certificate. Counsel for the respondent has indicated that respondent did have a birth certificate and attempted to provide it to the Court; however, it was not presented for today's hearing. No copy or other document was presented. Even so, it still would be late and not be the original. Respondent's original apparently was with him when he was traveling to the United States along with his passport and it makes sense that either the respondent destroyed his own birth certificate and his passport or had neither one and is truly not a native and citizen of

4    April 28, 2020
E0190

The respondent's application, as I stated, was submitted and the respondent's credible fear was also reviewed. The respondent has been in custody since August of 2019. The respondent did not have originals of any of his documents, to include even his sworn statements from his family members. The respondent has had sufficient time to produce those documents to the Court. Indeed, apparently, they have been in the sponsor's possession and/or the respondent's possession for some 60 to 70 days. They were not provided to the Court today. Respondent's counsel states that they will be provided to him today by the sponsor; however, they have not presented to the Court for adjudication today. Nevertheless, the Court would have found that they were untimely submitted and I would have excluded them as being untimely.

The Court does not find the respondent's explanations to be satisfactory with respect to his identity documents. I do find the respondent's identity has not been established. He did not present original documents. He also admits that he traveled through Central and Court America and Nigeria. The respondent does not have the requisite documents to establish his identity and, therefore, the Court would deny on that basis for not having corroborative evidence to establish his identity. Now, with respect to the respondent's credibility, the Court has listened carefully to his testimony which at times has been conflicting. It has also been conflicting with respect to the respondent's own identity documents which in and of itself would be a certain point of reference with respect to whether or not the respondent actually had his identity documents and what he actually did with them. He freely admitted he destroyed these documents in an attempt to stop immigration officials in various countries from deporting him back to          However, the respondent also stated that he had his birth certificate with him, which he denies today under oath. So there is an inconsistent

statement and it is quite serious with respect to the respondent's identity and/or his eligibility for asylum and/or withholding and CAT.

The Court would find the respondent did not testify truthfully with respect to Exhibit 7 which is the Government's sworn statement and the respondent's sworn testimony today. The respondent was asked by Government Counsel on cross-examination as to how he had traveled to the United States and what documents he had with him. He denies having used a birth certificate. He did admit to having a passport. There does not appear to be any simple reason for him to have now changed his story other than he is unable to produce birth certificate and unable to produce his passport or, better yet, he forgot he had told in his sworn statement to Border Patrol Officers which was inconsistent with what his story is now, but, nevertheless, it still does not establish his identity. Moreover, it clearly establishes that he was not telling the truth either then or now. Simply put, the Court does not find the respondent's explanation as to where his birth certificate is is satisfactory. Moreover, the respondent deliberately destroyed his own birth certificate and/or destroyed his passport, which he did not produce here in Court.

In addition, the respondent testified at length under cross-examination and even in direct examination as to who he had seen or visited with while he was in a



The respondent said repeatedly that no one had come to visit him in the hospital. However, on cross-examination he states again that no one did and then finally when confronted with the fact that his own brother had come to him to bring him his travel documents to include a passport and money, he changed his story in order to accommodate the fact that the respondent had no other way to get these identity documents to him while he was in the bush because he had repeatedly said that no one had ever visited him. So the respondent states that he fled back to his home while it was being burned after he went into the bush, retrieved these documents, gave them to his brother and then on the second day while in hospital the respondent's brother brought them to him. The Court specifically asked the respondent whether or not the respondent's brother had taken any photographs or provided a sworn statement regarding his injuries or him being hospitalized. The respondent stated no, he did not provide a sworn statement or did he provide any photographs to establish that the respondent was, in fact, in the hospital. Moreover, the respondent produced no medical records, prescriptions, photographs, x-rays, or any other type of information regarding his alleged hospital stay for a period of three days. This is inconsistent with his testimony. It is also inconsistent that the respondent's brother visited him in the hospital, provided these identity documents to him when he specifically said he had no contact with any family members or even friends for that matter. The Court directly asked him, how did you reach your brother to tell him you were in the hospital. He called him using someone else's phone. Presumably, the respondent's brother appeared at the hospital within the second day, saw him and then departed immediately. The Court then asked the respondent why did you not leave with your brother on the second day to depart and go into the bush. He did not have a plausible explanation and just states on the third day he left the hospital without any other reason

or explanation as to why he would not leave with his own brother who, presumably, he
trusted with his life since he came to visit him in the hospital.

Third, the Court finds that the respondent has not testified credibly with
respect to the reason he was departing          to begin with. The respondent
initially states to the Border Patrol Officers that h
Then in his credible fear he states that he also
                                     But then today in his testimony merges the two and
then states that, yes, he was with          nd villagers when he fled or the reason he
had been detained. These are inconsistent statements. The respondent was not a
member of the      does not appear to have had any affiliation with them



that. These statements are also inconsistent with his prior testimony and are the basis
of his claim that he was persecuted having participated or protested against the
government of          The Court does not find his explanations to be persuasive.

Moreover, the Court would also note that respondent testified that he was
in a hospital some 40 minutes to an hour away from the prison that he had escaped
from with approximately 10 other individuals. The Court finds that the respondent's
explanation as to his travel to get to this hospital interesting in that the respondent was
not chased nor arrested by other military gendarmes who, if looking for the respondent
and the other nine individuals that escaped from the prison, would presumably have
gone to clinics and hospitals in the event that the respondent had actually been injured,
but the respondent states that he sat there for three days and waited for his brother to

A                                          8                            April 28, 2020

bring him his identity documents and then left. This does not appear to be plausible in light of the fact that the respondent had traveled to this hospital, apparently, under the auspices of a free taxi, where he waited for three days without any military or police intervention and then departed to go to [            ]ith his passport, perhaps his birth certificate and national identity card. For these reasons the Court would find the respondent has not testified credibly and he will not bear the presumption of credibility on appeal.

With respect to the respondent's claim for asylum, withholding and CAT, the respondent has not established that he was present in Mexico prior to July 16, 2019. It is his burden to do so. He produced no hotel records, indeed any other testimony or any proof whatsoever that he traveled prior to that date from [            ]. The simple fact of the matter is the respondent destroyed his own identity document which certainly would have borne any of the stamps that he allegedly left or entered other countries and would have established his identity, but he destroyed that document and did not produce an original birth certificate for the Court to examine. The Court has no way to determine whether or not the respondent actually did, in fact, leave [        ] prior to July 16 or when, in fact, he arrived in Mexico and whether or not he was metered. It is his burden to do so. The Court does not find that he has established that. Therefore, the respondent is not eligible for asylum.

The Court will examine the respondent's claim, however, with respect to past persecution assuming arguendo he was eligible for asylum and withholding and CAT. The respondent claims past persecution on one occasion in December of 2018 where he states he had been detained by at least eight members of the [        ] military gendarmes, where he was detained for a period of three days and then the prison, apparently, was broken into or he was allowed to escape in some way with 10

A[        ]                                           9                                  April 28, 2020
E0195

other individuals whereupon he placed himself at a hospital approximately 40 to an hour's drive away from this location. The respondent presented very little evidence of any of these incidents. He did not provide a medical certificate or any type of photograph of his entry or his stay in a hospital. In fact, the Court specifically asked the respondent where his affidavit was or any photographic evidence of his claim to being placed in this hospital from his own brother who, apparently, saw him there. The respondent was not able to produce that his brother did not submit an affidavit concerning this type of evidence. The Court would note that any time an individual is placed in a hospital for a period of three days, normally that would be accompanied by some sort of a medical document to include either a prescription or even a photograph or some type of treatment record, but the respondent produced nothing. Now, the respondent was able, apparently, to provide his passport and birth certificate as he fled the country, but was not able to produce any medical records or evidence to show any medical detention.

The Court also notes the respondent did submit evidence that was not accepted with respect to his alleged being wanted for being in opposition to the government of            The Court would note with respect to these documents that the respondent escaped from jail on January 1. If the Court carefully considers the record at Exhibit 6 for identification and has excluded these documents, but for purposes of argument's sake the documents that respondent did submit are incongruent. For example, at page 10 of this exhibit the respondent states that a convocation was issued with request for him to appear on January 4, 2019. This was the exact same day that the respondent escaped from prison in the middle of the night. Now, even in the best of circumstances the Court finds even in the United States or in more sophisticated police departments it is a wonder that anyone would be able to issue

such a document to request that respondent appear after having escaped on January 1 in Buea, which is approximately one hour away from where the respondent escaped from this prison. It is dated January 1, 2019, the very day the respondent was able to leave and/or depart and escape prison and then he would be issued this summons to, apparently, appear four days later after having escaped. That is quite implausible. In realty what this appears to be is contrived and created for the purposes of litigation. These documents were not presented in original format, but the dates clearly do not add up. There is no reason for anyone in          some hour away to have been issuing a summons for the respondent to appear when, in fact, they should have been looking for the respondent as an escaped prisoner and all they needed to do was, apparently, look in a clinic where he lay for a period of three days rather than to have this created on the very day he allegedly escaped a prison.

As the Court notes, persecution must be extreme in the Fifth Circuit. That comes from Eduard v. Ashcroft, 379 F.3d 182. It also must be motived in part by an enumerated ground in the statute. See Girma v. INS, 283 F.3d 665 (5th Cir. 2002). Recently, the Fifth Circuit under whose jurisdiction this case arises, in Martinez-Lopez v. Barr reaffirmed the standard necessary in asylum cases. The Court stated we had held that mere denigration, harassment and threats are ordinarily not extreme enough to be considered persecution. See Eduard, and see also Tesfamichael v. Gonzales and Mikael v. INS, approving an IJ finding of no persecution when an applicant and his family had suffered a kidnapping, detention, torture, bodily threat and other violence. Detention for days may be harsh, but it does not qualify as extreme treatment particularly when there is no evidence that respondent suffered significant physical injury or harm. The respondent's injuries and/or medical records here do not support extreme conduct. In fact, there are no medical records. There is not even a photograph

A▮▮▮▮▮▮                                           11                                    April 28, 2020
                                                                                          E0197

or any eyewitness account to include his own brother who, apparently, visited him on the second day in hospital. The respondent presented no concrete evidence of his detention let alone any injuries. The respondent was asked whether or not he had any photographs or any other documentary evidence to provide to the Court. He did not have any.

Since this is a withholding case and the standard is "clear probability" of persecution or torture it is not unreasonable for the respondent to produce this type of documentation. Furthermore, it does not appear the respondent suffered any significant physical injury or harm. Therefore, the Court does not find that this conduct would be extreme. The Court would also note Liu v. Holder, 478 F.App'x at 219, claiming that an alien does not demonstrate past persecution when he was electrically shocked trying to protest his wife's abortion, briefly detained and received a fine with a consequence of non-payment was resulting in the loss of farming land. Occasional verbal taunts and being hit upon the head with a stone also relating with cuts to the head and medication to stop bleeding does not rise to a level of persecution. Simply put, the Court does not find the respondent has demonstrated any harm he may have suffered rises to the level of extreme persecution and would deny on that basis.

A petitioner requesting withholding of removal must make a similar showing, but he shoulders a greater burden. He must demonstrate a clear probability of persecution on account of one of the enumerated grounds. The Court would note that respondent's interactions between police officers for the first incident which occurred sometime in October of 2017 and then 14 months later respondent states that the very day that he appeared from the bush to go get food for his family on a motorbike, he was detained yet again. This does not appear to be a continual pattern of any sort of arrested or detention by ▮▮▮▮ authorities, but rather a 14 month delay between the

A▮▮▮▮                                    12                              April 28, 2020
E0198

two. In the first incidence the respondent was never even detained; he just participated in a march.

The clear probability standard requires more certainly than a well-founded fear. It means the persecution upon return is more likely than not. See Renvencu v. Sessions, 895 F.3d 396. The respondent destroyed his          passport and the Court has no idea whether or not the respondent actually left through Nigeria or if he left through the          airport. Since the respondent had a passport in 2016 and then decided to depart through          ven though he had some sort of an arrest warrant as purported in his original documents which do not appear to be authentic, but rather contrived for the purposes of litigation, the Court does not find that respondent has established that it is more likely than not he would be detained or harmed if returned to          Moreover, the respondent's own family continues to live i          . The evidence that they supplied with respect to these documents also is wanting. For example, the respondent's family friends and family members did not provide identity documents with any of these sworn affidavits. They are merely signed and allegedly notarized by an individual in          ll dated in the middle of January in          The respondent, if he ever had a Cameroon passport, would certainly know where he is and/or would have provided arrest warrants after the respondent was allegedly escaped from prison or detention. This does not appear to be congruent with the story of being allowed to depart either with the assistance of others or with his incongruent statement regarding his brother's assistance while in hospital. The documents the respondent did submit were not admitted, but for the purposes of credibility findings the Court does not find them to be persuasive. The respondent stated he is not a member of the SDF or a member of any secessionist branch; however, does have sympathies with them and has been accused of being a separatist. The respondent's family members that submitted

A                                        13                        April 28, 2020

affidavits that were not essentially concluded did not mention his membership in anything nor did the respondent mention any membership in his own testimony. In that the respondent has not established eligibility for asylum, he has not necessarily established eligibility for withholding of removal pursuant to Section 241(b)(3) of the Act.

