MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, DC 20006
Telephone:  +1.202.263.3000
Facsimile:  +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, DC 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, | Case No.: 17-cv-02366-BAS-KSC |
| Plaintiffs, | **PLAINTIFFS' REPLY IN SUPPORT OF THEIR EXPEDITED MOTION FOR DISCOVERY CONCERNING COMPLIANCE WITH PRELIMINARY INJUNCTION** |
| v. | |
| Alejandro Mayorkas,[1] *et al.*, | |
| Defendants. | Hearing Date: March 22, 2021 |
| | **NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

---

[1] Secretary Mayorkas is automatically substituted pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, DC 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

PLS' REPLY RE MOT. FOR DISCOVERY RE COMPLIANCE WITH PRELIMIARY INJUNCTION

The parties and the Court are well aware of the current disputes regarding the Government's compliance with this Court's November 2019 preliminary injunction (Dkt. 330) and October 2020 clarification order (Dkt. 605) (collectively, the "Orders"). So Plaintiffs will be brief.

Plaintiffs share this Court's frustration that the implementation of the Orders has necessitated such extensive motion practice. *See* Dkt. 691. This could all be solved if the Government would provide straightforward answers to simple questions concerning their compliance with the Orders and voluntarily produce documents concerning their plan for implementing the Orders. But that has not happened.

Instead, the Government has forced Plaintiffs to burden this Court with motion practice. The facts that have led to this motion practice are set forth in multiple declarations. In summary, the key facts are these. First, Plaintiffs attempted to learn more about the Government's plans for complying with the Orders through informal discussions. During those conversations, the Government failed to answer Plaintiffs' questions, stating that it "doesn't know" the answer or "will get back to you on that."[2] Second, Plaintiffs simultaneously learned through other sources that members of the class that this Court certified in November 2019 are falling through the many cracks in the government's compliance efforts and are being denied the ability to assert their class membership and their rights under the Orders. Third, Plaintiffs repeatedly file or come close to filing motions for temporary restraining

---

[2] The Government's opposition misleadingly refers to these thoroughly unhelpful discussions as "numerous conferences with Plaintiffs' counsel to report and discuss . . . efforts" to comply with the Orders. Opp'n at 6. Just by way of example, during the parties' most recent discussion regarding compliance, the Government could not answer whether it had taken any steps to ensure that class members entitled to notice under paragraph 3 of the Clarification Order (Dkt. 605 at 25) were not removed from the United States prior to receiving such notice; indeed, the Government's response was to ask Plaintiffs if they thought it was necessary to provide such notice before removing a class member. *See* Ex. 1.

PLS' REPLY RE MOT. FOR DISCOVERY RE COMPLIANCE WITH PRELIMIARY INJUNCTION

orders when they learn that class members are about to be removed from the United States in violation of the Orders.[3]

The only way that Plaintiffs can get substantive answers to key questions is by filing motions to enforce the Orders, motions for temporary restraining orders, and motions for discovery regarding the Government's compliance with the Orders. For example, it was only in response to the present motion that the Government disclosed any internal U.S. Customs and Immigration Enforcement ("ICE") and U.S. Citizenship and Immigration Services ("USCIS") communications concerning compliance with the Orders. In fact, the Government had never provided Plaintiffs with the vast majority of the documents attached to its opposition to this motion prior to filing them on the docket last week. In other words, some limited discovery regarding the Government's compliance with the Orders is already going on. It is just happening in the least efficient way possible: on this Court's docket and in the form of multiple motions that are awaiting adjudication.

In its opposition, the Government makes three arguments against discovery. First, the Government argues that it is not to blame for Plaintiffs' lack of information concerning the Government's compliance efforts. And, at any rate, Plaintiffs should attempt to discover this information through "informal" means before seeking formal discovery. Second, it claims that discovery is unwarranted because there are no "substantial" questions regarding the Government's compliance with the Orders. Third, the Government claims that any discovery into its compliance with the Orders would be disproportionate and burdensome. None of those arguments hold water.

***First***, in its opposition papers, the Government casts about to blame anyone

---

[3] The Government also incorrectly asserts that Plaintiffs' only non-compliance concern is whether individuals ultimately denied asylum on grounds other than the transit rule should have their cases reopened or reconsidered under the Orders. *See* Opp'n at 1. That is not the case. As the Government later concedes in its opposition, this is only "one of the parties' disputes." *Id.* at 11.

