UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AL OTRO LADO, INC. et al.,<br><br>　　　　　　　　　Plaintiffs,<br>v.<br><br>ALEJANDRO MAYORKAS, Secretary, U.S. Department of Homeland Security, in his official capacity, et al.,<br><br>　　　　　　　　　Defendants. | Case No.: 3:17-cv-02366-BAS-KSC<br><br>**ORDER: (1) GRANTING IN PART AND DENYING IN PART MOTION FOR PROTECTIVE ORDER; and (2) GRANTING EX PARTE APPLICATION FOR LEAVE TO FILE A SUR-REPLY**<br><br>**[Doc. Nos. 647, 684]** |

Before the Court is defendants' December 15, 2020 Motion for Protective Order Concerning Asylum Information of Potential Preliminary-Injunction Class Members (the "Motion" or "Mot."). Doc. No. 647. Plaintiffs opposed the Motion on January 5, 2021 (the "Opposition" or "Opp.," Doc. No. 656) and defendants filed a Reply on January 12, 2021 (the "Reply," Doc. No. 662). Also before the Court is Plaintiffs' Ex Parte Application for Leave to File a Sur-Reply (the "Application," Doc. No. 684) and defendants' Response thereto (the "Response," Doc. No. 689). The Court held a conference with counsel for the parties on March 24, 2021, at which time the undersigned Magistrate Judge heard argument on the Motion and also caucused separately with plaintiffs and defendants in an effort to come to an agreement regarding the issues presented. The parties were unable to reach resolution that day, and the Court took the matter under submission.

1

Having carefully considered the moving papers and the arguments of counsel, and for the reasons stated below, defendants' Motion is **GRANTED IN PART AND DENIED IN PART**. The Court will enter a separate protective order to govern the production of asylum information as described herein. Plaintiffs' Application is **GRANTED**.

## I. BACKGROUND

The parties' dispute arises out of the District Court's October 30, 2020 Order Granting Plaintiffs' Motion for Clarification of the Preliminary Injunction (the "October 30 Order"). Doc. No. 605. In the October 30 Order, the District Court addressed the requirement under Federal Rule of Civil Procedure 23 that the Court ensure notice of the class action to potential class members, and plaintiff's argument that defendants should be required to identify potential class members because they had greater and more ready access to information about individuals potentially eligible for membership in the class. October 30 Order at 21-23. The District Court ordered defendants to "review their own records to aid in the identification of class members and … share the information in their custody regarding the identities of class members with Plaintiffs," and further to produce to plaintiffs the already-generated "lists of aliens in ICE's custody who received negative credible-fear determinations … pursuant to the Asylum Ban .…" *Id*. at 22-23; *see also id.* at 25. The District Court did not impose any limitations regarding the scope of use or manner by which the information could be used by plaintiffs. *See id.*

Defendants now seek a protective order to govern the sharing of potential class members' asylum information with plaintiffs. As defendants describe it, their Motion seeks to "set conditions governing Plaintiffs' further use and treatment of" the asylum information they have been ordered to produce, "so that Defendants and [the] E[xecutive] O[ffice of] I[mmigration] R[eview] can share information with Plaintiffs under the October 30 Order while also ensuring that potential class members' asylum information remains confidential." Reply at 4. Citing federal regulations that prohibit *government officials* from sharing the contents of an asylum applicant's file (*see* 8 CFR §§ 208.6, 1208.6) and the "sensitivity" of asylum information, defendants request an order that provides that once

the asylum information has been produced to plaintiffs' counsel, further disclosure of the information be limited to:

(1) The asylum applicant;

(2) Attorneys who have entered their appearance in the applicant's asylum proceedings;

(3) Any individual to whom disclosure has been authorized by the applicant in writing; and,

(4) Any individual to whom the parties agree the information should be disclosed, provided that individual signs a statement acknowledging their agreement with the terms of the protective order.

Memorandum in Support of the Motion ("Mem.," Doc. No. 647-1), at 5-6. Defendants' proposal would also require plaintiffs' counsel to maintain records of the asylum seekers' consent to information-sharing, the appearance forms for any attorney with whom asylum information was shared, and any third party's executed agreement to be bound by the protective order. *See* Doc. No. 647-3. Under the proposal, these records would be produced to defendants or EOIR upon request, or to the Court upon its order. *Id.*

Plaintiffs do not believe any protective order is necessary, but do not object to one being entered to facilitate the exchange of information.[1] Plaintiffs do object, however, to provisions (2) and (3) and to the record-keeping provisions of defendants' proposal. Mem. at 5-6.

