MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  mmarmolejo@mayerbrown.com
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  *(pro hac vice)*
  olev@mayerbrown.com
  Stephen M. Medlock (VA Bar No. 78819)
  *(pro hac vice)*
  smedlock@mayerbrown.com
1999 K Street, N.W.
Washington, DC 20006
Telephone:  +1.202.263.3000
Facsimile:  +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
Melissa Crow (DC Bar No. 453487)
  *(pro hac vice)*
  melissa.crow@splcenter.org
1101 17th Street, N.W., Suite 705
Washington, DC 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, | Case No. 17-cv-02366-BAS-KSC |
| Plaintiffs, | **PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO FACILITATE NOTICE TO CLASS MEMBERS OF HUMANITARIAN EXCEPTION PROCESSES** |
| v. | |
| Alejandro Mayorkas,[1] *et al.*, | |
| Defendants. | |

---

[1] Secretary Mayorkas is automatically substituted pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
    Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
    *bazmy@ccrjustice.org*
    Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
    *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
    Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
    *sarah.rich@splcenter.org*
    Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
    *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
    Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
    *kwalters@immcouncil.org*
    Gianna Borroto (IL Bar No. 6305516) (*pro hac vice*)
    *gborroto@immcouncil.org*
1331 G St. NW, Suite 200
Washington, DC 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii
INTRODUCTION ........................................................................................................... 1
ARGUMENT ................................................................................................................... 2
I. This Court Has the Discretion to Facilitate Notice to the Class ..................... 2
II. Ordering the Production of the Waitlists to Facilitate Class Notice is a Proper Use of this Court's Discretion ............................................................. 4
    A. Defendants' Speculation About U.S.-Mexico Relations is Baseless. ................................................................................................. 4
    B. The Waitlists Would Facilitate Class Notice ......................................... 5
    C. The United States Government Has a Far Greater Ability to Obtain the Necessary Information ......................................................... 7
        (a) Defendants Do Not Seriously Contest Plaintiffs' Agency Argument .......................................................................................... 7
        (b) Plaintiffs' Repeated Efforts to Obtain All the Waitlists Have Been Unsuccessful .......................................................................... 8
CONCLUSION ............................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Al Otro Lado, Inc. v. Mayorkas*,
   2021 WL 1312531 (S.D. Cal. 2021) .................................................................. 4

*Al Otro Lado v. Wolf*,
   952 F.3d 999 (9th Cir. 2020) ......................................................................... 4, 6

*Barrera v. MTC, Inc.*,
   2011 WL 809315 (W.D. Tex. 2011) .................................................................. 3

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,
   2012 WL 4747441 (E.D.N.Y. 2012) .................................................................. 2

*Benedict v. Hewlett-Packard Co.*,
   2014 U.S. Dist. LEXIS 18594 (N.D. Cal. 2014) ................................................ 3

*Chastain v. Cam*,
   2014 U.S. Dist. LEXIS 102465 (D. Or. 2014) ................................................... 3

*Cobell v. Kempthorne*,
   455 F.3d 317 (D.C. Cir. 2006) ...................................................................... 3, 4

*Curtis v. Scholarship Storage Inc.*,
   2015 WL 1241365 (D. Me. 2015) ..................................................................... 3

*Hoffmann-La Roche Inc. v. Sperling*,
   493 U.S. 165 (1989) .......................................................................................... 2

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978) ...................................................................................... 5, 7

*Reichert v. Hoover Foods, Inc.*,
   2017 U.S. Dist. LEXIS 192252 (N.D. Ga. 2017) .............................................. 2

**Other Authorities**

Fed. R. Civ. P. 23(d) .............................................................................................. 3, 4, 7

Restatement (Third) of Agency § 1.01-1.02 (2006) ..................................................... 7

# INTRODUCTION

Defendants claim that this Court lacks the discretion to require them to produce a limited set of information that will assist Plaintiffs in providing notice to the class of a meaningful change in how they may be inspected and processed at Class A Ports of Entry on the U.S.-Mexico border ("POEs"). They are wrong. Indeed, this Court has already ordered Defendants to produce similar information regarding other class members. *See* Dkt. 605 at 21-23. Defendants' opposition brief—rife with misdirection and inconsistency—cannot overcome this central point. Defendants' argument is based, in large part, on their mistaken belief that Plaintiffs' counsel is seeking to provide notice to the class of a substantive development concerning exceptions to COVID-era restrictions on processing at POEs. But this case is not, and never has been, about those COVID-era restrictions. Plaintiffs' proposed relief is entirely procedural in nature, and relates directly to the interests of certified class members before this Court. All Plaintiffs ask for is the production of a limited set of information that will facilitate further notice to the class of an important development relevant to their long-standing wait to be inspected and processed at a POE.

