MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:  +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Alejandro Mayorkas,[1] *et al.*, <br><br> Defendants. | Case No.:  17-cv-02366-BAS-KSC <br><br> **DECLARATION OF REBECCA M. CASSLER IN SUPPORT OF PLAINTIFFS' MOTION FOR COURT OVERSIGHT OF PRELIMINARY INJUNCTION COMPLIANCE** |

---

[1] Secretary Mayorkas is automatically substituted for former Acting Secretary Wolf pursuant to Fed. R. Civ. P. 25(d).

DECLARATION OF REBECCA M. CASSLER

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
  *kwalters@immcouncil.org*
  Gianna Borroto (IL Bar No. 6305516) (*pro hac vice*)
  *gborroto@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

**DECLARATION OF REBECCA M. CASSLER**

I, Rebecca M. Cassler, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am an attorney with the Southern Poverty Law Center and counsel for the Plaintiffs in this case. Pursuant to Civ. L. R. 7.1(f), I make this declaration in support of Plaintiffs' Motion for Court Oversight of Preliminary Injunction Compliance.

2. Counsel for the parties have engaged in an extensive series of conferrals and exchanges of correspondence regarding Defendants' and EOIR's (collectively, the "government") obligations under and efforts to comply with the Preliminary Injunction ("PI") (Dkt. 330) and the Court's Order Granting Plaintiffs' Motion for Clarification of the Preliminary Injunction ("Clarification Order") (Dkt. 605) (together, the "Orders"). The history of those conferrals is generally laid out in the Declaration of Ori Lev in support of Plaintiffs' Motion for Clarification of the Preliminary Injunction (Dkt. 494-2) and the Declaration of Ori Lev in support of Plaintiffs' Motion for Enforcement of the Preliminary Injunction (Dkt. 644-2). Since the conferrals documented in those declarations, the parties conferred by telephone regarding additional issues related to compliance with the Orders on numerous occasions, including on March 3, 2021, April 1, 2021, June 14, 2021, and June 21, 2021.

3. Counsel for the parties specifically conferred about the contents of this motion by telephone on July 29, 2021, and August 4, 2021.

4. Plaintiffs have repeatedly expressed dissatisfaction with the government's failure to timely comply with the Orders. As a result of the parties' most recent conferrals, Plaintiffs understand the following:

   a. The government has not yet finalized, let alone implemented, procedures for providing notice of potential class membership and

the existence and import of the PI to identified class members in administrative proceedings before USCIS or EOIR or in DHS custody, as ordered in Paragraph 3 of the Clarification Order. Plaintiffs' counsel inquired about the existence and contents of such procedures in conferrals on March 3, 2021, April 1, 2021, June 14, 2021, and August 4, 2021. The government has repeatedly stated that developing the contents and roll-out of this notice are "in process" but has never provided a date certain by which the notice will be finalized or disseminated.

b. With the exception of individuals in government custody subject to imminent removal, the government has not yet finalized, let alone implemented, procedures for reopening or reconsidering the cases of Preliminary Injunction Class Members ("PI class members") who were ordered removed in expedited removal proceedings, pursuant to 8 U.S.C. § 1225, following application of the Asylum Ban, as ordered in Paragraph 2 of the Clarification Order. Plaintiffs' counsel have repeatedly inquired about the existence and contents of such procedures, most recently on August 4, 2021. On August 4, 2021, the government outlined in broad strokes a tentative vision of what those procedures will be. According to those tentative procedures, such individuals located in the United States will likely be provided USCIS screening interviews similar to those subject to imminent removal, as described at Dkt. 695-3. Those located abroad will likely only be considered for relief under the Orders if they self-identify by submitting something in writing to the government asserting an entitlement to PI class membership, at which point the government would make a PI class membership determination based

on the written submission and certain documents in DHS's possession, after Plaintiffs have provided notice to these potential PI class members. The government did not explain how it will identify individuals in the United States who will gain access to this expanded USCIS screening process. The government did not provide details about what the potential PI class member will be required to submit or how. The government did not explain how it will identify individuals outside the United States to whom Plaintiffs would be expected to provide notice. The government did not explain what would happen once it identifies a PI class member through these tentative procedures. Furthermore, as of August 4, 2021, the government was unable to provide answers to specific procedural questions because the procedures have not yet been finalized. Also on August 4, 2021, the government indicated that such plans may be finalized within a matter of weeks, but did not give a date certain.

c. For potential PI class members in government custody subject to imminent removal who were ordered removed following a negative credible fear determination, there is no mechanism to independently establish PI class membership unless and until the class member is provided a screening interview by USCIS. For potential PI class members who are not subject to imminent removal (who are either in the United States and not subject to imminent removal or outside the United States), there is similarly no mechanism to affirmatively assert PI class membership in place at this time.

