1 | MAYER BROWN LLP
2 |     Matthew H. Marmolejo (CA Bar No. 242964)
      *mmarmolejo@mayerbrown.com*
3 | 350 S. Grand Avenue
    25th Floor
4 | Los Angeles, CA 90071-1503
      Ori Lev (DC Bar No. 452565)
5 |     *(pro hac vice)*
      *olev@mayerbrown.com*
6 |     Stephen M. Medlock (VA Bar No. 78819)
      *(pro hac vice)*
7 |     *smedlock@mayerbrown.com*
    1999 K Street, N.W.
8 | Washington, DC 20006
    Telephone: +1.202.263.3000
9 | Facsimile:   +1.202.263.3300

10 | SOUTHERN POVERTY LAW CENTER
      Melissa Crow (DC Bar No. 453487)
11 |     *(pro hac vice)*
      *melissa.crow@splcenter.org*
12 | 1101 17th Street, N.W., Suite 705
    Washington, DC 20036
13 | Telephone: +1.202.355.4471
    Facsimile: +1.404.221.5857

14 | *Additional counsel listed on next page*
    *Attorneys for Plaintiffs*

15 |

16 | ## UNITED STATES DISTRICT COURT

17 | ## SOUTHERN DISTRICT OF CALIFORNIA

18 | Al Otro Lado, Inc., *et al.*,

19 |                   Plaintiffs,

20 |          v.

21 | Alejandro Mayorkas,[1] *et al.*,

22 |                   Defendants.

Case No.:  17-cv-02366-BAS-KSC

**PLAINTIFFS' CORRECTED
MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION
FOR COURT OVERSIGHT OF
PRELIMINARY INJUNCTION
COMPLIANCE**

***Declaration of Rebecca M. Cassler
Filed Concurrently***

23 |

24 |

25 |

26 |

27 |

28 | [1] Secretary Mayorkas is automatically substituted pursuant to Fed. R. Civ. P. 25(d).

1    CENTER FOR CONSTITUTIONAL RIGHTS
2        Baher Azmy (NY Bar No. 2860740)
         (*pro hac vice*)
         *bazmy@ccrjustice.org*
3        Angelo Guisado (NY Bar No. 5182688)
         (*pro hac vice*)
4        *aguisado@ccrjustice.org*
     666 Broadway, 7th Floor
5    New York, NY  10012
     Telephone: +1.212.614.6464
6    Facsimile: +1.212.614.6499

7    SOUTHERN POVERTY LAW CENTER
8        Sarah Rich (GA Bar No. 281985)
         (*pro hac vice*)
         *sarah.rich@splcenter.org*
9        Rebecca Cassler (MN Bar No. 0398309)
         (*pro hac vice*)
10       *rebecca.cassler@splcenter.org*
     150 E. Ponce de Leon Ave., Suite 340
11   Decatur, GA  30030
     Telephone: +1.404.521.6700
12   Facsimile: +1.404.221.5857

13   AMERICAN IMMIGRATION COUNCIL
14       Karolina Walters (DC Bar No. 1049113)
         (*pro hac vice*)
         *kwalters@immcouncil.org*
15       Gianna Borroto (IL Bar No. 6305516)
         (*pro hac vice*)
16       *gborroto@immcouncil.org*
     1331 G St. NW, Suite 200
17   Washington, DC  20005
     Telephone: +1.202.507.7523
18   Facsimile: +1.202.742.5619

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ii

I.     INTRODUCTION ............................................................................... 1

II.    RELEVANT BACKGROUND ............................................................ 2

   A.    The Preliminary Injunction and Clarification Order ..................... 2

   B.    The Pending Motion to Enforce ..................................................... 3

   C.    The Current Status of Defendants' Compliance Efforts................. 5

III.   ARGUMENT ..................................................................................... 13

   A.    Legal Standard .............................................................................. 13

   B.    The Court Should Supervise Compliance with Its Injunction in Light of Ongoing Disputes Between the Parties and Defendants' Compliance Failures to Date ........................................................................... 14

CONCLUSION....................................................................................... 26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
284 F.3d 1091 (9th Cir. 2002) .................................................................. 14, 25

*Brown v. Plata*,
563 U.S. 493 (2011) ...................................................................................... 13

*Chatman v. Otani*,
2021 WL 2941990 (D. Haw. July 13, 2021) ...................................................... 13

*Chhoeun v. Marin*,
306 F. Supp. 3d 1147 (C.D. Cal. 2018) ....................................................... 19, 20

*Dep't v. Wright*,
364 U.S. 642 (1961) ...................................................................................... 14

*Gluth v. Kangas*,
951 F.2d 1504 (9th Cir. 1991) ........................................................................ 13

*Hamama v. Adducci*,
912 F.3d 869 (6th Cir. 2018) ..................................................................... 19, 20

*Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*,
242 F.3d 1163 (9th Cir. 2001) ........................................................................ 14

*Shillitani v. United States*,
384 U.S. 364 (1966) ...................................................................................... 13

*State v. Trump*,
263 F. Supp. 3d 1049 (D. Haw.) ..................................................................... 14

*State v. Trump*,
871 F.3d 646 (9th Cir. 2017) ............................................................... 13, 14, 25

*Thomas v. Cnty. of L.A.*,
978 F.2d 504 (9th Cir. 1993) .......................................................................... 13

**Statutes**

8 U.S.C. § 1225(b)(1) .................................................................................. 7, 8

8 U.S.C. § 1229a ............................................................................................ 7, 8

8 U.S.C. § 1229a(c)(7) ............................................................................ 7, 8, 9, 19

8 U.S.C. § 1229a(c)(7)(A) ................................................................................ 19

8 U.S.C. § 1229a(c)(7)(C)(i) ........................................................................... 19

**Other Authorities**

8 C.F.R. § 103.5 ......................................................................................... 9, 19

8 C.F.R. § 208.13(c)(4) ..................................................................................... 2

8 C.F.R. § 208.16 ............................................................................................. 5

8 C.F.R. § 1003.2(c) ......................................................................................... 19

8 C.F.R. § 1003.23(b)(1)(i) ............................................................................... 19

8 C.F.R. § 1003.23(b)(3) ................................................................................... 19

8 C.F.R. § 1003.33 ........................................................................................... 19

8 C.F.R. § 1208.13(c)(4) .................................................................................... 2

85 Fed. Reg. 82,260 (Dec. 17, 2020) ................................................................. 2

EOIR, U.S. Department of Justice, *Immigration Court Practice
Manual* § 4.10(c), https://www.justice.gov/eoir/eoir-policy-
manual/4/10 (last updated Jan. 15, 2021) ........................................................ 9

EOIR, U.S. Department of Justice, *Immigration Court Practice
Manual* § 5.7, https://www.justice.gov/eoir/eoir-policy-manual/5/7
(last updated Dec. 30, 2020) ........................................................................... 19

