1  BRIAN M. BOYNTON
2  Acting Assistant Attorney General
   WILLIAM C. PEACHEY
3  Director
4  KATHERINE J. SHINNERS (DC 978141)
   Senior Litigation Counsel
5  ALEXANDER J. HALASKA (IL 6327002)
6  Trial Attorney
   United States Department of Justice
7  Civil Division
8  Office of Immigration Litigation
   District Court Section
9  P.O. Box 868, Ben Franklin Station
10 Washington, D.C. 20044
   Tel: (202) 307-8704 | Fax: (202) 305-7000
11 alexander.j.halaska@usdoj.gov
12
13 *Counsel for Defendants*
14
                **UNITED STATES DISTRICT COURT**
15           **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
                         **(San Diego)**
16

17 | AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
18 | | |
   | *Plaintiffs*, | Hon. Cynthia A. Bashant |
19 | | |
20 | v. | **DEFENDANTS' SUPPLEMENTAL** |
21 | | **MEMORANDUM CONCERNING** |
   | ALEJANDRO MAYORKAS, Secretary | **PLAINTIFFS' APA CLAIMS** |
22 | of Homeland Security, *et al.*, in their | |
23 | official capacities,* | |
24 | | |
   | *Defendants*. | |
25

26
27 _____

28 * Pursuant to Federal Rule of Civil Procedure 25(d), Secretary Mayorkas is automat-
   ically substituted as a Defendant for former Acting Secretary Wolf.

Pursuant to the Court's August 20, 2021 Order (ECF No. 733), Defendants submit supplemental briefing with respect to the Parties' Cross-Motions for Summary Judgment (MSJs).

## I.   Question 1: There Is No Administrative Record for the Non-Existent "Turnback Policy" Challenged in Plaintiffs' § 706(2) Claim.

Plaintiffs' APA Claims are not suitable for evaluation on an administrative record because Plaintiffs failed to meet the threshold requirement of identifying a discrete agency action that is amenable to classwide resolution under the APA. Indeed, Plaintiffs' APA claims challenge a "Turnback Policy" for which Defendants cannot designate an administrative record.

First, as Defendants argued in their MSJ, the "Turnback Policy," as Plaintiffs define it, is not sufficiently discrete to enable APA review. Defs.' Memorandum in Supp. of Mot. for Summ. J. (Defs.' Mem.) at 32–35. The purported policy that Plaintiffs address is, in fact, an amalgamation of disparate actions and decisions with different factual bases that is not amenable to APA review. Defs.' Mem. at 34; *see* Pls.' Opp. to Defs.' Mot. (Pls.' Opp.) at 6 (confirming that the "Turnback Policy," as Plaintiffs envision it, consists of a number of different decisions and actions, including actions that contradict written policy and "a variety of tactics"). Given the disparate decisions and actions challenged, the government cannot compile a relevant administrative record that could resolve Plaintiffs' APA claims. An administrative record generally consists of materials the agency developed and considered, directly or indirectly, in making the challenged decision. *See Goffney v. Becerra*, 995 F.3d 737, 747 (9th Cir. 2021) (stating that the record "includes everything that was before the agency pertaining to the merits of its decision," citing *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993)), and "consists of all documents and materials directly or indirectly considered by agency decision-makers," citing *Thompson v. United States Dep't of Labor*, 885 F.2d 551, 555–56 (9th Cir. 1989)). When the challenged action or decision does not exist in the form

alleged, as here, the agency cannot compile such material. Put another way, in the absence of an identified agency decision, there is no administrative record to consider. Defendants thus produced voluminous document discovery and answered numerous interrogatories and requests for admission concerning CBP's operations and metering decisions and guidance since 2016.

Defendants acknowledge, however, that both CBP and DHS have made decisions and issued guidance concerning metering (or queue management) practices, largely after this lawsuit was filed, that apply to POEs along the Southwest land border during the relevant time period. *See* Defs.' Mem. at 35, 40, 42–43, 45–46. But these borderwide decisions—primarily, the 2016 decision to expand metering to ports of entry beyond San Ysidro, the April 2018 metering guidance, and the June 2018 and November 2019 Prioritization-Based Queue Management Memoranda[1]— do not equate to the overarching "Turnback Policy" defined by Plaintiffs, nor have Plaintiffs identified these particular decisions as the focus of their APA challenge or challenged them on their individual merits. Plaintiffs instead challenge the government's authority to engage in "metering" writ large, rather than challenging a particular agency guidance or policy action that can be evaluated on its merits. To respond to Plaintiffs' arguments in their MSJ that the so-called "Turnback Policy" was arbitrary and capricious, however, Defendants did point to borderwide metering decisions made, and guidance issued, over the course of the past five years, which were all supported by the contemporaneously-stated justifications and the facts in front of the agency at the time, demonstrating that these decisions easily satisfy arbitrary-and-capricious review. *See* Defs.' Mem. at 44–46; *see also id.* at 10–29:9 and 30:5–31:10.

