Volume 1 of 1

Pages 1 - 37

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Before the Honorable Cynthia A. Bashant, District Judge

```
_____
                                 )
AL OTRO LADO, INC., ET AL.,      )
                                 ) 3:17-cv-02366-BAS-KSC
               Plaintiffs,       )
                                 )
    VS.                          )
                                 )
McALEENAN, ET AL.,               )
                                 )
               Defendants.       )
_____)
```

San Diego, California
Tuesday, August 31, 2021

TRANSCRIPT OF MOTIONS HEARING

APPEARANCES:

For Plaintiffs:      The Center for Constitution Rights
                     666 Broadway, 7th Floor
                     New York, New York  10012
             BY:  BAHER AMZY, ESQ. (In Person)
                  ELSA M. MOTA, ESQ. (In Person)
                  ATTORNEYS AT LAW

                     Mayer Brown, LLP
                     1999 K Street NW
                     Washington, D.C.  20006
             BY:  STEPHEN MEDLOCK, ESQ. (Via Zoom)
                  ATTORNEY AT LAW

                     (Appearances continued on following page.)

Reported By:         Anne M. Roldan, RPR, CRR, CSR No. 13095
                     Official Court Reporter

<u>APPEARANCES</u>:  (CONTINUED)

For Plaintiffs:        Southern Poverty Law Center
                       150 East Ponce De Leon Avenue, Suite 340
                       Decatur, Georgia  30030
              BY:  SARAH MARION RICH, ESQ. (Via Zoom)
                   REBECCA CASSLER, ESQ. (Via Zoom)
                   MELISSA CROW, ESQ. (Via Zoom)

                       American Immigration Council
                       1331 G Street NW, Suite 200
                       Washington, D.C.  20005
              BY:  KAROLINA J. WALTERS, ESQ. (Via Zoom)

                       Al Otro Lado, Inc.
                       511 E. San Ysidro Boulevard, Suite 333
                       San Ysidro, California  92173
              BY:  ERIKA PINHEIRO, ESQ. (In Person)
                   ATTORNEY AT LAW

For Defendants:        U.S. Department of Justice, Civil Division
                       Ben Franklin Station
                       P.O. Box 868
                       Washington, D.C.  20044
              BY:  ALEXANDER J. HALASKA, ESQ. (In Person)
                   DHRUMAN Y. SAMPAT, ESQ. (In Person)
                   CATHERINE SHINNERS, ESQ. (Via Zoom)

| | |
|---|---|
| 1 | **Tuesday - August 31, 2021**                              **10:06 a.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | -- o0o -- |
| 4 | **THE CLERK:**  Calling Matter No. 1, 17-cv-2366, Al Otro |
| 5 | Lado Inc., et al., vs. McAleenan et al., on calendar for |
| 6 | motion hearing. |
| 7 | **THE COURT:**  Counsel, can you state your appearances |
| 8 | for the record. |
| 9 | **MR. AZMY:**  Good morning, Your Honor.  Baher Azmy from |
| 10 | Center for Constitution Rights for plaintiffs, joined at |
| 11 | counsel table by my colleague, Elsa Mota, and the litigation |
| 12 | and policy director of Al Otro Lado, Erika Pinheiro.  And we |
| 13 | have a team on Zoom. |
| 14 | **THE COURT:**  Good morning. |
| 15 | **MR. MEDLOCK:**  Good morning, Your Honor.  Stephen |
| 16 | Medlock from Mayer Brown, LLP on behalf of plaintiffs. |
| 17 | **MS. CROW:**  Good morning, Your Honor.  Melissa Crow |
| 18 | from Southern Poverty Law Center on behalf of plaintiffs. |
| 19 | **MS. RICH:**  Good morning.  Sara Rich, Southern Poverty |
| 20 | Law Center, for plaintiffs. |
| 21 | **MS. CASSLER:**  Good morning, Your Honor.  Rebecca |
| 22 | Cassler from the Southern Poverty Law Center for the |
| 23 | plaintiffs. |
| 24 | **MS. WALTERS:**  Good morning, Your Honor.  Karolina |
| 25 | Walters from the American Immigration Council on behalf of |

1    plaintiffs.

2         **THE COURT:**  Does that cover it?

3         **MR. AZMY:**  Yes, Your Honor.  Just for -- so you know,

4    our proposed order of operations, my colleague Stephen Medlock

5    will be handling the majority of the argument around INA and

6    APA, and I will be covering due process, ATS, and proposed

7    remedies.

8         **THE COURT:**  Okay.

9         **MR. HALASKA:**  Good morning, Your Honor.  Alexander

10   Halaska on behalf of defendants, joined at counsel table by

11   Dhruman Sampak, and also Catherine Shinners from the

12   Department of Justice.

13        **THE COURT:**  Good morning.  This is set for the cross

14   summary judgment motions.  I think I'd like to hear from

15   plaintiff first, cover all the arguments -- I don't care what

16   order, if you want to have Mr. Medlock start, whatever

17   order -- and then I'll hear from defendants and hear all the

18   arguments.  And then if plaintiffs have any reply, I'll allow

19   the plaintiffs to reply.  I guess both sides should reply,

20   since it's cross summary judgment motions.

21        **MR. AZMY:**  I'll turn it over to Mr. Medlock.

22        **MR. MEDLOCK:**  Good morning, Your Honor.  Stephen

23   Medlock from Mayer Brown, LLP on behalf of plaintiffs.  As

24   Mr. Azmy mentioned, I'll be addressing the APA and INA claims.

25        While plaintiffs have several APA theories that warrant

1   summary judgment at this juncture, this Court can most readily

2   grant summary judgment in plaintiffs' favor based on

3   plaintiffs' claim under Section 706(2) of the APA.

4        As this Court found at the Motion to Dismiss stage, the

5   INA is clear:  There is no statutory limit on the number of

6   asylum seekers that the United States can inspect and process

7   at ports of entry.  And once an asylum seeker is in the

8   process of arriving at the United States at a port of entry,

9   defendants have a mandatory statutory duty to inspect and

10  process them under Sections 1158 and 1225 of the INA.

11       Defendants acted in excess of those statutorily delegated

12  powers by creating false discretion.  They created discretion

13  for CBP officers where none exists in the statute.  They

14  adopted a policy known as the "turnback policy" that gave CBP

15  officers the discretion to turn back asylum seekers that were

16  in the process of arriving in the United States.  And when

17  they gave and viewed those CBP officers with that false

18  discretion, Your Honor, they violated Section 706(2) of the

19  APA.  And on this count, there are no material facts in --

20  that are in genuine dispute.  There is no dispute that

21  defendants adopted a turnback policy.

22       First, they did so at the San Ysidro Port of Entry in the

23  spring of 2016.  Then they adopted a turnback policy that they

24  kept the -- decided not to put in writing in November 2016

25  that would apply to the entire border.  And then finally, in

```
 1   the spring of 2018 they memorialized and finalized that policy
 2   in two memoranda:  "Metering Guidance" and "Prioritization
 3   Based On Queue Management" memorandum.
 4       While the defendants raise many arguments, I think there
 5   are two -- it really boils down to two points:  One, they
 6   think that your analysis of the INA in the Motion to
 7   Dismiss --
 8            THE COURT:  You're kind of cutting out a little bit
 9   there, Counsel.  You think that your analysis of the INA is
10   what?
11            MR. MEDLOCK:  Oh, I'm sorry, Your Honor.  I apologize
12   for cutting out there.
13       I was referring to defendants' arguments.  So defendants'
14   arguments really boil down to two points:  One, they think
15   your analysis of the INA at the Motion to Dismiss stage was
16   wrong.  And that's demonstrably false.  A motions panel of the
17   Ninth Circuit has looked at your analysis of Sections 1158 and
18   1255 of the INA and concluded it is correct and has
19   considerable force.
20       And secondly, the defendants argue that they thought it
21   was preferable to, as a policy matter, give CBP officers the
22   false discretion, but there is no legal word for them in
23   Sections 1158 and 1225 of the INA.  Once an asylum seeker is
24   in the process of arriving in the United States, they must be
25   inspected and processed.
```

 1          And I think that this Court could go where the statute

 2     leads it.  As Justice Scalia stated in *Utility Air Regulatory*

 3     *Group vs. EPA*, Executive Branch agencies do not have, quote,

 4     the "power to revise clear statutory terms that turn out not

 5     to work in practice."  And more recently, the Ninth Circuit in

 6     *East Bay Sanctuary Covenant vs. Trump* held that Executive

 7     Branch agencies may not, quote, "abandon," end quote, a

 8     detailed regulatory scheme prescribed by Congress simply

 9     because they think it is not working well.

10          And that's further backed up, Your Honor, by the Supreme

11     Court's recent holding in --

12          **THE COURT:**  I'm sorry, I'm sorry, "is further backed

13     up" -- for some reason, I don't know if it's the way you turn

14     your head, but I hear you very clearly, and then when you move

15     your head you sort of cut out a little bit.

16          **MR. MEDLOCK:**  I'm sorry, Your Honor.

17          **THE COURT:**  "That's further backed up by the Supreme

18     Court's recent holding" --

19          **MR. MEDLOCK:**  In *Niz-Chavez*, Your Honor.  In

20     *Niz-Chavez* the Court held that "no amount of policy-talk can

21     overcome a plain statutory command."  And what the defendants

22     are really arguing at many points in this case, Your Honor, is

23     that they've turned back so many asylum seekers at this point

24     that it would be hard for them to unwind all of their

25     wrongdoing.  And that's simply not a problem for this Court,

```
 1   Your Honor.

 2       Again, the Supreme Court has recently spoken on this

 3   issue in McGirt vs. Oklahoma, where the Supreme Court was

 4   faced with a situation where half of the state of Oklahoma

 5   might, in fact, be a Crete Native American reservation.  The

 6   Supreme Court held that, quote, "The magnitude of a legal

 7   wrong is no reason to perpetuate it."  And that is certainly

 8   the case here, Your Honor.

 9       The one thing that the defendants never addressed is the

10   fact that DHS Secretary Kirstjen Nielsen was specifically

11   briefed by her deputy, Todd Owen.  He told her that 650 asylum

12   seekers per day would be turned back from ports of entry based

13   on this policy.  And she adopted it anyway.  The Government --

14   and you know the Government doesn't want you to consider this

15   fact because when they tried to create an after-the-fact

16   Administrative Record in a recent supplemental brief, they

17   left those facts out.  They said that you shouldn't consider

18   them.  In fact, they filed a motion earlier that they have now

19   withdrawn to claim that those documents were privileged and

20   should have been clawed back from discovery.

21       You should look at the documents that the Government does

22   not want you to see.  And those documents show that there was

23   clearly a policy that clearly violated Sections 1158 and 1225

24   of the INA because it turned back asylum seekers who were in

25   the process of arriving in the United States.  And at the
```

9

1    point they did that, Your Honor, they violated Section 706(2).

2    And because they also -- because they also denied a discrete

3    and mandatory statutory duty that can be compelled by this

4    Court, they also violated Section 706(1) of the APA.

5           Your Honor, if you have any questions?

6             **THE COURT:**  No additional questions.

7             **MR. MEDLOCK:**  So I'll turn it over to my colleague,

8    Mr. Azmy, who will address issues related to our due process

9    and ATS section, Your Honor.

10            **MR. AZMY:**  Good morning, Your Honor, I'm just going

11    to put my mask just below my nose so my glasses don't fog.

12           Your Honor, first I'd like to start with the Alien Tort

13    Statute claims reflecting the norm of non-refoulement.  This

14    Court has already held that the norm of non-refoulement is a

15    norm that's not derogable.  And the Supreme Court in *Sosa*

16    tells Article III courts that they are authorized to sit as

17    common law courts, despite *Yuri* [ph], and identify causes of

18    action that are actionable under the ATS.  And the Government

19    is right that *Sosa* counsels courts to undertake caution before

20    recognizing new causes of action.  But first the Court says,

21    in unfortunate phrasing, the ATS norms are not stillborn as of

22    1789.

23           And what the Court needs to -- the gatekeeping function

24    is the norm:  Specific, universal, and obligatory.  And this

25    Court has already held that that much is true.  The

1    non-refoulement certainly meets that standard.  It's one of

2    the most important ordinances in international law.  And I

3    know Your Honor is going to have questions about being the

4    first to do something, and I want to address that.  But first

5    I want to address a couple of the Government's arguments.

6        The Government tends to import a sort of given

7    special-factors analysis into the ATS.  But that makes no

8    sense because, of course, the ATS is a Congressional statute

9    that directs District Courts to do what *Sosa* has instructed.

10   And the Supreme Court has never imported special factors into

11   the ATS.

12       With respect to this argument about preemption, it may be

13   true that the INA preempts independent customary international

14   law as -- as a form of action.  But the INA, a federal

15   statute, does not preempt another federal statute.  I'm not

16   aware of that ever being possible.  And Congress is very

17   comfortable legislating alongside the ATS.  For the -- the

18   Torture Victim Protection Act is a piece of legislation that

19   is harmonized alongside the ATS, and no one has thought it

20   would preempt it.

21       And I think national security is a red herring.  ATS

22   cases routinely involve national security.  Cited a number of

23   times is the case challenging torture in Abu Ghraib.  That is

24   an ATS case in the Fourth Circuit in the Eastern District of

25   Virginia.

```
 1          And so the contrary, one should look at what the Supreme
 2   Court has identified is the focus of the ATS, is the core
 3   purpose of the ATS as set out in Jesner and Kiobel, which is
 4   to prevent international discord that would happen if the
 5   United States failed to provide a remedy for violations of
 6   international law.  And so the ATS actually, in a sense,
 7   promotes security and diplomacy by providing a remedy for
 8   those wronged.
 9          So I recall Your Honor has, you know, asked me candidly
10   before has any federal court recognized the norm of
11   non-refoulement before, and I expect you still have that
12   concern on your mind.  And I guess I would address it this
13   way:  First, the answer -- and to be candid -- is, of course,
14   no.  And I would say that's both not surprising and not
15   concerning.  First, I would say it's not surprising because
16   there are just not that many ATS cases.  It was discovered in
17   1979, rediscovered after 200 years of dormancy.  It's quite
18   specialized.  There are not many people who bring these sorts
19   of claims.
20          Second, given the presumption against
21   extraterritoriality, you wouldn't see really non-refoulement
22   claims against foreign governments, because the ATS -- the
23   Supreme Court said it does not reach to foreign jurisdictions.
24   And you wouldn't see it that much against the United States
25   because, I would submit, this is a historic instance of
```

1   refoulement on a mass global scale.  So in that sense it

2   shouldn't be terribly surprising that we see these cases.  And

3   also I'd say nearly every ATS case is somehow novel.  The case

4   recognizing torture, cases recognizing extrajudicial killing,

5   recognizing medical experimentation are all on their own.

