BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
SAMUEL P. GO
Assistant Director
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259 | Fax: (202) 305-7000
katherine.j.shinners@usdoj.gov
DHRUMAN Y. SAMPAT
ALEXANDER J. HALASKA
Trial Attorneys
*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | Hon. Cynthia A. Bashant |
| v. | **GOVERNMENT'S OPPOSITION TO PLAINTIFFS' MOTION FOR COURT OVERSIGHT** |
| ALEJANDRO MAYORKAS, Secretary of Homeland Security, *et al.*, in their official capacities, | |
| *Defendants*. | |

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................... i

TABLE OF AUTHORITIES ............................................................ ii

BACKGROUND ............................................................................ 2

    A.    The Transit Rule and the Court's Preliminary Injunction Orders. ................................................................................ 2

    B.    Implementation of the October 30 Order. ................................. 6

    C.    Plaintiffs' Prior Motions Concerning the PI Orders. .............. 15

ARGUMENT .................................................................................. 17

    A.    Monitoring is Not Required to Ensure Compliance with the PI Orders. ..................................................................... 17

    B.    Plaintiffs Cannot Seek Modification of the PI Orders Through this Motion. ................................................................. 23

    C.    Plaintiffs Largely Do Not Address their Other Pending Motions Concerning the PI Orders. ....................................... 24

CONCLUSION ............................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Al Otro Lado v. Wolf*,
  945 F.3d 1223 (9th Cir. 2019) ...................................................4

*Al Otro Lado v. Wolf*,
  952 F.3d 999 (9th Cir. 2020) .....................................................4

*Al Otro Lado, Inc. v. McAleenan*,
  423 F. Supp. 3d 848 (S.D. Cal. 2019) ......................................2

*CAIR v. Trump*,
  471 F. Supp. 3d 25 (D.D.C. 2020)............................................4

*E. Bay Sanctuary Covenant v. Barr*,
  519 F. Supp. 3d 663 (N.D. Cal. Feb. 16, 2021)........................6

*Griggs v. Provident Consumer Discount Co.*,
  459 U.S. 56 (1982)...................................................................23

*Natural Resources Defense Council, Inc. v. Southwest Marine Inc.*,
  242 F.3d 1163 (9th Cir. 2001) .................................................24

*Quatama Park Townhomes Owners Ass'n v. RBC Real Est. Fin., Inc.*,
  365 F. Supp. 3d 1129 (D. Or. 2019).........................................24

*Thomas v. Cnty. of L.A.*,
  978 F.2d 504 (9th Cir. 1993) ...................................................25

*Townley v. Miller*,
  693 F.3d 1041 (9th Cir. 2012) .................................................23

*United States v. Apple, Inc.*,
  992 F. Supp. 2d 263 (S.D.N.Y. 2014) ......................................17

*United States v. Yonkers Bd. Of Educ.*,
  29 F.3d 40 (2d Cir. 1994) ........................................................17

## Statutes

8 U.S.C. § 1225(a)(3).......................................................................14

28 U.S.C. § 636(b)(1)......................................................................24

ii

**Federal Regulations**

8 C.F.R. § 212.5(f) ..............................................................14

8 C.F.R. § 235.1 ..................................................................14

8 C.F.R. § 1003.1(b)(3) .........................................................3

8 C.F.R. § 1003.1(d) ............................................................3

**Administrative Materials**

Asylum Eligibility and Procedural Modifications,
      84 Fed. Reg. 33,829 (July 16, 2019) .........................................2, 3

Asylum Eligibility and Procedural Modifications,
      85 Fed. Reg. 82,260 (Dec. 17, 2020)............................................6

OPP. TO PLS.' MOT. FOR
COURT OVERSIGHT
Case No. 3:17-cv-02366-BAS-KSC

Since the Court issued its October 30 Order granting Plaintiffs' motion for clarification of its preliminary injunction, Defendants and EOIR have continuously adhered to its terms and have continued to implement its directives. They have devoted substantial time and resources to providing relief to preliminary-injunction class members to whom the transit rule was previously applied by identifying cases that are subject to reconsideration or reopening under that Order. Among other things, the government has developed, and continues to develop, complex procedures in aid of this task, has manually reviewed over 1,600 cases for potential reopening, and has continued to screen individuals for potential eligibility for relief before removal. The government has also continued to engage in conferences and email communications with Plaintiffs to provide information about its implementation procedures, and has produced, and will continue to produce, comprehensive data about potential preliminary-injunction class members.

Against this backdrop, Plaintiffs now request that the Court refer supervision of preliminary-injunction compliance to Magistrate Judge Crawford, with instructions to hold status conferences, conduct mediation, and decide and make recommendations regarding disputes. The government recognizes that Plaintiffs file their motion in the hope of obtaining a mechanism for speedy resolution of disputes over implementation of the October 30 Order, and shares Plaintiffs' desire to efficiently resolve disputes that arise.  However, the government disagrees that the compliance monitoring Plaintiffs seek is appropriate here, given the government's ongoing compliance with the Court's orders and the nature of the disputes Plaintiffs cite in their current Motion. These disputes often center on implementation details that could be most efficiently resolved through consensual methods like negotiated agreement, perhaps using an outside mediator. Yet Plaintiffs' requested referral seeks not only to mediate disputes but also to confer broader decision-making powers on Magistrate Judge Crawford. And to the extent Plaintiffs seek to refer issues to Magistrate Judge Crawford to informally obtain substantive modifications to the October 30 Order,

such modifications would be improper pending appeal of that order. Moreover, such a referral would improperly transfer decision-making from the Court without the consent of all parties, and may deprive either party of a full opportunity to be heard on issues that affect their substantive rights.

For these reasons, the Court should deny Plaintiffs' motion.

## BACKGROUND

**A. The Transit Rule and the Court's Preliminary Injunction Orders.**

The Court is familiar with its orders regarding the interim final rule (IFR) known as the "transit rule" or "third-country transit bar" under which a person "who enters or attempts to enter the United States across the southern border after failing to apply for protection in a third country . . . through which the alien transited en route to the United States is ineligible for asylum." "Asylum Eligibility and Procedural Modifications," 84 Fed. Reg. 33,829, at 33,830 (July 16, 2019). On November 19, 2019, this Court enjoined Defendants from applying the transit rule to a provisional class of "all non-Mexican asylum-seekers who were unable to make a direct asylum claim at a U.S. POE [port of entry] before July 16, 2019 because of the U.S. Government's metering policy, and who continue to seek access to the U.S. asylum process," and ordered Defendants "to return to pre-Asylum Ban practices for processing" provisional class members' "asylum applications." ECF No. 330 ("PI Order") at 36, *Al Otro Lado, Inc. v. McAleenan*, 423 F. Supp. 3d 848, 878 (S.D. Cal. 2019).

