BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
SAMUEL P. GO
Assistant Director
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation – District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-2859 | Fax: (202) 305-7000
katherine.j.shinners@usdoj.gov
*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
**(San Diego)**

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | Hon. Cynthia A. Bashant |
| v. | **DECLARATION OF KATHERINE J. SHINNERS IN SUPPORT OF OPPOSITION TO MOTION FOR COURT OVERSIGHT** |
| ALEJANDRO MAYORKAS, Secretary, U.S. Department of Homeland Security, in his official capacity, *et al.*, | |
| *Defendants*. | |

# DECLARATION OF KATHERINE J. SHINNERS

I, Katherine J. Shinners, declare as follows:

1. I am Senior Litigation Counsel with the District Court Section of the U.S. Department of Justice, Office of Immigration Litigation. I represent the federal defendants in their official capacities in the case entitled *Al Otro Lado, Inc. v. Mayorkas*, No. 3:17-cv-02366-BAS-KSC, which is currently pending in the U.S. District Court for the Southern District of California. I also represent non-party the Executive Office for Immigration Review (EOIR), an agency of the U.S. Department of Justice, with respect to this litigation. EOIR and the Defendants are referred to collectively herein as "the government."

2. I make this declaration to provide information with respect to the government's Opposition to Plaintiffs' "Motion for Court Oversight of Preliminary Injunction Compliance" (ECF No. 736). These statements are based on my personal knowledge. In my role as counsel for the government, I am aware of communications between counsel concerning the implementation of Court's November 19, 2019 Preliminary Injunction Order (ECF No. 330) ("PI Order") and its October 30, 2020 Order Granting Plaintiffs' Motion for Clarification of Preliminary Injunction (ECF No. 605) ("October 30 Order"), as well as information reported to me by the agencies and departments impacted by those orders, including U.S. Citizenship and Immigration Services (USCIS), U.S. Customs and Border Protection (CBP), U.S. Immigration and Customs Enforcement (ICE)—all component agencies of the Department of Homeland Security (DHS)—and EOIR.

**Conferences Regarding Implementation of the October 30 Order & Production of Information Regarding Potential PI Class Members**

3. In November and December 2020, Plaintiffs' and the government's counsel conferred over the telephone and via email and letter concerning implementation of the Court's October 30 Order, which contains requirements for identification of, notice to, and particular reopening or reconsideration relief to be afforded to,

members of the subclass certified in the PI Order (PI class members).

4. On November 13, 2020, I sent an email to Plaintiffs' counsel that explained the government's efforts thus far. Among other things, that November 13, 2020 email also sought Plaintiffs' views on how to accomplish the October 30 Order's requirement to identify PI class members and stated that the government's "first priority has been working to identify those with asylum denials in 240 [regular removal] proceedings (which would include those who were denied asylum but granted withholding of removal) between July 16, 2019, and June 30, 2020, inclusive."

5. On Friday, November 13, 2020, counsel for the parties conferred via telephone regarding the implementation of the preliminary injunction. I explained on that call that the government's "immediate concern" with respect to compliance with the October 30 Order was to take affirmative steps to identify cases for reopening and reconsideration under Paragraph 2 of that order.

6. Counsel for the parties again conferred via telephone on November 19, 2020, and discussed various topics. The discussions revealed that the parties were in agreement on various aspects of the October 30 Order—including that it applied to those class members who were granted withholding of removal but denied asylum, and also potentially applied to those class members who entered illegally after attempting to enter at a Port of Entry (POE).

7. At the November 19 conference, counsel discussed, among other topics, different options for identification of class members. As a result of this conference, the government began an effort to identify a comprehensive list of potential class members using data points available in different agencies' electronic system of records. First, CBP would provide information about inadmissible individuals it had encountered between July 16, 2019, and June 30, 2020. Then, the plan was that USCIS and EOIR would provide data from their respective systems reflecting

whether or not the individual sought asylum and disposition of that case. Once the list was narrowed down to these potential PI class members, data from ICE could provide current contact information and information about execution of removal orders to facilitate locating and providing notice to those potential PI class members to whom Defendants are required to provide notice, as well as to share with Plaintiffs to facilitate their ability to provide notice to class members.

