# EXHIBIT A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Al Otro Lado, Inc., *et al.*,                )
      *Plaintiffs,*                         )
                   )
                   )
v.                                           )              No. 3:17-cv-02366-BAS-KSC
                   )
Alejandro Mayorkas, *et al.*,                )
      *Defendants.*                        )
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾)

## DECLARATION OF ANDREW J. DAVIDSON

I, Andrew J. Davidson, pursuant to 28 U.S.C. § 1746, and based upon personal knowledge and information made known to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows relating to the above-captioned matter.

1.      I am currently the Chief of the Asylum Division, Refugee, Asylum & International Operations Directorate, within U.S. Citizenship and Immigration Services (USCIS), Department of Homeland Security (DHS). I have held this position since October 2019. Prior to becoming the Chief of the Asylum Division, I served as Deputy Associate Director of Fraud Detection and National Security Directorate (FDNS) since March 2017, where I was responsible for developing and maintaining policies and procedures that govern the detection of fraud and threats to national security and public safety. I joined the Immigration and Naturalization Service as an immigration inspector at the Calexico Port of Entry in 1997, and later served as a district adjudications officer, supervisory adjudications officer and FDNS immigration officer at the San Diego District Office. In my current position as the Chief of the Asylum Division, I oversee all Asylum Offices nationwide and their primary functions in managing the affirmative

1

asylum, credible fear, and reasonable fear caseloads.  I am also responsible for the Asylum

Division's headquarters component, which develops policy, provides guidance to the field, and

ensures consistent practices across the Asylum Division nationwide.

2.      I understand that on August 25, 2021, Plaintiffs filed a "Motion for Court

Oversight of Preliminary Injunction Compliance" concerning the U.S. District Court for the

Southern District of California's November 19, 2019 preliminary injunction order and October

30, 2020 order granting Plaintiffs' "Motion for Clarification of the Preliminary Injunction."

3.      Since issuance of the October 30, 2020 order, USCIS developed and implemented

detailed procedural guidance for asylum offices to conduct *Al Otro Lado v. Wolf* (*AOL*)

preliminary injunction (PI) class membership screenings for individuals with a final order of

removal detained in U.S. Immigration and Customs Enforcement (ICE) custody who are referred

to USCIS by ICE. These procedures are still in effect.

4.      USCIS has developed additional procedures to conduct PI class membership

interviews for individuals with unexecuted final orders of expedited removal who are not

detained in ICE custody (hereafter "non-detained AOL group").  The detailed guidance was

carefully drafted in close consultation with U.S. Customs and Border Protection (CBP), ICE, and

the Department of Justice (DOJ).   The non-detained AOL group who will be screened for AOL

PI class membership (hereafter "Class Membership Screening"), specifically consists of

individuals who were found to not have a credible fear ("CF") because the Third Country Transit

("TCT") rule was applied to their case, have a final expedited removal order, have not been

removed.

5.      To identify individuals that may fall in the non-detained AOL group, USCIS

reviewed data in its case management system related to individuals listed on what the

government has referred to as the Master List of potential PI class members.  This data included

the following parameters: (i) "APSO Fear Determination" (i.e., that the individual received a "Negative Screening Determination" in the CF case; and (ii) "APSO Bar Applied" (to indicate that the TCT rule was applied). USCIS incorporated this data into the Master List to create the "AOL USCIS Spreadsheet." USCIS will schedule non-detained individuals on the AOL USCIS Spreadsheet for AOL Class Membership Screenings.

6.      USCIS will rely on available ICE data in the Master List to determine a potential PI class member's location (e.g., removed or in the U.S.) and the individual's detention status. This data includes the (i) "Departure Date of Removal" (i.e., whether the individual does/does not have a date of removal), and (ii) "Detention Status" (i.e., whether the individual is/is not detained).

7.      USCIS has developed procedures that are substantially similar to those applied to potential class members in detention for Class Membership Screenings of the non-detained AOL group. Exhibit 1 (Non-detained AOL Screening Procedures). Asylum staff will obtain the A-file for each identified individual in the non-detained AOL group, review the file and DHS databases to confirm the individual has an unexecuted final expedited removal order, and any available address information.

8.      The asylum office with jurisdiction over the non-detained AOL case will mail a Notice of Potential Class Membership to the individual. Exhibit 2 (Class Notice).

9.      The mailing containing the Class Notice will also include a Form G-56 Notice of Interview, which will instruct the individual of the location, date and time, and the reason for the appointment. Exhibit 3 (AOL G-56). The AOL G-56 will provide additional guidance on COVID-19 safety precautions, accompanying family members, witnesses, and/or representatives, and deadlines to submit optional evidence in advance of the screening.

10.     Under the Non-detained AOL Screening Procedures, USCIS may schedule the class membership screening at an asylum office with jurisdiction over the case, or a counterpart ICE/ERO office, or USCIS Field or District Office.  The asylum office with jurisdiction must coordinate with ICE/ERO or the USCIS Field or District Office to conduct the AOL screening at their respective locations.

11.     The Non-detained AOL Screening Procedures instruct asylum officers to familiarize themselves with a document drafted by CBP counsel entitled AOL Guidance, which contains counsel's mental impressions and work product before conducting class membership screenings.  The guidance also includes a list of questions to be asked during the class membership interview to determine whether the individual sought to enter the United States at a port of entry to seek asylum before July 16, 2019.  Exhibit 4 (Class Membership Screening Interview Questions).

12.     The non-detained AOL screening procedures also instruct officers when making class member determinations to consult lists compiled and maintained by Mexican entities that are purportedly of individuals waiting in Mexican border cities or towns, to the extent such lists are available.  The procedures further note that the lists compiled and maintained by Mexican entities do not contain alien registration numbers (A numbers), some do not contain dates of birth or the dates that the names were added to the lists, and names may be misspelled or contain differing variations.  Without complete identifying information or unique identifiers, and without complete information about when names were added to a list, USCIS may be unable to reliably match particular individuals with names on the lists in many instances.  As a result, USCIS is unable to conclude, based solely on the lists provided to us, that a particular individual whose name appears on a waitlist is an *AOL* preliminary injunction class member.  Accordingly, in addition to consulting the lists, the asylum officers are required to ask the Class Membership

Screening Questions to elicit testimony on whether the individual was subject to metering prior to July 16, 2019.

13.    The non-detained AOL screening procedures also require asylum officers to consult DHS records and prior statements by the individual, note any discrepancies between the identifying information on the lists and in DHS records, and to ask class members whether they have additional documentary evidence to submit (while noting that such documentation is not required to demonstrate class membership), when determining if the individual has established, they are more likely than not a class member.

14.    The non-detained AOL screening procedures also include a template memo to file for noncitizens who fail to appear for their screening, Exhibit 5, a template memo to file regarding the screening, Exhibit 6, and class membership determination notice to document these activities and class membership determinations, Exhibit 7.

15.    Under the non-detained AOL screening procedures, asylum officers are to determine if the individual establishes, they are more likely than not an *AOL* preliminary injunction class member based on whether or not they were subject to metering before July 16, 2019.  If the individual establishes they are more likely than not a class member and has a final order of expedited removal, officers will either: (a) if USCIS applied the TCT rule in the prior CF determination, reopen the prior negative determination, conduct a new CF interview, and make a new CF determination without applying the TCT rule; or (b) if USCIS did not apply the TCT rule in the prior CF determination but an immigration judge did during review of the negative determination, re-issue the negative CF determination paperwork and re-refer the negative determination for new review by an immigration judge.  Asylum officers are to complete the required forms documenting the class membership determination to be placed in the A-file and update USCIS's asylum pre-screening case management system with the class

membership determination and, if the individual is a class member, the new CF determination or new referral for immigration judge review; record the class member determination in the *AOL* class membership tracking mechanism; and notify ICE of the class membership determination and, if applicable, new CF determination or new referral for immigration judge review.

