MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  *(pro hac vice)*
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  *(pro hac vice)*
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, DC 20006
Telephone:  +1.202.263.3000
Facsimile:   +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  *(pro hac vice)*
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, DC 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Alejandro Mayorkas,[1] *et al.*, <br><br> Defendants. | Case No.:  17-cv-02366-BAS-KSC <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR COURT OVERSIGHT OF PRELIMINARY INJUNCTION COMPLIANCE** |

---

[1] Secretary Mayorkas is automatically substituted pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy (NY Bar No. 2860740)
  (*pro hac vice*)
  *bazmy@ccrjustice.org*
  Angelo Guisado (NY Bar No. 5182688)
  (*pro hac vice*)
  *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
  Sarah Rich (GA Bar No. 281985)
  (*pro hac vice*)
  *sarah.rich@splcenter.org*
  Rebecca Cassler (MN Bar No. 0398309)
  (*pro hac vice*)
  *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters (DC Bar No. 1049113)
  (*pro hac vice*)
  *kwalters@immcouncil.org*
  Gianna Borroto (IL Bar No. 6305516)
  (*pro hac vice*)
  *gborroto@immcouncil.org*
1331 G St. NW, Suite 200
Washington, DC 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

## I. INTRODUCTION

Plaintiffs concede that Defendants have taken some steps to implement the preliminary injunction ("PI"), Dkt. 330, and the order clarifying the terms of the PI ("Clarification Order"), Dkt. 605 (collectively, "the Orders"), in this case. But Defendants' assertions of "immediate" or "prompt" action, *see* Dkt. 758 at 7, 10, ring hollow when nearly two years have passed since the Court issued the PI and entire groups of PI class members still have no access to relief.

Over a year of lengthy and ultimately unsuccessful meet-and-confers between the parties, followed by the filing of multiple motions regarding PI compliance, credibly demonstrate that further conversations between the parties are unlikely to resolve existing and developing PI compliance-related disputes. Given that Defendants' opposition concedes that mediation would be useful, concedes that the Court has authority to supervise compliance with its Orders, and fails to address many of the concerns about PI compliance raised in Plaintiffs' motion, the Court should grant Plaintiffs' request for court oversight to ensure full and timely compliance with the PI.

## II. ARGUMENT

### A. Defendants Concede that Mediation to Resolve Disputes Regarding PI Implementation Would Be Useful

Defendants concede that "mediation would be a productive way to facilitate agreement" with respect to at least some of the ongoing disputes related to PI compliance, namely: 1) administration of notice; 2) development of template motions; and 3) "aspects of the procedures for identifying class members." Dkt. 758 at 18. Given that both parties agree that mediation would be helpful, the Court should grant Plaintiffs' motion and refer the ongoing PI compliance disputes to Magistrate Judge Crawford.

The Court may supervise compliance with its prior orders by referring matters to a magistrate judge for oversight. *See* Dkt. 736-1 at 13-14; *infra* Section II.B.

1

Indeed, this Court has already referred previous issues concerning PI compliance to Judge Crawford. *See* Dkt. 691 at 1 (directing parties to mediation over protective order regarding Defendants' obligation to "'share the information in their custody regarding the identities of class members with Plaintiffs' to facilitate compliance with the [PI] issued by this Court over a year ago"). There is no reason for the parties to enlist an outside mediator, as the government suggests, when referral to Magistrate Judge Crawford is both a proper and efficient way to resolve the ongoing compliance-related disputes.

Defendants argue that referral to Judge Crawford "would not be the best use of Magistrate Judge Crawford's and the parties' resources." Dkt. 758 at 17. In fact, Defendants' proposal to retain an outside mediator would be inefficient and costly. First, the parties would have to agree upon an acceptable mediator. The mediator would then need time to get up to speed on the case and the various compliance-related disputes between the parties. By contrast, Judge Crawford is already familiar with the history of these proceedings and the PI-related issues in dispute.

Referring this matter to Judge Crawford would also streamline the resolution of the issues in dispute if mediation ultimately proved unsuccessful. In that scenario, this Court could empower Judge Crawford to either resolve any outstanding issues herself or make appropriate recommendations to this Court. If the parties reached an impasse before an outside mediator, additional motion practice before this Court would inevitably ensue. Referral of the pending disputes to Magistrate Judge Crawford is therefore a more efficient way for the parties to seek resolution of issues on which they have been meeting and conferring for months, including—but not limited to—the issues Defendants concede are ripe for mediation.

