MAYER BROWN LLP
  Matthew H. Marmolejo (CA Bar No. 242964)
  *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
  Ori Lev (DC Bar No. 452565)
  (*pro hac vice*)
  *olev@mayerbrown.com*
  Stephen M. Medlock (VA Bar No. 78819)
  (*pro hac vice*)
  *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone:  +1.202.263.3000
Facsimile:   +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
  Melissa Crow (DC Bar No. 453487)
  (*pro hac vice*)
  *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Chad F. Wolf,[1] *et al.*, <br><br> Defendants. | Case No.:  17-cv-02366-BAS-KSC <br><br> **EXHIBIT 52 IN SUPPORT OF PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |

---

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
    Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
    *bazmy@ccrjustice.org*
    Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
    *gschwarz@ccrjustice.org*
    Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
    *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
    Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
    *sarah.rich@splcenter.org*
    Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
    *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
    Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
    *kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

EXHIBIT 52 IN SUPPORT OF PLAINTIFFS' MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT



*Office for Civil Rights and Civil Liberties*
**U.S. Department of Homeland Security**
Washington, DC 20528

July 5, 2017

MEMORANDUM FOR:    Kevin K. McAleenan
Acting Commissioner
U.S. Customs and Border Protection

Scott K. Falk
Chief Counsel
U.S. Customs and Border Protection

FROM:    Dana Salvano-Dunn   **LE**
Acting Deputy Officer for Programs and Compliance
Officer for Civil Rights and Civil Liberties

Susan Mathias   **LE**
Assistant General Counsel (Legal Counsel Division)
Office of General Counsel

SUBJECT:    Declining to Inspect or Process Asylum Seekers at the San Ysidro,
Hidalgo, Reynosa, and other Ports of Entry

Complaint No.
Complaint No.
Complaint No.
Complaint No.  **LE**
Complaint No.
Complaint No.
Complaint No.

The Office for Civil Rights and Civil Liberties (CRCL) has opened several complaints alleging violations of civil rights or civil liberties resulting from Customs and Border Protection (CBP) refusing to inspect and process undocumented foreign nationals seeking asylum at the San Ysidro Port of Entry (POE) and other POEs along the U.S.-Mexico border. The purpose of this memorandum is to notify you of the complaints and describe the allegations, inform you that CRCL will retain this complaint for investigation, and explain how CRCL will work with CBP during this investigation.

<u>ALLEGATIONS</u>

From July 11, 2016, through April 10, 2017, CRCL received multiple allegations that CBP refused to inspect and process undocumented foreign nationals seeking asylum in the United States at several POEs along the U.S.-Mexico border.

*Protected by Attorney-Client and Deliberative Process Privileges*

Highly Confidential/Attorneys' Eyes Only

CRCL opened complaints based upon these allegations that included the following categories of conduct: (1) that CBP refused to inspect and process, and turned away, undocumented foreign nationals seeking asylum ("asylum seekers") at the San Ysidro POE, and other POEs along the U.S.-Mexico border; (2) that CBP directed asylum seekers to obtain a 'ticket' from Mexican authorities with a return interview date to be determined; (3) that CBP officers informed asylum seekers that the United States is no longer accepting asylees, including those from Mexico or who allege that they are victims of organized crime; and (4) that CBP threatened attorneys accompanying asylum seekers and separated attorneys from those individuals at the San Ysidro POE.

CRCL is aware that on June 24, 2016, the San Ysidro Admissibility Enforcement Unit (AEU) processing and holding areas were closed for construction and AEU's operations were diverted to trailers in the Ped West facility. CRCL understands while the facility was under construction, the San Ysidro POE implemented metering for some length of time to manage the incoming traffic. Despite CBP's assurances that the San Ysidro POE has discontinued metering, CRCL has continued to receive allegations that CBP is turning away and failing to inspect and process undocumented foreign nationals who seek asylum. Accordingly, CRCL's investigation will review the ways in which CBP implemented, and is possibly still applying, a metering system, particularly as it concerns undocumented foreign nationals seeking asylum.

Specific complaint allegations include the following:

- Complaint Number [ LE ] An executive at Human Rights First sent correspondence to the CBP Commissioner and DHS Deputy Secretary regarding reports that CBP turned away multiple asylum seekers at the San Ysidro POE, including those from Mexico and Haiti. The correspondent alleged that CBP officers have indicated that there are not enough CBP officers to process asylum seekers; CBP officers have told asylum seekers they cannot be processed at the San Ysidro POE; CBP officers have told asylum seekers they must return to Mexico to seek U.S. asylum; and CBP officers have told asylum seekers they must be brought in by migrant shelters in Tijuana to request protection. For example, the complaint alleged that:
  - CBP turned away a Mexican asylum seeker twice at San Ysidro and once at Otay Mesa after telling him that the United States was not accepting people for asylum.
  - CBP officers at the San Ysidro POE turned away a family of Cubans seeking protection after telling them to go to a migrant shelter in Mexico.
  - A CBP officer turned away a Guatemalan asylum seeker, telling him the United States was not giving asylum anymore.

