MAYER BROWN LLP
Matthew H. Marmolejo (CA Bar No. 242964)
*mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
Ori Lev (DC Bar No. 452565)
(*pro hac vice*)
*olev@mayerbrown.com*
Stephen M. Medlock (VA Bar No. 78819)
(*pro hac vice*)
*smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: +1.202.263.3000
Facsimile: +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
Melissa Crow (DC Bar No. 453487)
(*pro hac vice*)
*melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

Al Otro Lado, Inc., *et al.*,

Plaintiffs,

v.

Chad F. Wolf,[1] *et al.*,

Defendants.

Case No.: 17-cv-02366-BAS-KSC

**EXHIBIT 101 IN SUPPORT OF PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
*bazmy@ccrjustice.org*
Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
*gschwarz@ccrjustice.org*
Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
*aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
*sarah.rich@splcenter.org*
Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
*rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
*kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

**STANDARD OPERATING PROCEDURE**

**SAN YSIDRO PORT OF ENTRY ADMISSIBILITY ENFORCEMENT UNIT**

**DATE: January 2017**

**REVIEW DATE: August 2017**

**SUBJECT: Admissibility Enforcement Unit Standard Operating Procedure**

# 1 Purpose

This Standard Operating Procedure (SOP) establishes local policy and guidance for U.S. Customs and Border Protection Officers (CBPO) working in the Admissibility Enforcement Unit (AEU), at the San Ysidro Ports of Entry.

This Standard Operating Procedure (SOP) establishes guidance for all Officers assigned to the San Ysidro Admissibility Enforcement Unit (AEU). All AEU officers assigned to San Ysidro will follow these procedures and will not deviate from this SOP on any shift. This policy will be in effect at the San Ysidro Port of Entry only.

# 2 Policy

The personal safety of officers, third parties and detainees is paramount during all aspects of CBP processing.

This policy shall pertain to all persons who are undergoing CBP processing, to include detention, transport and escort of such persons. This includes, but is not limited to persons who are suspected of terrorist activity, are under arrest, or are aliens awaiting removal, transfer, referral, or other processing.

Detainees will be promptly processed and when necessary turned over to Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO), the Office of Refugee Resettlement (ORR), or any other appropriate Law Enforcement Agency (LEA) or repatriated back to their home country.

# 3 Authorities/References

19 United States Code (USC) §§ 482, 1461, 1581, 1582, 1589a; 8 USC § 1222, 1225, 1226, 1226a, 1357; Title 8 Code of Federal Regulations (CFR) Parts 232, 235, 236 and 287; The Immigration and Nationality Act (INA); National Standards on Transport, Escort, Detention and Search (TEDS October 2015). Personal Search Handbook, CIS HB 3300-04B revised July 2004; Physical Security Handbook CIS HB 1400-02A; Commissioner's Situation Room Reporting, CBP Directive 3340-025C dated

01/28/2005; Responding to Potential Terrorist Seeking Entry Into the United States, CBP Directive 3340- 021B, dated 09/07/2006; CIS HB 4500-0I A Firearms and Use of Force Handbook; Firearms and Use of Force Training Policy Customs Directive 4510-017A, dated 12/17/2001; Use of Force Policy, Guidelines and Procedures Handbook, HB 4500-01C; October 31, 2005 Memorandum of Understanding (MOU) Between the Department of Homeland Security (DHS) and the Department of Health and Human Services (HHS); Third Party Notification Memorandum; DHS Enforcement Standard, Detention Operation Manual; Consular Notification Memorandum; Inspector's Field Manual (IFM), Chapter 17; *Flores v Reno* Settlement Agreement; Vienna Convention on Consular Relations (VCCR)

# 4 General

CBP officers have the combined statutory authority under Title 8 USC, the INA and Title 19 USC to search without a warrant, take sworn statements, and detain applicants for admission to determine their admissibility into the United States and detain persons suspected of violating the laws of the United States. In cases where removal proceedings are being initiated, a decision relating to the detention of the person must be made. AEU's goal is to maintain detention at a minimum (i.e., waiting for departure of flight, or preparation of case file, etc.). For purposes of this directive, during processing at a port of entry (POE), detention and custody begins when the traveler is referred to AEU and processed at Intake.

# 5 Definitions

5.1 U.S. Customs and Border Protection Officer: An armed officer in the 1895 job series in uniform or approved for civilian attire by the Director, Field Operations (DFO), who is authorized to perform duties at any level of assignment within an area port or POE.

5.2 Absconder: A person who a CBP officer has both an opportunity and a reason to physically control but who is not prevented from escaping, evading, or fleeing detention by CBP regardless of whether the person is apprehended and/or returned to CBP custody.

