MAYER BROWN LLP
Matthew H. Marmolejo (CA Bar No. 242964)
*mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
Ori Lev (DC Bar No. 452565)
(*pro hac vice*)
*olev@mayerbrown.com*
Stephen M. Medlock (VA Bar No. 78819)
(*pro hac vice*)
*smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: +1.202.263.3000
Facsimile: +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
Melissa Crow (DC Bar No. 453487)
(*pro hac vice*)
*melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

Al Otro Lado, Inc., *et al.*,

Plaintiffs,

v.

Chad F. Wolf,[1] *et al.*,

Defendants.

Case No.: 17-cv-02366-BAS-KSC

**EXHIBIT 16 IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

[1] Acting Secretary Wolf is automatically substituted for former Acting Secretary McAleenan pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
*bazmy@ccrjustice.org*
Ghita Schwarz (NY Bar No. 3030087) (*pro hac vice*)
*gschwarz@ccrjustice.org*
Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
*aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
*sarah.rich@splcenter.org*
Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
*rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
*kwalters@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

Washington, DC 20528 / www.oig.dhs.gov

March 8, 2019

MEMORANDUM FOR: File OSC Inquiry Metering Tecate POE

THROUGH: [REDACTED]
Director
Special Reviews Group

FROM: [REDACTED]
Investigative Counsel

[REDACTED]
Senior Program Analyst

SUBJECT: *Memorandum of Interview with [REDACTED] (Follow-up), Assistant Port Director, Port of Otay Mesa, CA*

On February 15, 2019, [REDACTED] Investigative Counsel, Special Reviews Group (SRG), Office of Inspector General (OIG), and [REDACTED] Senior Program Analyst, SRG, OIG conducted a teleconference with [REDACTED] Assistant Port Director (APD), Port of Otay Mesa, Office of Field Operations (OFO), U.S. Customs and Border Protection (CBP) regarding allegations made to the U.S. Office of Special Counsel (OSC) that employees at the Port of Tecate, California, engage in conduct that may constitute a violation of law, rule, or regulation. OSC referred this matter to the OIG for investigation. We followed up with [REDACTED] to discuss relevant email exchanges that the OIG had obtained involving him. This memorandum is not a verbatim transcript of the interview and includes the thoughts and impressions of OIG personnel.

[Note: At the start of the meeting, the OIG emailed [REDACTED] a password protected PDF document containing a set of three email exchanges for discussion during the interview. For reference, these emails are included as an attachment to this memorandum.]

[REDACTED] provided the following information in substance:



Email 1

The OIG provided time to read the first email exchange [page 1-2 of attached email packet]. When asked to explain role, said that was a GS-14 manager at the San Diego Field Office. The San Diego Field Office oversees the six ports of entry (POEs) in the region. The Director of the San Diego Field Officer has several Assistant Directors. was working for the Assistant Director for Border Security at the San Diego Field Office.

When asked whether he recalled this email exchange said, "yes." The OIG asked why Supervisory CBP Officer (SCBPO) had asked to call . explained that had not called him directly, and SCBPO had taken a message for him.

The OIG asked why the San Diego Field Office was asking about Tecate's process for handling asylum claims, and seeking to confirm that Tecate was not returning anyone to Mexico. said that there was a time when media was asking the San Diego Field Office Director, questions in this regard. had provided guidance to the Port Directors during a conference call that he wanted them to communicate to their personnel not to turn back any credible fear asylum claims.

The OIG asked about the first bullet in the email, which states that the Port of Tecate does not return anyone expressing fear of returning back to Mexico. The OIG asked whether recalled that being the message given to personnel at the Port of Tecate. said, "yes," this was the message given to personnel at the port.

The OIG asked about the second bullet, which discusses an instance when an alien was returned to Mexico because he had a waitlist number from Tijuana. said that he could not recall the details about this incident, such as where this individual was from.

The OIG mentioned seeing a shift log from February 2017, which indicated that a man with a Russian passport entered pedestrian primary requesting asylum and was told to go to San Ysidro. did not know if this could have been the same instance described in the second bullet of the email.

