BRIAN M. BOYNTON
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | Hon. Cynthia A. Bashant |
| v. | **DEFENDANTS' MEMORANDUM REGARDING SUMMARY JUDGMENT REMEDY** |
| ALEJANDRO MAYORKAS, Secretary of Homeland Security, *et al.*, in their official capacities, | |
| *Defendants*. | |

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................ ii

INTRODUCTION ...........................................................................1

ARGUMENT ..................................................................................2

I.    The INA Prohibits Classwide Injunctive Relief. .......................................2

II.   Even if Permissible, This Court Should Not Issue Injunctive Relief. ...........................................................................6

    A.    A Declaratory Judgment and Vacatur of Defendants' Queue Management Guidance Would Provide Complete Relief. ...........................................................................6

    B.    Plaintiffs Are Not Entitled to a Permanent Injunction. ...................8

III.  The Court Should Not Issue Any Order That Interferes With Defendants' Implementation of the CDC's Title 42 Authority at the Border. ........................................................18

CONCLUSION ..............................................................................20

# TABLE OF AUTHORITIES

## Federal Cases

*Al Otro Lado v. McAleenan*,
    394 F. Supp. 3d 1168 (S.D. Cal. 2019) ............................................. 1, 5, 7, 10

*Al Otro Lado v. Nielsen*,
    327 F. Supp. 3d 1284 (S.D. Cal. 2018) ...........................................3

*Alli v. Decker*,
    650 F.3d 1007 (3d Cir. 2011) ...........................................5

*Cancino Castellar v. Mayorkas*,
    No. 17-cv-491, 2021 WL 4081559 (S.D. Cal. Sept. 8, 2021) ............ 3, 4, 5, 6

*DHS v. Thuraissigiam*,
    140 S. Ct. 1959 (2020).................................................. 13, 14

*Drakes Bay Oyster Co. v. Jewell*,
    747 F.3d 1073 (9th Cir. 2014).........................................14

*Firebaugh Canal Co. v. United States*,
    203 F.3d 568 (9th Cir. 2000) ...........................................12

*FTC v. Figgie Intern., Inc.*,
    994 F.2d 595 (9th Cir. 1993) ...........................................15

*Gardner v. U.S. Bureau of Land Mgmt.*,
    638 F.3d 1217 (9th Cir. 2011) ...........................................12

*Garland v. Ming Dai*,
    141 S. Ct. 1669 (2021)................................................... 13, 14

*Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers*,
    415 U.S. 423 (1974)...................................................16

*Hamama v. Adducci*,
    912 F.3d 869 (6th Cir. 2018) ...........................................4

*Hartford-Empire Co. v. United States*,
    323 U.S. 386 (1945)...................................................9

*Hernandez v. Mesa*,
    140 S. Ct. 735 (2020).........................................................................................7

*Huisha-Huisha v. Mayorkas*,
    2021 WL 4206688 (D.D.C. Sept. 16, 2021)...............................................19

*INS v. Cardoza-Fonseca*,
    480 U.S. 421 (1987).........................................................................................18

*J.B.B.C. v. Wolf*,
    No. 20-cv-1509, 2020 WL 6041870 (D.D.C. June 26, 2020).......................19

*Jennings v. Rodriguez*,
    138 S. Ct. 830 (2018)........................................................................................3

*Johnson v. United States*,
    No. 18-cv-2178, 2021 WL 256811 (S.D. Cal. Jan. 25, 2021).......................11

*Los Angeles Haven Hospice, Inc. v. Sebelius*,
    638 F.3d 644 (9th Cir. 2011) ...........................................................................8

*Melendres v. Arpaio*,
    784 F.3d 1254 (9th Cir. 2015) ................................................................ 9, 20

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010).............................................................................. 6, 9, 14

*Mutuelles Unies v. Kroll & Linstrom*,
    957 F.2d 707 (9th Cir. 1992) .........................................................................15

*Nat'l Wildlife Fed'n v. Espy*,
    45 F.3d 1337 (9th Cir. 1995) ................................................................. 12, 14

*Nielsen v. Preap*,
    139 S. Ct. 954 (2019).........................................................................................4

*Nken v. Holder*,
    556 U.S. 418 (2009).........................................................................................5

*Norton v. S. Utah Wilderness Alliance*,
    542 U.S. 55 (2004).................................................................................. 12, 13

*Orange Cty. v. Hongkong & Shanghai Banking Corp.*,
    52 F.3d 821 (9th Cir. 1995) ................................................................5

*Orantes-Hernandez v. Thornburgh*,
    919 F.2d 549 (9th Cir. 1990) ................................................ 8, 9, 20

*P.J.E.S. v. Wolf*,
    502 F. Supp. 3d 492 (D.D.C. 2020) ..................................................19

*Powell v. McCormack*,
    395 U.S. 486 (1969) ............................................................... 7, 11

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) .........................................................................3, 4

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ...........................................................6

*Sanchez-Espinoza v. Reagan*,
    770 F.2d 202 (D.C. Cir. 1985) ...........................................................7

*Schmidt v. Lessard*,
    414 U.S. 473 (1974) ...........................................................................16

*Scott v. Schedler*,
    826 F.3d 207 (5th Cir. 2016) ............................................................17

*Se. Alaska Conservation Council v. U.S. Army Corps of Engineers*,
    486 F.3d 638 (9th Cir. 2007) .............................................................8

*Thomas v. County of Los Angeles*,
    978 F.2d 504 (9th Cir. 1992) ............................................................17

*United States ex rel. Knauff v. Shaughnessy*,
    338 U.S. 537 (1950) ...........................................................................13

*Vazquez Perez v. Decker*,
    No. 18-cv-10683, 2019 WL 4784950 (S.D.N.Y. Sept. 30, 2019)...................4

*Vermont Yankee Nuclear Power Corp. v. NRDC, Inc.*,
    435 U.S. 519 (1978) ...........................................................................13

iv

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982)........................................................................14

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008)............................................................................6

*Zepeda v. INS*,
    753 F.2d 719 (9th Cir. 1983) .........................................................20

