# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Alejandro Mayorkas,[1] *et al.*, <br><br> Defendants. | Case No.: 17-cv-02366-BAS-KSC <br><br> **ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

## ORDER

Before the Court is the Plaintiffs' Motion for Summary Judgment. For good cause shown, IT IS HEREBY ORDERED that the motion is GRANTED IN PART AND DENIED IN PART. *See* Dkt. 742.

It is ORDERED that:

1. This Court enters a DECLARATORY JUDGMENT that, absent any independent, express, and lawful statutory authority outside of Title 8 of the U.S. Code, any attempt by Defendants or others acting at their direction or in active concert or participation with them to turn away, turn back, or otherwise deny inspection and/or asylum processing to noncitizens who have not been admitted or paroled and who are in the process of arriving in the United States at Class A Ports of Entry, is unlawful regardless of the purported justification for doing so.[2]

---

[1] Secretary Mayorkas is automatically substituted for former Acting Secretary Wolf pursuant to Federal Rule of Civil Procedure 25(d).

[2] In this Order, "inspection" refers to the mandatory duty to inspect noncitizens arriving at Ports of Entry in 8 U.S.C. § 1225(a)(3). "Asylum processing" refers to the mandatory requirement that those who are inspected must be afforded access to a process to seek asylum in the United States, *see* 8 U.S.C. § 1158(a)(1), either

2. Defendants and others acting at their direction or in active concert or participation with them are PERMANENTLY ENJOINED from turning away, turning back, or otherwise denying access to inspection and/or asylum processing to noncitizens who have not been admitted or paroled and who are in the process of arriving in the United States at Class A Ports of Entry regardless of their purported justification for doing so, absent any independent, express, and lawful statutory authority to do so outside of Title 8 of the U.S. Code.

3. Defendants and others acting at their direction or in active concert or participation with them, including, for purposes of clarity, the Executive Office for Immigration Review, U.S. Immigration and Customs Enforcement, and U.S. Citizenship and Immigration Services, SHALL inspect and provide asylum processing to, under the rules and regulations that would have applied to them at the time of their initial arrival, all noncitizens who would have entered the United States at a Class A Port of

---

through "referral for an interview by an asylum officer," *see* 8 U.S.C. § 1225(b)(1)(A)(ii), or through placement directly in removal proceedings under 8 U.S.C. § 1229a where an application for asylum may be submitted, *see Innovation Law Lab v. Wolf*, 951 F.3d 1073, 1084 (9th Cir. 2020) ("A §[1229](b)(1) applicant may . . . be placed directly into regular removal proceedings under § 1229a at the discretion of the Government."), *vacated as moot*, *Innovation Law Lab v. Mayorkas*, 5 F.4th 1099 (9th Cir. 2021). The term "noncitizen" has the same meaning as "alien" in 8 U.S.C. § 1101(a)(3). The terms "turn away," "turn back," and "denying inspection and/or asylum processing," include, but are not limited to, metering; queue management; directing, or suggesting that, a noncitizen should return to Mexico to await inspection and processing; any other practice or action that results in CBP officers not inspecting or processing noncitizens as they arrive at Class A ports of entry; or attempting to do the same.

