# EXHIBIT 1



1300 Pennsylvania Avenue, NW
Washington, DC 20229

**U.S. Customs and Border Protection**

*Commissioner*

November 1, 2021

| | |
|---|---|
| MEMORANDUM FOR: | William A. Ferrara<br>Executive Assistant Commissioner<br>Office of Field Operations |
| FROM: | Troy A. Miller<br>Acting Commissioner<br>U.S. Customs and Border Protection |
| SUBJECT: | **Guidance for Management and Processing of Undocumented Noncitizens at Southwest Border Land Ports of Entry** |

This memorandum provides updated guidance for the management and processing of noncitizens who, without proper documents ("undocumented noncitizens"), present at land ports of entry (POEs) along our Southwest Border, including those who may be seeking humanitarian protection in the United States. This memorandum also rescinds and supersedes the November 27, 2019 memorandum from the former Commissioner, *Prioritization-Based Queue Management*; and CBP Office of Field Operations (OFO) April 27, 2018 and April 30, 2020 memoranda, *Metering Guidance*. Today, Secretary Mayorkas rescinded Secretary Nielsen's June 5, 2018 memorandum, *Prioritization-Based Queue Management*, upon my recommendation.

The ability to process undocumented noncitizens in a timely manner is impacted by a wide range of factors, including staffing constraints, outdated infrastructure, and significantly at this time, the COVID-19 pandemic. The COVID-19 pandemic specifically has limited processing and holding capacity based on protocols to protect the workforce, the noncitizens whom we encounter at the POEs, and the American public. The Centers for Disease Control and Prevention's August 2, 2021 Public Health Order, which was issued pursuant to Title 42 of the U.S. Code and suspends the introduction of certain non-citizens into the United States for public health reasons, remains in force, and we will continue to implement it as applicable. At all times, the capacity to process undocumented noncitizens must take into account CBP's other vital priorities, including our mission to protect public safety and national security, interdict the flow of narcotics and contraband, and facilitate lawful trade and travel.

Guidance for Management and Processing of Undocumented Noncitizens at the SWB LPOEs
Page 2

Even before the COVID-19 pandemic, processing capacity was limited due to increasingly large volumes of lawful trade and travel. During the five years preceding the pandemic, CBP processed, on average, 326 inadmissible individuals each day at POEs across the Southwest land border. At the same time, CBP apprehended, on average, a much larger number—1,266 individuals each day—between POEs.

As a complement to enforcement efforts between POEs and to incentivize an alternative to such unlawful crossings, I instruct Southwest Border OFO management to consider and take appropriate measures, as operationally feasible, to increase capacity to process undocumented noncitizens at Southwest Border POEs, including those who may be seeking asylum and other forms of protection. As part of this effort, CBP personnel should continue to employ and should further accelerate ongoing steps to leverage technological and processing efficiencies to streamline POE processing.

Possible additional measures include the innovative use of existing tools such as the CBPOne™ mobile application, which enables noncitizens seeking to cross through land POEs to securely submit certain biographic and biometric information prior to arrival and thus streamline their processing upon arrival. OFO also should accelerate ongoing efforts to digitize processing at POEs and more effectively use data to increase throughput. In developing these solutions, CBP should, as appropriate, collaborate with interested non-governmental organizations and other key partners, consistent with applicable privacy protections and civil rights and civil liberties.

Importantly, however, asylum seekers or others seeking humanitarian protection cannot be required to submit advance information in order to be processed at a Southwest Border land POE. The submission (or lack thereof) of advance information should not influence the outcome of any inspection. CBP will continue to make admissibility and processing determinations on a case-by-case-basis at the POE.

A POE's capacity to process undocumented noncitizens is influenced by operational realities and circumstances that could change day to day and could include unanticipated incidents, emergencies, or challenges. However, POEs must strive to process all travelers, regardless of documentation status, who are waiting to enter, as expeditiously as possible, based on available resources and capacity. At all times, the capacity to process undocumented noncitizens must take into account CBP's other vital priorities, including our mission to protect public safety and national security, interdict the flow of narcotics and contraband, and facilitate lawful trade and travel.

CBP may manage the intake of undocumented noncitizens at POEs, including by providing staffing at the border line to facilitate and manage safe and orderly travel into the POE. In all cases, however, undocumented noncitizens who are encountered at the border line should be permitted to wait in line, if they choose, and proceed into the POE for processing as operational capacity permits. Absent a POE closure, officers also may not instruct travelers that they must return to the POE at a later time or travel to a different POE for processing. Officers also may not preclude those in line from departing and returning at a later time. Once in the United States, an individual must be inspected and processed by CBP Officers and may not be directed to return across the land border without appropriate processing.

Based on past, current, and expected volumes of individuals seeking entry at Southwest Border land POEs, there may be extended wait times in processing lines.

This Administration has outlined a comprehensive strategy to expand safe, orderly, and humane pathways for migration, including for noncitizens who may be seeking protection to access the United States. *See* Executive Order 14010, 86 FR 8267 (2021). This guidance is issued in furtherance of that strategy and is effective immediately.