BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
SAMUEL P. GO
Assistant Director
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
DHRUMAN Y. SAMPAT (NJ 270892018)
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4281 | Fax: (202) 305-7000
dhruman.y.sampat@usdoj.gov
Trial Attorney
*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | Hon. Cynthia A. Bashant |
| v. | **DEFENDANTS' OPPOSITION TO SPECIFIC DISCOVERY REQUESTS SET FORTH IN PLAINTIFFS' NOTICE OF FILING DISCOVERY REQUESTS (Dkt. No. 776)** |
| ALEJANDRO MAYORKAS, Secretary of Homeland Security, *et al.*, in their official capacities, | |
| *Defendants*. | |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................4

ARGUMENT ........................................................................................................6

    I.     Request for Production 4 Seeks Irrelevant and Likely
         Privileged Information. ................................................................6

    II.    Request for Production 3 and Interrogatory 7 Seek Irrelevant
         Information. ................................................................................10

    III.   Request for Production 7 Seeks Largely Irrelevant and
         Sensitive Removal and Flight Information. ..................................13

CONCLUSION ....................................................................................................15

1

## **TABLE OF AUTHORITIES**

2
**Cases**

*Al Otro Lado v. Wolf*,
  945 F.3d 1223 (9th Cir. 2019)............................................................14

*Al Otro Lado v. Wolf*,
  952 F.3d 999 (9th Cir. 2020)............................................................14

*Al Otro Lado, Inc. v. Wolf*,
  No. 17-cv-2366-BAS-KSC, 2020 WL 5422784 (S.D. Cal. Sept. 10, 2020)....7, 8

*California Native Plant Society v. U.S. E.P.A.*,
  251 F.R.D. 408 (N.D. Cal. 2008)....................................................7, 8

*Carter v. U.S. Dep't of Commerce*,
  307 F.3d 1084 (9th Cir. 2002)............................................................7

*Citizens for Quality Education San Diego v. San Diego Unified School District*,
  No. 17-cv-1054-BAS-JMA, 2018 WL 1150836 (S.D. Cal. Mar. 5, 2018)........15

*Crane v. Rodriguez*,
  No. 2:15-cv-0208, 2020 WL 1317344 (E.D. Cal. Mar. 20, 2020)...................11

*Dept. of Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001)..............................................................................9

*Disney Enterprises, Inc. v. VidAngel, Inc.*,
  No. 16-0109-AB (PLAx), 2019 WL 4544428 (C.D. Cal. May 29, 2019)...........9

*Estate of Young Through Young v. Holmes*,
  134 F.R.D. 291 (D. Nev. 1991)............................................................11

*Flores v. Bank of America*,
  No. 11-1817-JM(WVG), 2012 WL 6725842 (S.D. Cal. Dec. 27, 2012)..........12

*FTC v. Warner Communications, Inc.*,
  742 F.2d 1156 (9th Cir. 1984)..........................................................8, 9

*Gibson v. Beer*,
 No. CV-F-03-5445, 2008 WL 2271623 (E.D. Cal. May 30, 2008) ................ 11

*In re Dep't of Investigation of City of New York*,
 856 F.2d 481 (2d Cir. 1988)..................................................... 15

*In re Midland Credit Management, Inc., Telephone Consumer Protection Act
 Litigation*,
 No. 11-md-2286-MMA(MDD), 2020 WL 6504416 (S.D. Cal. Nov. 5, 2020).. 14

*In re Wells Fargo Residential Mort. Lending Discrimination Litigation*,
 No. C 08-1930 MMC (JL), 2009 WL 1771368 (N.D. Cal. June 19, 2009)........ 7

*Maria Del Socorro Quintero Perez, CY v. United States*,
 No. 13cv1418-WQH-BGS, 2016 WL 362508 (S.D. Cal. Jan. 29, 2016).......... 15

*Morris v. Barra*,
 No. 10-CV-2642-AJB (BGS), 2012 WL 4900203 (S.D. Cal. Oct. 15, 2012).... 12

*Moses v. Halstead*,
 236 F.R.D. 667 (D. Kan. 2006) .................................................. 3

*Nat'l Wildlife Federation v. U.S. Forest Serv.*,
 861 F.2d 1114 (9th Cir. 1988)................................................... 8

*Newport Pacific Inc. v. Cnty. Of San Diego*,
 200 F.R.D. 628 (S.D. Cal. 2001) ................................................ 9

