MAYER BROWN LLP
   Matthew H. Marmolejo (CA Bar No. 242964)
   *mmarmolejo@mayerbrown.com*
350 S. Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
   Ori Lev (DC Bar No. 452565)
   *(pro hac vice)*
   *olev@mayerbrown.com*
   Stephen M. Medlock (VA Bar No. 78819)
   *(pro hac vice)*
   *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, DC 20006
Telephone: +1.202.263.3000
Facsimile: +1.202.263.3300

SOUTHERN POVERTY LAW CENTER
   Melissa Crow (DC Bar No. 453487)
   *(pro hac vice)*
   *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, DC 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, <br><br>       Plaintiffs,<br><br>v.<br><br>Alejandro Mayorkas,[1] *et al.*,<br><br>       Defendants. | Case No. 3:17-cv-02366-BAS-KSC<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS'** *EX PARTE* **EMERGENCY APPLICATION FOR INJUNCTIVE RELIEF FOR NAMED PLAINTIFF ROBERTO DOE**<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**<br><br>***Declarations of Melissa Crow, Gianna Borroto and Roberto Doe filed Concurrently*** |

---

[1] Secretary Mayorkas is automatically substituted pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
   Baher Azmy (NY Bar No. 2860740)
   (*pro hac vice*)
   *bazmy@ccrjustice.org*
   Angelo Guisado (NY Bar No. 5182688)
   (*pro hac vice*)
   *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
   Sarah Rich (GA Bar No. 281985)
   (*pro hac vice*)
   *sarah.rich@splcenter.org*
   Rebecca Cassler (MN Bar No. 0398309)
   (*pro hac vice*)
   *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
   Karolina Walters (DC Bar No. 1049113)
   (*pro hac vice*)
   *kwalters@immcouncil.org*
   Gianna Borroto (IL Bar No. 6305516)
   (*pro hac vice*)
   *gborroto@immcouncil.org*
1331 G St. NW, Suite 200
Washington, DC 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................. 1

II. RELEVANT BACKGROUND ............................................................................. 1

III. ARGUMENT ........................................................................................................ 4

    A. Plaintiff Roberto Doe suffered and continues to suffer irreparable injury from Defendants' illegal turnback ......................... 5

    B. Legal remedies are inadequate to compensate for Defendants' illegal turnback of Roberto Doe ........................................................... 6

    C. The balance of hardships and the public interest weigh heavily in favor of emergency injunctive relief ................................................. 7

IV. CONCLUSION ..................................................................................................... 8

## I.   INTRODUCTION

Named Plaintiff Roberto Doe, whom Defendants illegally turned back at a Texas Port of Entry ("POE") in 2018 and whom Mexican authorities later detained and deported to the country he fled, is living in hiding and is in fear for his life as the situation in Nicaragua spirals toward dictatorship. He cannot obtain documents to travel through Mexico to return to the United States border and present himself at a POE to seek asylum in the U.S. He also cannot continue to live in hiding in his home country of Nicaragua without running a serious risk of being discovered and harmed by a government he actively opposes. This Court has ruled that Defendants' turning back and metering of asylum seekers are unlawful and unconstitutional. Roberto Doe would not be in this situation but for the illegal conduct of Defendants, and Defendants should put Roberto Doe back in the position he would have been in absent their illegal turnback.

Because of the dire circumstances in which Roberto Doe finds himself currently, Plaintiffs are filing this emergency motion to request that the Court grant injunctive relief requiring Defendants to provide Roberto Doe with the necessary documents or other sufficient permission to travel on a commercial airline to the United States so that he may access the asylum process and grant him access to the asylum process under the rules and regulations governing the asylum process that would have applied to him at the time of his arrival in the United States.

## II.   RELEVANT BACKGROUND

In October 2018, Defendants illegally turned back named Plaintiff Roberto Doe at the Hidalgo POE. Doe Decl. ¶¶ 3-5; *see also Al Otro Lado, Inc. v. Mayorkas*, 2021 WL 3931890, at *18 (S.D. Cal. 2021) (finding turnbacks illegal "regardless of [Defendants'] purported justification"). Specifically, when the group he was with told a U.S. immigration official stationed at the mid-point of the Reynosa-Hidalgo bridge that they wanted to seek asylum, the official stated that the port was "all full"

and that Mr. Doe and others in his group could not enter. Doe Decl. ¶ 3. At the time, he heard both U.S. and Mexican officials conferring with one another and discussing how they collaborated to detain and deport migrants. *Id.* ¶ 4.

