BRIAN M. BOYNTON
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>ALEJANDRO MAYORKAS, Secretary of Homeland Security, *et al.*, in their official capacities,[*]<br><br>    *Defendants*. | Case No. 3:17-cv-02366-BAS-KSC<br><br>Hon. Cynthia A. Bashant<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' *EX PARTE* EMERGENCY APPLICATION FOR RELIEF FOR NAMED PLAINTIFF ROBERTO DOE** |

---

[*] Pursuant to Federal Rule of Civil Procedure 25(d), Secretary Mayorkas is automatically substituted as a Defendant for former Acting Secretary Wolf.

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................ ii

INTRODUCTION ....................................................................1

BACKGROUND .....................................................................1

ARGUMENT .......................................................................7

   I.     Defendants Have Agreed in Principle to Use Parole Authority
         To Allow Roberto Doe To Fly Commercially to the United
         States and To Process Him Under Title 8 in Accordance with
         Their Prior Agreement, But Additional Time is Needed to
         Complete that Process. ...................................................7

   II.    Plaintiffs' Requested Order is Not Appropriate Relief for
         Roberto Doe's Individual Claims...........................................11

         A.     Roberto Doe is Not Entitled to Parole or Facilitation of
              Air Travel Under this Court's MSJ Order. ..................................12

         B.     The Court Should Not Order Relief Concerning How to
              Apply Rules and Regulations that Were Not at Issue in
              this Case. ..............................................................15

CONCLUSION ....................................................................18

# TABLE OF AUTHORITIES

## Federal Cases

*Al Otro Lado v. Nielsen*,
327 F. Supp. 3d 1284 (S.D. Cal. 2018) ..........................................................17

*Al Otro Lado, Inc. v. McAleenan*,
423 F. Supp. 3d 848 (S.D. Cal. 2019) ............................................................17

*Andrade-Garcia v. Lynch*,
828 F.3d 829 (9th Cir. 2016) ..........................................................................8

*Califano v. Yamasaki*,
442 U.S. 682 (1979)................................................................................ 13, 14

*Ctr. for Biological Diversity v. Zinke*,
260 F. Supp. 3d 11 (D.D.C. 2017).................................................................13

*Damus v. Nielsen*,
313 F. Supp. 3d 317 (D.D.C. 2018).................................................................9

*DHS v. Thuraissigiam*,
140 S. Ct. 1959 (2020).....................................................................................13

*Hassan v. Chertoff*,
593 F.3d 785 (9th Cir. 2010) ...........................................................................9

*Hobby Lobby Stores, Inc. v. Sebelius*,
568 U.S. 1401 (2012) .....................................................................................14

*INS v. Cardoza-Fonseca*,
480 U.S. 421 (1987).........................................................................................17

*Kiyemba v. Obama*,
555 F.3d 1022 (D.C. Cir. 2009).......................................................................9

*Leyva v. Certified Grocers of Calif., Ltd.*,
593 F.2d 857 (9th Cir. 1979) .........................................................................10

*Lopez v. Am. Express Bank, FSB*,
No. 09-cv-7335, 2010 WL 3637755 (C.D. Cal. Sept. 17, 2010) .................10

*Lopez v. DHS,*
    No. 20-cv-1063, 2021 WL 2079840 (D. Ariz. Jan. 28, 2021) ....................9

*Makekau v. Hawaii,*
    943 F.3d 1200 (9th Cir. 2019) ................................................ 14, 15

*Melendres v. Maricopa County,*
    897 F.3d 1217 (9th Cir. 2018) ................................................ 13, 14

*Norton v. S. Utah Wilderness All.,*
    542 U.S. 55 (2004).................................................................13

*Orantes-Hernandez v. Thornburgh,*
    919 F.2d 549 (9th Cir. 1990) ................................................ 12, 14

*Ortiz v. INS,*
    179 F.3d 1148 (9th Cir. 1999) ..............................................18

*Otarola v. INS,*
    270 F.3d 1272 (9th Cir. 2001) ..............................................18

*Padilla v. ICE,*
    953 F.3d 1134 (9th Cir. 2020) ................................................9

*Rodriguez v. Robbins,*
    715 F.3d 1127 (9th Cir. 2013) ................................................8

*Scott v. Schedler,*
    826 F.3d 207 (5th Cir. 2016) ................................................16

*Thomas v. Cty. of Los Angeles,*
    978 F.2d 504 (9th Cir. 1992) ................................................16

*Torres v. Barr,*
    976 F.3d 918 (9th Cir. 2020) ................................................9

*United States v. Morgan,*
    346 U.S. 502 (1954................................................................15

*United States v. New York Telephone Co.,*
    434 U.S. 159 (1977)..............................................................15

DEFS.' OPP. TO PLS.' *EX PARTE* APP.
FOR RELIEF FOR ROBERTO DOE
Case No. 3:17-cv-02366-BAS-KSC

*United States v. Wong*,
    373 F.3d 952 (9th Cir. 2004) ........................................................................13

*Urbina-Mauricio v. INS*,
    989 F.2d 1085 (9th Cir. 1993) ....................................................................18

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008)........................................................................................12

**<u>Federal Statutes</u>**

5 U.S.C. § 706(1) ..............................................................................................12

6 U.S.C. § 251 .....................................................................................................8

6 U.S.C. § 552(d) ................................................................................................8

8 U.S.C. § 1158(b)(2)(C) ..................................................................................17

8 U.S.C. § 1182(d)(5)(A) ....................................................................................8

8 U.S.C. § 1225(b)(2)(C) ............................................................................ 10, 15

8 U.S.C. § 1323(a)(1)......................................................................................7, 8

28 U.S.C. § 1651(a) ..........................................................................................14

**<u>Federal Regulations</u>**

8 C.F.R. § 103.2(b)(1)........................................................................................18

8 C.F.R. § 212.5(f) ..............................................................................................8

8 C.F.R. § 273.3(b) ..............................................................................................8

19 C.F.R. § 122.49a(d).........................................................................................8

**<u>Federal Rules</u>**

Fed. R. Civ. P. 65(d)(1).............................................................................. 12, 16

