BRIAN M. BOYNTON
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
ALEXANDER J. HALASKA (IL 6327002)
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-8704 | Fax: (202) 305-7000
alexander.j.halaska@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:17-cv-02366-BAS-KSC |
| *Plaintiffs*, | Hon. Cynthia A. Bashant |
| v. | **DECLARATION OF ALEXANDER J. HALASKA IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFFS'** ***EX PARTE*** **EMERGENCY APPLICATION FOR RELIEF FOR NAMED PLAINTIFF ROBERTO DOE** |
| ALEJANDRO MAYORKAS, Secretary of Homeland Security, *et al.*, in their official capacities,* | |
| *Defendants*. | |

---

* Pursuant to Federal Rule of Civil Procedure 25(d), Secretary Mayorkas is automatically substituted as a Defendant for former Acting Secretary Wolf.

# DECLARATION OF ALEXANDER J. HALASKA

Pursuant to 28 U.S.C. § 1746, I, Alexander J. Halaska, hereby declare as follows:

1. I am a Trial Attorney employed by the United States Department of Justice. I represent the Defendants in their official capacities in the above-captioned matter. I am a member in good standing of the bar of the State of Illinois, and I am authorized to practice in the U.S. District Court for the Southern District of California pursuant to Local Civil Rule 83.3(c)(3). I submit this declaration in support of Defendants' Response to Plaintiffs' *Ex Parte* Emergency Application for Relief for Named Plaintiff Roberto Doe. The facts contained herein are based upon my personal knowledge or facts made known to me in the course of my employment.

2. On Friday, October 12, 2018, at 5:17 PM (Eastern), Plaintiffs' counsel emailed Defendants' counsel, stating: "We will be filing our Frist [sic] Amended Complaint today with newly added plaintiffs in the matter of *Al Otro Lado, et al. v. Kirstjen Nielsen, et al.*, No. 17-cv-02366-BAS-KSC. Because our newly added plaintiffs face imminent and irreparable injury if they are not afforded immediate access to the asylum process, we are considering filing a temporary restraining order ordering that Defendants allow them to enter the United States to pursue their asylum claims. To avoid filing a temporary restraining order, would Defendants be willing to make arrangements to facilitate the entry of our newly added plaintiffs, similar to what the Defendants did for named plaintiffs (Abigail Doe, Beatrice Doe, Caroline Doe, Ingrid Doe, and Jose Doe) in our initial Complaint in this case?"

3. On Friday, October 12, 2018, at 6:11 PM (Eastern), Defendants' counsel stated via email: "Unfortunately, we can't engage in further discussions without more information about the newly-named plaintiffs, including, at minimum: their names, any A numbers, the POE(s) they have allegedly been denied access to, information related to their legal claims, information related to their potential membership in the putative class, information which shows that they are facing imminent

and irreparable injury, and information which shows that any potential imminent and irreparable injury is newly developed. Please send us a copy of the complaint and the TRO motion so that we can confer internally and with our clients. We'll work as expeditiously as possible, under the circumstances, to consider your request."

4. On Monday, October 15, 2018, at 3:56 PM (Eastern), Plaintiffs' counsel provided the requested information and stated: "We will be sending you a draft temporary restraining order."

5. On Tuesday, October 16, 2018, at 5:12 PM (Eastern), Plaintiffs' counsel provided a draft TRO motion to Defendants' counsel via email and stated: "Please let us know by 11 am ET tomorrow whether Defendants will make arrangements to facilitate the entry of the newly-named plaintiffs into the United States to allow them to pursue their asylum claims." The TRO motion attached to the email requested an order allowing the named Plaintiffs and their children, all of whom the motion stated were located in Mexico, "to enter the United States to pursue their asylum claims."

6. On Wednesday, October 17, 2018, at 12:36 PM (Eastern), Defendants' counsel stated to Plaintiffs' counsel via email: "[I]n the interest of avoiding burdensome motions practice, Defendants are willing to facilitate the relief the eight Doe Plaintiffs and their children seek. This should not be understood as Defendants conceding to or agreeing with the factual allegations or legal arguments Plaintiffs have raised in their draft TRO motion or amended complaint. Please confirm that the Doe Plaintiffs' full legal names and DOBs you provided earlier are correct. Please also provide the port of entry each Doe Plaintiff plans to appear at, and the date and approximate time they plan to appear. CBP would prefer 48 hours' notice where possible."

