MAYER BROWN LLP
   Matthew H. Marmolejo (CA Bar No. 242964)
   *mmarmolejo@mayerbrown.com*
350 South Grand Avenue
25th Floor
Los Angeles, California 90071-1503
United States of America
   Ori Lev (DC Bar No. 452565)
   *olev@mayerbrown.com*
   Stephen M. Medlock (VA Bar No. 78819)
   *smedlock@mayerbrown.com*
1999 K Street, N.W.
Washington, District of Columbia 20006-1101
United States of America71
Telephone: +1.202.263.3000
Facsimile: +1.202.263.3000

SOUTHERN POVERTY LAW CENTER
   Melissa Crow (DC Bar No. 453487)
   (*pro hac vice*)
   *melissa.crow@splcenter.org*
1101 17th Street, N.W., Suite 705
Washington, D.C. 20036
Telephone: +1.202.355.4471
Facsimile: +1.404.221.5857

*Additional counsel listed on next page*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Al Otro Lado, Inc. , *et al.*, <br><br> Plaintiff, <br><br> vs. <br><br> Alejandro Mayorkas,[1] *et al.*, <br><br> Defendant. | Case No. 17-cv-02366-BAS-KSC <br><br> **EXHIBIT 1 TO PLAINTIFFS' NOTICE CONCERNING DKT. 775** |

---

[1] Secretary Mayorkas is automatically substituted pursuant to Fed. R. Civ. P. 25(d).

CENTER FOR CONSTITUTIONAL RIGHTS
   Baher Azmy (NY Bar No. 2860740) (*pro hac vice*)
   *bazmy@ccrjustice.org*
   Angelo Guisado (NY Bar No. 5182688) (*pro hac vice*)
   *aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

SOUTHERN POVERTY LAW CENTER
   Sarah Rich (GA Bar No. 281985) (*pro hac vice*)
   *sarah.rich@splcenter.org*
   Rebecca Cassler (MN Bar No. 0398309) (*pro hac vice*)
   *rebecca.cassler@splcenter.org*
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: +1.404.521.6700
Facsimile: +1.404.221.5857

AMERICAN IMMIGRATION COUNCIL
   Karolina Walters (DC Bar No. 1049113) (*pro hac vice*)
   *kwalters@immcouncil.org*
   Gianna Borroto (IL Bar No. 6305516) (*pro hac vice*)
   *gborroto@immcouncil.org*
1331 G St. NW, Suite 200
Washington, D.C. 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

## DECLARATION OF NICOLE ELIZABETH RAMOS

I, Nicole Elizabeth Ramos, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am a licensed U.S. attorney barred in the State of New York. I reside in Tijuana, Mexico, where I serve as the Director of Al Otro Lado's Border Rights Project, which serves migrants who are seeking asylum at the US-Mexico border.

2. In addition to my work with Al Otro Lado, I serve as an Adjunct Professor at Temple University, Beasley School of Law. I also speak extensively at universities, law schools, and professional conferences throughout the United States and Mexico regarding the impact of U.S. and Mexican border enforcement practices and policies on asylum seekers, and have testified on multiple occasions before the Inter-American Commission on Human Rights regarding this topic.

3. At the Border Rights Project, we provide legal orientation and legal accompaniment to migrants in the humanitarian parole process at eight ports of entry along the US-Mexico border. In Tijuana, we conduct in-person human rights monitoring at the San Ysidro Port of Entry.

4. On December 3, 2021, at approximately 8 a.m., I traveled to the San Ysidro East Port of Entry to accompany five asylum seekers who were scheduled to present themselves to CBP officers that morning, following the approval of their applications for humanitarian parole.

5. After speaking with two CBP officers stationed behind a concrete divider and concertina wire at the US-Mexico border line, and explaining that the asylum seekers whom I was accompanying had appointments to be processed into the United States, I stood to the side of the document inspection checkpoint waiting for a supervisor to escort the asylum seekers into the port of entry.

6. While waiting, I saw two families approach the officers at the inspection point very close in time to each other. Each of the families included a single mother traveling with children, some of whom appeared to be very young, probably under six years of age. Each mother approached the officers, clutching documents, and expressed that she and her family were seeking asylum and feared remaining in Mexico.

7. The officers at the checkpoint explained in Spanish, and then repeated, that because the border was closed, the families would not be able to seek asylum. I am fluent in Spanish.

8. Both families appeared to have a difficult time understanding this news, and appeared shocked that they could not seek asylum at the port of entry. Each of the families reiterated their fear of remaining in Mexico to the officers.

9. Noting the families appeared to be in distress, I approached the families and the officers, and identified myself as an attorney. I asked the families if they needed assistance in finding shelter, and explained that the officers were unlikely to accept them for processing.

10. Through our conversation, I learned that both families were Mexican. One family had no interest in relocating to a migrant shelter and shortly thereafter left the port of entry. The other family told me that they did in fact need shelter because they had nowhere else to go and very little money left after their bus journey from southern Mexico. The mother explained that she had fled a violent partner, who was also a cartel hitman. She told me that one of her sons still suffered from the effects of injuries the former partner had inflicted during one of her pregnancies.

11. Eventually, a CBP supervisor arrived and escorted the five asylum seekers whom I was accompanying that morning into the port-of-entry building. I took the family back to Al Otro Lado's Tijuana office in order to help them identify a migrant shelter that could accept them.

12. On December 7, 2021, at approximately 8 a.m., I traveled back to the San Ysidro port of entry in Tijuana, Mexico to accompany other asylum seekers whose humanitarian parole applications had been approved and who were scheduled to present themselves to CBP authorities. After notifying the CBP officers on duty that we were there for the asylum seekers' scheduled appointment, I waited off to the side.

13. Shortly after we arrived at the port of entry, two other families approached the document inspection checkpoint. I was already familiar with these families because they are clients of Al Otro Lado. One of the families is a two-parent family with young children from El Salvador. The other family is a pair of siblings who identify as LGBTQ.

14. Following the families' encounters with the CBP officers at the document inspection checkpoint, I had the opportunity to speak with them about their interaction. Both families reported that they had explained to the officers that they wanted to seek asylum in the United States, and that they feared returning to their home countries and remaining in Mexico.

15. Both families indicated that officers advised them that they could not seek asylum at the port of entry at that time and directed them to travel to the Chaparral/Pedwest port of entry where they could add their names to a waitlist to seek asylum in the United States.

16.     However, the waitlist, which was previously managed by Grupo Beta (part of the Mexican immigration agency) at the Chaparral port of entry, ceased operating in March 2020 in the early days of the COVID-19 pandemic, just before the Trump Administration closed the border pursuant to Title 42. There is no longer a waitlist at the Chaparral port of entry. It is currently the site of a large open-air refugee tent encampment that began in February 2021. At this time, the Chaparral port of entry is closed to all outbound pedestrian traffic.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and recollection.

Executed on December 17, 2021 at Tijuana, Mexico.

_____
Nicole Elizabeth Ramos