UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

AL OTRO LADO, INC. et al.,

                           Plaintiffs,

v.

CHAD F. WOLF, Acting Secretary, U.S. Department of Homeland Security, in his official capacity, et al.,

                         Defendants.

Case No.:  3:17-cv-02366-BAS-KSC

**ORDER RE PLAINTIFFS' PROPOSED DISCOVERY REQUESTS [Doc. No. 776] AND DEFENDANTS' OPPOSITION TO PLAINTIFFS' PROPOSED DISCOVERY REQUESTS [Doc. No. 785]**

Before the Court is plaintiffs' Notice of Filing Discovery Requests Pursuant to Docket No. 760 [Doc. No. 776] and defendants' Opposition thereto [Doc. No. 785]. Doc. No. 760 is, in part, the District Court's Order Granting Plaintiffs' Motion for Discovery ("Order").  Plaintiffs' proposed Discovery Requests [Doc. No. 776] and defendants' Opposition thereto [Doc. No. 785] have been referred to the undersigned Magistrate Judge for consideration.  For the reasons outlined more fully below, the Court finds that defendants' request to "disapprove and strike" four of plaintiffs' proposed discovery requests must be GRANTED in part and DENIED in part in accordance with the Order [Doc. No. 760].

/ / /

/ / /

### *Background*

On November 19, 2019, the District Court "provisionally certifie[d] a class consisting of 'all non-Mexican asylum-seekers who were unable to make a direct asylum claim at a U.S. [Port of Entry ("POE"] before July 16, 2019 because of the U.S. Government's metering policy, and who continue to seek access to the U.S. asylum process.'"  The District Court's November 19, 2019 Order included the following Preliminary Injunction ("PI"):  "Defendants are hereby ENJOINED from applying the Asylum Ban to members of the aforementioned provisionally certified class and ORDERED to return to the pre-Asylum Ban practices for processing the asylum applications of members of the certified class."  [Doc. No. 330, at p. 36.]

On October 30, 2020, the District Court granted plaintiffs' Motion for Clarification of the PI.  [Doc. No. 605.]  The District Court made the following findings to clarify the PI:  (1) EOIR is bound by the terms of the PI;  (2) DHS and EOIR must take immediate affirmative steps to reopen or reconsider past determinations that potential class members were ineligible for asylum based on the Asylum Ban, for all potential class members in expedited or regular removal proceedings. Such steps include identifying affected class members and either directing immigration judges or the BIA to reopen or reconsider their cases or directing DHS attorneys representing the government in such proceedings to affirmatively seek, and not oppose, such reopening or reconsideration; (3) defendants must inform identified class members in administrative proceedings before USCIS or EOIR, or in DHS custody, of their potential class membership and the existence and import of the PI; and (4) defendants must make all reasonable efforts to identify class members, including but not limited to reviewing their records for notations regarding class membership made pursuant to the guidance issued on November 25, 2019, and December 2, 2019, to CBP and OFO, respectively, and sharing information regarding class members' identities with Plaintiffs ("Clarification Order").  [Doc. No. 605, at pp. 24-25.]

/ / /

On September 24, 2021, the District Court issued an Order Denying as Moot Plaintiffs' Motion to Enforce PI [Doc. No. 644], because this Motion is "subsumed" in a later filed Motion for Court Oversight of the PI.[1]  [Doc. No. 760, at pp. 1-2.]  This same Order grants plaintiffs' Motion for Discovery [Doc. No. 680].  [Doc. No. 760, at pp. 2-3.] In the Motion for Discovery, plaintiffs cited evidence indicating defendants are not complying with the District Court's PI Orders[2] and therefore requested an order requiring defendants to provide information on the identities of likely class members; how the Government determines who is a likely class member; and what the Government does/did after learning an individual is a likely class member.  [Doc. No. 760, at p. 2.]  The District Court's Order granting the Motion for Discovery states as follows:  "The Court agrees with Plaintiffs that discovery would enable them to determine whether the Government has complied with the [PI]. Therefore, the Court GRANTS the Motion for Discovery in principle, but requests that Plaintiffs submit their discovery requests to the Court for approval. The Government may oppose the specific requests." [Doc. 760, at p. 3.]

