1

2

3

4

5

6

7

8               **UNITED STATES DISTRICT COURT**

9             **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   AL OTRO LADO, INC.; ABIGAIL DOE,        Case No. 17-cv-2366-BAS-KSC
     BEATRICE DOE, CAROLINA DOE,
12   DINORA DOE, INGRID DOE, URSULA          **REMEDIES OPINION**
     DOE, JOSE DOE, ROBERTO DOE,
13   MARIA DOE, JUAN DOE, VICTORIA
     DOE, BIANCA DOE, EMILIANA DOE,
14   AND CESAR DOE, individually and on
     behalf of all others similarly situated,
15

16                           Plaintiffs,

17        v.

18   ALEJANDRO MAYORKAS, Secretary,
     U.S. Department of Homeland Security, in
19   his official capacity; CHRIS MAGNUS
     Commissioner, U.S. Customs and Border
20   Protection, in his official capacity; PETE
     FLORES, Executive Assistant
21   Commissioner, Office of Field
     Operations, U.S. Customs and Border
22   Protection, in his official capacity,
23
                             Defendants.[1]
24

25

26

27   _____

28        [1] Because all Defendants are sued in their official capacities, the successors for these public offices are automatically substituted as Defendants per Federal Rule of Civil Procedure 25(d).

                                   - 1 -

In its September 2, 2021 decision, this Court held the right to access the U.S. asylum process conferred vis a vis § 1158(a)(1) applies extraterritorially to noncitizens who are arriving at Class A POEs along the U.S.-Mexico border, but who are not yet within the jurisdiction of the United States, and is of a constitutional dimension.  (Op. Granting in Part and Denying in Part Parties' Cross-Mots. for Summ. J. ("MSJ Opinion"), ECF No. 742.)  It further held that Defendants' systematic turnbacks of asylum seekers arriving at Class A POEs (the "Turnback Policy") amounted to an unlawful withholding by immigration officials of their mandatory ministerial "inspection and referral duties" detailed in 8 U.S.C. § 1225 ("§ 1225"), in violation of the Administrative Procedures Act, 5 U.S.C. § 706(1) *et seq.*, and the Fifth Amendment Due Process Clause.  (MSJ Opinion at 33–34, 37–38); *see* 8 U.S.C. §§ 1225(a)(3) (mapping out immigration officials' duty to inspect asylum seekers), 1225(b)(1)(A)(ii) (mapping out immigration officials' duty to refer asylum seekers to the U.S-asylum process).

In casting appropriate equitable relief to rectify the irreparable injury Defendants' unauthorized and constitutionally violative Turnback Policy has inflicted upon members of the Plaintiff class,[2] this Court ordinarily would be guided by the fundamental principle that an equitable remedy should be commensurate with the violations it is designed to vindicate.  *See Columbus Bd. of Educ. v. Penick*, 443 U.S. 449, 465 (1979) ("[It is an] accepted rule that the remedy imposed by a court of equity should be commensurate with the violation ascertained.").  Equitable relief should leave no stone unturned:  it should correct entirely the violations it is aimed at vindicating.  That cornerstone of Article III courts' equitable powers generally is unfaltering, whether the party against whom an injunction is sought is a private entity, a state actor, or, as here, a federal official.  Thus, in

---

[2] Plaintiffs consist of the named Plaintiffs listed in the case caption, along with a certified class consisting of "all noncitizens who seek or will seek to access the U.S. asylum process by presenting themselves at a Class A [POE] on the U.S.-Mexico border, and were or will be denied access to the U.S. asylum process by or at the instruction of [Customs and Border Protection] officials on or after January 1, 2016."  (Class Certification Order at 18, ECF No. 513.)  The Court also certified a subclass consisting of "all noncitizens who were or will be denied access to the U.S. asylum process at a Class A POE on the U.S.-Mexico border as a result of Defendants' metering policy on or after January 1, 2016."  (*Id.*)

the ordinary course of things, this Court would not hesitate to issue broad, programmatic relief enjoining Defendants from now, or in the future, turning back asylum seekers in the process of arriving at Class A POEs, absent a valid statutory basis for doing so.

Yet the circumstances with which this Court is presented are not ordinary because of the extraordinary, intervening decision of the United States Supreme Court in *Garland v. Aleman Gonzalez*, 142 S. Ct. 2057 (2022). That decision takes a sledgehammer to the premise that immigration enforcement agencies are bound to implement their mandatory ministerial duties prescribed by Congress, including their obligation to inspect and refer arriving noncitizens for asylum, and that, when immigration enforcement agencies deviate from those duties, lower courts have authority to issue equitable relief to enjoin the resulting violations. It does so through unprecedented expansion of a provision of the Illegal Immigration Reform and Immigrant Responsibility Act of 1989 ("IIRIRA"), 8 U.S.C. § 1252(f)(1) *et seq.* ("§ 1252(f)(1)"), which for years the Ninth Circuit has interpreted as placing a relatively narrow limit on injunctive relief. In essence, *Aleman Gonzalez* holds that § 1252(f)(1) prohibits lower courts from issuing class-wide injunctions that "require officials to take actions that (in the Government's view) are not required" by certain removal statutes, including § 1225, or "to refrain from actions that (again in the Government's view) are allowed" by those same provisions. *Id.*, 142 S. Ct. at 2065. Federal courts (except for the Supreme Court) now may only issue injunctions enjoining federal officials' unauthorized implementation of the removal statutes in the individual cases of noncitizens against whom removal proceedings have been initiated. *See id.*

In no uncertain terms, the logical extension of *Aleman Gonzalez* appears to bestow immigration enforcement agencies *carte blanche* to implement immigration enforcement policies that clearly are unauthorized by the statutes under which they operate because the Government need only *claim* authority to implement to immunize itself from the federal judiciary's oversight.

With acknowledgment that its decision will further contribute to the human suffering of asylum seekers enduring squalid and dangerous conditions in Mexican border

- 3 -

communities as they await entry to POEs, this Court finds the shadow of *Aleman Gonzalez* inescapable in this case.  Even the most narrow, meaningful equitable relief would have the effect of interfering with the "operation" of § 1225, as that term is construed by the *Aleman Gonzalez* Court, and, thus, would clash with § 1252(f)(1)'s remedy bar.  *Aleman Gonzalez* not only renders uneconomical vindication of Plaintiff class members' statutorily- and constitutionally-protected right to apply for asylum, those inefficiencies inevitably will lead to innumerable instances in which Plaintiff class members will be unable to vindicate their rights at all.  Thus, while the majority and dissent in *Aleman Gonzalez* hash out their textual disagreements concerning § 1252(f)(1)'s scope in terms of remedies, make no mistake, *Aleman Gonzalez* leaves largely unrestrained immigration enforcement agencies to rapaciously scale back rights.  *See* Tracy A. Thomas, *Ubi Jus, Ibi Remedium:  The Fundamental Right to a Remedy Under Due Process*, 41 San Diego L. Rev. 1633, 1634 (2004) ("Disputes over remedies provide a convenient way for dissenters to resist conformance to legal guarantees.  Courts can declare rights, but then default in the remedy to avoid a politically unpopular result." (footnote omitted)).

Although it is no substitute for a permanent injunction, class-wide declaratory relief is both available and warranted here.  In lieu of even a circumscribed injunction enjoining Defendants from again implementing a policy under which they turn back asylum seekers presenting themselves at POEs along the U.S.-Mexico border, the Court enters a declaration in accordance with its MSJ Opinion that turning back asylum seekers constitutes both an unlawful withholding of Defendants' mandatory ministerial inspection and referral duties under § 1158 and § 1225 in violation of both the APA and the Fifth Amendment Due Process Clause.  The Court also issues relief as necessary to named Plaintiff Beatrice Doe.

