UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Al Otro Lado, Inc., *et al.*, <br>     *Plaintiffs,* | ) <br> ) <br> ) <br> ) | |
| v. | ) <br> ) | No. 3:17-cv-02366-BAS-KSC |
| Alejandro Mayorkas, *et al.*, <br>     *Defendants.* | ) <br> ) <br> ) <br> ) | |

**DECLARATION OF ASHLEY B. CAUDILL-MIRILLO**

I, Ashley B. Caudill-Mirillo, pursuant to 28 U.S.C. § 1746, and based upon personal knowledge and information made known to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows relating to the above-captioned matter.

1. I am currently the Acting Chief of the Asylum Division with U.S. Citizenship and Immigration Services (USCIS), U.S. Department of Homeland Security (DHS). I have held this position since October 2021. Prior to becoming the Acting Chief, I served as the Deputy Chief of the Asylum Division starting in February of 2019. Prior to that I served as the Management Branch Chief at Asylum Division since 2015, where I was responsible for overseeing the Division's resource management and strategic planning, as well as its contracts, performance management initiatives, and labor-management obligations among other duties. I joined USCIS as an Asylum Officer in the New York Asylum Office in 2008 and, in 2011, I became a Supervisory Asylum Officer. In 2012, I was selected to be the Deputy Director of the New York Asylum Office. In my current position as the Acting Chief of the Asylum Division, I oversee all Asylum Offices nationwide and their primary functions in managing the affirmative asylum,

1

credible fear, and reasonable fear caseloads. I am also responsible for the Asylum Division's headquarters component, which develops policy, provides guidance to the field, and ensures consistent practices across the Asylum Division nationwide.

2. I understand that on August 5, 2022 the U.S. District Court for the Southern District of California issued an order converting the *Al Otro Lado v. Wolf* (*AOL*) preliminary injunction into a permanent injunction. The order further requires the Government to "provide an update concerning the implementation status of USCIS's procedures for P.I. Class-membership identification and the provision of reopening and reconsideration relief to potential P.I. Class members who were removed from the United States by no later than August 22, 2022.

3. In September 2021, USCIS reported that it was developing procedures to identify and screen potential PI class members who had been removed. This group specifically includes individuals who received a negative credible fear determination where the third-country transit rule was applied (the "removed AOL group"). USCIS's procedures for the removed AOL group were created with the understanding that Class Counsel will provide notice to this group. This understanding is based on the October 30, 2020 Order and the court's finding that Plaintiffs and their counsel can facilitate the notification process for those who were removed and remain outside of the U.S. Dkt. 605 at 22.

4. Since September 2021, and while it was developing the procedures for the removed AOL group, USCIS continued to work on other aspects of implementation of the preliminary injunction orders (PI), including working with Plaintiffs on notices for non-detained individuals and developing training for asylum officers for that group. In general, implementation of the PI has required significant time and resources due to the scope and volume of work related to identifying PI class members and providing new credible fear (CF)

interviews where required. Further, the screening procedures for the removed AOL group are closely linked to procedures for PI class members to request return to the United States, which have also taken some time to finalize. USCIS continues to work to collaborate within DHS and the relevant components to finalize and make operational the procedures to process the requests of removed PI class members who are eligible to request return in accordance with the Court's orders.

5. USCIS has finalized its operational procedures document for asylum officers to use to conduct a class membership screening of the removed AOL group (the PI Class Membership Screening). Exhibit 1 (Removed AOL Screening Procedures). USCIS anticipates that the notice provided by Class Counsel to the removed AOL group will contain instructions for submitting a PI Class Membership Screening request to USCIS. Potential Class Members will be given an opportunity to submit written testimony and/or documentary evidence that would otherwise not be available to USCIS. For example, individuals could provide details about what happened when they sought to enter at a port of entry (POE), whether they were told that the POE was full or that they needed to wait in Mexico or go to a shelter before entering the POE, and whether they attempted to place their name on a waitlist.

