MAYER BROWN LLP
Matthew H. Marmolejo (CA Bar No. 242964)
*mmarmolejo@mayerbrown.com*
333 S. Grand Avenue, 47th Floor
Los Angeles, CA 90071-1503
Telephone: +1.213.229.9500

VINSON & ELKINS LLP
Stephen M. Medlock (VA Bar No. 78819)
(*pro hac vice*)
*smedlock@velaw.com*
2200 Pennsylvania Ave., N.W., Ste. 500 W
Washington, DC 20037
Telephone:  +1.202.639.6500
Facsimile:    +1.202.879.8939

CENTER FOR GENDER AND REFUGEE STUDIES
Melissa Crow (DC Bar No. 453487)
(*pro hac vice*)
*crowmelissa@uclawsf.edu*
1121 14th Street, N.W., Suite 200
Washington, DC 20005
Telephone: +1.202.355.4471
Facsimile: +1.415.581.8824

*Additional Attorneys for Plaintiffs Listed
on signature block*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>ALEJANDRO MAYORKAS,[1] *et al.*,<br><br>*Defendants* | Case No. 17-CV-02366-BAS-KSC<br><br>Hon. Cynthia Bashant<br><br>**PLAINTIFFS' RULE 60(B) MOTION FOR RELIEF FROM THE JUDGMENT AND REQUEST FOR INDICATIVE RULING** |

---

[1] Secretary Mayorkas is automatically substituted pursuant to Fed. R. Civ. P. 25(d).

1

# Table of Contents

2  BACKGROUND ...............................................................................................1

3  I.    This Court Granted Injunctive Relief to a Date-Limited Class of
4        Noncitizens Impacted by the Asylum Transit Rule. ...........................2

5  II.   The Government Appealed the Permanent Injunction, and the
      Ninth Circuit Has Affirmed the Permanent Injunction As
6        Modified. ...........................................................................................3

7  ARGUMENT ...................................................................................................4

8  I.    This Court Should Vacate Its Permanent Injunction Under Rule
9        60(b)(5) With Respect To Unidentified Class Members. ...................6

10     a.    The Purpose of the Permanent Injunction Has Been
            Substantially Satisfied. ............................................................7

11     b.    The Permanent Injunction Has Achieved the Equities It
12           Was Intended To Achieve, and Applying It Prospectively
13           Is No Longer Equitable. ..........................................................11

14  II.   Vacating the Permanent Injunction Would Be Fair to the Class. ......14

15  III.  The Court Should Issue an Indicative Ruling That It Would
      Grant the Rule 60(b) Motion. ...........................................................17

16  CONCLUSION ..............................................................................................17

17
18
19
20
21
22
23
24
25
26
27
28

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5    *Al Otro Lado v. Exec. Off. of Immigr. Rev.*,
      120 F.4th 606 (9th Cir. 2024) ...............................................................*passim*

6

7    *Al Otro Lado v. Wolf*,
      952 F.3d 999 (9th Cir. 2020) ...........................................................2, 5

8

9    *Am. Unites for Kids v. Rousseau*,
      985 F.3d 1075 (9th Cir. 2021) ...................................................7, 11, 13

10

11   *California v. U.S. Env't Prot. Agency*,
      978 F.3d 708 (9th Cir. 2020) .................................................................11

12

13   *Cap. Area Immigrants' Rights Coal. v. Trump*,
      471 F. Supp. 3d 25 (D.D.C. 2020)..........................................................5

14

15   *Garner v. State Farm Mut. Auto. Ins.*,
      2010 WL 1687832 (N.D. Cal. 2010) .....................................................16

16

17   *Hanlon v. Chrysler Corp.*,
      150 F.3d 1011 (9th Cir. 1998) ...............................................................14

18

19   *Horne v. Flores*,
      557 U.S. 433 (2009).................................................................................6

20

21   *Jeff D. v. Otter*,
      643 F.3d 278 (9th Cir. 2011) ...............................................6, 7, 10, 11

22

23   *Linney v. Cellular Alaska P'ship*,
      151 F.3d 1234 (9th Cir. 1998) ...............................................................15

24

25   *Marshall v. Holiday Magic, Inc.*,
      550 F.2d 1173 (9th Cir. 1977) ...............................................................16

26

27   *Mendia v. Garcia*,
      874 F.3d 1118 (9th Cir. 2017) ...............................................................17

28

ii

*Orantes-Hernandez v. Gonzales*,
  504 F. Supp. 2d 825 (C.D. Cal. 2007), *aff'd*, 321 F. App'x. 625
  (9th Cir. 2009) ................................................................................ 12, 13

*Peery v. City of Miami*,
  977 F.3d 1061 (11th Cir. 2020) ..................................................................7

*Stathakos v. Columbia Sportswear Co.*,
  2018 WL 582564 (N.D. Cal. 2018) .......................................................14, 16

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ......................................................................14

**Statutes**

8 U.S.C. §1252(f)(1) ..........................................................................................3

**Other Authorities**

8 C.F.R. § 208.13(c)(4) (2019) ..........................................................................1

Asylum Eligibility and Procedural Modifications,
  84 Fed. Reg. 33829 (July 16, 2019) ..........................................................1

