MAYER BROWN LLP
Matthew H. Marmolejo (CA Bar No. 242964)
*mmarmolejo@mayerbrown.com*
333 S. Grand Avenue, 47th Floor
Los Angeles, CA 90071-1503
Telephone: +1.213.229.9500

VINSON & ELKINS LLP
Stephen M. Medlock (VA Bar No. 78819)
(*pro hac vice*)
*smedlock@velaw.com*
2200 Pennsylvania Ave., N.W., Ste. 500 W
Washington, DC 20037
Telephone:  +1.202.639.6500
Facsimile:    +1.202.879.8939

CENTER FOR GENDER AND REFUGEE STUDIES
Melissa Crow (DC Bar No. 453487)
(*pro hac vice*)
*crowmelissa@uclawsf.edu*
1121 14th Street, N.W., Suite 200
Washington, DC 20005
Telephone: +1.202.355.4471
Facsimile:  +1.415.581.8824

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 17-CV-02366-BAS-KSC |
| *Plaintiffs*, | Hon. Cynthia Bashant |
| v. | |
| ALEJANDRO MAYORKAS,[1] *et al.*, | **DECLARATION OF MELISSA CROW IN SUPPORT OF PLAINTIFFS' RULE 60(B) MOTION FOR RELIEF FROM THE JUDGMENT AND REQUEST FOR INDICATIVE RULING** |
| *Defendants*. | |

---

[1] Secretary Mayorkas is automatically substituted pursuant to Fed. R. Civ. P. 25(d).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF MELISSA CROW

I, Melissa Crow, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.     I am the Director of Litigation at the Center for Gender & Refugee Studies and co-lead counsel for the Plaintiffs in this case.

**Procedural History of the Permanent Injunction**

2.     On July 16, 2019, while the above-captioned case was pending, the U.S. Department of Homeland Security ("DHS") and the Executive Office for Immigration Review ("EOIR") promulgated an interim final rule entitled "Asylum Eligibility and Procedural Modifications," which is also known as the "Asylum Transit Rule." *See* Prop. Homeland Sec. Rule § 208.13(c)(4), 84 Fed. Reg. 33,829 (July 16, 2019)).   Among other things, this Rule rendered ineligible for asylum noncitizens who entered, attempted to enter, or arrived at the U.S.-Mexico border on or after July 16, 2019, after transiting through at least one country other than their country of origin without applying for humanitarian protection in that country. The Asylum Transit Rule was later vacated through separate litigation on June 30, 2020. *Cap. Area Immigrants' Rights Coal. v. Trump*, 471 F. Supp. 3d 25 (D.D.C. 2020).

3.     On November 19, 2019, the U.S. District Court for the Southern District of California provisionally certified a class consisting of "all non-Mexican asylum seekers who were unable to make a direct asylum claim at a U.S. POE [port of entry] before July 16, 2019, because of the U.S. Government's metering policy, and who continue to seek access to the U.S. asylum process." (ECF No. 330 at 36). The district court also issued a preliminary injunction prohibiting the Government from applying the Rule to provisional class members and ordering them to apply pre-Rule practices in processing these individuals' asylum applications. *Id.* The preliminary injunction was briefly stayed by the Ninth Circuit Court of Appeals from December 20, 2019, until March 5, 2020. *Al Otro Lado v. Wolf*, 952 F.3d 999 (9th Cir. 2020).

4.     On October 30, 2020, the Court issued an Order clarifying the requirements for compliance with the preliminary injunction. *Al Otro Lado v. Wolf*, 497 F. Supp. 3d 914, 935 (S.D. Cal. Oct. 30, 2020) (the "Clarification Order"), *modified on clarification sub nom. Al Otro Lado, Inc. v. Mayorkas,* No. 17-cv-02366, 2022 WL 3142610 (S.D. Cal. Aug. 5, 2022), *judgment entered*, No. 17-cv-02366, 2022 WL 3970755 (S.D. Cal. Aug. 23, 2022), *aff'd in part, vacated in part sub nom. Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 120 F.4th 606 (9th Cir. 2024). In particular, the Clarification Order explained that: (1) EOIR, like Defendants, was bound by the preliminary injunction; and that Defendants must (2) make all reasonable efforts to identify class members in administrative proceedings before U.S. Citizenship and Immigration Services ("USCIS") or EOIR, or in DHS custody and share information regarding their identities with Plaintiffs; (3) provide notice to such individuals of their potential class membership and the existence and import of the preliminary injunction; and (4) take affirmative steps to reopen or reconsider past determinations that potential class members in expedited or regular removal proceedings were ineligible for asylum based on the Asylum Transit Rule. Clarification Order, 497 F. Supp. 3d at 935.

5.     In the Clarification Order, the Court tasked Plaintiffs and their counsel with notifying class members who were removed from and remained outside the United States, as well as those not in pending administrative proceedings or in DHS custody.  497 F. Supp. 3d at 933.