With respect to the respondent's application for CAT, the respondent's evidence is also insufficient to make a prima facie showing that he is entitled to protection under CAT. The respondent was not previously tortured. He has not shown that he has been able to internally relocate to avoid any feared individuals. The respondent left the country, apparently, with his own passport allegedly with a capias warrant for his arrest; however, it does not appear that respondent actually received this document. Moreover, it also appears that it is contrived in light of the fact that it was issued on the very day that the respondent was still allegedly in custody in a prison. Therefore, there would be no cause for them to issue a convocation requesting his appearance while he was already in custody. That is inconvenient in that the respondent's dates do not appear to line up with the date of the convocation or with the capias where the respondent had already left the country.

Considering all these circumstances, the respondent has not shown that he may face torture or the torture he may face would be at the instigation of or with the acquiescence, to include the concept of willful blindness, of a public official or other person acting in an official capacity. The respondent's injuries, even if he had evidence or proof thereof, only occurred on one occasion and the respondent states that he was beaten by          officials without any other supporting evidence. The Court did not find the respondent to be credible; therefore, would look to other corroborative evidence to determine whether or not the respondent was, in fact, tortured. However, there is none, either from his own family members or from independent medical records.

A                                              14                                April 28, 2020
                                                                                   E0200

Finally, the Court would note with respect to CAT, there are civil judicial procedures in place to allow individuals to seek redress for police misconduct or corruption and to investigate reports of abuse. It does not appear that respondent availed himself of any of those reliefs prior to his departure or since his departure. The respondent testified his brother was the individual who helped him depart, provided money to him, and brought him his identity documents, although the respondent's brother did not provide any kind of an affidavit or any evidence to this Court either in testimony or in written format. Therefore, the respondent has failed to establish the lower burden of proof required for asylum in this case, of course, and he is not eligible. He necessarily also has not satisfied the higher clear probability standard required for withholding. See Dale v. Holder and Matter of Z-Z-O-, holding that the Immigration Judge's predicted findings of what may or may not occur in the future are findings of fact which are subject to clearly run a standard of review. For the same reason, the respondent did not establish a well-founded fear of mistreatment rising to a level of persecution. The Court finds he is not properly found to have established a likelihood of mistreatment amounting to torture if returned. Therefore, the Court orders the following:

ORDERS

IT IS HEREBY ORDERED the respondent's application for withholding of removal pursuant to Section 241(b)(3) is denied.

IT IS FURTHER ORDERED the respondent's request for withholding of removal pursuant to the Convention Against Torture is denied.

A                                    15                          April 28, 2020
                                                                  E0201

FINALLY, THE COURT ORDERS the respondent removed from the

United States to

**_Please see the next page for electronic_**

**_signature_**

W. SCOTT LARAGY
United States Immigration Judge

A                                          16                          April 28, 2020
                                                                        E0202



//s//

Immigration Judge LARAGY, W. SCOTT

i:Oe.t|eoir federation services|w.scott.laragy@usdoj.gov on June
9, 2020 at 5:19 PM GMT




**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**Cowgill, Colleen**
**Rocky Mountain Immigrant Advocacy**
**Network**
**7301 Federal Blvd**
**Suite 300**
**Westminster, CO 80030**

**DHS/ICE Office of Chief Counsel - AUR**
**12445 East Caley Avenue**
**Centennial, CO 80111-5663**

**Name:** ███████████████         **A** ███████████

**Date of this notice: 7/24/2020**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Creppy, Michael J.

Userteam: Docket

E0204

U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**DHS/ICE/GEO**

**DHS/ICE Office of Chief Counsel - AUR**
**12445 East Caley Avenue**
**Centennial, CO 80111-5663**

Name:                                          A

**Date of this notice: 7/24/2020**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. §1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

Donna Carr

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Creppy, Michael J.

Userteam:

E0205

**U.S. Department of Justice**                                      Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

File:   A‍‍‍‍‍‍‍ – Aurora, CO                          Date:     **JUL 2 4 2020**

In re:

IN REMOVAL PROCEEDINGS

APPEAL AND MOTION

ON BEHALF OF RESPONDENT:   Colleen Cowgill, Esquire

ON BEHALF OF DHS:   Miriam Sternberg
                     Assistant Chief Counsel

APPLICATION:  Asylum; withholding of removal; Convention Against Torture;
              Remand


The respondent, a native and citizen of ‍‍‍‍‍‍‍ appeals from the Immigration Judge's
decision dated February 5, 2020, denying his applications for asylum, withholding of removal,
and protection under the Convention Against Torture. Sections 208(b)(1)(A) and 241(b)(3)(A)
of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(1)(A) and 1231(b)(3)(A); 8 C.F.R.
§§ 1208.16(c), 1208.18(a). The respondent has also filed a motion to remand. The Department of
Homeland Security ("DHS") opposes the appeal and the motion. The appeal will be dismissed,
and the motion will be denied.

We review findings of fact determined by an Immigration Judge, including credibility findings,
under a "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i). We review questions of law,
discretion, and judgment and all other issues in appeals from decisions of Immigration Judges
de novo. 8 C.F.R. § 1003.1(d)(3)(i).

The respondent asserts on appeal that he was denied a fair hearing because the Immigration
Judge did not adequately assess his competency, she committed clear error in finding him
competent, and she erred in not implementing appropriate safeguards (Respondent's Br. at 15-24).
The respondent has submitted a psychological evaluation dated May 11, 2020, following an
April 30, 2020, telephonic interview with a doctor.

The test for determining whether an alien is competent to participate in immigration
proceedings is whether he or she has a rational and factual understanding of the nature and object
of the proceedings, can consult with the attorney or representative if there is one, and has
a reasonable opportunity to examine and present evidence and cross-examine witnesses. *Matter
of M-A-M-*, 25 I&N Dec. 474, 479 (BIA 2011). Here, the Immigration Judge applied the
framework set forth in *Matter of M-A-M-* in assessing the respondent's competency.
The Immigration Judge conducted a judicial competency inquiry ("JCI") on January 7, 2020
(Tr. at 27-31). She considered the medical records submitted for the respondent and noted that
they suggest he suffers from post-traumatic stress disorder ("PTSD") and depression (IJ at 2, 9;
Exh. 9), although she did not believe the records represented a full diagnosis. The Immigration
Judge determined that the respondent was competent.                          E0206



The respondent has not shown clear error in the Immigration Judge's finding that the respondent understood the nature of the proceedings, would have been able to consult with an attorney if he had had one, and had a reasonable opportunity to examine and present evidence and cross-examine witnesses at the hearing, nor would the additional records proffered by the respondent with his motion change this result. 8 C.F.R. § 1003.1(d)(3)(i); *Matter of M-A-M-*, 25 I&N Dec. at 479; *see Matter of J-S-S-*, 26 I&N Dec. 679 (BIA 2015) (competency is a finding of fact that the Board reviews for clear error). The record reflects that the respondent participated as a witness and testified responsively throughout his merits hearing. Additionally, the respondent submitted evidence which included, inter alia, the State Department's *Country Reports on Human Rights Practices* for 2018 (Exh. 4); a December 17, 2019, declaration from the respondent (Exh. 5); a statement from the respondent's attorney in ▇▇▇▇▇▇ (Exh. 6); copies of his ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (SCNC) (Exh. 7); a statement from the respondent's brother Elvis (Exh. 7); a statement from a neighbor (Exh. 7); photographs (Exh. 7); documents regarding country conditions ▇▇▇▇▇▇ (Exhs. 8 and 10); and a copy of a court decision and additional statement from the respondent (Exh. 10).

Both the psychological evaluation considered by the Immigration Judge (Exh. 9) and the psychiatric evaluation submitted with the respondent's motion (Motion at Tab B) indicate diagnoses of PTSD and depression. However, neither evaluation indicates the respondent was not mentally competent at the time of his hearing or makes an assessment of the respondent's mental health status in the context of its impact on the respondent's ability to testify at his immigration court hearing. In view of the respondent's submission of relevant evidence, his written statement, and his testimony which was responsive to the questions asked and reflected an understanding of the nature and purpose of the proceedings, the record before the Immigration Judge was sufficient to support his finding of competency, and the additional evidence submitted with the motion does not meaningfully change the calculus in this case. *See Matter of Coelho*, 20 I&N Dec. 464, 473 (BIA 1992) (a party who seeks a remand or to reopen proceedings bears a "heavy burden" of proving that if proceedings were reopened, the new evidence would likely change the result in the case). The record reflects that the respondent was mentally competent and received a full and fair hearing without the implementation of any safeguards.

The respondent also asserts that he is entitled to a presumption of credibility because the Immigration Judge did not make an explicit adverse credibility determination (Respondent's Br. at 5-6). Section 208(b)(1)(B)(iii) of the Act. In fact, the Immigration Judge found the facts and circumstances presented by the respondent "not to be credible" and made an alternative finding that the respondent's testimony was insufficiently persuasive absent "corroboration from people who could have explained the inconsistencies and differences" between the letter from the respondent's brother ▇▇▇ and the respondent's testimony (IJ at 10).

We discern no clear error in the Immigration Judge's adverse credibility finding upon considering the totality of the circumstances. Section 208(b)(1)(B)(iii) of the Act; 8 C.F.R. § 1003.1(d)(3)(i) The Immigration Judge reasonably found that the letter from the respondent's brother who purportedly arranged for ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ is so inconsistent with the respondent's version of events that it significantly undermines his credibility (IJ at 6-8; Tr. at 54-113; Exh. 7). With respect to statements from the respondent's

2

family attorney in ▓▓▓▓▓ and a neighbor (Exhs. 6 and 7), the attorney does not claim to have witnessed ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and neither statement is sufficiently reliable, or consistent with the facts set forth by the respondent, to bolster his claim (Exhs. 6 and 7). Based on this record, we conclude that the Immigration Judge's decision not to credit the respondent's explanations was not clearly erroneous as it was a permissible view of the evidence (IJ at 8; Tr. at 66-69, 95-99). *Matter of D-R-,* 25 I&N Dec. 445, 455 (BIA 2011).

In the absence of credible testimony, the respondent did not meet his burden of establishing his eligibility for asylum or withholding of removal. Sections 208(b)(1)(B)(i)-(ii) and 241(b)(3)(C) of the Act; 8 C.F.R. §§ 1208.13(a), 1208.16(b); *Matter of Y-I-M-,* 27 I&N Dec. 724, 732 (BIA 2019) (finding applicant's testimony which lacked credibility as to both claims of past persecution and fear of future persecution insufficient to establish eligibility for asylum or withholding of removal); *Matter of M-S-,* 21 I&N Dec. 125, 129 (BIA 1995) ("A persecution claim which lacks veracity cannot satisfy the burdens of proof and persuasion necessary to establish eligibility for asylum and withholding relief").

The respondent's claim for protection under the Convention Against Torture is based on the same facts that were found to lack credibility with respect to the respondent's asylum application (IJ at 10). The respondent has not established independent of his own non-credible testimony a likelihood that he will be tortured "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity" upon removal to Cameroon for any reason, even considering country conditions. 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1); *Matter of Z-Z-O-,* 26 I&N Dec. 586 (BIA 2015).

The respondent has proffered additional evidence with his motion which includes statements from his parents (Tabs E and G), his sister Rachel (Tab F), his brother Ndikum (Tab C), three individuals holding positions ▓▓▓▓▓▓▓▓▓▓▓▓ (Tabs I, J, and K), and a farmer who claims to have sheltered the respondent (Tab H); evidence regarding his brother ▓▓▓▓▓ injury (Tab D); a medical report for the respondent (Tab A); and a number of country condition articles that do not specifically refer to the respondent (Tabs L to R). The written statements proffered with the motion are of limited value in rehabilitating the Immigration Judge's adverse credibility finding. *See Matter of F-S-N-,* 28 I&N Dec. 1, 5 (BIA 2020) (finding written statements of asylum applicant, her family, and her neighbors to be of limited value in establishing her prima facie eligibility for relief); *Matter of H-L-H- & Z-Y-Z-,* 25 I&N Dec. 209, 215 (BIA 2010) (observing that limited weight may be given to letters from family and friends who "are interested witnesses [and are] not subject to cross-examination"), *abrogated on other grounds by Hui Lin Huang v. Holder,* 677 F.3d 130, 134-35 (2d Cir. 2012).

None of the proffered statements address the significant discrepancies in ▓▓▓▓▓ statement, nor has the respondent provided an additional statement from ▓▓▓ offering an explanation. The assertion in the various written statements that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is entirely speculative. *See, e.g., Matter of F-S-N-,* 28 I&N Dec. at 5 (finding claim of asylum applicant seeking reopening that her cousin was mistaken for her and detained and mistreated unpersuasive and stating that her "failure to rehabilitate the credibility of her previous claim" makes her statements that "she is still pursued by law enforcement officials several years after her departure from Cameroon" less believable).