PLS' REPLY RE MOT. FOR DISCOVERY RE COMPLIANCE WITH PRELIMARY INJUNCTION

2

other than itself for the seemingly endless cycle of motion practice concerning the Government's compliance with the Orders. It asserts that this Court is to blame for issuing "less-than-clear" orders. Opp'n at 22. It also claims that Plaintiffs are to blame because they supposedly are not pursuing informal means of obtaining information regarding the Government's compliance with the Orders. *Id.* at 18-20. That is not the case. The Orders were clear; the Government just did not like what they said. And if the Government had questions about the scope of the Orders, it could have filed its own motion for clarification, something it admits that it did not do. *See* Opp'n at 22 n.9. Moreover, Plaintiffs have catalogued their extensive attempts to discover information about the Government's compliance with the Orders and the Government's failure to provide meaningful answers in multiple motions and attorney declarations. *See, e.g.*, Ex. 1 at ¶ 3.[4] It is precisely because receiving key information from the Government appears to be dependent on motion practice from Plaintiffs that the limited discovery Plaintiffs request is warranted. At a minimum, the type of implementation planning and information sharing requested in Plaintiffs' Motion to Enforce is imperative.[5]

***Second***, the Government offers a prolix description of its compliance efforts and then states that there are no "significant questions" concerning those efforts. *See* Opp'n at 4-10, 15-17, 20-24. But in fact, the Government's opposition reveals outstanding disagreements over certain aspects of PI implementation that the Government has moved forward with implementing, despite the Court's admonition

---

[4] "Ex." refers to the exhibits to the contemporaneously-filed declaration of Stephen M. Medlock.

[5] The Government repeatedly points out that Plaintiffs have identified some areas of substantive disagreement between the parties (after many hours of conferrals), but this does not alleviate Plaintiffs' well-founded concerns regarding other aspects of the Government's compliance. Nearly sixteen months after the PI was entered, the Government's compliance plan is still in inchoate form—Plaintiffs would be remiss *not* to seek greater access to information at this stage.

1  that the Government should not be taking actions that will complicate compliance
2  with its Orders. *See* Dkt. 690. For example, the Government has issued guidance
3  instructing asylum officers ████████████████████████████████████████
4  ████████████████████████████████████████████████████████████████████
5  ██████████████████████████████████████. *See* Mura Decl. at Ex.
6  2 n.2 ("████████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████████████████████
8  ████████████████████████████████████████████████████████████████████
9  ████████████████████████████████████████████████████████████████████
10 ██████████████████████████████████████████████████████.").

11     The Government's own evidence vividly illustrates why discovery is
12 necessary. For example, ██████████████████████████████████████
13 ████████████████████████████████████████████████████████████████████
14 ████████████████████████████████████████████████████████████████████
15 ██████████████████████████████████████. *See* Guadian Decl. at ¶ 5 &
16 Ex. 1. ████████████████████████████████████████████████████████
17 ██████████████████ ICE was likely removing at least some PI class members
18 who had never been screened for PI class membership or relief or who were screened
19 under the prior, deficient screening regime. *See* Dkt. 607. Plaintiffs should be
20 allowed to take discovery about the steps that ICE took to comply with the Orders
21 between November 19, 2019 (when the preliminary injunction was issued) and
22 ████████████████████████████████████████████████████████████████.

23     Next, rather than identifying class members and ensuring that they were able
24 to exercise their rights under the Orders, ██████████████████████████
25 ██████████████████████████████████████████████████████. *See*
26 Guadian Decl. at Ex. 2. On November 13, 2020, I██████████████████████
27 ████████████████████████████████████████████████████████████████████
28

PLS' REPLY RE MOT. FOR DISCOVERY RE
COMPLIANCE WITH PRELIMIARY INJUNCTION

4

1   ███████████████. *Id.* But those initial criteria were faulty. ██████
2   ████████████████████████████████████████████████████████████
3   ████████████████████████████████████████████████████████████
4   ██████████████████████████████████████. *Id.* ████████████████
5   ████████████████████████████████████████████████████████████
6   ███████████████████, despite the fact that the Orders required the Government
7   to both stop "applying the Asylum Ban" to class members and "return to the pre-
8   Asylum Ban practices for processing the asylum claims of members of the certified
9   class." Dkt. 330 at 36. Despite knowing that Plaintiffs disputed the validity of these
10  criteria, and that their propriety was pending before the Court in the pending Motion
11  to Enforce, ████████████████████████████████████████████████
12  Guadian Decl. at Ex. 5, nearly two weeks after the Court cautioned that the
13  Government should not be taking actions that will complicate compliance with its
14  orders (Dkt. 690) and only after Plaintiffs filed the instant motion. Plaintiffs are
15  entitled to seek discovery regarding what happened to asylum seekers who were
16  subject to those now-suspended exclusions.