The parties confirmed at the March 24, 2021 hearing that to date, defendants have not produced to plaintiffs any information in response to the October 30 Order. *See* Transcript of March 24, 2021 Hearing ("Hrg. Tr."), Doc. No. 702, at 5-7. However, defendants represented that they have been compiling "a master list of potential class

---

[1] The Court has already entered a protective order in this case to govern the sharing of confidential information (the "Confidentiality Protective Order"). *See* Doc. No. 276. However, as the parties acknowledge, the Confidentiality Protective Order is not tailored to the production of asylum-related information. *See infra* § II.D.

members," portions of which they could provide to plaintiffs "fairly quickly" and which they are in the process of supplementing with additional information regarding potential class members' contact information and detention status. *Id.* at 5.

### A. Defendants' Position

Defendants frame their request for a protective order under the good cause standard of Federal Rule of Civil Procedure 26(c). *See* Mem. at 7; *see also* Fed. R. Civ. P. 26(c)(1) (providing that "[t]he court may" set limits on discovery "for good cause"). As good cause for entry of the requested protective order, defendants assert the following:

*First*, asylum information is "sensitive" and warrants special limitations on disclosure to the public and third parties. Mem. at 7-8. Defendants point out that plaintiffs have sought and received pseudonymous treatment of the named class representatives to prevent harm from disclosure of their identities and asylum information. Reply at 2.

*Second*, the sharing of asylum information with "individuals who do not have the asylum applicant's interests in mind" could result in harm to the applicant or their family members. Mem. at 8. Defendants posit that plaintiffs and their counsel cannot assume that an asylum seeker's family members are trustworthy. Reply at 2, 4-5.

*Third*, defendants assert their proposal, which would govern the sharing of asylum information only, is less restrictive than the Confidentiality Protective Order. Mem. at 9.

*Fourth*, defendants note that their proposed protective order contains a mechanism by which asylum information can be disclosed even without the asylum seeker's consent, if all parties agree and the recipient of the information agrees to be bound by the protective order. *Id*. This mechanism could be used in the event plaintiffs or their counsel could not communicate directly with the asylum seeker. *Id*. at 9.

Defendants further assert that a less restrictive protective order, as proposed by plaintiffs, would not adequately safeguard the asylum seeker's information, and that plaintiffs have not "demonstrate[d] a need for such unprecedented and liberal disclosure terms." *Id*. at 9. Defendants also assert that the record-keeping requirements set forth in their proposal "ensure accountability." *Id.* at 10.

**B. Plaintiffs' Position**

Plaintiffs argue defendants have not established the need for an additional protective order to govern the production of asylum information. Opp. at 11. Preliminarily, plaintiffs note that Judge Bashant has already ordered defendants to disclose the asylum information to plaintiffs. Opp. at 9, 11. Plaintiffs also do not believe that the court-ordered disclosure of asylum information is governed by Rule 26 (discovery), but by Rule 23 (notice to the class). *Id*. at 12-13. Nevertheless, plaintiffs would be willing to enter a protective order regarding the sharing of asylum information, but object to several "unreasonable" provisions in defendants' proposal. *Id*. at 13.

*First*, plaintiffs object to the requirement that they obtain the asylum seeker's *written* consent to share information, stating it should be sufficient to obtain their oral consent. *Id*. at 10, 14.

*Second*, plaintiffs object to the requirement that any immigration attorney with whom asylum information is to be shared must have entered an appearance in the applicant's immigration proceedings. Plaintiffs argue that whether an attorney has completed the forms necessary to appear in agency proceedings is not dispositive on the issue of whether an attorney-client relationship exists. *Id*. at 16. Plaintiffs further state that defendants' insistence on execution of these forms to document the relationship is arbitrary and ignores the fact that non-government actors such as plaintiffs – to whom those administrative rules and forms are inapplicable – can and do represent asylum seekers' interests. *Id*. at 16-17.

*Third*, plaintiffs object to defendants' prohibition on sharing asylum information with the asylum applicant's family members. *Id*. at 17. In plaintiffs' and their counsel's experience, it is often not feasible to communicate directly with the asylum seeker, and communication with family members is the only way to get information to the potential class member. *Id*. at 18; *see also* Declaration of Rebecca M. Cassler ("Cassler Decl."), Doc. No. 656-1 at 3-6 (describing difficulties in communicating with class members). ///

*Fourth*, plaintiffs argue that an asylum seeker's family members and/or attorneys should be able to authorize further disclosure on their behalf, again citing the frequent difficulties in communicating directly with the asylum seeker. Opp. at 18-19.

*Finally*, plaintiffs object to the requirement that they maintain records of their own disclosure of asylum information, to be produced to defendants or EOIR on demand. Plaintiffs complain that this requirement imposes unnecessary administrative burdens on them and their counsel and invades their counsel's work product, without justification. *Id*. at 19-20.