Moreover, this Court has good grounds to exercise its discretion to permit the production of a limited number of key documents. Class members have been waiting months in dangerous conditions. None of the flimsy rationales that Defendants offer is a sufficient reason to keep those class members in the dark about important developments at the border regarding the very thing they have been waiting for—the opportunity to be inspected and processed at a POE.

*First*, Defendants' fear that there "might" or "could" be some breakdown in international relations from a mere request to share information between the United States and Mexico is wildly overblown. Relations between the United States and Mexico are not so tenuous that requesting a handful of documents will cause an international conflagration.

*Second*, the United States government, which interacts with many of the

organizations that keep the waitlists on a daily basis, is far better positioned to obtain those lists than Plaintiffs' counsel. In fact, Plaintiffs have been attempting to obtain these lists for months with limited success.

***Third***, Defendants' acknowledgment that direct contact information for 8,683 class members may be on these waitlists is a reason to produce the documents ***now***. The perfect should not be the enemy of the good. Plaintiffs do not contend that every member of the class is on the waitlists. But it is undisputed that a significant number of class members are on the lists. Therefore, the lists should be collected and produced immediately so that Plaintiffs' counsel can provide notice to the class members on the lists.

\* \* \*

For all of Defendants' rhetoric, this dispute is simple. This Court has the discretion to issue orders that will facilitate class notice and exercising that discretion would be proper here. Accordingly, Plaintiffs' motion should be granted.

## ARGUMENT

### I. This Court Has the Discretion to Facilitate Notice to the Class

Defendants argue that this Court lacks the discretion to order the production of the waitlists because Plaintiffs will not be providing notice to class members regarding a "step in the action" or a "procedural matter." Opp. at 11. That is not correct. District courts routinely order the production of information that will facilitate class notice. *See, e.g.*, *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 168-70 (1989) (affirming court order requiring Defendant to disclose names of other discharged employees in Age Discrimination in Employment Act cases because those names would facilitate class notice); *Reichert v. Hoover Foods, Inc.*, 2017 U.S. Dist. LEXIS 192252, at \*15 (N.D. Ga. 2017) (requiring defendant to produce last-known addresses, telephone numbers, email addresses, and other information regarding employees in Fair Labor Standards Act cases); *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 2012 WL 4747441, at

2

*2-3 (E.D.N.Y. 2012) (ordering production of sales data to facilitate class notice).[2] The only difference between those cases and this one is that Defendants made a conscious decision to outsource keeping the relevant records to third parties. As a result, Defendants' claim that producing this information is improper should be dismissed out of hand.

And even if this Court were to consider the phrasing of a potential class notice now, there is nothing wrong with informing the class about the existence of the humanitarian exception processes. Notably, *Cobell v. Kempthorne*, 455 F.3d 317 (D.C. Cir. 2006), which forms the lynchpin of Defendants' argument, is entirely different from this case. *Cobell* did not deal with the production of information to facilitate class notice at all. In *Cobell*, a district court utilized Fed. R. Civ. P. 23(d) to require that the U.S. Department of the Interior include a notice on every one of its communications sent to the beneficiaries of Individual Indian Money trust accounts that "*any* information" provided by the Department of Interior "*may be unreliable.*" *Id.* at 320-21. On appeal, the D.C. Circuit found that the order was more akin to an injunction than an order governing class notice, insofar as it changed the relationship and duties between the parties related to the merits of the dispute. *Id.* at 322-23. The *Cobell* court went on to find that nothing in Rule 23(d) authorized notice regarding the "underlying merits" of the action; the rule only contemplated notice