d. The government has not yet finalized, let alone implemented, procedures for the return to the United States of PI class members

who were previously removed from the United States and whose cases are reopened or reconsidered. For example, on May 7, 2021, Plaintiffs' counsel first brought to the government's attention the case of a PI class member whose case was ordered reopened by an Immigration Judge pursuant to the Orders. This individual had an immigration court hearing scheduled even though the government had not finalized procedures that would permit a PI class member in that position to return to the country to attend their scheduled hearing. Plaintiffs' counsel requested information about the procedures such a person should follow to return to the United States to attend their hearings. Plaintiffs' counsel asked for procedures multiple times after May 7, 2021, and each time, the government responded that the procedures were not yet ready. For example, on June 2, 2021, the government stated that procedures would be provided the following week. They were not. The government has represented that in such cases, Immigration Judges have been directed to continue the case or place it on the "status docket," rather than ordering the person removed *in absentia*, but for the time being such individuals remain in limbo without any information about what they should plan to do to ensure that they may meaningfully participate in their cases. In the parties' conferral on August 4, 2021, the government described a tentative, incomplete plan for how such individuals may be able to return to the United States to participate in their reopened proceedings, but stated that the procedures were not yet finalized. The government did not provide a date certain for the finalization and implementation of these procedures.

5. Plaintiffs have also learned, through the course of conferrals and written

exchanges with the government, that there are additional disputes about the scope of actions that the government is required to take under the Orders apart from those already put before the Court in Plaintiffs' Motion for Enforcement of the Preliminary Injunction (Dkt. 646). Such disputes include:

a. The parties disagree about who falls within the group the government is required to provide notice to under Paragraph 3 of the Clarification Order (which requires Defendants to notify those "in administrative proceedings before USCIS or EOIR, or in DHS custody, of their potential class membership and the existence and import of the preliminary injunction"). Plaintiffs' position is that this includes all potential PI class members who were in custody or proceedings as of October 30, 2020—the date of the Clarification Order—or any time thereafter. Plaintiffs further assert that this group includes those who, during that time period, had pending motions to reopen before EOIR or had petitions for review of administrative decisions pending in federal court. In the parties' conferral on August 4, 2021, the government indicated its disagreement with both of these positions. The government's stated position is that it is not feasible for the government to notify individuals who were in custody or proceedings going back to October 30, 2020 and that pending petitions for review or motions to reopen are not encompassed within "administrative proceedings," as that term is used in the Clarification Order. The government has not proposed any alternative cut-off date or other method of determining who is entitled to notice from the government.

b. The government has already begun the process of reviewing a selection of EOIR files to identify potential PI class members who

were denied asylum in regular immigration court proceedings, pursuant to 8 U.S.C. § 1229a (or "240 proceedings"). Other than those referred to EOIR following a USCIS screening (as described above, for those subject to imminent removal), the files subject to this review, according to written correspondence from the government received July 16, 2021, include "the cases of individuals who: (a) as reflected in CBP's records, were encountered by CBP and processed for expedited removal, expedited removal/credible fear, or a Notice to Appear between July 16, 2019 and June 30, 2020; and (b) as reflected in EOIR's records, were denied asylum in a final administrative decision on or before June 30, 2020." Based on the parties' conferrals, Plaintiffs understand the process in place to be based solely on review of EOIR's "record of proceedings," some of which contain information indicating PI class membership, but many of which do not because neither party submitted it into evidence at the time. Plaintiffs further understand that the process of review of EOIR records occurs without soliciting evidence of PI class membership from the individual whose file is being reviewed, even though the government knows that such information will certainly be missing from some files because metering information was not systematically documented in the underlying case. EOIR does not notify the potential PI class member that review is ongoing, that EOIR has concluded the person is or is not a PI class member, or that it has decided not to reopen a case. Plaintiffs' position is that for those potential PI class members whose EOIR files contain no evidence regarding class membership, the government should be affirmatively soliciting such evidence

from potential PI class members as part of its "immediate affirmative steps to reopen or reconsider past determinations that potential class members were ineligible for asylum based on the Asylum Ban … includ[ing] identifying affected class members" under Paragraph 2 of the Clarification Order. On July 29, 2021, the government stated its position that affirmatively soliciting such evidence from potential class members is not required under Paragraph 2 of the Clarification Order.

c. The government is not systematically searching for and reviewing notations made on the Form I-213 by Border Patrol as an independent source of data for identifying potential PI class members, as expressly required by Paragraph 4 of the Clarification Order. Plaintiffs' position is that the Clarification Order requires the government to locate, gather, and review these notations, or at least to cross-reference the I-213 notations with the lists of potential PI class members in the government's possession. In the parties' conferral on August 4, 2021, the government indicated that it reviews such notations incidental to other ongoing file review for class membership in any given case, but is not separately reviewing such notations to identify class members whose cases may not otherwise be reviewed.