Fed. R. Civ. P. 62(c) ...................................................................................... 14

1    **I.    INTRODUCTION**

2           Nearly two years after this Court's issuance of the preliminary injunction in

3    this case ("PI") and one year after its order clarifying the terms of the PI (the

4    "Clarification Order," and collectively, "the Orders"), certain PI class members

5    continue to lack access to the relief provided for in the Orders because of Defendants'

6    failure to develop—much less implement—certain necessary compliance

7    procedures. Moreover, as Defendants have shared their developing plans for

8    implementation of other aspects of the Orders, it has become clear that certain

9    proposed procedures are at odds with the express terms and intent of the Orders and

10   threaten to deny PI class members their rights under the Orders. *First*, Defendants'

11   and EOIR's (collectively, the "government") proposed implementation of their

12   affirmative duty under Paragraph 2 of the Clarification Order to reopen or reconsider

13   past determinations that potential PI class members were ineligible for asylum based

14   on the Asylum Ban fails to provide many potential PI class members any opportunity

15   to submit evidence of their class membership, and excludes other PI class members

16   from the review process altogether. *Second,* Defendants have yet to comprehensively

17   provide the notice required by Paragraph 3 of the Clarification Order. *Third,*

18   Defendants are not planning on systematically reviewing Forms I-213 for notations

19   regarding PI class membership as part of an effort to identify class members, as

20   required by Paragraph 4 of the Clarification Order. *Fourth,* Defendants have yet to

21   develop procedures to return to the United States those PI class members located

22   outside the United States whose cases have been reopened to allow them to

23   participate in those cases.

24          In light of the government's continued intransigence, Plaintiffs seek this

25   Court's ongoing supervision of the government's PI compliance efforts. Specifically,

26   Plaintiffs seek a referral of PI compliance issues to Magistrate Judge Crawford, with

27   instructions that she hold regular status conferences with the parties regarding PI

28   compliance issues, seek to mediate areas of disagreement, and either decide, or make

recommendations to this Court regarding, disputes that the parties cannot resolve through mediation.

## II.    RELEVANT BACKGROUND

### A.    The Preliminary Injunction and Clarification Order

On November 19, 2019, this Court issued a preliminary injunction enjoining Defendants from applying the Asylum Ban (8 C.F.R. §§ 208.13(c)(4), 1208.13(c)(4)) to members of a provisionally certified class of "all non-Mexican asylum-seekers who were unable to make a direct asylum claim at a U.S. [Port of Entry] before July 16, 2019 because of the U.S. Government's metering policy, and who continue to seek access to the U.S. asylum process." Dkt. 330 at 36. The Court also directed Defendants to "return to the pre-Asylum Ban practices for processing the asylum applications of members of the certified class." *Id.*[2]

Nearly a year after the original preliminary injunction was issued, on October 30, 2020, noting that "Defendants ha[d] made piecemeal efforts at various stages of immigration proceedings to identify class members," Dkt. 605 at 3, and in light of various decisions of immigration judges who continued to apply the Asylum Ban to provisional PI class members, *id.* at 6, the Court issued a further order clarifying the preliminary injunction. Dkt. 605 (the "Clarification Order"). The Clarification Order (1) made clear that the PI applies to the Executive Office for Immigration Review ("EOIR") and further provided that:

> (2) DHS and EOIR must take immediate affirmative steps to reopen or reconsider past determinations that potential class members were ineligible for asylum based on the Asylum Ban, for all potential class members in expedited or regular removal proceedings. Such steps

---

[2] On January 18, 2021, the Court entered a temporary restraining order ("TRO") similarly enjoining application of the Final Rule implementing the Asylum Ban, 85 Fed. Reg. 82,260 (Dec. 17, 2020), to the PI class. Dkt. 671 at 10. That TRO was subsequently converted to a preliminary injunction upon joint motion of the parties. Dkt. 676.

include identifying affected class members and either directing immigration judges or the BIA to reopen or reconsider their cases or directing DHS attorneys representing the government in such proceedings to affirmatively seek, and not oppose, such reopening or reconsideration;

(3) Defendants must inform identified class members in administrative proceedings before USCIS or EOIR, or in DHS custody, of their potential class membership and the existence and import of the preliminary injunction; and

(4) Defendants must make all reasonable efforts to identify class members, including but not limited to reviewing their records for notations regarding class membership made pursuant to the guidance issued on November 25, 2019, and December 2, 2019, to CBP and OFO, respectively, and sharing information regarding class members' identities with Plaintiffs.

*Id.* at 24-25. *See also id.* at 23 ("Defendants must review their own records to aid in the identification of class members and must share the information in their custody regarding the identities of class members with Plaintiffs.").[3]

### B.    The Pending Motion to Enforce

Notwithstanding the Orders, the government continued to drag its feet in implementing the PI and continued discussions between the parties demonstrated that the parties had different understandings of what the Orders require. Plaintiffs moved to enforce the PI on December 15, 2020. *See* Dkts. 644, 646 (the "Motion to Enforce").

The Motion to Enforce identified eleven discrete issues regarding PI

---

[3] The Court also separately granted Plaintiffs' Emergency Motion to Enforce Preliminary Injunction and Temporarily Enjoin the Removal of a Preliminary Injunction Class Member ("Emergency Motion"). Dkt. 607. That Order found that the Applicant at issue in the Emergency Motion, whom Defendants were about to deport, was a PI class member and ordered the government to provide her with a merits determination of her asylum claim, in compliance with the PI. *Id.* at 15.

3

implementation about which the parties disagreed. Dkt. 646 at 6-7.[4] On the same day that Plaintiffs filed their Motion to Enforce, Defendants filed a Motion for Protective Order, seeking to restrict Plaintiffs' use of information about PI class members that

---

[4] The eleven issues identified in the Motion to Enforce were:

1) Defendants' refusal to provide a written implementation plan outlining the steps they intend to take to comply with the Clarification Order and a timeline for taking those steps;
2) Defendants' unwillingness to obtain additional metering waitlists from their Mexican counterparts;
3) Defendants' unwillingness to treat an individual's name on a metering waitlist prior to July 16, 2019 as presumptive evidence of PI class membership;
4) Defendants' unwillingness to treat an individual's inspection at a POE on a date when the waitlist numbers being called for entry at that POE were issued prior to July 16, 2019 as presumptive evidence of PI class membership;
5) Defendants' unwillingness to disclaim reliance on statements made during Defendants' faulty prior efforts at PI class membership screening in determining class membership;
6) Defendants' insistence that a Protective Order was required to provide Plaintiffs with information regarding potential PI class members and the provisions of such a Protective Order [subsequently resolved];
7) What constitutes adequate notice under Paragraph (3) of the Clarification Order;
8) Defendants' failure to establish a process by which individuals potentially eligible for reopening/reconsideration can submit evidence of class membership equivalent to any procedures adopted for those in DHS custody;
9) Defendants' intent to exclude from reopening/reconsideration relief PI class members who were deemed ineligible for asylum based on the Asylum Ban, where the asylum denial decision also identifies an alternative non-categorical reason for denying asylum;
10) Defendants' intent to exclude from reopening/reconsideration relief PI class members to whom the Asylum Ban was applied at an intermediate stage of the process (e.g., immigration court), where the final adjudicator (e.g., the Board of Immigration Appeals ("BIA")) denied asylum only on a basis other than the Asylum Ban; and
11) Defendants' intent to not screen individuals with final determinations after June 30, 2020 for PI class membership or reopening/reconsideration relief.