Second, Plaintiffs also claim each individual "turnback" for each member of the certified class constitutes agency action unlawfully withheld under 5 U.S.C.

---

[1] Additionally, CBP issued a new metering guidance memorandum on April 30, 2020. *See* Joint Statement of Undisputed Facts ("JSUF") (ECF No. 619) ¶ 265.

DEFS.' SUPPL. BRIEF
Case No. 3:17-cv-02366-BAS-KSC

§ 706(1). Pls.' Mem. at 19; *see also id.* at 21. The administrative record for each "turnback," however, would be specific to the port's operations and capacity on any given day, and, therefore, would not be subject to reasonable production. Although the Court indicated it could evaluate these turnbacks as a classwide matter, this holding was based on the assumption that all were done pursuant to the same overarching policy that itself could be evaluated on a common basis. *See* Order Granting Plaintiffs' Motion for Class Certification (ECF No. 513), at 11 ("The different factual circumstances between each class member's particular experience does not destroy commonality because there is still a common underlying legal question regarding whether each and every class member was illegally denied access to the asylum system because of Defendants' overarching policy."). Yet there is no overarching "Turnback Policy." Nor is there an overarching agency policy to withhold agency action, as demonstrated by CBP's continued processing of undocumented noncitizens for asylum contemporaneously with the implementation of queue management. *See* Def. MSJ at 39–40.

II.   **Question 2: Record Review Should Not Be Necessary to Resolve Defendants' Motion for Summary Judgment. If Necessary, However, the Court Could Otherwise Consider the Records of the Borderwide Relevant Metering Decisions to Reject Plaintiffs' "Arbitrary and Capricious" Claims.**

The Court can decide the APA claims in favor of Defendants without record review for the reasons set forth in their MSJ, namely: (1) after discovery, Plaintiffs fail to demonstrate the existence of a discrete, final agency action in the form of an overarching "Turnback Policy" that can be challenged and resolved under the APA; (2) the borderwide metering decisions are not final agency action; (3) Plaintiffs have not shown the existence of a policy to withhold agency action; and, (4) metering is

statutorily permissible and does not contravene the statutory scheme governing in-spection at POEs.[2] *See, e.g., R.I.L.-R v. Johnson*, 80 F. Supp. 3d 164, 174 (D.D.C. 2015) (declining to acknowledge an alleged, informal "No-Release Policy" because there was extra-record statistical evidence demonstrating that such a blanket policy did not exist).

However, should the Court proceed to evaluate the documented borderwide metering decisions identified above and determine that record evidence is warranted to evaluate those decisions under arbitrary-and-capricious review to assess whether they are the product of reasoned decisionmaking, Defendants submit that the follow-ing materials submitted with the parties' MSJs may be able to fulfill the purpose of an administrative record with respect to these particular borderwide decisions, as they demonstrate what the relevant agencies considered at the time of the relevant borderwide decisions. *See, e.g., San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014)[3]:

(1) The facts set forth and exhibits cited in Defendants' MSJ concerning the factual circumstances giving rise to the use of metering in 2016, and to the issuance of the metering guidance and memoranda in 2018 and 2019, are relevant to each borderwide metering decision, to the extent they predate that decision. *See* Defs. Mem. at 10–29:9 and 30:5–31:10; Joint Statement of Undisputed Facts ("JSUF") (ECF No. 619) ¶¶ 31–33, 35–41, 44–59,

---

[2] Defendants also preserved their arguments that metering is categorically lawful because there is no duty to inspect or process individuals who have yet to enter the United States, *see* Defs.' Mem. at 37–39, but Defendants recognize that the Court previously rejected this argument.

[3] Although these materials were produced in discovery rather than as a result of the formal certification and production of an administrative record, the government does not concede that discovery is appropriate in cases challenging informal agency ac-tion in lieu of production of an administrative record. Rather, Defendants point to relevant materials in the discovery record under the unusual circumstances of this particular case.

DEFS.' SUPPL. BRIEF
Case No. 3:17-cv-02366-BAS-KSC

64–69, 71, 76–85, 87–95, 97, 105–108, 111–114, 115–124, 127–128, 183–184, 199–218, 220–224, 231–232, 239–243, 267–268.