6       And ultimately, I would say it shouldn't be concerning

7   because of the intersection between the critical importance of

8   this norm and the systemic set of violations that the

9   Government has engaged in.

10      And I just -- I do feel like I have to really call out

11  the Government for what they say on page 55 of their

12  cross-motion for summary judgment, which suggests that the

13  Executive Branch does not think it's bound by international

14  law:  They say the non-refoulement obligation is binding on

15  the Executive Branch only by statute and regulation.

16      That's a somewhat shocking statement.  Of course the

17  Executive Branch is bound by international law and treaties;

18  otherwise, the global human rights system would fall apart.

19  The question is how is their duty of compliance enforceable.

20  And the answer, especially when the Executive Branch comes to

21  court and rejects any legal constraint from international law,

22  should be this Court's enforcement of the ATS.

23      So briefly with respect to due process, this Court has

24  already held that the due process clause applies on the

25  border, and the Court's -- the Supreme Court's recent decision

```
 1    in Thuraissigiam does not change that analysis.  That's a

 2    situation in which the petitioner brought a constitutional

 3    challenge under due process to a provision of a statute, and

 4    the Court held that there's no standalone, freestanding due

 5    process right under the "Entry Fiction" to challenge that

 6    statute.

 7         Here, we are not challenging the statute.  We are

 8    recognizing the Supreme Court has said, in Mensi, that the due

 9    process clause is coterminous with the statute.  So simply

10    put, any time the Government denies our class members access

11    to the INA, they also violate the Constitution.  That's the

12    limited nature of our due process claims.  But it is valid.

13         With respect to remedies, Your Honor, I think there are

14    three questions:  One, what is the form?  Two, what is the

15    scope?  And three, how is it enforceable?  With respect to the

16    form and authority for the remedy, we'd ask for a declaratory

17    judgment and a permanent injunction.

18         THE COURT:  Frankly, once I rule on the Motion for

19    Summary Judgment, I'm likely to request additional briefing on

20    the remedies.  I just think it's so broad right now to say,

21    well, if you rule this way, then the remedy is this; if you

22    rule this way, then the remedies are this.  And there's a lot

23    of issues with the remedies.  And so I think it makes sense

24    once we narrow the issues --

25         MR. AZMY:  Yeah.
```

1      THE COURT:  -- to figure out the remedy.

2      MR. AZMY:  We think that makes sense, Your Honor.  We

3  were going to propose something similar to offer, and we could

4  offer it while this Court is deliberating on summary judgment

5  or wait for your order.

6      THE COURT:  I'd like to go back to the

7  non-refoulement again.  Part of the problem I have is, this

8  isn't the only country that's been struggling with the issue

9  of pushbacks, referred to that.  And I'm just not sure that

10  it's gotten to the level of all the international communities

11  agreeing that this is a -- an international norm.  I struggle

12  with that.

13      MR. AZMY:  I appreciate that, Your Honor.  I think

14  the norm is -- you know, has been accepted by over 240

15  countries.  It is deeply grounded in the 1951 Refugee

16  Convention to prevent the horrors of the Holocaust.

17  Certainly, there are breaches of the norm.

18      THE COURT:  Well, it's not only whether there's a

19  norm that asylum seekers within a country are entitled to

20  asylum.  It's the idea of the pushback at the borders and

21  where the jurisdiction occurs.

22      MR. AZMY:  Mm-hmm.

23      THE COURT:  And I think it's important not to impose

24  what I may personally think is the right thing to do or what

25  someone else may think is personally the right thing to do as

15

```
 1    a -- as international -- it has to be really very widely

 2    adopted by the international community.

 3             MR. AZMY:  Understood, Your Honor.  I think it is as

 4    widely adopted a norm as any others.  Of course there are

 5    breaches, but I think -- you know, the courts should enforce

 6    the norm rather than accede to the breaches, is our opinion.

 7    I think given the record that my colleague has set out and set

 8    out again about the systematicity of the violations, we think

 9    that should give the Court a little more comfort that we're

10    not operating in the random breaches or the interstices.  This

11    is a policy to send people back intentionally.

12         And just if I could, Your Honor, just to sort of remind

13    the Court about in part where this norm came from, it's worth

14    remembering the story of the St. Louis, a ship from Hamburg

15    bearing 950 refugees.  When the United States -- when they

16    fled to the United States, they were told by the State

17    Department -- and this is what formed the Refugee Convention,

18    in part a response to this kind of command:

19         The U.S. State Department said they must await their turn

20    on a waiting list, and 255 of the 900 refugees perished in the

21    Holocaust.  And that is what the norm is designed to prevent

22    and what the Government is systemically violating here.

23         Thank you.

24             THE COURT:  Thank you.  Government?

25             MR. HALASKA:  Good morning, Your Honor.  May it
```

16

```
 1    please the Court, my name is Alexander Halaska from the
 2    Department of Justice, and I represent the Federal Government.
 3    This case presents the simple question of whether CBP officers
 4    can manage --
 5              THE COURT REPORTER:  Counsel, please slow down.
 6              MR. HALASKA:  I apologize -- asylum seekers at ports
 7    of entry along the border for the purpose of preventing
 8    operational emergencies and to accomplish its multiple
 9    Congressional mandates, or whether the Government must permit
10    such individuals to enter the country in all circumstances
11    regardless of the lack of prior authorization to enter.
12        Plaintiffs' entire case rests on an incorrect
13    understanding of undisputed material facts which, in reality,
14    demonstrate that the queue management policies --
15              THE COURT:  Maybe take breaths between each sentence.
16    Give me a chance to absorb it before you go on to the next
17    idea.
18              MR. HALASKA:  Plaintiffs' entire case rests on an
19    incorrect understanding of the undisputed material facts
20    which, in reality, demonstrate that the queue management
21    policies are based on the agency's *bona fide* operational
22    needs.  And for that reason, this Court should grant summary
23    judgment for the Government.
24        Further, and in any event, we would like to advise the
25    Court that the queue management policies at issue in this
```

```
 1   litigation are under review.  The DHS reports it will rescind

 2   and revise the queue management and metering guidance memos

 3   and intends to do so within 60 days.

 4        THE COURT:  Okay.  Going back to -- I have actually

 5   two questions:  One is when you say, you know, you have to

 6   give in to the agency's bona fide operational needs, if what

 7   you're doing to meet those bona fide operational needs is

 8   contrary, directly contrary, to something that's written in

 9   the statute, don't you have to go to Congress and say,

10   "Congress, you've got to change this statute, we can't comply

11   with it," as opposed to just saying we've got bona fide

12   operational needs and therefore we can't comply with the

13   statute?

14        MR. HALASKA:  Your Honor, I think it's important to

15   note that, contrary to plaintiffs' argument, the Government

16   hasn't abandoned its statutory obligations in this case.  And

17   that's demonstrated by the fact that the number of

18   undocumented noncitizens at ports of entry along the border

19   who were processed for expedited removal and then referred for

20   Credible Fear Interviews increased more than four-and-a-half

21   times over from Fiscal Year 2019 -- Fiscal Year 2017 to Fiscal

22   Year 2019.

23        THE COURT:  That's an abstract number.  You don't

24   know how many sought asylum.  I mean, maybe there were ten

25   times more who sought asylum who didn't get access to asylum.
```

 1          MR. HALASKA:  I think what it demonstrates, though,

 2    is the Government did continue to discharge its obligations on

 3    a class-wide basis.

 4          THE COURT:  Do you know how many of those were on

 5    U.S. soil as opposed to at the port of entry seeking to enter?

 6          MR. HALASKA:  No, Your Honor, not -- we don't know

 7    which -- no, Your Honor, we don't.  But we do know --

 8          THE COURT:  And do you concede that you can't turn

 9    back asylum seekers if you find them in the United States?

10          MR. HALASKA:  That's correct, Your Honor.  And that's

11    an important point, is that the Government's policies have

12    never been to -- excuse me -- the queue management policies

13    have never been to return someone who is in the United States

14    and claimed asylum back to Mexico without proper inspection

15    and referral.  That did happen on a few occasions at the

16    beginning of the implementation of queue management.  But once

17    those instances came to the agency's attention, the Government

18    took swift steps to correct that and work with the ports of

19    entry to make sure that wasn't happening again, and it made

20    sure that the ports were moving up the limit line position as

21    close to the actual border line as operationally feasible.

22          And I do want to point out, too, that this brings up an

23    important point, is that the Court's focus has to be on

24    discrete agency action.  That is the basis of an APA claim.

25          Plaintiffs challenge a capital "T," Turnback, policy,

1   capital "P," Policy.  There is no such thing.  There are the

2   metering methods, but there is no border-wide policy at issue

3   in this litigation beyond those memos.  Plaintiffs have not

4   demonstrated that, for example, instances of alleged coercion

5   or alleged lies or even the one-off instances of pushbacks

6   from the United States into Mexico are the agency's policy.

7       And that's what has to be the focus of the Court's

8   inquiry in this case.  We can't look to these things in a

9   vacuum and say that, you know, this is always unlawful.  The

10  Court has to look at the actual discrete agency actions that

11  the Government has taken.

12      **THE COURT:**  Is the discrete agency action the failure

13  to -- I mean at least the alleged failure, according to the

14  plaintiffs -- to refer and inspect people who seek asylum?

15  Isn't that a discrete agency action?  We didn't -- they didn't

16  do it and they were supposed to do it?

17      **MR. HALASKA:**  The APA contemplates under

18  Section 706(1) that an agency can delay implementing its

19  obligations if it does -- if it does, you know, implement

20  them.  The question is whether it's unreasonably delayed.

21      Plaintiffs at the class certification stage abandoned

22  that argument.  And I'm quoting from the actual class

23  certification argument.  Counsel at that time of that argument

24  said that "The question wasn't why was I delayed; it's that I

25  was delayed."  So plaintiffs have really abandoned any

1    opportunity to base their 706(1) class-wide challenge on an
2    unreasonable delay argument. And that's also not a common
3    question that this Court certified at that stage.

4         So the fact that the Court has before it information
5    showing that CBP did continue to process undocumented
6    noncitizens at the border contemporaneously with the
7    implementation of queue management means that the Court can't
8    hold as a class-wide matter that at all ports of entry along
9    the border, the Government categorically failed to accomplish
10   its statutory mandates.

11        I do want to address a couple of Counsel's points. I
12   believe Mr. Medlock stated that defendants granted a, quote,
13   false discretion to CBP officers. The discretion that the
14   Government granted to the local ports of entry was the
15   discretion to implement metering based on operational
16   exigencies at the ports of entry and to facilitate CBP's
17   prioritization-based queue management mission sets.

18        The Ninth Circuit and Supreme Court have held that
19   agencies do have discretion to balance their resources to
20   accomplish their multiple Congressional mandates. Now, if
21   plaintiffs had demonstrated that the Government wholly failed
22   to implement their Congressional mandates as to one of those
23   statutory requirements, we would be talking about a different
24   case, because that's not what happened here. The Government
25   did continue to process undocumented noncitizens at the

21

border.

The queue management policies at their core are policies of managing the queue. They're not policies of stopping people from seeking asylum at the border. And that's again evidenced by the fact that people did continue to come into the United States and claim asylum and were referred for Credible Fear screening. I think that's an important point to emphasize.

I think we do have a genuine dispute as to the existence of a turnback policy that is broader than the actual metering memos at issue. And I think that's evidenced by the fact that there -- after far ranging discovery, the only border-wide actions that plaintiffs have pointed to in this case are the four metering memos and the 2016 decision to implement metering border-wide.

I'll pause that for a moment to address the Court's other questions on the APA issues before I turn to the other arguments.

**THE COURT:** No, go ahead.

**MR. HALASKA:** I'll turn next to the due process argument. Plaintiffs' argument -- plaintiffs effectively acknowledge that their due process argument is the same as their APA argument. They acknowledge that it's coterminous. And it's not necessarily an if-then type of inquiry where if there's a violation, then there's also a due process

1    violation.  Plaintiffs have to demonstrate that they have a

2    protected statutory interest.  We respectfully maintain our

3    position as to Section 1225 but aren't looking to re-litigate

4    that here.  They also have to show there's been a deprivation,

5    and they can't show that on a class-wide basis.

6        So even if the Court were to find, for example, that

7    there are instances of, for example, 706(1) failures, the

8    Court couldn't necessarily then -- or rather couldn't

9    automatically go ahead and find a due process violation,

10   because the Court has to look at whether the Government's

11   policies and practices as a class-wide matter deprive class

12   members of the opportunity to seek asylum.  And I think the

13   fact the class members did continue to seek asylum shows that

14   the Court can't make that finding on a class-wide basis.  So I

15   think in terms of the summary judgment standard, this is us

16   pointing out plaintiffs have failed to put forth sufficient

17   evidence on that claim to warrant summary judgment on that

18   basis.

19       I'd like to also -- I think I'd actually like to turn

20   back to the APA argument, if I may, to just -- apologies,

21   looking at my notes.

22       The plaintiffs cited the email from Secretary Nielsen's

23   deputy to -- asking how many individuals would be turned back

24   at the border.  What the Secretary was asking at that time was

25   how many people would be needed to staff the limit line and

1  how many people would be turned back at the border.  And I

2  think what that demonstrates is that the Government was

3  considering the effect of its potential policies and that it

4  was looking to the costs and benefits of implementing that

5  policy.

6      On its face, the email does not refer to deterrent or

7  anything like that.  It simply just is two questions, and it

8  provides a response.  And I think as the Supreme Court noted

9  in the recent *Department of Commerce* decision, administrative

10 agencies do have to examine the relevance of benefits and

11 different costs of different decisions.  And the fact that

12 they have done so shows that they're actually complying with

13 their obligations under the APA, not that they're abandoning

14 them or that the policy is arbitrary and capricious.  For the

15 record, I believe we do state in our supplemental briefing

16 that the Court can consider that email.