When the transit rule was in effect, it was applicable to individual asylum-seekers in two basic ways. *See* 84 Fed. Reg. at 33,843; *see also* Opp'n to Pls.' Mot. for Prelim. Inj. (ECF No. 307) at 3-4. First, it was applied at the credible fear stage of expedited removal proceedings. The transit rule required asylum officers from U.S. Citizenship and Immigration Services (USCIS) and immigration judges (IJs) from the Executive Office for Immigration Review (EOIR) to apply the bar on asylum eligibility when conducting and reviewing credible-fear determinations. 84 Fed.

Reg. at 33,830. Thus, when a person in expedited removal proceedings was ineligible for asylum based on the transit rule, the asylum officer would enter a negative credible-fear determination and then apply the "reasonable-fear standard to assess whether further proceedings on a possible statutory withholding or CAT protection claim are warranted." *Id.* at 33,837. If the asylum officer made a negative fear determination, the noncitizen could seek review of that determination by an IJ, who would conduct a de novo review of the asylum officer's determination that the transit rule bars the noncitizen from asylum eligibility and consider whether he or she has a reasonable fear. 84 Fed. Reg. at 33,838. If the asylum officer determines the noncitizen established a reasonable fear of persecution or torture, the noncitizen would be placed into regular removal proceedings before an immigration judge for further consideration of the withholding or CAT claims and de novo review of the applicant's eligibility for asylum. *Id.*

Second, the transit rule was applicable to applications for asylum made by noncitizens in regular, non-expedited removal proceedings under section 240 of the Immigration and Nationality Act—both those noncitizens who were referred to removal proceedings by USCIS after the credible-fear process described above, and those who were initially placed in removal proceedings without going through the expedited removal process. In section 240 removal proceedings, IJs were required to determine whether an asylum applicant is ineligible for asylum under the transit rule or other mandatory bars. 84 Fed. Reg. at 33,830 & 33,844 (modifying 8 C.F.R. § 1208.13(c)). An IJ's decision is subject to appeal to the administrative appellate body, the Board of Immigration Appeals. *See* 8 C.F.R. § 1003.1(b)(3), (d).

The government complied with the PI Order by conducting fact-finding to identify provisional class members ("PI class members") during the course of their immigration proceedings to ensure that the transit rule was not applied in those proceedings. It took prompt steps to identify PI class members with pending immigration proceedings so that the transit rule would not be applied to them. *See, e.g.*, Opp.

OPP. TO PLS.' MOT. FOR
COURT OVERSIGHT
Case No. 3:17-cv-02366-BAS-KSC

to Mot. for Clarification (ECF No. 508) at 5-8.[1] Although the government discontinued certain compliance procedures while the PI Order was stayed by the Ninth Circuit,[2] once the stay was lifted the impacted agencies promptly returned to the policies under which they were complying with the injunction. *See id.* As one small part of those compliance measures, U.S. Customs and Border Protection (CBP) instructed its Office of Field Operations (OFO) and the U.S. Border Patrol (USBP) to note on a noncitizen's encounter record (Form I-213) if the noncitizen affirmatively claimed during initial immigration inspection to be a PI class member. ECF No. 508-8 (Aug. 3, 2020 Visconti Decl.) ¶¶ 5-6. Although OFO recorded this annotation in its electronic system of record, there is no equivalent data point in USBP's electronic systems. *Id.* ¶ 6. Accordingly, ascertaining whether USBP annotated an encounter record with this information requires a manual review of the Form I-213. *See id.*

On June 30, 2020, the transit rule IFR was vacated in separate litigation and thus was not to be applied prospectively to anyone, regardless of whether or not they were a PI class member. *See CAIR v. Trump*, 471 F. Supp. 3d 25 (D.D.C. 2020).

In July 2020, Plaintiffs filed a motion asking the Court to order the government to immediately reopen or reconsider PI class members' asylum applications that were denied based on the transit rule before the PI Order issued or while it was stayed, and to identify PI class members and notify them of the preliminary injunc-

---

[1] The government's initial compliance measures are laid out primarily in Defendants' Opposition to Plaintiffs' Motion for Clarification of the Preliminary Injunction (ECF No. 508), at pages 5-8 and exhibits 1-7.

[2] Defendants appealed from and sought a stay of the PI Order. *See generally Al Otro Lado v. Mayorkas*, No. 19-56417 (9th Cir.). On December 20, 2019, the Ninth Circuit granted an administrative stay of the PI Order pending adjudication of Defendants' stay motion. *Al Otro Lado v. Wolf*, 945 F.3d 1223, 1224 (9th Cir. 2019). On March 5, 2020, the Ninth Circuit denied that stay motion, terminating the administrative stay, and the PI order went back into effect. *Al Otro Lado v. Wolf*, 952 F.3d 999 (9th Cir. 2020). The appeal remains pending.

tion. *See* Pls.' Mem. in Supp. of Mot. for Clarification (ECF No. 494-1) at 3. Plaintiffs also asked the Court to order that EOIR is bound by the PI Order. *Id.* On October 30, 2020, the Court granted Plaintiffs' motion. ECF No. 605 (October 30 Order). The Court reasoned that to preserve that status quo, the preliminary injunction applies to those who received final asylum denials based on the transit rule before the PI Order issued or while it was stayed, and that "affirmative action" by Defendants was required. October 30 Order at 11-14. The Court also found it "appropriate for Defendants to make reasonable efforts to aid in identifying potential class members at all stages of removal proceedings." *Id.* at 22. However, it also found "that it is not necessarily easier for Defendants to notify individuals who are not in expedited removal proceedings, regular removal proceedings, or otherwise in DHS [Department of Homeland Security] custody (such as ICE or CBP custody) of their potential class membership. For these individuals, Plaintiffs and their counsel will have access to the same contact details of class members and can facilitate the notification process for those who were removed and remain outside the United States or for those who otherwise are not in pending administrative proceedings or in the custody of the government." *Id.*

Ultimately, the Court ordered that EOIR would be bound by the terms of the preliminary injunction, and directed the following actions:

(2) DHS and EOIR must take immediate affirmative steps to reopen or reconsider past determinations that potential class members were ineligible for asylum based on the [transit rule], for all potential class members in expedited or regular removal proceedings. . . .;

(3) Defendants must inform identified class members in administrative proceedings before USCIS or EOIR, or in DHS custody, of their potential class membership and the existence and import of the preliminary injunction; and

(4) Defendants must make all reasonable efforts to identify class members, including but not limited to reviewing their records for notations regarding class membership . . . and sharing information regarding class members' identities with Plaintiffs.