8. Counsel for the parties again conferred via telephone on November 24, 2020. At that conference, counsel discussed a number of matters. At the end of that conference, I relayed that the government had begun developing a comprehensive list of potential PI class members as described in Paragraph 7, *supra*.

9. On November 25, 2020, Plaintiffs' counsel sent government counsel a letter setting forth their view of steps that should be taken to implement the October 30 Order. In their November 25, 2020 letter, Plaintiffs stated, among other things, that: "'All reasonable efforts to identify class members' should include identifying all individuals who (i) were processed as asylum seekers since July 16, 2019 at Class A POEs on the U.S.-Mexico border or (ii) who otherwise entered the United States and sought asylum since July 16, 2019." By "processed as asylum seekers," Plaintiffs indicated that they meant to include "all individuals who presented at a POE and were either referred to an Asylum Officer for a credible/reasonable fear interview or were issued a Notice to Appear and subsequently applied for asylum in removal proceedings." Plaintiffs stated their view that "it is incumbent upon the government to cast a broad net to identify potential class members." Plaintiffs then went on to discuss their views on "[e]stablishing class membership," stating that this process should include "using [waitlists] in determining PI class membership," and that it should involve "affirmatively seek[ing] evidence of PI class membership from" those individuals described above, that is, those who (i) were processed as asylum seekers since July 16, 2019 at Class A POEs on the U.S.-Mexico border or (ii) who

3

otherwise entered the United States and sought asylum since July 16, 2019 ("unless Defendants have already established PI class membership based on review of an individual's case file and the relevant metering waitlist").

10. The November 25, 2020 letter also stated Plaintiffs' view that, in determining whether or not someone is a PI class member, "Defendants may not rely on prior PI class membership screening to *exclude* any individual from class membership." (Emphasis in original.)

11. In its December 2, 2020 response letter, the government stated that it "has devoted significant initial efforts to addressing Paragraph 2 of the Order, which requires the government to take affirmative steps to reopen or reconsider past determinations that class members were ineligible for asylum based on the third-country transit rule ("transit rule")." It explained that, in particular, the government "must prioritize review of the potential class membership of individuals currently in the custody who are otherwise facing imminent removal," and that "it makes practical sense to focus compliance efforts on individuals with final removal orders because this category of individuals is more likely to be eligible for relief under Paragraph 2 than a broader list of class members." The letter also noted that, additionally, EOIR "also took immediate, affirmative steps" to identify other cases that may be eligible for reopening or reconsideration relief in compliance with Paragraph 2 by identifying individuals who had asylum denials, and that, at that time, EOIR was "preparing to begin the burdensome task of a case-by-case review of each individual on this list who was encountered by CBP between July 16, 2019 and June 30, 2020."

12. The government's December 2, 2020 response letter also stated that, "[i]n the midst of these efforts . . . Defendants are also developing a broader list of individuals who were encountered by CBP at Southern land border ports of entry or between ports of entry along the Southern land border between July 16, 2019 and

June 30, 2020, were processed for expedited removal or Section 240 removal proceedings, and were referred for a credible fear interview or who filed a Form I-589 in Section 240 removal proceedings. Although this list will be overbroad, it could be used for purposes of providing notice under Paragraph 3 of the Court's order. Creating this list involves several different steps and employs data from several different departments and components. Thus, although Defendants have accomplished some of this task, this data compilation is not yet complete."

13. In their December 2, 2020 letter, Defendants also stated that "to avoid a dispute with Plaintiffs, the government is not relying on the results of prior class membership screenings to exclude individuals from consideration for class membership. Yet an individuals' prior statements in prior screening interviews are nonetheless relevant evidence to be considered when determining whether the individual is more likely than not a class member."