16.     In cases where a new CF interview is required, the asylum officer will offer to conduct the CF interview the same day of the class membership screening, when feasible.  The individual must be given the option to decline to continue with the CF interview the same day, and if the individual requests a future date and time, USCIS will prepare and serve a Form G-56 for the new CF interview.

17.     The detailed procedures to screen the non-detained AOL group will require extensive logistical coordination across the country, both within the Asylum Division and across different components.  Competing workloads that require prioritization and that impact daily Asylum Division operations, as well as the COVID-19 pandemic have also presented significant space and staffing challenges for USCIS and its implementation of new procedures.  Since finalizing the plan to screen individuals in the non-detained AOL group, asylum offices have been instructed to prepare for implementation and begin scheduling interviews in October 2021.

18.     In addition to USCIS' screenings of detained and non-detained individuals, USCIS is developing procedures to identify and screen potential class members who were removed.  The group specifically includes individuals who received a negative CF determination where the TCT rule was applied and were removed pursuant to an expedited removal order (hereafter "Removed AOL Group").

19.     USCIS's procedures for the removed AOL group were created with the understanding that Class Counsel will provide notice to this group.  This understanding is based on the October 30, 2020 Order and the court's finding that Plaintiffs and their counsel can

facilitate the notification process for those who were removed and remain outside of the U.S. Dkt. 605 at 22.

20.    Additionally, because this group involves individuals who are no longer in the U.S., USCIS will establish a process for potential class members to request a class membership determination, which contemplates that potential class members would be notified of this process by Class Counsel as set forth above.  This process will give them an opportunity to submit written testimony and/or documentary evidence that would otherwise not be available to USCIS. While a manual file review may yield information about the individual's entry, apprehension, and subsequent removal from the US, their CF case history, and whether the TCT rule was applied, the review may not provide sufficient evidence to determine the individual is more likely than not a PI class member.  For example, individuals could provide details about what happened when they sought to enter at a port of entry (POE), whether they were told that the POE was full or that they needed to wait in Mexico or go to a shelter before entering the POE, and whether they attempted to place their name on a waitlist.

21.    Class membership screenings of detained and non-detained individuals are designed to provide potential class members an opportunity to meet their burden and establish class membership via their testimony and any available documentary evidence.  USCIS seeks to afford the same opportunity to the removed AOL group to meet their burden by submitting written testimony and documentary evidence to establish class membership.

22.    Additionally, by submitting class membership determination requests directly to USCIS, potential class members who were removed will be able to provide updated contact information to the government.  This will more efficiently facilitate the process for individuals who establish class membership and who may be eligible to return to the U.S.

23.     Individuals in the removed AOL group may request a class membership screening determination on their own or through counsel by contacting USCIS.

24.     To identify individuals that may fall in the removed AOL group, USCIS will rely on the same data available in the master list and detailed CF case information for individuals on the master list who were previously interviewed by USCIS.  As previously described, USCIS derived the CF case information from data available in its case management system.  This data included the same parameters: (i) "APSO Fear Determination" (i.e., that the individual received a "Negative Screening Determination" in the CF case; and (ii) "APSO Bar Applied" (to indicate that the TCT rule was applied).

25.     Procedures for the removed AOL group will generally consist of the following steps: Once USCIS receives the class membership determination request, the case will be assigned to an asylum officer who will review the A-file, DHS databases, available waitlists, and all evidence submitted with the class membership determination request.  The asylum officer will confirm whether the TCT rule was applied to the case at the CF stage, whether the individual received a negative CF determination, and whether the individual was ultimately removed under an expedited removal order.

26.     As with other class membership screenings of detained and non-detained individuals, asylum officers must review CBP's AOL guidance, consult the waitlists, and document the process.  The planned procedures contemplate that class membership determinations will not involve an interview and will undergo full supervisory review.

27.     If class membership is established under this process, the individual will be provided instructions on further processing, including how to request to return to the U.S. to participate in their immigration case.  If class membership is not established, the individual will be notified of the determination.

8

28.     Removed individuals who are determined more likely than not to be class members by USCIS will require a separate process to request to return to the U.S.  USCIS is actively coordinating with other DHS components to implement the procedures for those in the removed AOL group who are determined more likely than not to be class members to request to return to the U.S. to participate in immigration proceedings.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 15th day of September 2021.

ANDREW J DAVIDSON

Digitally signed by ANDREW J DAVIDSON
Date: 2021.09.15 16:14:05 -04'00'

Andrew J. Davidson
Chief, Asylum Division
Refugee, Asylum & International Operations Directorate
U.S. Citizenship and Immigration Services
Department of Homeland Security

Exhibit 1

*For Official Use Only*

## USCIS *AOL* Preliminary-Injunction Class Membership Screening Guidance for Non-Detained Individuals with Unexecuted Final ER Orders

1) **Identify Potential Class Members for Screening**
   a. USCIS will identify (i) non-detained potential AOL preliminary injunction (PI) class members, (ii) who were found to not have a credible fear because the Third Country Transit (TCT) rule was applied, (iii) have not been removed, and (iv) who are eligible for an AOL PI Class Membership Screening (hereafter "class membership screening").

2) **Request A-file**
   a. USCIS must request the A-file for each noncitizen identified in Step 1. Offices must obtain and review the A-file before the class membership screening.

3) **Identify the Class Membership Screening Location**
   a. USCIS may schedule the non-detained class membership screening at any available location, including the asylum office with jurisdiction of the case, a local ICE-ERO office, or a USCIS Field or District office.
   b. To conduct the class membership screening at a local ICE-ERO location, the asylum office must first coordinate with ICE-ERO to determine availability of ICE resources to assist. The asylum office must coordinate with USCIS FOD to conduct the class membership screening at a USCIS Field or District Office.

4) **Schedule the Non-Detained Class Membership Screening and Mail the Notice of Potential Class Membership and the AOL G-56**
   a. The screening must be prioritized over regular, non-detained APSO interviews.
   b. The AOL USCIS spreadsheet contains available address information obtained from ICE's electronic system. Asylum offices will need to also check EARM and/or the Alternative to Detention (ATD) tab to confirm the address and contact information for the potential class member.
   c. USCIS will mail a **Notice of Potential Class Membership**[1] and a **Form G-56 – Notice of Interview (AOL G-56)**[2] to the potential class members identified in Step 1 with at least 21 days advance notice of the non-detained class membership screening. If the potential class member has an attorney with a fully executed G-28 or a consultant, USCIS must also mail a copy of the Notice of Potential Class Membership and AOL G-56 to the attorney or consultant.
   d. All members of a family unit must appear for the non-detained class membership screening just as they would for a non-detained APSO interview.

5) **Track Class Membership Screening on the ECN**
   a. The Asylum Office will track the case throughout the scheduling, interview, and determination on the *AOL* Class Screening SharePoint (ECN) page here: https://ecn.uscis.dhs.gov/team/raio/Asylum/AOL-class/SitePages/Home.aspx

---

[1] See Attachment 1, Notice of Potential Class Membership.
[2] See Attachment 2, Form G-56 – Notice of Interview (hereafter "AOL G-56").