Defendants also take issue with Plaintiffs' request that the Court monitor compliance with the Orders, but Plaintiffs' motion seeks only broad oversight—including compliance monitoring as the Court sees fit—to promote efficiency and avoid additional motion practice. If Defendants' PI implementation procedures are

"either close to being implemented or are in progress," as Defendants state, compliance monitoring should not be "overly burdensome" for them. Dkt. 758 at 19, 25.

Defendants suggest that the parties continue working together to resolve PI compliance issues on their own. But the parties have already engaged in extensive telephone conferences and email exchanges since Plaintiffs filed their Motion to Enforce, and Defendants have yet to finalize procedures for complying with the Orders. *See* Dkt. 736-2 (describing in detail the parties' myriad conferrals regarding PI compliance and the deficiencies that still exist in Defendants' PI compliance procedures nearly two years after this Court's issuance of the PI). Moreover, experience shows that, absent motion practice or court intervention, Defendants do not share concrete information about the government's compliance-related efforts. For example, the agency declarations submitted with Defendants' opposition contain information and exhibits that Defendants had not previously provided to Plaintiffs, despite Plaintiffs' repeated requests for additional information about the procedures that the government was developing. *Compare* Dkt. 736-2 ¶ 4(b), Decl. of Rebecca Cassler (noting that government failed to do more than "outline[] in broad strokes a tentative vision" of procedures for reopening or reconsidering the cases of PI class members ordered removed following negative credible fear determinations), *with* Dkt. 758-2 ¶¶ 4-17, Decl. of Andrew J. Davidson (providing details of these procedures, including template memos and notice documents). At this point, court oversight, as the Court sees fit, is essential to ensure that PI class members obtain relief without any further delay. *Cf. N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 551 F. Supp. 1165, 1179 (E.D.N.Y. 1982) (finding "[g]ood faith and efforts, however, are no excuse for failure to comply with provisions so necessary for the protection of the . . . clients" and ordering substantial compliance monitoring), *aff'd in part, rev'd in part on other grounds,* 706 F.2d 956 (2d Cir. 1983).

Accordingly, Plaintiffs request that the Court supervise compliance with the

Orders by referring PI compliance issues to Judge Crawford.

### B. Defendants Concede that the Court Has Authority to Supervise Compliance with Its Orders

Defendants do not dispute that this Court has the authority to take appropriate steps to supervise compliance with its prior Orders. *See* Dkt. 736-1 at 13-14. And the only case Defendants cite regarding the propriety of compliance monitoring in fact held that appointment of a monitor—a far more intrusive manner of oversight than that proposed by Plaintiffs here—was an appropriate exercise of the Court's powers where, as here, the Court was faced with a Defendant who had repeatedly failed to demonstrate a commitment to comply with the law. *United States v. Apple, Inc.*, 992 F. Supp. 2d 263, 266-69, 279-81 (S.D.N.Y. 2014) (Apple made "no showing" that a monitor is unnecessary where company stated it "intended to" take various compliance steps) (cited in Dkt. 758 at 17). Even the standard quoted by Defendants (which Plaintiffs do not concede is the correct standard, *see* Dkt. 736-1 at 13-14)—that oversight is appropriate where "a party has proved resistant or intransigent to complying with the remedial purpose of the injunction in question," Dkt. 758 at 17 (quoting *Apple*, 992 F. Supp. 2d at 280)—is easily met here.

Defendants' motion is remarkable for what it does not deny. Nearly two years after this Court issued its PI, and nearly one year after the Clarification Order, the government is *still* finalizing procedures for entire groups of AOL PI class members who have yet to be notified of the PI, much less provided access to the relief it affords. Defendants' opposition is replete with language that seeks to paint a picture of compliance, but that makes it clear that compliance has yet to occur. Thus, Defendants note that the government: "continues to explore" whether and what further review procedures may be necessary for cases where it could not determine class membership, Dkt. 758 at 11; has "worked to develop" additional procedures to determine class membership for potential class members removed pursuant to expedited removal orders after application of the Asylum Ban, *id.* at 12; "expects that