- Complaint Number [ LE ] [ LE ] allegedly presented himself at the San Ysidro and Otay Mesa POEs to apply for asylum on July 11, 13, and 14, 2016. [ LE ] alleged he was informed by CBP that CBP was not accepting any more people, and was not inspecting and processing undocumented foreign nationals seeking asylum.

- Complaint Number [ LE ] [ LE ] alleged that he and his fourteen-year-old son, both of whom are Guatemalan, presented themselves to

*Protected by Attorney-Client and Deliberative Process Privileges*  2

U.S. authorities and claimed asylum. [LE] alleged that CBP Officers told them that there was no more space for asylum seekers and that they should seek asylum in Mexico. [LE] alleged that the CBP officer pushed them back into Mexico.

- Complaint Number [LE] [LE] alleged that she presented herself and her two children at the San Ysidro POE on November 3, 2016, to ask for asylum. [LE] alleged that when she told the agent that she and her children were fleeing because of death threats made against them, the agent told her that unless they were fleeing because of direct threats made by the government, they did not "qualify to ask for asylum" because the United States was no longer accepting asylum applications from people fleeing violence caused by organized crime. [LE] [LE] stated that after she spoke to the agent, she was taken back to Mexico.

- Complaint Number [LE]: Nicole Ramos, a U.S.-licensed attorney, alleged that a CBP Officer and CBP Supervisor Gomez threatened her on January 26, 2017, at the San Ysidro POE, and that Supervisor Gomez failed to comply with U.S. law. [LE] [LE] accompanied a Turkish asylum seeker and his legal representatives to the POE. At the POE, a CBP officer allegedly told [LE] that the asylum seeker first had to go to Grupo Beta, a Mexican governmental entity, to obtain a "ticket" with a return interview date in the future. [LE] then spoke to Supervisor Gomez, who ordered the other two attorneys who represented the asylum seeker to proceed through the POE. Allegedly, when Supervisor Gomez ordered [LE] to proceed through the POE, [LE] declined, as she would have left the asylum seeker unaccompanied. [LE] claimed that Supervisor Gomez refused to listen to her as she explained the asylum seeker's circumstances, or to the asylum seeker who pled repeatedly that he was afraid of returning to his home country and was seeking asylum in the United States. [LE] contended that by refusing to accept the asylum seeker for processing, Supervisor Gomez failed to comply with 8 U.S.C. § 1225.[1] Supervisor Gomez also allegedly accused [LE] [LE] of lying and coaching the asylum seeker, and threatened to contact Grupo Beta to physically remove [LE] from the Mexican side of the POE.

- Complaint Number [LE] In *In Their Search For Asylum, Central Americans Find The U.S. Is Closing Its Doors*, National Public Radio reported that asylum seekers are being turned away at the border and are being told that the United States is no longer accepting asylum seekers. The story reported that CBP turned away [LE] [LE] his wife [LE] and their three-year-old daughter [LE] from the Hidalgo, Texas POE six times in early March 2017. [LE] said, "The last official told us they weren't processing asylum applicants anymore and not to return. If we didn't leave voluntarily, they would have us deported by Mexican immigration authorities." A pro bono attorney accompanied the family on their seventh attempt, and CBP then processed them.

---

[1] 8 U.S.C. § 1225 mandates that all aliens present in the United States who are not admitted or who arrive shall be treated as applicants for admission and, accordingly, must be inspected by immigration officers. 8 U.S.C. § 1225(a)(1),(3). If "an immigration officer determines that an alien who is arriving in the United States . . . is inadmissible . . . the officer shall order the alien removed from the United States . . . **unless** the alien indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i) (emphasis added).

*Protected by Attorney-Client and Deliberative Process Privileges*                    3

- Complaint No. **LE** : Nicole Ramos, a U.S. licensed attorney and Project
  Coordinator for the Border Rights Project of Al Otro Lado, alleged that CBP Sergeant
  Pacheco and CBP Shift Chief Soto failed to comply with U.S. law and international legal
  obligations by refusing to inspect and process **LE** and her three-year-
  old son, **LE** , when they presented themselves at the San Ysidro POE to
  seek asylum and request a credible fear interview. **LE** alleged that Chief Soto
  advised **LE** that she would have to go to Mexican Immigration to be placed on a
  list and obtain a ticket; without the tickets, CBP would not process her and her son.

## CRCL

*CRCL Mission.* CRCL supports the Department's mission to secure the Nation while preserving
individual liberty, fairness, and equality under the law. CRCL integrates civil rights and civil
liberties into all the Department's activities:

- Promoting respect for civil rights and civil liberties in policy creation and
  implementation by advising Department leadership and personnel, and state and
  local partners;
- Communicating with individuals and communities whose civil rights and civil
  liberties may be affected by Department activities, informing them about policies
  and avenues of redress, and promoting appropriate attention within the
  Department to their experiences and concerns;
- Investigating and resolving civil rights and civil liberties complaints filed by the
  public regarding Department policies or activities, or actions taken by Department
  personnel; and,
- Leading the Department's equal employment opportunity programs and
  promoting workforce diversity and merit system principles.