5.3 Adult: A person known or reasonably believed to be 18 years of age or older.

5.4 Attended Area: A location where a person is in the physical presence of a CBP employee or contracted employee.

5.5 Detention: The temporary detention of a person in AEU while a case is being processed administratively or prepared for presentation for prosecution; pending parole, release, departure from the United States, or transfer of custody to another agency. Detention begins when a person is referred by an officer and taken to the AEU through intake. Detention duration is for the least amount of time necessary to complete processing.

5.6 Detention Cell: A secure location that may be unattended, for the purpose of separating a

detainee awaiting transfer to another detention facility or LEA, and/or to ensure the safety of the traveling public and CBP employees.

5.7 Detainee: Any person regardless of citizenship or nationality who is detained by CBP or any other law enforcement agency.

5.8 Escape Risk: Any detainee who, in the belief of a CBP officer, may attempt to abscond from CBP custody if not otherwise prevented. Also, any individual who has actively sought or may actively seek opportunities to escape from CBP custody.

5.9 Escort: To transport or otherwise move any person detained by CBP.

5.10 Juvenile/Minor: A person known or reasonably believed to be under 18 years of age.

5.11 Medical professional: A licensed doctor, nurse practitioner, technician, or aide trained to treat, provide care, administer medication, or perform services specific to the medical needs of the person being escorted/detained. (Physicians Assistants (PA) provide most of the medical care in AEU).

5.12 Personal Search: A search for merchandise, including contraband, weapons, or documents suspected to be hidden in the clothing a person is wearing or on/in his/her body.

5.13 Secure Area: An area, such as a detention cell, search room, or interview room, where an individual is detained for a temporary period of time out of public view and where the likelihood of escape is minimized because there is no means of egress available to the individual. [NOTE: Within AEU, secured area is considered any area beyond intake area.]

5.14 Secured Vehicle: A conveyance that is equipped with a security cage or other security measures that separates detainees from officers, and limits detainee egress from the vehicle.

5.15 Temporary Holding Area (THA): A designated area where low-risk administratively inadmissible aliens may be held [e.g. area used for overflow.]

5.16 Transport: To physically move a detainee using a government vehicle beyond the confines of the POE.

5.17 Unaccompanied Child (UAC): Any minor, age 17 and under, not traveling with an immediate family member over the age of 18.

5.18 Unsecured Vehicle: A conveyance that is not equipped with security measures to separate detainees from officers.

5.19 Weapon: Any object, item, or device that may be used to cause physical injury, incapacitate, or diminish capability, temporarily or permanently.

# 6 Responsibilities

6.1 The Assistant Port Director (Tactical) is responsible for overall implementation and program management of this Standard Operating Procedure.

6.2 The Deputy Assistant Port Director (DAPD)/Watch Commander (WC) (Tactical) will have operational oversight and ensure proper equipment and training is available to conduct operations in a safe and efficient manner.

6.3 The Chief (Admissibility Enforcement Unit) will ensure Supervisors and Officers assigned to the AEU duties are familiar with CBP policies and directives pertaining to Secure Detention, Transport and Escort Procedures at Ports of Entry.

6.4 Supervisors will ensure CBP Officers assigned to AEU, follow policies and directives so in compliance with all local procedures and national policies.

# 7 General Functions

7.1 The AEU processes cases and detains most individuals encountered at the San Ysidro Ports of Entry who are subsequently deemed inadmissible to the United States.

7.2 The types of cases processed within the AEU include Expedited Removals, Visa Waiver Refusals/Removals, 240 Hearings (EOIR), Limited Review cases, Withdrawals and Asylum/Credible Fear Claims.

[redacted]

# 8 Internal Processing

8.1 All subjects being processed administratively by AEU will be admitted at Intake. Their biometrics will be taken and they will be placed in holding areas appropriate for their age/status/gender.

8.1.1 Anyone admitted to AEU will be subject to a pat down search for officer and traveler safety (sanitized).

8.1.2 All individuals entering the unit will be screened initially for any contagious medical issues (i.e. scabies, lice, chicken pox). Any person identified as possibly having a contagious or infectious disease will be isolated and/or segregated and not be allowed to enter the general population. The on-site medical professional will attempt to assess and diagnose the condition and if a contagious condition is suspected, the Center for Disease Control (CDC) will immediately be notified.