The OIG referred to the top of the email where it says, "currently we are not returning anyone back," and asked whether at some other time there had been a different policy. said, "no." However, there had been

Highly Confidential/Attorneys' Eyes Only



instances several years before of individuals from the Mexican state of Michoacán who were returned to Mexico. [REDACTED] said this was explained in the third bullet of the email and he noted he had raised this issue during the OIG's previous interview of him.

Email 2

The OIG provided [REDACTED] time to read the second email [page 4 of attached email packet]. The OIG referred [REDACTED] to the last sentence, which said that, "Port Director [REDACTED] will be sending out an email to the troops addressing this issue," and asked [REDACTED] if he recalled sending out an email related to this matter. [REDACTED] said that he recalled this incident, but he was unable to find the email he had sent. [Note: During our February 8, 2019 interview, the OIG had asked [REDACTED] to look for any guidance he had sent out in response to incidents when an asylum seeker was redirected.]

Seeing that there were multiple emails over a period of time on this matter, the OIG asked whether there was concern that supervisors might not have been following instruction for handling asylum seekers. [REDACTED] confirmed that the recipients of this email were the supervisors at the Port of Tecate. [REDACTED] said that he did not remember the particulars of this incident. [REDACTED] said that it appears that in this instance a line Officer took action without properly clearing it with a supervisor. [REDACTED] said this was a reminder that Officers must consult their supervisor prior to taking any such action.

The OIG asked whether [REDACTED] or Assistant Port Director [REDACTED] had a concern about whether supervisors were properly communicating the directive not to return asylum seekers to Mexico. [REDACTED] said that their concern was that Officers might be acting on their own without consulting their supervisors.

Email 3

The OIG provided [REDACTED] time to read the third email exchange [page 7-9 of attached email packet].

The OIG asked [REDACTED] whether he remembered this email exchange. [REDACTED] said that he did. The OIG referred [REDACTED] to the bottom of page 6 and top of page 7, where [REDACTED] wrote about his concern that accepting asylum seekers at the Port of Tecate and transferring them to the Port of San Ysidro could become a way for asylum seekers to avoid long waits at the Port of San Ysidro. [REDACTED] said that the Port of Tecate is small. There are approximately



15 Officers staffing the port at any one time. There are two pedestrian lanes, and two vehicle passenger lanes. The port does not have asylum expertise, so they have to transfer individuals seeking asylum to the Port of San Ysidro. If asylum seekers started coming in through the Port of Tecate to avoid long waits at the Port of San Ysidro, it would be a problem because of the lack of resources, knowledge, and the time it takes to transport individuals to the Port of San Ysidro. Transporting individuals from the Port of Tecate to the Port of San Ysidro requires a several hour drive along winding roads. In this email, [redacted] said he was stating his concern and conveying that they might have to offer voluntary withdrawal as an alternative if the port started getting more asylum cases. [redacted] said that withdrawal of an individual's request for asylum at Tecate would have to be voluntary. The OIG asked whether the port had ever had to offer withdrawals. [redacted] said, "no," it did not become necessary. [redacted] believed that part of the reason was that on the Mexican side of the border, the city of Tecate was directing individuals toward larger ports. [redacted] said that in Mexico the city of Tecate's population is about 80-100,000 people, and the outskirts nearly join with Tijuana.

The OIG referred [redacted] to the top of this email exchange on page 6, and asked what was meant by, "sending anyone claiming credible fear down the hill." [redacted] said that this referred to accepting asylum seekers at the Port of Tecate and transferring them to the Port of San Ysidro. The OIG asked whether in this case the Port of Tecate accepted the Eritreans and drove them to the Port of San Ysidro. [redacted] said that was correct. The OIG asked whether there were other instances when individuals seeking asylum were sent "down the hill?" [redacted] said, "no," he did not remember seeing any other instances after this one while at the Port of Tecate. [Note: [redacted] left the Port of Tecate in February 2018.] He could not remember if he and APD [redacted] had a conversation after [redacted] posed the question in his email.