**Federal Statutes**

5 U.S.C. § 706(1) ....................................................................... 1, 17

5 U.S.C. § 706(2) ....................................................................... 8, 17

8 U.S.C. § 1158(a)(1)........................................................................1

8 U.S.C. § 1225(b)(1)(A)(ii) ...........................................................10

8 U.S.C. § 1229a ................................................................... 10, 12

8 U.S.C. § 1252(a)(2)(A) ..................................................................6

8 U.S.C. § 1252(e) ...........................................................................6

8 U.S.C. § 1252(f)(1) ....................................................................2, 3

28 U.S.C § 2201(a) ..........................................................................7

42 U.S.C. § 265 ..............................................................................18

**Federal Rules**

Fed. R. Civ. P. 65(d)(1) ...................................................... 9, 16, 17

Fed. R. Evid. 804(b)(5) ..................................................................15

Fed. R. Evid. 807(a) .......................................................................15

**Administrative Materials**

*Matter of E-R-M- & L-R-M-*,
    25 I. & N. Dec. 520 (BIA 2011) ....................................................10

Public Health Reassessment and Order Suspending the Right To Introduce
     Certain Persons From Countries Where a Quarantinable
     Communicable Disease Exists,
     86 Fed. Reg. 42,828 (Aug. 5, 2021) ..................................................19

**<u>Other Authorities</u>**

Black's Law Dictionary (6th ed. 1990) ........................................5

CBP, "Border Wait Times," https://bwt.cbp.gov/ ...................................11

1

**INTRODUCTION**

2      Pursuant to this Court's Order Partially Granting and Partially Denying the

3  Parties' Cross-Motions for Summary Judgment (ECF No. 742) (MSJ Order), De-

4  fendants respectfully submit this brief addressing: (1) the appropriate remedy in this

5  action in light of this Court's § 706(1) holding; and (2) the effect of 42 U.S.C. § 265

6  on the implementation of any remedy in this action. *See* MSJ Order 45.

7      This Court granted summary judgment for the Plaintiffs on their Administra-

8  tive Procedure Act (APA) and procedural due process claims on the ground that

9  8 U.S.C. §§ 1158(a)(1) and 1225 "appl[y] to migrants who are 'in the process of

10  arriving'" in the United States at Class A ports of entry [POEs] along the U.S.-Mex-

11  ico border, including "'aliens who have not yet come into the United States, but who

12  are attempting to do so' and may still be physically outside the international bound-

13  ary line at a POE." MSJ Order 19 (quoting *Al Otro Lado v. McAleenan*, 394 F. Supp.

14  3d 1168, 1205 (S.D. Cal. 2019)). The Court reasoned that, absent express statutory

15  authority, U.S. Customs and Border Protection (CBP) cannot defer its obligations to

16  inspect and refer asylum seekers under Sections 1225(a)(3) and 1225(b)(1)(A)(ii) by

17  "turning back asylum seekers at POEs without inspecting and referring them" when

18  they first arrive, and that such action thus "unlawfully withholds Defendants' statu-

19  tory duties" in violation of the APA, 5 U.S.C. § 706(1). *Id.* at 33–34.

20      Defendants submit that the Court may issue a declaratory judgment setting

21  forth its interpretation of the proper scope of Sections 1158 and 1225,[1] but manda-

22  tory injunctive relief is not permitted or warranted in this case. Classwide injunctive

23  relief is prohibited by the Immigration and Nationality Act (INA), at 8 U.S.C.

24

25  _____

26  [1] Defendants argue that this is the proper remedy based on the Court's reasoning and
findings as applied to Plaintiffs' claims, but do not concede that any relief is appro-

27  priate and respectfully maintain that DHS's and CBP's queue management practices
do not result in an unlawful withholding of mandatory agency action and do not

28  deprive Class Members of procedural due process.

§ 1252(f)(1), and is not warranted by the traditional requirements for injunctive relief. Further, the vague and overbroad injunctions that Plaintiffs request exceed the proper scope of relief for their Section 706(1) claim by seeking to mandate actions that are not ministerial duties expressly required by the statute and that would remove the inherent discretion in implementing the statutory duties. Plaintiffs' request also fails to satisfy the requirement of Rule 65(d) that orders granting injunctive relief must state their terms specifically. Their requested declaratory relief is similarly overbroad and vague and should at a minimum be narrowed.[2] Finally, any relief this Court grants should allow the government to continue to prevent or defer the entry or processing of individuals where permitted by other lawful authority. Enjoining such actions would not be justified in light of the Plaintiffs' claims and the facts and legal issues presented in this case.

## ARGUMENT

### I.    The INA Prohibits Classwide Injunctive Relief.

Plaintiffs primarily seek "a permanent injunction prohibiting all forms of turnbacks and requiring Defendants to inspect asylum seekers as they arrive at Class A POEs on the U.S.-Mexico border." Mem. in Support of Pls.' Mot. for Summ. J. 3 (ECF No. 535-1) (Pl. MSJ). They also seek an order "requiring Defendants to implement procedures to provide effective oversight and accountability in the inspection and processing of individuals who present themselves at POEs along the U.S.-Mexico border for the purpose of seeking asylum," Second Am. Compl. ¶ 304(g) (ECF No. 189) (SAC). Additionally, Plaintiffs likely will ask the Court to convert

---

[2] Defendants' brief is based on the relief Plaintiffs requested in their summary judgment briefing and complaint. In their current brief on remedy, filed this same date, Plaintiffs now make numerous specific requests for monitoring, reporting, notice, and other specific measures that were not addressed in the prior briefing. *Compare* Pl. Supp. Remedy Br. 12–20 (ECF No. 768) and Proposed Order, *with* Def. Ex. 1. Defendants thus have not had an opportunity to respond to these specific requests, and respectfully request the opportunity to respond before the Court orders such measures.

its preliminary injunctive orders to permanent injunctions. *See* Order Granting Pls.' PI Mot. (ECF No. 330); Order Granting Pls.' Mot. for PI Clarification (ECF No. 605). The Court may not, and should not, issue these injunctions.

The INA, at 8 U.S.C. § 1252(f)(1), prohibits any classwide injunctive relief interfering with the operation of Section 1225 and the duties it imposes with respect to applicants for admission. Section 1252(f)(1) states: "Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of" 8 U.S.C. §§ 1221–1232 (including Section 1225[3]), "other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." 8 U.S.C. § 1252(f)(1). "Section 1252(f)(1) thus prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221–123[2]." *Jennings v. Rodriguez*, 138 S. Ct. 830, 851 (2018); *see also Reno v. Am.-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 481–82 (1999) (explaining Section 1252(f)(1) "is nothing more or less than a limit on injunctive relief"). The prohibition on classwide injunctive relief applies when "individuals [are] proceeding as a class." *Cancino Castellar v. Mayorkas*, No. 17-cv-491, 2021 WL 4081559, at *8 & n.4 (S.D. Cal. Sept. 8, 2021) (citing *Jennings*, 138 S. Ct. at 851).