Entry[3] but for Defendants' illegal conduct. Evidence that a noncitizen had their name placed on a waitlist for migrants attempting to arrive at a Class A Port of Entry on or around a certain date shall be prima facie evidence of the date that a noncitizen would have entered the United States but for Defendants' illegal conduct. Defendants are further ORDERED to take all reasonable steps to obtain copies of such waitlists, and to facilitate compliance with this Order, within 14 days of the date of this Order. For purposes of clarity, individuals who would not have been subject to (a) Control of Communicable Diseases; Foreign Quarantine: Suspension of Introduction of Persons into United States from Designated Foreign Countries or Places for Public Health Purposes, 85 Fed. Reg. 16,559 (Mar. 24, 2020); (b) Notice of Order Under Sections 362 and 365 of the Public Health Service Act Suspending Introduction of Certain Persons from Countries Where a Communicable Disease Exists, 85 Fed. Reg. 17,060 (Mar. 26, 2020); (c) Extension of Order Under Sections 362 and 365 of the Public Health Service Act; Order Suspending Introduction of Certain Persons from Countries Where a Communicable Disease Exists, 85 Fed. Reg. 22,424 (Apr. 22, 2020); (d) Amendment and Extension of Order Under Sections 362 and 365 of the Public Health Service Act; Order Suspending Introduction of Certain Persons from Countries Where a Communicable Disease Exists, 85 Fed. Reg. 31,503 (May 26, 2020); (e) Order Suspending the Right to Introduce Certain Persons from Countries where a Quarantinable Communicable Disease Exists, 85 Fed. Reg. 65,806 (Oct. 16,

---

[3] As used in this Order, "Port of Entry" and "Class A Port of Entry" refer to ports of entry on the U.S.-Mexico border that have been designated as Class A Ports of Entry pursuant to 8 C.F.R. § 100.4.

3

ORDER
Case No. 3:17-cv-02366-BAS-KSC

2020); or (f) Public Health Assessment and Order Suspending the Right to Introduce Certain Persons from Countries Where a Quarantinable Communicable Disease Exists[4] but for Defendants' illegal conduct shall be inspected and provided asylum processing as they arrive at Class A Ports of Entry.

4. The preliminary injunctions issued at Docket Entries 330 and 676, and clarified at Docket Entry 605, are hereby CONVERTED into PERMANENT INJUNCTIONS.

5. The Court VACATES all current versions of the Metering Guidance and Prioritization-Based Queue Management memoranda. Defendants are hereby ORDERED to formally rescind all current versions of the Metering Guidance and Prioritization-Based Queue Management memoranda within 7 days of the date of this Order.

6. Defendants are ORDERED to provide written guidance to all CBP Officers working at the limit line or involved in primary or secondary inspection at Class A Ports of Entry, concerning the withdrawal of those memoranda and the requirements of this Order and the Court's prior Summary Judgment Memorandum Opinion. Such written guidance shall be submitted to Plaintiffs' Counsel and the Special Master within 7 days of this Order. Plaintiffs' Counsel shall have 3 days to respond to the content of the guidance. Any disagreements regarding the content of the guidance shall be resolved by the Special Master.

7. Defendants are hereby ORDERED to restore the status quo ante for the named plaintiffs prior to Defendants' unlawful conduct. Defendants must

---

[4] *See Huisha-Huisha v. Mayorkas*, 2021 WL 4206688, at *4 (D.D.C. 2021).

take the necessary steps to facilitate Plaintiffs Roberto Doe's and Beatrice Doe's entry into the United States, including issuing any necessary travel documents to allow them to travel to the United States (by air if necessary) and to ensure their inspection and asylum processing upon arrival.

8. Pursuant to 28 U.S.C. § 636(b)(2) and Federal Rule of Civil Procedure 53, the Court APPOINTS United States Magistrate Judge Karen S. Crawford to serve as a SPECIAL MASTER for purposes of overseeing compliance with this Order.

    a. The SPECIAL MASTER is DIRECTED to hold regular hearings, at her discretion, to monitor Defendants' compliance with this Order.

    b. Within 28 days of the date of this Order, Defendants shall advise noncitizens in the process of arriving in the United States at Class A Ports of Entry of this Order and the Court's prior Summary Judgment Memorandum Opinion by posting written notices and/or videos on their public websites and in areas of Class A Ports of Entry that are likely to be viewed by such noncitizens. Such notices or videos shall be approved by the Special Master prior to being posted, and must be in forms that are likely to facilitate class members' understanding of the notices or videos, including, but not limited to, through translation or interpretation in the following languages: Spanish, French, Haitian Kreyol, Portuguese, K'iche, Mam, Q'eqchi', and Q'anjob'al.