*NLRB v. Sears, Roebuck & Co.*,
 421 U.S. 132 (1975) ........................................................ 7, 8

*Peck v. Cnty. of Orange*,
 No. 2:19-cv-4654, 2020 WL 4218223 (C.D. Cal. July 10, 2020)................... 11

*Shuckett v. Dialamerica Mktg., Inc.*,
 No. 17-cv-2073-LAB(KSC), 2018 WL 4350123 (S.D. Cal. Sept. 10, 2018) . 3, 4,
 6

*United States Fish and Wildlife Service v. Sierra Club, Inc.*,
 141 S. Ct. 777 (2021)..................................................... 7, 8, 9

GOV'T'S OPPOSITION TO
PLAINTIFFS' DISCOVERY REQUESTS
Case No. 3:17-cv-02366-BAS-KSC

*United States v. Fernandez,*
  231 F.3d 1240 (9th Cir. 2000)......................................................7

*United States v. Int'l Union of Petroleum and Indus. Workers,*
  870 F.2d 1450 (9th Cir. 1989)....................................................11

**Rules**

Fed. R. Civ. P. 33(b) ...........................................................1, 3

Fed. R. Civ. P. 34(b)(2) .......................................................1, 3

# INTRODUCTION

Defendants and EOIR (collectively "the Government") hereby oppose specific requests set forth in Plaintiffs' "Notice of Filing Discovery Requests Pursuant to Dkt. 760" (Dkt. No. 776), as the Court contemplated in its order granting in principle Plaintiffs' motion for discovery into preliminary-injunction compliance. *See* Order Granting Plaintiffs' Motion for Discovery (Dkt. No. 760), at 3 (permitting Defendants to "oppose the specific requests" submitted for approval). In this filing, the Government opposes wholesale particular requests that Plaintiffs have submitted for the Court's approval and that fall outside the scope of the discovery contemplated by the Court or are otherwise facially improper. That is, the Government does not assert here every specific objection to every proposed request. Instead, it requests that the Court disapprove four specific requests in their entirety because they, on their face, seek irrelevant and, in some cases, privileged information or information that falls entirely outside the scope of this Court's order granting limited discovery to review compliance with the previously-issued preliminary-injunction orders. Should the Court approve any of Plaintiffs' proposed discovery requests, the Government intends to exercise its right to refine and define the scope of those requests through the assertion of specific objections along with their responses, including objections based on overbreadth/irrelevance, vagueness, undue burden, and privilege. *See, e.g.*, Fed. R. Civ. P. 33(b)(2), (4); Fed. R. Civ. P. 34(b)(2)(B), (C).

*First*, the Government requests that the Court disapprove and strike Request for Production 4, which seeks the production of documents that relate to plans that the Government proposed or considered in relation to PI compliance but declined to implement, including documents explaining why those proposals were rejected. The request, on its face, would not lead to evidence of noncompliance because, by its own terms, it seeks information about procedures that were *never* implemented. It is the procedures that are or were actually in place that are relevant to evaluating com-

pliance with the Court's preliminary-injunction orders. The request also seeks information that is subject to the deliberative process and attorney-client privileges and is also protected by the work-product doctrine. Given that the documents are also irrelevant to the procedures that the Government has implemented and whether those procedures comply with the Court's preliminary-injunction orders, the Court should decline to require the Government to engage in a burdensome search and logging process to respond to this request.

*Second*, the Court should disapprove and strike Interrogatory 7 and Request for Production 3, which seek information about waitlists used by entities in Mexico, because the information sought does not relate to Plaintiffs' claimed concerns regarding compliance with the preliminary injunction that prompted their discovery motion. Although the requests may be relevant to the extent that they ask for information about how waitlists are used to make class membership determinations, these requests seek *all* documents in the Government's possession that have any relationship to waitlists, without any limitation, as well as steps the Government has taken to obtain waitlists. Given that any relevant information about waitlists could be obtained through Plaintiffs' other requests, the Court should strike these broad-ranging, far-reaching, and unduly burdensome requests.

*Third*, the Government requests that the Court disapprove and strike Request for Production 7, which seeks information about *all* noncitizens who have been removed via removal flights between July 16, 2019 and March 5, 2021, and the manifests and other sensitive details about those flights. This request is extremely overbroad and seeks largely irrelevant information. Flight manifests themselves have nothing to do with issues of PI compliance, and Plaintiffs can obtain information about past removals of potential PI class members without requiring the Government to divulge sensitive and overinclusive flight information that will reveal law enforcement methods. Indeed, the Government has already provided data about when po-

tential PI class members were removed. Further, any removal flights conducted before the Court entered the preliminary injunction or while the injunction was stayed by the Ninth Circuit could not possibly show non-compliance with the preliminary injunction.