After Plaintiffs' counsel negotiated with Defendants' counsel, Defendants agreed to allow Roberto Doe to present himself at the same POE on a designated date and at a specific time. *Id.* ¶ 6; Crow Decl. ¶ 17. As Roberto Doe approached the POE from the Mexican side of the international bridge, he was stopped by Mexican immigration authorities, who proceeded to detain him and later deport him to the country he had fled, Nicaragua. Doe Decl. ¶¶ 7-8.

While Mr. Doe was detained in Mexico, Plaintiffs' counsel pursued various avenues to advocate for his release so that he could return to the border and present himself at a POE. Crow Decl. ¶¶ 9-13. In particular, Plaintiffs' counsel requested that Defendants provide Mexican immigration authorities with written documentation of the existing agreement to allow Mr. Doe to present himself at a U.S. POE to access the asylum process—something that Plaintiffs' counsel believed to be necessary for the Mexican authorities to release Mr. Doe. *Id.* at ¶ 11. Defendants refused multiple times to do so, and Mr. Doe was ultimately deported from Mexico. *Id.* at ¶ 14.

For nearly three years, as this case has progressed through discovery, class certification, and summary judgment, Roberto Doe has been living in hiding, trying to find a way to return to the U.S.-Mexico border to present himself at a POE in order to seek asylum in the United States. Doe Decl. ¶ 9. The situation in Nicaragua is becoming increasingly dangerous for known government opponents like him,[2] and he is afraid to remain in the country any longer, even in hiding. Doe Decl. ¶ 10. A list of government enemies is circulating in the country, and police and government-

---

[2] *See Nicaragua: Crackdown on Critics Ahead of Election*, HUMAN RIGHTS WATCH (Jun. 22, 2021), https://www.hrw.org/news/2021/06/22/nicaragua-crackdown-critics-ahead-election.

affiliated paramilitaries are arresting those who appear on the list. *Id.*[3] Roberto Doe's sister informed him that his name is on that list and that police or paramilitaries are looking for him in his hometown. Doe Decl. ¶ 10. Mr. Doe no longer believes that he can remain in Nicaragua, not even in hiding, without running an unacceptable risk of serious harm or even death at the hands of the government. *Id.*

Roberto Doe still wants to apply for asylum in the United States. *Id.* He has attempted to obtain a visa or other transit permit from Mexico, which has refused to issue him one, making any travel through Mexico even more dangerous for him—especially given that Mexico has already "refouled" him once to the country he fled. *Id.* ¶ 9. Al Otro Lado has also attempted to advocate with the Mexican government on Roberto Doe's behalf, but those efforts have been fruitless. Crow Decl. ¶¶ 9-10.

Plaintiffs' counsel have on several occasions requested that Defendants issue the necessary travel documents to allow Roberto Doe to travel to the U.S. by air, to avoid a dangerous and unpermitted overland trip through Mexico. Borroto Decl. ¶ 6. Each time Plaintiffs' counsel has made this request, Defendants refused. *Id.*

This Court ruled in September that Defendants' conduct in turning back and metering asylum seekers was illegal under the INA, the APA, and the Constitution. *Al Otro Lado*, 2021 WL 3931890, at *23. The parties filed additional briefing on

---

[3] Nicaragua's descent into dictatorship, including the existence of a list of political enemies of Pres. Daniel Ortega, is well-documented. *See, e.g.*, Amnesty Int'l, *Nicaragua: Announcement of Ortega's Re-election Augurs a Terrible New Cycle for Human Rights* (Nov. 8, 2021), https://www.amnesty.org/en/latest/news/2021/11/nicaragua-announcement-of-ortegas-re-election-augurs-a-terrible-new-cycle-for-human-rights/; Yubelka Mendoza and Natalie Kitroeff, *Nicaragua Descends Into Autocratic Rule as Ortega Crushes Dissent*, N.Y. TIMES (Nov. 7, 2021), https://www.nytimes.com/2021/11/07/world/americas/nicaragua-election-ortega.html; Yubelka Mendoza et al., *'Everyone Is on the List': Fear Grips Nicaragua as It Veers to Dictatorship*, N.Y. TIMES (Sept. 5, 2021), https://www.nytimes.com/2021/09/05/world/nicaragua-political-repression.html.

remedies in October. In that briefing, Plaintiffs specifically requested that the Court order Defendants to issue Roberto Doe (and any other named plaintiffs in a similar situation) "the documentation necessary to arrive in the United States and access the U.S. asylum process" and rule that changes to rules or regulations affecting access to the asylum process effective between the time a person was initially turned back and the time she ultimately entered the United States be inapplicable to that person's case. ECF 768 at 11-12. The parties have fully briefed the remedies issues and are awaiting the Court's decision. However, in the meantime, Roberto Doe is living in hiding and in fear of persecution and believes that he is in imminent danger. Defendants' violations of his rights remain unremedied. Given the deteriorating situation in Nicaragua, and Roberto Doe's fear for his life, Plaintiffs are now requesting that the Court order the requested injunctive relief on an emergency basis, even before it adjudicates the propriety of the other relief sought by Plaintiffs.