**<u>Administrative Materials</u>**

*Matter of E-R-M- & L-R-M-*,
    25 I. & N. Dec. 520 (BIA 2011) ................................................................12

Public Health Reassessment and Order Suspending the Right To Introduce
    Certain Persons From Countries Where a Quarantinable
    Communicable Disease Exists,
    86 Fed. Reg. 42,828 (Aug. 5, 2021) ....................................................... 10, 15

## INTRODUCTION

Plaintiffs filed their *Ex Parte* Emergency Application for Injunctive Relief for Named Plaintiff Roberto Doe (ECF No. 786) (App.) and accompanying Memorandum in Support (ECF No. 786-1) (Mem.), asking the Court to compel the Department of Homeland Security (DHS) to exercise its discretionary parole authority to permit Roberto Doe to travel by commercial flight to the United States from abroad and issue travel documents within two days of the Court's order, and to provide him "access to the U.S. asylum process in accordance with the rules and regulations that existed when he first arrived in the United States" on October 2, 2018, Mem. 8.

Although Defendants do not concede that the relief Plaintiffs seek for Roberto Doe's individual claims is appropriate relief to address any violation found by this Court, Defendants have communicated to Plaintiffs that they agree to provide much of the requested relief as an extension of their prior agreement with Roberto Doe, in order to resolve this dispute and in the hopes of avoiding continued motion practice and the expense of judicial resources. *See* Decl. of Alexander J. Halaska ¶ 53 (filed concurrently). Thus, as set forth below, the Court need not address the majority of Plaintiffs' request for relief, and Defendants remain hopeful that the parties can resolve this motion without any Court intervention.

## BACKGROUND

Named Plaintiff Roberto Doe is a national of Nicaragua who has previously entered the United States without inspection at least three times and has been ordered removed from the United States. *See* Exs. 18–23 to Defs.' Opp. to Pls.' Mot. for Provisional Class Certification (ECF Nos. 308-19–308-24). DHS first encountered Roberto Doe in 2002 in Douglas, Arizona, and granted him voluntary return to Mexico (as Roberto had claimed to be a Mexican national). *See* Ex. 18 to Defs.' Opp. to Pls.' Mot. for Provisional Class Certification (ECF No. 308-19). DHS encountered Roberto again in Texas in 2005, issued him a Notice to Appear, and placed him in removal proceedings under 8 U.S.C. § 1229a. *See* Exs. 18, 19 to Defs.' Opp. to Pls.'

Mot. for Provisional Class Certification (ECF Nos. 308-19, 308-20). Roberto failed to appear for his removal proceedings, and on June 15, 2005, an immigration judge ordered him removed *in absentia*. *See* Ex. 20 to Defs.' Opp. to Pls.' Mot. for Provisional Class Certification (ECF No. 308-21). In December 2006, Roberto was eventually apprehended and removed to Nicaragua. *See* Ex. 21 to Defs.' Opp. to Pls.' Mot. for Provisional Class Certification (ECF No. 308-22). In November 2011, Roberto Doe was encountered in Texas, having again entered the United States without inspection. *See* Ex. 22 to Defs.' Opp. to Pls.' Mot. for Provisional Class Certification (ECF No. 308-23). DHS reinstated Roberto Doe's prior removal order, *see* 8 U.S.C. § 1231(a)(5), and removed him from the United States in December 2011. *See* Exs. 21, 23 to Defs.' Opp. to Pls.' Mot. for Provisional Class Certification (ECF Nos. 308-22, 308-24).

Roberto Doe asserts that he left Nicaragua in September 2018 and arrived in Reynosa, Tamaulipas, Mexico on September 29, 2018, after receiving a "legal visa to travel in Mexico." Decl. of Roberto Doe ¶¶ 3–4, 7 (Oct. 10, 2018) (ECF No. 293-17). He states that on October 2, 2018, he approached the Hidalgo Port of Entry (POE) but was told by U.S. officials at the middle of the bridge leading to the United States that the Port was "all full" and that he could not enter at that time. *Id.* ¶¶ 4–5. Roberto does not state that he crossed the border into the territorial United States. *See id.* ¶¶ 1–11. Roberto asserts that he was subsequently escorted to an office by Mexican officials, where a Mexican official told him he could not apply for asylum in the United States, but that he "could apply for a humanitarian visa" in Mexico. *Id.* ¶¶ 7, 9–10.

In October 2018, after Plaintiffs filed their First Amended Complaint, Defendants agreed to allow Roberto Doe and the other newly added Named Plaintiffs and their family members to enter the United States for processing if they presented themselves at POEs. *See* Second Am. Compl. ¶ 159 (ECF No. 189) (SAC); Halaska Decl. ¶ 6; *see also* Decl. of Melissa Crow ¶ 4 (ECF No. 786-3); Decl. of Roberto

DEFS.' OPP. TO PLS.' *EX PARTE* APP.
FOR RELIEF FOR ROBERTO DOE
Case No. 3:17-cv-02366-BAS-KSC

Doe ¶ 6 (Dec. 3, 2021) (ECF No. 786-2). All but one of the newly added Named Plaintiffs and their family members ultimately crossed into the United States pursuant to this agreement with little or no incident. *See* Halaska Decl. ¶¶ 15, 20. Roberto Doe, however, was stopped and detained by Mexican officials on the Mexican side of the Hidalgo bridge and was held in their custody. Roberto Doe Decl. ¶ 7 (ECF No. 786-2).