7. On Wednesday, October 17, 2018, at 1:53 PM (Eastern), Plaintiffs' counsel stated via email: "As we discussed on the phone a few minutes ago, below are confirmed names and dates of birth for the New Class Plaintiffs," and provided

1  that information.

2  8.  On Wednesday, October 17, 2018, at 2:05 PM (Eastern), Defendants' counsel stated via email to Plaintiffs' counsel: "I've passed this information and your requests to the agency. I'll let you know their response."

9.  On Wednesday, October 17, 2018, at 4:59 PM (Eastern), Plaintiffs' counsel stated via email to Defendants' counsel: "I just left you a voicemail message to find out if you have received any update regarding arrangements to enable our plaintiffs to enter the United States at the Hidalgo and Tijuana POEs. For planning purposes, we need to provide as much notice as possible to our contacts on the ground who will be accompanying them. Please call me at your earliest convenience at [OMITTED]."

10.  On Wednesday, October 17, 2018, at 5:19 PM (Eastern), Defendants' counsel stated via email to Plaintiffs' counsel: "I have not yet heard back from the agency. I'll let you know as soon as I do."

11.  On Wednesday, October 17, 2018, at 7:37 PM (Eastern), Defendants' counsel stated via email to Plaintiffs' counsel:

> [T]he Laredo Field Office can process the five individuals presenting at Hidalgo tomorrow morning. The optimal time for them to arrive is 9:00 AM (Central). Watch Commander [OMITTED] will be the supervisor on duty.
>
> The San Diego Field Office can process the eight individuals presenting at San Ysidro tomorrow at 1:00 PM (Pacific). Port management has requested that they present at the Pedestrian West entrance. Watch Commander [OMITTED] is the designated supervisor. We noticed that while [REDACTED] (Maria Doe) is listed below as presenting near San Ysidro, the allegations in the amended complaint and draft TRO motion all relate to [REDACTED] attempting to enter near the Hidalgo. Please confirm that San Ysidro is indeed the location [REDACTED] and her children will be appearing at tomorrow.

12.  On October 17, 2018, at 11:25 PM (Eastern), Defendants' counsel

3

DECL. OF ALEXANDER J. HALASKA
Case No. 3:17-cv-02366-BAS-KSC

stated via email to Plaintiffs' counsel: "the Laredo field office has advised the Hidalgo port of entry that the Doe Plaintiffs will arrive at 11:00 AM Central tomorrow. There shouldn't be any issues."

13. On Wednesday, October 17, 2018, at 11:31 PM (Eastern), Plaintiffs' counsel stated via email to Defendants' counsel: "Thx so much, Alex. We really appreciate your help."

14. On Thursday, October 18, 2018, at 7:42 AM (Eastern), Defendants' counsel stated via email to Plaintiffs' counsel: "Of course. Can you please let us know when all the named Plaintiffs have entered the ports? Thanks."

15. On Thursday, October 18, 2018, at 7:06 PM (Eastern), Plaintiffs' counsel stated via email to Defendants' counsel:

> I am writing to confirm that the five named plaintiffs and their children who were planning to cross at San Ysidro have successfully crossed.
>
> As we discussed on the phone, those who were intending to cross at Hidalgo were prevented from doing so. Furthermore, as I advised you over the phone, we believe the Honduran family (Juan and Úrsula Doe and children) will be seeking to enter at the "old" bridge, also known as the "B&M bridge," in Matamoros-Brownsville tomorrow early in the morning. And lastly, we discussed Roberto Doe, who was detained by Mexican officials as he was walking onto the Hidalgo bridge.
>
> Also as discussed on the phone, I understand that you will do your best to provide notice to your clients (1) on the ground in Brownsville, about the family who will likely seek to enter in the morning, and (2) on the ground in Hidalgo, that Roberto Doe may be seeking to cross at some point as yet unknown in the coming days, if he is released by the Mexican officials who are currently holding him.
>
> We appreciate your efforts and communication up to this point.