### *Discussion*

Plaintiffs' Notice of Filing Discovery Requests presents eight interrogatories and nine document requests they would like to serve on defendants to determine the extent of their compliance with the PI Orders.  [Doc. No. 776-1, at pp. 9-11; Doc. No. 776-2, at pp. 9-11.]  Defendants' Opposition "opposes wholesale [four] requests" believed to be facially improper and/or to "fall outside the scope of the discovery contemplated" by the District Court's Order.  [Doc. No. 785, at p. 6, referring to Doc. No. 760.]  As to the remaining discovery requests proposed by plaintiffs, defendants' Opposition reserves the

---

[1]    The Motion for Court Oversight of the PI remains pending [Doc. No. 736].
[2]    "PI Orders" refers collectively to the District Court's November 19, 2019 Order Granting a PI [Doc. No. 330, at p. 36] and the District Court's October 30, 2020 Order Granting Plaintiffs' Motion for Clarification of the PI [Doc. No. 605].

right to make other more routine objections to the scope of the requests in their responses to specific interrogatories and document requests.  [Doc. No. 785, at p. 6.]

Defendants' request that the Court "disapprove and strike" the following proposed discovery requests:

**_Plaintiffs' Document Request No. 4_** seeks "[d]ocuments sufficient to identify the steps, measures, plans, guidance, policies, or procedures that any respondent **_proposed or considered_** to comply with the [PI Orders] but that [defendants] **_declined_** to take or implement, including, but not limited to, documents explaining why [defendants] decided not to take or implement those steps, measures, plans, guidance, policies, or procedures." [Doc. No. 776-2, at p. 10 (emphasis added).]

Defendants request that the Court disapprove and strike Document Request No. 4 because it would not lead to the discovery of evidence on non-compliance.  By its terms, Request No. 4 only seeks information about "procedures that were *never* implemented," and it is the procedures that were or are in place that are relevant to compliance with the District Court's PI Orders.  [Doc. No. 785, at p. 6.]  "By their very nature, rejected proposals do not show steps taken or procedures implemented by the Government to comply with the PI Orders."  [Doc. No. 785, at p. 12.]  Therefore, without more, it is this Court's view that rejected steps, measures, plans, guidance, policies, or procedures are not directly relevant to whether the Government has complied or is complying with the PI Orders fall outside the scope of discovery permitted by the District Court's Order [Doc. No. 760], so the burden of requiring defendants to respond to Document Request No. 4 outweighs its likely benefit.

Defendants also complain that Request No. 4 seeks production of documents that are subject to the deliberative process and attorney-client privileges.[3]  [Doc. No. 785, at

---

[3]      "To protect agencies from being 'forced to operate in a fishbowl,' (citation and internal quotation marks omitted), the deliberative process privilege shields from

pp. 7, 11.]  The Court agrees with defendants that the requested documents, by their very nature, are likely to be privileged, and there is nothing to indicate plaintiffs have an overriding need to discover deliberative materials.  As represented, the requested documents are likely to consist mostly of "communications between litigating counsel and agency counsel, or between agency counsel and their internal clients, regarding the interpretation of the Court's PI Orders."  [Doc. No. 785, at p. 14.]