//

//

//

//

17cv2366

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    BACKGROUND[3]

On September 2, 2022, this Court granted Plaintiffs' motion for summary judgment on their APA and Fifth Amendment claims.[4]  (*See generally* MSJ Op.)  Specifically, this Court found that Defendants' implementation of the Turnback Policy withheld their mandatory ministerial duties to inspect and refer asylum seekers who present themselves at Class A POEs along the U.S.-Mexico border, but who are not yet within the jurisdiction of the United States, in violation of Section 706(1) of the APA.[5]  (*See id.* at 34.)  This Court further found that, because Defendants' withholding of inspection and referral duties infringed upon the Plaintiff class's right to access the U.S.-asylum process secured by § 1158(a)(1), and because the Plaintiff class's Fifth Amendment due process rights are coextensive with that statute, the Turnback Policy also violates the Fifth Amendment.  (*Id.* at 37–38.)

The Court asked the parties to weigh in on what equitable relief these statutory and constitutional violations warrant.  (*Id.* at 44.)  The parties contemporaneously filed briefs in accordance with the MSJ Opinion on October 1, 2021.  (*See* Pls.' Remedies Br., ECF No. 768; Defs.' Remedies Br., ECF No. 770.)  Plaintiffs additionally filed a Proposed Order listing the injunctive, oversight, and declaratory relief they believe is appropriate to rectify Defendants' systemic violations.  (*See* Proposed Order, ECF No. 773-4.)  On October 22, 2021, Defendants sought leave to file essentially a sur-reply, which addresses the purported

---

[3] Familiarity with this Court's prior orders granting in part and denying in part Defendants' motion to dismiss ("MTD Opinion") (ECF No. 280) and MSJ Opinion is presumed.  The factual and procedural history needed to understand this Remedies Opinion is found in the background section of those Opinions.

[4] This Court also found legally invalid on summary judgment Plaintiffs' claims Defendants committed *ultra vires* violations of the Plaintiff class's right to seek asylum under the Immigration and Nationality Act ("INA") and violated the Alien Tort Statute.  (MSJ Opinion at 11–13, 38–43.)

[5] The term "inspection and referral duties" to which the Court alludes throughout retains the same meaning given to that term in the MSJ Opinion.  (MSJ Opinion at 8 n.7.)  Those duties refer to the asylum provision in § 1158(a)(1), which this Court found bestows upon noncitizens who are in the process of arriving at a Class A POE—but who are still physically outside the international boundary line at the POE—a right to apply for asylum, and § 1225, which sets forth specific asylum processing duties Defendants must undertake to give meaning to that right.  *See* 8 U.S.C. §§ 1225(a)(3) (delineating immigration officers' duty to inspect), 1225(b)(1)(A)(ii) (delineating immigration officers' duty to refer).

overbreadth of Plaintiffs' proposed class-wide injunctions.[6] (*See* Mot. for Leave to File Sur-Reply, ECF No. 773; Defs.' Sur-Reply, ECF No. 773-2.)

Several requests for relief Plaintiffs proffer are not in dispute. The parties agree Plaintiffs are entitled under the APA to vacatur of the Department of Homeland Security ("DHS")'s Metering Guidance and Prioritization-Based Que Management ("PBQM") Memorandum and the Office of Field Operations' Metering Guidance Memorandum, both of which served to formalize Defendants' Turnback Policy in approximately 2018. (*See* Proposed Order ¶ 5; Defs.' Remedies Br. at 6–8 (proposing vacatur of the Memoranda as an appropriate form of relief).)

Furthermore, Defendants do not appear to oppose entry of an order restoring the *status quo ante* for named Plaintiffs Roberto Doe and Beatrice Doe, including requiring Defendants to issue any necessary travel documents to allow them to travel to the United States and to ensure their processing for asylum upon arrival. (*See* Proposed Order ¶ 7.)

Finally, Defendants appear to welcome Plaintiffs' request for entry of a declaratory judgment giving legal effect to the MSJ Opinion's conclusion that § 1158 and § 1225 *require* Defendants to inspect and refer noncitizens who present themselves at Class A POEs but who are not yet within the jurisdiction of the United States (*see* MSJ Opinion 33–34). (*See* Proposed Order ¶ 1; Defs.' Remedies Br. at 6–8 (encouraging Court to enter class-wide declaratory relief, which can then be used "as a predicate to further relief, including an injunction" in individual suits by Plaintiff class members seeking an injunction against Defendants).)

Despite these areas of agreement, there is contentious disagreement concerning whether this Court has authority to enter class-wide injunctive relief and, if so, the proper

---

[6] The Court **GRANTS** Defendants leave to file a sur-reply (ECF No. 773), but notes that Defendants' arguments therein were irrelevant to the issue on which this Court's decision not to enter a class-wide injunction ultimately turns: whether § 1252(f)(1)'s remedy bar applies to this case. *See infra* Sec. III.A.

scope of such relief.  Plaintiffs primarily request the Court to issue a class-wide injunction stating:

> Defendants and others acting at their direction or in active concert or participation with them are PERMANENTLY ENJOINED from turning away, turning back, or otherwise denying access to inspection and/or asylum processing to noncitizens who have not been admitted or paroled and who are in the process of arriving in the United States at Class A Ports of Entry regardless of their purported justification for doing so, absent any independent, express, and lawful statutory authority to do so outside of Title 8 of the U.S. Code.

(Proposed Order ¶ 2.)  Plaintiffs also seek an ancillary injunction directing Defendants and the Executive Office of Immigration Review "[t]o inspect and provide asylum" to each Plaintiff class member "under the rules and regulations that would have applied [to each member] at the time" he or she would have first entered the United States, but for Defendants' unlawful Turnback Policy.  (*Id.* ¶ 3.)[7]  Finally, Plaintiffs seek appointment of Magistrate Judge Karen S. Crawford as special master pursuant to Federal Rule of Civil Procedure ("Rule") 65 to monitor and oversee Defendants' implementation of all class-wide injunctive relief.  (*Id.* ¶ 8.)

Defendants contend the IIRIRA at § 1252(f)(1) bars *any* class-wide injunctive relief in the instant case.  (*See* Defs.' Remedies Br. at 3–4.)  They aver § 1252(f)(1), which prohibits lower courts from "enjoin[ing] or restrain[ing] the operation of [8 U.S.C. §§ 1221 through 1332]," precludes entry of even a circumscribed injunction enjoining Defendants' unauthorized practice of turning back asylum seekers arriving at Class A POEs because such an injunction would interfere with the "operation" of § 1225.  (Defs.' Remedies Br.

---

[7] Additionally, Plaintiffs ask the Court to convert into a permanent injunction the Preliminary Injunction enjoining application of 8 C.F.R. § 208.13(c)(4), known more commonly as the "Asylum Ban," to the immigration proceedings of members of a provisionally certified class consisting of "non-Mexican asylum seekers who were unable to make a direct asylum claim at a [Class A POE] before July 16, 2019 because of [Defendants'] metering policy" (Prelim. Inj., ECF No. 330).  (*See* Proposed Order ¶ 4; *see also* Clarification Order, ECF No. 605.)  The Court addresses this request for class-wide injunctive relief separately in its contemporaneously filed Opinion at ECF No. 816, which principally resolves Plaintiffs' motions to essentially clarify for a second time the contours of the Preliminary Injunction and Clarification Orders (*see* ECF Nos. 644, 736).

at 3–4.)  Defendants further argue that Plaintiffs have failed to show that a balancing of the parties' respective hardships and the public interest favor entry of their proposed permanent injunctions.  Moreover, they contend the class-wide injunctions set forth in the Proposed Order are overbroad, impermissibly vague, and would threaten to hamper implementation of the Department of Health and Human Services' Center for Disease Control and Prevention ("CDC") orders, which, with limited exceptions, effectively suspend asylum processing at land POEs pursuant to 42 U.S.C. § 265 ("Title 42") to prevent the spread of COVID-19 virus at POE facilities.  (*See* Defs.' Remedies Br. at 8–18; Defs.' Sur-Reply at 7–12.)