6. Under the USCIS procedures, the request for a PI Class Membership Screening will be forwarded to an asylum officer who will review the A-file, DHS databases, available waitlists, and all evidence submitted with the class membership determination request. The asylum officer will confirm whether the Third Country Transit rule was applied to the case at the CF stage, whether the individual received a negative CF determination, and whether the individual was ultimately removed under an expedited removal order.

7. If PI class membership is established under this process, the individual will be provided with evidence of that determination along with instructions on how to request Advance Parole to return to the U.S. to participate in their immigration case. (Those instructions are not attached hereto for public filing because they are intended for use only by PI Class Members but can be provided to the Court.) If class membership is not established, the individual will be notified of the determination.

8. The processing of return requests from eligible identified class members is led by ICE and is supported by USCIS and CBP. The components' teams are collaborating to commit staff and resources to process the return requests of eligible identified class members. ICE has jurisdiction of an individual who has been removed that is seeking advance parole. USCIS will intake the Form I-131, *Application for Travel Document*, but will forward the applications to ICE for adjudication.

9. The USCIS procedures for PI Class Membership Screenings have been finalized but are not yet implemented. Implementation is dependent upon two factors: first, the development and distribution of the notice by Class Counsel to the removed AOL group; second, the operationalization of the return request procedures for those in the removed AOL group who are determined by USCIS to be more likely than not to be class members and therefore are eligible to request return to the United States to pursue their asylum claims.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief. Executed this 19th day of August 2022.

*Ashley B. Caudill-Mirillo*

Ashley B. Caudill-Mirillo
Acting Chief
Asylum Division
Refugee, Asylum & International Operations Directorate
U.S. Citizenship and Immigration Services
Department of Homeland Security

# EXHIBIT 1

*For Official Use Only*

**PROCEDURES FOR *AOL* PRELIMINARY-INJUNCTION CLASS MEMBERSHIP SCREENINGS FOR INDIVIDUALS WHO RECEIVED A NEGATIVE CREDIBLE FEAR DETERMINATION WHERE THE THIRD COUNTRY TRANSIT BAR WAS APPLIED AND THEY WERE REMOVED PURSUANT TO AN EXPEDITED REMOVAL ORDER**

1) Receive request for an AOL preliminary-injunction (PI) class membership determination
    a. Individuals who received a negative credible fear (CF) determination, where the Third Country Transit Rule was applied, and who were removed from the United States pursuant to an Expedited Removal order may request an *AOL* PI class membership determination (on their own or through counsel) via email.
    b. HQASM personnel will monitor the inbox, review Global and other systems as needed (e.g., CIS), and assign requests to the asylum office that originally completed the negative CF determination. Local offices are required to enter and track the cases they receive from HQASM on the AOL Class Membership Screening SharePoint page.
    c. A request should include:
        - Information to identify the individual and their immigration records such as:
            o The individual's complete name and any other names they have used in their immigration history.
            o The individual's date of birth and any other dates of birth they have used in their immigration history.
            o The individual's country of birth.
        - A number, if known.
        - G-28, if applicable.
        - Preferred mailing address.
        - Any available evidence of class membership that the individual would like USCIS to consider such as:
            o Evidence of the individual's stay in Mexico during the relevant time period.
            o Any available documentary evidence that the individual put their name on a waitlist, if they did.
            o A detailed statement from the individual or a witness regarding their attempt(s) to gain entry to the U.S. for the purpose of applying for asylum.
        - The password used for encryption of any documents.
2) Request A file
    a. Local offices must request the A file for each noncitizen upon receipt of the request from HQASM.
3) AO makes class membership determination
    a. After receipt of the A file, the case is assigned to an asylum officer to evaluate the evidence submitted and make a class membership determination. The AO should review the A file and evidence submitted by the noncitizen. The AO should also confirm, by reviewing the A file and the CF case information in Global: (1) that the Third Country Transit Bar was previously applied to the noncitizen at the CF stage; and (2) that the noncitizen received a negative CF determination. Because these individuals have been removed from the U.S., the AO will not conduct an interview. AOs should therefore check the A file, and EARM and DOJ-EOIR records in PCQS to verify (1) whether the individual was in fact removed under a final ER order after receiving a negative CF