Fed. R. App. P. 12.1 .........................................................................................6

Fed. R. App. P. 12.1(b) ...................................................................................17

Fed. R. Civ. P. 23(b) .................................................................................*passim*

Fed. R. Civ. P. 23(b)(2) ...................................................................................13

Fed. R. Civ. P. 23(e) ........................................................................................13

Fed. R. Civ. P. 23(e)(1) ...................................................................................13

Fed. R. Civ. P. 62.1(a) ......................................................................................6

Fed. R. Civ. P. 62.1(a)(3) .....................................................................6, 14, 17

Fed. R. Civ. P. 62.1 ................................................................................1, 6, 16

iii

Plaintiffs respectfully request that this Court grant relief from the judgment under Federal Rule of Civil Procedure 60(b) and by vacating the Court's permanent injunction with respect to unidentified class members, as modified by the Ninth Circuit. Because this Court currently lacks jurisdiction over this matter, Plaintiffs respectfully request an indicative ruling pursuant to Federal Rule of Civil Procedure 62.1. Plaintiffs understand this motion is opposed and Defendants will file a response.

## **BACKGROUND**

This Court's permanent injunction (ECF No. 819 at 3–4) (the "Permanent Injunction" or "PI")[1] seeks to remedy harm suffered by a limited class of asylum seekers who attempted to enter the United States through ports of entry during a specific time period in 2019 (the "PI class"). This dispute generally challenges Defendants' "formalized metering policy." *Al Otro Lado v. Exec. Off. of Immigr. Rev.*, 120 F.4th 606, 612 n.1 (9th Cir. 2024). Under that policy, whenever U.S. Customs and Border Protection ("CBP") officers deemed a port of entry ("POE") on the U.S.-Mexico border to be "at capacity," "they turned away all people lacking valid travel documents." *Id.* at 610.

On July 16, 2019, the U.S. Department of Homeland Security ("DHS") and Department of Justice jointly adopted an interim final rule that rendered ineligible for asylum any noncitizen "who enter[ed], attempt[ed] to enter, or arriv[ed] in the United States across the southern land border on or after July 16, 2019, after transiting through at least one [other] country" unless that noncitizen had first applied for protection in that other country and received a final denial of protection. *See* Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33,829, 33,843 (July 16, 2019) (codified at 8 C.F.R. § 208.13(c)(4) (2019)) (the "Asylum Transit Rule" or

---

[1] References in this Motion to the Permanent Injunction include the Court's preliminary injunction where appropriate. *See* ECF No. 330.

1    "Rule"). This Court's Permanent Injunction provides relief to those noncitizens who

2    arrived at the southern border and attempted to seek asylum at a POE prior to the

3    effective date of the Asylum Transit Rule, but were illegally metered and prevented

4    from crossing into the United States until after the effective date, at which point they

5    became subject to the Rule.

6    **I.      This Court Granted Injunctive Relief to a Date-Limited Class of**

7    **Noncitizens Impacted by the Asylum Transit Rule.**

8            Plaintiffs moved for, and obtained, a preliminary injunction barring applica-

9    tion of the Asylum Transit Rule to the PI class on November 19, 2019. *See* Order

10   granting Plaintiffs' Motion for Preliminary Injunction , ECF No. 330; *Al Otro Lado*

11   *v. Wolf*, 952 F.3d 999, 1005 (9th Cir. 2020) (denying stay of preliminary injunction

12   pending appeal). This Court certified an injunctive relief class consisting of "all non-

13   Mexican asylum seekers who were unable to make a direct asylum claim at a U.S.

14   [port of entry] before July 16, 2019[,] because of the U.S. government's metering

15   policy, and who continue to seek access to the U.S. asylum process." *Al Otro Lado*,

16   120 F.4th at 613; ECF No. 330 at 36.

17           This Court granted a preliminary injunction to that class that included both

18   negative injunctive relief and affirmative injunctive relief. *Al Otro Lado*, 120 F.4th

19   at 626; *see* ECF No. 330 at 36 (granting preliminary injunction); ECF No. 605 at

20   24–25 (subsequently clarifying preliminary injunction). The negative relief portion

21   of the injunction prohibited the government from considering PI class members in-

22   eligible for asylum on the basis of the Rule. *Al Otro Lado*, 120 F.4th at 626. The

23   affirmative relief portion of the injunction required the government to take specific

24   steps to identify PI class members, notify PI class members of the injunction, and

25   take steps to reopen and re-adjudicate certain PI class members' asylum claims. *Id.*

26   In its order clarifying the scope of the preliminary injunction, this Court also ordered

27   Plaintiffs and their counsel to "facilitate the notification process for those who were

28   removed and remain outside the United States or for those who otherwise are not in

pending administrative proceedings or in the custody of the government." ECF No. 605 at 22.

This Court granted summary judgment to Plaintiffs in September 2021 on their claim that Defendants' metering policy violated Section 706(1) of the Administrative Procedure Act. ECF No. 742. Shortly after this Court granted summary judgment to Plaintiffs, Defendants rescinded their formalized metering policy. *Al Otro Lado*, 120 F.4th at 614.