6.     On December 17, 2020, the Government reissued the Asylum Transit Rule as a superseding final rule. *See* Asylum Eligibility and Procedural Modifications, 85 Fed. Reg. 82,260 (Dec. 17, 2020) (to be codified at 8 C.F.R. parts 208, 1208). On January 18, 2021, the Court entered a temporary restraining order preventing the application of the reissued Asylum Transit Rule to provisional class members on the same basis as the prior preliminary injunction, as clarified. *Al Otro Lado v. Gaynor*, 513 F. Supp. 3d 1253, 1262 (S.D. Cal. 2021). The district court

2

Crow Decl. ISO Pls.' Rule 60(b) Motion for Relief
Case No. 3:17-cv-02366-BAS-KSC

converted the temporary restraining order to a preliminary injunction on February 1, 2021. (ECF No. 676).

7.     On August 5, 2022, the Court converted its preliminary injunction of the Asylum Transit Rule to a permanent injunction on largely the same terms as the prior preliminary injunction, as clarified. *Al Otro Lado v. Mayorkas*, 2022 WL 3142610. On October 23, 2024, the Ninth Circuit affirmed that decision in part, but narrowed the obligations imposed on the Government by vacating the portion of the injunction[1] requiring the Government to sua sponte reopen or reconsider prior denials of asylum based on the Asylum Transit Rule to class members in removal proceedings. 120 F.4th at 628-29.

**Efforts by Plaintiffs' Counsel to Identify, Notify, and Obtain Relief for Class Members**

8.     Plaintiffs' counsel, in collaboration with Plaintiff Al Otro Lado, have carried out exhaustive efforts to identify and notify potential class members of their rights under the injunction, and to help them pursue relief under the injunction when available. These efforts include, among other things: creation of a Frequently Asked Questions ("FAQ") and webinar for U.S.-based practitioners; *ad hoc* assistance in the individual cases of potential class members; creation of template motions to reopen before immigration judges ("IJs") and the Board of Immigration Appeals (BIA); notification of potential class members outside the United States; collaboration with the Government to notify potential class members in the United States; establishment of numerous systems to receive and respond to inquiries from potential class members, their loved ones, or their counsel, whether located inside or outside the United States; and an informational video posted online. When Plaintiffs' counsel have identified individuals who could be eligible for relief under the

---

[1] In this declaration, I use "the injunction" from this point forward to refer to the injunction regardless of its status at any given time as preliminary or permanent. I refer to all members of the injunction class as "class members" for purposes of this declaration.

3

injunction, Plaintiffs' counsel have provided individual assistance to obtain that relief.

9. Plaintiffs' counsel spent years requesting information from Defendants, conferring with Defendants, and litigating in the district court to ensure that the injunction was being properly implemented and to gather sufficient information to effectively identify, notify, and assist class members in obtaining relief under the injunction. Plaintiffs' counsel sent their first request for information about the Government's plans for injunction implementation on November 20, 2019, the day after the injunction was issued. Ultimately, Plaintiffs filed a number of motions related to enforcement of the injunction due to, in Plaintiffs' counsel's view, incomplete compliance on the Government's part. *See* ECF No. 494 (Clarification Motion); ECF No. 574 (Motion to Enforce); ECF Nos. 644 & 646 (Motion to Enforce); ECF No. 680 (Motion for Discovery); ECF No. 736 (Motion for Court Oversight). Plaintiffs' counsel's efforts to confer with the Government regarding injunction implementation are detailed in district court filings supporting these motions. In response to these motions, Defendants generally provided additional information about their implementation of the injunction.

10. Because the information needed to identify class members outside the United States was uniquely within Defendants' possession, Plaintiffs repeatedly asked Defendants to provide this information. Plaintiffs' counsel first received a list of potential class members (referred to by the parties as the "master list") from Defendants in April 2021—1.5 years after the injunction's issuance and 6 months after the district court specifically ordered Defendants to produce this information. *See* ECF No. 605 at 25 (ordering Defendants to "shar[e] information regarding class members' identities with Plaintiffs"). The master list, which Defendants updated a number of times between April 2021 and December 2023, contains various details such as country of origin, detention status, immigration counsel information, and some information about the course of immigration proceedings. Eventually, it was

updated to include dates of birth. However, the master list does not contain usable contact information for the individuals listed, nor does it contain information sufficient to determine if each individual is eligible for relief under the injunction.

11.    Plaintiffs' counsel's ability to provide meaningful notice to potential class members outside the United States depended not only on being able to identify and locate them, but also on receiving information about the Government's procedures for class members to obtain relief under the injunction. With regard to potential class members located outside the United States, Defendants provided finalized procedures for those individuals on April 4, 2023. For that reason, Plaintiffs' counsel's efforts to notify potential class members outside the United States of their rights under the injunction were not fully underway until after that date. By the time Defendants finally provided this information, many more class members had been removed from the United States, making it more challenging for Plaintiffs' counsel to conduct outreach and provide meaningful notice.