3

E0208

A███████████

Additionally, although not necessary to our decision, the declarants' statements that the
████████████████████████████████████████████████ is inconsistent with the
████████████████████████████████████████████████████████████████████████████
████████████████████████████

   The respondent has not shown that the medical report, which is dated prior to the respondent's
departure from ███████ was previously unavailable, and it is insufficient to rehabilitate the
respondent's credibility in any event. We find that remand of the proceedings is unwarranted
because the evidence proffered by the respondent would not likely change the result in this case.
*Matter of Coelho,* 20 I&N Dec. at 464. Accordingly, the appeal will be dismissed, and the motion
will be denied.

   ORDER:   The appeal is dismissed, and the motion is denied.

   NOTICE: If a respondent is subject to a final order of removal and willfully fails or refuses to
depart from the United States pursuant to the order, to make timely application in good faith for
travel or other documents necessary to depart the United States, or to present himself or herself at
the time and place required for removal by the Department of Homeland Security, or conspired to
or takes any action designed to prevent or hamper the respondent's departure pursuant to the order
of removal, the respondent shall be subject to a civil monetary penalty of up to $813 for each day
the respondent is in violation. *See* section 274D of the Immigration and Nationality Act, 8 U.S.C.
§ 1324d; 8 C.F.R. § 280.53(b)(14).

FOR THE BOARD

4

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
AURORA, COLORADO

File: A███████                                                    February 5, 2020

In the Matter of

█████████████                        )
                                      )          IN REMOVAL PROCEEDINGS
                                      )
RESPONDENT                            )

CHARGES:          Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act
                  (INA).

APPLICATIONS:     Asylum pursuant to Section 208 of the INA; withholding of removal
                  pursuant to Section 241(b)(3) of the INA; and relief under the
                  United Nations Convention Against Torture.

ON BEHALF OF RESPONDENT: PRO SE

ON BEHALF OF DHS: DANIEL MCINTYRE

ORAL DECISION OF THE IMMIGRATION JUDGE

I. PROCEDURAL HISTORY

Respondent N█████████████████████████████████

████████ he Department of Homeland Security (Department or DHS) served

respondent with a Notice to Appear (NTA) on November 5, 2019, charging respondent

as removable under Section 212(a)(7)(A)(i)(I) of the INA. See Exhibit 1. On November

7, 2019, the Department filed the NTA with the Immigration Court (Court), and the Court

promptly issued a notice of hearing providing the respondent with the date, time, and location of his first hearing. Accordingly, the Court finds that jurisdiction of this matter has vested with the Court. See Matter of Bermudez-Cota, 27 I&N Dec. 441 (BIA 2018).

On November 20, 2018, respondent appeared before the Court for a master calendar hearing and admitted all four factual allegations. The Court sustained the charge and designated ▮▮▮▮▮ as the country of removal. On that same day, respondent filed with the Court a Form I-589 application for asylum and withholding of removal, which is contained in the record as Exhibit 2.

On December 23, 2019, the Department submitted medical records for the respondent. On January 7, 2020, the Court conducted a judicial competency inquiry. The Court asked respondent a number of questions designed to ascertain whether he had a rational and factual understanding of the nature of the removal proceedings and whether he had the ability to respond to the charges against him, exercise his rights, provide necessary information to his case, and respond to court instructions. The Court also considered the medical records provided by the Department. At the conclusion of the hearing, the Court found that respondent was competent to represent himself and to proceed without any safeguards.

On February 5, 2020, respondent appeared for his individual hearing and testified in support of his application for relief. Prior to taking testimony, the Court did inquire whether respondent was feeling up to and ready to proceed with testimony today, and he answered in the affirmative. The Court would note that respondent's testimony today was coherent and lucid and responsive to the Court's questions. The Court would also note that respondent did provide the Court with evidence and his own statements, and even provided excerpts from court records that were district court filings that were relevant to his case. So the Court found no reason to further inquire

2                                            February 5, 2020

E0211

into respondent's competency. ~~It does appear that respondent was competent to~~
~~proceed today.~~

For the reasons set forth below, the Court will deny respondent's
applications for asylum, withholding of removal, and protection under the Convention
Against Torture.

## II. EVIDENTIARY RECORD

The evidentiary record includes the following exhibits:

Exhibit 1:     Notice to Appear filed November 7, 2019;

Exhibit 2:     Form I-589, respondent's asylum application filed with the Court on
               November 20, 2019;

Exhibit 3:     Respondent's submission of December 17, 2019, consisting of
               primarily sponsor documents;

Exhibit 4:     The U.S. State Department Human Rights Report for ▮▮▮▮▮▮ for
               2018;

Exhibit 5:     Respondent's declaration;

Exhibit 6:     Respondent's submission of an attorney affidavit filed in support of
               his application;

Exhibit 7:     Respondent's submission of December 16, 2019, consisting of a
               ▮▮▮▮▮▮▮▮▮▮▮▮ statement from respondent's older
               brother, a statement from respondent's neighbor, and photographs.

Exhibit 9:     Medical records;

Exhibit 10:    Respondent's statement on eligibility for asylum, along with a Ninth
               Circuit scheduling order pertaining to the third-country transit bar,
               as well as articles on a rally in Mexico.

In addition to the above-listed documentary documentation, respondent

3                                February 5, 2020

testified in support of his application. Respondent was the only witness to testify in person today. The Court has given thorough consideration to all evidence submitted, regardless of whether that evidence is specifically referred to in this decision.

### III. CREDIBILITY AND CORROBORATION

The Court must apply the provisions of the REAL ID Act of 2005 to respondent's application and make a threshold determination regarding respondent's credibility. The Court had an opportunity to consider the totality of the record, as well respondent's demeanor in court and his responsiveness to questions asked, as well as the inherent plausibility of respondent's account and the consistency between respondent's written and oral statements, as well as other evidence of the record.

After considering respondent's testimony today in its totality and comparing it with the record, the Court has significant concerns about respondent's testimony. For some key facts, respondent has been consistent. Respondent testified at his credible fear interview, in court today, and in his asylum application that his first



4                                    February 5, 2020



Most of the Court's concerns are with respondent's supporting

documentation, which seemed to be inconsistent with his story. Again, taking the



February 5, 2020

E0214

his credible fear interview where he indicated ████████████████████████ The

inconsistency on the ███████████████████ is significant, because respondent

really was not able to give an adequate explanation as to what the purpose of the



According to respondent, ████████████████████████

More problematic is how significantly respondent's testimony differs from

████████████                              6                    February 5, 2020

███████████████████████████████████████████

This above direct ~~quoted~~description from the brother's letter varies on

several different points from respondent's testimony.  Respondent's testimony is that he

███████████████████████████████████████████

Respondent's brother then ~~goes on to say~~states. ████████████████

███████████████████████████████████████████

The above account from respondent's brother differs significantly from

respondent's testimony. ███████████████████████████

███████████████████████████████████████████



The above discrepancies are not minor; they are significant, and the Court
would find that respondent's explanation for why his brother's testimony was so different
than his was not helpful.  Respondent suggests that his brother considered h



The Court also finds somewhat troubling respondent's efforts to argue and
claim that he tried to enter the United States prior to August 2019.  At his credible fear
interview he was asked whether he made any prior attempts, and he said no.  But
nevertheless, the Court would acknowledge that the whole situation at the border is
confusing, and the Court would actually accept perhaps that respondent did not fully

8                    February 5, 2020

E0217

understand the Asylum Officer's question at the credible fear interview. But it is just one more inconsistency to add to the others.

The Court notes that respondent's medical records do suggest that he suffers from some depression and post-traumatic stress disorder from some prior events. The Court cannot put a lot of weight onto that, because the medical records do not really represent a full diagnosis, but certainly they corroborate respondent's claim that he has suffered past harm. The problem is, the Court is just not sure what exactly the harm was that he suffered and why it was inflicted on him and by whom it was inflicted because his testimony and the record are so divergent.

Finally, the Court would have expected, given the inconsistencies, that respondent could have provided corroborating testimony from his younger brother, who



But it is noteworthy that respondent went to the trouble of providing a letter from his attorney, who was not a witness to any of the incidents respondent described, but nevertheless was compelled

9                                            February 5, 2020

to provide a witness statement. So it stands to reason respondent could have provided statements from his younger brother, since he was clearly in contact with him while he was in Mexico. It would have also been helpful to have gotten statements from the mother and sister, but respondent did not do so.

Even if the Court were to stop short of finding that respondent's testimony was not credible, the fact that respondent's testimony had inconsistencies and was significantly different than the evidence he provided would at least require more corroboration from people who could have explained the inconsistencies and differences, such as respondent's younger brother, mother, or sister, or perhaps even another letter from respondent's elder brother explaining the discrepancy between his letter and the other evidence and the testimony. So based on the totality of respondent's testimony and evidence, the Court would have to find that respondent simply failed to meet his burden of persuading this Court that he was persecuted in the past on account of his political opinion as he testified today, and further finding respondent's testimony simply falling short of persuasiveness, the Court would also find that he has failed to persuade this Court that he has a well-founded fear of future persecution because his claim of future persecution is based on the same set of facts and circumstances the Court found not to be credible or, alternatively, persuasive.

Because respondent has failed to establish a well-founded fear of persecution, he necessarily fails to meet the higher standard required for withholding of removal under 241(b)(3).

Finally, because respondent's testimony and evidence were so inconsistent and not persuasive, the Court would also find that he has failed to persuade this Court that it is more likely than not he would be tortured ▮▮▮▮▮▮ by the government or with the government's acquiescence.

▮▮▮▮▮▮▮▮                                          10                        February 5, 2020

E0219

The Court would note that because respondent has failed to establish a well-founded fear of persecution, it need not make a determination as to whether the third-country transit rule applies to him. It would appear that it does. It would appear that he traveled through Mexico and did not apply for asylum in Mexico before arriving in this country in August 2019, so it would appear that the third-country transit rule would have barred him from asylum anyway. But because the Court finds that it must deny asylum because he has failed to establish a well-founded fear of persecution, the Court need not base its decision on the third-country transit rule. Accordingly, the Court will enter the following orders.

## ORDERS

IT IS HEREBY ORDERED that the respondent's application for asylum under 208 of the INA be denied.

IT IS FURTHER ORDERED that respondent's application for withholding of removal pursuant to Section 241(b)(3) of the INA be denied.

IT IS FURTHER ORDERED that the respondent be removed from the United States to

IT IS FURTHER ORDERED that respondent's applications for withholding of removal and deferral of removal under the Convention Against Torture be denied.

**_Please see the next page for electronic_**

**_signature_**

ELIZABETH H. MCGRAIL
Immigration Judge



A                                        11                          February 5, 2020

E0220

//s//

Immigration Judge MCGRAIL, ELIZABETH H.

i:0e.t|eoir federation services|elizabeth.mcgrail@usdoj.gov on
April 15, 2020 at 4:03 PM GMT

U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

5107 Leesburg Pike, Suite 2000
Falls Church, Virginia 22041

Toure-Samba, Khadizeth F.
Toure-Hernandez & Associates, P.C.
2295 Parklake Drive, NE
Suite 465
Atlanta, GA 30345

**DHS/ICE OFFICE OF CHIEF COUNSEL - SDC**
**146 CCA ROAD, P.O.BOX 248**
**LUMPKIN, GA 31815**

**Name:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮   **A** ▮▮▮▮▮▮▮

**Date of this notice: 11/4/2020**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

Donna Carr

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Goodwin, Deborah K.

LucasD
Userteam: Docket

E0222

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**DHS/ICE**

**DHS/ICE OFFICE OF CHIEF COUNSEL - SDC**
**146 CCA ROAD, P.O.BOX 248**
**LUMPKIN, GA 31815**

**Name:**

**Date of this notice: 11/4/2020**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. §1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

Donna Carr

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Goodwin, Deborah K.

LucasD
Userteam: Docket

E0223

**U.S. Department of Justice**                                    Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

File:                    - Lumpkin, GA                    Date:

In re:                                                                    **NOV - 4 2020**

IN REMOVAL PROCEEDINGS

APPEAL AND MOTION

ON BEHALF OF RESPONDENT:  Khadizeth F. Toure-Samba, Esquire

APPLICATION:  Asylum; withholding of removal; Convention Against Torture

    The respondent, a native and citizen of                    has appealed from the Immigration Judge's
decision dated April 23, 2020. The Immigration Judge denied the respondent's application for
asylum under section 208 of the Immigration and Nationality Act, 8 U.S.C. § 1158, withholding
of removal under section 241(b)(3) of the Act, 8 U.S.C. § 1231(b)(3), and his request for protection
under Article 3 of the Convention Against Torture, as implemented by 8 C.F.R. §§ 1208.16-.18.
The respondent has also filed a motion to reopen and has submitted new documentation, in the
nature of a motion to remand. The appeal will be dismissed and the motion denied.