17        The information provided by USCIS in support of the Government's
18  opposition brief raises similar concerns. For example, █████████████
19  █████████.[6] ████████████████████████████████████████████
20  ████████████████████████. Mura Decl. at Ex. 3. ████████████████
21  ████████████████████████████████████████████████████████████
22  ████████████████ *Id.* ██████████████████████████████████████
23  ████████████████████████████████████. As a result, these poorly drafted

---

[6] Plaintiffs requested copies of these screening questions "informally" months ago, but the Government refused to provide them. Ex. 1 at ¶ 12. Moreover, the parties' recent discussions concerning the Executive Office of Immigration Review's compliance efforts have raised several concerns about EOIR's compliance with the Orders. *See id.* at ¶¶ 16-23.

screening questions may have resulted in many asylum seekers being excluded from the class based on answering "no" to question 4. Plaintiffs are entitled to discovery to determine whether question 4 was ever rewritten and the number of asylum seekers who were falsely excluded from the class based on this poorly-drafted series of questions.[7]

This is precisely the problem with the present cycle of motion practice. The Government refuses to provide meaningful information to Plaintiffs during meet-and-confers. Ex. 1 at ¶¶ 3, 5. And when it does so in response to motion practice, that information shows that the Government's compliance efforts are insufficient and riddled with errors. The consequence is that the Government's ongoing removals, which continue quietly in the background, include potential class members who were not properly screened, and Plaintiffs lack sufficient information to meaningfully intervene to protect class members' rights, which should not even be their responsibility in the first place.

***Third***, the Government cites zero case law and remarkably asserts that Plaintiffs' discovery requests, which the Government has not seen, are a "fishing expedition" that is "overly broad" and "patent[ly]" disproportionate. Opp'n at 24-25. They also argue that this Court should presumptively limit their production of documents to those documents that the Government "directly collect[s]" from unspecified sources. *Id.* at 25 n.10. But Plaintiffs have not served any discovery on the Government, nor have the parties had the opportunity to meet and confer about that discovery. The Government is simply guessing at how many discovery requests

---

[7] In its opposition papers, the Government insinuates that this dispute is limited to 17 potential class members who were nearly removed from the United States on February 2, 2021. *See* Opp'n at 15-17. That is not the case. While their potential removal is illustrative of the Government's unwillingness to "voluntarily" share information with Plaintiffs and spotty compliance with the Orders, the evidence attached to Government's opposition shows that the compliance problems are systemic and not isolated to those 17 individuals.

Plaintiffs will propound and the content of those requests. Moreover, if the parties have disputes regarding those discovery requests or how documents are to be collected, then they can raise those disputes with Magistrate Judge Crawford who has provided the parties with significant assistance in resolving other discovery disputes. The Government makes no availing argument for departing from the normal sequencing and rules of discovery and discovery motion practice, which have worked just fine in this case. The Court should not entertain an argument that is nothing more than a preemptive motion for a protective order based on guesswork.

## **CONCLUSION**

As explained in the pending motion to enforce (Dkt. 644) and Plaintiffs' opening brief, Plaintiffs firmly believe that there is a better way forward than the current cycle of protracted motion practice concerning the Government's compliance with the Orders. This Court can and should order the parties to engage in limited discovery concerning the Government's compliance with the Orders, require the Government to share its plan for complying with the Orders with Plaintiffs, and hold status conferences as necessary to discuss the Government's compliance with the Orders. If the Government is doing everything possible to comply with the Orders, then it has nothing to hide; Plaintiffs' concerns can be quickly assuaged through discovery. If the Government has fallen short of doing what the Orders require, then discovery and this Court's supervision will provide a speedy corrective. Either way, this issue can be quickly resolved to the benefit of the class members affected by the Orders. The Government's lengthy protestations to the contrary do nothing to diminish this commonsense point that animates both this motion and the pending motion to enforce. Plaintiffs' motion should be granted in full.

PLS' REPLY RE MOT. FOR DISCOVERY RE COMPLIANCE WITH PRELIMARY INJUNCTION

7

Dated: March 15, 2021

MAYER BROWN LLP
   Matthew H. Marmolejo
   Ori Lev
   Stephen M. Medlock

SOUTHERN POVERTY LAW CENTER
   Melissa Crow
   Sarah Rich
   Rebecca Cassler

CENTER FOR CONSTITUTIONAL RIGHTS
   Baher Azmy
   Angelo Guisado

AMERICAN IMMIGRATION COUNCIL
   Karolina Walters

By: */s/ Stephen M. Medlock*
   Stephen M. Medlock

*Attorneys for Plaintiffs*

PLS' REPLY RE MOT. FOR DISCOVERY RE COMPLIANCE WITH PRELIMIARY INJUNCTION

8

**CERTIFICATE OF SERVICE**

I certify that I caused a copy of the foregoing document to be served on all counsel via the Court's CM/ECF system.

Dated: March 15, 2021                MAYER BROWN LLP

By */s/ Stephen M. Medlock*

PLS' REPLY RE MOT. FOR DISCOVERY RE COMPLIANCE WITH PRELIMIARY INJUNCTION