## II. ANALYSIS

### A. Defendants Have No Authority to Restrict Plaintiffs' Use of Asylum Information

The Court begins by noting that the District Court ordered defendants to produce asylum information to plaintiffs without restrictions or conditions. Indeed, the District Court unambiguously ordered defendants to:

> … make all reasonable efforts to identify class members, including but not limited to reviewing their records for notations regarding class membership made pursuant to the guidance issued on November 25, 2019, and December 2, 2019, to CBP and OFO, respectively, and sharing information regarding class members' identities with Plaintiffs.

Order at 25.

Defendants acknowledge that they have been ordered to produce information to plaintiffs, and state that they and EOIR are prepared to do so, but cannot agree to "share such information without sufficient protections against disclosure to third parties or with the knowledge that plaintiffs will share it with others …." Hrg. Tr. at 12; *see also id*. at 18. In support of their argument that additional conditions should now be imposed on the court-ordered disclosure, defendants rely heavily on federal regulations limiting the disclosure of asylum information **by the government**. *See generally* 8 C.F.R. §§ 208.6 and 1208.6. Yet, as defendants admit, plaintiffs and their counsel are not subject to these regulations. *See* Reply at 5 (acknowledging that the regulations "do not apply to private

///

parties"). Plaintiffs assert that defendants are "conflating" their regulatory obligations with plaintiffs' obligation to the class. *See* Hrg. Tr. at 31.

Plaintiffs have the better argument. The Court is not persuaded by defendants' bare assertion that "there is no reason that private parties with whom the government is sharing asylum information should be exempt from regulatory requirements." *Id.* There is, in fact, ample reason. First and foremost, the District Court did not impose any such requirements when it ordered defendants to produce the asylum information to plaintiffs. Further, the plain text of the regulations does not constrain the treatment of asylum information by private actors. The Court agrees with plaintiffs that there is "no basis in law … [or] the [October 30] Order" for the restrictions defendants now seek to impose. Opp. at 9. The Court is therefore not persuaded that defendants have any authority to dictate how plaintiffs and their counsel make use of the asylum information once it is produced.

### B. Defendants' Proposed Protective Order Impedes Plaintiffs' Counsel's Representation of the Class and Invades Counsel's Work Product

Defendants' proposed protective order also needlessly impedes plaintiffs' counsel's ability to protect the interests of class members by encumbering their efforts to locate and freely communicate with class members. Defendants deny this is so, stating that their proposal does not prohibit plaintiffs' counsel from communicating directly with the class members, or from sharing information about class members that they have learned independently. Mem. at 11; Reply at 6; Hrg. Tr. at 21, 43. Yet, as defendants acknowledge, the asylum-seeker's identity and the fact that he or she sought asylum – the very act that may qualify the asylum seeker for membership in the class – would be considered confidential asylum information under defendants' proposal. *See* Mem. At 4 ("members of the class are by definition seeking asylum in the United States, and their identities and information relating to their claims ... are protected from … disclosure"). As such, it is difficult to envision how plaintiffs' counsel could approach the task of locating potential class members and informing them of their potential membership in the class without relying on information provided by defendants and therefore running afoul of the proposed

protective order. Nor is the Court willing to put plaintiffs' counsel in the position of having to parse whether they independently came to know some bit of information about the asylum seeker that may be necessary to share with third parties such as family members in the course of locating class members and advising them of their rights.

Furthermore, plaintiffs' counsel has described just some of the obstacles they face in communicating with class members and potential class members, and why reliance on sharing information with third parties is often necessary. *See* Cassler Decl. at 4-6; *see also* Declaration of Erika Pinheiro ("Pinheiro Decl."), Doc. No. 656-2, at 3-13. Among these are class members who may not speak or read English; lack of access to or accommodations for trained interpreters; detention facilities with inconsistent rules regarding in-person visitation, and that may not be equipped to accommodate confidential meetings even when in-person visitation is allowed; and class members who have already been deported or removed from the United States and are out of counsel's communicative reach due to lack of resources, infrastructure or access to technology in their country of residence. Plainly, no protective order can anticipate all such obstacles, which are proliferated by the fact that the information at issue pertains to potentially thousands of class members. *See* Hrg. Tr. at 41. Defendants do not offer any realistic proposals in this regard. *See id.* at 39-40 (suggestion by defense counsel that plaintiffs' counsel could organize a three-way call with the potential class member and the family members, or engage the nonparties in an abstract discussion about the litigation). The Court finds defendants' arbitrary insistence that plaintiffs' counsel adhere to certain rigid procedures in these myriad circumstances is misplaced, and has the practical effect of potentially foreclosing counsel's ability to communicate with class members at all.