---

[2] *See also Curtis v. Scholarship Storage Inc.*, 2015 WL 1241365, at *5 (D. Me. 2015) (granting "Plaintiffs' request for the names, addresses, telephone numbers, and email addresses of all potential collective action members."); *Benedict v. Hewlett-Packard Co.*, 2014 U.S. Dist. LEXIS 18594, at *61 (N.D. Cal. 2014) ("Courts routinely approve the production of email addresses and telephone numbers with other contact information to ensure that notice is effectuated, and the Court finds that warranted here as well."); *Chastain v. Cam*, 2014 U.S. Dist. LEXIS 102465, at *38 (D. Or. 2014) (ordering defendants to "produce the names, last known addresses, telephone numbers, and email addresses" of potential class members); *Barrera v. MTC, Inc.*, 2011 WL 809315, at *2 (W.D. Tex. 2011) (ordering production of names, addresses, and last four digits of Social Security numbers for potential class members).

being provided regarding a procedural step in the action. *Id.* at 324.

While it is true that Rule 23(d) "does not authorize substantive orders protecting the very rights class members seek to vindicate," *Cobell*, 455 F.3d at 324-25, that is not what is at issue here. Plaintiffs are not asking for a notice "to vindicate their asserted . . . claims," or to use the notice process to alter the substantive duties of the government in relation to the merits of this case. Opp. at 13. In this case, Plaintiffs allege that the Government has adopted an illegal policy of turning away asylum seekers when they seek to be inspected and processed at POEs. *See* Dkt. 189 at ¶¶ 2-3. Plaintiffs are not seeking a notice that turnbacks are illegal or that would unwind the Government's turnback system. Rather, the notice would provide class members with information regarding the latest iteration of the Government's Turnback Policy, the humanitarian exception processes under which asylum seekers are forced to wait to be inspected and processed at a POE. The notice is entirely procedural in nature, and ancillary to the merits of the legal duties disputed in the case—it merely informs the class that having already put down their names and gotten in line, the Biden administration is now insisting that they get into a new line with a new name. Therefore, Defendants' argument that this Court would be providing substantive vindication of Plaintiffs' rights by ordering the production of a handful of waitlists is simply off base.

## II. Ordering the Production of the Waitlists to Facilitate Class Notice is a Proper Use of this Court's Discretion

### A. Defendants' Speculation About U.S.-Mexico Relations is Baseless.

This Court and the Ninth Circuit have repeatedly warned Defendants against offering baseless speculation in place of actual evidence. *See, e.g.*, *Al Otro Lado v. Wolf*, 952 F.3d 999, 1009 (9th Cir. 2020) (noting that "the government offer[ed] only speculation" in support of its arguments); *Al Otro Lado, Inc. v. Mayorkas*, 2021 WL 1312531, at *5 (S.D. Cal. 2021) (noting that Defendants' argument was "entirely speculative"); Dkt. 502 at 5 (rejecting Defendants' argument because it was "simply

4

too speculative"); Dkt. 641 at 2 (denying motion for stay based on speculative statements in witness declaration). But that is all the Government does (again) here. The Government merely recycles the January 5, 2021 declaration of Joseph Draganac. *See* Dkt. 723-2. In that declaration, Mr. Draganac speculates that the Mexican government might not control the waitlists at issue, might not provide all of the waitlists, or might be insulted by the request. *Id.* at ¶¶ 10-12. Mr. Draganac offers no objective factual support for his "concern[]" that merely requesting copies of the waitlists could "negatively impact" the "sensitive" relationship between the United States and Mexico. *Id.* at ¶ 12.

But Mr. Draganac's stale declaration does not explain why Mexico would be opposed to giving asylum seekers who have been waiting for months in Mexican towns information on how they can enter the United States and, absent concrete factual information to the contrary, one would expect the opposite. The Mexican government has already consented to other asylum seekers in its territory taking part in humanitarian exception processes, so it is unclear why telling more asylum seekers about the potential to be inspected and processed through the exception processes will undermine U.S.-Mexico relations. Because Mr. Draganac's *ipse dixit* declaration contains no concrete or particularized information, Defendants' speculative argument concerning international relations should be rejected.