d. While final procedures for reopening of cases of individuals ordered removed in expedited removal proceedings are not yet finalized, the parties appear to disagree about proper procedures for reopening such cases when the potential PI class member has already been removed from the United States. Plaintiffs' position is that for those potential PI class members ordered removed in expedited removal

9                                          DECLARATION OF REBECCA M. CASSLER

proceedings and located outside of the United States, the government should be affirmatively soliciting evidence of class membership as part of its "immediate affirmative steps to reopen or reconsider past determinations that potential class members were ineligible for asylum based on the Asylum Ban … includ[ing] identifying affected class members" under Paragraph 2 of the Clarification Order. On July 29, 2021, the government stated its position that affirmatively soliciting such evidence from potential class members is not required under Paragraph 2 of the Clarification Orde. Instead, the government indicated that it plans to only consider such cases for reopening or reconsideration after Plaintiffs provide notice to such an individual and the individual affirmatively "raises their hand" to self-identify as a PI class member.

6.  There are other matters related to compliance with the Orders about which Plaintiffs have not yet received sufficient information to determine if there are disputes between the parties. However, the lack of information itself is hindering the effective implementation of the Orders, given the length of delay to date.

   a. As stated above, EOIR is in the process of reviewing select EOIR files of potential PI class members. To date, the government has not provided a full explanation of what this review consists of and whether it includes systematic review of information in DHS's files that might indicate PI class membership, such as metering waitlists. For the first time in a letter on July 16, 2021, the government stated that if the initial EOIR file review was inconclusive on the question of PI class membership, the file would be "referred to EOIR's Office of General Counsel for further review." In the parties' conferral on July 29, 2021, the government stated that this "further review" could

include review of metering waitlists, depending on the case, but indicated that it was not prepared to discuss with specificity what the "further review" consists of and whether it requires review of information in DHS's possession. Plaintiffs' view is that such information must be reviewed as part of Defendants' duty to "make all reasonable efforts to identify class members" under Paragraph 4 of the Clarification Order, as well as Defendants' duty under Paragraph 2 to "identify[] affected class members" for reopening and reconsideration relief.

b. For potential PI class members ordered removed through 240 proceedings, the procedural mechanism by which such an individual may affirmatively assert before EOIR that reopening should occur is still unclear. Even though EOIR may make a *sua sponte* determination to reopen a PI class member's case as a result of the EOIR record review process described above, the government agrees that all PI class members ordered removed through 240 proceedings retain the opportunity to affirmatively assert their entitlement to PI relief. The government has repeatedly referred to the proper process as the existing procedure for a motion to reopen, which is defined in statute and regulation at 8 U.S.C. § 1229a(c)(7); 8 C.F.R. § 103.5. Plaintiffs' position is that requiring potential PI class members to file a motion to reopen to assert they are entitled to relief under the Orders will prevent many from obtaining the relief they are owed due to the difficulty of filing such motions, particularly for those without counsel, those who do not speak English, and those who are outside the United States. While on the one hand referring to the existing motion to reopen procedures as

the only way for potential PI class members to assert entitlement to relief under the Orders, the government has also indicated in various conferrals that it in fact does not consider all of the statutory and regulatory motion to reopen requirements to be applicable to motions to reopen asserting PI class membership ("PI Motion to Reopen"). For example, the government has represented to Plaintiffs in conferrals that it will accept such motions even if they are filed after the applicable deadline and even if they would otherwise be number-barred under the statute. The government also stated in written correspondence dated July 16, 2021, that a PI Motion to Reopen "need not be complicated," without specifying how such a motion might differ from the procedurally complex filing referred to as a "motion to reopen" in statute and regulations. Nor has the government finalized plans to put such information in the Notice required by Paragraph 3 of the Clarification Order. Plaintiffs believe that a less onerous PI Motion to Reopen is necessary and appropriate, but the requirements of such a motion must be made clear to the parties, potential class members, decisionmakers and the public. Plaintiffs further believe that the parties could probably come to a negotiated agreement about the contours of an PI Motion to Reopen, but without oversight from the Court, Plaintiffs are concerned that this result will not occur in a timely enough manner to provide meaningful relief to PI class members.

7. Plaintiffs explained to the government in conferrals on July 29, 2021 and August 4, 2021, that Plaintiffs seek Court oversight of the process of compliance with the Orders, including mediation as the Court deems appropriate, to resolve the outstanding disputes between the parties and to ensure that compliance occurs in a

timely manner, given the delays to date. Counsel for Defendants indicated that the Defendants oppose Plaintiffs' motion.

I declare under penalty of perjury under the laws of the United States of America that the proceeding declaration is true and correct.

Executed on this 24th day of August 2021 at Fort Worth, Texas.

*/s/ Rebecca M. Cassler*
Rebecca M. Cassler