Dkt. 646 at 6-7.

4

the Clarification Order required Defendants to share. Dkt. 647.[5] This Court referred Defendants' Motion for Protective Order to Magistrate Judge Crawford for mediation, Dkt. 691, who entered a protective order governing the sharing of PI class member information. Dkt. 709. The remaining aspects of Plaintiffs' Motion to Enforce remain pending.

### C.    The Current Status of Defendants' Compliance Efforts

Since Plaintiffs filed the Motion to Enforce, the parties have engaged in extensive telephone conferences and exchanged written correspondence regarding various aspects of the government's efforts to comply with the Orders. Decl. of Rebecca M. Cassler, ¶¶ 2-3. Because the measures the government has adopted, or contemplates adopting, to identify and reopen or reconsider PI class members' cases vary based on the procedural history, location, and removal status of a potential PI class member's immigration case, we first outline those various factors. Relevant procedural histories include:

(1)    cases where an individual was subject to expedited removal proceedings, pursuant to 8 U.S.C. § 1225, and received a negative credible fear determination based on application of the Asylum Ban by an asylum officer, immigration judge reviewing that determination, or both, resulting in a removal order ("Negative CFI" group); and

(2)    cases where the Asylum Ban was applied as a basis for denying asylum in regular immigration court proceedings, pursuant to 8 U.S.C. § 1229a ("EOIR denial" group).[6]

---

[5] The Motion for Protective Order was essentially a response to item (6) in Plaintiffs' Motion to Enforce.

[6] In such cases, the individual may have been ordered removed without any additional immigration relief granted; may have been ordered removed but concurrently granted withholding of removal under 8 C.F.R. § 208.16; or may have been granted some

5

Relevant locations and removal statuses include individuals:

    (a)    within the United States in DHS custody, and subject to imminent removal;

    (b)    within the United States, and either not in DHS custody or in DHS custody but not subject to imminent removal; and

    (c)    outside the United States.

Based on exchanges with Defendants, Plaintiffs understand the current status of the government's efforts to comply as follows:

    *1. Group (1)(a): Negative CFI, in DHS custody and removal imminent*

The government preliminarily screens the case files of all individuals in DHS custody and subject to imminent removal for possible PI class membership using a loose set of intentionally overbroad criteria that identify individuals who do not require further screening prior to removal. *See* Dkt. 695-5, ¶¶ 6-11. Following this screening, those who may be PI class members receive a document stating that they will be provided a screening interview with USCIS ("USCIS screening") to determine whether they are actually PI class members. *See* Dkt. 695-3, ¶ 5; Dkt. 695-4. The USCIS screening, described in more detail at Dkt. 695-3, consists of an interview with an Asylum Officer to determine whether it is more likely than not that an interviewee is a PI class member. As part of the evaluation, the Asylum Officer is also directed to consider documents already in the government's possession, such as copies of the metering waitlists in the Defendants' possession. *See* Dkt. 695-3, ¶ 7; *id.* ¶¶ 14-16.

If the Asylum Officer determines that the interviewee is more likely than not a PI class member, the person either receives a new credible fear interview (if the

_____

other form of immigration relief and not ordered removed. In addition, there are an unknown number of PI class members who intended to apply for asylum in immigration court proceedings but were told they were ineligible for asylum under the Asylum Ban by an immigration judge and, as a result, did not submit an asylum application at all.

original negative credible fear determination by the Asylum Officer was based on the Asylum Ban) or the existing credible fear determination is sent to an immigration judge for a new review (if the original negative credible fear determination was not based on the Asylum Ban, but an immigration judge previously applied the Asylum Ban upon review). *See* Dkt. 695-3, ¶ 16. There is no mechanism for individuals in Group (1)(a) to assert PI class membership unless and until they are provided a USCIS screening. Cassler Decl., ¶ 4(c).

### 2. *Group (1)(b): Negative CFI, in the U.S. (whether or not in DHS custody), removal not imminent*

Currently, there is no mechanism in place by which Defendants are reopening or reconsidering the cases of individuals in Group (1)(b), nor is there any way for Group (1)(b) members to assert PI class membership. Cassler Decl., ¶¶ 4(b)-(c). Because individuals in Group (1)(b) were issued expedited removal orders, there is no established procedure available to them to independently request consideration of their PI class membership. *Contrast* 8 U.S.C. § 1229a(c)(7) (providing for statutory motion to reopen in regular removal proceedings under 8 U.S.C. § 1229a) *with* 8 U.S.C. § 1225(b)(1) (listing limitations to administrative review in expedited removal proceedings).

On August 4, 2021, Defendants provided Plaintiffs with a description of tentative, non-finalized procedures for this group, consisting of a USCIS screening similar to that provided to Group (1)(a). Cassler Decl., ¶ 4(b). Defendants did not explain how they would identify potential PI class members in Group (1)(b) who will receive a USCIS screening. *Id.* Defendants did not provide a date certain by which procedures for Group (1)(b) will be finalized and implemented. *Id.*

### 3. *Group (1)(c): Negative CFI, outside the U.S.*

Currently, there is no mechanism in place by which the government is reopening or reconsidering the cases of individuals in Group (1)(c), nor is there any mechanism for Group (1)(c) members to assert PI class membership. Cassler Decl.,

7

¶¶ 4(b)-(c). Because individuals in Group (1)(c) were issued expedited removal orders, there is no established procedure available to them to independently request consideration of their PI class membership. *Contrast* 8 U.S.C. § 1229a(c)(7) (providing for statutory motion to reopen in regular removal proceedings under 8 U.S.C. § 1229a) *with* 8 U.S.C. § 1225(b)(1) ( listing limitations to administrative review in expedited removal proceedings).