(2) The documents evidencing or memorializing the borderwide metering decisions and the stated reasons therefor:

    a. The November 2016 metering decision, emails located at Plaintiffs' Exhibits 68 and 69 (JSUF ¶¶ 140, 142, 144; *see also id.* at 148);

    b. The April 2018 Metering Guidance, Defendants' Exhibit 2; *see also* Plaintiffs' Exhibit 81 (JSUF ¶ 219);

    c. The June 2018 Prioritization-Based Queue Management Memorandum, Defendants' Exhibit 3; and

    d. The November 2019 Prioritization-Based Queue Management Memorandum, Defendants' Exhibit 5.

(3) Statistics regarding the numbers of inadmissible noncitizens presenting themselves at POEs, to the extent those numbers predate the relevant decisions. *See* Defs.' Ex. 4.

(4) The deposition testimony of Todd Owen, Plaintiffs' Exhibit 10 at 199:10–208:1; 215:9–219:15; 312:20–319:8, with respect to the November 2016 metering decision, the April 2018 metering guidance, and the June 2018 and November 2019 Prioritization-Based Queue Management memos. *See Clifford v. Pena,* 77 F.3d 1414, 1418 (D.C. Cir. 1996) (approving the admission of agency declarations that "merely illuminate reasons obscured but implicit in the administrative record"); *see also Asarco, Inc. v. U.S. Env't Prot. Agency*, 616 F.2d 1153, 1159 (9th Cir. 1980) (stating that explanatory testimony from agency officials involved in decisionmaking may be proper in some APA cases).

(5) Declarations and testimony from agency officials explaining the operations of POEs. *See, e.g.*, Defs.' Mem. at 28–29; JSUF ¶¶ 225–226; *Clifford*, 77 F.3d at 1418; *Asarco,* 616 F.2d at 1159.

DEFS.' SUPPL. BRIEF
Case No. 3:17-cv-02366-BAS-KSC

The Court should not consider the materials proffered by Plaintiffs as purported evidence of the agency's "motivations," which were not before the agency when the decisions were made. *See* Defs.' Mem. at 51; *see also* Pls.' Mem. at 26:20–27:14, 27:19–28:19, 29:6–14, 30:1–4, 8–14. As Defendants have argued, arbitrary-and-capricious review "is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record," which limitation "reflects the recognition that further judicial inquiry into 'executive motivation' represents 'a substantial intrusion into the workings of another branch of Government and should normally be avoided.' *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019) (quoting *Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977)). The extra-record material Plaintiffs cite does not suggest or constitute evidence of bad faith in decision-making, for the reasons previously presented. *See* Defs.' Mem. at 46–50, 51–52.

Finally, if the Court determines the available record is insufficient, Defendants respectfully submit that the proper remedy is to remand to the agency for further explanation. *See Dep't of Commerce*, 139 S. Ct. at 2576 (upon determination that the given rationale for agency action was pretextual, affirming decision to remand to agency for additional explanation); *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

//

DEFS.' SUPPL. BRIEF
Case No. 3:17-cv-02366-BAS-KSC

DATED: August 25, 2021           Respectfully submitted,

                                 BRIAN M. BOYNTON
                                 Acting Assistant Attorney General

                                 WILLIAM C. PEACHEY
                                 Director

                                 KATHERINE J. SHINNERS
                                 Senior Litigation Counsel

                                 */s/ Alexander J. Halaska*
                                 ALEXANDER J. HALASKA
                                 Trial Attorney
                                 United States Department of Justice
                                 Civil Division
                                 Office of Immigration Litigation
                                 District Court Section
                                 P.O. Box 868, Ben Franklin Station
                                 Washington, D.C. 20044
                                 Tel: (202) 307-8704 | Fax: (202) 305-7000
                                 alexander.j.halaska@usdoj.gov

                                 *Counsel for Defendants*

DEFS.' SUPPL. BRIEF
Case No. 3:17-cv-02366-BAS-KSC

## CERTIFICATE OF SERVICE

*Al Otro Lado v. Mayorkas*, No. 17-cv-02366-BAS-KSC (S.D. Cal.)

I certify that I served a copy of this document on the Court and all parties by filing this document with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all counsel of record.

DATED: August 25, 2021          Respectfully submitted,

                               */s/ Alexander J. Halaska*
                               ALEXANDER J. HALASKA
                               Trial Attorney
                               United States Department of Justice