17     I'd like to turn, then, to plaintiffs' ATS argument.  I

18 think what's important to note here is that the Supreme Court,

19 in *Sosa*, did emphasize that there are three core wrongs that

20 can be remedied through the ATS, and that is violations --

21 infringements against the rights of ambassadors; piracy; and

22 the right of safe conduct.

23     Plaintiffs, in their motion, even today, do not make any

24 attempt to analogize the duty of non-refoulement to those

25 three core causes of action that are recognizable under the

1  Alien Tort Statute.  Instead, they merely claim they succeed

2  on them, but they haven't established the antecedent question

3  of whether a cause of action exists in the first place.

4      And so under the Supreme Court's strict *Sosa* standard,

5  the Court should exercise great caution before recognizing

6  that, and even in situations where the courts would find them

7  to be something that's analogous.  This duty is binding on the

8  United States.  And I want to clarify, to the extent in the

9  briefing, that this was an issue.  There is no withholding of

10  a removal statute in 8 USC Section 1231, and there are the DHS

11  and State Department regulations that implement the treaties

12  that the Government has acceded to.

13      So the Government is not saying that it's not bound by

14  the norms of international law or the treaty.  The Government

15  is saying it's implemented in the United States and is binding

16  on government agencies by that statute and by that regulation.

17  And that duty is enforceable.  It's enforceable.  It can be

18  judicially reviewed alongside a final removal order.  And

19  that's channeled into -- directly from the immigration courts

20  into the courts of appeals.

21      So this is not a situation where there -- if the Court is

22  not, you know, to rule for plaintiffs on this count, that they

23  have no relief at all.  Individuals can enforce the

24  withholding obligation, but they have to do it in the correct

25  way.  By couching their claims under the ATS, plaintiffs are

1    really avoiding those strict limitations on judicial review

2    that put those claims before the appropriate court of appeals.

3         And I think Your Honor's point is well taken about the

4    practice of other countries demonstrating the -- bears on the

5    nature of non-refoulement.  Those are the responsive points

6    that I believe covers plaintiffs' arguments.  Again, I'm happy

7    to address other points in our brief.  But if the Court has no

8    questions on those, I think our briefs are clear on those

9    points.

10         THE COURT:  Okay.  Mr. Medlock, anything to add?

11         MR. MEDLOCK:  Just a few brief points, Your Honor, in

12    response to Mr. Halaska's argument.  The first, Your Honor, is

13    the Government has a theme throughout its briefing and its

14    presentation to you today that, somehow, hypothetical

15    difficulties they might encounter are a reason for defendants

16    to ignore their mandatory statutory duty.  I have two

17    responses to that, Your Honor.

18         First, as a factual matter, there are no operational

19    emergencies in the record before you.  And you can look

20    directly at the testimony of our expert, Stephanie Leutert,

21    who looked at 5,108 discrete data points on the capacity of

22    ports of entry from 910 internal CBP reports taken from a

23    two-and-a-half-year period, border-wide.  And based on that

24    review of the record, she concluded that while the number of

25    asylum seekers waiting at the Mexican border in Mexican border

towns increased substantially, ports of entry were coming

nowhere close to meeting the maximum of their capacity or

capability.

     And it's not just our expert that says that, Your Honor.

It's the Department of Homeland Security itself that says that

in -- a very unusual issue in this case is that the Department

of Homeland Security's Office of the Inspector General issued

a report -- coincidentally, on the last day of summary

judgment briefing in this case -- saying -- coming to

blockbuster conclusions that, in fact, defendants took steps

to turn back asylum seekers that were in the process of

arriving in the United States.  That was systemic, Your Honor,

and had no relationship to operational emergencies.

          THE COURT:  So isn't that a question of fact?

          MR. MEDLOCK:  Well, it's a question of fact, but it's

one that's not in dispute, Your Honor, much less in --

          THE COURT:  It is in dispute.  They say there was an

operational emergency.  And doesn't someone have to -- some

trier of fact have to look at the evidence on both sides and

see whether -- I mean, if we get to that point, doesn't that

create a question of fact?

          MR. MEDLOCK:  No, I don't think it does, Your Honor.

I think this goes back to fundamental Supreme Court case law

on summary judgment, *Anderson vs. Liberty Lobby*.  Once

plaintiffs came forward with evidence that, regardless of the

1    operational capacity or capability, ports of entry were

2    turning back asylum seekers, the United States, the

3    Government, had a duty to point to facts showing that there

4    were, in fact, operational emergencies and that -- negating

5    that evidence that we put forward.

6        Their response was simply to deny that there was -- that

7    this was an issue.  And a denial of evidence is not -- is not

8    pointing out a genuine disputed material fact.  So that's one

9    response.

10       Second response, Your Honor, is I don't think you need to

11   get to this point.  Because under Section 706(2), the analysis

12   really is did the United States -- did CBP officers have false

13   discretion to turn back asylum seekers that were in the

14   process of arriving in the United States.  And the answer to

15   that is clearly yes.  Yes.  Mr. Halaska admits this much when

16   he comes up and points -- uses flashy monikers like "managing

17   the flow."

18       The fact is that Sections 1158 and 1225 are very clear.

19   They don't -- they do not allow for exceptions such as

20   managing the flow of asylum seekers.  An Executive Branch

21   agency is not allowed to amend a statute simply because they

22   think it's not working out for them.  If they -- if the

23   statute is not working out, their recourse is with the

24   Legislative Branch, not on their own volition to change the

25   law and how it would apply.

1       **THE COURT:** So I have a quick question, because it

2 only came up in your reply. Are you arguing that the

3 defendants unreasonably delayed inspection and referral as

4 opposed to withholding those actions? I know that was

5 something the Government raised. It doesn't look to me like

6 that's the focus of your argument.

7       **MR. MEDLOCK:** So in truth, that is not the focus of

8 our argument, Your Honor. But if the Court gets to that point

9 where you agree with the Government that this was just a delay

10 rather than a turnback, then we -- we do argue that that delay

11 was unreasonable under the six factors of the craft factor

12 test.

13       **THE COURT:** I'm not sure you can do that in a reply.

14 I'm not sure can you do that in a reply as opposed to in your

15 primary brief. But --

16       **MR. MEDLOCK:** I think that in a normal-course summary

17 judgment briefing schedule, that might be the case,

18 Your Honor. But in this case the parties had multiple briefs

19 on cross-motions. We put the Government on notice that we

20 will be making this argument in our opposition to their

21 cross-motion. There was no sandbagging or ambush, which are

22 really the principles that underlie those. And then we made

23 the argument.

24    The Government had -- had the opportunity to marshal its

25 own argument in response. They weren't caught by surprise.

1    And instead, they made a litigation choice to drop a footnote

2    saying that we shouldn't be allowed to do this.  But there was

3    no ambush or surprise in that argument, Your Honor.

4         I think that, returning to Mr. Halaska's point regarding

5    hypothetical operational emergencies, the Government also has

6    many, many tools at its disposal they could use short of

7    turning back asylum seekers to deal with any operational

8    issues they have.  They have mass migration contingency plans.

9    They have the ability to temporarily apply the additional CBP

10   officers to ports of entry from other places that do not have

11   the same -- that may not have the same alleged constraint to

12   deal with that.

13        They can use virtual processing, which is exactly what

14   we're doing right now, Your Honor.  It's a Zoom conversation

15   with an asylum seeker to determine -- to inspect and process

16   them.  And the Government acknowledges and doesn't dispute

17   that they could do all of this to deal with these operational

18   emergencies.  The real question is why they decided to violate

19   the law by turning back asylum seekers.

20        And the Government -- I think it is also really critical

21   to understand that the Government claims it has discretion,

22   but their discretion is actually limited by 6 USC

23   Section 111(b)(1)(E), which says that the power transferred to

24   the Department of Homeland Security at its inception,

25   including inspecting and processing asylum seekers at the U.S.

30

1  Mexico border, cannot be abandoned or diminished except by an

2  explicit act of Congress.

3      If the queue management memo stands for anything,

4  Your Honor, it is that the United States was diminishing the

5  priority given to processing asylum seekers.  And it's very

6  explicit, and it's very explicit on that point.

7      And Congress was very clear:  The Department of Homeland

8  Security, as a constituent agency, cannot do that absent an

9  explicit act of Congress.  And they did so here, ignoring that

10  statute.  Not only does it show that they were -- that they

11  were violating Section 706(2) because they were acting in

12  excess of their delegated statutory powers, it also -- it also

13  buttresses our 706(1) argument, Your Honor, that there was

14  discrete agency action that can be compelled here.

15      And on that point I think that the turnbacks are in and

16  of themselves a discrete agency action.  They have finality.

17  When a person is turned back, the person who should have been

18  inspected and processed is told to go back to Mexico and await

19  processing at a later date.  So I think that there's -- I

20  think there is clearly discrete agency action here,

21  Your Honor, that buttresses both our 706(1) and 706(2)

22  arguments.

23      And I think we made this out extremely clearly in our

24  brief, Your Honor, which is that that discrete agency action

25  began as a diffuse set of conduct that was crystalized first

at the San Ysidro port of entry on May 26, 2016, by -- from a
directive from Pete Flores, who was the director of field
operations in charge of all ports of entry in the San Diego
field office.  And then it was -- then it went border-wide in
November 2016 when then-Deputy Commissioner of CBP Kevin
McAleenan advocated for that at a meeting that took place just
after the election, the 2016 election, at DHS's headquarters,
and CBP simply made a decision to not write it down.  And then
they wrote that policy down in the spring of 2018 in two
memoranda.

     I know Mr. Azmy probably addressed this as well,
Your Honor, but I don't think the Government's commitment to
withdraw those memos has -- should have any effect on this
case, Your Honor.  If anything, it is an admission that the
Government should have conceded long ago that it could have --
that it could unwind these policies with no probability to do
so on an accelerated timetable.  And I think that it is
important, Your Honor, for you to issue both declaratory and
injunctive relief now to keep the Government from ever doing
this again.

     And before Mr. Azmy makes his responsive argument, I'll
close with this thought, Your Honor:  I think that this
case -- it represents a particularly shameful episode in the
history of this country.  People who are destitute and needed
the help of the United States government came to ports of

1    entry asking for help.  And the United States, instead of

2    treating our ports of entry as a front door to the country

3    that they have been for so many asylum seekers and so many

4    refugees, Your Honor, instead lied to asylum seekers.  They

5    engaged in institutionalized, border-wide lying.

6        We can look at the testimony of our whistle-blower

7    witness, which is Exhibit 1 for our motion for summary

8    judgment on this point.  And when they did so, they sent

9    asylum seekers back to Mexican border towns that the State

10   Department said no one -- no United States citizen should be

11   in.  And in many cases, they forced Mexican asylum seekers who

12   are fearing persecution in Mexico to travel back to this

13   country where they feared persecution.  That is -- as I'm sure

14   Mr. Azmy will say, that is clearly a refoulement.  But it is

15   also clearly a violation of Section 706(1) and 706(2) of the

16   Administrative Procedure application.  And it's time for this

17   shameful chapter to end.  It is time for the Court to turn the

18   page and to end it.

19       And I'll turn over to Mr. Azmy.

20           **THE COURT:**  Mr. Azmy.

21        **MR. AZMY:**  Your Honor, I don't have anything to add.

22   Mr. Medlock's last recitation of the issue will stay.  Thank

23   you.

24           **THE COURT:**  Thank you.  Anything further from the

25   Government?

1          **MR. HALASKA:**  Yes, Your Honor.  Thank you for the

2     opportunity to respond.

3          I'd like to address first Mr. Medlock's description of

4     how the metering policy was first implemented.  The undisputed

5     material facts show that in May 2016, at the time that the

6     San Diego and San Ysidro port of entry instructed the

7     San Ysidro port -- excuse me -- at the time that leadership at

8     San Ysidro instructed port officers to begin metering, there

9     were over a thousand individuals in custody in a building that

10    was only designed to hold 300, that the line was stretching

11    from the primary inspection booth in the port of entry clear

12    south into Mexico, and that CBP gave that instruction so that

13    it could focus on processing individuals who were already in

14    the port building but were sleeping out in the elements.

15         Plaintiffs' case ignores that the Government did

16    implement its contingency plans.  It engaged in virtual

17    processing.  It converted administrative space into temporary

18    holding facilities and that it was in the middle of a

19    multiyear renovation, and that those contingency plans were

20    not successful.  The Government did open up temporary

21    detention facilities in Donna and Tornillo, Texas in November

22    and December 2016.  And it wasn't until the metering policies,

23    that queue management policies were implemented that you saw

24    those operational emergencies decrease along the ports of

25    entry along the border.

 1          So the point is not that there are no operational

 2    emergencies or that the Government's stated justification for

 3    the policies is contrived.  The point is that the metering

 4    policies are geared toward preventing those emergencies before

 5    they occur.

 6          I would also -- I think Your Honor's point is well taken

 7    that, at minimum, plaintiffs have waived their unreasonable

 8    delay argument in the context of summary judgment.  If they

 9    wished to raise that in their summary judgment, we believe the

10    time was in their opposition brief and not their reply brief,

11    and also for the separate matter that they abandoned that

12    matter at the class certification stage.

13          The Court can't examine the individual circumstances at

14    each port of entry at the time of each individual turnback on

15    a class-wide basis.  So to the extent that that's what

16    plaintiffs' unreasonable delay claim is based on, that's not

17    the type of common question that the Court certified at that

18    stage.  The question is whether the Government has taken --

19    acted generally on grounds that apply to the entire class.

20    The only final and discrete action that -- excuse me --

21    discrete agency action that plaintiffs point to are the four

22    metering memos, so we're looking at the same 706(2) arbitrary

23    and capricious claim under either theory.

24          I would also point out that Mr. Medlock discussed the

25    deposition testimony of the CBP officer that -- at plaintiffs'

1    Exhibit 1.  I believe we made our timely objections to those

2    for lack of foundation, in terms of the officer's testimony

3    that Mr. Medlock cited.  And in any event, I would also point

4    out that that officer agreed that if CBP were not able to

5    engage in queue management, that the ports of entry would fill

6    up very quickly.

7        So again, the notion that these are contrived or not the

8    true justifications for the policy is incorrect.  The

9    undisputed material facts demonstrate that CBP was facing

10   capacity constraints, and that's what it was considering when

11   it implemented the queue management policies.