OPP. TO PLS.' MOT. FOR
COURT OVERSIGHT
Case No. 3:17-cv-02366-BAS-KSC

October 30 Order at 25.[3]

Meanwhile, the transit rule has essentially not been in effect as to any noncitizen since the time the IFR was vacated on June 30, 2020. Although a final transit rule was published on December 17, 2020, *see* "Asylum Eligibility and Procedural Modifications," 85 Fed. Reg. 82,260 (Dec. 17, 2020), the Court enjoined the final rule's application to the PI Class before it took effect. *See* ECF Nos. 671, 676. The final transit rule otherwise took effect on January 20, 2021, but it was enjoined in its entirety on February 16, 2021. *See E. Bay Sanctuary Covenant v. Barr*, 519 F. Supp. 3d 663, 2021 WL 607869, at *5 (N.D. Cal. Feb. 16, 2021).

**B. Implementation of the October 30 Order.**

The government took prompt steps to implement the October 30 Order's additional directives and have progressively and continuously worked toward their completion. As detailed further below, both DHS and EOIR took immediate, affirmative steps to identify PI class members and to reopen and reconsider cases under Paragraph 2 of the Order. DHS immediately implemented screening to seek to prevent the removal of PI class members entitled to reopening or reconsideration relief, and the government began further efforts to comprehensively identify potential PI class members, focusing on the cases of those who may be entitled to reopening or reconsideration relief under Paragraph 2. The government generated a list of potential PI class members using data points from numerous sources, has interviewed noncitizens to assess class membership, has reviewed over 1,600 immigration-court records of proceedings to assess class membership and entitlement to reopening or reconsideration relief, has identified over 450 cases for reopening, and is continuing to actively review, or will soon implement procedures for review of, the remainder

---

[3] Defendants and EOIR appealed from and sought a stay of the October 30 Order. *See generally Al Otro Lado v. Mayorkas*, No. 20-56287 (9th Cir.). The Ninth Circuit denied the government's motion to stay, *see id.*, Dkt. Entry No. 30 (Jan. 14, 2021), and the appeal remains pending.

OPP. TO PLS.' MOT. FOR
COURT OVERSIGHT
Case No. 3:17-cv-02366-BAS-KSC

of cases that may be subject to reopening or reconsideration.

***Identification of PI Class Members and Information-Sharing.*** The government quickly moved forward to identify a pool of potential PI class members for use in implementing all aspects of the October 30 Order. *See* Declaration of Katherine J. Shinners (Shinners Decl.) ¶¶ 7-9, 12, 24. This list of potential PI class members—known as the Master List—has been shared with Plaintiffs, has been used by Defendants and EOIR to help identify cases that may be eligible for reopening or reconsideration, and may be used by both Defendants and Plaintiffs to facilitate the provision of notice of the preliminary injunction. *See* Shinners Decl. ¶¶ 12, 24; *id.* Ex. A (Davidson Decl.) ¶ 5; *id.* Ex. B (Sept. 13, 2021 Anderson Decl.) ¶ 4.

To create the Master List, the government began with data from CBP identifying non-Mexican noncitizens whom CBP had encountered along the U.S.-Mexico border between July 16, 2019 and June 30, 2020, and who may be asylum-seekers. ECF No. 695-2 (Jan. 1, 2021 Visconti Decl.) ¶¶ 5-8. The government narrowed the list to individuals who sought asylum or similar forms of protection from removal, as evidenced by the data contained in USCIS's and EOIR's systems of record. *See* Shinners Decl. ¶ 24. The government also gathered numerous other data points about these *potential* PI class members from electronic systems of records from USCIS, EOIR, and U.S. Immigration and Customs Enforcement (ICE)—such as whether and when the individual had been removed from the United States, whether the transit rule was applied at the credible fear interview stage, attorneys of record, and address information—to assist in efforts to identify class members whose cases are eligible to be reopened, and to help determine whether and how notice will be provided as contemplated by the October 30 Order. *See* Shinners Decl. ¶¶ 12, 24.[4] The government produced all of this information about the Master List of potential PI class

---

[4] The government still hopes to further refine this Master List to remove those potential PI class members who have administratively final decisions granting asylum,

members to Plaintiffs on April 22, 2021, after Magistrate Judge Crawford entered a tailored protective order setting conditions on the use and further disclosure of potential PI class members' asylum-related information. *See* Shinners Decl. ¶ 24; Protective Order Regarding Asylum Information (ECF No. 709). The government also produced several other lists, including a list of individuals for whom OFO had entered an annotation in its electronic system that the individual had affirmatively claimed to be a PI Class Member, and lists used by the government in December 2019 and March 2020 as a prophylactic measure to identify individuals to screen for PI class membership. *See* Shinners Decl. ¶¶ 25-26. The government has also continued to produce to Plaintiffs lists of those individuals who have been determined to be PI class members as a result of USCIS's and EOIR's class membership determination procedures described below. *See* Shinners Decl. ¶¶ 27, 31. The government has further agreed to update the Master List for Plaintiffs with annotations of the results of these ongoing class membership determinations and file review. Shinners Decl. ¶¶ 30, 34(d) & Ex. B (Sept. 13, 2021 Anderson Decl.) ¶ 9.

***Affirmative Steps to Identify Cases Eligible for Reopening or Reconsideration Under Paragraph 2.*** The government meanwhile took additional "immediate, affirmative steps" to identify cases with final asylum denials that may need to be reopened or reconsidered under the October 30 Order, and to provide notice to certain potential PI class members with such cases. *See* October 30 Order at 25.

Removal Screening, Notice and USCIS Interviews for Individuals in ICE Custody (Groups (1)(a) and (2)(a)). ICE and USCIS promptly moved to screen individuals in ICE custody and subject to imminent removal for potential PI class membership and entitlement to Paragraph 2 relief before executing their removal orders. In November 2020, ICE developed removal screening criteria designed to determine

---

as the parties agree that those individuals are no longer PI class members because they do not continue to seek access to the U.S. asylum process. Shinners Decl. ¶¶ 14, 34(d).

OPP. TO PLS.' MOT. FOR
COURT OVERSIGHT
Case No. 3:17-cv-02366-BAS-KSC

whether noncitizens with final removal orders could be removed without further PI-related screening—either because objective criteria such as entry date or location demonstrated that they were not PI class members, or the decisions or circumstances of their case demonstrated that they would not be entitled to relief under Paragraph 2 (for example, because the transit rule was never applied to their case). *See* ECF No. 695-5 (Guadian Decl.) ¶¶ 5-6 & Exs. 1, 2. Thus, if an individual on ICE's list is subject to imminent removal, local ICE reviews the file to determine whether any of the removal screening criteria are met. *Id.* Ex. 2. If not, ICE refers the individual to the local USCIS asylum office for an interview and PI class membership determination and provides notice to the interviewee. *Id.*; *see also id.* Exs. 3-4 (referral procedures); ECF No. 695-3 (Mura Decl.) ¶¶ 3-5 & Ex. 2; ECF No. 695-4 (notice); ECF No. 695-5 (Guadian Decl.) ¶ 7 & Ex. 3 (referral process).