14. On Friday, December 4, 2020, the parties again conferred via telephone concerning numerous topics, including implementation of the October 30 Order as well as the proposed protective order. At that conference, Plaintiffs' counsel stated that individuals who have been granted asylum are no longer PI class members because they are no longer seeking access to the U.S. asylum process.

15. On December 15, 2020, Plaintiffs filed a Motion to Enforce Preliminary Injunction. That same date, the government filed a Motion for Confidentiality Protective Order seeking entry of an order that would enable Defendants and EOIR to share information about potential PI class members with Plaintiffs by setting conditions on Plaintiffs' ability to share PI class members' protected asylum information with third parties. The government filed its opposition to Plaintiffs' Motion to Enforce on January 5, 2021.

16. Since the time the Motion to Enforce was filed, counsel for the parties

have communicated over email and in telephone conferences concerning various aspects of implementation of the preliminary injunction. Some, but not all, of these communications are set forth in this declaration.

17. For example, on January 28, 2021, I sent an email to Plaintiffs' counsel in response to their questions about screenings for detained individuals that provided information about the USCIS interview process for determining whether an individual was subject to metering at a port of entry (POE) before July 16, 2019: "As previously described, DHS is moving forward with the following process. Certain individuals in DHS custody who are subject to removal are provided notice in substantially the form attached to the opposition to the motion to enforce, with some minor non-substantive changes (see attached updated version). This notice is provided on a rolling basis by local ICE offices only to those who are referred to USCIS for interviews. The notice itself does not list the timing of the interview, but interviews are scheduled on a rolling basis by the local asylum office. At this time, approximately 36 interviews have been conducted. Individuals may have their own counsel present for the interview, at no expense to the government. Individuals are interviewed by USCIS officers, who also review available waitlists and governmental records, as described in the opposition to the motion to enforce. The interview consists of questions designed to determine whether the individual was subject to metering before July 16, 2019, and to determine whether the individual has any documentary evidence s/he wishes to present for consideration. If an individual is determined to be a PI class member, s/he will receive documentation of that determination and will not be removed at least until further proceedings take place as set forth below. If an individual is determined to be a PI class member to whom the transit bar was applied and has an order of expedited removal: (1) if the transit bar was applied by USCIS at the credible fear stage, the individual will receive a new credible fear interview; (2) if USCIS did not apply the transit bar but entered a negative

credible fear determination and the IJ, on review, applied the transit bar, the individual will receive a new referral for credible fear review. If an individual is determined to be a PI class member to whom the transit bar was applied and has an order of removal from immigration court proceedings: the cases will be referred to EOIR on a rolling basis to review to determine whether Paragraph 2 relief is appropriate. If someone is initially determined not to be a class member, there is internal USCIS supervisor review. And these individuals should still be on the broader list of potential class members that the government is developing."

18. On February 25, 2021, I responded to an inquiry from Plaintiffs and provided information about the government's procedures, and included, among other things, some information about general procedures: "Regarding your broader inquiries, those with [Expedited Removal] Orders are sent to a new credible fear interview. As you may have seen, the individual who is determined to be a class member (that is, unable to enter at a POE before July 16, 2019 due to metering) receives notice that says: 'If you have received an order of expedited removal, you may receive a new credible fear interview from an asylum officer or review of your prior credible fear determination from an immigration judge. If you receive a final removal order in removal proceedings before the immigration court, your case may be eligible to be reopened before the Executive Office for Immigration Review, depending on the rulings in your case.' EOIR reviews the case, and if reopened, the parties and respondent's counsel will be served with the order. If the court reopens but determines that the respondent is not entitled to relief, the removal order could then be appealed."

19. On March 3, 2021, counsel for Plaintiffs and the government had a telephone conference at which counsel for the government responded to various questions from Plaintiffs' counsel about various aspects of the government's procedures to implement the October 30 Order. At that conference, I stated that government

counsel would follow up in writing to provide answers to some of Plaintiffs' questions that government counsel wished to confirm with the client agencies and to provide a written description of EOIR's procedures for review of cases for reopening or reconsideration under the October 30 Order.