*For Official Use Only*

**USCIS *AOL* Preliminary-Injunction Class Membership Screening Guidance for Non-Detained Individuals with Unexecuted Final ER Orders**

6) **Document a Failure to Appear for the Class Membership Screening**
   a. If the noncitizen fails to appear for their scheduled screening, USCIS must create a Failure to Appear for AOL PI Membership Screening memo to file regarding the failure to appear and include it in the A-file.[3]  USCIS must also reach out to ICE-ERO to advise of the noncitizen's failure to appear.
   b. If the noncitizen has an attorney or consultant with a properly executed G-28, USCIS will reach out to the attorney or consultant regarding the circumstances of the missed screening appointment and will attempt to reschedule the AOL screening.
   c. The failure to appear must be documented on the ECN page in the corresponding field.
   d. If the attorney or consultant is contacted, these attempts must also be documented on the ECN page.

7) **Process a Reschedule Request**
   a. Offices should follow all COVID-19 reschedule protocols already in place, if rescheduling is requested by the noncitizen, or their attorney of record.
   b. If the noncitizen, or the attorney of record, requests to reschedule the screening, USCIS will provide them a new screening date as soon as is convenient for all parties.  Requests to reschedule should be directed to individual asylum offices through established addresses/email boxes.
   c. If the class membership screening was scheduled to occur at an ICE-ERO or USCIS FOD location, then Asylum will notify those locations that the screening was rescheduled.

8) **Verify Identity**
   a. When the noncitizen arrives for their screening, their identity must be verified by either ICE-ERO, if appearing at an ICE-ERO office pursuant to advance coordination, or by Asylum Office staff, if appearing at an asylum office.
   b. If the screening is taking place at a USCIS Field or District Office, asylum staff should coordinate with Field or District staff to ensure the applicant's identity is verified prior to screening.
   c. Follow the non-detained CF procedures for verifying identity when the noncitizen appears for their interview.

9) ***Prior to the AOL screening interview,*** the asylum officer must:
   a. Review the guidance document entitled, "Guidance for Determining Provisional Subclass Membership for Purposes of the Preliminary Injunction in *Al Otro Lado v. Wolf*".[4]
   b. Create a memo to file[5] documenting the following:
      i. Note whether the individual's name seems to appear on one of the following waitlists or other lists that may indicate an individual's presence in a Mexican

---

[3] See Attachment 3, Memo to File - Failure to Appear for AOL PI Class Membership Screening.
[4] See Attachment 4, Guidance for Determining Provisional Subclass Membership for Purposes of the Preliminary Injunction in *Al Otro Lado v. Wolf* (hereafter "CBP AOL Guidance").
[5] See Attachment 5, Memo to File - *Al Otro Lado* Preliminary-Injunction Class Membership Screening.

*For Official Use Only*

### USCIS *AOL* Preliminary-Injunction Class Membership Screening Guidance for Non-Detained Individuals with Unexecuted Final ER Orders

border town and indicate which list the name appears on (Calexico/Mexicali; El Paso/Ciudad Juarez; San Ysidro/Tijuana; or Presidio/Ojinaga). These lists do not contain A numbers; search by name and date of birth (if DOB is listed). Note in the memo to file if there are any discrepancies between the individual's name, DOB, and other identifying information in DHS records, and their name, DOB, and other identifying information on a list. The lists are contained in multiple separate files[6]:

1. San Ysidro/Tijuana
   a. "Waitlist transcribed Tijuana Mexicali (March – July 2019) for DOJ", four tabs labeled as "TJ" with date ranges
2. El Paso/Ciudad Juarez
   a. "Juarez Lista de Solicitantes de asilo thru 7.15.19"
3. Calexico/Mexicali
   a. "Waitlist transcribed Tijuana Mexicali (March – July 2019) for DOJ", tab labeled as "Mexicali" with a date range
   b. "Lista nombres CBP1"
   c. "Listado Nombres CBP2"
   d. "Listado CBP Nombres3"
   e. "Listado CBP Nombres4"
      i. Items (b) – (e) were provided to CBP by INAMI in three separate communications on 11/30/18, 1/19/19, and 1/29/19.
4. Presidio, TX
   a. "Predidio POE Scan"
   b. This list was provided to CBP in 2019, but the document itself does not have a date range associated with it.

---

[6] Class Counsel has provided what they state are three waitlists from the Mexican border towns from March through July 15, 2019: "Waitlist transcribed Tijuana Mexicali (March – July 2019) for DOJ" and "Juarez Lista de Solicitantes de asilo thru 7.15.19". Additionally, CBP has located the following additional lists in its possession that may be waitlists or other lists that may indicate an individual's presence in Mexico during a particular time frame: (1) between November 2018 and January 2019, Mexico's federal immigration agency ("INAMI") provided CBP's Office of Field Operations (OFO) four separate pieces of the waitlist from Mexicali ("Lista nombres CBP1", "Listado Nombres CBP2", and "Listado CBP Nombres4"), which contain lists of names corresponding to what appear to be Mexicali waitlist numbers 1258 through 1761; and (2) the Acting Port Director of the Presidio, TX POE received a list of individuals from INAMI in 2019, which appears to be a partial/excerpted list of predominantly Cuban nationals present in the city of Ojinaga, Mexico, and for which the dates ("fechas") in the left-hand column appear to correspond to dates in 2019. As explained in the "Guidance for Determining Provisional Subclass Membership for Purposes of the Preliminary Injunction in *Al Otro Lado v. Wolf*" ("CBP *AOL* Guidance"), the waitlists are not created or relied upon in any way by CBP in its metering process. These lists may not be reliable, accurate, or comprehensive lists of those who were waiting to enter the United States through a port of entry at any given time. The government is merely using these waitlists as potentially indicative that the individual sought to enter at a U.S. port of entry before July 16, 2019. The waitlists do not contain A numbers, and some do not contain dates of birth or dates the names were added to the waitlist; names may also be misspelled on the waitlists.

*For Official Use Only*

*For Official Use Only*

**USCIS *AOL* Preliminary-Injunction Class Membership Screening Guidance for Non-Detained Individuals with Unexecuted Final ER Orders**

    ii.  Note whether the individual appears on the CBP OFO lists as an individual who was flagged in OFO's electronic system of record of having affirmatively claimed to be a class member upon encounter.[7]

        1.  An individual's inclusion on this list means only that the individual was flagged in OFO's electronic system of record as an individual who affirmatively *claimed* to be a class member upon encounter. This flag is not a determination that the individual necessarily *is* a class member.

        2.  Any questions about discrepancies between information on the CBP OFO list and DHS records or other evidence should be raised to Asylum Ops APSO <AsylumOpsAPSO@uscis.dhs.gov> and Asylum QA APSO <AsylumQAAPSO@uscis.dhs.gov>.

    iii.  Note whether an individual's I-213 includes an annotation "POTENTIAL AOL CLASS MEMBER" (for I-213s from U.S. Border Patrol) or "Potential AOL Class Member" (for I-213s from OFO).

        1.  This annotation means that the individual was noted by Border Patrol or OFO as an individual who affirmatively claimed to be a class member upon encounter of apprehension. This annotation is not evidence that the individual necessarily *is* a class member.

        2.  Any questions about discrepancies between an annotation on a CBP I-213 and DHS records or other evidence should be raised to Asylum Ops APSO <AsylumOpsAPSO@uscis.dhs.gov> and Asylum QA APSO <AsylumQAAPSO@uscis.dhs.gov>.

    iv.  Note whether the I-213, I-867A/B (sworn statement), I-877 (sworn statement), or any other processing documents contain affirmative indications of class membership or evidence that would tend to negate class membership.

    v.  Note whether the individual was previously asked class membership screening questions and whether the responses contained evidence of class membership or evidence that would tend to negate class membership.