4

it will begin implementing" procedures to make class membership determinations for non-detained potential class members in the U.S., *id.* at 13; has "been working to establish" procedures for class members outside the U.S. to attend re-opened procedures, *id.* at 14; is "progressively implement[ing]" its obligations under the Orders, *id.* at 17; and has "made continuous progress toward completion of the Court's directives," *id.* at 18. *See also id.* at 19 ("will soon implement"; "close to finalizing"; "in progress"; "will soon be"). In only one instance does the government even provide a date by which this promised forthcoming action will occur, and even then it is caveated as an "expect[ed]" date when implementation will "begin" for procedures that were "nearly finalized" in July 2021. *Id.* at 13. Or, as the government itself summarizes the situation: "[t]he procedures about which Plaintiffs express concern are generally either close to being implemented or are in progress." *Id.* at 19. While that may be an acceptable status shortly after an order is issued, at this juncture it is evidence of "resistan[ce] or intransigen[ce] to complying with the remedial purpose of the injunction in question." *Apple*, 992 F. Supp. 2d at 280.[2]

The government's statement that Plaintiffs "have not pointed to any specific instances of non-compliance," Dkt. 758 at 17, demonstrates Defendants' fundamental misunderstanding of the Orders. First, Plaintiffs have obtained emergency injunctive relief from this Court to prevent the removal of a class member who had the Asylum Ban applied in her case. Dkt. 607. More fundamentally, the

---

[2] Somewhat belatedly, the government also appears to have come to the realization that meaningful notice requires finalized procedures about which class members can be informed. Dkt. 758 at 20. Plaintiffs have long urged the government to develop a cohesive compliance plan that puts the horse before the cart so that, among other things, notice can provide relevant substantive information. *See* Dkt. 646 at 10 ("Defendants are intent on providing such notice before they have developed specific plans for how such class membership will be determined or what will happen to those individuals found to be class members."). For this reason, Plaintiffs' pending Motion to Enforce seeks to compel Defendants to prepare and submit a written compliance implementation plan. *Id.* at 11.

Orders require more than just ensuring that no additional class members are wrongly removed from the United States. They require the government to take affirmative steps to identify class members and provide them with decisions on their substantive eligibility for asylum without reference to the Asylum Ban.

Separate and apart from the various procedures that Defendants claim are "in progress" and will "soon" be finalized, Defendants do not dispute or address many of the issues identified in Plaintiffs' motion, including but not limited to:

(i) The lack of any mechanism for individuals in DHS custody who received a negative credible fear determination and are subject to imminent removal (Group 1(a)) to assert PI class membership unless and until they are provided a USCIS screening, Dkt. 736-1 at 7;

(ii) The lack of any mechanism by which the government can reopen or reconsider the cases of individuals outside the United States who received negative credible fear determinations (Group (1)(c)), as well as the lack of any mechanism for Group (1)(c) members to assert PI class membership, *id.*;

(iii) The lack of any notice to non-detained potential PI class members whose cases are being reviewed by EOIR that such a review is underway, EOIR's failure to solicit information regarding PI class membership from individuals subject to Record-of-Proceeding ("ROP") class membership review (even in cases where the ROP contains no evidence regarding PI class membership), and EOIR's failure to review copies of any relevant metering waitlists in DHS's possession unless the waitlists happen to be part of the ROP, *id.* at 10; and

(iv) The lack of any plans to provide the notice required by Paragraph 3 of the Clarification Order to those who were in administrative proceedings or DHS custody as of the date of the Clarification Order or thereafter, or to those with pending motions to reopen before the Board of

Immigration Appeals or petitions for review before the federal courts of appeal, *id.* at 12-13.

As these examples and the examples of allegedly forthcoming procedures referenced above demonstrate, even the government concedes that it has not complied with those aspects of the Orders requiring it to take affirmative actions instead of just preventing further wrongful removals; if that does not constitute "specific instances of non-compliance," then the Orders lose their meaning.

Nor does Defendants' proposed mediation suffice to ensure compliance with the Court's Orders. If mediation is unsuccessful, there must be a mechanism by which disputes are resolved in a timely manner to avoid further delay in implementing the Orders. PI class members who have not been provided the relief to which they are entitled in the nearly two years since the PI was issued are harmed every day that they must wait to access the asylum process. The Orders were an appropriate remedy for the harms caused by the government's policy of metering, coupled with the Asylum Ban, when they were entered by the Court. Now that this Court has confirmed the illegality of metering, Dkt. 742, further delay in providing this relief is even more untenable.