*CRCL authorities.* Under 6 U.S.C. § 345 and 42 U.S.C. § 2000ee-1, CRCL is charged with
investigating and assessing complaints against DHS employees and officials of abuses of civil
rights, civil liberties, and profiling on the basis of race, ethnicity, or religion. The procedures for
our investigations and the recommendations they may generate are outlined in DHS Management
Directive 3500.

*Access to information.* More particularly, 42 U.S.C. § 2000ee-1(d) grants CRCL access to the
"information, material, and resources necessary to fulfill the functions" of the office, including
the complaint investigation function. Management Directive 3500 further authorizes CRCL to:

- "Notify[] the relevant DHS component(s) involved of the matter and its
  acceptance by CRCL, and whether the matter will be handled by CRCL or by the
  component organization";
- "Interview[] persons and obtain[] other information deemed by CRCL to be
  relevant and require[e] cooperation by all agency employees"; and,

*Protected by Attorney-Client and Deliberative Process Privileges*    4

- "Access[] documents and files that may have information deemed by CRCL to be relevant."

*Reprisals forbidden.* In addition, 42 U.S.C. § 2000ee-1(e) forbids any Federal employee to subject a complainant or witness to any "action constituting a reprisal, or threat of reprisal, for making a complaint or for disclosing information to" CRCL in the course of this investigation.

This memorandum and its accompanying request for information are issued pursuant to these authorities.

*Privilege and required transparency.* Our communications with CBP personnel and documents generated during this review, particularly the final report, will be protected to the maximum extent possible by attorney-client and deliberative process privileges. Under 6 U.S.C. § 345(b), however, we submit an annual report to Congress—also posted on CRCL's website—that is required to detail "any allegations of [civil rights/civil liberties] abuses . . . and any actions taken by the Department in response to such allegations."

We look forward to working with your staff on this matter and will report back to you our findings and recommendations.

SCOPE OF REVIEW

The purpose of our review is to determine if the factual allegations in the complaints can be verified or disproven; if the facts that we find suggest that the Constitution, a Federal statute, or a Departmental policy has been violated; and what steps if any should be taken by CBP to address the complaints, both individually (if the problem is ongoing) and as a matter of policy. This review also will examine the additional areas specified above for similar concerns related to protection of civil rights and civil liberties.

QUESTIONS PRESENTED

This investigation will cover the following question(s):

1. Whether CBP conformed to DHS's and CBP's policies and procedures, to civil rights requirements, and to Federal and international legal obligations in processing asylum seekers.

2. Whether CBP officers at the San Ysidro POE and other specific POEs along the U.S.-Mexico border have refused to inspect and process undocumented foreign nationals seeking asylum in the United States.

3. Whether CBP officers or contractors directed asylum seekers to return to Mexico to obtain "tickets" to be processed at a future time.

*Protected by Attorney-Client and Deliberative Process Privileges*                    5

4. Whether CBP officers or contractors informed asylum seekers that the United States is no longer accepting asylees, including those from Mexico, or those who claim to be victims of organized crime.

5. Whether CBP officers threatened attorneys and separated attorneys from clients seeking asylum at the San Ysidro POE.

It is possible that our investigation will reveal other matters of concern; if this occurs, we will inform you.

INITIATING THE INVESTIGATION

CRCL has taken steps to begin its investigation of these complaints, which are assigned to Senior Policy Adviser Ann Marie Shaw, and Contract Support Investigator Francine Hochberg-Giuffrida.

We request that CBP schedule an initial discussion with Ann Marie Shaw and Francine Hochberg-Giuffrida as soon as possible to discuss this complaint and our plans to review this matter. We look forward to working together to determine the facts surrounding this matter and if appropriate, the best way forward. If you have any questions, please do not hesitate to contact Ann Marie Shaw by phone at ███████████████████████ or by email at ███████████ and Francine Hochberg-Giuffrida by phone at ███████████ or by email at ███████████

Copies to:

Rebekah Salazar
Privacy and Diversity Office
U.S. Customs and Border Protection
███████████████████████

Jessica R. Samuel
Acting Deputy Director
Office of Professional Responsibility
U.S. Customs and Border Protection
███████████████████████

Kristy Montes
Deputy Director, Diversity and EEO Division
Privacy and Diversity Office
U.S. Customs and Border Protection
███████████████████████

Gila Zawadzki-Phipps
Management and Program Analyst

*Protected by Attorney-Client and Deliberative Process Privileges*          6

Custody Support and Compliance Division
Privacy and Diversity Office
U.S. Customs and Border Protection
███████████████████

Todd Owen
Executive Assistant Commissioner
Office of Field Operations
U.S. Customs and Border Protection
███████████████████

Tyesha Bordeaux
Chief of Staff
Office of Field Operations
U.S. Customs and Border Protection

███████████████████

**Via email:**
JOINTINTAKE@cbp.dhs.gov

███████████████████

Enclosure[s]

*Protected by Attorney-Client and Deliberative Process Privileges*            7

Highly Confidential/Attorneys' Eyes Only            AOL-DEF-00069156