8.2 All cases are to be processed within 48 hours of their arrival. Cases will be processed in order of priority:

1. UAC
2. Family Units with minors
3. Medical Issues/Pregnant Females
4. Arrival Time (Oldest case processed first)

# 9 Secure Integrated Government Mainframe Access (SIGMA) Documentation

9.1 Supervisors will conduct musters on each shift to remind officers of the importance of adequate documentation in SIGMA.

9.2 Throughout each shift, supervisors, chief and watch commander will have the custody logs open (SIGMA) and will verify that checks are being made regularly (15 minute intervals).

9.3 Supervisors will regularly and routinely check the custody log for every minor in custody and ensure proper annotation is recorded.

9.4 Supervisors will spot check all other custody logs to ensure they are properly annotated in SIGMA.

9.5 Officers and supervisors will confirm that regular visual checks (15 minute intervals), meals offered, medication provided, family contact or separation and hygiene checks were completed as appropriate at the end of every shift and documented in SIGMA in accordance with TEDS.

9.6 Supervisors will include SIGMA verification results in the end of shift reports.

9.7 DCO's, Supervisors and Chiefs will meet prior to the end of the shift to verify that checks were regularly made in the custody log for all minors and spot check the adults (minimum of 1 event from each cell).

# 10 Detention in AEU

10.1 Detention Maximum Capacity in AEU is [redacted]

10.2 Officers shall be sensitive to detained persons who are pregnant, on life-sustaining/lifesaving medication, disabled, appear ill, comprise family units (parent/adult with child/juvenile), or are persons of advanced age (over the age of 70) or unaccompanied juveniles (under the age of 18). Transgender individuals will be kept separate from general population and placed in isolation cells, and direct-booked to the custody of ERO as soon as the file is complete to move them to long term facilities expeditiously.

10.3 In cases where family units are encountered but only the parent or legal guardian is

detained, the totality of the circumstances will dictate whether he/she should be separated from a juvenile who is not detained. Normally, CBP will strive to keep family units together; however, there may be times when it is necessary to separate juveniles from the parent(s) and/or legal guardian(s). When it is necessary to separate a juvenile from his/her parent or legal guardian, CBP must ensure that the provisions of the Flores v Reno Agreement are followed.

10.3.1 In cases where a family unit consists of a mother and small minors and an older male minor, the older male minor may be placed in a minor cell but will be allowed to spend time with his mother

10.3.2 When a family unit consists of an undocumented parent and only USC children, the USC children will be turned over to CPS so that arrangements can be made to reunite them with family. If the unit has both USC and undocumented children, the family unit will NOT be separated.

10.4 Males and females shall be segregated at all times when in a POE detention cell (even if they claim to be married). Whenever possible, transgender individuals will be placed in isolation cells. Under no circumstances are detained persons under the age of 18 to be held with adult detainees, unless the adult is an immediate relative or recognized guardian who has been charged with the care and custody of the minor, and no other single adult detainees are present in the area. Special treatment of juveniles is of paramount importance.

10.5 Detention Cell Monitoring: Officers shall closely supervise detention cells at the POE when in use. Supervisors and Officers shall monitor individuals placed into an unattended secure area at a minimum of 15 minute increments, noting in SIGMA the time and the physical/mental observations of the detainee in the corresponding area.

10.6 Detention Control Officer (DCO): The DCO assigned on the shift is responsible for the overall care and accountability of all detainees.

**10.6.1 DCO Responsibilities include the Following:**

- At the beginning and end of shift a roll call / turn over to oncoming DCO will be conducted.
- 15 minute cell checks will be conducted 24/7 and annotated in SIGMA.
- A second pat-down will be completed on all subjects before they are placed in a cell.
- Ensure cell log entries are complete and accurate.
- Ensure all subjects placed in a cell have a cell log sheet attached to the door.
- Ensure Cell log sheets are removed once subjects have been transported or released.
- Properly post UNIVERSAL signs (as necessary) on doors.
- Coordinate with the duty supervisor and prepare I-216 for transports.
- Rotate detainees from cells for cleaning and sanitation.
- Ensure all detainees are fed in a regular and timely manner.

- Ensure personal property is returned to subjects upon departure.
- Check all cells to ensure there are adequate daily necessities (Sanitary napkins, toilet paper, functioning toilets, drinking water, functioning lights, temperature is within range of 66-80 degrees).
- Ensure all required medication is made available as prescribed and documented in SIGMA.
- Ensure all detainees are provided with hygiene sup
- plies (i.e. toothbrushes, soap, and hand sanitizer) and that SIGMA is annotated as such.
- Check supplies and ensure the unit is adequately stocked with meals, water, cups, and necessary toiletries.
- Ensure showers are provided (at a minimum every 48 hours and as needed) and documented in SIGMA.
- Allow family units who are detained separately time to reunite and ensure SIGMA is annotated.