The OIG asked whether anything else like this came up between December and February, when [redacted] transferred to the Port of Otay Mesa. [redacted] again said no and that he and his APDs were frequently communicating that the port had to accept all individuals seeking asylum. When asked whether he had ever heard that this guidance was not being followed, [redacted] said not at that time.

[redacted] said that Officers were concerned that the Port of Tecate did not have the staffing to handle an influx of asylum seekers, and the port could be quickly overwhelmed. The OIG asked whether Officers and supervisors

Highly Confidential/Attorneys' Eyes Only



might have sought to address their concerns by redirecting asylum seekers. [REDACTED] said, "no," he had not heard that this happened. The OIG asked whether it was possible for Officers and supervisors to do this without [REDACTED] knowing. [REDACTED] said, "yes," it was possible and that was why they were doing so much messaging. Officers should not be able to return anyone seeking asylum to Mexico without their supervisor's approval. During the night shift, fist line supervisors would be the Watch Commander. The Port Director and APD are not on duty.

Attachment

[PDF containing the three email exchanges discussed during this interview.]

Highly Confidential/Attorneys' Eyes Only

**From:** [redacted]
**To:**
**Subject:** FW: CF Applicants
**Date:** Wednesday, May 17, 2017 6:44:55 PM
**Attachments:** FW Credible Fear - Processing Expedited Removal Cases.msg

---

FYI

The Field Office ([redacted] reached out yesterday to confirm that currently we are not returning anyone back.

HQ sent an inquiry and they wanted to confirm again :). Below is the note I sent [redacted] with the attachment.

[redacted]

**Port Director**
**OFO Chaplain**
**Customs & Border Protection**
**Tecate Port of Entry**
**Tecate, California**
[redacted] **Office**
**Fax**

---

**From:** [redacted]
**Sent:** Tuesday, May 16, 2017 4:21 PM
**To:** [redacted]
**Subject:** CF Applicants

Hello [redacted]

SCBPO [redacted] asked me to give you a call regarding our processing of Credible Fear applicants, I left you a voice mail and thought I would follow up with attached instructions that our Supervisors have been given.
Although I must say that we get very few CF applicants here due to the fact that the local government officials in Tecate, Mexico discourages non-locals coming to their city.

- Our guidance to our supervisors is that we do not return anybody that expresses fear in returning back to Mexico, we will process them and transport them to San Ysidro.
- Having said that, I did get briefed, (can't recall the date but it has been some time ago) that we had an occurrence where a traveler was advised to return to Tijuana as he had already been given a placement number there, (only one occurrence that I know of).
- About 3 years ago, we had an influx of people from Michoacan all carrying the same letter from a city representative indicating that there was a high crime rate in that city. At that time we referred them to the U.S. Consulate so that they could apply for a visa as they were not claiming Political Asylum or Credible Fear.

Hope this helps, I am leaving the office now but can be reached via cell phone if you should

need additional information, 

Thank you,

**Port Director**
**OFO Chaplain**
**Customs & Border Protection**
**Tecate Port of Entry**
**Tecate, California**
                    **Office**
                    **Fax**

BLANK PAGE

Highly Confidential/Attorneys' Eyes Only

AOL-DEF-00210394

**From:** [redacted]
**To:**

**Subject:** Asylum/Credible Fear
**Date:** Saturday, August 26, 2017 1:55:55 AM

---

To all,

Today one of our officers decided to take it upon himself to send a Guatemalan family seeking credible fear to the San Ysidro port of entry to be processed. The family did what it was told and reported to San Ysidro. During the interview process they told the SYS officers they were sent there by an officer from the Tecate Port of Entry. As you can imagine that did not go over well with their management. I would like to remind you all that we do not send any credible fear or asylum cases to another port for processing. I find it concerning that an officer feels he can make this kind of decision without consulting a supervisor. We need to remind officers to consult supervisors prior to making decisions that can have a negative impact on the port. I suggest you establish a good line of communication with your team and tell them what you expect them to notify you of. Port Director [redacted] will be sending out an email to the troops addressing this issue.