Section 1252(f)(1) forecloses Plaintiffs' requested injunction "prohibiting all forms of turnbacks and requiring Defendants to inspect asylum seekers as they arrive at Class A POEs on the U.S.-Mexico border," because that order would "enjoin or

---

[3] This Court also appeared to suggest that Defendants failed to discharge mandatory obligations codified in Section 1158(a)(1). *See* MSJ Order 34. However, Plaintiffs did not base their Section 706(1) claim on Section 1158. *See* SAC ¶¶ 265–69. Moreover, this Court previously and correctly held it "likely could not compel relief" under Section 1158(a)(1) because that provision "does not identify any specific obligations placed on an immigration officer and, therefore, may not serve as the basis for Section 706(1) relief." *Al Otro Lado v. Nielsen*, 327 F. Supp. 3d 1284, 1310 n.12 (S.D. Cal. 2018). Nothing in the MSJ Order alters the Court's prior analysis.

DEFS.' SUPPL. BRIEF RE: REMEDY
Case No. 3:17-cv-02366-BAS-KSC

restrain" the operation of Section 1225(a)(3) by requiring the government to inspect noncitizens for admissibility before they enter the United States. In that way, it would "create[] out of thin air a requirement . . . that does not exist in the statute." *Hamama v. Adducci*, 912 F.3d 869, 879–80 (6th Cir. 2018); *Cancino Castellar*, 2021 WL 4081559, at *7 (stating an injunction "imposing [a requirement] where the statute is *silent* would displace [Congress's] judgment in a way that would enjoin or restrain the method or manner of [the statute's] functioning" (quoting *Vazquez Perez v. Decker*, No. 18-cv-10683, 2019 WL 4784950, at *6 (S.D.N.Y. Sept. 30, 2019))).

Plaintiffs may argue that this requested injunction does not "enjoin or restrain" the operation of Section 1225(a)(3) because it aims to enforce the operation of Section 1225 as this Court interpreted it (that is, to apply to asylum seekers outside the United States). But that reasoning is "circular and unpersuasive." *Nielsen v. Preap*, 139 S. Ct. 954, 975 (2019) (Thomas, J., joined by Gorsuch, J., concurring in part and in the judgment). "Many claims seeking to enjoin or restrain the operation of the relevant statutes will allege that the Executive's action does not comply with the statutory grant of authority, but the text clearly bars jurisdiction to enter an injunction '[r]egardless of the nature of the action or claim.'" *Id.*; *see also Hamama*, 912 F.3d at 879 (overturning an injunction as barred by Section 1252(f)(1) and rejecting the argument that the "district court was not enjoining or restraining the statutes, but rather interpreting them to ensure they are correctly enforced"), *cert. denied*, 141 S. Ct. 188 (2020); *AADC*, 525 U.S. at 481–82. Thus, regardless of the Court's interpretation of Section 1225, Section 1252(f)(1) prohibits classwide injunctive relief enjoining Defendants from administering Section 1225 in a particular way.

Plaintiffs may also argue that an injunction "requiring Defendants to inspect asylum seekers as they arrive at Class A POEs on the U.S.-Mexico border" does not "enjoin or restrain" the operation of Section 1225 because it instead imposes affirmative obligations on the government. That argument would be misplaced, because an injunction can impose both affirmative and negative obligations. *See, e.g.*, *Nken v.*

DEFS.' SUPPL. BRIEF RE: REMEDY
Case No. 3:17-cv-02366-BAS-KSC

1  *Holder*, 556 U.S. 418, 428 (2009) (explaining that an injunction "is a means by
2  which a court tells someone what to do or not to do"); *Orange Cty. v. Hongkong &*
3  *Shanghai Banking Corp.*, 52 F.3d 821, 825 (9th Cir. 1995) (an order constitutes an
4  "injunction" when "it is (1) directed to a party, (2) enforceable by contempt, and (3)
5  designed to accord or protect some or all of the substantive relief sought . . . in more
6  than preliminary fashion" (quotation marks omitted)). Moreover, as the term "re-
7  strain" encompasses negative obligations, *see Restraint*, Black's Law Dictionary
8  (6th ed. 1990), and the statute uses the disjunctive "or," *see Alli v. Decker*, 650 F.3d
9  1007, 1011 (3d Cir. 2011), the term "enjoin" must refer to something besides a pro-
10  hibitory injunction for it to have any effect, *see Al Otro Lado*, 394 F. Supp. 3d at
11  1198 ("A court interprets a statute 'to give effect, if possible, to every clause and
12  word of a statute.'"). Thus, "enjoin" must refer to orders imposing affirmative obli-
13  gations. *See Cancino Castellar*, 2021 WL 4081559, at *7 ("an injunction imposing
14  [a requirement] where the statute is *silent* would displace [Congress's] judgment in
15  a way that would enjoin or restrain the method or manner of [the statute's] function-
16  ing" (quotation marks omitted)).

17       Further, Section 1225 does not require the government to "implement proce-
18  dures to provide effective oversight and accountability" in the inspection and pro-
19  cessing of applicants for admission at POEs. SAC ¶ 304(g). As explained, if the
20  Court were to order such measures, it would be writing into Section 1225 require-
21  ments that do not exist. *See Cancino Castellar*, 2021 WL 4081559, at *7 ("an in-
22  junction imposing [a requirement] where the statute is *silent* would displace [Con-
23  gress's] judgment in a way that would enjoin or restrain the method or manner of
24  [the statute's] functioning" (quotation marks omitted)). It is immaterial that Plain-
25  tiffs may seek that order for relief on their procedural due process claim, since it
26  would "enjoin or restrain" the operation of Section 1225 all the same. *See id.* (ap-
27  plying the reasoning of *Vazquez Perez* and *Hamama* without distinguishing between

28

DEFS.' SUPPL. BRIEF RE: REMEDY
Case No. 3:17-cv-02366-BAS-KSC

constitutional and statutory claims).[4]

And, for the reasons previously argued, Section 1252(f)(1) prohibits converting the preliminary injunctions into permanent injunctions with regard to Class Members who are or will be placed into expedited removal or Section 1229a removal proceedings. *See* Defs.' Opp. to Pls.' Mot. for Prelim. Inj. 7–8 (ECF No. 307); Defs.' Opp. to Pls.' Mot. for Clarification of the Prelim. Inj. 22 (ECF No. 508). Sections 1252(a)(5) and (b)(9) also prohibit the Court from reviewing claims raised by (and, *a fortiori*, granting relief to) Class Members who are or will be placed in removal proceedings. Defs.' PI Opp. 9–10. Further, to the extent Plaintiffs seek relief impacting procedures implementing expedited removal or the credible-fear process, such relief is prohibited by 8 U.S.C. §§ 1252(a)(2)(A) and (e). *See Cancino Castellar*, 2021 WL 4081559, at*5–6 ("Claims subject to channeling under Section 1252(e)(3) are 'determinations under Section 1225(b) . . . and its implementation.'").