    c. Defendants and Plaintiffs shall file quarterly status reports concerning Defendants' compliance with this Order.

    d. On a quarterly basis and upon demand, Defendants shall provide the Special Master and Plaintiffs' Counsel the following information

regarding each Class A Port of Entry on the southern border to assess Defendants' compliance with this Order:[5]

  i. The physical capacity of each of the holding cells, seating areas, and the other areas being used to hold noncitizens expressing a fear of persecution or torture or a desire to seek asylum or other protection at the Port of Entry in question;

  ii. The actual numbers of persons being detained in each holding cell, seating area, and any other area being used to hold noncitizens expressing a fear of persecution or torture or a desire to seek asylum or other protection at the Port of Entry in question;

  iii. The time at which the reported capacity and capacity utilization figures were calculated;

  iv. Whether each Port of Entry has activated or implemented, in whole or in part, its mass migration protocol or a similar contingency plan during the time period covered by the report, and if so, an explanation of which portions of such protocol or plan have been implemented or activated and why;

  v. Whether each Port of Entry is utilizing, or has utilized during the time period covered by the report, any temporary facilities, such as Border Patrol Stations or Substations, soft-sided facilities, or other temporary detention facilities, the nature of

---

[5] For purposes of clarity, such quarterly data must be sufficiently detailed to show daily trends in each Class A Port of Entry's capacity utilization during the preceding quarter as well as the high, low, and average capacity utilization of that port during the period. "Snapshots" of capacity utilization and operations on a particular day shall be insufficient for complying with this Order.

       the temporary facilities being used, and the number of noncitizens being held in such facilities;

  vi. The number[6] of CBP officers assigned to process noncitizens expressing a fear of persecution or torture or a desire to seek asylum or other protection at each Port of Entry;

  vii. The number[7] of CBP officers assigned to monitor vehicle lanes at each Port of Entry;

  viii. Whether each Port of Entry has requested or received CBP officers on TDY or temporary reassignment status, and if so, the number of such officers assigned to each Port of Entry during the time period covered by the report;

  ix. The total number of lines and workstations that can be used to inspect and process noncitizens who are in the process of arriving in the United States at each Port of Entry;

  x. The total number[8] of lines and workstations that are being used to inspect and process noncitizens who are in the process of arriving in the United States at each Port of Entry;

---

[6] For a quarterly report, this number shall be expressed as the high, low, and average number of CBP officers assigned to inspect and process noncitizens at each Port of Entry during the time period covered by the report.

[7] For a quarterly report, this number shall be expressed as the high, low, and average number of CBP officers assigned to monitor vehicle lanes at each Port of Entry during the time period covered by the report.

[8] For a quarterly report, this number shall be expressed as the high, low, and average number of lines and workstations being used for inspecting and processing noncitizens at each Port of Entry during the time period covered by the report.

xi. The total number of workstations that could be used for remote inspection or processing of noncitizens via video conference at each Port of Entry;

xii. The total number[9] of workstations that are being used for remote inspection or processing of noncitizens via video conference at each Port of Entry;

xiii. The average wait time for a noncitizen in the process of arriving in the United States at each Port of Entry before being inspected and processed as required by this Order, and how that wait time is calculated;

xiv. The average time that CBP officers spend inspecting and processing an arriving noncitizen at each Port of Entry, as required by this Order;

xv. The total number[10] of noncitizens waiting in line and/or in Mexico to be inspected and processed at each Port of Entry; and

xvi. Whether anyone acting on behalf of a Defendant, or in active concert or participation with a Defendant, is utilizing independent, express legal authority outside of Title 8 of the U.S. Code to turn away, turn back, deny inspection and/or asylum processing to, or expel noncitizens in the process of arriving in the United States at each Port of Entry and, if so, the

---

[9] For a quarterly report, this number shall be expressed as the high, low, and average number of workstations being used for remote inspection or processing of noncitizens via video conference during the period covered by the report.