For these reasons, the Government specifically requests that the Court disapprove and strike: (1) Request for Production 4; (2) Interrogatory 7 and Request for Production 3; and (3) Request for Production 7. To the extent the Court determines that other requests are unduly burdensome or fall outside the scope of its limited grant of discovery, Defendants respectfully request that the Court disapprove and strike those requests as well.[1]

---

[1] As noted, the Government is not asserting all of its objections here—even as to the requests it asks to strike—and reserves all rights to object to and narrow the scope of any requests approved by the Court to mitigate undue burdens and to withhold irrelevant or privileged information that otherwise would be responsive to a particular request. *See, e.g.*, Fed. R. Civ. P. 33(b)(2), (4); Fed. R. Civ. P. 34(b)(2)(B), (C); Pls.' Reply in Supp. of Mot. for Discovery (Dkt. No. 698) at 7 (stating that the "normal sequencing and rules of discovery and discovery motion practice" should apply). Many of Plaintiffs' other proposed requests are exceedingly overbroad and burdensome, even where they seek some relevant information about the Government's procedures for compliance with the Court's preliminary-injunction orders and past class-member determinations, but the Government is hopeful that the parties will be able to agree to appropriate limits on these requests. For example, many of Plaintiffs' proposed requests improperly and disproportionately seek "all documents relating to" certain topics, as in Request for Production 6. *See Shuckett v. Dialamerica Mktg., Inc.*, No. 17-cv-2073-LAB(KSC), 2018 WL 4350123, at *5 (S.D. Cal. Sept. 10, 2018) ("A document request or interrogatory is also overly broad or unduly burdensome on its face if it: '(1) uses an omnibus term such as "relating to" or "concerning," and (2) applies to a general category or group of documents or a broad range of information.'" (quoting *Moses v. Halstead,* 236 F.R.D. 667, 672 (D. Kan. 2006)). As another example, Interrogatory 8, and in particular subpart (c)—which seeks the identification of "*any* person who was removed or expelled from the United States . . . following a determination by [the Government] that the [transit rule] applied to that person and who did not receive any sort of screening interview or file review to determine whether they were

GOV'T'S OPPOSITION TO
PLAINTIFFS' DISCOVERY REQUESTS
Case No. 3:17-cv-02366-BAS-KSC

# BACKGROUND

On February 16, 2021, Plaintiffs moved for leave to take discovery into the Government's compliance with orders related to the Court's preliminary injunction: (1) the Court's initial November 19, 2019, Order enjoining Defendants from applying the third-country transit rule interim final rule ("transit rule") to members of the preliminary-injunction class (the "PI"); (2) the Court's October 30, 2020, Order requiring the Government to make reasonable efforts to identify and notify PI class members and to affirmatively reopen and reconsider past applications of the transit rule, including applications that occurred before the PI issued or while it was stayed (The "October 30 Order"); and (3) related orders from the Ninth Circuit staying these orders or lifting the stays (collectively, "the PI Orders"). *See* Pls.' Mem. in Supp. of Mot. for Discovery (Dkt. No. 680-1 at 4).

In their motion, Plaintiffs asserted that they had not received any information about the identities of PI class members and that they lacked a complete understanding as to how the Government makes determinations of class membership. *See id.* at 2. They primarily sought discovery "to determine how the government is ensuring potential PI class members are not entitled to PI relief prior to deporting them." *Id.* at 16.

In its opposition, the Government recounted information that it had already provided Plaintiffs as to the procedures then or previously in place for making class

---

a Class Member"—is overly broad and unduly burdensome, because it is not sufficiently tailored to seek evidence relevant to compliance with the preliminary-injunction orders, as it lacks an appropriate temporal limitation (in part because it seeks information about removals that occurred before the preliminary injunction was issued or while it was stayed) and seeks information about removals or other actions that do not relate to compliance with the preliminary-injunction orders. *See Shuckett*, 2018 WL 4350123, at *5 ("Generally, a discovery request without any temporal or other reasonable limitations is objectionable on its face as overly broad.").