## III.   ARGUMENT

Where, as here, the Court has already ruled that Defendants' conduct violated the law and the Constitution, the only question is one of proper remedy. Had Defendants not illegally turned back Mr. Doe when he first arrived in the United States to seek asylum, he would have had his asylum claim heard on the merits. Instead, he finds himself back in his country of persecution, in fear for his life. Equity requires that Defendants take steps to restore Mr. Doe to the position he would have been in but for Defendants' illegal conduct. See Melendres v. Maricopa Cty., 897 F.3d 1217, 1221 (9th Cir. 2018) ("injunctive relief must be tailored to remedy the specific harm alleged") (internal quotations omitted); Califano v. Yamasaki, 442 U.S. 682, 702 (1979) ("injunctive relief should be no more burdensome to the defendants than necessary to provide *complete relief* to the plaintiffs") (emphasis added); *see also United States v. N.Y. Tel. Co.,* 434 U.S. 159, 173 (1977) (All Writs Acts ("AWA") allows a federal court to "avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound

judgment to achieve the ends of justice entrusted to it"); ECF 330 at 19 ("AWA provides this Court with the ability to construct a remedy to right a 'wrong [which] may [otherwise] stand uncorrected.'") (*quoting United States v. Morgan*, 346 U.S. 502, 512 (1954)).

Moreover, emergency injunctive relief is appropriate here because Plaintiff Roberto Doe suffered and continues to suffer irreparable injury, legal remedies are inadequate to compensate for that injury, the balance of hardships warrants an equitable remedy, and the public interest would not be disserved by such emergency injunctive relief. *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 977 (9th Cir. 2017); *eBay Inc. v. MercExchange*, *L.L.C.*, 547 U.S. 388, 391 (2006).

### A. Plaintiff Roberto Doe suffered and continues to suffer irreparable injury from Defendants' illegal turnback

Plaintiff Roberto Doe clearly suffered an irreparable injury when Defendants turned him back that cannot be remedied absent injunctive relief. "[T]he record is replete with uncontroverted evidence that Defendants' interpretation of their inspection and referral duties under the statute creates multiple logistical hurdles for [arriving] migrants seeking asylum" and that Defendants' failure to comply with their statutory obligations forces asylum seekers to wait in Mexico, where they risk kidnapping, assault, and death. *Al Otro Lado*, 2021 WL 3931890, at *17. Indeed, Roberto Doe was detained by Mexican immigration authorities for four months, and then deported to the country where he feared persecution—an irreparable harm if there ever was one. *See Leiva-Perez v. Holder*, 640 F.3d 962, 969 (9th Cir. 2011) (prospect that individual will be in physical danger if returned to home country may constitute component of irreparable harm); *Orantes-Hernandez v. Meese*, 685 F. Supp. 1488, 1504 (C.D. Cal. 1998) (finding plaintiffs would suffer irreparable harm if summarily removed from the United States without the opportunity to apply for asylum and relief from deportation, in part because, "[r]emoval to a country overrun with civil war, violence, and government-sanctioned terrorist organizations may lead

745196174.4                                -5-

to the most serious of deprivations"), *aff'd sub nom. Orantes-Hernandez v. Thornburgh,* 919 F.2d 549 (9th Cir. 1990).

When they turned back Roberto Doe at the mid-point of the bridge after learning that he was seeking asylum, Defendants violated his right to access the asylum process as well as his Fifth Amendment due process rights. *Al Otro Lado*, 2021 WL 3931890 at *18, *20. Both the deprivations of his rights and the risks that he has been forced to endure subsequently constitute irreparable harm. *See Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991) (infringement of a constitutional right alone may constitute irreparable injury); *Leiva-Perez*, 640 F.3d at 969. Moreover, asylum seekers who were turned back prior to a change in rule or law inhibiting their access to the asylum process, and who are later subject to the new rule or law because of their delayed entry into the United States, lose the legal rights to which they would have been entitled but for the turnback.[4]

**B.   Legal remedies are inadequate to compensate for Defendants' illegal turnback of Roberto Doe**

Legal remedies are inadequate to remedy Defendants' turnback of Roberto Doe, because there is no way to calculate the damages resulting from the denial of his rights, the threats to his physical safety, or the necessity of living in hiding for three years while fearing for his life. *See Walters v. Reno*, 145 F.3d 1032, 1048 (9th Cir. 1998) (granting equitable relief in part because "[t]here is no way to calculate the value of such a constitutional deprivation or the damages that result from

---

[4] The Court recognized this principle with regard to the Asylum Ban at issue in the preliminary injunction currently in place, when it ordered Defendants to "return to the pre-Asylum Ban practices for processing the asylum applications of members of the certified [PI] class." ECF 330 at 36; *see also id.* at 34 ("But for the Government's metering policy, these asylum-seekers would have entered the United States and started the asylum process without delay. . . . under the law in place at the time of their metering . . . .").

erroneous deportation"). No amount of money can substitute for his physical safety and the ability to have his asylum claim heard on the merits.