Although Defendants had not agreed to coordinate with third parties to facilitate any Named Plaintiffs' entry to the United States, Defendants' counsel communicated extensively with Plaintiffs' counsel to provide information to assist Plaintiffs' counsel in engaging with Mexican immigration officials to facilitate Roberto Doe's entry at the Hidalgo POE. *See* Halaska Decl. ¶¶ 15–36. Plaintiffs' counsel repeatedly indicated over the course of these communications that they believed Roberto Doe could be released from Mexican officials' custody at any moment. *See, e.g.*, *id.* ¶¶ 15, 21, 23, 26. At one point, Plaintiffs' counsel reported that Roberto Doe was being removed to Nicaragua and asked if the U.S. government would intercede or verify in writing Defendants' agreement to allow Roberto Doe to cross into the United States for processing. *See id.* ¶ 36. However, later that same day—and before Defendants could provide a response to these requests—Plaintiffs reported that Roberto Doe was being transported by Mexican officials from Veracruz to the Hidalgo POE. *Id.* Over the next two days, Defendants' counsel worked again to help prepare for Roberto Doe's arrival at the border and to facilitate oral communications between Mexican immigration officials and U.S. Customs and Border Protection (CBP) officials to confirm CBP's agreement that Roberto Doe would be processed if he arrived at the Hidalgo POE. *Id.* ¶¶ 21–34, 36. After Mexican immigration authorities apparently declined to bring Roberto Doe to the POE, Plaintiffs requested "CBP to send a letter [to Mexican immigration] confirming that [Roberto Doe] has permission to cross into the U.S." *Id.* ¶ 35. Defendants declined to take additional measures outside

DEFS.' OPP. TO PLS.' *EX PARTE* APP.
FOR RELIEF FOR ROBERTO DOE
Case No. 3:17-cv-02366-BAS-KSC

the scope of the parties' agreement or to affirmatively intercede in Mexico's enforcement of its own domestic laws, but reiterated that Defendants would honor their agreement with Plaintiffs if given advance notice of Roberto Doe's presentation at a POE. *Id.* ¶ 36.

In October 2019, Roberto Doe reported that he was "living in hiding in a Latin American country" and that he "still intend[ed] to seek asylum in the United States by presenting [himself] at a port of entry on the U.S.-Mexico border. Decl. of Roberto Doe ¶¶ 6–7 (Oct. 21, 2019) (ECF No. 316-3).

Plaintiffs did not revisit the parties' agreement regarding the Named Plaintiffs for almost two years, until Plaintiffs' counsel, in July 2021, informed Defendants' counsel that Roberto Doe would "likely be presenting at the San Ysidro POE within the next week." Halaska Decl. ¶ 37. Defendants confirmed that Roberto Doe would be processed if he presented himself at the San Ysidro POE, consistent with the parties' prior agreement, and that he must submit a negative COVID test. *Id.* ¶ 38. Several days later, Plaintiffs asked whether Defendants would be "able to provide a letter or other written confirmation stating that Roberto will be inspected and processed at the POE when he arrives," and alternatively asked the government to permit Roberto to fly directly into the United States. *Id.* ¶ 39. Defendants responded that the written communication between counsel could serve as written confirmation that Roberto Doe would be inspected and processed when he presented himself at a POE, and that facilitation of air travel was not part of the original agreement and would typically require the issuance of a U.S. travel document. *Id.* ¶ 40. Plaintiffs' counsel stated that they would inform Roberto that the emails between counsel serve as confirmation of the parties' agreement. *Id.* ¶ 41.

On August 2, 2021, Plaintiffs reported: "Roberto is facing unexpected issues in getting to the San Ysidro POE. Our understanding is that it will take at least another several weeks." *Id.* ¶ 44. Plaintiffs confirmed that Roberto would provide a negative COVID test when he presented himself at a POE. *Id.* On August 12, 2021,

DEFS.' OPP. TO PLS.' *EX PARTE* APP.
FOR RELIEF FOR ROBERTO DOE
Case No. 3:17-cv-02366-BAS-KSC

Plaintiffs requested "whether Defendants would agree to allow Roberto to fly directly into a US airport on parole." *Id.* ¶ 45. Defendants declined to facilitate air travel, as that would involve a distinct process and benefit that was not part of the original agreement. *Id.* ¶ 46.

On September 2, 2021, this Court issued its Order Granting in Part and Denying in Part Plaintiffs' Motion for Summary Judgment and Granting in Part and Denying in Part Defendants' Cross-Motion for Summary Judgment (ECF No. 742) (MSJ Order). The Court granted summary judgment for Plaintiffs with respect to their claims under the Administrative Procedure Act (APA), 5 U.S.C. § 706(1), and the Due Process Clause. The Court held that 8 U.S.C. §§ 1158(a)(1) and 1225 "appl[y] to migrants who are in the process of arriving, which includes aliens who have not yet come into the United States, but who are attempting to do so and may still be physically outside the international boundary line at a POE," MSJ Order at 19 (citation and quotation marks omitted), and that "turning back asylum seekers at POEs without inspecting and referring them upon their arrival unlawfully withholds Defendants' statutory duties under 8 U.S.C. § 1158(a)(1) and § 1225," *id.* at 33–34. The Court further held that, "[b]ecause Defendants' turning back of asylum seekers unlawfully withholds their duties under statute, it violates the process due to class members." *Id.* at 38. The parties submitted supplemental briefing on the appropriate remedy, and a remedy order remains pending.

On December 2, 2021, Plaintiffs' counsel informed Defendants' counsel that Plaintiffs intended to seek an order directing Defendants to "issue [Roberto Doe] travel papers that would enable him to board a flight to the United States." Halaska Decl. ¶ 47. The parties met and conferred. Although on December 6, 2021, Defendants reported that they declined the request, Defendants' counsel informed Plaintiffs' counsel on December 7 that Defendants were "still actively considering Plaintiffs' request to issue travel papers to allow Roberto Doe to board a plane to resolve the current dispute," but could not state when Defendants would reach a final decision.