16. On Thursday, October 18, 2018, at 9:00 PM (Eastern), Defendants' counsel stated via email to Plaintiffs' counsel:

> [T]hank you for confirming that five named Plaintiffs and their three children (Maria and her two children, Victoria and her child, and Bianca, Emiliana, and César) crossed into San Ysidro today without

4

DECL. OF ALEXANDER J. HALASKA
Case No. 3:17-cv-02366-BAS-KSC

> incident. That's also my understanding from my client.
>
> Yes, based on what you told me on our phone calls today, I understand that three named Plaintiffs and their two children (Roberto, Juan and Úrsula, and Juan and Úrsula's two children) attempted to walk onto the footbridge to the Hidalgo port of entry today but were stopped by Mexican immigration officials, in Mexico, before they could go onto the bridge. The Hidalgo port has been advised that Roberto may be seeking to cross tonight if he is released by Mexican immigration officials. If he does not cross tonight, please advise me when he may attempt to cross in the coming days. I understand Roberto's circumstances on the ground may change quickly, as they do for CBP. The more notice I can provide the port, however, the more likely it is that Roberto can cross without incident on our end. Defendants fully intend to continue working in good faith to provide Roberto with the relief he seeks.
>
> The Brownsville port has been advised that Juan, Úrsula, and their two children will likely seek to cross into that port early tomorrow morning via the old bridge.
>
> Thanks for keeping us updated today. Please keep me informed of any new information whenever possible.

17. On Thursday, October 18, 2018, at 9:29 PM (Eastern), Plaintiffs' counsel stated via email to Defendants' counsel: "Thanks Alex. We will do our best to provide as much notice as possible. I do not believe Roberto will be attempting to cross tonight."

18. On Friday, October 19, 2018, at 11:09 AM (Eastern), Plaintiffs' counsel stated via email to Defendants' counsel: "We just got word that the Honduran family (Juan and Úrsula Doe, plus children), were not able to safely travel to Matamoros to try to cross into Brownsville early this morning. I believe they will be trying again today, and they will hopefully reach the B&M bridge in Matamoros-Brownsville by mid-afternoon today. Because security and communication are both unpredictable, things could change on the ground quickly, and I will let you know as soon as possible if that happens. Roberto Doe is still detained by Mexican officials near the Hidalgo bridge."

19. On Friday, October 19, 2018, at 11:26 AM (Eastern), Defendants' counsel stated via email to Plaintiffs' counsel: "[T]hanks for the update. The Brownsville port is being advised of an anticipated mid-afternoon arrival. Please continue to keep us updated about both Roberto and Juan and Úrsula."

20. On Monday, October 22, 2018, at 10:29 AM (Eastern), Defendants' counsel stated via email to Plaintiffs' counsel: "[A]s we discussed on the phone Friday evening, Juan, Úrsula, and their two children crossed into the United States on Friday, October 19, 2018, and were processed in accordance with federal law by the Brownsville port of entry. Please provide any updates about Roberto with as much advance notice as possible. Again, the more advance notice the port receives, the more likely it is that Roberto can be processed without incident or undue delay."

21. On Wednesday, October 24, 2018, at 4:20 PM (Eastern), Plaintiffs' counsel stated via email to Defendants' counsel: "We just received a message indicating that Mexican immigration officials are taking Roberto directly to the Hidalgo port of entry in Reynosa. Please confirm that CBP officials at the Hidalgo port of entry are prepared to inspect and process Roberto if and when he arrives. Unfortunately, the timing is still unclear, but we will keep you posted as we learn more."

22. On Wednesday, October 24, 2018, at 4:34 PM (Eastern), Defendants' counsel stated via email to Plaintiffs' counsel: "[T]he port is now aware that Roberto intends to appear at Hidalgo at some point in the future. Can you please give us some kind of timeframe? As I understood, he was being transported south last night/this morning by road."

23. On Wednesday, October 24, 2018, at 9:28 PM (Eastern), Plaintiffs' counsel stated via email to Defendants' counsel: "Our current understanding is that INM [Instituto Nacional de Migracion] will put Roberto on a bus to the Hidalgo POE in Reynosa later this evening. The trip is about 14 hours. We just heard that INM reached out to CBP-Reynosa to coordinate, but was told that CBP had no knowledge of Roberto's case. Please advise."

24. On Wednesday, October 24, 2018, at 9:49 PM (Eastern), Defendants' counsel stated via email to Plaintiffs' counsel:

> [W]ould that put Roberto there around noon (Central)? Will INM be accompanying him?
>
> I will follow up with CBP, but I've been in contact with agency counsel several times this evening, and they've advised me that the operational client has been informed.

25. On Thursday, October 25, at 9:24 AM (Eastern), Plaintiffs' counsel stated via email to Defendants' counsel: "We understand that INM contacted Sylvia Briones, the Port Director in McAllen, who knows nothing about our client's situation. Please advise."