---

disclosure 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated,' (citation and internal quotation marks omitted). . . .  To encourage candor, which improves agency decision-making, the privilege blunts the chilling effect that accompanies the prospect of disclosure.  [¶]This rationale does not apply, of course, to documents that embody a final decision, because once a decision has been made, the deliberations are done.  The privilege therefore distinguishes between pre-decisional, deliberative documents, which are exempt from disclosure, and documents reflecting a final agency decision and the reasons supporting it, which are not. (Citation omitted.) Documents are 'pre-decisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position.  (Citations omitted.)  There is considerable overlap between these two prongs because a document cannot be deliberative unless it is pre-decisional.  [¶]It is not always self-evident whether a document represents an agency's final decision, but one thing is clear:  A document is not final solely because nothing else follows it.  Sometimes a proposal dies on the vine.  (Citation omitted.)  That happens in deliberations—some ideas are discarded or simply languish.  Yet documents discussing such dead-end ideas can hardly be described as reflecting the agency's chosen course.  (Citation omitted.) . . . [¶]To decide whether a document communicates the agency's settled position, courts must consider whether the agency treats the document as its final view on the matter. (Citation omitted.)  When it does so, the deliberative 'process by which governmental decisions and policies are formulated' will have concluded, and the document will have 'real operative effect.'  (Citation omitted.)'"  *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785-786, 209 L. Ed. 2d 78 (2021).  "The deliberative process privilege is a qualified one. A litigant may obtain deliberative materials if his or her need for the material and the need for accurate fact-finding override the government's interest in non-disclosure." *F.T.C. v. Warner Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).  "The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020).

3:17-cv-02366-BAS-KSC

1    Additionally, it is apparent that responding to Document Request No. 4 would

2    require defendants to prepare a time-consuming, extensive privilege log, which could, in

3    turn, lead to protracted litigation on privilege issues that would not be helpful to

4    determining compliance with the PI Orders.  Accordingly, defendants' request to

5    disapprove and strike Document Request No. 4 from plaintiffs' proposed discovery

6    requests is GRANTED.

7    ***Plaintiffs' Document Request No. 3*** seeks disclosure of "[a]ll documents ***relating***

8    ***to*** waitlists kept by persons on the Mexican side of the U.S.-Mexico border, including,

9    but not limited to ***all waitlists in [defendants'] possession, custody, or control*** (excluding

10   those provided by plaintiffs); documents ***relating to*** which waitlist numbers were issued

11   to POEs prior to July 16, 2019[;] documents ***relating to*** which waitlist numbers were

12   being called for entry at a POE on a particular date on or after July 16, 2019;

13   communications with persons in Mexico regarding the waitlists between July 16, 2019

14   and the present; any [defendants'] consideration of obtaining or efforts to obtain such

15   waitlists; and documents relating to how any [defendant] treats the inclusion of a person's

16   name or personal identifying information on a waitlist kept on the Mexican side of the

17   U.S.-Mexico border for purposes of determining whether that person is a class member."

18   [Doc. No. 776-2, at p. 10 (emphasis added).]  ***Plaintiffs' Interrogatory No. 7*** seeks a

19   detailed description of "the steps or actions that any [defendant] plans to take, is taking,

20   or has taken to obtain copies of waitlists, including, but not limited to, a description of

21   any waitlists that are currently in the possession, custody, or control of any respondent

22   and an explanation of how the [defendant] came to be in possession, custody, or control

23   of each waitlist."  [Doc. No. 776-1, at p. 10.]

24   Preliminarily, the Court notes there is a separate Motion to Facilitate Notice to

25   Class Members that was filed by plaintiffs and that remains pending before the District

26   Court.  [Doc. No. 720.]  In the Motion to Facilitate Notice to Class Members, plaintiffs

27   argue that defendants have possession, custody, or control over the waitlists and request

28   that the District Court require defendants to obtain copies of the waitlists that were kept

3:17-cv-02366-BAS-KSC

by Mexican authorities and shelters to facilitate the Turnback Policy.  [Doc. No. 720-1, at pp. 15, 17, 21.]  Specifically, plaintiffs want the Court to require defendants to obtain waitlists for "the POEs at San Luis, AZ, Nogales, AZ, Douglas, AZ, Del Rio, TX, Laredo, TX, and Hidalgo, TX, as well as any updated versions of waitlists for the POEs at San Ysidro, CA, and Mexicali, CA."  [Doc. No. 720-1, at p. 9.]  Defendants have opposed this Motion for various reasons. [Doc. No. 723, at p. 2.]  This Motion to Facilitate Notice to Class Members remains pending and has not been assigned to the undersigned magistrate judge for resolution.  Accordingly, the issue of whether defendants have any obligation to obtain copies of waitlists is an unresolved matter that is currently before the District Court.  For this reason and for the reasons outlined more fully below, the Court declines to require defendants to respond to Document Request No. 3 and Interrogatory No. 7, as written.