Several intervening factual developments since the MSJ Opinion have rendered moot certain of Plaintiffs' requests for relief in their Proposed Order.  On November 2, 2022, Defendants voluntarily rescinded the PBQM and Metering Guidance Memoranda; those Memoranda have not been replaced with revised or amended policy documents.  (*See* Rescission of June 5, 2018, Prioritization-Based Queue Management Memorandum, Ex. 2 to Notice of Administrative Action ("NOAA"), ECF No. 775-2; Guidance for Management and Processing of Undocumented Noncitizens at Southwest Border Land Ports of Entry, Ex. 1 to NOAA, ECF No. 775-1.)[8]  Then, on January 28, 2022, the parties indicated that Plaintiff Roberto Doe had arrived in the United States by commercial airline and was allowed to access the U.S.-asylum process.  (*See* Joint Status Report, ECF No. 796.)

//

---

[8] Despite rescission of the PBQM and Metering Guidance Memoranda in November of 2021, asylum processing at the U.S.-Mexico border is still restricted in light of the CDC's COVID-19 Title 42 orders, which generally "suspend[s] the introduction of persons into the United States" who are "traveling from Canada or Mexico (regardless of their country of origin) [and] who would otherwise be introduced into a congregate setting in a land [POE] or Border Patrol station at or near the United States borders with Canada and Mexico[.]" 85 Fed. Reg. 17,060 (Mar. 26, 2020). On April 1, 2022, CDC Director Rochelle Walensky issued an order terminating the then-operative Title 42 order, *see* 87 Fed. Reg. 15,243 (Mar. 17, 2022). 87 Fed. Reg. 19,941 (Apr. 6, 2022). However, the CDC's rescission was enjoined by a district court in the Lafayette Division of the Western District of Louisiana on May 20, 2022. *See Louisiana v. Ctrs. for Disease Control & Prevention*, --- F. Supp. 3d ---, 2022 WL 1604901, at *1 (W.D. La. May 20, 2022). The legality of the Title 42 orders is not at issue in this case.

- 8 -

In addition to these factual developments, the legal landscape concerning § 1252(f)(1) has changed drastically since the MSJ Opinion. At the time of the MSJ Opinion, it was the law in the Ninth Circuit that § 1252(f)(1) "d[id] not . . . categorically insulate immigration enforcement from judicial classwide injunctions." *Gonzalez v. United States Immigration & Customs Enf't*, 975 F.3d 788, 812 (9th Cir. 2020). Rather, the Ninth Circuit left in place lower courts' authority to enjoin or restrain immigration enforcement agencies' *violations* of the covered statutory provisions. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1120 (9th Cir. 2010) (citing *Ali v. Ashcroft*, 346 F.3d 873, 896 (9th Cir. 2003)). The Ninth Circuit did so on the ground that when immigration enforcement agencies implement their duties under §§ 1221 through 1332 in a manner that is not authorized by those statutes, an injunction rectifying the resulting violation(s) does not enjoin the "operation" of those statutes. *See id*.

But on June 13, 2022, the Supreme Court effectively held in *Garland v. Aleman Gonzalez*, 142 S. Ct. 2057 (2022) ("*Aleman Gonzalez*"), that § 1252(f)(1) prohibits lower court injunctions that enjoin even immigration enforcement agencies' "unlawful" or "improper operation" of the covered provisions, including § 1225. *Id.* at 2065 (holding injunctions that "require officials [either] to take actions that (in the Government's view) are not required by [§§ 1221–32]" or "to refrain from actions that (again in the Government's view) are allowed by [§§ 1221–32]" are barred by § 1252(f)(1)). *Aleman Gonzalez* has breathed new life into Defendants' contention that this Court is foreclosed by § 1252(f)(1) from simply enjoining Defendants' unauthorized turnbacks or directing Defendants to administer their inspection and referral duties with respect to Plaintiff class members. (*See* Defs.' Supp. Br., ECF No. 813.) Plaintiffs acknowledge *Aleman Gonzalez* has truncated the legal ground for the injunctive relief they seek; however, they aver there still exist paths forward to rectify in a single order the systemic statutory and constitutional violations found in the MSJ Opinion. (*See* Pls.' Supp. Br., ECF No. 814.)

//

//

## II.    LEGAL STANDARD

### A.    Permanent Injunctive Relief

In the Ninth Circuit, a plaintiff who seeks a permanent injunction must satisfy a four-factor test.  *See Kurin, Inc. v. Magnolia Med. Techs., Inc.*, 473 F. Supp. 3d 1117, 1141 (S.D. Cal. July 20, 2020) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).  A plaintiff must establish:

> (1) [t]hat it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction [("*eBay* factors")].

*eBay Inc.*, 547 U.S. at 391.  Where the Government is the party opposing issuance of injunctive relief, the above-mentioned third and fourth factors—balancing of hardships and public interest—merge.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009).  This merger requires the Court to examine whether "any significant 'public consequences' would result from issuing the preliminary injunction" and, if so, whether they favor or disfavor its entry. *See Fraihat v. United States Immigration & Customs Enf't*, 445 F. Supp. 3d 709, 749 (C.D. Cal. 2020) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

It is well-established that deprivation of a constitutional right "unquestionably constitutes irreparable injury," and that no public interest is served by withholding equitable relief without which those rights will continue to be infringed.  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("*Melendres I*") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959 (9th Cir. 2002) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.").

District courts have "broad discretion to fashion injunctive relief" to eliminate constitutional violations.  *See Melendres v. Maricopa Cty.*, 897 F.3d 1217, 1221 (9th Cir. 2018) ("*Melendres IV*"); *Milliken v. Bradley*, 433 U.S. 267, 282 (1977) ("Where . . . a constitutional violation has been found, the remedy does not exceed the violation if the

remedy is tailored to cure the condition that offends the Constitution." (internal quotation marks and citation omitted).   "Further, where the enjoined party has a 'history of noncompliance with prior orders,' and particularly where the trial judge has 'years of experience with the case at hand,' [district courts are given] a 'great deal of flexibility and discretion in choosing the remedy best suited to curing the violation.'"  *Melendres IV*, 897 F.3d at 1221 (quoting *Melendres v. Arpaio*, 784 F.3d 1254, 1265 (9th Cir. 2015)).

## B.   Declaratory Judgment Act

The Declaratory Judgment Act provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a); *see* Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."); *see also In re Singh*, 457 B.R. 790, 798 (Bankr. E.D. Cal. 2011) ("Declaratory relief is an equitable remedy distinctive in that it allows adjudication of rights and obligations on disputes regardless of whether claims for damages or injunction have arisen.").

The question whether to issue declaratory relief is a matter of the district court's sound discretion.  *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver[.]").  A court's decision to enter declaratory relief must be firmly implanted "in sound reason," *McGraw-Edison Co. v. Preformed Line Products. Co.*, 362 F.2d 339, 342 (9th Cir. 1966) (quoting *Yellow Cab Co. v. City of Chicago*, 186 F.2d 946, 950–51 (7th Cir. 1951)), and should be issued with "two principal criteria guiding the policy in favor of rendering declaratory judgments" in mind:  (1) "clarifying and settling the legal relations in issue"; and (2) "terminat[ing] and afford[ing] relief from the uncertainty, insecurity, and controversy giving rise to the proceeding," *id.* (quoting Borchard, *Declaratory Judgments* 299 (2d ed. 1941)).  *See also Crossley v. California*, 479 F. Supp. 3d 901, 920 (S.D. Cal. 2020).