Page **1** of **6**

AOLPI-DEF009806

*For Official Use Only*

      determination due to application of the Third Country Transit bar, and (2) whether the individual has had subsequent encounter(s) indicating a return to the U.S.
    b. If the individual has had subsequent encounters, determine if they have already received an AOL PI class membership screening conducted on or after December 20, 2020.
    c. If (i) the individual has not already received an AOL PI class membership screening conducted on or after December 20, 2020, (ii) the Third Country Transit Rule was applied to the individual at the CF stage and the individual was removed under a final ER order following that determination, and (iii) the individual is not currently in the United States, the asylum officer must:
        1. Review the guidance document entitled, "Guidance for Determining Provisional Subclass Membership for Purposes of the Preliminary Injunction in *Al Otro Lado v. Wolf*" ("CBP *AOL* Guidance").
        2. Create a memo to file[1] documenting the following:
           a. Note whether the individual's name seems to appear on one of the following waitlists or other lists that may indicate an individual's presence in a Mexican border town, and indicate which list the name appears on (Calexico/Mexicali; El Paso/Ciudad Juarez; San Ysidro/Tijuana; or Presidio/Ojinaga). These lists do not contain A numbers; search by name and date of birth (if DOB is listed). Note in the memo to file if there are any discrepancies between the individual's name, DOB, and other identifying information in DHS records, and their name, DOB, and other identifying information on a list. The lists are contained in multiple separate files[2]:
              i. San Ysidro/Tijuana
                1. "Waitlist transcribed Tijuana Mexicali (March – July 2019) for DOJ", four tabs labeled as "TJ" with date ranges
              ii. El Paso/Ciudad Juarez
                1. "Juarez Lista de Solicitantes de asilo thru 7.15.19"
              iii. Calexico/Mexicali

---

[1] See attached "Memo to File - *Al Otro Lado* Preliminary-Injunction Class Membership Screening".

[2] Class Counsel has provided what they state are three waitlists from the Mexican border towns from March through July 15, 2019: "Waitlist transcribed Tijuana Mexicali (March – July 2019) for DOJ" and "Juarez Lista de Solicitantes de asilo thru 7.15.19". Additionally, CBP has located the following additional lists in its possession that may be waitlists or other lists that may indicate an individual's presence in Mexico during a particular time frame: (1) between November 2018 and January 2019, Mexico's federal immigration agency ("INAMI") provided CBP OFO four separate pieces of the waitlist from Mexicali ("Lista nombres CBP1", "Listado Nombres CBP2", "Listado CBP Nombres3", and "Listado CBP Nombres4"), which contain lists of names corresponding to what appear to be Mexicali waitlist numbers 1258 through 1761; and (2) the Acting Port Director of the Presidio, TX POE received a list of individuals from INAMI in 2019, which appears to be a partial/excerpted list of predominantly Cuban nationals present in the city of Ojinaga, Mexico, and for which the dates ("fechas") in the left-hand column appear to correspond to dates in 2019.  As explained in the "Guidance for Determining Provisional Subclass Membership for Purposes of the Preliminary Injunction in *Al Otro Lado v. Wolf*" ("CBP *AOL* Guidance"), the waitlists are not created or relied upon in any way by CBP in its metering process.  These lists may not be reliable, accurate, or comprehensive lists of those who were waiting to enter the United States through a port of entry at any given time.  The government is merely using these waitlists as potentially indicating that the individual sought to enter at a U.S. port of entry before July 16, 2019. The waitlists do not contain A numbers, and some do not contain dates of birth or dates the names were added to the waitlist; names may also be misspelled on the waitlists.