On August 5, 2022, this Court further clarified and converted the preliminary injunction into a Permanent Injunction. ECF No. 816; *Al Otro Lado*, 120 F.4th at 613–14.

This Court entered final judgment on August 23, 2022. ECF No. 819.

## II.    The Government Appealed the Permanent Injunction, and the Ninth Circuit Has Affirmed the Permanent Injunction As Modified.

Defendants and the Executive Office of Immigration Review ("EOIR") appealed to the Ninth Circuit on October 21, 2022. ECF No. 823. Plaintiffs cross-appealed on November 4, 2022. ECF No. 826.

The Ninth Circuit recently affirmed the Permanent Injunction in part. *Al Otro Lado*, 120 F.4th at 628–29. The court of appeals affirmed the negative relief portions of the injunction that prohibit the government from deeming PI class members ineligible for asylum based upon the Asylum Transit Rule, as well as the affirmative relief provisions requiring the government to identify possible PI class members and notify them about their class membership. *Id.* However, the Ninth Circuit determined that the portion of the injunction requiring the government to take affirmative steps "to reopen or reconsider (or to move to reopen or reconsider) an asylum officer, IJ, or BIA decision in a removal proceeding" of a PI class member was not permissible under 8 U.S.C. §1252(f)(1). *Id.* at 629.

In his dissent, Judge Nelson suggested that this case may be moot "because the memoranda promulgating the metering policy were rescinded years ago." *Id.* at

3

1  644 (Nelson, J., dissenting). The majority found that the case was not moot "because
2  Plaintiffs sought (and the district court entered) equitable relief to ameliorate past
3  and present harms stemming from the policy, and the relief ordered imposes ongoing
4  obligations on the Government." *Id.* at 614 n.3.

5  ## ARGUMENT

6     This Court should grant the parties relief from the Permanent Injunction under
7  Federal Rule of Civil Procedure 60(b)(5), and issue an indicative ruling to that effect.
8  While the Permanent Injunction entered by the Court could and did ameliorate harms
9  caused by Defendants' conduct at the time it was entered (in November 2019) and
10 when the Ninth Circuit heard oral argument (in November 2023), facts on the ground
11 have changed since then. The formalized metering policies were rescinded over three
12 years ago. Since this Court first issued injunctive relief, Plaintiffs and the govern-
13 ment have worked to locate PI class members and rectify the impact of the Asylum
14 Transit Rule on their asylum claims. However, the parties have identified very few
15 PI class members in the last year. In fact, Plaintiffs have only identified 2 class mem-
16 bers in three years, and Defendants have not identified a class member since May
17 2023. Crow Decl. ¶¶ 40, 44.[2] Plaintiffs believe that PI class members who want relief
18 have already obtained it, and further injunctive relief is no longer necessary, partic-
19 ularly in light of the burdens the PI places on the parties.

20    The PI class that can receive relief under the Permanent Injunction is inher-
21 ently limited by the dates when noncitizens attempted to access the asylum process.
22 On April 27, 2018, CBP issued a memorandum directing CBP officers to "meter the
23 flow of travelers at the land border" based on "the port's processing capacity." *Al
24 Otro Lado*, 120 F.4th at 611. Then, on June 5, 2018, DHS adopted a prioritization-
25 based queue management policy that required CBP officers to prioritize other types

26
27
28 ──────────────
[2] The Declaration of Melissa Crow In Support Of Plaintiffs' Rule 60(B) Motion For Relief From
The Judgment and Request For Indicative Ruling is filed concurrently with this motion.

4

of trade and travel over "[p]rocessing persons without documents required by law for admission arriving at the Southwest Border." *Id.* at 611–12. To benefit from the injunction, a person has to be (1) a noncitizen of the United States, (2) who attempted to enter the United States between April 27, 2018 and July 15, 2019 at a port of entry, (3) was turned back by CBP based on the metering policy, (4) ultimately entered the United States on or after July 16, 2019, and (5) is still seeking access to the asylum process in the United States. Moreover, the Permanent Injunction only remedies the application of the Asylum Transit Rule, which was vacated on June 30, 2020, *see Cap. Area Immigrants' Rights Coal. v. Trump*, 471 F. Supp. 3d 25 (D.D.C. 2020). Thus, relief under the Permanent Injunction is only currently available to a subset of class members: those to whom the government applied the Asylum Transit Rule in prior removal proceedings (between July 16, 2019, and at the latest, June 30, 2020),[3] where application of the Rule was not already unwound through reopening or reconsideration under the Permanent Injunction or through other additional proceedings after June 30, 2020.[4]

Since November 2019, Plaintiffs' counsel and Al Otro Lado have engaged in time-consuming and expensive measures to identify PI class members who were turned back from ports of entry due to the metering policy prior to July 16, 2019, and later entered the United States and became subject to the Asylum Transit Rule. *See* Crow Decl. ¶¶ 8–39. In 2020 and 2021, these efforts and inquiries from impacted

---

[3] Practically speaking, the subset of class members eligible for relief is even smaller than those to whom the Asylum Transit Rule was applied before June 30, 2020. The government had authority to apply the Asylum Transit Rule to class members a mere 6.5 cumulative months—July 16, 2019 to November 19, 2019, and December 20, 2019 to March 5, 2020. *See Al Otro Lado v. Wolf*, 952 F.3d at 1005–06 (noting procedural history of the injunction including brief stay of the injunction by the circuit court between December 20, 2019 and March 5, 2020).