***Frequently Asked Questions***

12.    Plaintiffs' counsel drafted an English-language FAQs document on December 3, 2019, shortly after the injunction was first issued. That document was most recently updated in April 2023, after Plaintiffs' counsel received finalized procedures from Defendants for potential class members outside the United States. It is available to the public online at: https://www.americanimmigrationcouncil.org/ sites/default/files/other_litigation_documents/faq_update_final_4.28.2023.pdf  and was distributed via emails sent by Plaintiffs' counsel to various listservs of immigration lawyers and advocates. The document contains detailed practical guidance and a complete explanation of the contours of the injunction and is intended to be a guide for U.S.-based immigration counsel who represent or otherwise seek to assist individuals who may be covered class members.

13.    On May 2, 2023, Plaintiffs' counsel hosted a free webinar available to anyone who registered to explain the details of the injunction, as a complement to

5

the FAQ, targeting U.S.-based advocates and immigration practitioners. Plaintiffs' counsel publicized it in advance to immigration law practitioners and members of the American Immigration Lawyers Association through emails and on various social media channels and listservs; over 160 people registered. It was later made available to the public online at https://www.youtube.com/watch?v=yVEI4VfHvSs, where it has been viewed over 140 times.

### Ad Hoc Assistance to Potential Class Members

14. After the stay of the injunction was lifted in March 2020, Al Otro Lado and Plaintiffs' counsel began advising individual class members and their counsel regarding arguments to make to seek reopening or reconsideration of their cases under the injunction. Plaintiffs' counsel and Al Otro Lado received a flurry of inquiries in 2020 and early 2021 from U.S.-based attorneys and advocates seeking assistance with the cases (both closed and pending) of potential class members. In each case, Plaintiffs' counsel and/or Al Otro Lado provided individualized advice about the application of the injunction; in addition, Al Otro Lado provided documentation confirming that individuals had been metered in over 200 cases. When necessary, Plaintiffs' counsel also elevated individual cases to Defendants on an *ad hoc* basis to obtain information needed to evaluate eligibility for relief or to pursue such relief.

### Motion to Reopen Procedures and Templates

15. Eventually, Plaintiffs' counsel approached the Government to standardize procedures for motions to reopen filed before an IJ or the BIA, and in mid-2022 the parties finalized a procedure, notice language, and templates for such motions. Instructions and templates are available on the website of the American Immigration Council ("AIC"), co-counsel for Plaintiffs, at https://www.americanimmigrationcouncil.org/content/metering, and on EOIR's website at https://www.justice.gov/eoir/litigation-notices.

*DHS Notices*

16.    Defendants, with some input from Plaintiffs' counsel, drafted a one-page general notice about the injunction. That notice is available on various DHS websites, including USCIS (https://www.uscis.gov/sites/default/files/document/notices/Al_Otro_Lado_class_action_notice.pdf, posted March 25, 2022), Immigration and Customs Enforcement ("ICE") (https://www.ice.gov/doclib/legalNotice/alOtroLado_17-02366_SDCal_CAN_PrelimInj.pdf, posted April 8, 2022), and Customs and Border Protection ("CBP") (https://www.cbp.gov/document/al-otro-lado-v-mayorkas, posted March 25, 2022). ICE posted a similar summary notice in detention facilities on October 5, 2021 (which, since then, has been subject to minor revisions). These summary notices direct the reader to contact their lawyer or class counsel for more information. These notices include Plaintiffs' counsel's MeteringClass@splcenter.org email address and a mailing address for Plaintiffs' counsel, and the ICE notice posted in detention facilities includes class counsel's speed dial number, which detained individuals can access for free.

17.    In addition, USCIS drafted, with some input from Plaintiffs' counsel, a more detailed Notice of Potential Class Membership, specifically intended for potential class members who were ordered removed in expedited removal proceedings but who had not yet been removed and were subject to further screening for class membership by USCIS. USCIS posted this notice on its website at https://www.uscis.gov/sites/default/files/document/legal-docs/AOL_Class_Action_Notice.pdf on September 13, 2022 and also mailed it to individuals identified for further screening. After consulting with Al Otro Lado regarding the primary languages spoken by asylum seekers at the southern border, Plaintiffs' counsel had the notice translated into Spanish, Amharic, Farsi, K'iche', Mam, and Tigrinya. The version of the notice posted on USCIS's website indicates that translations of the notice into additional languages are available on AIC's website at https://www.americanimmigrationcouncil.org/content/metering-notices.     These

7

notices include Plaintiffs' counsel's MeteringClass@splcenter.org email address and directs recipients to contact Plaintiffs' counsel with questions.