    We review the findings of fact made by the Immigration Judge, including the determination of
credibility, for clear error. 8 C.F.R. § 1003.1(d)(3)(i). We review all other issues, including
questions of judgment, discretion, and law, de novo. 8 C.F.R. § 1003.1(d)(3)(ii).

    The Immigration Judge denied the respondent's asylum application based on the Third Country
Transit Bar.[1] The Immigration Judge also determined, in the alternative, that the respondent did
not establish eligibility for asylum or withholding of removal because he did not experience harm
rising to the level of persecution, did not have an objectively reasonable fear of future persecution
                                nd because he did not show a well-founded fear or clear
probability of future persecution              IJ at 1-7). The Immigration Judge also determined
that he did not demonstrate eligibility for protection under the Convention Against Torture
(IJ at 7-9).

---

[1] The Immigration Judge denied the respondent's application for asylum on the basis that he had
sought admission after July 16, 2019, and had not applied for protection in any country en route to
the United States (IJ at 3). *See* 8 C.F.R. § 1208.13(c)(4). This regulation codified an interim final
rule which, with limited exceptions, categorically bars asylum eligibility for an alien who sought
to enter the United States at its southern border unless he or she first applied, and was rejected, for
similar protection in at least a single third country through which he or she transited. *See* Asylum
Eligibility and Procedural Modifications, 84 Fed. Reg. 33,829, 33,830 (July 16, 2019). However,
on June 30, 2020, the United States District Court for the District of Columbia vacated the interim
final rule. *See Capital Area Immigrants' Rights Coal. v. Trump*, Nos. 19-2117 and 19-2530, 2020
WL 3542481 (D.D.C. June 30, 2020). Therefore, we are not relying on this rule in the resolution
of this case.

E0224

Although the respondent generally disagrees with the Immigration Judge's decision (Respondent's Mot. at 3; Notice of Appeal), he has not meaningfully or specifically challenged any of the Immigration Judge's alternative, merits determinations that provide an independent basis for denying the respondent's relief and protection claims.

We find these issues waived as bases of appeal. *See Matter of L-G-H-*, 26 I&N Dec. 365, 366 n. 1 (BIA 2014); *see also Matter of R-A-M-*, 25 I&N Dec. 657, 658 n.2 (BIA 2012) (when a party does not substantively appeal an issue addressed in the Immigration Judge's decision, that issue is waived on appeal). Therefore, the respondent's appellate arguments have provided no reason to disturb the Immigration Judge's decision.

The respondent has also filed a motion styled as a motion to reopen that is in the nature of a motion to remand and has submitted new documentation to be considered for his withholding of removal case[2] (Respondent's Mot. Exhs. A-C).[3]

Initially, the respondent has not shown clear or legal error in the Immigration Judge's decision and we generally will not consider new documentation on appeal. *See Matter of Fedorenko*, 19 I&N Dec. 57, 73-74 (BIA 1984) (providing that the Board does not consider evidence first offered on appeal because the Board's review is limited to a review of the record created before the Immigration Judge).

Further, the respondent's counsel mischaracterizes the record by claiming that the respondent told the Immigration Judge that he did not have this additional evidence at his hearing because the arrest warrant had been returned to his mother for translation (Respondent's Mot. at 4). We observe that statements by counsel are not evidence and that the record does not reflect that the respondent ever told[4] the Immigration Judge that he needed a continuance, that he received an arrest warrant and had returned it for an English translation, or that he was awaiting corroborating evidence in his case (Tr. at 41, 47-48, 67-71). *See INS v. Phinpathya*, 464 U.S. 183, 188-89 n.6 (1984); *Matter of S-M-*, 22 I&N Dec. 49, 51 (BIA 1998). The record also reflects that the Immigration Judge told the respondent that if he needed assistance with translating any of his documents that he could obtain these services from the legal orientation program (Tr. at 38).

In light of the totality of the circumstances presented by the instant case, we conclude that the respondent has not demonstrated that the newly proffered documentation was previously unavailable at his merits hearing or that it would likely change the result in his case. *See Matter of Coelho*, 20 I&N Dec.464, 472-73 (BIA 1992) (an alien seeking to reopen [or remand] proceedings bears a heavy burden of proving that the new evidence offered would likely change

---

[2] The respondent limited his motion to his withholding of removal application.

[3] The respondent's other exhibits are not in the nature of a motion to remand as they were already part of the administrative record (Respondent's Mot. at 5, Exhs. D-G).

[4] The respondent claims in his affidavit that he received this document in detention and returned it for translation, but does not claim that he told this to the Immigration Judge (Respondent's Mot. Exh. B at 10).

E0225

the result of the alien's case); 8 C.F.R. § 1003.2(c)(1). Moreover, in light of the waived issues noted above, the respondent cannot demonstrate prejudice. *See generally Matter of Santos*, 19 I&N Dec. 105 (BIA 1984).

Accordingly, the following orders are entered.

ORDER: The respondent's appeal is dismissed.

FURTHER ORDER: The respondent's motion is denied.

NOTICE: If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $813 for each day the respondent is in violation. *See* section 274D of the Immigration and Nationality Act, 8 U.S.C. § 1324d; 8 C.F.R. § 280.53(b)(14).

FOR THE BOARD

3

E0226

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
LUMPKIN, GEORGIA

File:                                                            April 23, 2020

In the Matter of

                                          )
                                          )        IN REMOVAL PROCEEDINGS
                                          )
RESPONDENT                                )

CHARGES:

APPLICATIONS:

ON BEHALF OF RESPONDENT: PRO SE

ON BEHALF OF DHS: JESSIE L. SIZEMORE


ORAL DECISION OF THE IMMIGRATION JUDGE

EXHIBITS

1. Notice to Appear.

2. Form I-589.

3. DHS Notice of Filing, tabs A through D (nine pages).

4. Addendum of law.

WITNESSES

1. Respondent.

1

E0227

## PROCEDURAL HISTORY

Respondent is a citizen and national of          . Respondent applied for
admission to the United States at port of entry Hidalgo, Texas, on 25 January 2020.
Exhibit 1, the Notice to Appear, was served on the respondent on 18 February 2020.
The Department of Homeland Security filed Exhibit 1 with the Court on 26 February
2020.

On 23 April 2020, the allegations in Exhibit 1 were sustained and respondent was
found by clear and convincing evidence to be removable as charged in Exhibit No. 1.
Cameroon is designated as the country of removal.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

An addendum stating the standards of law and burdens of proof relevant to the
issues in this case has been served on the parties and a copy placed in the Record of
Proceedings as Exhibit No. 4. The addendum is hereby incorporated into this decision
by reference.

In arriving at its finding of fact and conclusions of law, the Court has considered
all documentary and testimonial evidence in this case. The Court's failure to comment
on a specific exhibit or particular testimony does not mean that the Court has failed to
consider it.

### Administrative Notice

The Court takes administrative notice of the 2019 U.S. State Department Human
Rights Report for Cameroon.

### Credibility

Based upon the totality of the circumstances the Court finds respondent to be
credible.

2                                               April 23, 2020

E0228

## Asylum

Respondent submitted his asylum application, Exhibit 2, on 26 March 2020 and executed Part G on that same day. The respondent has shown by clear and convincing evidence that he applied for asylum within one year after his last arrival in the United States.

However, the respondent is subject to the Third-Country Transit Bar under 8 C.F.R. Section 1208.13(c)(4). He entered the United States across the southern land border on or after 16 July 16-2019 after transiting through at least one country outside the respondent's country of last citizenship en route to the United States. The respondent testified that he entered the United States on 25 January 2020 through the southern border. He traveled through Turkey, Ecuador, Columbia, Panama, Costa Rica, Nicaragua, Honduras, Guatemala and Mexico. Respondent testified that he did request asylum in any of the countries that he transited through.

Respondent has not demonstrated that he meets any of the exceptions to this Third-Country Transit Bar. Therefore, respondent is statutorily ineligible for asylum and his application may not be considered.

Assuming for the sake of argument is not barred from the relief sought, I make the following additional findings.

Respondent claims past persecution and a well-founded fear of future persecution on account of an imputed political opinion. Specifically, respondent claims

Based on the respondent's testimony and the evidence in the record, respondent

3                                                          April 23, 2020

E0229



espondent has not shown the harms he experienced rise to the level

of persecution. Considering the alleged persecutory acts in their totality, respondent

4                                    April 23, 2020

claims that he suffered from

Although the Eleventh Circuit does not require serious physical injury to prove past persecution where the respondent demonstrates threats combined with other forms of severe mistreatment, respondent has not proven that the injuries he received during this incident rise to the level of severe mistreatment. This incident with the

does not rise to the level of consistent and documented harm and threatening behavior that the Eleventh Circuit has found to cumulatively constitute past persecution. Thus, there is no presumption of a well-founded fear of persecution.

Respondent claims he fears returning to           because he believes the

Based on respondent's testimony, I find that he has a subjectively genuine fear of persecution in

However, I find that respondent's fear is not objectively reasonable because he has not shown that he would be targeted or singled out for persecution on accounted of

. None of the harms or threats he sustained cumulatively rise to the level of persecution. There is no indication that the

. Respondent points to the fact t

5                                        April 23, 2020

E0231

specifically.

Respondent also argues that the Cameroonian government would be able to

detain and kill him upon his removal to Cameroon because ████████████████

███████████████████  The Court does not find this argument persuasive.  Assuming



Respondent has also not shown that there is a pattern or practice of persecution

in ████████ of individuals who are similarly situated to him.  Respondent has not

shown that individuals similarly situated to him have experienced similar mistreatment

that respondent fears.

<u>Fear of th</u>████████████

Respondent also claims fear of returning to ████████ because he is afraid he

████████████████████████████████████████████████

Private criminal activity cannot generally form the basis for an asylum claim.

Further, persecution on account of political opinion must be due to the victim's political

opinion, not that of the persecutor's. The mere fact that a group may have a general political motive in causing societal instability does not mean that every victim of that group's violence was persecuted on account of his or her political opinion.

Respondent may have a subjectively genuine fear of returning to
However, I find that a reasonable person under similar circumstances would not fear persecution upon returning t                    specifically, I find in this case that persecution is not a reasonable possibility, nor does it rise to a ten percent possibility. For these reasons, I conclude that respondent has not met his burden of establishing that he should be granted asylum.

### Withholding of Removal

Given respondent's failure to satisfy the lower burden of proof for asylum, it naturally follows that the respondent cannot meet the higher burden of proof for withholding of removal. For these reasons, the Court concludes that respondent has not met his burden of proving that he should be granted withholding of removal under the provisions of the Act.

### Convention against Torture

The Court finds that respondent is not eligible for relief under the Convention against Torture as he has not established that it is more likely than not that he would be tortured if removed                    As described above, respondent failed to provide sufficient evidence establishing that he suffered past persecution, let alone torture, in Cameroon.

Eligibility for relief under the Convention against Torture cannot be established by stringing together a series of suppositions to show that torture is more likely than not to

7                                          April 23, 2020

occur unless the evidence shows that each step in the hypothetical chain of events is
more likely than not to happen.

There are no other facts in respondent's case that would elevate his personal risk
of torture to greater than 50 percent.

Regarding evidence of gross, flagrant or mass violations of human rights within
, as well as other relevant country conditions, the Country Report paints a
picture of a country plagued by many issues.  According to the Country Report,
pertinent human rights abuses in              include:  denial of fair and public trials;
security force killings; arbitrary arrests and detentions; and pervasive corruption at all
levels of government.  The Human Rights Report also details that the
government has been conducting arbitrary searches and detention of

engaging in mass arrests of                          ists and denying the rights
of suspected                       n criminal proceedings to consult with an
attorney.

Nevertheless, a pattern of human rights violations alone is not sufficient to show
that a particular person would be in danger of being subjected to torture upon his return
to that country.  Rather, specific grounds must exist to indicate that the applicant will be
personally at risk of torture and respondent has failed to demonstrate that such a
specific ground exists in his case.  Respondent has not shown that the government in
is seeking him or would detain or harm him upon his removal.  Respondent's
belief that he will be tortured stems from his testimony

8                                                April 23, 2020

E0234



Therefore, the greater weight of the evidence in this case establishes that it is unlikely that torture will be inflicted on respondent by or at the instigation of or with the consent or acquiescence of a ▮▮▮▮▮ public official or other persons acting in an official capacity in ▮▮▮▮▮

### Post-Conclusion Voluntary Departure

Respondent is ineligible for post-conclusion voluntary departure because he has not been in the U.S. for a period of one year immediately preceding the service of his Notice to Appear. Respondent entered the United States on 25 January 2020. His Notice to Appear was served on him on 18 February 2020. Thus, respondent is ineligible for post-conclusion voluntary departure.

### ORDERS

Respondent's application for asylum, withholding of removal and relief under the provisions of the Convention against Torture is denied.

Respondent's request for voluntary departure is denied.

Respondent will be removed from the United States to ▮

A written order reflecting the above decisions will be provided separately and made a part of this record.

***Please see the next page for electronic***

***signature***

9                                                    April 23, 2020

E0235

NANCE, JEFFERY R.
Immigration Judge
23 April 2020

Appeal date is 26 May 2020.