Finally, the Court finds the record-keeping provisions of defendants' proposed protective order unnecessary and intrusive. At the hearing, defendants' counsel suggested that such documentation may be needed if there were ever a claim against the United States that the asylum seeker was harmed by the disclosure of his or her asylum information. Hrg. Tr. at 36-37. The Court concludes that the District Court's October 30, 2020 Order

requiring defendants and EOIR to provide that information to plaintiffs is sufficient documentation for this purpose. Moreover, it is not clear why the government's potential (and entirely speculative) liability for disclosing asylum information justifies imposing upon plaintiffs' counsel a requirement to obtain and maintain documentation related to potentially thousands of class members. Even more troubling is defendants' and EOIR's position that they are entitled to review such documentation upon nothing more than their mere demand. The documentation would, of course, reveal plaintiffs' counsel's efforts to locate and communicate with their clients, and any other person with whom they may have discussed the case. The Court finds that neither defendants nor EOIR is entitled to such an extraordinary intrusion into counsel's work product.

## C. **Plaintiffs' Counsel's Fiduciary Obligation to the Class and its Members Sufficiently Safeguards Class Members' Asylum Information**

Defendants insist on the ability to micromanage plaintiffs' counsel's use of asylum information under the guise of protecting asylum seekers' rights by ensuring their "knowing" consent to the disclosure of any asylum information. *See* Reply at 7; Hrg. Tr. at 31. Here again, however, defendants conflate their role and responsibilities with those of plaintiffs' counsel, who owe a fiduciary duty to the class – including putative class members. *See Stone v. Advance America,* No. 08cv1549 WQH (WMc), 2009 WL 4722924, at *4 (S.D. Cal. Dec. 4, 2009) ("It is well established that counsel for plaintiff has a fiduciary relationship with putative class members."); *see also Deane v. Fastenal Co.*, No. C 11–00042 SI, 2011 WL 5520972, at *5 (N.D. Cal. Nov. 14, 2011) (granting motion to compel and noting that "plaintiffs, as fiduciaries to the class, are entitled to [class members'] contact information"). Defendants' unwillingness to leave to plaintiffs' counsel's professional judgment how best to locate, identify, and communicate with members and potential members of the class is both troubling and inexplicable. The Court is confident that plaintiffs' counsel can be trusted to make in-the-moment decisions that are in the best interests of the class and its members, without the need for close supervision by defendants or the Court.

### D. The Court Will Enter a Limited Protective Order to Protect the Confidentiality of the Asylum Information

Notwithstanding the foregoing analysis, the Court agrees with defendants that much of the information contained in an asylum seeker's file is likely to be sensitive, and that some protection against unfettered disclosure of that information is warranted. *See* Mem. at 7-8; *accord A.B.T. v. U.S. Citizenship and Immigration Servs.*, No. 2:11–cv–02108 RAJ, 2012 WL 2995064, at *5 (W.D. Wash. July 20, 2012) (describing sensitivity of asylum information and noting that "there exists a strong public interest in restricting asylum seekers' identities from the public"). The Court also agrees with the parties that the Confidentiality Protective Order previously entered in this case is not "tailored to the circumstances of sharing asylum information from the government's records" and would too narrowly restrict plaintiffs' and their counsel's use of asylum information to locate and communicate with potential class members. *See* Mem. at 5; Hrg. Tr. at 8-10. Accordingly, the Court will enter a separate protective order to govern defendants' production of asylum information to plaintiffs.

### E. Plaintiffs' Request to File a Sur-Reply

As noted, plaintiffs requested leave to file a sur-reply, to further illuminate why defendants' proposed protective order would hinder them from communicating with class members and fulfilling their responsibilities as class counsel. *See generally* Doc. Nos. 684 (application) and 684-2 (proposed sur-reply). Although the Court did not rely on plaintiffs' sur-reply in resolving defendants' Motion, in the interest of creating a complete record, the Court hereby **GRANTS** plaintiffs' Application.

///
///
///
///
///
///

# ORDER

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Defendants' Motion for Confidentiality Protective Order Concerning Asylum Information of Potential Preliminary-Injunction Class Members [Doc. No. 647] is **GRANTED IN PART AND DENIED IN PART**.

2. The Court will enter a separate protective order to govern the production of asylum information.

3. Within 14 days of the date of this Order, defendants shall produce to plaintiffs the "master list of potential class members" as referenced during the March 24, 2021 hearing. Defendants shall supplement the master list with any additional information in their possession concerning potential class members, their contact information, and detention status no later than 45 days from the date of this Order. Defendants shall also have an ongoing obligation to supplement the list.

4. Plaintiffs' Ex Parte Application for Leave to File a Sur-Reply in Further Opposition to Defendants' Motion for Protective Order Concerning Asylum Information of Potential Preliminary-Injunction Class Members [Doc. No. 684] is **GRANTED**. The Clerk of the Court is Requested to docket Plaintiffs' Proposed Sur-Reply [Doc. No. 684-2].

**IT IS SO ORDERED.**

Dated: April 7, 2021

Hon. Karen S. Crawford
United States Magistrate Judge