### B. The Waitlists Would Facilitate Class Notice

Defendants' bald assertion that obtaining the waitlists would not facilitate class notice is unsupported and belied by the evidence provided by Plaintiffs. First, it is obvious that class notice would be facilitated by access to information about the identity of class members. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 355 (1978) (noting that "[i]dentification simply is another task that must be performed in order to send notice"). As both this Court and the Ninth Circuit already have found, the waitlists are relevant evidence of the identity of class members. *See* Dkt. 330 at 28 ("Class membership can be determined by cross-checking a class

5

member's name with the names included on these waitlists."); *Al Otro Lado v. Wolf*, 952 F.3d 999, 1009 (9th Cir. 2020) ("[T]he government could use the waitlists maintained by the Mexican government and others—waitlists it relied on to facilitate the metering policy—as a starting point in determining whether a noncitizen is part of the provisional class").

Moreover, Plaintiffs submitted evidence that lists managers of waitlists in five border cities "report that they collect asylum seekers' contact phone numbers," Plfs' Ex. 1 ¶ 10.[3] These five waitlists alone contain the names of *thousands* of potential PI class members, all of whom are entitled to notice of key developments in the case. Plfs' Ex. 10 at 5. Specific contact information, such as a phone number, would allow for direct notice to potential class members for whom such information was available. However, even more general information, such as the nationality of potential class members—which is collected on *every* waitlist, Plfs' Ex. 1 ¶ 10—would facilitate class notice by informing counsel where to engage in more broad-based notice efforts.

Defendants' repeated concern that any request for the waitlists may result in receipt of less than all the waitlists or "incomplete" waitlists, *see, e.g.*, Defs' Ex. 1 ¶ 9, is misplaced. Even access to a partial list or a few additional waitlists would facilitate notice to those potential class members on those lists, who otherwise may not receive notice. With no evidence that the remaining waitlists do not contain some form of contact information or that contact information would be unascertainable if a potential class member were identified, Defendants have no basis to assert that asking for the waitlists would not facilitate class notice.

Next, Defendants accuse Plaintiffs of "disregard[ing] other means of identifying class members," such as working with consortium partners to identify

---

[3] "Plfs' Ex." refers to Plaintiffs' exhibits in support of their opening brief. "Defs' Ex." refers to Defendants' exhibits in support of their opposition brief.

class members. Opp. at 17.[4] But even if Plaintiffs could identify certain potential class members through other means, Rule 23(d) still "authorizes a district court in appropriate circumstances to require a defendant's cooperation in identifying the class members to whom notice must be sent." *Oppenheimer*, 437 U.S. at 355. Such circumstances exist here, where Defendants have unique access to the waitlists. *See infra* at 7-9. The Court should exercise its discretion to require Defendants' cooperation in trying to obtain the waitlists, which would clearly facilitate notice of developments in the case to class members.

### C. The United States Government Has a Far Greater Ability to Obtain the Necessary Information

Defendants cannot credibly argue that Plaintiffs "have the same or better access to the waitlists than Defendants." Opp. at 15, when Mr. Draganac admits that OFO "receives information about various waitlists" directly from its Mexican points of contact. Defs' Ex. 1 ¶ 8. The United States government has far greater ability to obtain the waitlists.

#### (a) Defendants Do Not Seriously Contest Plaintiffs' Agency Argument

Defendants do not meaningfully contest Plaintiffs' argument that the list keepers are agents of the United States government and that the waitlists are therefore in Defendants' control. To begin with, Defendants' claim that they did not ask the keepers of the waitlists to act on their behalf and that they do not claim to act on behalf of Defendants misses the point. The test for determining whether a principal-agent relationship exists is not whether the principal asked the agent to act on its behalf or whether the agent claims to do so. Rather, it depends on whether the principal *assents* to the agent acting on its behalf. *See* Restatement (Third) of Agency

---

[4] In fact, Plaintiffs have learned that the opposite is true—information from the waitlists would facilitate identifying eligible individuals for the consortium process. *See* Plfs. Ex. 2 ¶ 9.

§ 1.01-1.02 (2006).