On August 4, 2021, Defendants provided Plaintiffs with a description of tentative, non-finalized procedures for this group. Cassler Decl., ¶ 4(b). Under the procedures outlined, Plaintiffs are expected to provide notice to Group (1)(c) in the first instance, after which an individual in Group (1)(c) would need to submit something in writing to Defendants asserting an entitlement to class membership, at which point Defendants would consider the person for PI relief based on the written submission and certain documents in DHS's possession. *Id.* Defendants did not provide details about what the potential PI class member is required to submit or how. *Id.* Defendants did not explain exactly how they will identify individuals to whom Plaintiffs would be expected to provide notice. *Id.* Defendants did not explain what would happen once they identify a PI class member through these tentative procedures. *Id.* Defendants did not provide a date certain by which procedures for Group (1)(b) will be finalized and implemented. *Id.*

### 4. Group (2)(a): EOIR denial, in DHS custody, removal imminent

The same USCIS screening procedure described above regarding Group (1)(a) applies to Group (2)(a). However, if a PI class member in Group (2)(a) is deemed more likely than not a PI class member in a USCIS screening, rather than referring the case to the credible fear process, USCIS refers the case back to EOIR. Dkt. 695-3, ¶ 17; Dkt. 695-6, ¶ 9. The PI class member will be notified of the PI class membership determination and the referral of the case to EOIR. Dkt. 695-3, Ex. 11.

EOIR then reviews the Record of Proceedings ("ROP")[7] to make a decision about whether to reopen the case, accepting USCIS's determination that PI class membership has been established ("ROP reopening review").[8] Dkt. 695-6, ¶¶ 13-15. If EOIR decides to reopen the case, it may schedule a new hearing or issue a new asylum decision based on the existing ROP without a hearing. *Id.* If EOIR decides not to reopen the case, it takes no action and the PI class member is not notified of this result. Cassler Decl., ¶ 5(b).

In addition, according to Defendants, any potential PI class member who was ordered removed in regular removal proceedings may file a motion to reopen asserting a right to relief under the PI. Dkt. 695-6, ¶ 6; Cassler Decl., ¶ 6(b). Those eligible to file a motion to reopen include members of Group (2)(a) whose cases EOIR decides not to reopen following ROP reopening review. The motion to reopen is a procedural mechanism defined in 8 U.S.C. § 1229a(c)(7); 8 C.F.R. § 103.5. The government has indicated in conferrals and before the Court that EOIR will adjudicate a motion to reopen asserting PI class membership in this case (a "PI Motion to Reopen") even if it would be time- or number-barred under the normal rules. Dkt. 695-6, ¶ 6; Cassler Decl., ¶ 6(a). On August 4, 2021, Defendants also

---

[7] ROP contents "vary from case to case," but they generally contain "the Notice to Appear (Form I-862), hearing notice(s), the attorney's Notice of Appearance (Form EOIR-28), Alien's Change of Address Form(s) (Form EOIR-33/IC), application(s) for relief, exhibits, motion(s), brief(s), hearing tapes (if any), and all written orders and decisions of the Immigration Judge." EOIR, U.S. Department of Justice, *Immigration Court Practice Manual* § 4.10(c), https://www.justice.gov/eoir/eoir-policy-manual/4/10 (last updated Jan. 15, 2021).

[8] As explained in the pending Motion to Enforce, the parties disagree on whether EOIR is required to reopen cases where (1) a PI class member was deemed ineligible for asylum based on the Asylum Ban, where the asylum denial decision also identifies an alternative non-categorical reason for denying asylum, or (2) the Asylum Ban was applied at an intermediate stage of the process, where the final adjudicator denied asylum only on a basis other than the Asylum Ban. Dkt. 646 at 23-25.

9

indicated for the first time that the government would be open to excusing other requirements that typically govern motions to reopen for purposes of PI Motions to Reopen, but the contours of these exceptions are not clear.[9]

> 5. *Group (2)(b): EOIR denial, in the U.S., removal not imminent & Group (2)(c): EOIR denial, outside the U.S.*

EOIR has compiled a list of approximately 2,000 individuals, both in and outside the United States, who were encountered by CBP between July 16, 2019 and July 30, 2020, and whose asylum applications were denied in immigration court proceedings on or before June 30, 2020. Dkt. 695-6, ¶ 9; Cassler Decl., ¶ 5(b). EOIR is in the process of reviewing the ROPs in these cases to determine (a) if any of these individuals is a PI class member and (b) if so, if reopening is required (together, "ROP class membership review"). Dkt. 695-6, ¶¶ 11, 13-15. The potential PI class members whose cases are being reviewed are not notified that review is underway, and EOIR does not solicit information regarding PI class membership from individuals subject to ROP class membership review, even in cases where the ROP contains no evidence regarding PI class membership. Cassler Decl., ¶ 5(b). ROP class membership review does not include reviewing copies of any relevant metering waitlist in DHS's possession unless one of the parties to the immigration court proceedings previously submitted it into evidence, making it part of the ROP. *Id.* Any other information in DHS's possession indicating PI class membership would similarly be part of ROP class membership review only if it was made part of the record during the individual's immigration court proceedings. *Id.*

ROP class membership review may have several possible outcomes. First, if EOIR is able to affirmatively determine that an individual is not a PI class member, no further action is taken and the individual is not notified of the review or its outcome. Cassler Decl., ¶ 5(b). Second, if EOIR is able to affirmatively determine

---

[9] *See* Part IV.B.2., *infra*, for a detailed discussion of the PI Motion to Reopen.

1    that an individual is a PI class member, it then decides whether to reopen the case. If

2    EOIR decides to reopen the case, it may schedule a new hearing or issue a new

3    decision based on the existing ROP without a hearing. Dkt. 695-6, ¶¶ 13-15. If EOIR

4    decides not to reopen the case, it takes no action and the PI class member is not

5    notified of this result. Cassler Decl., ¶ 5(b). Third, if EOIR is not able to determine

6    PI class membership based on the ROP, it refers the case to the EOIR Office of

7    General Counsel ("OGC") for possible "further action." *Id.* ¶ 6(a). Defendants have

8    not explained what further action EOIR OGC might take. *Id.* In conferrals with

9    Plaintiffs, Defendants were unable to say whether such further action would

10   necessarily include review of documents in DHS's possession that were not part of

11   the ROP (such as waitlists) that might indicate PI class membership. *Id.*

12        Separate from the ROP class membership review process, members of Groups

13   (2)(b) and (2)(c), like Group (2)(a), may file a PI Motion to Reopen asserting a right

14   to relief under the PI. Dkt. 695-6, ¶ 6; Cassler Decl., ¶ 6(b).

15        At this time, Defendants have not finalized procedures for a PI class member

16   in Group (2)(c) (ordered removed in immigration court proceedings, located outside

17   the United States) to return to the United States if their proceedings are reopened as

18   a result of either the ROP class membership review or a separate motion to reopen.