12       And it's simply incorrect that these orders are not

13   written down.  Deputy McAleenan did send an email issuing the

14   queue management policies.  So all of these intimations that

15   this is based on pretext are simply belied by the actual

16   undisputed material facts.

17       And I would agree to -- we support Your Honor's decision

18   to request supplemental briefing on the relief after summary

19   judgment has been decided.  Thank you very much.

20       **THE COURT:**  Okay.  The summary judgment motion is

21   submitted.  I understand that there are quite a few motions

22   outstanding on the issue of the compliance with the

23   preliminary injunction.  And I apologize -- I hate to sound

24   like a whiner -- but if you have any clout in D.C., would you

25   please let them know that we are down to five active judges

 1  out of 13 currently and a lot of criminal cases, and it's sort

 2  of dominating our time right now.  So I am looking at that.

 3      I think probably I will rule on them without granting the

 4  motion for summary -- without granting a motion for oral

 5  argument, which I know is also in there, just in the interest

 6  of time.  I think at this point it's more important that I

 7  rule on it than find the time in my calendar away from the

 8  criminal caseload to deal with it.  So I'll get through this

 9  motion for summary judgment, hopefully, in the very near

10  future, and then I promise I will look at the outstanding

11  motions on the preliminary injunction as soon thereafter as I

12  can.

13          **MR. AZMY:**  Thank you, Your Honor.

14          **MR. HALASKA:**  Thank you.

15          **THE COURT:**  Okay.  The matter is submitted.

16          **MR. AZMY:**  Thank you.

17          **MR. HALASKA:**  Thank you, Your Honor.

18      **(Proceedings adjourned at 10:58 a.m.)**

19                      **-- o0o --**

20

21

22

23

24

25

1

2

### CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:  Tuesday, September 7, 2021

_____

Anne M. Roldan, RPR, CRR, CSR No. 13095
U.S. Court Reporter

**MR. AZMY: [12]** 3/94/34/21
9/1013/2514/214/1314/22
15/332/2136/1336/16
**MR. HALASKA: [13]** 4/9
15/2516/616/1817/1418/1
18/618/1019/1721/2033/1
36/1436/17
**MR. MEDLOCK: [11]** 3/15
4/226/117/167/199/725/11
26/1526/2228/728/16
**MS. CASSLER: [1]** 3/21
**MS. CROW: [1]** 3/17
**MS. RICH: [1]** 3/19
**MS. WALTERS: [1]** 3/24
**THE CLERK: [1]** 3/4
**THE COURT REPORTER:
[1]** 16/5
**THE COURT: [31]** 3/73/14
4/24/84/136/87/127/179/6
13/1814/114/614/1814/23
15/2416/1517/417/2318/4
18/819/1221/1925/1026/14
26/1728/128/1332/2032/24
35/2036/15

**1**

**10012 [1]** 1/18
**10:06 [1]** 3/1
**10:58 [1]** 36/18
**111 [1]** 29/23
**1158 [5]** 5/106/176/238/23
27/18
**1225 [5]** 5/106/238/2322/3
27/18
**1231 [1]** 24/10
**1255 [1]** 6/18
**13 [1]** 36/1
**13095 [2]** 1/2437/12
**1331 [1]** 2/6
**150 [1]** 2/2
**17-cv-2366 [1]** 3/4
**1789 [1]** 9/22
**1951 [1]** 14/15
**1979 [1]** 11/17
**1999 [1]** 1/21

**2**

**200 [2]** 2/611/17
**20005 [1]** 2/6
**20006 [1]** 1/21
**20044 [1]** 2/12

**2016 [8]** 5/235/2421/14
31/131/5387/855/2533/22
**2017 [1]** 17/21
**2018 [2]** 6/131/9
**2019 [2]** 17/2117/22
**2021 [3]** 1/133/137/7
**2366 [1]** 3/4
**240 [1]** 14/14
**255 [1]** 15/20
**26 [1]** 31/1

**3**

**300 [1]** 33/10
**30030 [1]** 2/3
**31 [2]** 1/133/1
**333 [1]** 2/8
**340 [1]** 2/2
**37 [1]** 1/2
**3:17-cv-02366-BAS-KSC
[1]** 1/7

**5**

**5,108 [1]** 25/21
**511 [1]** 2/8
**55 [1]** 12/11

**6**

**60 [1]** 17/3
**650 [1]** 8/11
**666 [1]** 1/17

**7**

**706 [15]** 5/35/189/19/4
19/1820/122/727/1130/11
30/1330/2130/2132/1532/15
34/22
**7th [1]** 1/17

**8**

**868 [1]** 2/12

**9**

**900 [1]** 15/20
**910 [1]** 25/22
**92173 [1]** 2/9
**950 [1]** 15/15

**A**

**a.m [2]** 3/136/18
**abandon [1]** 7/7
**abandoned [5]** 17/1619/21
19/2530/134/11
**abandoning [1]** 23/13

**ability [1]** 29/9
**able [1]** 35/4
**about [6]** 10/310/1215/8
15/1320/2325/3
**above [1]** 37/5
**above-entitled [1]** 37/5
**absent [1]** 30/8
**absorb [1]** 16/16
**abstract [1]** 17/23
**Abu [1]** 10/23
**accede [1]** 15/6
**acceded [1]** 24/12
**accelerated [1]** 31/17
**accepted [1]** 14/14
**access [2]** 13/1017/25
**accomplish [3]** 16/820/9
20/20
**according [1]** 19/13
**acknowledge [2]** 21/22
21/23
**acknowledges [1]** 29/16
**act [3]** 10/1830/230/9
**acted [2]** 5/1134/19
**acting [1]** 30/11
**action [14]** 9/189/2010/14
18/2419/1219/1523/2524/3
30/1430/1630/2434/20
34/21
**actionable [1]** 9/18
**actions [3]** 19/1021/1328/4
**active [1]** 35/25
**actual [5]** 18/2119/1019/22
21/1035/15
**actually [5]** 11/617/422/19
23/1229/22
**add [2]** 25/1032/21
**additional [3]** 9/613/19
29/9
**address [8]** 9/810/410/5
11/1220/1121/1625/733/3
**addressed [2]** 8/931/11
**addressing [1]** 4/24
**adjourned [1]** 36/18
**administrative [4]** 8/16
23/932/1633/17
**admission [1]** 31/14
**admits [1]** 27/15
**adopted [6]** 5/145/215/23
8/1315/215/4
**advise [1]** 16/24
**advocated [1]** 31/6
**after [5]** 8/1511/1721/12

Case 3:17-cv-02366-BAS-KSC   Document 354-24   Filed 09/07/21   PageID.6274   Page
18/518/2018/2120/820/22
21/921/2222/322/1123/8
25/1827/1928/328/1430/8
30/2531/1132/232/1336/11

**after... [2]** 31/735/18
**again [8]** 8/214/715/818/19
21/425/631/2035/7
**against [4]** 11/2011/22
11/2423/21
**agencies [5]** 7/37/720/19
23/1024/16
**agency [12]** 18/2419/10
19/1219/1519/1827/2130/8
30/1430/1630/2030/2434/21
**agency's [4]** 16/2117/6
18/1719/6
**ago [1]** 31/15
**agree [2]** 28/935/17
**agreed [1]** 35/4
**agreeing [1]** 14/11
**ahead [2]** 21/1922/9
**Air [1]** 7/2
**al [8]** 1/71/71/102/83/43/5
3/53/12
**ALEXANDER [3]** 2/134/9
16/1
**Alien [2]** 9/1224/1
**all [11]** 4/154/177/2412/5
14/1016/1020/824/2329/17
31/335/14
**alleged [4]** 19/419/519/13
29/11
**allow [2]** 4/1827/19
**allowed [2]** 27/2129/2
**along [5]** 16/717/1820/8
33/2433/25
**alongside [3]** 10/1710/19
24/18
**already [4]** 9/149/2512/24
33/13
**also [20]** 4/119/29/29/4
12/313/1120/221/2522/4
22/1929/529/2030/1230/12
32/1534/634/1134/2435/3
36/5
**always [1]** 19/9
**am [1]** 36/2
**ambassadors [1]** 23/21
**ambush [2]** 28/2129/3
**amend [1]** 27/21
**American [3]** 2/53/258/5
**amount [1]** 7/20
**AMZY [1]** 1/18
**analogize [1]** 23/24

**analogous [1]** 24/24
**analysis [3]** 6/96/96/15
6/1710/713/127/11
**Anderson [1]** 26/24
**Anne [2]** 1/2437/12
**another [1]** 10/15
**answer [3]** 11/1312/20
27/14
**antecedent [1]** 24/2
**any [13]** 4/189/511/10
12/2113/1015/416/2419/25
23/2329/731/1335/335/24
**anything [6]** 23/725/10
30/331/1432/2132/24
**anyway [1]** 8/13
**APA [12]** 4/64/244/255/3
5/199/418/2419/1721/17
21/2322/2023/13
**apart [1]** 12/18
**apologies [1]** 22/20
**apologize [3]** 6/1116/6
35/23
**appeals [2]** 24/2025/2
**appearances [4]** 1/161/23
2/13/7
**application [1]** 32/16
**applies [1]** 12/24
**apply [4]** 5/2527/2529/9
34/19
**appreciate [1]** 14/13
**appropriate [1]** 25/2
**arbitrary [2]** 23/1434/22
**are [46]**
**aren't [1]** 22/3
**argue [2]** 6/2028/10
**arguing [2]** 7/2228/2
**argument [24]** 4/510/12
17/1519/2219/2320/320/2
21/2121/2121/2221/2322/20
23/1725/1228/628/828/20
28/2328/2529/330/1331/21
34/836/5
**arguments [9]** 4/154/186/4
6/136/1410/521/1825/6
30/22
**around [1]** 4/5
**arriving [6]** 5/85/166/24
8/2526/1227/14
**Article [1]** 9/16
**Article III [1]** 9/16
**as [36]** 4/235/45/146/217/2
9/169/2110/1410/1411/3

14/2514/25/2215/1415/41/7/11
21/2515/35/215/41/7/11
18/518/2018/2120/820/22
21/921/2222/322/1123/8
25/1827/1928/328/1430/8
30/2531/1132/232/1336/11
**ask [1]** 13/16
**asked [1]** 11/9
**asking [3]** 22/2322/2432/1
**asylum [34]** 5/65/75/15
6/237/238/118/2414/19
14/2016/617/2417/2517/25
18/918/1419/1421/421/6
22/1222/1325/2526/1127/2
27/1327/2029/729/1529/19
29/2530/532/332/432/9
32/11
**ATS [21]** 4/69/99/189/21
10/710/810/1110/1710/19
10/2110/2411/211/311/6
11/1611/2212/312/2223/17
23/2024/25
**attempt [1]** 23/24
**attention [1]** 18/17
**ATTORNEY [2]** 1/222/10
**ATTORNEYS [1]** 1/19
**August [2]** 1/133/1
**authority [1]** 13/16
**authorization [1]** 16/11
**authorized [1]** 9/16
**automatically [1]** 22/9
**Avenue [1]** 2/2
**avoiding [1]** 25/1
**await [2]** 15/1930/18
**aware [1]** 10/16
**away [1]** 36/7
**Azmy [8]** 3/94/249/831/11
31/2132/1432/1932/20

**B**

**back [23]** 5/157/238/12
8/208/2414/615/1117/418/9
18/1422/2022/2323/126/11
26/2327/227/1329/729/19
30/1730/1832/932/12
**backed [3]** 7/107/127/17
**BAHER [2]** 1/183/9
**balance [1]** 20/19
**BAS [1]** 1/7
**base [1]** 20/1
**based [9]** 5/26/38/1216/21
20/1520/1725/2334/1635/15

**Bashant [1]** 1/5
**basis [6]** 18/318/2422/5 22/1422/1834/15
**Bay [1]** 7/6
**be [29]** 4/54/64/246/24 7/248/58/129/310/1211/13 12/212/612/2215/118/23 19/720/2322/2322/2523/1 23/2024/724/1728/1728/20 29/230/130/1432/10
**bearing [1]** 15/15
**bears [1]** 25/4
**bears on [1]** 25/4
**because [16]** 7/98/158/24 9/29/210/811/1511/2211/25 12/720/2422/1027/1127/21 28/130/11
**been [9]** 8/2014/814/14 18/1218/1322/430/1732/3 35/19
**before [12]** 1/59/1911/10 11/1116/1620/421/1724/5 25/225/1931/2134/4
**began [1]** 30/25
**begin [1]** 33/8
**beginning [1]** 18/16
**behalf [5]** 3/163/183/25 4/104/23
**being [2]** 10/310/16
**belied [1]** 35/15
**believe [5]** 20/1223/1525/6 34/935/1
**below [1]** 9/11
**Ben [1]** 2/11
**benefits [2]** 23/423/10
**between [2]** 12/716/15
**beyond [1]** 19/3
**binding [3]** 12/1424/724/15
**bit [2]** 6/87/15
**blockbuster [1]** 26/10
**blower [1]** 32/6
**boil [1]** 6/14
**boils [1]** 6/5
**bona [4]** 16/2117/617/7 17/11
**bona fide [4]** 16/2117/6 17/717/11
**booth [1]** 33/11
**border [22]** 5/2512/2516/7 17/1818/2119/220/620/9

**border-wide [6]** 19/221/12 21/1525/2331/432/5
**borders [1]** 14/20
**both [5]** 4/1911/1426/19 30/2131/18
**Boulevard [1]** 2/8
**bound [3]** 12/1312/1724/13
**Box [1]** 2/12
**Branch [8]** 7/37/712/13 12/1512/1712/2027/2027/24
**breaches [4]** 14/1715/5 15/615/10
**breaths [1]** 16/15
**brief [7]** 8/1625/725/11 28/1530/2434/1034/10
**briefed [1]** 8/11
**briefing [7]** 13/1923/15 24/925/1326/928/1735/18
**briefly [1]** 12/23
**briefs [2]** 25/828/18
**bring [1]** 11/18
**brings [1]** 18/22
**broad [1]** 13/20
**broader [1]** 21/10
**Broadway [1]** 1/17
**brought [1]** 13/2
**Brown [3]** 1/203/164/23
**building [2]** 33/933/14
**buttresses [2]** 30/1330/21