After the ICE referral, a USCIS asylum officer conducts an interview with questions designed to determine whether the individual was metered at the international boundary line, placed his/her name on a waitlist, or otherwise tried to enter at a southwest-border POE before July 16, 2019, but was unable to do so. ECF No. 695-3 (Mura Decl.) ¶¶ 5-8 & Exs. 2-3. Asylum officers also consult DHS records and waitlists that are now in DHS's possession (obtained from Plaintiffs or CBP), and they solicit additional documentary evidence from the potential PI Class Member, although such documentation is not required to demonstrate class membership. ECF No. 695-3 (Mura Decl.) ¶¶ 6-7, 13 & Exs. 2-3 (Screening Guidance; Interview Questions). As part of the review of DHS records, the asylum officer is to review any notations concerning PI class membership made by CBP on the individual's encounter record (Form I-213). ECF No. 695-3 (Mura Decl.), Ex. 2 at p. 2 (instructing asylum officers to "[n]ote whether an individual's I-213 includes an annotation 'POTENTIAL AOL CLASS MEMBER' (for I-213s from U.S. Border Patrol) or 'Potential AOL Class Member' (for I-213s from OFO)" and explaining that this an-

OPP. TO PLS.' MOT. FOR
COURT OVERSIGHT
Case No. 3:17-cv-02366-BAS-KSC

notation "means that the individual was noted by Border Patrol or OFO as an individual who affirmatively claimed to be a class member").

If the asylum officer determines that an individual is more likely than not a class member (that is, could not enter at a POE before the transit rule's effective date because he/she was subject to metering before July 16, 2019), the individual will be referred for further action depending on the nature of their proceedings. For example, an individual with an order of expedited removal who previously had the transit rule applied at the USCIS credible fear determination stage will receive a new credible fear interview without application of the transit rule. ECF No. 695-3 (Mura Decl.) ¶ 6 & Ex. 3 at 5-8. For individuals who received a final removal order in section 240 removal proceedings, USCIS notifies EOIR of its determinations on a rolling basis so that EOIR can review those cases to determine whether reopening or reconsideration is warranted. ECF No. 695-3 (Mura Decl.) ¶ 17 & Ex. 3 at 8-9; *see also* ECF 695-6 (Mar. 8, 2021 Anderson Decl.) ¶ 9. These procedures remain in place for individuals referred by ICE for class membership screening. Shinners Decl. Ex. A (Davidson Decl.) ¶ 3.

EOIR ROP Review and Motions to Reopen (Groups 2(a), 2(b), and 2(c)). As for EOIR, it promptly notified its adjudicators of the October 30 Order, and adjudicators promptly began reopening cases. ECF No. 695-6 (Mar. 8, 2021 Anderson Decl.) ¶¶ 7-8. EOIR also promptly reviewed its data—as well as relevant data from DHS components—to identify additional cases in which asylum denials were recorded in potential PI class members' removal proceedings. *See* ECF No. 695-6 (Mar. 8, 2021 Anderson Decl.) ¶ 9; Shinners Decl. Ex. B (Sept. 13, 2021 Anderson Decl.) ¶ 4. Those cases identified are subject to a manual review of the Records of Proceedings (ROPs) for each individual to determine whether her case qualifies for relief under Paragraph 2. *See* ECF No. 695-6 (Mar. 8, 2021 Anderson Decl.) ¶¶ 9-10; Shinners Decl. Ex. B (Sept. 13, 2021 Anderson Decl.) ¶¶ 4-5. EOIR has also been reviewing on an ongoing basis the cases referred to it by USCIS after a positive

class membership determination. ECF No. 695-6 (Mar. 8, 2021 Anderson Decl.) ¶ 9. Under this ROP review, and based on guidance from EOIR's Office of General Counsel (EOIR OGC), EOIR adjudicators have been reviewing each ROP for over 2,000 individuals to ascertain (1) whether or not the individual is a PI class member (unless USCIS has already made that positive determination pursuant to the procedures outlined above); and (2) whether or not the transit rule was applied to deny asylum to the PI class member. *See* ECF No. 695-6 (Mar. 8, 2021 Anderson Decl.) ¶¶ 9-12; Shinners Decl. Ex. B (Sept. 13, 2021 Anderson Decl.) ¶ 5. As part of this review, adjudicators are instructed, among other things, to review the Form I-213 if present in the record to determine whether it contains any information relevant to class membership. *Id.* EOIR OGC also conducts a secondary review of all cases and consults with adjudicators as necessary to assist with review. *Id.* ¶ 6.

EOIR has completed its manual review of 1,631 cases, and its ROP review is thus over 75% complete. *See id.* ¶¶ 4, 8. As a result of the ROP review, EOIR has identified approximately 271 PI class members whose cases are eligible for reopening under Paragraph 2. *Id.* ¶ 8. In a small percentage of cases in which the transit rule was applied, an EOIR adjudicator may determine that the ROP does not contain sufficient evidence to determine PI class membership. *See id.* ¶ 8. This result is recorded in EOIR's records tracking the results of the ROP review, and EOIR continues to explore whether and what further review procedures may be necessary for the 46 cases that were determined to have insufficient evidence of class membership that were not otherwise reopened. *Id.* ¶¶ 4, 8.[5]

---

[5] Plaintiffs state that "Defendants were unable to confirm … at the parties' last meet-and-confer" that EOIR OGC's review includes review of records beyond the ROP. Mot. at 18. In fact, government counsel confirmed at the parties' last meet-and-confer that, currently, EOIR OGC's review does not involve a review of records beyond the ROP, but explained that the government was tracking those "insufficient evidence" cases and determining how best to accomplish any further review as may be necessary. Shinners Decl. ¶ 38.

Additionally, potential PI class members seeking reopening may—but are not required to—submit their own motions to reopen asserting PI class membership and an entitlement to relief based on the application of the transit rule, and attaching evidence of PI class membership. ECF No. 695-6 (Mar. 8, 2021 Anderson Decl.) ¶¶ 6, 9; Shinners Decl. Ex. B (Sept. 13, 2021 Anderson Decl.) ¶ 9. Adjudicators have been advised that if a motion to reopen is filed, and the individual meets the class membership criteria and the transit rule was applied, the case should be reopened in accordance with the Court's October 30 Order. *Id.* ¶ 7. As the government recently advised Plaintiffs, EOIR is amenable to working with Plaintiffs on a template motion to reopen for potential PI class members to use should they wish to file their own motion asserting class membership. Shinners Decl. ¶ 40(d).