20. On March 12, 2021, government counsel sent an email to Plaintiffs' counsel answering numerous questions about the government's procedures for implementation of the October 30 Order that Plaintiffs had raised at a March 3, 2021 conference of counsel. The email noted that these procedures were also attached to the government's opposition to Plaintiffs' Motion for Discovery (that had been filed on March 8, 2021) and explained that the agencies had been devoting substantial resources to that deadline. The email provided four pages of answers to questions regarding USCIS PI class membership interviews (including, but not limited to, information about the timing of the interview, the mechanics of obtaining the presence of attorneys/representatives, and procedures for scheduling a new credible fear interview); EOIR's review of cases for reopening or reconsideration; and EOIR's procedural mechanisms for case reopening. That email also explained that, with respect to notice, at that time Defendants were "developing a notice that will go to a broader population [beyond those who are referred to USCIS interviews]—the content of which is dependent on the finalization of various procedures."

21. On March 24, 2021, Plaintiffs' counsel sent an email to government counsel asking a number of additional questions about implementation of the October 30 Order and requesting a meet-and-confer. On April 1, 2021, government counsel responded by email to those questions. The parties met and conferred on the same date.

22. On April 4, 2021, Magistrate Judge Crawford ruled on the government's motion for a protective order and entered a confidentiality protective order governing treatment of potential PI class members' asylum information. *See* ECF

Nos. 707, 709. Judge Crawford ordered that, within 14 days, "defendants shall produce to plaintiffs the 'master list of potential class members' as referenced during the March 24, 2021 hearing. Defendants shall supplement the master list with any additional information in their possession concerning potential class members, their contact information, and detention status no later than 45 days from the date of this Order."

23. On April 22, 2021, the government produced to Plaintiffs information regarding potential PI class members—including contact information, detention status, and removal status—as well as other lists that had been requested by Plaintiffs or referenced in the Court's October 30 Order.

24. As stated in the April 22 letter, the production included what the government refers to as the "Master List" of potential PI class members. This list includes "inadmissible or deportable non-Mexican noncitizens who were encountered by CBP—either OFO [Office of Field Operations] or U.S. Border Patrol (USBP) between July 16, 2019 and June 30, 2020, inclusive, and processed under the Immigration and Nationality Act for expedited removal, expedited removal/credible fear (ER/CF), or a Notice to Appear, and who: (1) as of January 29, 2021, the electronic records of the Executive Office for Immigration Review (EOIR) indicated that the individual filed for Asylum, Withholding of Removal, or the Convention Against Torture before EOIR on or after July 16, 2019; (2) were noted as being originally processed by CBP for ER/CF [expedited removal/credible fear]; or (3) as of January 11, 2021, USCIS has an electronic record of the individual in the Asylum Division's case management system (other than records reflecting a Migrant Protection Protocols case or a Reasonable Fear case)." The government produced data about these individuals, including but not limited to: name, A Number, date and place of encounter, initial processing information,

USCIS records indicating whether or not the transit rule was applied at the credible fear stage, whether the individual's removal order had been executed, detention status, attorney contact information from EOIR and USCIS, and available address information from ICE, USCIS, and EOIR.

25. The April 22 production also included a list of individuals whom USCIS determined were more likely than not PI class members under its current class membership interview and screening process.

26. The April 22 production included other lists as well: a list of 10 non-Mexican individuals who had been processed by OFO under the Immigration and Nationality Act at land ports of entry and as to whom OFO entered a notation in its electronic systems designed to capture whether the individual affirmatively claimed to be a PI class member; two lists that were used by the government in December 2019 and March 2020 to assist with the screening of individuals to determine PI class membership (referenced in the Court's October 30 Order, at pages 22-23); and a list of individuals previously identified by USCIS as PI class members based on its pre-October 30 Order class membership screening procedures.