10) ***At the AOL screening***, the asylum officer must:

    a.  Confirm the individual received the **Notice of Potential Class Membership.** If the individual indicates they did not previously receive a copy, provide a copy at the beginning of the interview and have the interpreter read the **Notice of Potential Class Membership.**

    b.  Ask the updated USCIS *AOL* Preliminary-Injunction Class Membership Screening Interview Questions, even if they were previously asked metering questions. **Asylum officers must use the December 2020 list of metering questions rather than the November 2019 questions[8].**

---

[7] See Excel files titled, "Copy of 2020-11-05_APP_AOL_Preliminary_Injunction_Guidance v1" and "Copy of Updated OFO Data" available at: https://ecn.uscis.dhs.gov/team/raio/Asylum/AOL-class/SitePages/Home.aspx

[8] See Attachment 5 Class Membership Screening Interview Questions 12.22.20

*For Official Use Only*

**USCIS *AOL* Preliminary-Injunction Class Membership Screening Guidance for Non-Detained Individuals with Unexecuted Final ER Orders**

    c. Document the metering questions and the individual's responses in Q&A notes.

    d. Create a summary of the individual's responses to the metering questions and document it in the Q&A. Verbally summarize the individual's responses to the metering questions to the individual, ask the individual to confirm the accuracy of the summary, and provide the individual the opportunity to make any corrections in the Q&A notes. Document in the Q&A notes that the individual was provided the summary, was provided the opportunity to make corrections, and confirmed the accuracy of the summary.

    e. Ask whether the individual has documentary evidence that they would like to submit that they have not already submitted.

11) ***After the AOL screening***, the asylum officer must determine if the individual has established he or she is more likely than not an *AOL* PI class member, based on the CBP *AOL* Guidance and the below:

    a. The burden is on the individual to establish class membership. See the CBP *AOL* Guidance document for the relevant class definition.

    b. The standard of proof for establishing class membership is "more likely than not." That is, the individual must establish that it is more likely than not that he or she is a class member.

    c. Documentary evidence of class membership is not required to satisfy this standard.

    d. Evidence of class membership, including but not limited to, documentation of a stay in a shelter or hotel in a Mexican border town/city during the relevant pre-July 16, 2019 time period; documentation regarding the placement of a name on a waitlist during the relevant pre-July 16, 2019 time period; and declarations, affidavits, or the individual's own statements regarding whether they may have been subject to metering during the relevant pre-July 16, 2019 time period will generally be sufficient to establish that an individual is more likely than not a class member in the absence of contradictory evidence in DHS records or the individual's current or prior testimony.

    e. The waitlists provided to DOJ by class counsel, as well as the portions of waitlists and other lists indicating presence in a Mexican border town provided by INAMI or other entities to CBP OFO, may be evidence of class membership in that the presence of the individual's name on one of the lists may indicate that the individual was at or near the Mexican border near the San Ysidro, El Paso, Calexico, or Presidio ports of entry, as applicable, and made efforts before July 16, 2019, to enter the United States at that port of entry. (The Presidio list appears to have entries ranging from April 2019 through October 2019, with gaps.) However, if an individual's name is included on one of these waitlists, but the individual's own statements (during the current AOL PI class member screening interview, prior credible fear interview, prior AOL class member screening interview, or sworn statements) clearly and unequivocally contradict that information — for example, if the individual clearly states and affirms that they did not leave their home country or arrive in Mexico before July 16, 2019— the individual's own statements may be given greater weight than the existence of a name on the waitlist.

    f. The absence of an individual's name on a waitlist should not be used to conclude that the individual is not a class member where there is other credible evidence of class

*For Official Use Only*

**USCIS *AOL* Preliminary-Injunction Class Membership Screening Guidance for Non-Detained Individuals with Unexecuted Final ER Orders**

membership, including but not limited to the individual's own testimony. First, DHS only has partial transcriptions of waitlists or other partial lists that may indicate an individual's presence in Mexico during a particular time frame, and those that correspond to only six ports of entry: Calexico/Mexicali; El Paso/Ciudad Juarez; San Ysidro/Tijuana; and Presidio/Ojinaga. The Presidio/Ojinaga list is a list of predominantly Cuban nationals. An individual may have placed his or her name on one of these waitlists during a date range other than the ranges provided by class counsel or provided to CBP. Additionally, waitlists exist in other Mexican border towns, but the U.S. government does not have copies of those lists. Second, it is reported that the waitlists are not always accurate or complete. Accordingly, it is possible that an individual's name was misspelled or transcribed incorrectly on the waitlist, or that the individual attempted to present themselves at a port of entry before July 16, 2019, but his/her name was not placed on a waitlist. Additionally, there may be instances where an individual can establish class membership even though they never attempted to place their name on a waitlist.

g. Asylum officers cannot rely on a prior AOL class membership determination that an individual is not an AOL class member. However, asylum officers can consider an individual's statements from prior screening interviews as relevant evidence to be considered when determining whether the individual is more likely than not a class member, including in assessing the individual's credibility.

12) **AOL PI Class Membership NOT Established**

a. If the asylum officer determines the individual has **NOT** established they are more likely than not an *AOL* PI class member, do not conduct a new credible fear interview and do not complete any related CF paperwork.

   i. Document the class member determination in a **Memo to File - *Al Otro Lado* Preliminary-Injunction Class Membership Screening**[9] and in an ***AOL* Preliminary-Injunction Class Membership Determination** form.[10]

   ii. Prior to notifying ICE of the results of the class membership determination, the asylum officer must obtain supervisory review of all negative class membership determinations. Supervisory review must be documented by a signature on the memo to file.

   iii. The class member determination must be recorded on the *AOL* Class Screening ECN page here: https://ecn.uscis.dhs.gov/team/raio/Asylum/AOL-class/SitePages/Home.aspx, in addition to uploading the related determination documents. Select "Not a Class Member" as the *AOL* Class Membership Screening outcome on the ECN.

   iv. The supervisory asylum officer must document the negative class membership determination by entering "**NOT AN AOL PI CLASS MEMBER**" in the Decision Notes on the Decision Card in Global. Do not change the decision,

---

[9] See Attachment 6, Memo to File – *Al Otro Lado* Preliminary-Injunction Class Membership Screening.
[10] See Attachment 7, *AOL* Preliminary-Injunction Class Membership Determination form.

*For Official Use Only*

**USCIS *AOL* Preliminary-Injunction Class Membership Screening Guidance for Non-Detained Individuals with Unexecuted Final ER Orders**

decision date, or service date. ***It is extremely important for tracking and reporting purposes that the Decision Notes be documented <u>exactly</u> as provided in this guidance.***

   v. The Q&A notes of the interview, memo to file, and *AOL* Preliminary-Injunction Class Membership Determination form must be added to the noncitizen's A-file and electronically uploaded into Global and onto the ECN.

  vi. Notify the local ICE-ERO office that the non-detained individual was determined **NOT** to be an *AOL* PI class member.

 vii. Add the following documents to the A-file: Memo to File - *Al Otro Lado* Preliminary-Injunction Class Membership Screening, AOL class membership screening notes, and *AOL* Preliminary-Injunction Class Membership Determination form.

viii. The *AOL* class membership screening notes and the *AOL* Preliminary-Injunction Class Membership Determination form should be provided to the noncitizen.

  ix. If the noncitizen is at an ICE-ERO office, USCIS should work with ICE-ERO to serve the non-detained noncitizen their AOL finding the same day that they appear for their AOL screening. USCIS will explain the outcome and ask ICE to obtain signatures and help conduct the service.

   x. USCIS should serve the AOL class membership decision on ICE-ERO as well, electronically through the appropriate field office outreach mailbox, copying Asylum Division HQ.