Defendants' argument that the pendency of the government's appeals of the Orders precludes oversight over compliance in the interim, Dkt. 758 at 24, is both wrong on the law and representative of the cavalier gamesmanship with which the government has opposed compliance. The Ninth Circuit denied the government's motions for stays pending appeal in both appeals. The Orders are thus in full force and effect as are the government's compliance obligations. Fed. R. Civ. P. 62(c)(1). And this Court retains the authority—indeed, the obligation—to ensure compliance with those Orders, including the authority to modify them as may be necessary in light of new facts. *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098-99 (9th Cir. 2022); *State v. Trump*, 263 F. Supp. 3d 1049, 1056 (D. Haw. 2017) (citing cases), *aff'd*, 871 F.3d 646 (9th Cir. 2017). The government's attempted reliance on the

pendency of its appeals to evade court oversight is particularly galling considering that the government has sought and received *five* separate extensions of time to file a reply brief in support of its appeal. *See Al Otro Lado v. Wolf*, No. 20-56287 (9th Cir.), Dkt. Nos. 40, 42, 53, 55, 57. Having delayed potential resolution of the appeal by at least 257 days, the government should not now be allowed to hide behind this delay to avoid its obligations under the Orders.[3]

### C. Plaintiffs' Motion Is Consistent with Other Pending Motions

Plaintiffs' motion is consistent with and does not supersede their pending Motion to Enforce (Dkt. 644, 646) and Motion for Discovery (Dkt. 680-1). First, the Motion to Enforce seeks decisions from the Court on certain specific, concrete aspects of compliance with the Orders. *See* Dkt. 646 at 12-25 (seeking, *inter alia*, an order directing the government to seek copies of metering waitlists not in its possession, to disregard statements made by potential PI class members in prior demonstrably faulty screening interviews, and to reopen *all* cases of PI class members to whom the Ban was applied). Except for the dispute between the parties regarding entry of a Protective Order, *see id.* at 17-19, the disputes presented in the Motion to Enforce remain pending, and the government maintains that most of these issues are not "suitable" for mediation, Dkt. 758 at 18 n.7. Plaintiffs agree that resolution of specific issues fully briefed as part of the Motion to Enforce are appropriate for decision by the Court.

In addition, in the Motion to Enforce, Plaintiffs requested a "mechanism by which remaining areas of disagreement regarding implementation can be raised with

---

[3] Somewhat ironically, while the government contends that the Court lacks the power to modify the injunction if necessary, the government has apparently determined that its unilateral assessment of burden and benefit provides it with the authority to disregard the express directive that Defendants "review[] their records for notations regarding class membership" made on Forms I-213, Dkt. 605 at 25. *See* Dkt. 758 at 23 (explaining why government refuses to systematically review Forms I-213 for class membership annotation).

[the] Court in a timely manner," in the form of "regular status conferences regarding Defendants' implementation of and compliance with the Orders." Dkt. 646 at 11-12. Plaintiffs' request was informed by the record of the government's noncompliance at the time of filing that Motion. Plaintiffs subsequently filed the instant motion because of Defendants' continuing pattern of noncompliance with the Orders, and because additional specific disputes between the parties have arisen regarding what the Orders require. Both Plaintiffs' request for status conferences in the Motion to Enforce and their request for broader oversight by Magistrate Judge Crawford in this Motion for Oversight are justified based on the briefs and evidence presented with each motion. Plaintiffs defer to the Court regarding the ultimate form that compliance monitoring should take, but they do not agree that the Motion for Oversight somehow "supersedes" the requests made in the Motion to Enforce.

Similarly, regarding the pending Motion for Discovery, Plaintiffs' main reason for filing that motion persists: obtaining information about the government's compliance with the Orders, nearly eleven months after the Clarification Order was entered, remains difficult. The government has shared various spreadsheets containing certain information regarding potential class members with Plaintiffs, as ordered by Magistrate Judge Crawford.[4] *See* Dkt. 707 at 11. But information regarding broader procedures is still incomplete, and the government's record of continuing failure to comply with the Orders justifies limited discovery in this instance, just as it did when Plaintiffs filed the Motion for Discovery. *See Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1034 (9th Cir. 2008).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be granted.

---

[4] Plaintiffs do not concede that the data provided by the government is sufficient in form or substance to be used to provide notice to PI class members.

Dated: September 22, 2021

MAYER BROWN LLP
   Matthew H. Marmolejo
   Ori Lev
   Stephen M. Medlock

SOUTHERN POVERTY LAW CENTER
   Melissa Crow
   Sarah Rich
   Rebecca Cassler

CENTER FOR CONSTITUTIONAL RIGHTS
   Baher Azmy
   Angelo Guisado

AMERICAN IMMIGRATION COUNCIL
   Karolina Walters
   Gianna Borroto

By: */s/ Ori Lev*
   Ori Lev

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that I caused a copy of the foregoing document to be served on all counsel via the Court's CM/ECF system.

Dated: September 22, 2021  MAYER BROWN LLP

By */s/ Ori Lev*