10.7 Personal Property: All detainees' personal property discovered during apprehension or processing and not deemed to be contraband, will be safeguarded, itemized, tagged, stored, and documented in SIGMA.

10.7.1 Currency: Any currency in the form of bills will be retained by the detainee, with the amount annotated on the Appendix D and annotated in SIGMA.

10.7.2 The inventory of a detainee's personal property must be conducted in the presence of the detainee. The detainee will be given a receipt matching the property tag number placed on his/or her property.

10.7.3 A detainee's personal property will be stored in a secure storage room or area. The secure storage room or area must be maintained in a clean and orderly manner and inspected as often as necessary to protect detainee property.

10.7.4 Supervisors monitor the property room via cameras. Supervisors must be notified immediately when personal property is reported missing or damaged and will investigate the matter and notify the chief or WC and/or make notifications to the Joint Intake Center (JIC) as appropriate.

10.7.5 Whenever feasible, property will be transported with the detainee (unless seized) and will not remain in AEU once the detainee is transported.

# 11 Overflow Contingency Plan

[redacted]



# 12 Health and Welfare of Detainees

12.1 On-Site Medical Professionals are available 08 hours a day. Any person with a medical condition or complaint will be referred for evaluation.

12.2 Whenever a CBP officer has reasonable suspicion that a person has a serious communicable disease (such as Avian Influenza or Tuberculosis), CBP must notify the Department of Health and Human Services (HHS), Centers for Disease Control (CDC). CBP will assist the CDC in the execution and enforcement of CDC issued quarantine orders. All instances of possible contagious disease encounters will be reported to the duty WC.

12.2.1 Every effort should be made to identify the condition at intake, and the person(s) should be immediately isolated.

12.2.2 If Lice are discovered, the detainee(s) will be immediately escorted, with hair caps, and Lice treatment provided. Only one treatment is required and once completed, the detainee can be placed in general population.

12.2.3 If a detainee is found to have a rash that appears to be Chickenpox or is suspected to be Chickenpox, that person(s) will be isolated in a containment cell and CDC will be notified by the Duty Supervisor and the PA will treat

the subject(s) as soon as possible. (Photos will be taken as requested by CDC).

12.2.4 If any detainee is found to have pink eye, they will also be isolated until medically cleared by the PA.

12.2.5 If there are any concerns of a contagious disease, those detainees are to be isolated as soon as it is discovered. If there is a possibility of contamination, detainees with close contact will be seen and cleared by the onsite PA.

12.3 CBP officers will not administer or assist in injecting or administering medication. When an injection of prescribed medication is necessary, On-Site Medical Professionals will be contacted. Only prescribed oral medication in a properly identified container, with the specific dosage indicated, may be self-administered under the supervision of a CBP officer. If medication is needed, the medical professional on site will see the subject and issue a prescription. Administration of prescribed medication, medical assistance, or refusal of the same, will be noted in SIGMA.

12.4 Meals: Three meals (2 hot and 1 cold) are provided to all detainees within a 24 hour period. A fourth meal will be provided to all minors and pregnant females. The DCO ensures real time documentation in SIGMA for each meal served, including, who accepted and who declined a meal.

12.4.1 Each meal generally consists of a breakfast (hot meal), lunch (cold meal), and dinner (hot meal), a piece of fresh fruit, sliced carrots or macaroni salad, 100% juice drink box. If the DCO becomes aware of a cultural or religious dietary restriction or difference, the DCO notifies the AEU Duty Supervisor expeditiously so an appropriate meal can be provided as soon as possible (documented in SIGMA).

12.4.2 Ordering meals is the responsibility of the Duty Supervisor, however, it is the responsibility of the shift DCO to make sure there is enough food to accommodate each detainee during their shifts meal service. Notification to the Duty Supervisor will be made as soon as possible if emergency meals need to be ordered (meals should be ordered for individuals in the asylum line if there are a lot of subjects waiting).

12.4.3 During the meal service the following procedures will be followed at all times:

- [redacted] Officers will be assigned to the meal service at all times.
- The amount of detainees allowed in the dining area at any one time will be based on what would be considered safe, at the time of the meal service.
- An Officer will call out a detainees name to exit the detention cell and the detainee will remove a meal from the meal cart and be directed to the dining area.



- While detainees are consuming their meal, dining area doors will be closed and locked.
- An Officer will have visual contact on detainees at all times. At no time will an Officer be posted inside the dining area during the meal service.