Thank you,
[redacted]
**Asst. Port Director**
**Tecate Port of Entry**
**Office of Field Operations**
[redacted]

BLANK PAGE

Highly Confidential/Attorneys' Eyes Only AOL-DEF-00210396

**From:** [redacted]
**To:**
**Subject:** RE: Supreme Court Allows Full Implementation of Presidential Proclamation
**Date:** Friday, December 22, 2017 2:50:26 PM

---

Sir,

**DP**

[redacted]

---

**From:** [redacted]
**Sent:** Friday, December 22, 2017 11:43 AM
**To:** [redacted]
**Subject:** RE: Supreme Court Allows Full Implementation of Presidential Proclamation

Looks like they are not subject to the executive order then.

Will SYS still take them since they are not Somalis?

It will not be a big issue then if in the future we allow them to withdrawal their application and have them go to San Ysidro on their own.

Eritrea is not a country in the Executive Order.

Thank you,
[redacted]

---

**From:** [redacted]
**Sent:** Friday, December 22, 2017 11:15:35 AM
**To:** [redacted]
**Subject:** RE: Supreme Court Allows Full Implementation of Presidential Proclamation

FYI- The subjects are form ERITREA

---

**From** [redacted]
**Sent:** Friday, December 22, 2017 11:15 AM
**To:** [redacted]
**Cc:** [redacted]
**Subject:** RE: Supreme Court Allows Full Implementation of Presidential Proclamation

[redacted],

We have been advised by WC [redacted] that San Ysidro is able to accommodate these ten

Somali's. Due to lack of resources at Tecate we will in turn be turning them over to AEU after personal searches and logging them in.

Our hope is that this occurrence is isolated and they don't start using us as a stepping stone to get to San Ysidro and not having to wait in the longer line at that location. DP
DP

I have asked APD [redacted] to ensure Field Office Bullets are prepared for our role.

Thank you,

[redacted]

**Port Director**
**OFO Chaplain**
**Customs & Border Protection**
**Tecate Port of Entry**
**Tecate, California**

**From:** [redacted]
**Sent:** Friday, December 22, 2017 10:41 AM
**To** [redacted]
< [redacted]
**Cc:** [redacted]
[redacted];
**Subject:** RE: Supreme Court Allows Full Implementation of Presidential Proclamation

Thanks [redacted].

[redacted]
Deputy Director Field Operations
San Diego Field Office

**From:** [redacted]
**Sent:** Friday, December 22, 2017 10:38 AM
**To:** [redacted]
< [redacted] >
**Cc:** [redacted]

**Subject:** FW: Supreme Court Allows Full Implementation of Presidential Proclamation

[redacted]

We have ten Somali nationals that are applying for entry (Political Asylum) at the Port of Tecate. This is the first time we get them at our door step. We are coordinating with San Ysidro the processing of them as we will have to transport them there.

Bullets and more info will follow once we coordinate with AEU at San Ysidro.

Thank you,

[redacted]

**Port Director**
**OFO Chaplain**
**Customs & Border Protection**
**Tecate Port of Entry**
**Tecate, California**
[redacted] **Office**
**Fax**

---

**From:** [redacted]
**Sent:** Thursday, December 07, 2017 5:19 PM
**To:** [redacted]
**Cc** [redacted]
**Subject:** FW: Supreme Court Allows Full Implementation of Presidential Proclamation

Port Directors,

The Supreme Court has issued Orders which permits the Presidential Proclamation of Enhanced Vetting to go into full effect for certain nationals of **Chad, Iran, Libya, North Korea, Somalia, Syria, Venezuela and Yemen** on **December 8, 2017**. This guidance supersedes all previously issued guidance on this Proclamation. This should have a limited operational impact at ports of entry as The Department of State will, in most cases, issue a wavier as appropriate.

This updated guidance is contained in the attached muster, which should be disseminated immediately. If you encounter a waiver request related to the travel restrictions Proclamation, please contact DFO [redacted] ADFO [redacted] or myself.

Thank you,

[REDACTED]
Deputy Director Field Operations
San Diego Field Office
Phone: [REDACTED]
Cell: [REDACTED]