## II.    Even if Permissible, This Court Should Not Issue Injunctive Relief.

### A.    A Declaratory Judgment and Vacatur of Defendants' Queue Management Guidance Would Provide Complete Relief.

Even if classwide injunctive relief were permitted under Section 1252(f)(1), an injunction "does not follow from success on the merits as a matter of course." *Winter v. NRDC, Inc.*, 555 U.S. 7, 32 (2008). "If a less drastic remedy . . . [is] sufficient to redress [the plaintiff's] injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010). Defendants submit that a declaratory judgment stating the scope of Defendants' obligations under Sections 1158 and 1225 and an order

---

[4] Although the Ninth Circuit concluded that Section 1252(f)(1) does not prohibit classwide injunctions that "enjoin conduct alleged not to be authorized by the proper operation of" the relevant statutes, *Rodriguez v. Hayes*, 591 F.3d 1105, 1121 (9th Cir. 2010), the Supreme Court recently ordered briefing on the question "[w]hether, under 8 U.S.C. § 1252(f)(1), the courts below had jurisdiction to grant classwide injunctive relief," Order, *Garland v. Aleman Gonzalez*, No. 20-322 (U.S. Aug. 23, 2021).

DEFS.' SUPPL. BRIEF RE: REMEDY
Case No. 3:17-cv-02366-BAS-KSC

vacating Defendants' existing queue management memoranda would provide Plaintiffs with complete relief on their claim that the government failed to discharge its obligations under the INA to inspect and process Class Members. It would be sufficient for the Court to issue a declaratory judgment stating that the phrase "an alien who . . . arrives in the United States" in Sections 1158(a)(1) and Section 1225(a)(1) includes "an alien who may not yet be in the United States, but who is in the process of arriving in the United States through a [Class A] POE" on the U.S.-Mexico border when the POE is open to pedestrian traffic, *Al Otro Lado*, 394 F. Supp. 3d at 1200, as such a declaratory judgment would memorialize this Court's central holding, clearly set forth "the rights and other legal relations of" the parties, 28 U.S.C § 2201(a), and allow for final appellate resolution of the parties' central dispute. Moreover, a final declaratory judgment order would be sufficient to enforce the Court's holding because DHS and CBP officials are "presumed" to "adhere to the law as declared by the court," *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 208 n.8 (D.C. Cir. 1985) (Scalia, J.). The declaration could also be used by individual Class Members "as a predicate to further relief, including an injunction." *Powell v. McCormack*, 395 U.S. 486, 499 (1969).

A declaratory judgment would also permit the Executive a measure of flexibility to develop policies and guidance to perform its "daunting task" to "control the movement of people and goods across the border," *Hernandez v. Mesa*, 140 S. Ct. 735, 746 (2020), and address emergent circumstances at the POEs, while still complying with this Court's interpretation of the INA. In this way, it would mitigate the harms to the government and the public (*see infra* at Argument § II.B) by maintaining the Executive's flexibility to lawfully manage the flow of travel into the southwest border POEs and ensure that relief in this litigation does not improperly infringe on the government's discretion as well as its lawful implementation of other statutory authorities not addressed in this litigation.

The Court may also issue an order vacating DHS's and CBP's discrete queue

DEFS.' SUPPL. BRIEF RE: REMEDY
Case No. 3:17-cv-02366-BAS-KSC

management memoranda (filed at ECF Nos. 563-4, 563-5, and 563-7) "and remand to [DHS and CBP] to act in compliance with its statutory obligation[s]," as interpreted by this Court. *Se. Alaska Conservation Council v. U.S. Army Corps of Engineers*, 486 F.3d 638, 654 (9th Cir. 2007) (citing 5 U.S.C. § 706(2)), *rev'd and remanded on other grounds*, 557 U.S. 261 (2009). Although vacatur is a less common remedy for Section 706(1) violations, the reasoning underlying the Court's holding is typical of Section 706(2) claims, wherein a court determines whether agency action—here, metering or queue management policies relating to "turnbacks" set forth in the queue management memoranda, *see* MSJ Order 17—is "not in accordance with law" or "in excess of statutory . . . authority." Indeed, this Court recognized that in this case there is "significant overlap between § 706(1) and the contrary to law provisions in § 706(2)." MSJ Order 34 n.16. Thus, vacatur is an appropriate remedy for Plaintiffs' Section 706(1) claim. Together with a declaratory judgment stating the scope of Sections 1158 and 1225, vacatur of the queue management memoranda would afford Plaintiffs complete relief by vacating the directives underlying the borderwide conduct this Court found unlawful, while still permitting the Executive to develop different policies to implement its Congressional mandates at the border. *See Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 665 (9th Cir. 2011) ("[T]he national injunction was too broad. An order declaring the hospice cap regulation invalid [and] enjoining further enforcement against Haven Hospice . . . would have afforded the plaintiff complete relief.").

### B.    Plaintiffs Are Not Entitled to a Permanent Injunction.

A declaratory judgment plus vacatur is also the appropriate remedy because Plaintiffs' requested injunctions fail to satisfy the traditional requirements to obtain injunctive relief. Injunctive relief "must be narrowly tailored to give only the relief to which plaintiffs are entitled." *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 558 (9th Cir. 1990). Plaintiffs "must demonstrate . . . that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted,"

and "that the public interest would not be disserved by a permanent injunction." *Monsanto Co.*, 561 U.S. at 156–57 (quotation marks omitted). Further, an injunction must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). Plaintiffs' requested injunctions satisfy none of these criteria.