[10] For a quarterly report, this number shall be expressed as the high, low, and average number of noncitizens waiting to be inspected and processed at each Port of Entry during the period covered by the report.

        claimed legal authority and the number of such persons who have been turned away, turned back, or expelled each day of the prior quarter;

xvii.  Whether the Port of Entry has altered its hours during which it is inspecting and processing noncitizens, and if so, a detailed explanation of the reasons for the altered hours of operation;

xviii.  A detailed explanation of any planned, contemplated, or actual construction projects at any Port of Entry that will affect the inspection, processing, or detention of noncitizens;

xix.  Whether security exercises or show of force operations have had any effect on processing or inspecting noncitizens at any Port of Entry, and if so, a detailed explanation of the exercise or operation and its effect on processing or inspecting noncitizens at such Ports of Entry;

xx.  A detailed explanation of the implementation of any new technology, application, or platform that Defendants, or those acting in concert with them or at their direction, are utilizing to facilitate the inspection and/or processing of noncitizens in compliance with this Order, including, but not limited to, any technology, application, or platform that permits the preregistration or preclearance of noncitizens prior to their arrival at a Port of Entry;

xxi.  Whether Defendants have changed the designation of any Port of Entry from a Class A Port of Entry to another classification of Port of Entry, and if so, a detailed explanation of the reasons for the reclassification;

    xxii. Whether Defendants have actually closed or have plans to close any Class A Port of Entry or pedestrian entrance to a Class A Port of Entry either permanently or temporarily, and if so, a detailed explanation of the nature of the closure, its duration, and the reasons for the closure;

    xxiii. Whether Defendants have stated that particular Ports of Entry or pedestrian entrances to Ports of Entry may not be utilized by noncitizens, and if so, a detailed explanation of the reasons for that statement;

    xxiv. A detailed explanation of any reason why each Port of Entry cannot, or purportedly cannot, inspect and/or provide asylum processing to noncitizens in compliance with this Order; and

    xxv. A detailed written explanation of how and why Defendants are in compliance with this Order.

e. The Special Master, or individuals working on her behalf, has the right to conduct unannounced inspections of Class A Ports of Entry, including CBP holding cells, and may speak to persons detained by CBP with their consent to monitor compliance with this Order.

f. Absent a showing of good cause for additional inspections, Plaintiffs' Counsel may conduct up to two inspections of a Class A Port of Entry per quarter by providing written notice to Defendants' counsel. Upon such notice, Defendants shall allow up to four of Plaintiffs' Counsel, or their designees, access to all areas of the Port of Entry identified by Plaintiffs' Counsel as well as visual inspection and access to any detention facilities being used by the Port of Entry, including offsite facilities being used to temporarily detain noncitizens.

g. Upon a showing of good cause found, either via motion or sua sponte, the Special Master may permit Plaintiffs to take discovery, including requests for the production of documents, electronically-stored information, and things; interrogatories; and depositions, to monitor Defendants' compliance with this Order.

h. Should Defendants decide to adopt a policy, guidance, memorandum, direction, or muster, whether written or unwritten, that could result in a noncitizen in the process of arriving at a Class A Port of Entry being turned away from, turned back from, expelled from, denied inspection or asylum processing at, or prohibited from arriving at a Class A Port of Entry, Defendants must provide the Special Master and Plaintiffs' Counsel with written notice of such policy, guidance, memorandum, direction, or muster no fewer than 7 days prior to its implementation. Such written notice must clearly state the claimed legal authority for the intended action.

i. The terms of this paragraph 8 and all of its subsections shall cease to be in effect five (5) years from the date of this Order, unless this Court finds good cause to extend the effectiveness of this paragraph or any of its subsections.

9. This Court retains jurisdiction over this matter for purposes of enforcing compliance with this Order and the Court's prior Summary Judgment Memorandum Opinion.

SO ORDERED.

Dated: October __, 2021

                                        Hon. Cynthia Bashant
                                        United States District Judge