GOV'T'S OPPOSITION TO
PLAINTIFFS' DISCOVERY REQUESTS
Case No. 3:17-cv-02366-BAS-KSC

membership determinations; it also provided additional details about class membership screening procedures. *See* Opp. to Mot. for Discovery (Dkt. No. 695) at 4-10 (setting forth efforts undertaken by Defendants and EOIR to comply with the court's PI); *see also* Dkt. No. 695-3 (outlining U.S. Citizenship and Immigration Services' (USCIS's) PI class membership screening procedures); Dkt. No. 695-5 (attaching U.S. Immigration and Customs Enforcement's (ICE's) procedures concerning PI implementation); Dkt. No. 695-6 (explaining EOIR's procedures). The Government also explained that, once an appropriate protective order was entered that provided adequate safeguards against further dissemination of asylum information of potential PI Class Members, they could share information about the identities and cases of potential PI Class Members with Plaintiffs. *See* Dkt. No. 695 at 13-15, 18 & n.7. The Government further provided the case and screening information for several individuals who Plaintiffs claimed had been scheduled to be removed, to demonstrate why those cases did not evidence any compliance concerns. *See id.* at 15-17, 21-22.

On April 8, 2021, Magistrate Judge Crawford entered a protective order governing the treatment of asylum information of potential PI Class Members. *See* Dkt. Nos. 707, 709. On April 22, 2021, the Government made the first of several productions of data about potential PI Class Members and class member determinations, which included information about individuals who had likely entered the United States and had been interviewed by USCIS or had received a decision on an asylum application in immigration court. Declaration of Dhruman Y. Sampat ("Sampat Decl.") ¶ 3, 4. That production included data contained in ICE's electronic records as of April 3, 2021, indicating the date an individual was removed, if applicable, from the United States under an order of removal. *Id.* ¶ 5. The Government has also agreed to provide updated removal information for purposes of facilitating Plaintiffs' provision of notice. *Id.* ¶ 6, 7.

On September 24, 2021, the Court granted Plaintiffs' motion for discovery, noting that Plaintiffs sought "information on who is likely a class member; how the

GOV'T'S OPPOSITION TO
PLAINTIFFS' DISCOVERY REQUESTS
Case No. 3:17-cv-02366-BAS-KSC

Government determined who was likely a class member; and what the Government did after learning an individual was likely a class member." Dkt. No. 760 at 2. The Court stated that Plaintiffs had provided "anecdotal evidence that Immigration Judges are refusing to apply the Preliminary Injunction and the Government has attempted to deport some individuals subject to the Preliminary Injunction without a credible fear interview." *Id.* The Court ultimately decided "that discovery would enable [Plaintiffs] to determine whether the Government has complied with the preliminary injunction." *Id.* at 3. It granted Plaintiffs' motion in principle but required Plaintiffs to submit their discovery requests to the Court for approval. *Id.* The Court further stated that "[t]he Government may oppose the specific requests." *Id.*

## ARGUMENT

### I.    Request for Production 4 Seeks Irrelevant and Likely Privileged Information.

The Court should decline to approve Request for Production 4 for two reasons. *First*, it seeks documents that are irrelevant to the purpose for which this Court allowed limited discovery. *Second*, it seeks deliberative information, including attorney work product and attorney-client communications, that is likely privileged.

Plaintiffs' Request for Production 4 would not lead to relevant evidence. This Court granted Plaintiffs' discovery motion for the limited purpose of "enabling Plaintiffs to determine whether the Government has complied with" the PI Orders. Dkt. No. 760 at 3. Yet, Request for Production 4 seeks documents that identify "steps, measures, plans, guidance, policies, or procedures" that were "proposed or considered to comply with the Preliminary Injunction but that the [Government] declined to take or implement," including "Documents explaining why the [Government] decided not to take or implement those steps." *See* Dkt. No. 776-2 at 7. Request for Production 4 thus goes well beyond what Plaintiffs originally sought and what this Court ordered. In Request for Production 4, Plaintiffs seek documents that identify proposals that the Government considered but ultimately rejected in favor

of implementing other procedures for compliance. This has nothing to do with whether the Government's current or past procedures comply or complied with the Court's PI Orders. By their very nature, rejected proposals do not show steps taken or procedures implemented by the Government to comply with the PI Orders. This Court should not require the Government to provide "a broad swath" of information that is unrelated to actual steps it took or is taking to comply with the PI Orders. *In re Wells Fargo Residential Mort. Lending Discrimination Litigation*, No. C 08-1930 MMC (JL), 2009 WL 1771368, at *5 (N.D. Cal. June 19, 2009).