Nor would an order simply prohibiting Defendants from turning Mr. Doe away again suffice to remedy the harm he has suffered or to restore him to the position he would have been in but for Defendants' unlawful conduct.[5] Defendants' initial—and illegal—refusal to carry out their statutorily mandated duties to inspect and process Mr. Doe led directly to his detention by and deportation from Mexico. Doe Decl. ¶¶ 7-8. This was a foreseeable result. Crow Decl. ¶ 4. Defendants had multiple opportunities to remedy this situation in October 2018 but refused to take simple steps that likely would have prevented Mr. Doe's refoulement to Nicaragua. Crow Decl. ¶¶ 4-13. As discussed above, Mr. Doe attempted to obtain travel documents to allow him to return to the U.S.-Mexico land border but has been unable to do so. Doe Decl. ¶ 9. Given his prior deportation from Mexico, he is unlikely to reach the U.S. border again without encountering Mexican immigration officials and being deported again. Under the circumstances, his only realistic option for again arriving in the United States and accessing the asylum process is via air travel; but such travel necessitates travel documents issued by the US government that would enable him to board an aircraft.

### C. The balance of hardships and the public interest weigh heavily in favor of emergency injunctive relief

Both the balance of equities and the public interest weigh in Plaintiffs' favor. "[I]t is clear that it would not be equitable or in the public's interest to allow the [government] to violate the requirements of federal law, especially when there are no adequate remedies available." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th

---

[5] The court need not decide whether such relief is authorized under Section 706(1) of the APA, as it is clearly available for the due process violation, *see Melendres*, 897 F.3d at 1221; *Califano*, 442 U.S. at 702, and pursuant to the All Writs Act, *N.Y. Tel. Co.,* 434 U.S. at 173; *Morgan*, 346 U.S. at 512.

Case 3:17-cv-02366-BAS-KSC   Document 786-1   Filed 12/08/21   PageID.70453
Page 11 of 13

1 | Cir. 2013) (first alteration in original; ellipses and internal quotation marks omitted).
Moreover, it is difficult to imagine a burden on Defendants that could outweigh protection of Plaintiffs' legal rights, *see Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (preventing violation of constitutional rights is always in the public interest), or the substantial risk that Mr. Doe will be the victim of persecution or violence should he continue to be unable to access the U.S. asylum process, *see Al Otro Lado*, 2021 WL 3931890, at *17.

As with the Asylum Ban, this Court should direct that Mr. Doe should be treated as though he had accessed the asylum process on the date he first attempted to arrive at a POE and should order Defendants to process him under the rules and regulations that existed as of that date. In this context, that means that if Roberto Doe was turned back before the U.S. government issued orders restricting the processing of asylum seekers under Title 42 or prior to the implementation of the Migrant Protection Protocols ("MPP"), then those orders should not apply to him.

Accordingly, named Plaintiff Roberto Doe is entitled to emergency injunctive relief. Specifically, Plaintiffs request that the Court order that Defendants provide Roberto Doe with the documentation or other sufficient permission necessary to arrive in the United States by commercial airline and access the U.S. asylum process, that Defendants provide that documentation or other permission within two days of the Court's order, and that Defendants afford Mr. Doe access to the U.S. asylum process in accordance with the rules and regulations that existed when he first arrived in the United States and was illegally turned back by Defendants (October 2, 2018).

## **CONCLUSION**

For the foregoing reasons, emergency injunctive relief should be granted to Named Plaintiff Roberto Doe, and the Court should enter the proposed order submitted by Plaintiffs.

Dated: December 8, 2021

MAYER BROWN LLP
  Matthew H. Marmolejo
  Ori Lev
  Stephen M. Medlock

SOUTHERN POVERTY LAW CENTER
  Melissa Crow
  Sarah Rich
  Rebecca Cassler

CENTER FOR CONSTITUTIONAL RIGHTS
  Baher Azmy
  Angelo Guisado

AMERICAN IMMIGRATION COUNCIL
  Karolina Walters
  Gianna Borroto

By: */s/ Ori Lev*
  Ori Lev

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that I caused a copy of the foregoing document to be served on all counsel via the Court's CM/ECF system.

Dated: December 8, 2021          MAYER BROWN LLP

By */s/ Ori Lev*

745196174.4

-10-