DEFS.' OPP. TO PLS.' *EX PARTE* APP.
FOR RELIEF FOR ROBERTO DOE
Case No. 3:17-cv-02366-BAS-KSC

*Id.* ¶ 51.

Plaintiffs filed their *Ex Parte* Application on December 8, 2021. In the Application, Plaintiffs ask the Court to "order that Defendants provide Roberto Doe with the documentation or other sufficient permission necessary to arrive in the United States by commercial airline and access the U.S. asylum process, that Defendants provide that documentation or other permission within two days of the Court's order, and that Defendants afford Mr. Doe access to the U.S. asylum process in accordance with the rules and regulations that existed when he first arrived in the United States and was illegally turned back by Defendants (October 2, 2018)." Mem. at 8. Plaintiffs did not inform Defendants in advance of filing their motion that Plaintiffs would ask the Court to order Defendants to provide travel documentation within two days of the Court's order. Halaska Decl. ¶ 48.[1]

On December 14, 2021, Defendants' counsel informed Plaintiffs' counsel that, "[a]lthough Defendants maintain their position that travel documents are not proper relief for the violations the Court found in its MSJ Order with respect to Roberto Doe or otherwise, to avoid the need for further motions practice, and as an extension of Defendants' prior agreement to inspect and process the Named Plaintiffs at a land POE, Defendants are willing to agree to grant parole to Roberto Doe and issue travel documents that would allow him to board a commercial flight to the United States." *Id.* ¶ 53. Defendants stated that their "offer is made subject to the receipt of further information from Roberto Doe, and barring the revelation of derogatory national security information." *Id.* Defendants requested that Roberto Doe provide "[a] completed and signed USCIS form I-131, Application for Travel Doc-

---

[1] Plaintiffs also did not inform Defendants that Plaintiffs would be filing their request for substantive relief as an *ex parte* application; instead, on December 8, 2021, Plaintiffs informed Defendants that "Plaintiffs will be filing an ex parte application to shorten the briefing schedule concurrently with Plaintiffs' motion for relief." Halaska Decl. ¶ 52.

DEFS.' OPP. TO PLS.' *EX PARTE* APP.
FOR RELIEF FOR ROBERTO DOE
Case No. 3:17-cv-02366-BAS-KSC

ument," a "clear photocopy of a valid, unexpired passport/travel document bio-graphic data page for the applicant," and a "proposed flight itinerary." *Id.* Defendants further offered to process Roberto Doe's application packet within two weeks of receipt of a completed packet. *Id.*

On December 14, 2021, Plaintiffs' counsel stated that they will begin preparing the requested documents and information for Roberto Doe. *Id.* ¶ 54.

## ARGUMENT

**I.    Defendants Have Agreed in Principle to Use Parole Authority To Allow Roberto Doe To Fly Commercially to the United States and To Process Him Under Title 8 in Accordance with Their Prior Agreement, But Additional Time is Needed to Complete that Process.**

Plaintiffs request an order compelling "Defendants [to] provide Roberto Doe with the documentation or other sufficient permission necessary to arrive in the United States by commercial airline and access the U.S. asylum process." Mem. at 8. Defendants recently communicated to Plaintiffs that they intend to provide the necessary permission or documentation to Roberto Doe, subject to the receipt of certain basic application information from Roberto Doe and barring the revelation of derogatory national security information.

Allowing commercial air travel for Roberto Doe under these circumstances would require a grant of parole. Congress made it "unlawful for any person, including any transportation company, or the owner, master, commanding officer, agent, charterer, or consignee of any vessel or aircraft, to bring to the United States from any place outside thereof (other than from foreign contiguous territory) any alien who does not have a valid passport and an unexpired visa." 8 U.S.C. § 1323(a)(1). While it appears that Roberto Doe has a valid Nicaraguan passport, *see* Halaska Decl. ¶ 49, it does not appear that he possesses an unexpired U.S.-issued visa, *see* Roberto Doe Decl. ¶ 9 (ECF No. 786-2); Decl. of Gianna Borroto ¶ 5 (ECF No. 786-4). Consequently, a commercial air carrier would not permit Roberto Doe to board a flight to the United States without some document that authorizes his travel to the

United States. *See* 8 U.S.C. § 1323(a)(1); 8 C.F.R. § 273.3(b) (requiring "embarkation carriers [to] take reasonable steps to prevent the boarding of improperly documented aliens destined to the United States" by verifying noncitizens' documents and "[r]efusing to board any passenger determined to be improperly documented"); 19 C.F.R. § 122.49a(d) (requiring commercial carriers to "compar[e] the travel document presented by the passenger with the travel document information it is transmitting to CBP in accordance with this section in order to ensure that the information is correct, the document appears to be valid for travel to the United States, and the passenger is the person to whom the travel document was issued"). The issuance of such a document would require DHS to grant him parole from outside the United States. *See* 8 U.S.C. § 1323(a)(1); 8 C.F.R. § 212.5(f) (providing that "[w]hen parole is authorized for an alien who will travel to the United States without a visa, the alien shall be issued an appropriate document authorizing travel").

The "parole process," including the decision whether to grant or deny parole, "is purely discretionary." *Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013). The parole statute provides that the Secretary of Homeland Security "may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).[2] Congress has thus "indicated its intent to delegate discretionary authority to the [Secretary] to make . . . parole decisions." *Andrade-Garcia v. Lynch*, 828 F.3d 829, 835 (9th Cir. 2016). As the Ninth Circuit, lower courts in this Circuit, and other courts have consistently held, this means that any decision to grant or decline parole is not subject to judicial review. *See Torres v. Barr*, 976

---

[2] Although the text of Section 1182(d)(5)(A) refers only to the Attorney General, the statute's "functions have been transferred to the Secretary of DHS." *Padilla v. ICE*, 953 F.3d 1134, 1145 n.6 (9th Cir. 2020) (citing 6 U.S.C. §§ 251, 552(d)), *cert. granted, judgment vacated on other grounds*, 141 S. Ct. 1041 (2021).