26. On Thursday, October 25, 2018, at 11:28 AM (Eastern), Plaintiffs' counsel stated via email to Defendants' counsel: "Just wanted to summarize our recent phone conversation. As I mentioned on the phone, INM is willing to transport the client back to Reynosa to present at the port, but they called Sylvia Briones at CBP in McAllen yesterday who, rather than verifying the client's name and the fact that he is subject to this agreement, told INM that she knew nothing about the case. This has caused delay in INM's transportation of the client back up to Reynosa. On the phone I requested that you please send us a name and phone number of someone in CBP who can in fact verify our agreement regarding this client on the phone with INM, and I await your response."

27. On Thursday, October 25, 2019, at 12:40 PM (Eastern), Plaintiffs' counsel stated via email to Defendants' counsel:

> Just following up. You have mentioned to me and Melissa multiple times on the phone since late last week that CBP would be happy to verify this agreement over the phone if it receives a call from INAMI requesting verification. This turned out not to be the case yesterday when INAMI called CBP.
>
> It is urgent for the safety of our client that you tell us who in CBP should be called to verify the agreement. It is imperative that before the call is made, we receive confirmation that the CBP contact will verify the

agreement when asked.

We last spoke about an hour ago and I am still waiting. Should Sylvia Briones be called again, or is there someone else?

28. On Thursday, October 25, 2018, at 1:15 PM (Eastern), Defendants' counsel stated via email to Plaintiffs' counsel: "[A]gency counsel is still working to get a better understanding of the conversation between OFO and INAMI [INM], and what INAMI asked OFO to confirm. It seems that we in D.C. are all receiving information secondhand, and we are doing our best to verify the facts as quickly as possible. Thanks."

29. On Thursday, October 25, 2018, at 1:29 PM (Eastern), Defendants' counsel stated via email to Plaintiffs' counsel: "[H]ave INAMI call Sylvia Briones at [OMITTED]. Agency counsel tells me that when asked, she will confirm that if Roberto appears, he will be processed. Please do not distribute this phone number to anyone who does not require it for this litigation. Thanks."

30. On Thursday, October 25, 2018, at 1:32 PM (Eastern), Plaintiffs' counsel stated via email to Defendants' counsel: "Thanks very much Alex. We will only share this number as necessary for the agreed-upon purpose."

31. On Friday, October 26, 2018, at 9:46 AM (Eastern), Defendants' counsel stated via email to Plaintiffs' counsel: "[W]e are reaching out to our client. We will call back when we have more information. Thanks."

32. On Friday, October 26, 2018, at 9:52 AM (Eastern), Plaintiffs' counsel stated via email to Defendants' counsel: "Thanks Alex. All we ask is that Sylvia Briones respond to the phone call she received on Wednesday by calling INAMI back and explaining, for example, something along the lines of she received more information since the prior conversation on Wednesday, and that CBP is in fact prepared to allow Roberto Doe to cross at the bridge in Reynosa."

33. On Friday, October 26, 2018, at 10:46 AM (Eastern), Plaintiffs' counsel

1  stated via email to Defendants' counsel: "We just heard from our partners at UN-
2  HCR in Mexico that another option to clear things up regarding the agreement to
3  permit Roberto Doe to present himself and be processed as an asylum seeker at the
4  Reynosa POE would be for someone in the US government to call Gabriela Garcia,
5  the Director of Protection at INM. I believe a call from either CBP or DOJ would be
6  acceptable. The number is [OMITTED]."

   34. On Friday, October 26, 2018, at 3:01 PM (Eastern), Defendants' counsel stated via email to Plaintiffs' counsel: "[I]t's our understanding that the Assistant Port Director in Hidalgo spoke with her INAMI counterpart in Reynosa and reiterated that when Robert arrives at the port, he will be processed. We are awaiting further details. Thanks."

   35. On Friday, October 26, 2018, at 3:13 PM (Eastern), Plaintiffs' counsel stated via email to Defendants' counsel:

   > Thank you for this response. Just to be clear, we have been specifically advised from the Mexican government less than an hour ago that they are seeking written confirmation that our client is permitted to enter the U.S. As you are aware, our client, [Roberto Doe], has been held by Mexican immigration officials for over a week now – where he faces an imminent risk of deportation to a country where he fears persecution on account of political opinion. He is in custody because we relied upon the government's representations that he would be allowed to cross into the United States at the Hidalgo Port of Entry. Without that assurance, he would not have returned to attempt that crossing because he feared precisely this result.