Defendants argue that Document Request No. 3 and Interrogatory No. 7 seek disclosure of a broad range of "information about waitlists that is beyond the scope of what plaintiffs sought in their discovery motion" (*i.e.*, documents demonstrating "who is a likely class member; how [the defendants] determine[] who [is] a likely class member; and what the [defendants do or have done] after learning an individual is a likely class member[]").  [Doc. No. 785, at p. 15, referring to Doc. No. 760, at p. 2.]  Defendants also argue that "every document that contains some information ***about*** waitlists will not help determine whether defendants are complying with the PI Orders."  [Doc. No. 785, at p. 16 (emphasis added).]

Defendants represent that Document Request No. 3 seeks production of some waitlists that are not in their possession, custody, or control, but they do acknowledge that waitlists "would be relevant to PI compliance to the extent that they are in the Government's possession and currently being used in its implementation of the PI."  [Doc. No. 785, at p. 16.]  Defendants also acknowledge the relevance of "waitlists used in making class membership determinations (including how to 'treat[] the inclusion of a person's name or personal identifying information on a waitlist kept on the Mexican side

3:17-cv-02366-BAS-KSC

of the U.S.-Mexico border for purposes of determining whether that person is a class member[]."  [Doc. No. 785, at p. 16.]  However, defendants contend this information is likely responsive to "other requests, such as [Document Request No. 1] (which seeks, among other things, documents sufficient to show the [defendants'] procedures or guidance for making class membership determinations) or Interrogatory [No.] 1 (which seeks a description of the same)."

The Court agrees with defendants that Document Request No. 3 and Interrogatory No. 7, as written, are overly broad and not tailored to discover information within the scope of the District Court's Order [Doc. No. 760] or information directly relevant to whether defendants are complying with the PI Orders.  However, in the interests of judicial efficiency and based on the information presented, the Court finds it appropriate to permit plaintiffs to serve defendants with a more narrowly tailored document request. Plaintiffs may serve defendants with a revised Document Request No. 3 that only requires them to produce copies of any waitlists in their physical possession that they have used or intend to use to determine whether any individual is a class member; and any documents describing, outlining, or explaining how the inclusion of an individual's name and/or identifying information on a waitlist within defendants' physical possession or in the physical possession of others is being used or will be used to determine whether an individual is a class member.  Accordingly, defendants request for an order disapproving and striking Document Request No. 3 and Interrogatory No. 7 is GRANTED in part and DENIED in part as outlined above.

***Document Request No. 7*** seeks "[a]ll documents relating to the names and other identifying information of persons who were on, or are scheduled to be on, removal flights from the United States from July 16, 2019 to March 5, 2021, including flight manifests and information on the flight's point of origin, destination, and the date and time the flight was or is scheduled to take off from the United States."  [Doc. No. 776-2, at pp. 10-11.]

/ / /

1    For several reasons, defendants argue Document Request No. 7 is extremely
2    overbroad and seeks "irrelevant and sensitive removal and flight information." [Doc. No.
3    785, at p. 18.]  First, plaintiffs have not attempted to limit the request to actual or even
4    potential class members.  As written, the request would include private information about
5    all individuals who were removed over a two-year period, and this would include
6    individuals who entered well before July 16, 2019; individuals who entered the United
7    States through the northern border or by air; and other individuals who could not possibly
8    be class members.