III.   **ANALYSIS**

A.   **Class-Wide Permanent Injunction**

1.   **8 U.S.C. § 1252(f)(1)**

Among the "'judicial power[s]' committed to the federal courts by Article III" is the power to grant broad, equitable relief, including on a class-wide basis. *Rodriguez v. Hayes*, 591 F.3d 1105, 1120 (9th Cir. 2010) ("*Rodriguez*") (citing *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. 460, 462 (1855)). These "traditional equitable powers can be curtailed only by an unmistakable legislative command." *Id.*; *see Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946) ("Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.").

Here, the remedy-stripping statute at issue is § 1252(f)(1). That provision states:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, [which includes § 1225,] as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1). Section 1252(f)(1) is "nothing more or less than a limit on injunctive relief." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999).

At the heart of the parties' dispute concerning remedies is whether § 1252(f)(1) is so broad in scope as to preclude the entry of any permanent class-wide injunction that remediates Defendants' statutory and constitutional violations.

2.   **The Ninth Circuit's Interpretation of § 1252(f)(1)**

It has been the law in the Ninth Circuit for nearly twenty years that § 1252(f)(1) "does not . . . categorically insulate immigration enforcement from judicial classwide injunctions." *Gonzalez v. U.S. Immigration & Customs Enf't*, 975 F.3d 788, 812 (9th Cir. 2020) (internal quotation marks omitted). The Ninth Circuit concluded in *Ali v. Ashcroft*,

346 F.3d 873, 886 (9th Cir. 2003) ("*Ali*"), *vacated on unrelated grounds sub nom. Ali v. Gonzales*, 421 F.3d 795 (9th Cir. 2005), and reaffirmed in *Rodriguez v. Hayes*, 591 F.3d 1105, 1120 (9th Cir. 2010), that § 1252(f)(1) does not prohibit injunctions that "enjoin or restrain" *violations* of the covered provisions therein.  The Ninth Circuit found there is a qualitative distinction between injunctions that "enjoin or restrain the *operation* of [§§ 1221–32]" and those that direct immigration enforcement agencies to conform their extra-legal conduct that "is not even authorized" under the covered provisions.  *Ali*, 346 F.3d at 886 (emphasis added and citations omitted).

Thus, in the Ninth Circuit, lower courts have had authority to enter injunctions against violations of the detention statutes.  *See Rodriguez*, 591 F.3d at 1120 (holding § 1252(f)(1) "prohibits only injunction[s] of 'the operation of' the detention statutes, not injunction[s] of a violation of th[ose] statutes"); *see also Immigrant Defs. Law Ctr. v. U.S. Dep't of Homeland Sec.*, No. CV 21-0395 FMO (RAOx), 2021 WL 4295139, at *7 (C.D. Cal. July 27, 2021) ("To the extent plaintiffs establish that the remedy they seek addresses violations of the relevant statutes, § 1252(f) will not be an obstacle to relief."); *Osny Sort-Vasquez Kidd v. Mayorkas*, No. 2:20-cv-3512-ODW (JPRx), 2021 WL 1612087, at *5 (C.D. Cal. Apr. 26, 2021) ("Whereas Plaintiffs seek . . . an injunction to prevent further violations, such requested relief does not target 'the operation of' the Immigration and Nationality Act ('INA').  Plaintiffs' attempt to enjoin 'violation of' the INA through unconstitutional practices falls outside the injunction bar of § 1252(f)(1)."); *accord Grace v. Barr*, 965 F.3d 883, 907 (D.C. Cir. 2020) ("[S]ection 1252(f)(1) . . . places no restriction

//
//
//
//
//
//
//

on the district court's authority to enjoin agency action found to be unlawful." (emphasis omitted)).[9]

Prior to *Aleman Gonzalez*, this Court would have little difficulty finding that *Rodriguez* and *Ali* provide fertile ground upon which it could enter an injunction enjoining Defendants from turning back asylum seekers in the process of arriving at Class A POEs, or compelling Defendants to inspect and refer those individuals in accordance with § 1158(a)(1) and § 1225, despite § 1252(f)(1)'s remedial bar. Defendants' turning back of asylum seekers unlawfully withholds inspection and referral duties that § 1158(a)(1) and § 1225 require Defendants to perform; by failing to perform those duties, Defendants act without statutory authority and commensurately violate the due process rights of Plaintiff class members. (*See* MSJ Opinion at 33–34, 37–38.) *Rodriguez* and *Ali* make explicitly clear that a class-wide injunction enjoining Defendants from withholding their inspection and referral duties would not interfere with the "operation" of § 1225 because such an injunction would be directed at unauthorized and unconstitutional practices. *See also Osny Sorto-Vasquez Kidd*, 2021 WL 1612087, at *5.

Nor would this Court have difficulty concluding each of the *eBay* factors tip decidedly in favor of such an injunction. *See* 547 U.S. at 391; *Nken*, 556 U.S. at 435. Plaintiffs have established irreparable harm. Defendants' Turnback Policy inflicted constitutional injuries upon members of the Plaintiff class. (MSJ Opinion at 37–38.) Deprivation of a Fifth Amendment due process right "unquestionably constitutes irreparable injury." *See Melendres I*, 695 F.3d at 1002. And while this harm is sufficient, it deserves special mention that Plaintiff class members have endured—and, absent

---

[9] The Supreme Court in *Jennings v. Rodriguez*, 138 S. Ct. 830, 851 (2018), accepted without repudiation the underlying logic of the Ninth Circuit's interpretation of § 1252(f)(1): that the injunction bar "d[oes] not affect [lower courts'] jurisdiction over . . . *statutory* claims because those claims d[o] not 'seek to enjoin the operation of the immigration detention statutes, but to enjoin conduct . . . not authorized by the statutes.'" *Id.* (quoting *Rodriguez*, 591 F.3d at 1120). Here, however, there is little distinction between Plaintiffs' statutory and constitutional claims. Indeed, the MSJ Opinion found Plaintiffs' Fifth Amendment due process right to access the U.S.-asylum process is derived exclusively from statute, specifically by way of § 1158(a)(1) and the process of inspection and referral afforded in § 1225.

injunctive relief, will continue to endure—another form of irreparable harm:  preventable human suffering.  *See Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017).  As this Court has found repeatedly, and as the record reflects, Defendants' Turnback Policy "resulted in asylum seekers' deaths, assaults, and disappearances after they were returned to Mexico," (*see, e.g.*, Decl. of Erika Pinheiro ¶ 17 (attesting that in a survey of 12,500 refugees arriving at the U.S.-Mexico border prior to the Title 42 restrictions implemented in March of 2020, 30% of respondents reported having been kidnapped or having escaped attempted kidnapping and 40% reported having been assaulted while waiting in Mexico), ECF No. 768-2), and has contributed to humanitarian crises in the Mexican border communities adjacent to Class A POEs (*see id.* ¶ 11 (attesting that, in Tijuana alone, "[t]housands of migrants live in a makeshift tent encampment . . . next to San Ysidro," where residents sleep under plastic tarps, have no bathrooms or access to running water, and are subjected to extreme weather conditions and organized crime)).  (*See* SMJ Opinion at 32–33; MTD Opinion at 16–17.)  Like constitutional injuries, the threat of physical danger and harm absent injunctive relief qualifies as irreparable.  *Cf. Leiva-Perez v. Holder*, 640 F.3d 962, 969 (9th Cir. 2011) (holding irreparable harm inures where a noncitizen shows removal from the United States would place an individual in physical danger).