AOLPI-DEF009807

*For Official Use Only*

       1. "Waitlist transcribed Tijuana Mexicali (March – July 2019) for DOJ", tab labeled as "Mexicali" with a date range
       2. "Lista nombres CBP1"
       3. "Listado Nombres CBP2"
       4. "Listado CBP Nombres3"
       5. "Listado CBP Nombres4"
          a. Items (b) – (e) were provided to CBP by INAMI in three separate communications on 11/30/18, 1/19/19, and 1/29/19.
    iv. Presidio, TX
       1. "Predidio POE Scan"
          a. This list was provided to CBP in 2019, but the document itself does not have a date range associated with it.

b. Note whether the individual appears on the updated CBP OFO list as an individual who was flagged in OFO's electronic system of record of having affirmatively claimed to be a class member upon encounter. [3]
    i. An individual's inclusion on this list means only that the individual was flagged in OFO's electronic system of record as an individual who affirmatively *claimed* to be a class member upon encounter. This flag is not a determination that the individual necessarily *is* a class member.
    ii. Any questions about discrepancies between information on the CBP OFO list and DHS records or other evidence should be raised to Asylum Ops APSO <AsylumOpsAPSO@uscis.dhs.gov> and Asylum QA APSO <AsylumQAAPSO@uscis.dhs.gov>.

c. Note whether an individual's I-213 includes an annotation "POTENTIAL AOL CLASS MEMBER" (for I-213s from U.S. Border Patrol) or "Potential AOL Class Member" (for I-213s from OFO).
    i. This annotation means that the individual was noted by Border Patrol or OFO as an individual who affirmatively claimed to be a class member upon encounter of apprehension. This annotation is not evidence that the individual necessarily *is* a class member.
    ii. Any questions about discrepancies between an annotation on a CBP I-213 and DHS records or other evidence should be raised to Asylum Ops APSO <AsylumOpsAPSO@uscis.dhs.gov> and Asylum QA APSO <AsylumQAAPSO@uscis.dhs.gov>.

d. Note whether the I-213, I-867A/B (sworn statement), I-877 (sworn statement), or any other processing documents contain affirmative indications of class membership or evidence that would tend to negate class membership.

---

[3] See Excel file titled, "Copy of 2020-11-05_APP_AOL_Preliminary_Injunction_Guidance v1".

Page **3** of **6**

*For Official Use Only*

3. The asylum officer must determine if the individual has established he or she is more likely than not an *AOL* class member, based on the CBP *AOL* Guidance and the below:
    a. The burden is on the individual to establish class membership. See the CBP *AOL* Guidance document for the relevant class definition.
    b. The standard of proof for establishing class membership is "more likely than not." That is, the individual need establish that it is more likely than not that he or she is a class member.
    c. Documentary evidence of class membership is not required to satisfy this standard.
    d. Evidence of class membership—including but not limited to, documentation of a stay in a shelter or hotel in a Mexican border town/city during the relevant pre-July 16, 2019 time period; documentation regarding the placement of a name on a waitlist during the relevant pre-July 16, 2019 time period; and declarations, affidavits, or the individual's own statements regarding whether they may have been subject to metering during the relevant pre-July 16, 2019 time period—will generally be sufficient to establish that an individual is more likely than not a class member in the absence of contradictory evidence in DHS records or the individual's current statement or prior testimony.
    e. The waitlists provided to DOJ by class counsel, as well as the portions of waitlists and other lists indicating presence in a Mexican border town provided by INAMI or other entities to CBP OFO, may be evidence of class membership in that the presence of the individual's name on one of the lists may indicate that the individual was at or near the Mexican border near the San Ysidro, El Paso, Calexico, or Presidio ports of entry, as applicable, and made efforts before July 16, 2019, to enter the United States at that port of entry. (The Presidio list appears to have entries ranging from April 2019 through October 2019, with gaps.) However, if an individual's name is included on one of these waitlists, but the individual's own statements (during the current AOL P-I class member screening interview, prior credible fear interview, prior AOL class member screening interview, or sworn statements) clearly and unequivocally contradict that information—for example, if the individual clearly states and affirms that they did not leave their home country or arrive in Mexico before July 16, 2019—the individual's own statements may be given greater weight than the existence of a name on the waitlist.
    f. The absence of an individual's name on a waitlist should not be used to conclude that the individual is not a class member where there is other credible evidence of class membership, including but not limited to the individual's own testimony. First, DHS only has partial transcriptions of waitlists or other partial lists that may indicate an individual's presence in Mexico during a particular time frame, and that correspond to only four ports of entry: Calexico/Mexicali; El Paso/Ciudad Juarez; San Ysidro/Tijuana; and Presidio/Ojinaga. The Presidio/Ojinaga list is a list of Cuban nationals only. An individual may have placed his or her name on