[4] For example, many (likely thousands) of PI class members were in ongoing removal proceedings when the Ninth Circuit stay was lifted and/or when the Asylum Transit Rule was vacated, and thus those individuals had the opportunity to pursue asylum in those proceedings without application of the Asylum Transit Rule.

individuals and/or their attorneys led to the identification of and relief for many PI class members. *See id.* ¶ 40. However, despite far-reaching additional efforts to identify PI class members and advise them of their rights under the injunction, efforts by Plaintiffs' counsel and Al Otro Lado have produced ever-diminishing returns in recent years. Since 2022, Plaintiffs' counsel have identified just two class members eligible for relief under the Permanent Injunction. *Id.* ¶ 40. Similarly, Defendants have only identified 7 class members, and the last positive identification was in May of 2023. *Id.* ¶44. Accordingly, because the purposes of the Permanent Injunction has been satisfied, and applying it prospectively is no longer equitable, Plaintiffs request the Court relieve the parties of the Permanent Injunction under Rule 60(b)(5).

Because this case is still pending before the Ninth Circuit Court of Appeals, Plaintiffs request an indicative ruling on this motion under Rule 62.1. Fed. R Civ. P. 62.1(a). Specifically, Plaintiffs request that this Court state that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue, so that Plaintiffs may inform the Court of Appeals of such and request that the case be remanded to this Court. Fed. R. Civ. P. 62.1(a)(3), Fed. R. App. P. 12.1.

## I.   This Court Should Vacate Its Permanent Injunction Under Rule 60(b)(5) With Respect To Unidentified Class Members.

Rule 60(b) allows district courts to "relieve a party or its legal representative from a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b). Courts may grant such relief on a number of grounds, including when "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). The Supreme Court has explained that "each of [Rule 60(b)(5)]'s three grounds for relief is independently sufficient." *Horne v. Flores*, 557 U.S. 433, 454 (2009). Generally, the movant has the burden to establish that the Rule has been satisfied. *Jeff D. v. Otter*, 643 F.3d 278, 283 (9th Cir. 2011). Here, Plaintiffs request relief because

6

the purposes of the Permanent Injunction have been satisfied, and because the circumstances have changed such that it is no longer equitable to apply the injunction prospectively.

### a. The Purpose of the Permanent Injunction Has Been Substantially Satisfied.

Rule 60(b)(5) allows vacatur of an injunction following "substantial compliance" with its terms. *Jeff D.*, 643 F.3d at 283–84.[5] Substantial compliance means "something less than a strict and literal compliance," that still achieves "the object" the injunction was "intend[ed] to accomplish." *Id.* at 284 (citation omitted). Thus, relief should be granted when the judgment has achieved the "core purpose" of the injunction. *See Peery v. City of Miami*, 977 F.3d 1061, 1075 (11th Cir. 2020) (applying substantial compliance doctrine to vacate judgment under Rule 60(b)(5)).

The Permanent Injunction has substantially achieved its core purpose of remedying the harm suffered by a limited class of asylum seekers who (1) attempted to enter the United States during a specific time period between 2018 and 2019 and also (2) had the Asylum Transit Rule applied in their immigration cases during a specific 6.5-month window during 2019 to 2020. In issuing this relief, the Court's core purpose was to "restore class members to the status quo by preventing the application of the Asylum [Transit Rule] to class members who, but for metering, would have had the opportunity to enter the United States before the regulation imposed additional asylum eligibility requirements." ECF No. 605 at 11. To that end, the Permanent Injunction obligates both Plaintiffs and Defendants to search for,

---

[5] While decisions like *Jeff D.* generally refer to satisfaction of consent decrees, which are treated as akin to contracts, Rule 60(b)(5) is not limited to consent decrees, and the same or similar standards should apply to satisfaction of injunctions designed to remedy past harm. *Cf. Jeff D.*, 643 F.3d at 283. Indeed, the Ninth Circuit applies the same standards for consent decrees as for injunctions under the equitable relief provision of Rule 60(b)(5). *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1097–98 (9th Cir. 2021) (referring to "compliance with the consent decree" and citing consent decree cases when discussing relief from an injunction).

identify, and notify potential PI class members so that they may be restored to the position they would have been in but for the now-rescinded metering policy in combination with application of the since-vacated Asylum Transit Rule.

Since November 2019, Plaintiffs' counsel and Al Otro Lado have engaged in time-consuming and expensive measures to identify the narrow group of PI class members who may be eligible for relief under the Permanent Injunction. *See* Crow Decl. ¶¶ 8–39.

- Plaintiffs' counsel spent years requesting information from the government, conferring with the government, and litigating in this Court to ensure that the injunction was being properly implemented and to gather sufficient information to effectively identify, notify, and assist PI class members in obtaining relief. *Id.* ¶¶ 9–11.

- Plaintiffs' counsel created legal resources for the public about the injunction, including a detailed Frequently Asked Questions (FAQ) document; a free informational webinar; and template motions to reopen for PI class members seeking reopening of their cases before EOIR. *Id.* ¶¶ 12–13, 15.