***Outreach to Class Members Removed from the United States***

18.    After the Ninth Circuit stay of the injunction was lifted in March 2020, Plaintiffs' counsel began a years-long effort to provide meaningful notice of the injunction to potential class members outside the United States. These efforts began in 2020, before Defendants provided any data to Plaintiffs' counsel about potential class members. On the assumption that there were likely many potential class members located in Mexico and Central America, Al Otro Lado and Plaintiffs' counsel created an informational flyer advising people of the injunction, explaining its impact, detailing the requirements for class membership, and directing potential class members to contact Al Otro Lado for more information. This flyer was translated into Spanish and numerous indigenous languages, including Q'anjob'al, Q'eqchi', Mam, and K'iche', and distributed in collaboration with Justice in Motion. Justice in Motion is a non-profit organization that advances migrant justice by building and supporting partnerships between legal advocates in the United States and civil and human rights defenders in Mexico and Central America. Between May and June 2020, human rights advocates in the Justice in Motion network located in Mexico, El Salvador, Guatemala, and Honduras disseminated the information in the flyer through a variety of channels, including sending the flyers to community radio stations in these countries with a request that they be read on air; providing information in the flyers to recently deported individuals outside of reception centers in these countries, and publishing the flyers on Facebook.

19.    Once Plaintiffs' counsel received the "master list" of potential class members from Defendants in April 2021, Plaintiffs' counsel used this data to shape further efforts to locate and notify potential class members outside the United States. An in-house data analysis team at AIC cleaned and analyzed the data in the master list. Based on this review, the data Defendants provided contained very little usable

contact information for potential class members. But from this data, Plaintiffs identified Guatemala, El Salvador, Honduras, and Ecuador as the top countries of origin for potential class members.

20.     Beginning in November 2022, Plaintiffs' counsel retained human rights advocates through Justice in Motion in Guatemala, Honduras, and El Salvador, to advise on the best ways to notify potential class members in those countries and, in Guatemala and Honduras, to assist with outreach to potential class members.

21.     In January 2023, Defendants' counsel informed Plaintiffs' counsel of three Honduran individuals whose cases had been reopened pursuant to the injunction but whom EOIR had been unable to locate. Through Justice in Motion, Plaintiffs' counsel then identified and contracted with a local Honduran advocate to locate these individuals, who were believed to be in Honduras. Months later, in May 2023, Defendants' counsel informed Plaintiffs' counsel that in all three cases, after reopening, the cases were denied a second time without a hearing based on grounds that appeared in the initial decision.

22.     Plaintiffs' counsel's contracted Justice in Motion human rights advocate in Honduras also circulated resources about the injunction on Facebook.

23.     To provide notice to class members in Guatemala, where proportionally more people live in rural areas, speak indigenous Mayan languages, and lack literacy, Plaintiffs' counsel hired a local human rights advocate through Justice in Motion, and jointly developed a country-specific strategy. After the advocate completed extensive research into available media options, Plaintiffs' counsel placed professionally-produced radio spots on community radio stations throughout the country in Spanish and seven Mayan languages (Q'eqchi', Mam, Ch'orti', Tz'utujil, K'iche', Kaqchikel, and Q'anjob'al). The radio spots played multiple times a day on each station, 5-6 days a week, for at least a month per station in summer and fall 2023. The radio spots were broadcast on 31 stations covering most of the country within a community radio network organized by FGER (the Federación

9

Guatemalteca de Escuelas Radiofónicas, or the Guatemalan Federation of Radio Schools) as well as three other local stations in parts of the country not covered by the FGER network (Radio Xyaab' Tzuultaq'a, Radio Jolon Konob, and Radio Nojibalstereo). Some of the contracted radio stations also posted an informational video on Facebook.[2]

24.     Plaintiffs' counsel also reached out to Radio B'alam and Voces Maya. Radio B'alam is an online radio station dedicated to serving the Mam-speaking community of Oakland, California, and also has wide listenership within the Mam-speaking community in Guatemala. Voces Maya is the Mayan-speaking outreach team of East Bay Sanctuary Covenant, a non-profit organization based in California. Both organizations posted informational content about the injunction on their social media platforms in order to expand Plaintiffs' counsel's reach with the Mam-speaking community.