E0236

//s//

Immigration Judge NANCE, JEFFERY R.

i:0e.t|eoir federation services|jeffery.r.nance@usdoj.gov on
June 2, 2020 at 5:42 PM GMT



U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**Moses, Nembo Tanyi**
**Tca Law Offices**
**PO BOX 1054**
**Lanham, MD 20703**

**DHS/ICE Office of Chief Counsel - POK**
**126 Northpoint Dr., Suite 2020**
**Houston, TX 77060**

**Name:** ███████████

**A** ███████████

**Date of this notice: 11/19/2020**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

**Panel Members:**
**Wilson, Earle B.**

**Sharief**
Userteam: Docket

E0238

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

███████████

**C/O** ███████████

**DHS/ICE Office of Chief Counsel - POK**
**126 Northpoint Dr., Suite 2020**
**Houston, TX 77060**

**Name:** ████████████        **A** ████████████

**Date of this notice: 11/19/2020**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. §1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

**Panel Members:**
**Wilson, Earle B.**

Sharlefic
Userteam: **Docket**

E0239

Case 3:17-cv-02366-BAS-KSC    Document 695-6    Filed 03/08/21    PageID.58125

**U.S. Department of Justice**                                    Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041
_____

File:    A███████████ – Conroe, TX                    Date:        **NOV 1 9 2020**

In re:  █████████████████

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:    Nembo Tanyi Moses, Esquire

APPLICATION:    Asylum; withholding of removal; Convention Against Torture


The respondent, a native and citizen of ███████ timely appeals from an Immigration Judge's
April 30, 2020, decision, which found him inadmissible and subject to removal as charged, denied
his requests for relief and protection from removal, and ordered his removal from the United States.
The appeal will be dismissed. The request for oral argument before the Board is denied. 8 C.F.R.
§ 1003.1(e)(7).

The Board reviews an Immigration Judge's findings of fact, including findings as to the
credibility of testimony and the likelihood of future events, under the "clearly erroneous" standard.
*See* 8 C.F.R. § 1003.1(d)(3)(i); *Matter of Z-Z-O-*, 26 I&N Dec. 586, 590 (BIA 2015). The Board
reviews questions of law, discretion, and judgment and all other issues in appeals from decisions
of Immigration Judges de novo. *See* 8 C.F.R. § 1003.1(d)(3)(ii).

The Immigration Judge pretermitted the respondent's application for asylum on the basis that
he had sought admission after July 16, 2019, and had not applied for protection in any country en
route to the United States (IJ at 16). *See* 8 C.F.R. § 1208.13(c)(4). This regulation codified an
interim final rule which, with limited exceptions, categorically bars asylum eligibility for an alien
who sought to enter the United States at its southern border unless he or she first applied, and was
rejected, for similar protection in at least a single third country through which he or she transited.
*See* Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33,829, 33,830 (July 16, 2019).
However, on June 30, 2020, the United States District Court for the District of Columbia vacated
the interim final rule. *See Capital Area Immigrants' Rights Coal. v. Trump*, Nos. 19-2117 and 19-
2530, 2020 WL 3542481 (D.D.C. June 30, 2020). In light of this intervening case law, the
respondent is no longer barred from seeking asylum by the "Third Country Transit" rule.

Nonetheless, in the alternative, we are not persuaded to disturb the Immigration Judge's
decision to deny the respondent's asylum claim due to a lack of credibility, which is a dispositive
issue in this case (IJ at 10-18). *See Matter of A-B-*, 27 I&N Dec. 316, 340 (A.G. 2018) (holding
that "if an alien's asylum application is fatally flawed in one respect . . . an immigration judge or
the Board need not examine the remaining elements of the asylum claim). We discern no clear
error in the Immigration Judge's adverse credibility determination (IJ at 10-15).

An Immigration Judge may, considering the totality of the circumstances, base a credibility
finding on the respondent's "demeanor, candor, or responsiveness," the plausibility of his account,
and inconsistencies in his statements, without regard to whether they go "to the heart of the

E0240

applicant's claim." *See* sections 208(b)(1)(B)(iii) and 241(b)(3)(C) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(1)(B)(iii) and 1231(b)(3)(C); *see also Matter of J-Y-C-*, 24 I&N Dec. 260, 265 (BIA 2007) (the applicant's credibility is assessed under the totality of the circumstances). In finding the respondent not credible, the Immigration Judge noted that he presented inconsistent evidence regarding, among other things,

The foregoing credibility issues are present in the record and provide specific and cogent reasons upon which to base an adverse credibility determination and were not overcome by corroborative evidence. *See Wang v. Holder*, 569 F.3d 531, 537-40 (5th Cir. 2009); *see also Mwembie v. Gonzales*, 443 F.3d 405, 410 (5th Cir. 2006) (An adverse credibility finding must be supported by specific, cogent reasons in the record and not based upon speculation or conjecture); *Zhang v. Gonzales*, 432 F.3d 339, 344 (5th Cir. 2005) (an adverse credibility determination "must be supported by specific and cogent reasons derived from the record."); *Matter of J-Y-C-*, 24 I&N Dec. at 263-66. In the absence of credible testimony, the respondent cannot establish his eligibility for asylum or withholding of removal. *See Matter of M-S-*, 21 I&N Dec. 125, 129 (BIA 1995) (persecution claim that lacks veracity cannot satisfy burden of proof necessary to establish eligibility for asylum and withholding of removal).

As the respondent was properly found to be not credible, we discern no clear error in the Immigration Judge's determination that the respondent has not established his eligibility for protection under the Convention Against Torture. *See* 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1); *see also Efe v. Ashcroft*, 293 F.3d 899, 907-08 (5th Cir. 2002) (upholding denial of Convention Against Torture claim based on the Immigration Judge's adverse credibility assessment); *Matter of Z-Z-O-*, 26 I&N Dec. at 590 (explaining that an Immigration Judge's predictive findings of what may or may not occur in the future are findings of fact, which are reviewed under the "clear error" standard). Based on the foregoing, we agree with the Immigration Judge that absent credible testimony the respondent did not establish his eligibility for relief. *See Ghotra v. Whitaker*, 912 F.3d 284, 288-289 (5th Cir. 2019) (permitting the denial of asylum, withholding of removal, and Convention Against Torture applications when they are based upon the same factual predicate and are unsupported by independent evidence).

The respondent presents no arguments on appeal to persuade us to disturb the Immigration Judge's decision. Accordingly, we will affirm the Immigration Judge's decision and dismiss the appeal.

ORDER: The appeal is dismissed.

NOTICE: If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order

of removal, the respondent shall be subject to a civil monetary penalty of up to $813 for each day the respondent is in violation. *See* Section 274D of the Immigration and Nationality Act, 8 U.S.C. § 1324d; 8 C.F.R. § 280.53(b)(14).

FOR THE BOARD

E0242

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
CONROE, TEXAS

File: ████████████                                                April 30, 2020

In the Matter of

████████████                        )
                                    )           IN REMOVAL PROCEEDINGS
                                    )
RESPONDENT                          )

CHARGE:            Removable under Section 212(a)(7)(A)(i)(I) of the Immigration and
                   Nationality Act.

APPLICATIONS:      Asylum, Withholding of Removal, protection under the Convention
                   against Torture.

ON BEHALF OF RESPONDENT: NEMBO MOSES

ON BEHALF OF DHS: JAMES MANNING

ORAL DECISION AND ORDER OF THE IMMIGRATION JUDGE

1. INTRODUCTION

The respondent is a male, native, and citizen of ████████ ho applied for

admission into the United States at the Laredo, Texas Port of Entry on November 20,

2019. Removal proceedings commenced with the filing of a Notice to Appear on

January 8, 2020. See 8 CFR Section 1239.1(a); Exhibit 1. Removability has been

established by the admissions to the four factual allegations and the concession to the

E0243

charge of removability under Section 212(a)(7)(A)(i)(I). The country of ████████ has been designated as the country of removal in this case. See INA 241(b).

The issues, in this case, are whether the respondent qualifies for asylum, withholding of removal, or protection under the Convention against Torture. Also at issue is whether the respondent is subject to the third-country transit rule and the bar to asylum based upon that regulation.

## 2. SUMMARY OF THE EVIDENCE OF RECORD

The following documents were marked and entered into evidence without objection:

Exhibit 1 is the Notice to Appear.

Exhibit 1A is the credible fear review order.

Exhibit 1B is the expedited removal order.

Exhibit 2 is the respondent's Application for Asylum, which includes a Form I-589 as well as tabs A through H.

Exhibit 3 is the supplemental filing in support of Asylum Application filed by the respondent, which contains tabs I through Q.

Exhibit 4 is the ████████ 2019 Human Rights Report from the U.S. Department of State, which the Court has taken administrative notice of.

There were no stipulations made by the parties in this case.

The testimony, in this case, consists of the respondent's testimony. No other witness has testified in this case.

All documentary and testimonial evidence of record has been considered even if not specifically referenced in this oral decision.

A████                                    2                    April 30, 2020

## 3. SUMMARY OF THE TESTIMONY

The respondent testified that he was born in the small town of



A                                    3                            April 30, 2020



A                                        4                              April 30, 2020



On cross-examination, the respondent was asked for additional details relating to

     The respondent was asked about one of the affidavits that he provided that is

especially detailed and that is found at Exhibit 3 beginning at page 11, where an

individual named Clement Mbuh, who describes himself as a family lawyer, has

supplied a lengthy declaration consisting of 36 numbered paragraphs and it includes

5                                          April 30, 2020



On cross-examination, the respondent was asked about how anyone had

On direct examination, the respondent made clear that

The respondent testified that t

6    April 30, 2020

E0248



On cross-examination, when asked for additional details about this





The respondent's testimony made clear that the passport is not a part of the

record in this case. It has not been submitted as an exhibit and the respondent testified

A                                    7                          April 30, 2020

E0249

that he lost it in the jungle in [redacted] but that he did have some type of I.D. card.

The respondent indicated that he was not able to remain in [redacted] with the

On cross-examination, additional details about the respondent's travel out of

[redacted] were asked for and the respondent, again, indicated that the commissioner

assisted him in leaving and got him through the airport and was with the respondent

while traveling through the checkpoints but that he did not know what they were saying.

Initially, he indicated it was because they were speaking in French and the

respondent appeared to try to withdraw that assertion when the Court asked for

additional details about his fluency or proficiency in French. And the respondent was

asked about his application at Exhibit 2, page 5, which at question 23, 24, and 25 asks

about his native language, whether he is fluent in English, and other languages he

speaks fluently. And he did put down in response to question 25 that he speaks both

Pidgin English and French fluently. In his testimony today, the respondent stated that

he only speaks a little French and that the information on his application is a mistake.

Additional details were asked about the respondent's travel through several other

countries before arriving in the United States. The respondent indicated that he did not

apply for any protection in Ecuador because of the language barrier and also because a

policeman stopped him and, apparently, took or examined his items. He also indicated

that he faced a language barrier in Mexico and was afraid of the cartels there.

On cross-examination, he stated in more detail that he left from [redacted] to

Turkey and did not apply for asylum there because he was simply in transit and there

A[redacted]                          8                          April 30, 2020

was no English spoken there. He then traveled to Ecuador and did not apply for asylum because of the language barrier and the police knew he was a newcomer and they embarrassed and searched him and may have taken some of his items. He also traveled through Panama and explained that he faced a language barrier there. He also traveled through Colombia and faced a language barrier there. He traveled through Costa Rica, Nicaragua, and Guatemala and faced language barriers there as well.

In Mexico, he indicated that the police were harassing people, collecting money, there was a language barrier, and he was afraid for his life there.

The respondent testified that November 20, 2019, was his first time to ask to enter the United States. He indicated that it took him more than five months to travel from ██████ to the southern border of the United States after his departure from ██████ on June 7, 2019. He provided some information about the periods of time he spent in the several countries he traveled through and it appears that he testified to spending one week in Ecuador, a month in Panama, two days in Colombia, one day in Costa Rica, one day in Nicaragua, two days in Guatemala, and three months and some days in Mexico, where he was traveling through Mexico.

The respondent indicated that in ██████ his business was doing well and he only left because ██████████████████████████████████████████████

██████████████████████████████ He indicated that when he was in Nuevo

Laredo, his father told him ████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████

He made it clear that he has no membership in any groups or organizations in

██████ He has never supported ████████████████████████████████████

████████████████████████ When asked about the information in an

██████████████████                                          9                                    April 30, 2020



affidavit from his business colleague, ████████ found at Exhibit 3, page 46,

specifically, at paragraph 9, which states, "that he usually s████████████████████

████████████ and the respondent indicated he did know why ████████ said

he████████████████████████████████████

The respondent indicated that he has never committed any crimes in████████

and he has no plans to commit any crimes in the United States.