Here, Defendants clearly assented to the waitlist keepers acting on their behalf. *See e.g.*, Ex. 1 (stating that Port Director was in "constant communication" with GOM officials and that "GOM officials continue to ensure the controlled metering of migrants"); Ex. 2 (describing an incident in February 2019 where a group of migrants arrived at POE during "queue management" and CBP notified Mexican law enforcement, who arrived at the scene to remove the migrants); Ex. 3 (stating that POE "[m]aintained communication with Instituto Nacional de Migracion (INAMI) for updates in Ciudad Acuna" and was in "constant communication with Grupo Beta to ensure any new developments"); Ex. 4 ("MX Immigration removed [migrants] from the bridges to local shelters"). As asylum seekers arrived at POEs, they were told to return to Mexico and put their names on waitlists. *See* Dkt. 720 at 11-15. In fact, Mr. Draganac acknowledges that "ports may communicate directly with Mexican government officials, with Mexican state government officials, or with various NGOs or shelters at which migrants may be waiting," regarding the number of migrants that the port will accept for processing on a given day. Dkt. 723-1 at ¶ 6. Mr. Draganac even states that certain POEs have "received lists purporting to be portions or excerpts of wait lists" from "the Mexican government, shelters, and the U.S. Department of State." Dkt. 723-1 at ¶ 7. Even though Defendants are in regular contact with list-keepers and have obtained waitlists from list-keepers, including list keepers outside of the Mexican government, Defendants maintain that they are in no better position than Plaintiffs to obtain the waitlists. But Declarant Draganac's statements belie their position. Because of Defendants' principal-agent relationship with the list-keepers, the wait lists are within Defendants' control and this Court should order Defendants to assist in facilitating notice to class members.

### (b) Plaintiffs' Repeated Efforts to Obtain All the Waitlists Have Been Unsuccessful

Defendants' assertion that Plaintiffs have better or equal access to the waitlists

ignores Plaintiffs' repeated explanations that, despite diligent efforts, the majority of the waitlists are inaccessible to Plaintiffs. *See* Dkt. 644-1 at ¶ 5. Plaintiffs have only been able to obtain versions of the San Ysidro, CA, Mexicali, CA, and El Paso, TX waitlists, which they shared with Defendants. *See* Dkt. 644-1 at ¶¶ 3, 4, 7. Defendants are in a far better position to obtain the waitlists, given that Plaintiffs have encountered obstacles such as "Mexican officials' unwillingness to collaborate with Plaintiffs" and "a stated concern that U.S. officials at the POE would be displeased if the waitlist manager were to share the list with Plaintiffs." Dkt. 644-1 at ¶ 5. These specific obstacles are potentially surmountable for Defendants, given the documented collaboration between CBP and its Mexican counterparts with regards to the waitlists. Dkt. 723-1 at ¶¶ 6-8.

One of Defendants' only rationales for suggesting that Plaintiffs are better-positioned to obtain the waitlists is the misguided notion that because Declarant Savitri Arvey has seen copies of the waitlists, this "confirms she has access to the lists and should be able to provide them to Class Counsel." Opp. at 15. Though Ms. Arvey stated that she had seen several waitlists, at no point did she state that she could obtain copies of the waitlists, much less copies she would be at liberty to share with Plaintiffs. Defendants also fail to acknowledge the multiple unsuccessful attempts that aid agencies have made to obtain waitlists. *See* Dkt. 720-5 at ¶ 10. At this point, Plaintiffs have exhausted their efforts to obtain the waitlists and they ask that the Court order Defendants to assist with providing notice to class members because Defendants are better-positioned to do so.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion should be granted.

Dated: July 12, 2021

MAYER BROWN LLP
  Matthew H. Marmolejo
  Ori Lev
  Stephen M. Medlock

SOUTHERN POVERTY LAW CENTER
  Melissa Crow
  Sarah Rich
  Rebecca Cassler

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy
  Angelo Guisado

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters
  Gianna Borroto

By: */s/ Stephen M. Medlock*
  Stephen M. Medlock

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that I caused a copy of the foregoing document to be served on all counsel via the Court's CM/ECF system.

Dated: July 12, 2021                    MAYER BROWN LLP

                                        By */s/ Stephen M. Medlock*