19   Cassler Decl., ¶ 4(b). On August 4, 2021, Defendants outlined tentative procedures

20   but did not provide a date certain by which such procedures will be finalized. *Id.*

21   EOIR has started reopening proceedings of some PI class members abroad and

22   scheduling their hearings in immigration court. *Id.* In these cases, Defendants assert

23   that immigration judges have been directed to issue continuances or place the case

24   on a "status docket," where available, rather than ordering such individuals removed

25   *in absentia* after failing to appear for a scheduled hearing. *Id.*

26

27

28

11

1

2    The above procedures are summarized in the following chart:

3

4

| | USCIS Screening | File Review After Self-Identification | ROP reopening review | ROP class membership review | PI Motion to Reopen Possible |
|---|---|---|---|---|---|
| (1) Negative CFI | | | | | |
| (a) Removal imminent | X | | | | |
| (b) In US, removal not imminent | (tentative) | | | | |
| (c) Outside US | | (tentative) | | | |
| (2) EOIR denial | | | | | |
| (a) Removal imminent | X | | X | | X |
| (b) In US, removal not imminent | | | | X | X |
| (c) Outside US | | | | X | X |

12                                   ***

13    In addition to their duties to identify PI class members and reopen or reconsider

14   their cases, Defendants also have been ordered to "inform identified class members

15   in administrative proceedings before USCIS or EOIR, or in DHS custody, of their

16   potential class membership and the existence and import of the preliminary

17   injunction." Clarification Order at 25. To date, Defendants have not provided notice

18   to any individuals *other than* potential PI class members in DHS custody who are

19   subject to imminent removal; these individuals receive a written document advising

20   them of their upcoming USCIS screening, as described above (Groups (1)(a) and

21   (2)(a)).[10] Cassler Decl., ¶ 4(a). Defendants have not provided a date certain by which

22   they will comply with the Court's Clarification Order regarding notice to the other

23   groups, and have indicated that they do not agree that (a) the Clarification Order

24   requires such notice to be given to all PI class members who were in custody or

25

26   _____

27   [10] Whether this document satisfies the notice requirement set out in Paragraph 3 of
the Clarification Order is a matter in dispute addressed in the pending Motion to
Enforce. Dkt. 646 at 19-22.

28

1  proceedings as of the date of the Clarification Order or thereafter, and (b) that

2  Paragraph (3) applies to those PI class members with pending motions to reopen

3  before the Board of Immigration Appeals or petitions for review before the federal

4  courts of appeal. *Id.*, ¶¶ 4(a), 5(a).

## III.    ARGUMENT

### A.    Legal Standard

7      "[C]ourts have inherent power to enforce compliance with their lawful orders."

8  *Shillitani v. United States*, 384 U.S. 364, 370 (1966). *See generally Brown v. Plata*,

9  563 U.S. 493, 542 (2011) (recognizing court's "continuing duty and responsibility to

10  assess the efficacy and consequences of its order" where an injunction "mandate[s]

11  systemic changes to an institution"). A necessary corollary to the power to enforce is

12  the power to supervise compliance. "The district court has the power to supervise

13  compliance with an injunction and to 'modify a preliminary injunction in

14  consideration of new facts.'"   *State v. Trump*, 871 F.3d 646, 654 (9th Cir. 2017)

15  (quoting *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002)).

16      The Court's power to supervise compliance with its prior orders includes the

17  authority to refer such supervision to a magistrate judge for oversight and to require

18  the submission of regular compliance reports. *See, e.g., Chatman v. Otani*, 2021 WL

19  2941990, at *24 (D. Haw. July 13, 2021) (referring oversight of preliminary

20  injunction to Magistrate Judge, "who is authorized to address compliance with the

21  preliminary injunction, engage in factfinding procedures he deems appropriate, and

22  issue certified factual findings to the undersigned"); *Thomas v. Cnty. of L.A.*, 978

23  F.2d 504, 510 (9th Cir. 1993) ("The district court is authorized to direct the

24  submission of such reports to ensure compliance with an injunction. Provided it is

25  not 'overly burdensome,' such oversight can be a proper exercise of the district

26  court's discretion 'because it helps ensure compliance with the injunction.' *Gluth v.*

27  *Kangas*, 951 F.2d 1504, 1511 (9th Cir. 1991)."); *Chatman*, 2021 WL 2941990, at

28  *24 (directing parties to attend monthly status conferences with Magistrate Judge and

submit compliance reports).

Indeed, if circumstances warrant, the Court has the power to modify the injunction in consideration of new facts. "The source of the power to modify is of course the fact that an injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief." *Sys. Fed'n No. 91, Ry. Emps.' Dep't v. Wright*, 364 U.S. 642, 647 (1961). *See also A&M Records,* 284 F.3d at 1098 (finding "proper exercise of the district court's supervisory authority" in requiring a party to adopt certain procedures and not others).[11]

**B.      The Court Should Supervise Compliance with Its Injunction in Light of Ongoing Disputes Between the Parties and Defendants' Compliance Failures to Date**

Since completing briefing on the pending Motion to Enforce, Defendants' slow pace of compliance with the PI and illogical interpretations of the Orders continue to prejudice class members' access to PI-related relief. The parties have met-and-conferred repeatedly over issues continuing to arise from Defendants' attempts at implementation of the Orders. Despite these good-faith efforts to resolve disputes, the parties have reached an impasse over the meaning of certain provisions of the Orders. Failure to resolve these fundamental disagreements in a timely manner threatens access to PI-related relief for certain class members and limits Plaintiffs' ability to move forward with their efforts to notify and protect the rights of PI class members. In addition to the many unresolved disputes raised in the pending Motion

---

[11] Nor does the pendency of Defendants' appeal of the Clarification Order change this analysis. *State v. Trump*, 263 F. Supp. 3d 1049, 1056 (D. Haw.) (Fed. R. Civ. P. 62(c) "allows this Court to issue further orders with respect to an injunction it issued, notwithstanding appeal, in order to preserve the status quo or ensure compliance with its earlier orders.") (citing *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001)), *aff'd*, 871 F.3d 646 (9th Cir. 2017).

to Enforce, Plaintiffs have identified the following disputes regarding Defendants' compliance with the Orders.

### 1. Identification and Reopening or Reconsideration of Negative CFI Cases

To date, Defendants have not yet finalized, let alone implemented, procedures for the identification (under Paragraphs 2 and 4 of the Clarification Order) and reopening or reconsideration (under Paragraph 2 of the Clarification Order) of cases of potential PI class members who were subject to expedited removal and ordered removed following negative credible fear determinations—Groups (1)(b) and (1)(c) identified above.[12] Cassler Decl., ¶ 4(b). Defendants' continuing delay on this point constitutes a failure to comply with the Orders.

After repeated requests from Plaintiffs, and after Plaintiffs stated that they planned to file this Motion, Defendants first sketched out tentative procedures for such cases on August 4, 2021, but they failed to provide a date certain for finalizing these procedures. Cassler Decl., ¶¶ 4(b). This Court's Clarification Order included a clear directive that Defendants and EOIR must take "immediate affirmative steps" to reopen PI class members' cases *and* that this duty includes "identifying affected class members." Dkt. 605 at 24-25. Nearly a year after issuance of the Clarification Order, mere sketched-out, tentative procedures for an entire subset of PI class members constitutes a blatant disregard for compliance with the Court's Orders and requires Court intervention.