## C

**calendar [2]** 3/536/7
**CALIFORNIA [3]** 1/41/13 2/9
**call [1]** 12/10
**Calling [1]** 3/4
**came [5]** 15/1318/1726/25 28/231/25
**can [18]** 3/75/15/67/209/3 16/419/1823/1623/2024/17 24/2325/1928/1328/1429/13 30/1432/636/12
**can't [8]** 17/1017/1218/8 19/820/722/522/1434/13
**candid [1]** 11/13
**candidly [1]** 11/9
**cannot [2]** 30/130/8
**capability [2]** 26/327/1
**capacity [4]** 25/2126/227/1

**capital [2]** 18/2519/1
**capricious [2]** 23/1434/23
**care [1]** 4/15
**case [21]** 7/228/810/23 10/2412/312/316/316/12 16/1817/1619/820/2421/13 26/626/926/2328/1728/18 31/1431/2333/15
**caseload [1]** 36/8
**cases [6]** 10/2211/1612/2 12/432/1136/1
**CASSLER [2]** 2/43/22
**categorically [1]** 20/9
**CATHERINE [2]** 2/144/11
**caught [1]** 28/25
**cause [1]** 24/3
**causes [3]** 9/179/2023/25
**caution [2]** 9/1924/5
**CBP [16]** 5/135/145/176/21 16/320/520/1325/2227/12 29/931/531/833/1234/25 35/435/9
**CBP's [1]** 20/16
**Center [6]** 1/172/23/103/18 3/203/22
**certainly [3]** 8/710/114/17
**CERTIFICATE [1]** 37/3
**certification [3]** 19/21 19/2334/12
**certified [2]** 20/334/17
**certify [1]** 37/4
**challenge [4]** 13/313/5 18/2520/1
**challenging [2]** 10/2313/7
**chance [1]** 16/16
**change [3]** 13/117/1027/24
**channeled [1]** 24/19
**chapter [1]** 32/17
**charge [1]** 31/3
**Chavez [2]** 7/197/20
**choice [1]** 29/1
**Circuit [4]** 6/177/510/24 20/18
**circumstances [2]** 16/10 34/13
**cited [3]** 10/2222/2235/3
**citizen [1]** 32/10
**Civil [1]** 2/11
**claim [8]** 5/38/1918/2421/6 22/1724/134/1634/23
**claimed [1]** 18/14

## C

**claims [8]** 4/249/1311/19 11/2213/1224/2525/229/21
**clarify [1]** 24/8
**class [14]** 13/1018/319/21 19/2220/120/822/522/11 22/1122/1322/1434/1234/15 34/19
**class-wide [7]** 18/320/1 20/822/522/1122/1434/15
**clause [2]** 12/2413/9
**clawed [1]** 8/20
**clear [6]** 5/57/425/827/18 30/733/11
**clearly [8]** 7/148/238/23 27/1530/2030/2332/1432/15
**close [3]** 18/2126/231/22
**clout [1]** 35/24
**coercion [1]** 19/4
**coincidentally [1]** 26/8
**colleague [4]** 3/114/49/7 15/7
**come [1]** 21/5
**comes [2]** 12/2027/16
**comfort [1]** 15/9
**comfortable [1]** 10/17
**coming [2]** 26/126/9
**command [2]** 7/2115/18
**Commerce [1]** 23/9
**Commissioner [1]** 31/5
**commitment [1]** 31/12
**common [3]** 9/1720/234/17
**communities [1]** 14/10
**community [1]** 15/2
**compelled [2]** 9/330/14
**compliance [2]** 12/1935/22
**comply [2]** 17/1017/12
**complying [1]** 23/12
**concede [1]** 18/8
**conceded [1]** 31/15
**concern [1]** 11/12
**concerning [2]** 11/1512/6
**concluded [2]** 6/1825/24
**conclusions [1]** 26/10
**conduct [2]** 23/2230/25
**Congress [7]** 7/810/1617/9 17/1030/230/730/9
**Congressional [4]** 10/8 16/920/2020/22
**consider [3]** 8/148/1723/16
**considerable [1]** 6/19

**considering [2]** 23/335/10
**constituent [1]** 30/8
**Constitution [3]** 1/173/10 13/11
**constitutional [1]** 13/2
**constraint [2]** 12/2129/11
**constraints [1]** 35/10
**contemplates [1]** 19/17
**contemporaneously [1]** 20/6
**context [1]** 34/8
**contingency [3]** 29/833/16 33/19
**continue [5]** 18/220/5 20/2521/522/13
**continued [2]** 1/232/1
**contrary [4]** 11/117/817/8 17/15
**contrived [2]** 34/335/7
**Convention [2]** 14/1615/17
**conversation [1]** 29/14
**converted [1]** 33/17
**core [4]** 11/221/223/19 23/25
**correct [5]** 6/1818/1018/18 24/2437/4
**costs [2]** 23/423/11
**coterminous [2]** 13/921/23
**couching [1]** 24/25
**could [8]** 7/114/315/1229/6 29/1731/1531/1633/13
**couldn't [2]** 22/822/8
**Council [2]** 2/53/25
**counsel [6]** 3/73/114/106/9 16/519/23
**Counsel's [1]** 20/11
**counsels [1]** 9/19
**count [2]** 5/1924/22
**countries [2]** 14/1525/4
**country [6]** 14/814/19 16/1031/2432/232/13
**couple [2]** 10/520/11
**course [5]** 10/811/1312/16 15/428/16
**court [52]**
**court of [1]** 25/2
**Court's [9]** 7/117/1812/22 12/2512/2518/2319/721/16 24/4
**courts [8]** 9/169/179/19 10/915/524/624/1924/20
**Covenant [1]** 7/6

**cover [2]** 4/624/15
**covering [1]** 4/6
**covers [1]** 25/6
**craft [1]** 28/11
**create [2]** 8/1526/21
**created [1]** 5/12
**creating [1]** 5/12
**Credible [2]** 17/2021/7
**Crete [1]** 8/5
**criminal [2]** 36/136/8
**critical [2]** 12/729/20
**cross [5]** 4/134/2012/12 28/1928/21
**cross-motion [2]** 12/12 28/21
**cross-motions [1]** 28/19
**CROW [2]** 2/43/17
**CRR [2]** 1/2437/12
**crystalized [1]** 30/25
**CSR [2]** 1/2437/12
**currently [1]** 36/1
**custody [1]** 33/9
**customary [1]** 10/13
**cut [1]** 7/15
**cutting [2]** 6/86/12
**cv [2]** 1/73/4
**Cynthia [1]** 1/5

## D

**D.C [4]** 1/212/62/1235/24
**data [1]** 25/21
**date [2]** 30/1937/7
**day [2]** 8/1226/8
**days [1]** 17/3
**De [1]** 2/2
**deal [4]** 29/729/1229/17 36/8
**Decatur [1]** 2/3
**December [1]** 33/22
**December 2016 [1]** 33/22
**decided [3]** 5/2429/18 35/19
**decision [5]** 12/2521/14 23/931/835/17
**decisions [1]** 23/11
**declaratory [2]** 13/1631/18
**decrease [1]** 33/24
**deeply [1]** 14/15
**defendants [15]** 1/112/11 4/104/175/95/115/216/4 6/207/218/920/1225/15 26/1028/3

**defendants' [2]** 6/136/13
**delay [6]** 19/1820/228/9
28/1034/834/16
**delayed [4]** 19/2019/24
19/2528/3
**delegated [2]** 5/1130/12
**deliberating [1]** 14/4
**demonstrably [1]** 6/16
**demonstrate [4]** 16/14
16/2022/135/9
**demonstrated [3]** 17/17
19/420/21
**demonstrates [2]** 18/123/2
**demonstrating [1]** 25/4
**denial [1]** 27/7
**denied [1]** 9/2
**denies [1]** 13/10
**deny [1]** 27/6
**Department [12]** 2/114/12
15/1715/1916/223/924/11
26/526/629/2430/732/10
**deposition [1]** 34/25
**deprivation [1]** 22/4
**deprive [1]** 22/11
**deputy [4]** 8/1122/2331/5
35/13
**derogable [1]** 9/15
**description [1]** 33/3
**designed [2]** 15/2133/10
**despite [1]** 9/17
**destitute [1]** 31/24
**detailed [1]** 7/8
**detention [1]** 33/21
**determine [1]** 29/15
**deterrent [1]** 23/6
**DHRUMAN [2]** 2/134/11
**DHS [3]** 8/1017/124/10
**DHS's [1]** 31/7
**did [16]** 5/229/118/218/15
20/520/2521/522/1323/19
27/1227/1230/932/833/15
33/2035/13
**didn't [3]** 17/2519/1519/15
**Diego [3]** 1/1331/333/6
**different [3]** 20/2323/11
23/11
**difficulties [1]** 25/15
**diffuse [1]** 30/25
**diminished [1]** 30/1
**diminishing [1]** 30/4

**diplomacy [1]** 11/7
**directive [1]** 11/32/2
**directly [3]** 17/824/1925/20
**director [2]** 3/1231/2
**directs [1]** 10/9
**discharge [1]** 18/2
**discord [1]** 11/4
**discovered [1]** 11/16
**discovery [2]** 8/2021/12
**discrete [12]** 9/218/24
19/1019/1219/1525/2130/14
30/1630/2030/2434/2034/21
**discretion [12]** 5/125/12
5/155/186/2220/1320/13
20/1520/1927/1329/2129/22
**discussed [1]** 34/24
**Dismiss [3]** 5/46/76/15
**disposal [1]** 29/6
**dispute [6]** 5/205/2021/9
26/1626/1729/16
**disputed [1]** 27/8
**DISTRICT [5]** 1/31/41/5
10/910/24
**Division [1]** 2/11
**do [29]** 7/310/410/912/10
14/2414/2517/318/418/7
18/818/2219/1619/1620/11
20/1921/923/1023/1523/23
24/2427/1928/1028/1328/14
29/229/1029/1730/831/16
**documents [3]** 8/198/21
8/22
**does [11]** 4/28/2110/15
11/2312/1313/119/1919/19
23/626/2230/10
**doesn't [5]** 8/1426/1826/20
28/529/16
**doing [3]** 17/729/1431/19
**dominating [1]** 36/2
**don't [12]** 4/157/139/11
11/917/2318/618/726/22
27/1027/1931/1232/21
**done [1]** 23/12
**Donna [1]** 33/21
**door [1]** 32/2
**dormancy [1]** 11/17
**down [7]** 6/56/1416/531/8
31/935/1335/25
**drop [1]** 29/1
**due [12]** 4/69/812/2312/24
13/313/413/813/1221/20
21/2221/2522/9

**duty [8]** 5/88/2312/1923/24
24/724/1725/1627/3

## E

**each [3]** 16/1534/1434/14
**earlier [1]** 8/18
**East [2]** 2/27/6
**Eastern [1]** 10/24
**effect [2]** 23/331/13
**effectively [1]** 21/21
**either [1]** 34/23
**election [2]** 31/731/7
**elements [1]** 33/14
**ELSA [2]** 1/193/11
**else [1]** 14/25
**email [4]** 22/2223/623/16
35/13
**emergencies [9]** 16/825/19
26/1327/429/529/1833/24
34/234/4
**emergency [1]** 26/18
**emphasize [2]** 21/823/19
**encounter [1]** 25/15
**end [3]** 7/732/1732/18
**enforce [2]** 15/524/23
**enforceable [4]** 12/19
13/1524/1724/17
**enforcement [1]** 12/22
**engage [1]** 35/5
**engaged [3]** 12/932/533/16
**enter [3]** 16/1016/1118/5
**entire [4]** 5/2516/1216/18
34/19
**entitled [2]** 14/1937/5
**entry [25]** 5/75/85/228/12
13/516/717/1818/518/19
20/820/1420/1625/2226/1
27/129/1031/131/332/132/2
33/633/1133/2534/1435/5
**EPA [1]** 7/3
**episode [1]** 31/23
**ERIKA [2]** 2/93/12
**especially [1]** 12/20
**ESQ [11]** 1/181/191/222/3
2/42/42/72/92/132/132/14
**established [1]** 24/2
**et [4]** 1/71/103/53/5
**even [4]** 19/522/623/23
24/6
**event [2]** 16/2435/3
**ever [2]** 10/1631/19
**every [1]** 12/3

**E**

**evidence [5]** 22/1726/19 26/2527/527/7
**evidenced [2]** 21/521/11
**exactly [1]** 29/13
**examine [2]** 23/1034/13
**example [3]** 19/422/622/7
**except [1]** 30/1
**exceptions [1]** 27/19
**excess [2]** 5/1130/12
**excuse [3]** 18/1233/734/20
**Executive [7]** 7/37/612/13 12/1512/1712/2027/20
**exercise [1]** 24/5
**Exhibit [2]** 32/735/1
**Exhibit 1 [2]** 32/735/1
**exigencies [1]** 20/16
**existence [1]** 21/9
**exists [2]** 5/1324/3
**expect [1]** 11/11
**expedited [1]** 17/19
**experimentation [1]** 12/5
**expert [2]** 25/2026/4
**explicit [4]** 30/230/630/6 30/9
**extent [2]** 24/834/15
**extrajudicial [1]** 12/4
**extraterritoriality [1]** 11/21
**extremely [1]** 30/23

**F**

**face [1]** 23/6
**faced [1]** 8/4
**facilitate [1]** 20/16
**facilities [2]** 33/1833/21
**facing [1]** 35/9
**fact [19]** 8/58/108/158/15 8/1817/1720/421/521/11 22/1523/1126/1026/1426/15 26/1926/2127/427/827/18
**factor [1]** 28/11
**factors [3]** 10/710/1028/11
**facts [8]** 5/198/1716/13 16/1927/333/535/935/16
**factual [1]** 25/18
**failed [4]** 11/520/920/21 22/16
**failure [2]** 19/1219/13
**failures [1]** 22/7
**fall [1]** 12/18
**false [6]** 5/125/176/166/22