***Ongoing Steps to Reopen or Reconsider Applications of the Transit Rule to those with Expedited Removal Orders (Groups (1)(b) and (1)(c)).*** As the procedures discussed above have continued to be implemented, DHS has also worked to develop additional procedures to determine class membership for those potential PI class members who were ordered removed under orders of expedited removal after application of the transit rule, and whose cases have not already been assessed under the pre-removal screening, notice, and interview procedures described above.

To identify potential PI class members who likely received expedited removal orders after application of the transit rule (which Plaintiffs refer to as "Negative CFI" cases, *see* Mot. at 5), USCIS used the Master List information described above, isolating those potential class members for whom USCIS's data reflected that they received negative credible fear determinations and the transit rule was applied (and who were thus likely not ultimately referred to EOIR for section 240 removal proceedings). *See* Shinners Decl. Ex. A (Davidson Decl.) ¶¶ 5, 24. Based on the detention and removal information provided by ICE, USCIS can then identify which of those individuals have been removed from the United States, and which have not. *See id.* ¶ 6.

USCIS has developed procedures to make PI class member determinations for the individuals on the Master List to whom USCIS applied the transit rule, who are not detained, and whose removal has not been executed—that is, those who are residing inside the United States (roughly, Group (1)(b), *see* Mot. at 7). Shinners Decl. Ex. A (Davidson Decl.) ¶¶ 4-7. The government shared the outlines of these procedures with Plaintiffs on July 16, 2021, explaining that they are "nearly finalized." Shinners Decl. ¶ 34(a).[6] USCIS expects that it will begin implementing them in October 2021. Shinners Decl. Ex. A (Davidson Decl.) ¶ 17. Under these procedures, USCIS will mail to the individual a request to appear for an interview as well as a notice of potential class membership. *Id.* ¶¶ 8-9 & Exs. 1-3. USCIS will then follow procedures that are substantially similar to those applied to Groups (1)(a) and (2)(a), under which an asylum officer interviews the potential class member, consults DHS records and available waitlists, and makes a determination as to whether the individual is a PI class member. *See* Shinners Decl. Ex. A (Davidson Decl.) ¶¶ 11-17 & Ex. 1. If the asylum officer determines that an individual is more likely than not a class member (that is, could not enter at a POE before the transit rule's effective date because he/she was subject to metering before July 16, 2019), the individual will generally receive a new credible fear interview without application of the transit rule. *See id.* ¶ 15 & Ex. 1, § 13(a)(iv).

As for those individuals who were removed under orders of expedited removal and are thus not in the United States, government counsel also shared the outline of those procedures with Plaintiffs on July 16, 2021. As stated at that time, "[t]hese procedures contemplate that Class Counsel will provide notice to the individuals on

---

[6] Plaintiffs state that "Defendants did not explain how they would identify potential PI class members in Group (1)(b) who will receive a USCIS screening" or "how they will identify individuals [in Group (1)(c)] to whom Plaintiffs would be expected to provide notice." Mot. at 7, 8. Yet Plaintiffs did not ask these particular questions of the government, and are thus raising them for the first time via motion. Shinners Decl. ¶ 36.

OPP. TO PLS.' MOT. FOR
COURT OVERSIGHT
Case No. 3:17-cv-02366-BAS-KSC

the Master List who received a negative fear determination, had the Transit Rule applied, and were removed, along with instructions for submitting evidence of class membership to USCIS. USCIS will review the evidence, as well as the information available in internal systems and in the A file, including the I-213, and available waitlists, in order to determine if the individual is more likely than not a PI Class Member." Shinners Decl. ¶ 34(a); *see also id.* Ex. A (Davidson Decl.) ¶¶ 18-28. If USCIS determines that an individual is more likely than not a PI class member, the individual's immigration case is eligible for further processing. *See id.* ¶ 27. Because these individuals are located abroad, however, there needs to be a mechanism for them to return to the United States to participate in their immigration case. *Id.* ¶¶ 27-28. Accordingly, they will need to follow procedures to request return for reopened proceedings, as set forth below. *See id.* ¶ 28.

   ***Procedures to Request Return for Reopened Proceedings.*** Defendants have also been working to establish procedures for PI class members who are outside the United States to request return to the United States if they have reopened proceedings that require in-person presence. As government counsel reported to Plaintiffs based on information received from DHS, these individuals may not have travel documents permitting them to travel to or enter the United States, and thus DHS reported that it intends for such PI class members to use Form I-131, Application for Travel Document, to apply for advance parole, and DHS will adjudicate these applications on a case by case basis. Shinners Decl. ¶ 35; *see also* https://www.uscis.gov/sites/default/files/document/forms/i-131.pdf. If the application is approved, the individual will receive a travel letter to allow her to board an aircraft and travel to a POE. *See* 8 C.F.R. § 212.5(f); Shinners Decl. ¶ 35. Once the individual arrives at the POE, CBP will inspect the individual and will ultimately make the determination as to how to process the individual, which may depend on the particular circumstances of their individual case. Shinners Decl. ¶ 35; *see, e.g.,* 8 U.S.C. § 1225(a)(3); 8 C.F.R. § 235.1.

***Notification Efforts***. As set forth above, DHS is providing notice of the preliminary injunction to those identified as potential PI class members and scheduled for interviews before USCIS, regardless of whether they fall into the categories for which the government is required to provide notice. Government counsel also reported to Plaintiffs that, to further inform potential PI class members of the PI Orders, ICE intends to post a notice in its detention facilities explaining the preliminary injunction and the class membership definition, and that USCIS will be posting the same type of information on its website. Shinners Decl. ¶ 40(c), 41.

## C. Plaintiffs' Prior Motions Concerning the PI Orders.

In developing the procedures discussed above, Defendants proactively addressed many of Plaintiffs' ideas and concerns. For example, when interviewing potential PI class members, USCIS asylum officers are required to consult available waitlists to determine whether the individual's name appears on a waitlist, which would serve as evidence that the individual was present in a Mexican border town across from a POE and potentially subject to metering practices before July 16, 2019. ECF No. 695-3 (Mura Decl.) Ex. 3 at 3-4 (screening guidance); Shinners Decl. ¶ 9 & Ex. A (Davidson Decl.) ¶ 12 & Ex. 1. Defendants also agreed, as a compromise, not to rely on prior negative class membership determinations by USCIS to rule out individuals for class membership, which essentially gives those individuals another opportunity to demonstrate PI class membership. *See* ECF No. 695-3 (Mura Decl.) Ex. 3 at 4-5; Shinners Decl. ¶ 13.