27. On May 24, 2021, the government made an additional production of information regarding PI class members. Specifically, the government produced two lists of PI class members: (1) an updated list of individuals whom USCIS determined were more likely than not PI class members under its current class membership interview and screening process; and (2) a list of individuals as to whom EOIR adjudicators determined that the EOIR Records of Proceedings (ROPs) contained evidence that they were PI class members.

28. On June 8, 2021, counsel for Plaintiffs sent an email to government counsel containing numerous questions concerning the data produced on April 22 and May 24, 2021, and requesting a conference. On June 9, 2021, counsel for

Plaintiffs sent another email to government counsel containing a "second round" of questions regarding the data as well as questions regarding implementation of the October 30 Order.

29. On June 13, 2021, I sent an email to Plaintiffs' counsel with responses to many of the June 8 data questions. Also on June 13, 2021, the parties conferred to discuss Plaintiffs' data and implementation questions.

30. On June 18, 2021, I sent an email to Plaintiffs' counsel with additional and supplemental responses to the June 8 and June 9 questions. In this email, I indicated that the government was amenable to providing an additional data point to indicate language spoken for potential PI class members, and that the government was in the process of annotating the master list with results of class member determinations. On June 21, 2021, the parties conferred via telephone to discuss these data and other implementation questions.

31. On July 7, 2021, the government produced an updated list of individuals who, as of June 11, 2021, EOIR adjudicators determined that the EOIR ROPs contained evidence that they were PI class members. This updated list added PI class members who had since been identified as a result of EOIR's ROP review process and added a field indicating if the EOIR adjudicator determined not to reopen the case.

32. On July 12, 2021, I sent an email to Plaintiffs' counsel with supplemental responses to the June 8 and June 9 questions.

**Conferences Regarding the Motion for Court Oversight**

33. Meanwhile, on July 2, 2021, Plaintiffs' counsel sent government counsel an email stating: "If the government does not confirm by July 16 that it will take the following steps towards compliance with the court's orders, Plaintiffs will file a motion seeking referral of the pending Motion to Enforce the Preliminary Injunction and any additional disputed issues related to compliance with the

court's Preliminary Injunction and clarification Order—as set forth below—to mediation before Judge Crawford." Among other things, the email requested that the government:

    a. "Finalize and begin meaningfully implementing plans by which all PI class members ordered removed after application of the Ban [transit rule] in expedited removal proceedings—who remain in DHS custody or were in DHS custody or in administrative proceedings before USCIS or EOIR at any time since the PI was issued—shall be identified and have their cases reopened or reconsidered. Such a plan must include, at a minimum, a mechanism early in the process for potential class members to be notified that their cases are being reviewed and to submit statements or evidence regarding whether they were 'unable to make a direct asylum claim at a U.S. POE before July 16, 2019 because of the U.S. Government's metering policy.'"

    b. "Finalize and begin meaningfully implementing plans by which PI class members abroad whose proceedings have been reopened may return to the United States to participate in those proceedings."

    c. "Finalize and begin meaningfully implementing plans to systematically review I-213 notations by CBP officers and Border Patrol agents for indicia of PI class membership, as required by Paragraph 4 of the Clarification Order."

    d. "Provide Plaintiffs with the following data regarding individuals on the 'master list,' or any other individuals Defendants or EOIR have identified as potential PI class members: Whether a person was granted asylum . . . Best language spoken . . . Annotations showing whether an individual has gone through USCIS screening for PI class membership to date and, if so, the result of the screening."