13) **AOL PI Class Membership Established**

   **For individuals with final expedited removal orders[11]:**

   a. **Class Membership Established:** If the asylum officer determines the individual has established they **ARE** more likely than not an *AOL* PI class member, then, in most cases, the prior negative credible fear determination must be reopened in Global and the Third Country Transit Asylum Bar IFR cannot be applied.  When class membership is established, supervisory review of the *AOL* PI class member determination is not required.

      i. Document the class member determination in a Memo to File - *Al Otro Lado* Preliminary-Injunction Class Membership Screening and in an *AOL* Preliminary-Injunction Class Membership Determination form.

     ii. The class member determination must be recorded on the *AOL* Class Screening ECN page here: https://ecn.uscis.dhs.gov/team/raio/Asylum/AOL-class/SitePages/Home.aspx, in addition to uploading the related determination documents.

---

[11] This includes individuals who received a negative credible fear determination that was affirmed by an immigration judge, or who received a negative credible fear determination and did not request review by an immigration judge.

*For Official Use Only*

**USCIS *AOL* Preliminary-Injunction Class Membership Screening Guidance for Non-Detained Individuals with Unexecuted Final ER Orders**

    iii. *If USCIS did not apply the Third Country Transit Asylum Bar IFR in the prior credible fear determination, but an immigration judge applied the IFR during review of the negative credible fear determination:* USCIS is not required to conduct a new credible fear interview or make a new credible fear determination because the prior USCIS negative credible fear determination did not apply the Third Country Transit Asylum Bar IFR. Re-issue the negative credible fear determination paperwork by completing and signing a new Form I-863, Notice of Referral to Immigration Judge and a new Form I-869, Record of Negative Credible Fear Finding and Request for Review by Immigration Judge, with current dates, and refer the negative credible fear determination for a new immigration judge review. Supervisory asylum officers must change the special group code to **NO BAR – AOL** on the Entry tab in Global. Document in the Decision Notes in Global when the negative credible fear determination was referred for a new immigration judge review. Do not make any other changes in Global. Select "Class Member, ER Case – New CF Screening NOT Required" as the *AOL* Class Membership Screening outcome on the ECN. Skip to steps xii-xiii.

    iv. *If USCIS applied the Third Country Transit Asylum Bar IFR in the prior credible fear determination:* Inform the individual that they have been found to be an *AOL* PI class member and that they will receive a new credible fear interview.

        1. Offer to conduct the credible fear interview the same day of the AOL PI class membership screening, when feasible.

        2. The noncitizen must be given the option to decline to continue with the credible fear interview the same day.

        3. If the noncitizen requests a future date/time, USCIS should prepare and serve a G-56 on the non-citizen for the new credible fear interview to take place.

        4. USCIS may need to confer with ICE-ERO or USCIS Field Office staff to ensure future interview space availability prior to issuance of the G-56, therefore necessitating that the G-56 be mailed to the noncitizen at a later date, but not less than 21 days before the new credible fear interview is to take place.

        5. If the new credible fear interview will be conducted immediately following the class screening interview, proceed to step v.

        6. If the new credible fear interview will be conducted at a later date/time, notify ICE-ERO that the individual was found to be an *AOL* PI class member. Follow standard credible fear procedures regarding the consultation period.  When the new credible fear interview is scheduled, follow steps v. – xiii.

    v. The asylum officer must review the prior credible fear interview record and determination, move forward with conducting a new credible fear interview, and make a new credible fear determination applying the significant possibility standard, consistent with pre-Third Country Transit Asylum Bar IFR procedures.

    vi. Complete a new *Credible Fear Determination Checklist*.

*For Official Use Only*

*For Official Use Only*

**USCIS *AOL* Preliminary-Injunction Class Membership Screening Guidance for Non-Detained Individuals with Unexecuted Final ER Orders**

    vii.  Issue a <u>new</u> *I-870, Record of Determination/Credible Fear Worksheet* (using the pre-IFR version dated 2/27/17) and include in the ADDITIONAL INFORMATION/CONTINUATION section the following language: "Alien established that it is more likely than not that he or she meets the preliminary-injunction class definition in *Al Otro Lado v. Wolf*."

   viii.  If the new credible fear determination is negative after applying the significant possibility standard, the asylum officer must issue new negative credible fear documentation and refer the case for IJ review using Form I-863 (if IJ review is requested), attaching the required credible fear review documents as is standard for initial negative credible fear determinations referred for IJ review.

    ix.  If the credible fear determination is positive after applying the significant possibility standard, the asylum officer must issue an NTA.

    x.  Supervisory review is required after the credible fear determination is made. Supervisory asylum officers must change the special group code to **NO BAR – AOL** on the Entry tab in Global and update the decision card, if applicable. **The office must not change the dates of decision, decision service, supervisory review, and interview in Global.** Instead, document in the Decision Notes that the credible fear determination was reopened, and a new determination was made. Please include relevant details such as the credible fear interview date, decision date, and service date.

    xi.  Certain aspects of the credible fear determination must be recorded on the *AOL* Class Screening ECN page here: https://ecn.uscis.dhs.gov/team/raio/Asylum/AOL-class/SitePages/Home.aspx. Select "Class Member, ER Case – New CF Screening Required" as the *AOL* Class Membership Screening outcome on the ECN.

    xii.  The Q&A notes of the *AOL* class membership screening interview, memo to file, and *AOL* Preliminary-Injunction Class Membership Determination form must be added to the alien's A-file and electronically uploaded into Global and onto the ECN.

   xiii.  Notify the local ICE-ERO office by email that the individual was determined to be an *AOL* class member.

   xiv.  Serve the new credible fear service packet on the noncitizen, and EOIR (if positive or if negative and IJ review is requested).

    xv.  Add the following documents to the A-file: Memo to File - *Al Otro Lado* Preliminary-Injunction Class Membership Screening, *AOL* class membership screening Q&A notes, and *AOL* Preliminary-Injunction Class Membership Determination form.

   xvi.  The *AOL* class membership screening notes and the *AOL* Preliminary-Injunction Class Membership Determination form should be included in the credible fear service packet for service on the individual and EOIR.

14) **Service of AOL Screening Outcome**

*For Official Use Only*

## USCIS *AOL* Preliminary-Injunction Class Membership Screening Guidance for Non-Detained Individuals with Unexecuted Final ER Orders

a. To the extent possible, USCIS should serve the noncitizen their AOL finding the same day as the screening, if in person at a USCIS office.

b. If the noncitizen is at an ICE-ERO office, USCIS should work with ICE-ERO to serve the non-detained noncitizen their AOL finding the same day that they appear for their AOL screening. USCIS will explain the outcome and ask ICE to obtain signatures and help conduct the service.

c. USCIS should serve the AOL class membership decision on ICE-ERO as well, electronically through the appropriate field office outreach mailbox, copying Asylum Division HQ.


Any questions as to whether an individual was metered and should be considered to be a class member should be directed to Asylum Ops APSO <AsylumOpsAPSO@uscis.dhs.gov> and Asylum QA APSO <AsylumQAAPSO@uscis.dhs.gov>.