12.5 All detainees will be provided with clean mat/sleeping pad and a blanket. All contaminated mattresses, linens, and cells are cleaned by Job Options to ensure all appropriate standard safety procedures are adhered to when dealing with hazardous materials.

12.6 All detainees will be provided with a toothbrush after each meal (annotated in SIGMA).

12.7 Any detainee in custody over 48 hours will be afforded the opportunity to shower. They will be offered subsequent showers every 48 hours after that. Showers will be annotated in SIGMA.

# 13 Minors

13.1 At all times, CBP policy regarding juveniles, whether accompanied or UAC, will be followed within AEU.

13.2 At all stages of CBP processing, officers shall take precautions to ensure that all juvenile's rights are protected and that he or she is treated with respect and concern. Any detention at the POE must be in accordance with the Flores v. Reno settlement.

13.3 Minors will have unlimited access to restrooms, drinking water, food, and medical assistance if needed.

13.4 Minors will be allowed reasonable access to their parents or legal guardians if the supervisor believes it will be constructive. However, parent(s) or legal guardian(s) will not be allowed to inflict corporal punishment upon juveniles while in the custody of CBP.

13.5 Officers shall not release a minor to any person or agency that they have reason to believe may harm or neglect the minor or fail to present the child for any proceedings. Officers shall ensure that the person who accepts custody of the child completes the Custodial Sponsor Release Agreement (Attached) before relinquishing custody. For those family member specifically cited in the Flores v Reno Settlement, no form is necessary.

13.6 In situations where a female is nursing an infant, the infant will not be removed from the care of the mother (unless she poses a danger to the child). If a mother and infant must be separated for safety purposes, and the child is a U.S. citizen, a social service worker (CPS) may need to be contacted to take custody of the child. Alien children who must be

separated from the family unit become unaccompanied alien minors and will be treated in accordance with the Flores v Reno Settlement

### 13.7 UAC

13.7.1 All UAC(s) will be processed expeditiously and will be given priority over all other aliens in custody.

13.7.2 The ORR HHS has assumed the authority for decisions related to the care and placement of unaccompanied alien children detained in long-term federal custody. AEU shall coordinate the placement of unaccompanied alien children with ICE/ERO. Currently, AEU utilizes the UAC Portal to coordinate placement of the juvenile in a facility designated by ORR.

13.7.3 The contact (or attempted contact) of consular office of the UAC's country of citizenship is a mandatory processing requirement (unless it is a credible fear claim). AEU will make any necessary notifications to the Consular Office. If a Consular Officer refuses to interview the UAC, if the UAC refuses to speak to the Consulate Office, or if the Consulate cannot be contacted, annotate name, date and time of consulate notification in I-213.

13.7.4 UAC(s) must be processed as NTA, (NEVER ER).

13.7.4.1 NTA- (Not signed by Agent or Supervisor).

13.7.4.2 NTA are served on the facility- (juveniles under 14yr do not sign NTA)

13.7.5 A UAC must be given I-770 Notice of rights and request for Disposition. I-770 must be signed by all UAC over 14 years of age. If the UAC is under 14 years of age, or unable to understand his or her rights, the processing officer or agent must be sure to read and explain all documents in a language that the UAC can understand.

13.7.6 CBP-93 Unaccompanied Alien Child Addendum must accompany all UAC files.

13.7.7 A UAC will be provided 30 minutes of physical activity every 48 hours. This will be annotated in SIGMA.

13.7.8 UAC(s) will be allowed phone calls to contact their parent or guardian as requested.

## 14 Transportation Procedures

14.1 The Transporting CBPO's shall take reasonable steps to positively identify the detainee prior to transport. Identification may be determined through photograph identification,

driver's license or state identification card, booking photograph or other positive means maintained at the place of detention.

14.2 CBP Officer will maintain control over the detainee at all times. Officer(s) shall practice good officer safety and will be responsible for the safety of the detainee in their custody. At no time will a detainee be left unattended.

14.3 CBP Officer will conduct a pat down search of the detainee in accordance with the CBP Personal Search Policy prior to transport.

14.4 Prior to transport, notification will be made to Sector indicating who is being transported (males/females/juveniles), time and mileage of start and end of transport.

14.5 All personal property should be verified with the detainee, placed in the proper container and sealed.

14.6 CBP Officer will ensure that all detainees are properly restrained in accordance with policy and placed in seatbelts and if necessary, leg restraints and/or other restraints (e.g. belly chains) will be used when a detainee has a record showing violent behavior.

14.7 Emergency Situations during Transport: During any transport emergency, transporting officer will notify SECTOR (C-100) and the duty SCBPO as soon as feasible.