*First*, Plaintiffs' requested injunctions seeking to "prohibit[] all forms of turnbacks and requiring Defendants to inspect asylum seekers as they arrive at Class A POEs on the U.S.-Mexico border," Pl. MSJ 3, are far too broad. Injunctive relief "must be narrowly tailored to give only the relief to which plaintiffs are entitled," *Orantes-Hernandez*, 919 F.2d at 558, and should not aim to "enjoin all possible breaches of the law," *Hartford-Empire Co. v. United States*, 323 U.S. 386, 410 (1945) (quotation marks omitted); *see also Melendres v. Arpaio*, 784 F.3d 1254, 1265 (9th Cir. 2015) ("An injunction against state actors must directly address and relate to the constitutional violation itself and must not require more of state officials than is necessary to assure their compliance with the constitution." (quotation marks and citations omitted)). This Court "conclude[d] that turning back asylum seekers at POEs without inspecting and referring them upon their arrival" constitutes unlawful withholding of agency action required under Sections 1158 and 1225. MSJ Order 33–34. The Court defined "the 'turnbacks' at issue" as the specific practice of "placing CBP personnel at the international line" and "affirmatively turning asylum seekers away from the border when Mexican immigration officials did not control the flow." MSJ Order 17. It explained that Defendants fail to discharge their statutory obligations when they engage in this conduct instead of inspecting and processing asylum seekers "on their first arrival to the port." *Id.* at 26 n.12.

Consequently, any relief (injunctive or otherwise) must be targeted to remedying that specific violation and should not extend further, as an overbroad injunction constitutes an abuse of discretion. *See Orantes-Hernandez*, 919 F.2d at 558; *Melendres*, 784 F.3d at 1265. The Court should not prohibit "all forms of turnbacks,"

as Plaintiffs request, Pl. MSJ 3, because this Court did not determine that all of the conduct that Plaintiffs contend constitutes a "turnback"—such as the use of streamlined withdrawal procedures or the use of intake appointments, *see* Pl. MSJ 4–11—results in unlawful withholding of mandatory agency action. Instead, this Court reasoned that Defendants unlawfully withhold their statutory obligations by "turning back asylum seekers at POEs without inspecting and referring them upon their arrival." MSJ Order 33; *see also id.* at 26 n.12 (referring to asylum seekers' "first arrival to the port"). In essence, the Court held that the act of interrupting the process of arrival and "requiring [Class Members] to make their way back to the POE at least a second time to access asylum," MSJ Order 31, constitutes an unlawful withholding of mandatory agency action. To the extent Defendants may seek to implement procedures that (for example) provide for orderly intake of undocumented noncitizens arriving at POEs consistent with reasonable operational capabilities, or provide a mechanism by which undocumented noncitizens who have not yet approached a POE on the U.S.-Mexico border (and thus are not "in the process of arriving in the United States," *Al Otro Lado*, 394 F. Supp. 3d at 1200) may submit certain information to CBP in advance of their arrival to streamline their processing upon arrival, or other similar measures, *while also* discharging their obligations to "inspect[] and refer[][5] [asylum seekers] upon their [first] arrival," MSJ Order 33, such measures are not the permissible subject of injunctive relief, because they do not unlawfully interrupt a Class Member's process of arriving in the United States.

For the same reason, an injunction that is properly tailored to the Court's holding should not prohibit Defendants from employing entry controls (such as turnstiles

---

[5] Although this Court referred to a duty to "inspect[] *and refer[]*" Class Members upon their arrival, MSJ Order 33 (emphasis added), the government has discretion to process inadmissible noncitizens (including Class Members) for removal proceedings under 8 U.S.C. § 1229a, instead of referring them for credible-fear interview under 8 U.S.C. § 1225(b)(1)(A)(ii). *See Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520 (BIA 2011). Plaintiffs do not dispute this. *See* SAC ¶ 205.

DEFS.' SUPPL. BRIEF RE: REMEDY
Case No. 3:17-cv-02366-BAS-KSC

or gates, or the use of dedicated lanes based on documentation status) to control the flow of general pedestrian traffic, including as such measures apply to Class Members, because the use of entry controls does not constitute "turning [them] back" and thus is not unlawful under the Court's reasoning. Nor does the Court's holding permit an order fulfilling Plaintiffs' opaque demand that "asylum seekers be treated the same as others who approach POEs." *See* Pl. MSJ 3. The Court reasoned that a duty to inspect and refer is owed to asylum seekers when they "first arriv[e] to a port." MSJ Order 26 n.12. But that does not mandate particular treatment of asylum seekers vis-à-vis other travelers who seek to enter the POE. In any event, entry controls are common and necessary tools CBP employs for *all* traffic on the southwest border. *See, e.g.*, *Johnson v. United States*, No. 18-cv-2178, 2021 WL 256811, at *1 (S.D. Cal. Jan. 25, 2021) ("At the international border, CBP Officers process travelers in automobiles through . . . general vehicle lanes, Ready Lanes, and [SENTRI] Program Lanes."). Were the Court to prohibit Defendants from applying any entry controls to Class Members, it would be elevating them above U.S. citizens, lawful permanent residents, visa holders, and other border crossers in certain Trusted Traveler Programs, because even those individuals are subject to different processing lanes and may be required to wait to enter the POEs from Mexico. *See id.* (explaining "general vehicle lanes are usually slowest and most prone to long waits," "Ready Lanes are often faster than the general vehicle lanes and require the traveler to obtain" specific types of travel documents, and "SENTRI Program Lanes are generally fastest"); *see also* CBP, "Border Wait Times," https://bwt.cbp.gov/ (providing wait times at land POEs for commercial and passenger vehicles and pedestrians).