Additionally, the Court should reject Plaintiffs' request because the information sought is insight into the substance of the Government's decision-making processes and attorney-client communications. This information is thus not likely to be discoverable, and the Court should decline to require the Government to engage in a burdensome effort to locate and log documents, particularly where those documents are also irrelevant to PI compliance.

The information sought in Request for Production 4 is generally protected by the deliberative process privilege, which "shields from disclosure 'documents reflecting advisory opinions, recommendations, deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *United States Fish and Wildlife Service v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)); *see also Al Otro Lado, Inc. v. Wolf*, No. 17-cv-2366-BAS-KSC, 2020 WL 5422784, at *2 (S.D. Cal. Sept. 10, 2020). That privilege protects material that qualifies as both predecisional and deliberative. *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000). A document is predecisional if it predates the corresponding decision. *California Native Plant Society v. U.S. E.P.A.*, 251 F.R.D. 408, 411 (N.D. Cal. 2008). Material is deliberative if it "would expose an agency's decisionmaking process in such a way to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its function." *Carter v. U.S. Dep't of Commerce*, 307

F.3d 1084, 1089 (9th Cir. 2002). Ultimately, the privilege is meant to "protect[] and encourage[] the agency's ability to have candid discussions." *California Native Plant Society*, 251 F.R.D. at 411.

Request for Production 4 unambiguously seeks predecisional and deliberative documents that would divulge predecisional recommendations regarding PI compliance that eventually "died on the vine." *Sierra Club*, 141 S. Ct. at 786. "That happens in deliberations—some ideas are discarded or simply languish." *Id*. Plaintiffs seek documents that reflect agency policy or procedure that never came to be and the communications explaining why. Dkt. No. 776-2 at 7. If these documents were routinely discoverable, the Government would effectively have "to operate in a fishbowl," which is what the deliberative process privilege is meant to prevent. *Sierra Club*, 141 S. Ct. at 785; *see also Sears, Roebuck & Co.*, 421 U.S. at 150 (noting that the deliberative process privilege was created to protect documents "reflecting" the deliberations that are "part of a process by which governmental decisions" are created). These documents would reflect the Government's "tentative position[s]" as to which "agency decisionmakers [were] free to change their minds." *Sierra Club*, 141 S. Ct. at 786 (internal quotations omitted). "So long as such recommendations do not represent final agency policy, it is clear that they fall within the deliberative process privilege." *Nat'l Wildlife Federation v. U.S. Forest Serv.*, 861 F.2d 1114, 1121 (9th Cir. 1988).

This type of material is only discoverable if the requestor's "need for the material and need for accurate fact-finding override[s] the government's interest in non-disclosure." *Al Otro Lado*, 2020 WL 5422784, at *3 (citing *FTC v. Warner Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984)) (brackets added). Plaintiffs are not likely to meet this burden with respect to the type of information about rejected proposals that is sought in Request for Production 4, because that information is not relevant to what the Government is *in fact* doing to comply with the PI Orders (as sought in other proposed requests) and whether those efforts are sufficient, and its

revelation would hinder frank discussions. *See FTC*, 742 F.2d at 1161 (in determining whether the deliberative process privilege should give way, the Court may consider: (1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions).[2] Certainly, revealing deliberations concerning proposals for PI compliance will have a "chilling effect" on future communications among agency personnel as to how to comply with this or any court order, and will discourage personnel from making proposals in the future. *See Sierra Club*, 141 S. Ct. at 785. Agency officials must feel comfortable to propose courses of action, even if ultimately rejected, without fear of harming the agency by doing so, and that is precisely why predecisional, deliberative documents are protected from disclosure. *See Dept. of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001).

Additionally, the majority of documents captured by this Request will include communications between litigating counsel and agency counsel, or between agency counsel and their internal clients, regarding the interpretation of the Court's PI Orders, and will thus be subject to the attorney-client privilege and the attorney work-product doctrine. *See Newport Pacific Inc. v. Cnty. Of San Diego*, 200 F.R.D. 628, 630 (S.D. Cal. 2001) (reiterating that the attorney-client privilege attaches to information exchanged by a party and its lawyer that is required for the exchange of sound and informed legal advice); *see also Disney Enterprises, Inc. v. VidAngel, Inc.*, No. 16-0109-AB (PLAx), 2019 WL 4544428, at *1 (C.D. Cal. May 29, 2019) (reflecting assertion of work-product doctrine over documents and communications relating to

---

[2] The Government is not making a formal assertion of privilege over any particular document or document(s) at this time or asking the Court to rule on the privilege issue; Plaintiffs' proposed requests have yet to be approved, and the Government has not yet conducted a search for, or privilege review of, responsive documents. Instead, the Government is asserting that the type of information that the Request seeks is likely to be protected from disclosure.