DEFS.' OPP. TO PLS.' *EX PARTE* APP.
FOR RELIEF FOR ROBERTO DOE
Case No. 3:17-cv-02366-BAS-KSC

F.3d 918, 931 (9th Cir. 2020) (declining to remand a petition for review to the Executive Office for Immigration Review (EOIR) "to determine whether [USCIS] should grant [an] application for parole-in-place under 8 U.S.C. § 1182(d)(5)(A)" because "[n]either we [the Ninth Circuit] nor the agency [EOIR] has jurisdiction over this question"); *Padilla*, 953 F.3d at 1145 ("parole decisions are solely in the discretion of the Secretary of DHS and are not judicially reviewable"); *Hassan v. Chertoff*, 593 F.3d 785, 789–90 (9th Cir. 2010) (affirming the district court's determination that it lacked jurisdiction to consider the revocation of advance parole "because the revocation of advance parole, like the grant of advance parole, is discretionary"); *Lopez v. DHS*, No. 20-cv-1063, 2021 WL 2079840, at *3 (D. Ariz. Jan. 28, 2021) (report and recommendation stating, "[a]s a discretionary decision of the Attorney General . . . the parole decision is not reviewable by this Court."), *report and recommendation adopted*, 2021 WL 2075733 (D. Ariz. May 24, 2021); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 327 (D.D.C. 2018) ("To the extent Plaintiffs are challenging the determinations themselves—*i.e.*, the actual balancing of the merits of each application for parole—this Court agrees that it lacks jurisdiction."). This is consistent with courts' longstanding recognition of "the power to exclude aliens as inherent in sovereignty, necessary for maintaining normal international relations and defending the country against foreign encroachments and dangers—a power to be exercised exclusively by the political branches of government and not granted away or restrained on behalf of any one." *Kiyemba v. Obama*, 555 F.3d 1022, 1025 (D.C. Cir. 2009) (citations and quotation marks omitted), *vacated*, 559 U.S. 131 (2010), and *judgment reinstated as amended*, 605 F.3d 1046 (D.C. Cir. 2010).

Although Plaintiffs do not claim that Roberto Doe had previously made a formal application to DHS for parole, DHS has since communicated to Plaintiffs that it agrees in principle to exercise its authority to grant parole to Roberto Doe as an extension of its prior agreement, subject to receipt of basic flight, passport, and identification information from him and absent the discovery of derogatory information

raising national security concerns. DHS also reported that it agrees to do so expeditiously upon receipt of that basic application information. Accordingly, the Court need not address Roberto Doe's request for documentation sufficient to allow him to board a commercial air flight to the United States.

The Court also need not address Plaintiffs' request that DHS should not apply the Migrant Protection Protocols (MPP) memorandum and the CDC Order promulgated under Title 42 that prevents the introduction of certain covered noncitizens. These would not apply to Roberto Doe by their own terms, because the most recent CDC Order and MPP memorandum do not apply to noncitizens who arrive in the United States at airports. *See* Public Health Reassessment and Order Suspending the Right To Introduce Certain Persons From Countries Where a Quarantinable Communicable Disease Exists, 86 Fed. Reg. 42,828, 42,829 (Aug. 5, 2021) (CDC Order) ("The instant Order continues the suspension of the right to introduce 'covered noncitizens' . . . into the United States *along the U.S. land and adjacent coastal borders*.") (emphasis added); 8 U.S.C. § 1225(b)(2)(C) (permitting the government to return to a contiguous territory a noncitizen "who is *arriving on land* . . . from a foreign territory contiguous to the United States") (emphasis added).

Plaintiffs may argue that the Court should nonetheless order the relief because Defendants have not yet issued the travel document Roberto Doe requests. Yet this process cannot be completed immediately, and Defendants have committed to processing Roberto's application materials within two weeks after he provides them to the government. *See* Halaska Decl. ¶ 53; *cf. Leyva v. Certified Grocers of Calif., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979) (holding that it would waste judicial resources and be burdensome upon the parties to permit discovery and take evidence on the merits of the case at the same time an arbitrator is going through a substantially parallel process); *Lopez v. Am. Express Bank, FSB*, No. 09-cv-7335, 2010 WL 3637755, at *4 (C.D. Cal. Sept. 17, 2010) (holding that it would be burdensome for the parties to spend much time, energy, and resources on pre-trial and discovery

DEFS.' OPP. TO PLS.' *EX PARTE* APP.
FOR RELIEF FOR ROBERTO DOE
Case No. 3:17-cv-02366-BAS-KSC

issues only to find issues moot within less than a year). Plaintiffs do not provide a specific reason why it is necessary to issue documents within two days of the Court's order. Further, there is no reason at this time to believe that a travel document will not be issued to Roberto Doe in the near future, unless Roberto Doe is unable to provide the flight, passport, and identifying information requested as a necessary precursor to the issuance of a travel document, or derogatory information raising national security concerns is discovered.