   > This morning we informed you that Mexican officials had told us they had reached out CBP officials but could not get confirmation that [Roberto Doe] had permission from the U.S. government to cross – which is all that is needed to release him from custody and risk of refoulement. Because this is a matter of great urgency, we indicated we were seeking your cooperation simply to communicate with Mexican immigration officials to verify that [Roberto Doe] is authorized to cross into the United States for the purpose of seeking asylum – rather than availing ourselves of emergency relief.

> Since our phone call this morning, Mexican officials told us something even more disturbing: they indicated that they had actually spoken with CBP officials about the case earlier this week, and those CBP personnel affirmatively stated that they knew nothing about our client's case. That is the reason that they are now seeking something in writing from the U.S. government.
>
> We understand that you are quite busy, but it appears that a simple written communication from you to INAMI officials is all that is needed to assure his safety and resolution of this matter in the way the parties contemplated when we earlier negotiated an agreement that our clients could cross. Given the urgent stakes here, we ask you that you prioritize this request, as the day is closing and we fear we may lose further opportunity this weekend.
>
> I just spoke with Mexican government officials, and they emphasized the urgency of the situation. They have asked that CBP send a letter confirming that [Roberto Doe] has permission to cross into the U.S. to: Dalia Gabriela Garcia Acoltzi at the following email address: [OMITTED]. They also asked that you cc the following email address to ensure that it arrives: [OMITTED].
>
> My cell phone number is [OMITTED]. Please call me to discuss this urgent matter.

36. On Friday, October 26, 2018, at 5:19 PM (Eastern), Defendants' counsel stated via email to Plaintiffs' counsel:

> [T]wo weeks ago, you informed us on a Friday evening after the close of business that Plaintiffs would be filing their first amended complaint and were considering filing a TRO, and asked whether Defendants would agree to allow the new Doe Plaintiffs to enter the United States to pursue their asylum claims. Not knowing anything at that point about the scope of the forthcoming pleading, we responded within an hour asking for more information and for copies of the amended complaint and the draft TRO motion. Plaintiffs did not respond with the requested information until late Monday afternoon and did not provide a draft of the TRO motion until after the close of business Tuesday evening.
>
> That draft motion asks the Court for an order "to allow New Class Plaintiffs and their respective children to enter the United States and to process their asylum claims." We responded the next day that Defendants were willing to provide that requested relief, i.e., to allow the

newly named Plaintiffs and their children to enter the United States when they appeared and be processed for asylum, in the hopes of avoiding burdensome motions practice.

Over the next several days, we worked with you, several times late into the evening, to facilitate the exchange of information between both of our clients on the ground—including making a follow-up phone call when it appeared that Plaintiffs had not received an email they had indicated was critical to their clients. On Thursday, October 18, the five Doe Plaintiffs and their children who chose to appear at the San Ysidro port of entry crossed without incident.

Plaintiffs advised us that, also on October 18, as the other three Doe Plaintiffs—Roberto, Juan, and Úrsula (and their children)—attempted to walk onto the footbridge to the Hidalgo port of entry, they were stopped by Mexican immigration officials, in Mexico, before they could go onto the bridge. Mexican immigration officials released Juan, Úrsula, and their two children the same day. Plaintiffs advised us that the family did not want to cross at Hidalgo again, and so Plaintiffs and Defendants made arrangements to have them cross at Brownsville early the next morning. The Brownsville port was advised of their arrival.

Late the next morning, October 19, Plaintiffs advised us that the family had not yet arrived and would like to try again later that day. The port was readvised of their anticipated mid-afternoon arrival.

The family did not appear at the port, however, until the next day, Friday, October 19. Despite our repeated requests for advance notice, we were not informed of their arrival until we received a phone call on the 19th that the family was waiting on the bridge that very moment. We immediately notified the port, and the family crossed into the United States and was processed shortly thereafter.

Plaintiffs also indicated over that time period that they believed Roberto could be released from Mexican officials' custody at any moment. The port was kept advised. Early the morning of October 24, however, Plaintiffs called and informed us that Roberto was in the process of being removed to Nicaragua by Mexican authorities and asked whether the United States government would intercede on his behalf, or verify in writing our agreement to allow Roberto to cross into the United States. You did not indicate why our emails were insufficient to provide that written verification.