9    Second, defendants assert that Document Request No. 7 does not include any
10   temporal limits, and, as a result, seeks documents and information that predate the
11   issuance of the PI on November 19, 2019.  Without such time limitations, defendants also
12   contend Document Request No. 7 seeks documents and information about individuals
13   removed on flights while the PI was stayed by the Ninth Circuit through March 5, 2020,
14   when the stay was terminated.  [Doc. No. 785, at p. 19.]  According to defendants,
15   information about removals that occurred while the temporary stay was in place "could
16   not possibly lead to evidence of noncompliance with the PI Orders, as the PI Orders were
17   not in effect at those times." [Doc. No. 785, at p. 19.][4]

18   Third, defendants contend that Document Request No. 7 would be "unduly
19   burdensome and duplicative" even if plaintiffs narrow the scope of the request, because
20   defendants have already provided plaintiffs with "the date[s] that potential PI class

---

[4]    Without more, and based on the information presented, the Court questions the
relevance of the Ninth Circuit's temporary stay as it relates to determining compliance
with the PI Orders.  Presumably, notwithstanding the temporary stay, a class member
removed during the stay without receiving the benefits of the PI Orders is still a class
member entitled to those benefits. Thus, it appears that the identities of individual's
removed during the stay would be relevant to compliance with the PI Orders, and
information about these individuals should have been included in the electronic records
referenced in the Opposition that defendants previously provided to plaintiffs. [Doc. No.
785, at p. 9.]

9

members were removed from the United States as reflected in its electronic records, without divulging detailed and sensitive information about removal flights (such as the location and times of departures)." [Doc. No. 785, at p. 19.]  In addition, defendants represent they have "already produced data about executed removal orders as of April 3, 2021, for potential PI class members who have claimed fear or received a decision on an asylum-related application filed in immigration court." [Doc. No. 785, at pp. 19-20.]

Fourth, defendants are concerned that producing sensitive information about removal flights, such as the timing and location of flights over the course of approximately two years, would "when aggregated" reveal "methods of law enforcement removal operations." [Doc. No. 785, at p. 20.]  In defendants' view, Document Request No. 7 is not tailored to uncover information about PI compliance but is instead a "fishing expedition into the circumstances of removal flights." [Doc. No. 785, at p. 20.]

While the Court acknowledges that plaintiffs are entitled to discover whether class members were removed from the United States after the PI was entered without regard for class membership and/or the terms of the PI Orders, Document Request No. 7 is not tailored to reveal this information or other information relevant to PI compliance. Without more, the relevance or significance of "flight manifests and information on the flight's point of origin, destination, and the date and time the flight was or is scheduled to take off from the United States" to PI Order compliance is unclear.  In addition, the Court agrees with defendants that Document Request No. 7 is overly broad, because it does not include temporal limitations tailored to reveal information about class members. Accordingly, defendants' request to disapprove and strike Document Request No. 7 from plaintiffs' proposed discovery requests is GRANTED.

### *Conclusion*

Based on the foregoing, defendants' request for an order disapproving and striking four of plaintiffs' proposed discovery requests is GRANTED in part and DENIED in part. [Doc. No. 785.]  Plaintiffs' Document Request No. 3, 4, and 7 and Interrogatory No. 7 are disapproved and stricken from plaintiffs' proposed discovery requests.  However, as

outlined above, plaintiff may serve defendants with a revised Document Request No. 3 that only requires them to produce copies of any waitlists in their physical possession that they have used or intend to use to determine whether any individual is a class member and any documents describing, outlining, or explaining how the inclusion of an individual's name and/or identifying information on a waitlist within defendants' physical possession or in the physical possession of others is being used or will be used to determine whether an individual is a class member.

Except as outlined above and to the extent they have not already done so, plaintiffs must serve defendants with their discovery requests, including Document Request No. 3 with the revisions explained herein, within ***three (3) days*** of the date this Order is entered. To the extent they have not already done so, defendants must serve plaintiffs with full, complete, substantive responses to these requests no later than ***thirty (30) days*** after this Order is entered. If there are disputes over defendants' responses, the parties must refer to and follow the Chambers Rules of the undersigned Magistrate Judge.

IT IS SO ORDERED.

Dated: January 25, 2022

Hon. Karen S. Crawford
United States Magistrate Judge