Furthermore, intolerable public consequences would arise from withholding class-wide injunctive relief tailored to remediate the specific violations found in the MSJ Opinion.  Without issuance of an injunction enjoining Defendants' systemic withholding of their referral and inspection duties, Defendants will continue to have free rein to trample upon Plaintiffs' statutory and constitutional rights.  *See Melendres I*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quoting *Sammartano*, 303 F.3d at 974)).  Moreover, absent an injunction, noncitizens awaiting entry to the United States in Mexican border communities will continue to be exposed to great risk of illness, kidnapping, assault, and death.  *See Hernandez*, 872 F.3d at 996 ("Faced with such a conflict between [defendant's] financial concerns and [plaintiff's] preventable human suffering, we have little difficulty concluding that the

balance of hardships tips decidedly in plaintiffs' favor." (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983))).

However, as Defendants assert, and Plaintiffs concede, *Aleman Gonzalez* completely changes this Court's calculus.  (*See* Defs.' Suppl. Br. at 1–3.)  The Court must answer the question whether *Ali* and *Rodriguez* are still viable post-*Aleman Gonzalez* and, if not, whether § 1252(f)(1) precludes issuance of a permanent class-wide injunction in this case.[10]

### 3.   *Aleman Gonzalez* is Clearly Irreconcilable with *Ali* and *Rodriguez*

An intervening change in controlling law is found where the reasoning or theory of a case "is clearly irreconcilable with the reasoning or theory of intervening higher authority," *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003), or where "a subsequent decision 'creates a *significant shift* in [a court's] analysis,'" *Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 282 F.R.D. 216, 222 (D. Ariz. 2012) (quoting *Beckstrand v. Elec. Arts Grp. Long Term Disability Ins. Plan*, No. CV F 05-0323 AWI LJO, 2007 WL 177907, at *2 (E.D. Cal. Jan. 19, 2007)).  For example, "[i]ntervening Supreme Court authority only overrules past circuit precedent to the extent that the Supreme Court decision 'undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable.'"  *United States v. Cisneros*, 763 F.3d 1236, 1240 (9th Cir. 2014) (quoting *Miller*, 335 F.3d at 900)).

Before the Supreme Court in *Aleman Gonzalez* was the question whether the discretionary detention provision at 8 U.S.C. § 1231(a)(6), which enables the federal government to detain noncitizens pending removal, requires the Immigration and Naturalization Service ("INS") to provide bail hearings to individuals in DHS custody for

---

[10] Importantly, the Court notes that the Ninth Circuit requested briefing on precisely this issue on June 29, 2022 in *Leobardo Moreno Galvez v. Tracy Renaud*, No. 20-36052, Dkt. No. 62 ("The parties are directed to address . . . whether the Supreme Court's decision in *Aleman Gonzalez* overrules this Court's holding that Section 1252(f) prohibits only injunction of 'the operation of the detention statutes, not injunction of a violation of the statutes.'" (citing *Rodriguez*, 591 F.3d at 1120)).  As of the date of this Opinion, the Ninth Circuit has yet to weigh in on the fate of *Rodriguez* and *Ali*.

a period of six months or more. 142 S. Ct. at 2057. The district courts in the two underlying cases certified classes consisting of individuals detained pursuant to § 1231(a)(6) for at least six months, concluded INS likely is required by statute to hold a bail hearing in the case of an individual detained for six months or more, and issued class-wide preliminary injunctive relief requiring INS to administer bail hearings to all class members. *See Gonzalez v. Sessions*, 325 F.R.D. 616, 629 (N.D. Cal. 2018), *aff'd sub nom.*, *Aleman Gonzalez v. Barr*, 955 F.3d 762, 766 (9th Cir. 2020); *Baños v. Asher*, No. C16-1454JLR, 2018 WL 1617706, at *1 (W.D. Wash. Apr. 4, 2018), *aff'd in relevant part sub nom.*, *Flores Tejada v. Godfrey*, 954 F.3d 1245, 1247 (9th Cir. 2020). The Ninth Circuit affirmed the lower courts' class certification and issuance of injunctive relief. *See Aleman Gonzalez*, 955 F.3d at 762; *Flores Tejada*, 954 F.3d at 1245. It did not address application of § 1252(f)(1) in either decision. *Aleman Gonzalez*, 955 F.3d at 762; *Flores Tejada*, 954 F.3d at 1245.

The Government appealed to the Supreme Court, which granted certiorari and *sua sponte* requested additional briefing concerning whether § 1252(f)(1) precluded the lower courts from issuing preliminary injunctions in the first instance. *Aleman Gonzalez*, 142 S. Ct. at 2063.

On June 13, 2022, the Supreme Court held § 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out [§§ 1221–32]," with "one exception": lower courts "retain the authority to 'enjoin or restrain the operation of' the relevant statutory provisions 'with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.'" *Aleman Gonzalez*, 142 S. Ct. at 2065 (quoting 8 U.S.C. §1252(f)(1)). Applying this principle, the Supreme Court vacated the lower courts' preliminary injunctions, finding § 1252(f)(1) precluded those orders because they "require[d] officials to take actions that (in the Government's view) are not required by § 1231(a)(6) and to refrain from actions that (again in the

Government's view) are allowed by § 1231(a)(6)" and, thus, "interfere[d] with the Government's efforts to operate § 1231(a)(6)." *Id.* at 2065.

Although it does not mention them by name, there can be little doubt *Aleman Gonzalez* repudiates the central holdings of *Ali* and *Rodriguez*.  Indeed, the Supreme Court in *Aleman Gonzalez* poured cold water on the premise for which *Ali* and *Rodriguez* stand— that § 1252(f)(1) is inapplicable to injunctions that merely seek to force immigration enforcement agencies to implement the statute consistent with its terms—by concluding even injunctions that "enjoin or restrain" the "unlawful" or "improper operation," *i.e.*, violations, of § 1252(f)(1)'s covered provisions clash with that statute's remedy bar.[11] *Aleman Gonzalez*, 142 S. Ct. at 2066.  Thus, following *Aleman Gonzalez*, this Court no longer can enter injunctive relief under *Ali* and *Rodriguez* that enjoins or restrains Defendants' unauthorized implementation of their mandatory ministerial inspection and referral duties on the ground that the practice of turning back arriving asylum seekers constitutes a violation, as opposed to the "operation," of § 1225.

## 4.   8 U.S.C. § 1252(f)(1) Bars Class-Wide Injunctive Relief

Having concluded *Aleman Gonzalez* appears to repudiate *Ali* and *Rodriguez*, this Court finds itself at odds between two competing obligations:  its duty to avoid interpreting and applying § 1252(f)(1) in a manner that "produce[s] absurd results," *see Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 576 (1982), and its overriding fidelity to apply controlling Supreme Court precedent, *see Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001).

---

[11] The *Aleman Gonzalez* Court's interpretation rests principally upon its observation that "it is very common to refer to the 'unlawful' or 'improper' operation of whatever it is that is being operated," pointing by way of example to, *inter alia*, cars, airplanes, railroads, radios, and video poker machines, all of which "can be unlawfully or improperly operated." *Aleman Gonzalez*, 142 S. Ct. at 2066.  Of course, whether lawfully operated or not, a car is still a car, an airplane is still an airplane, a railroad is still a railroad, a radio is still a radio, and a video poker machine is still a video poker machine.  The unlawful or improper operation of those objects does not fundamentally change what they are.  The same cannot be said of a law.  As the dissent in *Aleman Gonzalez* opines, when officials unlawfully operate a statute, they put the statute at odds with itself:  a contradiction that neither withstands textual interpretation nor logic. *Id.* at 2074 (Sotomayor, J., dissenting).