       one of these waitlists on a date that falls outside the date ranges reflected by the lists in the government's possession. Additionally, waitlists exist in other Mexican border towns, but the U.S. government does not have copies of these lists. Second, it is reported that the waitlists are not always accurate or complete. Accordingly, it is possible that an individual's name was misspelled or transcribed incorrectly on the waitlist, or that the individual attempted to present themselves at a port of entry before July 16, 2019, but his/her name was not placed on a waitlist.

    g. Asylum officers can consider an individual's statements from prior screening interviews as relevant evidence to be considered when determining whether the individual is more likely than not a class member, including in assessing the individual's credibility.

4) Supervisory review
    a. All class membership determinations for these individuals must undergo supervisory review.
    b. The SAO documents the *AOL* class membership determination both on the AOL Sharepoint site and in Global. If the noncitizen is a class member, the SAO enters the special group code "NO BAR – AOL" and writes "AOL Screening – Removed subgroup" in Decision Notes. If the noncitizen is not a class member, the SAO writes "NOT AN AOL CLASS MEMBER (rather than "NOT METERED") and "AOL SCREENING – Removed subgroup."

5) Notification of determination
    a. Local offices will provide notification to the noncitizen or their representative via email. Additionally, the asylum office must forward to the Task Force the A#s and relevant information in all cases where the noncitizen established class membership.
        - If after review it is determined that the individual did not have the TCT rule applied, the local office should send the following response to the noncitizen: "An asylum officer reviewed your information and determined you are not entitled to a remedy under the terms of the PI. Al Otro Lado v. Mayorkas is a lawsuit that relates to the U.S. government's use of "metering" at land ports of entry on the U.S. Mexico border. The Court in this lawsuit issued a Preliminary Injunction (PI) prohibiting the U.S. government from applying a rule known as the "third country transit rule" to certain people who were subject to metering before the rule took effect on July 16, 2019. The third country rule was not applied to you".
        - If after review it is determined that the individual was not subjected to ER due to a negative CF determination, the local office should send the following response: "An asylum officer reviewed your information and determined you did not receive a negative credible fear determination and were not removed subject to an expedited removal order. USCIS does not have jurisdiction over your case".
        - If after review it is determined that the individual is in the United States, the local office should determine if an interview screening needs to be scheduled following the procedures for non-detained individuals. The local office should send an interview notice. If it is determined the individual was screened after December 20, 2020 and did not establish class membership, the local office

      should send the following response: "An asylum officer reviewed your information. You were screened on [date] and determined to not be an AOL PI class member."

- If class membership is established, the local office should send the following response to the noncitizen: "An asylum officer reviewed your information and determined that you are a member of the *Al Otro Lado v. Mayorkas* provisional class. As such, you may be eligible to return to the United States to seek asylum. The Third Country Transit bar will not be applied to your case." The message response must also attach the separate instructions for further processing, including how to file a Form I-131 at the lockbox. The message response should also attach the "*AOL* Preliminary-Injunction Class Membership Determination" form to the email using encryption. A separate message containing the password must be sent.
- If class membership is not established, the local office should send the following response to the noncitizen: "An asylum officer reviewed your information and determined that you are not a member of the *Al Otro Lado v. Mayorkas* provisional class". A checklist template of the elements of class membership will be created and asylum officers will check off what the noncitizen did not establish. The message response should attach the "*AOL* Preliminary-Injunction Class Membership Determination" form to the email using encryption. A separate message containing the password must be sent.

6) Review of Determinations
   a. Requests for review will be handled on a case-by-case basis and may be granted if within 30 days of issuance of the Class Membership Determination, the noncitizen submits additional evidence of class membership or can show that the determination that they were not a class member was incorrect based on the evidence submitted.
   b. Noncitizens who have been removed may submit only one request for a class membership determination.