- Plaintiffs' counsel provided input on Defendants' written notices regarding the injunction (posted on government websites and in detention centers and provided directly to some potential PI class members), provided their contact information to be listed on those notices, and created translations of the longer, more detailed notice in multiple languages. *Id.* ¶¶ 16–17.

- Plaintiffs' counsel worked with advocates and media outlets in the countries where there was likely a concentration of potential PI class members (Ecuador, El Salvador, Guatemala, Honduras, and Mexico) to publicize widely the existence and import of the injunction in multiple languages, through the posting of flyers concerning the injunction on social media and in community locations such as churches, shelters, and immigration reception centers, as well

8

as the placement of radio spots on community radio stations throughout, Ecuador, El Salvador, Guatemala, and Honduras, which ran many times a day for several weeks. *Id.* ¶¶ 18–20, 22–28.

- Plaintiffs' counsel set up, monitored, and used various systems to communicate with potential PI class members both domestically and abroad, including an email address, a telephone hotline, social media pages, and the WhatsApp messaging service in order to do outreach and field inquiries about the injunction. *Id.* ¶¶ 28–37.
- Plaintiffs' counsel and Al Otro Lado created an online survey for potential PI class members to collect information necessary for screening for relief under the Permanent Injunction. *Id.* ¶ 34.
- Al Otro Lado, in collaboration with Plaintiffs' counsel, also created videos in multiple languages about the injunction that were targeted toward PI class members and posted them on YouTube and TikTok. *Id.* ¶ 39.

Despite these broad and resource-intensive efforts to identify PI class members and advise them of their rights under the injunction, Plaintiffs' counsel have identified very few such class members in recent years. Since 2022, through the outreach and communication efforts listed above, Plaintiffs' counsel has identified just two PI class members eligible for relief under the permanent injunction. Crow Decl. ¶ 41.

In addition, Plaintiffs understand that Defendants have largely fulfilled their obligations to identify and provide notice to potential PI class members in administrative proceedings and/or DHS custody. Crow Decl. ¶ 42. Early government efforts successfully identified many class members. For example, USCIS screenings identified 95 class members before November 23, 2020. *Id.* ¶ 46. Similarly, an EOIR declarant stated in September 2021 that EOIR had identified 2,117 cases where EOIR would be reviewing Records of Proceedings. ECF No.758-3 ¶ 4; Crow Decl. ¶ 43. As of December 2023, EOIR had taken action or reviewed and decided no

9

action was warranted in approximately 1,964 cases—approximately 93% of the set of cases EOIR had identified for review. Of the 1,964 cases, according to a spreadsheet produced by Defendants, 569 entries show either that the case was reopened (under the injunction or on some other basis) and/or that asylum was granted. Crow Decl. ¶ 43.

However, more recent government screening efforts have yielded diminishing returns. As for USCIS's separate screening process for potential class members with unexecuted expedited removal orders, class members have been identified in 0.23% of cases where USCIS review is complete. The last fruitful USCIS screening occurred in May 2023. Crow Decl. ¶ 44. Other USCIS screening of potential class members has yielded similarly low numbers of identified class members in the last three years. Crow Decl. ¶ 45. In addition, Defendants have posted notices of the Permanent Injunction on various websites and in their detention centers for a number of years, with few results in terms of PI class members self-identifying and seeking relief under the injunction. Further, the government is no longer obligated to take affirmative steps to reopen proceedings for PI class members. *Al Otro Lado*, 120 F.4th at 628–29.

Therefore, Plaintiffs' counsel believe that the Permanent Injunction has run its course and achieved the "the object which the [Court] intend[ed] to accomplish." *Jeff D.*, 643 F.3d at 284 (citation omitted). In the five years since the Court issued the PI, hundreds of potential PI class members have been screened for relief under the injunction by one or both of the parties, thousands more likely received relief in the course of their proceedings that were ongoing at the time the PI went into effect,[6]

---

[6] Indeed, it is difficult to know how many noncitizens benefited from the Permanent Injunction. Likely the largest group would have been noncitizens in ongoing proceedings when this Court issued the temporary injunction, who would have received relief from the IJ or BIA at that time. Some class members may have filed motions to reopen or sought reconsideration of their negative credible fear interviews without contacting Plaintiffs' counsel. And some shelters in Northern

10

and the parties have undertaken broad, multi-pronged notice efforts to alert any remaining potential PI class members of the possibility of relief under the injunction. However, most of that identification and screening occurred toward the beginning of the PI's five-year history. In the last three years, despite extensive efforts to find additional PI class members, Plaintiffs' counsel have located a mere two individuals who are eligible for relief under the injunction. Given that the injunction applies only to a limited group of people who attempted to enter the United States over five years ago and had their asylum claims adjudicated over four years ago, it is unsurprising that an ever-decreasing number of PI class members have been identified and sought to avail themselves of potential relief as time has passed. Thus, while it is possible that there are some PI class members who have not been identified, the parties have substantially complied with the Permanent Injunction. *Jeff. D.*, 643 F.3d at 284. Accordingly, the purpose of the injunction has been satisfied, and the Court should vacate the injunction under Rule 60(b)(5) and relieve the parties of their obligations to identify class members.[7]

> ### b. The Permanent Injunction Has Achieved the Equities It Was Intended To Achieve, and Applying It Prospectively Is No Longer Equitable.