25.     In Ecuador, Plaintiffs' counsel contracted with an advocate at Corredores Migratorios (CM), a human rights NGO based in Quito, Ecuador, to contact class members throughout the country in 2023. Contracting with CM was essential to reach asylum seekers because, as CM's representative explained to Plaintiffs' counsel, much of mainstream Ecuadorian media will not publicize information on migration-related developments because it is hostile towards migration generally, and towards migration to the United States specifically. In addition, a significant portion of Ecuadorian asylum seekers (a) are indigenous, (b) live in very rural areas, and/or (c) do not regularly consume traditional forms of radio, print, and TV media. Instead, as CM's representative explained to Plaintiffs' counsel, information is generally circulated among communities through word-of-mouth, Facebook, and an extensive and informal church parish network (especially

---

[2] For example, *see* https://fb.watch/mVGyNy3UL4/?mibextid=Nif5oz (Radio Jolon Konob); https://www.facebook.com/reel/784233646573741 (Radio Nojibalstereo); https://bit.ly/41ZlfsD (Radio Xyaab' Tzuultaq'a).

in the southern region of Ecuador). Churches regularly include announcements at the end of a mass service, which is often live-streamed via Facebook. Accordingly, from May to August 2023, CM disseminated flyers detailing the lawsuit and information regarding class membership on Facebook[3] and directly to their contacts in the human rights sector in Ecuador. In addition, CM used the Ecuadorian parish network to disseminate information about the lawsuit, which CM indicated was streamed via Facebook Live.

26.     In January 2024, Plaintiffs' counsel contracted with Asociación de Radiodifusión Participativa de El Salvador (ARPAS), a communications firm in El Salvador, to design and produce radio and digital posts and broadcast them in El Salvador, Honduras, and Ecuador. ARPAS' network throughout Central America assisted in posting TV and radio spots to broadly distribute information to potential class members in these countries. This allowed Plaintiffs' counsel's notice to reach more potential members, especially those with limited literacy.

27.     ARPAS scripted, designed, and mastered a Spanish-language radio spot and produced an informational video, both of which were approved by counsel. They also designed a Spanish-language graphic explaining class membership for use on social media. Class counsel reviewed these products before they were deployed, soliciting input from Al Otro Lado. ARPAS distributed the video, radio spot, and graphic in Ecuador, El Salvador, and Honduras, on the radio and through social media in January and February 2024. In El Salvador, ARPAS ran the radio spot eight times per day and posted specific injunction-related content on their social media platforms (Facebook, Twitter, Instagram, and YouTube). In Honduras, ARPAS worked with Radio Progreso to run six radio spots per day and post on social media four times. In Ecuador, ARPAS ran radio spots between three and seven times per day and posted on digital media three to five times via five different radio stations

---

[3] https://www.facebook.com/share/p/18P4wQfVfA/.

and their digital media platforms (Sucumbios, La Tacunga, La Voz de Ingapirca, ERPE Radio Sucumbios, and ALER, a continental network of community radio stations headquartered in Quito, Ecuador).

28.     Apart from the flyers distributed through Justice in Motion in 2020, described in Paragraph 18, the radio spots, flyers, social media posts, and videos that were distributed online and in Honduras, Guatemala, El Salvador, and Ecuador, all directed potential class members to contact Plaintiffs' counsel for more information if a person thought they were a class member and provided a free method for contacting Plaintiffs' counsel from abroad.

***Implementation of Systems to Communicate with Potential Class Members***

29.     To field inquiries regarding potential class membership, Plaintiffs' counsel set up a number of overlapping communications systems, including an email address, a hotline, use of the detention center messaging platform GettingOut, a Facebook page, an online survey, and a protocol for the use of the messaging program WhatsApp. Initially, attorneys on Plaintiffs' counsel team directly monitored and responded to inquiries regarding potential class membership. In May 2023, Plaintiffs' counsel hired a bilingual paralegal with extensive immigration experience as a dedicated staff person to monitor and respond to inquiries from potential class members. AIC posted the job description several times and completed multiple rounds of interviews to identify the appropriate candidate for the job.

30.     In late 2020, Plaintiffs' counsel created a centralized email address, meteringclass@splcenter.org, to receive inquiries, including from people within and outside the United States and people in detention who have email access. Plaintiffs' counsel continuously monitor that account. In 2021, Plaintiffs' counsel created a template response to inquiries received, which provides information about the case and the requirements for class membership and then directs users to a survey that aims to collect the information necessary to determine if the person emailing, or their client or loved one, may be eligible for relief under the injunction. If a person appears

12

to be eligible for relief under the injunction, Plaintiffs' counsel provide assistance to obtain that relief. Plaintiffs' counsel have received scores of inquiries sent to the meteringclass email address since it was created. Only a handful of those inquiries have turned out to be from class members entitled to relief under the injunction. The volume of emails received has declined in recent years. From January 2022 to date, Plaintiffs' counsel have received 27 legitimate inquiries to the email account and sent a response to each one. Out of these 27 inquiries, Plaintiffs' counsel have identified only one as being from a class member entitled to relief under the injunction.