## 4. CREDIBILITY AND CORROBORATION

As explained in the Board of Immigration Appeals decision in Matter of Y-I-M-, 27
I&N Dec. 724 (BIA 2019), under the Immigration and Nationality Act, an Immigration
Judge may base a credibility finding on, among other factors, the inherent plausibility of
the applicant or witness's account, the consistency between the applicant or witness's
written and oral statements, the internal consistency of each such statement, the
consistency of such statements with other evidence of record, and any inaccuracies or
falsehoods in such statements, thus consideration of inconsistencies, whether occurring
in testimony or between testimony and other evidence is a fundamental component of
an adverse credibility determination.

An inconsistency need not go to the heart of the claim and an Immigration Judge
may rely on any inconsistency or omission in making an adverse credibility
determination as long as the totality of the circumstances establishes an asylum
applicant is not credible.

The Court has carefully considered the respondent's detailed testimony on direct,
cross-examination, redirect, and upon questioning by the Court, and has also carefully
reviewed the respondent's documents and evidence in support of his application. The
Court will make an adverse credibility finding in this case and will find the respondent

████████                           10                           April 30, 2020

not to be credible and this is based upon numerous instances in the record where the

respondent's testimony was inconsistent with his documentary evidence, in some

places, extremely vague on very important points in his case.

Specifically, one of the major issues in the respondent's case relates to the

conditions in ▮



This is discussed in the respondent's exhibits as well as the Country Condition

Report that the Court has taken notice of and, for example, when the background of this

issue is discussed at Exhibit 3, page 28, in the section headed with the words

▮ as well as Exhibit 3, page 15, which also talks about ▮



The Court recognizes explains this part of the respondent's case in this level of

detail because this is the backdrop against which the respondent has stated in



This inconsistency about the respondent's language fluency is not accepted as a

A▮                                             11                         April 30, 2020

E0253

mistake and not excused by virtue of the respondent asserting that this is a mistake
because of the significance of his languages in this particular case as well as by the fact
that at the outset of the hearing, the respondent was allowed to amend his application
before confirming its accuracy under oath and under penalty of perjury today. The
Respondent

~~And he~~ did make four distinct changes, which were very detailed, including
corrections to the spelling of his mother's name and the place of his father's birth as well
as his own employment history and a very specific correction on page 17 of Exhibit 2
from February 2 to February 7 with respect to his date of birth.

~~And~~ It is clear from these very specific and detailed changes that the respondent
has very carefully prepared this application and ensured the accuracy of it and the Court
does not accept that the inclusion of French as a language he speaks fluently is simply
a mistake that can be so easily withdrawn when it appears to be significant to his case
and to affect his credibility.

The Court has additionally considered the totality of the circumstances in this
case and sees additional numerous inconsistencies regarding the events that he claims
occurred to him, which are not overcome or explained either by his own explanations or
by the other evidence and affidavits in the record.



12                                          April 30, 2020



Additional inconsistencies arise when reviewing the respondent's testimony and



———The Court finds that it is not plausible that the respondent, after providing such

detailed information about the dates in his case, would not have any recollection of the

A                                    13                         April 30, 2020

E0255

The respondent's credibility is further undermined by his testimony about theis



In testimony, the respondent was asked for additional detail about this individual

The Court finds it implausible that the respondent would not be able to provide

That is simply implausible that not only would the respondent be unable to give a

A                                    14                          April 30, 2020

The respondent's testimony and credibility are further undermined by the fact that the respondent's father has provided an affidavit in his case, which, again, is located at Exhibit 3, tab J, beginning at page 7. And it provides no reference whatsoever to this

Finally, the Court finds as a basis for lack of credibility, the fact that the respondent, after insisting several times that he

And for all of these reasons, the Court does finds that the respondent has not provided credible testimony. and that hHis testimony is not only lacking in credibility when comparing it to his own application and declaration, but it is also not credible and because it is inconsistent with the additional evidence that he has provided in the nature of declarations in his case.

## 5. STATEMENT OF THE LAW

The Court will be referencing an addendum of law which states the standards of law and burdens of proof relevant to the issues in this case and that addendum of law will be placed in the record of proceedings as an attachment to the summary decision and will be served on both parties and it is incorporated by reference into this decision.

As detailed above, the Court has found that the respondent, as a matter of fact,

E0257

is not a credible witness and this finding relates to both of the applicant's claims of past persecution and fear of future harm. And hHis testimony was not sufficient to establish eligibility for relief and he has not otherwise met his burden to prove eligibility for asylum or withholding of removal. Additionally, because the same factual predicate underlies the respondent's claim for all three forms of relief he seeks, namely asylum, withholding of removal, and protection under the Convention against Torture, this adverse credibility determination forecloses all three forms of relief in his case.

The respondent also faces a bar to asylum even if he were to be found credible, which is currently found at 8 CFR Section 1208.13(c)(4) and relates to transiting through third countries. The evidence, in this case, shows that the respondent arrived at the southern border after the effective date of this regulation, which is July 16, 2019, after traveling through several countries outside his country of citizenship, nationality, or last lawful habitual residence on his way to the United States. And hHe did not apply for protection from persecution or torture in any of those countries. And hHe has not shown that all these countries were not parties to the U.N. Conventions and Protocols described in the regulation.

Additionally, the respondent has not satisfied the definition of a victim of a severe form of trafficking in order to qualify for that exception. The respondent made clear in testimony that when he arrived at the border between Mexico and the United States on November 20, 2019, that was the first time he asked to come into the United States.

The respondent has asked the Court to take into consideration the language barrier that he faced in several of the countries he traveled through, or more specifically, in all of the countries that he traveled through and the Court simply does not find that these are exceptions which would excuse him from not applying and not seeking to apply for asylum in any of these countries.

A                                              16                                    April 30, 2020

E0258

And tThe respondent also indicated additional fear in Mexico and Ecuador but again, the Court does not find that these would be exceptions to the third-country transit rule that would allow him to apply for asylum and not be barred by this regulation. And, Ttherefore, the Court does find that the respondent is subject to this bar and cannot qualify for asylum.

In the alternative, even if the respondent were to be found credible and not subject to the bar to asylum, the Court would not find that he qualifies for asylum or withholding of removal. The respondent has indicated that his asylum and withholding applications are based upon i

Based upon the respondent's testimony, the Court does not find that the respondent has held any political opinions and also does not find that any of the mistreatment he claims to have suffered was on account of any political opinion or imputed political opinion. Rather, the respondent's testimony is that

The Court notes that the respondent's family, including his parents and his



17                                                    April 30, 2020

E0259

siblings, remain in █████████ and all are presumably identifiable ████████████ as the

respondent claims to be, and there has been no indication that they have experienced

any harm on that basis alone, which emphasizes that ████████████████████

████████████████████████████████████████████████████████

~~And a~~Additionally, with respect to any of the mistreatment that the respondent

claims to have suffered at the hands o████████████████████████████

████████████████████████████████████████████████████████

Furthermore, even accepting the respondent's testimony as credible relating to

the mistreatment that he experienced at the hands ████████████, the Court does not

conclude that the respondent's testimony would be sufficient to establish past

persecution because it does not rise to the level of extremity set forth in the standards in

Fifth Circuit case law.

████████████████████████████████████████████████████████

## 6. FINDINGS OF FACT AND CONCLUSIONS OF LAW

As stated above, the Court has found, as a matter of fact, that the respondent is

18                                April 30, 2020

not credible. Additionally, the Court has found that the respondent is barred from asylum based on the third-country transit rule. Additionally, based upon the remaining evidence of record, the Court finds that the respondent has not met his burden of proof to establish eligibility for asylum, withholding of removal, or protection under the Convention against Torture.

## ORDERS

Based upon the above, the following orders will be entered:

IT IS HEREBY ORDERED that the respondent's Application for Asylum be denied.

IT IS FURTHER ORDERED that respondent's Application for Withholding of Removal under the Immigration and Nationality Act be denied.

IT IS FURTHER ORDERED that the respondent's Application for protection under the Convention against Torture be denied.

IT IS FURTHER ORDERED that the respondent be removed to

*Please see the next page for electronic*

*signature*

MCGUIRK, ERICA J.
Immigration Judge

19                                                    April 30, 2020

E0261

//s//

Immigration Judge MCGUIRK, ERICA J.

i:0e.t|eoir federation services|erica.mcguirk@usdoj.gov on June
18, 2020 at 1:57 PM GMT

A                                    20                    April 30, 2020



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

Tah, Jiggi U.
Jiggi Tah
3905 Chestnut street
Wilmington, DE 19808

**DHS/ICE Office of Chief Counsel - JNC**
**1010 E. Whatley Road**
**Oakdale, LA 71463-1128**

Name: █████████████

**Date of this notice: 10/30/2020**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

Donna Carr

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Morris, Daniel

Userteam: Docket

E0263



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

5107 Leesburg Pike, Suite 2000
Falls Church, Virginia 22041

**DHS/ICE Office of Chief Counsel - JNC**
**1010 E. Whatley Road**
**Oakdale, LA 71463-1128**

Name: ███████████████████        A █████████████

**Date of this notice: 10/30/2020**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. §1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Morris, Daniel

Userteam: ░░░░░░░

E0264

**U.S. Department of Justice**                                    Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

File:   A███████████ – Jonesboro, LA                    Date:        **OCT 3 0 2020**

In re:  ████████████████████████████

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT: Jiggi U. Tah, Esquire

APPLICATIONS: Asylum; withholding of removal; Convention Against Torture

The respondent, a native and citizen of ████████, appeals from the Immigration Judge's May 21, 2020, decision, denying his applications for asylum pursuant to section 208(b)(1)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1158(b)(1)(A), withholding of removal pursuant to section 241(b)(3)(A) of the Act, 8 U.S.C. § 1231(b)(3)(A), and protection under the Convention Against Torture pursuant to 8 C.F.R. §§ 1208.16(c), 1208.18. The appeal will be dismissed.

We review findings of fact by the Immigration Judge under a clearly erroneous standard. *See* 8 C.F.R. § 1003.1(d)(3)(i). Questions of law, discretion, and judgment and all other issues are reviewed de novo. *See* 8 C.F.R. § 1003.1(d)(3)(ii).

The respondent has not meaningfully contested the Immigration Judge's determinations with regard to his applications for relief, and we consider his challenges to those determinations to be waived.[1] *See Matter of R-A-M-*, 25 I&N Dec. 657, 658 n. 2 (BIA 2012) (when an alien fails to substantively appeal an issue addressed in an Immigration Judge decision, that issue is waived); *Matter of Edwards*, 20 I&N Dec. 191, 196-197 n.4 (BIA 1990) (noting that issues not addressed on appeal are deemed waived).

The respondent has submitted evidence on appeal. The Board generally does not consider new evidence submitted for the first time on appeal. *See* 8 C.F.R. § 1003.1(d)(3)(iv); *Matter of Fedorenko*, 19 I&N Dec. 57, 73-74 (BIA 1984) (providing that the Board does not consider evidence first offered on appeal, as the Board's review is a review of the record created before the Immigration Judge). Even if we construe the new evidence as a motion to remand, the respondent has not shown that the new evidence would likely change the outcome of the case. *See Matter of Coelho*, 20 I&N Dec. 464, 471-72 (BIA 1992) (providing that a motion to remand for the purpose of presenting additional evidence must conform to the same standards as a motion to reopen and will only be granted if the evidence was previously unavailable, material, and new evidence that would likely change the result of the case).

For the foregoing reasons, the following order is entered.

---

[1] No statements were provided on the Notice of Appeal that meaningfully apprise the Board of the specific reasons underlying the challenge to the Immigration Judge's decision. Furthermore, the brief which the respondent subsequently submitted, on August 12, 2020, relates entirely to another individual.

A

ORDER: The appeal is dismissed.

NOTICE: If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $813 for each day the respondent is in violation. *See* section 274D of the Immigration and Nationality Act, 8 U.S.C. § 1324d; 8 C.F.R. § 280.53(b)(14).

FOR THE BOARD

2

E0266

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
FALLS CHURCH, VIRGINIA[1]

File: A                                                    May 21, 2020

In the Matter of

                                          )
                                          )       IN REMOVAL PROCEEDINGS
                                          )
RESPONDENT                                )

CHARGES:        Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act
                (hereinafter INA or the Act), an applicant for admission who at the
                time of application for admission was not in possession of a valid
                unexpired immigrant visa, reentry permit, border crossing card or
                other valid entry document required by the Act, who is not in
                possession of a valid unexpired passport or other suitable
                document or identity nationality document if such document was
                required by the regulations issued by the Attorney General
                pursuant to Section 211 of the Act.

APPLICATIONS:   Asylum pursuant to INA Section 208(a)(1); withholding of removal
                pursuant to INA Section 241(b)(3); protection under the United
                Nations Convention Against Torture.

ON BEHALF OF RESPONDENT: JIGGI TAH, Esquire

ON BEHALF OF DHS: CHRISTINA Z. GIBSON, Assistant Chief Counsel

---

[1] This proceeding was conducted by televideo. See Section 240(b)(2)(A)(iii) of the Act. The respondent is detained
at Jackson Parrish Correctional Center in Jonesboro, Louisiana. The Immigration Judge is sitting in the Falls Church
Immigration Adjudication Center in Falls Church, Virginia. The administrative control court for this matter is the
Bloomington Immigration Court in Fort Snelling, Minnesota.