---

[12] As noted above, Defendants have implemented procedures for Group (1)(a)—potential PI class members in DHS custody who are subject to imminent removal; those individuals receive a USCIS screening to determine PI class membership. *See generally* Dkt. 695-3. However, these procedures exclude all potential PI class members who received negative CFI determinations and either (1) were already physically removed (Group (1)(c)), which likely encompasses a large portion of the PI class given the time that has passed since the Court issued its Orders, or (2) are not currently subject to imminent removal (Group (1)(b)).

1    The little information Plaintiffs do have about Defendants' tentative

2    procedures for reopening Negative CFI cases suggests two related disputes specific

3    to Group (1)(c), those located outside the United States. First, Defendants have

4    indicated that they do not consider themselves required to take any "immediate,

5    affirmative steps" to reopen such cases unless and until Plaintiffs send notice to such

6    individuals, who must then self-identify as potential PI class members by somehow

7    informing Defendants. Cassler Decl., ¶¶ 4(b), 5(d). This means that in some cases,

8    Defendants will possess information demonstrating PI class membership *and*

9    entitlement to relief under the PI, such as metering waitlists, CFI notes, or I-213

10   notations, but Defendants will not affirmatively reopen or reconsider the case unless

11   and until the PI class member independently self-identifies. Defendants' position

12   impermissibly transfers the government's *affirmative* duty to reopen and reconsider

13   PI class members' cases to the PI class members themselves, requiring PI class

14   members to "raise their hand" and self-identify to receive PI-related relief.

15       Second, in cases where DHS records do not show whether a potential PI class

16   member in Group (1)(c) fits within the class definition, Defendants have indicated

17   that they do not plan to solicit PI class membership information. Cassler Decl.,

18   ¶¶ 4(b), 5(d). Allowing Defendants to forgo their obligation to affirmatively identify

19   potential PI class members in Group (1)(c), including soliciting PI class membership

20   information, would allow Defendants to benefit from the "deficiencies in their own

21   recordkeeping," *i.e.*, their failure to comprehensively track metering data and their

22   refusal to obtain the metering waitlists that made metering possible. Dkt. 605 at 23

23   n.6. As the Court has previously noted, "the [PI] class is based on a metering system

24   established by Defendants and . . . Defendants relied on lists managed by the Mexican

25   Government to facilitate metering. . . . It therefore does not follow that determining

26   who was subject to metering for purposes of complying with the Preliminary

27   Injunction now presents an insurmountable task." *Id.* In light of their acknowledged

28   failure to keep records of individuals who were metered, Defendants cannot credibly

16

assert that they have sought to affirmatively identify PI class members for reopening relief when Defendants refuse even to solicit evidence of PI class membership.

Defendants' failure to implement reopening or reconsideration procedures for Negative CFI PI class members (Groups 1(b) and 1(c)) is especially noteworthy because no other legal mechanism exists for these groups to assert PI class membership: there is no established "motion to reopen" process for a person ordered removed in expedited removal proceedings. Defendants' inaction has left this group of PI class members without any method to access the relief to which they are entitled, and they are prejudiced each day that they continue to be denied access to the U.S. asylum process. Court oversight is essential to avoid any further delay in making PI relief available to this group of PI class members.

2. *Identification and Reopening or Reconsideration of Immigration Court Denial Cases*

For potential PI class members to whom the Asylum Ban was applied in immigration court proceedings, the government is in the process of implementing a flawed set of case review procedures (ROP class membership review) that purport to comply with its duties under Paragraphs 2 and 4 of the Clarification Order. *See generally* Dkt. 695-6; Cassler Decl., ¶¶ 5(b), 6(a)-(b). Because of the way these procedures have been designed, some PI class members in Groups (2)(b) and (2)(c) will likely fall through the cracks.

First, Defendants have not been able to say with certainty that ROP class membership review will include examining all relevant records in DHS's possession. Cassler Decl., ¶ 6(a). EOIR's efforts to identify PI class members is based solely on the ROP (essentially, the immigration court case file). Metering information would not be included in an individual's ROP, even if it is otherwise in DHS's possession, unless that evidence was filed with EOIR during the individual's immigration

proceedings.[13] Cassler Decl., ¶ 5(b). Under Defendants' ROP class membership review procedures, if the ROP does not contain evidence sufficient to make a determination of class membership, the case is submitted to EOIR's Office of General Counsel (OGC) for secondary review. *Id.* ¶ 6(a). Though Plaintiffs have requested confirmation that OGC secondary review will include systematic review of relevant DHS records beyond those contained in the ROP (e.g. metering waitlists), Defendants were unable to confirm this as of the parties' last meet-and-confer. *Id.* In practice, this means that Defendants may possess evidence that an individual was metered prior to July 16, 2019—such as presence on a waitlist, an I-213 notation, or a statement made during a credible fear interview—yet Defendants are not systematically reviewing these sources to identify PI class members. Defendants' failure to do so violates Paragraphs 2 and 4 of the Clarification Order.

Second, as is the case with the tentative procedures for Group (1)(c) discussed above, in cases where ROP and OGC review do not show whether a potential PI class member in Group (2)(b) or (2)(c) fits within the PI class definition, Defendants are not soliciting PI class membership information from these groups, or even informing members of these groups that their cases are being reviewed. Cassler Decl., ¶ 5(b). Defendants' failure to do so for these groups, as for Group (1)(c), violates Paragraphs 2 and 4 of the Clarification Order. *See supra* part IV.B.1.

Lastly, in addition to the requirement that Defendants and EOIR take "affirmative steps" to reopen or reconsider applications of the Asylum Ban to PI class members, Paragraph 2 also contemplates a mechanism by which PI class members may assert a right to PI relief. *See* Dkt. 605 at 25 (requiring DHS attorneys

---

[13] There would have been little reason for metering information to be filed with EOIR when the Asylum Ban was in full effect because at that time, it was not relevant to access to the asylum process or eligibility for relief. It is likely that there are also cases in which the PI and the Asylum Ban were both in effect and EOIR denied asylum without considering metering information or the effect of the PI.

18

1   representing the government to "not oppose[] such reopening or reconsideration").

2   The parties appear to agree that it makes sense for there to be a way for potential PI

3   class members to seek reopening of their immigration court proceedings. Cassler

4   Decl., ¶ 6(b). [14] However, the procedural mechanism available to do so for those to

5   whom the Asylum Ban was applied in immigration court proceedings (Groups 2(a),

6   (b), or (c)) is still unclear. *Id.*

7        Defendants have repeatedly stated that class members can seek reopening

8   through the existing statutory motion to reopen process, which is set forth in the

9   immigration statute and regulations. *See* 8 U.S.C. § 1229a(c)(7); 8 C.F.R. § 103.5.