**far [1]** 21/10
**favor [1]** 5/2
**Fear [2]** 17/2021/7
**feared [1]** 32/13
**fearing [1]** 32/12
**feasible [1]** 18/21
**federal [4]** 10/1410/15 11/1016/2
**feel [1]** 12/10
**few [3]** 18/1525/1135/21
**Fiction [1]** 13/5
**fide [4]** 16/2117/617/7 17/11
**field [2]** 31/231/4
**figure [1]** 14/1
**filed [1]** 8/18
**fill [1]** 35/5
**final [2]** 24/1834/20
**finality [1]** 30/16
**finalized [1]** 6/1
**finally [1]** 5/25
**find [5]** 18/922/622/924/6 36/7
**finding [1]** 22/14
**first [14]** 4/155/229/129/20 10/410/411/1311/1524/3 25/1225/1830/2533/333/4
**Fiscal [3]** 17/2117/2117/21
**five [1]** 35/25
**flashy [1]** 27/16
**fled [1]** 15/16
**Floor [1]** 1/17
**Flores [1]** 31/2
**flow [2]** 27/1727/20
**focus [6]** 11/218/2319/7 28/628/733/13
**fog [1]** 9/11
**following [1]** 1/23
**footnote [1]** 29/1
**force [1]** 6/19
**forced [1]** 32/11
**foregoing [1]** 37/4
**foreign [2]** 11/2211/23
**form [3]** 10/1413/1413/16
**formed [1]** 15/17
**forth [1]** 22/16
**forward [2]** 26/2527/5
**found [1]** 5/4
**foundation [1]** 35/2
**four [3]** 17/2021/1434/21
**Fourth [1]** 10/24

**Franklin [1]** 2/1
**Frankly [1]** 13/18
**freestanding [1]** 13/4
**front [1]** 32/2
**function [1]** 9/23
**fundamental [1]** 26/23
**further [5]** 7/107/127/17 16/2432/24
**future [1]** 36/10

**G**

**gatekeeping [1]** 9/23
**gave [3]** 5/145/1733/12
**geared [1]** 34/4
**General [1]** 26/7
**generally [1]** 34/19
**genuine [3]** 5/2021/927/8
**Georgia [1]** 2/3
**get [4]** 17/2526/2027/11 36/8
**gets [1]** 28/8
**Ghraib [1]** 10/23
**give [4]** 6/2115/916/1617/6
**given [4]** 10/611/2015/7 30/5
**glasses [1]** 9/11
**global [2]** 12/112/18
**go [7]** 7/114/616/1617/9 21/1922/930/18
**goes [1]** 26/23
**going [4]** 9/1010/314/317/4
**Good [12]** 3/93/143/153/17 3/193/213/244/94/134/22 9/1015/25
**got [2]** 17/1017/11
**gotten [1]** 14/10
**government [43]**
**Government's [5]** 10/5 18/1122/1031/1234/2
**governments [1]** 11/22
**grant [2]** 5/216/22
**granted [2]** 20/1220/14
**granting [2]** 36/336/4
**great [1]** 24/5
**grounded [1]** 14/15
**grounds [1]** 34/19
**Group [1]** 7/3
**guess [2]** 4/1911/12
**guidance [2]** 6/217/2

**H**

**had [6]** 20/2126/1327/3

**had... [3]** 28/1828/2428/24
**HALASKA [4]** 2/134/1016/1 27/15
**Halaska's [2]** 25/1229/4
**half [3]** 8/417/2025/23
**Hamburg [1]** 15/14
**handling [1]** 4/5
**happen [2]** 11/418/15
**happened [1]** 20/24
**happening [1]** 18/19
**happy [1]** 25/6
**hard [1]** 7/24
**harmonized [1]** 10/19
**has [31]** 6/176/188/29/14 9/2510/910/1010/1911/2 11/911/1012/912/2313/8 14/1415/115/718/2319/7 19/1019/1120/422/1024/12 25/725/1329/529/2131/13 34/1835/19
**hasn't [1]** 17/16
**hate [1]** 35/23
**have [51]**
**haven't [1]** 24/2
**he [2]** 8/1127/16
**head [2]** 7/147/15
**headquarters [1]** 31/7
**hear [4]** 4/144/174/177/14
**hearing [2]** 1/143/6
**held [8]** 7/67/208/69/14 9/2512/2413/420/18
**help [2]** 31/2532/1
**her [2]** 8/118/11
**here [9]** 8/813/715/22 20/2422/423/1830/930/14 30/20
**herring [1]** 10/21
**his [1]** 31/21
**historic [1]** 11/25
**history [1]** 31/24
**hmm [1]** 14/22
**hold [2]** 20/833/10
**holding [3]** 7/117/1833/18
**Holocaust [2]** 14/1615/21
**Homeland [4]** 26/526/7 29/2430/7
**Honor [58]**
**Honor's [3]** 25/334/635/17
**Honorable [1]** 1/5
**hopefully [1]** 36/9

**how [9]** 12/1913/1517/24 18/422/2322/2523/127/25 33/4
**human [1]** 12/18
**hypothetical [2]** 25/1429/5

# I

**I'd [8]** 4/149/1212/314/6 22/1922/1923/1733/3
**I'll [10]** 4/174/184/214/24 9/721/1621/2031/2132/19 36/8
**I'm [13]** 6/117/127/127/16 9/1010/1513/1914/919/22 25/628/1328/1432/13
**idea [2]** 14/2016/17
**identified [1]** 11/2
**identify [1]** 9/17
**ignore [1]** 25/16
**ignores [1]** 33/15
**ignoring [1]** 30/9
**III [1]** 9/16
**immigration [3]** 2/53/25 24/19
**implement [6]** 19/1920/15 20/2221/1424/1133/16
**implementation [2]** 18/16 20/7
**implemented [4]** 24/15 33/433/2335/11
**implementing [2]** 19/18 23/4
**import [1]** 10/6
**importance [1]** 12/7
**important [9]** 10/214/23 17/1418/1118/2321/723/18 31/1836/6
**imported [1]** 10/10
**impose [1]** 14/23
**INA [13]** 4/54/245/55/10 6/66/96/156/186/238/24 10/1310/1413/11
**INC [3]** 1/72/83/5
**inception [1]** 29/24
**including [1]** 29/25
**incorrect [4]** 16/1216/19 35/835/12
**increased [2]** 17/2026/1
**independent [1]** 10/13
**individual [2]** 34/1334/14
**individuals [5]** 16/1022/23

**information [1]** 20/4
**infringements [1]** 23/21
**injunction [3]** 13/1735/23 36/11
**injunctive [1]** 31/19
**inquiry [2]** 19/821/24
**inspect [4]** 5/65/919/14 29/15
**inspected [2]** 6/2530/18
**inspecting [1]** 29/25
**inspection [3]** 18/1428/3 33/11
**Inspector [1]** 26/7
**instance [1]** 11/25
**instances [4]** 18/1719/4 19/522/7
**instead [4]** 24/129/132/1 32/4
**institutionalized [1]** 32/5
**instructed [3]** 10/933/6 33/8
**instruction [1]** 33/12
**intends [1]** 17/3
**intentionally [1]** 15/11
**interest [2]** 22/236/5
**internal [1]** 25/22
**international [12]** 10/2 10/1311/411/612/1312/17 12/2114/1014/1115/115/2 24/14
**intersection [1]** 12/7
**interstices [1]** 15/10
**Interviews [1]** 17/20
**intimations [1]** 35/14
**involve [1]** 10/22
**is [128]**
**is the [1]** 11/2
**isn't [3]** 14/819/1526/14
**issue [11]** 8/314/816/25 19/221/1124/926/627/7 31/1832/2235/22
**issued [1]** 26/7
**issues [5]** 9/813/2313/24 21/1729/8
**issuing [1]** 35/13
**it [75]**
**it's [32]** 4/207/1310/111/15 11/712/1313/2014/1014/18 14/2014/2315/1317/1419/20 19/2421/2321/2424/1324/15 24/1726/426/526/1526/15

**it's... [8]** 27/2229/1430/5
30/632/1635/1236/136/6
**its [13]** 16/817/1618/2
19/1810/1023/323/625/13
25/1328/2429/629/2433/16
**itself [1]** 26/5

**J**

**Jesner [1]** 11/3
**joined [2]** 3/104/10
**Judge [1]** 1/5
**judges [1]** 35/25
**judgment [20]** 4/144/205/1
5/212/1213/1713/1914/4
16/2322/1522/1726/926/24
28/1732/834/834/935/19
35/2036/9
**judicial [1]** 25/1
**judicially [1]** 24/18
**juncture [1]** 5/1
**jurisdiction [1]** 14/21
**jurisdictions [1]** 11/23
**just [17]** 4/39/109/1111/16
12/1013/2014/915/1215/12
17/1122/2023/725/1126/4
28/931/636/5
**Justice [4]** 2/114/127/2
16/2
**justification [1]** 34/2
**justifications [1]** 35/8

**K**

**KAROLINA [2]** 2/73/24
**keep [1]** 31/19
**kept [1]** 5/24
**Kevin [1]** 31/5
**killing [1]** 12/4
**kind [2]** 6/815/18
**Kiobel [1]** 11/3
**Kirstjen [1]** 8/10
**know [19]** 4/37/138/1410/3
11/914/1415/517/517/24
18/418/618/719/919/19
24/2228/431/1135/2536/5
**known [1]** 5/14
**KSC [1]** 1/7

**L**

**lack [2]** 16/1135/2
**LADO [4]** 1/72/83/53/12
**last [2]** 26/832/22

**law [18]** 4/191/6222/22/10
3/183/203/229/1710/210/14
11/612/1412/1712/2124/14
26/2327/2529/19
**leadership [1]** 33/7
**leads [1]** 7/2
**least [1]** 19/13
**left [1]** 8/17
**legal [3]** 6/228/612/21
**legislating [1]** 10/17
**legislation [1]** 10/18
**Legislative [1]** 27/24
**Leon [1]** 2/2
**less [1]** 26/16
**let [1]** 35/25
**Leutert [1]** 25/20
**level [1]** 14/10
**Liberty [1]** 26/24
**lied [1]** 32/4
**lies [1]** 19/5
**like [13]** 4/149/1212/10
14/616/2422/1922/1923/7
23/1727/1628/533/335/24
**likely [1]** 13/19
**limit [3]** 5/518/2022/25
**limitations [1]** 25/1
**limited [2]** 13/1229/22
**line [4]** 18/2018/2122/25
33/10
**list [1]** 15/20
**litigate [1]** 22/3
**litigation [4]** 3/1117/119/3
29/1
**little [3]** 6/87/1515/9
**LLP [3]** 1/203/164/23
**Lobby [1]** 26/24
**local [1]** 20/14
**long [1]** 31/15
**look [10]** 8/2111/119/8
19/1022/1025/1926/1928/5
32/636/10
**looked [2]** 6/1725/21
**looking [5]** 22/322/2123/4
34/2236/2
**lot [2]** 13/2236/1
**Louis [1]** 15/14
**lying [1]** 32/5

**M**

**made [6]** 18/1928/2229/1
30/2331/835/1

**maintain [1]** 22/2
**majority [1]** 4/5
**make [3]** 18/1922/1423/23
**makes [4]** 10/713/2314/2
31/21
**making [1]** 28/20
**manage [1]** 16/4
**management [15]** 6/3
16/1416/2016/2517/218/12
18/1620/720/1721/230/3
33/2335/535/1135/14
**managing [3]** 21/327/16
27/20
**mandates [4]** 16/920/10
20/2020/22
**mandatory [3]** 5/99/325/16
**many [15]** 6/47/227/23
11/1611/1817/2418/422/23
22/2523/129/629/632/332/3
32/11
**MARION [1]** 2/3
**marshal [1]** 28/24
**mask [1]** 9/11
**mass [2]** 12/129/8
**material [7]** 5/1916/13
16/1927/833/535/935/16
**matter [9]** 3/46/2120/8
22/1125/1834/1134/1236/15
37/5
**maximum [1]** 26/2
**may [9]** 7/710/1214/24
14/2515/2522/2029/1131/1
33/5
**May 2016 [1]** 33/5
**May 26 [1]** 31/1
**maybe [2]** 16/1517/24
**Mayer [3]** 1/203/164/23
**McALEENAN [4]** 1/103/5
31/635/13
**McGirt [1]** 8/3
**me [6]** 11/916/1618/1228/5
33/734/20
**mean [3]** 17/2419/1326/20
**means [1]** 20/7
**medical [1]** 12/5
**MEDLOCK [10]** 1/223/16
4/44/164/214/2320/1225/10
34/2435/3
**Medlock's [2]** 32/2233/3
**meet [1]** 17/7
**meeting [2]** 26/231/6

**meets [1]** 10/1
**MELISSA [2]** 2/43/17
**members [3]** 13/1022/12 22/13
**memo [1]** 30/3
**memoranda [2]** 6/231/10
**memorandum [1]** 6/3
**memorialized [1]** 6/1
**memos [6]** 17/219/321/11 21/1431/1334/22
**Mensi [1]** 13/8
**mentioned [1]** 4/24
**merely [1]** 24/1
**metering [12]** 6/217/219/2 20/1521/1021/1421/1533/4 33/833/2234/334/22
**methods [1]** 19/2
**Mexican [4]** 25/2525/25 32/932/11
**Mexico [6]** 18/1419/630/1 30/1832/1233/12
**middle [1]** 33/18
**might [3]** 8/525/1528/17
**migration [1]** 29/8
**mind [1]** 11/12
**minimum [1]** 34/7
**mission [1]** 20/17
**Mm [1]** 14/22
**Mm-hmm [1]** 14/22
**moment [1]** 21/16
**monikers [1]** 27/16
**more [5]** 7/515/917/20 17/2536/6
**morning [12]** 3/93/143/15 3/173/193/213/244/94/13 4/229/1015/25
**most [2]** 5/110/2
**MOTA [2]** 1/193/11
**motion [14]** 3/65/46/66/15 8/1812/1213/1823/2328/21 32/735/2036/436/436/9
**motions [7]** 1/144/144/20 6/1628/1935/2136/11
**move [1]** 7/14
**moving [1]** 18/20
**Mr. [18]** 4/164/214/249/8 20/1225/1025/1227/1529/4 31/1131/2132/1432/1932/20 32/2233/334/2435/3
**Mr. Azmy [7]** 4/249/831/11

**Mr. Halaska [1]** 27/15
**Mr. Halaska's [2]** 25/12 29/4
**Mr. Medlock [6]** 4/164/21 20/1225/1034/2435/3
**Mr. Medlock's [2]** 32/22 33/3
**much [5]** 9/2511/2426/16 27/1535/19
**multiple [3]** 16/820/20 28/18
**multiyear [1]** 33/19
**must [3]** 6/2415/1916/9
**my [10]** 3/114/49/79/11 9/119/1115/716/122/2136/7