Because the parties were unable to come to agreement on certain other issues, on December 15, 2020, Plaintiffs filed a "Motion to Enforce Preliminary Injunction." ECF Nos. 644, 646. That motion asked the Court to require Defendants to submit a detailed implementation plan and status reporting, and to conduct bi-weekly hearings. Although labeled a "Motion to Enforce," the motion essentially asked the Court to clarify or modify its orders to resolve areas of dispute with respect to implementation of the Court's October 30 Order. Plaintiffs argued, among other things:

OPP. TO PLS.' MOT. FOR
COURT OVERSIGHT
Case No. 3:17-cv-02366-BAS-KSC

(1) that the October 30 Order required Defendants to try to obtain all waitlists maintained by entities in Mexico; (2) that the October 30 Order required Defendants and EOIR to create evidentiary presumptions and give particular weight to particular evidence, such as treating someone's name on a waitlist, or their entry at a particular POE on a particular date, as "presumptive" evidence of PI class membership; (3) that the October 30 Order precluded Defendants and EOIR from considering in any way a person's statements made in prior PI class membership screenings; (4) that the October 30 Order requires any notice provided by Defendants to: "include[] a summary of the process defendants will use to identify PI class members"; "inform[] recipients of the opportunity to submit evidence of PI class membership, provide[] a description of the kinds of evidence accepted," "include[] a date or specified time period by which recipients will be required to submit such evidence," and designate a government point of contact where an individual can obtain information about his/her case; and (5) that the October 30 Order required EOIR to reopen cases of PI class members and remand for evidentiary hearings even where asylum was ultimately denied solely on grounds other than the transit rule, or even where asylum was denied on alternative grounds to the transit rule, or even where the class member had already received a full opportunity to present evidence of asylum eligibility. *See generally* ECF No. 646; Shinners Decl. Ex. C (Proposed Order on Mot. to Enforce). The government argued that none of these requests were required by the PI Order or the October 30 Order, explicitly or implicitly, and that many contradicted the terms of the October 30 Order. *See generally* Opp. to Mot. to Enforce (ECF No. 657). Plaintiffs' Motion to Enforce remains pending.

Plaintiffs next sought leave to take expedited discovery concerning preliminary-injunction compliance. *See* Mem. in Supp. of Mot. for Discovery (ECF No. 680-1). Their Motion for Discovery, which also remains pending, was based largely on the argument that Defendants had not shared information about potential PI class members with Plaintiffs given the pendency of a dispute over the appropriate terms

of a confidentiality protective order to govern further sharing to third parties of the asylum-related information of those potential class members. *See id.* at 5, 16. Since that time, a protective order was entered, and Defendants and EOIR have produced the requested information about potential PI class members and class member determinations, *see supra* at 7-8, and has continued to provide additional information about its PI implementation procedures, *see, e.g.*, Opp. to Mot. for Discovery, Exs. B-E (ECF Nos. 695-3–695-6); Shinners Decl. ¶¶ 17-21.

## **ARGUMENT**

### **A. Monitoring is Not Required to Ensure Compliance with the PI Orders.**

While the Court has authority to supervise compliance with its orders, monitoring is not required to ensure compliance in this case and would not be the best use of Magistrate Judge Crawford's and the parties' resources. Compliance monitoring is most appropriate when "a party has proved resistant or intransigent to complying with the remedial purpose of the injunction in question." *United States v. Apple, Inc.*, 992 F. Supp. 2d 263, 280 (S.D.N.Y. 2014) (citing *United States v. Yonkers Bd. Of Educ.*, 29 F.3d 40, 44 (2d Cir. 1994)). In contrast, Defendants and EOIR have continued to adhere to and progressively implement the terms of the PI Order and the October 30 Order.

Indeed, Plaintiffs have not pointed to any specific instances of non-compliance with or bad-faith implementation of the PI Orders, despite having access to ample information about potential PI class members. Plaintiffs instead point to concerns with the pace of the government's implementation of aspects of the October 30 Order's directives, and some recently-raised differences of opinion over precisely how to implement those directives. But given the massive retrospective identification efforts that the October 30 Order contemplates—which have in turn required the development of several sets of brand new procedures that often require the coordination of several different agencies—the government's progress on these tasks has been substantial and reasonable. Further, the government has continuously worked

17

toward developing procedures to address the various aspects of implementation, taking time to try to ensure that those procedures are fair, efficient, and workable. And while the parties have disagreed at various points along the way as to the precise means of implementing the October 30 Order's directives, these disputes do not evidence non-compliance. The government in fact shares Plaintiffs' desire to resolve those disputes. For that reason, the government expressly stated a desire to engage in further discussion with Plaintiffs to try to resolve certain disputes, such as those regarding notice requirements, the procedures for filing motions to reopen before EOIR, and the procedures for making class member determinations for individuals who have been removed under orders of expedited removal. Indeed, the government has proposed enlisting an outside mediator to help resolve these type of implementation disputes. The government believes mediation would be a productive way to facilitate agreement on the administration of notice, the development of template motions, and aspects of the procedures for identifying class members,[7] in a manner that takes into account the operational needs and constraints of both the impacted government agencies and Class Counsel, and which would hopefully result in even more efficient implementation of the October 30 Order.

Therefore, the specific disputes Plaintiffs cite in their current Motion do not support their request for broad compliance monitoring, and could likely be resolved by further discussion between the parties, perhaps with the assistance of an outside mediator. First, Plaintiffs argue that the government has thus far not implemented certain procedures. *See* Mot. at 15, 21, 23. Yet this framing of the issues ignores that Defendants have made continuous progress toward completion of the Court's directives with respect to identifying potential cases for reopening or reconsideration.

---

[7] As the government advised Plaintiffs, however, it does not believe that most of the issues raised in Plaintiffs' pending Motion to Enforce (except issues related to the contents and administration of notice) are suitable for mediation, and thus does not agree to mediate those issues. *See* Shinners Decl. ¶ 39.

18

EOIR's ROP review remains ongoing and is nearing completion after review of over 1,600 cases, *see* Shinners Decl. Ex. B (Sept. 13, 2021 Anderson Decl.) ¶ 4, and DHS has continuously conducted pre-removal screening and interviews of potential PI class members referred by ICE. Meanwhile, DHS worked to develop workable and fair procedures to address other populations of potential PI class members and to effect the purpose of the PI Orders.

The procedures about which Plaintiffs express concern are generally either close to being implemented or are in progress. With respect to procedures for the identification of what Plaintiffs term "Negative CFI Cases" in Groups (1)(b) and (1)(c), *see* Mot. at 15, the government has already identified the pool of potential PI class members by creating the Master List. USCIS has further identified individuals on the Master List that likely received orders of expedited removal after application of the transit rule by USCIS, and it will soon implement its procedures for conducting PI class membership determinations of those potential class members who are not detained and subject to imminent removal, and who are residing in the United States. *See* Shinners Decl. Ex. A (Davidson Decl.) ¶ 17. As for those potential PI class members who are outside the United States, the government is also close to finalizing its proposed procedures, which rely in part on Plaintiffs to provide notice to potential PI class members who have been removed (as contemplated by the October 30 Order, at page 22). *See supra* at 13-14. Likewise, the procedures for individuals whose cases are reopened for further proceedings to request to return to the United States are also in progress. *See supra* at 14.