34. On July 16, the government responded by letter. The July 16 letter provided the following responses to these points:

    a. "Defendants are in the process of finalizing procedures that identify PI Class Members who were ordered removed under orders of expedited removal after application of the transit rule. These procedures should be substantially in line with what Plaintiffs request, with some exceptions. For those potential PI Class Members who fall into this category who are still in the United States, the identification procedures are nearly finalized. USCIS will schedule interviews with those potential PI Class Members on the Master List for whom electronic records indicate the Transit Rule was applied, and the USCIS PI Class Member screening procedures will be substantially similar to those used for detained individuals subject to removal. For those potential PI Class Members who have been removed and are outside the United States, the identification procedures are nearly finalized. These procedures contemplate that Class Counsel will provide notice to individuals on the Master List who received a negative fear determination, had the Transit Rule applied, and were removed, along with instructions for submitting evidence of class membership to USCIS. USCIS will review the evidence, as well as the information available in internal systems and in the A file, including the I-213, and available waitlists, in order to determine if the individual is more likely than not a PI Class Member."

    b. "Defendants are developing procedures by which PI Class Members who were removed and are currently located abroad may request return to participate in cases that have been reopened for further proceedings. Defendants note that, regardless of the exact contours of

   the final procedures, 'return to the United States,' may not be necessary or possible in all reopened cases, depending on various factors that may be unique to the individual (such as national security or terrorism concerns) or to the case (such as whether further in-person proceedings are required)."

  c. "Defendants and EOIR are already systematically reviewing Forms I-213 in the context of identifying PI class members whose cases are subject to review by USCIS and EOIR for reopening or reconsideration relief . . . . This review will also be part of the procedures [for those with expedited removal orders]. These efforts are reasonable, particularly because, as noted above, the sole remaining purpose of identifying PI class members is to identify those who are entitled to relief under Paragraph 2. It is thus not clear whether there is a dispute between the parties here. To the extent Plaintiffs are requesting something different than what Defendants and EOIR are already doing or plan to do, it appears that the parties have not yet conferred about this issue."

  d. "While Defendants agree that it would make sense to exclude those who have finally been granted asylum from the Master List, EOIR is still investigating whether it is possible to ascertain data points that reliably indicate that someone has a final grant of asylum (that is not subject to appeal) without conducting manual review. . . . USCIS and EOIR are willing to provide data points regarding language spoken, where available. . . . As discussed, Defendants agree to manually annotate the Master List with the PI class member determination."

35. On July 29, 2021, and August 4, 2021, counsel for the parties met and conferred via telephone to discuss Plaintiffs' proposed motion. At the August

14

4 conference, I provided additional information that had been relayed to me by DHS about its plans concerning how PI class members who were removed and are currently located abroad may request return to participate in cases that have been reopened for further proceedings. I reported to Plaintiffs' counsel generally as follows: that DHS will be adjudicating these requests on a case-by-case basis and that PI class members will use Form I-131, Application for Travel Document, to apply for advance parole. If the application is approved, the individual will receive a travel letter to allow him or her to board an aircraft and travel to a POE. Once the individual arrives at the POE, CBP will inspect the individual and will ultimately make the determination as to how to process the individual, which may depend on the particular circumstances of their individual case.

36.     Based on my notes, email records, and recollection, Plaintiffs' counsel did not ask questions at the July 29 or August 4 conferences or by subsequent emails about how individuals with expedited removal orders would be identified for notice or PI class membership screening. Plaintiffs also indicated that, based on the information they knew at the time concerning the procedures for those who were ordered removed under orders of expedited removal and who are still in the United States, they did not dispute the contents of those procedures.

37.     At the August 4 conference, Plaintiffs' counsel stated that they wanted to know how the government was reviewing Forms I-213 for annotations made by USBP that an individual affirmatively claimed to be a PI class member (as opposed to electronic notations made by OFO of an affirmative claim to PI class membership). I explained that the government's procedures instructed adjudicators to review Form I-213 notations made by USBP when making class membership determinations. Plaintiffs raised no concerns at that time about the sufficiency of these procedures, nor did they do so in any subsequent email.

38.     At the August 4 conference, counsel for the parties also discussed

15

what further review was conducted by EOIR's Office of General Counsel (EOIR OGC) if an adjudicator determines that there is insufficient evidence in the ROP to determine PI class membership. I generally explained that, at this time, EOIR OGC's further review did not involve review of records outside of the ROP, but that the government was tracking these cases and determining whether additional action would be necessary.