**ATTACHMENTS:**

1. Notice of Potential Class Membership
2. Form G-56 –Notice of Interview
3. Memo to File – Failure to Appear for AOL PI Membership Screening
4. Guidance for Determining Provisional Subclass Membership for Purposes of the Preliminary Injunction in *Al Otro Lado v. Wolf*
5. Class Membership Screening Interview Questions 12.22.20
6. Memo to File – *Al Otro Lado* Preliminary-Injunction Class Membership Screening
7. *AOL* Preliminary-Injunction Class Membership Determination Form

# Exhibit 2

## NOTICE OF POTENTIAL CLASS MEMBERSHIP
## *Al Otro Lado v. Mayorkas,* Case No. 17-02366 (S.D. Cal.)

**If you sought to enter the United States through a land port of entry on the U.S.-Mexico border before July 16, 2019, to seek asylum, and you were not able to enter the United States until <u>on or after</u> July 16, 2019 due to metering at the port of entry, you are <u>not</u> a Mexican citizen or national, and you continue to seek access to the U.S. asylum process, you are a member of the preliminary-injunction class in the *Al Otro Lado* class action lawsuit. If you are a class member, you may be entitled to have your case reconsidered if the U.S. government applied a rule known as the "third-country transit rule" to your asylum claim**.

*This Notice is not a solicitation from a lawyer and does not create any benefits.*

### WHAT IS THE PRELIMINARY INJUNCTION ABOUT?

*Al Otro Lado v. Mayorkas* is a lawsuit that challenges the U.S. government's use of "metering" at land ports of entry on the U.S.-Mexico border.  The Court in this lawsuit issued an order called a "preliminary injunction" (PI) prohibiting the U.S. government from applying a rule known as the "third-country transit rule" to the following ("PI class members"):

> all non-Mexican asylum seekers who were unable to make a direct asylum claim at a U.S. [Port of Entry] before July 16, 2019 because of the U.S. Government's metering policy, and who continue to seek access to the U.S. asylum process.

The Court later issued another order requiring the U.S. government to (1) identify potential PI class members, (2) provide identified class members who are in DHS custody or are in administrative immigration proceedings with notice of the PI, and (3) reopen or reconsider past decisions where potential PI class members were found ineligible for asylum because of the third-country transit rule.

**What is "metering?"**
The U.S. government uses metering to manage the flow of noncitizens without entry documents into land ports of entry on the U.S.-Mexico border.  You may have been subject to metering if:

- You approached a land port of entry on the U.S.-Mexico border, and were told you had to wait to enter the United States, or that the port did not have capacity to process you.

- You registered or placed your name on a waitlist in Mexico after you arrived at a border town near the U.S.-Mexico border.

**What is the "third-country transit rule?"**
The U.S. government implemented the "third-country transit rule" on July 16, 2019.  The "third-country transit rule" stated that, absent some exceptions, a person is not eligible for asylum if he or she (1) is from a country other than Mexico; (2) did not seek asylum or other legal protection in Mexico or another country through which he or she traveled on his or her way to the United States; and (3) entered the United States through the U.S.-Mexico land border on or after July 16, 2019.

### WHY AM I RECEIVING THIS NOTICE, & WHAT HAPPENS NEXT?

You are receiving this Notice because U.S. government records indicate that: (1) you *may be* a PI Class Member; (2) the U.S. government applied the "third-country transit rule" to your immigration case; (3) you were ordered removed from the U.S. under an "expedited removal order"; and (4) you currently reside in the United States.

**If you are in the United States and you are receiving this notice, you are eligible for a PI**

**QUESTIONS? E-mail** MeteringClass@splcenter.org **Or CALL [Class counsel's phone number]**

**Class Membership Screening.  A request to appear for the screening before a U.S. Citizenship and Immigration Services (USCIS) asylum officer is attached to this notice, if you have not already received such a screening.**

At the screening, the asylum officer will ask you questions to determine whether you were subject to metering before July 16, 2019.  You may also submit evidence of PI Class Membership to the asylum officer in accordance with your interview instructions.  Such evidence could include, but is not limited to, documents showing the dates of your travels to and stays in Mexico, documentation regarding placement of your name on a waitlist, and declarations or affidavits regarding whether you may have been subject to metering before July 16, 2019.  USCIS will schedule you for a new Credible Fear interview if it determines you are more likely than not a class member.

**This notice is <u>not</u> a determination of PI class membership.**

**AM I A PI CLASS MEMBER?**

| ☑  **You ARE a PI class member if you:** | ✖  **You ARE NOT a PI class member if you:** |
|---|---|
| ☑  Are <u>**not**</u> a citizen or national of Mexico; <br> ☑  Were subject to "metering" before July 16, 2019; and <br> ☑  Did not enter the U.S. until <u>on or after</u> July 16, 2019; and <br> ☑  You continue to seek asylum in the U.S. | ✖  Are a Mexican citizen or national; <br><br> ✖  Were not physically present at or near the U.S.-Mexico border before July 16, 2019; <br><br> ✖  Most recently entered the United States before July 16, 2019, or entered the United States other than at a land POE on the U.S.-Mexico border; or <br><br> ✖  Have already been granted asylum in the U.S. |

**HOW DO I GET MORE INFORMATION?**

You can contact your attorney or the lawyers who represent PI class members (Class Counsel) for more information.  You can call Class Counsel at [phone number].  You or your attorney may also e-mail Class Counsel at: MeteringClass@splcenter.org.  Class Counsel do not represent individual asylum seekers in their cases before the government.  You have the right to contact a separate legal representative of your choice <u>at no expense to the government</u>.

**QUESTIONS? E-mail** MeteringClass@splcenter.org **Or CALL [Class counsel's phone number]**

Exhibit 3

FORM G-56 – NOTICE OF INTERVIEW

**(Noncitizen Name/Consultant Name)**                    **DATE:**
**Dependent Name(s)**
**(Address 1)**                                          **RE: (A-Number)**
**(Address 2)**                                          **(Dependent A-Numbers)**
**(City, State Zip)**


Please come to the office shown below at the time and place indicated in connection with an official matter. You should bring all family members listed on this form. You do not need to bring an interpreter. Please contact the office shown below if you need an accommodation for a disability (such as a sign language interpreter).

| LOCATION | |
|---|---|
| **DATE & HOUR** | |
| **REASON FOR APPOINTMENT** | *Al Otro Lado v. Mayorkas* Preliminary Injunction Class Member Screening*/Credible Fear Interview |

*The U.S. District Court for the Southern District of California has issued a preliminary injunction that prohibits DHS from applying the third country transit rule to a class of individuals who approached a port of entry on the U.S.-Mexico border before July 16, 2019 but were unable to enter the port of entry before July 16, 2019, due to the CBP practice known as "metering." *See Al Otro Lado, Inc. v. McAleenan*, 423 F. Supp. 3d 848 (S.D. Cal. 2019). This interview is to determine whether you are a member of this preliminary injunction *Al Otro Lado (AOL)* class (*AOL* PI Class Member). Please see the enclosed "Notice of Potential Class Membership" for more information. If USCIS determines that you are an *AOL* PI Class Member, then USCIS will also conduct a new credible fear interview.


You are scheduled for a PI Class Membership Screening on the date and time shown above. Please read this notice in its entirety, as it contains important information. USCIS asylum offices are open with additional precautions to prevent the spread of the coronavirus (COVID-19). USCIS will conduct office cleaning and ensure social distancing, including by using video or other technology for interviews. In Department of Homeland Security-controlled spaces, such as USCIS asylum offices and ICE ERO offices, the COVID-19 guidance below supersedes state, local, tribal, or territorial rules and regulations regarding face coverings. For any subsequent updates to this guidance, please refer to the website at: www.uscis.gov/about-us/uscis-visitor-policy and also at: https://www.uscis.gov/about-us/uscis-response-to-covid-19.