Plaintiffs may argue that requiring Defendants to inspect Class Members upon their arrival at a POE is the proper relief for their Section 706(1) claim because it would "compel" a required agency action with respect to the Class. But, as noted, mandamus is a "form[] of equitable relief," *Powell v. McCormack*, 395 U.S. 486, 551 (1969), and Plaintiffs still must, and do not, satisfy the equitable considerations

DEFS.' SUPPL. BRIEF RE: REMEDY
Case No. 3:17-cv-02366-BAS-KSC

discussed above, *see Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343 (9th Cir. 1995) (stating the "decision to grant or deny injunctive or declaratory relief under [the] APA is controlled by principles of equity"). Moreover, the APA does not contemplate "pervasive oversight by federal courts over the manner and pace of agency compliance with [broad] congressional directives." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 67 (2004); *see also Gardner v. U.S. Bureau of Land Mgmt.*, 638 F.3d 1217, 1221 (9th Cir. 2011). Section 706(1) "empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing *how* it shall act.'" *Norton*, 542 U.S. at 64. By contrast, a permanent classwide injunction of the type that Plaintiffs request would impermissibly, and for the foreseeable future, bind the agency's discretion as to *how* it will fulfill the statutory duties that the Court found to exist as to Class Members. *See Firebaugh Canal Co. v. United States*, 203 F.3d 568, 578 (9th Cir. 2000) ("Although the district court can compel the Department of Interior to provide drainage service as mandated by the San Luis Act, the district court cannot eliminate agency discretion as to how it satisfies the drainage requirement."). The statutory duties contained in Section 1225 that the Court determined apply here are those to inspect and refer: Section 1225(a)(3) requires that all applicants for admission "shall be inspected by immigration officers," and Section 1225(b)(1)(A)(ii) requires that, "[i]f an immigration officer determines that an alien . . . is inadmissible" on certain grounds "and the alien indicates either an intention to apply for asylum . . . or a fear of persecution, the officer shall refer the alien for a [credible fear] interview." *See* MSJ Order 28.[6] Neither provision specifies a particular manner in which those tasks shall be fulfilled, which immigration officers must perform the tasks, a particular sequence in which applicants for admission must be inspected, or precisely where such individuals must be inspected.

---

[6] Or, the government may process inadmissible noncitizens (including Class Members) for removal proceedings under 8 U.S.C. § 1229a. *See supra* note 4.

DEFS.' SUPPL. BRIEF RE: REMEDY
Case No. 3:17-cv-02366-BAS-KSC

Further, as the Court already held, the statute does not dictate *when* these inspection and referral tasks shall be fulfilled. MSJ Order 28 n.13 (explaining "[t]here is no temporal element to this statute"). Nor does either provision dictate whether and how CBP may manage travel into the POEs, including how entry controls should be utilized, how to process other travelers, or many other decisions that are within agency discretion and entitled to significant deference. *See Vermont Yankee Nuclear Power Corp. v. NRDC, Inc.*, 435 U.S. 519, 543 (1978). This deference is especially warranted in the immigration context, where "flexibility and the adaptation of the congressional policy to infinitely variable conditions constitute the essence of the program." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950).

The Court also should not, as Plaintiffs request, "[i]ssue injunctive relief requiring Defendants to implement procedures to provide effective oversight and accountability in the inspection and processing of individuals who present themselves at POEs along the U.S.-Mexico border for the purpose of seeking asylum." SAC ¶ 304(g). Such relief is not within the realm of a Section 706(1) claim, since the Court may issue an order "only to compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing *how* it shall act." *Norton*, 542 U.S. at 64 (quotation marks omitted) (emphasis in original); *see also Garland v. Ming Dai*, 141 S. Ct. 1669, 1677 (2021) ("[A] reviewing court is 'generally not free to impose' additional judge-made procedural requirements on agencies that Congress has not prescribed and the Constitution does not compel.").[7] And Plaintiffs may not obtain such relief on their procedural due process claim, because Class Members' "due process rights . . . extend as far as their rights under these provisions," MSJ Order 37 (citing *DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1977 (2020)), and they may not obtain more than what the statute permits, *see Thuraissigiam*, 140

---

[7] Such relief is also not permitted on a Section 706(2) claim, as the proper remedy is an order "hold[ing] unlawful and set[ting] aside agency action, findings, and conclusions found to be" unlawful. 5 U.S.C. § 706(2).

1    S. Ct. at 1983 ("an alien [who is apprehended shortly after crossing the border] has

2    only those rights regarding admission that Congress has provided by statute"). Thus,

3    an injunction requiring the government to implement "effective oversight proce-

4    dures" is not supported by this Court's reasoning and is otherwise prohibited by

5    longstanding Supreme Court precedent regarding administrative and immigration

6    law. *See id.*; *Ming Dai*, 141 S. Ct. at 1677.

7         ***Second***, Plaintiffs cannot demonstrate that any permanent injunction is war-

8    ranted "considering the balance of hardships between the plaintiff and defendant"

9    and the public interest. *See Monsanto Co.*, 561 U.S. at 157; *Drakes Bay Oyster Co.

10   v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (considerations of the public interest

11   and the equities merge "[w]hen the government is a party"). The "decision to grant

12   or deny injunctive or declaratory relief under [the] APA is controlled by principles

13   of equity." *Nat'l Wildlife Fed'n*, 45 F.3d at 1343. "Where plaintiff and defendant

14   present competing claims of injury, the traditional function of equity has been to

15   arrive at a nice adjustment and reconciliation between the competing claims." *Wein-

16   berger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

17        An injunction categorically "prohibiting all forms of turnbacks and requiring

18   Defendants to inspect all asylum seekers as they arrive at Class A POEs on the U.S.-

19   Mexico border," Pl. MSJ 3, or any similar order prohibiting CBP from managing its

20   intake of undocumented noncitizens into the southwest border POEs, would impose

21   substantial harms on the government and the public and would be far broader than

22   necessary to provide complete relief to the Class. CBP's Office of Field Operations

23   (OFO) authorized field personnel to use metering procedures "to appropriately allo-

24   cate resources to address the myriad [] missions being executed at a POE, to protect

25   against unsafe conditions at the POEs, and to ensure that individuals who do enter

26   the United States can be properly processed." Def. MSJ Ex. 1, Decl. of Beverly Good

27

28

14

¶ 9 (Sept. 25, 2020) (ECF No. 563-3).[8] Were OFO prohibited from managing the intake of undocumented noncitizens into the POEs, "by necessity," DHS would need to "tak[e] resources from other critical missions that are important in keeping the United States safe, secure, and prosperous," including resources allocated to its enforcement functions in the interior of the United States. *Id.* ¶ 10. Indeed, the impetus for DHS's and CBP's Prioritization-Based Queue Management memoranda was to permit "CBP personnel and resources that would otherwise be deployed to process inadmissible arriving aliens" to "focus on the detention and apprehension of narcotics and currency smugglers." Def. MSJ Ex. 3 (ECF No. 563-5); *see also* Def. MSJ Ex. 1 ¶¶ 11–14 (describing the scope of OFO's national security, counter-narcotics, outbound operations, economic security, and trade and travel mission sets that would be affected by a prohibition of metering.). An order prohibiting queue management will "inevitabl[y]" result in "lane closures and processing slow-downs in pedestrian, vehicle, and cargo traffic," thereby negatively affecting *all* cross-border travelers and local communities. *Id.* ¶ 16; *see also id.* ¶ 17 ("[W]hen the port of San Ysidro closed for five and a half hours in late 2018 in response to an emergency . . . , the