GOV'T'S OPPOSITION TO
PLAINTIFFS' DISCOVERY REQUESTS
Case No. 3:17-cv-02366-BAS-KSC

compliance with the preliminary injunction). Again, the Court should not require the Government to search for and painstakingly log documents about its decisionmaking processes and legal advice, particularly where those documents have no bearing on whether or not the Government is complying with the PI Orders.

The Court should reject Plaintiffs' Request for Production 4.

## II. Request for Production 3 and Interrogatory 7 Seek Irrelevant Information.

The Court should decline to approve Request for Production 3 and Interrogatory 7 because they seek broad-ranging information about waitlists that is beyond the scope of what Plaintiffs sought in their discovery motion.

Request for Production 3—which seeks "*all* documents relating to waitlists kept by persons on the Mexican side of the U.S.-Mexico border"—is extremely overbroad and largely irrelevant to whether or not Defendants are complying with the Court's PI Orders. In seeking leave to take discovery, Plaintiffs assured the Court that "*all* discovery" would be "*limited* to matters related to the government's compliance with the PI and subsequent orders clarifying, enforcing, staying, or lifting stays related to the PI, including, but not limited to, the Clarification Order and the pending Motion to Enforce the Preliminary Injunction." Pls.' Mem. in Supp. of Mot. for Discovery (Dkt. No. 680-1), at 4 (emphasis added). Plaintiffs claimed to seek PI compliance discovery to obtain a better "understanding of how the government makes determinations regarding PI class membership or how the government ensures PI relief to those class members owed such relief," *id.* at 2, such as whether PI class members were screened for class membership or application of the transit rule before removal, *see* Pls.' Reply in Supp. of Mot. for Discovery (Dkt. No. 698), at 6. As the Court explained, Plaintiffs sought information about "who is a likely class member; how the Government determined who was a likely class member; and what the Government did after learning an individual was a likely class member." Dkt. No. 760, at 2.

GOV'T'S OPPOSITION TO
PLAINTIFFS' DISCOVERY REQUESTS
Case No. 3:17-cv-02366-BAS-KSC

But a request for every document that contains some information about wait-lists will not help determine whether Defendants are complying with the PI Orders, and this request goes well beyond ascertaining how class membership determinations are made or how relief is afforded to class members. The Government acknowl-edges that the waitlists themselves would be relevant to PI compliance to the extent that they are in the Government's possession and currently being used in its imple-mentation of the PI.[3] So, for example, to the extent Request for Production 3 seeks waitlists used in making class membership determinations, or the procedures for us-ing waitlists in class membership determinations (including how to "treat[] the in-clusion of a person's name or personal identifying information on a waitlist kept on the Mexican side of the U.S.-Mexico border for purposes of determining whether that person is a class members," *see* Dkt. No. 776-2), such documents or information would be relevant. *See also, e.g.*, Pls.' Mem. in Supp. of Mot. for Discovery (Dkt. No. 680-1) at 6 (alleging that the Government does not inform potential class mem-bers that their name is on a waitlist in the Government's possession); *id.* at 13-14

---

[3] As noted above, the Government reserves its ability to object to and limit this re-quest, if approved, because it seeks documents that are not in the Government's pos-session, custody, or control. *See United States v. Int'l Union of Petroleum and Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989) (holding that a party is "*only*" required to produce those records "which are in [a party's] 'possession, custody or control.'") (quoting Fed. R. Civ. P. 34(a)). The Government would not be under an obligation to produce documents possessed, held, or controlled by a non-party. *See Gibson v. Beer*, No. CV-F-03-5445, 2008 WL 2271623, at *1 (E.D. Cal. May 30, 2008) (deny-ing a motion to compel to the extent that the request for production sought non-party documents outside of producing party's "possession, custody, or control."); *Peck v. Cnty. of Orange*, No. 2:19-cv-4654, 2020 WL 4218223, at *5 (C.D. Cal. July 10, 2020) (refusing to require production of additional documents without evidence that they existed in the producing party's "possession, custody, or control"); *see also Crane v. Rodriguez*, No. 2:15-cv-0208, 2020 WL 1317344, at *7 (E.D. Cal. Mar. 20, 2020) ("A party is not in control of records that the requesting party has equal ability to obtain from public sources." (citing *Estate of Young Through Young v. Holmes*, 134 F.R.D. 291, 294 (D. Nev. 1991)).