## II.    Plaintiffs' Requested Order is Not Appropriate Relief for Roberto Doe's Individual Claims.

Although DHS has agreed in principle to grant parole Roberto Doe to allow him to travel by air to the United States as an extension of its prior agreement with the named Plaintiffs, Defendants emphasize that the Court should not compel that relief because it is not an appropriate remedy for Roberto Doe's individual claims or in this litigation generally.[3] An injunction "does not follow from success on the mer-

---

[3] Plaintiffs seek relief only for Roberto Doe's individual claims, not his class claims. *See, e.g.*, Mem. at 1 (requesting "that the Court grant injunctive relief requiring Defendants to provide Roberto Doe" with the requested relief); *see also* Pls.' Proposed Order Granting in Part Pls.' Mot. for Summ. J. ¶ 7 (available at ECF No. 773-4) (seeking an order compelling Defendants "to restore the status quo ante for the named plaintiffs prior to Defendants' unlawful conduct" and to "take the necessary steps to facilitate Plaintiffs Roberto Doe's and Beatrice Doe's entry into the United States, including issuing any necessary travel documents to allow them to travel to the United States (by air if necessary) and to ensure their inspection and asylum processing upon arrival"). Defendants thus only address here why such relief is not an appropriate remedy for Roberto Doe based on his individual circumstances, and do not address the multitude of additional reasons why the relief he seeks cannot be provided on a classwide basis. In particular, as Defendants have set forth separately, exemption from otherwise-applicable Title 42 Orders is not appropriate classwide relief for class members who were subject to metering before the first Title 42 order and would cause substantial harm to the public interest. *See* Defs.' Proposed Re-

DEFS.' OPP. TO PLS.' *EX PARTE* APP.
FOR RELIEF FOR ROBERTO DOE
Case No. 3:17-cv-02366-BAS-KSC

its as a matter of course." *Winter v. NRDC, Inc.*, 555 U.S. 7, 32 (2008). Any injunctive relief "must be narrowly tailored to give only the relief to which plaintiffs are entitled." *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 558 (9th Cir. 1990). Further, an injunction must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1).

### A.    Roberto Doe is Not Entitled to Parole or Facilitation of Air Travel Under this Court's MSJ Order.

Parole is not "relief to which [Roberto Doe] [is] entitled" under this Court's MSJ Order or any provision of law. *Orantes-Hernandez*, 919 F.2d at 558. This Court "conclude[d] that turning back asylum seekers at POEs without inspecting and referring them upon their arrival" constitutes unlawful withholding of agency action required under 8 U.S.C. §§ 1158 and 1225. MSJ Order at 33–34. The proper remedy for such an APA violation is to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Thus, as relief for Roberto's individual APA claim, the Court could at most compel Defendants to inspect Roberto Doe under Section 1225(a)(3) when he is "in the process of arriving at a POE," MSJ Order at 23, and process him under Title 8, including by detaining him for expedited removal under Section 1225(b)(1)(B)(ii) or, in their discretion, referring him for removal proceedings under Section 1229a[4]—so long as such actions are not prohibited by independent, lawful authority. This is something Defendants have already agreed

---

sponsive Memorandum Regarding Summary Judgment Remedy & Plaintiffs' Request for Compliance Monitoring at 7–12 (ECF No. 773-2). If the Court were to issue any order relating to Roberto Doe, it should clarify that such relief is granted for Roberto's individual claims and is not applicable on a classwide basis, including for the reasons stated in Defendants' proposed Responsive Memorandum Regarding Summary Judgment Remedy & Plaintiffs' Request for Compliance Monitoring.

[4] *See Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520 (BIA 2011); *see also* SAC ¶ 205 (conceding that DHS has discretion to either place a noncitizen in expedited removal or refer him for removal proceedings).

DEFS.' OPP. TO PLS.' *EX PARTE* APP.
FOR RELIEF FOR ROBERTO DOE
Case No. 3:17-cv-02366-BAS-KSC

to do. *See* Halaska Decl. ¶¶ 6, 38; SAC ¶ 159. But the Court cannot compel Defendants to grant parole to Roberto Doe because that action is not required by any statute that Defendants have failed to comply with (nor by any statute at all). "'[T]he only agency action that can be compelled under the APA is action legally *required*. Moreover, the mandatoriness requirement means that courts cannot compel agencies to take action *beyond* what is legally required of them." *Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 20 (D.D.C. 2017) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55 (2004)).

Recognizing the limitations of the APA, Plaintiffs contend that "[t]he court need not decide whether such relief is authorized under Section 706(1) of the APA, as it is clearly available for the due process violation and pursuant to the All Writs Act." Mem. at 7 n.5. That is incorrect. As this Court recognized, arriving aliens possess "only those rights regarding admission that Congress has provided by statute," and "the Due Process Clause provides nothing more." *DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1983 (2020); *see* MSJ Order at 37 (holding that, under *Thuraissigiam*, 140 S. Ct. at 1977, "Plaintiffs' due process rights . . . extend as far as their rights under [8 U.S.C. §§ 1158(a)(1) and 1225].") . That is, there is no additional process due to Plaintiffs (or to the Class) other than the process provided by statute. The statutory provisions at issue in Sections 1158 and 1225 do not confer a right to any form of parole, *see* 8 U.S.C. §§ 1158(a)(1), 1225(a)(3), (b)(1)(b)(ii), so Robert Doe's due process claim cannot provide any basis to compel such relief. Moreover, an undocumented noncitizen such as Roberto Doe has "no substantive liberty or property interest . . . in temporary parole status," *United States v. Wong*, 373 F.3d 952, 968 (9th Cir. 2004), so the Due Process Clause is not implicated at all.

Plaintiffs cite *Melendres v. Maricopa County*, 897 F.3d 1217, 1221 (9th Cir. 2018), and *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979), in support of their claim that a grant of parole is available as a remedy, *see* Mem. at 7 n.5, but they offer no

DEFS.' OPP. TO PLS.' *EX PARTE* APP.
FOR RELIEF FOR ROBERTO DOE
Case No. 3:17-cv-02366-BAS-KSC

explanation how those cases support their argument, and neither case contains reasoning to suggest that the issuance of travel documents or permissions is an appropriate remedy for Roberto Doe's due process claim in this case. *Melendres* states that a court exceeds its discretion in granting an injunction "only if the injunctive relief is aimed at eliminating a condition that does not violate the Constitution or does not flow from such a violation," 897 F.3d at 1221 (cleaned up), and here, the relief sought does not flow from the due process claim because the due process claim is based entirely on a purported failure to fulfill statutory duties to inspect and process, and the relief sought here goes far beyond remedying that issue. And Plaintiffs appear to invoke *Califano* for the proposition that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," 442 U.S. at 702, but that does not demonstrate why the relief they seek is available for Roberto Doe's due process claim.