> While we were conferring with our clients, Plaintiffs informed us that afternoon that, without explanation, Mexican immigration officials were ("are") taking Roberto directly to the Hidalgo port of entry from Veracruz. The port was advised of Roberto's arrival, despite Plaintiffs' inability to provide us with any estimate time of arrival. Plaintiffs then informed us at 9:30 PM that Roberto would be put on a bus later that evening. Plaintiffs were again unable to provide us with any estimated time of arrival, but the port was nevertheless readvised.
>
> The next morning, October 25, Plaintiffs informed us that Roberto was not en route to the port. Plaintiffs informed us that INAMI at some point had contacted Sylvia Briones, the Assistant Port Director at Hidalgo, who you say informed INAMI that she knew nothing about Roberto's case. This is not Defendants' understanding of Ms. Briones' representations to INAMI. Nevertheless, you asked us for a direct number to Ms. Briones and confirmation that, if asked by INAMI officials, she would confirm the existence of the agreement. Early in the afternoon of October 25, Defendants provided Plaintiffs with Ms. Briones' phone number and confirmed, as requested, that Ms. Briones would confirm to INAMI if called that Roberto will be processed if he appears.
>
> This morning, October 26, Plaintiffs called and informed us that INAMI refuses to call Ms. Briones and asked that Ms. Briones instead call INAMI and explain that Defendants are prepared to allow Roberto to cross at Reynosa. Although this was not within the scope of the parties' agreement, Ms. Briones spoke with her INAMI counterpart at Reynosa this afternoon and reiterated that when Roberto appears at the port, he will be processed.
>
> The parties' agreement was to allow the Doe Plaintiffs to cross into the United States and present their asylum claims, as Plaintiffs' draft motion requested. Defendants did not agree to affirmatively intercede in Mexico's enforcement of its domestic laws. Defendants have acted reasonably over the past several weeks to provide the relief requested, and indeed, seven of the Doe Plaintiffs and their children have obtained such relief with little or no trouble. Defendants will not be taking further action outside the scope of the parties' agreement at this time. However, should Roberto appear at a port of entry, please advise us and he will be processed in accordance with the parties' agreement and federal law.

37. On Wednesday, July 7, 2021, at 6:02 PM (Eastern) Plaintiffs' counsel

stated via email to Defendants' counsel:

> We'd like to follow up on the attached email thread regarding our plaintiff, Roberto Doe (pseudonym, please see attached email for true biographical information).
>
> As you may recall, Roberto was detained by Mexican authorities on the Hidalgo bridge in 2018. At the time, Roberto was on his way to the POE for inspection and processing, per our agreement with DOJ regarding our amended complaint plaintiffs. After Roberto was detained by Mexican officials, you asked us to keep you informed as to when Roberto would be presenting at the POE again, so that you could let CBP know that he should be inspected and processed per our agreement.
>
> We learned that Roberto will likely be presenting at the San Ysidro POE within the next week. He remains in grave danger and it is urgent that he be inspected and processed so that he may move forward with his asylum claim in the United States. Does DOJ require any other information to ensure that Roberto is able to present for inspection and processing without issue, per our previous agreement?

38. On Thursday, July 8, 2021, at 4:06 PM (Eastern), Defendants' counsel stated via email to Plaintiffs' counsel:

> Consistent with the prior agreement, the San Ysidro Port of Entry will process Roberto Doe when he presents himself at the Port. As before, counsel will not be permitted to accompany Roberto during processing.
>
> San Ysidro conducts intake at 8:00 AM and 3:00 PM (Pacific); please provide the date and time slot Roberto will present himself. Roberto should use the Pedestrian East entrance. He must provide proof of a negative COVID-19 test from within 48 hours prior to presenting, and he should be bring any necessary medication(s). In the interest of avoiding confusion, please let us know what form(s) of identification Roberto will possess.

39. On Monday, July 12, 2021, at 10:09 AM (Eastern), Plaintiffs' counsel stated via email to Defendants' counsel:

> Thank you for confirming that Roberto will be inspected and processed when he presents. Given his prior removal from Mexico after his apprehension on the Hidalgo bridge, we are concerned that Roberto may

13   DECL. OF ALEXANDER J. HALASKA
Case No. 3:17-cv-02366-BAS-KSC

have trouble transiting through Mexico to reach the POE. Are you able to provide a letter or other written confirmation stating that Roberto will be inspected and processed at the POE when he arrives? Roberto could use that to apply for a Forma Migratoria Múltiple (FMM) in Mexico, which would allow him lawful transit through Mexico.