On the one hand, *Aleman Gonzalez* flips on their heads two fundamental principles that guide Article III courts in exercising their inherent judicial powers:  that "it is emphatically the province and duty of the judicial department to say what the law is," *Marbury v. Madison*, 5 U.S. 137, 177 (1803), and that when government officials exceed the scope of their statutory authority as properly interpreted by the federal courts, federal courts have broad equitable power to enjoin those violations, *see, e.g.*, *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 108 (1902) ("That the conduct of the postoffice is a part of the administrative department of the government is entirely true, but that does not necessarily and always oust the courts of jurisdiction to grant relief to a party aggrieved by any action by the head, or one of the subordinate officials, of that Department, which is unauthorized by the statute under which he assumes to act.").

"Generally, judicial relief is available to one who has been injured by an act of a government official which is in excess of his express or implied powers."  *Harmon v. Bruckler*, 355 U.S. 579, 581–82 (1958) (citing *McAnnulty*, 187 U.S. at 108).  Indeed, since at least *Brown v. Board of Education*, 394 U.S. 294 (1955), the general rule has been that federal courts should exercise their broad equitable power to fashion injunctive relief to vindicate rights infringed by the systematic unlawfulness of government actors.  *See* Richard H. Fallon, Jr. *et al.*, *The Federal Courts and the Federal System* 803 (5th ed. 2003); *cf. Brown*, 349 U.S. at 301 (affirming lower court's issuance of a permanent injunction "ordering the immediate admission of the plaintiffs to schools previously attended only by white children"); *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1 (1971) (affirming a district court's injunction requiring school board to implement plan to desegregate school district); *Milliken*, 433 U.S. at 269  (upholding the equitable powers of a district court, as part of a desegregation decree, to "order compensatory or remedial educational programs for schoolchildren who have been subjected to past acts of *de jure* segregation"); *Orantes-Hernandez v. Thornbugh*, 919 F.2d 549 (9th Cir. 1990) (affirming lower court's permanent injunction enjoining INS, *inter alia*, from forcing detainees to sign voluntary departure agreements and transferring detainees irrespective of their established

attorney-client relationships on ground those practices violate the Fifth Amendment due process clause); *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (similar).[12]

It would be quite absurd if, in *Brown*, *Swann*, or *Milliken*, the lower courts were restrained to issue injunctive relief, schoolchild-by-schoolchild. *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[T]he scope of injunctive relief is dictated by the extent of the violation established[.]").  One can hardly think of a remedial methodology that is less economical, particularly where the members of a class raise indistinguishable claims and seek identical relief, and less effective.  Yet that is precisely the approach the Supreme Court deems proper for remediating statutory and constitutional violations committed by immigration enforcement agencies.

By restraining the lower federal courts' authority to issue meaningful relief, *Aleman Gonzalez* simultaneously confers to immigration enforcement agencies power to unilaterally ignore or deviate from the Congressional mandates set forth in the removal provisions of the INA, *see* 8 U.S.C. §§ 1221–32.  In this way, *Aleman Gonzalez* not only deflates the historical and traditional role of Article III courts, but it also undermines a fundamental principle of federalism:  that when Congress explicitly speaks to a specific issue, federal agencies and courts are bound to "give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).  Although § 1158 and § 1225 in no uncertain terms impose upon Defendants a mandatory ministerial duty to inspect and refer asylum seekers in the process of arriving at Class A POEs, *Aleman Gonzalez* appears to suggest that Defendants have *carte blanche* to refuse to do so, as long as they present to a lower court a *claimed* ground for their refusal, even if a federal court ultimately finds that basis meritless.  *But see Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 600 (2004) (holding courts need only

---

[12] While the Supreme Court decisions cited all involve unauthorized acts taken by state officials, it is well-settled that federal courts' equitable powers extend to entering class-wide injunctive relief to enjoin violations of federal law *by federal officers*.  *See, e.g.*, *McAnnulty*, 187 U.S. at 110; *Harmon*, 355 U.S. at 582.

defer to an agency's "statutory interpretation . . . when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent").

Defendants suggest *Aleman Gonzalez*'s implications are not as damaging to the rights of the Plaintiff class as they appear at first glance. Defendants say that, if this Court issues class-wide declaratory relief, Plaintiff class members can institute a separate, non-class action suit and rely upon this Court's declaratory judgment "as a predicate to further relief, including [an] injunction," which would fit within § 1252(f)(1)'s carve out. (Defs.' Remedies Br. at 7.) But by requiring injunctive relief to be issued Plaintiff class member-by-member, there inevitably will be individuals deprived of their due process right to access asylum. As the dissent in *Aleman Gonzalez* observed:

> Noncitizens subjected to removal proceedings are disproportionately unlikely to be familiar with the U.S. legal system or fluent in the English language. Even so, these individuals must navigate the Nation's labyrinthine immigration laws without entitlement to appointed counsel or legal support.

142 S. Ct. at 2076 (Sotomayor, J., dissenting). These practical difficulties are amplified where, as here, the noncitizens in need of a permanent injunction are not even located within the United States, but rather in Mexican border communities, where they have even less access to legal assistance and must endure horrid conditions and threats to life and safety as they prosecute their cases.

On the other hand, this Court has an unfaltering obligation to faithfully apply pertinent Supreme Court precedent. *Hart*, 266 F.3d at 1171. "[I]ndividual judges, cloaked with the authority granted by Article III of the Constitution, are not at liberty to impose their personal view of a just result in the face of a contrary rule of law." *In re United States*, 945 F.3d 616, 627 (2d Cir. 2019). The instant case squarely is controlled by *Aleman Gonzalez*.

The inspection and referral duties this Court found Defendants had withheld by implementing their Turnback Policy are explicitly imposed by the INA at § 1225(a)(3) (delineating immigration officers' duty to inspect) and § 1225(b)(1)(A)(ii) (delineating

immigration officers' duty to refer asylum seekers).  *See Al Otro Lado v. Wolf*, 952 F.3d 999, 1010 (9th Cir. 2020) (holding § 1158(a)(1) "creates a right to apply for asylum" while § 1225 "imposes two key mandatory duties on immigration officers with respect to potential asylum seekers").  Section 1225 is among § 1252(f)(1)'s covered provisions.  Clearly, after *Aleman Gonzalez*, such an injunction must be construed as "enjoin[ing] or restrain[ing] the operation" of § 1225 because it would have the effect of "interfer[ing] with the Government's efforts to operate § [1225]."  142 S. Ct. at 2066.

Nevertheless, Plaintiffs fashion several creative arguments for why an injunction is appropriate despite *Aleman Gonzalez*'s repudiation of *Rodriguez* and *Ali*.  None are availing.

### i.    Vacatur under the Administrative Procedures Act

First, Plaintiffs argue that the Court can issue vacatur relief.  (Pls.' Supplemental Br. at 2.)  As an initial matter, Plaintiffs are wrong to suggest this Court simply can issue an injunction disguised as vacatur relief; though the two remedies may overlap, they are not the same.  Unlike an injunction, a vacatur does not restrain the enjoined defendants from pursuing other courses of action to reach the same or a similar result as the vacated agency action.  *See* Daniel Mach, *Rules Without Reasons:  The Diminishing Role of Statutory Policy and Equitable Discretion in the Law of NEPA Remedies*, 35 Harv. Envtl. L. Rev. 205, 237 (2011).  For example, here, either vacatur or an injunction would suffice to strike down the Turnback Policy, but only an injunction, not vacatur, would restrain Defendants from, in the future, experimenting with and instituting a modified or amended version of the Turnback Policy.  *See. id.*

Moreover, although this Court believes (and Defendants appear to as well) that neither § 1252(f)(1) nor *Aleman Gonzalez* restrict lower courts from "set[ting] aside" or "vacating" a policy based upon an APA violation,[13] Defendants accurately observe that

---

[13] *See Texas v. United States*, --- F. Supp. 3d ---, 2022 WL 2466786, at *5–6 (S.D. Tex. July 6, 2022) ("There are meaningful differences between an injunction, which is a 'drastic and extraordinary remedy,' and a vacatur, which is 'a less drastic remedy.'" (quoting *Monsanto Co. v. Geertson Seed Farms*,

because the PBQM and Metering Guidance Memoranda were rescinded in November of 2021, there exists no "agency action" for this Court to vacate (Defs.' Supp. Br. at 3). *See* 5 U.S.C. § 706(2).