Additionally, because the Permanent Injunction has achieved its intended equitable outcome and further enforcement would be unduly burdensome for the parties, Plaintiffs request that it be dissolved. Rule 60(b)(5) is a "malleable standard" and "preserves the courts' historical discretion over injunctions." *California v. U.S. Env't Prot. Agency*, 978 F.3d 708, 713 (9th Cir. 2020). Relief should be granted

---

Mexico provided assistance to noncitizens without coordinating with Plaintiffs' counsel or Al Otro Lado.

[7] For clarity, the negative aspects of the injunction should remain in effect for the few class-members who have been positively identified and who are currently seeking relief from immigration authorities.

11

when there is "a significant change either in factual conditions or in the law warrant-ing modification of [an injunction]." *Am. Unites*, 985 F.3d at 1097. When circum-stances have changed, the court should also consider whether "the changed condi-tions make compliance with the [injunction] more onerous, unworkable, or detri-mental to the public interest." *Am. Unites*, 985 F.3d at 1097–98. And where a gov-ernment party is involved and changed circumstances have "resolved or mooted" the underlying problem, "then equity and the public's interest in the 'sound and efficient operation of its institutions'" strongly favors vacating prospective injunctive relief. *Orantes-Hernandez v. Gonzales*, 504 F. Supp. 2d 825, 831 (C.D. Cal. 2007) (citation omitted), *aff'd*, 321 F. App'x 625 (9th Cir. 2009). Here, as in *Orantes-Hernandez*, the question is whether the "injunction has outlived its purpose and usefulness." *Id.*

The problem that this Court sought to resolve with the Permanent Injunction has been substantially rectified, and further injunctive relief is therefore unnecessary. The Permanent Injunction seeks to remedy harm suffered by a limited class of asy-lum seekers who entered the United States during a 6.5-month window in 2019 and 2020 after having previously been metered at a port of entry before July 16, 2019. But as explained above, very few PI class members are currently seeking relief and, based on Plaintiffs' and their counsel's mostly fruitless efforts to locate additional PI class members in recent years, it is unlikely that more PI class members will ben-efit from the injunction in the future.

Moreover, compliance with the screening and notification portions of the in-junction imposes substantial burdens on Plaintiffs and Plaintiffs' counsel to screen noncitizens for PI class membership. As described above, Plaintiffs' counsel main-tains a system of overlapping methods for communicating with class members, in-cluding an email listserv, a website, a telephone hotline, a live internet survey, and individualized calls and messaging through WhatsApp. Crow Decl. ¶¶ 29–38. Plain-tiffs' counsel and Al Otro Lado provided, and continue to provide, individualized advice and case review to potential PI class members who get in contact through one

12

of the methods listed above or who submit a response to the survey. *Id.* ¶¶ 14, 29–33, 35–36, 38. Plaintiffs' counsel hired a bilingual paralegal with extensive immigration experience as a dedicated staff person to monitor and respond to inquiries from potential class members. *Id.* ¶ 29. Whenever Plaintiffs' counsel received an inquiry from a potential PI class member on any of the many platforms described above, they have attempted to communicate with that potential class member. *Id.* ¶ 41. In many instances, this has required significant back and forth via different modes of communication and attorney review of a significant volume of immigration records in an individual's case before any determination regarding potential PI class membership can be made. *Id.* Plaintiffs' counsel have also had to extensively consult and search through the data provided by the government in making these determinations and, in some cases, to reach out to government counsel. *Id.* The communications, document and data review, and legal analysis necessary in each case often requires many hours of both paralegal and attorney time for each potential PI class member. *Id.* Yet, in the last three years, Plaintiffs' counsel's and Al Otro Lado's extensive notice and outreach efforts have resulted in the identification of a mere *two* PI class members eligible for relief under the injunction. *Id.* ¶¶ 40–41.[8]

Those burdens are substantially more onerous when compared to the decreasing likelihood of identifying any future class members that could benefit from the Permanent Injunction as time passes. *Cf. Am. Unites*, 985 F.3d at 1096–97 (considering how the injunction is more "onerous" in light of changed circumstances). Relieving Plaintiffs' counsel and Al Otro Lado of those burdens would also better serve the public interest by allowing them to use their limited time and resources providing pro bono services to other clients, rather than expending significant time and resources on efforts that no longer "effectively address[] the problem [the injunction]

_____

[8] Likewise, the injunction imposes burdens on the government, such as screening individuals when encountered by ICE. Crow Decl. ¶ 45. Those burdens do not appear to be helping to identify new class members.

was designed to remedy." *Orantes-Hernandez*, 504 F. Supp. 2d at 831.

## II.    Vacating the Permanent Injunction Would Be Fair to the Class.

Vacating the Permanent Injunction would also be fair and reasonable because PI class members who have sought relief are already receiving it. Because the Permanent Injunction involves class relief, the dissolution of portions of the injunction requires court approval. Fed. R. Civ. P. 23(e). Those standards are satisfied here.