31.     In addition, in summer 2022, Plaintiffs' counsel set up and paid for a hotline accessible to people in U.S. immigration detention centers. Plaintiffs' counsel staffed the hotline for a set number of hours per week from July 2022 to April 2023. In October 2022, the hotline was assigned a speed-dial number through ICE's Detainee Telephone System Pro Bono Platform, allowing detained individuals across the country to call Plaintiffs' counsel for free on an unmonitored line by dialing 1051#. During staffed hotline hours, callers were screened for eligibility for relief under the injunction using a standard set of screening questions. As of April 27, 2023, Plaintiffs' counsel had received a total of 23 calls; none of those individuals were class members.

32.     Because staffing the hotline was not resulting in the identification of any class members, in May 2023, Plaintiffs' counsel re-routed calls made to the hotline to a voicemail box. Detained individuals can leave a voicemail with their personal information. Upon receiving a voicemail, Plaintiffs' counsel locates the person through ICE's Online Detainee Locator System (https://locator.ice.gov/odls/#/search) and mails the person a packet that provides information about the case and the requirements for class membership. Since transitioning to this voicemail system, Plaintiffs' counsel have received 70 voicemails, mailed 70 packets in response and received 2 responses to those

13

mailings. None of these inquiries have resulted in identification of any class members eligible for relief under the injunction.

33.     Plaintiffs' counsel are also able to receive class membership inquiries from detained individuals using GettingOut—a communications platform that detained people may pay to use in some ICE detention facilities to send messages and make calls. Plaintiffs' counsel have phased out use of GettingOut to the extent possible given that written messages on the platform are not protected as confidential attorney-client communications and GettingOut is not free for detained people to use; however, it is still possible to receive communications from potential class members on this platform. Since early 2022, Plaintiffs' counsel have received 20 inquiries on Getting Out and responded to all of them; only one detained individual replied to the response received. None of these inquiries resulted in identification of a class member eligible for relief under the injunction.

34.     In January 2023, Plaintiffs' counsel engaged Mobile Pathways, a technology nonprofit that leverages mobile technology, data, and artificial intelligence to ensure immigrants get fair access to justice. Their online platform, MyCamino, enabled Plaintiffs' counsel to send and receive bulk text messages via SMS and WhatsApp to reach class members outside the United States, provide them with information about the case, and securely store class member and outreach data. Bearing in mind the limitations of using technology that may not be familiar or accessible to some migrants, Plaintiffs worked with Mobile Pathways to create a mobile-friendly survey available in English, Spanish, and Haitian Creole to collect information about potential class members.

35.     Although, as discussed in paragraph 10, the data provided by Defendants regarding potential class members lacked reliable contact information, the data team at AIC undertook a machine learning-based "fuzzy matching" process to cross-reference the Government's data with names and contact information on the one metering waitlist in Plaintiffs' possession containing contact information (from

14

the El Paso-Juárez port of entry). This analysis resulted in 56 names of individuals on the Government's list of potential class members who were also listed with contact information on the El Paso-Juárez waitlist. Beginning in February 2023, Plaintiffs' counsel used MyCamino to distribute the survey and reminders about the injunction via WhatsApp to the individuals on the El Paso-Juárez waitlist whom the AIC data team had identified on the Government's list of potential class members, as well as to the emergency contact numbers for those individuals, where available. Potential class members were directed to complete the survey for review by Plaintiffs' counsel, who conducted a follow-up phone screening with individuals who appeared to meet the requirements for class membership. Subsequently, in an effort to identify additional potential class members, Plaintiffs' counsel used the MyCamino platform to distribute the survey to a list maintained by Al Otro Lado of individuals who had sought access to the asylum process at the U.S. border prior to 2021. Al Otro Lado also later independently reached out to these individuals, all of whom had had prior contact with the organization, to notify them of the requirements for class membership and provide them with a way to contact Plaintiffs' counsel for additional information.

36.     In March 2023, Plaintiffs' counsel created a Facebook page, https://www.facebook.com/ayudalistadeespera, which provides basic information about the lawsuit, informational videos, and a link to the online survey. Plaintiffs' counsel also paid to have a Facebook ad temporarily "boosted" (*i.e.*, more prominently featured) in countries of interest in an effort to reach more potential class members outside the United States. The Facebook page has generated 1.8K link clicks. Individuals have messaged Plaintiffs' counsel through the Facebook page with legitimate inquiries about class membership 26 times. To ensure consistency of messaging, Plaintiffs' counsel created template messages in English and Spanish to respond to individuals who messaged class counsel through the Facebook page. None of the inquiries sent to Plaintiffs' counsel through Facebook

15

have resulted in identification of any class members eligible for relief under the injunction.

37.     Unscrupulous actors often prey upon asylum seekers who are trapped in Mexico and unable to reach safety in the United States due to Defendants' policies and practices at the border. To increase the credibility of our Facebook page and assure visitors that the information on the website is legitimate and not fraudulent, we created a migrant-facing page on the American Immigration Council's website and linked to it from the Facebook page. *See* https://www.americanimmigrationcouncil.org/al-otro-lado-mayorkas. The page on the American Immigration Council's website is translated into English, Spanish, and Haitian Creole and contains information about class membership as well as informational videos and illustrations designed to communicate information to persons of varying levels of literacy.