## ORAL DECISION OF THE IMMIGRATION JUDGE

The respondent is a 28-year-old single male, native and citizen of

A Notice to Appear (NTA) was served personally on the respondent on

December 24, 2019, and filed with the Immigration Court on December 31, 2019.

Exhibit 1. The NTA did not include the date and time of the respondent's initial hearing.

A Notice of Hearing dated February 11, 2020, informed the respondent of the date, time

and place of his first hearing. At a master calendar hearing on March 26, 2020, the

respondent appeared without counsel and admitted allegations 1 through 4 in the NTA

and the Court found him removable as charged. Accordingly, the charge was

sustained. See Section 240(c)(1)(A) of the Act. The Court subsequently directed

as the country for removal in the event the respondent's removal becomes

necessary.

The issue before the Court today concerns the respondent's applications

for relief from removal. The respondent has applied for asylum, withholding of removal

and protection under the United Nations Convention Against Torture.

### I. FINDINGS OF FACT AND EVIDENCE

The parties have submitted several documents into the record. These

have been marked as Exhibit 1 through 5 and includes group exhibits.

The respondent submitted his request for asylum and withholding of

removal (Form I-589) on April 8, 2020. See Exhibit 3. He supplemented the record with

his declaration, a letter from his fiancee, his former employer, as well as a medical

letter. In addition, he provided articles on discrimination and treatment of members of

the                                  , as well as an article regarding an assessment for the

See Exhibit 5.

The Department of Homeland Security introduced the credible fear

A                                        2                                May 21, 2020

E0268

determination, worksheet, and Asylum Officer's notes. Exhibit 2. The Court takes administrative notice of the 2019 U.S. Department of State <u>Country Report on Human Rights Practices</u> for ▆▆▆▆▆. The Court admitted all the documents into evidence except for a letter provided within Exhibit 5 that is lacking a translation into the English language.

In making my decision in this matter, I have considered all the documentary evidence as well as the respondent's testimony in its entirety regardless of whether specifically mentioned in the text of this decision. I have also accorded appropriate weight to such evidence as indicated below.

On May 14, 2020, the Court heard the testimony of the respondent. Although the Court considers the testimony provided in support of the respondent's applications in its entirety, the Court does not fully repeat herein as it is part of the record. Rather, the Court summarizes the claims below to the extent they are relevant to the Court's analysis.



During this demonstration, the security forces attacked by throwing tear gas to disperse the crowd and they also used clubs and rifles to hit the demonstrators.

A ▆▆▆▆▆                                3                                May 21, 2020







## II. STATEMENT OF LAW

An addendum stating the standards of law and burdens of proof relevant
to these issues is being served on the parties and a copy placed in the record of
proceedings. That addendum is hereby incorporated in this decision by reference.

### III. FINDINGS AND ANALYSIS

#### A. CREDIBILITY AND CORROBORATION

When testimony is offered in support of an application for relief, the Court
must determine whether such testimony is credible. INA Section 240(c)(4)(B). In
making a credibility determination, the Court considers the totality of the circumstances
and all relevant factors. See INA Section 40(c)(4)(C); Matter of J-Y-C-, 24 I&N Dec.
260, 262 (BIA 2007). The Court may base a credibility determination on the witness's

A                                                6                                    May 21, 2020

demeanor, candor, or responsiveness, and inherent plausibility of the account. INA Section 240(c)(4)(C). Other factors include the consistency between written and oral statements, without regard to whether an inconsistency goes to the heart of the respondent's claim. Id.; J-Y-C-, 24 I&N Dec. 236-66.

"Truthful testimony and disclosures are critical to the effective operation of the Immigration Court system." Matter of Gomez-Beltran, 26 I&N Dec. 765, 768 (BIA 2016). Specifically in deciding applications for asylum, "the process depends on the alien's fundamental obligation to tell the truth." Id. (citation omitted). The Court is not required to accept an alien's testimony as true in the face of inconsistencies and verbal and non-verbal cues deception. Wang v. Holder, 569 F.3d 236, 254 (5th Cir. 2009). While omission of facts in an application for relief or during testimony might not in itself support an adverse credibility determination, the omission of key events coupled with numerous inconsistencies provides a specific and cogent reason to support the Court's adverse credibility finding. Matter of A-S-, 21 I&N Dec. 1106 (BIA 1998).

An alien's testimony may be sufficient to meet the burden of proof if it is believable, consistent and sufficiently detailed to provide a plausible and coherent basis of his fear. However, an alien is eligible for asylum based on credible testimony only if corroborating evidence is not reasonably available. Rui Yang v. Holder, 664 F.3d 580, 586 (5th Cir. 2011).

After considering the totality of the circumstances and all relevant factors, the Court finds the respondent not credible. See INA Section 240(c)(4)(C). The Court has a number of concerns with certain aspects of the respondent's testimony that are inconsistent, insufficiently detailed, omitted and implausible. There are also significant concerns regarding the respondent's demeanor.

The Court acknowledges the respondent's counsel's claim in his closing

statement that respondent was traumatized and suffered physically and mentally from
past trauma. The Court also observes that near the close of the hearing, the
respondent mentioned that he was fasting because of the death of his mother. At no
time during the hearing did respondent's counsel or the respondent himself ask the
Court to stop the hearing or otherwise continue the proceeding. Moreover, there is no
medical evidence provided by respondent to ascertain the degree of any medical and
physical impairments that he may suffer from. The Court notes that observing the
respondent's demeanor, there is no showing that he was unable to recall events and
discuss items chronologically. The Court is satisfied after observing him testify that the
respondent was~~is~~ sufficiently able to recall specific dates and events with particularity
and orient them in the proper place and time.

Given the respondent's level of education, in which he claims that he was
a French language teacher, the Court notes he has a certain level of sophistication.
Thus, the Court finds it troubling, given the lack of details in his declaration and~~,~~ his
application for asylum, Form I-589 (Exhibits 4 and 5) and the omissions, inconsistencies
among his sworn testimony before the Asylum Officer, and his documents and
testimony before the Court. These concerns, when considered with all factors,
ultimately lead the Court to render an adverse credibility determination. Specific
inconsistencies, omissions and implausibilities~~y~~ are delineated below.

There are significant omissions among the respondent's declaration,
application, testimony, and credible fear statement.

8                                              May 21, 2020
                                                   E0274



Moreover, the Court notes that there are omissions in ~~that~~ the fiancee's ~~in~~

~~the~~ letter ~~that she~~ provided to the Court.

_____Further, another significant material omission is

See Exhibit 5, declaration at paragraph 35.

In addition, the letter from the respondent's fiancee also omits any

mention of the respondent's role as a leader of an organization or the MAV in her

statement.





With respect to the plausibility of the respondent's account, there are

concerns regarding his testimony





May 21, 2020
E0276

respondent, the Court does not find it plausible that he would not have been

███████████████████████████████████████████████████████████

Moreover, as described above, the corroborating evidence, at times,
directly contradicts the respondent's testimony. As previously mentioned, the letter from
St. Jude from Dr. Ngwa provides no details regarding the respondent's actual
employment,_-such as his dates of employment. Given the respondent's statement that
the name of the director of this facility is actually the name of the doctor who treated
him, even if he was confused, the Court finds that this letter is given minimal weight due
to the lack of significant details in it.

Furthermore, the letter from the fiancee is also lacking in reliability. As
testified to by his respondent, his fiancee is a French language speaker and does not
speak English. However, the affidavit provided to the Court is solely in the English
language. There is no original letter written in French and there is no explanation as to
who translated this letter on behalf of his fiancee. Moreover, as stated above, there are
significant omissions in her letter as to the harm against the respondent and later
incidentsdates. Furthermore, the Court observes there are no letters from any ofther
respondent's, colleagues in the MAV. Respondent explains that one of his colleagues
assisted him in obtaining a medical document. It is unclear whether this sis a colleague
from work or in the MAV_(-although he did describe as someone from the association).
Nonetheless, we do not have a letter from this person to confirm that he assisted the
respondent or that the respondent had a leadership role in this organization.
Respondent's explanation is that persons are afraid to testify and they refused to
provide such information. The Court does not find this explanation to be reasonable
given the totality of the circumstances and the availability of other documents from

███████████

A███████                                      11                            May 21, 2020
E0277

Again, the respondent has the burden of proof to provide reasonably available corroboration and the Court finds he had not provided sufficient explanation to failure to provide~~provide some documentation to~~ corroboratione that he was a leader of this ▮ nd that ~~these~~ individuals have assisted him in this matter.

Furthermore, although the respondent attempted to provide a letter from the friend with whom he had resided after the second detention, Mr. Fotso, there is no letter from him. Rather, the letter, an e-mail letter that was provided to the Court, contains no translation. ~~Further, t~~Thus it shows that such documentation is reasonably available but was not properly provided to the Court for consideration. Furthermore, there is no letter from ▮

▮ Thus, the Court finds in considering the totality of the circumstances and all relevant factors that the respondent cannot meet his burden of proof through credible testimony. The respondent also has not provided reasonably available corroboration that could otherwise assist the Court in ascertaining what actually transpired to the respondent in the past and what~~a~~ is likely to occur to him in the future.

In sum, the Court finds that the respondent's testimony contained numerous omissions and inconsistencies. His demeanor at times led the Court to believe that he was non-responsive. He ~~or~~ repeated himself ~~responses~~ until he could formulate an answer to a question that when there was no ready response. Furthermore, the Court was under the impression that the respondent embellished his testimony at times, such as stating the Samaritans took him to the hospital, he was sodomized, and there is a warrant for his arrest. Thus, for all these reasons, the Court finds the respondent cannot meet his burden of proof in establishing his eligibility for asylum and withholding of removal due to the lack of credibility and reliable

corroboration. Accordingly, the respondent's requests for asylum under section 2018(a) and withholding of removal under Section 241(b)(3) of the Act areis denied.

## B. ASYLUM

The record reflects that the respondent departed ▮▮▮▮▮ on July 26, 2019. There has been no evidence or argument made that he is entitled to an exception to the third-country transit rule under 8 C.F.R. Section 1208.13(c)(4). The record shows that the respondent arrived at the southern land border of the United States with Mexico after October 28, 2019. There is no showing that the respondent applied for protection in any of the numerous countries he traveled to on his journey to this country. There is also no showing that he otherwise qualifies for an exception to the transit bar. Accordingly, the Court finds that respondent is barred from asylum.

With respect to the respondent's request for withholding of removal under Section 241(b)(3) of the Act, the Court finds that due to his lack of credibility, he is unable to meet his burden of proof and persuasion establishing that it is more likely than not that he would be persecuted on account of a statutorily protected ground in Cameroon.

In the event a reviewing court were to disagree with the Court's finding that he is not credible and failed to provide reliable corroboration, the Court would find that he has met his burden of proof and persuasion that he suffered past persecution on account of his political opinion. In the alternative, the Court would find that he would be entitled to a presumption of future persecution that has not been rebutted, and would find himis eligible for withholding of removal under 241(b)(3) of the Act.

## C. PROTECTION UNDER THE CONVENTION AGAINST TORTURE

To be eligible for protection under the Convention Against Torture, an applicant bears the burden to demonstrate that it is more likely than not that he will be

A213-327-737                    13                    May 21, 2020
E0279

subjected to torture in the country of removal. See 8 C.F.R. Section 1208.16-8. In assessing whether an applicant has satisfied the burden of proof, the Court must consider all evidence relevant to the possibility of future torture, including 1) evidence of past torture; 2) evidence that the applicant could relocate to a part of the country of removal where he is not likely to be tortured; 3) evidence of gross, flagrant or mass violations of human rights within the country of removal; and 4) other relevant information regarding country conditions. 8 C.F.R. Section 1208.16(c)(3); see also Matter of G-A-, 23 I&N Dec. 366, 368 (BIA 2002). Moreover, an applicant must also demonstrate that each step in the hypothetical chain of events that would lead to his torture is more likely than not to occur. See Matter of J-F-F-, 23 I&N Dec. 912, 918, Note 4 (A.G. 2006).

        The applicant cannot rely on mere speculation by stringing together a series of suppositions. See Id. at 917-18.

        The Court finds the respondent has not established that it is "more likely than not" that he would be tortured if removed to            He did not meet his burden of proof to show that he experienced past persecution on the basis of a statutorily protected ground because his testimony and supporting evidence lacked credibility and reliability. Lack of details, evasive testimony and implausibities cast significant doubt on the veracity of the respondent's underlying claim of past torture and the likelihood of future torture. Thus, the evidence presented is insufficient to support a finding that the respondent would face a clear probability of future torture in

        The Court has considered the evidence of country conditions in evaluating the respondent's claim for CAT protection and acknowledges that there are significant human rights violations in            Here, the Court notes that the respondent claims harm because of his anti-government protest for supporting teachers. He is a

A                                        14                          May 21, 2020
                                                                        E0280

██████████████████████████████████████████████ However, the mere

existence of a pattern of human rights violations in a country does not constitute a

ground for finding that a particular person is more likely than not to be tortured upon

return to that country.  See Matter of M-B-A-, 23 I&N Dec. 474, 479 (BIA 2002).