10  The motion to reopen defined by statute and regulation is a formal motion filed with

11  EOIR that is "complicated, time-consuming, and expensive." *Hamama v. Adducci*,

12  912 F.3d 869, 884 (6th Cir. 2018), *cert. denied* 141 S. Ct. 188 (2020); *see also*

13  *Chhoeun v. Marin*, 306 F. Supp. 3d 1147, 1156 (C.D. Cal. 2018) ("Filing a motion

14  to reopen is a complicated and often prolonged process."). A normal motion to reopen

15  carries a number of onerous procedural requirements, including that an individual

16  may generally file only one motion to reopen, 8 U.S.C. § 1229a(c)(7)(A); that it must

17  be filed within a specific timeframe, 8 U.S.C. § 1229a(c)(7)(C)(i); if the motion is

18  based on new evidence, that the "evidence sought to be offered is material and was

19  not available and could not have been discovered or presented at the former hearing,"

20  8 C.F.R. §§ 1003.2(c), 1003.23(b)(3); and that the motion and any accompanying

21  documents must be in English or accompanied by a certified English translation, 8

22  C.F.R. §§ 1003.33, 1003.23(b)(1)(i). Motions must also be formatted to comply with

23  the Immigration Court or BIA practice manuals and be properly served on opposing

24

25

26  [14] Plaintiffs do not believe an adequate PI Motion to Reopen process would be a

27  sufficient substitute for Defendants affirmatively identifying and reopening PI class

28  members' cases, as separately required by Paragraph 2.

19

government counsel.[15] Requiring potential PI class members to file motions to reopen to assert they are entitled to relief under the Orders will prevent many from obtaining such relief due to the difficulty of filing such motions, particularly for those without counsel, those who do not speak, read, or write English, and those who are outside the United States.

While on the one hand repeatedly referring to the procedural mechanism by which potential PI class members may affirmatively seek PI relief as a "motion to reopen," Defendants have also indicated that they do not consider all of the statutory and regulatory motion-to-reopen requirements to be applicable to Motions to Reopen asserting PI class membership ("PI Motion to Reopen"). Cassler Decl., ¶ 6(b). For example, the government has represented that EOIR will accept such motions even if they are filed after the applicable deadline and even if they would otherwise be number-barred under the statute. *Id.*; Dkt. 695-6, ¶ 6. Defendants have represented that a PI Motion to Reopen "need not be complicated," Cassler Decl., ¶ 6(b), but the rules governing motions to reopen are just that, *see Hamama*, 912 F.3d at 884; *Chhoeun*, 306 F. Supp. 3d at 1156. During the parties' most recent conferral on August 4, 2021, Defendants communicated for the first time that the government would be open to excusing other requirements governing regular motions to reopen for purposes of PI Motions to Reopen, but the contours of these exceptions are not clear. Defendants have not provided comprehensive details about the requirements for a PI Motion to Reopen or how to distinguish a PI Motion to Reopen from a normal motion to reopen, such that the relevant adjudicator is aware that special rules apply to the motion. (Nor have Defendants indicated how they will ensure that a PI Motion to Reopen does not preclude a subsequent motion to reopen on other grounds.)

---

[15] *See also* EOIR, U.S. Department of Justice, *Immigration Court Practice Manual* § 5.7, https://www.justice.gov/eoir/eoir-policy-manual/5/7 (last updated Dec. 30, 2020) (describing additional procedural requirements for motions to reopen).

Plaintiffs agree that the statutory and regulatory requirements of a standard motion to reopen are inappropriate for the task at hand. However, the specific requirements of a PI Motion to Reopen must be made clear to the parties, potential PI class members, adjudicators, and other stakeholders. Otherwise, PI class members will remain unable to access relief. While the parties can likely reach agreement about the contours of a PI Motion to Reopen, Plaintiffs seek Court oversight to ensure that these negotiations are conducted and concluded in a timely manner.

### 3. Notice to Potential PI Class Members in Custody or Administrative Proceedings

Defendants are in blatant violation of the Clarification Order regarding notice. Paragraph 3 of the Clarification Order directs Defendants to "inform identified class members in administrative proceedings before USCIS or EOIR, or in DHS custody, of their potential class membership and the existence and import of the preliminary injunction." Dkt. 605 at 25. The most alarming aspect of Defendants' conduct regarding notice is that Defendants have not finalized, let alone implemented, procedures for providing the required notice; nor have they indicated to Plaintiffs that they have even a tentative plan for providing such notice. Cassler Decl., ¶ 4(a).[16]

While Plaintiffs do not know how Defendants ultimately intend to provide notice, two disputes regarding the notice requirement have surfaced in the parties' conferrals separate and apart from Defendants' abject failure to provide such notice to date. First, it should go without saying that the Court's order was effective as of the date of the order—October 30, 2020. Nearly ten months have since passed, during which PI class members were in custody or proceedings that have since ended. The passage of time, coupled with the natural termination of custody and proceedings,

---

[16] The sole exception is for potential PI class members in DHS custody subject to imminent removal, who receive a document advising them of their upcoming USCIS screening. As noted above, Plaintiffs dispute the adequacy of this document in their pending Motion to Enforce.

PLS' MOT. FOR OVERSIGHT

means the group of potential PI class members currently in custody or proceedings is naturally dwindling in size. Yet, despite these realities, Defendants have made no effort to provide notice to those entitled to receive it over the past ten months. Plaintiffs' position is that Defendants are required to provide Paragraph 3 notice to all potential PI class members who were in custody or proceedings as of October 30, 2020, or at any time thereafter. Defendants have indicated their disagreement with this position but have not proposed any alternative cut-off date or other method of determining who is entitled to notice from Defendants. Cassler Decl., ¶ 5(a).

Second, Plaintiffs further assert that the group entitled to notice from Defendants includes those who, on or after October 30, 2020, had pending motions to reopen before EOIR or pending petitions for review of final removal orders in the federal courts of appeals. This position is consistent with the Court's finding that it is "appropriate for Defendants to make reasonable efforts to aid in identifying potential class members at all stages of removal proceedings"—particularly where Defendants have superior access to "contact details of class members and can facilitate the notification process." Dkt. 605 at 22. In cases where a motion to reopen or petition for review is pending, DHS or EOIR is directly involved as either the opposing party, the adjudicator, or both. In this respect, PI class members with pending motions to reopen before EOIR or pending petitions for review of final removal orders are in a similar position to those currently before the immigration court or before the BIA in the first instance. But, in the parties' conferral on August 4, 2021, Defendants indicated their disagreement with Plaintiffs' positions, maintaining that pending petitions for review or motions to reopen are not encompassed within Defendants' notice obligations under Paragraph 3 of the Clarification Order. Cassler Decl., ¶ 5(a).