**N**

**name [1]** 16/1
**narrow [1]** 13/24
**national [2]** 10/2110/22
**Native [1]** 8/5
**nature [2]** 13/1225/5
**near [1]** 36/9
**nearly [1]** 12/3
**necessarily [2]** 21/2422/8
**need [1]** 27/10
**needed [2]** 22/2531/24
**needs [5]** 9/2316/2217/6 17/717/12
**negating [1]** 27/4
**never [4]** 8/910/1018/12 18/13
**new [3]** 1/181/189/13
**next [2]** 16/1621/20
**Nielsen [1]** 8/10
**Nielsen's [1]** 22/22
**Ninth [3]** 6/177/520/18
**Niz [2]** 7/197/20
**Niz-Chavez [2]** 7/197/20
**no [30]** 1/245/55/195/20 6/227/208/79/610/710/19 11/1413/418/618/719/119/2 21/1924/924/2325/725/18 26/1326/2228/2129/331/16 32/1032/1034/137/12
**No. [1]** 3/4
**No. 1 [1]** 3/4
**non [9]** 9/139/1410/111/11 11/2112/1414/723/2425/5
**non-refoulement [9]** 9/13 9/1410/111/1111/2112/14

**noncitizens [3]** 17/1820/6 20/25
**none [1]** 5/13
**norm [14]** 9/139/149/15 9/2411/1012/814/1114/14 14/1714/1915/415/615/13 15/21
**normal [1]** 28/16
**normal-course [1]** 28/16
**norms [2]** 9/2124/14
**nose [1]** 9/11
**not [60]**
**note [2]** 17/1523/18
**noted [1]** 23/8
**notes [1]** 22/21
**notice [1]** 28/19
**notion [1]** 35/7
**novel [1]** 12/3
**November [3]** 5/2431/5 33/21
**November 2016 [2]** 5/24 31/5
**now [6]** 8/1813/2020/20 29/1431/1936/2
**nowhere [1]** 26/2
**number [5]** 5/510/2217/17 17/2325/24
**NW [2]** 1/212/6

**O**

**o0o [2]** 3/336/19
**objections [1]** 35/1
**obligation [2]** 12/1424/24
**obligations [4]** 17/1618/2 19/1923/13
**obligatory [1]** 9/24
**occasions [1]** 18/15
**occur [1]** 34/5
**occurs [1]** 14/21
**off [1]** 19/5
**offer [2]** 14/314/4
**office [2]** 26/731/4
**officer [2]** 34/2535/4
**officer's [1]** 35/2
**officers [9]** 5/135/155/17 6/2116/320/1327/1229/10 33/8
**Official [1]** 1/25
**Oh [1]** 6/11
**Okay [5]** 4/817/425/10 35/2036/15

**O**

**Oklahoma [2]** 8/38/4
**once [6]** 5/76/2313/18
13/2418/1626/24
**one [13]** 6/56/148/910/1
10/1911/113/1417/519/5
20/2226/1627/832/10
**one-off [1]** 19/5
**only [8]** 12/1514/814/18
21/1228/230/1033/1034/20
**open [1]** 33/20
**operating [1]** 15/10
**operational [16]** 16/816/21
17/617/717/1220/1525/18
26/1326/1827/127/429/5
29/729/1733/2434/1
**operationally [1]** 18/21
**operations [2]** 4/431/3
**opinion [1]** 15/6
**opportunity [4]** 20/122/12
28/2433/2
**opposed [4]** 17/1118/528/4
28/14
**opposition [2]** 28/2034/10
**oral [1]** 36/4
**order [5]** 4/44/164/1714/5
24/18
**orders [1]** 35/12
**ordinances [1]** 10/2
**other [5]** 21/1621/1725/4
25/729/10
**others [1]** 15/4
**otherwise [1]** 12/18
**OTRO [4]** 1/72/83/43/12
**our [21]** 4/49/813/1013/12
15/622/223/1525/725/8
25/2026/428/828/2030/13
30/2332/2332/232/632/7
35/136/2
**out [20]** 6/86/127/47/15
8/1711/312/1014/115/715/8
18/2222/1627/827/2227/23
30/2333/1434/2435/436/1
**outstanding [2]** 35/22
36/10
**over [6]** 4/219/714/1417/21
32/1933/9
**overcome [1]** 7/21
**Owen [1]** 8/11
**own [3]** 12/527/2428/25

**P**

**P.O [1]** 2/12
**page [3]** 1/2312/1132/18
**page 55 [1]** 12/11
**Pages [1]** 1/2
**panel [1]** 6/16
**part [3]** 14/715/1315/18
**particularly [1]** 31/23
**parties [1]** 28/18
**pause [1]** 21/16
**people [8]** 11/1815/11
19/1421/421/522/2523/1
31/24
**per [1]** 8/12
**period [1]** 25/23
**perished [1]** 15/20
**permanent [1]** 13/17
**permit [1]** 16/9
**perpetuate [1]** 8/7
**persecution [2]** 32/12
32/13
**person [7]** 1/181/192/9
2/132/1330/1730/17
**personally [2]** 14/2414/25
**Pete [1]** 31/2
**petitioner [1]** 13/2
**ph [1]** 9/17
**phrasing [1]** 9/21
**piece [1]** 10/18
**PINHEIRO [2]** 2/93/12
**piracy [1]** 23/21
**place [2]** 24/331/6
**places [1]** 29/10
**plain [1]** 7/21
**plaintiff [1]** 4/15
**plaintiffs [30]** 1/81/172/2
3/103/163/183/203/234/1
4/184/194/234/2518/2519/3
19/1419/2119/2520/2121/13
21/2122/122/1622/2223/23
24/2224/2526/2534/734/21
**plaintiffs' [11]** 5/25/316/12
16/1817/1521/2123/1725/6
33/1534/1634/25
**plans [3]** 29/833/1633/19
**please [3]** 16/116/535/25
**point [22]** 7/239/118/11
18/2218/2321/725/326/20
27/327/1128/829/430/6
30/1532/834/134/334/6
34/2134/2435/336/6

**pointed [1]** 21/13
**pointing [2]** 22/1627/8
**points [10]** 6/56/147/22
20/1125/525/725/925/11
25/2127/16
**policies [17]** 16/1416/21
16/2518/1118/1221/221/2
21/2221/2123/1331/1633/22
33/2334/334/435/1135/14
**policy [21]** 3/125/145/14
5/215/236/16/217/208/13
8/2315/1118/2519/119/2
19/621/1023/523/1431/9
33/621/435/8
**policy-talk [1]** 7/20
**Ponce [1]** 2/2
**port [10]** 5/85/2218/531/1
33/633/733/833/1133/14
34/14
**ports [18]** 5/78/1216/6
17/1818/1818/2020/820/14
20/1625/2226/127/129/10
31/331/2532/233/2435/5
**position [2]** 18/2022/3
**possible [1]** 10/16
**potential [1]** 23/3
**Poverty [4]** 2/23/183/19
3/22
**power [2]** 7/429/23
**powers [2]** 5/1230/12
**practice [2]** 7/525/4
**practices [1]** 22/11
**preempt [2]** 10/1510/20
**preemption [1]** 10/12
**preempts [1]** 10/13
**preferable [1]** 6/21
**preliminary [2]** 35/2336/11
**prescribed [1]** 7/8
**presentation [1]** 25/14
**presents [1]** 16/3
**presumption [1]** 11/20
**pretext [1]** 35/15
**prevent [3]** 11/414/16
15/21
**preventing [2]** 16/734/4
**primary [2]** 28/1533/11
**principles [1]** 28/22
**prior [1]** 16/11
**prioritization [2]** 6/220/17
**prioritization-based [1]**
20/17
**priority [1]** 30/5

**privileged [1]** 8/19
**probability [1]** 31/16
**probably [2]** 31/1136/3
**problem [2]** 7/2514/7
**Procedure [1]** 32/16
**proceedings [2]** 36/1837/5
**process [23]** 4/65/65/85/10
5/166/248/259/812/2312/24
13/313/513/913/1220/5
20/2521/2021/2221/2522/9
26/1127/1429/15
**processed [3]** 6/2517/19
30/18
**processing [6]** 29/1329/25
30/530/1933/1333/17
**promise [1]** 36/10
**promotes [1]** 11/7
**proper [1]** 18/14
**propose [1]** 14/3
**proposed [2]** 4/44/6
**protected [1]** 22/2
**Protection [1]** 10/18
**provide [1]** 11/5
**provides [1]** 23/8
**providing [1]** 11/7
**provision [1]** 13/3
**purpose [2]** 11/316/7
**pushback [1]** 14/20
**pushbacks [2]** 14/919/5
**put [7]** 5/249/1113/1022/16
25/227/528/19

## Q

**question [13]** 12/1916/3
19/2019/2420/324/226/14
26/1526/2128/129/1834/17
34/18
**questions [8]** 9/59/610/3
13/1417/521/1723/725/8
**queue [16]** 6/316/1416/20
16/2517/218/1218/1620/7
20/1721/221/330/333/23
35/535/1135/14
**quick [1]** 28/1
**quickly [1]** 35/6
**quite [2]** 11/1735/21
**quote [5]** 7/37/77/78/6
20/12
**quoting [1]** 19/22

**raise [2]** 6/434/9
**raised [1]** 28/5
**random [1]** 15/10
**ranging [1]** 21/12
**rather [3]** 15/622/828/10
**re [1]** 22/3
**re-litigate [1]** 22/3
**reach [1]** 11/23
**readily [1]** 5/1
**real [1]** 29/18
**reality [2]** 16/1316/20
**really [11]** 6/56/147/22
11/2112/1015/119/2525/1
27/1228/2229/20
**reason [4]** 7/138/716/22
25/15
**REBECCA [2]** 2/43/21
**recall [1]** 11/9
**recent [5]** 7/117/188/16
12/2523/9
**recently [2]** 7/58/2
**recitation [1]** 32/22
**recognizable [1]** 23/25
**recognized [1]** 11/10
**recognizing [6]** 9/2012/4
12/412/513/824/5
**record [7]** 3/88/1615/7
23/1525/1925/2437/5
**recourse [1]** 27/23
**red [1]** 10/21
**rediscovered [1]** 11/17
**refer [2]** 19/1423/6
**referral [2]** 18/1528/3
**referred [3]** 14/917/1921/6
**referring [1]** 6/13
**reflecting [1]** 9/13
**refoulement [11]** 9/139/14
10/111/1111/2112/112/14
14/723/2425/532/14
**Refugee [2]** 14/1515/17
**refugees [3]** 15/1515/20
32/4
**regarding [1]** 29/4
**regardless [2]** 16/1126/25
**regulation [2]** 12/1524/16
**regulations [1]** 24/11
**regulatory [2]** 7/27/8
**rejects [1]** 12/21
**related [1]** 9/8
**relationship [1]** 26/13

**relevance [1]** 23/10
**relief [3]** 24/2331/1935/18
**remedied [1]** 23/20
**remedies [5]** 4/713/13
13/2013/2213/23
**remedy [5]** 11/511/713/16
13/2114/1
**remembering [1]** 15/14
**remind [1]** 15/12
**removal [3]** 17/1924/10
24/18
**renovation [1]** 33/19
**reply [7]** 4/184/194/1928/2
28/1328/1434/10
**report [1]** 26/8
**Reported [1]** 1/24
**Reporter [3]** 1/2537/3
37/12
**reports [2]** 17/125/22
**represent [1]** 16/2
**represents [1]** 31/23
**request [2]** 13/1935/18
**requirements [1]** 20/23
**rescind [1]** 17/1
**reservation [1]** 8/5
**resources [1]** 20/19
**respect [4]** 10/1212/23
13/1313/15
**respectfully [1]** 22/2
**respond [1]** 33/2
**response [7]** 15/1823/8
25/1227/627/927/1028/25
**responses [1]** 25/17
**responsive [2]** 25/531/21
**rests [2]** 16/1216/18
**return [1]** 18/13
**returning [1]** 29/4
**review [3]** 17/125/125/24
**reviewed [1]** 24/18
**revise [2]** 7/417/2
**RICH [2]** 2/33/19
**right [8]** 9/1913/513/20
14/2414/2523/2229/1436/2
**rights [4]** 1/173/1012/18
23/21
**Roldan [2]** 1/2437/12
**routinely [1]** 10/22
**RPR [2]** 1/2437/12
**rule [6]** 13/1813/2113/22
24/2236/336/7

said [6] 8/1711/2313/8 15/1919/2432/10
same [4] 21/2229/1129/11 34/22
Sampak [1] 4/11
SAMPAT [1] 2/13
San [10] 1/132/82/95/22 31/131/333/633/633/733/8
San Diego [2] 31/333/6
San Ysidro [5] 5/2231/1 33/633/733/8
Sanctuary [1] 7/6
sandbagging [1] 28/21
Sara [1] 3/19
SARAH [1] 2/3
saw [1] 33/23
say [12] 11/1411/1512/3 12/612/1112/1413/2017/5 17/919/926/1732/14
saying [5] 17/1124/13 24/1526/929/2
says [4] 9/2026/426/529/23
scale [1] 12/1
Scalia [1] 7/2
schedule [1] 28/17
scheme [1] 7/8
scope [1] 13/15
screening [1] 21/7
Second [2] 11/2027/10
secondly [1] 6/20
Secretary [3] 8/1022/22 22/24
section [12] 5/35/189/19/4 9/919/1822/324/1027/11 29/2330/1132/15
Section 111 [1] 29/23
Section 1225 [1] 22/3
Section 1231 [1] 24/10
Section 706 [8] 5/35/189/1 9/419/1827/1130/1132/15
Sections [5] 5/106/176/23 8/2327/18
Sections 1158 [4] 6/17 6/238/2327/18
security [6] 10/2110/22 11/726/529/2430/8
Security's [1] 26/7
see [5] 8/2211/2111/24 12/226/20
seek [3] 19/1422/1222/13