With respect to the government's notice plans, Paragraph 3 requires that the government inform potential PI class members of their potential class membership and the existence and import of the injunction, if those individuals are in "DHS custody" or "in administrative proceedings before USCIS or EOIR" (defined as "expedited removal proceedings" and "regular removal proceedings"). October 30 Order at 22, 25.  Currently, DHS is (or will soon be) providing or mailing notice to those

OPP. TO PLS.' MOT. FOR
COURT OVERSIGHT
Case No. 3:17-cv-02366-BAS-KSC

who are referred or scheduled for USCIS class membership interviews, regardless of whether they are in DHS custody. *See* Shinners Decl. Ex. A (Davidson Decl.) ¶ 8 & Ex. 2. The government has also developed other notice plans, including to make information available on its website and at ICE detention facilities about the PI class definition and the potential availability of reopening relief. *See supra* at 15. The contents of a notice may at times be dependent on finalizing other procedures, so that the notice can provide the potential PI class member with relevant information about those procedures that will not change in the future.[8] Moreover, the government has prioritized finalizing procedures to identify and notify those potential PI class members who have received determinations of asylum ineligibility and may thus qualify for retrospective reopening/reconsideration relief. *See generally supra* at 8-13 (describing efforts and procedures to identify and notify these individuals). This makes sense because there is no risk that the transit rule will be prospectively applied to those who are currently in administrative proceedings. There is thus no need for PI class members to "self-identify" in the course of their proceedings to obtain the benefits of the PI Order. Indeed, given that the transit rule is not in effect, the sole purpose for identifying and notifying potential PI class members is to ascertain whether they are entitled to reopening/reconsideration relief.

Second, Plaintiffs take issue with certain aspects of Defendants' ongoing and planned procedures. For example, Plaintiffs claim that the government's proposed procedures for making PI class member determinations for individuals who have

---

[8] Plaintiffs themselves have requested that the Court order that any notice include details about the process used to identify class members and a description of how to submit evidence. *See* Mem. in Supp. of Mot. to Enforce (ECF No. 646), at 9-10, 19-21; Shinners Decl. Ex. C (Proposed Order on Mot. to Enforce) ¶ 2(b), (c). While Defendants do not agree these details are required to advise class members of the existence and import of the Court's preliminary-injunction orders, this at least illustrates the inter-dependent nature of the notice contents and other implementation procedures.

been removed under orders of expedited removal (Group (1)(c)) transfer the burden of reopening and reconsideration to the PI class members themselves. Mot. at 16. This is incorrect. The Court's Order directs the government to take "affirmative steps" to reopen such cases, including by identifying PI class members. October 30 Order at 25. Defendants have taken such steps, in that they identified a pool of potential PI class members who have been removed and who likely received orders of expedited removal after the application of the transit rule. *See supra* at 12. Defendants' planned procedures contemplate that Plaintiffs provide notice to those individuals along with instructions as to how to submit evidence of PI class membership to the government. *See supra* at 13-14; Shinners Decl. Ex. A (Davidson Decl.) ¶ 19. These procedures thus combine affirmative steps with the Court's finding that it is incumbent on Plaintiffs to facilitate notice to those individuals, *see* October 30 Order at 22, as well as with Plaintiffs' request for a mechanism to allow potential class members to submit evidence of class membership, *see* Mot. at 16.[9] For this population of potential PI class members who are outside the United States, these procedures make sense, because those who are identified as PI class members entitled to relief under Paragraph 2 will need to be located to allow them to participate in their immigration proceedings. *See supra* at 14. Further, such procedures would allow the government to affirm that the individual "continues to seek access to the U.S. asylum process." *See* PI Order at 36.

Plaintiffs next take issue with certain aspects of EOIR's ROP Review. They assert that "Defendants have not been able to say with certainty that ROP class membership review will include examining all relevant records in DHS's possession" for

---

[9] Because these particular procedures contemplate providing instructions to potential PI class members as to how to submit evidence of PI class membership, the government is not sure what Plaintiffs mean when they say that "Defendants have indicated that they do not plan to solicit PI class membership information" from Group (1)(c). *See* Mot. at 16-17.

OPP. TO PLS.' MOT. FOR COURT OVERSIGHT
Case No. 3:17-cv-02366-BAS-KSC

those cases where the ROP does not contain sufficient evidence to make a determination of class membership. Mot. at 17-18. Yet this is a small number of cases, and EOIR has tracked those cases. Shinners Decl. Ex. B (Sept. 13, 2021 Anderson Decl.) ¶¶ 4, 8. The government is also exploring whether and what further review procedures may be necessary for these cases. *See id.* ¶ 8. To the extent that Plaintiffs complain that EOIR is not soliciting evidence of class membership or advising certain potential PI class members of the results of ROP review, *see* Mot. at 18, this is not required by the Court's orders. In any event, the government has provided, or will be providing, relevant ROP review results to Class Counsel. *See* Shinners Decl. ¶¶ 27, 30, 34(d) & Ex. B (Sept. 13, 2021 Anderson Decl.) ¶ 9.

Plaintiffs also express concern about EOIR's use of motions to reopen as a voluntary means for PI class members to assert class membership and seek reopening of a prior asylum denial. *See* Mot. at 19-20. The government emphasizes that EOIR is still affirmatively reviewing cases for reopening and is not relying on PI class members to file motions to reopen. *See supra* at 10-12. Instead, the motion to reopen is an avenue available to potential PI class members who wish to use it to present additional evidence of PI class membership. Further, EOIR has agreed to work with Plaintiffs to develop a template motion to reopen that would hopefully resolve their concerns, *see supra* at 12; *see also* Mot. at 21, although Plaintiffs have pointed to no concrete examples of difficulties experienced by PI class members with respect to these motions.

Finally, Plaintiffs assert that the government should currently be reviewing all Form I-213 encounter records for all potential PI class members to determine whether the form contains an annotation from USBP that the individual affirmatively claimed to be a PI class member. *See* Mot. at 24-25. Because the parties have not substantively discussed this issue, *see* Shinners Decl. ¶ 37, it is unclear what precisely Plaintiffs maintain should be done. However, as noted, the government's current procedures comply with the October 30 Order in that they contemplate review

of the Forms I-213 to help make class membership determinations for those potential PI class members who may be entitled to relief under Paragraph 2. *See supra* at 9-10, 11, 13, 14. It would not be a reasonable or efficient use of resources, particularly at this time, to conduct a manual review of all Forms I-213 for *all* potential PI class members encountered by USBP—including those to whom the transit rule was not applied—to determine whether they claimed to be PI class members. This is particularly so given the relatively small number of electronic annotations of affirmative claims to class membership made by OFO. *See* Shinners Decl. ¶ 26 (stating that the list of OFO notations produced to Plaintiffs contained 10 people).