39. On August 10, 2021, government counsel sent an email to Plaintiffs' counsel stating as follows: "As discussed during the parties meet-and-confer on August 4, 2021, Defendants and EOIR believe that outside mediation could be fruitful to resolve outstanding implementation disputes, including those relating to the notice requirements of Paragraph 3 and other procedural implementation issues. Depending on how Plaintiffs frame the issues they seek to mediate before the Court, Defendants and EOIR may be able to provide more specific guidance as to the precise areas on which the government proposes to seek the assistance of a private mediator. As stated on the call, however, Defendants and EOIR do not believe that the following matters are suitable for mediation: 1. Whether Defendants should be required to make reasonable efforts to obtain metering waitlists from entities in Mexico; 2. Whether to treat appearance on a waitlist before July 16, 2019, as presumptive evidence of PI class membership; 3. Whether to treat entry before a certain date as presumptive evidence of PI class membership; 4. Whether Defendants may rely on statements made during prior screening for PI class membership in determining whether an individual is a class member; 5. Whether PI class members should be entitled to Paragraph 2 relief if the decision denying asylum relied on an alternative ground as well as the transit rule (note, however, that EOIR is already reopening such cases with final decisions that have alternative grounds for asylum denials); 6. Whether PI class members who had

the transit rule applied at an intermediate stage of the process are entitled to reopening if the final decisions did not rely on the transit rule; 7. Whether all individuals who had cases reopened or reconsidered pursuant to Paragraph 2 will obtain another opportunity to submit substantive evidence of asylum eligibility; 8. Whether Defendants and EOIR need to systematically review cases with final decisions issued after June 30, 2020, when the transit rule IFR was vacated, for purposes of Paragraph 2. Defendants reserve the right to amend this list should Plaintiffs' proposed motion bring other issues to light. If Plaintiffs have any questions or concerns, please do let us know."

40.   On September 2, 2021, government counsel sent an email to Plaintiffs' counsel to follow up on questions Plaintiffs had raised at the August 4 conference. Among other things, counsel stated:

   a. "For individuals with final ER [expedited removal] orders that are in the United States, USCIS is finalizing its screening procedures, which required revisions due to ongoing COVID concerns, and believes that they will be implemented in short order."

   b. "For individuals with final ER orders that are in the United States, USCIS plans to mail the notice of potential class membership and a non-detained AOL G-56 interview notice to individuals identified using the Master [] List. USCIS will mail the notices to the most current available address, which will be confirmed using DHS databases."

   c. "Additionally, USCIS will post a notice on its website about the AOL class action and potential class membership along with information about cases eligible for review, reconsideration, or reopening. USCIS will also post class counsel's information in the case potential class members have questions."

17

  d. "EOIR is amenable to working with Plaintiffs on a draft template motion to reopen for AOL-based motions. If Plaintiffs draft a template motion to reopen, EOIR is willing to review the template and provide feedback."

41. On September 10, 2021, government counsel sent an email to Plaintiffs' counsel stating, in part: "ICE intends to post a notice in its detention facilities regarding the import of the preliminary injunction orders and the PI class definition. As with other notice forms, the notice will contain information about how to contact Class Counsel at the previously-provided email address."

**The Government's Exhibits**

42. Attached hereto as Exhibit A is a true and correct copy of the September 15, 2021 Declaration of Andrew J. Davidson.

43. Attached hereto as Exhibit B is a true and correct copy of the September 13, 2021 Declaration of Jill W. Anderson.

44. Attached hereto as Exhibit C is a true and correct copy of the proposed protective order with respect to Plaintiffs' Motion to Enforce (ECF Nos. 644, 646), which Plaintiffs submitted via email to the Court's chambers.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. This declaration was executed on September 15, 2021, in Washington, D.C.

           *s/ Katherine J. Shinners*
           KATHERINE J. SHINNERS
           Senior Litigation Counsel
           *Counsel for the Government*