**IT IS IMPORTANT THAT YOU KEEP THIS APPOINTMENT AND BRING THIS LETTER WITH YOU.**


*I.  YOU MUST APPEAR FOR THIS INTERVIEW UNLESS* you, your dependent family members, other members of your household, or your attorney:
- Have COVID-19 or any symptoms of COVID-19 per the Centers for Disease Control and Prevention (CDC), including, but not limited to, a recently developed cough, fever, difficulty breathing, new loss of smell or taste, fatigue, muscle aches, headache, congestion, sore throat, or vomiting (this list does not include all symptoms);
- Have been in close contact (within six feet for a total of 15 minutes or more) with anyone known to have COVID-19 in the past 14 days (unless you are fully vaccinated or if you are a health care worker and consistently wear an N95 respirator and proper personal protective equipment (PPE) or equivalent when in contact with COVID-19 positive individuals);
- Have returned from domestic air, international air, or cruise ship travel in the past 10 days (unless you are fully vaccinated);
- Have been instructed by a health care provider, public health authority, or government entity to self-isolate or self-quarantine in the past 14 days; or
- Refuse to wear a face covering or mask in accordance with USCIS policy.


You may request to reschedule your appointment due to illness or risk of COVID-19 infection, and the delay will not be

Rev. [DATE]

attributed to you. State your reason for requesting to reschedule, sign below and return this letter to this office at once by faxing to [**Office Fax Number]** or emailing **[email inbox]**. For asylum office contact information, visit the USCIS Service and Office Locator page at www.uscis.gov/about-us/find-a-uscis-office.

USCIS will inform Immigration and Customs Enforcement (ICE) if you fail to appear for your interview without requesting to reschedule your appointment. ICE may then take you into custody to further process your removal case.

## II. *WHO SHOULD COME WITH YOU TO YOUR INTERVIEW?* Only the following people may come with you to your interview:

- Family members: All <u>family members</u> listed above must come to your interview.

- Your <u>attorney</u>, <u>authorized representative or consultant</u> may come with you to the interview.

- Witnesses: If you have a <u>witness</u> who will provide testimony in your case, that individual may come with you to your interview. However, we encourage your witness to provide sworn written testimony before your interview and not attend the interview. You may provide this written testimony to us as additional evidence following the guidelines described in **Section III** below.

- Disabled Applicants: If you have a disability and have an <u>individual who assists you</u>, that individual may come with you.

## III. *WHAT TO BRING TO YOUR INTERVIEW:*

- If available, bring a written form of identification for you and each of your family members listed above (if any) which indicates name, date of birth, place of birth, and nationality.

- Bring your own black ink or blue ink pen with you to your interview.

- Although documentary evidence of PI Class Membership is not required, you may submit such evidence for consideration. If you wish to submit evidence for consideration, you should e-mail, fax or mail the evidence to the asylum office <u>at least</u> 7 to 10 days before the interview. You may not drop off the evidence in person before the interview as the asylum office will only be admitting those with confirmed interviews or appointments. If you choose to submit evidence but fail to do so in advance of your interview, USCIS may reschedule your interview. Please see enclosed "Notice of Potential Class Membership" for additional information about evidence of PI Class Membership you could submit in advance of the interview.

## IV. *COVID-19 SAFETY PRECAUTIONS:* USCIS will conduct office cleaning and ensure social distancing, including using video or other technology for interviews. Visit www.uscis.gov/coronavirus for current information.

In all areas of the country, all USCIS employees, on-site contractors, and visitors, regardless of vaccination status or level of COVID-19 transmission in your local area, are required to wear a mask inside all DHS and USCIS workspaces and federal buildings.
- You may not enter the facility more than 15 minutes before your appointment.
- USCIS will provide hand sanitizer at entry points.
- Everyone 2 years of age or older who has not been fully vaccinated must wear a face covering.
- There will be markings and physical barriers in the facility; you should pay close attention to these signs to ensure that you and other individuals accompanying you to your interview can follow social distancing guidelines.
- You may have to answer health screening questions before entering a facility.

All interview participants who are not part of the same household will be asked to participate in the interview from separate rooms, through videoconference or telephone. You will be in a separate room from the interviewing officer. If you bring an attorney or representative, they will be asked to participate in a room separate from you and separate from the interviewing officer, unless you and the attorney or representative assume the risk and consent to share the same interview room. If your attorney, authorized representative or consultant does not appear in person, we will contact them by phone at the number provided on the Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative.

**DO NOT** bring an interpreter to your interview. If you are not fluent in English, USCIS will provide you with a

professional interpreter who will participate in the interview by phone. If you prefer to speak a language other than Spanish or English, please contact the asylum office as soon as possible by e-mail or mail with the language you prefer to speak and the date and time of your interview.

**Enclosed:**        Notice of Potential Class Membership
                     List of Legal Service Providers
                     M-444: Information about Credible Fear Interview
                     Form AR-11

**Note for Attorney:**    Please fax or email Form G-28 to **[**AO Code]

| I am unable to keep this appointment because: | |
|---|---|
| Signature | Date |

Exhibit 4

*For Official Use Only*

## USCIS *AOL* Preliminary-Injunction Class Membership
## Screening Interview Questions


**All of the following questions must be asked of each individual during the *AOL* Preliminary-Injunction Class Membership Screening Interview, unless the directions direct you to stop or skip to a later question if the response is "no":**

1. What date did you leave your home country to come to the US?
2. How did you travel to the US?  (Please include what countries you traveled through and when you stayed in each country.)
3. What day did you cross the border from Mexico into the US? [*applies to either entrance at POE or EWI; ask appropriate follow-up questions as necessary*]
4. Did you ever try to approach a port of entry to enter the United States before that time [*insert date of entry from 3 above*]?
   a. When?  [*if the individual clearly indicates that they last entered the United States before July 16, 2019, no need for additional questions*]
   b. Where? [*if the individual clearly indicates that no attempts to enter before 7/16/19 were at a POE, skip to questions 5-7*]
   c. Which POE?
   d. What did you do to try to enter at the POE?
   e. What happened when you sought to enter at the POE?
      i. Did anyone tell you that the POE was full?  If yes, who? [*ask appropriate follow-up questions for details*]
      ii. Did anyone tell you that you needed to wait in Mexico or go to a shelter before entering to the POE?  If yes, who? [*ask appropriate follow-up questions for details*]
      iii. Where did you go?  (Please include what city and where specifically, e.g., shelter, the streets).
      iv. How long did you spend there?
      v. Do you have any documentation that shows where you stayed and how long you spent in [*city and where specifically the individual states he or she stayed*]?  If yes, are you able to provide that documentation or other information?  [*note that providing documentation is not a prerequisite to showing class membership at this time*]
      vi. While you were in [*name of city in Mexico*] were you told to put your name on any sort of list to get into a POE? If yes, who told you that? [*ask appropriate follow-up questions for details*]
      vii. While you were in [*name of city in Mexico*] were you ever told that you could return to a POE to be processed?  If yes, who told you that? [*ask appropriate follow-up questions for details*]
         1. If yes, did you then return to that POE?  [*ask appropriate follow-up questions for details*]
         2. If no, did you at any point return to that POE or another POE anyway?  [*ask appropriate follow-up questions for details*]

VER. DEC. 22, 2020

*For Official Use Only*

*For Official Use Only*

<u>**USCIS *AOL* Preliminary-Injunction Class Membership**</u>
<u>**Screening Interview Questions**</u>