---

[8] Acting Executive Director Good passed away after the submission of Defendants' Cross-Motion for Summary Judgment. Although she is now unavailable to testify, the Court may nevertheless consider Executive Director Good's attestations because they were offered with sufficient indicia of reliability, namely, with Executive Director Good's expectation she would later be called to testify in open court. *See* Fed. R. Evid. 807(a). Further, the declaration meets the other requirements for admissibility: It was executed and signed under penalty of perjury, it is more probative than other evidence which could be reasonably obtained, it contains evidence of material facts, and Plaintiffs had notice that the declaration would be used. *See Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 713 (9th Cir. 1992); Fed. R. Evid. 807; *see also* Fed. R. Evid. 804(b)(5). Admitting Executive Director Good's declaration would also further the "paramount goal of making relevant evidence admissible." *FTC v. Figgie Intern., Inc.*, 994 F.2d 595, 609 (9th Cir. 1993) (citations omitted). However, if the Court deems the declaration insufficient, Defendants respectfully request the opportunity to submit one or more declarations from available agency personnel attesting to substantially the same facts.

San Ysidro Chamber of Commerce reported an estimated loss of $5.3 million to the region and local economy.").

Additionally, "[w]ithout any method of managing the flow into the ports of entry, they can quickly become overcrowded, especially if large groups of individuals are encountered at once." *Id.* ¶ 19. The POEs "are not designed for nor equipped to hold large numbers of individuals, nor are they designed to hold individuals for long periods of time," including because they lack "showers, beds, laundry facilities, or space for recreation." *Id.* The POEs would quickly become inundated, harming the very Class Members Plaintiffs seek to protect. *See, e.g.*, Def. MSJ 12–15 (describing unsanitary and overcrowded conditions for Class Members).

**Third**, Plaintiffs' requested injunction does not meet the requirement to "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). Rule 65 "was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). "[B]asic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Id.*; *see also Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers*, 415 U.S. 423, 444 (1974) ("[T]hose against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits").

This Rule forecloses an injunction (like those Plaintiffs request) that prohibits Defendants "from continuing to implement the Turnback Policy," SAC ¶ 304(f), because this Court did not find that a "Turnback Policy" existed as a matter of undisputed fact, it did not define a "Turnback Policy," and it did not determine that such a policy violated the APA, at Section 706(2). Rather, it found that, in 2016, 2017, and 2018, "Defendants stationed CBP personnel at the limit line to 'turn away' or 'push back' asylum seekers as they reached POEs" instead of "carry[ing] out their

discrete statutory duties to inspect and refer asylum seekers to start the asylum process once they arrived at POEs." MSJ Order, at 16–17; *see also id.* at 3–7 (finding that DHS and CBP implemented metering or queue management at POEs along the U.S.-Mexico border, but making no findings as to the existence or implementation of a "Turnback Policy" or other borderwide policies). Were the Court to prohibit Defendants "from continuing to implement the Turnback Policy" without more specificity, SAC ¶ 304(f), it would be unclear which particular "act or acts [are] restrained or required," Fed. R. Civ. P. 65(d)(1), especially since Plaintiffs contend the "Turnback Policy" and "turnbacks" consist of acts beyond the implementation of queue management. *See, e.g., Thomas v. County of Los Angeles*, 978 F.2d 504, 509 (9th Cir. 1992) (injunction requiring sheriff's department "to follow 'the Department's own stated policies and guidelines,'" without "defin[ing] what the policies are, or how they can be identified," "fails to specify the act or acts sought to be restrained as required by" Rule 65(d)); *Scott v. Schedler*, 826 F.3d 207, 212 (5th Cir. 2016) (injunction directing state agency "to maintain in force and effect [its] policies, procedures, and directives for implementation of the [statute]" fails to satisfy Rule 65(d)(1)). Similarly, Rule 65(d)(1) prohibits an order "requiring Defendants to implement procedures to provide effective oversight and accountability in the inspection and processing of individuals who present themselves at POEs along the U.S.-Mexico border for the purpose of seeking asylum," SAC ¶ 304(g), or to "treat[] [asylum seekers] the same as others who approach POEs," Pl. MSJ 3, for the additional reason that it does not identify what those procedures are.

**Fourth**, the Court should not convert its preliminary injunctive orders into permanent injunctions because the APA does not permit courts to prospectively or retrospectively enjoin the application of regulatory rules (including the transit rule), the legality of which is not at issue in the underlying litigation. Rather, APA relief is limited to an order "compel[ling]" mandatory agency action or "set[ting] aside" unlawful agency action. 5 U.S.C. § 706(1), (2). Moreover, the Court's summary-

DEFS.' SUPPL. BRIEF RE: REMEDY
Case No. 3:17-cv-02366-BAS-KSC

judgment decision addresses Section 1225's requirement to "inspect," and thus does not entitle Class Members to be subjected to any particular asylum-eligibility rules. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 444–45 (1987).

For all of these reasons, a declaratory judgment plus vacatur is the appropriate remedy in this case. Such relief would be contoured to the violation found by the Court and would allow CBP to fulfill the duties that the Court has held exist: that is, to inspect individuals upon their first arrival rather than "turning them back" to require arrival at another time.

## III. The Court Should Not Issue Any Order That Interferes With Defendants' Implementation of the CDC's Title 42 Authority at the Border.

Any injunctive or declaratory relief the Court may issue to remedy its determination that Defendants unlawfully withheld obligations mandated by Sections 1158 and 1225 should not interfere with the implementation of other authorities such as 42 U.S.C. § 265, which authorizes the temporary prohibition of the introduction of covered noncitizens into the United States.