GOV'T'S OPPOSITION TO
PLAINTIFFS' DISCOVERY REQUESTS
Case No. 3:17-cv-02366-BAS-KSC

(same); Reply in Supp. of Mot. for Discovery (Dkt. No. 698) at 4. However, that information would also likely be responsive to other requests, such as Request for Production 1 (which seeks, among other things, documents sufficient to show the Government's procedures or guidance for making class membership determinations) or Interrogatory 1 (which seeks a description of the same). And the remainder of Request for Production 3 seeks broad-ranging documents that may have some connection to waitlists, but have no apparent connection to PI compliance or implementation. This overbroad discovery that is untethered to issues of PI compliance "constitutes a fishing expedition [to] which it would be unduly burdensome" for the Government to respond. *Flores v. Bank of America*, No. 11-1817-JM(WVG), 2012 WL 6725842, at *2 (S.D. Cal. Dec. 27, 2012) (internal quotations omitted). The burden of response and production clearly outweighs any minimal relevance of responsive documents. *See Morris v. Barra*, No. 10-CV-2642-AJB (BGS), 2012 WL 4900203, at *3 (S.D. Cal. Oct. 15, 2012) (weighing the relevance of the request with the burden of production given the procedural posture of the case).

For example, Request for Production 3 seeks "Communications with persons in Mexico regarding the waitlists between July 16, 2019 to the present." Dkt. No. 776-2 at 2. Those documents[4]—to the extent they exist—would have nothing to do with the Government's compliance with or implementation of the PI Orders. They would not reflect the policies or procedures that the Government has instituted to identify PI Class Members to comply with the PI Orders, and they would not evidence how those procedures are applied in practice. Moreover, nowhere in their motion seeking leave to take discovery did Plaintiffs suggest they would seek such information or explain its relevance. The Court should reject this Request.

---

[4] For purposes of this Opposition, the Government interprets "communications," to be limited to communications memorialized in documents, although Plaintiffs' proposed definition includes "the exchange of information through any mode or medium including . . . spoken word [or] face-to-face meetings." Dkt. No. 776-2 at 2.

Interrogatory 7 is similarly overbroad and largely irrelevant to PI Compliance. That Interrogatory asks the Government to describe steps or actions that the Government "plans to take, is taking, or has taken to obtain copies of waitlists." Dkt. No. 77-61 at 7. As the Government has previously argued, neither the PI nor the October 30 Order requires the Government to take affirmative steps to obtain waitlists from other entities. Instead, the October 30 Order contemplates that Defendants "review their own records to aid in the identification of class members." *See* October 30 Order (Dkt. No. 605) at 22-23. And there is no serious dispute that the waitlists are not Defendants' own records. *See generally* Opp. to Mot. to Enforce (Dkt. No. 657) at 14-15. Because this Interrogatory thus seeks information about steps that are not required by the PI Orders, it will not lead to evidence concerning PI compliance.

Accordingly, the Court should reject both Request for Production 3 and Interrogatory 7 as overbroad and not limited to the scope of discovery requested by Plaintiffs and granted by the Court.

### III.    Request for Production 7 Seeks Largely Irrelevant and Sensitive Removal and Flight Information.

The Court should decline to approve Plaintiffs' Request for Production 7 because it is extremely overbroad and seeks irrelevant and sensitive removal and flight information. To the extent that Plaintiffs request removal information about potential PI class members through this Request, such information can be—and in many cases has already been—produced by the Government without revealing sensitive information about removal operations or the personal information of numerous individuals who cannot possibly be PI class members.