Similarly, "[u]nder the All Writs Act, a court may issue an injunction only where it is 'necessary or appropriate in aid' of the court's jurisdiction, and 'the legal rights at issue are indisputably clear.'" *Makekau v. Hawaii*, 943 F.3d 1200, 1204 (9th Cir. 2019) (quoting 28 U.S.C. § 1651(a) and *Hobby Lobby Stores, Inc. v. Sebelius*, 568 U.S. 1401, 1403 (2012) (Sotomayor, J., in chambers)). It is far from clear that Roberto Doe has a right to be granted parole even if he had a right to be inspected and processed arising under Sections 1158 and 1225, because Sections 1158 and 1225 do not address parole. Further, Section 1182(d)(5)(A) vests the Secretary with sole discretion to grant parole, and a noncitizen has "no substantive liberty or property interest . . . in temporary parole status." *Wong*, 373 F.3d at 968. Moreover, the AWA "does not erase *separate* legal requirements for a given type of claim," *Makekau*, 943 F.3d at 1204, including the requirement that injunctive relief be "narrowly tailored to give only the relief to which plaintiffs are entitled," *Orantes-Hernandez*, 919 F.2d at 558.

Plaintiffs cite *United States v. New York Telephone Co.*, 434 U.S. 159, 173

(1977), and *United States v. Morgan*, 346 U.S. 502, 512 (1954), in support of their argument that the All Writs Act permits the requested injunction, *see* Mem. at 7 n.5, but those cases provide no such support. Although the Supreme Court noted in *New York Telephone Co.* that the All Writs Act has been applied "flexibly" by courts to give effect to "achieve the ends of justice," 434 U.S. at 173, the Ninth Circuit has clearly stated that courts "may issue an injunction only where . . . the legal rights at issue are indisputably clear." *Makekau*, 943 F.3d at 1204. As noted, Roberto Doe has no right to parole. And *Morgan* addresses whether the All Writs Act permits the issuance of writs of coram nobis. *See* 346 U.S. at 506. Such reasoning has no application here. Thus, neither the All Writs Act nor Roberto Doe's due process claim provides him with any entitlement to parole as relief in this litigation.

**B.    The Court Should Not Order Relief Concerning How to Apply Rules and Regulations that Were Not at Issue in this Case.**

Plaintiffs ask the Court to order Defendants to "afford Mr. Doe access to the U.S. asylum process in accordance with the rules and regulations that existed when he first arrived in the United States and was illegally turned back by Defendants (October 2, 2018)." Mem. at 8. They further specify that DHS should not apply the MPP memorandum and the CDC Order promulgated under Title 42 that prevents the introduction of certain covered noncitizens. As noted above, the Court need not address Plaintiffs' request that Roberto Doe be excepted from public-health orders issued under Title 42 or from MPP here, *see* Mem. at 8, because the most recent CDC Order and MPP memorandum do not apply to noncitizens who arrive in the United States at airports. *See* CDC Order, 86 Fed. Reg. at 42,829 ("The instant Order continues the suspension of the right to introduce 'covered noncitizens' . . . into the United States *along the U.S. land and adjacent coastal borders*.") (emphasis added); 8 U.S.C. § 1225(b)(2)(C) (permitting the government to return to a contiguous territory a noncitizen "who is *arriving on land* . . . from a foreign territory contiguous to the United States") (emphasis added).

DEFS.' OPP. TO PLS.' *EX PARTE* APP.
FOR RELIEF FOR ROBERTO DOE
Case No. 3:17-cv-02366-BAS-KSC

Nor should this Court order Defendants to "afford Mr. Doe access to the U.S. asylum process in accordance with the rules and regulations that existed when he first arrived in the United States and was illegally turned back by Defendants (October 2, 2018)." Mem. at 8. As an initial matter, an order directing DHS to provide "access to the U.S. asylum process in accordance with the rules and regulations that existed" on October 2, 2018, *id.*, without more, fails to comply with the requirement that "[e]very order granting an injunction . . . must: (B) state its terms specifically" and "(C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1); *see Thomas v. Cty. of Los Angeles*, 978 F.2d 504, 509 (9th Cir. 1992) (holding that an injunction requiring a sheriff's department "to follow 'the Department's own stated policies and guidelines,'" without "defin[ing] what the policies are, or how they can be identified," "fails to specify the act or acts sought to be restrained as required by" Rule 65(d)); *Scott v. Schedler*, 826 F.3d 207, 212 (5th Cir. 2016) (holding that an injunction directing a state agency "to maintain in force and effect [its] policies, procedures, and directives for implementation of the [statute]" fails to satisfy Rule 65(d)(1), because it merely "refers generally to the defendant's policies without defining what those policies are or how they can be identified"). Besides identifying orders issued under Title 42 and application of MPP, *see* Mem. at 8, Plaintiffs fail to point to any specific regulations, policies, or rules that should or should not be applied in Roberto Doe's immigration proceedings.

The relief Plaintiffs request is also improper because, as discussed, APA relief is limited to an order "compel[ling]" mandatory agency action or "set[ting] aside" unlawful agency action. 5 U.S.C. § 706(1), (2). The Court's MSJ Order addresses whether to compel CBP to "inspect" Class Members under Section 1225, and only holds that CBP's practices that result in deferring such inspection to a subsequent "arrival" are an unlawful withholding of agency action. *See* MSJ Order at 13–34. The MSJ Order does not address the substantive law governing Roberto Doe

DEFS.' OPP. TO PLS.' *EX PARTE* APP.
FOR RELIEF FOR ROBERTO DOE
Case No. 3:17-cv-02366-BAS-KSC

or any of the Class Members' asylum claims, and does not entitle Roberto Doe or any of the Class Members to be processed under any particular substantive laws, rules, regulations, or practices. Indeed, while the Court could (in the absence of independent statutory authority providing otherwise) compel Defendants to inspect Roberto Doe under Section 1225(a)(3) and take further action as appropriate for relief on his individual claims, the Court lacks the authority to compel Defendants to provide Roberto Doe with "access to the U.S. asylum process" in any particular form, because Section 1158(a)(1) "does not identify any specific obligations placed on an immigration officer and, therefore, may not serve as the basis for Section 706(1) relief." *Al Otro Lado v. Nielsen*, 327 F. Supp. 3d 1284, 1310 n.12 (S.D. Cal. 2018).