In the alternative, we would ask that DOJ allow Roberto to fly into the United States directly. This would prevent any issues that could arise with Mexican authorities due to his prior removal from Mexico. We could provide flight information and information about Roberto's proposed sponsor and address in the United States if you are amenable to that option.

40. On Tuesday, July 13, 2021, at 10:10 PM (Eastern), Defendants' counsel stated via email to Plaintiffs' counsel: "As I note in my email below, consistent with its prior agreement, CBP has agreed that the San Ysidro Port of Entry will process Roberto Doe when he presents himself at the Port. That email from DOJ counsel serves as written confirmation that Roberto will be inspected and processed when he presents himself at San Ysidro. Defendants decline to provide additional written confirmation. As to Plaintiffs' alternative request to facilitate air travel into the United States, Defendants decline to take such measures, as they were not part of the original agreement and would typically require the issuance of a U.S. travel document."

41. On Thursday, July 15, 2021, at 3:06 PM (Eastern), Plaintiffs' counsel stated via email to Defendants' counsel:

We will inform Roberto Doe that the email serves as confirmation that he will be inspected and processed once he reaches the POE. To be clear and so it is in this email chain, Roberto Doe is the pseudonym for our plaintiff [FULL NAME REDACTED], DOB: [REDACTED]. Mr. [Roberto Doe] is a citizen of Nicaragua and has a Nicaraguan passport.

Could you please confirm that this email chain refers to [FULL NAME REDACTED], aka Roberto Doe?

42. On Thursday, July 15, 2021, at 7:57 PM (Eastern), Defendants' counsel stated via email to Plaintiffs' counsel:

> Yes, this email thread refers to [FULL NAME REDACTED], a/k/a Roberto Doe.
>
> Can you please provide the date and time slot (8:00 AM or 3:00 PM (Pacific)) Roberto will present himself at San Ysidro? We note again that Roberto must provide proof of a negative COVID-19 test from within 48 hours prior to presenting to be permitted entry, and he should be bring any necessary medications. Please let us know what form(s) of identification Roberto will possess.

43. On Friday, July 30, 2021, at 9:12 AM, Defendants' counsel stated via email to Plaintiffs' counsel: "Can you please provide the date and time slot when Roberto intends to present himself at the San Ysidro POE, and confirm that he will provide a negative COVID-19 test from within 48 hours prior to presenting? We would like to ensure CBP has this information to reduce the chance of issues at the POE."

44. On Monday, August 2, 2021, at 12:36 PM (Eastern), Plaintiffs' counsel stated via email to Defendants' counsel: "Roberto is facing unexpected issues in getting to the San Ysidro POE. Our understanding is that it will take at least another several weeks. We will let you know once we have more information as to when he will present. We'll make sure he has a negative COVID test at that time."

45. On August 12, 2021, at 10:50 AM (Eastern), Plaintiffs' counsel stated via email to Defendants' counsel: "Due to ongoing concerns about the safety of Roberto Doe approaching the southern border over land, we again wanted to raise the question of whether Defendants would agree to allow Roberto to fly directly into a US airport on parole. We understand that this process was used with the separated families who were brought back to the US. Since they were paroled in, a travel document was not required. We do not see this as a substantive deviation from the previous agreement to allow Roberto to be inspected and processed upon arrival at a POE. Please let us know if you would be amenable to this. We would be happy to discuss further over the phone if helpful."

46. On August 13, 2021, at 6:07 PM (Eastern), Defendants' counsel stated

15   DECL. OF ALEXANDER J. HALASKA
Case No. 3:17-cv-02366-BAS-KSC

via email to Plaintiffs' counsel: "Defendants' response remains the same. Plaintiffs did not request, and the government did not agree to facilitate, any named Plaintiffs' air travel to the United States. Further, your description of the process regarding the return of previously-separated parents is inaccurate, as those individuals who flew to the United States possessed travel documents that were issued following inter-departmental coordination."