### ii.    Anchoring an Injunction in § 1158

Second, Plaintiffs argue that a separate line of Ninth Circuit precedent, besides *Ali* and *Rodriguez*, provides this Court with authority to issue a class-wide permanent injunction despite § 1252(f)(1)'s remedial bar. Specifically, citing *Gonzales v. Department of Homeland Security*, 508 F.3d 1227, 1233 (9th Cir. 2007), in which the Ninth Circuit held § 1252(f)(1) does not prohibit class-wide injunctions that directly implicate provisions not covered by § 1252(f)(1), "even if that injunction has some *collateral* effect on the operation of [one of § 1252(f)(1)'s] covered provision[s]," Plaintiffs argue this Court simply should anchor its injunction in § 1158 as opposed to § 1225. *Aleman Gonzalez*, 142 S. Ct. at 2067 n.4 (interpreting *Gonzales*, 508 F.3d at 1233, and describing its central holding as "nonresponsive" to the issues in the case at bar) (emphasis added); *see also Catholic Soc. Servs., Inc. v. Immigration & Naturalization Servs.*, 232 F.3d 1139, 1149–50 (9th Cir. 2000) (upholding preliminary injunction because it was issued under "Part V" of the subchapter and thus "by its terms, the limitation on injunctive relief [in § 1252(f)(1)] does not apply"); *Gonzalez v. U.S. Immigration & Customs Enf't*, 975 F.3d 788, 814 (9th Cir. 2020) ("[§ 1252(f)(1)'s] plain text makes clear that its limitations on injunctive relief *do not* apply to *other* provisions of the INA [beyond 8 U.S.C. §§ 1221 through 1332]." (emphasis added)).

Despite Plaintiffs' assertion otherwise, *Gonzales* is not applicable here. Unlike in *Gonzales*, there is practically no attenuation between § 1158, the statute in which Plaintiffs ask this Court to anchor an injunction, and § 1225, the statute that Plaintiffs acknowledge § 1252(f)(1) prohibits this Court from influencing through injunctive relief. Those statutes are inextricably intertwined. (*See* MTD Opinion at 5 ("This case turns on [§] 1225(b)

---

561 U.S. 139, 165 (2010))); *Capital Area Immigrants' Rights Coal. v. Trump*, 471 F. Supp. 3d 25, 60 (D.D.C. 2020) ("[B]y vacating the Rule, the Court is not enjoining or restraining the INA's operation.").

asylum procedure that [§] 1158 incorporates") and 42 ("As the Court has discussed, [§] 1158(a)(1) incorporates [§] 1225, which in turn places a focus on immigration officers who process arriving aliens.").)   Section 1158(a)(1) provides noncitizens arriving at Class A POEs along the U.S.-Mexico border a right to apply for asylum; that statute does not explicitly impose any duties upon Defendants to carry out tasks to put that right into practice.  *Al Otro Lado*, 952 F.3d at 1010; *see also Al Otro Lado v. Nielsen*, 327 F. Supp. 3d 1284, 1310 n.12 (S.D. Cal. 2018) (observing § 1158(a)(1) "does not identify any specific obligations placed on an immigration officer").  Rather, § 1158(a)(1) only does so through its express incorporation of § 1225(b)(1).  *See* 8 U.S.C. § 1158(a)(1) ("Any alien who . . . arrives in the United States . . . may apply for asylum in accordance with this section or, where applicable, *section 1225(b) of this title*." (emphasis added)).  Indeed, it is § 1225 that sets forth the specific asylum procedure that § 1158 incorporates.  As this Court put it in its MTD Opinion, § 1225 imposes "certain inspection duties of immigration officers, which undergird additional specific duties that arise when certain aliens express an intent to seek asylum in the United States or a fear of persecution."  (MTD Opinion at 5.)  Thus, the Court sees no way, and Plaintiffs do not explain how, an injunction anchored in § 1158 would have only collateral consequences on Defendants' operation of § 1225.  Accordingly, this argument, too, is unavailing.

### iii. Anchoring an Injunction in 8 U.S.C. § 1103(a)(1) and 6 U.S.C. § 202

Relying again on *Gonzales*, Plaintiffs aver that this Court can issue an injunction anchored in the statutory provisions Defendants claimed authorized their Turnback Policy: 8 U.S.C. § 1103(a)(1) and 6 U.S.C. § 202.   As this Court has explained previously, Defendants predicated the Turnback Policy based upon their interpretation of those statutes as authorizing the DHS Secretary with incredibly broad discretion to prioritize DHS's responsibilities in the manner he or she deems necessary.  (MTD Opinion at 55 ("Defendants point to [§] 1103(a)(1) in particular, which provides that the Secretary 'shall establish such regulations; prescribe such forms of bonds, reports, entries, and other papers;

issue instructions; and *perform other acts as he deems necessary for carrying out his authority under the provisions of this chapter.*" (emphasis added)).)

While the Court is intrigued by this theory, Plaintiffs miss the mark. *Aleman Gonzalez* requires this Court to inquire whether an injunction would "interfere with [Defendants'] efforts to operate" § 1225, which this Court answered in the affirmative above, *see supra* Sec. III.A.4. *Aleman Gonzalez*, 142 S. Ct. at 2065. This is analytically distinct from the narrower question that Plaintiffs appear to propose as the relevant inquiry: under which statute did Defendants principally invoke as a legal basis to implement the unlawful regulation? Because any class-wide injunction in this case would "interfere" with Defendants' "operation" of § 1225, as that word is construed in *Aleman Gonzalez*, this Court cannot simply anchor injunctive relief in 6 U.S.C. § 202 and 8 U.S.C. § 1103(a)(1) to evade § 1252(f)(1)'s remedial bar.

Accordingly, this Court concludes that § 1252(f)(1) prohibits it from entering a permanent class-wide injunction enjoining Defendants from turning back noncitizen asylum seekers in the process of arriving at Class A POEs or compelling Defendants to inspect and refer such asylum seekers.

\*     \*     \*     \*

Having concluded § 1252(f)(1) strips this Court of authority to enter a permanent injunction, Plaintiffs' request for oversight of all permanent injunctive relief is therefore moot.[14]

## B.   Individual Relief

Plaintiffs seek an order restoring the *status quo ante* for named Plaintiff Beatrice Doe prior to Defendants' unlawful Turnback Policy. Defendants neither argue § 1252(f)(1) prohibits this Court from issuing such an injunction nor assert that such relief is

---

[14] This decision does not cover Plaintiffs' request to convert the Preliminary Injunction into a permanent one or Plaintiffs' request for oversight over Defendants' compliance with the Preliminary Injunction and Clarification Order. As mentioned above, *supra* note 7, those issues are addressed at ECF No. 816.

unwarranted.  Indeed, it is apparent to the Court that Plaintiff Beatrice Doe is entitled to the relief sought in the Proposed Order.  (*See* Proposed Order ¶ 7.)  Accordingly, the Court orders Defendants to restore the *status quo ante* for named Plaintiff Beatrice Doe prior to Defendants' unlawful conduct.  This includes taking the necessary steps to facilitate Plaintiff Beatrice Doe's entry into the United States, including issuing any necessary travel documents to allow her to travel to the United States (by air if necessary) and to ensure her asylum processing upon arrival.