First, no notice is required to the PI class because the court issued purely injunctive and declaratory relief. Fed. R. Civ. P. 23(e)(1); *Stathakos v. Columbia Sportswear Co.*, 2018 WL 582564, at *3 (N.D. Cal. 2018) ("In injunctive relief only class actions certified under Rule 23(b)(2), federal courts across the country have uniformly held that notice is not required."). Moreover, notice to the PI class would be futile because Plaintiffs and Defendants have already spent years engaging in expensive and labor-intensive efforts to give notice to and identify prospective PI class members.

Moreover, vacating the Permanent Injunction is fair to the PI class. In assessing a settlement or dismissal, district courts must assess:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "[D]ifferent factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). Here, each of these factors favors granting this motion.

While Plaintiffs have a strong case (as confirmed by the rulings from both this Court and the Ninth Circuit), there is still the prospect of further review by the en

14

banc Ninth Circuit or the United States Supreme Court. Plaintiffs are likely to suc-
ceed in either forum, if Defendants choose to pursue further review. However, Plain-
tiffs have already obtained as much relief for the PI class as is likely to ever be
obtained. Because the purposes of the Permanent Injunction have been fulfilled,
there is no need for continued litigation.

Similarly, the risk, expense, complexity and likely duration of further litiga-
tion weigh in favor of dismissal of the injunctive relief. Defendants have not yet
stated whether they will seek further review of the Ninth Circuit's judgment affirm-
ing in part the injunctive relief. However, if Defendants do seek further review, class
counsel will be required to expend considerable resources briefing en banc opposi-
tion or certiorari opposition. In contrast, the Ninth Circuit panel majority and dissent
both suggested that the case would be moot but for the injunctive relief granted to
this PI class. *Al Otro Lado*, 120 F.4th at 614 n.3, *id.* at 644 (Nelson, J., dissenting).
Vacating the injunctive relief would streamline or eliminate further litigation and
save considerable resources for all parties.

There is no risk that the PI class will lose its class status in the event of further
litigation. Defendants did not challenge class certification on appeal to the Ninth
Circuit and have therefore waived any challenge to class certification for the inher-
ently limited class served by the Permanent Injunction.

Defendants have not offered any amount in settlement. Instead, Plaintiffs'
counsel would be relieved of the burden and expense of continuing to attempt to
locate and screen potential PI class members and, potentially, continuing to litigate
further appeals of an injunction that now serves no practical purpose. Crow Decl. ¶
41.

The extent of discovery and stage of proceedings also weigh in favor of the
dismissal. This factor requires that the "parties have sufficient information to make
an informed decision about settlement" or dismissal. *Linney v. Cellular Alaska
P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). The parties have engaged in broad

discovery on the merits and years of communications regarding the status of the Permanent Injunction. Crow Decl. ¶¶ 9–11, 42. The government has periodically provided data updates to Plaintiffs' counsel regarding USCIS's and EOIR's efforts to screen cases for potential eligibility for relief under the injunction, most recently in May 2024 and again on December 19, 2024. Crow Decl. ¶¶ 42-45. The parties also engaged in months of mediation efforts after the Ninth Circuit ordered them to do so. Order at 2–3, *Al Otro Lado v. EOIR*, 120 F.4th 606 (9th Cir. 2024) (No. 22-55988), ECF No. 94 (ordering mediation). At this point, Plaintiffs and counsel have ample information about implementation of the injunction sufficient to inform their request for its dismissal.

The recommendations of Plaintiffs' counsel, which "should be given a presumption of reasonableness," *Stathakos*, 2018 WL 582564, at *5, weigh in favor of dismissal as well. Class counsel have represented Plaintiffs for years in this action. Indeed, Plaintiffs prevailed at this Court and in the Ninth Circuit, demonstrating their counsel's skill and familiarity with the relevant facts and law. Plaintiffs' counsel have substantial experience litigating complex class actions and immigration cases. Decl. of Stephen M. Medlock, ¶¶ 5-6, ECF No. 390-2. Indeed, this Court has already found that counsel is "qualified and willing to prosecute this action vigorously." ECF No. 513 at 16. Counsel are skilled attorneys with sufficient expertise to assess the fairness and reasonableness of the proposed vacatur of the injunction.

Likewise, the presence of governmental Defendants weighs in favor of dissolving the injunction. Generally, "[t]he participation of a government agency serves to protect the interests of the class members, particularly absentees, and approval by the agency is an important factor for the court's consideration." *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977); *cf. Garner v. State Farm Mut. Auto. Ins.*, 2010 WL 1687832, at *14 (N.D. Cal. 2010) (noting the presumption under the Class Action Fairness Act that governmental entities will raise objections, if any, once they have notice of a proposed settlement or dismissal). Here, Defendants

16

have not stated whether they would oppose this relief, but they have filed three different appeals with the Ninth Circuit seeking similar relief, that is, vacatur of the injunction. *Al Otro Lado*, 120 F.4th at 613 n.2, 626. If Defendants have any reason to question the fairness of vacating the injunction, they will surely raise those objections.

Finally, because no notice is necessary, that factor should not be weighed.