38.     In total, Plaintiffs' counsel has received approximately 100 responses to the survey they created and disseminated online and on WhatsApp. Plaintiffs' counsel conducted follow-up screenings by phone, using WhatsApp (which allows for free internet-based calls between people in different countries) with each individual, and also used WhatsApp for follow-up communications, including written messages and phone calls. Only one of these survey respondents was identified as a class member eligible for relief under the injunction.

***Informational Video***

39.     Al Otro Lado staff created a short video explaining the injunction based on a script drafted in collaboration with Plaintiffs' counsel. The video was recorded in English, Spanish, and Haitian Creole and posted on YouTube and TikTok starting on February 10, 2023. There are two different posts on YouTube of the Spanish-language version of the video, which combined have been viewed 272 times (https://www.youtube.com/watch?v=vls9-HBR_Wo and https://www.youtube.com/watch?v=tbQ7YTSo5G0&t=3s); the English version (https://www.youtube.com/

watch?v=h-yqI9r6fpo) has been viewed 85 times; the Haitian Creole version (https://www.youtube.com/watch?v=TeIWnH5Zd24&t=7s) has been viewed 91 times. The Spanish TikTok video (https://www.tiktok.com/@alotrolado_info/ video/7208618579321752875) has been viewed 9,699 times and "liked" 130 times. The English TikTok video (https://www.tiktok.com/@alotrolado_info/ video/7211191869378694442) has been viewed 6,413 times and "liked" 30 times. The Haitian Creole TikTok video (https://www.tiktok.com/@alotrolado_info/ video/7211195149161090350) has been viewed 9,730 times and "liked" 104 times. Plaintiffs' counsel also included the link to the video in initial WhatsApp outreach detailed in paragraphs 34–35 above. In addition, it was linked on the Facebook page described in paragraph 36 above.

***Results of Plaintiffs' Counsel's Efforts***

40.    A flurry of inquiries from potential class members and their attorneys in 2020 and early 2021 resulted in identification and, ultimately, relief for many class members under the injunction. Since then, as described above, Plaintiffs' counsel have undertaken broad publication notice efforts in target countries likely to be home to the highest numbers of class members based on the Government's data (Ecuador, El Salvador, Guatemala, and Honduras, as well as Mexico), created online and social media resources in various languages, and set up extensive communications systems to field and respond to inquiries from potential class members. Plaintiffs' counsel have received significantly fewer inquiries about the injunction in the years since, and through those inquiries have located a mere two class members[4] eligible for relief under the injunction.

---

[4] One class member, identified in 2023 after he completed the online survey, *see supra* ¶¶ 35, 38, has already returned to the United States with the assistance of Plaintiffs' counsel after going through the parole process set up by Defendants to comply with the injunction; the other, identified in 2024 after he contacted Plaintiffs' counsel through the meteringclass email address, *see supra* ¶ 30, has submitted a motion to reopen to the BIA with the assistance of Plaintiffs' counsel, per

41.     Whenever Plaintiffs' counsel have received an inquiry from a potential class member on one of the many platforms described above, we have made attempts to communicate with the person making the inquiry regarding class membership. In many instances, this has required significant back and forth via different modes of communication and attorney review of a significant volume of immigration records in an individual's case before any determination regarding potential class membership can be made. In making these determinations, Plaintiffs' counsel has also had to extensively consult and search through the data provided by the Government and, in some cases, to reach out to Defendants' counsel. The communications, document review, and legal analysis necessary in each case often requires many hours of both paralegal and attorney time. Despite these time-consuming and expensive efforts by Plaintiffs' counsel to screen and interview scores of potential class members, in the last three years, we have identified only the two class members described above, *see supra* ¶ 40 & n.4.

**The Government's Implementation of the Injunction**

42.     Based on Plaintiffs' counsel's understanding from Defendants' filings and communications regarding implementation of the injunction, the Government has largely completed its work to identify and provide notice to potential class members in administrative proceedings and/or in DHS custody. Where those efforts have not been completed, it is Plaintiffs' counsel's understanding that additional notice and screening efforts appear to be largely futile.

43.     As to EOIR's screening of records of removal proceedings ("ROPs") in cases of potential class members, an EOIR declarant stated in September 2021 that EOIR had identified 2,117 cases where EOIR would be reviewing ROPs to determine if EOIR would sua sponte reopen cases to unwind application of the

the procedures agreed to by Defendants, and awaits a final class membership determination by Defendants.