        Because the Court finds the respondent did not testify credibly as to past

torture and as to his employment, the Court finds that, due to this adverse credibility

finding, the Court cannot adequately assess or find that he would suffer torture in the

future by the ████████ uthorities.  Thus, the Court finds his claim that he will be

tortured if returned to ████████ insufficient to reliably document and therefore, the

Court cannot grant him protection.  See generally J-F-F-, 23 I&N Dec. 917-18.  Thus,

the Court will deny his request for protection under the Convention Against Torture.

        Accordingly, the Court enters the following orders:

                                    ORDERS

        IT IS HEREBY ORDERED that the respondent's application for asylum

under INA Section 208 be denied.

        IT IS FURTHER ORDERED that the respondent's application for

withholding of removal pursuant to INA Section 241(b)(3) be denied.

        IT IS FURTHER ORDERED that the respondent's application for

protection under the Convention Against Torture be denied.

        IT IS FURTHER ORDERED the respondent be removed to ████████ on

the charge set forth on the Notice to Appear.

A████████                    15                    May 21, 2020
                                                   E0281


***Please see the next page for electronic***

***signature***

May 21, 2020                    LISA DE CARDONA
                              Immigration Judge

## NOTICE: FAILURE TO DEPART

        The Court has ordered your removal from the United States. If you willfully fail or refuse to apply for the required travel documents to depart the country, to present yourself for removal as instructed, to depart the United States as instructed, or you take any action or conspire to take any action to prevent or hamper your departure, you will be subject to a civil monetary penalty of not more than $799 per day you are in violation. INA Sections 240(c)(5), 274(d)(A); 8 C.F.R. Section 1240.13.

A███████████                    16                    May 21, 2020

//s//

Immigration Judge DE CARDONA, LISA

i:0e.t|eoir federation services|lisa.decardona@usdoj.gov on June
29, 2020 at 8:11 PM GMT

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*



**DHS - ICE Office of Chief Counsel -
OAKDALE 2
1010 E. Whatley Rd.
OAKDALE, LA 71463**

**Name:**                              **A**

**Date of this notice: 7/2/2020**

Enclosed is a copy of the Board's decision in the above-referenced case. If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of this decision.

Sincerely,

Donna Carr

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Pepper, S. Kathleen

Userteam: Docket

E0284

**U.S. Department of Justice**                          Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

File:  A▮▮▮▮▮ – Oakdale, LA                    Date:

In re: ▮▮▮▮▮▮▮▮▮▮                                        JUL - 2 2020

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:  Pro se

APPLICATION:  Asylum; withholding of removal; Convention Against Torture

ORDER:

This appeal is summarily dismissed under the provisions of 8 C.F.R. §§ 1003.1(d)(2)(i)(A) and
(E). Statements were not provided on the Notice of Appeal that meaningfully apprise the Board
of the specific reasons underlying the challenge to the Immigration Judge' decision. *See Matter
of Lodge*, 19 I&N Dec. 500 (BIA 1987); *Matter of Valencia*, 19 I&N Dec. 354 (BIA 1986).
Moreover, the respondent checked the block on the Notice of Appeal indicating that a separate
written brief or statement would be filed in support of the appeal. However, the record indicates
that the respondent did not file such brief or statement, or reasonably explain the failure to do so.
Accordingly, the appeal is summarily dismissed under the provisions noted above.

NOTICE: If a respondent is subject to a final order of removal and willfully fails or refuses to
depart from the United States pursuant to the order, to make timely application in good faith for
travel or other documents necessary to depart the United States, or to present himself or herself at
the time and place required for removal by the Department of Homeland Security, or conspires to
or takes any action designed to prevent or hamper the respondent's departure pursuant to the order
of removal, the respondent shall be subject to a civil monetary penalty of up to $813 for each day
the respondent is in violation. *See* Section 274D of the Immigration and Nationality Act, 8 U.S.C.
§ 1324d; 8 C.F.R. § 280.53(b)(14).

FOR THE BOARD

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
OAKDALE, LOUISIANA

File: A                                                February 10, 2020

In the Matter of

)
)                IN REMOVAL PROCEEDINGS
)
RESPONDENT                    )

CHARGE:        Removable under INA Section 212(a)(7)(A)(i)(I).

APPLICATIONS:  Asylum, Withholding of Removal, and relief under the United
               Nations Convention against Torture.

ON BEHALF OF RESPONDENT: PRO SE

ON BEHALF OF DHS: MAHOGANY WATKINS

## ORAL DECISION OF THE IMMIGRATION JUDGE

The respondent is a native and citizen of ⬛          . He was charged with being

inadmissible under INA Section 212(a)(7)(A)(i)(I). The Court previously sustained the

charge of removability against the respondent and designated ⬛        as the country

of removal. The respondent filed for relief in the form of Asylum, Withholding of

Removal, and protection under the Convention against Torture with membership in a

particular social group and political opinion as the bases for his Applications for Asylum

and Withholding of Removal.

E0286

The respondent elected to proceed pro se. Also, at the beginning of today's hearing, the respondent elected to proceed in English, stating that his best language is English as opposed to pidgin English.

## EVIDENCE

The Court admitted Exhibits 1 through 5 and took the sworn testimony of the respondent. The Court considered all admitted evidence and testimony in its entirety regardless of whether specifically mentioned in this decision.

## CREDIBILITY

In all applications for relief, the Court must make a threshold determination of the alien's credibility. The REAL ID Act of 2005 amended the Immigration and Nationality Act to codify the standards for assessing credibility in asylum and withholding of removal applications and listed a number of factors for a Court to consider in assessing an applicant's credibility. Those factors include: the demeanor; candor and responsiveness of the applicant; the inherent plausibility of the applicant's account; the consistency between the applicant's oral and written statements; the internal consistency of the applicant's statements; the consistency of the applicant's statements with other evidence of record, including the reports of the Department of State on country conditions; any inaccuracies or falsehoods in such statements; and any other relevant factor.

It does not matter whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, and there is no presumption of credibility. In this case, the Court does not find the respondent credible due to a number of issues that it will list in a moment. Those issues are as follows. In reviewing the respondent's submissions, the

A                                          2                          February 10, 2020

first thing that the Court noticed was the respondent's declaration. And looking at the declaration, it appeared that key details in the respondent's declaration are in a different font than the rest of the declaration to the point that it appeared as if it were almost a form that had been filled in with key details and dates.

Upon asking the respondent to explain why it appeared a different font was used, the respondent explained that he wanted to highlight certain events and names for the Court. However, the Court finds that to be an insufficient explanation, as the different font does not, in fact, highlight. It is simply a different font, and the Court finds that that tends to undermine the respondent's credibility.



And the Court finds

that that tends to undermine the respondent's credibility.

The Court notes that despite cross-examination and questions from the Court, the respondent's testimony was generally vague and undetailed with the description of the events that actually occurred in            The Court finds that that vague and undetailed description tends to undermine the respondent's credibility. The Court finds it implausible as well that the respondent would flee from                        in

for

A2                                    3                            February 10, 2020

approximately two weeks,                                                          where

                                                                              The Court

finds that to be an implausibility that further undermines the respondent's credibility.

And for those reasons, and upon consideration of all the facts of record,

individually and cumulatively, the Court finds that the respondent was not a credible

witness.

## LAW

An addendum of law stating the standards of law and burdens of proof relevant

to the issues in this case will be served on the parties and a copy placed in the record of

proceedings. The addendum of law is hereby incorporated into this decision by

reference.

## FINDINGS OF FACT

The Court has determined the respondent to not be credible and cannot come to

specific findings of fact with respect to his testimony; however, in the Government

submission, Exhibit 4, the Government provided Country Conditions materials that

indicate that          arliament granted special status to English-speaking regions

in          That special status is founded upon those regions' linguistic particularity

and historic heritage. And as recently as November of last year,          had freed

separatist fighters. Asylum seekers who had fled to neighboring countries in Africa

were returning voluntarily to the          to their villages.

And there is evidence that, generally, the government of          is taking

positive steps to address the separatism and the hostilities that have occurred in the

country over the last few years with respect to the differences between French-speaking

and English-speaking components in the country.

4                                          February 10, 2020

E0289


## ANALYSIS

## ELIGIBILITY FOR ASYLUM

In the event a higher court disagrees with this Court's credibility determination, the Court provides a limited analysis of the underlying claims for relief. As a preliminary matter, the Government argues that the respondent is not eligible for asylum under 8 CFR Section 208.13. Section 208.13 provides for mandatory denial of asylum for any alien who enters, attempts to enter, or arrives in the United States across the southern land border on or after July 16th, 2019 after transiting through at least one country outside the alien's country of citizenship, nationality, or last, lawful habitual residence en route to the United States.

Such persons shall be found ineligible for asylum unless they make one of three criteria. The first being the alien demonstrated he applied for a protected from persecution or torture in at least one country outside of his country of citizenship, nationality, or last lawful habitual residence through which the alien transited en route to the United States and the alien received a final judgment denying the alien protection in such country.

Or, two, the alien demonstrates that he or she satisfies the definition of victims of a severe form of trafficking and persons. Or, three, the only countries through which the alien transited en route to the United States were, at the time of transit, not parties to the 1951 United Nations Convention relating to the status of refugees, the 1967 protocol relating to the status of refugees, or the United Nations Convention against Torture and other cruel, inhuman, or degrading treatment or punishment.

In this case, the respondent testified that he transited through a number of countries, beginning in Ecuador, making his transit through those countries on his way to the United States. The last country the respondent was in before entering the United



5

February 10, 2020

E0290

States was Mexico. There is no evidence before the Court that the respondent applied for protection from persecution in any of the countries through which he transited, including Mexico, or that he was denied, or received, any final judgment denying protection in any of those countries.

The respondent, in his Application for Asylum, indicates that he arrived in the United States on August 22nd, 2019 at Calexico West in California. The respondent has provided no evidence that he was a victim of severe form of trafficking persons, nor has he provided any evidence that any of the countries through which he transited was not a party to any of the treaties provided for in Section 208.13(c)(4)(3). Because the respondent arrived after July 16, 2019, after transiting through at least Mexico, and because the respondent has not shown that he meets any of the three exceptions, under Section 208.13(c)(4), the Court concurs with the Government and finds the respondent procedurally barred from asylum under 8 CFR Section 208.13.

That said, in the event a higher court were at some point to invalid that particular regulatory provision, the Court continues to provide a limited analysis of the respondent's asylum claim. Because of the adverse credibility determination, the Court does not find past persecution and finds that the respondent has not met his burden of showing past persecution.

## WELL-FOUNDED FEAR OF FUTURE PERSECUTION

For the same reasons as in the past persecution analysis, again, the Court finds that the respondent has not met his burden of showing a well-founded fear of future persecution. Again, the Court notes that Country Conditions evidence provided to the Court by the Government does show positive movement by the government in both establishing increased independence before the English-speaking regions that asylum seekers who had fled ▇ to neighboring African countries

6                                                        February 10, 2020

are returning, and that there has been a general abatement in violence in Cameroon as
late as November and December of 2019.



## WITHHOLDING OF REMOVAL

Having failed to demonstrate the lower burden of proof required for asylum relief,

the respondent has also necessarily failed to meet the higher burden required for

A203-679-975                              7                              February 10, 2020

withholding of removal pursuant to the INA, and the Court accordingly denies the
respondent's Application for Withholding of Removal.

## PROTECTION UNDER THE CONVENTION AGAINST TORTURE

Because the Court has found the respondent not credible with respect to his
statements that go to the heart of his claim for torture for protection under the
Convention against Torture, the Court cannot perform a factual analysis of the evidence
as it pertains to his claim. However, again, the Court notes that the Country Conditions
evidence does indicate that the                    overnment has taken positive,
affirmative steps to establish the independence or special status for the English-
speaking regions and that hostilities have largely abated, that asylum seekers from
               who had fled to neighboring               countries are returning to live, and
that fighters are putting down their arms as a result of these positive changes.

Because of the adverse credibility determination, as well as the Country
Conditions evidence provided to the Court by the Government, the Court finds that the
respondent has not carried his burden of proof in demonstrating that it is more likely
than not that he will be tortured if returned to            The Court, therefore, denies
the respondent's request for protection under the Convention against Torture.

## ORDER

The Court denies the respondent's Application for Asylum, Withholding of
Removal, and protection under the Convention against Torture, and orders the
respondent removed to

***Please see the next page for electronic***

***signature***



8

February 10, 2020

MARTZ, NICHOLAS A.
Immigration Judge

9

February 10, 2020

E0294

//s//

Immigration Judge MARTZ, NICHOLAS A.

i:0e.t|eoir federation services|nicholas.a.martz@usdoj.gov on
April 23, 2020 at 4:48 PM GMT



10                                    February 10, 2020