Court oversight is appropriate to resolve these disputes in a timely manner, to ensure potential PI class members receive notice from Defendants as intended by the Court, and to prevent Defendants from continuing to evade their duty to comply with

22

1    a court order through further intransigence and delay.

2                    *4. Procedures for Return to the U.S. After Reopening*

3            Under the procedures currently in place for identification, reopening, and

4    reconsideration of members of Group (2)(c) (Asylum Ban applied in immigration

5    court proceedings and PI class member is now outside the United States), Defendants

6    are moving forward with reopening of select cases following the ROP review

7    process. But EOIR has started scheduling hearings in such cases even though

8    Defendants have not yet finalized, let alone implemented, procedures to facilitate the

9    return of affected PI class members to the United States. Cassler Decl., ¶ 4(d).

10   Plaintiffs initially raised this issue with Defendants in early May 2021, after a PI class

11   member's proceedings were reopened and the class member was scheduled for an

12   immigration court hearing while still outside the United States. *Id.* On June 2, 2021,

13   Defendants emailed Plaintiffs stating that Defendants would provide updates on

14   applicable procedures the following week. *Id*. Despite Plaintiffs' multiple inquiries

15   to Defendants since that date, Defendants have yet to finalize these procedures. *Id*.[17]

16   In the meantime, deported class members must continue waiting outside the United

17   States, often in dangerous conditions, and their removal proceedings, though

18   reopened, are on hold. By keeping this group of PI class members in limbo,

19   Defendants continue to block their access to the U.S. asylum process and are failing

20   to fully comply with their duty to reopen such cases.

21           Plaintiffs request Court oversight of this aspect of compliance with the Orders

22   both to ensure that a process is created without additional delay and to address any

23   problems with the forthcoming procedures as they arise, in the interest of ensuring

24   that PI class members in Group (2)(c) receive the relief to which they are entitled.[18]

25   ───────────────

26   [17] On August 4, 2021, Defendants shared select details of a tentative plan but did not
     provide a date certain by which the final plan would be implemented.

27   [18] Given that members of Group (1)(c) are also outside the United States, finalizing
28   a plan for return is also necessary to ensure that they are able to access relief under

                                         23

### 5. *Failure to Systematically Consult Border Patrol's I-213 Notations*

Paragraph 4 of the Clarification Order requires Defendants to "make all reasonable efforts to identify class members, including" reviewing notations on Form I-213 made by OFO officers (who inspect and process migrants at POEs) and Border Patrol ("BP") officers (who process migrants apprehended between POEs). Dkt. 605 at 5, 25. The parties' current dispute relates specifically to I-213 notations entered by Border Patrol. Plaintiffs' position is that the Clarification Order requires Defendants to locate, gather, and review these notations, or at least to cross-reference them with the lists of potential PI class members in their possession, as described in Paragraph 4 of the Clarification Order. Cassler Decl., ¶ 5(c); *see* Dkt. 605 at 23-25.

During the parties' conferral on August 4, 2021, Defendants indicated that they review such notations in the course of other ongoing file review for determining PI class membership, rather than as an independent source of information indicating a case may merit review for PI class membership in the first instance. Cassler Decl., ¶ 5(c). Based on the information Plaintiffs have at this time, only a limited set of potential PI class members' files are the subject of ongoing review—those of individuals ordered removed in immigration court proceedings and subject to the ongoing ROP class membership review (Group (2)(b), whose ROPs may or may not contain Form I-213) and those of individuals subject to imminent removal (Groups (1)(a) and (2)(a)). In cases where Border Patrol's I-213 notation is the only indication in DHS's possession of potential PI class membership, Plaintiffs' understanding is that Defendants do not currently have a mechanism in place to trigger case review for potential reopening.

In practice, this means that there are likely PI class members who, when apprehended, indicated to a Border Patrol officer that they were metered before July

---

the Orders when procedures for reopening or reconsidering their cases are finalized and implemented. *See supra* Section IV.B.1.

16, 2019, that the officer recorded this information on Form I-213, but that those records will not be used to identify these individuals as PI class members unless the I-213 is incidentally reviewed in the context of other ongoing file review to identify potential PI class members. In cases where the Border Patrol I-213 notation is the only evidence of PI class membership in DHS's possession, the current process will exclude such individuals from Defendants' identification procedures, in direct violation of Paragraph 4 of the Clarification Order.

***

Since the PI was issued, Defendants have provided a slow trickle of information to Plaintiffs about their PI compliance plans. As Defendants have slowly revealed their ever-evolving procedures, it has become clear that certain of these procedures—or the lack thereof—defy the express terms and intent of the Orders. And Defendants have been unable to answer some of Plaintiffs' questions regarding compliance, while providing only tentative answers to others. Cassler Decl., ¶¶ 4-6. Under these circumstances, the Court is empowered to supervise compliance with its preliminary injunction, and even to modify the injunction if necessary. *See Trump*, 871 F.3d at 654; *A&M Records*, 284 F.3d at 1098. Moreover, given the slow progress of compliance to date, Plaintiffs anticipate future disputes will arise as Defendants unveil new aspects of their PI compliance efforts. Therefore, Plaintiffs request regular status conferences with Judge Crawford to facilitate the resolution of current and future disputes in a manner the Court deems appropriate. Although certain areas of disagreement may require the issuance of a court order or other appropriate judicial intervention, Plaintiffs seek a more informal Court oversight mechanism to hasten compliance without unnecessarily burdening the Court with formal motion after formal motion. The requested Court intervention is needed to ensure Defendants' compliance with the PI and to "provide redress to all those metered [before July 16, 2019] in order to restore equity," Dkt. 605 at 11.

1

## <u>CONCLUSION</u>

2

For the foregoing reasons, Plaintiffs' motion should be granted.

3

4

Dated: August 25, 2021

MAYER BROWN LLP

5

Matthew H. Marmolejo
Ori Lev
Stephen M. Medlock

6

7

SOUTHERN POVERTY LAW
CENTER

8

Melissa Crow
Sarah Rich
Rebecca Cassler

9

10

CENTER FOR CONSTITUTIONAL
RIGHTS

11

Baher Azmy
Angelo Guisado

12

AMERICAN IMMIGRATION
COUNCIL

13

Karolina Walters
Gianna Borroto

14

15

By: */s/ Ori Lev*

16

Ori Lev

17

*Attorneys for Plaintiffs*

18

19

20

21

22

23

24

25

26

27

28

26

**CERTIFICATE OF SERVICE**

I certify that I caused a copy of the foregoing document to be served on all counsel via the Court's CM/ECF system.

Dated: August 25, 2021                    MAYER BROWN LLP

By  */s/ Ori Lev*