seeker [3] 5/76/2329/15
seekers [21] 1/565/157/23 8/128/2414/1916/618/9 25/2526/1127/227/1327/20 29/729/1929/2530/532/3 32/432/932/11
seeking [2] 18/521/4
send [2] 15/1135/13
sense [5] 10/811/612/1 13/2314/2
sent [1] 32/8
sentence [1] 16/15
separate [1] 34/11
September [1] 37/7
set [6] 4/1311/312/815/7 15/730/25
sets [1] 20/17
several [1] 4/25
shameful [2] 31/2332/17
she [2] 8/1325/24
SHINNERS [2] 2/144/11
ship [1] 15/14
shocking [1] 12/16
short [1] 29/6
should [13] 4/198/208/21 11/112/2215/515/916/22 24/530/1731/1331/1532/10
shouldn't [4] 8/1712/212/6 29/2
show [5] 8/2222/422/5 30/1033/5
showing [2] 20/527/3
shows [2] 22/1323/12
sides [2] 4/1926/19
similar [1] 14/3
simple [1] 16/3
simply [9] 7/87/2513/923/7 27/627/2131/835/1235/15
since [1] 4/20
sit [1] 9/16
situation [3] 8/413/224/21
situations [1] 24/6
six [1] 28/11
sleeping [1] 33/14
slow [1] 16/5
so [41]
soil [1] 18/5
some [2] 7/1326/18
somehow [2] 12/325/14
someone [3] 14/2518/13 26/18
something [5] 10/414/3

somewhat [1] 12/16
soon [1] 36/11
sorry [4] 6/117/127/127/16
sort [4] 7/1510/615/1236/1
sorts [1] 11/18
Sosa [5] 9/159/1910/9 23/1924/4
sought [2] 17/2417/25
sound [1] 35/23
south [1] 33/12
SOUTHERN [5] 1/42/23/18 3/193/22
space [1] 33/17
special [2] 10/710/10
special-factors [1] 10/7
specialized [1] 11/18
Specific [1] 9/24
specifically [1] 8/10
spoken [1] 8/2
spring [3] 5/236/131/9
St. [1] 15/14
St. Louis [1] 15/14
staff [1] 22/25
stage [6] 5/46/1519/2120/3 34/1234/18
standalone [1] 13/4
standard [3] 10/122/15 24/4
stands [1] 30/3
start [2] 4/169/12
state [7] 3/78/415/1615/19 23/1524/1132/9
stated [3] 7/220/1234/2
statement [1] 12/16
STATES [24] 1/35/65/85/16 6/248/2511/511/2415/15 15/1618/918/1319/621/6 24/824/1526/1227/227/12 27/1430/431/2532/132/10
Station [1] 2/11
statute [20] 5/137/19/13 10/810/1510/1512/1513/3 13/613/713/917/917/10 17/1324/124/1024/1627/21 27/2330/10
statutorily [1] 5/11
statutory [11] 5/55/97/4 7/219/317/1620/1020/23 22/225/1630/12
stay [1] 32/22
Stephanie [1] 25/20

Case 3:17-cv-02366-BAS-KSC   Document 794   Filed 09/07/21   PageID.66285   Page 50 of 52

**S**

**STEPHEN [4]** 1/223/154/4
4/22
**steps [2]** 18/1826/10
**still [1]** 11/11
**stillborn [1]** 9/21
**stopping [1]** 21/3
**story [1]** 15/14
**Street [2]** 1/212/6
**stretching [1]** 33/10
**strict [2]** 24/425/1
**struggle [1]** 14/11
**struggling [1]** 14/8
**submit [1]** 11/25
**submitted [2]** 35/2136/15
**substantially [1]** 26/1
**succeed [1]** 24/1
**successful [1]** 33/20
**such [3]** 16/1019/127/19
**sufficient [1]** 22/16
**suggests [1]** 12/12
**Suite [3]** 2/22/62/8
**summary [20]** 4/144/205/1
5/212/1213/1914/416/22
22/1522/1726/826/2428/16
32/734/834/935/1835/20
36/436/9
**supplemental [3]** 8/16
23/1535/18
**support [1]** 35/17
**supposed [1]** 19/16
**Supreme [16]** 7/107/178/2
8/38/69/1510/1011/111/23
12/2513/820/1823/823/18
24/426/23
**sure [6]** 14/918/1918/20
28/1328/1432/13
**surprise [2]** 28/2529/3
**surprising [3]** 11/1411/15
12/2
**swift [1]** 18/18
**system [1]** 12/18
**systematicity [1]** 15/8
**systemic [2]** 12/826/12
**systemically [1]** 15/22

**T**

**table [2]** 3/114/10
**take [1]** 16/15
**taken [5]** 19/1125/325/22
34/634/18
**talk [1]** 7/20

**talking [1]** 29/23
**team [1]** 5/18
**tells [1]** 9/16
**temporarily [1]** 29/9
**temporary [2]** 33/1733/20
**ten [1]** 17/24
**tends [1]** 10/6
**terms [3]** 7/422/1535/2
**terribly [1]** 12/2
**test [1]** 28/12
**testimony [4]** 25/2032/6
34/2535/2
**Texas [1]** 33/21
**than [5]** 15/617/2021/10
28/1036/7
**Thank [10]** 15/2315/24
32/2232/2433/135/1936/13
36/1436/1636/17
**that [265]**
**that's [29]** 6/167/107/17
7/259/1511/1412/1613/1
13/1114/817/817/1717/23
18/1018/1019/720/220/24
21/421/721/1124/724/19
26/1627/828/634/1534/16
35/10
**their [27]** 7/2412/512/11
12/1915/1920/120/1920/20
20/2221/221/2221/2323/13
23/2324/2525/1626/227/6
27/2327/2428/2029/2230/12
34/734/934/1034/10
**them [13]** 5/106/227/24
8/1818/919/2023/1424/2
24/627/2229/1635/2536/3
**theme [1]** 25/13
**themselves [1]** 30/16
**then [19]** 4/174/185/23
5/257/1413/2113/2217/19
21/2421/2522/823/1728/10
28/2231/431/431/531/8
36/10
**then-Deputy [1]** 31/5
**theories [1]** 4/25
**theory [1]** 34/23
**there [35]** 5/55/195/206/4
6/96/126/228/2211/1611/18
13/1314/1715/417/2419/1
19/1921/1222/723/19
24/924/1024/2125/1826/17
27/327/628/2129/230/13
30/2033/834/135/2136/5

**there's [7]** 13/413/2214/18
21/2521/2522/430/19
**thereafter [1]** 36/11
**therefore [1]** 17/12
**these [8]** 11/1812/219/8
29/1731/1635/735/1235/14
**they [72]**
**they're [3]** 21/323/1223/13
**they've [1]** 7/23
**thing [4]** 8/914/2414/25
19/1
**things [1]** 19/8
**think [51]**
**this [72]**
**those [24]** 5/115/178/17
8/198/2211/817/718/418/17
19/320/2223/2425/125/2
25/525/825/828/428/22
31/1333/1933/2434/435/1
**though [1]** 18/1
**thought [3]** 6/2010/19
31/22
**thousand [1]** 33/9
**three [4]** 13/1413/1523/19
23/25
**through [2]** 23/2036/8
**throughout [1]** 25/13
**Thuraissigiam [1]** 13/1
**time [12]** 13/1019/2322/24
32/1632/1733/533/734/10
34/1436/236/636/7
**timely [1]** 35/1
**times [3]** 10/2317/2117/25
**timetable [1]** 31/17
**today [2]** 23/2325/14
**Todd [1]** 8/11
**told [3]** 8/1115/1630/18
**too [1]** 18/22
**took [3]** 18/1826/1031/6
**tools [1]** 29/6
**Tornillo [1]** 33/21
**Tort [2]** 9/1224/1
**torture [3]** 10/1810/2312/4
**toward [1]** 34/4
**towns [2]** 26/132/9
**transcript [2]** 1/1437/4
**transferred [1]** 29/23
**travel [1]** 32/12
**treaties [2]** 12/1724/11
**treating [1]** 32/2
**treaty [1]** 24/14
**tried [1]** 8/15

# T

**trier [1]** 26/19
**true [3]** 9/2510/1335/8
**Trump [1]** 7/6
**truth [1]** 28/7
**Tuesday [3]** 1/132/1737/7
**turn [15]** 4/215/157/47/13
9/715/1918/821/1721/20
22/1923/1726/1127/1332/17
32/19
**turnback [7]** 5/145/215/23
18/2521/1028/1034/14
**turnbacks [1]** 30/15
**turned [6]** 7/238/128/24
22/2323/130/17
**turning [3]** 27/229/729/19
**two [10]** 6/26/56/56/14
13/1417/523/725/1625/23
31/9
**two-and-a-half-year [1]**
25/23
**type [2]** 21/2434/17

# U

**U.S [5]** 2/1115/1918/529/25
37/12
**ultimately [1]** 12/6
**under [14]** 5/35/109/18
13/313/517/119/1723/13
23/2524/424/2527/1128/11
34/23
**underlie [1]** 28/22
**understand [2]** 29/2135/21
**understanding [2]** 16/13
16/19
**Understood [1]** 15/3
**undertake [1]** 9/19
**undisputed [5]** 16/1316/19
33/435/935/16
**undocumented [3]** 17/18
20/520/25
**unfortunate [1]** 9/21
**UNITED [24]** 1/35/65/8
5/166/248/2511/511/24
15/1515/1618/918/1319/6
21/624/824/1526/1227/2
27/1227/1430/431/2532/1
32/10
**United States [23]** 5/65/8
5/166/248/2511/511/24
15/1515/1618/918/1319/6
21/624/824/1526/1227/2

27/1227/1430/431/2532/1
32/10
**universal [1]** 9/24
**unlawful [1]** 19/9
**unreasonable [4]** 20/2
28/1134/734/16
**unreasonably [2]** 19/20
28/3
**until [1]** 33/22
**unusual [1]** 26/6
**unwind [2]** 7/2431/16
**up [9]** 7/107/137/1718/20
18/2227/1628/233/2035/6
**us [1]** 22/15
**USC [2]** 24/1029/22
**use [2]** 29/629/13
**uses [1]** 27/16
**Utility [1]** 7/2

# V

**vacuum [1]** 19/9
**valid [1]** 13/12
**very [11]** 7/1410/1615/1
26/627/1830/530/630/735/6
35/1936/9
**Via [6]** 1/222/32/42/42/7
2/14
**Victim [1]** 10/18
**viewed [1]** 5/17
**violate [2]** 13/1129/18
**violated [4]** 5/188/239/1
9/4
**violating [2]** 15/2230/11
**violation [4]** 21/2522/1
22/932/15
**violations [4]** 11/512/815/8
23/20
**Virginia [1]** 10/25
**virtual [2]** 29/1333/16
**volition [1]** 27/24
**Volume [1]** 1/1
**vs [6]** 1/93/57/37/68/3
26/24

# W

**wait [1]** 14/5
**waiting [2]** 15/2025/25
**waived [1]** 34/7
**WALTERS [2]** 2/73/25
**want [8]** 4/168/148/2210/4
10/518/2220/1124/8
**warrant [2]** 4/2522/17

**was [38]**
**Washington [3]** 1/212/6
2/12
**wasn't [3]** 18/1919/24
33/22
**way [5]** 7/1311/1313/21
13/2224/25
**we [35]** 3/1212/213/713/7
13/2414/214/214/315/8
16/2417/1017/1218/618/7
18/719/819/1520/2321/9
22/223/1526/2027/528/10
28/1028/1928/1928/2229/2
30/2332/634/935/135/17
35/25
**we'd [1]** 13/16
**we're [3]** 15/929/1434/22
**we've [1]** 17/11
**well [7]** 7/913/2114/1825/3
26/1531/1134/6
**went [1]** 31/4
**were [26]** 5/158/198/24
14/315/1617/1917/2418/4
18/2019/1621/622/626/1
26/1127/127/427/1330/10
30/1130/1133/933/1333/14
33/1933/2335/4
**weren't [1]** 28/25
**what [23]** 4/156/107/21
9/2310/911/112/1113/14
13/1414/2414/2415/1715/21
15/2217/618/119/720/24
22/2423/229/1334/1535/10
**what's [1]** 23/18
**whatever [1]** 4/16
**when [12]** 5/167/148/15
12/2015/1515/1517/527/15
30/1731/532/835/10
**where [11]** 5/137/18/38/4
14/2115/1321/2424/624/21
28/932/13
**whether [8]** 14/1816/316/9
19/2022/1024/326/2034/18
**which [12]** 11/312/1213/2
16/1316/2018/728/2129/13
29/2330/2432/736/5
**while [4]** 4/256/414/425/24
**whiner [1]** 35/24
**whistle [1]** 32/6
**whistle-blower [1]** 32/6
**who [14]** 8/249/811/18
17/1917/2517/2518/1319/14

**who... [6]** 25/2130/1731/231/2432/1133/13

**wholly [1]** 20/21

**why [2]** 19/2429/18

**wide [13]** 18/319/220/120/821/1221/1522/522/1122/1425/2331/432/534/15

**widely [2]** 15/115/4

**will [9]** 4/54/69/817/128/2032/1432/2236/336/10

**wished [1]** 34/9

**withdraw [1]** 31/13

**withdrawn [1]** 8/19

**withholding [3]** 24/924/2428/4

**within [2]** 14/1917/3

**without [3]** 18/1436/336/4

**witness [1]** 32/7

**word [1]** 6/22

**work [2]** 7/518/18

**working [3]** 7/927/2227/23

**worth [1]** 15/13

**would [24]** 5/257/248/1210/2011/411/1211/1411/1511/2512/612/1816/2420/2322/2322/2523/124/627/2534/634/2435/335/535/1735/24

**wouldn't [2]** 11/2111/24

**write [1]** 31/8

**writing [1]** 5/24

**written [2]** 17/835/13

**wrong [2]** 6/168/7

**wrongdoing [1]** 7/25

**wronged [1]** 11/8

**wrongs [1]** 23/19

**wrote [1]** 31/9

**Y**

**Yeah [1]** 13/25

**year [4]** 17/2117/2117/2225/23

**years [1]** 11/17

**yes [4]** 4/327/1527/1533/1

**York [2]** 1/181/18

**you [57]**

**you're [2]** 6/817/7

**you've [1]** 17/10

**your [73]**

**Your Honor [58]**

**Your Honor's [3]** 25/334/6

**Ysidro [7]** 1/22/22/295/2231/133/633/733/8

**Yuri [1]** 9/17

**Z**

**Zoom [8]** 1/222/32/42/42/72/143/1329/14