In sum, none of the "disputes" Plaintiffs raise demonstrate non-compliance with the Court's orders, and many would benefit from further discussion between the parties. For these reasons, the Court should deny Plaintiffs' request for compliance monitoring, which would likely involve broader measures than facilitating negotiations.

**B. Plaintiffs Cannot Seek Modification of the PI Orders Through this Motion.**

Plaintiffs suggest that the Court's referral to a Magistrate Judge for oversight would allow the Magistrate Judge to decide issues and modify the preliminary-injunction orders. *See* Mot. at 13, 14 (stating that "[i]ndeed, if circumstances warrant, the Court has the power to modify the injunction in consideration of new facts"). This request is improper for several reasons.

As an initial matter, the Court may not substantively modify the injunction's terms because the government's appeals from both the PI Order and the October 30 Order remain pending. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); *Townley v. Miller*, 693 F.3d 1041, 1042 (9th Cir. 2012) (filing of notice of appeal divested the district court of jurisdiction over preliminary

OPP. TO PLS.' MOT. FOR
COURT OVERSIGHT
Case No. 3:17-cv-02366-BAS-KSC

injunction); *Natural Resources Defense Council, Inc. v. Southwest Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) (a modification to injunctive relief made pursuant to Rule 62 may not "materially alter the status of the case on appeal.").

Second, Plaintiffs' motion does not contain any specific requests to modify the injunctive-relief orders but instead suggests an open-ended modification power that could be accomplished through compliance monitoring and "informal" resolution. *See* Mot. at 25 (explaining that they seek "a more informal Court oversight mechanism"). If the Court were to modify its PI Orders through informal procedures, whether conducted by the District Court or a Magistrate Judge, this could potentially deprive the parties of a full opportunity to be heard on a number of current or potential future PI implementation issues that may substantially affect their rights. For these reasons, Defendants and EOIR object to the use of compliance monitoring as a means to modify the existing injunctive-relief orders, absent the parties' agreement to such modification.

Third, Defendants and EOIR have not consented to Magistrate Judge jurisdiction in this matter. Accordingly, a direct or indirect referral of preliminary-injunction matters to a Magistrate Judge for decision—including those issues raised in the pending motion to enforce or any modification of the preliminary injunction—would be inconsistent with 28 U.S.C. § 636(b)(1). *See* 28 U.S.C. § 636(b)(1)(A) (excluding motions for injunctive relief from matters a judge may designate a magistrate judge to determine); *Quatama Park Townhomes Owners Ass'n v. RBC Real Est. Fin., Inc.*, 365 F. Supp. 3d 1129, 1132 (D. Or. 2019) ("[A] magistrate judge may not issue a temporary restraining order or preliminary injunction, even though such orders are not dispositive.").

## C. Plaintiffs Largely Do Not Address their Other Pending Motions Concerning the PI Orders.

Finally, Plaintiffs do not make clear whether this request for relief supersedes

their prior requests for compliance monitoring and discovery set forth in their Motion to Enforce and Motion for Discovery. The government opposes each of these motions, because it is continuing to comply with the Court's orders, has provided ample information about potential PI class members and the implementation of the PI Orders to Plaintiffs, and has continued to engage with Plaintiffs to try to accommodate their concerns and to resolve disputes. The government is open to mediation to resolve many of the present and future disputes over implementation, and believes the most efficient method to resolve those disputes is to address them with a dedicated outside mediator.[10] Defendants note, however, that if the Court does order some form of compliance monitoring, that monitoring should be the least burdensome as possible to ensure that the impacted agencies are able to continue to devote resources to implementing the October 30 Order. *See Thomas v. Cnty. of L.A.*, 978 F.2d 504, 510 (9th Cir. 1993) (cautioning that compliance monitoring can be an appropriate exercise of the court's discretion "[p]rovided it is not overly burdensome") (internal quotations omitted). Further, compliance monitoring should render Plaintiffs' motion for leave to take discovery into preliminary-injunction compliance superfluous.[11]

## CONCLUSION

For the reasons discussed, the government respectfully requests that the Court deny Plaintiffs' request to refer oversight of compliance with the Court's PI Orders to Judge Crawford for "supervision, mediation, resolution and recommendation."

//

---

[10] As is clear from Plaintiffs' Motion, however, Defendants have not obtained Plaintiffs' agreement to this approach, and so have not yet taken steps to retain a mediator.

[11] Although Plaintiffs have not withdrawn their request for leave to take discovery, Plaintiffs have since received substantial information about the government's finalized procedures and potential PI class members, and will continue to receive more information as PI class member determinations are made and as additional procedures are finalized. *See* Shinners Decl. ¶¶ 17-32, 34-35, 40.

OPP. TO PLS.' MOT. FOR
COURT OVERSIGHT
Case No. 3:17-cv-02366-BAS-KSC

DATED: September 15, 2021                Respectfully submitted,

                                         BRIAN M. BOYNTON
                                         Acting Assistant Attorney General
                                         Civil Division

                                         WILLIAM C. PEACHEY
                                         Director

                                         SAMUEL P. GO
                                         Assistant Director

                                         */s/ Katherine J. Shinners*
                                         KATHERINE J. SHINNERS
                                         Senior Litigation Counsel
                                         United States Department of Justice
                                         Civil Division
                                         Office of Immigration Litigation
                                         District Court Section
                                         P.O. Box 868, Ben Franklin Station
                                         Washington, D.C. 20044
                                         Tel: (202) 598-8259 | Fax: (202) 305-7000
                                         katherine.j.shinners@usdoj.gov

                                         ALEXANDER J. HALASKA
                                         DHRUMAN Y. SAMPAT
                                         Trial Attorneys

                                         *Counsel for Defendants*

OPP. TO PLS.' MOT. FOR
COURT OVERSIGHT
Case No. 3:17-cv-02366-BAS-KSC

# CERTIFICATE OF SERVICE

*Al Otro Lado v. Mayorkas*, No. 17-cv-02366-BAS-KSC (S.D. Cal.)

I certify that I served a copy of this document on the Court and all parties by filing this document with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all counsel of record.

DATED: September 15, 2021          Respectfully submitted,

                                   */s/ Katherine J. Shinners*
                                   KATHERINE J. SHINNERS
                                   Senior Litigation Counsel
                                   United States Department of Justice

OPP. TO PLS.' MOT. FOR
COURT OVERSIGHT
Case No. 3:17-cv-02366-BAS-KSC