5.  Did you ever add your name to any sort of list in Mexico that you believed would get you a place in line to cross through a port of entry?
    a.  Did you add your name to the list by writing it yourself?
    b.  Did someone else write your name on the list? [*If yes, who? Were you present when he/she wrote your name? If not, did you ask him/her to do that?*]
    c.  Did you give someone your name in order to receive a number so that you could enter the United States at a port of entry?
    d.  When did you add your name to that list or receive a number? [*if the individual clearly indicates that this happened after 7/16/19, skip to questions 6-7*]
    e.  Where were you when you added your name to that list?
    f.  What steps did you take to place your name on the list?
    g.  Why?
        i.  Did anyone tell you that the POE was full?  If yes, who? [*ask appropriate follow-up questions for details*]
        ii.  Did anyone tell you that you needed to wait in Mexico or go to a shelter before going to the POE?  If yes, who? [*ask appropriate follow-up questions for details*]
    h.  While you were in [*name of city in Mexico*] were you ever told that you could go to a POE to be processed?  If yes, who told you that? [*ask appropriate follow-up questions for details*]
        i.  If yes, did you then go to that POE? [*ask appropriate follow-up questions for details*]
        ii.  If no, did you at any point go to a POE anyway?  [*ask appropriate follow-up questions for details*]
        iii.  Did you decide to enter between the POEs rather than returning to a POE to be processed?
    i.  After you added your name to a list, were you told at some point that your number had been called and it was time to enter the POE? If yes, when?
        i.  Did you enter the POE when your number was called?
        ii.  If you did not enter the POE when your number was called, why not?

6.  Other than what you have already told me, did you ever try to add your name to a list in Mexico to get into the United States but were unable to add your name to the list?
    a.  What happened?

7.  Other than what you  have already told me, did you know about the existence of a waitlist in Mexico that you believed would get you a place in line to enter the United States, but decide not to add your name to a list?
    a.  Why did you decide not to add your name to a list?

2
VER. DEC. 22, 2020

*For Official Use Only*

**USCIS *AOL* Preliminary-Injunction Class Membership
Screening Interview Questions**

8.  [*If the individual claims to have been metered at San Ysidro/Tijuana, El Paso/Ciudad Juarez, or Calexico/Mexicali between March and July 16, 2019, and his/her name does not appear on the waitlist, and he/she has not offered an explanation as to why]:* We have a purported copy of [*part of the list for Tijuana or Ciudad Juarez or parts of the list for Mexicali*], and we did not locate your name on the list.  Do you know why your name does not appear on the list?

9.  [*If the individual claims to have arrived near the U.S.-Mexico border after July 16, 2019, but their name appears on one of the waitlists provided by plaintiffs or CBP:*] We believe your name appears on a list of people waiting to enter the United States in [*one of the relevant cities*] in [*relevant month/year*].  Do you know how your name could have gotten on that list? [*Officers should take account of the apparent commonality of names*]

10. Do you have any documentary evidence that you would like to submit that you have not already submitted?

3
VER. DEC. 22, 2020

*For Official Use Only*

Exhibit 5

**MEMO TO FILE**

Date:

From:  AO Name, ZXX#
       Asylum Office Name

RE:    LAST NAME, First Name A#

The individual referenced above failed to appear for a preliminary injunction class membership screening pursuant to *Al Otro Lado, Inc. v. McAleenan,* No. 17-02366 (S.D. Cal. Nov. 19, 2019). Therefore, the Asylum Division is unable to complete the screening at this time. ICE has been notified of the failure to appear. **[Provide date and method of notification to ICE, name and title of ICE personnel notified.]** The case will be processed should the individual(s) present himself or herself for the screening.

Last Known Address of Noncitizen:  **[Address 1]**
                                    **[Address 2]**
                                    **[City, State ZIP]**

# Exhibit 6

**Memo to File:**
***Al Otro Lado* Preliminary-Injunction Class Membership Screening**

Date:    MM/DD/YYYY
From:    [Asylum Officer Name]
RE:      Principal Name, A#
         Dependent Name, A#.
         **[***only include dependents who are referred for an AOL P-I class membership screening***]**

I.    The asylum officer reviewed the following lists and determined:
      ☐  The alien's name appears on the Calexico/Mexicali list.
         ("Waitlist transcribed Tijuana Mexicali (March – July 2019) for DOJ", tab
         "Mexicali March – July"; "Lista nombres CBP1"; "Listado Nombres CBP2";
         "Listado CBP Nombres3"; or "Listado CBP Nombres4").

      ☐  The alien's name appears on the San Ysidro/Tijuana list.
         ("Waitlist transcribed Tijuana Mexicali (March – July 2019) for DOJ", tabs "TJ
         32419-43019", "TJ 50119-51919", "TJ 51919-53119", or "TJ 6119-71619").

      ☐  The alien's name appears on the El Paso/Ciudad Juarez list.
         ( "Juarez Lista de Solicitantes de asilo thru 7.15.19")

      ☐  The alien's name appears on the Presidio list.
         ("Predidio POE Scan")

      ☐  The alien's name appears on [insert name of City/POE and name of list, if not
         listed above]

      ☐  The alien's name does not appear on any of the above lists.

      Notes:

II.   The asylum officer reviewed the CBP OFO list (Copy of 2020-11-
      05_APP_AOL_Preliminary_Injunction_Guidance v1) and determined:
      ☐  The alien's name **DOES** appear on the CBP OFO list.
      ☐  The alien's name does **NOT** appear on the CBP OFO list.

III.  The asylum officer reviewed the alien's I-213 and determined:
      ☐  The alien's I-213 **WAS** annotated with either "POTENTIAL AOL CLASS
         MEMBER" or "Potential AOL Class Member".
      ☐  The alien's I-213 **WAS NOT** annotated with either "POTENTIAL AOL CLASS
         MEMBER" or "Potential AOL Class Member."

1

VER. DEC. 22, 2020

IV.    The asylum officer reviewed relevant DHS records (I-213 and I-867A/B or I-877, or other relevant forms) and any prior *AOL* class membership screening Q&A, which reflect:

At the *Al Otro Lado* class membership screening interview:
- The asylum officer asked the above-named alien the December 22, 2020 USCIS *AOL* Preliminary-Injunction Class Membership Screening Interview Questions and documented his/her responses in interview notes.
- The asylum officer read the above-named alien a summary of his/her responses to the USCIS *AOL* Preliminary-Injunction Class Membership Screening Interview Questions, provided the above-named alien an opportunity to correct any errors, and documented everything in the interview notes.
- The above-named alien confirmed the accuracy of the summary.

V.    *AOL* Preliminary Injunction Class Membership Determination

☐    The alien **ESTABLISHED** that it is more likely than not that he/she is a member of the *Al Otro Lado* preliminary-injunction class.

☐    The alien **DID NOT ESTABLISH** that it is more likely than not that he/she is a member of the *Al Otro Lado* preliminary-injunction class.

See the interview notes for more information.

_____

**Asylum Officer**                                                                              **[DATE]**

_____

**Supervisory Asylum Officer**                                                      **[DATE]**
**[*if alien did not establish class membership; otherwise write N/A*]**

VER. DEC. 22, 2020

# Exhibit 7

*AOL* Preliminary-Injunction
**Class Membership Screening Determination**

Date: MM/DD/YYYY
[Principal Name] **,** A#
Dependents, if any:
[Dependent Name] , A#
**[***only include dependents who are referred for an AOL P-I class membership screening***]**


☐    You **ESTABLISHED** that it is more likely than not that you are a member of the *Al Otro Lado* preliminary-injunction class. If you received an order of expedited removal, you may receive a new credible fear interview from an asylum officer or review of your prior credible fear determination from an immigration judge. If you received a final removal order in removal proceedings before the immigration court, your case may be eligible to be reopened before the Executive Office for Immigration Review, depending on the rulings in your case.


☐    You **DID NOT ESTABLISH** that it is more likely than not that you are a member of the *Al Otro Lado* preliminary-injunction class.


VER. DEC. 22, 2020