Congress gave the Director of the Centers for Disease Control and Prevention (CDC) the authority "to prohibit, in whole or in part, the introduction of persons and property from such countries or places as he shall designate" "[w]henever [he] determines that by reason of the existence of any communicable disease in a foreign country there is serious danger of the introduction of such disease into the United States, and that this danger is so increased by the introduction of persons or property from such country that a suspension of the right to introduce such persons and property is required in the interest of the public health." 42 U.S.C. § 265. Pursuant to that authority and its implementing regulation, the CDC Director issued an order that "suspen[ds] . . . the right to introduce 'covered noncitizens' . . . into the United States along the U.S. land and adjacent coastal borders." Public Health Reassessment and Order Suspending the Right To Introduce Certain Persons From Countries Where a Quarantinable Communicable Disease Exists, 86 Fed. Reg. 42,828, 42,829

DEFS.' SUPPL. BRIEF RE: REMEDY
Case No. 3:17-cv-02366-BAS-KSC

(Aug. 5, 2021) (CDC Order). With certain exceptions, "covered noncitizens" are defined as "persons traveling from Canada or Mexico (regardless of their country of origin) who would otherwise be introduced into a congregate setting in a POE or U.S. Border Patrol station at or near the U.S. land and adjacent coastal borders," including "noncitizens who do not have proper travel documents." *Id.* at 42,829 n.1. To the extent provisions of Title 8 afford such persons outside the United States any right to enter the country, the CDC Order temporarily suspends that right pursuant to Congress's express grant of authority in Section 265.[9] DHS agreed to CDC's request to implement the CDC Order, *see id.* at 42,841, and it does so at the U.S.-Mexico border by preventing covered noncitizens from into the United States.

The Court's reasoning does not permit it to enjoin any action by CBP officers to prevent entry of Class Members at the international boundary line pursuant to the CDC Order, because such an injunction would prohibit not only the operation of the CDC Order, but also the exercise of other statutory authorities prohibiting the entry of noncitizens. As Plaintiffs never advanced any argument, facts, or claim relating

---

[9] Recent decisions of the D.C. District Court are not to the contrary. In *Huisha-Huisha* and *P.J.E.S.*, the court only focused on the use of Section 265 authority to expel noncitizens who have crossed the border, concluding that the plaintiffs were likely to succeed on their argument that "nothing in Section 265 . . . purports to authorize any *deportations*" of family units and unaccompanied children. *Huisha-Huisha v. Mayorkas*, 2021 WL 4206688, at *11 (D.D.C. Sept. 16, 2021) (emphasis added); *P.J.E.S. v. Wolf*, 502 F. Supp. 3d 492, 510 (D.D.C. 2020) (similar). Furthermore, the D.C. Circuit has granted a stay pending appeal of the preliminary injunctions in *P.J.E.S.* and *Huisha-Huisha*, concluding that the government met the stringent standards for injunctive relief, including a likelihood of success on appeal. Similarly, in *J.B.B.C. v. Wolf*, the court concluded there was "a serious question about whether [Section 265] includes the power . . . to remove or exclude persons *who are already present in the United States*," and that Section 265 "should be harmonized . . . with immigration statutes" not at issue here. *J.B.B.C. v. Wolf*, No. 20-cv-1509, 2020 WL 6041870, at *2 (D.D.C. June 26, 2020) (emphasis added). Accordingly, those decisions do not affect the government's use of Section 265 authority to suspend entry at the border.

DEFS.' SUPPL. BRIEF RE: REMEDY
Case No. 3:17-cv-02366-BAS-KSC

to the government's authority under Section 265—not even by attempting to couch the CDC Order under their label of the "Turnback Policy"—this Court never found the CDC Order unlawful, nor addressed the interaction between Section 265 and Sections 1158 and 1225. The only borderwide actions that were before the Court were actions taken pursuant to CBP's queue management practices. *See* SAC ¶¶ 40–118. As courts may only grant equitable relief aimed at remedying "the specific harms shown by plaintiffs," *Zepeda v. INS*, 753 F.2d 719, 728 n.1 (9th Cir. 1983), there would be no basis for relief relating to Defendants' implementation of the CDC Order.[10] An injunction may not target conduct that was never addressed by the parties or deemed unlawful by the Court. *See Orantes-Hernandez*, 919 F.2d at 558; *Melendres*, 784 F.3d at 1265. Consequently, even if the Court prohibits Defendants from implementing queue management procedures under their inherent authority and under Titles 6 and 8, it may not enjoin or issue other relief relating to Defendants' implementation of CDC orders issued under Section 265 at the border.

Thus, because neither Plaintiffs' allegations nor this Court's legal conclusions touch on or impair the government's authority to prevent certain undocumented noncitizens from crossing the border into the United States under the CDC Order, and because Section 265 provides an affirmative grant of authority for such conduct, any relief this Court imposes must allow Defendants to continue to implement that authority—or any future exercise of other statutory authority prohibiting the entry of noncitizens.

## **CONCLUSION**

The INA prohibits any injunctive relief, but even if not, the appropriate remedy in this case is to issue declaratory relief and vacate Defendants' queue management guidance. In all events, DHS may continue implementing the CDC Order.

---

[10] Should the Court nevertheless find the validity of the CDC Order to be relevant to the scope of the injunction, Defendants respectfully request an opportunity to brief the issue, including any other relevant threshold issues.

DEFS.' SUPPL. BRIEF RE: REMEDY
Case No. 3:17-cv-02366-BAS-KSC

DATED: October 1, 2021                    Respectfully submitted,

                                          BRIAN M. BOYNTON
                                          Acting Assistant Attorney General

                                          WILLIAM C. PEACHEY
                                          Director

                                          KATHERINE J. SHINNERS
                                          Senior Litigation Counsel

                                          */s/ Alexander J. Halaska*
                                          ALEXANDER J. HALASKA
                                          Trial Attorney
                                          United States Department of Justice
                                          Civil Division
                                          Office of Immigration Litigation
                                          District Court Section
                                          P.O. Box 868, Ben Franklin Station
                                          Washington, D.C. 20044
                                          Tel: (202) 307-8704 | Fax: (202) 305-7000
                                          alexander.j.halaska@usdoj.gov

                                          *Counsel for Defendants*

DEFS.' SUPPL. BRIEF RE: REMEDY
Case No. 3:17-cv-02366-BAS-KSC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

*Al Otro Lado v. Mayorkas*, No. 17-cv-02366-BAS-KSC (S.D. Cal.)

I certify that I served a copy of this document on the Court and all parties by filing this document with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all counsel of record.

DATED: October 1, 2021              Respectfully submitted,

                                   */s/ Alexander J. Halaska*
                                   ALEXANDER J. HALASKA
                                   Trial Attorney
                                   United States Department of Justice

DEFS.' SUPPL. BRIEF RE: REMEDY
Case No. 3:17-cv-02366-BAS-KSC