As written, Request for Production 7 is extremely overbroad. The Request seeks "All Documents Relating To the names and other identifying information of persons who were on, or are scheduled to be on, removal flights from the United States from July 16, 2019 to March 5, 2021, including flight manifests and information on the flight's point of origin, destination, and the date and time the flight

was or is scheduled to take off from the United States." Dkt. Not. 776-2 at 7-8. Plaintiffs do not attempt to limit this request to actual or potential PI class members in any way, which is already grounds to deny the request. *In re Midland Credit Management, Inc., Telephone Consumer Protection Act Litigation*, No. 11-md-2286-MMA (MDD), 2020 WL 6504416, at *8 (S.D. Cal. Nov. 5, 2020). As written, the request would include private information about all individuals who were removed over a period of almost two years, including those who entered well before July 16, 2019, who entered through the Northern border or by air, or others to whom the Government had no occasion to apply the transit rule and who could not possibly be PI class members. *See* PI (ECF No. 330) at 36 (certifying a provisional class of "all non-Mexican asylum-seekers who were unable to make a direct asylum claim at a U.S. POE before July 16, 2019, because of the U.S. Government's metering policy, and who continue to seek access to the U.S. asylum process").

Plaintiffs also do not place appropriate temporal limits on the Request, as they ask for documents about removal flights that predate the issuance of the PI. *See* Dkt. No. 330 (granted on November 19, 2019). They also seek to include removal flights that were conducted while the Ninth Circuit had stayed the PI. *See Al Otro Lado v. Wolf*, 945 F.3d 1223, 1224 (9th Cir. 2019) (granting a temporary stay of the injunction on December 20, 2019) *and Al Otro Lado v. Wolf*, 952 F.3d 999 (9th Cir. 2020) (denying stay pending appeal, thereby terminating temporary stay on March 5, 2020). These removals could not possibly lead to evidence of noncompliance with the PI Orders, as the PI was not in effect at those times.

Even if the parties were to narrow the scope of this request, Plaintiffs' request would be unduly burdensome and duplicative because the Government can and has provided the date that potential PI class members were removed from the United States as reflected in its electronic records, without divulging detailed and sensitive information about removal flights (such as the location and times of departures). Indeed, the Government has already produced data about executed removal orders

as of April 3, 2021, for potential PI Class Members who have claimed fear or received a decision on an asylum-related application filed in immigration court. Sampat Decl. ¶ 5.

The Court should thus decline to require the Government to respond to this Request, particularly because, as noted, it seeks sensitive information about removal flights—such as the timing and locations of flights over the course of almost two years—that, when aggregated, would reveal methods of law enforcement removal operations. *See Maria Del Socorro Quintero Perez, CY v. United States*, No. 13cv1418-WQH-BGS, 2016 WL 362508, at *2 (S.D. Cal. Jan. 29, 2016) (acknowledging that the law enforcement privilege is meant to prevent disclosure of law enforcement techniques and procedures) (citing *In re Dep't of Investigation of City of New York*, 856 F.2d 481, 484 (2d Cir. 1988)). Again, this Request overall is insufficiently tailored to seek information concerning PI compliance and amounts to a fishing expedition into the circumstances of removal flights. *See Citizens for Quality Education San Diego v. San Diego Unified School District*, No. 17-cv-1054-BAS-JMA, 2018 WL 1150836, at *5 (S.D. Cal. Mar. 5, 2018) (Bashant, J.).

For these reasons, the Court should reject Request for Production 7.

## CONCLUSION

For the aforementioned reasons, the Court should decline to approve these specific requests, or any other of Plaintiffs' requests that the Court deems are unduly burdensome or fall outside the scope of its limited grant of discovery into PI compliance.


DATED: November 29, 2021             Respectfully submitted,

                                     BRIAN M. BOYNTON
                                     Acting Assistant Attorney General
                                     Civil Division

WILLIAM C. PEACHEY
Director

SAMUEL P. GO
Assistant Director

KATHERINE J. SHINNERS
Senior Litigation Counsel

*s/ Dhruman Y. Sampat*
DHRUMAN Y. SAMPAT
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4281 | Fax: (202) 305-7000
dhruman.y.sampat@usdoj.gov

*Counsel for Defendants*

GOV'T'S OPPOSITION TO
PLAINTIFFS' DISCOVERY REQUESTS
Case No. 3:17-cv-02366-BAS-KSC

# CERTIFICATE OF SERVICE

*Al Otro Lado v. Mayorkas*, No. 17-cv-02366-BAS-KSC (S.D. Cal.)

I certify that I served a copy of this document on the Court and all parties by filing this document with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all counsel of record.

DATED: November 29, 2021          Respectfully submitted,

                                  *s/ Dhruman Y. Sampat*
                                  DHRUMAN Y. SAMPAT
                                  Trial Attorney
                                  United States Department of Justice