Roberto Doe's due process claim also does not provide a basis to order such relief, because noncitizens do not have any rights under Sections 1158(a)(1) or 1225 to any particular substantive rules of asylum eligibility. To the contrary, the decision whether to grant asylum, and the promulgation of the substantive rules that apply to asylum claims, are within the government's discretion, further demonstrating that Congress did not intend to grant noncitizens any entitlement to any particular eligibility rules in their immigration proceedings. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 444–45 (1987) (noting that Congress "chose to authorize the Attorney General to determine which, if any, eligible refugees should be denied asylum"); 8 U.S.C. § 1158(b)(2)(C) (providing that the Attorney General and the Secretary "may by regulation establish additional limitations and conditions . . . under which an alien shall be ineligible for asylum"). Further, although this Court stated in its MSJ Order (at 29 n.14) that "regulations promulgated after class members were turned back" do not apply to them, because such regulations "were not in place at the time each class member's right to apply for asylum attached," the Court only made that assessment with regard to precise language of the third-country-transit rule. *See Al Otro Lado, Inc. v. McAleenan*, 423 F. Supp. 3d 848, 875 (S.D. Cal. 2019) ("The wording of the

DEFS.' OPP. TO PLS.' *EX PARTE* APP.
FOR RELIEF FOR ROBERTO DOE
Case No. 3:17-cv-02366-BAS-KSC

[transit rule] is clear. It is only applicable to aliens who enter, attempt to enter, or arrive in the United States after July 16, 2019."). The Court's reasoning does not extend to other rules, statutory provisions, or regulations that do not contain that same language or hinge on a date of entry. And it certainly does not support the issuance of a court order exempting Roberto Doe from any otherwise-applicable public-health orders or other measures—like COVID testing or vaccination requirements—that are unrelated to the processing of asylum claims.[5]

Further, an order directing Defendants to provide Roberto Doe with access to the asylum process as it existed on October 2, 2018, would contravene the long-settled presumption that agencies should apply the law in effect at the time of the decision, not the date of inspection or application. *Otarola v. INS*, 270 F.3d 1272, 1275 (9th Cir. 2001) (stating the general rule is that the agency is to apply the law in effect at the time of the decision, and citing *Urbina-Mauricio v. INS*, 989 F.2d 1085, 1088 n.4 (9th Cir. 1993), and *Ortiz v. INS*, 179 F.3d 1148, 1156 (9th Cir. 1999)); *see also* 8 C.F.R. § 103.2(b)(1) ("An applicant or petitioner [to DHS] must establish that he or she is eligible for the requested benefit at the time of filing the benefit request and *must continue to be eligible through adjudication*.") (emphasis added). Even if Roberto Doe had entered the United States and properly initiated his asylum claim on October 2, 2018, he would not be categorically entitled to the rules and regulations as they existed on that date.

## **CONCLUSION**

Defendants have agreed in principle to expeditiously grant Roberto Doe parole so that he may board a commercial air carrier to the United States, pending receipt of further information from Mr. Doe and barring the revelation of derogatory

---

[5] In any event, Defendants have agreed to inspect and process Roberto Doe under Title 8 if he presents himself at a land POE, so the Court need not address that issue in this Motion. Further, as noted above, an exemption from otherwise-applicable Title 42 Orders is not appropriate classwide relief for class members who were subject to metering before the first Title 42 order. *See supra* n.3.

information raising national security concerns. Consequently, this Court need not, and should not, compel Defendants to provide that relief. Further, the Court should decline to order Defendants to provide Roberto Doe with "access to the U.S. asylum process in accordance with the rules and regulations that existed when he first arrived in the United States" on October 2, 2018, because such an order fails to comply with Federal Rule of Civil Procedure 65(d), and because Roberto Doe does not have any right to particular substantive rules of asylum eligibility.

//

DATED: December 14, 2021          Respectfully submitted,

                                  BRIAN M. BOYNTON
                                  Acting Assistant Attorney General

                                  WILLIAM C. PEACHEY
                                  Director

                                  KATHERINE J. SHINNERS
                                  Senior Litigation Counsel

                                  */s/ Alexander J. Halaska*
                                  ALEXANDER J. HALASKA
                                  Trial Attorney
                                  United States Department of Justice
                                  Civil Division
                                  Office of Immigration Litigation
                                  District Court Section
                                  P.O. Box 868, Ben Franklin Station
                                  Washington, D.C. 20044
                                  Tel: (202) 307-8704 | Fax: (202) 305-7000
                                  alexander.j.halaska@usdoj.gov

                                  *Counsel for Defendants*

DEFS.' OPP. TO PLS.' *EX PARTE* APP.
FOR RELIEF FOR ROBERTO DOE
Case No. 3:17-cv-02366-BAS-KSC

# **CERTIFICATE OF SERVICE**

*Al Otro Lado v. Mayorkas*, No. 17-cv-02366-BAS-KSC (S.D. Cal.)

I certify that I served a copy of this document on the Court and all parties by filing this document with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all counsel of record.

DATED: December 14, 2021                    Respectfully submitted,

                                            */s/ Alexander J. Halaska*
                                            ALEXANDER J. HALASKA
                                            Trial Attorney
                                            United States Department of Justice

20