47. On Thursday, December 2, 2021, Plaintiffs' counsel stated to Defendants' counsel via email: "As we've previously discussed, named plaintiff Roberto Doe still intends to seek asylum in the United States. He is now in imminent danger but unable to reach the US-Mexico land border. In light of the government's prior refusal to issue him travel papers that would enable him to board a flight to the United States, plaintiffs intend to seek court intervention directing defendants to do so. This relief is necessary to put Mr. Doe in the same position that he would have been in but for the government's illegal conduct. See Pls. Br. Concerning Declaratory and Injunctive Relief [Dkt. 768] at 12."

48. On December 3, 2021, the parties met and conferred by telephone and discussed some aspects of the substantive relief Plaintiffs are seeking in their *ex parte* application. In describing the relief Plaintiffs would seek, Plaintiffs' counsel did not inform Defendants' counsel that Plaintiffs would ask the Court to direct compliance within two days. During this conference, Defendants' counsel asked Plaintiffs' counsel whether Plaintiffs would seek expedited briefing, and Plaintiffs' counsel represented that they would likely seek expedited briefing.

49. On December 6, 2021, Plaintiffs' counsel informed Defendants' counsel by email that "Roberto Doe has a valid Nicaraguan passport."

50. On December 6, 2021, Defendants' counsel stated via email to Plaintiffs' counsel: "Defendants do not agree that the issuance of documents to facilitate air travel to the United States is a proper remedy in this case. At this time, Defendants decline to facilitate air travel for Mr. Doe."

51. On December 7, 2021, Defendants' counsel stated via email to Plaintiffs' counsel: "As an update, Defendants are in fact still actively considering Plaintiffs' request to issue travel papers to allow Roberto Doe to board a plane to resolve the current dispute. We do not yet know when a final decision will be reached."

52. On December 8, 2021, Plaintiffs' counsel stated via email to Defendants' counsel:

> Thank you for the update. That's correct – we are seeking that the court compel Defendants to issue travel documents that could permit Roberto Doe to board a commercial flight to the United States. Once Roberto Doe is in the US, we ask that Defendants abide by the parties' previous agreement that he be inspected and processed, so that he may access the asylum process under the rules in place when he was first turned back (i.e., neither MPP nor Title 42 would apply).
>
> Please note that Plaintiffs will be filing an ex parte application to shorten the briefing schedule concurrently with Plaintiffs' motion for relief."

Plaintiffs' counsel again did not inform Defendants' counsel that Plaintiffs would seek an order compelling the government to comply with any order requiring the issuance of travel documents within two days.

53. On December 14, 2021, Defendants' counsel stated via email to Plaintiffs' counsel:

> Although Defendants maintain their position that travel documents are not proper relief for the violations the Court found in its MSJ Order with respect to Roberto Doe or otherwise, to avoid the need for further motions practice, and as an extension of Defendants' prior agreement to inspect and process the Named Plaintiffs at a land POE, Defendants are willing to agree to grant parole to Roberto Doe and issue travel documents that would allow him to board a commercial flight to the United States. This offer is made subject to the receipt of further information from Roberto Doe, and barring the revelation of derogatory national security information.
>
> To provide travel documents, Defendants require:
>
> - A completed and signed USCIS Form I-131, Application for Travel Document.

17   DECL. OF ALEXANDER J. HALASKA
Case No. 3:17-cv-02366-BAS-KSC

- A clear photocopy of a valid, unexpired passport/travel document biographic data page for the applicant.
- A proposed flight itinerary

Typically, parole decisions take between 60 and 90 days to decide, but Defendants have agreed to expedite this timeline and process Roberto Doe's application packet within 2 weeks of receipt of a completed packet. Also please note that, consistent with current CDC guidelines and Executive Order(s), current COVID-19 vaccination and testing protocols will be required at the time of travel.

Defendants note that, if he arrives at an airport as he requests, Roberto Doe will not be subject to MPP or the Title 42 Order precluding the introduction of covered noncitizens. Plaintiffs' request that Defendants grant him access to the asylum process under the rules and regulations in effect in October 2018 is otherwise so general that Defendants cannot agree to it, but they may be willing to consider specific asylum rules and regulations that Plaintiffs contend should not be applied to Roberto Doe's asylum claim, if Plaintiffs can provide such specific rules for Defendants' consideration.

54. On December 14, 2021, Plaintiffs' counsel stated via email to Defendants' counsel: "Thank you for this update. We will work on preparing the requested documents and information for Roberto Doe."

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge. Executed on December 14, 2021 in Washington, D.C.

*/s/ Alexander J. Halaska*
ALEXANDER J. HALASKA