Although Plaintiff Beatrice Doe does not seek an injunction directing Defendants to "inspect and refer" her to the U.S. asylum process at a Class A land POE along the U.S.-Mexico border, Defendants suggest that the appropriate recourse for the innumerable Plaintiff class members waiting in Mexican border communities is to seek individualized relief in accordance with § 1252(f)(1) and *Aleman Gonzalez*.  The Court, therefore, takes this occasion to point out yet another absurd consequence *Aleman Gonzalez* produces when taken to its logical endpoint.

The Supreme Court held in *Aleman Gonzalez* that § 1252(f)(1) has "one exception" to its general prohibition against lower court injunctions:  lower courts "retain authority to restrain or enjoin the operation of the [covered] statutory provisions 'with respect to the application of such provisions to an individual *alien against whom* [*removal*] *proceedings . . . have been initiated.*'"  *Aleman Gonzalez*, 142 S. Ct. at 2065 (quoting 8 U.S.C. § 1252(f)(1)) (emphasis added).  But the text of § 1252(f)(1) places the individual members of the Plaintiff class in a devastatingly cruel catch-22.  Unlike the class members in *Aleman Gonzalez*, removal proceedings have yet to be instituted against all members of the Plaintiff class here precisely because of Defendants' unlawful Turnback Policy.  Definitionally, inspection and referral is a prerequisite to removal.  Thus, without *Ali* and *Rodriguez* to rest upon, *Aleman Gonzalez* appears to effectively render illusory Plaintiff class members' Fifth Amendment due process right to apply for asylum.  This is despite Congress's clear legislative intent in enacting § 1252(f)(1) that the statute "not hamper a district court's

ability to address imminent rights violations." *Padilla v. Immigration & Customs Enf't*, 953 F.3d 1134, 1150–51 (9th Cir. 2020) (citing H.R. Rep. No. 104-469(I), at 161 (1996)).[15]

"The government of the United States has been emphatically termed a government of laws, and not men.  It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right.  *Marbury*, 5 U.S. (1 Cranch) 137, 163; *see also Ashby v. White*, 92 Eng. Rep. 126 (K.B. 1703) ("If the plaintiff has a right, he must of necessity have means to vindicate and maintain it, and a remedy if he is injured in the exercise of enjoyment of it; and indeed it is a vain thing to imagine a right without a remedy and want of a remedy are reciprocal.").  Because of *Aleman Gonzalez*, innumerable Plaintiff class members may well end up living in this gray area where they possess a due process right but no remedy when that right is violated by rapacious executive overreach.

## C.   Class-wide Declaratory Relief is Warranted

Although the issuance of a class-wide injunction is prohibited, § 1252(f)(1) does not strip this Court of jurisdiction to issue a class-wide declaration.  *See Rodriguez*, 591 F.3d at 119 (construing § 1252(f)(1) narrowly as not banning class-wide declaratory relief), *cited affirmatively by Padilla*, 953 F.3d at 1150; *see also Aleman Gonzalez*, 142 S. Ct. at 2065 n.2 ("Because only injunctive relief was entered here, we have no occasion to address [the Government's suggestion that § 1252(f)(1) bars class-wide declaratory relief].").

The parties agree that this Court has both constitutional and statutory jurisdiction to issue a declaratory judgment in this case.  *See Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220,

---

[15] It is true that even if this dire interpretation of § 1252(f)(1) and *Aleman Gonzalez* is the correct one, § 1252(f)(1) still leaves open the possibility that the Supreme Court can fashion class-wide injunctive relief to vindicate the Plaintiff class's right to access the U.S.-asylum process. *See Biden v. Texas*, 142 S. Ct. 2528, 2539 (2022) ("A second feature of the text of section 1252(f)(1) leaves no doubt that this Court has jurisdiction:  the parenthetical explicitly preserving this Court's power to enter injunctive relief."). But the Supreme Court "grants only a very small percentage of certiorari petitions." *United States v. Burch*, 202 F.3d 1274, 1277 (10th Cir. 2000).  The mere prospect that that Court might, after months or years, grant certiorari in this case must be cold comfort to asylum seekers awaiting Defendants to fulfill their mandatory ministerial asylum inspection and referral duties and, in so doing, give meaning to Plaintiff class members' Fifth Amendment due process right to apply for asylum.

1224 (9th Cir. 1998) ("[W]hen a district court has constitutional and statutory authority to hear a case brought pursuant to the Declaratory Judgment Act, the district court may entertain the action without *sua sponte* addressing whether jurisdiction should be declined" as a matter of discretion).

Both parties aver that declaratory relief will serve a useful purpose in clarifying where the balance lies between Defendants' authority to regulate the flow and methodology of inspecting and processing asylum seekers in the process of arriving at Class A POEs and the Plaintiff class's right to access the U.S. Asylum Process. (Pls.' Remedy Br. at 7–8 ("[T]he Court should issue a judgment declaring, pursuant to its earlier opinion on the parties' cross-motion for summary judgment, that turnbacks of noncitizens in the process of arriving at POEs on the U.S.-Mexico border violate the INA, section 706(1) of the APA, and the Due Process Clause of the Fifth Amendment."); *see* Defs.' Remedy Br. at 6–7.) They also concur that a declaratory judgment memorializing the Court's central holdings in its MSJ Opinion would extinguish the disputes giving rise to this action and avoid future litigation concerning the scope of Defendants' inspection and referral duties. (*See* Pls.' Remedy Br. at 7–8 (arguing a declaratory judgment would terminate in advance disputes that might arise "should this Administration or another one wish to experiment with new ways of denying arriving noncitizens access to the asylum process at POEs."); Defs.' Remedy Br.at 7 ("[A declaratory judgment] could be used by individual [*AOL*] Class Members 'as a predicate to further relief, including an injunction.'" (quoting *Powell v. McCormack*, 395 U.S. 486, 499 (1969))).)

The Court is persuaded that declaratory relief that captures the central holdings of its MSJ Opinion would serve the dual purposes of the Declaratory Judgment Act. Accordingly, the Court enters the following declaratory relief:

> This Court enters a DECLARATORY JUDGMENT that, absent any independent, express, and lawful statutory authority, Defendants' refusal to deny inspection or asylum processing to noncitizens who have not been admitted or paroled and who are in the process of arriving in the United States

17cv2366

at Class A Ports of Entry is unlawful regardless of the purported justification for doing so.

## IV.  CONCLUSION

For the foregoing reasons stated above:

1)    The Court **ORDERS** Defendants to restore the status quo ante for the named Plaintiffs prior to Defendants' unlawful conduct.  This includes taking the necessary steps to facilitate Plaintiff Beatrice Doe's entry into the United States, including issuing any necessary travel documents to allow her to travel to the United States (by air if necessary) and to ensure her inspection and asylum processing upon arrival.

2)    The Court **DECLARES** that, absent any independent, express, and lawful statutory authority, Defendants' refusal to deny inspection or asylum processing to noncitizens who have not been admitted or paroled and who are in the process of arriving in the United States at Class A Ports of Entry is unlawful regardless of the purported justification for doing so.

The parties are further **ORDERED** to meet and confer and lodge a Proposed Final Judgment that incorporates this Court's rulings in its MSJ Opinion (ECF No. 742) and set forth herein **by no later than August 22, 2022**.

**IT IS SO ORDERED.**

**DATED: August 5, 2022**

Hon. Cynthia Bashant
United States District Judge

17cv2366