In sum, vacating the Permanent Injunction would be fair to the PI class, and the Court should approve this relief under Rule 60(b)(5).

**III.    The Court Should Issue an Indicative Ruling That It Would Grant the Rule 60(b) Motion.**

Because there is a pending appeal before the Ninth Circuit, this Court should issue an indicative ruling. This Court currently lacks jurisdiction to grant a Rule 60(b) motion because of the pending appeal. *See Mendia v. Garcia*, 874 F.3d 1118, 1121 (9th Cir. 2017). However, Rule 62.1 allows this Court to issue an indicative ruling and state that "it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1(a)(3). Once this Court indicates it would grant the requested relief, or at least would fully consider the substantial issue raised, the court of appeals may remand to allow this Court to enter the relief formally. Fed. R. App. P. 12.1(b). Accordingly, Plaintiffs request that this Court enter an indicative ruling stating it would grant Plaintiffs' Rule 60(b) motion, or that Plaintiffs' Rule 60(b) motion raises a substantial issue.

## CONCLUSION

This Court's Permanent Injunction has served its core purpose of restoring the status quo to a time-limited class of Plaintiffs. That injunction is unlikely to provide any further relief, but does impose continuing burdens on Plaintiffs' counsel and Defendants. Accordingly, Plaintiffs request that this Court grant and approve relief from the Permanent Injunction and vacate the injunction's requirements to identify

17

1   new class members as to all parties. Further, because this Court currently lacks ju-

2   risdiction to enter such an order, Plaintiffs request an indicative ruling on this Motion

3   under Rule 62.1(a)(3).

4

5   Dated: December 27, 2024                Respectfully submitted,

6                                            By: /s/ Matthew E. Fenn

7                                            Matthew E. Fenn (NY Bar No. 5391149)
                                             (pro hac vice)
8                                            Mfenn@mayerbrown.com
                                             MAYER BROWN LLP
9                                            71 S. Wacker Dr.
                                             Chicago, IL 60606
10                                           Telephone: +1.312.782.0600
                                             Facsimile: +1.312.706.8139
11

12                                           Matthew H. Marmolejo (CA Bar No.
                                             242964)
13                                           mmarmolejo@mayerbrown.com
                                             333 S. Grand Avenue, 47th Floor
14                                           Los Angeles, CA 90071-1503
                                             Telephone: +1.213.229.9500
15

16                                           VINSON & ELKINS LLP
                                             Stephen M. Medlock (VA Bar No. 78819)
17                                           (pro hac vice)
                                             smedlock@velaw.com
18                                           2200 Pennsylvania Ave., N.W., Ste. 500 W
                                             Washington, DC 20037
19                                           Telephone:  +1.202.639.6500
                                             Facsimile:   +1.202.879.8939
20

21                                           CENTER FOR GENDER AND REFUGEE
                                             STUDIES
22                                           Melissa Crow (DC Bar No. 453487)
23                                           (pro hac vice)
                                             crowmelissa@uclawsf.edu
24                                           1121 14th Street, N.W., Suite 200
                                             Washington, DC 20005
25                                           Telephone: +1.202.355.4471
                                             Facsimile:  +1.415.581.8824
26
                                             Neela Chakravartula (CA Bar No. 254746)
27                                           neela@uclawsf.edu
                                             UC College of the Law, San Francisco
28                                           200 McAllister Street

18

San Francisco, CA 94102
Telephone: +1.415.565.4877
Facsimile: +1.415.581.8824


CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy (NY Bar No. 2860740)
(*pro hac vice*)
*bazmy@ccrjustice.org*
Angelo Guisado (NY Bar No. 5182688)
(*pro hac vice*)
*aguisado@ccrjustice.org*
666 Broadway, 7th Floor
New York, NY 10012
Telephone: +1.212.614.6464
Facsimile: +1.212.614.6499

AMERICAN IMMIGRATION COUNCIL
Rebecca Cassler (MN Bar No. 0398309)
(*pro hac vice*)
*rcassler@immcouncil.org*
PMB 2026
2001 L St. NW, Ste. 500
Washington, DC 20036
Telephone: +1.202.507.7514


DEMOCRACY FORWARD FOUNDA-TION
Sarah Marion Rich (GA Bar No. 281985)
(*pro hac vice*)
*srich@democracyforward.org*
P.O. Box 34553
Washington, DC 20043
Telephone: +1.202-448-9090


*Attorneys for Plaintiffs*

19

## CERTIFICATE OF SERVICE

I certify that I served a copy of this document on the Court and all parties by filing this document with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all counsel of record.

DATED: December 27, 2024          Respectfully submitted,

*s/ Matthew E. Fenn*
Matthew E. Fenn

*Attorney for Plaintiffs*

## **CERTIFICATE OF CONFERENCE**

I certify that Plaintiffs conferred with counsel for Defendants on December 20, 2024, via video conferencing. Defendants indicated they intend to file a response to this Motion.  This conference occurred at least 7 days before this Motion is filed, pursuant to Section 4(a) of this Court's procedures.


DATED: December 27, 2024              Respectfully submitted,


                                      *s/ Matthew E. Fenn*
                                      Matthew E. Fenn

                                      *Attorney for Plaintiffs*

1