Asylum Transit Rule. ECF No. 758-3 ¶ 4. Data that Defendants produced to Plaintiffs' counsel on December 15, 2023, showed that at that time, based on Plaintiffs' counsel's best understanding, EOIR had taken action or reviewed and decided no action was warranted in approximately 1,964 cases—approximately 93% of the set of cases EOIR had identified for review.[5] Of the 1,964 cases, according to the spreadsheet, 569 entries show either that the case was reopened (under the injunction or on some other basis) and/or that asylum was granted.

44.    As for USCIS's screening of potential class members with unexecuted removal orders, USCIS described the applicable procedures at ECF No. 758-2. Defendants produced updated data to Plaintiffs' counsel regarding these screenings on December 19, 2024. Based on Plaintiffs' counsel's understanding, the data produced is a list of 3,225 individuals with unexecuted expedited removal orders whom the agency considers or considered as potential class members. In 2,999 of these cases (approximately 93%), the spreadsheet indicates that USCIS either determined an AOL screening was not needed, completed a screening, or scheduled a screening and the person was a "no show." In the 201 cases where a screening took place, only 7 screenings resulted in identification of class members. In other words, out of the universe of cases where USCIS review is complete (USCIS has reviewed and either (a) determined a screening was unnecessary, (b) screened the potential class member, or (c) scheduled a screening but the interviewee was considered a "no show"), class members have been identified in 0.23% of cases. The last of these fruitful screenings appears to have occurred on May 4, 2023, over 1.5 years ago.

45.    Since November 2020, ICE has conducted screenings of people in ICE custody who are subject to imminent removal to evaluate whether they might need

---

[5] Defendants have not provided updated data on EOIR ROP review since December 2023. Presumably, in the 10 months between then and the Ninth Circuit's October 23, 2024, decision, which vacated the portion of the injunction requiring EOIR to sua sponte reopen and reconsider cases, EOIR completed ROP review in most or all of the remaining 7% of cases.

to a USCIS screening interview to determine if they are class members eligible for relief under the injunction. Under these procedures as Plaintiffs' counsel understands them, when ICE identifies such individuals, they are provided a written notice about the injunction and referred to USCIS for further screening. *See, e.g.*, ECF No. 695-3 (USCIS declaration explaining these procedures); ECF No. 695-5 (ICE declaration explaining these procedures). Defendants produced data to Plaintiffs' counsel on April 22, 2021, showing that 34 class members had been identified through these screenings between November 2020 and April 12, 2021. Apart from those 34, the most recent master list, produced December 2023, shows that an additional 240 people had been screened by USCIS, based on Plaintiffs' counsel's understanding of that data. Of those 240, it appears that 185 were likely screened under the non-detained screening procedures described *supra*, at paragraph 44, suggesting that only 55 people were screened by USCIS based on a referral from ICE pending their imminent removal between April 2021 and December 2023. Based on Plaintiffs' counsel's best understanding of the data produced, it appears that only 8 of those screenings identified class members. Overall, based on Plaintiffs' counsel's understanding, the number of individuals in ICE custody subject to imminent removal who are required to be screened for class membership under the existing screening procedures is an ever-dwindling number, given the passage of time since potential class members entered the United States and went through removal proceedings. Moreover, for a number of years, the Government has also retained posted notices of the injunction, which contain Plaintiffs' counsel's contact information, on various websites and in detention centers, as described *supra* ¶¶ 16-17. As described above, these notices have resulted in no cases of potential class members self-identifying and contacting Plaintiffs' counsel for assistance, although the notices have led to inquiries from people who do not meet even the basic criteria for eligibility under the injunction and are not potential class members.

46.     Prior to November 13, 2020, USCIS screened some other individuals for class membership. These individuals had been ordered removed in expedited removal proceedings and were in ICE custody based on an earlier set of procedures. Based on data Defendants produced on April 22, 2021, it appears that 95 class members were identified through those screenings.[6]

47.     Since November 2019 when the original injunction was granted, both Plaintiffs and Defendants have invested significant time, energy, and resources in identifying and assisting potential class members.  Over time, these efforts have yielded increasingly diminishing returns.  Plaintiffs believe that continued efforts to identify class members eligible for relief under the injunction would be futile.

I declare under penalty of perjury under the laws of the United States of America that the preceding declaration is true and correct.


Executed on this 27th day of December, 2024 in Washington, DC.

/s/ *Melissa Crow*

Melissa Crow

---

[6] The data does not reflect the total number of such screenings completed.

## **CERTIFICATE OF SERVICE**

I certify that I served a copy of this document on the Court and all parties by filing this document with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all counsel of record.

DATED: December 27, 2024          Respectfully submitted,

_s/ Matthew E. Fenn_
Matthew E. Fenn

_Attorney for Plaintiffs_

22

Crow Decl. ISO Pls.' Rule 60(b) Motion for Relief
Case No. 3:17-cv-02366-BAS-KSC